# EXHIBIT "A"

LAWRENCE A. ORGAN (SBN 175503)
NAVRUZ AVLONI (SBN 279556)
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960
Tel.:   (415) 453-4740
Fax.:   (415) 785-7352
larry@civilrightsca.com
navruz@civilrightsca.com

ENDORSED
FILED
ALAMEDA COUNTY

OCT 16 2017

CLERK OF THE SUPERIOR COURT

Attorneys for Plaintiffs
DEMETRIC DI-AZ, OWEN DIAZ AND LAMAR PATTERSON

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ALAMEDA - UNLIMITED JURISDICTION

DEMETRIC DI-AZ, OWEN DIAZ and
LAMAR PATTERSON,

   Plaintiffs,

  v.

TESLA, INC. DBA TESLA MOTORS, INC.;
CITISTAFF SOLUTIONS, INC.; WEST
VALLEY STAFFING GROUP;
CHARTWELL STAFFING SERVICES, INC.;
and DOES 1-10, inclusive,

   Defendants.

Case No.

COMPLAINT FOR DAMAGES

1. Racial Discrimination, Harassment,
   Retaliation, Failure to Prevent, Constructive
   and Wrongful Termination in Violation of 42
   U.S.C. § 1981;
2. Racial Discrimination in Violation of the
   Unruh Civil Rights Act;
3. Retaliation - Unruh Civil Rights Act;
4. Threats of Violence in Violation of the Ralph
   Civil Rights Act;
5. Threats of Violence - Bane Act;
6. Interference with Constitutional Rights in
   Violation of the Bane Act;
7. Whistleblower Retaliation;
8. Racial Harassment under FEHA;
9. Racial Discrimination under FEHA;
10. Retaliation under FEHA;
11. Failure to Prevent under FEHA;
12. Negligent Infliction of Emotional Distress;
13. Intentional Infliction of Emotional Distress;
14. Negligent Hiring Retention and Supervision;
15. Wrongful Termination; and
16. Constructive Discharge.

JURY TRIAL DEMANDED

## INTRODUCTION

1. Even amongst the giants of California's Silicon Valley, Tesla, Inc. stands out as an innovative and groundbreaking company that is at the forefront of the electric vehicle revolution. As a result, Owen Diaz, his son Demetric Di-az, and Lamar Patterson were thrilled when they landed work at Tesla's production factory, located in Fremont, California.

2. Instead of a modern workplace, however, Plaintiffs encountered a scene straight from the Jim Crow era. Although the men worked in different areas of the factory, all three were targets of racially motivated abuse, including the frequent use of racial slurs. Plaintiffs complained to their supervisors, but Tesla, Inc., took no action. Plaintiffs quickly learned that Tesla's progressive image was a façade papering over its regressive, demeaning treatment of African-American employees.

## PARTIES

3. Defendant Tesla, Inc., d.b.a. Tesla Motors, Inc., (hereinafter "Tesla") is a publicly-traded Delaware corporation whose principal place of business is located in Palo Alto, California. Tesla designs, manufactures, and sells electric vehicles. One of Tesla's vehicle manufacturing facilities, also known as the "Tesla Factory," is located at 45500 Fremont Boulevard in Fremont, California. The harassing conduct at issue in this case took place at the Tesla Factory in Fremont. Due to Tesla's ownership of the facility, its day-to-day managerial role in the facility, its right to hire, fire and discipline the employees, and its control of all terms and conditions of Plaintiff's employment, Tesla is Plaintiffs' joint employer, which provides employment pursuant to contract.

4. Defendant Citistaff Solutions, Inc. (hereinafter "Citistaff") is a California corporation whose principal place of business is located in Orange, California. Citistaff is a staffing company that provides trained employees to businesses for short-and long-term assignments, and therefore provides employment pursuant to contract. When Citistaff's employees are sent to work at their client's sites, they receive paychecks from Citistaff. Citistaff retains control over hiring and firing decisions and also selects the locations where its employees work. Plaintiffs are informed and believe and on that basis allege that in addition to being joint

2

1  employers, Defendants Tesla and Citistaff are alter egos and/or integrated enterprises such that

2  the actions of one entity can be and are attributable to the other entity.

3       5.     Defendant West Valley Staffing Company (hereinafter "West Valley") is a

4  staffing corporation with corporate offices in Sunnyvale, California. West Valley provides

5  trained employees for short and long-term assignments to other businesses, and therefore

6  provides employment pursuant to contract. When West Valley employees are sent to work at

7  other business' sites, they receive paychecks from West Valley, West Valley retains control over

8  hiring and firing decisions, and also selects the locations at which its employees work. Plaintiffs

9  are informed and believe and on that basis allege that in addition to being joint employers,

10  Defendants Tesla and West Valley are alter egos and/or integrated enterprises such that the

11  actions of one entity can be and are attributable to the other entity.

12       6.     Defendant Chartwell Staffing Services Inc. (hereinafter "Chartwell"), doing

13  business as Chartwell Staffing Solutions, is a staffing corporation with corporate offices in San

14  Jose, California. Chartwell provides employees for short and long-term assignments to

15  businesses in the United States, and therefore provides employment pursuant to contract.

16  Plaintiff Lamar Patterson applied for a Tesla position through Chartwell. He received all relevant

17  training and orientation directly through Tesla, clocked in and out using Tesla's timekeeping

18  system, and Tesla maintained power over hiring and firing decisions. Plaintiff Lamar Patterson

19  selected to work for Tesla, rather than being assigned a location by Chartwell. Plaintiffs are

20  informed and believe and on that basis allege that in addition to being joint employers,

21  Defendants Tesla and Chartwell are alter egos and/or integrated enterprises such that the actions

22  of one entity can be and are attributable to the other entity.

23       7.     Plaintiff Demetric Di-az (hereinafter "Demetric") was employed as a Production

24  Associate jointly by defendants West Valley and Tesla from approximately August of 2015

25  through October of 2015. Demetric was placed by West Valley at the Tesla Factory in Fremont,

26  California. Demetric is, and at all relevant times herein was, an adult African-American resident

27  of California.

28

3

1        8.     Plaintiff Owen Diaz (hereinafter "Owen") was employed as an Elevator Operator

2 jointly by defendants Citistaff and Tesla between approximately June 2015 and May of 2016.

