# EXHIBIT A

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**
ENDORSED
FILED
ALAMEDA COUNTY

OCT 16 2017

CLERK OF THE SUPERIOR COURT

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Tesla, Inc. dba Tesla Motors, Inc.; Citistaff
Solutions, Inc.; West Valley Staffing Group;
Chartwell Staffing Services, Inc.; DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Demetric Di-az, Owen Diaz,
Lamar Patterson

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

**CASE NUMBER:** *(Número del Caso):*

1225 Fallon St
Oakland, CA 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lawrence A. Organ 175503 California Civil Rights Law Group
332 San Anselmo Ave (415) 453-4740
San Anselmo, CA 94960

DATE: OCT 16 2017          **Chad Finke**     Clerk, by _Asal Spons_ , Deputy
*(Fecha)*                              *(Secretario)*                          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* CHARTWELL STAFFING SERVICES INC.
   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

CEB Essential Forms
ceb.com

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Diaz-Patterson

4

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Lawrence A. Organ 175503<br>California Civil Rights Law Group<br>332 San Anselmo Ave<br>San Anselmo, CA 94960<br>TELEPHONE NO.: (415) 453-4740    FAX NO.: (415) 785-7352<br>ATTORNEY FOR *(Name)*: Di-az, Diaz, and Patterson | ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>OCT 16 2017<br><br>CLERK OF THE SUPERIOR COURT |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon St
MAILING ADDRESS: 1225 Fallon St
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson

CASE NAME: Di-az et al. v. Tesla, Inc. et al.

| CIVIL CASE COVER SHEET<br>[X] Unlimited  [ ] Limited<br>(Amount        (Amount<br>demanded     demanded is<br>exceeds $25,000)  $25,000 or less) | Complex Case Designation<br>[ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>RG17073... <br>JUDGE:<br>DEPT.: |
|---|---|---|

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400-3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property | [ ] Other collections (09) | [ ] Construction defect (10) |
| Damage/Wrongful Death) Tort | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | Real Property | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | Enforcement of Judgment |
| [ ] Civil rights (08) | Unlawful Detainer | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | Miscellaneous Civil Complaint |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | Judicial Review | Miscellaneous Civil Petition |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| Employment | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [X] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties          d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve                   in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence              f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify)*:  16
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 10/13/2017

Lawrence A. Organ
        (TYPE OR PRINT NAME)                                    ▶                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CEB  Essential<br>ceb.com  Forms | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|---|

Diaz-Patterson

5

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice-
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach-Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case-Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ-Administrative Mandamus
Writ-Mandamus on Limited Court
Case Matter
Writ-Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal-Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late
Claim
Other Civil Petition

1  LAWRENCE A. ORGAN (SBN 175503)
   NAVRUZ AVLONI (SBN 279556)
2  CALIFORNIA CIVIL RIGHTS LAW GROUP
   332 San Anselmo Avenue
3  San Anselmo, California 94960
   Tel.:  (415) 453-4740
4  Fax.:  (415) 785-7352
5  larry@civilrightsca.com
   navruz@civilrightsca.com
6
7  Attorneys for Plaintiffs
   DEMETRIC DI-AZ, OWEN DIAZ AND LAMAR PATTERSON
8

ENDORSED
FILED
ALAMEDA COUNTY

OCT 16 2017

CLERK OF THE SUPERIOR COURT

9       IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10   IN AND FOR THE COUNTY OF ALAMEDA - UNLIMITED JURISDICTION

11

12  DEMETRIC DI-AZ, OWEN DIAZ and
    LAMAR PATTERSON,
13
           Plaintiffs,
14
        v.
15
    TESLA, INC. DBA TESLA MOTORS, INC.;
16  CITISTAFF SOLUTIONS, INC.; WEST
    VALLEY STAFFING GROUP;
17  CHARTWELL STAFFING SERVICES, INC.;
    and DOES 1-10, inclusive,
18
           Defendants.
19

Case No. R G 1 7 3 7 8 0 5 4

COMPLAINT FOR DAMAGES

1. Racial Discrimination, Harassment,
   Retaliation, Failure to Prevent, Constructive
   and Wrongful Termination in Violation of 42
   U.S.C. § 1981;
2. Racial Discrimination in Violation of the
   Unruh Civil Rights Act;
3. Retaliation - Unruh Civil Rights Act;
4. Threats of Violence in Violation of the Ralph
   Civil Rights Act;
5. Threats of Violence - Bane Act;
6. Interference with Constitutional Rights in
   Violation of the Bane Act;
7. Whistleblower Retaliation;
8. Racial Harassment under FEHA;
9. Racial Discrimination under FEHA;
10. Retaliation under FEHA;
11. Failure to Prevent under FEHA;
12. Negligent Infliction of Emotional Distress;
13. Intentional Infliction of Emotional Distress;
14. Negligent Hiring Retention and Supervision;
15. Wrongful Termination; and
16. Constructive Discharge.

JURY TRIAL DEMANDED

20
21
22
23
24
25
26
27
28

## INTRODUCTION

1.     Even amongst the giants of California's Silicon Valley, Tesla, Inc. stands out as an innovative and groundbreaking company that is at the forefront of the electric vehicle revolution. As a result, Owen Diaz, his son Demetric Di-az, and Lamar Patterson were thrilled when they landed work at Tesla's production factory, located in Fremont, California.

2.     Instead of a modern workplace, however, Plaintiffs encountered a scene straight from the Jim Crow era. Although the men worked in different areas of the factory, all three were targets of racially motivated abuse, including the frequent use of racial slurs. Plaintiffs complained to their supervisors, but Tesla, Inc., took no action. Plaintiffs quickly learned that Tesla's progressive image was a façade papering over its regressive, demeaning treatment of African-American employees.

## PARTIES

3.     Defendant Tesla, Inc., d.b.a. Tesla Motors, Inc., (hereinafter "Tesla") is a publicly-traded Delaware corporation whose principal place of business is located in Palo Alto, California. Tesla designs, manufactures, and sells electric vehicles. One of Tesla's vehicle manufacturing facilities, also known as the "Tesla Factory," is located at 45500 Fremont Boulevard in Fremont, California. The harassing conduct at issue in this case took place at the Tesla Factory in Fremont. Due to Tesla's ownership of the facility, its day-to-day managerial role in the facility, its right to hire, fire and discipline the employees, and its control of all terms and conditions of Plaintiff's employment, Tesla is Plaintiffs' joint employer, which provides employment pursuant to contract.

4.     Defendant Citistaff Solutions, Inc. (hereinafter "Citistaff") is a California corporation whose principal place of business is located in Orange, California. Citistaff is a staffing company that provides trained employees to businesses for short-and long-term assignments, and therefore provides employment pursuant to contract. When Citistaff's employees are sent to work at their client's sites, they receive paychecks from Citistaff. Citistaff retains control over hiring and firing decisions and also selects the locations where its employees work. Plaintiffs are informed and believe and on that basis allege that in addition to being joint

1  employers, Defendants Tesla and Citistaff are alter egos and/or integrated enterprises such that
2  the actions of one entity can be and are attributable to the other entity.

3       5.    Defendant West Valley Staffing Company (hereinafter "West Valley") is a
4  staffing corporation with corporate offices in Sunnyvale, California. West Valley provides
5  trained employees for short and long-term assignments to other businesses, and therefore
6  provides employment pursuant to contract. When West Valley employees are sent to work at
7  other business' sites, they receive paychecks from West Valley, West Valley retains control over
8  hiring and firing decisions, and also selects the locations at which its employees work. Plaintiffs
9  are informed and believe and on that basis allege that in addition to being joint employers,
10 Defendants Tesla and West Valley are alter egos and/or integrated enterprises such that the
11 actions of one entity can be and are attributable to the other entity.

12      6.    Defendant Chartwell Staffing Services Inc. (hereinafter "Chartwell"), doing
13 business as Chartwell Staffing Solutions, is a staffing corporation with corporate offices in San
14 Jose, California. Chartwell provides employees for short and long-term assignments to
15 businesses in the United States, and therefore provides employment pursuant to contract.
16 Plaintiff Lamar Patterson applied for a Tesla position through Chartwell. He received all relevant
17 training and orientation directly through Tesla, clocked in and out using Tesla's timekeeping
18 system, and Tesla maintained power over hiring and firing decisions. Plaintiff Lamar Patterson
19 selected to work for Tesla, rather than being assigned a location by Chartwell. Plaintiffs are
20 informed and believe and on that basis allege that in addition to being joint employers,
21 Defendants Tesla and Chartwell are alter egos and/or integrated enterprises such that the actions
22 of one entity can be and are attributable to the other entity.

23      7.    Plaintiff Demetric Di-az (hereinafter "Demetric") was employed as a Production
24 Associate jointly by defendants West Valley and Tesla from approximately August of 2015
25 through October of 2015. Demetric was placed by West Valley at the Tesla Factory in Fremont,
26 California. Demetric is, and at all relevant times herein was, an adult African-American resident
27 of California.

28

1        8.    Plaintiff Owen Diaz (hereinafter "Owen") was employed as an Elevator Operator

2  jointly by defendants Citistaff and Tesla between approximately June 2015 and May of 2016.

3  Owen was placed by Citistaff at the Tesla Factory in Fremont, California. Owen is, and at all

4  relevant times herein was, an adult African-American resident of California.

5        9.    Plaintiff Lamar Patterson (hereinafter "Lamar") was employed as an Elevator

6  Operator jointly by defendants Chartwell and Tesla between approximately January 2016 and

7  August 2016. Lamar is, and at all relevant times herein was, an adult African-American resident

8  of California.

