L. JULIUS M. TURMAN (SBN 226126)
jturman@constangy.com
BARBARA I. ANTONUCCI (SBN 209039)
bantonucci@constangy.com
PHILIP J. SMITH (SBN 232462)
psmith@constangy.com
AARON M. RUTSCHMAN (SBN 288273)
arutschman@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
351 California, Suite 200
San Francisco, CA 94104
Telephone: 415.918.3000
Facsimile: 415.918.3005

Attorneys for Defendant
TESLA, INC. DBA TESLA MOTORS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ and LAMAR PATTERSON, an individual<br><br>Plaintiff,<br><br>vs.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC. and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.: 3:17-cv-06748-WHO<br><br>**DEFENDANT TESLA, INC. DBA TESLA MOTORS, INC.'S JOINDER TO CHARTWELL STAFFING SERVICES, INC.'S MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 21, 2018<br>Time: 2:00 p.m.<br>Location: Courtroom 2<br><br>Judge: Hon. William H. Orrick<br><br>Complaint Filed: October 16, 2017<br>Removal: November 22, 2017<br>Trial Date: None Set |


**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 1

III. LEGAL ARGUMENT ............................................................................................. 3

    A. Plaintiff Should Be Compelled To Arbitrate His Claims Against Tesla ............... 3

        1. Plaintiff's Arbitration Agreement With Chartwell, By Its Terms, Applies To Tesla ................................................................................................... 3

        2. Plaintiff's Claims Against Tesla Are Inextricably Intertwined With His Claims Against Chartwell ................................................................... 3

        3. Joinder To A Motion To Compel Arbitration By A Nonsignatory Is Proper Where The Nonsignatory Party Willingly Submits To Arbitration ................................................................................................... 6

    B. The Federal Arbitration Act and Its Policy Favoring Arbitration Govern The Agreement ................................................................................................... 6

    C. The FAA Mandates Enforcement of the Parties' Arbitration Agreement ........... 8

    D. Section 1981 Claims Can Be Compelled To Arbitration ..................................... 9

IV. CONCLUSION ......................................................................................................... 9

# TABLE OF AUTHORITIES

**Federal Court Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
 513 U.S. 265 (1995) ............................................................................................................. 7
*AT&T Mobility LLC v. Concepcíon*,
 563 U.S. 333, 131 S. Ct. 1740 (2011) ............................................................................... 6, 7
*Chiron Corp. v. Ortho Diagnostic Sys.*,
 207 F.3d 1126 (9th Cir. 2000) ............................................................................................. 8
*Circuit City Stores, Inc. v. Adams*,
 532 U.S. 105 (2001) ............................................................................................................. 7
*Dean Witter Reynolds v. Byrd*,
 470 U.S. 213 (1985) .......................................................................................................... 7, 8
*Kramer v. Toyota Motor Corp.*,
 705 F.3d 1122 (9th Cir. 2013) ............................................................................................. 4
*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
 460 U.S. 1 (1983) ................................................................................................................. 7
*Murphy v. DirectTV, Inc.*,
 724 F.3d 1218 (9th Cir. 2013) ............................................................................................. 4
*Vargas v. Delivery Outsourcing, LLC*,
 2016 U.S. Dist. LEXIS 32634 (N.D. Cal. March 14, 2016) ............................................... 6

