1   LAWRENCE A. ORGAN (SBN 175503)
    NAVRUZ AVLONI (SBN 279556)
2   CALIFORNIA CIVIL RIGHTS LAW GROUP
3   332 San Anselmo Avenue
    San Anselmo, California 94960
4   Tel.:   (415) 453-4740
    Fax.:   (415) 785-7352
5   larry@civilrightsca.com
    navruz@civilrightsca.com
6
7   Attorneys for Plaintiffs
    DEMETRIC DI-AZ, OWEN DIAZ AND LAMAR PATTERSON
8
9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11
12  DEMETRIC DI-AZ, OWEN DIAZ and            )   Case No. 17-cv-06748-WHO
    LAMAR PATTERSON,                         )
13                                           )   AMENDED COMPLAINT FOR DAMAGES
            Plaintiffs,                      )
14                                           )   1.  Racial Discrimination, Harassment,
    v.                                       )       Retaliation, Failure to Prevent, Constructive
15                                           )       and Wrongful Termination in Violation of 42
    TESLA, INC. DBA TESLA MOTORS, INC.;      )       U.S.C. § 1981;
16  CITISTAFF SOLUTIONS, INC.; WEST          )   2.  Racial Discrimination in Violation of the
    VALLEY STAFFING GROUP;                   )       Unruh Civil Rights Act;
17  CHARTWELL STAFFING SERVICES, INC.;       )   3.  Retaliation - Unruh Civil Rights Act;
    NEXTSOURCE, INC.; and DOES 1-10,         )   4.  Threats of Violence in Violation of the Ralph
18  inclusive,                               )       Civil Rights Act;
19                                           )   5.  Threats of Violence - Bane Act;
            Defendants.                      )   6.  Interference with Constitutional Rights in
20                                           )       Violation of the Bane Act;
                                             )   7.  Whistleblower Retaliation;
21                                           )   8.  Racial Harassment under FEHA;
                                             )   9.  Racial Discrimination under FEHA;
22                                           )   10. Retaliation under FEHA;
                                             )   11. Failure to Prevent under FEHA;
23                                           )   12. Negligent Infliction of Emotional Distress;
                                             )   13. Intentional Infliction of Emotional Distress;
24                                           )   14. Negligent Hiring Retention and Supervision;
                                             )   15. Wrongful Termination; and
25                                           )   16. Constructive Discharge.
                                             )
26                                           )   JURY TRIAL DEMANDED
                                             )
27                                           )
                                             )
28  _____  )

---

Amended Complaint for Damages and Demand for Jury Trial

**INTRODUCTION**

1.     Even amongst the giants of California's Silicon Valley, Tesla, Inc. stands out as an innovative and groundbreaking company that is at the forefront of the electric vehicle revolution. As a result, Owen Diaz, his son Demetric Di-az, and Lamar Patterson were thrilled when they landed work at Tesla's production factory, located in Fremont, California.

2.     Instead of a modern workplace, however, Plaintiffs encountered a scene straight from the Jim Crow era. Although the men worked in different areas of the factory, all three were targets of racially motivated abuse, including the frequent use of racial slurs. Plaintiffs complained to their supervisors, but Tesla, Inc., took no action. Plaintiffs quickly learned that Tesla's progressive image was a façade papering over its regressive, demeaning treatment of African-American employees.

**PARTIES**

3.     Defendant Tesla, Inc., d.b.a. Tesla Motors, Inc., (hereinafter "Tesla") is a publicly-traded Delaware corporation whose principal place of business is located in Palo Alto, California. Tesla designs, manufactures, and sells electric vehicles. One of Tesla's vehicle manufacturing facilities, also known as the "Tesla Factory," is located at 45500 Fremont Boulevard in Fremont, California. The harassing conduct at issue in this case took place at the Tesla Factory in Fremont. Due to Tesla's ownership of the facility, its day-to-day managerial role in the facility, its right to hire, fire and discipline the employees, and its control of all terms and conditions of Plaintiff's employment, Tesla is Plaintiffs' joint employer, which provides employment pursuant to contract.

4.     Defendant Citistaff Solutions, Inc. (hereinafter "Citistaff") is a California corporation whose principal place of business is located in Orange, California. Citistaff is a staffing company that provides trained employees to businesses for short-and long-term assignments, and therefore provides employment pursuant to contract. When Citistaff's employees are sent to work at their client's sites, they receive paychecks from Citistaff. Citistaff retains control over hiring and firing decisions and also selects the locations where its employees work. Plaintiffs are informed and believe and on that basis allege that in addition to being joint

1   employers, Defendants Tesla and Citistaff are alter egos and/or integrated enterprises such that
2   the actions of one entity can be and are attributable to the other entity.

3        5.      Defendant West Valley Staffing Company (hereinafter "West Valley") is a
4   staffing corporation with corporate offices in Sunnyvale, California. West Valley provides
5   trained employees for short and long-term assignments to other businesses, and therefore
6   provides employment pursuant to contract. When West Valley employees are sent to work at
7   other business' sites, they receive paychecks from West Valley, West Valley retains control over
8   hiring and firing decisions, and also selects the locations at which its employees work. Plaintiffs
9   are informed and believe and on that basis allege that in addition to being joint employers,
10  Defendants Tesla and West Valley are alter egos and/or integrated enterprises such that the
11  actions of one entity can be and are attributable to the other entity.

12       6.      Defendant Chartwell Staffing Services Inc. (hereinafter "Chartwell"), doing
13  business as Chartwell Staffing Solutions, is a staffing corporation with corporate offices in San
14  Jose, California. Chartwell provides employees for short and long-term assignments to
15  businesses in the United States, and therefore provides employment pursuant to contract.
16  Plaintiff Lamar Patterson applied for a Tesla position through Chartwell. He received all relevant
17  training and orientation directly through Tesla, clocked in and out using Tesla's timekeeping
18  system, and Tesla maintained power over hiring and firing decisions. Plaintiff Lamar Patterson
19  selected to work for Tesla, rather than being assigned a location by Chartwell. Plaintiffs are
20  informed and believe and on that basis allege that in addition to being joint employers,
21  Defendants Tesla and Chartwell are alter egos and/or integrated enterprises such that the actions
22  of one entity can be and are attributable to the other entity.

