GARY T. LAFAYETTE (SBN 88666)
SUSAN T. KUMAGAI (SBN 127667)
CHERYL A. STEVENS (SBN 146397)
LAFAYETTE & KUMAGAI LLP
1300 Clay Street, Suite 810
Oakland, California 94612
Telephone: (415) 357-4600
Facsimile: (415) 357-4605

Attorneys for Defendant
CITISTAFF SOLUTIONS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,

Plaintiff,

vs.

TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,

Defendants.

Case No. 3:17-cv-06748-WHO

**DEFENDANT CITISTAFF SOLUTIONS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: October 23, 2019
Time: 2:00 p.m.
Courtroom: 2, 17th Floor
Judge: Hon. William H. Orrick

Trial Date: March 2, 2020
Complaint filed: October 16, 2017

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600
FAX (415) 357-4605

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

TO ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 23, 2019, at 2:00 p.m., before the Honorable William H. Orrick, in Courtroom 2, 450 Golden Gate Avenue, San Francisco, California, Defendant CitiStaff Solutions, Inc. will move and hereby does move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on the First Amended Complaint ("Complaint") filed by Plaintiffs Demetric Di-az, Owen Diaz and Lamar Patterson.

This motion is made on the grounds that no genuine issue of material fact exists regarding Plaintiff Owen Diaz's claims against CitiStaff Solutions, Inc.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Susan T. Kumagai, Veronica Martinez and Ludivina Ledesma, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

If for any reason summary judgment cannot be granted, CitiStaff Solutions, Inc. moves, in the alternative, for summary adjudication of the following issues:

1. No genuine issue exists regarding Plaintiff's claim for Race Discrimination in Violation of 42 U.S.C. §1981;

2. No genuine issue exists regarding Plaintiff's claim for Race Harassment in Violation of 42 U.S.C. §1981;

3. No genuine issue exists regarding Plaintiff's claims for Retaliation in Violation of 42 U.S.C. §1981 and California Labor Code §1102.5;

4. No genuine issue exists regarding Plaintiff's claim for Failure to Investigate and Prevent Harassment and Discrimination in Violation of 42 U.S.C. §1981;

5. No genuine issue exists regarding Plaintiff's claim for violation of the Ralph Civil Rights Act (Cal. Civ. Code § 51.7);

6. No genuine issue exists regarding Plaintiff's claims for violation of the Bane Act (Cal. Civ. Code §§ 52.1(a) and (b));

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

7. No genuine issue exists regarding Plaintiff's claim for Negligent Infliction of Emotional Distress;

8. No genuine issue exists regarding Plaintiff's claim for Intentional Infliction of Emotional Distress:

9. No genuine issue exists regarding Plaintiff's claim for Negligent Hiring, Retention and Supervision;

10. No genuine issue exists regarding Plaintiff's claim for Constructive Discharge in violation of public policy; and

11. No genuine issue exists regarding Plaintiff's claim for punitive damages.

This alternative motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Susan T. Kumagai, Veronica Martinez and Ludivina Ledesma, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: September 18, 2019

LAFAYETTE & KUMAGAI LLP

*/s/ Susan T. Kumagai*
SUSAN T. KUMAGAI
Attorneys for Defendant
CITISTAFF SOLUTIONS, INC.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. UNDISPUTED MATERIAL FACTS. ..... 2

A. CITISTAFF'S POLICIES ..... 2

1. CitiStaff's Anti-Harassment Policy. ..... 2

2. Hiring and Assignment Processes ..... 3

B. PLAINTIFF'S HIRE AS A CITISTAFF TEMPORARY EMPLOYEE. ..... 5

1. Plaintiff's On-boarding ..... 5

2. Plaintiff's Assignment to Tesla. ..... 5

C. PLAINTIFF'S COMPLAINT OF A CARTOON ..... 8

1. The Cartoon Incident and Complaint. ..... 8

2. The Investigation ..... 9

3. Immediate Corrective Action Taken Against Martinez ..... 9

D. CONTINUED COMPLAINTS OF UNPROFFESSIONALISM AGAINST PLAINTIFF ..... 10

E. PLAINTIFF'S FAILURE TO RETURN TO WORK ..... 10

F. LAWSUIT ALLEGATIONS ..... 11

III. DISCUSSION ..... 12

A. SUMMARY JUDGMENT IS WARRANTED IN THIS CASE. ..... 12

B. NO GENUINE ISSUE EXISTS REGARDING PLAINTIFF'S SECTION 1981 CLAIMS. ..... 12

1. Plaintiff's Claim for Race Discrimination is Meritless. ..... 12

2. Plaintiff's Race Harassment Claim is Meritless. ..... 13

3. The Failure to Prevent Claim is Equally Meritless ..... 14

C. PLAINTIFF'S RETALIATION CLAIMS ARE MERITLESS. ..... 15

D. PLAINTIFF'S BANE AND RALPH ACT CLAIMS ARE MERITLESS. ..... 17

E. PLAINTIFF'S NEGLIGENT HIRING, RETENTION AND SUPERVISION CLAIM FAILS AS A MATTER OF LAW. ..... 17

1. No Risk of Harm by a CitiStaff Employee Existed. ..... 19

2. Plaintiff's Claim is Preempted. ..... 19

3. Plaintiff's Claim is Based on the Same Facts as His Race Harassment and Bane/Ralph Acts Claims. ..... 19

F. PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS MERITLESS. ..... 19

1. Plaintiff's Claim is Preempted. ..... 19

2. Plaintiff is Unable to Establish the Necessary Elements for NIED ..... 19

G. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST FAIL. ..... 20

H. PLAINTIFF'S CLAIM FOR CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY IS MERITLESS. ..... 20

I. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES IS MERITLESS ..... 21

IV. CONCLUSION ..... 21

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

**TABLE OF AUTHORITIES**

**Cases**

*Akers v. County of San Diego*
95 Cal.App.4th 1441 (2002) .......... 17

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 252 (1986). .......... 12

*Austin v. Terhune*
367 F.3d 1167 (9th Cir. 2004) .......... 21

*Celotex Corp. v. Catrett*,
477 U.S. 317(1986) .......... 12

*Charles J. Vacanti, M.D. v. State Comp. Ins. Fund*
24 Cal.4th 800 (2001) .......... 20

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*
24 Cal.4th 800, 812-813 (2001) .......... 20

*Cooper v. United Airlines, Inc.*
82 F.Supp.3d 1084 (N.D.Cal. 2015) .......... 17

*DC v. Harvard-Westlake School*
176 Cal. App. 4th 836 (2009) .......... 18

*Edwards v. U.S. Fid. & Guar. Co.*
848 F.Supp.1460 (N.D.Cal. 1994) .......... 21

*EEOC v. Global Horizons, Inc.*
915 F.3d 631 (9th Cir. 2019) .......... 21

*Faragher v. City of Boca Raton*
524 U.S. 775 (1998) .......... 14, 15

*Federico v. Sup.Ct. (Jenry G.)*
59 Cal.App.4th 1207 (1997) .......... 19, 20

*Fermino v. Fedco, Inc.*
7 Cal.4th 701 (1994) .......... 20

*Green v. Ralee Eng'g Co.*
19 Cal.4th 66 (1998) .......... 13, 23

*Guz v. Bechtel Nat'l Inc.*,
24 Cal.4th 317 (2000) .......... 13

*Hanson v. Lucky Stores, Inc.*
74 Cal.App.4th 215 (1999) .......... 23

*Hughes v. Pair*
46 Cal.4th 1035 (2009) .......... 21

*Johnson v. Riverside Healthcare System, LP*
534 F.3d 1116 (9th Cir. 2008) ....................14

