September 20, 2019

**VIA E-MAIL AND U.S. MAIL**

Hon. William H. Orrick
USDC, Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Di-az et al., v. Tesla, Inc. dba Tesla Motors, Inc. et al.* Case No. 3:17-cv-06748-WHO

Dear Judge Orrick:

Pursuant to the Court's Standing Order re discovery, the Parties submit this joint letter and certify they could not resolve their differences after meeting and conferring in person on 6/7/19.

**Plaintiffs' Position**

In litigation, "'[g]amesmanship with information is discouraged'". *Fausto v. Credigy Svcs. Corp.*, 251 F.R.D. 436, 438 (N.D. Cal. 2008) (citations omitted). Defendant Tesla, Inc. (hereinafter "Tesla") has ignored this straightforward admonition and refuses to produce relevant and discoverable documents and information, including the identities of fact witnesses.

First. Tesla refuses to produce the names and contact information of individuals who worked with Plaintiffs (Interrogatories ("ROG") Nos. 11-12 [Set 2]). Plaintiffs limited this request to employees who worked in the same departments as Plaintiffs, while Plaintiffs worked for Tesla, during the shifts Plaintiffs worked, and having the same supervisors as Plaintiffs. Plaintiffs also requested the names and contact information of individuals who worked in the same department as Plaintiff Owen Diaz's harassers, during Plaintiff Diaz's work shifts. Because these employees worked in close proximity to Plaintiffs and their harassers, they likely have information relevant to Plaintiffs' claims. However, Tesla objected to production on relevance and privacy grounds.

Courts, and the Rules, agree with Plaintiffs. Under the Rules, the names and contact information of individuals "likely to have discoverable information"—like these employees—are not only relevant and discoverable, but required in a party's initial disclosures. Fed. R. Civ. P. 26(a)(1)(A); *see also Stone v. Advance America*, 2010 WL 5892501 at *2 (S.D. Cal. Sept. 21, 2010). Courts have also held that privacy objections cannot shield witness contact information from discovery. *Soto v. City of Concord*, 162 F.R.D. 603, 621 (N.D. Cal. 1995). Because this information is relevant and not private, Tesla has unreasonably avoided its timely production.

Second. Tesla refuses to produce information and documents regarding other complaints of racial harassment. Plaintiffs asked Tesla to describe all complaints of racial harassment filed with courts or government agencies from 2010-present (SPROG 4 [Set 1]). Plaintiffs requested documents reflecting complaints about the words "nigger" and "nigga" or racial harassment from 2010 to the present; witness statements, investigation files, and disciplinary records related to these complaints; documents related to complaints of racial harassment from four black employees who worked in the Production area, where Plaintiff Di-az worked, between 2015-2017; and documents relating to racist graffiti in Tesla's bathrooms from 2013 to the present (RPDs 17-22 [Set 1]; 53-55 and 61-64 [Set 2]). Plaintiffs limited the requests to areas Plaintiffs

Judge Orrick
September 20, 2019
Page 2

could access during their employment at Tesla: the departments where Plaintiffs worked, the department where Plaintiff Diaz's harassers worked, and the common areas. Plaintiffs limited the temporal scope from 2012-present. Given that Plaintiffs heard racial slurs and saw racist graffiti in areas far from their work areas, these requests are relevant and not overbroad. Tesla objected on grounds of relevance, proportionality, overbreadth, and undue burden. In effect, Tesla claims that Plaintiffs are not entitled to discover whether Tesla had prior notice of a racially hostile workplace, or whether Tesla subsequently remedied the racial hostility.

Courts have rejected Tesla's objections. The Ninth Circuit held that "[i]t is clear that an employer's conduct tending to demonstrate hostility towards a certain group"—such as prior or subsequent harassment—"is both relevant and admissible". *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995). The Northern District also held that nine years of prior and subsequent harassment complaints covering the entire building where a plaintiff worked are discoverable. *Marsh v. Bloomberg*, Inc., 2017 WL 2224250 at *2 (N.D. Cal. May 22, 2017) ("[Defendants] shall produce all sexual harassment/gender discrimination complaints filed about any person working in [their] San Francisco office, starting in December 2008 (five years before Plaintiff began her employ)" through 2017). Courts have also rejected undue burden objections simply because the records sought are voluminous or a company does not maintain a central database, observing that "a company cannot sustain a claim of undue burden by citing deficiencies in its own filing system". *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1033 (E.D. Cal. 2010) (citation omitted). Instead, the reviewing court must weigh the burden of production against the importance of the information sought. *Id.* This balancing test weighs in Plaintiffs' favor. The information sought is highly relevant, given that it is limited to three years or less before Plaintiffs worked for Tesla and to the areas Plaintiffs could access within Tesla's factory. In contrast, the burden would be minimal: Tesla need only to search the files of a few Human Resources ("HR") employees in a few areas in its factory. Tesla claims this narrowed search would be too burdensome, but it could not even tell Plaintiffs how many HR employees' files it would need to search or how long the search would take. Because the benefit outweighs the minimal burden of production, Tesla cannot avoid production of this relevant information.

