October 18, 2019

**VIA E-MAIL AND U.S. MAIL**

Hon. William H. Orrick
USDC, Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Di-az et al., v. Tesla, Inc. dba Tesla Motors, Inc. et al.* Case No. 3:17-cv-06748-WHO
      Subject: Tesla's Objections to Plaintiffs' PMK Topics

Dear Judge Orrick:

Pursuant to the Court's Standing Order re discovery, the Parties submit this joint letter and certify they met and conferred in-person on September 13, 2019 on the issues discussed below, and were unable to resolve their differences.

**Plaintiffs' Position**

Tesla improperly refused to produce its PMK on a number of relevant, discoverable topics.

Topics Nos. 38-40: Tesla originally agreed to produce its PMK with respect to the business relationship between it and the other entities. At deposition, Tesla's counsel stated the PMK it produced was not designated most knowledgeable with respect to Topic 38, and the PMK said she was not most knowledgeable as to Topics 39 and 40. When the parties met and conferred, Tesla baselessly claimed its PMK had testified about these topics. The PMK Tesla produced *never* testified about the contractual relationship between the entities. Tesla's eleventh-hour decision to decline to produce its PMK on these topics, and subsequent baseless claim that its PMK fully testified on these topics, was improper, and Tesla must produce its PMK.

Topics Nos. 1, 2, 9, and 12: Tesla did not prepare its PMK to testify about its race harassment and discrimination policies and procedures (No. 1), its anti-harassment and -discrimination training (No. 2), its investigation into Plaintiffs' complaints (No. 9), or what actions it took after investigating Plaintiffs' claims (No. 12). When Plaintiffs' counsel asked questions about the policies, the PMK referred counsel back to the written policies; and the PMK did not know if employees were disciplined after Plaintiffs complained of harassment. At the deposition, Tesla's counsel objected and claimed its PMK did not have to testify about a documents' contents .

The Northern District rejects this argument. Under Rule 30(b)(6), "'[i]f a corporation has knowledge or a position as to a set of alleged facts or an area of inquiry, it is its officers, employees, agents, or others who must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination.'" *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2009 WL 3809815 at *3 (N.D. Cal. Nov. 10, 2009) (citations omitted). Parties are also entitled to test the veracity and accuracy of discovery responses and document production by deposing a 30(b)(6) witness. *Campbell v. Facebook*, 310 F.R.D. 439, 449 (N.D. Cal. 2015.) This is precisely what Plaintiffs seek to do, and Tesla must produce a PMK on these topics.

Topics Nos. 19, 20, and 55: Tesla refused to produce its PMK as to its past record of acting on

Judge Orrick
October 18, 2019
Page 2

race harassment complaints (No. 19), any civil actions filed against Tesla or its employees regarding race harassment (No. 20), and discipline imposed on employees who violated Tesla's racial harassment policies (No. 55). Plaintiffs limited the requests to 2014-2017. Tesla cited privacy and relevance objections to justify its failure to produce its PMK.

Tesla cannot shield this testimony on privacy grounds. Courts have observed that an "essential element" of third-party privacy rights is a "reasonable expectation of privacy" in the information sought. *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 856 (1994). Such an interest does not exist in the context of complaints filed with government agencies and courts. *Gilbert v. Citigroup, Inc.*, 2009 WL 10692463 at *4 (N.D. Cal. Apr. 2, 2009). Similarly, there is no reasonable expectation of privacy in complaints to an employer. Equal Opportunity Employment Commission Enforcement Guidance on Vicarious Liability for Unlawful Harassment by Supervisors, E.E.O.C. Notice 915.002 at (V)(C)(1)(D) (June 16, 1999). The Northern District has also specifically found that a plaintiff-employee's need for information about a defendant-employer's other workers "outweighs the privacy interest of [a d]efendant's employees." *Gilbert, supra*, 2009 WL 10692463 at *4 (N.D. Cal. April 2, 2009).  And privacy concerns are reduced where the parties have agreed to a protective order. *see Goold v. Hilton Worldwide, Inc.*, 2014 WL 1383252 (E.D. Cal. Apr. 4, 2014). Given the *de minimis* privacy concerns and the protective order in this case, Tesla cannot shield this information using privacy objections.

