October 18, 2019

**VIA E-MAIL AND U.S. MAIL**

Hon. William H. Orrick
USDC, Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Di-az et al., v. Tesla, Inc. dba Tesla Motors, Inc.* Case No. 3:17-cv-06748-WHO

<span style="padding-left: 3em;">Subject: Plaintiffs' Demand to Inspect Tesla's Fremont Factory</span>

Dear Judge Orrick:

Pursuant to this Court's Standing Order re discovery, the Parties submit this joint letter and certify they met and conferred in-person on June 7, 2019 on this issue and were unable to resolve their differences.

**Plaintiffs' Position**

On March 26, 2019, Plaintiffs sent Defendant Tesla, Inc. ("Tesla") a demand to inspect, photograph, and videotape the Fremont, California factory where Plaintiffs worked. Plaintiffs limited their demand to "any area that Plaintiffs had access to during their employment", including Plaintiffs' work areas and the facility's common areas. Tesla unreasonably objected, claiming the proposed site inspection was irrelevant, endangered confidential and proprietary information, unreasonably disruptive to business, and dangerous. However, these objections do not support Tesla's baseless refusal to permit Plaintiffs to conduct a site inspection.

First, an inspection is relevant and proportional to Plaintiffs' claims. Under Rule 26, "relevance" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The proposed inspection readily meets this standard. Plaintiffs wish to inspect and photograph to visually demonstrate to the trier of fact the wide variety of locations were Plaintiffs experienced or witnessed racial harassment, including the production area, bathrooms, smoking area outside, and the second floor of the facility. The request has reasonably been limited to the areas Plaintiffs could access while they worked in the facility. This information is central to Plaintiffs' theory of the case: that any reasonable employer, in the exercise of reasonable diligence, should have known about the harassment Plaintiffs experienced given the widespread nature of a pervasive, racially hostile work environment in Tesla's factory. By providing photographs and measurements of locations within the factory to the trier of fact, Plaintiffs will provide a visual aid to demonstrate the pervasive nature of the harassment. Such information is plainly relevant and thus discoverable.

The Rule 26 proportionality factors include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The first factor weighs in favor of disclosure, because the Advisory Committee itself recognizes that cases concerning "employment practices… vindicate vitally important personal or public values."

Judge Orrick
**October 18, 2019**
Page 2

Fed. R. Civ. P. 26(b), Advisory Committee's Note (2015 Amendments) (emphasis added). The other factors similarly support disclosure: the amount in controversy is substantial given past multimillion dollar verdicts in similar suits; Tesla has unfettered access to schematics and images of its factory while Plaintiffs have no access (especially salient given that Tesla requires all employees to sign non-disclosure agreements precluding them from taking any photographs in the factory); Tesla is a successful corporation with the resources to permit a site inspection; the discovery sought is highly relevant to Plaintiffs' claims and a prerequisite to allowing Plaintiffs to rebut Tesla's characterizations of the workplace; and as laid out below, there is little to no burden entailed in the discovery sought given that Tesla routinely offers tours of its factory to the public. Given the weighty relevance and "vitally important" values at issue, an inspection of the areas Plaintiffs could access during their employment is proportional to the case.

Second, the proposed inspection would not reveal confidential and proprietary business information. Under Federal Rule 26(c)(1)(G), discovery maybe limited or prohibited where it might reveal confidential and proprietary business information. However, the appropriate procedure to protect proprietary information is to enter into a protective order. *National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP, 256 F.R.D. 678, 683 (C.D. Cal. 2009)*. To shield confidential information from discovery entirely, "the moving party must show (a) that the information is a 'trade secret or other confidential research, development, or commercial information,' under Rule 26... and (b) that its disclosure would be harmful to the party's interest in the property." *Nutratech, Inc. v. Syntech (SSPF) Intern., Inc.*, 242 F.R.D. 552, 554-5 (C.D. Cal. 2007) (internal citations omitted). Tesla cannot make this showing.

