UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>TESLA, INC., et al.,<br><br>   Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**ORDER ON FURTHER DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 101, 103, 105, 106 |

In the wake of an Order on discovery disputes posted just three weeks ago, plaintiffs Demetric Di-az and Owen Diaz and defendant Tesla, Inc. submitted three joint letters addressing yet more disputes that have arisen between them as discovery has come to a close. This Order resolves those disputes.

### A.   Tesla's Objections to Plaintiffs' PMK Topics (Dkt. No. 101)

*Re: race harassment complaints involving or against Ramon Martinez (topics 27 and 28)*: Tesla represents that contrary to plaintiffs' assertions, Victor Quintero served as a PMK related to the circumstances around and response to plaintiff Diaz's complaint about a racist cartoon drawn by Martinez. Plaintiffs are not entitled to more.

*Re: complaints against and discipline of Caballero (topics 32 and 33)*: According to Tesla, plaintiffs failed to notice or question Caballero about these topics during his deposition. Plaintiffs have offered no reason why they should be entitled to a second opportunity when Caballero has already been made available to address these topics.

*Re: information related to the business relationships between Tesla and the other defendants (topics 38 to 40)*: Tesla states that it provided a PMK to testify about the relationships Tesla has with staffing companies along with the relevant policies, while plaintiffs assert that the

PMK "*never* testified about the contractual relationship between the entities." Plaintiffs had the opportunity to explore this issue with the PMK; if they wanted to know more, they should have questioned that individual at that time. They are not entitled to more now.

*Re: policies and procedures related to harassment/discrimination (topics 1 and 2)*: Tesla represents that its PMK responded to questions about the policies separate and apart from the written policies that plaintiffs argue the PMK improperly relied on during the questioning. The examples provided support Tesla's version of events. Plaintiffs are not entitled to more.

*Re: investigations and actions in response to plaintiffs' complaint (topics 9, 12)*: Tesla represents that its PMK testified on exactly the questions plaintiffs allege were missing. Plaintiffs are not entitled to more.

*Re: Tesla's current financial condition (topic 56)*: I agree with Tesla that publicly available information is sufficient to allow plaintiffs to assess Tesla's financial state for purposes of determining punitive damages in this case.

*Re: "me too" evidence (topics 19, 20, 55)*: I agree with Tesla that plaintiffs' requests are overbroad; plaintiffs present no connection between the information they seek and their own claims against Tesla.[1]

**B.      Plaintiffs' Demand to Inspect Tesla's Fremont Factory (Dkt. No. 103)**

Plaintiffs argue that they need to conduct a site inspection of the factory where they worked in order to prove their theory "that any reasonable employer, in the exercise of reasonable diligence, should have known about the harassment Plaintiffs experienced given the widespread nature of a pervasive, racially hostile work environment in Tesla's factory." Dkt. No. 103 at 1.

---

[1] Tesla lays out other concerning facts about the request: "Worse, this letter is the first time plaintiffs' 'list' of 21 people who allegedly were called the n word or saw graffiti is disclosed. It was not produced in discovery; its source is unknown. Plaintiffs falsely state the 21 people are in the same departments as Plaintiffs, but "Production" is not a department. Only one person (Titus McCaleb) was disclosed before discovery cutoff and at deposition confirmed "I don't know who Owen Diaz is" and only knew of Di-Az from his attorney. McCaleb was not a Tesla employee, was in a different department (not BIW/Elevator 1), was there long after Plaintiffs left, and never made a complaint against any of the same alleged harassers or team members. 17 people on the list of 21 were at Tesla after Plaintiffs left. For the other 4 nothing is known about the alleged harasser, department or proximity to Plaintiffs (or if the time frame is accurate). The list does not show whether anyone ever complained to Tesla." Dkt. No. 101 at 5.

2

They assert that they need to conduct a site inspection to "provide a visual aid [to the jury] to demonstrate the pervasive nature of the harassment." *Id.* Although Tesla provided a diagram of the factory with the layout it had at the time of plaintiffs' employment, plaintiffs assert that it is insufficient because it does not have a scale and it "does not even depict Plaintiffs' full work areas." *Id.* at 3. Tesla points out that plaintiffs failed to raise alleged insufficiencies with the diagram until discovery had closed and that there is no reason to believe that the "the layout, environment, or working conditions" have remained the same since that time. *Id.* at 3.

Plaintiffs have failed to persuade me that a site visit to the factory as it exists today is relevant to their claims of harassment and discrimination that occurred four years ago. Witness testimony and the diagram Tesla has provided are sufficient to explain the size of the plaintiffs' work areas and the various locations where incidents of harassment and discrimination allegedly took place.[2]

### C.   Plaintiffs' Request for Addition Deposition (Dkt. No. 106)[3]

Plaintiffs seek to depose facilities contract supervisor Andres Donet. According to plaintiffs they learned of Donet's connection to racist graffiti in bathrooms at the Tesla factory after Tesla produced documents in response to my October 3 Order on the parties' various discovery disputes. *See* Dkt. No. 93. Tesla counters that plaintiffs have been aware of Donet since June 2018 and that there is nothing to suggest Donet had any knowledge of graffiti plaintiffs saw. The newly disclosed connection between Donet and bathroom graffiti is sufficient to justify plaintiffs' late desire to depose him. Although the email plaintiffs rely on refers to correspondence that took place in May 2016, after plaintiffs had stopped working at Tesla, given his role Donet could have knowledge of other such incidents that occurred during the time when plaintiffs worked at Tesla and in the areas where they worked. No later than Friday, October 25, plaintiffs

---

[2] In the letter at Dkt. No. 106, plaintiffs argue that they are unable to determine whether the bathroom discussed in the May 21, 2016 email is near the area where plaintiff Diaz worked because it is not included on the floorplan. Dkt. No. 106 at 2. Their argument is unpersuasive because that incident of graffiti occurred after the plaintiffs had stopped working at Tesla.

[3] Plaintiffs amended the letter submitted at Dkt. No. 105 to add responses to Tesla's position, which they say was submitted too late for them to be able to respond with the original filing.

may depose Donet for no longer than 45 minutes at a location convenient for Tesla. Their questioning should narrowly focus on the time periods during which plaintiffs worked at Tesla and their work areas in the factory.

**IT IS SO ORDERED.**

Dated: October 21, 2019



William H. Orrick
United States District Judge