```
                                                              Pages 1-13

1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
2                        SAN FRANCISCO DIVISION

3

4  DEMETRIC DI-AZ, OWEN DIAZ,        )  Case No.  17-cv-06748-WHO
   and LAMAR PATTERSON,              )
5                                    )  San Francisco, California
              Plaintiffs,            )  Courtroom 2, 17th Floor
6                                    )  Wednesday, October 23, 2019
        v.                           )
7                                    )
   TESLA, INC. dba TESLA MOTORS,     )
8  INC.; CITISTAFF SOLUTIONS, INC.;  )
   WEST VALLEY STAFFING GROUP;       )
9  CHARTWELL STAFFING SERVICES,      )
   INC.; and DOES 1-50, inclusive,   )
10                                   )
              Defendants.            )
11 _____)

12
                     TRANSCRIPT OF MOTION HEARING
13             BEFORE THE HONORABLE WILLIAM H. ORRICK
                  UNITED STATES DISTRICT COURT JUDGE
14

15 APPEARANCES:

16 For Plaintiffs:              LAWRENCE A. ORGAN, ESQ.
                                California Civil Rights Law Group
17                              332 San Anselmo Avenue
                                San Anselmo, California 94960
18                              (415) 453-4740

19 For Defendant CitiStaff      SUSAN T. KUMAGAI, ESQ.
   Solutions, Inc.:             Lafayette & Kumagai LLP
20                              1300 Clay Street, Suite 810
                                Oakland, California 94612
21                              (415) 357-4600

22 Transcription Service:       Peggy Schuerger
                                Ad Hoc Reporting
23                              2220 Otay Lakes Road, Suite 502-85
                                Chula Vista, California 91915
24                              (619) 236-9325

25
   Proceedings recorded by electronic sound recording; transcript
   produced by transcription service.
```

2

SAN FRANCISCO, CA   WEDNESDAY, OCTOBER 23, 2019   2:02 P.M.

--oOo--

THE CLERK: Calling Civil Matter 17-6748, Di-az, et al. v. Tesla, Inc., et al.

Counsel, please come forward and state your appearance.

MS. KUMAGAI: Good morning, Your Honor. Susan Kumagai on behalf of CitiStaff Solutions, Inc.

THE COURT: Good afternoon.

MR. ORGAN: Good afternoon, Your Honor. Larry Organ for the Plaintiffs.

THE COURT: Mr. Organ, good afternoon. All right. Well, so when we -- when we set this calendar up, I was under the impression that all of the summary judgment motions were going to be heard at the same time. And I'm -- and one of the reasons that I was hoping -- I knew that the briefing schedule was going to be different. I'm always delighted to have you here. And I'll tell you what I'm thinking about, but I don't -- I think I'm going to wait on issuing any sort of an order until I have a complete record with the other Defendants in the case because the critical issue, obviously, is joint employer.

And -- and I will tell you that there -- that I just need a full record. I'm going to be looking, obviously, at the element of control.

The -- it seems to me that the record so far would indicate that Tesla trained Mr. Di-az, expected him to follow policies,

provided tools, set work schedule, could recommend discipline and termination when he worked for their business. NextSource could give feedback, discipline, promote, recommend pay rate change, maintain the system where he logged the hours, coordinated, recruited, and paid him, and handled complaints. And CitiStaff admits that it's the employer and it had -- the record would seem to indicate that it's got open lines of communication with nextSource and Tesla, and the allegation -- the allegation is that there's no action or investigation or advocacy on Mr. Di-az's behalf.

So those are things that -- that all play into the, in my mind, joint employment. And I'm happy to hear argument about those now if you -- and I would like you to make the argument that you want to make about those things now.

I don't think there's a Bane Act claim in this case. Mr. Martinez wasn't a CitiStaff employee and failure to investigate after the fact didn't cause the injury.

I don't think there's a negligent or intentional emotional distress claim. Negligence would be -- negligent emotional distress would be preempted by Workers' Comp.

And CitiStaff's conduct wouldn't be sufficient for an intentional infliction claim.

I don't -- for the same reasons, I don't think that there's a  punitive damage claim against CitiStaff.

