1  JASON A. GELLER (CA SBN 168149)
   jgeller@fisherphillips.com
2  JUAN C. ARANEDA (CA SBN 213041)
   jaraneda@fisherphillips.com
3  VINCENT J. ADAMS (CA SBN 249696)
   vadams@fisherphillips.com
4  FISHER & PHILLIPS LLP
   One Embarcadero Center, Suite 2050
5  San Francisco, California 94111
   Telephone:    (415) 490-9000
6  Facsimile:    (415) 490-9001

7  Attorneys for Defendant
   nextSource, Inc.

8

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO COURTHOUSE

12

13  DEMETRIC DI-AZ, OWEN DIAZ and          Case No. 3:17-cv-06748-WHO
14  LAMAR PATTERSON,                       *[Removed from Alameda Superior Court,
                                           Case No. RG17878854]*
15                        Plaintiffs,
                                           **DEFENDANT NEXTSOURCE, INC.'S**
16         vs.                             **NOTICE OF MOTION AND MOTION**
                                           **FOR SUMMARY JUDGMENT OR, IN**
17  TESLA, INC. DBA TESLA MOTORS, INC.;    **THE ALTERNATIVE, MOTION FOR**
    CITISTAFF SOLUTIONS, INC.; WEST        **SUMMARY ADJUDICATION OF**
18  VALLEY STAFFING GROUP;                 **ISSUES; MEMORANDUM OF POINTS**
    CHARTWELL STAFFING SERVICES,           **AND AUTHORITIES IN SUPPORT**
19  INC.; NEXTSOURCE, INC.,                **THEREOF**

20                        Defendants.      **Date:**       December 18, 2019
                                           **Time:**       2:00 p.m.
21                                         **Courtroom:**  2
                                           **Judge:**      Hon. William H. Orrick
22

23                                         Amended Complaint Filed: December 26, 2018

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**NOTICE IS HEREBY GIVEN** that on December 18, 2019 at 2:00 p.m. or as soon thereafter as counsel may be heard in the United States District Courthouse, Courtroom 2, located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94012, Defendant nextSource, Inc. ("nextSource") will, and hereby does, move pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment in its favor on the First Amended Complaint ("FAC") by Plaintiffs Owen Diaz, Demetric Di-az, and Lamar Patterson ("Plaintiffs".)

nextSource is entitled to summary judgment in its favor on all claims and causes of action asserted against it because the undisputed material facts demonstrate that nextSource was not Plaintiff Owen Diaz's joint employer and thus his claims under 42 U.S.C. § 1981; Ralph Civil Rights Act (Cal. Civ. Code § 51.7); Bane Act (Cal. Civ. Code § 52.1); California Labor Code section 1102.5; negligent hiring, retention, and supervision; constructive discharge in violation of public policy; intentional infliction of emotional distress; and negligent infliction of emotional distress necessarily fail. Alternatively, even if the Court finds that there is a factual dispute that precludes the Court from determining nextSource was not Owen Diaz's joint employer at the dispositive motion stage, all of the claims asserted against nextSource fail as a matter of law.

If for any reason summary judgment cannot be granted, nextSource moves, in the alternative, for summary adjudication on the following issues:

1.      nextSource did not control the terms and conditions of Plaintiff Owen Diaz's employment at the Tesla Factory and therefore cannot be considered his joint employer;

2.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claim for Race Discrimination in Violation of 42 U.S.C. § 1981;

3.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claim for Race Harassment in violation of 42 U.S.C. § 1981;

4.       No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claims for Failure to Prevent Harassment and Discrimination in Violation of 42 U.S.C. § 1981;

5.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claim for Retaliation in violation of 42 U.S.C. § 1981 and California Labor Code § 1102.5;

6.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claims for violation of the Bane Act (Cal. Civ. Code § 51.7);

7.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claim for violation of Ralph Civil Rights Act (Cal. Civ. Code § 51.1(a) and (b));

8.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claim for Negligent Infliction of Emotional Distress;

9.      Plaintiff Owen Diaz's claim for Negligent Infliction of Emotional Distress is preempted by the Workers' Compensation Act;

10.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claim for Intentional Infliction of Emotional Distress;

11.      No genuine issue of material facts exists regarding Plaintiff Owen Diaz's claim for Negligent Hiring, Retention, and Supervision;

12.      Plaintiff Owen Diaz's claim for Negligent Hiring, Retention, and Supervision is preempted by the Workers' Compensation Act;

13.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claim for Constructive Discharge in Violation of Public Policy.

14.      No genuine issue of material fact exists regarding Plaintiff Owen Diaz's claim for punitive damages.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Juan C. Araneda and accompanying exhibits; Declaration of Veronica Martinez; all the pleadings and papers on file in this matter, and upon such further evidence and argument as may be presented at the hearing of this motion.

Date:  October 29, 2019                    FISHER & PHILLIPS LLP

                                     By:      /s/ *Juan C. Araneda*
                                     JASON A. GELLER
                                     JUAN C. ARANEDA
                                     VINCENT J. ADAMS
                                     Attorneys for Defendant nextSource, Inc.

FP 36147234.9

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.     INTRODUCTION ....................................................................................................1

II.    RELEVANT PROCEDURAL BACKGROUND ......................................................2

III.   STATEMENT OF UNDISPUTED FACTS ............................................................2

   A.   NextSource, Inc. ........................................................................................2

   B.   In June 2015, Plaintiff Was Assigned to the Tesla Factory By Citistaff .................3

   C.   In July 2015, Plaintiff Complained of Offensive Remarks by Chartwell Employee Judy Timbreza Which Were Addressed by Tesla ............................................................4

   D.   In October 2015, Tesla Received Numerous Complaints About Plaintiff's Lack of Professionalism .......................................................................5

   E.   In October 2015, Plaintiff Complained of Being Threatened by Chartwell Employee Ramon Martinez ..........................................................5

   F.   In November 2015, Plaintiff Complained of Being Threatened by Citistaff Employee Rothaj Foster ......................................................................6

   G.   In January 2016, Plaintiff Complained of an Offensive Picture Drawn by Chartwell Employee Ramon Martinez ..........................................................7

   H.   In Late February 2016, Tesla Continued to Receive Complaints About Plaintiff's Continued Lack of Professionalism ...................................................8

   I.   In March 2016, Plaintiff Failed to Return to Work from A Leave of Absence ........8

IV.   STANDARD OF REVIEW .....................................................................................9

V.   ARGUMENT ...........................................................................................................9

   A.   Plaintiff's Bane Act and Tort Claims Are Time-Barred as to nextSource ...............9

   B.   nextSource Is Entitled to Summary Judgment on All of Plaintiff's Claims Because It Was Not His Joint Employer ......................................................10

     1.   nextSource Did Not Exercise Control Over Plaintiff's Wages, Hours, or Working Conditions ........................................................11

     2.   nextSource Did Not Suffer or Permit Plaintiff to Work ................................12

     3.   nextSource Did Not "Engage" Plaintiff to Work and Was Not a Common Law Employer ................................................................13

C.    nextSource Is Entitled To Summary Judgment On Plaintiff's Section 1981 Claim 14

    1.    Plaintiff's Section 1981 Claim Fails Because He Cannot Establish A Contractual Relationship With nextSource ................................................................ 14

    2.    Plaintiff's Discrimination Claim Fails Because nextSource Did Not Subject Him to an Adverse Employment Action and Legitimate, Non-Discriminatory Reasons Exist To End His Assignment .................................................................. 15

    3.    Plaintiff's Harassment Claim Fails Because He Cannot Establish Sufficiently Severe Or Pervasive Conduct To Alter The Conditions Of His Employment ......... 16

    4.    Plaintiff's Failure to Prevent Claim Fails Because Plaintiff Suffered No Tangible Employment Action ................................................................................. 17

D.    Plaintiff's Section 1981 and Whistleblower Retaliation Claims Fail Because He Suffered No Adverse Employment Action, There Is No Nexus To A Protected Activity And Legitimate, Non-Retaliatory Reasons Exist To End His Assignment ................... 18

E.    Plaintiff's Ralph Civil Rights Act Claim Fails Because There Is No Support That Martinez's Alleged Threat Was Motivated Because Of Plaintiff's Race ....................... 19

F.    Plaintiff's Bane Act Claims Fail On The Same Grounds As His Ralph Civil Rights Act Claim ................................................................................................................... 20

G.    Plaintiff's NIED Claim is Preempted and Fails as a Matter of Law ....................... 21

H.    Plaintiff's IIED Claim Fails Because nextSource Did Not Engage In Extreme And Outrageous Conduct ................................................................................................... 21

I.    Plaintiff's Negligent Hiring, Retention, and Supervision Claim Fails Because It Is Preempted By Workers' Compensation Exclusivity ...................................................... 22

J.    Plaintiff's Constructive Discharge Claim Fails Because nextSource Did Not Intentionally Create Or Knowingly Permit Intolerable Working Conditions ................. 23

K.    Summary Judgment is Appropriate as to Plaintiff's Claim for Punitive Damages  24

VI.    CONCLUSION ...................................................................................................... 24

