SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TRACEY A. KENNEDY, Cal. Bar No. 150782
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:    213-620-1780
Facsimile:     213-620-1398
tkennedy@sheppardmullin.com

PATRICIA M. JENG, Cal. Bar No. 272262
REANNE SWAFFORD-HARRIS, Cal. Bar No. 305558
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:     415.434.3947
E mail           pjeng@sheppardmullin.com
                     rswafford-harris@sheppardmullin.com

Attorneys for Defendants,
TESLA, INC. DBA TESLA MOTORS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ AND LAMAR PATTERSON<br><br>    Plaintiffs,<br><br>  v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC., CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; NEXTSOURCE, INC.; and DOES 1-10, inclusive<br><br>    Defendants. | Case No. 17-cv-06748-WHO<br><br>**DEFENDANT TESLA, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE CLAIMS FOR UNRUH CIVIL RIGHTS ACT AND PUNITIVE DAMAGES**<br><br>Date:  December 18, 2019<br>Time:  2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick<br><br>Trial date; March 2, 2020<br>Complaint filed: October 16, 2017<br><br>[Filed concurrently with Notice of Motion and Motion for Partial Summary Judgment, the Declaration of Patricia M. Jeng, the Declaration of Jeremie Hansen, and Proposed Order] |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................1

II. PLAINTIFFS' AMENDED COMPLAINT .....................................................................2

III. STATEMENT OF FACTS................................................................................................2

    A. Plaintiffs Were Assigned To Work At The Fremont Factory ...............................2

    B. Throughout The Relevant Time Period, Tesla Maintained Anti-Harassment and Discrimination Policies and Plaintiffs Understood The Complaint Procedure. ..............................................................................................................3

    C. Plaintiffs' Written Complaints Were Investigated, And Prompt Action was Taken. ....................................................................................................................3

        1. Owen Diaz.................................................................................................3

        2. Demetric Di-Az .........................................................................................6

    D. Throughout Plaintiffs' Work At the Fremont Factory, The Fremont Factory Did Not Provide Accommodations, Goods, or Services To The Public. ...................6

IV. LEGAL ARGUMENT ......................................................................................................7

    A. Plaintiffs' Claims For Racial Discrimination And Retaliation Under The Unruh Civil Rights Act Fail. ................................................................................7

        1. The Unruh Civil Rights Act does not apply to employment discrimination and retaliation claims. ......................................................7

        2. The Unruh Act does not apply to Plaintiffs because the Fremont Factory is not a business establishment that furnished goods or services to Plaintiffs, nor is it open to the public generally. .........................8

    B. Plaintiffs Are Not Entitled to Punitive Damages On Any Claims ..........................10

V. CONCLUSION ...............................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Acala*
   222 Cal.App.3d 345 (1990)..................................................................................................9

*Alcorn v. Anbro Engineering. Inc.*
   2 Cal. 3d 493 (Cal. 1970) ................................................................................................7, 8

*Basich v. Allstate Insurance Co.*
   87 Cal.App.4th 1112 (2001)...............................................................................................10

*Brousseau v. Jarrett*
   73 Cal.App.3d 864 (1977)..................................................................................................11

*Glovatorium, Inc. v. NCR Corp.*
   684 F.2d 658 (9th Cir. 1982).............................................................................................11

*Isbister v. Boys' Club of Santa Cruz, Inc.*
   40 Cal. 3d 72 (1985)............................................................................................................9

*Johnson v. Riverside Healthcare Sys., LP*
   534 F.3d 1116 (9th Cir. 2008).........................................................................................7, 9

*Kelly-Zurian v. Wohl Shoe Co., Inc.*
   22 Cal. App. 4th 397 (1994).........................................................................................10, 11

*Kolstad v. American Dental Ass'n*
   527 U.S. 526 (1999) ....................................................................................................12, 13

*Langer v. 1200 San Pedro, LLC*
   2019 WL 2895622 (C.D. Cal. 2019)...................................................................................9

*Mathis v. Pac. Gas & Elec. Co.*
   75 F.3d 498 (9th Cir. 1996).................................................................................................9

*Muniz v. United Parcel Service, Inc.*
   731 F.Supp.2d 961 (N.D. Cal. 2010) ................................................................................11

*Myers v. Trendwest Resorts, Inc.*
   148 Cal.App.4th 1403 (2007).............................................................................................11

*Rojo v. Kliger*
   52 Cal. 3d 65 (Cal. Ct. App. 1990) .....................................................................................7

