# Exhibit

# 1

120150



application

## PERSONAL INFORMATION

| Last Name | First Name | M.I. | Social Security # |
|---|---|---|---|
| DIAZ | Owen | O | 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 |

| Street Address | | | Apt # |
|---|---|---|---|
| 1043 Tuolumne ST | | | |

| City | State | Zip Code | Phone # |
|---|---|---|---|
| VALLEJO | CA | 94590 | 415-272-3648 |

| Person to contact in case of emergency/ Phone Number | Alternate Number |
|---|---|

| Positions interested in? | Can you demonstrate proof of Employment Eligibility? |
|---|---|
| FORKLIFT Operator/JANITOR | YES |

## JOB EXPERIENCE

**General Labor**
- ☒ Loader/Unloader
- ☒ Assembly
- ☒ Production Line
- ☐ Machine Operator

**Forklifts**
- ☒ Sit-down-Standard
- ☒ Sit-down- with attachments
- ☒ Stand Up-Reach
- ☒ Stand Up-Cherry Picker
- ☒ Electric Pallet Jack
- ☐ Cranes

**Shipping/Receiving**
- ☒ UPS
- ☐ Fed-Ex
- ☐ Clerk
- ☒ Inventory
- ☒ Quality Control

**Other Skills**
- ☐ Restaurant
- ☐ Extrusion Equipment
- ☐ Welding
- ☒ Construction
- ☐ Customer Service

**Clerical**
WPM _____

Accuracy _____

- ☐ Receptionist
- ☐ Data Entry/ File Clerk
- ☐ Accounting
- ☐ Excel
- ☐ Word
- ☐ PowerPoint
- ☐ 10 Key
- ☐ Other Programs

_____

**Languages**
- ☐ Cantonese
- ☐ Chinese
- ☐ English
- ☐ French
- ☐ German
- ☐ Spanish
- ☐ Vietnamese
- ☐ Other

_____

## AVAILABILITY

**Status**
- ☒ Fulltime
- ☐ Part-time

**Overtime**
- ☒ Yes
- ☐ No

**Shift**
- ☒ 1st Shift
- ☒ 2nd Shift
- ☒ 3rd Shift

**Days**
- ☒ Monday
- ☒ Tuesday
- ☐ Wednesday
- ☐ Thursday
- ☒ Friday
- ☐ Saturday
- ☐ Sunday

**Transportation**
- ☒ Car/ Own Transportation
- ☐ Ride
- ☐ Bus/Public Transportation
- ☐ Assisted Transportation

**Personnel Equipment**
- ☒ Work boots
- ☒ Steel Toes
- ☐ Back Belt
- ☐ Hard Hat

CONFIDENTIAL

**PLEASE CHECK YES OR NO**

| | | | |
|---|---|---|---|
| Have you ever worked for CitiStaff Before? | ☐Yes ☑No | Where? _____ |
| Have you ever been convicted of a felony? | ☑Yes ☐No | Where & When 1988 |
| Can you comply with a Drug Test? | ☑Yes ☐No | _____ |
| Conditions May require lifting between 30-50 pounds . Is this ok? | ☑Yes ☐No | Explain _____ |
| Positions may require to standing up for 6-10 hours. Is this ok? | ☑Yes ☐No | Explain _____ |

**EMPLOYMENT REFERENCES**

| Company COVERALL | Position Franchise Owner | For Recruiter Use Only |
| City SAN FRANCISCO | State CA | Phone 415-272-3040 | Account # |
| Starting Pay | End Pay | Start Date 3/99 | End Date 8/09 | Position |
| Reason for Leaving | Contact Name Owen | Can we contact? YES | Interviewer |

**EMPLOYMENT REFERENCES TWO**

| Company Hamilton Family Center | Position Residenetial Counselor | Date |
| City SAN FRANCISCO | State CA | Phone 415-409-2100 | Status |
| Starting Pay 15.00 | End Pay 15.00 | Start Date 1/13 | End Date 2/14 | |
| Reason for Leaving funding | Contact Name FRANK | Can we contact? YES | Notes: |

**PLEASE ANSWER ALL QUESTIONS**

How did you hear about CitiStaff?
☐ Ad
☐ Walk-In
☐ Job Fair
☐ Relative
☐ Friend
☐ Client
INDEED

What is your highest level of education? Name of school
1 YEAR College

Do you have any diplomas, certificates, degrees or awards?
YES, High School

In case of an injury, would you like to pre-designate your treating physician?
Yes ☐   No ☑ . If no, CitiStaff will automatically pre-designate your treating physician

Initials

Desired Cities for Employment
Antioch. Concord. Pittsburg

You must be at least 18 years old and able to produce proof of citizenship or immigration status to begin employment. I certify that the facts in this employment application are true and complete. I understand that falsified statements are grounds for dismissal.

Signature

6/2/15
Date

Recruiter Comments:

CITISTAFF-0000035

# Exhibit

# **2**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


DEMETRIC DI-AZ, OWEN      )
DIAZ, and LAMAR           )
PATTERSON,                )
            Plaintiffs,   )
vs.                       ) Case No.:  3:17-CV-066748
                          )             WHO
                          )
TESLA, INC., dba TESLA    )
MOTORS, INC.; CITISTAFF   )
SOLUTIONS, INC.; WEST     )
VALLEY STAFFING GROUP;    )
CHARTWELL STAFFING        )
SERVICES, INC.; and DOES  )
1-10, inclusive,          )
            Defendants.   )
_____ )


DEPOSITION OF MONICA DE LEON

Thursday, December 6, 2018


TAKEN BEFORE:

HEIDI BELTON, CSR, RPR, CRR, CCRR, CRC

CSR No. 12885

```
 1    APPEARANCES:

 2
          For the Plaintiffs:
 3
              CALIFORNIA CIVIL RIGHTS LAW GROUP
 4            332 San Anselmo Avenue
              San Anselmo, California 94960
 5            By:  Navruz Avloni, Esq.
              Phone:  415.453.4740
 6            E-mail:  Navruz@civilrightsca.com

 7
          For the Defendant:
 8
              CONSTANGY BROOKS SMITH & PROPHETE, LLP
 9            2029 Century Park East, Suite 1100
              Los Angeles, California 90067
10            By:  Aaron M. Rutschman, Esq.
              Phone:  310.256.3083
11            E-mail:  Arutschman@constangy.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

10:19:59  1     understand what your job duties entailed.

10:20:01  2         **A.   Okay.**

10:20:01  3         Q.   Now you mentioned payroll.  Could you --

10:20:05  4     could you tell me how that process worked in terms

10:20:07  5     of you processing payroll as a staff supervisor at

10:20:10  6     CitiStaff?

10:20:15  7         **A.   So for payroll I took in everyone's hours**

10:20:21  8     **from the clients --**

10:20:21  9         Q.   And -- sorry.  I'm going to interrupt you

10:20:23  10    just because so I have context.

10:20:27  11             When you say "everyone's hours," whose

10:20:30  12    hours?

10:20:31  13        **A.   All the workers, all the contractors.**

10:20:33  14        Q.   And these are contractors that were hired

10:20:38  15    by CitiStaff?

10:20:39  16        **A.   Yes.**

10:20:44  17        Q.   So you took CitiStaff contractors' hours

10:20:48  18    and then -- what did you do with those hours?

10:20:51  19        **A.   I would input them in the system.  If**

10:20:59  20    **anyone was missing hours I would contact them to see**

10:21:02  21    **if they had sick hours or if -- if they were missing**

10:21:07  22    **or if there was any discrepancies.  And then I would**

10:21:15  23    **send the hours in to Emilio at corporate.**

10:21:19  24        Q.   All right.  You would send these hours to

10:21:20  25    who?

| | | |
|---|---|---|
| 10:26:08 | 1 | three different way of obtaining their checks.  They |
| 10:26:12 | 2 | could pick them up from you -- |
| 10:26:16 | 3 | **A.   (Witness nods.)** |
| 10:26:16 | 4 | Q.   -- they could do a direct deposit, or they |
| 10:26:19 | 5 | could actually get them from the facility where they |
| 10:26:22 | 6 | were working? |
| 10:26:23 | 7 | **A.   Correct.** |
| 10:26:26 | 8 | Q.   And when you would drop the checks off at |
| 10:26:28 | 9 | the facilities, who would you leave the checks with? |
| 10:26:31 | 10 | **A.   To whoever the main contact was.** |
| 10:26:44 | 11 | Q.   And did you ever drop off checks at the |
| 10:26:46 | 12 | Tesla facility in Fremont, California? |
| 10:26:52 | 13 | **A.   In the beginning.  And then they -- in the** |
| 10:26:57 | 14 | **beginning, yes, I did drop them off.** |
| 10:27:00 | 15 | Q.   Do you remember who the contact was to |
| 10:27:02 | 16 | whom you would hand the checks to? |
| 10:27:03 | 17 | **A.   Nancy was the beginning.  And then it** |
| 10:27:06 | 18 | **became Vanessa.** |
| 10:27:14 | 19 | Q.   And do you have any information or any |
| 10:27:15 | 20 | knowledge of what the -- of whether Nancy was a |
| 10:27:17 | 21 | Tesla employee or not? |
| 10:27:18 | 22 | MR. RUTSCHMAN:  Objection; calls for |
| 10:27:18 | 23 | speculation.  Calls for a legal conclusion. |
| 10:27:24 | 24 | THE WITNESS:  No, I don't. |
| 10:27:25 | 25 | BY MS. AVLONI: |

| | | |
|---|---|---|
| 10:45:49 | 1 | provide him with a start date -- scratch that. |
| 10:45:56 | 2 | At what point can an applicant candidate |
| 10:45:59 | 3 | become an employee; do you know? |
| 10:46:01 | 4 | MR. RUTSCHMAN:  Objection; calls for a |
| 10:46:02 | 5 | legal conclusion. |
| 10:46:04 | 6 | THE WITNESS:  Become an employee to who? |
| 10:46:06 | 7 | To CitiStaff or to -- |
| 10:46:08 | 8 | BY MS. AVLONI: |
| 10:46:08 | 9 | Q.  Let's say CitiStaff.  Do you know if -- at |
| 10:46:10 | 10 | what point an applicant becomes an employee of |
| 10:46:13 | 11 | CitiStaff? |
| 10:46:13 | 12 | MR. RUTSCHMAN:  Objection; calls for a |
| 10:46:14 | 13 | legal conclusion. |
| 10:46:20 | 14 | THE WITNESS:  To start work or -- |
| 10:46:25 | 15 | BY MS. AVLONI: |
| 10:46:26 | 16 | Q.  Well, let's back up.  Let's say -- |
| 10:46:28 | 17 | A.  Can you explain that a little? |
| 10:46:29 | 18 | Q.  Yeah, yeah.  I -- I'm as new to this area |
| 10:46:33 | 19 | in terms of understanding what CitiStaff does.  So |
| 10:46:36 | 20 | some of my questions may not make sense and I'm more |
| 10:46:38 | 21 | than happy to try to clarify or rephrase. |
| 10:46:41 | 22 | A.  No worries.  Thank you. |
| 10:46:43 | 23 | Q.  So let's say an applicant walks into the |
| 10:46:45 | 24 | CitiStaff doors and the applicant seems great and |
| 10:46:47 | 25 | you like the applicant and they submit their |

| | | |
|---|---|---|
| 10:46:49 | 1 | application and, you know, they're provided |
| 10:46:53 | 2 | CitiStaff policies on various topics, including |
| 10:46:56 | 3 | harassment.  And CitiStaff likes them -- likes the |
| 10:46:59 | 4 | candidate.  Does CitiStaff -- can then CitiStaff |
| 10:47:03 | 5 | bring on that candidate and say that, hey, we'll add |
| 10:47:12 | 6 | you to our system as, like, an employee?  Or -- is |
| 10:47:16 | 7 | there a process for converting like a potential |
| 10:47:18 | 8 | candidate to like a CitiStaff person? |
| 10:47:22 | 9 | MR. RUTSCHMAN:  Objection; compound.  It's |
| 10:47:23 | 10 | vague and ambiguous. |
| 10:47:26 | 11 | THE WITNESS:  Well, in a case like that, |
| 10:47:28 | 12 | when someone comes in, fills out the application, |
| 10:47:36 | 13 | they're already considered a CitiStaff employee, but |
| 10:47:39 | 14 | they just haven't been dispatched out yet to go on |
| 10:47:47 | 15 | an assignment.  So -- |
| 10:47:49 | 16 | BY MS. AVLONI: |
| 10:47:49 | 17 | Q.   I see.  Do the -- do the candidates' |
| 10:47:53 | 18 | applications have to be approved by CitiStaff first |
| 10:47:56 | 19 | before they become CitiStaff employees? |
| 10:47:59 | 20 | MR. RUTSCHMAN:  Objection; calls for a |
| 10:48:00 | 21 | legal conclusion. |
| 10:48:03 | 22 | THE WITNESS:  Can you ex- -- rephrase that |
| 10:48:05 | 23 | or say that again? |
| 10:48:07 | 24 | MS. AVLONI:  Yeah.  You know, you just |
| 10:48:09 | 25 | mentioned that when candidates come in and fill out |

| | | |
|---|---|---|
| 11:14:03 | 1 | employer -- like, twice a year or once a year saying |
| 11:14:06 | 2 | hey, this is -- these are your strengths, these are |
| 11:14:09 | 3 | your weaknesses, this is how you're doing, this is |
| 11:14:11 | 4 | where we see you going.  I'm not saying the |
| 11:14:14 | 5 | performance review includes all of this.  But this |
| 11:14:16 | 6 | is what I mean by performance reviews when I'm |
| 11:14:18 | 7 | talking about performance reviews in general. |
| 11:14:20 | 8 | So do you know if CitiStaff clients such |
| 11:14:24 | 9 | as Tesla issued performance reviews to CitiStaff |
| 11:14:30 | 10 | employees? |
| 11:14:31 | 11 | MR. RUTSCHMAN:  Objection; vague and |
| 11:14:31 | 12 | ambiguous.  Calls for speculation. |
| 11:14:35 | 13 | THE WITNESS:  So what I recall, yes, they |
| 11:14:36 | 14 | would give some every now and then. |
| 11:14:40 | 15 | BY MS. AVLONI: |
| 11:14:40 | 16 | Q.  And so you recall specifically Tesla |
| 11:14:42 | 17 | giving CitiStaff employees performance reviews now |
| 11:14:45 | 18 | and then? |
| 11:14:46 | 19 | A.  I re- -- |
| 11:14:47 | 20 | MR. RUTSCHMAN:  Objection; vague and |
| 11:14:47 | 21 | ambiguous.  Calls for speculation. |
| 11:14:49 | 22 | THE WITNESS:  I recall nextSource. |
| 11:14:55 | 23 | BY MS. AVLONI: |
| 11:14:55 | 24 | Q.  You recall nextSource giving CitiStaff |
| 11:14:57 | 25 | employees performance reviews; is that correct? |

11:14:59  1        **A.    Mm-hmm.**

11:15:00  2             MR. RUTSCHMAN:  Objection; vague and

11:15:01  3   ambiguous.

11:15:03  4   BY MS. AVLONI:

11:15:03  5        Q.    And do you know how often nextSource

11:15:04  6   would give CitiStaff employees performance reviews?

11:15:12  7             MR. RUTSCHMAN:  Objection; vague and

11:15:12  8   ambiguous.  Calls for speculation.

11:15:15  9             THE WITNESS:  No, I don't remember.

11:15:16 10   BY MS. AVLONI:

11:15:25 11        Q.    Did you conduct any investigations while

11:15:30 12   working as a staff supervisor at CitiStaff?

11:15:32 13             MR. RUTSCHMAN:  Objection; vague and

11:15:32 14   ambiguous.

11:15:38 15             THE WITNESS:  Yes.

11:15:40 16   BY MS. AVLONI:

11:15:41 17        Q.    How many investigations have you handled

11:15:42 18   as a staff supervisor?

11:15:44 19             MR. RUTSCHMAN:  Objection; vague and

11:15:44 20   ambiguous.

11:15:52 21             THE WITNESS:  One.  One or two.

11:15:54 22   BY MS. AVLONI:

11:15:55 23        Q.    Do you recall the nature of those

11:15:59 24   investigations, what they involved?

11:16:06 25             MR. RUTSCHMAN:  Objection; vague and

```
11:52:42  1        Q.   Yes, so if I'm talking about -- I'll
11:52:46  2   refer -- I'll be -- let's refer to them as CitiStaff
11:52:49  3   contractors for now to make it more clear.
11:52:51  4             So these CitiStaff contractors, so when
11:52:54  5   they would receive a raise, that information would
11:52:57  6   come to you from nextSource, and you would notify
11:53:05  7   Emilio and then CitiStaff would implement that raise
11:53:08  8   and it would be reflected in the employee -- in the
11:53:11  9   CitiStaff contractor's paycheck; is that correct?
11:53:14 10        MR. RUTSCHMAN:  Objection; compound.
11:53:15 11   Incomplete hypothetical.
11:53:18 12   BY MS. AVLONI:
11:53:18 13        Q.   And correct me if I'm wrong; if any part
11:53:21 14   of this is wrong.  I just want to understand the
11:53:24 15   process.
11:53:25 16        A.   So in the case a CitiStaff contractor
11:53:27 17   would get a raise they would -- nextSource would
11:53:30 18   send it to me.  And then I would confirm it with
11:53:33 19   Emilio, let Emilio know, make those changes in the
11:53:38 20   pay rate so it can reflect on their check as of the
11:53:41 21   date that nextSource put in the e-mail.
11:53:45 22        Q.   Okay.  Did you consider yourself -- aside
11:53:51 23   from any legal jargon -- did you consider CitiStaff
11:53:56 24   contractors to be CitiStaff employees?
11:53:59 25        MR. RUTSCHMAN:  Objection; calls for a
```

12:04:26  1   BY MS. AVLONI:

12:04:27  2       Q.   And sitting here today you know that you

12:04:29  3   didn't have the authority to issue them writeups?

12:04:31  4       **A.   I know I didn't, yeah.**

12:04:35  5       Q.   Have you ever had a situation where, let's

12:04:37  6   say, several clients were unhappy with a CitiStaff

12:04:41  7   contractor and there are several complaints, let's,

12:04:43  8   say, serious complaints about a CitiStaff

12:04:45  9   contractor, have you ever had a situation where

12:04:49 10   CitiStaff decided to fire that particular

12:04:52 11   contractor?

12:04:53 12            MR. RUTSCHMAN:  Objection; vague,

12:04:54 13   ambiguous.  Constitutes an incomplete hypothetical.

12:04:58 14            THE WITNESS:  No, I haven't had a

12:04:59 15   situation like that.

12:05:00 16   BY MS. AVLONI:

12:05:02 17       Q.   Do you know if CitiStaff has authority to

12:05:04 18   fire its contractors?

12:05:07 19            MR. RUTSCHMAN:  Calls for speculation.

12:05:07 20            THE WITNESS:  That I do not know.

12:05:08 21   BY MS. AVLONI:

12:05:09 22       Q.   Have you ever fired a contractor?

12:05:12 23       **A.   No.**

12:05:13 24       Q.   Have you ever participated --

12:05:14 25            MR. RUTSCHMAN:  Objection -- sorry --

11:54:00  1    legal conclusion.

11:54:05  2            THE WITNESS:  So can you repeat that

11:54:06  3    question?

11:54:06  4    BY MS. AVLONI:

11:54:07  5        Q.    Yeah.  Did you consider the people that

11:54:08  6    were CitiStaff contractors to be working for

11:54:11  7    CitiStaff?

11:54:12  8            MR. RUTSCHMAN:  Objection; vague,

11:54:14  9    ambiguous, calls for a legal conclusion.

11:54:17 10            THE WITNESS:  Well, since CitiStaff paid

11:54:19 11    them and gave them their check, I did consider them

11:54:25 12    working for Citistaff.

11:54:26 13    BY MS. AVLONI:

11:54:33 14        Q.    Is there -- how about writeups?  Are you

11:54:46 15    aware of any CitiStaff contractors receiving

11:54:52 16    writeups?

11:54:54 17            MR. RUTSCHMAN:  Objection; vague and

11:54:54 18    ambiguous.

11:54:56 19            THE WITNESS:  I don't recall.

11:54:57 20    BY MS. AVLONI:

11:54:57 21        Q.    Have you ever issued any writeups to

11:55:00 22    CitiStaff contractors?

11:55:02 23            MR. RUTSCHMAN:  Objection; vague and

11:55:02 24    ambiguous.

11:55:04 25            THE WITNESS:  I wasn't -- I didn't have

| | | |
|---|---|---|
| 11:55:06 | 1 | authority to do that. |
| 11:55:08 | 2 | BY MS. AVLONI: |
| 11:55:09 | 3 | Q.   Who had authority to issue raises to |
| 11:55:13 | 4 | CitiStaff contractors? |
| 11:55:14 | 5 | MR. RUTSCHMAN:  Objection; calls for |
| 11:55:14 | 6 | speculation. |
| 11:55:18 | 7 | THE WITNESS:  On what -- what side?  So |
| 11:55:23 | 8 | Can you repeat the question? |
| 11:55:25 | 9 | BY MS. AVLONI: |
| 11:55:25 | 10 | Q.   Sure.  I'll actually ask it differently. |
| 11:55:28 | 11 | Did CitiStaff have the ability to |
| 11:55:31 | 12 | recommend raises for CitiStaff contractors? |
| 11:55:36 | 13 | MR. RUTSCHMAN:  Objection; calls for |
| 11:55:36 | 14 | speculation. |
| 11:55:45 | 15 | THE WITNESS:  I wasn't -- I didn't have |
| 11:55:46 | 16 | the authority to give a raise.  So -- but if the |
| 11:55:55 | 17 | client sent us any raises or change of pay rates, |
| 11:56:01 | 18 | then I would take actions -- |
| 11:56:05 | 19 | BY MS. AVLONI: |
| 11:56:05 | 20 | Q.   To make it happen -- |
| 11:56:07 | 21 | **A.   To make it happen with Emilio and --** |
| 11:56:10 | 22 | Q.   So your understanding is that the client |
| 11:56:14 | 23 | would recommend the raises and that CitiStaff would |
| 11:56:18 | 24 | implement those raises? |
| 11:56:20 | 25 | **A.   So the client would send us any raises or** |

11:56:25  1    **reviews and we would process as follows, yes.**

11:56:33  2         Q.   Okay.   Have you ever denied a client's

11:56:36  3    request to raise someone's salary?

11:56:39  4         **A.   No.**

11:56:40  5         Q.   So you've always authorized all raises

11:56:43  6    that were coming in from clients?

11:56:45  7              MR. RUTSCHMAN:   Objection; it's vague and

11:56:47  8    ambiguous.

11:56:47  9    BY MS. AVLONI:

11:56:48 10         Q.   Let me rephrase it.   That was vague and

11:56:50 11    ambiguous.

11:56:51 12              So would CitiStaff to your knowledge

11:56:56 13    pretty much always authorize all raise --

11:57:06 14    recommendations for employees -- for CitiStaff

11:57:09 15    contractors coming from clients?

11:57:10 16              MR. RUTSCHMAN:   Objection; it's vague and

11:57:11 17    ambiguous.   Calls for speculation.

11:57:14 18              THE WITNESS:   So for CitiStaff

11:57:17 19    contractors, whenever nextSource would send us any

11:57:22 20    pay rate changes or increases, raises, I would send

11:57:28 21    them to Emilio.   Send the e-mail to have a

11:57:34 22    confirm -- confirmation of it, a written consent.

11:57:36 23    And we would process it as follows.

11:57:38 24    BY MS. AVLONI:

11:57:39 25         Q.   Okay.   Did CitiStaff have authority, do

12:23:51  1            THE WITNESS:  I don't remember when I

12:23:52  2   first -- first started.  Well, I believe so, yes.

12:24:09  3   BY MS. AVLONI:

12:24:09  4       Q.   And do you know if Tesla was ever a client

12:24:13  5   of CitiStaff?

12:24:16  6            MR. RUTSCHMAN:  Objection; calls for

12:24:16  7   speculation.

12:24:20  8            THE WITNESS:  No.

12:24:20  9   BY MS. AVLONI:

12:24:20 10       Q.   It was just -- to your knowledge you

12:24:22 11   believe nextSource was a client and to your

12:24:24 12   knowledge you don't believe that Tesla was a client

12:24:28 13   of CitiStaff when you were there?

12:24:30 14            MR. RUTSCHMAN:  Objection; misstates the

12:24:31 15   witness' prior testimony.

12:24:32 16            THE WITNESS:  To my knowledge CitiStaff

12:24:37 17   helped nextSource provide contractors for -- to

12:24:40 18   work at Tesla for Tesla.

12:24:43 19   BY MS. AVLONI:

12:24:43 20       Q.   Okay.  Did nextSource have -- to your

12:24:52 21   knowledge and based on your job duties as a staff

12:24:54 22   supervisor -- do you know if CitiStaff gave

12:25:00 23   nextSource the power to issue its contractors

12:25:08 24   raises?

12:25:09 25            MR. RUTSCHMAN:  Objection; vague,

12:25:14  1   ambiguous, and calls for speculation.

12:25:21  2          THE WITNESS:  To my knowledge nextSource

12:25:23  3   did provide CitiStaff with raises for CitiStaff

12:25:26  4   contractors through the time that I was there.

12:25:29  5   BY MS. AVLONI:

12:25:30  6       Q.   And nextSource had agreed to provide and

12:25:33  7   recommend promotions for CitiStaff employees?

12:25:35  8          MR. RUTSCHMAN:  Objection; calls for

12:25:35  9   speculation.

12:25:39 10          THE WITNESS:  nextSource did provide

12:25:44 11   CitiStaff with raises and promotions.

12:25:50 12   BY MS. AVLONI:

12:25:50 13       Q.   And do you know if nextSource's had the

12:25:54 14   ability to discipline CitiStaff employees?

12:25:58 15          MR. RUTSCHMAN:  Objection; vague and

12:25:58 16   ambiguous.  Calls for speculation.

12:26:07 17          THE WITNESS:  Discipline?  As far as --

12:26:09 18   BY MS. AVLONI:

12:26:09 19       Q.   Issuing termination, issuing suspicion,

12:26:12 20   writeup.

12:26:13 21       A.   Yes.

12:26:14 22          MR. RUTSCHMAN:  Same objections.

12:26:15 23   BY MS. AVLONI:

12:26:15 24       Q.   And to your knowledge nextSource had the

12:26:18 25   ability to demote CitiStaff contractors?

| | | |
|---|---|---|
| 12:27:33 | 1 | Q.   And how would you know -- how did you come |
| 12:27:36 | 2 | to know that in some situations Tesla supervisors |
| 12:27:40 | 3 | would tell nextSource that a CitiStaff contractor |
| 12:27:43 | 4 | is doing great? |
| 12:27:44 | 5 | A.   nextSource would tell me.  Sometimes |
| 12:27:46 | 6 | when I would speak with a few of them they'll let us |
| 12:27:50 | 7 | know and -- before they would send us the actual |
| 12:27:59 | 8 | e-mail consenting of their raise. |
| 12:28:01 | 9 | Q.   Have you ever seen nextSource decline a |
| 12:28:07 | 10 | raise request by a Tesla supervisor? |
| 12:28:09 | 11 | A.   No, I haven't seen that. |
| 12:28:12 | 12 | Q.   Okay.  Do you know if Tesla has the |
| 12:28:15 | 13 | ability to recommend promotions for CitiStaff |
| 12:28:19 | 14 | contractors working in the Tesla facility? |
| 12:28:21 | 15 | MR. RUTSCHMAN:  Objection; calls for |
| 12:28:21 | 16 | speculation. |
| 12:28:28 | 17 | THE WITNESS:  Can you repeat the question. |
| 12:28:29 | 18 | BY MS. AVLONI: |
| 12:28:29 | 19 | Q.   I know.  This verbiage gets all confusing. |
| 12:28:32 | 20 | Do you know if Tesla employees have the |
| 12:28:39 | 21 | ability to recommend promotions for CitiStaff |
| 12:28:46 | 22 | contractors -- |
| 12:28:47 | 23 | MR. RUTSCHMAN:  Objection; calls for |
| 12:28:47 | 24 | speculation. |
| 12:28:48 | 25 | BY MS. AVLONI: |

| | | |
|---|---|---|
| 12:28:48 | 1 | Q.   -- that are working in the Tesla facility? |
| 12:28:52 | 2 | **A.   No, I do not know.** |
| 12:28:56 | 3 | Q.   Do you know if Tesla has the ability to |
| 12:29:02 | 4 | recommend discipline for CitiStaff contractors |
| 12:29:06 | 5 | working in a Tesla facility? |
| 12:29:09 | 6 | MR. RUTSCHMAN:  Objection; calls for |
| 12:29:09 | 7 | speculation. |
| 12:29:10 | 8 | THE WITNESS:  No, I do not. |
| 12:29:16 | 9 | BY MS. AVLONI: |
| 12:29:16 | 10 | Q.   Do you know if Tesla has the ability to |
| 12:29:19 | 11 | recommend termination of a relationship between a |
| 12:29:21 | 12 | CitiStaff contractor working at its facility? |
| 12:29:26 | 13 | MR. RUTSCHMAN:  Objection; calls for |
| 12:29:26 | 14 | speculation. |
| 12:29:31 | 15 | THE WITNESS:  In that case I would say |
| 12:29:32 | 16 | yes.  If there is -- if they're in a department |
| 12:29:37 | 17 | that's far away or -- and they're being supervised |
| 12:29:43 | 18 | by them and that supervisor, then, yes, I would say |
| 12:29:47 | 19 | in that case they would be able to tell nextSource |
| 12:29:51 | 20 | about the worker's performance. |
| 12:29:59 | 21 | BY MS. AVLONI: |
| 12:30:00 | 22 | Q.   Do you know if nextSource -- isn't it |
| 12:30:03 | 23 | true that nextSource is kind of just like a |
| 12:30:05 | 24 | middleman between CitiStaff providing employee -- |
| 12:30:09 | 25 | contractors to nextSource and then nextSource |

| | | |
|---|---|---|
| 12:48:49 | 1 | Q.  These are the only two that you recall? |
| 12:48:55 | 2 | A.  Yeah. |
| 12:48:56 | 3 | MR. RUTSCHMAN:  Is that a yes? |
| 12:48:56 | 4 | THE WITNESS:  Yes. |
| 12:48:56 | 5 | BY MS. AVLONI: |
| 12:48:57 | 6 | Q.  And referring to Owen bringing concerns, |
| 12:49:00 | 7 | you recall him bringing two concerns to your |
| 12:49:02 | 8 | attention, one about the picture and the other one |
| 12:49:04 | 9 | about the altercation with Rothaj; is that correct? |
| 12:49:06 | 10 | A.  Correct. |
| 12:49:08 | 11 | Q.  In regards to the picture, when he |
| 12:49:15 | 12 | communicated that concern to you, what did you do? |
| 12:49:17 | 13 | A.  So when he told me about it, you know, due |
| 12:49:25 | 14 | to the fact that we take it seriously, we |
| 12:49:30 | 15 | immediately took it up to HR -- Judy -- and let my |
| 12:49:38 | 16 | supervisors know about it as well, which they said |
| 12:49:44 | 17 | to talk to Judy for this case. |
| 12:49:51 | 18 | Q.  Did you talk to Judy? |
| 12:49:53 | 19 | A.  Yes, I did. |
| 12:49:57 | 20 | Q.  What did you guys discuss? |
| 12:49:59 | 21 | A.  I told Judy about, you know -- I told Judy |
| 12:50:03 | 22 | that I discussed -- spoke with Owen, you know.  I |
| 12:50:09 | 23 | checked in to -- with him to see do you -- are you |
| 12:50:19 | 24 | going to return to your -- to your job.  He said |
| 12:50:22 | 25 | yes.  I asked him if he wanted to be moved to a |

| | | |
|---|---|---|
| 12:50:26 | 1 | **different department.  He said no.  You know, he was** |
| 12:50:33 | 2 | **upset and a little aggravated.  But I let him know** |
| 12:50:42 | 3 | **that I'm -- HR is going to deal with this.  I have** |
| 12:50:47 | 4 | **already brought it up to them to their immediate** |
| 12:50:50 | 5 | **attention.  I let my supervisors know.  And I let** |
| 12:50:57 | 6 | **Chartwell -- I gave them the okay to consent to** |
| 12:51:00 | 7 | **speak with Owen Diaz.** |
| 12:51:12 | 8 | Q.  Do you recall discussing anything else |
| 12:51:13 | 9 | with Owen Diaz regarding this situation?  I'm sorry, |
| 12:51:19 | 10 | actually.  You were describing to me the |
| 12:51:20 | 11 | conversation you had with Judy; right? |
| 12:51:24 | 12 | **A.   Yes.** |
| 12:51:25 | 13 | Q.  Because -- let's back up.  Let's get a |
| 12:51:27 | 14 | clear record. |
| 12:51:27 | 15 | So when Owen raised the concern about the |
| 12:51:33 | 16 | picture to you, you talked to Owen.  And what did he |
| 12:51:42 | 17 | tell you? |
| 12:51:45 | 18 | MR. RUTSCHMAN:  Objection; asked and |
| 12:51:45 | 19 | answered. |
| 12:51:50 | 20 | THE WITNESS:  So he pretty much told me |
| 12:51:53 | 21 | how -- what happened, how he came across the |
| 12:51:58 | 22 | picture.  You know, he felt that the rac- -- the |
| 12:52:07 | 23 | picture was racist and that he wanted to make a |
| 12:52:17 | 24 | complaint. |
| 12:52:21 | 25 | BY MS. AVLONI: |

01:18:06  1        A.    A what kind of policy?

01:18:09  2        Q.    Bereavement.

01:18:11  3              MR. RUTSCHMAN:  Bereavement.

01:18:12  4    BY MS. AVLONI:

01:18:13  5        Q.    Bereavement.

01:18:13  6        A.    Oh --

01:18:14  7              MR. RUTSCHMAN:  Objection; calls for

01:18:14  8    speculation.

01:18:15  9    BY MS. AVLONI:

01:18:15 10        Q.    Leave policy.

01:18:16 11        A.    That I don't know.

01:18:16 12        Q.    Do you know if nextSource has a

01:18:19 13    bereavement leave policy?

01:18:21 14              MR. RUTSCHMAN:  Objection; calls for

01:18:21 15    speculation.

01:18:22 16              THE WITNESS:  That I don't know.

01:18:23 17    BY MS. AVLONI:

01:18:24 18        Q.    Tesla?  Do you know whether Tesla has such

01:18:26 19    a policy?

01:18:28 20              MR. RUTSCHMAN:  Objection; calls for

01:18:28 21    speculation.

01:18:29 22              THE WITNESS:  That I don't know.

01:18:30 23    BY MS. AVLONI:

01:18:30 24        Q.    Did you try to place Owen at another

01:18:34 25    facility after he was separated from Tesla?

01:18:37  1            MR. RUTSCHMAN:   Objection; vague and

01:18:38  2   ambiguous.

01:18:42  3            THE WITNESS:   I did mention that, you

01:18:45  4   know, we could possibly place him somewhere else.

01:18:48  5   But it wouldn't be making the same amount of money

01:18:51  6   that he was making there.   And he just -- basically

01:18:57  7   he didn't want to hear it.   He was like F that.

01:19:00  8   Thirteen dollars ain't -- ain't shit, basically.

01:19:07  9            So -- you know, I tried to get him to calm

01:19:15 10   down by telling him hey, you know, I could probably

01:19:18 11   place you somewhere else.   You're not just -- you

01:19:21 12   know, your assignment didn't work here, you know, it

01:19:24 13   ended here.   But, you know, do you want to try

01:19:27 14   something else.   And he didn't.   He didn't want to

01:19:30 15   do anything else basically.   So --

01:19:33 16   BY MS. AVLONI:

01:19:33 17       Q.   Was Tesla -- do you know if Tesla paid the

01:19:37 18   highest rate to CitiStaff contractors?

01:19:40 19            MR. RUTSCHMAN:   Objection; calls for

01:19:40 20   speculation.

01:19:45 21            THE WITNESS:   I don't know if Tesla paid

01:19:47 22   the highest rate to Citistaff contractors.   But when

01:19:51 23   a lot of people hear Tesla, it's a well-known

01:19:55 24   manufacturer for these electric cars.   So when

01:19:58 25   people hear Tesla, everybody just wants to work at

01:21:03  1       Q.   Did you have any client that paid more

01:21:05  2   than $16 an hour?

01:21:07  3       A.   I don't think so.  Other than Tesla.

01:21:13  4            MS. AVLONI:  What time is it right now?

01:21:15  5   It's 1:21 p.m.  It makes sense, I think, to go on a

01:21:19  6   break.

01:21:21  7            MR. RUTSCHMAN:  Yes.

01:21:21  8            MS. AVLONI:  Okay.  So it is 1:21 and

01:21:24  9   we're going off the record.

01:21:25 10       (Recess taken from 1:21 p.m. to 2:18 p.m.)

02:18:36 11            MS. AVLONI:  The time is now 2:18 p.m.

02:18:38 12   And we're back on the record.

02:18:42 13       Q.   Ms. De Leon, what is your current address?

02:18:48 14       A.   My --

02:18:49 15            MR. RUTSCHMAN:  Objection; privacy.  She's

02:18:51 16   represented in this action, so you can contact her

02:18:54 17   through our firm.

02:18:55 18            MS. AVLONI:  And will you --

02:18:56 19            MR. RUTSCHMAN:  I'm going to instruct her

02:18:58 20   not to answer.

02:18:58 21            MS. AVLONI:  And will you agree to accept

02:19:00 22   a subpoena on behalf of Ms. De Leon, trial subpoena?

02:19:05 23            MR. RUTSCHMAN:  Yes.

02:19:06 24   BY MS. AVLONI:

02:19:06 25       Q.   And you're okay with your attorney

03:51:45  1            MR. RUTSCHMAN:  Objection; the document

03:51:47  2    speaks for itself.

03:51:48  3            THE WITNESS:  His ray rate.

03:51:50  4    BY MS. AVLONI:

03:51:51  5        Q.   Is that the new pay rate, the raise, or

03:51:53  6    the previous pay raise?

03:51:55  7        A.   That would be the new pay rate from his

03:51:57  8    raise that he got.

03:51:58  9        Q.   So what the document is saying is that

03:52:01 10    somewhere in August 16 of 2015 Owen Diaz' pay rate

03:52:06 11    increased to $18?

03:52:08 12        A.   Yes.

03:52:08 13        Q.   And then do you know what the regular

03:52:09 14    billing rate $23.76 means?

03:52:13 15        A.   That would have had to have been just in

03:52:15 16    the contract between nextSource and --

03:52:20 17        Q.   Do you know if that's the amount that

03:52:23 18    CitiStaff billed nextSource for Owen's hourly

03:52:29 19    rate?

03:52:30 20        A.   I don't know.

03:52:31 21        Q.   And then if you look at "Status."  It says

03:52:34 22    "3."  Do you know what that means?

03:52:40 23        A.   I forgot what that was.

03:52:42 24        Q.   How about "Work code"?  Do you know what

03:52:45 25    that --

