1
JASON A. GELLER (SBN 168149)
Email:  jgeller@fisherphillips.com
2
JUAN C. ARANEDA (SBN 213041)
Email:  jaraneda@fisherphillips.com
3
VINCENT J. ADAMS (SBN 249696)
Email:  vadams@fisherphillips.com
4
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
5
San Francisco, California 94111
Telephone:  (415) 490-9000
6
Facsimile:  (415) 490-9001

7
Attorneys for Defendant
nextSource, Inc.
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11
DEMETRIC DI-AZ, OWEN DIAZ, and
LAMAR PATTERSON,
12

13              Plaintiffs,

14     vs.

15
TESLA, INC. dba TESLA MOTORS, INC.;
CITISTAFF SOLUTIONS, INC.; WEST
VALLEY STAFFING GROUP;
16
CHARTWELL STAFFING SERVICES,
INC.; NEXTSOURCE, INC.; DOES 1-50
17
inclusive,

18              Defendants.

19

20

21

Case No:  3:17-cv-06748-WHO

[*Removed from Alameda Superior Court, Case No. RG17878854*]

**DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

Date:         December 17, 2019
Time:         9:30 a.m.
Courtroom:  2, 17th Floor
Judge:        Hon. William H. Orrick

FAC Filed:  December 26, 2018
Trial Date:  March 2, 2020

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

1

## TABLE OF CONTENTS

2
Page(s)

3
I.      INTRODUCTION ..................................................................5

4

5
II.     RESPONSE TO PLAINTIFF'S ALLEGED FACTUAL BACKGROUND..................6

6
        A.    Employer-Employee Matters Were the Responsibility of the Staffing
              Agencies that Hired Temporary Workers ...........................................6

7

8
        B.    Edward Romero was a Tesla Employee for Most of Plaintiff's Assignment
              to the Tesla Factory..............................................................9

9

10
        C.    All Other Facts in Plaintiff's Opposition Demonstrate nextSource's
              Limited Role at the Tesla Factory................................................10

11
III.    ARGUMENT ...................................................................12

12

13
        A.    nextSource has No Liability Under a Joint Employer Theory...........................12

14
              1.    nextSource Cannot be Considered Plaintiff's Employer Under Any
                    Test for Joint Employment.................................................12

15

16
              2.    Even if Joint Employment Exists, Liability Cannot be Imposed on
                    nextSource under *Global Horizons*........................................14

17

18
        B.    Plaintiff's Claims of Harassment, Discrimination, Retaliation, and Failure
              to Prevent under 42 U.S.C. § 1981 Fail as No Triable Issues of Material
              Fact Exist .................................................................15

19

20
        C.    Plaintiff's Ralph Act Claim Fails................................................17

21
        D.    Plaintiff's Claim for Punitive Damages is Meritless ...................................18

22
IV.     CONCLUSION..................................................................19

23

24

25

26

27

28

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) ............................................................................................... 15

*Fonseca v. Sysco Food Services of Arizona, Inc.*,
    374 F.3d 840 (9th Cir. 2004) .................................................................................. 12

*Katherine G. v. Kentfield School District*,
    261 F.Supp.2d 1159 (N.D. Cal. 2003) ...................................................................... 6

*Manatt v. Bank of America, NA*,
    339 F.3d 792 (9th Cir. 2003) .................................................................................. 12

*Martinez v. Combs*,
    49 Cal.4th 35 (2010) ................................................................................. 12, 13, 14

*McCollum v. California*,
    610 F.Supp.2d 1053 (N.D. Cal. 2009) ...................................................................... 6

*Morrow v. City of Oakland*,
    2012 WL 368682 (N.D. Cal. Feb. 3, 2012) ............................................................ 12

*Orr v. Bank of America, NT & SA*,
    285 F.3d 764 (9th Cir. 2002) .................................................................................... 6

*Patterson v. McLean Credit Union*,
    491 U.S. 164 (1989) ............................................................................................... 16

*Roe v. California Department of Developmental Services*,
    No. 16-CV-03745-WHO, 2017 WL 2311303 (N.D. Cal. May 26, 2017) ............................ 18

*Salazar v. McDonald's Corp.*,
    No. 17-15673 939 F.3d 1051 (9th Cir. 2019) ......................................................... 12

*Thornhill Publishing Co., Inc. v. GTE Corp.*,
    594 F.2d 730 (9th Cir. 1979) .................................................................................... 6

*Whitaker v. Milwaukee County*,
    722 F.3d 802 (7th Cir. 2014) ............................................................................ 14, 15

STATUTES, RULES AND REGULATIONS

Civil Rights Act of 1866
    42 U.S.C. Section 1981 ...................................................................................*passim*

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

Unruh Civil Rights Act
   California Civil Code Sections 51(a) and (b) .......................................................... 5

