JASON A. GELLER (SBN 168149)
Email: jgeller@fisherphillips.com
JUAN C. ARANEDA (SBN 213041)
Email: jaraneda@fisherphillips.com
VINCENT J. ADAMS (SBN 249696)
Email: vadams@fisherphillips.com
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
San Francisco, California 94111
Telephone: (415) 490-9000
Facsimile: (415) 490-9001

Attorneys for Defendant
nextSource, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,

Plaintiffs,

vs.

TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; NEXTSOURCE, INC.; DOES 1-50 inclusive,

Defendants.

Case No: 3:17-cv-06748-WHO

[*Removed from Alameda Superior Court, Case No. RG17878854*]

**SUPPLEMENTAL DECLARATION OF VINCENT J. ADAMS IN SUPPORT OF DEFENDANT NEXTSOURCE, INC.'S REPLY TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF ISSUES**

Date: December 17, 2019
Time: 9:30 a.m.
Courtroom: 2, 17th Floor
Judge: Hon. William H. Orrick

FAC Filed: December 26, 2018
Trial Date: March 2, 2020

**DECLARATION OF VINCENT J. ADAMS**

I, Vincent J. Adams, declare as follows:

1. I am an attorney with the law firm of Fisher & Phillips LLP, attorneys of record for Defendant nextSource, Inc. ("Defendant") in this action. I am duly licensed to practice law in the State of California and before the United States District Court for the Northern District of California. I make this supplemental declaration in support of Defendant nextSource, Inc.'s Reply to Motion for Summary Judgment or, in the alternative, Motion for Summary Adjudication of Issues. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could competently testify to these facts.

2. Attached hereto as **Exhibit "A"** is a true and correct copy of the March 24, 2015 Services Agreement Between CitiStaff Solutions, Inc., and nextSource, Inc. (Bates Labeled: DEF000091-DEF000102). Exhibit A was produced by Defendant Citistaff Solutions, Inc. during the course of litigation on November 21, 2019.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct. Executed this 5th day of December 2019 in San Francisco, California.

*Vincent J. Adams*
VINCENT J. ADAMS

# EXHIBIT A



# SERVICES AGREEMENT

This Payrolling Services Agreement (the "Agreement"), is made this 24th day of March, 2015 (the "Effective Date") between nextSource Inc. ("nextSource") having an office at 1040 Avenue of the Americas, 24th Floor, New York, NY 10018 and Citistaff Solutions, Inc. ("Supplier"), with an office at 111 W. Town and Country Road, Suite 50, Orange, CA 92868.

## RECITALS

WHEREAS nextSource maintains a Master Services Agreement with Tesla Motors Inc. (the "Client") to supply temporary staffing services ("Staffing Services") to include third party employer of record services ("Payrolling Services") and desires to, from time to time, engage the assistance of Supplier on a subcontract basis to fulfill both Staffing and Payrolling Services (collectively referred to hereafter as "Services"); and

WHEREAS Supplier is in the business of providing such Services and desires to partner with nextSource in providing these Services to Client;

NOW, THEREFORE, in consideration of the promises and agreements contained herein, the parties mutually agree as follows:

## 1. SCOPE OF SERVICES

1.1 At the request of nextSource, Supplier agrees to engage candidates referred by nextSource ("Payrolling Services") or sourced by Supplier ("Staffing Services") as Supplier Employees to perform services through temporary work assignments ("Contracted Services"), to meet the requirements of the Client, in accordance with all of the terms, provisions and obligations under this Agreement and any applicable Task/Work Orders.

1.2 At nextSource's option, nextSource may nextSource may utilize a third party internet enabled, centralized vendor management services (VMS) technology application (the "Technology") to enable Supplier to access openings, to submit candidates, to track time worked and to invoice. nextSource will provide necessary training to Supplier in the use of the Technology as applicable. All temporary work assignments will be documented through manual Task/Work Orders until such time as the Technology may be deployed. Unless approved by nextSource, a Supplier Employee shall not commence work against a work assignment until such assignment is documented and approved in writing or through the Technology via an approved Task/Work Order.

1.3 The term "Supplier Employee" means any individual performing Contracted Services for the Client who has been furnished by Supplier pursuant to this Agreement. Supplier may not use subcontractors to provide Services hereunder.

