SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
TRACEY A. KENNEDY, Cal. Bar No. 150782
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398
E mail tkennedy@sheppardmullin.com

PATRICIA M. JENG, Cal. Bar No. 272262
REANNE SWAFFORD-HARRIS, Cal. Bar No. 305558
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
E mail pjeng@sheppardmullin.com
rswafford-harris@sheppardmullin.com

Attorneys for Defendants,
TESLA, INC. dba TESLA MOTORS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DEMETRIC DI-AZ, OWEN DIAZ, AND LAMAR PATTERSON,

Plaintiffs,

v.

TESLA, INC. DBA TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,,

Defendants.

Case No. 3:17-cv-06748-WHO

**REPLY TO PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO TESLA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CLAIMS FOR UNRUH CIVIL RIGHTS ACT AND PUNITIVE DAMAGES**

Date: December 17, 2019
Time: 9:30 a.m.
Courtroom: 2, 17th Floor
Judge: Hon. William H. Orrick

Trial date; March 2, 2020
Complaint filed: October 16, 2017

*[Filed concurrently with the Declaration of Patricia M. Jeng]*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. PLAINTIFFS FAIL TO MEET THEIR BURDEN OF DEMONSTRATING WITH EVIDENCE THAT THERE IS A GENUINE DISPUTE AS TO PUNITIVE DAMAGES ..... 1

A. "Managing Agents" Must Have Substantial Discretionary Authority Over Decisions That Ultimately Determine Corporate Policy. ..... 2

B. There Is No Genuine Dispute That The Alleged "Managing Agents" Did Not Have Substantial Discretionary Authority That Ultimately Determine Corporate Policy. ..... 5

C. Staffing Agencies Are Not Tesla's "Managing Agents." ..... 9

D. Plaintiffs Present No Reliable Evidence of Oppression, Fraud, or Malice. ..... 10

1. No "oppression, malice, or fraud" with respect to Judy Timbreza. ..... 11

2. No "oppression, malice, or fraud" with respect to Ramon Martinez. ..... 12

3. No "oppression, malice, or fraud" as to Rothaj Foster ..... 13

4. No "oppression, malice, or fraud" as to other alleged undocumented complaints ..... 13

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*Brewer v. Quaker State Oil Ref. Corp.*
72 F.3d 326 (3d Cir. 1995) ........ 15

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ........ 5, 6

*Cooke v. Stefani Mgmt. Servs.*
250 F.3d 564 (7th Cir. 2001) ........ 8

*Deters v. Equifax Credit Info. Serv.*
202 F.3d 1262 (10th Cir. 2000) ........ 8

*Kolstad v. Am. Dental Ass'n*
527 U.S. 526 (1999) ........ 15

*Lamb v. Household Credit Servs.,*
956 F. Supp. 1518 (N.D. Cal. 1997) ........ 8

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*
210 F.3d 1099 (9th Cir. 2000) ........ 5, 6

*Pavon v. Swift Transp. Co.*
192 F.3d 902 (9th Cir. 1999) ........ 15

*Ryder v. Westinghouse Elec. Corp.*
128 F.3d 128 (3d Cir. 1997) ........ 15

*Sampson v. Vita-Mix Corp*
208 U.S. Dist. LEXIS 104298 ........ 15

*Sharpe v. Am. Tel. & Tel. Co.*
66 F. 3d 1045 (9th Cir. 1995) ........ 15

*Swinton v. Potomac Corp.*
270 F. 3d 794 (9th Cir. 2001) ........ 8

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*
809 F.2d 626 (9th Cir. 1987) ........ 6

*United Inv'rs Life Ins. Co. v. Grant*
387 F. App'x 683 (9th Cir. 2010) ........ 14

State Cases

*College Hospital Inc. v. Superior Court*
8 Cal. 4th at 709 .......... 14, 16

*Cruz v. HomeBase*
83 Cal. App. 4th 160 (2000) .......... 7, 12

*Kelly-Zurian v. Wohl Shoe Co.*
22 Cal. App. 4th 397 (1994) .......... 7

*King v. United Parcel Serv., Inc.*
60 Cal. Rptr. 3d 359 (2007) .......... 16

*White v. Ultramar*, Inc.,
21 Cal. 4th 563 (1999) .......... 6, 7, 8, 11

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Civil Procedures
Rule 56 .......... 6
Rule 56(c) .......... 5, 6
Rule 56(c)(1)(A) .......... 6

Federal Rules of Evidence
Rule 401 .......... 13
Rule 402 .......... 13
Rule 701 .......... 13

Title 42 United States Code
§ 1981 .......... 14, 15

State: Statutes, Rules, Regulations, Constitutional Provisions

California Civil Code
§ 3294 .......... 6, 14

Unruh Civil Rights Act of California .......... 5

## I. INTRODUCTION

Plaintiffs Owen Diaz ("Owen") and Demetric Di-Az's ("Demetric") Opposition attempts to confuse the punitive damages claim issues by citing immaterial facts and grossly misstating the evidence. Despite the obfuscation, the material facts that are supported by evidence do not create a genuine dispute as to any of the following:

- Plaintiffs identify four individuals accused of wrongdoing who they contend are "officers, directors, or managing agents" of Tesla, but there is no evidence they had substantial discretionary authority as to decisions that ultimately determine Tesla's corporate policy;
- Plaintiffs contend staffing agencies were "managing agents" of Tesla because Tesla allegedly "defers" their investigations to them, but none of the evidence Plaintiffs cite even support this alleged practice (while the actual evidence demonstrates otherwise);
- None of the alleged managing agents were shown to act with or ratify malice, oppression, or fraud toward Plaintiffs.

