**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK, JUDGE

| | | |
|---|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| VS. | ) ) | **No. C 17-6748 WHO** |
| TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50,inclusive, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | San Francisco, California Tuesday, December 17, 2020 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs Demetric Di-az and Owen Diaz:
ALEXANDER KRAKOW + GLICK LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 9006
**BY:  J. BERNARD ALEXANDER, ESQ.**

For Defendant nextSource, Inc.:
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
San Francisco, California 94111
**BY:  JASON A. GELLER, ESQ.**
**JUAN C. ARANEDA, ESQ.**

Reported By:   Katherine Powell Sullivan, CSR #5812, CRR, RMR
               Official Reporter - U.S. District Court

| | |
|---|---|
| 1 | **Tuesday - December 17, 2020**                              **9:53 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |

4    **THE CLERK:** Calling civil matter 17-6748, Di-az, et
5  al., versus Tesla, Incorporated, et al.
6         Counsel, please come forward and state your appearance.
7         **MR. ARANEDA:** Good morning, Your Honor.  Juan Araneda
8  on behalf of defendant nextSource.
9         **MR. GELLER:** Good morning, Your Honor.  Jason Geller
10 also on behalf of nextSource.  Mr. Araneda will address the
11 Court at this time in the argument.
12        **THE COURT:** Okay.
13        **MR. ALEXANDER:** Good morning, Your Honor.  Bernard
14 Alexander on behalf of the plaintiff, both Di-az.
15        **THE COURT:** All right.  So is there anybody here from
16 Tesla?
17        **MR. ARANEDA:** I don't see anyone, Your Honor.
18        **MR. ALEXANDER:** No, Your Honor.
19        **THE COURT:** Is there some reason why there's no one
20 here from Tesla?
21        **MR. ALEXANDER:** I'm surprised.  I have no knowledge.
22        **MR. ARANEDA:** Neither do I.
23        **THE COURT:** Okay.  So it seems to me that there's a
24 question of fact on the joint employer situation.  The system
25 that -- this employment situation just seems to be designed to

1  avoid accountability in employment circumstances.
2      I also think there's a question of fact of pervasive and
3  severe harassment, given the plaintiffs' allegations concerning
4  how common the N word was used, and it's as repulsive a word as
5  exists in the English language.
6      The incidents from the Breza (phonetic) fight to the
7  Martinez incident to the Martinez picture to Demetric Di-az'
8  testimony concerning how often his supervisor was using that
9  term, from bathroom graffiti, I think all of that raises a
10 question of fact with respect to harassment.
11     And if there's pervasive harassment, then it seems to me
12 that the punitive damages claims would remain in the case.  I
13 don't think there's a claim for adverse employment action or
14 retaliation because Mr. Di-az failed to return to work when he
15 said he was going to.  And there was no rebuttal provided by
16 the plaintiff to that legitimate reason to let somebody go,
17 from Tesla's perspective.  And then he's still on the rolls at
18 Citistaff.
19     And I don't think that there's a Ralph Act or a Bane Act
20 claim because there's no threat of violence coming from
21 Citistaff, or nextSource for that matter.  And Martinez was a
22 Chartwell employee.  And there is no theory of joint employment
23 set forth that would justify some vicarious liability.  So
24 that's how I analyze things.
25     Mr. Araneda, I'm going to start with you.

1       And then, Mr. Alexander, I'll let you respond.

2           **MR. ARANEDA:** Thank you, Your Honor.

3       So just as a starting point, the only plaintiff who's brought claims against nextSource is Mr. Owen Diaz. Demetric Di-az has brought claims against other folks.

6       And just to address the first point that the Court made about the system seems to be designed to avoid liability, the employer of record for Owen Diaz was Citistaff. And they retained, controlled and, as noted in the supplemental exhibit of Vincent Adams in support of the reply papers, it's clear that Citistaff retained employer responsibilities over Owen Diaz.

13      Now, just to step back a little, as the Court notes, the only real claims at issue here are Section 1981 of the Ralph Act, claims against nextSource at least. Plaintiffs haven't challenged the state law claims under the Bane Act, the Whistleblower Act, the emotional distress, the intentional infliction of emotional distress, negligent hiring, or constructive discharge.

20      So as to the two claims that are remaining, as the Court points out, the only way or theory to find nextSource liable is under the joint employer theory. But with respect to that, the plaintiffs haven't advanced any evidence to show that nextSource should be held liable under their own tests, under the --

1 **THE COURT:** Well, so it seems to me from the evidence that Mr. Jackson was the eyes and ears of nextSource on scene. And if he is the conduit for information of what's going on, that's the basis of the joint employer, it seems to me.

