LAWRENCE A. ORGAN (SBN 175503)
NAVRUZ AVLONI (SBN 279556)
CIMONE A. NUNLEY (SBN 362915)
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Ave.
San Anselmo, California, 94960
Telephone: (415) 453-4740
Facsimile: (415) 785-7352
larry@civilrightsca.com
navruz@civilrightsca.com

J. BERNARD ALEXANDER (SBN 128307)
**ALEXANDER KRAKOW + GLICK LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 394-0888
Facsimile: (310) 394-0811
balexander@akgllp.com

Attorneys for Plaintiffs
DEMETRIC DI-AZ and OWEN DIAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,<br><br>            Plaintiffs,<br><br>      v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>            Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FRCP 37(B)(2)(A)**<br><br>Date: February 19, 2020<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick<br><br>Trial Date: May 11, 2020<br>Complaint filed: October 16, 2017 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 4

I.  FACTUAL AND PROCEDURAL BACKGROUND .......................................... 4

   A.  Plaintiffs Request Witness Names and Contact Information via Interrogatory ................. 4

   B.  Plaintiffs Meet and Confer with Tesla. ......................................................... 5

   C.  Tesla Identifies Numerous Employees who Worked "With or Around" Plaintiffs ............. 6

    1.  Tesla Identifies Employees Who Work "With or Around" Plaintiff Demetric Di-az, and Produces a List of These Employees at Plaintiff Di-az's Deposition. .................................. 6

    2.  Tesla's Document Production and Discovery Responses Identify More Employees who Worked With Plaintiffs. ......................................................................................... 6

    3.  Tesla Produces Multiple Redacted Employee Rosters in Discovery .............................. 9

   D.  The Court Orders Tesla to Produce the Information Plaintiffs Seek. ............................. 9

II.  LEGAL ARGUMENT ........................................................................................ 11

   A.  Tesla Failed to Comply with the Court's October 3, 2019 Order. ............................ 11

   B.  The Court Should Sanction Tesla by Precluding Tesla from Calling Any Witnesses Responsive to Plaintiffs' Requests at Trial that It Failed to Identify in Discovery. ................. 13

   C.  The Court Should Order Tesla to Produce the Contact Information Sought. ................... 15

   D.  The Court Should Impose Sanctions in the Form of Attorneys' Fees Incurred in Bringing This Motion. ........................................................................................................ 15

III.  CONCLUSION ................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ................................................................. 13

**Other Authorities**

Fed. R. Civ. P. 37 ........................................................................................... 14

Fed. R. Civ. P. 37(c)(1)(A-C) ........................................................................ 15

Fed. R. Civ. P. 26(e)(1)(B) ............................................................................ 11

Fed. R. Civ. P. 26(a) ...................................................................................... 13

Fed. R. Civ. P. 37(b)(2)(A)(ii) ...................................................................... 13

Fed. R. Civ. P. 37(c)(1) .............................................................................. 4, 13

PLAINTIFFS' MOTION FOR SANCTIONS

## INTRODUCTION

On October 3, 2019, this Court ordered Defendant Tesla, Inc. ("Defendant" or "Tesla") to produce the names and contact information of employees that worked with or around Plaintiffs Owen Diaz and Demetric Di-az. After meeting and conferring in good faith for over three weeks, and identifying the names of numerous individuals that Tesla itself produced via the discovery process, Tesla produced the names of just five individuals via an informal e-mail. Tesla indicated that it was "not aware" of any further witnesses and refused to produce any more information.

Tesla's claim is blatantly false. Tesla itself has identified numerous individuals who worked with Plaintiffs through the discovery process. Most egregiously, Tesla produced an exhaustive list with the names and photographs (though not contact information) of all employees who worked with Plaintiff Demetric Di-az at his deposition. Though Tesla was obviously aware of these employees, it never produced their contact information to Plaintiffs.

Based on its document production and discovery responses, Tesla is aware of the employees who worked "with or around" Plaintiffs and has already identified these individuals for its own purposes. In a staggering show of gamesmanship and discovery abuse that violates both the Federal Rules and the Court's October 3 Order, Tesla now refuses to produce these employees' names and contact information to Plaintiffs. Plaintiffs now move for an order imposing sanctions in the form of reasonable attorneys' fees and costs and preclusion of witnesses that Tesla improperly refused to identify in discovery pursuant to Rule 37(c)(1), and a further order compelling Tesla to produce the contact information sought.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

**A. Plaintiffs Request Witness Names and Contact Information via Interrogatory.**

On February 12, 2019, Plaintiffs propounded interrogatories on Defendant seeking the "names and most recent contact information (physical and email addresses and phone numbers) for all employees and/or contractors who worked with or around Plaintiff Owen Diaz." (Plaintiff Owen Diaz's Interrogatories to Defendant Tesla, Inc.—Set Two, at 4:8-11, Exhibit 1 to the Declaration of Cimone Nunley ("Nunley Dec.").) Plaintiffs propounded an identical request for employees who worked with or around Plaintiff Demetric Di-az. (*Id.* at 4:12-15.) This request

was necessary because Plaintiffs did not know or recall the full, legal names of many of their Tesla factory coworkers, and they sought the names of likely percipient witnesses.

Defendant responded on March 18, 2019. (Defendant Tesla, Inc.'s Response to Plaintiff Owen Diaz's Interrogatories—Set Two, Exhibit 2 to Nunley Dec.) Defendant objected on the grounds of vagueness, overbreadth, third-party privacy rights, relevance, and proportionality. (*Id*. at 3:17-4:26.) Tesla stated that it could not respond because the interrogatory was "unintelligible, and what 'employees and/or contracts' [*sic*] may have 'worked with or around' [Plaintiffs] at any time is not reasonably ascertainable and has not been described with sufficient specificity by Plaintiffs." (*Id*.)

**B. Plaintiffs Meet and Confer with Tesla.**

Plaintiffs initiated the meet and confer process via letter on May 4, 2019, and outlined the issues with Tesla's boilerplate objection. (Exh. 3 to Nunley Dec., pp. 2-4.) Given that Plaintiffs claim they heard racial slurs used freely throughout Tesla's workplace, Plaintiffs explained, the contact information of Plaintiffs' coworkers was plainly relevant, because coworkers would be able to either bolster or rebut Plaintiffs' harassment claims. (*Id*.) As a compromise, Plaintiffs offered to narrow the request to "individuals working in the areas that Plaintiffs worked, during the times that Plaintiffs were employed at the Tesla factory." (*Id*. at p. 4.)

The parties met and conferred in person on June 7, 2019. (Declaration of Navruz Avloni at ¶ 2.) Plaintiffs continued to seek a compromise and again proposed a narrowed scope that included three categories of employees: (1) employees who worked in the Elevator department during Plaintiff Owen Diaz's work shifts, (2) employees who worked in the Recycling department during Plaintiff Owen Diaz's work shifts, and (3) employees who worked on Plaintiff Demetric Di-az's team under the same supervisor. (*Id*. at ¶ 4.) Effectively, this limited the request to employees who worked in Plaintiffs' departments and the department where Plaintiff Owen Diaz's principal harasser, Ramon Martinez, worked. Tesla's counsel rejected the compromise. (*Id*. at ¶ 5.) Tesla did not propose a compromise. Instead, its counsel stated that she did not know how big Plaintiffs' work teams were, and did not know how many employees were in the recycling department. (*Id*. at ¶ 5.) Ultimately, Tesla did not produce any witness contact

PLAINTIFFS' MOTION FOR SANCTIONS

information. Despite its claims of vagueness and undue burden, Tesla was aware of numerous employees who worked with Plaintiffs and were responsive to this request.

**C. Tesla Identifies Numerous Employees who Worked "With or Around" Plaintiffs.**

Despite its refusal to produce responsive witness names to Plaintiffs, Tesla has consistently identified individuals who worked with Plaintiffs to its own advantage.

1. Tesla Identifies Employees Who Work "With or Around" Plaintiff Demetric Di-az, and Produces a List of These Employees at Plaintiff Di-az's Deposition.

Tesla first deposed Plaintiff Demetric Di-az on May 15, 2018. (Deposition of Demetric Di-az, Exh. A to Supplemental Declaration of Cimone Nunley ISO Plaintiffs' Administrative Motion to Seal ("Supp. Nunley Dec.").) ███████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████ ███████████████████████████████████████ █████████████████████████████████████████ █████████████████████████████████████ Though Tesla plainly had knowledge of these employees and their connection to Plaintiff Di-az, Tesla *never* identified their names and contact information in response to Plaintiffs' interrogatories.

Tesla was plainly able to identify and list employees who worked "with or around" Plaintiffs to its own benefit. Its production of this list flatly contradicts its claim that producing the names and contact information of employees who worked with Plaintiffs would be difficult or burdensome. This was far from the only case where Tesla identified employees in discovery and refused to produce their names and contact information in response to Plaintiffs.

2. Tesla's Document Production and Discovery Responses Identify More Employees who Worked With Plaintiffs.

Tesla's document production and discovery responses identified many more employees who indisputably worked with Plaintiffs. These include:

- <u>Ramon Martinez</u>: Mr. Martinez worked with Plaintiff, and Tesla was aware of this fact as it identified Mr. Martinez in its initial disclosures. (Defendant Tesla, Inc. DBA Tesla Motors, Inc.'s Initial Discovery Information Pursuant to General Order No. 71 at 4:9-11, Exh. 4 to Nunley Dec.) Mr. Martinez was a Tesla employee at the time Plaintiffs propounded the challenged interrogatories. (Defendant Tesla, Inc. dba Tesla Motors, Inc.'s Response to Plaintiff Owen Diaz's Interrogatories, Set Three at 6:14-7:10, Exh. 5 to Nunley Dec. (noting that Martinez became a Tesla employee on January 14, 2019).) Tesla did not identify Mr. Martinez in response to the challenged interrogatories, and produced only his e-mail address in response to a different interrogatory. (Defendant Tesla, Inc.'s Response to Plaintiff Owen Diaz's Interrogatories—Set One at 8:11-21, Exhibit 6 to Nunley Dec.)

- <u>Rothaj Foster</u>: Mr. Foster was Plaintiff Diaz's subordinate, and Tesla knew the men worked together because Tesla identified Mr. Foster in its initial disclosures. (Exh. 4 to Nunley Dec. at 4:7-8.) ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████

- <u>Israel Zuniga</u>: ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████

- <u>Rashad Zaid</u>: ████████████████████████████████████████████ ████████████████████████

- <u>Devin Burkhart</u>: ████████████████████████████████████████ ████████████

- <u>Froilan</u> (full legal name unknown): ████████████████████████████ ████████████████████████████

- <u>Yordano Ramirez</u>: ████████████████████████████████████████ ████████████████████████

\\

- <u>Hilda Navarro</u>: ██████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
████████████████

- <u>Aron Dehardo (or Deharto)</u>: ████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████
████████████████████

- <u>Jesse Leite</u>: ██████████████████████
██████████████████████████████
████████████

- <u>Robert Hurtado</u>: ███████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████
██████████████████████████
██████████████████████████
██████████████████████████
████████████████████████████
███████████████████████████
██████████████████████████
████████████████████

- <u>Hugo Villesenor</u>: ██████████████████████
██████████████████████████████
████████████

1    • <u>Troy Dennis:</u> ████████████████████████████████████
2    ████████████████████████████

3    • <u>Robert Dominguez:</u> ███████████████████████████████
4    ████████████████████████████████

5    • <u>Ramiel Younan:</u> █████████████████████████████████████
6    ██████████████████████

Although Defendant identified these employees via its document production, discovery

responses, and witness testimony, it never produced their contact information to Plaintiffs.

3.   <u>Tesla Produces Multiple Redacted Employee Rosters in Discovery.</u>

In addition to identifying the names of individual witnesses, Tesla has also produced

numerous employee rosters. For instance, it produced ███████████████████████████

████████████████████████████████████████████████████ It produced ████████████████████████████████

████████████████████████████████████ It produced █████████████████████

████████████████████████████████████████████████████

████████ It produced ████████████████████████████████████

████████████████████████████████ It produced ████████████████████

████████████████████████████████████████████████

████ However, a majority of these lists are wholly or partially redacted—preventing Plaintiffs

from ascertaining witnesses' identities. Those lists and documents that are not redacted lack

employees' and contractors' full legal names (*e.g.* Exh. Q.) Based on these lists, however, it is

plain that Tesla is aware of the names and identities of individuals who worked with Plaintiffs.

**D.  The Court Orders Tesla to Produce the Information Plaintiffs Seek.**

Plaintiffs never received the requested witness contact information. The parties ultimately

filed a joint discovery dispute with the Court on September 20, 2019. (Dkt. No. 88 at p. 1.)

Plaintiffs limited their request to "employees who worked in the same departments as Plaintiffs,

while Plaintiffs worked for Tesla, during the shifts Plaintiffs worked, and having the same

supervisors as Plaintiffs. Plaintiffs also requested the names and contact information of

individuals who worked in the same department as Plaintiff Diaz's harassers, during Plaintiff Diaz's work shifts." (*Id*.)

The Court ruled on the dispute on October 3, 2019. (Dkt. No. 93.) The Court ordered Tesla to produce "information about known individuals who fall into this category. Tesla need not go on a wild goose chase to uncover the names of individuals about whom it is not aware." (*Id*. at p. 2.)

Following the October 3, 2019, Order, Plaintiffs waited approximately 30 days to allow Tesla sufficient time to comply with the Court's Order. On November 8, 2019, Plaintiffs followed up with Tesla via e-mail to obtain the witness contact information, in addition to some documents Tesla had not yet produced. (Exh. V to Supp. Nunley Dec. at pp. 11-12.) Plaintiffs did not receive a response and followed up again on November 13, 2019. (*Id*. at pp. 10-11.) Tesla responded, "Based on Tesla's search in compliance with the Court's Order, Tesla has not identified any additional individuals whose information is not already in Plaintiff's possession, custody, and control (including by way of Tesla's discovery responses)." (*Id*. at p. 10.) Plaintiffs asked Tesla to detail the methodology by which it conducted its search, and Tesla failed to do so. (*Id*. at pp. 9-10.) Plaintiffs also detailed several categories of employees of which Tesla was aware and which Plaintiffs believed fell under the scope of the October 3 Order: employees identified in Tesla's document production; current employees for whom Tesla did not produce complete contact information (e.g. Martinez); employees on the list Tesla produced at Plaintiff Di-az's deposition; employees who worked in the same departments, during the same shifts, and under the same supervisors as Plaintiffs; and employees who worked in the recycling department during the same time period and shifts as Plaintiff Owen Diaz. (*Id*. at p. 7-8.)

For the first time, Tesla stated that it did not believe the Court's Order encompassed employees in Plaintiff's proposed compromise, or any of the proposed categories of individuals Plaintiffs identified. (*Id*. at 4-5.) Instead, Tesla mischaracterized Plaintiffs' reasonable request as a "fishing expedition". (*Id*.) Essentially, Tesla claimed it need only produce the contact information of employees actually known to Plaintiffs, and then refused to produce the contact information of employees that Plaintiffs specifically identified.

Eventually, Tesla produced ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Though the requests sought names, addresses, phone numbers, and e-mail addresses, Tesla produced the home address and e-mail address of just one individual. (*Id.*) Tesla produced only an e-mail for three individuals, and no contact information at all for the fifth individual. (*Id.*) Plaintiffs' counsel again pointed out that Tesla had identified numerous other individuals in discovery and asked whether Tesla intended to produce any additional information. (*Id.* at p. 2.) Tesla accused Plaintiffs of attempting to broaden the scope of the Court's October 3, 2019 Order and stated that the individuals known to Tesla that Plaintiffs identified in the e-mail thread were not "known individuals who worked with or around Plaintiffs" within the scope of the Order. (*Id.* at p. 1.) On November 25, 2019, Tesla indicated it would not produce any additional information. (*Id.*)

Tesla's behavior throughout the parties' extensive meet and confer process has been a textbook case of bad-faith discovery abuse. Tesla was unequivocally aware of the names of numerous individuals who indisputably worked with or around Plaintiffs, yet it failed to produce these individuals' contact information—first in response to Plaintiff's original discovery requests, and again in response to the Court's October 3, 2019 Order. Plaintiffs now move for sanctions in the form of reasonable attorneys' fees and costs incurred in bringing this motion, an order prohibiting Tesla from calling any witnesses at trial that it failed to identify in response to Plaintiffs' discovery request, and an order requiring Tesla to produce the names, home addresses, phone numbers, and e-mail addresses of the employees and contractors who worked with Plaintiffs.

## II. LEGAL ARGUMENT

### A. Tesla Failed to Comply with the Court's October 3, 2019 Order.

Under Rule 26(e)(1)(B) of the Federal Rules of Civil Procedure, a party who has responded to an interrogatory must "supplement or correct its disclosure or response...as ordered by the court." Though the parties dispute the scope of the Court's October 3, 2019 Order, under either interpretation there are multiple employees whose contact information Tesla failed to

produce. Plaintiffs believed the Order required Tesla to produce the contact information of employees who worked in Plaintiffs' departments during the same time period and shifts as Plaintiffs, and shared Plaintiffs' supervisors. Additionally, Plaintiffs understood the Order to encompass employees who worked in the recycling department during Plaintiff Owen Diaz's shifts. Tesla understood the Order to encompass employees who worked "with or around" Plaintiffs. Under either interpretation, Tesla's production was deficient.

As laid out above, Tesla produced numerous documents in discovery demonstrating its knowledge of the employees who worked "with or around" Plaintiffs. ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████ This demonstrates that (1) Tesla was aware of the employees who worked with and around Plaintiffs, and (2) Tesla was perfectly capable of compiling a list of these employees. Strikingly, Tesla *never* produced the methodology that allowed it to escape a full and complete production of these employees' names and contact information.

Tesla's refusal to detail its methodology for locating and producing the identities of a paltry five employees, and the undisputed evidence demonstrating Tesla's knowledge of the employees who worked with or around Plaintiffs, demonstrate Tesla's intent to escape compliance with the Court's October 3, 2019 Order. Plaintiffs did not force Tesla to engage in a "wild goose chase," nor did they attempt to force Tesla to produce information of which it was not aware. Rather, Plaintiffs reasonably asked Tesla to produce the contact information of employees that *Tesla itself* identified throughout the discovery process and attempted to achieve a compromise with Tesla's counsel to resolve the dispute. Rather than meeting Plaintiffs halfway, Tesla stubbornly attempted to resist compliance by any means necessary. Such inaction cannot fairly be considered a good-faith attempt to comply with the Court's Order, and sanctions are thus an appropriate remedy for Tesla's noncompliance.

\\

\\

**B.  The Court Should Sanction Tesla by Precluding Tesla from Calling Any Witnesses Responsive to Plaintiffs' Requests at Trial that It Failed to Identify in Discovery.**

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Likewise, under Rule 37(b)(2)(A)(ii), the Court may impose sanctions for failure to comply with a prior order, including "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Under both provisions, sanctions are not available where a party proves the failure to produce the information sought is harmless or substantially justified. [cite to rules] The "burden is on the party facing sanctions to prove harmlessness" or substantial justification. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

As outlined above, Tesla unquestionably failed to comply with the Court's October 3, 2019 Order. Plaintiffs identified numerous witnesses responsive to the requests, and in response ███████████████████████████████████████████████████████████ ████████████████████████████ Indeed, for one witness, Tesla did not produce *any* contact information. (*Id.*) Tesla's counsel did not even offer objections, precluding Plaintiffs from determining whether Tesla had withheld any information on the basis of some claimed privilege. Rather than offering a full response, Tesla's counsel has done the proverbial bare minimum in an attempt to stymie Plaintiffs' legitimate discovery requests.

Though sanctions for a failure to respond are not available where the failure was substantially justified or harmless, Tesla's failure was neither. To date, Tesla has provided *no* justification—never mind a substantial justification—for its failure. Tesla did not, for instance, represent that it lacked certain employees' or contractors' contact information. It did not identify an undue burden that locating the information sought would entail (nor could it, given that Tesla itself compiled a list of the relevant employees for its own purposes and thus had no need to undertake a burdensome search). Had this been the case, Plaintiffs would have readily worked with Tesla to craft an appropriate compromise or narrow the requests.

Nor is Tesla's failure to produce responsive witness contact information harmless. Tesla defends against Plaintiffs' claims by stating that Plaintiffs are disgruntled, poor-performing employees whose post-termination suit is driven by a desire to "get back" at their former employer. Tesla also claims the racial harassment Plaintiffs experienced never occurred. Plaintiffs anticipate that Tesla will call witnesses to testify about Plaintiffs' poor performance or about the environment generally in its factory. By refusing to produce these witnesses' names, Tesla has widened the pre-existing asymmetry of information: Tesla has access to full employee rosters and can pick and choose to identify only favorable witnesses to Plaintiffs or to call only favorable witnesses at trial. By designating these employees as rebuttal or impeachment witnesses, Tesla can even conceal these witnesses and the content of their testimony until they are called to the witness stand. Plaintiffs, in contrast, have been deprived of the opportunity to contact these potential witnesses via traditional discovery mechanisms, and deprived of the opportunity to depose or request documents from these individuals. They now cannot compel these potential witnesses to so much as speak with them informally, to determine whether they may possess relevant information that would rebut or bolster their claims or Tesla's defenses. The testimony of individuals who personally observed Plaintiffs in the workplace is crucial to Plaintiffs' claims, and failure to produce their names and contact information has substantially prejudiced Plaintiffs in preparing their case.

In the absence of harmlessness and substantial justification, a witness preclusion sanction is appropriate to remedy to the harm Tesla has caused. While the sanction is undoubtedly harsh, the Advisory Committee describes the sanction as "self-executing" in the absence of substantial justification or harmlessness, and observed that this "automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." Fed. R. Civ. P. 37, Advisory Committee's Note (1993). The sanction is also proportional to the harm Tesla caused. Tesla would not be barred from introducing evidence to support its claims, nor would Tesla be barred from calling witnesses it appropriately identified in the discovery process. Tesla would only be precluded from calling witnesses whom it improperly attempted to hide from Plaintiffs. The sanction is appropriate because Tesla's gamesmanship precluded

Plaintiffs from conducting formal discovery or informal investigation, and precluding Tesla from calling such witnesses for any purpose prevents Tesla from reaping the ill-gotten gains of its bad-faith discovery abuse.

**C. The Court Should Order Tesla to Produce the Contact Information Sought.**

In its October 3, 2019 Order, the Court ordered Tesla to produce the names and contact information of employees and contractors who worked with or around Plaintiffs. (Dkt. No. 93 at p. 2.) In addition to imposing a witness preclusion sanction, the Court should order Tesla to comply with this prior Order and produce the names, addresses, phone numbers, and e-mail addresses of employees and contractors who worked with or around Plaintiffs.

**D. The Court Should Impose Sanctions in the Form of Attorneys' Fees Incurred in Bringing This Motion.**

In addition to a witness preclusion sanction, the Court may also order payment of expenses caused by the failure to comply with a prior court order, or may impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1)(A-C). Such a sanction is appropriate here because, absent Tesla's discovery abuse, Plaintiffs would not have incurred the fees and costs required to bring and file this motion. Based on the time and expenses incurred in preparing this motion, the Court should award attorneys' fees and costs in the amount of **$7,240**. (Nunley Dec., ¶ 2.)

**III. CONCLUSION**

For the foregoing reasons, the Court should impose sanctions precluding Tesla from calling any witness at trial that was (1) responsive to Plaintiffs' interrogatories and (2) was not identified in response to Plaintiffs' interrogatories, as well as reasonable attorneys' fees and costs. The Court should also order Tesla to comply with its October 3, 2019 Order and produce the witness names and contact information sought.

DATED:  January 13, 2020          By: _____
                                      Lawrence A. Organ, Esq.
                                      Navruz Avloni, Esq.
                                      J. Bernard Alexander, Esq.
                                      Cimone A. Nunley, Esq.
                                      Attorneys for Plaintiffs
                                      DEMETRIC DI-AZ AND OWEN DIAZ