SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TRACEY A. KENNEDY, Cal. Bar No. 150782
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:    213.620.1780
Facsimile:    213.620.1398
Email:         tkennedy@sheppardmullin.com

PATRICIA M. JENG, Cal. Bar No. 272262
REANNE SWAFFORD-HARRIS, Cal. Bar No. 305558
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:         pjeng@sheppardmullin.com
               rswafford-harris@sheppardmullin.com

Attorneys for Defendants,
TESLA, INC. dba TESLA MOTORS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, AND LAMAR PATTERSON,<br><br>                    Plaintiffs,<br><br>         v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**DEFENDANT TESLA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FRCP 37(B)(2)(A)**<br><br>Date:            February 19, 2020<br>Time:            2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge:          Hon. William H. Orrick<br><br>Trial Date;      May 11, 2020<br>Complaint Filed:  October 16, 2017 |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................................... 2

    A.  Plaintiffs' Propounded The Discovery Requests At Issue, Which This Motion
    Severely Misrepresents, and The Court Already Issued Its October 3, 2019 Order
    Based On The Parties' September 20 Joint Discovery Dispute Letter. .................... 2

    B.  Tesla Complied With The Court's October 3, 2019 Order. Despite Plaintiffs'
    Misrepresentation of The Court's Order. ................................................................ 4

        1.  Tesla Confirmed It Provided All Contact Information Of Employees or
        Workers "Who Worked With Or Around Plaintiffs," Which Is What The
        Court Ordered. ............................................................................................ 4

        2.  Plaintiffs Sought To Expand The Court's Order. ....................................... 5

    C.  Despite Already Complying With the Court's Order, Tesla Provided Additional
    Names Based On Plaintiffs' Broadened Interpretation Of the Order. ................... 7

    D.  Individuals Identified in Plaintiffs' Motion Do Not Meet the Criteria Under Any
    Reasonable Interpretation Of the Order and  Do Not Fall Within The Scope Of
    Plaintiffs' Interrogatories. ..................................................................................... 8

        1.  Demetric Di-az's May 15, 2018 Deposition Exhibit 34 ............................ 8

        2.  Document Production and Discovery Responses ....................................... 9

            a.  Ramon Martinez ............................................................................. 9

            b.  Rothaj Foster ................................................................................ 10

            c.  Israel "Zuniga" ............................................................................. 10

            d.  Rashad Zaid .................................................................................. 11

            e.  Devin Burkhart ............................................................................. 11

            f.  "Froilan" ....................................................................................... 11

            g.  Yordano Ramirez .......................................................................... 12

            h.  Hilda Navarro, Aron Dehardo or Aron Deharto, and Jesse Leite .............. 12

            i.  Robert "Hurtado" .......................................................................... 12

            j.  Hugo Villesenor ........................................................................... 13

            k.  Troy Dennis .................................................................................. 13

            l.  Robert Dominguez ........................................................................ 14

            m.  Ramiel Younan .............................................................................. 14

        3.  The Purported "Employee" Rosters .......................................................... 14

III.  ARGUMENT ........................................................................................................... 15

    A.  Plaintiffs' Motion For Sanctions Is Improper. ..................................................... 15

B.      Plaintiffs' Motion For Sanctions and Relies Upon Misrepresentations And Should Be Denied..................................................................................................................... 16

C.      Tesla Complied with the Court's Order – Not Plaintiffs' Post-Hoc Reconstruction of the Discovery ................................................................................................. 17

D.      The Court Should Not Grant Plaintiffs' Requested Relief ................................. 17

IV.    CONCLUSION.......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

<u>Federal Cases</u>

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*
190 F.R.D. 644 (N.D. Cal. 2000) ........................................................................................... 18

*Cardinal v. Lupo*
No. 18-CV-00272-JCS, 2019 WL 4450859 (N.D. Cal. Sept. 17, 2019) ................................ 16

*David v. Hooker, Ltd.*
560 F.2d 412 (9th Cir. 1977) ................................................................................................. 19

*Goethe v. California Dep't of Motor Vehicles*
No. CIV S-07-1945MCEGGH, 2009 WL 3568624 (E.D. Cal. Oct. 27, 2009) ...................... 19

*Siebert v. Gene Sec. Network, Inc*
No. 11-cv-01987-JST, 2014 WL 5808755 (N.D. Cal. Nov. 6, 2014) ...................................... 16

*Wendt v. Host International, Inc.*
125 F.3d 806 (9th Cir.1997) .................................................................................................. 18

<u>Federal: Statutes, Rules, Regulations, Constitutional Provisions</u>

Central District of California Local Rules of Practice
Rules 7-8 ................................................................................................................................ 16
Rules 7-8(c) ........................................................................................................................... 16

Federal Rules of Civil Procedure
Rule 37 ................................................................................................................................... 18

## I.     INTRODUCTION

Plaintiffs Owen Diaz and Demetric Di-Az's ("Plaintiffs") motion seeking sanctions against Defendant Tesla, Inc. ("Tesla") should be denied for several reasons.  First, Tesla complied with the Court's October 3, 2019 Discovery Order ordering the production of "known individuals" who fall within the category of "employees and/or contractors who worked with or around plaintiffs."  Although Tesla and Plaintiffs disagreed on their interpretation of the Court's October 3 Order, Tesla in good faith produced the contact information of individuals who fell within *Plaintiffs' interpretation* of the Order, as well as their own.  Plaintiffs' motion, based on the Order, therefore has no merit.

Plaintiffs' Motion makes the same misrepresentation it made to this Court in Plaintiffs' portion of the Joint Discovery Dispute letter and requests the enforcement of discovery requests that do not exist. Plaintiffs also attempt to conflate the actual words they wrote in their portion of the Joint Discovery Dispute letter with their efforts *after* the October 3 Order to significantly expand the scope of the discovery required by the Order.  Even worse, Plaintiffs blatantly misrepresent the facts by claiming that Tesla has *not* produced contact information responsive to the discovery request at issue by pointing to various other documents referencing individuals for whom they do not have contact information – without actually showing how these individuals fall within the scope of either the original requests, the Court's Order, or even Plaintiffs' broadened interpretation of the Court's Order.  For example, Plaintiffs claim that Tesla is aware of other workers who worked "with or around Plaintiffs" by pointing to a list of names and photographs and falsely representing that Tesla produced this list as a list of individuals who worked with or around plaintiffs.  However, the deposition testimony makes clear that neither party made *any representation* that this was a list of employees that worked "with or around Plaintiffs," or that the employees ever worked with Plaintiffs at all.

Second, Plaintiffs' Motion seeks for this Court to re-visit its October 3 Order.  But the proper mechanism to do so is through a Discovery Dispute Letter.  The Court explicitly instructed the parties that "[t]o the extent they cannot resolve their dispute, they may submit another joint letter" and this Motion is in violation of the Court's Order.

Finally, none of Plaintiffs' requested relief is warranted.  Plaintiffs have not made any concrete showing of harm or any justification for their attorneys' fees request.  Any alleged inability to conduct

1   discovery is the result of decisions made by Plaintiffs (e.g., by choosing how and what discovery to

2   propound, making subsequent representations about what they were seeking in their vague requests for

3   those working "with or around" Plaintiffs, and waiting almost four months following meet and confer on

4   June 7, 2019 to bring their motion) – not any alleged conduct by Tesla.  Plaintiffs chose to wait until just

5   before the close of discovery to bring the underlying discovery dispute to the Court.

6          The Motion should be denied in its entirety.

7   **II.     FACTUAL BACKGROUND**

8          **A.     Plaintiffs' Propounded The Discovery Requests At Issue, Which This Motion
                    Severely Misrepresents, and The Court Already Issued Its October 3, 2019 Order**

9                  **Based On The Parties' September 20 Joint Discovery Dispute Letter.**

10         Plaintiffs' Motion first asserts that Tesla did not comply with this Court's October 3, 2019 Order

11  by misrepresenting that Plaintiffs requested names and contact information for persons who "worked

12  with and around" plaintiffs *and* "individuals who worked in the same department as Plaintiff Diaz's

13  harassers, during Plaintiff Diaz's work shifts."  (Mot. 9:28-10:2).  This scope of information reaches

14  beyond the *actual* discovery requests for which Plaintiffs sought further responses by way of a Joint

15  Discovery Dispute letter filed on September 20, 2019 (Dkt. No. 88), and upon which the Court based its

16  Order (Dkt. No. 93, p. 2).  The two interrogatories in dispute were the following:

17         **Interrogatory No. 11** "Please provide the names and most recent contact information (physical

18         and email addresses and phone numbers) for all employees and/or contractors who worked with

19         or around Plaintiff Owen Diaz."

20         **Interrogatory No. 12** "Please provide the names and most recent contact information (physical

21         and email addresses and phone numbers) for all employees and/or contractors who worked with

22         or around Plaintiff Demetric Di-az."

23  Declaration of Cimone Nunley ("Nunley Decl."), Exh. 1 (Dkt. No. 146-2, pp. 2-3).  As the plain language

24  shows, neither of the discovery requests seek contact information for any "individuals who worked in the

25  same department" as *alleged harassers* of Diaz.

26         Nor did Plaintiffs identify any other interrogatory in their September 20 Joint Discovery Dispute

27  letter that requested such contact information.  (Dkt. No. 88, p. 1).  Instead, Plaintiffs had similarly

28  attempted to shoehorned this demand for contact information for *everyone* who worked in the same

department as any of Diaz's *alleged harassers*, without citing any discovery requests that were actually propounded, into Plaintiffs' portion of the Joint Discovery Dispute Letter (Dkt. No. 88, p. 1).  Plaintiffs now repeat and incorporate their (never before propounded) demand into the instant Motion, falsely asserting that Plaintiffs' discovery requested information about "individuals who worked in the same department as *Plaintiff Diaz's harassers*, during Plaintiff Diaz's work shift." (Mot. 9:28-10:2).  Neither interrogatory 11 nor 12, nor Plaintiffs' May 4, 2019 meet-and-confer letter, *ever* raise any such request for individuals who worked in the same department as *alleged harassers*.  Nunley Decl., Exh. 3 (Dkt. No. 146-2, p. 19) (emphasis added).  Plaintiffs fail to inform the Court that there was no basis whatsoever for this additional, precatory request in their portion of the Joint Discovery Dispute Letter because *there was no propounded interrogatories seeking such information*.

Therefore, the October 3 Discovery Order must be read without incorporating Plaintiffs' additional requests that are beyond the actual discovery requests (which is how Plaintiffs' have now interpreted the Order).  The Court's October 3 Discovery Order states, in relevant part:

> *Re: plaintiffs' request that Tesla produce contact information for employees and/or contractors who worked with or around plaintiffs*:  To the extent it has not done so already, Tesla shall provide information about **known individuals who fall into this category**.  Tesla need not go on a wild goose chase to uncover the names of individuals about whom it is not aware.

Dkt. No. 93, 2:12-15 (text bolded for emphasis).  The actual requests and a plain reading of the Order reference the "category" which refers to the immediately preceding requests for "employees and/or contractors who worked with or around plaintiffs"; the "category" does not extend to providing contact information for all persons who worked in the same department as each of Diaz's *alleged harassers*.

Plaintiffs seek to artificially augment the basis on which the Court's Order was issued (and the actual requests) by now providing a declaration about a meet-and-confer proposition Plaintiffs supposedly put forward on June 7, 2019, seeking to clarify interrogatories 11 and 12.  (Mot. 5:18-6:2).  The purported "compromise" narrowed the temporal scope of the interrogatories, but *expanded* the scope in other aspects, such as seeking all employees in Plaintiffs' departments (including those who did not work with or around them).  Tesla disputes that this proposition was made by Plaintiffs on June 7, but regardless, this purported compromise *appears nowhere* in Plaintiffs' portion of the Joint Discovery

1    Dispute letter; therefore, the Court could not have issued its order based on any proposed compromise

2    from the June 7 in-person meet and confer.  (Dkt. No. 88, p. 1).

3         Instead, Plaintiffs' representation to the Court in the September 20 Joint Discovery Dispute filing

4    was the following:

5         Plaintiffs limited this request to employees who worked in the same departments as Plaintiffs,

6         while Plaintiffs worked for Tesla, during the shifts Plaintiffs worked, and having the same

7         supervisors as Plaintiffs.

8    Dkt. No. 88, p. 1.  Plaintiffs' attempt to now argue that the discovery requests would also include "(1)

9    employees who worked in the Elevator department during Plaintiff Owen Diaz's work shifts, (2)

10   employees who worked in the Recycling department during Plaintiff Owen Diaz's works shifts, and (3)

11   employees who worked on Plaintiff Demetric Di-az's team under the same supervisor" (Mot. 5:18-25)

12   contradicts Plaintiffs' actual representation to this Court about the interrogatories' scope on which the

13   Court's Order was based.  Any attempt to seek sanctions based on alleged non-compliance with the

14   Court's October 3 Order is wholly improper; it not a fact or representation made by Plaintiffs' in the Joint

15   Discovery Dispute letter and thus was not contemplated and could not be contained in the Court's Order.

16
17        **B.    Tesla Complied With The Court's October 3, 2019 Order. Despite Plaintiffs'
              Misrepresentation of The Court's Order.**

18        **1.    <u>Tesla Confirmed It Provided All Contact Information Of Employees or
19              Workers "Who Worked With Or Around Plaintiffs," Which Is What The
                Court Ordered.</u>**

20        Again, the Court's Order clearly stated that "to the extent it has not done so already, Tesla shall

21   provide information about known individuals who fall in this category [*employees and/or contractors*

22   *who worked with or around plaintiffs*]."  Dkt. No. 93, 2:12-15.  On November 13, 2019, Tesla confirmed

23   in writing that "Based on Tesla's search in compliance with the Court's Order, Tesla has not identified

24   any additional individuals whose information is not already in Plaintiff's possession, custody, and control

25   (including by way of Tesla's discovery responses).  Although we are not required to go on a wild goose

26   chase, if we do obtain any additional information, we would provide that."  Nunley Decl., Exh. V (Jeng

27   11/13/19 email, 6:28pm).

28        In response, Plaintiffs contended that Tesla had not complied with the Court's Order because

Tesla did not provide contact information for people "who had *regular interactions with the elevators*" and "*regular contact with the elevators,*" persons in *Plaintiffs' Initial Disclosures,* and all persons on a list of people *who worked at Tesla*[1] introduced at Demetric Di-az's depositions.  Nunley Decl., Exh. V (Organ 11/13/19 email, 8:34pm).  Plaintiffs' November 13th email did not provide any Bate stamp numbers or deposition testimony references in connection with this new demand as their Motion now does.  *Id.*  However, Tesla responded and clarified that "To be clear, the interrogatories ask for 'names and most recent contact information' for individuals 'who worked with or around'  The Court's Order states that Tesla is 'To the extent it has not done so already, Tesla shall provide information about known individuals who fall into this category.  Tesla need not go on a wild goose chase to uncover the names of individuals about whom it is not aware.'"  Declaration of Patricia Jeng ("Jeng Decl.") ¶ 2, Ex. A (11/14/19 5:24pm email).  Tesla pointed out that contrary to Plaintiffs' counsel's November 13 assertion, the Order did not order information for people "who had regular contact with elevators," people Plaintiffs' identified in their initial disclosures, or information of individuals "contained in the emails" exchanged (nor did Plaintiffs request such information).  Tesla also made clear that there has not been any list of individuals produced who worked "with or around plaintiffs."  *Id.*

### 2.   Plaintiffs Sought To Expand The Court's Order.

A day after Plaintiffs claimed the Court's Order entitled them to information never requested, *e.g.* those who had "regular contact with elevators," Plaintiffs again reframed the scope of their request. Plaintiffs sent another email again expanding the scope of their request and the Court's Order:

> (1)  Employees who worked in Plaintiffs' departments (Elevators, Body in White), during Plaintiffs' shifts, under Plaintiffs' supervisors
> (2)  Employees who worked in the recycling department, during Plaintiff Owen Diaz's work shifts
> This is still the scope of information we seek, **in addition to the contact information of the individuals that have been named in the documents you produced in discovery**

---

[1] Plaintiffs have blatantly misrepresented this list as somehow being a list of individuals who worked "with or around" Plaintiffs produced at Di-Az's deposition.  But *neither party* made *any representation* that this was a list of employees that worked "with or around Plaintiffs."  In fact, Plaintiffs were aware that the list was not responsive to any discovery because when Plaintiffs' counsel explicitly asked about the list, then-counsel for Tesla confirmed "It wasn't requested."  The only representation counsel made was that it was a list of individuals who were working generally at Tesla at the same time as Demetric – not in the same area, department, under the same manager/supervisors, in the same shifts, let alone "with or around" Plaintiffs.  As Plaintiffs concede in their moving papers, Di-Az only recognized one person on the list of names produced at deposition – which is consistent with the fact that the list was not a list of individuals working with or around Plaintiffs.  Jeng Decl. ¶ 3; Mot. 6:10-12.

**and the contact information of the individuals on the list you produced at Demetric Di-az's deposition.**

Nunley Decl., Exh. V (Nunley 11/14/19 email sent at 5:56 am).  Plaintiffs' statement that "this is still the scope of information we seek" suggests that Plaintiffs had either always sought such information, or that the Court had ordered it.  But neither is the case.  Nowhere in Plaintiffs' portion of the Joint Discovery Dispute letter (Dkt. No. 88, p. 1), the October 3 Order, or even Plaintiffs' May 4, 2019 meet-and-confer letter (Dkt. No. 146-2, p. 19)), was there any mention of the requests being as to (1) the specific departments where Plaintiffs worked; (2) information about employees who worked in the recycling department; (3) any request for the contact information of all individuals that have been named in documents produced in discovery; or (4) contact information of individuals on the list produced at Demetric's deposition.

Later that same day (November 14), Plaintiffs' counsel sent another email requesting all of the above information and adding a new demand that Tesla also produce information for "employees identified in discovery documents" with a list of a last names; this email did not contain any explanation or refer Tesla to any Bate stamped documents.  Nunley Decl., Exh. V (Nunley 11/14/19 email, 5:12 pm).  After Tesla's counsel responded saying they had just addressed Plaintiffs' counsel's email in a separate email, Plaintiffs' counsel wrote that "[i]f [Tesla] interpreted Judge Orrick's October 3 Order differently, please outline your interpretation for us, so we can either negotiate some kind of compromise or raise the issue with the Court again."  Nunley Decl., Exh. V (Nunley 11/14/19 email, 6:08 pm).

In response, on November 15, Tesla's counsel explained that "the Order makes no reference to Plaintiffs' language" (above), and that "[i]nstead, the Court says for Tesla to provide information known about individuals who fall in "this category."  "This category" logically refers to the immediately preceding description of the category, which is explicitly stated in the Order as "contact information for employees and/or contractors who worked with or around plaintiffs.""  Nunley Decl., Exh. V (Jeng 11/15/19 email, 12:39 pm).  Further, in response to Plaintiffs' ostensible offer to compromise, Tesla responded that although it did not wish to relitigate the same exact issue the Court issued an order on, "we are amenable to discuss an actual compromise if you would like to discuss."  *Id.*  As it turns out, Plaintiffs' never intended to discuss any sort of compromise and refused to engage in further discussions,

1    simply stating that "[t]he Court's October 3 Order does not require us to propose a compromise."  Nunley

2    Decl., Exh. V (Plaintiffs' 11/17/19 email sent at 9:43 am.).   **Plaintiffs then conceded that the Court's**

3    **Order ordered Tesla to produce contact information of known individuals who worked "with or**

4    **around Plaintiffs."**  *Id.*   However, **this is exactly what Tesla confirmed had been produced** before

5    Plaintiffs began creating new categories of information it contends the Court Ordered, e.g. individuals

6    with "regular interactions with the elevators" and "regular contact with the elevators," persons in

7    Plaintiffs' Initial Disclosures, persons on an unauthenticated list of individuals introduced at deposition

8    (not a list of people who worked with or around Plaintiffs), individuals "named in documents produced in

9    discovery," etc.

10

11            **C.    Despite Already Complying With the Court's Order, Tesla Provided Additional**
                      **Names Based On Plaintiffs' Broadened Interpretation Of the Order.**

12           As noted above, Tesla complied with the Court's Order.  Tesla confirmed with Plaintiffs that

13   there were no other known individuals whose information had not already been produced.  Tesla also

14   repeatedly pointed out to Plaintiffs that what they are requesting post-October 3 Order was "broader than

15   what the Court's Order is."  Nunley Decl., Exh. V (Jeng 11/15/19 email, 12:30 pm).

16           Despite already producing information pursuant to the plain language of the Court's Order –

17   Tesla agreed to broaden its search beyond the Court's Order given its desire to avoid court intervention

18   and the differing interpretations of October 3 Order.  Specifically, based on Plaintiffs' proposed

19   clarification of their interrogatories in the Joint Discovery Dispute letter[2], Tesla obtained and reviewed

20   information from its HR department with employees and contractors who had the same supervisor as

21   Plaintiffs' supervisors (Ed Romero and Javier Caballero), worked the same shifts as Plaintiffs, and

22   worked during the same time frame that Plaintiffs worked at Tesla – *despite that these individuals are not*

23   *known to have worked around Plaintiffs at all, ever.*  Tesla also identified known individuals working in

24

25   [2] Tesla did not do a further search of the *other* requests beyond the Court's Order that Plaintiffs raised for
     the first time after the Order, because those requests were never even presented to the Court.  For
26   example, Plaintiffs' Discovery Dispute Letter never sought the contact information for the list of
     individuals presented at Demetric's deposition, and the list – contrary to Plaintiffs' misrepresentations –
27   do not correlate with individuals who worked with or around Plaintiffs.  Thus, such requests could not
     even conceivably been contemplated by the Court in its Order.
28

Battery[3], for the same manager as Demetric Di-az (Ramiel Younan), on the same shift, during the time that Demetric Di-az worked at Tesla.   Tesla then obtained contact information (to the extent it was available) for the identified individuals in the information provided and provided that to Plaintiffs, to the extent that such information had not previously been provided (five additional individuals).  Thus, Tesla has now produced even more contact information of individuals – who are not even necessarily known to have worked with or around Plaintiffs – to Plaintiffs.  Under *any* interpretation of the Court's Order, Tesla has complied.

> **D.    Individuals Identified in Plaintiffs' Motion Do Not Meet the Criteria Under Any Reasonable Interpretation Of the Order and  Do Not Fall Within The Scope Of Plaintiffs' Interrogatories.**

The individuals and deposition exhibit with individuals identified in the Motion (6:6-9:4) do not meet the criteria for production of contact information contained in the Order, either under its plain language or Plaintiffs' broadened interpretation.

> ### 1.    Demetric Di-az's May 15, 2018 Deposition Exhibit 34

Plaintiffs' Motion relies upon an exhibit used at Demetric Di-az's May 2018 deposition which contained photographs and names of individuals.  Plaintiffs' Motion acknowledges that the only information provided about Exhibit 34 was counsel's representation that the exhibit contained "individuals *who were working at Tesla* at the same time [Demetric Di-az] was there."  (Mot. 6:10-12) (emphasis added).  Persons working at Tesla at the same time – nothing more.  Yet from there Plaintiffs unjustifiably leap to the conclusion that "**[p]resumably**, these individuals worked in close proximity with Plaintiff Di-az" simply because Tesla's counsel asked Demetric if he recognized any individuals.  (Mot. 6:10-14) (emphasis added).  A presumption cannot support a factual representation or a sanctions request.[4]

Furthermore, even under Plaintiffs' interpretation of the Court's Order – *i.e.*, that the Court's Order is to respond to a (non-existent) request for persons working for the same supervisors as Plaintiffs,

---

[3] Demetric Di-Az testified that he worked with the "battery" team.  Jeng Decl. ¶ 4, Exh. B.
[4] One could just as reasonably conclude that if the individuals worked with or around Plaintiffs and were percipient witnesses, that Plaintiffs would have been able to identify them; Tesla does not make that argument here, but simply highlights the lack of logic behind Plaintiffs' presumption, particularly since there are thousands of individuals who fit counsel's description who did not work with or around Di-Az.

1   the same shifts and the same departments – the individuals on the list at issue are not responsive.  Indeed,

2   even a cursory glance at Exhibit 34 shows that there are multiple supervisors who were not associated

3   with Demetric, different shifts and different departments.  *See* Nunley Decl., Exh. A.  There are

4   individuals reporting to other managers, on other shifts and other teams such as QC, Closures, End of

5   Line, and Underbody.  *Id.*  Finally, Demetric's own testimony about Exhibit 34 further clarifies that

6   Exhibit 34 is *not* a list of persons who were only in his department, on his shift or had his supervisor:

7            A.  Do you want my honest opinion about this paper?

8            Q.  I only want you to be truthful in this deposition.

9            A.  It really looked like you just added my picture to this, and I really -- 'cause I'm the

10               only one in here that says battery.  There's nobody else that says battery at all.

11   Nunley Decl., Exh. A (5/15/18 D. Di-az Dep.), 172:2-8.  Therefore, the Order could not and did not

12   require Tesla to provide contact information of all workers identified in Exhibit 34. [5]

13                            **2.    Document Production and Discovery Responses**

14        Plaintiffs assert – without considering the limitations put on their request in the Joint Discovery

15   Dispute letter – that the persons below "indisputably worked with Plaintiffs."  For the majority of these

16   individuals that is either not true and/or the individual does not meet the criteria in Plaintiffs' Joint

17   Discovery Dispute letter or the Court's Order.  Indeed, had they fit into the criteria of working "with or

18   around Plaintiffs," Plaintiffs presumably would have identified them during the meet and confer process,

19   or following the Court's October 3 Order, or after Tesla confirmed in November that there were no

20   additional "known individuals" whose information was not produced.

21                            a.    **Ramon Martinez**

22        Plaintiffs are aware that Ramon Martinez did not have the same supervisor as Diaz and would

23   therefore not fall under even Plaintiffs' broader interpretation of the Court's Order.  To the extent

24   Plaintiffs were not aware, Tesla's post-order correspondence with Plaintiffs informed them by stating that

25   he "does not meet **Plaintiffs' criteria** set forth in the joint discovery dispute letter, which requested that

26   the scope be known individuals from same department, time period, shifts, and supervisors as Plaintiffs."

27

28   _____

[5] Individuals who were identified by Tesla as responsive and for whom contact information has already
been provided (to the extent Tesla was in possession of this information), also appear on Exhibit 34.

1   Nunley Decl., Exh. V (Jeng 11/25/19 email, 5:07pm) (emphasis added).  Ramon Martinez's name does

2   not appear as a name on the list of workers who reported to Diaz's manager, were in his department and

3   worked the same shift during the time Diaz worked at Tesla.  Jeng Decl. ¶ 5. Whether he has been a

4   known witness or identified in other discovery documents does not convert Martinez into someone who

5   falls within the Court's Order;  Plaintiffs' protestations that Tesla only produced Martinez' email in

6   response to a different interrogatory, but not in response to Interrogatories 11 and 12, is consistent with

7   Martinez *not falling within the scope of the Order*.[6]  Therefore, Ramon Martinez is not an individual who

8   met the criteria for Tesla to provide contact information in response to the Court's Order or Interrogatory

9   Nos. 11 and 12.

10                     b.      Rothaj Foster

11          Plaintiffs assert that Rothaj Foster and Diaz "worked together" because Tesla identified Foster in

12   its initial disclosures.  (Mot. 7:14-15).  But Plaintiffs' conflation of individuals identified in initial

13   disclosures and workers who worked "with or around Plaintiffs" is misplaced.  Tesla's diligent and

14   reasonable search confirms Rothaj Foster's name does not appear as a name on the list of workers who

15   had Diaz's manager on the same shift and department during the time Diaz worked at Tesla.  Jeng Decl.

16   ¶ 5.  Therefore, Rothaj Foster is not an individual who met the criteria for Tesla to provide contact

17   information in response to the Court's Order or Interrogatory Nos. 11 and 12.

18                     c.      Israel "Zuniga"

19          Plaintiffs assert that Israel Zuniga is another individual responsive to Interrogatory Nos. 11 and 12

20   because "Mr. Zuniga helped investigate Plaintiff's complaint about a racially offensive drawing."

21   Nunley Decl., Exh. C (TESLA-0000005).  The document to which Plaintiffs refer refers only to "Israel"

22   (no last name), and Owen Diaz's deposition testimony does not refer to an Israel Zuniga; instead, he

23   admitted he did not know his last name and was not certain of his first name.  Jeng Decl. ¶ 5, Exh. C-D

24   (5/22/18 O. Diaz Dep.), 44:11-13; (6/21/19 O. Diaz Dep.), "Z" index pages.

25          Nonetheless, nothing in the email, or other evidence provided by Plaintiffs indicates that an

26

27   [6] Plaintiffs had the opportunity to depose Martinez and chose not to.  Plaintiffs submitted a Joint
     Discovery Dispute letter identifying Martinez as an additional witness they sought to depose, along
28   with seven other individuals.  (Dkt. No. 86, p. 1).  The Court's Order gave Plaintiffs an additional 14
     hours of deposition (Dkt. No. 93, p. 1), but Plaintiffs did not elect to depose Martinez,

1   "Israel" worked in the same department or had the same supervisor as Diaz.  Neither Israel or Zuniga

2   appears as a name on the list of workers who reported to Diaz's manager, in his department and same

3   shift during the time Diaz worked at Tesla.  Jeng Decl. ¶ 5.  Therefore, Israel and/or Israel Zuniga are not

4   individuals who meet the criteria for Tesla to provide contact information in response to the Court's

5   Order or Interrogatory Nos. 11 and 12.

6                  d.      Rashad Zaid

7          Plaintiffs misrepresent that "Tesla employee Ed Romero assigned Mr. Zaid to work with Plaintiff

8   Diaz" (Mot. 7:20-21), but the cited exhibit does *not* demonstrate that Mr. Zaid ever worked there.  While

9   Ed Romero asks employer nextSource to so assign Zaid, nextSource representatives reply that they need

10  additional information about days, work times, shifts and a clarification on "what that schedule looks

11  like."  Nunley Decl., Exh. 5 (TESLA-0000047).  Thus, the referenced document does not show that Zaid

12  is actually assigned to Diaz, let alone that he actually reported to work or worked with or around

13  Plaintiffs.[7]  Indeed, based on Tesla's search, Zaid's name does not appear as a name on the list of

14  workers who reported to Diaz's manager, were in his department and on the same shift during the time

15  Diaz worked at Tesla.  Jeng Decl. ¶ 5.  Therefore, Zaid is not an individual who meets the criteria for

16  Tesla to provide contact information in response to the Court's Order or Interrogatory Nos. 11 and 12.

17                 e.      Devin Burkhart

18         Like with Zaid, Devin Burkhart's name and the exhibit Plaintiffs submitted were never mentioned

19  by Plaintiffs until this Motion – either during meet-and-confer or in the Joint Discovery Dispute letter.

20  In any case, based on Tesla's search, Burkhart is not on the list of workers who reported to Diaz's

21  manager, in his department and on the same shift during the time Diaz worked at Tesla.  Jeng Decl. ¶ 5.

22  Therefore, Burkhart is not an individual who meets the criteria for Tesla to provide contact information in

23  response to the Court's Order or Interrogatory Nos. 11 and 12.

24                 f.      "Froilan"

25         Plaintiffs assert that "Froilan was another elevator operator who worked with Plaintiff Diaz"

26

27  _____

28  [7] Zaid's name and the exhibit submitted here were never mentioned by Plaintiffs until this Motion –
    either during meet-and-confer *or* the Joint Discovery Dispute letter.  Jeng Decl. ¶ 5.

1   (Mot. 7:24-25), but the submitted exhibit does not support this contention.  It does not state Froilan's full

2   name or even whether Froilan is a first name or a last name.[8]  Nunley Decl., Exh. F.  In any case,

3   "Froilan" does not appear as a name on the list of workers who reported to Diaz's manager, in his

4   department and on the same shift during the time Diaz worked at Tesla.  Jeng Decl. ¶ 5.  Therefore,

5   "Froilan" is not an individual who met the criteria for Tesla to provide contact information in response to

6   the Court's Order or Interrogatory Nos. 11 and 12.

7            g.     Yordano Ramirez

8        Plaintiffs assert that Ramirez (again, who Plaintiffs never raised until this Motion) "was a material

9   handler who worked near Plaintiff Diaz and witnessed his interactions with Rothaj Foster."  (Mot. 7:26-

10   27).  But the cited exhibit does not support this and actually describes him as a "from the Reman Area"

11   which is not an area where either Plaintiffs worked.  Nunley Decl., Exh. F (TESLA-0000126).

12   Significantly, Ramirez does not appear as a name on the list of workers who reported to Diaz's manager,

13   were in his department and on the same shift during the time Diaz worked at Tesla.  Jeng Decl. ¶ 5.

14   Therefore, Yordano Ramiez is not an individual who met the criteria for Tesla to provide contact

15   information in response to the Court's Order or Interrogatory Nos. 11 and 12.

16            h.     Hilda Navarro, Aron Dehardo or Aron Deharto, and Jesse Leite

17        Plaintiffs identify these individuals as all persons who complained about Diaz's work

18   performance and were recycling employees.  (Mot. 8:1-14).  However, Hilda Navarro (never raised until

19   this Motion), Aron Dehardo or Aron Deharto and Jesse Leite do not appear as names on the list of

20   workers who reported to Diaz's manager, were in his department and on the same shift during the time

21   Diaz worked at Tesla.  Jeng Decl. ¶ 5.  Therefore, none of them are not individuals who met the criteria

22   for Tesla to provide contact information in response to the Court's Order or Interrogatory Nos. 11 and 12.

23            i.     Robert "Hurtado"

24        Plaintiffs assert that Hurtado "directed Plaintiff Diaz's work" (Mot. 8:15-16) and that Hurtado

25   "complained about Plaintiff, and Plaintiff's supervisor agreed to reprimand Plaintiff because of Mr.

26

27   [8] Again, "Froilan's" name and the exhibit submitted here were never raised by Plaintiffs until this Motion

28   which again demonstrates Plaintiffs' inappropriate attempts to broaden Interrogatory Nos. 11 and 12 and
     the Court's Order.  Jeng Decl. ¶ 5.

1    Hurtado's complaints." (Mot. 8:20-22). Plaintiffs acknowledge that Hurtado was not his supervisor

2    (again he was not mentioned until this Motion). Plaintiffs' cited email with the complaint about Owen

3    does not contain any last names – just the first name "Robert"; and the "Hurtado" name does not appear

4    in Plaintiff's cited exhibit or deposition testimony. Nunley Decl., Exh. J. Though Plaintiffs chose to

5    omit this testimony, Diaz testified that he had complaints about "Robert -- I don't know his last name."

6    Jeng Decl. ¶ 6, Exh. C (5/22/18 O. Diaz Dep.), 55:7-11. Plaintiffs also omitted Diaz's testimony that he

7    did not know a Robert Hurtado and did not know if that was the same Robert he was talking about. *Id.* at

8    168:14-22. When asked at his most recent deposition in June 2019, Owen testified he still cannot

9    remember Robert's last name. *Id.* at Exh. D (6/21/19 O. Diaz Dep.), 308:2-8. The basis of Plaintiffs'

10   false contention that Hurtado – who may or may not be the same "Robert" Plaintiff testifies about – falls

11   within the scope of the order is a document about training produced in connection with Plaintiffs'

12   30(b)(6) deposition of Tesla's designee. Nunley Decl., Exh. K. Said document does not indicate that

13   Hurtado worked with or around Plaintiffs, and Tesla has confirmed Hurtado is not on the list of workers

14   who reported to Diaz's manager in his department and on the same shift during the time Diaz worked at

15   Tesla. Jeng Decl. ¶ 5. Therefore, Hurtado is not an individual who met the criteria for Tesla to provide

16   contact information in response to the Court's Order or Interrogatory Nos. 11 and 12.

17                          j.      Hugo Villesenor

18          Similar issues are presented by Plaintiffs' assertion that "Mr. Villesenor was a lead in the same

19   position as Mr. Hurtado" and that he "complained about Plaintiff, and Plaintiff's supervisor agreed to

20   reprimand Plaintiff." (Mot. 8:26-28). Nowhere in Plaintiffs' cited exhibit does "Villesenor" appear.

21   Nunley Decl., Exh. J. Although Plaintiffs chose to omit this testimony, Diaz testified that he does not

22   know anyone named "Hugo." Jeng Decl. ¶ 6, Exh. C (5/22/18 O. Diaz Dep.), 172:3-4. But again,

23   Villesenor does not appear as a name on the list of workers who reported to Owen Diaz's manager, who

24   were in his department on the same shift during the time Diaz worked at Tesla. Jeng Decl. ¶ 5.

25   Therefore, Villesenor is not an individual who meets the criteria for Tesla to provide contact information

26   in response to the Court's Order or Interrogatory Nos. 11 and 12.

27                          k.      Troy Dennis

28          Plaintiffs do not even represent that Troy Dennis worked with Diaz, just that "they were involved

1   in some type of 'negative incident' at the Tesla factory."  (Mot. 9:1-2).  Tesla confirmed Dennis does not

2   appear on the list of those who reported to Diaz's manager, in his department on the same shift during the

3   time Diaz worked at Tesla.  Jeng Decl. ¶ 5.  Therefore, Dennis is not an individual who met the criteria

4   for Tesla to provide contact information in response to the Court's Order or Interrogatory Nos. 11 and 12.

5                                           l.       Robert Dominguez

6          The Motion repeats a statement in an email that "Robert Dominguez was 'very familiar' with

7   Plaintiff Demetric Di-az's work."  (Mot. 9:3-4).  The email does not explain his familiarity, whether he

8   worked at Tesla at the same time as Plaintiffs, whether he worked under the same supervisor or was, at

9   least, working in battery on any shift.  Nunley Decl., Exh. M.   Regardless, Dominguez does not appear

10  as a worker who reported to Di-az's manager in his department on the same shift during the time Di-az

11  worked at Tesla.  Jeng Decl. ¶ 5.  Therefore, Dominguez is not an individual who met the criteria for

12  Tesla to provide contact information in response to the Court's Order or Interrogatory Nos. 11 and 12.

13                                          m.       Ramiel Younan

14         Plaintiffs' Motion relies on an August 27, 2015 email listing names and shifts "as they have been

15  assigned."  Nunley Decl., Ex. N (TESLA-0000540).  However, Plaintiffs' exhibits also indicate that Di-

16  az was immediately moved to night shifts at "battery enclosure 2.0" (consistent with Di-Az's testimony)

17  beginning shortly after September 5, 2015.  *Id.* at Exh. M (TESLA-0000185).  Further, Younan similarly

18  did not report to Di-Az's manager or his department on the same shift during the time Di-Az worked at

19  Tesla and would not fall within the criteria for Tesla to provide contact information in response to the

20  Court's Order or Interrogatory Nos. 11 and 12.[9]  Jeng Decl. ¶ 5.

21                  **3.       The Purported "Employee" Rosters**

22         Plaintiffs' Motion asserts that "Tesla has also produced numerous employee rosters."  (Mot. 9:10-

23  11).  *None of these exhibits are employee lists or rosters for Tesla employees*, and certainly not rosters of

24  individuals working with Plaintiffs' supervisors on their shifts/depts.  Some of the cited exhibits *appear*

25  to be emails from staffing companies, such as nextSource, Inc., asking for corrections on shifts or titles of

26  individuals, emails with training times, and emails discussing new temporary workers.  *See, e.g.*, Nunley

27

28  [9] Indeed, Demetric never testified about any issues with Mr. Younan, or that he made any complaints to
    Mr. Younan.  Jeng Decl., Exh. 4, Exh. E (R and Y Index pages).

1   Decl., Exhs. N, S, T.  Other exhibits are emails listing names of individuals (redacted other than

2   plaintiffs) who worked on particular days, without information about supervisors, shifts, or departments

3   (or whether they ever worked around Plaintiffs).  Nunley Decl., Exhs. O.  Exhibit R is a report on a

4   power outage evacuation, Exhibits Q (mostly unredacted) and P (unredacted) list specific persons'

5   schedules in July 2015 and June 2015, respectively.[10]

6         To the extent any lists or rosters being maintained, it was by the workers' actual employer, such

7   as Chartwell, not Tesla.  As detailed above, Tesla's search complied with the Court's Order – including

8   *Plaintiffs'* own interpretation of the Order that Tesla disagreed with, and that information was provided to

9   Plaintiffs.  These exhibits should be disregarded as they only seek to expand the Court's prior order.

10  **III.    ARGUMENT**

11        **A.    <u>Plaintiffs' Motion For Sanctions Is Improper.</u>**

12        If Plaintiffs sought Court intervention with respect to this discovery, the correct procedure was to

13  file a Joint Discovery Dispute letter, which Tesla repeatedly indicated it was willing to do.  Paragraph

14  four of this Court's Standing Order for Civil Cases requires discovery disputes to be resolved by

15  submission of a joint discovery letter brief to the Court, and the Court will then decide if there is a need

16  for a hearing or formal briefing.  This is the very procedure the parties followed that resulted in the Order

17  at issue here.

18        Plaintiffs chose not to do so, reversing their representations in the post-Order correspondence.

19  *See* Nunley Decl., Exh. V (Plaintiffs' emails on 11/13/19, 11/14/19 and 11/22/19.  Indeed, the October 3

20  Order explicitly states that if the discover ordered "suggests further discovery is needed," the "parties

21  shall meet and confer" and "[t]o the extent they cannot resolve their dispute, **they may submit another**

22  **joint letter**."  Plaintiffs' counsel's email asked Tesla "whether you have any interest in filing a joint

23  dispute statement" on November 22, 2019.  Nunley Decl., Exh. V (Nunley 11/22/19 email, 5:01pm).

24  When defense counsel responded that "[o]f course, we intend to file the statement jointly as the rules

25  require," Plaintiffs about-faced and instead said that they would be moving for sanctions instead.

26  Plaintiffs' Motion for Sanctions is an end-round to the proper discovery procedures and should be denied

27

28  ---
    [10] Plaintiffs never requested that any of these documents be produced in an unredacted form, and the first
    suggestion that this might be so was provided in Plaintiffs' Motion – months after the close of discovery.

1   on those grounds alone.

2       Even if a sanctions motion were appropriate, the Local Rules require that any sanctions motion

3   "must be made as soon as practicable after the filing party learns of the circumstances that it alleges make

4   the motion appropriate."  Local Rule 7-8(c).   Although Plaintiffs stated they would file their motion on

5   November 25, 2019, Plaintiffs instead waited and did not do so until almost 2 months later – well after

6   the discovery and discovery motion cutoff.  *See e.g.*, *Cardinal v. Lupo*, No. 18-CV-00272-JCS, 2019 WL

7   4450859, at *9 (N.D. Cal. Sept. 17, 2019) (denying sanctions in part because plaintiffs did not bring the

8   motion "as soon as practicable" and instead months later); *Siebert v. Gene Sec. Network, Inc*, No. 11-cv-

9   01987-JST, 2014 WL 5808755, at *2 (N.D. Cal. Nov. 6, 2014) (denying sanctions because Plaintiff did

10  not file a motion for sanctions "as soon as practicable"); *see also* Civ. L.R. 7-8.

11      **B.**    **Plaintiffs' Motion For Sanctions and Relies Upon Misrepresentations And Should Be**
              **Denied.**

12      The very basis for Plaintiffs seeking an expanded scope of discovery relies upon

13  misrepresentations and should be denied.  The discovery responses at issue only support an Order for

14  contact information about persons working with or around Plaintiffs, which Tesla provided.  Nunley

15  Decl., Exh. 1 (Dkt. No. 146-2, pp. 2-3).  Plaintiffs' pre-Order meet-and-confer correspondence offered to

16  modify the scope of the interrogatories to "only individuals working the areas that Plaintiffs worked,

17  during the time that Plaintiffs were employed at the Tesla factory."  Nunley Decl., Exh. 3 (Dkt. No. 146-

18  2, p. 19).  Yet Plaintiffs' portion of the Joint Discovery letter interjects a wholly unsupported category:

19  "contact information of individuals who worked in the same department as Plaintiff Diaz's harassers,

20  during Plaintiff Diaz's work shifts."  (Mot. 9:28-10:2).  This flagrant misrepresentation of the

21  interrogatories cannot form the basis for sanctions.  Instead, the Motion should be viewed with

22  skepticism given the extent of the misrepresentation, and it would be wholly inequitable to reward

23  Plaintiffs' conduct by granting any portion of the Motion.

24      In addition to the misrepresentations of the actual discovery, Plaintiffs continued to reconstruct

25  and inflate the scope of their requests *after* the Court issued its Order and to conflate and hide those

26  additions in the Motion.  None of these new requests were part of or considered in the underlying

27  discovery dispute and should not be considered with respect to this Motion.  These include: adding

28

1    additional information about Plaintiffs' alleged departments; adding a request for all employees who

2    worked in the recycling department, during Plaintiff Owen Diaz's work shifts; adding a request for all the

3    contact information of individuals produced in discovery; and requesting the contact information for all

4    the individual on Exhibit 34 from Demetric Di-az's deposition.  Nunley Decl., Exh. V (Nunley 11/14/19

5    email, 5:56 a.m.).  And then yet another request for the contact information of individuals who "actually

6    interacted with plaintiffs." *Id.* (Nunley 11/22/19 email, 5:01pm).  None of these requests are supported

7    by Plaintiffs' portion of the Joint Discovery Dispute letter and therefore could not have been

8    contemplated in the Court's Order.  Therefore, none of these requests or expansions of the scope of the

9    Order can be a basis for sanctions.  Plaintiffs' request to impose sanctions based on these post-hoc

10   aspirations would undermine the discovery process and reward Plaintiffs' misrepresentations.

11         **C.    Tesla Complied with the Court's Order – Not Plaintiffs' Post-Hoc Reconstruction of**
                **the Discovery**

12         Tesla complied with the Court's Order – not Plaintiffs' newly added requests or requests based on

13   misrepresentations.  The plain language of the Order required Tesla to produce information about

14   employees in the category who worked with or around Plaintiffs.  (Dkt. No. 93, 2:12-15).  Tesla was not

15   required to "go on a wild goose chase to uncover the names of individuals about whom it is not aware."

16   (Dkt. No. 93, 2:13-15).  Plaintiffs' *own proposed clarification* of the scope in meet-and-confer and in

17   their portion of the Joint Discovery letter identified those individuals as  employees and contractors who

18   had the same supervisor as Plaintiffs' supervisors, worked the same shifts as Plaintiffs, and worked

19   during the same time frame that Plaintiffs worked at Tesla.  Tesla identified the individuals meeting

20   **Plaintiffs' criteria**, requested their contact information (if any was available) and then provided that

21   information to Plaintiffs; Tesla did so in good faith despite its position that Plaintiffs' criteria went

22   beyond the scope of the actual interrogatories.  Tesla met its obligation under the Order, and no further

23   action should be required.

24         **D.    The Court Should Not Grant Plaintiffs' Requested Relief**

25         Plaintiffs provide no factual or legal basis to support their sanctions requests.  Plaintiffs do not

26   cite *any case law* in support of their request for witness preclusion.  (Mot. 14:19-15:3). They do not

27   identify any harm that Plaintiffs have suffered nor do they identify the names of any of the alleged

28

1    witnesses they assert Tesla "improperly attempted to hide from Plaintiffs." (Mot. 14:27-18).  Instead

2    Plaintiffs make a general assertion that "gamesmanship precluded Plaintiffs from conducting formal

3    discovery or informal investigation." (Mot. 14:28-15:1).

4         Plaintiffs' assertions fail to provide the Court with all the pertinent facts.  Plaintiffs somehow

5    excuse themselves from having any role in their alleged inability to conduct discovery.  This is

6    particularly surprising because the last meet-and-confer on this discovery purportedly occurred on June 7,

7    2019 yet Plaintiffs waited *more than 3 months* to seek Court intervention on September 20, 2019 – 21

8    days until the close of discovery on October 11, 2019.  Tesla did not prevent Plaintiffs from seeking

9    Court intervention.  Even if the Court had ruled on the Joint Discovery Dispute letter in one day, it is

10   difficult to understand what discovery Plaintiffs would have undertaken in that limited time period –

11   particularly since no further written discovery could be timely propounded.

12        Furthermore, as detailed above, Tesla complied with the Order and Plaintiffs have failed to

13   identify any harm or injury.  Although some witnesses did not fall within the scope of Interrogatories 11

14   and 12, Plaintiffs had requested their contacted information separately (e.g., Plaintiffs' Motion concedes

15   they received Ramon Martinez's contact information in response to a different interrogatory that asked

16   for it, and for which Plaintiffs never disputed).  Several other individuals were known to Plaintiffs as

17   well.   Plaintiffs never sought to take depositions or to serve discovery requesting information specific to

18   Younan, even though the Court granted Plaintiffs leave to take an additional 14 hours of any deponent of

19   their choice.  Despite Plaintiffs' separate Joint Discovery Letter seeking additional depositions, Plaintiffs

20   did not seek to depose any individuals they were aware of two years ago – they cannot claim they are

21   now prejudiced.  Plaintiffs have not been precluded any opportunity to pursue formal or informal

22   discovery.

23        Witness preclusion sanctions should not be imposed here.  Such harsh sanctions under Rule 37

24   are reserved for conduct where the alleged discovery violations cause undue prejudice to the opposing

25   side. *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000)

26   ("Exclusion sanctions based on alleged discovery violations are generally improper absent undue

27   prejudice to the opposing side." (*citing Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th

28   Cir.1997))).  Plaintiffs have not demonstrated any specific prejudice.  And Plaintiffs also refuse to

1   acknowledge that waiting until the eve of discovery deadline to raise a dispute with the Court, when the

2   meet and confer was completed months ago – not to mention this instant Motion filed nearly three

3   months after the close of discovery and the Court's Order -- was a delay of Plaintiffs' own creation.

4     Likewise, Plaintiffs' request for attorneys' fees is also unwarranted.  Plaintiffs' only assertion

5   supporting this request is that "absent Tesla's discovery abuse, Plaintiffs would not have incurred the fees

6   and costs required to bring and file this motion."  (Mot. 15:15-16).  This again ignores that Tesla had

7   already complied with Interrogatories 11 and 12, as well as the Court's Order.  This also ignores that

8   Plaintiff did not propound requests seeking much of what they seek here, e.g., individuals working

9   around the unnamed alleged harassers.   Further, Plaintiffs' chosen delay in bringing the discovery

10   dispute to the Court's attention only 21 days before discovery closed and their second delay of nearly two

11   months in bringing this Motion.  Plaintiffs' delay should not be rewarded.  As set forth in pertinent case

12   law (not cited by Plaintiffs), Plaintiffs do not satisfy the requirements to obtain attorneys' fees.  *Goethe v.*

13   *California Dep't of Motor Vehicles*, No. CIV S-07-1945MCEGGH, 2009 WL 3568624, at *2 (E.D. Cal.

14   Oct. 27, 2009) (noting that sanctions are not warranted when a party has complied with

15   "production/disclosure" responsibilities as presented."); *David v. Hooker, Ltd.*, 560 F.2d 412, 419 (9th

16   Cir. 1977) ("monetary sanctions are not warranted where…special circumstances render such sanctions

17   unjust.").

18   **IV.**  **CONCLUSION**

19     For the foregoing reasons, Tesla respectfully requests the Court deny Plaintiffs' Motion in its

20   entirety.

21   Dated:  January 27, 2020      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

22

23                By     /s/ Patricia M. Jeng

                 TRACEY A. KENNEDY

24                    PATRICIA M. JENG

                REANNE SWAFFORD-HARRIS

25

26                    Attorneys for Defendant

           TESLA, INC. dba TESLA MOTORS, INC.

27

28