SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
TRACEY A. KENNEDY, Cal. Bar No. 150782
NAMAL TANTULA, Cal. Bar No. 247373
BRETT YOUNG, Cal. Bar No. 305657
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:     213.620.1780
Facsimile:     213.620.1398
Email:         tkennedy@sheppardmullin.com
               ntantula@sheppardmullin.com
               byoung@sheppardmullin.com

PATRICIA M. JENG, Cal. Bar No. 272262
SUSAN HAINES, Cal. Bar No. 224611
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     415.434.9100
Facsimile:     415.434.3947
Email:         pjeng@sheppardmullin.com
               shaines@sheppardmullin.com

Attorneys for Defendants,
TESLA, INC. dba TESLA MOTORS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, AND LAMAR PATTERSON,<br><br>       Plaintiffs,<br><br>   v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>       Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**DEFENDANT TESLA, INC.'S MOTIONS *IN LIMINE***<br><br>Date:      May 11, 2020<br>Time:     10:00 a.m.<br>Courtroom: 2, 17th Floor<br>Judge:   Hon. William H. Orrick<br><br>Trial Date;   June 8, 2020<br>Complaint Filed:  October 16, 2017 |

# TABLE OF CONTENTS

**Page**

I.     NOTICE OF MOTION ...................................................................................................... 1

II.    MOTIONS *IN LIMINE* ................................................................................................... 1

       A.     Motion *in Limine* No. 1 – Exclude Putative "Me Too" Witnesses Represented by
              Plaintiff's Counsel ....................................................................................................... 1

              1.     Dewitt Lambert – Discovery of "Me Too" Evidence Previously Denied ............... 5

              2.     Nathan Fraim – Not at Tesla When Plaintiff Was There ........................................ 6

              3.     Titus McCaleb – Not at Tesla When Plaintiffs Were There .................................. 6

              4.     Nigel Jones – Different Department, Different Job, Different Supervisors ............ 8

              5.     Jakel Williams – Different Department, Different Job, Different
                     Supervisors ............................................................................................................. 9

              6.     Melvin Berry – Different Department, Different Job, Different Supervisors ......... 10

              7.     Demetric Di-az – Former Plaintiff in a Different Department, Different Job,
                     Different Supervisors ............................................................................................. 11

       B.     Motion *In Limine* No. 2 – Exclude Putative "Me Too" Documentary Evidence ............... 11

              1.     Unrelated Complaints Made to West Valley After Plaintiff's Assignment at
                     Tesla Ended ............................................................................................................ 12

              2.     Unrelated Complaint About a Car Name After Plaintiff's Time at Tesla ............. 13

              3.     Unrelated Complaints About Restroom Graffiti After Plaintiff's Time at
                     Tesla ....................................................................................................................... 14

              4.     Unauthenticated Document Never Produced In Discovery .................................. 15

              5.     Email Not Produced in Discovery and Sent After Plaintiff's Time at Tesla ......... 17

              6.     Unrelated Complaint About Person Plaintiff Did Not Know ................................ 18

              7.     Unrelated Complaint From Person in Different Work Area with Different
                     Supervisors Than Plaintiff .................................................................................... 18

       C.     Motion *In Limine* No. 3 – Putative "Me Too" Witnesses to Be Limited to
              Percipient Witness Testimony ...................................................................................... 20

              1.     Former Plaintiff Lamar Patterson .......................................................................... 20

              2.     Tamotsu Kawasaki ................................................................................................. 22

              3.     Michael Wheeler .................................................................................................... 22

              4.     Wayne Jackson – nextSource On-Site Representative ........................................... 23

       D.     Motion *In Limine* No. 4 - Exclude Impermissible Demonstratives and Shock Props ........ 24

III.   CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Boyd v. City of San Francisco*
   576 F.3d 938 (9th Cir. 2009) ........................................................................................... 25

*Brodit v. Cambra*
   350 F.3d 985 (9th Cir. 2003) ............................................................................................. 1

*Cohn v. Papke*
   655 F.3d 191 (9th Cir. 1981) ..................................................................................... 24, 25

*Duran v. City of Maywood*
   221 F.3d 1127 (9th Cir. 2000) ............................................................................... 3, 4, 12

*Hill v. Grade*
   No. 18-cv-01474-HSG (N.D. Cal. Sep. 4, 2019) .................................................. 3, 4, 12

*Luce v. United States*
   469 U.S. 38 (1984).............................................................................................................. 1

*Moorhouse v. Boeing Co.*
   501 F.Supp. 390 (E.D. Pa. 1980) ...................................................................................... 4

*Obrey v. Johnson*
   400 F.3d 691 (9th Cir. 2005) ........................................................................................ 2-4

*Sprint/United Management Co. v. Mendelsohn*
   552 U.S. 379 (2008)............................................................................................................ 2

## FEDERAL RULES

Federal Rules of Civil Procedure
   Rule 26(a)................................................................................................................... 1, 15
   Rule 26(e)................................................................................................................... 1, 15
   Rule 37(c)(1) ............................................................................................................. *passim*

Federal Rules of Evidence
   Rule 401 ...................................................................................................................... *passim*
   Rule 402 ...................................................................................................................... *passim*
   Rule 403 ...................................................................................................................... *passim*
   Rule 602 ...................................................................................................................... *passim*
   Rule 801 ...................................................................................................................... 1, 17
   Rule 802 ...................................................................................................................... 1, 17
   Rule 807 ...................................................................................................................... 1, 17
   Rule 901 ...................................................................................................................... 1, 16
   Rule 901(a)................................................................................................................. 1, 16

1

<u>OTHER AUTHORITIES</u>

2

https://www.nytimes.com/2001/12/01/books/a-black-author-hurls-that-word-as-a-
challenge.html .................................................................................................................... 24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4819-8373-4455.2

**I.     NOTICE OF MOTION**

To all parties and counsel of record, please take notice that on May 11, 2020 at 10:00 a.m., Defendant Tesla Motors, Inc. ("Tesla") will move this Court for an order *in limine* excluding the following: (1)  testimony of putative "me too" witnesses represented by plaintiff's counsel; (2) putative "me too" documentary evidence and testimony regarding same; (3) testimony of putative "me too" witnesses' regarding conduct not directly involving plaintiff; and (4) impermissible demonstratives and shock props.  Tesla's *in limine* motions are based on Federal Rules of Evidence 401, 402, 403, 602, 701, 801, 802, 807 and 901, Federal Rules of Civil Procedure 26 and 37, this notice and motion, the supporting memorandum of points and authorities and declaration (and exhibits thereto), all pleadings and papers on file in this action, and any argument presented at the hearing.

**II.    MOTIONS *IN LIMINE***

A party may use a motion *in limine* to exclude inadmissible or prejudicial evidence before it is introduced at trial.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  A motion *in limine* allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury, which generally cannot be subsequently remedied.  *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

**A.     Motion *in Limine* No. 1 – Exclude Putative "Me Too" Witnesses Represented by Plaintiff's Counsel**

Tesla seeks to exclude the following "me too" witnesses from testifying at trial: DeWitt Lambert, Nathan Fraim, Titus McCaleb, Nigel Jones, Jackel William, and Melvin Berry, on the grounds that their testimony is not relevant because they are non-parties represented by Plaintiff Owen's Diaz's[1] counsel in other cases and their purported information about Defendant is not sufficiently similar to Plaintiff's allegations to permit the testimony.  None of these "me-too" have any information about Owen Diaz and his working environments, or *any* of the alleged harassers in this case.  The "me too" witnesses' information about their respective working environments does not have any probative value to Plaintiff and such information, if it has even a slight probative value, would be outweighed by the undue delay

---

[1] Demetric Di-az has been dismissed, and this is single plaintiff case now.

and waste of time caused by the need to hold a trial within a trial on each "me too" witness' claim, which would unfairly prejudice Defendant and confuse or mislead the jury.  The evidence must be excluded because: 1) the witnesses' testimony are not relevant to Plaintiff's claims that Tesla violated the law with respect to Owen; 2) the probative value of such evidence is substantially outweighed by its prejudicial effect; and 3) introduction of "me too" evidence would confuse the issues for the jury and consume undue court resources, and require Tesla to have several trials within a trial.

Based on Plaintiff's exchange of Motions in Limine, Plaintiff seeks to introduce an array of "me too" witnesses while simultaneously attempting exclude "me too" witnesses from testifying about whether any alleged "n-word" they heard was offensive to them.  Plaintiff concedes in their exchange[2] that "there is no proof these witnesses heard the n-word in the same context or on the same occasions as Plaintiffs," which "invites the jury to conflate the [me too witnesses'] unrelated experiences to Plaintiffs' experiences.  The risk of misleading and confusing the trier of fact is so high that the evidence must be excluded."   Plaintiff's purported reasons for excluding "me too" witnesses from testifying about the offensiveness of the n-word are reasons they should be excluded altogether.

Only relevant evidence is admissible. Fed. R. Evid. 401, 402.  Relevant evidence is defined as evidence that "has any tendency to make an act more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Otherwise relevant, admissible evidence may still be excluded "if its probative value is substantially outweighed by the danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Whether evidence of  harassment by other supervisors is relevant and admissible in an individual case is ''fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."  *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).  But anecdotal evidence about past discrimination may not be admissible in the "typical case of individual discrimination," versus a case involving claims alleging a pattern or practice of discrimination.  *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005).  The district court retains broad

---

[2] The quoted material is from Plaintiff's initial exchange of Motions *In Limine* as required by the Amended Pretrial Order.

1   discretion to determine whether the probative value of any such evidence would be substantially

2   outweighed by considerations of "undue delay, waste of time, or needless presentation of cumulative

3   evidence." *Id.* (citations omitted).  Plaintiff has not alleged claims relating to a pattern or practice of

4   alleged discrimination.

5   As a practical matter, courts evaluate the *Obrey* criteria by determining whether a plaintiff has

6   made a sufficient showing that the witnesses were similarly situated to plaintiff such that the proffered

7   evidence is relevant.  *See, e.g., Hill v. Grade*, No. 18-cv-01474-HSG, at *3-4 (N.D. Cal. Sep. 4, 2019)

8   (citing *Obrey*, 400 F.3d at 698).  In *Grade*, there were 3 proposed "me too" witnesses but each involved

9   different discrimination allegations, that the trial court found they warranted exclusion.  For example,

10   none of the three witnesses had the same supervisors as plaintiff, none had the same job duties as plaintiff

11   and none were subject to the same conduct as that alleged by plaintiff.  *Id.*  In excluding the three "me

12   too" witnesses, the Court found that plaintiff "failed to show how the proffered testimony regarding these

13   complaints, made by employees in entirely different circumstances, has any probative value on the

14   question of whether Defendant had a discriminatory attitude towards Plaintiff's protected classes."  *Id.*

15   Even if the "me too" evidence meets some criteria under *Obrey* or *Grade*, the probative value of

16   the evidence may be substantially outweighed by the factors enumerated in Rule 403.  Of particular

17   concern, when a party seeks to bring in evidence of other act or alleged misconduct, is the danger of

18   unfair prejudice.  *See, e.g.*, *Duran v. City of Maywood*, 221 F.3d 1127, 1133 (9th Cir. 2000).  In addition,

19   Rule 403's admonition to avoid confusing the issues, misleading the jury, undue delay, and wasting time

20   must be considered.  In *Duran*, the trial court's decision to exclude evidence of a similar shooting was

21   upheld on appeal.  The trial court recognized that to admit evidence about the other shooting, the court

22   would need to hold a "fullblown trial within this trial."  *Id.* at 1133.  Likewise, in *Grade*, the court found

23   "the complaints are only relevant if the complained-of discrimination actually occurred."  *Hill v. Grade*,

24   No. 18-cv-01474-HSG, at *3-4 (N.D. Cal. Sep. 4, 2019) .  Because none of these findings had been made

25   as to the non-party "me too" witnesses would require "time-consuming mini trials to adjudicate the truth

26   or falsity of the complaints made by each of the three witnesses."  *Id.*  The mini trial would result in any

27   probative value of the "me too" evidence being "substantially and decisively outweighed by the danger

28   that the evidence will confuse the issues, mislead the jury, unfairly prejudice Defendant, and waste time."

1   *Id.* (citing Fed. R. Evid. 403); *see also Moorhouse v. Boeing Co.*, 501 F.Supp. 390 (E.D. Pa. 1980)

2   (excluding "me too" witnesses' testimony about their own experiences because the defendants "would

3   have been placed in the position of either representing the justification for each witnesses' layoff, or of

4   allowing the testimony to stand unrebutted…[and] forced, in effect to try all six cases together with the

5   attendant confusion and prejudice inherent in that situation").

6          Here, Plaintiff's purported "me too" evidence consists of Plaintiff's counsel's other clients (Dewitt

7   Lambert, Nathan Fraim, Titus McCaleb, Nigel Jones, Jackel William, and Melvin Berry) who retained

8   Plaintiff's counsel in their respective, separate cases and who seek to bolster this case with their

9   anecdotal testimony about their individual work experiences at the Tesla Fremont facility.  None of this

10  testimony is relevant because these "me too" witnesses all have one or more of the following

11  deficiencies:  (1) they did not work at Tesla during the time Owen worked there; (2) they did not raise

12  any complaints about their work environment at Tesla during the time Owen worked there; (3) they did

13  not work with Owen; (4) they did not work in the same department as Owen; (5) they did not share the

14  same supervisors as Owen; and (6) none of the "me too" witnesses' alleged harassers were the same as

15  those claimed by Owen.  In other words, they are not "me-too" witnesses at all --just other plaintiffs in

16  other cases.  Thus, there is no relevant connection between the work environment of the putative "me

17  too" witnesses and that of Owen, rendering the evidence irrelevant, as well as unduly prejudicial and

18  likely to mislead or confuse the jury.  Each of these witness' testimony should thus be excluded.  *See*

19  *Obrey*, 400 F.3d at 698; *Hill v. Grade*, No. 18-cv-01474-HSG, at *3-4 (N.D. Cal. Sep. 4, 2019); Fed. R.

20  Evid. 401-403.

21         Furthermore, each of these purported "me too" witnesses are non-parties.  Their purported claims

22  of harassment or discrimination have been determined to have no merit  or are currently pending and

23  have not been determined (as explained below).  Because Tesla would be forced to rebut, refute, or

24  address each of the "me too" witnesses' testimony about their alleged work environment, each would

25  require its own mini trial to determine if there was any merit to the claim, which would cause undue

26  delay and wasting time as well as unfairly prejudicing Defendant and purposely confusing and

27  misleading the jury.  *Duran*, 221 F.3d at 1133; *Hill v. Grade*, No. 18-cv-01474-HSG, at *3-4 (N.D. Cal.

28  Sep. 4, 2019); Fed. R. Evid. 403.  All such putative "me too" witnesses' testimony should be excluded.

### 1.    Dewitt Lambert – Discovery of "Me Too" Evidence Previously Denied

Plaintiff's initial attempts in this regard as to Dewitt Lambert, whom Plaintiff's counsel represents, have already been rejected by this Court (Dkt. No. 93) in the much more liberal context of discovery.  Specifically, the Court denied Plaintiff's request (Dkt. No. 88) for documents relating to any investigation conducted into complaints made by Dewitt Lambert[3] and other individuals, stating that "the identified individuals' experiences lack any connection with them [Owen and Demetric] in terms of time, proximity, department or alleged harasser  Without such connection, plaintiffs are not entitled to this information." Dkt. No. 93, 2:24-26.  Therefore, in the narrower context of trial testimony, no testimony should be permitted.

Plaintiff's Witness List[4] states Dewitt Lambert will testify he "was subjected to the N-Word and complained to HR." Lambert worked at the Tesla facility from June 25, 2015 to July 2, 2018 and he was employed by Chartwell staffing agency.  Tellingly, Lambert omits that the n-word he was allegedly subjected to were not by any of Plaintiff's alleged harassers.  This testimony should be precluded because as a production associate in the Chassis department, Dewitt Lambert worked in a different department and had different supervisors than Owen Diaz.  Nor was he identified as an alleged harasser by Owen Diaz.  As noted above, none of Dewitt Lambert's alleged harassers were those alleged by Owen Diaz.  In addition, based on the Witness List, his testimony will also encompass any of his alleged complaints he made to Human Resources, of which there is no evidence that Plaintiff was involved in or otherwise aware.  Moreover, based on publicly filed documents, Dewitt Lambert's claims of racial harassment were unsuccessfully arbitrated, with an arbitrator finding that he was not subject to racial harassment at Tesla.  Testimony about Dewitt Lambert's alleged experience with different supervisors, in a different department with different alleged harassers has no bearing on the alleged work environment of Owen Diaz.  Fed. R. Evid. 401, 402.  Likewise, any complaints he may have made to Human Resources and the outcome of those complaints is not relevant to Owen Diaz's working environment.  *Id.*

---

[3] This individual was identified in Plaintiff Owen Diaz's Requests for Production, Set 3, No. 61.

[4] Due to the concurrent filing of pretrial documents, there is no Docket Number associated with Plaintiff's Witness list, but all quotations are based on the last Witness List received by Plaintiff's Counsel during the meet and confer process prior to filing these motions.

Under the criteria in *Obrey* and *Grade*, all "me too" testimony from Dewitt Lambert should be excluded. The "me too" testimony should also be excluded under Rule 403 because many mini trials would be required to assess the validity of (1) each of his own complaints (the number is unknown); (2) each time he overheard his leads use the N-word (the number is unknown); (3) each time he overheard his supervisors use the N-word (the number is unknown); and (4) whether he made a complaint to Human Resources for each of the instances identified in (1) through (3); and (5) how it was handled by Human Resources.

### 2.      Nathan Fraim – Not at Tesla When Plaintiff Was There

Nathan Fraim is represented by Plaintiff's counsel and according to Plaintiff's Witness List, he will testify about "racially harassing and discriminatory work environment" as well as "racist graffiti." Since he began work on January 30, 2017, well after Owen Diaz was no longer at Tesla, he has no personal knowledge of Owen's work environment nor could he have personal knowledge about any alleged graffiti in Owen's work environment. Fed. R. Evid. 602. This is further established because Nathan Fraim had a different job (Material Handler), he worked in a different department and had different supervisors than Owen Diaz. Because he was in a different work area, it is unlikely that any alleged graffiti he saw would have been in the same locations where Owen Diaz now claims he saw graffiti. Again, Nathan Fraim does not allege that he was subjected to harassment by any of the alleged harassers claimed by Owen Diaz. Finally, he was not identified as an alleged harasser of Owen Diaz.

Under the criteria in *Obrey* and *Grade*, all "me too" testimony from Nathan Fraim should be excluded. The "me too" testimony should also be excluded under Rule 403 because at least two mini trials would be required to assess the validity of any such claims about the work environment and his purported viewing of graffiti.

### 3.      Titus McCaleb – Not at Tesla When Plaintiffs Were There

Titus McCaleb is also represented by Plaintiff's counsel and  has no personal knowledge about Owen Diaz. He testified, " I don't know who Owen Diaz is." Haines Decl., Exh. 1 (6/18/19 T. McCaleb Dep.), 21:2-6; Fed. R. Evid. 602. Titus McCaleb began work with West Valley (different staffing agency than Owen Diaz) on October 19, 2016 –seven months *after* Owen Diaz's last day at Tesla on March 18, 2016. *Id.* at 179:4-20 & Exhibit 3. Plaintiff's Witness List states that Titus McCaleb will testify "he

1   witnessed and was called racial epithets, including the N-word" and that he "complained to Brandie To

2   who worked in HR."  Plaintiff has also included Brandie To on his witness list, though she was not

3   timely listed in Plaintiff's Initial Disclosures (and Plaintiff did not seek leave from the Court to extend

4   that deadline), and states that she will testify "regarding Tesla's response to Mr. McCaleb's complaints

5   about the N-word in April and May 2017."  Here, it appears that Plaintiff is seeking to have the "me-too"

6   witness McCaleb and To as an alleged witness for this third party "me-too" witness who did not work at

7   Tesla when Plaintiff worked.

8       In addition to his testimony and Brandie To's testimony, Plaintiff's Exhibit List also identifies

9   emails between Titus McCaleb and Brandie To (Exhibit 22, Exhibit 71 and Exhibit 105),[5] as well as a

10  June 27, 2017 EEOC charge Titus McCaleb filed *after* working at Tesla (Exhibit 70) and West Valley's

11  Confidential Position Statement to the EEOC in response (Exhibit 72).[6]  All these documents and

12  testimony about any of these documents should also be excluded.

13      In addition to working at Tesla long after Plaintiff was there, Titus McCaleb did not work in the

14  same department or have the same supervisors as Owen Diaz.  *Id.* at 34:23-35:21, 208:19-24.  He worked

15  as a production associate, a media specialist, and a quality inspector in Powertrain.  Haines Decl., Exh. 1

16  (6/18/19 T. McCaleb Dep.), 34:23-35:2, 47:25-48:5.  Finally, none of the individuals identified in Titus

17  McCaleb's emailed complaints or in his EEOC complaint are those of Owen Diaz's alleged harassers.

18  *Id.* at 210:10-20, 211:21-212:20.  He was also not identified as an alleged harasser of Owen Diaz.

19      Under the criteria in *Obrey* and *Grade*, all "me too" testimony from Titus McCaleb and any

20  testimony about documents regarding Titus McCaleb should be excluded.  That includes testimony from

21  Brandie To, about these complaints, the documents or Human Resources response to any of the

22  complaints.  The documents relating to Titus McCaleb (Plaintiffs' Exhibits 22, 70, 71, 72 and 105)

23  should also be excluded.  The "me too" testimony and documents should also be excluded under Rule

24  403 because at least three, if not four mini trials would be required to assess the validity of each of the

25  two claims purportedly reported to Human Resources, the post-job EEOC charge and the response to the

26

27  [5] All produced emails involving this complaint (TESLA-0000919 – TESLA-0001002) should be
    excluded for the same reasons.

28  [6] All documents relating to Titus McCaleb's EEOC charge (WV000393 –WV000537) should also be
    excluded.

1  charge.  The undue delay and waste of time is amply demonstrated by the fact that Plaintiff identified at

2  least two witnesses and at least five separate, lengthy exhibits in connection with these issues alone.

### 4.   Nigel Jones – Different Department, Different Job, Different Supervisors

4  Also represented by Plaintiff's counsel is Nigel Jones, who began work as a contractor with the

5  job title of Fleet Coordinator on February 23, 2016, overlapping Owen Diaz's time by just barely over

6  one week.  Plaintiff's Witness List states that Nigel Jones will be testifying about multiple topics:  (1)

7  "knowledge of the racially harassing and discriminatory environment in Tesla's Fremont factory;" (2)

8  "racist comments like the N-word directed . . . at him;" (3) "racist comments directed at African

9  American workers;" (4) "how his multiple complaints to HR in 2017 were not investigated or addressed;"

10  and (5) "his transition from contractor to regular Tesla employee."

11  Nigel Jones had a different job and worked in a different department with different supervisors

12  than Owen Diaz.  He was not identified as an alleged harasser of Owen Diaz.  No information has been

13  provided about his alleged claims about the N-word nor is there any information about comments he

14  allegedly heard that were directed at other African Americans.  His alleged complaints were made to

15  Human Resources in 2017, long after Owen Diaz was at Tesla.  Therefore, he could have no personal

16  knowledge about Owen Diaz's work environment.  Fed. R. Evid. 602.  Owen Diaz testified that he did

17  not recognize Nigel Jones' name at all.  Haines Decl., Exh. 2 (12/3/18 O. Diaz Dep. ), 196:23-197:6.

18  Testimony about what Nigel Jones may have overheard being said to other unidentified African

19  American workers, more than a year after Plaintiff was at Tesla, while Jones was doing a different job, in

20  a different department with different supervisors than Owen Diaz has no bearing on the alleged work

21  environment of Owen Diaz.  Fed. R. Evid. 401, 402.  Nor does any complaint Nigel Jones might make

22  about himself from unspecified people when he was doing a different job, in a different department, with

23  different supervisors than Owen Diaz.  *Id.*  Likewise, any complaints he may have made to Human

24  Resources in 2017 (when Owen Diaz was no longer there) and the outcome of those complaints is not

25  relevant to Owen Diaz's working environment.  *Id.*

26  As for Jones' proposed testimony about changing from a contractor to a regular employee, it has

27  no conceivable relevance to any of Owen Diaz's claims and must be excluded.  Fed. R. Evid. 401, 402.

28  Furthermore, even if this general topic had any relevance (it does not), Nigel Jones' testimony could not

-8-

1  be relevant because  he began work at Tesla in 2017 and  presumably was made an employee sometime

2  after that, which was long after Owen Diaz worked at Tesla.

3  Under the criteria in *Obrey* and *Grade*, all "me too" testimony from Nigel Jones should be

4  excluded.  The "me too" testimony should also be excluded under Rule 403 because a minimum of four

5  mini trials would be required to assess the validity of (1)  his alleged "multiple" complaints to Human

6  Resources (the actual number is unknown); (2) comments he is aware of that were directed to other

7  African American workers (the number is unknown); (3) whether he made a complaint to Human

8  Resources about all or any of the preceding incidents; (4) how Human Resources handled each of those

9  complaints; (5) and his transition from contractor to regular employee.

10  **5.      Jakel Williams – Different Department, Different Job, Different Supervisors**

11  Another client of Plaintiff's counsel, Jakel Williams, is going to testify to the "racially harassing

12  and discriminatory working environment in Tesla's Fremont factory in 2018," according to Plaintiff's

13  Witness List.  Jakel Williams was a security guard working in 2018 (two years after Owen Diaz stopped

14  working at Tesla).  She did not have the same job, work in the same department or have the same

15  supervisors as Owen Diaz.  Nor was she identified as an alleged harasser of Owen Diaz, and as with the

16  other "me too" witnesses, does not purport to have alleged harassment by the same harassers as Owen

17  Diaz  Plaintiff's Witness List also states that she will testify to "Wayne Jackson's handling of complaints

18  of racial harassment and discrimination."

19  Testimony about what Jakel Williams may have personally experienced as a security guard, long

20  after Owen Diaz was at Tesla, in a different department and with different supervisors has no bearing on

21  the alleged work environment of Owen Diaz.  Fed. R. Evid. 401, 402.  Nor does her purported testimony

22  about how Wayne Jackson (a nextSource on-site representative) may have handled unspecified

23  complaints from unspecified workers *in 2018* have any possible relevance to Plaintiff's work

24  environment from June 2015 to March 2016.  *Id.*

25  Under the criteria in *Obrey* and *Grade*, all "me too" testimony from Jackel Williams should be

26  excluded.  The "me too" testimony should also be excluded under Rule 403 because at least three mini

27  trials would be required to assess the validity of her claims about (1) the work environment in 2018; (2)

28  Wayne Jackson's handling of complaints in 2018; and (3) the merits of any such complaints handled by

1   Wayne Jackson in 2018.

2         **6.**      **Melvin Berry – Different Department, Different Job, Different Supervisors**

3        Melvin Berry was only identified as being represented by Plaintiff's counsel *after* the close of

4   discovery.  During the pendency of the case, however, the provided contact information for Melvin Berry

5   was "unknown."  He should be excluded on that basis alone.  Fed. R. Civ. P. 37(c)(1).  Plaintiff's

6   Witness List states he will testify that "he heard leads and supervisors use the N-word frequently" and

7   that leads and supervisors "used [sic] to word to him" and also that he "complained to HR and nothing

8   was done."  Melvin Berry worked as a Material Handler in the production area of the Fremont facility

9   from June 18, 2015 to October 21, 2016.  He did not work in the same department or have the same

10  supervisors as Owen Diaz.  Nor was he identified as an alleged harasser of Owen Diaz or a witness to any

11  such alleged harassment.  He also does not allege harassment by any of Owen's alleged harassers.

12  Testimony about what Melvin Berry may have overheard his leads or supervisors (who were not those of

13  Owen Diaz) say in a different department has no bearing on the alleged work environment of Owen Diaz.

14  Fed. R. Evid. 401, 402.  Nor does any complaint Melvin Berry might make about himself from

15  unspecified people when he was doing a different job than Owen Diaz, in a different department, with

16  different supervisors than Owen Diaz.  *Id.*  As Plaintiff noted in their motions *in limine* that were

17  exchanged during the parties' meet and confer, "witnesses' experiences of hearing the n-word in

18  locations temporally and spatially removed from Plaintiffs is not relevant to evaluating the hostility of

19  Plaintiffs' working environment."  Likewise, any complaints Melvin Berry may have made to Human

20  Resources and the outcome of those complaints is not relevant to Owen Diaz's working environment.  *Id.*

21       Under the criteria in *Obrey* and *Grade*, all "me too" testimony from Melvin Berry should be

22  excluded.  The "me too" testimony should also be excluded under Rule 403 because multiple mini trials

23  would be required to assess the validity of his claims that (1) leads in his department used the n-word (the

24  number of times is unknown); (2) supervisors in his department used the n-word (the number of times is

25  unknown); (3) the n-word was direct at him (the number of times is unknown); (4) whether he

26  complained to Human Resources for each of the instances (1) and (2) and how it was handled by Human

27  Resources .

28

      DEFENDANT TESLA, INC.'S MOTIONS *IN LIMINE*

1

2

**7.    Demetric Di-az – Former Plaintiff in a Different Department, Different Job, Different Supervisors**

3

Demetric Di-az is a former plaintiff, who was dismissed by stipulation[7], during the pretrial

4

conference statement and pretrial filings process.  Despite the dismissal, Plaintiff's Witness List indicates

5

that Plaintiff intends to call Demetric Di-az to testify "about the hostile work environment at the Tesla

6

Factory."  No such testimony should be permitted.  Demetric Di-az was a West Valley employee who

7

worked a scant two months at Tesla in 2015, in the Battery department, which is part of the production

8

area.  This was a different department, a different work area and with different supervisors than Owen

9

Diaz.  During his brief time at Tesla, Demetric did not make any written complaints about any alleged

10

race-based harassment or discrimination.  His employer, West Valley, does not have any record of

11

Demetric Di-az complaining about race harassment, discrimination, or threats during his time at Tesla.

12

Haines Decl., Exh. 3 (4/24/19 T. Kossayian Dep.), 76:14-17.  Neither does Tesla.  Id. at Exh. 4 (5/29/19

13

A. Heisen Dep.), 146:10-12.  Instead, the only information about Demetric Di-az's complaints is from his

14

own testimony in this litigation.  Three years after his scant time at Tesla, Demetric Di-az testified at

15

deposition that he made verbal complaints.  None of Demetric Di-az's alleged harassers were those of

16

Owen Diaz.  Nor was Demetric Di-az a witness to any alleged harassment of Owen Diaz.  Thus,

17

Demetric Di-az's testimony would not be relevant to Owen Diaz's work environment.  Fed. R. Evid. 401,

18

402.

19

Under the criteria in *Obrey* and *Grade*, all "me too" testimony from Demetric Di-az should be

20

excluded.  The "me too" testimony should also be excluded under Rule 403 because mini trials on every

21

claims that Demetric Di-az just dismissed would be required to assess the validity of his litigation-based

22

claims that he suffered any alleged harassment and the result of his alleged reporting of harassment.

23

**B.    Motion *In Limine* No. 2 – Exclude Putative "Me Too" Documentary Evidence**

24

By this motion, Tesla seeks to exclude any documentary evidence from any "me-too" witness or

25

about any "me too" witness.  To the extent Plaintiff seek to elicit testimony from witnesses about other

26

"me too" witnesses or complaints reflected in emails, the criteria in *Obrey* and *Grade* should preclude all

27

---

28

[7] Demetric voluntarily dismissed his case in 2020 presumably because of his 2020 plea agreement related to his 2018 armed robbery of a Domino's pizza restaurant. Trial Exh. 378.__

1    such testimony.  To the extent Plaintiff seeks to introduce documents (or testimony about the documents)

2    that contain reports or pictures of alleged offensive writings, these are even more remote as to relevance

3    and similarity to Plaintiff's allegations.  None of the purported "me too" witnesses or documents

4    containing other complaints, including complaints about writings, involve parties.  These purported

5    claims of harassment or discrimination have not been determined, and would be unfairly prejudicial to

6    Defendant.  Each would necessitate holding a its own mini trial to determine if the complaint or claim

7    had any merit, which would cause undue delay and wasting time as well as unfairly prejudicing

8    Defendant and confusing and misleading the jury.  *Duran*, 221 F.3d at 1133; *Hill v. Grade*, No. 18-cv-

9    01474-HSG, at *3-4 (N.D. Cal. Sep. 4, 2019); Fed. R. Evid. 403.  All such putative "me too" evidence

10   should be excluded, whether through precluding any witnesses' testimony and excluding the underlying

11   documents.

12           **1.    Unrelated Complaints Made to West Valley After Plaintiff's Assignment at
                    Tesla Ended**

13

14           By this motion, Tesla seeks to exclude all alleged complaints made to West Valley about

15   workplace conduct after Owen Diaz's assignment ended, and in particular should be precluded from

16   putting into evidence Plaintiff's Exhibits 70 and 113[8] which contain purported "me too" evidence or

17   eliciting testimony about the information in these documents, which contain complaints made about a

18   West Valley Staffing Group employee who was told to go back to the jungle, ninga.  The conduct

19   complained of occurred on April 15, 2017, almost one year after Owen Diaz worked at Tesla.  The West

20   Valley employees involved worked in the UBM area, were not in the same department and did not have

21   the same supervisors as Owen Diaz.  Moreover, the alleged harasser in this particular case did not work at

22   Tesla until March 2017 and could not be (and was not) a person either plaintiff alleged was a harasser

23   because Owen Diaz left in March 2016.  Tesla would be forced to defend the allegations contained in

24   such documentary evidence, including defending whether the alleged (unrelated) harasser harassed the

25

26

27

28   [8] The full set of these documents was produced by West Valley, Bate stamped WV000160-WV000179
     (redacted) and WV000355-WV000392 (unredacted).  West Valley marked both sets as "Confidential"
     pursuant to the Stipulated Protective Order.

1  (unrelated) complainants, and addressing the (unrelated) investigation into any of the allegations in the

2  documents.

3      Under the criteria in *Obrey* and *Grade*, none of these documents containing "me too" assertions

4  should be admitted and witnesses should be precluded from testifying about them.  The "me too"

5  evidence should also be excluded under Rule 403 because a mini trial would be required to assess the

6  validity of any such claims.

7           **2.      Unrelated Complaint About a Car Name After Plaintiff's Time at Tesla**

8      By this motion, Tesla seeks to preclude Plaintiff from introducing Plaintiff's Exhibit 107 relating

9  to the complaint and investigation of a "car name" that appears on the dashboard being changed or

10  eliciting any testimony regarding these documents.  This incident occurred on April 29, 2016, when

11  Plaintiff was not working at Tesla.  Furthermore, it happened in General Assembly, where Owen Diaz

12  did not work.  There is no evidence and no one can or will testify that Plaintiff was aware of this or knew

13  about this during his assignment and there is no evidence that anyone involved in any aspect of Plaintiff's

14  employment may have been responsible for this. In fact, no one can testify as to who the alleged persons

15  responsible were, based on Exhibit 107, and no one has authenticated the document.

16      The testimony of Josh Hedges and Alfonso Franco should be excluded for the same reasons.

17  Plaintiff's Witness list identifies Josh Hedges' testimony as relating to Exhibit 107, which must be

18  excluded, and to the extent Plaintiff also seeks to elicit testimony about the "widespread use of the N-

19  word" that testimony must also be excluded.  Josh Hedges was not timely identified in Plaintiff's Initial

20  Disclosures, and Plaintiff is excluded from calling him as a witness. Fed. R. Civ. P. 37(c)(1).  To the

21  extent Plaintiff may assert that he amended his Initial Disclosures to include Josh Hedges after receiving

22  Exhibit 107, that amendment was made and served *after* the close of discovery and is untimely.  Plaintiff

23  did not seek relief from the Court for this deadline, despite the Court's discovery order inviting Plaintiff

24  to seek further discovery after the cutoff if needed.  Plaintiff had no hesitation in so doing in relation to

25  other documents produced at the same time as Exhibit 107.  For example, Plaintiff sought leave from this

26  Court (Dkt. No. 105) to take an additional deposition related to an individual named in an email in

27  Exhibit 107 one week after discovery closed.  Therefore, witnesses *not* identified by Plaintiff in his Initial

28  Disclosures prior to the close of discovery should be excluded.  Josh Hedges' purported "me too"

1    testimony in addition to the car name complaint must also be excluded on the grounds of relevance and

2    undue delay.  Fed. R. Evid. 401-403.

3         Similarly, although the name Alfonso Franco was listed in Plaintiff's Initial Disclosures, the

4    contact information was "Unknown" and the same, highly generalized description was used in both the

5    Initial Disclosures and Plaintiff's Witness list:  that he had knowledge of the "racially harassing and

6    discriminatory working environment in Tesla's Fremont factory, as well as Tesla's failure to investigate

7    and prevent harassment."  Furthermore, to the extent the witness' name appears in Exhibit 107, any "me

8    too" testimony from the witness about the exhibit or his purported work experience should also be

9    excluded.

10         Likewise, Plaintiff's designated expert Amy Oppenheimer should also be prohibited from

11    referencing or relying upon these documents at trial.  The documents appear on her list of materials

12    reviewed,[9] and she testified at deposition that she relied upon these documents for her opinions.  Haines

13    Decl., Exh. 5 (3/9/20 A. Oppenheimer Dep.), 93:4-6, 110:2-13.  She also conceded that this occurred

14    after Owen Diaz left Tesla and that she had no information that it took place in connection with Owen

15    Diaz's workplace.  *Id.* at 94:24-95:9.

16         Under the criteria in *Obrey* and *Grade*, Exhibit 107 containing "me too" assertions should not be

17    admitted and witnesses, including Josh Hedges and Alfonso Franco, should be precluded from testifying

18    about them.  The "me too" evidence should also be excluded under Rule 403 because a mini trial would

19    be required to assess the validity of any such claims, as well as the involvement of Alfonso Franco and

20    Josh Hedges and the alleged "me too" evidence from Josh Hedges unrelated to Exhibit 107.

         **3.   Unrelated Complaints About Restroom Graffiti After Plaintiff's Time at
                Tesla**

23         By this motion, Tesla seeks to preclude Plaintiff from introducing Plaintiff's Exhibit 109 relating

24    to the clean-up of restroom graffiti or eliciting testimony from Andres Donet or Liza Lipson about these

25    documents.  In addition to testifying about Plaintiff's Exhibit 109, Liza Lipson is also identified as

---

[9] Ms. Oppenheimer relied on a larger set of produced documents (TESLA-0000907-TESLA-0000918), which also should be excluded because not all of them were contained in Exhibit 107 (TESLA-0000916-TESLA-0000918),

1   testifying about "HR practices in response to racial epithets."  Neither Andres Donet nor Liza Lipson

2   were timely disclosed on Plaintiff's Initial Disclosures, and Plaintiff did not seek leave of this Court to

3   extend those deadlines and supplement his Initial Disclosures.  The witnesses should be excluded on that

4   basis alone.  Fed. R. Civ. P. 37(c)(1).  Furthermore, none of this testimony is relevant and should be

5   precluded because the graffiti that described and was removed in Exhibit 109 was in the restroom *after*

6   Owen Diaz's assignment ended.  Therefore, Plaintiff never saw this graffiti, nor can the documents

7   related to the graffiti be authenticated by any of the witnesses, and as such this "graffiti" was not part of

8   his workplace or his work environment The graffiti occurred on May 21, 2016, when Owen Diaz was no

9   longer working at Tesla (his last day was in March 2016).  Thus, this particular graffiti is not relevant to

10  Owen Diaz's work environment and should be excluded.  Fed. R. Evid. 401, 402.

11         The same reasons also preclude Plaintiff's Human Resources expert, Ms. Oppenheimer from

12  referring to or relying upon Exhibit 109 at trial.  This document was reviewed and relied upon by Ms.

13  Oppenheimer and appears on her list of materials reviewed.  She  testified at her deposition she relied

14  upon this document for her opinions, even though "it doesn't have a direct impact on them [the

15  Plaintiff]."  Haines Decl., Exh. 5 (3/9/20 A. Oppenheimer Dep.), 91:9-92:5, 110:2-13.  Ms.

16  Oppenheimer's testimony as to Exhibit 109 should be precluded as well.

17         Under the criteria in *Obrey* and *Grade*, Exhibit 109 containing "me too" assertions should not be

18  admitted and all witnesses, including Andres Donet, Liza Lipson, and Ms. Oppenheimer, should be

19  precluded from testifying about Exhibit 109.  The "me too" evidence should also be excluded under Rule

20  403 because mini trials would be required to assess the validity of the claim about the graffiti, its clean-

21  up and general Human Resources' practices relating to racial epithets.

                    ### 4.      Unauthenticated Document Never Produced In Discovery

23         By this motion, Tesla seeks to exclude Plaintiff's Exhibit 110, which Plaintiff's counsel used at

24  Andres Donet's deposition, over objection, because it was not produced during discovery, it is of

25  unknown provenance, and it is unauthenticated.  *Id.* at Exh. 6 (10/24/19 A. Donet Dep.), 34:25-36:5.  If a

26  party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

27  allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,

28  unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The document is

1   also unauthenticated and thus inadmissible.  Fed. R. Evid. 901(a).  Plaintiff should also be precluded

2   from offering the testimony of Nathan Fraim to purportedly authenticate Exhibit 110.  Nathan Fraim was

3   only identified for this purpose on Plaintiff's Witness List.

4           Exhibit 110 appears to be a photograph of a poster with writing on it, and Tesla's counsel

5   objected to its use at deposition because it had not  been produced and discovery was closed.  Plaintiff's

6   counsel stated "[i]t's been produced in another case" and when Tesla's counsel pointed out it had not

7   been produced in this case, Plaintiff's counsel's response was "[i]t doesn't have to be."  Haines Decl.,

8   Exh. 6 (10/24/19 A. Donet Dep.), 34:25-35:14.  The "photo" in Exhibit 110 has not been authenticated,

9   and cannot be authenticated by any witness in this case, it was not produced in discovery in this case

10   through the initial disclosures or discovery requests (despite being responsive) and cannot be used at trial

11   for any purpose.  The context is important, namely that Andres Donet's deposition was taken *after* the

12   close of discovery, pursuant to this Court's Order, at Plaintiff's request.  Plaintiff's counsel could not

13   provide any pertinent information about the unproduced document.  Instead Mr. Organ represented that it

14   "is reportedly something that was put up" in unspecified bathrooms and when asked when that occurred,

15   Plaintiffs' counsel admitted "I don't have the exact date but my understanding is that it happened during

16   this period."  *Id.* at 35:16-36:5.  The period being discussed at the deposition was a time when Owen

17   Diaz no longer worked at Tesla.  Finally, Donet could not identify the document.  When he was asked

18   "[y]ou haven't seen this before" the deponent answered "[n]o, no" and also confirmed that he did not

19   remember it being reported to him stating "I've never seen it."  *Id.* at 36:10-14.  Thus, the document was

20   not produced, is not relevant, remains unauthenticated and must be excluded.  Fed. R. Civ. P. 37(c)(1);

21   Fed. R. Evid. 901.

22           For the same reasons, the Court should exclude the testimony of Nathan Fraim, who was

23   identified for this purpose for the first time on Plaintiff's Witness List, which states "he will authenticate

24   Trial Exhibit 110."  As detailed above, in Section I.A.2, Nathan Fraim began work on January 30, 2017,

25   well after Owen Diaz had left Tesla.  Thus, to the extent Nathan Fraim could authenticate this document

26   – which was not produced in discovery – the document post-dates Owen Diaz's time at Tesla and has no

27   relevance to Owen Diaz's work environment.  Fed. R. Evid. 401, 402.  Furthermore, Nathan Fraim is

28   represented by Plaintiff's counsel and thus any information about the document and its production should

1   have been provided long ago.  But even Nathan Fraim's and Plaintiff's counsel at deposition were unable

2   to make representations about the source of this exhibit.  It is also unfairly prejudicial because it appears

3   to have an epithet written on it, and there is no way to assess the actual source or location where this

4   photo was taken (including whether it was even at a Tesla location) or that there are any indicia or

5   guarantees of trustworthiness.  Thus, notwithstanding the foregoing arguments, it should be excluded as

6   inadmissible hearsay not falling within any exception.  Fed. R. Evid. 801-802, 807.

7        Under the criteria in *Obrey* and *Grade*, Exhibit 110, containing "me too" assertions, which was

8   not produced and is unauthenticated should be not admitted and witnesses, including Nathan Fraim,

9   should be precluded from testifying about it.  The "me too" evidence should also be excluded under Rule

10  403 because a mini trial would be required to assess the validity of Exhibit 110, to the extent that is even

11  possible.

12        **5.        Email Not Produced in Discovery and Sent After Plaintiff's Time at Tesla**

13        By this motion, Tesla seeks to preclude the introduction of Plaintiff's Exhibit 36, an email sent by

14  Elon Musk on May 31, 2017, because it was not produced by Plaintiff or by any other party, and it is

15  irrelevant because Owen Diaz could not have received it, as he was no longer at Tesla.  Fed. R. Civ. P.

16  37(c)(1); Fed. R. Evid. 402.

17        Moreover, this Court previously relieved Tesla of its obligation to respond to a discovery request

18  relating to this document.  Plaintiff requested that Tesla produce all documents sent or received by Elon

19  Must discussing racial slurs from 2010 to the present, and in support of this request, Plaintiff referred to

20  this email[10] quoting a statement that people should be "thick skinned."  Dkt. No. 88, p. 3.  This Court

21  determined that Tesla need not respond to the request because Plaintiff did not show a connection

22  "between Musk's allegedly hostile attitude toward discrimination suits and the company's response to

23  their own experiences with and complaints about racial discrimination."  Dkt. No. 93, 3:1-3.  The same

24  ruling applies here in the much narrower context of trial:  there is no connection between Exhibit 35 and

25  Owen Diaz and thus it must be excluded.

26

27

28

---

[10] The discovery dispute letter refers to Exhibit 40 because the email was marked as Exhibit 40 at Victor Quintero's deposition.

SMRH:4819-8373-4455.2                                    DEFENDANT TESLA, INC.'S MOTIONS *IN LIMINE*

1    For the same reasons, Plaintiff's Human Resources expert, Ms. Oppenheimer, should also be

2 precluded from referring to or relying upon this document at trial.  It appears on her list of materials

3 reviewed and she testified at her deposition she relied upon a document that Owen Diaz should be "thick

4 skinned" because she mistakenly testified that believes this was something Victor Quintero said.  Haines

5 Decl., Exh. 5 (3/9/20 A. Oppenheimer Dep.), 110:15-16, 111:5-12.

6    Under the criteria in *Obrey* and *Grade*, Exhibit 36 should not be admitted and witnesses,

7 including Ms. Oppenheimer, should be precluded from testifying about it.

8              **6.     Unrelated Complaint About Person Plaintiff Did Not Know**

9    By this motion Tesla seeks to preclude Plaintiff from introducing Exhibit 106, a December 30,

10 2015 complaint about Troy Dennis and from eliciting testimony about this exhibit because the email and

11 the contents therein do not involve Plaintiff.  The complaint involved alleged harasser Troy Dennis, then

12 a forklift driver, whom Owen Diaz testified he did not know.  When asked who Troy Dennis is, Owen

13 replied "I don't know.  Unless I can see him or a picture or something I wouldn't know." *Id.* at Exh. 7

14 (5/22/18 O. Diaz Dep.), 175:20-22.  None of the alleged harassers in this complaint were those alleged by

15 Owen Diaz, and it is not a complaint that Owen Diaz was aware of during his assignment at Tesla, and as

16 such the complaint had no effect on the workplace or his  perception of the workplace.  Thus, Exhibit 106

17 is not relevant and would mislead or confuse the jury.  Fed. R. Evid. 401-403.

18    Under the criteria in *Obrey* and *Grade*, Exhibit 106 containing "me too" assertions should not be

19 admitted and all witnesses should be precluded from testifying about it.  The "me too" evidence should

20 also be excluded under Rule 403 because a mini trial would be required to assess the validity of any such

21 claims contained in Exhibit 106.

22              **7.     Unrelated Complaint From Person in Different Work Area with Different
23              Supervisors Than Plaintiff**

24    By this motion, Tesla seeks to preclude Plaintiff from introducing Exhibit 108, a December 11,

25 2015 complaint made by an Jeff Henry, who worked in Chassis 3 and from eliciting testimony from any

26 witnesses about Exhibit 108, including Maggie Crosby, Paul James, Josh Mantz and Jeff Henry.  Jeff

27 Henry's complaint did not involve Owen Diaz.  Chassis 3 is not the same department where Owen Diaz

28 worked, and the supervisors for Chassis 3 were different than those for Owen Diaz.  Furthermore, the

1    Human Resources business partner who was covering the Chassis 3 area was not the same business

2    partner who covered Owen Diaz's work area.  Haines Decl., Exh. 8 (10/21/19 E. Marconi Dep.), 18:21-

3    19:22, 82:6-18).  None of the alleged harassers in this complaint were those alleged by Owen Diaz.

4         The same reasoning applies to preclude the testimony of Plaintiff's newly identified witnesses:

5    Jeff Henry, Maggie Crosby, James Paul and Josh Mantz.  Jeff Henry is also identified as testifying about

6    "knowledge of the racially discriminatory working environment including the N-word in Tesla's Fremont

7    factory . . . as well as Tesla's failure to investigate and prevent harassment."  James Paul is also identified

8    as testifying "regarding Tesla practices in responding to complaints about the N-word."  Maggie Crosby,

9    James Paul, and Josh Mantz are both identified on Plaintiff's Witness list as Human Resources witnesses

10   who would testify about investigating the Jeff Henry complaint.  Maggie Crosby is also identified to

11   testify that she "received complaints of harassment and discrimination including a complaint by Jeff

12   Henry" which indicates that she would offer other "me too" testimony.  Similarly, Josh Mantz is also

13   identified as testifying about being "in charge of leadership development training."  None of this "me

14   too" testimony should be permitted.

15        None of these witnesses were timely identified on Plaintiff's Initial Disclosure, and Plaintiff did

16   not seek leave of this Court to extend those deadlines and supplement his Initial Disclosures and as such

17   Defendant was precluded from conducting any discovery, or even depositions of any of these individuals.

18   The witnesses should be excluded on that basis alone.  Fed. R. Civ. P. 37(c)(1).  Ms. Oppenheimer should

19   also be precluded from testifying about this document, which she relies upon and which was identified in

20   her list of materials.  Haines Decl., Exh. 5 (3/9/20 A. Oppenheimer Dep.), 86:21-87:20.  Ms.

21   Oppenheimer concedes that there is no information in Exhibit 189 about Owen Diaz and that she does not

22   know he knew the individual.  *Id.* at 92:22-93:3.  Ms. Oppenheimer also incorrectly testifies that "some

23   of the management individuals are the same" in Exhibit 189, but in fact all of the email threads are

24   among HR personnel except for the initial complaint which does not contain any supervisor or manager

25   for Owen Diaz.

26        Under the criteria in *Obrey* and *Grade*, none of these documents containing "me too" assertions

27   should be admitted and witnesses should be precluded from testifying about them.  The "me too"

28   evidence should also be excluded under Rule 403 because multiple mini trials would be required to

1   assess the validity of (1) Jeff Henry's claim about use of the n-word; (2) Jeff Henry's knowledge of the

2   work environment in Chassis 3; (3) Jeff Henry knowledge about any alleged failure by Tesla to

3   investigate an unspecified number of claims; (4) Maggie Crosby's knowledge of alleged harassment and

4   discrimination complaints; (5) Maggie Crosby's knowledge about the Jeff Henry complaint; (6) Josh

5   Mantz's knowledge of the Jeff Henry complaint;  (7) Josh Mantz's knowledge relating to "leadership

6   development training.; (8) Paul James' knowledge about "practices in responding to complaints about the

7   N-word."

8   **C.      Motion *In Limine* No. 3 – Putative "Me Too" Witnesses to Be Limited to Percipient**
         **Witness Testimony**

9

10      None of the witnesses below satisfy the criteria in *Obrey* and *Grade* and all "me too" testimony

11  should be precluded under Rule 403 to prevent wasting time and undue delay because multiple mini trials

12  would be required to assess the validity of any such claims.  Only percipient witness testimony related to

13  Owen's alleged harassment claims should be permitted – to the extent it is otherwise admissible.

14              **1.      Former Plaintiff Lamar Patterson**

15      Chartwell employee Lamar Patterson is a former plaintiff in this case who settled with Chartwell

16  and then dismissed his case with prejudice as to Chartwell and Tesla.  Because Lamar Patterson testified

17  at deposition that he never made any complaints with anyone, either formal or informal, during the time

18  he worked at Tesla, he should be precluded from offering any "me too" testimony as to Owen Diaz.

19  Haines Decl., Exh. 9 (7/26/19 L. Patterson Dep.), 18:9-18.  Plaintiff's Witness List states he will testify

20  about "harassing conduct in the same are [sic] where Owen worked as well as Tesla' failure to adequately

21  address the harassment."  This should not be permitted.  Lamar Patterson should only be permitted to

22  provide percipient personal knowledge testimony, to the extent it is admissible, about conduct or

23  encounters involving Owen Diaz. Fed. R. Evid. 602.  Any other testimony "me too" testimony would be

24  irrelevant, more prejudicial than probative and could confuse or mislead the jury as well as requiring a

25  mini trial to determine the merits of any underlying complaints. Fed. R. Evid. 403.

26      Specifically, Lamar Patterson should be precluded from offering testimony about Ramon

27  Martinez because he lacks personal knowledge. Fed. R. Evid. 602.  He admits he did not work with

28  Ramon Martinez and only knew him through other workers and only talked to him about work-related

1   matters about 2 to 3 times.  Haines Decl., Exh. 9 (7/26/19 L. Patterson Dep.).  59:11-60:16.  Nor did

2   Lamar Patterson and Owen Diaz work in the same area as Ramon Martinez.  *Id.* at 61:5-7.  Lamar

3   Paterson testified that he only saw Owen Diaz interacting with Ramon Martinez on work-related matters

4   twice, and he did not recall anything about either encounter other than that they were work-related.  *Id.* at

5   60:11-61:10.  Furthermore, Lamar Patterson was not a percipient witness to the January 22, 2016 cartoon

6   incident involving Ramon Martinez.  Instead, Patterson  "may" have seen the cartoon drawing *after*

7   Owen Diaz told him about it.  *Id.* at 64:22-65:1.  And to the extent Owen Diaz told him how he thought it

8   was offensive, any such testimony would be cumulative and should be excluded.  *Id.* at 62:19-63:23; Fed.

9   R. Evid. 403.

10         For the same reasons, Lamar Patterson should be precluded from offering other "me too"

11   testimony that did not involve Owen Diaz, as well as any alleged failure to address the purported

12   harassment of non-parties.  It would be unfairly prejudicial to Defendant because Lamar Patterson's

13   deposition was taken in this case *only* as to his role as an alleged witness to Owen Diaz's claims – not

14   about any claims he himself may have made involving other non-parties.  When Defendant's counsel was

15   questioning Lamar Patterson about the interview process with Chartwell, Plaintiff's counsel objected

16   stating "this is a deposition in the Diaz matter.  And I know some of these questions are foundational, but

17   a lot are not relevant to the Diaz matter."  *Id.* at 36:25-37:13.  Plaintiff's counsel further clarified "this is

18   not Lamar's deposition for his case.  This is really a deposition in the Diaz matter, and he is a witness."

19   *Id.* at 38:1-3.  Thus, not only would such "me too" testimony be irrelevant, it would unfairly prejudice

20   Defendant under Rule 403 because Defendant did *not* have the opportunity to depose Lamar Patterson on

21   his own claims, but only those as a witness to allegations involving Owen Diaz.  In short, given that

22   counsel precluded potential "me-too" testimony during discovery, they cannot present such testimony at

23   trial.

24         All such testimony should also be excluded under Rule 403 because a number of mini trials

25   would be required to determine the merits of any underlying complaints and the response to any such

26   alleged complaints.  Fed. R. Evid. 403.

27

28

### 2.   Tamotsu Kawasaki

Tamotsu Kawasaki was a Chartwell employee.  Haines Decl., Exh.10 (10/9/19 T. Kawasaki Dep.), 18:24-19:9.  He should be precluded from offering any "me too" testimony about the alleged use of the n-word at unspecified places in the factory by people who he did not supervise or otherwise work with at the facility.  *Id.* at 96:16-97:4.  There is no connection to Owen Diaz, his workplace, his supervisors or any of his alleged harassers.  Under the criteria in *Obrey* and *Grade*, this "me too" testimony, and it should also be excluded under Rule 403 because a mini trial would be required to assess the validity of any such claims.

To the extent that Tamotsu Kawasaki is permitted to testify, he should only be allowed to provide percipient witness testimony which involved being a witness to conduct or encounters involving Owen Diaz, including his investigation of those encounters or conduct.  Fed. R. Evid. 602.  Any other testimony would be irrelevant, more prejudicial than probative and could confuse or mislead the jury as well as requiring a mini trial to determine the merits of any underlying complaints.  Fed. R. Evid. 403.

### 3.   Michael Wheeler

Michael Wheeler was never employed by Tesla but instead worked for Chartwell.  Haines Decl., Exh. 11 (6/12/19 M. Wheeler Dep.), 13:5-8, 95:25-96:2.  He should be precluded from offering any "me too" testimony.  Plaintiff's Witness list states he will testify regarding the "hostile work environment for African Americans."

Michael Wheeler should be precluded from testifying about any such "me too" evidence.  Specifically, he should be precluded from offering testimony about an incident involving him and Jesus, whose last name he cannot remember, who he claimed called him the n-word and was also promoted.  *Id.* at 19:2-17.  He cannot remember when this allegedly occurred, only that it was on the east side of the building where the fork lifts were charged.  *Id.* at 22:1-5.  This is not connected with Owen Diaz's work area, it does not involve Owen Diaz and thus is not relevant.  Nor is "Jesus" is identified as one of Owen Diaz's alleged harassers.  Similarly, Michael Wheeler should be precluded from testifying about an incident involving his cart that was in a parking lot – which again not in Owen Diaz's work area.  *Id.* at 55:17-56:3.  Nor could Michael Wheeler testify that this incident was related to race.  *Id.* at 57:8-12.  The same reasoning requires the exclusion of his observation of the swastika head tattoos of an unknown

1   person in an unknown location (Wheeler did not even have knowledge of whether this person worked at

2   Tesla), which he did not report to Human Resources.  *Id.* at 113:12-114:20.

3         To the extent Michael Wheeler is permitted to testify, he should only be allowed to provide

4   percipient witness testimony which involved him being a witness to conduct or encounters involving

5   Owen.  Fed. R. Evid. 602.  Any other testimony would be irrelevant, more prejudicial than probative and

6   could confuse or mislead the jury as well as requiring a number of mini trials to determine the merits of

7   any underlying complaints.  Fed. R. Evid. 403.

8               **4.      Wayne Jackson – nextSource On-Site Representative**

9         Wayne Jackson was a nextSource Program Manager, who was a liaison between Defendant and

10  workers employed by staffing companies.  Haines Decl., Exh. 12 (5/17/19 W. Jackson Dep.), 17:8-18:13.

11  He worked on-site at the Tesla Fremont facility.  *Id.* at 76:5-20.  Plaintiff's Witness List states he will not

12  just offer testimony about conduct connected with Owen Diaz but will also testify about unspecified

13  "harassing conduct . . . directed at others."

14        He should be precluded from offering any "me too" testimony about unspecified harassing

15  conduct directed at non-parties, as well as whether he once heard the n-word used at an unspecified area

16  of the factory at an unknown time.  First, as to Wayne Jackson overhearing the n-word, it did not involve

17  Owen Diaz.  Second, Wayne Jackson's role required him to support three shifts and was often walking

18  from one to side to another of the 5 million square foot Fremont facility.  Haines Decl., Exh.12 (5/17/19

19  W. Jackson Dep.), 76:5-20.  Thus, he could have overheard it anywhere in the 5 million square foot

20  factory.  Nor is there any connection to Owen Diaz's work area, his supervisors, or his alleged harassers.

21  Wayne Jackson did not know who might have said it; it was just something he overheard.  *Id.* at 148:25-

22  149:8.  Also, he did not report this one instance to Human Resource.  *Id.* at 146:6-11.  Likewise,

23  Plaintiff's suggestion in their Witness List that he would testify to other unspecified "harassing conduct"

24  not directed at Owen Diaz must be excluded.

25        Under the criteria in *Obrey* and *Grade*, this "me too" testimony from Wayne Jackson should be

26  excluded, and his testimony should be limited to percipient witness testimony involving conduct or

27  encounters with Owen Diaz, including his investigation of those encounters or conduct .  Wayne

28  Jackson's "me too" testimony should also be excluded under Rule 403 because many mini trials would

1    be required to assess the validity of these claims, wasting time and causing undue delay.

2        **D.      Motion *In Limine* No. 4 - Exclude Impermissible Demonstratives and Shock Props**

3        By this motion, Tesla anticipates that Plaintiff's counsel may attempt to carry, show or use as a

4    demonstrative a book written by Harvard Professor Randall Kennedy entitled "nigger," and Plaintiff's

5    counsel should be precluded from doing so because the book is not relevant to any of Plaintiff's claims,

6    and is not admissible for any purpose.[11] Fed. R. Evid. 401, 402. Plaintiff's counsel's clear intention is to

7    inflame the jury with the provocative book and to "encourage" them to obtain the book during the trial.

8        The book in question was written by Randall Kennedy and was published in 2002.  It was

9    published 13 years before Plaintiff began work at Tesla.  It is not identified on any of Plaintiff's

10   designated experts' reliance materials lists.  Furthermore, the book was not produced during discovery.

11   Thus, it is irrelevant and inadmissible because it contains no information about, referring to or relating to

12   Plaintiff and his time at Tesla.

13       Even if the book were admissible – it is not – it should be excluded as unfairly prejudicial under

14   Rule 403.  The book's cover is dark brown, with the title word "nigger" written in large, bright, white

15   letters in the center of the cover.  The viewer's eye is immediately drawn to the one-word title in

16   contrasting white lettering against a dark brown cover.  Underneath , in much smaller type, that can't be

17   read at a distance, is the book's subtitle "The Strange Career of a Troublesome Word."  At the time it was

18   published many people condemned the cover and title as crude marketing techniques, but the author

19   unabashedly endorsed the title stating "I write a book to be read."  *See, e.g.*, A Black Author Hurls That

20   Word As A Challenge, NY Times, David D. Kilpatrick Dec. 1, 2001.[12]

21       The book's only function would be as a shock prop, carried or displayed by Plaintiff's counsel to

22   startle the jury and would be unfairly prejudicial under Rule 403.  Other courts routinely exclude this

23   type of evidence.  Rule 403's unfair prejudice language "means an undue tendency to suggest decision on

24   an improper basis, commonly, though not necessarily, an emotional one."  *Cohn v. Papke*, 655 F.3d 191,

25   194 (9th Cir. 1981)(quoting the Rule 403 Advisory Committee Notes).  For example, *Cohn* was a

---

[11] In 2019, Plaintiff's counsel during an arbitration against Tesla used the book as a prop.

[12] https://www.nytimes.com/2001/12/01/books/a-black-author-hurls-that-word-as-a-challenge.html, viewed March 13, 2020.

1   solicitation case, in which evidence of whether he was a homosexual or bisexual, whether he had "vivid

2   sexual fantasies" and his past sexual relationships should have been excluded under Rule 403.  *Id.* at 194-

3   95.  The basis for the exclusion is because "the jury may have been unfairly influenced by whatever

4   biases and stereotypes they might hold" with regard to this type of information.  *Id.*  Similarly, the trial

5   court erred in admitting rap lyrics found in defendant's car three days before the incident at issue.  *Boyd*

6   *v. City of San Francisco*, 576 F.3d 938, 941, 949 (9th Cir. 2009).  The rap lyrics contained offensive

7   language, advocated murder of police officers and referenced and advocated prosecution.  *Id.*  The rap

8   lyrics had no probative value and due to their offensive nature, they were unfairly prejudicial under Rule

9   403.  *Id.* at 949.

10         These cases plainly warrant the exclusion of any use or presence of the book in the courtroom

11   because of its complete lack of probative value and the inherent likelihood that the jury would be unfairly

12   prejudiced by seeing the word "nigger" on a book associated with Plaintiff or Plaintiff's counsel.  The

13   book is no different than the questions about sexual proclivity in *Cohn* or the unrelated rap music in

14   *Boyd.*  The book should not be permitted.

15   **III.   CONCLUSION**

16         For the foregoing reasons, Tesla respectfully requests the Court grant Tesla's Motions *In Limine*.

17   Dated:  April 20, 2020                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

18
19                                            By _____/s/ Susan Haines_____
                                                    TRACEY A. KENNEDY
20                                                  PATRICIA M. JENG
                                                    SUSAN HAINES
21
22                                            Attorneys for Defendant
                                             TESLA, INC. dba TESLA MOTORS, INC.
23

24

25

26

27

28