LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
NAVRUZ AVLONI (SBN 279556)
navruz@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:     (415)-453-7352
Facsimile:      (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
ALEXANDER KRAKOW + GLICK LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:     (310) 394-0888
Facsimile:      (310) 394-0811

Attorneys for Plaintiff
OWEN DIAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTIONS *IN LIMINE* NOS. 1-6**<br><br>Date: May 11, 2020<br>Time: 10:00 a.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick<br><br>Trial Date: June 8, 2020<br>Complaint filed: October 16, 2017 |

## <u>TABLE OF CONTENTS</u>

I.    **NOTICE OF MOTION** ...................................................................................................... 6

II.    **GOVERNING LAW** ....................................................................................................... 6

III.   **MOTIONS *IN LIMINE*** ................................................................................................ 6

   **A.**  **Plaintiff's Motion *in Limine* No. 1 to Exclude Lay Opinion Testimony that Use of the N-Word was Somehow Not Offensive.** ............................................................................ 6

     1.   The Witnesses' Testimony About the Offensiveness of the N-Word is Irrelevant, Because There is No Evidence Showing the Witnesses Heard the N-Word in Context, Let Alone the Same Context as Plaintiffs ........................................................................................... 8

     2.   Testimony About the Offensiveness of the N-Word is Speculative and Must Be Excluded Under Rule 701. ...................................................................................................... 9

     3.   Any Minimal Relevance This Opinion Testimony May Have is Vastly Outweighed by the Risk of Undue Consumption of Time and Misleading the Jury. ........................................ 10

   **B.**  **Plaintiff's Motion *in Limine* No. 2 to Exclude the Testimony of Witness Ramon Martinez.** 11

     1.   The Court Should Preclude Tesla from Calling Martinez, Consistent with Its October 3, 2019 Order. ......................................................................................................................... 13

     2.   The Court Must Preclude Tesla from Calling Martinez Under the "Automatic" and "Self-Executing" Sanctions Provision of FRCP 37 .................................................................. 13

   **C.**  **Plaintiff's Motion *in Limine* No. 3 to Exclude the Handwritten Statement of Ramon Martinez from Evidence.** ...................................................................................................... 15

     **1.**   **Martinez's Statement is Inadmissible Hearsay.** ............................................. 16

     **2.**   **Martinez's Statement Does Not Qualify Under Any Hearsay Exceptions.** .......... 16

   **D.**  **Plaintiff's Motion *in Limine* No. 4 to Exclude Evidence and Testimony Concerning the Relationship Between Plaintiff Owen Diaz and Rothaj Foster.** ......................................... 18

     1.   **Evidence of Plaintiff's Workplace Relationship with Foster is Irrelevant.** ......... 19

     2.   **Any *De Minimis* Relevance of This Information is Substantially Outweighed by the Risk of Confusing the Issues and Wasting Undue Time** ........................................................ 20

   **E.**  **Plaintiff's Motion *in Limine* No. 5 to Exclude Evidence and Testimony Concerning Plaintiff Owen Diaz's Work Performance.** ....................................................................................... 21

     1.   Evidence of Owen's Work Performance is Irrelevant. ........................................ 22

     2.   The Minimal Probative Value of Plaintiff Owen Diaz's Work Performance is Substantially Outweighed by Its Prejudicial Effect. ............................................................................ 23

   **F.**  **Plaintiff's Motion *in Limine* No. 6 to Exclude Evidence and Testimony Concerning Demetric Di-az's Criminal History.** ....................................................................................... 23

     **1.**   **Evidence of Demetric's Criminal Charges is Inadmissible Under Rule 609.** ........ 24

     **2.**   **Evidence of Demetric's Criminal Charges is Not Admissible Under Rules 404 or 608.** ...... 24

     **3.**   **The Probative Value of the Charges is Substantially Outweighed by Their Prejudicial Effect.** ........................................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arevalo v. Chipotle Servs., LLC,*
  2016 WL 7045606 (C.D. Cal. Marc. 7, 2016) ........................................................25

*Beasley v. U.S.,*
  218 F.2d 366 (D.C. Cir. 1954) ............................................................................24

*Clark v. City of Los Angeles,*
  650 F.2d 1033 (9th Cir. 1981) ...............................................................................17

*Ellison v. Brady,*
  924 F.2d 872 (9th Cir. 1991) ...........................................................................9, 10

*Luce v. U.S.,*
  469 U.S. 38 (1984) ...................................................................................................6

*McGinest v. GTE Svc. Corp.,*
  360 F.3d 1103 (9th Cir. 2004) .................................................................................9

*Palmer v. Hoffman,*
  318 U.S. 109 (1943) ..............................................................................................17

*Seals v. Mitchell,*
  2011 WL 1399245 (N.D. Cal. 2011) .....................................................................24

*Security Alarm Financing Enterprises, LP v. Alarm Protection Technology, LLC,*
  743 Fed. Appx. 786 (9th Cir. 2018) ...............................................................16, 18

*U.S. v. Faust,*
  850 F.2d 575 (9th Cir. 1988) .................................................................................16

*U.S. v. Lloyd,*
  807 F. 3d 1128 (9th Cir. 2015) ................................................................................9

*U.S. v. Lopez,*
  762 F.3d 852 (9th Cir. 2014) ...................................................................................9

*U.S. v. Sangrey,*
  586 F.2d 1312 (9th Cir. 1978) ...............................................................................24

*U.S. v. Young,*
  573 F.2d 1137 (9th Cir. 1978) ...............................................................................25

*Velasquez v. City of Santa Clara*,
    2014 WL 3773001 (N.D. Ca. July 31, 2014)........................................................25

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ...........................................................................14

**Statutes**

42 U.S.C. § 1981 .................................................................................18, 19, 20, 22

Bane Act ....................................................................................................................22

California Labor Code § 1102.5 ..............................................................................22

Unruh Act .................................................................................................................22

**Federal Rules of Civl Procedure**

Rule 26 ...........................................................................................................12, 14

Rule 26(a) .................................................................................................................14

Rule 37 .......................................................................................................12, 13, 14, 15

Rule 37(c)(1) ............................................................................................................14

Rule 401(a) and (b) .........................................................................................9, 19, 22

Rule 402 .................................................................................................8, 9, 19, 22

Rule 801(c) ...............................................................................................................16

Rule 802 ...................................................................................................................16

Rule 403 ...........................................................................................................*passim*

Rule 404 ............................................................................................................24, 25

Rule 404(b) ..............................................................................................................24

Rule 608 ...................................................................................................................25

Rule 609 ...................................................................................................................24

Rule 701 ..........................................................................................................8, 9, 10

Rule 803(3) ........................................................................................................16, 17

Rule 803(6) ..............................................................................................................17

Rule 807 ..................................................................................................................................18

Rules 404(b) and 608 ..............................................................................................................25

**Other Authorities**

California Northern District's General Order No. 73 ..................................................................13

## I.   NOTICE OF MOTION

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

Please take notice that, on May 11, 2020, at 10:00 AM, Plaintiff Owen Diaz ("Plaintiff") will move this Court for *in limine* orders excluding the following:

1. Lay opinion testimony stating that racial slurs are not offensive;

2. The testimony of witness Ramon Martinez;

3. A written statement of Ramon Martinez;

4. Testimony or evidence concerning the workplace relationship between Plaintiff and Rothaj Foster;

5. Testimony or evidence concerning Plaintiff's work performance; and

6. Testimony or evidence concerning witness Demetric Di-az's criminal history.

These motions are made under the provisions of Rules 103, 104, 402, 403, 404, 608, 609, 701, 801, 802, 803, and 807 of the Federal Rules of Evidence; and are based on the supporting Memorandum of Points and Authorities and exhibits in support thereof; the pleadings and papers on file in this action; and upon such argument as may be presented at the hearing on this matter.

## II.   GOVERNING LAW

The Court has inherent power to grant a motion *in limine* to exclude evidence that could be objected to at trial. *Luce v. U.S.*, 469 U.S. 38, 41 (1984). Additionally, Rules[1] 103(d) and 104(c) grant the Court authority to evaluate and rule on the admissibility of evidence outside of the jury's presence.

## III.   MOTIONS *IN LIMINE*

### A.   Plaintiff's Motion *in Limine* No. 1 to Exclude Lay Opinion Testimony that Use of the N-Word was Somehow Not Offensive.

Various witnesses have testified to hearing the racial slur "nigger" (the "n-word") throughout Defendant Tesla's factory. These witnesses also offered impermissible lay opinion as to whether this slur was used in an offensive manner. Plaintiff contends that the use of the n-

---

[1] All references to "Rules" are to the Federal Rules of Evidence, unless noted.

word in the workplace is inherently offensive, and that no individual, regardless of their race, can excuse the use of the n-word in the workplace.

For instance, non-African-American witness Tamotsu Kawasaki testified that he heard the n-word used "all over the [Tesla] facility." (Deposition of Tamotsu Kawasaki at 76:7-23, Exh. 1[2]) He heard the word used in passing, while moving through the facility. (*Id*. at 96:13-97:4) He *assumed* and believed it was not being used in an "aggressive tone" or offensive manner. (*Id*. at 97:5-12) However, when Kawasaki heard the n-word used, he did not stop to investigate or inquire further. (*Id*. at 96:13-97:4)

Similarly, African-American witness Michael Wheeler also heard the n-word used in the Tesla facility. (Deposition of Michael Wheeler at 34:6-9, 65:14-16, Exh. 2) He *assumed* the word was being used in a "friendly context." (*Id*.) Wheeler heard the n-word used while performing job duties in the Tesla factory, while he "drove around" the facility in a "little cart" which moved too fast to allow him to hear full conversations. (*Id*. at 34:21-35:3) He also heard the n-word "in passing" during breaks or when entering and exiting the factory. (*Id*. at 35:5-10) Wheeler drew a *personal* distinction between the n-word and the "N-word with an 'A'" which he implied was less offensive, and the "e-r version of the N-word", which is always offensive. (*Id*. at 35:17-36:4)

African-American witness Wayne Jackson also recalled hearing the n-word while "walking through the facility" in "different parts" of the factory. (Deposition of Wayne Jackson at 141:17-25; 145:22-146:4; 147:13-148:6, Exh. 3) Jackson denied hearing the n-word used in an "intentionally offensive" way, and "honestly [didn't] feel like [the speakers] were trying to offend anybody." (*Id*. at 143:5-7; 147:13-148:6) Jackson nevertheless admitted that he generally did not pause to engage with the individuals saying the word, with the exception of one occasion where he instructed two African-American men not to use the n-word. (*Id*. at 141:17-25; 146:6-147:4) Jackson did not report the use of the word to Human Resources, because he did not believe it was "being used...to offend." (*Id*. at 150:18-151:10) Like Wheeler, Jackson also testified about a perceived difference between the "N word ending in A and the N word ending

---

[2] All exhibits are attached to the Declaration of Cimone Nunley in Support of Plaintiff's Motions *in Limine*, unless otherwise noted.

E-R", implying the former was less offensive. (*Id*. at 152:9-153:4)

The above witness testimony is admissible to prove rampant use of the n-word throughout the Tesla facility, and demonstrate Tesla's notice of a racially hostile work environment. It also demonstrates Tesla's general indifference to use of racial slurs inside its factory, as all three witnesses served in supervisory roles, but nevertheless failed to investigate use of the slur, or to report it to Human Resources as required by Tesla's own policies.

At trial, however, Plaintiffs seek to exclude all opinion testimony from any non-party witness as to whether the n-word was used in an "inoffensive" manner. These witnesses' opinion as to whether the use of the n-word in the workplace was offensive is irrelevant. Lay witnesses cannot sanitize the use of the n-word in the workplace, *regardless* of their subjective interpretation of the speakers' intent. Every person who hears the word is entitled to take subjective offense, and witnesses' *choice* to assume the n-word was used innocently does not justify or rationalize the use of a vitriolic racial slur like the n-word in the workplace. In fact, these three witnesses unanimously agreed that use of the n-word was not appropriate in the Tesla factory. (Kawasaki Depo. at 43:16-19; Wheeler Depo. at 136:2-4; Jackson Depo. at 149:24-150:4) Tesla's own Human Resources employees agreed, noting that the n-word has no place in the Tesla factory. (Deposition of Annalisa Heisen at 155:1-13, Exh. 4; Deposition of Erin Marconi at 34:12-35:7, Exh. 5)

A witness's speculation that the n-word was "inoffensive" on a single occasion is not relevant. Such lay testimony is wholly speculative, as each witness simply heard the word in passing. As such, these opinions must also be excluded under Rule 701. Because the evidence is irrelevant and carries a substantial likelihood of confusing the issues before the trier of fact, it must also be excluded under Rule 403.

1. **The Witnesses' Testimony About the Offensiveness of the N-Word is Irrelevant, Because There is No Evidence Showing the Witnesses Heard the N-Word in Context, Let Alone the Same Context as Plaintiffs.**

Only relevant information is admissible. Fed R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable," and where "the fact is of consequence in

determining the action." Fed. R. Evid. 401(a) and (b). Irrelevant evidence is not admissible. Fed. R. Evid. 402.

Here, Plaintiffs anticipate Tesla will offer lay witnesses' opinion as to whether the N-word was offensive. Such testimony is irrelevant. To prevail on their claims, Plaintiffs must prove that "(1) []a reasonable African American [employee] would find the workplace so objectively and subjectively racially hostile as to create an abusive working environment; and (2) [] [the employer] failed to take adequate remedial and disciplinary action" or is vicariously liable for the harassers' conduct. *McGinest v. GTE Svc. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). The hostility of the working environment is analyzed from the perspective of a reasonable member of the plaintiff's protected class. *Ellison v. Brady*, 924 F.2d 872, 878-9 (9th Cir. 1991). The inquiry rests on the working environment that *Plaintiff* experienced, not the working environment that other witnesses experienced.

Neither Kawasaki, Wheeler, nor Jackson heard the n-word in Plaintiff's presence. These lay witnesses cannot offer relevant opinions about the offensiveness of the n-word as used towards Plaintiff or in Plaintiff's presence. The differing contexts, removed from Plaintiff, do not prove that Plaintiff, or any reasonable African-American, was more or less likely to have been offended at the harassment Plaintiff experienced. Accordingly, the Court should exclude this testimony because it is not relevant to any of Plaintiff's claims.

## 2.   Testimony About the Offensiveness of the N-Word is Speculative and Must Be Excluded Under Rule 701.

Under Rule 701, a lay witness may only offer opinion testimony if the opinion is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony of the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The first prong, often referred to as the "personal knowledge requirement," can be "met if the witness can demonstrate firsthand knowledge or observation." *U.S. v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014). However, "a lay opinion witness 'may not testify based on speculation....'" *U.S. v. Lloyd*, 807 F. 3d 1128, 1154 (9th Cir. 2015), *citing U.S. v. Vera*, 770 F.3d 122, 1242 (9th Cir. 2014).

At trial, Plaintiffs anticipate that Tesla will attempt to present these witnesses' testimony about the "inoffensiveness" of the n-word to the trier of fact. These witnesses' lay opinion testimony about the perceived offensiveness of the n-word is precisely the type of speculative testimony that must be excluded under Rule 701. All three witnesses testified that, after hearing the n-word used in the workplace, they did not investigate the use of the slur, did not engage with the individuals using it, and did not report the conduct to Human Resources so an investigation could be conducted. (Kawasaki Depo. at 96:13-97:4; Wheeler Depo. at 34:21-35:3; Jackson Depo. at 141:17-25, 146:6-11) Moreover, these lay witnesses heard the n-word in passing, divorced from conversational context that might allow them to opine as to whether the speaker intended to offend, or the listener was actually offended, by the slur. (Kawasaki Depo. at 96:13-97:4; Wheeler Depo. at 34:21-35:10; Jackson Depo. at 141:17-25, 147:13-148:6) Their statements that the n-word was not offensive are based not on personal knowledge of the conversations they overheard. Instead, the opinion is mere speculation based on a single word heard in passing. Thus, the Court must exclude this lay opinion testimony under Rule 701.

### 3. Any Minimal Relevance This Opinion Testimony May Have is Vastly Outweighed by the Risk of Undue Consumption of Time and Misleading the Jury.

Even relevant evidence may be excluded where its probative value is substantially outweighed by the risk of undue consumption of time or misleading the jury. Fed. R. Evid. 403. This is precisely the risk presented here.

First, there is a substantial risk in allowing out-of-context lay opinion testimony about incidences that had nothing to do with Plaintiff. Such testimony is likely to mislead the jury into substituting these witnesses' subjective judgment for the judgment of a reasonable member of Plaintiff's protected class. As noted above, Plaintiff must prove the conduct he experienced was both subjectively offensive to him, and would have been objectively offensive to the reasonable African-American. *Ellison v. Brady*, 924 F.2d 872, 878-9 (9th Cir. 1991). Allowing witnesses—two of whom are African-American—to testify that they did not find the n-word offensive carries a substantial risk of leading the jury into believing that no reasonable African-American Tesla employee would have been offended by the use of the n-word.

However, there is no proof these witnesses heard the n-word in the same context or on the same occasions as Plaintiff. Allowing impermissible lay opinion testimony from African-American witnesses, opining that they did not interpret the n-word as offensive in certain contexts, invites the jury to conflate the two unrelated experiences to Plaintiff's experiences. The risk of misleading and confusing the trier of fact is so high that the evidence must be excluded.

Admission of this evidence also carries a substantial risk of the undue consumption of the Court's limited time. Plaintiff would be obligated to present the testimony of African-American workers who *did* find the n-word offensive after hearing it in contexts similar to Plaintiff, to counter Jackson and Wheeler's testimony, thus requiring a "mini-trial" on an issue—whether witnesses who heard the n-word in contexts divorced from Plaintiff found it offensive—that is irrelevant to the resolution of Plaintiff's claims.

For this reason, the Court should exclude all lay opinion testimony as to whether the n-word was offensive when used outside of Plaintiffs' presence.

**B. Plaintiff's Motion *in Limine* No. 2 to Exclude the Testimony of Witness Ramon Martinez.**

The Court should exclude any testimony from witness Ramon Martinez. On September 19, 2019, the parties sent a joint letter brief to the Court. (Dkt. No. 86) In the brief, Plaintiff requested leave to depose eight additional individuals, including witness Ramon Martinez. (*Id.* at p. 1) On October 3, 2019, the Court ruled on the parties' dispute. (Dkt. No. 93) In this Order, the Court granted Plaintiff fourteen total hours to depose the eight listed individuals, and required Plaintiff to complete the listed individuals' depositions by October 15—giving Plaintiff less than two weeks to serve and depose the witnesses. (*Id.* at p. 1) To balance the limited time allotted for noticing and taking the depositions with Plaintiff's need to conduct legitimate discovery, the Court provided, "Defendant[] will not be able to call as a witness at trial any individuals named in the letter who have not been deposed." (*Id.*) Ultimately, Plaintiff was unable to depose four of the witnesses in the time allotted by the Court—including Plaintiff's harasser, Ramon Martinez.

This was due, in large part, to Plaintiff's inability to serve Martinez with a deposition subpoena. Tesla has been aware that Martinez was a witness, or potential witness, since making

its initial disclosures in March of 2018—over *two years ago*. (Exh. 6 at 4:9-11) Notably, Tesla did not provide Martinez's contact information in its disclosures, as required by this Court's General Order No. 71. Plaintiff attempted to ascertain Martinez's contact information via interrogatory, and Tesla responded in June of 2018 with only his last, best-known e-mail address. (Exh. 7 at 8:11-21) Martinez subsequently became a Tesla employee on January 14, 2019. (Exh. 8 at 6:14-7:10) Though Martinez was a Tesla employee, and within Tesla's control, *Tesla never produced Martinez's contact information to Plaintiff* via amended disclosures or amended discovery responses, as required by Rule 26. In fact, as recently of January of this year, Tesla argued to the Court that it did not have to produce Martinez's contact information to Plaintiff. (Dkt. 156 at 9:21-10:9)

Deprived of the benefit of Martinez's contact information (of which Tesla was fully aware), Plaintiff dutifully attempted to locate Martinez to obtain his deposition testimony. The process server hired by Plaintiff's counsel made six unsuccessful attempts at service during the winter of 2018. (Exh. 32) After the Court's October 2019 Order, Plaintiff successfully served a man named Ramon Martinez with a deposition notice. (Grislis Dec.at ¶ 2, Exh. 1 to Grislis Dec.) However, the man Plaintiff served reached out to Plaintiff's counsel's office via telephone shortly thereafter. (*Id.* at ¶ 3) He stated that he had never worked for Tesla and Plaintiff had subpoenaed the wrong man. (*Id*.) Ultimately, Plaintiff was unable to locate and serve the correct Ramon Martinez with a deposition notice before the Court's October 15, 2019 deadline.

Now, in flagrant violation of the Court's prior Order, Tesla has included Martinez on its proposed trial witness list. The Court should not allow Tesla to call Martinez as a witness. Allowing Tesla to call Martinez for any purpose (including impeachment and rebuttal) violates the Court's October 3, 2019 Order and prejudices Plaintiff. Additionally, the Court should impose a sanction precluding Tesla from calling Martinez pursuant to Rule 37, because Tesla concealed his contact information from Plaintiff during the discovery process and improperly failed to amend its disclosures to include his contact information upon receipt.

\\

\\

**1.  The Court Should Preclude Tesla from Calling Martinez, Consistent with Its October 3, 2019 Order.**

The Court's October 3, 2019 Order balanced the prejudice of granting Plaintiff just 14 hours and two weeks' time to depose eight witnesses with a limitation: if Plaintiff could not depose a witness, Tesla could not call them to testify at trial. (Dkt. 93 at p. 1) In reliance on this Order, Plaintiff was forced to make a judgment call about which witnesses to depose and necessarily could not depose all listed witnesses. Allowing Tesla to call Martinez at trial not only violates the letter of the Court's Order, but the spirit of fairness in which the restrictions were imposed.

Moreover, allowing Tesla to violate the Court's October 3, 2019 Order and call Martinez prejudices Plaintiff. Martinez was a current Tesla employee at the time of the Court's Order, to Plaintiff's knowledge, and under Tesla's control. Tesla has thus had every opportunity to familiarize itself with Martinez's anticipated testimony and structure its trial strategy around this testimony. In contrast, Plaintiff was unable to depose Martinez despite his best attempts to obtain Martinez's contact information absent Tesla's compliance with Plaintiff's discovery requests. Plaintiff has thus been deprived of the opportunity to depose Martinez, prepare for his testimony, or conduct further discovery into additional documents or topics in light of his testimony.

Short of disallowing Martinez's testimony at trial, there is no way to mitigate the prejudice from Tesla's nondisclosure. Due to the current public health crisis, and the current statewide "stay-at-home" order, Plaintiff cannot conduct an in-person deposition of Martinez. (*See* California Northern District's General Order No. 73) Moreover, Plaintiff would not have an opportunity to conduct further discovery on any matters or documents revealed at Martinez's deposition—further prejudicing Plaintiff. Accordingly, the Court must preclude Tesla from calling Martinez at trial, in accordance with its October 3, 2019 Order.

**2.  The Court Must Preclude Tesla from Calling Martinez Under the "Automatic" and "Self-Executing" Sanctions Provision of FRCP 37.**

Martinez should also be excluded from testifying under the witness preclusion sanction provision of Rule 37 of the Federal Rules of Civil Procedure, because Tesla—despite knowing

Martinez was a relevant witness, and despite the fact that Martinez was a current Tesla employee and under Tesla's control—failed to produce Martinez's contact information.

Plaintiff previously moved for a sanction excluding Martinez, among others, from testifying at trial as a sanction under Rule 37. (Dkt. 146) The Court noted that it would resolve witness preclusion issues on a "case-by-case basis at the pretrial conference." (Dkt. 160 at 1:24-25) The Court noted that Plaintiff could move in limine to exclude witnesses from testifying at trial, "[i]f [Plaintiff is] able to show that Tesla has concealed identifying information" of witnesses. (*Id*. at 1:25-2:5) This is precisely the situation presented here.

Rule 37 of the Federal Rules of Civil Procedure plainly provides that if a party fails to identify a witness as required by Rule 26(a) or (e), "the party is not allowed to use that…witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). There is no burden on the opponent of the evidence to demonstrate harm or undue prejudice; rather, the full weight of the burden to demonstrate harmlessness or substantial justification falls on "the party facing sanctions." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1107 (9th Cir. 2001). In the absence of a showing of harmlessness or substantial justification, a witness preclusion sanction is "automatic" and "self-executing." Fed. R. Civ. P. 37, Advisory Committee's Note (1993).

There can be no substantial justification for Tesla's failure. Tesla has been aware that Martinez was a relevant witness since 2018, yet never provided his contact information in response to Plaintiff's interrogatory. (Exh. 30 at 8:11-21) Even after Martinez became a Tesla employee in 2019, Tesla never amended its responses with his full contact information. (Exh. 31 at 6:14-7:10) Given that Tesla has now added Martinez to its witness list, the Court may surmise that Tesla has some means of contacting its current employee that Tesla has neglected to share with Plaintiff, as required under Rule 26 of the Rules of Civil Procedure. Instead, Tesla argued to the Court as recently as this January that it did not have to share this key witness's contact information with Plaintiff. (Dkt. 156 at 9:21-10:9) Given that Martinez was identified in Tesla's own initial disclosures, there can be no substantial justification for this failure.

Nor is the failure to produce Martinez's contact information harmless. Plaintiff contends

that Martinez was one of his primary harassers during his employment at the Tesla factory, and claimed that Martinez called him the n-word over 30 times. (Deposition of Owen Diaz, Vol. I, at 56:9-11, Exh. 1 to Supp. Nunley Dec.) As laid out above, Martinez is a Tesla employee and within Tesla's control, meaning Tesla has had every opportunity to develop and prepare for his testimony. In contrast, because Tesla failed to comply with its discovery obligations Plaintiff has had no such opportunity, and the current public health crisis precludes Plaintiff from mitigating this severe and unwarranted prejudice by way of a last-minute deposition. Had Tesla wished to call this witness at trial, it should have amended its initial disclosures or discovery responses with Martinez's contact information. Because Tesla did not comply with its discovery obligations, and because this failure is neither justified nor harmless, the Court must impose the "automatic" and "self-executing" sanctions required by Rule 37 of the Federal Rules of Civil Procedure and bar Tesla from calling Martinez to testify at trial in any capacity.

### C. Plaintiff's Motion *in Limine* No. 3 to Exclude the Handwritten Statement of Ramon Martinez from Evidence.

On the morning of January 22, 2016, Plaintiff lodged a complaint about a racially offensive drawing his supervisor, coworker, and harasser, Ramon Martinez, left in Defendant Tesla's factory for Plaintiff to find. (Exh. 2 to Supp. Nunley Dec. at pp. 2-3) Following Plaintiff's complaint, Chartwell—Martinez's staffing agency—initiated an investigation at 11:26 PM. (*Id.* at p. 1) In the course of the investigation, Chartwell gave Martinez a questionnaire to complete. (Deposition of Veronica Martinez at 63:5-17, Exh. 10) Martinez completed the questionnaire while a Chartwell employee watched. (*Id.* at 85:22-86:9[3]) In the questionnaire, Martinez stated that he "never try to offend nobody" with the drawing and that he didn't "mean notihng bad" in creating the drawing. (Exh. 3 to Supp. Nunley Dec. at p. 1, *sic* original).

The handwritten questionnaire must be excluded from evidence at trial. It is inadmissible hearsay that does not fall within any established exception, and its limited probative value is

---

[3] The referenced deposition exhibit, No. 184, was marked "confidential" by Tesla while the deposition itself was not. Consistent with his obligations under the Stipulated Protective Order in

substantially outweighed by the risk of misleading the trier of fact.

### 1. Martinez's Statement is Inadmissible Hearsay.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Generally, hearsay is "not admissible." Fed. R. Evid. 802. Martinez's statement is inadmissible hearsay under the Rules. It is indisputably an out-of-court statement, made long before this litigation commenced. The statement would be offered to prove the truth of the matters asserted therein; namely, that Martinez had no negative intentions in creating the racist drawing. (Exh. 3 to Supp. Nunley Dec. at p. 1) As such, the statement is hearsay and thus inadmissible.

### 2. Martinez's Statement Does Not Qualify Under Any Hearsay Exceptions.

Hearsay evidence may be admissible where the Federal Rules of Evidence or a statute provide otherwise. Fed. R. Evid. 802. However, Martinez's statement does not fall under any established hearsay exception.

The document does not satisfy the requirements of Rule 803(3)'s exception for a "declarant's then existing state of mind." To be admissible under Rule 803(3), a court must evaluate "three factors: contemporaneousness, chance for reflection, and relevance." *U.S. v. Faust*, 850 F.2d 575, 586 (9th Cir. 1988). Where the declarant has the opportunity to "think long and hard" before drafting his statement, his "opportunity to reflect…weighs heavily against admission." (*Id*.) A written hearsay statement is properly denied admission under Rule 803(3) where the document in question is "not 'spontaneous'" but prepared with an eye towards escaping consequences. *Security Alarm Financing Enterprises, LP v. Alarm Protection Technology, LLC*, 743 Fed. Appx. 786, 788 (9th Cir. 2018) ("*Security Alarm*") (holding hearsay letters inadmissible where drafted with an eye towards escaping contractual liability). Here, Martinez's statement was drafted after the fact, during the pendency of an investigation where his drawing and his justification for creating it were being called into question. Facing possible discipline or termination, Martinez had <u>every</u> incentive to distort or obfuscate his reason for

this matter (Dkt. No. 50), Plaintiff has submitted the exhibit under seal as Exhibit 3 to the Supplemental Declaration of Cimone Nunley.

creating the drawing.

Though the statement may be relevant, the other factors weigh against its admission. The statement was not made contemporaneously, because Chartwell did not contact Martinez and initiate its investigation until 11 PM on January 22 (Exh. 2 to Supp. Nunley Dec. at p. 1)—hours after Martinez made the drawing. Once Chartwell initiated the investigation, Martinez was not spontaneously asked questions. Instead, Martinez was allowed time to review the questionnaire and hand-write his own answers in response. (V. Martinez Depo. at 63:5-17) Both the delay and the process of writing the responses provided ample opportunity for reflection and review. Martinez knew Chartwell was investigating his misconduct with respect to the drawing. He reasonably knew that Chartwell might discipline or even terminate him based on his answers, and thus had every incentive to craft his statement with an eye towards minimizing or avoiding culpability. His motive to evade accountability weighs against the statement's reliability. Because the statement was not contemporaneous, Martinez had ample opportunity to reflect before drafting it, and Martinez had motive to minimize his wrongdoing, the statement cannot be admitted under Rule 803(3).

The statement also fails to qualify for the "business records" exception of Rule 803(6). The rule is based in the "probability of trustworthiness of records because they [are] routine reflections of the day to day operations of the business". *Palmer v. Hoffman*, 318 U.S. 109, 113-114 (1943) (discussing basis for predecessor to Rule 803(6)). Under this exception, purported business records "are admissible only if the observer or participant in furnishing the information to be recorded was acting routinely, under a duty of accuracy, with employer reliance on the result, or…in the regular course of business." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) (citations omitted). Here, Martinez was not performing a routine activity in the course of his employment duties, but instead participating in a one-off investigation into his own misconduct. Martinez had no duty to accurately complete the questionnaire. In fact, he had every incentive to prevaricate or minimize his culpability for this harassing conduct. While Chartwell may have relied upon Martinez's representations, his statement was not made in the regular course of Chartwell's business as a staffing agency, but was instead a response to a complaint of

harassment. Because Martinez's statement was not a routine reflection of Chartwell's day-to-day business operations completed in the course of his normal job duties, it does not fall within this exception.

Nor does the statement meet the criteria for the "catchall" exception of Rule 807. "Rule 807 allows the admission of statements not specifically covered by hearsay exceptions if 'the statement has equivalent circumstantial guarantees of trustworthiness,' is material, is more probative than any other evidence, and admitting the evidence will serve the interests of justice." *Security Alarm*, *supra*, 743 Fed. Appx. At 788 (9th Cir. 2018), citing Fed. R. Evid. 807. As laid out above, the circumstances surrounding the document's creation weigh against its trustworthiness. Moreover, because Martinez cannot testify under the terms of the Court's October 3, 2019 Order (*See* Plaintiff's Motion in Limine No. 2), the trier of fact will be deprived of the opportunity to evaluate the veracity of Martinez's statements based on his live testimony—further reducing any guarantee of the document's trustworthiness.

The evidence might be relevant to Plaintiff Diaz's § 1981 claims, but it is not more probative than any other evidence. To the extent Martinez's statements had an effect on some other declarant-witness's state of mind, the witness in question could just as effectively testify about those statements (subject to hearsay and other evidentiary objections) and the effect the statements had on their decisions. Last, admitting this evidence does not serve the ends of justice because there are other avenues Defendant can pursue to present this information to the trier of fact. Because the evidence does not meet the criteria of Rule 807, it is inadmissible hearsay.

For these reasons, the Court should preclude Martinez's handwritten statement from being admitted into evidence.

### D. Plaintiff's Motion *in Limine* No. 4 to Exclude Evidence and Testimony Concerning the Relationship Between Plaintiff Owen Diaz and Rothaj Foster.

Tesla's pre-trial exhibit list includes numerous trial exhibits detailing the workplace relationship between Plaintiff Owen Diaz and a fellow Tesla worker named Rothaj Foster. (Exhs. 11-12; Exhs. 4-9 to Supp. Nunley Dec.) Foster was Plaintiff's African-American subordinate. (Diaz Depo. at 65:22-24, 93:8-20) After Foster disagreed with Plaintiff's work instructions,

Foster told Plaintiff, "'you better watch your car'" and conducted himself "in a threatening manner as if he wanted to fight with Owen. He also made a comment about shooting Owen." (Exh. 4 to Supp. Nunley Dec. at pp. 1-2) Plaintiff's supervisor investigated the complaint and corroborated Plaintiff's complaints about Foster's "threatening manner." (*Id*. at p. 2) Tesla ultimately removed Foster from the premises and terminated his assignment at the Tesla factory. (*Id*. at p. 1; Exh. 11 at p. 1)

Based on Tesla's inclusion of this evidence, Plaintiff anticipates that Tesla will seek to introduce evidence of Plaintiff's strained relationship with Foster. It is unclear why Tesla seeks to introduce this evidence—perhaps in an attempt to show that Plaintiff was a serial complainer; or that Plaintiff did not even get along with his African-American co-workers. There is no relevant justification for the admission of this evidence, as it does not tend to prove or disprove Plaintiff's claims that Tesla's Fremont facility was a racially hostile workplace, or Tesla's failure to address Plaintiff's complaints of a racially hostile work environment.

Introduction of this evidence serves only to disparage Plaintiff, and distract from the pertinent issues. It is not relevant to Plaintiff's remaining claims of racial harassment or Tesla's practices for responding to complaints of racial harassment. Plaintiff is not pursuing any claims that relate to his job performance or relationship with coworkers at trial.[4] Allowing evidence of this unrelated workplace relationship raises a substantial risk of unduly wasting time and confusing the issues before the jury.

1. **Evidence of Plaintiff's Workplace Relationship with Foster is Irrelevant.**

Only relevant information is admissible. Fed R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable," and where "the fact is of consequence in determining the action." Fed. R. Evid. 401(a) and (b). Irrelevant evidence is not admissible. Fed. R. Evid. 402.

---

[4] This Court previously dismissed Plaintiff's claims for wrongful termination and whistleblower retaliation, pursuant to stipulation between the parties. (Dkt. 176) Though Plaintiff's complaint includes theories under 42 U.S.C. § 1981 for discrimination, retaliation, constructive termination, and wrongful termination, Plaintiff will not proceed on these theories at trial and will not submit jury instructions or a verdict form that address these theories.

Plaintiff's sole remaining claims are for racial harassment and failure to prevent harassment under 42 U.S.C. § 1981, and negligent hiring and retention as to his harasser, Ramon Martinez. Plaintiff's workplace relationship with another co-worker has no bearing on the remaining claims. Plaintiff's rocky relationship with this co-worker did not arise from racial animus, but rather from threats of violence the co-worker made against Plaintiff—threats which *Tesla itself* corroborated. (Exh. 4 to Supp. Nunley Dec. at p. 2) Admitting evidence of corroborated threats of serious violence made by a co-worker serves no relevant purpose. This evidence does not tend to make it more or less likely that Plaintiff experienced racial harassment, or that Plaintiff's complaints were not adequately and appropriately addressed.

Plaintiff's bad relationship with Foster is irrelevant to any subject-matter in this case. Plaintiff's allegedly strained relationship with a co-worker would not excuse Tesla from its duty to maintain a workplace free of racial discrimination. To the extent that Tesla seeks to create distractions by introducing purported evidence of Plaintiff's unpopularity, or difficulties with co-workers wholly *unrelated to race,* the evidence is irrelevant and should be excluded.  Plaintiff's likeability is irrelevant to his right to a workplace free of racial hostility, and to the issue of whether Tesla took appropriate action to address a hostile workplace.

Likewise, Tesla's investigation and response to Plaintiff's complaints about Foster are irrelevant, because Plaintiff's complaints about Foster were not race related.  Plaintiff's lawsuit does not contend that Tesla failed to properly address workplace complaints *generally*. This lawsuit is about Tesla's specific failure to adequately respond to complaints of racial harassment in the workplace. Tesla's response to unrelated, race-neutral complaints is not probative of Plaintiff's *race-specific* complaints. Because this evidence is not probative of any fact at issue with respect to Plaintiff's remaining claims, it is not admissible.

2. **Any *De Minimis* Relevance of This Information is Substantially Outweighed by the Risk of Confusing the Issues and Wasting Undue Time**

Even relevant evidence may be excluded where its probative value is substantially outweighed by the risk of undue consumption of time or confusing the issues before the jury. Fed. R. Evid. 403. This is precisely the risk presented by the introduction of evidence concerning

Foster.

As noted above, evidence concerning Plaintiff's relationship with Foster is not relevant to any fact in dispute. However, it poses a substantial risk of confusing the issues before the jury. Tesla identifies *eight* exhibits associated with Foster, which implicate *seven* witnesses: Ed Romero, Wayne Jackson, Paul James, Erin Marconi, Victor Quintero, Monica De Leon, and Owen Diaz. The numerosity of both documents and the witnesses suggests that undue time and import will be attached to this ancillary matter.

Plaintiff anticipates that Tesla seeks to introduce this evidence as evidence of its responsiveness to Plaintiff's complaints. Introduction of the Foster issue for this purpose raises a substantial risk that the jury will conflate Tesla's response to racial complaints of workplace harassment with its response to non-racialized workplace disputes. Such a conflation would be confusing and wholly inappropriate, and evidence of Plaintiff's relationship with Foster should thus be excluded.

Likewise, the Court must exclude this evidence as unduly wasting time. The time spent in introducing eight documents and related witnesses with regard to irrelevant, tangential subject matter is simply not warranted. This combination will likely require at least an hour of questioning from Defendant alone, and an equal amount of time for Plaintiff to explore and rebut whatever inferences Tesla might attempt to draw. Accordingly, the Court should exclude documents, evidence, and testimony concerning the relationship between Plaintiff and Foster.

**E. Plaintiff's Motion *in Limine* No. 5 to Exclude Evidence and Testimony Concerning Plaintiff Owen Diaz's Work Performance.**

Throughout the course of discovery, Tesla and other defendants produced numerous documents discussing purported deficiencies in Plaintiff's work performance. These documents discuss a failure to wear safety shoes and glasses on a single occasion (Exhs. 10-12 to Supp. Nunley Dec.); the "bad impression" Plaintiff purportedly left on other employees (Exh. 13 to Supp. Nunley Dec.); an incident where Plaintiff inadvertently drove a forklift into a charger stand (Exh. 14 to Supp. Nunley Dec.), his alleged failure to fill out a form in a binder (Exh. 15 to Supp. Nunley Dec.), an incident where Plaintiff rode a bike in the Tesla warehouse (Exhs. 16-17

to Supp. Nunley Dec.), and Plaintiff's alleged "failure in adequately supervising his crew" (Exh. 18 at p. 1 to Supp. Nunley Dec.).[5]

Owen has dismissed his claims of discrimination, retaliation, constructive termination, and wrongful termination under 42 U.S.C. § 1981; claims under the Bane Act; whistleblower retaliation under § 1102.5 of the California Labor Code; negligent infliction of emotional distress; intentional infliction of emotional distress; and constructive discharge in violation of public policy claims before trial to narrow the issues placed before the trier of fact.[6] Though Plaintiff's Amended Complaint includes claims for discrimination, harassment, constructive discharge, and wrongful termination in violation of 42 U.S.C. § 1981, Plaintiff will not proceed under these theories at trial and only seeks to proceed on his claims for harassment and failure to prevent harassment under 42 U.S.C. § 1981.[7] Given the nature of the remaining claims, evidence of Owen's work performance is irrelevant to the ultimate question of whether Owen suffered racial harassment, thus requiring the exclusion of evidence regarding Owen's purported performance issues.

**1. Evidence of Owen's Work Performance is Irrelevant.**

Only relevant information is admissible. Fed R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable," and where "the fact is of consequence in determining the action." Fed. R. Evid. 401(a) and (b). Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence of Owen's work performance is precisely the type of irrelevant evidence that should be excluded under the Rules, because it has no bearing on any facts of consequence in the action, where the central issue is whether Owen was subjected to racial harassment while working at Tesla's facility. Owen's work performance does not tend to prove or disprove his complaints of racial harassment. Except to the extent that race was a factor in Owen's coworkers

---

[5] There is some documentary evidence which discusses Owen's alleged performance issues or disagreements with relation to individuals who racially harassed him. Plaintiffs concede this evidence may have some limited relevance and do not seek to exclude it *in limine*.

[6] The Court approved a stipulation dismissing these claims on April 1, 2020. (Dkt. No. 176) The Court previously dismissed Plaintiffs' Unruh Act claims. (Dkt. 144 at 12:16-22)

[7] As noted above, Plaintiff has only submitted jury instructions and a verdict form addressing claims of harassment and failure to prevent harassment.

not getting along with him, introducing evidence of alleged friction with other employees does not serve any relevant purpose. Likewise, Owen's purported work performance does not tend to prove or disprove any element of Owen's claims. This evidence is thus irrelevant and must be excluded.

Nor is evidence of Owen's work performance relevant for the alternative purpose of demonstrating bias or motive. There is no factual basis for a claim that Owen has any bias or negative motive towards Tesla because of his alleged failure to wear safety glasses on one occasion or the fact that his co-workers allegedly complained about his attitude. Moreover, it does not logically follow that an employee with a poor performance record would have any bias or negative motive towards his former employer. Any such connection would be wholly speculative on Tesla's part, and mere speculation does not transform irrelevant evidence into admissible evidence. Accordingly, the evidence must be excluded.

**2.   The Minimal Probative Value of Plaintiff Owen Diaz's Work Performance is Substantially Outweighed by Its Prejudicial Effect.**

Under Rule 403, the Court has discretion to exclude evidence where its probative value is substantially outweighed by the risk of undue prejudice, confusing the issues, misleading the jury, or wasting time. This is precisely the danger presented here. As laid out above, Owen's work performance has no probative value to any fact at issue in this case. In contrast, there is a substantial risk of undue prejudice in the form of an unjust inference of poor character, arising from unsupported claims that Owen allegedly did not get along with some coworkers, or failed to wear his safety shoes on one occasion. Alternately, it allows for the baseless inference that Owen harbors bias against Tesla simply because Tesla documented a few minor alleged performance issues. To allow the introduction of this irrelevant information, which invites unjustified leaps of logic, would be wholly unjustified and manifestly unfair to Owen, because his work performance has no bearing on his credibility. Because this risk of unfair prejudice substantially outweighs the minimal probative value of this evidence, it must be excluded.

**F.   Plaintiff's Motion *in Limine* No. 6 to Exclude Evidence and Testimony Concerning Demetric Di-az's Criminal History.**

Over one month after the close of discovery, on November 14, 2019, Defendant Tesla produced documents related to witness Demetric Di-az's arrest and charges for felony robbery. (Exh 13; Exh. 14 at p. 1) The documents pertain to charges that Demetric robbed a Domino's Pizza franchise in December 2018. (Exh. 13 at p. 1) Demetric was charged with three counts of second-degree robbery with a firearm enhancement, three counts of assault with a semiautomatic firearm, and one probation violation in California state court. (Exh. 13 at pp. 1-4) At trial, Plaintiff anticipates Tesla will attempt to introduce evidence of Demetric's criminal history to impugn his character, impeach his credibility, and proffer another justification for Owen's emotional distress to reduce Tesla's own liability. The evidence should be excluded because it does not qualify as impeachment evidence under Rule 609, is improper character evidence under Rule 404, and its limited relevance is substantially outweighed by the risk of unfair prejudice to Plaintiff Owen Diaz.

**1.   Evidence of Demetric's Criminal Charges is Inadmissible Under Rule 609.**

Under FRE 609, evidence of prior criminal convictions may be admissible for impeachment purposes in limited circumstances. The charges of robbery do not meet the criteria for admissibility under the Rule. A charge of robbery is only admissible where the individual has been convicted and sentenced. *Beasley v. U.S.*, 218 F.2d 366, 368-9 (D.C. Cir. 1954). Demetric has not yet been sentenced. Because Demetric has not yet been sentenced, the charges do not qualify as a "conviction" within the meaning of Rule 609. Because Demetric has not yet been convicted within the meaning of Rule 609, evidence of the robbery charges is not admissible.

**2.   Evidence of Demetric's Criminal Charges is Not Admissible Under Rules 404 or 608.**

Rule 404(b) provides that evidence of prior crimes or bad acts may be admissible in limited circumstances. Under this Rule, evidence of crimes or other bad acts are admissible, where relevant to the issues in the litigation, "'except where [they] tend[] to prove only criminal disposition.'" *U.S. v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir. 1978) (citation omitted). Theft charges are not relevant to civil rights claims. *Seals v. Mitchell*, 2011 WL 1399245 at *3 (N.D. Cal. 2011). Demetric is a witness in his father Plaintiff Owen Diaz's suit involving civil rights

claims. The unrelated theft charges cannot be said to be relevant to Plaintiff's civil rights claims, given that it did not even occur while Plaintiff worked at Tesla, and they have minimal probative value with respect to his son Demetric's character for truthfulness. They may be introduced to serve as evidence of Demetric's criminal disposition and bad character—two purposes expressly restricted under Rule 404. Likewise, the evidence is inadmissible under Rule 608, because it is not probative of Demetric's credibility: theft charges have "minimal probative value" with respect to a witness's character for truthfulness. *Arevalo v. Chipotle Servs., LLC*, 2016 WL 7045606 at *4 (C.D. Cal. Marc. 7, 2016). The only remaining issue for which they could be tangentially relevant is to proffer an alternative source of emotional distress for Owen, thereby reducing Tesla's liability for his emotional distress.

While this may have some minimal relevance, the analysis under Rules 404(b) and 608 does not culminate with a finding of relevance. Relevant evidence under these Rules is still subject to the balancing test of Rule 403, and "the trial court must balance the probative value of the evidence against the possibility that the jury would be prejudiced against the defendant because of his participation in other criminal conduct." *U.S. v. Young*, 573 F.2d 1137, 1140 (9th Cir. 1978). Here, the balancing test weighs against the admission of this evidence, particularly because Demetric is no longer a party and is only a witness to the racially harassing conduct Plaintiff experienced.

### 3.   The Probative Value of the Charges is Substantially Outweighed by Their Prejudicial Effect.

Under Rule 403, otherwise relevant evidence may be excluded where its probative value is substantially outweighed by the risk of unfair prejudice to a party. "[T]he Ninth Circuit, the Supreme Court, and the Federal Rules of Evidence all conclude that the" risk a jury will decide the case "for [criminal] conduct other than that which is before the court—or simply...because a bad person deserves punishment—creates a prejudical effect that outweighs its relevance." *Velasquez v. City of Santa Clara*, 2014 WL 3773001 at *8 (N.D. Ca. July 31, 2014), *citing Old Chief v. U.S.*, 519 U.S. 172, 181 (1997). This is precisely the risk presented here. Demetric's theft charges are remote in time from his employment with Tesla, minimally probative of his

character for truthfulness, and tangentially relevant to his father's claims of emotional distress. This minimal probative value is vastly outweighed by the risk of undue prejudice to Plaintiff Owen Diaz's civil rights claims: If the jury hears about Demetric's theft charges, they may be misled into believing Demetric is a generally bad or criminal actor with a propensity for untruthfulness—even though a theft charge is not probative of his character for veracity. There is also a substantial risk that the jury will be unduly prejudiced against Plaintiff Owen Diaz, because the presentation of evidence that implies Plaintiff's son is a criminal could mislead the jury to improperly conclude Plaintiff is associated with criminal conduct, or that Plaintiff is a bad father because he allowed his son to engage in criminal conduct. This prejudice is unwarranted, because Plaintiff's son's criminal conduct has no bearing on Plaintiff's personal character, and Plaintiff's fathering skills are irrelevant to the resolution of this action. Such undue prejudice substantially outweighs any minimally probative value that the theft charges, incurred years after the end of Demetric's employment with Tesla, may carry.

The risk of such prejudice is doubled for African-American men like Plaintiff and Demetric, who are already stereotyped as criminally dishonest in popular media and wider society simply because of the color of their skin. Because the risk of prejudice substantially outweighs the probative value of the evidence, the Court should exclude all reference to Demetric's criminal charges.

In the alternative, if the Court finds the probative value of this evidence to Owen's emotional distress claims is not substantially outweighed by its prejudicial effect, the Court should limit the scope of admissible evidence and testimony to minimize the risk of unfair prejudice. Limiting the scope of admissible evidence to a statement that Demetric was charged with and arrested for a crime would strike an appropriate balance: it allows Tesla the opportunity to discuss the emotional impact on Owen, but mitigates the risk of prejudice to Owen and Demetric that will arise if the jury is permitted to hear all the lurid details of the arrest and charges. Barring testimony or evidence regarding the details of the crime is appropriate, because the nature of the crime does not have any demonstrable bearing on Owen's emotional distress (especially given that Owen did not participate in or witness the crime).

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs request the Court enter an *in limine* order excluding the aforementioned matters from evidence, and requiring each party to inform his or her witnesses and counsel of the same.

CALIFORNIA CIVIL RIGHTS LAW GROUP

DATED:  April 20, 2020           By:

Lawrence A. Organ, Esq.
Navruz Organ, Esq.
Cimone A. Nunley, Esq.
J. Bernard Alexander, Esq.
Attorneys for Plaintiff
OWEN DIAZ