1  LAWRENCE A. ORGAN (SBN 175503)
   larry@civilrightsca.com
2  NAVRUZ AVLONI (SBN 279556)
   navruz@civilrightsca.com
3  CIMONE A. NUNLEY (SBN 326915)
   cimone@civilrightsca.com
4  **CALIFORNIA CIVIL RIGHTS LAW**
   **GROUP**
5  332 San Anselmo Avenue
6  San Anselmo, California 94960
   Telephone:    (415)-453-7352
7  Facsimile:    (415)-785-7352

8  J. BERNARD ALEXANDER (SBN 128307)
   **ALEXANDER KRAKOW + GLICK LLP**
9  1900 Avenue of the Stars, Suite 900
10 Los Angeles, California 90067
   Telephone:    (310) 394-0888
11 Facsimile:    (310) 394-0811

12 Attorneys for Plaintiffs,
13 OWEN DIAZ

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
TRACEY A. KENNEDY (SBN 150782)
NAMAL TANTULA (SBN 247373)
BRETT YOUNG (SBN 305657)
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
T: 213.620.1780 | F: 213.620.1398
tkennedy@sheppardmullin.com
ntantula@sheppardmullin.com
byoung@sheppardmullin.com

PATRICIA M. JENG (SBN 272262)
SUSAN HAINES (SBN 224611)
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
T: 415.434.9100 | F: 415.434.3947
pjeng@sheppardmullin.com
shaines@sheppardmullin.com

Attorneys for Defendant,
TESLA, INC. dba TESLA MOTORS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DEMETRIC DI-AZ, OWEN DIAZ, and
LAMAR PATTERSON,

      Plaintiffs,

    v.

TESLA, INC. dba TESLA MOTORS, INC.;
CITISTAFF SOLUTIONS, INC.; WEST
VALLEY STAFFING GROUP;
CHARTWELL STAFFING SERVICES, INC.;
and DOES 1-50, inclusive,

      Defendants.

Case No. 3:17-cv-06748-WHO

**PARTIES' PROPOSED JURY**
**INSTRUCTIONS AND VERDICT FORMS**

Pretrial Conference Date: May 11, 2020
Time: 10:00 a.m.

Trial Date: June 8, 2020
Complaint filed: October 16, 2017

Plaintiff Owen Diaz and Defendant Tesla Inc. request the following jury instructions be given to the jury in this matter.

SMRH:4812-6343-6987.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## LIST OF INSTRUCTIONS

### 9TH CIRCUIT MODEL INSTRUCTIONS

1. **Instructions on the Trial Process** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

1.3 Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1.4 Duty of Jury (Court Reads and Provides Written Instructions at End of Case) . . . 9

1.5 Claims and Defenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1.6 Burden of Proof—Preponderance of the Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . 11

1.9 What Is Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1.10 What Is Not Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

1.11 Evidence for Limited Purpose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

1.12 Direct and Circumstantial Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

1.13 Ruling on Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1.14 Credibility of Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

1.15 Conduct of the Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

1.16 Publicity During Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1.17 No Transcript Available to Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1.18 Taking Notes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

1.19 Questions to Witnesses by Jurors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

1.20 Bench Conferences and Recesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

1.21 Outline of Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

2. **Instructions on Types of Evidence** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2.1 Stipulated Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.2 Stipulations of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.3 Judicial Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

2.4 Deposition in Lieu of Live Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . 20

2.9 Impeachment Evidence—Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2.11 Use of Interrogatories . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

2.12 Use of Requests for Admission. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

2.13 Expert Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

2.14 Charts and Summaries Not Received in Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

2.15 Charts and Summaries in Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**3. <u>Instructions Concerning Deliberations</u>** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3.1 Duty to Deliberate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

3.2 Consideration of Evidence—Conduct of the Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

3.3 Communication with Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

3.4 Readback or Playback. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

3.5 Return of Verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

3.6 Additional Instructions of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

3.7 Deadlocked Jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

3.8 Continuing Deliberations after Juror Is Discharged . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

**4. <u>Agency</u>** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Introductory Comment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4.1 Corporations and Partnerships—Fair Treatment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

4.2 Liability of Corporations—Scope of Authority Not in Issue . . . . . . . . . . . . . . . . . . . . . . .27

4.4 Agent and Principal—Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

4.5 Agent—Scope of Authority Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

4.6 Apparent Agency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

4.7 Ratification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

4.8 Act of Agent Is Act of Principal—Scope of Authority Not in Issue. . . . . . . . . . . . . . . . . . . . . . . . . .28

4.13 Adverse Interest Exception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      Plaintiff's Objection to Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

4.14 Independent Contractor – Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      Plaintiff's Objection to Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

5. **Damages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5.1 Damages—Proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

5.3 Damages—Mitigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

5.5 Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

5.6 Nominal Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

10. **Civil Rights**—Title VII—Employment Discrimination; Harassment; Retaliation. . . . . . . . . . . . . .33

Introductory Comment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

10.5 Civil Rights—Title VII—Hostile Work Environment—Harassment Because
of Protected Characteristics—Elements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

10.6 Civil Rights—Title VII—Hostile Work Environment Caused by Supervisor—Claim Based on
Vicarious Liability – Tangible Employment Action – Affirmative Defense . . . . . . . . . . . . . . . . . . . . .35

      Defendant's Alternative Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

10.7 Civil Rights—Title VII—Hostile Work Environment Caused by Non-
Immediate Supervisor or by Co-worker—Claim Based on Negligence . . . . . . . . . . . . . . . . . . . . . . . 40

**ADDITIONAL INSTRUCTIONS**

**PLAINTIFF'S INSTRUCTION NO. 1:     PLAINTIFFS CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . .43

**PLAINTIFF'S NO. 2 – SEVERE OR PERVASIVE EXPLAINED** . . . . . . . . . . . . . . . . . . . . . . . 43

      Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

      Defendant's Alternative Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .47

1

2

Plaintiff's Objection to Defendant's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**PLAINTIFF'S NO. 3:  HARASSING CONDUCT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

3

4

Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

5

Defendant's Alternative Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .49

6

Plaintiff's Position as to Defendant's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . .49

7

8

**PLAINTIFF'S NO. 4:  EMPLOYER'S DUTY TO INVESTIGATE AND TAKE REMEDIAL**

9

**ACTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

10

**PLAINTIFF'S NO. 5 – FAILURE TO PREVENT HARASSMENT** . . . . . . . . . . . . . . . . . . . . . . . . 50

11

12

Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

13

Defendant's Alternative Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

14

Plaintiff's Objection to Defendant's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

15

**PLAINTIFF'S NO. 6 – NEGLIGENT SUPERVISION AND RETENTION OF AN EMPLOYEE.** .

16

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .56

Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

17

Defendant's Alternative Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .53

18

19

Plaintiff's Objection to Defendant's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

20

**CACI 430. CAUSATION: SUBSTANTIAL FACTOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

21

**PLAINTIFF'S NO. 7:  LIABILITY OF CORPORATIONS-SCOPE OF EMPLOYMENT** . . . . . .55

22

Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

23

24

**PLAINTIFF'S NO. 8 – JOINT EMPLOYER LIABILITY DEFINED** . . . . . . . . . . . . . . . . . . . . . . 55

25

Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

26

Defendant's Alternative Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .56

27

Plaintiff's Objection to Defendant's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S NO. 9:  EMPLOYER LIABILITY FOR CONDUCT BY NON-EMPLOYEES** . . .57

    Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

**PLAINTIFF'S NO. 10 – LIABILITY FOR CIVIL RIGHTS VIOLATIONS BASED ON CONTRACTUAL RELATIONSHIP**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

    Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

**PLAINTIFF'S NO. 11:  CRITERIA FOR DETERMINING WHETHER HARASSER IS "SUPERVISOR"** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

    Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

    Defendant's Alternative Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .60

    Plaintiff's Objection to Defendant's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . 60

**PLAINTIFF'S NO. 12 – WITNESSES DESIGNATED AS "PERSONS MOST KNOWLEDGEABLE"** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

    Defendant's Objection to Plaintiff's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

    Defendant's Alternative Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .61

    Plaintiff's Objection to Defendant's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . 61

**DEFENDANT'S NO. 1:  PRESUMPTIVE EMPLOYER IS EMPLOYER ON W-2 FORM**

    Plaintiff's Objection to Defendant's Proposed Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . 61

**<u>VERDICT FORMS</u>**

**PLAINTIFF'S PROPOSED VERDICT FORM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .63

    Defendant's Objection to Plaintiff's Proposed Verdict Form . . . . . . . . . . . . . . . . . . . . . . . . . 66

**DEFENDANT'S PROPOSED VERDICT FORM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

    Plaintiff's Objection to Defendant's Proposed Verdict Form . . . . . . . . . . . . . . . . . . . . . . . . . 74

Case No. 3:17-cv-06748-WHO
JURY INSTRUCTIONS AND VERDICT FORMS

**1.3 DUTY OF JURY (COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**Comment**

This instruction may be used as an oral instruction if the court elects to read its preliminary instructions to the jury but not to provide the jury with a copy of the instructions.

**1.4 DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Comment**
This instruction should be used with the written final set of the instructions to be sent to the jury. Bracketed material should be selected to cover whether single or multiple sets of written instructions are provided.

**1.5 CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff Owen Diaz claims that while working at the Tesla factory in Fremont, California, he was subjected to a hostile work environment based on his race being African American or Black. In addition, Mr. Diaz claims that Tesla, Inc. failed to take all reasonable steps to prevent race-based harassment towards him, including use of the N-word, and failed to adequately remedy the harassment after Tesla received notice of it. Mr. Diaz also claims that Tesla, Inc. negligently retained factory workers and supervisors who engaged in harassing conduct towards him. The plaintiff Owen Diaz has the burden of proving these claims by a preponderance of the evidence.

The defendant Tesla, Inc., doing business as Tesla Motors, Inc., denies these claims. Tesla denies that Mr. Diaz was subjected to a hostile work environment based on his race and denies that it failed to take all reasonable steps to prevent race based harassment in the workplace. Tesla also denies that it negligently hired, retained or supervised factory workers, employees or contractors who Mr. Diaz claims engaged in race based harassing conduct toward him.

**1.6 BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**1.9 WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I [may instruct] [have instructed] you to accept as proved.

SMRH:4812-6343-6987.1

**1.10 WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**1.11 EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]

**1.12 DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**Comment**

It may be helpful to include an illustrative example in the instruction: By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

**1.13 RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the

question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

## 1.14 CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other

hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**1.15 CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly

SMRH:4812-6343-6987.1

may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

## 1.16 PUBLICITY DURING TRIAL

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or

commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**1.17 NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

**Comment**
The court may wish to modify this instruction for use at the end of the trial.

**1.18 TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.
Whether or not you take notes, you should rely on your own memory of the evidence.
Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**1.19 QUESTIONS TO WITNESSES BY JURORS DURING TRIAL**

You will be allowed to proposed written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question, on a form provided by the court. Do not sign the question. I will review the questions with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case, If I do not ask a proposed question or if I rephrase it, do not speculate as to the reasons, Do not give undue weight to question you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggest that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

**1.20 BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

SMRH:4812-6343-6987.1

**1.21 OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**2.1 STIPULATED TESTIMONY**

The parties have agreed what [*witness*]'s testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court.

**2.2 STIPULATIONS OF FACT**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

**2.3 JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [*state fact*]. You must accept this fact as true.

## 2.4 DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of KEVIN MCGINN was taken on June 17, 2019. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

## 2.9 IMPEACHMENT EVIDENCE—WITNESS

The evidence that a witness *[e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.]* may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

## 2.11 USE OF INTERROGATORIES

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**2.12 USE OF REQUESTS FOR ADMISSION**

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**2.13 EXPERT OPINION**

You [have heard] [are about to hear] testimony from Anthony Reading, Amy Oppenheimer and Charles Mahla who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**2.14 CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**2.15 CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or

other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## 3.1 DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## 3.2 CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with  it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family

members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

**3.3 COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**3.4 READBACK OR PLAYBACK**

Because a request has been made for a [readback] [playback] of the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above.

SMRH:4812-6343-6987.1

**3.5 RETURN OF VERDICT**

A verdict form has been prepared for you. The verdict form asks you questions that will become your verdict.  You must answer each question unanimously.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk][bailiff] that you are ready to return to the courtroom.

**3.6 ADDITIONAL INSTRUCTIONS OF LAW**

At this point I will give you an additional instruction. By giving an additional instruction at this time, I do not mean to emphasize this instruction over any other instruction. You are not to attach undue importance to the fact that this instruction was read separately to you. You must consider this instruction together with all of the other instructions that were given to you.

[*Insert text of new instruction.*]

You will now retire to the jury room and continue your deliberations.

**3.7 DEADLOCKED JURY**

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors. During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now return to the jury room and continue your deliberations.

## 3.8 CONTINUING DELIBERATIONS AFTER JUROR IS DISCHARGED

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors. Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating. All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

## 4.1 CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**4.2 LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**4.4 AGENT AND PRINCIPAL—DEFINITION**

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. One may be an agent without receiving compensation for services. The agency agreement may be oral or written.

**4.5 AGENT—SCOPE OF AUTHORITY DEFINED**

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

**4.6 APPARENT AGENCY**

If Tesla has intentionally or unintentionally caused the plaintiff to believe that NextSource or Citistaff or Chartwell was the principal's agent, a relationship known as "apparent agency" may be created, even if no actual authority was ever given to the agent. Apparent agency, however, can never arise solely from the acts of the alleged agent.

In order to establish apparent agency, the plaintiff must prove that:

1.     The alleged principal caused, by representation or action, the plaintiff to believe that NextSource,  Citistaff or Chartwell was the principal's agent;

2.     The plaintiff relied on this representation or action to his detriment; and

3.     Such reliance was reasonably justified.

If an apparent agency has been established, the principal is liable for the acts of the apparent agent just as if the principal had authorized the agent from the outset.

## 4.7 RATIFICATION

A purported principal who ratifies the acts of someone who was purporting to act as the principal's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

**Authority**

*See United States v. Alaska S. S. Co.*, 491 F.2d 1147, 1155 (9th Cir. 1974) ("Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."); *Witt v. United States*, 319 F.2d 704, 710 (9th Cir. 1963) ("The doctrine of ratification has as its foundation, knowledge of all the facts.") (citation and quotation marks omitted).

An employer may be liable for third-party harassment of its employees if it ratifies or condones the conduct, including by failure to investigate or take remedial action, even where the employer has no discriminatory animus itself. Cal. Gov't Code §12940(j)(1); *Galdamez v. Potter*, 415 F.3d 1015, 1023-1025 (9th Cir. 2005) (Title VII case).

## 4.8 ACT OF AGENT IS ACT OF PRINCIPAL—SCOPE OF AUTHORITY NOT IN ISSUE

Any act or omission of an agent within the scope of authority is the act or omission of the principal.

## 4.13 ADVERSE INTEREST EXCEPTION

If you find that Ramon Martinez was acting solely for his own purposes or those of a third party, then Ramon Martinez's acts or omissions are not considered the acts or omissions of Tesla.  However, if you find that Owen Diaz dealt with Ramon Martinez in good faith and did not know or have reason to

know that Ramon Martinez was acting against the interests of Tesla, then you may find Tesla liable if you find that Ramon Martinez acted within his authority.

However, if you find that Tesla ratified or knowingly received a benefit from the acts or omissions of Ramon Martinez, then you may find Tesla liable if you that Ramon Martinez acted within his authority.

[However, if you find that Ramon Martinez was the sole representative or officer in charge of Tesla, then you may find Tesla liable if you find that Ramon Martinez acted within his authority.]


**PLAINTIFF OBJECTS TO THIS INSTRUCTION:**

This instruction is confusing and does not pertain to the law or facts of this case.  The Jury could be misled to believe that the employer had no duty to address or correct Ramon Martinez conduct because he was acting solely for his own purposes, without regard to Tesla's duty to protect the workplace from harassment and discrimination.  This instruction is not tailored to the facts of this case nor does it address the legal basis for liability against Tesla for Ramon Martinez's acts which occurred inside the workplace.


**4.14   INDEPENDENT CONTRACTOR - DEFINITION**

An independent contractor is a person who performs the services of another person under an express or implied agreement and who is not subject to the other's control of, or right to control, the manner and means of performing the services.

One who engages an independent contractor is not liable to others for the acts or omissions of the independent contractor.


**PLAINTIFF OBJECTS TO THIS INSTRUCTION:**

This instruction is confusing and does not pertain to the law or facts of this case.  The Jury could be misled by this instruction as to the employment status of Mr. Diaz and Mr. Martinez.  They are either contractors or employees and there is no evidence to support giving this instruction..

**5.1 DAMAGES—PROOF (Includes 5.2)**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

fairly compensate the plaintiff for any injury you find was caused by the defendant. You should preponderance of the evidence. Damages means the amount of money that will reasonably and determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. If you find for the plaintiff on any of plaintiff's claims, you must consider the following:

In determining the measure of damages, you should consider:

The nature and extent of the injuries;

The loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

The mental or emotional pain and suffering experienced and that with

reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services that with

reasonable probability will be required in the future;

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**5.3 DAMAGES—MITIGATION**

Mr. Diaz  has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

Tesla  has the burden of proving by a preponderance of the evidence:

1. that Mr. Diaz  failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.

**5.5 PUNITIVE DAMAGES**

If you find for Mr. Diaz,  you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish Tesla  and to deter similar acts in the future. Punitive damages may not be awarded to compensate Mr. Diaz.

Mr. Diaz has the burden of proving by a preponderance of the evidence that punitive damages should be awarded on his hostile work environment based on race or his failure to prevent harassment based on race claims and, if so, the amount of any such damages.

You may award punitive damages only if you find that Tesla's conduct that harmed Mr. Diaz was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of Mr. Diaz's  rights if, under the circumstances, it reflects complete indifference to Mr. Diaz's safety or rights, or if Tesla acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

Punitive damages may be awarded even if you award plaintiff only nominal, and not compensatory, damages.

**5.6 NOMINAL DAMAGES**

The law that applies to this case authorizes an award of nominal damages. If you find for Owen Diaz but you find that Mr. Diaz failed to prove damage as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

**10. CIVIL RIGHTS—TITLE VII—EMPLOYMENT DISCRIMINATION; HARASSMENT; RETALIATION**

**Instruction**

Introductory Comment

10.1 Civil Rights—Title VII—Disparate Treatment—When Evidence Supports "Sole Reason" or "Motivating Factor"

10.2 Civil Rights—Title VII—Disparate Treatment—"Sole Reason"—Elements and Burden of Proof

10.3 Civil Rights—Title VII—Disparate Treatment—"Motivating Factor"—Elements and Burden of Proof

10.4 Civil Rights—Title VII—Hostile Work Environment—Harassment

10.5 Civil Rights—Title VII—Hostile Work Environment—Harassment Because of Protected Characteristics—Elements

10.6 Civil Rights—Title VII—Hostile Work Environment Caused by Supervisor—Claim Based on Vicarious Liability—Tangible Employment Action—Affirmative Defense

10.7 Civil Rights—Title VII—Hostile Work Environment Caused by Non-Immediate Supervisor or by Co-Worker—Claim Based on Negligence

10.8 Civil Rights—Title VII—Retaliation—Elements and Burden of Proof

10.9 Civil Rights—Title VII—"Adverse Employment Action" Defined

10.10 Civil Rights—Title VII—"Adverse Employment Action" in Retaliation Cases.

10.11 Civil Rights—Title VII—"Adverse Employment Action" in Disparate Treatment Cases

10.12 Civil Rights—Title VII—"Tangible Employment Action" Defined

10.13 Civil Rights—Title VII—"Constructive Discharge" Defined

10.14 Civil Rights—Title VII—Defense—Bona Fide Occupational Qualification

10.15 Civil Rights—Title VII—Defense—Bona Fide Seniority System

10.16 Civil Rights—Title VII—Defense—After-Acquired Evidence

_____

**10.5 CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT—HARASSMENT BECAUSE OF PROTECTED CHARACTERISTICS—ELEMENTS**

The plaintiff seeks damages against the defendant for a racially hostile work environment while employed by the defendant. In order to establish a racially hostile work environment, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. the plaintiff was subjected to slurs, insults, jokes or other verbal comments or physical contact or intimidation of a racial nature;

2. the conduct was unwelcome;

3. the conduct was sufficiently severe or pervasive to alter the conditions of the

plaintiff's employment and create a racially abusive or hostile work environment;

4. the plaintiff perceived the working environment to be abusive or hostile; and

5. a reasonable African American man in the plaintiff's circumstances would consider the working environment to be abusive or hostile.

Whether the environment constituted a racially hostile work environment is determined by looking at the totality of the circumstances, including the frequency of the harassing conduct, the severity of the conduct, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance.

**Comment**

The elements of this instruction are derived from *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th Cir. 1995). The language in the instruction regarding the factors used to determine whether a working environment was sufficiently hostile or abusive is derived from *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

This instruction should be given in conjunction with other appropriate instructions, including Instructions 10.6 (Civil Rights—Title VII—Hostile Work Environment Caused by Supervisor—Claim Based on Vicarious Liability—Tangible Employment Action—Affirmative Defense); 10.7 (Civil Rights—Title VII—Hostile Work Environment Caused by Non-Immediate Supervisor or by Co-Worker—Claim Based On Negligence); and, if necessary, 10.12 (Civil Rights—Title VII—"Tangible Employment Action" Defined).

When an affirmative defense is asserted, this instruction should be accompanied by the appropriate affirmative defense instruction.

"A plaintiff must show that the work environment was both subjectively and objectively hostile." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004); *see also Fuller*, 47 F.3d at 1527 (citing *Harris*, 510 U.S. at 21-22). For the objective element, the Ninth Circuit has adopted the "reasonable victim" standard. *Ellison v. Brady*, 924 F.2d 872, 878-80 (9th Cir. 1991). Therefore, if the plaintiff/victim is a woman, element five of the instruction should state "reasonable woman," and if the plaintiff/victim is a man, "reasonable man." *Ellison*, 924 F.2d at 879, n.11; *see also Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th Cir. 2017) (conducting objective inquiry from perspective of reasonable member of applicable ethnic group); *Fuller v. Idaho Dept. of Corr.*, 865 F.3d 1154, 1158 (9th Cir. 2017) (holding that because women are disproportionately victims of rape and sexual assault, "a jury armed with common sense and an appropriate sensitivity to social context could reasonably conclude that the actions of [a female plaintiff's supervisor, siding with the alleged male rapist over plaintiff,] were because of her sex").
*Revised Sept. 2017*

Additional Authority:

"By considering both the existence and the severity of discrimination from the perspective of a reasonable person of the plaintiff's race, we recognize forms of discrimination that are real and hurtful, and yet may be overlooked if considered solely from the perspective of an adjudicator belonging to a different group than the plaintiff." *McGinest v. GTE Service Corp.* 360 F.3d 1103, 1116 (9th Cir. 2004).

**10.6 CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT CAUSED BY SUPERVISOR—CLAIM BASED ON VICARIOUS LIABILITY—TANGIBLE EMPLOYMENT ACTION—AFFIRMATIVE DEFENSE**

An employer may be liable when an employee's supervisor creates a racially hostile work environment for that employee. A "supervisor" is someone who is empowered by the employer to take tangible employment actions regarding the employee, such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, or significantly changing benefits.

Plaintiff Owen Diaz claims that he was subjected to a racially hostile work environment by Tesla, Inc., and that Ramon Martinez was his supervisor empowered by Tesla, Inc. to take tangible employment actions against the plaintiff Owen Diaz.

The defendant denies the plaintiff's claim. The plaintiff must prove his claim by a preponderance of the evidence.

**Comment**

*See* Introductory Comment to this chapter. This instruction should be given in conjunction with Instruction 10.5 (Civil Rights—Title VII—Hostile Work Environment—Harassment Because of Protected Characteristics—Elements) and, if applicable, Instruction 10.12 (Civil Rights—Title VII—Tangible Employment Action Defined). When an affirmative defense is asserted, this instruction should be accompanied by the appropriate affirmative defense instruction.

This instruction is based on *Vance v. Ball State University,* 133 S. Ct. 2434 (2013), *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998), *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998), and *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001).

This instruction addresses harassment by a plaintiff's supervisor. Use the first two paragraphs if no *Ellerth/Faragher* affirmative defense is applicable. Use the entire instruction if an *Ellerth/Faragher* defense is to be considered by the jury.

When harassment is by the plaintiff's supervisor, an employer is vicariously liable, subject to a potential affirmative defense. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). For vicarious liability to attach the supervisor must be empowered by the employer "to take tangible employment actions against the [plaintiff], *i.e.*, to effect a 'significant change

in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* at 2443 (quoting *Ellerth*, 524 U.S. at 761); *see also Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 698 (9th Cir. 2017) (finding employee was not a supervisor, although he "had the authority to direct the work of other [employees] and tell them which tasks to perform," because he "did not have hiring, firing, or disciplinary authority").

*Id.* An employee who contends that he or she submitted to a supervisor's threat to condition continued employment on participation in unwanted sexual activity alleges a tangible employment action, which, if proved, deprives the employer of an *Ellerth/Faragher* defense. *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1173 (9th Cir. 2003) (affirming summary judgment for the employer due to insufficient evidence of any such condition imposed by plaintiff's supervisor). *See Penn. State Police v. Suders*, 542 U.S. 129, 137-38 (2004), for discussion of tangible employment action.

The adequacy of an employer's anti-harassment policy may depend on the scope of its dissemination and the relationship between the person designated to receive employee complaints and the alleged harasser. *See, e.g., Faragher*, 524 U.S. at 808 (holding policy ineffective when (1) the policy was not widely disseminated to all branches of the municipal employer and (2) the policy did not include any mechanism by which an employee could bypass the harassing supervisor when lodging a complaint).

"While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

Although proof that the plaintiff failed to use reasonable care in avoiding harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the defendant, a demonstration of such failure will normally suffice to satisfy this prong. *See Faragher,* 524 U.S. at 807-08*; Ellerth*, 524 U.S. at 765.

If the harasser is not the plaintiff's supervisor, an employer's liability can only be based on negligence. The *Ellerth/Faragher* affirmative defense is not applicable if the claim is based on negligence. *See* Instruction 10.7 (Civil Rights—Title VII—Hostile Work Environment Caused by Non-Immediate Supervisor or by Co-Worker—Claim Based on Negligence).

**TESLA'S PROPOSED INSTRUCTION 10.2B**

### 10.2B CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT CAUSED BY SUPERVISOR—CLAIM BASED UPON VICARIOUS LIABILITY—TANGIBLE EMPLOYMENT ACTION—AFFIRMATIVE DEFENSE

An employer may be liable when a supervisor with immediate or successively higher authority over the employee creates a racially hostile work environment for that employee.

Owen Diaz claims that he was subjected to a racially hostile work environment by Ramon Martinez, who was his immediate supervisor or a person with successively higher authority over him.

Tesla denies these claims. Mr. Diaz must prove his claim by a preponderance of the evidence and that but for Owen Diaz' race he would not have been subjected to this conduct.

In addition to denying the claims by Owen Diaz, Tesla has asserted an affirmative defense. Before you consider this affirmative defense, you must first decide that Owen Diaz has proved by a preponderance of the evidence that he suffered a tangible employment action as a result of harassment by the supervisor.

If you find that Owen Diaz has proved that he suffered a tangible employment action as a result of harassment by the Tesla supervisor, you must not consider the affirmative defense. If Owen Diaz has not proved that he suffered a tangible employment action, then you must decide whether Tesla has proved by a preponderance of the evidence each of the following elements:

1. Tesla exercised reasonable care to prevent and promptly correct the racially harassing behavior, and

2. Owen Diaz unreasonably failed to take advantage of any preventive or corrective opportunities provided by their employer or unreasonably failed to otherwise avoid harm.

If Tesla proves these elements, Owen Diaz is not entitled to prevail on his respective claim.

**AUTHORITIES: Comcast Corp. v. National Association of African American Owned Media, 589 U.S. __ (2020).**

**10.12 CIVIL RIGHTS—TITLE VII—"TANGIBLE EMPLOYMENT ACTION"**

**DEFINED  [Modified – Subject to In Limine]**

Tangible employment actions are the means by which a supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment action requires an official act of the enterprise, a company act. A tangible employment action consists of a significant change in employment status such as firing, failing to promote, reassignment, a significant change in responsibilities] [undesirable reassignment] or a

significant change in benefits.

A tangible employment action need not be adverse, such as when a supervisor coerces an employee into engaging in sexual acts by threats of discharge. In such a case, an employee need not actually suffer discharge or other adverse employment action to demonstrate a tangible employment action.

**Comment**

This instruction should be given in conjunction with Instruction 10.6 (Civil Rights—Title VII—Hostile Work Environment Caused by Supervisor —Claim Based on Vicarious Liability —Tangible Employment Action—Affirmative Defense).

The Supreme Court defined "tangible employment action" in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742. 761 (1998), stating, "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Accord Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013) (holding that employer may be vicariously liable for employee's unlawful harassment only when employer has empowered that employee to take tangible employment actions against victim).

The meaning of the term "tangible employment action" is also discussed in *Pennsylvania*

1   *State Police v. Suders*, 542 U.S. 129, 137-38 (2004), which resolved a split in the circuits as to

2   whether a constructive discharge brought about by supervisor harassment constitutes a tangible

3   employment action and bars the affirmative defense set out in *Ellerth*, 524 U.S. 742, and

4   *Faragher v. Boca Raton*, 524 U.S. 775 (1998). *Suders*, 542 U.S. at 140.

5   *Suders* concluded that a constructive discharge, in itself, does not constitute a tangible

6   employment action that bars the *Ellerth/Faragher* affirmative defense. That defense "is available

7   to the employer whose supervisors are charged with harassment," and is barred only if a "tangible

8   employment action" carried out under a supervisor's official authority was part of the conduct

9

10   leading to the constructive discharge. *Id.* at 148-49.  *See Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158,

11   1169 (9th Cir. 2003)

**10.7 CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT CAUSED BY NON-IMMEDIATE SUPERVISOR OR BY CO-WORKER—CLAIM BASED ON NEGLIGENCE**

The plaintiff seeks damages from the defendant for a hostile work environment caused by racial harassment. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1. the plaintiff was subjected to a racially hostile work environment by a non-immediate supervisor or coworker;

and

2. the defendant or a member of the defendant's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

A person is a member of management if the person has substantial authority and discretion to make decisions concerning the terms of the harasser's employment or the plaintiff's employment, such as authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the plaintiff's employment. A person who lacks such authority is nevertheless part of management if he or she has an official or strong duty in fact to communicate to management complaints about work conditions. You should consider all the circumstances in this case in determining whether a person has such a duty.

The defendant's remedial action must be reasonable and adequate. Whether the defendant's remedial action is reasonable and adequate depends on the remedy's effectiveness in stopping the individual harasser from continuing to engage in such conduct and in discouraging other potential harassers from engaging in similar unlawful conduct. An effective remedy should be proportionate to the seriousness of the offense.

If you find that the plaintiff has proved both of the elements on which the plaintiff has the burden of proof, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

**Comment**

*See* Introductory Comment to this chapter. *See also Swinton v. Potomac Corp.*, 270 F.3d 794, 803-05 (9th Cir. 2001). Use this instruction when the claim against the employer is based on negligence and involves harassment by another co-worker or a supervisor who is not the plaintiff's direct (immediate or successively higher) supervisor.

Use this instruction in conjunction with Instruction 10.5 (Civil Rights—Title VII—Hostile Work Environment—Harassment Because of Protected Characteristics—Elements).

When an affirmative defense is asserted, this instruction should be accompanied by the appropriate affirmative defense instruction.

Under a negligence theory, an employer is liable if the employer (or its "management") knew or should have known of the harassing conduct and failed to take reasonably prompt corrective action to end the harassment. *Swinton*, 270 F.3d at 803-04. There are two categories of employees who constitute "management" for purposes of a negligence claim. *Id.* at 804. The first category is a member of management who possesses substantial authority and discretion to make decisions over the plaintiff's or the harasser's employment, such as "authority to counsel, investigate, suspend or fire the accused harasser, or to change the conditions of the harassee's employment." *Id.* The second category of employees who qualify as management consists of any supervisor who lacks this authority but nonetheless "has an official or strong de facto duty to act as a conduit to management for complaints about work conditions." *Id.* at 805 (citations omitted).

It should be noted, however, that neither *Swinton* nor any of the cases relied on by *Swinton* provides a definition of a supervisor or other employee with "an official or strong de facto duty to act as a conduit to management for complaints about work conditions." *See Swinton*, 270 F.3d at 804-05. To aid jury understanding, the Committee has modified the *Swinton* language of "de facto duty to act as a conduit to management . . . ." to "duty in fact to communicate to management . . . ."

The two elements of this instruction are based on *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999), and *Mockler v. Multnomah County*, 140 F.3d 808, 812, 813 (9th Cir. 1998). The text of the instruction addressing remedial action is based on *Mockler*, 140 F.3d at 813 (citing *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)),

The burden is on the plaintiff to "show that the employer knew or should have known of the harassment, and took no effectual action to correct the situation." *Mockler*, 140 F.3d at 812 (citations omitted). "This showing can . . . be rebutted by the employer directly, or by pointing to prompt remedial action reasonably calculated to end the harassment." *Id.*

In determining whether an employer's response to the harassment is sufficient to absolve it from liability, "the fact that [the] harassment stops is only a test for measuring the efficacy of a remedy, not a way of excusing the obligation to remedy." *Fuller v. City of Oakland*, 47 F.3d 1522, 1528 (9th Cir. 1995). "Once an employer knows or should know of harassment, a remedial obligation kicks in." *Id.* Therefore, "if 1) no remedy is undertaken, or 2) the remedy attempted is ineffectual, liability will attach." *Id.* at 1528-29; *see also Reynaga v. Roseburg Forest Prods.*,

847 F.3d 678, 690 (9th Cir. 2017) ("[P]rompt action is not enough. The remedial measures must also be effective.").

For purposes of proving that the defendant "knew or reasonably should have known of the harassment," it is appropriate to impute this knowledge to a defendant employer if a management-level employee of the employer defendant knew or reasonably should have known that harassment was occurring. *Swinton*, 270 F.3d at 804.

SMRH:4812-6343-6987.1

**PLAINTIFF'S INSTRUCTION NO. 1:    PLAINTIFFS CLAIMS**

Plaintiff brings THREE separate claims. These claims are for:

1.  Hostile Work Environment based on Race

2.  Failure to Prevent Harassment from Occurring

3.  Negligent Supervision and Retention of an Employee

These claims are described in the following instructions. The first two claims are civil rights claims brought under federal law and the third claim is brought under state law.  Each claim involves a distinct set of elements. Some elements are common to more than one claim. That is, there are some things that a plaintiff must show to succeed on one claim that plaintiff must also show to succeed on one or more other claims. Although the claims have some elements in common, you should consider each claim individually, Plaintiff can succeed on any claim only if she proves all of the elements of that claim.

**PLAINTIFF'S NO. 2 – SEVERE OR PERVASIVE EXPLAINED**

"Severe or pervasive" means conduct that alters the conditions of employment and creates a work environment that is hostile, intimidating, offensive, oppressive, or abusive.

In determining whether the conduct was severe or pervasive, you should consider all the circumstances, including any or all of the following:

(a) The nature of the conduct;

(b) How often, and over what period of time, the conduct occurred;

(c) The circumstances under which the conduct occurred;

(d) Whether the conduct was physically threatening or humiliating.

Mr. Diaz does not have to prove that his productivity has declined. It is sufficient to prove that a reasonable person who was subjected to the harassing conduct would find that the conduct so altered working conditions as to make it more difficult to do the job.

A single incident can be sufficiently severe or pervasive to constitute harassment.

**COMMENT:**

**CACI 2524. "Severe or Pervasive" Explained**
*New September 2003; Revised December 2007, July 2019*
**Directions for Use**

Read this instruction with any of the Work Environment Harassment instructions (CACI Nos. 2521A, 2521B, 2521C, 2522A, 2522B, and 2522C). Read also CACI No. 2523, *"Harassing Conduct" Explained*. Give the last optional sentence if a single incident forms the basis of the claim. (See Gov. Code, § 12923(b) [single incident of harassing conduct can be sufficient to create a triable issue regarding the existence of a hostile work environment].)

In determining what constitutes "sufficiently pervasive" harassment, the courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial. (See *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 610 [262 Cal.Rptr. 842].) Whether this limitation remains in light of Government Code section 12923 is not clear.

## Sources and Authority

• "We have agreed with the United States Supreme Court that, to prevail, an employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex. The working environment must be evaluated in light of the totality of the

1541

Copyright Judicial Council of California

circumstances: '[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " (*Miller v. Dept. of Corrections* (2005) 36 Cal.4th 446, 462 [30 Cal.Rptr.3d 797, 115 P.3d 77], internal citations omitted.)

• **"[T]he adjudicator's inquiry should center, dominantly, on whether the discriminatory conduct has unreasonably interfered with the plaintiff's work performance. To show such interference, 'the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment.' It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to 'make it more difficult to do the job.' " (*Harris v. Forklift Sys.* (1993) 510 U.S. 17, 25 [114 S.Ct. 367, 126 L.Ed.2d 295], Ginsburg, J., concurring; see Gov. Code, § 12923(a) endorsing this language as reflective of California law.)**

• "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' . . . [¶] 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.' . . . California courts have adopted the same standard in evaluating claims under the FEHA." (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 129–130 [87 Cal.Rptr.2d 132, 980 P.2d 846], internal citations omitted.)

• "Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance . . . and that she was actually offended . . . . The factors that can be considered in evaluating the totality of the circumstances are: (1) the nature of the unwelcome sexual acts

or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of the offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred." (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 609–610 [262 Cal.Rptr. 842], internal citation omitted.)

• "The United States Supreme Court . . . has clarified that conduct need not seriously affect an employee's psychological well-being to be actionable as abusive work environment harassment. So long as the environment reasonably would be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious." (*Kelly-Zurian v. Wohl Shoe Co., Inc.* (1994) 22 Cal.App.4th 397, 412 [27 Cal.Rptr.2d 457], internal citations omitted.)

• "As the Supreme Court recently reiterated, in order to be actionable, '. . . a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.' The work environment must be viewed from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' This determination requires judges and juries to exercise '[c]ommon sense, and an appropriate sensitivity to social context' in order to evaluate whether a reasonable person in the plaintiff's position would find the conduct severely hostile or abusive." (*Beyda v. City of Los Angeles* (1998) 65 Cal.App.4th 511, 518–519 [76 Cal.Rptr.2d 547], internal citations omitted.)

• "The requirement that the conduct be sufficiently severe or pervasive to create a working environment a reasonable person would find hostile or abusive is a crucial limitation that prevents sexual harassment law from being expanded into a 'general civility code.' " (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1377 [62 Cal.Rptr.3d 200], internal citations omitted.)

• "[T]he jury only needed to find the harassing conduct to be either severe or pervasive . . . ." (*Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 40 [235 Cal.Rptr.3d 262].)

### Secondary Sources

3 Witkin, Summary of California Law (11th ed. 2017) Agency and Employment, §§ 363, 370

Chin, et al., California Practice Guide: Employment Litigation (The Rutter Group) ¶¶ 10:160–10:249

1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, §§ 2.68, 2.75, Sexual and Other Harassment, §§ 3.1, 3.17, 3.36–3.41

2 Wilcox, California Employment Law, Ch. 41, *Substantive Requirements Under Equal Employment Opportunity Laws*, §§ 41.80[1][a], 41.81[1][b] (Matthew Bender)

3 Wilcox, California Employment Law, Ch. 43, *Civil Actions Under Equal Employment Opportunity Laws*, § 43.01[10][g][i] (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 115, *Civil Rights: Employment Discrimination*, § 115.36 (Matthew Bender)

California Civil Practice: Employment Litigation, § 2:56 (Thomson Reuters)

### Additional Authority:

Courts recognize the N-word is not merely an offensive utterance, but "perhaps the most offensive and inflammatory racial slur in English, ... a word expressive of racial hatred and bigotry." *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001).

SMRH:4812-6343-6987.1

"It is beyond question that the use of the word "nigger" is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination." *McGinest v. GTE Service Corp.,* 360 F.3d 1103, 1116 . (9th Cir. 2004).

Defendant's use of the N-word in conjunction with a physical threat "was a serious act of discrimination." *Johnson v. Riverside Healthcare System, LP,* 534 F.3d 1116, 1123 (9th Cir. 2008).

"Perhaps no single act can more quickly "alter the conditions of employment and create an abusive working environment," *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405, than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence of his subordinates." *Rodgers v. Western-Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir. 1993).

"We first note that the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir. 1991).

"The use of the word "nigger" automatically separates the person addressed from every non-black person; this is discrimination per se." *Bailey v. Binyon*, 583 F.Supp. 923, 927 (N.D. Ill. 1984).

 "The word 'nigger' is more than [a]' mere offensive utterance'.... No word in the English language is as odious or loaded with as terrible a history." *Daso v. The Grafton School, Inc*., 181 F.Supp.2d 485, 493 (D.Md.2002)

"The direct verbal attack on McGinest and the prevalence of graffiti containing a racial slur evocative of lynchings and racial hierarchy are significant exacerbating factors in evaluating the severity of the racial hostility." *McGinest v. GTE Service Corp.,* 360 F.3d 1103, 1116 (9th Cir. 2004).

"We cannot regard use of the term 'nigger' in reference to a black youth as anything but discrimination against that youth based on his race." *City of Minneapolis v. Richardson*, 307 Minn. 80, 88 [239 N.W.2d 197, 203] (1976)

"In many cases, a single offensive act by a co-employee is not enough to establish employer liability for a hostile work environment. But where that act is committed by a supervisor, the result may be different. *Dee v. Vintage Petroleum Inc*. (2003) 106 Cal.App.4th 30, 36.  (Harasser made comment: "Well, it is your Filipino understanding versus mine." (*Id*. at 33))

A court denied a motion to dismissed based on a single incident of harassment where there was an "aspect of violence or threat could be found in Costa's divulging personal information about Plaintiff to inmates as well as the grenade comment, especially in the context of working in a jail." *Linkenhoker v. Rupf,* 2007 WL 404783, at *7 (N.D. Cal., Feb. 2, 2007, No. C06-05432 EDL)

"A rational factfinder may conclude that under the circumstances a reasonable African American could believe that, when the chief executive of her office calls her a "jungle bunny," he thinks she has less worth as a person and is inferior to other employees because of her race. Moreover, a jury could reasonably find that the reasonable African American would believe that such a remark made in the presence of another supervising officer portrays an attitude of prejudice that injects hostility and abuse into the working environment and significantly alters the conditions of her employment." *Taylor v. Metzger,* 152 N.J. 490, 506 [706 A.2d 685, 692–693] (1998).

**TESLA OBJECTS TO PLAINTIFF'S INSTRUCTION NO. 2**

TESLA'S PROPOSED INSTRUCTION AS TO SEVERE OR PERVASIVE

### CACI 2524. "SEVERE OR PERVASIVE" EXPLAINED

 "Severe or pervasive" means conduct that alters the conditions of employment and creates a hostile or abusive work environment. In determining whether the conduct was severe or pervasive, you should consider all the circumstances.  You may consider any or all of the following:

      (a)     The nature of the conduct;

      (b)     How often, and over what period of time, the conduct occurred;

      (c)     The circumstances under which the conduct occurred;

      (d)     Whether the conduct was physically threatening or humiliating;

      (e)     The extent to which the conduct unreasonably interfered with an employee's work performance.


**PLAINTIFF OBJECTS TO DEFENDANT'S ALTERNATIVE TO  INSTRUCTION NO. 2**

Plaintiff objects to element "e" as not tailored to the factual and legal circumstances of this case, based on the use of the word "N-----", a term which, when used in the workplace, creates an inherently hostile work environment as a matter of law. Plaintiff believes the current version of CACI 2524 is more appropriate to give in this case involving the N-word.


**PLAINTIFF'S NO. 3:  HARASSING CONDUCT**

 Harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being. It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job. In evaluating the evidence of harassment, you should consider all of the evidence collectively or in its totality rather than in isolation, and you should view that evidence from the perspective of the victim and a reasonable person in the victim's position.

SMRH:4812-6343-6987.1

No "single factor" is required in order to establish a racially hostile work environment.  The conduct must be either severe and/or pervasive.  The required severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.  Violence or the threat of violence are factors that elevate the seriousness of the conduct.  Conduct which unreasonably interferes with work performance can alter a condition of employment and create an abusive working environment.

A single incident of harassing conduct is sufficient to create an issue regarding the existence of a hostile work environment if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

**AUTHORITY**:

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993);  *Ellison v. Brady*, 924 F.2d 872, 877-880 (9th Cir. 1991),

Gov't Code §12923. (*Added by Stats. 2018, Ch. 955, Sec. 1. (SB 1300) Effective January 1, 2019.*);

*Sheffield v. Dept. of Soc. Serv.*, 109 Cal.App.4th 153, 163 (2003) ["Violence or the threat of violence are factors that elevate the seriousness of the conduct"],

Courts recognize the N-word is not merely an offensive utterance, but "perhaps the most offensive and inflammatory racial slur in English, ... a word expressive of racial hatred and bigotry." *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001), .

"It is beyond question that the use of the word "nigger" is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination."  *McGinest v. GTE Service Corp.,* 360 F.3d 1103, 1116 . (9th Cir. 2004).

"Perhaps no single act can more quickly "alter the conditions of employment and create an abusive working environment," *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405, than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence of his subordinates."  *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993).

"We first note that the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady,* 924 F.2d 872, 878 (9th Cir. 1991).

"The use of the word "nigger" automatically separates the person addressed from every non-black person; this is discrimination per se." *Bailey v. Binyon*, 583 F.Supp. 923, 927 (N.D. Ill. 1984).

"We cannot regard use of the term 'nigger' in reference to a black youth as anything but discrimination against that youth based on his race." *City of Minneapolis v. Richardson*, 307 Minn. 80, 88 [239 N.W.2d 197, 203] (1976)

"In many cases, a single offensive act by a co-employee is not enough to establish employer liability for a hostile work environment. But where that act is committed by a supervisor, the result may be different. *Dee v. Vintage Petroleum Inc*. (2003) 106 Cal.App.4th 30, 36.  (Harasser made comment: "Well, it is your Filipino understanding versus mine." (*Id*. at 33))

"A rational factfinder may conclude that under the circumstances a reasonable African American could believe that, when the chief executive of her office calls her a "jungle bunny," he thinks she has less worth as a person and is inferior to other employees because of her race. Moreover, a jury could reasonably find that the reasonable African American would believe that such a remark made in the presence of another supervising officer portrays an attitude of prejudice that injects hostility and abuse into the working environment and significantly alters the conditions of her employment." *Taylor v. Metzger,* 152 N.J. 490, 506 [706 A.2d 685, 692–693] (1998).

## TESLA'S OBJECTIONS TO PLAINTIFF'S PROPOSED INSTRUCTION NUMBER 3

## OBJECTIONS: ARGUMENTATIVE, NOT CORRECT STATEMENT OF LAW

## TESLA'S PROPOSED INSTRUCTION

## CACI 2523  - HARASSING CONDUCT – DEFINED

Harassing conduct may include, but is not limited to any of the following:

a.      Verbal harassment, such as obscene language, demeaning comments, slur, or threats;

b.      Physical harassment, such as unwanted touching, assault, or physical interference with normal work or movement; or

c.      Visual harassment, such as offensive posters, objects, cartoons, or drawings,

**PLAINTIFF'S POSITION:  Plaintiff does not object to CACI 2523 but thinks that is should be given in addition to Plaintiff's No. 3.**

**PLAINTIFF'S NO. 4:  EMPLOYER'S DUTY TO INVESTIGATE AND TAKE REMEDIAL ACTION**

Employers must take all reasonable steps necessary to prevent harassment from occurring. When an employer becomes aware of potentially harassing conduct, it has a duty to promptly investigate and to take immediate and effective corrective action should it determine that harassment has occurred. Remedial measures need to include immediate corrective action that is reasonably calculated to 1) end

the current harassment and 2) to deter future harassment.  The remedial actions must be designed, in part, to deter future harassment by the same offender or others.

Some of the steps employers can take to prevent harassment from occurring include such things as affirmatively raising the subject, expressing strong disapproval, conducting a timely, thorough, good faith investigation of allegations of harassment of which the Defendant knew or had reason to know, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under federal law, and developing methods to sensitize all concerned.

**AUTHORITY:**
*E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1515-1516 (9th Cir.1989) ["[E]mployers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known."]; *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991) ["[R]emedies should be 'reasonably calculated to end the harassment.' . . . 'Employers should impose sufficient penalties to assure a workplace free from [] harassment. . . . In evaluating the adequacy of the remedy, the court may also take into account the remedy's ability to persuade potential harassers to refrain from unlawful conduct." ;  *Fuller v. City of Oakland,* 47 F.3d 1522, 1528-29 (9th Cir. 1995) [Employer's obligations include a remedial  obligation including "deterring future harassment –by the same offender or others."]; 29 C.F.R. § 1604.11(f) (EEOC Regulations); Cal. Gov. Code §§ 12940(j)(1), 12940(k); *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1146 (1998); *Cal. Fair Employment &; Bradley v. Cal. Dep't of Corr. & Rehab.*, 158 Cal. App. 4th 1612, 1630 (2008).

**PLAINTIFF'S NO. 5 – FAILURE TO PREVENT HARASSMENT**

Owen Diaz claims that Tesla, Inc. failed to take all reasonable steps to prevent harassment based on race.  To establish this claim, Mr. Diaz must prove all of the following:

1. That Owen Diaz was an employee of or providing services under a contract with Tesla, Inc.;

2. That Owen Diaz was subjected to harassment based on race in the course of employment;

3. That Tesla, Inc., failed to take all reasonable steps necessary to prevent the harassment based on race;

When evaluating an employer's reasonableness, you may consider an employer's policies and procedures as well as what remedial  efforts it takes to address the harassment and to prevent future incidents of harassment.

**COMMENT AND SOURCES:**

The elements are based primarily on CACI 2527.

*E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1515-1516 (9th Cir.1989);

Any employer must "undertake prompt corrective measures within its control." *EEOC v. Global Horizons*, 915 F.3d 631, 641 (9th Cir. 2019).

"[T]he reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment. In evaluating the adequacy of the remedy, the court may also take into* account the remedy's ability to persuade potential harassers from unlawful conduct." *Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir. 1991). This "two-part test… goes beyond short term-results….The fact that harassment stops is only a test for measuring the *efficacy* of a remedy, not a way of excusing the *obligation* to remedy." *Fuller v. City of Oakland*, 47 F. 3d 1522, 1528 (9th Cir. 1995.) (emphasis original) The *Fuller* court went on to explain that the obligation to remedy and prevent harassment

will not be discharged until action—prompt, effective action—has been taken. Effectiveness will be measured by the twin purposes of ending the current harassment and deterring future harassment—by the same offender or others. *Ellison*, 924 F.2d at 882. If 1) no remedy is undertaken, or 2) the remedy attempted is ineffectual, liability will attach….It does not follow that the employer's failure to act will be acceptable if harassment stops.

Putting it another way, even if inaction through some Orwellian twist is described as a "remedy," it will fail the deterrence prong of the *Ellison* test whether or not the individual harasser has voluntarily ceased harassment. Nor can inaction fairly be said to qualify as a remedy "reasonably calculated to end the harassment." Title VII does not permit employers to stand idly by once they learn that…harassment has occurred. To do so amounts to a ratification of the prior harassment.

*Id*. at 1528-9 (emphasis added).

The Ninth Circuit has observed that a "written antidiscrimination policy does not insulate a company from liability if it does not enforce the antidiscrimination policy." *Bains LLC v. Arco Prod. Co., Div. of Atlantic Richfield Co.*, 405 F.3d 764, 774 (9th Cir. 2005).


**TESLA OBJECTS TO PLAINTIFF'S  INSTRUCTION NO. 5**

OBJECTIONS: THERE IS NO ELEMENT OF HARM OR SUBSTANTIAL FACTOR IN

PLAINTIFF'S INSTRUCTION AND IS NOT A COMPLETE INSTRUCTION UNDER CACI 2527


**TESLA'S PROPOSED INSTRUCTION**

**CACI 2527 FAILURE TO PREVENT HARASSMENT**

Owen Diaz claims that Tesla, Inc. failed to take all reasonable steps to prevent harassment based on race.  To establish this claim, Mr. Diaz must prove all of the following:

1. That Owen Diaz was an employee of  Tesla;

2. That Owen Diaz was subjected to race based harassment in the course of employment;

3. That Tesla, Inc., failed to take all reasonable steps necessary to prevent the race based harassment;

4.     That Owen Diaz was harmed; and

5.     That Tesla's failure to take all reasonable steps to prevent the race based harassment which was a substantial factor in causing Owen Diaz's harm.

**PLAINTIFF OBJECTS TO DEFENDANT'S ALTERNATIVE TO  INSTRUCTION NO. 5**

OBJECTIONS: DEFENDANT'S PROPOSED INSTRUCTION DOES NOT ADDRESS THE HEIGHTENED FEDERAL REMEDIAL OBLIGATIONS NOTED IN *Ellison v. Brady,* 924 F.2d 872, 881 (9th Cir. 1991) AND *Fuller v. City of Oakland*, 47 F. 3d 1522, 1528-1529 (9th Cir. 1995.) THIS INSTRUCTION DUPLICATIVE OF INSTRUCTION 10.5, AND CREATES POTENTIAL CONFUSION BY THE JURY DUE TO THE REDUNDANT INSTRUCTIONS.

**PLAINTIFF'S NO. 6 – NEGLIGENT SUPERVISION AND RETENTION OF AN EMPLOYEE**

     Owen Diaz claims that he was harmed by employees working at the Tesla factory and that Tesla Inc., is responsible for that harm because Tesla negligently supervised or retained those employees.  To establish this claim, the Plaintiff must prove all of the following:

1.  That Ramon Martinez was incompetent or unfit for the job of supervisor at Tesla's Factory;

2.  That Tesla, Inc., knew or should have known that Ramon Martinez was unfit or incompetent to be a supervisor;

3.  That after Tesla knew, or should have known, of Ramon Martinez's incompetence or unfitness for the job, Tesla, Inc., retained Ramon Martinez in his position at Tesla's factory;

4.  That Ramon Martinez's incompetence or unfitness harmed Owen Diaz; and

5.  That Tesla, Inc.'s negligence in retaining Ramon Martinez was a substantial factor in causing harm to Owen Diaz.

     An employer may ratify the conduct of an incompetent or unfit employee if it does not take adequate remedial measures or continues to employ the employee after knowledge of the incompetence or unfitness.

**AUTHORITY:**

*Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th 1556, 1564-65 (1996)[Elements 1-3]; *Doe v. Capital Cities,* 50 Cal. App. 4th 1038, 1054-55 (1996) [Element 4]; <u>*Pusateri vs. E.F. Hutton & Co.,*</u> 180 Cal.App.3d 247, 253-255 (1986); Greenfield v. Spectrum Investment Corp. (1985) 174 Cal.App.3d 111, 118-121 (1985) *overruled on other grounds in Lakin v. Watkins Associated Industries*, 6 Cal.4th 644, 664 (1993) [employee is retained even though management knows about his violent temper and assault upon a customer at work]

**TESLA OBJECTS TO PLAINTIFF'S INSTRUCTION NO. 6**

OBJECTIONS: ARGUMENTATIVE, DUPLICATIVE OF CACI INSTRUCTION ON NEGLIGENT HIRING, RETENTION AND SUPERVISION AND AGENCY INSTRUCTIONS.

**TESLA'S PROPOSED INSTRUCTION**

**CACI 426 NEGLIGENT HIRING, SUPERVISION OR RETENTION OF EMPLOYEE**

Owen Diaz claims that he was harmed by Ramon Martinez and thatTesla is responsible for that harm because Tesla negligently hired, supervised or retained Ramon Martinez. To establish this claim, Owen Diaz must prove all of the following:

1.      That Tesla hired Ramon Martinez;

2.      That Ramon Martinez was or became unfit or incompetent to perform the work for which he was hired;

3.      That Tesla knew or should have known that Ramon Martinez was or became unfit or incompetent and that this unfitness or incompetence created a particular risk to others;

4.      That Ramon Martinez's unfitness or incompetence harmed Owen Diaz; and

5.      That Tesla's negligence in hiring, supervising or retaining Ramon Martinez was a substantial factor in causing Owen Diaz's harm.

**PLAINTIFF OBJECTS TO DEFENDANT'S ALTERNATIVE TO INSTRUCTION NO. 6**

OBJECTIONS: DEFENDANT'S PROPOSED INSTRUCTION INCLUDES REFERENCE TO NEGLIGENT HIRING IN ELEMENT 1 WHICH PLAINTIFF IS NOT ALLEGING. THE OBJECTIONABLE HIRING COMPONENT IS ALSO INCLUDED DEFENDANT'S PROPOSED ELEMENT 2.

**CACI 430. CAUSATION: SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

1    Conduct is not a substantial factor in causing harm if the same harm would have occurred without

2  that conduct.

SMRH:4812-6343-6987.1

**PLAINTIFF'S NO. 7:  LIABILITY OF CORPORATIONS-SCOPE OF EMPLOYMENT**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors and officers performed within the scope of authority or within the scope of their duties as employees, agents, directors and officers.

Employees, agents, directors and officers may be acting within the scope of employment even if their acts were forbidden by their employers, were done in a forbidden manner, or were entirely for the employee's, agent's, director's or officer's own benefit and not for the benefit of the employer.

**AUTHORITY:**

Adapted from Instruction 4.2, Ninth Circuit Manual of Civil Model Jury Instructions deleting "performed within the scope of authority."; Adapted from Devitt, Blackmar & Wolff, *Federal Jury Practice & Instructions,* §108.01 (5th ED. 1987 & SUPP. 1995); *Burlington Industries v. Ellerth,* 524 U.S. 742, 757-766 (1998) (acknowledging employer's vicarious liability for harm caused by misuse of supervisory authority after recognizing general rule that sexual harassment is not within scope of employment); *Faragher v. City of Boca Raton,* 524 U.S. 775, 800-801(1998) (same); Devitt, Blackmar & Wolff, *Federal Jury Practice & Instructions,* §§ 71.09, 90.11.

**TESLA OBJECTS TO PLAINTIFF'S INSTRUCTION NO. 7**

OBJECTIONS: ARGUMENTATIVE, DUPLICATIVE OF MODEL JURY INSTRUCTIONS RE LIABILITY OF CORPORATIONS, JOINT EMPLOYER INSTRUCTION AND AGENCY INSTRUCTIONS.

**PLAINTIFF'S NO. 8 – JOINT EMPLOYER LIABILITY DEFINED**

Under the law, two or more entities can be considered an employer and be equally liable for employment discrimination. The term "employer" must be construed broadly.

To determine whether Defendant Tesla, Inc., was an employer of Plaintiff Owen Diaz, you must assess whether Tesla, Inc.:

1. controlled the terms and conditions of employment of the employee;

2. caused the hostile work environment; or

3. had the power to stop the hostile work environment by taking corrective measures.

If you find that Plaintiff Owen Diaz proves the foregoing as to  Tesla, Inc., then you should conclude that Tesla, Inc., is subject to joint employer liability in this case and should be considered the "employer."

An entity that has the power to conduct workplace investigations and implement  work site rules to curb harassment has the power to stop or prevent a hostile work environment.

An employer can control the terms and conditions of employment of the employee when it exercises substantial control over significant aspects of the terms and conditions, and/or privileges of the persons' employment.  Some factors to consider when evaluating the amount of control an employer has are the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment,  the hired party's role in hiring and paying the employee, and whether the work is part of the regular business of the hiring party.

**AUTHORITY:**

*E.E.O.C. v. Global Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019) ["common-law agency test should be applied in the Title VII" joint-employer context]; *E.E.O.C. v. Pacific Maritime Ass'n*, 351 F.3d 1270, 1275 (9th Cir. 2003); *Anderson v. Pac. Mar. Ass'n,* 336 F.3d 924, 932 (9th Cir. 2003); *Jackson v. ABC Nissan, Inc.* 2006 WL 2256908, *20 (D. Ariz. 2006), *citing Anderson* at 931-32; *See e.g. Virgo v. Riviera Beach Associates Ltd.,* 30 F.3d 1350 (11th Cir. 1994); *NLRB v. Carson Cable TV,* 795 F.2d 879 (9th Cir. 1986).

**TESLA OBJECTS TO INSTRUCTION NO. 8: ARGUMENTATIVE, DUPLICATIVE OF INSTRUCTION NO. 8**

TESLA'S PROPOSED JOINT EMPLOYER INSTRUCTION

**JOINT EMPLOYMENT DEFINED**

Joint employment is defined and determined by a set of factors that includes, but is not limited to the following: the skill required, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to

work, the method of payment, the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, the provision of employee benefits and the tax treatment of the hired party; the contractual relationship between the parties.

When looking at these factors, no one factor is decisive. Even in a joint employment relationship, one employer is not automatically responsible for another's conduct.

**Authorities:** *Nationwide Mut. Ins. Co v. Darden*, 503 U.S.318, 323 (1992);  *EEOC v. Global Horizons*, **915, F. 3d 631 639 (9ᵗʰ Cir. 2019);** *Field v. Am Mortg. Exp. Corp*. **No. 09-cv-5972-EMC, 2011 WL 3354344 at 8 (N. D. Cal. Aug. 2011)**

**PLAINTIFF OBJECTS TO DEFENDANT'S PROPOSED INSTRUCTION:**

**PLAINTIFF OBJECTS TO DEFENDANT'S PROPOSED JOINT EMPLOYER INSTRUCTION AS FAILING TO EXPLAIN TO THE JURY THAT A JOINT EMPLOYER IS CONSIDERED TO BE AN "EMPLOYER" FOR PURPOSES OF THIS AND OTHER INSTRUCTIONS AND THAT THE TERM "EMPLOYER" NEEDS TO BE CONSTRUED "BROADLY."**

**PLAINTIFF'S NO. 9:  EMPLOYER LIABILITY FOR CONDUCT BY NON-EMPLOYEES**

An employer may also be responsible for the acts of non-employees, with respect to harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. Factors to be considered include but are not limited to the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

**AUTHORITY:**

29 C.F.R. § 1604.11(e) (EEOC Regulations);

**TESLA OBJECTS TO THIS INSTRUCTION**

OBJECTIONS: ARGUMENTATIVE, DUPLICATIVE OF JOINT EMPLOYER INSTRUCTION AND AGENCY INSTRUCTIONS.

**PLAINTIFF'S NO. 10 – LIABILITY FOR CIVIL RIGHTS VIOLATIONS BASED ON CONTRACTUAL RELATIONSHIP**

Plaintiff asserts a section 1981 civil rights claim against Tesla, Inc.  Plaintiff can prove this claim by establishing that he was an employee of Tesla, Inc. (See Joint Employer Instruction)  Alternatively, Plaintiff may establish liability against Tesla by showing all of the following:

        (i)      Plaintiff gained rights or was a beneficiary under a contract,

        (ii)     Tesla engaged in racial discrimination or harassment in the enforcement of the contract, or

                  Tesla failed to take reasonable step(s) to prevent harassment from occurring in the workplace; and

        (iii)    Plaintiff suffered injuries as a result.

Plaintiff need not have signed the contract, nor have been a party to the contract, in order to have rights under the contract. Plaintiff can establish his rights under the contract if he shows that he received benefits or privileges under the contractual relationship between Tesla and nextSource or Citistaff, and the benefits or privileges were not incidental or remote.

**Authority:**

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450-1 (2008); *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 fn. 3, 477-80 (2006); *Runyon v. McCrary*, 427 U.S. 160, 168 (1976); *Ennix v. Stanten*, 556 F. Supp. 2d 1073, 1082 (N.D. Cal. 2008); *Serv. Employees Internat. Union, Local 99 v. Options--A Child Care & Human Servs. Agency*, 200 Cal. App. 4th 869, 878 (2011).

**TESLA OBJECTS TO THIS INSTRUCTION**

OBJECTIONS: ARGUMENTATIVE, DUPLICATIVE OF CIVIL RIGHTS INSTRUCTION AND AGENCY INSTRUCTIONS; See also *Comcast Corp. v. National Association of Africa American Owned Media*, 589 U.S. _____ (2020) (but for test required for liability under Section 1981).

**PLAINTIFF'S NO. 11:  CRITERIA FOR DETERMINING WHETHER HARASSER IS "SUPERVISOR"**

You must determine whether or not Ramon Martinez was a supervisor of Owen Diaz in the context of a civil rights claim.

Whether a person should be deemed a "supervisor" is determined based on the totality of the circumstances. There is no one kind of power or attribute that always must be present for a person to be deemed a "supervisor." Resolution of this issue does not turn on the label or title held by the person in question. Rather, you must assess the extent and character of Ramon Martinez's position and whether he exercised authority or control over important aspects of Owen Diaz's employment.

If Ramon Martinez had the power to hire, fire, demote or promote employees, to impose significant disciplinary measures, or to change significantly, for better or worse, the character of Owen Diaz's work, the conditions under which he worked, the benefits to which he was entitled, or the rate or amount of compensation to be received, then Ramon Martinez is in fact a "supervisor." If Ramon Martinez had the authority to direct an employees' daily work activity, Ramon Martinez is in fact a "supervisor."

It is not necessary for Owen Diaz to prove that Ramon Martinez held this power formally and directly. It is sufficient if it is proven that the power was real and substantial, even if exercised informally and indirectly. Similarly, it is not necessary for Owen Diaz to prove that Ramon Martinez exercised all of Defendant's power in such matters. It is sufficient if it is proven that Ramon Martinez's position enabled him to exercise substantial influence over important terms, conditions or privileges of Owen Diaz's employment at Tesla, such as by making recommendations to which the employer would ascribe substantial weight when such decisions were made.

**AUTHORITY:**
*Burlington Industries v. Ellerth,* 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807(1998); EEOC Enforcement Guidance on Vicarious Liability (EEOC Guidance, 06/18/1999), 1999 W.L. 33103140; *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1119 n. 13 (9th Cir. 2004); *Swinton v. Potomac Corp.,* 270 F.3rd 794, 803-805 (9th Cir. 2001).

**TESLA OBJECTS TO PLAINTIFF'S INSTRUCTION NO. 11**

**TESLA'S PROPOSED SUPERVISOR INSTRUCTION**

1

### CACI 2525. HARASSMENT—"SUPERVISOR" DEFINED (GOV. CODE, § 12926(t))

2
A supervisor of Tesla is someone who had any of the following:

3
a.      The authority to hire, transfer, promote, assign, reward, discipline, or discharge Owen

4
Diaz or effectively to recommend any of these actions;

5
b.      The responsibility to act on Owen Diaz's grievances or effectively to recommend action

6
on grievances; or

7
c.      The responsibility to direct Owen Diaz's daily work activities.

8
The exercise of this authority or responsibility must not be merely routine or clerical, but must

9
require the use of independent judgment.

10
**PLAINTIFF OBJECTS TO DEFENDANT'S PROPOSED INSTRUCTION:**

11

12
**PLAINTIFF OBJECTS TO DEFENDANT'S PROPOSED "SUPERVISOR" INSTRUCTION AS**

13
**FAILING TO COMPORT WITH FEDERAL STANDARDS, INSTEAD RELYING ON STATE**
**STANDARDS.**

14

15
**PLAINTIFF'S NO. 12 – WITNESSES DESIGNATED AS "PERSONS MOST**

16
**KNOWLEDGEABLE"**

17
You are about to hear testimony from a witness who, when depositions were taken

18
previously in this case, was designated by Tesla as a "person most knowledgeable" regarding

19
certain specific subjects and issues identified by Mr. Diaz.

20
Testimony from a witness who has been identified by a corporation as a "person most

21
knowledgeable" represents the company's knowledge, not the individual witness's knowledge.

22
The company must prepare the "person most knowledgeable" to testify on the designated subjects

23
and issues based on information reasonably available from documents, current or past

24
employees, or other sources. Because the testimony from the "person most knowledgeable"

25
reflects the company's knowledge, rather than the individual witness's personal knowledge, if a

26
certain fact is within the collective knowledge or subjective belief of the company, the "person

27
most knowledgeable" is allowed to testify to that fact even though the fact is not within the

28
personal knowledge of the witness designated as the "person most knowledgeable" regarding

that fact. Thus, a witness designated as the "person most knowledgeable" is free to testify to matters outside of his or her personal knowledge as long as they were within the company's collective knowledge.

**COMMENT/AUTHORITY:**

*ISG Insolvency Group, Inc. v. Meritage Homes Corp. et al*., 2013 U. S. Dist. LEXIS 84726 at *11-*12 (D. Nev. 2013)

**TESLA OBJECTS TO INSTRUCTION NO. 12**

TESLA'S PROPOSED PERSON MOST KNOWLEDGEABLE INSTRUCTION

You are about to hear testimony from a witness who, when depositions were taken in this case, was designated by Tesla as a "person most knowledgeable" regarding certain specific subjects and issues identified by Mr. Diaz.

Testimony from a witness who has been identified by a corporation as a "person most knowledgeable" represents the company's knowledge, not the individual witness's knowledge. Because the testimony from the "person most knowledgeable" reflects the company's knowledge, rather than the individual witness's personal knowledge, if a certain fact is within the collective knowledge, the "person most knowledgeable" is allowed to testify to that fact even though the fact is not within the personal knowledge of the witness designated as the "person most knowledgeable" regarding that fact.

**PLAINTIFF OBJECTS TO DEFENDANT'S INSTRUCTION NO. 12 AS INCOMPLETE.**

**TESLA'S PROPOSED SPECIAL INSTRUCTIONS**

**TESLA'S PROPOSED SPECIAL INSTRUCTION NO. 1**

**PRESUMPTIVE EMPLOYER IS EMPLOYER ON W-2 FORM**

Under the California Government Code, an employee's employer is presumed to be the employer identified on the employee's Federal Form W-2.

Authorities: Government Code sections 12940(a); 12928; <u>Stevenson v. Superior Court</u>, 16 Cal.4th 880, 904 (1997); see also <u>Nationwide Mut. Ins. Co v. Darden</u>, 503 U.S.318, 323 (1992); <u>EEOC v. Global Horizons</u>, 915, F. 3d 631 639 (9th Cir. 2019); <u>Field v. Am Mortg. Exp. Corp.</u>, No. 09-cv-5972-EMC, 2011 WL 3354344 at 8 (N. D. Cal. Aug. 2011).

## **PLAINTIFF'S OBJECTIONS:**

OBJECTION:  THE INSTRUCTION IS MISLEADING, CONFUSING AND MISSTATES THE STATUTE IN OMITTING ESSENTIAL LANGUAGE RE "REBUTTABLE PRESUMPTION" AND "INCLUDES ANY PERSON OR ENTITY": "Under the California Government Code, there is a rebuttable presumption that employer includes any person or entity identified as the employer on the employee's Federal Tax Form W-2."  PLAINTIFF ALSO OBJECTS THAT THE PROPOSED INSTRUCTION IS IRRELEVANT TO A JOINT EMPLOYER ANALYSIS OR TO DETERMINING WHETHER OR NOT PLAINTIFF HAD RIGHTS PURSUANT TO THE CONTRACTUAL RELATIONSHIP FORMING THE BASIS FOR HIS WORK AT THE TESLA FACTORY.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFFS' PROPOSED VERDICT FORM**<br><br>Pretrial Conference Date: May 11, 2020<br>Time: 10:00 a.m.<br><br>Trial Date: June 8, 2020<br>Complaint filed: October 16, 2017 |

DATED: _____

_____
UNITED STATES DISTRICT JUDGE

1

2

3

4

5

**UNITED STATES DISTRICT COURT**

6

**NORTHERN DISTRICT OF CALIFORNIA**

7

8

DEMETRIC DI-AZ, OWEN DIAZ, and
LAMAR PATTERSON,

Case No. 3:17-cv-06748-WHO

9

Plaintiffs,

**PLAINTIFFS' PROPOSED VERDICT
FORM**

10

v.

11

TESLA, INC. dba TESLA MOTORS, INC.;
CITISTAFF SOLUTIONS, INC.; WEST
VALLEY STAFFING GROUP;
CHARTWELL STAFFING SERVICES, INC.;
and DOES 1-50, inclusive,

Pretrial Conference Date: May 11, 2020
Time: 2:00 p.m.

12

Trial Date: June 8, 2020
Complaint filed: October 16, 2017

13

14

Defendants.

15

16

17

We, the Jury, find as follows:

18

**CLAIM NO. 1:  RACIALLY HOSTILE WORK ENVIRONMENT**

19

1.   Was Owen Diaz subjected to a racially hostile work environment by Tesla, Inc.?

20

_____ YES   _____ NO

21

*If your answer is "yes" answer  question No.  2. If your answer to question No. 1 is  "no",*

22

*proceed to question No.  3.*

23

24

25

26

27

28

Case No. 3:17-cv-06748-WHO

SMRH:4812-6343-6987.1

JURY INSTRUCTIONS AND VERDICT FORMS

**CLAIM NO. 2:  FAILURE TO PREVENT HARASSMENT**

2.  Did Tesla, Inc., fail to take all reasonable steps necessary to prevent Owen Diaz from being subjected to racial harassment?

_____ YES   _____ NO

*Answer the next question.*


**CLAIM NO. 3:  NEGLIGENT SUPERVISION OR RETENTION**

3.  Did Tesla, Inc.'s negligent supervision or continued employment of Ramon Martinez cause harm to Owen Diaz?

_____ YES   _____ NO

If you answered  "yes" to either question No. 1, 2 or 3, answer the next question. *If you answered "no" to questions 1 and 2 and 3, the jury foreperson should sign, date and return this jury questionnaire.*


**DAMAGES**

4.  What past non-economic damages did Owen Diaz sustain as a result of Tesla, Inc.'s unlawful conduct?

$_____

*Go to the next question.*


5.  What future non-economic damages is Owen Diaz likely to sustain as a result of Tesla, Inc.'s unlawful conduct?

$_____

If you answered "yes" to question Nos. 1 or  2, answer the next question.  If you answer "no" to both question Nos. 1 and 2, sign, date and return this juror questionnaire.

**PUNITIVE DAMAGES FOR CIVIL RIGHTS CLAIMS**

6.   Do you find by a preponderance of the evidence that Owen Diaz is entitled to punitive damages against Tesla Inc. for either creating a hostile work environment based on race, and/or failing to prevent harassment based on race in the workplace?

_____ YES _____ NO

*If you answered "yes" to question No. 6, answer the next question. , If you answered question 6 "no," sign date and return this juror questionnaire.*

7.   What amount of punitive damages do you award to Owen Diaz?

$_____

*Please sign, date and return this juror questionnaire.*

DATED: _____

_____
JURY FOREPERSON

**TESLA OBJECTS TO PLAINTIFF'S PROPOSED VERDICT FORM**

OBJECTIONS: VERDICT FORM FAILS TO SET FORTH ALL OF THE REQUIRED ELEMENTS OF EACH CLAIM

TESLA'S PROPOSED VERDICT FORM

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, AND LAMAR PATTERSON,<br><br>    Plaintiffs,<br><br>    v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**PROPOSED SPECIAL VERDICT FORM BY DEFENDANT TESLA, INC.**<br><br>Trial Date:    June 8, 2020<br>Pre-Trial:     May 11, 2020 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Defendant Tesla, Inc. herby submits its proposed special verdict form.

# SPECIAL VERDICT FORM

## RACIAL HARASSMENT IN VIOLATION OF 28 U.S.C. 1981

1.      Was Owen Diaz an employee of Tesla?

Answer:     Yes_____     No_____

Please go to the next question and answer it.

2.      Was Owen Diaz in a contractual relationship with Tesla?

Answer:     Yes_____     No_____

If your answer to questions 1 or 2 was "Yes," then answer question 3.  If your answers to questions 1 and 2 are "No," do not answer questions 3 to 12, and go to question 13.

3.      Was Owen Diaz subjected to slurs, insults, jokes or other verbal comments or physical contact or intimidation of a racial nature during his assignment at Tesla?

Answer:     Yes_____     No_____

If your answer to question 3 is "Yes," then answer question 4.  If your answer to question 3 is "No," do not answer questions 4 to 12, and go to question 13.

4.      Was the conduct unwelcome?

Answer:     Yes_____     No_____

If your answer to question 4 is "Yes," then answer question 5.  If your answer to question 4 is "No," do not answer questions 5 to 12, and go to question 13.

5.      Was the conduct sufficiently severe or pervasive to alter Owen Diaz's employment and create a racially abusive and hostile work environment?

Answer:     Yes_____     No_____

If your answer to question 5 is "Yes," then answer question 6.  If your answer to question 5 is "No," do not answer questions 6 to 12, and go to question 13.

6.      Did Owen Diaz perceive the working environment to be abusive or hostile?

Answer:     Yes_____     No_____

If your answer to question 6 is "Yes," then answer question 7.  If your answer to question 6 is "No," do not answer questions 7 to 12, and go to question 13.

7.      Would a reasonable African American man in Owen Diaz's circumstances consider the working environment to be abusive or hostile?

Answer:     Yes_____     No_____

If your answer to question 7 is "Yes," then answer question 8.  If your answer to question 7 is "No," do not answer questions 8 to 12, and go to question 13.

8.      Was Owen Diaz harmed by the conduct?

Answer:     Yes_____     No_____

If your answer to question 8 is "Yes," then answer question 9.  If your answer to question 8 is "No," do not answer questions 9 to 12, and go to question 13.

### FAILURE TO PREVENT HARASSMENT

9.      Was Owen Diaz subjected to harassing conduct based on his race?

Answer:     Yes_____     No_____

If your answer to question 9 is "Yes," then answer question 10.  If your answer to question 9 is "No," do not answer questions 10 to 12, and go to question 13.

10.     Did Tesla fail to take all reasonable steps to prevent race-based harassment?

Answer:     Yes_____     No_____

If your answer to question 10 is "Yes," then answer question 11.  If your answer to question 10 is "No," do not answer questions 11 or 12, and go to question 13.

11.     Was Owen Diaz harmed?

Answer:     Yes_____     No_____

If your answer to question 11 is "Yes," then answer question 12.  If your answer to question 10 is "No," do not answer questions 11 or 12, and go to question 13.

12.     Was Tesla's failure to prevent racial harassment a substantial factor in causing harm to Owen Diaz?

Answer:     Yes_____     No_____

Please go to question 13.

**NEGLIGENT HIRING, RETENTION AND SUPERVISION**

13.     Was Ramon Martinez hired by Tesla?

Answer:     Yes_____     No_____

If your answer to question 13 is "Yes," then answer question 14.  If your answer to question 13 is "No," do not answer questions 14 to 20, and go to question 21.

14.     Was Ramon Martinez retained by Tesla?

Answer:     Yes_____     No_____

Go to question 15 and answer it.

15.     Was Ramon Martinez supervised by Tesla?

Answer:     Yes_____     No_____

If your answer to question 14 <u>or</u> 15 is "Yes," then answer question 16.  If your answer to questions 14 <u>and</u> 15 is "No," do not answer questions 16 to 20, and go to question 21.

16.     Was Ramon Martinez unfit or incompetent to perform the work for which he assigned at the Tesla factory?

Answer:     Yes_____     No_____

If your answer to question 16 is "Yes," then answer question 17.  If your answer to question 16 is "No," do not answer questions 17 to 20, and go to question 21.

17.     Did Tesla know or should have known that Ramon Martinez was unfit or incompetent to perform the work for which he was hired?

Answer:      Yes_____      No_____

If your answer to question 17 is "Yes," then answer question 18.  If your answer to question 17 is "No," do not answer questions 18 to 20 and go to question 21.

18.      Did Tesla know or should it have known that Ramon Martinez's unfitness or incompetence created a risk of harm to others?

Answer:      Yes_____      No_____

If your answer to question 18 is "Yes," then answer question 19.  If your answer to question 18 is "No," do no answer questions 19 or 20, and go to question 21.

19.      Did Ramon Martinez's unfitness or incompetence harm Owen Diaz?

Answer:      Yes_____      No_____

If your answer to question 19 is "Yes," then answer question 20.  If your answer to question 19 is "No," do not answer question 20, and go to question 21.

20.      Was Tesla's negligent hiring and retention and/or supervision of Ramon Martinez a substantial factor in causing harm to Owen Diaz?

Answer:      Yes_____      No_____

Please go to question 21 and answer it.

## DAMAGES

Answer question 21 only if you answered "Yes" to questions 8 <u>or</u> 20.  If you did not answer questions 8 <u>and</u> 20 or answered "No" to questions 8 <u>and</u> 20, do not

Case No. 3:17-cv-06748-WHO

answer question 21 and the Presiding Juror should sign and date this Special Verdict.

21. What are Owen Diaz's damages against Tesla?

Non-economic damages: $_____

Only answer question 22 if you answered "Yes" to question 8 **and** you filled in an amount to question 21. Otherwise, do not answer any more questions and the Presiding Juror must sign and date this Special Verdict and return it to the Court Attendant.

22. Did Owen Diaz prove by a preponderance of the evidence that Tesla engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of Owen Diaz?

Answer: Yes_____ No_____

If your answer to question 22 is "Yes," then answer question 23. If your answer to question 22 is "No," do not answer any more questions and the Presiding Juror must sign and date this Special Verdict and return it to the Court Attendant.

## PUNITIVE DAMAGES

23. Should punitive damages be awarded to Owen Diaz and against Tesla?

Answer: Yes_____ No_____

If your answer to question 23 is "Yes," then answer question 24. If your answer to question 23 is "No," do not answer any more questions and the Presiding Juror must sign and date this Special Verdict and return it to the Court Attendant.

24.     What is the amount of punitive damages?

Answer: _____

Presiding Juror must sign and date this Special Verdict and return it to the Court Attendant.

Dated: _____          Print Name: _____

Presiding Juror: _____

PLAINTIFF OBJECTS TO TESLA'S PROPOSED VERDICT FORM

OBJECTION: DEFENDANT'S DETAILED VERDICT FORM FAILS TO SET FORTH ALL OF THE LEGAL BASES FOR LIABILITY AND OVER EMPHASIZES INSTRUCTIONS FAVORABLE TO THE DEFENDANT, e.g., omission of whether a good faith investigation was conducted.

1

CALIFORNIA CIVIL RIGHTS LAW GROUP
ALEXANDER KRAKOW + GLICK LLP

2

3

4

DATED:  April 27, 2020            By:      _____/s/_____

5                                          Lawrence A. Organ, Esq.

6                                          J. Bernard Alexander, Esq.
                                           Navruz Avloni, Esq.
                                           Cimone A. Nunley, Esq.
7

8                                          Attorneys for Plaintiff OWEN DIAZ

9

10                           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

11

12                                   By      _/s/_____

13   DATED:  April 27, 2020                 TRACEY A. KENNEDY
                                            PATRICIA M. JENG
14

15                                          Attorneys for Defendant
                                            TESLA, INC. dba TESLA MOTORS, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28