1  LAWRENCE A. ORGAN (SBN 175503)
   larry@civilrightsca.com
2  NAVRUZ AVLONI (SBN 279556)
   navruz@civilrightsca.com
3  CIMONE A. NUNLEY (SBN 326915)
   cimone@civilrightsca.com
4  **CALIFORNIA CIVIL RIGHTS LAW GROUP**
5  332 San Anselmo Avenue
   San Anselmo, California 94960
6  Telephone:      (415)-453-7352
7  Facsimile:      (415)-785-7352

8  J. BERNARD ALEXANDER (SBN 128307)
9  **ALEXANDER KRAKOW + GLICK LLP**
   1900 Avenue of the Stars, Suite 900
10 Los Angeles, California 90067
   Telephone:      (310) 394-0888
11 Facsimile:      (310) 394-0811

12
   Attorneys for Plaintiffs,
13 DEMETRIC DI-AZ and OWEN DIAZ

14                 **UNITED STATES DISTRICT COURT**

15                 **NORTHERN DISTRICT OF CALIFORNIA**

16

17 DEMETRIC DI-AZ, OWEN DIAZ, and          Case No. 3:17-cv-06748-WHO
18 LAMAR PATTERSON,
                                           **PLAINTIFFS' DESIGNATION OF**
19              Plaintiffs,                 **DEPOSITION TESTIMONY WITH**
                                           **DEFENDANT'S OBJECTIONS AND/OR**
20         v.                              **COUNTERDESIGNATIONS**

21 TESLA, INC. dba TESLA MOTORS, INC.;     Pretrial Conference Date: May 11, 2020
   CITISTAFF SOLUTIONS, INC.; WEST         Time: 10:00 a.m.
22 VALLEY STAFFING GROUP;
   CHARTWELL STAFFING SERVICES, INC.;      Trial Date: June 8, 2020
23 and DOES 1-50, inclusive,               Complaint filed: October 16, 2017

24              Defendants.

25

26

27        Plaintiff Owen Diaz hereby designates the following deposition transcript excerpts for

28 presentation as part of his case in chief and submits these with Defendant's objections and/or

   counter designations:

**Delgado, Jackelin 10/10/19, Volume 1**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| 1 | 9:15-9:17 | **9:15 Q. BY MR. ORGAN: Okay. Ms. Delgado, could you**<br><br>**16 please state your full name for the record?**<br><br>17 A. Yes. Jackelin Delgado. | |
| 2 | 9:22-10:06 | **9:22 And if you could, give me just a little bit of**<br>**23 your educational background. Did you go to college?**<br>24 A. Yes, I did. I have a Bachelor's of Science in<br>25 human resources management.<br>**1 0 :1 Q. And where is that from?**<br>0 2 A. It's from the University of Phoenix in the Bay<br>0 3 area, California.<br>**0 4 Q. And then what year did you get your B.S. in HR**<br>**0 5 management from University of Phoenix?**<br>0 6 A. It was 2014. | Counterdesignation:  10:7-15. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>7 Q. Okay. And do you have any other college-level<br>8 degrees or above, other than your B.S. in HR management?<br>**9 A. No. I'm currently in the first year of my**<br>**10 Master's, but I don't have it.**<br>11 Q. Okay. That was going to be my next question.<br>12 And what are you pursuing a Master's Degree in?<br>**13 A. In business management.**<br>14 Q. Okay. So an M.B.A.?<br>**15 A. Yes.** |
| 3 | 10:22-11:06 | **10:22 Q. What year did you graduate high school?**<br>**23 A. In 2003.**<br>**24 Q. Okay. What high school did you go to?**<br>25 A. Gunderson High School in San Jose, California.<br>**11:01 Q. And what did you do after you graduated from**<br>**02 high school?**<br>03 A. I started working in human resources for Smart<br>04 & Final.<br>**05 Q. And what was your job title for Smart & Final?**<br>06 A. I was a field trainer for the Bay area. | Counterdesignation:  11:07-11:13.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>7 Q. And what did a field trainer do?<br><br>**8 A. We did the onboarding process. We trained new**<br><br>**9 hires. We did audits throughout the different stores and** |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | | 10 **just maintained compliance with employment practices as** 11 **well as business practices.** 12 Q. How long did you work for Smart & Final? 13 **A. Like four years, I believe, or so.** |
| 4 | 11:17-12:02 | **11:17 Q. And what was your next job after working in HR** **18 at Smart & Final?** 19 A. I worked for Target Corporation. **20 Q. And what did you do for Target Corporation?** 21 A. So I worked at a Bay area store in San Jose, 22 California, as a human resources team leader. **23 Q. How long did you work at Target?** 24 A. I'd say about six years, so about 2000 -- I 25 started with them in 2007, and then I believe I worked **12:01** there until about 2012, I think, so about six-and-a-half **02** years. | |
| 5 | 13:01-13:05 | **13:01 Q. And what did you do for Manpower Group?** 02 A. I was a staffing specialist, operations 03 specialist. **04 Q. How long did you work at Manpower?** 05 A. About two years. | |
| 6 | 14:01-15:17 | **14:01 Okay. So after Manpower, where did you go to** **02 work next?** 03 A. I went to work for another staffing company 04 called Net Polarity. **05 Q. How do you spell that one?** 06 A. N-E-T, P-O-L-A-R-I-T-Y, I believe. **07 Q. Okay. And how long did you work there?** 08 A. About two months, three months. **09 Q. And where did you go after that?** 10 A. So in March of 2015 I started working for 11 Chartwell Staffing Solutions. **12 Q. And what was your first job title for Chartwell** **13 Staffing Solutions?** 14 A. My first job title there was national HR 15 manager. **16 Q. And how long were you the national HR manager** | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | **17 for Chartwell Staffing Solutions?**<br>**18 A. I believe it was about six months, maybe.**<br>**19 Q. Okay. And then what was your next job for**<br>**20 Chartwell?**<br>**21 A. They promoted me to vice president of human**<br>**22 resources.**<br>**23 Q. So that would have been sometime around**<br>**24 September of 2015; is that right?**<br>**25 A. Yeah.**<br>**15:01 Q. Okay. And then how long did you work as VP of**<br>**02 HR for Chartwell after you received that promotion in**<br>**03 September of 2015?**<br>**04 A. The company laid me off in September of** 2016.<br>**05 Q. Okay. So it's fair to say that from**<br>**06 approximately September of 2015 to September of 2016 you**<br>**07 were the vice president of human resources for Chartwell**<br>**08 Staffing Solutions?**<br>**09 A. Correct.**<br>**10 Q. And what were your job duties as the vice**<br>**11 president of human resources for Chartwell Staffing**<br>**12 Solutions?**<br>**13** A. Well, they were to manage HR processes for our<br>**14** organization throughout our 14 states that we were<br>**15** conducting business. So I had to create processes that<br>**16** were to help align the HR practices throughout the<br>**17** organization. | |
| 7 | 15:23-16:02 | **15:23 How big was Chartwell?**<br>**24** A. So it was about 500 -- three to 500 employees,<br>**25** internally. And then I'm not quite a hundred percent<br>**16:01** sure of the temporary workforce, but I believe it was<br>**02** anywhere from eight to ten thousand. | |
| 8 | 17:05-17:13 | **17:05 Q. Okay. And as the vice president of human**<br>**06 resources, you were talking about your job duties and you**<br>**07 said that you managed the human resources processes for**<br>**08 all of the Chartwell companies or locations; is that**<br>**09 right?**<br>**10** A. Yes. So with a partnership of other chief<br>**11** officers, I was managing and creating processes to help | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 12 streamline and help with the compliance of the<br>13 organization, at the time. | |
| 9 | 18:11-<br>18:23 | **18:11 Tell me what your relationship was, or your**<br>**12 reporting relationship was, relative to**<br>**Veronica**<br>**13 Martinez.**<br>14 A. So Veronica Martinez, at the time, was a<br>branch<br>15 manager for the Haywood, California, office. And<br>when<br>16 she would come across any HR-related concerns<br>or<br>17 questions, she would reach out to myself and my<br>team.<br>**18 Q. I see. Okay.**<br>**19 As part of your job duties at Chartwell, did**<br>**20 you help create sort of uniform guidelines or**<br>**checklists**<br>**21 for things that your managers should be doing**<br>**when**<br>**22 looking into claims of termination or**<br>**harassment?**<br>**23 A. Yes. I tried to be a guide and a partner.** | Counter designation:  18:07-<br>18:9. Rule of completeness.<br>Fed. R. Evid. 106; Fed. R. Civ.<br>P. 32(a)(6).<br><br>7. At some point in time, did you<br>also have someone named<br>Veronica Martinez who<br>reported?<br>9. Veronica Martinez did not<br>report to me. |
| 10 | 19:02-<br>19:19 | **19:02 Q. And what training had you had in how**<br>**to conduct**<br>**03 an investigation up until the point you started**<br>**working**<br>**04 totally?**<br>05 A. The training I had was through previous<br>06 employers.<br>**07 Q. So like at -- I think you said you worked at**<br>**08 Target.**<br>09 A. Yes.<br>**10 Q. Did you receive training from Target about**<br>**how**<br>**11 to conduct an investigation?**<br>12 A. Yes. So Target did train us on how to execute<br>13 employee relations investigations at a lower level.<br>It<br>14 wasn't something that was trained on a, like,<br>manager<br>15 level.<br>**16 Q. Would you agree with the idea that any**<br>**17 investigation should be prompt, thorough, and**<br>**objective,**<br>**18 or impartial?**<br>19 A. Yes, I agree with that. | 19:16-19.  Designated testimony<br>is improper hypothetical lay<br>opinion testimony about human<br>resources' practices in<br>investigation not "rationally<br>based on the witness's<br>perception" and deponent not<br>disclosed as an expert.  Fed. R.<br>Evid. 701.<br><br>Counterdesignation:  19:20-<br>20:13.  Rule of completeness.<br>Fed. R. Evid. 106; Fed. R. Civ.<br>P. 32(a)(6).<br><br>`20 Q. Let me ask you this:`<br>`Are you a member of the`<br>`21 Society for Human`<br>`Resource Managers?`<br>**`22 A. I was, during that`**<br>**`time.`**<br>`23 Q. Okay. So in 2016,` |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-----------------|
| | | | when you were at H -- vice 24 president of human resources for Chartwell, you were also 25 a member of the Society for Human Resource Managers; is 1 that correct? |
| | | | 2 **A. Yes.** |
| | | | 3 Q. And have you ever used any of the -- I'll just 4 call it SHRM for short, S-H-R-M. Do you understand that 5 to be the Society for Human Resource Managers? |
| | | | 6 **A. Yes, I do understand that acronym.** |
| | | | 7 Q. Okay. Had you ever relied on, looked at any of 8 the SHRM materials relative to investigations? |
| | | | 9 **A. Yes, I did.** |
| | | | 10 Q. And you would agree that the SHRM guidelines or 11 samples also state that |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | investigations need to be prompt, 12 thorough, and impartial, or objective, right? 13 A. Yes, I do. |
| 11 | 20:19-20:25 | 20:19 You would agree that it's important, as part of 20 an investigation, to document what information you learn 21 in an investigation? 22 A. Yes. 23 Q. Notetaking is an important part of 24 investigation? 25 A. Yes. | 20:19-20:25.  Designated testimony is improper hypothetical lay opinion testimony about human resources' practices not "rationally based on the witness's perception" and deponent not disclosed as an expert.  Fed. R. Evid. 701.<br><br>Counterdesignation:  21:1-14.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6). |
| 12 | 21:15-22:02 | 21:15 Q. What are the goals that you have in an 16 investigation? What is it you are trying to achieve in 17 an investigation? 18 A. So depending on the investigation or any 19 workplace investigation, my goal, ultimately, is to make 20 sure that we are providing a safe work environment for 21 all people in the organization. 22 Q. And part of providing a safe work environment 23 for all of the employees is to ensure that they have an 24 environment free from any kind of racial slurs or 25 racially insensitive conduct; correct? 22:01 A. Yes. That would be one of many things that we 02 want to prevent. | Designated testimony is improper hypothetical lay opinion testimony about human resources' practices in investigation and workplace environment not "rationally based on the witness's perception" and deponent not disclosed as an expert.  Fed. R. Evid. 701. |
| 13 | 23:10-24:20 | 23:10 Q. BY MR. ORGAN: So, for example, let's say that 11 someone is offended by use of the N word in the workplace 12 and someone else is not offended by use of the N word in 13 the workplace, the person who is offended by | Designated testimony is improper lay opinion testimony about human resources' practices given hypothetical harassment example and best practices for interviewing not "rationally |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | the use of<br>14 the N word in the workplace should still be protected<br>15 regardless of how the other person feels, regardless of<br>16 how the others feel; correct?<br>17 A. Correct.<br>18 Q. Okay. Let's talk a bit more about<br>19 investigations, in general.<br>20 When you are trying to be -- conduct a thorough<br>21 investigation, you would agree that it's important to<br>22 conduct substantive interviews, meaning to touch on the<br>23 important issues that are brought up?<br>24 A. Correct.<br>25 Q. And would you typically meet with the<br>24 :01 complainant, first, to get an idea of what issues they<br>02 are raising?<br>03 A. Yes.<br>04 Q. And why do you do that?<br>05 A. Because they are normally the person that<br>06 brought it to your attention; so, otherwise, I wouldn't<br>07 know where to start investigating and who to speak to, if<br>08 there was anyone else involved. So they are going to<br>09 come to me with the information that needs to be looked<br>10 into further, if there is anything else that needs to be<br>11 looked into.<br>12 Q. Then after you've interviewed the complainant,<br>13 who do you typically interview next?<br>14 A. Any witnesses or any other members named in his<br>15 statement or her statement.<br>16 Q. Okay. And then --<br>17 And is it true that one of your goals is you<br>18 want to try to interview all of the witnesses so that you<br>19 can get a full picture of what has happened?<br>20 A. Ultimately, yes, that's the goal. | based on the witness's perception" and deponent not disclosed as an expert.  Fed. R. Evid. 701. |
| 14 | 25:03-25:22 | 25:03 Q. What are the basic questions that you usually<br>04 ask in every investigation?<br>05 A. You know, how has this affected you, or were<br>06 you -- who are -- is there any witnesses? Basically, we<br>07 start off with asking for them to tell you a description | Designated testimony is improper hypothetical lay opinion testimony about human resources' practices as to questions asked in an interview not "rationally based on the witness's perception" and |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       | **08** of, you know, their complaint and what -- how they felt<br>**09** during the situation, and if anyone had seen the<br>**10** situation, and what would they like to come of them<br>**11** coming forward.<br>**12 Q. Like what the outcome is?**<br>**13** A. Yeah, like what would they like for the outcome<br>**14** to be, if they had an ideal outcome.<br>**15 Q. Do you like to conduct your interviews in**<br>**16 person?**<br>**17** A. If possible, yes.<br>**18 Q. And why do you like to conduct your interviews**<br>**19 in person?**<br>**20** A. I believe that when you have the person sitting<br>**21** in front of you, you can get a better understanding of<br>**22** what is going on. | deponent not disclosed as an expert. Fed. R. Evid. 701. |
| 15 | 26:09-26:16 | **26:09 Q. And is it your practice to document your**<br>**10 interviews at the same time that you are doing the**<br>**11 interview, meaning do you take your notes while you are**<br>**12 interviewing the person?**<br>**13** A. I do take notes while interviewing.<br>**14 Q. You said earlier sometimes you take handwritten**<br>**15 notes and sometimes you take notes in your computer.**<br>**16** A. Correct. | Designated testimony is improper hypothetical lay opinion testimony about human resources' practices on notetaking in interviews not "rationally based on the witness's perception" and deponent not disclosed as an expert. Fed. R. Evid. 701.<br><br><u>Counterdesignation</u>: 26:17-26:23.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>17 Q. Did you have any<br>particular practice when you<br>18 were vice president of human resources for Chartwell<br>19 that -- at the Tesla facility, relative to |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | employees at<br><br>20 the Tesla facility?<br><br>21 **A. I don't recall; but**<br><br>**if I did, they were**<br><br>22 **probably on paper which**<br><br>**then transferred onto the**<br><br>23 **computer.** |
| 16 | 26:24-27:23 | **26:24 Q. Okay. And is it your practice to usually come**<br>**25 up with a final written report of what your investigation**<br>**27:01 has concluded?**<br>02 A. Yes.<br>**03 Q. And why do you want to have a final written**<br>**04 report?**<br>05 A. It summarizes the full investigation from<br>06 beginning to end.<br>**07 Q. And does it typically come to a solution as to**<br>**08 what happened?**<br>09 A. That's the goal, ultimately, yes.<br>**10 Q. And then if it's -- there is a determination**<br>**11 that inappropriate conduct has occurred, what is the next**<br>**12 step?**<br>13 A. We would -- I would discuss it with my partners<br>14 and possibly take legal advice from our general counsel<br>15 as to what the next step would be and if there is a form<br>16 of corrective action that needs to be taken.<br>**17 Q. And when you mentioned your "partners," those**<br>**18 are the people like the president of the company at**<br>**19 Chartwell; is that correct?**<br>20 A. Yeah, like other -- my HR generalist, general<br>21 counsel, and also, depending on the situation, I would<br>22 partner with the branch managers, as they have more<br>23 background on the employees, like previous history. | Designated testimony is improper hypothetical lay opinion testimony about human resources' practices in preparing reports of investigations not "rationally based on the witness's perception" and deponent not disclosed as an expert.  Fed. R. Evid. 701. |
| 17 | 28:13-28:19 | **28:13 Q. BY MR. ORGAN: Okay. So we were -- I was about**<br>**14 ready to ask you some questions about your investigations** | |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | 15 into any matters at the Tesla factory. So let me just<br>16 sort of establish a background. When you were working<br>17 for Chartwell, was Tesla one of the contractors with whom<br>18 Chartwell placed employees?<br>19 A. I believe so. | |
| 18 | 30:03-<br>32:05 | 30:03 Q. Okay. To try and help refresh your<br>04 recollection, we're going to show you something that has<br>05 already been marked in this case as Exhibit 37, and<br>06 hopefully that will help you. I don't actually have a<br>07 hard copy of it there.<br>08 For the record, it's Bates stamped Tesla 35 to<br>09 Tesla 37. And it's an email of the two attachments to<br>10 the emails, which are pictures.<br>11 So if you could --<br>12 I think Julianne is going to show you that.<br>13 A. Okay.<br>14 Q. And once you've had a chance to look at it,<br>15 then let me know, and then I'll ask you some follow-up<br>16 questions.<br>17 MS. STANFORD: Do you know how to scroll?<br>18 THE WITNESS: Yes.<br>19 MS. STANFORD: You can scroll down to read the<br>20 rest of the email and then the attachment.<br>21 THE WITNESS: Okay. I've read it.<br>22 Q. BY MR. ORGAN: And does this --<br>23 After you've read Exhibit 37, does that refresh<br>24 your recollection that you previously saw this as part of<br>25 a complaint about conduct at Tesla?<br>31:01 A. I do remember the pictures. And then reading<br>02 through the summary here, I do recall the pictures and<br>03 the specific, like, complaint coming forward.<br>04 Q. Okay. So the pictures are -- the two pictures<br>05 attached to the email, you remember receiving those<br>06 previous, when you were working at Chartwell; is that<br>07 correct?<br>08 A. Yeah, I do. I do remember someone showing them<br>09 to me.<br>10 Q. Were you copied? Was the email sent to you,<br>11 like copied to you? Or how did you see the | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | **email of the** <br> **12 pictures?** <br> 13 A. I don't remember if it was given to me by the <br> 14 branch or emailed to me. But I do remember seeing this. <br> **15 Q. Okay. And once you received this, did you,** <br> **16 then, start an investigation?** <br> 17 A. The first thing I did was speak to the branch. <br> **18 Q. Okay. And who did you talk to in the branch?** <br> 19 A. I don't remember who it was, specifically. But <br> 20 if I had to recall someone that I would reach out to, it <br> 21 would be Veronica Martinez as the branch manager. <br> **22 Q. Okay. So your typical practice would be to** <br> **23 talk to Veronica if something was going on at Tesla,** <br> **24 because she was the branch manager covering that area;** <br> **25 correct?** <br> **32:01** A. Yes. Because they do have the relationship <br> 02 established with the clients and the employees that are <br> 03 currently working there, so we always try to go through <br> 04 them first just because they have that established <br> 05 relationship with them already. | |
| 19 | 34:12-39:07 | **34:1 2 Exhibit 184, for the record, is an eight-page** <br> **13 document Bates stamped NS 38 to 45.** <br> **14 (Deposition Exhibit 184 was marked for** <br> **15 identification.)** <br> **16 THE REPORTER: I've given the witness the** <br> **17 document.** <br> **18 Q. BY MR. ORGAN: Okay. And, Ms. Delgado, if you** <br> **19 could, look over the emails. We'll get to the** <br> **20 handwritten statements later. You could look at it** <br> **21 overall, now, or, if you want, we could just go over the** <br> **22 emails, because that's what your questions are going to** <br> **23 be about, initially. Okay?** <br> 24 A. I'm sorry, can you repeat that? I apologize. <br> **25 Q. Could you please just refer to the first two** <br> **35:01 pages of Exhibit 184, which are the emails relative to** <br> 02 your investigation? <br> 03 A. Okay. I've read it. The first two pages? <br> **04 Q. Yeah.** <br> **05 And so it appears that the email that is at the** <br> **06 bottom of the first page and then continues over onto the** <br> **07 second page is an email that you sent on or** | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | about<br>08 January 25 of 2016; is that right?<br>09 A. Yes. That's what it says here.<br>10 Q. Okay. And that email was sent as part of your<br>11 job --<br>12 One of your job duties is to send emails to<br>13 people that you work with within the company; is that<br>14 correct?<br>15 A. Yes.<br>16 Q. So you sent the email there on or about<br>17 January 25, 2016, at 11:07 a.m. Is that right?<br>18 A. Oh, yes. That's what it says here.<br>19 Q. And you --<br>20 It appears that you attached statements that<br>21 you had obtained from two of the people who you had<br>22 interviewed; is that correct?<br>23 A. Yes.<br>24 Q. And that --<br>25 So you -- at this point in time, by January 25<br>36:01 of 2016, you had already received the pictures and notice<br>02 of the complaint by Mr. Owen Diaz; right?<br>03 A. I believe so. If I conducted this<br>04 investigation, yes.<br>05 Q. And then it also appears that you had spoken<br>06 with Mr. Diaz and Mr. Ramon Martinez; correct?<br>07 A. Yes.<br>08 Q. And then you were sending those two statements<br>09 that you had collected to Veronica Martinez, who is the<br>10 branch manager for Chartwell in Haywood; right?<br>11 A. Yes.<br>12 Q. Is it fair to say that by this time, Monday,<br>13 January 25, 2016, you had completed your investigation<br>14 into Mr. Diaz' complaint?<br>15 A. In reading this email, it seems as if there was<br>16 some follow-up to be done. But it looks like the results<br>17 of the investigation had been conducted --concluded, I<br>18 apologize, had been concluded.<br>19 Q. And in terms of the conclusion that you had<br>20 reached, relative to Mr. Diaz' complaint, you had, in<br>21 fact, substantiated that at least some of the conduct<br>22 about which Mr. Diaz had complained was | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | substantiated; <br> 23 correct? <br> 24 A. Yes. <br> 25 Q. You had confirmed that the drawing that you had <br> 37:01 seen pictures of was, indeed, something that had been put <br> 02 in the workplace near Mr. Diaz; correct? <br> 03 A. Yes. According to this email and the <br> 04 attachments, it seems as if it was found that the picture <br> 05 offended someone, and so we took action. <br> 06 Q. You thought that the picture offended Mr. Owen <br> 07 Diaz who saw it; right? <br> 08 A. Yes. <br> 09 Q. And just so we're clear, the picture -- the <br> 10 offensive pictures that we're talking about are those <br> 11 pictures that you saw in Exhibit 37 which you looked at <br> 12 just a few minutes ago; right? <br> 13 A. Correct. <br> 14 Q. Now, in addition to that, Mr. Diaz said that he <br> 15 was concerned for his safety. That's something he told <br> 16 you; right? <br> 17 A. Yes. <br> 18 Q. And if you look in your email at -- <br> 19 You also were informed that Mr. Diaz did not <br> 20 feel comfortable working with Ramon Martinez; right? <br> 21 A. Right. <br> 22 Q. You stated in your email that you wanted to <br> 23 ensure a safe and harassment-free workplace for all <br> 24 employees working at the Tesla factory; right? <br> 25 A. Uh-huh. Yes. <br> 38:01 Q. Okay. And the reason that you wanted to ensure <br> 02 a safe and harassment-free workplace for all employees is <br> 03 all employees who worked at that Tesla factory are <br> 04 entitled to that harassment-free workplace; right? <br> 05 A. Yes. <br> 06 Q. And if they are -- if employees are exposed to <br> 07 offensive pictures, that undermines a safe and <br> 08 harassment-free workplace, doesn't it? <br> 09 A. Yes. <br> 10 Q. So you also mention in this email that you were | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 11 going to place Mr. Ramon Martinez on corrective action.<br>12 A. Yes.<br>13 Q. And the reason that you are going to put<br>14 Mr. Martinez on corrective action is that you had<br>15 determined, at least, that Mr. Martinez had placed the<br>16 offensive drawing on the cardboard. Right?<br>17 A. Correct.<br>18 Q. In fact, Mr. Martinez admitted that he put the<br>19 offensive drawing on the cardboard; right?<br>20 A. Correct.<br>21 Q. And he also said, on the second page of your<br>22 email, that Mr. Martinez would be polite -- placed on<br>23 corrective action, with a final warning for harassment in<br>24 the workplace due to offensive behavior; is that correct?<br>25 A. Yes.<br>39:01 Q. And did you draft the final warning for<br>02 Mr. Martinez?<br>03 A. I would hope that I did.<br>04 Q. Okay. It's your practice to, when you are<br>05 getting issued a final warning, to put that into writing,<br>06 isn't it?<br>07 A. Yes, it is. | |
| 20 | 39:17-<br>40:11 | 39:17 Let me ask you this question: Were you aware<br>18 that there were other contracting or staffing agencies<br>19 that were at the Tesla facility?<br>20 A. Yes. I was made aware only because I had to<br>21 reach out -- according to this email, I had to reach out<br>22 to another agency to speak to one of their employees that<br>23 was named in this investigation.<br>24 Q. Okay. That was Citistaff?<br>25 A. Yes. According to this email, it was<br>40:01 Citistaff.<br>02 Q. And you also had to reach out to Tesla, too,<br>03 didn't you?<br>04 A. I did not reach out to Tesla. That would have<br>05 been something I would have partnered with Veronica, the<br>06 branch manager, as she had the established relationship<br>07 with the client.<br>08 Q. So although you didn't directly reach out to<br>09 Tesla, you expected that Veronica Martinez was going to | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | 10 do that; correct?<br>11 A. Correct. | |
| 21 | 40:18-42:13 | **40:18 Q. With respect to this particular complaint that**<br>**19 you investigated by Mr. Owen Diaz, let's, if you could,**<br>**20 turn to the document, the attachment that you have.**<br>**21 So go to the first attachment, which the Bates**<br>**22 number at the bottom right is NS 40 to NS 42.**<br>23 A. Okay.<br>**24 Q. Is that your handwriting on pages NS 40 to NS**<br>**25 42?**<br>**41:01** A. Yes, this is.<br>**02 Q. Okay. And so had you created this template**<br>**03 before you met with Mr. Diaz?**<br>04 A. The investigation questions?<br>**05 Q. Yeah, the investigation questions, the**<br>**06 typewritten investigation questions on NS 40 to 42?**<br>07 A. Yes.<br>**08 Q. Okay. So prior to interviewing Mr. Diaz, you**<br>**09 created the template -- I assume in your office; is that**<br>**10 right?**<br>11 A. Yes.<br>**12 Q. And then did this -- was this sort of your**<br>**13 standard format that you would use in any investigation?**<br>14 A. It's fairly standard.<br>**15 Q. Okay. Now, let's look at the top of NS 40.**<br>**16 There is an asterisk there, and it says, "Spoke to Monica**<br>**17 Deleon, branch manager, Citistaff. Granted HR VP**<br>**18 permission to speak to Mr. Omar." Is that what you**<br>**19 wrote?**<br>20 A. Yes.<br>**21 Q. And why did you write that?**<br>22 A. Because Mr. Omar is not an employee of<br>23 Chartwell Staffing Solutions. And in order for us to<br>24 speak to an employee outside of our, you know, company,<br>25 out of -- I thought it would be -- the right thing to do<br>**42:01** is to reach out to the employer and get permission to<br>02 speak to their employee.<br>**03 Q. And just so we're clear, for the record, I**<br>**04 think you meant, when you said Mr. Omar, you meant** | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | **05 Mr. Owen Diaz; correct?**<br>**06 If you go back to your email, you can see it**<br>**07 says Mr. Owen, not Mr. Omar?**<br>**08 A. Okay. Yeah. Maybe that was a typo on my part.**<br>**09 Q. Okay.**<br>**10 Where did you meet with Mr. Owen Diaz when you**<br>**11 interviewed him?**<br>**12 A. I did not meet in person with this individual.**<br>**13 If I did speak to them, it was over the phone.** | |
| 22 | 43:07-45:11 | **43:07 Q. But you talked to Mr. Diaz on the 25th -- on**<br>**08 January 25, 2016; is that correct?**<br>**09 A. Correct.**<br>**10 Q. And it appears that you talked to him**<br>**11 sometime -- either at 9:58 a.m. or 10:00 a.m.; is that**<br>**12 right?**<br>**13 A. Correct.**<br>**14 Q. And that's your standard practice, to put the**<br>**15 time and date, when you are talking to someone?**<br>**16 A. Yes.**<br>**17 Q. And you recall that with Mr. Diaz, you talked**<br>**18 to Mr. Diaz over the phone; is that right?**<br>**19 A. Correct.**<br>**20 Q. Okay. And is there some reason that you didn't**<br>**21 go meet with Mr. Diaz in person?**<br>**22 A. I'm not aware of there being --**<br>**23 Either I was physically not in the state -- I'm**<br>**24 not quite sure. I don't remember -- recall the reason**<br>**25 why I didn't meet with him in person.**<br>**44:01 Q. Okay. Then if you could, please, read to --**<br>**02 into the record what you wrote under your question number**<br>**03 one, what occurred.**<br>**04 A. "Working over at elevator one, because he is**<br>**05 the lead at elevator one. Palletwriter/cardboard bale**<br>**06 wrapped in wire. When he went to lift the bale, he said**<br>**07 that the picture was there for him to see. He took a**<br>**08 picture of it right away and called Michael Wheeler and**<br>**09 Israel, and they both took pictures attached."**<br>**10 Q. So based on your conversation with Mr. Diaz --**<br>**11 strike that.** | <u>Counterdesignation:</u>  45:12-22. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>12 Q. Ramon Martinez was a Chartwell employee; is<br>13 that right?<br>**14 A. Yes.**<br>15 Q. Okay. And Mr. Martinez was a lead in the<br>16 recycling department at Tesla; is that right?<br>17 **A. I'm not quite sure what his title was.**<br>18 Q. Okay. But he had some type of supervisorial<br>19 duties at the Tesla factory; is that correct?<br>20 **A. I can't say for sure that -- what his title**<br>21 **was, so I wouldn't be sure to say that he was a**<br>22 supervisor. I just have whatever is on paper here. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       | 12 Let me ask you this: In terms of your<br>13 handwriting here, is that a direct quote of Mr. Diaz, or<br>14 is that your own paraphrasing of what he said?<br>15 A. I'm paraphrasing as he's speaking to me.<br>16 Q. Okay. So even though you are taking notes as<br>17 Mr. Diaz is talking to you, it's not an exact quote of<br>18 what he told you; correct?<br>19 A. No. If it was an exact quote, I would have put<br>20 it in quotations. As they are speaking to me, I'm trying<br>21 to get as much information on paper as possible.<br>22 Q. I see. So your practice is if you are actually<br>23 quoting someone, you put it in quotation marks; is that<br>24 correct?<br>25 A. Correct.<br>45:01 Q. Okay. And since none of the words in response<br>02 to question number one, what occurred, is in quotation<br>03 marks, it's your understanding that that is a paraphrase<br>04 of what Mr. Diaz told you over the phone; correct?<br>05 A. Yes.<br>06 Q. Now, let's go to question two, "Who committed<br>07 the alleged harassment?" What did you write there?<br>08 A. "The alleged harassment was committed by<br>09 Ramon."<br>10 Q. And the Ramon there is Ramon Martinez; correct?<br>11 A. Correct. |  |
| 23 | 46:05-<br>47:04 | 46:05 Q. Okay. Then let's go to item number three:<br>06 "When and where did the harassment occur?"<br>07 What did you write in response to that?<br>08 A. "The drawing was done on the cardboard from the<br>09 recycle center."<br>10 Q. Okay. And you had seen -- at this point in<br>11 time, you had already seen the picture of the drawing,<br>12 too; correct?<br>13 A. I would assume so.<br>14 Q. Okay. And let's go to item number four: How<br>15 often has the offensive behavior occurred?<br>16 What did Mr. -- what did you record Mr. Diaz<br>17 told you there?<br>18 A. "Owen mentioned history that happened in |  |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | **19** elevator. HR was not aware nor was Veronica, branch<br>**20** manager. The email was sent to Wayne Jackson,<br>**21** supervisor."<br>**22 Q. Mr. Diaz told you about the fact that he had**<br>**23 had a history of inappropriate conduct by Ramon Martinez;**<br>**24 right?**<br>**25** A. Yes.<br>**47:01 Q. And Mr. Diaz also told you that he had sent an**<br>**02 email to Wayne Jackson, a supervisor, about that prior**<br>**03 inappropriate conduct; correct?**<br>**04** A. As stated here, yes. | |
| 24 | 47:16-47:19 | **47:16 Q. BY MR. ORGAN: Did you speak to Mr. Wayne**<br>**17 Jackson about what the prior inappropriate conduct was?**<br>**18 MS. JENG: Objection: Misstates the evidence.**<br>**19 THE WITNESS:** Not that I recall. | |
| 25 | 48:03-52:06 | **48:03 "And why didn't you follow up with Wayne**<br>**04 Jackson about the prior inappropriate conduct?")**<br>**05 THE WITNESS:** I did not follow up with him,<br>**06** because that would be something that I would have asked<br>**07** the branch manager to follow up with.<br>**08 Q. BY MR. ORGAN: Okay. So your best recollection**<br>**09 is that you would have told Veronica Martinez to follow**<br>**10 up with Wayne Jackson about any prior inappropriate**<br>**11 conduct; correct?**<br>**12** A. Correct. They have the relationship with the<br>**13** client so, therefore, I would have reached out to her and<br>**14** had her reach out to the client to speak to this person.<br>**15 Q. And as a trained investigator, you would agree**<br>**16 that it would be important to find out what that history**<br>**17 of inappropriate conduct that had been directed at**<br>**18 Mr. Diaz by Mr. Martinez was; right?**<br>**19** A. Correct.<br>**20 Q. And certainly before you could conclude a**<br>**21 complete investigation into Mr. Diaz' allegations, you**<br>**22 would want to know all of what had happened between him**<br>**23 and Ramon Martinez; right?**<br>**24** A. Correct. | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | 25 Q. Mr. --<br>49:01 As you indicated in your email to Veronica<br>02 Martinez, you indicated that Mr. Diaz had said that he<br>03 was -- he didn't feel safe; right?<br>04 A. Yes, based on this email.<br>05 Q. And so if Mr. Martinez had engaged in conduct<br>06 over a period of months that had been threatening in<br>07 nature, that would be important evidence relative to<br>08 determining how widespread the harassment was; right?<br>09 MS. JENG: Objection: Lacks foundation.<br>10 THE WITNESS: Ultimately.<br>11 Q. BY MR. ORGAN: Did you --<br>12 A. Yes.<br>13 Q. Ultimately yes?<br>14 A. Uh-huh, yes.<br>15 Q. Now, do you recall whether or not Veronica<br>16 Martinez ever got back to you about what the history was<br>17 between Ramon Martinez and Owen Diaz?<br>18 A. No, I do not recall.<br>19 Q. If you had received information back from<br>20 Veronica Martinez, would you have put that in writing<br>21 somewhere?<br>22 A. In terms of my professional habits, I would<br>23 think that I would have.<br>24 Q. Okay. Let's go to your next question here,<br>25 question number five: How did it affect you and how did<br>50:01 you react?<br>02 Please tell us what you wrote there.<br>03 A. "My stomach dropped."<br>04 Q. So Mr. Martinez told you that his stomach<br>05 dropped; is that correct?<br>06 A. Yes, according to my notes.<br>07 Q. If you look at the -- if you look at this<br>08 document a little closer, it looks like something has<br>09 been whited out before "My stomach dropped." Do you see<br>10 that?<br>11 A. Yes.<br>12 Q. Do you know what it was that you wrote there<br>13 that was then whited out?<br>14 A. I don't recall what it was, but, more than<br>15 likely, it was probably a mistake, so I wanted to make<br>16 sure the paperwork looked fairly clean; but I don't<br>17 recall. | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 18 Q. Okay. Was it you who did the whiting out or<br>19 did someone else white out whatever was written before<br>20 "My stomach dropped"?<br>21 A. Honestly, I don't remember.<br>22 Q. And if you look back at page one of this<br>23 report, which is on Bates number NS 40, look up at the<br>24 top in your response under question one. When you were<br>25 recording Mr. Diaz' response there, your practice there<br>51:01 was just kind of write over what you had written before.<br>02 Do you see that in the second line there?<br>03 A. Yes. Yes, I see that.<br>04 Q. Do you think that maybe you wrote over<br>05 something in that -- the first bit of your response to<br>06 question five and that maybe someone else whited it out<br>07 later?<br>08 MS. JENG: Objection: Calls for speculation<br>09 and lacks foundation.<br>10 THE WITNESS: Yeah. I'm not sure why that is<br>11 whited out or why that was done, to be honest.<br>12 Q. BY MR. ORGAN: Sure. So you don't -- as you<br>13 stand here today testifying about the document, you have<br>14 no recollection one way or the other whether you whited<br>15 it out or whether someone else did; correct?<br>16 A. Yes. I don't remember, and I don't know why<br>17 that would have been done.<br>18 Q. Okay. Other than Mr. Diaz telling you how it<br>19 affected him by his stomach dropping out, do you recall<br>20 anything else that Mr. Diaz said?<br>21 A. I do not recall.<br>22 Q. Isn't it true, though, that based on what<br>23 Mr. Diaz told you, you understood him to be very upset<br>24 about the conduct that he had been exposed to by Ramon<br>25 Martinez; right?<br>52:01 A. Yes, he was bothered.<br>02 Q. And based on your statement in the email that<br>03 you sent, not only was Mr. Diaz bothered but that he was<br>04 concerned about his personal safety from Mr. Martinez; | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | 05 right?<br>06 A. Correct. | |
| 26 | 53:01-59:05 | **53:01 Q. BY MR. ORGAN: You also stated, in response to**<br>**02 question number four, that Mr. Diaz was complaining about**<br>**03 a history of inappropriate conduct in the elevator;**<br>**04 right?**<br>**05 THE WITNESS: Yes, according to --**<br>**06 MS. KUMAGAI: Objection: Misstates the**<br>**07 document.**<br>**08 This is Susan.**<br>**09 Q. BY MR. ORGAN: I'm sorry, your answer was**<br>**10 "yes;" is that correct?**<br>11 A. Yes. According to my notes, he had mentioned<br>12 history that happened in the elevator.<br>**13 Q. Okay. Now, let's go to question six.**<br>**14 Your question there is: "Has your job been**<br>**15 affected?"**<br>**16 Please state what you wrote in response to**<br>**17 question six.**<br>18 A. "Yes. I look around behind my back when I pick<br>19 up balers and I don't feel safe."<br>**20 Q. Okay. So Mr. Diaz had communicated to you the**<br>**21 concept that he was concerned for his safety; right?**<br>22 A. Yes.<br>**23 Q. And this was a concern to you, wasn't it?**<br>24 A. Yes.<br>**25 Q. And that's why you recommended taking**<br>**54:01 corrective action against Mr. Martinez, because he had**<br>**02 engaged in conduct that had made Mr. Diaz feel unsafe and**<br>**03 uncomfortable in the workplace; right?**<br>04 A. Correct.<br>**05 Q. Now let's go to number seven: Were there any**<br>**06 other people present when the incident occurred?**<br>**07 Please state what you wrote in response to that**<br>**08 question.**<br>09 A. "No. Just myself."<br>**10 Q. Now, let me ask you: In terms of the notes**<br>**11 here by -- that you took, which are these three pages of**<br>**12 notes from Mr. Diaz, NS 40, 41, and 42, these are all**<br>**13 notes that you were taking in the course of your job**<br>**14 duties conducting an investigation for** | 53:1-12:  Cumulative and speculative testimony.  Fed. R. Evid. 401-403. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | Chartwell;<br>15 correct?<br>16 A. That is correct.<br>17 Q. And the things that you were recording here<br>18 were statements that were given to you at or about the<br>19 time that you created the document, which was<br>20 approximately 10:00 a.m. on January 25 of 2016; correct?<br>21 A. That is correct.<br>22 Q. And you were trying to record your notes as<br>23 accurately as you possibly could?<br>24 A. Correct. That is correct.<br>25 Q. And that's your typical business practice is to<br>55:01 try to record as accurately as you can; right?<br>02 A. Yes.<br>03 Q. Okay. Let's go on to question number eight on<br>04 page NS 42.<br>05 The question is: Are there any other notes,<br>06 physical evidence or other documentation to support the<br>07 harassment claim?<br>08 And what did you write in response to that<br>09 question?<br>10 A. "Yes, the drawing on the cardboard and the<br>11 pictures we took and my email that I sent to client."<br>12 Q. Okay. And was there a reason that you didn't<br>13 attach the email and the pictures to your report that you<br>14 were sending to Veronica Martinez?<br>15 A. Not that I can recall.<br>16 Q. In terms of the scope of evidence, though, that<br>17 you reviewed for your investigation, that scope of<br>18 evidence would have included the two statements that you<br>19 got, one from Mr. Diaz and one from Mr. Martinez, and<br>20 then, also, the email and the pictures; correct?<br>21 A. Correct.<br>22 Q. And then other than your interviews with<br>23 Mr. Diaz and Mr. Martinez, you did not interview anybody<br>24 else relative to what happened to Mr. Diaz in the<br>25 workplace; right?<br>56:01 A. Correct.<br>02 Q. But it is fair to say that at least you talked | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | 03 to Veronica Martinez about things related to this<br>04 complaint by Mr. Diaz? Right?<br>05 A. I did talk to her, yes.<br>06 Q. You didn't take any notes relative to your<br>07 conversation with Ms. Martinez; correct?<br>08 A. No, I did not.<br>09 Q. Do you know whether or not Ramon Martinez and<br>10 Veronica Martinez were related in any way?<br>11 A. Not that I'm aware of.<br>12 Q. Okay. My question is a little broader. Do you<br>13 actually know whether they are related or not?<br>14 A. No, I do not.<br>15 Q. Okay. Let's go to question number nine: "Do<br>16 you know any other pertinent information?"<br>17 What did you record in response to that?<br>18 A. "No."<br>19 Q. Now, I notice that you put the "no" somewhat<br>20 indented, unlike your other written responses. Do you<br>21 know if there was something to the left of "no" that was<br>22 whited out?<br>23 A. Not that I'm aware of or recall.<br>24 Q. Okay. Let's go to question ten which says:<br>25 "How would you like to see the information resolved?"<br>57:01 What did you report in response to that?<br>02 A. "He should be terminated. I do not trust him."<br>03 Q. So Mr. Diaz communicated to you that he didn't<br>04 feel like he should have to work with Mr. Martinez again;<br>05 correct?<br>06 A. Based off this, yes.<br>07 Q. And what did you say to Mr. Diaz in response to<br>08 him saying that he wanted Ramon Martinez terminated?<br>09 A. I don't recall what I said to him.<br>10 Q. Okay. Let's go to the last -- the last<br>11 question: For additional notes.<br>12 What did you record there?<br>13 A. "Afraid of retaliation. Sent an email with<br>14 picture to client supervisors. Feel that picture was<br>15 racial statement, jigaboo."<br>16 Q. Okay. So let's go through those one by one.<br>17 These are other things that Mr. Diaz told you during the<br>18 course of your interview; is that correct?<br>19 A. Yes. | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 20 Q. And do you remember anything else other than<br>21 the fact that Mr. Diaz told that you he was afraid of<br>22 being retaliated against?<br>23 A. Not that I recall.<br>24 Q. Did you ask Mr. Diaz why he was afraid of<br>25 retaliation?<br>58:01 A. Possibly, but I don't recall what questions I<br>02 had for him.<br>03 Q. And you didn't record the reason why Mr. Diaz<br>04 was afraid of retaliation, then?<br>05 A. No, I did not.<br>06 Q. The next bullet you have there is: "Sent an<br>07 email picture to client supervisors."<br>08 Did you ask Mr. Diaz what he meant by that?<br>09 A. I don't recall what I asked him.<br>10 Q. Okay. And then let's go to the last bullet<br>11 point you have there: "Feel that picture was racial<br>12 statement, jigaboo."<br>13 In terms of Mr. Diaz, he communicated to you<br>14 that he believed the picture we looked at before in<br>15 Exhibit 37 was a racial statement; correct?<br>16 A. According to this, yes.<br>17 Q. And if you remember, the picture had,<br>18 underneath it, the word "Booo," B-O-O-O; remember that?<br>19 A. I'm sorry, can you repeat that, please?<br>20 Q. If you remember, the picture in Exhibit 37,<br>21 that you saw, had B-O-O-O under it, "Booo;" right?<br>22 A. Can I see it again, please? Sorry.<br>23 Q. Sure.<br>24 MR. ORGAN: Julianne, can you please show that<br>25 to her?<br>59:01 THE WITNESS: Yes. I do see the picture and it<br>02 says B-O-O-O.<br>03 Q. BY MR. ORGAN: Right. Mr. Diaz told you that<br>04 he interpreted that to mean jigaboo; correct?<br>05 A. Yes. Based off my notes, he did. | |
| 27 | 59:16-59:20 | 59:16 Q. If you had questioned his credibility, though,<br>17 that would have been something you would have noted,<br>18 right?<br>19 A. Yes. I would have made documentation of that<br>20 somewhere in my notes. | Counterdesignation:  59:6-15. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>6 Q. Okay. When you talked |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | to Mr. Diaz over the<br><br>7 phone, did he seem<br><br>credible, to you?<br><br>8 **A. I don't question**<br><br>**credibility when I'm**<br><br>9 **interviewing. I take**<br><br>**every investigation**<br><br>**neutral. So at**<br><br>10 **the time of me taking**<br><br>**notes, I always take every**<br><br>11 **investigation**<br><br>**seriously. So I can't**<br><br>**remember or recall**<br><br>12 **that I didn't take him**<br><br>**seriously. I just -- when I**<br><br>13 **document, I'm assuming**<br><br>**that anything someone is**<br><br>**telling**<br><br>14 **me is -- I'm trusting**<br><br>**them with the information**<br><br>**they are**<br><br>15 **giving me.** |
| 28 | 60:06-60:14 | **60:06 Q. I see. So if you look at the form, the 07 handwriting on pages 43 to 45, that's not your 08 handwriting; is that correct?**<br>09 A. Right, that is not.<br>**10 Q. It appears that this form, pages 43 to 45 of 11 Exhibit 184, was actually handed to Mr. Martinez for him 12 to fill it out; correct?**<br>**13** A. It seems as if this is what he filled out, not **14** what I would have written, if I was investigating him. | Counterdesignation:  60:15-20. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>15 Q. Okay. And in terms<br><br>of the form itself, |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | though,<br><br>16 these are the standard<br><br>questions that you ask of<br><br>people<br><br>17 who have been accused<br><br>of inappropriate conduct;<br><br>correct?<br><br>18 **A. Correct.**<br><br>19 Q. Or harassment?<br><br>20 **A. Correct.** |
| 29 | 60:21-<br>62:16 | **60:21 Q. And just so we're clear, based on the forms**<br>**22 that you have here, the form that was given to Mr. Diaz**<br>**23 and then the form that was given to Mr. Ramon Martinez,**<br>**24 you considered this investigation to be an investigation**<br>**25 into harassing conduct; correct?**<br>**61:01 A. Correct.**<br>**02 Q. So in terms of the handwriting in response to**<br>**03 question one, that is Mr. Martinez' handwriting, as far**<br>**04 as you know; correct?**<br>05 A. Yes. As far as I know, this was answered by<br>06 the employee.<br>**07 Q. In fact, all of the handwriting that is on**<br>**08 pages 43 to 45 of Exhibit 184, that is all Mr. Martinez'**<br>**09 handwriting, as far as you know, right?**<br>10 A. Yes. I mean, as far as I know, that's his<br>11 name, and he signed it, and he filled everything out.<br>12 But I wasn't there, so I'm not for sure he's the one that<br>13 wrote it. But according to this, it seems he was the one<br>14 that responded.<br>**15 Q. Why did Mr. Martinez fill out the form instead**<br>**16 of you interviewing?**<br>17 A. I do not recall.<br>**18 Q. You mentioned earlier that your standard**<br>**19 practice is to interview people in person, when possible;** | 61:18- 62:16:  Designated testimony is improper hypothetical lay opinion testimony about human resources' practices on witness preparing his own statement not "rationally based on the witness's perception" and deponent not disclosed as an expert.  Fed. R. Evid. 701.  It also lacks foundation because deponent did not participate in taking Ramon Martinez's statement.  Fed. R. Evid. 602. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | **20 right?**<br>**21** A. Correct.<br>**22 Q. And if you can't interview them in person, then**<br>**23 your next procedure would be to interview them over the**<br>**24 phone; right?**<br>**25** A. "Correct.<br>**62 :01 Q. It's preferable to interview people in person,**<br>**02 because then you can see their demeanor and get a better**<br>**03 idea of whether they are telling the truth or not; right?**<br>**04** A. You would hope so, yes.<br>**05 Q. And then in terms of having someone fill out**<br>**06 the form themselves, why would you do that?**<br>**07** A. Honestly, I don't recall being there when he<br>**08** filled this form out. I honestly don't remember why he<br>**09** filled it out.<br>**10 Q. Having Mr. Ramon Martinez fill out the form**<br>**11 himself, that did not comport with, certainly, your best**<br>**12 practices for conducting an investigation; correct?**<br>**13 MS. JENG: Objection: Lacks foundation.**<br>**14** THE WITNESS: Correct.<br>**15 Q. BY MR. ORGAN: I'm sorry, what was your answer?**<br>**16** A. "Correct." | |
| 30 | 63:15-<br>64:01 | **63:15 Q. Now, if you look at the second page of**<br>**16 Mr. Martinez' notes, Bates stamped NS 44, under question**<br>**17 five, he identifies two people, I think Israel, maybe**<br>**18 Zonriga, and Michael Wheeler, as people who also were**<br>**19 there observing the picture. Do you see that?**<br>**20** A. Yes.<br>**21 Q. Did you interview either Israel or Michael**<br>**22 about what happened?**<br>**23** A. I don't recall if we did or not.<br>**24 Q. You haven't seen any interview notes with**<br>**25 Mr. Wheeler or Israel, have you?**<br>**64:01** A. Not that I can recall. | Counterdesignation:  62:23-63:14.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>23 In terms of the<br>receiving of this document<br>24 which was filled out by<br>Mr. Martinez, you at least<br>25 reviewed it after Mr. Martinez had filled it out;<br>1 correct?<br>**2 A. Yes.**<br>3 Q. And that was part of |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | your investigation;<br><br>4 correct?<br><br>5 **A. Correct.**<br><br>6 Q. So when you reviewed Mr. Martinez' notes, one<br><br>7 of the things you would have been looking for was if<br><br>8 there was additional information that you needed to<br><br>9 follow up on; correct?<br><br>10 **A. Correct.**<br><br>11 Q. And one of the things you noted was the fact<br><br>12 that Mr. Martinez admitted that he drew the offensive<br><br>13 picture; correct?<br><br>14 **A. Correct.** |
| 31 | 64:14-64:24 | **64:14 Q. So Mr. Martinez told Israel, based on his**<br>**15 statement you received, that he drew the drawing;**<br>**16 correct?**<br>17 A. Correct.<br>**18 Q. And then he recorded here that Owen was really**<br>**19 upset about it; right?**<br>20 A. Yes.<br>**21 Q. And so you knew, based on both statements, the**<br>**22 statement by Mr. Diaz and the statement by Mr. Martinez,**<br>**23 that this incident really upset Mr. Diaz; correct?** | Counterdesignation: 64:3-64:20; 64:25-65:10. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>64:3-64:20<br>3 Now, if you go to the last page of this,<br><br>4 Mr. Martinez, about, I |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 24 A. Yes. According to these notes. | don't know, five lines -- six 5 lines down, says, "I say it was me." 6 That was -- he was admitting that he had made 7 the drawing; correct? **8 A. Which page is that?** 9 Q. This is the last page, Bates stamped NS 45. **10 A. Okay. Which line were you looking at?** 11 Q. It's the sixth line down, just after where it 12 says "bale of cardboard. I say it was me." **13 A. Yes. I see it now.** 14 Q. So Mr. Martinez told Israel, based on his 15 statement you received, that he drew the drawing; 16 correct? **17 A. Correct.** 18 Q. And then he recorded here that Owen was really 19 upset about it; right? **20 A. Yes.** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | <u>64:25-65:10</u><br><br>25 Q. If you go down about two-thirds of the way<br>1 down -- let's see, there is a part -- do you see the part<br>2 where it says "white people"?<br>3 **A. Yes, I see that.**<br>4 Q. He's allegedly quoting Mr. Diaz where he says:<br>5 "White people use it for other purposes, but he<br>6 understood that coming from me, it" -- I think he meant<br>7 to say "not be bad."<br>8 You knew that that contradicted what Mr. Diaz<br>9 told you; correct?<br>10 **A. Yes.** |
| 32 | 65:11-65:17 | **65:11 Q. Mr. Diaz wanted Mr. Martinez fired; right?**<br>**12 Mr. Diaz wanted Mr. Martinez fired?**<br>13 A. Mr. Diaz wanted Mr. Martinez fired, yes.<br>**14 Q. And the reason that Mr. Diaz told you he wanted**<br>**15 Mr. Martinez fired was because he didn't feel safe based**<br>**16 on the conduct that Mr. Martinez had engaged in; correct?**<br>17 A. Correct. | |
| 33 | 67:15-67:19 | **67:15 You knew that Mr. Martinez' statement about**<br>**16 Mr. Diaz not thinking that the picture was bad** | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | was false,<br>17 based on Mr. Diaz' own statement to you and his email;<br>18 correct?<br>19 A. Correct. | |
| 34 | 69:03-70:03 | 69:03 After you had received statements from the<br>04 witnesses and the email with the two pictures, and you<br>05 had concluded your investigation. You determined that<br>06 Mr. Martinez had engaged in conduct that Mr. Diaz had<br>07 considered harassing; right?<br>08 A. Correct.<br>09 Q. And the conduct that Mr. Diaz considered<br>10 harassing, Mr. Diaz also told you that that conduct he<br>11 thought was racially motivated; correct?<br>12 A. Correct.<br>13 Q. With respect to what you did after you received<br>14 the two statements and the email with attached pictures,<br>15 did you create a final kind of report containing<br>16 findings?<br>17 A. I can't recall.<br>18 Q. It would have been your typical practice to do<br>19 that; right?<br>20 A. Yes.<br>21 Q. To create a report?<br>22 A. Yes.<br>23 Q. Okay.<br>24 You did --<br>25 It is fair to say that after you completed your<br>70:01 investigation, you recommended discipline for<br>02 Mr. Martinez; right?<br>03 A. Yes. | Counterdesignation:  70:4-70:13. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>4 Q. And what was the<br>discipline that you<br>5 recommended?<br>6 **A. I, personally, don't**<br>**recall. But on this**<br>7 **email, it states my**<br>**recommendation of**<br>**corrective action.**<br>8 Q. Okay. What was the<br>corrective action that you<br>9 stated in your email<br>that should be applied to<br>Mr. Ramon<br>10 Martinez for his<br>harassing conduct?<br>11 **A. My recommendation**<br>**was to place him on**<br>12 **corrective action with**<br>**a final warning for**<br>**harassment in**<br>13 **the workplace due to offensive behavior.** |
| 35 | 70:14-70:16 | 70:14 Q. Why wasn't Mr. Martinez recommended for<br>15 termination? | |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 16 A. I do not recall. | |
| 36 | 71:06-71:09 | 71:06 Q. BY MR. ORGAN: Were you aware of any kind of<br>07 history of inappropriate conduct by Mr. Diaz, at the time<br>08 you conducted your investigation in January of 2016?<br>09 A. Not that I can recall. | |
| 37 | 72:08-72:16 | 72:08 You never had asked Mr. Martinez whether he had<br>09 engaged in any kind of threatening conduct toward<br>10 Mr. Diaz previously; right?<br>11 MS. KUMAGAI: Objection: Assumes facts.<br>12 THE WITNESS: I don't recall speaking to the<br>13 employee.<br>14 Q. BY MR. ORGAN: So you never asked him that<br>15 question; right?<br>16 A. No, I did not ask. | Lacks foundation, unduly prejudicial because deponent never spoke to Ramon Martinez. Fed. R. Evid. 403, 602. |
| 38 | 73:07-73:23 | 73:07 Mr. Diaz communicated to you that he felt like<br>08 the picture was a racial statement; right? He told you<br>09 that?<br>10 A. Yes.<br>11 Q. If you look at page three of your notes on<br>12 that, he mentioned that -- Mr. Diaz mentioned to you that<br>13 he thought the "Booo" referred to "jigaboo," which is a<br>14 racial slur; right?<br>15 A. Correct.<br>16 Q. Mr. Diaz also mentioned to you that he looks<br>17 around behind his back when he picks up bales and he<br>18 didn't feel safe; right?<br>19 A. Yes.<br>20 Q. Mr. Diaz communicated to you that he thought<br>21 that he wanted Mr. Diaz -- he wanted Mr. Martinez<br>22 terminated, because he didn't trust him; right?<br>23 A. Correct. | <u>Counterdesignation:</u>  73:24-74:1, 74:4-74:12, 74:19-20.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6).<br><br>24 Q. So that led you at least to believe that<br><br>25 Mr. Diaz perceived there to be some kind of threat by<br>1 Mr. Martinez toward Mr. Diaz; correct?<br><br>4 THE WITNESS: I can't personally say how he<br><br>5 felt, in summarizing all of this. I just go based on the<br><br>6 information he's telling me at the time when I'm writing<br><br>7 down what he is saying to me. And as written |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | here, it's<br><br>8 broken up by question,<br><br>specifically, how he felt<br><br>during<br><br>9 the time that he was<br><br>speaking to me.<br><br>10 Q. BY MR. ORGAN: But<br><br>the information that you<br><br>11 received from Mr. Diaz<br><br>certainly communicated to<br><br>you that<br><br>12 Mr. Diaz felt threatened in January of 2016, didn't he?<br><br>19 THE WITNESS: He never<br><br>used the words "threat,"<br><br>20 so that's not what is in my notes. |
| 39 | 75:08-76:09 | 75:08 "But certainly someone who is feeling a concern<br>09 for his safety is communicating a message to you, a<br>10 trained HR professional, that they feel threatened;<br>11 right?")<br>12 MS. JENG: Same objections.<br>13 MS. KUMAGAI: Same objections here, too, as<br>14 well.<br>15 THE WITNESS: What he was communicating to me<br>16 was that he was concerned for his safety in the<br>17 workplace, and that's what we were looking into, as well<br>18 as feeling harassed. Based on the -- based on our HR<br>19 policies and guidebook, those were the categories that<br>20 fit, aligned with this; and that's why we looked into it.<br>21 Q. BY MR. ORGAN: Okay. So based on the<br>22 harassment about which Mr. Diaz was complaining, he at | |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | 23 least expressed to you a concern for his safety; right?<br>24 A. Correct.<br>25 Q. What did you do --<br>76:01 What steps did you take to protect Mr. Diaz<br>02 from further harassment by Mr. Martinez?<br>03 A. I don't recall. But based on the information<br>04 here, I did ask the branch to coordinate with the client<br>05 on being able to make reasonable accommodations, if<br>06 possible, to not have them work together.<br>07 Q. Do you know if that was communicated in writing<br>08 in any way to Tesla?<br>09 A. Not that I'm aware of. | |
| 40 | 76:14-78:19 | 76:14 Do you know whether or not the idea of not<br>15 having Mr. Diaz have to work with Mr. Martinez, whether<br>16 or not that idea was ever communicated in writing to<br>17 Tesla or any other contractor working at the factory in<br>18 Freemont, Tesla factory?<br>19 A. Not that I can recall.<br>20 Q. And what did you do to protect Mr. Diaz against<br>21 retaliation he said he was concerned about?<br>22 A. I do not recall what was told or what<br>23 arrangements were made.<br>24 Q. Was there any kind of meeting between the<br>25 different HR people in the different contracting agencies<br>77:01 in Tesla to talk about what should happen to try to<br>02 protect Mr. Diaz against further harassment or<br>03 retaliation?<br>04 MS. KUMAGAI: Objection: Vague and overbroad.<br>05 THE WITNESS: Not that I can recall.<br>06 Q. BY MR. ORGAN: Okay. And did you have any<br>07 meetings with Wayne Jackson at nextSource about what<br>08 steps could be taken to protect Mr. Diaz against any kind<br>09 of further harassment or discrimination?<br>10 A. Not that I can recall.<br>11 Q. Did you have any contact with Monica Deleon<br>12 about what steps could be taken to protect Mr. Diaz<br>13 against further harassment or retaliation?<br>14 A. Not that I can recall. | |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 15 Q. Did you have any meetings or communications<br>16 with Mr. Otero, who was the manager at Tesla, about what<br>17 steps needed to be taken to protect Mr. Diaz from further<br>18 harassment or retaliation?<br>19 A. Not that I can recall.<br>20 Q. What about Ed Romero, did you ever have any<br>21 discussion with Ed Romero about what steps needed to be<br>22 taken to protect Owen Diaz from further harassment or<br>23 retaliation?<br>24 A. Not that I can recall.<br>25 Q. Jose Torres, did you have any communications<br>78:01 with Jose Torres about protecting Mr. Diaz?<br>02 A. Not that I can recall.<br>03 Q. Aaron Marconey, did you have any questions with<br>04 Aaron Marconey about what to do to protect Mr. Diaz<br>05 against further harassment or discrimination?<br>06 A. No, I did not.<br>07 Q. Did anyone from Tesla reach out to you to talk<br>08 about what steps needed to be taken to protect Mr. Diaz<br>09 against further harassment or retaliation?<br>10 A. No, I did not speak to anyone from Tesla.<br>11 Q. Did anyone from nextSource reach out to you<br>12 about what steps could be taken to protect Mr. Diaz<br>13 against further harassment or retaliation?<br>14 A. No. I did not speak to anyone there.<br>15 Q. And what about from Citistaff, did anyone from<br>16 Citistaff reach out to you about what steps could be<br>17 taken to protect Mr. Diaz against further harassment or<br>18 discrimination?<br>19 A. No, they did not. | |
| 41 | 79:01-<br>79:04 | 79:01 Q. Did Chartwell, after it received this complaint<br>02 about Mr. Martinez, did Chartwell go into the factory in<br>03 any way to monitor what was going on?<br>04 A. Not that I can recall. | |
| 42 | 79:13-<br>79:16 | 79:13 Q. Do you know whether or not Mr. Martinez was | |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | **14 actually scheduled to work during that time that he was**<br>**15 on a three-day suspension for the investigation?**<br>**16 A. No, I do not.** | |
| 43 | 80:10-82:14 | **8 0:10 If you look at the statements, the statement**<br>**11 that you have with Mr. Diaz was dated January 25 of 2016;**<br>**12 correct?**<br>**13 A. Uh-huh. Yes, that's correct.**<br>**14 Q. And the statement that Mr. Martinez gave was**<br>**15 actually dated January 22 of 2015; correct?**<br>**16 A. It appears so, yes.**<br>**17 Q. So it looks like you received Mr. Martinez'**<br>**18 statement prior to receiving or interviewing Mr. Diaz;**<br>**19 correct?**<br>**20 A. It seems so.**<br>**21 Q. And there is no references in your notes with**<br>**22 Mr. Diaz about things that Mr. Martinez said, is there?**<br>**23 A. No.**<br>**24 Q. So it doesn't appear as if you asked Mr. Diaz**<br>**25 any questions about what Mr. Martinez had said; right?**<br>**81:01 A. Correct.**<br>**02 Q. Now, your typical practice would be first to**<br>**03 interview the complainant; right?**<br>**04 A. Correct.**<br>**05 Q. So it's fair to say that at least in terms of**<br>**06 this investigation that you did regarding Mr. Diaz'**<br>**07 complaint, your investigation didn't follow that typical**<br>**08 practice, in that way; right?**<br>**09 A. Correct. Yes.**<br>**10 There may have been a reason for that. And I**<br>**11 can only think that it's because Mr. Diaz was not -**<br>**- was**<br>**12 not an employee, at the time, of Chartwell Staffing**<br>**13 Solutions. And so I was trying to get ahold of someone**<br>**14 at his agency before speaking to the employee.**<br>**15 Q. Well, you also didn't interview Mr. Martinez in**<br>**16 person or over the phone. That was something that**<br>**17 deviated from your typical investigation practice;**<br>**18 correct?**<br>**19 A. Correct. This definitely was probably** | Cumulative, waste of time and unduly prejudicial.  Fed. R. Evid. 403. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | **20** something that was taken down by the staffing branch.<br>**21 Q. And you have no explanation why Mr. Martinez**<br>**22 was allowed to write his own statement as opposed to**<br>**23 having someone interview him with those questions; right?**<br>**24** A. Correct.<br>**25 Q. Do you recall any other conversations you had**<br>**82:01 with anybody at Tesla relative to Mr. Diaz' complaint**<br>**02 other than what you've already testified to?**<br>**03** A. Not that I can recall.<br>**04 Q. Other than the one conversation you had with**<br>**05 Mr. Diaz where you asked him the questions in the notes**<br>**06 in NS 42, did you have any other conversations with**<br>**07 Mr. Diaz?**<br>**08** A. Not that I can recall.<br>**09 Q. And how long did the interview last that you**<br>**10 had with Mr. Diaz?**<br>**11** A. I do not remember.<br>**12 Q. Do you recall anything else about your**<br>**13 investigation that you haven't testified to?**<br>**14** A. No, sir. | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

**McGinn, Kevin 6/17/19, Volume 1**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| 1 | 7:21-8:12 | **7:21** MR. ORGAN: Q. Could you please state and 22 spell your full name for the record. 23 A. Kevin McGinn; K-E-V-I-N, M-C-G-I-N-N. **24 Q. Mr. McGinn, do you have any middle names?** 25 A. Francis, F-R-A-N-C-I-S. **8:01 Q. How old are you?** 02 A. 50. **03 Q. And did you go to college?** 04 A. Yes. **05 Q. Where did you go to college?** 06 A. Middle Tennessee State University. **07 Q. And when did you graduate?** 08 A. 1992. **09 Q. And what was your degree?** 10 A. Master's in business administration. Well, **11** that was the undergrad, in business administration. I **12** also have a graduate degree as well. | |
| 2 | 8:23-9:22 | **8:23 Q. And what was your MBA; where was that from?** 24 A. Wilkes University. **25 Q. Wilkes?** 9:01 A. Wilkes, W-I-L-K-E-S, Pennsylvania. **02 Q. And you received an MBA from there?** 03 A. Yes, MBA in finance. **04 Q. What year was that?** 05 A. 1994. **06 Q. When did you -- well, what's your current 07 position for nextSource, Inc.?** 08 A. I'm the chief financial officer for 09 nextSource, Inc. **10 Q. And where are you located? Where is your 11 office?** 12 A. Based in Nashville, Tennessee. **13 Q. How long have you worked for nextSource?** 14 A. Just under four years. **15 Q. So when did you start working at nextSource?** 16 A. October of 2015. **17 Q. And what was your starting position with 18 nextSource, Inc.?** 19 A. I joined nextSource as the CFO. **20 Q. So you've been the CFO since you joined 21 nextSource in October of 2015; is that right?** 22 A. Yes. | |
| 3 | 10:02-10:09 | **10:02** MR. ORGAN: Q. Tell me, what are your job 03 duties as the CFO for nextSource, Inc.? 04 A. I'm responsible for all the accounting 05 control of the company, the financial reporting of the | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 06 company. The payroll processing for the company 07 reports to me. Human resources reports to me. 08 **Q. How many direct reports do you have?** 09 A. Approximately five direct reports. | |
| 4 | 12:15-13:04 | **12:15 Q. I'm asking you what nextSource considers. 16 And so what I'm trying to find out is, does nextSource 17 consider administrative employees to be employees of 18 nextSource?** 19 A. No. The administrative -- the associates, as 20 I define the associates who are -- in which we provide 21 the administrative payroll, their pay rates are set by 22 the clients. They act under the direction and control 23 of the clients. So I would not -- nextSource would 24 not consider them employees in that -- under that 25 definition. **13:01 Q. Okay. So nextSource considers the associates 02 to be under the direction and control of the clients 03 who you contract with; is that right?** 04 A. That's correct. | Counterdesignation:  13:05-13:09.  Rule of completeness. Fed. R. Evid. 106, Fed. R. Civ. P. 32(a)(6).<br><br>5 Q. Okay. And nextSource's role, relative to the 6 associates, is to essentially pay them their salary or 7 hourly rates and then any benefits that they're 8 entitled to; is that correct?<br><br>9 **A. Correct.** |
| 5 | 13:10-13:19 | **13:10 Q. Is there any other role that nextSource 11 plays, relative to the associates, in terms of their 12 employee, or their employment with a client?** 13 A. So the associate works at the direction of 14 the client, usually on the client site. NextSource 15 will, if needed, take direction from the client to 16 discipline an employee, if the client has requested us 17 to. If the client has -- has wished for the person to 18 be removed from the site, we could facilitate that 19 removal. That's essentially, generally, it. | |
| 6 | 16:10-16:20 | **16:10 Q. So looking at Exhibit 166, you've been 11 designated as the person most knowledgeable on Topic 12 1, the contractual relationship between Defendant and 13 Tesla, Inc.; is that true, subject to your objections?** 14 A. Yes. 15 Q. And you've also been designated as the person 16 most knowledgeable on the second topic, the 17 contractual relationship between Defendant | Testimony was only provided subject to the objections to the deposition notice, and testimony does not reflect any of the objections as stated at the deposition: "Counsel, these questions are all subject to the objections that we served on your office last week. And so we would produce -- we are |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | **and**<br>**18 CitiStaff Solutions, Inc., subject to your objections;**<br>**19 is that correct?**<br>**20** A. Yes. | producing Mr. McGinn as the 30(b)(6) witness subject to all of those objections. And if you have a copy of the objections, it might be useful for you to share those with the witness as you're going down the list." Dep. 14:16-22.  Thus, it is unduly prejudicial and misleading.  Fed. R. Evid. 403. |
| 7 | 17:15-17:17 | **17:15 Q. Was there some kind of written contract**<br>**16 between Tesla and nextSource?**<br>**17** A. Yes. | |
| 8 | 18:01-18:04 | **18:01 MR. ORGAN: Q. And did nextSource provide**<br>**02 any associates, or what you referred to as**<br>**03** administrative employees, to Tesla?<br>**04** A. Yes. | |
| 9 | 18:23-22:20 | **18:23 Q. And the contract that nextSource had with**<br>**24 Tesla included at least a provision that allowed for**<br>**25 nextSource to provide those 30 to 40 associates to**<br>**19:01 Tesla; is that right?**<br>**02** A. Yes.<br>**03 Q. In addition to providing associates to work**<br>**04 at the Tesla factory -- strike that.**<br>**05 Were all of these associates working at the**<br>**06 Tesla factory in Fremont, California?**<br>**07** A. Yes.<br>**08 Q. In addition to providing for the 30 to 40**<br>**09 associates who, on average, worked at the Fremont**<br>**10 factory, did the contract that nextSource had with**<br>**11 Tesla provide for any other services?**<br>**12** A. Yes.<br>**13 Q. And what were the other services?**<br>**14** A. So nextSource provides what is known as MSP<br>**15** services to our clients.<br>**16 Q. And what does "MSP services" mean?**<br>**17** A. An MSP is a managed service provider.<br>**18 Q. And what does a managed service provider**<br>**19 entail or encompass?**<br>**20** A. Right. So in connection with that service,<br>**21** nextSource will provide the technology platform under<br>**22** which supplier workers -- supplier-employed workers --<br>**23** would enter, submit timesheets, and the client would<br>**24** approve those timesheets. So it was an interface<br>**25** between the supplier workers and the client. | Counterdesignation:  22:21-24. Rule of completeness.  Fed. R. Evid. 106, Fed. R. Civ. P. 32(a).<br><br>21 Q. In addition to that, did nextSource provide 22 any additional services for CitiStaff employees, other 23 than the timekeeping function?<br><br>24 **A. No.** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | That's<br>**20:01** one category of a managed service provider.<br>**02** The second category would be the selection of<br>**03** suppliers. So supplier selection would be a service<br>**04** that nextSource provides under its agreement.<br>**05 Q. And what does that mean, selection of**<br>**06 suppliers? What does that involve?**<br>**07** A. So a client such as Tesla may have needs in a<br>**08** certain geography or a certain, say, skill set.<br>**09** NextSource associates provide only a part of those<br>**10** needs; right? So nextSource would select suppliers<br>**11** who would provide additional supplier-employed workers<br>**12** at the Tesla site.<br>**13 Q. So in other words, nextSource would**<br>**14 coordinate with other staffing agencies to try and**<br>**15 accommodate Tesla's demand for associates at the**<br>**16 Fremont factory?**<br>**17 MR. GELLER: Misstates his testimony.**<br>**18 Go ahead.**<br>**19** THE WITNESS: NextSource would select<br>**20** suppliers who would provide resources into the Tesla<br>**21** factory at the direction of -- day-to-day direction of<br>**22** Tesla. However, those workers were employed; in other<br>**23** words, they were recruited, onboarded and paid, and,<br>**24** if needed, you know, terminated by the supplier<br>**25** employer.<br>**21:01** MR. ORGAN: Q. And when you're referring to<br>**02** "suppliers" here, you're referring to companies that<br>**03** would supply manpower; is that correct?<br>**04** A. Yes.<br>**05 Q. I don't mean to be sexist. Manpower, women**<br>**06 power, whatever power. People power.**<br>**07** A. Yes.<br>**08 Q. And how did nextSource go about determining**<br>**09 which suppliers would be eligible to provide workers**<br>**10 at the Tesla factory in Fremont?**<br>**11** A. So Tesla would have to approve any suppliers<br>**12** that were -- would be utilized at their site, so the<br>**13** approval of any supplier sits with Tesla. The --<br>**14** nextSource might recommend, you know, | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | suppliers that<br>15 can support the program at Tesla. So it really comes<br>16 down to supplier, selection, and recommendations,<br>17 would be a service that nextSource provided.<br>**18 Q. In addition to -- so you mentioned two things**<br>**19 that nextSource would do for**<br><br>**Tesla. One would be to**<br><br>**20 provide head count, actual head**<br><br>**count of associates to**<br><br>**21 the Tesla factory; correct?**<br><br>**22** A. Yes.<br><br>**23 Q. And then the second thing**<br><br>**would be as a**<br><br>**24 managed service provider; is**<br><br>**that correct?**<br><br>**25** A. Yes.<br><br>**22:01 Q. And then under managed**<br><br>**service providers, in**<br><br>**02 terms of the functions that**<br><br>**nextSource provided, those**<br><br>**03 sort of fall into two**<br><br>**categories.**<br><br>**04 You would provide a platform, a**<br><br>**technology**<br><br>**05 platform for associates to**<br><br>**essentially submit**<br><br>**06 timesheets; is that correct?**<br><br>**07 MR. GELLER: Misstates his**<br><br>**testimony.** | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | **08** THE WITNESS: The platform would be for the<br>**09** supplier-employed workers to submit -- enter and<br>**10** submit their timesheets, which would then be approved<br>**11** by the -- well, to be approved by the client.<br>**12** MR. ORGAN: Okay.<br>**13 Q. So for example, nextSource chose CitiStaff**<br>**14 Solutions, Inc., as a provider; is that correct?**<br>**15** A. Yes.<br>**16 Q. And then nextSource would establish the**<br>**17 technology platform for CitiStaff associates to, like,**<br>**18 submit their timesheets and things like that; is that**<br>**19 correct?**<br>**20** A. Yes. | |
| 10 | 23:17-<br>23:25 | **23:17 Q. What else did nextSource do under its**<br>**18 contract with Tesla?**<br>**19** A. The third and I'll say the final primary<br>**20** service that nextSource provide would be an on-site<br>**21** program team, which would be nextSource professionals.<br>**22** So these would be employees employed by nextSource<br>**23** that act as a facilitator -- well, I'll stop. That's<br>**24** basically the third service that we provided, on-site<br>**25** program team. | Counterdesignation: 24:1-25:9. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>1 Q. And so tell me, what were the functions that 2 the on-site program team would do that nextSource |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       |                    | 3 provided? |
|   |       |                    | 4 **A. The key functions of a program team is to** |
|   |       |                    | 5 **take the client's direction and bring -- and really** |
|   |       |                    | 6 **facilitate those needs to the supplier workforce. So** |
|   |       |                    | 7 **one would be, you know -- well that's it. It** |
|   |       |                    | 8 **basically would -- any kind of client needs or wishes** |
|   |       |                    | 9 **would be messaged to the suppliers for the suppliers** |
|   |       |                    | 10 **to take whatever action they would deem necessary for** |
|   |       |                    | 11 **the workforce. That's one area.** |
|   |       |                    | 12 **The second service that a program team would** |
|   |       |                    | 13 **perform would be managing the requisitions in the** |
|   |       |                    | 14 **platform to meet the** |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | head count level set by the |
|   |       |                    | 15 client. So, expand just a little bit there: The |
|   |       |                    | 16 client needs additional head count for a shift next |
|   |       |                    | 17 week. NextSource program team will set up the |
|   |       |                    | 18 requisition in the software. The suppliers will then |
|   |       |                    | 19 go out, find, recruit, onboard and hire those workers |
|   |       |                    | 20 to be placed onto the requisition in the system. |
|   |       |                    | 21 So I would say it's an information flow. |
|   |       |                    | 22 Information flows through nextSource, data flow, that |
|   |       |                    | 23 sort of thing. |
|   |       |                    | 24 Q. So you mentioned essentially two additional |
|   |       |                    | 25 things that, under this third category, that |
|   |       |                    | 1 nextSource would do. One |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | | would be to essentially take<br><br>2 a client's direction and then translate or communicate<br><br>3 those needs to the supplier workforce; is that right?<br><br>4 **A. That's correct.**<br><br>5 Q. And then the other thing would be that<br><br>6 nextSource would manage requisitions to ensure that<br><br>7 the head count that Tesla needed was met by working<br><br>8 with the suppliers to fill those requisitions?<br><br>9 **A. Yes.** |
| 11 | 25:10-25:24 | **25:10 Q. So who were the -- other than CitiStaff 11 Solutions, who were the other suppliers that 12 nextSource worked with when you first onboarded in 13 October of 2015, relative to the Tesla Fremont 14 factory?** 15 A. CitiStaff is one supplier. Chartwell was the 16 other, primary supplier. I believe there was a third 17 supplier not relevant here, but I'm happy to share the 18 name. Maliko, I believe, was another supplier 19 employer at the Tesla site. **20 Q. In terms of providing sort of 21 production-associate level employees, were the primary 22 suppliers that nextSource coordinate with CitiStaff** | |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | 23 and Chartwell?<br>24 A. Yes. | |
| 12 | 27:07-27:11 | **27:07 Q. So your best estimate is that the number of**<br>**08 people who were on boarded at the Tesla factory in at**<br>**09 least the 2015 time period, through CitiStaff and**<br>**10 Chartwell, was approximately 2- to 300; is that right?**<br>**11 A. That is my speculation, but yes.** | Irrelevant.  Not based on personal knowledge because deponent testified the answer any testimony on this point "I would be speculating" (26:23-27:5) and his job as to data does not involve "track[ing] the day-to-day or week-to-week supplier head counts to – again, enough to speculate" (27:15-19).  Fed. R. Evid. 602. |
| 13 | 27:20-27:25 | **27:20 Q. Okay. In terms of the contract that**<br>**21 nextSource had with Tesla, do you have any knowledge**<br>**22 of the particulars of the contract, other than what**<br>**23 you've already testified to? Meaning, have you seen**<br>**24 the contract or read it, or anything like that?**<br>**25 A. I have seen the contract.** | Counterdesignation:  28:1-3.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>`1 Q. Did you sign the`<br>`contract on behalf of`<br>`2 nextSource?`<br><br>`3 A. No.` |
| 14 | 31:25-32:08 | **31:25 Any nextSource administrative employee or**<br>**32:01 associate would be subject to the direction and**<br>**02 control of Tesla, if they were working at the Tesla**<br>**03 factory?**<br>**04 A. Yes.**<br>**05 Q. So Tesla was responsible in terms of the**<br>**06 day-to-day aspects of any nextSource administrative**<br>**07 employee or associate; is that true?**<br>**08 A. Yes.** | `Not based on personal`<br>`knowledge because deponent`<br>`testified (32:16-25) that he`<br>`would be speculating about`<br>`which policies were`<br>`applicable at the Tesla site`<br>`"I really couldn't tell you`<br>`which policies were`<br>`overriding at the Tesla site,`<br>`versus employment policies`<br>`that the supplier employer`<br>`would have determined" and`<br>`the contract did not address`<br>`the types of policies that` |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | | applied to workers at the Tesla factory (33:5-10).  The deponent was only produced as to policies relating to nextSource's own employees, not contract workers (41:5-24).  Fed. R. Evid. 602.<br><br>Counterdesignation:  35:6-10, 35:12-17.<br><br>6 "QUESTION: And then your understanding is<br>7 that the employment policies that applied to<br>8 administrative employees of nextSource working at the<br>9 Tesla factory, were the employment policies of<br>10 nextSource; is that right?")<br>12 THE WITNESS: The associates of nextSource<br>13 who worked at the Tesla site worked under the<br>14 direction and control of Tesla. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | | 15 The employment policies for those associates<br><br>16 would be -- would fall under -- basically, it would<br><br>17 fall under nextSource. |
| 15 | 36:07-37:09 | 36:07 Did nextSource have a specific contract with<br>08 CitiStaff to provide workers at the Tesla factory, or<br>09 does it have sort of a broader contract that covers<br>10 all of its relationships with CitiStaff?<br>11 A. It would be an agreement to provide workers<br>12 in to Tesla.<br>13 Q. Okay. So with respect to CitiStaff providing<br>14 workers at the Tesla factory as one of nextSource's<br>15 suppliers, that would be pursuant to a specific<br>16 contract between nextSource and CitiStaff; is that<br>17 right?<br>18 A. Yes.<br>19 Q. And would Tesla have been a party to that<br>20 contract also?<br>21 A. No.<br>22 Q. So the contract that nextSource has with<br>23 Tesla includes a component or provisions that allows<br>24 nextSource to contract with other suppliers; is that<br>25 right?<br>37:01 MR. GELLER: Vague and ambiguous.<br>02 THE WITNESS: You said the contract between<br>03 nextSource and Tesla?<br>04 MR. ORGAN: Q. Yes.<br>05 A. Allows to use --<br>06 Q. NextSource to provide or to contract with<br>07 other suppliers, in terms of providing services to<br>08 Tesla.<br>09 A. Yes. | |
| 16 | 37:20-38:17 | 37:20 Q. So in terms of the contract, though, that<br>21 nextSource has with CitiStaff relative to providing<br>22 services to or employees to the Tesla factory, that<br>23 contract was specific to providing employees to | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | **Tesla;**<br>**24 right?**<br>**25 MR. GELLER: Asked and answered.**<br>**38:01** THE WITNESS: Yes.<br>**02** MR. ORGAN: Q. And in terms of -- do you<br>**03** remember, in terms of the specifics of that<br>**04** contract -- actually, I just want the general<br>**05** parameters. I don't want the specifics.<br>**06** In terms of the general parameters of what<br>**07** the contract between CitiStaff and nextSource were,<br>**08** relative to providing employees to work at the Tesla<br>**09** factory, what were sort of the general parameters of<br>**10** that contract?<br>**11** A. Speaking very generally here, that there<br>**12** would be the supplier. In your question, CitiStaff,<br>**13** would provide the workers. They would -- the supplier<br>**14** would indemnify nextSource for the actions of those<br>**15** workers and so on. There would be an agreed-upon bill<br>**16** rate that the supplier would charge, those sort of<br>**17** things. | |
| 17 | 42:05-42:14 | **42:05** Some of the professionals that nextSource<br>**06** employed worked at the Tesla factory; correct?<br>**07** A. Yes.<br>**08 Q. Do you know who those people were?**<br>**09** A. I believe it was Mr. Wayne Jackson. There<br>**10** was Vanessa parks, and there's a third lady who<br>**11** actually left before -- right at the time I got there.<br>**12** I don't remember her name. It was a third female that<br>**13** worked -- a professional who worked in that Tesla<br>**14** site. | Counterdesignation: 42:15-42:18. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). |
| 18 | 42:19-43:07 | **42:19 Q. So what was -- Wayne Jackson we've deposed.**<br>**20 I know him. He was your account manager; right?**<br>**21** A. I believe his title was program manager, but<br>**22** essentially.<br>**23 Q. And what's a program manager function?**<br>**24** A. So the program manager acts as a liaison<br>**25** between Tesla, the client, Tesla's wishes, and the<br>**43:01** suppliers -- you know the supplier workers, the<br>**02** supplier-employed workers. That's one of the primary<br>**03** duties of a program manager. He may also gather facts<br>**04** at the direction of Tesla or at the request of Tesla. | |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | **05** He was a fact gatherer and will communicate to the -- <br> **06** either party to the client side or to the supplier <br> **07** side, based on the facts. | |
| 19 | 43:19-44:01 | **43:19 Q. So Wayne Jackson, was he the highest-level** <br> **20 nextSource employee actually working at the Tesla** <br> **21 factory?** <br> **22 A.** Yes. <br> **23 Q. And then Vanessa Parks worked in an** <br> **24 administrative role at the Tesla factory too; is that** <br> **5 right?** <br> **44:01 A.** Yes. | <u>Counterdesignation:</u>  43:8-43:15. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). <br><br> 8 Q. Okay. And then you mentioned a Vanessa <br><br> 9 Parks. What was Vanessa Parks' job? <br><br> 10 **A. Vanessa was an administrative role there;** <br><br> 11 **again, a professional of nextSource but worked in a --** <br><br> 12 **in this example, I'm using "administrative" to mean** <br><br> 13 **she would enter requisitions into the system. She** <br><br> 14 **would, you know -- data-keying, that sort of thing,** <br><br> 15 **very administrative type of work.** |
| 20 | 56:14-56:21 | **56:14 No. Before we go into that, in terms of** <br> **15 nextSource's contractual relationship with CitiStaff,** <br> **16 is that similar to -- is that similar to the** <br> **17 contractual relationship that nextSource has with any** <br> **18 other contractors at the Tesla factory, like** <br> **19 Chartwell?** <br> **20 MR. GELLER: Vague and ambiguous.** <br> **21 THE WITNESS: Generally, yes.** | |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| 21 | 63:15-64:23 | 63:15 Q. And then -- so with respect to the 16 administrative employees, how does nextSource go about 17 ensuring that they have a workplace that is free from 18 all forms of unlawful harassment and discrimination? 19 MR. GELLER: Objection to the form. 20 Go ahead. 21 THE WITNESS: Right. So as stated earlier, 22 an administrative employee is one that nextSource will 23 pay. It's one that will fall under certain benefits. 24 The -- as it pertains to harassment and discrimination 25 policies, or employment policies, they will fall under 64:01 the client's -- the client's prevailing policies 02 around those sort of things. So they operate at the 03 direction and control of the client, at a pay rate set 04 by the client, under policies that are in place at the 05 client site. 06 MR. ORGAN: Q. So for example, any 07 administrative employee who is working through 08 nextSource at the Tesla factory, when you were 09 still -- when you still had employees there, those 10 employees would have been subject to Tesla's policies 11 and procedures relative to harassment and 12 discrimination, those topics; is that true? 13 A. Yes. 14 Q. And you would have expected that Tesla would 15 be enforcing their policies or procedures relative to 16 harassment or discrimination relative to any contract 17 employee who was working -- administrative employee 18 who was working at the Tesla factory; right? 19 A. Yes. An associate, otherwise known as an 20 administrative employee, as we're defining it, working 21 at the Tesla site, the client, would fall under the 22 client's policies for a number of things, including 23 presumably harassment and discrimination. | Testimony not based on personal knowledge because deponent testified (32:16-25) that he would be speculating about which policies were applicable at the Tesla site "I really couldn't tell you which policies were overriding at the Tesla site, versus employment policies that the supplier employer would have determined" and the contract did not address the types of policies that applied to workers at the Tesla factory (33:5-10). The deponent was only produced as to policies relating to nextSource's own employees, not contract workers (41:5-24). Fed. R. Evid. 602. |
| 22 | 65:22-65:25 | 65:22 Q. Let me ask you this: Who is -- you're the 23 head of human resources; is that right, as the CFO? 24 A. Human resources reports in to me at 25 nextSource, for nextSource professionals. | |
| 23 | 70:17-71:01 | 70:17 It says, "The company does not tolerate such 18 harassment or discrimination by managers, directors, | |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | 19 or coworkers. The company will also attempt to<br>20 prevent such harassment of employees by<br>21 non-employees."<br>22 That's the company's policy relative to<br>23 harassment and discrimination, at least part of it;<br>24 correct? Go to the paragraph above it. There we go.<br>25 Yeah.<br>71:01 A. Yes. | |
| 24 | 90:02-90:14 | 90:02 MR. ORGAN: Q. So another way to say it is<br>03 that nextSource has a zero tolerance policy for any<br>04 kind of harassment based on race, sex, or other<br>05 prohibited characteristics; is that fair?<br>06 A. I would go -- I would define it by zero<br>07 tolerance policy for harassment by its professional<br>08 employees, which includes managers, directors, and<br>09 coworkers. Zero tolerance policy pertaining to<br>10 nextSource professional employees.<br>11 Q. And nextSource's zero tolerance policies<br>12 relative to race harassment then would apply to any of<br>13 the professional employees at nextSource; right?<br>14 A. Yes. | |
| 25 | 95:06-95:19 | 95:06 Q. The complaint that you became aware of, of<br>07 race harassment, shortly after you started working at<br>08 nextSource, did it have to do with a complaint of race<br>09 harassment at the Tesla work site?<br>10 A. So I want to make sure I understand the<br>11 question very clearly.<br>12 When you say "you," when I started at the<br>13 company in October of '15, speaking for the company,<br>14 right, I'm here speaking as the company. The<br>15 company -- yes.<br>16 Q. And was the complaint of race harassment at<br>17 the Tesla site a complaint by Owen Diaz, that you were<br>18 aware of?<br>19 A. Yes. | Counterdesignation:  95:20-25. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>20 Q. And just so we're clear, other than the<br>21 complaint by Owen Diaz of race harassment at the Tesla<br>22 work site, are you aware of any other complaints by<br>23 anyone else at the Tesla work site relating to race |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | 24 harassment?<br><br>25 **A. No.** |
| 26 | 96:12-<br>97:19 | 96:12 Well, why don't we do the preliminary here<br>13 first. What was Owen Diaz's relationship to<br>14 nextSource at the time that he made a complaint of<br>15 harassment, race harassment, at the Tesla site?<br>16 A. So Owen Diaz was a supplier employee of<br>17 CitiStaff.<br>18 Q. And so what was Owen Diaz's relationship then<br>19 to nextSource at that point, at the point of him<br>20 making this complaint of race harassment sometime<br>21 in -- was it in 2015 or 2016 that he made the<br>22 complaint that you became -- that nextSource became<br>23 aware of?<br>24 A. The racial incident, maybe I'm getting my --<br>25 kind of rough months here, it was late '15, early '16,<br>97:01 kind of broad -- we were made aware -- "we," the<br>02 company -- made aware of a racial incident.<br>03 Q. Okay. How did nextSource become aware of<br>04 that racial incident? Relative to Mr. Diaz.<br>05 A. I believe that Mr. Diaz communicated to<br>06 Mr. Jackson, a nextSource professional employee, about<br>07 the racial incident.<br>08 Q. And if I have it correct then, Mr. Diaz<br>09 was -- at the time that he complained to Wayne Jackson<br>10 about the racial harassment that he was claiming was<br>11 directed at him, that was when CitiStaff was a<br>12 supplier for nextSource to Tesla; is that correct?<br>13 A. Correct.<br>14 Q. So in other words, Mr. Diaz's relationship,<br>15 as I understand it then, is that of -- he -- Mr. Diaz<br>16 was working for a contractor supplier of nextSource,<br>17 pursuant to nextSource's contract with Tesla;<br>18 right?<br>19 A. Yes. | |
| 27 | 98:04-<br>98:18 | 98:04 MR. ORGAN: Q. And then my understanding is,<br>05 after Mr. Diaz communicated to Wayne Jackson that he<br>06 was being subjected -- that Mr. Diaz was being | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | **07** subjected to what he considered to be race harassment,<br>**08** then Mr. Jackson did some follow-up; is that correct?<br>**09** A. Yeah, Mr. Jackson would then gather the facts<br>**10** around -- you know, take statements, basically. He<br>**11** might take statements of the parties and, you know,<br>**12** try and gather the facts in preparation to bring those<br>**13** facts to the client and to the supplier.<br>**14** So the client has responsibility for the<br>**15** day-to-day. They are an interested party in this.<br>**16** The supplier as the employer -- by the way, the<br>**17** supplier -- yeah, so the supplier would be notified as<br>**18** well. | |
| 28 | 99:06-99:18 | **99:06 Q. But in terms of your suppliers, the companies**<br>**07 like CitiStaff and Chartwell, they're essentially just**<br>**08 providing employees to Tesla to work in Tesla's**<br>**09 factory; is that correct?**<br>**10 MR. GELLER: Misstates his testimony.**<br>**11 Objection to the form.**<br>**12 MS. SWAFFORD-HARRIS: And calls for**<br>**13 speculation.**<br>**14 THE WITNESS: The supplier will, in the**<br>**15 course of their employment of the worker, will**<br>**16 recruit, onboard, and pay the worker. They place that**<br>**17 worker at the Tesla site, who then works under the**<br>**18 day-to-day direction and control of Tesla.** | Testimony is cumulative, wastes time and would cause undue delay.  The same testimony was provided by designations 4, 9, 10, 14, 21, 30, 34 and 40.  Fed. R. Evid. 403. |
| 29 | 101:10-101:15 | **101:10 Q. CitiStaff was one of the suppliers that**<br>**11 nextSource had at the Tesla factory; right?**<br>**12 A. Yes.**<br>**13 Q. And Chartwell was another supplier that**<br>**14 nextSource had at the Tesla factory?**<br>**15 A. Yes.** | <u>Counterdesignation:</u>  100:20-101:3.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>20 Q. And Chartwell and<br><br>CitiStaff were suppliers<br><br>of<br><br>21 workers to Tesla via<br><br>nextSource; correct?<br><br>Meaning, |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | `22 nextSource had a role` `in making CitiStaff and` `23 Chartwell suppliers to` `Tesla; right?` **`24 A. NextSource's role`** **`was in the supplier`** **25 selection, meaning in the selection of the companies** **`1 that provide the`** **`resource. NextSource does`** **`not have a`** **`2 role in the selection of`** **`the employees that may`** **`work`** **3 at the Tesla site.** |
| 30 | 101:21-102:16 | **101:21 Q. Okay. And each of those agencies, at least** **22 as to CitiStaff and Chartwell, they would do the** **23 recruiting of employees, not nextSource; correct?** **24** A. Yes. **25 Q. And CitiStaff and Chartwell would also take** **102:01 care of the onboarding of those employees to work at** **02 the Tesla factory; correct?** **03** A. Yes. **04 Q. And then CitiStaff and Chartwell would also** **05 take care of the pay for the employees who were being** **06 recruited to work at the Tesla factory, through them;** **07 right?** **08** A. Yes. **09 Q. In terms of your understanding, in terms of** **10 the direction and the control of the employees once** **11 they were supplied by CitiStaff and Chartwell, your** **12 understanding was that Tesla was in charge of the** | 102:9-102:16.  Testimony is cumulative, wastes time and would cause undue delay.  The same testimony was provided by designations 4, 5, 9, 10, 14, 21, 28, 34 and 40.  Fed. R. Evid. 403. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | 13 direction and control of the employees once they<br>14 actually got to the factory; is that correct?<br>15 A. That is correct, yes. That's my<br>16 understanding. | |
| 31 | 104:18-<br>105:10 | **104:18 Q. And who was the program team for nextSource**<br>**19 working at Tesla in late 2015, early 2016?**<br>20 A. Mr. Wayne Jackson.<br>**21 Q. What was the protocol for Mr. Jackson to**<br>**22 follow, in terms of keeping nextSource informed about**<br>**23 his investigation of Mr. Diaz's complaint?**<br>24 A. So as Mr. Jackson would be gathering<br>25 statements -- again, fact gathering -- he might confer<br>105:01 with his supervisor, which would be logical. He'd<br>02 want to bounce ideas off his supervisor and share the<br>03 facts.<br>**04 Q. Who was Mr. Jackson's supervisor in late**<br>**05 2015, early 2016?**<br>06 A. That would have been Terry Garrett. I<br>07 believe her title is director, division director,<br>08 something.<br>**09 Q. Director of operations?**<br>10 A. Yes. | |
| 32 | 106:24-<br>108:08 | **106:24 Q. So we were talking about the process that**<br>**25 Wayne Jackson was supposed to go through.**<br>**107:01 One thing that Mr. Jackson was supposed to do**<br>**02 was to act as a liaison between Tesla and CitiStaff;**<br>**03 is that correct?**<br>04 A. Correct.<br>**05 Q. And another thing that Mr. Jackson was**<br>**06 supposed to do was to gather information relative to**<br>**07 Mr. Diaz's complaint; correct?**<br>08 A. When Mr. Jackson was made aware of the<br>09 complaint, he gathered facts.<br>**10 Q. Okay. And then another thing Mr. Jackson was**<br>**11 supposed to do was to confer with his boss, Terry**<br>**12 Garrett, about what steps to take for -- relative to**<br>**13 nextSource; correct?**<br>14 A. I would push back a little bit on what to do<br>15 next for nextSource. This was not deemed to be a<br>16 nextSource issue, so what Wayne was doing was -- my<br>17 understanding was gathering the facts, taking | |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       | 18 statements, and then his disposition would be to bring<br>19 that to Tesla on the client side and then the supplier<br>20 for which the offending person would have worked.<br>**21 Q. In terms of how Mr. Jackson was supposed to**<br>**22 bring the issues relating to Owen Diaz's complaint and**<br>**23 his investigation to Tesla, was there a particular**<br>**24 person that he was supposed to bring that information**<br>**25 to at Tesla?**<br>108:01 A. Yes, so concurrent with Mr. Diaz advising<br>02 Mr. Jackson, Wayne Jackson about the claim, the --<br>03 remember I mentioned earlier, there was a series of<br>04 department managers. Well, the affected department<br>05 manager, I believe the name is Victor Quintero,<br>06 brought -- advised Wayne of the claim, complaint, and<br>07 Wayne was fact gathering and would have brought the<br>08 information back to Victor Quintero. |  |
| 33 | 109:12-<br>110:08 | **109:12 Did nextSource get a copy of Mr. Diaz's**<br>**13 complaint with the pictures that were attached, the**<br>**14 email?**<br>15 A. NextSource -- I believe yes.<br>**16 Q. And was it that complaint email plus the**<br>**17 pictures that started things going in nextSource, in**<br>**18 terms of gathering facts relative to Mr. Diaz's**<br>**19 complaint of racial harassment?**<br>20 A. Yes, it was the statement, that and<br>21 Mr. Jackson brought that information to the parties,<br>22 Tesla and the employer of the offending person.<br>**23 Q. Chartwell; right?**<br>24 A. I believe Chartwell was the supplier employer<br>25 of the claimed offender.<br>**110:01 Q. And it was actually substantiated in terms of**<br>**02 the fact that Mr. Ramon Martinez -- do you remember**<br>**03 him to be the person who did the drawing?**<br>04 A. Yes.<br>**05 Q. It was actually confirmed that, in fact,**<br>**06 Mr. Martinez had put the offensive drawing on the**<br>**07 cardboard recycling; is that true?** |  |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 08 A. I believe it was confirmed, yes. | |
| 34 | 115:22-116:21 | 115:22 Q. If I have it right, it sounds like there's 23 essentially three different simultaneous 24 investigations going on, or at least fact gathering 2 5 going on, relative to Mr. Diaz's complaint about the 116:01 offensive racial drawing? 02 A. Yes. Tesla asked nextSource to gather facts; 03 nextSource complied. They took a statement from Diaz, 04 among that. The employer of the person conducted 05 their own investigation, and that resulted in the 06 disposition of their employee. 07 Q. And the employer was Chartwell; correct? 08 A. Yes. 09 Q. And just so we're clear for the record, the 10 employer of Ramon Martinez, the guy who put up the 11 drawing, was Chartwell; right? 12 A. Yes. Thank you. Yes. 13 Q. Okay. The employer of Mr. Diaz was 14 CitiStaff; right? 15 A. Yes, correct. 16 Q. And both Mr. Ramon Martinez and Mr. Diaz were 17 under the direction and control, during that time 18 period, of Tesla; right? 19 A. Yes. Both individuals were workers at the 20 Tesla site under the day-to-day direction of Tesla 21 management directors, whatever it is. | Counterdesignation:  114:19-115:21.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). 19 Q. Okay. Do you know what the conclusion was of 20 the investigation into Mr. Diaz's complaint about the 21 offensive drawing? 22 **A. Yes.** 23 Q. And what was the conclusion as to Mr. Diaz's 24 complaint about the offensive drawing? 25 **A. My understanding is that his employer,** 1 **Chartwell, suspended the offending person, Martinez.** 2 Q. And did nextSource come to a conclusion on 3 its own as to whether or not Mr. Ramon Martinez had 4 engaged in the harassing conduct that Mr. Diaz had 5 complained about? 6 **A. I don't know if I** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | would say that nextSource 7 came to a conclusion. During the fact gathering, 8 there was definitely -- you know, there's 9 communication between Wayne and, say, Terry, that 10 would speak to -- as they were gathering the facts, 11 but the disposition of that is ultimately decided by 12 Tesla in, say, partnership at Tesla, and directed to 13 the supplier, and I believe at the same time, I think 14 I'm neglecting to share here, the supplier conducted 15 their own investigation. They had their own fact 16 gathering going on during this parallel time. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | | 17 **So to say the nextSource -- you know, the** 18 **nextSource conclusion, the supplier had their own** 19 **fact-gathering investigation going on with their own** 20 **conclusion, and that's what led to the -- I believe,** 21 **to the suspension of the person.** |
| 35 | 119:15-119:23 | **119:15 Q. Do you recognize Exhibit 169?** 16 A. Yes. **17 Q. And what is 169?** 18 A. This appears to be an email from Nancy to 19 Tesla security, asking for an on-site badge to be 20 given to Owen Diaz so he can start -- so he can work 21 on premises at Tesla, or not work, but show up at 22 Tesla and get in. Access to the site is what I 23 interpret this to be. | Counterdesignation:  119:2-8. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). 2 Nancy Uhlenbrock, does that name ring a bell? 3 **A. Yes, I know the name. She didn't work here** 4 **when I -- I had joined after, I believe, she had** **left.** 5 Q. Okay. What was her role? 6 **A. I believe Nancy preceded Wayne in the** **Tesla** 7 **program team, probably when it first rolled out,** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | | `if I`<br><br>8 **had to guess.** |
| 36 | 122:22-123:10 | **122:22 In terms of the types of jobs that people**<br>**23 were performing at Tesla, were there differences**<br>**24 between the types of jobs that Chartwell employees**<br>**25 were performing, versus CitiStaff jobs?**<br>**123:01 MR. GELLER: Vague and ambiguous, outside the**<br>**02 scope of the deposition.**<br>**03** THE WITNESS: So I don't know the contract<br>**04** specifics with which supplier had the preponderance of<br>**05** employees working at which department. So I know that<br>**06** Tesla had roughly nine to 10 departments under which<br>**07** nextSource was, you know, having suppliers fill. The<br>**08** production department is the largest of those, I<br>**09** believe. So I really couldn't answer your question<br>**10** with specificity. | Lacks personal knowledge because deponent does not know what the contract specifies.  Fed. R. Evid. 602. |
| 37 | 128:07-128:20 | **128:07 Q. So TAMS is the software that nextSource**<br>**08 provides for its suppliers; is that correct?**<br>**09** A. Yes.<br>**10 Q. And the suppliers then enter information**<br>**11 about their employees who are providing services to**<br>**12 Tesla in the TAMS system?**<br>**13** A. Yes. The employees of the suppliers will<br>**14** directly go into TAMS and enter their time and submit<br>**15** their timesheet. The employees do that directly.<br>**16** And then the manager -- we refer to them as<br>**17** the hiring manager over at the client site -- will<br>**18** approve -- a client person, employee -- the client<br>**19** will approve the submitted timesheets by those<br>**20** suppliers. We provide the vehicle for that. | |
| 38 | 128:22-129:02 | **128:22 So if, let's say, CitiStaff supplies an**<br>**23 employee to Tesla, in that situation the employee who**<br>**24 is working at the Tesla factory through CitiStaff,**<br>**25 enters their information in the TAMS system, that's**<br>**129:01 sort of the first step; right?**<br>**02** A. Yes. | |
| 39 | 129:14-129:18 | **129:14 So if I have it right, then the -- so an**<br>**15 employee from, let's say, CitiStaff, which is a**<br>**16 supplier, enters their time into the TAMS system, that**<br>**17 is then approved by a Tesla manager; is that** | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | right?<br>18 A. Yes. | |
| 40 | 131:06-133:11 | 131 6 In terms of how nextSource gets paid for the<br>07 employees that are recruited through the suppliers,<br>08 how do you get paid for those employees?<br>09 MR. GELLER: It's vague, and I also object to<br>10 the form of the question.<br>11 Go ahead.<br>12 THE WITNESS: I'll speak generally on this<br>13 because I don't -- I'll speak generally about this.<br>14 So suppliers will submit their timesheets<br>15 through the system. The client will approve the<br>16 timesheets. What happens here is nextSource will --<br>17 nextSource professionals will pull data from the<br>18 system and prepare a billing to the client. Client<br>19 pays nextSource, then nextSource pays its suppliers.<br>20 And the last thing I'll say about this, you<br>21 remember there's a contractual relationship between<br>22 nextSource and Tesla, under which one of the items I<br>23 failed to mention earlier, one of the key items we<br>24 provide, consolidated billing, meaning that it's<br>25 easier for the client to approve one summary bill than<br>132:01 it is a hundred bills from a hundred suppliers. So<br>02 the consolidated billing is prepared by nextSource as<br>03 the MSP to the client. And the client pays<br>04 nextSource; nextSource pays the various suppliers.<br>05 Q. Okay. So for example, in the Tesla<br>06 situation, just taking the two main suppliers there,<br>07 Chartwell and CitiStaff, the Chartwell CitiStaff<br>08 employees who are working under the direction and<br>09 control of Tesla, they enter their time into the TAMS<br>10 system. The TAMS system then gets -- that time gets<br>11 approved by Tesla, and then nextSource bills for that<br>12 time, consolidated for both CitiStaff and Chartwell;<br>13 is that correct?<br>14 MR. GELLER: Misstates his testimony.<br>15 THE WITNESS: The timesheets are submitted by<br>16 the workers of the suppliers. The consolidated | Testimony is cumulative, wastes time and would cause undue delay. The same testimony was provided by designations 9, 16, 29, 30, and 42. Fed. R. Evid. 403. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
|   |       | **17** billing is prepared by -- the timesheets get approved<br>**18** by the client. We refer to them as the hiring<br>**19** manager, usually.<br>**20** The consolidated billing is prepared by<br>**21** nextSource, presented to Tesla. Tesla pays<br>**22** nextSource; nextSource pays its suppliers. That's a<br>**23** general -- that is how these arrangements work.<br>**24** MR. ORGAN: Q. And that's your understanding<br>**25** of how the arrangements work with Tesla; is that<br>**133:01** correct?<br>**02** A. Yes.<br>**03 Q. You mentioned that the Tesla people who**<br>**04 approve the time that is put in by the various**<br>**05 suppliers' employees, those are often referred to as**<br>**06 hiring managers; is that true?**<br>**07** A. Yeah, that is the -- that's our term for the<br>**08** Tesla personnel that are over the account. Because<br>**09** we, again -- because we view Tesla as the day-to-day<br>**10** manager of the workers. They get the direction from<br>**11** Tesla. |  |
| 41 | 133:15-<br>134:24 | **133:15** MR. ORGAN: Exhibit 173, for the record, is a<br>**16** one-page document Bates stamped NS-193, and it's a<br>**17** series of emails from August 17th and August 18th of<br>**18** 2015, from Victor Quintero to Nancy Uhlenbrock, and<br>**19** then from her back to him.<br>**20 Q. Have you seen these documents previously --**<br>**21 this document previously?**<br>**22** A. I reviewed a number of documents.<br>**23 Q. Fair enough.**<br>**24 In terms of Mr. Diaz's employment, it appears**<br>**25 from the lower email, the first email from Victor**<br>**134:01 Quintero, that he is approving or making changes to --**<br>**02 that altered Mr. Diaz's work from the day shift to the**<br>**03 grave shift, and that he's making him a lead.**<br>**04 Do you see that?**<br>**05** A. Yes.<br>**06 Q. Does that comport with your understanding of**<br>**07 the role that the client plays, in terms of an**<br>**08 employee of a supplier?**<br>**09** MR. GELLER: Vague and ambiguous. |  |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | Outside<br>**10** the scope of the deposition.<br>**11** THE WITNESS: This is an email in which the<br>**12** client is directing two things to be done. One is for<br>**13** the worker to change shifts, so the client's directing<br>**14** a change in shift. And secondly, the client is<br>**15** setting the pay rate for this person to -- looks like<br>**16** he got an increase, apparently. So I see two<br>**17** directions from the client on this.<br>**18** MR. ORGAN: Q. And that's typically how<br>**19** changes to assignments and pay happens in the<br>**20** relationship that nextSource had with Tesla; is that<br>**21** right?<br>**22** A. Yes. An email could be one vehicle, could be<br>**23** other -- you know, the system could be another place<br>**24** you do that. | |
| 42 | 137:16-138:05 | **137:16** "QUESTION: So nextSource gets into the<br>**17** possess of setting up the records for employees in a<br>**18** system, employees of suppliers in the timekeeping<br>**19** system that you have, that MAP system; right?")<br>**20** MR. GELLER: Vague and ambiguous and<br>**21** misstates his testimony.<br>**22** THE WITNESS: I would push back on the word<br>**23** "process" of that. NextSource would configure the<br>**24** systems to facilitate the timekeeping between the<br>**25** supplier workers and the client approver of those<br>**138:01** workers. And this email seems to comport with that<br>**02** setup.<br>**03** MR. ORGAN: Q. "This email" being Exhibit<br>**04** 174.<br>**05** A. Yes, Exhibit 174. | |
| 43 | 138:15-139:02 | **138:15** Have you seen Exhibit 38 before?<br>**16** A. Yes.<br>**17** Q. Exhibit 38 is the initial complaint that you<br>**18** understand Mr. Diaz made relative to the racist effigy<br>**19** and drawing; is that correct?<br>**20** A. Yes.<br>**21** Q. And you understand that the complaint<br>**22** regarding what he considered to be a picture of a<br>**23** cartoon depicting a black-face person with a bone in<br>**24** his hair, with a caption under it saying "boo," that's<br>**25** how Mr. Diaz described it; right? If you look at the | Counterdesignation:  139:3-4, 139:8-9.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>3 Q. And then Mr. Diaz<br><br>mentions in here that<br><br>4 Mr. Martinez admitted<br><br>that he drew the picture;<br><br>right? |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | **139:01 last email, which is on page 22.**<br>**02 A. Yes.** | 8 THE WITNESS: Yeah, I see<br>that statement in<br>9 this email. |
| 44 | 139:17-141:04 | **139:17 Q. So at least as of 8:46 a.m. on January 22nd,**<br>**18 2016, Wayne Jackson at nextSource had the information**<br>**19 that was in Mr. Diaz's email to Mr. Romero; is that**<br>**20 correct?**<br>**21 A. Yes.**<br>**22 Q. And if you look at the bottom of Mr. Diaz's**<br>**23 email, he said, "A person should be able to come to**<br>**24 work and not be harassed and degraded while they're**<br>**25 trying to do their job."**<br>**140:01 You would agree with that statement; right?**<br>**02 A. I'm sorry, where --**<br>**03 MR. GELLER: What page, Counsel?**<br>**04 MR. ORGAN: Back to 22, which is where the**<br>**05 first picture is.**<br>**06 Q. If you look at the bottom of that paragraph,**<br>**07 like the fourth-to-last sentence, it says, "A person**<br>**08 should be able to come to work and not be harassed or**<br>**09 degraded while they're trying to do their job."**<br>**10 You would agree with that statement; right?**<br>**11 A. I would agree generally that workers should**<br>**12 not be harassed or discriminated against in the**<br>**13 workplace.**<br>**14 Q. And you would agree that Mr. Diaz shouldn't**<br>**15 have been harassed or discriminated against in the**<br>**16 workplace; right?**<br>**17 A. Yes.**<br>**18 Q. And if you look at the next sentence, it**<br>**19 says, "This is not the first time Ramon Martinez has**<br>**20 been talk about his behavior."**<br>**21 I assume that means "talked about" regarding**<br>**22 his behavior.**<br>**23 Do you know if nextSource did any**<br>**24 investigation into that sentence about prior conduct**<br>**25 by Mr. Martinez?**<br>**141: 01 A. I'm not aware that nextSource was advised of** | <u>Counterdesignation:</u>  139:10-139:16.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>10 MR. ORGAN: Q. And in fact, that was an<br>11 email that was then forwarded to nextSource; correct?<br>12 **A. This email appears to have been forwarded**<br>13 **from Diaz to Mr. Ed Romero at Tesla, and then Mr. Ed**<br>14 **Romero at Tesla -- I'm sorry, and also at the same**<br>15 **time, forwarding from Owen Diaz to Wayne Jackson, the**<br>16 **same day.** |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|---------------------------------|
| | | 02 prior conduct by Mr. Martinez, so I can't speculate on<br>03 whether we were aware or not or investigated or not<br>04 any prior incident that's referenced here. | |
| 45 | 142:05-143:01 | **142:05 If something had been raised to nextSource**<br>**06 prior to this email, then that would be something that**<br>**07 certainly you would go back to when you're doing the**<br>**08 investigation into the "picaninny" or into this effigy**<br>**09 and drawing, right, racist effigy and drawing?**<br>**10 MR. GELLER: Objection to the form of the**<br>**11 question, misstates his testimony, asked and answered.**<br>12 THE WITNESS: Yeah, as I said earlier, if<br>13 there was another incident, we would have taken that<br>14 on a case-by-case basis and followed up.<br>15 MR. ORGAN: Okay.<br>**16 Q. And his next sentence says, "As an employee,**<br>**17 I'm entitled to a safe and harassment-free work**<br>**18 environment."**<br>**19 That's true for any employees who are brought**<br>**20 to Tesla by your suppliers; right?**<br>21 A. Yeah. As a general statement, an employee is<br>22 entitled to a safe and harassment work free. I would<br>23 agree with that, a statement such like that.<br>**24 Q. And that's something that applies to all**<br>**25 employees; right?**<br>**143:01 A. Sure.** | |
| 46 | 144:10-146:03 | **144:10 Q. And then if you look at the next email, which**<br>**11 is on the first page, that's the 20th, of Exhibit 38,**<br>**12 it says this is Wayne Jackson, email to Terry Garrett,**<br>**13 where again talking about the racist effigy and**<br>**14 drawing, and it says, "I just met with Victor. He**<br>**15 suggested would do a final written warning for Ramon.**<br>**16 I told Victor I didn't think that was enough. My**<br>**17 suggestion to him was a final warning with a three-day**<br>**18 suspension without pay. Victor thought that was an**<br>**19 even better idea. Will this be acceptable for you?** | Counterdesignation:  143:6-144:2, 144:4-144:8.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>6 MR. ORGAN: Q. Now, if you go to the first<br>7 page of -- I'm sorry. Go to the second page of<br>8 Exhibit 38, which is Bates-stamped Tesla 21. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | **20 Sorry for using my Tesla email, but I'm having 21 connectivity issues up here with my nextSource 22 computer."** <br> **23 So this again appears to be an interaction 24 between Mr. Jackson and Ms. Garrett, where they're 25 talking about what they consider to be the appropriate 145:01 course of action. Is that how it seems to you?** <br> **02 MR. GELLER: Calls for speculation.** <br> **03 THE WITNESS: I see two emails -- I mean, I 04 see an email between two nextSource professionals 05 discussing this incident, yes.** <br> **06 MR. ORGAN: Q.** And it appears to you that 07 the two nextSource professionals, Wayne Jackson and 08 Terry Garrett, are discussing what's the appropriate 09 level of discipline for Ramon Martinez, based on his 10 racist effigy and drawing; is that right? <br> **11 A.** Yeah, in reading the email from Wayne to 12 Terry, it looks like Wayne suggested something, but 13 Victor -- I assume he's talking about Victor. <br> **14 Q.** Quintero? <br> **15 A.** The client, hiring manager, it was Victor's 16 decision to go with whatever was done here. So he 17 discussed it with Victor -- so to back up, 18 nextSource's role in the scenario is take the 19 information, bring it to the client. Client decides 20 what to do, and then nextSource brings that to the 21 supplier and advises the supplier of client's wishes 22 and direction. <br> **23 So this looks like some dialogue with 24 nextSource and the client, where Victor decided that 25 a -- in this case, a final warning and a three-day 146:01 suspension.** <br> **02 Q. Was appropriate?** <br> **03 A. Yes, I'm sorry, was appropriate.** | 9 There's an email from Terry Garrett to Wayne 10 Jackson on January 22nd at 9:33 a.m., and it appears 11 that she's documenting -- Ms. Garrett's documenting a 12 conversation she had with Wayne Jackson. 13 Do you see that? <br> 14 **A. Yes.** <br> 15 Q. And it says, "There are two options for 16 Ramon. 1 is a strong warning and grounds for 17 termination if he has another mishap on any level, and 18 2 is termination due to the level of insult to the 19 workforce and zero tolerance policy at Tesla." 20 Do you see that? <br> 21 **A. Yes.** <br> 22 Q. These are recommendations that are |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       |                    | made<br><br>23 essentially to Tesla,<br><br>which then Tesla gets to<br><br>either<br><br>24 approve or not approve.<br><br>Is that how this process<br><br>25 works?<br>1 **A. No.**<br><br>2 Q. Okay. Tell me how the process works.<br><br>4 THE WITNESS: I see in<br><br>this email two<br><br>5 nextSource professionals<br><br>dialoguing between<br><br>6 themselves. Tesla's not<br><br>on this email. I see them<br><br>7 conferring between<br><br>themselves. That's all I<br><br>can say<br><br>8 about that. |
| 47 | 150:09-152:03 | **150:09 Q. In fact, the only information you have is**<br>**10 that Wayne Jackson did meet with Victor Quintero;**<br>**11 correct?**<br>12 A. According to this email, that is what this<br>13 says, yes. I agree this email does state that, and --<br>**14 Q. You have no reason to doubt Mr. Jackson's**<br>**15 statement here that he met with Victor Quintero, do**<br>**16 you?**<br>17 A. I have no reason to doubt. Yes.<br>**18 Q. Okay. And in fact, that would be part of the**<br>**19 appropriate protocol, based on what you've already**<br>**20 testified to, as to what role Wayne Jackson was**<br>**21 playing in the investigation of Mr. Diaz's complaint;**<br>**22 correct?** | Deponent does not have personal knowledge and is only relying on what the email said.  Fed. R. Evid. 602. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | 23 A. He would. Wayne would gather the facts and 24 have a discussion with the client as to what the 25 client wants to be done. So he will take -- the 151:01 program manager will take the direction and wishes of 02 the client back to the supplier, so this appears to be 03 all within the course of that process, yes. **04 Q. Okay. And then if you look at the next** **05 sentence, it says, "He" -- meaning Victor --** **06 "suggested that we do a final written warning for** **07 Ramon."** **08 You see that; right?** **09 A. Yes.** **10 Q. And it appears that Mr. Jackson indicated to** **11 Mr. Quintero that he didn't think a final written** **12 warning was sufficient discipline; right?** 13 A. I see the -- I see that in the email, yes. **14 Q. And that's your understanding of what** **15 happened in the meeting with Wayne Jackson and Victor** **16 Quintero; right?** **17 MR. GELLER: Calls for speculation.** 18 THE WITNESS: According to this email, that's 19 the face of what the meeting was about -- what 20 occurred in the meeting right here. **21 MR. ORGAN: Q. And as far as nextSource is** **22 concerned, that's nextSource's understanding what** **23 happened in the meeting between Wayne Jackson and** **24 Victor Quintero; correct?** **25 MR. GELLER: Calls for speculation.** 152:01 THE WITNESS: Again, I don't know what other 02 communications happened, but within the email here, 03 yes, I agree that's what the email states. | |
| 48 | 152:17-153:06 | **152:17 You're not aware of any notes that** **18 Mr. Jackson took of his meeting with Victor Quintero** **19 on or about January 22nd of 2016; correct?** 20 A. No. **21 Q. "No," you're not aware of any notes?** 22 A. No, I'm not aware of any notes, that's 23 correct. **24 Q. Okay. You understand that Mr. Quintero's** **25 first suggestion was to only do a written warning,** **153:01 correct, a final written warning for Ramon Martinez?** **02 MR. GELLER: Calls for speculation.** 03 THE WITNESS: I mean, that's what's | 152:24-153:06.  Deponent does not have personal knowledge and is only relying on what the email said.  Fed. R. Evid. 602. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-----------------------------|
| | | 04 articulated in the email here. I read the sentence as<br>05 you do: "He suggested we do a final written warning<br>06 for Ramon." That's what's on this email. | |
| 49 | 157:18-157:23 | **157:18 My question's a little different. And that**<br>**19 is, in terms of following up, nextSource as the**<br>**20 intermediary would do at least some follow-up to make**<br>**21 sure that its client's wishes were, indeed, carried**<br>**22 out; right?**<br>**23 A. Yes.** | |
| 50 | 158:12-159:04 | **158:12 Q. These three important things that Terry**<br>**13 Garrett's suggesting here, these are things that**<br>**14 nextSource is going to try to follow up with relative**<br>**15 to Chartwell; correct?**<br>16 A. Yeah, I see the -- again, the email between<br>17 two nextSource professionals with these bullets on<br>18 here. I also see where she says, "Do not take action<br>19 until Tesla HR weighs in." So the decision maker,<br>20 obviously is Tesla in this case, HR. I also see that<br>21 Terry had just gotten off a call: "Just got off the<br>22 call for Tesla."<br>23 So apparently, she just left a call with<br>24 Tesla, generated these three things, and then asked<br>25 Wayne not to move forward until Tesla HR weighs in.<br>**159:01 Q. Okay. So contacting Tesla HR was**<br>**02 anticipated, it looks like, from Terry Garrett's email**<br>**03 at 6:35 p.m. on the 22nd; is that right?**<br>**04 A. Yes.** | |
| 51 | 159:13-159:21 | **159:13 MR. ORGAN: Q. Let me ask you this: The**<br>**14 third item under "three important things," says,**<br>**15 "Let's send out an update to the workforce on the**<br>**16 seriousness of this type of offense, and remind them**<br>**17 of zero tolerance policy."**<br>**18 Do you have any information that that was**<br>**19 ever done?**<br>**20 A. I do not. I do not know if that was ever**<br>**21 done.** | <u>Counterdesignation:</u>  159:5-159:8, 159:10-159:12.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>5 Q. And then the three<br><br>steps here, as far as<br><br>6 nextSource is concerned,<br><br>your understanding is that<br><br>7 these three steps were |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | at least pursued by nextSource; 8 correct? |
|   |       |                    | 10 THE WITNESS: I don't know if these three 11 steps were pursued by nextSource, so I don't know 12 that. |
| 52 | 162:10-163:11 | 162:10 Exhibit 130, for the record, is a four-page 11 document Bates-stamped Tesla 4 through 7. And it's, 12 again, a series of emails that start with Mr. Diaz's 13 complaint about the racist effigy and drawing. I'm 14 actually concerned only with the emails on the top. 15 There's a discussion here or email exchange 16 with Wayne and Veronica Martinez of Chartwell staff. 17 This follows the protocol that I think you discussed 18 earlier, where nextSource works both with the client 19 and with the supplier; is that true? 20 A. That's correct. 21 Q. And it appears here that Mr. Jackson is 22 coordinating or making sure that Chartwell is aware of 23 the problem relative to the Chartwell employee Ramon 24 Martinez; right? 25 A. Yeah, it looks to me that Wayne is advising 163:01 Mr. Martinez on January 22nd of this series, in his 02 words: Serious, came up today. 03 Yeah, it's clear that Wayne is reaching out 04 to Chartwell as to what their policy is and advising 05 them of this issue by their employee. 06 Q. Okay. And then it appears that Veronica 07 Martinez from Chartwell is reporting back to Wayne and 08 letting him know that they're going to start an |   |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       | 09 investigation and that she's notified her HR director;<br>10 right?<br>11 A. Yes. |  |
| 53 | 165:12-<br>165:15 | **165:12 Q. I'm just wondering if you're aware of any**<br>**13 notes of Mr. Jackson's conversations with either Ramon**<br>**14 Martinez or Owen Diaz.**<br>**15 A.** No. | Counterdesignation:  165:1-11. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>1 Q. Are you aware of any notes that were created<br><br>2 in terms of Mr. Jackson talking to Ramon Martinez or<br><br>3 Owen Diaz?<br><br>4 **A. Notes that Wayne Jackson would have taken?**<br><br>5 Q. Yes.<br><br>6 **A. No. I see these dialogues here. Actually, I**<br><br>7 **do see where it says "Diaz stated that he was fine**<br><br>8 **with that. I just wanted it to be addressed. So**<br><br>9 **interesting, so Wayne follows up with Diaz, saying**<br><br>10 **he's taking the issue seriously, so it's following up**<br><br>11 **with Owen, it looks like, in this** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | | trail. |
| 54 | 168:06-168:16 | **168:0 6** MR. ORGAN: Q. Yes. Was it made? Did you **07** consider -- did nextSource consider the complaint by **08** Mr. Diaz to be a serious complaint? **09** A. I would -- reading this, I would say yes. **10 Q. After Mr. Jackson talked to Owen Diaz, per 11 our last exhibit, 175, do you know if there was any 12 follow-up by anybody at nextSource to see how Mr. Diaz 13 was doing after the conduct was directed at him? 14** A. I am not aware. I'm not aware of any **15** follow-up. Whether it does or does not exist, I can't **16** say. | |
| 55 | 171:05-172:07 | **171:05 Prior to the litigation, was nextSource ever 06 aware that Judy Timbreza was accused of using the "N" 07 word, or a version thereof, towards Owen Diaz? 08** A. Prior to the litigation, no, nextSource was **09** not involved, did not investigate, did not fact-gather **10** anything around that incident. **11 Q. Certainly, if nextSource became aware of the 12 use of the "N" word at the Tesla factory, they would 13 gather facts about that information; right? 14 MR. GELLER: Calls for speculation. 15 MS. SWAFFORD-HARRIS: Tesla joins. It's also 16 incomplete hypothetical. 17** THE WITNESS: Yes, theoretically speculating **18** that if we're aware of a nextSource associate or a **19** nextSource supplier employee doing something such as **20** that, I would speculate that we would gather the facts **21** on that. **22** MR. ORGAN: Q. And the reason you would **23** gather the facts on that is, use of the "N" word is **24** highly offensive conduct; right? **25** A. Yes. **172:01** MR. GELLER: Speculation. **02** THE WITNESS: Yeah. Personally, it's a **03** highly offensive. That's one of those zero tolerance. **04** I believe nextSource, the position would be the same. **05** An account person of nextSource, I would assume, would | 171:11-172:07.  Deponent testified he was speculating, and is not based on personal knowledge and it is improper hypothetical lay opinion testimony not "rationally based on the witness's perception" and deponent was not disclosed as an expert.  Fed. R. Evid. 601, 701. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|---------------------------------|
| | | 06 have the same reaction, if that were -- behavior were<br>07 existing. That's speculating. | |
| 56 | 172:25-173:03 | 172:25 MR. ORGAN: Q. Well, I'm just -- we know<br>173:01 that Ramon Martinez was a supplier employee through<br>02 Chartwell; right?<br>03 A. Yes. | Deponent testified (173:4-173:9) that he did not know that Ramon Martinez was a supervisor but said "I'll accept he was a supervisor there" and thus testimony is speculative and not based on personal knowledge. Fed. R. Evid. 602. |
| 57 | 173:10-173:14 | 173:10 Q. So Mr. Martinez would at least be an example,<br>11 given his role at the Tesla factory, would be an<br>12 example of a supplier's employee being in a supervisor<br>13 role at the Tesla factory; right?<br>14 A. I would agree. | Deponent testified (173:4-173:9) that he did not know that Ramon Martinez was a supervisor but said "I'll accept he was a supervisor there" and thus testimony is speculative and not based on personal knowledge. Fed. R. Evid. 602. |
| 58 | 180:18-182:05 | 180:18 Exhibit 91, for the record, is a two-page<br>19 document Bates-stamped CitiStaff 6 and 7. And the<br>20 first -- it's two emails, one from January 28th of<br>21 2016, and then the top one from February 2nd of 2016.<br>22 And it appears that -- I guess my question is this:<br>23 Why would Vanessa Parks be emailing to Monica De Leon<br>24 from CitiStaff about pay increase -- pay rate<br>25 increases to the following contractors. Why would she<br>181:01 be doing that?<br>02 MR. GELLER: Excuse me. Calls for<br>03 speculation. It's outside the scope of the<br>04 deposition.<br>05 Go ahead.<br>06 THE WITNESS: Yeah, this is normal. I'd<br>07 speculate what I'm saying here is, in connection with<br>08 the email from three days prior -- I don't know if it<br>09 was Thursday -- where Tesla directed nextSource to<br>10 make the administrative change in the VMS system, this<br>11 is the other side of that -- it's client to<br>12 nextSource. Right? This is the other side. This is<br>13 nextSource telling the supplier, right, that Tesla<br>14 wants this pay rate changed.<br>15 So the direction starts with Tesla, Ed | Counterdesignation:  179:23-180:14.  Rule of completeness since designated testimony refers to Exhibit 178 (181:24-182:1), which is the exhibit discussed in the counterdesignation.  Fed. R. Evid. 106, Fed. R. Civ. P. 32(a).<br><br>23 MR. ORGAN: Exhibit 178, for the record, is a 24 one-page document Bates-stamped NS-25. It appears to 25 be an email from Ed Romero to Wayne Jackson, and then 1 an email from Vanessa Parks back to Ed Romero. 2 Q. This, again, is sort of the typical procedure 3 that would go back and forth between Tesla and |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | 16 Romero. Funnels through the facilitator, nextSource, <br>17 who changes the VMS and then who takes that same pay <br>18 change that Tesla directed, and directs -- <br>19 communicates to the supplier Tesla's wishes. <br>20 So this is the other side of the <br>21 communication, starting with the client on a pay <br>22 change. So this is, I would characterize it as <br>23 standard. <br>24 MR. ORGAN: Q. So in other words, Exhibit 91 <br>25 is the other side of Exhibit 178? <br>**182:01** A. Yes. <br>**02 Q. Okay.** <br>**03** A. That's three days later. That's exactly what <br>**04** it is. And this is -- in my view, they're both <br>**05** normal. | 4 nextSource relative to employees supplied through 5 nextSource suppliers; is that correct? 6 **A. This email is a Ed Romero, the employee of** 7 **Tesla, directing Wayne to make a change to the pay** 8 **rate. I'm assuming he means in TAMS.** 9 **So we talked about the TAMS maintenance as** 10 **one of our functions. So to the degree this is him** 11 **saying change the TAMS rate to go from 16 to 18, then,** 12 **yes, that would be a normal function directed by the** 13 **client to make -- administer changes in the tool.** 14 **That would be normal.** |
| 59 | 184:18-185:23 | **184:18 Exhibit 140, for the record, is a one-page** <br>**19 document Bates-stamped CitiStaff 9, and it's two** <br>**20 emails from March 18th of 2018, between --** <br>**back and** | <u>Counterdesignation:</u>  184:6-184:15.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | **21** forth between Monica De Leon and Wayne Jackson. **22 Does this refresh your recollection about the 23 events leading to Mr. Diaz's termination from Tesla? 24 MR. GELLER: Objection; misstates the 25 witness's testimony. 185:01 MS. SWAFFORD-HARRIS: Join. 02** THE WITNESS: Yeah, his assignment ended. So **03** the assignment, on the -- apparently the night shift **04** ended, and he was nonresponsive to go to the night **05** shift -- I got that backwards, but that he was **06** nonresponsive to go to the night shift. **07** MR. ORGAN: Q. If you look at the first **08** sentence of Mr. Jackson's email on that same date -- **09** this is again in the bottom email -- it says, **10** "Unfortunately, we will have to term the assignment of **11** Owen Diaz." **12** What does that mean? I assume that means **13** terminate the assignment of Owen Diaz. Is that your **14** understanding of that? **15** A. Yes, assignment is literally a record in the **16** tool that a worker gets attached to. So they were on **17** an assignment, right, so as a technical matter, when **18** you terminate the assignment, you're closing out. The **19** record has ended. So this is them -- looks like it's **20** Wayne -- I've got to speculate, Wayne advising his **21** employer, CitiStaff, that Tesla has directed his **22** assignment be ended. This is nextSource notifying the **23** supplier employer of that happening. | 6 Q. And then this, again, goes to the issue that 7 you identified about Owen Diaz not getting back to 8 either Wayne or Tesla about his desires relative to 9 moving shifts; is that right? 10 **A. Correct.** 11 Q. Okay. 12 **A. I'm sorry, I want to add, there was outreach 13 to Mr. Diaz about taking the day shift, and he was 14 nonresponsive. That's what this -- this confirms 15 that.** |
| 60 | 188:04-188:16 | **188:04 Q. Where Mr. Jackson says "Unfortunately, I 05 think it is time to move forward and term his 06 contract," do you see that? 07** A. Yes. **08 Q. It would not be Wayne Jackson's place to 09 terminate Mr. Diaz's contract; is that correct? 10** A. No. It would be the client's direction to **11** end the assignment. The language here is inartful, **12** but it seems, again, as I said earlier, Owen was -- **13** Mr. Diaz was unresponsive as to the changing of the **14** shift, and apparently, according to this email, **15** refuses to speak with Wayne, if I read this correctly. | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | 16 So the lack of response, I think, is evident here. | |
| 61 | 189:08-189:14 | **189:08 MR. ORGAN: Exhibit 180, for the record, is a** <br> 09 one-page document Bates-stamped NS-34, and it is <br> 10 emails from March 18th, 2016. <br> **11 Q. It appears that Mr. Jackson -- so Fremont** <br> **12 Badging, that's the people -- security at Tesla. Is** <br> **13 that your understanding?** <br> **14 A. Yes.** | Counterdesignation:  189:20-190:9. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). |
| 62 | 190:13-191:09 | **190:13 MR. ORGAN: Exhibit 181, for the record, is a** <br> 14 two-page document Bates-stamped NS-28 and 29. <br> **15 Q. I'm interested in the email at the top from** <br> **16 Vanessa Parks to Wayne Jackson, where it says "Owen** <br> **17 has no final hours. I will term him out of both** <br> **18 systems."** <br> **19 Do you know what "both systems" is referring** <br> **20 to there?** <br> 21 A. Yeah, I'm speculating, but I'm sure -- I'm <br> 22 highly confidently speculating -- that "systems" <br> 23 refers to TAMS, the timesheet management system; that <br> 24 the timesheet's been approved and submitted, and <br> 25 secondly, the Kronos timekeeping system, which has an <br> 191:01 integration into TAMS, so work -- if you want me to <br> 02 elaborate, I'm happy to. <br> 03 The workers at the Tesla site, I believe had <br> 04 a clock system like a punch in/punch out kind of <br> 05 thing. So what we see here is the administratively <br> 06 shutting down access to the Tesla time clock system as <br> 07 well as our timesheet management system, and that <br> 08 would be a function that I would expect our program <br> 09 team to do. | |
| 63 | 201:14-202:03 | **201:14 MR. ORGAN: Q. Certainly, that issue of** <br> **15 Mr. Diaz feeling threatened by Ramon Martinez, that** <br> **16 was something that nextSource knew about in this** <br> **17 mid-October time frame; correct?** <br> **18 MR. GELLER: Outside the scope of the** <br> **19 deposition.** <br> **20 THE WITNESS: Yeah, it does appear nextSource** <br> **21 is notified in October 20th, when Mr. Diaz advised** <br> **22 Wayne about this. So, yes, in October.** <br> **23 MR. ORGAN: Q. And do you know one way or** <br> **24 another whether or not any of the yelling or threats** | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | **25** that Mr. Diaz was complaining about had anything to do<br>**202:01** with race or not?<br>**02** A. No, I would be speculating to give an answer<br>**03** on that. | |
| 64 | 203:03-<br>203:09 | **203:03** MR. ORGAN: Q. And in terms of where Terry<br>**04** Garrett says that two of the three workers have<br>**05** already been interviewed, are you aware of any notes<br>**06** that were taken of interviews of employees regarding<br>**07** the interaction between Owen Diaz and Ramon Martinez,<br>**08** in October of 2015?<br>**09** A. No. Notes, no. | Counterdesignation:  202:4-202:8, 202:10-202:16.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>4 Q. Would this<br>information have been<br>something<br>5 that you would have<br>wanted to follow up on in the<br>6 January time period,<br>when nextSource was doing fact<br>7 finding about the<br>interaction between Mr. Martinez and<br>8 Mr. Diaz about the<br>racial drawing?<br><br>10 THE WITNESS: I don't know if these are<br>11 connected as to race. I wouldn't be able to answer<br>12 whether nextSource, to answer your question, whether |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | | 13 nextSource brought this incident up in the course of 14 fact gathering for the racial incident. 15 This doesn't appear to be racial, what I'm 16 reading here, and that the incident in January did. |
| 65 | 203:20-206:22 | 203:20 Exhibit 126, for the record, is a four-page 21 document Bates-stamped Tesla 133 to 136, and they are 22 emails, starting with an email from Mr. Diaz about 23 Ramon Martinez from October 17th of 2015, and they go 24 through October 20th of 2015. And then what I'm 25 looking at here is an email from Erin Marconi on the 204:01 beginning, at the bottom of page -- I'm sorry. 02 This is an email to Erin Marconi at the 03 bottom of this, and it says from Terry to Erin: "Yes, 04 we're working on this complaint as we speak." 05 Then if you go above that, Erin responds and 06 says, "Do you think you'll be able to provide the 07 summaries from your employee interviews today?" 08 And then Terry says, "Yes, I should be able 09 to have the information to you by COD today. Thank 10 you for your support." 11 And I'm just wondering, do you have any 12 knowledge as to the employee interviews or any kind of 13 written documentation of what was done by Terry 14 Garrett relative to Mr. Diaz's complaint about the way 15 Ramon Martinez threatened him? 16 MR. GELLER: Outside the scope of the 17 deposition. 18 THE WITNESS: So reading this, it looks 19 like -- so it looks like Terry obtained statements 20 from -- I use the term "employee." Obtained -- | Deponent lacks any personal knowledge about Exhibit 126 and Exhibit 127, and is not answering in his capacity as a 30(b)(6) designee and thus the testimony is misleading and would confuse the jury.  Fed. R. Evid. 403, 602. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | was<br>**21** working on obtaining statements from the supplier<br>**22** employees, and she was coordinating back with the<br>**23** Tesla client sponsor or among the client Aaron,<br>**24** Ms. Marconi, that Terry was pulling the statements<br>**25** from the suppliers.<br>**205:01** So to answer -- am I aware of the notes that<br>**02** she took? Is that the question?<br>**03** MR. ORGAN: Q. Yes.<br>**04** A. No. I can only speculate as to what she<br>**05** would have gathered. I mean, there was clearly some<br>**06** statement taking going on, but I have not seen those<br>**07** notes.<br>**08 Q. Okay. In terms of Erin Marconi's email in**<br>**09 the middle of the first page of Exhibit 126, it says,**<br>**10 "Do you think you'll be able to provide the summaries**<br>**11 from your employee interviews today?"**<br>**12 Do you have any kind of knowledge as to what**<br>**13 summaries Erin Marcone is referring to there?**<br>**14** A. I do not. I would only be speculating.<br>**15 Q. Then if we go -- let's go to the next one,**<br>**16 which is -- this is Exhibit 127.**<br>**17 Exhibit 127, for the record, is a two-page**<br>**18 document Bates-stamped Tesla 646 and 647. And they**<br>**19 are emails. One's a duplicate email down at the**<br>**20 bottom, Wayne Jackson talking about -- on the phone**<br>**21 dealing with the Owen and Ramon issue, and then**<br>**22 there's an email from Terry on the 21st, two days**<br>**23 later, saying they don't need to do any formal**<br>**24 investigation, and then an email at the top from Wayne**<br>**25 Jackson to Terry, saying, "Yes, I've spoken to all**<br>**206 :01 three and will be speaking with Ramon and Owen again**<br>**02 on Friday. I had a conversation with Ed at Victor's**<br>**03 desk yesterday, and they just want to verbally counsel**<br>**04 each of them with regards to appropriate behavior in**<br>**05 the workplace. No written warning needed right now."**<br>**06 Do you have any more knowledge about this** | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | **07 incident, or these incidents, now that you've reviewed** **08 Exhibit 127?** **09 MR. GELLER: Objection to the form. Calls** **10 for a narration, and it's outside the scope.** 11 THE WITNESS: No, I don't. This is -- again, 12 this is Wayne and Terry, nextSource professionals 13 interacting back and forth with this. And I do not 14 have notes or more on this than what's on the surface 15 of this email. 16 Well, I will say I do read that the 17 conversation with Ed, which would have been the 18 client, Tesla, and they just want us to verbally 19 counsel. So that's Tesla giving direction, right, as 20 to disposition for the supplier employees. Not 21 inconsistent with nextSource being the liaison between 22 client and supplier. | |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

**Monica DeLeon**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | General objection to all designations. Testimony is improperly designated because deponent was not a party when deposed, but a former employee of a party, and there is no showing that the deponent is unavailable or falls within any exception to Federal Rule of Civil Procedure 32(a)(4). |
| 1 | 65:8-14 | Q: So do you know if CitiStaff clients such as Tesla issued performance reviews to Citistaff employees? <br> Mr Rutschman: Objection; vague and ambiguous. Calls for speculation. <br> A: So what I recall, yes, they would give some every now and then. | Counterdesignation: 65:16-65:18, 65:22-66:1, 66:5-66:6, 66:9. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). <br><br> 16 Q. And so you recall specifically Tesla <br> 17 giving CitiStaff employees performance reviews now <br> 18 and then? <br><br> 22 **THE WITNESS:** I recall nextSource. <br> 23 **BY MS. AVLONI:** <br> 24 Q. You recall nextSource giving CitiStaff <br> 25 employees performance reviews; is that correct? <br> 1 **A.** Mm-hmm. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| | | | | |
|---|---|---|---|---|
| | | | | 5 Q. And do you know how often nextSource 6 would give CitiStaff employees performance reviews? |
| | | | | 9 **THE WITNESS:** No, I don't remember. |
| 2 | 91:22-92:1 | | Q: So your understanding is that the client would recommend the raises and that CitiStaff would implement those raises? A: So the client would send us any raises or reviews and we would process as follows, yes. | <u>Counterdesignation:</u>  92:12-92:15, 92:18-92:23.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). 12 So would CitiStaff to your knowledge 13 pretty much always authorize all raise -- 14 recommendations for employees -- for CitiStaff 15 contractors coming from clients? 18 **THE WITNESS:** So for CitiStaff 19 contractors, whenever nextSource would send us any 20 pay rate changes or increases, raises, I would send |

| | | | | |
|---|---|---|---|---|
| | | | | 21 them to Emilio. Send the e-mail to have a 22 confirm -- confirmation of it, a written consent. 23 And we would process it as follows. |
| 3 | 114:10-18 | Q: It was just—to your knowledge you believe nextSource was a client and to your knowledge you don't believe that Tesla was a client of CitiStaff when you were there? Mr. Rutschman: Objection; misstates the witness's prior testimony A: To my knowledge Citistaff helped nextSource provide contractors for—to work at Tesla for Tesla. | | Not based on personal knowledge because deponent previously was asked (114:4-8) "do you know if Tesla was ever a client of Citistaff" to which deponent responded "no." Fed R. Evid. 602. |
| 4 | 118:10-20 | Q: Do you know if Tesla has the ability to recommend termination of a relationship between a CitiStaff contractor working at its facility? [objection] A: In that case I would say yes. If there is—if they're in a department that's far away or—and they're being supervised by them and that supervisor, then yes, I would say in that case they would be able to tell nextSource about the worker's performance. | | Not based on personal knowledge because deponent did not know if Tesla had the ability to recommend promotion (117:20-118:2) or if Tesla had the ability to discipline employees (118:3-118:8). Fed. R. Evid. 602. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

**Tom Kawasaki**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | General objection to all designations. Testimony is improperly designated because deponent was not a party when deposed, but a former employee of a party, and there is no showing that the deponent is unavailable or falls within any exception to Federal Rule of Civil Procedure 32(a)(4). |
| 1 | 42:24-43:2 | Q: Okay. Okay. So let me break that down. So you do recall that Mr. Diaz, at least, told you that Mr. Trimbeza had used the N-word towards him?<br>A: Correct<br>Q: And you also recall that other people told you that they had heard racial terms used; is that right?<br>A: Correct | Counterdesignation: 36:20-37:16, 40:23-24, 41:3-41:7, 42:8-42:10, 42:13-22, 44:18-45:15. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>20 Q. And do you remember what the nature of the<br>21 complaint was?<br>22 **A. I vaguely remember. They got into an argument**<br>23 **and -- I believe I was doing my route, driving around,**<br>24 **making sure everybody was okay, they didn't need any**<br>25 **help. Like, when I drove around, if -- if they need to**<br>1 **use the bathroom, I would step in and fill the position** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | 2 for the five, ten minutes they left to go use the |
|   |       |                    | 3 bathroom, whatever it is, or get something to eat. I |
|   |       |                    | 4 mean, we were working 12-hours days, I wasn't trying to |
|   |       |                    | 5 burn anybody out. If they needed a break, they needed a |
|   |       |                    | 6 break. |
|   |       |                    | 7 And then he called me -- Owen had called me |
|   |       |                    | 8 and said he got into altercation, so I drove back to the |
|   |       |                    | 9 elevators and said what happened and they were arguing |
|   |       |                    | 10 and I can't -- can't really remember what the argument |
|   |       |                    | 11 was about, but I -- I think they -- I think some- |
|   |       |                    | 12 something -- I forget |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | what he said. He said |
| | | | 13 something -- that he called him something. I just |
| | | | 14 forget what it was, but I have it all down in e-mail. I |
| | | | 15 know I e-mailed everything to my immediate supervisor |
| | | | 16 that night. |
| | | | 23 Q. Okay. And. Mr. -- he -- Mr. Diaz alleged |
| | | | 24 that Mr. Timreza called Mr. Diaz a dumb N-word, correct? |
| | | | 3 THE WITNESS: I put in the document that he |
| | | | 4 was saying derogatory term, were raciest in nature. I |
| | | | 5 honestly don't remember exactly what was said. I |
| | | | 6 can't -- but I know I put it in form and I know they got |
| | | | 7 into a very big argument and I had to separate them. |
| | | | 8 Q. And that -- as you think about it, you |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       |                    | recall |
|   |       |                    | 9 that -- at least one of the racial slurs he used was |
|   |       |                    | 10 dumb nigger; is that right? |
|   |       |                    | |
|   |       |                    | 13 THE WITNESS: It -- I know racial slurs were |
|   |       |                    | 14 said. I can't very verify that the N-word was said, but |
|   |       |                    | 15 from what they were arguing about, I know Owen said he |
|   |       |                    | 16 called me the N-word. I remember Owen saying that he |
|   |       |                    | 17 called me the N-word and they were arguing, where they |
|   |       |                    | 18 were almost about to get into a fight. So I got into |
|   |       |                    | 19 the middle of it and said -- it happened and there was |
|   |       |                    | 20 other people around |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | that said it as well, that this 21 altercation happened, so in my book, as a supervisor, 22 I'm going to separate the two. 18 Did Mr. Timreza admit that he had used some 19 inappropriate language? 20 **A. He -- he argued about it and said he didn't do 21 it. But at that time, them really arguing, almost 22 getting into a fight, and other people in the area 23 telling me that -- that was said in nature, it was my -- 24 my decision to say, hey, what -- I can't keep them both 25 together and I can't put Judy in another department,** 1 **there's nothing else for me to put him, I need** |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | to<br><br>2 **separate these guys and those natures were said. At my**<br><br>3 **standpoint, I -- there's people around, they said what**<br><br>4 **they said. Okay, well, you got to go home. You --**<br><br>5 **that's not -- that's not cool, that's not right, you**<br><br>6 **can't do that.**<br><br>7 Q. So -- so based on the information that you<br><br>8 received from the people that you talked to in the<br><br>9 general area were Owen and Judy Timbreza were working,<br><br>10 you -- you made the assessment that Mr. Timreza had at<br><br>11 least used some inappropriate words, correct? |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | 12 **A. Correct.** |
| | | | 13 Q. And based on that determination you sent 14 Mr. Timreza home, correct? |
| | | | 15 **A. Correct.** |
| | | | 23 Q. I just wanted to clarify something you 24 testified about earlier, with the altercation between 25 Judy and Owen. |
| 2 | 76:7-10 | Q: Did—when you were walking around the facility, did you ever hear anyone using the N-word, even if you can't identify them, did you hear the word? A: I mean, I heard it all over the facility. … | Testimony should be excluded because not pertinent to the allegations raised by Plaintiff, did not involve Plaintiff, did not involve Plaintiff's supervisors, did not involve Plaintiff's alleged harassers, as set forth in Defendant's Motion *In Limine* No. 3, section 2. Counterdesignation: 76:11-77:7, 96:13-97:12. Omits part of deponent's answer and all related testimony. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). 11 **I mean, it's -- there's a bunch of staffing companies,** 12 **man. I mean, you had -- you had a range of people, man.** 13 **Staffing companies** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | hire -- you go to a staffing company |
| | | | 14 because you can't get a job, per se, like a -- I guess a |
| | | | 15 real person or whatever, you have a background, whatever |
| | | | 16 it is. I mean, we filtered through a lot of people. |
| | | | 17 I'm not knocking people for what they do, but it's a |
| | | | 18 staffing agency, per se. So you got a wide arrange of |
| | | | 19 people. |
| | | | 20 Like I said, in our age, that word gets thrown |
| | | | 21 around very causally. Now, if you -- there is tones the |
| | | | 22 way you say it and what it is, but -- I mean, I've heard |
| | | | 23 it thrown around |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | there, yeah. |
| | | | 24 Q. How -- how often do you think you heard the 25 N-word at the Tesla factory? |
| | | | 1 **A. I couldn't -- I really could not tell you how** |
| | | | 2 **often I heard it. But, I mean, you hear it. I mean, it** |
| | | | 3 **is what it is.** |
| | | | 4 Q. Okay. |
| | | | 5 **A. I don't think nothing of it. I mean, no** |
| | | | 6 **complaints were brought to me, so -- and I don't know** |
| | | | 7 **what was brought to other people, so.** |
| | | | 13 Q. You testified that you heard the N-word thrown |
| | | | 14 around, but you did not think anything of this. |
| | | | 15 What did you -- what did you mean by that? |
| | | | 16 **A. It -- I mean, I drive around the** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | building, |
|   |       |                    | 17 people are -- whatever, they're on break, they're in the |
|   |       |                    | 18 cafeteria, they're joking around with each other, you |
|   |       |                    | 19 know, they're saying the N-word to each other, maybe in |
|   |       |                    | 20 a cool way or whatever to them, whatever it is. |
|   |       |                    | 21 I -- just -- it -- it didn't recollect to me |
|   |       |                    | 22 that that wasn't right or I should say something or |
|   |       |                    | 23 whatever. It -- like I said, that had nothing to do |
|   |       |                    | 24 with me. It wasn't hurting me, it wasn't hurting my |
|   |       |                    | 25 people in doing their job. They weren't my employees. |
|   |       |                    | 1 It didn't affect me. So I just thought nothing of it. |
|   |       |                    | 2 It's like walking down |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | the street right now hearing 3 somebody saying it. You're not going to think twice, 4 you're not going to stop. 5 Q. Did you -- did you -- did you think nothing of 6 it because you heard it sort of more of a greeting 7 between people? Is that what you're saying? 8 A. It was -- it wasn't like an argument tone, it 9 wasn't in an aggressive tone, so. 10 Q. Did you -- did you believe it was not being 11 used in an offensive manner? 12 A. Yes -- |
| 3 | 81:24- | "Owen said racial slurs were said. The people around him said Judy said racial slurs towards Owen and like I said, my decision at that point was, these guys are about to fight, one of them's got to go home. It was like Judy was the aggressor, saying racial slurs, so I sent him home." | Counterdesignation: 80:23-81:23, 83:11-16, 87:4-81:16, 87:21-87:24.  Omits question and first part of deponent's answer and all related testimony.  Rule of completeness.  Fed. R. Evid. |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       |                    | 106; Fed. R. Civ. P. 32(a). |
|   |       |                    | 23 Q. I just wanted to clarify something you |
|   |       |                    | 24 testified about earlier, with the altercation between |
|   |       |                    | 25 Judy and Owen. |
|   |       |                    | 1 I wasn't totally clear. Were you present for |
|   |       |                    | 2 that altercation? |
|   |       |                    | 3 **A. I was not present for the altercation. I came** |
|   |       |                    | 4 **afterwards, when I was called, to come to the** |
|   |       |                    | 5 **altercation, and I was in a different part of the** |
|   |       |                    | 6 **warehouse. I don't recollect where I was in the** |
|   |       |                    | 7 **warehouse. But like I said, I had so many different** |
|   |       |                    | 8 **positions to fill or oversee --** |
|   |       |                    | 9 Q. Okay. |
|   |       |                    | 10 **A. -- in that** |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | warehouse. When I got the call, I 11 **went there immediately** -- 12 Q. Got it. 13 **A. -- and they were still arguing.** 14 Q. Got it. So did you witness any parts of the 15 altercation? 16 **A. I didn't witness any part of the altercation,** 17 **per se. I just showed up and they were still arguing,** 18 **almost face-to-face, looked like they were about to** 19 **fight, so I got off of my cart and went to them and** 20 **said, You got guys to back away from each other, you** 21 **know, and what happened and I logged --** **I asked Owen** |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | 22 **what happened, I asked Judy what happened and then there** |
| | | | 23 were people around and I asked them what happened. |
| | | | 11 You -- you sent an e-mail about the altercation and that |
| | | | 12 was based on what you were told by other people? |
| | | | 13 **A. Yes.** |
| | | | 14 Q. Okay. So it wasn't based on anything you |
| | | | 15 witnessed, right? |
| | | | 16 A. It wasn't based on anything that I heard. |
| | | | 4 Q. Okay. Just -- do you remember anybody that |
| | | | 5 you spoke with about this Timbreza incident, when the |
| | | | 6 argument was going on? You said the people around there |
| | | | 7 were telling you that this racist comment was made. |
| | | | 8 Do you remember |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | anybody? |
|   |       |                    | 9 **A. I -- I don't remember their names. It's so** |
|   |       |                    | 10 **many people walking around. And people, when they see a** |
|   |       |                    | 11 **fight, they stop.** |
|   |       |                    | 12 Q. Okay. |
|   |       |                    | 13 **A. People want to see. They oversee, they view,** |
|   |       |                    | 14 **so.** |
|   |       |                    | 15 Q. Okay. |
|   |       |                    | 16 **A. I don't remember names and I don't have names.** |
|   |       |                    | 21 Did Mr. Diaz tell you that the racist comments |
|   |       |                    | 22 that Judy Timbreza allegedly made to him were made in |
|   |       |                    | 23 Spanish? |
|   |       |                    | 24 **A. No.** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

**Victor Quintero**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| 1 | 49:23-50:8 | Q: Why were you instructing Ed Romero to get involved in this issue between Ramon Martinez and Owen Diaz? Ms. Antonucci: Objection; lacks foundation, calls for speculation. A: Well, I guess because of the fact that if there was a problem that needed to be solved, he needed to work with him—both of them being shift supervisors or leads, you know, he needed to make sure they were on the same page, as far as what our expectations are. | Counterdesignation:  51:12-52:6.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). 12 Q. You don't recall, other than the references 13 here to your asking Ed Romero to coordinate with Ramon 14 Martinez and Owen Diaz to work out that workplace 15 issue; correct? 16 A. Yeah, I mean, I don't have the -- I don't 17 remember the specifics at the time. But more than 18 likely, Ed may have talked to me about it, because I 19 know he did talk to me about Owen's pattern of 20 collaboration issues with people, you know, negative |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | | 21 behavior. |
| | | | 22 Q. Ed Romero talked to you about that? |
| | | | 23 A. Yes. |
| | | | 24 Q. Okay. |
| | | | 25 A. And so it would have been Ed's job to talk to |
| | | | 1 the -- their supervisors about issues and problems |
| | | | 2 and, you know, setting expectations as far as, you |
| | | | 3 know, getting the job done and things like that. And |
| | | | 4 then if there was still issues, then he would escalate |
| | | | 5 it up to the chain of command, to either Wayne Jackson |
| | | | 6 or myself, or both. |
| 2 | 65:20-66:3 | Q: Is Ramon Martinez still working at the Tesla plant? <br> A: Yes. <br> Q: Where does he work now? <br> A: Same thing, recycling. <br> Q: But now he's got—he's a supervisor now; right? <br> A: Either he was at the time, but for sure he is now. | <u>Counterdesignation:</u>  66:4-66:9. Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       |                    | 4 Q. Is Ramon Martinez a regular Tesla employee 5 now? 6 A. No, he's a nextSource employee. Supervisor. 7 Q. Okay. 8 A. And since then, he has never demonstrated any 9 other offensive behavior to anybody. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

**Wayne Jackson**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | General objection to all designations.  Testimony is improperly designated because deponent was not a party when deposed, but a former employee of a party, and there is no showing that the deponent is unavailable or falls within any exception to Federal Rule of Civil Procedure 32(a)(4). |
| 1 | 26:21-24 | Q: It was an offensive depiction of an African American. Is that correct?<br>A: Yes, sir. | Irrelevant and unduly prejudicial whether or not deponent found depiction offensive; only relevant testimony from deponent is investigation of incident and decision from investigation. Fed. R. Evid. 401-403. |
| 2 | 75:4-13 | Q: And just so we are clear, I think you said before that you thought that Mr. Martinez should be fired over this [Exh 128: racist drawing]; right?<br>A: Yes, sir, I did.<br>Q: And you also found that image of the jigaboo offensive to you; right?<br>A: Yes, sir.<br>Q: And when I say "offensive to you," offensive to you as an African-American; right?<br>A: Yes, sir. | 75:4-75:7.  Irrelevant and unduly prejudicial whether or not deponent found depiction offensive; only relevant testimony from deponent is investigation of incident and decision from investigation. Fed. R. Evid. 401-403.<br><br>Counterdesignation: 89:25-90:1, 90:3-90:5.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>25 MR. ORGAN: Q. Victor did not agree to<br>1 terminate Mr. Martinez;<br><br>right?<br><br><br>3 THE WITNESS: Yeah, I |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | wouldn't say that he did<br><br>4 not agree to terminate,<br><br>but it was more that it<br><br>wasn't<br><br>5 his employee to terminate. |
| 3 | 90:7-12 | Q: But Victor could have said he can't work here anymore, right, being—<br>A: He could have—<br>Q: --from Tesla?<br>A: Yes. He could have made that recommendation, yes. | |
| 4 | 101:4-10 | Q: Did it concern you that after the altercation between Mr. Diaz and Mr. Martinez in the October time period and then come January you've got this jigaboo drawing, did that concern you?<br>Mr. Araneda: Objection.<br>A: Yes, sir.<br>Mr. Araneda: Vague. | Counterdesignation:  101:11-101:8, 101:21-102:21.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>11 MR. ORGAN: Q. And what did you do to act on<br><br>12 that concern that you had?<br><br>13 **A. Like I said, I alerted the various agencies so**<br><br>14 **they could look into it a little further.**<br><br>15 Q. And, in fact, that's why you decided, in your<br><br>16 opinion, that Mr. Martinez had been -- had crossed the<br><br>17 line at least twice such that he needed to be |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | 18 terminated; right? |
| | | | 19 MR. ARANEDA: Objection. It misstates his |
| | | | 20 testimony. |
| | | | 21 THE WITNESS: I wouldn't say he crossed the |
| | | | 22 line twice. Once again, the first incident was more or |
| | | | 23 less unsubstantiated. There were no witnesses or |
| | | | 24 anybody. It was kind of my-word-against-yours type of |
| | | | 25 deal. |
| | | | 1 MR. ORGAN: Right. |
| | | | 2 THE WITNESS: So I couldn't say that. No, I |
| | | | 3 couldn't say that. |
| | | | 4 I did say I feel that the drawing was offensive |
| | | | 5 and was inappropriate for the workplace. |
| | | | 6 MR. ORGAN: Q. Right. |
| | | | 7 Now, did you ask Mr. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | | Diaz if Mr. Martinez had 8 said anything else that was inappropriate during that 9 time period, in January of 2016? **10 A. Yes, I believe so, I did ask him that.** 11 Q. And that would be documented in your notes; 12 right? **13 A. Yes. Most likely, yes.** 14 Q. Do you know what Mr. Diaz said in particular? **15 A. I don't really recall, other than, like I said, 16 he just said he didn't really like him. That was kind 17 of what his main statement was.** 18 Q. Did Mr. Diaz say that Mr. Martinez had done 19 anything else |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | inappropriate?<br><br>20 **A. Other than the**<br><br>**elevator incident when**<br><br>**they got**<br><br>21 **into the verbal**<br><br>**altercation, no.** |
| 5 | 122:5-8 | Q: Well, the final in terms of whether or not Mr. Martinez stayed working at the Tesla factory, that was something that Mr. Quintero could determine; right?<br>A: As far as I know, yes, sir. | <u>Counterdesignation:</u> 120:17-120:20, 120:25-121:8, 121:24-122:4. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>17 And then after you had<br><br>a discussion with<br><br>18 Mr. Quintero where you<br><br>had recommended<br><br>termination of<br><br>19 Mr. Martinez, the two<br><br>of you compromised on a<br><br>suspension<br><br>20 and written warning;<br><br>correct?<br><br>21 MR. ARANEDA:<br><br>Objection. It misstates<br><br>his<br><br>22 testimony.<br><br>23 THE WITNESS: I<br><br>wouldn't say --<br><br>24 MR. ARANEDA: It lacks<br><br>foundation. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | 25 THE WITNESS: I wouldn't say "compromise"<br>1 because, like I said, it wasn't my employee, so I had to<br>2 refer it to Chartwell. They had to make the final<br>3 determination of anything with regards to their<br>4 employment. It wasn't up to me.<br>24 With respect to the discipline the appropriate<br>25 discipline for the jigaboo drawing, you at least recall<br>1 that Mr. Quintero was involved in making the<br>2 recommendation for what that would be; right?<br>3 **A. Yes and no. He can make a recommendation, but**<br>4 **the final say was not his. It was up to Chartwell.** |
| 6 | 141:9-25 | Q: I'm going to ask you about a word that has been—that's come up a few times in this case, and I don't want you to be offended, but I have to use the word. The word is nigger.<br>A: Yes, sir.<br>Q: Did you ever hear anyone use that word at Tesla?<br>A: Yes, sir<br>Q: In what circumstances did you hear that word being said? | Testimony should be excluded because not pertinent to the allegations raised by Plaintiff, did not involve Plaintiff, did not involve Plaintiff's supervisors, did not involve Plaintiff's alleged harassers, as set forth in Defendant's Motion *In Limine* |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-----------------------------------|
| | | A: There had been times where I'd actually walked—been walking through the facility, and there was—one time in particular, there was two Asian or Filipino gentlemen. And one was like, "What's up, my n---a," to the other one. That type of thing. It still was offensive, but you know, it wasn't my employee, so I didn't engage in it. | No. 3, section 4.<br><br>Counterdesignation:  142:1-142:5, 143:5-143:7, 146:6-146:11, 147:5-147:8, 147:10-147:12.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>1 Q. Well, apparently, it wasn't offensive between 2 those people --<br><br>3 **A. Yes.**<br><br>4 Q. -- who were using it, was it?<br><br>5 **A. No, it wasn't.**<br><br>5 MR. HORTON: Q. Did you ever hear the word 6 nigger used at Tesla in an intentionally offensive way?<br><br>7 **A. No, sir, I never did.**<br><br>6 And did you ever communicate to anybody at, 7 like, Tesla human resources or anything like that about 8 the fact that you're hearing --<br><br>9 **A. No, sir.** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | 10 Q. -- A version of the N word? |
|   |       |                    | 11 **A. No, sir, I did not.** |
|   |       |                    | 5 Q. But you said that you had heard the A version |
|   |       |                    | 6 of the N word throughout the factory when you were |
|   |       |                    | 7 walking around. |
|   |       |                    | 8 Is that true? |
|   |       |                    | 10 THE WITNESS: I've heard it on a few occasions. |
|   |       |                    | 11 I just can't say just everywhere, but I have heard it a |
|   |       |                    | 12 few times, yes. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

1

2   **<u>Michael Wheeler</u>**

3

4

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|---------------------------------|
|   |       |                    | General objection to all designations.  Testimony is improperly designated because deponent was not a party when deposed, but a former employee of a party, and there is no showing that the deponent is unavailable or falls within any exception to Federal Rule of Civil Procedure 32(a)(4). |
| 1 | 21:4-7 | Q: What's your best recollection of what Jesus said when he called you the N-word after you told him not to take the pictures?<br>A: Would have been "F-U" and then the n-word. | Testimony should be excluded because not pertinent to the allegations raised by Plaintiff, did not involve Plaintiff, did not involve Plaintiff's supervisors, did not involve Plaintiff's alleged harassers, as set forth in Defendant's Motion *In Limine* No. 3, section 3.<br><br><u>Counterdesignation:</u>  19:14-17, 19:24-20:1, 20:2-20:17.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>14 Q. Who was the person<br>who called you the<br>15 N-word?<br>16 **A. This was Jesus. I cannot remember his last 17 name.**<br><br>24 Q. Okay. So was Jesus<br>a Chartwell employee or<br>25 was he an employee of Tesla? |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
|   |       |                    | 1 **A. He was either Chartwell or Flagship.** |
|   |       |                    | 2 Q. Okay. Tell me about this incident where |
|   |       |                    | 3 Jesus called you the N-word. |
|   |       |                    | 4 **A. I was -- it was pretty cut-and-dry. I went** |
|   |       |                    | 5 **to speak with him about what had happened, to let** |
|   |       |                    | 6 **him know that it was inappropriate to take pictures** |
|   |       |                    | 7 **of other associates, but it was also inappropriate** |
|   |       |                    | 8 **to take pictures of associates while they're** |
|   |       |                    | 9 **off-duty.** |
|   |       |                    | 10 **He tried to justify his actions by saying,** |
|   |       |                    | 11 **"Well, he was sleeping. He's not allowed to sleep."** |
|   |       |                    | 12 **I reminded him that he was not in any** |
|   |       |                    | 13 **position of authority** |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | | and he needed to delete the 14 **picture.** 15 **And then he turns around, says, you know --** 16 **I'm sorry. Anyway, calls me the N-word and walks** 17 **off.** |
| 2 | 25:2-9 | Q: Okay. So you informed Ramon Martinez that you had been called the n-word. And as far as you know, nothing negative happened to Jesus after that, correct? A: As far as I know. Q: In fact, what you know is that Jesus received a promotion after that; is that correct? A: Very closely after that, yes. | Testimony should be excluded because not pertinent to the allegations raised by Plaintiff, did not involve Plaintiff, did not involve Plaintiff's supervisors, did not involve Plaintiff's alleged harassers, as set forth in Defendant's Motion *In Limine* No. 3, section 3.  Testimony should also be excluded as inadmissible hearsay that does not fall within any exception since deponent only relying on what he was told by an unidentified person.  Fed. R. Evid. 801-803. Counterdesignation:  25:22-26:3.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). 22 Q. Do you know whether Jesus' title was 23 supervisor, or was it lead, or was it -- do you 24 know? 25 **A. I was told supervisor. Definitely not** |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | 1 **lead.** |
| | | | 2 Q. Okay. |
| | | | 3 **A. Now, did I see it on paper? I did not.** |
| 3 | 35:4-10 | Q: I see. Okay.<br>But it sounded like you did hear the n-word used at other times in the factory—<br>A: Yeah.<br>Q: --is that correct?<br>A: During breaks or outside when they're smoking or in passing, coming into the factory. | Testimony should be excluded because not pertinent to the allegations raised by Plaintiff, did not involve Plaintiff, did not involve Plaintiff's supervisors, did not involve Plaintiff's alleged harassers, as set forth in Defendant's Motion *In Limine* No. 3, section 3.<br><br>Counterdesignation:  34:6-34:9, 35:11-13.  Rule of completeness.  Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>6 Q. Did you ever hear the N-word used anywhere<br>7 else on the factory?<br>8 **A. Not -- not outside of friendly context. So**<br>9 **g-a instead of e-r, but never really aggressively.**<br>11 Q. And do you remember who the people were who<br>12 you heard using the N-word?<br>13 **A. Everybody. Blacks, whites, Mexican.** |
| 4 | 36:8-22 | Q: And in terms of what Josue said to you about what he would about the fact that you had been called the N-word, tell me, again, what did he say he would do?<br>A: That would have been in an email.<br>Q: An email?<br>A: Yeah.<br>Q: So you complained to Josue in an email? | Testimony should be excluded because not pertinent to the allegations raised by Plaintiff, did not involve Plaintiff, did not involve Plaintiff's alleged harassers, as set forth in |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | A: Yes. If you could—I don't know if we—if we could get to the phone, if we could get to a supervisor phone—if you could get into my [Tesla] email, so much more could be taken care of.<br>Q: I see.<br>A: But right after I was terminated, they had me turn in my phone. | Defendant's Motion *In Limine* No. 3, section 3.  Inclusion of bracketed text that is not part of the original designation should not be permitted as improper and irrelevant.  Fed. R. Evid. 401, 402. |
| 5 | 74:12-16 | Q: Now, in addition to you, Owen also had other supervisors; is that correct?<br>A: It would have been Ramon.<br>Q: Ramon Martinez?<br>A: And Israel, the swing shift. | Deponent was not employed by Tesla but by Chartwell and was never hired Tesla (15:2-15:5, 15:21-15:22) and does not possess knowledge about who would supervise Plaintiff and Plaintiff never identified Michael Wheeler as a supervisor.  Deponent also testified that Plaintiff was an elevator operator and deponent was a supervisor in Recycling, as was Ramon Martinez and deponent then testified (40:23-41:3) "I wouldn't say the operators were recycling" and thus neither Ramon Martinez nor Israel were Plaintiff's supervisors.  Fed. R. Evid. 602. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

**Erin Marconi**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | General objection to all designations.  Testimony is improperly designated because deponent was not a party when deposed, but a former employee of a party, and there is no showing that the deponent is unavailable or falls within any except ion to Federal Rule of Civil Procedure 32(a)(4). |
| 1 | 35:2-7 | Q: So with that understanding of the definition of the n-word [n-i-g-g-e-r or n-i-g-ga], is it your understanding that Tesla's anti-harassment and anti-discrimination zero-tolerance policies prohibit use of the n-word at the Tesla facility? A: Yes. | |
| 2 | 36:5-13 | Q: Okay. And if you had knows about someone using the n-word at the Tesla factory, that would certainly be something that you would investigate; correct? A: Absolutely. Q: And the reason that you would investigate that is use of the n-word at the Tesla factory could create a hostile work environment for other workers; right? A: Correct. | Counterdesignation:  49:7-49:14.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). <br><br> 7 **Q In fact, every -- every employer has a duty to** <br><br> 8 **make sure that its workers are working in an environment** <br><br> 9 **that is harassment-free; right?** <br><br> 10 A Correct. <br><br> 11 **Q And that would include harassment based on sex** |

118

Case No. 3:17-cv-06748-WHO

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| | | | `12` **`or race or any of`** **`those other prohibited`** **`categories;`** `13` **`right?`** `14 A Yes.` |
| 3 | 52:3-6 | Q: And under Tesla policies, supervisors are supposed to report issues relating to harassment to their managers and to HR? A: Yes. | |
| 4 | 54:22-55:4 | Q: Sure. Let's say that a contract employee is working somewhere in the Tesla factory and they complain to a Tesla supervisor about harassment towards them by someone else working at the plant. What role—first of all, would the supervisor—the Tesla supervisor is supposed to report that to Tesla HR; correct? A: Correct. | |
| 5 | 59:22-60:2 | Q: In terms of Tesla's duty … it has a duty to both its regular employees and the contractors to make sure that all of those people work in a work environment free from harassment or discrimination based on race; right? A: Correct | <u>Counterdesignation</u>: 59:1-59:21. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a). `1 A -- if West Valley` `investigated it and came` `2 back and said there` `wasn't actually an issue,` `I'm going` `3 to believe that West` `Valley did their` `investigation` `4 thoroughly and if there` `was something to address,` `5 addressed it.` `6 Does that make sense?` `7` **`Q Sure.`** `8` **`You -- you typically`** |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | **rely on the contract --** |
|   |       |                    | 9 **contracting agency to** |
|   |       |                    | **do an investigation into** |
|   |       |                    | 10 **complaints by their** |
|   |       |                    | **employees; is that right?** |
|   |       |                    | 11 A If it is involving |
|   |       |                    | other of their employees. |
|   |       |                    | 12 If it is involving |
|   |       |                    | Tesla employees, then I |
|   |       |                    | 13 would talk to probably |
|   |       |                    | Tesla employees, they |
|   |       |                    | would talk |
|   |       |                    | 14 to their employees. |
|   |       |                    | 15 If the stars align and |
|   |       |                    | everyone was in the |
|   |       |                    | 16 building or in the |
|   |       |                    | same side of the country |
|   |       |                    | and we would |
|   |       |                    | 17 help -- sometimes I |
|   |       |                    | had been there when they |
|   |       |                    | were |
|   |       |                    | 18 interviewing their |
|   |       |                    | employee and vice versa. |
|   |       |                    | But I |
|   |       |                    | 19 wouldn't -- my |
|   |       |                    | preference would not be |
|   |       |                    | to interview |
|   |       |                    | 20 someone else's |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | employee, and especially not without them 21 present. |
| 6 | 100:11-20 | Q: So if you had understood that Mr. Martinez had admitted to putting this drawing up, and also to have threatened Mr. Diaz previously, you would expect that Mr. Martinez would be fired pursuant to Tesla policy, wouldn't you? A: Assuming that all of that is true— Q: Yeah. A: …I wouldn't presume what next Source does, but I would ask them not to have him return to an assignment at Tesla. | Testimony not based on personal knowledge because deponent testified she did not recall seeing the email or the drawing by Ramon Martinez (85:21-86:7) and during this time deponent was caring for her mother who was undergoing cancer treatment stating "not only is [the] Tesla part a blur, but the time frame is a blur" (91:18-92:3).  Fed. R .Evid. 602.  Testimony is speculative and impermissible lay opinion testimony not "rationally based on the witness's perception" and deponent not disclosed as an expert.  Fed. R. Evid. 701. |
| 7 | 116:22-25 | Q: And the correct response to threatening conduct is to remove that individual from the factory; right? A: Correct. | Testimony not based on personal knowledge because email exhibit deponent is shown was not sent to her at the time but after investigation and decision were completed, and thus deponent's testimony about action taken after investigation is impermissible lay opinion testimony not "rationally based on the witness's perception" and deponent not disclosed as an expert.  Fed. R. Evid. 602, 701. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

**Annalisa Heisen**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
| 1 | 72:5-12 | Q: Now, as to this policy, the antiharassment and discrimination policy, this policy would apply to all workers at the Tesla factory; correct?<br>Ms. Jeng: Objection; vague and ambiguous and calls for speculation.<br>A: There's an expectation that employees at Tesla as well as contractors and other people on-site are in compliance with the policy. | Counterdesignation:  74:24-75:9, 75:11-75:23, 169:7-169:18.  Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).<br><br>24 Q. And as to contract employees, are contract<br>25 employees also trained on Tesla's antiharassment and<br>1 discrimination policy?<br>2 **A. My understanding is that the agencies who**<br>3 **employ the contractors are doing training on policies**<br>4 **and compliance. I don't have visibility into their**<br>5 **processes.**<br>6 Q. So your understanding is that the contracting<br>7 agencies are supposed to train their employees who<br>8 were working at the Tesla factory, on Tesla's<br>9 antiharassment and |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | discrimination policy; correct? |
| | | | 11 THE WITNESS: So, there's an expectation that 12 they're being trained by their staffing agencies on 13 antiharassment and discrimination, but this -- not 14 this policy specifically; I'm not sure what they're 15 doing. I couldn't confirm if they're training this 16 policy, since they're employees. 17 MR ORGAN: Q. What steps does Tesla take to 18 ensure that contractors who come into and work in the 19 Tesla factory in Fremont have training relative to the 20 topic of |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | antiharassment and discrimination? |
| | | | 21 **A. We have an expectation that agencies are** |
| | | | 22 **training on antiharassment and discrimination.** |
| | | | 23 Q. And what is that expectation based on? |
| | | | 24 **A. That they're legally compliant.** |
| | | | 7 Q. When you previously testified that you did |
| | | | 8 not know whether the employee policies against |
| | | | 9 discrimination and harassment, quote, "applied |
| | | | 10 equally," unquote, to contract workers and employees, |
| | | | 11 what did you mean by that? |
| | | | 12 **A. The standards that are outlined for** |
| | | | 13 **expectations of employee behavior and** |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | conduct do apply 14 equally. But there's also verbiage in this policy 15 regarding disciplinary action, up to and including 16 termination, and that would be different for 17 contractors. If it's an agency, we don't have that relationship 18 with other staff. The agency does. |
| 2 | 79:7-15 | Q: So if a Tesla employee gets information about harassing conduct based on race in the factory, that's occurring in the factory, regardless of how they get that information, they then have a reporting duty, in terms of either providing that information to higher-level manager or sending it to HR; is that true? A: There's an expectation of that, as it's articulated in the policy. | Counterdesignation: 35:11-35:17, 35:23-36:8. Rule of completeness. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a).  11 "QUESTION: Well, I'm actually going on your 12 understanding of the policy. So based on your 13 understanding of Tesla's policies and procedures, do 14 employees who receive information or observe, 15 themselves, harassing |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | conduct based on race in the |
| | | | 16 workplace, have an obligation to report that conduct |
| | | | 17 to a higher level?") |
| | | | 23 THE WITNESS: I'm not sure if that is |
| | | | 24 particularly articulated in the policy. I think it |
| | | | 25 depends on the circumstances as to who would be 1 involved in that concern for the employees. It would |
| | | | 2 vary depending on who the employee was. 3 MR ORGAN: Q. Let's say that a lead, |
| | | | 4 production lead at the Tesla factory, either observed |
| | | | 5 or received information about harassing conduct based |
| | | | 6 on race. Would that lead have an obligation to report |
| | | | 7 that information to |

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|-------------------|-------------------------------|
| | | | someone above their level?<br><br>**8 A. There is an expectation that they would.** |
| 3 | 112:8-18 | Q: What does Tesla do to make sure that its contractor organizations do a thorough and effective investigation?<br>A: In general, when these complaints come to Tesla's attention—these complaints being harassment and discrimination complaints—if they involve contractors, we expect that the Tesla HR person is in communication with the agency. So even if they're not the ones conducting the investigation, they're making sure that the issue is resolved by collaborating the agency. | 82:21-82:25, 83:3-83:21, 83:24-83:25.<br><br>21 Q. So in terms of ensuring that workers at the<br><br>22 Tesla factory are not subject to harassment based on<br><br>23 race, how does Tesla's HR department ensure that that<br><br>24 is the case, if they are delegating investigation<br><br>25 processes to non-Tesla employees?<br><br>3 THE WITNESS: There's still an expectation<br><br>4 that these types of concerns that are brought forward<br><br>5 will be investigated, but it depends case by case as<br><br>6 to how that's |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | approached. |
|   |       |                    | 7 MR ORGAN: Q. There must be at least some |
|   |       |                    | 8 oversight, though, by Tesla human resources, relative |
|   |       |                    | 9 to investigations conducted by contractors; right? |
|   |       |                    | 10 **A. And again, depends on the case.** |
|   |       |                    | 11 Q. In terms of Tesla's efforts to ensure that it |
|   |       |                    | 12 has a workplace free from harassment based on race, |
|   |       |                    | 13 are there any kind of procedures that Tesla has |
|   |       |                    | 14 adopted for coordinating investigations into |
|   |       |                    | 15 allegations of harassment based on race? |
|   |       |                    | 16 **A. It depends on the case. It varies widely.** |
|   |       |                    | 17 **There's not one fixed method that we address that** |

Case No. 3:17-cv-06748-WHO

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|-------------------------------|
|   |       |                    | 18 with. |
|   |       |                    | 19 Q. There are no written procedures that Tesla |
|   |       |                    | 20 has for coordinating investigations of allegations of |
|   |       |                    | 21 harassment based on race? |
|   |       |                    |  |
|   |       |                    | 24 THE WITNESS: Not that outline step by step |
|   |       |                    | 25 for each of these cases. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

**Titus McCaleb**

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | General objection to all designations.  Testimony is improperly designated because deponent was a third party when deposed, and there is no showing that the deponent is unavailable or falls within any exception to Federal Rule of Civil Procedure 32(a)(4). |
| 1 | 63:25-64:12 | Q: Okay? So what racially charged words did you hear while working at Tesla? A: The N-word with g-g-e-r, which I guess I have to say for the record it's "nigger" and I've heard the N-word with the g-g-a, which is "nigga," and other terms used for other ethnicities that –yeah, I guess I have to say them now because we're all here. | Testimony should be excluded because not pertinent to the allegations raised by Plaintiff, did not involve Plaintiff, did not involve Plaintiff's supervisors, did not involve Plaintiff's alleged harassers and conduct allegedly occurred after Plaintiff no longer worked at Tesla, as set forth in Defendant's Motion *In Limine* No. 1, section 3.  Inclusion of bracketed text that is not part of the original designation should not be permitted as improper and irrelevant.  Fed. R. Evid. 401, 402.<br><br>Counterdesignation: 91:19-91:22, 93:11-17<br><br>19      Q.    Let me go back and re-ask the question. 20           You testified that Khoi Nguyen called you |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|-------|--------------------|--------------------------------|
| | | | 21    n-i-g-g-e-r once; correct? **22   A.   Correct.** 11      Q.   So Khoi Nguyen said, "Oh, so Giddeon was 12    calling you n-i-g-g-e-r"?  Is that how Khoi Nguyen 13   referred to you as an n-i-g-g-e-r? **14      A.   He said to me, "Oh, he called you" - - once** **15   again, I apologize. "Oh, he called you a nigger?"** **16      And I told him, as I just said, "Unacceptable** **17  on both accounts."** |
| 2 | 70:3-6 | Q: Who said the words that you listed? A: A few of my production associates on lines that I participated on, as well as seeing them scribbled into stalls and on top of fliers | Testimony should be excluded because not pertinent to the allegations raised by Plaintiff, did not involve Plaintiff, did not involve Plaintiff's supervisors, did not involve Plaintiff's alleged harassers and conduct allegedly occurred after Plaintiff no longer worked at Tesla, as set forth in Defendant's Motion *In Limine* No. 1, section 3. |

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counterdesignation |
|---|---|---|---|
| | | | |

Case No. 3:17-cv-06748-WHO
PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY

1
2
3                                              CALIFORNIA CIVIL RIGHTS LAW GROUP
4                                              ALEXANDER KRAKOW + GLICK LLP
5    DATED:  April 27, 2020          By:    /s/ Lawrence A Organ_____
6                                              Lawrence A. Organ, Esq.
                                               Navruz Avloni, Esq.
7                                              Cimone A. Nunley, Esq.
                                               J. Bernard Alexander, Esq.
8                                              Attorneys for Plaintiffs
                                               DEMETRIC DI-AZ AND OWEN DIAZ
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' DESIGNATION OF DEPOSITION TESTIMONY