1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   TRACEY A. KENNEDY, Cal. Bar No. 150782
3  NAMAL TANTULA, Cal. Bar No. 247373
   BRETT YOUNG, Cal. Bar No. 305657
4  333 South Hope Street, 43rd Floor
   Los Angeles, California  90071-1422
5  Telephone:      213.620.1780
   Facsimile:      213.620.1398
6  Email:      tkennedy@sheppardmullin.com
               ntantula@sheppardmullin.com
7              byoung@sheppardmullin.com

8  PATRICIA M. JENG, Cal. Bar No. 272262
   SUSAN HAINES, Cal. Bar No. 224611
9  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
10 Telephone:      415.434.9100
   Facsimile:      415.434.3947
11 Email:      pjeng@sheppardmullin.com
               shaines@sheppardmullin.com
12
   Attorneys for Defendant,
13 TESLA, INC. dba TESLA MOTORS, INC.

14

15              **UNITED STATES DISTRICT COURT**

16              **NORTHERN DISTRICT OF CALIFORNIA**

17              **SAN FRANCISCO DIVISION**

18 DEMETRIC DI-AZ, OWEN DIAZ, AND         Case No. 3:17-cv-06748-WHO
   LAMAR PATTERSON,
19                                         **DEFENDANT TESLA, INC.'S**
              Plaintiffs,                   **OPPOSITIONS TO PLAINTIFF OWEN**
20                                         **DIAZ'S MOTIONS *IN LIMINE***
        v.
21
   TESLA, INC. DBA TESLA MOTORS, INC.;    Date:      May 11, 2020
22 CITISTAFF SOLUTIONS, INC.; WEST        Time:      10:00 a.m.
   VALLEY STAFFING GROUP;                 Courtroom: 2, 17th Floor
23 CHARTWELL STAFFING SERVICES,           Judge:     Hon. William H. Orrick
   INC.; and DOES 1-50, inclusive,
24                                         Trial Date;      June 8, 2020
              Defendants.                  Complaint Filed:  October 16, 2017
25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION.................................................................................................. 1

II.  MOTIONS *IN LIMINE*....................................................................................... 1

    A.   Opposition to Plaintiff's Motion *in Limine* No. 1 – Testimony That Racial
Slurs Were Not Offensive Is Admissible. ................................................ 1

        1.   Because Plaintiff's Section 1981 Requires Him To Prove That The
Alleged Conduct Was "Objectively Offensive To A Reasonable
Person In The Protected Class," The Offensiveness Of The N-Word
Is Relevant. ....................................................................................... 1

        2.   Because Any Testimony From Witnesses Who Heard The Use Of
The N-Word With Their Own Ears And Determined It Was Not
Offensive Is An Opinion, The Testimony At Issue Is Proper Lay
Opinion Testimony............................................................................. 3

        3.   The Probative Value Of The Proposed Testimony Is Not
Outweighed By The Unduly Consumption Of Time Or Misleading
the Jury. ............................................................................................. 3

        4.   Plaintiff's Motion *in Limine* Belies Reality. ................................... 4

    B.   Motion *In Limine* No. 2 – To Exclude the Testimony of Witnesses Ramon
Martinez, Judy Timbreza, Josue Torres, and Samuel Zehner. ................. 5

        1.   Ramon Martinez's Testimony Regarding the Allegations Against
Him Must Be Considered By the Jury................................................ 5

        2.   Plaintiff Distorts the Court's October 3 Discovery Order Granting
Plaintiff Leave to Depose Mr. Martinez............................................ 6

            a.   Plaintiff had ample opportunity to depose Mr. Martinez and
failed to do so. ....................................................................... 6

            b.   Any "harm" suffered by Plaintiff is a result of his own
gamesmanship and lack of diligence. .................................... 7

        3.   Plaintiff's Reliance On its Motion for Sanctions, Based on the
October 3 Order, To Exclude Martinez's Testimony Is Similarly
Misleading. ........................................................................................ 9

    C.   Motion *In Limine* No. 3 – To Exclude the Handwritten Statement By
Ramon Martinez. .................................................................................... 10

        1.   Martinez's Written Investigation Statement is Admissible and Not
Hearsay Under FRE 801(d)(1)(B)................................................... 11

        2.   Even if Martinez's Statement Are Hearsay, They Fall Under
Hearsay Exceptions. ........................................................................ 11

D.  Motion *In Limine* No. 5 – To Exclude Testimony or Evidence Concerning Owen Diaz's Work Performance........................................................................ 12

   1.  Plaintiff's Section 1981 Claims Require Proof of Plaintiff's Work Environment and Work Performance......................................................... 13

   2.  All Evidence of Plaintiff's Work Environment and Work Performance Is Relevant............................................................................. 14

   3.  Evidence of Plaintiff's Work Environment and Work Performance Is Also Relevant to Plaintiff's Credibility and Bias.................................. 14

E.  Motion *In Limine* No. 4 – To Exclude Testimony or Evidence Concerning Workplace Relationship Between Plaintiff Owen Diaz and Rothaj Foster. .......... 17

   1.  Plaintiff's Efforts to Discipline a Co-Worker and Have Him Removed from the Workplace Are Relevant to Plaintiff's Section 1981 Claims. ............................................................................. 17

   2.  Evidence of Plaintiff's Work Environment, Including Reporting and Disciplining His Co-Worker Are Relevant to Plaintiff's Credibility.......... 18

F.  Opposition to Motion *In Limine* No. 6 – To Exclude Testimony or Evidence Concerning Demetric Di-az's Criminal History.................................................... 19

   1.  Evidence of Demetric's Criminal Charges Is Admissible Because It Is Directly And Because Plaintiff Put Them At Issue As To His Alleged Emotional Distress ...................................................... 20

   2.  Demetric's Past Convictions Is Admissible Under Rule of Evidence 609 ............................................................................. 22

   3.  Rules of Evidence 404 And 608 Do Not Apply To Demetric's Criminal Charges And Convictions .......................................... 23

   4.  The Probative Value of Demetric's Criminal Charges And Convictions Outweighs Their Prejudicial Effect ...................................... 23

III.  CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Beasley v. U.S.*
    218 F.2d 366 (D.C. Cir. 1954) .................................................................. 22

*Brodit v. Cambra*
    350 F.3d 985 (9th Cir. 2003) ..................................................................... 1

*Clark County Sch. Dist. v. Breeden*
    532 U.S. 268, *reh'g denied,* 533 U.S. 912 (2001) .............................. 13, 17

*Clark v. City of Los Angeles*
    650 F.2d 1033 (9th Cir. 1981) ................................................................. 11

*Datamatic Servs., Inc. v. United States*
    909 F.2d 1029 (7th Cir. 1990) ................................................................. 11

*Ellison v. Brady*
    924 F.2d 872 (9th Cir. 1991) ..................................................................... 2

*Faragher v. City of Boca Raton*
    524 U.S. 775 (1998) .................................................................................. 2

*Galdamez v. Potter*
    415 F.3d 1015 (9th Cir. 2005) ............................................................ 13, 17

*Luce v. United States*
    469 U.S. 38 (1984) .................................................................................... 1

*Manatt v. Bank of Am., NA*
    339 F.3d 792 (9th Cir. 2003) ..................................................................... 2

*Maryland Cas. Co. v. Knight*
    96 F.3d 1284 (9th Cir. 1996) ................................................................... 20

*Morris v. Long*
    2012 U.S. Dist. LEXIS 112368 (E.D. Cal. Aug. 8, 2012) ....................... 20

*Plyler v. Whirlpool Corp.*
    751 F.3d 509 (7th Cir. 2014) ................................................................... 20

*Sprint/United Management Co. v. Mendelsohn*
    552 U.S. 379 (2008) .................................................................................. 2

*U.S. v. Hankey*
    203 F.3d 1160 (9th Cir. 2000) ................................................................. 15

SMRH:4833-0883-2698.3

*U.S. v. Lopez*
    762 F.3d 852 (9th Cir. 2014) ............................................................................. 3

*United States v. Aims Back*
    588 F.2d 1283 (9th Cir. 1979) ......................................................................... 23

*United States v. Sangrey*
    586 F.2d 1312 (9th Cir. 1978) ....................................................................23, 24

*United States v. Sigal*
    572 F.2d 1320 (9th Cir. 1978) ....................................................................23, 24

## FEDERAL STATUTES & RULES

42 U.S.C. § 1981................................................................................ *passim*

Federal Rules of Evidence
    Rule 37 .............................................................................................. 9
    Rule 401 ......................................................................................... 1, 20
    Rule 402 ......................................................................................... 1, 20
    Rule 403 ............................................................................3, 22, 23, 24
    Rule 404 ........................................................................................19, 23
    Rule 404(b) ....................................................................................... 23
    Rule 404(b)(1) ................................................................................... 23
    Rule 607 ........................................................................................... 15
    Rule 608 ........................................................................................19, 23
    Rule 608(b) ....................................................................................... 23
    Rule 609 ........................................................................................19, 22
    Rule 609(a) ....................................................................................22, 23
    Rule 701 ............................................................................................. 3
    Rule 801(d)(1)(B) .............................................................................. 11
    Rule 803(3) ....................................................................................... 12
    Rule 803(6) ....................................................................................... 11

## OTHER AUTHORITIES

California Civil Jury Instruction
    Instruction 2524 ................................................................................ 14

SMRH:4833-0883-2698.3     DEFENDANT'S OPPOSITIONS TO PLAINTIFF'S MOTIONS *IN LIMINE*

1    **I.    INTRODUCTION**

2        Defendant Tesla, Inc. ("Tesla") requests that the Court deny Plaintiff Owen Diaz's

3    ("Plaintiff" or "Owen") Motions *In Limine* in their entirety.

4    **II.    MOTIONS *IN LIMINE***

5        A party may use a motion *in limine* to exclude inadmissible or prejudicial evidence before

6    it is  introduced at trial.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  A motion *in limine*

7    allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial

8    evidence being presented in front of the jury, which generally cannot be subsequently remedied.

9    *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).  Here, all of Plaintiff's Motions *In*

10   *Limine* should be denied.

11          **A.    Opposition to Plaintiff's Motion *in Limine* No. 1 – Testimony That Racial**
                    **Slurs Were Not Offensive Is Admissible.**

12

13       Plaintiff seeks to exclude all testimony, regardless of context or use, that the use of the N-

14   word is not offensive.  Plaintiff, however, cites to witness testimony stating the exact opposite - that

15   use of the N-word is not offensive.  Despite that, he contends that the use of the N-word is

16   automatically offensive, and that no individual, regardless of their race, can excuse the use of the N-

17   word in the workplace.  This belies reality and is simply wrong.

18          **1.    Because Plaintiff's Section 1981 Requires Him To Prove That The**
                    **Alleged Conduct Was "Objectively Offensive To A Reasonable Person**
19                  **In The Protected Class," The Offensiveness Of The N-Word Is**
                    **Relevant.**
20

21       Testimony regarding the offensiveness of the N-word is at the heart of this matter, and is

22   relevant.  Only relevant evidence is admissible.[1]  Fed. R. Evid. 401, 402.  Relevant evidence is

23   defined as evidence that "has any tendency to make an act more or less probable than it would be

24   without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid.

25

26   ---
     [1] Tesla filed Motion *In Limine* Nos. 1 and 3 to exclude putative "me too" witnesses from testifying
     as to their alleged experiences with the n-word and Motion *In Limine* No. 2 to preclude testimony
27   about purported documentary evidence of the use of the n-word.  Tesla's position on precluding
     all such testimony has not changed, but for purposes of Tesla's Opposition here, Tesla is
28   assuming *arguendo* that such "me too" testimony was permitted, and if so, then Tesla also seeks
     admission of testimony about the lack of offensiveness of the n-word.

401.  Whether evidence of harassment by other supervisors is relevant and admissible in an

individual case is ''fact based and depends on many factors, including how closely related the

evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Management

Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).  Under a Section 1981 claim, Plaintiff must show

that the environment is both ***objectively offensive to a reasonable person in the protected class***

and subjectively offensive to the plaintiff.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787

(1998); see *Ellison v. Brady*, 924 F.2d 872, 878-79 (9th Cir. 1991) (analyzing sex harassment from

the perspective of a reasonable woman).  "Simple teasing" and "offhand comments" may not be

sufficient even where the conduct is "offensive and inappropriate." *Manatt v. Bank of Am., NA*,

339 F.3d 792, 798 (9th Cir. 2003).  Here, multiple witnesses, including witnesses Plaintiff intends

to call, Michael Wheeler and Wayne Jackson, both African American, testified that the N-word

was used in a non-offensive manner, including to acknowledge a friend.  *See* Dkt. No. 187

(Plaintiff's Motions In Limine), 7:3-8:1.  Michael Wheeler even testified that the N-word was

used in a "friendly" manner.  *Id.*  Such testimony is directly relevant to whether "the use" of the

N-word was "objectively offensive to a reasonable person in the protected class" – namely African

American men[2] at Tesla.  Indeed, Plaintiff cannot at the same time introduce evidence of the use

of the N-word, claiming that such evidence demonstrates harassment at Tesla, but prevent

testimony of the offensiveness, or lack thereof, as such evidence is a factor required to prove

harassment under Section 1981.  More importantly, the real reason Plaintiff seeks to exclude such

testimony is because it undercuts a key element of his Section 1981 claim, by witnesses he intends

to call at trial.  In other words, if reasonable persons (such as African Americans Michael Wheeler

and Wayne Jackson) did not find the use of the N-word (including by other African Americans)

offensive, and even stated that it was "friendly," then there was no harassment.  Plaintiff cannot

just seek to exclude facts that are bad for his case.  Thus, the offensiveness of the N-word is

relevant and admissible, and is an element of his burden of proof.

---

[2] *See* Dkt. No. 193, 33:18-34:8 (Ninth Cir. Model Jury Instr. 10.5) a "reasonable African American" man standard.

**2.**     **Because Any Testimony From Witnesses Who Heard The Use Of The N-Word With Their Own Ears And Determined It Was Not Offensive Is An Opinion, The Testimony At Issue Is Proper Lay Opinion Testimony.**

Under Rule 701, a lay witness may only offer opinion testimony if the opinion is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony of the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.  The first prong, often referred to as the "personal knowledge requirement," can be "met if the witness can demonstrate firsthand knowledge or observation." *U.S. v. Lopez*, 762 F.3d 852, 864 (9th Cir. 2014).  Here, Plaintiff claims that what Tamotsu Kawasaki, Michael Wheeler, and Wayne Jackson heard was not something they observed, and that their testimony regarding the offensiveness of the N-word was "speculative."  Dkt. No. 187 (Plaintiff's Motions in Limine), 9:21-10:14.  Clearly, what these witnesses heard and the context of what they heard was based on personal observation.  It is not alleged to be gossip, hearsay, or information "heard through the grapevine," so it is was based on first-hand knowledge.  Moreover, whether these witnesses thought the use of the N-word was offensive, is not speculative – it was their opinion, which is exactly the type of testimony that Rule 701 provides.  Thus, the testimony is admissible.

**3.**     **The Probative Value Of The Proposed Testimony Is Not Outweighed By The Unduly Consumption Of Time Or Misleading the Jury.**

Relevant evidence may be excluded where its probative value is substantially outweighed by the risk of undue consumption of time or misleading the jury.  Fed. R. Evid. 403.  Here, Plaintiff argues that introducing "me too" witnesses' opinions of the offensiveness of the N-word would mislead the jury.  First, Section 1981 requires Plaintiff to show, by a preponderance of the evidence, that the alleged conduct was offensive, so such testimony is required to prove Plaintiff's claim.  Second, Plaintiff attempts to introduce the general usage of the N-word throughout the facility through "me too" witnesses to show Tesla generally approved of harassment, but then argues that Tesla should be precluded from introducing contrary evidence because it would "mislead" the jury.  Plaintiff cannot have it both ways.  Either the parties are allowed to examine the use of the N-word and its context, or

1   not.  Plaintiff cannot cherry-pick what parts of the story he wants admitted.  Further, Plaintiff argues

2   that the proposed testimony would cause "mini-trials," but he would be forced to show that other

3   African-Americans thought it was offensive.  That is simply not correct.  Section 1981 explicitly

4   requires such a showing, and realistically asking one question as to whether it was offensive or

5   heard in an offensive context is not going to be a "mini-trial" – it is one question.[3]  Thus, the

6   probative value of the proposed testimony is not outweighed by the risk of undue consumption of

7   time or misleading the jury and is admissible.

## 4. Plaintiff's Motion *in Limine* Belies Reality.

9        Plaintiff cites to numerous witnesses who stated – under oath – that the use of the N-word

10  was not offensive.  Dkt. No. 187 (Plaintiff's Motions In Limine), 7:3-8:1.  In fact, Michael

11  Wheeler, testified that the N-word was used in a "friendly" manner.  *Id.*  This demonstrates the

12  highly complicated and contextual nature of the N-word, how the meaning changes in context, and

13  how it has been re-appropriated in certain ways.  There is not one meaning for the word and the

14  "N-word" cannot be analyzed in a vacuum.  A classic example is the use of the N-word in rap

15  music – to some it is offensive and to others it is lauded.  Plaintiff, however, wants the Court to

16  ignore this reality and have the Court impose its own view – and Plaintiff's own view – onto these

17  witnesses' testimony.  This contravenes the purpose of such " me too" testimony, if it is admitted,

18  which is to get to the truth as seen through with witnesses' eyes and the actual work environment

19  in question.  Such manipulation of reality should be barred.  Testimony related to the

20  offensiveness (i.e., context) of the N-word is vital to Plaintiff's claims and is admissible.  For

21  these reasons, Plaintiff's Motions *In Limine* No. 1 should be denied.

22  / / /

23  / / /

24  / / /

25

26  ---
[3] To be clear, and as discussed in Tesla's Motions *in Limine*, the admission of testimony by any of
27  the proposed "me too" witnesses would require Tesla to refute specific allegations in numerous "mini-trials."  However, should the "me too" witnesses' testimony be admitted, Tesla must be
28  permitted to seek lay opinions from those witnesses about the context in which they heard any N-word – including whether it was offensive.

**B.    Motion *In Limine* No. 2 – To Exclude the Testimony of Witnesses Ramon Martinez, Judy Timbreza, Josue Torres, and Samuel Zehner.**

Plaintiff's motion to exclude Mr. Martinez should be denied because: 1) it would be reversible error to exclude the testimony of the "primary" alleged harasser, whom Plaintiff and his counsel have been aware of since before the lawsuit was filed; 2) Plaintiff distorts the Court's October 3 Order, which demonstrates he had plenty of opportunity to depose Mr. Martinez yet declined to do so; and 3) Plaintiff's Motion for Sanctions, based on the October 3 Order, is similarly misplaced.[4]

**1.    Ramon Martinez's Testimony Regarding the Allegations Against Him Must Be Considered By the Jury.**

Given that Martinez was (as Plaintiff notes) one of the alleged "primary harassers," excluding the testimony of Martinez would be reversible error.  Plaintiff alleges that Martinez drew a cartoon that Plaintiff said  was offensive and racially motivated, that Martinez subjected him to racial slurs multiple times, and that Tesla failed to investigate Plaintiff's complaint. Martinez, a Chartwell employee, submitted a written statement as part of an investigation that was conducted on the day of Plaintiff's complaint.  Martinez's testimony is needed for the jury to determine the credibility of Plaintiff's allegations on every single allegation.  To exclude testimony from an alleged "primary harasser" about the cartoon that Plaintiff found offensive, of his interaction(s) with Plaintiff before and after Plaintiff's complaint, about the allegations of racial slurs, and about the investigation conducted regarding Plaintiff's complaint and subsequent corrective actions would not only be prejudicial to Tesla's defense, but also deprive the jury of relevant evidence to make findings of fact.  Such testimony goes not only to the credibility of Plaintiff's harassment allegations, but is evidence relevant to Plaintiff's failure to prevent claim and actions taken following Plaintiff's complaint.

Plaintiff's motion requesting an order to take eight additional depositions stated that Martinez "possess unique information that cannot be obtained via other sources."  Dkt. No. 86

---

[4] Tesla has not designated Judy Timbreza, Josue Torres, or Samuel Zehner as witnesses.

1   (9/19/19 Discovery Dispute Letter), p. 2.  Thus, to prohibit Mr. Martinez from testifying would

2   preclude the jury from considering evidence needed to make an informed determinations on all

3   three of Plaintiff's claims -- whether Plaintiff was harassed by Martinez based on his race, whether

4   Tesla failed to take appropriate action following Plaintiff's complaint, and whether Tesla

5   negligently hired, supervised, or retained Martinez.

### 2.   Plaintiff Distorts the Court's October 3 Discovery Order Granting Plaintiff Leave to Depose Mr. Martinez.

8   Plaintiff cites the Court's October 3, 2019 Order out of context and misstates the discovery

9   dispute.  Plaintiff chose not to depose Martinez after requesting, and being granted, additional time

10  and depositions to do so even after the discovery cut-off date.  Plaintiff cannot preclude Tesla

11  from calling a key witness because he failed to depose Martinez.

#### a.   Plaintiff had ample opportunity to depose Mr. Martinez and failed to do so.

14  Plaintiff was aware, and asserted in his Complaint filed October 16, 2017, that he believed

15  Martinez, a Chartwell employee, to be his harasser.  *See* Dkt. No. 1-2, pp. 9-10, 17-20.  For 24

16  months, Plaintiff made no effort to depose Martinez.[5]  The discovery cutoff date was originally set

17  for June 28, 2019; presumably, had Plaintiff wanted to depose Martinez, he would have by then.

18  The discovery cutoff was extended solely based on Plaintiff adding nextSource as an additional

19  defendant to October 11, 2019, which provided further time for Plaintiff to depose Martinez.  He

20  did not.

21  On September 19, 2019 – just before the discovery cutoff – Plaintiff asked this Court grant

22  leave to depose eight more individuals (beyond the FRCP limit).   The Court's October 3 Order

23  stated, in pertinent part: "I will allow plaintiffs 14 additional hours for depositions, which must be

24  completed by October 15.  Defendants will not be able to call as a witness at trial any individuals

25  named in the letter who not have been deposed."  Thus, the Court allowed Plaintiff 14 additional

---

[5] Plaintiff chose to take 10 depositions of other individuals -- including his own witnesses like Michael Wheeler and Wayne Jackson, and a nextSource witness to authenticate a contract between Tesla and nextSource (Tesla has agreed to stipulate to the authenticity of the contract, allowing plaintiff to withdraw the nextSource witness) instead of Martinez.

1   hours to depose any witness, including Martinez, and to do so even beyond the discovery cutoff

2   date.  *See* Dkt. No, 93, 1:23-25.

3        As noted below, short of Tesla preventing Plaintiff from deposing Martinez, to construe

4   the Court's Order as now precluding Tesla from calling a witness that Plaintiff had the opportunity

5   to depose even past the discovery cutoff, yet chose not to, would be unreasonable and inconsistent

6   with the purposes of discovery.  It is irrational to interpret the Court's intent to preclude witnesses

7   from testifying at trial if *Plaintiff decided not to* depose them.  That would deny Tesla due process.

8                    b.   <u>Any "harm" suffered by Plaintiff is a result of his own</u>
                          <u>gamesmanship and lack of diligence.</u>

9

10        Neither the Court nor Tesla impeded Plaintiff from taking the deposition of Martinez and

11   in fact, worked cooperatively to arrange for depositions to be completed by October 15 and

12   accommodated Plaintiff's schedule.  On October 3, 2019 the same date as the discovery order,

13   Plaintiff's counsel emailed all defendants with a "Depositions – Schedule for 10/9 – 10/15,"

14   identifying 5 of the 8 witnesses as witnesses Plaintiff would be deposing, *but notably, excluded*

15   *Martinez.*  Haines Decl., Exh. 1 (10/3/19 Email from Plaintiff's Counsel).  Plaintiff's counsel also

16   asked if Tesla would accept subpoenas on behalf of Erin Marconi and Josue Torres  – *again not*

17   *mentioning Martinez* at all – or if they should proceed with serving subpoenas.  *Id.*  Because

18   neither Marconi nor Torres worked at Tesla, Tesla responded that Plaintiff could proceed with

19   serving subpoenas.  *Id.*  After service of the subpoenas,  Marconi called Tesla's counsel informing

20   counsel that she was not available; Plaintiff's counsel agreed to accommodate  Marconi's schedule

21   only if Tesla would agree to stipulate to move the deposition of Marconi past the October 15

22   deadline; Tesla agreed to extend the time for Plaintiff to complete the deposition.  *See* Dkt. No. 99.

23   Indeed, Tesla fully cooperated with all parties to complete the depositions permitted by the

24   Court's October 3 Order.

25        The Court's October 3 Order also allowed Plaintiff to seek *more* discovery after the

26   discovery cutoff, if needed, if the discovery obtained following the Order suggested that further

27   discovery is needed.  Plaintiff subsequently filed three discovery letter briefs on October 18, and

28   an amended discovery letter on October 19, seeking, *inter alia*, an additional deposition of Andres

1   Donet, a Tesla employee who supervised contract janitors.  The Court permitted Plaintiff another

2   45 minutes to depose Mr. Donet, and again Tesla cooperated and produced the witness the next

3   day, October 24.  Haines Decl., ¶ 3, Exh. 2.  Plaintiff did not notify either Tesla or the Court of

4   any intent to or impediment in deposing Martinez in any of these letters.

5          Given the many opportunities Plaintiff had to depose Martinez, his failure to do so should

6   not now preclude the jury from hearing testimony from the alleged harasser.  Plaintiff not only

7   failed to depose an alleged "primary harasser" for nearly 2 years, but was provided leave of Court

8   to do so after the discovery cutoff to do so if he so wanted.  After the Court's October 3 Order

9   permitting 8 additional depositions, Plaintiff immediately emailed Tesla a deposition schedule

10  identifying 5 individuals but ***not*** Martinez.  Plaintiff later sought leave of Court to depose *another*

11  individual, again, ***not Martinez***, and the Court granted Plaintiff's request.  Ultimately, Plaintiff

12  was given leave for 14:45 hours of additional deposition and left 7.5 hours on the table and never

13  used.  *See* Dkt. No. 105, p. 1.  *Plaintiff did not include Martinez on the list of depositions he*

14  *intended to take on October 3, even after the Court's October 3 Order.*  Plaintiff did not ask Tesla

15  to produce Martinez for deposition in response to the October 3 Order, despite being aware that he

16  was a Tesla employee.[6]  Plaintiff did not even ask Tesla accept any subpoenas for Martinez,

17  despite asking if Tesla would accept the subpoenas of two former employees, Erin Marconi and

18  Josue Torres.  Plaintiff did not request that Tesla stipulate to continue any deposition of Martinez

19  past the Court's deadline of October 15, despite asking Tesla to do so for Marconi (and to which

20  Tesla agreed).  Plaintiff did not seek leave from the Court to depose Martinez after October 15,

21  despite filing a joint discovery letters on October 18 asking for the deposition of Andres Donet.

22  And despite Plaintiff's assertion now that he "was forced to make a judgment call about which

23  witnesses to depose and necessarily could not depose all  listed witnesses," that is simply untrue

24  given that Plaintiff had 7.5 hours of deposition remaining and that the Court had invited Plaintiff

25

26  _____
    [6] In response to Plaintiff's interrogatory asking for each position Ramon Martinez held during his
27  employment at Tesla, Tesla stated that although Martinez was not employed by Tesla during the
    time Plaintiff worked at Tesla, "Ramon Martinez's position from January 14, 2019 to the date of
28  this response is Lead Material Handler."  Haines Decl., Exh 3 (5/24/19 Tesla's Resp. To Interrogs.
    Set 3),

1  to seek additional depositions post discovery cutoff if needed. Plaintiff could have deposed

2  Martinez for an entire day.

### 3. Plaintiff's Reliance On its Motion for Sanctions, Based on the October 3 Order, To Exclude Martinez's Testimony Is Similarly Misleading.

5  Plaintiff complains that he was deprived of Martinez's contact information, but it was

6  Plaintiff who represented that he was in possession of Martinez's contact information and even

7  disclosed Martinez's contact information to defendant CitiStaff in December 2018.[7] And, although

8  Plaintiff now claims to have served a man named Ramon Martinez who was not the correct

9  Ramon Martinez after the Court's October 3 Order, this information was not communicated to the

10  defendants at that time.[8] Plaintiff emailed Tesla with a clear list of intended deponents on October

11  3, following the Court's Order, *and excluded Martinez*. Haines Decl., Exh. 1. It appeared to Tesla

12  that Plaintiff had simply abandoned any intent to depose Martinez (especially because he also

13  made no other attempts to depose the five other witnesses whose depositions Plaintiff sought).

14  Tesla should not prohibited from calling Martinez because *Plaintiff* did not depose Martinez.

15  Plaintiff's assertion that it previously moved to exclude Martinez from testifying as a

16  sanction under Rule 37 is a red herring, and attempts to obfuscate the actual discovery dispute that

17  was before this Court. Plaintiff's motion was based on Tesla's purported failure to identify

18  specific witnesses in response to his Interrogatory Nos. 11 and 12; Martinez was not responsive to

19  these interrogatories. Throughout this litigation, Plaintiff has disputed Tesla's responses to his

20  Interrogatory Nos. 11-12 – which vaguely seek "employees and/or contractors who worked with

21  or around Plaintiffs." Dkt. No. 88, pp. 1, 3; Dkt. No. 146, p. 4:23-28. The Court's October 3

22  Order states "*Re: plaintiffs' request that Tesla produce contact information for employees and/or*

---

[7] Tesla, who did not employ Martinez in 2015 during the time of the alleged incident, did not have his address but disclosed his e-mail to Plaintiff. Tesla also had no reason to believe that Plaintiff's information in discovery was no longer accurate, as he now states in his papers; Plaintiff did not amend his discovery response, or communicate that his information was faulty.

[8] As noted above, at the time Plaintiff subpoenaed Ramon Martinez, Tesla had confirmed in writing that Martinez was employed by Tesla as a Lead Material Handler since January 2019. Plaintiff had requested Tesla produce, and Tesla did produce, other employees or former employees, but not Martinez.

*contractors who worked with or around plaintiffs:* To the extent it has not done so already, Tesla shall provide information about known individuals who fall into this category. Tesla need not go on a wild goose chase to uncover the names of individuals about whom it is not aware." Dkt. No. 93, 2:12-15. Tesla complied with the Court's Order and, pursuant to Plaintiff's own clarification of "with or around" in its September 20 Discovery Dispute Letter filing, conducted yet another search for any additional individuals. Tesla confirmed that there were no additional individuals who worked "with or around" Plaintiff whose information was not produced.

Plaintiff disputed Tesla's compliance with Interrogatory Nos. 11 and 12, based only on its belief that there were people, for example, "who had regular interactions with the elevators" and should be included in the scope of those described as working "with or around" him. Plaintiff therefore filed its Motion for Sanctions on January 27, 2020, listing several individuals it believed were people who worked "with or around" Plaintiffs and thus should have been responsive to Interrogatory Nos. 11 and 12. Dkt. No. 146. Yet, none of the individuals identified fell within the scope of Plaintiff's interrogatories, even under Plaintiff's own definition of "with or around" as described in his filing: "employees who worked in the same departments as Plaintiffs, while Plaintiffs worked for Tesla, during the shifts Plaintiffs worked, and having the same supervisors as Plaintiffs." *See* Dkt No. 156 (Tesla' Opp'n to Sanctions Motion), 8:8-15:9.) Plaintiff's claim that the Motion for Sanctions should preclude Tesla from calling Martinez is misplaced. The motion – essentially a belated discovery motion – encompassed Interrogatory No. 11 and 12, neither of which had to do with Martinez at all. Accordingly, this Court should deny Plaintiff's request to exclude the testimony of Martinez.

### C.   Motion *In Limine* No. 3 – To Exclude the Handwritten Statement By Ramon Martinez.

The witness statement from Martinez which was collected as part of the investigation, and was a business record, conducted into Plaintiff's complaint on the morning of January 22, 2016 is admissible as non-hearsay.

/ / /

/ / /

**1.    Martinez's Written Investigation Statement is Admissible and Not Hearsay Under FRE 801(d)(1)(B).**

A statement that is consistent with the declarant's testimony and is offered either "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground" is not a statement that is hearsay.  Fed. R. Evid. 801(d)(1)(B).  Plaintiff has alleged that Martinez intentionally drew a racist cartoon to harass Plaintiff based on his race, and that any denial by Martinez should not be believed.  At his deposition, Plaintiff also denied various statements in the witness statement, including that Martinez apologized to Plaintiff immediately for offending him.  The witness statement prepared and submitted by Martinez as part of an investigative file, is admissible to rebut Plaintiff's express or implied assertion that he subsequently fabricated the events of January 21, 2016; and, the statements go to the credibility of  Martinez, which Plaintiff will undoubtedly attack.   Haines Decl., Exh.4 (1/25/16 Email with Statements), at TESLA0000732-TESLA-0000734.

Further, to the extent Plaintiff disputes the existence or adequacy of an investigation following his complaint about the drawing, the witness statements are part of the investigative file and are relevant to determine whether the investigation occurred and was adequate, not for the truth of the matter asserted.  The statements also evidence what Martinez's employer (Chartwell), nextSource, and Tesla was aware of, and what information from Martinez was considered and relied upon in determining corrective action.  Thus, the statement is non-hearsay.

**2.    Even if Martinez's Statement Are Hearsay, They Fall Under Hearsay Exceptions.**

Martinez's witness statement qualifies as a business record under Rule 803(6).  "The rule may be parsed into three elements: 1) the document must be prepared in the normal course of business; 2) it must be made at or near the time of the events it records; and 3) it must be based on the personal knowledge of the entrant or on the personal knowledge of an informant having a business duty to transmit the information to the entrant." *Datamatic Servs., Inc. v. United States*, 909 F.2d 1029, 1032 (7th Cir. 1990); *see also Clark v. City of Los Angeles*, 650 F.2d 1033, 1036

(9th Cir. 1981) ("[h]earsay in business records is not specifically excludable").  Martinez's witness statement was prepared as part of the investigation conducted into Plaintiff's complaint, and part of the investigation file prepared by Chartwell (Martinez's employer) and kept in the regular course of business.  Martinez's witness statement was also made at or near the time of the events it recorded – on the same day as Plaintiff's complaint.  Plaintiff protests that the statement was part of a "one-off investigation," but records regarding singular events do not negate that they are kept in the regular course of business.  Plaintiff also claims there was no duty for the witness statement to be accurate.  However, any witness statements collected in conjunction with an investigation reasonably require that the preparer be truthful, as any failure to provide truthful information would subject the preparer to disciplined; just as Plaintiff was required to prepare his statement truthfully – which statement Plaintiff does not seek to exclude -- so was Martinez.  Moreover, the statement was prepared by and obtained from Martinez, who had knowledge of the events recorded, as he recounts his own actions and drawing based on his own personal knowledge.  Finally, the investigative record, including both Martinez's and Plaintiff's statements, were relied upon by Chartwell and Tesla in the subsequent corrective action taken.

Martinez's witness statement, submitted the same day as Plaintiff's complaint, also qualifies to show his then-existing state of mind, including his motive, intent, or plan for the drawing.  Fed. R. Evid. 803(3).  Accordingly, even if Martinez's statement as part of the investigation record were hearsay, it would fall under the hearsay exception.

### D.   Motion *In Limine* No. 5 – To Exclude Testimony or Evidence Concerning Owen Diaz's Work Performance.

Plaintiff seeks to exclude evidence regarding his work performance by incorrectly claiming his "work performance is irrelevant to the ultimate question of whether Owen suffered racial harassment."  Dkt. No. 187 (Plaintiff's Motions In Limine), 22:11-13.  This is contrary to the law and Plaintiff's requested jury instructions, which are replete with elements requiring proof of Plaintiff's work environment and his work performance.  The evidence is relevant.

/ / /

/ / /

1

2

**1.     Plaintiff's Section 1981 Claims Require Proof of Plaintiff's Work Environment and Work Performance.**

3        Plaintiff's  claims are for racial harassment and failure to prevent racial harassment under

4  42 U.S.C. § 1981, and Plaintiff is only requesting jury instructions on those claims.  Dkt. No. 187

5  (Plaintiff's Motions In Limine), 22:9-11, fn. 7.  Plaintiff's jury instructions identify his racial

6  harassment claim as "Hostile Work Environment based on Race."[9]  Dkt. No. 193, 43:1-11

7  (Plaintiff's Instruction No. 1): Plaintiff's Claims.  Plaintiff's claim requires proof regarding his

8  work environment and his work performance.

9        A hostile work environment claim is evaluated under the totality of circumstances test

10  which includes, "the discriminatory conduct; its severity; whether it is physically threatening or

11  humiliating, or a mere offensive utterance; and *whether it unreasonably interferes with an*

12  *employee's work performance*."  *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 270-71, *reh'g*

13  *denied,* 533 U.S. 912 (2001) (internal citations omitted) (emphasis added).  Using these factors,

14  Plaintiff must show that his "*work environment was both subjectively and objectively hostile,*" and

15  evidence of the hostility "must be considered from the perspective of a reasonable person

16  belonging to the racial or ethnic group of the plaintiff."  *Galdamez v. Potter*, 415 F.3d 1015, 1023

17  (9th Cir. 2005) (internal quotations omitted) (emphasis added).

18        Plaintiff's proposed jury instructions echo the requirements for proof regarding Plaintiff's

19  work environment and his work performance.  For example, Plaintiff's requested instruction

20  setting forth the elements of hostile work environment includes "[w]hether the environment

21  constituted a racially hostile work environment is determined by the totality of the circumstances,

22  including . . . whether it unreasonably interfered with an employee's work performance."  Dkt.

23  No. 193, 33:18-34:8 (Ninth Cir. Model Jury Instr. 10.5)  According to Plaintiff, to determine if the

24  alleged conduct was severe or pervasive, requires "that a reasonable person who was subjected to

25  the harassing conduct would find that the conduct so altered working conditions as to make it

26

27  _____

[9] Defendant's citation to Plaintiff's requested jury instructions is only for the purpose of opposing
Plaintiff's Motion *In Limine* and is not an agreement or concession that any of Plaintiff's
28  requested jury instructions are appropriate or should be read to the jury.  Dkt. No. 193.

1    more difficult to do the job." Dkt. No. 193, 43:13-24 (Plaintiff's Jury Instr. No. 2 – Severe or

2    Pervasive Explained).  This special instruction modified by Plaintiff was purportedly based on

3    CACI 2524, which identifies the same element as "[t]he extent to which the conduct unreasonably

4    interfered with an employee's work performance."  Plaintiff also requested another special jury

5    instruction which states "[n]o 'single factor' is required to establish a racially hostile work

6    environment . . . . [c]onduct which unreasonably interferes with work performance can alter a

7    condition of employment and create an abusive working environment." Dkt. No. 193, 47:19-48:7

8    (Plaintiff's Jury Instr. No. 3 – Harassing Conduct).

9           Thus, Plaintiff's requested jury instructions, along with case law, directly contradict the

10   motion's premise that evidence of Plaintiff's work environment and work performance is

11   irrelevant.  The evidence is relevant, and should not be excluded.

12                **2.     All Evidence of Plaintiff's Work Environment and Work Performance
                          Is Relevant.**

13

14          Moreover, *all* evidence regarding Plaintiff's work environment and work performance is

15   relevant.  Plaintiff admits that certain evidence is relevant:  "Owen's alleged performance issues or

16   disagreements with relation to individuals who racially harassed him . . . may have some limited

17   relevance" and "[e]xcept to the extent race was a factor in Owen's coworkers not getting along

18   with him," which Plaintiff does not seek to exclude.  Dkt. No. 187 (Plaintiff's Motions In Limine),

19   22:23-23:2, fn. 5.  No such limitation or modification is found in the case law or Plaintiff's

20   requested jury instructions, and none should be applied here.  All such evidence is relevant and

21   should not be excluded.

22                **3.     Evidence of Plaintiff's Work Environment and Work Performance Is
                          Also Relevant to Plaintiff's Credibility and Bias.**

23

24          Not only is evidence of Plaintiff's work performance and work environment substantively

25   relevant, but it is also relevant to Plaintiff's credibility and potential bias towards Tesla.  Plaintiff's

26   assertion that "[n]or is evidence of Owen's work performance relevant for the alternative purpose

27   of demonstrating bias or motive," is contrary to the law.  Dkt. No. 187 (Plaintiff's Motions In

28   Limine), 23:5-6.  "Evidence is relevant to a matter of consequence to the determination of the case

if it has a *mere* tendency to impeach a witness' credibility by a showing of bias or coercion." *U.S. v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) (emphasis added).  "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Id.* (citing *U.S. v. Abel*,469 U.S. 45, 52 (1984)).  The importance of credibility and bias is also plainly articulated by Rule 607:  "[a]ny party, including the party that called the witness, may attack the witness's credibility."  Fed. R. Evid. 607.

A closer look at the exhibits Plaintiff seeks to exclude demonstrate that they are relevant to Plaintiff's work performance as an Elevator Lead and his work environment.  The majority of the exhibits involve manager Ed Romero, and include his response to complaints from other managers and co-workers, potential discipline and the requirement that as an Elevator Lead, Plaintiff must set an example by following the rules.  This debunks Plaintiff's assertion that "[t]here is no factual basis for a claim that Owen has any bias or negative motive towards Tesla because of his alleged failure to wear safety glasses on one occasion or the fact that his co-workers allegedly complained about his attitude" when the Exhibits cited by Plaintiff indicate that he could be disciplined for his work performance.  Dkt. No. 187 (Plaintiff's Motions In Limine), 23:6-8.

While Plaintiff seeks to downplay the importance of wearing safety shoes, Plaintiff is told by Ed Romero to ensure that he follows the rules and his associates do as well:  "[i]t is mandatory that safety gear (PPE) be worn at all times . . . .  *Please make sure you and your associates* always wear PPE."  Dkt. No. 188-3, Exhibit 11 (emphasis added).  As for co-worker and manager complaints, and the need for Plaintiff to set an example, Exhibits 16 and 17 again make this plain in email exchanges between Joyce Delagrande and Ed Romero.  Delagrande reports to Romero "I just caught Owen riding a bike in our warehouse" and emphasizes that "[a]s *a leader he needs to make sure he is following the rules*."  Dkt. No. 188-3, Exhibit 17 (emphasis added).  Romero assures her "I will take care of this," and Delagrande responds that Plaintiff "apologized but there are clear signs out there that bikes are not allowed back here."  *Id.* at Exhibit 16.  Similarly, in another email exchange between Delagrande and Ed Romero in February 2016, the issue of discipline is raised when Delagrande reports "we have previously discussed issues downstairs with

this team" and with "Owen and sadly the same issues I had with them downstairs I have upstairs" noting that "Owen just has no sense of urgency at all" and "I have watched him driving around on the tugger talking to my female associates when he should be at the elevators assisting his team." Dkt. No. 188-3, Exhibit 18.  In response, Romero spoke with Plaintiff about his "failure to keep the elevators manned at all times and his failure in [sic] wondering away from the elevators," that "this would more than likely lead to a write up" and that "he must do everything possible to change the perception production has of him and his crew." *Id.*  Whether Plaintiff's work performance would subject him to discipline is relevant to his credibility and his potential bias toward Romero and Tesla.

Furthermore, Plaintiff testified that Romero threatened him with demotion, thus rendering Plaintiff's cited exhibits germane to Plaintiff's bias and credibility, as well as his Section 1981 claims.  Haines Decl., Exh. 5 (12/3/18 O. Diaz Dep.), 236:10-11.  Plaintiff's testimony also belies the assertions that the introduction of evidence about Plaintiff's work performance "invites unjustified leaps of logic" and "work performance has no bearing on his credibility." Dkt. No. 187 (Plaintiff's Motions In Limine), 23:23-25.  When confronted with an email from Romero summarizing a 45 minute meeting with Plaintiff, his imposition of a verbal warning, and the reasons the verbal warning had been given, Plaintiff repeatedly testified that he did not recall.  Haines Decl., Exh. 6 (5/22/18 O. Diaz Dep.), 115:6-117:24 & Deposition Exhibit 6.  The verbal warning was given because of Plaintiff's "negative interactions with other recycle[ing] employees," and that although he had been promoted to lead, if the problems continued changes would have to be made and Plaintiff said "he understood and would make the necessary changes." *Id.*  This isolated example alone demonstrates the relevance of evidence about Plaintiff's work performance, his credibility and potential bias against Romero and/or Tesla.

Finally, Plaintiff's Exhibit List demonstrates that Plaintiff seeks to put on evidence about his job performance but wants to limit that evidence to only positive comments.  For example, work performance-related exhibits identified by Plaintiff include emails about his pay raises (Pl.'s Exhibit 65 and 100), and that Plaintiff is doing a good job (Pl.'s Exhibit 54 and 73). *See* Dkt. No. 190.  Plaintiff cannot cherry-pick what evidence about his performance the jury hears.  All

1   evidence relating to Plaintiff's work performance should be admitted, not a distorted, one-sided

2   view. For these reasons, Plaintiff's Motion *In Limine* No. 5 should be denied.

3       **E.      Motion *In Limine* No. 4 – To Exclude Testimony or Evidence Concerning
            Workplace Relationship Between Plaintiff Owen Diaz and Rothaj Foster.**

4

5       Plaintiff again seeks to exclude evidence about his work performance by incorrectly

6   claiming the evidence about his relationship with Rothaj Foster "is not relevant to Plaintiff's

7   remaining claim of racial harassment" and that "Plaintiff is not pursuing any claims that relate to

8   his job performance or relationship with coworkers at trial." Dkt. No. 187 (Plaintiff's Motions In

9   Limine), 19:15-17. As discussed above, in Defendant's Opposition to Motion *In Limine* No. 5,

10  this position is contrary to the law, Plaintiff's requested jury instructions and Exhibit List contain

11  the very information he seeks to exclude by this motion. The evidence is relevant.

12      **1.      Plaintiff's Efforts to Discipline a Co-Worker and Have Him Removed
            from the Workplace Are Relevant to Plaintiff's Section 1981 Claims.**

13

14      Plaintiff's remaining claims are for racial harassment and failure to prevent racial

15  harassment under 42 U.S.C. § 1981, and he is only requesting jury instructions on those claims.

16  Dkt. No. 187 (Plaintiff's Motions In Limine), 19, fn. 4, 20:1-3. Both the case law and Plaintiff's

17  requested jury instructions require proof of Plaintiff's job performance. *See, e.g., Clark County*

18  *Sch. Dist. v. Breeden,* 532 U.S. at 270-71 (a hostile work environment is evaluated under the

19  totality of circumstances test including whether it unreasonably interferes with an employee's

20  work performance). Plaintiff must also show that his work environment was both subjectively and

21  objectively hostile, with the objective viewpoint being considered from the perspective of a

22  reasonable person belonging to the Plaintiff's racial or ethnic group. *Galdamez*, 415 F.3d at 1023.

23      Rothaj Foster is an African-American man. Haines Decl., Exh. 6(5/22/18 O. Diaz Dep.),

24  65:22-24. Plaintiff testified he supervised Rothaj Foster, and that he and Foster reported to Ed

25  Romero. *Id.* at Exh. 7 (6/21/19 O. Diaz Dep.), 364:1-365:9. The very evidence Plaintiff seeks to

26  exclude involves two incidents documented by emails where Plaintiff reprimanded Rothaj Foster

27  about his rest breaks, reported it to manager Ed Romero and/or Victor Quintero and Rothaj Foster

28  was disciplined as a result. Exhibits relating to both of the two incidents are included on

1    Plaintiff's Trial Exhibit List.  *See* Dkt. No. 190.  Plaintiff's Trial Exhibit 32 involves the first

2    incident in which Plaintiff documents the text he sent to Rothaj Foster about not reporting back

3    from his break, his counseling of Foster, and Plaintiff's email to manager Victor Quintero

4    identifying Plaintiff's view of Foster's conduct, and that Foster should be disciplined.  The final

5    email in this chain is confirmation that Rothaj Foster was disciplined and would not be paid for the

6    excess time he took on break.  Haines Decl., Exh. 8 (TESLA-0000054-TESLA-0000055).

7    Discipline for the first incident is reflected in Plaintiff's Trial Exhibit 53, which also contains

8    Plaintiff's text to Rothaj Foster and Plaintiff's written complaint, this time with a response from

9    Ed Romero that discipline will be imposed on Rothaj Foster and that Wayne Jackson from

10   nextSource will "follow through" with Plaintiff on the verbal warning to Rothaj Foster.  *Id.* at Exh.

11   9 (TESLA-0000058).  The second incident is Plaintiff's Trial Exhibit 122, which is a series of

12   email detailing why manager Ed Romero had Rothaj Foster removed from the premises after

13   Plaintiff said Foster threatened him when Plaintiff told Foster to wait to take his break.  *Id.* at Exh.

14   10 (TESLA-0000127-TESLA-0000128).

15         Each of these instances is relevant to Plaintiff's work performance, his work environment,

16   and his understanding of how to report what he perceived as improper workplace conduct to Ed

17   Romero, and what would result when he made email and verbal reports of such conduct to Ed

18   Romero and/or Victor Quintero.  It also demonstrates Plaintiff's ability and understanding of how

19   discipline is imposed and how to request that discipline be imposed in the workplace.  The

20   evidence is relevant to Plaintiff's claims.

21              **2.    Evidence of Plaintiff's Work Environment, Including Reporting and
                        Disciplining His Co-Worker Are Relevant to Plaintiff's Credibility.**
22

23         Not only is the evidence Plaintiff seeks to exclude substantively relevant to Plaintiff's

24   work performance and work environment, but it is also relevant to Plaintiff's credibility.

25         The exhibits Plaintiff seeks to exclude and the exhibits  involving the same two incidents

26   are on Plaintiff's Trial Exhibit List and are not only substantively relevant to Plaintiff's work

27   performance and work environment, but also relevant to Plaintiff's credibility.  The exhibits (at

28   issue here and those on Plaintiff's Trial Exhibit List) demonstrate Plaintiff understood he needed

to document his own actions and communications, as well as the actions and communications of the person against whom he was making a complaint.  They also demonstrate that Plaintiff understood, as a lead, he could counsel Foster, his subordinate and request that discipline be imposed on his co-worker – all based on Plaintiff's representations.  These are particularly relevant because many of Plaintiff's claims are not based on any written documentation, but instead upon Plaintiff's deposition testimony.  For example, although Plaintiff made detailed, emailed complaints about Ramon Martinez, none of those emails contained any allegation that Martinez had used the n-word.  But in this litigation, Plaintiff for the first time testified at deposition that Martinez had done so, multiple times.  Therefore, Plaintiff's emailed complaints, exchanges with management, and communications requesting discipline for what Plaintiff regarded as improper behavior are relevant to his credibility in his complaints about other workers.

For these reasons, Plaintiff's Motion *In Limine* No. 4 should be denied.

### F.      Opposition to Motion *In Limine* No. 6 – To Exclude Testimony or Evidence Concerning Demetric Di-az's Criminal History.

Plaintiff's Motion *in Limine* No. 6 seeks to exclude evidence of his son and former named-plaintiff, Demetric Di-az's ("Demetric") criminal transgressions that occurred after his temporary work assignment at Tesla ended, but while this litigation was pending and he was a party to this action.  Plaintiff seeks to exclude evidence related to a robbery at a Domino's Pizza franchise in December 2018 after which he was arrested and charged with the following crimes:  (1) kidnapping to commit another crime; (2) three counts of second degree robbery with firearm enhancements (a felony); (3) three counts assault with a semi-automatic firearm (a felony); and (4) and a probation violation.  Haines Decl., Exh. 11 (D. Di-az Information).  Plaintiff also seeks to exclude evidence from Demetric's June 2017 no contest plea for charges of carrying a loaded firearm, having a concealed firearm on person, and resisting arrest.  *Id.* at Exh. 12 (D. Di-az Plea Agreement).  Plaintiff contends information about his son's arrest and criminal charges should be excluded because it does not qualify as impeachment evidence under Rule 609, is improper character evidence under Rules 404 and 608, and its limited relevance is substantially outweighed

1    by the risk of unfair prejudice.  Plaintiff's motion disregards the relevance of Demetric's criminal

2    arrests and guilty pleas on his case and this litigation.

3            Evidence of Demetric's criminal history after his separation at Tesla is relevant to

4    Plaintiff's emotional distress and must be admitted.  Both Plaintiff and Plaintiff's designated

5    expert, Dr. Anthony Reading, testified about the impact of Demetric's criminal issues on

6    Plaintiff's alleged depression and ongoing mental health issues.  *Id.* at Exh. 13 (2/18/20 A.

7    Reading Dep.), 35:22-36:18; 38:2-10; 38:16-41:10; Exh. 5 (12/3/18 O. Diaz Dep.), 239:23-25,

8    240:4-10; Plaintiff's Trial Exh. 23 (Dr. Reading's Expert Report).  Thus, Plaintiff has opened the

9    door to the admission of evidence about Demetric's criminal history by making it relevant to his

10   emotional distress damages.  Further, Demetric posted bail on January 23, 2019 using his parents'

11   savings, making the financial (and emotional) impact of Demetric's transgressions on his father

12   relevant.  *Id.* at Exh. 13 (2/18/20 A. Reading Dep.), 29:6-11.  As such, information pertaining to

13   Demetric's criminal convictions is relevant to Plaintiff's emotional distress and is admissible in

14   this litigation.

15           **1.    Evidence of Demetric's Criminal Charges Is Admissible Because It Is
                     Directly And Because Plaintiff Put Them At Issue As To His Alleged**
16           **Emotional Distress**

17           Relevant evidence is that which has a tendency to make a fact of consequence to the issue

18   more or less probable.  Fed. R. Evid. 401.  With limited exceptions, all relevant evidence is

19   admissible.  Fed. R. Evid. 402.  Evidence relating to a party's claim for emotional distress is

20   relevant evidence in a case where a party seeks such damages.  *Maryland Cas. Co. v. Knight*, 96

21   F.3d 1284, 1294 (9th Cir. 1996) (admitting evidence of the plaintiff's prior settlement with a bank

22   because it was relevant to the plaintiff's alleged emotional distress); *Plyler v. Whirlpool Corp.*,

23   751 F.3d 509, 514 (7th Cir. 2014) ("Whirlpool was entitled to explore whether—despite his

24   denial—other sources, including his divorce, contributed to his emotional distress."); *see also*

25   *Morris v. Long*, 2012 U.S. Dist. LEXIS 112368 (E.D. Cal. Aug. 8, 2012).

26           Here, Plaintiff has put the issue of Demetric's post-Tesla criminal charges and plea deals at

27   issue because he testified that his relationship with Demetric became fractured *after Demetric's*

28   *placement at Tesla.*  Haines Decl., Exh. 5 (12/3/18 O. Diaz Dep.), 240:4-10.  Specifically, Plaintiff

testified his emotional distress symptoms included, "Lack of sleep, *watching my son change to not being a trusting person*…being able not to be there as a protector for my family that I'm supposed to be…*To watch my son have to endure something that I thought he would never have to endure*." *Id.* (emphasis added). Thus, based on Plaintiff's testimony, his relationship with his son was one of the primary contributing factors to his emotional distress. Defendant is entitled to explore these issues as a potential extraneous source of emotional distress that was not the fault of Defendant.

Next, not only does Plaintiff put Demetric's criminal transgressions at issue, but Plaintiff's designated expert Dr. Anthony Reading, testified there were three contributing issues to Plaintiff's depression and mood issues: "the first is what happened [at the Tesla factory] to the extent it did happen; *the second would be the issues with his son*; and the third would be the litigation. So there's three processes of—probably fueling that continued pre-occupation or intrusive thinking." *Id.* at Exh. 13 (2/18/20 A. Reading Dep.), 39:12-16 (emphasis added). Dr. Reading also testified that Plaintiff's ongoing emotional issues may be a result of Demetric's legal issues: "His depression continues, and I think that's a product of what he believes is—the ongoing nature of that is a product of what he sees as the fracturing experience with his son—and then the longer term ramifications, because he's trying his son going off track with this arrest…or his son facing what appears to be significant prison time." *Id.* at 40:14-22. Dr. Reading also testified that Plaintiff's emotional distress was ongoing due to the legal issues Plaintiff believes were associated with Demetric's experience at Tesla: "[Plaintiff's] depression has remained at some level owing to what else happened, the ramifications of what he sees Tesla with respect to his son." *Id.* at 41:4-10. Thus, Plaintiff's designated expert has put Demetric's post-Tesla criminal history at issue by testifying it was one of three contributing factors to Plaintiff's alleged past emotional distress, and the only factor contributing to his ongoing distress. As such, Defendant should be permitted to present evidence and testimony related to Demetric's charges and plea deals because Plaintiff and his expert have placed them at issue in this litigation.

Finally, Demetric's criminal history is relevant because Plaintiff paid a significant sum of money for Demetric's bail. Dr. Reading testified that Plaintiff funded Demetric's bail after Demetric's second arrest in December 2019. *Id.* at 29:6-11. Thus, Plaintiff's financial wellbeing

was directly impacted by Demetric's criminal record, which contributed to his alleged emotional distress. This is relevant testimony and will allow the jury to better evaluate Plaintiff's case and credibility, and will allow Defendant to proffer an alternative source of emotional distress for Plaintiff.

Based on the foregoing, Demetric's legal troubles after his placement at Tesla ended are directly relevant to Plaintiff's claims for emotional distress. Thus, Tesla is entitled to elicit testimony and present evidence related to Demetric's arrests and plea deals ***because Plaintiff seeks emotional distress damages that are directly impacted by Demetric's criminal transgressions.*** As such, evidence of Demetric's June 2017 no contest plea and December 2018 arrests and later plea deal should be admitted because, as Plaintiff and his expert have conceded, it is relevant to Plaintiff's alleged past and ongoing emotional distress.

### 2.     Demetric's Past Convictions Is Admissible Under Rule of Evidence 609

Under Federal Rule of Evidence 609(a), evidence of a witness' prior conviction for a crime punishable by death or by imprisonment for over one year "must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant." Here, Demetric has already pled guilty to multiple charges that could result in a multi-year prison sentence.[10] Demetric is set to be sentenced on his felony charges in June 2020, and it is almost certain that Demetric will receive a multi-year prison sentence based on the multiple felony charges at issue and the proximity of these charges to his other post-Tesla charges and plea deal. Accordingly, at a minimum, the evidence of Demetric's prior convictions is admissible as impeachment evidence should Demetric testify at trial.

Plaintiff's reliance on *Beasley v. U.S.*, 218 F.2d 366, 368-369 (D.C. Cir. 1954) is misplaced. This case only states that a conviction was not admissible where the time for an appeal had not expired after the prosecutor stated the defendant was convicted of a crime. *Id.* The facts and holding in *Beasley* do not apply to the circumstances in this case where Demetric has entered

---

[10]   Demetric entered a plea on the felony charges related to his December 2018 arrest and charges. However, due to COVID-19 court closures, Defendant has been unable to obtain a copy of Demetric's plea deal. Defendant will supplement this motion with an amended declaration as soon as it is able to secure a copy of the plea deal from the court.

1   two guilty pleas, been sentenced on one set of charges, and is awaiting sentencing on the other.

2   As such, the Court should rely on the plain language of Rule 609(a) to admit evidence of

3   Demetric's past convictions for impeachment purposes.

4           **3.      Rules of Evidence 404 And 608 Do Not Apply To Demetric's Criminal
                      Charges And Convictions**

5

6       Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act

7   is not admissible to prove a person's character in order to show that on a particular occasion the

8   person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  Similarly, Federal Rule

9   of Evidence 608(b) prohibits the introduction of "extrinsic evidence … to prove specific instances

10  of a witness's conduct in order to attack or support the witness's character for truthfulness."

11  Defendant does not intend to attack Demetric's character or propensity for truthfulness with

12  evidence of his post-Tesla arrests and plea deals.  Instead, as explained above, Demetric's criminal

13  convictions and plea deals are relevant because Plaintiff put them at issue in support of his alleged

14  emotional state.  Accordingly, Rules of Evidence 404(b) and 608 do not provide a basis to exclude

15  evidence of Demetric's post-Tesla charges and convictions.

16          **4.      The Probative Value of Demetric's Criminal Charges And Convictions
                      Outweighs Their Prejudicial Effect**

17

18      Federal Rule of Evidence 403 gives a court discretion to "exclude relevant evidence if its

19  probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the

20  issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

21  evidence." Fed. R. Evid. 403.  In general, evidence, although otherwise admissible, should be

22  excluded where it tends to prove **only** criminal disposition.  *United States v. Aims Back*, 588 F.2d

23  1283 (9th Cir. 1979).  However, Rule of Evidence 403, however, affords the trial court discretion

24  to admit any evidence after balancing the probative value of the evidence with its potential

25  prejudicial effect.  *See United States v. Sangrey*, 586 F.2d 1312, 1314-1315 (9th Cir. 1978).  When

26  otherwise relevant evidence has the potential to prejudice a party, a trial court may address any

27  potential prejudicial effect with a limiting instruction.  *Id.*; *see also United States v. Sigal*, 572

28  F.2d 1320, 1323 (9th Cir. 1978).

1    Here, the evidence related to Demetric's criminal record and convictions post-Tesla are

2    directly relevant to a key component of Plaintiff's case—his alleged emotional distress damages.[11]

3    Plaintiff's emotional distress, and its causes, will be a highly contested and litigated issue in this

4    case, and Defendant is entitled to present a complete picture of Plaintiff's emotional state both

5    during and after his employment with Defendant.  As Plaintiff and his expert Dr. Reading

6    concede, this necessarily involves testimony about Demetric's criminal charges and convictions.

7    Moreover, in light of Demetric's dismissal as a named-plaintiff, it is unclear how Plaintiff will be

8    unfairly prejudiced if testimony about his son's criminal convictions are admitted.  As such, the

9    balancing test under Rule 403 overwhelmingly favors admitting the evidence.

10    To the extent the Court finds evidence of Demetric's past criminal convictions prejudicial,

11    a limiting instruction about the permissible uses of any such testimony will resolve any concerns

12    about improper inferences made by the jury.  The Ninth Circuit has repeatedly approved of this

13    approach when probative evidence of criminal acts may also be prejudicial to a witness or

14    defendant.  *See, e.g., Sangrey*, 586 F.2d at 1314-1315; *Sigal*, 572 F.2d at 1323.  A jury cannot

15    punish or otherwise hold it against Demetric that he experienced these legal issues because he is

16    no longer part of this case.

17    Finally, the Court should reject Plaintiff's suggestion that a statement "that Demetric was

18    charged with and arrested for a crime" would be sufficient for Defendant to explore the impact of

19    Demetric's criminal issues on Plaintiff.  Dkt. No. 187 (Plaintiff's Motions in Limine), 26:22-24.

20    The seriousness of Demetric's crimes, and their potential emotional impact on Plaintiff, should be

21    presented in full to allow the jury to evaluate Plaintiff's claimed emotional distress.  Indeed,

22    Demetric was arrested twice following the end of his placement with Tesla (including for several

23    felony charges), signed a plea deal in both cases, and Plaintiff purportedly spent a significant sum

24    of money to post Demetric's bail.  It would be entirely insufficient for the jury to hear only that

25    Demetric had been arrested and charged with a crime given the reality of his situation.  These

26

27

28
_____

[11] Plaintiff only seeks emotional distress and punitive damages (he is not seeking any economic damages).

1    facts, which Dr. Reading will testify about as a hired expert, put Demetric's legal situation at

2    forefront of Plaintiff's emotional distress claim.

3           Based on the foregoing, the Court should deny Plaintiff's motion *in limine* to exclude

4    evidence of Demetric's criminal history following the end of his assignment at Tesla because the

5    evidence is relevant to Plaintiff's emotional distress damages and not unduly prejudicial.

6    **III.     CONCLUSION**

7           For the foregoing reasons, Tesla respectfully requests the Court deny Plaintiff's Motions *In*

8    *Limine*.

9    Dated:  April 29, 2020                    SHEPPARD, MULLIN, RICHTER & HAMPTON
                                               LLP
10

11                                            By _____/s/ Susan Haines_____
                                                           TRACEY A. KENNEDY
12                                                         PATRICIA M. JENG
                                                           SUSAN HAINES
13

14                                               Attorneys for Defendant
                                            TESLA, INC. dba TESLA MOTORS, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28