# EXHIBIT 1

| | |
|---|---|
| **From:** | Navruz Avloni |
| **To:** | Patricia Jeng |
| **Cc:** | Cimone Nunley; Araneda, Juan; Bernard Alexander; Larry Organ; Sabrina Grislis; Adams, Vince; Schmitz, Catherine; Tracey Kennedy; Reanne Swafford-Harris; Cheryl A. Stevens; Gary Lafayette; Susan Kumagai; Fenn C. Horton III; Helene A. Simvoulakis-Panos; Geller, Jason |
| **Subject:** | Re: Di-az, et al. v. Tesla, et al: Depositions - Schedule for 10/9-10/15 |
| **Date:** | Tuesday, October 8, 2019 11:08:09 AM |

Patricia,

We estimate that Kawasaki will be under 4 hours, Delgado and Torres will be under 3 hours each.

--
**Navruz Avloni, Esq.**
*Partner*



332 San Anselmo Avenue
San Anselmo, CA 94960
Phone: (415) 453-4740
Fax: (415) 785-7352
www.CivilRightsCA.com

DISCLAIMER: This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

On Tue, Oct 8, 2019 at 10:51 AM Patricia Jeng <PJeng@sheppardmullin.com> wrote:

> Could you let us know the estimated time for each deposition, so that the parties can make any travel arrangements?
>
>
> **Patricia Jeng**
> +1 415-774-2928 | direct
> PJeng@sheppardmullin.com | Bio
>
> **Sheppard**Mullin
> Four Embarcadero Center, 17th Floor
> San Francisco, CA 94111-4109
> +1 415-434-9100 | main
> www.sheppardmullin.com | LinkedIn | Twitter
>
>
> **From:** Navruz Avloni <navruz@civilrightsca.com>
> **Sent:** Tuesday, October 8, 2019 10:49 AM
> **To:** Cimone Nunley <cimone@civilrightsca.com>
> **Cc:** Araneda, Juan <jaraneda@fisherphillips.com>; Bernard Alexander <balexander@akgllp.com>; Larry Organ <larry@civilrightsca.com>; Sabrina Grislis <sabrina@civilrightsca.com>; Adams, Vince <vadams@fisherphillips.com>; Schmitz, Catherine <cschmitz@fisherphillips.com>; Patricia Jeng <PJeng@sheppardmullin.com>; Tracey Kennedy <TKennedy@sheppardmullin.com>; Reanne Swafford-Harris <RSwafford-Harris@sheppardmullin.com>; Cheryl A. Stevens <cstevens@lkclaw.com>; Gary Lafayette <glafayette@lkclaw.com>; Susan Kumagai <skumagai@lkclaw.com>; Fenn C. Horton III <fhorton@pahl-mccay.com>; Helene A. Simvoulakis-Panos <hsimvoulakis@pahl-mccay.com>; Geller, Jason <jgeller@fisherphillips.com>
> **Subject:** Re: Di-az, et al. v. Tesla, et al: Depositions - Schedule for 10/9-10/15

Counsel,

As Cimone mentioned, Kawasaki, Delgado and Torres have been served with subpoenas and we're planning to proceed with their depositions as scheduled. We will update you on the other two witnesses shortly.

--

**Navruz Avloni, Esq.**

*Partner*



332 San Anselmo Avenue
San Anselmo, CA 94960
Phone: (415) 453-4740
Fax: (415) 785-7352
www.CivilRightsCA.com

DISCLAIMER: This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

On Tue, Oct 8, 2019 at 10:31 AM Cimone Nunley <cimone@civilrightsca.com> wrote:

> Juan,
>
> To date, the following deponents have been served with notices:
>
> Tomotsu Kawasaki (10/9)
>
> Jackelin Delgado (10/10)
>
> Josue Torres (10/14)
>
> We'll update you ASAP as we continue to confirm witnesses and dates.
>
> If you wish to appear remotely for the Delgado deposition, you can use the Zoom meeting out court reporter has set up. The information is as follows:
>
> Join Zoom Meeting
> https://zoom.us/j/554817630
>
> Meeting ID: 554 817 630

One tap mobile
+16699006833,,554817630# US (San Jose)
+16468769923,,554817630# US (New York)

Dial by your location
        +1 669 900 6833 US (San Jose)
        +1 646 876 9923 US (New York)
Meeting ID: 554 817 630


I'll update you with remote appearance info for the Torres deposition as soon as we are able.


Warm regards,




**Cimone Nunley**

*Associate Attorney*

**Preferred Pronouns: She/Her/Hers**



**332 San Anselmo Avenue**
**San Anselmo, CA 94960**
**SF: (415) 453-4740**
**OAK: (510) 978-4880**
**SJ: (408) 471-6914**
**Fax: (415) 785-7352**
www.CivilRightsCA.com

**DISCLAIMER: This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.**




On Mon, Oct 7, 2019 at 6:24 PM Araneda, Juan <jaraneda@fisherphillips.com> wrote:

> Hi Navruz –
>
>
> Please let us know if the deposition schedule in your October 3 email below is confirmed.  If so, we would like to arrange for attendance via either video or telephone conference for the out-of-town depositions.  Please provide the contact information for the court reporters.

Thank you,

Juan



**Juan Araneda**
Attorney at Law

Fisher & Phillips LLP
One Embarcadero Center | Suite 2050 | San Francisco, CA 94111
jaraneda@fisherphillips.com | O: (415) 490-9012

vCard  |  Bio  |  Website   *On the Front Lines of Workplace Law*℠

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error, then immediately delete this message.*

**From:** Patricia Jeng [mailto:PJeng@sheppardmullin.com]
**Sent:** Friday, October 4, 2019 4:14 PM
**To:** Navruz Avloni <navruz@civilrightsca.com>; Tracey Kennedy <TKennedy@sheppardmullin.com>; Reanne Swafford-Harris <RSwafford-Harris@sheppardmullin.com>; Cheryl A. Stevens <cstevens@lkclaw.com>; Gary Lafayette <glafayette@lkclaw.com>; Susan Kumagai <skumagai@lkclaw.com>; Fenn C. Horton III <fhorton@pahl-mccay.com>; Helene A. Simvoulakis-Panos <hsimvoulakis@pahl-mccay.com>; Araneda, Juan <jaraneda@fisherphillips.com>; Geller, Jason <jgeller@fisherphillips.com>
**Cc:** Bernard Alexander <balexander@akgllp.com>; Larry Organ <larry@civilrightsca.com>; Cimone Nunley <cimone@civilrightsca.com>; Sabrina Grislis <sabrina@civilrightsca.com>
**Subject:** RE: Di-az, et al. v. Tesla, et al: Depositions - Schedule for 10/9-10/15

Hi Navruz - Yes, please proceed.

**Patricia Jeng**
+1 415-774-2928 | direct
PJeng@sheppardmullin.com | Bio

**Sheppard**Mullin
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
+1 415-434-9100 | main
www.sheppardmullin.com | LinkedIn | Twitter

**From:** Navruz Avloni <navruz@civilrightsca.com>
**Sent:** Thursday, October 3, 2019 11:38 AM
**To:** Tracey Kennedy <TKennedy@sheppardmullin.com>; Reanne Swafford-Harris <RSwafford-Harris@sheppardmullin.com>; Patricia Jeng <PJeng@sheppardmullin.com>; Cheryl A. Stevens <cstevens@lkclaw.com>; Gary Lafayette <glafayette@lkclaw.com>; Susan Kumagai <skumagai@lkclaw.com>; Fenn C. Horton III <fhorton@pahl-mccay.com>; Helene A. Simvoulakis-Panos <hsimvoulakis@pahl-mccay.com>; Araneda, Juan <jaraneda@fisherphillips.com>; Geller, Jason <jgeller@fisherphillips.com>
**Cc:** Bernard Alexander <balexander@akgllp.com>; Larry Organ <larry@civilrightsca.com>; Cimone Nunley <cimone@civilrightsca.com>; Sabrina Grislis <sabrina@civilrightsca.com>

**Subject:** Di-az, et al. v. Tesla, et al: Depositions - Schedule for 10/9-10/15

Counsel,

In light of the recent Order, Plaintiffs will be taking depositions of the below listed witnesses. Amended notices and subpoenas will be going out today. Please disregard the notices served on Tuesday.

Counsel for Tesla, please advise if you will be representing Erin Marconi and Josue Torres, and accepting a subpoena on their behalf. We will proceed with personally serving the individuals unless we hear otherwise.

| Date | Time | Name | Location |
|------|------|------|----------|
| 10/9 | 2pm | Tom Kawasaki | California Civil Rights Law Group<br><br>180 Grand Ave Suite 1380<br><br>Oakland, CA 94612 |
| 10/10 | 10am | Jackelin Delgado | TBD in AZ |
| 10/11 | 10am | Veronica Martinez | California Civil Rights Law Group<br><br>180 Grand Ave Suite 1380<br><br>Oakland, CA 94612 |
| 10/14 | 11am | Josue Torres | Berger, Williams & Reynolds LLP<br><br>Wells Fargo Plaza, 401 B St #2000,<br><br>San Diego, CA 92101 |
| 10/15 | 11am | Erin Marconi | Alexander Krakow & Glick<br><br>1900 Avenue of the Stars, Suite 900<br><br>Los Angeles, California 90067 |

--

**Navruz Avloni, Esq.**

*Partner*



332 San Anselmo Avenue
San Anselmo, CA 94960
Phone: (415) 453-4740
Fax: (415) 785-7352
www.CivilRightsCA.com

DISCLAIMER: This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential. If you are not an intended recipient, you may not review, copy or distribute this message. If you

**have received this communication in error, please notify us immediately by e-mail and delete the original message.**

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

```
DEMETRIC DIAZ, et al.,          )
                                )
               Plaintiffs,      )
                                )  Case No.
          v.                    )  3:17-cv-06748-WHO
                                )
TESLA, INC., et al.,            )
                                )
               Defendants.      )
_____)
```

VIDEOTAPED DEPOSITION OF ANDRES DONET

DATE:              Thursday, October 24, 2019

TIME:              4:39 p.m.

LOCATION:          Sheppard, Mullin, Richter &
                   Hampton LLP
                   379 Lytton Avenue
                   Palo Alto, California  94301


REPORTED BY:       Peter Torreano, CSR, CRR
                   Certified Shorthand Reporter
                   License Number C-7623

```
 1                 A P P E A R A N C E S:

 2     For the Plaintiffs:

 3             California Civil Rights Law Group
               By:  LAWRENCE A. ORGAN
 4             larry@civilrightsca.com
               332 San Anselmo Avenue
 5             San Anselmo, CA 94960
               (415) 453-4740
 6
       For the Tesla Defendants and the Deponent:
 7
               Sheppard, Mullin, Richter & Hampton LLP
 8             By:  SAMI HASAN
               shasan@sheppardmullin.com
 9             Four Embarcadero Center
               Fourteenth Floor
10             San Francisco, California  94111
               (415) 774-3286
11
       For Defendant NextSource, Inc.:
12     (Telephonically)

13             Fisher & Phillips LLP
               By:  VINCENT J. ADAMS
14             vadams@fisherphillips.com
               One Embarcadero Center
15             Suite 2050
               San Francisco, California  94111
16             (415) 490-9000


18

19

20

21

22

23

24

25
```

1                    EXAMINATION INDEX

2

   ANDRES DONET                                      PAGE
3
        BY MR. ORGAN . . . . . . . . . . . . . . . . 6
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    REPORTER'S CERTIFICATE

 2           I, Peter Torreano, duly authorized to

 3   administer oaths pursuant to Section 2093(b) of the

 4   California Code of Civil Procedure, do hereby certify:

 5           That the witness in the foregoing deposition

 6   was administered an oath to testify to the whole truth

 7   in the within-entitled cause; that said deposition was

 8   taken at the time and place therein cited; that the

 9   testimony of the said witness was reported by me and

10   was thereafter transcribed under my direction into

11   typewriting; that the foregoing is a full and

12   accurate record of said testimony; and that the witness

13   was given an opportunity to read and correct said

14   deposition and to subscribe the same.

15           Pursuant to Federal Rule 30(e), transcript

16   review was requested.

17           I further certify that I am not of counsel nor

18   attorney for any of the parties in the foregoing

19   deposition and caption named nor in any way interested

20   in the outcome of the cause named in said caption.

21                          Dated:  November 2, 2019

22

23

24                          _____
                            PETER TORREANO, CSR NO. 7623
25
```

# EXHIBIT 3

1
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
2
TRACEY A. KENNEDY, Cal. Bar No. 150782
3
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
4
Telephone:     213-620-1780
Facsimile:      213-620-1398
5
Email:           tkennedy@sheppardmullin.com

6
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
7
PATRICIA M. JENG, Cal. Bar No. 272262
8
REANNE SWAFFORD-HARRIS, Cal. Bar No. 305558
Four Embarcadero Center, 17th Floor
9
San Francisco, California 94111-4109
Telephone:     415.434.9100
10
Facsimile:      415.434.3947
Email:           pjeng@sheppardmullin.com
11
                    rswafford-harris@sheppardmullin.com

12
Attorneys for Defendant,
TESLA, INC. DBA TESLA MOTORS, INC.
13

14

15
**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
16

17

18
DEMETRIC DI-AZ, OWEN DIAZ AND LAMAR PATTERSON

19
                    Plaintiffs,

20
          v.

21
TESLA, INC. DBA TESLA MOTORS, INC., CITISTAFF SOLUTIONS, INC.;
22
WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES,
23
INC.; NEXTSOURCE, INC.; and DOES 1-10, inclusive

24
                    Defendants.

25

26

27

28

Case No. 17-cv-06748-WHO

**DEFENDANT TESLA, INC. DBA TESLA MOTORS, INC.'S RESPONSE TO PLAINTIFF OWEN DIAZ'S INTERROGATORIES, SET THREE**

Amended Complaint Filed:  December 26, 2018
Trial Date:                       November 18, 2019

-1-

1  rights and confidentiality of third-party non-litigants and/or current or former employees of

2  Defendant.  Defendant further objects to the extent this interrogatory seeks information that is not

3  relevant to the claims or defenses and/or proportional to the needs of the case, considering the

4  importance of the issues at stake in the action, the amount in controversy, the parties' relative

5  access to relevant information, the parties' resources, the importance of the discovery in resolving

6  the issues, and whether the burden or expense of the proposed discovery outweighs its likely

7  benefit.  Defendant objects that this interrogatory lacks foundation, and assumes facts not in

8  evidence, particularly, that Victor Quintero had an assigned schedule of "hours worked," and/or

9  recorded the same.  Defendant further objects to the extent this interrogatory necessitates the

10  preparation or the making of a compilation, abstract, audit, or summary.

11       Subject to and without waiving any objections, Defendant responds as follows:  Victor

12  Quintero's position is Manager, Recycling Services from May 12, 2015 through the date of this

13  response.

14  **INTERROGATORY NO. 18:**

15       Please DESCRIBE in comprehensive detail each position Ramon Martinez held during his

16  employment at the TESLA FACTORY. (For the purposes of responding to this interrogatory, the

17  term "DESCRIBE" means to list, for each position, the job title, job duties, hours worked, and

18  dates the position was held.)

19  **RESPONSE TO INTERROGATORY NO. 18:**

20       Defendant objects to this interrogatory on the grounds that it is vague and ambiguous as to

21  the term(s) and/or phrase(s): "comprehensive detail," "position," and "employment at TESLA

22  FACTORY."  Defendant further objects that this interrogatory is not limited in time or scope, and

23  thus is overbroad, unduly burdensome, oppressive, and harassing.  Defendant further objects to the

24  extent this interrogatory is invasive of the privacy rights and confidentiality of third-party non-

25  litigants and/or current or former employees of Defendant.  Defendant further objects to the extent

26  this interrogatory seeks information that is not relevant to the claims or defenses and/or

27  proportional to the needs of the case, considering the importance of the issues at stake in the

28  action, the amount in controversy, the parties' relative access to relevant information, the parties'

1  resources, the importance of the discovery in resolving the issues, and whether the burden or

2  expense of the proposed discovery outweighs its likely benefit.  Defendant objects that this

3  interrogatory lacks foundation, and assumes facts not in evidence, particularly, that Ramon

4  Martinez had an assigned schedule of "hours worked," and/or recorded the same.  Defendant

5  further objects to the extent this interrogatory necessitates the preparation or the making of a

6  compilation, abstract, audit, or summary.

7        Subject to and without waiving any objections, Defendant responds as follows:  Ramon

8  Martinez was not employed by Tesla during the time that plaintiff Owen Diaz or Plaintiff

9  Demetric Di-az worked at Tesla.  Ramon Martinez's position from January 14, 2019 to the date of

10  this response is Lead Material Handler.

11  **INTERROGATORY NO. 19:**

12        Please DESCRIBE in comprehensive detail each position Joyce DelaGrande has held

13  during her employment at the TESLA FACTORY. (For the purposes of responding to this

14  interrogatory, the term "DESCRIBE" means to list, for each position, the job title, job duties,

15  hours worked, and dates the position was held.)

16  **RESPONSE TO INTERROGATORY NO. 19:**

17        Defendant objects to this interrogatory on the grounds that it is vague and ambiguous as to

18  the term(s) and/or phrase(s): "comprehensive detail," "position," and "employment at TESLA

19  FACTORY."  Defendant further objects that this interrogatory is not limited in time or scope, and

20  thus is overbroad, unduly burdensome, oppressive, and harassing.  Defendant further objects to the

21  extent this interrogatory is invasive of the privacy rights and confidentiality of third-party non-

22  litigants and/or current or former employees of Defendant.  Defendant further objects to the extent

23  this interrogatory seeks information that is not relevant to the claims or defenses and/or

24  proportional to the needs of the case, considering the importance of the issues at stake in the

25  action, the amount in controversy, the parties' relative access to relevant information, the parties'

26  resources, the importance of the discovery in resolving the issues, and whether the burden or

27  expense of the proposed discovery outweighs its likely benefit.  Defendant objects that this

28  interrogatory lacks foundation, and assumes facts not in evidence, particularly, that Joyce

1         Subject to and without waiving any objections, Defendant responds as follows:  Not

2   applicable.

3

4   Dated:  May 24, 2019               SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

5

6                                  By:  _____

7                                       TRACEY A. KENNEDY

                                      PATRICIA M. JENG

8                                    REANNE SWAFFORD-HARRIS

9                                   Attorneys for Defendant

                         TESLA, INC. dba TESLA MOTORS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4850-8836-2648.1

## CERTIFICATE OF SERVICE

*Demetric Di-Az, et al. v. Tesla, Inc., et al.*
USDC, Northern District of California, Case No. 3:17-cv-06748-WHO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is Four Embarcadero Center, 17th Floor, San Francisco, CA 94111-4109.

On May 24, 2019, I served true copies of the following document(s) described as:

**DEFENDANT TESLA, INC. DBA TESLA MOTORS, INC.'S RESPONSE TO PLAINTIFF OWEN DIAZ'S INTERROGATORIES, SET THREE**

on the interested parties in this action as follows:

### SEE SERVICE LIST

☒ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred.

☐ **BY FAX TRANSMISSION:** I faxed a copy of the document(s) to the persons at the fax numbers listed in the Service List. The telephone number of the sending facsimile machine was 415.434.3947. The transmission was reported as complete and without error. No error was reported by the fax machine that I used. A transmission report was properly issued by the sending fax machine.

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address eruiz@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

☐ **BY PERSONAL SERVICE:** I personally delivered the document(s) to the person at the addresses listed in the Service List. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 24, 2019, at San Francisco, California.

_____

Elena E. Ruiz

Case No. 3:17-cv-06748-WHO
CERTIFICATE OF SERVICE

1

### SERVICE LIST

2 | Lawrence A. Organ, Esq. | Attorneys for Plaintiffs
Navruz Avloni, Esq. | DEMETRIC DI-AZ and OWEN DIAZ
3 | **CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
4 | San Anselmo, CA 94960
Telephone:      415-453-4740
5 | Facsimile:      415-785-7352]
Email:          larry@civiilrightsca.com
6 |                 navruz@civilrightsca.com

7 | Gary T. Lafayette, Esq. | Attorneys for Defendant
Cheryl A. Stevens, Esq. | CITISTAFF SOLUTIONS, INC.
8 | **LAFAYETTE & KUMAGAI**
1300 Clay Street, Suite 810
9 | Oakland, CA 94612
Telephone:      415-357-4600
10 | Email:          glafayette@lkclaw.com
                cstevens@lkclaw.com

11

12 | Jason A. Geller, Esq. | Attorneys for Defendant
Juan C. Araneda, Esq. | NEXTSOURCE, INC.
Aaron D. Langberg, Esq.
13 | **FISHER & PHILLIPS LLP**
One Embarcadero Center, Suite 2050
14 | San Francisco, CA 94111
Telephone:      415-490-9000
15 | Facsimile:      415-490-9001
Email:          jgeller@fisherphillips.com
16 |                 jaraneda@fisherphillips.com
                alangberg@fisherphillips.com

17

18 | Fenn C. Horton III, Esq. | Attorneys for Defendant
Helene Simvoulakis-Panos, Esq. | WEST VALLEY STAFFING GROUP
19 | **PAHL & McCAY**
225 West Santa Clara Street, Suite 1500
20 | San Jose, CA 95113
Telephone:      408-286-5110
21 | Facsimile:      408-286-5722
Email:          fhorton@pahl-mccay.com
22 |                 hsimvoulakis@pahl-mccay.com

23

24

25

26

27

28

Case No. 3:17-cv-06748-WHO
SMRH:4850-8836-2648.1                                          CERTIFICATE OF SERVICE

# EXHIBIT 4

| | |
|---|---|
| **From:** | Jackson, Wayne <wjackson@nextsource.com> |
| **To:** | Victor Quintero; Josue Torres; Jeff Lalich |
| **CC:** | Garrett, Terri |
| **Sent:** | 1/25/2016 2:06:37 PM |
| **Subject:** | FW: NextSource Ramon Martinez Status Update |
| **Importance:** | High |
| **Attachments:** | Alleged Victim-Statement (Owen).pdf; Alleged Harasser-Statement (Ramon).pdf |

Hi Victor here are the result of the investigation conducted by Chartwell.  They have done a final written warning for Ramon and he has been placed on a 3 day suspension as a result.  He will  be eligible to return to his duties on Wednesday.

**From:** Veronica Martinez [mailto:veronica.martinez@chartwellstaff.com]
**Sent:** Monday, January 25, 2016 1:26 PM
**To:** Jackson, Wayne <wjackson@nextsource.com>
**Cc:** Jackelin Delgado <jackelin.delgado@chartwellstaff.com>; Jessy Meneses <jessy.meneses@chartwellstaff.com>; Garrett, Terri <tgarrett@nextsource.com>
**Subject:** FW: NextSource
**Importance:** High

Wayne,

As per our conversation this afternoon. I have attach the forms that I have received from my HR department. Ramon will be placed in corrective action and will  be given a final written warning. I will be calling Ramon in today so he can sign documentation. Once you are able to speak with Victor we can have Ramon go back to work on Wednesday at his normal start time.

Thanks
Veronica

**From:** Jackelin Delgado
**Sent:** Monday, January 25, 2016 11:07 AM
**To:** Veronica Martinez <veronica.martinez@chartwellstaff.com>
**Cc:** Jessy Meneses <jessy.meneses@chartwellstaff.com>
**Subject:** NextSource
**Importance:** High

Good Morning Veronica,

Attached you will find both statements from the alleged accuser and the alleged harasser. I reached out to Monica De Leon (Branch Manager) from Citistaff and she gave me permission to interview Mr. Owen. After reviewing both statements, we want to ensure a safe and harassment-free workplace for all of our employees. With this being said we will be sure to place Mr. Ramon on Corrective Action.

Does Mr. Ramon and Mr. Owen work in separate departments? He is concerned for his safety and would not feel comfortable working with Mr. Ramon. Will this be a reasonable recommendation to have both employees work apart.

If you can reach out to the client and see how we can all work together to come to a resolution and close this investigation, this would be great.

On our end, Ramon will be returning the branch office and he will be placed on corrective action-with a final warning for harassment in the workplace due to offensive behavior.
Which I will send to you after you have spoken to the client along with additional forms to go over with Mr. Ramon.

Let me know what else you need from our end. But for now we await on the client's point of view. We will

CONFIDENTIAL

proceed from there.

Thank you for your help.

**Jackelin Delgado**
Vice President of Human Resources





**Web:** www.ChartwellStaff.com
**Phone:**(510)314-0381 Ext.304 **Cell:**(408)355-0366
**Email:** Jackelin.Delgado@ChartwellStaff.com

This email, its contents, and any files transmitted with it are confidential, may be legally privileged or protected, and are intended solely for the use of the individual(s) to whom the email is addressed.  If you received this email in error or are not the intended recipient, you may not forward, use, reproduce, disclose, or distribute this message, its contents, or its attachments for any purpose.  In such case, please notify me immediately and then delete the message.

TESLA-0000731



**Chartwell Staffing Solutions**™

Alleged Harasser-Investigation Questions

Today's Date: 01/22/16

1. What are your thoughts on the allegation?

   I understand tha what I draw It's
   Was not OK but I never try to
   offend No Body.

2. Why would the alleged victim make such claims?

   I dont know like I say want
   I draw it I never mean nothing
   bad.

3. Are there any notes, physical evidence or other documentation to refute the claim?

   Yes a picture that I draw



CONFIDENTIAL

TESLA-0000732

4. Were there any other people present when the incident occurred?

When I draw No bodys wos around me

5. Do you know any other people with pertinent information?

Yes after owen saw the picture. Israel Zuñiga and Michael Wheeler. where with us

For additional notes:

In our area at work we process carbowel. and one of the coworker (Worseslaa) he draw a picture of a pac-man Chasing two little ghoes. and on the pac-man top he draw a Swiny shift name and in the two little ghoes he punt morning and grave yard Shift, because he wos playing on the way and he's Shift it is more organized and so I draw the Carnival Just to let him know that my Shif (grave yard) can be beter that he's Shift.

2



and I wrong the word (booo) to ... ...
I never try to offend nobody with this
draw and went Israel show up to
the area where I was (Q22) and ask
me if I know who draw that on the
basic of corboard I say it was me,
he told me that (Owen) was really
upsed about it the I say (wow) I never
thing that it can be that bad
So I went to see Owen and he was
walking with mike (wheeler) (believe
to see me.
So I tell him Owen Im sorry I did
draw the picture and never mean nothin
bad I explain him all about it and
he tell me that white people use it
for other porposes, but he understand
that caming from me # ei it nob be bad.
I raplay please forget me and I apologran
to him again
he also mantion to me that he was about to
send a e-mail to the office but because
it was me he understand that my neaning
on the picture that I draw wasn't bad
and he was or he dalet the e-mail

X Ramon Martinez

time  4:30

1/22/16

TESLA-0000734

# Chartwell Staffing Solutions™

✗ Spoke to Monica Deleon Branch Mgr.    9:58am
Citi Staff →    10:00am
Granted HR-VP
permission to speak to Mr. Omar.

Alleged Victim-Investigation Questions    Today's Date: 1/25/2016

1. What occurred?

Working over at elevator (1) (because he is the lead at Elev.(1))
Pallet writer / Corboard bale wrapped in wire. When he went
to lift the bale, he said that the picture was there for
him to see. He took a picture of it right away and
called Micheal Wheeler and Isreal and they both took pictures
attached.

2. Who committed the alleged harassment?

The alleged Harrassment was committed by Ramon

3. When and where did the harassment occur?

The drawing was done on the corboard from the
recycle center



CONFIDENTIAL

TESLA-0000735

4.   How often has the offensive behavior occurred?

Owen mentioned history that happened in in elevator. He was not aware nor was Veronica Branch manager. The email was sent to Wayne Jackson (supervisor).

5.   How did it affect you and how did you react?

My stomach dropped

6.   Has your job been affected?

Yes. I look around behind my back when I pick-up balers and I don't feel safe.

7.   Were there any other people present when the incident occurred?

No just myself.



CONFIDENTIAL

8. Are there any other notes, physical evidence or other documentation to support the harassment claim?

Yes, the drawing on the cardboard and the pictures we took and my email that I sent to client

9. Do you know any other pertinent information?

No

10. How would you like to see the information resolved?

He should be terminated. I do not trust him.

For additional notes:

- Afraid of retaliation
- Sent an e-mail with picture to client supervisors
- feel that picture was racial statement (jigaboo).



# EXHIBIT 5

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3

4    --------------------------------
                                          REPORTER CERTIFIED
5    DEMETRIC DI-AZ, OWEN DIAZ and              TRANSCRIPT
     LAMAR PATTERSON, an individual,
6

7             Plaintiffs,              **CONFIDENTIAL**

8        vs.                          No. 3:17-cv-06748-WHO
                                      VOL II, pgs 187 - 292
9
     TESLA, INC. DBA TESLA MOTORS,
10   INC.; CITISTAFF SOLUTIONS,
     INC.; WEST VALLEY STAFFING
11   GROUP; CHARTWELL STAFFING
     SERVICES, INC. and DOES 1-10,
12   inclusive,

13            Defendants.

14   --------------------------------

15

16            CONFIDENTIAL

17        VIDEOTAPED DEPOSITION OF

18            OWEN DIAZ

19        SAN FRANCISCO, CALIFORNIA

20        MONDAY, DECEMBER 3, 2018

21

22

23   Reported by:

24   GINA V. CARBONE, CSR #8249
     RPR, RMR, CRR, CCRR
25   FILE NO.:  18-27207

CHASE
LITIGATION SERVICES

| | | |
|---|---|---|
| 11:55:16 | 1 | MR. ORGAN:  Objection.  Calls for a legal |
| 11:55:17 | 2 | conclusion. |
| 11:55:20 | 3 | You can answer. |
| 11:55:25 | 4 | THE WITNESS:  Threatened to demote me. |
| 11:55:40 | 5 | Just basically threatened me with my job is the |
| 11:55:43 | 6 | bottom line. |
| 11:55:43 | 7 | BY MS. ANTONUCCI: |
| 11:55:44 | 8 | Q.  And who did that? |
| 11:55:58 | 9 | A.  I spoke to Ed Romero and Wayne Jackson. |
| 11:56:01 | 10 | Q.  No, who threatened to demote you? |
| 11:56:09 | 11 | A.  Ed Romero and Wayne Jackson. |
| 11:56:15 | 12 | Q.  Anyone else? |
| 11:56:23 | 13 | A.  The ones I spoke to, Ed Romero and Wayne |
| 11:56:25 | 14 | Jackson. |
| 11:56:26 | 15 | Q.  Any other way in which you feel that you |
| 11:56:28 | 16 | were retaliated against for complaining about the |
| 11:56:29 | 17 | conduct you endured while at Tesla? |
| 11:56:32 | 18 | MR. ORGAN:  Objection.  Calls for a legal |
| 11:56:33 | 19 | conclusion. |
| 11:56:58 | 20 | THE WITNESS:  I don't know.  I don't know |
| 11:57:04 | 21 | the answer to that. |
| 11:57:05 | 22 | BY MS. ANTONUCCI: |
| 11:57:05 | 23 | Q.  Why don't you know how to answer that |
| 11:57:08 | 24 | question?  You just answered it before. |
| 11:57:11 | 25 | A.  Yeah, he threatened me with my job, but you |

| | | |
|---|---|---|
| 11:59:50 | 1 | with it? |
| 11:59:51 | 2 | A.  Oh, excuse me.  I'm sorry. |
| 11:59:53 | 3 | Q.  Go ahead. |
| 11:59:53 | 4 | A.  The person whoever I tagged into the email. |
| 11:59:56 | 5 | Q.  And which email was that? |
| 12:00:01 | 6 | A.  Complaining about the -- complaining about |
| 12:00:03 | 7 | the harassment and the picaninny. |
| 12:00:07 | 8 | Q.  The email about the drawing? |
| 12:00:08 | 9 | A.  Yes. |
| 12:00:16 | 10 | Q.  Anyone else caused you emotional distress? |
| 12:00:25 | 11 | MR. ORGAN:  Objection.  Vague and |
| 12:00:26 | 12 | ambiguous. |
| 12:00:42 | 13 | THE WITNESS:  Some of the things that |
| 12:00:44 | 14 | I've -- that I've read from the company CEO calling |
| 12:00:57 | 15 | me a barnacle, telling me that I was less educated. |
| 12:01:08 | 16 | That I should have thicker skin. |
| 12:01:32 | 17 | BY MS. ANTONUCCI: |
| 12:01:32 | 18 | Q.  Are you referring to the email that the |
| 12:01:37 | 19 | company CEO sent out to all employees? |
| 12:01:41 | 20 | A.  Yes. |
| 12:01:49 | 21 | Q.  Anything else? |
| 12:01:52 | 22 | A.  Not at this particular moment, no. |
| 12:01:55 | 23 | Q.  Can you describe the emotional distress |
| 12:01:57 | 24 | that you suffered as a result of the conduct that |
| 12:02:00 | 25 | you endured at the Tesla factory. |

| | | |
|---|---|---|
| 12:02:07 | 1 | MR. ORGAN:  Objection.  Calls for a |
| 12:02:09 | 2 | narrative. |
| 12:02:13 | 3 | You can answer. |
| 12:02:14 | 4 | THE WITNESS:  Lack of sleep, watching my |
| 12:02:18 | 5 | son change to not being a trusting person, having my |
| 12:02:34 | 6 | faith in my fellow man destroyed.  Being able to -- |
| 12:02:54 | 7 | being able not to be there as a protecter for my |
| 12:02:58 | 8 | family that I'm supposed to be. |
| 12:03:03 | 9 | To watch my son have to endure something |
| 12:03:10 | 10 | that I thought he would never have to endure. |
| 12:03:26 | 11 | MS. ANTONUCCI:  Do you need to take a |
| 12:03:27 | 12 | break? |
| 12:03:27 | 13 | THE WITNESS:  Yes. |
| 12:03:28 | 14 | THE VIDEOGRAPHER:  Going off the record. |
| 12:03:29 | 15 | The time is 12:03 p.m. |
| 12:03:31 | 16 | (Recess taken.) |
| 12:07:22 | 17 | THE VIDEOGRAPHER:  Back on the record.  The |
| 12:07:23 | 18 | time is 12:07 p.m. |
| 12:07:26 | 19 | BY MS. ANTONUCCI: |
| 12:07:26 | 20 | Q.  So what symptoms have you experienced as a |
| 12:07:29 | 21 | result of the conduct that you suffered at the Tesla |
| 12:07:34 | 22 | factory? |
| 12:07:42 | 23 | A.  It affected my relationship with my wife. |
| 12:07:52 | 24 | It made me feel less than a man.  It made me feel |
| 12:07:58 | 25 | that all the hard work that I was doing just didn't |

1    I, GINA V. CARBONE, CSR No. 8249, RPR, RMR, CRR,

2  CCRR, certify: that the foregoing proceedings were taken

3  before me at the time and place herein set forth; at

4  which time the witness was duly sworn; and that the

5  transcript is a true record of the testimony so given.

6

7    Witness review, correction and signature was

8  (X) by code.                (X) requested.

9  ( ) waived.                 ( ) not requested.

10 ( ) not handled by the deposition officer due to party

11 stipulation.

12

13    The dismantling or unbinding of the original

14 transcript will render the reporter's certificate null

15 and void.

16    I further certify that I am not financially

17 interested in the action, and I am not a relative or

18 employee of any attorney of the parties, nor of any of

19 the parties.

20    Dated this 7th  day of December  , 2018  .

21

22    _____

23    GINA V. CARBONE
      CSR #8249, STATE OF CALIFORNIA

24

25

# EXHIBIT 6

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3

4
                                   **REPORTER CERTIFIED**
5    _____        **TRANSCRIPT**

6    DEMETRIC DI-AZ, OWEN DIAZ and
     LAMAR PATTERSON, an individual,
7                                      **CONFIDENTIAL**
            Plaintiffs,
8
     Vs.                    Case No. 3:17-cv-06748-WHO
9
     TESLA, INC. DBA TESLA MOTORS,
10   INC.; CitiStaff SOLUTIONS, INC.;
     WEST VALLEY STAFFING GROUP;
11   CHARTWELL STAFFING SERVICES, INC.
     and DOES 1-10, inclusive,
12
            Defendants.
13   _____/

14

15
                  CONFIDENTIAL
16
            VIDEOTAPED DEPOSITION OF
17
                  OWEN DIAZ
18
          SAN FRANCISCO, CALIFORNIA
19
           TUESDAY, MAY 22, 2018
20

21

22

23

24   Reported By:
     Candy Newland
     CSR No. 14256
25   File No. 18-25470

**Owen Diaz-Confidential**

| | | |
|---|---|---|
| 12:53:24 | 1 | BY MS. ANTONUCCI: |
| 12:53:30 | 2 | Q.      Mr. Diaz, before we broke for lunch, we were |
| 12:53:33 | 3 | discussing the times in which Ramon you claim called you |
| 12:53:39 | 4 | the N-word, and you had indicated that there were more |
| 12:53:45 | 5 | than 30 occasions.  You had also indicated that there |
| 12:53:50 | 6 | were three contexts you could remember.  "I hate you N, |
| 12:53:56 | 7 | Ns are not shit," and "Wish he could get all us Ns |
| 12:54:05 | 8 | fired"; right? |
| 12:54:05 | 9 | A.      Yes, ma'am. |
| 12:54:06 | 10 | Q.      Are there any other contexts in which you can |
| 12:54:10 | 11 | remember Ramon using the N-word? |
| 12:54:13 | 12 | A.      Not that I can recall at this time. |
| 12:54:16 | 13 | Q.      Okay.  With respect to "Ns are not shit," where |
| 12:54:21 | 14 | did Ramon say that to you? |
| 12:54:29 | 15 | A.      I believe we were in the elevator. |
| 12:54:40 | 16 | Q.      And were there any witnesses? |
| 12:54:45 | 17 | A.      Rothaj Foster was there about that time. |
| 12:54:53 | 18 | Q.      Who's that? |
| 12:54:53 | 19 | A.      Rothaj Foster. |
| 12:55:02 | 20 | Q.      And that's R-O-T-H-A [sic]? |
| 12:55:05 | 21 | A.      I don't know the exact spelling. |
| 12:55:08 | 22 | Q.      Okay.  And is Rothaj Foster an African-American |
| 12:55:13 | 23 | man? |
| 12:55:13 | 24 | A.      Yes. |
| 12:55:22 | 25 | Q.      Was anyone else there at the time that Ramon |

**Owen Diaz-Confidential**

| | | |
|---|---|---|
| 02:47:31 | 1 | A.      Not that I can recall at this moment. |
| 02:47:35 | 2 | Q.      Did he ever intimidate you? |
| 02:47:41 | 3 | A.      Not that I can recall at this moment. |
| 02:48:04 | 4 |         (EXHIBIT 6 was marked for identification.) |
| 02:48:04 | 5 | BY MS. ANTONUCCI: |
| 02:48:12 | 6 | Q.      Exhibit 6 is a string of e-mails between Ed |
| 02:48:12 | 7 | Romero, Victor Quintero, and Jaime Salazar. |
| 02:48:22 | 8 |         Do you recall receiving -- I'm sorry.  They are |
| 02:48:24 | 9 | Bates-stamped at the bottom 308 to 309. |
| 02:48:29 | 10 |         Do you recall receiving a verbal warning from Ed |
| 02:48:34 | 11 | Romero in or around October 2nd of 2015? |
| 02:48:39 | 12 | A.      Not that I can recall. |
| 02:48:48 | 13 | Q.      It says here, "Victor" -- do you know who Victor |
| 02:48:52 | 14 | Cantaro is? |
| 02:48:55 | 15 | A.      It's Ed Romero's boss. |
| 02:48:59 | 16 | Q.      It says here, "Victor, Jaime, and myself met |
| 02:49:03 | 17 | today to discuss with Owen Diaz a number of issues |
| 02:49:06 | 18 | dealing with Owen's negative interaction with other |
| 02:49:11 | 19 | recycle employees." |
| 02:49:12 | 20 |         Do you see that? |
| 02:49:12 | 21 | A.      Yes. |
| 02:49:13 | 22 | Q.      Do you remember meeting with Jaime and Ed Romero |
| 02:49:16 | 23 | to discuss your negative interactions with other recycle |
| 02:49:22 | 24 | employees? |
| 02:49:22 | 25 | A.      Not that I can recall. |

**Owen Diaz-Confidential**

| | | |
|---|---|---|
| 02:49:27 | 1 | Q.        It says, "We received a number of complaints |
| 02:49:29 | 2 | from Hilda Navarro, Aron Deharto, and Jessie Leite. |
| 02:49:29 | 3 | They express their complaints regarding Owen's temper, |
| 02:49:43 | 4 | lack of professionalism, bad communication, and |
| 02:49:46 | 5 | gossiping about them to other employees." |
| 02:49:47 | 6 |          Do you see that? |
| 02:49:47 | 7 | A.        Yes. |
| 02:49:48 | 8 | Q.        Did Ed ever speak to you about your temper? |
| 02:49:56 | 9 | A.        Not that I can recall. |
| 02:49:57 | 10 | Q.        Did Ed ever speak to you about your lack of |
| 02:50:01 | 11 | professionalism? |
| 02:50:01 | 12 | A.        Not that I can recall. |
| 02:50:03 | 13 | Q.        Did Ed ever speak to you about your |
| 02:50:06 | 14 | communication? |
| 02:50:07 | 15 | A.        Not that I can recall. |
| 02:50:11 | 16 | Q.        How about gossiping? |
| 02:50:13 | 17 | A.        Not that I can recall. |
| 02:50:13 | 18 | Q.        It says here that, "We met with him for |
| 02:50:24 | 19 | approximately 45 minutes early today." |
| 02:50:26 | 20 |          Do you see that? |
| 02:50:27 | 21 | A.        Yes. |
| 02:50:29 | 22 | Q.        Do you ever remember meeting with Ed for |
| 02:50:33 | 23 | 45 minutes about your relationships, interactions with |
| 02:50:36 | 24 | some of the recycle employees? |
| 02:50:39 | 25 | A.        Not that I can recall. |

**Owen Diaz-Confidential**

| | | |
|---|---|---|
| 02:50:44 | 1 | Q.      "We express the negative interaction he has had |
| 02:50:48 | 2 | with others and the affect this has had on others." |
| 02:50:53 | 3 | Do you see that? |
| 02:50:53 | 4 | A.      Yes. |
| 02:50:53 | 5 | Q.      Do you remember talking about your -- with Ed |
| 02:50:57 | 6 | about the interaction or the effect your behavior is |
| 02:51:02 | 7 | having on others? |
| 02:51:03 | 8 | A.      Not that I can recall. |
| 02:51:17 | 9 | Q.      It says in paragraph 1 of -- about the fourth |
| 02:51:23 | 10 | sentence, it says, "When we told him there were |
| 02:51:27 | 11 | witnesses and others who had observed his actions, he |
| 02:51:31 | 12 | accepted, and said he probably did act that way." |
| 02:51:34 | 13 | Do you remember admitting to Ed Romero and |
| 02:51:38 | 14 | Jaime Salazar that you acted with a lack of |
| 02:51:42 | 15 | professionalism, anger, and inappropriate communication? |
| 02:51:52 | 16 | A.      Not that I can recall. |
| 02:51:53 | 17 | Q.      Do you remember Ed talking to you about |
| 02:52:02 | 18 | controlling your emotions and your anger? |
| 02:52:05 | 19 | A.      Not that I can recall. |
| 02:52:21 | 20 | Q.      Did you ever tell Ed that you would try to |
| 02:52:24 | 21 | improve your relationship with Jessie Leite? |
| 02:52:37 | 22 | A.      Not that I recall. |
| 02:52:38 | 23 | Q.      And you have no idea who Aron Deharto is? |
| 02:52:55 | 24 | A.      No. |
| 02:53:49 | 25 | MS. ANTONUCCI:  Let's take a quick break so I |

1        I, CANDY NEWLAND, CSR No. 14256, certify that the

2   foregoing proceedings were taken before me at the time

3   and place herein set forth, at which time the witness

4   was duly sworn, and that the transcript is a true record

5   of the testimony so given.

6

7   Witness review, correction, and signature was

8   (X) by Code.                    (X) requested.

9   ( ) waived.                     ( ) not requested.

10  ( ) not handled by the deposition officer due to party

11  stipulation.

12

13       The dismantling, unsealing, or unbinding of the

14  original transcript will render the reporter's

15  certificate null and void.

16       I further certify that I am not financially

17  interested in the action, and I am not a relative or

18  employee of any attorney of the parties nor of any of

19  the parties.

20       Dated this 29TH day of May, 2018.

21

22

23

24  _____

25                CANDY NEWLAND, CSR 14256

Message

| From: | Victor Quintero [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=VICTOR QUINTERO3A3] |
|---|---|
| Sent: | 10/2/2015 6:43:54 PM |
| To: | Edward Romero [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Edward Romeroe38] |
| CC: | Jaime Salazar [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Jaime Salazar6ee] |
| Subject: | RE: Owen Diaz - Verbal Warning |

Thank you for the update and good job.

vq

From: Edward Romero
Sent: Friday, October 02, 2015 8:50 AM
To: Victor Quintero <vquintero@teslamotors.com>
Cc: Jaime Salazar <jsalazar@teslamotors.com>
Subject: Owen Diaz - Verbal Warning



EXHIBIT 6
WIT: DIAZ
DATE: 5-22-18
Candy Newland, CSR #14256

Victor,

Jaime and myself met today to discuss with Owen Diaz a number of issues dealing with Owen's negative interaction with other recycle employees. We had received a number of complaints from Hilda Navarro, Aron Dehardo and Jesse Leite. They expressed their complaints regarding Owen's temper, lack of professionalism, bad communication and gossiping about them to other employees. After Jaime and me investigated what has been going on during these past 3 weeks, we felt it was necessary to discuss these serious matters with Owen directly. We met with him for approximately 45 minutes early today. We expressed the negative interaction he has had with others and the effect this has had on others. Our goal was to see if he was willing to listen, learn and change his attitude and see if he was willing to make the necessary improvements. Here is what we discussed with him:

1. We informed him that we had received complaints from Hilda, Aron and Jesse regarding his lack of professionalism, gossiping, anger issues and accusations he had made towards them. We mentioned to him that we had also given them practical counsel on how they too can improve on communication and professionalism, and that they had accepted the counsel. At first he did resist and tried to justify and minimize his actions. When we told him there were witnesses and others who had observed his actions he accepted and said that yes he probably did act that way. We mentioned to him that our goal was to have a unified group with Leads setting a good example of leadership, professionalism, leading by example.

2. He must promote a spirit of teamwork, good communication and respect towards others.

3. He must control his emotions and anger. He tried to say that we were judging him based solely on his use of gestures, and that that is the way he talks. I mentioned to him that there were witnesses to the way he talks and shows anger towards others. He then had to accept.

4. He must never allow himself to make comments regarding anyone's personal life, business or relationships. He said he understood.

5. He must avoid talking to others negatively about other Leads or other employees. We discussed the concerns Jesse Leite had regarding Owen's negative comments he has made about him to other employees. Although he first tried to deny this he finally agreed that he needs to stop this and make improvements. He said he would try to take steps to improve his relationships with others, including Jesse.

We mentioned to Owen that we wanted to see definite improvements regarding these issues and did not want to have to revisit these issues in the future. We mentioned to him that he had been promoted to lead because we had confidence that he could be a good lead, but if these problems continued then we would have to make changes. He said he understood and would make the necessary changes.

CONFIDENTIAL

CONFIDENTIAL

TESLA-0000309

# EXHIBIT 7

```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3

 4   DEMETRIC DIAZ, OWEN DIAZ, ) Case No. 3:17-CV-06748-WHO
     and LAMAR PATTERSON,      )
 5                             )
                   Plaintiffs, )
 6                             )
         vs.                   )
 7                             )
     TESLA, INC. dba TESLA     )
 8   MOTORS, INC.; CITISTAFF   )
     SOLUTIONS, INC.; WEST     )
 9   VALLEY STAFFING GROUP;    )
     CHARTWELL STAFFING        )
10   SERVICES, INC.;           )
     NEXTSOURCE, INC.;         )
11   DOES 1-50, inclusive,     )
                               )
12                Defendants.  )
     _____)
13

14

15                       Volume III

16         DEPOSITION OF OWEN ORAPIO DIAZ, JR.

17             PAGES 293 THROUGH 441

18             SAN FRANCISCO, CALIFORNIA

19                   JUNE 21, 2019

20

21

22

23

24

25   REPORTED BY:  MICHAEL CUNDY, CSR 12271
```



OWEN ORAPIO DIAZ, JR. VOLUME III                    June 21, 2019
DIAZ vs TESLA, INC.                                          364

| | | |
|---|---|---|
| 1 | Q    Okay.  And you say -- the first line, you | 11:05:30 |
| 2 | say, I counsel him and explained to him he needed to | 11:05:32 |
| 3 | arrive to work on time. | 11:05:37 |
| 4 | What did you mean by "I counseled him"? | 11:05:39 |
| 5 | A    I talked to Mr. Foster about showing up to | 11:05:47 |
| 6 | work late. | 11:05:50 |
| 7 | Q    Did you consider that counseling being some | 11:05:52 |
| 8 | sort of verbal warning or discipline? | 11:05:54 |
| 9 | A    Yes. | 11:06:06 |
| 10 | Q    Okay.  And then you also say in your e-mail, | 11:06:06 |
| 11 | I told Mr. Foster that I would have to send out an | 11:06:08 |
| 12 | e-mail stating that he told me -- what he told me, and | 11:06:12 |
| 13 | because he was gone so long, he would probably receive | 11:06:16 |
| 14 | a write-up. | 11:06:20 |
| 15 | How did you know that he might receive a | 11:06:22 |
| 16 | write-up? | 11:06:24 |
| 17 | A    That's corrective action. | 11:06:31 |
| 18 | Q    Do you know who would issue that corrective | 11:06:33 |
| 19 | action? | 11:06:35 |
| 20 | A    Tesla. | 11:06:38 |
| 21 | Q    Do you know who at Tesla would have issued | 11:06:40 |
| 22 | that corrective action? | 11:06:42 |
| 23 | A    Ed Ramero. | 11:06:45 |
| 24 | Q    Why would it be Ed Ramero? | 11:06:47 |
| 25 | A    That was our supervisor. | 11:06:49 |



OWEN ORAPIO DIAZ, JR. VOLUME III                    June 21, 2019
DIAZ vs TESLA, INC.                                         365

| | | |
|---|---|---|
| 1 | Q    So you reported up to Ed Ramero; is that | 11:06:51 |
| 2 | correct? | 11:06:54 |
| 3 | A    Yes, sir. | 11:06:54 |
| 4 | Q    Okay.  And so Mr. Rothaj Foster reported to | 11:06:55 |
| 5 | you; is that correct? | 11:06:58 |
| 6 | A    Yes, sir. | 11:07:00 |
| 7 | Q    And through you up to Ed Ramero as you | 11:07:00 |
| 8 | understood it? | 11:07:03 |
| 9 | A    Yes, sir. | 11:07:04 |
| 10 | Q    Do you know if Mr. Foster ended up getting a | 11:07:06 |
| 11 | write-up for this incident? | 11:07:10 |
| 12 | A    No, I don't know. | 11:07:17 |
| 13 | Q    Okay.  You say, I explained to Mr. Foster if | 11:07:19 |
| 14 | he felt that my actions in dealing with this situation | 11:07:21 |
| 15 | was unfair, to please contact Mr. Ed Ramero or Wayne | 11:07:24 |
| 16 | Jackson. | 11:07:30 |
| 17 | Why did you tell Mr. Foster to contact Ed | 11:07:30 |
| 18 | Ramero? | 11:07:33 |
| 19 | A    Giving him options. | 11:07:37 |
| 20 | Q    Was it also because Ed Ramero was your | 11:07:40 |
| 21 | supervisor? | 11:07:43 |
| 22 | A    Yes, sir. | 11:07:44 |
| 23 | Q    Okay.  And why were you also telling him that | 11:07:45 |
| 24 | he could contact Wayne Jackson? | 11:07:48 |
| 25 | A    Again, options. | 11:07:51 |



1  STATE OF CALIFORNIA            )
                                  )  SS:
2  CITY AND COUNTY OF SAN FRANCISCO  )

3

4                    I, Michael Cundy, CSR NO. 12271, a

5  Certified Shorthand Reporter of the State of

6  California, do hereby certify:

7                    That the foregoing proceedings were

8  taken before me at the time and place herein set

9  forth; that any witnesses in the foregoing

10 proceedings, prior to testifying, were placed under

11 oath; that a verbatim record of the proceedings was

12 made by me using machine shorthand which was

13 thereafter transcribed under my direction; further,

14 that the foregoing is an accurate transcription

15 thereof.

16                    I further certify that I am neither

17 financially interested in the action nor a relative or

18 employee of any attorney or any of the parties.

19                    IN WITNESS WHEREOF, I have this date

20 subscribed my name.

21

22 Dated:  July 3, 2019

23                    _____

24                    Michael Cundy, CSR NO. 12271

25



# EXHIBIT 8

Message

| | |
|---|---|
| **From**: | Parks, Vanessa [vparks@nextsource.com] |
| **Sent**: | 10/27/2015 6:31:59 PM |
| **To**: | Wayne Jackson [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Wayne Jackson899]; Tesla [Tesla@nextsource.com] |
| **CC**: | Garrett, Terri [tgarrett@nextsource.com]; mdeleon@citistaffsolutions.com |
| **Subject**: | RE: Rothja Foster - Payroll Exception |

Thank You Wayne, I have deducted hours from Sunday 10-25-15.

Please let me know if you have any questions.

**Vanessa Parks**
**1040 Avenue of the Americas, 24th Floor**
**New York, NY 10018**
**Mobile: (646) 532-7476**
**Vparks@nextsource.com**
**www.nextsource.com**



*Workforce Optimization, Business Enlightenment.*

---

**From:** Wayne Jackson [mailto:wajackson@teslamotors.com]
**Sent:** Tuesday, October 27, 2015 11:30 AM
**To:** Tesla; Parks, Vanessa
**Cc:** Garrett, Terri; mdeleon@citistaffsolutions.com
**Subject:** Rothja Foster - Payroll Exception

Vanessa please make sure you note the exception for Rothaj.  I spoke with him this morning and counseled him regarding his performance issue.  I also made sure that he understands that he **will not be paid for the 4 ½ hours of time he missed** while asleep in his car.  He was let know that if this happens again it can lead to his termination from his contract role.  I have also copied his EOR on this.

Wayne Jackson
1040 Avenue of the Americas, 24th Floor
New York, NY 10018
Mobile: (917) 797-9984
wajackson@teslamotors.com
www.nextsource.com



*Workforce Optimization, Business Enlightenment*

---

**From:** Edward Romero
**Sent:** Saturday, October 24, 2015 11:15 AM

CONFIDENTIAL

TESLA-0000054

**To:** Owen Diaz <odiazjr68@gmail.com>; Wayne Jackson <wajackson@teslamotors.com>
**Cc:** Victor Quintero <vquintero@teslamotors.com>
**Subject:** Re: Rothja Foster

Owen, I appreciate your call this morning. I appreciate your desire in assuring elevator service runs smoothly.

I am forwarding this email to Wayne Jackson so that nextsource can assist with the verbal warning. He will follow through with you.

Wayne: Please assist. Also, please correct his time sheet to deduct any time he did not work.  Mr. Foster did call be this morning at 5:00 am. I emphasized the seriousness of his actions and reminded him of his responsibilities to return from his breaks/lunches on time. Thanks

Sent from my Verizon 4G LTE Smartphone
On Oct 24, 2015 6:57 AM, Owen Diaz <odiazjr68@gmail.com> wrote:
On 10/23/15 Mr. Foster arrived to work one hour late. I counsel him and explained to him he needed to arrive to work on time. Later that night at 12:50am I sent
Rothja Foster to start his 30 minute break. Before the start of his break I explained to Mr. Foster that he needed to be back at 1:20am. He said, he understood and would be back by 1:20am. At 1:30am I tried to contact Mr. Foster to let him know that his break was over and he was supposed to return From his break by 1:20am. Mr. Foster didn't answer his phone. I kept trying to contact Mr. Foster to let him know that he couldn't be gone from the elevator for long periods of time. At 2:06 am I sent Mr foster a text message letting him know I was giving him a verbal warning can he please correct this issue.
I didn't hear back from Mr. Foster till 4:33am he stated he fell asleep in his car and his phone died. I told Mr. Foster that I would have to send out a email stating what he told me and because he was gone so long he would probably receive a write- up. After I told Mr. Foster he could possibly receive a write-up. He stated, if I'm getting wrote up I'm going home. I explained to
Mr. Foster that if he left, it could be considered as abandoning his Post and could possibly affect his job status. I explained to Mr. Foster if he felt that my actions in dealing with this situation was unfair to please contact Mr. Romero or Wayne Jackson. Mr. Foster returned at 5:20am stating he talked to Mr. Romero. I left Mr. Foster in elevator 1 to finish out the last 40 minutes of his shift. Mr. Foster was gone from his post a total of 4 1/2 hours before he returned to work.


Owen Diaz
Text sent to Mr. Foster

Rothja Foster your break started at 12:50 am. You where supposed to be back at 1:20am. it's now 2:00am and you still haven't returned as of 2:06am. Mr Foster you can't be gone from the elevator for long periods of time. Mr foster this text message will serve as your verbal warning please correct this issue.

# EXHIBIT 9

Message

| | |
|---|---|
| **From:** | Edward Romero [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=EDWARD ROMEROE38] |
| **Sent:** | 10/24/2015 6:14:41 PM |
| **To:** | Owen Diaz [odiazjr68@gmail.com]; Wayne Jackson [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Wayne Jackson899] |
| **CC:** | Victor Quintero [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Victor Quintero3a3] |
| **Subject:** | Re: Rothja Foster |

Owen, I appreciate your call this morning. I appreciate your desire in assuring elevator service runs smoothly.

I am forwarding this email to Wayne Jackson so that nextsource can assist with the verbal warning. He will follow through with you.

Wayne: Please assist. Also, please correct his time sheet to deduct any time he did not work.  Mr. Foster did call be this morning at 5:00 am. I emphasized the seriousness of his actions and reminded him of his responsibilities to return from his breaks/lunches on time. Thanks

Sent from my Verizon 4G LTE Smartphone
On Oct 24, 2015 6:57 AM, Owen Diaz <odiazjr68@gmail.com> wrote:
On 10/23/15 Mr. Foster arrived to work one hour late. I counsel him and explained to him he needed to arrive to work on time. Later that night at 12:50am I sent
Rothja Foster to start his 30 minute break. Before the start of his break I explained to Mr. Foster that he needed to be back at 1:20am. He said, he understood and would be back by 1:20am. At 1:30am I tried to contact Mr. Foster to let him know that his break was over and he was supposed to return From his break by 1:20am. Mr. Foster didn't answer his phone. I kept trying to contact Mr. Foster to let him know that he couldn't be gone from the elevator for long periods of time. At 2:06 am I sent Mr foster a text message letting him know I was giving him a verbal warning can he please correct this issue.
I didn't hear back from Mr. Foster till 4:33am he stated he fell asleep in his car and his phone died. I told Mr. Foster that I would have to send out a email stating what he told me and because he was gone so long he would probably receive a write- up. After I told Mr. Foster he could possibly receive a write-up. He stated, if I'm getting wrote up I'm going home. I explained to
Mr. Foster that if he left, it could be considered as abandoning his Post and could possibly affect his job status. I explained to Mr. Foster if he felt that my actions in dealing with this situation was unfair to please contact Mr. Romero or Wayne Jackson. Mr. Foster returned at 5:20am stating he talked to Mr. Romero. I left Mr. Foster in elevator 1 to finish out the last 40 minutes of his shift. Mr. Foster was gone from his post a total of 4 1/2 hours before he returned to work.


Owen Diaz
Text sent to Mr. Foster

Rothja Foster your break started at 12:50 am. You where supposed to be back at 1:20am. it's now 2:00am and you still haven't returned as of 2:06am. Mr Foster you can't be gone from the elevator for long periods of time. Mr foster this text message will serve as your verbal warning please correct this issue.

CONFIDENTIAL

# EXHIBIT 10

| | |
|---|---|
| **Message** | |
| **From:** | Edward Romero [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=EDWARD ROMEROE38] |
| **Sent:** | 11/6/2015 7:18:15 PM |
| **To:** | Erin Marconi [/O=TESLA/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Emarconi] |
| **Subject:** | FW: Rothaj Foster |

Please see email sent to Wayne Jackson at nextsource.

---

**From:** Edward Romero
**Sent:** Friday, November 06, 2015 8:23 AM
**To:** Victor Quintero <vquintero@teslamotors.com>
**Subject:** RE: Rothaj Foster

Thank you I agree.

Sent from my Verizon 4G LTE Smartphone
On Nov 6, 2015 7:36 AM, Victor Quintero <vquintero@teslamotors.com> wrote:
Good job Ed. You handled the issue appropriately. I agree the employee should not be allowed to return. The issue is in the hands of nextSource and let see how they respond.

Due to the constant problem with employee absences I believe maybe we need to hire a floater to allow for coverage. One floater for the day shift and one for the night shift. The floaters may be shared between two shifts. Let's discuss this further.

Thank you,

Victor Quintero

---

**From:** Edward Romero
**Sent:** Friday, November 06, 2015 12:17 AM
**To:** Wayne Jackson <wajackson@teslamotors.com>
**Cc:** Victor Quintero <vquintero@teslamotors.com>; Jaime Salazar <jsalazar@teslamotors.com>
**Subject:** FW: Rothaj Foster

Please see email below.

---

**From:** Edward Romero
**Sent:** Friday, November 06, 2015 12:12 AM
**To:** Wayne Jackson
**Cc:** Victor Quintero; Jaime Salazar
**Subject:** Rothaj Foster

I had Rothaj Foster removed from the Tesla premises last night at 10:00 pm. The reason is that he was conducting himself in a threatening manner against Owen Diaz.

I received a call from Rothaj Foster at 6:06 pm. He said that he had spoken to Wayne Jackson and that Wayne had told him he was going to move him to a recycling sorter position tonight. I explained to him that people are not moved around like that without us first getting a replacement. I encouraged him to be patient, do his job and everything would work out. I also reminded him that we were short on staff.

I received another call from Mr. Foster at 7:47 saying that Owen wouldn't let him take his break. He said that Owen had went to cover for Froilan break. I told him to be patient and Owen would cover for him when Froilan came back. I

explained that when we only have three people on we might not be able to take our breaks as we want but when we can. I told him to be patient. I then got another call from from Mr. Foster around 9:00 insinuating that Owen was being mean. I called Owen to ask him what was happening and Owen said Rothaj was being difficult and threatening, saying "you better watch your car".

I asked Owen if anyone had heard him say that, Owen said he didn't think so.

I then instructed Owen to assign Rothaj to elevator 2 as to avoid any friction between the two. When Owen approached Rothaj Foster to instruct him to go to elevator 2 he conducted himself in a threatening manner as if he wanted to fight with Owen. He also made a comment about shooting Owen. I asked him if anyone had witnessed this, at which time a Tesla material handler came forward and said he had witnessed Mr. Foster's threatening conduct. I then returned to Tesla to investigate the matter.

I then returned to Tesla and met with Yordano Ramirez, material handler from the Reman Area. He gave me his written statement and explained what happen. He said he witnessed Rothaj Foster conduct himself in a threatening manner towards Owen. I then called security explained the situation and asked that he be removed from the premises. Security informed me that they had had problems with Mr. Fosters attitude in the past. They said I could included that information in my report. I asked for his badge, which he returned to me. I informed Mr. Foster that he was suspended while we evaluated what had happen. He asked if he could call someone. I told him he could call his agency if wanted to. He asked if he could call Wayne Jackson, I told him he was free to do so if he wanted to. He was then escorted out of the building and followed to his car which he had parked illegally in a handicapped parking spot.

I could not allow anyone to be a threat to any other employee. I do not recommend he be allowed to return.

TESLA-0000128

# EXHIBIT 11



4 195330·6
R. 2/6/19
A. 2/11/19

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF CONTRA COSTA**
**MARTINEZ**

FEB 06 2019

K. WEEKER, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By
E. PLUMB BROWN, Clerk

| | Docket: 05-190194-1 |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | DA No: 0130975561 |
| Plaintiff, | |
| | INFORMATION - FELONY |
| v. | |
| | Count 1) PC211 |
| DEMETRIC DIAZ, | Count 2) PC211 |
| *dob* 06/19/1995; | Count 3) PC211 |
| CLENZELL BRYANT, | Count 4) PC245(b) |
| dob 03/31/1996; | Count 5) PC245(b) |
| Defendants. | Count 6) PC245(b) |
| | Count 7) VC2800.2 |

## COUNT 1 – SECOND DEGREE ROBBERY

The undersigned states, on information and belief, that Demetric Diaz and Clenzell Bryant, Defendants, did commit a Felony, a violation of PC211, Second Degree Robbery, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Second Degree Robbery in violation of PC211, a Felony, was committed in that DEMETRIC DIAZ AND CLENZELL BRYANT did unlawfully, and by means of force and fear take personal property from the person, possession, and immediate presence of Ariana Sharifi, a Domino's Pizza employee.

### ENHANCEMENT 1

PC12022.53(b): Special Allegation-Personal Use Of A Firearm
It is further alleged as to Count 1 at said defendant, DEMETRIC DIAZ personally used a firearm, a handgun, within the meaning of Penal Code Section 12022.53(b) also causing the above offense to become a serious felony pursuant to Penal Code section 1192.7(c)(8) and a violent felony within the meaning of Penal Code section 667.5(c)(8).

### ENHANCEMENT 2

It is further alleged as to Count 1 that in the commission and attempted commission of the above offense, the said defendant, CLENZELL BRYANT, a principal in said offense was armed with a firearm(s), to wit, handgun, said arming not being an element of the above offense, within the meaning of Penal Code section 12022(a)(1).

## COUNT 2 – SECOND DEGREE ROBBERY

The undersigned states, on information and belief, that Demetric Diaz and Clenzell Bryant, Defendants, did commit a Felony, a violation of PC211, Second Degree Robbery, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Second Degree Robbery in violation of PC211, a Felony, was committed in that DEMETRIC DIAZ AND CLENZELL

BRYANT did unlawfully, and by means of force and fear take personal property from the person, possession, and immediate presence of Madison Minton, a Domino's Pizza employee.

### ENHANCEMENT 1

PC12022.53(b): Special Allegation-Personal Use Of A Firearm

It is further alleged as to Count 2 that said defendant, DEMETRIC DIAZ personally used a firearm, a handgun, within the meaning of Penal Code Section 12022.53(b) also causing the above offense to become a serious felony pursuant to Penal Code section 1192.7(c)(8) and a violent felony within the meaning of Penal Code section 667.5(c)(8).

### ENHANCEMENT 2

It is further alleged as to Count 2 that in the commission and attempted commission of the above offense, the said defendant, CLENZELL BRYANT, a principal in said offense was armed with a firearm(s), to wit, handgun, said arming not being an element of the above offense, within the meaning of Penal Code section 12022(a)(1).

## COUNT 3 – SECOND DEGREE ROBBERY

The undersigned states, on information and belief, that Demetric Diaz and Clenzell Bryant, Defendants, did commit a Felony, a violation of PC211, Second Degree Robbery, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Second Degree Robbery in violation of PC211, a Felony, was committed in that DEMETRIC DIAZ AND CLENZELL BRYANT did unlawfully, and by means of force and fear take personal property from the person, possession, and immediate presence of Antero Sanchez, a Domino's Pizza employee.

### ENHANCEMENT 1

PC12022.53(b): Special Allegation-Personal Use Of A Firearm

It is further alleged as to Count 3 that said defendant, DEMETRIC DIAZ personally used a firearm, a handgun, within the meaning of Penal Code Section 12022.53(b) also causing the above offense to become a serious felony pursuant to Penal Code section 1192.7(c)(8) and a violent felony within the meaning of Penal Code section 667.5(c)(8).

### ENHANCEMENT 2

It is further alleged as to Count 3 that in the commission and attempted commission of the above offense, the said defendant, CLENZELL BRYANT, a principal in said offense was armed with a firearm(s), to wit, handgun, said arming not being an element of the above offense, within the meaning of Penal Code section 12022(a)(1).

## COUNT 4 – ASSAULT WITH A SEMIAUTOMATIC FIREARM

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Felony, a violation of PC245(b), Assault with a Semiautomatic Firearm, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Assault With A Firearm in violation of PC245(a)(2), a Felony, was committed in that DEMETRIC DIAZ did willfully and unlawfully commit an assault on Ariana Sharifi with a firearm.

## COUNT 5 – ASSAULT WITH A SEMIAUTOMATIC FIREARM

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Felony, a violation of PC245(b), Assault with a Semiautomatic Firearm, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Assault With A Firearm in violation of PC245(a)(2), a Felony, was committed in that DEMETRIC DIAZ did willfully and unlawfully commit an assault on Madison Minton with a firearm.

## COUNT 6 – ASSAULT WITH A SEMIAUTOMATIC FIREARM

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Felony, a violation of PC245(b), Assault with a Semiautomatic Firearm, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Assault With A Firearm in violation of PC245(a)(2), a Felony, was committed in that DEMETRIC DIAZ did willfully and unlawfully commit an assault on Antero Sanchez with a firearm.

## COUNT 7 – FLEEING A PURSUING PEACE OFFICER'S MOTOR VEHICLE WHILE DRIVING RECKLESSLY

The undersigned states, on information and belief, that Clenzell Bryant, Defendant, did commit a Felony, a violation of VC2800.2, Fleeing A Pursuing Peace Officer's Motor Vehicle While Driving Recklessly, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Fleeing A Pursuing Peace Officer's Motor Vehicle While Driving Recklessly in violation of VC2800.2, a Felony, was committed in that CLENZELL BRYANT while driving a motor vehicle in a willful and/or wanton disregard for the safety of persons, and with the intent to evade, willfully fled and/or attempted to elude a pursuing peace officer's motor vehicle.

### PROBATION VIOLATION - IN RE LAW NOTICE

It is further alleged, pursuant to Penal Code section 1203.3, that the DEMETRIC DIAZ did violate the law as alleged above in violation of the grant of probation and in violation of the grant of mandatory supervision set forth below:

| Charge | S | Off. Date | Conv. Date | Docket Number | Jurisdiction |
|--------|---|-----------|------------|---------------|--------------|
| PC148(a)(1) | M | 05-30-2016 | 06-02-2017 | 04-187326-4 | 7100 - Contra Costa |

The People of the State of California hereby provide notice that the probation violation hearing on the above matter shall be conducted in conjunction with any trial on the charges alleged herein or at an earlier properly noticed probation violation hearing. See, In re Law (1973) 10 Cal. 3d 21.

PEOPLE vs. DEMETRIC DIAZ, CLENZELL BRYANT

Docket: 05-190194-1
Page 4 of 4

Complainant requests that the Defendant[s] be dealt with according to the law.

Dated:  February 6, 2019, at Martinez, California

DIANA BECTON
District Attorney

Simon O'Connell
Deputy District Attorney
SO/ga



This document is a correct copy
of the original on file in this office.

ATTEST:   FEB 2 5 2020

K. BIEKER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By _____
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA**

FILED
DEC 27 2018

R. GLEN CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____
L. Cotto, Deputy Clerk

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                                    Plaintiff,

        v.

DEMETRIC DIAZ,
        dob 06/19/1995;
CLENZELL BRYANT,
        dob 03/31/1996;
        Defendants.

Docket: 04-195330-6
DA No: 0130975561

COMPLAINT - FELONY

Count 1) PC209(b)(1)
Count 2) PC211
Count 3) PC245(a)(2)
Count 4) PC245(a)(2)
Count 5) PC245(a)(2)
Count 6) VC2800.2

## COUNT 1 – KIDNAPPING TO COMMIT ANOTHER CRIME

The undersigned states, on information and belief, that Demetric Diaz and Clenzell Bryant, Defendants, did commit a Felony, a violation of PC209(b)(1), Kidnapping To Commit Another Crime, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Kidnapping To Commit Another Crime in violation of PC209(b)(1), a Felony, was committed in that DEMETRIC DIAZ AND CLENZELL BRYANT did unlawfully kidnap and carry away Madison Minton, Ariana Sharifi, and Antero Sanchez to commit robbery.

### ENHANCEMENT 1

PC12022.53(b): Special Allegation-Personal Use Of A Firearm
It is further alleged as to Count 1 that said defendant, DEMETRIC DIAZ personally used a firearm, a handgun, within the meaning of Penal Code Section 12022.53(b) also causing the above offense to become a serious felony pursuant to Penal Code section 1192.7(c)(8) and a violent felony within the meaning of Penal Code section 667.5(c)(8).

### ENHANCEMENT 2

It is further alleged as to Count 1 that in the commission and attempted commission of the above offense, the said defendant, CLENZELL BRYANT, a principal in said offense was armed with a firearm(s), to wit, handgun, said arming not being an element of the above offense, within the meaning of Penal Code section 12022(a)(1).

## COUNT 2 – SECOND DEGREE ROBBERY

The undersigned states, on information and belief, that Demetric Diaz and Clenzell Bryant, Defendants, did commit a Felony, a violation of PC211, Second Degree Robbery, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Second Degree Robbery in violation of PC211, a Felony, was committed in that DEMETRIC DIAZ AND CLENZELL BRYANT did unlawfully, and by means of force and fear take personal property from the person, possession, and immediate presence of Madison Minton, Ariana Sharifi, and Antero Sanchez.

///

PEOPLE vs. DEMETRIC DIAZ, CLE... _ELL BRYANT

Docket: ... 195330-6
Page 2 of 3

## ENHANCEMENT 1
### PC12022.53(b): Special Allegation-Personal Use Of A Firearm

It is further alleged as to Count 2 that said defendant, DEMETRIC DIAZ personally used a firearm, a handgun, within the meaning of Penal Code Section 12022.53(b) also causing the above offense to become a serious felony pursuant to Penal Code section 1192.7(c)(8) and a violent felony within the meaning of Penal Code section 667.5(c)(8).

## ENHANCEMENT 2

It is further alleged as to Count 2 that in the commission and attempted commission of the above offense, the said defendant, CLENZELL BRYANT, a principal in said offense was armed with a firearm(s), to wit, handgun, said arming not being an element of the above offense, within the meaning of Penal Code section 12022(a)(1).

## COUNT 3 – ASSAULT WITH A FIREARM

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Felony, a violation of PC245(a)(2), Assault With A Firearm, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Assault With A Firearm in violation of PC245(a)(2), a Felony, was committed in that DEMETRIC DIAZ did willfully and unlawfully commit an assault on Ariana Sharifi with a firearm.

## COUNT 4 – ASSAULT WITH A FIREARM

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Felony, a violation of PC245(a)(2), Assault With A Firearm, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Assault With A Firearm in violation of PC245(a)(2), a Felony, was committed in that DEMETRIC DIAZ did willfully and unlawfully commit an assault on Madison Minton with a firearm.

## COUNT 5 – ASSAULT WITH A FIREARM

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Felony, a violation of PC245(a)(2), Assault With A Firearm, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Assault With A Firearm in violation of PC245(a)(2), a Felony, was committed in that DEMETRIC DIAZ did willfully and unlawfully commit an assault on Antero Sanchez with a firearm.

///

PEOPLE vs. DEMETRIC DIAZ, CLE.._ELL BRYANT

Docket: ᵤ  195330-6
Page 3 of 3

## COUNT 6 – FLEEING A PURSUING PEACE OFFICER'S MOTOR VEHICLE WHILE DRIVING RECKLESSLY

The undersigned states, on information and belief, that Clenzell Bryant, Defendant, did commit a Felony, a violation of VC2800.2, Fleeing A Pursuing Peace Officer's Motor Vehicle While Driving Recklessly, committed as follows:

On or about December 21, 2018, in the County of Contra Costa, State of California, the crime of Fleeing A Pursuing Peace Officer's Motor Vehicle While Driving Recklessly in violation of VC2800.2, a Felony, was committed in that CLENZELL BRYANT while driving a motor vehicle in a willful and/or wanton disregard for the safety of persons, and with the intent to evade, willfully fled and/or attempted to elude a pursuing peace officer's motor vehicle.

## PROBATION VIOLATION - IN RE LAW NOTICE

It is further alleged, pursuant to Penal Code section 1203.3, that the DEMETRIC DIAZ did violate the law as alleged above in violation of the grant of probation and in violation of the grant of mandatory supervision set forth below:

| Charge | S | Off. Date | Conv. Date | Docket Number | Jurisdiction |
|---|---|---|---|---|---|
| PC148(a)(1) | M | 05-30-2016 | 06-02-2017 | 04-187326-4 | 7100 - Contra Costa |

The People of the State of California hereby provide notice that the probation violation hearing on the above matter shall be conducted in conjunction with any trial on the charges alleged herein or at an earlier properly noticed probation violation hearing.  See, In re Law (1973) 10 Cal. 3d 21.

Complainant requests that the Defendant[s] be dealt with according to the law.

Dated:  December 26, 2018, at Martinez, California

DIANA BECTON
District Attorney

Chris Sansoe
Deputy District Attorney
CS/ss

**SUMMARY SHEET**

| Cnt | Charge | Range | Defendant(s) | Special Allegation | Effect | Jurisdiction |
|-----|--------|-------|--------------|-------------------|--------|--------------|
| 1 | PC209(b)(1) | LIFE State Prison | Demetric Diaz | PC12022.53(b) | ÷10 Yrs., MSP* | |
| 2 | PC211 | 2-3-5 State Prison | Demetric Diaz | PC12022.53(b) | ÷10 Yrs., MSP* | |
| 3 | PC245(a)(2) | 2-3-4 State Prison | Demetric Diaz | | | |
| 4 | PC245(a)(2) | 2-3-4 State Prison | Demetric Diaz | | | |
| 5 | PC245(a)(2) | 2-3-4 State Prison | Demetric Diaz | | | |
| | PC1203.3 | | Demetric Diaz | | | |
| 1 | PC209(b)(1) | LIFE State Prison | Clenzell Bryant | PC12022(a)(1) | +1 Yr. County Jail | |
| 2 | PC211 | 2-3-5 State Prison | Clenzell Bryant | PC12022(a)(1) | +1 Yr. County Jail | |
| 6 | VC2800.2 | 16,2,3 Prison+$0 -10,000 | Clenzell Bryant | | | |



This document is a correct copy
of the original on file in this office

ATTEST: FEB 2 5 2020

K. BIEKER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____
Deputy Clerk

# EXHIBIT 12



F I L E D

JUN 01 2016

STEPHEN H. NASH CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF CONTRA COSTA**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br>                                   Plaintiff, <br><br> v. <br><br> DEMETRIC DIAZ, <br>     *dob* 06/19/1995; <br>     Defendant. | Docket: 04-187326-4 <br> DA No: 0130910540 <br><br> COMPLAINT - MISDEMEANOR <br><br> Count 1) PC25850(a) <br> Count 2) PC25400(a)(2) <br> Count 3) PC148(a)(1) |

### COUNT 1 – CARRYING A LOADED FIREARM ON ONE'S PERSON

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Misdemeanor, a violation of PC25850(a), Carrying A Loaded Firearm On One's Person, committed as follows:

On or about May 30, 2016, in the County of Contra Costa, State of California, the crime of Carrying A Loaded Firearm On One's Person in violation of PC25850(a), a Misdemeanor, was committed in that DEMETRIC DIAZ did unlawfully carry a loaded firearm on his/her person while in a public place and a public street.

### COUNT 2 – HAVING CONCEALED FIREARM ON PERSON

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Misdemeanor, a violation of PC25400(a)(2), Having Concealed Firearm On Person, committed as follows:

On or about May 30, 2016, in the County of Contra Costa, State of California, the crime of Having Concealed Firearm On Person in violation of PC25400(a)(2), a Misdemeanor, was committed in that DEMETRIC DIAZ did unlawfully carry concealed upon his/her person a pistol, revolver, and firearm capable of being concealed upon the person.

### COUNT 3 – RESIST, OBSTRUCT, DELAY OF PEACE OFFICER OR EMT

The undersigned states, on information and belief, that Demetric Diaz, Defendant, did commit a Misdemeanor, a violation of PC148(a)(1), Resist, Obstruct, Delay Of Peace Officer Or EMT, committed as follows:

On or about May 30, 2016, in the County of Contra Costa, State of California, the crime of Resist, Obstruct, Delay Of Peace Officer Or EMT in violation of PC148(a)(1), a Misdemeanor, was committed in that DEMETRIC DIAZ did willfully and unlawfully resist, delay and obstruct Officer Matis who was then and there a peace officer attempting to and discharging the duty of his/her office and employment.

Ct 4   PC. 22210   poss'n of bludgeon.

PEOPLE vs. DEMETRIC DIAZ

Docket: 04-187326-4
Page 2 of 2

Complainant requests that the Defendant[s] be dealt with according to the law.

Dated:  June 1, 2016, at Martinez, California

MARK A. PETERSON
District Attorney

Kate M. DeFerrari
Deputy District Attorney
KMD/rh

## SUMMARY SHEET

| Cnt | Charge | Range | Defendant(s) | Special Allegation | Effect | Jurisdiction |
|-----|--------|-------|--------------|--------------------|--------|--------------|
| 1 | PC25850(a) | 1 Yr. | Demetric Diaz | | | |
| 2 | PC25400(a)(2) | 1 Yr. | Demetric Diaz | | | |
| 3 | PC148(a)(1) | 1 Yr. | Demetric Diaz | | | |

# Superior Court of California, County of Contra Costa

☐ MARTINEZ      ☒ PITTSBURG      ☐ RICHMOND

People v. _Demetric Diaz_          Case No. _4-187326-4_

## MISDEMEANOR ADVISEMENT OF RIGHTS, WAIVER AND PLEA FORM

Fill out this form if you wish to plead guilty or no contest to the charges against you. Initial the box for each applicable item only if you understand it. If you have any questions about your case, the possible sentence, or the information on this form, ask your lawyer or the judge.

**RIGHT TO A LAWYER**

Initial Applicable Boxes

1. I understand that I have the right to be represented by a lawyer throughout the proceedings. I understand that the court will appoint a free lawyer for me if I cannot afford to hire a lawyer, but at the end of the case I may be asked to pay all or part of the cost of that lawyer, if I can afford to. I understand that there are dangers and disadvantages to giving up my right to a lawyer and that it is almost always unwise to represent myself. .......................... 1. [DD]

**NATURE OF THE CHARGES**

2. I understand that I am charged with the following offense(s): _See complaint_ 2. [DD]

Type of offense(s) and section number(s)

*JUN 02 2017*
*STEPHEN H. NASH CLERK OF THE COURT*
*SUPERIOR COURT OF THE STATE OF CALIFORNIA*
*COUNTY OF CONTRA COSTA*
*Deputy Clerk*

3. *If applicable* – I understand that I am also charged with having the following prior conviction(s): 3. [☒]

Case number(s) and date(s)

4. *If applicable* – I understand that I am also charged with violating the probation imposed on me in case number(s) _____ on date(s) _____ 4. [☒]

5. I understand the charge(s) against me, and the possible pleas and defenses. ...................... 5. [DD]

**CONSTITUTIONAL RIGHTS**

6. **RIGHT TO A TRIAL BY A JUDGE OR BY A JURY** – I understand that I have the right to a speedy, public trial by a judge or by a jury. ............................................................... 6. [DD]

7. **RIGHT TO CONFRONT WITNESSES** – I understand that I have the right to confront and cross-examine all witnesses testifying against me. .................................................. 7. [DD]

8. **RIGHT AGAINST SELF-INCRIMINATION** – I understand that I have the right to remain silent and not incriminate myself, and the right to testify on my own behalf. I understand that by pleading guilty or no contest, I am incriminating myself. ............................................. 8. [DD]

9. **RIGHT TO PRODUCE EVIDENCE** – I understand that I have the right to present evidence and to have the court issue subpoenas to bring into court all witnesses and evidence favorable to me, at no cost to me. .................................................................. 9. [DD]

**CHARGES OF PRIOR CONVICTION(S) AND PROBATION VIOLATION(S)**

10. *If applicable* – I understand that I have the right to a lawyer, the right to a trial by judge or jury, the right to confront witnesses, the right against self-incrimination, and the right to produce evidence for all the charges against me, including any charged prior conviction(s). However, for a charge of violating probation, I do not have the right to a jury trial although I do have the right to a hearing before a judge. ......................................................... 10. [☒]

11. Understanding all this, for *all* the charges against me, including any prior conviction(s) or probation violation(s):

    11a. I give up my right to a lawyer, and I choose to represent myself.  (Does not apply if you have a lawyer.) ...........................................................................................    11a. ☒

    11b. I give up my right to a trial by a judge or by a jury. .....................................................    11b. ☑

    11c. I give up my right to confront and cross-examine witnesses. .....................................    11c. ☑

    11d. I give up my right to remain silent and not incriminate myself. ...................................    11d. ☑

    11e. I give up my right to produce evidence or witnesses on my own behalf. ...................    11e. ☑

## CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST

12. **Penalty:** I understand that the *possible consequences* for the offense(s) charged are:

    12a. as described in Exhibit A attached hereto.  I also understand that the Department of Motor Vehicles may take additional administrative actions affecting my license. .....    12a. ☒

    12b. as follows:_____    12b. ☑
_____

13. I understand that if I am not a citizen, a plea of guilty or no contest could result in deportation or exclusion from admission to this country or denial of naturalization. ................................    13. ☑

14. *If applicable* – I understand that any plea entered in this case may be an admission of a violation of probation or parole which has been previously imposed on me in any other case. ...................................................................................................................................    14. ☒

15. *If applicable* – I understand that any plea of no contest will result in conviction and punishment, the same as a plea of guilty but cannot be used against me in a civil lawsuit.    15. ☑

16. I understand that the Department of Motor Vehicles will suspend my license for an additional six months if my offense involved a controlled substance (drug). .........................................    16. ☒

## PLEAS

17. All promises made to me concerning this plea have been stated on the record or are as follows: _co CT w/ credit for 3 actual /3 conduct credits, CJ stayed until Oct. 23 2017. 3 CP : S/S : destray weapon_    17. ☑
Other than as indicated, no further promises have been made to me, nor anyone closely related to or associated with me, to make me plead guilty or no contest. ....................................................................................................................................

18. Having read and understood this form, I hereby freely and voluntarily plead [ ] guilty or [☒] no contest to _Ct. 3: 148(a) ; and Amended Ct. 4: 22210 ; Possession_    18. ☑
                   (list charges)
_Of a Billy Club._

19. I understand that I have the right to wait from six hours to five days prior to being sentenced. I give up this right and agree to be sentenced at this time. .......................................................    19. ☑

20. *If applicable* – I freely and voluntarily admit the prior conviction(s) listed on this form.  I understand that this admission may increase the penalties which are imposed on me. .......    20. ☒

21. *If applicable* – I understand that I have the right to enter my plea before, and be sentenced by a judge.  I give up this right and agree to enter my plea before, and be sentenced by _____, duly appointed Commissioner of the Court or Temporary Judge.    21. ☒

22. I understand that I have the right to appeal this sentence, conviction and any rulings made by the Court in this case.  I give up my right to appeal in exchange for accepting this negotiated disposition.    22. ☑

23. I am not under the influence of any alcohol or drug at the time of signing this document.    23. ☑

_06/02_
Date

_____
Defendant's Signature

## ATTORNEY'S STATEMENT

I am the attorney of record for the defendant. I have reviewed the form and any addendum with my client. I have explained each of the defendant's rights to the defendant and answered all of the defendant's questions with regard to this plea. I have discussed the facts of the defendant's case with the defendant, and explained the consequences of this plea, the elements of the offense(s), and the possible defenses. I concur in this plea and in the defendant's decision to waive constitutional rights.

| DATE 6/2|17 | SIGNATURE OF DEFENDANT'S ATTORNEY → |
|---|---|

## INTERPRETER'S STATEMENT (If Applicable)

I, having been sworn or having a written oath on file, certify that I truly translated this form to the defendant in the language indicated below. The defendant stated that he/she understood the contents of the form, and then he/she initialed and signed the form.

Language:        ☐ Spanish        ☐ Other (specify):_____

| DATE | TYPE OR PRINT NAME | COURT INTERPRETER'S SIGNATURE → |
|---|---|---|

## WAIVERS AND PLEA IN ABSENTIA (If Applicable)

1.    I specifically waive my right to personally enter my plea, I waive my right to be personally present when sentence is imposed, I waive my right to delay sentencing not less than six hours nor more than five days after entry of the plea, and I waive my right to personally address the court in mitigation of my sentence which might be imposed.

2.    ☒    (Check box if represented by Attorney)

I hereby authorize and direct my attorney named __Shannan Mastvamarco__
to enter said plea of __No Contest__ to the court for me in my absence. My attorney is further authorized and directed to waive time for sentencing, and to receive the sentence, including probation, in my absence.

Date: __6|2|17__
       (Notary, if appropriate)                              Signature of Defendant

## COURT'S FINDINGS AND ORDER

The court, having reviewed this form and any addendum, and having questioned the defendant concerning the defendant's constitutional rights, finds that the defendant has expressly, knowingly, understandingly and intelligently waived his or her constitutional rights. The Court finds that the defendant's plea is freely and voluntarily made with an understanding of the nature and consequences thereof, and that there is a factual basis for the plea. The Court accepts the defendant's plea and orders this form filed and incorporated in the docket by reference as though fully set forth therein.

| DATE: 6-2-17 | → |
|---|---|

☐ Judge of the Superior Court
☐ Temporary Judge of the Superior Court

This document is a correct copy
of the original on file in this office.

ATTEST:   FEB 2 4 2020

K. BIEBER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA

By_____
DEPUTY CLERK



# EXHIBIT 13

1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3


4    DEMETRIC DI-AZ; OWEN DIAZ; and      )
     LAMAR PATTERSON, an individual,     )
5                                        )
                     Plaintiffs,         )
6                                        )
          vs.                            )   Case No.
7                                        )   3:17-cv-06748-WHO
     TESLA, INC, dba TESLA MOTORS,       )
8    INC.; CITISTAFF SOLUTIONS, INC.;    )
     WEST VALLEY STAFFING GROUP;         )
9    CHARTWELL STAFFING SERVICES,        )
     INC.; and DOES 1-10, inclusive,     )
10                                       )
                     Defendants.         )
11   _____)

12

13

14

15               DEPOSITION OF

16            ANTHONY READING, Ph.D.

17           BEVERLY HILLS, CALIFORNIA

18              FEBRUARY 18, 2020

19

20

21

22

23   REPORTED BY:  JESSICA ARIAS, CSR NO. 13831

24

25   JOB NO.:  176927

1    was in the house.

2         Q.    Okay.   The next paragraph on Page 6 where it

3    starts, "His son was arrested recently for robbery,"

4    that's referring to the son Demetric?

5         A.    That is correct.

6         Q.    What did Owen Diaz tell you about that arrest?

7         A.    He was evasive or didn't know -- he claimed

8    not to know the details, so he wasn't forthcoming.   I

9    asked -- I tried to drill down on what exactly he was

10   doing or charged with.   He certainly brought him his

11   bail amount.

12        Q.    In light of Mr. -- strike that.

13              In light of Owen Diaz telling you that his son

14   Demetric was arrested for robbery, do you know if

15   Demetric is still working construction?

16        A.    My understanding is prior and post the arrest,

17   he's worked construction.   He's on bail, so he's still

18   working construction.

19        Q.    And then I see you went through his medical

20   history?

21        A.    Yes.

22        Q.    Is any part of his medical history, in your

23   opinion, relevant to your psychological assessment?

24        A.    Only in terms of his alcohol abuse.

25        Q.    And what is relevant or pertinent to you in

1   Demetric?  He heard the supervisor talking about he

2   cannot stand using the F word and the N word.  That's

3   what he told me -- and he witnessed that.  He didn't

4   know the name of the supervisor.  He told me that --

5   and that was the occasion.  They both registered

6   that -- that experience, but there was no -- that

7   was -- he told his son, I think, to report it.

8        Q.   Did Owen tell you if he intervened on this at

9   all?

10        A.   He said he did not intervene.

11        Q.   Did he explain why he did not intervene?

12        A.   He was passive.  He didn't explain why he

13   didn't.  He regretted his actions.

14        Q.   I see in that Paragraph -- it also -- strike

15   that.

16             You also wrote, quote, "He," I'm assuming that

17   means Owen, "believed this was the moment he," quote,

18   "'lost his son' owning to not intervening and having

19   been responsible bringing his son to this environment,"

20   close quote.

21        A.   Yeah.

22        Q.   Did he explain more as to what he meant by

23   "lost his son"?

24        A.   Yeah.  His construction -- I mean whether this

25   was at that time or is post hoc, he feels -- because

1    it's construction, that it was a fracturing moment, his

2    son being abused in that way, Mr. Owen observing that,

3    feeling that he subjected his son to this environment

4    by encouraging him to apply through the agency.  He

5    felt he failed son.  He felt it was a failure to

6    protect his son.  His son saw his impotence, if you

7    like, in terms of handling a situation that was

8    horrific, and he feels his son acted out after that, in

9    terms of he was fired -- his son was fired, so his son

10    was not only exposed to that conduct, but then lost his

11    job possibly because he complained -- that's

12    conjecture -- who knows, but his son then -- he

13    believes his son went off with the other crowd -- the

14    wrong crowd, ultimately leading to his arrest.

15            He was not able to deal with -- I think to

16    broach this topic with his son.  I think he felt that

17    his son felt -- his understanding was his son felt he

18    as a father failed him.

19        Q.  During your interview with Owen Diaz, did he

20    ever tell you he had complained to anyone about

21    anything that was going on with him at the Tesla

22    facility?

23        A.  He did tell me that.  He told me he complained

24    to a number of people.  So this is his claim.  I can go

25    through it with you.  He wrote an e-mail to Ed Romero,

1        Q.   Do you -- did he -- strike that.

2             Did Owen explain to you anything about why he

3    believed his son had been let go from the Tesla

4    facility?

5        A.   He didn't know.  He just said that one month

6    later, his son was let go.  He told his son to report

7    it.  It wasn't clear whether it was because of that or

8    his son lacked direction.  That was a fracturing

9    moment for his son in terms of his motivational work

10   product.  I didn't explore that.

11       Q.   Did Owen provide any type of background as to

12   his son -- for example, education, training, anything

13   like that?

14       A.   No.  He just said that he encouraged his son

15   to apply to Tesla.  That was it.

16       Q.   Okay.  And based on your view and your

17   testing, did you reach any conclusions as to Owen

18   Diaz's psychological state?

19       A.   I did.  If we look at the testing, that was

20   informative.  So the MMPI-2-RF showed a valid protocol,

21   which is quite unusual in litigation matters, as you're

22   probably aware.

23             So there was no indication of any propensity

24   to over-report.  He showed elevations on the two

25   depression scales and ideas of persecution, which would

1   indicate, in this context, he felt he was unfairly

2   treated.  He's also showing elevations on helplessness,

3   hopelessness, self-doubt, social issues -- so there was

4   significant elevations, and he had similar on anxiety

5   and depression on the PAI.

6            And on the TSI-2, it seems like the elevations

7   on intrusive experiences and defensive avoidance can

8   pertain to ongoing thoughts about what had happened,

9   because he said that he was continuing to go over what

10  had happened, and you could see that as a product of

11  three, I think, merging considerations.

12           The first is what happened, to the extent it

13  did happen; the second would be the issues with his

14  son; and the third would be the litigation.  So there's

15  three processes of -- probably fueling that continued

16  pre-occupation or intrusive thinking.

17           So I -- to the extent -- subject to any review

18  of records -- to the extent what happened, happened as

19  portrayed, then I thought that while working, he was

20  under threat.  He's claiming to have been threatened in

21  terms of violence.  The use of racial epithets,

22  certainly even in the absence of explicit physical

23  threats, would connote threat.

24           And so I felt he fulfilled criteria for a

25  diagnosis of an adjustment disorder with anxiety.  And

1   then when he lost his job and lost his son, in this

2   context, he had additional symptoms of depression.  So

3   an adjustment disorder with anxiety and depression, I

4   believe.

5              So he had anxiety first, and then that's --

6   that was mixed with depression.  I think he said he

7   wanted treatment.  I would certainly say treatment's

8   indicated.

9              It's a complicated situation now, because he

10  had the exposure of anxiety.  He's now out of that job,

11  so you would expect a diminution.  I think that's

12  consistent with the record.  His anxiety component has

13  diminished because he's no longer in that.

14             His depression continues, and I think that's a

15  product of what he believes is -- the ongoing nature of

16  that is a product of what he sees as the fracturing

17  experience with his son -- and then the longer-term

18  ramifications, because he's tying his son going off

19  track with this arrest and now he's facing -- or his

20  son is facing what appears to be significant prison

21  time.  So I think we have to factor that into his mood

22  state as continuing.

23             So, for instance, another scenario, in terms

24  of the trajectory of symptoms -- so his anxiety

25  symptoms would have diminished when he left Tesla.

1   Those would still be relevant with respect to

2   heightened sensitivity in the event he goes through

3   anything that's comparable, but he didn't.

4           The depression would -- certainly we would

5   expect to resolve subsequent to Tesla when he got

6   another job that was satisfactory, which would be about

7   six months, because then he went back to work; however,

8   his depression has remained at some level owing to what

9   else has happened, the ramifications of what he sees

10  Tesla with respect to his son.

11          Is that fair?

12      Q.   Yes.  Understood.

13      A.   Yeah, so it's a little complicated in that

14  sense.

15      Q.   So in light of the fact that -- according to

16  your testimony, based on your interview with Owen Diaz,

17  has his anxiety subsided completely, or is it just

18  diminishing?

19      A.   Well, let me look at the test results.  My

20  understanding -- well, certainly the situation that led

21  to the anxiety has resolved.  So I would say that his

22  anxiety has -- that component resolved over time within

23  the six months after he left Tesla.

24          He's at increased vulnerability and

25  susceptibility in certain employment situations.  I

1                          CERTIFICATE

2                              OF

3                CERTIFIED SHORTHAND REPORTER

4

5

6           I, Jessica L. Arias, Certified Shorthand

7   Reporter of the State of California, do hereby certify:

8           That the foregoing deposition was taken before

9   me at the time and place therein set forth, at which

10  time the witness was duly sworn by me;

11          That the testimony of the witness and all

12  objections made at the time of examination were

13  recorded stenographically by me and thereafter

14  transcribed, said transcript being a true copy of my

15  shorthand notes thereof, and a true record of the

16  testimony given by the witness.

17          IN WITNESS WHEREOF, I have subscribed my name

18  this 28th day of February, 2020.

19

20                        _Jessica Arias_

21          _____

22                  Jessica L. Arias, CSR

23                  Certificate No. 13831

24

25