LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
NAVRUZ AVLONI (SBN 279556)
navruz@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:     (415)-453-7352
Facsimile:     (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
ALEXANDER KRAKOW + GLICK LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:     (310) 394-0888
Facsimile:     (310) 394-0811

Attorneys for Plaintiff,
OWEN DIAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,<br><br>             Plaintiffs,<br><br>     v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>             Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4**<br><br>Date: May 11, 2020<br>Time: 10:00 a.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. William H. Orrick<br><br>Trial Date: June 8, 2020<br>Complaint filed: October 16, 2017 |

## <u>TABLE OF CONTENTS</u>

**I.   Opposition to Motion *in Limine* No. 1—Exclude Putative "Me Too" Witnesses Represented by Plaintiff's Counsel** ........................................................................... **5**

   A.   Factual Background ................................................................................................. 5

   B.   Legal Argument ...................................................................................................... 7

      1.   Standard Governing Admissibility of "Me-Too" Evidence ............................. 7

      2.   Demetric Di-az ............................................................................................ 10

      3.   Nigel Jones ................................................................................................. 12

      4.   Melvin Berry ............................................................................................... 13

      5.   Titus McCaleb ............................................................................................. 14

      6.   Brandie To ................................................................................................... 15

      7.   Nathan Fraim ............................................................................................... 16

      8.   Jakel Williams ............................................................................................. 16

      9.   DeWitt Lambert ........................................................................................... 17

**II.   Opposition to Motion *in Limine* No. 2 to Exclude Putative "Me Too" Documentary Evidence** ......................................................................................................................... **18**

   A.   Complaints to WVSG By Titus McCaleb and Percipient Witness Called by Tesla .......... 18

   B.   Investigation of Reprograming of Tesla Dashboard to State "Fuck Nigga." ................... 19

   C.   Graffiti in the Restroom Near Plaintiff's Work Area ......................................... 20

   D.   Persisting Evidence of Bathroom Graffiti in 2017. .......................................... 21

   E.   E-Mail Sent by Tesla's CEO Regarding Tesla Policies and Principles .......................... 22

   F.   Complaint About One of Plaintiff's Co-Workers ............................................... 22

   G.   Evidence of Mirroring Complaint By Plaintiff and a Fellow Production Employee ........ 24

**III.   Opposition to Motion *in Limine* No. 3 to Limit Putative "Me Too" Witnesses to Percipient Witness Testimony** ....................................................................................... **25**

   A.   Lamar Patterson ................................................................................................... 25

   B.   Tamotsu Kawasaki ............................................................................................... 27

   C.   Michael Wheeler .................................................................................................. 27

   D.   Wayne Jackson ..................................................................................................... 28

**IV.   Opposition to MIL No. 4 to Limit the Scope of Plaintiff's Closing Argument** ........... **28**

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bullard v. Wastequip Manufacturing Co. LLC*,
  2015 WL 13757143 (C.D. Cal. 2015)................................................................ *passim*

*Draper v. Rosario*,
  836 F.3d 1072 (9th Cir. 2016) ................................................................................29

*Duran v. City of Maywood*,
  221 F.3d 1127 (9th Cir. 2000) ................................................................................10

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998)........................................................................5, 8, 11, 24

*Fuller v. City of Oakland, Cal.*,
  47 F.3d 1522 (9th Cir. 1995) ........................................................................... *passim*

*Heyne v. Caruso*,
  69 F.3d 1475 (9th Cir. 1995) ................................................................10, 18, 19

*Hill v. Goodfellow Top Grade*,
  2019 WL 4194277 (N.D. Cal. Sept. 4, 2019) ........................................8, 11, 24, 26

*Hurley v. Atlantic City Police Dept.*,
  174 F.3d 95 (3d Cir. 1999)................................................................................9

*Lam v. Univ. of Haw.*,
  164 F.3d 1186 (9th Cir. 1999) ................................................................................9

*Mims v. Federal Express Corp.*,
  2015 WL 12711651 (C.D. Cal. Jan 15, 2015) ................................................8, 10

*Obrey v. Johnson*,
  400 F.3d 691 (9th Cir. 2005) ........................................................................... *passim*

*Pavon v. Swift Transp. Co., Inc.*,
  192 F.3d 902 (9th Cir. 1999) ................................................................................9

*Sprint/United Management Co. v. Mendelsohn*,
  552 U.S. 379 (2008)........................................................................5, 7, 8

*Swinton v. Potomac Corp.*,
  270 F.3d 794 (2001)........................................................................5, 29

*U.S. v. May,*
  622 F.2d 1000 (9th Cir. 1980) ............................................................................21

*United States v. Baltazar Reyes-Garcia,*
  2017 WL 10457478 (W.D. Wash. 2017) .............................................................29

*Vasquez v. County of Los Angeles,*
  349 F.3d 634 (9th Cir. 2003) ......................................................................... *passim*

**Statutes**

42 U.S.C. § 1981 ..........................................................................................................7

**Federal Rules of Civil Procedure**

Rule 26(e)(1)(A) ...........................................................................................16, 20, 21

Rule 37(c)(1) ......................................................................................................14, 22

**Federal Rules of Evidence**

Rule 401 ..................................................................................................................5, 9

Rule 403 ............................................................................................................ *passim*

Rule 404 ...................................................................................................................24

Rule 404(b)(2) .............................................................................................................8

Rule 801(a)................................................................................................................21

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

## I.    Opposition to Motion *in Limine* No. 1—Exclude Putative "Me Too" Witnesses Represented by Plaintiff's Counsel

Tesla argues that the experiences of seven other harassed employees are only relevant if they were harassed by the same individuals as Plaintiff and worked under Plaintiff's supervisors. (*Id.* at 1:19-24) Not true. Evidence that Tesla's complaint procedures were ineffective in other instances is directly relevant to rebut the essential elements of Tesla's *Ellerth*/*Faragher* defense. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998); *see also* Jury Instruction 10.6 (Dkt. 193 35:4-36:21). Evidence that harassment occurred after Plaintiff's repeated complaints to supervisors and management demonstrates that any remedial action taken by Tesla was ineffective in halting the harassment. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1528-9 (9th Cir. 1995); *see also* Jury Instruction 10.6. These witness also are relevant and essential to demonstrate that racial harassment was widespread in Tesla's factory, and that Tesla knew or should have known of ongoing harassment, yet failed to take appropriate corrective measures. *Swinton v. Potomac Corp.*, 270 F.3d 794, 804 (2001); *see also* Jury Instruction 10.7 (Dkt. 193 40:1-42:4). Under applicable Supreme Court precedent, all of these theories and possible avenues for relevance must be considered, and "me-too" testimony cannot be excluded on the basis of a broad, *per se* rule like the one Tesla urges this Court to adopt. *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). Moreover, the Ninth Circuit has explicitly rejected Tesla's overblown concerns about possible "mini-trials" by holding that "me-too" testimony is not "the sort of undue delay and waste of time that the Rules contemplate." *Obrey v. Johnson*, 400 F.3d 691, 698-9 (9th Cir. 2005).

### A.    Factual Background

Plaintiff begins with relevant facts, claims, and defenses in this case, because "[r]elevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

Plaintiff began working at Tesla's factory in the summer of 2015, first under the supervision of Tamotsu Kawasaki and later Tesla employee Ed Romero. (Owen Diaz Depo. Vol.

I, 81:1-10, 81:18-20, Exh. 1[1]) Plaintiff worked in and near freight elevators in the center of the production floor, loading "material and people" for the construction of cars. (*Id*. 90:9-18, 91:2-4; Ed Romero Depo., 67:3-5, 68:15-21, Exh. 2)

Throughout his employment at Tesla, Plaintiff was subjected to repeated racial harassment. Three co-workers in particular—Judy Timbreza, Ramon Martinez, and Robert Hurtado—targeted Plaintiff for harassment, using racial slurs such as "nigger" ("N-----" ) on at least *sixty* occasions combined. (O. Diaz Depo. I 55:18-56:8, 56:9-11, 63:5-8; O. Diaz Depo. II 217:11-218:11, Exh. 3) Martinez also physically threatened Plaintiff while shouting racial slurs and drew and left a racist "pickaninny" image for Plaintiff to find. (*Id*. 105:8-19, 128:10-23; O. Diaz Depo. III 315:8-15, Exh. 4) Plaintiff also witnessed a supervisor call his son, Demetric Di-az, "N-----." (*Id.* 270:23-271:4) Demetric was a production associate on the battery line. (Demetric Di-az Depo. I, 99:22-100:1, Exh. 5.) Plaintiff also heard 8-10 employees saying "N--" in a "malicious way" in the battery production area (O. Diaz Depo. I 5:15-17, 56:12-16, 70:4-13), and saw "N-----" written in the production floor bathrooms near the elevators, the battery area, and the starter line on multiple occasions. (*Id*. 48:8-25, 50:4-7, 50:21-23, 50:24-51:6)

Owen verbally complained to supervisors Romero and Kawasaki about the restroom graffiti, the use of racial slurs, and other racially harassing statements. (O. Diaz Depo. I 52:20-22, 54:5-7, 120:25-121:20; O. Diaz Depo. II 215:20-216:10) He also complained via e-mail about the pickaninny drawing and physical threats from Martinez. (Exhs. 6-7) Under Tesla's policies—which applied equally to contractors like Plaintiff—employees could complain in writing or verbally, to a lead, supervisor, manager, or Human Resources. (Annalisa Heisen Depo. 78:1-15, 147:19-148:3, Exh. 8) The policy was uniformly applied in <u>all</u> areas of Tesla's Fremont facility. (*Id.* 78:11-79:15) Despite Plaintiff's repeated complaints, the racist graffiti remained in the restrooms and Hurtado continued to use racial slurs throughout Plaintiff's employment at Tesla. (O. Diaz Depo. I 49:17-24; O. Diaz Depo. III 312:8-12)

Ultimately, Plaintiff brought suit alleging Tesla maintained a racially hostile work

---

[1] Unless noted, all exhibits are attached to the Declaration of Cimone Nunley.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

environment and failed to prevent harassment, in violation of 42 U.S.C. § 1981. (Dkt. 1-2)[2] Specifically, the complaint alleges that Tesla "failed to investigate and prevent incidents of racial harassment, despite numerous reports and complaints, thereby evidencing a pattern and practice of racial discrimination and harassment." (Dkt. 57 13:23-28, emphasis added)[3]

Tesla asserts three defenses to Owen's complaints: (1) an "*Ellerth/Faragher*" defense, claiming Owen unreasonably failed to take advantage of Tesla's effective antiharassment policies; (2) Tesla took prompt and effective remedial action in response to Owen's complaints; and (3) for those complaints it did not correct, it is not liable because it had no notice of the harassment. (Dkt. 189 15:6-23, 19:5-21:24, 23:22-24:5) In urging this Court to apply a *per se* rule barring the testimony of all employees who did not work in the same department or under the same supervisor as Plaintiff, Tesla seeks to silence seven "me-too" witnesses whose testimony rebuts Tesla's defenses. However, the information is directly relevant.

Ineffective remedial action taken in other cases demonstrates that Plaintiff's alleged failure to use Tesla's complaint procedures was not unreasonable. Evidence that harassment continued after Plaintiff left Tesla proves Tesla did not take effective remedial action to Plaintiff's complaints. Testimony about widespread use of "N-----" from employees who worked at the same time as Plaintiff shows that Tesla had notice of the harassing conduct in its factory. Information about other harassment occurring in Tesla's "open floor" factory, on the production floor where Plaintiff worked, is directly relevant to evaluating Plaintiff's hostile work environment and proving the pattern and practice of harassment Plaintiff experienced.

**B. Legal Argument**

**1. Standard Governing Admissibility of "Me-Too" Evidence**

Whether "me-too" evidence is admissible is a highly fact-specific inquiry, and application of a *per se* rule barring the testimony of other harassment victims because they did not share a plaintiff's supervisor is an abuse of discretion. *Sprint/United Management Co. v.*

---

[2] Plaintiff's amended complaint also includes a negligent hiring and retention cause of action. (Dkt. No. 57) The other causes of action were dismissed via stipulation. (Dkt. 176)
[3] Tesla's erroneous assertion that Plaintiff has not pled a pattern and practice claim is

1    *Mendelsohn*, 552 U.S. 379, 387 (2008) ("*Sprint*"). The reviewing court must instead conduct a

2    fact-specific inquiry that takes into account both parties' claims and theories of the case. (*Id.*)

3    Evidence may only be excluded in limine if it is "inadmissible on all potential grounds." *Mims v.*

4    *Federal Express Corp*., 2015 WL 12711651 at *1 (C.D. Cal. Jan 15, 2015) ("*Mims*").

5        Evidence of other harassment is directly relevant to Tesla's *Ellerth/Faragher* defense. To

6    prevail on this defense, Tesla must demonstrate that it "exercised reasonable care to prevent and

7    correct promptly any [racially] harassing behavior," and that Plaintiff unreasonably failed to

8    avail himself of the corrective and preventative opportunities Tesla offered. *Faragher v. City of*

9    *Boca Raton*, 524 U.S. 775, 778 (1998) ("*Faragher*"). As the Northern District observed in *Hill v.*

10   *Goodfellow Top Grade*—a case Tesla itself relies on in its Motion—"me-too" evidence

11   demonstrating a failure to investigate or address complaints of harassment or discrimination <u>is</u>

12   <u>directly relevant to the reasonableness of a plaintiff-employee's purported reporting failure.</u> *Hill*

13   *v. Goodfellow Top Grade*, 2019 WL 4194277 at *3 (N.D. Cal. Sept. 4, 2019) ("*Grade*") (holding

14   defendant "could open the door" to "me-too" evidence by presenting *Ellerth/Faragher* defense).

15        Likewise, Tesla maintained a uniform anti-harassment and -discrimination policy in its

16   factory. Thus, evidence of this policy's ineffectiveness in other circumstances is directly relevant

17   to Plaintiff's claim that Tesla's policies were grossly inadequate and failed to prevent or remedy

18   the harassment Plaintiff experienced. "Effectiveness [of remedial action] will be measured by the

19   twin purposes of ending the current harassment and deterring future harassment—by the same

20   offender <u>or others</u>. [citation] If…the remedy attempted is ineffectual, liability will attach." *Fuller*

21   *v. City of Oakland, Cal.*, 47 F.3d 1522, 1528-9 (9th Cir. 1995) ("*Fuller*") (emphasis added).

22   Evidence that other harassment occurred—from the same offender or others—after Tesla

23   allegedly took remedial action in response to Plaintiff's initial complaint in July of 2015

24   demonstrates that Tesla's "remedy" did not deter future harassment, triggering liability.

25        The evidence is also relevant and admissible to demonstrate Tesla's racially

26   discriminatory and harassing state of mind, motive, or intent under Rule 404(b)(2). Evidence of

27   harassing conduct towards other members of the plaintiff's protected class—even where

28

contradicted by the plain text of the amended complaint. (Dkt. 185 at 3:3-4.)

dissimilar to the conduct that occurred to the plaintiff—is admissible to demonstrate the "defendant's discriminatory state of mind" towards members of the plaintiff's protected class. *Lam v. Univ. of Haw.*, 164 F.3d 1186, 1188 (9th Cir. 1999). Likewise, anecdotal evidence of discriminary conduct towards others "can be used to establish a general discriminatory pattern" in the employer's practices where, as here, the plaintiff-employee alleges a pattern and practice of discrimination. *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005) ("*Obrey*"). When offered for this purpose, evidence of harassing conduct towards others "clearly meets Rule 401's [relevance] requirements," even if the plaintiff only learned about the other harassing conduct after filing suit. *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 108-12 (3d Cir. 1999).

"Me too" evidence of the rampant use of the word "N-----" throughout the Tesla factory is also relevant to Plaintiff's punitive damages claim. The open use of racial slurs on a factory floor, where management is aware of the conduct and takes "no meaningful steps to stop it," reflects "reckless disregard" or "complete indifference" to federally protected rights— sufficiently reprehensible conduct to support a punitive damages award. *Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 909 (9th Cir. 1999); *and see* Jury Instruction 5.5 (Dkt. 193 31:1-26).

Tesla claims that a limitation to "similarly situated" employees is required, and cites a list of six factors with no legal support. (Dkt. 185 at 4:9-15) The showing is nowhere near as onerous as Tesla proposes. For the purpose of evaluating the admissibility of "me-too" evidence, other employees "are similarly situated when they have similar jobs and [experience] similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

The Ninth Circuit has likewise unambiguously rejected attempts to mischaracterize garden-variety determinations about witness credibility as "time-consuming mini-trials". *Obrey v. Johnson*, which Tesla cites as governing the criteria for admissibility of "me-too" evidence (*See, e.g.*, Dkt. No. 185 at 5-8), squarely held, "While the jury naturally has to determine the credibility of ["me-too"] witness testimony in order to assess the weight it should be accorded, this is not the sort of undue delay and waste of time that the Rules contemplate." *Obrey*, 400 F.3d at 698-9 (holding district court abused its discretion in declining to admit testimony of four "me-too" witnesses based on concerns about "mini-trials") (emphasis added). Rather, "[t]he trial

court should [] first address[] these concerns with the parties through other, less restrictive

means." *Id*. at 699. These less-restrictive means may include a limiting jury instruction stating

that "me-too" evidence is to be considered only for determining Tesla's motive, evaluating the

sufficiency of its remedial actions, or evaluating the reasonableness of any purported failure to

complain. *See Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995) ("*Heyne*").

The sole Ninth Circuit case Tesla cites where "me-too" evidence was excluded for

wasting time is readily distinguishable. In *Duran v. City of Maywood*, 221 F.3d 1127 (9th Cir.

2000), the Ninth Circuit upheld the exclusion of "me-too" evidence because presentation of the

evidence "would [have] require[d] 'the testimony of eighteen to twenty-three witnesses, as well

as no less than four experts.'" *Id.* at 1133. This is hardly analogous to the seven "me-too"

witnesses Plaintiff seeks to examine for approximately <u>fifteen minutes each</u>.

Likewise, Tesla's concerns about undue prejudice are misplaced. Undue prejudice, within

the meaning of Rule 403, is "'the possibility that the evidence will excide the jury to make a

decision on the basis of a factor unrelated to the issues properly before it.'" *Heyne*, *supra*, 69

F.3d at 1481, *citing Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1133 (4th Cir.

1988). As the Ninth Circuit observed in *Heyne*,

> "There is no unfair prejudice, however, if the jury were to believe that an employer's
> sexual harassment of other female employees made it more likely that an employer
> viewed his female workers as sexual objects, and that, in turn, convinced the jury that an
> employer was more likely to fire an employee in retaliation for her refusal of his sexual
> advances. There is a direct link between the issue before the jury—the employer's motive
> behind firing the plaintiff—and the factor on which the jury's decision is based—the
> employer's harassment of other female employees." *Id.*

In other words, the defendant is not unfairly prejudiced by evidence of other harassment, because

other harassment speaks directly to the claims and defenses at issue.

## 2.   Demetric Di-az

Tesla seeks to exclude the testimony of Plaintiff's son, Demetric Di-az. Tesla presents no

evidence to demonstrate where Demetric worked, what his job duties were, or what harassment

he complained of, impermissibly asking the Court to rule "in a vacuum." *Mims*, *supra*, 2015 WL

12711651 at *5. This lack of factual support is grounds for the Court to deny the Motion. *See*

1  *Bullard v. Wastequip Manufacturing Co. LLC*, 2015 WL 13757143 at *8 (C.D. Cal. 2015).

2      Demetric began working in the Tesla battery production department in August 2015. (D.

3  Di-az Depo. 67:22-25, 99:22-100:1, Exh. 19) Demetric will testify that his supervisor called him

4  "N-----" "every day." (*Id.* 119:18-120:1) Demetric will corroborate that Plaintiff saw Demetric's

5  supervisor calling him "N-----." (O. Diaz Depo. I 5:15-17, 56:12-16, 70:4-13; O. Diaz Depo. II

6  270:23-271:4) Demetric complained to his second-level supervisor and Tesla's Human

7  Resources, but no action was ever taken and the harassment did not stop. (D. Di-az Depo.

8  161:23-162:12, 163:5-164:2) Demetric's experience of commonly hearing "N-----" in the battery

9  department, having the word directed at him in a hostile manner, and having his complaints

10  ignored is plainly relevant to evaluating the breadth of the hostile work environment that existed

11  and the inadequacy of Tesla's responsive corrective action. Under *Vasquez,* Demetric and his

12  father were similarly situated, because they worked in the same area, performed similar job

13  duties, and were subjected to similar harassing conduct. *Vasquez*, *supra*, 349 F.3d at 641.

14      Moreover, racial harassment that Plaintiff did not directly witness is relevant to

15  evaluating the credibility of Plaintiff's claim that he heard the n-word used in the battery

16  department on at least two occasions. Testimony that a supervisor used "N-----" in the battery

17  department on a daily basis tends to make it more likely that other employees followed the

18  example set by supervisors at Tesla's factory and used "N-----" regularly.

19      Ineffective response to Demetric's complaints also rebuts Defendant's *Ellerth/Faragher*

20  defense, by demonstrating that Tesla had no "proven, effective mechanism for reporting and

21  resolving complaints" of harassment. *Faragher*, *supra*, 524 U.S. at 806. Evidence that Tesla's

22  complaint procedure was ineffective speaks directly to the reasonableness of any purported

23  reporting failure by Plaintiff. *Grade*, *supra*, 2019 WL 4194277 at *3.

24      Demetric's complaints also speak to the efficacy of Tesla's remedial action. Owen first

25  complained about racial harassment in July 2015. Demetric was subsequently harassed by a

26  supervisor, demonstrating that Tesla's actions after the July complaint did not deter future

27  harassment from others, as required by *Fuller*. *Fuller*, *supra*, 47 F.3d at 1528-9 (9th Cir. 1995).

28      Tesla argues that this evidence should also be excluded under Rule 403. However, under

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

*Obrey*, "me-too" witness testimony and the attendant credibility determinations a jury must make do not "waste time" within the meaning of Rule 403. *Obrey*, *supra*, 400 F.3d at 698-9. Plaintiff and Tesla each seek to examine Demetric for just thirty minutes, which is proportional considering Demetric was present for at least one incident of harassment that Plaintiff witnessed. (Dkt. 197 3:3-9) Accordingly, his testimony should be admitted.

**3. Nigel Jones**

Tesla presents no evidence of when Jones worked at the Tesla factory, sufficient grounds alone to deny this motion. *See Bullard*, *supra*, 2015 WL 13757143 at *8. Jones began working at Tesla in September 2015, just three months after Plaintiff started at Tesla. (Nigel Jones Dec. at ¶1) Jones "work[ed] in the elevators very often," as well as in the recycling centers with Plaintiff's harasser Ramon Martinez. (*Id.* at ¶6) Jones heard "N-----" multiple times a day through the factory…throughout [his] employment at Tesla." (*Id.* at ¶¶ 4, 6-7) Jones complained often about the racial harassment. When Jones complained, nextSource Program Manager Wayne Jackson—who received Plaintiff's complaints of harassment—was often in the office. (*Id.* at ¶9) Jones also discussed racial harassment in the factory with Plaintiff's supervisor, Josue Torres. (*Id.* at ¶ 10) Corroborating Plaintiff's complaints about graffiti, as late as 2018, Jones also observed "N-----" scrawled in restroom stalls. (*Id.* at ¶5)

Jones's testimony corroborates (1) the existence of racist graffiti in the restroom, (2) rampant use of the term "N-----" by and in the presence of supervisors, (3) and receipt of multiple complaints of a hostile work environment based on race, which did not result in effective corrective action. Jones and Diaz worked in the same part of the factory, with the same individuals, during overlapping time frames, and experienced similar conduct, making them "similarly situated." *Vasquez*, *supra*, 349 F.3d at 641. Given the shared experiences and overlapping timeframe, it is irrelevant that Jones and Diaz did not personally know each other. Jones's testimony confirms the widespread nature of the racially hostile conduct, and Tesla's claim that Jones's experience is temporally and spatially removed from Plaintiff's is meritless.

Jones's testimony is also directly relevant to whether Tesla had notice of the racially harassing environment, through the reports made to supervisors Josue Torres and Wayne

Jackson. It is also relevant to Tesla's claimed *Ellerth/Faragher* defense, because despite Jones's frequent complaints, the harassment persisted for a full three years. (Jones Dec. at ¶¶ 3-5, 9) Jones' testimony rebuts Tesla's claims of promptly addressing complaints of harassment, and implementing and promulgating effective anti-harassment procedures.

Finally, Tesla argues that Jones' testimony will require "a minimum of four mini trials" to evaluate the credibility of his claims. (Dkt. No. 185 at 9:4-9) Not true. Plaintiff seeks to examine Jones for a mere fifteen minutes, and Tesla seeks to cross-examine him for only fifteen minutes. (Dkt. 197 5:9-15) Jones's testimony is not a side-show, but a building block in Plaintiff's case in chief, and strikes at the heart of Tesla's *Ellerth/Faragher* defense. Under these circumstances, consumption of thirty minutes of trial time does not substantially outweigh the direct relevance of Jones's testimony. Accordingly, Jones's testimony should be admitted.

### 4. Melvin Berry

As with Jones, no evidence is offered as to Berry's position, work area, or complaints. Berry was employed as a Production Associate from June 2015 to October 2016—the same timeframe Plaintiff worked at Tesla's factory. (Berry Dec. at ¶2) Berry worked in Supermarkets 1A and 2, "close to the elevators." (*Id*. at ¶6) Berry heard "N-----" used "constantly" near the elevators and observed "supervisors, leads, and some members of management" make racially disparaging comments in the elevator area. (*Id*.) Like Plaintiff, Berry complained to Human Resources but "nothing changed" and the harassment continued. (*Id*. at ¶4)

Berry and Plaintiff are similarly situated because they worked in the same area of the factory, during the same time period, performing similar job duties, and experienced similar harassing conduct and inaction from Tesla. *Vasquez*, *supra*, 349 F.3d at 641. For the same reasons as Di-az and Jones, Berry's testimony is plainly relevant and admissible to corroborate that use of "N-----" was widespread and prevalent, to demonstrate Tesla had notice of the harassment, and that Tesla did not respond to the harassment with effective corrective action. Likewise, lack of response to Berry's complaint rebuts Tesla's *Ellerth/Faragher* defense by demonstrating that Tesla's remedial procedures were not "proven" and "effective." Berry's testimony that Tesla's response was ineffective corroborates Plaintiff's claim. (Berry Dec. at ¶4)

Tesla also argues that Berry's testimony should be excluded, because Plaintiff failed to provide Berry's contact information until after the close of discovery. (Dkt. 185 at 10:4-5) However, a witness preclusion sanction is not appropriate where, as here, the failure to disclose was harmless. Fed. R. Civ. P. 37(c)(1). Tesla was previously aware of Berry's existence and the scope of his testimony from a prior arbitration in March 2019, where Tesla stipulated to the scope of his testimony based on knowledge it had about his tenure at its Factory. (Lambert Arb. Transcript 3-15-19 241:1-243:21, Exh. 9)

In this litigation, Plaintiff subsequently disclosed Berry's name via supplemental disclosure on March 11, 2019. (Exhs. 10-11) Tesla was Berry's former employer, and in possession of his contact and identifying information at all relevant times. Tesla could have located Berry, and chose not to. However, Plaintiff produced Berry's contact information on October 16, 2019, just <u>five days</u> after the close of fact discovery. (Exhs. 12-13; Dkt. 78 1:17) The parties continued to depose witnesses with the Court's leave until October 24, 2019, with trial not due to start for another <u>five months</u>. (Dkt. 78 1:12-13) Given that Tesla was aware of Berry's anticipated testimony as early as <u>March of 2019</u>, and had his contact information at all relevant times, the failure to disclose his contact information until a scant five days after the fact discovery cutoff is harmless, and any claims of prejudice by Tesla smack of disingenuousness.

Nor does Berry's testimony require the undue consumption of time, as each party seeks to examine Berry for <u>fifteen minutes</u>. (Dkt. 197:1:6-8)

### 5. Titus McCaleb

McCaleb began working on Tesla's production floor as a contractor in October 2016, approximately six months after Plaintiff's employment ended. (McCaleb Dec. at ¶2) Like Plaintiff, McCaleb was "regularly" called "N-----" by multiple employees. (*Id*. at ¶¶3-4) Like Plaintiff, McCaleb complained to multiple leads, supervisors, managers, and Human Resource staffers of both Tesla and his contracting agency. (*Id*. at ¶¶5-7) McCaleb also complained to Annalisa Heisen, Tesla's Person Most Knowledgeable, during "four or five conversations", and met with her to "discuss the racial harassment occurring in the factory." (McCaleb Dec. at ¶6)

McCaleb's testimony shows that, to the extent corrective action was taken during

Plaintiff's employment, it was ineffective, given that complaints about the use of "N----" continued six months after Plaintiff's employment ended. Identical conduct that occurred on the same production floor, with continuing unaddressed complaints to upper management, with similar effective corrective action, reflects "similarly situated" employees experiencing "similar conduct." *Vasquez*, *supra*, 349 F.3d at 641. McCaleb's testimony directly rebuts the Tesla's *Ellerth/Faragher* defense, given his multiple complaints through appropriate channels. His experience confirms that Plaintiff's purported failure to invoke Tesla's complaint policy could hardly be unreasonable if the policy was ineffective during both Plaintiff's and McCaleb's tenure. Likewise, McCaleb's testimony rebuts Tesla's claim that it took prompt and effective remedial action, because the effectiveness of an employer's remedial action is measured by its ability to deter harassment from the same harassers at issue in Plaintiff's case and others. *Fuller*, *supra*, 47 F.3d at 1528-9.

McCaleb is also an effective impeachment witness of Tesla's PMK, Heisen. Heisen testified that she did not "recall specifics" around any investigations she conducted into use of "N-----" in Tesla's factory (Heisen Depo. 43:2-15). McCaleb did, stating that he met with Heisen approximately four or five times about "racial harassment occurring in the factory." (McCaleb Dec. at ¶6) As the PMK for Tesla, Heisen's inability to recall a series of detailed meetings regarding not just individual complaints of racial harassment, but widespread use of "N----" in Tesla's factory, demonstrates either a lack of credibility or a lack of recollection on Heisen's part, in addition to being emblematic of Tesla's handling of race-based conduct.

Tesla last cites the same concerns about "mini trials." However, no risk of the undue consumption of time exists, where each party seeks to examine McCaleb for fifteen minutes. (Dkt. 197 6:17-20) McCaleb's testimony is a building block of Plaintiff's claim that use of "N--" was widespread throughout the Tesla factory, and complaints were ignored. The scant time spent does not substantially outweigh the relevance of this evidence. *Obrey*, *supra*, 400 F.3d at 698-9. Thus, his testimony is relevant and admissible.

### 6. Brandie To

Tesla argues that Brandie To, one of the Human Resources employees who addressed

McCaleb's complaints, must be precluded from testifying because Plaintiff failed to identify her in initial disclosures. (Dkt. No. 185 at 7:2-4) However, Ms. To was disclosed in former defendant West Valley Staffing Group's document production, which was served on Tesla's counsel on March 8, 2019. (Exhs. 14-15) A party is not required to amend its initial disclosures if a witness is identified "during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Thus, Ms. To's testimony cannot be excluded.

### 7. Nathan Fraim

Tesla includes no evidence of Fraim's position, dates of employment, or employer— sufficient basis alone for the Court to deny its Motion. *See Bullard*, *supra*, 2015 WL 13757143 at *8. Fraim, a Caucasian man, began working for Tesla in January 2017, less than a year after Plaintiff left Tesla. (Fraim Dec. ¶2) Fraim was a Production Associate and, like Plaintiff, worked near the production lines on the first floor of the factory. (*Id*. ¶3) Like Plaintiff, Fraim witnessed racist graffiti in the restroom, complained to his supervisor, and no action was taken. (*Id*. ¶4-5)

Fraim and Plaintiff worked in the same building on the same production floor, witnessed the same type of racist graffiti, and were subject to the same anti-harassment and -discrimination policies. (Heisen Depo. 78:11-79:15) Thus, the men were similarly situated. *Vasquez, supra*, 349 F.3d at 641. That the same conduct occurred a year after Plaintiff's employment demonstrates that any remedial action Tesla took was ineffective in ending harassing behavior and deterring future harassment by other actors. *Fuller,* 47 F.3d at 1528-9. Fraim's testimony also reflects Tesla's failure to take effective corrective action, negating Tesla's *Ellerth*/*Faragher* defense.

Finally, Tesla argues that Fraim's testimony is irrelevant and excludable under Rule 403 because "at least two mini trials would be required," suggesting the testimony would waste time. (Dkt. No. 185 at 6:20-22) The direct relevance of this testimony is not substantially outweighed by the fact that Plaintiff seeks to examine Fraim for only six minutes, and Tesla for 15. (Dkt. 197 3:26-4:4) Accordingly, Fraim's testimony should not be excluded.

### 8. Jakel Williams

Williams began working for Tesla in June 2017, approximately one year after Plaintiff stopped working at Tesla. She was not a security guard but worked in the battery department,

where Plaintiff witnessed the word "N-----" used by a supervisor toward his son. Williams's coworker called her "N-----," and she regularly heard the word used throughout the factory. Williams made multiple complaints to her supervisor and to HR. In response to Williams's complaints, Tesla's HR representative failed to attend a scheduled meeting to discuss the harassment. To Williams's knowledge, Tesla took no action to discipline her harasser.

Plaintiff and Williams were similarly situated, because they performed similar job duties and experienced similar harassment just a year apart. *Vasquez, supra*, 349 F.3d at 641. Williams's testimony corroborates Plaintiff's experience. Ongoing use of the word "N-----" is relevant to prove the insufficiency of Tesla's remedial action taken to investigate and prevent harassment, given the complaints voiced by Williams and Plaintiff. *Fuller*, *supra.* Such remedial action is plainly ineffective if, a year after Plaintiff's employment with Tesla, employees are still complaining about prevalent use of "N-----" and other slurs in the same areas where Plaintiff experienced it. Williams's testimony is thus relevant to Tesla's *Ellerth/Faragher* defense.

This evidence is not excludable under Rule 403, which requires that the risk of wasting time "<u>substantially</u> outweigh" the testimony's relevance. Plaintiff will examine Ms. Williams for only 15 minutes, and Tesla for 15 minutes. (Dkt. 197 8:4-6) The consumption of so little trial time on relevant evidence is not the "waste of time" contemplated by the Rules. *Obrey*, *supra*, 400 F.3d at 698-9. Ms. Williams's testimony must thus be admitted.

### 9. DeWitt Lambert

Tesla includes no evidence demonstrating Lambert's position, dates of employment, or employer—sufficient basis for the Court to deny its Motion. *See Bullard, supra*, 2015 WL 13757143 at *8. Lambert was a Tesla employee (not a Chartwell contractor), who began working for Tesla in June 2015, at the same time as Plaintiff. (Exh. 16 2:19-22) Like Plaintiff's son, Lambert was a Production Associate, and like Plaintiff, worked on the production floor of Tesla's Fremont factory. (*Id*. at 4:1-2) Like Plaintiff, Lambert's coworkers called him "N-----" on a continuous basis and threatened him with violence. (*Id*. at 4:16-24) Lambert's coworkers threatened to cut his body into pieces and send his body parts to his family members. (*Id*. at 4:22-24) Lambert complained to his supervisor and Human Resources, but no effective corrective

1    action was taken. (*Id*. at 5:10-20) Instead, the harassment continued until Lambert applied for

2    and received a transfer to a different position in approximately April 2016—one month after

3    Plaintiff's employment at Tesla ended. (*Id*. at 6:17-18) Lambert's testimony confirms

4    widespread use of "N-----" which permeated the production floor of the Fremont factory. While

5    Lambert had different supervisors and harassers, under *Sprint*, this difference does not render his

6    testimony *per se* irrelevant.

7           Plaintiff seeks to examine Lambert for <u>just fifteen minutes</u>, so there is no danger of an

8    undue waste of time. Fed. R. Evid. 403. The evidence is not unfairly prejudicial, because it does

9    not encourage a verdict on issues not properly before the Jury. *Heyne*, *supra*, 69 F.3d at 1481.

10   ## II.   Opposition to Motion *in Limine* No. 2 to Exclude Putative "Me Too" Documentary

11   Evidence

12          Tesla argues narrowly that information is only relevant if it pertains to Plaintiff or his

13   supervisors. To the contrary,  evidence of other complaints is highly relevant to Tesla's

14   *Ellerth*/*Faragher* defense, Tesla's notice of the harassing conduct, rampant use of the word "N---

15   --," and whether Tesla failed to take adequate remedial action in response to complaints of racial

16   harassment. The "me too" documentary evidence tends to prove or disprove the foregoing issues,

17   and therefore cannot be excluded as unfairly prejudicial under Rule 403. To the extent the Court

18   has concerns about undue consumption of time, it must first address these concerns via less

19   restrictive measures than wholesale exclusion. *Obrey*, *supra*, 400 F.3d at 699. Additionally, the

20   Court should deny this motion in its entirety because Tesla fails to submit the evidence it seeks

21   to exclude for the Court's review. *See Bullard, supra*, 2015 WL 13757143 at *8.

22   ### A.   Complaints to WVSG By Titus McCaleb and Percipient Witness Called by Tesla

23          Tesla seeks to exclude two documents reflecting complaints made to former defendant

24   West Valley Staffing Group, trial exhibits 70 and 113. (Exhs. 17-18) Erroneously, Tesla claims

25   both documents concern a single complaint from 2017. (Dkt. No. 185 at 12:14-18) This is not so.

26          Trial Exhibit 70 concerns a complaint lodged by Titus McCaleb, concerning racial

27   harassment he experienced at Tesla in 2016 and 2017. (Exh. 17) (For McCaleb's history, see

28   Section D above.) This document corroborates the timeline of McCaleb's complaints, and is

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

neither a "time-consuming mini trial" nor "the sort of undue delay and waste of time that the Rules contemplate." *Obrey*, *supra*, 400 F.3d at 698-9. Nor is the document unfairly prejudicial under *Heyne*, because a direct link exists between the issues before the jury—Tesla's policies towards complaints of racial harassment—and McCaleb's unaddressed complaints of racial harassment. *Heyne, supra*, 69 F.3d at 1481.

Trial Exhibit 113 records a complaint handled by Rovilla Wetle, a witness Tesla seeks to examine. (Exh. 18) While working for Tesla and West Valley Staffing Group, Ms. Wetle denied that she investigated any complaints of racial harassment or discrimination. (Rovilla Wetle Depo. 145:2-5, 145:21-146:2, Exh. 19) Trial Exhibit 113 impeaches Ms. Wetle's testimony with details of an investigation she participated in with respect to a complaint of racial harassment.

**B. Investigation of Reprograming of Tesla Dashboard to State "Fuck Nigga."**

Tesla seeks to exclude Trial Exhibit 107, which discusses an investigation into a car dashboard that read "fuck nigga." (Exh. 20) The e-mails, dated April 29, 2016, <u>involve Erin Marconi, an HR employee who participated in handling Plaintiff's complaints</u>. (*Id.*) Tesla has identified Ms. Marconi as a witness who will testify about the "complaint and investigation of Owen Diaz." (Dkt. 197 6:6-11) Marconi did not recall investigating any claims involving use of "N-----" at deposition. (Erin Marconi Depo. at 37:4-6, Exh. 20) This exhibit is thus directly relevant to impeaching or correcting Marconi's testimony.

Exhibit 107, taken with Marconi's testimony, is also relevant to proving the ineffectiveness of Tesla's remedial action. First, the document echoes the racial harassment Plaintiff complained of in July 2015 (i.e. rampant, widespread use of "N----" in the Tesla workplace) and shows the harassment was still occurring, nearly a year later. This evidence tends to prove or disprove the effectiveness of any remedial measures taken by Tesla. *Fuller, supra*. Second, the evidence tends to rebut Tesla's *Ellerth/Faragher* defense by demonstrating that Tesla did not have a "proven, effective" system for dealing with complaints of racial harassment.

The testimony of Franco and Hedges, as participants in the investigation, is relevant in clarifying Marconi's role in the investigation. As Tesla managers and HR staff, Franco and Hedges can expand on the company's policies for investigating claims of racial harassment and

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

Franco can testify about Tesla's policies as implemented or not.

Tesla argues that Exhibit 107 and examination of Hedges and Franco should be excluded under Rule 403 "because a mini trial would be required to asses the validity of any such claims." (Dkt. No. 185 at 14:18-20) To the contrary, Trial Exhibit 107 is a building block of this case, as it constitutes documented proof of widespread, prevalent use of the word "N-----" —with no need for the jury to assess the credibility of the complaint. Likewise, related examination of Hedges and Franco for a mere fifteen minutes each is not an undue waste of time under *Obrey*.

Tesla also argues that exclusion of witness Josh Hedges is warranted, because Plaintiff did not timely amend his initial disclosures. Mr. Hedges was identified via Tesla's own document production, <u>after the close of discovery</u>, on October 11, 2019. (Exh. 22) A party is not required to include a witness in its disclosures if the witness is identified "during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Because Mr. Hedges was identified via Tesla's own document production, Plaintiff was under no duty to identify Hedges yet again to Tesla. Accordingly, this document and the witnesses should not be excluded.

## C. Graffiti in the Restroom Near Plaintiff's Work Area

Tesla next seeks to exclude Exhibit 109, which details graffiti found "in the [factory] bathroom located by the elevator" which Plaintiff used. (Exh. 23 p. 2) This graffiti was found in May 2016, just two months after Plaintiff left Tesla. Given Plaintiff's testimony that racist graffiti persisted for the duration of his employment at Tesla, and was still present in the restroom stalls after he left (O. Diaz. Depo. I 49:12-24), the trier of fact could reasonably conclude that the graffiti discussed in Exhibit 109 was the same graffiti of which Plaintiff complained. Exhibit 109 corroborates Plaintiff's complaints, and proves the insufficiency of Tesla's remedial actions. First, the e-mail thread itself discusses clean-up of the graffiti. (Exh. 23 p. 1) No mention is made of investigating its source or taking remedial measures to prevent the harassment from occurring. Second, the reoccurrence of racist graffiti invoking the word "N-----" just two months after Plaintiff left Tesla demonstrates that any remedial actions taken were insufficient, tending to rebut Tesla's *Ellerth*/*Faragher* defense.

In addition, Tesla seeks to exclude testimony of Donet and Lipson, because neither was

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

identified in Plaintiff's initial disclosures. (Dkt. No. 185 at 15:1-4) Tesla identified Donet and Lipson via Tesla's document production <u>after the close of discovery</u>, on October 11, 2019. (Exh. 21) Thus, Plaintiff had no obligation to re-identify Tesla's own employees as witnesses in his initial disclosures. Fed. R. Civ. P. 26(e)(1)(A).

### D.  Persisting Evidence of Bathroom Graffiti in 2017.

Tesla seeks to exclude Trial Exhibit 110, an image showing additional graffiti in Tesla's bathroom. (Exh. 24) Tesla claims the image was "responsive" to its discovery requests and accuses Plaintiff of improperly withholding it. (Dkt. No 185 at 8-11) Tesla fails to identify which request the image was responsive to. This is because the image was not responsive to any of Tesla's discovery requests. Moreover, Tesla received the document twice: first at Donet's deposition, and then in conjunction with <u>Fraim's complete declaration</u> in related state-court litigation on January 21, 2020. (Exhs. 25-26) The proof of service was addressed to Patricia Jeng, Tesla's counsel in this matter. (Exh. 26) Given that Tesla received Fraim's complete anticipated testimony in January, a full <u>five months</u> before the currently-scheduled trial date, Tesla cannot claim any harm by its late disclosure.

Fraim took the photograph in one of Tesla's restrooms in 2017. (Fraim Dec. ¶ 4) Trial Exhibit 110 is relevant to the timeliness of any remedial actions purportedly taken by Tesla to correct the racist graffiti of which Plaintiff complained, which continued to reoccur even after Plaintiff's tenure at Tesla. The ongoing presence of racist graffiti is directly relevant to Tesla's *Ellerth*/*Faragher* defense. Tesla's concerns about the location of the image go to its weight—and certainly may be raised before the trier of fact—but do not speak to its admissibility.

Defendant also objects to the photograph as hearsay. Photographs are not hearsay because "a photograph is not an assertion, oral, written, or nonverbal, as required by Fed. R. Evid. 801(a)." *U.S. v. May*, 622 F.2d 1000, 1007 (9th Cir. 1980). Nor is the written epithet in the photograph hearsay. Hearsay is an out-of-court-statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(a). The "statement" contained in the photograph is, "White Power Nigger!" Plaintiff does not offer the statement for the truth of the matter it asserts (presumably the "superiority" of the white race). Rather, Plaintiff offers the exhibit as evidence of the

prevalent racial hostility faced by Plaintiff in the form of graffiti, which persisted in Tesla's factory in 2017, despite complaints by Plaintiff and others in 2015 and 2016.

### E. E-Mail Sent by Tesla's CEO Regarding Tesla Policies and Principles

Tesla argues that an e-mail sent by CEO Elon Musk, regarding Tesla's "core principles" (Exh. 27 p. 1) should be excluded. The e-mail, originally sent in 2013, discusses the need to keep factory workers informed of disciplinary actions against fellow employees, and was re-sent in 2017 to emphasize these core principles to employees and to explain that employees who receive apologies from "jerks" need "to be thick-skinned and accept that apology." (*Id*. at p. 1-2) This last core principle contradicts Tesla's zero-tolerance policy for harassment.

First, Tesla contends the e-mail should be excluded because it was not produced in discovery. However, Tesla fails to establish that the document was responsive to any Tesla-propounded discovery requests. Because the email was authored by Tesla's CEO, it has always been in its possession, preventing Tesla from claiming ignorance of its content. And Tesla reluctantly admits, in a footnote, that it was reminded of the existence of the document when Plaintiff  produced it for use as an exhibit at the deposition of Victor Quintero on <u>June 7, 2018</u>, a full <u>two years</u> before trial was set to commence. The failure was harmless, because Tesla received the document a full two years ago—thus preventing its exclusion under Rule 37(c)(1).

Tesla next argues that the CEO's statement of Tesla "core principles" is irrelevant, because Plaintiff never personally received the document. Plaintiff's personal receipt of the document is irrelevant, as it reflects a statement of Tesla's "core principles" with respect to Plaintiff. That Tesla did not follow this policy is directly relevant to Plaintiff's claims, because a failure to follow this aspect of the policy corroborates Plaintiff's claims that Tesla failed to follow its stated policies in other respects (e.g. by failing to seriously investigate or address his repeated complaints of harassment).

### F. Complaint About One of Plaintiff's Co-Workers

Tesla contends that a complaint lodged by a fellow employee Javier Temores (Exh. 28) is irrelevant because it did not involve an employee who harassed Plaintiff. Tesla relies on Plaintiff's deposition testimony to demonstrate that Plaintiff did not know Troy Dennis,

Temores' harasser. (Dkt. No. 185 at 18:11-4) In a blatant attempt to mislead the Court, Tesla omits crucial context from its Motion: <u>Plaintiff and Troy Dennis were co-workers</u>, and on the <u>preceding page</u> of Plaintiff's deposition, Tesla's counsel questioned Plaintiff about an e-mail thread discussing a disagreement between the two men that resulted in a final written warning to both of them. (O. Diaz Depo. I at 174:9-21, Exh. 21) Plaintiff did not recall receiving a "final written notice," nor did he recall working with Dennis. (*Id.* at 174:22-175:9, 175:20-22) However, the documentary evidence plainly demonstrates this was not the case. (*Id.*, Exh. 21) Additionally, the complaint was handled by Plaintiff's supervisor, Ed Romero, and the complaint occurred during the night shift, which Plaintiff worked. (Exh. 28)

Evidence of this complaint is relevant for a multitude of purposes. Whether or not Plaintiff recalled Troy Dennis's name, it can hardly be argued that a complaint involving one of Plaintiff's coworkers assigned to work on the elevators, during the pendency of Plaintiff's employment at Tesla, during the shift that Plaintiff worked, and handled by Plaintiff's immediate supervisor, Romero, is not relevant to evaluating the hostility of Plaintiff's working environment. Even if Plaintiff did not hear the harassment, the evidence is plainly relevant to corroborate Plaintiff's claim that the use of racial slurs was widespread in his work area.

Evidence of a complaint about the use of the n-word in Plaintiff's work area also speaks to the sufficiency of Tesla's remedial action in response to Owen's complaints. Owen first complained about the use of the n-word in the elevator area in July of 2015. That use of the word was documented as late as December of 2015 demonstrates that any remedial action Tesla took in response to Owen's July complaints was insufficient to halt the use of the slur in Plaintiff's work area. This also speaks directly to the proven effectiveness of Tesla's policies, a required element for its *Faragher/Ellerth* defense.

The complaint is also relevant for impeachment purposes. At deposition, Plaintiff's supervisor Ed Romero testified that Owen Diaz was the only employee who complained about offensive language at the Tesla factory. (Romero Depo. at 65:23-66:11) Evidence of another complaint casts Romero's credibility and recall into doubt, which further heightens its relevance. Because the evidence involves racial harassment occurring during Plaintiff's shifts, in Plaintiff's

1    work area, during the time Plaintiff worked at the Tesla factory; and <u>because it is relevant to key</u>

2    <u>witness Romero's credibility</u>, evidence of this complaint is relevant and admissible.

3         Tesla claims the evidence should be excluded under Rule 403 because a "mini trial"

4    would be required to assess the validity of each complaint. However, Tesla fails to explain how

5    introduction of a single document, implicating only one witness in the case (Romero) requires

6    such an undue consumption of time that outweighs the direct relevance of this evidence.

7    **G.  Evidence of Mirroring Complaint By Plaintiff and a Fellow Production Employee**

8         Tesla seeks to exclude a complaint from Tesla employee Jeff Henry. Henry worked on

9    the Tesla production floor, where Plaintiff worked during late 2015. (Exh. 29 at p. 1) Henry's

10   complaint identified a threat of racial slurs and physical intimidation—just like Plaintiff's

11   complaint about Martinez in October 2015. (*Id*. at p. 2) During an investigation, Tesla HR staff

12   learned that "N-----" was "common talk on the line." (*Id*.) The HR staffer charged with

13   investigation proposed a final written warning—just as Plaintiff's second-level supervisor Victor

14   Quintero proposed for Plaintiff's harasser. (*Id*.)

15        Evidence of this complaint and the recommended discipline is plainly relevant under

16   Rule 404, as proof of Tesla's remedial plan and its effectiveness for addressing complaints of

17   racial harassment. In both instances Plaintiff contends that Tesla issued, at best, a lukewarm,

18   ineffective repudiation of harassing conduct and ignored complaints of the repeated or ongoing

19   harassment and threats of intimidation and physical violence.

20        If harassment of the same type that Plaintiff complained of in July and October 2015

21   continued into December 2015, Tesla's response and corrective actions tend to prove that Tesla

22   failed to implement effective remedial action to deter future harassment from others, as required

23   under *Fuller*, *Ellerth*, and *Faragher*. Under *Grade*, evidence of this ineffective corrective action

24   is also relevant to the reasonableness of any purported reporting failure by Plaintiff as part of

25   Defendant's *Ellerth*/*Faragher* defense.

26        Tesla also argues that witnesses Jeff Henry, Maggie Crosby, James Paul, and Josh Mantz

27   must be precluded from testifying because Plaintiff failed to identify them in his initial

28   disclosures. As above, all four witnesses were identified via <u>Tesla's</u> document production <u>after</u>

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

the close of discovery. (Exh. 22) Because the evidence is relevant, and because a witness

preclusion sanction is not available for witnesses that <u>Tesla itself</u> identified via its document

production, the evidence is admissible.

### III. Opposition to Motion *in Limine* No. 3 to Limit Putative "Me Too" Witnesses to Percipient Witness Testimony

Tesla also seeks to limit the testimony of Plaintiff's co-workers, working in the *same*

*locations* as Plaintiff, to only testimony which they personally witnessed. Conspicuously absent

from Tesla's Motion is any legal authority justifying this severe restriction which, as outlined

below, is wholly unjustified.

### A. Lamar Patterson

Patterson worked at Tesla from November 2015 through August  2016. (Lamar Patterson

Depo. 41:18-42:12, Exh. 30) Plaintiff was Patterson's lead, or immediate supervisor, and both

men were supervised by Ed Romero. (*Id*. 141:15-20) Corroborating Plaintiff, Patterson recalled

seeing "N-----"  written in the bathrooms near the elevators, in addition to a swastika ("Nazi

sign"). (*Id*. at 99:2-12, 101:15-22) Patterson complained to Plaintiff, who in turn complained to

Romero. (*Id*. at 101:9-17) Patterson also heard "N-----"used in the facility, and complained to

Romero via voicemail that "N-----" was used freely. (*Id*. at 94:1-6, 95:5-8), but to Patterson's

knowledge no action was ever taken. (*Id.* at 94:7-95:4)

Tesla offers a variety of increasingly implausible justifications to exclude Patterson's

testimony. It claims Patterson should not be allowed to testify about interactions with Plaintiff's

harasser, Ramon Martinez, because Patterson lacks personal knowledge. Just one sentence later,

however, Tesla provides citations from Patterson's deposition demonstrating that Patterson

personally spoke to Martinez on two or three occasions (*Id*. at 59:11-60:16), and personally

witnessed Plaintiff and Martinez interacting on approximately two occasions. (*Id*. at 60:11-

61:10) Tesla next seeks to preclude Patterson from testifying that Plaintiff informed him

Martinez's cartoon drawing was offensive, because Patterson did not personally witness the

drawing and testimony about Plaintiff's statements is cumulative. (Dkt. No. 185 at 21:5-9)

However, this constitutes a prior consistent statement, which corroborates and reinforces

1  Plaintiff's claim that he found the racist drawing subjectively offensive. Such a statement rebuts

2  Tesla's argument that Plaintiff had "No Subjective Belief of a Hostile Working Environment that

3  Altered his Working Conditions." (Dkt. No. 189 at 15:6-8) As a percipient witness, Patterson's

4  corroborating testimony is directly relevant and non-cumulative.

5        Tesla also argues that Patterson should be barred from offering other "me too" testimony

6  about harassment that did not involve Diaz, because such testimony is irrelevant. However, the

7  harassment Patterson experienced is directly relevant: Patterson worked in the <u>same elevator</u>,

8  during the same timeframe and shift, and under the same supervisor, as Plaintiff. He complained

9  to the same supervisor (Romero) about the harassment, but received no substantive response that

10  addressed or rectified the harassment. No employee's testimony could be more relevant to

11  evaluating the hostility of Plaintiff's working environment. Patterson meets every criteria laid

12  out in *Grade*, *Obrey*, and *Vasquez*.

13        Tesla complains that Patterson cannot testify about events that did not pertain to Owen

14  Diaz, because Plaintiff's counsel improperly curtailed Tesla's questioning at deposition. Tesla's

15  position misleads the Court. Counsel for Tesla notified Plaintiff that Tesla intended to depose

16  Patterson in connection with Plaintiff's lawsuit—not Patterson's—and inquiring as to whether

17  Plaintiff's counsel would represent Patterson in connection with Plaintiff's lawsuit. (Exh. 31)

18  Accordingly, at deposition Plaintiff's counsel pointed out that it would be harassing for Tesla's

19  counsel (which was also Tesla's counsel of record in Patterson's arbitration) to depose Patterson

20  for two full, eight-hour days on matters tangentially relevant to Plaintiff's suit, like Patterson's

21  interview with a contracting company. (Patterson Depo. at 38:15-17) Plaintiff's counsel offered

22  to stipulate to using Patterson's deposition in both cases, but Tesla's counsel ignored the offer.

23  (*Id*. at 38:13-17) Notably, Plaintiff's counsel *never* instructed Patterson not to answer a question.

24  Tesla had a full day to depose Patterson and identifies no instance in which it was denied an

25  answer to its questions. Tesla could—and in fact did—question Patterson at length about his own

26  claims. Because there is no prejudice to Tesla, Patterson's testimony cannot be excluded.

27        Tesla also claims Patterson's testimony must be excluded because it will require "a

28  number of mini trials." (Dkt. No. 185 at 21:24-26) Plaintiff, however, seeks to examine Patterson

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

for a mere <u>fifteen minutes</u>—insufficient to substantially outweigh the relevance of his testimony.

**B.  Tamotsu Kawasaki**

Tesla argues that testimony of Plaintiff's supervisor, Kawasaki, is not relevant. Kawasaki worked in the same position as Owen and confirms that he heard "N-----" "all over" the factory. (Tamotsu Kawasaki Depo. 76:7-23, 96:16-97:4, Exh. 32) Despite hearing this, Kawasaki did not take any action to halt use of the word and did not stop to investigate. (*Id*. 96:13-97:4) Tesla dismisses Kawasaki as a "Chartwell employee", ignoring that Kawasaki was Plaintiff's immediate supervisor when Plaintiff first started at the Tesla factory. (O. Diaz Depo. I 81:1-10)

Despite Tesla's laundry list of excuses to exclude Kawasaki's testimony, none is supported by any legal argument. Kawasaki's testimony (1) supports Plaintiff's contention that "N-----" was used all over the factory, and (2) tends to prove Tesla supervisors' failure to investigate and take adequate remedial action towards complaints of racial harassment.

**C.  Michael Wheeler**

Tesla dismisses Wheeler as a contracting employee. But like Kawasaki, Wheeler was Owen's supervisor and could recommend performance appraisals for employees of Owen's class "all the way up to termination." (Michael Wheeler Depo. at 16:22-24, 17:6-16, 41:18-25, 74:12-21, Exh. 33) In fact, Wheeler held the same position as Plaintiff's harasser, Ramon Martinez, and worked alongside Martinez. (*Id*.)

Tesla claims that the harassment Wheeler experienced was irrelevant to the hostility of Owen's working environment because Plaintiff did not know about the harassment. However, Plaintiff specifically testified that he was aware of the harassment Wheeler experienced, like an incident where another employee smeared feces on Wheeler's cart seat. (O. Diaz Depo. II 208:6-14) Though Tesla complains this event is irrelevant because it occurred "where the fork lifts were charged" (Dkt. No. 185 at 22:22-23), it neglects to mention that Plaintiff himself was required to drive forklifts as part of his job duties. (*See* Exh. 7) Wheeler's complaint also mirrored Plaintiff's: Like Plaintiff, Wheeler complained to Victor Quintero, who did not investigate Wheeler's complaint. (Wheeler Depo. at 55:7-56:16) Evidence about harassment of which Plaintiff was aware, during the pendency of Plaintiff's employment at Tesla, is plainly

relevant to Plaintiff's claims.

As with Kawasaki, Wheeler's other observations about the use of "N-----"  and swastika tattoos speaks to the adequacy of Tesla's remedial actions and antiharassment policies. Supervisor Wheeler's failure to investigate or remedy racially harassing behavior suggests a pattern and practice of failing to take prompt, effective remedial action in response to complaints of harassment. This evidence is directly relevant and is not outweighed by the risk of prejudice to Tesla for matters unrelated to the claims in the case, nor is it outweighed by the risk of wasting time given that Plaintiff's examination will take just thirty minutes. (Dkt. 197 7:26-28)

**D.  Wayne Jackson**

As with Wheeler and Kawasaki, Tesla's argument for exclusion of Jackson's testimony only succeeds based on a gross misrepresentation of Jackson's role at the factory. Jackson was a liaison between Tesla and contract employees like Plaintiff, and responsible for receiving and acting on complaints of harassment from contract employees. (O. Diaz Depo. I 132:4-8) In fact, Jackson received and responded to Plaintiff's own complaints of harassment. Jackson's response—or lack thereof—is directly relevant to his handling of Plaintiff's complaints. For instance, when Jackson heard "N-----" used in the facility and decided the incident did not merit reporting to Human Resources, it demonstrates a dismissiveness towards complaints of harassment and explicit disregard for Tesla policies. (Jackson Depo. 146:6-11, 148:25-149:8, Exh. 34) This evidence is plainly relevant to rebut Tesla's *Ellerth/Faragher* defense that it enacted and actively enforced an effective anti-harassment policy.

Tesla yet again cites the same overblown concerns about "mini-trials." However, under *Obrey* and Rule 403, this concern does not substantially outweigh the relevance of testimony about how an individual responsible for receiving and acting on Plaintiff's complaints of harassment responded to other complaints. Thus, Jackson's testimony cannot be excluded.

**IV.   Opposition to MIL No. 4 to Limit the Scope of Plaintiff's Closing Argument**

In a case where the word "N-----" is at the heart of a race-based hostile work environment, it is ironic that defense counsel's best argument for precluding the reference book entitled "Nigger," is to characterize it as a "shock prop."  Plaintiff's use of the reference book is anything

but that.  Use of the word "N-----" was not only commonplace throughout the Tesla factory, but it was directed at Plaintiff Diaz on *dozens* of occasions.

Undaunted by the well-recognized vileness of the word "N-----" as confirmed by the Ninth Circuit cases (*Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001)), Tesla seeks to argue that because *some* individuals might not be offended by use of the word "N-----", those individual preferences somehow dilute or excuse altogether Tesla's duty to prevent rampant use of the word "N-----" in its workplace.

At a previous arbitration against Tesla, in response to substantially the same specious arguments, Plaintiff's counsel used the refence book "Nigger" to illuminate the fact finder as to the *ongoing* offensiveness of *any* use of the word inside the workplace.  Plaintiff referenced the book, in part, to show that *even carrying it in public* tended to cause people to be offended and uncomfortable.  Plaintiff does *not* seek to introduce Professor Kennedy's book into evidence. Tesla also advances the absurd argument that Plaintiff's counsel will "encourage" the jury "to obtain the book" (Def. MPA p.24:7), which of course would be unethical and is defamatory. Case law makes it clear that "[d]uring closing argument in a civil case, counsel is permitted to make inferences and advance 'plausible argument[s] in light of the record.'"  *Draper v. Rosario*, 836 F.3d 1072, 1083–1084 (9th Cir. 2016); *United States v. Baltazar Reyes-Garcia*, 2017 WL 10457478 (W.D. Wash. 2017) [use of illustrative exhibits is common].  Tesla cites two police misconduct cases, *Cohn* and *Boyd*, in support of this motion, neither of which bears any relationship to the facts of this hostile work environment case.  In each case the evidence admitted disparaged the individuals. Neither case involved error in closing argument.

Tesla's defense counsel clearly intends to argue that use of the word "N-----" inside the workplace was somehow not offensive, hostile or abusive.  Use of the reference book "Nigger" is an appropriate antidote to Tesla's attempt to normalize rampant use of the word. In fact, Tesla's efforts to silence Plaintiff counsel's use of this reference material is testament to its potency. That Plaintiff's argument is effective is no justification for precluding its use.

\\
\\
\\
\\

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4

1  DATED:  April 29, 2020          By:   _____
                                         Lawrence A. Organ, Esq.
2                                        Navruz Avloni, Esq.
                                         Cimone A. Nunley, Esq.
3                                        J. Bernard Alexander, Esq.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOS. 1-4