UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OWEN DIAZ,

          Plaintiff,

    v.

TESLA, INC., et al.,

          Defendants.

Case No.  3:17-cv-06748-WHO

**ORDER ON MOTIONS IN LIMINE**

Re: Dkt. Nos. 185, 187, 188, 200

Plaintiff Owen Diaz's Section 1981 claim against defendant Tesla, Inc. will proceed to trial on **October 1, 2020**.[1]  Before me are the parties' motions in limine, many of which focus on which individuals can testify, what their testimony can encompass, and requested limits on the other side's questioning.  As I reminded the parties at the May 11, 2020 pretrial conference, this case is about Diaz and the work environment he experienced at the Tesla factory in Fremont.  As described in more detail below, people who worked with and near Diaz will be permitted to testify broadly about that work environment, including unrelated incidents of racial harassment that allegedly gave Tesla notice that racial harassment was occurring.

    **A.**    **Diaz's Motions**

        **1.**    **Ramon Martinez**

Diaz asks that I prevent Tesla from calling alleged harasser Ramon Martinez as a witness because Diaz was unable to depose him.  According to Diaz, Tesla failed to update the requested contact information, and his own efforts to locate Martinez were unsuccessful.  Tesla counters that

---

[1] Although the trial date was previously set for September 28, 2020, the United States District Court for the Northern District of California will not be holding civil trials prior to October 1, 2020 per General Order 72-3.

United States District Court
Northern District of California

Diaz never made it aware of his difficulties locating Martinez, even after it disclosed in 2019 that Tesla had hired him, and that Diaz did not include Martinez on his deposition list even after I granted him 14 additional hours on October 3, 2020.  Dkt. No. 93.  In response to my question at the pretrial conference, Diaz raised no inaccuracies in the timeline Tesla laid out.  He represented that when he continued to be unable to identify Martinez for purposes of a deposition, he understood from my discovery orders that Tesla would not get the benefit of his testimony.

I will not prevent Tesla from calling Martinez as a witness, nor will I allow a deposition at this late stage.  Tesla's undisputed chronology shows that Diaz was not diligent in pursuing a deposition.  He most recently requested Martinez's contact information in June 2018, even though Tesla disclosed in 2019 that it had hired Martinez (who was previously a staffing agency employee).  Diaz neither informed Tesla of his difficulties nor asked Tesla to accept a subpoena on Martinez's behalf, despite doing the same for other Tesla employees.  Given this lack of diligence, his reliance on my discovery orders was unreasonable.  Those orders did not give Diaz a pass to decline to depose a key witness and then prevent Tesla from calling him at trial.

Next, Diaz moves to exclude the statement Martinez wrote as part of Chartwell's investigation into the racist drawing incident at the Tesla factory.  Tesla counters that the statement is not hearsay because it will be offered not for its truth but rather to rebut a charge of fabrication or to rehabilitate Martinez's credibility.  As I told the parties at the pretrial, I will make final rulings on document admissibility at trial; however, it appears that the statement will be admissible as non-hearsay or under an exception to the hearsay bar.

### 2.  Rothaj Foster and Diaz's Work Performance

Diaz seeks to prevent Tesla from introducing evidence of his working relationship with Rothaj Foster, who was on Diaz's team when he was an elevator lead, along with evidence of Diaz's work performance more broadly.  Diaz has narrowed his Section 1981 claim,[2] and at trial he intends to proceed only on a theory of harassment and failure to prevent harassment.  According to him, this narrowing means that evidence of his work performance, including his

---

[2] His Amended Complaint includes discrimination, harassment, constructive discharge, and wrongful termination.

2

United States District Court
Northern District of California

1  relationship with Foster, is irrelevant "[e]xcept to the extent that race was a factor in Owen's

2  coworkers not getting along with him."

3      It would be improper to limit the evidence in the manner Diaz suggests.  As Diaz's

4  proposed jury instructions acknowledge, the jury will have to assess the totality of the

5  circumstances to determine whether there was a hostile work environment at the Tesla factory—

6  and the totality of the circumstances includes Diaz's work performance.  *See Clark Cty. Sch. Dist.*

7  *v. Breeden*, 532 U.S. 268, 270–71 (2001) (noting that these circumstances include "the frequency

8  of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

9  mere offensive utterance; and whether it unreasonably interferes with an employee's work

10 performance") (internal quotation marks omitted).  To limit the jury's exposure only to incidents

11 that Diaz says related to race would make analysis under the totality of the circumstances

12 impossible.

13     At the pretrial conference, Diaz raised his concern that Tesla will use evidence of his work

14 performance to malign his character and excuse the racially harassing environment at the Fremont

15 factory.  Obviously, evidence of whether Diaz was a great or terrible employee is not relevant

16 except to the extent that it is offered to explain defendants' decisions or the context of other

17 conduct.  I will ensure that the evidence is used for a proper purpose and with an appropriate

18 framing for the jury.  Diaz's assertion that the alleged work performance issues were minor—

19 which he is welcome to argue at trial—does not make them unfairly prejudicial.  Evidence of

20 Diaz's work performance, including his relationship with Foster, is admissible as set forth above.

21     **3.    Tamotsu Kawasaki, Wayne Jackson, and Michael Wheeler[3]**

22     Over Diaz's objections, Kawasaki, Jackson, and Wheeler will be permitted to testify about

23 hearing the n-word in the Tesla factory, including their perception of the context of its use

24 (namely, whether it was used in an offensive or friendly manner).  Diaz first argues that such

25 testimony is not relevant.  He acknowledges that his Section 1981 claim requires him to establish

26

27 _____

28 [3] Diaz and Tesla also dispute the scope of Jackson and Wheeler's testimony in Tesla's motions in limine, described below.  The back-and-forth shows that both sides seek to impose improper limits.

3

not only that he subjectively found the use of the word offensive but also that a reasonable African American person would have found it offensive.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).  But according to him, the testimony from other Tesla factory workers is irrelevant because they did not hear the n-word in precisely the same context in which Diaz heard it.  Diaz is welcome to raise the differences in context during cross-examination, but those differences do not make the testimony irrelevant.

Second, Diaz argues that the opinions are improper lay witness testimony because they are based on speculation rather than actual knowledge of the speaker's intent or the hearer's reaction.  Again, Diaz can raise the limits of the witnesses' perception and knowledge on cross-examination, but these limits do not mean that their opinions are improper speculation.  Finally, the probative value of the testimony is not substantially outweighed by the risk of unfair prejudice.  Not only is this testimony permissible, it is directly relevant to the jury's assessment of Diaz's Section 1981 claim.

### 4.  Demetric Diaz

Diaz seeks to exclude evidence of the arrest and felony charges of his son Demetric, who was formerly a plaintiff in this case.  First, Diaz argues that the evidence is not relevant, while Tesla counters that it is directly relevant to Diaz's claim for emotional distress damages given that both Diaz and his expert Dr. Anthony Reading have cited issues with Demetric as contributing to Diaz's ongoing emotional distress.  I agree with Tesla.  It is entitled to explore the extent to which Demetric's criminal involvement has contributed to Diaz's emotional distress, including the role that finances may have played.

Second, Diaz argues that the evidence is improper impeachment because while Demetric has been convicted, he has not yet been sentenced.  In the only case Diaz cites in support of his argument, the court held that a recent conviction was not admissible for impeachment where the time to appeal had not yet expired.  *See Beasley v. United States*, 218 F.2d 366, 368-69 (D.C. Cir. 1954).  Here, by contrast, Demetric apparently pleaded guilty.  In the event that Demetric testifies, evidence of his convictions is proper impeachment under the plain language of Rule 609(a).  As for the admissibility of the evidence under Rules 404(b) and 608, Tesla represents that it "does not

4

United States District Court
Northern District of California

1   intend to attack Demetric's character or propensity for truthfulness with evidence of his post-Tesla

2   arrests and plea deals."

3          In order to limit the prejudicial effect of this evidence, I will preclude reference to the

4   specifics of the crimes.  Instead, Tesla may refer only to the fact of the convictions and the amount

5   of the bond (if Diaz indeed helped pay it).  The parties should reach an agreement on the language

6   they will use in the presence of the jury (i.e., "serious felonies").

7          **B.     Tesla's Motions**

8          Tesla's motions seek to preclude "me too" testimony and evidence about racial harassment

9   that individuals other than Diaz allegedly experienced at the Fremont factory.  Tesla argues that

10  this testimony is not relevant because "(1) [the challenged individuals] did not work at Tesla

11  during the time Owen worked there; (2) they did not raise any complaints about their work

12  environment at Tesla during the time Owen worked there; (3) they did not work with Owen; (4)

13  they did not work in the same department as Owen; (5) they did not share the same supervisors as

14  Owen; and (6) none of the 'me too' witnesses' alleged harassers were the same as those claimed

15  by Owen."  Tesla argues that mini trials will be required to explore the accuracy or inaccuracy of

16  these accounts.

17         Anecdotal evidence of past discrimination "might prove inadmissible in the typical case of

18  individual discrimination" by contrast with a pattern or practice claim.  *Obrey v. Johnson*, 400

19  F.3d 691, 698 (9th Cir. 2005).  To determine whether evidence of discrimination by other

20  supervisors is admissible under Rule 403, the court should conduct a "fact-intensive, context-

21  specific inquiry," including consideration of "how closely related the evidence is to the plaintiff's

22  circumstances and theory of the case."  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379,

23  388 (2008).  "[T]he district court retains broad discretion to determine whether the probative value

24  of the evidence at issue is substantially outweighed by considerations of 'undue delay, waste of

25  time, or needless presentation of cumulative evidence.'"  *Obrey*, 400 F.3d at 698 (quoting Fed. R.

26  Evid. 403); *see Hill v. Goodfellow Top Grade*, No. 18-cv-01474-HSG, 2019 U.S. Dist. LEXIS

27  150796, at *5-6 (N.D. Cal. Sep. 4, 2019) (excluding "me too" evidence of race discrimination

28  because it would require the defendant to rebut the allegations, which had "virtually no similarity"

5

to the plaintiff's).

Diaz argues that those who experienced the same sorts of racial harassment he did—namely being called the n-word, including in the presence of supervisors, and seeing racist graffiti—should be able to testify to those incidents and to complaints they made.  This evidence shows that Tesla knew or should have known about the harassment and thus had an obligation to remediate it.  Diaz asserts that the testimony will have additional relevance if Tesla raises an *Ellerth*/*Faragher* defense that it exercised reasonable care to prevent and correct harassing behavior at the factory and that Diaz unreasonably failed to report the harassment and take advantage of remedial measures.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Hill*, 2019 U.S. Dist. LEXIS 150796, at *6–8 (putting the defendant on notice that raising the *Ellerth*/*Faragher* defense could open the door to evidence of ignored complaints in the plaintiff's rebuttal case).

As set forth below, I agree with Diaz in part and will allow some individuals to testify about unrelated incidents of harassment if the testimony could tend to establish that Tesla had notice of the racially harassing environment.  With respect to Tesla's motions to exclude documents related to me too incidents, I will rule on admissibility during the course of trial when I have an understanding of the context in which the documents are sought to be used.

### 1.    Demetric Diaz

Tesla argues that Diaz's son Demetric should not be permitted to testify about the racial harassment he allegedly experienced at the Tesla factory because he worked there for a short time, was in a different department and work area, and had a different supervisor.  Diaz counters that Demetric's time overlapped with his father's, who observed Demetric's supervisor calling him the n-word, and that Demetric testified at his deposition that he made oral complaints about the harassment he endured.  I will allow Demetric to testify to the events and complaints about which Diaz was aware.  Tesla can cross-examine Demetric about the absence of records of his complaints.

### 2.    Lamar Patterson

Tesla argues that former plaintiff Patterson should be precluded from testifying about

United States District Court
Northern District of California

harassing incidents that did not involve Diaz.  According to Diaz, Patterson should be able to testify about hearing the n-word and seeing racist graffiti in the Tesla factory because he and Patterson worked in the same area and had the same supervisor.  I will not limit Patterson's testimony as Tesla requests.  Given that Patterson and Diaz's work overlapped in all respects, the jury could rely on testimony about Patterson's alleged complaints to Romero to conclude that Tesla had notice of the harassing environment and, thus, a duty to remediate it.

### 3.    Michael Wheeler

Wheeler and Diaz overlapped at the Tesla factory and knew one another there.  Both worked with Diaz's alleged harasser Martinez, and both indicated at their depositions that they complained to Victor Quintero about incidents of harassment.  Given this overlap, I will allow Wheeler to testify about incidents of harassment that he complained of (to show Tesla's notice) or that Diaz was aware of (to explain Diaz's failure to prevent).  Tesla can explore the gaps in Wheeler's testimony during cross-examination.

### 4.    Wayne Jackson

Tesla argues that Jackson should not be permitted to testify generally about hearing the n-word because his job took him all over the factory (which is five million square feet), and at his deposition he was unable to specify where and when he heard the word.  Diaz counters that Jackson's testimony is relevant to explore how he viewed and responded to Diaz's own complaints, specifically his disregard for Tesla's policies, in response to the *Ellerth/Faragher* defense.  If Tesla raises this defense, Jackson's testimony will likely be admissible on rebuttal.  Further, if at any time during the trial Tesla explores with Jackson his view that the n-word was used in a non-offensive manner, it will open the door to Diaz's own exploration of the occasions on which Jackson overheard the word.

### 5.    Melvin Berry

Tesla represents that Diaz listed Berry's contact info as "unknown" during discovery while his counsel in fact represents Berry.  When I questioned Diaz's counsel about this at the pretrial conference, he did not dispute this fact but rather argued that his late disclosure of Berry is not prejudicial because Tesla will have the opportunity to depose him in a different proceeding before

United States District Court
Northern District of California

7

1    this case goes to trial.  Diaz provides no good cause for his failure to disclose Berry as a witness;

2    he will not be permitted to testify at trial.

3              **6.    Nigel Jones**

4              Tesla argues that Jones's testimony about racial harassment at the Tesla factory are

5    irrelevant to this case because he and Diaz did not work together or know each other.  Diaz

6    counters that Jones's time overlapped with Diaz (contrary to Tesla's motion, by more than one

7    week) and that his testimony will corroborate the frequent use of the n-word in the factory,

8    including in the presence of supervisors.

9              Given the absence of any overlap with Diaz's work, work areas, or supervisors, this

10   testimony is not relevant to Diaz's case in chief.  As noted above, it could become relevant if Tesla

11   relies on an *Ellerth/Faragher* defense; that determination will await trial.

12             **7.    DeWitt Lambert**

13             Tesla represents, and Diaz does not dispute, that Lambert worked in a different department,

14   had different supervisors, and had different alleged harassers.  Even if he reported the incidents of

15   harassment, without any overlap with Diaz, those reports would not put Tesla on notice regarding

16   problems with Diaz's department, coworkers, or supervisors.  Accordingly, Lambert's testimony

17   is inadmissible in Diaz's case-in-chief.

18             I draw the same conclusion concerning each of the remaining witnesses discussed below.

19   If Tesla raises an *Ellerth/Faragher* defense, Lambert's testimony could be admissible, and it is

20   possible that some of the remaining witnesses might also be allowed as rebuttal witnesses as long

21   as they are relevant and not duplicative.  I cannot make that determination until the time of trial

22   after the case-in-chief has been presented.

23             **8.    Nathan Fraim**

24             Tesla represents, and Diaz confirms, that Fraim did not begin working at Tesla until after

25   Diaz had left.  Accordingly, his testimony is not relevant to Diaz's case-in-chief, although it could

26   be relevant to explain Diaz's alleged reporting failure if Tesla raises the *Ellerth/Faragher* defense.

27   I will assess that possibility at trial.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 9.      Titus McCaleb[4]

Tesla represents, and Diaz does not dispute, that McCaleb began working at the Tesla factory long after Diaz, in a different department and with different supervisors, meaning his testimony is not relevant to Diaz's case-in-chief.  I will assess the admissibility of his testimony at trial if Tesla raises an *Ellerth/Faragher* defense.

### 10.      Jackel Williams

The same is true for Jackel Williams, who began working at Tesla after Diaz left—in 2017 according to Diaz and in 2018 according to Tesla, and in the battery according to Diaz and as a security guard according to Tesla.  I will assess the admissibility of her testimony in rebuttal if Tesla raises an *Ellerth/Faragher* defense at trial.

### 11.      Randall Kennedy's Book

Finally, Tesla argues that Diaz's counsel should be precluded from using a book entitled "N-word" by Randall Kennedy as a prop during trial because it is irrelevant to Diaz's claim and will unfairly prejudice the jury.  Diaz counters that the n-word is at the heart of this case and that he does not seek to introduce the book into evidence.  Because Kennedy's book has no probative value in this case, the motion is GRANTED.  Diaz is free to rely on other strategies to communicate the power of the n-word to the jury.

### C.      Sealing

Finally, Diaz filed several exhibits under seal pursuant to confidentiality designations by Tesla and former defendants, but none of the defendants submitted a declaration in support of sealing as required by the Civil Local Rules.  Accordingly, the sealing request at Dkt. No. 188 is

---

[4] As far as Brandie To, Diaz does not dispute that he failed to include her name on his initial disclosures, instead arguing that former defendant West Valley's document production included her name.  West Valley's document production does not satisfy Diaz's discovery obligations. Diaz will not be permitted to call To as a witness.

9

1    DENIED and the Clerk shall UNSEAL the docket entry in its entirety.

2          **IT IS SO ORDERED.**

3    Dated: May 22, 2020



6    William H. Orrick
     United States District Judge