LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
NAVRUZ AVLONI (SBN 279556)
navruz@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:      (415)-453-7352
Facsimile:      (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
**ALEXANDER KRAKOW + GLICK LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:      (310) 394-0888
Facsimile:      (310) 394-0811

Attorneys for Plaintiffs,
OWEN DIAZ
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
TRACEY A. KENNEDY (SBN 150782)
NAMAL TANTULA (SBN 247373)
BRETT YOUNG (SBN 305657)
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
T: 213.620.1780 | F: 213.620.1398
tkennedy@sheppardmullin.com
ntantula@sheppardmullin.com
byoung@sheppardmullin.com

PATRICIA M. JENG (SBN 272262)
SUSAN HAINES (SBN 224611)
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
T: 415.434.9100 | F: 415.434.3947
pjeng@sheppardmullin.com
shaines@sheppardmullin.com

Attorneys for Defendant,
TESLA, INC. dba TESLA MOTORS, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

DEMETRIC DI-AZ, OWEN DIAZ, and
LAMAR PATTERSON,

              Plaintiffs,

      v.

TESLA, INC. dba TESLA MOTORS, INC.;
CITISTAFF SOLUTIONS, INC.; WEST
VALLEY STAFFING GROUP;
CHARTWELL STAFFING SERVICES, INC.;
and DOES 1-50, inclusive,

           Defendants.

Case No. 3:17-cv-06748-WHO

**PARTIES' PROPOSED JURY
INSTRUCTIONS AND VERDICT
FORMS—PLAINTIFF'S PROPOSED
ORDER**

Trial Date: September 27, 2021
Complaint filed: October 16, 2017

      Per the Court's September 21, 2021 request, Plaintiff Owen Diaz respectfully submits the following proposed jury instructions, sequenced in the order Plaintiff would like the instructions presented to the jury. The instructions have been modified to reflect the Court's preliminary rulings (Dkt. No. 240).

**1.3 DUTY OF JURY (COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**1.4 DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

1

2

**1.5 CLAIMS AND DEFENSES**

3

4

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

5

6

Plaintiff Owen Diaz claims that while working at the Tesla factory in Fremont, California, he was subjected to a hostile work environment based on his race being African American or Black.  In addition, Mr. Diaz claims that Tesla, Inc. failed to take all reasonable steps to prevent race-based harassment towards him, including use of the N-word, and failed to adequately remedy the harassment after Tesla received notice of it. Mr. Diaz also claims that Tesla, Inc. negligently retained factory workers and supervisors who engaged in harassing conduct towards him.  The plaintiff Owen Diaz has the burden of proving these claims by a preponderance of the evidence.

7

8

9

10

11

12

The defendant Tesla, Inc., doing business as Tesla Motors, Inc., denies these claims. Tesla denies that Mr. Diaz was subjected to a hostile work environment based on his race and denies that it failed to take all reasonable steps to prevent race-based harassment in the workplace. Tesla also denies that it negligently hired, retained or supervised factory workers, employees or contractors who Mr. Diaz claims engaged in race based harassing conduct toward him.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.6 BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**1.9 WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I [may instruct] [have instructed] you to accept as proved.

**1.10 WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**1.11 EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [*describe purpose*] and not for any other purpose.]

**1.12 DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**1.13 RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**1.14 CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Court's No. 10 -- IMPLICIT BIAS**

We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of, and others we might not be fully aware of, which is why they are called implicit or unconscious biases. No matter how unbiased we think we are, our brains are hard-wired to make unconscious decisions. We look at others and filter what they say through our own personal experience and background. Because we all do this, we often see life and evaluate evidence in a way that tends to favor people who are like ourselves, or who have had life experiences like our own. We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make an important decision in the case. You must one, take the time you need to reflect carefully and thoughtfully about the evidence.

Two, think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case. If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion or sexual orientation, would you still view them, and the evidence, the same way?

Three, listen to one another. You must carefully evaluate the evidence and resist, and help each other resist, any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions and biases. Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision making.

And four, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

The law demands that you make a fair decision based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

**1.15 CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do

not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

## 1.16 PUBLICITY DURING TRIAL

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**1.17 NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

**1.18 TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**1.19 QUESTIONS TO WITNESSES BY JURORS DURING TRIAL**

You will be allowed to proposed written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question, on a form provided by the court. Do not sign the question. I will review the questions with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case, If I do not ask a proposed question or if I rephrase it, do not speculate as to the reasons, Do not give undue weight

to question you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggest that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

## 1.20 BENCH CONFERENCES AND RECESSES

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**1.21 OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

<u>**END OF PRELIMINARY INSTRUCTIONS**</u>

**2.1 STIPULATED TESTIMONY**

The parties have agreed what [*witness*]'s testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court.

**2.2 STIPULATIONS OF FACT**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

**2.3 JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [*state fact*]. You must accept this fact as true.

**2.4 DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of KEVIN MCGINN was taken on June 17, 2019.  The deposition of DEMETRIC DI-AZ was taken on May 15, 2018.  The deposition of ERIN MARCONI was taken on October 21, 2019. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**2.9 IMPEACHMENT EVIDENCE—WITNESS**

The evidence that a witness *lied under oath on a prior occasion*  may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**2.11 USE OF INTERROGATORIES**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**2.12 USE OF REQUESTS FOR ADMISSION**

Evidence [will now be] [was] presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**PLAINTIFF'S NO. 12 – WITNESSES DESIGNATED AS "PERSONS MOST KNOWLEDGEABLE" —Tesla Objection Overruled**

You are about to hear testimony from a witness who, when depositions were taken previously in this case, was designated by Tesla as a "person most knowledgeable" regarding certain specific subjects and issues identified by Mr. Diaz.

Testimony from a witness who has been identified by a corporation as a "person most knowledgeable" represents the company's knowledge, not the individual witness's knowledge. The company must prepare the "person most knowledgeable" to testify on the designated subjects and issues based on information reasonably available from documents, current or past employees, or other sources. Because the testimony from the "person most knowledgeable" reflects the company's knowledge, rather than the individual witness's personal knowledge, if a certain fact is within the collective knowledge or subjective belief of the company, the "person most knowledgeable" is allowed to testify to that fact even though the fact is not within the personal knowledge of the witness designated as the "person most knowledgeable" regarding that fact. Thus, a witness designated as the "person most knowledgeable" is free to testify to matters outside of his or her personal knowledge as long as they were within the company's collective knowledge.

**2.13 EXPERT OPINION**

You [have heard] [are about to hear] testimony from Anthony Reading, Amy Oppenheimer and Charles Mahla who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**2.14 CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**2.15 CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**4.1 CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**4.2 LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE—**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**PLAINTIFF'S NO. 7:  LIABILITY OF CORPORATIONS-SCOPE OF EMPLOYMENT [To be Given?]**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors and officers performed within the scope of authority or within the scope of their duties as employees, agents, directors and officers.

Employees, agents, directors and officers may be acting within the scope of employment even if their acts were forbidden by their employers, were done in a forbidden manner, or were entirely for the employee's, agent's, director's or officer's own benefit and not for the benefit of the employer.  **[NON-DUPLICATIVE SCOPE OF EMPLOYMENT PORTION IS HIGHLIGHTED]**

**TESLA OBJECTS TO PLAINTIFF'S INSTRUCTION NO. 7**
OBJECTIONS: ARGUMENTATIVE, DUPLICATIVE OF MODEL JURY INSTRUCTIONS RE LIABILITY OF CORPORATIONS, JOINT EMPLOYER INSTRUCTION AND AGENCY INSTRUCTIONS.

**4.4 AGENT AND PRINCIPAL—DEFINITION**

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal. One may be an agent without receiving compensation for services. The agency agreement may be oral or written.

**4.5 AGENT—SCOPE OF AUTHORITY DEFINED**

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

**4.6 APPARENT AGENCY**

If Tesla has intentionally or unintentionally caused the plaintiff to believe that NextSource or Citistaff or Chartwell was the principal's agent, a relationship known as "apparent agency" may be created, even if no actual authority was ever given to the agent. Apparent agency, however, can never arise solely from the acts of the alleged agent.

In order to establish apparent agency, the plaintiff must prove that:

1.      The alleged principal caused, by representation or action, the plaintiff to believe that NextSource,  Citistaff or Chartwell was the principal's agent;

2.      The plaintiff relied on this representation or action to his detriment; and

3.      Such reliance was reasonably justified.

If an apparent agency has been established, the principal is liable for the acts of the apparent agent just as if the principal had authorized the agent from the outset.

**4.7 RATIFICATION**

A purported principal who ratifies the acts of someone who was purporting to act as the principal's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

**4.8 ACT OF AGENT IS ACT OF PRINCIPAL—SCOPE OF AUTHORITY NOT IN ISSUE**

Any act or omission of an agent within the scope of authority is the act or omission of the principal.

**JOINT EMPLOYMENT**  **[Judge Orrick's Instruction]**

A person can have more than one employer. The primary consideration in determining whether a defendant is an employer is the extent of control that it may exercise over the details of the plaintiff's work. In making this determination, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. Factors that you may examine include but are not limited to, the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*See U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, **915 F.3d 631 (9th Cir. 2019).**

**PLAINTIFF'S INSTRUCTION NO. 1:     PLAINTIFF'S CLAIMS**

Plaintiff brings THREE separate claims. These claims are for:

1. Hostile Work Environment based on Race

2. Failure to Prevent Harassment from Occurring

3. Negligent Supervision and Retention of an Employee

These claims are described in the following instructions. The first two claims are civil rights claims brought under federal law and the third claim is brought under state law.  Each claim involves a distinct set of elements. Some elements are common to more than one claim. That is, there are some things that a plaintiff must show to succeed on one claim that plaintiff must also show to succeed on one or more other claims. Although the claims have some elements in common, you should consider each claim individually, Plaintiff can succeed on any claim only if he proves all of the elements of that claim.

**10.5 CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT—HARASSMENT BECAUSE OF PROTECTED CHARACTERISTICS—ELEMENTS**

The plaintiff seeks damages against the defendant for a racially hostile work environment while employed by the defendant. In order to establish a racially hostile work environment, the plaintiff must prove each of the following elements by a preponderance of the evidence:

1. the plaintiff was subjected to slurs, insults, jokes or other verbal comments or physical contact or intimidation of a racial nature;

2. the conduct was unwelcome;

3. the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create a racially abusive or hostile work environment;

4. the plaintiff perceived the working environment to be abusive or hostile; and

5. a reasonable African American man in the plaintiff's circumstances would consider the working environment to be abusive or hostile.

Whether the environment constituted a racially hostile work environment is determined by looking at the totality of the circumstances, including the frequency of the harassing conduct,

the severity of the conduct, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance.

**PLAINTIFF'S NO. 2 – SEVERE OR PERVASIVE EXPLAINED—[Tesla's objection overruled; text is identical to CACI 2524]**

"Severe or pervasive" means conduct that alters the conditions of employment and creates a work environment that is hostile, intimidating, offensive, oppressive, or abusive.

In determining whether the conduct was severe or pervasive, you should consider all the circumstances, including any or all of the following:

(a) The nature of the conduct;

(b) How often, and over what period of time, the conduct occurred;

(c) The circumstances under which the conduct occurred;

(d) Whether the conduct was physically threatening or humiliating.

Mr. Diaz does not have to prove that his productivity has declined. It is sufficient to prove that a reasonable person who was subjected to the harassing conduct would find that the conduct so altered working conditions as to make it more difficult to do the job.

A single incident can be sufficiently severe or pervasive to constitute harassment.

**PLAINTIFF'S NO. 3:  HARASSING CONDUCT—[Judge Orrick will replace with model instruction]**

~~Harassment creates a hostile, offensive, oppressive, or intimidating work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being. It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job. In evaluating the evidence of harassment, you should consider all of the evidence collectively or in its totality rather than in isolation, and you should view that evidence from the perspective of the victim and a reasonable person in the victim's position.~~

**10.6 CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT CAUSED BY SUPERVISOR—CLAIM BASED ON VICARIOUS LIABILITY—TANGIBLE EMPLOYMENT ACTION—AFFIRMATIVE DEFENSE—[Only to be given if Tesla raises an *Ellerth/Faragher* defense]**

An employer may be liable when an employee's supervisor creates a racially hostile work environment for that employee. A "supervisor" is someone who is empowered by the employer to take tangible employment actions regarding the employee, such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, or significantly changing benefits.

Plaintiff Owen Diaz claims that he was subjected to a racially hostile work environment by Tesla, Inc., and that Ramon Martinez and Robert Hurtado were two of his supervisor empowered by Tesla, Inc. to take tangible employment actions against the plaintiff Owen Diaz.

The defendant denies the plaintiff's claim. The plaintiff must prove his claim by a preponderance of the evidence.

**"SUPERVISOR"—Judge Orrick's Instruction**

A "supervisor" is one who exercises immediate (or successively higher) authority over the employee. Whether someone is a supervisor is not dependent upon job titles or formal structures within the workplace, but rather upon whether a supervisor has the authority to demand obedience from an employee.

***See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1119 n.13 (9th Cir. 2004).**

**TESLA'S PROPOSED INSTRUCTION 10.2B—[Judge Orrick will not Give Unless Evidence Changes]**

**10.2B CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT CAUSED BY SUPERVISOR—CLAIM BASED UPON VICARIOUS LIABILITY—TANGIBLE EMPLOYMENT ACTION—AFFIRMATIVE DEFENSE**

An employer may be liable when a supervisor with immediate or successively higher authority over the employee creates a racially hostile work environment for that employee.

Owen Diaz claims that he was subjected to a racially hostile work environment by Ramon Martinez, who was his immediate supervisor or a person with successively higher authority over him.

Tesla denies these claims. Mr. Diaz must prove his claim by a preponderance of the evidence and that but for Owen Diaz' race he would not have been subjected to this conduct.

In addition to denying the claims by Owen Diaz, Tesla has asserted an affirmative defense.  Before you consider this affirmative defense, you must first decide that Owen Diaz has proved by a preponderance of the evidence that he suffered a tangible employment action as a result of harassment by the supervisor.

If you find that Owen Diaz has proved that he suffered a tangible employment action as a result of harassment by the Tesla supervisor, you must not consider the affirmative defense. If Owen Diaz has not proved that he suffered a tangible employment action, then you must decide whether Tesla has proved by a preponderance of the evidence each of the following elements:

1.  Tesla exercised reasonable care to prevent and promptly correct the racially harassing behavior, and

2.  Owen Diaz unreasonably failed to take advantage of any preventive or corrective opportunities provided by their employer or unreasonably failed to otherwise avoid harm.

If Tesla proves these elements, Owen Diaz is not entitled to prevail on his respective claim.

**AUTHORITIES: Comcast Corp. v. National Association of African American Owned Media, 589 U.S. __ (2020).**

**10.12 CIVIL RIGHTS—TITLE VII—"TANGIBLE EMPLOYMENT ACTION"**

**DEFINED** [Only to be given if Tesla raises an *Ellerth/Faragher* defense]

Tangible employment actions are the means by which a supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment action requires an official act of the enterprise, a company act. A tangible employment action consists of a significant change in employment status such as firing, failing to promote, reassignment, a significant change in responsibilities] [undesirable reassignment] or a significant change in benefits.

A tangible employment action need not be adverse, such as when a supervisor coerces an employee into engaging in sexual acts by threats of discharge. In such a case, an employee need not actually suffer discharge or other adverse employment action to demonstrate a tangible employment action.

**10.7 CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT CAUSED BY NON-IMMEDIATE SUPERVISOR OR BY CO-WORKER—CLAIM BASED ON NEGLIGENCE**

The plaintiff seeks damages from the defendant for a hostile work environment caused by racial harassment. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1. the plaintiff was subjected to a racially hostile work environment by a non-immediate supervisor or coworker;

and

2. the defendant or a member of the defendant's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

A person is a member of management if the person has substantial authority and discretion to make decisions concerning the terms of the harasser's employment or the plaintiff's employment, such as authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the plaintiff's employment. A person who lacks such authority is nevertheless part of management if he or she has an official or strong duty in fact to communicate to management complaints about work conditions. You should consider all the circumstances in this case in determining whether a person has such a duty.

The defendant's remedial action must be reasonable and adequate. Whether the defendant's remedial action is reasonable and adequate depends on the remedy's effectiveness in stopping the individual harasser from continuing to engage in such conduct and in discouraging other potential harassers from engaging in similar unlawful conduct. An effective remedy should be proportionate to the seriousness of the offense.

If you find that the plaintiff has proved both of the elements on which the plaintiff has the burden of proof, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove either of these elements, your verdict should be for the defendant.

**PLAINTIFF'S NO. 4:  EMPLOYER'S DUTY TO INVESTIGATE AND TAKE REMEDIAL ACTION**

Employers must take all reasonable steps necessary to prevent harassment from occurring. When an employer becomes aware of potentially harassing conduct, it has a duty to promptly investigate and to take immediate and effective corrective action should it determine that harassment has occurred.  Remedial measures need to include immediate corrective action that is reasonably calculated to 1) end the current harassment and 2) to deter future harassment. The remedial actions must be designed, in part, to deter future harassment by the same offender or others.

Some of the steps employers can take to prevent harassment from occurring include such things as affirmatively raising the subject, expressing strong disapproval, conducting a timely, thorough, good faith investigation of allegations of harassment of which the Defendant knew or had reason to know, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under federal law, and developing methods to sensitize all concerned.

**REVISED PLAINTIFF'S NO. 5  – FAILURE TO PREVENT HARASSMENT—[Plaintiff Submits CACI 2527 with the addition of the concluding sentence (underlined)]**

Owen Diaz claims that Tesla, Inc. failed to take all reasonable steps to prevent harassment based on race.  To establish this claim, Mr. Diaz must prove all of the following:

1. That Owen Diaz was an employee of or providing services under a contract with Tesla, Inc.;

2. That Owen Diaz was subjected to harassment based on race in the course of employment;

3. That Tesla, Inc., failed to take all reasonable steps necessary to prevent the harassment based on race;

4. That Owen Diaz was harmed; and

5. That Tesla's failure to take all reasonable steps to prevent harassment was a substantial factor in causing Mr. Diaz's harm.

When evaluating an employer's reasonableness, you may consider an employer's policies and procedures as well as what remedial efforts it takes to address the harassment and to prevent future incidents of harassment.

NOTES OF AUTHORITY:  Plaintiff believes that an employer's duty to take corrective and remedial action as established by the 9th Circuit in *Ellison v. Brady,* 924 F.2d 872, 881 (9th Cir. 1991) and *Fuller v. City of Oakland*, 47 F. 3d 1522, 1528 (9th Cir. 1995.) requires some explanation of what "reasonable" steps include.  Alternatively, the Court could choose to reference Plaintiff's Instruction 4 as an alternative solution.

**PLAINTIFF'S NO. 6 – NEGLIGENT SUPERVISION AND RETENTION OF AN EMPLOYEE—[Tesla's objections overruled]**

Owen Diaz claims that he was harmed by employees working at the Tesla factory and that Tesla Inc., is responsible for that harm because Tesla negligently supervised or retained those employees.  To establish this claim, the Plaintiff must prove all of the following:

1. That Ramon Martinez was incompetent or unfit for the job of supervisor at Tesla's Factory;

2. That Tesla, Inc., knew or should have known that Ramon Martinez was unfit or incompetent to be a supervisor;

3. That after Tesla knew, or should have known, of Ramon Martinez's incompetence or unfitness for the job, Tesla, Inc., retained Ramon Martinez in his position at Tesla's factory;

4. That Ramon Martinez's incompetence or unfitness harmed Owen Diaz; and

5. That Tesla, Inc.'s negligence in retaining Ramon Martinez was a substantial factor in causing harm to Owen Diaz.

An employer may ratify the conduct of an incompetent or unfit employee if it does not take adequate remedial measures or continues to employ the employee after knowledge of the incompetence or unfitness.

**CACI 430. CAUSATION: SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

**PLAINTIFF'S NO. 10 – LIABILITY FOR CIVIL RIGHTS VIOLATIONS BASED ON CONTRACTUAL RELATIONSHIP—[Tesla's objection overruled, changes underlined.]**

Plaintiff asserts a section 1981 civil rights claim against Tesla, Inc.  Plaintiff can prove this claim by establishing that he was an employee of Tesla, Inc. (See Joint Employer Instruction)  Alternatively, Plaintiff may establish liability against Tesla by showing all of the following:

> (i)     Plaintiff gained rights or was a beneficiary under a contract,
>
> (ii)    Tesla engaged in racial discrimination or harassment in the enforcement of the contract, or
>
> Tesla failed to take reasonable step(s) to prevent harassment from occurring in the workplace; and
>
> (iii)   <u>Plaintiff would not have suffered injuries but for Defendant's conduct</u>.

Plaintiff need not have signed the contract, nor have been a party to the contract, in order to have rights under the contract. Plaintiff can establish his rights under the contract if he shows that he received benefits or privileges under the contractual relationship between Tesla and nextSource or Citistaff, and the benefits or privileges were not incidental or remote.

**5.1 DAMAGES—PROOF (Includes 5.2)**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on any of plaintiff's claims, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should preponderance of the evidence. Damages means the amount of money that will reasonably and determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. If you find for the plaintiff on any of plaintiff's claims, you must consider the following:

In determining the measure of damages, you should consider:

The nature and extent of the injuries;

The loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

The mental or emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services that with reasonable probability will be required in the future;

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**5.3 DAMAGES—MITIGATION**

Mr. Diaz has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

Tesla has the burden of proving by a preponderance of the evidence:

1. that Mr. Diaz failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.

**5.5 PUNITIVE DAMAGES**

If you find for Mr. Diaz, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish Tesla and to deter similar acts in the future. Punitive damages may not be awarded to compensate Mr. Diaz.

Mr. Diaz has the burden of proving by a preponderance of the evidence that punitive damages should be awarded on his hostile work environment based on race or his failure to prevent harassment based on race claims and, if so, the amount of any such damages.

You may award punitive damages only if you find that Tesla's conduct that harmed Mr. Diaz was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of Mr. Diaz's rights if, under the circumstances, it reflects complete indifference to Mr. Diaz's safety or rights, or if Tesla acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

Punitive damages may be awarded even if you award plaintiff only nominal, and not compensatory, damages.

**5.6 NOMINAL DAMAGES**

The law that applies to this case authorizes an award of nominal damages. If you find for Owen Diaz but you find that Mr. Diaz failed to prove damage as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

**3.1 DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**3.2 CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with  it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and

a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

**3.3 COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [clerk] [bailiff], signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**3.5 RETURN OF VERDICT**

A verdict form has been prepared for you. The verdict form asks you questions that will become your verdict.  You must answer each question unanimously.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk][bailiff] that you are ready to return to the courtroom.

**3.4 READBACK OR PLAYBACK**

Because a request has been made for a [readback] [playback] of the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above.

**3.6 ADDITIONAL INSTRUCTIONS OF LAW**

At this point I will give you an additional instruction. By giving an additional instruction at this time, I do not mean to emphasize this instruction over any other instruction. You are not to attach undue importance to the fact that this instruction was read separately to you. You must consider this instruction together with all of the other instructions that were given to you.

[*Insert text of new instruction.*]

You will now retire to the jury room and continue your deliberations.

**3.7 DEADLOCKED JURY**

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors. During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now return to the jury room and continue your deliberations.

**3.8 CONTINUING DELIBERATIONS AFTER JUROR IS DISCHARGED**

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors. Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating. All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**

7                   **NORTHERN DISTRICT OF CALIFORNIA**

8

9   DEMETRIC DI-AZ, OWEN DIAZ, and          Case No. 3:17-cv-06748-WHO
    LAMAR PATTERSON,
10                                          **PLAINTIFFS' PROPOSED VERDICT**
                    Plaintiffs,             **FORM**
11
            v.                              Pretrial Conference Date: May 11, 2020
12                                          Time: 10:00 a.m.
    TESLA, INC. dba TESLA MOTORS, INC.;
13  CITISTAFF SOLUTIONS, INC.; WEST
    VALLEY STAFFING GROUP;                  Trial Date: June 8, 2020
14  CHARTWELL STAFFING SERVICES, INC.;      Complaint filed: October 16, 2017
    and DOES 1-50, inclusive,
15
                    Defendants.
16

17

18

19
        DATED: _____
20

21

22

23                                         _____
24                                         UNITED STATES DISTRICT JUDGE

25

26

27

28

1

2

3

4

5                           **UNITED STATES DISTRICT COURT**

6                         **NORTHERN DISTRICT OF CALIFORNIA**

7

8   DEMETRIC DI-AZ, OWEN DIAZ, and        Case No. 3:17-cv-06748-WHO
    LAMAR PATTERSON,

9                                          **PLAINTIFFS' PROPOSED VERDICT**
                Plaintiffs,                **FORM**

10
            v.                             Pretrial Conference Date: May 11, 2020
11                                         Time: 2:00 p.m.
    TESLA, INC. dba TESLA MOTORS, INC.;
12  CITISTAFF SOLUTIONS, INC.; WEST
    VALLEY STAFFING GROUP;                 Trial Date: June 8, 2020
13  CHARTWELL STAFFING SERVICES, INC.;     Complaint filed: October 16, 2017
    and DOES 1-50, inclusive,
14
                Defendants.
15

16

17  We, the Jury, find as follows:

18            **CLAIM NO. 1:  RACIALLY HOSTILE WORK ENVIRONMENT**

19       1.   Was Owen Diaz subjected to a racially hostile work environment by Tesla, Inc.?

20

21                 _____ YES   _____ NO

22       *If your answer is "yes" answer  question No.  2. If your answer to question No. 1 is*

23  *"no", proceed to question No.  3.*

24

25

26

27

28

**CLAIM NO. 2:   FAILURE TO PREVENT HARASSMENT**

2.   Did Tesla, Inc., fail to take all reasonable steps necessary to prevent Owen Diaz from being subjected to racial harassment?

_____ YES   _____ NO

*Answer the next question.*

**CLAIM NO. 3:   NEGLIGENT SUPERVISION OR RETENTION**

3.   Did Tesla, Inc.'s negligent supervision or continued employment of Ramon Martinez cause harm to Owen Diaz?

_____ YES   _____ NO

If you answered  "yes" to either question No. 1, 2 or 3, answer the next question. *If you answered "no" to questions 1 and 2 and 3, the jury foreperson should sign, date and return this jury questionnaire.*

**DAMAGES**

4.   What past non-economic damages did Owen Diaz sustain as a result of Tesla, Inc.'s unlawful conduct?

$_____

*Go to the next question.*

5.   What future non-economic damages is Owen Diaz likely to sustain as a result of Tesla, Inc.'s unlawful conduct?

$_____

If you answered "yes" to question Nos. 1 or  2, answer the next question.  If you

answer "no" to both question Nos. 1 and 2, sign, date and return this juror questionnaire.

**PUNITIVE DAMAGES FOR CIVIL RIGHTS CLAIMS**

6.   Do you find by a preponderance of the evidence that Owen Diaz is entitled to punitive damages against Tesla Inc. for either creating a hostile work environment based on race, and/or failing to prevent harassment based on race in the workplace?

_____ YES   _____ NO

*If you answered "yes" to question No. 6, answer the next question. , If you answered question 6 "no," sign date and return this juror questionnaire.*

7.   What amount of punitive damages do you award to Owen Diaz?

$_____

*Please sign, date and return this juror questionnaire.*

DATED: _____

_____
JURY FOREPERSON