SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TRACEY A. KENNEDY, Cal. Bar No. 150782
NAMAL TANTULA, Cal. Bar No. 247373
BRETT YOUNG, Cal. Bar No. 305657
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398
Email:     tkennedy@sheppardmullin.com
           ntantula@sheppardmullin.com
           byoung@sheppardmullin.com

PATRICIA M. JENG, Cal. Bar No. 272262
SUSAN HAINES, Cal. Bar No. 224611
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
Email:     pjeng@sheppardmullin.com
           shaines@sheppardmullin.com

Attorneys for Defendants,
TESLA, INC. dba TESLA MOTORS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, AND LAMAR PATTERSON, <br><br> Plaintiffs, <br><br> v. <br><br> TESLA, INC. DBA TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive, <br><br> Defendants. | Case No. 3:17-cv-06748-WHO <br><br> **DEFENDANT TESLA, INC.'S OBJECTIONS AND COUNTERS TO PLAINTIFF'S DESIGNATION OF ANNALISA HEISEN DEPOSITION TESTIMONY** <br><br><br> Trial Date;          September 24, 2021 <br> Complaint Filed:  October 16, 2017 |

Defendant, Tesla, Inc. dba Tesla Motors, Inc., hereby objects and counter-designates the following deposition excerpts from Annalisa Heisen, Tesla Human Resources Business Partner, for presentation via video in response to Plaintiff's designation as part of his case in chief as follows:

**Heinsen, Annalisa 05/29/19, Volume 1**

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|-------------------|--------------------------------|
| 1 | 8:10-12 | 10  MR. ORGAN: Q. Good morning. Could you<br>11  please state your full name for the record.<br>12  A. Annalisa Heisen. | |
| 2 | 8:15-19 | 15  Q. Okay. And what's your — you currently work<br>16  for Tesla; is that right?<br>17  A. Correct.<br>18  Q. What's your current position there?<br>19  A. I'm a senior employee relations partner. | |
| 3 | 10:15-23 | 15  MR. ORGAN: So Exhibit 143, for the record, is<br>16  a 44-page document that is Defendants' objections to<br>17  Plaintiffs sixth amended notice of videotaped<br>18  deposition of Tesla Inc's person most knowledgeable<br>19  pursuant to FRCP 30(b)(6). And let's just go through.<br>20  Q. If you turn to the fourth page, you're the<br>21  person most knowledgeable relative to topic number 1;<br>22  is that right?<br>23  A. Correct. | |
| 4 | 11:2-4 | 2  Q. You're the person most knowledgeable relative<br>3  to topic number 3; is that right?<br>4  A. Correct. | |
| 5 | 11:20-12:6 | P. 11<br>20  Q. You're the person most knowledgeable relative<br>21  to topic number 9?<br>22  A. Correct.<br>23  Q. You're the person most knowledgeable relative<br>24  to topic number 10?<br>25  A. Correct.<br><br>P. 12<br>1  Q. You're the person most knowledgeable relative<br>2  to topic number 11?<br>3  A. Correct.<br>4  Q. You're the person most knowledgeable relative<br>5  to topic number 12?<br>6  A. Correct. | |
| 6 | 12:21-23 | 21  You're the person most knowledgeable relative<br>22  to topic number 15; is that correct?<br>23  A. Correct. | |
| 7 | 16:3-14 | 3  MR. ORGAN: Q. Tell me about your background.<br>4  Where did you go to college?<br>5  A. California State University Northridge.<br>6  Q. Did you get a degree from there?<br>7  A. I did.<br>8  Q. What was your degree? | |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|--------------------|--------------------------------|
| | | 9  A. Cinema and television arts.<br>10  Q. What year did you get that/<br>11  A. 2012.<br>12  Q. And what was your first job after graduating<br>13  from Cal State Northridge?<br>14  A. Working for Tesla. | |
| 8 | 17:22-18:18 | P. 17<br>22  Q. What was your next role after being a store<br>23  manager?<br>24  A. I was an associate HR partner.<br>25  Q. And where were you located as an associate HR<br><br>P. 18<br>1  partner?<br>2  A. Fremont.<br>3  Q. So what year did you start as an associate HR<br>4  partner?<br>5  A. 2016.<br>6  Q. And how long were you an associate HR<br>7  partner?<br>8  A. Five or six months, approximately.<br>9  Q. What was your next job with Tesla?<br>10  A. HR partner.<br>11  Q. And how long were you an HR partner?<br>12  A. Six to eight months, approximately.<br>13  Q. Who did you report to as an HR partner?<br>14  A. I had multiple managers at that time. They<br>15  changed.<br>16  Q. So this would be 2016 or 2017 when you were<br>17  promoted to HR partner?<br>18  A. That would be early 2017. 2017. | |
| 9 | 19:20-20:17 | P. 19<br>20  Q. Now, at some point you were promoted from HR<br>21  partner; is that correct?<br>22  A. Correct.<br>23  Q. What was your next position at Tesla?<br>24  A. Employee relations partner.<br>25  Q. What's the difference between an employee<br><br>P. 20<br>1  relations partner and an HR partner?<br>2  A. What do you mean by ''difference''?<br>3  Q. Are there different job duties between being<br>4  an employee relations partner and an HR partner?<br>5  A. Yes.<br>6  Q. What is the difference?<br>7  A. I mean, there's several differences. There's<br>8  different roles.<br>9  Q. What are those?<br>10  A. Some of the differences would be that<br>11  employee relations partner solely focuses on<br>12  investigations, whereas HR partners do not. | |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|--------------------|--------------------------------|
| | | 13  Q. Do HR partners do investigations?<br>14  A. Occasionally they do.<br>15  Q. And how long were you an employee relations<br>16  partner?<br>17  A. A little over a year, I believe. | |
| 10 | 20:18-25 | 18  Q. And then what was your next position after<br>19  employee relations partner?<br>20  A. Senior employee relations partner.<br>21  Q. Senior?<br>22  A. Senior employee relations partner.<br>23  Q. When did you receive that promotion?<br>24  A. About eight months ago. I don't recall<br>25  exactly. | |
| 11 | 25:11-26:1 | P. 25<br>11  Q. Okay. What do you remember, in terms of the<br>12  steps that you were to go through as someone<br>13  investigating a claim of discrimination or harassment<br>14  at Tesla?<br>15  A. From that time?<br>16  Q. Yes.<br>17  A. The general steps that might apply, and it<br>18  really does depend case to case what those steps would<br>19  be. But generally speaking, we receive a concern,<br>20  take an intake of that concern, identify witnesses,<br>21  people who should be interviewed for an investigation,<br>22  present the information, and partner with legal at<br>23  that time, as to how to move forward with the<br>24  investigation process. Conduct interviews, gather<br>25  evidence, if applicable, and then make a finding based<br><br>P. 26<br>Page 26<br>1 on what we learn. It's an analysis. | Counter-designation: Rule of completeness.  FRE 106.<br><br>**26:2-27:10**<br><br>Q. Okay. Would you agree that every<br>3 investigation, in terms of investigations done at the<br>4 Tesla factory, need to be prompt, thorough, and<br>5 objective?<br>6 **A. That is my understanding of the expectation.**<br>7 Q. Okay. And is it true that Tesla human<br>8 resources will investigate any claim of discrimination<br>9 or harassment that is brought to its attention<br>10 relative to conduct at the factory?<br>11 **A. We have a standard that an investigation will**<br>12 **be conducted. Whether a Tesla HR partner conducts**<br>13 **that or otherwise, depends case to case.**<br>14 Q. What are the factors as to determining<br>15 whether a Tesla HR partner will conduct the<br>16 investigation or not?<br>17 **A. One factor would be who's involved, who**<br>18 **complained.**<br>19 Q. And why does that matter?<br>20 **A. We have different employment statuses for** |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|---|---|---|
| | | | 21 **individuals on-site.**<br>22 Q. What are the different employment statuses<br>23 for individuals who work at the Fremont factory?<br>24 **A. I don't have an exhaustive list of types of**<br>25 **roles.**<br>1 Q. What are the ones you remember?<br>2 **A. General direct-hire employees, contractors,**<br>3 **temporary employees.**<br>4 Q. Any other categories you can think of?<br>5 **A. We occasionally have vendors visit the**<br>6 **property.**<br>7 Q. Any other categories, other than general<br>8 direct-hire employees, contractor, temporary employees<br>9 and vendors, visiting the property?<br>10 **A. Not that come to mind** |
| 12 | 26:22-27:20 | P. 26<br>22   Q. What are the different employment statuses<br>23   for individuals who work at the Fremont factory?<br>24   A. I don't have an exhaustive list of types of<br>25   roles.<br><br>P. 27<br>1   Q. What are the ones you remember?<br>2   A. General direct-hire employees, contractors,<br>3   temporary employees.<br>4   Q. Any other categories you can think of."<br>5   A. We occasionally have vendors visit the<br>6   property.<br>7   Q. Any other categories, other than general<br>8   direct-hire employees, contractor, temporary employees<br>9   and vendors, visiting the property?<br>10   A. Not that come to mind.<br>11   Q. Now, there is a job category of persons<br>12   working at the Tesla factory, called production<br>13   associates; is that correct?<br>14   A. That's my understanding.<br>15   Q. And some of the production associates are<br>16   general direct-hire employees; is that correct?<br>17   A. Correct.<br>18   Q. And then some of the production associates<br>19   are contractor employees; is that correct?<br>20   A. That's my understanding. | |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|--------------------|--------------------------------|
| 13 | 28:4-15 | 4  Q. But in terms of a different classification of<br>5  production associate, in terms of job duties, you're<br>6  not aware of any specific differences between the job<br>7  duties of production associates who are general direct<br>8  hires, versus contractors; is that correct?<br>9  A. I'm not aware of specific differences in that<br>10  production associate role.<br>11  Q. And the production associates work throughout<br>12  the factory; is that correct, throughout the Fremont<br>13  factory?<br>14  A. They work in different departments, different<br>15  areas in the factory, under that same title. | Counter-designation:  Rule of completeness.  FRE 106.<br><br>**27:21-28:3**<br><br>Q. In terms of the job duties that --<br>for<br>22  production associates who are contractors versus<br>23  general direct-hire employees, is there a functional<br>24  difference between what those different employees do,<br>25  the contractors versus the general direct hires who<br>1  are production associates?<br>2  **A. I would assume that that varies between**<br>3  **departments.** |
| 14 | 29:9-18 | 9  Q. How about this: In terms of Tesla's policies<br>10  on discrimination or harassment, those policies apply<br>11  to ever worker in the factory; correct?<br>12  A. We have an expectation that everyone working<br>13  in that factory location are meeting those standards<br>14  of that policy.<br>15  Q. Okay. And that's true whether an employee is<br>16  a general direct-hire employee or whether they're a<br>17  contractor or a vendor; correct?<br>18  A. Correct. The expectation is the same. | |
| 15 | 33:4-8 | 4  Q. Well, you understand that you're testifying<br>5  today as the person most knowledgeable on the policies<br>6  and procedures related to race harassment in effect<br>7  from 2014 to present; right? You understand that?<br>8  A. Correct. | |
| 16 | 35:5-16 | 5  Q. You would agree that under the policies that<br>6  Tesla has, the antidiscrimination policies, that every<br>7  employee has a duty to try and prevent harassment<br>8  based on race from occurring; right?<br>9  A. Yeah, the policy states as much.<br>10  Q. And similarly, pursuant to Tesla's policies,<br>11  every contractor employee has a duty to prevent<br>12  harassment based on race from occurring; right?<br>13  MS. JENG: Objection. The policy speaks for<br>14  itself.<br>15  THE WITNESS: Yes, the expectation is the<br>16  same. | Designation is incorrect.  The text provided for designation 16 actually occurs at **31:5-16**. |
| 17 | 43:2-11 | 2  Q. Have you ever done an investigation into a<br>3  claim of the use of the "N" word at the Tesla factory?<br>4  A. Myself?<br>5  Q. Yeah.<br>6  A. I believe so.<br>7  Q. Which part of the factory did that relate to? | Deponent not designated under Rule 30(b)(6) to provide testimony about investigations *she* conducted. Deponent did not join Tesla HR until July or August 2016 *many months after* Plaintiff was assigned |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|-------------------|-------------------------------|
| | | 8    A. I don't recall.<br>9    Q. Have you done more than one investigation<br>10   into use of the "N" word at the Tesla factory?<br>11   A. It's possible. | to work at Tesla and accordingly testimony about investigations in an unknown part of factory beyond the time Plaintiff was at Tesla are irrelevant, unduly prejudicial and would confuse the jury.  FRE 401-403. |
| 18 | 44:25-45:03 | P.44<br>25 Q. So legal's involved in the investigation<br><br>P. 45<br>1    process, then; is that right, into racial - claims of<br>2    racial harassment?<br>3    A. In general, yes. | Testimony regarding involvement of legal not relevant and would confuse the jury.  FRE 401-403.<br><br>If permitted, counter-designation under the rule of completeness FRE 106:  **44:9-14**<br><br>MR ORGAN: Q. Don't tell me about the<br>10 communications. Just tell me, what is the role that<br>11 legal plays relative to an investigation that you<br>12 conduct into use of the "N" word?<br>**13 A. It depends on the case. It does vary case to<br>14 case.** |
| 19 | 45:24-46:05 | P. 45<br>24   Exhibit 5, for the record, I believe it's a<br>25   four-page document, Bates-stamped Tesla 211 to 214.<br><br>P. 46<br>1    It's entitled the "Tesla Anti-handbook Handbook."<br>2    Q. Do you recognize Exhibit 5?<br>3    A. Yes.<br>4    Q. What is Exhibit 5?<br>5    A. It's the anti-handbook handbook. | |
| 20 | 53:4-13 | 4    Q. In terms of "stupid stuff," that part of<br>5    Exhibit 5, that applies to all employees, whether<br>6    they're regular employees or contractors, right, at<br>7    the Tesla factory?<br>8    A. My understanding is that there's an<br>9    expectation that both contractors and employees would<br>10   adhere to it.<br>11   Q. Would adhere to that part of the policy;<br>12   correct?<br>13   A. Correct. | |
| 21 | 54:1-5 | 1    And then, in terms of resolving concerns<br>2    that part of the handbook, the anti-handbook handbook,<br>3    applies to both contractors and regular employees too;<br>4    correct?<br>5    A. I believe so. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**53:20-25** |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|---|---|---|
| | | | 20 Q. And then in terms of "moral of the story, the 21 theme of the above standards is simple: Just behave 22 like the sort of person you want as your coworker," 23 that's something that applies to both contractors and 24 regular employees alike, correct, that principle? **25 A. I believe s** |
| 22 | 62:15-63:04 | P. 62<br>15  Q. So my question is whether or not Tesla's code<br>16  of conduct, business conduct, applies to contractors<br>17  who work at the Tesla factory, relative to<br>18  discrimination and harassment policies contained in<br>19  the code of conduct. Does it or doesn't it?<br>20  MS. JENG: She's already asked and answered.<br>21  THE WITNESS: My understanding is that we<br>22  have that expectation that contractors who are<br>23  employees of agencies are complying with these<br>24  guidelines.<br>25  MR. ORGAN: Q. "These guidelines" being<br><br>P. 63<br>1  Tesla's code of business conduct relative to<br>2  discrimination and harassment; correct?<br>3  A. Right. The information that's articulated in<br>4  here. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**61:19-62:3**<br><br>19 Q. Okay. In terms of -- let's go to Item 6,<br>20 which is on Tesla 846.<br>21 In terms of discrimination and harassment<br>22 components of the code of conduct, those rules or<br>23 policies apply to both contractors and employees<br>24 alike, correct, at the Tesla factory?<br>**25 A. My understanding is that we have expectation**<br>**1 that contractors who are employed by agencies are also**<br>**2 in compliance with laws regarding discrimination and**<br>**3 harassment.** |
| 23 | 72:3-18 | 3    MR. ORGAN: Q. Okay. Let's go through<br>4    Exhibit 150.<br>5    Now, as to this policy, the antiharassment<br>6    and discrimination policy, this policy would apply to<br>7    all workers at the Tesla factory; correct?<br>8    MS. JENG: Objection; vague and ambiguous and<br>9    calls for speculation.<br>10   THE WITNESS: There's an expectation that<br>11   employees at Tesla as well as contractors and other<br>12   people on-site are in compliance with the policy.<br>13   MR. ORGAN: Q. So Exhibit 150 does apply to<br>14   both contractors and regular employees, then; right?<br>15   MS. JENG: Objection; asked and answered.<br>16   THE WITNESS: There's an expectation that<br>17   both of those categories of workers would be in<br>18   compliance with those articulated. | Counter-designation.  Rule of completeness.  FRE 106.  If counter-designation not granted, Tesla designates **87:9-88:5**:<br><br>9 Q. In terms of the training, we talked a little<br>10 bit about training before we broke for lunch, but in<br>11 terms of training of Tesla's contract workers, is<br>12 there any specific training that Tesla does with the<br>13 contract workers to inform them of Tesla's<br>14 antiharassment or discrimination policy? |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|-------------------|--------------------------------|
| | | | **15 A. My understanding is that --so agencies will**<br>**16 do their own new-hire orientation for their**<br>**17 contractors or employees, and then contractors will go**<br>**18 through something that Tesla has called "Manufacturing**<br>**19 Essentials," and in that, my understanding is that**<br>**20 they cover Tesla's antiharassment and discrimination**<br>**21 policy.**<br>22 Q. Okay. So if I have this right, Tesla's<br>23 antiharassment and discrimination policies are covered<br>24 in a training session entitled "Manufacturing<br>25 Essentials"; is that correct?<br><br>**1 A. That's my understanding.**<br>2 Q. How long does the Manufacturing Essentials<br>3 training last?<br>**4 A. Overall, I believe it's two days, covering a**<br>**5 wide variety of topics. The policy is one of them.** |
| 24 | 75:6-16 | 6  Q. So your understanding is that the contracting<br>7  agencies are supposed to train their employees who<br>8  were working at the Tesla factory, on Tesla's<br>9  antiharassment and discrimination policy; correct?<br>10  MR. ARANEDA: Misstates prior testimony.<br>11  THE WITNESS: So, there's an expectation that<br>12  they're being trained by their staffing agencies on<br>13  antiharassment and discrimination, but this — not<br>14  this policy specifically. I'm not sure what they're<br>15  doing. 1 couldn't confirm it they're training this<br>16  policy, since they're employees. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**74:24-75:5**<br><br>24 Q. And as to contract employees, are contract<br>25 employees also trained on Tesla's antiharassment and<br>1 discrimination policy?<br>**2 A. My understanding is that the agencies who**<br>**3 employ the contractors are doing training on policies**<br>**4 and compliance. I don't have visibility into their**<br>**5 processes.**<br><br>**75:17-76:17**<br><br>17 MR ORGAN: Q. What steps does Tesla take to |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|--------------------|--------------------------------|
| | | | 18 ensure that contractors who come into and work in the 19 Tesla factory in Fremont have training relative to the 20 topic of antiharassment and discrimination? 21 **A. We have an expectation that agencies are** 22 **training on antiharassment and discrimination.** 23 Q. And what is that expectation based on? 24 **A. That they're legally compliant.** 25 Q. In terms of Tesla's expectation, is there an <br><br> 1 expectation that contract employees who work at the 2 Fremont factory are trained on Tesla's antiharassment 3 and discrimination policies or their equivalent? 4 MS. JENG: Objection; vague and ambiguous. 5 And you're talking about all workers, regardless of 6 department? 7 MR ORGAN: Yeah. 8 THE WITNESS: What do you mean by 9 "equivalent"? 10 MR ORGAN: Q. Well, Tesla doesn't provide a 11 copy of its antiharassment and discrimination policy 12 to contract workers; is that true? 13 **A. It is available to contract workers.** 14 Q. So contract workers have access to Tesla's 15 antiharassment and discrimination policy; is that 16 right? 17 **A. That is correct.** |
| 25 | 76:18-22 | 18   Q. And so at least in terms of Tesla's 19   expectations, Tesla's expectations are that even 20   contract workers should be aware of Tesla's 21   antiharassment and discrimination policy; correct? 22   A. That's my understanding. | |
| 26 | 77:7-17 | 7   "QUESTION: And in terms of -- there are some 8   reporting and investigation procedures in Exhibit 150, | |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|---------------------|--------------------------------|
| | | 9  if you look down at the bottom of the page, and then<br>10  over to the second page of Exhibit 150. Those<br>11  reporting and/or investigation principles would still<br>12  apply to employees who are contractors working at the<br>13  Tesla factory; correct?'')<br>14  THE WITNESS: I don't have visibility into<br>15  what the agencies advise their contractors, as far as<br>16  reporting is concerned. Those guidelines may be<br>17  different, agency to agency. | |
| 27 | 78:11-15 | 11  Q. And so that employee of Tesla would have to<br>12  then take some action once they get information about<br>13  discrimination or harassment in the workplace;<br>14  correct?<br>15  A. That's the expectation. | |
| 28 | 79:7-15 | 7  Q. So if a Tesla employee gets information about<br>8  harassing conduct based on race in the factory, that's<br>9  occurring in the factory, regardless of how they get<br>10  that information, they then have a reporting duty, in<br>11  terms of either providing that information to a<br>12  higher-level manager or sending it to HR; is that<br>13  true?<br>14  A. There's an expectation of that, as it's<br>15  articulated in the policy. | |
| 29 | 81:6-<br>81:12 | 6  Q. Any information relative to a complaint of<br>7  harassment based on race at the Tesla factory, that's<br>8  investigated by HR, Tesla's HR, if it's brought to<br>9  Tesla HR attention; correct?<br>10  A. It depends.<br>11  Q. What does it depend on?<br>12  A. Who's involved in the complaint. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**81:14-21:**<br><br>14 So what if you have a complaint that involves<br>15 different contractors at the factory, how would you go<br>16 about investigating that?<br>17 MS. JENG: Objection; incomplete<br>18 hypothetical.<br>19 THE WITNESS: It's case by case, given what<br>20 information is presented in the complaint and who's<br>21 involved. |
| 30 | 82:13-20 | 13  Q. Tesla has an obligation to the people who<br>14  work at the Fremont factory to ensure that they are in<br>15  a workplace free from harassment based on race; right?<br>16  A. Correct.<br>17  Q. And that's regardless of whether the person<br>18  working there is an employee or a contractor, right,<br>19  that obligation? | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**82:21-83:6:**<br><br>21 Q. So in terms of ensuring that workers at the<br>22 Tesla factory are not subject to harassment based on<br>23 race, how does Tesla's HR department ensure that that |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|--------------------|-------------------------------|
| | | | 24 is the case, if they are delegating investigation<br>25 processes to non-Tesla employees?<br>1 MS. JENG: Objection; misstates her prior<br>2 testimony.<br>3 THE WITNESS: There's still an expectation<br>4 that these types of concerns that are brought forward<br>5 will be investigated, but it depends case by case as<br>6 to how that's approached. |
| 31 | 83:19-25 | 19  Q. There are no written procedures that Tesla<br>20   has for coordinating investigations of allegations of<br>21   harassment based on race?<br>22   MS. JENG: Objection; misstates her prior<br>23   testimony.<br>24   THE WITNESS: Not that outline step by step<br>25   for each of these cases. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**83:11-18**<br><br>11 Q. In terms of Tesla's efforts to ensure that it<br>12 has a workplace free from harassment based on race,<br>13 are there any kind of procedures that Tesla has<br>14 adopted for coordinating investigations into<br>15 allegations of harassment based on race?<br>16 **A. It depends on the case. It varies widely.**<br>17 **There's not one fixed method that we address that**<br>18 **with.**<br><br>**85:10-21**<br><br>10 Q. How does Tesla ensure that Tesla employees<br>11 working at the Tesla factory are protected against<br>12 harassing conduct by contractors who are also working<br>13 at the Fremont factory?<br>14 **A. When the concern is brought about a**<br>15 **contractor's behavior?**<br>16 Q. Yes.<br>17 **A. If we're informed and made aware of the**<br>18 **issue -- depends on the specific circumstances -- we** |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|-------------------|-------------------------------|
| | | | 19 would either ourselves follow up and collaborating<br>20 with them. There are circumstances that might fall<br>21 outside of that. It depends, but that's one way.<br><br>**86:7-20**<br><br>7 MR ORGAN: Q. And what about in the<br>8 situation where the -- assume that the harasser is a<br>9 supervisor working for a contract agency, harassing<br>10 another contract employee at the Tesla factory.<br>11 What's Tesla's role relative to that?<br>12 MS. JENG: Objection; incomplete<br>13 hypothetical. And calls for speculation.<br>14 THE WITNESS: So effectively, if both parties<br>15 are contractors, if they're either from the same<br>16 agency or separate agencies, whichever agency<br>17 representative would need to be looped in, you know,<br>18 during that process, Tesla would contact them, and<br>19 they would collaborate with them to determine what<br>20 next steps needed to be taken for investigation. |
| 32 | 101:5-22 | 5   MR. ORGAN: Q. I'm going to show you what's<br>6   going — this will be 153.<br>7   Exhibit 153, for the record, is a<br>8   multiple-page document Bates-stamped Tesla 863 through<br>9   878. And it appears to be some training relative to<br>10   Ramon Martinez.<br>11   Have you seen this document before?<br>12   A. Yes, I believe so.<br>13   Q. And this shows - if you look at Tesla 867,<br>14   this shows "I agree" references to some Tesla<br>15   policies; correct?<br>16   A. Correct.<br>17   Q. Would this indicate to you that Mr. Martinez<br>18   was on-boarded as an employee sometime on or after<br>19   April 20th of 2017? | |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|---|---|---|
|  |  | 20  A. I would say that it's possible, based on<br>21  these documents, that he was on-boarded as a Tesla<br>22  direct employee. |  |
| 33 | 109:12-15 | 12  Q. Do you know if Michael Wheeler was ever<br>13  interviewed as part of the investigation into Owen<br>14  Diaz's complaint?<br>15  A. That, I'm not sure of. |  |
| 34 | 110:9-15 | 9   Q. Do you know whether or not - there's a<br>10  person here mentioned, Israel, who I guess arrived<br>11  with Michael Wheeler.<br>12  Do you know whether or not there was any<br>13  interview of Israel in conjunction with the<br>14  investigation?<br>15  A. I'm not sure of that. |  |
| 35 | 110:24-111:4 | P. 110<br>24  Q. And where Mr. Diaz says a little further<br>25  down, "A person should be able to come to work and not<br><br>P. 111<br>1   be harassed or degraded while they're trying to do<br>2   their job," you would agree that that is - comports<br>3   with Tesla's policies, doesn't it?<br>4   A. I agree, yes. |  |
| 36 | 111:5-112:7 | P.111<br>5.   Q. And then Mr. Owen Diaz also says … he said<br>6   "It's not the first time that Ramon Martinez has" — I<br>7   think "has been talked about his behavior," "has been<br>8   talked to about his behavior."<br>9   Is that your understanding?<br>10  MS. JENG: Objection; the document speaks for<br>11  itself. Misstating the evidence.<br>12  MR. ORGAN: Q. You understood that Mr. Diaz<br>13  was complaining that the behavior towards Mr. Diaz was<br>14  getting worse; right?<br>15  MS. JENG: Objection; lacks foundation,<br>16  misstates the evidence. And the document speaks for<br>17  itself.<br>18  THE WITNESS: He makes the statement here<br>19  towards the end of the document. Owen alleges that<br>20  his behavior is getting worse.<br>21  MR. ORGAN: Q. "His behavior," being<br>22  Mr. Martinez, is getting worse.<br>23  A. Yeah, yeah, Martinez.<br>24  Q. That is all something you would have<br>25  expected, the Tesla HR person who got involved, to<br><br>P. 112<br>1   take into account when looking into Mr. Diaz's<br>2   complaint; correct?<br>3   MS. JENG: Objection; lacks foundation.<br>4   THE WITNESS: I could say that I would<br>5   imagine that those items would be taken into account |  |

SMRH:4826-8990-5405.1

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|-------------------|-------------------------------|
| | | 6   during an investigation, depending on whether it's the<br>7   Tesla HR person who conducted it or not. | |
| 37 | 112:8-18 | 8   MR. ORGAN: Q. What does Tesla do to make<br>9   sure that its contractor organizations do a thorough<br>10   and effective investigation?<br>11   A. In general, when these complaints come to<br>12   Tesla's attention — these complaints being harassment<br>13   and discrimination complaints — if they involve<br>14   contractors, we expect that the Tesla HR person is in<br>15   communication with the agency. So even if they're not<br>16   the ones conducting the investigation, they're making<br>17   sure that the issue is resolved by collaborating with<br>18   the agency. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**112:19-113:3**<br><br>19 Q. And what is the typical way that Tesla HR<br>20 communicates with the contract agencies?<br>21 **A. What do you mean by "way"?**<br>22 Q. Like email, is that the typical way --<br>23 **A. Email is one way. Phone, in person.**<br>24 Q. If there are in-person communications, do HR<br>25 people typically take notes of those interactions with<br>1 the contracting agencies relative to an investigation?<br>2 **A. Some may. There's not an articulated**<br>3 **standard on that. Some do.** |
| 38 | 113:13-25 | 13   MR. ORGAN: Q. Well, in this situation,<br>14   Exhibit 39, the complaint was made directly to a Tesla<br>15   employee; correct?<br>16   A. Correct.<br>17   Q. A Tesla supervisor. Mr. Romero; right?<br>18   A. Correct.<br>19   O. So in that case. Tesla's antiharassment and<br>20   discrimination policy kicks in; right / Once its<br>21   supervisor gets knowledge of harassment at the Tesla<br>22   factory, the — Tesla's antiharassment and<br>23   discrimination policy kicks in; right?<br>24   A. Mr. Romero would be held to that policy as a<br>25   direct employee. | Counter-designation.  Rule of completeness.  FRE 106. |
| 39 | 114:18-115:3 | P. 114<br>18   Do you know whether or not any diversity<br>19   training took place?<br>20   A. Sorry, at the top of what?<br>21   Q. First page of Exhibit 39. The very top, last<br>22   sentence in the email from Victor Quintero to Wayne<br>23   Jackson.<br>24   A. And what was your question?<br>25   Q. Whether or not you're aware of any diversity<br><br>P. 115<br>1   training that took place for Ramon Martinez at this<br>2   time in the 2016 time period. | |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|---|---|---|
| | | 3   A. At this time, I'm not sure. | |
| 40 | 115:13-22 | 13   "QUESTION: Are you aware of any other<br>14   actions that Tesla took relative to investigating or<br>15   addressing Owen Diaz's complaint relative to racist<br>16   conduct that was directed at him by Ramon Martinez?")<br>17   THE WITNESS: I know that Tesla coordinated<br>18   and worked with the staffing agencies that were<br>19   involved to come to a determination based on the<br>20   interviews or the witness statements that were given,<br>21   and determine if disciplinary action needs to be<br>22   taken. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**115:23-116:10**<br><br>23 MR ORGAN: Q. So the determination by both<br>24 Tesla and the contracting agencies was that<br>25 Mr. Martinez had engaged in harassing conduct towards<br>1 Mr. Owen Diaz; correct?<br>2 **A. My understanding is that they found, because**<br>3 **Ramon admitted to drawing it, they found that the**<br>4 **drawing was written by -- that's what they**<br>5 **substantiated, was that it was drawn by Ramon.**<br>6 Q. And the finding was that the drawing that was<br>7 done by Mr. Martinez, which is in Exhibit 39, was<br>8 inappropriate; right?<br>9 **A. They substantiated that it was offensive to**<br>10 **Mr. Diaz.** |
| 41 | 116:11-19 | 11   Q. So the conclusion of the investigation into<br>12   Mr. Owen Diaz's complaint about the drawing was that<br>13   the drawing was offensive to Mr. Diaz; correct?<br>14   A. They substantiated that Ramon drew the image<br>15   and that Owen found that image to be offensive.<br>16   Q. Was there a finding as to whether or not the<br>17   drawing violated Tesla's antiharassment policy?<br>18   A. I'm not sure if that was specifically<br>19   articulated. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**116:20-117:1**<br><br>20 Q. What's your best memory?<br>21 **A. This concern, the concern that Owen brought**<br>22 **forward and then based on what they substantiated,**<br>23 **it's possible that it fell under the umbrella of the**<br>24 **antiharassment and discrimination policy, in that it**<br>25 **caused offense to somebody who interpreted it as a**<br>1 **racist image.** |
| 42 | 118:19-25 | 19   Q. If we go back to Exhibit 153 and we look at<br>20   the certifications, does it appear to you that there<br>21   was any kind of certification that Mr. Martinez got in<br>22   this time period of January 2016 that might be some<br>23   kind of training relative to discrimination or<br>24   harassment? | Testimony is misleading and not relevant.  The 30(b)(6) designee testified (100:9-20, 101:7-22) Exhibit 153 is a Tesla document and that Ramon Martinez was *not* a Tesla employee in 2015 and 2016 |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|-------------------|-------------------------------|
| | | 25  A. Not as recorded in the certifications. | records are from the time period when Ramon Martinez was a *Chartwell* employee. |
| 43 | 120:2-4 | 2  Q. Do you know it anybody else was interviewed, <br> 3  other than Ramon Martinez and Owen Diaz? <br> 4  A. I'm not aware of any additional interviews. | |
| 44 | 120:5-10 | 5  Q. Are you aware of any investigation notes that <br> 6  were taken by any investigators relative to an <br> 7  investigation into Mr. Owen Diaz's complaint about <br> 8  Ramon Martinez in January of 2016? <br> 9  A. I'm not aware of any outside of the <br> 10  summarization that occurs in the email threads. | |
| 45 | 121:18-122:21 | P. 121 <br> 18  MR. ORGAN: Q. But an allegation of racial <br> 19  harassment is a serious allegation; right? <br> 20  A. Certainly. <br> 21  Q. And certainly, an allegation where someone <br> 22  has drawn a racial effigy that's offensive to <br> 23  African-Americans, that's something that Tesla takes <br> 24  very seriously; right? <br> 25  A. Yes. <br><br> P. 122 <br> 1  Q. So if such an issue is brought to HR's <br> 2  attention, they want to do a thorough investigation <br> 3  about that allegation; correct? <br> 4  A. Correct. They would make sure that that <br> 5  issue was investigated. <br> 6  Q. One of the things you do as an investigator <br> 7  too is you want to see if there's anything else that <br> 8  has been done that's offensive, in addition to what <br> 9  initially has been complained about; right? <br> 10  A. It depends on the case. Occasionally, we do <br> 11  look beyond what's in the original scope. <br> 12  Q. But in terms of, let's say, with respect to <br> 13  Mr. Diaz, if you go back to his complaint email, which <br> 14  is in Exhibit 39, he references additional behavior or <br> 15  other behavior by Ramon Martinez; right? <br> 16  A. Correct. <br> 17  Q. So certainly, a thorough investigation would <br> 18  want to look into what he meant by what additional <br> 19  behavior he's complaining about; right? <br> 20  A. That's a question — or a line of questioning <br> 21  that you might ask. | |
| 46 | 126:17-127:6 | P. 126 <br> 17  Typically, when you have conducted an <br> 18  investigation that has, like, <br> 19  findings in it, correct, like a final document or an <br> 20  investigation report, something like that? <br> 21  A. Oftentimes, we generate a final document. <br> 22  Q. Are you aware or any such final document with <br> 23  respect to Mr. Diaz's complaints about Ramon Martinez? | |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|---|---|---|
| | | 24  A. Not outside of the summarization in the email<br>25  thread.<br><br>P. 127<br>1  Q. But in terms of like a final written report<br>2  of the conclusions of the investigation, you're not<br>3  aware of anything like that; correct?<br>4  MS. JENG: Vague as to "report."<br>5  THE WITNESS: Not outside of the emails about<br>6  the subject. | |
| 47 | 130:4-<br>130:23 | 4  Q. And in that complaint that Mr. Owen Diaz<br>5  made, he complained that Mr. Timbreza used an<br>6  offensive racial term towards him; is that right?<br>7  A. What I saw was ''offensive racial comment.''<br>8  Q. And the complaint that Mr. Owen Diaz made was<br>9  to a Tesla lead; is that correct?<br>10  A. That's my understanding.<br>11  Q. And the Tesla lead to whom Mr. Diaz<br>12  complained was Tom Kawasaki; is that right?<br>13  A. Yes.<br>14  Q. And then Mr. Kawasaki followed procedure and<br>15  elevated Mr. Owen Diaz's complaint to a higher level;<br>16  is that correct?<br>17  A. That's my understanding.<br>18  Q. That complaint then went to Ed Romero; is<br>19  that right?<br>20  A. Correct.<br>21  Q. And Ed Romero was the supervisor over the<br>22  elevator area; is that right? | |
| 48 | 131:9-13 | 9  Q. And do you know what happened to<br>10  Mr. Timbreza, in terms of his employment?<br>11  A. As far as his employment is concerned?<br>12  Q. Yes.<br>13  A. I don't know of anything related to this. | Counter-designation.  Rule of completeness.  FRE 106.<br><br>**131:6-8**<br><br>6 Q. Judy Timbreza, was that a Tesla employee, or<br>7 was Judy Timbreza a contract employee?<br>**8 A. A contract employee.** |
| 49 | 131:22-<br>132:14 | P. 131<br>22  Q. Do you remember what Judy Timbreza said, in<br>23  terms of his perspective of the interaction with<br>24  Mr. Owen Diaz?<br>25  A. I didn't see a specific response from Judy.<br><br>P. 132<br>1  Q. Were there any notes taken of the interviews<br>2  that were - strike that.<br>3  Were there any interviews that were conducted<br>4  as part of an investigation into Mr. Owen Diaz's<br>5  allegations?<br>6  A. According to Mr. Romero, he interviewed | Testimony about whether Mr. Romero received standardized training is not relevant and would mislead the jury.  FRE 401-403. |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|-------------------|-------------------------------|
| | | 7   witnesses in the area.<br>8   Q. And was Ed Romero a trained investigator, in<br>9   terms of investigating claims of harassment?<br>10   A. He's the manager in the area, at that time.<br>11   Q. And does Tesla provide its managers with<br>12   training on how to conduct an investigation into<br>13   complaints of race harassment?<br>14   A. Not a standardized training. | |
| 50 | 133:18-<br>134:7 | p. 133<br>18   MR. ORGAN: Q. But if Tesla has knowledge<br>19   that a contract employee is using an offensive racial<br>20   term towards another contract employee, that is<br>21   something that Tesla wants to get to the bottom of,<br>22   isn't it?<br>23   A. We would want to make sure that there was a<br>24   resolution to the situation.<br>25   Q. And the reason is because other people could<br>P. 134<br>1   hear an offensive racial comment and be offended by<br>2   it; right?<br>3   MS. JENG: Objection; lacks foundation.<br>4   THE WITNESS: Other people being -<br>5   MR. ORGAN: Q. Other Tesla employees; right?<br>6   A. Sure, that anyone on-site would be offended<br>7   by such language. | |
| 51 | 135:15-<br>136:1 | P. 135<br>15   Q. Okay. So in terms of the timing of the<br>16   complaint, it appears it was the end of July 2015 when<br>17   Mr. Diaz made his complaint to his lead, Tom Kawasaki;<br>18   correct?<br>19   A. Correct.<br>20   Q. You didn't see any investigation notes,<br>21   either from Tesla people or from the contractors,<br>22   relative to their investigation of Mr. Owen Diaz's<br>23   complaint in this July 2015 time frame; correct?<br>24   MS. JENG: Vague as to "notes."<br>25   THE WITNESS: I didn't see any documentation<br><br>P. 136<br>outside of the emails reviewed for this. | |
| 52 | 146:23-<br>147:4 | P. 146<br>23   Q. In terms of Tesla's policies and procedures<br>24   for Tesla contractors to ensure that your contractors<br>25   enforce Tesla's antiharassment policies is there<br><br>P. 147<br>1   anything in writing that you have seen that indicates<br>2   what contractors are supposed to do relative to<br>3   enforcing Tesla's antiharassment policies?<br>4   A. Not that I've seen. | |
| 53 | 147:19-<br>148:16 | P. 147<br>19   Q. It's fair to say that if someone wants to | |

DEFENDANT TESLA, INC.'S OBJECTIONS TO HEISEN DEPOSITION TESTIMONY

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|---|---|---|
| | | 20   make a complaint to Tesla about the way they're being<br>21   treated, some kind of harassment, they can do that<br>22   either in writing or verbally; is that true?<br>23   A. That's correct.<br>24   Q. And if a Tesla employee wants to complain<br>25   about harassment in the workplace, they can do that by<br><br>P. 148<br>1   complaining to either a lead, a supervisor, a manager,<br>2   or HR; is that true?<br>3   A. Correct. Or through the integrity hotline.<br>4   Q. Or to the integrity hotline.<br>5   And similarly, if a contract employee who's<br>6   working at the Tesla factory wanted to complain about<br>7   harassing conduct, they could also complain to their<br>8   lead supervisor manager or HR; is that true?<br>9   A. The staffing agencies' HR and other people<br>10   employed through there, they would be able to speak<br>11   with them or Tesla staff, or the agency.<br>12   Q. Actually, a contract employee has more<br>13   avenues to complain, because they can complain either<br>14   to their own staffing agency or to Tesla supervisors,<br>15   managers, or HR people; true?<br>16   A. That's correct. | |
| 54 | 148:17-23 | 17   Q. Now, in terms of steps that Tesla has taken<br>18   to prevent the use of the "N" word at the Fremont<br>19   factory, are you aware of any steps that Tesla has<br>20   taken specifically to address that term?<br>21   MS. JENG: Objection; lacks foundation.<br>22   THE WITNESS: Not solely for the purpose of<br>23   addressing that term. | Testimony is not limited to time Plaintiff worked at Tesla, his supervisors, his alleged harassers or his work area and thus is not relevant, unduly prejudicial and would confuse the jury.  FRE 401-403. |
| 55 | 148:24-150:9 | P. 148<br>24   MR. ORGAN: Q. You're aware that there have<br>25   been allegations of the use of the "N" word in<br><br>P. 149<br>1   different areas of the Fremont factory; is that true?<br>2   MS. JENG: Objection; lacks foundation.<br>3   THE WITNESS' Mv understanding is that we've<br>4   had investigations where those allegations are made.<br>5   MR. ORGAN: Q. What is your understanding of<br>6   the outcome of the investigations regarding use of the<br>7   "N" word at the Fremont factory?<br>8   MS. JENG: Objection; lacks foundation and<br>9   assumes facts not in evidence.<br>10   THE WITNESS: It depends on the facts of the<br>11   given investigation.<br>12   MR. ORGAN: Okay.<br>13   Q. But you're aware that at least some of the<br>14   investigations that Tesla has done relative to use of<br>15   the "N" word at the Fremont factory have resulted in a<br>16   finding or conclusion that use of the "N" word was | Testimony is not limited to time Plaintiff worked at Tesla, his supervisors, his alleged harassers or his work area and thus is not relevant, unduly prejudicial and would confuse the jury.  Testimony is also beyond the scope and topics for which deponent was designated.  FRE 401-403.<br><br>Witness lacks personal knowledge. FRE 602. |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|-------|--------------------|--------------------------------|
|   |       | 17  substantiated at least in parts of the Fremont<br>18  factory; correct?<br>19  MS. JENG: Objection; lacks foundation, also<br>20  outside the scope of the depo notice.<br>21  MR. ARANEDA: Misstates prior testimony.<br>22  THE WITNESS: I can only speak to<br>23  investigations that I've conducted. I can say that I<br>24  believe we've had ones where it's been substantiated,<br>25  but I don't know how many. I can't give you a number<br><br>P. 150<br>1  on that.<br>2  MR. ORGAN: Q. So you actually conducted an<br>3  investigation into the use of the "N" word, where use<br>4  of the "N" word was substantiates; is that true?<br>5  MS. JENG: Objection; asked and answered.<br>6  Also assumes facts not in evidence and misstates her<br>7  prior testimony.<br>8  THE WITNESS: I believe I have. I don't<br>9  remember a specific example of the facts in that case. |   |
| 56 | 155:5-13 | 5  Q. And certainly, use of the "N" word in any<br>6  form would violate Tesla's antiharassment policy;<br>7  right?<br>8  A. If it was found to be substantiated, then it<br>9  would potentially violate the policy, yes.<br>10  Q. Can you think of an instance where use of the<br>11  "N" word in the Tesla factory would not violate<br>12  Tesla's antiharassment policy?<br>13  A. Not specifically, no. | Testimony calls for lay expert opinion and deponent was not designated as an expert witness. FRE 701-702.<br><br>If testimony is permitted, counter-designation of 150:21-151:9 under the rule of completeness.  FRE 106.<br><br>**150:21-151:9**<br><br>21 MR ORGAN: Q. When you say Tesla takes<br>22 allegations of use of the "N" word seriously, what do<br>23 you mean by that?<br>24 **A. That if that allegation was substantiated, I**<br>25 **don't see a circumstance where we wouldn't follow up**<br>1 **on that with disciplinary action.**<br>2 Q. And if someone were to have used the "N"<br>3 word, or there was evidence that showed that someone<br>4 had used the "N" word in the workplace, that would be<br>5 a basis for immediate termination; is that true?<br>6 MS. JENG: Objection; incomplete hypothetical<br>7 and outside the scope. |

| # | Lines | Deposition Excerpt | Objection / Counter-designation |
|---|---|---|---|
| | | | 8 THE WITNESS: That's one potential outcome, 9 yes. |
| 57 | 155:14-17 | 14 Q. Are you aware of any training modules that 15 nextSource developed for Tesla relative to the issue 16 of diversity, sexual harassment training? 17 A. I'm not familiar with that, no. | Testimony is irrelevant because Plaintiff has no sexual harassment claims and testimony could mislead jury. FRE 401-403. |
| 58 | 170:9-22 | 9 MR. ORGAN: Q. Relative to disciplinary 10 action, if Tesla finds or gets information that an 11 employee has engaged in harassing conduct, Tesla will 12 act on that, correct, even if it's a contractor doing 13 the harassing conduct? 14 A. Tesla would partner with the agency and 15 collaborate with them to come up with an action. 16 Q. And you would agree that Tesla, with respect 17 to any contract employee, can ask the contracting 18 agency not to send that individual to the Tesla 19 factory; right? 20 A. They can say that that person is no longer 21 allowed on the property, or request that the contract 22 with Tesla end. | Counter-designation. Rule of completeness. FRE 106. 169:7-18 Q. When you previously testified that you did 8 not know whether the employee policies against 9 discrimination and harassment, quote, "applied 10 equally," unquote, to contract workers and employees, 11 what did you mean by that? 12 A. The standards that are outlined for 13 expectations of employee behavior and conduct do apply 14 equally. But there's also verbiage in this policy 15 regarding disciplinary action, up to and including 16 termination, and that would be different for 17 contractors. If it's an agency, we don't have that 18 relationship with other staff. The agency does. |
| 59 | | | |
| 60 | | | |
| 61 | | | |
| 62 | | | |

**99:11-21**

11 MR ORGAN: Q. And what steps, if any, did

12 Tesla take to ensure that supervisors who were working

13 at the Fremont factory, who were not regular Tesla

14 employees but were contractors, that they received

15 adequate training on the issue of harassment?

16 **A. There's an expectation that Tesla has for**

17 **agencies. I mean, it's a legal compliance issue, as**

18 **far as making sure that these courses are being**

19 **administered, so we would expect that agencies, for**

20 **their employees, would be conducting a similar type**

21 **of, if not the same training.**

Dated: September 30, 2021          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                   By _____
                                              */s/ Tracey A. Kennedy*
                                       TRACEY A. KENNEDY
                                       PATRICIA M. JENG
                                       SUSAN HAINES

                                   Attorneys for Defendant
                                   TESLA, INC. dba TESLA MOTORS, INC.