SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TRACEY A. KENNEDY, Cal. Bar No. 150782
NAMAL TANTULA, Cal. Bar No. 247373
BRETT YOUNG, Cal. Bar No. 305657
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:     213.620.1780
Facsimile:      213.620.1398
Email:           tkennedy@sheppardmullin.com
                    ntantula@sheppardmullin.com
                    byoung@sheppardmullin.com

PATRICIA M. JENG, Cal. Bar No. 272262
SUSAN HAINES, Cal. Bar No. 224611
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:     415.434.9100
Facsimile:      415.434.3947
Email:           pjeng@sheppardmullin.com
                    shaines@sheppardmullin.com

Attorneys for Defendants,
TESLA, INC. dba TESLA MOTORS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ AND LAMAR PATTERSON<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC., CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; NEXTSOURCE, INC.; and DOES 1-10, inclusive<br><br>Defendants. | Case No. 17-cv-06748-WHO<br><br>**DECLARATION OF SUSAN HAINES IN SUPPORT OF DEFENDANT TESLA, INC.'S MOTION TO STRIKE TESTIMONY OF CHARLES MAHLA**<br><br>Trial Date;          June 8, 2020<br>Complaint Filed: October 16, 2017 |

## DECLARATION

I, Susan Haines, declare as follows:

1. I am currently an attorney with the law firm Sheppard Mullin Richter & Hampton, LLP which serves as Defendant Tesla, Inc.'s ("Tesla") attorneys of record in the above-captioned matter. I am a member in good standing of the State Bar of California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. **Exhibit 1** to this declaration consists of true and correct copies of excerpts of the September 30, 2021 Official Trial Transcript in the above captioned matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of October 2021, at San Francisco, California.

/s/ Susan Haines
Susan Haines

# EXHIBIT 1

546

Volume 4
Pages 545 - 699

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK

DEMETRIC DI-AZ, OWEN DIAZ AND )
LAMAR PATTERSON )
)
)
Plaintiffs, )
)
vs. ) No. C 17-6748 WHO
)
TESLA, INC., dba TESLA MOTORS, )
INC., CITISTAFF SOLUTIONS, INC., )
WEST VALLEY STAFFING GROUP, )
CHARTWELL STAFFING SERVICES, INC., )
and DOES 1-50, inclusive, )
) San Francisco, California
Defendants. ) Thursday
) September 30, 2021
_____) 8:00 a.m.

TRANSCRIPT OF JURY TRIAL PROCEEDINGS

APPEARANCES:

For Plaintiffs:       ALEXANDER MORRISON & FEHR LLP
                      1900 Avenue of the Stars
                      Suite 900
                      Los Angeles, California 90067
                  BY: BERNARD ALEXANDER, ESQ.

                      CALIFORNIA CIVIL RIGHTS LAW GROUP
                      332 San Anselmo Avenue
                      San Anselmo, California 94960
                  BY: LAWRENCE A. ORGAN, ESQ.
                      CIMONE A. NUNLEY, ESQ.

           (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR
               Official Reporter - US District Court
               Computerized Transcription By Eclipse

546

APPEARANCES: (CONTINUED)

For Defendants:       SHEPPARD MULLIN RICHTER & HAMPTON LLP
                      333 S. Hope Street
                      43rd Floor
                      Los Angeles, California 90017
                  BY: TRACEY A. KENNEDY, ESQ.

                      SHEPPARD MULLIN RICHTER & HAMPTON, LLP
                      379 Lytton Ave
                      Palo Alto, California 94301
                  BY: PATRICIA M. JENG, ESQ.

                      SHEPPARD MULLIN RICHTER & HAMPTON LLP
                      Four Embarcadero Center
                      17th Floor
                      San Francisco, California 94111
                  BY: SUSAN Q. HAINES, ESQ.

Also Present:         JOSEPH ALM, ESQ.
                      - Tesla, Inc.

                      YUSUF MOHAMED, ESQ.
                      - Tesla, Inc.

                      VALERIE CAPERS WORKMAN
                      - Tesla, Inc.

                          _  _  _

547
PROCEEDINGS

1   Thursday - September 30, 2021              8:01 a.m.
2              P R O C E E D I N G S
3                    ---oOo---
4        (Proceedings were heard out of presence of the jury:)
5           THE CLERK:  Please come to order.
6           THE COURT:  Please be seated.
7        I understand that there are problems on the bridge and not
8   only is it impacting Mr. Organ, but also at least one of the
9   jurors.  So it will resolve when it resolves.
10       So there were just a couple of things -- two things on my
11  mind this morning.
12       One is I will give the proposed instruction on the persons
13  most knowledgeable as it was written last night and what was
14  just proposed and previously proposed and I said I was going to
15  read it.
16       And then the other issue was Mr. Organ yesterday was about
17  to read some discovery.  Do we know what that is?  And --
18          MR. ALEXANDER:  Yes, Your Honor.  I believe that we
19  submitted that documentation to you last night.  My
20  understanding is that it was going to be submitted so that
21  everyone would know what was going to be read.
22          THE COURT:  Okay.  I didn't see it this morning.
23       Ms. Kennedy, do you know what it is?
24          MS. KENNEDY:  I do not, Your Honor.
25          MR. ALEXANDER:  We should be able to provide printed

548
PROCEEDINGS

1   copies of that.
2           THE COURT:  Okay.  That would be great.  Why don't you
3   provide it to Ms. Kennedy so she knows what it is that you're
4   talking about.  And if there's no problem, then we can proceed;
5   and if there's a problem, I'd like to know about it.
6        (Whereupon document was tendered to the Court and
7         counsel.)
8        (Brief pause.)
9           THE COURT:  Mr. Alexander, while we're waiting, who
10  are the witnesses today?
11          MR. ALEXANDER:  As I understand it, the witnesses are
12  we're going to complete Mr. Diaz.  Then we'll have La'Drea
13  Diaz.  Then we'll have Dr. Anthony Reading.  Then we'll have
14  Amy Oppenheimer.
15          THE COURT:  And will that complete your case?
16          MR. ALEXANDER:  No.  I believe that we have -- I
17  believe that we have Lamar Patterson and the Erin Marconi
18  video.  And with regard to Mr. Patterson, it's unclear where he
19  will be in the lineup.
20          THE COURT:  Okay.
21          MR. ALEXANDER:  And then there's the Heisen transcript
22  as well?
23          THE COURT:  The Heisen?
24          MR. ALEXANDER:  Yes.
25          THE COURT:  Okay.  All right.

677

OPPENHEIMER - CROSS / KENNEDY

BY MS. KENNEDY
Q. The email dated January 25th, 2016.
A. Yeah. Is it the one that was sent at 11:07?
Q. In the morning? Yes, ma'am.
A. Okay. I see (as read):
    "Attached are the statements. I've reached out to
    the manager for permission to interview. Will be sure to
    place him on a corrective action. Do they work in
    separate departments? He's concerned for his safety.
    Will this be a reasonable recommendation for them to work
    apart?"
    I don't see -- I don't see a finding in here.
Q. Ms. Oppenheimer, do you agree that employers are not the
guarantors of a harassment-free workplace?
A. Yes.
Q. And do you also agree that an investigation, no matter how
properly conducted, cannot always uncover the truth?
A. Yes.
Q. And do you also agree that if an organization has all of
the proper policies, all of the proper training, all the proper
followup, have policies that are compliant with state and
federal law, they discipline appropriately, you can still have
harassment in the workplace; correct?
A. Yes.
    MS. KENNEDY: Your Honor, I have no more questions.

678

OPPENHEIMER - REDIRECT EXAMINATION / ORGAN

THE COURT: All right. Any redirect?
MR. ORGAN: Just a couple questions.
        REDIRECT EXAMINATION
BY MR. ORGAN
Q. Are good and bad employees entitled to a harassment-free
workplace?
A. Sure.
Q. So their performance, how they perform, doesn't change the
standards that an employer has to apply to them; is that
correct?
    MS. KENNEDY: Objection. Beyond the scope.
    THE COURT: Sustained.
BY MR. ORGAN:
Q. Is remedial action sufficient if the conduct continues?
A. No.
Q. Thank you.
    MR. ORGAN: No more questions, Your Honor.
    THE COURT: All right.
    MS. KENNEDY: No more questions, Your Honor.
    THE COURT: All right. Thank you, Ms. Oppenheimer.
    THE WITNESS: Okay. Thank you.
    (Witness excused.)
    THE COURT: Who is the next witness?
    MR. ORGAN: Mr. Mahla, Your Honor.
    THE COURT: Okay.

679

OPPENHEIMER - REDIRECT EXAMINATION / ORGAN

(Brief pause.)
    THE COURT: Did somebody go get the witness?
    MR. ALEXANDER: He's testifying via Zoom. Ms. Davis
is accessing that now.
    THE CLERK: Okay.
    THE COURT: Ladies and gentlemen, you're always free
to stand up if you need to or want to. I've been told at
different times that it's a good idea to stand up just for
stuff, circulation and things. You're free to remain sitting,
whatever you want to do.
(Brief pause.)
    THE CLERK: All right. Good afternoon, Mr. Mahla.
Can you hear us?
(No response.)
    MR. ORGAN: I'm not sure he can hear.
    Dr. Mahla, can you hear?
    THE COURT: You may be muted, Jean.
    THE CLERK: I am, but I'm supposed to be. Let me make
sure the sound system isn't...
    Mr. Mahla, are you able to hear us?
    THE WITNESS: I am.
    THE CLERK: Okay. Great.
    Do you want me to go ahead and swear him in?
    THE COURT: Yes.

680

MAHLA - DIRECT / ORGAN

        CHARLES MAHLA,
called as a witness for the Plaintiff, having been duly sworn,
testified as follows via Zoom:
    THE WITNESS: I do.
    THE CLERK: Thank you, sir.
    THE COURT: Please proceed.
        DIRECT EXAMINATION
BY MR. ORGAN
Q. Good afternoon, Dr. Mahla. How are you?
A. I'm fine. How are you, sir?
Q. Great. Thank you for joining us.
    Could you please talk about your educational background?
A. I have an undergraduate degree, a Bachelor of Arts in
economics from Lafayette College. I have a PhD in economics
from the University of North Carolina Chapel Hill, in Chapel
Hill, North Carolina.
Q. And in terms of providing opinions on economic issues, why
don't you tell us what your experience is for that?
A. Well, it runds the gamut. I've done work in antitrust,
meaning looking at the competitive nature of markets.
    I have done work in the intellectual property area of
valuing patents, trademarks, trade secrets, things that nature.
    I do work in general damage analysis, lost profits for
firms in litigation involving two companies.
    And I do medical malpractice and injury work, as well as

Diaz vs Tesla, Inc.
C 17-6748 WHO
Volume 4

681
MAHLA - DIRECT / ORGAN
1  work in the employment arena.  And I've been doing -- I've been
2  doing this work dating back to 1994.
3  Q.  Have you ever testified in court?
4  A.  Many times, yes.
5  Q.  And have you ever given expert opinion on valuation of
6  companies?
7  A.  I have done on a number of occasions assignments similar
8  to the one here.
9          MR. ORGAN:  Your Honor, I move that Dr. Mahla be
10 qualified as an expert.
11         THE COURT:  Okay.  On what topic?
12         MR. ORGAN:  On the issue of the economic value of
13 Tesla, Inc.
14         MS. KENNEDY:  As of what time period?
15         MR. ORGAN:  Financial condition of Tesla, Inc.
16         THE COURT:  As of what time period?
17         MR. ORGAN:  As of the date of his deposition,
18 Your Honor.
19         THE COURT:  Okay.  Which was in?
20         MR. ORGAN:  2019, Your Honor.
21         THE WITNESS:  February of 2020.
22         MR. ORGAN:  Oh, February of 2020, Your Honor.
23         MS. KENNEDY:  No objection.
24         THE COURT:  Okay.  You may proceed.
25         MR. ORGAN:  Thank you, Your Honor.

682
MAHLA - DIRECT / ORGAN
1  BY MR. ORGAN
2  Q.  So what did you do to come up with a value of Tesla, Inc.,
3  as of February 2020?
4  A.  Well, the value of Tesla is -- Tesla is a publicly-traded
5  firm.  So the value of Tesla is relatively easy to determine.
6  It's simply -- and it's sometimes referred to as the market
7  capitalization.
8       The market cap of Tesla at the time of my deposition is
9  simply determined by taking the publicly-traded shares
10 outstanding and multiplying it by the share price of those
11 shares.  And as of the day before my deposition, the estimate
12 of Tesla's market value was $151.2 billion.
13 Q.  $151.2 billion; is that correct?
14 A.  Correct.
15 Q.  Okay.  And in terms of the financial condition of Tesla,
16 in addition to its market capitalization of $151.2 billion, did
17 you analyze anything else in terms of the financial condition
18 of Tesla as of February 2020?
19 A.  Sure.  Well, generally, in looking at a firm like Tesla,
20 you look at things like revenue and revenue growth.  You look
21 at its asset base.  You can look at the amount of cash and cash
22 equivalents that it has, that it records on its balance sheets.
23 Cash equivalents are essentially investment vehicles that can
24 be converted very quickly into cash.  So they're considered
25 cash and cash equivalents.  We look at things like that.

683
MAHLA - DIRECT / ORGAN
1       We look at the amount of free cash flow.  That's a measure
2  of a firm's ability to generate cash.  Free cash flow is simply
3  the cash generated from operations minus any capital
4  expenditures that the firm has; investments, longer-term
5  investments.  You can look at things like the total amount of
6  cash above and beyond those -- those investments.
7       And, finally, you can look at the firm's ability to
8  generate income, net income; just total revenue minus total
9  costs.
10 Q.  I believe during your deposition you had a chart.
11 Exhibit 6 I think it was; is that correct?
12 A.  Yes.
13         MR. ORGAN:  And, Your Honor, we have that chart for
14 the jury.
15         THE COURT:  All right.
16      (Document displayed.)
17 BY MR. ORGAN:
18 Q.  Do you recognize this document, Dr. Mahla?
19 A.  I do.  This is marked as Exhibit 6 to my depo.
20 Q.  Okay.  So tell us, go through this, if you could, so that
21 we can understand this for those of us who are not math whizzes
22 like yourself.  Tell us what this means.
23 A.  Sure.  Well, there's two columns, one as of June 30th,
24 2019, and those are most of the financials that I used at the
25 time I was writing my initial report back in October.  That was

684
MAHLA - DIRECT / ORGAN
1  the last set of financials that were produced by Tesla in a
2  public forum to the SEC and also through its own publication of
3  financial information on its website.
4       The second column 12/31/2019, that's the last financial
5  reporting period that I had available prior to my deposition.
6  And so I looked at the change from the time I had done my
7  initial report until the time I was deposed.
8       And we start with total assets.  In June of 2019, Tesla
9  recorded $31.9 billion in assets.  They increased a little over
10 7 and a half percent in that interim period, the final six
11 months of 2019, to $34.3 billion.
12      Total revenues, and here we're looking at calendar years
13 2018 and 2019.  It generated $21.5 billion in revenues in 2018.
14 Revenues were up 14 and a half percent in '19 to 24.6 billion,
15 which is the 24th -- it's listed there as 24,578.  That's in
16 thousands -- or that's millions rather.  So that's
17 $24.6 billion.
18      We spoke about the market capitalization.  At the time of
19 my report, I had looked at the number of shares outstanding and
20 the closing price of Tesla on the -- on a couple of days before
21 I filed my report on October -- on October.  I looked at the
22 price on October 9th.  That gave a market capitalization or a
23 market value of 43.8 billion.
24      You can see that the market had re-evaluated Tesla and, in
25 fact, on the day before my deposition the market had more than

685

MAHLA - CROSS / KENNEDY

1  tripled its assessment of Tesla value and it listed at
2  $151.2 billion.
3       Cash and cash equivalents, the next is "C" and "CE."
4  That's the cash that we spoke of.  And in June they reported
5  $5 billion in cash on their books.  By the end of the year,
6  that had increased by almost 1.3 billion to 6.268 billion.
7       Tesla reported free cash flow as 614 million in the second
8  quarter of 2019.  In the fourth quarter it reported free cash
9  flow of over a billion dollars, and that's just the operating
10 cash flow above expenses less capital expenditures.
11      And finally the net income.  At the time I wrote my
12 report, the second quarter earnings were reported as negative
13 408 million.  In fact, Tesla had not made -- they maybe had one
14 quarter or two quarters prior to that where they made a
15 positive net income.  Generally up through 2019 Tesla was not
16 positive.  It was not in the black in terms of net income.  The
17 last two quarters of 2019 Tesla reported 143 million in
18 positive profits in the third quarter and 105 million in
19 positive profits in the fourth quarter.
20         MR. ORGAN:  Okay.  No more questions, Your Honor.
21         THE COURT:  All right.  Ms. Kennedy.
22         MS. KENNEDY:  Yes, Your Honor.  A few questions.
23                    CROSS-EXAMINATION
24 BY MS. KENNEDY
25 Q.  Good afternoon, Mr. Mahla.

686

MAHLA - CROSS / KENNEDY

1  A.  Good afternoon.
2  Q.  I understand you've been retained to render an opinion
3  regarding the financial condition of Tesla; correct?
4  A.  Yes.
5  Q.  And basically the financial condition is basically the
6  financial stats of the organization; right?
7  A.  Correct.
8  Q.  You take a look at the asset base and the cash generation
9  profitability; correct?
10 A.  Yes.
11 Q.  When you look at asset base, that includes every nut and
12 bolt, so to speak, that Tesla owns, everything from desks to
13 chairs to laptops to all of that; correct?
14 A.  Sure.
15 Q.  And as I understand what you did, you basically just
16 looked at the publicly-traded financial -- publicly available
17 information regarding financial stats; correct?
18 A.  Yes.  It's a publicly-traded firm, that's right.
19 Q.  And then just recited what those stats were; correct?
20 A.  That's right.
21 Q.  And when you talk about net revenue, that does -- strike
22 that.
23      When we talk about revenue, that doesn't include expenses;
24 correct?
25 A.  No.  That's purely revenue.

687

MAHLA - CROSS / KENNEDY

1  Q.  And when you're looking at the financial condition of an
2  organization, you need to look at more than just one or two
3  financial statements; correct?
4  A.  Sure.
5  Q.  And you would agree Tesla would be described, in using
6  your words, as "a relatively young, fast-growth company that
7  could face risk to its business"?  Do you agree with that?
8  A.  Sure.  That was in my report.
9  Q.  Right.  And some of those risks could result in financial
10 distress to Tesla.  You agree with that; right?
11 A.  At the time I wrote that, that was certainly a risk, yes.
12 Q.  And that's despite the very large asset base that Tesla
13 has; right?
14 A.  Sure.  And its -- and its large market capitalization,
15 that's true.
16 Q.  So other than simply looking at the financial -- the
17 publicly available financial statements, you didn't do anything
18 else to determine any type of financial condition of the
19 organization; correct?
20 A.  Well, the only information that was available to me was
21 publicly available information, and this is information that
22 Tesla files with the Securities and Exchange Commission.  So
23 this is -- these are -- these figures are filed under penalty
24 of perjury, so I assume they are correct.
25 Q.  Correct.  But my question is:  So you looked at these

688

PROCEEDINGS

1  filings with the SEC and basically you recited what is on those
2  SEC filings as part of your opinion; correct?
3  A.  Correct.
4         MS. KENNEDY:  Your Honor, I have no -- strike that.
5     Did you use -- strike that.
6     Thank you.  I'm done.  Thank you, Your Honor.
7         THE COURT:  Okay.
8     Mr. Organ, anything further?
9         MR. ORGAN:  No more questions, Your Honor.
10        THE COURT:  All right.  Thank you, Mr. Mahla.  You're
11 excuse.
12        THE WITNESS:  Thank you.
13    (Witness excused.)
14        THE COURT:  And who is next?
15        MR. ORGAN:  Your Honor, we would move to put in
16 Exhibit 6, the Anti-Handbook Handbook.
17        THE COURT:  All right.  Is there --
18        MR. ORGAN:  There's an agreement.
19        MS. KENNEDY:  Yes, we stipulated to Exhibit 6.
20        THE COURT:  All right.  So Exhibit 6 is admitted.
21    (Trial Exhibit 6 received in evidence)
22        MR. ORGAN:  And then Exhibit 3, Your Honor, is now
23 agreed upon in its edited form.
24        MS. KENNEDY:  Exhibit 3 in the redacted form per the
25 agreement, as well as Exhibit 379, the Demetric Di-az

Diaz vs Tesla, Inc.
C 17-6748 WHO
Volume 4

697
PROCEEDINGS
1        MS. KENNEDY:  Oh, you'll have them this afternoon.
2        THE COURT:  Okay.  Sooner rather than later --
3        MS. KENNEDY:  Yes.
4        THE COURT:  -- because you'll want to know what my
5   rulings are.
6        MR. ORGAN:  Well, we will be having a conference still
7   tomorrow?
8        THE COURT:  Yes.
9        MR. ORGAN:  So we will be doing closings on Monday?
10       THE COURT:  Correct.  And we will do the Final Jury
11  Instructions right after the evidence is finished on Friday.
12       MR. ORGAN:  I think you got my comments at least last
13  night I believe.
14       THE COURT:  On the Jury Instructions, yes.
15       MR. ORGAN:  Yes, Your Honor.
16    Okay.  And then we also -- we might have a little bit of
17  rebuttal, but it will be maybe ten minutes at the most.
18       THE COURT:  Okay.  Well, we'll see where we are.
19       MR. ORGAN:  Yes.
20       THE COURT:  Okay.
21       MR. ORGAN:  Thank you, Your Honor.
22       MS. KENNEDY:  Thank you, Your Honor.
23   (Whereupon at 1:13 p.m. further proceedings
24    were adjourned until Friday, October 1, 2021
25    at 8:00 a.m.)
698

I N D E X

Thursday, September 30, 2021 - Volume 4

| PLAINTIFF'S WITNESSES | PAGE | VOL. |
|---|---|---|
| DIAZ, OWEN ORAPIO (RECALLED) (PREVIOUSLY SWORN) | 557 | 4 |
| Cross-Examination resumed by Ms. Kennedy | 557 | 4 |
| Redirect Examination by Mr. Organ | 574 | 4 |
| READING, ANTHONY EDWARD (SWORN) | 577 | 4 |
| Direct Examination by Mr. Alexander | 577 | 4 |
| Cross-Examination by Ms. Kennedy | 596 | 4 |
| Redirect Examination by Mr. Alexander | 613 | 4 |
| JONES, LA'DREA (SWORN) | 622 | 4 |
| Direct Examination by Ms. Nunley | 622 | 4 |
| Cross-Examination by Ms. Kennedy | 632 | 4 |
| MARCONI, ERIN VIDEOTAPED TESTIMONY | 638 | 4 |
| OPPENHEIMER, AMY (VIA ZOOM) (SWORN) | 642 | 4 |
| Direct Examination by Mr. Organ | 643 | 4 |
| Cross-Examination by Ms. Kennedy | 660 | 4 |
| Redirect Examination by Mr. Organ | 678 | 4 |
| MAHLA, CHARLES (VIA ZOOM) (SWORN) | 680 | 4 |
| Direct Examination by Mr. Organ | 680 | 4 |
| Cross-Examination by Ms. Kennedy | 685 | 4 |

- - -

699

I N D E X
E X H I B I T S

| TRIAL EXHIBITS | IDEN | EVID | VOL. |
|---|---|---|---|
| 3 | | 689 | 4 |
| 6 | | 688 | 4 |
| 204 | 557 | 558 | 4 |
| 265 | | 564 | 4 |
| 379 | | 689 | 4 |

- - -

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR
Thursday, September 30, 2021

>

*Debra L. Pas, CRR*
*Official Reporter - U.S. District Court*
*(415) 431-1477*