UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OWEN DIAZ,

        Plaintiff,

    v.

TESLA, INC., et al.,

        Defendants.

Case No. 3:17-cv-06748-WHO

**ORDER ON MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION TO STRIKE**

Re: Dkt. Nos. 281, 282

After both parties rested in their recent jury trial, defendant Tesla, Inc. ("Tesla"), moved for judgment as a matter of law and to strike the testimony of one of plaintiff Owen Diaz's experts. I denied those motions orally from the bench. This Order provides a written explanation for those denials and assumes familiarity with the trial record.

**LEGAL STANDARDS**

**I.  JUDGMENT AS A MATTER OF LAW**

Federal Rule of Civil Procedure 50 governs judgments as a matter of law ("JMOL") in jury trials. Under Rule 50(a)(1), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." A JMOL motion may be granted "only if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). As a result,

    In ruling on a motion for JMOL, the court is not to make credibility determinations or

> weigh the evidence and should view all inferences in the light most favorable to the nonmoving party. The court must accept the jury's credibility findings consistent with the verdict. It must disregard all evidence favorable to the moving party that the jury is not required to believe. The court may not substitute its view of the evidence for that of the jury.

*Id.* (internal quotation marks, citations, and alteration omitted).

## II. MOTION TO STRIKE

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (internal quotation marks omitted).

Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* These factors are "helpful, not definitive," and a court has discretion to decide how to test reliability "based on the particular circumstances of the particular case." *Id.* (internal quotation marks and footnotes omitted). "When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

The inquiry into the admissibility of expert testimony is "a flexible one" in which "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. The burden is on the proponent

1   of the expert testimony to show, by a preponderance of the evidence, that the admissibility

2   requirements are satisfied.  *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594,

3   598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 advisory committee's note.

**DISCUSSION**

**I.    MOTION FOR JUDGMENT AS A MATTER OF LAW**

Tesla's motion for JMOL is narrow: it argues that "Plaintiff did not meet his burden to establish Plaintiff was in a contractual relationship with Tesla, nor has there been any evidence of a contract under which Plaintiff has rights under Section 1981."  Motion for Judgment as a Matter of Law ("JMOL Mot.") [Dkt. No. 282] 1.  As noted, I denied the motion.

42 U.S.C. § 1981(a) provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  And the phrase "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  It is "well established" that the statute "prohibits racial discrimination in the making and enforcement of private contracts."  *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).  Unlike statutes that focus on employment discrimination, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

As I explained from the bench, there are two ways by which a reasonable jury presented with the evidence at trial could have found that there was a contractual relationship sufficient to create Section 1981 liability.

**A.  Contract of Employment**

First, the jury could (and ultimately did) reasonably conclude that Tesla was an employer

3

of Diaz and that an employment contract therefore governed their relationship.

In California, as a general matter, "[a] contract of employment is governed by the same rules applicable to other types of contracts." *Reynolds Elec. & Eng'g Co. v. Workmen's Comp. Appeals Bd.*, 65 Cal. 2d 429, 433 (1966). The four elements to create a contract under California law are: (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) consideration. Cal. Civ. Code § 1550. The "consent" required is the "mutual consent of the parties," which is "generally achieved through the process of offer and acceptance." *DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) (internal citations omitted). Whether this consent occurred is determined under an objective standard based on the parties' "outward manifestations or expressions" and "the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Id.* "Consideration is present when the promisee confers a benefit or suffers a prejudice." *Prop. California SCJLW One Corp. v. Leamy*, 25 Cal. App. 5th 1155, 1165 (2018). The consideration "must actually be bargained for as the exchange for the promise" or "have induced the promisor's promise." *Id.* (internal quotation marks and citations omitted).

Under the law (as both parties agree) a person can have more than one employer for present purposes. *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019). Two or more "entities may simultaneously share control over the terms and conditions of employment, such that both should be liable for discrimination relating to those terms and conditions." *Id.* Here, the jury found in a special verdict that Tesla was a joint employer of Diaz. *See* Dkt. No. 291 at 1.

There was a legally sufficient evidentiary basis for the jury to find that Tesla employed Diaz—even if it was not the employer listed on his paycheck—and that Tesla and Diaz had an employment contract. No one disputes that (1) Tesla and Diaz are both capable of contracting and (2) that employment is a lawful object. The jury could have found both remaining elements— mutual consent and consideration. It could have found mutual consent from the facts that Diaz applied to work at Tesla, was hired by a contractor at Tesla's direction, worked in Tesla's facility, abided by working conditions and terms Tesla set, all at a pay level Tesla controlled and funded

4

1  from its own pocket, for the benefit of Tesla's business. *See* Dkt. No. 297 at 7:11–713:23 (Tesla
2  supervisor describing supervising people in Diaz's position); Dkt. No. 295 at 391:23–24 (Diaz
3  testifying that "all my directions came from Tesla"); *id.* at 392:18–20 (Diaz testifying that Tesla
4  conducted safety training); *id.* at 399:23–400:16 (Diaz testifying that his supervisors were direct
5  Tesla employees). These all together are objective, outward manifestations that both parties
6  assented to the terms of their employment contract. *See Monster Energy Co. v. Schechter*, 7 Cal.
7  5th 781, 789 (2019) ("[T]he primary focus in determining the existence of mutual consent is upon
8  the acts of the parties involved."); Restatement (Second) of Contracts § 19(1) (contracts may be
9  formed without written or spoken words, based on "acts"). As the Restatement puts it, "[w]ords
10 are not the only medium of expression. Conduct may often convey as clearly as words a promise
11 or an assent to a proposed promise." Restatement (Second) of Contracts § 19 comm. a. And both
12 parties gave the classic consideration in an employment contract: Diaz gave his labor, Tesla gave
13 wages (through an intermediary). A jury could therefore find that Tesla and Diaz had formed an
14 employment contract because "the conduct of [Tesla] and [Diaz] looked like an employment
15 agreement, walked like an employment agreement, [and] sounded like an employment
16 agreement." *Baker v. Elmwood Distrib., Inc.*, 940 F.2d 1013, 1018 (7th Cir. 1991).

17     Tesla's brief is conspicuously silent on the precise elements of the contract it thinks are
18 missing, so it is difficult to address its argument. To the extent its argument is that Diaz signed a
19 written contract with a staffing agency, not Tesla, that is immaterial because contracts need not be
20 written. As noted, there was a legally sufficient basis for the jury to find, as it did, that Tesla was
21 a joint employer. Tesla relies on *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208 (3d Cir. 2015),
22 which also dealt with a defendant that used a staffing company to hire the plaintiff. There, the
23 court found there could not be Section 1981 liability because (1) the plaintiff "d[id] not argue that
24 he me[t]" the contractual liability standard and (2) "the record does not indicate that Faush entered
25 into a contract with Tuesday Morning or ever attempted to do so." *Id.* at 220. *Faush* is about that
26 particular plaintiff's failure to show the existence of a contract. The Third Circuit did not hold or
27 imply that a defendant's use of a staffing company automatically shields it from Section 1981
28 liability.

5

Finally, it is worth taking a step back to view the bigger picture. Diaz had an employment contract with his staffing company. Tesla used that staffing company to get employees. There was a legally sufficient evidentiary basis to support a finding that Tesla was in fact an employer of Diaz. In that circumstance, it makes perfect sense that an employment contract would exist between Diaz and Tesla too.

### B. Third-Party Beneficiary

Second, the jury could have found that Diaz could sue under Section 1981 because he was a third-party beneficiary of Tesla's contract with nextSource, the staffing company that hired Diaz's staffing company.

I have already ruled in this case that intended beneficiaries can bring Section 1981 claims based on the contract from which they benefit. Dkt. No. 278. Tesla's brief does not take issue with that ruling and, indeed, affirmatively argues that Diaz does not meet the standard. Under California law, a "third party may enforce a contract made for his or her benefit or made for the benefit of a class of which he or she is a member." *Serv. Emps. Internat. Union, Loc. 99 v. Options--A Child Care & Hum. Servs. Agency*, 200 Cal. App. 4th 869, 878 (2011). A contract "need not expressly state that it is intended to benefit a third party as long as such an intent is apparent through the ordinary means of contract interpretation." *Id.*

Tesla's contract with nextSource was intended to benefit Diaz and the class of people—the employees—of which he was a part. Its primary intent, no doubt, was to benefit the parties may setting up a system to hire workers. But the question is not about the parties' *primary* goal, it is whether the contract intends a non-incidental, none-remote benefit to a third party.

Because Tesla cannot reasonably argue that the employment contract is not geared, in part, toward benefitting the employee to be hired, it relies almost entirely on one paragraph of that agreement. That paragraph states,

> Third Party Beneficiaries. This Agreement is entered into solely between Tesla and Supplier and, except for the Parties indemnification obligations under Section 11 (Indemnification) and the Service Recipients, will not be deemed to create any rights in any third parties or to create any obligations of either Tesla or Supplier to any third parties.

Trial Ex. 3 ¶ 14.10.

6

Tesla cites *Balsam v. Tucows Inc.*, which found that a similar clause to mean that there were no third-party beneficiaries. 627 F.3d 1158, 1163 (9th Cir. 2010). But here, the jury could reasonably conclude from "the circumstances under which [the contract] was entered" that the contract exists to benefit, at least to some extent, the class of which Diaz is part. *Prouty v. Gores Tech. Gr.,* 121 Cal.App.4th 1225, 1233 (2004). Tesla cannot—at least as a matter of law—escape its legal obligations by inserting afactual boilerplate like the provision that claims not to create rights in third-parties. *Cf. Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 339 (2000) (holding that at-will employment provision could be considered but could be overcome by other evidence of intent). In other words, if the contract as a whole indicates the sky is blue, a single clause indicating it is red does not prevail. As *Balsam* said, the clause there governed in "the absence of any evidence to the contrary." *Balsam*, 627 F.3d at 1163. Indeed, *Balsam* contemplated situations where "third party beneficiary rights [] *would* control over the explicit 'No Third–Party Beneficiaries' clause" based on the parties' intent. *Id.* at 1162 (emphasis added). And *Balsam* involved a suit by someone who received spam email and claimed that he was a third-party beneficiary of a contract between the registrar of a domain name and ICANN (which partially regulates domain names). Here, in marked contrast, Diaz was an employee alleging he is a third-party beneficiary of the very contract that makes his employment possible. That is a far tighter connection than the tenuous one in *Balsam* and a jury could find that this reality trumps a lone contractual phrase to the contrary.[1]

## II.    MOTION TO STRIKE

Diaz called financial expert Charles Mahla to testify about Tesla's value. Tesla did not object to his testimony. After both sides rested, Tesla moved to exclude his testimony. *See* Motion to Strike ("Strike Mot") [Dkt. No. 281]. As I explained from the bench, the motion is denied for two reasons.

Fundamentally, Tesla waived its objection by failing to make it when Mahla testified (or in

---

[1] Tesla also relies on *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968 (C.D. Cal. 2004), but even if that case applied the correct legal standard in its time, it did not apply the modern legal standard, which does not require an express creation of rights.

7

a *Daubert* motion before trial).  *See Puckett v. United States*, 556 U.S. 129, 134 (2009); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012); *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1067 (9th Cir. 1996), *as amended on denial of reh'g* (June 26, 1996).  Tesla has been on notice of the content of Mahla's testimony for years due to expert disclosures and his deposition.  It stated it had no objection to qualifying him as an expert and its counsel remained silent through the entirety of his testimony.  It only raised the objection after both parties rested.

And even if the objection were not waived, it is meritless.  Tesla's argument is that Mahla's valuation of the company is not based on technical or specialized knowledge, is lay witness testimony, and is not helpful to the jury as a result.  All that Mahla did, Tesla argues, was multiply the number of outstanding Tesla shares with the value of each share and announce the result to the jury.  It is incorrect in several ways.  An expert's valuation of a company is admissible as expert testimony if methodologically sound.  *See, e.g.*, *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 549–50 (N.D. Cal. 2012).  The primary utility of Mahla's testimony was providing the jury with a *measure* of the value of a company, something that would be within the knowledge of a financial expert, not a layperson.  *See* Dkt. No. 296 at 682:2–12.  He opined that market capitalization is such a measure.  *Id.*  He then went on to calculate Tesla's market cap.  *Id.*  It is true that *that* calculation was simply multiplying shares by value, but the jury would not have had that financial information unless he revealed it to them, so his testimony assisted them in understanding matters outside the ken of laypeople.

## CONCLUSION

As previously ordered, the motions for judgment as a matter of law and to strike are DENIED.

**IT IS SO ORDERED.**

Dated: October 6, 2021



William H. Orrick
United States District Judge