LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
NAVRUZ AVLONI (SBN 279556)
navruz@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW
GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:    (415)-453-7352
Facsimile:    (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:    (310) 394-0888
Facsimile:    (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:    (415) 421-7151
Facsimile:    (415) 362-8064

Attorneys for Plaintiff OWEN DIAZ

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,<br><br>        Plaintiffs,<br><br>    v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>        Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S MOTION PURSUANT TO 28 U.S.C. §1292(b) TO CERTIFY POST-TRIAL ORDER FOR INTERLOCUTORY REVIEW**<br><br>Hearing Date: June 8, 2022<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>The Hon. William H. Orrick |

-i-

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION ........................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

    1. Introduction ................................................................................................................ 2

    2. Background ................................................................................................................. 3

    3. This Court's Post-Trial Order should be certified for interlocutory appeal ............ 5

        a. The post-trial ruling involves a controlling question of law as to which
           there is substantial ground for difference of opinion .............................. 6

        b.  An immediate interlocutory appeal would materially advance the
           ultimate termination of the litigation. ...................................................... 13

    4. Extension of the deadline for accepting or rejecting the remittitur ......................... 15

    5. Conclusion ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*999 v. C.I.T. Corp.*,
   776 F.2d 866 (9th Cir. 1985) ........................................................................14

*Allied Chem. Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980) (per curiam) ...............................................................2, 13

*Arnold v. Pfizer, Inc.*,
   2015 WL 268967 (D. Or. Jan. 21, 2015) ......................................................9

*Associated Diesel Serv. & Equip. Co. v. Terex Corp.*,
   46 F.3d 1138 (9th Cir. 1995) ........................................................................14

*Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc.*,
   99 F.3d 587 (4th Cir. 1996) ....................................................................14, 15

*Borck v. City of Los Angeles*,
   303 F. App'x 437 (9th Cir. 2008) ................................................................14

*Brady v. Gebbie*,
   859 F.2d 1543 (9th Cir. 1988) ......................................................................10

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1982) ....................................................................6, 13

*Cervantes v. Cty. of Los Angeles*,
   2015 WL 5163031 (C.D. Cal. Sept. 3, 2015) ................................................9

*Cortez v. Chipotle Mexican Grill, Inc.*,
   2021 WL 3214765 (9th Cir. July 29, 2021) ..................................................14

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
   95 F.3d 1422 (9th Cir. 1996) ........................................................................10

*DePinto v. Provident Sec. Life Ins. Co.*,
   323 F.2d 826 (9th Cir. 1963) ...................................................................13, 14

*Donovan v. Penn Shipping Co.*,
   429 U.S. 648 (1977) (per curiam) ..............................................................2, 14

*Drew v. Equifax Info. Servs., LLC*,
   2010 WL 5022466 (N.D. Cal. Dec. 3, 2010) ...............................................10

*Felder v. United States*,
   543 F.2d 657 (9th Cir. 1976) ..........................................................................9

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
    315 F. App'x 603 (9th Cir. 2008) ..................................................15

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) .................................................6, 15

*Lambert v. Ackerley*,
    180 F.3d 997 (9th Cir. 1999) ...................................................10

*Mueller v. Dep't of Pub. Safety*,
    2022 WL 980696 (D. Haw. Mar. 31, 2022)..................................10

*Newton v. Equilon Enterprises*,
    LLC, 411 F. Supp. 3d 856 (N.D. Cal. 2019)................................10

*Newton v. Nat'l Broad. Co.*,
    930 F.2d 662 (9th Cir. 1990) ...................................................14

*Oracle Corp. v. SAP AG*,
    765 F.3d 1081 (9th Cir. 2014) ....................................................2

*Passantino v. Johnson & Johnson Consumer Prod., Inc.*,
    212 F.3d 493 (9th Cir. 2000) ..................................... *passim*

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .....................................................6

*Rivera v. NIBCO, Inc.*,
    364 F.3d 1057 (9th Cir. 2004) ..................................................15

*Shaw v. United States*,
    741 F.2d 1202 (9th Cir. 1984) ....................................................9

*Smith v. City of Oakland*,
    538 F. Supp. 2d 1217 (N.D. Cal. 2008) ........................................9

*Spitzke v. United States*,
    914 F.2d 263 (9th Cir. 1990) .....................................................9

*Steering Comm. v. United States*,
    6 F.3d 572 (9th Cir. 1993) .......................................................15

*Steffens v. Regus Grp., PLC*,
    2013 WL 4499112 (S.D. Cal. Aug. 19, 2013) ..............................10

*Talbert v. Kelly*,
    799 F.2d 62 (3d Cir. 1986)......................................................14

*Thomas v. Cannon*,
    289 F. Supp. 3d 1182 (W.D. Wash. 2018)..................................10

*Trevino v. United States*,
    804 F.2d 1512 (9th Cir. 1986) .................................................................9

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014)............................................................ *passim*

*Velez v. Roche*,
    335 F. Supp. 2d 1022 (N.D. Cal. 2004) .................................................10

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*,
    668 F.2d 1014 (9th Cir. 1981) ...............................................................14

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996)................................................................................14

*Yowan Yang v. ActioNet, Inc.*,
    2017 WL 2117028 (C.D. Cal. Jan. 23, 2017) ..........................................4

**California Cases**

*Bertero v. Nat'l Gen. Corp.*,
    13 Cal. 3d 43 (1974) ..............................................................................11

*Burchell v. Fac. Physicians & Surgeons of Loma Linda Univ. Sch. of Med.*,
    54 Cal. App. 5th 515 (2020) ..................................................................12

*Daggett v. Atchison, T. & S. F. Ry. Co.*,
    48 Cal. 2d 655 (1957) ............................................................................11

*Lane v. Hughes Aircraft Co.*,
    22 Cal. 4th 405 (2000) ...........................................................................11

*Pool v. City of Oakland*,
    42 Cal. 3d 1051 (1986) ..........................................................................11

*Roby v. McKesson Corp.*,
    47 Cal. 4th 686 (2009) .............................................................................4

*Rodriguez v. McDonnell Douglas Corp.*,
    87 Cal. App. 3d 626 (1978) ...................................................................12

*Seffert v. Los Angeles Transit Lines*,
    56 Cal. 2d 498 (1961) ............................................................................11

**Statutes**

28 U.S.C. § 1292(b) ............................................................................... *passim*

**Rules**

Fed. R. App. P. 5 ................................................................................................5

Fed. R. Civ. P. 59 .............................................................................................7

**Other Authorities**

U.S. Constitution, amendment VII .....................................................................8

*Consumer Price Index*, Association of Bay Area Governments (April 1, 2022
    update) https://abag.ca.gov/tools-resources/data-tools/consumer-price-index ...............5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 8, 2022, at 2:00 PM, in Courtroom 2, 17th Floor, United States District Court for the Northern District of California, at 450 Golden Gate Avenue, San Francisco, California, before the Honorable William H. Orrick, plaintiff Owen Diaz shall, and hereby does, move pursuant to 28 U.S.C. §1292(b) and Federal Rule of Appellate Procedure 5(a)(3) for an order certifying for interlocutory appeal the Court's April 13, 2022 Order on Post-Trial Motions (Doc. No. 328) ("Post-Trial Order").

Plaintiff seeks certification on the grounds that: (1) the Post-Trial Order decided a "controlling question of law as to which there is substantial ground for difference of opinion"; and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

This request is based on this Notice of Motion and Motion, Plaintiff's supporting Memorandum of Points and Authorities, the Post-Trial Order, all pleadings and papers on file with the Court in this action, and on such other matters as may be presented to the Court at or before the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

**1. Introduction**

On April 13, 2022, this Court (1) denied Tesla's motion for judgment as a matter of law and (2) denied Tesla's motion for a new trial—on the condition that Plaintiff Owen Diaz accept a remittitur of the jury's compensatory damages award from $4.5 in past emotional distress damages plus $2.4 million in future emotional distress damages to a lump sum of $1.5 million and a remittitur of the punitive damages award from $130 million to $13.5 million. Dkt. No. 328 ("Post-Trial Order") at 43. Plaintiff Diaz now requests certification of the Court's order for interlocutory appeal, pursuant to 28 U.S.C. §1292(b), because the Court's new trial/remittitur ruling decided a "controlling question of law as to which there is substantial ground for difference of opinion" and because "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Certification is particularly appropriate in this case because procedurally, the *only* way both parties can appeal the Post-Trial Order without undergoing the expense and delay of a second damages trial (other than through mandamus) is through Section 1292(b) certification, because in federal court a plaintiff has no right to appeal from a remittitur that the plaintiff accepts.[1]

Plaintiff has no quarrel with the Court's analysis of the liability issues. Nor does Plaintiff disagree that the Court has the authority to review the evidence underlying a jury's damages verdict in response to a new trial motion, and to offer Plaintiff a choice between either a new trial or a remittitur to an amount the Court concludes is the "maximum amount sustainable by the proof." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014). In this case, however, the Court's remittitur analysis shows that the Court's decision to reduce compensatory damages to

---

[1] If Plaintiff Diaz accepts the Court's remittitur, he will be forever foreclosed from arguing to the Ninth Circuit that the remittitur amounts were too low, even though Tesla would be entitled to appeal on the ground that those amounts were too high. *See Donovan v. Penn Shipping Co.*, 429 U.S. 648, 650 (1977) (per curiam). If Plaintiff instead rejects the remittitur, neither side can appeal until after the parties and the Court have undergone the time and expense of a second damages trial. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam). Yet even if Plaintiff preserves his right to appeal by pursuing a second damages trial, he would still run the risk that the Court, applying the same analysis after the second trial that it applied after the first, would again reduce the jury's verdict by remittitur. *See infra* at 13-15.

$1.5 million—less than a quarter of the amount awarded by the jury—as the maximum amount sustainable by the proof was materially, and Plaintiff believes improperly, influenced by the Court's comparative analysis of jury verdicts in two other cases: one from a Tacoma, Washington jury in 1997 and the other from a Buffalo, New York jury in 2012. Because both prongs of the Section 1292(b) inquiry are satisfied for the reasons stated below, Plaintiff seeks certification of the Post-Trial Order to enable the Ninth Circuit to consider *both* parties' challenges to the Court's new trial/remittitur ruling.

By separate motion, Plaintiff also asks the Court to extend the 30-day deadline for Plaintiff to decide whether to accept the remittitur or pursue a new damages trial, until seven (7) days after final disposition of Plaintiff's Section 1292(b) certification request. *See infra* at 15.[2]

## 2. **Background**

On October 4, 2021, the jury returned a special verdict finding Defendant Tesla liable to Plaintiff Owen Diaz on several claims under federal and California law, including for having created a racially hostile work environment and for having been negligent in its supervision or retention of serial harasser Ramon Martinez, Plaintiff's direct supervisor. Dkt. No. 301. The jury awarded Diaz $4.5 million in past compensatory damages, $2.4 million in future compensatory damages, and $130 million in punitive damages. The past and future compensatory damages were for emotional distress, based on the evidence presented at trial. Tesla subsequently moved for judgment as a matter of law and for a new trial, arguing it was not liable to Diaz at all and alternatively, that the jury's compensatory and punitive damages awards were excessive.

On April 13, 2022, this Court issued its "Order on Post-Trial Motions." Dkt. No. 328. The Court denied Tesla's motion for judgment as a matter of law and denied Tesla's motion for a new trial with respect to Tesla's liability, rejecting all of Tesla's arguments as to liability and its claim that the liability verdict was against the weight of the evidence. *Id.* at 2, 14-26. However,

---

[2] The parties have met and conferred, but Tesla has not yet taken a position on this motion or on Plaintiff's accompanying request for an extension of the deadline for Plaintiff to decide whether to accept the remittitur or to re-try damages. *See* Rubin Dec. in Support of Admin. Motion (May 4, 2022).

the Court granted in part Tesla's motion for new trial/remittitur with respect to damages, requiring Plaintiff to choose between accepting either substantially reduced amounts of compensatory and punitive damages or a new trial as to those damages. *Id.* at 2.

With respect to compensatory damages, the Court first explained "why Diaz is entitled to a relatively large emotional distress damages award," setting forth some of the evidence demonstrating the hostile work environment that Tesla created and Diaz endured, as well as the evidence that Tesla's racial harassment had "profound" "severe and debilitating" effects on Diaz. *Id.* at 27-29. Nonetheless, the Court concluded that the jury's compensatory damages award of $2.4 million in future noneconomic damages and $4.5 million in past noneconomic damages was excessive and that $1.5 million in compensatory damages was the "highest award supported by the evidence." *Id.* at 2.

With respect to the *future* damages, the Court found that some amount of emotional distress damages was warranted (although it did not state what that amount should be). Citing evidence that Diaz's condition had improved since he stopped working at Tesla, *but see* Pl.'s Post-Trial Br. (Dkt. No. 321) at 19–20, though, the Court concluded that "there is no record evidence sufficient to reasonably find that what Diaz will suffer in the future is worth $2.4 million—a figure that … is significantly larger than the mine-run of total damages awards." *Id.* at 29.

With respect to the *past* damages, the Court pointed to three factors that it concluded required remittitur, each of which also rested upon a comparative-case analysis. First, Diaz had worked at Tesla for nine months, which was "not nearly so long as some of the emotional harm discussed in cases below for which the awards were smaller." *Id.* at 30. Second, "Diaz's emotional harm did not come with physical illness or injury as in many cases." *Id.*[3]  Third, "a

---

[3] Plaintiff respectfully disagrees with the Court's finding that diagnosed psychological harm, which manifested in physical and behavioral symptoms as supported by expert evidence that was unrebutted at trial, does not qualify as "physical illness or injury." *See Roby v. McKesson Corp.*, 47 Cal. 4th 686, 713 (2009); *Yowan Yang v. ActioNet, Inc.*, 2017 WL 2117028 at *15 (C.D. Cal. Jan. 23, 2017); Pl.'s Post-Trial Br. at 26.

survey of comparable cases convinces [the Court] that the full amount of the jury's award is not supported by substantial evidence." *Id.*

The Court then proceeded to analyze in considerable detail the similarities and differences between the facts and jury awards in other cases, with special emphasis on *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014) and *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493 (9th Cir. 2000). The Court then concluded:

> The jury is entitled to "great deference," and that is especially true when it comes to non-economic harm. It had ample grounds to find that Diaz was severely harmed. But its award of future damages is far out of proportion to the evidence and its award of past damages must be reduced too. The closest cases, especially *Turley* and *Passantino*, illustrate that awards of roughly $1.5 million (in today's dollars) are supported by analogous (though not identical) evidence. Accordingly, I conclude that the maximum amount supportable by proof to make Diaz whole for his emotional harm is $1.5 million. And even though this award is on the high side for these types of cases, it is justified given the facts and the jury's findings.

Post-Trial Order at 35-36 (citations omitted).[4]

**3.   This Court's Post-Trial Order should be certified for interlocutory appeal.**

Under 28 U.S.C. §1292(b), certification of a district court order for interlocutory appellate review is appropriate when (1) the order involves a "controlling question of law as to which there is substantial ground for difference of opinion"; and (2) immediate appeal from the order "may materially advance the ultimate termination of the litigation."[5] Both prongs are satisfied in this case.

---

[4] Although the Court stated that the amount of remittitur ($1.5 million) was comparable to the awards in *Passantino* and *Turley* when adjusted for inflation, Post-Trial Order at 35-36, in fact those verdicts would be worth much more in today's dollars. Given the substantial inflation in the 25 years since the jury verdict in *Passantino*, a June 1997 verdict of $1 million in the San Francisco Bay Area would be worth $1,958,125 as of the *Diaz* jury's October 2021 verdict (while a verdict of $1.25 million would be worth $2,447,656.25 and a verdict of $1.5 million would be worth $2,937,187.50, *see infra* at 8). *See Consumer Price Index*, Association of Bay Area Governments (April 1, 2022 update), https://abag.ca.gov/tools-resources/data-tools/consumer-price-index. Meanwhile, the June 2012 $1.32 million dollar verdict in *Turley* would, as of October 2021, be worth $1,724,587.16 on an index of Bay Area inflation. *Id.*

[5] *See also* Fed. R. App. P. 5(a)(3) ("If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement. In that event, the time to petition runs from entry of the amended order.").

### a. __The post-trial ruling involves a controlling question of law as to which there is substantial ground for difference of opinion.__

A district court ruling raises a controlling question of law when resolution of the issue on appeal may "materially affect the outcome of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) ("All that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court."). A substantial ground for difference of opinion exists "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). The Ninth Circuit follows other circuits in taking a "flexible" rather than "rigid" approach when applying Section 1292(b), *Reese*, 643 F.3d at 688 n.5, and has explained that "issues collateral to the merits" can be appropriate for interlocutory review, *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).

The controlling question of law here is whether a district court reviewing a jury's award of emotional distress damages may base its determination of what constitutes the maximum amount supported by the evidence in material part upon a comparative analysis of emotional distress verdicts issued by other juries in other jurisdictions in prior cases involving somewhat similar facts.

First, that question of law is certainly "controlling." The Court repeatedly stated throughout its Post-Trial Order that one of the reasons it concluded that $1.5 million was the maximum amount of compensatory damages permitted by the evidence was because that amount was in line with the jury verdicts in the two most "comparable" cases the Court could find: *Turley* and *Passantino*.

Second, there is substantial ground for difference of opinion concerning the weight a district court may give "comparable" verdicts in determining the appropriate remittitur amount where, as here, those verdicts issued in different jurisdictions, at different points in time, and presumably reflect what those foreign juries found sufficient to compensate plaintiffs for their emotional distress damages (a different inquiry than trial courts undertake in applying the maximum-amount-of-damages-permitted-by-law remittitur standard).

1    Although Rule 59 permits a Court to offer the plaintiff the choice between a new trial and

2    a remittitur to the maximum amount sustainable by the evidence, there is substantial ground for

3    difference of opinion as to whether a federal court may anchor its compensatory damages

4    remittitur, and thus its finding as to the *maximum* sustainable amount, to the dollar amounts

5    awarded by juries in other jurisdictions at other times, based on what those other juries found—

6    on the evidence presented, evaluated in light of those other jurors' different life experiences and

7    sensibilities—would be *sufficient* to compensate those other plaintiffs for their emotional

8    distress. Certification would enable the Ninth Circuit to address this unresolved issue, as well as

9    to determine whether the Court gave due regard to the substantial inflation that would cause

10   Plaintiff Diaz's remitted award to be far less valuable than those other awards issued 10 or 25

11   years ago. *See supra* at 5 n.4.

12           The Court's compensatory damages remittitur analysis repeatedly compared the jury's

13   award here to jury verdicts in other cases. *See* Post-Trial Motion at 29 (award of future

14   noneconomic damages was "significantly larger than the mine-run of *total* damages awards"); *id.*

15   at 30 (Diaz's period of exposure was "not nearly so long as some of the emotional harm

16   discussed in cases below for which the awards were smaller"); *id.* ("Diaz's emotional harm did

17   not come with physical illness or injury *as in many cases*") (emphasis added). Indeed, most of

18   the Court's compensatory remittitur analysis rests upon direct comparisons to awards in other

19   cases. *See id.* at 30-36. The Court ultimately concluded, based on *Turley*, that "the jury's $6.9

20   million award here is an outlier—it is more than five times what the Second Circuit upheld in

21   *Turley*, which had more extreme harm over a longer period." *Id.* at 31. The Court similarly

22   determined that *Passantino* "shows that substantial damages are warranted for this type of

23   emotional harm resulting from harassment-filled workplaces, and it shows that $6.9 million is

24   quite high." *Id.* at 32. After considering these cases and others, the Court concluded that "[t]he

25   closest cases, especially *Turley* and *Passantino*, illustrate that awards of roughly $1.5 million (in

26   today's dollars) are supported by analogous (though not identical) evidence. Accordingly, I

27   conclude that the maximum amount supportable by proof to make Diaz whole for his emotional

28   harm is $1.5 million." This analysis strongly suggests that the Court calculated the "maximum

amount supportable by proof" by reference principally to *Turley* and *Passantino*—the cases the Court found most comparable.

The Ninth Circuit could conclude, if it accepted certification, that Plaintiff Diaz's rights under the Seventh Amendment entitled him to a jury verdict based on the facts and evidence that a Northern California jury heard in 2021, as viewed through the lens of those jurors' perspectives and life experience, rather than a jury verdict capped by what jurors in Tacoma or New York found adequate based on different facts and different evidence. The Ninth Circuit could also conclude that it was error to give such substantial weight to those other verdicts because the questions posed to the juries and to the appellate courts in *Turley* and *Passantino* were materially different than the question presented to this Court in considering remittitur. In neither *Turley* nor *Passantino* were the juries or the appellate courts asked to determine the "maximum amount supportable" by the evidence in those cases, even though this Court cited those verdicts as a basis for concluding that $1.5 million was the highest amount supportable by the evidence here. Nowhere in *Passantino*, for example—a case decided 22 years ago based on a jury verdict in 1997 in Tacoma, Washington—did the Ninth Circuit suggest that a larger award of emotional distress damages would have been excessive. On the facts of *Passantino*, it is certainly plausible that a higher verdict—perhaps $1.25 million in 1997 dollars, or $1.5 million—would also have been sustained on appeal, given the great deference to which a jury verdict is entitled. *See Passantino*, 212 F.3d at 513. In any event, reasonable judicial minds could certainly differ about whether the amount of damages awarded by one jury can be used to limit the fact-finding prerogatives of all future juries by effectively setting a "maximum amount supportable" cap on such damages—with any larger, later awards labeled "outliers" and capped by remittitur to the first jury's number.

The Seventh Amendment entitles plaintiffs to more than a jury of *someone else's* peers. Just as it would be error to instruct a jury that the maximum amount of damages they may award is limited by what a different jury awarded in some other plaintiff's case, so too is there at least a reasonable dispute about whether it was error for the trial court to have relied on the jury verdicts in *Turley* and *Passantino* to determine the "maximum amount supportable."

Plaintiff is not aware of any case in which the Ninth Circuit has determined whether, or to what extent, a district court may consider jury awards in other cases in conducting its independent assessment of what the maximum permissible award would be on the evidence presented, for purposes of a compensatory damages remittitur. At a minimum, though, reasonable judicial minds could conclude that serious legal and constitutional questions arise when the verdict of a geographically and temporally distant jury is given preeminent weight in a district court's determination of the maximum amount of damages a properly instructed jury of a plaintiff's own peers may permissibly award on the evidence presented. As several courts reviewing the sufficiency of the evidence to support a jury verdict have cautioned, "[w]hile analogies to, and comparisons with, other cases may be helpful on many types of issues, their usefulness on questions of damages is extremely limited." *Cervantes v. Cty. of Los Angeles*, 2015 WL 5163031, at *2 (C.D. Cal. Sept. 3, 2015) (quoting *United States v. English*, 521 F.2d 63, 72 (9th Cir. 1975)); *Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1241 (N.D. Cal. 2008), *aff'd*, 379 F. App'x 647 (9th Cir. 2010); *see also Arnold v. Pfizer, Inc.*, 2015 WL 268967, at *6 (D. Or. Jan. 21, 2015) (finding "no controlling case law establishing a monetary cap on the garden-variety emotional distress damages a successful plaintiff may recover").[6]

Significantly, many courts in the Ninth Circuit have evaluated remittiturs of emotional distress damages without making any reference to awards in other cases. While the scope of the appellate inquiry in those cases is not determinative of the issue presented here, those appellate decisions certainly confirm that district courts are not *required* to reduce a jury's award of emotional distress damages based on what other juries may have awarded other plaintiffs in other

---

[6] As the Court noted in its Post-Trial Order, some Ninth Circuit cases have suggested, although in the context of bench trials rather than jury trials, that "courts are required to maintain some degree of uniformity in cases involving similar losses." *Shaw v. United States*, 741 F.2d 1202, 1209 (9th Cir. 1984) (citation omitted). But even in that very different and non-analogous context, *see Felder v. United States*, 543 F.2d 657, 664 (9th Cir. 1976), the required uniformity would be among verdicts in comparable cases in the same jurisdiction, which would eliminate the Buffalo jury's verdict in *Turley* as a controlling comparison here. *See Trevino v. United States*, 804 F.2d 1512, 1515 (9th Cir. 1986); *Spitzke v. United States*, 914 F.2d 263 (9th Cir. 1990) (Table) ("[T]he comparison cases must be those that show the amounts of damages awarded in similar cases in that state."). The compensatory damages in *Passantino*, meanwhile, were based on retaliation, not race discrimination. *See Passantino*, 212 F.3d at 504.

1   cases. *See, e.g.*, *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999); *Brady v. Gebbie*, 859

2   F.2d 1543, 1558 (9th Cir. 1988); *Mueller v. Dep't of Pub. Safety*, 2022 WL 980696, at *8 (D.

3   Haw. Mar. 31, 2022); *Newton v. Equilon Enterprises*, LLC, 411 F. Supp. 3d 856, 877–78 (N.D.

4   Cal. 2019); *Thomas v. Cannon*, 289 F. Supp. 3d 1182, 1206 (W.D. Wash. 2018) (the jury is

5   "instructed to access its collective emotional register" when evaluating emotional distress); *Drew*

6   *v. Equifax Info. Servs., LLC*, 2010 WL 5022466, at *9 (N.D. Cal. Dec. 3, 2010); *see also Steffens*

7   *v. Regus Grp., PLC*, 2013 WL 4499112, at *22 (S.D. Cal. Aug. 19, 2013) (rejecting comparison

8   to one case and denying remittitur without considering any other comparator cases).

9       Moreover, as Plaintiff has explained, the law is clear that a reviewing court "must uphold

10   the jury's [damages] finding unless the amount is grossly excessive or monstrous, clearly not

11   supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at*

12   *Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996); Pl.'s Post-Trial Br. at 7.

13   Indeed, in its Order, the Court recognized that courts must "afford great deference to a jury's

14   award of damages." Post-Trial Order at 14 (quoting *Williams v. Gaye*, 895 F.3d 1106, 1128 (9th

15   Cir. 2018)). The Court also recognized that special deference is appropriate with respect to

16   emotional distress damages, which are particularly difficult to convert to dollar figures and are

17   "peculiarly within a jury's ken." Post-Trial Order at 27 (quoting *Holzhauer v. Golden Gate*

18   *Bridge Highway & Transp. Dist.*, 2017 WL 3382316, at *2 (N.D. Cal. Aug. 7, 2017), *aff'd*, 743

19   F. App'x 843 (9th Cir. 2018)); *Velez v. Roche*, 335 F. Supp. 2d 1022, 1038 (N.D. Cal. 2004);

20   Pl.'s Post-Trial Br. at 15. In a case like this, where there is no contention that the jury was

21   improperly instructed, that it disregarded the instructions, that it considered any inappropriate

22   evidence, or that it otherwise acted improperly in separately calculating past and future economic

23   distress damages, a court should be especially wary of over-relying on the verdicts of other juries

24   in determining the maximum amount of damages sustainable by the evidence.

25       California law, for its part, prohibits courts from giving decisive weight to verdicts in

26   "comparable" cases in determining an appropriate remittitur. While the trial judge considering a

27   new trial "sits ... as an independent trier of fact," *Lane v. Hughes Aircraft Co.*, 22 Cal. 4th 405,

28   412 (2000), and "[w]hile a reviewing court, in passing upon the question … may consider

amounts awarded in similar cases, in the final analysis the question in each case must be determined from its own peculiar facts and circumstances and it cannot be held as a matter of law that a verdict is excessive simply because the amount may be larger than is ordinarily allowed in such cases." *Daggett v. Atchison, T. & S. F. Ry. Co.*, 48 Cal. 2d 655, 666 (1957) (citations omitted); *see also Bertero v. Nat'l Gen. Corp.,* 13 Cal. 3d 43, 65 n.12 (1974) ("For a reviewing court to upset a jury's factual determination on the basis of what other juries awarded to other plaintiffs for other injuries in other cases based upon different evidence would constitute a serious invasion into the realm of factfinding."). Although a trial judge considering remittitur has greater leeway to reduce a jury verdict than an appellate court applying a sufficiency of the evidence standard, the danger of relying on so-called comparators is the same. The reason that danger exists is not only because every case is different, but also because every plaintiff has the right to have damages determined by a jury of *that* plaintiff's peers, based on the evidence presented in *that* case, with due deference provided to *that* jury's damages award.

Using comparators as the basis for determining the maximum permissible amount of damages that could be awarded in a given case is fraught with other risks as well. One problem, of course, is that "injuries are seldom identical and the amount of pain and suffering involved in similar physical injuries varies widely." *Seffert v. Los Angeles Transit Line*s, 56 Cal. 2d 498, 508 (1961). Further, "there is no fixed or absolute standard by which to compute the monetary value of emotional distress." *Pool v. City of Oakland*, 42 Cal. 3d 1051, 1068 n.17 (1986). There is also no logical reason why the amount of emotional distress damages awarded by a jury sitting in another jurisdiction, at a different time in history, should dictate the maximum that a Northern District of California jury would be allowed to award in the fall of 2021, in light of *these* jurors' personal perspectives on the evidence and their assessment of the impacts on Plaintiff Diaz, past and future, of Tesla's egregious and reprehensible racial harassment and other wrongful conduct.[7]

---

[7] With respect to the jury's perception of the depth and nature of Diaz's emotional distress, it is notable that Diaz's case was tried after police killings of unarmed black men sparked protests

If there were a second damages trial in this case, the Court could presumably consider the first jury's compensatory damages award in evaluating whether the second jury's award is unsupported by the evidence. After all, both verdicts would likely be based on similar evidence as assessed by somewhat similar juries. But that is not what happened, and there is certainly room for disagreement about whether the amount of the court-ordered remittitur could permissibly rest in material part upon the extra-record fact—i.e., a fact that was not before the jury in this case and that could not permissibly have been considered by the jury in this case—of the amount of emotional distress damages awarded many years earlier by juries in Tacoma and Buffalo.

In its order, the Court acknowledged there could be a "range of reasonable opinions about the size of damages." Post-Trial Order at 34. The law in this circuit is not clear, however, about the extent to which the upper bound of that range may be limited by the Court's consideration of other jury's awards in other cases. After all, California courts have held that "[t]he fact that an award may set a precedent by its size does not in and of itself render it suspect." *Rodriguez v. McDonnell Douglas Corp.*, 87 Cal. App. 3d 626, 654–55 (1978). Even when an award "greatly exceeds many of the noneconomic damages awards recovered by [other similarly situated] plaintiffs, … [t]his is hardly surprising, … given the wide range within which reasonable people may differ regarding an appropriate monetary measure of compensation for [noneconomic] injuries." *Burchell v. Fac. Physicians & Surgeons of Loma Linda Univ. Sch. of Med.*, 54 Cal. App. 5th 515, 528–29 (2020) (cleaned up).

The Court's Post-Trial Order indicates that the jury verdicts in *Turley* and *Passantino* were a significant factor, if not the principal factor, supporting the extreme reduction in compensatory damages from $6.9 million ($4.5 in past damages plus $2.4 in future damages) to a total lump-sum award $1.5 million. If the Court's many references to the *Turley* and *Passantino* verdicts in its Post-Trial Order were eliminated, there would be little left to explain how the Court specifically reached the reduced aggregate damages amount of $1.5 million. The

and a national conversation about the pernicious effects of antiblack racism in 2014, reignited in 2020 when police officers murdered George Floyd, an unarmed black man.

-12-

Court's Post-Trial Order also fails to explain how much of the remitted amount was allocable to past versus future emotional distress, even though the jury had been instructed to, and did, award separate amounts for each category—further indication of the impact of the verdicts in *Turley* and *Passantino* on the remittitur because both involved similarly undifferentiated lump sum awards of compensatory damages. *See Turley*, 774 F.3d at 162; *Passantino*, 212 F.3d at 504. Again, there is at least a substantial ground for difference of opinion concerning the extent to which those other jury verdicts can provide the basis for reducing the *Diaz* jury's highly discretionary emotional distress damages verdict by 80% and for disregarding its separate allocation of damages to past and to future emotional distress.

In sum, the Court's legal approach to remittitur, and its significant reliance on other jury verdicts, presents a controlling question of law providing substantial grounds for difference of opinion—and is certainly a question whose resolution may "materially affect the outcome of the litigation," for the reasons stated below. *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

### b. An immediate interlocutory appeal would materially advance the ultimate termination of the litigation.

The second prong of certification analysis under Section 1292(b) is whether interlocutory appellate review "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In this case, prompt review of the Court's Post-Trial Order would unquestionably provide the most efficient path to ultimate resolution of this dispute.

As explained above, in the absence of certification by this Court and the Ninth Circuit, the only way Diaz can appeal the Court's compensatory damages remittitur (other than by writ of mandamus) is to demand a new trial on damages, conduct such a trial, litigate a second round of post-trial motions, and *then* appeal upon entry of a final judgment (after running the risk of another remittitur). *See Allied Chem. Corp.*, 449 U.S. at 34 (per curiam) ("An order granting a new trial is interlocutory in nature and therefore not immediately appealable."); *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 838 (9th Cir. 1963); *Associated Diesel Serv. & Equip. Co.*, 46 F.3d 1138 at *2 (9th Cir. 1995) (Table) ("[Q]uestions involving whether a new trial should have been ordered are appealable after the second trial."). If Diaz accepts the remittitur,

he will have no right to appeal. *See Donovan*, 429 U.S. at 650 (per curiam) ("[A] plaintiff in federal court, whether prosecuting a state or federal cause of action, may not appeal from a remittitur order he has accepted."); *Associated Diesel Serv.*, 46 F.3d 1138 at *2. That is so even if Tesla chooses to appeal from a judgment incorporating the Court's compensatory damages remittitur. *999 v. C.I.T. Corp.*, 776 F.2d 866, 873 (9th Cir. 1985) ("[T]he rule in this circuit long has been that the plaintiff cannot contest the validity of a remittitur to which he has consented, even on a cross-appeal."); *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 668 n.4 (9th Cir. 1990).

In other words, if Diaz accepts the remittitur, Tesla will be permitted a one-way appeal in which the company could challenge the remitted amounts of $1.5 million in compensatory damages and $13.5 million in punitive damages as still too large, but Diaz would not be able to cross-appeal to argue that either or both of those amounts were too low.

At this juncture, the most efficient path forward is interlocutory review. The Ninth Circuit has repeatedly granted interlocutory review of district court orders granting new trials in the past. *See, e.g.*, *Borck v. City of Los Angeles*, 303 F. App'x 437, 438 (9th Cir. 2008) (interlocutory review of order granting new trial on damages); *Cortez v. Chipotle Mexican Grill, Inc.*, 2021 WL 3214765, at *1 (9th Cir. July 29, 2021); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014 (9th Cir. 1981). Other circuits have done so as well. *See, e.g.*, *Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 591 (4th Cir. 1996) (interlocutory review of remittitur order); *Talbert v. Kelly*, 799 F.2d 62, 65 (3d Cir. 1986) (review of order granting new trial on damages).

Interlocutory review would enable the Ninth Circuit to address the extent to which cases like *Turley* and *Passantino* can provide a basis for reducing the size of Diaz's compensatory damages recovery in this case. At the same time, Tesla could cross-appeal other aspects of this Court's post-trial ruling regarding liability and damages if it chose to do so. *See Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 205 (1996) ("It is the order that is appealable, and not the controlling question identified by the district court."); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) ("Our scope of review is broader than the specific issues the district court has designated for appellate review."); *Steering Comm. v. United States*, 6 F.3d 572, 575–76 (9th

Cir. 1993) ("[W]e may address those issues *material* to the order from which appeal has been taken."); *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 604 (9th Cir. 2008) (deciding interlocutory cross-appeals following a mistrial). If any aspect of the Post-Trial Order were reversed, that reversal would almost certainly advance the ultimate termination of the litigation because the Ninth Circuit would either have agreed with Tesla that it has no liability, or it would have rejected (with controlling, law-of-the-case analysis) this Court's determination of the proper measure of damages. Similarly, if the Court's Post-Trial Order were affirmed, there would be no remaining dispute over Tesla's liability and the sole remaining question for Diaz would be whether to accept an amount of compensatory and punitive damages that the Ninth Circuit has found proper, or to take his chances on a new trial with the accompanying risk that the Court would again remit any jury verdict in excess of $1.5 million compensatory/$13.5 million punitive (a result that would be even more likely if the Ninth Circuit affirmed the Post-Trial Order). *Cf. Atlas Food Sys. & Servs., Inc.*, 99 F.3d at 591 (reviewing remittitur order on interlocutory appeal to prevent need for a third trial); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (interlocutory review avoided "the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter").

In sum, interlocutory review of the Court's Post-Trial Order will provide the most efficient path forward for resolving the parties' dispute.

### 4. Extension of the deadline for accepting or rejecting the remittitur

Plaintiff's deadline to accept or reject the Court's remittitur is May 13, 2022, 30 days after issuance of the April 13, 2022 Post-Trial Order. To prevent the present motion for Section 1292(b) certification from becoming moot, Plaintiff is filing a separate motion that asks the Court to extend that 30-day deadline so it would not expire until at least seven (7) days after a final certification decision is made, i.e., until the later of: (1) this Court's denial of Plaintiff's motion for Section 1292(b) certification; (2) this Court's grant of certification and the Ninth Circuit's denial of certification; or (3) this Court's and the Ninth Circuit's grant of certification and a Ninth Circuit ruling affirming the Post-Trial Order or reversing it only in part.

5.   **Conclusion**

For the foregoing reasons, the Court should certify its post-trial ruling for interlocutory review by the Court of Appeals under 28 U.S.C. §1292(b).

Respectfully submitted,

California Civil Rights Law Group

Alexander Morrison + Fehr LLP

Altshuler Berzon LLP

Dated:   May 4, 2022                              /s/ Michael Rubin

Lawrence A. Organ
Cimone A. Nunley
J. Bernard Alexander III
Michael Rubin
Jonathan Rosenthal
Attorneys for Plaintiff
   OWEN DIAZ

PLAINTIFF'S MOTION TO CERTIFY POST-TRIAL ORDER FOR INTERLOCUTORY REVIEW,
Case No. 3:17-cv-06748-WHO