QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kathleen M. Sullivan (CA Bar No. 242261)
  kathleensullivan@quinnemanuel.com
  Daniel C. Posner (CA Bar No. 232009)
  danposner@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendant,
*TESLA, INC.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| OWEN DIAZ,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.,<br><br>Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**DEFENDANT TESLA INC.'S OPPOSITION TO PLAINTIFF'S MOTION PURSUANT TO 28 U.S.C. § 1292(b) TO CERTIFY POST-TRIAL ORDER FOR INTERLOCUTORY REVIEW**<br><br>Date: June 8, 2022<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    DIAZ SEEKS AN IMPROPER END-RUN AROUND SETTLED RULES FOR APPEAL AFTER RULE 59 NEW TRIAL/ REMITTITUR ORDERS ................................2

II.    DIAZ FAILS TO SATISFY ANY OF THE PREREQUISITES FOR CERTIFICATION UNDER § 1292(b) ...........................................................................4

    A.    Diaz Fails To Identify A Controlling Question Of Law ...........................................4

    B.    Diaz Fails To Show Substantial Grounds For Difference Of Opinion .....................7

    C.    Diaz Fails To Show An Immediate Appeal Will Advance The Ultimate Termination Of The Litigation .................................................................................11

CONCLUSION ..............................................................................................................................12

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Arnold v. Pfizer, Inc.*,
  2015 WL 268967 (D. Or. Jan. 21, 2015) .................................................................................. 9

*Associated Diesel Serv. & Equip. Co. v. Terex Corp.*,
  46 F.3d 1138 (9th Cir. 1995) ................................................................................................. 3

*Atlas Food Systems and Services, Inc. v. Crane National Vendors, Inc.*,
  99 F.3d 587 (4th Cir. 1996) ................................................................................................... 3

*B. Braun Med., Inc. v. Rogers*,
  163 F. App'x 500 (9th Cir. 2006) ........................................................................................ 11

*Bachrach v. Covenant Transp. Inc.*,
  636 F. App'x 404 (9th Cir. 2016) .......................................................................................... 8

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981) ............................................................................................... 4

*Cent. Office Tel., Inc. v. Am. Tel. & Tel. Co.*,
  108 F.3d 981 (9th Cir. 1997) ................................................................................................. 2

*Cervantes v. Cty. of Los Angeles*,
  2015 WL 5163031 (C.D. Cal. Sept. 3, 2015) ........................................................................ 9

*Clark v. City of Tucson*,
  2020 WL 914524 (D. Ariz. Feb. 26, 2020) ........................................................................... 9

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ............................................................................................................... 4

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010) ........................................................................................... 7, 10

*Daggett v. Atchison, T. & S. F. Ry. Co.*,
  48 Cal. 2d 655 (1957) ............................................................................................................ 8

*Denholm v. Houghton Mifflin Co.*,
  912 F.2d 357 (9th Cir. 1990) ................................................................................................. 3

*DePinto v. Provident Sec. Life Ins. Co.*,
  323 F.2d 826 (9th Cir. 1963) ................................................................................................. 3

*DiSorbo v. Hoy*,
  343 F.3d 172 (2d Cir. 2003) ................................................................................................ 10

*Donovan v. Penn Shipping Co.*,
  429 U.S. 648 (1977) ............................................................................................................... 3

*Earl v. Bouchard Transp. Co.*,
  917 F.2d 1320 (2d Cir. 1990) ................................................................................................ 3

*Eaton v. Nat'l Steel Prods. Co.*,
  624 F.2d 863 (9th Cir. 1980) ................................................................................................. 2

*United States v. English*,
    521 F.2d 63 (9th Cir. 1975) .................................................................................................. 9

*Farfaras v. Citizens Bank & Tr. of Chicago*,
    433 F.3d 558 (7th Cir. 2006) ................................................................................................. 8

*Fenner v. Dependable Trucking Co.*,
    716 F.2d 598 (9th Cir. 1983) ................................................................................................. 2

*Harper v. City of Los Angeles*,
    533 F.3d 1010 (9th Cir. 2008) ............................................................................................... 5

*Heaton v. Soc. Fin., Inc.*,
    2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ...................................................................... 4, 5

*Hetzel v. Prince William County*,
    523 U.S. 208 (1998) ............................................................................................................ 11

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
    22 F.4th 1125 (9th Cir. 2022) ........................................................................................... 4, 11

*Johnson v. Albertsons, LLC*,
    2020 WL 3604107 (W.D. Wash. July 2, 2020) .................................................................... 9

*Johnson v. Serenity Transp., Inc.*,
    2017 WL 3168491 (N.D. Cal. July 26, 2017) ....................................................................... 4

*Kingston v. Int'l Business Machines Corp.*,
    2021 WL 2662216 (W.D. Wash. June 29, 2021) .................................................................. 5

*Matsunoki Grp., Inc. v. Timberwork Or., Inc.*,
    2011 WL 940218 (N.D. Cal. Feb. 18, 2011) ......................................................................... 4

*Passantino v. Johnson & Johnson Consumer Prod., Inc.*,
    212 F.3d 493 (9th Cir. 2000) ........................................................................... 4, 5, 6, 7, 10, 11

*Paul v. Asbury Auto. Grp., LLC*,
    2009 WL 188592 (D. Or. Jan. 23, 2009) .............................................................................. 9

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) ............................................................................................... 12

*Roth v. King*,
    449 F.3d 1272 (D.C. Cir. 2006) .......................................................................................... 12

*Shaw v. United States*,
    741 F.2d 1202 (9th Cir. 1984) ............................................................................................... 8

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) ................................................................................................. 3

*Smith v. City of Oakland*,
    538 F. Supp. 2d 1217 (N.D. Cal. 2008) ............................................................................. 8, 9

*Smith v. LexisNexis Screening Sols., Inc.*,
    837 F.3d 604 (6th Cir. 2016) ............................................................................................... 10

*Sooroojballie v. Port Auth. of New York & New Jersey*,
    816 F. App'x 536 (2d Cir. 2020) ......................................................................................... 10

*Suero-Algarin v. CMT Hosp. Hima San Pablo Caguas*,
    957 F.3d 30 (1st Cir. 2020) ............................................................................................. 10
*Thompson v. Memorial Hosp. of Carbondale*,
    625 F.3d 394 (7th Cir. 2010) ............................................................................................. 9
*Thornton v. Kaplan*,
    958 F. Supp. 502 (D. Colo. 1996) ..................................................................................... 9
*Trevino v. United States*,
    804 F.2d 1512 (9th Cir. 1986) ........................................................................................... 6
*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014) ........................................................................ 4, 5, 6, 7, 10, 11
*Velez v. Roche*,
    335 F. Supp. 2d 1022 (N.D. Cal. 2004) ............................................................................ 9
*Wulf v. City of Wichita*,
    883 F.2d 842 (10th Cir. 1989) ......................................................................................... 10

**Statutory Authorities**

28 U.S.C. § 1292(b) ............................................................................... 1, 3, 4, 6, 7, 11, 12

**Rules and Regulations**

Fed. R. App. P. 5 ........................................................................................................... 11
Fed. R. Civ. P. 59 ..................................................................................................... 1, 2, 7

# PRELIMINARY STATEMENT

The Court should deny Plaintiff's request to ignore established remittitur procedures via an interlocutory appeal that is unjustified under 28 U.S.C. § 1292(b). The Court's order (ECF 328 (the "Order")) granted a new damages trial to Defendant Tesla unless Plaintiff Diaz accepts a remittitur of the judgment to $15 million. In so ruling, the Court exercised its well-settled discretion under Federal Rule of Civil Procedure 59. Diaz's attempt to circumvent that ruling (ECF 333) disregards precedents that a plaintiff who accepts a remittitur has no right to appeal the damages award and a plaintiff who rejects a remittitur must await final judgment after new trial before any appeal. Tesla is aware of no decision allowing interlocutory appeal from an order like the Court's here. The Court should reject Diaz's unprecedented motion for that reason alone.

Moreover, Diaz fails to meet any of the requirements for certification under section 1292(b). *First*, Diaz fails to identify a "controlling question of law." The Court acted well within its broad discretion by considering damages awards in comparable cases as part of its Rule 59 analysis, and Diaz's disagreement with Court's exercise of that discretion does not and cannot create a legal issue suitable for interlocutory review. Indeed, Diaz himself invited the Court to compare the jury's verdict to comparable verdicts—albeit verdicts he believed more favorable to him. Whether and to what extent the Court properly applied its discretion in reaching its decision here is a fact-intensive question, not a controlling question of law.

*Second*, even if the issue here were legal and not factual, Diaz fails to identify any "substantial grounds for difference of opinion" as to whether the Court acted properly. Diaz fails to cite a single case—from this Circuit or any other—that has deemed it improper to compare judgments in comparable cases as part of a Rule 59 excessive-damages analysis. To the contrary, courts in this Circuit and others regularly look to comparable cases in making post-trial determinations as to whether a damages verdict is excessive.

*Third*, Diaz fails to show that certification would "materially advance the ultimate termination of the litigation." To the contrary, certification would set this litigation back for months or years. The Court ordered Diaz to elect new trial or remittitur by this week, but he now seeks to postpone this election until after this Court certifies, the Ninth Circuit decides whether to allow

review, and the Ninth Circuit then resolves his appeal from the Court's remittitur order on the merits. If that challenge were to proceed and fail, it would drag this case out longer. If that challenge were to succeed, this Court would then have to reconsider its order, issue a new order, offer a new election, and Diaz might then still elect a new trial, after which this Court might then issue another new trial/remittitur order, and Diaz might well then file another request for interlocutory appeal, and so on *ad infinitum*. The only change accomplished by permitting an interlocutory appeal, instead of appeal from a final judgment, is to add another long step in the cycle. Such an outcome would needlessly burden the Court's docket and the parties' resources. Diaz provides no reason why the Court should precipitate such lengthy delays or upend the well-established process that requires Diaz to elect now between remittitur and new trial.

The Court should deny Diaz's motion.

## ARGUMENT

### I.   DIAZ SEEKS AN IMPROPER END-RUN AROUND SETTLED RULES FOR APPEAL AFTER RULE 59 NEW TRIAL/ REMITTITUR ORDERS

It is well-established that a district court has Rule 59 discretion to find a jury damages award excessive and thus order new trial unless the plaintiff accepts a damages remittitur. *See, e.g.*, *Cent. Office Tel., Inc. v. Am. Tel. & Tel. Co.*, 108 F.3d 981, 993 (9th Cir. 1997) ("Upon motion for a new trial, a trial court, finding a verdict excessive may either order a new trial or deny the motion conditional on the party accepting a remittitur."); *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983) ("When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified.").

It is equally well-established that such a new trial/remittitur order is interlocutory and not appealable. *See Eaton v. Nat'l Steel Prods. Co.*, 624 F.2d 863, 864 (9th Cir. 1980) ("An order granting a new trial, which may or may not be accompanied by a provision for remittitur, is an

interlocutory order not appealable as a final judgment."). Thus, a plaintiff faced with such an order has two choices. He may accept the remittitur and forgo an appeal of the damages award. *Denholm v. Houghton Mifflin Co.*, 912 F.2d 357, 359 (9th Cir. 1990) ("[A] plaintiff in federal court . . . may not appeal from a remittitur order he has accepted." (quoting *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 650 (1977))). The plaintiff may alternatively reject the remittitur and await final judgment after a new trial before taking any appeal. *Associated Diesel Serv. & Equip. Co. v. Terex Corp.*, 46 F.3d 1138, at *2 (9th Cir. 1995) (unpublished) ("Thus, questions involving whether a new trial should have been ordered are appealable after the second trial." (citing *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 838-39 (9th Cir. 1963))); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 818-19 (9th Cir. 2001) (considering appeal from a new trial/remittitur order entered after the first trial only after plaintiffs rejected that remittitur, the court held a second trial on damages, and plaintiffs appealed from final judgment after the second trial); *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990) ("A plaintiff can appeal a reduced verdict only after he or she has rejected the remittitur and after a second trial is complete.").

Diaz provides no reason why requiring him to comply with these settled procedures would be unfair or inequitable, and there is no reason. Nor does Diaz cite any decisions, from any jurisdiction, granting a section 1292(b) interlocutory appeal from a new trial/remittitur order. None of the Ninth Circuit cases Diaz cites (ECF 333 at 14) granted interlocutory appeal of a new trial/remittitur order at all, or even relate to any issues relevant here. And Diaz misplaces reliance (*id*. at 14-15) on *Atlas Food Systems and Services, Inc. v. Crane National Vendors, Inc.*, 99 F.3d 587 (4th Cir. 1996), which is inapposite. There, the district court certified an appeal only after the plaintiff rejected remittitur after the first trial, the district court conducted a ***second*** damages trial, the district court then granted new trial or remittitur again, and the district court only then allowed "interlocutory" appeal to forestall yet a ***third*** trial given plaintiff's willingness to accept the second remittitur for purposes of appeal. *See id*. at 591. And after all that, the Circuit affirmed the district court's remitted damages judgment anyway. *Id*. at 593-96. *Atlas Food* thus provides no support for Diaz's attempt to avoid the well-settled process for choosing between a damages remittitur or new trial after a ***first*** trial.

For these reasons alone, the Court should deny Diaz's effort to circumvent established appellate procedures for cases like this one.

## II. DIAZ FAILS TO SATISFY ANY OF THE PREREQUISITES FOR CERTIFICATION UNDER § 1292(b)

The Court should also deny Diaz's motion because it fails to demonstrate, as required under section 1292(b), (1) "a controlling question of law," (2) on which there are "substantial grounds for difference of opinion," whose (3) resolution would "materially advance the ultimate termination of the litigation.'" *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

### A. Diaz Fails To Identify A Controlling Question Of Law

The question Diaz seeks to certify (ECF 333 at 6) does not present a "controlling question of law." Such a question "must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI Oregon*, 22 F.4th at 1130 (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)). "A 'question of law' is interpreted as being a pure legal question, such that the court of appeals could decide the question 'quickly and cleanly without having to study the record.'" *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, at *3 (N.D. Cal. Jan. 20, 2016) (quoting *Matsunoki Grp., Inc. v. Timberwork Or., Inc.*, 2011 WL 940218, at *2 (N.D. Cal. Feb. 18, 2011)); *see also, e.g.*, *Johnson v. Serenity Transp., Inc.*, 2017 WL 3168491, at *1 (N.D. Cal. July 26, 2017) ("[a] mixed question of law and fact or the application of law to a particular set of facts by itself is not appropriate for permissive interlocutory review" (quotation marks and citation omitted)).

Diaz's purported appellate question (ECF 333 at 6) could not be further from that standard. In the one sentence Diaz devotes to attempting to show he raises a "controlling question of law" (*id.*), he argues that the Court "repeatedly stated" that "one of the reasons" it remitted the jury's compensatory damages award to $1.5 million "was because that amount was in line with" the judgments in *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014), and *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493 (9th Cir. 2000). But the Court nowhere stated that it was legally *required* to align the damages judgment here with those benchmarks, and

the Court repeatedly described those cases as merely one factor in its wholistic assessment of the entire damages record it oversaw in conducting the jury trial (*see* ECF 328 at 29-30). And even if the Court did consider those cases to be important benchmarks, that would only show that Diaz challenges the ***application*** of that comparison to the facts of this case, and not any legal rule governing the Court's authority to engage in such comparative damages analysis.

Indeed, Diaz is foreclosed from arguing that the Court legally erred in considering comparable verdicts because Diaz himself urged this Court to do so. By Diaz's account (ECF 321 at 14 n.2), the Court should have looked to *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008) (allowing $5 million in compensatory damages), or *Kingston v. Int'l Business Machines Corp.*, 2021 WL 2662216 at *5 (W.D. Wash. June 29, 2021) (allowing $6 million in emotional distress damages), and allowed Diaz to retain a similar amount of compensatory damages. Those cases are inapposite for many reasons (*see* ECF 322 at 8-9), but Diaz's own references to those cases suggest that Diaz himself invited what he now claims was error.

Moreover, the comparability of the *Turley* and *Passantino* damages awards to the damages award in this case is the very opposite of an issue that could be decided "quickly and cleanly without having to study the record," *Heaton*, 2016 WL 232433 at *3. The Court properly grounded its discussion of those cases in a detailed comparison between their facts and the facts of this case. For example, the Court noted (ECF 328 at 30) that *Turley* "is not perfectly identical to this case but, in my view, has more to teach about these facts than any other case I have found or the parties have raised." (*See also id.* at 31 ("*Turley* is not on all fours with this case either in the underlying facts or in the emotional harm," but "is highly relevant"); *id.* (noting specific similarities and differences between the facts of *Turley* and this case); *id.* at 32 ("*Passantino* is less analogous to these facts than *Turley* in ways that cut in both directions").) Thus, far from presenting a "controlling question of law" susceptible to interlocutory appellate review, Diaz raises an appellate question that is deeply factual and record-intensive.

Diaz's own arguments concerning *Turley* and *Passantino* underscore that he is raising factual disagreements and not a controlling question of law. For example, he argues (ECF 333 at 7-8) that the Court supposedly failed to account for differences between those cases and this one based

on the rate of inflation or the different jurisdictions in which the relevant events occurred. But there is no way for a reviewing court to evaluate Diaz's arguments without comparing the facts of this case with those in *Turley* and *Passantino*, just as this Court did. This fact-based inquiry does not present the type of "controlling question of law" that section 1292(b) contemplates.[1]

Moreover, to attempt to manufacture a "controlling" question, Diaz's varying formulations overstate the extent to which the Court relied on *Turley* and *Passantino*. Diaz suggests that the Court "anchor[ed] its compensatory damages remittitur" on comparable verdicts (ECF 333 at 8); made "reference principally to *Turley* and *Passantino*" (*id*.); or offered "little left to explain" its reduction of damages other than the comparison to *Turley* and *Passantino* (*id*. at 12). But Diaz glosses over the fact that, before addressing *Turley* and *Passantino* (and other authorities), the Court devoted nine pages of the Order to "recounting" the "evidence at trial" (ECF 328 at 3-11), and discussed in detail why a "careful evaluation of the facts of this case, the legal principles underlying judicial review of emotional damages, ***and*** comparable cases leads me to conclude the $1.5 million is the maximum amount supported by the evidence" (*id*. at 27 (emphasis added)). The Court specifically found that Diaz's evidence of future emotional distress was not reasonably sufficient to establish $2.4 million in damages considering that his "emotional harm was greatly reduced once he stopped working at Tesla." (*Id*. at 29.) Similarly, the Court determined that Diaz's past emotional distress harm was "not supported by substantial evidence" only after enumerating the specific facts in the trial record that supported that conclusion—including that Diaz worked at Tesla for only nine months and that "Diaz's emotional harm did not come with physical illness or injury." (*Id*. at 29-30.)

Indeed, the Court actually considered comparable verdicts to a far lesser extent than Tesla asked it to do. In support of its motion, Tesla had assembled an exhaustive list of comparable cases whose average remitted emotional distress compensatory damages award was $189,000

---

[1] Diaz's argument that *Turley* and *Passantino* are distinguishable because they arose in different jurisdictions is not supported by the only published authority Diaz cites, *Trevino v. United States*, 804 F.2d 1512 (9th Cir. 1986), and in any event is the type of fact-based argument that is not appropriate for certification under section 1292(b).

(considerably less than the $1.5 million remittitur on which this Court ultimately settled). (*See* ECF 317 at 12-15, 28-29.) Rather than give "decisive" weight to such cases, the Court largely declined to consider the conservative $300,000 compensatory damages benchmark they suggested, ruling (Tesla believes incorrectly) that such an amount was supposedly "untethered to record evidence." (ECF 328 at 29.)[2] Instead, the Court relied foremost on the evidence presented at trial and the deference owed to the jury's award. (*See id.* ("the jury was within its rights to award a significant sum"); *id.* at 35 ("The jury is entitled to 'great deference,' and that is especially true when it comes to non-economic harm . . . . But its award of future damages is far out of proportion to the evidence." (citations omitted)).) Accordingly, although the Court did address some comparable cases, that analysis was but one of "several factors" that led to its remittitur (*id.* at 30), and far from the "controlling" consideration.

### B. Diaz Fails To Show Substantial Grounds For Difference Of Opinion

Even if Diaz were raising a controlling legal question as to the Court's consideration of comparable verdicts rather than a fact-based challenge to the Court's application of *Turley* and *Passantino* (and he is not), Diaz still would not be entitled to certification under section 1292(b) because he has not shown there is "substantial ground for difference of opinion" as to whether such a "comparative analysis" is legally permissible. "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)).

No such circumstances are present here. To the contrary, Diaz has not shown any substantial ground for difference of opinion as to whether a "comparative analysis" of emotional distress

---

[2] Tesla disputes, and reserves its right to challenge, this characterization of its suggested remittitur of compensatory damages and of the comparable cases it identified.

compensatory damages awards is legally permissible. District courts have broad discretion to review the excessiveness of jury damages verdicts on post-trial motions under Rule 59, and comparative analysis of judgments in like cases is a time-tested and universally accepted aspect of that practice. Diaz fails to cite a single decision from any court that has barred consideration of verdicts or remittiturs in comparable cases in assessing whether a jury's award is excessive. And he concedes that California courts have specifically held that "a reviewing court, in passing upon the question . . . *may* consider amounts awarded in similar cases." (ECF 333 at 10-11 (emphasis added) (quoting *Daggett v. Atchison, T. & S. F. Ry. Co.*, 48 Cal. 2d 655, 666 (1957)).)

Nor does Diaz cite any case showing that the Ninth Circuit has cast doubt on the validity of looking to damages awards in comparable cases. And it has not. Recently, the Ninth Circuit approved a district court's comparison of verdicts. *See Bachrach v. Covenant Transp. Inc.*, 636 F. App'x 404, 407 (9th Cir. 2016) (affirming the district court's remittitur order and noting that, after the district court found "the highest comparable Arizona verdict was less than half" the $3.718 million verdict to be awarded to the plaintiff, "the judge then examined the evidence and determined that it did not support such an objectively large verdict"). And in *Shaw v. United States*, the Ninth Circuit expressly stated that, in analyzing damages, "courts are *required* to maintain some degree of uniformity in cases involving similar losses." 741 F.2d 1202, 1209 (9th Cir. 1984) (emphasis added). Diaz tries (ECF 333 at 9 n.6) to distinguish *Shaw* on the ground that it arose from a bench rather than jury trial, but fails to explain why uniformity of damages awards would be important only in the context of a bench award. To the contrary, courts have applied the principle of ensuring uniformity in damages awards to jury verdicts too. *See Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 567 (7th Cir. 2006) (holding that, in reviewing a remitted award after jury trial, "our role in reviewing awards for abuse of discretion is to determine if the award in this case was roughly comparable to similar cases").

Indeed, while the Ninth Circuit does "not *require*[]" district courts to reduce a jury's award of emotional distress damages to align with comparable awards (ECF 333 at 9-10), such comparative analysis is common practice in this Court and other district courts in this Circuit. *See, e.g.*, *Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1245 (N.D. Cal. 2008) (finding award "grossly excessive

based on the facts of this particular case" and noting the "award appears to be of a different magnitude compared to other awards"), *aff'd*, 379 F. App'x 647 (9th Cir. 2010); *Velez v. Roche*, 335 F. Supp. 2d 1022, 1039 (N.D. Cal. 2004) ("In determining whether a jury award for compensatory damages is excessive, a court may review awards made in similar cases to determine whether or not an award is excessive and calls for an order of remittitur." (quoting *Thornton v. Kaplan*, 958 F. Supp. 502, 505 (D. Colo. 1996))); *see also Paul v. Asbury Auto. Grp., LLC*, 2009 WL 188592, at *9 (D. Or. Jan. 23, 2009) (comparing emotional distress damages verdict to the damages amounts awarded in other cases including *Passantino*, and concluding that much lower damages were appropriate in light of the plaintiff's shorter employment tenure and less acute suffering); *Johnson v. Albertsons, LLC*, 2020 WL 3604107, at *4-5 (W.D. Wash. July 2, 2020) (remitting damages award after comparing similar remitted verdicts); *Clark v. City of Tucson*, 2020 WL 914524, at *18 (D. Ariz. Feb. 26, 2020) (granting new trial/remittitur based on comparison to analogous cases).[3]

Diaz likewise shows no circuit dispute on this issue. No federal court of appeals has barred district courts from using comparative damages analysis in deciding post-trial motions under Rule 59. And at least two circuits have applied such comparative analysis on appeal, vacating judgments for abuse of discretion where a district court ***did not*** align a damages award with awards in comparable cases. *See Thompson v. Memorial Hosp. of Carbondale*, 625 F.3d 394, 408 (7th Cir. 2010) (ordering award of $500,000 remitted to $250,000) ("In our review, we generally look at

---

[3] Diaz's cases (ECF 333 at 9) that purportedly "cautioned" against the "usefulness" of comparative verdict analysis either actually engaged in the practice themselves or did not address the issue at all, and at most recognized that a court must base any assessment of the comparative reasonableness of a damages award in the specific facts of a case. *See Cervantes v. Cty. of Los Angeles*, 2015 WL 5163031, at *2 (C.D. Cal. Sept. 3, 2015) (rejecting parties' case comparisons because they were "on the extreme ends of the factual spectrum"), citing *United States v. English*, 521 F.2d 63, 72 (9th Cir. 1975) (cautioning against reliance on factually distinct cases for purposes of determining appropriate deduction to wages for "for decedent's personal consumption, expenditures, and taxes," but nevertheless noting that "the district court's 30 percent deduction in this case [is not] out of line with what other courts have done"); *Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1241 (N.D. Cal. 2008) (explicitly "draw[ing] some guidance from awards granted in similar cases" to remit a "grossly excessive" $5 million award to $3 million because it was "well beyond nearly each of the awards" reviewed); *Arnold v. Pfizer, Inc.*, 2015 WL 268967 (D. Or. Jan. 21, 2015) (not addressing comparative case analysis at all).

compensatory damage awards with several considerations in mind: (1) whether the award is 'monstrously excessive'; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is **roughly comparable to awards made in similar cases**." (citation omitted) (emphasis added)); *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) ("Our determination of whether a compensatory damages award is excessive should not be conducted in a vacuum, but instead should include consideration of the **amounts awarded in other, comparable cases**." (quotation marks and citation omitted) (emphasis added)); *Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 546 (2d Cir. 2020) (ordering award of $2.16 million remitted to $250,000) (noting that, in reviewing a district court's failure to reduce a damages award as excessive, "we are bound by precedent to compare the awards in this case with the **awards in analogous cases**" (quotation marks and citation omitted) (emphasis added)).

Other circuits approve such comparative damages analysis too. *See, e.g.*, *Suero-Algarin v. CMT Hosp. Hima San Pablo Caguas*, 957 F.3d 30, 41 (1st Cir. 2020) (holding that the Puerto Rico Supreme Court's instructions to use comparative cases as "guideposts" in determining remittitur "does not depart" from but instead "echoes the federal 'grossly excessive' standard"); *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 612 (6th Cir. 2016) (affirming district court decision not to remit compensatory damages because the "amount was not too far afield from awards in similar cases"); *Wulf v. City of Wichita*, 883 F.2d 842, 875 (10th Cir. 1989) (acknowledging that "comparisons with other cases are not dispositive," but nonetheless ordering remittitur of an award that was "excessive compared to other cases where the plaintiff suffered emotional distress of a magnitude comparable to [plaintiff]'s" based on "our review of the record, informed by a review of awards granted in other comparable cases").

With no authority to cite to show a "substantial ground for difference of opinion," Diaz speculates (ECF 333 at 8) that "reasonable judicial minds could certainly differ" about whether it is legally permissible to consider comparable verdicts. But Diaz's speculation fails to show that "controlling law is unclear." *Couch*, 611 F.3d at 633. And Diaz's speculation reveals, again, that he is not challenging the general propriety of a comparative damages award analysis, but rather the Court's specific application of *Turley* and *Passantino* to the facts of this case. (*See, e.g.*, ECF 333

at 8 (arguing that the Ninth Circuit "could conclude" that his verdict should not be "capped by what jurors in Tacoma or New York found adequate based on different facts and different evidence"); *id.* ("there [is] at least a reasonable dispute about whether it was error for the trial court to have relied on the jury verdicts in *Turley* and *Passantino* to determine the 'maximum amount supportable'").) Diaz's speculation about how the Ninth Circuit "could" decide a challenge to this Court's application of *Turley* and *Passantino* fails to show a substantial ground for difference of opinion on a controlling question of law. Moreover, settled law has long foreclosed Diaz's suggestion that the Seventh Amendment jury right bars such comparative damages analysis.[4]

### C.  Diaz Fails To Show An Immediate Appeal Will Advance The Ultimate Termination Of The Litigation

Diaz likewise fails to meet the final requirement for a section 1292(b) appeal because he fails to show "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Diaz's request would only postpone the ultimate termination of this litigation. Diaz is expressly reserving his right to defer his election between a new trial and remittitur until after his proposed section 1292(b) appeal is resolved—which could be months or years away. (*See* ECF 333 at 15 (arguing that, after his section 1292(b) appeal is resolved, he might then "take his chances on a new trial").) Kicking the proverbial can down the road does not materially advance the ultimate termination of the litigation.

Diaz likewise fails to show that permitting his section 1292(b) appeal would result in appellate efficiencies, such as by consolidating all appellate issues into a single, early appeal. Even if Tesla exercised its right to conditionally cross-petition the Ninth Circuit to allow cross-appeal on certain issues under section 1292(b), *see* Fed. R. App. P. 5(b)(2), the Ninth Circuit would have discretion over the scope of any permissive interlocutory appeal or cross-appeal, *see, e.g.*, *ICTSI Oregon*, 22 F.4th at 1131 (Ninth Circuit "enjoys broad discretion to refuse to accept" jurisdiction under section 1292, and may choose to hear some issues, but not others, and may even refuse to

---

[4] Contrary to Diaz's repeated suggestion (*e.g.*, ECF 333 at 8) that the Ninth Circuit might conclude on appeal that the Court's remittitur violated the Seventh Amendment, the Ninth Circuit has held that "[o]ffering the prevailing party the option of a new trial avoids a violation of the Seventh Amendment." *B. Braun Med., Inc. v. Rogers*, 163 F. App'x 500, 506 (9th Cir. 2006) (citing *Hetzel v. Prince William County*, 523 U.S. 208, 211 (1998)).

decide the question that provided the basis for certification); *see also* Fed. R. App. P. 5 (setting forth bases for appeals "by [p]ermission"); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 689-90 (9th Cir. 2011) ("declin[ing] to exercise any discretion [it] may have to review the additional issues that Reese raises" on § 1292(b) cross-appeal); *Roth v. King*, 449 F.3d 1272, 1283 (D.C. Cir. 2006) ("We need not resolve these knotty issues raised in connection with § 1292(b) and Rule 5. The one thing that is clear here is that any review of appellees' purported cross-appeal is at most discretionary with this court."). Diaz thus errs in simply assuming (ECF 333 at 14) that, if he proceeded with a section 1292(b) appeal, then "Tesla could cross-appeal other aspects of this Court's post-trial rulings" too. Rather, it is far more likely that any immediate appeal under section 1292(b) would not address all the parties' appellate issues, but instead would only postpone their ultimate resolution, and thus the "ultimate termination of the litigation," by requiring multiple appeals. Diaz has thus failed to show any reason why his request for certification would expedite the ultimate resolution of this litigation rather than cause further delay.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion and reinstate Diaz's deadline to elect whether to accept the remittitur or proceed to new trial.

DATED: May 18, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Kathleen M. Sullivan*
Kathleen M. Sullivan
Daniel C. Posner
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant Tesla Inc.*