LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
NAVRUZ AVLONI (SBN 279556)
navruz@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:     (415)-453-7352
Facsimile:     (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:     (310) 394-0888
Facsimile:     (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:     (415) 421-7151
Facsimile:     (415) 362-8064

Attorneys for Plaintiff OWEN DIAZ

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO CERTIFY POST-TRIAL ORDER FOR INTERLOCUTORY REVIEW**<br><br>Hearing Date: June 8, 2022<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>The Hon. William H. Orrick |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION ................................................................................................................................1

ARGUMENT .......................................................................................................................................2

    1.    The Court's remittitur involves a controlling question of law presenting substantial grounds for disagreement. ...............................................................................2

    2.    Immediate appellate review would materially advance the litigation. ................9

CONCLUSION ..................................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*,
    767 F.2d 1151 (5th Cir. 1985) .................................................................................................. 5

*Atlas Food System & Services, Inc. v. Crane National Vendors, Inc.*,
    99 F.3d 587 (4th Cir. 1996) ..................................................................................................... 11

*Bachrach v. Covenant Transp. Inc.*,
    636 F. App'x 404 (9th Cir. 2016) .............................................................................................. 7

*Bertero v. Nat'l Gen. Corp.*,
    13 Cal. 3d 43 (1974) ................................................................................................................. 7

*Borck v. City of Los Angeles*,
    303 F. App'x 437 (9th Cir. 2008) ............................................................................................ 11

*Burchell v. Fac. Physicians & Surgeons of Loma Linda Univ. Sch. of Med.*,
    54 Cal. App. 5th 515 (2020) ..................................................................................................... 7

*In re Cement Antitrust Litig. (MDL No. 296)*,
    673 F.2d 1020 (9th Cir. 1981) ............................................................................................. 3, 8

*Correa v. Hosp. San Francisco*,
    69 F.3d 1184 (1st Cir. 1995) ..................................................................................................... 8

*Cortez v. Chipotle Mexican Grill, Inc.*,
    2021 WL 3214765 (9th Cir. July 29, 2021) ............................................................................ 11

*Cosby v. AutoZone, Inc.*,
    445 F. App'x 914 (9th Cir. 2011) .............................................................................................. 4

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) ..................................................................................................... 9

*Daggett v. Atchison, T. & S. F. Ry. Co.*,
    48 Cal. 2d 655 (1957) ............................................................................................................... 7

*D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*,
    692 F.2d 1245 (9th Cir. 1982) .................................................................................................. 5

*Donovan v. Penn Shipping Co.*,
    429 U.S. 648 (1977) (per curiam) ............................................................................................. 9

*Edwardsville Nat. Bank & Tr. Co. v. Marion Labs., Inc.*,
    808 F.2d 648 (7th Cir. 1987) .................................................................................................. 10

*Felder v. United States*,
 543 F.2d 657 (9th Cir. 1976) .................................................................................................. 7

*Hardin v. Dadlani*,
 221 F. Supp. 3d 87 (D.D.C. 2016) ........................................................................................... 8

*Holzhauer v. Golden Gate Bridge Highway & Transp. Dist.*,
 2017 WL 3382316 (N.D. Cal. Aug. 7, 2017) .......................................................................... 5

*Johnson v. Offshore Exp., Inc.*,
 845 F.2d 1347 (5th Cir. 1988) ................................................................................................. 8

*Longoria v. Hunter Express, Ltd.*,
 932 F.3d 360 (5th Cir. 2019) ................................................................................................... 8

*McCabe v. Parker*,
 608 F.3d 1068 (8th Cir. 2010) ................................................................................................. 8

*Oracle Corp. v. SAP AG*,
 765 F.3d 1081 (9th Cir. 2014) ............................................................................................ 5, 7

*Passantino v. Johnson & Johnson Consumer Products, Inc.*,
 212 F.3d 493 (9th Cir. 2000) ..........................................................................................*passim*

*Peyton v. DiMario*,
 287 F.3d 1121 (D.C. Cir. 2002) .............................................................................................. 8

*Pool v. City of Oakland*,
 42 Cal. 3d 1051 (1986) ........................................................................................................... 7

*Reese v. BP Expl. (Alaska) Inc.*,
 643 F.3d 681 (9th Cir. 2011) ............................................................................................. 8, 12

*Rodriguez v. McDonnell Douglas Corp.*,
 87 Cal. App. 3d 626 (1978) .................................................................................................... 7

*Seffert v. Los Angeles Transit Line*s,
 56 Cal. 2d 498 (1961) ............................................................................................................. 7

*Shaw v. United States*,
 741 F.2d 1202 (9th Cir. 1984) ................................................................................................ 7

*Shows v. Jamison Bedding, Inc.*,
 671 F.2d 927 (5th Cir. 1982) .................................................................................................. 6

*Sykes v. McDowell*,
 786 F.2d 1098 (11th Cir. 1986) .............................................................................................. 8

*Thomas v. Mineta*,
 310 F. Supp. 2d 198 (D.D.C. 2004) ........................................................................................ 8

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014)................................................................................................*passim*

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996).................................................................................................................. 1

**Constitutions & Statutes**

U.S. Const. amend. VII............................................................................................................... 5, 7, 8

28 U.S.C. § 1292.......................................................................................................................*passim*

**Other Authorities**

Wright & Miller, 16 Fed. Prac. & Proc. Juris. (3d ed.)................................................................. 10

# INTRODUCTION

Tesla's opposition does not even mention the controlling question of law that Plaintiff Owen Diaz articulated as the basis for his motion for interlocutory appeal: whether, for purposes of remittitur, a district court's calculation of the *maximum* amount of compensatory damages supported by the evidence may be based on the damages awards that different juries in different cases found *sufficient* to compensate the plaintiffs in those other cases—a materially different legal standard. *See* Motion (Dkt. No. 333) at 6, 7. To obtain Section 1292(b) certification, Diaz is not required to persuade the Court that it committed legal error by relying on those other jury verdicts—in *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014), and *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493 (9th Cir. 2000)—as its principal justification for capping Diaz's combined past and future emotional distress damages at $1.5 million. Notably, though, Tesla does not attempt to defend the Court's legal reasoning, much less rebut Diaz's showing that the legal error underpinning the Court's remittitur methodology raises a "controlling" question of law as to which reasonable jurists might disagree. Mot. at 6 (citing cases).

Tesla similarly side-steps the second question under Section 1292(b): whether at this stage of the litigation, interlocutory appeal would be the most efficient and expeditious way to resolve the parties' dispute. Plaintiff previously explained why, under a practical, common-sense analysis, interlocutory appellate review would save the parties and the judicial system considerable time and expense given the likely alternative—a new damages trial followed by a new motion for a new trial or remittitur in which Tesla would presumably ask the Court once again to rely on the jury verdicts in *Turley* and *Passantino* to cap whatever damages the second jury might decide is supported by the evidence. Tesla responds with the speculative assertion that the Ninth Circuit *could* decide, after granting certification of the Post-Trial Order, to address only some of the interconnected issues resolved by that order. But the plain language of Section 1292(b) makes clear that appellate jurisdiction over a certified order extends to *all* issues encompassed by that order, not just the "controlling" issue of law that triggered certification. S*ee, e.g., Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 204–05 (1996). And Tesla

offers no reason why the Ninth Circuit would thus limit its review, once it accepted certification.

For the reasons stated in Plaintiff's motion and below, the Court should certify that its Post-Trial Order satisfies the requirements of 28 U.S.C. § 1292(b), thus enabling the Ninth Circuit independently to decide whether to accept certification and thereby bring this highly contested litigation to a just conclusion.

## ARGUMENT

**1. The Court's remittitur involves a controlling question of law presenting substantial grounds for disagreement.**

Plaintiff's opening brief explained at length why the Court's methodology for calculating the compensatory damages remittitur in the Post-Trial Order raised a "controlling question of law as to which there is substantial ground for difference of opinion" under Section 1292(b). *See* Mot. at 6–13. Tesla's response ignores Plaintiff's actual articulation of the legal issue and supporting legal arguments, and instead relies on generalized assertions about remittitur and interlocutory review that provide no reason to deny certification under the circumstances of this case.

Tesla refuses to acknowledge (much less analyze) the actual issue Plaintiff seeks to raise on appeal. Instead, Tesla sets up a straw man by asserting that the issue is "whether a 'comparative analysis' of emotional distress compensatory damages awards is legally permissible." Tesla Opp. at 7–8; *see also, e.g.*, *id.* at 1 (framing issue as whether the district court erred in "considering damages awards in comparable cases as part of its Rule 59 analysis"); *id.* at 8 (issue is "validity of looking to damages awards in comparable cases"). Plaintiff, however, does not seek certification to determine whether it is "legally permissible" or "valid[]" for a district court to "consider[]" comparable damages awards "as part of its Rule 59 analysis." Nor does Plaintiff argue that the Court erred merely by considering cases like *Turley* and *Passantino* in its remittitur analysis. Rather, Plaintiff contends that the Court erred as a matter of law by using the *jury verdicts* in those cases to determine the *maximum* amount of emotional distress damages that the evidence in this case could support—despite the *Diaz* jury's very different

perspectives on that evidence.[1]

Tesla argues that Plaintiff's objection to the Post-Trial Order is factual rather than legal and thus fails to invoke the required "controlling question of law." That mistaken argument reflects Tesla's mischaracterization of the controlling legal question. The controlling question here is not whether the Court acted within its discretion in concluding, based upon its independent review of the evidentiary record, that a remittitur was required. Nor is the question whether the Court erred in determining that *Turley* and *Passantino* were the two most factually comparable cases to *Diaz*. Rather, the controlling *legal* question for purposes of Section 1292(b) is whether a district court may rely on prior jury awards involving roughly comparable facts as setting the uppermost boundary of the "maximum amount" of emotional distress damages a later jury may permissibly award. That is a question of law, not fact, and it is controlling, because "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court."). *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981).

Tesla contends that Plaintiff "overstate[s] the extent to which the Court relied on *Turley* and *Passantino*." Tesla Opp. at 6. But it makes no attempt to engage with Plaintiff's arguments on this point. *See id.* In particular, Tesla offers no rebuttal to Plaintiff's observation that the Post-Trial Order expressly relied upon the *Turley* and *Passantino* jury verdicts as the basis for concluding that the maximum allowable damages in this case would be capped at $1.5 million. *See* Mot. at 12; Post-Trial Order (Dkt. 328) at 36 ("The closest cases, especially *Turley* and *Passantino*, illustrate that awards of roughly $1.5 million (in today's dollars) are supported by

---

[1] Tesla falsely suggests in passing that Plaintiff may have invited the Court's error by proposing its own "comparable" cases for the Court's consideration. Tesla Opp. at 5. Not so. Plaintiff's discussion of comparable cases was limited to a brief response to Tesla's unscientific appendices. *See* Pl.'s Opp. (Dkt. 321) at 14 n.2. Moreover, at the hearing, Plaintiff's counsel explained to the Court that "while you may look at other cases to get a general sense of things, obviously the Jury Instructions didn't tell the jury to look at other cases. You have to make your own determination as to what is monstrously excessive in this case on these facts. . . . [W]hat it comes down to is how much we defer to a jury and the jury's sensibilities given that there is no accurate way to determine what someone else's emotional distress damages are." Post-Trial Hearing Tr. at 13. That analysis is fully consistent with Plaintiff's current arguments.

analogous (though not identical) evidence. Accordingly, I conclude that the maximum amount supportable by proof to make Diaz whole for his emotional harm is $1.5 million."); *see also Cosby v. AutoZone, Inc.*, 445 F. App'x 914, 917 (9th Cir. 2011) ("In setting the amount of remittitur for non-economic damages, the district court must outline specifically, with reference to the evidence presented at trial, the reasons for the amount."). Nor does Tesla address, let alone dispute, Plaintiff's argument that the Court's decision to issue a lump-sum remittitur (like the lump-sum verdicts in *Turley* and *Passantino*) instead of separately calculating the "maximum amount sustainable" for past and future emotional distress (as the jury here was required to award) further demonstrates the Court's reliance on those two cases. Mot. at 12–13. Finally, Tesla ignores the Court's repeated reference to awards in other cases in the remittitur portion of its Post-Trial Order. *See, e.g.*, Post-Trial Order at 29 ($2.4 million in future damages "is significantly larger than the mine-run of *total* damages awards"); *id.* at 30 (Diaz's nine months of employment was shorter than in "cases below for which the awards were smaller"); *id.* at 33 (*Passantino* "shows that $6.9 million is quite high").

  The fact that the Court reviewed the evidentiary record before concluding that the award of $4.5 million in past emotional distress damages and $2.4 million in future emotional distress damages should be subject to remittitur does not justify its decision to rely on *Turley* and *Passantino* to determine how low the resulting remittitur should be. The Court's remittitur slashed the jury's compensatory damage award by nearly 80%. That calculation principally rested on the jury verdicts in *Turley* and *Passantino*. Yet the juries in those cases were not asked to determine the maximum permissible damages supported by the evidence, only what would be sufficient to compensate the injured plaintiffs in those two cases. Whether it is improper for a court to rely on jury verdicts in other cases to cap emotional distress (or pain and suffering) damages for purposes of remittitur raises an issue of law. Absent interlocutory review, there is no reason to believe that the same issue would not arise again and again in this case, unless or until the Court decides *sua sponte* to reconsider the extent of its reliance upon those cases.

  Tesla also fails to rebut Plaintiff's showing that "substantial grounds for difference of opinion" exist concerning that controlling question of law. As Plaintiff has explained—without

any disagreement from Tesla—the legal standard governing a district court's compensatory damages remittitur requires the court to determine the "maximum amount sustainable by the proof." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014). That inquiry into the *maximum* permissible jury award on a given set of facts is materially different from the inquiry a jury is required to conduct in determining *an* amount that would be *sufficient* to compensate plaintiffs for their injuries. *See, e.g.*, Jury Ins. No. 38 ("Damages means the amount of money that will *reasonably and fairly* compensate the plaintiff for any injury you find was caused by the defendant.") (emphasis added). Especially in the context of emotional distress damages, which are particularly difficult to calculate with precision, *see Holzhauer v. Golden Gate Bridge Highway & Transp. Dist.*, 2017 WL 3382316, at *2 (N.D. Cal. Aug. 7, 2017), the maximum amount a jury *could* reasonably award in a particular case may often exceed the amount that the jury ultimately *chooses* to award. Accordingly, a remittitur—especially an emotional distress remittitur—must be limited to reducing a jury's award to the very top of the permissible range. This rule "prevents the court's substitution of its judgment for that of the jury," *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982), and reflects the principle that a plaintiff is entitled, under the Seventh Amendment, to a judgment made by a jury of his or her own peers. A jury's award of damages should be modified only to the extent necessary to remain within the bounds of the evidence and due process—*not* to be capped by the damages judgments made by past juries in other cases (and perhaps other places).[2]

The Court's Post-Trial Order diverges from this approach by resting its remittitur calculation on the jury verdicts in two cases—*Turley* and *Passantino*—in which there was *no* remittitur. The judgments in those cases therefore reflect only what those particular juries believed would be sufficient to compensate those plaintiffs on those facts. *See In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 767 F.2d 1151, 1156 (5th Cir. 1985) ("[S]imply

---

[2] Tesla's brief discussion of the Seventh Amendment, *see* Tesla Opp. at 11 n.4, is misplaced. The issue is not whether the general practice of offering plaintiffs a choice between a remittitur and a new trial violates the Seventh Amendment, *see id.*; it is whether the Seventh Amendment allows courts to calculate maximum permissible jury awards on the basis of what juries in other jurisdictions at other times found to be adequate compensation on comparable facts.

because certain awards have been *affirmed* does not indicate that these are the highest, or even near the highest, awards which might be allowed."); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir. 1982) (rejecting comparison where "[i]n most of these cases … the jury verdicts were upheld, and they thus shed no light on how high an award must be to be 'excessive'"). Neither case purports to establish the "maximum amount" of emotional distress damages suffered by plaintiffs in those cases—let alone the maximum amount that a different jury in a different context in a different part of the country at a different time could award to an injured plaintiff with different life experiences and expectations. This Court, however, seems to have concluded that the maximum amount that Diaz can recover is what the plaintiffs in those cases happened to recover (after a rough but insufficient accounting for inflation)—even though there is no apparent reason why the $6.9 million in compensatory damages awarded by the jury is inherently excessive compensation for past racist workplace abuse and persistent psychological damage.

  Because Tesla concedes that courts in the Ninth Circuit are not required to conduct comparability analysis when calculating an appropriate remittitur amount, the handful of lower court cases it cites are immaterial. *See* Tesla Opp. at 8–10. As Plaintiff has explained, the issue is not whether the district court may ever consider other cases in its analysis, but whether it may calculate an emotional damages remittitur by treating prior jury awards in comparable cases as establishing the maximum amount of damages permitted by law.

  In any event, Tesla's case analysis is unpersuasive. Tesla erroneously insists there is no divergence of judicial opinion over whether jury awards should be made to conform to the size of past verdicts. Yet it entirely ignores California case law, even though the jury awarded damages in part based on Tesla's negligence liability, and despite the Court's correct holding that "[w]hen assessing remittiturs of state-law claims, federal courts apply state law." Post-Trial Order at 14 (citing *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 431 (1996)). As Plaintiff explained, *see* Mot. at 10–12, California courts routinely reject comparison to past cases as a basis for finding excessive damages, even for precedent-setting verdicts, and have emphasized the "wide range within which reasonable people may differ regarding an appropriate monetary

measure of compensation for [noneconomic] injuries." *Burchell v. Fac. Physicians & Surgeons of Loma Linda Univ. Sch. of Med.*, 54 Cal. App. 5th 515, 528–29 (2020) (cleaned up); *see also Daggett v. Atchison, T. & S. F. Ry. Co.*, 48 Cal. 2d 655, 666 (1957); *Seffert v. Los Angeles Transit Line*s, 56 Cal. 2d 498, 508 (1961); *Pool v. City of Oakland*, 42 Cal. 3d 1051, 1068 n.17 (1986); *Bertero v. Nat'l Gen. Corp.*, 13 Cal. 3d 43, 65 n.12 (1974); *Rodriguez v. McDonnell Douglas Corp.*, 87 Cal. App. 3d 626, 654–55 (1978).

   Tesla's citations to Ninth Circuit cases are entirely misplaced. Tesla cites the unpublished *Bachrach v. Covenant Transp. Inc.*, 636 F. App'x 404 (9th Cir. 2016), as evidence of the "validity of looking to damages awards in comparable cases" in the Ninth Circuit (which, again, is not the issue here). *Bachrach*, however, applied only Arizona law, and endorsed looking to comparable cases only after determining that in recent years "the Arizona Supreme Court has not disavowed or expressed skepticism toward verdict comparison." *Id.* at 407. Tesla's other Ninth Circuit citation is *Shaw v. United States*, 741 F.2d 1202, 1209 (9th Cir. 1984), which Plaintiff has already explained is inapposite. *See* Mot. at 9 n.6. That case, like others previously discussed, involve verdict comparison in *bench* trials under the Federal Tort Claims Act, which implicate neither the Seventh Amendment nor deference to the jury's role as fact-finder, and which the Ninth Circuit has never applied to jury trials. *See Felder v. United States*, 543 F.2d 657, 664–665 (9th Cir. 1976). What matters in the Ninth Circuit, in considering the validity of a district court's remittitur—which, by definition, can *only* issue after a jury trial, not after a bench trial (because district courts do not review their own damages awards)—is whether the remitted amount constitutes the "maximum amount sustainable by the proof." *Oracle Corp.*, 765 F.3d at 1094.

   Tesla's reliance on the purported absence of a circuit split, Tesla Opp. at 9–10, is wrong on multiple levels. For starters, Tesla's cited cases do not address the actual legal question Plaintiff identified: whether a court may rely on jury awards in comparable cases as establishing the *maximum* amount a later plaintiff may recover for emotional distress. *See supra* at 2. Regardless, contrary to Tesla's assertion (Tesla Opp. at 9), a circuit dispute does exist, even on the basic issue of whether courts considering remittitur should compare jury awards at all. The D.C. Circuit, for example, has "rejected such comparisons as a basis upon which to determine

1  whether remittitur should be ordered." *Thomas v. Mineta*, 310 F. Supp. 2d 198, 207 (D.D.C. 2004); *see Peyton v. DiMario*, 287 F.3d 1121, 1127 (D.C. Cir. 2002); *Hardin v. Dadlani*, 221 F. Supp. 3d 87, 111–12 (D.D.C. 2016). Further, while some courts do permit case comparisons, the circuits have varying and nuanced approaches. The Fifth Circuit, for example, long held that "we do not determine excessiveness of damage awards by comparing verdicts in similar cases, but rather we review each case on its own facts." *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1356 (5th Cir. 1988). That court now permits comparisons but requires district courts to set remittiturs at "150% of the highest inflation-adjusted recovery in an analogous, published decision," an approach designed to ensure that plaintiffs receive the "maximum recovery" the law will permit, in keeping with the Seventh Amendment. *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019); *see also McCabe v. Parker*, 608 F.3d 1068, 1081 (8th Cir. 2010) ("A reduction to less than the full amount a reasonable jury could award violates a party's Seventh Amendment right to a trial by jury. . . [A court] is not at liberty to remit an award to the low end of the range, or even somewhere in the middle of the range."). Other circuits have similarly cautioned against over-reliance on comparative analysis. *See, e.g., Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1198 (1st Cir. 1995) ("[M]erely showing that the damage award is generous in comparison to other (hand-picked) cases is insufficient to warrant relief."); *Sykes v. McDowell*, 786 F.2d 1098, 1105 (11th Cir. 1986) ("Comparison of verdicts rendered in different cases is not a satisfactory method for determining excessiveness *vel non* in a particular case and ... each case must be determined on its own facts.").

Ultimately, as Plaintiff has explained, *see* Mot. at 6, whether an order is appropriate for interlocutory appeal does not turn on whether "there are … cases directly conflicting with the district court's construction of the law." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Rather, the issue is whether the "appeal involves an issue over which reasonable judges might differ." *Id.*; *see also In re Cement Antitrust Litig.*, 673 F.2d at 1028. Plaintiff is not aware of any decision addressing the precise question presented here, but novelty points in favor of, rather than against, certification—especially where, as here, the stakes are high and the Court's error could affect not only Owen Diaz, but generations of future race- and sex-

harassment plaintiffs whose jury verdicts could similarly be reduced to the "maximum" $1.5 million damages award permitted here. *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

### 2. Immediate appellate review would materially advance the litigation.

In his opening brief, Plaintiff also explained why permitting interlocutory review of the Post-Trial Order would be the swiftest and most efficient path towards concluding this litigation. If Plaintiff accepts the remittitur, he will be precluded from ever challenging the Court's severe reduction in his compensatory damages, even while Tesla enjoys the unrestricted right to appeal any and all issues in the case. *See* Tesla Opp. (Dkt. No. 339) at 3; *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 650 (1977) (per curiam). While Diaz could preserve his appellate rights by rejecting the remittitur, that would require the parties and the Court to schedule, prepare for, and conduct another trial on damages, and then likely to litigate renewed post-trial motions, in which Tesla would again urge the Court to reduce the "maximum" permissible damages to the amount awarded by previous juries in Buffalo and Seattle. To be sure, the Court could disclaim reliance on the jury verdicts in *Turley* and *Passantino* after the next damages trial—or at any time between now and entry of final judgment. But barring a new approach by the Court to that legal issue, Section 1292(b) certification unquestionably provides the most straightforward, expeditious procedure for resolving the parties' underlying legal dispute.

Tesla does not seriously contest Diaz's analysis explaining why interlocutory review would hasten the litigation's close. While Tesla offers a few speculative thoughts about how an interlocutory appeal could theoretically result in greater delays, it ignores Plaintiff's straightforward, common-sense analysis. *Compare* Tesla Opp. at 2 *with* Mot. at 14–15; *see also supra* at 1-2. Tesla gets it exactly backwards in suggesting that a reversal and remand order from the Ninth Circuit reversal could precipitate "a new [Post-Trial] order, … a new election, … a new trial, … another new trial/remittitur order, and … another request for interlocutory appeal, and so on *ad infinitum*." Tesla Opp. at 2. Surely the Ninth Circuit would not reverse and remand without explaining how any remittitur *should* be calculated. Assuming the Court complied with those appellate instructions on remand, there would be no remaining basis for interlocutory

appeal (and a wasteful second damages trial would be completely avoided). The real risk of a procedural loop here would be if, instead of interlocutory review, there were a second damages trial, another *Turley/Passantino* cap, a third damages trial, that same cap, and so forth—all before the Ninth Circuit is able to rule on whether a prior jury verdict can establish the maximum damages award sustainable by the evidence.

Tesla offers no support for its speculative assertion that "it is far more likely that any immediate appeal under section 1292(b) would not address all the parties' appellate issues, but instead would only postpone their ultimate resolution." Tesla Opp. at 12. It is true that appellate courts have the authority to decline to decide all issues raised in a Section 1292(b) appeal. *See* Tesla Opp. at 11–12 (citing *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022)). But that is always the case. If that possibility were enough to defeat the requirement that interlocutory appeal "materially advance the litigation," no such appeals could occur. *See* Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3929 (3d ed.) ("Neither the district court nor the court of appeals can foresee, at the time the appeal is certified and accepted, the course of reasoning that the court of appeals will follow at the time of decision."). Moreover, there is every reason to expect the Ninth Circuit would resolve the whole dispute in this case. As to liability, the Court of Appeals is unlikely to address the issue of damages if it believes that Tesla has no liability. *Cf. Edwardsville Nat. Bank & Tr. Co. v. Marion Labs., Inc.*, 808 F.2d 648, 651 (7th Cir. 1987) ("The question is the *reason* for the interlocutory appeal, but the thing under review is the order. Were things otherwise, there would be substantial risk of producing an advisory opinion. If nothing turns on the answer to the question, it ought not be answered[.]"). As to damages, Tesla offers no reason (and there is none) to think that the Ninth Circuit would choose to resolve one challenge to this Court's remittitur but save the parties' other challenges for some future appeal.

Tesla is flat-out wrong in suggesting that Plaintiff's motion "disregards precedents" and "seeks an improper end-run around settled rules for appeal[.]" Tesla Opp. at 1, 2. Plaintiff has presented a detailed explanation of the applicable "settled rules for appeal" in his opening brief. *See* Mot. at 13–14. Those are the exact same rules Tesla cites in its brief. *See* Tesla Opp. at 2–3.

One of those "settled rules" is the availability of interlocutory review under Section 1292(b) for orders not otherwise appealable. Orders granting a new trial *are* subject to interlocutory review, and of course the Ninth Circuit *has* reviewed such orders under Section 1292(b). *See, e.g.*, *Cortez v. Chipotle Mexican Grill, Inc.*, 2021 WL 3214765, at *1 (9th Cir. July 29, 2021) (accepting jurisdiction under Section 1292(b) of an order granting a new trial); *Borck v. City of Los Angeles*, 303 F. App'x 437, 438 (9th Cir. 2008) (reviewing under Section 1292(b) an order granting a "motion for a new trial on the issue of damages").[3]

Tesla is wholly unable to distinguish *Atlas Food System & Services, Inc. v. Crane National Vendors, Inc.*, 99 F.3d 587, 591 (4th Cir. 1996), in which the Fourth Circuit granted interlocutory review of a district court's remittitur order under Section 1292(b) in order to avoid a new trial. *Id.* Tesla points out that *Atlas Food System* involved an order offering a remittitur or a third trial, rather than (as here) an order offering a remittitur or a second trial. But it does not explain why this distinction makes any difference. *See* Tesla Opp. at 3.

*Atlas Food System* demonstrates the appropriateness of certifying a remittitur order under Section 1292(b) to resolve a legal dispute and avoid a wholly *unnecessary* retrial. There is no necessity for a retrial in *this* case because neither party contends that the jury heard inadmissible evidence or impermissible argument, or that the jury instructions were flawed, or that the jury's impartiality was tainted. Consequently, it is more than likely that the evidence and the instructions in a new damages trial will be the same (or mostly the same) as in the first trial; and if the second jury similarly awards more than $1.5 million in compensatory damages, Tesla will presumably again cite *Turley* and *Passantino* as establishing the maximum permissible award supported by that evidence. If the Court again concludes that the verdicts in those cases set the maximum permissible damages award in this case, the pattern will continue—as will the

---

[3] Tesla asserts that Plaintiff cites no "decisions, from any jurisdiction, granting a section 1292(b) interlocutory appeal from a new trial/remittitur order" and that "[n]one of the Ninth Circuit cases Diaz cites … granted interlocutory appeal of a new trial/remittitur order at all." Tesla Opp. at 3. Plaintiff did in fact cite such cases, including those cited above. *See* Mot. at 14. To the extent Tesla faults Plaintiff for not citing the motions panel orders granting review in these cases, Plaintiff notes that such orders seem typically to be text-only docket orders containing no reasoning.

-12-

resulting waste of judicial (and party) time and resources. *See Reese,* 643 F.3d at 688 n.5 (rejecting "rigid" approach to Section 1292(b) that would result in "unnecessary, protracted litigation and a considerable waste of judicial resources").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to certify the Court's Post-Trial Order for interlocutory appeal under 28 U.S.C. § 1292(b) should be granted.

                              California Civil Rights Law Group
                              Alexander Morrison + Fehr LLP
                              Altshuler Berzon LLP

Dated:   May 25, 2022               /s/ Michael Rubin
                              Lawrence A. Organ
                              Cimone A. Nunley

                              J. Bernard Alexander III

                              Michael Rubin
                              Jonathan Rosenthal

                              Attorneys for Plaintiff
                                 OWEN DIAZ