1
2
3
4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    OWEN DIAZ,                              Case No.  17-cv-06748-WHO

8                  Plaintiff,
                                             **ORDER ON MOTION TO CERTIFY**
9         v.                                 **FOR INTERLOCUTORY APPEAL**

10   TESLA, INC., et al.,                    Re: Dkt. No. 333

11                 Defendants.

12

13         Plaintiff Owen Diaz moves to certify a recent order remitting his damages for interlocutory

14   appeal.  Oral argument is unnecessary and the hearing is VACATED.  *See* Civ. L.R. 7-1(b).  He

15   has not identified a controlling question of law appropriate for immediate appellate review, so his

16   motion is DENIED.  He shall file a notice on the docket within 14 days stating whether he accepts

17   or rejects the remittitur.

18                                    **BACKGROUND**

19         In October 2021, after a six-day trial, the jury Diaz $4.5 million in past compensatory

20   damages, $2.4 million in future compensatory damages, and $130 million in punitive damages.

21   Dkt. No. 301.  In March 2022, I denied defendant Tesla, Inc.'s ("Tesla") motion for judgment as a

22   matter of law and conditionally denied its motion for a new trial based on Diaz accepting a

23   remittitur to $1.5 million in compensatory damages and $13.5 million in punitive damages.  *See*

24   Order on Post-Trial Motions ("Prior Order") [Dkt. No. 328].  I gave Diaz 30 days to accept or

25   reject the remittitur and later vacated that deadline so that this motion could be ruled on.  Dkt. No.

26   336.

27                                  **LEGAL STANDARD**

28         Under 28 U.S.C. § 1292(b), "[w]hen a district judge, in making in a civil action an order

1    not otherwise appealable under this section, shall be of the opinion that such order involves a

2    controlling question of law as to which there is substantial ground for difference of opinion and

3    that an immediate appeal from the order may materially advance the ultimate termination of the

4    litigation, he shall so state in writing in such order."  Then, the court of appeals may either permit

5    the appeal or not.  *See* 28 U.S.C. § 1292(b).  Each of these requirements—(1) a controlling

6    question of law, (2) substantial grounds for difference of opinion, and (3) materially advancing the

7    termination of the litigation—must be met to certify a question for interlocutory appeal.  *See*

8    *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).

9                                        **DISCUSSION**

10          For the reasons that follow, Diaz has identified no "controlling question of law,"

11   appropriate for immediate appellate review so his motion is denied.  *See id.*

12          Diaz characterizes the purported controlling question of law as "whether a district court

13   reviewing a jury's award of emotional distress damages may base its determination of what

14   constitutes the maximum amount supported by the evidence in material part upon a comparative

15   analysis of emotional distress verdicts issued by other juries in other jurisdictions in prior cases

16   involving somewhat similar facts."  Motion to Certify for Interlocutory Appeal ("Mot.") [Dkt. No.

17   333] 6.  At points in his briefing, he refined this somewhat; as he phrased in it in his reply, the

18   question is whether "a district court's calculation of the *maximum* amount of compensatory

19   damages supported by the evidence may be based on the damages awards that different juries in

20   different cases found *sufficient* to compensate the plaintiffs in those other cases."  Reply ISO Mot.

21   ("Reply") [Dkt. No. 345] 1 (emphasis in original); *see also* Mot. 7 (framing the question this way).

22   No matter which way the issue is framed, it was not a controlling question of law on which the

23   Prior Order depended.

24          In the Prior Order, I explained that "[i]n determining whether damages are excessive, the

25   court 'afford[s] great deference to a jury's award of damages and will uphold the award unless it is

26   clearly not supported by the evidence or only based on speculation or guesswork.'"  Prior Order

27   14 (quoting *Williams v. Gaye*, 895 F.3d 1106, 1128 (9th Cir. 2018) (internal quotation marks and

28   citations omitted)) (second alteration in Prior Order).  I explained that "[t]he remittitur "must

United States District Court
Northern District of California

2

reflect the maximum amount sustainable by the proof.'" *Id.* (quoting *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (internal quotation marks and citation omitted)). I explained that remittiturs of state law claims used state law; California law gave "[t]rial courts have broad discretion to remit excessive damages and sit as 'independent trier[s] of fact' when doing so." *Id.* (quoting *Lane v. Hughes Aircraft Co.*, 22 Cal. 4th 405, 412 (2000), *as modified* (May 10, 2000) (internal quotation marks and citation omitted)) (second alteration in Prior Order). And in assessing whether the compensatory damages award should be remitted, I explained that emotional distress damages were "peculiarly within a jury's ken." *Id.* 27 (quoting *Holzhauer v. Golden Gate Bridge Highway & Transportation Dist.*, No. 13-CV-02862-JST, 2017 WL 3382316, at *2 (N.D. Cal. Aug. 7, 2017), *aff'd*, 743 F. App'x 843 (9th Cir. 2018) (citations omitted)).

Then, I turned to the compensatory damages remittitur analysis. That analysis, I explained, was based on "[a] careful evaluation of the facts of this case, the legal principles underlying judicial review of emotional damages, and comparable cases." *Id.* I began with "why Diaz is entitled to a relatively large emotional distress damages award." *Id.* There, I focused solely on the facts presented to the jury, explaining the evidence of racial harassment and the effects on Diaz. *See id.* 27–29. Then, I found that, "[t]his all said, and recognizing the great deference owed to the jury's verdict, I am left with the 'firm conviction,' that the jury's compensatory award was excessive." *Id.* 29 (citation omitted). I, again, focused solely on the facts presented to the jury. *See id.* 29–30. The future damages, I explained, were mostly unsupported by the evidence, warranting a "steep reduction." *Id.* 29. A less comparatively steep reduction in past damages, I said, was also necessary. Here, for the first time, came a mention of other cases; but, notably, it was just to mention that "several *factors* that other courts *have found significant* weigh in favor of a reduction." *Id.* 29–30 (emphasis added). I then again referenced, first, the length of Diaz's time at the factory and, second, the lack of physical illness or injury.

Only at that point, with all of that analysis focused entirely on the evidence from this particular trial, did I turn to other cases. To do so, I primarily compared the facts here to the facts in *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014), and *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493 (9th Cir. 2000). Those cases, I said, had things "to

*teach about these facts*" and "shed light" on them.  Prior Order 30–31 (emphasis added).  I recognized that neither was on all fours with this case.  *See id.  Turley*, I concluded, "help[ed] *illustrate* two lessons"—that a large compensatory award was justified and that Diaz's was an outlier.  *Id.* 30 (emphasis added).  *Passantino* helped show much the same.  *See id.* 32–33.  Next, I noted that the "parties point[ed] to other cases, but I find them less useful for various reasons" that I explained.  *See id.* 33–35.  And finally, I explained why "samples" of other damages awards that Tesla prepared did not change the analysis.  *Id.* 35.

As this all makes clear, Diaz's purported question of law was not "controlling."  My analysis of the compensatory damages zeroed in on the particular facts elicited at trial.  The analysis of future damages, in fact, was *entirely* focused on the (lack of) evidence at trial.  *See* Prior Order 27–29.  It is of course true that, in analyzing past damages, I *did* compare this case in detail to *Turley* and *Passantino*.  But Diaz makes more of that comparison than is there.  To start, even that analysis began with and focused on the particulars of what happened to Diaz.  *See id.* 27–30.  And while I then compared and contrasted these other decisions, I did not do so with an eye toward them dictating the outcome or with the belief that they should—and certainly not with the view, as Diaz asserts in his briefing, that they imposed a "cap" on the amount of damages he could recover.  *See* Reply 1, 3, 4, 5, 11.  I did, instead, what courts in the common-law tradition do: I looked to the accumulated wisdom of past cases to see what could be learned about this one.  That is not only how I explicitly discussed them, it is substantively how I applied them.  What was useful about those cases was how other judges looked at somewhat similar facts.

This alone shows that Diaz has not identified a controlling question of law.  A few other aspects of the Prior Order reinforce that conclusion.  First, as I explained, "Tesla relies heavily on a principle the Ninth Circuit has occasionally articulated: that, generally, 'courts are required to maintain some degree of uniformity in cases involving similar losses.'"  Prior Order 34 n.14.  (quoting *Shaw v. United States*, 741 F.2d 1202, 1209 (9th Cir. 1984) (citation omitted).  I stated that it was unclear that this principle really did apply.  And I went on to say that "[i]n all events, this Order does examine cases that shed light on this one—as other district courts and courts of appeals invariably do in these cases—and even *Shaw* emphasized that '[e]ach case stands on its

United States District Court
Northern District of California

own facts," *Shaw*, 741 F.2d at 1209, so nothing here turns on whether the principle is as strict as Tesla insists." *Id.* Diaz's argument is, in some ways, the other side of this coin: He argues that much turns on how strictly courts should hew to past cases. For purposes of the Prior Order, my answer is the same to him as it was to Tesla then: No matter how strong or weak that principle, every case would still stand on its own facts and other cases are relevant in the same way they always are in our system of common law.

I also disagree with Diaz that anything turns on formulating the question as whether *unremitted* jury awards that are *upheld* on appeal should influence the size of the remittitur. *See, e.g.*, Reply 6–9. To begin, I did not so hold—as the recitation of the Prior Order so far makes clear. I take Diaz's point that upholding an unremitted award is not the same as determining what the size of the remittitur should be. *See id.* And courts should proceed cautiously when relying on such decisions. But, for the reasons explained in the Prior Order and again here, I continue to believe that there are lessons to be learned from the cases that I cited—even if they are lessons that should be applied (as they were) in recognition that every case stands on its own facts and that upholding an award is different than remitting it. Finally, I also take Diaz's point that I, several times, referenced that past cases helped show both that he was entitled to a large compensatory award and that the jury's award here was quite high. But that does not transform that consideration into one that overbore all others or that altered the amount I concluded he was entitled to. It was, again, just to make the relatively uncontroversial point that there are lessons to be learned from the way other judges have approached similar problems.

I do not dispute that there are potential legal questions to be answered about the law of remittiturs (as there are for any issue). Diaz cites, for example, decisions from other circuits laying down more concrete rules about comparisons to cases that have not been adopted in this circuit. *See* Reply 8 (collecting citations). But he has not identified any such question on which the Prior Order depends. This ground is, accordingly, not appropriate for interlocutory appeal. *See ICTSI*, 22 F.4th at 1130.

While this Order rests on the failure of Diaz to identify a controlling issue of law, I will briefly address the other two requirements to certify a matter for interlocutory appeal. I am firmly

1  convinced that the damages award (compensatory and punitive) was excessive.  If I saw

2  substantial grounds for a difference of opinion, I would not have issued the remittitur.  And I have

3  no doubt that certifying this issue would further delay resolution of a case that is already five years

4  old.  No factor suggests that interlocutory appeal is appropriate.

### CONCLUSION

6          The motion to certify for interlocutory appeal is DENIED.  Diaz shall file a notice on the

7  docket within 14 days stating whether he accepts or rejects the remittitur and I will take

8  appropriate action as laid out in the Prior Order.

9          **IT IS SO ORDERED.**

10  Dated: June 7, 2022



William H. Orrick
United States District Judge

United States District Court
Northern District of California