QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kathleen M. Sullivan (CA Bar No. 242261)
  kathleensullivan@quinnemanuel.com
  Daniel C. Posner (CA Bar No. 232009)
  danposner@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Asher Griffin (appearance *pro hac vice*)
  ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (appearance *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

*Attorneys for Defendant Tesla, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OWEN DIAZ,<br><br>        Plaintiff,<br><br>    vs.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.,<br><br>        Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**DEFENDANT TESLA INC.'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL ON LIABILITY AND DAMAGES**<br><br>Date: December 7, 2022<br>Time: 2 p.m.<br>Place: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION ................................................................................................................. I

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................2

LEGAL STANDARD ...................................................................................................................3

ARGUMENT ................................................................................................................................4

I.     TESLA IS ENTITLED TO A NEW TRIAL ON BOTH LIABILITY AND
       DAMAGES UNDER *GASOLINE PRODUCTS* ................................................................4

       A.     The Liability And Damages Cases Here Are Inextricably Interwoven .....................5

              1.     Liability And Compensatory Damages Are Inextricably Interwoven
                     Here ................................................................................................................6

              2.     Liability And Punitive Damages Are Inextricably Interwoven Here.............8

       B.     Tesla Would Prejudiced By A Partial Retrial On Damages Alone ............................9

II.    TESLA'S MOTION FOR NEW TRIAL ON BOTH LIABILITY AND
       DAMAGES UNDER *GASOLINE PRODUCTS* IS TIMELY AND PRESERVED ............12

CONCLUSION ............................................................................................................................14

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Akey v. Placer Cnty.*,
   2019 WL 5102241 (E.D. Cal. Oct. 11, 2019)............................................................. 4, 11

*Allied Chem. Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980) ............................................................................................................ 16

*Alvarado v. Fed. Express Corp.*,
   2008 WL 744819 (N.D. Cal. Mar. 18, 2008) .................................................................... 8

*Antoine v. Cnty. of Sacramento*,
   583 F. Supp. 2d 1174 (E.D. Cal. 2008) ........................................................................... 11

*Bryant v. Mattel, Inc.*,
   2010 WL 11463864 (C.D. Cal. Oct. 29, 2010) ................................................................. 6

*Cardinal v. Buchnoff*,
   2010 WL 3339509 (S.D. Cal. Aug. 23, 2010) ................................................................ 13

*City of Pomona v. SQM N. Am. Corp.*,
   801 F. App'x 488 (9th Cir. 2020) ....................................................................................... 5

*Gasoline Products Co., Inc. v. Champlin Refining Co.*,
   283 U.S. 494 (1931) ............................................................................ 4, 5, 6, 7, 11, 12, 15, 16

*Gete v. I.N.S.*,
   121 F.3d 1285 (9th Cir. 1997) ......................................................................................... 16

*Grisham v. Philip Morris, Inc.*,
   670 F. Supp. 2d 1014 (C.D. Cal. 2009) ........................................................................... 12

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*,
   791 F. Supp. 2d 1026 (D.N.M. 2011) ............................................................................. 11

*Hardeman v. Monsanto Co.*,
   997 F.3d 941 (9th Cir. 2021) ........................................................................................... 10

*Holt v. Pennsylvania*,
   2015 WL 4944032 (E.D. Pa. Aug. 19, 2015), *aff'd in part, rev'd in part, and remanded
   on other grounds*, 683 F. App'x 151 (3d Cir. 2017) ............................................. 7, 11, 17

*Hurley v. Atl. City Policy Dep't*,
   933 F. Supp. 396 (D.N.J. 1996), *aff'd*, 174 F.3d 95 (3d Cir. 1999) ................................. 7

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   2008 WL 282376 (N.D. Cal. Jan. 28, 2008) ................................................................... 13

*Johnson v. Riverside Healthcare Sys., LP*,
   534 F.3d 1116 (9th Cir. 2008) ........................................................................................... 8

*Kortan v. Cal. Youth Auth.*,
   217 F.3d 1104 (9th Cir. 2000) ........................................................................................... 8

*Manatt v. Bank of Am.*,
   339 F.3d 792 (9th Cir. 2003) ............................................................................................. 8

*Mason v. Texaco, Inc.*,
   948 F.2d 1546 (10th Cir. 1991) ....................................................................................... 17

*Masson v. New Yorker Magazine, Inc.*,
   832 F. Supp. 1350 (N.D. Cal. 1993) ................................................................................. 9

-i-   Case No. 3:17-cv-06748-WHO
TESLA'S MOTION FOR NEW TRIAL ON LIABILITY AND DAMAGES

*Norfolk S. R. Co. v. Ferebee*,
    238 U.S. 269 (1915) .............................................................................................................. 12
*Noyes v. Kelly Servs., Inc.*,
    349 F. App'x 185 (9th Cir. 2009) ......................................................................................... 14
*Prendeville v. Singer*,
    155 F. App'x 303 (9th Cir. 2005) ........................................................................................... 4
*Pumphrey v. K.W. Thompson Tool Co.*,
    62 F.3d 1128 (9th Cir. 1995) .............................................................................................. 4, 5
*Simone v. Golden Nugget Hotel & Casino*,
    844 F.2d 1031 (3d Cir. 1988) .......................................................................................... 14, 15
*Spence v. Bd. of Educ.*,
    806 F.2d 1198 (3d Cir. 1986) .................................................................................... 9, 11, 17
*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ....................................................................................................... 10, 13
*United Air Lines, Inc. v. Wiener*,
    286 F.2d 302 (9th Cir. 1961) ........................................................................................... 11, 15
*United States ex rel. Greenhalgh v. F.D. Rich Co.*,
    520 F.2d 886 (9th Cir. 1975) ................................................................................................ 16
*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
    865 F. Supp. 2d 1 (D.D.C. 2011) ......................................................................................... 14
*United States v. Awadallah*,
    401 F. Supp. 2d 308 (S.D.N.Y. 2005), *aff'd*, 436 F.3d 125 (2d Cir. 2006) ............................. 12
*United States v. Francis*,
    170 F.3d 546 (6th Cir. 1999) ................................................................................................ 12
*United States v. Pollard*,
    850 F.3d 1038 (9th Cir. 2017) .............................................................................................. 15
*Vaughn v. CNA Cas. of Cal.*,
    2008 WL 11339602 (C.D. Cal. Aug. 29, 2008) ...................................................................... 9
*Walls v. Cent. Contra Costa Transit Auth.*,
    653 F.3d 963 (9th Cir. 2011) ................................................................................................ 16
*Zender v. Vlasic Foods, Inc.*,
    91 F.3d 158 (9th Cir. 1996) .................................................................................................. 11

**Statutory Authorities**

28 U.S.C. § 1292(b) ....................................................................................................................... 3
42 U.S.C. § 1981 ............................................................................................................................ 2

**Rules and Regulations**

Fed. R. Civ. P. 50 .......................................................................................................................... 2
Fed. R. Civ. P. 59 ................................................................................................................. i, 2, 14
Fed. R. Evid. 803(8)(C) ............................................................................................................... 11

**Additional Authorities**

Restatement (Second) of Torts § 908 .......................................................................................... 11

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on December 7, 2022, at 2:00 PM, in Courtroom 2, 17th Floor, United States District Court for the Northern District of California, at 450 Golden Gate Avenue, San Francisco, California, before the Honorable William H. Orrick, defendant Tesla, Inc. DBA Tesla Motors, Inc. ("Tesla") shall, and hereby does, move the Court for a new trial pursuant to Fed. R. Civ. P. 59, as more fully set forth below.

This motion is based on the memorandum of points and authorities below, the trial record, all pleadings and papers on file in this action, such matters as are subject to judicial notice, and all other matters or arguments that may be presented in connection with this motion.

**RELIEF REQUESTED**

Tesla requests a new trial, on liability and damages, as to each of plaintiff Owen Diaz's claims.

# INTRODUCTION

The Supreme Court in *Gasoline Products* established that the right to a fair jury trial under the Seventh Amendment requires full retrials unless the issue to be retried is sufficiently distinct and separable from the others decided by the original jury.  Here, both the evidence and questions for the jury on damages overlap and inextricably intertwine with those for liability.  A damages-only retrial would thus violate the Seventh Amendment, so the Court should order a new trial on all issues.

Compensatory and punitive damages here are inextricably intertwined with liability.  Plaintiff Owen Diaz's compensatory damages claim is solely for emotional distress, which depends on the frequency and severity of the racial incidents he allegedly experienced.  These are the same questions that control liability for his hostile work environment claim.  Punitive damages also explicitly require consideration of the same evidence that underpins liability, such as evidence as to Tesla's supposed "reprehensibility."  Because Mr. Diaz's theories of liability and damages inextricably overlap, there is no practicable manner by which these questions can be separated without causing unconstitutional injustice.

Considering the evidence to be introduced at the retrial lays bare the impossibility of separating damages from liability.  For example, to determine the amount of compensatory damages Mr. Diaz deserves for his purported emotional distress, a second jury must make findings about the very same conduct the first jury credited in finding liability, such as how frequently Mr. Diaz was supposedly subjected to racial slurs.  Similarly, to evaluate reprehensibility for purposes of punitive damages, the second jury will be asked whether and how often Mr. Diaz reported conduct to his managers and how they responded.  Because the damages questions turn on the same evidence the first jury considered in determining liability, *Gasoline Products* requires a retrial on all issues.

While Tesla need not show prejudice because *Gasoline Products* establishes a presumption in favor of full retrials, a partial retrial would certainly prejudice Tesla.  If the Court conducts a new trial on damages alone, the second jury will be instructed that another jury already determined that the same evidence it will consider warranted a finding of liability and punitive damages.  This will unfairly prejudice Tesla by skewing the jury's interpretation of the evidence in favor of Mr. Diaz—

because if the first jury credited it, then why shouldn't it too. Tesla thus would not receive a fair trial.

Finally, Tesla's motion is timely and properly preserved. Tesla expressly sought a new trial on liability as well as damages in its post-trial motion under Rule 59, and then promptly raised its concerns about *Gasoline Products* shortly after Mr. Diaz rejected the remittitur and the Court ordered a retrial on damages. Tesla thus has not waived its Seventh Amendment right to a new trial. Nor does this motion prejudice Mr. Diaz, as Tesla has offered to allow Mr. Diaz the opportunity to elect anew between the Court's generous $15 million remittitur and the new trial on all issues to which Tesla is entitled. The Court should grant Tesla's Motion and order a new trial on all issues.

## BACKGROUND

In October 2021, a jury found that Tesla had subjected Mr. Diaz to a racially hostile work environment in violation of 42 U.S.C. § 1981, and also found Tesla liable for negligent supervision or retention under California state law. Dkt. 291. That jury awarded Mr. Diaz $6.9 million in compensatory damages and $130 million in punitive damages. *Id.*

Following the verdict, Tesla moved for judgment as a matter of law and for a new trial and/or remittitur under Federal Rules of Civil Procedure 50 and 59. Dkt. 317. In its motion for a new trial, Tesla requested "a new trial as to each of Diaz's claims," and in the alternative, "a new trial or remittitur with respect to the jury's damages award." *Id.* at i.

In its order resolving Tesla's post-trial motions, the Court concluded that the jury's compensatory damages award was "excessive" and that the maximum amount supported by the evidence was $1.5 million. Dkt. 328 at 2, 26-27. The Court also concluded that the Constitution permitted a punitive damages award of no more than $13.5 million. *Id.* at 2, 37. Accordingly, the Court conditionally denied Tesla's motion for a new trial "based on Diaz accepting a remittitur to $1.5 million in compensatory damages and $13.5 million in punitive damages." *Id.* at 43. The Court afforded Mr. Diaz 30 days to decide whether to accept or reject the remittitur. *Id.*

Mr. Diaz did not make an election within 30 days, and instead filed a motion for leave to appeal under 28 U.S.C. § 1292(b), Dkt. 333, which the Court denied, Dkt. 346. The Court gave Mr. Diaz 14 additional days to make an election as to remittitur. Dkt. 346 at 6. At the end of that period,

-2-   Case No. 3:17-cv-06748-WHO
TESLA'S MOTION FOR NEW TRIAL ON LIABILITY AND DAMAGES

Mr. Diaz rejected the remittitur. Dkt. 347. Thereafter, the Court granted a new trial "solely on damages" and set a scheduling conference for roughly two weeks later. Dkt. 348.

At the scheduling conference, Tesla explained that, following Mr. Diaz's rejection of the remittitur, it was compelled to raise an issue regarding whether a retrial limited to damages would violate its rights under the Seventh Amendment to the United States Constitution, under the Supreme Court's seminal decision in *Gasoline Products* and its progeny. July 12, 2022 Hearing Tr. at 7. Specifically, Tesla raised its concern that, in light of Mr. Diaz's rejection of the remittitur, a new trial on damages alone "would deprive Tesla of [a] fair and just retrial," as the "liability issue about hostile environment" involved the "same issue" as compensatory damages and punitive damages. *Id.* at 8-9. The Court directed the parties to discuss the issue further, address it at a subsequent case management conference, and brief it if necessary. *Id.* at 11-12.

The parties have met and conferred multiple times about the scope of a second trial. Tesla sought to reach agreement on excluding certain evidence from the second trial that was not tied to any injury personal to Mr. Diaz, among other things, in an effort to construct a distinct damages-only trial. Mr. Diaz has not agreed to exclude any of that evidence, nor made any other proposal regarding how to ensure the evidence presented at the damages retrial is distinct and separable from the evidence of liability presented at the first trial.[1]

To alleviate any potential unfairness to Mr. Diaz, Tesla also stated it would not object to the Court offering Mr. Diaz another opportunity to make his new trial election with the knowledge that any retrial would include liability and damages. Mr. Diaz has not responded to that proposal.

## **LEGAL STANDARD**

A court may not order a partial trial except where "it clearly appears that the issue to be retried is so distinct and separable from others that a trial of it alone may be had without injustice." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133 (9th Cir. 1995) (quoting *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931)). Thus, in the case of a potential

---

[1] The parties did agree, however, that the question of whether Tesla was a joint employer for purposes of Section 1981 need not be addressed in a second trial. Neither party believes that a damages retrial would necessarily implicate *every* liability issue.

retrial on damages following a plaintiff's rejection of remittitur, a "retrial must be on both" liability and damages "where damages are 'so interwoven with . . . liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty.'" *Prendeville v. Singer*, 155 F. App'x 303, 305 (9th Cir. 2005) (quoting *Gasoline Products*, 283 U.S. at 500); *see also Akey v. Placer Cnty.*, 2019 WL 5102241, at *4 (E.D. Cal. Oct. 11, 2019) (requiring retrial on both damages and liability because "there is significant factual overlap between the questions a jury must answer relating to liability and damages").

## ARGUMENT

### I. TESLA IS ENTITLED TO A NEW TRIAL ON BOTH LIABILITY AND DAMAGES UNDER *GASOLINE PRODUCTS*

The liability and damages questions here are inextricably interwoven and thus require a new trial on all issues under established Seventh Amendment law. The hostile environment liability issues deal with the exact same set of facts that govern the damages issues, namely, the scope and nature of the alleged conduct as it supposedly caused emotional distress to Mr. Diaz and the adequacy of Tesla's responses as they allegedly reflected any reprehensibility on Tesla's part. This overlap requires retrial of both liability and damages under *Gasoline Products*.

In *Gasoline Products*, the U.S. Supreme Court held that the Seventh Amendment right to fair trial "permits a partial new trial" solely on damages and not liability only if "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." 283 U.S. at 500. If, on the other hand, "the question of damages . . . is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty," a partial retrial "would amount to a denial of a fair trial" and be impermissible. *Id.* at 500. The Ninth Circuit has long followed the strong presumption against partial retrials set forth in *Gasoline Products*. *See, e.g.*, *Pumphrey*, 62 F.3d at 1133-34 (upholding trial on all issues under *Gasoline Products*, not a liability-only retrial); *City of Pomona v. SQM N. Am. Corp.*, 801 F. App'x 488, 491 (9th Cir. 2020) (new trial required on all issues where liability and damages both "require[d] a determination of the extent to which the harm to Pomona's water supply was caused by SQM's fertilizer"); *Prendeville*, 155 F. App'x at 305 (ordering retrial

on liability and damages, in part because "[a]ny retrial of damages alone would also have necessarily encompassed all the same evidence as a trial on liability"); *see also Bryant v. Mattel, Inc.*, 2010 WL 11463864, at *7 (C.D. Cal. Oct. 29, 2010) (concluding that *Gasoline Products* required retrial of inseparable issues, in part because "the second jury will examine the same evidence examined by the first jury").

Here, *Gasoline Products* applies and Mr. Diaz cannot overcome the strong presumption in favor of a new trial on both liability and damages.

### A. The Liability And Damages Cases Here Are Inextricably Interwoven

This is exactly the case that *Gasoline Products* envisaged, where the question of damages is so inextricably "interwoven" with that of liability that a retrial on damages alone would amount to an unconstitutional denial of a fair trial. Mr. Diaz's theories of liability and damages involve essentially identical evidence. The liability case here under Section 1981 turned on the supposed existence of racial slurs and symbols at Tesla's Fremont factory so ***systemic and pervasive*** as to create a racially hostile workplace environment. Isolated minor incidents could not suffice. Moreover, the compensatory damages case turned solely on intangible, noneconomic emotional distress. And without any quantifiable economic loss of any kind, Mr. Diaz argued to the first jury that the amount of compensatory damages to which he was entitled was directly correlated to the supposedly systemic and pervasive ***extent, degree and magnitude*** of the alleged racial incidents at the factory. Finally, the overwhelming bulk of the first jury's damages award ($130 million out of $137 million) consisted of punitive damages, which again turned on the ***extent, degree and magnitude*** of the supposedly pervasive racial incidents—the key factor in any purported "reprehensibility" under the Court's instructions. In short, the liability and damages here all turn on exactly the same thing: the purported ***extent, degree and magnitude*** of racial slurs and symbols Mr. Diaz encountered at the Fremont factory.

For these reasons, a new trial on both liability and damages is required under *Gasoline Products*. In *Gasoline Products*, the Court required a retrial because the jury must know the scope of the contract and nature and timing of the breach in order to assess damages, but those were not known from the prior jury's verdict. 283 U.S. at 499-500. So too here, the second jury must

determine the pervasiveness of the alleged incidents and the adequacy of Tesla's response—the identical issues as to damages that the first jury determined as to liability. Any instruction by the Court that the first jury already found pervasive or systemic racially hostile conduct thus would necessarily overlap and potentially predetermine the second jury's verdict as to damages.

In the comparable context of Title VII litigation, courts have often found full retrials necessary where damages and liability are interwoven. *See, e.g.*, *Holt v. Pennsylvania*, 2015 WL 4944032, at *35 (E.D. Pa. Aug. 19, 2015), *aff'd in part, rev'd in part, and remanded on other grounds*, 683 F. App'x 151 (3d Cir. 2017); *Hurley v. Atl. City Policy Dep't*, 933 F. Supp. 396, 426 (D.N.J. 1996), *aff'd*, 174 F.3d 95 (3d Cir. 1999). This case is sharply unlike the standard damages retrial where an issue of liability—*e.g.*, contract breach, patent infringement, or antitrust violation—is cleanly separable from the issue of what monetary amount might compensate a purely ***economic*** injury. And the Seventh Amendment problem here arises as to both compensatory and punitive damages.

### 1. Liability And Compensatory Damages Are Inextricably Interwoven Here

The overlap between liability and compensatory damages here arises because, to establish a racially hostile work environment under Section 1981, a plaintiff must show "(1) [he] was subjected to verbal or physical conduct because of [his] race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently ***severe or pervasive*** to alter the conditions of [his] employment and create an abusive work environment." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (alterations in original) (emphasis added) (quoting *Manatt v. Bank of Am.*, 339 F.3d 792, 797 (9th Cir. 2003)). "In considering whether the discriminatory conduct was 'severe or pervasive,' we look to 'all the circumstances, including ***the frequency*** of the discriminatory conduct; ***its severity***; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (internal quotation marks omitted) (emphases added) (quoting *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000)). Thus, as the Court instructed the jury in the first trial, liability here under Section 1981 turns on whether Mr. Diaz was subjected to "slurs, insults, jokes, or other verbal comments or

-6-  Case No. 3:17-cv-06748-WHO
TESLA'S MOTION FOR NEW TRIAL ON LIABILITY AND DAMAGES

1  physical contact or intimidation of a racial nature" that were "sufficiently **severe or pervasive** to alter the conditions of plaintiff's employment and create a racially abusive or hostile work environment." Dkt. 28 at 47 (Instruction 26) (emphasis added).

Likewise, Mr. Diaz's compensatory damages case turns entirely on the **extent, degree and magnitude** of the alleged racial incidents. This is a case solely of emotional injury,[2] and in such a case, "[t]he **severity or pervasiveness** of the conduct" is necessarily "probative evidence from which a jury may infer the nature and degree of emotional injury suffered," *Alvarado v. Fed. Express Corp.*, 2008 WL 744819, at *3 (N.D. Cal. Mar. 18, 2008) (emphasis added). So long as Mr. Diaz does not agree to limit the damages retrial to physical symptoms—such as loss of sleep, effect on marital relations, family activities and work performance—the question of Tesla's liability and Mr. Diaz's damages are inseparable, and a retrial on damages alone would not be a constitutional fair trial.

Under similar circumstances, courts assessing the scope of retrials have repeatedly recognized the interwoven nature of liability and damages issues  *See, e.g.*, *Spence v. Bd. of Educ. of the Christina Sch. Dist.*, 806 F.2d 1198, 1201-02 (3d Cir. 1986) (affirming order of new trial on all issues following remittitur, as "emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct," and because request for punitive damages required consideration of "all the facts leading up to defendants' decision to transfer [the plaintiff]"); *Vaughn v. CNA Cas. of Cal.*, 2008 WL 11339602, at *4 (C.D. Cal. Aug. 29, 2008) (holding, in discrimination case, that retrial must be on liability and damages because, "[p]articularly for general damages, the jury would have to be informed of liability conduct in order to assess the impact on Vaughn"); *Masson v. New Yorker Magazine, Inc.*, 832 F. Supp. 1350, 1377 (N.D. Cal. 1993) (concluding the damages and liability issues on defamation claim were interwoven because jury could not determine damages "without first considering liability, including the nature of plaintiff's

---

[2] It is undisputed that Mr. Diaz suffered no economic injury and alleges solely noneconomic emotional distress: he chose to leave Tesla, found other work shortly after leaving Tesla, was happy and fulfilled in his new job, and his own witnesses said he was thereafter back to his old self. And he offered no proof of medical expenses at the time of the alleged incidents; he retained his medical expert only three years later and solely for purposes of this litigation.

reputation before the article was published, how the quotations defamed him by damaging that reputation," and "the falsity of the quotations"). The circumstances here compel the same result, for the only way the second jury can find compensatory damages is to find that racial incidents at the Fremont factory were so systemic and pervasive as to cause Mr. Diaz emotional injury.

### 2. Liability And Punitive Damages Are Inextricably Interwoven Here

The inextricable overlap between liability and damages is even clearer for the punitive damages component of the case. As the Court instructed the jury at the first trial, punitive damages may be awarded based on the "harshness or severity" of the defendant's conduct in an amount that may turn on "the reprehensibility" of the defendant's conduct. Dkt. 280 at 41 (Instruction 40). And in determining whether a punitive damages award satisfies the "reprehensibility" requirement, the Ninth Circuit employs a five-factor test that considers "whether '[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct *involved repeated actions* or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.'" *Hardeman v. Monsanto Co.*, 997 F.3d 941, 972-73 (9th Cir. 2021) (emphasis added) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

Here, as the Court already recognized, Mr. Diaz proved no physical harm and proved at most that Tesla officials acted negligently or recklessly, not intentionally. Dkt. 328 at 38-40. Moreover, although Mr. Diaz depended on Tesla for income while employed there, *id.* at 39, he readily found work after leaving Tesla. Thus, the inquiry into whether "the conduct involved *repeated actions*" took on a dominant role in the jury's punitive damages calculus. But that inquiry is just the same as the "systemic or pervasive" conduct inquiry for liability purposes by another name.

Even outside the hostile environment context, many courts have found that a partial retrial of punitive damages is particularly inappropriate because "a punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case. It is part and parcel of a liability determination and does not have any independent being until a jury has decided, based on the preponderance of the evidence, that not only was a defendant's conduct negligent, but

that it was gross, willful, wanton or malicious." *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 791 F. Supp. 2d 1026, 1046 (D.N.M. 2011).

Thus, federal law "generally require[s] that the same jury determine both **liability for, and the amount of, punitive damages** because those questions are so interwoven." *Zender v. Vlasic Foods, Inc.*, 91 F.3d 158, at *5 (9th Cir. 1996) (unpublished) (emphasis added) (citing *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961) (holding issues of damages and liability were interwoven where punitive damages "depend[ed] on degree of culpability of the defendant")); *see also Spence*, 806 F.2d at 1202 (Section 1983); *Holt v. Pennsylvania*, 2015 WL 4944032, at *35 (Title VII, Section 1983); *Akey v. Placer Cnty.*, 2019 WL 5102241, at *4 (custody battle lawsuit); *Antoine v. Cnty. of Sacramento*, 583 F. Supp. 2d 1174, 1176 (E.D. Cal. 2008) (noting in civil rights action against prison officials that "the amount necessary to punish a defendant or make an example of him would of necessity depend upon what conduct the jury intends to punish" and that the "amount of punitive damages to be awarded . . . can depend, at least in part, on the amount of compensatory damages found"), *rev'd and remanded on other grounds*, 400 F. App'x 205 (9th Cir. 2010).

### B. Tesla Would Prejudiced By A Partial Retrial On Damages Alone

If the Court concludes that the second jury's determination of damages is inextricably intertwined with Tesla's liability, that should be the end of the analysis under *Gasoline Products*, for a partial retrial would create "confusion and uncertainty" that "amount[s] to a denial of a fair trial" and works "injustice." *Gasoline Products*, 283 U.S. at 500 (citing *Norfolk S. R. Co. v. Ferebee*, 238 U.S. 269, 274 (1915) ("An examination of all the evidence relating to the injury and its cause and the conduct of the plaintiff, as well as of defendant's agents, might show that it is so interwoven with that relating to damage that to fairly ascertain what is a just compensation the plaintiff should receive, if he is entitled to recover at all, can best be determined by trying the whole case before one judge and one jury instead of 'splitting it up' between different judges and different juries." (citation omitted))); *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1037 n.14 (C.D. Cal. 2009) ("There are additional due process considerations at stake 'where a tangled or complex fact situation would make it unfair to one party to determine damages apart from liability.'" (quoting *Pryer v.*

*C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001))). Tesla has no obligation to demonstrate "prejudice."

Even if Tesla were required to demonstrate prejudice, however, it plainly can do so here. ***First,*** there is a substantial risk that the second jury will credit Mr. Diaz's damages evidence if it is instructed that materially identical evidence led the first jury to find liability. This "bolstering" concern—that a jury will lend undue weight or greater credence to evidence based on factors other than its own judgment of the evidence—"go[es] to the heart of a fair trial." *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999). The risk of unfair "bolstering" is a well-recognized source of potential prejudice in myriad contexts. For example, the disclosure of grand jury findings to trial jurors is strictly limited because "the trial jury may well defer to what they will perceive as the grand jurors' determination . . . rather than making its own determination." *United States v. Awadallah*, 401 F. Supp. 2d 308, 318-19 (S.D.N.Y. 2005), *aff'd*, 436 F.3d 125 (2d Cir. 2006). Courts are also "generally hesitant to admit other judicial opinions or statements into evidence, even when relevant, because judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *Cardinal v. Buchnoff*, 2010 WL 3339509, at *2 (S.D. Cal. Aug. 23, 2010) (quotation marks and citation excluded).

Similarly, this Court previously excluded evidence of federal agency opinions on liability because it was "very concerned about the undue weight or even de facto collateral estoppel effect that a jury would accord to the FTC's liability opinion." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2008 WL 282376, at *4 (N.D. Cal. Jan. 28, 2008); *see also* Steven P. Grossman & Stephen J. Shapiro, *The Admission of Government Fact Findings Under Federal Rule of Evidence 803(8)(C): Limiting the Dangers of Unreliable Hearsay*, 38 U. Kan. L. Rev. 767, 778-79 (1990) ("Jurors learning that a presumably objective public official has reached a certain conclusion after hearing evidence similar to what they have heard may have difficulty reaching an opposite conclusion. Further, the jury is likely to deliberate on the correctness of the previous fact finding, rather than retaining the open-minded, first impression approach to the issues our system prefers.").

***Second***, the concern about bolstering is especially acute in a case of pure emotional distress and punitive damages like the one here.  Emotional distress damages are generally calculated based on a jury's assessment of the pervasiveness and severity of the conduct at issue.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003) ("In many cases in which compensatory damages include an amount for emotional distress, such as humiliation or indignation aroused by the defendant's act, there is no clear line of demarcation between punishment and compensation . . . ." (quoting Restatement (Second) of Torts § 908 cmt. c (1977))).  Similarly, punitive damages are intended to be calculated at a level that would "punish a defendant for egregious behavior." *Noyes v. Kelly Servs., Inc.*, 349 F. App'x 185, 187 (9th Cir. 2009).

Thus here, unlike in a case involving contract damages or other damages claims which a second jury might calculate dispassionately via spreadsheets, balance sheets, or expert damages testimony distinct from the evidence the first jury considered in finding liability, the second jury's assessment of emotional distress and punitive damages based on a racially hostile workplace claim will necessarily involve an assessment of the severity and pervasiveness of the alleged racially hostile workplace environment at the Fremont factory. *Compare United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 865 F. Supp. 2d 1, 9 (D.D.C. 2011) (finding in a qui tam suit that the damages assessment of "the difference between what the United States paid and what it would have paid" absent fraud was not "tied to" liability findings and could be resolved by second jury), *with Simone v. Golden Nugget Hotel & Casino*, 844 F.2d 1031, 1041 (3d Cir. 1988) (affirming district court order retrying liability and damages under *Gasoline Products* based on jury's need "to assess the conduct of the" defendant "on the question of punitive damages").

Compounding this concern, a trial of damages but not liability here would invite the second jury to make unfair inferences as to what evidence the first jury found persuasive.  The verdict form from the first trial indicates the jury's findings as to the elements of liability, but there is no way to discern which evidence the jury found persuasive or which witnesses it found credible.  Thus, if the second jury is instructed that the first jury found that Tesla subjected Mr. Diaz to a racially hostile work environment and that Tesla failed to take all reasonable steps necessary to prevent Mr. Diaz from being subject to racial harassment (Dkt. 291 at 1-2), the second jury may well find

compensatory and punitive damages in amounts it never would have awarded had it assessed the liability evidence for itself.

Under these circumstances, the Seventh Amendment and *Gasoline Products* mandate a full retrial.

## II. TESLA'S MOTION FOR NEW TRIAL ON BOTH LIABILITY AND DAMAGES UNDER *GASOLINE PRODUCTS* IS TIMELY AND PRESERVED

Contrary to any arguments Mr. Diaz may raise about supposed waiver or forfeiture, Tesla's request for a new trial on both liability and damages under *Gasoline Products* is properly preserved and raised now before the Court.

***First***, Tesla expressly preserved in its post-trial motion its right to seek a new trial on liability as well as damages. In its post-trial motion for JMOL or a new trial, Tesla requested "a new trial as to each of Diaz's claims." Dkt. 317 at i; *see also* Dkt. 317-1. Tesla argued that the jury's findings that Mr. Diaz was subjected to a hostile work environment and that Tesla negligently supervised or retained Ramon Martinez were against the great weight of the evidence, and thus sought a new trial. Dkt. 317 at 6-8. Tesla argued only in the alternative that the Court should "grant new trial under Rule 59 unless Mr. Diaz accepts remittitur [of compensatory damages] to $300,000," *id.* at 12, *see id.* at 18.

***Second***, even if Tesla had not explicitly requested a new trial on liability (and it did), it would run afoul of the Seventh Amendment and the established presumption against waivers of constitutional rights were the Court to find Tesla waived its rights. Tesla's request for relief is constitutional in nature. *See United Air Lines*, 286 F.2d at 306 (noting that the *Gasoline Products* issue arises under the Seventh Amendment). Federal courts "indulge every reasonable presumption against waiver" of constitutional rights, and require that any waiver must be "knowing, voluntary, and intelligent." *United States v. Pollard*, 850 F.3d 1038, 1043 (9th Cir. 2017) (citation omitted).[3] "Such a waiver should not be implied and should not be lightly found." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 969 (9th Cir. 2011).

---

[3] "The presumption against waiver of constitutional rights applies equally in the criminal and civil contexts." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 969 (9th Cir. 2011); *see also Gete v. I.N.S.*, 121 F.3d 1285, 1293 (9th Cir. 1997).

Here, the record is devoid of any evidence that Tesla knowingly and voluntarily forfeited its rights under the Seventh Amendment. To the contrary, Tesla expressly requested a new trial on all issues. Further, Tesla could not reasonably have anticipated that Mr. Diaz would make the unusual choice to reject the Court's generous remittitur of damages to $15 million in lieu of new trial, or that Mr. Diaz would maintain such a broad view of the issues to be litigated in the second trial and be unwilling to exclude categories of evidence that relate to liability rather than the personal harm Mr. Diaz suffered in this case.

**Third**, Tesla promptly identified the *Gasoline Products* issue as soon as the Court granted a new trial on damages following Mr. Diaz's rejection of remittitur. *See* Dkts. 347, 348; July 12, 2022 Hearing Tr. at 7-10. Moreover, Rule 59 expressly permits Tesla's motion for a new trial on liability and damages, even after resolution of Tesla's prior motion. "An order granting a new trial is interlocutory in nature." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). Thus, it "is subject to modification or rescission by the trial judge at any time before entry of final judgment." *United States ex rel. Greenhalgh v. F.D. Rich Co.*, 520 F.2d 886, 889 (9th Cir. 1975). Where, as here, there is no final judgment, the time limitations for filing a motion for new trial under Rule 59 are not triggered. *See* Fed. R. Civ. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment." (emphasis added)). Accordingly, Tesla's motion for new trial is timely.

**Fourth**, an order granting a new trial on liability and damages at this juncture would impose no prejudice on Mr. Diaz. Tesla has offered Mr. Diaz the opportunity to make his new trial election again, with the understanding that any new trial would be on all issues, not just damages. Other courts have afforded plaintiffs similar opportunities to accept remittitur or new trial on both liability and damages. *Prendeville*, 155 F. App'x at 305 (affirming district court's order of new trial on damages and liability after plaintiff rejected remittitur); *Spence*, 806 F.2d 1202 (affirming district court's remittitur and determination "that the liability and damage issues should be tried together on a retrial"); *Holt*, 2015 WL 4944032, at *35 ("In that liability and damages are inseparably interwoven in this case, should Plaintiff not consent to the remittitur, a new trial on both liability and damages must be held."); *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1561 (10th Cir. 1991) (ordering

1  remittitur on punitive damages award and noting that if plaintiff declined the remittitur, "there
2  should be a new trial on all issues"). Affording Mr. Diaz a new election would place him in precisely
3  the same position he was in months ago.
4      For all these reasons, Tesla's motion for new trial on both liability and damages is timely
5  and preserved.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion.

DATED: October 14, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    */s/ Kathleen M. Sullivan*
Kathleen M. Sullivan
Daniel C. Posner
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Asher Griffin (appearance *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

Alex Spiro (appearance *pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

*Attorneys for Defendant Tesla Inc.*