# EXHIBIT A

**Pages 1 - 13**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

| | |
|---|---|
| DEMETRIC DI-AZ, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| VS. ) | **NO. C 17-06748 WHO** |
| ) | |
| TESLA, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

San Francisco, California
Tuesday, July 12, 2022

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiffs:
  ALEXANDER MORRISON & FEHR LLP
  1900 Avenue the the Stars - Suite 900
  Los Angeles, California  90067
**BY: J. BERNARD ALEXANDER, ATTORNEY AT LAW**

  CALIFORNIA CIVIL RIGHTS LAW GROUP
  332 San Anselmo Avenue
  San Anselmo, California  94960
**BY: LAWRENCE A. ORGAN, ATTORNEY AT LAW**
**CIMONE A. NUNLEY, ATTORNEY AT LAW**

  ALTSHULER BERZON LLP
  177 Post Street - Suite 300
  San Francisco, California  94108
**BY: MICHAEL RUBIN, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
       United States District Court - Official Reporter

```
1    APPEARANCES:  (via videoconference, continued)

2    For Defendants:
                        QUINN, EMANUEL, URQUHART & SULLIVAN LLP
3                       865 South Figueroa Street - 10th Floor
                        Los Angeles, California   90017
4                  BY:  DANIEL C. POSNER, ATTORNEY AT LAW
                        KATHLEEN M. SULLIVAN, ATTORNEY AT LAW
5
                        QUINN EMANUEL URQUHART & SULLIVAN, LLP
6                       711 Louisiana Street - Suite 500
                        Houston, Texas   77002
7                  BY:  ASHER GRIFFIN, ATTORNEY AT LAW

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Tuesday - July 12, 2022**                                          **1:58 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  We will begin today with case number |
| 5 | 17-6748, Di-az versus Tesla, Incorporated. |
| 6 | Counsel, if you would please, state your appearance for |
| 7 | the record. |
| 8 | **MR. ALEXANDER:**  Bernard Alexander on behalf of the |
| 9 | Plaintiff. |
| 10 | **MR. POSNER:**  This is Dan Posner on behalf of the |
| 11 | Defendant, Tesla. |
| 12 | **MS. SULLIVAN:**  Good afternoon, Your Honor, Kathleen |
| 13 | Sullivan on behalf of the Defendant, Tesla.  And, Your Honor, |
| 14 | we would like to introduce our partner Asher Griffin, whose pro |
| 15 | hac you just granted.  He is also part of our Tesla team. |
| 16 | **MR. GRIFFIN:**  As Ms. Sullivan said, Asher Griffin on |
| 17 | behalf of Defendant Tesla. |
| 18 | **MR. ORGAN:**  Larry Organ on behalf of the Plaintiff, |
| 19 | Your Honor. |
| 20 | **THE COURT:**  Good afternoon to everybody.  Welcome |
| 21 | back.  And so the business of today is to set a trial date and |
| 22 | the -- I have three ideas for you. |
| 23 | I have -- I would like to set you as backup for trials on |
| 24 | November 7th, which I think would be a very reasonable -- there |
| 25 | would be a very reasonable possibility that it might go, but I |

1  don't know.  January 9th would be a second, again, backup date
2  because I have another matter set; and then I can assure you of
3  March 27th.
4          **MR. POSNER:**  This is Dan Posner.  Your Honor, that's a
5  little -- it jives quite well with what we have discussed.  We
6  had an opportunity to meet and confer; and given all the moving
7  parts, the date that I believe we were jointly prepared to
8  propose was March 20, 2023.  Given all the different trial
9  schedules and other conflicts that we have, that was the date
10 that worked for everyone involved.
11     For our side, and I think possibly for the DS side as
12 well, the November and January dates would not work because of
13 other prior trials.  In particular there is another Tesla trial
14 scheduled in January 2023 in the Northern District of
15 California.
16     So if everybody agrees still, the March date would work
17 very well for us.
18         **THE COURT:**  Okay.  Mr. Alexander or Mr. Organ?
19         **MR. ALEXANDER:**  Your Honor, with regard to the January
20 date, that would not because I have conflicts that would not
21 work.  We discussed that.
22     In a pinch it would be possible to follow your trial on
23 November 7th, but it still would be -- it still would not be
24 ideal.
25     But the January -- I'm sorry, the March 27th date would

```
 1   not be -- would -- I could work around that day.
 2          THE COURT:  Okay.  Okay.  So let's -- why don't you --
 3   let's set that as the date then.  That's fine with me.  So, it
 4   will be March 27th.  We will probably need a get-together.  Why
 5   don't we do that on February 27th at 2:00 p.m.?
 6      Is there -- I guess two questions.  One, you have a
 7   magistrate judge who is -- who has been assigned to this.  I
 8   don't know whether there is any utility in your going back to
 9   see him, but I will let you make that decision.
10      I have -- I figured -- I have learned that I can't make
11   any decisions in this case, so we will just -- we will just try
12   it again.
13      And -- but if -- if there is, you can -- you can contact
14   Judge Illman.  And is there anything else that -- that we need
15   to talk about, Mr. Alexander?
16          MR. ALEXANDER:  Your Honor, I think we are going to
17   have to talk about what parameters the Court is going to set on
18   the issues to be addressed in the -- in the retrial.
19      Plaintiffs' conception is that the universe is created by
20   what occurred in the first trial and that the burden to get
21   past that should be high for the Defense.
22      My understanding -- based on a communication we received
23   today, counsel attempted to have a phone call with us but I had
24   other matters I had to deal with and so I was not able to join,
25   but it is my understanding that the Defendant is going to
```

1  propose to do a retrial of all the issues as opposed to just
2  the damages.
3      And so, perhaps -- perhaps it would be a good idea to find
4  out and have a hearing early on so the Court can determine what
5  the parameters are in terms of -- in terms of the damages
6  phase.
7      My understanding is the universe is created by the first
8  trial and that the same witnesses that have -- that were on the
9  witness list originally would be the witnesses that we -- that
10 we would pull from for purposes of the damages portion and
11 that -- and in that way the verdict from the new jury would be
12 tethered to the evidence that was the basis for making a
13 determination of liability by the original jury.
14     And to the extent that the Judge -- Your Honor, to the
15 extent that you have some other thought process, it would be
16 good for us to hear that.  And to the extent that Defendants
17 intend to proceed in some other way, I would like to -- we are
18 going to need the Court's, you know, guidance on that.
19         **THE COURT:**  So who -- Mr. Posner, are you the person
20 who is suggesting that we throw the doors wide open again?
21         **MR. POSNER:**  I might have suggested that but I will
22 defer to Ms. Sullivan to convince you that we are right.
23         **THE COURT:**  Okay.
24         **MS. SULLIVAN:**  Well, Your Honor, we don't mean to
25 suggest that the doors should be thrown wide open.

1   We recognize that, Your Honor, has considerable discretion
2   to shape the contours of the retrial and that obviously Rule 16
3   allows you to amend the pretrial order if needed to correct an
4   injustice.
5       In digging into this, Your Honor, since the Plaintiffs'
6   election to reject the remittitur, we have to -- we feel
7   compelled to raise to the Court and we, as Mr. Alexander
8   mentioned, raised to the Plaintiffs, that the venerable
9   precedent of gasoline products may be something that we are
10  compelled to bring before the Court and, as Mr. Alexander
11  suggests, we may need to brief and argue before the Court
12  *Gasoline Products versus Champlin Refining Company*,
13  C-H-A-M-P-L-I-N, 283 U.S. 494, is that great old 1931 case that
14  involves the re-examination clause of the Seventh Amendment,
15  when does the Seventh Amendment permit or prohibit the
16  re-examination of a prior jury verdict.
17      And, of course, it is now well established and well
18  established in the Ninth Circuit that where there is a retrial
19  on damages but issues of liability are inextricably intertwined
20  with the damages case, such that there would be an injustice or
21  unfairness in allowing a second jury to be bound on liability
22  by the first jury when the second jury is reconsidering damages
23  but damages are inextricably intertwined with liability, that
24  that is an instance in which courts can and have in the Ninth
25  Circuit ordered a retrial of damages to include a retrial of

```
 1   liability issues.
 2        And I would just cite to Your Honor as key Ninth Circuit
 3   precedence -- and, of course, we would brief this fully before
 4   Your Honor and Plaintiffs would have ample opportunity to
 5   respond -- Hasbrouck versus Texaco, H-A-S-B-R-O-U-C-K, versus
 6   Texaco, 663 F.2d 930.  That is Ninth Circuit 1981.  And
 7   Pumphrey versus K.W. Thompson Tool, 62 F.2d 1128.  That is
 8   P-U-M-P-H-R-E-Y.  That is Ninth Circuit 1995.
 9        We, of course, would brief this fully to Your Honor and
10   give you all the pros and cons of this.
11        In a nutshell, Your Honor, this is not a patent case where
12   there is a finding of infringement and validity, and all you
13   are trying to decide on remand is lump sum or running royalty,
14   as the damages quantum.
15        This is not a case where there is a contract breach and
16   the issue is lost profit or compensatory damages.  It is an
17   issue where because it is a racially hostile environment case,
18   which turns on whether the conduct on the Tesla factory floor
19   was systemic or pervasive or more episodic and remediated
20   because that liability issue about hostile environment involves
21   a sort of quantitative analysis of how much racially salient
22   behavior was there.
23        And that's the same issue as the emotional distress
24   damages, which turn -- emotional distress here, again, there is
25   no economic case here; there is no medical bills; there is no
```

1 lost wages.
2     This is a case about purely non-economic emotional
3 distress.  That's heavily calibrated to the degree of violation
4 on the factory floor, Your Honor.
5     So the compensatory damages are inextricably intertwined
6 with the liability issue because it is a hostile environment
7 case and it is non-economic damages.
8     And more pointedly, Your Honor, reprehensibility for
9 purposes -- we would submit the key issue for purposes of
10 punitive damages, reprehensibility is going to turn entirely on
11 the sort of quantity, the systemicity, the pervasiveness and
12 the remediation measures that Tesla undertook, which is the
13 same as the liability case.
14     And so, Your Honor, we came to this -- I want to say this
15 in all greatest respect.  We recognize that you and prior trial
16 counsel on both sides have already devoted a tremendous amount
17 of effort to the first trial; but if we try to imagine how you
18 would instruct the second jury to decide damages and tell the
19 second jury what the first jury decided, we see grave risk that
20 the instruction to the jury on what the jury in the first trial
21 decided would predetermine either the compensatory damages
22 issue or -- and/or the punitive damages issue in a way that
23 would deprive Tesla of the fair and just retrial of the damages
24 issue, and that's the gasoline products issue in a nutshell.
25     We did try to confer with Mr. Alexander, as he kindly

```
 1   noted a minute ago, and his schedule didn't permit him to
 2   discuss it.
 3        We obviously would need to brief this in detail so
 4   Your Honor could consider it and consider the arguments on both
 5   sides; but we wanted to make Your Honor aware of the issue
 6   because the first time we really confronted it was when we
 7   thought today about what would we need to do to amend the
 8   pretrial order from the first trial or to contemplate how
 9   Your Honor would instruct a second jury on what the first jury
10   found.
11        So, Your Honor, that's -- there are separate issues about
12   the scope of the retrial with respect to whether certain things
13   need to be updated, whether information about the Plaintiff's
14   employment and condition needs to be updated, the question of
15   whether anything about Tesla's remedial measures or valuation.
16        There may be some simple updating we need to do in
17   amending the prior pretrial order, but the big issue to our
18   mind is will Your Honor permit a retrial of liability issues
19   under the gasoline products line of cases.
20        Mr. Posner, is there anything you would add to that from
21   your -- from our prior discussions?
22           **MR. POSNER:**  No.  Thank you.  I think that's fine.
23   You know, it is a little bit of a separate issue as to whether
24   additional witnesses or documents or evidence would be
25   introduced for --
```

1          **THE COURT:**  So let's talk about that issue.  I'm -- I
2     am highly unlikely to -- and I will welcome Mr. Rubin and
3     Ms. Nunley to the conference.
4          I'm highly unlikely, Ms. Sullivan, to agree with your --
5     with this argument.  I'm not going to foreclose -- prohibit you
6     from filing something because I haven't read the case that you
7     are talking about or the cases that follow it.
8          But the -- I think my order was quite clear about what was
9     going to be tried and what would not be tried in a second trial
10    if the Plaintiffs didn't accept the remittitur.
11         That's the basis on which I ruled.  That is the basis on
12    which they made their determination, and I think it is -- the
13    analysis that you were just describing also don't think really
14    is accurate because with respect to punitive damages, you will
15    be putting on that very case of, you know, how egregious was
16    the conduct.  So you will be doing that same thing.
17         I do think that there are issues about how a second trial
18    would go, and I think those are issues that you ought to work
19    through, the ones that Mr. Posner had just mentioned; and I
20    don't know what the Plaintiffs' perspective on that is, but I
21    think you ought to spend the next month talking about that,
22    figure that out.
23         Figure out what the -- what the instructions ought to look
24    like, if there is really a problem with the instructions as
25    Ms. Sullivan was laying out, talk through those issues.  And

1   maybe what we do is we have a case management conference.
2       We have got a lot of time. So why don't we have a case
3   management conference on October 4th, I guess, at 2:00 o'clock.
4       And in the case management statement I want you to lay out
5   your respective positions on how the case should be tried
6   assuming that I'm not going to agree that the whole kit and
7   caboodle get tried over again, which I just -- I know I'm not
8   going to do that, so I think you would be wasting your client's
9   money but that's your determination, not mine or its.
10      And so what are you trying, what are the -- what other
11  issues do you need to buff up before we get going with the
12  trial again on March 27th.
13          **MR. POSNER:** That's very good, Your Honor, and that's
14  consistent with the discussions that we had last week with
15  Mr. Di-az's Counsel about meeting and conferring, trying to
16  resolve as many issues as we can and then presenting any
17  remaining disputes to the Court.
18          **THE COURT:** All right. So --
19          **MS. SULLIVAN:** Excuse me, Your Honor, I'm so sorry.
20  Just to clarify, I heard you say earlier you were not
21  foreclosing the gasoline products argument, but a moment ago
22  you suggested that you were deciding not to grant it. Should I
23  interpret that as --
24          **THE COURT:** No, I --
25          **MS. SULLIVAN:** -- we are free to brief it. You think

1    it is unlikely you'll grant it?
2         **THE COURT:** You should consider it highly unlikely
3    that I would grant it, but I haven't read the cases and the --
4    you are a formidable advocate as is Mr. Rubin.
5         I'm just telling you that I think given the history of
6    this case and the basis on which the rulings and decisions have
7    been made in this case, I can't imagine doing it; but I haven't
8    read the cases, and maybe I will be compelled to the contrary.
9    I don't want to indicate that you can't do it.  You can but
10   hopefully I have been clear enough about -- about that issue.
11        **MS. SULLIVAN:** Thank you, Your Honor.
12        **THE COURT:** All right.  Is there anything, from the
13   Plaintiffs' perspective, else that we ought to address now?
14        **MR. ALEXANDER:** I don't believe so, Your Honor.
15        **THE COURT:** Okay.  All right.  Well, it's a -- it's a
16   pleasure to see you-all.  I will look forward to seeing you-all
17   again in October.  You have obviously real work to do to get
18   this case back in front of a jury, and I'm looking forward to
19   what comes next.  Thanks very much.
20        **MR. ALEXANDER:** Thank you, Your Honor.
21        **MR. POSNER:** Thank you.
22        **MS. SULLIVAN:** Thank you, Your Honor.
23              (Proceedings adjourned at 2:15 p.m.)
24                          ---oOo---
25

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, September 12, 2022

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter