**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

| | |
|---|---|
| DEMETRIC DI-AZ, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| VS. ) | **NO. C 17-06748 WHO** |
| ) | |
| TESLA, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

San Francisco, California
Wednesday, December 7, 2022

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiffs:

> ALEXANDER MORRISON + GLICK LLP
> 1900 Avenue of the Stars - Suite 900
> Los Angeles, California  90067
> **BY:  J. BERNARD ALEXANDER, ATTORNEY AT LAW**

> CALIFORNIA CIVIL RIGHTS LAW GROUP
> 332 San Anselmo Avenue
> San Anselmo, California  94960
> **BY:  LAWRENCE A. ORGAN, ATTORNEY AT LAW**

> ALTSHULER BERZON LLP
> 177 Post Street - Suite 300
> San Francisco, California  94108
> **BY:  MICHAEL RUBIN, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

```
 1   APPEARANCES:   (via videoconference, cont'd)

 2   For Defendants:
                              QUINN, EMANUEL, URQUHART & SULLIVAN LLP
 3                            865 South Figueroa Street - 10th Floor
                              Los Angeles, California   90017
 4                     BY:    KATHLEEN M. SULLIVAN, ATTORNEY AT LAW
                              DANIEL C. POSNER, ATTORNEY AT LAW
 5
                              QUINN, EMANUEL, URQUHART & SULLIVAN LLP
 6                            711 Louisiana Street - Suite 500
                              Houston, Texas   77002
 7                     BY:    ASHER GRIFFIN, ATTORNEY AT LAW
```

```
 1   Wednesday - December 7, 2022                              8:56 a.m.
 2                          P R O C E E D I N G S
 3                                ---oOo---
 4           THE CLERK:  We will get started in case 17-6748, Di-az
 5   versus Tesla Incorporated.
 6            Counsel, if you would please, state your appearance for
 7   the record.
 8           MR. RUBIN:  Good morning, Your Honor, Michael Rubin,
 9   Altshuler Berzon, also for Plaintiff Owen Di-az.
10           MR. ORGAN:  Good morning, Your Honor, Larry Organ for
11   the Plaintiff.
12           MR. ALEXANDER:  Good morning, Your Honor, Bernard
13   Alexander for the Plaintiff.
14           MS. SULLIVAN:  Good morning, Your Honor, Kathleen
15   Sullivan for the Defendant Tesla.
16           MR. POSNER:  Good morning, Your Honor.  I'm Dan
17   Posner, also for the Defendant Tesla.  That leaves Asher.
18           THE COURT:  That does leave Mr. Griffin.
19           MR. GRIFFIN:  Asher Griffin, also for the Defendant
20   Tesla.
21           THE CLERK:  Okay.  Thank you.
22           THE COURT:  Thank you.  All right.  So I'm denying
23   Tesla's motion for a new trial on liability and damages.
24            I told you at the CMC that I was skeptical about the
25   theory.  The motion confirmed my skepticism.  It's wrong on the
```

```
 1   merits, I think; but I'm really troubled by Tesla's strategy
 2   here.
 3        It originally moved for a new trial altogether or in the
 4   alternative a new trial on damages and a remittitur.  It didn't
 5   mention that its true theory was that if I granted the motion
 6   for a new trial on damages, I would also have to grant a new
 7   trial on liability or else violate its Seventh Amendment
 8   rights.
 9        So it was a concealed heads, I win/tails, the Plaintiff
10   loses strategy and there are a lot of unpleasant terms that I
11   have thought about to use with respect to this strategy.
12        I'm just going to say that Tesla's motion is foreclosed by
13   judicial estoppel.  It's merely a disguised attempt to have me
14   reconsider the prior motion, which it sought on -- where it
15   sought a new trial on liability and damages that I denied.
16        There are no new facts.  There is no new law.  And I'm not
17   going to hear argument on it.  And I wouldn't have had a
18   hearing today except for I want to hear about what I asked in
19   July, which is:  What evidence is going to be presented on --
20   on the damages issue at trial?  How is it going to be
21   presented?  To what extent can it materially deviate from the
22   evidence that was produced at the first trial.
23        So, I will ask the Plaintiffs to address that, and then I
24   will ask the Defendants to address that; and I'm not going to
25   hear anything on that motion.
```

1           **MR. RUBIN:**  Larry or Bernard, would you like me to
2    take the first run at that or would one of you prefer to?
3           **MR. ORGAN:**  I think maybe I can address this,
4    Your Honor, and have my cocounsel chime in; but in terms of the
5    scope of the evidence as we see it, we will be presenting
6    probably, let me see, four witnesses on -- on the compensatory
7    damages, and then we will be putting in the evidence as to the
8    punitive amount relative to the reprehensibility factors.
9           Those factors include how widespread the racist conduct
10   was, notice to the Defendant and to the managing agents, and
11   then the failure of Defendant to address that in any remedial
12   way.  I think that's probably the scope of the evidence.
13          So some of the witnesses are not going to be called
14   because they only deal with liability issues, but many of the
15   witnesses may be called for very -- for shorter periods of time
16   because the joint employer liability questions are not at
17   issue.
18          So, we also don't have to prove the supervisor issue,
19   Your Honor, although whether someone is a supervisor, we think,
20   is relevant because that goes to their failure to have the
21   reporting system work; and that goes to the failure to prevent.
22          Your Honor had expressed some concerns at our last hearing
23   in terms of what the jury would be told and we have thought
24   about this.
25          Michael, I think we might be -- you have thought about

1  this a little more than I have.  Maybe if you can talk to His
2  Honor about our thoughts in terms of that.
3            **MR. RUBIN:**  Now, the -- I think the case that is most
4  helpful in that issue is the *Watts versus Laurent* case, a Judge
5  Cudahy case out of the Seventh Circuit, 774 F.2d 168, which
6  talked about -- it just happens to rise in a gasoline products
7  context.
8       But basically the jury will be instructed as to the -- as
9  to the four principal rulings by the first jury as to
10 liability.  They are not going to have to deal with the joint
11 employer issue.  They are not going to have to deal with the
12 contract issue, and then those rulings will be explained in the
13 instructions to a limited extent by the instructions that were
14 submitted to the first jury in support of those four special
15 verdict instructions.
16      So there will be general guidelines provided.  Here is a
17 finding of liability.  This is the type of conduct that Tesla
18 was found liable for.  Now, it's up to you to evaluate the
19 evidence independently to determine the compensatory damages
20 and the punitive damages.
21      So, this has been done in many retrials.  We are using
22 some of those previous cases as a model, but it's basically
23 liability is settled; and you have to independently evaluate
24 the evidence that's presented to you to determine -- and then
25 you basically were going to follow the same damages

1   instructions that Your Honor provided the first time around.
2           **THE COURT:**  So to what extent can the evidence vary
3   from the first trial?  For example -- go ahead.
4           **MR. RUBIN:**  It can certainly vary.  First of all, as
5   Mr. Organ pointed out, it is going to be more limited; but in
6   the terms of the number of witness and the extent of witness
7   testimony, as he said, and in addition, in terms of the number
8   of exhibits, we are going to cut back the number of exhibits
9   substantially from those that were submitted in the first
10  trial.
11          The incidents will be the same.  They are the same basic
12  incidents that we presented the first time.  The first jury
13  didn't have to consider some of them once it made its
14  preliminary liability findings.  It focused on them in making
15  its damages findings.  That's the reason it came up with the
16  $6.9 million compensatory and $130 million in punitive.
17          But we don't expect -- there will be some differences.
18  That's inevitable when you have got someone on the stand the
19  second time, but the general contours of the evidence while
20  limited will be similar.
21          **THE COURT:**  So, for example, let's take expert
22  testimony.  Can the expert testimony vary from what was
23  originally presented?
24          **MR. RUBIN:**  To some extent, for example, the question
25  before the first jury was:  What was the extent of future

1  damages that Mr. Di-az would suffer?
2      Well, the future is -- starts from a very different point
3  in time now, so the expert will be considering what was the
4  future, which was from the -- his first report or his first
5  testimony to the present; and that will now be subsumed into
6  the current existing emotional distress damages.  So there will
7  be some variances, yes.
8          **THE COURT:**  And well -- so has he provided a
9  supplemental report?  Is he entitled to do that?  Is the
10 Defendant entitled to have -- bring in experts that they didn't
11 bring in the first time?  Is the Defendant able to change the
12 defense that they provided the first time?
13         **MR. RUBIN:**  Our position is that they are not.
14         **THE COURT:**  But you are?
15         **MR. RUBIN:**  No, no.  It's the same basic testimony.
16 Just the timeframe has shifted.  In other words, the witness is
17 going to testify as to the same emotional distress consequences
18 and impacts.
19     It's just that what was pre -- if you recall, the original
20 verdict distinguished between existing damages and future
21 damages.  There may not even be any need for him to testify as
22 to future damages given how much time has now passed since the
23 incidents, but it will be the same evidence.  It will be the
24 same consequences and impact on Mr. Di-az.  It is just the
25 timeframe of the current existing harm extends to the current

1  date.
2  **MR. ORGAN:**  Your Honor, there might be one slight
3  modification in terms of our economic expert.  We actually
4  talked about this during the trial in the last trial, and
5  Your Honor was not happy with the fact that we hadn't given an
6  updated report to Tesla ahead of time.
7  I think the law is that we are supposed to put into
8  evidence their current financial condition.  So I would
9  anticipate that our expert would update that evidence, but we
10  would certainly provide that update to Counsel well in advance
11  of trial so that they would have adequate time to address that.
12  **THE COURT:**  Okay.  Ms. Sullivan or Mr. Posner, what's
13  your -- what are your responses to the questions that I have?
14  **MS. SULLIVAN:**  Your Honor, first, we think that very
15  colloquy that you are having with Plaintiffs now, Your Honor,
16  is a reminder that we will be re-trying some liability issues
17  here in front of the second jury.
18  And I just wish for the record, Your Honor, to assure
19  Your Honor there was nothing strategic about our decision to
20  raise this issue now.  It just simply became clear to us after
21  the remittitur was rejected, and we were talking about scope.
22  We are trying to think, Your Honor, about how will you
23  allow the new jury to determine damages when damages churn on
24  severity and frequency of conduct and reprehensibility turns on
25  response to the conduct in light of its frequency and severity

1  without having the second jury make a new determination.
2      And, Your Honor, we just don't know whether the first jury
3  found -- found -- a reasonable jury could have found, but we
4  don't know what the first jury did find as to the frequency and
5  severity of conduct.  As Your Honor instructed the jury, the
6  first jury in instruction 27 --
7      **THE COURT:**  Ms. Sullivan, could you just focus on what
8  I'm interested in?
9      **MS. SULLIVAN:**  Yes, Your Honor.
10     **THE COURT:**  And what I'm interested in is the -- to
11  what extent can the evidence -- having decided that the -- that
12  this is a trial on damages only, to what extent can the
13  evidence vary and what are the parameters?  That's what I'm
14  looking for specifically.
15     **MS. SULLIVAN:**  So, Your Honor -- of course,
16  Your Honor.  To start, I just wanted to represent to the Court
17  we are not re-visiting joint employer or relationship to the
18  staffing agency.  So all of the evidence going to that issue
19  can be removed from trial.  There is some streamlining there.
20     Second, we think that the damages evidence should be -- as
21  far as the compensatory and punitive damages should be fixed.
22  There should not be new evidence as to what happened to
23  Mr. Di-az and what kind of suffering he has.
24     We think that the testimony that Your Honor heard the last
25  time should fix the metes and bounds of that evidence.

1        But on the punitives, to the extent that that's going to
2   turn on the number -- again, the frequency and severity of the
3   incidents, Your Honor -- we do think if the Plaintiffs are
4   going to re-try those incidents, that respectfully, Your Honor,
5   Tesla ought to be able to try to contest that evidence before
6   the second jury.
7        So I will turn it over to Mr. Griffin; but, for example,
8   we may wish to call additional fact witnesses to put into
9   doubt -- the second jury could have found liability here based
10  on a single incident.  That's instruction 27.  They could have,
11  say, taken the January 15 cartoon incident and said that's
12  enough here.
13       But if there is a debate over what was the interaction
14  with Mr. Hurtado, for example, well, Mr. Hurtado wasn't called
15  at the last trial.  And to the extent the second jury is coming
16  up with a number and the number is kind of a piece rate for how
17  many incidents of harassment were there, then we have to know
18  how many incidents happened.
19       So, Mr. Griffin, can I turn it over to you to address the
20  issue of possible additional witnesses we would ask His Honor's
21  leave to allow.
22            **MR. GRIFFIN:**  Yes.  Your Honor, Asher Griffin on
23  behalf of Tesla.  Ms. Sullivan addressed Robert Hurtado.  He
24  was referenced during the testimony, and that was one of the
25  witnesses that Mr. Di-az claims that -- harassed him at Tesla,

1  but he did not present testimony at trial.  That was a witness
2  that we would likely want to present to this new jury to
3  determine the issues that are being presented to the Court at
4  that time.
5      There was also an HR witness -- I don't know if you recall
6  who was pregnant and actually was in labor during trial -- and
7  her testimony came in on -- through deposition; but now that
8  she is available, that's a witness that we potentially would
9  want to bring in live to testify on the HR-related issues
10 because she wasn't available at the time.
11     And then with regards to the overarching question I think
12 you are asking -- and I will echo what Ms. Sullivan said --
13 we -- you know, given that the jury did not make a specific
14 determination about which incidents they found sufficient to
15 come to their finding, we will be putting on witnesses to
16 contest the claims that Mr. Di-az made related to the specific
17 instances of alleged discrimination.
18         **THE COURT:**  So here --
19         **MR. GRIFFIN:**  With regards to the expert issue, I want
20 to address that as well.
21         **THE COURT:**  Oh, yeah.  Go ahead.
22         **MR. GRIFFIN:**  During the last trial there was a
23 dispute about the damages expert and whether or not there was a
24 timely objection to the testimony that expert gave.
25     Now, that we are significantly out from trial, we will

1  likely raise if we have -- once we see whatever new report we
2  will get from Plaintiffs, we would likely take the opportunity
3  to examine that; potentially contest the admissibility of that
4  testimony.  And depending on what we get from the psychiatric
5  expert, we may want to either contest that testimony.
6  Your Honor mentioned we may have a rebuttal expert or at a
7  minimum take that person's deposition so we can see the
8  contours of what we are going to hear at trial.
9      **THE COURT:**  So this is what I would like to do:  This
10 is the conversation that I want you to have with each other and
11 be specific with each other about how you see this going now
12 that you have an unmistakable view of how I'm looking at this
13 and -- and I would like to have a -- a CMC, I think, on
14 January 17.
15     I don't think these are issues -- I think these are issues
16 that need to be worked so that it's clear prior to the pretrial
17 conference what the -- what's -- what the issues are, what's at
18 stake for each side.
19     And so I would like you to do that, and I would like you
20 to give me a status on January 10th that tells me generally
21 where the -- where the bones of contention are because they
22 are -- you are not going to agree -- I just have a hunch -- on
23 what it is that ought to be presented, and I want to have a
24 very clear idea what the contours are of each side's proposed
25 case at that time.  All right.

```
 1          MR. GRIFFIN:  Yes, Your Honor.  Thank you, Your Honor.
 2          MS. SULLIVAN:  Yes, Your Honor.
 3          MR. ORGAN:  Your Honor, just one clarification.  You
 4  want us to submit a joint statement, correct, Your Honor?
 5          THE COURT:  I do.  I want you to work together and lay
 6  out -- you have been thinking about this.  I want to make sure
 7  that you are now thinking about it in the way that I'm thinking
 8  about it, and I think that will make ultimately our trial --
 9  retrial work better.
10          MR. ORGAN:  And, Your Honor --
11          THE COURT:  Thank you-all.
12          MR. ORGAN:  Your Honor, are we still on track for
13  March 27th?
14          THE COURT:  We are definitely on track for March 27th.
15  There is -- there is -- wild horses couldn't keep me away from
16  re-trying this case on March 27th.
17          MR. ORGAN:  Okay.  Thank you, Your Honor.
18          MR. GRIFFIN:  Thank you, Your Honor.
19          MS. SULLIVAN:  Thank you, Your Honor.
20          THE CLERK:  That concludes the hearing.  Thank you
21  all.
22              (Proceedings adjourned at 9:15 a.m.)
23                          ---oOo---
24
25
```

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Sunday, January 1, 2023

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter