QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Kathleen M. Sullivan (CA Bar No. 242261)
   kathleensullivan@quinnemanuel.com
   Daniel C. Posner (CA Bar No. 232009)
   danposner@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
   Asher Griffin (appearance *pro hac vice*)
   ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
   Alex Spiro (appearance *pro hac vice*)
   alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

*Attorneys for Defendant Tesla, Inc.*

[Additional counsel listed on next page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| OWEN DIAZ,<br><br>            Plaintiff,<br><br>      v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.,<br><br>            Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**JOINT STATUS REPORT ON TRIAL ISSUES**<br><br>Hearing Date: January 17, 2023<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>Judge:  Hon. William H. Orrick |

LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960
T: (415)-453-7352 | F: (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
ALEXANDER KRAKOW + GLICK LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
T: (415)421-7151 | F: (15)362-8064

Attorneys for Plaintiff,
OWEN DIAZ

JOINT STATUS REPORT ON TRIAL ISSUES

**JOINT STATUS REPORT ON TRIAL ISSUES**

Pursuant to the Court's instruction at the December 7, 2022 hearing, plaintiff Owen Diaz and defendant Tesla, Inc. hereby submit this Joint Status Report on Trial Issues.  The parties' positions as stated below are jointly submitted unless otherwise indicated.

**I.      WITNESSES**

While the parties are not due to exchange witness lists and deposition designations until January 30, 2023, with a joint submission to the Court due on February 13, 2023, they have met and conferred and each currently intend to call the following witnesses at trial, either by presenting these witnesses live or by prior testimony.  The parties present the list below, accompanied by a summary of the expected testimony of each witness, to assist the Court in understanding the current status of evidence and scope of retrial, but reserve the right to modify or supplement the list below or to make objections to the inclusion of certain witnesses or to the scope of certain witnesses' testimony when final submissions are due. The parties have also noted where witnesses will likely testify by live video.

**A.      Plaintiff's Witness List[1]**

***Plaintiff's Position***.  Mr. Diaz's position is that at the retrial, the parties should be limited to calling only those witnesses who testified at the first trial and those witnesses' testimony should be limited to topics they addressed at the first trial. *See Little v. City of Richmond*, No. 13-CV-02067-JSC, 2015 WL 798544, at *2 (N.D. Cal. Feb. 23, 2015) ("The party moving for a modification of a pretrial order has the burden of showing that an amendment is necessary to prevent manifest injustice.").[2] Each of the witnesses designated by Mr. Diaz below testified at the first trial on matters material to compensatory and/or punitive damages. Given the narrower focus

---

[1]  [*Tesla position*]  Tesla presently reserves its right to call any witnesses Mr. Diaz ultimately declines to call in its case-in-chief.

[2]  [*Tesla position*]  Mr. Diaz's argument that an amendment to the pretrial order is needed to permit new witnesses to testify is inapt, because there was not a pretrial order entered before the first trial that specifically set forth rulings regarding the evidence (witnesses and exhibits) to be presented.  In any event, as Tesla explains below, this is a *de novo* retrial on damages, so Tesla should not be bound by the pretrial order from the first trial.

of the second trial, many if not most of those witnesses' testimony will be shorter and more focused than the testimony they provided at the first trial.

To be clear, in response to Tesla's mistaken contention below that Mr. Diaz seeks to introduce liability evidence, Mr. Diaz does not seek to elicit testimony from any witness that pertains solely to liability. Some witnesses who testified largely to liability issues (such as joint employment) would be called only for the short portions of their testimony that pertain to damages. This Court has already recognized that some evidence that initially pertained mostly to liability may also pertain to damages or punitive damages. *See, e.g.*, Order on Post-Trial Motions (Dkt. 328) at 40 (finding reprehensibility because "Tesla intentionally built an employment structure that allowed it to take advantage of Diaz's (and others') labor for its benefit while attempting to avoid any of the obligations and responsibilities that employers owe employees.").[3]

***Defendant's Position***.  Tesla's position is Mr. Diaz should not be permitted to call all the same witnesses from the first trial.  Mr. Diaz's witnesses whose testimony related only to liability should not be permitted to testify at a damages-only retrial, and witnesses who testified about liability and damages issues should be prohibited from testifying about liability issues, including contractor relationships, because the first jury already determined those issues.  As discussed below, Tesla also objects to any testimony from Mr. Diaz's witnesses regarding "me too" evidence, conduct Mr. Diaz himself did not directly experience, or alleged incidents of discrimination or harassment as to which Mr. Diaz did not present evidence at the first trial.

| | **Plaintiff's Witness** | **Testimony Description** |
|---|---|---|
| 1. | Owen Diaz | Mr. Diaz will testify in person consistently with his prior trial testimony about the harassment he suffered and was exposed to while working at Tesla's Fremont factory, and how that harassing conduct impacted him emotionally. In addition, Mr. Diaz will testify about how Tesla's failure to prevent the harassment, as well as its negligence in retaining harasser |

---

[3]  [*Tesla Position*]  At each of the meet and confers in which Tesla has asserted that much of the evidence Mr. Diaz seeks to present appears to relate only or primarily to liability (rather than damages), Mr. Diaz has taken the position that such evidence goes to "reprehensibility," which he appears to believe is a "catchall" through which he can introduce any liability-evidence he chooses in this damages-only retrial.  The parties will likely need to present further briefing on the delineation between "liability" and "reprehensibility" evidence to ensure the damages retrial is not a complete re-do of the liability trial.

| | **Plaintiff's Witness** | **Testimony Description** |
|---|---|---|
| | | Ramon Martinez, impacted him emotionally. Mr. Diaz will also testify about Tesla's failure to address the racist conduct, and how the harassing conduct not only continued but grew worse after he complained. |
| 2. | Tom Kawasaki | Mr. Kawasaki was the Elevator Lead who initially supervised Owen Diaz. He will testify about an incident involving Mr. Judy Timbreza calling Mr. Diaz the N-word, and how that affected Mr. Diaz such that he almost got into an altercation with Mr. Timbreza. Mr. Kawasaki will testify about who he reported the incident to and what the result of the investigation was. He will also testify that there was video footage of the October incident in which Mr. Diaz claims Ramon Martinez threatened him. Mr. Kawasaki will testify about hearing Mr. Martinez use racist slurs. Finally, Mr. Kawasaki will testify about his observations of the widespread nature of the racist conduct at the Tesla factory during the time Mr. Diaz worked there. |
| 3. | Ed Romero | Ed Romero was the supervisor over the elevators and the recycling department. Mr. Romero received email complaints about the harassing conduct of Judy Timbreza and Ramon Martinez. He played a role in investigations regarding Owen Diaz and elevated Mr. Diaz's complaints to Victor Quintero, the Manager over these departments. Mr. Romero also received other complaints involving the N-word. |
| 4. | Victor Quintero | Mr. Quintero was the manager of the elevators, custodial services, and recycling services. He will testify about the structure of the relationships between the staffing agencies and Tesla and why that structure was adopted to avoid Tesla's responsibility for wrongful conduct. He will testify about the investigations into Mr. Diaz's complaints and any remedial action that was taken. He will testify that Mr. Diaz was offended by the conduct. He will testify about his interactions with the staffing agencies in determining the appropriate discipline for Mr. Martinez. He will testify to his knowledge of the use of the N-word in the factory. |
| 5. | Michael Wheeler | Mr. Wheeler was a supervisor in environmental recycling who worked at Tesla through Chartwell from April 2015 to April 2016. Mr. Wheeler was involved in the investigation of the racist drawing in January 2016. He will testify about Mr. Martinez's response to the drawing and how the drawing impacted Mr. Diaz. He will testify to knowledge of racist graffiti in the restrooms as well as hearing the N-word throughout the factory from recycling to general assembly. He will testify about two incidents he reported to Tesla, including one involving being called the N-word and another where someone put feces on his Tesla golf cart and about Tesla's failure to address either incident. |

| | Plaintiff's Witness | Testimony Description |
|---|---|---|
| 6. | Wayne Jackson | Wayne Jackson was NextSource's Program Manager and the liaison between the staffing companies and Tesla. He was involved in the investigation of Ramon Martinez's racist drawing directed at Mr. Diaz and will testify about how that impacted Mr. Diaz. He will also testify about the remedial measures favored by Tesla and how he had to push Tesla to agree to more substantial remedial measures. Mr. Jackson will also testify that he was aware of general and frequent use of the N-word throughout the factory during the time that he was at the Fremont factory. He will testify that he could not do anything about the use of the N-word at the factory because he worked for NextSource. |
| 7. | Jackelin Delgado | Ms. Delgado was the Vice President of Human Resources for Chartwell Staffing services, the staffing agency that signed harasser Ramon Martinez's paychecks. She conducted the investigation into Mr. Diaz's complaints about Mr. Martinez's racist drawing. Ms. Delgado will testify that during the course of her investigation, she interviewed Mr. Diaz and learned he was offended by the drawing and he felt unsafe around Mr. Martinez. |
| 8. | Erin Marconi (live via Zoom or via videotaped deposition) | Ms. Marconi worked at Tesla's Fremont factory as a HR Business Partner from 2014 until January 2017. She has knowledge about investigations into complaints from Owen Diaz about harassing conduct including the October 2015 assault by Mr. Martinez and the January 2016 Racist Drawing by Mr. Martinez. She will testify about whether Mr. Ramon Martinez was disciplined appropriately and about remedial measures taken toward Mr. Martinez as well as remedial measure for similar conduct. |
| 9. | Annalisa Heisen (live or via videotaped deposition) | Ms. Heisen was a Tesla Senior Employee Relations Partner, who testified as Tesla's designated PMK on topics including "the policies and procedures related to race harassment in effect from 2014 to present." Heisen Depo. at 33:4-8. At the time of trial, Ms. Heisen was a Tesla employee and was scheduled to testify live. However, she went into labor during the trial and her testimony was instead presented through designations and videotape.

At the December 7, 2022 hearing, Tesla represented to the Court that Ms. Heisen was "available" and indicated she was a witness whom Tesla "potentially would want to bring in live to testify on the HR-related issues." Dec. 7, 2022 Transcript at 12:5-10. However, during the parties' meet-and-confer process, Tesla changed its position. Without any explanation as to what factual circumstances have changed, Tesla asserts that Ms. Heisen is unavailable to testify live.

If Tesla will not produce Ms. Heisen at trial, Mr. Diaz proposes playing excerpts from her videotaped deposition as before. Ms. Heisen will testify about Tesla's anti-harassment and |

| Plaintiff's Witness | Testimony Description |
|---|---|
|  | investigation practices, policies, and procedures. Her testimony will highlight Tesla's failure to meet its own standards while investigating Mr. Diaz's complaints of harassment involving Judy Timbreza and Ramon Martinez. She will testify about her own experiences investigating racial harassment claims involving the N-word at Tesla's Fremont factory, and what standards applied in those investigations. She will testify about the procedures Tesla set up for investigating complaints involving contractors, and how those policies differ from the policies Tesla applies to direct employees. Ms. Heisen will confirm that Mr. Diaz was offended by the racist conduct directed at him. She will testify about Tesla's alleged remedial measures in the cases of Mr. Timbreza and Mr. Martinez, and in response to the use of the N-word at the factory. |
| 10. Demetric Di-az (via videotaped deposition) | Mr. Di-az is Mr. Diaz's younger son, who testified via videotaped deposition at the first trial. Mr. Diaz intends to again limit Mr. Di-az's testimony to the brief videotaped excerpts that were permitted in the first trial. Mr. Di-az previously testified about a racist incident where his supervisor called him the N-word while his father watched, as well as the impact that incident had on his father's emotional state. |
| 11. La'Drea Jones | Ms. Jones is one of Owen Diaz's daughters. She witnessed some of the emotional distress experienced by Mr. Diaz including his changed demeanor while he worked at Tesla. |
| 12. Anthony Reading[4] | Dr. Reading testified about the emotional harm that Mr. Diaz suffered. He will testify about his one evaluation of Mr. Diaz and what he determined about Mr. Diaz's emotional condition and the extent of the harm he suffered. Dr. Reading will also testify about the potential for further emotional harm to Mr. Diaz and what is typical for harms of this nature. Mr. Diaz does not intend to have Dr. Reading conduct an additional interview of Mr. Diaz. |
| 13. Charles Mahla (Live via Zoom) | Charles Mahla, Ph.D. is Mr. Diaz's expert economist. Dr. Mahla will testify about the financial condition of Tesla. He has prepared an updated report of Tesla's current financial condition which Mr. Diaz exchanged with Tesla on January 6, 2023. Mr. Diaz seeks to have Dr. Mahla testify about Tesla's financial condition at the time of trial. Mr. Diaz previously |

---

[4]   [*Mr. Diaz's Position*]  Tesla has asserted that if Dr. Reading updates his expert report, and if his opinion is based on events or conditions occurring after his October 2, 2019 examination of Mr. Diaz, Tesla reserves its right to present a rebuttal expert and conduct an Independent Medical Examination ("IME") of Mr. Diaz. Plaintiff's position is that Tesla has waived its right to present a rebuttal expert and conduct an IME, given that the litigation has been pending since 2017 and Tesla has neither designated a rebuttal expert nor sought an IME of Plaintiff in the intervening five years. Nonetheless, as stated above, Mr. Diaz does not intend to have Dr. Reading to update his report.

| | **Plaintiff's Witness** | **Testimony Description** |
|---|---|---|
| | | provided Tesla with the slide that Dr. Mahla intended to use but that was previously excluded by the Court because not enough notice was provided to Tesla to evaluate the information in the slide. Alternatively, Dr. Mahla can testify as he did in the first trial about the financial condition of Tesla at the time of his deposition in October 2019. Mr. Diaz will instruct Dr. Mahla to testify about Tesla's financial condition at whatever time period the Court finds is most appropriate. |
| 14. | Ramon Martinez | Ramon Martinez was a supervisor and one of Owen Diaz's main harassers at the Fremont factory. Mr. Martinez will testify regarding the harassing conduct he directed at Owen Diaz and how it caused Mr. Diaz to be upset. In addition, he will testify about the investigation of his conduct and what remedial steps Tesla took towards him. |
| 15. | Kevin McGinn (via videotaped deposition)[5] | Mr. McGinn was the CFO for NextSource. He testified by video during Day 3 of the first trial. His testimony will solely focus on the investigation of Mr. Diaz's complaint about the racist drawing and what remedial action was taken. |
| 16. | Amy Oppenheimer (live via Zoom)[6] | Amy Oppenheimer was Mr. Diaz's HR practices/Investigations expert who testified in the first trial live via Zoom. She will testify only about industry standards for investigations and how Tesla's investigations did not meet that standard or the standard of Tesla's own policies and practices. |

[5]  [*Tesla Position*]  During a meet and confer in December 2022, Mr. Diaz represented that he would not call Mr. McGinn.  As Mr. Diaz stated in the witness list from the first trial, Mr. McGinn's testimony is "regarding the contractual relationship between NextSource and Tesla." Because the first jury has already determined liability, the second jury will not be asked to determine the contractual relationship between the parties.  Tesla objects to Mr. McGinn's testimony in a damages-only retrial.

[*Mr. Diaz's Position*] The parties made clear in their meet-and-confer discussions, and reiterated in the introductory section of this joint statement, that they have not made final decisions regarding witnesses. Mr. Diaz, as stated, only intends to introduce the testimony of Kevin McGuinn that pertains to the scope of the retrial.

[6]  [*Tesla Position*]  During the meet and confer in December 2022, Mr. Diaz represented that he would not call Ms. Oppenheimer at the retrial because her testimony related solely to liability issues.  Ms. Oppenheimer served as an expert witness on the standard of care for Human Resources investigations.  Because the first jury already determined liability, the second jury will not be asked to determine the standard of care or whether Tesla breached the standard of care. Tesla objects to Ms. Oppenheimer's testimony in a damages-only retrial.  If Ms. Oppenheimer is permitted to testify, then Tesla reserves the right to designate a rebuttal expert.

[*Mr. Diaz's Position*] The parties made clear in their meet-and-confer discussions, and reiterated in the introductory section of this joint statement, that they have not made final decisions regarding witnesses. Mr. Diaz, as stated, only intends to present the testimony from Ms. Oppenheimer to the extent it pertains to the scope of the retrial. Mr. Diaz objects to Tesla calling any previously undisclosed, not-deposed experts.

1

2    **B.    <u>Defense Witness List</u>**

3    ***<u>Defendant's Position</u>***.   Tesla seeks to call five witnesses at trial:  Joyce Delagrande, who

4    testified at the first trial, and four witnesses who did not testify at the first trial.  Tesla should be

5    permitted to call witnesses who did not testify at the first trial because a new trial proceeds *de*

6    *novo*.  *See, e.g.*, *Millenkamp v. Davisco Foods Int'l, Inc.*, 2009 WL 3430180, at \*2 (D. Idaho Oct.

7    22, 2009); *Day v. Amax, Inc.,* 701 F.2d 1258, 1263 (8th Cir. 1983) ("Following the grant of a new

8    trial, the second trial, absent any stipulations by the parties to the contrary, proceeds *de novo.*");

9    *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1356-57 (Fed. Cir. 1998) ("Nothing in Rule

10   16(e) indicates that a pretrial order from a first trial controls the range of evidence to be considered

11   in a second trial."); *McMillan v. Weeks Marine, Inc.*, 2008 WL 4442087, at \*2 (D. Del. Sept. 30,

12   2008) (noting that "there is no statute, rule or case that prohibits a court from hearing the

13   testimony of a new witness when a new trial is ordered.").

14          These additional witnesses' testimony is necessary and appropriate to rebut arguments and

15   evidence Mr. Diaz presented at the first trial.  *See Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*,

16   2013 WL 3803911, at \*2 (E.D. Cal. July 19, 2013) (on retrial, district court permitted testimony of

17   new witness whose testimony rebutted arguments offered by opposing party at first trial).

18   Moreover, Mr. Diaz has sufficient time to take the depositions of the three witnesses who were not

19   previously deposed (Robert Hurtado, Chenoa Chavez, and Chris Winton).  *See Hoffman v.*

20   *Tonnemacher*, 2006 WL 3457201, at \*3-4 (E.D. Cal. November 30, 2006) (district court granted

21   defendant's motion to amend pretrial order to add witness who would rebut testimony offered by

22   plaintiff because the added litigation expense was small, the new testimony would not change the

23   complexity of the case, and the plaintiff had sufficient time to conduct a deposition and other

24   discovery).

25          With respect to Mr. Hurtado specifically, Mr. Diaz put Mr. Hurtado's conduct at issue at

26   the last trial far beyond the scope anticipated.  Although Mr. Diaz did not even know Mr.

27   Hurtado's name when asked at his deposition, Mr. Hurtado was mentioned a whopping 89 times

28   during the course of the six-day trial.  Tesla should be permitted to respond to that evidence in this

new trial.  Mr. Diaz cannot now argue that Mr. Hurtado's identity is somehow a surprise—particularly after Mr. Diaz testified about Mr. Hurtado at length at the first trial.  *See Hoffman*, 2006 WL 3457201, at 4 (there is no manifest injustice "where the necessity of a witness was known or should have been known at the time of the first pre-trial order/trial").  If Mr. Diaz is intending to accuse Mr. Hurtado of misconduct on this *de novo* damages retrial—including that he suffered damages from Mr. Hurtado's purported misconduct—then Tesla should have an opportunity to respond to that evidence.  Mr. Diaz's objection to Mr. Hurtado's testimony is antithetical to the fundamental purpose of a trial of permitting a jury to find the true facts, and it should be rejected on that basis alone.

During the parties' meet and confer, Mr. Diaz's counsel not only stated that Mr. Diaz will object to Tesla's request to call Mr. Hurtado as a witness, but also refused to agree that—if Mr. Hurtado is ultimately excluded from testifying—Mr. Diaz will not criticize Tesla in its closing argument—as it did at the close of the first trial—for not having called Mr. Hurtado to testify.  Mr. Diaz argued in closing that "Mr. Hurtado did not come in to testify in front of you… They had the ability to bring Mr. Hurtado in front of you. And if defendant has the ability . . . to bring in better evidence, but they bring in weak evidence, you have the right to ignore that evidence or discount that evidence. If Mr. Hurtado, who did this heinous conduct, did not engage in it, Tesla had the ability, but failed to put it in front of you."  (Transcript 889:18-890:4).  If Mr. Diaz moves to exclude Mr. Hurtado as a witness, he cannot be permitted to argue again in closing that Tesla failed to present "better evidence."  Plainly, Mr. Diaz cannot have it both ways, and his intention is simply to prejudice Tesla.  At a minimum, the propriety of Mr. Hurtado's testimony should be subject to further briefing.

Accordingly, the Court should permit Tesla to offer testimony at trial from all the witnesses identified below.

***Plaintiff's Position***.  As stated above, Mr. Diaz's position is that at the retrial, the parties are limited to calling witnesses who testified at the first trial. Tesla did not designate or call Mr. Hurtado, Ms. Chavez, or Mr. Winton as witnesses in the first trial, and Mr. Diaz therefore objects

1    to these witnesses being called at the retrial. It is not clear that Ms. Chavez or Mr. Winton even

2    worked at Tesla while Mr. Diaz was employed there.

3          Tesla's assertions regarding Mr. Hurtado are wrong, and Mr. Diaz requests the opportunity

4    to brief this issue, if necessary. Tesla never identified Robert Hurtado as a witness in its initial

5    disclosures, in its discovery responses, or in its witness lists for trial—all of which should be

6    essential preconditions for calling him to testify in the second trial. Tesla now claims that Mr.

7    Hurtado actually was "identified as a witness" because Mr. Diaz was asked about him at his

8    deposition. But as Tesla should be aware, Mr. Diaz testified at his deposition that he did not know

9    who Robert "Hertado" was—he knew of a "Robert" but did not know the man's last name. *See*

10   Dkt. 156 at 13 in which ***Tesla*** argued that it was not required to produce Hurtado's contact

11   information because "Hurtado … may or may not be the same 'Robert' Plaintiff testifies about."

12   Tesla now also claims that Mr. Diaz "had the opportunity to request Mr. Hurtado's contact

13   information … but chose not to." That is also false. Mr. Diaz's interrogatories specifically

14   requested names and most recent contact information for all Tesla employees with whom Mr. Diaz

15   had worked, and Tesla never provided the name or contact information of Robert Hurtado, *even*

16   *after this Court specifically ordered Tesla to provide contact information for all Tesla employees*

17   *whom Tesla was aware worked with Mr. Diaz*. *See* Dkt. 93 at 2. That should be dispositive of the

18   issue. *See* Dkt. 160 ("If the plaintiffs are able to show that Tesla has concealed identifying

19   information or failed to disclose anyone who was in fact responsive to plaintiffs' discovery

20   requests and my order, Tesla will not be permitted to call those individuals as witnesses during

21   trial. That will become apparent once the parties have exchanged their witness lists prior to the

22   pretrial conference[.]"). Finally, the reason Mr. Diaz did not move in limine to preclude Mr.

23   Hurtado's testimony is because Tesla had long since waived any right to call Mr. Hurtado as a trial

24   witness, by failing to disclose him or to designate him as a witness for trial.[7]

25

26

27   [7]  [*Tesla Position*]  Mr. Diaz fails to cite the very next line in this Court's Order denying Mr.
     Diaz's motion for sanctions (Dkt. 160), in which the Court stated that "plaintiffs (and Tesla) may
28   move in limine at that time for exclusion of specific witnesses if circumstances warrant it."  Mr.
     Diaz did not move *in limine* to exclude Mr. Hurtado as a witness at the first trial.

Not until the afternoon of the day this joint statement was due did Tesla provide Mr. Diaz's counsel with any of the case citations that it now submits in support of its position above, that there should be no limits on the scope of the compensatory and punitive damages retrial. Mr. Diaz will be prepared to respond at the upcoming status conference.

With respect to Tesla's witness list, Mr. Diaz's understanding is that Tesla reserves the right to call any witness on Mr. Diaz's list whom Mr. Diaz does not call. *See supra* n.1. Mr. Diaz believes that Tesla should therefore have provided a description of the testimony it expects to elicit from any of those witnesses *if that witness is not called by plaintiff*, in addition to providing a description of the testimony it anticipates obtaining from the five additional witnesses identified on Tesla's list below.[8]

| | Witness | Testimony Description |
|---|---|---|
| 1. | Joyce Delagrande | *Associate Manager Supply Chain*. At the first trial, Ms. Delagrande provided testimony about Owen Diaz's job performance and complaints from her and other co-workers about Mr. Diaz, including his lack of professionalism.<br><br>Ms. Delagrande will testify regarding Mr. Diaz's claims of harassment by Mr. Hurtado and Tesla's response to these alleged claims. |
| 2. | Robert Hurtado | *Materials Supervisor*. At the first trial, Mr. Diaz identified Mr. Hurtado as one of his harassers at Tesla and testified extensively regarding alleged misconduct by Mr. Hurtado, including that Mr. Hurtado called him the "n word" more than 30 times, culminating in an altercation between the two on February 26, 2016, shortly before Mr. Diaz left Tesla.<br><br>Mr. Hurtado will testify regarding Mr. Diaz's claims of harassment by Hurtado, and Tesla's response to these alleged claims. |
| 3. | Andres Donet | *Tesla's Janitorial Employee Manager*. At the first trial, Mr. Diaz presented evidence regarding alleged graffiti in Tesla's bathrooms and identified Mr. Donet first as part of a discovery designation and later in closing argument, asserting that Tesla failed to correct conditions. |

---

[8]   [*Tesla Position*]  Not until 5:48 PM on the day this joint submission was due did Mr. Diaz request that Tesla provide descriptions of the cross-examinations it intends to elicit from each of Plaintiff's 16 witnesses.  Mr. Diaz did not make this request at any point during the three meet and confer calls that led to this submission or in any of the earlier versions of this joint document that the parties exchanged.  Tesla will address this issue in due course.

| | Witness | Testimony Description |
|---|---|---|
| | | Mr. Donet will testify regarding cleaning of bathrooms and whether graffiti was removed during the relevant time period of Mr. Diaz's assignment. |
| 4. | Chenoa Chavez | *Tesla Senior Human Resources Manager*. At the first trial, Annalisa Heisen served as Tesla's PMK regarding Tesla's policies, practices and procedures, and training relating to harassment and discrimination. Ms. Heisen is no longer with Tesla and cannot be compelled to testify live at trial.<br><br>Ms. Chavez will testify regarding Tesla's Human Resources policies, procedures, and practices related to anti-harassment and discrimination at the Tesla factory, internal complaint and investigative procedures, and training of Tesla employees related to anti-harassment and discrimination policies. |
| 5. | Chris Winton | *Tesla's Champion of the People*. At the first trial, Mr. Diaz argued he should be awarded punitive damages to "fix" Tesla and "get their attention," and to have a "cleansing effect" so Tesla "take[s] responsibility for their workplace." (Trial transcript 966:15-967:1).<br><br>Mr. Winton will testify regarding Tesla's current workplace and how policies, procedures and practices have evolved and progressed to the present. |

## II.   EXHIBITS

While the parties are not due to exchange exhibit lists until January 30, 2023, with a deadline to file a joint submission on February 3, 2023, the parties have met and conferred regarding limiting the number of exhibits to be admitted at a damages-only retrial, including removing exhibits related solely to issues of contractor and staffing agency relationships. Both sides are working towards a time-efficient process to streamline the admission of uncontested exhibits already admitted at the first trial.

***Plaintiff's Position***.  Consistent with Mr. Diaz's position that the retrial should be no broader in scope than the first trial, Mr. Diaz continues to assert that, absent stipulation of the parties, no new exhibits should be presented on retrial that were not identified as exhibits for the first trial. Mr. Diaz also believes that exhibits that were admitted during the first trial should be automatically admissible during the retrial, subject only to relevance objections. Tesla has not yet responded to Mr. Diaz's request for a stipulation on that point.

1    Contrary to Tesla's contention below that Mr. Diaz "refused to stipulate" to limiting

2    witness testimony to the incidents of harassment discussed at the first trial, Mr. Diaz has

3    consistently taken the position that the witnesses, exhibits, and topics of the damages retrial should

4    be limited to the witnesses, exhibits, and topics presented at the first trial.  Mr. Diaz explained

5    during meet and confer sessions, however, that if the Court allows Tesla to introduce new

6    evidence (such as new witnesses, expanded witness testimony, or new exhibits) pertaining to Mr.

7    Diaz's emotional distress caused by Tesla's hostile work environment or Tesla's liability for

8    punitive damages, Mr. Diaz would similarly be entitled to introduce new evidence pertaining to

9    those topics—such as testimony about the full range of harassment experienced by Mr. Diaz, or

10   testimony from current Tesla employees about racism they continue to experience at Tesla's

11   factory. To reiterate, however, Mr. Diaz's view is that *neither* party should be permitted to

12   introduce evidence at the second trial beyond the scope of evidence introduced at the first trial.

13        ***Defendant's Position***.  During meet and confers, Tesla sought Mr. Diaz's agreement that

14   he would not testify about any alleged incidents of discrimination or harassment beyond those

15   which Mr. Diaz presented at the first trial.  Mr. Diaz refused to stipulate.  Mr. Diaz now states that

16   the retrial should be no broader in scope than the first trial.  However, if Mr. Diaz is permitted to

17   testify regarding any such additional incidents, Tesla reserves the right to present evidence,

18   including exhibits, to rebut such testimony.  Tesla further reserves the right to offer new exhibits

19   to rebut evidence and arguments Mr. Diaz raises.  As stated above, this trial is a *de novo* damages

20   trial, and the Court has discretion to admit additional exhibits.  *See, e.g.*, *Millenkamp v. Davisco*

21   *Foods Int'l, Inc.*, 2009 WL 3430180, at *2 (D. Idaho Oct. 22, 2009) (in de novo trials, courts

22   retain judicial discretion over the admittance of new evidence); *Fresno Rock Taco, LLC v. Nat'l*

23   *Sur. Corp.*, 2013 WL 3803911, at *3 (E.D. Cal. July 19, 2013) (on retrial, district court permitted

24   admission of new exhibits).

25   **III.   MOTIONS *IN LIMINE***

26        While the parties are not due to exchange motions *in limine* until January 30, 2023, with a

27   deadline to file on February 3, 2023, the parties have met and conferred regarding the scope of

28   evidence to be presented at a damages-only retrial and intend to file motions related to contested

issues that have arisen or may arise regarding the scope of evidence.  The parties present below a brief summary of the intended motions *in limine* they expect to file to assist the Court in understanding the current status of evidence and scope of retrial, but reserve the right to supplement their motions *in limine* when final submissions are due.

### A.   Plaintiff's Intended Motions *in Limine*

Mr. Diaz has identified several evidentiary issues on which he will seek a court ruling prior to trial. While these issues can be presented as motions *in limine*, Mr. Diaz believes that several of the threshold issues could be resolved more quickly by the Court to enable the parties to focus and streamline their plans more efficiently.

Most importantly, as discussed already, Mr. Diaz's view is that the Court should clarify at the earliest opportunity that evidence at the retrial will be limited to witnesses, exhibits, and topics already presented in the first trial. *See Little*, 2015 WL 798544, at *2. This damages retrial will be a more condensed and narrower version of the first trial. There is no cause for *expanding* the evidence in the retrial, especially since this case concerns facts that took place years ago. With trial only two and a half months away, there is limited time for the additional discovery that would be necessary were Tesla permitted to introduce the new witnesses it recently identified who were not previous disclosed or deposed and whose testimony – described only briefly by Tesla – has not been tested through written discovery. Moreover, if Tesla is permitted to introduce new witnesses Mr. Diaz would likely need to introduce his own rebuttal witnesses and perhaps to expand the scope of his and his witnesses' direct testimony as well. For example, Tesla has stated that it intends to call new witness Chris Winton to testify to "Tesla's current workplace and how policies, procedures and practices have evolved and progressed to the present." To rebut this testimony, all of which pertains to events occurring after Mr. Diaz ceased working at Tesla, Mr. Diaz would propose to call as additional witnesses several current and recent Black employees who would testify to the continued pervasive harassment they experience at Tesla, as well as other evidence exploring Tesla's purported motivations for its claimed remedial actions – including the impact of the first jury verdict. None of this rebuttal evidence would be required if, as Mr. Diaz understood the Court intended, the scope of retrial is limited to evidence presented at the first trial.

1   If the Court does not rule on this issue prior to the motions *in limine* stage, Mr. Diaz will file

2   a motion *in limine* to exclude, on these grounds and others, the testimony of new witnesses Robert

3   Hurtado,[9] Andres Donet,[10] Chenoa Chavez, and Chris Winton.[11]

4   Mr. Diaz reserves the right to bring additional motions *in limine* as needed.

5   **B.   Defendant's Intended Motions *in Limine***

6   At the first trial, Tesla filed motions related to the exclusion of "Me Too" witnesses and

7   documentary evidence.  It is Tesla's position that such evidence was inadmissible and prejudicial

8   at the first trial and is certainly inadmissible and prejudicial at a damages-retrial, where

9   liability has already been established.  Any claims or arguments regarding harassment and

10

11   [9]  [*Mr. Diaz's Position*]  Despite knowing Mr. Hurtado was Mr. Diaz's harasser, Tesla never amended its initial disclosures to include Hurtado, never produced his contact information to Mr.

12   Diaz, and never identified Hurtado as a witness. Mr. Diaz has had no opportunity to depose Hurtado.

13   [10]  [*Mr. Diaz's Position*]  After discovery closed, on October 3, 2019, Tesla produced a document

14   indicating that Mr. Donet was responsible for addressing racist graffiti in restrooms during Mr. Diaz's tenure at Tesla. Dkt. 110 3:14-20. However, the Court only permitted Mr. Diaz to depose

15   Donet for 45 minutes and ordered Mr. Diaz to "focus narrowly on the time periods during which plaintiff[] worked at Tesla and [his] work areas in the factory." *Id.* 3:23-4:3.  Although Tesla

16   thereafter designated Mr. Donet as witness at the first trial, it chose not to call him as a witness.

17   Further, the Court did not admit into evidence Exhibit 109, which identified graffiti in the restroom close to Mr. Diaz's work area that Mr. Donet allegedly cleaned shortly after Mr. Diaz

18   stopped working at the factory.

19   [11]  [*Mr. Diaz's Position*]  Tesla has presented no evidence that Ms. Chavez or Mr. Winton worked at Tesla while Mr. Diaz worked there, nor has it demonstrated any connection between these

20   witnesses and Mr. Diaz. Absent such a connection, these witnesses' testimony is simply irrelevant. Mr. Winton's testimony is further irrelevant because it appears to solely concern remedial actions

21   Tesla undertook after Mr. Diaz left the Tesla factory. Evidence of subsequent remedial measures is irrelevant to Mr. Diaz's claims and is not a defense—and thus the entire scope of his testimony is

22   irrelevant.

23   Tesla identified these witnesses to Mr. Diaz only recently. Mr. Diaz has had no opportunity—and no right, given the long-ago expired discovery cutoff—to depose these

24   witnesses, nor has Mr. Diaz had an opportunity to test the veracity of their testimony through interrogatories and requests for production. Such an opportunity would be especially crucial here,

25   as Tesla now seems to be planning to replace the testimony of its Person Most Knowledgeable just weeks before trial, after five years of litigation. Tesla is bound by its previous PMK's testimony

26   on May 29, 2019, which included testimony about Tesla's policies and procedures on race

27   harassment in effect "from 2014 to the present." (PMK Depo. p.33:4-8), and should not be allowed to introduce two new, never-disclosed witnesses on the eve of trial, depriving Mr. Diaz of

28   the opportunity to conduct any meaningful follow-up discovery.

1  discrimination that Mr. Diaz did not personally experience are not related to a finding of

2  compensatory or punitive damages.  Mr. Diaz cannot be awarded damages for alleged

3  reprehensible conduct he did not personally experience.  Moreover, if "Me Too" evidence is

4  permitted, Tesla has the right to rebut such evidence, which surely will result in time-consuming

5  mini trials within a trial solely focused on the issue of damages.

6          Additionally, at a damages-only retrial, because liability has already been established, Mr.

7  Diaz should not be permitted to testify regarding any additional alleged harassing or

8  discriminatory misconduct he suffered above and beyond what was already presented through

9  evidence at the first trial.

10          Further, Tesla recently received an updated report from Mr. Diaz's damages expert, Mr.

11  Mahla, on the economic value and financial condition of the company.  Tesla is meeting and

12  conferring with Mr. Diaz regarding the valuation he intends to present to the jury and reserves its

13  right to exclude any valuation that post-dates claims made by Mr. Diaz.

14  **IV.     TRIAL LENGTH**

15          At the first trial, the Court granted each side 12 hours to present its respective case, for a

16  total of 24 hours.  While liability has already been established, and issues related to joint

17  employer, contractor, or staffing-agency relationships will not be contested at a damages-only

18  retrial, depending on the Court's ruling regarding the scope of permissible evidence, the parties are

19  jointly requesting 10 hours each to present opening statements, trial testimony and closing

20  arguments, for a total of 20 hours.

21  **V.     JOINT STATEMENT OF THE CASE AND JURY INSTRUCTIONS**

22          The proposed joint statement of the case is due to the Court on February 13, 2023.  The

23  deadline to exchange proposed jury instructions and the verdict form is January 30, 2023, with a

24  deadline to file with the Court on February 8, 2023.

25          On January 6, 2023, before the parties' meet and confer discussion, Mr. Diaz submitted to

26  Tesla a proposed Statement of the Case and proposed Jury Instructions on issues relating to the

27  prior trial. A copy of that proposed Statement and those proposed Jury Instructions are attached as

28  Exhibits A and B, respectively.

Tesla has not yet had a full opportunity to consider and provide its edits to the proposed Statement of the Case and Jury Instructions that Mr. Diaz's counsel provided on January 6.  Tesla will continue to meet and confer with counsel for Mr. Diaz regarding these documents and will submit its positions on them as soon as possible and in all events in accordance with the schedule the Court previously set for exchanging and submitting these documents.

The parties will also continue to meet and confer on the remaining necessary jury instructions, with the goal of streamlining the instructions for a damages-only retrial.

DATED:  January 10, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Dan Posner*

Kathleen M. Sullivan
Daniel C. Posner
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

Asher Griffin (appearance *pro hac vice*)
ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

Alex Spiro (appearance *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (213) 443-3100

*Attorneys for Defendant Tesla, Inc.*

DATED:  January 10, 2023

CALIFORNIA CIVIL RIGHTS LAW GROUP
ALEXANDER MORRISON + FEHR LLP
ALTSHULER BERZON LLP

By _/s/ Larry Organ_

Lawrence A. Organ

Cimone A. Nunley
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone: (415)-453-7352
Facsimile: (415)-785-7352

J. Bernard Alexander III
ALEXANDER MORRISON + FEHR LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 394-0888
Facsimile: (310) 394-0811

Michael Rubin
Jonathan Rosenthal
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Plaintiff Owen Diaz*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF CONCURRENCE**

I, Daniel C. Posner, am the ECF user whose ID and password are being used to file this JOINT CASE MANAGEMENT STATEMENT. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

DATED:  January 10, 2023                                          By  */s/ Dan Posner*