Pages 1-17

1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
2                      SAN FRANCISCO DIVISION

3

4  OWEN DIAZ,                        )  Case No.  17-cv-06748-WHO
                                     )  San Francisco, California
5            Plaintiff,              )
                                     )  Tuesday, January 17, 2023
6      v.                            )
                                     )  ZOOM WEBINAR PROCEEDINGS
7  TESLA, INC., et al.,              )
                                     )
8            Defendants.             )
   _____   )

9

10

11            TRANSCRIPT OF CASE MANAGEMENT CONFERENCE
            BEFORE THE HONORABLE WILLIAM H. ORRICK
12             UNITED STATES DISTRICT COURT JUDGE

13

14  APPEARANCES:  (Via Zoom)

15  For Plaintiff:           LAWRENCE ANTHONY ORGAN, ESQ.
                            CIMONE ANNMARIE NUNLEY, ESQ.
16                          California Civil Rights Law Group
                            332 San Anselmo Avenue
17                          San Anselmo, California 94960
                            (415) 453-4740
18
                            JBA BERNARD ALEXANDER, III
19                          Alexander Morrison + Fehr LLP
                            1900 Avenue of the Stars, Suite 900
20                          Los Angeles, California 90067
                            (310) 394-0888
21

22
    **[Counsel Appearances Continue on the Following Page]**
23

24

25  Proceedings recorded by electronic sound recording; transcript
    produced by transcription service.

2

```
 1   APPEARANCES:  (Cont'd.)

 2   For Plaintiff:              MICHAEL RUBIN, ESQ.
                                 Altshuler Berzon LLP
 3                               177 Post Street, Suite 300
                                 San Francisco, California 94108
 4                               (415) 421-7151

 5   For Defendants:             DANIEL C. POSNER, ESQ.
                                 Quinn Emanuel Urquhart & Sullivan LLP
 6                               865 S. Figueroa Street, 10th Floor
                                 Los Angeles, California 90017
 7                               (213) 443-3000

 8                               ASHER GRIFFIN, ESQ.
                                 Quinn Emanuel Urquhart & Sullivan LLP
 9                               300 W. 6th Street, Suite 2010
                                 Austin, Texas 78701
10                               (737) 667-6100

11   Transcription Service:      Peggy Schuerger
                                 Ad Hoc Reporting
12                               2220 Otay Lakes Road, Suite 502-85
                                 Chula Vista, California 91915
13                               (619) 236-9325

14

15

16

17

18

19

20

21

22

23

24

25
```

1    SAN FRANCISCO, CALIFORNIA  TUESDAY, JANUARY 17, 2023  1:54 P.M.

2                              --oOo--

3              THE CLERK:  And we will get underway with Case Number

4    17-6758, Diaz v. Tesla, Inc.  Counsel, if you would, please, state

5    your appearance for the record.

6              MR. ORGAN:  Larry Organ for the Plaintiff.

7              MR. ALEXANDER:  Bernard Alexander for the Plaintiff.

8              MR. RUBIN:  And Michael Rubin for the Plaintiff.

9              MR. POSNER:  Dan Posner for the Defendant Tesla.

10             MR. GRIFFIN:  Asher Griffin for the Defendant Tesla.

11             THE COURT:  All right.  Good afternoon to you, all, and

12   thank you for sending the joint statement.  That was exactly what

13   I was looking for before, so I appreciate your doing -- doing that

14   helps me get a sense of where things stand.

15             It appears to me -- so I'm going to give you my sense of

16   all these things and then you can, to the extent it's worth

17   talking further about them, we can do that now or we can save that

18   for the pretrial conference.  It appears that I have a lot of

19   discretion in the shape of the trial, and I would exercise that

20   discretion in not allowing the evidence regarding incidents.  I

21   would allow what was admitted before.  I wouldn't have new

22   witnesses who weren't listed before testifying.  Ms. Heisen's

23   testimony by video I think would be okay, but I also think the

24   defense -- if it chooses to have a new PMK give live testimony,

25   that would also be okay, but the testimony could not be materially

1    different than what had previously been given.

2          To the extent -- I'll look at motions in limine that

3    target specific testimony.  My memory of what Tesla was referring

4    to as "Me Too" evidence would go, I would think, to pervasiveness

5    and punitive damages.  But I'm happy to look at specific things if

6    there's a concern about that.

7          My trial plan is that you're going to finish this trial

8    the week that we start it.  So it's starting on March 27th.  It's

9    going to finish on the 31st.  Each side will have nine hours and

10   we'll go as long -- we'll have a full day on Monday and hopefully

11   get into the -- and complete the opening statements, although that

12   may be aggressive.  We'll see.

13         But then on Friday, we would have a long day as well and

14   the other Tuesday, Wednesday, Thursday will go 8:30 to 1:30.

15         MR. ORGAN:  Your Honor, are you going to do the -- are

16   we going to do jury selection like we did before -- the week

17   before?

18         THE COURT:  So -- so the -- the jury selection date is

19   I think going to be Monday, the 27th.  On the 24th, we'll consider

20   the questionnaires and we'll do that at a hearing at 1:30 in the

21   afternoon.

22         So you'll get the survey responses a couple of days in

23   advance of that.  I haven't figured out that -- those dates

24   completely with the Jury Office yet, but that you'll have them a

25   couple of days in advance of that.

1      And you'll have -- we can --- we have the questionnaire.

2  I don't know that we need to tweak it at all.  But to the extent

3  that it does need to be tweaked, we would do that at the pretrial

4  conference.

5      And then with respect to the case statement and the

6  instructions that you have provided, I'll look at those at the

7  pretrial conference, so I don't think we need to get into those at

8  this point.

9      So that's my -- those are my thoughts about this, so let

10 me start with the Plaintiffs.  Is there any -- do you have any

11 questions about this or want to discuss anything in particular

12 prior to the pretrial conference?

13     MR. ALEXANDER:  Not at this time.

14     THE COURT:  Okay.

15     MR. RUBIN:  I would just add one thing, Your Honor.

16     THE COURT:  Sure.

17     MR. RUBIN:  The parties are -- we're still meeting and

18 conferring, and I suspect the versions of the statement in the

19 instructions will be somewhat different by the time they get to

20 resolve.  We'll continue to talk about them.

21     THE COURT:  Good.  I'm glad you're doing that.  And --

22 but if you can't agree, then I can -- they're close enough now

23 that I can fix them, but I would prefer that you agree on them as

24 opposed to for me.

25     MR. ORGAN:  I've --

6

1          THE COURT:  I'm sorry?

2          MR. ORGAN:  Yeah.  I've got one more thing, Your Honor.

3  I'm sorry.  And that has to do with exhibits.  I assume based on

4  your ruling then, the scope of exhibits would be what was admitted

5  in the first trial, subject to relevance in the second trial.  Is

6  that --

7          THE COURT:  That's the way that I'm thinking about it.

8  And, again, if there are specific exhibits that you -- if you

9  disagree on the admissibility for some other reason, I'm -- you

10  can raise it at the motions in limine, but that's the way that I'm

11  thinking about the case generally.

12          MR. ORGAN:  Okay.

13          THE COURT:  Mr. Posner or Mr. Griffin?

14          MR. POSNER:  Thank you, Your Honor.  So, you know, I

15  think the two most important issues are probably those that you

16  addressed -- the witness issue, which is who's going to be able to

17  testify, and scope of evidence -- "Me Too" evidence.

18          On the witness issues, I know -- I heard what Your Honor

19  said, what your inclination is, but we'd certainly like the

20  chance, the opportunity to make our argument more formally about

21  why certain of the witnesses that Your Honor might be inclined to

22  not let testify should testify.

23          In particular, Mr. Hurtado, and I think your -- your

24  preference it sounds like is not to add new witnesses or evidence.

25  We -- we might be open to -- you know, we feel like Mr. Hurtado

1    should be able to testify regardless because he was such a big

2    part of the first trial.  We might be able to replace him with one

3    of the witnesses who did testify in the first trial, so it

4    wouldn't add incrementally a new witness.

5          But there's issues about this that aren't fully formed

6    in our statement that we'd like the chance to address.  Can we do

7    that through a motion, a motion in limine, or would you rather

8    just wait to discuss it at the pretrial conference, or what would

9    your preference be?

10          THE COURT:  Well, so I think you'll have a pretty steep

11   hill to climb with Mr. Hurtado himself, given that he was never on

12   your initial lists.  I -- I always let people file things because

13   I get nervous when I don't that somebody's going to claim that I

14   didn't look at things fully.  You've done this to me before on

15   something that I've given a very clear indication on without --

16   and so I -- I will -- if you file -- if you don't think that

17   there's an issue that's fully fleshed out that you think needs to

18   be preserved in a particular way that's -- that I haven't allowed,

19   I'd like to allow you to do that.  But I -- just --

20          MR. POSNER:  You're appropriately gun-shy, Your Honor.

21   We understand.  But it's an important issue.  I believe we said he

22   was mentioned 90 times at the first trial and --

23          THE COURT:  You might do better trying to limit argument

24   that you should -- that the Plaintiff should limit what they say.

25   As an -- about Mr. Hurtado.  As an example, I think you said in

1    the last CMC statement that Mr. Alexander mentioned him 58 times

2    or something like that into closing, whatever -- whatever that was

3    and that you refused to bring him forward.  Well, that's not true

4    anymore because you really want to bring him forward, so I think

5    you people would have to be more judicious in how that was

6    described, but -- it's up to -- if you think it's -- it would deny

7    your client a fair trial for some reason, I'm happy to take a look

8    at it and make a ruling.

9           MR. POSNER:  Understood.  And the other issue that I

10   heard Your Honor say is that the "Me Too" evidence would likely go

11   to pervasiveness for purposes of reprehensibility.  We do think

12   the law draws a pretty clear distinction, a clear distinction

13   between the admissibility and the relevance of evidence of harm to

14   others with respect to the threshold determination of

15   reprehensibility and whether there should be punitive damages on

16   the one hand and, on the other hand, the amount of punitive

17   damages.

18          And so we made our pitch before that this trial, because

19   of the overlapping evidence between liability and damages, should

20   revisit the findings of liability.  We're moving past that.  But

21   given that this trial now is limited to damages, the amount of

22   damages, we feel the law is clear that that evidence doesn't come

23   in at all.  And this is the Supreme Court -- the *Philip Morris*

24   case, *Philip Morris v. Williams*, and the Ninth Circuit *White v.*

25   *Ford* case.

1        So that seems like an appropriate motion in limine for

2    us to bring.  Given that it's exclusion of evidence, we'll try to

3    be as specific as we can, but it sounds like Your Honor would be

4    open to us filing that motion.

5        THE COURT:  Yeah, absolutely.  Because I did not go back

6    to any of the evidence and I certainly didn't go to the law, but

7    that was my -- I told you what my recollection was of the evidence

8    and how -- how it played in.

9        MR. POSNER:  Understood.  This is more of a clerical

10   point.  There's a -- there's a deadline in the previous court

11   schedule to exchange motions in limines several days before

12   they're filed.  I sent an email to counsel about that.  Maybe

13   that's something we can work out, but because it's an order, I

14   wanted to bring it up as well.

15       I think the January 30 exchange date is sort of a

16   catchall of certain pretrial filings which include motions in

17   limine, but it seems maybe unnecessary to exchange our motions in

18   limine before they're filed on the 3rd.  And so I'm wondering if

19   we could avoid that January 30 exchange deadline.  Suffice it to

20   say we've been meeting and conferring on motions in limine.  We'll

21   continue to do so.  But if we could just simply file motions on

22   the 3rd without having to exchange them on the 30th.

23       THE COURT:  I think that's up to you.  As long as you

24   don't change dates that I'm interested in.  The reason to exchange

25   them is to give the other sides a heads up as to what the issues

1   are.  Maybe you can avoid filing those motions and that's the --

2   that's the entire purpose of them -- of that order.  But if you --

3   if the -- if both sides decide that it's unnecessary, then that's

4   -- you can dispense with them.

5          MR. POSNER:  Understood.

6          MR. RUBIN:  We'll discuss it among counsel, Your Honor.

7   But just as, despite all the meet and confers, today is the first

8   time we heard a reference to *Philip Morris* and *White*.   It's

9   probably in our interest to have those extra three days knowing

10  what Tesla's going to argue, but we'll talk about it with counsel.

11         THE COURT:  Okay.

12         MR. POSNER:  Your Honor, there's no deadline to file

13  reply briefs on motions in limine.   Is that Your Honor's

14  preference?

15         THE COURT:  I think there's a reason that there's no

16  deadline, is usually I don't take them.  I look at what the

17  motions are and then I -- I make my rulings, so that's -- that

18  would be why and that's -- they get filed -- again, I don't know

19  what the time is, so that's why there's no deadline for them.

20         MR. POSNER:  Okay.  Yes.  I understand.  I defer to Mr.

21  Griffin for further issues about witnesses and things.

22         MR. GRIFFIN:  Your Honor, Asher Griffin for Tesla.  I

23  wanted to seek a clarification on the witness point.  One of the

24  witnesses that we identified in our statement was Andres Donet.

25  That was a witness who was deposed in the first case prior to

1   trial and that was, like Mr. Hurtado, a witness that Plaintiff's
2   counsel referred to as someone that Tesla didn't call in the first
3   trial.  And so I was seeking clarification.  Given that he was
4   disclosed and deposed prior to the first trial, would there be any
5   indication on Tesla's ability to call Mr. Donet in this case?
6        THE COURT:  Well, I was thinking that -- that there
7   would be because he didn't testify in the first -- you made a --
8   the -- your client made choices in how the case was going to be
9   presented in the first trial.  And the only issues that are open
10  for discussion are the -- are the damages issues and punitive
11  damages.
12       So I'm not -- the shape of the case on all the other
13  issues I was hoping to have as consistent with the first one as
14  possible.  I think there was something else that the Plaintiffs
15  had mentioned about Mr. Donet and his lack of relevance in this
16  case, but that's the way that I'm thinking about it, Mr. Griffin.
17  Again, if there is some fundamental reason why his testimony
18  should be presented in light of the choices that your client has
19  already made, I'll look at it.
20       MR. GRIFFIN:  I think that -- Your Honor, I think that
21  one of the issues is similar to the issue with Mr. Hurtado, that
22  in closing argument there was argument that we didn't bring Mr.
23  Donet in to respond to questions about graffiti in the bathrooms
24  and the like and how that was addressed.  And, you know, obviously
25  similar to Mr. Hurtado here, you know, we would like to have the

1   opportunity to bring Mr. Donet in to address those concerns,

2   either by live or his deposition testimony.  And so --

3          THE COURT:  So you might make that alternative motion

4   that I was -- I was suggesting to Mr. Posner, but you can do both

5   -- make both motions and then I'll look at it if you -- if you

6   think that it's appropriate to do so.

7          MR. GRIFFIN:  Okay.  And then -- I'm going to clarify,

8   but I think I might understand where you're going to go.  With

9   regards to the exhibits, obviously there were exhibits entered in

10  the first trial but there were obviously more documents produced

11  by either side other than the admitted exhibits, and it was our

12  intention to review the documents that were in the parties'

13  possession, not, you know, rely on new documents or produce new

14  material.  But to the extent we wanted to use documents that are

15  in the record or in the parties' possession that may have been

16  deposition exhibits but not admitted in the first trial, we wanted

17  the Court's guidance on -- on whether or not we would have the

18  opportunity to make different strategic decisions on what -- how

19  to use certain documents, how to use -- with certain witnesses in

20  the retrial.

21         THE COURT:  Yeah.  And, again, generally I think my --

22  my instinct is no, that the record is -- is the record.  But if

23  there is some reason why it is -- it would be unfair to exclude

24  something, then I'm happy to take a look at that at the pretrial

25  conference.

1          MR. GRIFFIN:  Thank you, Your Honor.

2          MR. ORGAN:  Your Honor, I do have a question about that.

3    If Defendants -- if Defendant decides to make a motion about those

4    exhibits, many of the exhibits were marked as confidential.   I

5    assume that in lodging them with the court, that confidentiality

6    component  of  the  Court's  protective  order  then  is  sort  of

7    expunged, such that any documents that were lodged with the court,

8    even if they weren't admitted into evidence, the confidentiality

9    goes away so that we don't have to file those things under seal.

10          Is that correct, Your Honor?

11          THE COURT:  I'm not exactly sure what you just said, Mr.

12    Organ.   My belief is that if you've got -- if there is some

13    agreement  regarding  confidentiality,  that  you  ought  to  follow

14    whatever that agreement is and -- and then I take a look at things

15    and see whether they actually should be filed under seal.   But I

16    can't give you a blanket don't follow an agreement that you've

17    already entered ruling.

18          MR.  ORGAN:   I  understand,  Your  Honor.   I  was  just

19    wondering if the fact that we had filed them with the court or

20    lodged them with the court under the standard protective order

21    that the Northern District has, whether or not that essentially

22    means that they are now in the public domain.   That was my

23    question.  I guess I didn't articulate it very well, so --

24          THE COURT:  So my suggestion is that you look at the

25    Local Rule with respect to sealing and how that operates.   If --

1    if a document is filed under seal, it will stay under seal until

2    I make a ruling one way or another that it's appropriate to be

3    sealed.   And -- but if it's a document that is going to be

4    introduced into evidence at trial, it's very unlikely that I'm

5    going to maintain the confidentiality of that document unless it's

6    a super secret kind of a thing, which in this case may relate

7    to -- I would have to take a look at the document.

8             MR. ORGAN:   Okay.   Thank you, Your Honor.   I appreciate

9    that.

10            MR. GRIFFIN:   Your Honor, and I apologize.   I have one

11   more question about the scope of the evidence in retrial.   We

12   discussed with Plaintiff's counsel their expert on psychiatric

13   issues and Mr. Diaz's mental state.   And my understanding --

14   Plaintiff's counsel, correct me if I'm wrong -- is that they don't

15   intend to update that report, but we were considering Mr. Diaz's

16   testimony about his mental state.   We obviously know what -- where

17   he was as of October 2021, but now we're 18 months past that and,

18   you know, it would be our expectation that there wouldn't be any

19   new evidence of mental anguish or harm or any considerations past

20   October 2021 that would be able to be presented to this jury in

21   the retrial.

22            Is that your understanding, Your Honor?

23            THE COURT:   Well, it's my understanding that the expert

24   report wouldn't be able to be updated.   And in general, I would

25   agree with you that the -- the evidence really is the evidence as

1    of the -- the time of the first trial.

2         MR. GRIFFIN:   Thank you, Your Honor, because it just

3    highlights the issue we were concerned about.   If there had been

4    issues post-October 2021 through March that we were unaware of,

5    then we didn't want to have a situation where that was surprise

6    during the course of trial.

7         THE COURT:   I assume, Mr. Organ and Mr. Alexander, that

8    that's not the case?

9         MR. ORGAN:   Yeah.   We are not updating the report, Your

10   Honor.

11        THE COURT:   Okay.

12        MR. ORGAN:   We heard --

13        THE COURT:   And there is no new evidence that you --

14        MR. ORGAN:   No.

15        THE COURT:   -- would be presenting about Mr. Diaz's

16   emotional state in the last year and a bit?

17        MR. ORGAN:   Right.   And, similarly, there would be no

18   evidence about his state since the -- since the last trial so that

19   they can't put in any kind of (indiscernible) or anything like

20   that since then.

21        MR. ALEXANDER:   And the issue is there would be no

22   questioning of him for anything -- for anything after that time

23   period of -- of the last verdict.   So everything is from the

24   verdict backwards.

25        THE COURT:   Yeah.   And I think that -- I think we have

1    to be very clear about that.  So let's make sure that -- that

2    everybody is on the same page at the pretrial conference, but that

3    would be my anticipation.  And how that -- whether it needs to be

4    explained to the jury or -- and how we explain it is something

5    that you all should consider.

6              MR. POSNER:  Thank you, Your Honor.

7              THE COURT:  Okay.  Anything else at this point.

8              MR. ORGAN:  Your Honor, I can't remember.  Is there a

9    limit on MILs?

10            THE COURT:  There is no limit on the number of MILs.

11   There's a page limit of 25 pages.

12            MR. ORGAN:  Okay.

13            THE COURT:  Total.

14            MR. ORGAN:  Yeah.

15            THE COURT:  All right.  Anything further?

16            MR. ORGAN:  No, Your Honor.

17            MR. POSNER:  No, Your Honor.

18            THE COURT:  All right.  Well, I will look forward to

19   seeing you again.

20            MR. RUBIN:  Thank you, Your Honor.

21            MR. ORGAN:  Thank you, Your Honor.

22            MR. POSNER:  Thank you, Your Honor.

23            MR. GRIFFIN:  Thank you, Your Honor.

24            THE COURT:  Have a good afternoon.

25            MR. ORGAN:  Take care.  Bye-bye.

17

1              MS. NUNLEY:  Thank you, Your Honor.

2         (Proceedings adjourned at 2:17 p.m.)

3

4              I, Peggy Schuerger, certify that the foregoing is a

5    correct transcript from the official electronic sound recording

6    provided to me of the proceedings in the above-entitled matter.

7
                *Peggy Schuerger*
8    _____      January 19, 2023_____
     Signature of Approved Transcriber      Date

9

     Peggy Schuerger_____
10   ***Ad Hoc Reporting***
     Approved Transcription Provider
11   for the U.S. District Court,
     Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25