QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (appearance *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Daniel C. Posner (CA Bar No. 232009)
  danposner@quinnemanuel.com
  Mari F. Henderson (CA Bar No. 307693)
  marihenderson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART
&SULLIVAN, LLP
  Asher Griffin (appearance *pro hac vice*)
  ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| OWEN DIAZ, | Case No. 3:17-cv-06748-WHO |
| Plaintiff, | **DEFENDANT TESLA, INC.'S MOTIONS *IN LIMINE*** |
| v. | Hearing Date: February 27, 2023 |
| TESLA, INC. d/b/a TESLA MOTORS, INC., | Time: 2:00 p.m. |
| Defendant. | Place: Courtroom 2, 17th Floor |
| | Judge: Hon. William H. Orrick |

## NOTICE OF MOTIONS AND MOTIONS

TO ALL PARTIES, THEIR COUNSEL OF RECORD, AND THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that at 2:00 p.m. on February 27, 2023, or as soon thereafter as the matter may be heard in the courtroom of the Honorable William H. Orrick in Courtroom 2 of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Tesla, Inc. ("Tesla"), by and through its undersigned counsel, will move the Honorable William H. Orrick for orders (1) permitting testimony from witnesses Robert Hurtado and Andres Donet; (2) excluding Plaintiff Owen Diaz's standard-of-care expert Amy Oppenheimer; (3) admitting Exhibits 229, 248, 252, and 254; and (4) excluding evidence of alleged racist conduct not directed at or experienced by Mr. Diaz.

These motions are made under Fed. R. Evid. 401 and 403, Civ. L.R. 7, the authorities cited herein, this Court's Pretrial Order for Civil Cases, and this Court's Order dated July 12, 2022 (Dkt. 352). These motions are based on this Notice of Motions and Motions; the attached Memorandum of Points and Authorities; the Declaration of Robert Hurtado; the arguments of counsel; and all other material that may properly come before the Court or before the hearing on these Motions.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether this Court should permit testimony from Messrs. Hurtado and Donet.

2.      Whether this Court should preclude testimony from Ms. Oppenheimer.

3.      Whether this Court should admit Exhibits 229, 248, 252, and 254.

4.      Whether this Court should exclude evidence of alleged racist conduct not directed at or experienced by Mr. Diaz.

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTIONS AND MOTIONS ................................................................................... ii

I.   MOTION *IN LIMINE* NO. 1 TO PERMIT TESTIMONY FROM WITNESSES
     ROBERT HURTADO AND ANDRES DONET ................................................................. 1

     A.   Robert Hurtado ....................................................................................................... 1

     B.   Andres Donet ........................................................................................................... 5

II.  MOTION *IN LIMINE* NO. 2 TO EXCLUDE PLAINTIFF'S STANDARD-OF-
     CARE EXPERT AMY OPPENHEIMER ......................................................................... 7

III. MOTION *IN LIMINE* NO. 3 TO ADMIT EXHIBITS 229, 248, 252, AND 254 ............... 8

IV.  MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF ALLEGED RACIST
     CONDUCT NOT DIRECTED AT OR EXPERIENCED BY MR. DIAZ ....................... 11

     A.   Evidence Of Conduct Not Directed At Or Experienced By Mr. Diaz Is
          Irrelevant To Compensatory Damages ................................................................. 13

     B.   Evidence Of Conduct Not Directed At Or Experienced By Mr. Diaz Is
          Constitutionally Barred From A Calculation Of Punitive Damages .................... 13

     C.   The Court Should Additionally Exclude Hearsay Evidence Of Conduct Not
          Directed At Mr. Diaz ............................................................................................. 16

     D.   At A Minimum, The Court Should Exclude Evidence Of Conduct Not
          Directed At Mr. Diaz That Was Excluded On Tesla's Prior Motion *In
          Limine* ................................................................................................................... 17

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beasley v. Lucky Stores, Inc.*,
  400 F. Supp. 3d 942 (N.D. Cal. 2019) ........................................................ 15

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ...................................................................................... 8

*Dugan v. Nance*,
  2013 WL 4479289 (C.D. Cal. Aug. 20, 2013) ............................................ 16

*Dykzeul v. Charter Commc'ns, Inc.*,
  2021 WL 4522545 (C.D. Cal. Feb. 3, 2021) .............................................. 16

*Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*,
  2013 WL 3803911 (E.D. Cal. July 19, 2013)..............................1, 2, 3, 4, 10, 11

*Gillum v. United States*,
  309 F. App'x 267 (10th Cir. 2009) ............................................................... 5

*Gribben v. United Parcel Serv., Inc.*,
  528 F. 3d 1166 (9th Cir. 2008) ..................................................................... 2

*Grisham v. Philip Morris, Inc.*,
  670 F. Supp. 2d 1014 (C.D. Cal. 2009) ...................................................... 16

*Hagan v. Cal. Forensic Med. Grp.*,
  2009 WL 689740 (E.D. Cal. Mar. 5, 2009) .................................................. 2

*Hardeman v. Monsanto Co.*,
  997 F.3d 941 (9th Cir. 2021) ....................................................................... 14

*Hoffman v. Tonnemacher*,
  2006 WL 3457201 (E.D. Cal. Nov. 30, 2006) .............................................. 3

*Leavey v. Unum Provident Corp.*,
  295 F. App'x 255 (9th Cir. 2008) ................................................................ 15

*McBroom v. Ethicon, Inc.*,
  341 F.R.D. 40 (2022) (D. Ariz. April 8, 2022) ............................................. 8

*Mister. Illinois Cent. Gulf R. Co.*,
  790 F. Supp. 1411 (S.D. Ill. 1992) .............................................................. 13

*Mort v. DeJoy*,
  2022 WL 14129778 (E.D. Cal. Oct. 24, 2022) ............................................. 2

*Mustang Mktg., Inc. v. Chevron Prods. Co.*,
  2006 WL 5105559 (C.D. Cal. 2006) ............................................................. 2

*Parker v. BNSF Ry. Co.*,
   2021 WL 4819910 (W.D. Wash. Oct. 15, 2021) ........................................................ 17

*Philip Morris USA v. Williams*,
   549 U.S. 346 (2007) ...............................................................................................14, 15

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008) ...................................................................................................... 12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ...........................................................................................13, 14, 15

*Tobin v. Chichester Sch. Dist.*,
   2021 WL 9762986 (E.D. Pa. Dec. 14, 2021) ................................................................ 16

*Watson v. City of San Jose*,
   800 F.3d 1135, 1138 (9th Cir. 2015) ............................................................................ 13

*White v. Ford Motor Co.*,
   500 F.3d 963 (9th Cir. 2007) ........................................................................................ 15

*Winzer v. Hall*,
   494 F.3d 1192 (9th Cir. 2007) ...................................................................................... 17

## RULES

Fed. R. Civ. P. 16(e) .....................................................................................................3, 10

Fed. R. Civ. P. 26(a)(3)(A) .................................................................................................. 2

Fed. R. Evid. 403............................................................................................8, 11-13, 16

## OTHER AUTHORITIES

11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure
   § 2803 (3d ed. 2018)........................................................................................................1

Tesla respectfully requests that the Court grant the four motions *in limine* set forth below.

## I.   MOTION *IN LIMINE* NO. 1 TO PERMIT TESTIMONY FROM WITNESSES ROBERT HURTADO AND ANDRES DONET

Tesla requests that the Court allow it to call Robert Hurtado and Andres Donet to testify at the retrial.  While Tesla understands the Court's general admonition that the "parties will be bound by the choices made in the original trial" (Dkt. 376), it is well-established that the Court has broad discretion "to admit or exclude new evidence or witnesses on retrial."  *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, 2013 WL 3803911, at *1 (E.D. Cal. July 19, 2013); *see, e.g.*, *id.* at *1-4; *see also* 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2803 (3d ed. 2018).  The Court should exercise that discretion here to allow both Mr. Hurtado and Mr. Donet to testify.

### A.   Robert Hurtado

Mr. Hurtado is a Materials Supervisor at Tesla who interacted with Mr. Diaz when Mr. Diaz was at the Fremont factory in 2015 and 2016.  *See* Declaration of Robert Hurtado ("Hurtado Decl.") ¶¶ 1-3 (Jan. 30, 2023).  At the first trial, Mr. Diaz made Mr. Hurtado a focal point of his allegations that Tesla allowed a racially hostile environment.  Indeed, Mr. Diaz and his counsel mentioned Mr. Hurtado's name more than 50 times over the six-day trial, accusing Mr. Hurtado of repeatedly calling him the n-word, "boy," "lazy," and other racially derogatory terms.  Declaration of Daniel C. Posner ("Posner Decl.") (Jan. 31, 2023), Ex. A (Trial Tr. vol. 3, 414:11-25, Sept. 29, 2021); *see also, e.g.*, *id.* 412:9-416:4, 466:8-467:9, 518:1-13.  In closing argument, Mr. Diaz's counsel exploited Mr. Hurtado's absence from the trial, arguing:

> Mr. Hurtado did not come in to testify in front of you. . . .  They had the ability to bring Mr. Hurtado in front of you.  And if defendant has the ability . . . to bring in better evidence, but they bring in weak evidence, you have the right to ignore that evidence or discount that evidence.  If Mr. Hurtado, who did this heinous conduct, did not engage in it, Tesla had the ability, but failed to put it in front of you.

Posner Decl., Ex. B (Trial Tr. vol. 6, 889:17-890:4, Oct. 4, 2021).  Mr. Diaz has indicated he intends to make similar accusations against Mr. Hurtado at the retrial, and his counsel has declined to agree not to discuss Mr. Hurtado's absence from the retrial at closing.  Yet Mr. Diaz objects to permitting Mr. Hurtado to testify on the ground he was not disclosed as a witness during discovery before the first trial.

1        The Court should permit Mr. Hurtado to testify at the retrial.

2        ***First***, and at the very minimum, the Court should permit Mr. Hurtado to testify at the retrial

3 for purposes of impeachment.  Admission of new evidence for impeachment does not require pre-

4 trial disclosure, Fed. R. Civ. P. 26(a)(3)(A), and thus the basis for Mr. Diaz's objection to Mr.

5 Hurtado's testimony is irrelevant to his testimony as an impeachment witness.  *See, e.g.*, *Gribben v.*

6 *United Parcel Serv., Inc.*, 528 F. 3d 1166, 1171-72 (9th Cir. 2008) (holding testimony offered "for

7 impeachment purposes" admissible at trial despite no pretrial disclosure of the witness); *Mort v.*

8 *DeJoy*, 2022 WL 14129778, at *1 (E.D. Cal. Oct. 24, 2022) (allowing defendant to add previously

9 undisclosed witness for impeachment purposes, which "refers to attacks on the credibility of a

10 witness" (quoting *Hagan v. Cal. Forensic Med. Grp.*, 2009 WL 689740, at *1-2 (E.D. Cal. Mar. 5,

11 2009))); *Fresno Rock Taco*, 2013 WL 3803911, at *3 (allowing testimony for impeachment

12 purposes at retrial of witness not disclosed in pre-trial discovery); *Mustang Mktg., Inc. v. Chevron*

13 *Prods. Co.*, 2006 WL 5105559, at *5 (C.D. Cal. 2006) (denying motion to preclude four undisclosed

14 witnesses from testifying because opposing party proffered them as impeachment witnesses).

15        As Mr. Hurtado explains in his declaration, his testimony would impeach Mr. Diaz's

16 anticipated testimony that Mr. Hurtado supposedly directed racially derogatory words at Mr. Diaz

17 and that Mr. Diaz supposedly complained regarding Mr. Hurtado's alleged harassment to Tesla

18 supervisors who failed to respond.  Mr. Hurtado would testify that Mr. Diaz's accusations about him

19 are false, that he never used the "n-word" with Mr. Diaz (let alone in any racially hostile or

20 discriminatory way), and that he was never aware of any complaint Mr. Diaz made against him for

21 such use of racially hostile terms before this lawsuit.  Hurtado Decl. ¶¶ 13-15.  Moreover, Mr.

22 Hurtado would testify that he is himself a member of a racial minority who has suffered from racial

23 discrimination and is sensitive to it, and that Mr. Diaz's public accusations of racism have been

24 devastating to him and his family.  *Id*. ¶¶ 12, 16-17.  This Court should not preclude Mr. Hurtado

25 from testifying as an impeachment witness to assist the jury in assessing Mr. Diaz's credibility and

26 to defend his character if Mr. Diaz levels the same accusations again.  This testimony is directly

27 relevant to the amount of compensatory damages the jury should award Mr. Diaz and necessary to

28

its determination of which specific instances of harmful conduct that Mr. Diaz was (1) exposed to and (2) reported while working at the Fremont factory—issues the prior jury did not decide.

*Second*, the Court should also permit Mr. Hurtado to testify for purposes beyond impeachment, including about his employment relationship and personal interactions with Mr. Diaz, Mr. Diaz's performance issues and negative reactions to constructive criticism, and the reasons why Mr. Diaz insisted Mr. Hurtado communicate with him only by email. *Id.* ¶¶ 6-11. Even if adding Mr. Hurtado to the witness list is construed as amending the prior pre-trial order, a district court has clear discretion to amend a pre-trial order to avoid "a manifest injustice." Fed. R. Civ. P. 16(e). Allowing Mr. Hurtado to testify would avoid a manifest injustice under all four factors governing the Court's discretion to amend a pretrial order:  (1) the degree of prejudice or surprise to the nonmoving party if the order is modified; (2) the ability of the non-moving party to cure the prejudice; (3) any impact of the modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the moving party. *Fresno Rock Taco*, 2013 WL 3803911, at *2.

*No prejudice or unfair surprise to Mr. Diaz.*   While Mr. Diaz suggests he would be prejudiced because Tesla did not disclose Mr. Diaz as a witness before the first trial, that argument is without merit in light of Mr. Diaz's own decision to make Mr. Hurtado a focal point of his accusations at the first trial.  Mr. Diaz can hardly claim surprise or prejudice now from allowing the second jury to consider Mr. Hurtado's response to Mr. Diaz's extensive testimony about the alleged abuses he suffered from Mr. Hurtado.  *Id.* at *3 (allowing new witness to testify at retrial where the "subject of the testimony" was "an issue raised by Plaintiffs" in the first trial and thus "should not be a surprise").

*Mr. Diaz's ability to cure any prejudice.*   If there were any prejudice to Mr. Diaz from Tesla not disclosing Mr. Hurtado as a witness before the first trial, any such prejudice would be "curable" because Mr. Hurtado is ready and willing to provide a deposition, should Mr. Diaz desire one and the Court so permit.  *See Hoffman v. Tonnemacher*, 2006 WL 3457201, at *3 (E.D. Cal. Nov. 30, 2006) (permitting defendant to call new expert witness at retrial because court has the "ability to cure the surprise of adding" the witness by allowing plaintiff to "conduct a deposition").

1   ***No impact on the orderly and efficient conduct of the trial***.  Allowing Mr. Hurtado to testify

2   will not affect the conduct of the trial.  Tesla requests no additional time for this testimony beyond

3   the nine hours of trial time the Court has already granted Tesla to put on its case.  *See* Dkt. 376.  Nor

4   would Mr. Hurtado's testimony alter the scope of the trial, as Mr. Diaz intends to make Mr. Hurtado

5   a focal point of the retrial, just as he did in the first trial.

6   To the contrary, allowing Mr. Hurtado to testify would promote the orderly administration

7   of the trial by helping to ensure that the verdict is supported by the evidence presented.  This Court

8   concluded in its order granting new trial or remittitur that the first jury's damages award vastly

9   exceeded the maximum damages amount supported by the record.  *See* Dkt. 328.  Allowing Mr.

10  Hurtado to testify at the retrial will help ensure that the new award is not again inflated by

11  unchallenged but false assertions that Mr. Hurtado engaged in supposedly reported, but

12  unaddressed, misconduct.

13  ***Tesla's good faith in seeking to call Mr. Hurtado***.  Tesla's decision not to call Mr. Hurtado

14  at the first trial should not be held against it now, because it was reasonable at the time.  Mr. Diaz

15  did not indicate during discovery the extent to which he intended to make Mr. Hurtado a focal point

16  of his testimony.  At his deposition, Mr. Diaz could not even recall ████████████████ and

17  denied knowing or recalling specific information about ████████████████ *See* Posner Decl.,

18  Ex. C (Diaz Dep. vol. I, 168:14-169:15, May 22, 2018).

19  Moreover, Mr. Diaz specifically denied at his deposition that he ████████████████

20  ████████████████—only to change his testimony at trial to assert that he did orally report

21  Mr. Hurtado to Ms. Delagrande.  *Compare id*. 171:8-21, *with* Posner Decl., Ex. A (Trial Tr. vol. 3,

22  467:12-17, Sept. 29, 2021); Ex. D (Trial Tr. vol. 5, 744:5-9, 748:2-4, 748:16-749:4, Oct. 1, 2021).

23  Thus, based on Mr. Diaz's deposition testimony, Tesla could not have anticipated a need to call Mr.

24  Hurtado to rebut accusations that Tesla created a hostile work environment.  But the circumstances

25  are now different after Mr. Diaz put Mr. Hurtado's alleged conduct front and center at the first trial,

26  and intends to do so again in the retrial.  *See, e.g.*, *Fresno Rock Taco*, 2013 WL 3803911, at *2

27  (amending pretrial order to allow new witness because "[t]he need for this testimony . . . did not

28  become clear until after [certain witnesses] testified at the first trial").  Tesla thus now seeks to call

Mr. Hurtado in good faith, so that the jury may ascertain the truth and Mr. Hurtado may clear his name. *See Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009) ("[L]itigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits.").

**Third and finally**, if the Court does not permit Mr. Hurtado to testify for any purpose, then Tesla respectfully requests that the Court mitigate the prejudice to Tesla and (1) preclude Mr. Diaz and his counsel from inviting the jury to draw any negative inference based on Mr. Hurtado's non-appearance at the retrial, and (2) give the jury the following cautionary instruction:

> Mr. Diaz has accused a former co-worker, Robert Hurtado, of making racially insensitive statements directed to him. Mr. Hurtado could not testify in this trial. You should not draw any inference about the credibility or truthfulness of Mr. Diaz's accusations about Mr. Hurtado based on the fact that Mr. Hurtado has not testified in this trial.

### B.   Andres Donet

Andres Donet is a Janitorial Employee Manager whose tasks include cleaning and maintaining bathrooms at Tesla's Fremont factory. At the first trial, Mr. Diaz testified that Tesla failed to clean up alleged racist graffiti to which Mr. Diaz and others were exposed in the factory's bathrooms. Mr. Diaz's counsel made much of Mr. Donet's absence in its closing argument:

> Remember, we talked about the graffiti? And you heard . . . I read a response to an interrogatory, and in the interrogatory it identified a person who worked in the facilities department, a person by the name of Andres Donet. Andres Donet was responsible for cleaning up graffiti inside the bathrooms. All right? And we put in testimony from Mr. Diaz saying that the graffiti was there the entire nine months that he was in the workplace. And you heard testimony from Mr. Wheeler that he saw that same graffiti. Tesla had the ability to bring its employee, Mr. Donet, before you to say: It was never there; or to say: I corrected the condition. I fixed it. I painted over it. Where is Mr. Donet?

Posner Decl., Ex. B (Trial Tr. vol. 6, 891:12-24, Oct. 4, 2021). Mr. Diaz's counsel has confirmed that Mr. Diaz intends to repeat this testimony at the retrial and has refused to agree to forego discussing Mr. Donet's absence in closing.

For the reasons discussed below in Motion *in Limine* No. 4 to exclude evidence of supposed harms experienced by persons other than Mr. Diaz, the Court should preclude Mr. Diaz from offering evidence regarding bathroom graffiti except to the extent Mr. Diaz experienced it personally. To the extent the Court permits Mr. Diaz to offer any evidence about racist graffiti he

claimed to have experienced, the Court should permit Tesla to respond with testimony from Tesla's janitorial manager that he did not see the graffiti Mr. Diaz described and that he cleaned up any graffiti he learned about. Mr. Donet's testimony is necessary to prevent manifest injustice to Tesla from the risk that, absent his testimony, the jury will improperly award damages against Tesla for failing to remove racist graffiti in the bathrooms when that is not true. This testimony is directly relevant to the amount of compensatory damages the jury should award Mr. Diaz and necessary to its determination of which specific instances of harmful conduct Mr. Diaz was (1) exposed to and (2) reported while working at the Fremont factory—issues the prior jury did not decide.

As with Mr. Hurtado, if allowing Mr. Donet is construed as an amendment to the pretrial order, all four factors warranting amendment to a pretrial order to avoid manifest injustice (*see supra* at 3) favor allowing Mr. Donet's testimony.

**No prejudice or unfair surprise to Mr. Diaz**. Mr. Donet's testimony could in no way cause prejudice or surprise to Mr. Diaz. Both parties identified Mr. Donet as a witness before the first trial. Dkt. 237 at 3. Mr. Diaz deposed Mr. Donet on October 24, 2019, when he testified that he did not recall seeing graffiti with the n-word or swastikas inside any factory bathrooms. Posner Decl., Ex. E (Donet Dep. 26:2-15, Oct. 24, 2019). And Tesla identified Mr. Donet in its interrogatory responses (which were later read to the jury) as the person responsible for cleaning and maintaining the factory bathrooms. *See* Posner Decl., Ex. F (Trial Tr. vol. 4, 689:10-22, 692:19-693:4, Sept. 30, 2021).

**No need to cure any prejudice**. Because Mr. Diaz already deposed Mr. Donet and he has long been identified as a witness in the case, there is no prejudice or surprise to Mr. Diaz, and thus no need to "cure" any prejudice. *See Fresno Rock Taco*, 2013 WL 3803911, at *3.

**No impact on the orderly and efficient conduct of the trial**. Tesla does not seek additional time to call Mr. Donet as a witness, and his testimony would likely take just a few minutes— consistent with the length the parties anticipated his testimony would take at the last trial. *See* Dkt. 237 at 3.

**Tesla's good faith in calling Mr. Donet**. Tesla seeks in good faith to introduce testimony of a witness who was disclosed in discovery, deposed, listed as a witness for the first trial, and later

identified to the jury via an interrogatory response.  Mr. Donet's brief testimony is necessary for the jury to make a fully informed decision in this case, and the Court should permit it.

Finally, if the Court precludes Tesla from offering testimony from Mr. Donet, then the Court should preclude Mr. Diaz's counsel from offering any evidence, including through the introduction of the interrogatory response that was read to the jury in the first trial, that Mr. Donet was the Tesla employee who would have been responsible for cleaning up any racist graffiti that was found in the Fremont factory bathrooms while Mr. Diaz was employed at Tesla, and from commenting on or arguing about Mr. Donet's absence from the trial.

## II.   MOTION *IN LIMINE* NO. 2 TO EXCLUDE PLAINTIFF'S STANDARD-OF-CARE EXPERT AMY OPPENHEIMER

Tesla respectfully requests that the Court exclude Amy Oppenheimer from testifying at the retrial because her testimony relates exclusively to liability, not damages.  Ms. Oppenheimer served as Mr. Diaz's expert at the first trial on the standard of care for human-resources investigations.  She testified at the first trial that her "opinion is that Tesla did not meet the standard of care in preventing and responding to and investigating multiple complaints of racial harassment that were articulated or brought by Owen Diaz."  Posner Decl., Ex. F (Trial Tr. vol. 4, 647:20-23, Sept. 30, 2021).

Mr. Diaz intends to call Ms. Oppenheimer to testify at the retrial about "industry standards for investigations and how Tesla's investigations did not meet that standard or the standard of Tesla's own policies and practices."  Dkt. 372 at 6.  These issues could be relevant only to whether Tesla is liable to Mr. Diaz for creating a hostile work environment.  The issues have no relevance to how Mr. Diaz was harmed by such alleged conduct, including either his past or future emotional distress, or to the amount the jury should award as punitive damages in consideration of the degree of reprehensibility of Tesla's conduct directed towards Mr. Diaz.

Indeed, in recognition that the second jury will not be asked to determine what the standard of care is or whether Tesla breached it, Mr. Diaz eliminated from his proposed jury instructions for the second trial (Dkt. 372-2) Instruction No. 33, which the Court gave to the first jury, that "[w]hen an employer becomes aware of potentially harassing conduct, it has a duty to promptly investigate and to take immediate and effective corrective action should it determine that harassment has

occurred" (Dkt. 280 at 34).  Plainly, such instruction does not belong in the damages retrial.  But then neither does Ms. Oppenheimer's testimony about the standard of care.  That testimony is relevant only to whether Tesla breached its duty to promptly investigate and take immediate and effective corrective action.  Now that the first jury has already made a liability finding, and particularly after Mr. Diaz successfully opposed Tesla's argument that the retrial should include both liability and damages, Ms. Oppenheimer's testimony will no longer assist the jury on the retrial.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993) (helpfulness "requires a valid [] connection to the pertinent inquiry as a precondition to admissibility").

Independently, the Court should preclude Ms. Oppenheimer from testifying under Rule 403, because her purported expert testimony regarding the standard of care at a damages-only retrial would confuse the issues, mislead the jury, waste time, and risk causing unfair prejudice to Tesla from the jury's erroneous perception that Tesla's failure to offer its own expert to respond to Ms. Oppenheimer's irrelevant testimony suggests a weakness in Tesla's damages position.  *See* Fed. R. Evid. 403.  At the first trial, counsel for Mr. Diaz directed the jury to draw a negative inference from Tesla's failure to rebut Ms. Oppenheimer, stating,

> [I]f Tesla could have found a human resource expert that would have told you that what they did inside the workplace met the standard of care, you certainly know that they would have brought one.  But as opposed to putting affirmative evidence in front of you, they chose to poke at the balloon.  They chose to ask a bunch of questions to make it appear as though the experts were not telling you what was true.  But they did not put an expert in front of you.  So with regard to the expert testimony you heard, you treat that like all other testimony.  If it was unimpeached, you have the ability and the right to accept it.

Posner Decl., Ex. B (Trial Tr. vol. 6, 903:2-12, Oct. 4, 2021).  If the Court does not exclude Ms. Oppenheimer from testifying, then Tesla respectfully requests that the Court mitigate the prejudice to Tesla and preclude Mr. Diaz and his counsel from inviting the jury to draw any negative inference based on Tesla's inability to call a rebuttal expert.

### III.    MOTION *IN LIMINE* NO. 3 TO ADMIT EXHIBITS 229, 248, 252, AND 254

Tesla respectfully requests that the Court admit at the retrial four exhibits previously identified on the exhibit list (Dkt. 235) but not admitted.  The Court has broad discretion to admit new evidence on a retrial.  *See, e.g.*, *McBroom v. Ethicon, Inc.*, 341 F.R.D. 40, 46 (2022) (D. Ariz.

April 8, 2022) (amending pretrial order to allow additional exhibit where plaintiff otherwise "would face manifest injustice if precluded from presenting evidence").   The Court should exercise that discretion here to allow the admission of the exhibits described below.

**Exhibits 229, 248, and 252** are written complaints lodged by Mr. Diaz about his colleagues at the Tesla Fremont factory.   In Exhibit 229, Mr. Diaz emails supervisor Tom Kawasaki on September 20, 2015 to report two factory associates for undermining the chain of command on proper use of the elevators.   *See* Posner Decl., Ex. G (Ex. 229).   In Exhibit 248, Mr. Diaz emails supervisors Ed Romero and Wayne Jackson on October 24, 2015 to report an elevator associate for arriving to work late and returning from breaks late.   *See* Posner Decl., Ex. H (Ex. 248).   And in Exhibit 252, Mr. Diaz emails supervisor Ed Romero on November 5, 2015 to report an elevator associate for an accident in which he hit an elevator door with equipment.   *See* Posner Decl., Ex. I (Ex. 252).   All three exhibits show that Mr. Diaz had no issue preparing and submitting written complaints on matters as trivial as a colleague's tardiness.

These exhibits thus make notable Mr. Diaz's failure to document in written complaints to his supervisors **any** of the racial slurs he alleges he was called by Ramon Martinez, Robert Hurtado, Judy Timbreza, and others at the factory.   *See* Posner Decl., Ex. A (Trial Tr. vol. 3, 524:3-20, Sept. 29, 2021).   These exhibits further call into question the veracity of Mr. Diaz's claims that he did not put complaints in writing because (1) at the time, he did not have access to Messrs. Kawasaki's and Romero's email addresses, and (2) he did not feel comfortable documenting complaints for the more serious alleged misconduct of being called racial slurs.   *Id.* 452:12-20, 512:13-24.   This evidence is directly relevant to the amount of compensatory damages the jury should award Mr. Diaz and necessary to its determination of which specific instances of harmful conduct Mr. Diaz was (1) exposed to and (2) report while working at the Fremont factory—issues the prior jury did not decide.

**Exhibit 254** documents Contract Services Supervisor Ed Romero's and NextSource Program Manager Wayne Jackson's immediate responses to Mr. Diaz's allegations that elevator associate Rothaj Foster threatened Mr. Diaz with violence.   *See* Posner Decl., Ex. J (Ex. 254).   This report shows that right after receiving Mr. Diaz's complaint, Mr. Romero promptly investigated the matter,

including obtaining a written statement from a witness, and then removed Mr. Foster from the premises, suspended him, and recommended he not be allowed to return. *Id.* Mr. Jackson then terminated Mr. Foster's contract immediately, noting "[t]his behavior is unacceptable and will not be tolerated." *Id.*

This exhibit thus shows how Mr. Diaz's supervisors properly investigated and responded to a substantiated complaint of harassment against Mr. Diaz. On this retrial, part of the jury's task in determining the amount of punitive damages to award will be to "consider the degree of reprehensibility of the defendant's conduct" towards Mr. Diaz. Dkt. 280 at 41; Dkt. 372-2 at 5. To assess the reprehensibility of Tesla's conduct, the jury should be allowed to consider how Tesla appropriately responded to a verified complaint of workplace violence committed against Mr. Diaz.

The Court's discretion to admit new documents to avoid "a manifest injustice" turns on the same four factors that govern its discretion to admit new witnesses. Fed. R. Civ. P. 16(e); *see Fresno Rock Taco*, 2013 WL 3803911, at *2. All four factors favor admitting these exhibits.

***No prejudice or unfair surprise to Mr. Diaz.*** These exhibits could in no way cause prejudice or surprise to Mr. Diaz. As explained above, these exhibits document Mr. Diaz's own complaints and are relevant to assessing Mr. Diaz's credibility as well as the degree of reprehensibility of Tesla's conduct. They are certainly more probative than prejudicial.

These exhibits were also all produced in discovery and then included on the joint trial exhibit list before the first trial. Dkt. 235 at 19, 21-22. Mr. Diaz did not object to the admission of Exhibit 229; rather, he stipulated to its admissibility (Dkt. 235 at 19), and so has waived any right to object to its admission now. Moreover, Exhibit 254 was already introduced with witness Wayne Jackson at the first trial, but counsel at the time did not lay a proper foundation for its admission. *See* Posner Decl., Ex. K (Trial Tr. vol. 2, 272:11-274:8, Sept. 28, 2021). If Tesla is able to lay a proper foundation, the Court should admit all these exhibits.

And even if these exhibits had not been previously disclosed in discovery, the Court should still permit Tesla to rely on them at least for impeachment purposes. *See Fresno Rock Taco*, 2013 WL 3803911, at *4 ("[E]vidence to be used at trial solely for impeachment purposes does not need to be identified in the pretrial order or disclosed prior to trial." (emphasis omitted)).

***No need to cure any prejudice***.  Because these exhibits were disclosed in discovery and then contemplated for admission at the first trial, there is no prejudice or surprise to Mr. Diaz, and thus no need to "cure" any prejudice.  *See Fresno Rock Taco*, 2013 WL 3803911, at *3.

***No impact on the orderly and efficient conduct of the trial***.  Tesla does not seek additional time beyond the nine hours allotted to it to examine witnesses about these four documents, and testimony regarding these incidents would likely be brief.

***No bad faith or willfulness***.  Tesla seeks in good faith to admit exhibits disclosed in discovery and listed on the exhibit list for the first trial.  These exhibits are necessary for the jury to make a fully informed decision in this case, and the Court should admit them.

## IV.   MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF ALLEGED RACIST CONDUCT NOT DIRECTED AT OR EXPERIENCED BY MR. DIAZ

Tesla respectfully requests that in this damages-only retrial, the Court confine the evidence to testimony and exhibits that concern conduct at the Fremont factory that directly and personally affected Mr. Diaz, and thus exclude testimony in the damages trial that concerns the supposed use of racially derogatory acts, words, or symbols toward other workers that were not personally directed at or experienced by Mr. Diaz.

In the Court's previous order on motions *in limine* before the first trial (Dkt. 207), the Court stated it would allow the limited admission of some testimony about unrelated incidents of racial harassment that individuals other than Mr. Diaz allegedly experienced at the Fremont factory "if the testimony could tend to establish that Tesla had notice of the racially harassing environment." *Id.* at 6; *see id.* at 6-7 (LaMar Patterson), 7 (Michael Wheeler), 7 (Wayne Jackson).[1]  Tesla respectfully submits that this rationale does not warrant the admission of similar other-party-harm evidence in this damages-only retrial.  As the Court noted in its prior ruling on motions *in limine*, whether evidence of discrimination directed at or experienced by persons other than Mr. Diaz is admissible under Rule 403 depends upon a "fact-intensive, context-specific inquiry," including consideration of "how closely related the evidence is to the plaintiff's circumstances and theory of the case."  *Id.*

---

[1]   The Court also stated (Dkt. 207 at 6) that it would allow such testimony insofar as relevant if Tesla raised an *Ellerth/Faragher* defense, but Tesla did not do so at the first trial and does not intend to do so here.

at 5 (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008)). And in this damages-only retrial, the constitutional guarantee of due process also limits the appropriate scope of punitive-damages evidence.

Thus, as explained further below, the Court should exclude the following evidence introduced at the first trial, and any other evidence similarly concerning supposed incidents of racially hostile acts, words, or symbols directed to persons other than Mr. Diaz outside of Mr. Diaz's knowledge or experience:

- Tom Kawasaki testified during the first trial that he had heard Ramon Martinez say "mayate" and that the n-word was "thrown around a lot" and said "[d]aily" in the factory. Posner Decl., Ex. L (Trial Tr. vol. 1, 98:14-99:7, 99:16-18, Sept. 27, 2021).

- Wayne Jackson testified that he heard the n-word being said "daily." Posner Decl., Ex. K (Trial Tr. vol. 2, 224:25-225:11, Sept. 28, 2021).

- Ed Romero testified that people other than Mr. Diaz, including Javier Temores, had complained to him about use of the n-word. Posner Decl., Ex. L (Trial Tr. vol. 1, 162:3-6, 162:7-21, 163:19-166:20, Sept. 27, 2021 (citing Pl.'s Ex. 106)); Posner Decl., Ex. K (Trial Tr. vol. 2, 182:2-183:4, Sept. 28, 2021 (same)).

- Victor Quintero testified about reports to him or to Mr. Romero as shown to him complaining of the use of the n-word in the factory. Posner Decl., Ex. K (Trial Tr. vol. 2, 347:22-348:25, 349:17-350:16, Sept. 28, 2021 (citing Pl.'s Ex. 106)).

- Michael Wheeler testified

  - he saw "swastikas" in the bathrooms. Posner Decl., Ex. A (Trial Tr. vol. 3, 426:23-427:15, Sept. 29, 2021).

  - he saw a bald man walk by a factory security door with a "swastika on his head." *Id.* 426:16-22.

  - an unnamed subordinate had said "FU, 'N' word" to him, which he had allegedly reported to Ramon Martinez and after which the subordinate purportedly received a promotion. *Id.* 431:10-432:9.

- Mr. Wheeler further testified he found feces from an unknown source in the cart he drove around the factory. *Id.* 432:10-434:12.

  - Mr. Wheeler's testimony on the feces incident should also be excluded because there was no actual evidence the incident was racially motivated and thus similar to any incidents alleged by Mr. Diaz, as would be required for admissibility under Rule 403. Mr. Wheeler testified at his deposition that he did not know who put the feces in the cart nor whether the event was racially motivated, Posner Decl., Ex. M (Wheeler Dep. 57:8-12, June 12, 2019), and Mr. Diaz failed to show otherwise at the first trial. Further, there was no evidence admitted during the first trial that Mr. Diaz was aware of this incident during his tenure working at the Fremont factory. Moreover, allowing evidence of this incident will confuse the jury, prejudice Tesla, and

require a mini-trial on the facts related to who was involved, how it was handled, and whether it even involved any racial animus.

**A.       Evidence Of Conduct Not Directed At Or Experienced By Mr. Diaz Is Irrelevant To Compensatory Damages**

Compensatory damages are limited to "compensation for the injuries actually caused by the [defendant]" and not "for distress they did not cause." *Watson v. City of San Jose*, 800 F.3d 1135, 1138, 1140-42 (9th Cir. 2015); *see also Mister. Illinois Cent. Gulf R. Co.*, 790 F. Supp. 1411, 1419 (S.D. Ill. 1992) (§ 1981 damages require "some reasonable connection" or "proximate cause" between "the wrongful act and the damages suffered"). Any emotional distress supposedly suffered by workers other than Mr. Diaz at the Tesla Fremont factory based on acts, words, or symbols that were not directed at Mr. Diaz lacks any causal connection to harm to Mr. Diaz, and thus is irrelevant to Mr. Diaz's compensatory damages. Accordingly, evidence of such harm should be excluded under Rule 403 insofar as it is introduced to show compensatory damages.

**B.       Evidence Of Conduct Not Directed At Or Experienced By Mr. Diaz Is Constitutionally Barred From A Calculation Of Punitive Damages**

Constitutional considerations impose an additional limitation on third-party-harm evidence in this damages-only trial that was not present in the first trial on both liability and damages. As the Court correctly noted in its order granting new trial or remittitur (Dkt. 328 at 37-38), due process under the Fifth Amendment bars any punitive damages award that is "excessive," which is determined under three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003). Third-party-harm evidence is irrelevant to *State Farm* guideposts (2) and (3), so the only issue is its possible relevance in the damages retrial to guidepost (1), reprehensibility.

Any determination of reprehensibility in connection with the constitutionality of a punitive damages award in turn depends on five factors: "whether '[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of

1   the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct

2   involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional

3   malice, trickery, or deceit, or mere accident.'" *Hardeman v. Monsanto Co.*, 997 F.3d 941, 972-73

4   (9th Cir. 2021) (alteration in original) (quoting *State Farm*, 538 U.S. at 419).

5          Evidence of alleged racially hostile conduct directed at or experienced by workers other than

6   Mr. Diaz is irrelevant to reprehensibility factors [1], [3] and [5], for any supposed similar

7   misconduct toward workers other than Mr. Diaz makes no difference to [1] whether that harm is

8   physical or economic, [3] whether Mr. Diaz was financially vulnerable, or [5] whether the harm was

9   intended or the result of inaction. Thus, any argument for its potential admissibility turns on whether

10  it is relevant to and probative of factors [2] and [4]: whether the conduct "evinced an indifference

11  to or a reckless disregard of the health or safety of others" or "involved repeated actions or was an

12  isolated incident."

13         But "[d]ue process does not permit courts, in the calculation of punitive damages, to

14  adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the

15  reprehensibility analysis." *State Farm*, 538 U.S. at 423. Thus, in *Philip Morris USA v. Williams*,

16  549 U.S. 346 (2007), the U.S. Supreme Court held that due process prohibits punishing a defendant

17  "for harming persons who are not before the court (*e.g.*, victims whom the parties do not represent)."

18  *Id.* at 349. The Court reasoned that such parties "are, essentially, strangers to the litigation," *id.* at

19  353, and that allowing a jury to award punitive damages for such stranger harms would be

20  unconstitutionally "standardless." *Id.* at 354 ("How many such victims are there? How seriously

21  were they injured? Under what circumstances did injury occur? The trial will not likely answer

22  such questions as to nonparty victims. The jury will be left to speculate. And the fundamental due

23  process concerns to which our punitive damages cases refer—risks of arbitrariness, uncertainty, and

24  lack of notice—will be magnified.").

25         Moreover, "[p]unishment on these bases creates the possibility of multiple punitive damages

26  awards for the same conduct; for in the usual case nonparties are not bound by the judgment some

27  other plaintiff obtains." *State Farm,* 538 U.S. at 423. Accordingly, due process constrains the Court

28  from allowing the jury to calculate an amount of punitive damages that punishes Tesla "on account

of harms it is alleged to have visited on nonparties." *Williams*, 549 U.S. at 355; *see White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007) (vacating and remanding an award after trial in a product-liability case where plaintiffs' counsel told the jury that "Ford knew that 54 people had been injured by 'rollaways'" but had "'decided to do everything possible to avoid telling people the truth' about the rollaway problem," reasoning that a calculation of punitive damages based on such other-party evidence "violated due process").   Now that liability has been determined at the first trial, there is no longer any issue for the jury to decide as to whether Tesla allowed a racially hostile environment—the sole issue is the calculation of damages.  *See White*, 500 F.3d at 972 (explaining that "the jury could have mistakenly understood the [plaintiffs]' argument that Ford's conduct injured 54 other people to justify not just a ***finding*** of reprehensibility, but also to consider those other injuries in calculating the ***amount*** of damages warranted to punish Ford's reprehensible conduct," in violation of due process (emphasis added)).  The Court thus should exclude all evidence of alleged racist acts, words, or symbols directed to or experienced by others than Mr. Diaz to avoid the problem of punitive damages that are unconstitutionally excessive because they are based on harms to parties not before the Court.

Such evidence is additionally improper and inadmissible on this retrial because there is no non-hearsay evidence that any non-party was actually harmed by any racist acts, words, or symbols at the factory that were allegedly directed to them, not Mr. Diaz.  And as to the one incident that may have harmed a non-party—when Mr. Wheeler allegedly found feces in his cart—there is no indication it was racially motivated, and it bears such little resemblance to the conduct Mr. Diaz complains of, that the jury may not consider that incident to assess the proper amount of punitive damages.  *See, e.g.*, *Leavey v. Unum Provident Corp.*, 295 F. App'x 255, 258 (9th Cir. 2008) (court did not err in reducing $15 million punitive-damages award to $3 million because plaintiff had "presented 'scant evidence of repeated misconduct of the sort that injured [him]'" (alteration in original) (quoting *State Farm*, 538 U.S. at 423)); *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 963 (N.D. Cal. 2019) (striking punitive-damages allegations in complaint about conduct "wholly different from that encountered by [the plaintiff]"); *see also* Fed. R. Evid. 403.

1   In any case, even if anyone other than Mr. Diaz was harmed by acts similar to those that

2   allegedly harmed Mr. Diaz, exclusion of non-party evidence is the only practicable way to ensure

3   due process.  "[B]ecause of the practical difficulties raised by crafting a jury instruction that properly

4   adheres to the Supreme Court's holding in *Philip Morris*," "it would be imprudent to admit the

5   evidence proffered by plaintiff" that goes beyond the conduct alleged to have harmed the plaintiff

6   directly.   *Dugan v. Nance*, 2013 WL 4479289, at *1 (C.D. Cal. Aug. 20, 2013); *see Grisham v.*

7   *Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1036-37 (C.D. Cal. 2009) (declining to accord issue-

8   preclusive effect to findings from prior trial in light of the Supreme Court's intervening decision in

9   *Philip Morris*, because the "[d]efendants' underlying liability would be established in part based on

10   actions that inflicted injuries upon nonparties" and any curative instruction would be inadequate).

11   **C.**   **The Court Should Additionally Exclude Hearsay Evidence Of Conduct Not**
      **Directed At Mr. Diaz**

12   Even if the Court allows some testimony about supposed incidents that Mr. Diaz did not

13   personally experience, the Court at least should exclude any such evidence that constitutes

14   inadmissible hearsay.  If a witness other than Mr. Diaz testifies about third-party reports that the n-

15   word was used, that would be inadmissible hearsay because it would be offered to prove the truth

16   of the matter asserted:  namely, that the n-word was used.  *See, e.g.*, *Tobin v. Chichester Sch. Dist.*,

17   2021 WL 9762986, at *3 (E.D. Pa. Dec. 14, 2021) ("Plaintiff did not hear Defendant use the N-

18   word; instead, he claims that co-worker Mr. Morris reported Civera's language to Plaintiff.  The

19   statement from Morris to Plaintiff is hearsay: it is an out of court statement offered in this case to

20   prove that Civera used the N-word.").

21   None of the complaints of n-word use by others that were reported to Messrs. Romero or

22   Quintero fall within a hearsay exception or exclusion, so the Court should exclude all evidence of

23   reports to those individuals about use of the n-word on hearsay grounds.  For example, if Mr.

24   Romero is asked whether Mr. Temores and another employee said that Mr. Dennis said the n-word,

25   Mr. Diaz must show that each hearsay layer satisfies a hearsay exception or exclusion.  *See Dykzeul*

26   *v. Charter Commc'ns, Inc.*, 2021 WL 4522545, at *13 (C.D. Cal. Feb. 3, 2021) ("[H]earsay within

27   hearsay is only admissible if there is an exception for each 'layer' of hearsay.").  None do, let alone

28

1    all three.  Mr. Dennis's statement does not even qualify as an excited utterance, even accepting Mr.

2    Temores's hearsay statement that Mr. Dennis used the n-word while "upset."  Posner Decl., Ex. N

3    (Ex. 106); *see Winzer v. Hall*, 494 F.3d 1192, 1200 (9th Cir. 2007) ("The mere fact that Parrish was

4    upset as she spoke would not make her utterance reliable.").  The Court should avoid such double-

5    and triple-hearsay problems by excluding evidence of supposed incidents directed at persons other

6    than Mr. Diaz.

7    **D.    At A Minimum,  The Court Should Exclude Evidence Of Conduct Not Directed At Mr. Diaz That Was Excluded On Tesla's Prior Motion *In Limine***

8            Even if the Court does not grant this motion in its entirety, it should reaffirm its partial

9    granting of Tesla's motion *in limine* prior to the first trial to exclude evidence of conduct individuals

10   other than Mr. Diaz experienced.  Dkt. 207 at 7; *see also* Dkt. 185 at 18, 20-24.  For example, the

11   Court ruled that witnesses like Mr. Jackson would "not be permitted to testify generally about

12   hearing the n-word" unless Tesla "open[ed] the door" by "explor[ing] with Jackson his view that

13   the n-word was used in a non-offensive manner."  Dkt. 207 at 7.  Tesla did not open the door to that

14   testimony.  Nevertheless, during the first trial, Mr. Diaz elicited testimony from Mr. Jackson, over

15   Tesla's objection, that the n-word was used "daily."  Posner Decl., Ex. K (Trial Tr. vol. 2, 223:23-

16   225:11, Sept. 28, 2021).  For all the reasons described above, Mr. Diaz should not be permitted to

17   introduce this evidence in the retrial because it is irrelevant as a matter of law to the jury's

18   determination of compensatory or punitive damages, and for the additional reason that it should not

19   have been admitted in the first trial under the Court's prior ruling.  *See Parker v. BNSF Ry. Co.*,

20   2021 WL 4819910, at *7 (W.D. Wash. Oct. 15, 2021) (excluding evidence in retrial based on *in

21   limine* ruling in the first trial).

22                           **CONCLUSION**

23           For the reasons stated herein, Tesla respectfully requests that the Court grant its motions *in

24   limine*.

25

26

27

28

1    DATED:  February 3, 2023              By: */s/ Daniel C. Posner*

2                                          Daniel C. Posner
                                           Mari Henderson
3                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                           865 S. Figueroa St., 10th Floor
4                                          Los Angeles, California 90017
                                           Telephone: (213) 443-3000
5
6                                          Alex Spiro (appearance *pro hac vice*)
                                           alexspiro@quinnemanuel.com
7                                          51 Madison Ave., 22nd Floor
                                           New York, NY 10010
8                                          Telephone: (212) 849-7000
                                           Facsimile: (213) 443-3100
9
10                                         Asher Griffin (appearance *pro hac vice*)
                                           ashergriffin@quinnemanuel.com
11                                         300 W. 6th St., Suite 2010
                                           Austin, TX 78701
12                                         Telephone: (737) 667-6100

13                                         *Attorneys for Defendant Tesla, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28