LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD (SBN 214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:    (415)-453-7352
Facsimile:     (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:    (310) 394-0888
Facsimile:     (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:    (415) 421-7151
Facsimile:     (415) 362-8064

Attorneys for Plaintiff OWEN DIAZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON, <br><br> Plaintiffs, <br><br> v. <br><br> TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive, <br><br> Defendants. | Case No. 3:17-cv-06748-WHO <br><br> **PLAINTIFF'S MOTIONS *IN LIMINE* NOS. 1-9** |

# **TABLE OF CONTENTS**

I.   Motion *in Limine* No. 1 to Preclude Tesla from Presenting Argument or Testimony Inconsistent with the First Jury's Special Liability Verdict Findings.....................................1

    1. Tesla should be precluded from arguing that Mr. Diaz was not subject to racial harassment or a racially hostile work environment. ....................................................1

    2. Tesla should be precluded from arguing that Mr. Diaz was not harmed by Tesla's conduct...............................................................................................................................3

    3. Tesla should be precluded from arguing that it did not know about the harassment that Mr. Diaz experienced........................................................................................................4

II.   Motion *in Limine* No. 2 to Confirm that Tesla is Precluded from Eliciting Testimony that Goes Beyond the Scope of Testimony at the First Trial.......................................................4

III.   Motion *in Limine* No. 3 to Preclude Tesla from Introducing Evidence of Mr. Diaz's Job Performance ......................................................................................................................8

IV.   Motion *in Limine* No. 4 to Limit Testimony of Joyce DelaGrande....................................11

V.   Motion *in Limine* No. 5 to Preclude Testimony or Argument Disparaging Mr. Diaz's Counsel or Mr. Diaz's Motivations in Bringing this Lawsuit .............................................13

VI.   Motion *in Limine* No. 6 to Admit Evidence of Tesla's Financial Condition as of the First Trial, and to Preclude Testimony or Argument Regarding the Time-Frame Addressed in Plaintiff's Expert Report. ..................................................................................................14

VII.   Motion *In Limine* No. 7 to Exclude the Email Forwarding Lamar Patterson's Resume (Trial Exhibit 265) ......................................................................................................................16

VIII.   Motion *in Limine* No. 8 to Exclude Evidence of Mr. Diaz's Pay Raise .............................17

IX.   Motion *in Limine* No. 9 to Exclude Demetric Di-az's October 2015 Job Application (Trial Exhibit 379) ......................................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Fresno Rock Taco, LLC, v. Nat.'l Sur. Corp*,
  2013 WL 3803911 (E.D. Cal. July 19, 2013) ............................................................5

*Galdamez v. Potter*,
  415 F.3d 1015 (9th Cir. 2005) ....................................................................................5

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993).......................................................................................................8

*Hooper v. Cnty. of San Diego*,
  2020 WL 6565847 (S.D. Cal. Nov. 9, 2020) ..............................................................5

*Little v. City of Richmond*,
  2015 WL 798544 (N.D. Cal. Feb. 23, 2015) ........................................................5, 15

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Co.*,
  195 F.3d 765 (5th Cir. 1999) ......................................................................................5

**Other Authorities**

Fed. R. Civ. P. 16 .............................................................................................................5

Fed. R. Evid. 401 ....................................................................................................14, 17

Fed. R. Evid. 402 ....................................................................................................14, 17

Fed. R. Evid. 403 ............................................................................................10, 14, 17

I.      **Motion** *in Limine* **No. 1 to Preclude Tesla from Presenting Argument or Testimony Inconsistent with the First Jury's Special Liability Verdict Findings**

The first jury made detailed liability findings in its Special Verdict form. The second jury, in the damages retrial, will be instructed that it is bound by the first jury's liability determinations. To ensure that the second damages verdict is consistent with the liability verdict and to avoid confusion for the second jury, Tesla should be precluded from making arguments or presenting or eliciting testimony that contradict the first jury's liability findings.

The second trial will focus on the emotional distress that Owen Diaz suffered as a result of Tesla's conduct, and the extent to which Tesla deserves to be punished for its past conduct and deterred from future misconduct. The parties agree that several factual issues litigated in the first trial will need to be litigated in the damages retrial, such as the degree of Mr. Diaz's emotional distress, the facts surrounding specific incidents of harassment, and Tesla's policies and practices with respect to failing to properly investigate and address racism in the workplace. That being said, certain factual issues have been conclusively determined by the first jury's liability findings, and Tesla should not be permitted to revisit those issues, either through argument of counsel or by the presentation of evidence.

Tesla should not be permitted to challenge any of the jury findings made in the first trial. The following describes evidence that Tesla has stated it seeks to introduce at retrial. Plaintiff reserves his right to object to additional evidence or argument that is inconsistent with the first jury's findings, as that evidence or argument is presented at trial.

1. Tesla should be precluded from arguing that Mr. Diaz was not subject to racial harassment or a racially hostile work environment.

At the first trial, Tesla repeatedly denied that Mr. Diaz was harassed or subjected to a hostile work environment, and sought to distinguish the conduct of Tesla's direct employees from the contract employees for whom Tesla denied responsibility. That was Tesla's argument at

the beginning of trial,[1] at the close of trial,[2] and after trial.[3] The jury rejected Tesla's position, concluding that Tesla was responsible for the treatment caused by contract employees who subjected Mr. Diaz to a hostile work environment, and that Mr. Diaz's workplace supervisors and non-immediate supervisors or co-workers contributed to that environment. *See* Verdict Form Qs. 1, 3a, 3b. In reaching these conclusions, the jury necessarily found, among other things, that Mr. Diaz "was subjected to slurs, insults, jokes or other verbal comments or physical contact or intimidation of a racial nature" and that Tesla's wrongful conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create a racially abusive or hostile work environment." *See* Jury Ins. No. 26 (elements of hostile work environment).

At the upcoming retrial, Tesla should only be allowed to argue or present evidence about specific incidents of harassment or the circumstances surrounding those incidents if that argument or evidence is not contrary to the first jury's liability findings. Under no circumstances, for example, should Tesla be permitted to argue or suggest to the jury that Mr. Diaz did not suffer severe and pervasive harassment, or that Tesla's employees, whether direct or contract

---

[1] *See, e.g.*, Tesla's Opening Statement 1:46:2-4 ("[T]here is no evidence that any Tesla employee at any point in time engaged in any of the conduct that Mr. Diaz is now testifying about"); 1:48:7-8 ("The evidence is going to show that not one Tesla employee engaged in this harassment by Mr. Diaz."); 1:53:19-22 ("[A]t no point in time did any Tesla employee engage in the harassing conduct that Mr. Diaz claims occurred. No Tesla employee used the "N" word or any other vile, horrible words."); 1:60:10-14 ("So if, in fact, it had happened and Tesla had been made aware of it, they could have handled it. If, in fact, it had happened. It didn't happen. All of these words that according to Mr. Diaz, the "I hate you 'N,'" "I hate you effing 'N,'" "I wish all your 'Ns' would die," none of that was there.").

[2] *See, e.g.*, Tesla's Closing Argument 6:928:15-16 ("[N]o evidence that a Tesla employee harassed Owen Diaz during the time period he was there."); 6:929:8-10 ("[N]o Tesla employee harassed Mr. Diaz as 'harassment' is defined in the law during his nine and a half months that he was at the Tesla factory."); 6:936:10-18 ("[I]f you're going to find against Tesla, you've got to find that Tesla employees … were engaged in all this racially hostile environment…And the evidence is going to show that no Tesla employee violated the law[.]"); 6:959:5-7 ("[T]he words [Mr. Diaz] is seeking to have you determined are Tesla's responsibility, there's no evidence this happened like he said it happened.").

[3] *See, e.g.*, Tesla's Post-Trial Br. (Dkt. 317) at 7 ("[I]nferences of "severe or pervasive" discriminatory conduct or "unreasonabl[e] interference" with Diaz's work performance are against the great weight of the evidence.").

employees, did not subject Mr. Diaz to a hostile work environment, because that would

contradict the first jury's findings.[4]

    2. <u>Tesla should be precluded from arguing that Mr. Diaz was not harmed by Tesla's</u>
<u>conduct.</u>

    Tesla argued at the first trial that Mr. Diaz was not harmed by the harassment he experienced at Tesla. *See* Tesla's Closing Argument 6:957:15-17 ("We don't believe that he's actually entitled to any emotional distress damages, past or future, based upon the evidence in this case."). Similarly, for the damages retrial, Tesla has recently proposed in its draft jury instructions that the jury be permitted to award nominal compensatory damages. *See* Dkt. 374-2.[5]

    The first jury's liability determinations necessarily included the finding that Mr. Diaz was harmed by Tesla's conduct, and Tesla should not be permitted to argue otherwise. *See, e.g.*, Special Verdict form Q. 6; Jury Ins. No. 34 (requiring finding that "Plaintiff was harmed"); Jury Ins. No. 35 (requiring finding that "Ramon Martinez's unfitness or incompetence harmed Owen Diaz"). Tesla is of course permitted to dispute the *extent* of Mr. Diaz's emotional distress. But it would be inconsistent with the first verdict and confusing for the jury to allow Tesla to argue that Mr. Diaz was not actually harmed by Tesla's misconduct, that Mr. Diaz's injuries were wholly imaginary, or that no compensatory damages should be awarded.

---

[4] For instance, in the first trial, Defendant argued in opening that harasser Ramon Martinez drew a ghost, not a racial effigy. Tr. 1:61:18-62:8. In fact, Mr. Martinez testified that he recreated a racist cartoon called "Inki the Caveman." *Id.* 1:796:21-797:7, Ex. 133. Its witnesses also testified that racial slurs were not part of harasser Robert Hurtado's vocabulary. *Id.* 1:735:1-5.

    Even with respect to specific incidents of harassment, Plaintiff will object if Defendant's arguments are inconsistent with the liability verdict. For instance, if Defendant were to deny the existence or significance of all incidents involving Ramon Martinez, such argument would be inconsistent with the first jury's specific determination that Martinez harassed and harmed Mr. Diaz. *See* Verdict Form Q. 6.

[5] As a general matter, the parties intend to make arguments regarding both sides' proposed jury instructions at the pretrial conference, rather than through motions *in limine*.

1  |  3. <u>Tesla should be precluded from arguing that it did not know about the harassment that</u>

2  |  <u>Mr. Diaz experienced.</u>

3  |       Tesla argued at the first trial, with respect to Ramon Martinez's harassment of Owen

4  |  Diaz, that "if, in fact, it had happened and Defendant had been made aware of it, they could have

5  |  handled it. If, in fact, it had happened. It didn't happen. All of these words that according to

6  |  Plaintiff, the 'I hate you 'N,'' 'I hate you effing 'N,'' 'I wish all your 'Ns' would die,' none of

7  |  that was there." Tr. 1:60:10-14. The jury necessarily rejected Tesla's position, concluding in

8  |  Special Verdict No. 6 that Mr. Diaz negligently supervised or retained Martinez, which required

9  |  the jury to conclude that Tesla "knew or should have known that Ramon Martinez was or

10 |  became unfit or incompetent and that this unfitness or incompetence created a particular risk to

11 |  others." Special Verdict No. 6, incorporating Jury Ins. No. 35. Tesla therefore should not be

12 |  permitted at retrial to repeat its argument that it was unaware of Martinez's behavior.

13 |       More generally, Tesla should not be permitted to deny that it knew about the harassment

14 |  Plaintiff experienced. Tesla cannot deny knowledge of the harassment Mr. Diaz experienced

15 |  from his own supervisors—"that is, those Defendant empowered to act for it." Order on Post-

16 |  Trial Motions (Dkt. 328) at 18; Special Verdict Q. 3A. Nor can it any longer deny its knowledge

17 |  of the harassment perpetrated by Mr. Diaz's non-immediate supervisors and co-workers. *See*

18 |  Jury Ins. No. 32 (requiring finding that "the defendant or a member of the defendant's

19 |  management knew or should have known of the harassment and failed to take prompt, effective

20 |  remedial action reasonably calculated to end the harassment"); Special Verdict Q. 3b

21 |  (referencing Jury Ins. No. 32).

22 |  **II.**    <u>**Motion *in Limine* No. 2 to Confirm that Tesla is Precluded from Eliciting**</u>

23 |        <u>**Testimony that Goes Beyond the Scope of Testimony at the First Trial**</u>

24 |       At the January 17, 2023 status conference, the Court set limits on the scope of evidence

25 |  that may be permitted on retrial. Mindful that the discovery cut-off has long since passed and

26 |  that any expansion of the scope of direct evidence would likely trigger rebuttal evidence of

27 |  comparable or greater scope, and given the Court's considerable discretion to limit the scope of

28 |  evidence on retrial except where necessary to avoid manifest injustice, the Court explained that

the evidence to be allowed on retrial would be "as consistent with the [evidence presented in the] first one as possible." This reflects the parties' previous "choices in how the case was going to be presented in the first trial." 1/17/23 Tr. at 11:8-14. Thus, for example, the Court ruled that the parties would not be allowed to expand their testimony to include "different/new incidents." 1/17/23 Minute Order (Dkt. 376). Nor would new witnesses or exhibits be permitted, absent a specific showing of prejudice. *Id.*; Tr. at 12:21-25; *see Little v. City of Richmond*, 2015 WL 798544, at *2 (N.D. Cal. Feb. 23, 2015) (new evidence permitted only on showing of "manifest injustice"). With respect to Tesla's Person-Most-Knowledgeable testimony, the Court made clear that if Tesla wished to put on a live PMK witness other than Annalisa Heisen (whose PMK testimony was presented at the first trial, and will again be presented by Mr. Diaz on retrial through designated videotaped deposition excerpts), the new witness's "testimony could not be materially different than what had previously been given" by Ms. Heisen in those excerpts. Tr. at 3:22-4:1. In short, as the Court said, "the record is the record." Tr. at 12:22.

These limiting guidelines were entirely consistent with the law governing retrials, which provides that district courts have discretion to control the scope of evidence at retrial, that new evidence should come in only to prevent "manifest injustice," and that new evidence should seldom be admitted when the need for such evidence was known or should have been known at the time of the first trial. *See Little v. City of Richmond*, No. 13-CV-02067-JSC, 2015 WL 798544, at *2 (N.D. Cal. Feb. 23, 2015) (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 775 n.15 (5th Cir. 1999)); *accord Hooper v. Cnty. of San Diego*, 2020 WL 6565847, at *2 (S.D. Cal. Nov. 9, 2020); *Fresno Rock Taco, LLC, v. Nat.'l Sur. Corp*, 2013 WL 3803911, at *2 (E.D. Cal. July 19, 2013); *see also Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005); Fed. R. Civ. P. 16(e). These limitations are particularly appropriate in the context of a retrial limited to damages, where the Court seeks to ensure that the second jury's verdict is consistent with the liability verdict.

Notwithstanding the Court's expressly stated restrictions on the scope of retrial, during the parties' recent meet and confer sessions Tesla repeatedly suggested its intention to introduce new evidence at the second trial that exceeds the scope of the evidence presented at the first trial,

including testimony from witnesses who did not appear at the first trial. For example, Plaintiff understands that Tesla will be filing motions *in limine* to permit new witnesses Robert Hurtado and Andres Donet to testify and to allow its *still*-unidentified new PMK witness to present testimony that goes well beyond the scope of Ms. Heisen's testimony at trial.[6] Tesla also took the position that so long as a witness testified at the first trial, there should be no limits on the scope of that witness's testimony during the retrial. As just one example, Tesla asserted that if the Court does not permit Mr. Hurtado and Mr. Donet to testify (because neither testified at the first trial, and because Plaintiff has never been allowed to depose Mr. Hurtado—whom Tesla never disclosed—and was only permitted a limited 45-minute deposition of Mr. Donet), Tesla will attempt to introduce the (presumably new) content of those barred-witnesses' testimony through other existing witnesses.

Plaintiff tried to clarify Tesla's intent by asking whether it would be challenging the Court's "ruling requiring each witness's testimony to be consistent with and not 'materially different' from that witness's testimony at the first trial" or whether Tesla would be filing a motion *in limine* to challenge that ruling. Tesla disputed that the Court had made any such ruling, stated that it would not be filing a motion *in limine* regarding exceeding the scope of the prior testimony, and claimed that it did not "understand what you are asking us to do. . . ." *See* Nunley Decl., Ex. 2.

Plaintiff believes that the Court has already made a clear ruling on the limited scope of witness testimony. Out of an abundance of caution, and based on the position Tesla continues to assert, Plaintiff seeks confirmation from the Court that witness testimony at the retrial should not materially exceed the scope of what that witness testified to at the first trial. In Plaintiff's view, this means simply that counsel cannot ask questions of witnesses that are designed to elicit testimony containing new information beyond what the witness testified to at the first trial. This

---

[6] Notably, Tesla had an opportunity to question Ms. Heisen at her deposition and submit designations at trial. Its counsel only asked Ms. Heisen four questions. Heisen Dep. 169:1-170:6, Exh. 1 to Nunley Decl. Tesla also had an opportunity to submit designations from Ms. Heisen's deposition and counter-designations to Plaintiff's designations, and did so during the original trial. Dkt. 271.

would not mean that the parties or witnesses would be confined to re-enacting the transcript of the first trial: certainly, counsel should be permitted to formulate questions in new ways, and witnesses must simply answer truthfully and to the best of their knowledge.

Plaintiff's counsel recognize, for example, that they will not be permitted to ask Plaintiff or any other witnesses about incidents of harassment that were not testified to at the first trial. Similarly, Tesla should be precluded from eliciting testimony about events or actions taken by its employees that were not testified to in the first trial. For example, Tesla seeks to introduce testimony from its new PMK about remedial efforts undertaken to curb the hostile work environment in its factory following Mr. Diaz's departure, and to elicit testimony about the "company Tesla is today," which it claims is not the same as the company Mr. Diaz worked for in 2015. Dkt. 372 13:4-15.[*] Tesla opted not to elicit such testimony at the first trial, even arguing

---

[*] During a heated meet-and-confer session **on February 2, 2023, after the parties exchanged their initial MIL drafts**, Tesla revealed for the first time why it was seeking to replace PMK Annalisa Heisen with a new, previously unidentified and undeposed PMK. The reason has nothing to do with the supposed benefits of having a PMK witness testify live rather than by videotape, as Tesla had previously suggested. Rather, it is because Tesla intends to ask its new PMK what remediation efforts Tesla has undertaken *to date,* which it believes will elicit a completely different answer than Ms. Heisen provided at the first trial (when she testified she was unaware of any remediation efforts specifically related to use of the N-word, Heisen Testimony, p.148:17-23, Trial Ex. 139, Exhibit 4 to Nunley Decl.) or that Ms. Heisen could provide now (because she stopped working for Tesla after the first trial).

Tesla is trying to obliterate the temporal bounds of trial set by this Court, which were fairly designed to apply to both parties equally. Tesla apparently construes this Court's order requiring any replacement PMK witness' testimony to be "as consistent with [Ms. Heisen's] testimony as possible" and not "materially different than what had previously been given," *supra*, at 5, to mean that as long as Tesla asks the same questions of its new witness, it may elicit a completely different answer – one based on facts that Annalisa Heisen did not know when she was deposed in May of 2019 or when her deposition was played to the jury in October 2021 *and that she could not have known at those previous times without a crystal ball.*

There is no longer any need to wonder why Tesla found it was so important to replace PMK Heisen with a current employee. It is not because a live witness could more effectively provide the same generally "consistent" responses in person. If that were Tesla's goal, it could simply call Ms. Heisen to testify at the upcoming retrial in person. (Tesla revealed on February 2 that it is in touch with Ms. Heisen and represents her, and Tesla prohibited Plaintiff's counsel from reaching out to Ms. Heisen themselves). Instead, Tesla is blatantly seeking to violate the

---

in its motions *in limine* that testimony about incidents that occurred in areas of the factory where Plaintiff did not work, or times that Mr. Diaz did not work for Tesla, was irrelevant and inadmissible. *See* Dkt 185 1:17-20:7. Because Tesla opted not to introduce this evidence at the first trial, it should be barred from introducing this evidence at retrial.

### III. Motion *in Limine* No. 3 to Preclude Tesla from Introducing Evidence of Mr. Diaz's Job Performance

At the January 17, 2023 status conference, the Court explained that the evidence to be introduced at the second trial should largely mirror the evidence introduced at the first trial. But the Court invited the parties to file motions *in limine* to identify any specific evidence that may be presented on retrial that the Court should expressly address in advance. 1/17/23 Tr. at 4:2-3.

At the first trial, both parties introduced evidence of Mr. Diaz's job performance, although for very different purposes. Based on the parties' meet and confer discussions, Plaintiff anticipates that Tesla will attempt to introduce testimonial and documentary evidence on retrial designed to diminish Plaintiff in the eyes of the jury by criticizing the quality of his job performance. Such evidence should be excluded at retrial.

At the first trial, Plaintiff elicited testimony demonstrating that Mr. Diaz was good at his job. *See, e.g.*, Tr. 1:89:12-16 (testimony of Tom Kawasaki) ("Owen was a great worker. He

---

letter and the spirit of the Court's order by replacing Ms Heisen in order to elicit testimony about its supposed remedial efforts *after* the first trial.

If Tesla were allowed to expand the scope of trial to encompass post-2021 remedial efforts, due process could entitle Plaintiff to respond in kind, which would completely change the scope and framing of this damages retrial. For example, Plaintiff would seek leave to present testimony from some of the *hundreds* of Black Tesla employees who have signed retainers and/or declarations in *Vaughn v. Tesla, Inc.*, 87 Cal.App.5th 208 (2023), who would testify that racial harassment and use of the N-word at the Fremont factory has continued unabated since 2021. Plaintiffs would also seek leave to demonstrate that any post-trial remedial efforts by Tesla do not demonstrate its diminished reprehensibility but were instead a calculated corporate response to the economic and public relations disaster of the first jury's $136.9 million verdict. While it would only be fair to permit that rebuttal testimony *if* Tesla were permitted to blow up the temporal limitations of the retrial, it would be far more just, and even-handed, for the Court to reiterate the limitations it previously imposed, which were well within its discretion under the case law previously cited by the parties.

showed up on time very day. He wanted to work. He came in. He stayed after. He covered

people's shifts. He gave people breaks. He – he pretty much did anything that I asked him to do

at the time in what he was capable of doing."). Tesla, for its part, introduced documents and

elicited testimony tending to portray Mr. Diaz as a poor performer. *See, e.g.*, Ex. 259 (email

criticizing Plaintiff for riding a bike in the warehouse); Ex. 296 (email claiming that Plaintiff had

"no sense of urgency" at work), Ex. 306 (email requesting that Plaintiff be replaced); Tr.

5:730:5-6 (DelaGrande testimony that "[w]e would catch Owen off talking to female associates

instead of working.").

At the first trial, neither party objected to this evidence on relevance grounds. Evidence

about whether Mr. Diaz was easy to work with or whether he was good at his job had at least

some limited relevance to the liability question of whether he was subjected to a hostile work

environment because Tesla's theory seemed to be that the harassment Mr. Diaz testified to, to the

extent it had any basis in fact, mostly reflected Mr. Diaz's own inability to work well with

others. *See, e.g.*, Ex. 298 (Joyce DelaGrande criticizing Mr. Diaz's job performance, near the end

of his employment at Tesla, on the ground that he "has a huge attitude" and employees like

Robert Hurtado "feel really uncomfortable with him right now").

Now that the first jury has conclusively determined that Mr. Diaz was subjected to severe

and pervasive racial harassment from his supervisors and from his co-workers at Tesla, details of

Mr. Diaz's job performance no longer have any remaining relevance because it has no bearing on

the appropriate amount of compensatory or punitive damages. The experience of the abuses

suffered by Mr. Diaz—such as witnessing racist graffiti regularly in the restrooms, being called

racial slurs dozens of times, and having a coworker leave a racist effigy in his work area—would

be just as emotionally harmful to the worst-performing employee as to the best performer. *See*

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring) (hostile work

environment plaintiff "need not prove that his or her tangible productivity has declined as a

result of the harassment"). Similarly, the fact that the victim of a company's racially hostile work

environment was less (or more) adept at his job than others does not make the company's

conduct any less (or more) blameworthy for purposes of punitive damages.

Evidence of job performance that Tesla seeks to introduce would be highly prejudicial to Mr. Diaz, confusing to the jury, and a waste of time. *See* Fed. R. Evid. 403. Allowing Tesla to argue that Mr. Diaz was a poor performer and to introduce a pile of documents on that topic may mislead the jury into believing that Tesla is somehow less liable for harassment of some employees in a protected class than others, depending on their perceived value to the company. Even if the jury does not draw any such inference, such testimony would still be incurably prejudicial. While Mr. Diaz's job performance is irrelevant to his emotional distress or Tesla's culpability, the jury might be improperly inclined not to fully "reward" a person whom the jury has been told was bad at his job.

Against this clear prejudice, Tesla has thus far offered no persuasive theory of how job performance evidence could be more than marginally relevant at the damages phase. Tesla's principal argument seems to be that Mr. Diaz can be impeached with evidence of his job performance to undermine his testimony on a single issue—that he quit his job at Tesla as a result of the harassment he experienced. But at the first trial, Tesla presented only speculation to support this theory—pointing to the mere fact that Mr. Diaz was demoted during his medical leave taken after his mother died, and shortly before he quit, *see* Tr. 1:56:21-57:18—without in any way undermining Mr. Diaz's testimony that he left Tesla because he couldn't bear the abuse anymore. Indeed, Tesla's theory is inconsistent with the unrebutted evidence that Mr. Diaz began looking for other work much earlier, in December 2015. Tr. 3:472:23-473:5. Tesla should not be permitted to put in irrelevant and prejudicial evidence for the sole purpose of impeachment on a single collateral issue, when it has no direct evidence to support its theory.

Tesla used Mr. Diaz's job performance evidence at the first trial not for justifiable impeachment, but as character evidence designed to suggest that Mr. Diaz was a difficult person, and thereby to sow doubt about whether Mr. Diaz might have instigated the various incidents to which he testified. *See, e.g.*, Tesla's Closing Argument, 6:948:13-18 (arguing, to explain Hurtado N-word incidents, that "[y]ou heard testimony from Joyce DelaGrande about the issues that some of her leads and other folks in material were having with Mr. Diaz. You heard from Mr. Diaz and you heard from lawyers that he was behaving this way … You, the jurors, can

1  decide what was the actual truth."). With the sole exception of Ramon Martinez's testimony,

2  however, Tesla put in no actual, non-character evidence to dispute Plaintiff's characterization of

3  the specific incidents of harassment. *See, e.g.*, Order on Post-Trial Motions (Dkt. 328) at 16

4  ("[D]espite Tesla's heavy implication that Diaz may have falsely inflated these reports … it can

5  point to no evidence for that and it did not impeach Diaz's credibility on this issue.").

6       For these reasons, the Court should instruct the parties not to introduce evidence

7  regarding Mr. Diaz's job performance. To the extent the Court concludes that some of this

8  evidence is necessary for context, however, the Court should place strict limits on it. For

9  instance, if the Court is inclined to allow Tesla to argue that Mr. Diaz left his job because of his

10 demotion rather than because of the hostile work environment, it should limit Tesla to presenting

11 only the most basic evidence of the demotion itself, not any highly prejudicial and irrelevant

12 documents and testimony regarding Mr. Diaz's character.[7]

13 **IV.    Motion *in Limine* No. 4 to Limit Testimony of Joyce DelaGrande**

14      At the first trial, Tesla called supervisor Joyce DelaGrande to testify on two subjects: (1)

15 her experience working with Mr. Diaz and Mr. Diaz's job performance, and (2) her *lack* of

16 knowledge of events of racial harassment at Tesla. *See* Tr. 5:711:5-751:14. The gist of Ms.

17 DelaGrande's testimony was that Mr. Diaz was a poor performer who was difficult to work with,

18 and that she was unaware of any racial harassment or any use of the N-word at Tesla by or

19 against anyone, including Mr. Diaz. She also testified that she believed Robert Hurtado "would

20 never say something like" the N-word. Tr. 5:735:3-7.

21      Ms. DelaGrande's testimony has little or no bearing on the issues of compensatory and

22 punitive damages, and her testimony—if she is allowed to testify at all—should be narrowly

23 limited. In the recent joint status report, Tesla stated that Ms. DelaGrande would testify at retrial

24 "regarding Mr. Diaz's claims of harassment by Mr. Hurtado and Tesla's response to these

25 alleged claims." Dkt. 372 at 10. To the extent that limited scope reflects Tesla's decision not to

26 ask Ms. DelaGrande to repeat her testimony regarding Mr. Diaz's job performance, that is

_____

28 [7] Similarly, if Tesla is allowed to introduce evidence of Mr. Diaz's demotion, Mr. Diaz should be permitted to introduce evidence of his prior promotion by way of explanation.

appropriate, because evidence of Mr. Diaz's job performance should be excluded for the reasons discussed in Motion *in Limine* No. 3. But there is also very little testimony Ms. DelaGrande should be permitted to offer about "Plaintiff's claims of harassment by Mr. Hurtado" or "Tesla's response to these alleged claims."

Most of Ms. DelaGrande's testimony focused on her experience working with Mr. Diaz, her negative opinion of his job performance, her complaints about him to Edward Romero, and her efforts to have him removed from her team. None of this testimony has any relevance to damages and should be excluded. For the reasons discussed above, evidence of Mr. Diaz's job performance on retrial can only serve to impugn his character; that evidence has no bearing on the extent of his emotional distress or on the reprehensibility of Tesla's conduct.

With respect to Mr. Hurtado, Ms. DelaGrande's testimony at the first trial was that (1) no one ever reported to her that Mr. Hurtado used the N-word or other racial epithets, *see* Tr. 5:735:13-15, and that (2) in her opinion, Mr. Hurtado "would never say something like that," that "that's not like him to talk like that," and that "he would never use that terminology," Tr. 5:725:7-9.

Regarding what Mr. Hurtado "would say," Ms. DelaGrande's testimony was both speculative and improper character evidence, which should be excluded on retrial.

Regarding what was reported to her, it no longer matters whether Ms. DelaGrande believes Tesla's workplace was free of racial harassment because the jury has already found otherwise. If Ms. DelaGrande is permitted to testify that she never heard Mr. Hurtado or anyone else use the N-word, the Court should instruct the jury that her testimony cannot be considered to rebut the finding that Tesla was responsible for creating a racially hostile work environment, but may only pertain to the jury's assessment of the frequency with which the N-word was used.

With respect to Tesla's assertion that Ms. DelaGrande should be allowed to testify about "Tesla's response to [Plaintiff's] alleged claims" of harassment by Mr. Hurtado, that testimony must be limited as well, because Ms. DelaGrande said almost nothing about that topic at the first trial. Ms. DelaGrande testified that when Mr. Diaz told her that his associates had threatened him, she responded "[b]y speaking to Owen and seeing if what my leads said was true." Tr.

5:742:21-743:3. That was the full extent of her so-called investigation. While the fact that Ms. DelaGrande conducted such a limited investigation may be relevant to punitive damages, she did not provide any other meaningful or relevant testimony about "Tesla's response" to Mr. Diaz's claims and should not be permitted to do so now.

In sum, if Ms. DelaGrande is called to testify, her testimony should be limited to those few portions of her testimony at the first trial that are relevant to compensatory and punitive damages: testimony that she never heard the N-word used by Mr. Hurtado and testimony regarding her limited investigation of Mr. Diaz's complaints.

## V.    Motion *in Limine* No. 5 to Preclude Testimony or Argument Disparaging Mr. Diaz's Counsel or Mr. Diaz's Motivations in Bringing this Lawsuit

At the first trial, Tesla's counsel repeatedly suggested that the source of Mr. Diaz's complaints was his lawyers, rather than Tesla's own hostile work environment. *See, e.g.*, Tesla's Opening Statement 1:47:8-9 ("[A]t no point in time was Tesla put on notice …[of] this myriad of racial slurs that, according to Mr. Diaz's testimony *after he hired a lawyer*, was… happening on a daily basis" (emphasis added]); 1:52:13-18 ("[A]ccording to him now, *after he's hired a lawyer and the like*, …this was the most racially hostile environment he's ever seen[.]" (emphasis added])); 1:56:1-4 ("[H]e hired a lawyer and claiming all this racial harassment"); Defendant's Closing Argument 6:930:11-14 ("You have to judge Tesla at the time this was going on. Not after the fact *when a bunch of lawyers get involved*, including Tesla lawyers, including Mr. Organ and Mr. Alexander." (emphasis added)).

Tesla has a penchant for disparaging opposing counsel, as evidenced by the recent incident in the pending securities law trial in which Judge Chen repeatedly rebuked Tesla CEO Elon Musk when Mr. Musk, appearing as a witness, questioned the motivations of plaintiff's counsel from the stand. *See* Alaina Lancaster, *Elon Musk Takes Aim at Class Action Law Firms in Tesla Securities Trial Testimony*, The Recorder (Jan. 24, 2023).

During the parties' recent meet and confer sessions, Tesla's counsel refused to commit to refraining from arguing to the jury about Mr. Diaz's motivations for bringing this lawsuit or what

role Mr. Diaz's counsel may have played in inducing Mr. Diaz to pursue his claims or in shaping his, or any other witnesses' testimony.

Tesla should be precluded from repeating such arguments or otherwise commenting without evidence on the motivations of Plaintiff or Plaintiff's counsel. First, Tesla's suggestion that Mr. Diaz should not be found credible because his testimony was manufactured by his attorneys is not only completely speculative but unsupported by any evidence.

Second, Mr. Diaz's association with counsel and counsel's motivation for representing him have no relevance to the issues of compensatory and punitive damages to be relitigated on retrial. *See* Fed. R. Evid. 401, 402. Further, to the extent Tesla's baseless speculation regarding Mr. Diaz's motivations in filing suit or counsel's role has *any* probative value—and it does not— this relevance is outweighed by the prejudice associated with such speculation, which is likely (and clearly intended) to inflame the jury's passions against Mr. Diaz and his counsel. *See* Fed. R. Evid. 403.

Third, argument expressly or implicitly disparaging counsel is inappropriate. Mr. Diaz's counsel would not argue or make insinuations about the motivations of Tesla's lawyers, and Tesla's counsel should be held to the same standard of good faith and professionalism.

**VI.    Motion *in Limine* No. 6 to Admit Evidence of Tesla's Financial Condition as of the First Trial, and to Preclude Testimony or Argument Regarding the Time-Frame Addressed in Plaintiff's Expert Report.**

At the January 17, 2023 case management conference, the Court ruled that new evidence would not be admitted at the upcoming retrial and that the time frame of the parties' evidence should not extend beyond "the date of the earlier trial." Dkt. 376.

Recognizing that the Court has already ruled on this issue, Plaintiff is fully prepared to use the same expert economic report concerning Tesla's financial condition that Plaintiff introduced at the first trial. Nonetheless, if the Court allows Tesla to introduce evidence that was not admitted at the first trial or that extends beyond the date of the first trial (as Tesla's motions in limine seem to request), it would only be fair to permit Plaintiff to present his expert's updated

analyses of Tesla's financial condition as of the October 2021 date of the first trial. Ex. 3 to Nunley Decl.

The Court will recall that the only reason it did not allow Plaintiff to refer to his expert's October 2021 report at the first trial was because Plaintiff's counsel had not shared that report with Tesla sufficiently in advance of trial.

Because that report is an accurate statement of Tesla's financial condition at the time of the last verdict, Plaintiff's use of that report at the retrial would involve only a minor and appropriate correction of the evidence: it would demonstrate that Tesla's net worth at the time of the first trial was $642.8 billion, Nunley Decl. Ex. 3, rather than $45.8 billion, the amount indicated by the earlier expert report of October 11, 2019 that Plaintiff ultimately used in the first trial.

Allowing that updated report would be consistent with the Court's ruling that the evidence to be presented on retrial "really is the evidence *as of the time* of the first trial." 1/17/23 Tr., 14:25-15:1 (emphasis added). Because Tesla's financial condition is an appropriate consideration for the jury in awarding punitive damages, it makes sense for the jury to use the correct number. Second, Plaintiff's request is unlike the requests by Tesla to admit entirely new witnesses and evidence that it "knew or should have known … may have been necessary at the time of the first trial." *Little v. City of Richmond*, No. 13-CV-02067-JSC, 2015 WL 798544, at *2 (N.D. Cal. Feb. 23, 2015). That is because Plaintiff is requesting to present evidence that it prepared for the first trial and that was excluded only because Plaintiff failed to provide Tesla adequate time to review the evidence. Third, there could be no prejudice to Tesla from admission of this updated report, because unlike at the first trial, Tesla has now been in possession of Plaintiff's updated report for more than a year.

Nonetheless, Plaintiff is prepared to rely on its earlier October 11, 2019 expert report if the Court continues to exercise its discretion to limit evidence on retrial to the same evidence that was admitted at the first trial.

Whether the Court rules that Tesla's financial condition should be measured as of October 2021, or as of the date of the prior expert report introduced at the first trial (dated

October 11, 2019), fairness requires that Tesla should be prohibited from offering any testimony or argument suggesting that Plaintiff's report is in any sense out of date, not current, or otherwise not an appropriate basis for assessing punitive damages. If Tesla intends to object to the evidence on that basis—which it did *not* do at the first trial—Plaintiff should be allowed to introduce the updated evidence of Tesla's financial condition that Plaintiff has produced to Tesla.

VII. **Motion *In Limine* No. 7 to Exclude the Email Forwarding Lamar Patterson's Resume (Trial Exhibit 265)**

The Court should exclude Trial Exhibit 265, a transmittal email through which Mr. Diaz forwarded the resume of Lamar Patterson to his supervisors. At the first trial, Tesla used this exhibit to attack the credibility of Mr. Diaz's complaints of harassment, arguing that the email was evidence that Mr. Diaz had encouraged other Black workers (here, Mr. Patterson) to come work at Tesla. *See* Tr. 1:52:13-21 ("The evidence is going to show that [Mr. Diaz] also recommended other folks come and work at this facility, despite the fact that, according to him now, after he's hired a lawyer and the like, that this was the most racially hostile environment he's ever seen, that there's graffiti in the bathrooms, and it was so horrible for him that he did not want to return to work. The evidence is going to show that during this time when he's suffering from all this, he's recommending for other folks to come to this Tesla facility to actually work."); Tr. 3:529:4-6 ("Q: Okay. And you thought it would be a good idea to have another person come in to work in your work environment that you said was a very racist work environment; correct?").

Testimony at the first trial revealed that Tesla's insinuations about Mr. Diaz's purported hypocrisy were completely baseless. Unrebutted evidence at trial showed that Mr. Diaz did not personally know Mr. Patterson prior to Mr. Patterson's employment at Tesla. Instead, Mr. Diaz was approached by a colleague, who asked if there were any openings for an elevator operator. Tr. 3:465:5-23. Mr. Diaz, a lead elevator operator at the time, noted that the elevators were extremely understaffed and that he often had to operate two freight elevators by himself on shift. *Id.* That is why he told his coworker there were openings for elevator operators. *Id.* The coworker stated that his cousin Mr. Patterson needed a job, and asked if Mr. Diaz would forward

Mr. Patterson's resume to his supervisors. *Id.* Mr. Diaz agreed, not knowing that Mr. Patterson was Black. *Id.* 465:24-25. Mr. Patterson's cousin was himself biracial, lending credence to Mr. Diaz's testimony that he did not know Mr. Patterson's race. *Id.* 466:1-2.

Exhibit 265 should therefore be excluded at retrial as both irrelevant and unduly prejudicial. *See* Fed. R. Evid. 401, 402, 403.

Neither party called Mr. Patterson as a witness at the first trial, and he therefore cannot testify at the retrial. *See* 1/17/23 Minute Order (Dkt. 376). Because Mr. Patterson is not a witness, his employment history and credibility are not at issue in the retrial.

The email forwarding Mr. Patterson's resume also has no bearing on Mr. Diaz's credibility or any of his testimony. Mr. Diaz did not know Mr. Patterson before Mr. Patterson came to work for Tesla, and Tesla presented no evidence to the contrary. Contrary to Tesla's counsel's opening statement from the first trial, Mr. Diaz did not refer or recommend Mr. Patterson to work for Tesla—he simply forwarded a resume received from a colleague, not knowing the applicant's race. All Mr. Diaz knew was that Tesla had a job opening for an elevator operator. Introducing the email and Mr. Patterson's resume into evidence during the retrial would only permit Tesla to again baselessly suggest that Mr. Diaz's email contradicts his testimony about the existence of a hostile work environment for Black employees and would cause unnecessary juror confusion. Exhibit 265 is irrelevant and should be excluded from evidence.

## VIII.   Motion *in Limine* No. 8 to Exclude Evidence of Mr. Diaz's Pay Raise

The Court should exclude Exhibit 293, which discusses a pay raise that Mr. Diaz received, from $16 to $18 per hour, while working for Tesla. This was a stipulated exhibit at the first trial that pertained solely to the issue of joint employment.

This evidence is irrelevant to the issues of compensatory and punitive damages. Fed. R. Evid. 402. Mr. Diaz seeks only noneconomic damages, and his pay rate is not relevant to the emotional and mental harm Mr. Diaz suffered. Nor is his modest raise relevant to punitive damages. A slightly higher pay rate does not make harassment any less damaging or blameworthy. The only conceivable purpose for which Tesla could introduce this evidence

would be to argue improperly that Mr. Diaz was or should have been happy due to his pay raise, notwithstanding the harassment he faced. Since Mr. Diaz's pay is entirely unrelated to his emotional distress from racial harassment, this exhibit should be excluded.

IX.     **Motion *in Limine* No. 9 to Exclude Demetric Di-az's October 2015 Job Application (Trial Exhibit 379)**

        The Court should exclude Trial Exhibit 379, an application for employment that Plaintiff's son Demetric Di-az allegedly submitted to Tesla four days after the younger Mr. Di-az was terminated.

        This exhibit is not relevant to Plaintiff's damages, especially because Mr. Di-az never told his father that he had reapplied to work at Tesla. Tr. 508:18-509:3. When defense counsel attempted to question Plaintiff further on this point, the Court ruled the testimony not relevant. *Id.* 509:4-8. This information is even less relevant now, in a damages-only trial focused solely on the elder Mr. Diaz. Whether Mr. Diaz's son applied to work without telling him reveals nothing about the scope or nature of Mr. Diaz's emotional distress.

        This exhibit risks misleading the jury into believing (contrary to any evidence) that Mr. Diaz somehow condoned or encouraged his son to reapply to work at Tesla, in spite of the racial harassment he experienced there. This could lead the jury to unfairly and baselessly assume that Mr. Diaz was not actually harmed by the harassment and could result in the jury being unfairly prejudiced against Mr. Diaz. Accordingly, and in line with the Court's previous ruling that this topic was not relevant, the Court should exclude this exhibit.


Dated:   February 3, 2023              **CALIFORNIA CIVIL RIGHTS LAW GROUP**
                                       **ALEXANDER MORRISON + FEHR LLP**
                                       **ALTSHULER BERZON LLP**

                                            /s/ Lawrence A. Organ
                                       Lawrence A. Organ
                                       Cimone A. Nunley
                                       J. Bernard Alexander III
                                       Michael Rubin
                                       Jonathan Rosenthal
                                       Attorneys for Plaintiff
                                       OWEN DIAZ