QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (appearance *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
  Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Daniel C. Posner (CA Bar No. 232009)
  danposner@quinnemanuel.com
  Mari F. Henderson (CA Bar No. 307693)
  marihenderson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Asher Griffin (appearance *pro hac vice*)
  ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*

[Additional counsel listed on next page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| OWEN DIAZ,<br><br>  Plaintiff,<br><br>  v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.,<br><br>  Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**PARTIES' PROPOSED VERDICT FORMS**<br><br>Hearing Date: February 27, 2023<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>Judge:  Hon. William H. Orrick |

LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960
T: (415)-453-7352 | F: (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
ALEXANDER KRAKOW + GLICK LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
T: (415)421-7151 | F: (15)362-8064

*Attorneys for Plaintiff*
*Owen Diaz*

Pursuant to the Joint Case Management Statement (Dkt. 356), plaintiff Owen Diaz and defendant Tesla, Inc. hereby submit the following proposed verdict forms for the retrial, along with their position statements regarding the same.

## I.     PLAINTIFF'S PROPOSAL REGARDING VERDICT FORM

### A.     Plaintiff's Proposed Verdict Form

We, the Jury, find as follows:

**NON-ECONOMIC DAMAGES**

1. What past non-economic damages did Owen Diaz sustain as a result of Tesla, Inc.'s unlawful conduct?

    $_____

    *(Go to the next question.)*

2. What future non-economic damages is Owen Diaz likely to sustain as a result of Tesla, Inc.'s unlawful conduct?

    $_____

    *(Go to the next question.)*

**PUNITIVE DAMAGES**

3. What amount of punitive damages do you award to Owen Diaz?

    $_____

    *(When you have reached your verdict, the jury foreperson should sign and date this form and contact the courtroom deputy, Ms. Davis.)*

DATED: _____

_____
PRESIDING JUROR

### B.     Plaintiff's Position In Support Of His Version Of Verdict Form

  **A. Introduction**

By asking this Court to reopen the issue of its liability for punitive damages, Tesla is once again improperly seeking reconsideration of a prior Court order that the parties *and* the Court have

consistently relied upon for nearly ten months. Fundamental considerations of fairness require the Court to reject Tesla's last-minute stratagem.

From shortly after the Court's issuance of its April 22, 2022 Order on Post-Trial Motions, through the litigation over *Gasoline Products* and the past several months of pre-trial document exchanges and meet and confer sessions, the parties have been in full agreement that the upcoming damages-only retrial would be limited to determining the *amount* of compensatory and punitive damages that Tesla must pay Owen Diaz, not whether Tesla was *liable* to pay compensatory or punitive damages.

On February 6, 2023, despite having repeatedly confirmed that understanding of the Court's prior rulings (including in its draft jury instructions and statement of the case that Tesla lodged with the Court, Dkt. 374, 374-1, and 374-2), Tesla completely flipped its position, asserting for the first time that the prior jury's finding that Tesla was liable for punitive damages should have no binding effect on the damages-only retrial. In an email sent to Mr. Diaz's counsel, Tesla thus wrote: "[U]pon further review of the Court's order on Tesla's motion for a new trial on liability and damages and the language of your proposed instructions, we have made revisions to proposed disputed instruction nos. 1 and 11 to reflect that the jury on the retrial will make an independent determination about whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the plaintiff's rights.' (Dkt. 365 at 13.)  We also have revised our joint statement of the case accordingly, and added to our proposed verdict form the question on this issue that was read to the first jury."

Tesla's reversal of position seeks to change everything, including the jury instructions, statement of the case, verdict form, and motions *in limine* – all of which were predicated on the parties' *joint* understanding and agreement that the damages jury would be bound by the first jury's findings that Tesla acted with malice, oppression, or in reckless disregard of Mr. Diaz's Section 1981 rights. Tesla's newly revised pretrial documents proceed from the mistaken assumption that the damages jury should be asked to decide *whether* Mr. Diaz is entitled to punitive damages before even considering the appropriate *amount* of those punitive damages. Yet Tesla has once again failed to comply with the Court's required procedures, as it not only failed to seek reconsideration of the Court's prior ruling but it has still not presented any legal authority

justifying its procedurally improper, untimely, and prejudicial attempt to circumvent the Court's orders rejecting its previous motion for a new trial on liability.

**B. Argument**

1. The Court's Post-Trial Orders Repeatedly and Consistently State that the Retrial is About Only the *Amount* of Compensatory and Punitive Damages, Not *Liability* for Such Damages.

On December 7, 2022, when the Court informed the parties that it was denying Tesla's second motion for a new trial on liability, the Court stated it was "really troubled" by Tesla's "concealed heads, I win/tails, Plaintiff loses" strategy in resting its motion on a theory it did not raise in its prior new trial motion. The Court informed Tesla that its renewed motion was foreclosed by judicial estoppel and is "merely a disguised attempt" to have the Court reconsider that prior motion for a new trial on liability, which the Court had denied. (12/7/22 Transcript at 4.)

Despite this strong admonition, Tesla is once again backpedaling from a prior position after leading Mr. Diaz and the Court astray for months. What Tesla characterizes as its "further review" of the Court's December 12, 2022 order denying its motion for retrial on liability is just another disguised effort to overturn the parties' settled understanding based on the Court's prior ruling – and this time, the prejudice to Mr. Diaz and the Court is even greater, given Tesla's prior express acquiescence in the Court's order and the last-minute timing of Tesla's change of position, which would completely change the nature of the upcoming retrial.

    a. April 22, 2022 Order on Post-Trial Motions (Dkt. No. 328)

Tesla first sought to challenge the jury's liability findings in November 2021 when it moved for judgment as a matter of law and for a new trial. The Court *rejected* Tesla's arguments, holding that "the weight of the evidence amply supports the jury's liability findings." (Dkt. 328, 2:7.) Summarizing the evidence, the Court noted the heinousness of Tesla's conduct: "The evidence was disturbing. The jury heard that the Tesla factory was saturated with racism. Diaz faced frequent racial abuse, including the N-work and other slurs. Other employees harassed him. His supervisors, and Tesla's broader management structure did little or nothing to respond.  And supervisors even joined in the abuse, one going so far as to threaten Diaz and draw a racist cartoon near his workstation." (Dkt. 328 at 1:19-23.) However, the Court granted Tesla's alternative

motion for a remittitur (in part) – which was limited to a request for a *reduction* in the amount of compensatory and punitive damages. (Dkt. 328 at 2:9-17.)[1]

The Court clearly stated in its order that "to the extent that Tesla's argument is that *no* punitive damages are warranted as a matter of law, I reject it…the jury had a legally sufficient basis to make *an* award of punitive damages." (Dkt. 328 at 37:17-19.) That ruling has governed all subsequent proceedings in this case for the past nine months.

Nothing in the reasoning of the Court's order provides any basis for reopening the first jury's finding that Tesla was liable for punitive damages. The Court analyzed only whether the punitive damages award was "unconstitutionally large," applying the "guideposts" set forth in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). The Court found that "Tesla's conduct falls high on the spectrum" of reprehensibility and that "the jury had sufficient grounds to find that Tesla's actions showed 'an indifference to or a reckless disregard' for Diaz's (and others') right to be safe and free from discrimination in the workplace." (Dkt. 328 at 38:18; 39:3-5.) The Court found "Tesla's indifference to Diaz's complaints . . . striking" noting that "attempting to pawn off responsibility for a safe and discrimination-free workplace would seem to be precisely the sort of extraordinary behavior punitive damages are built for." (Dkt. 328 at 38:5; 40:11-12.) The Court also held the evidence "supports a finding that Tesla intentionally built an employment structure that allowed it to take advantage of Diaz's (and others') labor for its benefit while attempting to avoid any of the obligations and responsibilities that employers owe employees." (Dkt. 328 at 40:4-7.)

The Court concluded its analysis by stating that "[d]espite Tesla's attempts to characterize it any other way, its treatment of Diaz – and the treatment of its supervisors and employees (or contractors) – falls high on the reprehensibility scale, requiring a high ratio." (Dkt. 328 at 42: 14-17.) Nothing in this analysis stated or implied that the jury's finding of Tesla's liability for

---

[1] The Court conditionally denied the motion for a new trial based on Plaintiff accepting the Court's remittitur, stating that if Plaintiff rejects the remittitur, the Court *would grant a new trial on damages.* (Dkt. 328, 43:13-19.)

-4-    Case No. 3:17-cv-06748-WHO
PARTIES' PROPOSED VERDICT FORMS

punitive damages should be disturbed. To the contrary, the Court found that the jury's finding of liability for punitive dames was amply supported by the weight of the evidence.

Tesla argues that the Court's determination that substantial evidence supported the jury's finding of liability for punitive damages is irrelevant. Not so. The Court's remittitur—and subsequent new trial order, once the remittitur was rejected—was based entirely on the Court's determination that the *amount* of compensatory and punitive damages awarded by the jury was too high. The Court never suggested that Tesla's *liability* for punitive damages was a question that needed to be retried by a second jury, and the Court's order provides no basis for that conclusion. To the contrary, the Court was unequivocal about Tesla's liability for punitive damages, even if the amount awarded by the first jury was, in the Court's view, excessive. The Court's unmistakable view of the case, as expressed in that ruling, has guided the parties' actions and negotiations for the last 10 months, and Tesla's liability for punitive damages was never in question until this past Monday evening.

To reiterate, there is no reason why the Court would order a retrial on an issue which it did not identify as erroneous in the first trial: that Tesla was liable for punitive damages. The Court did not identify any infirmity in the jury's finding that Tesla acted maliciously, oppressively, or recklessly – to the contrary, the Court found that Tesla's conduct "falls high on the reprehensibility scale." There is no reason to revisit the first jury's finding on the issue of entitlement to punitive damages, which the parties have never before understood to be within the scope of the retrial.

  b. <u>June 27, 2022 Order Granting Motion for New Damages Trial (Dkt. No. 348)</u>

After Plaintiff rejected the remittitur of the jury's award of damages, the Court reiterated its holding that "Tesla's motion for judgment as a matter of law and a new trial on liability is DENIED," and ordered "a new trial solely on damages." (Dkt. 348.)

  c. <u>December 12, 2022 Order Denying New Trial On Liability (Dkt. No. 365)</u>

Despite these clear orders from the Court, on October 14, 2022 Tesla once again moved for a new trial on liability, arguing that liability and damages are "inextricably interwoven." (Dkt. 359.) The Court denied Tesla's motion, pointing out that the Court "had already decided this

question," and holding that the motion is judicially estopped, procedurally barred, and fails on the merits. (Dkt. 365 at 1.)

The Court specifically found each of the three factors that courts consider when deciding to invoke judicial estoppel. As the Court pointed out, "the purpose of judicial estoppel 'is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment…and to prevent improper use of judicial machinery.'" (Dkt. 365 at 3, citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).)

The Court further found that the motion was, at its core, a disguised motion for a new trial on liability – which Tesla had already attempted in its November 2021 motion and the Court had already specifically rejected. (Dkt. 365 at 4:20-24.) Thus, the Court held, Tesla's motion was denied as procedurally barred and it reiterated that "the new trial will be held on damages only." (Dkt. 365 at 7:2-3.)

Finally, the Court held that Tesla's motion for a new trial on liability failed on the merits. The Court found that "it is clear that I may exercise my discretion to hold a new trial on damages only so long as the questions of damages and liability are not so interwoven as to confuse the jury or prejudice Tesla," and that "based on the facts of this case, the issues of liability and damages are sufficiently distinct and separable as to permit a retrial on damages only." (Dkt. 365 at 10:4-5, 10-13.)

Tesla asserted for the first time in its February 6, 2023 email that the Court's December 12, 2022 order permits the jury to "make an independent determination about whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the plaintiff's rights,'" citing Dkt. 365 at 13. Tesla's position, that Diaz must once again prove malice, oppression, or reckless disregard, ignores the basic substantive findings by the Court outlined above.

Tesla's change of position is purportedly based on its reading of a single paragraph in the Court's order denying Tesla's *Gasoline Products* motion. On page 13 of its Order, the Court stated that "while *Lutz* and *Wharf* specifically discuss separate trials for liability and compensatory damages, the reasoning also applies here to allow retrial of punitive damages without retrying liability" and that "[a]s outlined in the jury instructions, assessing punitive damages requires determining whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the

plaintiff's rights." (Dkt. 365 at 13:8-12.) Fairly read in the context of the rest of this order, as well as the Court's other orders repeatedly denying Tesla's attempts to hold a new trial on liability, Plaintiff does not understand the Court's discussion to suggest that the damages-only retrial would also encompass the threshold question of whether Tesla was liable to pay punitive damages – a question the first jury unanimously resolved in favor of Mr. Diaz and that the Court upheld against Tesla's post-trial motions challenges.

In that very same order, the Court specifically rejected Tesla's argument that "federal law 'generally require[s] that the same jury determine both *liability for, and the amount of, punitive damages* because those questions are so interwoven.'" (Dkt. 365 at 14, fn 9.) The Court found that the unpublished case cited by Tesla for this proposition, *Zender v. Vlasic Foods, Inc.*, 91 F.3d 158 at *5 (9th Cir. 1996), was distinguishable and therefore "does not preclude a retrial on punitive damages alone here." (*Id.*)

Accordingly, Plaintiff interpreted the Court's discussion to mean simply that the retrial jury's assessment of punitive damages will involve considering the *degree* of malice, oppression, or reckless disregard—the degree of reprehensibility—not that the retrial jury will be asked to decide whether there was *any* malice associated with Tesla's conduct. That was Tesla's interpretation of the Court's order, too, up until this week.

2. <u>Prior to February 6, 2023 Tesla Repeatedly Took the Position – in Communications with Plaintiff's Counsel and the Court – that the Scope of the Retrial Is Limited to the Amount of Punitive Damages and Not Plaintiff's Entitlement to Punitive Damages</u>

Tesla asserts without citation or support that entitlement to punitive damages is "a damages issue" and "not a liability issue." This contention is utterly disingenuous in light of Tesla's communications with Plaintiff's counsel and the Court prior to February 6, 2023, which clearly indicate its agreement that the damages-only retrial would assume entitlement to punitive damages.

In its December 7, 2022 Minute Order denying Tesla's Motion for a New Trial, the Court ordered the parties to engage in a "robust discussion concerning the retrial and to present their areas of agreement and dispute in a Joint Case Management Statement." (Dkt. 364.) Since the Court's order, the parties have done exactly that – they have robustly debated the scope of the

damages-only retrial. Throughout that debate, one thing has remained constant: counsel for both Diaz and Tesla have shared a mutual, repeatedly reaffirmed understanding that the scope of retrial is limited to the appropriate *amount* of compensatory and punitive damages, not Diaz's entitlement to those damages.

Tesla's previously proposed Statement of the Case, Jury Instructions, and Verdict Form all clearly demonstrate Tesla's understanding and acceptance of the fact that the scope of retrial will encompass the *amount* of punitive damages, not whether Tesla is liable for punitive damages.

Tesla's January 16, 2023 Proposed Statement of the Case reiterates the first jury's finding that Tesla's conduct warranted an award of punitive damages. It reads: "It was also determined that Tesla's unlawful conduct was conducted with malice, oppression, or in reckless disregard of Mr. Diaz's rights. As a result of those previous determinations, you will be asked to determine the extent and degree of punitive damages, if any, Mr. Diaz is entitled to recover from Tesla."  (Dkt. 374-1 Exhibit A.) By asserting that the jury must "determine the extent and degree of punitive damages" Tesla properly acknowledged the first jury's previously uncontested finding that Tesla is liable for punitive damages.

Tesla's Proposed Jury Instructions also demonstrate its understanding that only the amount of punitive damages, and not its liability for punitive damages, will be at issue in the retrial. Tesla did not propose an instruction asking the jury to determine whether Tesla's conduct was "malicious, oppressive or in reckless disregard of plaintiff's rights." To the contrary, Tesla proposed a single jury instruction regarding punitive damages, focusing the jury's attention on the *amount* of punitive damages only: "Mr. Diaz has the burden of proving by a preponderance of the evidence the amount of punitive damages that should be awarded. You must use reason in setting the amount of punitive damages . . ." (Dkt. 374-2 Exhibit B.) Tesla's redlined versions of Plaintiff's Proposed Statement of the Case and Proposed Jury Instructions further confirm that Tesla did not previously seek to challenge the parties' understanding that Mr. Diaz's entitlement to punitive damages has already been definitively determined, Instead, Tesla it proposed *new language* affirming Diaz's entitlement to punitive damages: "It has also been found that Mr. Diaz is entitled to recover punitive damages." (Dkt. 374-4, Ex. D (redline of Plaintiff's Proposed Jury Instructions).)

Tesla's January 31, 2023 proposed verdict form perhaps most clearly demonstrates Tesla's previous understanding that the scope of retrial is limited to the *amount* of damages. The proposed form does *not* ask the jury to consider whether Tesla's conduct was malicious, oppressive, or in reckless disregard of the plaintiff's rights." Nor should it have, because that question was already resolved by the first jury and that portion of the verdict was upheld by this Court. Instead, Tesla asks just a single question regarding punitive damages: "What amount of punitive damages do you award to Owen Diaz? $_____" (2023.01.31 Tesla's Proposed Jury Verdict Form). Clearly, through at least January 31, 2023, Tesla understood that the scope of retrial did not include a second jury finding regarding whether Tesla was liable for punitive damages.

Tesla's Motions in Limine, which it filed on February 3, just three days before Tesla's about-face, also proceed from the assumption that Tesla's liability for punitive damages was already resolved – and in none of the exchange of drafts and meet and confer discussions about those MILs did Tesla even hint at its upcoming change in position (or put Plaintiff on notice that he might have to prepare an additional MIL of his own to address the issue).

Significantly, Tesla's Motion in Limine No. 4 uses the previously-unchallenged damages-only limitation at retrial as a sword to argue for exclusion of Diaz's "me too" evidence, asserting: "Evidence of conduct not directed at or experienced by Mr. Diaz is constitutionally barred from a calculation of punitive damages." (Dkt. 381 at 13:3-14.)  Addressing this argument to the Court during the most recent status conference, Tesla's counsel specifically represented to the Court that because the scope of retrial was limited to "the amount of damages" (as opposed to Diaz's entitlement to damages) Diaz's "me too" evidence must be barred:

> MR. POSNER: Understood. And the other issue that I heard Your Honor say is that the "Me Too" evidence would likely go to pervasiveness for purposes of reprehensibility. We do think the law draws a pretty clear distinction, a clear distinction between the admissibility and the relevance of evidence of harm to others with respect to the threshold determination of reprehensibility and whether there should be punitive damages on the one hand and, on the other hand, the amount of punitive damages. **And so we made our pitch before that this trial, because of the overlapping evidence between liability and damages, should revisit the findings of liability. We're moving past that. But given that this trial now is limited to damages, the amount of damages, we feel the law is clear that that evidence doesn't come in at all.**

(1/17/23 Transcript at 8:9-23.) (Emphasis added.) While Plaintiff vehemently disagrees with Tesla's assertion that "me too" evidence should be excluded on this basis, this colloquy demonstrates Tesla's cynical willingness to disavow previously accepted positions when convenient. Tesla should be bound by its unequivocal representation to the Court – that the retrial is limited to "the amount of damages." Its repeated shift of position based on the exigencies of the moment should not be countenanced, just as it was not countenanced the last time Tesla tried to obtain reconsideration of the Court's post-trial orders while pretending to be doing something else entirely.

For all of these reasons, Tesla's last-minute effort to re-open the issue of its liability for punitive damages, which is an improper motion for reconsideration of the Court's post-trial rulings and completely inconsistent with the parties' joint understanding of those rulings for the past 10 months, should be rejected.

## II.  DEFENDANT'S PROPOSAL REGARDING VERDICT FORM

### A.  Defendant's Proposed Verdict Form

Defendant proposes the following edits to the verdict form Mr. Diaz proposes:

**~~NON-ECONOMIC~~ DAMAGES**

1. What past non-economic damages, if any, did Owen Diaz sustain as a result of Tesla, Inc.'s unlawful conduct?

$_____

*(Go to the next question.)*

2. What future non-economic damages, if any, is Owen Diaz likely to sustain as a result of Tesla, Inc.'s unlawful conduct?

$_____

*(Go to the next question.)*

**PUNITIVE DAMAGES FOR CIVIL RIGHTS CLAIMS**

1  3. You may only award punitive damages for the reasons discussed in Instruction No. [X], that is,
2  if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in
3  reckless disregard of the plaintiff's rights. Do you find by a preponderance of the evidence that
4  Owen Diaz is entitled to punitive damages against Tesla Inc.?
5  _____ YES _____ NO

7  *If you answered "yes" to Question 3, answer the next question If you answered "no," sign date*
8  *and return this juror questionnaire.*

10 ~~3~~4. What amount of punitive damages, if any, do you award to Owen Diaz?
11      $_____

12    **B.    Defendant's Position In Support Of Its Version Of Verdict Form**

13      Tesla proposes two main edits to Mr. Diaz's proposed verdict form.

14      ***First***, Tesla proposes that the Court ask the jury to decide whether Mr. Diaz has proven by
15 a preponderance of the evidence that Mr. Diaz is entitled to punitive damages. The verdict form in
16 the first trial included this question (Dkt. 301, Question No. 9). Mr. Diaz is wrong to omit this
17 question from the retrial. On this retrial, the first jury's findings of *liability* against Tesla will
18 apply. Mr. Diaz's entitlement to punitive damages is a ***damages issue***, however, not a liability
19 issue. Indeed, in ruling on Tesla's motion for new trial on liability and damages, the Court
20 recognized the distinction between the second jury's task in assessing punitive damages—
21 including its assessment of "whether the conduct at issue was 'malicious, oppressive or in reckless
22 disregard of the plaintiff's rights'"—and the first jury's finding of a hostile work environment (in
23 other words, the liability determination). Based on that distinction, the Court concluded it was not
24 necessary to retry liability along with a retrial of punitive damages, as follows:

25      [W]hile *Lutz* and *Wharf* specifically discuss separate trials for liability and
        compensatory damages, the reasoning also applies here to allow retrial of punitive
26      damages without retrying liability. As outlined in the jury instructions, assessing
        punitive damages requires determining whether the conduct at issue was
27      "malicious, oppressive or in reckless disregard of the plaintiff's rights." Jury
        Instructions at 41. That question is not so intertwined with liability so as to confuse
28      the jury. Asking whether Tesla acted maliciously, oppressively, or recklessly is a

> fundamentally different question from whether the environment itself was hostile, Tesla was a joint employer, there was a sufficient contractual relationship, Tesla failed to take reasonable steps to protect Diaz, or Tesla was negligent in supervising or continuing to employ Ramon Martinez.

Dkt. 365 at 13.

Accordingly, the Court previously concluded that the second jury will need to be instructed on how to determine "whether Tesla acted maliciously, oppressively, or recklessly," and that this determination is "fundamentally different" from the first jury's finding of liability.  Tesla's positions in this verdict form, its statement of the case, and its jury instructions track the Court's order on Tesla's motion for new trial on liability and damages.  It is erroneous, and contrary to the Court's prior ruling, for Mr. Diaz to seek to preclude the second jury from independently determining whether there is a basis for punitive damages.

Nor is it relevant that the Court determined that substantial evidence supported the first jury's finding that there was a basis to award "*an*" amount of punitive damages.  Dkt. 328 at 37. The Court made that ruling in the context of Tesla's Motion for Judgment As a Matter of Law, New Trial and/or Remittitur Pursuant to Federal Rules of Civil Procedure 50 and 59 (Dkt. 317).  If Mr. Diaz wanted to benefit from that ruling, then he should have accepted the Court's remittitur of the punitive damages to the amount the Court determined was the maximum sustainable by the proof.  But Mr. Diaz rejected the remittitur and elected a new trial on damages.  In so doing, he chose to restart the damages inquiry, which, as the Court recognized, includes a new determination of whether Tesla's conduct "was 'malicious, oppressive or in reckless disregard of the plaintiff's rights'" such that it supports an award of punitive damages.  Dkt. 365 at 13.

*Second*, Tesla proposes to include the words "if any" in the questions regarding the amounts of compensatory and punitive damages the jury may award.  Like the first jury, the second jury is entitled to award no compensatory damages to Mr. Diaz, or nominal compensatory damages, and no punitive damages.  Nothing about the first jury's finding of Tesla's liability for creating a hostile work environment that will apply on the retrial requires the second jury to award any amount of compensatory or punitive damages.  Rather, Mr. Diaz still needs to prove such damages by a preponderance of the evidence.  *See, e.g.*, Ninth Circuit Model Civil Jury Instruction

5.1 (recognizing preponderance of the evidence standard for proving damages); Ninth Circuit Model Civil Jury Instruction 5.5 (same regarding punitive damages); *Vazquez v. Caesar's Paradise Stream Resort*, 2013 WL 6244568, at *7-8 (M.D. Pa. Dec. 3, 2013) ("[Plaintiff] had the burden of proving these damages by a preponderance of the evidence … to recover compensatory damages under § 1981"); *Irish v. Jewel Food Stores, Inc*., 2012 WL 619555, at *7-9 (N.D. Ill. Feb. 23, 2012) ("Plaintiff … must prove his damages by a preponderance of the evidence" for § 1981 hostile work environment claim).

Thus, notwithstanding the first jury's finding of liability, the second jury remains entitled to award Mr. Diaz nominal damages if Mr. Diaz fails to prove his compensatory damages by a preponderance of the evidence. *See, e.g.*, *Guy v. City of San Diego*, 608 F.3d 582, 588 (9th Cir. 2010) (affirming denial of new trial on damages where jury awarded nominal damages despite finding that defendant used excessive force and that plaintiff was injured, because jury was free to find that injury resulted from other than the defendant's excessive use of force); *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co*., 405 F.3d 764, 772 (9th Cir. 2005) ("An award of nominal damages does not mean that there were not actual economic damages, just that the exact amount of damages attributable to the improper conduct was not proven.  The court instructed the jury to award nominal damages if it found that ARCO had harmed Flying B in violation of § 1981, but that Flying B failed to prove damages as defined in these instructions.  And that is exactly what the jury did."); *Brocade Communications Systems, Inc. v. A10 Networks, Inc*., 2013 WL 831528, at *23 (N.D. Cal. Jan 10, 2013) ("Although small in amount, a nominal damages award still reflects the jury's finding that all of the elements of the claim have been met to establish liability.").  And as discussed above, the second jury is likewise free to determine that Mr. Diaz has not proven his entitlement to any amount of punitive damages.  Accordingly, it is appropriate to ask the jury to determine whether Mr. Diaz is entitled to "any" amount of compensatory or punitive damages.

***Third***, Mr. Diaz's complaints about the timing of Tesla's proposal of this version of the verdict form are meritless.  Tesla proposed this version two days before the parties' deadline to file the verdict form, three weeks before the pretrial conference, and six weeks before trial is set to

begin, and thus it is undoubtedly timely.  *See Nash v. Lewis*, 365 F. App'x 48, 51 n.2-3 (9th Cir. 2010) (party "timely objected, before the jury began deliberating, to all instructions proposed but not given" and "preserved his objection to the verdict form's [omission] because [the party]'s proposed verdict form included a space for the jury to find" the proposed finding "before the jury rendered its verdict and was discharged").  Indeed, both parties have been revising their proposed pretrial documents leading up to the deadline to file them with the Court.  Mr. Diaz has had a full and fair opportunity to oppose this proposed verdict form, and his focus on the timing of Tesla's proposal of it reveals the inadequacy in his substantive opposition to it.

DATED:  February 8, 2023          QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Daniel C. Posner*
   Alex Spiro (appearance *pro hac vice*)
   alexspiro@quinnemanuel.com
   QUINN EMANUEL URQUHART & SULLIVAN, LLP
   51 Madison Ave., 22nd Floor
   New York, NY 10010
   Telephone: (212) 849-7000
   Facsimile: (213) 443-3100

   Daniel C. Posner
   Mari F. Henderson
   865 S. Figueroa St., 10th Floor
   Los Angeles, California 90017
   Telephone: (213) 443-3000

   Asher Griffin (appearance *pro hac vice*)
   ashergriffin@quinnemanuel.com
   300 W. 6th St., Suite 2010
   Austin, TX 78701
   Telephone: (737) 667-6100

   *Attorneys for Defendant Tesla, Inc.*


DATED:  February 8, 2023          CALIFORNIA CIVIL RIGHTS LAW GROUP
                                  ALEXANDER MORRISON + FEHR LLP
                                  ALTSHULER BERZON LLP

By */s/ Larry Organ*
Lawrence A. Organ
Cimone A. Nunley
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone: (415)-453-7352
Facsimile: (415)-785-7352

J. Bernard Alexander III
ALEXANDER MORRISON + FEHR LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 394-0888
Facsimile: (310) 394-0811

Michael Rubin
Jonathan Rosenthal
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

*Attorneys for Plaintiff Owen Diaz*

**ATTESTATION OF CONCURRENCE**

I, Daniel C. Posner, am the ECF user whose ID and password are being used to file this PARTIES' PROPOSED VERDICT FORMS. Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in the filing of this document.

DATED:  February 8, 2023                           By */s/ Daniel C. Posner*