1  LAWRENCE A. ORGAN (SBN 175503)
   larry@civilrightsca.com
2  MARQUI HOOD  (SBN214718)
   marqui@civilrightsca.com
3  CIMONE A. NUNLEY (SBN 326915)
   cimone@civilrightsca.com
4
   **CALIFORNIA CIVIL RIGHTS LAW**
5  **GROUP**
   332 San Anselmo Avenue
6  San Anselmo, California 94960
   Telephone:    (415)-453-7352
7  Facsimile:    (415)-785-7352
8
   J. BERNARD ALEXANDER (SBN 128307)
9  **ALEXANDER MORRISON + FEHR LLP**
   1900 Avenue of the Stars, Suite 900
10 Los Angeles, California 90067
   Telephone:    (310) 394-0888
11 Facsimile:    (310) 394-0811
12
   MICHAEL RUBIN (SBN 80618)
13 mrubin@altber.com
   JONATHAN ROSENTHAL (SBN 329638)
14 jrosenthal@altber.com
   **ALTSHULER BERZON LLP**
15 177 Post Street, Suite 300
   San Francisco, California 94108
16 Telephone:    (415) 421-7151
   Facsimile:    (415) 362-8064
17

18 Attorneys for Plaintiff OWEN DIAZ

QUINN   EMANUEL   URQUHART   &
SULLIVAN, LLP
  Alex Spiro (appearance *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
  Telephone: (212) 849-7000

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
  Daniel C. Posner (CA Bar No. 232009)
  danposner@quinnemanuel.com
  Mari F. Henderson (CA Bar No. 307693)
  marihenderson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
  Asher Griffin (appearance *pro hac vice*)
  ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*

19             **UNITED STATES DISTRICT COURT**

20            **NORTHERN DISTRICT OF CALIFORNIA**

21

22 OWEN DIAZ                              | Case No. 3:17-cv-06748-WHO

23              Plaintiff,               | **JOINT PROPOSED AND DISPUTED**
                                          | **JURY INSTRUCTIONS**
24        v.

25 TESLA, INC. dba TESLA MOTORS, INC.    | Pretrial Conference Date: February 27, 2023
                                          | Time: 2:00 p.m.
26              Defendant.

27                                        | Trial Date: March 27, 2023
                                          | Complaint filed: October 16, 2017
28

Pursuant to the Case Management Conference, Plaintiff Owen Diaz ("Mr. Diaz") and Defendant Tesla, Inc. ("Tesla") hereby submit the following jointly proposed and disputed jury instructions. Instructions that the parties dispute ("Disputed Instructions") are listed first, followed by instructions the parties agree upon ("Joint Proposed Instructions").  Each Disputed Instruction to which a party objects entirely is accompanied by:  (A) Mr. Diaz's position for or against the instruction ("Plaintiff's Position"); and (B) Tesla's position for or against the instruction ("Defendant's Position").  Each Disputed Instruction to which a party objects only partially is accompanied by:  (A) Mr. Diaz's proposed version of the instruction ("Plaintiff's Proposed Version of Instruction"); (B) Tesla's proposed version of the instruction, marking in redline any variation from Mr. Diaz's proposal ("Defendant's Proposed Version of Instruction"); (C) argument by Mr. Diaz in support of his proposal ("Plaintiff's Position In Support Of His Proposed Version Of Instruction"); and (D) argument by Tesla in support of its proposal ("Defendant's Position In Support Of Its Proposed Version Of Instruction").

**DISPUTED JURY INSTRUCTIONS**


**[DISPUTED] JURY INSTRUCTION NO. 1.**
**PRIOR FINDINGS OF TESLA'S LIABILITY**


**A.      Plaintiff's Proposed Version Of Instruction**

It has already been conclusively determined that defendant Tesla, Inc. is liable to plaintiff Owen Diaz for three different violations of law:

1. Tesla subjected Mr. Diaz to a racially hostile work environment;

2. Tesla failed to prevent one or more of Mr. Diaz's supervisors and one or more of his non-immediate supervisors or co-workers from racially harassing Mr. Diaz, and Tesla or a member of Tesla's management knew or should have known of the harassment yet failed to take prompt, effective remedial action; and

3. Tesla negligently supervised or continued the employment of one of Mr. Diaz's supervisors, Ramon Martinez.

You must accept each of these liability findings as true. Your task is first to decide what amount of damages should be awarded to compensate Mr. Diaz for the harms he suffered; and second, what amount of punitive damages would be appropriate to punish Tesla for its wrongful conduct and to deter future violations against others.

**B.      Defendant's Proposed Version Of Instruction**

~~It has already been conclusively determined that defendant~~ Defendant Tesla, Inc.~~,~~ ~~is~~ has been found liable to ~~plaintiff~~ Plaintiff Owen Diaz for three ~~different~~ violations of law:

1. ~~Tesla subjected~~ Mr. Diaz ~~to~~ experienced a racially hostile work environment while working for Tesla;

2. Tesla failed to prevent one or more of Mr. Diaz's supervisors and one or more of his non-immediate supervisors or co-workers from racially harassing Mr. Diaz, and Tesla or a member of Tesla's management knew or should have known of the harassment and failed to take prompt, effective remedial action; and

3. Tesla negligently supervised or ~~negligently~~ continued ~~the employment of~~ to employ one of Mr. Diaz's supervisors, Ramon Martinez.

You must accept each of these ~~liability~~ findings as true. ~~Your task is decide first,~~

Based on these findings, you must decide two issues:

First, you must decide what amount of damages~~,~~ if any, should be awarded to compensate Mr. Diaz for any injury you find was caused by Tesla.

~~the harms he suffered; and second~~ Second, you must decide what amount of punitive damages~~,~~ if any, would be appropriate to punish Tesla for its wrongful conduct and to deter future violations against others.

### C.      Plaintiff's Position In Support Of His Proposed Version Of Instruction

As an initial matter, Plaintiff objects to Tesla's recent change of position in which it seeks to reject the first jury's finding that it is liable for punitive damages and to obtain reconsideration of the Court's prior ruling that only the *amount* of punitive damages is at issue. In a twisted reading of the Court's prior orders, Tesla is now unwilling to accept that this is a "damages only retrial" focused on the amounts of non-economic and punitive damages. Tesla's last-minute request to completely reopen the first jury's special verdict finding Tesla liable for punitive damages directly contradicts Tesla's (and Plaintiff's) understanding of the permissible scope of the retrial, an understanding that informed all of the parties' communications until Monday, February 6, 2023 at 5:15 p.m.. That is when Tesla sent an email to Plaintiff's counsel stating, for the first time, that it no longer believed the first jury's special verdict finding that Mr. Diaz was entitled to punitive damages was controlling. Plaintiff objects to Tesla's eleventh-hour re-interpretation of the Court's Post-Trial Order and all subsequent orders and to Tesla's new instructions requiring the retrial to decide for itself, notwithstanding the first jury's amply supported findings, that Tesla's violations of federal law were made with malice, oppression or reckless disregard of Plaintiff's rights.

Plaintiff also specifically objects to Tesla's revised version of this instruction, which does not adequately inform the retrial jury what the first jury actually determined in its liability findings in favor of Mr. Diaz. The special verdict form asked the first jury to determine whether Tesla was liable on each claim for relief, and expressly incorporated by reference the specific

jury instructions that defined the terms and stated the required elements of each of those claims for relief. Tesla's proposed jury instructions would keep those ultimate conclusions while eliminating the explanatory context, making it impossible for a retrial jury comprised of non-attorneys to understand what the liability jury necessarily found. Unless the retrial jury is instructed, as the first jury was instructed, concerning the meaning of relevant terms and the elements that Mr. Diaz had to prove to establish liability, that retrial jury will have a legally inadequate understanding of which facts have been definitively established and which facts remain open to evidentiary dispute (which Tesla's attorneys would undoubtedly seek to exploit if the jury were not clearly instructed as to what the first jury actually found).

Instructing the retrial jury on the elements of the claims for which liability has been established is consistent with the approach taken by federal courts in California and elsewhere in damages retrials. Without those instructions, the retrial jury will not know when Tesla's evidence and argument contradicts the first jury's binding liability determinations, a gap in information that will inevitably lead to confusion and inefficiency.

Tesla's version of this instruction is incomplete, inaccurate, and misleading in several respects. First, with respect to Mr. Diaz's hostile work environment claim, the instruction must inform the jury that Tesla has already been found liable for creating a hostile work environment and that the second jury is bound by that finding. Defendant frames its instruction in terms of what Mr. Diaz "experienced," to leave open the possibility in the jurors' minds that the racially hostile work environment may have been caused by some persons or entities other than Tesla. But the verdict form makes clear that the racially hostile work environment was caused "by Tesla," Mr. Diaz's joint employer. With respect to the damages questions, Tesla improperly inserts "if any" with respect to the questions at issue. But because the first jury found, in determining *liability*, that Tesla's wrongful conduct caused quantifiable harm, a nominal damages instruction or possibility of a nominal damages instruction is entirely improper and would contradict the liability verdict. *See, e.g.*, Special Verdict form Q. 6; Jury Ins. No. 34 (requiring finding that "Plaintiff was harmed"); Jury Ins. No. 35 (requiring finding that "Ramon Martinez's unfitness or incompetence harmed Owen Diaz"). It would be contrary to the first jury's verdict for the retrial jury to find no harm and thus to award only nominal damages. Tesla

should not be permitted to argue that its wrongful conduct did not cause Mr. Diaz to suffer *any harm*.

Plaintiff asks the Court for specific instructions because he is hoping to avoid a replay of some of the issues experienced in Judge Chen's courtroom recently in the *In Re Tesla (Littleton)* case, 18-cv-04865.  In *Littleton*, the Court determined at summary adjudication that certain tweets by Elon Musk were false. Despite that finding, Tesla's lead trial counsel (who is also lead trial counsel here) argued contrary to that finding by suggesting that the statement was only "technically inaccurate."

This Court saw a preview of this tactic when Tesla discussed the scope of testimony relating to the replacement PMK witness, Ms. Chenoa Chavez. Tesla asserted that the scope of that replacement witness's testimony should be limited only by the PMK topics and that remedial conduct not testified to in the first trial should be admissible in the retrial. Tesla keeps pushing back against this Court's clear rulings concerning the limited scope of retrial, and the instructions Mr. Diaz is proposing are needed to prevent this improper type of argument by Tesla.

With respect to the language in the instruction regarding "conclusively determined" versus a "finding," it should not even be a close call. Yes, the first jury made findings. But the point of the Court's order that the second damages-only trial is truly limited only to damages is that those findings are conclusive and binding on retrial. Mr. Diaz included this language in the proposed instruction to preclude Tesla from arguing that even though the first jury made one set of "findings," the second jury can make different "findings" and is not bound by what the first jury concluded with respect to liability. Tesla's proposed use of the term "if any" is an example of how Tesla seeks to limit the binding nature of the first jury's findings. The prior jury found liability and significant harm to Mr. Diaz caused by Tesla's wrongful conduct. It would be an inconsistent verdict that found zero damages for Mr. Diaz here, yet that is clearly how Tesla is seeking to argue it.

### D.    Defendant's Position In Support Of Its Proposed Version Of Instruction

Several of Tesla's proposed edits to this instruction are non-substantive and intended for clarity—such as to refer to the parties by their names and to state the jury's task more directly. Tesla also proposes to refer to what has previously been "found" rather than "conclusively

1  determined," as a jury's verdict is generally referred to as a "finding," and the "conclusively

2  determined" formulation may be confusing to the jury and prejudicial to Tesla.

3      Tesla further added the words "if any" to track the language of the damages instructions

4  the Court gave in the first trial, and because, as discussed below in relation to the compensatory

5  and punitive damages instructions, it is accurate to instruct the jury that it is not required to

6  award any amount of compensatory or punitive damages.  Mr. Diaz is wrong to argue that the

7  first jury already found "quantifiable harm" and that the second jury is bound to apply that

8  finding.  No matter what the first jury found by way of "quantifiable harm," Mr. Diaz chose to

9  nullify such finding when he elected a new trial on damages.  It is now the sole and independent

10  obligation of the second jury to determine whether Mr. Diaz has met his burden of proving by a

11  preponderance of the evidence whether he is entitled to any amount of compensatory or punitive

12  damages.  Mr. Diaz also mistakenly conflates the first jury's implicit finding of "harm" to Mr.

13  Diaz with a finding that Mr. Diaz is entitled to any amount of damages as a result of such harm.

14  The latter question is for the second jury to determine on this damages retrial.  Mr. Diaz's

15  complaints about the timing of Tesla's proposal of this instruction are meritless.  Tesla has

16  proposed a near-identical version of this instruction for weeks, and proposed this final version

17  two days before the parties' deadline to file disputed jury instructions, three weeks before the

18  pretrial conference, and six weeks before trial is set to begin, and thus it is undoubtedly timely.

19  *See Nash v. Lewis*, 365 F. App'x 48, 51 n.2-3 (9th Cir. 2010) (party "timely objected, before the

20  jury began deliberating, to all instructions proposed but not given" and "preserved his objection

21  to the verdict form's [omission] because [the party]'s proposed verdict form included a space for

22  the jury to find" the proposed finding "before the jury rendered its verdict and was discharged").

23  Indeed, both parties have been revising their proposed jury instructions leading up to the

24  deadline to file them with the Court.  Mr. Diaz has had a full and fair opportunity to oppose this

25  instruction, and his focus on the timing of Tesla's proposal of this instruction reveals the

26  inadequacy in his substantive opposition to it.

27

28

1
2
3
4

### [DISPUTED] JURY INSTRUCTION NO. 2.

### HOSTILE WORK ENVIRONMENT BASED ON RACE

### (Instruction Nos. 26 & 27 in 1st trial; modified and combined for retrial)

5      Because it has been conclusively determined that Tesla subjected Mr. Diaz to a racially
6  hostile work environment, you are also required to accept as true the following findings:
7      1.  Mr. Diaz was subjected to slurs, insults, jokes or other verbal comments or physical
8  contact or intimidation of a racial nature;
9      2.  The conduct was unwelcome;
10     3.  The conduct was sufficiently severe or pervasive to alter the conditions of Mr. Diaz's
11 employment and to create a racially abusive or hostile work environment;
12     4.  Mr. Diaz perceived the working environment to be abusive or hostile; and
13     5.  A reasonable African American man in Mr. Diaz's circumstances would consider the
14 working environment to be abusive or hostile.
15     Unwelcome conduct is "severe or pervasive" if it altered the conditions of employment
16 and created a work environment that was hostile, intimidating, offensive, oppressive, or abusive.

17 **A.      Plaintiff's Position**

18     Plaintiff proposes this instruction to accurately inform the retrial jury what the first jury
19 actually determined in its liability findings in favor of Mr. Diaz. The special verdict form asked
20 the first jury to determine whether Tesla was liable on each claim for relief, and expressly
21 incorporated by reference the jury instructions that defined the terms and stated the required
22 elements of each of those claims for relief. Tesla's opposition to this proposed jury instruction
23 would eliminate the context of the liability finding, making it impossible for a retrial jury
24 comprised of non-attorneys to understand what the liability jury necessarily found. The context
25 of the conduct that caused Mr. Diaz's damages is important to determining the correct amount of
26 compensatory and punitive damages. Unless the retrial jury is instructed, as the first jury was
27 instructed, concerning the meaning of relevant terms and the elements that Mr. Diaz had to prove
28 to establish liability, that retrial jury will have a legally inadequate understanding of which facts

1    have been definitively established and which facts remain open to evidentiary dispute. In

2    addition, the retrial jury must also have a precise understanding of the nature of the different

3    claims because it can assess punitive damages *only* with respect to Plaintiff's federal law claims,

4    not Plaintiff's state law negligence claim, and it needs to know the basis for the federal law

5    liability findings.

6         Without the liability instructions proposed by Mr. Diaz, the retrial jury will not know

7    when Tesla's evidence and argument contradicts the first jury's binding liability determinations,

8    a gap in information that will inevitably lead to confusion and inefficiency – and could too easily

9    be exploited by Tesla.

10        Instructing the retrial jury on the elements of the claims for which liability has been

11   established is consistent with the approach taken by federal courts in California and elsewhere.

12   See, e.g., *United States v. J-M Mfg. Co., Inc.*, 2018 WL 705532, at *7 (C.D. Cal. Jan. 31, 2018)

13   ("[T]he scope of the Phase One jury's findings includes both the expressed findings of the jury,

14   as well as those implied by the expressed findings. In making this assessment, the Court may

15   look to the Verdict itself, the instructions presented to the jury, as well as the evidence proffered

16   at the trial.") (citing, inter alia, *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469,

17   1473 (9th Cir. 1993)).

18        Defendant's cited authority is not to the contrary. Its two cases merely stand for the

19   unremarkable proposition that a court need not instruct the jury on irrelevant issues. But the

20   factual findings made by the liability jury *are* relevant (and important) for the damages jury to

21   understand because they form the basis for the first jury's decision and for the award of damages

22   in the retrial.

23        Without the liability instructions, the retrial jury will not know when Tesla's evidence

24   and argument contradicts the first jury's binding liability determinations, a gap in information

25   that will inevitably lead to confusion and inefficiency and perhaps an unjust verdict. For

26   example, the prior jury necessarily determined that "Mr. Diaz perceived the working

27   environment to be abusive or hostile." Without this instruction, Tesla might try to argue that Mr.

28   Diaz did not find the work environment hostile or abusive because he recommended that his son

1   and Lamar Patterson work there. If the jury is not instructed that the first jury necessarily

2   determined, based on the instructions underlying the special verdict form, that "[a] reasonable

3   African American man in Mr. Diaz's circumstances would consider the working environment to

4   be abusive or hostile," Tesla would have an opening to argue, impermissibly, that the work

5   environment was more a "friendly" atmosphere in light of Mr. Kawasaki's testimony that at least

6   some of the people seemed to be using the word that way.

7        B.        Defendant's Position

8        The Court should not give this instruction, or the others Mr. Diaz proposes, on the

9   elements of the claims the first jury considered in determining liability.  The Court has ruled that

10   the retrial will be limited to damages only.  The jury's sole task, therefore, will be to determine

11   the amount of compensatory damages, if any, that Mr. Diaz in entitled to and whether Mr. Diaz

12   should be awarded punitive damages.  The jury will be amply instructed on how to make those

13   determinations.  The parties are informing the jury of the findings the first jury made through

14   their proposed special instruction no. 1 discussed above.  There is no need to also instruct the

15   jury on all the individual elements of the liability claims when the second jury will not be tasked

16   with deciding whether those elements are met.  The several liability instructions Mr. Diaz

17   requests to include are lengthy and complex.  Reading them to the jury will lead to confusion

18   about whether the jury is required to apply those instructions and how they are relevant to its

19   determination of damages.  These instructions will also prejudice Tesla by effectively instructing

20   the jury to make an independent determination of liability even though the Court has rejected

21   Tesla's request that the second jury actually decide liability anew.

22        Accordingly, the Court should decline to give this instruction and the other liability

23   instructions Mr. Diaz proposes because they are not necessary or relevant.  *See, e.g.*, *Madrigal v.*

24   *Allstate Ins. Co.*, 215 F. Supp. 3d 870, 918 (C.D. Cal. 2016), aff'd sub nom. *Madrigal v. Allstate*

25   *Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017) ("A court is not required to instruct the jury on

26   matters irrelevant to the resolution of the dispute."); *Helionetics, Inc. v. Paige & Assocs., Corp.*,

27   100 F.3d 962 (9th Cir. 1996) (affirming district court's refusal to give instruction because it was

28   "unnecessary").

**[DISPUTED] JURY INSTRUCTION NO. 3.**

**TESLA'S RESPONSIBILITY FOR RACIAL HARASSMENT COMMITTED BY**

**MR. DIAZ'S SUPERVISORS AND**

**NON-IMMEDIATE SUPERVISORS OR CO-WORKERS**

**(Instruction Nos. 29, 30, and 32 in 1st Trial; modified and combined for retrial)**

It has also been conclusively determined that Tesla was an employer of Mr. Diaz and was liable to him because (1) one or more of Mr. Diaz's supervisors and one or more of his non-immediate supervisors or co-workers subjected Mr. Diaz to a hostile work environment based on his race, and (2) Tesla or a member of Tesla's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

A "supervisor" is a person who exercises immediate (or successively higher) authority over the employee. Whether someone is a supervisor does not depend upon job titles or formal structures within the workplace, but upon whether the person has the authority to demand obedience from an employee. An employer is liable for racial harassment committed by its supervisors.

A person is a "member of management" if the person has substantial authority and direction to make decisions concerning the terms of the harasser's employment or the plaintiff's employment, such as authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the plaintiff's employment. A person who lacks such authority is nevertheless part of management if he or she has an official or strong duty in fact to communicate to management complaints about work conditions.

For a defendant's remedial action to be prompt, effective, and reasonably calculated to end the harassment, it must be proportionate to the seriousness of the offense and effective in stopping the harasser from continuing to engage in the conduct and in discouraging other potential harassers from engaging in similar unlawful conduct.

1    The determination that Tesla is liable for the racial harassment committed by Mr. Diaz's

2    non-immediate supervisors or co-workers means that any remedial action Tesla took was not

3    reasonable, adequate, and proportionate to the seriousness of the offense.

4    **A.      Plaintiff's Position**

5        Plaintiff proposes this instruction to accurately inform the retrial jury what the first jury

6    actually determined in its liability findings in favor of Mr. Diaz. The special verdict form asked

7    the first jury to determine whether Tesla was liable on each claim for relief, and expressly

8    incorporated by reference the jury instructions that defined the terms and stated the required

9    elements of each of those claims for relief. Tesla's opposition to this proposed jury instruction

10   would eliminate the context of the liability finding, making it impossible for a retrial jury

11   comprised of non-attorneys to understand what the liability jury necessarily found. The context

12   of the conduct that caused Mr. Diaz's damages is important to determining the correct amount of

13   compensatory and punitive damages. Unless the retrial jury is instructed, as the first jury was

14   instructed, concerning the meaning of relevant terms and the elements that Mr. Diaz had to prove

15   to establish liability, that retrial jury will have a legally inadequate understanding of which facts

16   have been definitively established and which facts remain open to evidentiary dispute.

17       Instructing the retrial jury on the elements of the claims for which liability has been

18   established is consistent with the approach taken by federal courts in California and elsewhere in

19   damages retrials. See, e.g., *United States v. J-M Mfg. Co., Inc.*, 2018 WL 705532, at *7 (C.D.

20   Cal. Jan. 31, 2018) ("[T]he scope of the Phase One jury's findings includes both the expressed

21   findings of the jury, as well as those implied by the expressed findings. In making this

22   assessment, the Court may look to the Verdict itself, the instructions presented to the jury, as

23   well as the evidence proffered at the trial.") (citing, inter alia, *Los Angeles Police Protective*

24   *League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993)).

25       Defendant's cited authority is not relevant to this case. *Madrigal* is procedurally

26   distinguished, and its general statement that only relevant instructions should be given actually

27   supports Plaintiff's position that the instruction explaining what the first jury determined on

28   liability are necessary to the remaining issues. *Helionetics*, an unpublished opinion, also is

1  inapposite because it is procedurally distinct and merely stands for the principle that instructions

2  that do not relate to evidence in the case are "unnecessary." Here, the requested instructions are

3  central to the case because they form the basis for the first jury's decision and for the award of

4  damages in the retrial.

5      Without the liability instructions, the retrial jury will not know when Tesla's evidence

6  and argument contradicts the first jury's binding liability determinations, a gap in information

7  that will inevitably lead to confusion and inefficiency and perhaps an unjust verdict. For

8  example, this instruction includes definitions of "supervisor" and "manager" to help the jury

9  understand the level of authority exercised by Tesla employees who participated in the

10  harassment or who failed to stop the harassment from occurring, and would preclude Tesla from

11  improperly arguing that certain supervisors and managers did not perform that function.

12      **B.    Defendant's Position**

13      The Court should not give this instruction, or the others Mr. Diaz proposes, on the

14  elements of the claims the first jury considered in determining liability.  The Court has ruled that

15  the retrial will be limited to damages only.  The jury's sole task, therefore, will be to determine

16  the amount of compensatory damages, if any, that Mr. Diaz in entitled to and whether Mr. Diaz

17  should be awarded punitive damages.  The jury will be amply instructed on how to make those

18  determinations.  The parties are informing the jury of the findings the first jury made through

19  their proposed special instruction no. 1 discussed above.  There is no need to also instruct the

20  jury on all the individual elements of the liability claims when the second jury will not be tasked

21  with deciding whether those elements are met.  The several liability instructions Mr. Diaz

22  requests to include are lengthy and complex.  Reading them to the jury will lead to confusion

23  about whether the jury is required to apply those instructions and how they are relevant to its

24  determination of damages.  These instructions will also prejudice Tesla by effectively instructing

25  the jury to make an independent determination of liability even though the Court has rejected

26  Tesla's request that the second jury actually decide liability anew.

27      Accordingly, the Court should decline to give this instruction and the other liability

28  instructions Mr. Diaz proposes because they are not necessary or relevant.  *See, e.g.*, *Madrigal v.*

*Allstate Ins. Co.*, 215 F. Supp. 3d 870, 918 (C.D. Cal. 2016), aff'd sub nom. *Madrigal v. Allstate Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017) ("A court is not required to instruct the jury on matters irrelevant to the resolution of the dispute."); *Helionetics, Inc. v. Paige & Assocs., Corp.*, 100 F.3d 962 (9th Cir. 1996) (affirming district court's refusal to give instruction because it was "unnecessary").

**[DISPUTED] JURY INSTRUCTION NO. 4.**

**LIABILITY FOR CIVIL RIGHTS VIOLATIONS**

**BASED ON CONTRACTUAL RELATIONSHIP**

**<u>(Instruction No. 37 in 1st trial; modified for retrial)</u>**

Plaintiff asserts a section 1981 civil rights claim against Tesla, Inc. It has been conclusively determined that Tesla was liable to Mr. Diaz for violation of his civil rights because he was an employee or joint employee of Tesla, Inc. or, alternatively, that:

(i)  Plaintiff gained rights or was a beneficiary under a contract,

(ii)  Tesla engaged in racial discrimination or harassment in the enforcement of the contract, or failed to take reasonable step(s) to prevent harassment from occurring in the workplace; and

(iii)  Plaintiff suffered injuries that he would not have suffered but for the defendant's conduct.

**A.      Plaintiff's Position**

Plaintiff proposes this instruction to adequately inform the retrial jury what the first jury actually determined in its liability findings in favor of Mr. Diaz. The jury not only found liability based on a hostile work environment, but also liability based on a violation of Mr. Diaz's rights pursuant to one or both of Mr. Diaz's contract theories. The jury is entitled to consider the basis for the first jury's liability findings when awarding compensatory and punitive damages because it is bound by those findings.

The special verdict form asked the first jury to determine whether Tesla was liable on each claim for relief, and expressly incorporated by reference the jury instructions that defined the terms and stated the required elements of each of those claims for relief. Tesla's request to exclude that critical information from this proposed jury instructions would eliminate the context for the first jury's liability finding, making it impossible for a retrial jury comprised of non-attorneys to understand what the liability jury necessarily found. Unless the retrial jury is instructed, as the first jury was instructed, concerning the meaning of relevant terms and the

1   elements that Mr. Diaz had to prove to establish liability, that retrial jury will have a legally

2   inadequate understanding of which facts have been definitively established and which facts

3   remain open to evidentiary dispute.

4           Instructing the retrial jury on the elements of the claims for which liability has been

5   established is consistent with the approach taken by federal courts in California and elsewhere in

6   damages retrials. See, e.g., *United States v. J-M Mfg. Co., Inc.*, 2018 WL 705532, at *7 (C.D.

7   Cal. Jan. 31, 2018) ("[T]he scope of the Phase One jury's findings includes both the expressed

8   findings of the jury, as well as those implied by the expressed findings. In making this

9   assessment, the Court may look to the Verdict itself, the instructions presented to the jury, as

10  well as the evidence proffered at the trial.") (citing, inter alia, *Los Angeles Police Protective*

11  *League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993)).

12          Defendant's cited authority is not relevant to this case. *Madrigal* is procedurally

13  distinguished, and its general statement that only relevant instructions should be given actually

14  supports Plaintiff's position that the instruction explaining what the first jury determined on

15  liability are necessary to the remaining issues. *Helionetics*, an unpublished opinion, also is

16  inapposite because it is procedurally distinct and merely stands for the principle that instructions

17  that do not relate to evidence in the case are "unnecessary." Here, the requested instructions are

18  central to the case because they form the basis for the first jury's decision and for the award of

19  damages in the retrial.

20          Without the liability instructions, the retrial jury will not know when Tesla's evidence

21  and argument contradicts the first jury's binding liability determinations, a gap in information

22  that will inevitably lead to confusion and inefficiency and perhaps an unjust verdict.

23          **B.      Defendant's Position**

24          The Court should not give this instruction, or the others Mr. Diaz proposes, on the

25  elements of the claims the first jury considered in determining liability.  The Court has ruled that

26  the retrial will be limited to damages only.  The jury's sole task, therefore, will be to determine

27  the amount of compensatory damages, if any, that Mr. Diaz in entitled to and whether Mr. Diaz

28  should be awarded punitive damages.  The jury will be amply instructed on how to make those

1  determinations.  The parties are informing the jury of the findings the first jury made through

2  their proposed special instruction no. 1 discussed above.  There is no need to also instruct the

3  jury on all the individual elements of the liability claims when the second jury will not be tasked

4  with deciding whether those elements are met.  The several liability instructions Mr. Diaz

5  requests to include are lengthy and complex.  Reading them to the jury will lead to confusion

6  about whether the jury is required to apply those instructions and how they are relevant to its

7  determination of damages.  These instructions will also prejudice Tesla by effectively instructing

8  the jury to make an independent determination of liability even though the Court has rejected

9  Tesla's request that the second jury actually decide liability anew.

10        Accordingly, the Court should decline to give this instruction and the other liability

11  instructions Mr. Diaz proposes because they are not necessary or relevant.  *See, e.g.*, *Madrigal v.*

12  *Allstate Ins. Co.*, 215 F. Supp. 3d 870, 918 (C.D. Cal. 2016), aff'd sub nom. *Madrigal v. Allstate*

13  *Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017) ("A court is not required to instruct the jury on

14  matters irrelevant to the resolution of the dispute."); *Helionetics, Inc. v. Paige & Assocs., Corp.*,

15  100 F.3d 962 (9th Cir. 1996) (affirming district court's refusal to give instruction because it was

16  "unnecessary").

17

18

19

20

21

22

23

24

25

26

27

28

**[DISPUTED] JURY INSTRUCTION NO. 5.**

**FAILURE TO PREVENT RACIAL HARASSMENT**

**<u>(Instruction No. 34 in 1st trial; modified for retrial)</u>**

Because it has been conclusively determined that Tesla failed to prevent one or more of Mr. Diaz's supervisors and one or more of his non-immediate supervisors or co-workers from racially harassing Mr. Diaz, you are required to accept as true the following findings.

    1.  Mr. Diaz was subjected to racial harassment in the course of his employment by Tesla;

    2.  Tesla failed to take all reasonable steps to prevent the harassment;

    3.  Mr. Diaz was harmed by the harassment; and

    4.  Tesla's failure to take all reasonable steps to prevent the harassment was a substantial factor in causing Mr. Diaz to suffer harm.

**A.      Plaintiff's Position**

Requested Instruction No. 5 specifically details the prior jury's finding of harm to Mr. Diaz, which should foreclose any argument by Defendant that he suffered nominal damages. (See below.) Plaintiff proposes this instruction to adequately inform the retrial jury what the first jury actually determined in its liability findings in favor of Mr. Diaz. The special verdict form asked the first jury to determine whether Tesla was liable on each claim for relief, and expressly incorporated by reference the jury instructions that defined the terms and stated the required elements of each of those claims for relief. Tesla's request to exclude this critical information would eliminate the context of the liability finding, making it impossible for a retrial jury comprised of non-attorneys to understand what the liability jury necessarily found. Unless the retrial jury is instructed, as the first jury was instructed, concerning the meaning of relevant terms and the elements that Mr. Diaz had to prove to establish liability, that retrial jury will have a legally inadequate understanding of which facts have been definitively established and which facts remain open to evidentiary dispute.

Instructing the retrial jury on the elements of the claims for which liability has been established is consistent with the approach taken by federal courts in California and elsewhere in

1  damages retrials. *See, e.g., United States v. J-M Mfg. Co., Inc.*, 2018 WL 705532, at *7 (C.D.

2  Cal. Jan. 31, 2018) ("[T]he scope of the Phase One jury's findings includes both the expressed

3  findings of the jury, as well as those implied by the expressed findings. In making this

4  assessment, the Court may look to the Verdict itself, the instructions presented to the jury, as

5  well as the evidence proffered at the trial.") (citing, inter alia, *Los Angeles Police Protective*

6  *League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993)).

7        Defendant's cited authority is not relevant to this case. *Madrigal* is procedurally

8  distinguished, and its general statement that only relevant instructions should be given actually

9  supports Plaintiff's position that the instruction explaining what the first jury determined on

10  liability are necessary to the remaining issues. *Helionetics*, an unpublished opinion, also is

11  inapposite because it is procedurally distinct and merely stands for the principle that instructions

12  that do not relate to evidence in the case are "unnecessary." Here, the requested instructions are

13  central to the case because they form the basis for the first jury's decision and for the award of

14  damages in the retrial.

15        Without the liability instructions, the retrial jury will not know when Tesla's evidence

16  and argument contradicts the first jury's binding liability determinations, a gap in information

17  that will inevitably lead to confusion and inefficiency and perhaps an unjust verdict.

18        With respect to the failure-to-prevent cause of action, it is imperative that the new jury

19  understand that there has been a binding determination that Tesla failed to prevent the

20  harassment of Mr. Diaz and that Mr. Diaz was *harmed* by the harassment (element 4) and by

21  Tesla's failure to prevent that harassment (element 5). If there is no instruction on this to the new

22  jury, the retrial jury could be asked to speculate about causation, which is no longer at issue

23  given the first jury's findings. Contrary to Tesla's position, this instruction is necessary to

24  prevent speculation by the jury as to whether harm has been found or not and so the new jury

25  does not speculate about liability.

26        **B.    Defendant's Position**

27        The Court should not give this instruction, or the others Mr. Diaz proposes, on the

28  elements of the claims the first jury considered in determining liability. The Court has ruled that

the retrial will be limited to damages only.  The jury's sole task, therefore, will be to determine the amount of compensatory damages, if any, that Mr. Diaz in entitled to and whether Mr. Diaz should be awarded punitive damages.  The jury will be amply instructed on how to make those determinations.  The parties are informing the jury of the findings the first jury made through their proposed special instruction no. 1 discussed above.  There is no need to also instruct the jury on all the individual elements of the liability claims when the second jury will not be tasked with deciding whether those elements are met.  The several liability instructions Mr. Diaz requests to include are lengthy and complex.  Reading them to the jury will lead to confusion about whether the jury is required to apply those instructions and how they are relevant to its determination of damages.  These instructions will also prejudice Tesla by effectively instructing the jury to make an independent determination of liability even though the Court has rejected Tesla's request that the second jury actually decide liability anew.

Accordingly, the Court should decline to give this instruction and the other liability instructions Mr. Diaz proposes because they are not necessary or relevant.  *See, e.g.*, *Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 918 (C.D. Cal. 2016), aff'd sub nom. *Madrigal v. Allstate Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017) ("A court is not required to instruct the jury on matters irrelevant to the resolution of the dispute."); *Helionetics, Inc. v. Paige & Assocs., Corp.*, 100 F.3d 962 (9th Cir. 1996) (affirming district court's refusal to give instruction because it was "unnecessary").

**[DISPUTED] JURY INSTRUCTION NO. 6.**

**NEGLIGENT SUPERVISION OR CONTINUED EMPLOYMENT**

**<u>(Instruction No. 35 in 1st trial; modified for retrial)</u>**

Because it has been conclusively determined that Owen Diaz was harmed by Ramon Martinez and that Tesla is responsible for that harm because Tesla negligently supervised or continued to employ Ramon Martinez, you are required to accept as true the following findings:

   1.  Tesla employed Ramon Martinez during the time that Mr. Diaz worked at Tesla;

   2.  Ramon Martinez was or became unfit or incompetent to perform the work for which he was employed;

   3.  Tesla knew or should have known that Ramon Martinez was or became unfit or incompetent and that this unfitness or incompetence created a particular risk to others;

   4.  After Tesla knew or should have known of Ramon Martinez's unfitness or incompetence, it retained or supervised Ramon Martinez in his position at Tesla's factory;

   5.  Ramon Martinez's unfitness or incompetence harmed Mr. Diaz; and

   6.  Tesla's negligence in supervising or retaining Ramon Martinez was a substantial factor in causing Mr. Diaz's harm.

**A.     Plaintiff's Position**

Requested Instruction No. 6 makes clear that there has already been a binding determination that Tesla's wrongful conduct caused actionable harm to Mr. Diaz, and is essential to foreclose Tesla's apparent intent to argue that Mr. Diaz did not suffer any harm and is therefore entitle to nominal damages only (See below.) Plaintiff proposes this instruction to adequately inform the retrial jury what the first jury actually determined in its liability findings in favor of Mr. Diaz. The special verdict form asked the first jury to determine whether Tesla was liable on each claim for relief, and expressly incorporated by reference the jury instructions that defined the terms and stated the required elements of each of those claims for relief. Tesla's request not to include this proposed jury instructions would eliminate the context of the liability finding, making it impossible for a retrial jury comprised of non-attorneys to understand what the

1    liability jury necessarily found. Unless the retrial jury is instructed, as the first jury was

2    instructed, concerning the meaning of relevant terms and the elements that Mr. Diaz had to prove

3    to establish liability, that retrial jury will have a legally inadequate understanding of which facts

4    have been definitively established and which facts remain open to evidentiary dispute.

5            Instructing the retrial jury on the elements of the claims for which liability has been

6    established is consistent with the approach taken by federal courts in California and elsewhere in

7    damages retrials. See, e.g., United States v. J-M Mfg. Co., Inc., 2018 WL 705532, at *7 (C.D.

8    Cal. Jan. 31, 2018) ("[T]he scope of the Phase One jury's findings includes both the expressed

9    findings of the jury, as well as those implied by the expressed findings. In making this

10   assessment, the Court may look to the Verdict itself, the instructions presented to the jury, as

11   well as the evidence proffered at the trial.") (citing, inter alia, Los Angeles Police Protective

12   League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993)).

13           Defendant's cited authority is not relevant to this case. *Madrigal* is procedurally

14   distinguishable, and its general statement that only relevant instructions should be given actually

15   supports Mr. Diaz's position that the instruction explaining what the first jury determined on

16   liability are necessary to the remaining issues. *Helionetics*, an unpublished opinion, is inapposite

17   because it is procedurally distinct and merely stands for the principle that instructions that do not

18   relate to evidence in the case are "unnecessary." Here, the requested instructions are central to

19   the case because they form the basis for the first jury's decision and for the award of damages in

20   the retrial.

21           Without the liability instructions, the retrial jury will not know when Tesla's evidence

22   and argument contradicts the first jury's binding liability determinations, a gap in information

23   that will inevitably lead to confusion and inefficiency and perhaps an unjust verdict.

24       **B.    Defendant's Position**

25           The Court should not give this instruction, or the others Mr. Diaz proposes, on the

26   elements of the claims the first jury considered in determining liability.  The Court has ruled that

27   the retrial will be limited to damages only.  The jury's sole task, therefore, will be to determine

28   the amount of compensatory damages, if any, that Mr. Diaz in entitled to and whether Mr. Diaz

should be awarded punitive damages.  The jury will be amply instructed on how to make those determinations.  The parties are informing the jury of the findings the first jury made through their proposed special instruction no. 1 discussed above.  There is no need to also instruct the jury on all the individual elements of the liability claims when the second jury will not be tasked with deciding whether those elements are met.  The several liability instructions Mr. Diaz requests to include are lengthy and complex.  Reading them to the jury will lead to confusion about whether the jury is required to apply those instructions and how they are relevant to its determination of damages.  These instructions will also prejudice Tesla by effectively instructing the jury to make an independent determination of liability even though the Court has rejected Tesla's request that the second jury actually decide liability anew.

Accordingly, the Court should decline to give this instruction and the other liability instructions Mr. Diaz proposes because they are not necessary or relevant.  *See, e.g.*, *Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 918 (C.D. Cal. 2016), aff'd sub nom. *Madrigal v. Allstate Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017) ("A court is not required to instruct the jury on matters irrelevant to the resolution of the dispute."); *Helionetics, Inc. v. Paige & Assocs., Corp.*, 100 F.3d 962 (9th Cir. 1996) (affirming district court's refusal to give instruction because it was "unnecessary").

**[DISPUTED] JURY INSTRUCTION NO. 7.**

**EMPLOYER'S DUTY TO INVESTIGATE AND TAKE REMEDIAL ACTION**

**(Instruction No. 33 in 1st trial)**

Employers must take all reasonable steps necessary to prevent harassment from occurring. When an employer becomes aware of potentially harassing conduct, it has a duty to promptly investigate and to take immediate and effective corrective action should it determine that harassment has occurred. Remedial measures need to include immediate corrective action that is reasonably calculated to 1) end the current harassment and 2) to deter future harassment. The remedial actions must be designed, in part, to deter future harassment by the same offender or others.

Some of the steps employers can take to prevent harassment from occurring include such things as affirmatively raising the subject, expressing strong disapproval, conducting a timely, thorough, good faith investigation of allegations of harassment of which the Defendant knew or had reason to know, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under federal law, and developing methods to sensitize all concerned.

**A.    Plaintiff's Position**

This instruction in particular is important because it enables the retrial jury to assess Tesla's punitive damages liability in the context of the failure to prevent cause of action. Tesla's liability for that claim for relief needs context as to what measures a reasonable employer are supposed to take, and Tesla's decision not to take those measures is reprehensible. Plaintiff proposes this instruction to adequately inform the retrial jury what the first jury actually determined in its liability findings in favor of Mr. Diaz. The jury not only found liability based on a hostile work environment, but also liability based on a violation of Mr. Diaz's rights pursuant to Mr. Diaz's contract theory. The jury is entitled to consider that when awarding compensatory and punitive damages. The special verdict form asked the first jury to determine whether Tesla was liable on each claim for relief, and expressly incorporated by reference the

1   jury instructions that defined the terms and stated the required elements of each of those claims

2   for relief. Tesla's request not to include this proposed jury instructions would eliminate the

3   context of the liability finding, making it impossible for a retrial jury comprised of non-attorneys

4   to understand what the liability jury necessarily found. Unless the retrial jury is instructed, as the

5   first jury was instructed, concerning the meaning of relevant terms and the elements that Mr.

6   Diaz had to prove to establish liability, that retrial jury will have a legally inadequate

7   understanding of which facts have been definitively established and which facts remain open to

8   evidentiary dispute.

9       Instructing the retrial jury on the elements of the claims for which liability has been

10  established is consistent with the approach taken by federal courts in California and elsewhere in

11  damages retrials. See, e.g., *United States v. J-M Mfg. Co., Inc.*, 2018 WL 705532, at *7 (C.D.

12  Cal. Jan. 31, 2018) ("[T]he scope of the Phase One jury's findings includes both the expressed

13  findings of the jury, as well as those implied by the expressed findings. In making this

14  assessment, the Court may look to the Verdict itself, the instructions presented to the jury, as

15  well as the evidence proffered at the trial.") (citing, inter alia, *Los Angeles Police Protective

16  League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993)).

17      Defendant's cited authority is not relevant to this case. *Madrigal* is procedurally

18  distinguished, and its general statement that only relevant instructions should be given actually

19  supports Plaintiff's position that the instruction explaining what the first jury determined on

20  liability are necessary to the remaining issues. *Helionetics*, an unpublished opinion, also is

21  inapposite because it is procedurally distinct and merely stands for the principle that instructions

22  that do not relate to evidence in the case are "unnecessary." Here, the requested instructions are

23  central to the case because they form the basis for the first jury's decision and for the award of

24  damages in the retrial.

25      Without the liability instructions, the retrial jury will not know when Tesla's evidence

26  and argument contradicts the first jury's binding liability determinations, a gap in information

27  that will inevitably lead to confusion and inefficiency and perhaps an unjust verdict.

28  **B.    Defendant's Position**

1   The Court should not give this instruction, or the others Mr. Diaz proposes, on the

2   elements of the claims the first jury considered in determining liability.  The Court has ruled that

3   the retrial will be limited to damages only.  The jury's sole task, therefore, will be to determine

4   the amount of compensatory damages, if any, that Mr. Diaz in entitled to and whether Mr. Diaz

5   should be awarded punitive damages.  The jury will be amply instructed on how to make those

6   determinations.  The parties are informing the jury of the findings the first jury made through

7   their proposed special instruction no. 1 discussed above.  There is no need to also instruct the

8   jury on all the individual elements of the liability claims when the second jury will not be tasked

9   with deciding whether those elements are met.  The several liability instructions Mr. Diaz

10  requests to include are lengthy and complex.  Reading them to the jury will lead to confusion

11  about whether the jury is required to apply those instructions and how they are relevant to its

12  determination of damages.  These instructions will also prejudice Tesla by effectively instructing

13  the jury to make an independent determination of liability even though the Court has rejected

14  Tesla's request that the second jury actually decide liability anew.

15          Accordingly, the Court should decline to give this instruction and the other liability

16  instructions Mr. Diaz proposes because they are not necessary or relevant.  *See, e.g.*, *Madrigal v.*

17  *Allstate Ins. Co.*, 215 F. Supp. 3d 870, 918 (C.D. Cal. 2016), aff'd sub nom. *Madrigal v. Allstate*

18  *Indem. Co.*, 697 F. App'x 905 (9th Cir. 2017) ("A court is not required to instruct the jury on

19  matters irrelevant to the resolution of the dispute."); *Helionetics, Inc. v. Paige & Assocs., Corp.*,

20  100 F.3d 962 (9th Cir. 1996) (affirming district court's refusal to give instruction because it was

21  "unnecessary").

22

23

24

25

26

27

28

**[DISPUTED] JURY INSTRUCTION NO 8.**

**DAMAGES—PROOF**

**<u>(Instruction No. 38 in 1st trial; modified for retrial)</u>**

**A.     Plaintiff's Proposed Version Of Instruction**

It has also been conclusively determined that Tesla's violations of plaintiff Owen Diaz's rights caused Mr. Diaz to suffer past and future harm. Your role is to determine the amount of money that will reasonably and fairly compensate Mr. Diaz for that past and future harm.

The plaintiff, Owen Diaz, has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for the harm caused by the defendant.

In determining the measure of damages, you should consider the following:

The nature and extent of the harm;

The loss of enjoyment of life Mr. Diaz experienced and that with reasonable probability he will experience in the future;

The mental or emotional pain and suffering Mr. Diaz experienced and that with reasonable he will experience in the future;

It is for you to determine what damages have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**B.     Defendant's Proposed Version Of Instruction**

~~It has further been conclusively determined that Tesla's violations of plaintiff Owen Diaz's rights caused Mr. Diaz to suffer past and future harm. Your role is to determine the amount of money that will reasonably and fairly compensate Mr. Diaz for that past and future harm.~~

~~The plaintiff, Owen~~ <u>Mr.</u> Diaz, has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate ~~the plaintiff~~ <u>Mr. Diaz</u> for the harm caused by ~~the defendant~~<u>Tesla</u>.

In determining the measure of damages, you should consider the following:

1.  The nature and extent of the ~~harm~~ injuries actually suffered by Mr. Diaz;

2.  The loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

3.  The mental or emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

It is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

### C.   Plaintiff's Position In Support Of His Proposed Version Of Instruction

Nominal damages are simply not available in this retrial contrary to what Tesla contends. "The Supreme Court has held that entitlement to compensatory damages in a civil rights action is not a matter of discretion: 'Compensatory damages ... are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss.' *Smith v. Wade*, 461 U.S. 30, 52, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (emphasis added)." *Hazle v. Crofoot*, 727 F.3d 983, 992 (9th Cir. 2013). In *Hazle*, the district court ruled that a violation of the plaintiff's civil rights occurred, but the jury awarded zero damages and the plaintiff sought a new trial. The Ninth Circuit held that "[g]iven this undisputed finding that Hazle's constitutional rights were violated, and applying the rule that the award of compensatory damages is mandatory when the existence of actual injury is beyond dispute, we hold that the district judge erred in refusing to hold that Hazle was, as a matter of law, entitled to compensatory damages." *Id*. at pp.991-992.

The first jury determined with respect to failure to prevent harassment claim that Tesla's failure to prevent harassment "was a substantial factor in causing Mr. Diaz's harm" (Instruction No. 34) and that Tesla's negligent retention of Mr. Martinez "was a substantial factor in causing Owen Diaz's harm" (Instruction 35). These factual determinations by the first jury, as to both the federal and the state claims for relief, preclude the retrial jury from finding that Mr. Diaz suffered no harm and is thus only entitled to nominal damages. Therefore, the "if any" language is inappropriate on retrial.

### D.   Defendant's Position In Support Of Its Proposed Version Of Instruction

Tesla proposes to revise Mr. Diaz's proposed version of this instruction so that it more closely tracks the damages instruction given in the first trial (Dkt. 280 at 39).  Tesla also proposes to clarify that the "injuries" the jury must consider in determining damages are injuries that Mr. Diaz actually suffered (as opposed to injuries or harm to third parties).

Mr. Diaz also omitted the words "if any" from the instruction as given before, without any basis for doing so.  Like the first jury, the second jury is entitled to award no compensatory damages to Mr. Diaz, or nominal compensatory damages.  Nothing about the first jury's finding of Tesla's liability for creating a hostile work environment that will apply on the retrial requires the second jury to award any amount of compensatory damages.  Rather, Mr. Diaz still needs to prove such damages by a preponderance of the evidence.  *See, e.g*., Ninth Circuit Model Civil Jury Instruction 5.1 (recognizing preponderance of the evidence standard for proving damages); *Vazquez v. Caesar's Paradise Stream Resort*, 2013 WL 6244568, at *7-8 (M.D. Pa. Dec. 3, 2013) ("[Plaintiff] had the burden of proving these damages by a preponderance of the evidence … to recover compensatory damages under § 1981"); *Irish v. Jewel Food Stores, Inc*., 2012 WL 619555, at *7-9 (N.D. Ill. Feb. 23, 2012) ("Plaintiff … must prove his damages by a preponderance of the evidence" for § 1981 hostile work environment claim).

Thus, notwithstanding the first jury's finding of liability, the second jury remains entitled to award Mr. Diaz nominal damages if Mr. Diaz fails to prove his compensatory damages by a preponderance of the evidence.  *See, e.g*., *Guy v. City of San Diego*, 608 F.3d 582, 588 (9th Cir. 2010) (affirming denial of new trial on damages where jury awarded nominal damages despite finding that defendant used excessive force and that plaintiff was injured, because jury was free to find that injury resulted from other than the defendant's excessive use of force); *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co*., 405 F.3d 764, 772 (9th Cir. 2005) ("An award of nominal damages does not mean that there were not actual economic damages, just that the exact amount of damages attributable to the improper conduct was not proven.  The court instructed the jury to award nominal damages if it found that ARCO had harmed Flying B in violation of § 1981, but that Flying B failed to prove damages as defined in these instructions.  And that is exactly what the jury did."); *Brocade Communications Systems, Inc. v. A10 Networks, Inc*., 2013 WL 831528, at *23 (N.D. Cal. Jan 10, 2013) ("Although small in amount, a nominal damages

1  award still reflects the jury's finding that all of the elements of the claim have been met to

2  establish liability.").  Accordingly, it is appropriate to instruct the jury that it may find Mr. Diaz

3  is not entitled to "any" amount of compensatory damages.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[DISPUTED] JURY INSTRUCTION NO 9.**

**NOMINAL DAMAGES**

**(Instruction No. 41 in 1st trial)**

The law that applies to this case authorizes an award of nominal damages.  If you find that Mr. Diaz has failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

**A.      Plaintiff's Position**

Nominal damages are simply not available in this retrial contrary to what Defendant contends. "The Supreme Court has held that entitlement to compensatory damages in a civil rights action is not a matter of discretion: 'Compensatory damages ... are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss.' *Smith v. Wade*, 461 U.S. 30, 52, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (emphasis added)." *Hazle v. Crofoot,* 727 F.3d 983, 992 (9th Cir. 2013). In *Hazle*, the district court ruled that a violation of the plaintiff's civil rights occurred, but the jury awarded zero damages and the plaintiff sought a new trial. The Ninth Circuit held that "[g]iven this undisputed finding that Hazle's constitutional rights were violated, and applying the rule that the award of compensatory damages is mandatory when the existence of actual injury is beyond dispute, we hold that the district judge erred in refusing to hold that Hazle was, as a matter of law, entitled to compensatory damages." *Id*. at pp.991-992.

There is no evidence upon which the second jury could find that Owen Diaz suffered no harm as the result of Tesla's wrongful conduct, and the first jury has definitively found that Tesla's wrongful conduct caused resulting hard, Nominal damages are only appropriate in cases where a defendant engages in wrongful conduct that causes no quantifiable harm. In the first trial, the testimony was overwhelming that the challenged conduct (for example, the racist drawing from January 2016) caused Mr. Diaz to suffer emotional distress, and the Court's Post-Trial Orders confirmed that substantial evidence supported the fact of injury, although the Court proposed a remittitur to $1.5 million for those emotional distress damages.

1       The first jury determined with respect to failure to prevent harassment claim that Tesla's

2  failure to prevent harassment "was a substantial factor in causing Mr. Diaz's harm" (Instruction

3  No. 34) and that Tesla's negligent retention of Mr. Martinez "was a substantial factor in causing

4  Owen Diaz's harm" (Instruction 35). These factual determinations by the first jury prevent and

5  award of nominal damages. Therefore, this nominal damages language is inappropriate on retrial.

6      **B.**    **Defendant's Position**

7       The Court gave this instruction in the first trial and should do so again.  Simply because

8  the first jury has already found liability does not mean that the second jury may not award

9  nominal damages if it determines that Mr. Diaz has not proven any amount of compensatory

10  damages by a preponderance of the evidence.  *See, e.g.*, *Guy v. City of San Diego*, 608 F.3d 582,

11  588 (9th Cir. 2010) (affirming denial of new trial on damages where jury awarded nominal

12  damages despite finding that defendant used excessive force and that plaintiff was injured,

13  because jury was free to find that injury resulted from other than the defendant's excessive use of

14  force); *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 772 (9th Cir. 2005)

15  ("An award of nominal damages does not mean that there were not actual economic damages,

16  just that the exact amount of damages attributable to the improper conduct was not proven.  The

17  court instructed the jury to award nominal damages if it found that ARCO had harmed Flying B

18  in violation of § 1981, but that Flying B failed to prove damages as defined in these instructions.

19  And that is exactly what the jury did."); *Brocade Communications Systems, Inc. v. A10*

20  *Networks, Inc.*, 2013 WL 831528, at *23 (N.D. Cal. Jan 10, 2013) ("Although small in amount, a

21  nominal damages award still reflects the jury's finding that all of the elements of the claim have

22  been met to establish liability."); *see also, e.g.*, Ninth Circuit Model Civil Jury Instruction 5.1

23  (recognizing preponderance of the evidence standard for proving damages); *Vazquez v. Caesar's*

24  *Paradise Stream Resort*, 2013 WL 6244568, at *7-8 (M.D. Pa. Dec. 3, 2013) ("[Plaintiff] had the

25  burden of proving these damages by a preponderance of the evidence . . . … to recover

26  compensatory damages under § 1981"); *Irish v. Jewel Food Stores, Inc.*, 2012 WL 619555, at

27  *7-9 (N.D. Ill. Feb. 23, 2012) ("Plaintiff . . . must prove his damages by a preponderance of the

28  evidence" for § 1981 hostile work environment claim).

1    Indeed, in all cases, a jury must determine liability before assessing whether to award

2    damages and in what amount.  The situation is no different here simply because the liability

3    finding was made in a prior trial.  Mr. Diaz should not be permitted to cherry pick certain

4    damages instructions he believes are unfavorable for him and ask that they be excluded from the

5    retrial.

6    Nor is it relevant that the Court determined that substantial evidence supported the first

7    jury's finding that there was a basis to award some amount of compensatory damages.  The

8    Court made that ruling in the context of Tesla's Motion for Judgment as a Matter of Law, New

9    Trial and/or Remittitur Pursuant to Federal Rules of Civil Procedure 50 and 59 (Dkt. 317).  If

10   Mr. Diaz wanted to benefit from that ruling, then he should have accepted the Court's remittitur

11   of the compensatory damages to the amount the Court determined was the maximum sustainable

12   by the proof.  But Mr. Diaz rejected the remittitur and elected a new trial on damages.  In so

13   doing, he chose to restart the damages inquiry.  The second jury is therefore not bound by any

14   prior jury finding regarding any amount of compensatory damages.

15   For these reasons, it is erroneous for Mr. Diaz to seek to exclude this instruction.  *See*

16   *Merrick v. Paul Revere Life Ins. Co*., 500 F.3d 1007, 1017 (9th Cir. 2007) ("Where a proposed

17   instruction is supported by law and not adequately covered by other instructions, the court should

18   give a non-misleading instruction that captures the substance of the proposed instruction."

19   (emphasis omitted)); *United States v. Unruh*, 855 F.2d 1363, 1372 (9th Cir. 1987) ("[T]he failure

20   to give a requested instruction is reversible error if the defendant's theory of the case is

21   supported by law and has some foundation in the evidence.").

22

23

24

25

26

27

28

**[DISPUTED] JURY INSTRUCTION NO 10.**

**DAMAGES—MITIGATION**

**(Instruction No. 39 in 1st Trial)**

Mr. Diaz has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

Tesla has the burden of proving by a preponderance of the evidence:

> 1. that Mr. Diaz failed to use reasonable efforts to mitigate damages; and

> 2. the amount by which damages could have been mitigated.

**A.      Plaintiff's Position**

Plaintiff objects to this instruction. There was absolutely no evidence presented in the first trial that Mr. Diaz somehow failed to mitigate his emotional distress damages. Nor, given the limitations on the permissible scope of retrial, will there be any such evidence on retrial. Because the scope of evidence in the second trial cannot exceed that of the first, there is no evidentiary basis for a mitigation instruction. This is just a naked attempt by Tesla's new counsel to argue the case differently from their predecessors – but the arguments of counsel need to be tethered to the evidence,

**B.      Defendant's Position**

The Court gave this instruction in the first trial and should do so again.  Simply because the first jury has already found liability does not mean that the second jury may no longer find that Mr. Diaz failed to mitigate his damages, such as by failing to promptly and adequately make his complaints, by continuing to work for Tesla (and encourage others to work there) notwithstanding the racial discrimination he allegedly suffered, or by failing to seek prompt or sufficient medical support for his alleged emotional distress.  There is no reason why Mr. Diaz's duty to mitigate would apply in the first trial to the jury's determination of damages but not in the second trial.

Mr. Diaz is wrong to rely on the supposed evidence in the first trial as a basis to resist this instruction on a damages issue in the second trial.  Even assuming there was no evidence to

1    support a "failure to mitigate" defense in the first trial—which Tesla disputes—Mr. Diaz elected

2    to restart the damages inquiry by rejecting the Court's remittitur.  Mr. Diaz has therefore

3    reassumed his burden to prove recoverable damages, and Tesla is entitled to reassert its defenses

4    to his damages claim.  Mr. Diaz should not be permitted to cherry pick certain damages

5    instructions he believes are unfavorable for him and ask that they be excluded from the retrial.

6         For these reasons, it is erroneous for Mr. Diaz to seek to exclude this instruction.  *See*

7    *Merrick v. Paul Revere Life Ins. Co*., 500 F.3d 1007, 1017 (9th Cir. 2007) ("Where a proposed

8    instruction is supported by law and not adequately covered by other instructions, the court should

9    give a non-misleading instruction that captures the substance of the proposed instruction."

10   (emphasis omitted)); *United States v. Unruh*, 855 F.2d 1363, 1372 (9th Cir. 1987) ("[T]he failure

11   to give a requested instruction is reversible error if the defendant's theory of the case is

12   supported by law and has some foundation in the evidence.").

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[DISPUTED] JURY INSTRUCTION NO 11.**

**PUNITIVE DAMAGES**

**(Instruction No. 40 in 1st trial; modified for retrial)**

**A.      Plaintiff's Proposed Version Of Instruction**

It has also been conclusively determined that Tesla's conduct in subjecting Mr. Diaz to a racially hostile work environment and/or failing to take all reasonable steps necessary to prevent Mr. Diaz from being subject to racial harassment was malicious, oppressive, or in reckless disregard of Mr. Diaz's rights, and not merely negligent.

Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

Your role is to award the appropriate amount of punitive damages necessary to punish Tesla and to deter similar acts in the future. Punitive damages should be awarded based on the following conduct: creating a hostile work environment based on race, violating civil rights in a contractual relationship, and/or failing to prevent harassment based on race in the workplace.

The plaintiff has the burden of proving by a preponderance of the evidence the amount of punitive damages that should be awarded.

You must use reason in setting the amount of punitive damages. Punitive damages should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial

1   risk of harm to people who are not parties to this case. You may not, however, set the amount of

2   any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff

3   in this case. The proper purpose of punitive damages is not to compensate the plaintiff, but to

4   punish the defendant and to deter the defendant from such conduct in the future.

5       **B.    Defendant's Proposed Version Of Instruction**

6       Tesla proposes the following revisions to the punitive damages instruction as given at the

7   first trial (changes from that instruction are tracked in redline below):

8

9       ~~If you find for the plaintiff,~~ You may, but are not required to, award punitive damages.

10  The purposes of punitive damages are to punish a defendant and to deter similar acts in the

11  future. Punitive damages may not be awarded to compensate a plaintiff.

12      ~~The plaintiff~~ Mr. Diaz has the burden of proving by a preponderance of the evidence that

13  punitive damages should be awarded based on his hostile work environment claim or failure to

14  prevent harassment claim and, if so, the amount of any such damages.

15      You may award punitive damages only if you find that ~~defendant's~~ Tesla's conduct that

16  harmed ~~the plaintiff~~ Mr. Diaz was malicious, oppressive or in reckless disregard of ~~the plaintiff~~

17  Mr. Diaz' rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the

18  purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under

19  the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the

20  defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights

21  under federal law. An act or omission is oppressive if the defendant injures or damages or

22  otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by

23  misusing or abusing authority or power or by taking advantage of some weakness or disability or

24  misfortune of the plaintiff. It is not sufficient that you find ~~defendant's~~ Tesla's conduct to be

25  only negligent.

26      If you find that punitive damages are appropriate, you must use reason in setting the

27  amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but

28  should not reflect bias, prejudice or sympathy toward any party. In considering the amount of

1   any punitive damages, consider the degree of reprehensibility of ~~defendant's~~ Tesla's conduct~~,~~

2   ~~including whether the conduct that harmed the plaintiff was particularly reprehensible because it~~

3   ~~also caused actual harm or posed a substantial risk of harm to people who are not parties to this~~

4   ~~case~~. You may not, however, set the amount of any punitive damages in order to punish

5   ~~defendant's~~ Tesla  for harm to anyone other than the plaintiff in this case.

6         Punitive damages may be awarded even if you award ~~the plaintiff~~ Mr. Diaz only nominal,

7   and not compensatory, damages.

8        **C.**      **Plaintiff's Position In Support Of His Version Of Instruction**

9        **A.**  <u>**Introduction**</u>

10         By asking this Court to reopen the issue of its liability for punitive damages, Tesla is

11   once again improperly seeking reconsideration of a prior Court order that the parties *and* the

12   Court have consistently relied upon for nearly ten months. Fundamental considerations of

13   fairness require the Court to reject Tesla's last-minute stratagem.

14         From shortly after the Court's issuance of its April 22, 2022 Order on Post-Trial Motions,

15   through the litigation over *Gasoline Products* and the past several months of pre-trial document

16   exchanges and meet and confer sessions, the parties have been in full agreement that the

17   upcoming damages-only retrial would be limited to determining the *amount* of compensatory and

18   punitive damages that Tesla must pay Owen Diaz, not whether Tesla was *liable* to pay

19   compensatory or punitive damages.

20         On February 6, 2023, despite having repeatedly confirmed that understanding of the

21   Court's prior rulings (including in its draft jury instructions and statement of the case that Tesla

22   lodged with the Court, Dkt. 374, 374-1, and 374-2), Tesla completely flipped its position,

23   asserting for the first time that the prior jury's finding that Tesla was liable for punitive damages

24   should have no binding effect on the damages-only retrial. In an email sent to Mr. Diaz's

25   counsel, Tesla thus wrote: "[U]pon further review of the Court's order on Tesla's motion for a

26   new trial on liability and damages and the language of your proposed instructions, we have made

27   revisions to proposed disputed instruction nos. 1 and 11 to reflect that the jury on the retrial will

28   make an independent determination about whether the conduct at issue was 'malicious,

oppressive or in reckless disregard of the plaintiff's rights.' (Dkt. 365 at 13.)  We also have

revised our joint statement of the case accordingly, and added to our proposed verdict form the question on this issue that was read to the first jury."

Tesla's reversal of position seeks to change everything, including the jury instructions, statement of the case, verdict form, and motions *in limine* – all of which were predicated on the parties' *joint* understanding and agreement that the damages jury would be bound by the first jury's findings that Tesla acted with malice, oppression, or in reckless disregard of Mr. Diaz's Section 1981 rights. Tesla's newly revised pretrial documents proceed from the mistaken assumption that the damages jury should be asked to decide *whether* Mr. Diaz is entitled to punitive damages before even considering the appropriate *amount* of those punitive damages. Yet Tesla has once again failed to comply with the Court's required procedures, as it not only failed to seek reconsideration of the Court's prior ruling but it has still not presented any legal authority justifying its procedurally improper, untimely, and prejudicial attempt to circumvent the Court's orders rejecting its previous motion for a new trial on liability.

**B. <u>Argument</u>**

1. <u>The Court's Post-Trial Orders Repeatedly and Consistently State that the Retrial is About Only the *Amount* of Compensatory and Punitive Damages, Not *Liability* for Such Damages</u>.

On December 7, 2022, when the Court informed the parties that it was denying Tesla's second motion for a new trial on liability, the Court stated it was "really troubled" by Tesla's "concealed heads, I win/tails, Plaintiff loses" strategy in resting its motion on a theory it did not raise in its prior new trial motion. The Court informed Tesla that its renewed motion was foreclosed by judicial estoppel and is "merely a disguised attempt" to have the Court reconsider that prior motion for a new trial on liability, which the Court had denied. (12/7/22 Transcript at 4.)

Despite this strong admonition, Tesla is once again backpedaling from a prior position after leading Mr. Diaz and the Court astray for months. What Tesla characterizes as its "further review" of the Court's December 12, 2022 order denying its motion for retrial on liability is just another disguised effort to overturn the parties' settled understanding based on the Court's prior ruling – and this time, the prejudice to Mr. Diaz and the Court is even greater, given Tesla's prior

1    express acquiescence in the Court's order and the last-minute timing of Tesla's change of

2    position, which would completely change the nature of the upcoming retrial.

            a.    April 22, 2022 Order on Post-Trial Motions (Dkt. No. 328)

3

4          Tesla first sought to challenge the jury's liability findings in November 2021 when it

5    moved for judgment as a matter of law and for a new trial. The Court *rejected* Tesla's arguments,

6    holding that "the weight of the evidence amply supports the jury's liability findings." (Dkt. 328,

7    2:7.) Summarizing the evidence, the Court noted the heinousness of Tesla's conduct: "The

8    evidence was disturbing. The jury heard that the Tesla factory was saturated with racism. Diaz

9    faced frequent racial abuse, including the N-work and other slurs. Other employees harassed

10   him. His supervisors, and Tesla's broader management structure did little or nothing to respond.

11   And supervisors even joined in the abuse, one going so far as to threaten Diaz and draw a racist

12   cartoon near his workstation."  (Dkt. 328 at 1:19-23.) However, the Court granted Tesla's

13   alternative motion for a remittitur (in part) – which was limited to a request for a *reduction* in the

14   amount of compensatory and punitive damages. (Dkt. 328 at 2:9-17.)[1]

15         The Court clearly stated in its order that "to the extent that Tesla's argument is that *no*

16   punitive damages are warranted as a matter of law, I reject it…the jury had a legally sufficient

17   basis to make *an* award of punitive damages." (Dkt. 328 at 37:17-19.) That ruling has governed

     all subsequent proceedings in this case for the past nine months.

18

19         Nothing in the reasoning of the Court's order provides any basis for reopening the first

20   jury's finding that Tesla was liable for punitive damages. The Court analyzed only whether the

21   punitive damages award was "unconstitutionally large," applying the "guideposts" set forth in

22   *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). The Court found that

23   "Tesla's conduct falls high on the spectrum" of reprehensibility and that "the jury had sufficient

24   grounds to find that Tesla's actions showed 'an indifference to or a reckless disregard' for Diaz's

25   (and others') right to be safe and free from discrimination in the workplace." (Dkt. 328 at 38:18;

26   39:3-5.) The Court found "Tesla's indifference to Diaz's complaints . . . striking" noting that

27         [1] The Court conditionally denied the motion for a new trial based on Plaintiff accepting the
     Court's remittitur, stating that if Plaintiff rejects the remittitur, the Court *would grant a new trial
28   on damages.* (Dkt. 328, 43:13-19.)

"attempting to pawn off responsibility for a safe and discrimination-free workplace would seem to be precisely the sort of extraordinary behavior punitive damages are built for." (Dkt. 328 at 38:5; 40:11-12.) The Court also held the evidence "supports a finding that Tesla intentionally built an employment structure that allowed it to take advantage of Diaz's (and others') labor for its benefit while attempting to avoid any of the obligations and responsibilities that employers owe employees." (Dkt. 328 at 40:4-7.)

The Court concluded its analysis by stating that "[d]espite Tesla's attempts to characterize it any other way, its treatment of Diaz – and the treatment of its supervisors and employees (or contractors) – falls high on the reprehensibility scale, requiring a high ratio." (Dkt. 328 at 42: 14-17.) Nothing in this analysis stated or implied that the jury's finding of Tesla's liability for punitive damages should be disturbed. To the contrary, the Court found that the jury's finding of liability for punitive dames was amply supported by the weight of the evidence.

Tesla argues that the Court's determination that substantial evidence supported the jury's finding of liability for punitive damages is irrelevant. Not so. The Court's remittitur—and subsequent new trial order, once the remittitur was rejected—was based entirely on the Court's determination that the *amount* of compensatory and punitive damages awarded by the jury was too high. The Court never suggested that Tesla's *liability* for punitive damages was a question that needed to be retried by a second jury, and the Court's order provides no basis for that conclusion. To the contrary, the Court was unequivocal about Tesla's liability for punitive damages, even if the amount awarded by the first jury was, in the Court's view, excessive. The Court's unmistakable view of the case, as expressed in that ruling, has guided the parties' actions and negotiations for the last 10 months, and Tesla's liability for punitive damages was never in question until this past Monday evening.

To reiterate, there is no reason why the Court would order a retrial on an issue which it did not identify as erroneous in the first trial: that Tesla was liable for punitive damages. The Court did not identify any infirmity in the jury's finding that Tesla acted maliciously, oppressively, or recklessly – to the contrary, the Court found that Tesla's conduct "falls high on the reprehensibility scale." There is no reason to revisit the first jury's finding on the issue of

1    entitlement to punitive damages, which the parties have never before understood to be within the

2    scope of the retrial.

3           **b.**   June 27, 2022 Order Granting Motion for New Damages Trial (Dkt. No. 348)

4          After Plaintiff rejected the remittitur of the jury's award of damages, the Court reiterated

5    its holding that "Tesla's motion for judgment as a matter of law and a new trial on liability is

6    DENIED," and ordered "a new trial solely on damages." (Dkt. 348.)

7           **c.**   December 12, 2022 Order Denying New Trial On Liability (Dkt. No. 365)

8          Despite these clear orders from the Court, on October 14, 2022 Tesla once again moved

9    for a new trial on liability, arguing that liability and damages are "inextricably interwoven."

10   (Dkt. 359.) The Court denied Tesla's motion, pointing out that the Court "had already decided

11   this question," and holding that the motion is judicially estopped, procedurally barred, and fails

12   on the merits. (Dkt. 365 at 1.)

13         The Court specifically found each of the three factors that courts consider when deciding

14   to invoke judicial estoppel. As the Court pointed out, "the purpose of judicial estoppel 'is to

15   protect the integrity of the judicial process, by prohibiting parties from deliberately changing

16   positions according to the exigencies of the moment…and to prevent improper use of judicial

17   machinery.'" (Dkt. 365 at 3, citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).)

18         The Court further found that the motion was, at its core, a disguised motion for a new

19   trial on liability – which Tesla had already attempted in its November 2021 motion and the Court

20   had already specifically rejected. (Dkt. 365 at 4:20-24.) Thus, the Court held, Tesla's motion was

21   denied as procedurally barred and it reiterated that "the new trial will be held on damages only."

22   (Dkt. 365 at 7:2-3.)

23         Finally, the Court held that Tesla's motion for a new trial on liability failed on the merits.

24   The Court found that "it is clear that I may exercise my discretion to hold a new trial on damages

25   only so long as the questions of damages and liability are not so interwoven as to confuse the

26   jury or prejudice Tesla," and that "based on the facts of this case, the issues of liability and

27   damages are sufficiently distinct and separable as to permit a retrial on damages only." (Dkt. 365

28   at 10:4-5, 10-13.)

Tesla asserted for the first time in its February 6, 2023 email that the Court's December 12, 2022 order permits the jury to "make an independent determination about whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the plaintiff's rights,'" citing Dkt. 365 at 13. Tesla's position, that Diaz must once again prove malice, oppression, or reckless disregard, ignores the basic substantive findings by the Court outlined above.

Tesla's change of position is purportedly based on its reading of a single paragraph in the Court's order denying Tesla's *Gasoline Products* motion. On page 13 of its Order, the Court stated that "while *Lutz* and *Wharf* specifically discuss separate trials for liability and compensatory damages, the reasoning also applies here to allow retrial of punitive damages without retrying liability" and that "[a]s outlined in the jury instructions, assessing punitive damages requires determining whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the plaintiff's rights." (Dkt. 365 at 13:8-12.) Fairly read in the context of the rest of this order, as well as the Court's other orders repeatedly denying Tesla's attempts to hold a new trial on liability, Plaintiff does not understand the Court's discussion to suggest that the damages-only retrial would also encompass the threshold question of whether Tesla was liable to pay punitive damages – a question the first jury unanimously resolved in favor of Mr. Diaz and that the Court upheld against Tesla's post-trial motions challenges.

In that very same order, the Court specifically rejected Tesla's argument that "federal law 'generally require[s] that the same jury determine both *liability for, and the amount of, punitive damages* because those questions are so interwoven.'" (Dkt. 365 at 14, fn 9.) The Court found that the unpublished case cited by Tesla for this proposition, *Zender v. Vlasic Foods, Inc.*, 91 F.3d 158 at *5 (9th Cir. 1996), was distinguishable and therefore "does not preclude a retrial on punitive damages alone here." (*Id.*)

Accordingly, Plaintiff interpreted the Court's discussion to mean simply that the retrial jury's assessment of punitive damages will involve considering the *degree* of malice, oppression, or reckless disregard—the degree of reprehensibility—not that the retrial jury will be asked to decide whether there was *any* malice associated with Tesla's conduct. That was Tesla's interpretation of the Court's order, too, up until this week.

2.  <u>Prior to February 6, 2023 Tesla Repeatedly Took the Position – in Communications with Plaintiff's Counsel and the Court – that the Scope of the</u>

<u>Retrial Is Limited to the Amount of Punitive Damages and Not Plaintiff's</u>
<u>Entitlement to Punitive Damages</u>

Tesla asserts without citation or support that entitlement to punitive damages is "a damages issue" and "not a liability issue." This contention is utterly disingenuous in light of Tesla's communications with Plaintiff's counsel and the Court prior to February 6, 2023, which clearly indicate its agreement that the damages-only retrial would assume entitlement to punitive damages.

In its December 7, 2022 Minute Order denying Tesla's Motion for a New Trial, the Court ordered the parties to engage in a "robust discussion concerning the retrial and to present their areas of agreement and dispute in a Joint Case Management Statement." (Dkt. 364.) Since the Court's order, the parties have done exactly that – they have robustly debated the scope of the damages-only retrial. Throughout that debate, one thing has remained constant: counsel for both Diaz and Tesla have shared a mutual, repeatedly reaffirmed understanding that the scope of retrial is limited to the appropriate *amount* of compensatory and punitive damages, not Diaz's entitlement to those damages.

Tesla's previously proposed Statement of the Case, Jury Instructions, and Verdict Form all clearly demonstrate Tesla's understanding and acceptance of the fact that the scope of retrial will encompass the *amount* of punitive damages, not whether Tesla is liable for punitive damages.

Tesla's January 16, 2023 Proposed Statement of the Case reiterates the first jury's finding that Tesla's conduct warranted an award of punitive damages. It reads: "It was also determined that Tesla's unlawful conduct was conducted with malice, oppression, or in reckless disregard of Mr. Diaz's rights. As a result of those previous determinations, you will be asked to determine the extent and degree of punitive damages, if any, Mr. Diaz is entitled to recover from Tesla." (Dkt. 374-1 Exhibit A.) By asserting that the jury must "determine the extent and degree of punitive damages" Tesla properly acknowledged the first jury's previously uncontested finding that Tesla is liable for punitive damages.

Tesla's Proposed Jury Instructions also demonstrate its understanding that only the amount of punitive damages, and not its liability for punitive damages, will be at issue in the

retrial. Tesla did not propose an instruction asking the jury to determine whether Tesla's conduct was "malicious, oppressive or in reckless disregard of plaintiff's rights." To the contrary, Tesla proposed a single jury instruction regarding punitive damages, focusing the jury's attention on the *amount* of punitive damages only: "Mr. Diaz has the burden of proving by a preponderance of the evidence the amount of punitive damages that should be awarded. You must use reason in setting the amount of punitive damages . . ." (Dkt. 374-2 Exhibit B.) Tesla's redlined versions of Plaintiff's Proposed Statement of the Case and Proposed Jury Instructions further confirm that Tesla did not previously seek to challenge the parties' understanding that Mr. Diaz's entitlement to punitive damages has already been definitively determined, Instead, Tesla it proposed *new language* affirming Diaz's entitlement to punitive damages: "It has also been found that Mr. Diaz is entitled to recover punitive damages." (Dkt. 374-4, Ex. D (redline of Plaintiff's Proposed Jury Instructions).)

Tesla's January 31, 2023 proposed verdict form perhaps most clearly demonstrates Tesla's previous understanding that the scope of retrial is limited to the *amount* of damages. The proposed form does *not* ask the jury to consider whether Tesla's conduct was malicious, oppressive, or in reckless disregard of the plaintiff's rights." Nor should it have, because that question was already resolved by the first jury and that portion of the verdict was upheld by this Court. Instead, Tesla asks just a single question regarding punitive damages: "What amount of punitive damages do you award to Owen Diaz? $_____" (2023.01.31 Tesla's Proposed Jury Verdict Form). Clearly, through at least January 31, 2023, Tesla understood that the scope of retrial did not include a second jury finding regarding whether Tesla was liable for punitive damages.

Tesla's Motions in Limine, which it filed on February 3, just three days before Tesla's about-face, also proceed from the assumption that Tesla's liability for punitive damages was already resolved – and in none of the exchange of drafts and meet and confer discussions about those MILs did Tesla even hint at its upcoming change in position (or put Plaintiff on notice that he might have to prepare an additional MIL of his own to address the issue).

Significantly, Tesla's Motion in Limine No. 4 uses the previously-unchallenged damages-only limitation at retrial as a sword to argue for exclusion of Diaz's "me too" evidence,

asserting: "Evidence of conduct not directed at or experienced by Mr. Diaz is constitutionally barred from a calculation of punitive damages." (Dkt. 381 at 13:3-14.)  Addressing this argument to the Court during the most recent status conference, Tesla's counsel specifically represented to the Court that because the scope of retrial was limited to "the amount of damages" (as opposed to Diaz's entitlement to damages) Diaz's "me too" evidence must be barred:

> MR. POSNER: Understood. And the other issue that I heard Your Honor say is that the "Me Too" evidence would likely go to pervasiveness for purposes of reprehensibility. We do think the law draws a pretty clear distinction, a clear distinction between the admissibility and the relevance of evidence of harm to others with respect to the threshold determination of reprehensibility and whether there should be punitive damages on the one hand and, on the other hand, the amount of punitive damages. **And so we made our pitch before that this trial, because of the overlapping evidence between liability and damages, should revisit the findings of liability. We're moving past that. But given that this trial now is limited to damages, the amount of damages, we feel the law is clear that that evidence doesn't come in at all.**

(1/17/23 Transcript at 8:9-23.) (Emphasis added.) While Plaintiff vehemently disagrees with Tesla's assertion that "me too" evidence should be excluded on this basis, this colloquy demonstrates Tesla's cynical willingness to disavow previously accepted positions when convenient. Tesla should be bound by its unequivocal representation to the Court – that the retrial is limited to "the amount of damages." Its repeated shift of position based on the exigencies of the moment should not be countenanced, just as it was not countenanced the last time Tesla tried to obtain reconsideration of the Court's post-trial orders while pretending to be doing something else entirely.

> For all of these reasons, Tesla's last-minute effort to re-open the issue of its liability for punitive damages, which is an improper motion for reconsideration of the Court's post-trial rulings and completely inconsistent with the parties' joint understanding of those rulings for the past 10 months, should be rejected.

### D.    Defendant's Position In Support Of Its Version Of Instruction

> Tesla proposes to more closely track the punitive damages instruction as given at the first trial.  Mr. Diaz is wrong to argue that the first jury made a "binding determination" that Mr. Diaz is entitled to some amount of punitive damages.  On this retrial, the first jury's findings of

1  liability against Tesla will apply.  Mr. Diaz's entitlement to punitive damages is a damages issue,

2  however, not a liability issue.  Indeed, in ruling on Tesla's motion for new trial on liability and

3  damages, the Court recognized the distinction between the second jury's task in assessing

4  punitive damages—including its assessment of "whether the conduct at issue was 'malicious,

5  oppressive or in reckless disregard of the plaintiff's rights'"—and the first jury's finding of a

6  hostile work environment (in other words, the liability determination).  Based on that distinction,

7  the Court concluded it was not necessary to retry liability along with a retrial of punitive

8  damages, as follows:

9       [W]hile Lutz and Wharf specifically discuss separate trials for liability and
        compensatory damages, the reasoning also applies here to allow retrial of punitive
10      damages without retrying liability.  As outlined in the jury instructions, assessing
        punitive damages requires determining whether the conduct at issue was
11      "malicious, oppressive or in reckless disregard of the plaintiff's rights."  Jury
        Instructions at 41.  That question is not so intertwined with liability so as to
12      confuse the jury.  Asking whether Tesla acted maliciously, oppressively, or
        recklessly is a fundamentally different question from whether the environment
13      itself was hostile, Tesla was a joint employer, there was a sufficient contractual
        relationship, Tesla failed to take reasonable steps to protect Diaz, or Tesla was
14      negligent in supervising or continuing to employ Ramon Martinez.

15  Dkt. 365 at 13.

16       Accordingly, the Court previously concluded that the second jury will need to be

17  instructed on how to determine "whether Tesla acted maliciously, oppressively, or recklessly,"

18  and that this determination is fundamentally distinct from the first jury's finding of liability.

19       Tesla also proposes to include the words "if any" in this instruction.  Like the first jury,

20  the second jury is entitled to award no punitive damages to Mr. Diaz.  Nothing about the first

21  jury's finding of Tesla's liability for creating a hostile work environment that will apply on the

22  retrial requires the second jury to award any amount of punitive damages.  Rather, Mr. Diaz still

23  needs to prove such damages by a preponderance of the evidence.  *See, e.g.*, Ninth Circuit Model

24  Civil Jury Instruction 5.5.

25       Tesla also proposes to omit the portion of this instruction that would permit the jury to

26  determine the appropriate amount of punitive damages by considering whether Tesla's conduct

27  "also caused actual harm or posed a substantial risk of harm to people who are not parties to this

28  case."  As Tesla explained in its Motion in Limine No. 4 (Dkt. 381 at 11-17), which it

incorporates herein by reference, as a matter of law, the jury may not consider harm to others in determining the appropriate amount of punitive damages. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis."); *White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007) (vacating and remanding an award after trial in a product-liability case where plaintiffs' counsel told the jury that "Ford knew that 54 people had been injured by 'rollaways'" but had "'decided to do everything possible to avoid telling people the truth' about the rollaway problem," reasoning that a calculation of punitive damages based on such other-party evidence "violated due process").

Indeed, the language Tesla proposes to omit is internally inconsistent with the language in the following sentence of the instruction as proposed by Mr. Diaz stating:  "You may not, however, set the amount of any punitive damages in order to punish Tesla for harm to anyone other than Mr. Diaz in this case."  Given that the jury may not set the amount of punitive damages based on harm to anyone other than Mr. Diaz, it is unnecessary, confusing, and potentially prejudicial to Tesla to instruct the jury that it may consider whether the alleged conduct that Mr. Diaz experienced also harmed or posed a risk of harm to others.

Mr. Diaz's complaints about the timing of Tesla's proposal of this instruction are meritless.  Tesla proposed this final version of the instruction two days before the parties' deadline to file disputed jury instructions, three weeks before the pretrial conference, and six weeks before trial is set to begin, and thus it is undoubtedly timely. *See Nash v. Lewis*, 365 F. App'x 48, 51 n.2-3 (9th Cir. 2010) (party "timely objected, before the jury began deliberating, to all instructions proposed but not given" and "preserved his objection to the verdict form's [omission] because [the party]'s proposed verdict form included a space for the jury to find" the proposed finding "before the jury rendered its verdict and was discharged").  Indeed, both parties have been revising their proposed jury instructions leading up to the deadline to file them with the Court.  Mr. Diaz has had a full and fair opportunity to oppose this instruction, and his focus

1   on the timing of Tesla's proposal of this instruction reveals the inadequacy in his substantive

2   opposition to it.

3   For these reasons, it is erroneous for Mr. Diaz to seek to exclude the portion of this instruction

4   that relates to the jury's finding of Mr. Diaz's entitlement to punitive damages.  *See Merrick v.*

5   *Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1017 (9th Cir. 2007) ("Where a proposed instruction is

6   supported by law and not adequately covered by other instructions, the court should give a non-

7   misleading instruction that captures the substance of the proposed instruction." (emphasis

8   omitted)); *United States v. Unruh*, 855 F.2d 1363, 1372 (9th Cir. 1987) ("[T]he failure to give a

9   requested instruction is reversible error if the defendant's theory of the case is supported by law

10  and has some foundation in the evidence.").

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **[DISPUTED] JURY INSTRUCTION NO 12.**

2  **NO INFERENCE TO BE DRAWN FROM ABSENT WITNESS**

3

4       Mr. Diaz has accused a former co-worker, Robert Hurtado, of making racially insensitive

5  statements directed to him.  Mr. Hurtado could not testify in this trial.  You should not draw any

6  inference about the credibility or truthfulness of Mr. Diaz's accusations about Mr. Hurtado based

7  on the fact that Mr. Hurtado has not testified in this trial.

8       **A.       Plaintiff's Position**

9       Plaintiff objects to this instruction because it unfairly bolsters Tesla's position and does

10  not even attempt to be  neutral. Plaintiff addressed this proposed instruction in more detail in its

11  opposition to Tesla's MIL No. 1.The reason Mr. Hurtado "could not" testify is because Tesla

12  failed to identify him in violation of the Court's rules and its specific discovery ruling. The

13  statement that Mr. Hurtado "could not testify at this trial" is therefore misleading, as it suggests

14  that Mr. Hurtado is not testifying for some benign reason, for example, as if he were prevented

15  by illness rather than Tesla's prior litigation strategy and the resulting court ruling. Tesla's

16  reference to "racially insensitive statements" mischaracterizes the evidence, which was that he

17  used the N-word more than 30 times. The reference to "the credibility or truthfulness of Mr.

18  Diaz's accusations about Mr. Hurtado" impermissibly invite the jury to draw the conclusion that

19  Tesla was not  responsible for Mr. Hurtado's failure to testify, that the testimony concerning Mr.

20  Hurtado's repeatedly racists epithets was only minimally significant, and that if Mr. Hurtado had

21  been able to testify, he would have successfully impeached Mr. Diaz's credibility in some

22  unexplained. Tesla's misleading proposed instruction lacks any basis in law or fact and should be

23  rejected in its entirety. Tesla is trying to avoid the consequences of its strategic decisions in the

24  first trial. For example, it decided that instead of identifying and calling Mr. Hurtado, it would be

25  preferable from Tesla's perspective to rely on the testimony of Joyce Delagrande to provide

26  character evidence about Mr. Hurtado. That obviously did not work out for it. Finally, it is

27  improper to give an instruction like this only as to one witness who was not called. In the last

28  trial, for example, Plaintiff could have called, but did not call, Lamar Patterson, who could have

1  confirmed that Mr. Hurtado used the N-word in an interaction with Mr. Diaz in the elevator.

2  Defense counsel commented on Mr. Patterson's absence from the trial.. Were the instruction to

3  be neutral, it should include other witnesses that the parties identified on their witness list but

4  failed to call.

5      **B.**    **Defendant's Position**

6          Tesla explained the basis for this instruction in its Motion *In Limine* No. 1 regarding the

7  testimony of Robert Hurtado (Dkt. 381 at 5), which it incorporates herein by reference.  In

8  summary, if the Court prohibits Mr. Hurtado from testifying at the retrial, then Mr. Diaz should

9  not be permitted to invite the jury to draw any inference from Mr. Hurtado's absence from the

10 retrial.  Permitting Mr. Diaz to do so would be unduly prejudicial to Tesla given its and Mr.

11 Hurtado's requests that the Court permit Mr. Hurtado to testify and Mr. Diaz's objections to him

12 doing so.

13         Mr. Diaz is wrong to argue that the statement that "Mr. Hurtado could not testify in ***this***

14 trial" (emphasis added) is misleading because Tesla did not call Mr. Hurtado in the first trial.

15 This instruction is designed to address the fact that Tesla in ***this*** trial has moved in limine to

16 include Mr. Hurtado as witness.  Should the Court preclude Tesla from calling Mr. Hurtado, then

17 this instruction would serve to mitigate the prejudice to Tesla by the Court's ruling.  Mr. Diaz's

18 implied request to include other witnesses, like Mr. Patterson, who the "parties identified on their

19 witness list but failed to call," is also inapt.  Mr. Patterson is not a witness that Mr. Diaz moved

20 in limine to include as a witness in this trial, and Mr. Diaz has not identified Mr. Patterson on his

21 witness list in this trial.

22         Moreover, Tesla's requested reference to "credibility or truthfulness" is appropriate

23 because Tesla is informing the jury not to accept Mr. Diaz's accusations as true simply because

24 Mr. Hurtado did not testify to rebut such accusations.  The jury may of course come to the

25 conclusion that Mr. Diaz's accusations are credible and true for other reasons, based on its

26 assessment of the witnesses who did testify and the evidence that was presented.  However,

27 given Tesla's requests that Mr. Hurtado be permitted to testify in this trial, it would be unfair and

28

1  prejudicial to permit the jury to find that Mr. Diaz's accusations about Mr. Hurtado are credible

2  or true based on the fact that Mr. Hurtado did not testify.

3       For these reasons, it is erroneous for Mr. Diaz to seek to exclude this instruction.  *See*

4  *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1017 (9th Cir. 2007) ("Where a proposed

5  instruction is supported by law and not adequately covered by other instructions, the court should

6  give a non-misleading instruction that captures the substance of the proposed instruction."

7  (emphasis omitted)); *United States v. Unruh*, 855 F.2d 1363, 1372 (9th Cir. 1987) ("[T]he failure

8  to give a requested instruction is reversible error if the defendant's theory of the case is

9  supported by law and has some foundation in the evidence.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINTLY PROPOSED JURY INSTRUCTIONS**

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 1**

**DUTY OF JURY**

**(COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL AND AT END)**

**(Instruction No. 1 in 1st Trial—1.3)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

[First, I will remind you of some of the instructions I gave you at the outset on evaluating the evidence, before I get into the substantive instructions.]

1
2
3
4

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 2:**

**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

**(Instruction No. 2 in 1st trial—1.6)**

5
6
7

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

8
9

You should base your decision on all of the evidence, regardless of which party presented it.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 3:**

**WHAT IS EVIDENCE**

**(Instruction No. 3 in 1st trial—1.9 modified for tense)**

The evidence you are to consider in deciding what the facts are consists of:

     1. the sworn testimony of any witness;

     2. the exhibits that are admitted into evidence;

     3. any facts to which the lawyers have agreed; and

     4. any facts that I [may instruct] [have instructed] you to accept as proved.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 4:**

**WHAT IS NOT EVIDENCE**

**<u>(Instruction No. 4 in 1st Trial—1.10)</u>**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)  Testimony that is excluded or stricken, or that you [are] [have been] instructed to disregard, is not evidence and must not be considered. In addition some evidence [may be] [was] received only for a limited purpose; when I [instruct] [have instructed] you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)  Anything you may [see or hear] [have seen or heard] when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 5:**

**EVIDENCE FOR LIMITED PURPOSE**

**(Instruction No. 5 at 1st trial—1.11 modified)**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[I admitted Exhibit 106 for the limited purpose of your consideration of the credibility of Edward Romero's [*and Victor Quintero's*] testimony and I allowed Wayne Jackson to testify about his experience hearing the "n-word" in the Tesla factory. I want to remind you that this case is about Mr. Diaz and the work environment that he experienced at the Tesla factory, not what others in a different part of the factory experienced.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 6:**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

**<u>(Instruction No. 6 in 1st trial—1.12)</u>**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 7:**

**RULING ON OBJECTIONS**

**(Instruction No. 7 in 1st trial—1.13)**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 8:**

**CREDIBILITY OF WITNESSES**

**(Instruction No. 8 in 1st trial—1.14)**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 9:**

**IMPLICIT BIAS**

**<u>(Instruction No. 9 in 1st trial)</u>**


We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of, and others we might not be fully aware of, which is why they are called implicit or unconscious biases. No matter how unbiased we think we are, our brains are hardwired to make unconscious decisions. We look at others and filter what they say through our own personal experience and background. Because we all do this, we often see life and evaluate evidence in a way that tends to favor people who are like ourselves, or who have had life experiences like our own. We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make an important decision in the case. You must one, take the time you need to reflect carefully and thoughtfully about the evidence.

Two, think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case. If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion or sexual orientation, would you still view them, and the evidence, the same way?

Three, listen to one another. You must carefully evaluate the evidence and resist, and help each other resist, any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions and biases. Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision making.

And four, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

The law demands that you make a fair decision based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 10:**

**PUBLICITY DURING TRIAL**

**(Instruction No. 10 in 1st Trial—1.16)**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it. You must not read, watch or listen to any news media account or commentary about the case or anything to do with it. The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 11:**

**TAKING NOTES**

**(Instruction No. 11 in 1st Trial—1.18)**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.

Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

[You may have taken notes to help you remember the evidence. Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 12:**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

**(Instruction No. 12 in 1st trial—2.4)**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of KEVIN MCGINN was taken on June 17, 2019. The deposition of DEMETRIC DIAZ was taken on May 15, 2018. The deposition of ERIN MARCONI was taken on October 21, 2019. The deposition of ANNALISA HEISEN was taken May 29, 2019. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 13:**

**IMPEACHMENT EVIDENCE—WITNESS**

**<u>(Instruction No. 13 in 1st trial—2.9)</u>**

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 14:**

**USE OF INTERROGATORIES**

**(Instruction No. 14 in 1st trial—2.11)**


Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

1

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 15:**

**USE OF REQUESTS FOR ADMISSION**

**(Instruction No. 15 in 1st trial—2.12)**

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 16:**

**EXPERT OPINION**

**<u>(Instruction No. 16 in 1st trial—2.13)</u>**

You [will hear] [have heard] testimony from Anthony Reading, Amy Oppenheimer and Charles Mahla who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness. Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 17:**

**CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT**

**(Instruction No. 17 in 1st trial—4.1)**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 18:**

**LIABILITY OF CORPORATIONS – SCOPE OF AUTHORITY NOT IN ISSUE**

**<u>(Instruction No. 18 in 1st trial—4.2)</u>**


Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 19:**

**JOINT EMPLOYMENT**

**<u>(Instruction No. 24 in 1st trial—modified for retrial)</u>**

A person can have more than one employer. Even though Owen Diaz worked at Tesla's Fremont factory through a staffing agency, it has been determined that Tesla is a joint employer of Owen Diaz. You are not to question this finding.

Whenever these instructions reference "employment," "employer," "employee," "employ," or "employed," they can refer to a joint employment relationship.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 20:**

**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it [may become] [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury [is] [was] present in the courtroom, or by calling a recess. Please understand that while you [are] [were] waiting, we [are] [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we [will do] [have done] what we [can] [could] to keep the number and length of these conferences to a minimum. I [may] [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 21:**

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 22:**

**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries [may be] [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 23:**

**WITNESSES DESIGNATED AS "PERSONS MOST KNOWLEDGEABLE"**

**(Submitted in 1st trial as Plaintiff's Special Instruction No. 12 but not given)**

You are about to hear testimony from a witness who, when depositions were taken previously in this case, was designated by Tesla as a "person most knowledgeable" regarding certain specific subjects and issues identified by Mr. Diaz.

Testimony from a witness who has been identified by a corporation as a "person most knowledgeable" represents the company's knowledge, not the individual witness's knowledge. The company must prepare the "person most knowledgeable" to testify on the designated subjects and issues based on information reasonably available from documents, current or past employees, or other sources. Because the testimony from the "person most knowledgeable" reflects the company's knowledge, rather than the individual witness's personal knowledge, if a certain fact is within the collective knowledge or subjective belief of the company, the "person most knowledgeable" is allowed to testify to that fact even though the fact is not within the personal knowledge of the witness designated as the "person most knowledgeable" regarding that fact. Thus, a witness designated as the "person most knowledgeable" is free to testify to matters outside of his or her personal knowledge as long as they were within the company's collective knowledge.

**COMMENT/AUTHORITY:**

*ISG Insolvency Group, Inc. v. Meritage Homes Corp. et al.*, 2013 U. S. Dist. LEXIS 84726 at *11-*12 (D. Nev. 2013)

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 24:**

**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 25:**

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this

1   case, and do not use Internet programs or other devices to search for or view any place discussed
2   during the trial. Also, do not do any research about this case, the law, or the people involved—
3   including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you
4   happen to read or hear anything touching on this case in the media, turn away and report it to me
5   as soon as possible.

6           These rules protect each party's right to have this case decided only on evidence that has
7   been presented here in court. Witnesses here in court take an oath to tell the truth, and the
8   accuracy of their testimony is tested through the trial process. If you do any research or
9   investigation outside the courtroom, or gain any information through improper communications,
10  then your verdict may be influenced by inaccurate, incomplete or misleading information that
11  has not been tested by the trial process. Each of the parties is entitled to a fair trial by an
12  impartial jury, and if you decide the case based on information not presented in court, you will
13  have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it
14  is very important that you follow these rules.

15          A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and
16  a mistrial could result that would require the entire trial process to start over]. If any juror is
17  exposed to any outside information, please notify the court immediately.

18
19
20
21
22
23
24
25
26
27
28

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 26:**

**DUTY OF JURY**

**(COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you on the law that applies to this case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

*or*

[A copy of these instructions will be sent to the jury room for you to consult during your deliberations.]

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Comment**

This instruction should be used with the written final set of the instructions to be sent to the jury.  Bracketed material should be selected to cover whether single or multiple sets of written instructions are provided.

1
2
3
4

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 27:**

**EVIDENCE IN ELECTRONIC FORMAT**

**<u>(Instruction No. 43 in 1st trial)</u>**

5   Those exhibits received in evidence that are capable of being displayed electronically will

6   be provided to you in that form, and you will be able to view them in the jury room. A computer

7   will be available to you in the jury room.

8   The courtroom deputy will show you how to operate the computer and how to locate and

9   view the exhibits on the computer. You will also be provided with a paper list of all exhibits

10  received in evidence. You may request a paper copy of any exhibit received in evidence by

11  sending a note through the clerk.) If you need additional equipment or supplies or if you have

12  questions about how to operate the computer, you may send a note to the clerk, signed by your

13  foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you

14  were attempting to view.

15  If a technical problem or question requires hands-on maintenance or instruction, a court

16  technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of

17  assuring that the only matter that is discussed is the technical problem. When the court technician

18  or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to

19  the court technician or any nonjuror other than to describe the technical problem or to seek

20  information about operation of the equipment. Do not discuss any exhibit or any aspect of the

21  case.

22  The sole purpose of providing the computer in the jury room is to enable jurors to view

23  the exhibits received in evidence in this case. You may not use the computer for any other

24  purpose. At my direction, technicians have taken steps to ensure that the computer does not

25  permit access to the Internet or to any "outside" website, database, directory, game, or other

26  material. Do not attempt to alter the computer to obtain access to such materials. If you discover

27  that the computer provides or allows access to such materials, you must inform the court

28

immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 28:**

**DUTY TO DELIBERATE**

**(Instruction No. 42 in 1st trial—3.1)**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 29:**

**CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

<u>**(Instruction No. 44 in 1st trial—3.2)**</u>

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 30:**

**COMMUNICATION WITH COURT**

**<u>(Instruction No. 45 in 1st trial—3.3)</u>**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 31:**

**READBACK OR PLAYBACK**

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

Because a request has been made for a [readback] [playback] of the testimony of [*witness's name*] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Although a court has broad discretion to read back excerpts or the entire testimony of a witness when requested by a deliberating jury, precautionary steps should be taken. Absent the parties' stipulation to a different procedure, the jury should be required to hear the readback in open court, with counsel for both sides present, and after giving the admonition set out above.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 32:**

**RETURN OF VERDICT**

**(Instruction No. 46 in 1st trial—3.5)**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the deputy that you are ready to return to the courtroom.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 33:**

**DEADLOCKED JURY**

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors. During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now return to the jury room and continue your deliberations.

**[JOINTLY PROPOSED] JURY INSTRUCTION NO. 34:**

**CONTINUING DELIBERATIONS AFTER JUROR IS DISCHARGED**

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors. Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating. All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

1

2         CALIFORNIA CIVIL RIGHTS LAW GROUP
          ALEXANDER MORRISON & FEHR LLP

3         ALTSCHULER BERZON

4 DATED:  February 8, 2023  By: /s Lawrence A Organ_____

5          Lawrence A. Organ, Esq.
          Marqui Hood, Esq.

6          Cimone A. Nunley, Esq.
          J. Bernard Alexander, Esq.

7          Michael Rubin, Esq.

8          Jonathan Rosenthal, Esq.
          Attorneys for Plaintiffs

9          OWEN DIAZ

10 DATED:  February 8, 2023   QUINN EMANUEL URQUHART &
          SULLIVAN, LLP

11

12        By */s/ Daniel C. Posner*_____

13          Alex Spiro (appearance *pro hac vice*)
          alexspiro@quinnemanuel.com

14          QUINN EMANUEL URQUHART &
          SULLIVAN, LLP

15          51 Madison Ave., 22nd Floor
          New York, NY 10010

16          Telephone: (212) 849-7000
          Facsimile: (213) 443-3100

17          Daniel C. Posner

18          Mari F. Henderson
          865 S. Figueroa St., 10th Floor

19          Los Angeles, California 90017
          Telephone: (213) 443-3000

20

21          Asher Griffin (appearance *pro hac vice*)
          ashergriffin@quinnemanuel.com

22          300 W. 6th St., Suite 2010
          Austin, TX 78701

23          Telephone: (737) 667-6100

24          *Attorneys for Defendant Tesla, Inc.*

25

26

27

28