QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (appearance *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Daniel C. Posner (CA Bar No. 232009)
  danposner@quinnemanuel.com
  Mari F. Henderson (CA Bar No. 307693)
  marihenderson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Asher Griffin (appearance *pro hac vice*)
  ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| OWEN DIAZ,<br><br>        Plaintiff,<br><br>    v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC.,<br><br>        Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**DEFENDANT TESLA, INC.'S OPPOSITIONS TO PLAINTIFF OWEN DIAZ'S MOTIONS *IN LIMINE***<br><br>Hearing Date:  February 27, 2023<br>Time:  2:00 p.m.<br>Place:  Courtroom 2, 17th Floor<br>Judge:  Hon. William H. Orrick |

# **TABLE OF CONTENTS**

LEGAL STANDARD ........................................................................................................................1

I.   THE COURT SHOULD DENY MR. DIAZ'S MOTIONS *IN LIMINE* NOS. 1 AND 2 ..................................................................................................................................1

    A.   The First Jury's Verdict Does Not Preclude Evidence Of Specific Incidents Insofar As Relevant To The Second Jury's Determination Of Damages...................1

    B.   Tesla Is Entitled To Elicit Unscripted Testimony Within The Scope Of Testimony Offered At The First Trial ....................................................................3

II.  THE COURT SHOULD DENY MR. DIAZ'S MOTIONS *IN LIMINE* NOS. 3 AND 4 ..................................................................................................................................5

III. THE COURT SHOULD DENY MR. DIAZ'S MOTION *IN LIMINE* NO. 5 .......................8

IV.  THE COURT SHOULD DENY MR. DIAZ'S MOTION *IN LIMINE* NO. 6 .......................9

V.   THE COURT SHOULD DENY MR. DIAZ'S MOTIONS *IN LIMINE* NOS. 7, 8 & 9 ..............................................................................................................................................11

    A.   The Court Should Again Admit Exhibit 265 ............................................................11

    B.   The Court Should Again Admit Exhibit 293 ............................................................13

    C.   The Court Should Again Admit Exhibit 379 ............................................................14

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

### Cases

*Anderson v. Durham D & M, L.L.C.*,
  2009 WL 585653 (W.D. Mo. Mar. 4, 2009),
  *aff'd*, 606 F.3d 513 (8th Cir. 2010) ............................................................................ 12

*Arizona v. Asarco LLC*,
  543 F. App'x 702 (9th Cir. 2013),
  *adhered to on reh'g en banc*, 773 F.3d 1050 (9th Cir. 2014) ........................................ 2, 3

*Arizona, Dep't of L., C.R. Div. v. ASARCO, L.L.C.*,
  2011 WL 6951842 (D. Ariz. Sept. 29, 2011) ................................................................... 2

*Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*,
  405 F.3d 764 (9th Cir. 2005) ........................................................................................... 2

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ...................................................................................................... 10

*Doe v. Bridges to Recovery, LLC*,
  2021 WL 4690830 (C.D. Cal. May 19, 2021) .................................................................. 4

*Gulitz v. DiBartolo*,
  2010 WL 11712777 (S.D.N.Y. July 13, 2010)
  *aff'd*, 606 F.3d 513 (8th Cir. 2010) ................................................................................ 12

*Little v. City of Richmond*,
  2015 WL 798544 (N.D. Cal. Feb. 23, 2015) .................................................................... 4

*Rathburn v. Knight Transportation, Inc.*,
  2019 WL 3716466 (D. Nev. Aug. 7, 2019) ...................................................................... 9

*Rushton v. Experi-Metal, Inc.*,
  2020 WL 7480548 (E.D. Mich. Dec. 18, 2020) ............................................................. 11

*Smilovits v. First Solar, Inc.*,
  2019 WL 6698199 (D. Ariz. Dec. 9, 2019) .................................................................... 12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ........................................................................................................ 3

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) ......................................................................................... 1

*United States v. Joetzki*,
  952 F.2d 1090 (9th Cir. 1991) ......................................................................................... 1

*United States v. Thompson*,
  2022 WL 2064854 (W.D. Wash. June 8, 2022) ............................................................... 1

**Rules and Regulations**

Fed. R. Evid. 401 ................................................................................................................................ 1

Fed. R. Evid. 403 ..................................................................................................................... 1, 13, 15

Defendant Tesla, Inc. respectfully requests that the Court deny Plaintiff Owen Diaz's nine motions *in limine*.

## LEGAL STANDARD

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000). Federal Rule of Evidence 403 allows a court, in its discretion, to exclude relevant evidence if "its probative value is substantially outweighed by a danger of" unfair prejudice or confusion. Fed. R. Evid. 403. Unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee's Note; *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) (evidence is "unfairly prejudicial . . . if it has an undue tendency to suggest a decision on an improper basis"); *United States v. Thompson*, 2022 WL 2064854, at *1 (W.D. Wash. June 8, 2022) (declining to exclude evidence that did not "sow confusion" and did not have "an undue tendency to suggest decision on an improper basis").

**I.   THE COURT SHOULD DENY MR. DIAZ'S MOTIONS *IN LIMINE* NOS. 1 AND 2**

The Court should deny Mr. Diaz's motion *in limine* no. 1, which seeks to preclude argument or evidence "inconsistent with the first jury's special liability verdict findings," and no. 2, which seeks to "confirm that Tesla is precluded from eliciting testimony that goes beyond the scope of testimony at the first trial." Dkt. 382 ("Mot.") at 1, 4. Because these motions present overlapping issues regarding the scope of the first jury's verdict, Tesla opposes them together.

**A.   The First Jury's Verdict Does Not Preclude Evidence Of Specific Incidents Insofar As Relevant To The Second Jury's Determination Of Damages**

Mr. Diaz errs in his attempt (Mot. 1-4) to use the verdict form from the first trial to prevent Tesla from introducing evidence and eliciting testimony concerning whether specific incidents of alleged harassment occurred, whether they were racially motivated, whether Tesla had knowledge of them, how Tesla responded to them, and whether and to what extent they harmed Mr. Diaz. While the liability judgment of course precludes Tesla from disputing liability, the damages retrial of

necessity will require the second jury to determine the magnitude of harm to Mr. Diaz and the appropriateness of any compensatory or punitive damages. And both damages questions will depend on the second jury's findings concerning whether specific incidents of alleged harassment occurred, whether they were racially motivated, whether Tesla had knowledge of them, how Tesla responded to them, and whether and to what extent they harmed Mr. Diaz. The motion thus should be denied.

*First*, Mr. Diaz errs in arguing that the first jury verdict conclusively establishes that any particular racial incident or incidents occurred. Contrary to Mr. Diaz's argument, the first jury made no "detailed liability findings" (Mot. 1), and nowhere indicated which of Mr. Diaz's evidence regarding any "specific incidents of harassment" (Mot. 2) it might have credited. The verdict form from the first trial (Dkt. 301) asked only general liability questions like "Was Owen Diaz subjected to a racially hostile work environment by Tesla, Inc.?"—to which the jury answered simply by checking "Yes." *Id.* at 1. Moreover, the Court instructed the first jury that "[a] single incident can be sufficiently severe or pervasive to constitute harassment." Dkt. 280 at 28. Thus, the first jury's finding of a racially hostile environment permits only the inference that the jury found at least one incident that was sufficiently severe or pervasive to constitute harassment. But the first jury verdict is silent on which incident or incidents that was—the jury might have credited some but not other of Mr. Diaz's evidence, and there is no way to instruct the second jury as to where to draw that line.

*Second*, Mr. Diaz errs in arguing (Mot. 3) that the first verdict on liability conclusively establishes the existence of harm to Mr. Diaz for damages purposes. Settled precedent confirms that, even if a jury finds liability for a claim of a racially hostile environment in violation of § 1981, the existence and amount of damages requires independent proof, and may be nominal or even zero. *See, e.g.*, *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 772 (9th Cir. 2005) ("An award of nominal damages does not mean that there were not actual economic damages, just that the exact amount of damages attributable to the improper conduct was not proven. The court instructed the jury to award nominal damages if it found that ARCO had harmed Flying B in violation of § 1981, but that Flying B failed to prove damages as defined in these instructions. And that is exactly what the jury did."); *Arizona, Dep't of L., C.R. Div. v. ASARCO, L.L.C.*, 2011 WL

6951842, at *1 (D. Ariz. Sept. 29, 2011) ("[T]he jury found for the plaintiffs on [the] sexual harassment claim, [but] the jury awarded no compensatory damages for past or future emotional distress, and only $1.00 in nominal damages . . . ."), *aff'd sub nom. Arizona v. Asarco LLC*, 543 F. App'x 702 (9th Cir. 2013), *adhered to on reh'g en banc*, 773 F.3d 1050 (9th Cir. 2014).  Thus, Mr. Diaz bears the independent burden of proving to the second jury by a preponderance of the evidence the existence and magnitude of harm, and Tesla is entitled to contest that showing as part of its damages defense.

*Third*, Mr. Diaz errs in arguing (Mot. 4) that the first verdict on liability conclusively establishes Tesla's knowledge of any specific incidents of alleged racial harassment. Tesla's knowledge is a key factor in both the compensatory damages and the punitive damages determination by the second jury:  compensatory damages require a showing not just that Mr. Diaz suffered harm but that Tesla caused that harm, and the punitive damages inquiry turns on whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident," *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).  But as discussed above, the first jury made no particularized findings as to whether or what Tesla knew about any particular incidents of alleged racial harassment, and the Court's instructions permitted it to find liability based on even a single such incident.

Accordingly, evidence concerning the occurrence of any specific incidents, Mr. Diaz's harm from those incidents, and Tesla's knowledge of those incidents are all central and legitimate inquiries in the damages retrial.  As the Court has already stated in denying Tesla's motion for a new trial on liability and damages (Dkt. 365), the second jury will therefore need to review much of the same evidence the first jury considered in order to make its own determination of the existence and amount of any damages.  *Id.* at 11-13.

**B.   Tesla Is Entitled To Elicit Unscripted Testimony Within The Scope Of Testimony Offered At The First Trial**

Mr. Diaz's motion *in limine* no. 2 errs in seeking (Mot. 4-6) to restrict the scope of testimony in the retrial far more narrowly than the Court's ruling that, "[i]n general, evidence regarding different/new incidents and new witnesses will be prohibited." Dkt. 376.  That ruling restricts the

witness list and the incidents on which the parties may elicit testimony, but does not purport to confine the content of witness testimony to the exact metes and bounds of prior testimony. And any such order would be legally unsupported and unworkable.

*First*, Mr. Diaz offers no legal authority that limits counsel to identical questioning of witnesses on a retrial. Each case Mr. Diaz cites addresses a trial court's discretion to "admit or exclude new evidence or witnesses on retrial." *See, e.g.*, *Little v. City of Richmond*, 2015 WL 798544, at *1 (N.D. Cal. Feb. 23, 2015). None supports Mr. Diaz's attempt to narrow the scope of questioning at the retrial beyond the Court's ruling that the parties generally stick to the same witnesses and incidents. Indeed, "the Court cannot script the trial and determine precisely what exact arguments are permissible." *Doe v. Bridges to Recovery, LLC*, 2021 WL 4690830, at *11 (C.D. Cal. May 19, 2021).

While it is true that the Court has instructed Tesla to confine its questioning of the "person most knowledgeable" human resources witness replacing Ms. Heisen to questioning not "materially different" from that of Ms. Heisen (Dkt. 379 at 3:22-4:1), that narrow ruling provides no support for the far broader restrictions Mr. Diaz seeks in his motion *in limine* no. 2 as to ***all*** witnesses. And contrary to Mr. Diaz's baseless suggestion (Mot. 7 n.*), Tesla does not intend to ask the replacement witness about "what remediation efforts Tesla has undertaken *to date*," but rather solely about Tesla's responses to the incidents Mr. Diaz has already asserted. Testimony concerning Tesla's responses to those allegations is relevant and material to the second jury's findings on compensatory and punitive damages.

*Second*, Mr. Diaz's requested relief is unworkable as a practical matter. To limit counsel to the identical questions asked at the first trial, or even to questions intended only to elicit the same testimony offered at the first trial, would require that the Court (and counsel) follow along with a transcript from the first trial, cross-referencing each question. It would require asking the witnesses to recall what exactly they testified to in the first trial two years ago and for counsel to object if a witness deviates, sending the Court back again to the transcripts to make a ruling. The Federal Rules of Evidence already permit parties to question witnesses' prior inconsistent statements through impeachment, which is a sufficient check on inconsistent testimony here. Mr. Diaz's attempt to go

much further through a blanket preemptive ruling on the scope of testimony at the retrial is impracticable and unsupported, and the Court should deny his motion *in limine* no. 2.

## II. THE COURT SHOULD DENY MR. DIAZ'S MOTIONS *IN LIMINE* NOS. 3 AND 4

The Court should also deny Mr. Diaz's motion *in limine* no. 3, which seeks to exclude evidence of Mr. Diaz's poor job performance, and no. 4, which seeks to "limit" the testimony of Joyce Delagrande. Mot. 7, 10.  Because these motions present overlapping issues regarding the relevance of Mr. Diaz's job performance at Tesla, Tesla opposes them together.

Without identifying the specific evidence he seeks to exclude,[1] Mr. Diaz argues that any evidence of his poor job performance at Tesla should be excluded even though admitted at the first trial. To begin with, that argument ignores that admission of this evidence is consistent with this Court's order that "[e]xhibits previously admitted will be admitted in the new trial" (Dkt. 376), and the Court's comment at the Case Management Conference that "I would allow what was admitted before." Dkt. 379 at 3:20-21.

Moreover, Mr. Diaz errs in arguing (Mot. 8) that such evidence "has no bearing on the appropriate amount of compensatory or punitive damages." To the contrary, evidence regarding Mr. Diaz's job performance is directly relevant to the jury's assessment of whether Mr. Diaz suffered compensable harm from racially motivated harassment, or whether the disputes in question and any related emotional distress arose from other sources—such as friction regarding Mr. Diaz's poor work performance and attitude toward co-workers that had nothing to do with race. Causation is key to damages, and Tesla should be permitted to introduce contemporaneous emails, as corroborated by witness testimony, that may demonstrate that Mr. Diaz's repeated performance issues, and not racially motivated attacks against him, resulted in disputes with coworkers that spurred his complaints to Tesla.

Nothing in the first jury verdict precludes such evidence, for nothing in the first verdict conclusively establishes that any specific incident or incidents supported the first jury's findings or

---

[1] Mr. Diaz is likely seeking to exclude certain testimony from Joyce Delagrande and possibly Mr. Martinez, Mr. Romero, and Mr. Jackson relating to Mr. Diaz's job performance, as well as the following documents that could be considered as critical of Mr. Diaz's job performance: Exs. 244, 259, 296, 297, 298, 300, 301, 303, 306, 308, 312, 320, 324, and 325.

caused compensable harm to Mr. Diaz.  As discussed above, while the first jury found that Mr. Diaz was subjected to a hostile work environment, it did not find which specific alleged incidents occurred and could have found that only one incident was sufficient to cause a racially hostile workplace.  On the retrial, therefore, Tesla should be permitted to present evidence of Mr. Diaz's poor job performance to enable the jury to determine whether he suffered harm from incidents that Mr. Diaz asserts support his damages claims:

***October 17, 2015 incident.***  Mr. Martinez testified that his confrontation with Mr. Diaz on October 17, 2015 was precipitated by his receipt of a complaint from one of his colleagues, Hilda Navarro, that she was having a hard time transporting materials because Mr. Diaz was not adequately attending to the elevator.  Declaration of Daniel C. Posner ("Posner Decl.") (Feb. 10, 2023), Ex. A (Trial Tr. vol. 5, 764:2-17, Oct. 1, 2021).  When Ms. Navarro tried to use the elevator herself, Mr. Diaz got "really aggressive" with her, which led Mr. Martinez to confront him, explaining it was a critical time to transport materials and questioning why the problems were occurring.  *Id.* at 765:9-25.  In response, Mr. Diaz said "[t]his is my elevator, and I do things in the way I want," and the two raised their voices with each other.  *Id.* at 766:14-22, 767:8-15.  Mr. Martinez complained to Contract Services Supervisor Ed Romero that Mr. Diaz was "not acting on the professional way with me."  *Id.* Ex. B (Ex. 234).[2]  Mr. Diaz's subsequent complaint to Mr. Romero about their altercation made no mention of the n-word, nor did he mention the n-word during the investigation and interview by nextSource Program Manager Wayne Jackson.  *Id.* Ex. D (Ex. 235); Ex. E (Trial Tr. vol. 2, 267:12-268:7, Sept. 28, 2021).  After Mr. Jackson investigated and concluded it was a "verbal altercation" in which Mr. Martinez and Mr. Diaz were "saying that the other shouldn't speak to them like that," both received verbal counseling regarding appropriate behavior in the workplace.  *Id.* Ex. E (Trial Tr. vol. 2, 270:19-23, Sept. 28, 2021); Ex. F (Ex. 76). All this evidence, including to the extent it relates to Mr. Diaz's job performance, is directly relevant

---

[2]  In fact, on October 2, 2015, just weeks before this confrontation, Mr. Romero reported via email that he had "received a number of complaints from Hilda Navarro" and others regarding Mr. Diaz's "temper, lack of professionalism, bad communication and gossiping about them to other employees," which resulted in a verbal warning.  Posner Decl., Ex. C (Diaz Dep. vol. I, Ex. 6). Tesla seeks to admit this exhibit in the retrial, as it too provides necessary context regarding the circumstances of Mr. Diaz's disputes and Tesla's responses to them.

to whether this incident had any racial component that caused Mr. Diaz any harm or could support a compensatory or punitive damages award against Tesla.

*February 26, 2016 incident.* In a similar circumstance, Mr. Hurtado's dispute with Mr. Diaz three months later on February 26, 2016 was prompted by a complaint about Mr. Diaz failing to adequately attend to the factory elevator. A week before this incident, Mr. Hurtado and others complained to Materials Supervisor Joyce Delagrande that Mr. Diaz was "never there" and "not physically there" at the elevator. Posner Decl., Ex. A (Trial Tr. vol. 5, 724:19-24, 725:13-17, Oct. 1, 2021). Ms. Delagrande emailed Mr. Romero her concern that Mr. Diaz had "no sense of urgency" and struggled to "stay on task" because he was talking to female associates "when he should be at the elevators." *Id.* Ex. G (Ex. 296). In this email, Ms. Delagrande referenced that her complaints about Mr. Diaz were nothing new, had been "previously discussed," and were the "same issues." *Id.* This caused Mr. Romero to meet with Mr. Diaz, "explain[] the concerns" Mr. Hurtado and others had expressed, and warn Mr. Diaz that his performance issues "would more than likely lead to a write up." *Id.* One week later, Mr. Diaz told Mr. Hurtado "to only talk to him if it is related to business because there are 'so many snakes here at Tesla,'" and that "he does not want anyone talking to him, [and if] we want him to do anything we have to email him." *Id.* Ex. H (Ex. 303). Mr. Diaz never mentioned the n-word when recounting to Ms. Delagrande what happened, telling her only that Mr. Hurtado and his colleagues "were threatening [Mr. Diaz] because they say they were going to contact Mr. Romero." *Id.* Ex. A (Trial Tr. vol. 5, 733:10-13, 748:16-749:4, Oct. 1, 2021). Mr. Patterson's contemporaneous written account of these events also made no mention of the n-word. *Id.* Ex. I (Ex. 245). Tesla should be permitted to offer this evidence to dispute that these two claimed incidents involved racially motivated harassment that caused any emotional distress to Mr. Diaz redressable through compensatory damages or that justify punitive damages against Tesla for failing to redress racial harassment.

Importantly, this Court recognized the relevance of evidence regarding Mr. Diaz's work performance before the first trial, denying Mr. Diaz's motion *in limine* (Dkt. 187 at 21) on this same issue. The Court ruled that such evidence is relevant "to the extent that it is offered to explain defendants' decisions or in the context of other conduct." Dkt. 207 at 3. That same reasoning

1  supports the denial of Mr. Diaz's renewed motion *in limine* now.  And Mr. Diaz effectively concedes
2  the relevance of his job performance to the damages retrial by seeking to admit an exhibit regarding
3  his good job performance.  *See* Dkt. 388 at 5 (seeking admission of Ex. 251 in which Ms. Delagrande
4  states that Mr. Diaz "is doing a great job over there!"); Posner Decl., Ex. J (Ex. 251).[3]

5  Finally, on his motion *in limine* no. 4, Mr. Diaz also apparently seeks to preclude Ms.
6  Delagrande from testifying that, based on her close and frequent interactions with Mr. Hurtado, he
7  would not use a word like the n-word.  Mot. 12.  However, such testimony is neither speculative nor
8  improper, as it is premised on Ms. Delagrande's testimony that she interacted with Mr. Hurtado
9  "constantly" on a daily basis, and that "he would never say something like the N-word."  Posner
10 Decl., Ex. A (Trial Tr. vol. 5, 735:1-9, Oct. 1, 2021).  Moreover, Mr. Diaz's counsel did not object
11 to this testimony at the first trial, and as this Court has already ruled, "[t]he parties will be bound by
12 the choices made in the original trial."  Dkt. 376.  Accordingly, the Court should not exclude this
13 part of Ms. Delagrande's testimony either.

14 **III.  THE COURT SHOULD DENY MR. DIAZ'S MOTION *IN LIMINE* NO. 5**

15 The Court should also deny Mr. Diaz's motion *in limine* no. 5, which seeks to exclude
16 evidence or argument that Mr. Diaz did not accuse Tesla of fostering a hostile work environment
17 until after he obtained counsel.[4]  This issue was commented on at the first trial and is both factually
18 supported and relevant to Mr. Diaz's credibility.

19 The evidence shows that the first time Mr. Diaz alleged he was called the n-word by Mr.
20 Martinez and Mr. Hurtado was when he filed his lawsuit in this case.  Multiple witnesses testified
21 that Mr. Diaz had not made any such allegations while working at the Tesla factory.  *See, e.g.*,
22 Posner Decl., Ex. E (Trial Tr. vol. 2, 267:12-14, Sept. 28, 2021 (Mr. Jackson "does not recall" Mr.
23 Diaz saying Mr. Martinez "was calling him the N word at all")); Ex. A (Trial Tr. vol. 5, 744:5-9,
24 Oct. 1, 2021 ("It was never reported to" Ms. Delagrande that Mr. Hurtado or others had called Mr.

---

[3]  At the very least, if Tesla is precluded from introducing evidence of Mr. Diaz's poor job performance, then Mr. Diaz should not be permitted to introduce evidence to show otherwise.

[4]  Although Mr. Diaz frames his motion as seeking exclusion of evidence "disparaging Mr. Diaz's counsel" (Mot. 13), the evidence or argument he actually seeks to exclude does not disparage counsel, and of course Tesla has no intention of doing so.

Diaz the n-word)).  And contemporaneous emails Mr. Diaz and others sent while working at the factory contain no mention of allegations that either Mr. Hurtado or Mr. Martinez called him the n-word.  *See, e.g.*, Posner Decl., Ex. D (Ex. 235); Ex. I (Ex. 245).  As a result, prior counsel for Tesla appropriately and accurately commented that Mr. Diaz had not complained about these allegations until after he hired a lawyer.  *See, e.g.*, *id.* Ex. K (Trial Tr. vol. 1, 47:6-11, Sept. 27, 2021).  A reasonable juror could find that Mr. Diaz's failure to make written complaints about use of the n-word at the factory until he after he left Tesla and obtained counsel shows he was distressed by that issue far less than he argues he is now.  This is all the more so because Mr. Diaz made other complaints while at Tesla, before obtaining counsel, about his working conditions that did not involve any use of the n-word.

Counsel for Mr. Diaz did not object to these comments at the first trial, and as this Court has ruled, "[t]he parties will be bound by the choices made in the original trial." Dkt. 376.  Tesla should be free to again elicit testimony within the scope of the previous testimony, and evidence of when Mr. Diaz first placed Tesla on notice of his allegations is highly relevant and probative at the damages retrial to whether Tesla caused Mr. Diaz compensable harm or acted with the malice required to award any punitive damages.  Tesla could not have failed to timely or adequately respond to Mr. Diaz's allegations if it was not on notice of them.  And to preclude counsel from appropriately commenting on when Mr. Diaz first raised his allegations would unfairly prejudice Tesla.  Mr. Diaz cites no authority to the contrary.  At a minimum, the Court should reserve ruling on this issue until trial.  *See Rathburn v. Knight Transportation, Inc.*, 2019 WL 3716466, at *2 (D. Nev. Aug. 7, 2019) (motion *in limine* to preclude commentary was premature and "the court shall reserve for trial any ruling on possible impermissible tactics or actions by either counsel").

### IV.    THE COURT SHOULD DENY MR. DIAZ'S MOTION *IN LIMINE* NO. 6

The Court should also deny Mr. Diaz's motion *in limine* no. 6, which seeks to admit evidence of Tesla's financial condition as of the time of the first trial, and instead should limit Mr. Diaz to offering the evidence of Tesla's financial condition that he actually presented at the first trial.

The Court can easily dispose of this issue because, as Mr. Diaz acknowledges, "the Court has already ruled on this issue," leaving Mr. Diaz "fully prepared to use the same expert economic

1  report concerning Tesla's financial condition that [he] introduced at the first trial." Mot. 14. Mr.
2  Diaz should be held to this statement and the Court should reject Mr. Diaz's request to use the
3  highest Tesla valuation possible despite Mr. Diaz's concession that the Court's order bars a
4  materially different expert report valuation. But Mr. Diaz's motion fails on its merits too.

5  At the outset, Tesla reiterates its concern (Dkt. 372 at 11) that any finding of punitive
6  damages that fails to take into account evidence of Tesla's current conditions and efforts to
7  remediate racial harassment fails to serve the purpose of punitive damages, which is to encourage
8  remediation and deter unlawful conduct. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996)
9  ("Punitive damages may properly be imposed to further a State's legitimate interests in punishing
10 unlawful conduct and deterring its repetition."). That purpose is not served when the jury is denied
11 evidence of Tesla's own demonstrated efforts to combat racial discrimination. While preserving its
12 objection to the appropriateness of any finding of punitive damages that is based on anything other
13 than the current conditions at Tesla as the time of such award, Tesla understands that the Court has
14 chosen to hold a retrial of damages that excludes evidence of Tesla's current conditions and instead
15 is based on the evidence that was presented at the first trial. Dkt. 376. But if that rule is applied,
16 then it must be applied fairly—meaning neither party should be permitted to flout the Court's ruling
17 by updating evidence from the first trial in a manner favorable only to it.

18 Thus, if Tesla is to be limited to presenting evidence of conditions at the company consistent
19 with the evidence presented at the first trial, then Mr. Diaz should likewise be barred from using any
20 damages calculation other than what he presented at the first trial. Yet Mr. Diaz seeks to present
21 neither the valuation he presented at the first trial, nor even Tesla's current valuation. Instead, he
22 seeks leave to ask the jury to punish Tesla based on its valuation as of October 2021—plainly for
23 no reason other than that it is the highest valuation his experts could identify.

24 Mr. Diaz asserts without explanation that the Court should excuse his procedural violations
25 from the first trial (namely, his untimely disclosure of Tesla's October 2021 valuation) that led to
26 the exclusion of the October 2021 valuation. Mot. 15. But the Court's prior ruling that the parties
27 must be held to their choices at the first trial should not apply asymmetrically only to Tesla. Dkt.
28 379 at 11:6-19. Mr. Diaz argues consistently across his other eight motions *in limine* that the parties

must be bound by the Court's prior orders, including those limiting the scope of evidence to that presented in the first trial; the Court should hold him to the same evidence of Tesla's valuation on which he relied at the first trial.

## V. THE COURT SHOULD DENY MR. DIAZ'S MOTIONS *IN LIMINE* NOS. 7, 8 & 9

Finally, the Court should deny Mr. Diaz's motions *in limine* nos. 7, 8, and 9, which seek to exclude as irrelevant Exhibits 265, 293, and 379 that were admitted in the first trial. Mot. 16-18. All three exhibits are highly relevant to compensatory and punitive damages and the Court should admit them.

### A. The Court Should Again Admit Exhibit 265

Exhibit 265 is an email from Mr. Diaz forwarding Lamar Patterson's resume to a supervisor after Mr. Patterson's cousin, one of Mr. Diaz's coworkers, asked Mr. Diaz to do so. Posner Decl., Ex. L (Trial Tr. vol. 3, 465:5-23, Sept. 29, 2021); Ex. M (Ex. 265). The Court allowed Tesla to use the exhibit to refresh Mr. Diaz's recollection during the first trial about these facts, and it overruled Mr. Diaz's objection to Tesla's questioning of Mr. Diaz about them. *Id.* Ex. L (Trial Tr. vol. 3, 527:20-529:8, Sept. 29, 2021). The Court later admitted the exhibit into evidence without objection. *Id.* Ex. N (Trial Tr. vol. 4, 563:5-564:2, Sept. 30, 2021). Consistent with the Court's ruling that the parties "will be bound by the choices made in the original trial" (Dkt. 376), and for the additional reasons set forth below, the Court should deny Mr. Diaz's motion to exclude Exhibit 265.

*First*, the email is relevant to the jury's assessment of damages because it bears on Mr. Diaz's state of mind, his belief about the environment at the Tesla Fremont factory, and his thoughts about whether Mr. Patterson, the relative of an African-American coworker, should work at the factory. That Mr. Diaz made any effort to assist Mr. Patterson in getting a job at the factory is relevant evidence regarding whether Mr. Diaz believed that African-American workers would be subject to significant and lasting harm from working there, as Mr. Diaz claims. The objective action Mr. Diaz took at the time therefore is highly probative of the extent to which he experienced harm. *See, e.g.*, *Rushton v. Experi-Metal, Inc.*, 2020 WL 7480548, at *10 (E.D. Mich. Dec. 18, 2020) ("Significantly, Plaintiff encouraged his brother to apply for employment with Defendant as late as August, 2017, lending further support to the Court's finding that alleged conduct was not severe or

pervasive."); *Gulitz v. DiBartolo*, 2010 WL 11712777, at *7 (S.D.N.Y. July 13, 2010) ("Plaintiff's own conduct . . . may make it more difficult for him to convince the jury that he subjectively felt hostility, or that he was thereby damaged"); *Anderson v. Durham D & M, L.L.C.*, 2009 WL 585653, at *12 (W.D. Mo. Mar. 4, 2009) ("Plaintiff's own testimony undermines his contention that he subjectively perceived the alleged harassment to be severe.  For example, Plaintiff recommended to his wife that she apply for a position at [Defendant]."), *aff'd*, 606 F.3d 513 (8th Cir. 2010).

***Second***, Mr. Diaz errs in arguing that his own testimony in the prior trial renders this email irrelevant to the question of damages.  To start, the jury has the duty to assess Mr. Diaz's credibility on this point and determine whether to credit his testimony that he "did not refer or recommend Mr. Patterson to work for Tesla" and did "not know[] that Mr. Patterson was Black," and thus that he could not be harmed by a racially hostile environment at Tesla.  Mot. 16-17.  Indeed, when asked during cross-examination if he "thought it would be a good idea to have another person come in to work in [his] work environment that [he] said was a very racist work environment," Mr. Diaz testified he did not want to "deny somebody employment."  Posner Decl., Ex. L (Trial Tr. vol. 3, 528:3-529:13, Sept. 29, 2021).  Mr. Diaz was even more explicit during his deposition, responding "[y]es" to the question whether he "***recommend[ed]*** to Ed Romero that [Mr. Patterson] be hired."  Diaz Dep. vol. I, 143:15-16, May 22, 2018 (emphasis added).  Likewise, a jury is entitled to assess the credibility of Mr. Diaz's testimony that he did not know Mr. Patterson's race when he referred to Mr. Patterson as the "family member" of "[a]nother African-American employee" and confirmed that "Lamar Patterson is African-American."  *Id.* Ex. O (Diaz Dep. vol. I, 143:17-21, 145:4-6, May 22, 2018).  While Mr. Diaz is free to argue to the jury that it should not find such evidence persuasive, such arguments go to weight—not admissibility.  *See Smilovits v. First Solar, Inc.*, 2019 WL 6698199, at *3 (D. Ariz. Dec. 9, 2019) (denying motion *in limine* where plaintiff could argue weight of evidence to jury).

***Finally***, Mr. Diaz fails to show any undue prejudice from admission of Exhibit 265.  Instead, Mr. Diaz asserts prejudice based on the fact that the email might "baselessly suggest that Mr. Diaz's email contradicts his testimony about the existence of a hostile work environment for Black employees and would cause unnecessary juror confusion."  Mot. 17.  But Mr. Diaz's concern that

this email might undercut his claim of harm suffered through exposure to a hostile work environment does not render it unduly prejudicial. Rather, it confirms both that the email is relevant and that the email provides a *proper* basis for the jury to discount Mr. Diaz's claim to damages. Because Rule 403 is concerned only with evidence that will suggest an *improper* basis for a jury's decision, *see* Fed. R. Evid. 403, Advisory Committee's Note, Mr. Diaz fails to identify any ground for excluding Exhibit 265 under Rule 403.

### B. The Court Should Again Admit Exhibit 293

Mr. Diaz likewise makes no plausible argument for excluding Exhibit 293 under Rule 403. This January 28, 2016 email from Edward Romero to Wayne Jackson and Victor Quintero, authorizing a raise in Mr. Diaz's wage from $16 to $18 per hour, was admitted during the first trial pursuant to the parties' stipulation and without qualification. Posner Decl., Ex. L (Trial Tr. vol. 3, 473:15-22, Sept. 29, 2021); Ex. P (Ex. 293). For that reason alone, the Court should admit the exhibit again in the retrial without qualification. *See* Dkt. 376. Mr. Diaz's motion to exclude the exhibit as irrelevant is in any event meritless.

*First*, Mr. Diaz argues the "modest" raise he received is not relevant to his damages (Mot. 17), but the fact that he remained with Tesla after allegedly experiencing multiple incidents of racism by that point, and after receiving only a "slightly higher" wage (*id.*), belies his claim to significant emotional distress damages. For $2 more per hour, Mr. Diaz was willing to remain with the company. A reasonable juror could find this evidence undercuts Mr. Diaz's claimed emotional distress.

*Second*, Mr. Diaz testified during the first trial that he did not report all the racist incidents he allegedly experienced because he was "scared that . . . some of the other supervisors [were] going to retaliate against [him]." Posner Decl., Ex. L (Trial Tr. vol. 3, 540:9-16, Sept. 29, 2021). This purported fear was based on "rumors" that "black employees [were] getting fired" "[i]f they start complaining"—that if "you didn't complain, they loved you," but "the first time you complain, you [were] enemy number one." *Id.* at 540:17-541:3. But as Tesla pointed out, "as of January of 2016, [Mr. Diaz] had complained several times and got a couple of pay increases" (*id.* at 541:4-19), as evidenced by Exhibit 293. Thus, Exhibit 293 directly undermines Mr. Diaz's claim that he

experienced a fear of retaliation each time he made a complaint, and his lack of "fear" is relevant to the credibility of his asserted basis for not reporting complaints to Tesla and to the existence and extent of his emotional distress.

### C. The Court Should Again Admit Exhibit 379

Mr. Diaz also fails to show any undue prejudice from the admission of Exhibit 379, which is Mr. Diaz's son Demetric Di-az's job application, dated October 26, 2015, to work at the Tesla Fremont factory. Posner. Decl., Ex. Q (Ex. 379). While Mr. Diaz asserts that the Court "ruled the testimony" about the job application was "not relevant" (Mot. 18), the Court actually ***overruled*** Mr. Diaz's relevance objection and allowed Tesla to question Mr. Diaz about whether he was aware that his son had re-applied to Tesla just four days after his temporary assignment there ended. Posner Decl., Ex. L (Trial Tr. vol. 3, 508:8-509:3, Sept. 29, 2021). The Court sustained Mr. Diaz's objection to Tesla's questioning only as to whether Demetric Di-az had ever applied to Tesla directly, or if he did so only through a staffing agency. *Id.* at 509:4-8. Those are entirely discrete issues. Thus, again, Mr. Diaz is improperly trying to relitigate an issue the Court already decided. *See* Dkt. 376; Dkt. 379 at 3:20-21.

Mr. Diaz errs in arguing that Exhibit 379 is irrelevant to his damages claim. Mr. Diaz's damages claim is partly premised on an incident in which he allegedly overheard his son's supervisor call his son the n-word, which Mr. Diaz said "broke" him and, he "think[s]," his son too. Posner Decl., Ex. L (Trial Tr. vol. 3, 419:11-420:1, Sept. 29, 2021). Exhibit 379 calls this testimony into question. In particular, if Mr. Diaz knew that, despite this alleged incident, his son remained interested in working at Tesla, then a reasonable juror could conclude that any emotional harm to Mr. Diaz stemming from that incident is non-existent, or at least lower than it would be were Mr. Diaz still under the impression that the incident "broke" his son. Mr. Diaz testified that his son never told him that he had re-applied to work at Tesla. Mot. 18 (citing Trial Tr. vol. 3, 508:18-509:3, Sept. 29, 2021). But Mr. Diaz also testified that that he had "recommended [his son] to work for Tesla," Posner Decl., Ex. L (Trial Tr. vol. 3, 418:12-15, Sept. 29, 2021); that he lived with his son at the time of his son's re-application, *id.* 493:2-24; and that the two had spoken about their experiences working at Tesla, *id.* 484:24-485:5, 506:19-508:7. There is thus good reason for the

jury to find that Mr. Diaz did know about his son's application to Tesla, and in turn, that Mr. Diaz realized his son did not experience as much harm at Tesla as Mr. Diaz may have initially believed—and thus that Mr. Diaz did not experience as much emotional distress by extension.  And even if Mr. Diaz did not have this direct knowledge, the fact that his belief about his son being "broken" by Tesla was wrong would still permit a reasonable juror to decline to award emotional distress damages to Mr. Diaz based on this incident.

Nor is there any basis for Mr. Diaz's unsupported argument about "unfair prejudice" from Exhibit 379 (Mot. 18), as the mere fact the exhibit may call into question Mr. Diaz's assertion of emotional distress damages is not the sort of "unfair" prejudice that might warrant exclusion under Rule 403.

**CONCLUSION**

For the foregoing reasons, Tesla respectfully requests the Court deny Mr. Diaz's Motions *in Limine* Nos. 1-9.

DATED:  February 10, 2023                             By: */s/ Daniel C. Posner*

Daniel C. Posner
Mari Henderson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

Alex Spiro (appearance *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (213) 443-3100

Asher Griffin (appearance *pro hac vice*)
ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*