LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD (SBN 214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:    (415)-453-7352
Facsimile:    (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
balexander@amfllp.com
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:    (310) 394-0888
Facsimile:    (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:    (415) 421-7151
Facsimile:    (415) 362-8064

*Attorneys for Plaintiff Owen Diaz*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN DIAZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.,<br><br>                    Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO TESLA, INC.'S MOTIONS *IN LIMINE* NOS. 1-4** |

# TABLE OF CONTENTS

I.     Opposition to Tesla's Motion *in Limine* No. 1 to Permit Testimony from Witnesses Robert Hurtado and Andres Donet ......................................................................................... 1

   1.     Robert Hurtado should be excluded. ................................................................ 1

   2.     Andres Donet should be excluded. .................................................................... 8

II.    Opposition to Tesla's Motion *in Limine* No. 2 to Exclude Plaintiff's Standard-of-Care Expert Amy Oppenheimer .......................................................................................... 10

III.   Opposition to Tesla's Motion *in Limine* No. 3 to Admit Exhibits 229, 248, 252, and 254. 13

IV.    Opposition to Tesla's Motion *in Limine* No. 4 to Exclude Evidence of Alleged Racist Conduct Not Directed at or Experienced by Mr. Diaz ................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996).............................................................................................19, 20

*Brewer v. City of Napa*,
    210 F.3d 1093 (9th Cir. 2000) ....................................................................................7

*Dugan v. Nance*,
    2013 WL 4479289 (C.D. Cal. Aug. 20, 2013).........................................................23

*Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*,
    2013 WL 3803911 (E.D. Cal. July 19, 2013) ........................................................3, 5

*Galdamez v. Potter*,
    415 F.3d 1015 (9th Cir. 2005) ....................................................................................1

*Grisham v. Philip Morris, Inc.*,
    670 F. Supp. 2d 1014 (C.D. Cal. 2009) ...................................................................23

*Hooper v. Cnty. of San Diego*,
    2020 WL 6565847 (S.D. Cal. Nov. 9, 2020) ........................................................1, 3

*Jones v. Williams*,
    297 F.3d 930 (9th Cir. 2002) ......................................................................................7

*Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*,
    2019 WL 8263440 (N.D. Cal. Nov. 26, 2019) ..........................................................6

*Little v. City of Richmond*,
    2015 WL 798544 (N.D. Cal. Feb. 23, 2015) .................................................. *passim*

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Co.*,
    195 F.3d 765 (5th Cir. 1999) ......................................................................................3

*Mort v. DeJoy*,
    2022 WL 14129778 (E.D. Cal. Oct. 24, 2022) .......................................................5, 6

*Norwood v. Child. & Youth Servs. Inc.*,
    2013 WL 12133879 (C.D. Cal. Dec. 3, 2013) ...........................................................6

*Obrey v. Johnson* (9th Cir. 2005)
    400 F.3d 691 ............................................................................................................18

*Pac. Mut. Life Ins. Co. v. Haslip*,
    499 U.S. 1 (1991)..................................................................................................20, 21

*Philip Morris USA v. Williams,*
    549 U.S. 346 (2007)...........................................................................20, 21, 22, 23

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003)..............................................................................19, 20, 21, 22

*White v. Ford Motor Co.,*
    500 F.3d 963 (9th Cir. 2007) ...........................................................................23

**California Cases**

*Heyne v. Caruso* (9th Cir. 1995)
    69 Cal.3d 1475 ...............................................................................................18

**Other Authorities**

Fed. R. Civ. P. 16.........................................................................................................1, 4

Fed. R. Civ. P. 26.........................................................................................................4, 6

Fed. R. Civ. P. 37.........................................................................................................3, 4

Fed. R. Evid. 403.......................................................................................................12, 16

Fed. R. Evid. 404.........................................................................................................18

I.      <u>Opposition to Tesla's Motion *in Limine* No. 1 to Permit Testimony from Witnesses Robert Hurtado and Andres Donet</u>

This Court has already ruled that "new witnesses will be prohibited" at the retrial on damages. Dkt. 376. Tesla's motion, seeking an exception to the Court's ruling so it may call new witnesses Robert Hurtado and Andres Donet to testify at the retrial, provides no persuasive reason for the Court to reconsider its practical prior ruling, which was consistent with governing law and is equally fair to both parties.

District courts "have the discretion to admit or exclude new evidence or witnesses on retrial." *Little v. City of Richmond*, No. 13-CV-02067-JSC, 2015 WL 798544, at *1 (N.D. Cal. Feb. 23, 2015). In exercising that discretion, courts require a party seeking to admit new evidence on retrial to demonstrate that the exclusion of that new evidence would result in "manifest injustice." *Id.* at *2; *see also Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005); Fed. R. Civ. P. 16(e). Further, "if the moving party knew or should have known that certain witnesses or evidence was necessary at the time of the first trial, then the exclusion of those witnesses during the retrial will likely not be manifestly unjust." *Little*, 2015 WL 798544, at *2 (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Co.*, 195 F.3d 765, 775 n.15 (5th Cir. 1999)); *accord Hooper v. Cnty. of San Diego*, 2020 WL 6565847, at *2 (S.D. Cal. Nov. 9, 2020). That is this case.

1.   <u>Robert Hurtado should be excluded.</u>

Robert Hurtado did not testify at the first trial, was not deposed, was not listed by Tesla as a trial witness, and was not identified by Tesla in its discovery responses. Seeking to undo its prior counsel's strategic choices, Tesla now seeks to call Mr. Hurtado as a witness at the upcoming retrial. But Tesla "knew or should have known that [Mr. Hurtado] was necessary at the time of the first trial" and thus cannot show manifest injustice. *Little*, 2015 WL 798544, at *2. Tesla's request to call Mr. Hurtado is especially improper given that Tesla refused to provide information regarding Mr. Hurtado, including his contact information, throughout discovery..

Tesla's motion is based on its assertion that it "could not have anticipated a need to call Mr. Hurtado [at the first trial] to rebut accusations that Tesla created a hostile work environment" because Mr. Diaz never put Tesla on notice of Mr. Hurtado's importance to Mr. Diaz's case.

Mot. at 4. The record proves otherwise. We begin with Mr. Diaz's complaint, filed in October 2017, which alleged that "Conveyance Supervisor Robert (last name unknown)" gave Mr. Diaz instructions by saying "[N-word], hurry up, press the button," and that "Robert regularly referred to Owen as '[N-word]' and also frequently called him 'boy' in a demeaning tone." Dkt. 1-2 ¶¶ 36-37; Dkt. 57 ¶¶41-42 (amended complaint). These allegations were also explored extensively at Mr. Diaz's three-day deposition, in which Mr. Diaz's harasser "Robert" was mentioned by name 92 times— 65 times of which were by Tesla's counsel.[1]

Tesla's assertion that Mr. Diaz "denied knowing or recalling specific information about his interactions with [Mr. Hurtado]" at his deposition is also false: at his deposition, Mr. Diaz stated that Mr. Hurtado called him the N-word at least 30 times and recounted the content and circumstances of several explicit racist remarks Mr. Hurtado had made to him. Nunley Decl., Ex. A (Owen Diaz Depo.) at 55:18–56:08, 58:01–58:17, 234:03-25.[2] Tesla's knowledge of Mr. Hurtado's importance is further demonstrated by its strategic decision to call Joyce DelaGrande

---

[1] Tesla does not contend it didn't know which "Robert" Mr. Diaz was referring to, and the record is clear that Tesla (unlike Mr. Diaz) was well aware that the harasser Mr. Diaz knew as "Robert" was Tesla supervisor/lead Robert Hurtado. While Mr. Diaz stated at his deposition that he did not know Robert's last name, he provided plenty of information from which Tesla could identify him, including Robert's position, department, race, and the timeframe in which he harassed Mr. Diaz. Nunley Decl., Ex. A (Owen Diaz Depo.) at 56:21–56:22, 308:09–308:18. It seems clear that Tesla knew which Robert it was even prior to the deposition, because its attorneys asked Mr. Diaz on multiple occasions during that deposition if his harasser was Robert Hurtado, and they even asked Mr. Diaz to look at emails from Joyce DelaGrande discussing Mr. Diaz's request that Mr. Hurtado only talk to him about business. *Id.* at 169:18–170:18. If Tesla had any doubt about Robert's identity, it could have asked Mr. Diaz to identify him using photographs, *the same way Tesla asked Demetric Di-az to identify his harassers at deposition. See* Nunley Decl., Ex. B (Demetric Di-az Depo.) at 171:12–175:01.

[2] Tesla also defends its decision not to identify Mr. Hurtado as a witness at trial by asserting a purported inconsistency between Mr. Diaz's deposition and trial testimony regarding whether he complained to Ms. DelaGrande about Mr. Hurtado. Mot. at 4. This makes no sense. The significance of harassment by a supervisor like Mr. Hurtado does not turn on whether the harassment was reported to another supervisor. Moreover, Tesla knew before trial that Diaz *did* complain to Ms. Delagrande, because Ms. DelaGrande (Tesla's own witness) testified about those complaints, and her emails confirmed it. *See* Nunley Decl. Ex. J (Trial Tr. Vol. 5) 5:742:21-25 ("Q. Okay. [Diaz] told you that your associates had threatened him; right? A. Yes. Q. And didn't you have to investigate that? A. Yes."); Nunley Decl., Ex. L (Trial Ex. 298) ("Owen is now here telling me that my associate threatened him[.]").

as the trial witness who could counter Mr. Diaz's allegations by testifying that she worked "constantly" with Mr. Hurtado, that she never heard complaints of him using the N-word or other slurs, and that he "would never say something like that." Nunley Decl. Ex. J (Trial Tr. Vol. 5) 5:735:1-15.

Mr. Hurtado should thus be excluded from the retrial based on the principle expressed by Tesla's own cited case and many others, that Tesla "knew or should have known that [the witness] was necessary at the time of the first trial." *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, No. 1:11-CV-00845-SKO, 2013 WL 3803911, at *2 (E.D. Cal. July 19, 2013); *Little*, 2015 WL 798544, at *2; *Hooper*, 2020 WL 6565847, at *2; *Martin's Herend Imports, Inc.*, 195 F.3d at 775 n.15. Tesla's former counsel made a strategic *choice* not to call Mr. Hurtado—who was and is a Tesla employee—and it must bear the consequences of that choice.

Tesla's request to call Mr. Hurtado should also be denied under Rule 37 and this Court's prior discovery orders, because Tesla *refused*, throughout the entire pre-trial stage of this case, to identify Mr. Hurtado or provide contact information for him.

Tesla failed to identify Mr. Hurtado in its initial disclosures, never supplemented its disclosures to identify Mr. Hurtado, and never included Mr. Hurtado on its pretrial witness list. As a result, Mr. Hurtado has never been deposed. Most egregiously, and contrary to Tesla's claims of good faith, *see* Mot. at 4, Plaintiff's interrogatories specifically requested the names and most recent contact information for all Tesla employees with whom Mr. Diaz had worked, and Tesla never provided Robert Hurtado's name or contact information, notwithstanding its clear knowledge that Mr. Diaz worked with Mr. Hurtado, *see* supra n.1, *even after this Court specifically ordered Tesla to provide contact information for all Tesla employees whom Tesla was aware worked with Mr. Diaz, see* Dkt. 93 at 2. When Plaintiff subsequently sought sanctions against Tesla for this misconduct, Tesla took the position (completely contrary to its current position) that Mr. Hurtado was *not* a person who worked "with or around" Mr. Diaz, and that Mr. Hurtado "may or may not be the same 'Robert' Plaintiff testifies about." Dkt. 156 at 13. The Court denied sanctions but ruled that "[i]f the plaintiffs are able to show that Tesla has concealed identifying information or failed to disclose anyone who was in fact responsive to plaintiffs' discovery requests and my order, ***Tesla will not be permitted to call those individuals as***

*witnesses during trial*. That will become apparent once the parties have exchanged their witness lists prior to the pretrial conference[.]" Dkt. 160 (emphasis added). Therefore, under the federal rules and under the Court's sanctions order, Tesla has long since waived any right to call Mr. Hurtado to testify at trial. *See id.*; Fed. R. Civ. P. 37 ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless.").

Tesla's arguments for allowing Mr. Hurtado to testify are wholly unpersuasive. Tesla contends that calling Mr. Hurtado at retrial would cause no prejudice to Mr. Diaz, but that is plainly untrue. This situation falls within the core area of prejudice that Rules 16 and 37 are designed to prevent—one party concealing or preventing access to a material witness throughout discovery and up to trial, then later attempting to use that witness for its own strategic purposes and without the opportunity for timely discovery.[3] This prejudice is amplified in the context of a retrial to assess damages from misconduct—including by Robert Hurtado—that the liability jury already found. Tesla's theory is that even a last-minute, previously disclaimed witness causes no prejudice to the other party so long as that witness was already known to be important. But if that were correct, then calling belated witnesses on retrial (or at any trial) would be the norm rather than a rarity reserved only for circumstances of "manifest injustice."

Tesla is also wrong to suggest that "[a]llowing Mr. Hurtado to testify will not affect the conduct of the trial." Mot. at 4. If Mr. Hurtado testifies consistently with his declaration, it will likely force the parties to spend significant time litigating *Mr. Hurtado*'s credibility, an issue far removed from the core disputes of the retrial.[4] Plaintiff knows of at least one third-party witness

---

[3] Tesla's suggestion that it will now, at long last, make Mr. Hurtado available for a deposition falls far short of curing this prejudice. Among other problems, the reason Tesla was supposed to identify Mr. Hurtado during the normal discovery period was not only to permit a deposition, but also to allow Plaintiff to test Mr. Hurtado's testimony with written discovery, to conduct an independent investigation of his claims, and to identify potential rebuttal witnesses—an impossible task on the tight timeframe of the upcoming retrial.

[4] Based on his new declaration, moreover, Mr. Hurtado's testimony would be more likely to mislead rather than inform the jury. For instance, Mr. Hurtado lacks foundation for his contemplated testimony about whether Mr. Diaz complained to Ms. DelaGrande, *see* Hurtado

identified but not called at the first trial who would impeach Mr. Hurtado and demonstrate Mr. Diaz's credibility to rebut Mr. Hurtado's proposed new testimony: Lamar Patterson.[5] Mr. Patterson testified in his deposition that he witnessed an incident in the elevator in which Mr. Hurtado was angry with Mr. Diaz and used the N-word. *See* Nunley Decl., Ex. C (Patterson Depo.) at 75:24–77:04. There are undoubtedly other such witnesses as well, who were not identified but whom Plaintiff should be entitled to call as impeachment witnesses if Mr. Hurtado is permitted to testify on retrial despite his previous exclusion. Especially given the retrial's focus on compensatory and punitive damages rather than liability, the far simpler, fairer, and more efficient course is not to create a "Hurtado exception" to the Court's order prohibiting previously undisclosed witnesses on retrial.[6]

Tesla also argues that even if it cannot call Mr. Hurtado as a substantive witness, it should be permitted to call him for "impeachment" purposes because impeachment witnesses need not be disclosed prior to trial. Mot. at 2. Tesla's argument is incorrect, as its own cited cases show. While it is generally true that witnesses whose testimony would be used solely for impeachment need not be disclosed, that rule "does not apply to testimony which also has substantive value." *Mort v. DeJoy*, 2022 WL 14129778, at *1 (E.D. Cal. Oct. 24, 2022) (cited at Mot. at 2); *accord Fresno Rock Taco*, 2013 WL 3803911, at *5 (cited at Mot. at 2). As many courts have explained, "[c]ase law holds that evidence material to the substance of the case— evidence that would tend to prove the truth of a matter to be determined by the jury—must be disclosed even if it could also be considered impeaching with respect to some aspect of a

---

Decl. ¶ 9, and contrary to Mr. Hurtado's sworn declaration (at ¶ 16), there was no testimony at the first trial accusing him of making racist comments in Spanish to anyone. Most significantly, contrary to Mr. Hurtado's outright denial that he ever harassed Mr. Diaz, Mr. Diaz credibly identified Mr. Hurtado by photograph at trial. Nunley Decl. Ex. H (Trial Tr. Vol. 3) 3:412:25– 413:5.

[5] Mr. Patterson was included on Plaintiff's witness list for the first trial, but Plaintiff ultimately did not need to call him.

[6] Tesla's suggestion that allowing Mr. Hurtado to testify will "help ensure that the new [damages] award is not again inflated," Mot. at 4, is both improper and ill-reasoned. Nothing in the Court's remittitur order remotely suggested that the first jury's damages verdict was too large because the jury failed to consider Mr. Hurtado's (or Tesla's) point of view.

witness's testimony." *Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*, 2019 WL 8263440, at *4 (N.D. Cal. Nov. 26, 2019); *see Norwood v. Child. & Youth Servs. Inc.*, 2013 WL 12133879, at *4 (C.D. Cal. Dec. 3, 2013), at *4-5 (explaining rule and collecting cases). Here, Tesla's proposed "impeachment" use of Mr. Hurtado's testimony is identical to its proposed substantive use of that testimony—in Tesla's words, it "would impeach Mr. Diaz's anticipated testimony that Mr. Hurtado supposedly directed racially derogatory words at Mr. Diaz and that Mr. Diaz supposedly complained regarding Mr. Hurtado's alleged harassment to Tesla supervisors who failed to respond." Mot. at 2. This "impeachment" testimony would go to the heart of what appears to be Tesla's planned substantive defense at retrial—that contrary to the first jury's verdict, most or all of the harassment of Mr. Diaz in fact never took place, and therefore damages should be nominal. Consequently, Mr. Hurtado's testimony must be excluded. *See Norwood*, 2013 WL 12133879 (excluding undisclosed witness who similarly would have "impeach[ed] by contradiction").[7]

      In the alternative, Tesla suggests that if it is not permitted to call Mr. Hurtado, it should be entitled to a "curative" instruction. *See* Mot. at 5. There is no basis for such an instruction, and Tesla's proposed instruction is entirely improper. Tesla's proposal to instruct the jury that Mr. Hurtado "could not testify at this trial"—as if he were prevented by illness rather than Tesla's prior litigation strategy and the resulting court ruling—coupled with its prejudicially slanted characterization of his use of the N-word more than 30 times as nothing more than "racially

---

[7] Tesla's argument that Mr. Hurtado should be admitted as an "impeachment" witness also fails for multiple other reasons. *First*, as Tesla's cited cases also explain, undisclosed witnesses cannot testify even for impeachment purposes if the offering party failed to disclose the relevant evidence in discovery, as Tesla did here, *see supra* at 3-4. *See Mort*, 2022 WL 14129778, at *1 ("[I]f evidence that has impeachment value is subject to mandatory disclosure or was requested in discovery, a litigant who fails to reveal such evidence faces having it excluded at trial, or other ramifications.") (citation omitted). *Second*, if Mr. Hurtado is truly an impeachment witness, Tesla provides no explanation why it did not call him to impeach Mr. Diaz at the first trial—certainly, Tesla had ample time remaining to do so. *Third,* the reasons for excluding new witnesses at retrial—impeachment or otherwise—go beyond the principle of timely disclosure under Rule 26, but also include the need for a practical retrial and consistency between the two verdicts. *Fourth*, Tesla's reasoning, if accepted, would blow open the evidentiary doors of the retrial. For example, if Joyce DelaGrande repeats her testimony that she never heard the N-word at Tesla, Plaintiff would be entitled to impeach her by calling numerous other undisclosed Tesla employees who would testify to the word's pervasive use there.

insensitive statements" and its reference to "the credibility or truthfulness of Mr. Diaz's accusations about Mr. Hurtado," obviously invite the jury to draw the conclusion that Tesla was not at all responsible for Mr. Hurtado's failure to testify, that the testimony concerning Mr. Hurtado's repeatedly racists epithets was only minimally significant, and that if Mr. Hurtado had been able to testify, he would have successfully impeached Mr. Diaz's credibility in some unexplained way. Tesla's misleading proposed instruction lacks any basis in law or fact and should be rejected in its entirety. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (parties are entitled to jury only instructions only where the instruction is "supported by law and has foundation in the evidence"). Moreover, Tesla's proposed instruction is merely a biased and overly specific version of the existing credibility instruction. *See* Jury Ins. No. 8 ("The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves."); *Brewer v. City of Napa*, 210 F.3d 1093, 1097 (9th Cir. 2000) (instruction need not be given when existing instructions "fairly and adequately cover[] the issues presented").

Tesla also requests that Plaintiff be prohibited, in closing argument, from "inviting the jury to draw any negative inference based on Mr. Hurtado's nonappearance at the retrial." Mot. At 5. This proposal, too, is improper and unfair. Plaintiff can properly point to Mr. Hurtado's absence at the retrial for the exact same reason he could do so at the first trial—Tesla made the affirmative strategy choice not to call Mr. Hurtado to testify and sought to hide his identity and prevent a deposition of him for the entirety of the litigation until now. The mere fact that Tesla has sought to improperly enlarge the scope of the damages retrial—notwithstanding its prior stated concerns about ensuring consistency between liability and damages under *Gasoline Products*—is not a proper basis for precluding Mr. Diaz from repeating his prior arguments (to which no objections were asserted). The unfairness of Tesla's proposed request is exacerbated by the fact that Tesla is seeking to have it both ways. At the first trial, *Tesla* urged the jury to draw an adverse inference based on the fact that Plaintiff did not call Lamar Patterson to testify. *See* 6:931:11-17. Plaintiff did not file a motion *in limine* to allow Mr. Patterson to testify (as Tesla has done regarding Mr. Hurtado and Mr. Donet) because the Court expressly ruled that "new

witnesses are prohibited." Dkt. 376. It would be grossly unfair to permit Tesla to repeat its empty chair argument while precluding Plaintiff from accurately stating the facts concerning witnesses Tesla could have called had it complied with the discovery rules and the Court's orders.[8]

     2.  <u>Andres Donet should be excluded.</u>

     Andres Donet, a "janitorial employee manager" at Tesla, was on Tesla's witness list for the first trial, but Tesla deliberately chose not to call him. As with Mr. Hurtado, Tesla's strategic decision not to call Mr. Donet at the first trial precludes Tesla from having him testify at the retrial, just as Plaintiff is precluded from calling witnesses at retrial who were on his witness list but did not testify at the first trial.

     Tesla fails to carry its burden of demonstrating that it would suffer manifest injustice if the Court adheres to its prior ruling precluding both sides from calling witnesses they chose not to have testify at the first trial. *Little*, 2015 WL 798544, at *1. The only "manifest injustice" Tesla identifies is "the risk that, absent his testimony, the jury will improperly award damages against Tesla for failing to remove racist graffiti in the bathrooms when that is not true." Mot. at 6. That rationale for carving out a special exception for Mr. Donet plainly fails: if the jury's inability to hear a new witness testify about topics he could have testified about before qualified as "manifest injustice," the testimony of new and undisclosed witnesses would *always* be permitted.

     Tesla does not identify *any* change in circumstances or any other reason why it should be relieved from its prior strategic decision not to call Mr. Donet, other than the fact it now has new counsel. The substance of Mr. Donet's proposed testimony was well known to Tesla before the first trial. If Tesla were right that "Mr. Donet's brief testimony is necessary for the jury to make a fully informed decision in this case," Mot. at 7, it should have called him during the first trial, yet it elected not to use him as a witness despite having ample time to do so.

     Tesla's assertion that Plaintiff would suffer no prejudice from calling Mr. Donet is

---

[8] For this reason, if the Court precludes Mr. Diaz from pointing out Mr. Hurtado's absence to the jury, it should similarly preclude Tesla from making that same argument with respect to Mr. Patterson, since the Court's prior order, evenhandedly applied, also prohibited Mr. Diaz from calling Mr. Patterson to testify at the retrial.

wrong: certainly Plaintiff would be prejudiced by allowing Tesla, but not Plaintiff, to introduce

new witnesses at retrial. Moreover, Mr. Donet's testimony is highly unlikely to meaningfully

assist the jury in making its determination of compensatory and punitive damages, since he lacks

foundation for the testimony Tesla seeks to elicit.

Tesla states that Mr. Donet will testify that "he did not see the graffiti Mr. Diaz described

and that he cleaned up any graffiti he learned about." Mot. at 6. But when Plaintiff explored

these topics with Mr. Donet in the brief 45-minute deposition the Court allowed, Mr. Donet's

memory proved, at best, unreliable. Mr. Donet testified under oath that he never saw graffiti

including the N-word in Tesla's bathrooms, under any spelling of the word, and that he never

saw a swastika. Nunley Decl., Ex. D (Donet Depo.) at 25:33–26:15. Plaintiff's counsel then

showed Mr. Donet an email chain (later marked as Trial Exhibit 109) containing a photo of

bathroom graffiti stating "all [N-words] must die" next to a swastika, and Mr. Donet's

subsequent statement that the graffiti was "found and cleaned up." Mr. Donet expressed

confusion, stated that "I don't recall this," but admitted that the graffiti was "pretty bad." *Id.* at

27:03–31:04. In addition to Mr. Donet's faulty memory, his contemplated testimony that he "did

not see the graffiti Mr. Diaz described and … cleaned up any graffiti he learned about" also lacks

foundation and relevance, because Mr. Donet conceded at his deposition that a "janitorial

company," not himself, was responsible for cleaning up graffiti. *Id.* at 28:03–07.

The Court should also reject Tesla's wholly improper request to limit the evidence and

argument regarding Mr. Donet that was permitted in the first trial. *See* Mot. at 7 (requesting that

the Court preclude Plaintiff from introducing the interrogatory response that was read to the jury

at the first trial, which identified Mr. Donet as the employee responsible for graffiti clean-up, and

from pointing to Mr. Donet's absence from the trial). As the Court stated at the last status

conference, "the record is the record." 1/17/23 Tr. at 12:22. Tesla *chose* not to call Mr. Donet at

the first trial, likely because Tesla recognized that he lacked credibility. It now seeks to eat its

cake and have it too—avoid having Mr. Donet testify (since the Court is likely, based on its prior

order, to deny Tesla's motion) while preventing Mr. Diaz from commenting on Mr. Donet's

absence. Unless the Court wishes to allow *both* parties to expand the scope of evidence at the

second trial—and it is too late for that, given the resulting prejudice and need to conduct full

discovery of both sides' new witnesses—Tesla, like Plaintiff, must live with the consequences of its prior choices.[9]

The Court's prior orders and applicable law prohibit Tesla from calling Mr. Donet to testify at the retrial. If the Court creates an exception to its previous ruling and allows Mr. Donet to testify as Tesla requests, Plaintiff should be permitted to introduce Trial Exhibit 109 to impeach Mr. Donet. *See* Nunley Decl., Ex. E (Trial Ex. 109). That exhibit was excluded from the first trial because it addressed an incident that occurred shortly after Mr. Diaz left Tesla, but it is crucial and directly relevant impeachment evidence to show that Mr. Donet's testimony and memory regarding racist graffiti at Tesla is untrustworthy.

Again, however, the Court has properly limited the damages retrial to the existing witnesses and evidence, and Tesla has offered no reason to make a special exception for Mr. Donet. Tesla's motion should be denied in its entirety.

## II.   Opposition to Tesla's Motion *in Limine* No. 2 to Exclude Plaintiff's Standard-of-Care Expert Amy Oppenheimer

Tesla's motion to exclude Amy Oppenheimer is plainly meritless. As with Tesla's motion to admit Mr. Hurtado and Mr. Donet, it appears that the true purpose of Tesla's motion is to obtain an order precluding Plaintiff's counsel from making the same arguments to the jury that they successfully made at the first trial. That is contrary to the Court's order about the scope of retrial. Tesla's motion should be denied.

Ms. Oppenheimer will testify at the retrial, as she testified at the first trial, about industry standards for investigations and Tesla's failure to meet those standards and even to meet its own standards. Tesla argues that this testimony should be excluded because "her testimony relates exclusively to liability, not damages." Mot. at 7. Tesla does not state why that is, but simply makes the conclusory assertion that her testimony has "no relevance to how Mr. Diaz was harmed by such alleged conduct, including either his past or future emotional distress, or the amount the jury should award as punitive damages in consideration of the degree of reprehensibility of Tesla's conduct towards Mr. Diaz." *Id.*

---

[9] Again, if Plaintiff is precluded from pointing out Mr. Donet's absence, Tesla should be similarly precluded with respect to Lamar Patterson.

Tesla's unreasoned assertion is wrong. Ms. Oppenheimer's testimony is directly relevant to—and important evidence regarding—the amount of punitive damages that should be awarded against Tesla. She testified that Tesla's practices regarding investigating and preventing workplace harassment did not meet the standard of care expected of employers. Tesla is right that Ms. Oppenheimer's testimony pertained in part to liability, but it pertains just as much to punitive damages, and specifically to the reprehensibility of Tesla's conduct. To state the obvious, an employer that subjects its employees to harassment and fails to prevent harassment is particularly blameworthy if, in doing so, it fails to even meet the basic industry standards for preventing and investigating harassment. A company that fails to comply with industry practices and its own policies also needs to be deterred from continuing to engage in conduct that falls as far beneath the standard of care as Tesla's did in this case. For these reasons, Tesla's failure to conduct a properly thorough investigation of Mr. Diaz's complaints, in violation of industry standards and its own purported standards, was a central takeaway of Ms. Oppenheimer's testimony and a core fact supporting the first jury's punitive damages award and, specifically, the amount awarded.

The relevance of Ms. Oppenheimer's testimony is confirmed by the Court's post-trial ruling upholding (subject to remittitur) the first jury's award of punitive damages. In analyzing punitive damages, the Court used reasoning that mirrored Ms. Oppenheimer's testimony. *Compare* Order on Post-Trial Motions (Dkt. 328) at 39 ("[T]he jury could have found that the companies' responses to the written complaints were so inadequate as to imply indifference to the serious problems of harassment in the workplace. … [H]aving a policy on paper and effectively protecting employees from known racial harassment are different. And Tesla's slaps on the wrist—not to mention that it disciplined both Martinez *and* Diaz without viewing tape or interviewing witnesses—undermine its assertions that it did enough.") *with* Nunley Decl. Ex. I (Trial Tr. Vol. 4) (testimony of Amy Oppenheimer) at 4:652:19-22 ("[T]he policies, you know, don't mean much if they are not enforced. In fact, sometimes it – it undermines and sends the opposite message to have a policy that says one thing and then everybody doing something else."), 4:654:18-24 ("[T]here was no action taken other than I think some people being spoken to about joking, a verbal warning, which wasn't for racial harassment because they never made a

finding about that, which they should have. And that tends to trivialize the complaint, and then it makes it harder for people to complain if that's going to be the response that they get."), 4:655:13-16 ("And there was surveillance, apparently, that could have been checked. … [I]t's so rare that you get the video and can really find out what happened. So to not check it when you can makes no sense at all.").

Tesla's sole attempt at argument is its suggestion that Plaintiff failed to ask the Court to give Jury Instruction 33 on retrial, the instruction that includes the sentence, "When an employer becomes aware of potentially harassing conduct, it has a duty to promptly investigate and to take immediate and effective corrective action should it determine that harassment has occurred." Mot. at 7-8. That argument is factually incorrect and legally irrelevant. It is true that Plaintiff did not include former Jury Instruction 33 when it lodged with the Court the initial drafts of its proposed *new* instructions in connection with its January 10, 2023 status report. But Plaintiff did include Jury Instruction 33 and many others in the complete set of proposed jury instructions for the retrial, which Plaintiff shared with Tesla *before* submitting those instructions to the Court and, more significantly, *before* Tesla filed its motion *in limine* making this factually inaccurate argument. (Plaintiff filed that proposed instruction with the Court as scheduled. *See* Dkt. 389).

Jury Instruction 33 will be useful to the second jury because it will inform the jurors about the basis for the first jury's liability findings, enabling the second jury to understand the conduct for which it is assessing compensatory and punitive damages. In any event, whether or not Jury Instruction 33 is given on retrial has no bearing on the relevance and probative value of Ms. Oppenheimer's testimony to the punitive damages question on retrial.

Tesla also suggests that Ms. Oppenheimer should be excluded under Rule 403 because her testimony "would confuse the issues, mislead the jury, waste time, and risk causing unfair prejudice to Tesla from the jury's erroneous perception that Tesla's failure to offer its own expert to respond to Ms. Oppenheimer's irrelevant testimony suggests a weakness in Tesla's damages position." Tesla offers no reasoning for its position, and in particular does not address the clear relevance and importance of Ms. Oppenheimer's testimony to punitive damages. Like its relevance argument, Tesla's Rule 403 argument is conclusory and wrong.

In the alternative, Tesla requests that if Ms. Oppenheimer testifies, the Court should

"mitigate the prejudice to Tesla" by "preclud[ing] Mr. Diaz and his counsel from inviting the jury to draw any negative inference based on Tesla's inability to call a rebuttal expert." Mot. at 8. No law or logic supports Tesla's request, which must be denied. The only "prejudice" to Tesla resulted from its own prior counsel's deliberate decision not to retain an expert of their own, either affirmatively or for rebuttal, to demonstrate that its conduct was reasonable (assuming it could find a credible expert to so testify). It is perfectly fair for Plaintiff to point out the weakness in Tesla's case, just as Tesla has pointed out its perceived weaknesses in Plaintiff's case. Tesla has not sought to admit a rebuttal expert on retrial and cannot do so now. *Little*, 2015 WL 798544, at *2 (no manifest injustice in excluding new experts where "Defendant knew or should have known that both of the proposed experts may have been necessary at the time of the first trial"). In short, the fact that Tesla's punitive damages case is unsupported by expert testimony is not prejudice that the Court has the responsibility to "mitigate"—it is Tesla's own fault.

The motion *in limine* should be denied in its entirety.

### III.   Opposition to Tesla's Motion *in Limine* No. 3 to Admit Exhibits 229, 248, 252, and 254

Tesla's proposal to admit four exhibits on retrial that were not admitted at the first trial should be denied because Tesla has not carried its burden of demonstrating that manifest injustice would result from continuing to exclude them. As with its proposed new witnesses Robert Hurtado and Andres Donet, Tesla was fully aware of these exhibits at the first trial and made a strategic choice not to introduce them (and, in one case, lacked an evidentiary basis for introducing the exhibit). Moreover, these exhibits are cumulative of exhibits already introduced into evidence and have little or no relevance to compensatory or punitive damages.

Three of the exhibits Tesla proposes to introduce (Trial Exhibits 229, 248, and 252) relate to Owen Diaz's role as an elevator lead in assisting with discipline and notifying management of issues with other employees. The fourth, Trial Exhibit 254, concerns Tesla's firing of Rothaj Foster, an employee who threatened Mr. Diaz but did not commit any racial harassment. What all of these exhibits have in common is that (1) that they were on Tesla's exhibit list for the first

trial; (2) they related to issues and theories that were disputed by the parties at the first trial; and (3) Tesla nonetheless chose not to (or failed to) admit them at the first trial. These basic facts are decisive and require the Court to deny Tesla's motion based on the principle, which should apply equally to both sides, that if a party "knew or should have known that certain witnesses or evidence was necessary at the time of the first trial, then the exclusion of those witnesses [or evidence] during the retrial will likely not be manifestly unjust." *Little*, 2015 WL 798544, at *2.

Tesla's attempt to carry its burden of demonstrating manifest injustice fails. Tesla's only rationale for admitting exhibits 229, 248, and 252 is that they show that Mr. Diaz knew how to contact his supervisors in writing. *See* Mot. at 9 ("All three exhibits show that Mr. Diaz had no issue preparing and submitting written complaints on matters as trivial as a colleague's tardiness."). That argument fails for multiple reason.

*First*, Tesla made this exact argument about Mr. Diaz at the first trial, so it could have and should have introduced the exhibits then. *See, e.g.*, Nunley Decl. Ex. F (Trial Tr. Vol. 1) (Tesla's Opening Statement) 1:58:7-10 ("These are the complaints that he made. These complaints are all in writing. He's a very smart man. He's been around the block. At one point in time, according to his resume, he actually ran his own franchise. He knows how things work. The evidence is going to show that when he felt strongly about something, he had no problem documenting it in writing to anyone who would listen.") Nunley Decl. Ex. K (Trial Tr. Vol. 6) (Tesla's Closing Argument) 6:930:6-7 ("Every time he complained, he had the opportunity to complain in writing. He didn't put anything in writing.").

*Second*, these exhibits are plainly cumulative and thus not necessary to make Tesla's point, since two of Mr. Diaz's written complaints about harasser Ramon Martinez are already in the trial record (Trial Exhibits 33, 235).

*Third*, these exhibits have no relevance, or at most only tangential relevance to damages. The first jury already found that Mr. Diaz was harassed and that Tesla knew or should have known about that harassment. E.g., Verdict Form Q. 3b; Jury Ins. No. 32. While Tesla may be entitled at retrial to challenge Mr. Diaz's recollection of specific incidents, new evidence about complaints he made as an elevator lead about routine workplace violations having nothing to with racial harassment are not relevant to showing that any particular instance of racial

harassment did not occur. That Mr. Diaz made three written complaints about non-racist incidents in addition to the two he made about racial harassment has no bearing on whether the additional incidents of racial harassment he complained about orally actually occurred. As Tom Kawasaki's testimony at the first trial illustrated, people frequently do not want to complain in writing about the N-word. Nunley Decl. Ex. F (Trial Tr. Vol. 1) (testimony of Tom Kawasaki) 1:79:16-18 ("I just put 'racial in nature' because I'm not comfortable using those words that were thrown."). While Mr. Diaz *could have* made written complaints, Erin Marconi's testimony made clear that there was nothing improper or inadequate about making oral complaints instead. Trial Exhibit 138 6:18-20.The *number* of written rather than oral complaints Mr. Diaz made has nothing to do with the emotional distress he suffered from the racial harassment he experienced—which the first jury already found Tesla knew or should have known about.

Tesla similarly fails to carry its burden with respect to Trial Exhibit 254, which contains emails reflecting discipline of Rothaj Foster. Tesla's discipline of Foster was raised at the first trial, and Tesla could and should have introduced this exhibit then. *See, e.g.*, Nunley Decl. Ex. K (Trial Tr. Vol. 6) (Tesla's Closing Argument) 6:940:4-11 ("Let's go to the Rothaj Foster incident, which is in November of 2015. … It's a complaint by Mr. Diaz, absolutely. … And if Tesla is going to be held responsible, again, took responsibility, believed Mr. Diaz. And Mr. Foster, who was investigated, Mr. Foster was walked off. Never saw Mr. Foster again."). For the same reason, Trial Exhibit 254 is cumulative and redundant of evidence already admitted. *See, e.g.*, Nunley Decl. Ex. H (Trial Tr. Vol. 3) 3:455:23-456:10 (Mr. Diaz's counsel questioning Mr. Diaz about the incident where Mr. Foster threatened to shoot him).

It bears emphasis *none of these four documents concerns racial harassment.* Exhibits 229, 248, and 252 documents show, to a limited extent, how Mr. Diaz performed his role as a lead with respect to minor problems in other employees' performance, but they show nothing about how Mr. Diaz would have handled being personally subjected to traumatic racist abuse by supervisors and co-workers. Similarly, Exhibit 254 shows how Tesla handled an incident of non-racial threatening behavior directed at a supervisor, but this case is not about Tesla's overall HR practices: it is about Tesla's specific indifference to racial harassment in its factory. See, e.g., Trial Exhibit 138 at 8:1-9:11 (discussing an incident where Tesla mandated sensitivity training

across all shifts after an employee drew breasts on a women's restroom sign). Admitting these irrelevant exhibits will confuse the jury about the relevant issues in violation of Rule 403, waste the parties' and the court's time with multiple mini-trials about the circumstances of irrelevant incidents, and provide no useful information to the jury about Mr. Diaz's emotional distress or Tesla's reprehensible conduct.

Tesla also misrepresents the record in suggesting that any of these documents could be admitted to impeach Mr. Diaz's testimony. Tesla argues that Mr. Diaz's emails would impeach his testimony that he did not have access to Tom Kawasaki or Ed Romero's email addresses. But that mischaracterizes the record. Mr. Diaz testified only that at *some point* when he was being harassed he did not have their email addresses, not that he never had them. *See* Nunley Decl. Ex. H (Trial Tr. Vol. 3) 3:512:16-24 ("At that time I didn't have access to their email. … At some point Mr. Romero gave me his email and told me I could write him and shoot an email to him. And he had gave me, I think it was a paper with a few more email addresses on it."). Tesla also argues that Mr. Diaz's emails could impeach his testimony that "he did not feel comfortable documenting complaints for the more serious alleged misconduct of being called racial slurs." Mot. at 9. That theory of impeachment makes no sense: Mr. Diaz's willingness to report more minor issues in writing does not lessen the likelihood that he would be uncomfortable reporting the use of the N-word in writing. Nunley Decl. Ex. H (Trial Tr. Vol. 3) (Testimony of Owen Diaz) 3:452:19-20 ("I just didn't put it in the email because, you know, like I said, in a workplace, that word is not supposed to be used."). Moreover, with respect to the specific incident Tesla cites, Mr. Diaz explained that he thought the surveillance video would contain audio and capture Ramon Martinez's language for management to hear, so Mr. Diaz did not need to report it. *Id.* at 3:520:25–521:1. In short, Tesla has identified no testimony by Mr. Diaz that its proffered exhibits could be admitted to impeach.

Tesla could have introduced its four new exhibits in the first trial. It has offered no justification for failing to do so, nor any reason (much less a showing of manifest injustice) for the Court to create an exception to its evenhanded rule precluding any new exhibits from either party. Tesla's new exhibits are cumulative and irrelevant to damages, and their admission would prejudice Mr. Diaz, who is properly limited to the exhibits he introduced at the first trial. Tesla's

motion *in limine* should be denied.

### IV.    Opposition to Tesla's Motion *in Limine* No. 4 to Exclude Evidence of Alleged Racist Conduct Not Directed at or Experienced by Mr. Diaz

Tesla's final motion *in limine* asks that the court exclude "testimony in the damages trial that concerns the supposed use of racially derogatory acts, words, or symbols toward other workers that were not personally directed at or experienced by Mr. Diaz," on the ground that this evidence is irrelevant to compensatory damages and "constitutionally barred" with respect to punitive damages. Tesla also seeks to exclude certain of this evidence as hearsay, or on the basis that this Court supposedly previously excluded it. None of Tesla's arguments has merit, and the motion should be denied in its entirety.

In its ruling on the parties' motions *in limine* before the first trial, this Court placed sharp restrictions on the scope of evidence that Plaintiff would be permitted to introduce regarding events of racial harassment experienced by other Tesla employees. For example, the Court entirely excluded the testimony of Tesla employees Melvin Berry, Nigel Jones, DeWitt Lambert, Nathan Fraim, Titus McCaleb, and Jackel Williams, mostly on the ground that these employees worked at Tesla during different time periods, in different parts of the factory, or with different supervisors from Mr. Diaz. Dkt. 207 at 7-9. As a consequence, only a relatively small amount of evidence pertaining to harassment of other employees was admitted, and that evidence was limited to circumstances that were closely connected in various respects to Mr. Diaz's own experience. *See, e.g.*, *id.* at 6 (permitting evidence of Demetric Diaz's harassment, which Mr. Diaz personally witnessed); *id.* at 7 (permitting evidence of Michael Wheeler's harassment, given Wheeler's temporal overlap with Owen, their mutual acquaintance, and their mutual contact with Ramon Martinez). Some of the evidence the Court allowed—such as the testimony of Lamar Patterson, whose work overlapped with Mr. Diaz "in all respects," *id.* at 7—ultimately did not come into evidence. Nonetheless, Tesla's motion seeks an additional massive exclusion to the scope of evidence the second jury will hear, far beyond the Court's prior restrictions: Tesla seeks to limit the testimony of Tom Kawasaki, Wayne Jackson, Ed Romero, Victor Quintero, and Michael Wheeler. But Tesla's arguments go too far and would deprive Mr. Diaz of his right

to a fair trial. These witnesses' testimony is critical to enabling the jury to assess Mr. Diaz's compensatory damages—including regarding the pervasiveness of racial harassment at Tesla at the time Mr. Diaz was there, an issue Tesla intends to dispute—and it is also highly relevant to Tesla's reprehensibility and the need for deterrence, and thus to punitive damages.

Tesla first argues, in a single paragraph, that "[a]ny emotional distress supposedly suffered by workers other than Mr. Diaz at the Tesla Fremont factory based on acts, words, or symbols that were not directed at Mr. Diaz lacks any causal connection to harm to Mr. Diaz, and thus is irrelevant to Mr. Diaz's compensatory damages." Mot. at 13. That breezy assertion is wrong. For one, some of the evidence Tesla seeks to exclude is evidence of specific incidents of racist abuse *of which Mr. Diaz was aware*. For example, Mr. Diaz himself testified about the incident in which feces was placed on Michael Wheeler's golf cart. *See* 3:485:15-17. More generally, as the Court recognized at the last status conference, the evidence Tesla seeks to exclude provides persuasive corroboration of Mr. Diaz's testimony regarding the pervasiveness of the hostile work environment at Tesla—and, in turn, the extent of Mr. Diaz's emotional injuries. *See* 1/17/23 Tr. (the Court: "My memory of what Tesla was referring to as 'Me Too' evidence would go, I would think, to pervasiveness and punitive damages."). *Tesla itself* has recently told the Court that "Mr. Diaz's compensatory damages case turns entirely on the ***extent, degree and magnitude*** of the alleged racial incidents. … [t]he ***severity or pervasiveness*** of the conduct is necessarily probative evidence from which a jury may infer the nature and degree of emotional injury suffered." Tesla's Renewed Motion for New Trial under *Gasoline Products* (Dkt. 359) at 7 (emphasis Tesla's); *see also* F.R. Evid. 404(b). See also Fed. R. Evid. 404(b) ("evidence of other acts are admissible to show opportunity, intent, knowledge, or absence of mistake."); *Obrey v. Johnson* (9th Cir. 2005) 400 F.3d 691, 694-699 (evidence that other employees experienced racial discrimination in promotions admissible to show pattern and practice of discrimination); *Heyne v. Caruso* (9th Cir. 1995) 69 Cal.3d 1475, 1479-1480 (testimony of other employees that employer harassed them admissible to support plaintiff's claim of harassment, to wit as evidence of discriminatory motivation and intent, because it tends to "demonstrate hostility towards a certain group," and to show the employer's "general attitude of disrespect" towards members of the plaintiff's protected class).

Based on the Court's orders before the first trial, the only evidence that was admitted about harassment not experienced by Mr. Diaz was evidence that the Court concluded bore a sufficiently close resemblance—in time, place, and personnel—to Mr. Diaz's own experience of harassment. That evidence was relevant then and remains relevant now, because it supports Mr. Diaz's challenged testimony concerning the frequency, extent, and content of the racist epithets and other acts of harassment comprising the hostile environment at Tesla to which he was subjected. In other words, this evidence will properly assist the jury in assessing the scope of Mr. Diaz's emotional distress and awarding appropriate damages.

Beyond the issue of compensatory damages, *all* of the testimony that Tesla seeks to exclude is relevant and important evidence to the jury's award of punitive damages. Tesla contends that evidence about conduct "not directed at or experienced by" Mr. Diaz is "constitutionally barred from a calculation of punitive damages." Mot. at 13. Tesla is wrong. The case law that Tesla cites stands for the far more limited proposition that defendants cannot be *punished for* injuries inflicted on non-parties. Those same cases clearly explain—in language Tesla omits from its briefing—that there is a crucial difference between limiting *the purposes* for which a jury may consider evidence of the widespread impacts of a defendant's wrongful conduct and precluding *any consideration* of that evidence. The Supreme Court has consistently held that evidence of the impacts of defendants' wrongful conduct on persons other than plaintiff *is* admissible to demonstrate that a defendant's misconduct is repeated or particularly dangerous. The cases make clear that the way to distinguish between the proper and improper use of such evidence is to provide a limiting instruction—which is exactly what the Court did at the first trial—explaining that punitive damages may not be awarded to punish the defendant for injuries suffered by persons other than the plaintiff.

The Supreme Court has long held that the "most important" factor in assessing whether a particular award of punitive damages is consistent with the Due Process Clause is "the degree of reprehensibility of the defendant's conduct." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). Two of the factors that bear on reprehensibility are whether "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others" and whether "the conduct involved repeated actions or was an isolated incident." *State Farm Mut. Auto. Ins. Co. v.*

*Campbell*, 538 U.S. 408, 419 (2003). Tesla's motion acknowledges in passing that these two factors demonstrate that evidence of conduct towards non-parties is relevant to punitive damages. Mot. at 14. But it then goes on to assert the incorrect premise that such evidence is absolutely prohibited by the Constitution, Mot. at 14-16.

Contrary to Tesla's position, the Supreme Court has repeatedly made clear that a judge or jury may permissibly consider evidence of conduct toward non-parties in assessing punitive damages. In *Gore*, for example, the Court explained—in the context of a nationwide pattern of practice by BMW—that "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law. Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance." 517 U.S. at 576–77 (citations omitted); *see also Campbell*, 538 U.S. at 419 (punitive damages may reflect whether "the conduct involved repeated actions or was an isolated incident."); *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21 (1991) (approving "the existence and frequency of similar past conduct" as a factor in assessing punitive damages).[10]

The Court was even more explicit in *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007), on which Tesla relies. There, the Court held that "the Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent." *Id.* The Court was careful to explain, however, that "*a plaintiff may show harm to others in order to demonstrate reprehensibility*." *Id.* at 355 (emphasis added). For example, "[e]vidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public." *Id.*; *see also Campbell*, 538 U.S. at 419 (punitive damages can reflect whether "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"). What a jury may *not* do is "go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties."

---

[10] The Court in *Gore* went on to conclude on the facts of that case that BMW was not in fact a recidivist.

*Philip Morris*, 549 U.S. at 355. Given that this evidence may come in for one purpose but not another, the Supreme Court suggested that the appropriate course is for courts to "provide assurance that juries are not asking the wrong question, i.e., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers." *Id.* In performing this function, courts have "some flexibility to determine what kind of procedures they will implement." *Id.* at 357.

Even aside from the relevance of this testimony to the amount of punitive damages necessary to "punish" Tesla is its relevance to the need to "deter" Tesla from engaging in the wrongful conduct that resulted in the first jury's Section 1981 liability findings. The Supreme Court has repeatedly made clear that an award of punitive damages furthers two separate goals: punishment (or retribution) and deterrence. *See, e.g, State Farm*, 538 U.S. at 416 ("punitive damages … are aimed at deterrence and retribution"), citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc*., 532 U. S. 424, 432, *and Pacific Mut. Life Ins. Co. v. Haslip,* 499 U. S. 1, 19 (1991). The jury cannot reasonably determine the extent to which Tesla's conduct needs to be deterred unless it is permitted to consider evidence demonstrating the full scope and extent of its wrongful harassment of its Black employees at the Fremont factor—not just against Owen Diaz but his co-workers as well. The jury can only determine what conduct to deter if it knows what conduct occurred. To limit the jury's consideration to the racial harassment committed against Mr. Diaz only would deprive it jury of the information it needs to fairly determine how much deterrence is needed. After all, there is no need to deter Tesla from continuing to harm Mr. Diaz, who left Tesla years ago. Only if the jury is informed of the widespread pervasive nature of the racial harassment that occurred throughout Mr. Diaz's employment can it fairly determine the amount of punitive damages that would be sufficient to have the requisite deterrent effect.

The governing case law thus makes lear that, contrary to Tesla's argument, evidence of conduct not directed at Mr. Diaz—such as evidence about the pervasive use of the N-word, and about evidence of other racial harassment at Tesla—is admissible for purposes of the jury's reprehensibility determination. Evidence demonstrating the pervasiveness of racial harassment and racial epithets at Tesla goes both to the *repeated* nature of Tesla's misconduct and to the

*dangerousness* of that misconduct—i.e., the fact that Tesla's indifference towards the plight of its Black employees created an environment in which not just Mr. Diaz, but *all* Black employees at Tesla, were at risk of racist abuse. *See Philip Morris*, 549 U.S. at 357 ("[C]onduct that risks harm to many is likely more reprehensible than conduct that risks harm to only a few."). The evidence Tesla seeks to exclude can properly be admitted for this purpose, as well as for the other purposes discussed above and below, even while it is *not* admitted for the prohibited purpose of encouraging the jury to punish Tesla directly for its conduct toward anyone other than Mr. Diaz. *See id.* at 355.

With the exception of the incident regarding Michael Wheeler's golf cart, Tesla does not contend that the evidence it seeks to exclude is insufficiently similar to the conduct experienced by Mr. Diaz. That is unsurprising, because the limited testimony the Court admitted at the first trial relating to conduct experienced by other witnesses was exclusively evidence that was similar in significant respects to the conduct Mr. Diaz testified about. *See also Campbell*, 538 U.S. at 423 ("[E]vidence of other acts need not be identical to have relevance in the calculation of punitive damages").

With respect to the feces placed on Mr. Wheeler's golf cart, Tesla asserts without explanation that the conduct "bears such little resemblance to the conduct Mr. Diaz complains of that the jury may not consider that incident to assess the proper amount of punitive damages." Mot. at 15. Given Mr. Wheeler's unimpeached and unrebutted testimony that he believed this incident was racially motivated, Tesla fails to explain why this incident should be considered dissimilar to the racial harassment Mr. Diaz faced. While the placement of feces may have been particularly disgusting, the incident bears striking similarity to Mr. Diaz's harassment in multiple respects, including because it was another instance in which Tesla failed to adequately investigate *or to consult available surveillance footage*—thus corroborating Mr. Diaz's complaint that Tesla turned a blind eye to race harassment even when videotaped confirmation of the harassment was readily available. Nunley Decl. Ex. H (Trial Tr. Vol. 3) (Testimony of Michael Wheeler) 3:432:22–434:12. In any event, Mr. Wheeler's testimony should separately be admitted both because it pertains to compensatory damages, *supra* at 18-19, and because Tesla's failure to investigate the incident was part of the evidence of Tesla's indifference and reckless

disregard on which the first jury's liability verdict was based, *infra* at 23-24.

Tesla's cited cases provide no support for its position, and in fact support Plaintiff. Tesla relies on *White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007), for the uncontroversial proposition, established by *Philip Morris*, that juries cannot punish defendants for harm to non-parties. In that case, the district court had refused to give an instruction that the jury could punish the defendant only "for the harm to this plaintiff," and the Ninth Circuit reversed. *Id.* The Ninth Circuit explained, however, that evidence of harm to non-parties *could* be admitted to demonstrate the reprehensible nature of the defendant's conduct, *id.* at 972, and it held that the issue could be resolved through use of a proper limiting instruction, as here. *Id.* at 973 ("On remand, the district court must explain to the jury that although evidence of harm to nonparties may bear on Ford's reprehensibility, any award of punitive damages cannot be used to punish Ford directly for harms to non-parties.") (cleaned up).

Tesla's motion completely fails to acknowledge the possibility of a proper instruction—much less the fact that this Court, in the first trial, already gave the instruction ordered by the Ninth Circuit in *White*. *See* Jury Ins. No. 40 (Dkt. 280) ("In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.").[11]

In addition to demonstrating that Tesla engaged in repeated and dangerous conduct, the evidence of pervasive racial harassment in Mr. Diaz's workplace is *also* relevant to reprehensibility analysis for a separate reason: it helps to establish the nature of the hostile work

---

[11] Tesla's other cited cases provide no greater support to its position. In *Dugan v. Nance*, 2013 WL 4479289, at *1 (C.D. Cal. Aug. 20, 2013), the Court found that practical difficulties in the case made a limiting instruction too difficult, but also concluded that "the proffered evidence concerning defendant Nance is sufficiently dissimilar to the conduct at issue in this case that it is not relevant on the issue of reprehensibility." *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1036-37 (C.D. Cal. 2009), meanwhile, addressed a question of preclusion and rested its decision on the risk of confusion for the jury on the facts of the case, as well as on the redundancy of the evidence sought to be admitted through preclusion.

1   environment, Tesla's awareness of that environment, and its failure to take appropriate remedial

2   action—all of which is highly relevant to the amount of punitive damages that the second jury

3   should award. For example, the testimony of Ed Romero and Victor Quintero that Tesla seeks to

4   exclude demonstrates that management was fully aware of the pervasive use of the N-word at

5   Tesla's facility because multiple workers complained about its use—which goes to the

6   appropriate amount of punitive damages. Similarly, the testimony from Tom Kawasaki and

7   Wayne Jackson about the ubiquitous use of the N-word will corroborate Mr. Diaz's testimony

8   about the workplace atmosphere he experienced, in rebuttal of Tesla's likely strategy of

9   downplaying the extent of the N-word's use to minimize punitive damages. In short, Tesla's

10   motion improperly seeks to exclude evidence that is relevant, constitutionally permissible, and

11   crucially probative of the proper amount of punitive damages.

12        Beyond its general opposition to evidence of conduct directed at employees other than

13   Mr. Diaz, Tesla makes two arguments for the exclusion of specific evidence, neither of which

14   succeeds. First, Tesla suggests that Ed Romero and Victor Quintero's testimony regarding

15   reports they received of the N-word's use should be excluded as double or even triple hearsay.

16   That is incorrect, and it omits crucial context. For starters, none of Tesla's examples

17   demonstrates more than a single level of hearsay, because a declarant's use of the N-word is not

18   admitted for the truth of the matter asserted—it is a verbal act of harassment.[12] Regardless, the

19   only example Tesla references—Trial Exhibit 106, in which an N-word incident was reported to

20   Mr. Romero—comes within a hearsay exception, because it was admitted *solely to impeach* Mr.

21   Romero after he denied having received any complaints related to the N-word, and the Court

22   issued a proper limiting instruction. *See* Jury Ins. No. 5 ("I admitted Exhibit 106 for the limited

23   purpose of your consideration of the credibility of Edward Romero's testimony … I want to

24   remind you that this case is about Mr. Diaz and the work environment that he experienced at the

25

26   _____

27   [12] To illustrate: Tesla argues, "For example, if Mr. Romero is asked whether Mr. Temores and
    another employee said that Mr. Dennis said the n-word, Mr. Diaz must show that each hearsay
28   layer satisfies a hearsay exception or exclusion. None do, let alone all three." Mot. at 16-17
    (citation omitted). Tesla's example reflects only a single layer of hearsay, not two or three. Mr.
    Romero's answer to the question will be hearsay, but Mr. Temores's statement is not hearsay
    because Mr. Dennis's use of the N-word is not being offered for its truth.

Tesla factory, not what others in a different part of the factory experienced.").

Second, Tesla contends the Court should exclude Wayne Jackson's testimony regarding his experience hearing the N-word throughout Tesla's factory, on the basis that the Court's initial *in limine* rulings suggested that such testimony would be excluded unless Tesla opened the door. *See* Mot. at 17. But Tesla raised this exact argument during trial, and the Court took the time to review its *in limine* ruling after Mr. Jackson was asked about hearing the N-word. *See* Nunley Decl. Ex. G (Trial Tr. Vol. 2) (Testimony of Wayne Jackson) 2:223:23–224:23. The Court overruled the objection, concluding that the question was appropriate so long as it was limited to the time Mr. Diaz worked at the factory. *Id.* That ruling was fully consistent with the Court's other rulings throughout the trial, and there is nothing improper about the Court clarifying the application of its *in limine* rulings as the evidence comes in at trial. Furthermore, Mr. Jackson's testimony was relevant and probative: it corroborated Mr. Diaz's testimony about the pervasive use of the N-word at Tesla's factory, a fact that was relevant to liability and is also relevant to compensatory and punitive damages.

For these reasons, Tesla's motion *in limine* should be denied.

Dated:   February 10, 2023

**CALIFORNIA CIVIL RIGHTS LAW GROUP**
**ALEXANDER MORRISON + FEHR LLP**
**ALTSHULER BERZON LLP**


   /s/ Lawrence A. Organ   
   Lawrence A. Organ
   Cimone A. Nunley
   J. Bernard Alexander III
   Michael Rubin
   Jonathan Rosenthal
   Attorneys for Plaintiff
   OWEN DIAZ