3 Owen was placed by Citistaff at the Tesla Factory in Fremont, California. Owen is, and at all

4 relevant times herein was, an adult African-American resident of California.

5        9.     Plaintiff Lamar Patterson (hereinafter "Lamar") was employed as an Elevator

6 Operator jointly by defendants Chartwell and Tesla between approximately January 2016 and

7 August 2016. Lamar is, and at all relevant times herein was, an adult African-American resident

8 of California.

9       10.     Each Defendant is sued individually and as the agent or employee of every other

10 Defendant acting within the course and scope of said agency or employment, with the knowledge

11 or consent of the other co-Defendants.

12       11.     In addition to the Defendants named above, Plaintiffs sue fictitiously named

13 Defendants Does 1 through 10, inclusive, pursuant to Section 474 of the California Code of Civil

14 Procedure, because their names, capacities, status, or facts showing them to be liable to Plaintiffs

15 are not presently known. Plaintiffs are informed and believe, and based thereon allege, that each

16 of the fictitiously named Defendants is responsible in some manner for the occurrences herein

17 alleged, and such Defendants caused Plaintiffs' damages as herein alleged. Plaintiffs will amend

18 this complaint to show these Defendants' true names and capacities, together with appropriate

19 charging language, when such information has been ascertained.

20                                 **JURISDICTION AND VENUE**

21       12.     Jurisdiction and venue are proper in this court pursuant to Section 52 of the

22 California Civil Code and Section 395(a) of the California Code of Civil Procedure. The amount

23 in controversy exceeds the jurisdictional minimum of this court.

24       13.     Venue is proper in this county because the employment contract giving rise to

25 Demetric's causes of action was performed in Alameda County, and the implied employment

26 contract giving rise to Owen's and Lamar's causes of action was performed in Alameda County.

27 //

28 //

Complaint for Damages and Demand for Jury Trial

## FACTUAL ALLEGATIONS

### DEMETRIC DI-AZ

14.    In approximately August of 2015, Demetric's father, Owen, informed him that West Valley had openings for positions at the Tesla Factory in Fremont, California.

15.    Demetric was excited at the prospect of working at the Tesla Factory so he applied for a position with West Valley. His application was accepted, and he signed a contract and began his training on August 24, 2015.

16.    In approximately August 2015, Demetric began working at the Tesla Factory as a Production Associate. Demetric participated in the development and application of Tesla's manufacturing system for the battery of its electric sedan, the Model S.

17.    Demetric took pride in his work, and was excited to work on the creation of Tesla's innovative vehicles.

18.    However, Demetric found it increasingly difficult to enjoy his job because of the daily racist epithets that he had to endure throughout his shift.  Demetric was called "nigger" on a regular basis, and observed other African-American employees enduring the same treatment. Additionally, Demetric's father, Owen, told him about racist epithets directed at him and showed Demetric offensive drawings he came across at the Tesla Factory.

19.    This treatment continued throughout Demetric's employment for West Valley and Tesla. For example, when Owen came to Demetric's department to bring him lunch, Demetric's shift lead said, "All you fucking niggers - I can't stand you motherfuckers."

20.    Demetric found this treatment demeaning and unbearably offensive.

21.    Demetric complained to West Valley about the racist abuse he endured at work on a daily basis. West Valley took no action.

22.    Upset and offended, Demetric complained to his supervisor at Tesla in October of 2015. He stated, "The way you're treating me - calling me an 'n-word' every day - that's not right." His supervisor replied, "If you don't like how you're treated, your time here is going to end." "So," Demetric asked, "you're going to fire me?" His supervisor replied, "You're a temp, anyway."

23. After Demetric complained, the racist abuse dramatically increased in frequency.

24. Within days of making his complaint, Demetric was issued a written warning based on accusations of misconduct. He was accused of using his phone on the production line. Prior to this written warning, Demetric had a good performance record.

25. Within just one week of his complaint to his supervisor at the Tesla Factory, he was terminated for "breaking the rules." Other employees with similar warning were not terminated.

26. Demetric believed the written warning and subsequent termination were pretextual. Demetric believed that his employment was terminated because he objected to the racist harassment and discrimination.

27. As a direct and proximate result of the acts and omissions of the Defendants, Demetric has suffered, and continues to suffer emotional distress and psychological damage. This includes, but is not limited to: humiliation, mental anguish, stress, fear, depression, and anxiety.

28. Defendants' actions have also resulted in wage and benefit losses, and are expected to lead to additional economic loss in the future.

29. As a result of the Defendants' actions, Demetric hired private counsel to prosecute this action. Pursuant to California Civil Codes Sections 52.1, 51.7, and 52(b)(3), and Title 42 USC section 1988, Demetric is entitled to recover attorney's fees associated with the prosecution of these claims.

30. Defendants' acts were malicious or oppressive, and intended to vex, injure, annoy, humiliate, and embarrass Demetric, and with conscious disregard of the rights and safety of Demetric and other African-American employees of West Valley. Demetric is informed and believes, and based thereon alleges, that West Valley and Tesla's managing agents ratified the wrongful conduct of Tesla's employees, because they were aware of the discriminatory conduct, and failed to take immediate remedial action after Demetric's report of the oppressive conduct.

//

//

6

Complaint for Damages and Demand for Jury Trial

**OWEN DIAZ**

31.     Owen was elated when he discovered, in the summer of 2015, that he would be working at Tesla as an Elevator Operator through Citistaff.

32.     In his early days at the Tesla Factory, Owen was excited to go to work every morning. He was a good and hardworking employee, and his performance caught his supervisors' attention. Within the first month of the start of his employment at the factory, an Asian-American supervisor promoted him to an elevator lead position.

33.     The supervisor warned him, however, that Tesla wouldn't want "someone like him" to be a lead. Owen believed his supervisor was stating that Tesla would not want an African-American man as a lead.

34.     Owen's opinion of Tesla quickly soured, as his supervisor's prediction proved true. After beginning his employment at the Tesla Factory, Owen became the subject of vitriolic racial harassment. Tesla Factory employees directed racial epithets, such as "nigger," at him and other African-American Tesla employees on a daily basis.

35.     Other employees in the factory also instructed Owen, "Go back to Africa," implying that, as an African-American man, Owen did not belong in the United States.

36.     When Owen was operating the elevator with Conveyance Supervisor Robert (last name unknown), Robert instructed Owen to press the elevator by saying, "Nigger, hurry up, press the button."

37.     Robert regularly referred to Owen as "nigger," and also frequently called him "boy" in a demeaning tone.

38.     To Owen, these degrading modes of address were reminiscent of the way slave owners referred to their slaves. He found this racist behavior to be unbearable.

39.     Owen also witnessed racial slurs being used towards other African-American employees. His son, Demetric, worked in another department of the Tesla Factory. When Owen brought Demetric lunch one day, he overheard Demetric's supervisor referring to the African-American workers at the factory as "fucking niggers."

7

1    40.    Owen felt demeaned and offended when Tesla's employees referred to him as a

2  "nigger." The constant use of this offensive language made him depressed. However, what truly

3  broke Owen down was witnessing these racist epithets directed at his son, and hearing his son

4  tell him about the racism he was experiencing at work.

5    41.    Owen complained verbally to Citistaff, but Citistaff took no action.

6    42.    Tesla's employees also drew racist and derogatory caricatures of African children

7  that resembled the "pickaninny" imagery of the early twentieth century. These drawings

8  typically featured images of dark-skinned individuals with big lips and bones in their hair.

9  Features which are erroneously, and stereotypically, associated with African-American

10  individuals. An example of such racially offensive conduct is attached as Exhibit A.

11    43.    To ensure there was no doubt about the racist intent behind this appalling

12  imagery, the drawings were typically accompanied with captions such as, "Booo!" - suggesting

13  that African-American individuals are undesirable and unpleasant.

14    44.    These drawings were regularly placed around the factory, in locations where

15  African-American employees, including Owen, were certain to view them.

16    45.    Constantly viewing this racially offensive and demeaning imagery, coupled with

17  the offensive message, caused Owen to feel demeaned, disrespected, and devalued.

18    46.    Owen discovered that the elevator supervisor, Ramon, was the source of the

19  drawings. Owen confronted Ramon and explained that he found the drawings offensive and

20  demeaning. Owen requested that Ramon stop his behavior.

21    47.    Ramon responded flippantly, "We're just playing, why do you people take things

22  so hard?" By "you people," Ramon meant African-American employees.

23    48.    Ramon refused to stop the offensive behavior.

24    49.    Owen was distressed that Ramon would make the assumption that his rightful

25  anger over this racist act was merely oversensitivity.

26    50.    Tesla supervisor Michael Wheeler was aware of the harassment and offensive

27  drawings made by Ramon around the factory, and so was Owen's supervisor Ed Romero

28  (hereinafter "Romero"). Because Owen was hired by Citistaff and not Tesla, he was informed he

1    could not complain to Tesla's Human Resources department. In frustration, he sent a written

2    complaint to Romero, his supervisor at Tesla.

3         51.     Romero stated that he would look in to the issue, but took no action. The

4    harassing Tesla employees remained employed, and Owen was forced to continue to endure their

5    harassment.

6         52.     Owen also complained to Citistaff, but Citistaff likewise took no action.

7         53.     On approximately October 17, 2015, Owen was training another Citistaff

8    employee, Rothai. He was in the middle of explaining to Rothai that Romero would be his

9    supervisor when the elevator doors opened to reveal Ramon.

10         54.     Ramon flew into a rage upon overhearing their conversation, and shouted, "Do

11    you have a problem with me?! Why are you telling him who his supervisor is?!" Owen and

12    Rothai had not been speaking about Ramon at all.

13         55.     Fearful, Owen did not respond. Ramon followed him into the elevator, and came

14    within inches of Owen's body, preventing him from escaping. Ramon continued to shout and

15    gesture aggressively.

16         56.     Based on Ramon's threatening words and conduct, and previous racist and

17    generally hostile conduct, Owen feared that Ramon would hit him or otherwise harm him.

18         57.     Ramon was an able-bodied male who worked as a laborer, so Owen reasonably

19    believed that Ramon had the ability to physically harm him.

20         58.     Owen asked Ramon to step back, and reminded Ramon that a security camera was

21    recording the exchange. Eventually, Ramon exited the elevator.

22         59.     Following this exchange, Owen contacted Romero via email. He wrote,

23    "…because of the way Ramon was acting I don't feel safe around him now. Can you please talk

24    to him[?] I don't need any problems. I just want to do my job."

25         60.     Romero responded by writing, "Owen, I will speak to Ramon and follow up by

26    speaking to you." Romero never again contacted Owen regarding the incident. Ramon continued

27    to work with Owen, and Owen was not aware of any disciplinary measures taken against Ramon.

28         61.     Owen contacted Citistaff regarding this incident, Citistaff still took no action.

Complaint for Damages and Demand for Jury Trial

1         62.    The harassment and discrimination Owen experienced escalated after he made

2 this complaint. Tesla's employees used racial slurs with greater frequency.

3         63.    Although Tesla and Citistaff had notice of the discriminatory and harassing

4 behavior at the Tesla Factory, Tesla and Citistaff took no steps to protect African-American

5 employees.

6         64.    In fact, Tesla and Citistaff ratified and supported the racially harassing behavior.

7 In the spring of 2016, Citistaff informed Owen that he would be demoted from his supervisory

8 position, because he was causing too much trouble, despite the fact that he had no negative

9 performance reviews or disciplinary issues.

10        65.    Owen believed this explanation was merely a pretext. Owen believed Citistaff and

11 Tesla were threatening him with a demotion in retaliation for his complaints regarding the racist,

12 discriminatory behavior he experienced.

13        66.    Eventually, in approximately May of 2016, Owen quit his employment. Owen

14 could no longer bear the abusive, racially harassing treatment he encountered daily at work.

15 Since Citistaff and Tesla had repeatedly refused to investigate the racist behavior and instead

16 ratified the attempts at retaliation by threatening Owen with a demotion, he worried that the

17 situation would only degenerate further.

18        67.    As a direct and proximate result of the acts and omissions of the Defendants,

19 Owen has suffered, and continues to suffer emotional distress and psychological damage. This

20 includes, but is not limited to: humiliation, mental anguish, stress, fear, depression, and anxiety.

21        68.    Defendants' actions have also resulted in past wage and benefit loss, and are

22 expected to lead to additional economic loss in the future.

23        69.    As a result of the Defendants' actions, Owen hired private counsel to prosecute

24 this action. Pursuant to California Civil Codes Sections 52.1, 51.7, and 52(b)(3), and Title 42

25 USC Section 1988, Owen is entitled to recover attorney's fees associated with the prosecution of

26 these claims.

27        70.    Defendants' acts were malicious or oppressive, and intended to vex, injure,

28 annoy, humiliate, and embarrass Owen, and with conscious disregard of the rights and safety of

1   Owen and other African-American employees of Defendants. Owen is informed and believes,

2   and based thereon alleges, that managing agents ratified the wrongful conduct of the Defendants'

3   employees, because they were aware of this conduct and failed to take immediate remedial

4   action, and retained the errant employees after Owen's report of the oppressive conduct.

5                                     **LAMAR PATTERSON**

6        71.    Lamar was excited to join Tesla as an Elevator Operator when he was hired in

7   approximately January 2016. He worked hard and hoped to embark on a long-term career path at

8   the company that he so much admired.

9        72.    It did not take long for Lamar to learn that the company was a hotbed for racist

10  behavior. Both employees and supervisors used the word "nigger" freely and frequently

11  throughout the Tesla Factory, left racist caricatures, images, and effigies around the factory for

12  African-American employees to see, and made "jokes" such as, "Go back to Africa. We don't

13  want you here!"

14       73.    Lamar complained to Supervisor Ed Romero about the use of the word "nigger"

15  and the hurtful "jokes." However, neither Romero nor anyone else at Tesla took action to address

16  the issue; he continued to hear the racist epithets on a regular basis, throughout his workday.

17       74.    Unable to bear the abusive and racially harassing treatment he encountered daily

18  at work any longer, Lamar quit his employment with Defendants Tesla and Chartwell in

19  approximately August of 2016.

20       75.    As a direct and proximate result of the acts and omissions of the Defendants,

21  Lamar has suffered, and continues to suffer emotional distress and psychological damage. This

22  includes, but is not limited to: depression and anxiety.

23       76.    Defendants' actions have also resulted in past wage and benefit loss, and are

24  expected to lead to additional economic loss in the future.

25       77.    As a result of the Defendants' actions, Lamar hired private counsel to prosecute

26  this action. Pursuant to California Government Code section 12965(b), California Civil Codes

27  Sections 52.1, 51.7, and 52(b)(3), and Title 42 USC Section 1988, Owen is entitled to recover

28  attorney's fees associated with the prosecution of these claims.

11

1   78.    Defendants' acts were malicious or oppressive, and intended to vex, injure,

2   annoy, humiliate, and embarrass Lamar, and with conscious disregard of the rights and safety of

3   Lamar and other African-American employees of Defendants. Lamar is informed and believes,

4   and based thereon alleges, that managing agents ratified the wrongful conduct of the Defendants'

5   employees, because they were aware of this conduct and failed to take immediate remedial

6   action, and retained the errant employees after Lamar's report of the oppressive conduct.

7   79.    On or about July 31, 2017, Lamar filed a timely charge against Defendants Tesla

8   and Chartwell with the Department of Fair Employment and Housing alleging discrimination,

9   harassment and retaliation on the basis of race and color; failure to prevent harassment,

10  discrimination and retaliation; and constructive termination. The DFEH issued a right-to-sue

11  letter regarding this charge on July 31, 2017.

12                          **FIRST CAUSE OF ACTION**
13          RACIAL DISCRIMINATION, RACIAL HARASSMENT (HOSTILE WORK
       ENVIRONMENT), RETALIATION, FAILURE TO INVESTIGATE AND PREVENT
14          DISCRIMINATION AND HARASSMENT, WRONGFUL TERMINATION,
                          CONSTRUCTIVE DISCHARGE
15                              42 U.S.C. § 1981
16                 (As to All Plaintiffs; Against All Defendants)

17  80.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

18  reproduced herein.

19  81.    As African-American men, Plaintiffs are members of a protected class. At all

20  relevant times herein, Demetric was in a contractual relationship with defendant West Valley

21  within the meaning of 42 U.S.C. § 1981, as amended. At all relevant times herein, Owen was in a

22  contractual relationship with defendants Citistaff and Tesla within the meaning of 42 U.S.C. §

23  1981, as amended. At all relevant times herein, Lamar was in a contractual relationship with

24  defendants Chartwell and Tesla within the meaning of 42 U.S.C. § 1981, as amended.

25  82.    During the course of Demetric, Owen and Lamar's employment, defendants

26  Tesla, West Valley, Citistaff and Chartwell violated Plaintiffs' rights by depriving Plaintiffs of

27  their right to the enjoyment of all benefits, privileges, terms, and conditions of Plaintiffs'

28

Complaint for Damages and Demand for Jury Trial

1    employment contract "as is enjoyed by white citizens," in direct violation of 42 U.S.C. §

2    1981(b).

3        83.    Specifically, Tesla's employees and supervisors subjected Plaintiffs and others to

4    racial harassment, racial discrimination, and a racially hostile work environment, culminating in

5    an end to their employment relationship with Tesla. Tesla, West Valley, Citistaff and Chartwell

6    failed to investigate and prevent incidents of racial harassment, despite numerous reports and

7    complaints, thereby evidencing a pattern and practice of racial discrimination and harassment.

8    All four defendants retaliated against Plaintiffs for complaining of a hostile work environment by

9    issuing Demetric a written warning based on false allegations, approving the retaliatory

10   termination of Demetric, and making the work environment so unbearable that Owen and Lamar

11   had no choice but to quit their employment.

12       84.    Tesla acted intentionally to discriminate against Plaintiffs. Tesla's supervisory

13   employees and agents used racial epithets and racist imagery to harass and intimidate Plaintiffs

14   and others, and ignored Plaintiffs' repeated reports regarding this harassment and discrimination.

15       85.    Defendants failed to prevent the racially harassing and retaliatory behavior

16   directed at Plaintiffs and others. Ultimately, Plaintiff Demetric was wrongfully terminated, and

17   Plaintiffs Owen and Lamar were constructively terminated.

18       86.    Through their actions and treatment of Plaintiffs, Defendants and their agents

19   intended to discriminate against Plaintiffs on the basis of their race.

20       87.    Defendants' violations of the Civil Rights Act of 1866, as amended, caused

21   Plaintiffs to suffer harm as set forth above.

22       88.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set

23   forth herein.

24       89.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have

25   necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

26   reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

27   incurred in bringing this action.

28

13

Complaint for Damages and Demand for Jury Trial

90.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

SECOND CAUSE OF ACTION
RACIAL DISCRIMINATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
Cal. Civ. Code § 51
(As to All Plaintiffs; Against Defendant Tesla)

91.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

92.     Plaintiffs are African-American men, and residents of California.

93.     Defendant Tesla's Factory in Fremont is a business establishment for the purposes of the Unruh Civil Rights Act. A business establishment is a facility which is offered "to qualified [workers], who are not the establishment's employees, in exchange for… considerations." *Payne v. Anaheim Memorial Medical Center, Inc.*, 130 Cal. App. 4th 729, 733 (2005) (review denied). Defendant Tesla operates its Fremont Factory as a business establishment, offering the use of its facilities to qualified contractors, who are not its employees, in exchange for payment.

94.     Tesla acted intentionally to discriminate in its business establishment against Plaintiffs. Tesla's supervisory employees and agents used racial epithets and racist imagery to harass and intimidate Plaintiffs, ignored Plaintiffs' repeated reports regarding this harassment and discrimination, and prevented Plaintiffs from accessing its facilities in retaliation for Plaintiffs' complaints of discrimination and harassment.

95.     Defendants' violations of the Unruh Civil Rights Act caused Plaintiffs to suffer harm as set forth above.

96.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover statutory damages of a maximum of three times the amount of actual damages, or a minimum of $4,000.

14

1    97.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have

2   necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

3   reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

4   incurred in bringing this action.

5    98.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and

6   oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of

7   the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

8   Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according

9   to proof.

10                          **THIRD CAUSE OF ACTION**

11            RETALIATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
                                   Cal. Civ. Code § 51

12              (As to Plaintiffs' Demetric and Owen; Against Defendant Tesla)

13   99.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

14   reproduced herein.

15   100.   The Unruh Act prohibits retaliation against persons who complain about conduct

16   they reasonably believe to violate the Act. *See, e.g., Vaughn v. Hugo Neu Proler Int'l* (1990) 223

17   Cal.App.3d 1612, 1619.

18   101.   Plaintiffs reasonably believed the race harassment they experienced at Tesla's

19   Fremont factory to be a violation of their rights under California law.

20   102.   Plaintiffs complained against the harassment, and Defendants retaliated against

21   Plaintiffs for reporting the harassment by issuing Demetric a write up and subsequently

22   terminating his employment, and by threatening Owen with a demotion. Defendants further

23   retaliated against Plaintiffs by subjecting them to further harassment.

24   103.   Defendants' violations of the Unruh Civil Rights Act caused Plaintiffs to suffer

25   harm as set forth above.

26   104.   As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover

27   statutory damages of a maximum of three times the amount of actual damages, or a minimum of

28   $4,000.

15

1      105.   By reason of the conduct of Defendants as alleged herein, Plaintiffs have

2  necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

3  reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

4  incurred in bringing this action.

5      106.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and

6  oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of

7  the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

8  Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according

9  to proof.

10                    **FOURTH CAUSE OF ACTION**

11        THREATS OF VIOLENCE IN VIOLATION OF THE RALPH CIVIL RIGHTS ACT
                               Cal. Civ. Code § 51.7

12                 (As to Owen; Against Defendants Citistaff and Tesla)

13      107.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

14  reproduced herein.

15      108.   Plaintiff Owen is an African-American man who worked at Tesla's Fremont

16  Factory while employed by Citistaff.

17      109.   While working at the factory, Owen was subjected to threats of violence by a

18  Tesla employee, Ramon. Without any provocation, Ramon screamed at and physically

19  intimidated Owen. Based on this and Ramon's previous hostile behavior, Owen believed that

20  Ramon intended to hit him.

21      110.   In addition to his use of threatening language, Ramon, rushed into the elevator

22  with Owen. He moved so that he was merely inches from Owen's body, preventing Owen from

23  leaving the elevator. Ramon then continued to scream at Owen and berated and belittled him.

24      111.   Ramon's demeanor and conduct was threatening, such that Owen believed he was

25  in imminent physical danger.  Ramon was an able-bodied male with the apparent ability to cause

26  Owen physical harm.

27

28

                                          16

112.    Based on Ramon's history of racially discriminatory and demeaning acts, Owen believed that Ramon's behavior was motivated by his hatred of and prejudice towards African-Americans.

113.    Owen reported Ramon's actions to Tesla. However, Tesla took no action, and implicitly ratified Ramon's abuse by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

114.    Tesla further ratified Ramon's actions by retaliating against Owen and suggesting that Owen be demoted as punishment for reporting Ramon's racially abusive behavior.

115.    Because Tesla ratified Ramon's actions, Tesla is liable for his abuse under the doctrine of *respondeat superior*.

116.    Owen reported Ramon's actions to Citistaff. However, Citistaff took no action, and implicitly ratified Ramon's abusive behavior by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

117.    Because Citistaff ratified Ramon's actions, Citistaff is liable for his abuse.

118.    Defendants' violations of Section 51.7 of the California Civil Code caused Plaintiff Owen to suffer harm as set forth above.

119.    As a result of Defendants' unlawful acts, Plaintiff is entitled to recover a civil penalty of $25,000.

120.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

121.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

//

17

1

2

3

<u>**FIFTH CAUSE OF ACTION**</u>
THREATS OF VIOLENCE IN VIOLATION OF THE BANE ACT
Cal. Civ. Code § 52.1(a)
(As to Plaintiff Owen; Against Defendants Citistaff and Tesla)

4          122.    Plaintiff incorporates the foregoing paragraphs by reference, as though fully

5    reproduced herein.

6          123.    Plaintiff Owen is an African-American man who worked at Tesla's Fremont

7    Factory while employed by Citistaff.

8          124.    While working at the factory, Owen was subjected to threats of violence by a

9    Tesla employee, Ramon. Without any provocation, Ramon screamed at and physically

10   intimidated Owen. Based on this and Ramon's previous hostile behavior, Owen believed that

11   Ramon intended to hit him.

12         125.    In addition to his use of threatening language, Ramon, rushed into the elevator

13   with Owen. He moved so that he was merely inches from Owen's body, preventing Owen from

14   leaving the elevator. Ramon then continued to scream at Owen and berated and belittled him.

15         126.    Ramon's demeanor and conduct was threatening, such that Owen believed he was

16   in imminent physical danger.  Ramon was an able-bodied male with the apparent ability to cause

17   Owen physical harm.

18         127.    Based on Ramon's history of racially discriminatory and demeaning acts, Owen

19   believed that Ramon's behavior was motivated by his hatred of and prejudice towards African-

20   Americans.

21         128.    Owen reported Ramon's actions to Tesla. However, Tesla took no action, and

22   implicitly ratified Ramon's abuse by failing to investigate his actions, and allowing Ramon to

23   continue to abuse and harass Owen.

24         129.    Tesla further ratified Ramon's actions by retaliating against Owen and threatening

25   demoting him as punishment for reporting Ramon's racially abusive behavior.

26         130.    Because Tesla ratified Ramon's actions, Tesla is liable for his abuse under the

27   doctrine of *respondeat superior*.

28

18

1    131.   Owen reported Ramon's actions to Citistaff. However, Citistaff took no action,

2    and implicitly ratified Ramon's abusive behavior by failing to investigate his actions, and

3    allowing Ramon to continue to abuse and harass Owen.

4    132.   Because Citistaff ratified Ramon's actions, Citistaff is liable for his abuse under

5    the doctrine of *respondeat superior*.

6    133.   Defendants' violations of Section 52.1 of the California Civil Code caused

7    Plaintiffs to suffer harm as set forth above.

8    134.   As a result of Defendants' unlawful acts, Plaintiff Owen is entitled to recover civil

9    penalties of $25,000.

10   135.   By reason of the conduct of Defendants as alleged herein, Plaintiffs have

11   necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

12   reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

13   incurred in bringing this action.

14   136.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and

15   oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of

16   the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

17   Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according

18   to proof.

19                        **SIXTH CAUSE OF ACTION**

20   INTERFERENCE WITH CONSTITUTIONAL RIGHTS IN VIOLATION OF BANE ACT
                          Cal. Civ. Code § 52.1(b)

21              (As to All Plaintiffs; Against All Defendants)

22   137.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

23   reproduced herein.

24   138.   Defendants interfered with Plaintiffs' constitutional right entitling them to equal

25   protection.

26   139.   Defendants adopted the conduct, through their officers, directors, managing

27   agents, or supervisory employees. They further ratified the conduct by failing to take appropriate

28   prompt remedial action.

19

1    140.    A substantial motivating reason for Defendants' conduct was Plaintiffs' race.

2    141.    Defendants interfered with Plaintiffs' right to be free from discrimination on the

3    basis of race as set forth above, and permitted working conditions that denied Plaintiffs their

4    constitutional right entitling them to equal protection.

5    142.    Defendants' conduct caused Plaintiffs to suffer, and continue to suffer damages as

6    set forth above.

7    143.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have

8    necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

9    reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

10   incurred in bringing this action.

11   144.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and

12   oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of

13   the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

14   Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according

15   to proof.

16   ### SEVENTH CAUSE OF ACTION
WHISTLEBLOWER RETALIATION
17   (Cal. Labor Code 1102.5)
18   (As to Plaintiffs Demetric and Owen; Against All Defendants)

19   145.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

20   reproduced herein.

21   146.    At all relevant times mentioned herein, Plaintiffs were African-American

22   residents of California.

23   147.    At all relevant times mentioned herein, Demetric was an employee of defendant

24   West Valley and Tesla.

25   148.    Demetric engaged in protected activity when he reported the racially harassing

26   and discriminatory behavior to West Valley and Tesla, including the threat to terminate his

27   employment for his refusal to endure the daily racial harassment.

28

20

1    149.    Demetric had a reasonable, good-faith belief that this behavior was a violation of

2  the federal Civil Rights Act of 1964, and other state and federal statutes.

3    150.    West Valley and Tesla took adverse employment action against Demetric.

4  Without justification or basis in fact, both entities accepted as true the assertions of Demetric's

5  harassers that he was a poor performer; they then terminated Demetric's employment on that

6  false basis. West Valley and Tesla did this even though they knew that Demetric's supervisor

7  responded to his complaint of harassment by threatening to terminate Demetric's employment.

8    151.    In terminating Demetric, West Valley and Tesla ratified the discriminatory

9  behavior.

10    152.    At all relevant times mentioned herein, Owen was an employee of defendant

11  Citistaff and Tesla.

12    153.    Owen engaged in protected activity when he reported the racially harassing and

13  discriminatory behavior to Citistaff and Tesla.

14    154.    Owen had a reasonable, good-faith belief that this behavior was a violation of the

15  federal Civil Rights Act of 1964, and other state and federal statutes.

16    155.    Citistaff and Tesla took adverse employment action against Owen by threatening

17  him with a demotion. However, Owen had a positive performance history, and Tesla only

18  threatened Owen with a demotion as punishment for complaining of the racist harassment.

19    156.    In accepting as true the proffered reasons for threatening Owen with a demotion,

20  even though Owen had complained to Citistaff and Tesla of the discriminatory behavior of

21  Tesla's employees on numerous occasions, Citistaff and Tesla ratified and continued the

22  discriminatory behavior.

23    157.    Defendants' violations of Section 1102.5 of the California Labor Code caused

24  Plaintiffs to suffer harm as set forth above.

25    158.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover civil

26  penalties of $10,000 for each violation.

27    159.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have

28  necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

21

Complaint for Damages and Demand for Jury Trial

1   reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

2   incurred in bringing this action.

3         160.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and

4   oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of

5   the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

6   Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according

7   to proof.

8                          **EIGHTH CAUSE OF ACTION**

9                              RACIAL HARASSMENT
                            Cal. Govt. Code § 12940, *et seq.*

10             (As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

11        161.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

12   reproduced herein.

13        162.    Plaintiff Lamar at all times was an employee covered by the Fair Employment

14   and Housing Act ("FEHA"), California Government Code §§ 12940(a) and (j), which prohibits

15   an employer from discriminating and harassing an employee on the basis of color and race.

16        163.    Defendants Tesla and Chartwell were, at all times, employers as defined under the

17   FEHA.

18        164.    The above-described actions constitute racial harassment and discrimination in

19   violation of the FEHA. Plaintiff Lamar was subjected to working in a severe, persistent and/or

20   pervasive racially hostile work environment, which interfered with his work performance, denied

21   him employment privileges, and adversely affected the terms and conditions of his job on the

22   basis of his race.

23        165.    The harassing conduct to which Plaintiff Lamar was subjected to was so severe,

24   widespread, and/or persistent that a reasonable African American in Plaintiff Lamar's

25   circumstances would have considered the work environment to be hostile and/or abusive.

26        166.    Plaintiff Lamar considered the work environment to be hostile and/or abusive.

27        167.    Defendants Tesla and Chartwell failed to take prompt, remedial and effective

28   action to stop the harassers.

22

Complaint for Damages and Demand for Jury Trial

168.     Defendants' violations of the FEHA caused Plaintiff Lamar to suffer harm as set forth above.

169.     By reason of the conduct of Defendants as alleged herein, Plaintiff Lamar has necessarily retained attorneys to prosecute the within action.  Plaintiff Lamar is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

170.     Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## NINTH CAUSE OF ACTION
RACE DISCRIMINATION
Cal. Govt. Code § 12940, *et seq.*
(As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

171.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

172.     Plaintiff Lamar at all times was an employee covered by the FEHA, California Government Code §§ 12940(a) and (j), which prohibits an employer from discriminating against an employee on the basis of color and race.

173.     Defendants Tesla and Chartwell were at all times employers as defined under the FEHA.

174.     Tesla failed to take any action in response to Plaintiff's complaints because of his color and race.

175.     Defendants' practice of failing to take any action in response to Plaintiff's complaints was a substantial factor in causing Plaintiff's harm.

176.     Defendants' violations of the FEHA caused Plaintiff to suffer harm as set forth above.

23

177.     By reason of the conduct of Defendants as alleged herein, Plaintiff Lamar has necessarily retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

178.     Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

### TENTH CAUSE OF ACTION
RETALIATION
Cal. Govt. Code 12940(h)
(As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

179.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

180.     Plaintiff Lamar complained of harassment and discrimination that violated the FEHA.

181.     Defendants Tesla and Chartwell took no action to ensure that Plaintiff was not retaliated against or threatened for having complained.

182.     As a result of Defendants Tesla and Chartwell's action or inaction, Plaintiff was subject to additional harassment, making the work environment so unbearable that Plaintiff Lamar had no choice but to quit his employment.

183.     Defendants' violations of the FEHA caused Plaintiff to suffer harm as set forth above.

184.     By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

185.     Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious

24

1  disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting

2  to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount

3  according to proof.

### ELEVENTH CAUSE OF ACTION

FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT
Cal. Govt. Code § 12940, *et seq.*
(As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

186.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

187.    Defendants Tesla and Chartwell failed to take all reasonable steps to prevent the harassment and discrimination as described above. Defendants knew or should have known that Tesla's employees were engaged in racially offensive behavior in the past and failed to stop it.

188.    Despite being on notice of Tesla's employees' propensity to engage in harassing conduct, Defendants failed to act to prevent employees from harassing Plaintiff.

189.    Defendants also failed to enact an anti-discrimination policy and/or failed to distribute it appropriately and failed to effectively train its employees on racial harassment or discrimination.

190.    As a result of Defendants violations of the FEHA, Plaintiff suffered harm as set forth above.

191.    By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

192.    Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

//

25

## TWELFTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(As to All Plaintiffs; Against All Defendants)

193.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

194.     As employees and contractors of Defendants, Plaintiffs were owed a duty of due care by Defendants, and each of them, to ensure that Plaintiffs were not exposed to foreseeable harms.

195.     Defendants, and each of them, knew, or should have known, that Plaintiffs were being subjected to racial harassment, discrimination and retaliation, and that, by failing to exercise due care to prevent racially harassing, discriminatory and retaliatory course of conduct could and would cause Plaintiffs to suffer serious emotional distress.

196.     Defendants, and each of them, failed to exercise their duty of due care to prevent their employees, managers, supervisors and/or officers from racially harassing, discriminating and retaliating against Plaintiffs.

197.     As a direct and consequential result of Defendants' actions, Plaintiffs suffered serious mental and emotional distress, includes, but is not limited to, pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege Defendants are responsible for the harm they suffered.

198.     By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

199.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

//

26

1

2

### THIRTEENTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(As to All Plaintiffs; Against All Defendants)

3

4

200.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

5

6

7

201.   Plaintiffs complained repeatedly to Tesla as well as to West Valley, Chartwell and Citistaff about the constant racial abuse they received on a daily basis. Plaintiffs made clear that the racial harassment caused them distress, humiliation, and suffering. ·

8

9

202.   When Defendants failed to take corrective action, Defendants knew that Plaintiffs would continue to suffer extreme emotional distress and harm as a result of their failure to act.

10

11

12

13

203.   As a direct and consequential result of Defendants' actions, Plaintiffs have suffered severe emotional distress to their persons. Such harm includes, but is not limited to, pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege Defendants are responsible for the harm they suffered.

14

15

16

17

204.   By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

18

19

20

21

22

205.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

23

24

25

### FOURTEENTH CAUSE OF ACTION

NEGLIGENT HIRING, RETENTION AND SUPERVISION
(As to All Plaintiffs; Against All Defendants)

26

27

206.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

28

27

1    207.    Upon information and belief, Defendants, by and through its agents and

2   employees, knew or reasonably should have known through reasonable investigation of some of

3   its agents and/or employees' propensity for unlawful racially harassing and physically aggressive

4   behavior.

5    208.    Defendants had a duty not to hire or retain these employees/agents given their

6   wrongful, dangerous, and racially offensive propensities, and to provide reasonable supervision

7   of these employees/agents.

8    209.    Defendants negligently hired, retained and/or failed to adequately supervise these

9   employees/agents in their positions where they were able to commit the wrongful acts

10   complained of here against Plaintiffs. Defendants failed to provide reasonable supervision of

11   these employees/agents despite knowing of their propensities and complaints made against them.

12    210.    As a direct and consequential result of Defendants' actions, Plaintiffs have

13   suffered serious emotional distress to their persons. Such harm includes, but is not limited to,

14   pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege

15   Defendants are responsible for the harm they suffered.

16    211.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have

17   necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

18   reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

19   incurred in bringing this action.

20    212.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and

21   oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of

22   the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

23   Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according

24   to proof.

25                        **FIFTEENTH CAUSE OF ACTION**
                WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
26                (As to Plaintiff Demetric; Against Defendant West Valley and Tesla)

27    213.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

28   reproduced herein.

28

214.   Defendant Tesla and West Valley punished Demetric by terminating his employment.

215.   Although Defendants stated that Demetric should be terminated for performance issues, this was merely a pretext. Demetric did not have a history of written warnings or performance issues warranting a termination until he was issued a written warning for using his phone on the production line within days of complaining to his supervisor of the racially discriminatory and harassing behavior he was subjected to at work. His supervisor responded to his complaint by threatening to terminate Demetric's employment, and ultimately did terminate his employment approximately a week after Demetric made his complaint.

216.   West Valley ratified Tesla's discriminatory behavior by terminating Demetric without conducting any investigation into the veracity of the claims against him, thereby approving of Tesla's discriminatory motives.

217.   West Valley and Tesla's decision to terminate Demetric's employment based on discriminatory motives was contrary to the policies, rules, regulations, and laws of the State of California, which are in substantial part designed to protect employees from discriminatory, harassing, and otherwise harmful or unlawful conduct. Said policies are encoded in Article 1, Section 8 of the Constitution of the State of California, and in Section 12900 *et seq*. of the California Government Code. Demetric's termination therefore constituted an unlawful termination under California law.

218.   Defendants' violations of these constitutional and statutory provisions caused Plaintiff Demetric to suffer harm as set forth above.

219.   By reason of the conduct of Defendants as alleged herein, Plaintiff Demetric has necessarily retained attorneys to prosecute the present action. Plaintiff Demetric is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

220.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiff Demetric; with the conscious disregard of the rights and safety of Plaintiff Demetric; and with an improper and evil motive

1    amounting to malice. Plaintiff Demetric is thus entitled to recover punitive damages from

2    Defendants in an amount according to proof.

3                              **SIXTEENTH CAUSE OF ACTION**
                    CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY
4            (As to Plaintiff Owen and Lamar; Against Defendants Tesla, Citistaff and Chartwell)

5           221.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

6    reproduced herein.

7           222.    At all relevant times herein, Owen was an employee of Citistaff and Tesla; and

8    Lamar was an employee of Chartwell and Tesla.

9           223.    Citistaff and Tesla constructively terminated Owen's employment, and Chartwell

10   and Tesla constructively terminated Lamar's employment by permitting a hostile work

11   environment to flourish at the Tesla Factory, where Owen and Lamar were continuously

12   subjected to harassment and discrimination.

13          224.    Owen and Lamar complained about the use of racial slurs, the display of racially

14   offensive images, and the use of offensive statements. Owen also complained in writing about

15   the violent conduct Ramon directed towards him.

16          225.    When Owen complained of this conduct, Tesla's employees only escalated their

17   threatening and discriminatory behavior, and attempted to demote Owen.

18          226.    No reasonable African-American person could have borne the constant

19   harassment, discrimination, intimidation, and threatening behavior directed at Owen and Lamar

20   on a daily basis.

21          227.    As a result, when Defendants Tesla, Citistaff and Chartwell repeatedly declined to

22   intervene and prevent the harassment, Owen and Lamar had no choice but to quit.

23          228.    Defendants Tesla, Chartwell and Citistaff's failure to halt the racial harassment

24   and discrimination was contrary to the policies, rules, regulations, and laws of the State of

25   California, which are in substantial part designed to protect employees from discriminatory,

26   harassing, and otherwise harmful or unlawful conduct. Said policies are encoded in Article 1,

27   Section 8 of the Constitution of the State of California, and in Section 12900 *et seq.* of the

28   California Government Code. Defendants Tesla and Citistaff's constructive termination of

                                             30

1   Owen, and Defendants Tesla and Chartwell's constructive termination of Lamar therefore

2   constituted a wrongful termination under California law.

3        229.   Defendants' violations of these constitutional and statutory provisions caused

4   Plaintiffs Owen and Lamar to suffer harm as set forth above.

5        230.   By reason of the conduct of Defendants as alleged herein, Plaintiffs Owen and

6   Lamar have necessarily retained attorneys to prosecute the present action.  Plaintiffs Owen and

7   Lamar are therefore entitled to reasonable attorney's fees and litigation expenses, including

8   expert witness fees and costs, incurred in bringing this action.

9        231.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and

10  oppressively; with the wrongful intention of injuring Plaintiffs Owen and Lamar; with the

11  conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive

12  amounting to malice. Plaintiffs Owen and Lamar are thus entitled to recover punitive damages

13  from Defendants in an amount according to proof.

14  **REQUEST FOR RELIEF**

15       WHEREFORE, Plaintiffs request judgment against the Defendants as follows:

16       1.   General damages according to proof, in an amount no less than the jurisdictional

17  limit of this court;

18       2.   Special damages in amounts according to proof, together with prejudgment

19  interest;

20       3.   Exemplary and punitive damages in amounts according to proof;

21       4.   Civil penalties pursuant to Section 52(a), 52(b)(2), and 52.1(a) of the California

22  Civil Code; and Section 1102.5(f) of the California Labor Code;

23       5.   Attorneys' fees and costs pursuant to sections 52(a), 52(b)(3), and 52.1(h) of the

24  California Civil Code; section 12965(b) of the California Government Code, and any other

25  applicable statute;

26       6.   Interest as provided by law;

27       7.   Costs of suit incurred herein;

28

31

8.     Injunctive relief to require Defendants to better train its staff on race harassment, discrimination and retaliation, and develop effective policies and procedures to ensure that when harassment is reported, the company takes effective remedial measures; and

9.     For such other and further relief as the Court deems just and proper.

Dated: October 13, 2017                        CALIFORNIA CIVIL RIGHTS LAW GROUP

_____
LAWRENCE A. ORGAN
NAVRUZ AVLONI
Attorneys for Plaintiffs
DEMETRIC DI-AZ, OWEN DIAZ and LAMAR
PATTERSON

### DEMAND FOR JURY TRIAL

PLAINTIFFS hereby demand a jury trial on all issues.

Dated: October 13, 2017                        CALIFORNIA CIVIL RIGHTS LAW GROUP

_____
LAWRENCE A. ORGAN
NAVRUZ AVLONI
Attorneys for Plaintiffs
DEMETRIC DI-AZ, OWEN DIAZ and LAMAR
PATTERSON

32

Complaint for Damages and Demand for Jury Trial