9        10.    Each Defendant is sued individually and as the agent or employee of every other

10  Defendant acting within the course and scope of said agency or employment, with the knowledge

11  or consent of the other co-Defendants.

12        11.    In addition to the Defendants named above, Plaintiffs sue fictitiously named

13  Defendants Does 1 through 10, inclusive, pursuant to Section 474 of the California Code of Civil

14  Procedure, because their names, capacities, status, or facts showing them to be liable to Plaintiffs

15  are not presently known. Plaintiffs are informed and believe, and based thereon allege, that each

16  of the fictitiously named Defendants is responsible in some manner for the occurrences herein

17  alleged, and such Defendants caused Plaintiffs' damages as herein alleged. Plaintiffs will amend

18  this complaint to show these Defendants' true names and capacities, together with appropriate

19  charging language, when such information has been ascertained.

20                      **JURISDICTION AND VENUE**

21        12.    Jurisdiction and venue are proper in this court pursuant to Section 52 of the

22  California Civil Code and Section 395(a) of the California Code of Civil Procedure. The amount

23  in controversy exceeds the jurisdictional minimum of this court.

24        13.    Venue is proper in this county because the employment contract giving rise to

25  Demetric's causes of action was performed in Alameda County, and the implied employment

26  contract giving rise to Owen's and Lamar's causes of action was performed in Alameda County.

27  //

28  //

## FACTUAL ALLEGATIONS

### DEMETRIC DI-AZ

14.     In approximately August of 2015, Demetric's father, Owen, informed him that West Valley had openings for positions at the Tesla Factory in Fremont, California.

15.     Demetric was excited at the prospect of working at the Tesla Factory so he applied for a position with West Valley. His application was accepted, and he signed a contract and began his training on August 24, 2015.

16.     In approximately August 2015, Demetric began working at the Tesla Factory as a Production Associate. Demetric participated in the development and application of Tesla's manufacturing system for the battery of its electric sedan, the Model S.

17.     Demetric took pride in his work, and was excited to work on the creation of Tesla's innovative vehicles.

18.     However, Demetric found it increasingly difficult to enjoy his job because of the daily racist epithets that he had to endure throughout his shift.  Demetric was called "nigger" on a regular basis, and observed other African-American employees enduring the same treatment. Additionally, Demetric's father, Owen, told him about racist epithets directed at him and showed Demetric offensive drawings he came across at the Tesla Factory.

19.     This treatment continued throughout Demetric's employment for West Valley and Tesla. For example, when Owen came to Demetric's department to bring him lunch, Demetric's shift lead said, "All you fucking niggers - I can't stand you motherfuckers."

20.     Demetric found this treatment demeaning and unbearably offensive.

21.     Demetric complained to West Valley about the racist abuse he endured at work on a daily basis. West Valley took no action.

22.     Upset and offended, Demetric complained to his supervisor at Tesla in October of 2015. He stated, "The way you're treating me - calling me an 'n-word' every day - that's not right." His supervisor replied, "If you don't like how you're treated, your time here is going to end." "So," Demetric asked, "you're going to fire me?" His supervisor replied, "You're a temp, anyway."

23.   After Demetric complained, the racist abuse dramatically increased in frequency.

24.   Within days of making his complaint, Demetric was issued a written warning based on accusations of misconduct. He was accused of using his phone on the production line. Prior to this written warning, Demetric had a good performance record.

25.   Within just one week of his complaint to his supervisor at the Tesla Factory, he was terminated for "breaking the rules." Other employees with similar warning were not terminated.

26.   Demetric believed the written warning and subsequent termination were pretextual. Demetric believed that his employment was terminated because he objected to the racist harassment and discrimination.

27.   As a direct and proximate result of the acts and omissions of the Defendants, Demetric has suffered, and continues to suffer emotional distress and psychological damage. This includes, but is not limited to: humiliation, mental anguish, stress, fear, depression, and anxiety.

28.   Defendants' actions have also resulted in wage and benefit losses, and are expected to lead to additional economic loss in the future.

29.   As a result of the Defendants' actions, Demetric hired private counsel to prosecute this action. Pursuant to California Civil Codes Sections 52.1, 51.7, and 52(b)(3), and Title 42 USC section 1988, Demetric is entitled to recover attorney's fees associated with the prosecution of these claims.

30.   Defendants' acts were malicious or oppressive, and intended to vex, injure, annoy, humiliate, and embarrass Demetric, and with conscious disregard of the rights and safety of Demetric and other African-American employees of West Valley. Demetric is informed and believes, and based thereon alleges, that West Valley and Tesla's managing agents ratified the wrongful conduct of Tesla's employees, because they were aware of the discriminatory conduct, and  failed to take immediate remedial action after Demetric's report of the oppressive conduct.

//

//

Complaint for Damages and Demand for Jury Trial

1

**OWEN DIAZ**

2    31.    Owen was elated when he discovered, in the summer of 2015, that he would be

3  working at Tesla as an Elevator Operator through Citistaff.

4    32.    In his early days at the Tesla Factory, Owen was excited to go to work every

5  morning. He was a good and hardworking employee, and his performance caught his

6  supervisors' attention. Within the first month of the start of his employment at the factory, an

7  Asian-American supervisor promoted him to an elevator lead position.

8    33.    The supervisor warned him, however, that Tesla wouldn't want "someone like

9  him" to be a lead. Owen believed his supervisor was stating that Tesla would not want an

10  African-American man as a lead.

11    34.    Owen's opinion of Tesla quickly soured, as his supervisor's prediction proved

12  true. After beginning his employment at the Tesla Factory, Owen became the subject of vitriolic

13  racial harassment. Tesla Factory employees directed racial epithets, such as "nigger," at him and

14  other African-American Tesla employees on a daily basis.

15    35.    Other employees in the factory also instructed Owen, "Go back to Africa,"

16  implying that, as an African-American man, Owen did not belong in the United States.

17    36.    When Owen was operating the elevator with Conveyance Supervisor Robert (last

18  name unknown), Robert instructed Owen to press the elevator by saying, "Nigger, hurry up,

19  press the button."

20    37.    Robert regularly referred to Owen as "nigger," and also frequently called him

21  "boy" in a demeaning tone.

22    38.    To Owen, these degrading modes of address were reminiscent of the way slave

23  owners referred to their slaves. He found this racist behavior to be unbearable.

24    39.    Owen also witnessed racial slurs being used towards other African-American

25  employees. His son, Demetric, worked in another department of the Tesla Factory. When Owen

26  brought Demetric lunch one day, he overheard Demetric's supervisor referring to the African-

27  American workers at the factory as "fucking niggers."

28

7

13

40.     Owen felt demeaned and offended when Tesla's employees referred to him as a "nigger." The constant use of this offensive language made him depressed. However, what truly broke Owen down was witnessing these racist epithets directed at his son, and hearing his son tell him about the racism he was experiencing at work.

41.     Owen complained verbally to Citistaff, but Citistaff took no action.

42.     Tesla's employees also drew racist and derogatory caricatures of African children that resembled the "pickaninny" imagery of the early twentieth century. These drawings typically featured images of dark-skinned individuals with big lips and bones in their hair. Features which are erroneously, and stereotypically, associated with African-American individuals. An example of such racially offensive conduct is attached as Exhibit A.

43.     To ensure there was no doubt about the racist intent behind this appalling imagery, the drawings were typically accompanied with captions such as, "Booo!" - suggesting that African-American individuals are undesirable and unpleasant.

44.     These drawings were regularly placed around the factory, in locations where African-American employees, including Owen, were certain to view them.

45.     Constantly viewing this racially offensive and demeaning imagery, coupled with the offensive message, caused Owen to feel demeaned, disrespected, and devalued.

46.     Owen discovered that the elevator supervisor, Ramon, was the source of the drawings. Owen confronted Ramon and explained that he found the drawings offensive and demeaning. Owen requested that Ramon stop his behavior.

47.     Ramon responded flippantly, "We're just playing, why do you people take things so hard?" By "you people," Ramon meant African-American employees.

48.     Ramon refused to stop the offensive behavior.

49.     Owen was distressed that Ramon would make the assumption that his rightful anger over this racist act was merely oversensitivity.

50.     Tesla supervisor Michael Wheeler was aware of the harassment and offensive drawings made by Ramon around the factory, and so was Owen's supervisor Ed Romero (hereinafter "Romero"). Because Owen was hired by Citistaff and not Tesla, he was informed he

8

14

1  could not complain to Tesla's Human Resources department. In frustration, he sent a written

2  complaint to Romero, his supervisor at Tesla.

3      51.    Romero stated that he would look in to the issue, but took no action. The

4  harassing Tesla employees remained employed, and Owen was forced to continue to endure their

5  harassment.

6      52.    Owen also complained to Citistaff, but Citistaff likewise took no action.

7      53.    On approximately October 17, 2015, Owen was training another Citistaff

8  employee, Rothai. He was in the middle of explaining to Rothai that Romero would be his

9  supervisor when the elevator doors opened to reveal Ramon.

10      54.    Ramon flew into a rage upon overhearing their conversation, and shouted, "Do

11  you have a problem with me?! Why are you telling him who his supervisor is?!" Owen and

12  Rothai had not been speaking about Ramon at all.

13      55.    Fearful, Owen did not respond. Ramon followed him into the elevator, and came

14  within inches of Owen's body, preventing him from escaping. Ramon continued to shout and

15  gesture aggressively.

16      56.    Based on Ramon's threatening words and conduct, and previous racist and

17  generally hostile conduct, Owen feared that Ramon would hit him or otherwise harm him.

18      57.    Ramon was an able-bodied male who worked as a laborer, so Owen reasonably

19  believed that Ramon had the ability to physically harm him.

20      58.    Owen asked Ramon to step back, and reminded Ramon that a security camera was

21  recording the exchange. Eventually, Ramon exited the elevator.

22      59.    Following this exchange, Owen contacted Romero via email. He wrote,

23  "…because of the way Ramon was acting I don't feel safe around him now. Can you please talk

24  to him[?] I don't need any problems. I just want to do my job."

25      60.    Romero responded by writing, "Owen, I will speak to Ramon and follow up by

26  speaking to you." Romero never again contacted Owen regarding the incident. Ramon continued

27  to work with Owen, and Owen was not aware of any disciplinary measures taken against Ramon.

28      61.    Owen contacted Citistaff regarding this incident, Citistaff still took no action.

1    62.    The harassment and discrimination Owen experienced escalated after he made

2  this complaint. Tesla's employees used racial slurs with greater frequency.

3    63.    Although Tesla and Citistaff had notice of the discriminatory and harassing

4  behavior at the Tesla Factory, Tesla and Citistaff took no steps to protect African-American

5  employees.

6    64.    In fact, Tesla and Citistaff ratified and supported the racially harassing behavior.

7  In the spring of 2016, Citistaff informed Owen that he would be demoted from his supervisory

8  position, because he was causing too much trouble, despite the fact that he had no negative

9  performance reviews or disciplinary issues.

10    65.    Owen believed this explanation was merely a pretext. Owen believed Citistaff and

11  Tesla were threatening him with a demotion in retaliation for his complaints regarding the racist,

12  discriminatory behavior he experienced.

13    66.    Eventually, in approximately May of 2016, Owen quit his employment. Owen

14  could no longer bear the abusive, racially harassing treatment he encountered daily at work.

15  Since Citistaff and Tesla had repeatedly refused to investigate the racist behavior and instead

16  ratified the attempts at retaliation by threatening Owen with a demotion, he worried that the

17  situation would only degenerate further.

18    67.    As a direct and proximate result of the acts and omissions of the Defendants,

19  Owen has suffered, and continues to suffer emotional distress and psychological damage. This

20  includes, but is not limited to: humiliation, mental anguish, stress, fear, depression, and anxiety.

21    68.    Defendants' actions have also resulted in past wage and benefit loss, and are

22  expected to lead to additional economic loss in the future.

23    69.    As a result of the Defendants' actions, Owen hired private counsel to prosecute

24  this action. Pursuant to California Civil Codes Sections 52.1, 51.7, and 52(b)(3), and Title 42

25  USC Section 1988, Owen is entitled to recover attorney's fees associated with the prosecution of

26  these claims.

27    70.    Defendants' acts were malicious or oppressive, and intended to vex, injure,

28  annoy, humiliate, and embarrass Owen, and with conscious disregard of the rights and safety of

10

16

1  Owen and other African-American employees of Defendants. Owen is informed and believes,

2  and based thereon alleges, that managing agents ratified the wrongful conduct of the Defendants'

3  employees, because they were aware of this conduct and failed to take immediate remedial

4  action, and retained the errant employees after Owen's report of the oppressive conduct.

5  **LAMAR PATTERSON**

6      71.    Lamar was excited to join Tesla as an Elevator Operator when he was hired in

7  approximately January 2016. He worked hard and hoped to embark on a long-term career path at

8  the company that he so much admired.

9      72.    It did not take long for Lamar to learn that the company was a hotbed for racist

10  behavior. Both employees and supervisors used the word "nigger" freely and frequently

11  throughout the Tesla Factory, left racist caricatures, images, and effigies around the factory for

12  African-American employees to see, and made "jokes" such as, "Go back to Africa. We don't

13  want you here!"

14      73.    Lamar complained to Supervisor Ed Romero about the use of the word "nigger"

15  and the hurtful "jokes." However, neither Romero nor anyone else at Tesla took action to address

16  the issue; he continued to hear the racist epithets on a regular basis, throughout his workday.

17      74.    Unable to bear the abusive and racially harassing treatment he encountered daily

18  at work any longer, Lamar quit his employment with Defendants Tesla and Chartwell in

19  approximately August of 2016.

20      75.    As a direct and proximate result of the acts and omissions of the Defendants,

21  Lamar has suffered, and continues to suffer emotional distress and psychological damage. This

22  includes, but is not limited to: depression and anxiety.

23      76.    Defendants' actions have also resulted in past wage and benefit loss, and are

24  expected to lead to additional economic loss in the future.

25      77.    As a result of the Defendants' actions, Lamar hired private counsel to prosecute

26  this action. Pursuant to California Government Code section 12965(b), California Civil Codes

27  Sections 52.1, 51.7, and 52(b)(3), and Title 42 USC Section 1988, Owen is entitled to recover

28  attorney's fees associated with the prosecution of these claims.

11

17

78.     Defendants' acts were malicious or oppressive, and intended to vex, injure, annoy, humiliate, and embarrass Lamar, and with conscious disregard of the rights and safety of Lamar and other African-American employees of Defendants. Lamar is informed and believes, and based thereon alleges, that managing agents ratified the wrongful conduct of the Defendants' employees, because they were aware of this conduct and failed to take immediate remedial action, and retained the errant employees after Lamar's report of the oppressive conduct.

79.     On or about July 31, 2017, Lamar filed a timely charge against Defendants Tesla and Chartwell with the Department of Fair Employment and Housing alleging discrimination, harassment and retaliation on the basis of race and color; failure to prevent harassment, discrimination and retaliation; and constructive termination. The DFEH issued a right-to-sue letter regarding this charge on July 31, 2017.

**FIRST CAUSE OF ACTION**
RACIAL DISCRIMINATION, RACIAL HARASSMENT (HOSTILE WORK ENVIRONMENT), RETALIATION, FAILURE TO INVESTIGATE AND PREVENT DISCRIMINATION AND HARASSMENT, WRONGFUL TERMINATION, CONSTRUCTIVE DISCHARGE
42 U.S.C. § 1981
(As to All Plaintiffs; Against All Defendants)

80.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

81.     As African-American men, Plaintiffs are members of a protected class. At all relevant times herein, Demetric was in a contractual relationship with defendant West Valley within the meaning of 42 U.S.C. § 1981, as amended. At all relevant times herein, Owen was in a contractual relationship with defendants Citistaff and Tesla within the meaning of 42 U.S.C. § 1981, as amended. At all relevant times herein, Lamar was in a contractual relationship with defendants Chartwell and Tesla within the meaning of 42 U.S.C. § 1981, as amended.

82.     During the course of Demetric, Owen and Lamar's employment, defendants Tesla, West Valley, Citistaff and Chartwell violated Plaintiffs' rights by depriving Plaintiffs of their right to the enjoyment of all benefits, privileges, terms, and conditions of Plaintiffs'

1  employment contract "as is enjoyed by white citizens," in direct violation of 42 U.S.C. §

2  1981(b).

3       83.     Specifically, Tesla's employees and supervisors subjected Plaintiffs and others to

4  racial harassment, racial discrimination, and a racially hostile work environment, culminating in

5  an end to their employment relationship with Tesla. Tesla, West Valley, Citistaff and Chartwell

6  failed to investigate and prevent incidents of racial harassment, despite numerous reports and

7  complaints, thereby evidencing a pattern and practice of racial discrimination and harassment.

8  All four defendants retaliated against Plaintiffs for complaining of a hostile work environment by

9  issuing Demetric a written warning based on false allegations, approving the retaliatory

10 termination of Demetric, and making the work environment so unbearable that Owen and Lamar

11 had no choice but to quit their employment.

12      84.     Tesla acted intentionally to discriminate against Plaintiffs. Tesla's supervisory

13 employees and agents used racial epithets and racist imagery to harass and intimidate Plaintiffs

14 and others, and ignored Plaintiffs' repeated reports regarding this harassment and discrimination.

15      85.     Defendants failed to prevent the racially harassing and retaliatory behavior

16 directed at Plaintiffs and others. Ultimately, Plaintiff Demetric was wrongfully terminated, and

17 Plaintiffs Owen and Lamar were constructively terminated.

18      86.     Through their actions and treatment of Plaintiffs, Defendants and their agents

19 intended to discriminate against Plaintiffs on the basis of their race.

20      87.     Defendants' violations of the Civil Rights Act of 1866, as amended, caused

21 Plaintiffs to suffer harm as set forth above.

22      88.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set

23 forth herein.

24      89.     By reason of the conduct of Defendants as alleged herein, Plaintiffs have

25 necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

26 reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

27 incurred in bringing this action.

28

13

19

1    90.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and
2  oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of
3  the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.
4  Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according
5  to proof.

6                          **SECOND CAUSE OF ACTION**
7        RACIAL DISCRIMINATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
                                  Cal. Civ. Code § 51
8                      (As to All Plaintiffs; Against Defendant Tesla)

9    91.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully
10 reproduced herein.

11   92.    Plaintiffs are African-American men, and residents of California.

12   93.    Defendant Tesla's Factory in Fremont is a business establishment for the purposes
13 of the Unruh Civil Rights Act. A business establishment is a facility which is offered "to
14 qualified [workers], who are not the establishment's employees, in exchange for...
15 considerations." *Payne v. Anaheim Memorial Medical Center, Inc.*, 130 Cal. App. 4th 729, 733
16 (2005) (review denied). Defendant Tesla operates its Fremont Factory as a business
17 establishment, offering the use of its facilities to qualified contractors, who are not its employees,
18 in exchange for payment.

19   94.    Tesla acted intentionally to discriminate in its business establishment against
20 Plaintiffs. Tesla's supervisory employees and agents used racial epithets and racist imagery to
21 harass and intimidate Plaintiffs, ignored Plaintiffs' repeated reports regarding this harassment
22 and discrimination, and prevented Plaintiffs from accessing its facilities in retaliation for
23 Plaintiffs' complaints of discrimination and harassment.

24   95.    Defendants' violations of the Unruh Civil Rights Act caused Plaintiffs to suffer
25 harm as set forth above.

26   96.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover
27 statutory damages of a maximum of three times the amount of actual damages, or a minimum of
28 $4,000.

97.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

98.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

**THIRD CAUSE OF ACTION**
RETALIATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
Cal. Civ. Code § 51
(As to Plaintiffs' Demetric and Owen; Against Defendant Tesla)

99.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

100.    The Unruh Act prohibits retaliation against persons who complain about conduct they reasonably believe to violate the Act. *See, e.g., Vaughn v. Hugo Neu Proler Int'l* (1990) 223 Cal.App.3d 1612, 1619.

101.    Plaintiffs reasonably believed the race harassment they experienced at Tesla's Fremont factory to be a violation of their rights under California law.

102.    Plaintiffs complained against the harassment, and Defendants retaliated against Plaintiffs for reporting the harassment by issuing Demetric a write up and subsequently terminating his employment, and by threatening Owen with a demotion. Defendants further retaliated against Plaintiffs by subjecting them to further harassment.

103.    Defendants' violations of the Unruh Civil Rights Act caused Plaintiffs to suffer harm as set forth above.

104.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover statutory damages of a maximum of three times the amount of actual damages, or a minimum of $4,000.

15
Complaint for Damages and Demand for Jury Trial
21

1    105.   By reason of the conduct of Defendants as alleged herein, Plaintiffs have

2  necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

3  reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

4  incurred in bringing this action.

5    106.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and

6  oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of

7  the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

8  Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according

9  to proof.

10                              **FOURTH CAUSE OF ACTION**

11       THREATS OF VIOLENCE IN VIOLATION OF THE RALPH CIVIL RIGHTS ACT
                                   Cal. Civ. Code § 51.7

12                     (As to Owen; Against Defendants Citistaff and Tesla)

13    107.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

14  reproduced herein.

15    108.   Plaintiff Owen is an African-American man who worked at Tesla's Fremont

16  Factory while employed by Citistaff.

17    109.   While working at the factory, Owen was subjected to threats of violence by a

18  Tesla employee, Ramon. Without any provocation, Ramon screamed at and physically

19  intimidated Owen. Based on this and Ramon's previous hostile behavior, Owen believed that

20  Ramon intended to hit him.

21    110.   In addition to his use of threatening language, Ramon, rushed into the elevator

22  with Owen. He moved so that he was merely inches from Owen's body, preventing Owen from

23  leaving the elevator. Ramon then continued to scream at Owen and berated and belittled him.

24    111.   Ramon's demeanor and conduct was threatening, such that Owen believed he was

25  in imminent physical danger.  Ramon was an able-bodied male with the apparent ability to cause

26  Owen physical harm.

27

28

                                              16

112.     Based on Ramon's history of racially discriminatory and demeaning acts, Owen believed that Ramon's behavior was motivated by his hatred of and prejudice towards African-Americans.

113.     Owen reported Ramon's actions to Tesla. However, Tesla took no action, and implicitly ratified Ramon's abuse by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

114.     Tesla further ratified Ramon's actions by retaliating against Owen and suggesting that Owen be demoted as punishment for reporting Ramon's racially abusive behavior.

115.     Because Tesla ratified Ramon's actions, Tesla is liable for his abuse under the doctrine of *respondeat superior*.

116.     Owen reported Ramon's actions to Citistaff. However, Citistaff took no action, and implicitly ratified Ramon's abusive behavior by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

117.     Because Citistaff ratified Ramon's actions, Citistaff is liable for his abuse.

118.     Defendants' violations of Section 51.7 of the California Civil Code caused Plaintiff Owen to suffer harm as set forth above.

119.     As a result of Defendants' unlawful acts, Plaintiff is entitled to recover a civil penalty of $25,000.

120.     By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

121.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

//

17

1

**FIFTH CAUSE OF ACTION**

2

THREATS OF VIOLENCE IN VIOLATION OF THE BANE ACT
Cal. Civ. Code § 52.1(a)

3

(As to Plaintiff Owen; Against Defendants Citistaff and Tesla)

4         122.    Plaintiff incorporates the foregoing paragraphs by reference, as though fully

5    reproduced herein.

6         123.    Plaintiff Owen is an African-American man who worked at Tesla's Fremont

7    Factory while employed by Citistaff.

8         124.    While working at the factory, Owen was subjected to threats of violence by a

9    Tesla employee, Ramon. Without any provocation, Ramon screamed at and physically

10   intimidated Owen. Based on this and Ramon's previous hostile behavior, Owen believed that

11   Ramon intended to hit him.

12        125.    In addition to his use of threatening language, Ramon, rushed into the elevator

13   with Owen. He moved so that he was merely inches from Owen's body, preventing Owen from

14   leaving the elevator. Ramon then continued to scream at Owen and berated and belittled him.

15        126.    Ramon's demeanor and conduct was threatening, such that Owen believed he was

16   in imminent physical danger.  Ramon was an able-bodied male with the apparent ability to cause

17   Owen physical harm.

18        127.    Based on Ramon's history of racially discriminatory and demeaning acts, Owen

19   believed that Ramon's behavior was motivated by his hatred of and prejudice towards African-

20   Americans.

21        128.    Owen reported Ramon's actions to Tesla. However, Tesla took no action, and

22   implicitly ratified Ramon's abuse by failing to investigate his actions, and allowing Ramon to

23   continue to abuse and harass Owen.

24        129.    Tesla further ratified Ramon's actions by retaliating against Owen and threatening

25   demoting him as punishment for reporting Ramon's racially abusive behavior.

26        130.    Because Tesla ratified Ramon's actions, Tesla is liable for his abuse under the

27   doctrine of *respondeat superior*.

28

18

24

131. Owen reported Ramon's actions to Citistaff. However, Citistaff took no action, and implicitly ratified Ramon's abusive behavior by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

132. Because Citistaff ratified Ramon's actions, Citistaff is liable for his abuse under the doctrine of *respondeat superior*.

133. Defendants' violations of Section 52.1 of the California Civil Code caused Plaintiffs to suffer harm as set forth above.

134. As a result of Defendants' unlawful acts, Plaintiff Owen is entitled to recover civil penalties of $25,000.

135. By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

136. Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## SIXTH CAUSE OF ACTION
INTERFERENCE WITH CONSTITUTIONAL RIGHTS IN VIOLATION OF BANE ACT
Cal. Civ. Code § 52.1(b)
(As to All Plaintiffs; Against All Defendants)

137. Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

138. Defendants interfered with Plaintiffs' constitutional right entitling them to equal protection.

139. Defendants adopted the conduct, through their officers, directors, managing agents, or supervisory employees. They further ratified the conduct by failing to take appropriate prompt remedial action.

19

25

140.    A substantial motivating reason for Defendants' conduct was Plaintiffs' race.

141.    Defendants interfered with Plaintiffs' right to be free from discrimination on the basis of race as set forth above, and permitted working conditions that denied Plaintiffs their constitutional right entitling them to equal protection.

142.    Defendants' conduct caused Plaintiffs to suffer, and continue to suffer damages as set forth above.

143.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

144.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

### SEVENTH CAUSE OF ACTION
WHISTLEBLOWER RETALIATION
(Cal. Labor Code 1102.5)
(As to Plaintiffs Demetric and Owen; Against All Defendants)

145.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

146.    At all relevant times mentioned herein, Plaintiffs were African-American residents of California.

147.    At all relevant times mentioned herein, Demetric was an employee of defendant West Valley and Tesla.

148.    Demetric engaged in protected activity when he reported the racially harassing and discriminatory behavior to West Valley and Tesla, including the threat to terminate his employment for his refusal to endure the daily racial harassment.

20

26

1    149.    Demetric had a reasonable, good-faith belief that this behavior was a violation of

2    the federal Civil Rights Act of 1964, and other state and federal statutes.

3    150.    West Valley and Tesla took adverse employment action against Demetric.

4    Without justification or basis in fact, both entities accepted as true the assertions of Demetric's

5    harassers that he was a poor performer; they then terminated Demetric's employment on that

6    false basis. West Valley and Tesla did this even though they knew that Demetric's supervisor

7    responded to his complaint of harassment by threatening to terminate Demetric's employment.

8    151.    In terminating Demetric, West Valley and Tesla ratified the discriminatory

9    behavior.

10    152.    At all relevant times mentioned herein, Owen was an employee of defendant

11    Citistaff and Tesla.

12    153.    Owen engaged in protected activity when he reported the racially harassing and

13    discriminatory behavior to Citistaff and Tesla.

14    154.    Owen had a reasonable, good-faith belief that this behavior was a violation of the

15    federal Civil Rights Act of 1964, and other state and federal statutes.

16    155.    Citistaff and Tesla took adverse employment action against Owen by threatening

17    him with a demotion. However, Owen had a positive performance history, and Tesla only

18    threatened Owen with a demotion as punishment for complaining of the racist harassment.

19    156.    In accepting as true the proffered reasons for threatening Owen with a demotion,

20    even though Owen had complained to Citistaff and Tesla of the discriminatory behavior of

21    Tesla's employees on numerous occasions, Citistaff and Tesla ratified and continued the

22    discriminatory behavior.

23    157.    Defendants' violations of Section 1102.5 of the California Labor Code caused

24    Plaintiffs to suffer harm as set forth above.

25    158.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover civil

26    penalties of $10,000 for each violation.

27    159.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have

28    necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to

21

27

1 │ reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

2 │ incurred in bringing this action.

3 │     160.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and

4 │ oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of

5 │ the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

6 │ Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according

7 │ to proof.

8 │ **EIGHTH CAUSE OF ACTION**
9 │ RACIAL HARASSMENT
   Cal. Govt. Code § 12940, *et seq.*
10 │ (As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

11 │     161.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

12 │ reproduced herein.

13 │     162.   Plaintiff Lamar at all times was an employee covered by the Fair Employment

14 │ and Housing Act ("FEHA"), California Government Code §§ 12940(a) and (j), which prohibits

15 │ an employer from discriminating and harassing an employee on the basis of color and race.

16 │     163.   Defendants Tesla and Chartwell were, at all times, employers as defined under the

17 │ FEHA.

18 │     164.   The above-described actions constitute racial harassment and discrimination in

19 │ violation of the FEHA. Plaintiff Lamar was subjected to working in a severe, persistent and/or

20 │ pervasive racially hostile work environment, which interfered with his work performance, denied

21 │ him employment privileges, and adversely affected the terms and conditions of his job on the

22 │ basis of his race.

23 │     165.   The harassing conduct to which Plaintiff Lamar was subjected to was so severe,

24 │ widespread, and/or persistent that a reasonable African American in Plaintiff Lamar's

25 │ circumstances would have considered the work environment to be hostile and/or abusive.

26 │     166.   Plaintiff Lamar considered the work environment to be hostile and/or abusive.

27 │     167.   Defendants Tesla and Chartwell failed to take prompt, remedial and effective

28 │ action to stop the harassers.

22

28

1   168.   Defendants' violations of the FEHA caused Plaintiff Lamar to suffer harm as set

2   forth above.

3   169.   By reason of the conduct of Defendants as alleged herein, Plaintiff Lamar has

4   necessarily retained attorneys to prosecute the within action.  Plaintiff Lamar is therefore entitled

5   to reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

6   incurred in bringing the within action.

7   170.   Defendants did the acts alleged herein maliciously, fraudulently, and

8   oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious

9   disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting

10   to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount

11   according to proof.

12                          **NINTH CAUSE OF ACTION**
                              RACE DISCRIMINATION
13                          Cal. Govt. Code § 12940, *et seq.*
14              (As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

15   171.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

16   reproduced herein.

17   172.   Plaintiff Lamar at all times was an employee covered by the FEHA, California

18   Government Code §§ 12940(a) and (j), which prohibits an employer from discriminating against

19   an employee on the basis of color and race.

20   173.   Defendants Tesla and Chartwell were at all times employers as defined under the

21   FEHA.

22   174.   Tesla failed to take any action in response to Plaintiff's complaints because of his

23   color and race.

24   175.   Defendants' practice of failing to take any action in response to Plaintiff's

25   complaints was a substantial factor in causing Plaintiff's harm.

26   176.   Defendants' violations of the FEHA caused Plaintiff to suffer harm as set forth

27   above.

28

23

29

1    177.    By reason of the conduct of Defendants as alleged herein, Plaintiff Lamar has

2    necessarily retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to

3    reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

4    incurred in bringing the within action.

5    178.    Defendants did the acts alleged herein maliciously, fraudulently, and

6    oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious

7    disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting

8    to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount

9    according to proof.

## TENTH CAUSE OF ACTION
### RETALIATION
### Cal. Govt. Code 12940(h)
### (As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

10

11

12    179.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

13    reproduced herein.

14    180.    Plaintiff Lamar complained of harassment and discrimination that violated the

15    FEHA.

16    181.    Defendants Tesla and Chartwell took no action to ensure that Plaintiff was not

17    retaliated against or threatened for having complained.

18    182.    As a result of Defendants Tesla and Chartwell's action or inaction, Plaintiff was

19    subject to additional harassment, making the work environment so unbearable that Plaintiff

20    Lamar had no choice but to quit his employment.

21    183.    Defendants' violations of the FEHA caused Plaintiff to suffer harm as set forth

22    above.

23    184.    By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily

24    retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable

25    attorney's fees and litigation expenses, including expert witness fees and costs, incurred in

26    bringing the within action.

27    185.    Defendants did the acts alleged herein maliciously, fraudulently, and

28    oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious

24

30

1   disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting

2   to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount

3   according to proof.

### ELEVENTH CAUSE OF ACTION

FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT

Cal. Govt. Code § 12940, *et seq.*

(As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

186.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully
reproduced herein.

187.    Defendants Tesla and Chartwell failed to take all reasonable steps to prevent the
harassment and discrimination as described above. Defendants knew or should have known that
Tesla's employees were engaged in racially offensive behavior in the past and failed to stop it.

188.    Despite being on notice of Tesla's employees' propensity to engage in harassing
conduct, Defendants failed to act to prevent employees from harassing Plaintiff.

189.    Defendants also failed to enact an anti-discrimination policy and/or failed to
distribute it appropriately and failed to effectively train its employees on racial harassment or
discrimination.

190.    As a result of Defendants violations of the FEHA, Plaintiff suffered harm as set
forth above.

191.    By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily
retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable
attorney's fees and litigation expenses, including expert witness fees and costs, incurred in
bringing the within action.

192.    Defendants did the acts alleged herein maliciously, fraudulently, and
oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious
disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting
to malice. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount
according to proof.

//

25

1

## TWELFTH CAUSE OF ACTION

2

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(As to All Plaintiffs; Against All Defendants)

3

4

193.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

5

6

194.    As employees and contractors of Defendants, Plaintiffs were owed a duty of due care by Defendants, and each of them, to ensure that Plaintiffs were not exposed to foreseeable harms.

7

8

195.    Defendants, and each of them, knew, or should have known, that Plaintiffs were being subjected to racial harassment, discrimination and retaliation, and that, by failing to exercise due care to prevent racially harassing, discriminatory and retaliatory course of conduct could and would cause Plaintiffs to suffer serious emotional distress.

9

10

11

12

196.    Defendants, and each of them, failed to exercise their duty of due care to prevent their employees, managers, supervisors and/or officers from racially harassing, discriminating and retaliating against Plaintiffs.

13

14

15

197.    As a direct and consequential result of Defendants' actions, Plaintiffs suffered serious mental and emotional distress, includes, but is not limited to, pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege Defendants are responsible for the harm they suffered.

16

17

18

19

198.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

20

21

22

23

199.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

24

25

26

27

28

//

26

1

2

## THIRTEENTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(As to All Plaintiffs; Against All Defendants)

3

4

200.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

5

6

7

201.   Plaintiffs complained repeatedly to Tesla as well as to West Valley, Chartwell and Citistaff about the constant racial abuse they received on a daily basis. Plaintiffs made clear that the racial harassment caused them distress, humiliation, and suffering.

8

9

202.   When Defendants failed to take corrective action, Defendants knew that Plaintiffs would continue to suffer extreme emotional distress and harm as a result of their failure to act.

10

11

12

13

203.   As a direct and consequential result of Defendants' actions, Plaintiffs have suffered severe emotional distress to their persons. Such harm includes, but is not limited to, pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege Defendants are responsible for the harm they suffered.

14

15

16

17

204.   By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

18

19

20

21

22

205.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

23

## FOURTEENTH CAUSE OF ACTION

24

25

NEGLIGENT HIRING, RETENTION AND SUPERVISION
(As to All Plaintiffs; Against All Defendants)

26

27

206.   Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

28

27

33

207.    Upon information and belief, Defendants, by and through its agents and employees, knew or reasonably should have known through reasonable investigation of some of its agents and/or employees' propensity for unlawful racially harassing and physically aggressive behavior.

208.    Defendants had a duty not to hire or retain these employees/agents given their wrongful, dangerous, and racially offensive propensities, and to provide reasonable supervision of these employees/agents.

209.    Defendants negligently hired, retained and/or failed to adequately supervise these employees/agents in their positions where they were able to commit the wrongful acts complained of here against Plaintiffs. Defendants failed to provide reasonable supervision of these employees/agents despite knowing of their propensities and complaints made against them.

210.    As a direct and consequential result of Defendants' actions, Plaintiffs have suffered serious emotional distress to their persons. Such harm includes, but is not limited to, pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege Defendants are responsible for the harm they suffered.

211.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

212.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FIFTEENTH CAUSE OF ACTION
WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
(As to Plaintiff Demetric; Against Defendant West Valley and Tesla)

213.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

1    214.    Defendant Tesla and West Valley punished Demetric by terminating his

2    employment.

3    215.    Although Defendants stated that Demetric should be terminated for performance

4    issues, this was merely a pretext. Demetric did not have a history of written warnings or

5    performance issues warranting a termination until he was issued a written warning for using his

6    phone on the production line within days of complaining to his supervisor of the racially

7    discriminatory and harassing behavior he was subjected to at work. His supervisor responded to

8    his complaint by threatening to terminate Demetric's employment, and ultimately did terminate

9    his employment approximately a week after Demetric made his complaint.

10    216.    West Valley ratified Tesla's discriminatory behavior by terminating Demetric

11    without conducting any investigation into the veracity of the claims against him, thereby

12    approving of Tesla's discriminatory motives.

13    217.    West Valley and Tesla's decision to terminate Demetric's employment based on

14    discriminatory motives was contrary to the policies, rules, regulations, and laws of the State of

15    California, which are in substantial part designed to protect employees from discriminatory,

16    harassing, and otherwise harmful or unlawful conduct. Said policies are encoded in Article 1,

17    Section 8 of the Constitution of the State of California, and in Section 12900 *et seq.* of the

18    California Government Code. Demetric's termination therefore constituted an unlawful

19    termination under California law.

20    218.    Defendants' violations of these constitutional and statutory provisions caused

21    Plaintiff Demetric to suffer harm as set forth above.

22    219.    By reason of the conduct of Defendants as alleged herein, Plaintiff Demetric has

23    necessarily retained attorneys to prosecute the present action. Plaintiff Demetric is therefore

24    entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and

25    costs, incurred in bringing this action.

26    220.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and

27    oppressively; with the wrongful intention of injuring Plaintiff Demetric; with the conscious

28    disregard of the rights and safety of Plaintiff Demetric; and with an improper and evil motive

29

35

1   amounting to malice. Plaintiff Demetric is thus entitled to recover punitive damages from

2   Defendants in an amount according to proof.

3   ### SIXTEENTH CAUSE OF ACTION

4   CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY
(As to Plaintiff Owen and Lamar; Against Defendants Tesla, Citistaff and Chartwell)

5       221.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

6   reproduced herein.

7       222.    At all relevant times herein, Owen was an employee of Citistaff and Tesla; and

8   Lamar was an employee of Chartwell and Tesla.

9       223.    Citistaff and Tesla constructively terminated Owen's employment, and Chartwell

10  and Tesla constructively terminated Lamar's employment by permitting a hostile work

11  environment to flourish at the Tesla Factory, where Owen and Lamar were continuously

12  subjected to harassment and discrimination.

13      224.    Owen and Lamar complained about the use of racial slurs, the display of racially

14  offensive images, and the use of offensive statements. Owen also complained in writing about

15  the violent conduct Ramon directed towards him.

16      225.    When Owen complained of this conduct, Tesla's employees only escalated their

17  threatening and discriminatory behavior, and attempted to demote Owen.

18      226.    No reasonable African-American person could have borne the constant

19  harassment, discrimination, intimidation, and threatening behavior directed at Owen and Lamar

20  on a daily basis.

21      227.    As a result, when Defendants Tesla, Citistaff and Chartwell repeatedly declined to

22  intervene and prevent the harassment, Owen and Lamar had no choice but to quit.

23      228.    Defendants Tesla, Chartwell and Citistaff's failure to halt the racial harassment

24  and discrimination was contrary to the policies, rules, regulations, and laws of the State of

25  California, which are in substantial part designed to protect employees from discriminatory,

26  harassing, and otherwise harmful or unlawful conduct. Said policies are encoded in Article 1,

27  Section 8 of the Constitution of the State of California, and in Section 12900 *et seq*. of the

28  California Government Code. Defendants Tesla and Citistaff's constructive termination of

30

36

1  Owen, and Defendants Tesla and Chartwell's constructive termination of Lamar therefore
2  constituted a wrongful termination under California law.

3      229.   Defendants' violations of these constitutional and statutory provisions caused
4  Plaintiffs Owen and Lamar to suffer harm as set forth above.

5      230.   By reason of the conduct of Defendants as alleged herein, Plaintiffs Owen and
6  Lamar have necessarily retained attorneys to prosecute the present action.  Plaintiffs Owen and
7  Lamar are therefore entitled to reasonable attorney's fees and litigation expenses, including
8  expert witness fees and costs, incurred in bringing this action.

9      231.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and
10  oppressively; with the wrongful intention of injuring Plaintiffs Owen and Lamar; with the
11  conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive
12  amounting to malice. Plaintiffs Owen and Lamar are thus entitled to recover punitive damages
13  from Defendants in an amount according to proof.

14                              **REQUEST FOR RELIEF**

15      WHEREFORE, Plaintiffs request judgment against the Defendants as follows:

16      1.     General damages according to proof, in an amount no less than the jurisdictional
17  limit of this court;

18      2.     Special damages in amounts according to proof, together with prejudgment
19  interest;

20      3.     Exemplary and punitive damages in amounts according to proof;

21      4.     Civil penalties pursuant to Section 52(a), 52(b)(2), and 52.1(a) of the California
22  Civil Code; and Section 1102.5(f) of the California Labor Code;

23      5.     Attorneys' fees and costs pursuant to sections 52(a), 52(b)(3), and 52.1(h) of the
24  California Civil Code; section 12965(b) of the California Government Code, and any other
25  applicable statute;

26      6.     Interest as provided by law;

27      7.     Costs of suit incurred herein;

28

1      8.     Injunctive relief to require Defendants to better train its staff on race harassment,

2  discrimination and retaliation, and develop effective policies and procedures to ensure that when

3  harassment is reported, the company takes effective remedial measures; and

4      9.     For such other and further relief as the Court deems just and proper.

5

6  Dated: October 13, 2017           CALIFORNIA CIVIL RIGHTS LAW GROUP

7

8

9

10

11                      LAWRENCE A. ORGAN

                       NAVRUZ AVLONI

12                      Attorneys for Plaintiffs

13                      DEMETRIC DI-AZ, OWEN DIAZ and LAMAR

                       PATTERSON

14

15

16                  **DEMAND FOR JURY TRIAL**

17       PLAINTIFFS hereby demand a jury trial on all issues.

18

19  Dated: October 13, 2017           CALIFORNIA CIVIL RIGHTS LAW GROUP

20

21

22

23

24                      LAWRENCE A. ORGAN

                       NAVRUZ AVLONI

25                      Attorneys for Plaintiffs

26                      DEMETRIC DI-AZ, OWEN DIAZ and LAMAR

                       PATTERSON

27

28

California Civil Rights Law Group
Attn: Organ, Lawrence A.
332 San Anselmo Ave.
San Anselmo, CA   94960____

## Superior Court of California, County of Alameda

| Di-Az | | No. <u>RG17878854</u> |
|---|---|---|
| | **Plaintiff/Petitioner(s)** | **NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER** |
| | VS. | Unlimited Jurisdiction |
| Tesla, Inc. | | |
| | **Defendant/Respondent(s)** | |
| | (Abbreviated Title) | |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:
Notice is given that a Case Management Conference has been scheduled as follows:

| Date: **03/02/2018**<br>Time: **02:30 PM** | Department: **518**<br>Location: **Hayward Hall of Justice**<br>**3rd Floor**<br>**24405 Amador Street, Hayward  CA 94544**<br><br>Internet: **www.alameda.courts.ca.gov** | Judge: **Dennis Hayashi**<br>Clerk: **Dianne Hyatt**<br>Clerk telephone: **(510) 690-2727**<br>E-mail:<br>**Dept518@alameda.courts.ca.gov**<br>Fax: **(510) 267-1585** |
|---|---|---|

### ORDERS

1. **Plaintiff** must:

   a. **Serve all named defendants** and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)); and

   b. **Give notice** of this conference to all other parties and file proof of service.

2. **Defendant must** respond as stated on the summons.

3. **All parties who have appeared before the date of the conference** must:

   a. **Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724;

   b. **File and serve** a completed *Case Management Statement* on Form CM-110 at least **15** days before the Case Management Conference (Cal. Rules of Court, rule 3.725); and

   c. **Post jury fees** as required by Code of Civil Procedure section 631.

4. If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

5. You are further ordered to appear in person or through your attorney of record at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed. You may be able to appear at Case Management Conferences by telephone. Contact CourtCall, an independent vendor, at least three business days before the scheduled conference. Call 1-888-882-6878, or fax a service request to (888) 882-2946. The vendor charges for this service.

6. You may file *Case Management Conference Statements* by E-Delivery. Submit them directly to the E-Delivery Fax Number (510) 267-5732. No fee is charged for this service. For further information, go to <u>www.alameda.courts.ca.gov/ff</u>.

7. The judge may place a *Tentative Case Management Order* in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the website of each assigned department for procedures regarding tentative case management orders at <u>www.alameda.courts.ca.gov/dc</u>.

---

39

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 10/18/2017.

By _____ digital _____ S. Ugamu _____

Deputy Clerk

## Superior Court of California, County of Alameda



## Notice of Assignment of Judge for All Purposes
### September 6, 2017

Case Number: RG17878854
Case Title:    Di-Az VS Tesla, Inc.
Date of Filing: 10/16/2017

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:**

| | |
|---|---|
| **Judge:** | **Dennis Hayashi** |
| **Department:** | **518** |
| **Address:** | **Hayward Hall of Justice** |
| | **24405 Amador Street** |
| | **Hayward  CA  94544** |
| **Phone Number:** | **(510) 690-2727** |
| **Fax Number:** | **(510) 267-1585** |
| **Email Address:** | **Dept518@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law.  (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

**NOTICE OF NONAVAILABILITY OF COURT REPORTERS:** Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

Courtesy copies of all law and motion papers shall be delivered directly to Department 518.

41

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

## General Procedures

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the René C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, George E. McDonald Hall of Justice, 2233 Shoreline Drive, Alameda, California, 94501 and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Dennis Hayashi
DEPARTMENT 518

All parties are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's Web site also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

## Schedule for Department 518

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held:  Court Trials:  Monday through Friday; 8:45 a.m. to 1:00 p.m.

- Jury Trials:  Monday through Friday; 8:45 a.m. to 1:00

- Case Management Conferences are held:  Mondays, Tuesdays and Fridays at 2:30 p.m.

- Law and Motion matters are heard:  Wednesdays and Thursdays at 2:30 p.m.

- Settlement Conferences are heard:  As scheduled by the judge.

- Ex Parte matters are heard:  Wednesdays and Thursdays at 2:30 p.m.

- Pretrial Hearings are heard on Tuesdays at 2:30 p.m. (hearings are scheduled 2 weeks prior to the trial date).

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

42

- Motion Reservations
  - Email:  dept518@alameda.courts.ca.gov
  - Phone:  (510) 690-2727

- Ex Parte Matters
  - Email:  dept518@alameda.courts.ca.gov
  - Phone:  (510) 690-2727

## Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules. Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 518
- Phone: 1-866-223-2244

Dated: 10/17/2017

_____
Presiding Judge,
Superior Court of California, County of Alameda

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 10/18/2017

By _____
Deputy Clerk

**EXHIBIT B**

ROGER M. MANSUKHANI  (SBN:  164463)
CRAIG D. NICKERSON  (SBN:  215067)
MEGAN L. HAYATI (SBN  271888)
GORDON  & REES SCULLY MANSUKHANI, LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Tel: 213-576-5000
Fax: 213-680-4470
mhayati@grsm.com

*Attorneys for Defendant*
**CHARTWELL STAFFING SERVICES, INC.**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DEMETRIC DI-AZ, OWEN DIAZ and LAMAR
PATTERSON, an individual

        Plaintiff,

    vs.

TESLA, INC. DBA TESLA MOTORS, INC.;
CITISTAFF SOLUTIONS, INC.; WEST VALLEY
STAFFING GROUP; CHARTWELL STAFFING
SERVICES, INC. and DOES 1-10, inclusive,

        Defendants.

Case No.   3:17-cv-06748

[Removal from Superior Court of California,
Alameda County Superior Court Case No.
RG117878854 ]

**DEFENDANT CHARTWELL STAFFING
SERVICES' JOINDER IN NOTICE OF
REMOVAL OF ACTION**

    Defendant CHARTWELL STAFFING SERVICES, INC. hereby joins in Defendant TESLA, INC. DBA TESLA MOTORS, INC.'s Notice of Removal to this Court of the state court action described in the said Notice of Removal.

DATED:  November 22, 2017       GORDON & REES SCULLY MANSUKHANI, LLP

                    By: */s/ Megan Hayati*
                       Roger M. Mansukhani
                       Megan L. Hayati
                       Attorneys for Defendant
                       CHARTWELL STAFFING
                       SERVICES, INC.

8010110/35756586v.1

**EXHIBIT D**

# JAMS Employment Arbitration Rules & Procedures

*Effective July 1, 2014*



47

# JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

JAMS provides arbitration and mediation services worldwide. We resolve some of the world's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

JAMS arbitrators and mediators are full-time neutrals who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained, experienced ADR professionals are dedicated to the highest ethical standards of conduct.

Parties wishing to write a pre-dispute JAMS arbitration clause into their agreement should review the sample arbitration clauses on page 4. These clauses may be modified to tailor the arbitration process to meet the parties' individual needs.



48

# TABLE OF CONTENTS

Administrative Fees. . . . . . . . . . . . . . . . . . . . . . . 3

## Sample Clauses for Use in Employment Dispute Resolution Programs and Contracts

Sample Clause for Mediation Only . . . . . . . . . . . . . . 4

Sample Clause for Mediation and Arbitration. . . . . . . 4

## JAMS Employment Arbitration Rules & Procedures

Rule 1.  Scope of Rules. . . . . . . . . . . . . . . . . . . . . 5

Rule 2.  Party Self-Determination . . . . . . . . . . . . . . . 6

Rule 3.  Amendment of Rules  . . . . . . . . . . . . . . . . . 6

Rule 4.  Conflict with Law . . . . . . . . . . . . . . . . . . . 6

Rule 5.  Commencing an Arbitration . . . . . . . . . . . . . 6

Rule 6.  Preliminary and Administrative Matters. . . . . 7

Rule 7.  Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 8.  Service . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rule 9.  Notice of Claims. . . . . . . . . . . . . . . . . . . 11

Rule 10. Changes of Claims . . . . . . . . . . . . . . . . . 12

Rule 11. Interpretation of Rules and Jurisdictional Challenges. . . . . . . . . . . . . 12

Rule 12. Representation. . . . . . . . . . . . . . . . . . . . 13

Rule 13. Withdrawal from Arbitration. . . . . . . . . . . . 13

Rule 14. Ex Parte Communications . . . . . . . . . . . . . 13

Rule 15. Arbitrator Selection, Disclosures and Replacement . . . . . . . . . . . . . . . . . . . 14

Rule 16. Preliminary Conference. . . . . . . . . . . . . . . 16

Rule 17. Exchange of Information . . . . . . . . . . . . . . 16

Rule 18. Summary Disposition of a Claim or Issue  . . 17

Rule 19. Scheduling and Location of Hearing. . . . . . 18

Rule 20. Pre-Hearing Submissions  . . . . . . . . . . . . 18

Rule 21. Securing Witnesses and Documents for the Arbitration Hearing. . . . . . . . . . . . 19

Rule 22. The Arbitration Hearing. . . . . . . . . . . . . . . 19

Rule 23. Waiver of Hearing. . . . . . . . . . . . . . . . . . 21

Rule 24. Awards . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Rule 25. Enforcement of the Award . . . . . . . . . . . . . 23

Rule 26. Confidentiality and Privacy . . . . . . . . . . . . 23

Rule 27. Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Rule 28. Settlement and Consent Award . . . . . . . . . 24

Rule 29. Sanctions. . . . . . . . . . . . . . . . . . . . . . . . . 25

Rule 30. Disqualification of the Arbitrator
as a Witness or Party and
Exclusion of Liability . . . . . . . . . . . . . . . . 25

Rule 31. Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Rule 32. Bracketed (or High-Low)
Arbitration Option. . . . . . . . . . . . . . . . . . . 27

Rule 33. Final Offer (or Baseball)
Arbitration Option. . . . . . . . . . . . . . . . . . . 27

Rule 34. Optional Arbitration Appeal Procedure . . . . 28

## Administrative Fees

For two-party matters, JAMS charges a $1,200 Filing Fee, to be paid by the party initiating the Arbitration. For matters involving three or more parties, the Filing Fee is $2,000. A Case Management Fee of 12% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation.

JAMS neutrals set their own hourly, partial and full-day rates. For information on individual neutrals' rates and the administrative fees, please contact JAMS at 800.352.5267. The fee structure is subject to change.

## Sample Clauses for Use in Employment Dispute Resolution Programs and Contracts

The following are basic sample clauses providing for mediation or arbitration in an employment contract. A variety of issues may affect the enforceability or effectiveness of these sample clauses; therefore, it is recommended that you review applicable law in your jurisdiction and consult experienced counsel for advice. The information contained herein should not be considered legal advice or legal opinion. For information about setting a case, call your local JAMS office at 800.352.5267.

### Sample Clause for Mediation Only

*Any controversy, dispute or claim arising out of or relating to this [contract] or breach thereof shall first be settled through good-faith negotiation [OR company employment program] [other]. If the dispute cannot be settled through negotiation [OR company employment program] [other], the parties agree to attempt in good faith to settle the dispute by mediation administered by JAMS.*

### Sample Clause for Mediation and Arbitration

*Any controversy, dispute or claim arising out of or relating to this [contract] or breach thereof shall first be settled through good-faith negotiation [OR company employment program] [other]. If the dispute cannot be settled through negotiation [OR company employment program] [other], the parties agree to attempt in good faith to settle the dispute by mediation administered by JAMS. If the parties are unsuccessful at resolving the dispute through mediation, the parties agree to [binding] arbitration administered by JAMS pursuant to its Employment Arbitration Rules & Procedures and subject to JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. Judgment on the Award may be entered in any court having jurisdiction.*

All of the JAMS Rules, including the Employment Arbitration Rules set forth below, can be accessed at the JAMS website: **www.jamsadr.com/rules-clauses.**

# JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949.224.1810.*

## Rule 1.  Scope of Rules

(a)  The JAMS Employment Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed.

(b)  The Parties shall be deemed to have made these Rules a part of their Arbitration agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c)  The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees.

(d)  JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e)  The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f)   "Electronic filing" (e-file) means the electronic transmission of documents to and from JAMS and other Parties for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents via JAMS Electronic Filing System to a party, attorney or representative under these Rules.

## Rule 2.  Party Self-Determination

(a)  The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness and Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

(b)  When an Arbitration Agreement provides that the Arbitration will be non-administered or administered by an entity other than JAMS and/or conducted in accordance with rules other than JAMS Rules, the Parties may subsequently agree to modify that Agreement to provide that the Arbitration will be administered by JAMS and/or conducted in accordance with JAMS Rules.

## Rule 3.  Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## Rule 4.  Conflict with Law

If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## Rule 5.  Commencing an Arbitration

(a) The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following:

(i)    A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or

(ii)    A pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

(iii)    A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

(iv)   The Respondent's failure to timely object to JAMS administration; or

(v)   A copy of a court order compelling Arbitration at JAMS.

(b)  The issuance of the Commencement Letter confirms that requirements for commencement have been met, that JAMS has received all payments required under the applicable fee schedule and that the Claimant has provided JAMS with contact information for all Parties along with evidence that the Demand for Arbitration has been served on all Parties.

(c)  If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 19, the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)  The date of commencement of the Arbitration is the date of the Commencement Letter but is not intended to be applicable to any legal requirements such as the statute of limitations, any contractual limitations period or claims notice requirements. The term "commencement," as used in this Rule, is intended only to pertain to the operation of this and other Rules (such as Rule 3, 13(a), 17(a), 31(a)).

## Rule 6.  Preliminary and Administrative Matters

(a) JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b)  If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

(c)  If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termina-

tion of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d) JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within thirty (30) calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing, and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for thirty (30) calendar days following the conclusion of the Arbitration.

(e) Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

(i) If a Party files more than one Arbitration with JAMS, JAMS may consolidate the Arbitrations into a single Arbitration.

(ii) Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

(iii) Where a Demand or Demands for Arbitration is or are submitted naming parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f)   Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances he or she deems relevant and applicable.

## Rule 7.  Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson

(a)   The Arbitration shall be conducted by one neutral Arbitrator, unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b)   In cases involving more than one Arbitrator, the Parties shall agree on, or, in the absence of agreement, JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed to produce documents.

(c)  Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party, unless the Parties have agreed that they shall be non-neutral.

## Rule 8.  Service

(a)  The Arbitrator may at any time require electronic filing and service of documents in an Arbitration. If an Arbitrator requires electronic filing, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of all documents filed through JAMS Electronic Filing System. Any document filed electronically shall be considered as filed with JAMS when the transmission to JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date. Upon completion of filing, JAMS

Electronic Filing System shall issue a confirmation receipt that includes the date and time of receipt. The confirmation receipt shall serve as proof of filing.

(b) Every document filed with JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to JAMS Electronic Filing System, and shall bear the typed name, address and telephone number of a signing attorney. Documents containing signatures of third parties (i.e., unopposed motions, affidavits, stipulations, etc.) may also be filed electronically by indicating that the original signatures are maintained by the filing Party in paper format.

(c) Delivery of e-service documents through JAMS Electronic Filing System to other registered users shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service completes the transmission of the electronic document(s) to JAMS Electronic Filing System for e-filing and/or e-service. Upon actual or constructive receipt of the electronic document(s) by the Party to be served, a Certificate of Electronic Service shall be issued by JAMS Electronic Filing System to the Party initiating e-service, and that Certificate shall serve as proof of service. Any Party who ignores or attempts to refuse e-service shall be deemed to have received the electronic document(s) 72 hours following the transmission of the electronic document(s) to JAMS Electronic Filing System.

(d) If an electronic filing or service does not occur because of (1) an error in the transmission of the document to JAMS Electronic Filing System or served Party which was unknown to the sending Party; (2) a failure to process the electronic document when received by JAMS Electronic Filing System; (3) the Party was erroneously excluded from the service list; or (4) other technical problems experienced by the filer, the Arbitrator or JAMS may, for good cause shown, permit the document to be filed *nunc pro tunc* to the date it was first attempted to be sent electronically. Or, in the case of service, the Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e) For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document.

(f)   In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period.

## Rule 9.  Notice of Claims

(a)  Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim, or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b)  Claimant's notice of claims is the Demand for Arbitration referenced in Rule 5. It shall include a statement of the remedies sought. The Demand for Arbitration may attach and incorporate a copy of a Complaint previously filed with a court. In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.

(c) Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have.

(d) Within fourteen (14) calendar days of service of a counterclaim, a Claimant may submit to JAMS and serve on other Parties a response to such counterclaim and any affirmative defenses, including jurisdictional challenges, it may have.

(e) Any claim or counterclaim to which no response has been served will be deemed denied.

(f) Jurisdictional challenges under Rule 11 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability.

## Rule 10.   Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third Party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

## Rule 11.   Interpretation of Rules and Jurisdictional Challenges

(a)  Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c)  Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d)  The Arbitrator may, upon a showing of good cause or *sua sponte*, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 22(i) or 24.

## Rule 12.   Representation

(a)  The Parties, whether natural persons or legal entities such as corporations, LLCs, or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone and fax numbers and email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b)  Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone and fax numbers and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

## Rule 13.   Withdrawal from Arbitration

(a)  No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b) A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## Rule 14.   *Ex Parte* Communications

(a)  No Party may have any *ex parte* communication with a neutral Arbitrator, except as provided in section (b) of this Rule. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b)  A Party may have *ex parte* communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts, as well as in connection with the selection of the Chairperson of the arbitral panel.

(c) The Parties may agree to permit more extensive *ex parte* communication between a Party and a non-neutral Arbitrator. More extensive communications with a non-neutral Arbitrator may also be permitted by applicable law and rules of ethics.

## Rule 15.   Arbitrator Selection, Disclosures and Replacement

(a)  Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b) If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c)  Within seven (7) calendar days of service by the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d)  If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many members of the tripartite panel as are necessary to complete the panel.

(e)  If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f)  Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS

shall determine whether the interests between entities are adverse for purposes of Arbitrator selection, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

(g)  If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule, unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h)  Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it. The Parties and their representatives shall disclose to JAMS any circumstances likely to give rise to justifiable doubt as to the Arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the Arbitration or any past or present relationship with the Parties and their representatives. The obligation of the Arbitrator, the Parties and their representatives to make all required disclosures continues throughout the Arbitration process.

(i)  At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j)  Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the party who did not appoint that Arbitrator.

## Rule 16.  Preliminary Conference

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a)  The exchange of information in accordance with Rule 17 or otherwise;

(b)  The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c)  The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d)  The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e)  The attendance of witnesses as contemplated by Rule 21;

(f)  The scheduling of any dispositive motion pursuant to Rule 18;

(g)  The premarking of exhibits, preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h)  The form of the Award; and

(i)  Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## Rule 17.  Exchange of Information

(a)  The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing

and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report, which may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b) Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the re- quested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and witness.

(c)  As they become aware of new documents or informa- tion, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non- privileged documents, to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d) The Parties shall promptly notify JAMS when a dis- pute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

## Rule 18.  Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion.

## Rule 19.   Scheduling and Location of Hearing

(a)  The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b)  If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c)  The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena *duces tecum* to a third-party witness.

## Rule 20.   Pre-Hearing Submissions

(a) Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; and (3) a list of all exhibits intended to be used at the Hearing. The Parties should exchange with each other copies of any such exhibits to the extent that they have not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b)  The Arbitrator may require that each Party submit a concise written statement of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## Rule 21.  Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena *duces tecum* shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## Rule 22.  The Arbitration Hearing

(a)  The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so. It is expected that the Employee will attend the Arbitration Hearing, as will any other individual party with information about a significant issue.

(b)  The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c)  The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise at the discretion of the Arbitrator.

(d)  Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e) The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

(f)   The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g)   The Hearing, or any portion thereof, may be conducted telephonically or videographically with the agreement of the Parties or at the discretion of the Arbitrator.

(h) When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date determined by the Arbitrator, to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted, or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments, whichever is later.

(i)   At any time before the Award is rendered, the Arbitrator may, *sua sponte* or on application of a Party for good cause shown, reopen the Hearing. If the Hearing is reopened, the time to render the Award shall be calculated from the date the reopened Hearing is declared closed by the Arbitrator.

(j)   The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and

may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k)  Any Party may arrange for a stenographic or other record to be made of the Hearing and shall inform the other Parties in advance of the Hearing.

(i)   The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii)  If there is no agreement to share the cost, the stenographic record may not be provided to the Arbitrator and may not be used in the proceeding, unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii) If the Parties agree to the Optional Arbitration Appeal Procedure (see Rule 34), they shall, if possible, ensure that a stenographic or other record is made of the Hearing.

(iv)  The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## Rule 23.   Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## Rule 24.   Awards

(a)  The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing, as defined in Rule 22(h) or (i), or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b)  Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c)  In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(d)  In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e)  Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f)  The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an allocation is expressly prohibited by the Parties' Agreement or by applicable law. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

(g)  The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(h)  The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions

on which the Award is based. The Parties may agree to any other form of Award, unless the Arbitration is based on an arbitration agreement that is required as a condition of employment.

(i)   After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(j)   Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31 or on account of the effect of an offer to allow judgment), or the Arbitrator may *sua sponte* propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k)   The Award is considered final, for purposes of either the Optional Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected Award.

## Rule 25.   Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, *et seq.*, or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## Rule 26.   Confidentiality and Privacy

(a)   JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, includ-

ing the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b) The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c) Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## Rule 27.   Waiver

(a) If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b) If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## Rule 28.   Settlement and Consent Award

(a) The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree, pursuant to Rule 28(b).

(b) The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c) If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request, unless the

Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## Rule 29.  Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## Rule 30.  Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a)  The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b)  The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

(c)  The Parties agree that neither the Arbitrator, nor the Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

## Rule 31.   Fees

(a)  Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The nonpayment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b)  JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its *pro rata* or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c)  If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an employee may be required to pay is the initial JAMS Case Management Fee. JAMS does not preclude an employee from contributing to administrative and Arbitrator fees and expenses. If an Arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d)  Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS' assessment of fees. JAMS shall determine whether the interests between entities are adverse for purpose of fees, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

## Rule 32.   Bracketed (or High-Low) Arbitration Option

(a)  At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b)  JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c)  The Arbitrator shall render the Award in accordance with Rule 24.

(d)  In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## Rule 33.   Final Offer (or Baseball) Arbitration Option

(a)  Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide copies of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b)  If the Arbitrator has been informed of the written proposals, in rendering the Award, the Arbitrator shall choose between the Parties' last proposals, selecting the proposal

that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c)  If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals and the closest of the last proposals will become the Award.

(d)  Other than as provided herein, the provisions of Rule 24 shall be applicable.

## Rule 34.   Optional Arbitration Appeal Procedure

The Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedures to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

800.352.5267 | www.jamsadr.com