**State Court Cases**

*Boucher v. Alliance Title Co., Inc*,
 127 Cal. App. 4th 262 (2005) ......................................................................................... 3, 4
*Cione v. Foresters Equity Services*,
 58 Cal.App.4th 625 (1997) .................................................................................................. 8
*DMS Services, Inc. v. Superior Court*,
 205 Cal. App.4th 1346 (2012) ......................................................................................... 4, 5
*Dotson v. Amgen, Inc.*,
 181 Cal.App.4th 975 (2010) ................................................................................................ 7
*Garcia v. Pexco, LLC*,
 11 Cal. App. 5th 782 (2017) ............................................................................................ 1, 4
*Harris v. Superior Court*,
 188 Cal.App.3d 475 (1986) ................................................................................................. 8
*Izzi v. Mesquite Country Club*,
 186 Cal. App. 3d 1309 (1986) ............................................................................................. 6
*Jones v. Jacobson*,
 195 Ca1. App. 4th 1 (2011) ................................................................................................. 4
*Metalclad Corp. v. Ventana Environmental Organizational Partnership*,
 109 Cal. App. 4th 1705 (2003) ........................................................................................... 4
*Mission Viejo Emergency Med. Associates v. Beta Healthcare Group*,
 197 Cal.App.4th 1146 (2011) .............................................................................................. 8
*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*,
 186 Cal. App. 4th 696 (2010) ......................................................................................... 3, 4
*Moncharsh v. Heily & Blasé*,
 3 Cal.4th 1 (1992) ................................................................................................................ 8
*Serafin v. Balco Properties Ltd., LLC*,
 235 Cal. App. 4th 165, 177 (2015) ..................................................................................... 6
*Serpa v. California Surety Investigations, Inc.*,
 215 Cal.App.4th 695 (2013) ................................................................................................ 7
*Turtle Ridge Media Group, Inc. v. Pacific Bell Directory*,
 140 Cal. App. 4th 828 (2006) ............................................................................................. 3
*Zakarian v. Bekov*,
 98 Cal.App. 4th 316 (2002) ................................................................................................. 6

**Federal Statutory Authorities**
9 U.S.C. § 2 .................................................................................................................... 7
42 U.S.C. § 1981 ........................................................................................................... 2

**State Statutory Authorities**
Cal. Civ. Code § 1550 ................................................................................................... 8

**Federal Rules and Regulations**
Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 2

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD HEREIN:

PLEASE TAKE NOTICE that DEFENDANT TESLA, INC. DBA TESLA MOTORS, INC. ("Tesla") hereby joins DEFENDANT CHARTWELL STAFFING SERVICES, INC.'S ("Chartwell") MOTION TO COMPEL ARBITRATION (hereinafter the "Motion").

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Tesla hereby joins Chartwell's Motion to compel arbitration and respectfully requests that this Court order the claims against Tesla to arbitration. It is indisputable that Plaintiff Lamar Patterson ("Plaintiff" or "Patterson") entered into an arbitration agreement ("Agreement") with Chartwell and that all matters and disputes arising out of or relating to his employment with Chartwell are to be resolved by binding arbitration. The Agreement clearly applies to Tesla by its reference to "co-employers." Plaintiff concedes this by alleging in the instant lawsuit that Tesla jointly employed him. Further, Plaintiff's claims arise directly out of his employment with Chartwell and the work he performed at Tesla. Plaintiff's claims against Chartwell and Tesla are inextricably intertwined.

The fact that Tesla is a nonsignatory to the Agreement does not prevent Tesla from seeking to join Chartwell's Motion. Indeed, California courts have consistently permitted a nonsignatory to compel arbitration when the nonsignatory was alleged to be a joint employer with the signatory defendant. *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 788 (2017). Accordingly, Plaintiff should be compelled to arbitrate all claims against Chartwell and Tesla and Tesla further joins in Chartwell's request that Plaintiff's claims be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that this Court lacks jurisdiction or, in the alternative, stayed until the arbitration concludes.

## II.   STATEMENT OF FACTS

Plaintiff was hired by Chartwell and placed on assignment to Tesla working as an Elevator Operator in or around January 2016. (Request for Judicial Notice "RJN"), **Attachment A**, ¶ 9). On December 21, 2015, prior to commencing employment with Chartwell, Plaintiff signed the

1   Agreement. (RJN, **Attachments C and D**). The Agreement contains the following language in
2   pertinent part:

> "In the event of any controversy, claim, or dispute arising from, related to, or having any relationship or connection whatsoever with the **employment of**, or the association between, the employee signing below ("Employee") and Chartwell Staffing Services, Inc., including its **co-employers**, present and former partners, owners, shareholders, officers, managers, employees, agents, employee benefit and health plans, as well as parent entities, successor entities, related entities, and subsidiaries (together "Chartwell"), or the termination of employment, whether based on contract, tort, or statutory duty or prohibition, including any prohibition against discrimination or harassment, employee and Chartwell (together the "Parties") agree to submit the dispute to binding arbitration administered by JAMS subject to its Policy of Employment Arbitration Minimum Standards of Procedural Fairness and pursuant to its Employment Arbitration Rules (the "Rules") in effect on the date JAMS issues a commencement letter confirming that its requirements for commencement of arbitration have been met." (*Id.*). (emphasis added).

Notwithstanding the above, on or about October 16, 2017, Plaintiff filed a complaint in the Alameda Superior Court purporting to allege 11 causes of action, including: (1) race discrimination, harassment, retaliation, failure to prevent, constructive and wrongful termination (42 U.S.C. § 1981); (2) race discrimination (Unruh Civil Rights Act); (3) interference with constitutional rights (Bane Act); (4) race harassment (FEHA); (5) race discrimination (race) (FEHA); (6) retaliation (FEHA); (7) failure to prevent (FEHA); (8) negligent infliction of emotional distress; (9) intentional infliction of emotional distress; (10) negligent hiring, retention and supervision; and (11) constructive wrongful discharge in violation of public policy. (Declaration of Aaron M. Rutschman ("Rutschman Decl.") ¶ 3). Plaintiff specifically alleges that Chartwell and Tesla were his **co-employers**. (RJN, **Attachment A**, ¶¶ 3, 6, 74). Plaintiff seeks general and special damages, punitive damages, civil penalties, attorneys' fees, interest, costs and injunctive relief. (Rutschman Decl. ¶ 3).

On or around November 22, 2017, Tesla removed this action to the Northern District of California and Chartwell joined in the removal. (Rutschman Decl. ¶ 4). Tesla and Chartwell have not waived any right to compel binding arbitration as no discovery has been undertaken by any party to this action to date. (Rutschman Decl. ¶ 5). There is no possibility of harm or prejudice to Plaintiff

in staying this civil litigation and ordering that the dispute between the parties be moved into a binding arbitration format as Plaintiff specifically and contractually agreed to do so. (*Id.*)

## III. LEGAL ARGUMENT

### A. Plaintiff Should Be Compelled To Arbitrate His Claims Against Tesla

Non-signatories to an arbitration agreement may enforce a contractual arbitration agreement under the following circumstances: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Boucher v. Alliance Title Co., Inc.,* 127 Cal. App. 4th 262, 268 (2005).

#### 1. Plaintiff's Arbitration Agreement With Chartwell, By Its Terms, Applies To Tesla

The Arbitration Agreement with Chartwell clearly states that "In the event of any controversy, claim, or dispute arising from, related to, or having any relationship or connection whatsoever with the employment of, or the association between, the employee signing below ("Employee") and Chartwell Staffing Services, Inc., including its **co-employers**." Plaintiff alleges that Tesla jointly employed him (RJN, **Attachment A**, ¶¶ 3, 6, 74). Consequently, the terms of the Agreement expressly extend to and incorporate Tesla by reference.

#### 2. Plaintiff's Claims Against Tesla Are Inextricably Intertwined With His Claims Against Chartwell

Under the doctrine of equitable estoppel, a nonsignatory to an arbitration agreement may compel a signatory plaintiff to arbitrate his claims when those claims are intimately founded in and intertwined with arbitrable claims against another signatory. *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 706 (2010); *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory*, 140 Cal. App. 4th 828, 833 (2006) (subcontractor compelled to arbitrate claims against nonsignatory that was party to primary contract, which had arbitration clause); *Boucher v. Alliance*, 127 Cal. App. 4th 262, 269-71 (2005); *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705, 1713-19 (2003).

1    California principles of equitable estoppel apply in cases subject to the Federal Arbitration
2    Act ("FAA"). *Murphy v. DirectTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013); *Kramer v. Toyota
3    Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). Whether claims against a nonsignatory are
4    intimately founded in and intertwined with claims under the agreement against a signatory is
5    determined by a look to the relationships of persons, wrongs, and issues. *Jones v. Jacobson,* 195 Cal.
6    App. 4th 1, 20 (2011); *Molecular Analytical Systems*, *supra*, 186 Cal. App. 4th at 715. A finding that
7    claims against a nonsignatory are intimately founded in and intertwined with claims against a
8    signatory is generally based on the existence of a relationship between the nonsignatory and the
9    signatory, in which a sufficient identity of interest exists between them. *DMS Services, Inc. v.
10   Superior Court*, 205 Cal. App.4th 1346, 1353 (2012).

11   In *Boucher v. Alliance Title Co., Inc*., an employee whose employment contract contained an
12   arbitration clause sued his employer and a separate, sibling corporation of the employer to which the
13   employee's division had been transferred, alleging breach of the employment contract. Both
14   defendants sought to compel the employee to arbitrate the dispute. The Second District Court held
15   that "under both federal and California decisional authority, a nonsignatory defendant may invoke an
16   arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action
17   against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract
18   obligations. [Citations.]" *Boucher*, *supra*, 127 Cal.App.4th at 272. The *Boucher* court reasoned that
19   "[b]y relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively,
20   a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that
21   agreement. [Citations.]" *Id*. at p. 272.

22   Similarly, in *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 788 (2017), the Court of Appeal
23   found that a nonsignatory could compel arbitration when the nonsignatory defendant was alleged to
24   be a joint employer with the signatory defendant. *Id.,* 11 Cal. App. 5th at 788. The Court of Appeal
25   explained that while the general rule is that "one must be a party to an arbitration agreement to be
26   bound by it or invoke it," exceptions to the general rule existed. *Id*. at 785-86 (internal quotation
27   omitted). One such exception was equitable estoppel, under which "a nonsignatory defendant may
28

invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations." *Id*. at 786 (internal quotation omitted). Such an in intimate and intertwined relationship existed where the plaintiff's claims against the nonsignatory defendant were rooted in his employment relationship with the signatory defendant, and the plaintiff had failed to distinguish between the two defendants in any way. *Id*. at 787-88. Instead, all of the claims against the nonsignatory defendant were based on the same facts alleged against the signatory defendant, and the plaintiff alleged the two were joint employers. *Id*. at 788.

Here, Plaintiff alleges that he was an employee of Chartwell and Tesla. (RJN, **Attachment A**, ¶¶ 3, 6, 74). Plaintiff further alleges that, "Tesla and Chartwell are alter egos and/or integrated enterprises such that the actions of one entity can be and are attributable to the other entity." (RJN, **Attachment A**, ¶ 6). Indeed, each of his claims allege that Tesla and Chartwell acted jointly to commit the specific harm alleged. Furthermore, Chartwell provides temporary staffing employees to Tesla. Plaintiff's employment through Chartwell was ultimately intended to benefit Tesla. Indeed, Plaintiff performed work at Tesla facilities.

By his own admission and allegations, Plaintiff's claims against Chartwell are inextricably intertwined with his claims against Tesla. The claims arise from the same alleged bad acts, allegedly jointly carried out by both Chartwell and Tesla and causing the same alleged harm; thus, they are indisputably "intimately founded in and intertwined with" the arbitrable claims against Chartwell, the signatory to Plaintiff's employment agreement. Plaintiff is estopped from selectively claiming employment violations against Tesla and Chartwell, while at the same time disclaiming the applicability of the Arbitration Agreement he signed with Chartwell. Pursuant to this Agreement, Plaintiff specifically agreed that all claims or controversies arising from or related to or arising out of Plaintiff's employment would be subject to arbitration, which is precisely the nature of the claims being made in this lawsuit. Because Plaintiff's claims against Tesla are inextricably intertwined with his claims against Chartwell, this Court should grant Tesla's request to join in Chartwell's Motion to compel arbitration.

### 3. Joinder To A Motion To Compel Arbitration By A Nonsignatory Is Proper Where The Nonsignatory Party Willingly Submits To Arbitration

A signatory to an arbitration agreement cannot avoid arbitration by filing suit against a nonsignatory who willingly agrees to submit to arbitration. *See Vargas v. Delivery Outsourcing, LLC*, 2016 U.S. Dist. LEXIS 32634, 15-16 (N.D. Cal. March 14, 2016) (court enforced an arbitration agreement where employer did not sign the arbitration agreement); *see, also*, *Wilmot v. McNabb*, 269 F. Supp. 2d 1203, fn. 5 (2003) (This court approved the joinder of a nonsignatory defendant to a motion to compel arbitration where the Plaintiff's complaint specifically concerned the actions of that defendant); *see, also*, *Zakarian v. Bekov*, 98 Cal.App. 4th 316, 323 (2002), citing *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1319 (1986) (summarily rejecting plaintiffs attempt to avoid arbitration because defendants were not signatories); *see also Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 177, (2015) ("Just as with any written agreement signed by one party, an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement has performed or offered to do so.").

Here, Tesla willingly submits to arbitration through the instant joinder. Further, there was no contemplation that Tesla must be a signatory to the Agreement for it to be a valid contract. Additionally, Plaintiff specifically pled in his Complaint that it was the joint actions of both Tesla and Chartwell that caused his alleged harm. Plaintiff cannot circumvent his agreement to arbitrate his claims by procedural gamesmanship i.e., by filing suit against both Tesla and Chartwell as joint employers and hoping to avoid the arbitration agreement on the grounds that only Chartwell signed the agreement. Both companies are litigants in this matter which involves covered claims. Thus, Plaintiff must be compelled to arbitrate the claims against both Tesla and Chartwell.

### B. The Federal Arbitration Act and Its Policy Favoring Arbitration Govern The Agreement

The Federal Arbitration Act ("FAA") strongly favors the enforcement of arbitration agreements. *See AT&T Mobility LLC v. Concepcíon*, 563 U.S. 333, 131 S. Ct. 1740, 1748 (2011). The FAA provides that agreements to resolve disputes through arbitration "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). In other words, the FAA compels arbitration wherever parties have written agreements to arbitrate. *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] . . . mandates that . . . the parties . . . proceed to arbitration on issues as to which an arbitration agreement has been signed") (emphasis added). Consequently, courts liberally compel arbitration under the FAA. *See generally Moses H. Cone Mem. Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). Any doubt concerning the scope of arbitrable issues is resolved in favor of arbitration, "whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or like defense to arbitrability." *Id*. at 24-25. Moreover, to the extent that any state law or rule "stands as an obstacle" to the core purpose or objective of the FAA, it is preempted. *Concepcíon*, *supra*, 131 S. Ct. at 1753.

The contract at issue in the instant matter is governed by the FAA. To fall within the purview of the FAA, a contract must evidence a transaction "involving commerce." 9 U.S.C. § 2. The threshold for satisfying this standard is low. *See generally Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-77 (1995). A party to an arbitration agreement need only show that it buys products or sells goods or services in the stream of interstate commerce. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109-18 (2001) (finding arbitration agreement between an employee and employer engaged in nationwide retail business to be within scope of FAA); *Serpa v. Cal. Surety Investigations, Inc*., 215 Cal.App.4th 695, 702 n.3 (2013) (finding that parties' arbitration agreement was governed by FAA since the employer routinely engaged in interstate commerce); *Dotson v. Amgen, Inc*., 181 Cal.App.4th 975, 979 (2010) (same).

Here, Tesla manufactures and sells its automobiles across the country. Chartwell is a staffing agency that provides temporary staffing for clients throughout the United States. Thus, there is no dispute that the parties are engaged in interstate commerce, that the arbitration agreement between

1  Plaintiff and Chartwell falls within the scope of the FAA, and the FAA's liberal policy favoring
2  enforcement of arbitration agreements applies to this case.[1]

3  Even if the FAA does not apply, the parties' arbitration agreement should still be liberally
4  construed and enforced pursuant to the California Arbitration Act ("CAA"). *See Moncharsh v. Heily*
5  *& Blasé*, 3 Cal.4th 1, 9 (1992) (explaining that CAA reflects California's strong policy in favor of
6  arbitration and that courts should "indulge every intendment" to give effect to arbitration); *see also*
7  *Cione v. Foresters Equity Services*, 58 Cal.App.4th 625, 642 (1997) ("A heavy presumption weighs
8  the scales in favor of arbitrability[.]").

### C. The FAA Mandates Enforcement of the Parties' Arbitration Agreement

The FAA requires the enforcement of arbitration agreements, limiting the Court's role to determining "(1) whether a valid agreement to arbitrate exists and, if it does (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). "If the response is affirmative on both counts, the [FAA] requires the court to enforce the arbitration in accordance with its terms." *Id.* (emphasis added). The FAA leaves no room for discretion. *See Dean Witter Reynolds*, *supra*, 470 U.S. at 218.

Both conditions are satisfied in this case. First, there can be no dispute that an arbitration agreement exists between Plaintiff and Chartwell. Chartwell submitted a copy of the Agreement, which manifests the essential elements of a valid contract: capacity to contract, consent, a lawful object, and sufficient consideration. *See* Cal. Civ. Code § 1550 (listing the essential elements of a valid contract); *see also Mission Viejo Emergency Med. Associates v. Beta Healthcare Group*, 197 Cal.App.4th 1146, 1153-54 (2011) (party seeking to compel arbitration satisfies prima facie showing of valid arbitration agreement by producing agreement itself). Second, the Agreement encompasses all of the claims that Plaintiff now asserts in this action, *i.e.*, any "controversy, claim, or dispute arising from, related to, or having any relationship or connection whatsoever with the employment of, or the association between, [Patterson] and [Chartwell] including its co-employers, present and

---

[1] Anticipating Plaintiff's argument that Tesla did not sign the Agreement, Tesla is a beneficiary of that Agreement. "It is well established that a nonsignatory beneficiary of an arbitration clause is entitled to require arbitration." *Harris v. Superior Court*, 188 Cal.App.3d 475, 478 (1986).

former partners, owners, shareholders, officers, managers, employees, agents, employee benefit and health plans, as well as parent entities, successor entities, related entities, and subsidiaries." (RJN, **Attachments C and D**).

### D. Section 1981 Claims Can Be Compelled To Arbitration

As highlighted in Chartwell's Motion, Plaintiff has asserted racial discrimination claims pursuant to section 1981. Tesla, too, anticipates that Patterson will argue that section 1981 claims are not subject to binding arbitration. This argument should fail because this Court has already held that section 1981 claims are subject to arbitration agreements. (RJN, **Attachment B**.)

## IV. CONCLUSION

For the foregoing reasons, Tesla respectfully requests that this Court grant its Joinder to Chartwell's Motion to compel arbitration, enter an order compelling arbitration as to all of Plaintiff's claims and dismissing this action as to Plaintiff's claims with prejudice or, in the alternative, staying all further proceedings with regards to Plaintiff's claims in this action until the arbitration is concluded.

DATED:   January 17, 2018                    **CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

By: */s/ Barbara I. Antonucci*
        Barbara I. Antonucci
        Attorneys for Defendant
        TESLA INC. DBA TESLA MOTORS, INC.