23       7.      Defendant nextSource, Inc. (hereinafter "nextSource") is a Delaware corporation
24  with its principal place of business located in New York City, New York. nextSource provides
25  contract employees from staffing corporations, such as Defendant Citistaff, to contracting
26  companies, such as Defendant Tesla. nextSource accordingly provides employees pursuant to
27  contract. In addition, nextSource provides human resources functions to the contracting
28  businesses and staffing agencies, has power to make hiring and firing decisions, and to select the

3

employees who work at a particular contracting company. Plaintiffs are informed and believe, and on that basis allege, that in addition to being joint employers, Defendants nextSource, Citistaff, and Tesla are alter egos and/or integrated enterprises such that the actions of one entity can be and are attributable to the other entity.

8. Plaintiff Demetric Di-az (hereinafter "Demetric") was employed as a Production Associate jointly by defendants West Valley and Tesla from approximately August of 2015 through October of 2015. Demetric was placed by West Valley at the Tesla Factory in Fremont, California. Demetric is, and at all relevant times herein was, an adult African-American resident of California.

9. Plaintiff Owen Diaz (hereinafter "Owen") was employed as an Elevator Operator jointly by defendants Citistaff, nextSource, and Tesla between approximately June 2015 and May of 2016. Owen was placed by Citistaff and nextSource at the Tesla Factory in Fremont, California. Owen is, and at all relevant times herein was, an adult African-American resident of California.

10. Plaintiff Lamar Patterson (hereinafter "Lamar") was employed as an Elevator Operator jointly by defendants Chartwell and Tesla between approximately January 2016 and August 2016. Lamar is, and at all relevant times herein was, an adult African-American resident of California.

11. Each Defendant is sued individually and as the agent or employee of every other Defendant acting within the course and scope of said agency or employment, with the knowledge or consent of the other co-Defendants.

## JURISDICTION AND VENUE

12. This action is based on Plaintiffs' claims of employment discrimination against Defendants, which arise under the Civil Rights Act of 1866 (42 U.S.C. § 1981). This court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.

13. This court also has supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367. Plaintiffs' state law claims arise from the same common nucleus

4

of operative facts as the underlying federal claims. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to all parties.

14.     This Court has personal jurisdiction over defendant Tesla, which is a corporation incorporated in the state of Delaware with its corporate offices and principal place of business located in Fremont, California.

15.     This Court has personal jurisdiction over defendant Citistaff, which is a corporation incorporated in the State of California with its corporate offices and principal place of business located in Newark, California.

16.     This Court has personal jurisdiction over defendant West Valley, which is a corporation incorporated in the State of California with its corporate offices and principal place of business located in Sunnyvale, California.

17.     This Court has personal jurisdiction over defendant nextSource, which is a corporation incorporated in the state of Delaware with its corporate offices and principal place of business located in New York City, New York. The acts and omissions of defendant nextSource complained of herein occurred in Defendant Tesla's Fremont, California factory.

18.     Venue is proper in this court pursuant to 28 U.S.C. 1391(b)(2), because the acts and omissions of Defendants complained of herein occurred in Fremont, California.

## **FACTUAL ALLEGATIONS**

### **DEMETRIC DI-AZ**

19.     In approximately August of 2015, Demetric's father, Owen, informed him that West Valley had openings for positions at the Tesla Factory in Fremont, California.

20.     Demetric was excited at the prospect of working at the Tesla Factory so he applied for a position with West Valley. His application was accepted, and he signed a contract and began his training on August 24, 2015.

21.     In approximately August 2015, Demetric began working at the Tesla Factory as a Production Associate. Demetric participated in the development and application of Tesla's manufacturing system for the battery of its electric sedan, the Model S.

22.     Demetric took pride in his work, and was excited to work on the creation of Tesla's innovative vehicles.

23.     However, Demetric found it increasingly difficult to enjoy his job because of the daily racist epithets that he had to endure throughout his shift.  Demetric was called "nigger" on a regular basis, and observed other African-American employees enduring the same treatment. Additionally, Demetric's father, Owen, told him about racist epithets directed at him and showed Demetric offensive drawings he came across at the Tesla Factory.

24.     This treatment continued throughout Demetric's employment for West Valley and Tesla. For example, when Owen came to Demetric's department to bring him lunch, Demetric's shift lead said, "All you fucking niggers - I can't stand you motherfuckers."

25.     Demetric found this treatment demeaning and unbearably offensive.

26.     Demetric complained to West Valley about the racist abuse he endured at work on a daily basis. West Valley took no action.

27.     Upset and offended, Demetric complained to his supervisor at Tesla in October of 2015. He stated, "The way you're treating me - calling me an 'n-word' every day - that's not right." His supervisor replied, "If you don't like how you're treated, your time here is going to end." "So," Demetric asked, "you're going to fire me?" His supervisor replied, "You're a temp, anyway."

28.     After Demetric complained, the racist abuse dramatically increased in frequency.

29.     Within days of making his complaint, Demetric was issued a written warning based on accusations of misconduct. He was accused of using his phone on the production line. Prior to this written warning, Demetric had a good performance record.

30.     Within just one week of his complaint to his supervisor at the Tesla Factory, he was terminated for "breaking the rules." Other employees with similar warning were not terminated.

31.     Demetric believed the written warning and subsequent termination were pretextual. Demetric believed that his employment was terminated because he objected to the racist harassment and discrimination.

32.     As a direct and proximate result of the acts and omissions of the Defendants, Demetric has suffered, and continues to suffer emotional distress and psychological damage. This includes, but is not limited to: humiliation, mental anguish, stress, fear, depression, and anxiety.

33.     Defendants' actions have also resulted in wage and benefit losses, and are expected to lead to additional economic loss in the future.

34.     As a result of the Defendants' actions, Demetric hired private counsel to prosecute this action. Pursuant to California Civil Codes Sections 52.1, 51.7, and 52(b)(3), and Title 42 USC section 1988, Demetric is entitled to recover attorney's fees associated with the prosecution of these claims.

35.     Defendants' acts were malicious or oppressive, and intended to vex, injure, annoy, humiliate, and embarrass Demetric, and with conscious disregard of the rights and safety of Demetric and other African-American employees of West Valley. Demetric is informed and believes, and based thereon alleges, that West Valley and Tesla's managing agents ratified the wrongful conduct of Tesla's employees, because they were aware of the discriminatory conduct, and  failed to take immediate remedial action after Demetric's report of the oppressive conduct.

**OWEN DIAZ**

36.     Owen was elated when he discovered, in the summer of 2015, that he would be working at Tesla as an Elevator Operator through Citistaff and nextSource.

37.     In his early days at the Tesla Factory, Owen was excited to go to work every morning. He was a good and hardworking employee, and his performance caught his supervisors' attention. Within the first month of the start of his employment at the factory, an Asian-American supervisor promoted him to an elevator lead position.

38.     The supervisor warned him, however, that Tesla wouldn't want "someone like him" to be a lead. Owen believed his supervisor was stating that Tesla would not want an African-American man as a lead.

39.     Owen's opinion of Tesla quickly soured, as his supervisor's prediction proved true. After beginning his employment at the Tesla Factory, Owen became the subject of vitriolic

racial harassment. Tesla Factory employees directed racial epithets, such as "nigger," at him and other African-American Tesla employees on a daily basis.

40.     Other employees in the factory also instructed Owen, "Go back to Africa," implying that, as an African-American man, Owen did not belong in the United States.

41.     When Owen was operating the elevator with Conveyance Supervisor Robert (last name unknown), Robert instructed Owen to press the elevator by saying, "Nigger, hurry up, press the button."

42.     Robert regularly referred to Owen as "nigger," and also frequently called him "boy" in a demeaning tone.

43.     To Owen, these degrading modes of address were reminiscent of the way slave owners referred to their slaves. He found this racist behavior to be unbearable.

44.     Owen also witnessed racial slurs being used towards other African-American employees. His son, Demetric, worked in another department of the Tesla Factory. When Owen brought Demetric lunch one day, he overheard Demetric's supervisor referring to the African-American workers at the factory as "fucking niggers."

45.     Owen felt demeaned and offended when Tesla's employees referred to him as a "nigger." The constant use of this offensive language made him depressed. However, what truly broke Owen down was witnessing these racist epithets directed at his son, and hearing his son tell him about the racism he was experiencing at work.

46.     Owen complained verbally to Citistaff, but Citistaff took no action. Owen also complained to employees of Tesla and nextSource. However, no action was taken by any of the entities.

47.     Tesla's employees also drew racist and derogatory caricatures of African children that resembled the "pickaninny" imagery of the early twentieth century. These drawings typically featured images of dark-skinned individuals with big lips and bones in their hair. Features which are erroneously, and stereotypically, associated with African-American individuals. An example of such racially offensive conduct is attached as Exhibit A.

48.     To ensure there was no doubt about the racist intent behind this appalling imagery, the drawings were typically accompanied with captions such as, "Booo!" - suggesting that African-American individuals are undesirable and unpleasant.

49.     These drawings were regularly placed around the factory, in locations where African-American employees, including Owen, were certain to view them.

50.     Constantly viewing this racially offensive and demeaning imagery, coupled with the offensive message, caused Owen to feel demeaned, disrespected, and devalued.

51.     Owen discovered that the elevator supervisor, Ramon, was the source of the drawings. Owen confronted Ramon and explained that he found the drawings offensive and demeaning. Owen requested that Ramon stop his behavior.

52.     Ramon responded flippantly, "We're just playing, why do you people take things so hard?" By "you people," Ramon meant African-American employees.

53.     Ramon refused to stop the offensive behavior.

54.     Owen was distressed that Ramon would make the assumption that his rightful anger over this racist act was merely oversensitivity.

55.     Tesla supervisor Michael Wheeler was aware of the harassment and offensive drawings made by Ramon around the factory, and so was Owen's supervisor Ed Romero (hereinafter "Romero"). Because Owen was hired by Citistaff and nextSource, and not Tesla, he was informed he could not complain to Tesla's Human Resources department. In frustration, he sent a written complaint to Romero, his supervisor at Tesla.

56.     Romero stated that he would look in to the issue, but took no action. The harassing Tesla employees remained employed, and Owen was forced to continue to endure their harassment.

57.     Owen also complained to Citistaff, but Citistaff likewise took no action. nextSource similarly failed to take sufficient action to timely address Owen's complaints.

58.     On approximately October 17, 2015, Owen was training another Citistaff employee, Rothai. He was in the middle of explaining to Rothai that Romero would be his supervisor when the elevator doors opened to reveal Ramon.

59.     Ramon flew into a rage upon overhearing their conversation, and shouted, "Do you have a problem with me?! Why are you telling him who his supervisor is?!" Owen and Rothai had not been speaking about Ramon at all.

60.     Fearful, Owen did not respond. Ramon followed him into the elevator, and came within inches of Owen's body, preventing him from escaping. Ramon continued to shout and gesture aggressively.

61.     Based on Ramon's threatening words and conduct, and previous racist and generally hostile conduct, Owen feared that Ramon would hit him or otherwise harm him.

62.     Ramon was an able-bodied male who worked as a laborer, so Owen reasonably believed that Ramon had the ability to physically harm him.

63.     Owen asked Ramon to step back, and reminded Ramon that a security camera was recording the exchange. Eventually, Ramon exited the elevator.

64.     Following this exchange, Owen contacted Romero via email. He wrote, "…because of the way Ramon was acting I don't feel safe around him now. Can you please talk to him[?] I don't need any problems. I just want to do my job."

65.     Romero responded by writing, "Owen, I will speak to Ramon and follow up by speaking to you." Romero never again contacted Owen regarding the incident. Ramon continued to work with Owen, and Owen was not aware of any disciplinary measures taken against Ramon.

66.     Owen contacted Citistaff regarding this incident, Citistaff still took no action.

67.     The harassment and discrimination Owen experienced escalated after he made this complaint. Tesla's employees used racial slurs with greater frequency.

68.     Although Tesla, nextSource, and Citistaff had notice of the discriminatory and harassing behavior at the Tesla Factory, Tesla, nextSource, and Citistaff took no steps to protect African-American employees.

69.     In fact, Tesla, nextSource, and Citistaff ratified and supported the racially harassing behavior. In the spring of 2016, Citistaff informed Owen that he would be demoted from his supervisory position, because he was causing too much trouble, despite the fact that he had no negative performance reviews or disciplinary issues.

10

70.     Owen believed this explanation was merely a pretext. Owen believed Citistaff, nextSource, and Tesla were threatening him with a demotion in retaliation for his complaints regarding the racist, discriminatory behavior he experienced.

71.     Eventually, in approximately May of 2016, Owen quit his employment. Owen could no longer bear the abusive, racially harassing treatment he encountered daily at work. Since Citistaff, nextSource, and Tesla had repeatedly refused to investigate the racist behavior and instead ratified the attempts at retaliation by threatening Owen with a demotion, he worried that the situation would only degenerate further.

72.     As a direct and proximate result of the acts and omissions of the Defendants, Owen has suffered, and continues to suffer emotional distress and psychological damage. This includes, but is not limited to: humiliation, mental anguish, stress, fear, depression, and anxiety.

73.     Defendants' actions have also resulted in past wage and benefit loss, and are expected to lead to additional economic loss in the future.

74.     As a result of the Defendants' actions, Owen hired private counsel to prosecute this action. Pursuant to California Civil Codes Sections 52.1, 51.7, and 52(b)(3), and Title 42 USC Section 1988, Owen is entitled to recover attorney's fees associated with the prosecution of these claims.

75.     Defendants' acts were malicious or oppressive, and intended to vex, injure, annoy, humiliate, and embarrass Owen, and with conscious disregard of the rights and safety of Owen and other African-American employees of Defendants. Owen is informed and believes, and based thereon alleges, that managing agents ratified the wrongful conduct of the Defendants' employees, because they were aware of this conduct and failed to take immediate remedial action, and retained the errant employees after Owen's report of the oppressive conduct.

### LAMAR PATTERSON

76.     Lamar was excited to join Tesla as an Elevator Operator when he was hired in approximately January 2016. He worked hard and hoped to embark on a long-term career path at the company that he so much admired.

77.     It did not take long for Lamar to learn that the company was a hotbed for racist behavior. Both employees and supervisors used the word "nigger" freely and frequently throughout the Tesla Factory, left racist caricatures, images, and effigies around the factory for African-American employees to see, and made "jokes" such as, "Go back to Africa. We don't want you here!"

78.     Lamar complained to Supervisor Ed Romero about the use of the word "nigger" and the hurtful "jokes." However, neither Romero nor anyone else at Tesla took action to address the issue; he continued to hear the racist epithets on a regular basis, throughout his workday.

79.     Unable to bear the abusive and racially harassing treatment he encountered daily at work any longer, Lamar quit his employment with Defendants Tesla and Chartwell in approximately August of 2016.

80.     As a direct and proximate result of the acts and omissions of the Defendants, Lamar has suffered, and continues to suffer emotional distress and psychological damage. This includes, but is not limited to: depression and anxiety.

81.     Defendants' actions have also resulted in past wage and benefit loss, and are expected to lead to additional economic loss in the future.

82.     As a result of the Defendants' actions, Lamar hired private counsel to prosecute this action. Pursuant to California Government Code section 12965(b), California Civil Codes Sections 52.1, 51.7, and 52(b)(3), and Title 42 USC Section 1988, Owen is entitled to recover attorney's fees associated with the prosecution of these claims.

83.     Defendants' acts were malicious or oppressive, and intended to vex, injure, annoy, humiliate, and embarrass Lamar, and with conscious disregard of the rights and safety of Lamar and other African-American employees of Defendants. Lamar is informed and believes, and based thereon alleges, that managing agents ratified the wrongful conduct of the Defendants' employees, because they were aware of this conduct and failed to take immediate remedial action, and retained the errant employees after Lamar's report of the oppressive conduct.

84.     On or about July 31, 2017, Lamar filed a timely charge against Defendants Tesla and Chartwell with the Department of Fair Employment and Housing alleging discrimination,

harassment and retaliation on the basis of race and color; failure to prevent harassment, discrimination and retaliation; and constructive termination. The DFEH issued a right-to-sue letter regarding this charge on July 31, 2017.

**FIRST CAUSE OF ACTION**

RACIAL DISCRIMINATION, RACIAL HARASSMENT (HOSTILE WORK ENVIRONMENT), RETALIATION, FAILURE TO INVESTIGATE AND PREVENT DISCRIMINATION AND HARASSMENT, WRONGFUL TERMINATION, CONSTRUCTIVE DISCHARGE

42 U.S.C. § 1981

(As to All Plaintiffs; Against All Defendants)

85.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

86.     As African-American men, Plaintiffs are members of a protected class. At all relevant times herein, Demetric was in a contractual relationship with defendant West Valley within the meaning of 42 U.S.C. § 1981, as amended. At all relevant times herein, Owen was in a contractual relationship with defendants Citistaff, nextSource, and Tesla within the meaning of 42 U.S.C. § 1981, as amended. At all relevant times herein, Lamar was in a contractual relationship with defendants Chartwell and Tesla within the meaning of 42 U.S.C. § 1981, as amended.

87.     During the course of Demetric, Owen and Lamar's employment, defendants Tesla, West Valley, Citistaff, nextSource, and Chartwell violated Plaintiffs' rights by depriving Plaintiffs of their right to the enjoyment of all benefits, privileges, terms, and conditions of Plaintiffs' employment contract "as is enjoyed by white citizens," in direct violation of 42 U.S.C. § 1981(b).

88.     Specifically, Tesla's employees and supervisors subjected Plaintiffs and others to racial harassment, racial discrimination, and a racially hostile work environment, culminating in an end to their employment relationship with Tesla. Tesla, West Valley, Citistaff, nextSource, and Chartwell failed to investigate and prevent incidents of racial harassment, despite numerous reports and complaints, thereby evidencing a pattern and practice of racial discrimination and harassment. All five defendants retaliated against Plaintiffs for complaining of a hostile work

environment by issuing Demetric a written warning based on false allegations, approving the retaliatory termination of Demetric, and making the work environment so unbearable that Owen and Lamar had no choice but to quit their employment.

89.     Tesla acted intentionally to discriminate against Plaintiffs. Tesla's supervisory employees and agents used racial epithets and racist imagery to harass and intimidate Plaintiffs and others, and ignored Plaintiffs' repeated reports regarding this harassment and discrimination.

90.     Defendants failed to prevent the racially harassing and retaliatory behavior directed at Plaintiffs and others. Ultimately, Plaintiff Demetric was wrongfully terminated, and Plaintiffs Owen and Lamar were constructively terminated.

91.     Through their actions and treatment of Plaintiffs, Defendants and their agents intended to discriminate against Plaintiffs on the basis of their race.

92.     Defendants' violations of the Civil Rights Act of 1866, as amended, caused Plaintiffs to suffer harm as set forth above.

93.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

94.     By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

95.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

//

//

//

//

14

## SECOND CAUSE OF ACTION

RACIAL DISCRIMINATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
Cal. Civ. Code § 51
(As to All Plaintiffs; Against Defendant Tesla)

96.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

97.     Plaintiffs are African-American men, and residents of California.

98.     Defendant Tesla's Factory in Fremont is a business establishment for the purposes of the Unruh Civil Rights Act. A business establishment is a facility which is offered "to qualified [workers], who are not the establishment's employees, in exchange for… considerations." *Payne v. Anaheim Memorial Medical Center, Inc.*, 130 Cal. App. 4th 729, 733 (2005) (review denied). Defendant Tesla operates its Fremont Factory as a business establishment, offering the use of its facilities to qualified contractors, who are not its employees, in exchange for payment.

99.     Tesla acted intentionally to discriminate in its business establishment against Plaintiffs. Tesla's supervisory employees and agents used racial epithets and racist imagery to harass and intimidate Plaintiffs, ignored Plaintiffs' repeated reports regarding this harassment and discrimination, and prevented Plaintiffs from accessing its facilities in retaliation for Plaintiffs' complaints of discrimination and harassment.

100.    Defendants' violations of the Unruh Civil Rights Act caused Plaintiffs to suffer harm as set forth above.

101.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover statutory damages of a maximum of three times the amount of actual damages, or a minimum of $4,000.

102.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

103.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

**THIRD CAUSE OF ACTION**

RETALIATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

Cal. Civ. Code § 51

(As to Plaintiffs' Demetric and Owen; Against Defendant Tesla)

104.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

105.     The Unruh Act prohibits retaliation against persons who complain about conduct they reasonably believe to violate the Act. *See, e.g.*, *Vaughn v. Hugo Neu Proler Int'l* (1990) 223 Cal.App.3d 1612, 1619.

106.     Plaintiffs reasonably believed the race harassment they experienced at Tesla's Fremont factory to be a violation of their rights under California law.

107.     Plaintiffs complained against the harassment, and Defendants retaliated against Plaintiffs for reporting the harassment by issuing Demetric a write up and subsequently terminating his employment, and by threatening Owen with a demotion. Defendants further retaliated against Plaintiffs by subjecting them to further harassment.

108.     Defendants' violations of the Unruh Civil Rights Act caused Plaintiffs to suffer harm as set forth above.

109.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover statutory damages of a maximum of three times the amount of actual damages, or a minimum of $4,000.

110.     By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

111.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FOURTH CAUSE OF ACTION
THREATS OF VIOLENCE IN VIOLATION OF THE RALPH CIVIL RIGHTS ACT
Cal. Civ. Code § 51.7
(As to Owen; Against Defendants Citistaff, nextSource, and Tesla)

112.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

113.    Plaintiff Owen is an African-American man who worked at Tesla's Fremont Factory while employed by Citistaff and nextSource.

114.    While working at the factory, Owen was subjected to threats of violence by a Tesla employee, Ramon. Without any provocation, Ramon screamed at and physically intimidated Owen. Based on this and Ramon's previous hostile behavior, Owen believed that Ramon intended to hit him.

115.    In addition to his use of threatening language, Ramon, rushed into the elevator with Owen. He moved so that he was merely inches from Owen's body, preventing Owen from leaving the elevator. Ramon then continued to scream at Owen and berated and belittled him.

116.    Ramon's demeanor and conduct was threatening, such that Owen believed he was in imminent physical danger.  Ramon was an able-bodied male with the apparent ability to cause Owen physical harm.

117.    Based on Ramon's history of racially discriminatory and demeaning acts, Owen believed that Ramon's behavior was motivated by his hatred of and prejudice towards African-Americans.

118.    Owen reported Ramon's actions to Tesla. However, Tesla took no action, and implicitly ratified Ramon's abuse by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

119.    Tesla further ratified Ramon's actions by retaliating against Owen and suggesting that Owen be demoted as punishment for reporting Ramon's racially abusive behavior.

120.    Because Tesla ratified Ramon's actions, Tesla is liable for his abuse under the doctrine of *respondeat superior*.

121.    Owen reported Ramon's actions to Citistaff and nextSource. However, Citistaff and nextSource took no action, and implicitly ratified Ramon's abusive behavior by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

122.    Because Citistaff and Nextsource ratified Ramon's actions, Citistaff and nextSource are liable for his abuse.

123.    Defendants' violations of Section 51.7 of the California Civil Code caused Plaintiff Owen to suffer harm as set forth above.

124.    As a result of Defendants' unlawful acts, Plaintiff is entitled to recover a civil penalty of $25,000.

125.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

126.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FIFTH CAUSE OF ACTION
THREATS OF VIOLENCE IN VIOLATION OF THE BANE ACT
Cal. Civ. Code § 52.1(a)
(As to Plaintiff Owen; Against Defendants Citistaff, nextSource, and Tesla)

127.    Plaintiff incorporates the foregoing paragraphs by reference, as though fully reproduced herein.

128.    Plaintiff Owen is an African-American man who worked at Tesla's Fremont Factory while employed by Citistaff and nextSource.

129.    While working at the factory, Owen was subjected to threats of violence by a Tesla employee, Ramon. Without any provocation, Ramon screamed at and physically intimidated Owen. Based on this and Ramon's previous hostile behavior, Owen believed that Ramon intended to hit him.

130.    In addition to his use of threatening language, Ramon, rushed into the elevator with Owen. He moved so that he was merely inches from Owen's body, preventing Owen from leaving the elevator. Ramon then continued to scream at Owen and berated and belittled him.

131.    Ramon's demeanor and conduct was threatening, such that Owen believed he was in imminent physical danger.  Ramon was an able-bodied male with the apparent ability to cause Owen physical harm.

132.    Based on Ramon's history of racially discriminatory and demeaning acts, Owen believed that Ramon's behavior was motivated by his hatred of and prejudice towards African-Americans.

133.    Owen reported Ramon's actions to Tesla. However, Tesla took no action, and implicitly ratified Ramon's abuse by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

134.    Tesla further ratified Ramon's actions by retaliating against Owen and threatening demoting him as punishment for reporting Ramon's racially abusive behavior.

135.    Because Tesla ratified Ramon's actions, Tesla is liable for his abuse under the doctrine of *respondeat superior*.

136.    Owen reported Ramon's actions to Citistaff and nextSource. However, Citistaff and nextSource took no action, and implicitly ratified Ramon's abusive behavior by failing to investigate his actions, and allowing Ramon to continue to abuse and harass Owen.

137.    Because Citistaff and nextSource ratified Ramon's actions, Citistaff and nextSource are liable for his abuse under the doctrine of *respondeat superior*.

138.    Defendants' violations of Section 52.1 of the California Civil Code caused Plaintiffs to suffer harm as set forth above.

139.    As a result of Defendants' unlawful acts, Plaintiff Owen is entitled to recover civil penalties of $25,000.

140.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

141.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

### SIXTH CAUSE OF ACTION
INTERFERENCE WITH CONSTITUTIONAL RIGHTS IN VIOLATION OF BANE ACT
Cal. Civ. Code § 52.1(b)
(As to All Plaintiffs; Against All Defendants)

142.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

143.    Defendants interfered with Plaintiffs' constitutional right entitling them to equal protection.

144.    Defendants adopted the conduct, through their officers, directors, managing agents, or supervisory employees. They further ratified the conduct by failing to take appropriate prompt remedial action.

145.    A substantial motivating reason for Defendants' conduct was Plaintiffs' race.

146.    Defendants interfered with Plaintiffs' right to be free from discrimination on the basis of race as set forth above, and permitted working conditions that denied Plaintiffs their constitutional right entitling them to equal protection.

147.     Defendants' conduct caused Plaintiffs to suffer, and continue to suffer damages as set forth above.

148.     By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

149.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## SEVENTH CAUSE OF ACTION
### WHISTLEBLOWER RETALIATION
(Cal. Labor Code 1102.5)
(As to Plaintiffs Demetric and Owen; Against All Defendants)

150.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

151.     At all relevant times mentioned herein, Plaintiffs were African-American residents of California.

152.     At all relevant times mentioned herein, Demetric was an employee of defendant West Valley and Tesla.

153.     Demetric engaged in protected activity when he reported the racially harassing and discriminatory behavior to West Valley and Tesla, including the threat to terminate his employment for his refusal to endure the daily racial harassment.

154.     Demetric had a reasonable, good-faith belief that this behavior was a violation of the federal Civil Rights Act of 1964, and other state and federal statutes.

155.     West Valley and Tesla took adverse employment action against Demetric. Without justification or basis in fact, both entities accepted as true the assertions of Demetric's harassers that he was a poor performer; they then terminated Demetric's employment on that

false basis. West Valley and Tesla did this even though they knew that Demetric's supervisor responded to his complaint of harassment by threatening to terminate Demetric's employment.

156.    In terminating Demetric, West Valley and Tesla ratified the discriminatory behavior.

157.    At all relevant times mentioned herein, Owen was an employee of defendants Citistaff, nextSource, and Tesla.

158.    Owen engaged in protected activity when he reported the racially harassing and discriminatory behavior to Citistaff, nextSource, and Tesla.

159.    Owen had a reasonable, good-faith belief that this behavior was a violation of the federal Civil Rights Act of 1964, and other state and federal statutes.

160.    Citistaff, nextSource, and Tesla took adverse employment action against Owen by threatening him with a demotion. However, Owen had a positive performance history, and Tesla only threatened Owen with a demotion as punishment for complaining of the racist harassment.

161.    In accepting as true the proffered reasons for threatening Owen with a demotion, even though Owen had complained to Citistaff, nextSource, and Tesla of the discriminatory behavior of Tesla's employees on numerous occasions, Citistaff, nextSource, and Tesla ratified and continued the discriminatory behavior.

162.    Defendants' violations of Section 1102.5 of the California Labor Code caused Plaintiffs to suffer harm as set forth above.

163.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to recover civil penalties of $10,000 for each violation.

164.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

165.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice.

Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

### EIGHTH CAUSE OF ACTION
RACIAL HARASSMENT
Cal. Govt. Code § 12940, *et seq.*
(As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

166.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

167.     Plaintiff Lamar at all times was an employee covered by the Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12940(a) and (j), which prohibits an employer from discriminating and harassing an employee on the basis of color and race.

168.     Defendants Tesla and Chartwell were, at all times, employers as defined under the FEHA.

169.     The above-described actions constitute racial harassment and discrimination in violation of the FEHA. Plaintiff Lamar was subjected to working in a severe, persistent and/or pervasive racially hostile work environment, which interfered with his work performance, denied him employment privileges, and adversely affected the terms and conditions of his job on the basis of his race.

170.     The harassing conduct to which Plaintiff Lamar was subjected to was so severe, widespread, and/or persistent that a reasonable African American in Plaintiff Lamar's circumstances would have considered the work environment to be hostile and/or abusive.

171.     Plaintiff Lamar considered the work environment to be hostile and/or abusive.

172.     Defendants Tesla and Chartwell failed to take prompt, remedial and effective action to stop the harassers.

173.     Defendants' violations of the FEHA caused Plaintiff Lamar to suffer harm as set forth above.

174.     By reason of the conduct of Defendants as alleged herein, Plaintiff Lamar has necessarily retained attorneys to prosecute the within action.  Plaintiff Lamar is therefore entitled

to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

175.     Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## NINTH CAUSE OF ACTION
RACE DISCRIMINATION
Cal. Govt. Code § 12940, *et seq.*
(As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

176.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

177.     Plaintiff Lamar at all times was an employee covered by the FEHA, California Government Code §§ 12940(a) and (j), which prohibits an employer from discriminating against an employee on the basis of color and race.

178.     Defendants Tesla and Chartwell were at all times employers as defined under the FEHA.

179.     Tesla failed to take any action in response to Plaintiff's complaints because of his color and race.

180.     Defendants' practice of failing to take any action in response to Plaintiff's complaints was a substantial factor in causing Plaintiff's harm.

181.     Defendants' violations of the FEHA caused Plaintiff to suffer harm as set forth above.

\\

182.     By reason of the conduct of Defendants as alleged herein, Plaintiff Lamar has necessarily retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

183.     Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

**TENTH CAUSE OF ACTION**
RETALIATION
Cal. Govt. Code 12940(h)
(As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

184.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

185.     Plaintiff Lamar complained of harassment and discrimination that violated the FEHA.

186.     Defendants Tesla and Chartwell took no action to ensure that Plaintiff was not retaliated against or threatened for having complained.

187.     As a result of Defendants Tesla and Chartwell's action or inaction, Plaintiff was subject to additional harassment, making the work environment so unbearable that Plaintiff Lamar had no choice but to quit his employment.

188.     Defendants' violations of the FEHA caused Plaintiff to suffer harm as set forth above.

189.     By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

190.     Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

//

**ELEVENTH CAUSE OF ACTION**
FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT
Cal. Govt. Code § 12940, *et seq.*
(As to Plaintiff Lamar; Against Defendants Tesla and Chartwell)

191.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

192.    Defendants Tesla and Chartwell failed to take all reasonable steps to prevent the harassment and discrimination as described above. Defendants knew or should have known that Tesla's employees were engaged in racially offensive behavior in the past and failed to stop it.

193.    Despite being on notice of Tesla's employees' propensity to engage in harassing conduct, Defendants failed to act to prevent employees from harassing Plaintiff.

194.    Defendants also failed to enact an anti-discrimination policy and/or failed to distribute it appropriately and failed to effectively train its employees on racial harassment or discrimination.

195.    As a result of Defendants violations of the FEHA, Plaintiff suffered harm as set forth above.

196.    By reason of the conduct of Defendants as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action.  Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

197.    Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with the conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

**TWELFTH CAUSE OF ACTION**
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(As to All Plaintiffs; Against All Defendants)

198.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

26

199.     As employees and contractors of Defendants, Plaintiffs were owed a duty of due care by Defendants, and each of them, to ensure that Plaintiffs were not exposed to foreseeable harms.

200.     Defendants, and each of them, knew, or should have known, that Plaintiffs were being subjected to racial harassment, discrimination and retaliation, and that, by failing to exercise due care to prevent racially harassing, discriminatory and retaliatory course of conduct could and would cause Plaintiffs to suffer serious emotional distress.

201.     Defendants, and each of them, failed to exercise their duty of due care to prevent their employees, managers, supervisors and/or officers from racially harassing, discriminating and retaliating against Plaintiffs.

202.     As a direct and consequential result of Defendants' actions, Plaintiffs suffered serious mental and emotional distress, includes, but is not limited to, pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege Defendants are responsible for the harm they suffered.

203.     By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

204.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## THIRTEENTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(As to All Plaintiffs; Against All Defendants)

205.     Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

27

206.    Plaintiffs complained repeatedly to Tesla as well as to West Valley, Chartwell, nextSource, and Citistaff about the constant racial abuse they received on a daily basis. Plaintiffs made clear that the racial harassment caused them distress, humiliation, and suffering.

207.    When Defendants failed to take corrective action, Defendants knew that Plaintiffs would continue to suffer extreme emotional distress and harm as a result of their failure to act.

208.    As a direct and consequential result of Defendants' actions, Plaintiffs have suffered severe emotional distress to their persons. Such harm includes, but is not limited to, pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege Defendants are responsible for the harm they suffered.

209.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

210.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FOURTEENTH CAUSE OF ACTION

### NEGLIGENT HIRING, RETENTION AND SUPERVISION
(As to All Plaintiffs; Against All Defendants)

211.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

212.    Upon information and belief, Defendants, by and through its agents and employees, knew or reasonably should have known through reasonable investigation of some of its agents and/or employees' propensity for unlawful racially harassing and physically aggressive behavior.

213.    Defendants had a duty not to hire or retain these employees/agents given their wrongful, dangerous, and racially offensive propensities, and to provide reasonable supervision of these employees/agents.

214.    Defendants negligently hired, retained and/or failed to adequately supervise these employees/agents in their positions where they were able to commit the wrongful acts complained of here against Plaintiffs. Defendants failed to provide reasonable supervision of these employees/agents despite knowing of their propensities and complaints made against them.

215.    As a direct and consequential result of Defendants' actions, Plaintiffs have suffered serious emotional distress to their persons. Such harm includes, but is not limited to, pain, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear. Plaintiffs allege Defendants are responsible for the harm they suffered.

216.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action.  Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

217.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

### FIFTEENTH CAUSE OF ACTION
WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
(As to Plaintiff Demetric; Against Defendant West Valley and Tesla)

218.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

219.    Defendant Tesla and West Valley punished Demetric by terminating his employment.

220.    Although Defendants stated that Demetric should be terminated for performance issues, this was merely a pretext. Demetric did not have a history of written warnings or

performance issues warranting a termination until he was issued a written warning for using his phone on the production line within days of complaining to his supervisor of the racially discriminatory and harassing behavior he was subjected to at work. His supervisor responded to his complaint by threatening to terminate Demetric's employment, and ultimately did terminate his employment approximately a week after Demetric made his complaint.

221.    West Valley ratified Tesla's discriminatory behavior by terminating Demetric without conducting any investigation into the veracity of the claims against him, thereby approving of Tesla's discriminatory motives.

222.    West Valley and Tesla's decision to terminate Demetric's employment based on discriminatory motives was contrary to the policies, rules, regulations, and laws of the State of California, which are in substantial part designed to protect employees from discriminatory, harassing, and otherwise harmful or unlawful conduct. Said policies are encoded in Article 1, Section 8 of the Constitution of the State of California, and in Section 12900 *et seq*. of the California Government Code. Demetric's termination therefore constituted an unlawful termination under California law.

223.    Defendants' violations of these constitutional and statutory provisions caused Plaintiff Demetric to suffer harm as set forth above.

224.    By reason of the conduct of Defendants as alleged herein, Plaintiff Demetric has necessarily retained attorneys to prosecute the present action.  Plaintiff Demetric is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

225.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiff Demetric; with the conscious disregard of the rights and safety of Plaintiff Demetric; and with an improper and evil motive amounting to malice. Plaintiff Demetric is thus entitled to recover punitive damages from Defendants in an amount according to proof.

//

//

## SIXTEENTH CAUSE OF ACTION
### CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY
(As to Plaintiff Owen and Lamar; Against Defendants Tesla, Citistaff, nextSource, and Chartwell)

226.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully reproduced herein.

227.    At all relevant times herein, Owen was an employee of Citistaff, nextSource, and Tesla; and Lamar was an employee of Chartwell and Tesla.

228.    Citistaff, nextSource, and Tesla constructively terminated Owen's employment, and Chartwell and Tesla constructively terminated Lamar's employment by permitting a hostile work environment to flourish at the Tesla Factory, where Owen and Lamar were continuously subjected to harassment and discrimination.

229.    Owen and Lamar complained about the use of racial slurs, the display of racially offensive images, and the use of offensive statements. Owen also complained in writing about the violent conduct Ramon directed towards him.

230.    When Owen complained of this conduct, Tesla's employees only escalated their threatening and discriminatory behavior, and attempted to demote Owen.

231.    No reasonable African-American person could have borne the constant harassment, discrimination, intimidation, and threatening behavior directed at Owen and Lamar on a daily basis.

232.    As a result, when Defendants Tesla, Citistaff, nextSource, and Chartwell repeatedly declined to intervene and prevent the harassment, Owen and Lamar had no choice but to quit.

233.    Defendants Tesla, Chartwell, nextSource, and Citistaff's failure to halt the racial harassment and discrimination was contrary to the policies, rules, regulations, and laws of the State of California, which are in substantial part designed to protect employees from discriminatory, harassing, and otherwise harmful or unlawful conduct. Said policies are encoded in Article 1, Section 8 of the Constitution of the State of California, and in Section 12900 *et seq.* of the California Government Code. Defendants Tesla, nextSource, and Citistaff's constructive

31

termination of Owen, and Defendants Tesla and Chartwell's constructive termination of Lamar therefore constituted a wrongful termination under California law.

234.     Defendants' violations of these constitutional and statutory provisions caused Plaintiffs Owen and Lamar to suffer harm as set forth above.

235.     By reason of the conduct of Defendants as alleged herein, Plaintiffs Owen and Lamar have necessarily retained attorneys to prosecute the present action.  Plaintiffs Owen and Lamar are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

236.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively; with the wrongful intention of injuring Plaintiffs Owen and Lamar; with the conscious disregard of the rights and safety of Plaintiffs; and with an improper and evil motive amounting to malice. Plaintiffs Owen and Lamar are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment against the Defendants as follows:

1.     General damages according to proof, in an amount no less than the jurisdictional limit of this court;

2.     Special damages in amounts according to proof, together with prejudgment interest;

3.     Exemplary and punitive damages in amounts according to proof;

4.     Civil penalties pursuant to Section 52(a), 52(b)(2), and 52.1(a) of the California Civil Code; and Section 1102.5(f) of the California Labor Code;

5.     Attorneys' fees and costs pursuant to sections 52(a), 52(b)(3), and 52.1(h) of the California Civil Code; section 12965(b) of the California Government Code, and any other applicable statute;

6.     Interest as provided by law;

7.     Costs of suit incurred herein;

8.      Injunctive relief to require Defendants to better train its staff on race harassment, discrimination and retaliation, and develop effective policies and procedures to ensure that when harassment is reported, the company takes effective remedial measures; and

9.      For such other and further relief as the Court deems just and proper.

Dated: December 14, 2018                CALIFORNIA CIVIL RIGHTS LAW GROUP

_____
LAWRENCE A. ORGAN
NAVRUZ AVLONI
Attorneys for Plaintiffs
DEMETRIC DI-AZ, OWEN DIAZ and LAMAR
PATTERSON

## **DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby demand a jury trial on all issues.

Dated: December 14, 2018                CALIFORNIA CIVIL RIGHTS LAW GROUP

_____
LAWRENCE A. ORGAN
NAVRUZ AVLONI
Attorneys for Plaintiffs
DEMETRIC DI-AZ, OWEN DIAZ and LAMAR
PATTERSON

33

Amended Complaint for Damages and Demand for Jury Trial