*Manatt v. Bank of Am.*
339 F.3d 792 (9th Cir. 2003) ....................14

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ....................13

*McVeigh v. Recology San Francisco*
213 Cal.App.4th 443 (2013) ....................17

*Means v. City and County of San Francisco Department of Public Health*,
749 F.Supp.2d 998 (N.D.Cal. 2010)....................13

*Mokler v. County of Orange*
157 Cal.App.4th 121 (2007) ....................17

*Nat'l R.R. Passenger Corp. v. Morgan*
122 S.Ct. 2061 (2002) ....................14

*Patten v. Grant Joint Union High School Dist.*
134 Cal.App.4th 1378 (2005) ....................17

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ....................13

*Scotch v. Art Inst. Of Cal.-Orange Cnty., Inc.*
173 Cal.App.4th 986 (2009) ....................15

*Smolen v. Deloitte, Haskins & Sells*,
921 F.2d. 959 (9th Cir. 1990)....................12

*Sneddon v. ABF Freight Systems*
489 F.Supp.2d 1124 (S.D.Cal. 2007) ....................22

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993) ....................13

*Stevenson v. Superior Court*
16 Cal.App.4th 880 (1993) ....................22

*Tex. Dep't. of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981) ....................13

*Trujillo v. North County Transit Dist.*
63 Cal.App.4th 280 (1998) ....................15

*Turner v. Anheuser-Busch, Inc.*
7 Cal.4th 1238 (1994) ....................22

*Velarde v. City of Alameda*
2016 WL 1588269 at *7 (N.D.Cal. 2016)....................18

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

vi

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (CASE NO. 3:17-cv-06748-WHO)**

*Venegas v. County of Los Angeles*
32 Cal.4th 820 (2004) ....................18

*White v. Ultramar, Inc.*
21 Cal.4th 563 (1999) ....................23

**Statutes**

42 United States Code
42 U.S.C. § 1981 ....................11, 12, 15, 21
42 U.S.C. § 1981(a)....................12
42 U.S.C. § 1981(b)....................12

California Civil Code
Cal. Civ. Code § 51.7 ....................16, 17
Cal. Civ. Code § 51.7(a)....................17
Cal. Civ. Code § 52.1(a)....................16
Cal. Civ. Code § 52.1(k)....................18
Cal. Civ. Code § 3294 ....................21

California Labor Code
Labor Code § 1102.5 ....................15

Fair Employment & Housing Act
Gov't. Code § 12900 et seq.....................20

State of California Constitution
Article 1, Section 8 ....................20

**Rules**

Federal Rules of Civil Procedure
Fed.R.Civ.Proc. § 56(a)....................12

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant CitiStaff Solutions, Inc. ("CitiStaff") is a temporary staffing agency that provides contractors to clients for temporary work assignments, as needed, throughout California. Plaintiff Owen Diaz ("Plaintiff") is a CitiStaff contractor who, for the entire relevant time period to this action, June 2015 to March 2016, was assigned to work at the Tesla Motors factory in Fremont, California, as an elevator operator. Throughout his temporary assignment, Plaintiff encouraged family and friends to apply for jobs at Tesla, including his son Demetric Di-Az. Despite these continuous referrals to family and friends, Plaintiff alleges in this action that from the time he started to the end of his temporary assignment with Tesla, he was harassed based on his race, African American, and threatened with violence. Further, until January 22, 2016, Plaintiff never complained to CitiStaff that he felt harassed based on his race. On that date, Plaintiff sent CitiStaff an email attaching a drawing of a "cartoon" found in the workplace that he said was offensive. As it turns out, the cartoon was created by an employee of another company. Regardless, CitiStaff immediately contacted Plaintiff after receipt of the email to make sure he felt safe and asked if he wanted to be reassigned. Plaintiff refused the offer. Simultaneously with CitiStaff's actions, an investigation was immediately conducted by the staffing agency that employed the alleged harasser. The alleged harasser was disciplined with suspension and a permanent warning the very next business day after the complaint by Plaintiff was made. Thereafter, Plaintiff did not encounter any negative interaction with the alleged harasser.

Even if, *arguendo*, Plaintiff was harassed based on his race, which he was not, CitiStaff took immediate and appropriate action to prevent further harm to Plaintiff by a non-CitiStaff employee. CitiStaff had no authority to take corrective action against the alleged harasser who was employed by another staffing agency. In other words, CitiStaff immediately took preventative measures to assure that Plaintiff was not at risk of further harm.

The only other complaint of which CitiStaff had knowledge involved a verbal altercation Plaintiff had with another African American male co-worker who also was a CitiStaff employee. Although Plaintiff did not report the incident to CitiStaff, upon notification of the incident, CitiStaff

immediately investigated. However, any action by CitiStaff was preempted by Tesla's immediate removal of the co-worker from the premises and termination of his temporary assignment. Plaintiff's claim that CitiStaff threatened him with violence is simply ridiculous.

Lastly, CitiStaff never terminated Plaintiff. Plaintiff's employment status with CitiStaff has never changed since his hire. He remains a registered temporary employee to this day. His refusal for reassignment is his own choice. Therefore, his claims for wrongful discharge are frivolous.

All of Plaintiff's claims against CitiStaff should be dismissed.

## II. <u>UNDISPUTED MATERIAL FACTS.</u>

### A. CITISTAFF'S POLICIES

#### 1. CitiStaff's Anti-Harassment Policy.

CitiStaff is a temporary staffing agency with offices in Northern and Southern California. (Deposition of Monica DeLeon ("DeLeon Depo.") at 73:12-16.) CitiStaff recruits and hires temporary employees, or contractors, to provide services to CitiStaff's clients on an as-needed and temporary basis.[1] (Declaration of Ludivina Ledesma ("Ledesma Dec.") at ¶ 2, Exhibit A – Employee Handbook at p.9.) CitiStaff pays its contractors' wages and provides workers' compensation coverage. (Ledesma Dec. at ¶ 2.)

CitiStaff maintains policies and procedures, including an anti-harassment and discrimination policy ("anti-harassment policy"). The anti-harassment policy is contained in an Employee Handbook ("Handbook") given to regular employees and contractors. (Ledesma Dec. at ¶ 3, Exh. A - Handbook at p. 29.) The anti-harassment policy sets forth conduct that is prohibited including, but is not limited to, use of derogatory comments, statements, or innuendos based on race. (*Ibid.*) The anti-harassment policy requires employees to report conduct believed to violate the policy to Human Resources ("H.R."). (*Ibid.*)

Upon receipt of a complaint of harassment, CitiStaff will conduct a thorough and objective investigation. (*Id.* at ¶ 4.) If a violation of the anti-harassment policy by a CitiStaff employee is

---

[1] The various defendants named in this action use different terms for their temporary workers. For consistency, and to avoid confusion, the term "contractors" is used herein to refer to temporary employees, temporary associates and contractors.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

2

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (CASE NO. 3:17-cv-06748-WHO)

found, CitiStaff will take immediate corrective action. (Ledesma Dec. at ¶¶ 3, 4, Exh. A at p. 29.) The policy also states as follows: "5. …CitiStaff will also take action to protect the complaining employee and to prevent further harassment or retaliation." (*Ibid.*, Ledesma Dec. at ¶ 4.) If a contractor lodges a complaint of harassment against a client's employee, the local Staffing Supervisor will contact Ludivina Ledesma, H.R. Manager, who will commence an immediate investigation. Ledesma will interview the complainant in person, interview witnesses identified who are CitiStaff contractors, if any, and contact the client advising of the complaint against one of its employees. (Ledesma Dec. at ¶ 4.) Ledesma will ask the client to conduct an investigation and report any findings to her. (*Ibid.*)

CitiStaff also maintains Standards of Conduct. Among other things, the Standards of Conduct prohibit any threat of violence as follows:

…

> "10. …Actual or threatened physical violence toward another employee, a customer, a visitor, vendor or the general public.
>
> …
>
> 14. Sexual harassment or other unlawful harassment of another employee, a customer, visitor, vendor, or the general public."

(Ledesma Dec. at ¶ 3, Exh. A. p. 28.)

**2. Hiring and Assignment Processes**

CitiStaff places contractors in temporary assignments posted by clients. If CitiStaff has no contractor to fill an open assignment, or if a registered contractor with CitiStaff is not available, CitiStaff will search for and recruit a candidate for the position. Once recruited, a candidate attends an orientation (or "on-boarding") and receives a New Hire packet. The New Hire packet includes an application, to be completed by the candidate, and CitiStaff's policies and procedures. (DeLeon Depo. at 40:2-5, 107:13-108:3; Ledesma Dec. at ¶ 2.) The policies and procedures include, but are not limited to, the anti-harassment policy. (DeLeon Depo. at 40:2-15, 165:18-166.14; Ledesma Dec. at ¶ 3, Exh. A.) During the on-boarding process, contractors are informed to contact CitiStaff to report any problems, including harassment, at the worksite to which they are assigned. (DeLeon Depo. at 162:5-16; Ledesma Dec. at ¶ 2.) For Northern California during the 2015-2016 period,

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

CitiStaff contractors were told to contact Staffing Supervisor Monica DeLeon ("DeLeon"), whose office was located in Newark, California. (DeLeon Depo. at 163:11-164:20; Ledesma Dec. at ¶ 2.)

If DeLeon received a complaint from a contractor regarding a problem at a worksite, she would immediately contact the associate to find out more about the problem and ensure the associate was comfortable at the site or if he/she wanted to be reassigned. DeLeon would also notify her supervisor of any problems reported. (DeLeon Depo. at 52:22-53:13, 54:13-55:9, 95:8-96:1.) If a report was received that a CitiStaff contractor violated a policy, including the anti-harassment policy, DeLeon would gather information and elevate the matter up to her supervisor and/or H.R. for further handling. (DeLeon Depo. at 110:6-111:19; Ledesma Dec. at ¶ 4.)

Defendant nextSource, Inc. ("nextSource") is a staffing agency that provided contractors to the Tesla Motors in Fremont, California ("Tesla site"). NextSource used selected suppliers for its pool of contractors to place with Tesla. (Deposition of Wayne Jackson ("Jackson Depo.") at 22:2-12; Deposition of Kevin McGinn ("McGinn Depo.") at 18:1-22, 20:5-25) CitiStaff was a nextSource selected supplier for contractors to place with Tesla for temporary assignments. (Jackson Depo. at 31:14-19; McGinn Depo. at 22:13-15; DeLeon Depo. at 114:10-18.)

NextSource assigned a Program Manager to the Tesla site who oversaw the headcount for contracting positions and acted as a liaison between Tesla and the selected suppliers. (Jackson Depo. at 15:15-16:8, 18:9-13; McGinn Depo. at 24:1-23.) If a serious issue arose at the site involving a contractor from a selected supplier placed by nextSource, the Program Manager gathered information to provide to the selected supplier whose contractor was involved. (Jackson Depo. at 18:4-13, 18:20-19:1, 23:6-13; McGinn Depo. at 42:19-43:7, 150:18-151:3.) Serious issues could include, but are not limited to, harassment and/or threats of violence. (Jackson Depo. at 24:14-24, 69:5-13.)

During the relevant time period to this action, Wayne Jackson ("Jackson") was the nextSource Program Manager at the Tesla site. (Jackson Depo. at 14:13-17, 15:2-4.) CitiStaff had no on-sight employee at Tesla. (Diaz Depo. at 89:4-5.)

///

///

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

4

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (CASE NO. 3:17-cv-06748-WHO)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

**B. PLAINTIFF'S HIRE AS A CITISTAFF TEMPORARY EMPLOYEE.**

**1. Plaintiff's On-boarding**

On June 2, 2015, Plaintiff was recruited and hired by CitiStaff as a contractor. Staffing Supervisor DeLeon met with Plaintiff, in person, for his on-boarding and provided him a New Hire Packet which included, among other things, an application to complete and CitiStaff's policies, procedures and guidelines. (DeLeon Depo. at 21:6-9, 40:2-5, 107:13-108:3, 171:6-15; Diaz Depo. at 24:8-20, 26:12-23.) Plaintiff completed the application and signed off on various policies and guidelines. (Diaz Depo. at 24:8-17, 95:4-25, Exhs. 1 and 3.) By signing the Assignment/ Attendance guidelines, Plaintiff acknowledged that he read and understood the guidelines including, if he was not satisfied with a job assignment, he was to notify CitiStaff. (Diaz Depo. at 95:4-25, 102:14-24, Exh. 3.) Plaintiff also executed CitiStaff's Sexual Harassment Policy informing him of the process to lodge complaints of harassment, with a clear promise by CitiStaff not to retaliate. (Diaz Depo. Vol. II at 254:6-255:1, Exh. 33.) Plaintiff also signed an acknowledgement that CitiStaff is an equal opportunity employer. (*Ibid.*) Plaintiff was informed during his on-board meeting with DeLeon, to contact her if he had any problems at the site. (DeLeon Depo. at 162:5-16, 163:11-164:20; Diaz Depo. at 95:4-25, 102:14-24, Exh. 3.)

After the on-board meeting, Plaintiff visited DeLeon a couple times to pick up his paycheck. (Diaz Depo. at 36:17-37:19.)

**2. Plaintiff's Assignment to Tesla.**

On June 3, 2015, the day after Plaintiff's hire, Plaintiff was assigned to the Tesla site, via nextSource, as an elevator operator. Tesla elevator operators transport heavy materials on forklifts and tuggers up and down elevators. The materials are left at "drop sites" for pick up by production staff and delivered to designated locations throughout the facility. (Deposition of Edward Romero ("Romero Depo.") at 68:15-69:8; Diaz Depo. at 90:9-24.) There are typically two operators for each elevator. (*Id.* at 70:19-71:11)

Contractors are expected to be in compliance with Tesla's safety and anti-harassment policies. (Deposition of Victor Quintero ("Quintero Depo.") at 19:10-25; Deposition of Annalisa Heisen ("Heisen Depo.") at 70:1-9, Exh. 150, 72:5-18.) In addition to DeLeon, Plaintiff understood

that if he had any concerns at the Tesla site he could communicate with Wayne Jackson, nextSource's Program Manager. (Diaz Depo. Vol. I at 131:23-132:8.)

On June 24, 2015, Plaintiff's job title changed to "team lead." The elevator lead oversees that product is moved efficiently and safely and that operators are using the mandatory safety gear, or Personal Protective Equipment ("PPE"). Leads are also expected to interact with other departments and supervisors in a professional manner. (Romero Depo. at 23:14-24:16, 76:9-23, 77:17-78:11)

On July 31, 2015, Plaintiff emailed Tesla Supervisor, Tom Kawasaki, that an elevator operator Judy Timbreza made derogatory comments. Plaintiff's complaint was investigated by Tesla. Although Plaintiff's allegations were not corroborated, Timbreza was found to joke excessively in the workplace and he was counseled about his conduct. (Diaz Depo. at 81:1-6; Romero Depo. at 147:4-20; 152:1-21; 154:3-22, 156:3-17, 162:11-18.) After Plaintiff complained, he never saw Timbreza again. (Diaz Depo. Vol. II at 232:10-15.)

In August 2015, Plaintiff encouraged his son Demetric ("Demetric") to apply for a position at Tesla. Like his father, Demetric applied through a staffing agency West Valley Staffing Group ("West Valley") and he was placed with Tesla as a Production Associate on August 24, 2015. (Deposition of Demetric Di-Az ("Demetric Depo.") at 150:15-151:11.)

On October 15, 2015, Edward Romero ("Romero") became a Tesla Contract Supervisor overseeing the elevator operators. (Romero Depo. at 20:15-17, 90:3-8.) Romero reported to Victor Quintero, Tesla Manager of elevator services and recycling. (Quintero Depo. at 12:12-21, 14:1-14.) Shortly after becoming a Contract Supervisor, Romero received complaints from workers that Plaintiff had a negative attitude and was uncooperative and unprofessional. (Romero Depo. at 81:17-82:17; 84:9-18: 87:5-20.) Romero reported these complaints to Tesla Managers Jaime Salazar and Victor Quintero. Salazar and Romero spoke to Plaintiff about his poor interactions with co-workers. (Romero Depo. at 89:5-90:19; 91:10-12, 92:3-93:25, 95:17-24.)

Despite being counseled, co-workers and supervisors continued to complain that Plaintiff was uncooperative, unprofessional, argumentative, abrasive and had a bad attitude. (Romero Depo. at 97:24-98:16; Deposition of Wayne Jackson ("Jackson Depo.") at 36:14-18, 110:2-16; 112:5-

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

113:16.)

On or about October 17, 2015, a Supervisor from the Recycling Department, Ramon Martinez ("Martinez") emailed Romero complaining that Plaintiff was acting unprofessionally. Martinez was a contractor from another staffing agency Chartwell Staffing Services, Inc. ("Chartwell"). On the same day, Plaintiff also emailed Romero and nextSource's Program Manager Wayne Jackson and alleged that Martinez yelled at him in a threatening manner. (Romero Depo. at 107:5-21, 182:16-183:3, Exh. 55, 186:7-19, Exh. 56.) Jackson gathered information regarding the incident to provide to Tesla and Chartwell. (Romero Depo. at 186:24-187:9; Jackson Depo. at 64:4-24.) A decision was made to counsel both Plaintiff and Martinez. (Jackson Depo. at 72:5-19, Exh.127.) CitiStaff was not informed about the October 17, 2015 incident. (Ledesma Dec. at ¶ 6.)

On November 5, 2015, Plaintiff and another CitiStaff temporary employee Rothaj Foster ("Foster") got involved in a verbal altercation at the Tesla site. Foster is African American and worked with Plaintiff as an elevator operator. (Diaz Depo. at 141:17-19; DeLeon Depo. at 168:12-14.) Plaintiff reported the incident to Romero and Jackson and alleged Foster threatened him. Romero immediately had Foster escorted off the Tesla premises by security to avoid any further conflict with Plaintiff. (Romero Depo. at 199:2-200:25, Exh. 63; Diaz Depo. Vol. I at 141:17-19, Vol. III at 372:20-24.) Plaintiff did not report the Foster incident to CitiStaff. (Diaz Depo. at 104:17-23.) However, Jackson advised DeLeon of CitiStaff of the incident and she immediately contacted and spoke with both Plaintiff and Foster. (DeLeon Depo. at 67:4-22, 122:5-123:4, 139:9-141:16, 232:15-22.) Although DeLeon found Plaintiff not credible because he could not recall what happened, she asked Plaintiff if he was comfortable in his position, or whether he wanted to be reassigned to a different department. Plaintiff said he wanted to stay in his position. (*Ibid.*) When DeLeon interviewed Foster, he was clear in his recollection of the altercation and denied making any threats. (DeLeon Depo. 239:10-240:16) CitiStaff had no prior complaints against Foster. (Ledesma Dec. at ¶ 6.) When DeLeon was advised by Jackson that Foster's assignment with Tesla was terminated, she asked for clarification on his findings and inquired if it was possible for Foster to keep his job and be transferred to a different department at Tesla so that he and Plaintiff did not have to work with each other. (DeLeon Depo. 239:10-240:16) Foster's assignment was terminated

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

and Diaz never worked with him again. (Diaz Depo. at 373:2-10.)

On December 15, 2015, Plaintiff emailed the resume of his friend Lamar Patterson ("Patterson") to Romero and recommended Patterson for an elevator operator position at Tesla. (Romero Depo. at 209:13-210:22, Exh. 72; Diaz Depo. at 143:10-16. ) As a result of Plaintiff's recommendation, Patterson started work with Tesla on January 13, 2016, as an elevator operator. (Deposition of Lamar Patterson ("Patterson Depo.") at 20:25-21:12.)

### C. PLAINTIFF'S COMPLAINT OF A CARTOON.

#### 1. The Cartoon Incident and Complaint.

On Friday, January 22, 2016 at 8:42 a.m., Plaintiff emailed Romero to report an incident that occurred the prior evening, Thursday, January 21, 2016, at about 9:10 p.m. (Diaz Depo. at 159:13-160:8.) In the email, Plaintiff stated that he discovered a drawing of a cartoon on a bale of cardboard bundled for recycling. Plaintiff described the drawing as "a black face person with a bone in his hair with the caption that read, 'Booo'" (the "cartoon incident"). Plaintiff contacted the recycling team lead Michael Wheeler ("Wheeler").[2] Plaintiff let Wheeler "get to the bottom of the problem" while Plaintiff continued working. Wheeler later returned to Plaintiff's location with Ramon Martinez who admitted he drew the picture but was "just playing." Plaintiff stated in his email, "As a [sic] supervisors or leads, we are held to a higher standard because The [sic] people we supervise look to us for examples. If a supervisor does this kind of thing in front of the employees what kind of example are we setting." Plaintiff ended the email by stating an employee is "entitled to a safe and harassment free work environment." (Diaz Depo. at 145:7-17, Exh. 14, 146:1-5.)

Plaintiff also forwarded the cartoon email to Jackson at about 8:46 a.m. (*Ibid.*; Jackson Depo. at 74:2-25, Exh. 128.) Plaintiff waited a whole day before forwarding the email to CitiStaff. (Diaz Depo. at 161:11-162:4.)

After receiving Plaintiff's email, Romero spoke to Plaintiff and reported the incident to his Manager Victor Quintero. (Romero Depo. at 108:14-110:4, 114:11-115:1. 119:22-120:12.) By 9:20 a.m., Wayne Jackson also forwarded the email to Quintero stating they needed to talk soon as

[2] When Wheeler, who is African American, saw the cartoon, he laughed. (Wheeler Depo. at 63:13-15.)

possible. Jackson alerted Chartwell as well and forwarded information he had gathered. (Quintero Depo. at 80:12-81:24, Exh. 39; Jackson Depo. at 31:2-13, 82:10-14, 93:24-94:12.)

Jackson and Quintero discussed what they believed might be appropriate discipline for Martinez, but understood Chartwell, Martinez's employer, would make the decision. (Quintero Depo. at 75:7-21; Jackson Depo. at 33:5-34:24.)

Prior to forwarding the January 22 email to CitiStaff, Plaintiff's contacts with DeLeon were limited. On a couple of occasions he visited her relating to his paychecks and he spoke to her during his interview regarding the verbal altercation involving Rothaj Foster on November 5, 2015. (Diaz Depo. at 36:17-37:19, 43:11-44:13.)

**2. The Investigation**

Chartwell's Senior Area Vice President Veronica Martinez interviewed Ramon Martinez on Friday, January 22, the same day Plaintiff complained about the cartoon. (Declaration of Veronica Martinez in Support of CitiStaff's Motion for Summary Judgment ("V. Martinez Dec.") at ¶ 3.) Chartwell had no record of any prior harassment complaints filed against Martinez before the drawing incident. (V. Martinez Dec. at ¶ 9.) Chartwell also called DeLeon and asked for permission to interview Plaintiff, which was given by DeLeon. (DeLeon Depo. at 144:14-145:11.) Chartwell interviewed Plaintiff the following Monday, January 25, 2016. (V. Martinez Dec. at ¶ 7.)

DeLeon also called Plaintiff to ensure he was alright and asked if he wanted to be reassigned. (DeLeon Depo. at 50:2-14, 133:6-134:24.) Plaintiff did not want to be reassigned and declined the offer. (*Ibid.*) DeLeon also escalated the matter and reported the incident to her supervisors and the H.R. Manager Ludivina Ledesma who advised DeLeon that she (Ledesma) will handle the investigation into the matter. (Ibid.; Ledesma Dec. at ¶ 5.)

**3. Immediate Corrective Action Taken Against Martinez**

On Monday, January 25, 2016, the second business day after Plaintiff lodged his complaint, Chartwell suspended Martinez and placed him on Corrective Action from January 26, 2016, through December 31, 2016. (V. Martinez Dec. at ¶ 8; Jackson Depo. at 88:14-17.)

DeLeon informed Ledesma of the information she had gathered including that the alleged harasser was employed by Chartwell. DeLeon also informed Ledesma that Chartwell investigated

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

the matter, made findings and took appropriate action. Because the alleged harasser was Chartwell's employee, Ledesma took no further action to investigate. (DeLeon Depo. at 135:15-136:23; Ledesma Dec. at ¶ 5.)

Prior to January 22, 2016, CitiStaff had received no other complaints of race harassment at the Tesla site, including from Plaintiff. (DeLeon Depo. at 49:4-21, 58:11-15, 160:17-24; Diaz Depo. at 224:14-225:8; Ledesma Dec. at ¶ 6.) CitiStaff never received a request from Plaintiff to be reassigned from the Tesla site. (DeLeon Depo. at 54:9-12.)

**D. CONTINUED COMPLAINTS OF UNPROFFESSIONALISM AGAINST PLAINTIFF**

On February 26, 2016, Tesla Production Control Supervisor Joyce DelaGrande complained to Romero about Plaintiff's verbal aggression toward her and unprofessionalism toward her team. DelaGrande said that her leads felt uncomfortable around Plaintiff. (Jackson Depo. at 131:16-25, Exh. 142.)

On March 2, 2016, Plaintiff and a co-worker were issued final warnings for a verbal altercation between them. (Jackson Depo. at 106:11-107:4, Exh. 134.)

On March 4, 2016, Plaintiff was counseled for his refusal to wear mandatory safety gear and verbal aggression toward a supervisor requesting he do so. (Jackson Depo. at 108:17-109:25, Exh. 136.)

**E. PLAINTIFF'S FAILURE TO RETURN TO WORK**

Plaintiff went on an approved leave from March 10, 11 and 12, 2016. (Diaz Depo. at 178:7-25.) Plaintiff was scheduled to return to work on March 13, 2016. DeLeon assumed that Plaintiff had returned to work as scheduled, when she received an email on March 18, 2016 from Wayne Jackson of nextSource advising, "Unfortunately we will have to term the assignment of Owen Diaz...At this time the manager would just like to get another candidate to back fill his role as soon as possible. Please notify Owen today that his assignment here has been ended." (DeLeon Depo. at 148:18-150:20; Jackson Depo. at 125:15-126:13, Exh. 140.) Jackson's email indicated that Plaintiff's assignment at Tesla was terminated based on Plaintiff's continued unprofessionalism and attendance problems. (*Ibid.*)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

Unable to force Tesla to keep Plaintiff and/or maintain his assignment, DeLeon contacted Plaintiff and told him his assignment with Tesla was terminated. (DeLeon Depo. at 148:23-149:24.) Plaintiff responded angrily that he liked his job and wanted to keep it. (DeLeon Depo. at 153:15-20.) DeLeon said she would reassign him to a different client and he responded "like F that." (DeLeon Depo. at 155:24-156:15, 157:11-21.)

CitiStaff never terminated Plaintiff. Plaintiff remains on CitiStaff's register as a temporary employee for assignment. (DeLeon Depo. at 168:15-24; Ledesma Dec. at ¶ 7.)

**F. LAWSUIT ALLEGATIONS**

On October 16, 2017, a year and a half after Plaintiff's Tesla assignment ended, he filed the underlying lawsuit against Tesla and CitiStaff.[3] Plaintiff raises causes of action against CitiStaff for race harassment and discrimination under 42 U.S.C. § 1981, threats of violence under the state Ralph and Bane Acts, retaliation, negligent hiring, retention and supervision, negligent and intentional infliction of emotional distress and constructive discharge.

In his lawsuit, Plaintiff alleges he was subject to derogatory comments at the Tesla site including, but not limited to, being called the "N word" and "boy," and told to go back to Africa. (First Amended Complaint at ¶¶ 39-42.) CitiStaff received no complaints from Plaintiff about race harassment except for the cartoon, and Plaintiff admits he never reported to CitiStaff being called the "N" word. (Diaz Depo. at 71:5-8, 73:8-21; Ledesma Dec. at ¶ 6.)

Plaintiff alleges he was retaliated against after complaining about harassment based on threats to demote him made by Ed Romero of Tesla and Wayne Jackson of nextSource. (Diaz at 235:21-237:23.)

Plaintiff asserts that CitiStaff caused him emotional distress because there was no "follow through" with the email he sent about the drawing on January 22, 2016. (Diaz Depo. at 238:12-239:9.)

[3] Co-plaintiffs include Demetric Di-Az and Lamar Patterson who filed the underlying lawsuit against Tesla and each of their respective staffing agencies, West Valley and Chartwell. NextSource was added as a defendant by an amended complaint filed on December 26, 2018.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

Despite having complained to CitiStaff only once about alleged race harassment by a Chartwell employee at the Tesla site, never having been terminated by CitiStaff and having visited DeLeon on only a couple of occasions regarding his paychecks, Plaintiff accuses CitiStaff in this lawsuit of race discrimination and harassment, failure to prevent discrimination and harassment, retaliation, threats of violence and constructive discharge.

## III. DISCUSSION

### A. SUMMARY JUDGMENT IS WARRANTED IN THIS CASE.

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(a). If a defendant shows the absence of any material fact with respect to an essential element of plaintiff's claims, the burden shifts to the plaintiff to produce specific facts showing that a genuine issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff must "produce at least some significant probative evidence tending to support" his claims. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d. 959, 963 (9th Cir. 1990). Merely showing that there is a scintilla of evidence in his favor is simply not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

No genuine issue for trial exists relating to Plaintiff's claims against CitiStaff as shown below.

### B. NO GENUINE ISSUE EXISTS REGARDING PLAINTIFF'S SECTION 1981 CLAIMS.

#### 1. Plaintiff's Claim for Race Discrimination is Meritless.

Among other things, 42 U.S.C. § 1981 guarantees "all persons" the right to "make and enforce contracts." 42 U.S.C. § 1981(a). This right includes the right to the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including the relationship between employer and employee. (42 U.S.C. § 1981(b).) Section 1981 discrimination claims are analyzed under the burden shifting analysis set forth by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *Means v. City and County of San Francisco Department of Public Health*, 749 F.Supp.2d 998, 1004 (N.D. Cal. 2010). As a threshold matter, Plaintiff must prove a *prima facie* case of discrimination by showing (1) he belongs to a

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

protected class, (2) he was performing the position he held competently, (3) he suffered an adverse employment action, and (4) circumstances giving rise to an inference of unlawful discrimination. *Id*., citing *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 248 (1981); *Guz v. Bechtel Nat'l Inc*., 24 Cal.4th 317, 355 (2000). If Plaintiff establishes a *prima facie* case, the burden shifts to CitiStaff to produce a legitimate, non-discriminatory business reason for its actions. If CitiStaff meets this burden of production, Plaintiff has the burden of proving that CitiStaff's proffered reason is a pretext for discrimination. *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th at 355-56; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993). The ultimate burden of persuasion that Plaintiff was the victim of intentional discrimination always remains with him. *St. Mary's*, 509 U.S. at 509, *see also*, *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143, 120 S.Ct. 2097 (2000).

Here, Plaintiff is unable to establish a *prima facie* case against CitiStaff. Without admitting that Plaintiff can prove he was performing the position he held competently, CitiStaff did not subject Plaintiff to an adverse employment action. CitiStaff did not discipline, demote, terminate or, in any other way, treat Plaintiff differently than any other employee not in Plaintiff's protected class. Therefore, Plaintiff is unable to establish two elements of his *prima facie* case, that CitiStaff subjected him to an adverse employment action and an inference of employment discrimination.

Plaintiff's claim of race discrimination against CitiStaff is meritless and should be dismissed.

**2. Plaintiff's Race Harassment Claim is Meritless.**

To state a hostile work environment claim under section 1981, plaintiff must establish that (1) he was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008), citing *Manatt v. Bank of Am.,* 339 F.3d 792, 797 (9th Cir. 2003). "A hostile work environment claim, by its 'very nature involves repeated conduct.'" (*Ibid*., citing *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061 (2002). The objectionable conduct must be both objectively and subjectively offensive, one that a reasonable person would find hostile

or abusive, and one that the victim in fact did perceive to be so. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Ibid*. (Internal citations omitted).

First, Plaintiff's claim that the conduct was severe or pervasive is not supported by the undisputed facts. Plaintiff complained to CitiStaff about one incident, the cartoon. One incident does not constitute repeated conduct that interfered with the terms and conditions of Plaintiff's employment. Indeed, not only did Plaintiff encourage family and friends to seek jobs with Tesla, he refused reassignment by CitiStaff because he liked his job and wanted to stay in his position.

Second, it is undisputed that the alleged harasser, Ramon Martinez, who was a supervisor, was not employed by CitiStaff. Because Martinez was not a CitiStaff Supervisor, Plaintiff is unable to support a strict liability theory against CitiStaff to support his claim for harassment. *Faragher v. City of Boca Raton*, 524 U.S. at 807, 118 S.Ct. at 2292-2293. Moreover, even if, *arguendo*, Martinez was a CitiStaff supervisor, which he was not, Plaintiff was not subject to a tangible adverse employment action and never took advantage of the internal procedures adopted by CitiStaff to report harassment to protect himself against harm. Therefore, his claim against CitiStaff is barred. *Ibid.* (See also subsection III, B. 3, below.)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

### 3. The Failure to Prevent Claim is Equally Meritless

As long as no "tangible employment action" has been taken against the plaintiff, an employer has no liability for the failure to prevent alleged harassment by a supervisor where (a) it exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to "avoid harm otherwise." *Ibid.* Further, employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the unlawful actions took place and were not prevented. *Scotch v. Art Inst. Of Cal.-Orange Cnty., Inc*., 173 Cal.App.4th 986, 1021 (2009) (employers cannot be held liable for failure to prevent discrimination, except where discrimination took place and was not prevented); *Trujillo v. North County Transit Dist.*, 63 Cal.App.4th 280, 289 (1998) (same).)

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

Plaintiff suffered no tangible employment action. He remains an employee of CitiStaff.

Moreover, CitiStaff exercised reasonable care to prevent and promptly correct any harassing behavior. CitiStaff maintained, and continues to maintain, an anti-harassment policy providing for avenues to complain about harassment. CitiStaff also has procedures in place to investigate complaints of harassment and implement corrective action where harassment is believed to have occurred.

Here, the only complaint Plaintiff lodged with CitiStaff regarding Martinez and/or race harassment was on January 22, 2016, relating to the cartoon. As discussed above, CitiStaff took immediate and appropriate action by contacting Plaintiff to assure he was safe and was willing to reassign Plaintiff elsewhere. However, it was Plaintiff who rejected that offer because he wanted to stay with Tesla. Otherwise, immediate corrective action was taken against Martinez by his own employer. Thereafter, Plaintiff never had a negative interaction with Ramon Martinez. Clearly, the risk of harm was eliminated as a result of immediate action being taken.

To the extent Plaintiff argues a prior incident with Martinez occurred in October 2015, and corrective action was not taken, his position is meritless. First, Plaintiff's argument is inapplicable to CitiStaff who had no knowledge of the October 2015 incident with Martinez. Second, Plaintiff's October complaint was not based on race. Third, an investigation was conducted and corrective action included counseling for both Plaintiff and Martinez.

No genuine issue exists regarding Plaintiff's section 1981 claims against CitiStaff.[4]

## C. PLAINTIFF'S RETALIATION CLAIMS ARE MERITLESS.

Plaintiff claims he was retaliated against when Romero and Jackson threatened him with demotion in violation of 42 U.S.C. § 1981 and California Labor Code § 1102.5. Labor Code § 1102.5 is the state's whistleblower statute that, among other things, prohibits an employer from retaliating against an employee for (1) "disclosing information … to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the

---

[4] To the extent Plaintiff may raise an argument based on a joint employer theory with any other defendant, his argument is meritless. For purposes of employment discrimination, intent to discriminate must be shown and a joint employer is not liable without such a showing. *EEOC v. Global Horizons, Inc.*, 915 F.3d. 631, 641 (9th Cir. 2019).

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." (Cal. Lab. Code § 1102.5 (b), (c).)

Both his § 1981 and Labor Code retaliation claims require Plaintiff to first establish a *prima facie* case of retaliation. Once established, CitiStaff has the burden of producing evidence of a legitimate, non-retaliatory explanation for its acts. If the burden is met, Plaintiff must then show the explanation is merely a pretext for retaliation. *Mokler v. County of Orange*, 157 Cal.App.4th 121, 138 (2007); see also *Patten v. Grant Joint Union High School Dist.*, 134 Cal.App.4th 1378, 1384 (2005); *Akers v. County of San Diego*, 95 Cal.App.4th 1441, 1453 (2002).

To establish a *prima facie* case of retaliation, Plaintiff must show (1) he engaged in a protected activity, (2) the employer subjected the plaintiff to an adverse employment action, and (3) that there is a causal link between the two. *McVeigh v. Recology San Francisco*, 213 Cal.App.4th 443468 (2013); *Cooper v. United Airlines, Inc.*, 82 F.Supp.3d 1084, 1111 (N.D. Cal. 2015).

For purposes of this motion only, CitiStaff will not dispute that Plaintiff's January 22, 2016 email regarding the cartoon was a protected act. Regardless, as discussed above, Plaintiff was not subject to an adverse employment action by CitiStaff. In fact, Plaintiff remains registered as a CitiStaff contractor.

To the extent Plaintiff argues that the termination of his assignment with Tesla was an adverse action, which it was not, CitiStaff had no involvement with the decision to terminate his assignment. Moreover, even if, *arguendo*, it was an adverse employment action, Plaintiff is unable to show causation. The undisputed facts show that the complaints of Plaintiff's unprofessionalism never ceased throughout Plaintiff's time at Tesla, including after he complained on January 22, 2016. Further, Plaintiff never returned to work after his temporary approved leave. Legitimate, non-discriminatory, reasons existed for the termination of his assignment with Tesla having nothing to do with his race. Plaintiff cannot prove a causal link between his January 22, 2016, complaint and the decision to end his temporary assignment on March 13, 2016.

Accordingly, Plaintiff's retaliation claims fail as a matter of law.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

**D. PLAINTIFF'S BANE AND RALPH ACT CLAIMS ARE MERITLESS.**

Under California Civil Codes §§51.7 (Ralph Act) and 52.1(a) (Bane Act), Plaintiff must show (1) CitiStaff threatened or committed a violent act against him; (2) CitiStaff was motivated by his race; (3) he was harmed and (4) CitiStaff's conduct was a substantial factor in causing the harm. *Velarde v. City of Alameda,* 2016 WL 1588269 at *7 (N.D. 2016). The Ralph Act prohibits violence or intimidation by threats of violence against persons based on, among other classifications, race. Civ. Code §51.7(a).

The Bane Act prohibits interference by threats, intimidation or coercion with the exercise of an individual's constitutional rights "in minority or similarly protected classes, or who were perceived by the defendant to be members of such protected classes." Civ. Code §51.7; *DC v. Harvard-Westlake School*, 176 Cal. App. 4th 836, 859 (2009) citing *Venegas v. County of Los Angeles,* 32 Cal.4th 820, 845-847 (2004). Under the Bane Act, liability may not be based on speech alone unless "the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." (Civ. Code §52.1 (k).)

Plaintiff supports his claims under the Bane and Ralph Acts with two incidents, (1) the October 17, 2015, incident with Chartwell employee Ramon Martinez and, (2) the November 5, 2016, verbal altercation with Rothaj Foster.

First, it is undisputed that CitiStaff had no knowledge of Plaintiff's October 17, 2015 complaint against a non-CitiStaff employee. Second, the Foster incident involved two African Americans. Therefore, the incident and any outcome was not based on race. Further, Plaintiff never complained about the Foster incident to CitiStaff. However, upon learning of the incident from Wayne Jackson, DeLeon contacted both Plaintiff and Foster to investigate. DeLeon asked Plaintiff if he wanted to be reassigned and he rejected the offer. In the meantime, Foster had been removed from the premises and his assignment terminated. Thereafter, Plaintiff never worked with Foster again and any alleged threat of violence was removed.

No genuine issue exists that CitiStaff had nothing to do with violence and/or threats of

violence against Plaintiff, particularly based on race. Nor was Plaintiff harmed by CitiStaff based on violence and/or threats of violence. Plaintiff's claims under the Ralph and Bane Acts against CitiStaff are frivolous and should be dismissed.

**E. PLAINTIFF'S NEGLIGENT HIRING, RETENTION AND SUPERVISION CLAIM FAILS AS A MATTER OF LAW.**

**1. No Risk of Harm by a CitiStaff Employee Existed.**

Plaintiff's negligent hiring/retention claim is inapplicable to CitiStaff. Plaintiff was CitiStaff's employee. In *Federico v. Superior Court (Jenry G.)* 59 Cal.App.4th 1207 (1997), the court held, "an employer's duty, as defined by California authority and the Restatement, is breached only when the employer knows, or should know, facts which would warn a reasonable person that the employee presents an undue risk of harm to third persons in light of the particular work to be performed." *Id.* at 1214.

The acts underlying Plaintiff's claims of race harassment do not involve any CitiStaff employee. Therefore, his cause of action is inapplicable to CitiStaff. To the extent Plaintiff is asserting his negligent hiring claim is based on his verbal interaction with Rothaj Foster, no harm came to Plaintiff. Foster was removed from the Tesla premises after their verbal altercation and he never returned to the workplace. Further, there is no evidence to support an argument that CitiStaff knew or should have known facts that would have warned a reasonable person that Foster presented an undue risk of harm to anyone. Indeed, CitiStaff had no other complaints against Foster except for the one instigated by Plaintiff.

Plaintiff is unable to establish a claim for negligent hiring against CitiStaff. The claim should be dismissed.

**2. Plaintiff's Claim Is Preempted.**

Plaintiff's claim for negligent hiring is preempted by the workers' compensation laws. The exclusive remedy for injuries caused by negligence in the work place is workers' compensation. (*Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713-714 (1994) ; *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal.4th 800, 812-813 (2001).) Plaintiff's claim is preempted and should be dismissed.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

**3. Plaintiff's Claim Is Based on the Same Facts as His Race Harassment and Bane/Ralph Acts Claims.**

To the extent Plaintiff's negligent hiring claim is based on the same allegations in support of his race harassment and threats of violence claims, his argument fails. Given that those claims are meritless, as demonstrated above, Plaintiff's claim of negligent hiring, supervision or retention are equally meritless and should be dismissed. (*Federico v. Sup.Ct. (Jenry G.)*, 59 Cal.App.4th at 1210-1211.)

**F. PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM IS MERITLESS.**

**1. Plaintiff's Claim is Preempted.**

Plaintiff's negligent infliction of emotional distress ("NIED") claim is preempted by the exclusive remedies under the Labor Code governing workers' compensation claims. (*Fermino v. Fedco, Inc.,* 7 Cal.4th at 713-714; *Charles J. Vacanti, M.D. v. State Comp. Ins. Fund*, 24 Cal.4th 800, 812-813 (2001).) This claim should be dismissed on the basis of preemption alone.

**2. Plaintiff is Unable to Establish the Necessary Elements for NIED.**

Even if, *arguendo*, Plaintiff's NIED claim was not preempted, which it is, Plaintiff cannot establish the necessary elements for his claim against CitiStaff. Plaintiff must establish that he (1) suffered serious emotional distress; that (2) was actually and proximately caused by; (3) wrongful conduct; (4) by a defendant who should have foreseen that the conduct would cause such distress. (*Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).) A claim for negligent infliction of emotional distress cannot be based on intentional conduct. (*Edwards v. U.S. Fid. & Guar. Co.,* 848 F.Supp.1460, 1466 (N.D. Cal. 1994) ("where the conduct alleged is intentional, it cannot be used as a basis for negligent infliction of emotional distress claim."))

Plaintiff's emotional distress claim is based on his allegation that CitiStaff did not follow through on its investigation of his cartoon complaint. First, CitiStaff did investigate and did all it could to prevent further harm to Plaintiff. Second, CitiStaff's actions to prevent further harm to Plaintiff does not constitute wrongful conduct and/or conduct that should have been foreseen to cause Plaintiff severe emotional distress. Third, CitiStaff had knowledge that immediate corrective

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

action was taken against the alleged harasser. No harm to Plaintiff resulted from any intentional act by CitiStaff. Therefore, Plaintiff's NIED claim against CitiStaff should be dismissed.

**G. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST FAIL.**

To prevail on an intentional infliction of emotional distress ("IIED") claim, Plaintiff must show (1) extreme and outrageous conduct with the intention of causing emotional distress; (2) that Plaintiff suffered severe distress; and (3) CitiStaff's conduct was the actual and proximate cause of the emotional distress. *Hughes v. Pair,* 46 Cal.4th 1035, 1050 (2009).

Plaintiff's IIED claim against CitiStaff rests solely on his allegation that CitiStaff did not follow through on his complaint of January 22, 2016. However, the undisputed facts show that CitiStaff acted immediately to ensure Plaintiff's safety after he forwarded his email of January 22, 2016, and offered to reassign him. He refused the offer. CitiStaff worked with Chartwell in its investigation of the incident and had knowledge that Chartwell took immediate corrective action one business day after the complaint was lodged. There was nothing more to be done by CitiStaff. Clearly, CitiStaff's actions in this case do not constitute extreme and outrageous conduct with intent to harm Plaintiff. Further, Plaintiff is unable to establish harm from an alleged failure to follow through on his complaint if he had no further negative interactions with Martinez.

**H. PLAINTIFF'S CLAIM FOR CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY IS MERITLESS.**

To prevail on a constructive discharge claim, Plaintiff must prove by a preponderance of the evidence that CitiStaff intentionally created or knowingly permitted intolerable working conditions that would cause a reasonable person in the employee's position to resign. *Turner v. Anheuser-Busch, Inc.,* 7 Cal.4th 1238, 12477 (1994). The underlying public policies to Plaintiff's claim are Article 1, Section 8 of the Constitution of the State of California and the California Fair Employment and Housing Act ("FEHA") (Gov't. Code §§ 12900 et seq.) prohibiting discrimination in the workplace. (See Plaintiff's Complaint at ¶¶ 229-233.) Plaintiff's public policy claim is based on the same facts as his 42 U.S.C. § 1981 claims. (*Ibid.*)

///

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CA 94612
(415) 357-4600
FAX (415) 357-4605

As discussed above, Plaintiff's claims for race discrimination, harassment, failure to prevent harassment and retaliation are meritless. CitiStaff's actions did not constitute conditions that created intolerable working conditions. Indeed, Plaintiff did not want to leave his position at Tesla and never resigned from CitiStaff. He remains on CitiStaff's register.

Plaintiff's claim for constructive discharge is meritless and should be dismissed.

**I. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES IS MERITLESS**

In order to obtain punitive damages against CitiStaff, Plaintiff bears the burden of proving by *clear and convincing evidence* that an officer, director or managing agent of CitiStaff (1) personally committed acts of oppression, fraud or malice, (2) authorized or ratified another employee's acts of oppression, fraud or malice, or (3) had advance knowledge of the unfitness of an employee who committed acts of oppression, fraud or malice and employed him or her with a conscious disregard of the rights and/or safety of others. (Cal. Civ. Code § 3294; *White v. Ultramar, Inc.*, 21 Cal.4th 563, 577 (1999).)

There are no allegations in this action that an officer, director or managing agent of CitiStaff personally committed acts of oppression, fraud or malice. No facts exist to support an argument that an officer, director or managing agent of CitiStaff authorized or ratified an employee's act of oppression, fraud or malice. Plaintiff's prayer for punitive damages against CitiStaff should be stricken.

**IV. <u>CONCLUSION</u>**

Plaintiff's entire action against CitiStaff is meritless and should be dismissed. No genuine issue for trial against CitiStaff exists. Summary judgment is therefore warranted.

Dated: September 18, 2019

LAFAYETTE & KUMAGAI LLP

*/s/ Susan T. Kumagai*
SUSAN T. KUMAGAI
Attorneys for Defendant
CITISTAFF SOLUTIONS, INC.

21

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (CASE NO. 3:17-cv-06748-WHO)**