The proportionality factors of Rule 26 also support Plaintiffs' requests. The factors include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The first factor weighs in favor of disclosure, because the Advisory Committee itself recognizes that cases concerning "employment practices… vindicate *vitally important* personal or public values." Fed. R. Civ. P. 26(b), Advisory Committee's Note (2015 Amendments) (emphasis added). The other factors similarly support disclosure: the amount in controversy is substantial given past multimillion dollar verdicts in similar suits; Tesla has unfettered access to information about these complaints while Plaintiffs have *no* access, because Tesla requires its employees to sign confidential arbitration agreements that bar them from discussing their complaints with others; Tesla is a profitable corporation with ample resources to conduct a search of its own records; evidence that Tesla had notice of the racially hostile workplace in its factory could be dispositive; and as laid out above, the minimal burden on Tesla is outweighed by the substantial benefit of the information. Plaintiffs detailed this analysis in two letters to Tesla. In contrast, Tesla simply replied that the discovery sought is "not proportional". The Advisory Committee specifically rejects this approach and forbids parties to refuse discovery "simply by making a boilerplate objection". *Id.* Because the discovery sought is relevant and proportional, Tesla has unreasonably avoided production.

Judge Orrick
September 20, 2019
Page 3

    <u>Third.</u> Tesla refuses to produce documents sent or received by its CEO, Elon Musk, discussing the use of racial slurs in the Fremont facility from 2010 to present (RPD No. 35 [Set 1]). Tesla claims that "Mr. Musk is not relevant to any party's claims or defenses in this case". This is patently nonsense. CEO Musk is clearly aware of discrimination complaints against Tesla. In 2017, he sent a company-wide email mocking discrimination lawsuits by stating that it was "obviously not cool" when "someone in a less represented group...decided to sue Tesla for millions of dollars" and admonishing employees to "be thick-skinned". Given that CEO Musk sets Tesla's policies and has a hostile attitude towards discrimination suits, it would be highly relevant to Plaintiffs' claims if CEO Musk had knowledge of race discrimination lawsuits prior to 2017; whether his hostility towards such suits impacted Tesla's anti-harassment policies; and whether CEO Musk encouraged the victims of racial harassment to be "thick-skinned" and not report the harassment they experienced. Moreover, CEO Musk's knowledge or actions are relevant to Plaintiffs' punitive damages claims. Given CEO Musk's knowledge of discrimination complaints, Plaintiffs are entitled to learn whether he possesses other discoverable information. Moreover, the "apex doctrine" does not shield Mr. Musk from discovery. This doctrine shields a corporation's officers from *deposition*, unless written discovery methods show the officer possesses "unique personal knowledge". *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067 at *4 (N.D. Cal. January 25, 2007). Plaintiffs are following the procedures laid out in the "apex doctrine" cases by using written discovery to obtain relevant information from CEO Musk.

    <u>Fourth.</u> Tesla refuses to produce contracts or memoranda of understanding describing its relationship with Defendants NextSource and Citistaff (RPDs 33-4 [Set One]) because it replied to a prior interrogatory. Effectively, Tesla claims that Plaintiffs are not entitled to information that would prove a central element of Plaintiffs' claims: whether Plaintiffs had a contractual relationship with Tesla. Tesla cannot use its responses to other discovery methods to justify its refusal to respond to these requests, because "'it is fundamental that parties may <u>simultaneously utilize any or all of the discovery mechanisms authorized by the rules</u>.'" *Campbell v. Facebook Inc.*, 310 F.R.D. 439, 449 (N.D. Cal. 2015) (citations omitted).

**Tesla's Position**

<u>SROG (Set 2), Nos. 11-12</u> seek contact information for "employees and/or contractors who worked *with or around*" Plaintiffs.  Though Plaintiffs assert percipient witness information may be discoverable, they fail to identify any.  Instead, this is fishing expedition for anyone who "worked around" Plaintiffs; not only are the requests not ascertainable, Plaintiffs have not agreed to any reasonable limitation.  Tesla cannot ascertain who "worked with or around" Plaintiffs and asked Plaintiffs to identify the "percipient witnesses" at deposition and during meet and confer; Plaintiffs was unable to identify any whose information had not already been provided.  To be clear, where Plaintiffs requested ascertainable witness contact information in other requests, Tesla has responded accordingly (*e.g.*, for Romero, Martinez, Timbreza).  Though Plaintiffs claim that the information they seek should be part of Tesla's initial disclosures, the initial disclosure requirements pertain to "potential evidence 'relevant to disputed facts alleged with particularity in the pleadings," and "broad, vague, and conclusory allegations sometimes tolerated in notice pleading…should not impose upon responding parties the obligation at that point to search for and identify all persons possibly involved in" the matter.  *See* FRCP 26, Notes of Advisory Committee on Rules – 1993 Amendment.  Tesla should not be required – either in its initial disclosures or in response to this broad interrogatory – to conduct such a burdensome search for any individuals (including those who are *not* Tesla's employees), who worked "with or around" Plaintiffs in a factory that totals over 5 million square feet.

    <u>SROG (Set 1) No. 4</u> seeks complainant contact/work related information, alleged harassers, and

Judge Orrick
September 20, 2019
Page 4

"descriptions" of <u>all</u> complaints made from 2008 - present.  Contrary to the claim that a request covering tens of thousands of employees over 11 years is "narrow in scope," Tesla has explained why it is burdensome and not feasible: there is no method to search a "centralized" database of complaints for the majority of the 11 year period.  Instead, the requested search would require identifying emails of HR Partners (assigned by specific factory areas, rather than a department or group, given the sheer factory's sheer size of 5.3 million sq. ft), determining search terms that would identify any "complaints," pulling the emails, applying search terms for specific dates, and reviewing what will likely be tens, if not hundreds of thousands of emails, for responsiveness and privilege.  Tesla proposed identifying HR Partners in Plaintiffs' departments during 2015-16 and applying "n*gger" and "n*gga" as reasonable and manageable terms, but Plaintiffs have not agreed to any limitation nor set forth how the proportionality and other requirements of FRCP 26(b)(2) are satisfied.  L.R. 37-2.

While "*me too*" evidence *may* sometimes be admissible where the conduct occurred outside the plaintiff's time of employment, its admissibility is inherently fact based and depends on many factors, including the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit; similar to balancing the probative value of the evidence against its prejudicial effect.  *Meeks v. Autozone, Inc.*, 24 Cal. App. 5th 855, 235 (2018).  Plaintiffs cite to an unreported case where the court actually found that the plaintiff's explanation that she was entitled to "me too" evidence to be "***not*** *proportional to the needs of the case.*" The Court agreed with the defendant's proposed limitation to the same-type complaints as plaintiff and against <u>four specific individuals</u>.  Where plaintiff worked only months with defendant, nearly 9 years of information as to thousands of individuals is not proportional to the needs of the case. *Marsh v. Bloomberg Inc.*, No. 16-CV-02647-MEJ, 2017 WL 2224250, at *2 (N.D. Cal. May 22, 2017).  Similarly, given Plaintiffs' work dates and areas, the burden/expense of searching HR Partners' across the entire factory over 11 years, with no limitation to the alleged harassers, is not proportional to the needs of the case and more prejudicial than probative.  Given the circumstances, "me too" evidence should not be permitted here.  Similarly, <u>RPD (Set 1) 17-22</u> seeks, from 2012 forward, any complaints, statements, notes, discipline, other "documents detailing complaints," and investigative files by any employees, contractors, and/or agents re "n*gger" and "n*gga." Again, Tesla proposed applying specific search terms to specific HR Partners' emails in the BIW/Elevator 1 departments.

<u>RPD (Set 3), Nos. 53-55</u> seeks documents showing any "racist messages or words" found in bathrooms from 2013 to present.  Tesla proposed using maps of Plaintiffs' work areas to come to agreement on areas to identify HR Partners (to whom complaints would be made) and apply search terms re bathrooms.  Since Plaintiffs refused to limit the requests for diagrams to anything less than the entire factory, the parties could not come to agreement on this search. Tesla maintains its willingness to conduct a search, applying specified search terms for HR Partners in BIW/Elevator 1 in 2015-16.  As is, Plaintiffs have not satisfied the proportionality requirement under L.R. 37-2.

<u>RPD (Set 3) 61-64</u> seek documents re any investigation into complaints by Patterson (former plaintiff in this case), Vaughn, Cotton, and Lambert.  Patterson testified he didn't submit complaints to Tesla, so there are no such documents.  Plaintiffs argue the requested documents might "confirm Tesla being placed on notice of … a racially hostile workplace prior to the date of Plaintiffs' complaints."  First, Vaughn and Cotton did not work at Tesla until *after* Plaintiffs worked there and could not possibly have put Tesla on prior notice.  Second, Vaughn, Cotton and Lambert did not work in Plaintiffs' dept., with Plaintiffs or any of the alleged harassers.  Third, Di-Az's deposition confirmed he does not know Patterson or Lambert (he was not asked about Vaughn, though they did not work in the same time period or dept.).  Diaz also confirmed he never met or worked in the same dept. as Lambert. Given the lack of any connection with Plaintiffs – in time, proximity, department, or alleged harassers – the requests are not proportional to the case needs, and are more prejudicial than probative.

Judge Orrick
September 20, 2019
Page 5

RPD (Set 1), No. 35 seeks "emails, text messages, instant messages and Twitter messages sent or received by Tesla [co-founder and CEO] Elon Musk" regarding the use of "n*gger" and/or "n*gga." This request is a clearly an abuse of the discovery process calculated solely to harass and annoy because Plaintiffs' allegations have nothing to do with Mr. Musk, who leads a global corporation.  He was not Plaintiffs' supervisor, involved in, or a witness to any alleged incidents.  Plaintiffs' argument that communications are discoverable merely because he is Tesla's highest ranking officer and "hypothetically" could have encouraged wrongful acts against Plaintiffs is absurd.  Indeed, parties seeking discovery from an "apex" witness like Mr. Musk bear a particularly heavy burden.  Courts have "observed that such discovery creates a tremendous potential for abuse or harassment" and "[w]here a high-level decision maker 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue," discovery from such a witness is improper.  *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. 2007).  Plaintiffs have failed to show any "unique personal knowledge" that Mr. Musk could have about this case, and instead speculate that Mr. Musk "hypothetically" could have encouraged racial discrimination / harassment against Plaintiffs. Plaintiffs cite an email Mr. Musk sent to employees that obliquely references "a few cases" (not Plaintiffs') against Tesla. There is no evidence the "few cases" generally referred to Mr. Musk's email involve race discrimination or harassment *at all*, that he had any first-hand knowledge of the facts of these cases, or that the allegations were in even similar to Plaintiffs'.  Indeed, the blog post Plaintiffs cite seeks to clarify *Plaintiffs' counsel's mischaracterization[1]* of the email as addressing race harassment.

Plaintiffs also speculate that the discovery could be relevant to Plaintiffs' claim for punitive damages. This court in *Jensen v. BNSF Ry. Co.*, 2015 WL 3662593, at *3 (N.D. Cal. 2015) rejected this same rationale for seeking discovery directly from an apex witness, holding that the plaintiff should instead seek discovery from "fact witnesses who were responsible for the terminations" and Rule 30(b)(6) depositions.

RPD (Set 1) No. 33-34 seeks *all* documents "describ[ing] the relationship between Tesla and NextSource," (and Citistaff) which is overbroad, encompassing financial and confidential business information not proportional to the needs of this case, especially since Tesla responded to an interrogatory describing the relationship with NextSource as "contract[ing] with…other third parties, to secure temporary employees to work at its facilities." Tesla has similarly stated in interrogatory responses that its relationship with Citistaff is that NextSource contracts with Citistaff to secure temporary employees to work at Tesla's facilities. Further, Plaintiffs' broad request for all documents "describing the relationship" between the Tesla and its staffing agencies would not, as Plaintiffs claim, prove whether Plaintiffs had a contractual relationship with Tesla. Plaintiffs testified, and the documents produced show, that Diaz was employed by Citistaff, who placed him to work at Tesla (since, as noted above, Citistaff places temporary employees to work at Tesla's facilities), and Tesla does not dispute the assignment of Diaz to work at its facility by Citistaff.

---

[1] Plaintiffs' counsel also represents *Vaughn* against Tesla, and incorrectly alleged in that Complaint that Mr. Musk's email was in response to race harassment.  The blog in Plaintiffs' fn 1 rejects this characterization for which there is no basis.

Judge Orrick
September 20, 2019
Page 6

Jointly,

| | |
|---|---|
| CALIFORNIA CIVIL RIGHTS LAW GROUP<br>ALEXANDER KRAKOW + GLICK LLP | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| By:  /s Navruz Avloni<br>LAWRENCE A. ORGAN<br>J. BERNARD ALEXANDER, III<br>NAVRUZ AVLONI<br><br>Attorneys for Plaintiffs<br>Demetric Di-Az and Owen DIAZ | By:  /s Patricia Jeng<br>TRACEY A. KENNEDY<br>PATRICIA M. JENG<br>REANNE SWAFFORD-HARRIS<br><br>Attorneys for Defendant<br>TESLA, INC. dba TESLA MOTORS, INC. |