The information sought is also directly relevant. Plaintiffs have not alleged that they were harassed by one or two "bad apples." Rather, Plaintiffs have alleged that Tesla maintained a systemic culture of racial harassment in which racial hostility was the norm, where they observed fellow employees using racial slurs throughout the factory—outside of their immediate work areas—and saw racial slurs written in multiple bathrooms. Plaintiff's allegations are not mere speculation or attempts to justify a "fishing expedition": Plaintiffs have identified numerous employees who were called the N-word and saw racist graffiti while working at the Tesla factory as early as 2013 and as recently as 2018, in Plaintiffs' departments (Production and Recycling):

| Name | Dates Employed | Position | Harassment |
| --- | --- | --- | --- |
| 1.  Thomas Billbury | March-May 2017 | End of Line Technician | Regular use of the n-word |
| 2.  Dominique McDermott | August-November 2017 | Production Associate | Regular use of the n-word |
| 3.  Sean Jones, Sr. | October 2013-October 2017 | Production Associate | Regular use of the n-word |
| 4.  Clint Flournoy | November 2016-August 2017 | Production Control Associate | Regular use of the n-word |
| 5.  Delanna Grayson | October 2016-April 2017 | Production Associate | Regular use of the n-word |
| 6.  Dwaine Robinson | October 2017-November 2017 | Production Associate | Regular use of the n-word |
| 7.  Crystal English | January-June 2017 | Production Supervisor | Regular use of the n-word |
| 8.  Sharonda Taylor-Banks | February-April 2017 | Production Associate | Regular use of the n-word |
| 9.  Gregory Belton | February 2014-March 2017 | Product Excellence Technician | Regular use of the n-word |
| 10. Leonard Burks | April-October 2017 | Production Associate | Regular use of the n-word |
| 11. DeWayne Jones | April 2012-April 2017 | Production Associate | Regular use of the n-word |
| 12. Kevin Taylor | May-July 2017 | Production Associate | Use of the n-word; racist graffiti |
| 13. Sean Barrow | June-August 2017 | Production Associate | Use of the n-word; racist graffiti |
| 14. Titus McCaleb | October 2016-June 2017 | Production Associate | Regular use of the n-word |
| 15. Aaron Laird | April-July 2017 | Production Associate | Use of the n-word; racist graffiti |
| 16. Dyrell Wilson | July 2015-October 2017 | Production Associate | Called n-word and gorilla |
| 17. Lonnie Morris | December 2016-May 2017 | Production Associate | Use of the n-word; racist graffiti |
| 18. Teshawna Stewart | July 2017-May 2018 | Production Associate | Regular use of the n-word |
| 19. Tiffany Hamilton | April-October 2017 | Production Associate | Regular use of the n-word |
| 20. Vincent Smith | November 2017-June 2018 | Production Maintenance | Regular use of the n-word |
| 21. Derrick Gray | March 2017-April 2017 | Production Associate | Regular use of the n-word |

Given that the harassment Plaintiffs experienced was this widespread, Plaintiffs must be allowed to ask how Tesla handled these other complaints and to determine whether Tesla appropriately responded to complaints of harassment or took meaningful steps to address the hostile work environment that was allowed to flourish in the Fremont facility.

Judge Orrick
October 18, 2019
Page 3

<u>Topics Nos. 27, 28, and 33:</u> Tesla refused to produce its PMK with respect to race harassment complaints against Ramon Martinez (No. 27), race harassment complaints involving Ramon Martinez (No. 28), and discipline imposed on Javier Caballero as a result of Plaintiff's complaints of racial harassment (No. 33). Tesla unilaterally limited Topics 27 and 28 to a single complaint lodged by Plaintiff, while Tesla claimed that Caballero's prior percipient witness testimony satisfied its obligation to produce its PMK with respect to Topic 33. This unilateral limitation of clearly relevant information and refusal to designate and produce a witness representing the corporation's knowledge was improper..

<u>Topic No. 32</u>: Tesla refused to produce its PMK with respect to race harassment complaints made against Javier Caballero (No. 32), claiming that such complaints were irrelevant. This is patently spurious. Mr. Caballero was Plaintiff Di-az's supervisor, and Plaintiff Di-az alleged that Mr. Caballero racially harassed him and retaliated against him. *Nothing* could be more relevant than complaints against the same harasser, and Tesla must produce its PMK on this topic.

<u>Topic No. 56</u>: This topic seeks testimony on Tesla's present financial condition. Tesla refused to produce its PMK on this topic, arguing that it was not relevant, private, and overbroad. Such evidence is not only relevant but admissible, because "evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded." *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 270 (1981). Tesla can hardly claim the information sought is private, given that Tesla is a publicly traded company. Nor is the request overbroad—Plaintiffs merely seek a witness to question about Tesla's present financial state. Accordingly, the information sought must be produced.

**Tesla's Position**
Plaintiffs first noticed Tesla's PMK deposition in May 2018 with 53 topics. Tesla has already produced 3 PMKs, in June 2018 and May 2019. On 9/6/19, Plaintiffs sent a meet/confer letter, and the parties met in person. For some topics, Tesla cited to transcripts where its PMKs had already so testified. *Plaintiffs' counsel* suggested they would identify non-PMK testimony that Tesla could potentially agree to designate as binding PMK testimony. Plaintiffs never did so; never served another PMK Notice; and took no action until now: after fact discovery closed.

In the 9/19/19 Discovery Dispute letter, Defendants addressed Plaintiffs' requested PMK depositions stating they would be prejudiced if all depositions were not completed before filing dispositive motions, but Plaintiffs did not address the issue. The Court permitted Plaintiffs 14 more hours of deposition, to be completed by 10/15/19. No second bite at the apple should be permitted for additional PMK testimony on topics noticed over 1.5 years ago.

<u>Topics 27-28 (any race harassment complaints involving or against Ramon Martinez):</u>  For both topics, Tesla responded to the first PMK Notice stating it would "produce its [PMK] to testify as to Plaintiff Owen Diaz's report on or about January 22, 2016 of a picture of a cartoon image," involving Ramon Martinez. Victor Quintero so testified on 6/7/18. Tesla's subsequent objection that it previously produced a witness was correct. Quintero testified *extensively* about Martinez's status (not a Tesla employee), the cartoon complaint, Martinez's other interactions with Diaz, Martinez's admissions and discipline, complaints made by Diaz against Martinez, and whether discipline would have been more strict if Tesla "had been aware that there were other racist conduct in addition to this effigy." Quintero's Martinez testimony was linked to actual complaints; Plaintiffs' attempt to seek more impermissible "me too" evidence is beyond the scope of Tesla's agreement and should not be permitted. Plaintiffs' cited case is inapposite; it involved (timely) disputes where defendants argued fact witness testimony precluded PMK testimony. Plaintiffs had ample opportunity to question the PMK. Plaintiffs' late-discovered regret about questions

Judge Orrick
October 18, 2019
Page 4

not posed is not a basis to compel a fourth PMK deposition, 16 months later.

Topics 32-33 (any harassment complaints, concerns against Caballero / any discipline against Caballero as a result of Di-Az's complaint):  Javier Caballero was deposed as a PMK *and* an individual on 6/7/18, but *neither topic was even identified in Plaintiffs' original PMK Notice*; only *after* the deposition did Plaintiffs serve *a new* notice adding these topics. Plaintiffs *never* asked Caballero if Di-az made a racial harassment complaint, if Caballero was disciplined, or if Caballero made racial comments to Di-az. Caballero testified if he had received a race harassment complaint he would have reported it to both his supervisor and HR. Plaintiffs now seek to remedy their failure to question him about Plaintiffs' claims by later adding these topics. Plaintiffs should not be permitted to continuously add topics after Tesla's PMKs testify, when Tesla would have otherwise designated prior PMKs on the topic. Plaintiffs here chose *not* to ask a witness critical questions. Further, the topics are unlimited in time and scope and are impermissible "me too" evidence because in deposition Di-az admits he made no formal written complaint about Caballero. The Court's 10/3/19 Order established the permissible confines of "me too" evidence; these topics do not fall within it.

Topics 38-40 (unspecified "information related to" the "business relationships" between Tesla and staffing agencies):  Tesla's objections included they were overbroad, vague and uncertain as to what "information related to the business relationship" meant but offered a PMK to testify "as to the general nature of the relationship between" Tesla and the staffing company. Plaintiffs never explained or clarified the information sought. Regardless, PMK Annalisa Heisen testified on 5/29/19 about how Tesla worked with staffing companies when investigations or complaints involved staffing companies' employees. She also testified that staffing companies had their own policies, procedures and guidelines as well as the intersection between Tesla's policies and those policies in a workplace complaint situation. Plaintiffs still have not clarified the testimony sought or explained why (if true) Tesla has not testified about the general nature of the business relationship between Tesla and staffing companies.  No further testimony should be permitted.

Topics 1, 2 (policies/procedures related to race harassment/discrimination):  Plaintiffs don't identify a single instance where Tesla's PMK was unprepared other than stating the PMK "referred counsel back to the written policies." The PMK testified extensively about policies and procedures and even though plaintiffs' counsel refused to put the policies in front of her until much later in the deposition, she continued to answer questions. Plaintiffs' suggestion that all policies must be known by heart is not the law. A witness must be prepared and knowledgeable, but they need not be subjected to a "memory test." *DarbeeVision, Inc. v. C & A Marketing, Inc.*, 2019 WL 2902697, at *7 (C.D. Cal. Jan. 28, 2019)(citations omitted). The transcript shows Ms. Heisen gave appropriate answers such as:  "Q. You would agree that under the policies that Tesla has, the antidiscrimination policies, that every employee has a duty to try and prevent harassment based on race from occurring; right? A. Yeah, the policy states as much." Or this example: when asked if Tesla had a "zero tolerance policy" the PMK testified she was "not sure if [zero tolerance] is articulated specifically in the policy" and "would have to see it to confirm that"; Plaintiffs' counsel's very next two questions were: "But certainly, Tesla does not tolerate any kind of harassing conduct…right?" and "…Tesla's policies do not permit any employees or contractors or vendors to engage in harassing conduct based on race in the factory; right?"  Ms. Heisen answered "Correct.  What's articulated in the policy" to the first and "Right" to the second.  Nor is Plaintiffs' citation to *Beauperthuy* applicable because the PMKs in that misclassification case testified they *did not know* which exemptions applied to managers.  Here, Tesla's PMK responded to the questions posed in May 2018.  No further testimony is warranted.

Topics 9, 12 (investigations in response to Plaintiffs' complaint and any action taken):  Plaintiffs' only purported deficiency is based on the blatant misrepresentation that Tesla's PMK "did not

Judge Orrick
October 18, 2019
Page 5

know if employees were disciplined after Plaintiffs complained[.]" The transcript shows this is false. Tesla's PMK testified neither Ramon Martinez (the alleged harasser) nor Diaz were Tesla employees; the investigation was coordinated with the two staffing agencies; and that *Martinez was disciplined by a suspension for 3 days and a final written warning*. On another complaint, she testified both Timbreza and Diaz were not Tesla employees, the complaint was unsubstantiated, and *Timbreza was given a verbal warning* for conduct based on a witness statement. Plaintiffs' citation to *Campbell* is no help because the party there tried to avoid a PMK deposition by providing source code and discovery responses.  Tesla makes no such assertion here because the requested *testimony* was provided.

Topic 56 (Tesla's "current financial condition"):  At meet/confer, Tesla stated it didn't know how to educate a PMK since Plaintiffs gave no information on what "present financial condition" is and still have not. Their cited case is dicta in an appeal on whether punitive damages can be awarded against a municipality; punitive damages discovery is never discussed. If "net worth" is what this topic seeks, Plaintiffs admit this is available to them through Tesla's public 10-Ks, which include financial statements (assets, liabilities, equity, revenues, and operating costs). Indeed, Plaintiffs' *own* expert designation confirms "financial information regarding Defendant Tesla, Inc., is available because it is a publicly traded corporation." Plaintiffs have given no reason for any *other* financial information.  No testimony on this topic should be permitted.

Topics Nos. 19[1], 20[2], and 55[3]: The parties already briefed the propriety of "me too" evidence in Plaintiffs' 9/6/19 Discovery Letter; the Court's 10/3/19 Order provided parameters for complaints and "me too" evidence and denied Plaintiffs' request for information re race harassment complaints from specific persons because the "individuals' experiences lack any connection with [Plaintiffs] in terms of time, proximity, department or alleged harasser…plaintiffs are not entitled to this information." Plaintiffs' request here is the same: asking for "circumstances" of "past records" and "civil actions" including "discipline of employees" without any connection to Plaintiffs' claims. Worse, this letter is the first time plaintiffs' "list" of 21 people who allegedly were called the n word or saw graffiti is disclosed. It was not produced in discovery; its source is unknown. Plaintiffs falsely state the 21 people are in the same departments as Plaintiffs, but "Production" is not a department. Only one person (Titus McCaleb) was disclosed before discovery cutoff and at deposition confirmed "I don't know who Owen Diaz is" and only knew of Di-Az from his attorney.  McCaleb was not a Tesla employee, was in a different department (*not* BIW/Elevator 1), was there long after Plaintiffs left, and never made a complaint against any of the same alleged harassers or team members. 17 people on the list of 21 were at Tesla *after* Plaintiffs left. For the other 4 nothing is known about the alleged harasser, department or proximity to Plaintiffs (or if the time frame is accurate). The list does not show whether anyone ever complained to Tesla.  This was *never* part of any meet/confer and there is no showing to justify the extreme invasion of privacy to non-party litigants such testimony would cause.

  Jointly,

---

[1] "The circumstances (who, what, where, when, how and why) of DEFENDANT'S past record of acting on race harassment complaints from 2010 to the present."

"[2] From 2010 to the present, "the circumstances (who, what, where, when, how and why) of any civil actions filed against Defendant or Defendant's employee by another employee claiming that they were the victim of race harassment, including but not limited to the use of "nigger" or "nigga" in the workplace, or that Defendant failed to take reasonable steps to prevent harassment from occurring, including (a) the name, address, and telephone number of each employee who filed the action; (b) the court, names of the parties, and case number of the civil action; (c) state the name, address, and telephone number of any attorney representing each employee; (d) whether the action has been resolved or is pending."

[3] "Discipline of employees who have violated TESLA's race harassment and/or discrimination policies."

| CALIFORNIA CIVIL RIGHTS LAW GROUP<br>ALEXANDER KRAKOW + GLICK LLP | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
|---|---|
| By: /s Navruz Avloni<br>LAWRENCE A. ORGAN<br>J. BERNARD ALEXANDER, III<br>NAVRUZ AVLONI<br><br>Attorneys for Plaintiffs<br>Demetric Di-Az and Owen DIAZ | By: /s Patricia M. Jeng<br>TRACEY A. KENNEDY<br>PATRICIA M. JENG<br>REANNE SWAFFORD-HARRIS<br><br>Attorneys for Defendant<br>TESLA, INC. dba TESLA MOTORS, INC. |

SMRH:4845-3257-2586.1