Crucially, the parties have already entered into a protective order to safeguard "confidential and proprietary" business information. In fact, <u>Tesla</u> drafted this order. This protective order will adequately address Tesla's concerns about the dissemination of confidential information. Moreover, Tesla's bid to deny Plaintiffs legitimate, relevant discovery fails both prongs of the *Nutratech* test. It fails on the first prong because the operations of Tesla's factory are not confidential. Tesla offers tours of its Fremont facility to journalists; Tesla owners and their friends; Tesla employees and their friends; celebrities; and high-value investors. Tesla allows journalists to disseminate photos of its facility online.[1] Tesla allows journalists to post video tours of its facility online.[2] In addition, most of the areas Plaintiffs seek to inspect—like bathrooms, elevators, and restrooms—are not home to confidential information. Tesla's position thus also fails the second prong: Tesla can hardly argue that a site inspection pursuant to the protective order would harm its business when video and photo tours posted to the public internet have not harmed its business. Tesla cannot allow relatively public tours of its factory and then conveniently claim the facility's operations are "confidential" only with respect to the discovery in this case.

Third, Tesla's objections that a site inspection would be intrusive to business operations or dangerous simply do not stand up in light of the foregoing. It is patently nonsense for Tesla to claim an inspection is dangerous only to Plaintiffs' counsel, and not to members of the public like friends and family of Tesla owners. Tesla's behavior during the meet and confer process further suggests this is a spurious objection. Plaintiffs offered to conduct the inspection at the time and manner that would be least intrusive to Tesla's business operations, and even offered to conduct the inspection alongside a scheduled tour of the factory, since the regularly scheduled tours are plainly neither dangerous nor intrusive. Tesla's counsel replied that Plaintiff's counsel was free to register for a tour. When Plaintiffs' counsel pointed out that she

---

[1] https://www.businessinsider.com/tesla-factory-tour-2017-7
[2] https://uncrate.com/video/tesla-factory-tour/

could not register unless she owned a Tesla car, Tesla's counsel replied that it sounded "like [Plaintiff's counsel's] problem" and rejected the suggestion. However, the intrusiveness or dangerousness of a site inspection simply does not turn on whether one's counsel owns a $36,000 vehicle. The Court should thus reject this patently spurious objection and allow the inspection.

Last, Tesla argued there were other, less intrusive means to obtain the same information. The Northern District has rejected this objection and held that parties "may simultaneously utilize <u>any or all of the discovery mechanisms authorized by the rules</u>'", because "different types of discovery address different concerns." *Campbell v. Facebook Inc.*, 310 F.R.D. 439, 449 (N.D. Cal. 2015) (citations omitted, emphasis added). However, in good faith, Plaintiffs agreed to forgo the site inspection if Tesla produced a diagram showing Plaintiffs' work areas and the common areas of the facility, like restrooms. Tesla did not produce the promised diagram until September 10, 2019. The diagram did not contain a scale, so Plaintiffs cannot determine the relative distances between various points. It does not depict all of the areas Plaintiffs could access, like common areas such as the lunchroom near the elevators where Owen Diaz worked and all of the toilets near Mr. Diaz's work areas. Crucially, it does not even depict Plaintiffs' full work areas: Plaintiff Owen Diaz was an elevator operator who carried materials between various floors of the factory, but the general diagram Tesla produced depicts only one floor of the factory. This less-intrusive discovery cannot be fairly said to act as a replacement for the measurements, photographs, and videos that Plaintiffs could obtain through a site inspection—information that Tesla has full access to, and can produce at a moment's notice to disadvantage Plaintiffs.

Accordingly, the Court should grant Plaintiffs' request.

**Defendants' Position**

The Parties met and conferred regarding Plaintiff's March 2019 demand for a site inspection on June 7, 2019. Following the Parties' meet and confer, Tesla agreed to, and did, provide Plaintiffs with a diagram of the Factory, as requested. As Plaintiffs admit, they have been in receipt of this diagram for over 5 weeks. Plaintiffs *never* attempted to further meet and confer. Instead, they waited until after the discovery cutoff to argue the diagram was insufficient. Plaintiffs have provided no explanation for their dilatory conduct, and Defendant is being made aware of Plaintiffs' issues with its diagram for the first time through this dispute letter. In fact, Defendant has been under the impression that this issue was resolved.

Even now, Plaintiffs have critically failed to proffer any reasonable explanation for **why a site inspection is needed to support their claims**. Plaintiffs' unreasonably overbroad request is in no way relevant or proportional to the claims and defenses in this case. Nor is it important in "resolving the issues" of whether Plaintiffs were discriminated and/or harassed. If a site inspection had been truly critical, Plaintiff should and would have raised the issue at least four months ago or, at the very least, prior to the discovery cutoff. Plaintiffs' request should be denied.

First, it has been <u>over four years</u> since Plaintiff Di-Az has worked at the Factory, and almost four years since Plaintiff Diaz has. There is nothing to suggest that the layout, environment, or working conditions of the Factory have remained the same since Plaintiffs' time there four years ago, and in fact, deponents in this case (including Plaintiffs' witness) have testified to the contrary and that the factory has drastically changed. Moreover, Plaintiffs state that they wish to "provide a visual aid to demonstrate the pervasive nature of the harassment,"

Judge Orrick
**October 18, 2019**
Page 4

but do not explain how the inspection accomplishes this, particularly with the current layout, environment, and conditions of the factory. Surveys, videos, and photographs would not capture Plaintiffs' allegations of being called the n word and altercations with co-workers; and as for the allegations of "racist graffiti," there is no evidence that the alleged graffiti would have remained in specific bathrooms, four years later. In fact, Plaintiffs are aware that Diaz's own Lead testified to the immediate removal of *any* graffiti in his area. Thus, a site inspection would not result in Plaintiffs being able to "visually demonstrate to the trier of fact the wide variety of locations were [*sic*] Plaintiffs experienced or witnessed racial harassment[.]"

Because both parties know that the Factory as it is currently is not reflective of the Factory in 2015, Defendant compromised by providing a diagram depicting the layout *at the time of the Plaintiffs employment*. Plaintiffs new contention that an inspection is needed because "[t]he diagram did not contain a scale . . ." is disingenuous, as Plaintiffs *never* requested a scale, nor did they make any request that the diagram "depict all of the areas Plaintiffs could access" in 2015. A site inspection of the Factory and its *current condition* can in no way be relevant to claims made regarding its condition in 2015.

Second, contrary to Plaintiffs' assertion, Plaintiffs' request to measure, survey, photograph, and videotape "any areas Plaintiffs could access" would indeed compromise confidential and proprietary business information. Plaintiffs themselves admit that Tesla requires all workers to sign non-disclosure agreements ("NDA") that preclude them from taking photographs in the Factory – including areas where they work. Thus, Plaintiffs' claim that the proposed inspection would not reveal confidential and proprietary business information is belied by the fact that Plaintiffs were required to sign an NDA to access the very areas they worked in and where they now seek to photograph and share with the jury. Plaintiffs' position is completely contradictory.

Third, and frankly more nonsensical, is Plaintiffs' suggestion that because Tesla allows irregular, *private* tours of *select* areas of its Factory, it somehow invites unfettered access to its 5+ million sq. ft Factory, or waives its right to safeguard confidential and proprietary business information in other areas of the Factory. The fact that Tesla— a leading competitor in manufacturing electric cars— is currently developing unreleased model(s) at its Factory, is sufficient alone to shield from Plaintiffs' request to photograph and videotape the Factory, where manufacturing processes are confidential and proprietary. *Nutratech, Inc. v. Syntech (SSPF) Intern., Inc.*, 242 F.R.D. 552, 554-5 (C.D. Cal. 2007) (internal citations omitted). (confidential information shielded from discovery when "(a) [] the information is a 'trade secret or other confidential research, development, or commercial information,' under Rule 26... and (b) [] its disclosure would be harmful to the party's interest in the property."). Further, Plaintiffs' implication that Tesla's Factory is widely accessible to the public is patently false; if indeed the Factory was open to the public, Plaintiffs could and would have taken one of the alleged "public tours" well before the discovery cutoff. The fact is that any private tour requires specific authorization. For this same reason, the Parties' Protective Order in this matter cannot protect against Defendant's privacy concerns of Plaintiffs' request to survey, photograph, and videotape Tesla's Factory, where workers undisputedly needed to sign NDAs to access. And as noted above, Plaintiff's request is particularly unreasonable in light of the fact that such photographs would not be reflective of the Factory in 2015-16, and therefore not proportional to the needs of this case.

Accordingly, the Court should deny Plaintiffs' request for a site inspection.

Jointly,

| CALIFORNIA CIVIL RIGHTS LAW GROUP | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
|---|---|
| By: /s Navruz Avloni | By: /s Patricia M. Jeng |
| LAWRENCE A. ORGAN<br>NAVRUZ AVLONI | TRACEY A. KENNEDY<br>PATRICIA M. JENG<br>REANNE SWAFFORD-HARRIS |
| Attorneys for Plaintiffs<br>Demetric Di-Az and Owen DIAZ | Attorneys for Defendant<br>TESLA, INC. dba TESLA MOTORS, INC. |

SMRH:4810-9697-9114.1