And there was no argument about constructive discharge, so I

1  assume that issue is gone.
2           MR. ORGAN: Relative to CitiStaff, that's correct, Your
3  Honor.
4           THE COURT: Okay. All right. So those are -- that sums
5  up all of my conclusions thus far and I am, as I say, going to
6  wait. But, Mr. Organ, why don't you first -- well, actually, Ms.
7  Kumagai, why don't you start on joint -- what you wanted to tell
8  me about joint employer and fold in your response to the *Jimenez*
9  case that Mr. Organ just gave to me two days ago.
10          MS. KUMAGAI: Of course, Your Honor. Thank you. We
11 actually don't dispute that there was a joint employer
12 relationship in this case. For purposes of this motion, we won't.
13 What -- what we -- our view in our papers are that Plaintiff can't
14 show that we had knowledge of a hostile work environment and that
15 we failed to take corrective action within our control.
16      So in this case, the alleged perpetrator, Ramon Martinez, was
17 not a CitiStaff employee. He was a Chartwell employee who is a
18 separate staffing agency. And by the time we got notice of this
19 "cartoon" -- I'm going to call it "the cartoon complaint" -- we
20 immediately acted. We did what we could. We reached out to Mr.
21 Di-az, made sure he was safe, asked him if he wanted to be
22 reassigned. We found out from nextSource that indeed Mr.
23 Martinez's employer was conducting the investigation into his
24 conduct. And within two business days, they took immediate
25 corrective action.

1       By this time, we did all that we could and, at the end of the
2  day, we found out that corrective action was taken and there was
3  no further complaints about Mr. Martinez.
4       Plaintiffs' counsel would like the Court to believe that we
5  had notice of a prior incident regarding Mr. Martinez.  There is
6  no evidence to support that.  And, in fact, the undisputed fact
7  shows that we did not have the evidence of that and that occurred
8  in October of 2015.
9       First, the complaint relating to that incident was not based
10 on race.  Mr. Di-az never said it was based on race.  It was a
11 verbal altercation where he said Mr. Martinez threatened him.
12      Again, Chartwell was notified about that incident and there
13 was an investigation conducted, but there is no evidence that
14 CitiStaff was ever notified about that.
15      Mr. Di-az said he never notified CitiStaff.  NextSource,
16 there's no evidence to support that they notified CitiStaff.
17 Plaintiff does point to testimony of Wayne Jackson, who is a
18 nextSource employee.  But his testimony, if you look at the site,
19 only indicates that he contacted Ramon Martinez's employer.  It's
20 undisputed that his employer was Chartwell.  He said he spoke with
21 Chartwell.  And later on when Plaintiffs' counsel asked him, "So
22 Chartwell was Mr. Martinez's employer," he said, "Yes.  Chartwell
23 or CitiStaff."  He basically couldn't remember.  But there is no
24 evidence that CitiStaff was ever notified about that October 17th,
25 2015 incident.  The only incident they knew of was that cartoon

1  complaint which, by the way, they found out a whole day later,
2  after Mr. Di-az informed Tesla and nextSource.  By then, when
3  CitiStaff contacted Mr. Di-az, found out he was safe, found out he
4  didn't want to be moved, did not want to be reassigned, they found
5  out that Chartwell, Martinez's employer, had already started
6  conducting the investigation.  Chartwell called CitiStaff and
7  asked them, "Can we please speak with Mr. Di-az."  The staffing
8  supervisor said, "Yes, you can."  They interviewed Mr. Di-az and
9  the staffing supervisor provided all the information to her
10 supervisors, the HR Department of CitiStaff, and also informed
11 them that corrective action was taken.
12         THE COURT:  Okay.  I hear your argument.  Mr. Organ.
13 Where is the question of fact here?
14         MR. ORGAN:  I'm sorry, Your Honor?
15         THE COURT:  Where is the question of fact?  Point me to
16 the evidence.
17         MR. ORGAN:  Sure.  That's what I was doing.
18         THE COURT:  I assumed so.
19         MR. ORGAN:  So if you look at page 62 of Mr. Wayne
20 Jackson's testimony, Your Honor -- this is in Tab 5 of our papers
21 -- this is where the -- the major controversy seems to come up
22 because Mr. Jackson's talking about the October 17th complaint and
23 we I think recorded this in our papers, Your Honor, so I'm sure
24 you probably read it -- but just to emphasize it, it's clear from
25 a fair reading of his testimony that a jury could conclude that in

1  fact he notified both Chartwell and CitiStaff.
2      If you look at his construction, it said, "I was just more or
3  less alerting them."  Now, he did prior to that say, "Yes, it was
4  either Chartwell or CitiStaff."  But then in that same response
5  says, "I can" -- I think he meant "I could" -- "have been talking
6  to both of them," to which my response was, "Okay."  And then he
7  continued and he said, "I was just more or less alerting them as
8  to what was going on."
9      He uses the "them," the plural there, and then he goes on.
10 I say, "Do you remember who you were talking to at Chartwell?"
11 And he said, "Most likely, it was Veronica."  Veronica was one of
12 the two Chartwell -- she was the person in charge of Chartwell
13 people at the Tesla site -- "and" -- he doesn't use an "or."  He
14 uses an "and" construction and says "and at CitiStaff.  I can't
15 think of the lady's name at CitiStaff.  She was very difficult to
16 reach."
17     He then clarifies approximately twenty- -- 34 pages later, on
18 page 96, Your Honor, he says, "Monica was really very difficult to
19 reach."  Monica's the Monica DeLeon who was the CitiStaff employee
20 who was in charge of the employees at the Tesla facility.
21     So reading those in the -- in the best light to the
22 Plaintiff, that would suggest that in fact CitiStaff did get
23 notice back in October of the October event, which was clearly a
24 threat towards Mr. Di-az.
25     Now, Defendants' suggestion that, Well, that's not a threat

1  of racial bias, but we don't know what motivated the threat except
2  for the fact that we know that Mr. Di-az testified that Mr.
3  Martinez called him the N-word numerous times.  That would suggest
4  it's race-based.  And clearly we know, at least in hindsight, on
5  January 22nd of 2016, when he puts up the racist effigy, that his
6  conduct towards Mr. Di-az is racist.
7       But, at a minimum, they had a duty to investigate at that
8  October point.
9       Now, there's notice in other ways, too, and that is there is
10 sufficient testimony from DeLeon, from Wayne Jackson, and also
11 from Ed Romero -- Ed Romero was the supervisor at Tesla -- Wayne
12 Jackson's the netSource person, Your Honor.  I'm sorry.  I don't
13 know how much -- I mean, I know you've read the papers, and I
14 don't mean to be insulting your intelligence by going over this,
15 so --
16           THE COURT:  If I thought I was being insulted, Mr.
17 Organ, you wouldn't be standing there.
18           MR. ORGAN:  Fair enough.  So it's just complicated
19 because there are so many different agencies and so many different
20 players.
21           THE COURT:  Right.  And so I want you to get -- if I
22 don't accept that the page 62 gives me that notice, --
23           MR. ORGAN:  Yeah.
24           THE COURT:  -- I thought that there was an argument --
25 and I could be mistaken -- that -- that there were open lines of

1  communication between these -- these entities and that -- that
2  CitiStaff should have -- knew or should have known about these
3  other incidents that had occurred.
4      Is that your argument?
5           MR. ORGAN:  That is our argument, Your Honor.
6           THE COURT:  Good.  Okay.
7           MR. ORGAN:  Okay.
8           THE COURT:  So -- so do you have a -- is there anything
9  else?
10          MR. ORGAN:  No, Your Honor, and those are based on the
11 Romero cites, the DeLeon cites, and the Jackson cites and then our
12 own client's statements about how he was told to communicate
13 information, so --
14          THE COURT:  Okay.  All right.  So now I'd like to hear
15 -- so I'm gonna -- so I didn't realize that you were conceding for
16 purposes of the motion the joint employer relationship.  I'll go
17 back and take a look at the cites that you've mentioned.
18     The -- with respect to the state claims, which I think -- I
19 tentatively think would not last, do you have an argument, Mr.
20 Organ?
21          MR. ORGAN:  As to the --
22          THE COURT:  Bane and intentional infliction of emotional
23 distress, punitive damages -- and you've given up on constructive
24 discharge with this motion.
25          MR. ORGAN:  Yeah, and -- and for -- we'll give up on the

10

1  intentional and negligent infliction claims relative to CitiStaff,
2  Your Honor.  That's why we didn't really argue them fully in our
3  papers.
4       But in terms of Ralph and Bane, my understanding your concern
5  is primarily about Bane; is that correct?
6            THE COURT:  Uh-huh.
7            MR. ORGAN:  Yes.  So with the Bane Act, as the Court
8  knows, it's an interference with that Constitutional right.  In
9  this case, it would be a 14th amendment right to due process and
10 harassment-free workplace.
11      And based on the facts that we have from that, I think if you
12 accept the vicarious liability argument that we make, based on the
13 fact that people were supposed to report things up and, therefore,
14 they had notice, then I believe based on the cases that we've
15 cited to the Court, liability would attach, even under Bane.
16      I would agree that it's -- that Ralph is clearer, but I think
17 also Bane applies in terms of -- if you look at page 10 of our
18 papers, Your Honor, where we talk about how Martinez was loud,
19 posturing, fists balled up, using threatening language, that kind
20 of stuff, and -- and getting into his personal space, we think
21 that that's sufficient when coupled with the fact that he engaged
22 in this pattern of conduct of calling Mr. Di-az the N-word over 30
23 times and then -- and then the pickaninny picture, racist effigy
24 picture back in January.
25           THE COURT:  Okay.  Ms. Kumagai.

1           MS. KUMAGAI:  Thank you, Your Honor.  I don't -- I'm not
2  understanding the vicarious liability argument he made right now.
3  Mr. Martinez was not an employee of CitiStaff.  And there's -- and
4  I just want to make clear one thing, going back -- I'm sorry -- to
5  the joint employer argument.
6           Although we're not disputing that -- for purposes of this
7  motion that there was a joint employer relationship, that
8  concession is not based on the arguments made by Plaintiff which,
9  in our papers, we talked about the arguments not being supported
10 by admissible evidence and we go through each of the cites, the
11 deposition testimony that they use in support of their argument
12 that there were open lines of communication.
13          There is testimony that CitiStaff never spoke with anyone at
14 Tesla.  That is not the relationship.  Their relationship was with
15 netSource.
16          So when Mr. Romero -- when they cite to Mr. Romero's
17 deposition testimony where they says, "Romero says he spoke with
18 contractor/representatives," well, that was not CitiStaff.
19 CitiStaff had no one on site and the contractor representative for
20 purposes of this case would have been Wayne Jackson at netSource.
21          So there's no support for the argument that CitiStaff used
22 any of their supervisors as their supervisors.  They never used
23 them as their eyes and ears.  They never conceded to them the
24 complaint procedure -- none of that, Your Honor.
25               THE COURT:  It sounds not like that they conducted a

```
                                                                  12

 1   concession on joint employer.
 2            MS. KUMAGAI:  No.
 3            THE COURT:  But, anyway -- so I'm not going to -- I'm
 4   not going to rule today.  I'm going to wait -- the other motions
 5   are coming in three weeks, four weeks?
 6            MR. ORGAN:  Next week, Your Honor.
 7            MS. KUMAGAI:  I think about one week.
 8            THE COURT:  Next week.  Well, it won't be -- I know it
 9   won't be next week, but --
10            MR. ORGAN:  Is next week the 29th?  I think --
11            MS. KUMAGAI:  Yes.
12            MR. ORGAN:  I think those are --
13            THE COURT:  I'm not going to be here.  So come if you
14   want to, but I'm not going to be here.
15            MS. KUMAGAI:  Oh, no.
16            MR. ORGAN:  Just the motions are being filed.
17            MS. KUMAGAI:  Motions are being filed.
18            MR. ORGAN:  Oh, no, no, no, no, no.
19            THE COURT:  I'm not reading the motions when they just
20   get filed.  But when I will see everybody again --
21            MR. ORGAN:  December 19th or 18th, I think --
22            MS. KUMAGAI:  Yes.
23            THE COURT:  Whenever it is, we'll -- we'll address the
24   -- figure out what the entire record is so that I can make a
25   ruling.
```

1    MR. ORGAN:  Okay.  Thank you, Your Honor.

2    MS. KUMAGAI:  Thank you, Your Honor.

3    MR. ORGAN:  We appreciate your time.

4    (Proceedings adjourned at 2:21 p.m.)

6    I, Peggy Schuerger, certify that the foregoing is a
7 correct transcript from the official electronic sound recording
8 provided to me of the proceedings in the above-entitled matter.

10 _____           October 24, 2019
   Signature of Approved Transcriber          Date

12 Peggy Schuerger
   Typed or Printed Name
13 **Ad Hoc Reporting**
   Approved Transcription Provider
14 for the U.S. District Court,
   Northern District of California