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986.)................................................................................................9

*Brooks v. City of San Mateo*,
   229 F.3d 917 (9th Cir. 2000) ..............................................................................17

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...............................................................................................9

*Cooper v. United Airlines, Inc.*,
   82 F.Supp.3d 1084 (N.D. Cal. 2015) ...................................................................19

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006)..............................................................................................14

*Edwards v. U.S. Fidelity & Guar. Co.*,
   848 F.Supp. 1460 (N.D. Cal. 1994) .....................................................................21

*Faragher v. City of Boca Raton*,
   524 U.S. 775, 118 S.Ct. 2275 (1998).....................................................16, 17, 18

*Field v. American Mortgage Express Corp.*,
   No. C-09-5972 EMC, 2011WL 3354344 (N.D. Cal. Aug. 2, 2011).............. 11, 12

*Huimin Song v. Cty. of Santa Clara*,
   No. 5:11-CV-04450-EJD, 2013 WL 6225263 (N.D. Cal. Nov. 25, 2013) ............9

*Johnson v. Riverside Healthcare System, LP*,
   534 F.3d 1116 (9th Cir. 2008) .............................................................................16

*Kolstad v. American Dental Ass'n*,
   527 U.S. 526 (1999)..............................................................................................24

*Krupski v. Costa Crociere SpA*,
   560 US 538 (2010) ................................................................................................10

*Manatt v. Bank of Am.*,
   339 F.3d 792 (9th Cir. 2003) .........................................................................17, 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986.)..............................................................................................9

*McDonald v. Santa Fe Trail Transp. Co.*,
   427 U.S. 273 ........................................................................................................14

iii                                     Case No. 3:17-cv-06748-WHO

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .................................................................................................. 15

*Means v. City and County of San Francisco Department of Public Health*,
    749 F.Supp.2d 998 (N.D. Cal. 2010) ........................................................................ 15

*Miller v. Bank of America, Nat. Ass'n*,
    858 F.Supp.2d 1118 (S.D. Cal. 2012) ........................................................... 9, 21, 22

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*
    212 F.3d 493 (9th Cir. 2000) .................................................................................... 24

*Patterson v. McLean Credit Union*,
    491 U.S. 164 (1989) .................................................................................................. 15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) .................................................................................................. 16

*Salazar v. McDonald's Corp.*
    No. 17-15673 939 F.3d 1051 (9th Cir. 2019) ........................................................... 10

*Sanchez v. City of Santa Ana*,
    936 F.2d 1027 (9th Cir. 1990) .................................................................................. 17

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502, 113 S.Ct. 2742 (1993) ................................................................. 15, 16

*Vasquez v. Cty. of Los Angeles*,
    349 F.3d 634 (9th Cir. 2003) .................................................................................... 17

*Velarde v. County of Alameda*,
    2016 WL 1588269 (N.D. Cal. Apr. 20, 2016) .......................................................... 20

**State Cases**

*Acquino v. Superior Court*,
    21 Cal.App.4th 847 (1993) ....................................................................................... 24

*Bradley v. Dept. of Corrections*,
    158 Cal.App.4th 1612 (2008) ................................................................................... 10

*Burgess v. Sup. Ct.*,
    2 Cal.4th 1064 (1992) ............................................................................................... 21

*Delfino v. Agilent Technologies, Inc.*,
    145 Cal.App.4th 790 (2006) ..................................................................................... 23

*Fermino v. Fedco, Inc.*,
    7 Cal.4th 701 (1994) ................................................................................................. 21

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

*Futrell v. Payday Cal., Inc.*,
190 Cal.App.4th 1419 (2010) ................................................................. 10, 14

*Gatto v. County of Sonoma*,
98 Cal.App.4th 744 (2002) ................................................................. 9

*Guz v. Bechtel Nat'l Inc.*,
24 Cal.4th 317 (2000) ................................................................. 15

*Hine v. Dittrich*,
228 Cal.App.3d 59 (1991) ................................................................. 22

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009) ................................................................. 22

*J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*,
24 Cal.4th 800 (2001) ................................................................. 21

*Livitsanos v. Superior Court*,
2 Cal.4th 744 (1992) ................................................................. 22

*Martinez v. Combs*,
49 Cal.4th 35 (2010) ................................................................. 10, 12, 13

*Mathieu v. Norrell Corp.*
115 Cal.App.4th 1174 (2004) ................................................................. 9, 13

*McVeigh v. Recology San Francisco*,
213 Cal.App.4th 443468 (2013) ................................................................. 18

*Patten v. Grant Union High School Dist.*,
134 Cal.App.4th 1378 (2005) ................................................................. 18, 19

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal.4th 965 (1993) ................................................................. 22

*Pugliese v. Superior Court*,
146 Cal.App.4th 1444 (2007) ................................................................. 9, 22

*Rowe v. Superior Court*,
15 Cal.App.4th 1711 (1993) ................................................................. 24

*Turner v. Anheuser-Busch, Inc.*,
7 Cal.4th 1238 (1994) ................................................................. 23, 24

*Venegas v. County of Los Angeles*,
32 Cal.4th 820 (2004) ................................................................. 19, 20

*Vernon v. State of California*,
116 Cal.App.4th 114 (2004) ................................................................. 12, 13

*Woo v. Superior Court*,
   75 Cal.App.4th 169 176 (1999) ............................................................... 10

**Statutes**

42 U.S.C. § 1981 ............................................................... 14, 15, 16, 18

42 U.S.C. § 1981(b) ............................................................... 14

Cal. Civ. Code § 51.7 ............................................................... 19

Cal. Civ. Code §52.1 ............................................................... 20

Cal. Civ. Code § 3291 ............................................................... 24

Cal. Civ. Code § 3294 ............................................................... 24

Cal. Code Civ. Proc. § 335.1 ............................................................... 9

Cal. Lab. Code § 1102.5 ............................................................... 18

**Other Authorities**

Fed. R. Civ. P. 56(a) ............................................................... 9

Case No. 3:17-cv-06748-WHO

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION**

3         Defendant nextSource, Inc. offers workforce solution services to organizations, including

4    Tesla, Inc. In particular, nextSource offers a Managed Services Program ("MSP") that allows

5    clients to streamline and automate the management and administration of their contingent worker

6    programs. As an MSP provider, nextSource served as a liaison between its client (Tesla) and

7    various staffing agencies, including Citistaff Solutions, Inc., and Chartwell Staffing Services,

8    Inc., to meet Tesla's contingent labor needs.

9         The MSP program worked like this— if Tesla had a temporary work assignment, it would

10   use nextSource to create a job requisition request. The request was then transmitted to an

11   approved list of staffing agencies, which would submit candidates that had the requisite skills

12   and qualifications to Tesla for consideration. Through its MSP program, nextSource also offered

13   reporting and tracking metrics and consolidated billing for Tesla's contingent worker program.

14   By automating and consolidating these tasks, nextSource's MSP made it easier for Tesla to

15   manage its temporary staffing program.

16        All temporary workers assigned to work at the Tesla Factory under the MSP program

17   were recruited, onboarded, paid and employed directly by the staffing agency that hired them.

18   While these temporary workers were under the day-to-day direction of Tesla, they could only be

19   terminated by the staffing agency that employed them. nextSource's role, by contrast, was limited

20   to facilitating communication between Tesla and the various staffing agencies that employed

21   these temporary workers. It did not provide any training to temporary workers and had no

22   authority to take disciplinary action against any temporary worker supplied by a staffing agency.

23   nextSource had no control over the terms and conditions of any temporary worker, including

24   Plaintiff Owen Diaz ("Plaintiff"), who was assigned to the Tesla Factory by staffing agencies.

25        Because the undisputed facts demonstrate that nextSource did not employ, supervise, or

26   control Plaintiff—or any of the individuals that Plaintiff claims engaged in the discriminatory

27   conduct or harassment—Plaintiff cannot establish that nextSource was his "joint employer." As

28   such, nextSource is entitled to summary judgment on all of Plaintiff's claims. But even if

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

1   Plaintiff's joint employer theory is viable, each cause of action asserted by Plaintiff against

2   nextSource is unsupported by the undisputed facts before this Court and fails as a matter of law.

3   **II.**     **RELEVANT PROCEDURAL BACKGROUND**

4       On October 16, 2017, Plaintiffs Demetric Di-az, Owen Diaz, and Lamar Patterson filed

5   their Complaint for Damages in Alameda County Superior Court against four defendants: (1)

6   Tesla, Inc. dba Tesla Motors, Inc., (2) Citistaff Solutions Group, (3) West Valley Staffing Group,

7   and (4) Chartwell Staffing Services, Inc. On November 22, 2017, Tesla removed the matter to

8   United States District Court based on federal question jurisdiction. (Dkt. 1.) Plaintiff Lamar

9   Patterson subsequently stipulated to binding arbitration with Chartwell and Tesla on February 6,

10   2018, effectively staying his claims and removing Chartwell from the instant lawsuit. (Dkt. 34.)

11       Over one year after filing the initial complaint was filed, on December 26, 2018,

12   Plaintiffs filed a First Amended Complaint (FAC) naming nextSource as a defendant. (Dkt 57.)

13   Only Plaintiff Owen Diaz's claims are directed at nextSource. nextSource appeared in the action

14   on February 8, 2019. (Dkt. 74.)

15   **III.**     **STATEMENT OF UNDISPUTED FACTS**

16       **A.**   <u>**NextSource, Inc.**</u>

17       nextSource, Inc. offers workforce solution services to organizations, including Defendant

18   Tesla, Inc. In particular, nextSource offers a Managed Services Program ("MSP") that allows

19   clients to streamline and automate the management and administration of their contingent worker

20   programs. As an MSP provider, nextSource served as a liaison between its client (Tesla) and

21   various staffing agencies or "suppliers" to meet Tesla's contingent labor needs. (Kevin McGinn

22   Deposition (McGinn Depo.); 17:15-25, 19:13-25:12, 21:18-25 attached to Araneda Decl. as

23   Exhibit B; Wayne Jackson Deposition (Jackson Depo.): 15:15-16:8, 22:2-10 attached to Araneda

24   Decl. as Exhibit C.) All temporary workers supplied to Tesla were recruited, onboarded, and paid

25   by the staffing agency that hired them and worked at the Tesla Factory under the direction and

26   control of Tesla. (McGinn Depo.: 20:13-21:4, 99:6-18; Jackson Depo.: 56:10-16.) nextSource

27   did not have the authority to train, discipline, or terminate any worker employed by a staffing

28   agency. (McGinn Depo.: 20:13-15; Jackson Depo.: 21:4:8, 22:20-23:3, 40:10-18, 41:13-42:1.)

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

nextSource also supplied a technology platform that connected a suppliers' temporary workers with Tesla and provided consolidated billing. (McGinn Depo.: 19:16-20:5, 22:1-20, 131:6-132:4.) The platform included implementation of a vendor management system intended to automate various company processes. It allowed temporary workers to submit timesheets directly to Tesla for approval. (Id.) nextSource coordinated with staffing agencies Citistaff Solutions, Inc., and Chartwell Staffing Services, Inc., for them to recruit, onboard, and supply their employees to work at the Tesla Factory (McGinn Depo.: 20:13-25, 24:1-23, 25:10-24, 99:19-100:9, 101:21-24.)

nextSource had a Program Manager on-site at the Tesla Factory to act as a liaison between Tesla and staffing agencies. (McGinn Depo.: 42:19-43:7; Jackson Depo.: 15:15-16:8, 22:2-10; Vol. I of the Owen Diaz Deposition (Diaz Depo., Vol. I): 131:23-132:3 attached to Araneda Decl. as Exhibit D.) Another function of the Program Manager was to gather facts at the direction of Tesla and communicate those facts to Tesla or the supplier staffing agency. (McGinn Depo.: 42:19-43:7; Jackson Depo.: 19:12-24, 23:6-13.) During the relevant time period, nextSource's Program Manager at the Tesla Factory was Wayne Jackson ("Jackson"). (Jackson Depo.: 15:15-16:8; McGinn Depo.: 42:19-22.)

**B.  In June 2015, Plaintiff Was Assigned to the Tesla Factory By Citistaff**

On June 2, 2015, Plaintiff applied for employment with Citistaff and was hired as one of its temporary employees. (Diaz Depo. Vol. I: 24:8-20, 33:16, Exh. 1; Vol. II of the Owen Diaz Deposition (Diaz Depo. Vol. II): 251:1-252:14, Exh. 32 attached to Araneda Decl. as Exhibit E.) As part of Citistaff's onboarding process, Plaintiff was provided with a New Hire Packet which included Citistaff's policies, procedures, and guidelines. (Monica DeLeon Deposition (DeLeon Depo.): 40:2-15 attached to Araneda Decl. as Exhibit G.) Plaintiff acknowledged that he read and understood Citistaff's policies, including its Sexual Harassment Policy, which detailed how to lodge a complaint of harassment in the workplace with Citistaff. (Diaz Depo. Vol. I: 95:4-25, Exh. 3; Diaz Depo. Vol. II: 254:6-255:1, Exh. 33.) During his onboarding meeting, Plaintiff was advised to contact Citistaff Staffing Supervisor, Monica DeLeon, if any problems arose at his work site. (DeLeon Depo.: 162:5-16, 163:11-164:20.)

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36147234.9

1   In June 2015, Citistaff assigned Plaintiff to the Tesla Factory as an Elevator Operator.

2   (FAC at ¶ 9.) While assigned to the Tesla Factory, temporary workers like Plaintiff were expected

3   to comply with Tesla's safety and anti-harassment policies. (Victor Quintero Deposition

4   (Quintero Depo.): 19:10-25, 27:14-28:10 attached to Araneda Decl. as Exhibit H.) However, if

5   Plaintiff had any concerns at the Tesla Factory and needed to make a complaint, he could discuss

6   with Monica Deleon of Citistaff or Jackson. (DeLeon Depo.: 162:5-16, 163:11-164:20; Diaz

7   Depo. Vol. I: 131:23-132:8.) Plaintiff understood that Jackson was a liaison who facilitated

8   information back and forth between staffing agencies and Tesla. (Diaz Depo. Vol. I: 131:23-

9   132:3; Vol. III of the Owen Diaz Deposition (Diaz Depo. Vol. III): 313:10-314:3 attached to

10   Araneda Decl. as Exhibit F.) Throughout his assignment at the Tesla Factory, Plaintiff's

11   paychecks were always issued by his employer, Citistaff, while his rate of pay was decided by

12   Tesla. (Diaz Depo. Vol.: I 36:17-37:19; Diaz Depo. Vol. III: 426:2-10; McGinn Depo.: 179:20-

13   181:23, Exhs. 91, 178.)

14   Approximately one month after being placed at the Tesla Factory, Plaintiff became an

15   Elevator Lead. (Diaz Depo. Vol. I: 93:8-16.) In this role, he was now responsible for supervising

16   three to four workers (Id.) Leads are also responsible for ensuring that product is moved properly

17   and safely, and are expected to interact with other departments and supervisors in a professional

18   manner at all times. (Edward Romero Deposition (Romero Depo.): 76:9-23, 77:17-78:11)

19   attached to Araneda Decl. at Exhibit I.)

20   **C. In July 2015, Plaintiff Complained of Offensive Remarks by Chartwell**

21   **Employee Judy Timbreza Which Were Addressed by Tesla**

22   On July 31, 2015, Plaintiff complained to his lead at Tesla, Tom Kawasaki, that Elevator

23   Operator Judy Timbreza made derogatory remarks towards him. (Romero Depo.: 155:17-156:4,

24   161:4-162:2, Exh. 43.) Both Kawasaki and Timbreza were temporary workers employed by

25   Chartwell. (Tamotsu Kawasaki Deposition (Kawasaki Depo.): 12:1-17; 100:16-18 attached to

26   Araneda Decl. as Exhibit J; Jackson Depo.: 56:10-16; Annalisa Heisen Deposition (Heisen

27   Depo.): 131:6-8 attached to Araneda Decl. as Exhibit K.) Kawasaki reported to Jamie Salazar, a

28   Tesla employee, a who reported to another Tesla employee, Victor Quintero. (Kawasaki Depo.:

15:15-21; 17:9-16; 20:11-21; 21:5-19; Quintero Depo: 6:10-11.) Tesla investigated the complaint, but could not corroborate Plaintiff's allegations. (Romero Depo.: 65:23-66:18, 157:15-158:3, Exh. 43.) Instead, Tesla determined that Timbreza was found to "kid around excessively." (Romero Depo.: 156:3-17, 158:12-159:7, Exh. 43.) As a result, Timbreza was given a verbal warning and counseled about his conduct. (Romero Depo.: 162:11-18, Exh. 43.) After Plaintiff complained, he never saw Timbreza again. (Diaz Depo. Vol. II: 232:10-15; Diaz Depo. Vol. III: 375:10-12.) nextSource was not involved in the investigation of Plaintiff's complaint regarding Timbreza. (McGinn Depo.: 171:5-10.)

**D.** **In October 2015, Tesla Received Numerous Complaints About Plaintiff's Lack of Professionalism**

On October 2, 2015, Tesla issued Plaintiff a verbal warning as a result of ongoing complaints regarding his interactions with Tesla employees. (Romero Depo.: 179:2-12, Exh. 53.) In particular, Tesla employees complained about Plaintiff's temper, lack of professionalism, bad communication, and gossiping. (Id.) Tesla investigated Plaintiff's actions before the verbal warning was given. (Id.) In October 2015, Edward Romero ("Romero") began to supervise elevator operators for Tesla. (Romero Depo.: 90:3-8.) Romero soon began receiving complaints from workers that Plaintiff had a negative attitude and was uncooperative and unprofessional. (Romero Depo.: 81:17-82:17, 84:9-18, 87:5-20.)

Romero relayed these complaints about Plaintiff to Tesla Managers Jaime Salazar and Victor Quintero. Salazar and Romero spoke to Plaintiff about his interactions with co-workers. (Romero Depo.: 89:5-90:19, 91:10-12, 92:3-93:25, 95:17-24.) Following this discussion, however, co-workers and supervisors continued to complain that Plaintiff was uncooperative, unprofessional, argumentative, abrasive, and had a bad attitude. (Romero Depo.: 97:24-98:16, Jackson Depo.: 36:14-18, 110:2-16, 112:5-113:16.)

**E.** **In October 2015, Plaintiff Complained of Being Threatened by Chartwell Employee Ramon Martinez**

On October 17, 2015, a Lead in Tesla's recycling unit, Ramon Martinez ("Martinez"), emailed Romero to complain that Plaintiff was being unprofessional. (Romero Depo.: 182:20-

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36147234.9

183:3, 184:24-185:2, Exh. 55; Jackson Depo.: 70:23-71:18, Exh. 125.) Martinez was a temporary worker placed at the Tesla Factory by Chartwell. (V. Martinez Dec. at ¶ 3.) Approximately one hour later, Plaintiff emailed Romero and Kawasaki claiming that Martinez had yelled at him in a threatening manner. (Romero Depo.: 107:5-21; 182:16-183:3; 186:16-23; Exhs. 55-56.)

That same day, Jackson gathered information about the incident and provided this information to Chartwell and Tesla. (Romero Depo.: 186:24-187:9; Jackson Depo.: 59:25-60:6, 60:12-62:13, 63:14-65:15, 67:3-17, 68:23-69:13, Exh. 124.) Tesla decided to counsel Plaintiff and Martinez regarding appropriate behavior in the workplace. (Jackson Depo.: 70:8-22, 72:3-19, Exh. 127.)

### F. In November 2015, Plaintiff Complained of Being Threatened by Citistaff Employee Rothaj Foster

On November 5, 2015, Plaintiff got into a verbal altercation with another Citistaff employee, Rothaj Foster. (Diaz Depo. Vol. I: 141:17-19; Romero Depo.: 198:19-199:6, Exh. 64.) Foster is African American and was a placed at the Tesla Factory by Citistaff as an elevator operator. (DeLeon Depo.: 67:10-22.) Plaintiff reported the incident to Romero and Jackson. (Diaz Depo., Vol. I: 142:10-21.) Romero responded immediately by asking security to remove Foster from the premises to minimize any further conflict with Plaintiff. (Romero Depo.: 197:13-22, 198:17-200:25, Exh.64; Diaz Depo, Vol. I: 141:17-19; Diaz Depo. Vol. III: 372:20-24.) He also sent Jackson, Quintero and Salazar an email to inform them of Foster's removal, recommending that Foster not be allowed to return. (Id.)

Jackson forwarded Romero's email to Citistaff Staffing Supervisor Monica DeLeon and informed her that Foster's assignment was terminated at the direction of Tesla. (DeLeon Depo.: 230:15-231:17, 232:15-22, Exh. 88.) DeLeon immediately spoke with Plaintiff and Foster. (DeLeon Depo.: 122:5-123:4, 139:9-141:16, Exh. 88.) DeLeon also offered to reassign Plaintiff if he felt uncomfortable in his current position. (DeLeon Depo.: 139:12-24.) Plaintiff declined and indicated he wanted to remain in his position. (Id.) After his complaint about Foster, Plaintiff never worked with Foster again. (Diaz Depo. Vol. III: 372:20-373:10.)

///

**G. In January 2016, Plaintiff Complained of an Offensive Picture Drawn by Chartwell Employee Ramon Martinez**

On the evening on January 21, 2016, Plaintiff found a drawing he perceived as offensive on a bale of cardboard. Plaintiff promptly reported the incident to the recycling team's lead, Michael Wheeler. Wheeler immediately investigated the incident that evening by returning to Plaintiff's area with Martinez, who admitted he drew the picture, but claimed he was "just playing." (Diaz Depo. Vol. I: 151:12-153:5, 153:20-154:1, 154:20-155:9, 155:16-156:5.)

The next morning, Plaintiff also reported the incident to Romero by email. (Diaz Depo. Vol. I: 159:13-160:8, Exhs. 14-15.) In his email, Plaintiff described the drawing as "a picture of a cartoon depicting a black face person with a bone in his hair with the caption under it saying booo." (Diaz Depo. Vol. I: 145:7-17, Exh. 14.) Plaintiff also noted that he told Wheeler about the incident. (Id.) Plaintiff also forwarded his email to Romero to Jackson and Citistaff. (Jackson Depo. at 93:22-94:16, Exh. 130; Diaz Depo. Vol I: 161:11-162:4, Exh. 15.)

In response, Romero spoke to Plaintiff and reported the incident to Tesla's Building Services Manager, Victor Quintero. (Romero Depo.: 109:14-110:4.) Jackson also forwarded Plaintiff's email to Quintero and alerted Martinez's employer, Chartwell, of the incident. (Jackson Depo.: 31:2-13, 93:22-94:12, Exh. 130.) Jackson also instructed Diaz and Martinez to report the incident to their respective employers. (Jackson Depo.: 32:6-10, 82:10-14.)

Chartwell's Senior Area Vice President Veronica Martinez interviewed Ramon Martinez on Friday January 22, 2016, the same day Plaintiff reported Martinez's picture. (V. Martinez Dec. at ¶ 5.) With Citistaff's approval, Chartwell interviewed Plaintiff the following Monday, January 25. (DeLeon Depo. at 144:14-145:11; V. Martinez Dec. at ¶ 6.) Citistaff also contacted Plaintiff to ask if he was comfortable remaining at the Tesla Factory and again offered to reassign him. (DeLeon Depo.: 50:2-14; 133:6-134:7.) Plaintiff declined this offer. (Id.)

On Monday January 25, 2016, the next business day after Plaintiff sent his email, Chartwell suspended Martinez for three days and placed him on a corrective action plan. (V. Martinez Dec. at ¶ 7; Jackson Depo.: 96:17-98:4, Exh. 132.) Following this incident, Plaintiff did not work with Martinez again. (Diaz Depo, Vol. III: 344:9-13.) Prior to this incident,

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

1    Chartwell had no record of harassment complaints alleged against Martinez. (V. Martinez Dec.

2    at ¶ 8.) Shortly after making this complaint, Plaintiff received a raise on January 25, 2016. (Diaz

3    Depo. Vol. I: 167:14-168:3.)

4        **H.   In Late February 2016, Tesla Continued to Receive Complaints About Plaintiff's**

5            **Continued Lack of Professionalism**

6        On February 26, 2016, Tesla's Production Control Supervisor Joyce DelaGrande

7    complained to Romero about Plaintiff's ongoing verbal aggression and unprofessionalism toward

8    members of her team. DelaGrande reported that her leads felt uncomfortable around Plaintiff.

9    (Jackson Depo.: 131:16-25, Exh. 142.) On March 2, 2016, Plaintiff and a co-worker were issued

10   a final warning due to a verbal altercation between them. (Jackson Depo.: 106:11-107:7, Exh.

11   134.) Then on March 4, 2016, Plaintiff received counseling due to his refusal to wear mandatory

12   safety gear and verbal aggression towards the supervisor requesting he do so. (Jackson Depo.:

13   108:17-109:25, Exh. 136.)

14       **I.   In March 2016, Plaintiff Failed to Return to Work from A Leave of Absence**

15       From March 4 to March 11, 2016, Plaintiff was on an approved leave of absence. (Diaz

16   Depo. Vol. III: 376:25-377:20.) He was expected to return on March 12, 2016 but failed to do

17   so. (Diaz Depo. Vol. III: 376:25-377:23.)

18       Six days later, on March 18, 2016, Jackson sent an email to DeLeon informing her that

19   Tesla had decided to get another candidate to fill Plaintiff's role. (DeLeon Depo.: 148:18-150:20;

20   Jackson Depo.: 125:15-126:13; Exh. 140.) Tesla ended Plaintiff's assignment at the Tesla

21   Factory due to his continued unprofessionalism, attendance problems, and failure to return to

22   work. (Jackson Depo.: 125:15-126:13, Exh. 140.)

23       DeLeon informed Plaintiff that his assignment at Tesla had ended. (DeLeon Depo.:

24   148:23-149:24.) However, DeLeon informed Plaintiff that she would reassign him to a different

25   client, but he responded, "Like F that." (DeLeon Depo.: 155:24-156:15, 157:11-12.) Citistaff

26   never terminated Plaintiff's employment. (DeLeon Depo.: 168:15-24.) He remains on Citistaff's

27   register as a temporary worker for assignment. (DeLeon Depo.: 168:15-24; Ludivina Ledesma

28   Deposition (Ledesma Depo.) at 136:13-15 attached to Araneda Decl. as Exhibit L.)

FP 36147234.9

1    **IV.    STANDARD OF REVIEW**

2        "The court shall grant summary judgment if the movant shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

4    R. Civ. P. 56(a.) For a fact to be considered material it must have the potential "to affect the

5    outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

6    (1986.) Disputes concerning facts which are irrelevant or unnecessary do not preclude the district

7    court from granting summary judgement. *Id.* If the moving party shows that there is no genuine

8    issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that

9    creates a genuine dispute regarding material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323

10   (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986.)

11   **V.    ARGUMENT**

12       **A.  Plaintiff's Bane Act and Tort Claims Are Time-Barred as to nextSource**

13       As a threshold matter, nextSource is entitled to summary judgment on at least six of

14   Plaintiff's claims based on their respective statutes of limitations. Plaintiff's claims under the

15   Bane Act (Fifth and Sixth Causes of Action), NIED (Twelfth Cause of Action), IIED (Thirteenth

16   Cause of Action), Negligent Hiring (Fourteenth Cause of Action), and Constructive Discharge

17   (Sixteenth Cause of Action) are each subject to and barred by the two-year statute of limitation

18   prescribed by California Code of Civil Procedure section 335.1. *See, Gatto v. County of Sonoma,*

19   98 Cal.App.4th 744, 760 (2002) (Bane Act); *Miller v. Bank of America, Nat. Ass'n,* 858

20   F.Supp.2d 1118, 1127 (S.D. Cal. 2012) (NIED); *Pugliese v. Superior Court*, 146 Cal.App.4th

21   1444, 1450 (2007) (IIED); *Huimin Song v. Cty. of Santa Clara*, No. 5:11-CV-04450-EJD, 2013

22   WL 6225263, at *4 (N.D. Cal. Nov. 25, 2013) (negligent hiring); *Mathieu v. Norrell Corp.* 115

23   Cal.App.4th 1174, 1189 n. 14 (2004) (constructive discharge.)

24       Here, Plaintiff did not file his FAC adding nextSource as a defendant to this action until

25   December 26, 2018. The conduct on which all his claims are premised, however, occurred well-

26   over two years prior to the filing of the FAC (incident with Timbreza on July 31, 2015; alleged

27   threat by Martinez on October 17, 2015; alleged threat by Foster on November 5, 2015; alleged

28   racially offensive picture on January 21, 2016; and end of assignment on March 18, 2016).

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

1    Moreover, the relation back doctrine does not save Plaintiff's claims. For the doctrine to

2   apply with respect to the addition of a new defendant to the action, Plaintiff must have been

3   "genuinely ignorant" of the identity of defendant or facts rendering defendant liable when the

4   original complaint was filed. *Woo v. Superior Court*, 75 Cal.App.4th 169 176 (1999) (citing Cal.

5   Code Civ. Proc. §474); *Krupski v. Costa Crociere SpA,* 560 US 538, 549 (2010).

6    However, Plaintiff was aware of nextSource and its role as liaison between staffing

7   agencies at the Tesla Factory. (Diaz Depo. Vol. I at 131:23-132:3.) In fact, Plaintiff

8   contemporaneously forwarded his emails concerning the alleged incidents with Martinez and

9   Foster to nextSource's Program Manager Wayne Jackson. Thus, Plaintiff cannot claim that he

10   was genuinely ignorant of nextSource's role at the Tesla Factory, let alone its identity. Thus, the

11   claims are time-barred.

12    **B.  nextSource Is Entitled to Summary Judgment on All of Plaintiff's Claims**

13    **Because It Was Not His Joint Employer**

14    All of the causes of action asserted against nextSource are dependent on a showing of

15   joint employment. Because the undisputed material facts demonstrate that nextSource was not

16   Plaintiff's joint employer, nextSource's is entitled to summary judgment in its favor.

17    The test for joint employment was articulated by the California Supreme Court in

18   *Martinez v. Combs,* 49 Cal.4th 35 (2010). *See, Salazar v. McDonald's Corp*. No. 17-15673 939

19   F.3d 1051 (9th Cir. 2019). Under *Martinez*, an entity is not liable as a "joint employer" unless it:

20   (a) exercises control over wages, hours, or working conditions, (b) suffers or permits the relevant

21   work; or (c) engages in a common law employment relationship. *Id.* at 58-64; *see also Futrell v.*

22   *Payday Cal., Inc.,* 190 Cal.App.4th 1419, 1429 (2010). Courts have repeatedly confirmed that

23   liability for wrongs in the workplace hinges on the extent to which an employer had a right to

24   exercise control over the terms and conditions that generated the wrongs. *Bradley v. Dept. of*

25   *Corrections,* 158 Cal.App.4th 1612, 1626 (2008).

26    Plaintiff cannot establish that nextSource was his employer under any of the standards set

27   forth in *Martinez*. As outlined below, the undisputed facts establish that nextSource did not direct

28   or control Plaintiff's wages, hours, or working conditions, did not suffer or permit Plaintiff to

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36147234.9

1  work, and did not engage Plaintiff to work. Thus, nextSource is not a joint employer and is

2  entitled to summary judgment on all claims.

3         **1.  nextSource Did Not Exercise Control Over Plaintiff's Wages, Hours, or**

4              **Working Conditions**

5         To establish that nextSource was Plaintiff's joint employer under the first standard, he

6  must demonstrate that nextSource exercised control over his wages, hours, or working

7  conditions. The Northern District of California's ruling in *Field v. American Mortgage Express*

8  *Corp.*, No. C-09-5972 EMC, 2011WL 3354344 (N.D. Cal. Aug. 2, 2011) is instructive for this

9  analysis. In *Field*, the employee-plaintiff filed a class action lawsuit against his employer,

10 American Mortgage Express Corp. ("AMX"), and Gevity HR, Inc. ("Gevity"), a professional

11 employment agency that contracted with AMX to perform certain workforce management tasks.

12 *Id.* at *1. Under Gevity's agreement with AMX, Gevity's responsibilities included payroll

13 processing, recruitment strategy, benefits administration, and human-resource consultation. *Id.*

14 Unlike nextSource, Gevity agreed that to provide these services it would become a co-employer

15 of the worksite employees along with the worksite employer. *Id.*

16        The plaintiff asserted that by virtue of providing these services, Gevity was liable as a

17 joint employer because: (1) Gevity issued the plaintiff's paychecks; (2) Gevity provided benefits;

18 (3) a Gevity employee functioned as the Site Employer's Human Resources Director, and

19 consulted with the Site Employer as to human resources decisions; (4) the agreement between

20 Gevity and the Site Employer reserved to Gevity "a right of direction and control over [Worksite

21 Employees] and [Gevity] retains authority to hire, terminate its employment of, and discipline

22 and reassign [Worksite Employees]"; and (5) Gevity provided sexual harassment training and

23 played a role in enforcing the sexual harassment policy. *Id.*

24        The district court rejected each of these arguments. In doing so, the court reasoned that

25 (a) processing payroll did not render Gevity an employer; (b) the fact that Gevity provided

26 benefits was not relevant given that AMX funded those benefits; (c) Gevity's consulting to "limit

27 the legal risks" did not change that AMX, and not Gevity, made the termination decision; (d)

28 sexual harassment training provided by Gevity did not render it an employer, (e) and the fact that

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36127234.9

1    Gevity had a limited role in enforcing AMX's sexual harassment policy was "at most a limited

2    role for Gevity." *Id.* at *4-8.

3          Here, nextSource's relationship with Plaintiff is much more attenuated than that of the

4    plaintiff's relationship with Gevity in the *Field* case. First, nextSource did not recruit, employ,

5    or supervise Plaintiff; rather at all times Plaintiff was employed by Citistaff and supervised by

6    Tesla. Second, nextSource did not pay Plaintiff's wages or have any control over his rate of pay.

7    It is undisputed that Tesla decided his rate of pay and Citistaff issued his paychecks.

8          Third, nextSource did not provide training to Plaintiff and Plaintiff was not subject to any

9    of nextSource's employment policies. Instead, all training and employment policies that Plaintiff

10   was expected to follow were provided by Citistaff and Tesla.  Fourth, nextSource had no

11   authority or discretion to discipline, promote, transfer or terminate Plaintiff's assignment. *See,*

12   *e.g., Vernon v. State of California*, 116 Cal.App.4th 114, 127 (2004) ("A finding of the right to

13   control employment requires a much more comprehensive and immediate 'day-to-day' authority

14   over employment decisions"). In fact, all of Plaintiff's supervisors were either Chartwell or Tesla

15   employees. Like Gevity in the *Field* case, nextSource's limited involvement in relaying

16   information about Plaintiff to Tesla and Citistaff did not change the fact that Citistaff was the

17   entity with the authority to make ultimate employment decisions concerning Plaintiff.

18         Of course, all of this was consistent with nextSource's role at the Tesla Factory. That is,

19   temporary workers like Plaintiff, were recruited, hired, onboarded, and paid by suppliers to work

20   under the direction and control of Tesla. nextSource's role was limited to the selection of

21   suppliers, such as Citistaff, which supplied their temporary workers to work on temporary

22   assignment at the Tesla Factory and to providing a technology platform that connected temporary

23   workers with Tesla to facilitate timekeeping.

24         Given the above, the undisputed material facts conclusively demonstrate that nextSource

25   did not exercise control over Plaintiff's wages, hours, or working conditions.

26         **2.  nextSource Did Not Suffer or Permit Plaintiff to Work**

27         The second inquiry under *Martinez* looks to whether a putative employer "suffers or

28   permits" the putative employee to work. The plaintiffs in *Martinez* were seasonal agricultural

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36147234.9

1   workers who asserted they were employed by the strawberry farmer for whom they worked

2   directly and produce merchants to whom the farmer sold strawberries. *Martinez*, 49 Cal.4th at 42-

3   50. The plaintiffs argued that the produce merchants must also be their employers because they

4   "suffered or permitted" plaintiffs to work for them purely by virtue of having knowledge that

5   they worked. *Id.* at 70. In its ruling, the court made it clear that notice or knowledge alone is not

6   sufficient to establish that work was "suffered or permitted." *Id.* Rather, the court reasoned the

7   produce merchants did not "suffer or permit" the plaintiffs to work because the farmer who had

8   the sole power and ability to "prevent" the plaintiffs from working. *Id.* Thus, the power to prevent

9   an individual from working is essential to a "suffer or permit" finding. *Id.*

10      In addition to nextSource's lack of day-to-day control and direction over Plaintiff's work,

11  it is undisputed that nextSource did not prevent or even have the ability to prevent him from

12  working at the Tesla Factory. Moreover, the undisputed facts clearly demonstrate that Tesla made

13  the decision to end Plaintiff's assignment due to his continued unprofessionalism, attendance

14  problems, and failure to return from leave – not nextSource. Accordingly, nextSource cannot be

15  found to be Plaintiff's "employer" under the "suffer or permit" standard.

16      **3.   nextSource Did Not "Engage" Plaintiff to Work and Was Not a Common**

17          **Law Employer**

18      The third test in *Martinez* is the common law "control of details" test, which takes into

19  consideration a multitude of factors on the actual control of a putative employer over its putative

20  employees and the work performed. Of these factors, "the extent of the defendant's right to

21  control the means and manner of the workers' performance is the most important." *Vernon*, 116

22  Cal.App.4th at 126. The right to control employment "requires a much more comprehensive and

23  immediate level of 'day-to-day' authority over employment decisions," and not just a peripheral

24  role as nextSource did. *Id.* at 127. Courts have repeatedly confirmed that liability for wrongs in

25  the workplace hinges on the extent to which an employer had a right to exercise control over the

26  terms and conditions that generated the wrongs. *See, Mathieu v. Norrell Corp.* 115 Cal.App.4th

27  1174 (2004) (the right to exercise certain powers of control over the employee is critical to the

28  existence of an employment relationship).

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

Summary judgment is appropriate when there is no evidence of a putative employer's right to control a putative employee's work. In *Futrell*, an appellate court affirmed summary judgment in favor of the defendants because the alleged joint-employer did not meet the common definition of an employer. *Futrell*, 190 Cal.App.4th at 1435. Similar to nextSource in the instant matter, the defendant in *Futrell* did not (and could not) hire or fire the plaintiff and did not direct or supervise the plaintiff's work. *Id.* Specifically, nextSource did not control Plaintiff in his day-to-day functions, did not direct his work, and did not directly supervise him. As noted, all of Plaintiff's supervisors were either Chartwell or Tesla employees. No nextSource employee directed Plaintiff's day-to-day activities. Moreover, nextSource did not set his pay, did not evaluate his performance, and did not terminate his assignment at Tesla.

As demonstrated above, the undisputed facts show that Plaintiff cannot establish that nextSource was his joint employer. Accordingly, summary judgment in nextSource's favor is necessary. Nevertheless, as detailed below, even if the Court finds that there is a factual dispute that precludes it from determining nextSource was not Plaintiff's joint employer, all of the claims asserted against nextSource fail as a matter of law.

## C.  nextSource Is Entitled To Summary Judgment On Plaintiff's Section 1981 Claim

### 1.  Plaintiff's Section 1981 Claim Fails Because He Cannot Establish A Contractual Relationship With nextSource

Plaintiff's Section 1981 claim fails as a matter of law because he was not in a contractual relationship with nextSource. 42 U.S.C. § 1981 prohibits race discrimination, harassment, and retaliation in the making and enforcing of contracts. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 295(1976). This prohibition includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b). Significantly, a plaintiff cannot state a claim under Section 1981 unless he has (or would have) rights under an existing (or proposed) contract that he wishes to "make and enforce." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 479-80 (2006). "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.*

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36147234.9

Here, Plaintiff's Section 1981 claim fails as a matter of law because he was not in a contractual relationship with nextSource. That is, nextSource was in a contractual relationship with Tesla to facilitate the supply of temporary workers from staffing agencies such as Citistaff. However, Plaintiff was not a party to nextSource's contracts.  Moreover, there is no evidence that nextSource interfered with or caused a breach of Plaintiff's employment relationship with Citistaff. In fact, after Tesla decided to end his temporary assignment, Citistaff offered to place Plaintiff at another client site. However, Plaintiff refused the offer. In fact, he remains on Citistaff's register as a temporary employee who is eligible for new assignments.

Nevertheless, even if Plaintiff could show that nextSource impaired an existing contractual relationship, Plaintiff must still prove that he was subjected to discrimination, harassment or retaliation by nextSource that was motivated by discriminatory intent due to his race. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186 (1989). He cannot.

### 2.   Plaintiff's Discrimination Claim Fails Because nextSource Did Not Subject Him to an Adverse Employment Action and Legitimate, Non-Discriminatory Reasons Exist To End His Assignment

Section 1981 discrimination claims are analyzed under the burden shifting analysis set forth by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also*, *Means v. City and County of San Francisco Department of Public Health*, 749 F.Supp.2d 998, 1004 (N.D. Cal. 2010). To establish a Section 1981 claim, Plaintiff must prove a *prima facie* case of discrimination by showing (1) he belongs to a protected class, (2) he was performing the position he held competently, (3) he suffered an adverse employment action, and (4) circumstances giving rise to an inference of unlawful discrimination. *Id.*, citing *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 248 (1981); *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 355 (2000). If Plaintiff establishes a *prima facie* case, the burden shifts to nextSource to produce a legitimate, non-discriminatory reason for its actions. If nextSource meets this burden, Plaintiff has the burden of proving that nextSource's proffered reason is pretext for discrimination. *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th at 355-56; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993). The ultimate burden of persuasion

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

1    that he was the victim of intentional discrimination, remains with Plaintiff. *St. Mary's*, 509 U.S.

2    at 509, *see also*, *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000).

3          Plaintiff cannot establish a *prima facie* under Section 1981 because he cannot show that

4    nextSource subjected him to an adverse employment action. nextSource did not discipline,

5    demote, terminate or, in any other way, treat Plaintiff differently than any other temporary worker

6    not in Plaintiff's protected class. Tesla decided to end his assignment.  In fact, as a liaison between

7    Tesla and Citistaff, nextSource merely facilitated the flow of information and did not have any

8    authority to make employment decisions concerning Plaintiff.

9          Moreover, Plaintiff was placed for temporary assignment by Citistaff at Tesla and

10   Citistaff offered to reassign Plaintiff after his assignment ended. In fact, he remains on Citistaff's

11   register as a temporary employee for assignment.

12         Nevertheless, to the extent that Plaintiff could establish a prima facie case of

13   discrimination, there were non-discriminatory reasons for ending Plaintiff's assignment at Tesla.

14   That is, Tesla ended Plaintiff's assignment due to his continued unprofessionalism, attendance

15   problems, and failure to return to work after the expiration of his leave of absence. There are no

16   facts to support that the reasons for ending Plaintiff's assignment are pretext for discrimination.

17         **3.    Plaintiff's Harassment Claim Fails Because He Cannot Establish Sufficiently**

18             **Severe Or Pervasive Conduct To Alter The Conditions Of His Employment**

19         To state a harassment claim under Section 1981, Plaintiff must establish that (1) he was

20   subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and

21   (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment

22   and create an abusive work environment. *Johnson v. Riverside Healthcare System, LP*, 534 F.3d

23   1116, 1122 (9th Cir. 2008), citing *Manatt v. Bank of Am.,* 339 F.3d 792, 797 (9th Cir. 2003). "A

24   hostile work environment claim, by its 'very nature involves repeated conduct.'" (*Ibid*., citing

25   *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061 (2002). The objectionable conduct must

26   be both objectively and subjectively offensive, one that a reasonable person would find hostile

27   or abusive, and one that the victim in fact did perceive to be so. *Faragher v. City of Boca Raton*,

28   524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998). "[S]imple teasing, offhand comments, and

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

1    isolated incidents (unless extremely serious) will not amount to discriminatory changes in the

2    'terms and conditions of employment.'" *Ibid*. (Internal citations omitted.)

3            First, Plaintiff's claim fails because he cannot establish sufficiently severe or pervasive

4    conduct to alter the conditions of his employment. The <u>only</u> complaint based on race of which

5    he complained was the single incident involving the picture drawn by Ramon Martinez.

6    However, this isolated incident does not constitute conduct sufficiently severe or pervasive to

7    alter the conditions of employment. *See, e.g., Manatt,* 339 F.3d at 798-799; *Brooks v. City of*

8    *San Mateo*, 229 F.3d 917, 924-27 (9th Cir. 2000) (a single isolated event or handful of events

9    will rarely give rise to a hostile work environment claim); *Vasquez v. Cty. of Los Angeles,* 349

10   F.3d 634, 642-43 (9th Cir. 2003) (finding that, although plaintiff claimed that he was continually

11   harassed, he provided specific factual allegations regarding only a few discrete incidents, which

12   were insufficient); *Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1031, 1036 (9th Cir. 1990) (no

13   hostile work environment despite allegations that the employer posted a racially offensive

14   cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe

15   vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal

16   personnel files on plaintiffs because they were Latino).[1] In fact, Plaintiff received a raise after

17   he reported the incident and even refused reassignment when it was offered by Citistaff.

18           Second, it is undisputed that Martinez was <u>not</u> employed by nextSource. Rather, he was

19   employed by Chartwell. Moreover, Martinez was not Plaintiff's immediate supervisor. As

20   such, Plaintiff also cannot support a strict vicarious liability theory against nextSource.

21   *Faragher*, 524 U.S. at 806-7, 118 S.Ct. at 2292-2293.

22           **4.  Plaintiff's Failure to Prevent Claim Fails Because Plaintiff Suffered No**

23               **Tangible Employment Action**

24           As long as no "tangible employment action" has been taken against the plaintiff, an

25   employer has no liability for the failure to prevent alleged harassment by a supervisor where (a)

26   _____

27   [1] To the extent Plaintiff attempts to claim the incident in July 2015 with Timbreza was based on race or
     to impart knowledge of the incident to nextSource, that incident occurred 6 months before the incident

28   with Martinez, did not involve Martinez, was a single incident, had no precursor and was never repeated.
     As such, the conduct was not sufficiently severe or pervasive to create a hostile work environment.

1   it exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) the

2   plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities

3   provided by the employer or to "avoid harm otherwise." *Ibid.*

4       Here, Plaintiff cannot show that he suffered a tangible employment action. Plaintiff was

5   hired by Citistaff and placed for temporary assignment at Tesla by Citistaff. Citistaff then offered

6   to reassign Plaintiff when his assignment ended and he remains on Citistaff's register as a

7   temporary employee for assignment.

8       Moreover, Plaintiff's only complaint of race harassment was that concerning the picture

9   drawn by Martinez. As noted, before Plaintiff forwarded his email about the incident to

10  nextSource, Martinez had already admitted to drawing the picture. Nevertheless, nextSource

11  provided information about the incident to Chartwell (Martinez's employer). Chartwell

12  promptly investigated and took immediate corrective action against Martinez. Thereafter,

13  Plaintiff had no further interaction with Martinez. Thus, any risk of harm was eliminated.

14      To the extent Plaintiff argues that corrective action was not taken for the October 2015

15  incident with Martinez, his argument is without merit. Plaintiff's complaint about this incident

16  was based on a threat, and not on race. Moreover, an investigation was conducted and corrective

17  action, that included counseling for Martinez, was taken.

18      **D.   Plaintiff's Section 1981 and Whistleblower Retaliation Claims Fail Because He**

19          **Suffered No Adverse Employment Action, There Is No Nexus To A Protected**

20          **Activity And Legitimate, Non-Retaliatory Reasons Exist To End His Assignment**

21      In support of his retaliation claims under Section 1981 and Seventh Cause of Action for

22  violation of California Labor Code section 1102.5, Plaintiff claims that Citistaff, nextSource, and

23  Tesla retaliated against him by threatening him with a demotion as punishment for complaining

24  of racist harassment. Both Section 1981 and California Labor Code section 1102.5 require a

25  plaintiff to first establish a prima facie case of retaliation. *Patten v. Grant Union High School*

26  *Dist.,* 134 Cal.App.4th 1378, 1384 (2005). Therefore, a plaintiff must show "he engaged in a

27  protected activity, that his employer "subjected him to an adverse employment action, and…a

28  causal link between the two." *Id.*; see also *McVeigh v. Recology San Francisco*, 213 Cal.App.4th

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36147234.9

1    443468 (2013); *Cooper v. United Airlines, Inc.,* 82 F.Supp.3d 1084, 1111 (N.D. Cal. 2015). If

2    the plaintiff meets his initial burden, the burden shifts to the employer to establish a legitimate,

3    non-retaliatory reason for its actions. *Patten,* 134 Cal.App.4th at 1384. If the employer meets its

4    burden, the burden switches back to the plaintiff to establish pretext for retaliation. *Id.*

5            Here, Plaintiff cannot even meet the prima facie elements of retaliation. As noted,

6    nextSource did not subject Plaintiff to an adverse employment action. In fact, he remains an

7    employee of Citistaff. Moreover, to the extent Plaintiff claims that the termination of his

8    assignment with Tesla was an adverse action, which it was not, nextSource did not make the

9    decision to end his assignment.

10           Nevertheless, even the termination of his assignment at Tesla could be deemed an adverse

11   action, Plaintiff cannot show any connection between the end of his assignment and any

12   purported protected activity. The reason Plaintiff's assignment was terminated was due to his

13   continued unprofessionalism, attendance issues, and failure to return to work after his leave of

14   absence. Additionally, after Plaintiff complained about Martinez, he received a raise. This dispels

15   any notion that he was retaliated against for complaining. See *Manatt*, 339 F.3d at 802 (no

16   retaliation where there are subsequent positive acts by employer.)

17           There are no facts to support that the reasons for ending Plaintiff's assignment are pretext

18   for discrimination because of his race. As such, legitimate, non-retaliatory reasons existed for the

19   termination of his assignment at Tesla and Plaintiff cannot prove a causal link between his alleged

20   complaints of harassment and the end of his assignment.

21       **E.   Plaintiff's Ralph Civil Rights Act Claim Fails Because There Is No Support That**

22             **Martinez's Alleged Threat Was Motivated Because Of Plaintiff's Race**

23           The Ralph Civil Rights Act was enacted to protect against acts of violence or intimidation

24   by threats of violence because of an individual's actual or perceived membership in a minority

25   or protected class. *See* California Civil Code Section 51.7; *see also Venegas v. County of Los*

26   *Angeles,* 32 Cal.4th 820, 845 (2004). To prove a claim under Section 51.7, a plaintiff must show

27   a "motivating reason" for the alleged conduct was the plaintiff's protected characteristic

28           Plaintiff's Fourth Cause of Action for violation of the Ralph Civil Rights Act arises from

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

the October 17, 2015 incident involving Chartwell employee Ramon Martinez. (FAC at ¶ 114). Plaintiff alleges that nextSource should be held liable for Martinez's actions because he complained to nextSource, but no action was taken. (FAC at ¶ 121).

However, Plaintiff's claim is not supported by the facts. First, there is no evidence that Martinez's alleged threatening conduct towards Plaintiff was motivated because of Plaintiff's race. In fact, Plaintiff's email to Romero on October 17, 2016, makes no mention of race or that Martinez uttered anything to suggest that his alleged actions were based on race. (Romero Depo., Exhs. 55-56). Second, it is undisputed that Martinez was an employee of Chartwell and not nextSource. As such, nextSource is not liable for Martinez's alleged conduct. Third, there is no evidence to support that any action by nextSource towards Plaintiff was motivated by his race. Finally, Jackson promptly forwarded Plaintiff's email complaining about Martinez, gathered information regarding the incident and provided it to Chartwell and Tesla. Thereafter, Tesla made the decision to counsel both Plaintiff and Martinez regarding appropriate behavior in the workplace. Thus, Plaintiff's claim that no action was taken to address Martinez's allegedly threatening behavior is contradicted by the facts.

**F.   Plaintiff's Bane Act Claims Fail On The Same Grounds As His Ralph Civil Rights Act Claim**

Plaintiff's asserts his Fifth and Sixth Causes of Action for violation of the Tom Bane Civil Rights Act against nextSource. The Bane Act prohibits interference by threats, intimidation, or coercion with an exercise of a person's rights. Cal. Civ. Code §52.1; *Venegas v. County of Los Angeles,* 32 Cal. 4th 820, 846 (2004). To demonstrate a violation of the Bane Civil Rights Act, Plaintiff must show that (1) nextSource interfered with his constitutional or statutory rights, and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion. *Velarde v. County of Alameda*, 2016 WL 1588269 at *7 (N.D. Cal. Apr. 20, 2016).

Plaintiff's causes of action under the Bane Act fail on the same grounds as his cause of action under the Ralph Civil Rights Act. Moreover, to the extent his Bane Act claims are based on the November 2016 incident involving Rothaj Foster, the claims also fail. As noted, Foster was a Citistaff employee, and, as such, nextSource cannot be held liable for Foster's conduct as

FP 36147234.9

nextSource cannot be shown to have interfered with any of Plaintiff's constitutional or statutory rights. Additionally, Foster is also African American and, as such, the incident was not based on race. Further, after Plaintiff reported the incident, Romero immediately had Foster removed from the premises and Plaintiff never worked with him again. Finally, after Citistaff's DeLeon learned of the incident, she contacted Plaintiff and offered reassignment, but he refused.

Accordingly, Plaintiff's Bane Act claims against nextSource are without merit.

### G. **Plaintiff's NIED Claim is Preempted and Fails as a Matter of Law**

Plaintiff's Twelfth Cause of Action for negligent infliction of emotional distress ("NIED"), fails because it is preempted by the exclusive remedies under California's Labor Code governing workers' compensation claims *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, at 713-714 (1994); Charles *J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,* 24 Cal.4th 800, 813 (2001).

Even assuming that Plaintiff's NIED claim is not preempted, it still fails. To recover for NIED, Plaintiff must prove that (1) nextSource engaged in negligent conduct involving usual issues of duty and breach, (2) Plaintiff suffered serious emotional distress, and (3) nextSource's conduct was a substantial factor in causing the emotional distress suffered by Plaintiff. *Burgess v. Sup. Ct.,* 2 Cal.4th 1064, 1072 (1992). A claim for NIED cannot be based on intentional conduct. *Edwards v. U.S. Fidelity & Guar. Co.*, 848 F.Supp. 1460, 1466 (N.D. Cal. 1994).

Here, as noted, Plaintiff was employed by Citistaff. Moreover, nextSource merely acted as a liaison between Tesla and certain staffing agencies at the Tesla Factory, and had no authority to discipline or terminate staffing agencies' temporary workers. As such, he cannot show that nextSource owed him a duty of care. However, even if nextSource could be deemed to owe Plaintiff an independent duty, Plaintiff cannot show that nextSource breached such a duty. The undisputed facts prove that Jackson acted promptly when informed of Plaintiff's complaints by providing information to Citistaff, Chartwell and Tesla. Thereafter Citistaff, Chartwell and Tesla took immediate corrective action. There is simply no evidence that nextSource failed to prevent conduct that Plaintiff alleges caused him emotional distress.

///

### H. **Plaintiff's IIED Claim Fails Because nextSource Did Not Engage In Extreme**

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

1    **And Outrageous Conduct**

2    Like Plaintiff's NIED claim, his Thirteenth Cause of Action for Intentional Infliction of

3    Emotional Distress ("IIED") also fails. To establish a claim for IIED, Plaintiff must prove that

4    (1) nextSource's extreme and outrageous conduct was done with the intention to cause, or with

5    reckless disregard as to the probability of causing, emotional distress; (2) he suffered severe or

6    extreme emotional distress; and (3) nextSource's outrageous conduct was the proximate cause of

7    his emotional distress. *Hughes v. Pair,* 46 Cal. 4th 1035, 1050-51 (2009). To be considered

8    "outrageous," the alleged conduct must be "so extreme as to exceed all bounds of that usually

9    tolerated in a civilized community." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 1001

10   (1993). Indeed, IIED is not established by allegations of "mere insults, indignities, threats,

11   annoyances, petty oppressions, or other trivialities." *Hughes,* 46 Cal.4th at 1051.

12   Like his NIED claim, Plaintiff's IIED claim is based on nextSource's alleged failure to

13   prevent purported harassment, discrimination, and retaliation. However, there is no evidence that

14   nextSource engaged in extreme and outrageous conduct. Additionally, as noted, the undisputed

15   facts prove that Jackson acted promptly when informed of Plaintiff's complaints, by providing

16   information to Citistaff, Chartwell and Tesla. These defendants then took immediate corrective

17   action after they were informed of Plaintiff's complaints. There is simply no evidence that

18   nextSource failed to prevent conduct that Plaintiff alleges caused him emotional distress.

19   **I.    Plaintiff's Negligent Hiring, Retention, and Supervision Claim Fails Because It**

20   **Is Preempted By Workers' Compensation Exclusivity**

21   Plaintiff's Fourteenth Cause of Action for negligent supervision and retention against

22   nextSource fails because, under California law, claims for negligence such as negligent

23   supervision and retention are among those barred by the exclusivity provisions of the Workers'

24   Compensation Act. *Livitsanos v. Superior Court,* 2 Cal.4th 744, 754 (1992). Specifically, courts

25   have indisputably found that the specific cause of action for negligent supervision is covered by

26   workers' compensation exclusivity. *Hine v. Dittrich,* 228 Cal.App.3d 59, 63 (1991).

27   However, even if not governed by workers' compensation exclusivity, there is no

28   negligent supervision or retention without a showing that the employee in question was unfit or

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36147234.9

incompetent to perform the work for which they were hired; the employer knew or should have known they were unfit or incompetent, or created a risk to others; the employee's unfitness or incompetence harmed the plaintiff; and the employer's negligence was a substantial factor in causing this harm. *Delfino v. Agilent Technologies, Inc.,* 145 Cal.App.4th 790, 815-816 (2006). Critical to a finding of negligent hiring, supervision and retention is the existence of a duty of care and the breach of that duty. *Id.* Plaintiff's claim fails on this basis alone. Because Plaintiff was not a nextSource employee he cannot show that nextSource owed him a duty. *Ibid.*

Additionally, the acts underlying Plaintiff's claims of harassment and discrimination do not involve any employees of nextSource. *Id.* at 815 (noting that liability for negligent supervision/retention is one of direct liability for negligence, not vicarious liability). Instead every employee with authority to hire, supervise or discipline employees at the Tesla Factory were employed by others. Moreover, the alleged bad actors (Martinez and Foster) were employed by Chartwell and Citistaff. Further, Plaintiff's only complaint of alleged race harassment involved Martinez' alleged offensive picture. However, Martinez admitted to drawing the picture by the time nextSource was made aware of Plaintiff's complaint, further evidencing nextSource's inability to know that Martinez may have been unfit or incompetent to hold his position at Tesla. Therefore, Plaintiff's claim for negligent hiring, retention, and supervision fails as to nextSource even if not preempted.

### J.   Plaintiff's Constructive Discharge Claim Fails Because nextSource Did Not Intentionally Create Or Knowingly Permit Intolerable Working Conditions

To prevail upon a claim for constructive discharge, Plaintiff must prove by a preponderance of the evidence that nextSource intentionally created or knowingly permitted intolerable working conditions that would cause a reasonable person in the employee's position to resign. *Turner v. Anheuser-Busch, Inc.,* 7 Cal.4th 1238, 1247 (1994). "The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer. The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee." *Id.* at 1246.

1    Here, nextSource was never Plaintiff's employer and, as such, had no control over his

2  employment or the day-to-day operations at the Tesla Factory. Moreover, there is no evidence

3  that nextSource created or knowingly allowed intolerable working conditions. Regardless,

4  Plaintiff cannot show that he resigned his employment because of intolerable working conditions.

5  All of Plaintiff's complaints were addressed and corrective actions was taken.  Moroever, Tesla

6  ended his assignment due to his ongoing unprofessionalism, attendance problems, and failure to

7  return from his leave of absence. Further, Citistaff never terminated Plaintiff's employment and

8  he remains a Citistaff temporary employee for assignment.

9    **K.  <u>Summary Judgment is Appropriate as to Plaintiff's Claim for Punitive Damages</u>**

10    Under federal law, punitive damages are limited to cases in which the employer has

11  engaged in intentional discrimination and has done so "with malice or with reckless indifference

12  to the federally protected rights of an aggrieved individual." *Kolstad v. American Dental Ass'n,*

13  527 U.S. 526, 529-39 (1999). Here, there is simply no evidence that nextSource intentionally

14  discriminated against Plaintiff. *See, Passantino v. Johnson & Johnson Consumer Prods., Inc.*

15  212 F.3d 493, 515 (9th Cir. 2000).

16    Under California law, California Civil Code section 3291 imposes and exacting standard

17  that must be met before punitive damages can be awarded. A plaintiff bears the "onerous" burden

18  of proving "by clear and convincing evidence" that an officer director or managing agent of the

19  defendant either "authorized or ratified the conduct for which the damages are awarded or was

20  personally guilty of oppression, fraud, or malice." *Acquino v. Superior Court,* 21 Cal.App.4th

21  847, 856-57 (1993); Cal. Civ. Code § 3294. The "onerous" higher burden also applies on a motion

22  for summary adjudication. *See, Rowe v. Superior Court*, 15 Cal.App.4th 1711, 1724 (1993).

23    With no evidence that an officer, director, or managing agent of nextSource personally

24  committed acts of oppression, fraud, or malice or ratified an employee's act of oppression, fraud,

25  or malice, Plaintiff's payer for punitive damages against nextSource should be denied.

26  ///

27  ///

28  **VI.     CONCLUSION**

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36147234.9

1          For the foregoing reasons, this Court should grant Defendant nextSource, Inc.'s Motion

2     for Summary Judgment, or in the alternative, Summary Adjudication.

3

4     Date:  October 29, 2019                    FISHER & PHILLIPS LLP

5

6                                        By:       /s/ *Juan C. Araneda*
                                                JASON A. GELLER
7                                               JUAN C. ARANEDA
                                                VINCENT J. ADAMS
8                                               Attorneys for Defendant nextSource, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NEXTSOURCE, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36147234.9