*Scott v. Phoenix Sch., Inc.*
   175 Cal. App. 4th 702 (2009)............................................................................................12

*Sprewell v. Golden State Warriors*
    266 F.3d 979, opinion amended ........................................................................................8

*Stamps v. Superior Court*
    136 Cal. App. 4th 1441 (2006) .........................................................................................7

*Strother v. S. California Permanente Med. Grp.*
    79 F.3d 859 (9th Cir. 1996) ..............................................................................................8

*Swinton v. Potomac Corp.*
    270 F.3d 794 (9th Cir. 2001) ..........................................................................................13

*United Investors Life Ins. Co. v. Grant*
    387 Fed. Appx. 683 (9th Cir. 2010) ...............................................................................12

*White v. Ultramar*
    21 Cal. 4th 563 (Cal. 1999) ............................................................................................11

**<u>Statutes</u>**

42 U.S.C. § 1981 ..................................................................................................................2, 12

Cal. Civ. Code § 51 ............................................................................................................ passim

Cal. Civ. Code § 51.7 ..................................................................................................................2

Cal. Civ. Code § 52.1(a) .............................................................................................................2

Cal. Civ. Code § 52.1(b) .............................................................................................................2

Cal. Civ. Code § 3294(b) ..........................................................................................................10

Cal. Civ. Code § 3294(c)(1) .....................................................................................................12

Cal. Civ. Code § 3294(c)(2) .....................................................................................................12

Cal. Lab. Code § 1102.5 .............................................................................................................2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Between June 2015 and March 2016, Plaintiffs Demetric Di-Az ("Demetric") (son) and Owen Diaz ("Owen") (father) worked at Tesla through separate staffing agencies in 2015. Owen was temporarily assigned to work at the Tesla beginning June 2015, and months later recommended that his son, Demetric, work at Tesla as well. In the nine months that Owen worked at Tesla, and the two months Demetric worked at Tesla, both were assigned to work at the Tesla Fremont Factory in Fremont, California.

Plaintiffs allege that Tesla, their alleged employer, retaliated against and discriminated against them based on race in violation of the Unruh Civil Rights Act (the "Unruh Act"). However, the Unruh Act only applies to discrimination by business establishments – not alleged employers – in the course of furnishing goods, services, or facilities to its clients, patrons, or customers. The Fremont Factory where Plaintiffs worked is not a facility open to the public, and it is undisputed that Plaintiffs and Tesla did not have a business-customer relationship. Because the Unruh Act is a "public accommodations statute that focused on behavior by business establishments," and is not a cognizable claim in the employment context, Plaintiffs' two Unruh claims fail.

Plaintiffs' claim for punitive damages also fails because Plaintiffs cannot demonstrate by clear and convincing evidence that a Tesla officer, director, or managing agent with substantial discretionary authority committed or ratified any acts of oppression, malice or fraud. Rather, the evidence demonstrates that Tesla maintained compliant anti-harassment and discrimination policies, and did not hesitate to act on and support the prompt, corrective action given to individuals by their employers when those individuals were found to have acted inappropriately (whether race was involved or not). Tesla's undisputed conduct fails to evidence acts of oppression, malice, or fraud, or ratification thereof, by Tesla.

Accordingly, this Court should grant partial summary judgment as to Plaintiffs' Unruh Civil Rights Act claims and their claim for punitive damages.

## II. PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs allege the following causes of action against Tesla: 1) racial discrimination, harassment, retaliation, failure to investigate and prevent discrimination and harassment, wrongful termination, and constructive discharge in violation of 42 U.S.C. § 1981; 2) Racial Discrimination in Violation of Unruh Civil Rights Act (Cal. Civ. Code § 51); 3) Retaliation in violation of Unruh Civil Rights Act (Cal. Civ. Code § 51); 4) Interference with Constitutional Rights in violation of Bane Act (Cal. Civ. Code § 52.1(b)); and 5) Whistleblower Retaliation (Cal. Lab. Code § 1102.5). Only Owen alleges a cause of action for Threats of Violence in violation of Ralph Civil Rights Act (Cal. Civ. Code § 51.7) and in violation of the Bane Act against Tesla (Cal. Civ. Code § 52.1(a)). Tesla moves for partial summary judgment on Plaintiffs' second and third claims under the Unruh Civil Rights Act, and Plaintiffs' request for an award of punitive damages. Dkt. 57, pp. 13-23, 26-32.

## III. STATEMENT OF FACTS

### A. Plaintiffs Were Assigned To Work At The Fremont Factory

Owen worked as an elevator operator at Tesla beginning June 2015.[1] Dkt. 57 (Amended Complaint ¶9), p. 4. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Jeng Decl., Exh. 1 (5/22/18 O. Diaz Dep.), 178:13-178:22 & Exhibit 24. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 181:18-182:2. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 143:10-144:9 & Exhibit 13. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at Exh. 4 (5/15/18 D. Di-az Dep.), 150:15-151:14. ▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] For the purposes of this motion only, Tesla does not dispute that there is an employment relationship.

1  ███████████████████████████  [2] *Id.* at Exh. 4 (5/15/18 D. Di-az Dep.), 68:23-25, 70:4-7,
2  98:25-99:2, 146:19-20.

3    **B.**    **Throughout The Relevant Time Period, Tesla Maintained Anti-Harassment and Discrimination Policies and Plaintiffs Understood The Complaint Procedure.**

5 Throughout the time Plaintiffs worked at Tesla, Tesla maintained an anti-harassment and
6 discrimination policy, and ensured that its managers and supervisors received training on those
7 policies, including at time of hire. *Id.* at Exh. 6 (5/29/19 A. Heisen Dep.), 74:8-23, 89:13-90:7.
8 Tesla's policies are available to all workers at Tesla. *Id.* at. 89:5-12. In addition, Tesla expected
9 that any staffing agencies that supplied temporary contract workers to maintain legally compliant
10 anti-harassment and discrimination policies and procedures. *Id* at 74:24-75:24. For example,
11 staffing companies West Valley Staffing and CitiStaff also maintained anti-
12 harassment/discrimination policies. *Id.* at Exh.15 (6/6/19 L. Ledesma Dep.), 34:23-35:2; Exh. 16
13 (4/24/19 T. Kossayian Dep.), 52:2-7. Although the staffing companies informed workers that they
14 should report any issues to them, workers could have reported complaints through a variety of
15 channels, including making complaints to Tesla. *Id.* at Exh. 6 (5/29/19 A. Heisen Dep.), 81:6-21,
16 82:21-25, 83:3-6; Exh. 7 (12/6/18 M. Deleon Dep.), 162:5-16; 83:18-21; Exh. 16 (4/24/19 T.
17 Kossayian Dep.), 83:18-22; Exh. 13 (5/17/19 W. Jackson Dep.), 40:10-13.

18 Indeed, as discussed below, Owen had no qualms about making written complaints.

19    **C.**    **Plaintiffs' Written Complaints Were Investigated, And Prompt Action was Taken.**

20    **1.**    Owen Diaz

22 In the approximately nine months Owen worked at Tesla, it is undisputed he made
23 complaints via email.[3] ████████████████
24 ████████████████████████████████
25 ████████████████████████████████

---

[2] For the purposes of this motion only, Tesla does not dispute that there is an employment relationship.
[3] For the purposes of this motion only, Tesla does not dispute that the incidents occurred as Owen alleges in his emails.

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at Exh. 1 (5/22/18 O.
2  Diaz Dep.), 55:4-11.
3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5  *Id.* at Exh. 9 (11/30/18 E. Romero Dep.), 154:12-15; Exh. 10 (11/30/18 E. Romero Dep.), Exhibit
6  42.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7  ▓▓▓▓▓▓▓▓, there were some witnesses who stated that Timbreza had a tendency to joke
8  excessively in the workplace.  *Id.* at Exh. 9 (11/30/18 E. Romero Dep.), 158:4-6, 165:1-6; Exh. 10
9  (11/30/18 E. Romero Dep.), Exhibit 43.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at Exh. 2 (12/3/18 O. Diaz Dep.), 232:10-15.
12 Indeed, after two days, Timbreza was removed from the elevator area and Kawasaki was asked to
13 find a replacement for Timbreza.  *Id.* at Exh. 8 (10/9/19 T. Kawasaki Dep.), 92:6-20, 93:17-94:1.
14 Kawasaki did not have the power to hire or fire anyone at Tesla.  *Id.* at 39:11-25.  Kawasaki
15 reported the alleged behavior to Ed Romero and Victor Quintero, neither of whom had the power
16 to hire or fire Owen.  *Id.* at Exh.9 (11/30/18 E. Romero Dep.), 40:23-41:1.
17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at Exh. 13 (5/17/19 W. Jackson Dep.), 60:12-15, 62:1-
19 10; Exh. 17 (5/17/19 W. Jackson Dep.), Exhibit 125.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at Exh. 9 (11/30/18 E. Romero Dep.), 107:5-21, 182:16-183:3, 186:7-
22 19; Exh. 10 (11/30/18 E. Romero Dep.), Exhibits 55, 56.  NextSource investigated the mutual
23 complaints and the outcome was that both Owen and Martinez were counseled.  *Id.* at Exh. 13
24 (5/17/19 W. Jackson Dep.), 59:17-60:11, 61:7-14, 70:8-22; Exh. 17 (5/17/19 W. Jackson Dep.),
25 Exhibits 123, 124.
26      On November 5, 2015, Owen reported an incident involving another temporary contract
27 worker, Rothaj Foster.  *Id.* at Exh. 7 (12/6/18 M. Deleon Dep.), 67:17-22.  ▓▓▓▓▓▓▓▓▓▓
28 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and Romero

1  immediately had security escort Foster off of Tesla premises.  Exh. 9 (11/30/18 E. Romero Dep.),
2  201:22-25; Exh. 10 (11/30/18 E. Romero Dep.), Exhibit 65.  In addition, Monica DeLeon of
3  CitiStaff immediately contacted Owen and Foster and although DeLeon did not find Owen
4  credible, she nevertheless asked if he wanted to be reassigned, and Owen said no.  *Id.* at Exh. 7
5  (12/6/18 M. Deleon Dep.), 67:4-22, 122:5-123:4, 139:9-141:16, 232:15-22.  Rothaj's assignment
6  was ended, and Owen never worked with him again.  *Id.* at Exh. 3 (6/21/19 O. Diaz Dep.), 373:2-
7  10.
8        On January 22, 2016, Owen emailed Ed Romero about a cartoon drawing that he
9  discovered on cardboard bale on January 21, 2016.  *Id.*at Exh. 9 (11/30/18 E. Romero Dep.),
10  108:17-24.  Owen forwarded his emailed complaint to Romero to Wayne Jackson ▮▮▮▮
11  ▮▮   *Id.* at Exh. 13 (5/17/19 W. Jackson Dep.), 74:20-25; Exh. 17 (5/17/19 W. Jackson Dep.),
12  Exhibit 128. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13  ▮▮▮▮▮▮▮▮▮▮▮   *Id.* at Exh. 11 (6/7/18 V. Quintero Dep.), 80:12-81:24; Exh. 12 (6/7/18 V.
14  Quintero Dep.), Exhibit 39; Exh. 13 (5/17/19 W. Jackson Dep.), 31:2-13, 82:10-14, 93:24-94:12.
15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *Id.* at
16  Exh. 13 (5/17/19 W. Jackson Dep.), 32:7-10; Exh. 12 (6/7/18 V. Quintero Dep.), Exhibit 38.
17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19  ▮▮▮▮   *Id.* at Exh. 11 (6/7/18 V. Quintero Dep.), 71:19-22; Exh. 12 (6/7/18 V. Quintero Dep.),
20  Exhibit 38.  Immediate corrective action was taken against Martinez.  On January 25, 2016,
21  Chartwell put Martinez on a three-day, unpaid suspension, and on a final written warning.  *Id*. at
22  Exh. 13 (5/17/19 W. Jackson Dep.), 82:3-14, 91:15-25; Exh. 17 (5/17/19 W. Jackson Dep.),
23  Exhibit 128.  Following this incident and Martinez's discipline, Owen never had any other issues
24  with Martinez.  *Id.* at Exh. 3 (6/21/19 O. Diaz Dep.), 344:2-5, 7.
25        Despite the fact that Owen evidently felt comfortable complaining via email and
26  forwarding his complaints to nextSource or CitiStaff, neither nextSource nor CitiStaff have any
27  record of Owen complaining of any race harassment, discrimination, or threats during his time at
28  Tesla, except for the written complaints above.  And neither does Tesla have any record that Owen

made any additional complaints other than the ones that were investigated and addressed through prompt action.

### 2. Demetric Di-Az

Demetric has not proffered any evidence of complaints about harassment or discrimination during his time at Tesla, other than his own testimony in this action. Demetric testified that his complaints were allegedly made to Javier Cabellero, who Demetric alleged was his supervisor. Javier Caballero could not hire or fire Owen. *Id.* at Exh. 14 (6/7/18 J. Caballero Dep.), 36:5-7; 37:1-2, 5.

West Valley does not have any record of Demetric complaining about race harassment, discrimination, or threats during his time at Tesla. *Id* at Exh. 16 (4/24/19 T. Kossayian Dep.), 76:14-17. And neither does Tesla have any record that Demetric made any other complaints during this short placement at Tesla. *Id.* at Exh. 6 (5/29/19 A. Heisen Dep.), 146:10-12.

### D. Throughout Plaintiffs' Work At the Fremont Factory, The Fremont Factory Did Not Provide Accommodations, Goods, or Services To The Public.

Throughout the time Plaintiffs were assigned to work at Tesla, they were assigned to work at the Tesla factory located at 45500 Fremont Boulevard in Fremont, California (the "Fremont Factory"). Declaration of Jeremie Hansen In Support of Motion for Partial Summary Judgment, ¶ 2. The Fremont Factory where Plaintiffs worked in 2015 and 2016 was not a business establishment holding itself out to the public; members of the general public could not simply walk into or enter the Fremont Factory. *Id.* at ¶¶ 3-4. Tesla did not invite the general public to engage in business with Tesla at the Fremont Factory. *Id.* at ¶¶ 5-6. Nor did Tesla engage in or benefit from any business with the general public transacted at the Fremont Factory. *Id*. The general public was unable to obtain or to benefit from any business services from Tesla at the Fremont Factory. *Id.*

[redacted] Jeng Decl., Exh. 5 (12/4/2018 D. Di-az Dep.), 298:20-299:10. Owen had to keep his badge with him while at work at the Fremont Factory. *Id.*

at Exh. 3 (6/21/19 O. Diaz Dep.), 373:2-10, 331:3-8, 331:20-332:4 & Exhibit 37.  Tesla does not engage with the general public as customers, patrons or clients at the Fremont Factory.  Hansen Decl., ¶¶ 3-6.  ███████████████████████████████████

███████████  Jeng Decl., Exh. 4 (5/15/18 D. Di-az Dep.), 200:20-22; Exh. 2 (12/3/18 O. Diaz Dep.), 253:24-25, 254:3-4.

IV.   **LEGAL ARGUMENT**

    A.   **Plaintiffs' Claims For Racial Discrimination And Retaliation Under The Unruh Civil Rights Act Fail.**

        1.   The Unruh Civil Rights Act does not apply to employment discrimination and retaliation claims.

The Unruh Act provides that all persons within California are free and equal and "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code. § 51(b).  The Unruh Act prohibits discrimination on the basis of race, amongst other listed characteristics, by "business establishments."  Cal. Civ. Code § 51. The Unruh Act is a "is a public accommodations statute that focuses on discriminatory behavior by business establishments[.]"  *Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1452 (2006).  Thus, the California Supreme Court has held that "the **Unruh Act has no application to employment discrimination**."  *Rojo v. Kliger*, 52 Cal. 3d 65, 77 (Cal. Ct. App. 1990); *see also Stamps*, 136 Cal. App. 4th at 1448 ("***Rojo* stands for the proposition that violations of section 51 may not be asserted in the employment context.** This rule is consistent with Supreme Court precedent cited in *Rojo*.") (emphasis added.)

California and Federal courts have expressly held that claims by an alleged employee, or person in the position of an employee, against an alleged employer or an entity in the position of an employer, are not cognizable under Unruh.  *See, e.g., Alcorn v. Anbro Engineering. Inc.*, 2 Cal. 3d 493 (Cal. 1970); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116 (9th Cir. 2008).

In *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 497 (Cal. 1970), the plaintiff sued his employer and alleged that another employee shouted at him in a "rude, violent and insolent manner," while uttering racial epithets and telling the plaintiff he was fired.  The plaintiff alleged that when he reported the incident to his the employer, his employer ratified and confirmed the

alleged acts, including the discharge. *Id.* With respect Plaintiffs' California Civil Code section 51 cause of action, the California Supreme Court confirmed that "there is no indication that the Legislature intended to broaden the scope of section 51 [the Unruh Civil Rights Act] to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers." *Id.* at 500. Federal courts are in accord. *See, e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 989, opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001). In *Sprewell,* the Ninth Circuit upheld the district court's dismissal of Unruh Act claim because the plaintiff's allegations "stemmed from his employment relationships with [the alleged employers]. [The plaintiff] Strewell therefore has failed to plead facts sufficient to invoke the protections afforded by California's Unruh Act." *Id.*

Here, as in *Alcorn*, Plaintiffs' claims of race discrimination and retaliation under the Unruh Act are predicated on the alleged employment relationship between Tesla and Plaintiffs. As discussed above, the California Supreme Court has held that the Unruh Act is not a viable claim in the employment context and to discrimination in employment. Thus, Plaintiffs' Unruh Act claims fail and should be dismissed.

      **2.**    <u>The Unruh Act does not apply to Plaintiffs because the Fremont Factory is not a business establishment that furnished goods or services to Plaintiffs, nor is it open to the public generally.</u>

Even if Plaintiffs do not contend that Tesla is their employer, the Unruh Act does not apply to their alleged violations at the Fremont Factory because Tesla did not provide goods or services to Plaintiffs as a business establishment and customer. Indeed, "[i]n excluding employees from Unruh Act coverage, California courts have recognized that the [Unruh] Act and its predecessors have generally been designed to prevent proprietors of businesses from excluding anyone from frequenting their business because of race, national origin, sex, etc." *Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 873 (9th Cir. 1996) (emphasis added.) "[T]he Unruh Act was designed to prohibit discrimination **by business establishments 'in the course of furnishing goods, services, or facilities' to its 'clients, patrons, or customers,' but does not extend to claims for employment discrimination** because other California statutes are specifically tailored to provide relief for such conduct, most notably the FEHA, which was passed by the California

1  Legislature in the very same session as the Unruh Act. *Johnson v. Riverside Healthcare Sys.*, LP,
2  534 F.3d 1116, 1124 (9th Cir. 2008) ("[E]mployment discrimination claims are excluded from
3  § 51's protection").
4        Instead, courts have repeatedly found that Unruh may only apply to business
5  establishments that hold themselves out to the public. In *Langer v. 1200 San Pedro, LLC*, 2019
6  WL 2895622, at *4 (C.D. Cal. 2019), the Court denied the plaintiff's motion for summary
7  judgment on the Unruh Claim because the specific store owned by the defendant, where the
8  alleged violation occurred, was not a place of public accommodation because it was "not open to
9  the public." Examples of places of public accommodation under California law are "a building,
10 structure, facility, complex, or improved area which is used by the general public." *Langer*, 2019
11 WL 2895622, at *4. "Put differently, public accommodations include 'places to which the general
12 public is invited." *Id.*; *see also In re Acala*, 222 Cal.App.3d 345 (1990) ("Businesses open to the
13 public such as inns and restaurants are subject to the mandates of California's Unruh Civil Rights
14 Act prohibiting discrimination."); *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 76
15 (1985) ("a private charitable organization operating a community recreational facility" is
16 considered a "business establishment" covered by the Unruh Act because the facilities are "open
17 to the community generally"). A nuclear power plant, for example, would not fit the description
18 of a business establishment generally open to the public. *See Mathis v. Pac. Gas & Elec. Co.*, 75
19 F.3d 498, 505 (9th Cir. 1996) (upholding lower court's dismissal of the plaintiffs' Unruh Act
20 claim because the Act "prohibit[s] only arbitrary exclusions from business establishments
21 generally open to the public," and the power plant where plaintiff worked for Bechtel Power
22 Corporation was not generally open to the public).
23       Similarly, the Fremont Factory where Plaintiffs were assigned and worked in 2015 and
24 2016 was not a business establishment holding itself out to the public, and the alleged
25 discrimination was not "in the course of furnishing goods, services, or facilities to clients, patrons,
26 or customers." Hansen Decl., ¶¶ 2-6. It is undisputed that members of the general public could
27 not simply walk into or enter the Fremont Factory. *Id.* at ¶¶ 3-4. Tesla did not invite the general
28 public to engage in business with Tesla at the Fremont Factory. *Id.* at ¶¶ 5-6. Nor did Tesla

1  engage in or benefit from any business with the general public transacted at the Fremont
2  Factory.  *Id.*  Indeed, the general public was unable to obtain or benefit from any business services
3  from Tesla at the Fremont Factory.  *Id.*

4     Further, Plaintiffs' own work experiences demonstrate a plain understanding that the
5  Fremont Factory was a restricted area and not open to the public.  ▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Jeng Decl.,
8  Exh. 5 (12/4/2018 D. Di-az Dep.), 298:20-299:10; Jeng Decl., Exh. 3 (6/21/19 O. Diaz Dep.),
9  331:3-8, 331:20-332:4 & Exhibit 37.

10    Moreover, Plaintiffs do not allege that they were discriminated against in the course of
11 Tesla furnishing goods, services, or facilities to Plaintiffs as clients, patrons, or customers.  It is
12 undisputed that the general public was not able to enter into the Fremont Factory to purchase cars,
13 services or goods.  Hansen Decl., ¶ 6.  Tesla does not engage with the general public as customers,
14 patrons or clients at the Fremont Factory.  *Id.*  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Jeng Decl., Exh. 4 (5/15/18 D. Di-az Dep.), 200:20-22; Jeng Decl.,
16 Exh. 2 (12/3/18 O. Diaz Dep.), 253:24-25, 254:3-4.  It is undisputed that Plaintiffs were at the
17 Fremont Factory for work, and not as a member of the general public or to patronize the Factory
18 by purchasing goods or services.

19    Plaintiffs' racial discrimination and retaliation claims under the Unruh Act fail because the
20 Fremont Factory was not a business establishment furnishing goods, services, or facilities to
21 Plaintiffs as clients, patrons, or customers.  Plaintiffs were alleged employees and their
22 employment claims are precluded by the Unruh Act.

23    **B.    Plaintiffs Are Not Entitled to Punitive Damages On Any Claims**

24    Punitive damages are only available if Plaintiffs can demonstrate by clear and convincing
25 evidence that an "officer, director, or managing agent committed or ratified an act of oppression,
26 fraud, or malice."  Cal. Civ. Code § 3294(b); *Basich v. Allstate Insurance Co.*, 87 Cal.App.4th
27 1112, 1121 (2001); *see also Kelly-Zurian v. Wohl Shoe Co., Inc*. 22 Cal. App. 4th 397, 419 (1994)
28 (stating that an employer is not strictly liable for punitive damages).  Conclusory allegations of

fraud, malice, or oppression are insufficient to state a claim for punitive damages. *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 869-72 (1977).  As further discussed below, Plaintiffs' claims for punitive damages should be summarily adjudicated in Tesla's favor because Plaintiffs cannot meet their high burden of proving by clear and convincing evidence that Tesla's officers, directors, or managing agents committed or ratified acts of oppression, fraud, or malice.

> 1. <u>There Is No Evidence That Tesla's Officers, Directors, or Managing Agents Committed Or Ratified An Act of Oppression, Fraud, Or Malice</u>

None of Plaintiffs' alleged harassers were corporate employees vested with substantial discretionary authority over decisions that ultimately determine corporate policy regarding the matter as to which punitive damages are sought.  *White v. Ultramar*, 21 Cal. 4th 563, 577 (Cal. 1999); *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 661 (9th Cir. 1982).  Even if Plaintiffs allege that some of the "bad actors" were Tesla supervisors, the fact that an employee has a supervisory position with the power to terminate employees under his or her control does not, by itself, render the employee a managing agent.  *Id.*  Nor does the fact that an employee supervises a large number of employees.  *Muniz v. United Parcel Service, Inc.*, 731 F.Supp.2d 961, 976 (N.D. Cal. 2010); *see also Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th 1403, 1437 (2007) ("[A] supervisor must be in a corporate policymaking position in order to be considered a managing agent for purposes of imposing punitive damages liability on the employer."); *Kelly-Zurian*, 22 Cal.App.4th at 421-22 (the plaintiff's supervisor was not a managing agent despite the fact that the supervisor was the highest ranking person in the employer's Southern California offices and had immediate and direct control over the plaintiff, including the authority to terminate her employment, because she did not have authority to change or establish business policy for the company).  None of the alleged harassers or "bad actors" that were Tesla employees had the requisite discretionary or independent authority over decisions that ultimately determine the "general principles which guide [the employer], or rules intended to be followed consistently over time in [its] operations."  *Myers*, 148 Cal.App.4th at 1437.

To the contrary, the only Tesla personnel Plaintiffs identified as persons to whom they reported their conduct or had any involvement in any aspect of their tenure and assignments at the

Fremont facility did not even have the ability to hire or fire Plaintiffs – let alone set company policy.  Jeng Decl., Exh. 8 (10/9/19 T. Kawasaki Dep.), 39:24-25; Exh.9 (11/30/18 E. Romero Dep.), 40:23-41:1; Exh. 14 (6/7/18 J. Caballero Dep.), 36:5-7; 37:1-2, 5.  Accordingly, Plaintiffs cannot recover punitive damages because they cannot show that any of the alleged bad actors were officers, directors or managing agents of Tesla.

### 2. Tesla's Actions With Respect To Plaintiffs Belied Any Ratification Of Any Acts of Oppression, Fraud, Or Malice.

Even if Plaintiffs could show that Tesla's officers, directors, or managing agents committed specific alleged acts (they cannot), there is no evidence to show they committed or *ratified* any act of *oppression, fraud, or malice*.  "Malice" is  intentional injury or "despicable conduct which is carried on the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1).  "Oppression" is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  Cal. Civ. Code § 3294(c)(2).  Regardless of which theory Plaintiffs rely on to claim punitive damages, they must show that *Tesla* acted with intent or with conscious disregard for Plaintiffs' rights.  *See United Investors Life Ins. Co. v. Grant*, 387 Fed. Appx. 683, 687 (9th Cir. 2010); *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 716 (2009) ("There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called willful or wanton.")

Moreover, the inquiry for punitive damages under 42 U.S.C. § 1981 is even higher and does not end with a showing of the requisite "malice" or "reckless indifference," as the plaintiff must also "impute liability for punitive damages to [the employer]." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 540-41 (1999).  Plaintiff must show that the *intentional* discrimination by an employee is attributable to the employer by using traditional agency principles, *e.g.,* that a managerial employee acted within the scope of his or her employment.  *Id.*  Here, Plaintiffs have no such evidence and are not entitled to punitive damages.

Here, prompt and appropriate action was taken as to Owen's written complaints (Demetric had none) – whether they referenced race or not. Tesla evidently had no qualms about its workers being disciplined or removed if inappropriate conduct was found to have occurred.[4] As explained in detail above, Owen's written complaints were promptly investigated and resolved:

- ███████████████████████████████████████████████████████████; Timbreza was replaced. Jeng Decl., Exh. 2 (12/3/18 O. Diaz Dep.), 232:10-15; Exh. 8 (10/9/19 T. Kawasaki Dep.), 92:6-20, 93:17-94:1;

- ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████ *Id.* at Exh. 9 (11/30/18 E. Romero Dep.), 107:5-21, 182:16-183:3, 186:7-19; Exh. 10 (11/30/18 E. Romero Dep.), Exhibits 55, 56; Exh. 13 (5/17/19 W. Jackson Dep.), 59:17-60:11, 61:7-14, 70:8-22; Exh. 17 (5/17/19 W. Jackson Dep.), Exhibits 123, 124;

- ███████████████████████████████████████████ Rothaj Foster, Foster was escorted off the premises by security and his assignment was ended; Exh. 9 (11/30/18 E. Romero Dep.), 201:22-25; Exh. 10 (11/30/18 E. Romero Dep.), Exhibit 65; Exh. 3 (6/21/19 O. Diaz Dep.), 373:2-10; and

- After Owen emailed about a cartoon drawing that he discovered on cardboard bale, Ramon Martinez ███████████████████████████ was disciplined with a three day unpaid suspension and a final written warning, and Owen never had any further issues with Martinez. *Id.* at Exh. 12 (6/7/18 V. Quintero Dep.), 71:19-22; Exh. 13 (6/7/18 V. Quintero Dep.), Exhibit 38; Exh. 13 (5/17/19 W. Jackson Dep.), 82:3-14, 91:15-25; Exh. 17 (5/17/19 W. Jackson Dep.), Exhibit 128; Exh. 3 (6/21/19 O. Diaz Dep.), 344:2-5, 7.

---

[4] An employer's good faith implementation of an anti-discrimination policy acts as a shield from punitive damages arising from the unlawful acts of its managerial agents. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 810-11 (9th Cir. 2001). As detailed *supra*, Tesla did not engage in any such unlawful acts. Moreover, Tesla had anti-harassment and discrimination policies in place and implemented them with respect to Plaintiffs thus precluding an award of punitive damages. *Id.*

1    It is Owen that dooms his own plea for punitive damages.  Citistaff was informed by Owen that he affirmatively wanted to and continued to work at Tesla despite the above complaints.  After the Foster incident, Owen was asked if he wanted to be re-assigned and he refused.  *Id.* at Exh. 7 (12/6/18 M. Deleon Dep.), 67:4-22, 122:5-123:4, 139:9-141:16, 232:15-22.

Indeed, even after Owen purportedly was subjected to ▓▓▓▓▓ and ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓  *Id.* at Exh. 1 (5/22/18 O. Diaz Dep.), 143:10-144:9 & Exhibit 13; Exh. 4 (5/15/18 D. Diaz Dep.), 150:15-151:14. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓  *Id.*

No punitive damages claim can stand against Tesla.

## V.    CONCLUSION

For the foregoing reasons, Tesla' partial summary judgment motion should be granted.

Dated:  October 29, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    */s/ Patricia M. Jeng*
TRACEY A. KENNEDY,
PATRICIA M. JENG
REANNE SWAFFORD-HARRIS

Attorneys for Defendant
TESLA, INC. dba TESLA MOTORS, INC.