```
 1                     REPORTER'S CERTIFICATION

 2

 3          I, Heidi Belton, Certified Shorthand

 4   Reporter in and for the State of California, do

 5   hereby certify:

 6

 7          That the foregoing witness was by me duly

 8   sworn; that the deposition was then taken before me

 9   at the time and place herein set forth; that the

10   testimony and proceedings were reported

11   stenographically by me and later transcribed into

12   typewriting under my direction; that the foregoing

13   is a true record of the testimony and proceedings

14   taken at that time.

15

16          IN WITNESS WHEREOF, I have subscribed my

17   name on this date:

18

19

20

21

22          _____

23          Heidi Belton, CSR, RPR, CRR, CCRR, CRC
                      CSR No. 12885
24

25
```

# Exhibit

# **3**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

--oOo--

DEMETRIC DIAZ, OWEN DIAZ AND          )
LAMAR PATTERSON,                      )
                                      )
                  Plaintiffs,         )CASE NO.
                                      )3:17-cv-06748-WHO
        vs.                           )
                                      )
TESLA, INC., DBA TESLA MOTORS,        )
INC.; CITISTAFF SOLUTIONS, INC.;      )
WEST VALLEY STAFFING GROUP;           )
CHARTWELL STAFFING SERVICES,          )
INC.; AND DOES 1-50, INCLUSIVE,       )
                                      )
                  Defendants.         )
_____)


VIDEOTAPED DEPOSITION OF TAMOTSU KAWASAKI


DATE:          OCTOBER 9, 2019

TIME:          2:05 P.M.

LOCATION:      CALIFORNIA CIVIL RIGHTS LAW GROUP
               180 GRAND AVENUE, SUITE 1380
               OAKLAND, CALIFORNIA


REPORTED BY:  ANGIE M. MATERAZZI
              Certified Shorthand Reporter
              License No. 13116

```
 1   APPEARANCES:

 2

         FOR THE PLAINTIFFS:
 3
             BY:  LAWRENCE A. ORGAN, ESQ.
 4           CALIFORNIA CIVIL RIGHTS LAW GROUP
             332 SAN ANSELMO AVENUE
 5           SAN ANSELMO, CALIFORNIA 94960
             (415)453-4720
 6           LARRY@CIVILRIGHTSCA.COM

 7

 8       FOR THE DEFENDANTS, TESLA MOTORS:

 9           BY:  PATRICIA M. JENG, ESQ.
             SHEPPARD MULLIN
10           FOUR EMBARCADERO CENTER, 17TH FLOOR
             SAN FRANCISCO, CALIFORNIA 94111
11           (415)434-9100
             PJENG@SHEPPARDMULLIN.COM

12

13       FOR DEFENDANTS, CITISTAFF SOLUTIONS:

14           BY:  SUSAN T. KUMAGAI, ESQ.
             LAFAYETTE & KUMAGAI
15           1300 CLAY STREET, SUITE 810
             OAKLAND, CALIFORNIA 94612
16           (415)357-4600
             SKUMAGAI@LKCLAW.COM

17

18       FOR DEFENDANTS, NEXTSOURCE:

19           BY:  JUAN C. ARANEDA, ESQ.
             FISHER PHILLIPS
20           ONE EMBARCADERO CENTER, SUITE 2050
             SAN FRANCISCO, CALIFORNIA 94111
21           (415)490-9000
             JARANEDA@FISHERPHILLIPS.COM

22

23

24

25
```

Bridget Mattos & Associates
(415)747-8710

```
 1       A.   Correct.

 2            MR. ARANEDA:   Objection, vague.

 3  BY MR. ORGAN:

 4       Q.   And then you reported to Ed Romero, when he

 5  came in, right?

 6       A.   Correct.

 7       Q.   And before Ed Romero came in, you reported

 8  directly to Jaime Salazar?

 9       A.   Correct.

10       Q.   Okay.  Did Ed Romero ever tell what you should

11  be doing in terms of your job?

12       A.   So Ed, when he came in, he let me know, well,

13  okay, this is who I am, this is what I'm here to do, you

14  know.  And he said he was through a staffing company as

15  well, so I didn't think nothing of it.  Okay, well, a

16  staffing company sent somebody to oversee, whatever.

17  Okay, fine, it's my not my problem.

18            And then he -- yeah.  That's all she wrote and

19  then he was automatic -- he had a e-mail, so I

20  automatically added him every time I had an issue to the

21  e-mail, along with Jaime and Victor.  So I -- I don't

22  know.  He really didn't tell me what my real -- I mean,

23  I knew what I was supposed to do.  I was doing it before

24  he got there, so.

25       Q.   Sure.  What -- and -- and when you became the
```

```
 1   lead for the overnight crew, is that -- were you the

 2   lead for the overnight crew when Owen Diaz started

 3   working in the elevator area?

 4        A.   So Owen Diaz was -- when I was the elevator

 5   lead, Owen Diaz was there.

 6        Q.   Okay.  So -- okay.  So if I have it correct,

 7   then, Owen Diaz -- and -- and I think I told you he

 8   started in June of 2015.

 9             So when Owen Diaz came in in June of 2015, you

10   were the lead for the elevators at that time; is that

11   right?

12        A.   Correct.

13        Q.   And then after Mr. Diaz started working there,

14   you got a promotion to the lead for over -- for the

15   overnight crew?

16        A.   Correct.

17        Q.   And then who took your place as lead for the

18   elevators?

19        A.   So I put -- so that's -- Victor asked me who I

20   thought would be a good fit for the area and I just went

21   over my records of who shows up on time, who's doing

22   their job, who's not taking breaks and I said Owen Diaz

23   was one of the guys that's here every day, he doesn't

24   take days off, he's on time, and he's -- works.  So it

25   went from there that -- then that turned and went to
```

Bridget Mattos & Associates
(415)747-8710

1  **Edward Romero to put whoever he wanted into the**

2  **position.  It wasn't...**

3      Q.   Okay.  So you -- you were -- Ed Romero asked

4  you who you thought could take your place, when you were

5  promoted to the -- the lead over the overnight crew,

6  right?

7      **A.   Correct.**

8      Q.   And you mentioned Owen Diaz as one of the

9  possible people because he had -- he got there every day

10 and did his work well; is that right?

11     **A.   Correct.**

12     Q.   Okay.  And then do -- do remember whether Ed

13 Romero took your suggestion and promoted Owen to the

14 lead position?

15     **A.   He did.**

16         MR. ARANEDA:   Objection, lacks foundation,

17 calls for speculation.

18 BY MR. ORGAN:

19     Q.   You -- you know that Owen got promoted to the

20 lead over the elevators?

21     **A.   Yes, because I was there overnight, yeah, and**

22 **he was my elevator lead.**

23     Q.   Okay.  And is there just one lead per shift

24 for these elevators?

25     **A.   Yes.  So that -- the shift -- we're there**

 1    use the bathroom, I would step in and fill the position

 2    for the five, ten minutes they left to go use the

 3    bathroom, whatever it is, or get something to eat.  I

 4    mean, we were working 12-hours days, I wasn't trying to

 5    burn anybody out.  If they needed a break, they needed a

 6    break.

 7              And then he called me -- Owen had called me

 8    and said he got into altercation, so I drove back to the

 9    elevators and said what happened and they were arguing

10    and I can't -- can't really remember what the argument

11    was about, but I -- I think they -- I think some-

12    something -- I forget what he said.  He said

13    something -- that he called him something.  I just

14    forget what it was, but I have it all down in e-mail.  I

15    know I e-mailed everything to my immediate supervisor

16    that night.

17         Q.   Okay.  So I'm going to show you an e-mail that

18    you sent at the end of July, so July 31st.  This is

19    Exhibit 42.  And just so the record is clear, we're

20    looking at Tesla 510.

21              You mentioned an e-mail that you sent.  Is

22    this the e-mail you sent about what information you

23    received from Owen Diaz?

24         A.   Yep.

25         Q.   You mention in here -- and -- and you sent --

1   another employee.  Whether it was joking or not, you

2   still said it, you got to go home.

3        Q.   Right.  So let me just break that down.

4             So you recall that Mr. Timreza -- or at least

5   Mr. Diaz said that Mr. Timreza had used a racial slur

6   towards him, correct?

7        A.   Correct.

8        Q.   And that -- as you think about it, you recall

9   that -- at least one of the racial slurs he used was

10  dumb nigger; is that right?

11            MR. ARANEDA:   Objection, misstates his

12  testimony.

13            THE WITNESS:   It -- I know racial slurs were

14  said.  I can't very verify that the N-word was said, but

15  from what they were arguing about, I know Owen said he

16  called me the N-word.  I remember Owen saying that he

17  called me the N-word and they were arguing, where they

18  were almost about to get into a fight.  So I got into

19  the middle of it and said -- it happened and there was

20  other people around that said it as well, that this

21  altercation happened, so in my book, as a supervisor,

22  I'm going to separate the two.

23  BY MR. ORGAN:

24       Q.   Okay.  Okay.  So let me break that down.  So

25  you do recall that Mr. Diaz, at least, told you that

1   Mr. Timreza had used the N-word towards him?

2       **A.   Correct.**

3       Q.   <u>And you also recall that other people told you</u>

4   <u>that they had heard racial terms used; is that right?</u>

5       **A.   Correct.**

6           MR. ARANEDA:   Objection, misstates his

7   testimony.

8   BY MR. ORGAN:

9       Q.   Did -- did anyone ever tell you -- anyone

10  else -- other than Mr. Diaz -- tell you they had also

11  heard the N-word directed towards Mr. Diaz?

12      **A.   I don't remember anybody else telling me that**

13  **the N-word was directed towards him.  I mean, it's -- we**

14  **live in that era where that words is very -- throw**

15  **around very casually.**

16      Q.   Right.  But in terms of workplace policy at

17  the Tesla factory, people were not supposed to use the

18  N-word there?

19      **A.   Correct.  That's any workplace.**

20      Q.   Right.  Whether people use the word

21  casually -- in their everyday life or not -- is

22  irrelevant, relative to the workplace, right?

23      **A.   Correct.**

24          MS. JENG:   Objection, calls for a legal

25  conclusion.

Bridget Mattos & Associates
(415)747-8710

```
 1              THE WITNESS:  Correct.
 2   BY MR. ORGAN:
 3       Q.   And in terms of the way -- did you receive any
 4   training by Tesla about like workplace conduct on -- you
 5   know, things you shouldn't say and it's okay to say,
 6   any -- any training like that?
 7       A.   I didn't get any training from Tesla, if
 8   that's what you're saying.
 9       Q.   Okay.  So Tesla didn't give you any training
10   about discrimination or harassment?
11       A.   They gave me a paper, when I became a lead, to
12   sign and I read, but not per se going to a class and
13   doing any training.  It's just probably roughly a paper
14   to back themselves.
15       Q.   Okay.  And then let's -- let's go back to this
16   night, when you were talking to Owen Diaz.  You said
17   that you sent Judy Timbreza home.
18              Did Mr. Timreza admit that he had used some
19   inappropriate language?
20       A.   He -- he argued about it and said he didn't do
21   it.  But at that time, them really arguing, almost
22   getting into a fight, and other people in the area
23   telling me that -- that was said in nature, it was my --
24   my decision to say, hey, what -- I can't keep them both
25   together and I can't put Judy in another department,
```

1   **there's nothing else for me to put him, I need to**

2   **separate these guys and those natures were said.  At my**

3   **standpoint, I -- there's people around, they said what**

4   **they said.  Okay, well, you got to go home.  You --**

5   **that's not -- that's not cool, that's not right, you**

6   **can't do that.**

7       Q.   So -- so based on the information that you

8   received from the people that you talked to in the

9   general area were Owen and Judy Timbreza were working,

10  you -- you made the assessment that Mr. Timreza had at

11  least used some inappropriate words, correct?

12      **A.   Correct.**

13      Q.   And based on that determination you sent

14  Mr. Timreza home, correct?

15      **A.   Correct.**

16      Q.   Was there anybody who's -- who had said that

17  Mr. Diaz had used any inappropriate words?

18      **A.   Not from my recollection, no.**

19      Q.   Okay.  And then did -- do you remember whether

20  or not Mr. Diaz said that Mr. Timreza had used the word

21  jiggabo?

22           Do you remember him complaining about that

23  word?

24      **A.   No.  Not to me, per se, about jiggabo.  No,**

25  **that never --**

```
 1   on similar social positions with those two individuals?

 2              MS. JENG:  Objection, misstates --

 3              MR. ORGAN:  That's a bad question.

 4   BY MR. ORGAN:

 5       Q.   Let me -- were you -- you guys were friends at

 6   work; is that fair?

 7       A.   Everybody's friends at work.  Man, we're all

 8   colleagues, nobody wants to --

 9       Q.   Sure.

10       A.   -- be that guy, so.

11       Q.   Right.

12       A.   Yeah.

13       Q.   Did you -- did you socialize with either

14   Mr. Timreza or Mr. Diaz outside of work?

15       A.   No.

16       Q.   After work hours or anything like that?

17       A.   Never.  No, I don't have -- no, I don't do

18   that.

19       Q.   Okay.

20       A.   Sorry.  I had my own friends.

21       Q.   Okay.  I -- I get that too.

22              And did Mr. Romero follow up with you after

23   you sent the e-mail on the 31st, to ask you more

24   specifically what the racist words or comments were that

25   Mr. Timreza had used?
```

Bridget Mattos & Associates
(415)747-8710

1        A.    Yeah.   I believe Edward came -- I want to say

2   that Monday, he came at the tail end of my shift and we

3   ate breakfast together in one of the cafeterias and

4   talked about what happened.

5             And I told him, This is what happened, other

6   people had told me, I took my own decision and said,

7   Hey, we've got to separate them, this guy has to go

8   home, so I sent him home.   And I said, I e-mailed you

9   guys and that's it.   Wherever you take it from there, I

10  mean that's -- the ball is in your court.

11       Q.    Okay.

12       A.    In my eyes, I just pretty much handed it off

13  to the next person.   It had nothing -- I -- because like

14  I said, I don't have the power to do anything like that,

15  these guys above me that can subsequently reprimand or

16  do whatever they so choose.

17       Q.    It wasn't your -- it wasn't your place to give

18  any kind of written warning or anything like that to

19  Mr. Timreza; is that right?   Is that what you're saying?

20       A.    So it was -- that's where it gets -- Edward

21  did come that Monday with -- he said there's a rule that

22  there's these three written warnings before anybody gets

23  laid off, I guess.   That's what -- that Monday he told

24  me about that.

25             Like I said, I didn't have any training or any

1    **knowledge of anything like that.  All I knew was, if**

2    **there was an issue on my shift, e-mail it and cc these**

3    **people on it.**

4        Q.   Okay.  And was -- did Edward Romero tell you

5    that -- because if you look at the top of the e-mail,

6    which is -- if you look at your -- it's 8/2 so --

7        **A.   August 2nd.**

8        Q.   Yeah, 2015.  It says, I believe we can handle

9    the situation.

10        Do you see that, where you're saying that to

11   Mr. Quintero?  Do -- do you remember -- does that

12   refresh your recollection about -- did you ever have any

13   conversations with Mr. Quintero about what had happened

14   between Judy Timbreza and Mr. Owen Diaz?

15       **A.   No -- no, I cc'd him.  As -- as you can see,**

16   **he replied back, Let me know if he can help in this**

17   **matter and he was on vacation that weekend.**

18       Q.   Oh, okay.  And then --

19       **A.   So that's where I said I think we can handle**

20   **the situation.**

21       Q.   And when you say the -- the we there, that we

22   can handle the situation, you included Ed Romero in the

23   we; is that correct?

24        MR. ARANEDA:  Objection, calls for

25   speculation -- I mean, lacks foundation.

```
 1        Q.   Okay.  All the time.
 2             Did you ever -- were you ever aware of any
 3   kind of run-ins or problems between Owen Diaz and Ramon
 4   Martinez?
 5        A.   I vaguely remember Owen saying that he -- him
 6   and Ramon didn't like each other.
 7        Q.   Okay.
 8        A.   But I don't remember why.  I mean, like I
 9   said, I keep to myself.  Stuff like that goes in one ear
10   and out the other.  What does it bother me, you guys
11   don't like each other.  You guys are -- you guys work
12   together.  What does it matter.  You don't got to like
13   everybody you work with.
14        Q.   Okay.
15        A.   Even right now, I don't like some people I
16   work with, but I deal with it.
17        Q.   Sure.  Okay.  Let's see.  Any -- do you
18   remember anything else about that conversation you had
19   with Ed Romero about the Judy Timbreza, Owen Diaz
20   interaction?
21        A.   Like I said, I -- the only thing I remember is
22   I know I e-mailed them.  He asked me what the e-mail was
23   about.  I told him they got into an altercation, racial
24   slurs were said -- that was said to Owen from Judy and I
25   sent Judy home and the ball is in your court.
```

1       **And that's where Ed -- Edward came out with,**

2   **Well, let's -- we can write him up for this situation**

3   **right here and three write-ups is a layoff and then he**

4   **gave me that paperwork and I in turn brought it to Judy**

5   **and said you need to sign this, this is what happened.**

6   **It's not saying you're going to get laid off.  It's just**

7   **a document stating that this situation happened and**

8   **you're being written up for it.**

9       Q.   So do you recall that there was some kind of

10   writing, in terms of writing up Mr. Martinez (sic) for

11   his conduct, relative to Mr. Diaz; is that right?

12       A.   There should be documents that Ed gave to me

13   that I in turn had signed.  I don't know what Ed did

14   with those documents after.

15       That's -- like I said, I -- that's above my

16   pay grade.  I don't know -- like I said, I e-mailed,

17   they had me do what I -- I had to do -- have sign the

18   documents.  I gave everything over to them.  I don't

19   know what they did, where they filed it.  There

20   was nothing ever after that, towards me.

21       Q.   Okay.

22       A.   Like, they didn't say this is what happened,

23   this is what we're doing, nothing like that.

24       **Q.   Okay.  And then do -- do you remember if Ed**

25   **Romero actually did any kind of investigation of his**

1    own, that he made you aware of?

2        A.    Not that he made me aware of, like

3    investigation-wise.   I don't know.   I thought that he

4    just got written up for it and that was the end of it.

5    Like I said, my recollection is -- I got -- I gave him

6    the documents to sign, wrote up, I then in turn gave the

7    documents back to Edward.

8        Q.    Okay.   So if I have it down right, at some

9    point after the altercation between Owen Diaz and Judy

10   Timbreza, Mr. Romero gave you some kind of write-up for

11   Mr. Timreza; is that right?

12       A.    I -- I believe he said that was Tesla's, I

13   guess, their -- their way of backing themself, when an

14   altercation like -- something -- or any altercation that

15   happens, you can write them up for it and they had a

16   three write-up rule.   After the third write-up, was a

17   termination.

18       Q.    Okay.   And so in terms of the write-up for

19   Mr. Timreza, that was given to you by Mr. Diaz (sic) and

20   then you got Mr. Timreza to sign it and then returned it

21   to Mr. Diaz; is that right?

22       A.    Correct.

23       Q.    And -- and just so we're clear --

24       A.    Mr. Diaz -- Romero.   You're talking about --

25       Q.    I'm sorry.

```
 1      Q.   Okay.

 2      A.   So -- and I tried calling him, but he didn't

 3   answer, his phone was off.

 4      Q.   Okay.  Did -- did -- and after this e-mail

 5   exchange between you and Mr. Romero, did you have any

 6   additional discussions with Mr. Romero about Judy

 7   Timbreza, that you can recall?

 8      A.   We didn't have any different discussions.  All

 9   I know is after that, Judy did not work for Tesla

10   anymore or for the staffing company, so I took it upon

11   myself to believe he got laid off.  They didn't tell me

12   what was going to happen.

13      Q.   Okay.

14      A.   So...

15      Q.   So after -- after you had the -- the

16   discussion with Mr. Romero, you don't know what happened

17   to Judy Timbreza; is that right?

18      A.   He stopped -- he wasn't working for my shift

19   anymore.  For all I know, he could have been on day

20   shift.

21      Q.   Okay.

22      A.   But I'm assuming.

23      Q.   Now, I'm going to ask you if this refreshes

24   your recollection -- actually you're not on this e-mail.

25   This one.
```

1    **factory, it doesn't stop.**

2        Q.    Sure.   I'm going to show you what's been

3    previously marked as Exhibit 34.   Exhibit 34, for the

4    record, is a one-page document Bates-stamped ODIAZ3 and

5    it's an e-mail from Diaz to Mr. Romero and to you on

6    October 17th at 6:08 p.m.

7            Do you remember Mr. Diaz complaining about

8    Ramon Martinez threatening him?

9        **A.    Yeah, I remember this.**

10       Q.    Tell me -- tell me about what you recall

11   relating to this threatening incident by Mr. Martinez

12   towards Mr. Diaz.

13       A.    I remember Owen saying that -- like he stated,

14   that Roman was waiting down at the bottom elevator,

15   where Roman wasn't supposed to be because he had nothing

16   to do with the inside team.   He had everything to do

17   with the outside bailer team and bailing those

18   cardboards and putting them on the lift.   And then in

19   turn was trying to get over -- I guess he was trying to

20   be -- show Owen that he was the boss.   But at the same

21   time he wasn't because I had control of the team -- of

22   the inside building and the outside.

23           Now, in turn, he e-mailed this situation and I

24   believe I was off this day and I got the e-mail and

25   Edward got the e-mail, but Edward dealt with it.

```
 1              I wasn't totally clear.  Were you present for
 2    that altercation?
 3         A.   I was not present for the altercation.  I came
 4    afterwards, when I was called, to come to the
 5    altercation, and I was in a different part of the
 6    warehouse.  I don't recollect where I was in the
 7    warehouse.  But like I said, I had so many different
 8    positions to fill or oversee --
 9         Q.   Okay.
10         A.   -- in that warehouse.  When I got the call, I
11    went there immediately --
12         Q.   Got it.
13         A.   -- and they were still arguing.
14         Q.   Got it.  So did you witness any parts of the
15    altercation?
16         A.   I didn't witness any part of the altercation,
17    per se.  I just showed up and they were still arguing,
18    almost face-to-face, looked like they were about to
19    fight, so I got off of my cart and went to them and
20    said, You got guys to back away from each other, you
21    know, and what happened and I logged -- I asked Owen
22    what happened, I asked Judy what happened and then there
23    were people around and I asked them what happened.
24              Owen said racial slurs were said.  The people
25    around him said Judy said racial slurs towards Owen and
```

1    **like I said, my decision at that point was, these guys**

2    **are about to fight, one of them's got to go home.  It**

3    **was like Judy was the aggressor, saying racial slurs, so**

4    **I sent him home.**

5        Q.   So you heard -- you said they were still

6    fighting when you got there?

7        **A.    They were arguing.**

8        Q.   They were arguing.

9             Did you hear any part of the argument at all?

10       **A.    I just heard them saying, Back up.  They were**

11   **in each other's face and I remember Owen saying, Back up**

12   **and Judy was saying, What are you going to do and all**

13   **that.  And it looked like they were about to fight and**

14   **that's where I intercepted and broke them apart --**

15       Q.   Okay.

16       **A.    -- and said, You go over there and you go over**

17   **there and that's in turn why --**

18       Q.   So is that everything you remember hearing

19   from --

20       **A.    Yeah.  I just remember --**

21       Q.   -- that altercation?

22       **A.    -- them saying back up to each other.  I don't**

23   **remember hearing any -- like I said, I didn't hear any**

24   **racial slurs, I didn't -- all I got was from what**

25   **happened around at that time --**

```
 1              Okay, well, my decision, you got to go home
 2    and I ended up covering the rest of the elevator shift
 3    for that day.
 4        Q.   And the other people that you spoke with, what
 5    they were doing, when --
 6        A.   So in the elevator -- it's -- it's -- there's
 7    a walkway in front of it and like I say, you see the
 8    elevator on the map, there's a cafeteria, so everybody
 9    from that line side is coming to take their break.  I
10    think it might have been on a break time, where people
11    were falling off that line and they were just overseeing
12    it.
13              I don't know who they were.  Like I said, I
14    only know the employees that I have under me.  Everybody
15    else was a blur.
16        Q.   After you sent Mr. Timreza home that night,
17    did you ever see him at Tesla again?
18        A.   I think I -- I seen him the next day.
19        Q.   Okay.
20        A.   I seen him the next day.  I didn't send -- I
21    didn't say you're -- you're home indefinitely.  I just
22    said, You got to go home for the night.
23        Q.   You mentioned that at some point he no longer
24    worked at Tesla, as far as you knew, at least on your
25    shift.
```

```
 1        A.   Yes.

 2        Q.   Did Mr. Diaz work that day?

 3        A.   Yes.

 4        Q.   Okay.  Did you work Sunday?

 5        A.   I did work Sunday.

 6        Q.   Did Mr. Timreza work that day?

 7        A.   I believe so, yeah, yeah.  He worked up until

 8   Monday.  The last day I seen him -- he -- so he had

 9   Monday, Tuesday off.

10        Q.   Okay.

11        A.   Right.  So he worked Wednesday, Thursday,

12   Friday, Saturday, Sunday.  He had Monday, Tuesday off.

13   He didn't come back -- they -- that's on Monday, they

14   told me that he's not coming back.

15        Q.   Okay.  And that's --

16        A.   Or they told me to fill the elevator position,

17   so I assumed he's not coming back.  They told me, You

18   need to find somebody on your shift that can cover the

19   elevator and that's where I assumed he's not coming back

20   and then he didn't come back that following Wednesday.

21        Q.   Okay.  When -- do you know if Mr. Diaz worked

22   the Saturday after the altercation?

23        A.   I believe he -- I believe he did because -- I

24   believe he did because I was very attentive on that

25   elevator that night, that Saturday night.  I was --
```

1                  CERTIFICATE OF DEPOSITION OFFICER

2

3          I, ANGIE M. MATERAZZI, CSR No. 13116, duly

4    authorized to administer oaths Pursuant to Section

5    2093(b) of the California Code of Civil Procedure,

6    hereby certify that the witness in the foregoing

7    deposition was by me duly sworn to testify the truth,

8    the whole truth and nothing but the truth in the

9    within-entitled cause; that said deposition was taken at

10   the time and place therein stated; that the testimony of

11   the said witness was reported by me and thereafter

12   transcribed by me or under my direction into

13   typewriting; that the foregoing is a full, complete and

14   true record of said testimony; and that the witness was

15   given an opportunity to read and correct said deposition

16   and to subscribe the same.

17          I further certify that I am not of counsel nor

18   attorney for either or any of the parties in the

19   deposition and caption named, or in any way interested

20   in the outcome of the cause named in said caption.

21          I hereby certify this copy is a true and
     exact copy of the original.
22

23                          _____
                            ANGIE M. MATERAZZI, CSR 13116
24

25   Date:  _____

# Exhibit

# 4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

DEMETRIC DI-AZ, OWEN DIAZ,
and LAMAR PATTERSON,

        Plaintiffs,

       vs.             No. 3:17-cv-06748-WHO

TESLA, INC. Dba TESLA MOTORS,
INC.; CITISTAFF SOLUTIONS,
INC.; WEST VALLEY STAFFING
GROUP; CHARTWELL STAFFING
SERVICES, INC.; and DOES 1-50,
inclusive,

        Defendants.

_____//


DEPOSITION OF EDWARD ROMERO

November 30, 2018


Reported by:

Bridget M. Mattos, CSR No. 11410

```
 1                     A P P E A R A N C E S

 2

 3    FOR PLAINTIFF:

 4                CALIFORNIA CIVIL RIGHTS LAW GROUP

 5                BY:  LAWRENCE A. ORGAN, ATTORNEY AT LAW

 6                332 San Anselmo Avenue

 7                San Anselmo, California 94960

 8                (415) 453-4740

 9

10    FOR DEFENDANT:

11                CONSTANGY, BROOKS, SMITH & PROPHETE LLP

12                BY:  BARBARA ANTONUCCI, ATTORNEY AT LAW

13                2029 Century Park East, Suite 1100

14                Los Angeles, California 90067

15                (310) 909-7775

16

17

18

19

20

21

22

23

24

25
```

1          MS. ANTONUCCI:  Yes.

2          MR. ORGAN:  Q.  So, just so you understand,

3    I'm not going to ask for your address, so I don't have

4    to send a process server to serve you for the trial.

5    The trial in this matter I think is currently set for

6    May 12th or something like that.

7          MS. ANTONUCCI:  13th.

8          MR. ORGAN:  And it's probably going to get

9    moved.

10      Q.   What we'll do is, we will send a subpoena to

11   your attorney rather than have to bother you at home.

12   Is that okay?

13      **A.   Sure.**

14      Q.   Tell me, at some point in time you worked for

15   Tesla; is that correct?

16      **A.   Correct.**

17      Q.   When was that?  When did you work at Tesla?

18      **A.   From October 2015 to August of 2017.**

19      Q.   Before October of 2015, where did you work

20   before that?

21      **A.   Let me think for a second.**

22          **I was working for Pyramid Janitorial.**

23      Q.   Have you ever had your --

24      **A.   Let me correct that.  That's Paramount.**

25      Q.   Paramount?

1       **A.    I do.**

2       Q.    Any other questions you have?

3       **A.    I do not.**

4       Q.    Now, you said that you were at Tesla from

5   October 2015 to August of 2017.  I'll just tell you,

6   I've got an email that's dated August 4th of 2015 from

7   you to Victor Quintero.

8       **A.    Yes.**

9       Q.    Is it possible that you were working at Tesla

10  before October 2015?

11      **A.    Okay, I'll clarify that.**

12      Q.    Huh?

13      **A.    I'll clarify that.**

14      Q.    Yes.

15      **A.    I got hired at Tesla as a contractor from**

16  **July 5th to October, so I was not working for Tesla; I**

17  **was working for a contractor, which was nextSource.**

18      Q.    Okay.  And what was the job that you were

19  doing from July 5th of 2015 to October of 2015?

20      **A.    I was a jani- -- I didn't mean to cut you**

21  **off.  I'm sorry.**

22      Q.    Go ahead.

23      **A.    I was a janitorial supervisor.**

24      Q.    And what did you supervise as the janitorial

25  supervisor?

1              MR. ORGAN:  Q.  As far as you know?

2        **A.    As far as I know, everyone was subject to**

3   **follow the rules on PPE.**

4        Q.   And that was true regardless of whether they

5   were a contractor or whether they were a regular Tesla

6   employee; right?

7        **A.   Yes.**

8              MS. ANTONUCCI:  Objection; calls for

9   speculation.

10              MR. ORGAN:  Q.  So in terms of, like, the

11   safety requirements, as far as you understood it and

12   as far as you were trained, it was your understanding

13   that regular Tesla employees and contractors both had

14   to follow the personal protection equipment program;

15   correct?

16        **A.   Yes.**

17              MS. ANTONUCCI:  Objection; calls for

18   speculation.

19              Can you give me one second?  Just take a

20   breath.

21              THE WITNESS:  I will.

22              MS. ANTONUCCI:  Okay.  Thank you.

23              MR. ORGAN:  Q.  Tesla also required employees

24   to wear personal protective equipment, or PPE, in the

25   factory; is that true?

1       **A.    Could you restate that again?**

2       Q.    Yeah.

3             You understood that Tesla required the

4    employees, whether they be contractors or regular

5    Tesla employees, to wear personal protective equipment

6    in the factory?

7       **A.    Yes.**

8       Q.    And Tesla supplied that personal protective

9    equipment to the employees; is that correct?

10      **A.    From what I understand, overall, yes.   I**

11   **can't speak for other departments.   Maybe they had**

12   **different guidelines because of the type of work that**

13   **they did there, so I can't speak for all of Tesla.   I**

14   **only knew a portion of it.**

15      Q.    Sure.   But in terms of the -- you were in

16   maintenance and janitorial -- or recycling and

17   janitorial.   In that area, all employees had to wear

18   PPE; is that correct?

19      **A.    Yes.**

20      Q.    And that was true whether they were an

21   employee of Tesla or whether they were an -- or a

22   contractor; correct?

23      **A.    Yes.   Because even the contractors would be**

24   **called to their attention if they were not wearing**

25   **their PPE.**

EDWARD ROMERO
November 30, 2018

Page 40

1   you had to take that training?

2       A.   No, I can't remember the specifics, other

3   than that they wanted me to take it.

4       Q.   How many employees did you oversee when you

5   were the janitorial supervisor for nextSource?

6       A.   I think it was approximately --

7           MS. ANTONUCCI:  Objection; lacks foundation.

8           THE WITNESS:  I don't remember the head

9   count.  I can give you an average head count.  It was

10  probably 35 to 40 people.  It fluctuated depending on

11  vacancies, people leaving and coming, and so on.

12          MR. ORGAN:  Q.  And in terms of your

13  supervising those 35 to 40 people when you were

14  nextSource's janitorial supervisor, could you assign

15  those people where they worked?

16      A.   Yes, because I was their direct supervisor at

17  nextSource.

18      Q.   And could you tell them how to do their job?

19      A.   I was expected to.

20      Q.   Did you have any say in how they were

21  evaluated as employees?

22      A.   Yes.

23      Q.   Could you hire them?

24      A.   No.

25      Q.   Could you fire them?

1        **A.**   **No.**

2        Q.   Could you recommend that they be hired or

3   fired?

4             MS. ANTONUCCI:   Objection; vague.

5             THE WITNESS:   I think as people came and

6   left, we -- I would only tell nextSource we have this

7   vacancy, and they would go out and hire the

8   individuals.

9             MR. ORGAN:   I see.   Okay.

10        Q.   We already talked, I think, a little bit.

11   You did monitor your employees to make sure that they

12   were following the Tesla PPE requirements; right?

13        **A.**   **Yes.**

14        Q.   And you said that you also had

15   responsibilities as a supervisor to make sure that

16   they weren't engaging in inappropriate conduct; is

17   that true?

18        **A.**   **Could you repeat that again?**

19        Q.   Yeah, let me rephrase it.

20             When you were the janitorial supervisor for

21   nextSource, you understood it to be one of your

22   supervisorial duties to ensure that employees did not

23   engage in any kind of racially discriminatory conduct;

24   right?

25        **A.**   **It was a given that we were to observe the**

1   scope of work.  Okay?  I did not supervise their

2   employees; I did not direct their employees.  Okay?  I

3   was to supervise the contractors.

4       Q.   So you worked with the contracting agencies

5   then as the --

6       A.   Their representatives.

7       Q.   And who was the nextSource representative?

8       A.   Wayne Jackson.

9       Q.   And who was City Staff?

10      A.   Oh, I don't know who they were.  It's my

11  understanding that they worked together.  I don't know

12  what type of arrangement they had, but I think

13  nextSource took the lead in bringing in people into

14  the factory.

15      Q.   So it was your understanding that nextSource

16  took the lead in bringing in employees into the

17  factory, even if they worked for a different

18  contractor, like City Staff?

19      A.   That was my understanding.  It was my

20  understanding.

21      Q.   I understand.

22      A.   I have no more knowledge of that.

23      Q.   That's all I'm asking for is your

24  understanding of stuff.

25           Okay.  Then in terms of -- do you know what

 1   terms; right?

 2        A.   **That the witnesses denied hearing any racial**

 3   **slurs being made.**

 4        Q.   But the witnesses also said that Mr. Timbreza

 5   had a tendency to kid around excessively.

 6        A.   **Correct.**

 7        Q.   Right?

 8             And you had no basis to suggest or think that

 9   Owen Diaz was lying about this, did you?

10        A.   **No.**

11             MS. ANTONUCCI:  Objection; vague.

12             MR. ORGAN:  Q.   In fact, a verbal warning was

13   issued to Mr. Timbreza, wasn't it?

14        A.   **It was for his kidding around excessively.**

15        Q.   Did it mention anything about racially

16   offensive remarks?

17        A.   **I don't think that it did.**

18        Q.   Did you see this verbal warning that --

19        A.   **I don't remember.**

20        Q.   Let me finish the question.

21        A.   **Okay.**

22        Q.   Did you see the verbal warning that was

23   issued to Mr. Timbreza?

24        A.   **I do not remember looking at it.  I can't**

25   **remember looking at it.**

```
 1    State of California            )

 2    County of Marin                )

 3

 4               I, Bridget M. Mattos, hereby certify

 5    that the witness in the foregoing deposition was by me

 6    duly sworn to testify to the truth, the whole truth

 7    and nothing but the truth in the within entitled

 8    cause; that said deposition was taken at the time and

 9    place herein named; that the deposition is a true

10    record of the witness's testimony as reported to the

11    best of my ability by me, a duly certified shorthand

12    reporter and disinterested person, and was thereafter

13    transcribed under my direction into typewriting by

14    computer; that the witness was given an opportunity to

15    read, correct and sign the deposition.

16               I further certify that I am not

17    interested in the outcome of said action nor connected

18    with or related to any of the parties in said action

19    nor to their respective counsel.

20               IN WITNESS WHEREOF, I have hereunder

21    subscribed my hand on November 30, 2018.

22               _____

23                  BRIDGET M. MATTOS, CSR NO. 11410

24

25
```

Exhibit

**5**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

DEMETRIC DI-AZ, OWEN DIAZ, and
LAMAR PATTERSON,

                    Plaintiffs,

                                 No. 3:17-cv-06748-WHO

vs.

TESLA, INC. Dba TESLA MOTORS,
INC.; CITISTAFF SOLUTIONS,
INC.; WEST VALLEY STAFFING
GROUP; CHARTWELL STAFFING
SERVICES, INC.; NEXTSOURCE,
INC.; and DOES 1-50,
inclusive,

                    Defendants.
_____/

DEPOSITION OF KEVIN McGINN

June 17, 2019

Reported by:

Bridget M. Mattos, CSR No. 11410

```
 1                A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFFS:

 4        CALIFORNIA CIVIL RIGHTS LAW GROUP
          By:  LAWRENCE A. ORGAN
 5             Attorney at Law
          332 San Anselmo Avenue
 6        San Anselmo, California 94960
          (415) 453-4740
 7        larry@civilrightsca.com

 8   FOR DEFENDANT WEST VALLEY STAFFING GROUP:
          (NOT PRESENT)
 9        PAHL & MCCAY
          By:  FENN C. HORTON, III
10             Attorney at Law
          225 West Santa Clara, Suite 1500
11        San Jose, California 95113
          (408) 286-5100
12        fhorton@pahl-mccay.com

13   FOR THE DEFENDANT NEXTSOURCE, INC.:

14        FISHER & PHILLIPS
          By:  JASON A. GELLER
15             Attorney at Law
          One Embarcadero Center, Suite 2050
16        San Francisco, California 94111
          (415) 490-9000
17        jgeller@fisherphillips.com

18

19

20

21

22

23

24

25
```

1          MR. ORGAN:   Q.   And did nextSource provide

2    any associates, or what you referred to as

3    administrative employees, to Tesla?

4          **A.   Yes.**

5          Q.   Approximately how many administrative -- do

6    you refer to them interchangeably as administrative

7    employees or associates, if I refer to those two terms

8    or --

9          **A.   Yes.**

10         Q.   What's the term that you typically use?

11         **A.   Associates.**

12         Q.   So if I refer to "associates," you'll

13   understand those are administrative employees;

14   correct?

15         **A.   Yes.**

16         Q.   So approximately how many associates did

17   nextSource provide to Tesla, starting when you started

18   in October of 2015?

19         **A.   I would estimate -- so the head count levels**

20   **will fluctuate depending on demand at the direction of**

21   **the client, but the average associate staffing would**

22   **be between 30 and 40 associates.**

23         Q.   And the contract that nextSource had with

24   Tesla included at least a provision that allowed for

25   nextSource to provide those 30 to 40 associates to

 1    one category of a managed service provider.

 2         The second category would be the selection of

 3    suppliers.  So supplier selection would be a service

 4    that nextSource provides under its agreement.

 5    Q.    And what does that mean, selection of

 6    suppliers?  What does that involve?

 7    A.    So a client such as Tesla may have needs in a

 8    certain geography or a certain, say, skill set.

 9    NextSource associates provide only a part of those

10    needs; right?  So nextSource would select suppliers

11    who would provide additional supplier-employed workers

12    at the Tesla site.

13    Q.    So in other words, nextSource would

14    coordinate with other staffing agencies to try and

15    accommodate Tesla's demand for associates at the

16    Fremont factory?

17         MR. GELLER:  Misstates his testimony.

18         Go ahead.

19         THE WITNESS:  NextSource would select

20    suppliers who would provide resources into the Tesla

21    factory at the direction of -- day-to-day direction of

22    Tesla.  However, those workers were employed; in other

23    words, they were recruited, onboarded and paid, and,

24    if needed, you know, terminated by the supplier

25    employer.

1     Q.   And then under managed service providers, in

2   terms of the functions that nextSource provided, those

3   sort of fall into two categories.

4            You would provide a platform, a technology

5   platform for associates to essentially submit

6   timesheets; is that correct?

7            MR. GELLER:   Misstates his testimony.

8            THE WITNESS:   The platform would be for the

9   supplier-employed workers to submit -- enter and

10  submit their timesheets, which would then be approved

11  by the -- well, to be approved by the client.

12           MR. ORGAN:   Okay.

13     Q.   So for example, nextSource chose CitiStaff

14  Solutions, Inc., as a provider; is that correct?

15     A.   Yes.

16     Q.   And then nextSource would establish the

17  technology platform for CitiStaff associates to, like,

18  submit their timesheets and things like that; is that

19  correct?

20     A.   Yes.

21     Q.   In addition to that, did nextSource provide

22  any additional services for CitiStaff employees, other

23  than the timekeeping function?

24     A.   No.

25     Q.   And then in addition to these sort of -- I'll

1    State of California              )

2    County of Marin                  )

3

4              I, Bridget M. Mattos, hereby certify

5    that the witness in the foregoing deposition was by me

6    duly sworn to testify to the truth, the whole truth

7    and nothing but the truth in the within entitled

8    cause; that said deposition was taken at the time and

9    place herein named; that the deposition is a true

10   record of the witness's testimony as reported to the

11   best of my ability by me, a duly certified shorthand

12   reporter and disinterested person, and was thereafter

13   transcribed under my direction into typewriting by

14   computer; that the witness was given an opportunity to

15   read, correct and sign the deposition.

16             I further certify that I am not

17   interested in the outcome of said action nor connected

18   with or related to any of the parties in said action

19   nor to their respective counsel.

20             IN WITNESS WHEREOF, I have hereunder

21   subscribed my hand on June 17, 2019.

22

23   _____
     BRIDGET M. MATTOS, CSR NO. 11410

24

25

# Exhibit

# **6**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

DEMETRIC DI-AZ, OWEN DIAZ,
and LAMAR PATTERSON,

      Plaintiffs,

      vs.                  No. 3:17-cv-06748-WHO

TESLA, INC., dba TESLA
MOTORS, INC.; CITISTAFF
SOLUTIONS, INC.; WEST VALLEY
STAFFING GROUP; CHARTWELL
STAFFING SERVICES, INC.;
and DOES 1-50, inclusive,

      Defendants.

_____//

DEPOSITION OF VICTOR QUINTERO

June 7, 2018

Reported by:

Bridget M. Mattos, CSR No. 11410

```
 1                    A P P E A R A N C E S

 2

 3   FOR PLAINTIFF:

 4             CALIFORNIA CIVIL RIGHTS LAW GROUP

 5             BY:  LAWRENCE A. ORGAN, ATTORNEY AT LAW

 6             332 San Anselmo Avenue

 7             San Anselmo, California 94960

 8             (415) 453-4740

 9

10   FOR DEFENDANT:

11             CONSTANGY, BROOKS, SMITH & PROPHETE

12             BY:  BARBARA ANTONUCCI, ATTORNEY AT LAW

13             351 California Street, Suite 200

14             San Francisco, California 94104

15             (415) 918-3006

16

17   (NOT PRESENT)

18   FOR DEFENDANT:

19             PAHL & MCCAY

20             BY:  FENN HORTON, ATTORNEY AT LAW

21             225 West Santa Clara Street, Suite 1500

22             San Jose, California 95113

23             (408) 286-5100

24

25   THE VIDEOGRAPHER:  SAJA SPEARMAN, CCRLG
```

1    talking about is -- the new-employee training is the

2    training that every employee is supposed to take that

3    goes into the Tesla factory.  It doesn't matter

4    whether they're a contractor or not; right?

5        **A.   Yes.**

6        Q.   Okay.  Now, with respect to any kind of

7    safety equipment for your contractors, let's say if

8    they needed safety goggles, could they get safety

9    goggles from the vending machines that Tesla had?

10       **A.   The supervisors and the managers had access**

11   **to the vending machines.**

12       Q.   And so if there was a -- let's say there was

13   a -- well, the elevator operators, they're working in

14   the area that's surrounded by the line; right?

15       **A.   Yes.**

16       Q.   And so they needed to wear safety goggles

17   whenever they might leave the elevator area to go,

18   let's say, to the bathroom; right?

19       **A.   Okay.**

20       Q.   The equipment, like the safety equipment like

21   the goggles, those would be provided by Tesla; right?

22           MS. ANTONUCCI:  Objection; lacks foundation.

23           THE WITNESS:  The supervisors had access to

24   the vending machines, so they could get them and hand

25   them out to the employees as needed.

1    Q.   Have you ever heard of a pickaninny?

2    **A.   Pickaninny?**

3    Q.   Pickaninny.

4    **A.   No.**

5    Q.   A pickaninny is an offensive image that was

6    used at the turn of the last century to depict

7    African-Americans in offensive ways.

8         Have you ever of that?

9    **A.   No, not that.**

10   Q.   Okay.

11   **A.   I'm not that old.**

12   Q.   No, I didn't think you were.

13        How old are you?

14   **A.   59.**

15   Q.   And what was done as a result of your

16   receiving this picture, which is the second page of

17   Exhibit 37?

18   **A.   Yeah, so Wayne and I talked about it, and**

19   **Wayne stated that he was going to -- he either had or**

20   **was going to suspend Ramon, and that -- so we talked**

21   **about whether Ramon should be terminated or not.   And**

22   **so the decision was made to give him a permanent**

23   **written warning to make sure it didn't happen again.**

24   **And I remember the decision was based on the fact that**

25   **Ramon had never exhibited this type of behavior**

VICTOR QUINTERO
June 7, 2018

1    **before, as far as like anything that was offensive to**

2    **anybody, doing anything that's offensive to anybody.**

3    **And, yeah, so that was the decision that was made at**

4    **the time.  Basically, it was Wayne's decision, and I**

5    **agreed.**

6         Q.    Okay.  So the two of you talked about it --

7         **A.    Yes.**

8         Q.    -- and decided on a course of action;

9    correct?

10        **A.    Yes.  But mainly, it was Wayne Jackson who**

11   **made the decision.  It's his employee, so...**

12        Q.    Did Wayne Jackson --

13        **A.    I can -- my perspective is I can only**

14   **recommend certain things, you know.**

15        Q.    What did you recommend should be done?

16        **A.    That I agreed with his recommendation to**

17   **suspend Ramon and give him a permanent written**

18   **warning, which basically meant that if it happened**

19   **again, he's terminated.**

20        Q.    Is Ramon Martinez still working at the Tesla

21   plant?

22        **A.    Yes.**

23        Q.    Where does he work now?

24        **A.    Same thing, recycling.**

25        Q.    But now he's got -- he's a supervisor now;

Bridget Mattos & Associates
(415) 747-8710

1    right?

2       **A.   Either he was at the time, but for sure he is**

3    **now.**

4       Q.   Is Ramon Martinez a regular Tesla employee

5    now?

6       **A.   No, he's a nextSource employee.   Supervisor.**

7       Q.   Okay.

8       **A.   And since then, he has never demonstrated any**

9    **other offensive behavior to anybody.**

10      Q.   Have you checked with the employees around to

11   find out if that's true?

12      **A.   No.   I don't talk to everybody myself, in**

13   **person.**

14      Q.   So how do you know he hadn't done anything

15   offensive to anyone else?

16      **A.   That has come to my attention.**

17      Q.   Who told you that?

18      **A.   That is what I know today.**

19      Q.   How do you know that?

20      **A.   Because since this happened, I have not**

21   **received any feedback on Ramon, as far as anybody**

22   **being offended by discrimination or harassment or**

23   **anything like that.**

24      Q.   Have you heard about the allegations that

25   there are numerous Tesla black employees who have been

```
 1    State of California            )

 2    County of Marin                )

 3

 4              I, Bridget M. Mattos, hereby certify

 5    that the witness in the foregoing deposition was by me

 6    duly sworn to testify to the truth, the whole truth

 7    and nothing but the truth in the within entitled

 8    cause; that said deposition was taken at the time and

 9    place herein named; that the deposition is a true

10    record of the witness's testimony as reported to the

11    best of my ability by me, a duly certified shorthand

12    reporter and disinterested person, and was thereafter

13    transcribed under my direction into typewriting by

14    computer; that the witness was given an opportunity to

15    read, correct and sign the deposition.

16              I further certify that I am not

17    interested in the outcome of said action nor connected

18    with or related to any of the parties in said action

19    nor to their respective counsel.

20              IN WITNESS WHEREOF, I have hereunder

21    subscribed my hand on June 7, 2018.

22              _____

23              BRIDGET M. MATTOS, CSR NO. 11410

24

25
```

# Exhibit

# 7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

DEMETRIC DI-AZ, OWEN DIAZ, and
LAMAR PATTERSON,

              Plaintiffs,

                                    No. 3:17-cv-06748-WHO

vs.

TESLA, INC. dba TESLA MOTORS,
INC.; CITISTAFF SOLUTIONS,
INC.; WEST VALLEY STAFFING
GROUP; CHARTWELL STAFFING
SERVICES, INC.; NEXTSOURCE,
INC.; and DOES 1-50,
inclusive,

              Defendants.

_____/

DEPOSITION OF WAYNE JACKSON

Friday, May 17, 2019

Reported by:  Patricia Rosinski, CSR #4555

Job No. 13571

```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFFS:

 4        CALIFORNIA CIVIL RIGHTS LAW GROUP
          By:  LAWRENCE A. ORGAN
 5             Attorney at Law
          332 San Anselmo Avenue
 6        San Anselmo, California 94960
          (415) 453-4740
 7        larry@civilrightsca.com

 8

 9   FOR THE DEFENDANT WEST VALLEY STAFFING GROUP:

10        PAHL & MCCAY
          By:  FENN C. HORTON, III
11             Attorney at Law
          225 West Santa Clara, Suite 1500
12        San Jose, California 95113
          (408) 286-5100
13        fhorton@pahl-mccay.com

14

15   FOR THE DEFENDANT NEXTSOURCE, INC.:

16        FISHER & PHILLIPS
          By:  JUAN C. ARANEDA
17             Attorney at Law
          One Embarcadero Center, Suite 2050
18        San Francisco, California 94111
          (415) 490-9000
19        jaraneda@fisherphillips.com

20

21   FOR THE DEFENDANT TESLA INC. dba TESLA MOTORS INC.:

22        SHEPPARD, MULLIN, RICHTER & HAMPTON
          By:  PATRICIA M. JENG
23             Attorney at Law
          Four Embarcadero Center, 17th Floor
24        San Francisco, California 94111
          (415) 434-9100
25        pjeng@sheppardmullin.com
```

```
 1      or less.
 2          Q.    Tell me how it worked in terms of, let's say
 3      someone raised a complaint of discrimination or
 4      harassment --
 5          A.    Uh-hum.
 6          Q.    -- what was your understanding of how such a
 7      complaint was to be handled?
 8                MR. ARANEDA:  It's vague.
 9                MR. ORGAN:  It is a little big vague.  Let me
10      try it again so it's a little clearer.
11                THE WITNESS:  Uh-hum.
12                MR. ORGAN:  Q.  Let's assume that a contract
13      employee, meaning someone who wasn't a regular Tesla
14      employee but was a contract employee who nextSource was
15      doing liaison with, what was your understanding of the
16      procedure for -- if a contract employee for one of the
17      companies that you were doing liaison for made a
18      complaint of harassment or discrimination, what was the
19      process that was supposed to be followed?
20          A.    I alerted the agency, usually one of the first
21      things I did, whatever supplier they were from.  I would
22      gather any information I could get, present that to the
23      agency, and then they would kind of conduct their
24      investigation from there.
25          Q.    When such a complaint was raised, what was your
```

1      Q.    And do you remember what the information was

2    that you got that there was a problem relative to

3    Owen Diaz?

4      **A.    There was a disparaging picture found on some**

5    **boxes.**

6      Q.    Did you get a copy of the picture?

7      **A.    I believe so.  I believe it was e-mailed to me.**

8    **Someone took a photo and e-mailed it to me.**

9      Q.    It was a picture of a pickaninny.

10           Is that correct?

11     **A.    I don't --**

12     Q.    Is that your recollection?

13           MR. ARANEDA:   Objection.

14           THE WITNESS:   I don't know if it was a --

15           MR. ARANEDA:   Vague.

16           THE WITNESS:   Yeah.  I don't know what you'd --

17    you'd call it.  It was offensive.  It was a -- I think I

18    used to call it a jigaboo or something, you know.

19           MR. ORGAN:  Right.

20           THE WITNESS:  I forget what they called it.

21           MR. ORGAN:  Q.  It was an offensive depiction

22    of an African-American.

23           Is that correct?

24     **A.    Yes, sir.**

25     Q.    And you found it offensive, right, when you saw

1    doing disciplinary or things of that nature, if I'm not

2    mistaken.

3              MR. ORGAN:  Q.  So your understanding of

4    Ed Romero's tasks, though, relative to the elevator

5    operators was that he could do scheduling, right --

6         **A.    Yes, sir.**

7         Q.    -- for them, and that Mr. Romero would at least

8    direct their work; right?

9         **A.    Yes, sir.**

10        Q.    How would discipline towards contract employees

11   take place, then, typically?

12        **A.    If there was a complaint, I would alert their**

13   **agency of the complaint.**

14        Q.    And then it was up to the agency to do the

15   disciplinary action.

16              Is that right?

17        **A.    Yes, sir.  Whether they were terminated, I**

18   **couldn't terminate.  They weren't my employees.**

19        Q.    I see.

20        **A.    Yeah.**

21        Q.    Could you recommend termination for people?

22        **A.    I mean, I can make a recommendation, but it**

23   **wasn't -- the final decision wasn't mine.**

24        Q.    I see.

25              Then in terms of Tesla's role in any kind of

```
 1     instructed by Victor."

 2         Q.    Okay.  And, then, in terms of any discussions

 3     that you had with Ed Romero, do you recall any

 4     discussions with Ed about this altercation between

 5     Mr. Diaz and Martinez?

 6         A.    I'm sure I did, but I can't recall what the

 7     details were, to be honest.

 8         Q.    What was the ultimate outcome of this

 9     investigation that you did into 126 -- into the

10     information in Exhibit 126?  Do you remember?

11         A.    I don't recall.  I believe it was a -- a

12     warning was issued.  Yeah, I believe so.

13         Q.    Was a warning issued to Mr. Martinez, then?

14         A.    I don't recall.  I think it was both in the

15     sense if I -- I can't even remember because, like I

16     said, Mr. Diaz had -- the timing is probably what's

17     throwing me off a little bit.

18               But he had a few interactions with employees

19     where he was pretty aggressive, I guess you could say,

20     and we probably verbally counseled both of them to --

21     to, you know, more or less, play nice with each other in

22     the sandbox.

23         Q.    And do you think -- if you go back to

24     Exhibit 125 where Mr. Ramon Martinez has that email on

25     October 17th at 4:56 a.m., do you recall that
```

1    Mr. Martinez said that Mr. Diaz was aggressive?

2              Because he doesn't mention that in the email.

3    He says unprofessional or --

4         **A.    Yeah, he didn't say -- yeah, I don't believe he**

5    **said that.   He just -- like I said, it was more of an**

6    **attitude issue.**

7         Q.    In terms of Ramon Martinez's complaint about

8    Mr. Diaz, it was more about Mr. Diaz's attitude, not

9    about his aggressiveness; correct?

10        **A.    More of about his professionalism, yes, sir.**

11        Q.    Mr. Martinez thought that Mr. Diaz needed to be

12   more professional with him.

13             Is that right?

14             MR. ARANEDA:  It calls for speculation.

15             THE WITNESS:  I wouldn't say with him, but more

16   with everybody.  He wasn't being professional with a few

17   people in the -- not only other contractors, but Tesla

18   employees.

19             MR. ORGAN:  Q.  Did Mr. Martinez tell you how

20   Mr. Diaz was not being professional?

21        **A.    Like I said, it was more of an attitude, so I**

22   **really couldn't -- I couldn't answer that for**

23   **Mr. Martinez, to be honest.  More or less, it was just**

24   **that Owen was getting into it with a lot of individuals.**

25        Q.    Okay.

WAYNE JACKSON
May 17, 2019

```
 1        Q.    Mr. Diaz told you he was offended --

 2        A.    -- yes, sir.

 3        Q.    -- by the drawing?

 4        A.    Yes, sir.

 5        Q.    And in terms of making sure that the impacted

 6    workers know the warning was given, how did you go about

 7    informing people that Mr. Martinez had been warned?

 8        A.    Oh, I believe we had a meeting with the crew,

 9    if I'm not mistaken.  Yeah, because I had to come up

10    there on three different occasions, once for the

11    morning, swing, and then for the grave.

12        Q.    Okay.

13        A.    To let everybody know that, you know, those

14    types of actions were unacceptable.

15        Q.    Was that documented in any way, like, an email

16    or anything like that saying, Look, I don't --

17        A.    I don't recall.  I probably did send an email

18    saying we need to meet with each team, with each group,

19    but I don't recall if I did or not.

20        Q.    And that would have been an email that would

21    have been copied to Tesla and the various agencies.

22              Is that right?

23        A.    Yes, sir.

24        Q.    Then if you got -- Item 3 here says, "Let's

25    send out an update to the workforce on the seriousness
```

Bridget Mattos & Associates
(415)747-8710

1     terminate Mr. Martinez; right?

2               MR. ARANEDA:  Objection.  Vague.

3               THE WITNESS:  Yeah, I wouldn't say that he did

4     not agree to terminate, but it was more that it wasn't

5     his employee to terminate.

6          Q.   Right.

7               But Victor could have said he can't work here

8     anymore, right, being --

9          **A.   He could have --**

10         Q.   -- from Tesla?

11         **A.   Yes.  He could have made that recommendation,**

12    **yes.**

13         Q.   And initially when you met with Victor, Victor

14    didn't even want to suspend Mr. Martinez; correct?

15              MR. ARANEDA:  Objection.  Vague.

16              THE WITNESS:  I don't believe that was the

17    case, no.  He wanted disciplinary action, yes, he did.

18              MR. ORGAN:  Q.  But the disciplinary action

19    that Victor had suggested originally was just a warning

20    letter, right, a final warning?

21         **A.   I believe so, yes.**

22         Q.   And then you had the conversation with him

23    where you said, Look, I think he should be terminated,

24    but if you're not going to terminate Mr. Martinez, you

25    should at least give a suspension; right?  That's what

WAYNE JACKSON
May 17, 2019

1    you told Mr. Quintero?

2        **A.    Yes, sir.**

3        Q.    And then Mr. Quintero -- and then I think at

4    some point, you suggested what about a suspension?

5        **A.    Uh-hum.**

6        Q.    Is that what happened?

7        **A.    Yes, sir.**

8        Q.    And then Mr. Quintero agreed to the suspension

9    and the final written warning.

10              Is that right?

11       **A.    Yes, sir.**

12       Q.    And then Mr. Quintero recommended to -- I guess

13   it was Chartwell that had Mr. Martinez; right?

14       **A.    I believe so, yes, sir.**

15       Q.    So Mr. Quintero recommended a suspension and

16   final written warning and Chartwell agreed with that;

17   right?

18       **A.    Yes, sir.**

19       Q.    Okay.

20       **A.    They actually issued that to him.  It was an**

21   **unpaid suspension.**

22       Q.    Right.  I think a three-day suspension.

23             Is that right?

24       **A.    It was either three or five; I'm not sure.  I**

25   **can't recall.**

1             Do you remember sending any kind of email about

2     what your discussion was with Mr. Diaz?

3        **A.    No, sir, I don't recall that.**

4        Q.    Did it concern you that after the altercation

5     between Mr. Diaz and Mr. Martinez in the October time

6     period and then come January you've got this jigaboo

7     drawing, did that concern you?

8             MR. ARANEDA:   Objection.

9             THE WITNESS:   Yes, sir.

10            MR. ARANEDA:   Vague.

11            MR. ORGAN:   Q.   And what did you do to act on

12    that concern that you had?

13       **A.    Like I said, I alerted the various agencies so**

14    **they could look into it a little further.**

15       Q.    And, in fact, that's why you decided, in your

16    opinion, that Mr. Martinez had been -- had crossed the

17    line at least twice such that he needed to be

18    terminated; right?

19            MR. ARANEDA:   Objection.   It misstates his

20    testimony.

21            THE WITNESS:   I wouldn't say he crossed the

22    line twice.   Once again, the first incident was more or

23    less unsubstantiated.   There were no witnesses or

24    anybody.   It was kind of my-word-against-yours type of

25    deal.

```
 1        to what was going to be done relative to the jigaboo
 2        drawing; correct?
 3                 MR. ARANEDA:  Objection.  Vague.
 4                 THE WITNESS:  I wouldn't say he was --
 5                 MS. STEVENS:  Objection.  It calls for
 6        speculation.
 7                 THE WITNESS:  -- in the investigation more so
 8        because, like I said, Chartwell kind of took over that
 9        portion.
10                 MR. ORGAN:  I see.
11                 THE WITNESS:  Yeah.
12                 MR. ORGAN:  Q.  But Mr. Quintero originally had
13        a conversation with you where he only recommended a
14        written warning; right?
15           A.    A stern warning, yes, sir.
16           Q.    Right.
17                 And then after you had a discussion with
18        Mr. Quintero where you had recommended termination of
19        Mr. Martinez, the two of you compromised on a suspension
20        and written warning; correct?
21                 MR. ARANEDA:  Objection.  It misstates his
22        testimony.
23                 THE WITNESS:  I wouldn't say --
24                 MR. ARANEDA:  It lacks foundation.
25                 THE WITNESS:  I wouldn't say "compromise"
```

WAYNE JACKSON
May 17, 2019

 1       A.     No.

 2       Q.     -- at Tesla?

 3       A.     I wouldn't have.  I wouldn't have done anything

 4    with her, no.

 5       Q.     What's your opinion of West Valley Staffing

 6    Group?

 7       A.     They're a good staffing agency, just like any

 8    other staffing agency.

 9       Q.     I'm going to ask you about a word that has

10    been -- that's come up a few times in this case, and I

11    don't want you to be offended, but I have to use the

12    word.  The word is nigger.

13       A.     Yes, sir.

14       Q.     Did you ever hear anyone use that word at

15    Tesla?

16       A.     Yes, sir.

17       Q.     In what circumstances did you hear that word

18    being said?

19       A.     There had been times where I'd actually

20    walked -- been walking through the facility, and there

21    was -- one time in particular, there was two Asian or

22    Filipino gentlemen.  And one was, like, "What's up, my

23    nigga," to the other one.  That type of thing.

24              It still was offensive, but, you know, it

25    wasn't my employee, so I didn't engage in it.

1     that?

2              Objection.  Vague.

3              THE WITNESS:  If you were to ask -- I don't

4     know if I could answer, but if you were to ask me,

5     people use it in different contexts.

6              MR. HORTON:  So you're referring to "nigga"?

7              THE WITNESS:  Yes, they use it in different

8     context.

9              MR. ORGAN:  Q.  So what you heard was "What's

10    up, my nigga"?

11        A.    Yes, sir.

12        Q.    N-I-G-G-A?

13        A.    Yes, sir.

14        Q.    Okay.

15        A.    And I will hear that often, to be honest.

16        Q.    Oh.  So you heard the A version of the N

17    word -- just so we don't have to use it again --

18        A.    Uh-hum.

19        Q.    -- the A version -- you testified about

20    nigga --

21        A.    Yes, sir.

22        Q.    -- so let's call that the A version --

23        A.    Yes.

24        Q.    -- of the N word.

25              Is that okay with you?

```
1        A.      There you go.

2        Q.      -- right?

3        A.      There you go.  It shouldn't be used at all,

4    so...

5        Q.      And where you currently work --

6        A.      Uh-hum.

7        Q.      -- do you hear the N word there?

8        A.      No, sir.

9        Q.      All right.  And other than at the Tesla

10   factory, have you ever heard the N word used by

11   non-African-Americans in the workplace?

12       A.      Yes, sir.

13       Q.      Where else?

14       A.      Places like Walmart, I've heard their

15   associates saying it to each other.

16       Q.      Okay.

17       A.      I mean, yeah, I have heard it in other places.

18       Q.      Did you hear the E-R version of the N word at

19   Tesla?

20       A.      No, I think that's even a more disparaging

21   version, so a lot of people are super offended by that.

22       Q.      Right.

23               But you didn't hear that at Tesla; right?

24       A.      No, I did not.

25       Q.      In terms of the number of times that you heard
```

1    the N word with an A at Tesla, how many times -- what's

2    your best estimate of the number times you've heard

3    that?

4         **A.    Three, four times, probably.**

5         Q.    And did you report that to HR?

6         **A.    No, sir.**

7         Q.    Why not?

8         **A.    Because of the context it was being used in**

9    **wasn't being used, at least in my opinion, to offend.**

10   **It was just people being ignorant.**

11        Q.    You do know that some African-Americans are

12   offended by any use of the N word even with the A;

13   correct?

14        **A.    And that's their preference, yes, sir.**

15        Q.    And in terms of any kind of, like, diversity

16   training on the issue of the use of the N word, were you

17   aware of any such training during the time that you were

18   at the Tesla factory?

19        **A.    I couldn't say I do know.  No, I don't know.  I**

20   **wasn't involved in their orientation or training**

21   **processes, no.**

22        Q.    But in terms of your knowledge of whether or

23   not such training occurred, you're not aware of any kind

24   of diversity training that Tesla did around the N word;

25   correct?

```
 1                    REPORTER'S CERTIFICATE

 2      STATE OF CALIFORNIA        )
                                   )  ss.
 3      COUNTY OF MARIN            )

 4             I, PATRICIA ROSINSKI, hereby certify:

 5             That I am a Certified Shorthand Reporter in the

 6      State of California.

 7             That prior to being examined, WAYNE JACKSON,

 8      the witness named in the foregoing deposition, was by me

 9      duly sworn to testify the truth, the whole truth, and

10      nothing but the truth;

11             That said deposition was taken pursuant to

12      Notice of Deposition and agreement between the parties

13      at the time and place therein set forth and was taken

14      down by me in stenotype and thereafter transcribed by me

15      by computer and that the deposition is a true record of

16      the testimony given by the witness.

17             I further certify that I am neither counsel for

18      either, nor related in any way to any party to said

19      action, nor otherwise interested in the result or

20      outcome thereof.

21             Pursuant to Federal Rules of Civil Procedure,

22      Rule 30(e), review of the transcript was not requested

23      before the completion of the deposition.
                _____
24               PATRICIA ROSINSKI, CSR No. 4555

25                       May 28, 2019
```

# Exhibit

# **8**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - - - - - - -

DEMETRIC DIAZ, OWEN DIAZ, and          )

LAMAR PATTERSON,                       )

               Plaintiffs,          )  CASE NO.

vs.                                    )  3:17-CV-06748-WHO

TESLA, INC. dba TESLA MOTORS,          )

INC.; CITISTAFF SOLUTIONS,             )

INC.; WEST VALLEY STAFFING             )

GROUP; CHARTWELL STAFFING              )

SERVICES, INC.; and DOES 1-50,         )

inclusive,                             )

              Defendants.          )

- - - - - - - - - - - - - - - - - - - -


DEPOSITION OF MICHAEL JOHN WHEELER

WEDNESDAY, JUNE 12, 2019



Reported by:

BY:  MELINDA M. SELLERS, CSR# 10686, RMR, CRC, CRR, CCRR

MICHAEL JOHN WHEELER
June 12, 2019

```
 1    APPEARANCES OF COUNSEL:

 2   FOR PLAINTIFFS:

 3       CALIFORNIA CIVIL RIGHTS LAW GROUP

 4       BY:  LAWRENCE A. ORGAN, ATTORNEY AT LAW

 5       332 San Anselmo Avenue

 6       San Anselmo, California 94960-2664

 7       Telephone:  (415) 453-4740

 8       Email:  larry@civilrightsca.com

 9

10   FOR DEFENDANT TESLA, INC.:

11       SHEPPARD MULLIN RICHTER & HAMPTON LLP

12       BY:  PATRICIA M. JENG, ATTORNEY AT LAW

13       Four Embarcadero Center, 17th Floor

14       San Francisco, California 94111-4109

15       Telephone:  (415) 434-9100

16       Email:  pjeng@sheppardmullin.com

17

18   FOR DEFENDANT NEXTSOURCE, INC.:

19       FISHER PHILLIPS LLP

20       BY:  VINCENT J. ADAMS, ATTORNEY AT LAW

21       One Embarcadero Center, Suite 2050

22       San Francisco, California 94111

23       Telephone:  (415) 490-9036

24       Email:  vadams@fisherphillips.com

25
```

Bridget Mattos & Associates
(415)747-8710

 1      **A.    Mm-hmm.**

 2      Q.    Is that right?

 3      **A.    Yes.**

 4      Q.    And I think we said that was in either the

 5    September/October 2015 time frame that you moved up

 6    to supervisor --

 7      **A.    Yes.**

 8      Q.    -- is that right?

 9            Okay.  And when you moved up to supervisor,

10    the supervisor position wasn't necessarily an

11    employee or a direct employee of Tesla, right?

12      **A.    No.**

13      Q.    And tell me what the job duties were of the

14    supervisor position?

15      **A.    So I managed the other 22 employees that**

16    **worked graveyard with me, making sure that they were**

17    **on time, they were following the protocols, safety,**

18    **lunch times were monitored, putting together plans**

19    **and working with Tesla employees to make the**

20    **recycling process better.  And then, of course,**

21    **disciplinary.**

22      Q.    Okay.  So you would do, like, performance

23    appraisals or things like that?

24      **A.    I would do all the way up to termination.**

25      Q.    As the supervisor, did you have authority

 1    to terminate --

 2        A.   Yes.

 3        Q.   -- people under you?

 4        A.   Mm-hmm.  There are a few, yes, employees

 5    that I did have to ask to leave.

 6        Q.   Okay.  And when you asked people to leave,

 7    did Tesla have input on that process?

 8        A.   Josue and that circle, upper circle, yes,

 9    they could.  For the most part anyone that I asked

10    to leave was a pretty serious offense.

11        Q.   Okay.  But in terms of terminating

12    employees, you would always consult with the -- the

13    managers from Tesla; is that right?

14        A.   No.  I would talk to -- I'd send the emails

15    out to the appropriate channels, but very rarely did

16    they respond.

17        Q.   Okay.

18        A.   A lot of those cases at Tesla are

19    cut-and-dry.  We have people that bring guns to

20    Tesla.  We have people that bring cocaine to Tesla.

21    We have people fornicating at Tesla.  So it's --

22    it's usually an easy fix.

23        Q.   Okay.  In terms of the policies that you

24    were enforcing as the supervisor in the recycling --

25    is it okay if I call it recycling?

1       A.    He was either Chartwell or Flagship.

2       Q.    Okay.   Tell me about this incident where

3  Jesus called you the N-word.

4       A.    I was -- it was pretty cut-and-dry.   I went

5  to speak with him about what had happened, to let

6  him know that it was inappropriate to take pictures

7  of other associates, but it was also inappropriate

8  to take pictures of associates while they're

9  off-duty.

10            He tried to justify his actions by saying,

11  "Well, he was sleeping.   He's not allowed to sleep."

12            I reminded him that he was not in any

13  position of authority and he needed to delete the

14  picture.

15            And then he turns around, says, you know --

16  I'm sorry.   Anyway, calls me the N-word and walks

17  off.

18            I report that to the Tesla supervisors and

19  also to Ramon Martinez, and that was that.   Nothing

20  happened.

21            Shortly after that, he was given his own

22  position as a supervisor in a different section.   So

23  still working for recycling, but just a little

24  further removed.

25       Q.    Okay.   So if I get this right, can you

1  And for him to sit there and lie to me and do what
2  he did, they just stopped talking to him after that.
3      Q.   Okay.  In terms of Ramon Martinez, did you
4  ever hear him use the N-word towards anyone else?
5      A.   No.  But as he's bilingual, whenever -- and
6  I mean this in the most non-, I don't know,
7  opinionated way.  So if you are not a Spanish
8  speaker or people aren't sure if you are, when you
9  come around and they're talking, they'll switch to
10  their native language so that you can't listen to
11  their conversations.  This happens in Tesla, outside
12  of Tesla.
13      Q.   Did you ever heard the word "negra"?  Ever
14  heard that?
15      A.   Not that I was listening, but no.
16      Q.   "Miyate," ever hear that word from them?
17      A.   I hear that all the time, so I can't tell
18  you from who I hear it from.
19      Q.   Okay.  So after you -- let's go back to the
20  conversation you had with Josue Torres about
21  complaining about Jesus calling you the N-word.
22      A.   Mm-hmm.
23      Q.   Where did that conversation take place?
24      A.   I do not remember.  I remember trying to
25  trek -- track Ramon down because we're always in

1      A.   Yes and no.  So I had a little cart that I
2  drove around, and so I wouldn't be -- I would be
3  moving too fast to really drop into a conversation.
4      Q.   I see.  Okay.
5           But it sounded like you did hear the N-word
6  used at other times in the factory --
7      A.   Yeah.
8      Q.   -- is that correct?
9      A.   During breaks or outside when they're
10 smoking or in passing, coming into the factory.
11     Q.   And do you remember who the people were who
12 you heard using the N-word?
13     A.   Everybody.  Blacks, whites, Mexican.
14     Q.   Okay.  And you said that you didn't think
15 it was used in an aggressive way?
16     A.   Not at all.
17     Q.   So when you were overhearing it, you were
18 hearing it more like, "Hey, how's my N-word," or
19 that kind of thing?
20     A.   Yeah.
21     Q.   And the N-word with an "A"?
22     A.   "A," correct.
23     Q.   Right.
24          However, N-word with an "A" can still be
25 offensive to an African-American, right?

```
 1    that -- tell me what that might mean, if you know.

 2        A.   I wouldn't say the operators were

 3    recycling.

 4        Q.   Okay.

 5        A.   They literally stayed in the elevator all

 6    day, taking Tesla products and recycling products

 7    upstairs and downstairs --

 8        Q.   Okay.

 9        A.   -- but never did they need to move anything

10    other than off or onto the elevator.  So they did

11    not break down boxes or sort or anything of that

12    caliber.

13        Q.   Okay.  Did you actually supervise Owen Diaz

14    in any way?

15        A.   I was above Owen.  I never needed to do

16    more than ask him, "Hey, can you bring something

17    down?  Can you take this up?"

18        Q.   Okay.  So you had an ability to at least

19    direct Owen's work, but you didn't have

20    responsibility for his -- for -- direct supervision

21    of his work?  Or tell me what your leadership was.

22        A.   So I was technically Owen's superior.

23        Q.   Okay.

24        A.   And if I needed him to do something, that

25    would have been the chain of command.
```

1    Q.   Okay.  I'm just gonna -- I'm gonna show you
2  what's been previously marked as --
3        **A.   The pictures --**
4    Q.   -- Exhibit 128.
5        I don't know why I only have two copies.  I
6  apologize, Counsel.  It's Exhibit 128.
7        So Exhibit 128, for the record, is a
8  four-page document Bates-stamped TESLA 20 to 24 --
9  or 23, and it's got some pictures at the end of the
10  email from Mr. Diaz to Ed Ramiro.
11        Did you ever see the email that was --
12  that's on page 22, the third page?
13        **A.   I did not see the emails --**
14    Q.   Okay.
15        **A.   -- involving this incident.  But I did see**
16  **the bale.**
17    Q.   You saw the actual --
18        **A.   I saw the actual bale.**
19    Q.   So you saw the bale of cardboard that's in
20  Exhibit 128 that has the Picaninny and the "Boo"
21  underneath, correct?
22        **A.   Yes.**
23    Q.   And tell me, what were the circumstances in
24  which you happened to see the actual picture, which
25  is -- I guess a close-up of it is the fourth page of

1    Exhibit 128, which is also TESLA 23?

2        **A.    So --**

3        Q.   Why don't you turn to the last page of

4    Exhibit 128.

5        **A.    I remember this like it was yesterday.**

6        Q.   Okay.

7        **A.    But basically I was working in a different**

8    **part of the factory.  And I get a phone call from**

9    **Owen, and he asks me if I could come over to the**

10   **elevator.**

11       Q.   Okay.  Just so we're oriented, his email,

12   Owen's email, is dated January 22 of 2016.  Does

13   that kind of coincide with when you recall Owen

14   calling you up?

15       **A.    As far as -- I mean, he called me to come**

16   **look at this.**

17       Q.   Okay.

18       **A.    As we had spoken before.  So I was his**

19   **supervisor.**

20       Q.   Okay.

21       **A.    He wanted to make sure that another**

22   **supervisor other than Ramon had seen the picture.**

23       Q.   Okay.

24       **A.    Or the drawing.**

25       Q.   Did he know that it was Ramon Martinez who

1   **called Ramon over.  And we were trying to figure**

2   **out --**

3        Q.   Let's stick with -- let's -- I want to get

4   to that.

5        **A.   Okay.**

6        Q.   But let's stick with, so when you first get

7   there, you were laughing about it, but because

8   that's your way of coping with negative things; is

9   that correct?

10       **A.   Correct.**

11       Q.   And so you didn't think it was a laughing

12  matter when you saw this picture, did you?

13       **A.   Not after -- because it was a quick**

14  **chuckle, not a full -- not a lengthy laugh.  But I**

15  **did realize it was a serious situation, so I reeled**

16  **it in pretty quickly.**

17       Q.   And Owen wasn't laughing at all, was he?

18       **A.   He was not.  Didn't even have a smile on**

19  **his face.**

20       Q.   Right.  He considered this to be -- well,

21  strike that.

22            Did he tell you how he viewed this picture

23  of the Picaninny and the "Boo" underneath?

24       **A.   He did.**

25            **And, also, I believe Owen is a little older**

1   than me, so this would strike him more specifically

2   than it would my generation of African-Americans.

3   Where they still use, you know, "spook" and things

4   of that, you know, nature.

5       Q.   Did he tell you -- did Owen tell you that

6   he thought the "Boo" was short for jigaboo?

7       A.   If he did mention it, I wasn't -- I was

8   more concerned with who, not what at that point.

9       Q.   Okay.  Okay.  But the way you perceived it

10  as an African-American male, was you still perceived

11  this as some kind of racial drawing, right?

12      A.   I perceived it as spook, "Boo" being

13  related to spook, not as jigaboo.

14      Q.   Okay.  And it was still offensive to you as

15  an African-American male, right?

16      A.   Correct.

17      Q.   Okay.  So and certainly Owen Diaz expressed

18  to you that he was offended by this drawing, right?

19      A.   Yes.

20      Q.   And then -- okay.  What happens next?

21      A.   So Ramon -- we call Ramon over.  I want to

22  say we called Ramon over to figure out what was

23  going on.  At this point -- because I don't think

24  Ramon drew it --

25      Q.   Okay.

1    **threatened to kill him?**

2        Q.   Yeah.

3        **A.   Is that the one?**

4        Q.   Yeah.

5        **A.   Okay.**

6        Q.   You were aware of that --

7        **A.   I was aware of that situation, yes.**

8        Q.   You were also aware that Owen had

9    complained previously that Ramon Martinez had

10   threatened him, correct?

11       **A.   I do not recall that.**

12       Q.   Okay.  Now, in addition to you, Owen also

13   had other supervisors; is that correct?

14       **A.   It would have been Ramon.**

15       Q.   Ramon Martinez?

16       **A.   And Israel, the swing shift.**

17       Q.   Okay.

18       **A.   Because I want to say Owen worked from**

19   **6:00 to 6:00.**

20       Q.   Yeah.

21       **A.   So he fell on to two different shifts.**

22       Q.   Okay.  So because Owen worked 6:00 to 6:00,

23   he had multiple supervisors; is that correct?

24       **A.   Correct.**

25       Q.   And those supervisors included yourself; is

```
 1      Q.    That you painted --
 2      A.    -- that I painted for the students.
 3      Q.    Okay.  So you told the students that it was
 4   a great place to work, but you really felt it was a
 5   prison?
 6      A.    I told them it's a great place to work for
 7   engineers.
 8      Q.    Okay.
 9      A.    I tell everybody that.
10      Q.    Okay.  And I -- I guess I'll circle back on
11   that.
12            Do you remember anybody who had -- anybody
13   specific who had the swastika tattoos that you were
14   testifying about?
15      A.    I don't know his name.
16      Q.    Okay.
17      A.    I remember being -- it was -- I think I
18   spoke to one of my coworkers.  I was, like, "Man, we
19   have some skinheads here."  Yeah.  But I saw him in
20   passing.  He walked by, and I was looking at his --
21   he has a full head of tattoos, not just -- not just
22   the swastika, but a full head of tattoos.  I was,
23   like, how is that even allowed here.
24      Q.    Tattoos?
25      A.    No.  Just -- well, not tattoos.  Everyone
```

1   **has tattoos, right?   But just, like, taken aback**

2   **that that was going unchecked.**

3       Q.   The tattoos on the head?

4       **A.   The vulgarity of the tattoos on the head.**

5       Q.   Did you ever complain about that to

6   anybody?

7       **A.   At this point, no, because I was well aware**

8   **of the situation I was in.**

9       Q.   Did you complain about the tattoos to

10  anybody else ever?

11      **A.   Not -- just conversation.  Just**

12  **conversation.**

13      Q.   Okay.

14      **A.   Not, like, "Oh, I can't believe this is**

15  **happening," no.**

16      Q.   Do you remember who you had conversations

17  about the head tattoos with, or any tattoos?

18      **A.   No.**

19      Q.   Okay.  Was it someone in HR?

20      **A.   No, not at all.**

21      Q.   And then you also mentioned, as part of

22  your description of Tesla as a prison, that they

23  wore pants around the ankles.

24      **A.   Yes.**

25      Q.   Would that be a problem if someone was

```
 1   STATE OF CALIFORNIA        )

 2                              )      ss

 3   COUNTY OF CALAVERAS        )

 4             I hereby certify that the witness in the

 5   foregoing deposition of MICHAEL JOHN WHEELER was by

 6   me duly sworn to testify to the truth, the whole

 7   truth, and nothing but the truth in the

 8   within-entitled cause; that said deposition was taken

 9   at the time and place herein named; that the

10   deposition is a true record of the witness's

11   testimony as reported by me, a duly certified

12   shorthand reporter and a disinterested person, and

13   was thereafter transcribed into typewriting by

14   computer.

15             I further certify that I am not interested

16   in the outcome of the said action, nor connected

17   with, nor related to any of the parties in said

18   action, nor to their respective counsel.

19             IN WITNESS WHEREOF, I have hereunto set my

20   hand this 24th day of June, 2019.

21

22

23             _____

24             MELINDA M. SELLERS, CSR NO. 10686

25             STATE OF CALIFORNIA
```

# Exhibit

# 9

JASON A. GELLER (CA SBN 168149)
jgeller@fisherphillips.com
JUAN C. ARANEDA (CA SBN 213041)
jaraneda@fisherphillips.com
VINCENT J. ADAMS (CA SBN 249696)
vadams@fisherphillips.com
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
San Francisco, California 94111
Telephone:     (415) 490-9000
Facsimile:      (415) 490-9001

Attorneys for Defendant
nextSource, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ and LAMAR PATTERSON,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; NEXTSOURCE, INC.,<br><br>                              Defendants. | Case No. 3:17-cv-06748-WHO<br>*[Removed from Alameda Superior Court, Case No. RG17878854]*<br><br>**DEFENDANT NEXTSOURCE, INC.'S RESPONSE TO PLAINTIFF OWEN DIAZ'S REQUEST FOR PRODUCTION OF DOCUMENTS – SET ONE** |

PROPOUNDING PARTY:    PLAINTIFF, OWEN DIAZ

RESPONDING PARTY:       DEFENDANT, NEXTSOURCE, INC.

SET NUMBER:                  ONE

Pursuant to Rule 34 of Federal Rules of Civil Procedure, Defendant NEXTSOURCE, INC. ("Defendant") responds to Plaintiff OWEN DIAZ's Request for Production of Documents (Set No. One) (the "Request") as follows:

## PRELIMINARY STATEMENT

1.     The responses/objections herein are made solely for the purpose of this action. Defendant reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever of its responses herein and any document or thing identified or provided in response to the Request.

2.     Defendant's response is governed by Rule 34 of Federal Rules of Civil Procedure and other applicable law, and not by the instructions, definitions or other prefatory remarks stated in the Request.

3.     The responses below are based upon information presently available to Defendant and upon documents known to be in its possession, custody or control.  No incidental or implied admissions are intended.  The fact that Defendant has responded to all or any part of any individual request or any subpart thereof should not be taken as an admission that Defendant accepts or admits the existence of any fact or facts set forth or assumed by such request or that such responses constitute admissible evidence. The fact that Defendant has responded to all or part of any individual request or subpart thereof is not intended to be and shall not be construed to be a waiver by Defendant of all or any part of any objection which is made to any individual request or subpart thereof.

Subject to the foregoing, Defendant hereby responds to specific Requests as follows:

### RESPONSE TO REQUEST FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1

Please produce PLAINTIFF's personnel file.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "personnel file." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that Plaintiff was not

1    an employee of Defendant, and this request is therefore inapplicable to Defendant.

2    **REQUEST FOR PRODUCTION NO. 2**

3        Please produce all DOCUMENTS, including COMMUNICATIONS, which RELATE

4    TO, reflect, refer, or discuss Plaintiff's job performance during his employment at the TESLA

5    FACTORY (in responding to this request, the term "COMMUNICATIONS" shall include, but

6    is not limited to, e-mails, text messages, chat logs, messages sent via mobile phone application

7    [including, though not limited to, Line, WhatsApp, or Signal], or messages and posts sent via

8    social media sites [including, though not limited to, Facebook, Twitter, Instagram, or Snapchat].)

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

10       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

11   vague and ambiguous, including, but not limited to, its use of the phrase "Plaintiff's job

12   performance during his employment at the TESLA FACTORY."  Defendant further objects to

13   this request as burdensome, oppressive and harassing to the extent that it seeks documents not

14   relevant to any party's claims or defenses or that are not proportional to the needs of this case,

15   especially given that this request seeks the production of all documents that "RELATE TO,

16   reflect, refer or discuss Plaintiff's job performance." Defendant objects to this request to the

17   extent it seeks the production of electronically stored information (including, but not limited to

18   emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in

19   proportion to the claims in this action. Defendant also objects to this request to the extent that it

20   seeks documents protected by the attorney-client privilege, the attorney work product doctrine

21   and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this

22   request to the extent it seeks the production of documents that are equally available to Plaintiff.

23   Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant

24   and this request is therefore inapplicable to Defendant.

25       Subject to and without waiving objections, Defendant responds: Subject to and without

26   waiving its objections, Defendant responds: Defendant will produce responsive documents in its

27   possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

28   and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 3**

Please produce all DOCUMENTS RELATING TO PLAINTIFF's job duties and responsibilities for each position held by PLAINTIFF at TESLA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "job duties and responsibilities for each position held by PLAINTIFF at TESLA."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents that "RELATING TO PLAINTIFF'S job duties and responsibilities." Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

**REQUEST FOR PRODUCTION NO. 4**

Please produce all DOCUMENTS RELATING TO all complaint(s) made by PLAINTIFF that he was called "Nigga" and/or "Nigger."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "all complaint(s) made by PLAINTIFF that he was called 'Nigga' and/or 'Nigger.'"  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case,

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 5**

Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU regarding Plaintiff's complaint(s) or allegation(s) that he was called "Nigga" and/or "Nigger."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted by YOU regarding Plaintiff's complaint(s) or allegations(s) that he was called 'Nigga' and/or 'Nigger.'" Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1    and in proportion to the claims in this action. Defendant also objects to this request to the extent

2    that it seeks documents protected by the attorney-client privilege, the attorney work product

3    doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to

4    this request to the extent it calls for documents that are protected from disclosure by third party

5    privacy rights under the Federal and California constitutions and applicable statutes. Defendant

6    objects to this request to the extent it seeks the production of documents that are equally available

7    to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee

8    of Defendant and this request is therefore inapplicable to Defendant.

9          Subject to and without waiving its objections, Defendant responds: Despite a diligent

10    search and reasonable inquiry Defendant, cannot comply with this request because no documents

11    in Defendant's possession, custody or control are responsive to this request. Discovery is

12    continuing, and Defendant reserves its right to supplement its response to this request.

13    **REQUEST FOR PRODUCTION NO. 6**

14          Please produce any and all statements from employees who were interviewed regarding

15    PLAINTIFF's complaint(s) or allegation(s) that he was called "Nigga" and/or "Nigger."

16    **RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

17          Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

18    vague and ambiguous, including, but not limited to, its use of the term "statements" and the

19    phrase "any and all statements from employees who were interviewed by YOU regarding

20    PLAINTIFF's complaint(s) or allegations(s) that he was called 'Nigga' and/or 'Nigger.'"

21    Defendant further objects to this request as burdensome, oppressive and harassing to the extent

22    that it seeks documents not relevant to any party's claims or defenses or that are not proportional

23    to the needs of this case. Defendant objects to this request on the grounds that it is overbroad,

24    vague and ambiguous as to time. Defendant also objects to this request to the extent that it seeks

25    documents protected by the attorney-client privilege, the attorney work product doctrine and/or

26    other privileges, protections, or doctrines of similar effect. Defendant objects to this request to

27    the extent it calls for documents that are protected from disclosure by third party privacy rights

28    under the Federal and California constitutions and applicable statutes. Defendant objects to this

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 7**

Please produce the investigator's notes that were created in response to PLAINTIFF's complaint(s) or allegation(s) that he was called "Nigga" and/or "Nigger."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes that were created in response to PLAINTIFF's complaint(s) or allegations(s) that he was called 'Nigga' and/or 'Nigger.'"  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

///

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

**REQUEST FOR PRODUCTION NO. 8**

Please produce all DOCUMENTS RELATING TO all complaint(s) made by PLAINTIFF regarding "racially offensive remarks", including (though not limited to) the "racially offensive remarks" discussed at the previously produced document Bates- stamped TESLA-0000511.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "complaint(s) made by PLAINTIFF regarding 'racially offensive remarks'." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 9**

Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU regarding Plaintiff's complaint(s) or allegation(s) regarding "racially offensive remarks", including (though not limited to) the "racially offensive remarks" discussed at the previously produced document Bates – stamped TESLA-0000511.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted by YOU regarding Plaintiff's complaint(s) or allegation(s) regarding 'racially offensive remarks'." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 10**

Please produce any and all statements from employees who were interviewed regarding PLAINTIFF's complaint(s) or allegation(s) regarding "racially offensive remarks", including (though not limited to) the "racially offensive remarks" discussed at the previously produced document Bates- stamped TESLA-0000511.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrase "PLAINTIFF's complaint(s) or allegation(s) regarding 'racially offensive remarks'." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it seeks documents that are private, confidential, business sensitive and/or protected as a trade secret. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is

1  continuing, and Defendant reserves its right to supplement its response to this request.

2  **REQUEST FOR PRODUCTION NO. 11**

3      Please produce the investigator's notes that were created in response to PLAINTIFF's

4  complaint(s) or allegation(s) regarding "racially offensive remarks", including (though not

5  limited to) the "racially offensive remarks" discussed at the previously produced document

6  Bates- stamped TESLA-0000511.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 11**

8      Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

9  vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes

10  that were created in response to PLAINTIFF's complaint(s) or allegation(s) regarding 'racially

11  offensive remarks'."  Defendant further objects to this request as burdensome, oppressive and

12  harassing to the extent that it seeks documents not relevant to any party's claims or defenses or

13  that are not proportional to the needs of this case. Defendant objects to this request on the grounds

14  that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the

15  extent it seeks the production of electronically stored information (including, but not limited to

16  emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in

17  proportion to the claims in this action. Defendant also objects to this request to the extent that it

18  seeks documents protected by the attorney-client privilege, the attorney work product doctrine

19  and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this

20  request to the extent it calls for documents that are protected from disclosure by third party

21  privacy rights under the Federal and California constitutions and applicable statutes. Defendant

22  objects to this request to the extent it seeks the production of documents that are equally available

23  to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee

24  of Defendant and this request is therefore inapplicable to Defendant.

25      Subject to and without waiving its objections, Defendant responds: Despite a diligent

26  search and reasonable inquiry Defendant, cannot comply with this request because no documents

27  in Defendant's possession, custody or control are responsive to this request. Discovery is

28  continuing, and Defendant reserves its right to supplement its response to this request.

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

**REQUEST FOR PRODUCTION NO. 12**

Please produce all DOCUMENTS RELATING TO all complaint(s) made by PLAINTIFF that he was called a "jiggaboo".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "complaint(s) made by PLAINTIFF that he was called a 'jiggaboo'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 13**

Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU

1   regarding Plaintiff's complaint(s) or allegation(s) that he was called a "jiggaboo".

2   **RESPONSE TO REQUEST FOR PRODUCTION NO. 13**

3       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

4 vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted

5 by YOU regarding Plaintiff's complaint(s) or allegation(s) that he was called a 'jiggaboo.'"

6 Defendant further objects to this request as burdensome, oppressive and harassing to the extent

7 that it seeks documents not relevant to any party's claims or defenses or that are not proportional

8 to the needs of this case, especially given that this request seeks the production of all documents

9 "RELATING TO" other documents. Defendant objects to this request on the grounds that it is

10 overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it

11 seeks the production of electronically stored information (including, but not limited to emails,

12 texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to

13 the claims in this action. Defendant also objects to this request to the extent that it seeks

14 documents protected by the attorney-client privilege, the attorney work product doctrine and/or

15 other privileges, protections, or doctrines of similar effect. Defendant objects to this request to

16 the extent it calls for documents that are protected from disclosure by third party privacy rights

17 under the Federal and California constitutions and applicable statutes. Defendant objects to this

18 request to the extent it seeks the production of documents that are equally available to Plaintiff.

19 Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant

20 and this request is therefore inapplicable to Defendant.

21       Subject to and without waiving its objections, Defendant responds: Despite a diligent

22 search and reasonable inquiry Defendant, cannot comply with this request because no documents

23 in Defendant's possession, custody or control are responsive to this request. Discovery is

24 continuing, and Defendant reserves its right to supplement its response to this request.

25   **REQUEST FOR PRODUCTION NO. 14**

26       Please produce any and all statements from employees who were interviewed regarding

27 PLAINTIFF's complaint(s) or allegation(s) that he was called a "jiggaboo".

28   **RESPONSE TO REQUEST FOR PRODUCTION NO. 14**

1    Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

2    vague and ambiguous, including, but not limited to, its use of the term "statements" and the

3    phrase "PLAINTIFF's complaint(s) or allegation(s) that he was called a 'jiggaboo'."  Defendant

4    further objects to this request as burdensome, oppressive and harassing to the extent that it seeks

5    documents not relevant to any party's claims or defenses or that are not proportional to the needs

6    of this case. Defendant objects to this request on the grounds that it is overbroad, vague and

7    ambiguous as to time. Defendant objects to this request to the extent it seeks the production of

8    electronically stored information (including, but not limited to emails, texts and meta-data) as

9    burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

10   Defendant also objects to this request to the extent that it seeks documents protected by the

11   attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

12   or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

13   that are protected from disclosure by third party privacy rights under the Federal and California

14   constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the

15   production of documents that are equally available to Plaintiff. Defendant objects to this request

16   on the grounds that Plaintiff was not an employee of Defendant and this request is therefore

17   inapplicable to Defendant.

18   Subject to and without waiving its objections, Defendant responds: Despite a diligent

19   search and reasonable inquiry Defendant, cannot comply with this request because no documents

20   in Defendant's possession, custody or control are responsive to this request. Discovery is

21   continuing, and Defendant reserves its right to supplement its response to this request.

22   **REQUEST FOR PRODUCTION NO. 15**

23   Please produce the investigator's notes that were created in response to PLAINTIFF's

24   complaint(s) or allegation(s) that he was called a "jiggaboo".

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15**

26   Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

27   vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes

28   that were created in response to PLAINTIFF's complaint(s) or allegation(s) that he was called a

'jiggaboo'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 16**

Please produce all DOCUMENTS RELATING TO all complaint(s) made by PLAINTIFF that he was called a "porch monkey".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "complaint(s) made by PLAINTIFF that he was called a 'porch monkey'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 17**

Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU regarding Plaintiff's complaint(s) or allegation(s) that he was called a "porch monkey".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted by YOU regarding Plaintiff's complaint(s) or allegation(s) that he was called a 'porch monkey'." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

## REQUEST FOR PRODUCTION NO. 18

Please produce any and all statements from employees who were interviewed regarding PLAINTIFF's complaint(s) or allegation(s) that he was called a "porch monkey".

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrase "PLAINTIFF's complaint(s) or allegation(s) that he was called a 'porch monkey'." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1   in this action.  Defendant also objects to this request to the extent that it seeks documents

2   protected by the attorney-client privilege, the attorney work product doctrine and/or other

3   privileges, protections, or doctrines of similar effect. Defendant objects to this request to the

4   extent it calls for documents that are protected from disclosure by third party privacy rights under

5   the Federal and California constitutions and applicable statutes. Defendant objects to this request

6   to the extent it seeks the production of documents that are equally available to Plaintiff.

7   Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant

8   and this request is therefore inapplicable to Defendant.

9       Subject to and without waiving its objections, Defendant responds: Despite a diligent

10  search and reasonable inquiry Defendant, cannot comply with this request because no documents

11  in Defendant's possession, custody or control are responsive to this request. Discovery is

12  continuing, and Defendant reserves its right to supplement its response to this request.

13  **REQUEST FOR PRODUCTION NO. 19**

14      Please produce the investigator's notes that were created in response to PLAINTIFF's

15  complaint(s) or allegation(s) that he was called a "porch monkey".

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19**

17      Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

18  vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes

19  that were created in response to PLAINTIFF's complaint(s) or allegation(s) that he was called a

20  'porch monkey'."  Defendant further objects to this request as burdensome, oppressive and

21  harassing to the extent that it seeks documents not relevant to any party's claims or defenses or

22  that are not proportional to the needs of this case. Defendant objects to this request on the grounds

23  that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the

24  extent it seeks the production of electronically stored information (including, but not limited to

25  emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in

26  proportion to the claims in this action.  Defendant also objects to this request to the extent that it

27  seeks documents protected by the attorney-client privilege, the attorney work product doctrine

28  and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this

18

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1   request to the extent it calls for documents that are protected from disclosure by third party

2   privacy rights under the Federal and California constitutions and applicable statutes. Defendant

3   objects to this request to the extent it seeks the production of documents that are equally available

4   to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee

5   of Defendant and this request is therefore inapplicable to Defendant.

6        Subject to and without waiving its objections, Defendant responds: Despite a diligent

7   search and reasonable inquiry Defendant, cannot comply with this request because no documents

8   in Defendant's possession, custody or control are responsive to this request. Discovery is

9   continuing, and Defendant reserves its right to supplement its response to this request.

10   **REQUEST FOR PRODUCTION NO. 20**

11        Please produce all DOCUMENTS RELATING TO all complaint(s) made by

12   PLAINTIFF that he was called a "mayate".

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 20**

14        Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

15   vague and ambiguous, including, but not limited to, its use of the phrase "complaint(s) made by

16   PLAINTIFF that he was called a 'mayate'."  Defendant further objects to this request as

17   burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any

18   party's claims or defenses or that are not proportional to the needs of this case, especially given

19   that this request seeks the production of all documents "RELATING TO" other documents.

20   Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to

21   time. Defendant objects to this request to the extent it seeks the production of electronically stored

22   information (including, but not limited to emails, texts and meta-data) as burdensome, costly and

23   oppressive in the context of and in proportion to the claims in this action.  Defendant also objects

24   to this request to the extent that it seeks documents protected by the attorney-client privilege, the

25   attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect.

26   Defendant objects to this request to the extent it calls for documents that are protected from

27   disclosure by third party privacy rights under the Federal and California constitutions and

28   applicable statutes. Defendant objects to this request to the extent it seeks the production of

documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 21**

Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU regarding Plaintiff's complaint(s) or allegation(s) that he was called a "mayate".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted by YOU regarding Plaintiff's complaint(s) or allegation(s) that he was called a 'mayate." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

1    and this request is therefore inapplicable to Defendant.

2         Subject to and without waiving its objections, Defendant responds: Despite a diligent

3    search and reasonable inquiry Defendant, cannot comply with this request because no documents

4    in Defendant's possession, custody or control are responsive to this request. Discovery is

5    continuing, and Defendant reserves its right to supplement its response to this request.

6    **REQUEST FOR PRODUCTION NO. 22**

7         Please produce any and all statements from employees who were interviewed regarding

8    PLAINTIFF's complaint(s) or allegation(s) that he was called a "mayate".

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 22**

10        Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

11   vague and ambiguous, including, but not limited to, its use of the term "statements" and the

12   phrase "PLAINTIFF's complaint(s) or allegation(s) that he was called a 'mayate'."   Defendant

13   further objects to this request as burdensome, oppressive and harassing to the extent that it seeks

14   documents not relevant to any party's claims or defenses or that are not proportional to the needs

15   of this case. Defendant objects to this request on the grounds that it is overbroad, vague and

16   ambiguous as to time. Defendant objects to this request to the extent it seeks the production of

17   electronically stored information (including, but not limited to emails, texts and meta-data) as

18   burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

19   Defendant also objects to this request to the extent that it seeks documents protected by the

20   attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

21   or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

22   that are protected from disclosure by third party privacy rights under the Federal and California

23   constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the

24   production of documents that are equally available to Plaintiff.  Defendant objects to this request

25   on the grounds that Plaintiff was not an employee of Defendant and this request is therefore

26   inapplicable to Defendant.

27        Subject to and without waiving its objections, Defendant responds: Despite a diligent

28   search and reasonable inquiry Defendant, cannot comply with this request because no documents

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

1    in Defendant's possession, custody or control are responsive to this request. Discovery is

2    continuing, and Defendant reserves its right to supplement its response to this request.

3    **REQUEST FOR PRODUCTION NO. 23**

4        Please produce the investigator's notes that were created in response to PLAINTIFF's

5    complaint(s) or allegation(s) that he was called a "mayate".

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 23**

7        Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

8    vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes

9    that were created in response to PLAINTIFF's complaint(s) or allegation(s) that he was called a

10   'mayate'."  Defendant further objects to this request as burdensome, oppressive and harassing to

11   the extent that it seeks documents not relevant to any party's claims or defenses or that are not

12   proportional to the needs of this case. Defendant objects to this request on the grounds that it is

13   overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it

14   seeks the production of electronically stored information (including, but not limited to emails,

15   texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to

16   the claims in this action.  Defendant also objects to this request to the extent that it seeks

17   documents protected by the attorney-client privilege, the attorney work product doctrine and/or

18   other privileges, protections, or doctrines of similar effect. Defendant objects to this request to

19   the extent it calls for documents that are protected from disclosure by third party privacy rights

20   under the Federal and California constitutions and applicable statutes. Defendant objects to this

21   request to the extent it seeks the production of documents that are equally available to Plaintiff.

22   Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant

23   and this request is therefore inapplicable to Defendant.

24       Subject to and without waiving its objections, Defendant responds: Despite a diligent

25   search and reasonable inquiry Defendant, cannot comply with this request because no documents

26   in Defendant's possession, custody or control are responsive to this request. Discovery is

27   continuing, and Defendant reserves its right to supplement its response to this request.

28   ///

**REQUEST FOR PRODUCTION NO. 24**

Please produce all DOCUMENTS RELATING TO all complaint(s) made by PLAINTIFF that he was called a "mono".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "complaint(s) made by PLAINTIFF that he was called a 'mono'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 25**

Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU

Case No. 3:17-cv-06748-WHO
NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

1  regarding Plaintiff's complaint(s) or allegation(s) that he was called a "mono".

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25**

3  Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

4  vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted

5  by YOU regarding Plaintiff's complaint(s) or allegation(s) that he was called a 'mono'."

6  Defendant further objects to this request as burdensome, oppressive and harassing to the extent

7  that it seeks documents not relevant to any party's claims or defenses or that are not proportional

8  to the needs of this case. Defendant objects to this request on the grounds that it is overbroad,

9  vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the

10  production of electronically stored information (including, but not limited to emails, texts and

11  meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims

12  in this action.   Defendant also objects to this request to the extent that it seeks documents

13  protected by the attorney-client privilege, the attorney work product doctrine and/or other

14  privileges, protections, or doctrines of similar effect. Defendant objects to this request to the

15  extent it calls for documents that are protected from disclosure by third party privacy rights under

16  the Federal and California constitutions and applicable statutes. Defendant objects to this request

17  to the extent it seeks the production of documents that are equally available to Plaintiff.

18  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant

19  and this request is therefore inapplicable to Defendant.

20  Subject to and without waiving its objections, Defendant responds: Despite a diligent

21  search and reasonable inquiry Defendant, cannot comply with this request because no documents

22  in Defendant's possession, custody or control are responsive to this request. Discovery is

23  continuing, and Defendant reserves its right to supplement its response to this request.

24  **REQUEST FOR PRODUCTION NO. 26**

25  Please produce any and all statements from employees who were interviewed regarding

26  PLAINTIFF's complaint(s) or allegation(s) that he was called a "mono".

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26**

28  Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrase "PLAINTIFF's complaint(s) or allegation(s) that he was called a 'mono'." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 27**

Please produce the investigator's notes that were created in response to PLAINTIFF's complaint(s) or allegation(s) that he was called a "mono".

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes that were created in response to PLAINTIFF's complaint(s) or allegation(s) that he was called a 'mono'." Defendant further objects to this request as burdensome, oppressive and harassing to

the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 28**

Please produce all DOCUMENTS RELATING TO PLAINTIFF's complaints about Judy Timbreza.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "PLAINTIFF's complaints about Judy Timbreza."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant

objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 29**

Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU regarding Plaintiff's complaints about Judy Timbreza.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted by YOU regarding Plaintiff's complaints about Judy Timbreza."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as

burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 30**

Please produce any and all statements from employees who were interviewed regarding PLAINTIFF's complaints about Judy Timbreza.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrase "PLAINTIFF's complaints about Judy Timbreza."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect.

1   Defendant objects to this request to the extent it calls for documents that are protected from

2   disclosure by third party privacy rights under the Federal and California constitutions and

3   applicable statutes. Defendant objects to this request to the extent it seeks the production of

4   documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds

5   that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to

6   Defendant.

7        Subject to and without waiving its objections, Defendant responds: Despite a diligent

8   search and reasonable inquiry Defendant, cannot comply with this request because no documents

9   in Defendant's possession, custody or control are responsive to this request. Discovery is

10  continuing, and Defendant reserves its right to supplement its response to this request.

11  **REQUEST FOR PRODUCTION NO. 31**

12       Please produce all DOCUMENTS RELATING TO PLAINTIFF's complaints about

13  Ramon Martinez.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 31**

15       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

16  vague and ambiguous, including, but not limited to, its use of the phrase "PLAINTIFF's

17  complaints about Ramon Martinez."  Defendant further objects to this request as burdensome,

18  oppressive and harassing to the extent that it seeks documents not relevant to any party's claims

19  or defenses or that are not proportional to the needs of this case, especially given that this request

20  seeks the production of all documents "RELATING TO" other documents. Defendant objects to

21  this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant

22  objects to this request to the extent it seeks the production of electronically stored information

23  (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive

24  in the context of and in proportion to the claims in this action.  Defendant also objects to this

25  request to the extent that it seeks documents protected by the attorney-client privilege, the

26  attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect.

27  Defendant objects to this request to the extent it calls for documents that are protected from

28  disclosure by third party privacy rights under the Federal and California constitutions and

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1  applicable statutes. Defendant objects to this request to the extent it seeks the production of

2  documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds

3  that neither Plaintiff nor Ramon Martinez was an employee of Defendant and this request is

4  therefore inapplicable to Defendant.

5       Subject to and without waiving objections, Defendant responds: Subject to and without

6  waiving its objections, Defendant responds: Defendant will produce responsive documents in its

7  possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

8  and Defendant reserves its right to supplement its response to this request.

9  **REQUEST FOR PRODUCTION NO. 32**

10      Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU

11 regarding Plaintiff's complaints about Ramon Martinez.

12 **RESPONSE TO REQUEST FOR PRODUCTION NO. 32**

13      Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

14 vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted

15 by YOU regarding Plaintiff's complaints about Ramon Martinez."  Defendant further objects to

16 this request as burdensome, oppressive and harassing to the extent that it seeks documents not

17 relevant to any party's claims or defenses or that are not proportional to the needs of this case,

18 especially given that this request seeks the production of all documents "RELATING TO" other

19 documents. Defendant objects to this request on the grounds that it is overbroad, vague and

20 ambiguous as to time. Defendant objects to this request to the extent it seeks the production of

21 electronically stored information (including, but not limited to emails, texts and meta-data) as

22 burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

23 Defendant also objects to this request to the extent that it seeks documents protected by the

24 attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

25 or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

26 that are protected from disclosure by third party privacy rights under the Federal and California

27 constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the

28 production of documents that are equally available to Plaintiff.  Defendant objects to this request

1   on the grounds that neither Plaintiff nor Ramon Martinez was an employee of Defendant and this

2   request is therefore inapplicable to Defendant.

3       Subject to and without waiving objections, Defendant responds: Subject to and without

4   waiving its objections, Defendant responds: Defendant will produce responsive documents in its

5   possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

6   and Defendant reserves its right to supplement its response to this request.

7   **REQUEST FOR PRODUCTION NO. 33**

8       Please produce any and all statements from employees who were interviewed regarding

9   PLAINTIFF's complaints about Ramon Martinez.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 33**

11      Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

12  vague and ambiguous, including, but not limited to, its use of the term "statements" and the

13  phrase "PLAINTIFF's complaints about Ramon Martine."  Defendant further objects to this

14  request as burdensome, oppressive and harassing to the extent that it seeks documents not

15  relevant to any party's claims or defenses or that are not proportional to the needs of this case.

16  Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to

17  time. Defendant objects to this request to the extent it seeks the production of electronically stored

18  information (including, but not limited to emails, texts and meta-data) as burdensome, costly and

19  oppressive in the context of and in proportion to the claims in this action.  Defendant also objects

20  to this request to the extent that it seeks documents protected by the attorney-client privilege, the

21  attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect.

22  Defendant objects to this request to the extent it calls for documents that are protected from

23  disclosure by third party privacy rights under the Federal and California constitutions and

24  applicable statutes. Defendant objects to this request to the extent it seeks the production of

25  documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds

26  that neither Plaintiff nor Ramon Martinez was an employee of Defendant and this request is

27  therefore inapplicable to Defendant.

28  ///

1    Subject to and without waiving objections, Defendant responds: Subject to and without

2    waiving its objections, Defendant responds: Defendant will produce responsive documents in its

3    possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

4    and Defendant reserves its right to supplement its response to this request.

5    **REQUEST FOR PRODUCTION NO. 34**

6    Please produce the investigator's notes that were created in response to PLAINTIFF's

7    complaints about Ramon Martinez.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 34**

9    Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

10   vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes

11   that were created in response to PLAINTIFF's complaints about Ramon Martinez."  Defendant

12   further objects to this request as burdensome, oppressive and harassing to the extent that it seeks

13   documents not relevant to any party's claims or defenses or that are not proportional to the needs

14   of this case. Defendant objects to this request on the grounds that it is overbroad, vague and

15   ambiguous as to time. Defendant objects to this request to the extent it seeks the production of

16   electronically stored information (including, but not limited to emails, texts and meta-data) as

17   burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

18   Defendant also objects to this request to the extent that it seeks documents protected by the

19   attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

20   or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

21   that are protected from disclosure by third party privacy rights under the Federal and California

22   constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the

23   production of documents that are equally available to Plaintiff.  Defendant objects to this request

24   on the grounds that neither Plaintiff nor Ramon Martinez was an employee of Defendant and this

25   request is therefore inapplicable to Defendant.

26   Subject to and without waiving objections, Defendant responds: Subject to and without

27   waiving its objections, Defendant responds: Defendant will produce responsive documents in its

28   possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

1  and Defendant reserves its right to supplement its response to this request.

2  **REQUEST FOR PRODUCTION NO. 35**

3  Please produce all DOCUMENTS RELATING TO PLAINTIFF's complaint about the

4  racist effigy drawing at the TESLA FACTORY.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 35**

6  Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

7  vague and ambiguous, including, but not limited to, its use of the phrase "PLAINTIFF's

8  complaint about the racist effigy drawing."   Defendant further objects to this request as

9  burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any

10  party's claims or defenses or that are not proportional to the needs of this case, especially given

11  that this request seeks the production of all documents "RELATING TO" other documents.

12  Defendant objects to this request to the extent it seeks the production of electronically stored

13  information (including, but not limited to emails, texts and meta-data) as burdensome, costly and

14  oppressive in the context of and in proportion to the claims in this action.  Defendant also objects

15  to this request to the extent that it seeks documents protected by the attorney-client privilege, the

16  attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect.

17  Defendant objects to this request to the extent it calls for documents that are protected from

18  disclosure by third party privacy rights under the Federal and California constitutions and

19  applicable statutes. Defendant objects to this request to the extent it seeks the production of

20  documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds

21  that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to

22  Defendant.

23  Subject to and without waiving objections, Defendant responds: Subject to and without

24  waiving its objections, Defendant responds: Defendant will produce responsive documents in its

25  possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

26  and Defendant reserves its right to supplement its response to this request.

27  **REQUEST FOR PRODUCTION NO. 36**

28  Please produce all DOCUMENTS RELATING TO any investigation conducted by YOU

1    regarding PLAINTIFF's complaint about the racist effigy drawing at the TESLA FACTORY.

2    **RESPONSE TO REQUEST FOR PRODUCTION NO. 36**

3        Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

4    vague and ambiguous, including, but not limited to, its use of the phrase "investigation conducted

5    by YOU regarding PLAINTIFF's complaint about the racist effigy drawing."  Defendant further

6    objects to this request as burdensome, oppressive and harassing to the extent that it seeks

7    documents not relevant to any party's claims or defenses or that are not proportional to the needs

8    of this case, especially given that this request seeks the production of all documents "RELATING

9    TO" other documents. Defendant objects to this request to the extent it seeks the production of

10   electronically stored information (including, but not limited to emails, texts and meta-data) as

11   burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

12   Defendant also objects to this request to the extent that it seeks documents protected by the

13   attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

14   or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

15   that are protected from disclosure by third party privacy rights under the Federal and California

16   constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the

17   production of documents that are equally available to Plaintiff.  Defendant objects to this request

18   on the grounds that Plaintiff was not an employee of Defendant and this request is therefore

19   inapplicable to Defendant.

20       Subject to and without waiving objections, Defendant responds: Subject to and without

21   waiving its objections, Defendant responds: Defendant will produce responsive documents in its

22   possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

23   and Defendant reserves its right to supplement its response to this request.

24   **REQUEST FOR PRODUCTION NO. 37**

25       Please produce any and all statements from employees who were interviewed regarding

26   PLAINTIFF's complaint about the racist effigy drawing at the TESLA FACTORY.

27   **RESPONSE TO REQUEST FOR PRODUCTION NO. 37**

28       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrase "PLAINTIFF's complaint about the racist effigy drawing." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff. Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving objections, Defendant responds: Subject to and without waiving its objections, Defendant responds: Defendant will produce responsive documents in its possession, custody and control, if any, to the extent they can be located. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 38**

Please produce the investigator's notes that were created in response to PLAINTIFF's complaint about the racist effigy drawing at the TESLA FACTORY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes that were created in response to PLAINTIFF's complaint about the racist effigy drawing." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional

to the needs of this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the production of documents that are equally available to Plaintiff.  Defendant objects to this request on the grounds that Plaintiff was not an employee of Defendant and this request is therefore inapplicable to Defendant.

Subject to and without waiving objections, Defendant responds: Subject to and without waiving its objections, Defendant responds: Defendant will produce responsive documents in its possession, custody and control, if any, to the extent they can be located. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 39**

Please produce any photographs or images that YOU collected when investigating PLAINTIFF's complaint about the racist effigy drawing at the TESLA FACTORY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "photographs or images that YOU collected when investigating PLAINTIFF's complaint about the racist effigy drawing." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1   attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

2   or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

3   that are protected from disclosure by third party privacy rights under the Federal and California

4   constitutions and applicable statutes. Defendant objects to this request to the extent it seeks the

5   production of documents that are equally available to Plaintiff.  Defendant objects to this request

6   on the grounds that Plaintiff was not an employee of Defendant and this request is therefore

7   inapplicable to Defendant.

8         Subject to and without waiving its objections, Defendant responds: Despite a diligent

9   search and reasonable inquiry Defendant, cannot comply with this request because no documents

10   in Defendant's possession, custody or control are responsive to this request. Discovery is

11   continuing, and Defendant reserves its right to supplement its response to this request.

12   **REQUEST FOR PRODUCTION NO. 40**

13         Please produce all DOCUMENTS RELATING TO all complaint(s) made by any

14   employee, contractor and/or agent about the use of RACIAL SLURS at the TESLA FACTORY

15   from 2012 to present. (For the purposes of responding to this request for production, the phrase

16   "RACIAL SLURS" shall include, but is not limited to, the terms "nigger", "nigga", "ninga", or

17   any variant thereof; "porch monkey"; "monkey"; or "jiggaboo". The term shall also encompass

18   equivalent words in Spanish, including, though not limited to, "negrito", "negrita", "mono", and

19   "mayate".)

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 40**

21         Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

22   vague and ambiguous, including, but not limited to, its use of the phrases "complaint(s) made by

23   any employee, contractor and/or agent about the use of RACIAL SLURS," "'nigger', 'nigga',

24   'ninga', or any variant thereof," and "equivalent words in Spanish, including, though not limited

25   to, 'negrito', 'negrita', 'mono', and 'mayate'."  Defendant further objects to this request as

26   burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any

27   party's claims or defenses or that are not proportional to the needs of this case, especially given

28   that this request seeks the production of all documents "RELATING TO" other documents and

seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 41**

Please produce any and all statements from any PERSON who was interviewed regarding complaint(s) made by any employee, contractor and/or agent about the use of RACIAL SLURS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "RACIAL SLURS" shall include, but is not limited to, the terms "nigger", "nigga", "ninga", or any variant thereof, "porch monkey"; "monkey"; or "jiggaboo". The term shall also encompass equivalent words in Spanish, including, though not limited to, "negrito", "negrita", "mono", and "mayate".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrases "complaint(s) made by any employee, contractor and/or agent about the use of RACIAL SLURS," "'nigger', 'nigga', 'ninga', or any variant thereof," and "equivalent words in Spanish, including, though not limited to, 'negrito', 'negrita', 'mono', and 'mayate'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 42**

Please produce the investigator's notes that were created in response to complaint(s) made by any employee, contractor and/or agent about the use of RACIAL SLURS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "RACIAL SLURS" shall include, but is not limited to, the terms "nigger", "nigga", "ninga", or any variant thereof; "porch monkey"; "monkey"; or "jiggaboo". The term shall also encompass equivalent words in Spanish, including, though not limited to, "negrito", "negrita", "mono", and "mayate".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "the investigator's notes that were created in response to complaint(s) made by any employee, contractor and/or agent about the use of RACIAL SLURS," "'nigger', 'nigga', 'ninga', or any variant thereof," and "equivalent words in Spanish, including, though not limited to, 'negrito', 'negrita', 'mono', and 'mayate'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 43**

Please produce any photographs, images, or videos that YOU collected in response to complaint(s) made by any employee, contractor and/or agent about the use of RACIAL SLURS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "RACIAL SLURS" shall include, but is not limited to, the terms "nigger", "nigga", "ninga", or any variant thereof; "porch monkey"; "monkey"; or "jiggaboo". The term shall also encompass equivalent words in Spanish, including, though not limited to, "negrito", "negrita", "mono", and "mayate".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "photographs, images or videos that YOU collected in response to complaint(s) made by any employee, contractor and/or agent about the use of RACIAL SLURS," "'nigger', 'nigga', 'ninga', or any variant thereof," and "equivalent words in Spanish, including, though not limited to, 'negrito', 'negrita', 'mono', and 'mayate'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1   electronically stored information (including, but not limited to emails, texts and meta-data) as

2   burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

3   Defendant also objects to this request to the extent that it seeks documents protected by the

4   attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

5   or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

6   that are protected from disclosure by third party privacy rights under the Federal and California

7   constitutions and applicable statutes.

8   **REQUEST FOR PRODUCTION NO. 44**

9       Please produce all DOCUMENTS RELATING TO any discipline imposed as a result of

10   any complaint(s) made by any employee, contractor and/or agent about the use of RACIAL

11   SLURS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this

12   request for production, the phrase "RACIAL SLURS" shall include, but is not limited to, the

13   terms "nigger", "nigga", "ninga", or any variant thereof; "porch monkey"; "monkey"; or

14   "jiggaboo". The term shall also encompass equivalent words in Spanish, including, though not

15   limited to, "negrito", "negrita", "mono", and "mayate".)

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 44**

17       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

18   vague and ambiguous, including, but not limited to, its use of the phrases "discipline imposed as

19   a result of complaint(s) made by any employee, contractor and/or agent about the use of RACIAL

20   SLURS," "'nigger', 'nigga', 'ninga', or any variant thereof," and "equivalent words in Spanish,

21   including, though not limited to, 'negrito', 'negrita', 'mono', and 'mayate'." Defendant further

22   objects to this request as burdensome, oppressive and harassing to the extent that it seeks

23   documents not relevant to any party's claims or defenses or that are not proportional to the needs

24   of this case, especially given that this request seeks the production of all documents "RELATING

25   TO" other documents and seeks the production of documents unrelated to Plaintiff and during

26   periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence

27   that is not relevant to the claims and defenses in this case. Defendant objects to this request to

28   the extent it seeks the production of electronically stored information (including, but not limited

to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 45**

Please produce all DOCUMENTS RELATING TO all complaint(s) made any employee, contractor and/or agent about SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS" shall include, but is not limited to, symbols such as a swastika, flaming cross, "88", the confederate flag, twin lightning bolts, the "iron cross", or the "Nazi eagle"; and slogans including "white power" or "fourteen words".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "complaint(s) made any employee, contractor and/or agent about SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS," "'SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS' shall include, but is not limited to, symbols such as a swastika, flaming cross, '88', the confederate flag, twin lightning bolts, the 'iron cross', or the 'Nazi eagle'," and "slogans including 'white power' or 'fourteen words'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to

1  the extent it seeks the production of electronically stored information (including, but not limited

2  to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in

3  proportion to the claims in this action.  Defendant also objects to this request to the extent that it

4  seeks documents protected by the attorney-client privilege, the attorney work product doctrine

5  and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this

6  request to the extent it calls for documents that are protected from disclosure by third party

7  privacy rights under the Federal and California constitutions and applicable statutes.

8  **REQUEST FOR PRODUCTION NO. 46**

9  Please produce any and all statements from any PERSON who was interviewed regarding

10  complaint(s) made by any employee, contractor and/or agent about SYMBOLS AND SLOGANS

11  OF WHITE SUPREMACIST HATE GROUPS at the TESLA FACTORY from 2012 to present.

12  (For the purposes of responding to this request for production, the phrase "SYMBOLS AND

13  SLOGANS OF WHITE SUPREMACIST HATE GROUPS" shall include, but is not limited to,

14  symbols such as a swastika, flaming cross, "88", the confederate flag, twin lightning bolts, the

15  "iron cross", or the "Nazi eagle"; and slogans including "white power" or "fourteen words".)

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 46**

17  Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

18  vague and ambiguous, including, but not limited to, its use of the term "statements" and the

19  phrases "complaint(s) made any employee, contractor and/or agent about SYMBOLS AND

20  SLOGANS OF WHITE SUPREMACIST HATE GROUPS," "'SYMBOLS AND SLOGANS

21  OF WHITE SUPREMACIST HATE GROUPS' shall include, but is not limited to, symbols such

22  as a swastika, flaming cross, '88', the confederate flag, twin lightning bolts, the 'iron cross', or

23  the 'Nazi eagle'," and "slogans including 'white power' or 'fourteen words'."  Defendant further

24  objects to this request as burdensome, oppressive and harassing to the extent that it seeks

25  documents not relevant to any party's claims or defenses or that are not proportional to the needs

26  of this case, especially given that this request seeks the production of documents unrelated to

27  Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly

28  seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 47**

Please produce the investigator's notes that were created in response to complaint(s) made by any employee, contractor and/or agent about SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS" shall include, but is not limited to, symbols such as a swastika, flaming cross, "88", the confederate flag, twin lightning bolts, the "iron cross", or the "Nazi eagle"; and slogans including "white power" or "fourteen words".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "the investigator's notes that were created in response to complaint(s) made any employee, contractor and/or agent about SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS," "'SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS' shall include, but is not limited to, symbols such as a swastika, flaming cross, '88', the confederate flag, twin lightning bolts, the 'iron cross', or the 'Nazi eagle'," and "slogans including 'white power' or 'fourteen words'." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The

request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 48**

Please produce any photographs, videos, or images that YOU collected when investigating complaint(s) made by any employee, contractor and/or agent about SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS" shall include, but is not limited to, symbols such as a swastika, flaming cross, "88", the confederate flag, twin lightning bolts, the "iron cross", or the "Nazi eagle"; and slogans including "white power" or "fourteen words".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "photographs, videos or images that YOU collected when investigating complaint(s) made any employee, contractor and/or agent about SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS," "'SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS' shall include, but is not limited to, symbols such as a swastika, flaming cross, '88', the confederate flag, twin lightning bolts, the 'iron cross', or the 'Nazi eagle'," and "slogans including 'white power' or 'fourteen words'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any

party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 49**

Please produce all DOCUMENTS RELATING TO any discipline imposed as a result of any complaint(s) made by any employee, contractor and/or agent about SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS" shall include, but is not limited to, symbols such as a swastika, flaming cross, "88", the confederate flag, twin lightning bolts, the "iron cross", or the "Nazi eagle"; and slogans including "white power" or "fourteen words".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "discipline imposed as a result of complaint(s) made any employee, contractor and/or agent about SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS," "'SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS' shall include, but is not limited to, symbols such as a swastika, flaming cross, '88', the confederate flag, twin lightning bolts, the 'iron cross', or the 'Nazi eagle'," and "slogans including 'white power' or 'fourteen words'."  Defendant further

objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 50**

Please produce all DOCUMENTS RELATING TO all complaint(s) made any employee, contractor and/or agent regarding references to slavery or slave labor at the TESLA FACTORY from 2012 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "complaint(s) made any employee, contractor and/or agent regarding references to slavery or slave labor."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 51**

Please produce any and all statements from any PERSON who was interviewed regarding complaint(s) made by any employee, contractor and/or agent regarding references to slavery or slave labor at the TESLA FACTORY from 2012 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrase "complaint(s) made any employee, contractor and/or agent regarding references to slavery or slave labor."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

///

**REQUEST FOR PRODUCTION NO. 52**

Please produce the investigator's notes that were created in response to complaint(s) made by any employee, contractor and/or agent regarding references to slavery or slave labor at the TESLA FACTORY from 2012 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes that were created in response to complaint(s) made any employee, contractor and/or agent regarding references to slavery or slave labor."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 53**

Please produce any photographs, videos, or images that YOU collected when investigating complaint(s) made by any employee, contractor and/or agent regarding references to slavery or slave labor at the TESLA FACTORY from 2012 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "photographs, videos,

or images that YOU collected when investigating complaint(s) made any employee, contractor and/or agent regarding references to slavery or slave labor." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 54**

Please produce all DOCUMENTS RELATING TO any discipline imposed as a result of any complaint(s) made by any employee, contractor and/or agent regarding references to slavery or slave labor at the TESLA FACTORY from 2012 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "discipline imposed as a result of any complaint(s) made any employee, contractor and/or agent regarding references to slavery or slave labor." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 55**

Please produce all DOCUMENTS RELATING TO all complaint(s) made any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "RACIALLY OFFENSIVE DRAWINGS OR ARTWORK" shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; "88"; the confederate flag; twin lightning bolts; the "iron cross"; the "Nazi eagle"; and "pickanniny"- or "golliwog"-style depictions of Black individuals.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "complaint(s) made any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK," "'RACIALLY OFFENSIVE DRAWINGS OR ARTWORK' shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; '88'; the confederate flag; twin lightning bolts; the 'iron cross'; the 'Nazi eagle'," and "'pickanniny'- or 'golliwog'-style depictions of Black individuals." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

of all documents "RELATING TO" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 56**

Please produce any and all statements from any PERSON who was interviewed regarding complaint(s) made by any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "RACIALLY OFFENSIVE DRAWINGS OR ARTWORK" shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; "88"; the confederate flag; twin lightning bolts; the "iron cross"; the "Nazi eagle"; and "pickanniny"- or "golliwog"-style depictions of Black individuals.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrases "complaint(s) made any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK," "'RACIALLY OFFENSIVE DRAWINGS OR ARTWORK' shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; '88'; the confederate flag; twin lightning bolts; the 'iron cross'; the 'Nazi eagle'," and "'pickanniny'- or 'golliwog'-style depictions of

Black individuals."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 57**

Please produce the investigator's notes that were created in response to complaint(s) made by any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "RACIALLY OFFENSIVE DRAWINGS OR ARTWORK" shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; "88"; the confederate flag; twin lightning bolts; the "iron cross"; the "Nazi eagle"; and "pickanniny"- or "golliwog"-style depictions of Black individuals.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "the investigator's notes that were created in response to complaint(s) made any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK," "'RACIALLY OFFENSIVE DRAWINGS OR ARTWORK' shall include, though is not limited to, drawings or

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

artwork depicting one or more of the following items: noose; swastika; flaming cross; '88'; the confederate flag; twin lightning bolts; the 'iron cross'; the 'Nazi eagle'," and "'pickanniny'- or 'golliwog'-style depictions of Black individuals."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 58**

Please produce any photographs, videos, or images that YOU collected when investigating complaint(s) made by any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "RACIALLY OFFENSIVE DRAWINGS OR ARTWORK" shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; "88"; the confederate flag; twin lightning bolts; the "iron cross"; the "Nazi eagle"; and "pickanniny"- or "golliwog"-style depictions of Black individuals.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "photographs, videos or images that YOU collected when investigating complaint(s) made any employee, contractor

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK," "'RACIALLY OFFENSIVE DRAWINGS OR ARTWORK' shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; '88'; the confederate flag; twin lightning bolts; the 'iron cross'; the 'Nazi eagle'," and "'pickanniny'- or 'golliwog'-style depictions of Black individuals."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 59**

Please produce all DOCUMENTS RELATING TO any discipline imposed as a result of any complaint(s) made by any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "RACIALLY OFFENSIVE DRAWINGS OR ARTWORK" shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; "88"; the confederate flag; twin lightning bolts; the "iron cross"; the "Nazi eagle"; and "pickanniny"- or "golliwog"-style depictions of Black individuals.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

vague and ambiguous, including, but not limited to, its use of the phrases "discipline imposed as a result of any complaint(s) made any employee, contractor and/or agent regarding RACIALLY OFFENSIVE DRAWINGS OR ARTWORK," "'RACIALLY OFFENSIVE DRAWINGS OR ARTWORK' shall include, though is not limited to, drawings or artwork depicting one or more of the following items: noose; swastika; flaming cross; '88'; the confederate flag; twin lightning bolts; the 'iron cross'; the 'Nazi eagle'," and "'pickaniny'- or 'golliwog'-style depictions of Black individuals."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 60**

Please produce all DOCUMENTS RELATING TO all complaint(s) made any employee, contractor and/or agent regarding racial harassment at the TESLA FACTORY from 2012 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "complaint(s) made any employee, contractor and/or agent regarding racial harassment."  Defendant further objects to

this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 61**

Please produce any and all statements from any PERSON who was interviewed regarding complaint(s) made by any employee, contractor and/or agent regarding racial harassment at the TESLA FACTORY from 2012 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the term "statements" and the phrase "complaint(s) made any employee, contractor and/or agent regarding racial harassment." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1    oppressive in the context of and in proportion to the claims in this action.  Defendant also objects

2    to this request to the extent that it seeks documents protected by the attorney-client privilege, the

3    attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect.

4    Defendant objects to this request to the extent it calls for documents that are protected from

5    disclosure by third party privacy rights under the Federal and California constitutions and

6    applicable statutes.

7    **REQUEST FOR PRODUCTION NO. 62**

8        Please produce the investigator's notes that were created in response to complaint(s)

9    made by any employee, contractor and/or agent regarding racial harassment at the TESLA

10   FACTORY from 2012 to present.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 62**

12       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

13   vague and ambiguous, including, but not limited to, its use of the phrase "the investigator's notes

14   that were created in response to complaint(s) made any employee, contractor and/or agent

15   regarding racial harassment." Defendant further objects to this request as burdensome, oppressive

16   and harassing to the extent that it seeks documents not relevant to any party's claims or defenses

17   or that are not proportional to the needs of this case, especially given that this request seeks the

18   production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at

19   Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and

20   defenses in this case. Defendant objects to this request to the extent it seeks the production of

21   electronically stored information (including, but not limited to emails, texts and meta-data) as

22   burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

23   Defendant also objects to this request to the extent that it seeks documents protected by the

24   attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

25   or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

26   that are protected from disclosure by third party privacy rights under the Federal and California

27   constitutions and applicable statutes.

28   *///*

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

**REQUEST FOR PRODUCTION NO. 63**

Please produce all DOCUMENTS RELATING TO any discipline imposed as a result of any complaint(s) made by any employee, contractor and/or agent regarding racial harassment at the TESLA FACTORY from 2012 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "discipline imposed as a result of any complaint(s) made any employee, contractor and/or agent regarding racial harassment." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "RELATING TO" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 64**

Please produce all DOCUMENTS detailing EXTERNAL COMPLAINTS of harassment based on race or color by any employee, contractor and/or agent at the TESLA FACTORY since 2012. (In responding to this request, the term EXTERNAL COMPLAINT encompasses complaints made to a governmental or administrative entity, including, though not limited to, state and federal courts; the EEOC; the DFEH; the DIR; the DLSE; OSHA; and CAL-OSHA.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "DOCUMENTS detailing EXTERNAL COMPLAINTS of harassment based on race or color by any employee, contractor and/or agent," and "EXTERNAL COMPLAINT encompasses complaints made to a governmental or administrative entity, including, though not limited to, state and federal courts; the EEOC; the DFEH; the DIR; the DLSE; OSHA; and CAL-OSHA."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of all documents "detailing" other documents and seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes. Defendant objects to this request on the grounds that it seeks the production of documents that are equally available to Plaintiff as a matter of public record.

**REQUEST FOR PRODUCTION NO. 65**

Please produce the entire investigation files for any EXTERNAL COMPLAINTS of harassment based on race or color by any employee, contractor and/or agent at the TESLA FACTORY since 2012. (In responding to this request, the term EXTERNAL COMPLAINT encompasses complaints made to a governmental or administrative entity, including, though not limited to, state and federal courts; the EEOC; the DFEH; the DIR; the DLSE; OSHA; and CAL-

1    OSHA.)

2    **RESPONSE TO REQUEST FOR PRODUCTION NO. 65**

3        Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

4    vague and ambiguous, including, but not limited to, its use of the phrases "entire investigation

5    files for any EXTERNAL COMPLAINTS of harassment based on race or color by any employee,

6    contractor and/or agent," and "EXTERNAL COMPLAINT encompasses complaints made to a

7    governmental or administrative entity, including, though not limited to, state and federal courts;

8    the EEOC; the DFEH; the DIR; the DLSE; OSHA; and CAL-OSHA."  Defendant further objects

9    to this request as burdensome, oppressive and harassing to the extent that it seeks documents not

10   relevant to any party's claims or defenses or that are not proportional to the needs of this case,

11   especially given that this request seeks the production of documents unrelated to Plaintiff and

12   during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too"

13   evidence that is not relevant to the claims and defenses in this case. Defendant objects to this

14   request to the extent it seeks the production of electronically stored information (including, but

15   not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context

16   of and in proportion to the claims in this action.  Defendant also objects to this request to the

17   extent that it seeks documents protected by the attorney-client privilege, the attorney work

18   product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant

19   objects to this request to the extent it calls for documents that are protected from disclosure by

20   third party privacy rights under the Federal and California constitutions and applicable statutes.

21   Defendant objects to this request on the grounds that it seeks the production of documents that

22   are equally available to Plaintiff as a matter of public record.

23   **REQUEST FOR PRODUCTION NO. 66**

24       Please produce documents that reflect, evidence, or describe all of YOUR race

25   harassment or discrimination policies in effect at the TESLA FACTORY from 2010 to present.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 66**

27       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

28   vague and ambiguous, including, but not limited to, its use of the phrase "race harassment or

61    Case No. 3:17-cv-06748-WHO

1   discrimination policies in effect at the TESLA FACTORY."  Defendant further objects to this

2   request as burdensome, oppressive and harassing to the extent that it seeks documents not

3   relevant to any party's claims or defenses or that are not proportional to the needs of this case,

4   especially given that this request seeks the production of "documents that reflect, evidence, or

5   describe" other documents and the production of documents during periods when Plaintiff did

6   not work at Tesla. Defendant objects to this request to the extent it seeks the production of

7   electronically stored information (including, but not limited to emails, texts and meta-data) as

8   burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

9   Defendant also objects to this request to the extent that it seeks documents protected by the

10  attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

11  or doctrines of similar effect. Defendant objects to this request to the extent it seeks documents

12  that are private, confidential, business sensitive and/or protected as a trade secret.

13          Subject to and without waiving objections, Defendant responds: Subject to and without

14  waiving its objections, Defendant responds: Defendant will produce responsive documents in its

15  possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

16  and Defendant reserves its right to supplement its response to this request.

17  **REQUEST FOR PRODUCTION NO. 67**

18          Please produce all DOCUMENTS that discuss the procedures YOU instruct YOUR

19  employees to follow when reporting harassment in the workplace at the TESLA FACTORY from

20  2010 to present.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 67**

22          Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

23  vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS that

24  discuss the procedures YOU instruct YOUR employees to follow when reporting harassment in

25  the workplace at the TESLA FACTORY."  Defendant further objects to this request as

26  burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any

27  party's claims or defenses or that are not proportional to the needs of this case, especially given

28  that this request seeks the production of documents that "discuss" other documents and seeks the

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

production of documents during periods when Plaintiff did not work at Tesla. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect.

Subject to and without waiving objections, Defendant responds: Subject to and without waiving its objections, Defendant responds: Defendant will produce responsive documents in its possession, custody and control, if any, to the extent they can be located. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 68**

Please produce all DOCUMENTS that discuss the policies and procedures that YOUR employees follow when investigating claims of harassment at the TESLA FACTORY from 2012 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS that discuss the policies and procedures that YOUR employees follow when investigating claims of harassment at the TESLA FACTORY."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents that "discuss" other documents and seeks the production of documents during periods when Plaintiff did not work at Tesla. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

this request to the extent it seeks documents that are private, confidential, business sensitive and/or protected as a trade secret.

Subject to and without waiving objections, Defendant responds: Subject to and without waiving its objections, Defendant responds: Defendant will produce responsive documents in its possession, custody and control, if any, to the extent they can be located. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 69**

Please produce all DOCUMENTS that constitute the policies, procedures, checklists or manuals that are used or relied on by YOUR employees when investigating complaints of race harassment or discrimination at the TESLA FACTORY from 2010 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS that constitute the policies, procedures, checklists or manuals that are used or relied on by YOUR employees when investigating complaints of race harassment or discrimination at the TESLA FACTORY." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents during periods when Plaintiff did not work at Tesla. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it seeks documents that are private, confidential, business sensitive and/or protected as a trade secret.

Subject to and without waiving objections, Defendant responds: Subject to and without waiving its objections, Defendant responds: Defendant will produce responsive documents in its

1   possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

2   and Defendant reserves its right to supplement its response to this request.

3   **REQUEST FOR PRODUCTION NO. 70**

4          Please produce all pamphlets RELATED TO harassment that YOU have used or

5   distributed to employees, agents or contractors that work at the TESLA FACTORY between

6   2010 and the present.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 70**

8          Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

9   vague and ambiguous, including, but not limited to, its use of the phrase "pamphlets RELATED

10  TO harassment that YOU have used or distributed to employees, agents or contractors that work

11  at the TESLA FACTORY."  Defendant further objects to this request as burdensome, oppressive

12  and harassing to the extent that it seeks documents not relevant to any party's claims or defenses

13  or that are not proportional to the needs of this case, especially given that this request seeks the

14  production of documents during periods when Plaintiff did not work at Tesla. Defendant objects

15  to this request to the extent it seeks the production of electronically stored information (including,

16  but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the

17  context of and in proportion to the claims in this action.

18         Subject to and without waiving objections, Defendant responds: Subject to and without

19  waiving its objections, Defendant responds: Defendant will produce responsive documents in its

20  possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

21  and Defendant reserves its right to supplement its response to this request.

22  **REQUEST FOR PRODUCTION NO. 71**

23         Please produce all policies on harassment that YOU have posted from 2010 to the present

24  in the TESLA FACTORY.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 71**

26         Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

27  vague and ambiguous, including, but not limited to, its use of the phrase "policies on harassment

28  that YOU have posted from 2010 to the present in the TESLA FACTORY."  Defendant further

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents during periods when Plaintiff did not work at Tesla. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

Subject to and without waiving its objections, Defendant responds: Despite a diligent search and reasonable inquiry Defendant, cannot comply with this request because no documents in Defendant's possession, custody or control are responsive to this request. Discovery is continuing, and Defendant reserves its right to supplement its response to this request.

**REQUEST FOR PRODUCTION NO. 72**

Please produce all DOCUMENTS, materials and videotapes RELATED TO harassment training YOU have conducted or facilitated for employees, agents or contractors at the TESLA FACTORY from 2010 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS, materials and videotapes RELATED TO harassment training YOU have conducted or facilitated for employees, agents or contractors at the TESLA FACTORY."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents during periods when Plaintiff did not work at Tesla. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1   or doctrines of similar effect. Defendant objects to this request to the extent it seeks documents

2   that are private, confidential, business sensitive and/or protected as a trade secret.

3           Subject to and without waiving its objections, Defendant responds: Despite a diligent

4   search and reasonable inquiry Defendant, cannot comply with this request because no documents

5   in Defendant's possession, custody or control are responsive to this request. Discovery is

6   continuing, and Defendant reserves its right to supplement its response to this request.

7   **REQUEST FOR PRODUCTION NO. 73**

8           Please provide all DOCUMENTS related to any complaints made about Ramon Martinez

9   that involved harassment or discrimination based on race or color.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 73**

11          Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

12  vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS related

13  to any complaints made about Ramon Martinez that involved harassment or discrimination based

14  on race or color."  Defendant further objects to this request as burdensome, oppressive and

15  harassing to the extent that it seeks documents not relevant to any party's claims or defenses or

16  that are not proportional to the needs of this case, especially given that this request seeks the

17  production of all documents "related to" other documents. Defendant objects to this request on

18  the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this

19  request to the extent it seeks the production of electronically stored information (including, but

20  not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context

21  of and in proportion to the claims in this action.  Defendant also objects to this request to the

22  extent that it seeks documents protected by the attorney-client privilege, the attorney work

23  product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant

24  objects to this request to the extent it calls for documents that are protected from disclosure by

25  third party privacy rights under the Federal and California constitutions and applicable statutes.

26  Defendant objects to this request on the grounds that Ramon Martinez was not an employee of

27  Defendant and this request is therefore inapplicable to Defendant.

28  ///

**REQUEST FOR PRODUCTION NO. 74**

Please produce DOCUMENTS sufficient to describe the business relationship between YOU and Defendant Tesla, Inc. This request includes, though is not limited to, contracts and memoranda of understanding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS sufficient to describe the business relationship between YOU and Defendant Tesla, Inc." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it seeks documents that are private, confidential, business sensitive and/or protected as a trade secret.

**REQUEST FOR PRODUCTION NO. 75**

Please produce DOCUMENTS sufficient to describe the business relationship between YOU and Defendant Citistaff Solutions, Inc. This request includes, though is not limited to, contracts and memoranda of understanding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS sufficient to describe the business relationship between YOU and Defendant Citistaff Solutions, Inc."  Defendant further objects to this request as burdensome, oppressive and harassing to the

extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it seeks documents that are private, confidential, business sensitive and/or protected as a trade secret.

**REQUEST FOR PRODUCTION NO. 76**

Please produce DOCUMENTS sufficient to describe the business relationship between YOU and Defendant West Valley Engineering, Inc. This request includes, though is not limited to, contracts and memoranda of understanding.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS sufficient to describe the business relationship between YOU and Defendant West Valley Engineering, Inc."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it seeks documents that are private, confidential, business sensitive and/or

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1    protected as a trade secret.

2    **REQUEST FOR PRODUCTION NO. 77**

3         Please produce all DOCUMENTS, including, but not limited to e-mails, text messages

4    and instant messages sent or received by Wayne Jackson regarding the use of RACIAL SLURS

5    at the TESLA FACTORY. (For the purposes of responding to this request for production, the

6    phrase "RACIAL SLURS" shall include, but is not limited to, the terms "nigger", "nigga",

7    "ninga", or any variant thereof; "porch monkey"; "monkey"; or "jiggaboo". The term shall also

8    encompass equivalent words in Spanish, including, though not limited to, "negrito", "negrita",

9    "mono", and "mayate".)

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 77**

11        Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

12   vague and ambiguous, including, but not limited to, its use of the phrases "DOCUMENTS …

13   regarding the use of RACIAL SLURS," "'nigger', 'nigga', 'ninga', or any variant thereof," and

14   "equivalent words in Spanish, including, though not limited to, 'negrito', 'negrita', 'mono', and

15   'mayate'."  Defendant further objects to this request as burdensome, oppressive and harassing to

16   the extent that it seeks documents not relevant to any party's claims or defenses or that are not

17   proportional to the needs of this case, especially given that this request seeks the production of

18   documents unrelated to Plaintiff. Defendant objects to this request on the grounds that it is

19   overbroad, vague and ambiguous as to time. The request impermissibly seeks "me too" evidence

20   that is not relevant to the claims and defenses in this case. Defendant objects to this request to

21   the extent it seeks the production of electronically stored information (including, but not limited

22   to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in

23   proportion to the claims in this action.  Defendant also objects to this request to the extent that it

24   seeks documents protected by the attorney-client privilege, the attorney work product doctrine

25   and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this

26   request to the extent it calls for documents that are protected from disclosure by third party

27   privacy rights under the Federal and California constitutions and applicable statutes.

28   ///

1   **REQUEST FOR PRODUCTION NO. 78**

2       Please produce all DOCUMENTS, including, but not limited to e-mails, text messages

3   and instant messages sent or received by Wayne Jackson regarding PLAINTIFF OWEN DIAZ.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 78**

5       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

6   vague and ambiguous, including, but not limited to, its use of the phrases "DOCUMENTS …

7   regarding PLAINTIFF OWEN DIAZ."  Defendant further objects to this request as burdensome,

8   oppressive and harassing to the extent that it seeks documents not relevant to any party's claims

9   or defenses or that are not proportional to the needs of this case. Defendant objects to this request

10  on the grounds that it is overbroad, vague and ambiguous as to time. Defendant objects to this

11  request to the extent it seeks the production of electronically stored information (including, but

12  not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context

13  of and in proportion to the claims in this action.  Defendant also objects to this request to the

14  extent that it seeks documents protected by the attorney-client privilege, the attorney work

15  product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant

16  objects to this request to the extent it calls for documents that are protected from disclosure by

17  third party privacy rights under the Federal and California constitutions and applicable statutes.

18      Subject to and without waiving objections, Defendant responds: Subject to and without

19  waiving its objections, Defendant responds: Defendant will produce responsive documents in its

20  possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

21  and Defendant reserves its right to supplement its response to this request.

22  **REQUEST FOR PRODUCTION NO. 79**

23      Please produce all DOCUMENTS, including, but not limited to e-mails, text messages

24  and instant messages sent or received by Nancy Uhlenbrock regarding the use of RACIAL

25  SLURS at the TESLA FACTORY. (For the purposes of responding to this request for production,

26  the phrase "RACIAL SLURS" shall include, but is not limited to, the terms "nigger", "nigga",

27  "ninga", or any variant thereof, "porch monkey"; "monkey"; "jiggaboo". The term shall also

28  encompass equivalent words in Spanish, including, though not limited to, "negrito", "negrita",

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE
FPDOCS 35497578.1

1  "mono", and "mayate".)

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 79**

3      Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

4  vague and ambiguous, including, but not limited to, its use of the phrases "DOCUMENTS …

5  regarding the use of RACIAL SLURS," "'nigger', 'nigga', 'ninga', or any variant thereof," and

6  "equivalent words in Spanish, including, though not limited to, 'negrito', 'negrita', 'mono', and

7  'mayate'." Defendant further objects to this request as burdensome, oppressive and harassing to

8  the extent that it seeks documents not relevant to any party's claims or defenses or that are not

9  proportional to the needs of this case, especially given that this request seeks the production of

10  documents unrelated to Plaintiff. Defendant objects to this request on the grounds that it is

11  overbroad, vague and ambiguous as to time. The request impermissibly seeks "me too" evidence

12  that is not relevant to the claims and defenses in this case. Defendant objects to this request to

13  the extent it seeks the production of electronically stored information (including, but not limited

14  to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in

15  proportion to the claims in this action. Defendant also objects to this request to the extent that it

16  seeks documents protected by the attorney-client privilege, the attorney work product doctrine

17  and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this

18  request to the extent it calls for documents that are protected from disclosure by third party

19  privacy rights under the Federal and California constitutions and applicable statutes.

20  **REQUEST FOR PRODUCTION NO. 80**

21      Please produce all DOCUMENTS, including, but not limited to e-mails, text messages

22  and instant messages sent or received by Terri Garrett regarding the use of RACIAL SLURS at

23  the TESLA FACTORY. (For the purposes of responding to this request for production, the phrase

24  "RACIAL SLURS" shall include, but is not limited to, the terms "nigger", "nigga", "ninga", or

25  any variant thereof; "porch monkey"; "monkey"; or "jiggaboo". The term shall also encompass

26  equivalent words in Spanish, including, though not limited to, "negrito", "negrita", "mono", and

27  "mayate".)

28  ///

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "DOCUMENTS … regarding the use of RACIAL SLURS," "'nigger', 'nigga', 'ninga', or any variant thereof," and "equivalent words in Spanish, including, though not limited to, 'negrito', 'negrita', 'mono', and 'mayate'." Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff. Defendant objects to this request on the grounds that it is overbroad, vague and ambiguous as to time. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 81**

Please produce all DOCUMENTS, including, but not limited to e-mails, text messages and instant messages sent or received by Wayne Jackson regarding SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS" shall include, but is not limited to, symbols such as a swastika, flaming cross, "88", the confederate flag, twin lightning bolts, the "iron cross", or the "Nazi eagle"; and slogans including "white power" or "fourteen words".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

vague and ambiguous, including, but not limited to, its use of the phrases "DOCUMENTS …

regarding SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS,"

"'SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS' shall include,

but is not limited to, symbols such as a swastika, flaming cross, '88', the confederate flag, twin

lightning bolts, the 'iron cross', or the 'Nazi eagle'," and "slogans including 'white power' or

'fourteen words'."   Defendant further objects to this request as burdensome, oppressive and

harassing to the extent that it seeks documents not relevant to any party's claims or defenses or

that are not proportional to the needs of this case, especially given that this request seeks the

production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at

Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and

defenses in this case. Defendant objects to this request to the extent it seeks the production of

electronically stored information (including, but not limited to emails, texts and meta-data) as

burdensome, costly and oppressive in the context of and in proportion to the claims in this action.

Defendant also objects to this request to the extent that it seeks documents protected by the

attorney-client privilege, the attorney work product doctrine and/or other privileges, protections,

or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents

that are protected from disclosure by third party privacy rights under the Federal and California

constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 82**

Please produce all DOCUMENTS, including, but not limited to e-mails, text messages

and instant messages sent or received by Nancy Uhlenbrock regarding SYMBOLS AND

SLOGANS OF WHITE SUPREMACIST HATE GROUPS at the TESLA FACTORY from 2012

to present. (For the purposes of responding to this request for production, the phrase "SYMBOLS

AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS" shall include, but is not

limited to, symbols such as a swastika, flaming cross, "88", the confederate flag, twin lightning

bolts, the "iron cross", or the "Nazi eagle"; and slogans including "white power" or "fourteen

words".)

///

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "DOCUMENTS … regarding SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS," "'SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS' shall include, but is not limited to, symbols such as a swastika, flaming cross, '88', the confederate flag, twin lightning bolts, the 'iron cross', or the 'Nazi eagle'," and "slogans including 'white power' or 'fourteen words'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 83**

Please produce all DOCUMENTS, including, but not limited to e-mails, text messages and instant messages sent or received by Terri Garrett regarding SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS at the TESLA FACTORY from 2012 to present. (For the purposes of responding to this request for production, the phrase "SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS" shall include, but is not limited to, symbols such as a swastika, flaming cross, "88", the confederate flag, twin lightning bolts, the "iron cross", or the "Nazi eagle"; and slogans including "white power" or "fourteen words".)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrases "DOCUMENTS … regarding SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS," "'SYMBOLS AND SLOGANS OF WHITE SUPREMACIST HATE GROUPS' shall include, but is not limited to, symbols such as a swastika, flaming cross, '88', the confederate flag, twin lightning bolts, the 'iron cross', or the 'Nazi eagle'," and "slogans including 'white power' or 'fourteen words'."  Defendant further objects to this request as burdensome, oppressive and harassing to the extent that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case, especially given that this request seeks the production of documents unrelated to Plaintiff and during periods when Plaintiff did not work at Tesla. The request impermissibly seeks "me too" evidence that is not relevant to the claims and defenses in this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action. Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it calls for documents that are protected from disclosure by third party privacy rights under the Federal and California constitutions and applicable statutes.

**REQUEST FOR PRODUCTION NO. 84**

Please produce all DOCUMENTS reflecting complaints from other employees at the TESLA FACTORY about Plaintiff Owen Diaz's attitude or demeanor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "complaints from other employees at the TESLA FACTORY about Plaintiff Owen Diaz's attitude or demeanor." Defendant further objects to this request as burdensome, oppressive and harassing to the extent

1   that it seeks documents not relevant to any party's claims or defenses or that are not proportional

2   to the needs of this case, especially given that this request seeks the production of documents

3   "reflecting" other documents. Defendant objects to this request to the extent it seeks the

4   production of electronically stored information (including, but not limited to emails, texts and

5   meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims

6   in this action.  Defendant also objects to this request to the extent that it seeks documents

7   protected by the attorney-client privilege, the attorney work product doctrine and/or other

8   privileges, protections, or doctrines of similar effect. Defendant objects to this request to the

9   extent it calls for documents that are protected from disclosure by third party privacy rights under

10  the Federal and California constitutions and applicable statutes.

11       Subject to and without waiving objections, Defendant responds: Subject to and without

12  waiving its objections, Defendant responds: Defendant will produce responsive documents in its

13  possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

14  and Defendant reserves its right to supplement its response to this request.

15  **REQUEST FOR PRODUCTION NO. 85**

16       Please produce all DOCUMENTS that support any defense YOU have pleaded or will

17  plead in this action.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 85**

19       Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

20  vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS that

21  support any defense YOU have pleaded or will plead in this action."  Defendant objects to this

22  request to the extent it seeks the production of electronically stored information (including, but

23  not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context

24  of and in proportion to the claims in this action.  Defendant also objects to this request to the

25  extent that it seeks documents protected by the attorney-client privilege, the attorney work

26  product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant

27  objects to this request to the extent it calls for documents that are protected from disclosure by

28  third party privacy rights under the Federal and California constitutions and applicable statutes.

NEXTSOURCE, INC.'S RESP. TO OWEN DIAZ'S REQUEST FOR PRODUCTION, SET ONE

1   Subject to and without waiving objections, Defendant responds: Subject to and without

2   waiving its objections, Defendant responds: Defendant will produce responsive documents in its

3   possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

4   and Defendant reserves its right to supplement its response to this request.

5   **REQUEST FOR PRODUCTION NO. 86**

6   Please produce all DOCUMENTS sent to YOU by Citistaff Solutions, Inc. regarding

7   PLAINTIFF Owen Diaz.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 86**

9   Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain,

10   vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS sent to

11   YOU by Citistaff Solutions, Inc. regarding PLAINTIFF Owen Diaz."  Defendant further objects

12   to this request as burdensome, oppressive and harassing to the extent that it seeks documents not

13   relevant to any party's claims or defenses or that are not proportional to the needs of this case.

14   Defendant objects to this request to the extent it seeks the production of electronically stored

15   information (including, but not limited to emails, texts and meta-data) as burdensome, costly and

16   oppressive in the context of and in proportion to the claims in this action.  Defendant also objects

17   to this request to the extent that it seeks documents protected by the attorney-client privilege, the

18   attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect.

19   Defendant objects to this request to the extent it calls for documents that are protected from

20   disclosure by third party privacy rights under the Federal and California constitutions and

21   applicable statutes. Defendant objects to this request to the extent it seeks the production of

22   documents that are equally available to Plaintiff.

23   Subject to and without waiving objections, Defendant responds: Subject to and without

24   waiving its objections, Defendant responds: Defendant will produce responsive documents in its

25   possession, custody and control, if any, to the extent they can be located. Discovery is continuing,

26   and Defendant reserves its right to supplement its response to this request.

27   **REQUEST FOR PRODUCTION NO. 87**

28   Please produce all DOCUMENTS sufficient to reflect your present financial condition,

including but not limited to, audited financial statements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87**

Objection. Defendant objects to this request on the grounds that it is overbroad, uncertain, vague and ambiguous, including, but not limited to, its use of the phrase "DOCUMENTS sufficient to reflect your present financial condition, including but not limited to, audited financial statements."  Defendant further objects to this request as burdensome, oppressive and harassing on the grounds that it seeks documents not relevant to any party's claims or defenses or that are not proportional to the needs of this case. Defendant objects to this request to the extent it seeks the production of electronically stored information (including, but not limited to emails, texts and meta-data) as burdensome, costly and oppressive in the context of and in proportion to the claims in this action.  Defendant also objects to this request to the extent that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine and/or other privileges, protections, or doctrines of similar effect. Defendant objects to this request to the extent it seeks documents that are private, confidential, business sensitive and/or protected as a trade secret.

Date:  May 29, 2019                     FISHER & PHILLIPS LLP


                                        By:     _/s/ Juan C. Araneda_____
                                                JUAN C. ARANEDA
                                                Attorneys for Defendant
                                                nextSource, Inc

1

2

## VERIFICATION

3    I have read the foregoing **DEFENDANT NEXTSOURCE, INC. RESPONSE TO**

4  **PLAINTIFF OWEN DIAZ'S INTERROGATORIES – SET ONE** and know its contents.

5    I am Chief Financial Officer of nextSource, Inc., a party to this action.  The matters stated

6  in the foregoing document are true of my own knowledge except as to those matters which are

7  stated on information and belief, and as to those matters I believe them to be true.

8    Executed on May 23 , 2019, at Nashville, Tennessee.

9    I declare under penalty of perjury that the foregoing is true and correct.

10

11    _____

12    Kevin McGinn
      Chief Financial Officer
13    nextSource, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NEXTSOURCE, INC. RESPONSE TO PLAINTIFF OWEN DIAZ'S INTERROGATORIES –
SET ONE

1

**CERTIFICATE OF SERVICE**

2

     I, the undersigned, am employed in the County of San Francisco, State of California.  I

3

am over the age of 18 and not a party to the within action; am employed with the law offices of
Fisher & Phillips LLP and my business address is One Embarcadero Center, Suite 2050, San

4

Francisco, California, 94111.

5

     On May 29, 2019, I served the foregoing document entitled **DEFENDANT**
**NEXTSOURCE, INC.'S RESPONSE TO PLAINTIFF OWEN DIAZ'S REQUEST FOR**

6

**PRODUCTION OF DOCUMENTS – SET ONE** on the parties listed below as follows:

7

| | |
|---|---|
| Lawrence A. Organ<br>Navruz Avloni<br>California Civil Rights Law Group<br>332 San Anselmo Avenue<br>San Anselmo, CA  94960-2664 | Attorneys for Plaintiffs<br>DEMETRIC  DIAZ,  OWEN  DIAZ  and<br>LAMAR PATTERSON<br><br>Tel.:   (415) 453-4740<br>Fax:   (415) 785-7352<br>Email: larry@civilrightsca.com<br>        navruz@civilrightsca.com |

8

9

10

11

12

13

14

☒    **BY ELECTRONIC SERVICE**:  Based on an agreement of the parties to accept service

15

by electronic transmission, I electronically served the above-described document to the

16

parties on the service list above.

17

     I declare that I am employed in the office of a member of the bar of this Court at whose

18

direction the service was made.

19

     Executed May 29, 2019 at San Francisco, California.

20

                                 */s/*

21

                              Catherine Schmitz

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

FPDOCS 35497578.1

**CERTIFICATE OF SERVICE**

      I, the undersigned, am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is One Embarcadero Center, Suite 2050, San Francisco, California 94111-3712.

      On May 29, 2019 I served the foregoing document entitled **DEFENDANT NEXTSOURCE, INC.'S RESPONSE TO PLAINTIFF OWEN DIAZ'S REQUEST FOR PRODUCTION OF DOCUMENTS – SET ONE** on the below listed parties in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Tracey A. Kennedy<br>Sheppard Mullin<br>333 South Hope St., 43rd Flr.<br>Los Angeles, CA  90071 | Attorneys for Defendant<br>TESLA, INC.<br><br>tkennedy@sheppardmullin.ocm |
| Gary T. Lafayette<br>Cheryl A. Stevens<br>Lafayette & Kumagai<br>1300 Clay St., Ste. 810<br>Oakland, CA  94612 | Attorneys for Defendant<br>CITISTAFF SOLUTIONS<br><br>glafayette@lkclaw.com<br>cstevens@lkclaaw.com |
| Fenn C. Horton, III<br>Helene Anastasia Simvoulakis<br>Pahl & McKay<br>225 West Santa Clara St., Ste. 1500<br>San Jose, CA  95113 | Attorneys for Defendant<br>WEST VALLEY STAFFING GROUP<br><br>fhorton@pahl-mccay.com<br>hsimvoulakis@pahl-mccay.com |

☒    **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      Executed May 29, 2019 at San Francisco, California.

_____/s/_____<br>
Catherine Schmitz

CERTIFICATE OF SERVICE

FPDOCS 35497578.1

# Exhibit

# **10**

1    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
         A Limited Liability Partnership
2        Including Professional Corporations
     TRACEY A. KENNEDY, Cal. Bar No. 150782
3    333 South Hope Street, 43rd Floor
     Los Angeles, California  90071-1422
4    Telephone:    213-620-1780
     Facsimile:    213-620-1398
5    Email:        tkennedy@sheppardmullin.com

6    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
         A Limited Liability Partnership
7        Including Professional Corporations
     PATRICIA M. JENG, Cal. Bar No. 272262
8    REANNE SWAFFORD-HARRIS, Cal. Bar No. 305558
     Four Embarcadero Center, 17th Floor
9    San Francisco, California 94111-4109
     Telephone:    415.434.9100
10   Facsimile:    415.434.3947
     Email:        pjeng@sheppardmullin.com
11                 rswafford-harris@sheppardmullin.com

12   Attorneys for Defendant,
     TESLA, INC. DBA TESLA MOTORS, INC.
13

14                   UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16

17
     DEMETRIC DI-AZ, OWEN DIAZ AND          Case No. 17-cv-06748-WHO
18   LAMAR PATTERSON
                                            **DEFENDANT TESLA, INC. DBA TESLA**
19            Plaintiffs,                   **MOTORS, INC.'S RESPONSE TO PLAINTIFF**
                                            **OWEN DIAZ'S INTERROGATORIES, SET**
20        v.                                **THREE**

21   TESLA, INC. DBA TESLA MOTORS,
     INC., CITISTAFF SOLUTIONS, INC.;
22   WEST VALLEY STAFFING GROUP;
     CHARTWELL STAFFING SERVICES,
23   INC.; NEXTSOURCE, INC.; and DOES
     1-10, inclusive
24
              Defendants.                   Amended Complaint Filed:  December 26, 2018
25                                          Trial Date:               November 18, 2019

26

27

28

SMRH:4850-8836-
2648.1

| | | |
|---|---|---|
| 1 | PROPOUNDING PARTY: | Plaintiff OWEN DIAZ |
| 2 | RESPONDING PARTY: | Defendant TESLA, INC. DBA TESLA MOTORS, INC. |
| 3 | SET NO.: | THREE |

**PRELIMINARY STATEMENT**

Pursuant to Federal Rule of Civil Procedure 33, Defendant Tesla, Inc. dba Tesla Motors, Inc. ("Defendant") hereby responds to Plaintiff Owen Diaz's ("Plaintiff") Interrogatories, Set Three.

The following responses and objections have been prepared prior to the completion of Defendant's investigation, discovery, and preparation for trial in this action. The responses and objections are based only on information, facts, and documents currently available and known to Defendant. Defendant reserves its right to make changes to the responses and objections if it appears that omissions or errors have been made in them, or that further and more accurate information, facts, and/or documents are available, but Defendant is under no obligation to do so. Defendant also reserves its right to rely upon and/or introduce into evidence at trial or any pre-trial proceeding any additional information, facts, and/or documents.

Defendant's responses and objections are for the purpose of discovery only, and are not an admission or acceptance that any response, fact, or document is relevant and/or admissible into evidence. Defendant reserves its right to object to the admissibility of any response, fact, or document at the time of trial or any pre-trial proceeding.

Defendant provides the following responses subject to, and without waiving the foregoing Preliminary Statement, which is incorporated by reference into each response below.

**GENERAL OBJECTIONS**

1.     Defendant reserves the right to object on any ground at any time to such other or supplemental Interrogatories, or any other discovery, as Plaintiff may at any time propound involving the subject matter of the Interrogatories.

2.     Defendant objects to the Interrogatories on the grounds and to the extent they seek information outside the possession, custody, or control of Defendant and that is not within Defendant's personal knowledge.

3.      Defendant objects to the Interrogatories because they are overbroad and unduly burdensome, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Defendant objects to the Interrogatories on the grounds and to the extent they call for information which is protected by the by the attorney-client privilege, that was prepared in anticipation of litigation for trial or is covered by the work product doctrine, or which constitutes information which is privileged or related to confidential trade secrets or the right or privilege of privacy (including the freedom of association and financial privacy, the right of privacy held by non-party individuals with respect to their employment records).

Each of these general objections is incorporated by reference into each set of specific responses to each Interrogatory set forth below.  The fact that any of these general objections is set forth again specifically in response to any of the Interrogatories shall not be construed as a waiver of any of the other general objections set forth herein.

## RESPONSE TO INTERROGATORIES

**INTERROGATORY NO. 14:**

Please provide the last, best-known contact information of Judy Timbreza.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendant objects to this request on the grounds that it is overbroad, ambiguous, vague and uncertain with regard to the phrase "best-known."  Defendant objects that this interrogatory is not limited in time or scope, and thus is overbroad, unduly burdensome, oppressive, and harassing. Defendant further objects to the extent this interrogatory is invasive of the privacy rights and confidentiality of third-party non-litigants.  Defendant further objects to the extent this interrogatory seeks information that is not relevant to the claims or defenses and/or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Case No. 17-cv-06748-WHO

1    Subject to and without waiving any objections, Defendant responds as follows:  Judy

2  Timbreza was never a Tesla employee.  The last known contact information that Tesla has for

3  Judy Timbreza is judyannafuan18@gmail.com.

4  **INTERROGATORY NO. 15:**

5    Please DESCRIBE in comprehensive detail each position Judy Timbreza has held during

6  his employment at the TESLA FACTORY from 2014 to present. (For the purposes of responding

7  to this interrogatory, the term "DESCRIBE" means to list, for each position, the job title, job

8  duties, hours worked, and dates the position was held.)

9  **RESPONSE TO INTERROGATORY NO. 15:**

10    Defendant objects to this interrogatory on the grounds that it is vague and ambiguous as to

11  the term(s) and/or phrase(s): "comprehensive detail," "position," and "employment at TESLA

12  FACTORY."  Defendant further objects to the extent this interrogatory is invasive of the privacy

13  rights and confidentiality of third-party non-litigants.  Defendant further objects to the extent this

14  interrogatory seeks information that is not relevant to the claims or defenses and/or proportional to

15  the needs of the case, considering the importance of the issues at stake in the action, the amount in

16  controversy, the parties' relative access to relevant information, the parties' resources, the

17  importance of the discovery in resolving the issues, and whether the burden or expense of the

18  proposed discovery outweighs its likely benefit.  Defendant objects that this interrogatory lacks

19  foundation, and assumes facts not in evidence, particularly, that Judy Timbreza had an assigned

20  schedule of "hours worked," and/or recorded the same.  Defendant further objects to the extent

21  this interrogatory necessitates the preparation or the making of a compilation, abstract, audit, or

22  summary.

23    Subject to and without waiving any objections, Defendant responds as follows:  Judy

24  Timbreza was never a Tesla employee.

25  **INTERROGATORY NO. 16:**

26    Please DESCRIBE in comprehensive detail each position Edward Romero has held during

27  his employment at the TESLA FACTORY from 2014 to present. (For the purposes of responding

28

SMRH:4850-8836-
2648.1                          DEFENDANT'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET THREE

1   to this interrogatory, the term "DESCRIBE" means to list, for each position, the job title, job

2   duties, hours worked, and dates the position was held.)

3   **RESPONSE TO INTERROGATORY NO. 16:**

4        Defendant objects to this interrogatory on the grounds that it is vague and ambiguous as to

5   the term(s) and/or phrase(s): "comprehensive detail," "position," and "employment at TESLA

6   FACTORY."  Defendant further objects to the extent this interrogatory is invasive of the privacy

7   rights and confidentiality of third-party non-litigants and/or current or former employees of

8   Defendant.  Defendant further objects to the extent this interrogatory seeks information that is not

9   relevant to the claims or defenses and/or proportional to the needs of the case, considering the

10  importance of the issues at stake in the action, the amount in controversy, the parties' relative

11  access to relevant information, the parties' resources, the importance of the discovery in resolving

12  the issues, and whether the burden or expense of the proposed discovery outweighs its likely

13  benefit.  Defendant objects that this interrogatory lacks foundation, and assumes facts not in

14  evidence, particularly, that Edward Romero had an assigned schedule of "hours worked," and/or

15  recorded the same.  Defendant further objects to the extent this interrogatory necessitates the

16  preparation or the making of a compilation, abstract, audit, or summary.

17       Subject to and without waiving any objections, Defendant responds as follows:  Edward

18  Romero's position was Janitorial Supervisor, Production Facilities from on or about October 12,

19  2015 through on or about August 4, 2017.

20  **INTERROGATORY NO. 17:**

21       Please DESCRIBE in comprehensive detail each position Victor Quintero has held during

22  his employment at the TESLA FACTORY from 2014 to present. (For the purposes of responding

23  to this interrogatory, the term "DESCRIBE" means to list, for each position, the job title, job

24  duties, hours worked, and dates the position was held.)

25  **RESPONSE TO INTERROGATORY NO. 17:**

26       Defendant objects to this interrogatory on the grounds that it is vague and ambiguous as to

27  the term(s) and/or phrase(s): "comprehensive detail," "position," and "employment at TESLA

28  FACTORY."  Defendant further objects to the extent this interrogatory is invasive of the privacy

1  rights and confidentiality of third-party non-litigants and/or current or former employees of

2  Defendant.  Defendant further objects to the extent this interrogatory seeks information that is not

3  relevant to the claims or defenses and/or proportional to the needs of the case, considering the

4  importance of the issues at stake in the action, the amount in controversy, the parties' relative

5  access to relevant information, the parties' resources, the importance of the discovery in resolving

6  the issues, and whether the burden or expense of the proposed discovery outweighs its likely

7  benefit.  Defendant objects that this interrogatory lacks foundation, and assumes facts not in

8  evidence, particularly, that Victor Quintero had an assigned schedule of "hours worked," and/or

9  recorded the same.  Defendant further objects to the extent this interrogatory necessitates the

10  preparation or the making of a compilation, abstract, audit, or summary.

11      Subject to and without waiving any objections, Defendant responds as follows:  Victor

12  Quintero's position is Manager, Recycling Services from May 12, 2015 through the date of this

13  response.

14  **INTERROGATORY NO. 18:**

15      Please DESCRIBE in comprehensive detail each position Ramon Martinez held during his

16  employment at the TESLA FACTORY. (For the purposes of responding to this interrogatory, the

17  term "DESCRIBE" means to list, for each position, the job title, job duties, hours worked, and

18  dates the position was held.)

19  **RESPONSE TO INTERROGATORY NO. 18:**

20      Defendant objects to this interrogatory on the grounds that it is vague and ambiguous as to

21  the term(s) and/or phrase(s): "comprehensive detail," "position," and "employment at TESLA

22  FACTORY."  Defendant further objects that this interrogatory is not limited in time or scope, and

23  thus is overbroad, unduly burdensome, oppressive, and harassing.  Defendant further objects to the

24  extent this interrogatory is invasive of the privacy rights and confidentiality of third-party non-

25  litigants and/or current or former employees of Defendant.  Defendant further objects to the extent

26  this interrogatory seeks information that is not relevant to the claims or defenses and/or

27  proportional to the needs of the case, considering the importance of the issues at stake in the

28  action, the amount in controversy, the parties' relative access to relevant information, the parties'

Case No. 17-cv-06748-WHO

1 resources, the importance of the discovery in resolving the issues, and whether the burden or

2 expense of the proposed discovery outweighs its likely benefit.  Defendant objects that this

3 interrogatory lacks foundation, and assumes facts not in evidence, particularly, that Ramon

4 Martinez had an assigned schedule of "hours worked," and/or recorded the same.  Defendant

5 further objects to the extent this interrogatory necessitates the preparation or the making of a

6 compilation, abstract, audit, or summary.

7       Subject to and without waiving any objections, Defendant responds as follows:  Ramon

8 Martinez was not employed by Tesla during the time that plaintiff Owen Diaz or Plaintiff

9 Demetric Di-az worked at Tesla.  Ramon Martinez's position from January 14, 2019 to the date of

10 this response is Lead Material Handler.

11 **INTERROGATORY NO. 19:**

12       Please DESCRIBE in comprehensive detail each position Joyce DelaGrande has held

13 during her employment at the TESLA FACTORY. (For the purposes of responding to this

14 interrogatory, the term "DESCRIBE" means to list, for each position, the job title, job duties,

15 hours worked, and dates the position was held.)

16 **RESPONSE TO INTERROGATORY NO. 19:**

17       Defendant objects to this interrogatory on the grounds that it is vague and ambiguous as to

18 the term(s) and/or phrase(s): "comprehensive detail," "position," and "employment at TESLA

19 FACTORY."  Defendant further objects that this interrogatory is not limited in time or scope, and

20 thus is overbroad, unduly burdensome, oppressive, and harassing.  Defendant further objects to the

21 extent this interrogatory is invasive of the privacy rights and confidentiality of third-party non-

22 litigants and/or current or former employees of Defendant.  Defendant further objects to the extent

23 this interrogatory seeks information that is not relevant to the claims or defenses and/or

24 proportional to the needs of the case, considering the importance of the issues at stake in the

25 action, the amount in controversy, the parties' relative access to relevant information, the parties'

26 resources, the importance of the discovery in resolving the issues, and whether the burden or

27 expense of the proposed discovery outweighs its likely benefit.  Defendant objects that this

28 interrogatory lacks foundation, and assumes facts not in evidence, particularly, that Joyce

1  DelaGrande had an assigned schedule of "hours worked," and/or recorded the same.  Defendant

2  further objects to the extent this interrogatory necessitates the preparation or the making of a

3  compilation, abstract, audit, or summary.

4       Subject to and without waiving any objections, Defendant responds as follows:  Joyce

5  Delagrande's position from August 20, 2012 to November 30, 2012 was Production Associate; her

6  position from December 1, 2012 to June 31, 2013 was Supervisor Manufacturing; her position

7  from July 1, 2013 to October 30, 2015 was Associate Manager Supply Chain; her position from

8  October 31, 2015 to July 8, 2017 was Supervisor Supply Chain; and her position from July 9,

9  2017 to present is Associate Manager Supply Chain.

10  **INTERROGATORY NO. 20:**

11       If Ramon Martinez is no longer working at TESLA, please list all the reasons for his

12  separation.

13  **RESPONSE TO INTERROGATORY NO. 20:**

14       Defendant objects to this interrogatory on the grounds that it is vague and ambiguous as to

15  the term(s) and/or phrase(s): "working," and "separation."  Defendant further objects to the extent

16  this interrogatory is invasive of the privacy rights and confidentiality of third-party non-litigants

17  and/or current or former employees of Defendant.  Defendant further objects to the extent this

18  interrogatory seeks information that is not relevant to the claims or defenses and/or proportional to

19  the needs of the case, considering the importance of the issues at stake in the action, the amount in

20  controversy, the parties' relative access to relevant information, the parties' resources, the

21  importance of the discovery in resolving the issues, and whether the burden or expense of the

22  proposed discovery outweighs its likely benefit.  Defendant objects to the extent this interrogatory

23  lacks foundation, and assumes facts not in evidence.  Defendant further objects to the extent this

24  interrogatory necessitates the preparation or the making of a compilation, abstract, audit, or

25  summary.

26  ///

27  ///

28  ///

SMRH:4850-8836-
2648.1

1         Subject to and without waiving any objections, Defendant responds as follows:  Not

2    applicable.

3

4    Dated:  May 24, 2019              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

5

6                     By:  _____

7                              TRACEY A. KENNEDY
                               PATRICIA M. JENG

8                           REANNE SWAFFORD-HARRIS

9                          Attorneys for Defendant
                    TESLA, INC. dba TESLA MOTORS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4850 8836
2648.1         DEFENDANT'S RESPONSE TO PLAINTIFF'S INTERROGATORIES, SET THREE

1

## VERIFICATION

2   I, _Nicole White_ , declare as follows:

3   I am _HR Program Manager_ for Defendant TESLA, INC. DBA

4   TESLA MOTORS, INC.  In that capacity, I am authorized to make this verification on behalf of

5   Defendant.  I have reviewed and know the contents of the foregoing document entitled:

6   **DEFENDANT TESLA, INC. DBA TESLA MOTORS, INC.'S RESPONSE TO PLAINTIFF**

7   **OWEN DIAZ'S INTERROGATORIES, SET THREE**

8   I am informed and believe the matters stated therein are true and on that ground declare

9   under penalty of perjury under the laws of the state of California that the same are true and correct.

10

11

12   DATED: _June 25TH,_ , 2019 _____

13   [Name]

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

*Demetric Di-Az, et al. v. Tesla, Inc., et al.*
USDC, Northern District of California, Case No. 3:17-cv-06748-WHO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On May 24, 2019, I served true copies of the following document(s) described as:

**DEFENDANT TESLA, INC. DBA TESLA MOTORS, INC.'S RESPONSE TO PLAINTIFF OWEN DIAZ'S INTERROGATORIES, SET THREE**

on the interested parties in this action as follows:

**SEE SERVICE LIST**

☒ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred.

☐ **BY FAX TRANSMISSION:** I faxed a copy of the document(s) to the persons at the fax numbers listed in the Service List. The telephone number of the sending facsimile machine was 415.434.3947. The transmission was reported as complete and without error. No error was reported by the fax machine that I used. A transmission report was properly issued by the sending fax machine.

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address eruiz@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

☐ **BY PERSONAL SERVICE:** I personally delivered the document(s) to the person at the addresses listed in the Service List. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

Case No. 3:17-cv-06748-WHO
CERTIFICATE OF SERVICE

1  I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Executed on May 24, 2019, at San Francisco, California.

Elena E. Ruiz

Case No. 3:17-cv-06748-WHO
CERTIFICATE OF SERVICE

## SERVICE LIST

| | | |
|---|---|---|
| 1 | | |
| 2 | Lawrence A. Organ, Esq. | Attorneys for Plaintiffs |
|   | Navruz Avloni, Esq. | DEMETRIC DI-AZ and OWEN DIAZ |
| 3 | **CALIFORNIA CIVIL RIGHTS LAW GROUP** | |
|   | 332 San Anselmo Avenue | |
| 4 | San Anselmo, CA 94960 | |
|   | Telephone:      415-453-4740 | |
| 5 | Facsimile:      415-785-7352] | |
|   | Email:      larry@civiilrightsca.com | |
| 6 |       navruz@civilrightsca.com | |
| 7 | Gary T. Lafayette, Esq. | Attorneys for Defendant |
|   | Cheryl A. Stevens, Esq. | CITISTAFF SOLUTIONS, INC. |
| 8 | **LAFAYETTE & KUMAGAI** | |
|   | 1300 Clay Street, Suite 810 | |
| 9 | Oakland, CA 94612 | |
|   | Telephone:      415-357-4600 | |
| 10 | Email:      glafayette@lkclaw.com | |
|    |       cstevens@lkclaw.com | |
| 11 | | |
| 12 | Jason A. Geller, Esq. | Attorneys for Defendant |
|    | Juan C. Araneda, Esq. | NEXTSOURCE, INC. |
| 13 | Aaron D. Langberg, Esq. | |
|    | **FISHER & PHILLIPS LLP** | |
| 14 | One Embarcadero Center, Suite 2050 | |
|    | San Francisco, CA 94111 | |
| 15 | Telephone:      415-490-9000 | |
|    | Facsimile:      415-490-9001 | |
| 16 | Email:      jgeller@fisherphillips.com | |
|    |       jaraneda@fisherphillips.com | |
| 17 |       alangberg@fisherphillips.com | |
| 18 | Fenn C. Horton III, Esq. | Attorneys for Defendant |
|    | Helene Simvoulakis-Panos, Esq. | WEST VALLEY STAFFING GROUP |
| 19 | **PAHL & McCAY** | |
|    | 225 West Santa Clara Street, Suite 1500 | |
| 20 | San Jose, CA 95113 | |
|    | Telephone:      408-286-5110 | |
| 21 | Facsimile:      408-286-5722 | |
|    | Email:      fhorton@pahl-mccay.com | |
| 22 |       hsimvoulakis@pahl-mccay.com | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

-3-

Case No. 3:17-cv-06748-WHO
CERTIFICATE OF SERVICE