Ralph Civil Rights Act
   California Civil Code Section 51.7 ........................................................... 5, 17, 18

Tom Bane Civil Rights Act
   California Civil Code Section 52.1 ......................................................................... 5

California Labor Code
   Section 1102.5 ......................................................................................................... 5

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

I.      **INTRODUCTION**

Plaintiff Owen Diaz ("Plaintiff") opposes Defendant nextSource, Inc.'s ("nextSource") Motion for Summary Judgment, or in the Alternative, Motion for Summary Adjudication of Issues on the unsupported assertion that nextSource was his joint employer and therefore should be liable for discrimination and harassment in violation of 42 U.S.C. § 1981 and the Ralph Civil Rights Act (Cal. Civ. Code § 51(a) and (b)). However, Plaintiff cannot identify a single disputed material fact that would preclude the Court from entering summary judgment for nextSource as a matter of law as to his First Cause of Action for violation of 42 U.S.C. § 1981 and Fourth Cause of Action for violation of the Ralph Civil Rights Act.

To concoct his argument that a joint employer relationship existed, Plaintiff relies on a distorted account of nextSource's limited role at the Tesla Factory that is refuted by the undisputed material facts. He depends on misleading statements taken from deposition testimony and broad mischaracterizations of evidence obtained during discovery. Even if one assumes that a joint employment relationship exists, Plaintiff cannot prove that nextSource knew or should have known of a potential hostile work environment <u>and</u> failed to undertake prompt corrective measures within its control. Instead, Plaintiff attempts to show control by jumbling the events to argue that nextSource somehow had a duty to put an end to the harassment and discrimination that allegedly took place at the Tesla Factory. Yet, not even this brazen attempt to mislead the Court can change the undisputed fact that Plaintiff was employed by Citistaff Solutions, Inc. and worked under the day-to-day direction of Tesla. NextSource, on the other hand, served a liaison between the two, with no authority to train, discipline, or terminate temporary workers employed by staffing agencies, like Plaintiff.

Notably, Plaintiff does not oppose nextSource's Motion with respect to his claims for violation of the Bane Act (5th and 6th Causes of Action), Whistleblower Retaliation under California Labor Code § 1102.5 (7th Cause of Action), Negligent Infliction of Emotional Distress (12th Cause of Action), Intentional Infliction of Emotional Distress (13th Cause of Action), Negligent Hiring, Retention, and Supervision (14th Cause of Action), and Constructive Discharge ///

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

in Violation of Public Policy (17th Cause of Action). Plaintiff thereby concedes to summary judgment in favor of nextSource on these claims.

## II.   RESPONSE TO PLAINTIFF'S ALLEGED FACTUAL BACKGROUND

Over 11 pages of Plaintiff's 25-page Opposition is devoted to his version of the factual background of this matter. Although Plaintiff's Opposition devotes a considerable amount of attention to the facts, he fails to cite to any evidence in the record that demonstrates that nextSource acted as his joint employer or that it was responsible for the discrimination, harassment, or retaliation that allegedly occurred at the Tesla Factory.

Plaintiff's Opposition presents facts that are rife with conclusory statements and speculative evidence. *See, Orr v. Bank of America, NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002) A court can only consider admissible evidence in ruling on a summary judgment motion. *See also, Thornhill Publishing Co., Inc. v. GTE Corp.*, 594 F.2d 730 (9th Cir. 1979). As shown below, he blatantly misrepresents the evidence in this case and instead presents a record that is replete with statements of purported "fact" for which there are no citations to the record[1], statements taken out of context whose sole purpose can only be to deceive the Court, partial statements which are shamelessly misleading, outrageous characterizations of events, and false statements. As such, Plaintiff failed to produce any admissible evidence upon which to oppose nextSource's Motion for Summary Judgment.

### A.   Employer-Employee Matters Were the Responsibility of the Staffing Agencies that Hired Temporary Workers

nextSource does not dispute that it entered into a Master Services Agreement with Tesla whereby nextSource would provide temporary employees to work at Tesla's Factory. (Plaintiff's Opp. 6:19-20.) Nor does it dispute that it delegated many of its contractual duties to other entities, such as Citistaff and other staffing agencies that supplied temporary employees to Tesla. (Plaintiff's Opp. 7:6-7.) However, an examination of nextSource's contract with Tesla and its

---

[1] The opposition to a summary judgment motion must designate and reference specific triable facts. *Katherine G. v. Kentfield School District,* 261 F.Supp.2d 1159, 1166-67 (N.D. Cal. 2003). *See also McCollum v. California*, 610 F.Supp.2d 1053, 1056 (N.D. Cal. 2009) (it is not the Court's task "to scour the record in search of a genuine issue of triable fact").

Service Agreement with Citistaff does not show the purported "complex overlap of duties" Plaintiff alleges in which "nextSource, Citistaff and Tesla shared responsibility for temporary employees employed by and through nextSource." (Plaintiff's Opp. 7:4-6.)

Pursuant to its Service Agreement with nextSource, Citistaff was "responsible for all employer-employee matters including, but not limited to, hiring, firing, discipline, payroll practices, employee benefits and any other communications with Supplier Employees with respect to their duties as employees." (3/24/15 Services Agreement, Page 2, § 1.5(e)[2] attached to Adams Supp. Dec. as Exhibit A.) Moreover, nextSource required that Citistaff instruct its temporary workers at Tesla that it was their employer – not nextSource or Tesla (Services Agreement (*Id.,* Page 2, § 1.5(d).) Pursuant to the Service Agreement, nextSource never agreed to become the employer for any temporary worker placed at the Tesla Factory by Citistaff.

With some exceptions, Plaintiff's Opposition does an adequate job of describing the clearly defined roles that Tesla, Citistaff, and nextSource had with respect to temporary workers. For example, Tesla provided Plaintiff with his safety equipment, set his work schedule, conducted his orientation and training, approved his hours. (Plaintiff's Opp. 7:9-16.) Meanwhile, Plaintiff used nextSource's computer system to submit timesheets and track his time. (Plaintiff's Opp. 7:14-15.) Citistaff then collected hours from nextSource and issued paychecks to its employees. (Plaintiff's Opp. 7:17-18.) While these facts are not disputed, Plaintiff creates additional facts that are wholly unsupported by the record to prove that Tesla, Citistaff, and nextSource were his joint employers.

First, Plaintiff states that he took direction and supervision from Tesla and nextSource employees like Romero yet the evidence he cites to does not support this contention. At no point in the testimony which Plaintiff cites to does he state that he took direction from nextSource. (Plaintiff's Opp.: 7:10-11.) Rather, Plaintiff states that he believed he was an employee for Tesla because he "got all of [his] direction from them." (Exh. B to Supp. Organ Dec., Diaz Depo.: 425:20-25.) Second, to further confuse the Court, Plaintiff argues that nextSource hired

---

[2] Citistaff produced a copy of its service agreement with nextSource on November 21, 2019 after Plaintiff filed his Opposition to nextSource's Motion for Summary Judgment.

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

Plaintiff's subordinates despite this action being inconsistent with the terms of nextSource's Service Agreement with Citistaff. (Plaintiff's Opp. at 7:13-14.) Again, the testimony cited in the Opposition does not support his contention. Instead, the testimony cited from Kevin McGinn's deposition states that nextSource maintained a role of liaison between Tesla and staffing agencies or "suppliers" to meet Tesla's contingent labor needs:

> Q.     So in other words, nextSource would coordinate with other staffing agencies to try and accommodate Tesla's demand for associates at the Fremont Factory?
>
> A.     nextSource would select suppliers who would provide resources into the Tesla factory, at the direction of – day-to-day direction of Tesla. However, those workers were employed; in other words, they were recruited, onboarded, and paid, and if needed, you know, terminated by the supplier employer. (Kevin McGinn Deposition (McGinn Depo.); 20:13-25)

Further, there was no delegation of duties such as discipline, promotions, or termination from Citistaff to nextSource with respect to its temporary workers at the Tesla Factory despite Plaintiff's claim. (Plaintiff's Opp. 7:22-23.) Instead, Citistaff Staffing Supervisor, Monica DeLeon testified that nextSource or the client would send raise recommendations to her, which she would confirm her with supervisor, and if confirmed she would change the payrate on the employee's next check. (Monica DeLeon Deposition (DeLeon Depo.); 89:13-21; 91:22-92:4.) DeLeon's testimony does not specify that nextSource assumed control over Citistaff's employees. Rather, her testimony is consistent with nextSource's responsibility as a facilitator of information going back and forth between Citistaff and Tesla.

Despite Plaintiff's claims, nextSource's role with respect to investigating complaints and presenting recommendations to staffing agencies is not indicative of its control over temporary employees. As addressed in the moving papers, nextSource did not have the authority to train, discipline, or terminate any worker employed by a staffing agency. (McGinn Depo.: 20:13-15; Jackson Depo.: 21:4:8, 22:20-23:3, 40:10-18, 41:13-42:1.) Thus, recommendations made by nextSource cannot be used as evidence of control over a temporary worker's assignment at Tesla as the ultimate decision regarding whether to promote, discipline, or terminate was maintained by the temporary worker's staffing agencies. As evidenced by nextSource's contract with Tesla

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

and its Services Agreement with Citistaff, each entity had defined responsibilities with respect to temporary workers at the Tesla Factory. The responsibilities retained by nextSource were limited to gathering and conveying information from Citistaff to Tesla and vice versa. None of the admissible evidence upon which Plaintiff relies in his Opposition amounts to control over a temporary workers' employment. As a result, Plaintiff must resort to stretching the facts and misrepresenting the evidence to support any argument that nextSource was his joint employer.

**B.** **Edward Romero was a Tesla Employee for Most of Plaintiff's Assignment to the Tesla Factory**

Despite indicating in a footnote that Ed Romero was a nextSource employee until October 2015, at which time he was hired by Tesla as full-time employee, Plaintiff repeatedly refers to Romero as his supervisor but rarely indicates who Romero worked for at the time. By doing this, Plaintiff attempts to muddle the facts, so it appears that nextSource employees provided day-to-day direction to Plaintiff throughout his assignment at the Tesla Factory, and assert a claim that nextSource was aware of Plaintiff's alleged complaints but failed to act. Regardless of Plaintiff's intent, it is not disputed that Romero was a nextSource employee until October 2015, at which time Tesla hired him as a full-time employee. (Plaintiff's Opp. 6 n.1.)

Based on this timeline, the only complaint made by Plaintiff that occurred while Romero was an employee of nextSource was the July 31, 2015 complaint involving derogatory remarks made by Judy Timbreza. As shown in the moving papers and Plaintiff's Opposition, nextSource's role with respect to the investigation of Plaintiff's complaint against Timbreza was limited. Plaintiff's supervisor, Tom Kawasaki, took the lead and spoke to bystanders. (Plaintiff's Opp. 9:9-11.) Kawasaki then reported to Jamie Salazar, a Tesla employee, who reported to another Tesla employee, Victor Quintero. (Tamotsu Kawasaki Deposition (Kawasaki Depo.): 15:15-21; 17:9-16; 20:11-21; 21:5-19; Victor Quintero Deposition (Quintero Depo.): 6:10-11.) Tesla then investigated the complaint with no involvement from nextSource. (Romero Depo.: 65:23-66:18, 157:15-158:3, Exh. 43; McGinn Depo.: 171:5-10.) Therefore, Romero never investigated the matter because it was handled and addressed by others.

///

1    Plaintiff attempts to argue that Romero was aware of the use of racial slurs and the

2    presence of racist graffiti at the Tesla Factory but failed to take corrective action. (Plaintiff's

3    Opp. 12:13-20.) Yet he provides no corroborating evidence of these facts aside from his own

4    self-serving testimony and offers no dates for when the complaints to Romero allegedly occurred.

5    However, the evidence submitted does support that these complaints likely occurred after

6    Romero became a Tesla employee as he testified that he had no prior knowledge of Plaintiff until

7    he was asked to assist with elevator services by Tesla. (Romero Depo.: 66:12-18.) As such,

8    Plaintiff offers no admissible testimony that Romero failed to address any of Plaintiff's alleged

9    harassment complaints while he was a nextSource employee.

10    **C.**    **All Other Facts in Plaintiff's Opposition Demonstrate nextSource's Limited**

11            **Role at the Tesla Factory**

12    None of the facts or admissible evidence Plaintiff presents in his Opposition supports a

13    finding that nextSource employed, supervised, or controlled Plaintiff or any of the individuals

14    that Plaintiff claims engaged in the discriminatory conduct or harassment. Instead, the facts that

15    involve nextSource confirm its role was limited to serving as a liaison between its client (Tesla)

16    and various staffing agencies or "suppliers" to meet Tesla's contingent labor needs. nextSource

17    also gathered information at the direction of Tesla and communicated facts to Tesla or the

18    supplier staffing agency. (McGinn Depo.: 17:15-25, 19:13-25:12, 21:18-25, 42:19-43:7.)

19    This can be seen as nextSource immediately gathered information about the October 17,

20    2015 incident involving Plaintiff and Ramon Martinez and provided this information to Martinez'

21    employer, Chartwell, and Tesla. (Romero Depo.: 186:24-187:9; Wayne Jackson Deposition

22    (Jackson Depo.).: 59:25-60:6, 60:12-62:13, 63:14-65:15, 67:3-17, 68:23-69:13, Exh. 124.)  Tesla

23    decided to counsel Plaintiff and Martinez regarding appropriate behavior in the workplace. (Jackson

24    Depo.: 70:8-22, 72:3-19, Exh. 127.)   The evidence offered by Plaintiff in his Opposition even

25    confirms this fact as Exh. Q to the Supp. Organ Dec. indicates that nextSource's Program Manager

26    at the Tesla Factory, Wayne Jackson, was gathering information into the complaint on October 19,

27    2015. Therefore, Plaintiff's allegation that nextSource waited four days before deciding that it would

28    not formally investigate Plaintiff's complaint is without merit (Plaintiff's Opp. 13:19-20.)

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

1    The actions taken by Jackson after receiving Plaintiff's January 22, 2016 complaint of an

2   offensive picture drawn by Ramon Martinez also fulfilled nextSource's responsibility as liaison

3   at the Tesla Factory. Upon receiving the complaint via email, Jackson forwarded it to Tesla's

4   Building Services Manager, Victor Quintero and alerted Martinez's employer, Chartwell, of the

5   incident. (Jackson Depo.: 31:2-13, 93:22-94:12, Exh. 130.) It was at this time that Jackson alerted

6   the various agencies of Martinez's history with Diaz so they could look into it further. (Plaintiff's

7   Opp. 14:25:28.) Plaintiff and Martinez were also advised to report the incident to their respective

8   employers. (Jackson Depo.: 32:6-10, 82:10-14.) An investigation was performed by Chartwell

9   the very same day as Martinez's employer took immediate corrective action. (Jackson Depo.:

10  96:17-98:4, Exh. 132.) It is not disputed that Jackson made a recommendation regarding the

11  discipline provided to Martinez. (Plaintiff's Opp. 15:14-19) However, with no authority to

12  discipline or terminate temporary workers employed by a staffing agency, the final decision

13  regarding a corrective action was left to Chartwell, Martinez's employer, and Tesla.

14    Finally, Plaintiff again mischaracterizes evidence, so it appears that Jackson unilaterally

15  decided to "replace [Plaintiff] as soon as possible" after receiving a doctor's note that placed him

16  on leave for three weeks. (Plaintiff's Opp. 16:14-16.) However, Jackson's request to replace

17  Plaintiff has been taken out of context as Exh. U to the Supp. Organ Dec. indicates that the

18  decision to replace Plaintiff occurred after Jackson spoke to Romero, who was then a Tesla

19  employee. As shown in the moving papers, Jackson sent an email to DeLeon informing her that

20  Tesla had decided to get another candidate to fill Plaintiff's role. (DeLeon Depo.: 148:18-150:20;

21  Jackson Depo.: 125:15-126:13; Exh. 140.) Jackson and nextSource had no authority to terminate

22  Plaintiff, therefore it was Tesla's decision alone to end Plaintiff's assignment at the Tesla Factory

23  due to his continued unprofessionalism, attendance problems, and failure to return to work.

24  (Jackson Depo.: 125:15-126:13, Exh. 140.)

25  ///

26  ///

27  ///

28  ///

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

1   **III.    ARGUMENT**

2       **A.    <u>nextSource has No Liability Under a Joint Employer Theory</u>**

3           1.    <u>nextSource Cannot be Considered Plaintiff's Employer Under Any Test</u>

4              <u>for Joint Employment</u>

5       Plaintiff's remaining causes of action under 42 U.S.C. § 1981 and the Ralph Civil Rights

6   Act require a finding that nextSource was his joint employer during his assignment at the Tesla

7   Factory. nextSource does not dispute Plaintiff's contention that two entities may simultaneously

8   share control over the terms and conditions of employment, such that both should be liable for

9   discrimination relating to those terms and conditions. (Plaintiff's Opp. 17:6-9.) However, as

10  shown in the moving papers, Plaintiff cannot establish that nextSource satisfies any test for joint

11  employment that would enable him to recover for any claim asserted against nextSource. As a

12  result, nextSource is entitled to summary judgment as a matter of law.

13      Plaintiff rejects the tests for joint employment advanced in nextSource's moving papers

14  from *Martinez v. Combs,* 49 Cal.4th 35 (2010). *See, Salazar v. McDonald's Corp.*, No. 17-15673

15  939 F.3d 1051 (9th Cir. 2019). He distinguishes each test provided by nextSource and instead

16  relies on the 9th Circuit's opinion in *EEOC v. Global Horizons, Inc.* to argue that Tesla, Citistaff,

17  and nextSource were his joint employers at the Tesla Factory. Specifically, he argues that the

18  correct test for joint employment is the "common-law agency test" applied in the Title VII joint

19  employer context (Plaintiff's Opp. at 17:10-12.)[3] The "common-law agency test" requires an

20  analysis of one's control over the details of the work of another by examining "all incidents of

21  the relationship" rather than focusing on any single factor. *Global Horizons*, 915 F.3d 631, 638.

22  _____

23     [3] Plaintiff is ultimately mistaken in his belief that the test for joint employment applied in *Global Horizons,* which is reserved for Title VII cases, is applicable to § 1981 claims. Yet he

24  relies on *Morrow v. City of Oakland* to state that the "Northern District applies the principles applicable in a Title VII discrimination claim when evaluating claims under 42 U.S.C. § 1981. (Plaintiff's Opp. 17 n. 2.) However, the 9th Circuit has yet to adopt a test for joint employment

25  in the context of 42 U.S.C. § 1981 despite holding that the principles applicable in a Title VII discrimination claim are used when evaluating claims under 42 U.S.C. § 1981. The principles

26  referred to by the court are limited to legal principles such as the standard of proof required. *See, Manatt v. Bank of America, NA,* 339 F.3d 792, 797-98 (9th Cir. 2003); *Fonseca v. Sysco Food*

27  *Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). Thus, *Morrow* does not extend the "common-law agency test" applied in Title VII cases to § 1981 claims as joint employment was

28  not contemplated by any of the courts that applied the analysis.

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2

1    Regardless, the tests articulated in *Martinez* and *Global Horizons* both require a finding

2    of an alleged employer's "control" over the terms, conditions, and privilege of employment.

3    Under *Martinez*, an entity is not liable as a "joint employer" unless it: (a) exercises control over

4    wages, hours, or working conditions, (b) suffers or permits the relevant work; or (c) engages in

5    a common law employment relationship. *Martinez,* 49 Cal.4th at 58-64. Similarly, the "common-

6    law agency test" described in *Global Horizons* also examines a series of factors including:

7        The skill required, the source of instrumentalities and tools, the location of the
8        work, the duration of the relationship between the parties, whether hiring party
         has the right to assign additional projects to the hired party, the extent of the hired
9        party's discretion over when and how long to work, the method of payment, the
         hired party's role I hiring and paying assistants, whether the work is part of the
10       regular business of the hiring party, whether the hiring party is in business, the
         provision of employee benefits, and the tax treatment of the hired party. *Global
11       Horizons,* 915 F.3d at 638.

12   As such, the tests in *Martinez* and *Global Horizons* are based on common law and both

13   tests analyze an employer's right to exercise control over the terms and conditions that generated

14   the wrongs. This may explain why the *Global Horizons* Court recognized that there may be little

15   difference in the outcome of a joint employment analysis no matter what test is applied. While

16   rejecting the "economic realities test" the *Global Horizons* Court acknowledged that there may

17   be little functional difference between the common law agency test, the economic reality test,

18   and a third test that blends elements of the first two (the so-called "hybrid" test). *Id.* at 639. As

19   all three tests found in *Global Horizons* are fact intensive and will usually produce the same

20   outcome in a joint employment analysis. *Id.*

21   As shown in the moving papers, the tests in *Martinez* are also fact intensive and will result

22   in the same outcome as the "common-law agency test." Thus, it remains undisputed that

23   nextSource did not direct or control Plaintiff's wages, hours, or working conditions, did not suffer

24   or permit Plaintiff to work, and did not engage Plaintiff to work. It did not recruit, employ, or

25   supervise Plaintiff and did not pay Plaintiff's wages or have any control over his rate of pay.

26   Further, nextSource did not provide training to Plaintiff and Plaintiff was not subject to any of

27   nextSource's employment policies. nextSource also had no authority or discretion to discipline,

28   promote, transfer or terminate Plaintiff's assignment and therefore could not prevent Plaintiff

from working at the Tesla Factory. Ultimately, nextSource did not have control over the terms and conditions that generated the wrongs. Therefore, under both *Martinez* and *Global Horizons*, nextSource did not exercise the requisite control over Plaintiff to be considered his joint employer and is entitled to summary judgment on all claims.

> 2.   Even if Joint Employment Exists, Liability Cannot be Imposed on nextSource under *Global Horizons*

Even if one assumes that nextSource is Plaintiff's joint employer, which it is not, "liability may be imposed for a [joint] employer's discriminatory conduct only if the defendant employer knew or should have known about the other employer's conduct and 'failed to undertake prompt corrective measures within its control.'" *Global Horizons*, 915 F.3d at 638. As such, the 9th Circuit explained:

> As our sister circuits have explained, even if a joint employment relationship exists, one joint employer is not automatically liable for the actions of the other. (See, e.g. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228-29 (5th Cir. 2015); *Whitaker v. Milwaukee County*, 722 F.3d 802, 811-812 (7th Cir. 2014). Liability may be imposed for a co-employer's discriminatory conduct only of the defendant employer knew or should have known about the other employer's conduct and "failed to undertake a prompt corrective measure within its control." EEOC, Notice No. 915.002, *Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, 1997 WL 33159161, at *11 (Dec. 3, 1997). *Global Horizons,* 915 F.3d at 641.

In *Global Horizons*, the 9th Circuit relied, in part on *Whitaker v. Milwaukee County,* 722 F.3d 802 (7th Cir. 2014). The *Whitaker* Court explained, as follows:

> The [staffing] firm is liable if it participates in the client's discrimination. For example, if the firm honors its client's request to remove a worker from a job assignment for a discriminatory reason and replaced him or her with an individual outside of the worker's protected class, the firm is liable for the discriminatory discharge. The firm also is liable if it knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control. *Whitaker v. Milwaukee County*, 722 F.3d 802, 811-812 (7th Cir. 2014), citing *EEOC No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and other Staffing Firms* at 2260 (1997).

Under *Whitaker*, a staffing agency is liable for discriminatory conduct of its joint employer if it participates in the discrimination, or if it knows or should have known of the

FP 36698568.2

client's discrimination but fails to take corrective measures within its control. *Whitaker*, 722 F.3d at 812. Here, Plaintiff proffers no admissible evidence showing that nextSource knew or should have known about the alleged hostile work environment but failed to take corrective measures *within* its control. Throughout Plaintiff's assignment to the Tesla Factory, nextSource served as a liaison between Tesla and Plaintiff's employer, Citistaff. nextSource responded immediately and acted proactively to Plaintiff's complaints by alerting responsible parties. Yet it had no control over the day-to-day direction of Plaintiff's employment as it lacked authority to train, discipline, or terminate temporary workers employed by staffing agencies. Thus, decisions regarding what corrective measures to employ were left to others, outside of nextSource as it did not control the Tesla worksite. Notably, Plaintiff has not pointed to anything that nextSource could have done but failed to do so. As a result, even if joint employment can be established, Plaintiff cannot show that nextSource failed to undertake a prompt corrective measure *within* its control. As a result, liability cannot be imposed on nextSource under *Global Horizons*.

## B. Plaintiff's Claims of Harassment, Discrimination, Retaliation, and Failure to Prevent under 42 U.S.C. § 1981 Fail as No Triable Issues of Material Fact Exist

Plaintiff has not established a *prima facie* case for harassment, discrimination, retaliation, and failure to prevent under 42 U.S.C. § 1981 against nextSource, nor has he raised a triable issue of material fact for these claims. Plaintiff correctly states that a plaintiff does not need to be a party to a contract as a "third-party intended beneficiary of a contract may have rights under § 1981. (Plaintiff's Opp. 21:10-12.) However, he cannot show that he has or would have had rights under an existing (or proposed) contract that he wishes to "make and enforce" or that injuries flowed from a racially motivated breach of that contractual relationship. *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 479-80 (2006). Plaintiff offers no evidence that he was in a contractual relationship or that he had rights under a contract he wishes to enforce with nextSource. Instead, it is undisputed that nextSource was in a contractual relationship with Tesla to facilitate the supply of temporary workers from staffing agencies such as Citistaff. Therefore, ///

FP 36698568.2

the rights to employment and remuneration in return for his work at the Tesla Factory described in his Opposition were not dictated by any contract entered by nextSource.

To the extent that those rights exist, they arose directly from his contract with his employer, Citistaff. Yet, Plaintiff provides is no evidence that nextSource interfered with or caused a breach of Plaintiff's employment relationship with Citistaff. He also does not dispute the fact that he remains on Citistaff's register as a temporary employee who is eligible for new assignments. Therefore, the only contract from which Plaintiff has rights applicable for § 1981 remains intact. Additionally, he cannot prove that he was subjected to discrimination, harassment or retaliation by nextSource that was motivated by discriminatory intent due to his race. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186 (1989). Or that nextSource subjected him to an adverse employment action as nextSource could not discipline, demote, terminate or, in any other way, treat Plaintiff differently than any other temporary worker not in Plaintiff's protected class.

The remainder of Plaintiff's § 1981 claim is predicated on a finding that nextSource was his joint employer at the Tesla Factory. However, as shown above, nextSource acted a liaison that was responsible for facilitating the flow of information to and from Tesla to entities providing temporary workers. As a liaison, it did not have any authority to make decisions concerning Plaintiff or any other temporary employee. Plaintiff offers no evidence that contradicts the role given to nextSource that would allow it to ratify any of the alleged discriminatory conduct referenced in his Opposition.

Plaintiff has not shown that nextSource was made aware of the purported racial harassment and discrimination he experienced when supervisors Ramon Martinez and Michael Hurtado allegedly called him the N-word sixty times. (Plaintiff's Opp. 22:24-26.) Therefore, it cannot be proven that their actions were ratified by nextSource. (Plaintiff's Opp. 22:24-26.) Nor is there a dispute regarding the actions taken by nextSource to address his July 31, 2015 complaint against Judy Timbreza. As shown above, the investigation of the Timbreza incident was handled by Tesla with no involvement from nextSource. (Romero Depo.: 65:23-66:18, 157:15-158:3, Exh. 43; McGinn Depo.: 171:5-10.) While it is true that nextSource gave Timbreza a warning as directed by Tesla at the conclusion of its investigation, its inability to produce the warning cannot be used

1    to support an argument that nextSource ratified Timbreza's alleged conduct as the warning was

2    <u>verbal</u>.

3         Further, it is also undisputed that nextSource immediately gathered information about the

4    October 17, 2015 incident involving Plaintiff and Ramon Martinez and provided this information

5    to Martinez' employer (Chartwell) and Tesla. (Romero Depo.: 186:24-187:9; Wayne Jackson

6    Deposition (Jackson Depo.).: 59:25-60:6, 60:12-62:13, 63:14-65:15, 67:3-17, 68:23-69:13, Exh.

7    124.) Or that the prompt action taken by Jackson to inform the involved entities after receiving

8    Plaintiff's January 22, 2016 complaint of an offensive picture drawn by Ramon Martinez also

9    fulfilled nextSource's responsibility as a liaison lacking authority to discipline or terminate

10   temporary workers employed by a staffing agency. (Jackson Depo.: 31:2-13, 93:22-94:12, Exh.

11   130.) As a result, none of the complaints Plaintiff utilizes for his § 1981 claim changes the

12   undisputed fact that nextSource could have done more to prevent harassment or discrimination.

13        The fact remains that nextSource lacked control over the terms and conditions of Plaintiff's

14   employment and that of the alleged harassers at the Tesla Factory. As a result, any retaliation,

15   failure to prevent claims, or argument that that harassing conduct can be imputed on nextSource

16   due to the failure to take effective action to end harassment necessarily fails. (Plaintiff's Opp.

17   23:13-16.)

18        **C.    <u>Plaintiff's Ralph Act Claim Fails</u>**

19        Plaintiff supports his claim under the Ralph Act with the argument that nextSource is

20   vicariously liable for the acts of Chartwell employee, Ramon Martinez because it had actual

21   notice of the October 17, 2015 incident involving Plaintiff. (Plaintiff's Opp. at 27:8-11.) For

22   vicarious liability to apply, Plaintiff must first prove that nextSource was Martinez's employer.

23   As shown above, he cannot under any test for joint employment. Therefore, it remains undisputed

24   that no nextSource employee threatened Plaintiff. Moreover, Plaintiff presents no evidence that

25   Martinez's alleged threatening conduct towards Plaintiff was motivated because of Plaintiff's

26   race and instead asks the Court to make an inference of racist motivation based on Martinez'

27   actions that predate and occurred after the October 17, 2015 incident. (Plaintiff's Opp. 27:16-

28   21.) Regardless, as shown above, nextSource promptly investigated the incident and therefore

1   nothing nextSource did or did not do could be considered a substantial factor in causing Plaintiff

2   any harm, including interference with his constitutional rights.

3          Plaintiff relies on one case to support his claim where a state agency was held liable for

4   sexual assault committed by one of its employees. (Plaintiff's Opp. at 27:6-7 citing *Roe v. DDS*

5   2017 WL 2311303.) However, the *Roe* case is inapposite to the one here as Martinez was not and

6   cannot be considered an employee of nextSource. Therefore, no genuine issue exists regarding

7   threats of violence against Plaintiff by nextSource, particularly based on race. Nor is there a

8   genuine issue regarding whether Plaintiff was harmed by nextSource based on violence and/or

9   threats of violence. Accordingly, Plaintiff's claim under the Ralph Act must be dismissed.

10         **D.     Plaintiff's Claim for Punitive Damages is Meritless**

11         Under all of Plaintiff's remaining claims, there are no allegations that an officer, director,

12  or managing agent of nextSource personally committed acts of oppression, fraud, or malice.

13  Plaintiff argues that under federal law, a supervisor who has been delegated the duty to prevent

14  harassment or discrimination by an employer is deemed a managing agent as a matter of law.

15  (Plaintiff's Opp. 28:10-13).

16         Specifically, Plaintiff points to Romero and Jackson's roles at nextSource wherein they

17  were tasked with receiving and responding to complaints but fails to acknowledge that

18  nextSource was not his employer and Romero and Jackson merely acted as a liaison that gathered

19  information following a complaint of harassment and discrimination. Consistent with this role,

20  any response issued was done so at the direction of Tesla or any staffing agency that employed

21  the temporary worker. Therefore, Romero and Jackson were not delegated a duty to prevent

22  harassment or discrimination and instead were responsible for investigating a complaint. As a

23  result, Plaintiff offers no facts to create a genuine issue that an officer, director, or managing

24  agent of nextSource authorized or ratified an employee's act of oppression, fraud, or malice.

25  Accordingly, Plaintiff's prayer for punitive damages against nextSource should be stricken.

26  ///

27  ///

28  ///

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES

FP 36698568.2

1    **IV.     CONCLUSION**

2          For the reasons set forth above, and in nextSource's Motion and Memorandum of Points

3    and Authorities, the Court must grant its Motion for Summary Judgment in its entirety and enter

4    judgment in nextSource's favor.

5     Dated:  December 5, 2019                    Respectfully submitted,

6                                                 FISHER & PHILLIPS LLP

7

8                                        By:    _/s/ Vincent J. Adams_
                                                JASON A. GELLER
9                                               JUAN C. ARANEDA
                                                VINCENT J. ADAMS
10                                              Attorneys for Defendant
                                                nextSource, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NEXTSOURCE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES
FP 36698568.2