1.4 Supplier will insure that the pre-screening guidelines as set forth in Schedule B – Pre-Screening Guidelines, attached hereto and made a part hereof, are fully complied with prior to any Supplier Employee beginning an assignment at Client. No Supplier Employee will begin an assignment at Client without satisfactorily completing all required screening as set forth herein. Supplier will be required to provide documentation to nextSource, as requested, to insure compliance with all requirements of this Paragraph 1.4. It is understood that the Supplier shall be responsible for all costs related to the screening set forth herein.

nextSource

1.5 Supplier further agrees to comply with the following:

(a) The Client has the right at any time and for any lawful reason to reject or have Supplier remove any Supplier Employee from performing Contracted Services under this Agreement upon notice to Supplier by nextSource or Client. If Supplier is notified of the removal request within the first four (4) hours of the assignment start date and time, all charges for such Supplier Employees, excluding referred candidates (Payrolling Services), will be waived by Supplier.

(b) In the event that Supplier Personnel, excluding Tesla sourced Supplier Personnel, do not meet Tesla's performance requirements, Tesla may request Supplier to immediately remove such Supplier Personnel.

(c) Client reserves the right to deny any such individual further access to the premises;

(d) Instruct all Supplier Employees that their employer is at all times Supplier, not the Client or nextSource;

(e) Be responsible for all employer-employee matters including, but not limited to, hiring, firing, discipline, payroll practices, employee benefits and any other communications with Supplier Employees with respect to their duties as employees; and

(f) Insure Supplier Employees execute any Client or nextSource required forms related to the Supplier Employees' assignments with Client.

1.6 It is expressly understood and agreed that nextSource may obtain Services during the term of this Agreement from Supplier or from any other supplier, as nextSource, in its sole discretion, determines.

## 2. TERM AND TERMINATION

2.1 The initial term of this Agreement will be one (1) year, commencing on the Effective Date and will automatically renew thereafter for consecutive one (1) year renewal terms. This Agreement may be terminated by either party during the term of this Agreement by giving thirty (30) days prior written notice of termination to the other party

2.2 If any Supplier Employee is performing Contracted Services at the time this Agreement is terminated, the Client will choose whether to continue or terminate such Contracted Services. If Contracted Services are continued, this Agreement and the applicable Task/Work Order will apply to any such continuation of Contracted Services.

2.3 In the event that either party breaches this Agreement, which breach is not cured within thirty (30) days after notice is given to breaching party or within any other interval as agreed upon by the parties, the non-breaching party may terminate this Agreement at the end of such thirty (30) day cure period, unless otherwise agreed.

2.4 If this Agreement is terminated, in accordance with Paragraph 2.3 by nextSource, all Supplier Employees performing Contracted Services at the date of termination will be transferred to nextSource or another nextSource designated supplier, effective on the date of termination, without any compensation to Supplier except for payment for Contracted Services rendered prior to the date of termination.

## 3. RETURN OF NEXTSOURCE AND CLIENT PROPERTY

Upon any termination, cancellation or completion of Contracted Services performed hereunder or upon any change of Supplier Employee performing Contracted Services, Supplier shall be responsible for the immediate collection and return of any and all property that

nextSource

may have been furnished to Supplier Employee by nextSource or Client to perform Contracted Services. In addition, Supplier will reimburse nextSource and Client for any property not returned or any damaged property. nextSource may withhold payment to the Supplier until all responsibilities under this Paragraph have been fulfilled.

## 4. RATES, INVOICING & PAYMENTS

4.1 Supplier shall insure that Supplier Employees report all time worked and will submit invoices for Supplier Employees according to the procedures established by nextSource.

4.2 Supplier shall pay Supplier Employees at the rate specified by nextSource less all legally required withholdings, and assumes responsibility for remitting all required taxes and withholdings with respect to the Supplier Employees under all applicable federal, state and local laws;

4.3 Bill Rates for Supplier Employees will be negotiated for each Supplier Employee and documented in the applicable Task/Work Order. Markups to be used to create the applicable Bill Rates will be in accordance with Schedule A – Pricing & Compensation attached hereto. Markups will include all Supplier costs associated with the Supplier Employee including, but not limited to, employer taxes, insurance, benefits, etc.

4.4 nextSource shall reimburse Supplier for any reasonable travel and living expenses incurred by a Supplier Employee performing Contracted Services hereunder provided that such expenses are authorized in advance by Client and approved by Client. These costs shall be invoiced as a direct "pass through" and shall not include any administrative markups by Supplier.

4.5 nextSource will reimburse Supplier for Personal Protection Equipment (PPE) and uniforms that are not provided by Client. Such expenses shall be invoiced as a direct "pass through" and shall not include any administrative markups by Supplier. All such expenses shall be approved, in advance, by Client or nextSource.

4.6 nextSource agrees to pay Supplier based on proper and approved invoices within ten (10) business days of receiving payment from the Client for said invoices. nextSource's payment terms with Client are Net 45.

4.7 Any sales, value added, use or other similar tax imposed on the Contracted Services provided under this Agreement will be paid by Client. A charge for any such taxes will be included on Supplier's invoices as a separate line item.

4.8 Notwithstanding any provision in this Agreement to the contrary, Supplier acknowledges and agrees that any payment due to Supplier from nextSource under this Agreement is contingent upon receiving payment from the Client.

4.9 In order to accommodate the Client requirement for timely billing, charge verification and proper budgeting the Supplier must invoice for all labor and expense charges within sixty (60) days from the date the charge is incurred in order to be a compensable charge or expense. Should Supplier nonetheless submit a late charge, nextSource shall be under no obligation to invoice the Client and any such submission by nextSource shall be deemed an accommodation and not a waiver or evidence of validity of the charge. The Supplier agrees that the Client concern and requirement is reasonable and hereby waives any rights it has or may have to later bill or receive payment for any such late billings whether in law or equity.

## 5. AUDIT AND PAYMENT ADJUSTMENT

Supplier agrees to maintain accounting records in accordance with generally accepted

nextSource

accounting principles necessary to disclose the basis for any charges billed to nextSource under this Agreement, and will make them available for examination and audit by nextSource and its agents prior to, and for a period of three (3) years after, receipt by Supplier of final payment under this Agreement. It is also understood that such audit may also include a review of all other processes and records required to be followed or retained under this Agreement.

6. REPRESENTATIONS AND WARRANTIES

6.1 Supplier represents that Supplier has the corporate authority to carry out its obligations under this Agreement and is not subject to any contractual or other legal impediment, which would restrict, impair or prevent Supplier from performing all obligations under this Agreement.

6.2 The Services and Contracted Services provided by Supplier and Supplier Employees under this Agreement shall be rendered in a professional and workmanlike manner.

7. TECHNOLOGY

nextSource may utilize a designated Technology at its discretion, to assist nextSource in the provision of its Staffing Services under this Agreement. Supplier's use of the Technology is limited to Supplier's internal use in connection with this Agreement. In this regard Supplier shall comply with the following:

a) Supplier shall not sell, assign, sublicense, grant a security interest in or otherwise transfer any right in the Technology to other parties or permit the use of the Technology by any third parties, except as may be authorized in writing by nextSource.

b) Supplier shall not copy, modify, create a derivative work of, reverse engineer, reverse assemble, or otherwise attempt to discover any source code.

c) Supplier is responsible for its data that Supplier posts on the Technology, or transmits to nextSource.

d) Supplier agrees that this Agreement does not provide Supplier with any ownership interests in the Technology;

e) Supplier shall indemnify and defend nextSource for any claims against nextSource or its agents and employees that arise out of or relate to Supplier's failure to comply with the terms set forth in this Agreement for Supplier's use of the Technology.

8. OWNERSHIP OF INVENTIONS

8.1 Supplier shall require each Supplier Employee providing Contracted Services hereunder to agree, in writing, that, to the maximum extent permitted by law, all ideas, inventions, developments or improvements conceived or created while engaged in rendering Contracted Services under this Agreement that relate to work or projects being performed for Client, shall be the sole and exclusive property of Client. Supplier will and will require each Supplier Employee providing Contracted Services hereunder to execute and deliver all documents necessary or requested by Client to achieve Client's sole and exclusive ownership right, title and interest to the property, including but not limited to assignments of any Letter Patents, Copyrights and applications therefore in all countries.

8.2 Supplier hereby represents and warrants that Supplier or Supplier Employee will not infringe upon any copyright, patent, trademark, trade secret, privacy, publicity, or other proprietary rights of any person or entity not a party of this Agreement.

9. CONFIDENTIALITY AND



NONDISCLOSURE

In the course of performing the Services and Contracted Services hereunder, Supplier or its Supplier Employees may have access to information relating to the business affairs of nextSource or Client or of their parent, subsidiaries or affiliated corporations. Supplier acknowledges and agrees that all such information constitutes nextSource's or Client's Confidential Information and Trade Secrets (hereinafter "Confidential Information and Trade Secrets") and are the exclusive intellectual property of their respective parties. Supplier and Associate vendor Employees will maintain the confidentiality of all Confidential Information and Trade Secrets which may be disclosed to it during the course of performing Contracted Services hereunder; will not divulge, furnish, make available or in any other manner disclose the Confidential Information or Trade Secrets except as reasonably necessary for the performance of its obligations hereunder; will take such action, and will cause its officers, Supplier Employees, agents, contractors and all other persons or entities to whom the Confidential Information or Trade Secrets is disclosed to take such action, as is reasonably necessary to preserve and protect the confidentiality of the Confidential Information and Trade Secrets; and will not use the Confidential Information or Trade Secrets for any purpose other than for the performance of the Contracted Services and Services hereunder. Supplier and its Supplier Employees' obligation of confidentiality as set forth herein will survive the expiration, termination or cancellation of this Agreement.

10. RELATIONSHIP OF PARTIES

10.1 Supplier agrees and acknowledges that Supplier's relationship to nextSource and Client is that of an independent contractor and neither Supplier nor its Supplier Employees shall be construed to be employees of nextSource or Client. Throughout the term of this Agreement Supplier shall retain the right to perform services for others, except that Supplier may not incur any obligation which interferes with its ability to perform the Services and Contracted Services hereunder in a timely and satisfactory manner.

10.2 The parties acknowledge and agree that, as an independent contractor, neither Supplier nor its Supplier Employees are entitled to any employee benefits provided by nextSource or Client to their employees. Supplier shall be solely responsible for any benefit coverage for Supplier and its Supplier Employees. Supplier will, at its own cost and expense, comply with all applicable federal, state and local laws, statutes, ordinances, rules, regulations, orders and requirements, whether now in force or hereafter enacted, relating to, concerning or affecting Supplier's Employees, pay all federal, state and local payroll taxes, social security, unemployment and other taxes, sick pay, contributions or premiums which are required by law to be paid and/or withheld with respect to Supplier's Employees, and will pay and maintain; Workers Compensation Insurance with respect to all persons employed by Supplier in connection with its performance of the Contracted Services hereunder.

10.3 Nothing contained herein shall be deemed or construed to create the relationship of employer and employee, principal and agent, partnership, joint venture, or of any association or relationship whatsoever between nextSource or Client and Supplier or nextSource or Client and Supplier's Employees, other than the relationship of independent contractors.

10.4 Additionally, Supplier agrees to indemnify and hold nextSource and Client harmless of any claims, fines, penalties, expenses (including but not limited to, reasonable attorneys' fees), damages, suits, settlements or losses incurred by, or threatened against nextSource and Client which arise out of or result from any worker misclassification of any Supplier Employee.

11. NON-SOLICITATION

nextSource

11.1 Supplier also agrees that during the term of this Agreement and for six (6) months following the termination of this Agreement, Supplier agrees not to solicit, or attempt to solicit, either directly or indirectly, Services from the Client unless formally solicited by Client through a Request for Proposal process.

11.2 For the term of this Agreement and for one year thereafter, both parties shall not solicit directly or indirectly any employee of the other party for other employment opportunities. Supplier shall not solicit directly or indirectly any employees of nextSource or Client for other employment opportunities. In the event of such solicitation by Supplier, nextSource shall have the right to immediately terminate this Agreement without any prior notice to Supplier. For the purposes of this Paragraph, solicitation shall not include employees responding to general advertising activities.

## 12. INSURANCE

Supplier shall at all times during the term of the Agreement, and for so long after its termination as may be necessary, properly maintain, at its sole cost and expense, the following coverage with financially reputable insurers that are licensed to do business in all jurisdictions where work is performed and that are reasonably acceptable to nextSource:

(a) Commercial general liability insurance with minimum coverage of at least One Million Dollars ($1,000,000) combined single limit per occurrence and Two Million Dollars ($2,000,000) general aggregate, naming nextSource and Client as an additional insured. This will include coverage for: bodily injury; property damage; premises and operations; products and completed operations; broad form property damage including completed operations; explosion, collapse, underground hazards; contractual liability; contractors' protective liability; and personal injury liability.

(b) Employer's liability insurance with minimum coverage of at least One Million Dollars ($1,000,000). Supplier shall also comply with all applicable workers' compensation and/or other laws that may accrue in favor of any Supplier Employees in all locales where Supplier Employees perform(s) hereunder.

(c) Automobile liability insurance on all owned, non-owned and/or hired vehicles with minimum coverage of at least One Million Dollars ($1,000,000) combined single limit per occurrence for bodily injury and/or property damage, and physical damage insurance for the actual cash value of each such vehicle.

(d) All risk property perils insurance covering the full replacement value of Client property while in Supplier's care, custody, or control and naming Client as loss payee.

(e) Errors and Omissions Liability Insurance covering liability for loss or damage due to an act, error, omission or negligence, with a minimum limit per event of One Million Dollars ($1,000,000).

Supplier will be responsible for all deductibles and retentions with regard to its insurance. In the case of loss or damage or other event that requires notice or other action under the terms of any insurance coverage described above, Supplier will be solely responsible for taking such action. Supplier will provide nextSource with contemporaneous notice and such other reasonable and relevant information as nextSource or Client may request regarding the event. The policies shall: (a) be primary and not contributory with any liability coverage carried by Client or any Affiliate of Client; (b) name nextSource and Client and any other entity reasonably requested by nextSource as additional insureds; (c) provide for severability of interests; (d) provide for waiver of subrogation; (e) be with one or more insurance companies rated A minus or better (as determined by A.M. Best & Company), and licensed to do business in the locations where Contracted Services are to be performed; and (f) require the insurer to give nextSource at least 30 days' prior



written notice of any restrictive change, non-renewal or cancellation that may affect nextSource's or Client's rights thereunder. Supplier will furnish to nextSource a certificate evidencing such coverage, upon request.

## 13. INDEMNIFICATION

13.1 Each party agrees to indemnify, defend and hold harmless the other party, its affiliates, customers, employees, successors and assigns from and against any losses, damages, claims, fines, penalties and expenses (including reasonable attorney's fees) that arise out of or result from: (1) injuries or death to persons or damage to property, including theft, in any way arising out of or caused or alleged to have been caused by the indemnifying party or in connection with this Agreement and (2) its failure to perform its obligations under this Agreement.

13.2 Furthermore, Supplier agrees to indemnify, defend and hold harmless nextSource, Client and their affiliates, customers, employees, successors and assigns from and against any losses, damages, claims, fines, penalties and expenses that arise out of or result from any action by a Supplier Employee except to the extent that such claim is solely attributable to and directly caused by the gross negligence or intentional misconduct of nextSource or Client.

13.3 Supplier shall agree to defend and/or handle at its own expense, any claim or action against nextSource or Client and/or their affiliates, for actual or alleged infringement of any trademark, patent, copyright or similar property right (including, but not limited to, misappropriation of trade secrets) relating to the Services and Contracted Services furnished hereunder by Supplier or Supplier Employees. Supplier shall further agree to defend, indemnify and hold nextSource or Client and/or their affiliates harmless from and against any and all liabilities, losses, costs, damages, and expenses (including reasonable attorneys' fees) in any such claim or action incurred by nextSource or Client and/or their affiliates hereunder. If any of the Contracted Services become, or in Client's or nextSource's opinion, is likely to become, the subject of an infringement claim, Client may, at its sole option, require Supplier to (i) procure for Client the right to continue using the deliverable, (ii) modify the deliverable so that it is no longer infringing, (iii) replace the deliverable, or (iv) accept the return of the deliverable and give Client an immediate refund for the fees paid hereunder.

## 14. LIMITATION OF LIABILITY

(a) Except as provided in Section (b) below, neither Party will be liable to the other for any consequential, incidental, indirect or punitive damages, or any loss of revenue, business, savings or goodwill, regardless of the form of action or the theory of recovery, even if it has been advised of the possibility of such damages.

(b) The limitations and exclusions set forth in Paragraph (a) above will not apply with respect to: (i) damages attributable to intentional torts, unlawful conduct or gross negligence; (ii) claims that are the subject of indemnification pursuant to Section 13 (Indemnification); (iii) damages attributable to Supplier's breach of its obligations with respect to nextSource and Client Confidential Information; (iv) intentional misappropriation or intentional infringement of a Party's Intellectual Property Rights; or (v) damages attributable to Supplier's wrongful cessation or abandonment of the Contracted Services or Services.

(d) The Parties agree that the following will be considered direct damages: (i) costs and expenses of recreating or reloading any lost, stolen, corrupted or damaged Client Data; (ii) costs and expenses of implementing a work-around in respect of a failure to provide any Contracted Services as required by the Agreement; (iii) straight time, overtime and related expenses, including overhead allocations for employees, wages and salaries of additional employees, travel expenses, overtime expenses, telecommunications charges and similar charges, incurred in connection with clauses (i) and (ii) above

nextSource

due to Supplier's failure to perform in accordance with the Agreement; (iv) damages suffered by any Client Affiliate that would be direct damages if they had instead been suffered by Client; and (v) payments, fines, penalties or interest imposed by a governmental body or regulatory entity to the extent caused by Supplier.

## 15. FORCE MAJEURE

Force Majeure means an event beyond the reasonable control of a Party that delays or prevents the Party from performing its obligations under this Agreement, provided that (a) the non-performing Party is without fault in causing or failing to prevent the event, and (b) the event cannot be circumvented through the use of commercially reasonable alternative sources, workaround plans or other means. The affected Party will promptly notify the other Party of any Force Majeure Event and of its plans and efforts to implement a work-around, in which case the affected Party will be excused from further performance of the affected obligations as long as the Force Majeure Event continues. The affected Party will continue to use Commercially Reasonable Efforts to perform to the extent possible and will comply with any applicable disaster recovery obligations. The affected Party will notify the other Party promptly when the Force Majeure Event has abated. If a Force Majeure Event prevents performance of the Contracted Services hereunder for more than thirty consecutive days, then nextSource may terminate the assignment or the Agreement as of a date specified by nextSource in a written notice of termination to Supplier, in which case nextSource will pay Supplier's charges for all Contracted Services actually performed, but will not be liable for payment of any early termination charges or demobilization costs for the terminated Contracted Services.

## 16. MISCELLANEOUS

16.1 Severability In the event that any of the provisions of this Agreement are held by a court of competent jurisdiction to be illegal, invalid or unenforceable, such provisions will be limited or eliminated to the minimum extent necessary so that this Agreement will otherwise remain in full force and effect.

16.2 Waiver The failure of a party to enforce at any time the provisions of this Agreement shall not be construed as a waiver of any provision of this Agreement, or of the right of such party thereafter to enforce each and every provision of this Agreement.

16.3 Entire Agreement Unless otherwise set forth in this Agreement, this Agreement and all applicable Task Orders contain the entire agreement between the parties with respect to the subject matter hereof and supersedes all agreements and understandings between the parties concerning the subject matter hereof. This Agreement cannot be altered or modified except in writing, signed and mutually agreed to by duly authorized representatives of both parties.

16.4 Assignment Neither party may assign this Agreement, or delegate any rights or obligations under this Agreement, without the prior written consent of the other party; except that nextSource may, without the other party's consent, assign this Agreement or any of its rights or obligations under this Agreement: (1) to any affiliate of nextSource, (2) to any purchaser of all or substantially all nextSource's assets or (3) to any successor of nextSource by way of merger, consolidation or similar transaction. Subject to the foregoing, this Agreement will be binding upon, enforceable by, and inure to the benefit of the parties and their respective successors and permissible assigns.

16.5 Compliance With Laws

(a) Supplier will, at its cost and expense, obtain all necessary regulatory approvals, licenses, and permits (collectively, "Permits") applicable to its business and comply with all laws applicable to its business or the performance of its

nextSource

obligations under this Agreement, as such laws may be revised from time to time. Supplier shall provide copies of any such Permits at nextSource's request.

(b) Supplier will comply with, and perform the Services and Contracted Services in compliance with, all laws pertaining to: (i) occupational safety and health; (ii) protection of persons and property from death, injury or damage; (iii) the environment and the use, handling, storage, labeling and disposal of toxic or hazardous materials; (iv) labor and employment conditions; (v) wages and hours; (vi) workmen's compensation and unemployment insurance, (vii) affirmative action and equal employment opportunity; (viii) the Patient Protection and Affordable Care Act (PPACA). and (ix) to the extent relevant to Supplier's performance of Services and Contracted Services, laws with respect to data privacy, data protection, and consumer privacy.

(c) To the extent not prohibited by law, Supplier will promptly notify nextSource in writing of any investigation or inquiry into whether Supplier (or any of its subcontractors) is charged with failing to comply with any laws that may or will impact, or are otherwise applicable to, Supplier's performance under this Agreement.

(d) Supplier will comply with any Client policies, standards, rules, and procedures (collectively, "Client Policies") applicable to performance of the Contracted Services or the Client Facility that are disclosed to Supplier in writing.

16.6 Arbitration Except as otherwise provided governed by, interpreted and construed in accordance with the laws of the State of New York, without regard to its choice of law provisions. Commercial Rules. Any arbitration will be conducted at facilities maintained by the American Arbitration Association for that purpose in the State of New York, City of New York. The arbitrator's award will be enforceable in any court having jurisdiction thereof. The Arbitrator will have the authority to award the cost of arbitration to either party or to apportion the cost between both parties. Nothing in this Section will be construed to preclude any party from seeking injunctive relief in order to protect its rights pending arbitration.

16.7 Injunctive Relief In the event of a breach of this Agreement, the non-breaching party shall be entitled to immediate injunctive relief to prevent any continuing breach hereof, nextSource and Supplier hereby agreeing that irreparable damage will result in the absence of such injunctive relief.

16.8 Governing Law This Agreement will be governed by, interpreted and construed in accordance with the laws of the State of New York, without regard to its choice of law provisions.

16.9 Headings The headings of the paragraphs of this Agreement are inserted solely for the parties' convenience, and in no way define, limit, extend or aid in the construction of the scope, extent or intent of this Agreement, or of any term or provision hereof.

16.10 Survival of Obligations Supplier's obligations under this Agreement which by their nature would continue beyond the termination of this Agreement shall survive termination of this Agreement.

16.11 Notices Any notice or communication under the terms of this Agreement will be in writing and will be given or made by hand delivery, confirmed facsimile, U.S. mail or overnight express carrier addressed to the respective parties as follows:

To nextSource:

nextSource Inc.
1040 Avenue of the Americas,
24th Floor, New York, NY 10018



Attn: Mr. Will Morse
Facsimile Number: 212-736-5870

Copy to:
Director of Supplier Partnerships
Same Address as Above

To Supplier:

Citistaff Solutions, Inc.
111 W. Town and Country Road, Suite 50,
Orange, CA 92868
Attn: Bruce Wismer
Phone Number: 909-855-0881
Email: bwismer@citistaffsolutions.com

Such notice or demand will be deemed to have been given or made when sent by facsimile or when deposited, postage prepaid in the U.S. mail or with an overnight express carrier. The above addresses may be changed at any time by giving prior written notice as above provided.

IN WITNESS WHEREOF, the parties executed this Agreement as of the Effective Date.

| **NEXTSOURCE INC.** | **CITISTAFF SOLUTIONS, INC.** |
|---|---|
| BY: [signature] | BY: [signature] |
| NAME: Randi Korobelnik | NAME: Bruce Wismer |
| TITLE: Director of Supplier Partnerships | TITLE: Director of Sales |
| DATE: 3/27/2015 | DATE: March 24th, 2015 |




## Schedule A – Pricing and Compensation

The following table includes the markups that will be applied over the pay rates for Supplier Employees under this Agreement. nextSource will identify the applicable Position Type/Category for each Supplier Employee.

| Markup Table | | | | |
|---|---|---|---|---|
| Position Type/Category | Markups | | | |
| | Referred Candidates | | Sourced Candidates | |
| | CA | NV | CA | NV |
| Light Construction | | | | |
| Building Maintenance | | | | |
| Janitorial | | | | |
| Food Service | | | | |

- The Bill Rates will remain fixed for the duration of the applicable assignment. Bill Rates may be changed only with the approval of nextSource and Client.
- Any overtime required by law to be paid to Supplier Employees will be invoiced to nextSource at times the Straight Time Bill Rates. All overtime must be pre-approved by Client.



## SCHEDULE B

## PRE-SCREENING GUIDELINES

a. Prior to assigning any Supplier Employee to perform Contracted Services, Supplier shall perform background checks of the personnel. Such background checks will include the following, at a minimum: felony and misdemeanor criminal checks (7 years prior to coming onto Client's site for federal and county) and social security verification. In addition, Supplier will use its best efforts to perform the following additional checks: (i) education verification (highest degree obtained) and (ii) prior employment verification for all employees for 7 years prior to coming on Client's site. nextSource may require Supplier to provide written evidence of successful background checks on Supplier Employees at any time. Unless prohibited by law, Supplier may not assign any person to perform Contracted Services for Client who was convicted of a crime without Client's prior written consent.

b. Supplier is responsible for validating the identity of and ensuring that Supplier Employees assigned to perform Contracted Services (i) have the legal right to work in the country in which they are assigned to work, and (ii) conform to all applicable Client Policies (furnished to Supplier) with respect to personal and professional conduct, including the wearing of an identification badge and adhering to general safety, dress, behavior, and security practices.

GARY T. LAFAYETTE (SBN 88666)
SUSAN T. KUMAGAI (SBN 127667)
CHERYL A. STEVENS (SBN 146397)
LAFAYETTE & KUMAGAI LLP
1300 Clay Street, Suite 810
Oakland, California 94612
Telephone: (415) 357-4600
Facsimile: (415) 357-4605

Attorneys for Defendant
CITISTAFF SOLUTIONS, INC.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600
FAX (415) 357-4605

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,

Plaintiff,

vs.

TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,

Defendants.

Case No. 3:17-cv-06748-WHO

**PROOF OF SERVICE**

Trial Date: March 2, 2020
Complaint filed: October 16, 2017

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600
FAX (415) 357-4605

## PROOF OF SERVICE

I am employed in the City of Oakland, California. I am over the age of eighteen years and not a party to the within action. My business address is 1300 Clay Street, Suite 810, Oakland, California 94612.

On November 21, 2019, I served the document named below on the parties in this action as follows:

**NEXTSOURCE CITISTAFF SERVICES AGREEMENT DATED MARCH 2015 (BATES NUMBERED DEF 000091 – DEF 000102)**

| | |
|---|---|
| X | **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses noted below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Lafayette & Kumagai LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses noted below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** I faxed a copy of the document(s) to the persons at the fax numbers noted below. The telephone number of the sending facsimile machine was (415) 357-4605. No error was reported by the fax machine that I used. |
| X | **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address bfuller@lkclaw.com to the persons at the e-mail addresses noted below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

Lawrence A. Organ
Navruz Avloni
California Civil Rights Law Group
332 San Anselmo Avenue
San Anselmo, CA 94960
Tel: (415) 453-4740
Fax: (415) 785-7352
Email: larry@civilrightsca.com
navruz@civilrightsca.com

***Attorneys for Plaintiffs***
DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON

Tracey Kennedy
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
Tel: (213) 617-4249
Fax: (213) 620-1398
Email: tkennedy@sheppardmullin.com

***Attorneys for Defendant***
TESLA, INC. dba TESLA MOTORS, INC.

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600
FAX (415) 357-4605

Patricia M. Jeng
Reanne Swafford-Harris
Sheppard Mullin
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Tel: (415) 434-9100
Fax: (415) 434-3947
Email: PJeng@sheppardmullin.com
RSwafford-Harris@sheppardmullin.com

*Attorneys for Defendant*
TESLA, INC. dba TESLA MOTORS, INC.

Fenn C. Horton, III
Helene A. Simovoulakis-Panos
Pahl & McKay
225 West Santa Clara
Suite 1500
San Jose, CA 95113
Email: fhorton@pahl-mccay.com
hsimvoulakis@pahl-mccay.com

*Attorneys for Defendant*
WEST VALLEY STAFFING GROUP

Jason A. Geller
Juan C. Araneda
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
San Francisco, California 94111
Telephone: (415) 490-9000
Facsimile: (415) 490-9001
Email: jgeller@fisherphillips.com
jaraneda@fisherphillips.com

*Attorneys for Defendant*
NEXTSOURCE, INC.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 21, 2019, at Oakland, California.

Brenda Fuller
BRENDA FULLER