Accordingly, this Court must grant Tesla's Partial Summary Judgment Motion as to punitive damages. Because the Opposition "do[es] not contest Tesla's motion with respect to the Unruh Act claims," the Court should also grant Tesla's motion as to the second and third claims.

## II. PLAINTIFFS FAIL TO MEET THEIR BURDEN OF DEMONSTRATING WITH EVIDENCE THAT THERE IS A GENUINE DISPUTE AS TO PUNITIVE DAMAGES.

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiffs argue that Tesla has not negated an essential element of their claims. However, "a moving party without the ultimate burden of persuasion at trial [] may carry its initial burden of production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, **or [] the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial**." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,

1102 (9th Cir. 2000) (emphasis added.) Though the first method is more common, the Supreme Court has clearly indicated that "a moving party may carry its initial burden of production" by the second method. *Id.* at 1106. A plaintiff must then produce sufficient evidence of the existence of an element essential in order to defeat summary judgment.

The *Celotex* court disagreed that "[defendant]'s failure to support its motion with evidence tending to *negate* [an essential element to plaintiff's case] precluded the entry of summary judgment in its favor." *Celotex*, 477 U.S. at 320. There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. On the contrary, Rule 56(c), which refers to '*the affidavits, if any'* [], suggests the absence of such a requirement." *Id*.

To defeat summary judgment, Plaintiffs must cite "particular parts of materials in the record." FRCP 56(c)(1)(A); *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Here, Plaintiffs have failed to proffer evidence to show there is a genuine dispute in Tesla's moving papers as to punitive damages, *i.e*., that any individual who was an "officer, director, or managing agent" of Tesla committed acts or omissions with a subjective intent to harm Plaintiffs.

### A. "Managing Agents" Must Have Substantial Discretionary Authority Over Decisions That Ultimately Determine Corporate Policy.

As an initial matter, Plaintiffs incorrectly suggest that Tesla must show no dispute as to whether "Caballero, Quintero, Romero, Kawasaki, *or any other Tesla employees were Tesla managing agents*[.]" Opp. 14:1-13; 14:28-15:1. Tesla need not do so; Tesla only needs to make a showing as to the employees whose alleged malicious acts or omissions were directed at Plaintiffs. *See* Cal. Civ. Code § 3294 ("With respect to a corporate employer, the…oppression, fraud, or malice **must be on the part of an officer, director, or managing agent of the corporation**.")(emphasis added.)

The Supreme Court has acknowledged that while some prior courts had defined "managing agent" to simply include supervisors who had the ability to hire and fire, "the mere ability to hire and fire employees" does not render a supervisor a managing agent; rather, the Legislature intended to include "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimate determine corporate policy." *White v.*

*Ultramar*, Inc., 21 Cal. 4th 563, 566–67 (1999). Plaintiffs dismiss Tesla's "focus on [the alleged managing agents'] ability to hire and fire Plaintiffs or 'set company policy" as "inapposite" but ignores *White* and cites no authority to the contrary.

First, the law is well settled that a "managing agent" for purposes of punitive damages must have "substantial discretionary authority over decisions that ultimately determine *corporate policy*." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000). This means having *substantial* authority over "general principles which guide a corporation, or rules intended to be followed consistently over time in corporate operations." *Id*. Even under a strict liability theory, a plaintiff must meet the higher threshold of establishing that a supervisor was a managing agent to recover punitive damages. *Kelly-Zurian v. Wohl Shoe Co*., 22 Cal. App. 4th 397, 405 (1994) (the plaintiff was not entitled to punitive damages because supervisor was not a managing agent, despite liability based on supervisor misconduct).

Second, an employee is not a "managing agent" simply by being a "supervisor" or "manager." In *Cruz*, the trial court was reversed because the "evidence was insufficient, as a matter of law, to show that [the supervisor] was a managing agent." *Cruz*, 83 Cal. App. 4th at 168. Though the alleged managing agent "supervised the store where plaintiff worked," *his* supervisor was the store's general manager; the supervisor "was not a manager of numerous stores, but only a supervisor subordinate to the store manager in a single outlet of a multi-store chain." In contrast, a "zone manager" who fired the plaintiff in *White*, 21 Cal. 4th at 577 (1999) was a "managing agent" because she was "responsible for managing eight stores," had "store managers reporting to her," and had "*most, if not all, of the responsibility*" for running the stores in her zone such that she "exercised substantial discretionary authority over vital aspects of [the employer's business] that included…making significant decisions affecting both store and company policy." *Id.* at 577, 572 (the legislature's "goals were…to distinguish ordinary respondent superior liability from corporate liability for punitive damages").

Indeed, "in the majority of employment cases, the wrongdoer [] had supervisory authority over the plaintiff. A rule defining managing agent as any supervisor who can hire or fire employees, but who does not have substantial authority over decisions that ultimately determine corporate policy, effectively allows punitive damage liability without proof of anything more than simple tort liability, which we have long recognized is insufficient." To equate "mere supervisory status with managing agent status, [would]

create a rule where corporate employers are liable for punitive damages in most employment cases." *Id.* at 575.

Third, Plaintiffs' assertion that "policies delegat[ing] the duty to receive and act on harassment complaints" make "supervisors and managers like Caballero, Kawasaki, Romero, and Quintero" "managing agents" as a matter of law is incorrect.[1] Opp. 15:13-21. To the contrary, *Swinton v. Potomac Corp.*, 270 F. 3d 794, 810 (9th Cir. 2001) does not designate anyone with who has a "duty to receive and act on harassment complaints" as a de facto managing agent.

*Swinton* stands for the proposition that an employer cannot assert a good faith defense when an employee has an official or strong de facto duty to be a "conduit to management about work conditions" and fails to act. *Swinton* relies on three cases. The first two, from the Seventh and Tenth Circuits, stand for the proposition that an employer cannot assert a good faith affirmative defense when the plaintiff: (1) makes a claim for direct liability, *i.e.*, that the supervisor failed adequately to remedy a complaint, where the company *specifically designated* the supervisor "as **a final representative** of the company to implement the sexual harassment policy" and the supervisor fails to act (*Deters v. Equifax Credit Info. Serv.*, 202 F.3d 1262 (10th Cir. 2000)); and (2) makes a claim for vicarious liability where supervisor personally committed the unlawful actions and the company ratified those actions (*Cooke v. Stefani Mgmt. Servs.*, 250 F.3d 564 (7th Cir. 2001)). Here, however, Tesla's motion is not predicated on a good faith affirmative defense.

The third case is *Lamb v. Household Credit Servs.*, where the court found punitive damages improper. The "[p]laintiff [] made no showing that [the senior fraud investigator over plaintiff's unit] had either an official or strong de facto duty to act as a conduit to management for complaints about work conditions." 956 F. Supp. 1518 (N.D. Cal. 1997) While *Lamb* noted that "knowledge of low-level supervisors" may be imputed to the employer, but only in a context "where the supervisor was the **only convenient avenue** through which to lodge the complaint[.]" *Id.* at 1517. This is consistent with the requirement that a "managing agent" have substantial discretionary authority over decisions determining corporate policy. Even if Tesla's motion were based on a good faith defense, this was not the case with

---

[1] Plaintiffs' unsupported factual assertions are addressed in Section II.B.

any alleged "managing agents."

**B. <u>There Is No Genuine Dispute That The Alleged "Managing Agents" Did Not Have Substantial Discretionary Authority That Ultimately Determine Corporate Policy.</u>**

Plaintiffs allege that "Caballero, Kawasaki, Romero, and Quintero…are managing agents as a matter of law." Opp. 15:19-21. Plaintiffs do not identify or allege other individuals are managing agents. But Plaintiffs provide *no* evidence any of the four had *substantial discretion* to ultimately determine corporate policy, nor do they dispute Tesla's initial showing.

Plaintiffs contend that Romero was a "managing agent" without explanation. Opp. 15:19-21. There is no evidence that Romero had any discretion over corporate policy; in fact, the evidence shows the contrary. Plaintiffs concede (Mot. at 4:22-25) Romero was asked *not* to investigate Owen and Martinez's mutual complaints, as nextSource was already investigating, which suggests a lack of discretion regarding corporate policy. Opp. 15:26-28. As a janitorial supervisor, Romero's position was "for a supervisor to control a certain part of the factory, as far as cleaning went" and to "help[] them organize the janitorial services in that part of the factory." Reply Declaration of Patricia M. Jeng ("Reply Decl."), Exh. 18 (11/30/18 E. Romero Dep.), 8:14-18; 11:9-23, 13:12-14:11. As a supervisor, he primarily "organize[d] the work crews so they had good cleaning routines to follow, could ask for materials, could ask for guidance as far as how to do certain things." *Id.* at 14:21-15:4. Although his title did change to "contract services supervisor," it was not a promotion or pay increase. *Id.* at 19:22-23, 20:11-25. He had no ability to hire or fire anyone. 10/29/19 Jeng Decl., Exh. 9 (11/30/18 E. Romero Dep.), 40:22-41:1. He stated "[he] was aware that there were policies in place" but not that he was charged with making decisions about them. Reply Decl., Exh. 18 (11/30/18 E. Romero Dep.), 21:17-22:18. Far from establishing corporate policies across Tesla, or even within the janitorial services contractors, Romero testified he himself had to follow antidiscrimination policies. *Id.* Romero's work responsibilities confirm he had no ability to set corporate policy.

Similarly, Caballero was a supervisor and associate manager while Plaintiffs were at Tesla. *Id.* at Exh. 19 (6/7/18 J. Caballero Dep.), 13:22-14:9. As an associate manager, he reported to a manager, who reported to a director, who reported to a "Peter Holtzinger." *Id.* at 17:2-25. Though Caballero was asked about what his understanding of Tesla procedures are "if there is an allegation of racist conduct," he

testified that as far as he knows, there would be an investigation. *Id.* at 153:12-18. There is simply no evidence – and none cited by Plaintiffs – that Caballero determined any corporate policy across Tesla or anywhere else.[2] Plaintiffs have not and cannot create a genuine dispute with a lack of evidence that Caballero was a "managing agent."

Likewise, Kawasaki was a Chartwell employee with no discretion over corporate policy across Tesla. Reply Decl., Exh. 20 (10/9/19 T. Kawasaki Dep.), 12:1-17. He was a "cardboard organizer" just "pretty much throwing cardboard into bails at certain sections in the warehouse[.]" *Id.* at 15:5-15. He later became a "lead of that area" (Environmental Sustainability) where he had to "make sure that the ends were being separated, cardboard was separated from plastic, making sure the employees were working instead of wandering the…500,000 square foot warehouse. That's pretty much it." *Id.* at 16:8-22. Kawasaki did not have the ability to direct people to work in different areas; he just let his bosses know that "hey, this person didn't show up." *Id.* at 16:23-17:4. Kawasaki moved to the elevators as a lead, where there were five or six people on his shift, and then to the overnight crew. *Id.* at 17:25-18:17, 20-23. Because Kawasaki was employed by Chartwell while at Tesla, with the job duties above, there is no evidence that he was setting Tesla policy. *Id.* at 18:24-19:9. Kawasaki "didn't have the power to hire or fire anybody." 10/29/19 Jeng Decl., Exh. 8 (10/9/19 T. Kawasaki Dep.), 39:11-25. As Tesla's 30(b)(6) witness testified, a lead is "just to facilitate the key performance indicators, such as the safety, quality, efficiency, productivity, scrap costs of material; manage rotations; manage breaks; send out downtime reports; send out end-of-shift reports. Reply Decl., Exh. 19 (6/7/18 J. Caballero Dep.), 15:25-16:6. Plaintiffs failed to demonstrate Kawasaki had discretion over corporate policy.

Plaintiff further contends, without any evidence, that "Quintero[] set Tesla's policy with respect to contract employees." Opp. 3:19-20. Plaintiffs allege that he did so by "separat[ing] contract employees from regular Tesla employees." Opp. 3:20-21. However, Quintero testified he separated workers because he "didn't want to have problems" if, "say there's an HR issue," then "different

---

[2] Plaintiffs do not dispute evidence that Caballero could not hire or fire. Mtn. at 6:7-8. Plaintiffs suggest that Romero and Caballero could terminate contractors and "bar them from reentering the Fremont factory – effectively terminating their employment at Fremont Factory" (Opp. at 4:4-7), but they cite no testimony specific to Romero or Caballero. DeLeon's testimony is only that *Tesla* would be able to tell nextSource about a workers' performance and Ms. Heisen's testimony was that *Tesla* can say a person is no longer allowed on the property or the contract is ended.

companies working together side by side, it gets a little bit more complicated." 11/19/19 Organ Decl. ("Plaintiffs' Decl."), Exh. 4 (6/7/18 E. Quintero Dep.), 24:17-25:8. Plaintiffs characterize separating contractors from employees as "instituting policy," but do not explain or how doing so equates to establishing or changing business policy. Plaintiffs' cited testimony contains no references to company policy or how Quintero impacted company policy at all. *Id.* at 25:14-20. There is also no suggestion that separating some workers was "exercising substantial discretionary authority over significant aspects of a corporation's business." *White*, 21 Cal. 4th at 574. Plaintiffs claim Quintero is like the "zoning manager" found to be a managing agent in *White*. Opp. 20:14-21:9. But unlike the "zoning manager" whose "superiors established that they delegated *most, if not all, the responsibility* for running [eight stores in the zone] to her" (*White*, 21 Cal. 4th at 577), Quintero was not delegated with most, let alone all, responsibility for running the factory, or departments within the factory. He was a custodial program manager for food, janitorial, recycling and elevators services, landscaping and grounds. *Id.* at 12:12-21.

Plaintiffs grossly misrepresent Quintero's testimony by stating he had "*ad hoc* authority to determine whether or not Tesla would investigate complaints, and could approve or reject proposed discipline from contractors" (Opp. 3:25-27) when the cited evidence is to the contrary.[3] Plaintiffs continuously misrepresent other evidence as well, claiming Quintero had the ability to set policy and that he created these policies on his own (Opp. 22:2-5) when the cited testimony is only that a third party company with their own shift lead, supervisors, and managers did the janitorial service, and *Tesla* could direct the contractors when there was a need for cleanup; and that contractors and Tesla employees "eventually were separated" and that no one told Quintero to separate the workers. Plaintiffs' Decl., Exh. 4 (6/7/18 Quintero Dep.), 16:3-23, 22:13-23:7; 25:14-20.

Equally spurious is Plaintiffs' assertion that Quintero had discretion when it came to investigating complaints of harassment (Opp. 22:8-9), for which there is *no* evidence. Jackson's cited testimony (which is pure speculation as to Quintero's job duties and discretion), does not mention investigation of

[3] Quintero testified that "Wayne and I talked about [this picture] and Wayne stated…he either had or was going to suspend Ramon…the decision was made to give him a permanent written warning to make sure it didn't happen again…Basically, it was Wayne's decision, and I agreed." Quintero then testified: "[i]t was Wayne Jackson who made the decision. It's his employee, so . . . I can – my perspective is I can only recommend certain things." Plaintiffs' Decl., Exh. 4 (6/7/18 V. Quintero Dep.), 65:10-14.

harassment complaints and only discusses discipline as to Martinez.[4] (Opp. 22:9-22.) Jackson's testimony confirms that while Quintero was involved in the recommendation for Martinez's discipline, "the final say was not his." Plaintiffs' Decl., Exh. 5 (5/17/19 Jackson Dep. 121:24-122:4.) Tesla could say they did not want contractors on site, but could not terminate contractors (such as Plaintiffs). *Id.* at 34:25-35:11.

Instead of addressing how specific Tesla employees possessed decisionmaking discretion that ultimately determined corporate policy, Plaintiffs generally argue, without application to facts, that the inaction of low-level supervisors may be imputed to the employer if the supervisors are made responsible, pursuant to company policy, for "receiving and acting" on complaints. There is no evidence that pursuant to policy, Caballero, Kawasaki, Romero, and Quintero were specifically designated as *final representatives* to implement the harassment policy, as in *Deters*; nor were they the *only convenient avenue* through which to lodge a complaint, as in *Lamb*. A Tesla employee may complain about harassment to a lead, supervisor, manager, Human Resources, or through the integrity hotline. Reply Decl., Exh. 22 (5/29/19 A. Heisen Dep.), 147:24-148:4. A contractor at Tesla has even more avenues to complain, because they can complain either to their own staffing agency or to Tesla supervisors, managers, or HR people. 10/29/19 Jeng Decl., Exh. 6 (5/29/19 A. Heisen Dep.), 148:5-16.

Further, pursuant to Tesla's anti-harassment and discrimination policy, [REDACTED] Plaintiffs' Decl., Exh. D, p. 1. But "the law does not does not impute every employee's malice to the corporation." *Cruz*, 83 Cal. App. 4th at 163. Even when a supervisor's acts cause injury, that alone does not convert them into a managing agent. In *Cruz*, there was no dispute that the supervisor's "decisions could have significant consequences…but, then, every corporate employee's reckless or malicious conduct has the potential to cause serious injury"; to be liable for punitive damages therefore requires the employee be in "the leadership group of officers, directors and managing agents." *Id.* at 168.

---

[4] Similarly, there is no cited testimony from Quintero to support the assertion that he allegedly rejected the disciplinary recommendation for Martinez (Opp. at 22:12-14), particularly since, as detailed *supra* he could not make a decision as to the discipline.

In sum, Plaintiffs' put forward no evidence of a genuine dispute that any of the persons identified by Plaintiffs were "managing agents" having substantial discretionary authority over corporate policy.

**C. Staffing Agencies Are Not Tesla's "Managing Agents."**

Plaintiffs' assertion that staffing agencies were managing agents is wholly unsupported by law or fact. "Managing agents" must be employees with substantial discretionary authority to determine corporate policy. First, Plaintiffs cite no evidence that staffing agencies were Tesla "employees."

Second, Plaintiffs' evidence does *not support* their contention that Tesla "deferred investigations to the staffing agencies." [5] Moreover, Plaintiffs improperly attempt to rely almost solely upon the testimony of a former HR Business Partner, Erin Marconi, and improperly equate her every word as an admission by Tesla about its anti-harassment / discrimination policies and investigations, instead of Tesla's 30(b)(6) designee on such topics. Marconi testified she may not have been at work during the time period Plaintiffs worked at Tesla because her "mother was going through cancer treatment . . . So not only is [the] Tesla part a blur, but the time frame is a blur." [6] Reply Decl., Exh. 23 (10/21/2019 Marconi Dep.), 91:18-92:3. Thus, her testimony is irrelevant and lacks foundation. See Fed. R. Evid. 401, 402. Her testimony should also be disregarded because all the cited testimony is Marconi opining on various hypothetical scenarios, despite not being a designated expert. *See* Evid. Code 701.

The only testimony from Tesla's 30(b)(6) designee on investigations is that whether Tesla conducts the investigation depends on several factors: the complainant and their employment status (e.g., contractor, vendor, direct employee) and the type of oversight exercised by Tesla, which is not subject to one fixed method but varies widely and depends on each case. Reply Decl., Exh. 22 (5/19/19 A. Heisen Dep.), 26:7-27:6, 83:7-18. Generally, if the complaints come to Tesla's attention and involve

[5] Plaintiffs' citation does not reference deferring investigations: **Q** Terri forwarded it to you that same day, October 20th of 2015; right? **A** Yes. And based on that, it would appear that it was all nextSource employees involved, other than Victor and Ed. Okay. And then this is Exhibit 126. And Exhibit for the record is a four-page document Bates-stamped 133 to 136, Tesla 133 to 136, and it has emails from you on the second page, and then on the first page, too. **A** Yep. **Q** So the reason you would have canceled Ed -- Ed's investigation into this is because it appeared to you that nextSource should be doing the investigation; right? **A** Yeah, I believe she said that two out of the three had already been spoken to. Plaintiffs' Decl., Exh. 9 (10/21/2019 E. Marconi Dep.), 109:8-12; 109:20-110:6.

[6] Contrary to Plaintiffs' assertion that "Marconi was in charge of handling complaints of discrimination and harassment, from 2013 to January 2017" (Opp. at 17:25-26), Ms. Heisen's testimony also confirms that the Employee Relations department "solely focuses on investigations, whereas HR partners do not." Reply Decl., Exh. 22 (5/19/19 A. Heisen Dep.), 19:25-20:14.

contractors, "we expect that the Tesla HR person is in communication with the agency. So even if they're not the ones conducting the investigation, they're making sure that the issue is resolved by collaborating with the agency" including by in person, telephone or email communication. *Id.* at 112:8-113:3. Because there is no evidence staffing agencies were Tesla employees or that Tesla deferred investigations to them, there is no dispute staffing agencies are not "managing agents" of Tesla.

**D. Plaintiffs Present No Reliable Evidence of Oppression, Fraud, or Malice.**

Plaintiffs have not shown the alleged "managing agents" acted with oppression, fraud, or malice. Cal. Civ. Code § 3294. Tesla's motion contends Plaintiffs have no such evidence; the Opposition fails to proffer sufficient evidence connecting any alleged "managing agent" with malice or oppression.

Punishable acts which fall into the "oppression, fraud, or malice" category are "strictly defined," with "each involv[ing] 'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injur[ious]' nature." "Malice" is *intentional* conduct and requires evidence establishing that the defendant acted with the "requisite intent to injure the plaintiff." *See, e.g., United Inv'rs Life Ins. Co. v. Grant*, 387 F. App'x 683, 687 (9th Cir. 2010) (despite proof of liability, plaintiff presented no evidence defendant "intended to injure her… to justify a punitive damages award" under Section 3294). If there is no evidence of "intent to injure plaintiff," then Section 3294 requires more than "willful and conscious" disregard of plaintiffs' interests; the "additional component of 'despicable conduct' must be found." *College Hospital Inc. v. Superior Court*, 8 Cal. 4th 704, 709 (1994)

In *College Hospital*, the Supreme Court found the plaintiffs should not have been granted leave to amend their complaint to add a punitive damages claim. Punitive damages under section 3294 were *not* recoverable because: 1) the alleged wrongdoer was a not a "managing agent" simply by being a "management-level employee" who committed malicious acts; 2) the highest ranking manager who investigated the matter and accepted the perpetrators' denial of wrongdoing "without further investigation" could not establish "malicious conduct" even sufficient for the pleading stage; and 3) the highest ranking manager cautioned him against the alleged inappropriate relationship, which shows repudiation, not adoption, of such conduct. *Id*. at 711, 727.

With respect to Plaintiffs' Section 1981 claim, although Plaintiffs contend "corporate culture" is probative of discriminatory intent, Plaintiffs' legal authority does not indicate that "corporate culture" is

sufficient to support punitive damages, where "oppression, fraud, or malice" are required. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (corporate culture considered as evidence of discrimination where there is no claim for punitive damages by the plaintiff); *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997) (no discussion of punitive damages, or relevance of "corporate culture" to analysis punitive damages); *Pavon v. Swift Transp. Co.*, 192 F.3d 902, 909 (9th Cir. 1999) (reviewing trial court's award of punitive damages under abuse-of-discretion standard, but does not reference "corporate culture.").[7]

Plaintiffs have not provided evidence to dispute that prompt and corrective action was taken as to all of Owen's written complaints. Mtn. at 13:1-25. Plaintiff also does not dispute that Tesla's initial showing that Demetric did not submit any written complaints to Tesla.

**1. <u>No "oppression, malice, or fraud" with respect to Judy Timbreza.</u>**

Plaintiffs protest that after Owen's complaint about Judy Timbreza, Timbreza was "only issued a verbal warning," but does not dispute that Timbreza was promptly disciplined following Owen's complaint. *See Sharpe v. Am. Tel. & Tel. Co.*, 66 F. 3d 1045, 1050 (9th Cir. 1995) ("discrimination laws are not intended as a vehicle for general judicial review of business decisions.").

Plaintiffs also do not dispute that the "outcome of the complaint" was that "no witnesses corroborated Owen's complaint"; rather, Plaintiffs believed that there were witnesses to corroborate. But that does not create a triable issue as to whether a managing agent engaged in oppression or malice because 1) Plaintiffs' contention that Kawasaki told Romero that witnesses corroborated Owen's version of events is not supported by the evidence[8]; and 2) such testimony would be hearsay anyway since

---

[7] Federal law applies to punitive damages for Plaintiffs' 42 U.S.C. § 1981 claim. *See Sampson v. Vita-Mix Corp*, 208 U.S. Dist. LEXIS 104298 (analyzing plaintiff's federal claims for punitive damages under federal law, and FEHA claims under state law). As stated in the moving papers, showing "malice" or "reckless" indifference is insufficient, and Plaintiffs must "make an additional demonstration of their eligibility for punitive damages," including as to the employer's "knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). Plaintiffs do not proffer evidence of any purported knowledge that each of the wrongful acts were violating federal law.

[8] Plaintiffs cite to testimony purportedly showing that "Kawasaki reiterated that witnesses had corroborated Owen's version of events." Opp. at 6:25-27. But the cited Kawasaki testimony actually says nothing of the sort: "Yeah. I believe Edward came…and we ate breakfast together in one of the cafeterias and talked about what happened. And I told him, This is what happened, other people had told me, I took my own decision and said, Hey, we've got to separate them, this guy has to go home, so I sent

Kawasaki testified he did not hear any racial slurs from Timbreza. Reply Decl., Exh. 20 (10/9/19 E. Kawasaki Dep.), 36:15-37:24, 82:9-83:18. Thus, whether Kawasaki told Romero that witnesses corroborated Owen does not create a dispute as to the actual investigative finding that "no witnesses corroborated Owen's complaint." *See also King v. United Parcel Serv., Inc*., 60 Cal. Rptr. 3d 359, 368 (2007) ("[i]t is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue[.]")

Plaintiffs also protest that Tesla never produced documentation of Timbreza's warning, but emails in evidence state that the warning was placed in Timbreza's nextSource file (*i.e.* not in any Tesla files). Reply Decl., Exh. 22 (5/29/19 A. Heisen Dep.), 131:6-8. Similarly, the fact that Kawasaki was not aware that Romero "conducted a further investigation" after they spoke, or whether "Timbreza had been laid off or fired" does not create a triable issue. Opp. at 7:2-12. Tesla was not required to disclose or update Kawasaki on any investigation or outcome. Plaintiffs' Decl., Exh. D (Anti-Harassment Policy), p. 1 [REDACTED] ). In sum, none of the evidence above creates a triable issue that any managing agent engaged in malice, fraud, or oppression. In fact, the prompt discipline of Timbreza shows repudiation of his conduct. *See Coll. Hosp. Inc*., 8 Cal. 4th at 725 (Though "no further investigation" was done, "[b]y cautioning Berry…[the manager] attempted to repudiate – not adopt – such conduct").

**2. <u>No "oppression, malice, or fraud" with respect to Ramon Martinez.</u>**

Similarly, Plaintiffs have not presented evidence of malice, fraud, or oppression by a managing agent with respect to Plaintiffs' complaint about Martinez. Plaintiffs own evidence does not dispute Tesla's initial showing that [REDACTED] Plaintiffs' Decl., Exhs. K & L. Owen testified that [REDACTED] Reply Decl., Exh. 25 (5/22/18 O. Diaz

---

him home. And I said, I e-mailed you guys and that's it. However you take it from there, I mean that's – the ball is in your court." Plaintiffs' Decl. Exh. 3 (10/9/19 T. Kawasaki Dep.), 47:22-28:10. Kawasaki further testified that when he arrived at the scene, he did not know the supposed corroborating witnesses: "I don't know who they were. Like I said, I only know the employees that I have under me. Everybody else was just a blur." Reply Decl. Exh. 20 (10/9/19 T. Kawasaki Dep.), 90:4-15.

Dep.), 123:17-124:2, 126:10-127:12; Exhibit 8. Nonetheless, as the moving papers show, Despite Plaintiffs' unhappiness with the outcome, he cannot dispute that (and a lack of malice), and belies Owen's contention Still, Owen fails to address any intent to injure Plaintiff by any managing agent.[9]

In January 2016, (Opp. at 24:22-24), .[10] There is no dispute that Mot. at 13:18-24. Plaintiffs do not explain how, in light of these undisputed facts, how there is any genuine dispute that any managing agent could be found to show an intent to injure Plaintiffs through malice, oppression, or fraud.

**3. No "oppression, malice, or fraud" as to Rothaj Foster**

Owen concedes that there was no malice with respect to any managing agent in connection with his complaint about Rothaj Foster, as "Tesla was prompted to remove contractor Rothaj Foster" after alleged threats. Opp. at 19:7-8.

**4. No "oppression, malice, or fraud" as to other alleged undocumented complaints**

In addition to Owen's documented complaints, Plaintiffs' Opposition makes other undocumented allegations, none of which establish any malice or oppression by a managing agent.

[9] Plaintiffs make several misstatements regarding the investigation into Martinez and Owen's mutual complaints. For example, Plaintiffs' falsely claim that "Owen's complaints of violent behavior received no response. However, Romero immediately initiated an investigation based on Martinez's complaint" (Opp. at 9:8-20) when the cited evidence (Exhibit L) None of this cited evidence even remotely supports Plaintiffs' assertions. And because none of the Plaintiffs' cited evidence rebuts Tesla's initial showing that an investigation was completed and discipline meted out, Tesla need not point to every discrepancy in Plaintiffs' evidence.

[10] Indeed, it is unclear why Plaintiffs raise .

First, Plaintiffs' supposition that oppression, malice or fraud is demonstrated by Plaintiffs' claims they made oral complaints is unsupported. [REDACTED] and Plaintiffs have not demonstrated, or even argued, that Tesla deliberately or maliciously [REDACTED] Opp. at 5:25-27. Owen's allegation that he got [REDACTED] (Opp. at 5:21-27), or that [REDACTED] because of some purposeful intent directed at Plaintiffs *by Tesla*.

Second, alleged reports of [REDACTED] do not demonstrate malice, oppression, or fraud directed at Plaintiffs; there is no evidence the [REDACTED] was directed at them at all. Demetric's testimony is that [REDACTED]. Plaintiffs' Decl., Exh. C (D. Di-az Dep.), 154:10-15. Further, Plaintiffs misrepresent the testimony of Andres Donet asserting that "non-investigation of graffiti was the norm"; the actual testimony was that when an employee reported graffiti it was cleaned and erased. Opp. at 14:1-4. Plaintiffs also purposely omit Donet's testimony that any time graffiti was found and cleaned up in restrooms, it was the practice to notify to both HR and Security. Reply Decl., Exh. 24 (11/19/19 A. Donet Dep.), 31:20-32:1, 32:7-9. Plaintiffs' assertions that graffiti was never investigated are particularly specious (Opp. at 13:25-27, 14:1-4) because, as a practical matter, unless the perpetrator was caught in the act, there would be no one to identify or interview. There is no evidence Owen identified any possible perpetrator or witness to even interview. Equally irrelevant is Plaintiffs' assertion that [REDACTED] Opp. at 14:5-8. Plaintiffs have not shown that [REDACTED] Because Plaintiffs have no personal knowledge about a [REDACTED], they cannot establish any malice, oppression, or fraud.

Third, Plaintiffs attempt to interject non-party testimony of Michael Wheeler about his alleged complaint and dissatisfaction with an investigation's outcome, but none of these alleged incidents involve Plaintiffs, and are irrelevant to any malice directed at Plaintiffs. Opp. at 12:24-13:4. Even more remote and immaterial are the assertions based on Titus McCaleb's testimony. Opp. at 12:12-23. McCaleb

worked at Tesla 8 months *after* Plaintiffs left and did not perform the same work or work in the same area as either Plaintiff.[11] Again, there is no connection whatsoever made to either Plaintiff and thus, the testimony cannot create any genuine disputes as to Plaintiffs.

Fourth, Plaintiffs' provide no support for their baseless assertion that Tesla has a "policy of disregarding rampant use of the "n-word" "at the Tesla worksite." Opp. at 17:7-9. This is belied by Kawasaki's cited testimony that he "could not tell you how often he heard [the n word] but that "no complaints were brought to me, so – and I don't know what was brought to other people, so." Plaintiffs' Decl., Exh. 3 (10/9/19 T. Kawasaki Dep.), 77:1-7. Similarly, Plaintiffs' evidence confirms that Jackson did not report the alleged use of the "n-word," and Wheeler's testimony was that he would hear it during breaks, or people passing by and that he did not think it was used in an aggressive way at all. Opp. at 17:7-9. Importantly, the testimony cited does not evidence that any such alleged usage was reported to Tesla nor is there any evidence of any nexus with Plaintiffs.

Fifth, Owen asserts Opp. at 8:3-14. The only cited evidence is Plaintiffs' Decl., Exh. I. (*Id.*) (*Id.*)

Accordingly, Plaintiffs have not presented evidence creating a genuine dispute that any managing agents of Tesla acted with malice, oppression, or fraud.

**III. CONCLUSION**

For the foregoing reasons, Tesla's partial summary judgment motion should be granted.

[11] Mot. at 2:15-20, 2:26-3:2. McCaleb began on November 6, 2016 as a Powertrain production associate, a position that neither Plaintiff held. Plaintiffs' Decl., Exh. 15 (6/18/19 T. McCaleb Dep.), 34:23-35:11, 186:24-187:25.

Dated: December 5, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *_/s/ Patricia M. Jeng_*
TRACEY A. KENNEDY
PATRICIA M. JENG
REANNE SWAFFORD-HARRIS

Attorneys for Defendant
TESLA, INC. dba TESLA MOTORS, INC.