So address that specifically.

**MR. ARANEDA:** Sure. I mean, as we cited in the *Field* case, in *Field* there is a human resources person on site who was consulting, and that wasn't sufficient in *Field* to find joint employer.

Under *Global Horizons* and the common law test, you have to look at the totality of the circumstances here. And Mr. Jackson was merely a conduit, a liaison between Tesla and the staffing company and other staffing companies to streamline that process. He wasn't there making employment decisions. And he certainly -- he wasn't there, in his own words, there to manage employees, as we cited in the papers.

And there's no evidence that plaintiffs have advanced to show that nextSource exercised sufficient control over the totality of his employment at Tesla. I mean, it's undisputed that plaintiff applied for employment and was hired by Citistaff. It's undisputed that he went through the Citistaff onboarding process and even acknowledged all their policies.

It's undisputed, and even in plaintiff's own record evidence, Exhibit B to the Organ supplemental declaration, plaintiff's deposition testimony at page 425, lines 12 through

1  18, shows that Citistaff placed him at Tesla.
2      It's undisputed that paychecks were issued by Citistaff to
3  him.  It's undisputed that Citistaff directed that plaintiff
4  direct all problems that he had at Tesla to Citistaff.  Again,
5  this is in Exhibit B to Organ's supplemental declaration at
6  page 129, line 17 to 25 of Di-az' deposition.
7      I mean, it's undisputed that when plaintiff was placed at
8  Tesla he reported to Tomata Kawasaki (phonetic), who was a
9  Chartwell employee who reported to other Tesla employees.
10     So there's no evidence that nextSource directed or had any
11 control of his day-to-day activities or his work environment.
12 There's no evidence that nextSource disciplined him or made any
13 decisions to discipline him.
14     The only way they were trying to attempt to show joint
15 employment is by muddling the facts through Ed Romero, who was
16 a nextSource employee.  But even those facts show that Ed
17 Romero was hired by Tesla when he started supervising
18 Mr. Di-az.
19     Again, the Organ declaration, at Exhibit 4, shows that Ed
20 Romero was a janitorial supervisor with no supervision over
21 Mr. -- Owens' department, which was elevator operators.  And he
22 didn't become a supervisor over that area until he became a
23 Tesla employee in October of 2015.
24     And there's no -- you know, they also make the argument
25 that nextSource promoted or -- promoted Mr. Di-az from elevator

1  operator lead operator, but their own evidence shows that it
2  was Kawasaki who recommended the promotion from elevator
3  operator to lead operator.  And that's at the Organ declaration
4  Exhibit 3, page 23, lines 13 through page 24, line 2.
5      And, again, there's no evidence that nextSource directed
6  the end of his employment.  Given the totality of those facts,
7  there's no joint liability.  I mean, the only way that they are
8  attempting to show liability or at least joint employment, I'm
9  sorry, is through muddling the facts.  And if we go through
10 their evidence, it doesn't support --
11     **THE COURT:**  Mr. Araneda, here's the issue that I'm
12 thinking about.  I'm going to ask Mr. Alexander to respond in
13 just a second.
14     But let's say for the moment that the plaintiffs are able
15 to show that there was pervasive harassment of
16 African Americans and particularly of Mr. Di-az on a racial
17 basis, and Mr. Jackson was the conduit of information between
18 Tesla, who was certainly exercising control, to Citistaff, who
19 was the person that hired him, and your guy is right in the
20 middle, and as the conduit should -- if there was pervasive
21 harassment, he certainly should have known about that.
22     And then what's his liability -- what is the liability of
23 your company under that scenario?  That's what I'm interested
24 in.
25     **MR. ARANEDA:**  Well, first, you have to find joint

1  employment.  So they have to meet the --
2      **THE COURT:**  Right.
3      **MR. ARANEDA:**  -- totality of the circumstances and
4  that they --
5      **THE COURT:**  If your company has the obligation to
6  provide information on the employees' welfare at Tesla to
7  Citistaff, and you know that Citistaff doesn't have somebody
8  who is there who's acting as the eyes and ears, why aren't you
9  just as responsible to make that -- and be a joint employer?
10     **MR. ARANEDA:**  Well, first, you have to find joint
11 employment under the totality of the circumstances.  And what
12 I'm saying for the first step is the totality of the
13 circumstances don't establish joint employment in the first
14 place.
15     **THE COURT:**  So you never get to my question then?
16     **MR. ARANEDA:**  Say that again.
17     **THE COURT:**  So you never get to my question because
18 there's just no joint employment in the first place?
19     **MR. ARANEDA:**  Right.  But even if there is joint
20 employment, under *Global Horizons*, that doesn't automatically
21 make nextSource liable.  As the Court points out, you know,
22 they knew or should have known about incidents, and failed to
23 act or take corrective action within their control.
24     And nextSource was on site at Tesla as a liaison, as a
25 managed service program provider to set up a platform for

1  exchange of payroll data and other information to streamline
2  the contingent worker program for Tesla but also as a liaison
3  between the staffing companies.  So, I mean, its role was
4  limited.  So its role was to provide that information back and
5  forth.
6        **THE COURT:**  And if it failed to provide that
7  information, there's still no liability because you go back to
8  the first step of the totality of the circumstances?
9        **MR. ARANEDA:**  No.  Well, if you've already established
10 joint employment, then you go to the second step.  But there,
11 there's no evidence that nextSource knew and failed to act
12 within its control.
13     We see that when the Martinez confrontation occurred.  It
14 spoke to both -- Jackson spoke to both Martinez and Mr. Di-az.
15 This is at Exhibit 127 of Jackson's deposition.  And it was
16 Tesla who decided that they would both receive verbal
17 counseling.  So there was action taken within nextSource's
18 control.
19     When the picture came up, the drawing that Martinez -- the
20 offensive drawing that Martinez drew in January 2016, Di-az
21 reported that to Tesla and eventually forwarded his email to
22 Jackson, who immediately forwarded that to Chartwell, Martinez'
23 employer.  And they took corrective action.  They immediately
24 investigated Martinez.  So it acted within -- it acted within
25 its purview of providing this information to the appropriate

1  folks.  There's no evidence of this pervasive harassment, that
2  nextSource knew of the pervasive harassment.
3          **THE COURT:**  Okay.
4          **MR. ARANEDA:**  And so there hasn't -- the record
5  evidence submitted in opposition does not -- does not show that
6  nextSource knew of any pervasive harassment.
7          **THE COURT:**  Okay.
8     Mr. Alexander.
9          **MR. ALEXANDER:**  Thank you, Your Honor.
10      With regard to Mr. Jackson, it isn't just that he was a
11 conduit and he received information and was just passing it on.
12 There was also testimony that he actually heard the N word used
13 throughout the workplace commonly, and he was offended by it
14 but he took no action.  So he had this knowledge, and
15 nextSource created this workplace.  They were responsible for
16 all the subcontractors that brought in employees that created
17 the workplace.
18       How could nextSource have knowledge that the N word was in
19 the workplace, have knowledge through the conduit process of
20 all of this and not know that it had a responsibility to
21 address the workplace or at least speak to Tesla and make sure
22 Tesla addressed the workplace?
23      I don't see how we -- totality of the circumstances would
24 consider that.  I don't see how we could ignore that.  So I
25 believe the Court is correct that it is a question of fact.

1      If I could briefly just address the termination.  It is
2 true that Mr. Di-az did not return to work, but we don't have
3 enough facts to know why he didn't return to work.
4      At the point when he didn't return to work, we do know
5 that there was a hostile work environment that was present and
6 we do know it had not been corrected.  There had been no
7 affirmative action to address the pervasiveness like there was
8 when there was the drawing placed in the rest room with regard
9 to women.
10     If Mr. Di-az had a workplace to return to where it had
11 been corrected, then we'd have one thing.  But under the
12 circumstances, when he did not come back, it is completely
13 logical and the jury could find that it was constructive
14 discharge.  He didn't come back because no one was taking
15 affirmative corrective action to correct the workplace, and he
16 was going to be returning to the same workplace where he was
17 having the issues in the past.
18     And if you at least follow his story, he was going to be
19 falsely accused of being unprofessional and a number of other
20 things not because he was but because he was complaining about
21 discrimination in the workplace constantly, which would be
22 retaliatory discharge.
23     So I think that the Court has enough facts to allow us to
24 go to a jury with regard to constructive discharge.  Yes, he
25 was terminated for not returning, but at the same time that was

```
 1  in a brief two-week time frame.  He still had the ability to
 2  return.
 3       He left for leave because of a family issue.  And if you
 4  combine the family issue and the daunting task of returning to
 5  work, there is enough reason for him to have not returned due
 6  to the workplace.  And so I think there is a question of fact
 7  as to that issue.
 8            THE COURT:  Do you think you made that argument in the
 9  briefs?
10            MR. ALEXANDER:  Uhm, I think we referenced that
11  argument ambiguously.  I'm going to say that.  But it was not
12  as clear as I've made it today.
13            THE COURT:  Mr. Araneda.
14            MR. ARANEDA:  Well, plaintiff agreed that they
15  conceded on the wrongful termination claim.
16       And in terms of the daunting task coming back to work
17  because he was being accused of wrongdoing, there's no evidence
18  that he was being wrongly accused because of his race, which is
19  what the 1981 claim is premised on.
20       There has to be discriminatory intent, and they haven't
21  shown any discriminatory intent based on race.  And the reason
22  I say that is because the complaints from the Tesla employees
23  that were coming were apart from these other complaints, were
24  very different and from different parts of the factory.
25       I think you have Jostilla Grant (phonetic), who is a
```

1  different supervisor, who basically, in February, you know,
2  told Ed Romero to look at the emails, that she was fed up with
3  dealing with Mr. Di-az.  And so there's no -- there's no
4  evidence that any harassing or discriminatory conduct that
5  occurred in the past carried over into the March time period.
6       There's also intervening good facts by the employer would
7  dispel any notion of any connection between the two;
8  particularly, he was promoted and then, after the incident with
9  the drawing in January, he was even given a raise by Tesla.
10       So I don't -- you know, I don't think that there's any
11  issue with this daunting task coming back providing a basis for
12  claiming some sort of constructive discharge.
13       **THE COURT:**  Okay.  All right.  I will take this under
14  submission then and try and get an order out soon.
15       Since you're here, there is a motion that is set for
16  January on the confidentiality documents.  I don't know whether
17  this was -- let me bring it out -- whether this was a Tesla or
18  a nextSource issue.  I don't know whose issue it was.
19       **MR. ALEXANDER:**  I believe it's a Tesla issue, if I'm
20  correct, Your Honor.
21       **THE COURT:**  Okay.
22       **MR. ALEXANDER:**  I believe that they have designated
23  everything under the sun as confidential, and that is the
24  issue.
25       **THE COURT:**  So here's my issue:  I'm going to take

1  that off calendar.  From what the plaintiffs described, it does
2  sound as though Tesla has been overbroad in its designation.
3  If they're designating documents to and from the Diazes, as an
4  example, that would seem to be overbroad.
5      This is a court of public record, and so when it comes
6  time to try the case, from the descriptions it would seem that
7  many of the documents that have been marked as confidential
8  won't meet the compelling standard that would be required to
9  keep them confidential.
10     But I'm not going to make a ruling now, and I see no point
11 in doing that until pretrial.  If I have to look at the
12 documents at the pretrial conference and I see that they've
13 been way overdesignated, then I will assess costs.  On the
14 other hand, if I see that they are obviously confidential, then
15 I will assess costs.
16     But these are the kinds of things that lawyers ought to be
17 able to deal with themselves.  I would pass on to your
18 codefendants that it is the rare document that gets redacted
19 once a case goes to trial, and that includes from patent cases
20 to, you know, any sort of a case.  So they should think
21 carefully about what they want to assert as being confidential.
22     Then the other thing is, if I haven't told you absolutely,
23 I'm now telling you absolutely, the trial will be May 11th.
24 The criminal trial, as I indicated, is just going to knock the
25 earlier trial date out.

1     I don't think I had set a pretrial conference, and so I'm
2  going to set that for April 20th, at 2:00 p.m.
3     And then the final thing is, you should get with Judge
4  Illman for settlement.  So let him know where things stand.
5     I will try to get an order out soon.  I'll try and get an
6  order out soon, but I would get -- you'll certainly have an
7  order by the second week in January, and so you should get a
8  settlement conference on the schedule.
9         **MR. ARANEDA:**  We have one on schedule for
10 January 16th, I believe.
11        **THE COURT:**  Oh, you do?  Oh, great.  Okay.  So we will
12 get an order out well in advance of that so that your clients
13 can think about it.
14    Good.  All right.
15        **MR. ARANEDA:**  Thank you, Your Honor.
16        **THE COURT:**  Thank you very much.
17        **MR. ALEXANDER:**  Thank you, Your Honor.
18    (At 10:17 a.m. the proceedings were adjourned.)
19                         - - - - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, January 6, 2020

*Katherine Sullivan*

_____

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter