LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD (SBN214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:     (415)-453-7352
Facsimile:     (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:     (310) 394-0888
Facsimile:     (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:     (415) 421-7151
Facsimile:     (415) 362-8064

*Attorneys for Plaintiff Owen Diaz*

ALEX SPIRO (appearance *pro hac vice*)
alexspiro@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

DANIEL C. POSNER (SBN 232009)
danposner@quinnemanuel.com
MARI F. HENDERSON (SBN 307693)
marihenderson@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

ASHER GRIFFIN (appearance *pro hac vice*)
ashergriffin@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN DIAZ,<br><br>   Plaintiff,<br><br> v.<br><br>TESLA, INC. DBA TESLA MOTORS, INC.,<br><br>   Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>Date:  February 7, 2023<br>Time: 2:00 PM<br>Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick<br><br>Trial Date: March 27, 2023<br>Complaint Filed: October 16, 2017 |

**TO THE HONORABLE COURT:**

The parties submit this Joint Pretrial Conference Statement

I.     **THE ACTION**

    A.  **Plaintiff's Position**

        **1. Substance of the Action**

This action arises from Plaintiff Owen Diaz's employment with Defendant Tesla, Inc. from June 2015 through March 2016. Mr. Diaz brought suit against Tesla, alleging violations of 42 U.S.C. § 1981 and a California state law claim for negligent hiring, retention, and supervision.

Following trial in October of 2021, the jury found that Tesla had subjected Mr. Diaz to a racially hostile work environment during his employment, including through the repeated use of racial slurs and the display of racist graffiti and drawings in the workplace. Dkt. 301. The jury found that Tesla was responsible for the racial harassment and ratified it by (1) failing to investigate his complaints, and (2) failing to implement effective remedial measures to prevent the harassment from continuing. *Id.*

After the jury returned its verdict, Tesla sought judgment as a matter of law or, in the alternative, a remittitur or new trial. Dkt. 317. The Court denied Tesla's motion for judgment as a matter of law, but offered Mr. Diaz the option of a remitted $15 million damages award or a new trial. Dkt. 328 at 43. Mr. Diaz rejected the remittitur and the Court ordered a new trial solely on the amount of damages. Dkt. 347-8.

        **2. Relief Sought**

Mr. Diaz seeks to recover general and special damages according to proof, including compensatory damages for past and future emotional distress; pre- and post-judgment interest; punitive damages; and costs and attorney's fees.

        **3. Response to Tesla's Position**

For the first time, at 5:02 PM on February 13, 2023, Tesla informed Mr. Diaz's counsel of its position, in essence, that all material facts from the first trial must be retried. That position ignores the specific findings of the first jury and essentially allows Tesla to relitigate every issue

from the first trial.

It is now clear why Tesla has been asserting that the Court should not instruct the jury on the elements of any of the claims decided by the first jury, even though those elements (and crucial definitions) were included in the instructions incorporated into the special verdict form: Tesla wants to avoid the second jury being bound by the first jury's understanding of what meant by its special verdict findings, so it can re-litigate those underlying elements. As the Court will see from Plaintiff's proposed jury instructions, the second jury can only understand the first jury's actual special verdict findings if it is informed about the elements of the claims and definitions that the first jury relied upon.

Tesla is also wrong in its new assertion that the second jury must make a series of "specific findings," e.g., whether incidents of harassment occurred, whether they were racially motivated, and whether they caused harm, as Tesla proposes *infra* at 9. Neither party's proposed instructions, and neither party's proposed verdict forms require such a level of granularity, and of course, the first jury was not required to make such specific findings either.

Plaintiffs also disagree with Tesla's characterization of the Court's January 17, 2023 Order regarding the scope of the retrial, *infra* at 4, because the Court was clear that the scope of evidence at retrial will be limited to the evidence presented at the first trial, subject to any *in limine* rulings to the contrary. Dkt. 376.

**B. Defendants' Position**

**1. The First Jury Made No Specific Findings Of Fact**

Mr. Diaz's characterization of the first jury's findings following the trial in October 2021 is misleading and inaccurate.  While the jury at the first trial found that Mr. Diaz was subjected to a racially hostile work environment by Tesla, the jury did not make any specific factual findings regarding which of Mr. Diaz's allegations they found true or not.  The verdict form from the first trial (Dkt. 301) asked only general liability questions like "Was Owen Diaz subjected to a racially hostile work environment by Tesla, Inc.?"—to which the jury answered simply by checking "Yes."  Moreover, the Court instructed the first jury that "[a] single incident can be

sufficiently severe or pervasive to constitute harassment." Dkt. 280 at 28. Thus, the first jury's finding of a racially hostile environment permits only the inference that the jury found at least one incident that was sufficiently severe or pervasive to constitute harassment. But the first jury verdict was silent on which incident or incidents that was—the jury might have credited some but not other of Mr. Diaz's evidence. The first jury made no specific findings regarding Mr. Diaz's allegations of repeated use of racial slurs, nor did they make specific findings regarding Mr. Diaz's allegations of racist graffiti and drawings.

Moreover, the first jury made no specific findings, as Mr. Diaz alleges above, that Tesla "failed to investigate Mr. Diaz's complaints" or "failed to implement effective remedial measures to prevent the harassment from continuing." As the jury was instructed, "[s]ome of the steps employers can take to prevent harassment from occurring include such things as affirmatively raising the subject, expressing strong disapproval, conducting a timely, thorough, good faith investigation of allegations of harassment of which the Defendant knew or had reason to know, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under federal law, and developing methods to sensitize all concerned." Dkt. 280 at 34. Thus, the first jury's finding permits only the inference that the jury found Tesla failed to take all reasonable steps necessary, but the verdict was silent on which specific steps it failed to take. For example, the jury might have found Tesla indeed conducted a timely investigation but failed to develop appropriate sanctions, or vice versa.

Because the first jury did not make specific findings on the liability issues discussed above, Tesla should be permitted, and indeed has a due process right, to dispute whether specific incidents of alleged harassment occurred, whether they were racially motivated, whether Tesla had knowledge of them, how Tesla responded to them, and whether and to what extent they harmed Mr. Diaz.

**2. The Court Ordered, And Mr. Diaz Elected, A New Trial On Damages, Not Some "Amount Of Damages" That Must Be More Than Zero**

Mr. Diaz's characterization of the Court's order on Tesla's motion for new trial is also misleading and inaccurate.  The Court did not order a trial "solely on the amount of damages," as Mr. Diaz states above.  Rather, the Court ordered a new trial "solely on damages."  Dkt. 348.  As Tesla explains in the Legal Issues section below, and as Tesla argued in the parties' submissions regarding Proposed Verdict Form (Dkt. 385), Proposed Statement of the Case (Dkt. 386), and Joint Proposed and Disputed Jury Instructions (Dkt. 389), by rejecting the Court's remittitur and instead requesting a new trial "on damages," Mr. Diaz has agreed to retry questions regarding his entitlement to and any amount of compensatory or punitive damages.  Like the first jury, the second jury is entitled to award no compensatory damages to Mr. Diaz, or nominal compensatory damages, and no punitive damages.  Nothing about the first jury's finding of Tesla's liability for creating a hostile work environment that will apply on the retrial requires the second jury to award any amount of compensatory or punitive damages.  Nor does the Court's determination that the evidence adduced in the first trial supported some amounts of compensatory and punitive damages require that the second jury award any amounts here.  As discussed more fully below, it would be improper, and a violation of Tesla's Seventh Amendment rights, for the Court to order that the second jury must award at least the amount of compensatory and punitive damages that the Court determined was supported by the evidence from the first trial.  There is likewise no basis for the Court to direct the second jury to award at least some amount of such damages.

As for punitive damages specifically, the Court already determined that the second jury will need to make an independent assessment of whether Mr. Diaz is entitled to punitive damages.  Specifically, in ruling on Tesla's motion for new trial on liability and damages, the Court recognized the distinction between the second jury's task in assessing punitive damages—including its assessment of "whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the plaintiff's rights'"—and the first jury's finding of a hostile work environment (in other words, the liability determination).  Dkt. 365 at 13.  Accordingly, the Court previously concluded that the second jury will need to be instructed on how to determine "whether Tesla acted maliciously, oppressively, or recklessly," and that this determination is "fundamentally different" from the first jury's finding of liability.  Tesla's positions as outlined

here, in its verdict form, its statement of the case, and its jury instructions track the Court's order on Tesla's motion for new trial on liability and damages.  It is erroneous, and contrary to the Court's prior ruling, for Mr. Diaz to seek to preclude the second jury from independently determining whether there is a basis for punitive damages.

### 3. Scope of Retrial

The Court has generally ruled that the scope of this trial will be consistent with the first trial subject to specific exceptions.  *See* Dkt. 376.  Each party has proposed to alter the evidence in certain ways specified in their pending motions *in limine*.  *See* Dkts. 381, 382.  Tesla has set forth its positions regarding those evidentiary issues in its motions *in limine* (Dkt. 381) and its oppositions to Mr. Diaz's motions *in limine* (Dkt. 390), and it incorporates those positions herein by reference.

## II.     FACTUAL BASIS OF THE ACTION

### A.  Undisputed Facts

Mr. Diaz began work at Defendant's Fremont, California facility in June of 2015 as an elevator operator. His team lead was Chartwell employee Tamotsu Kawasaki. In approximately July 2015, Mr. Diaz was promoted to elevator lead and started to be supervised by Tesla Contract Services Supervisor Ed Romero. Romero worked directly for Tesla as of October 12, 2015.

On July 31, 2015, Mr. Diaz complained that a coworker, Judy Timbreza, had called him racial slurs. In October 2015, Mr. Diaz was involved in a verbal altercation with Ramon Martinez. In January 2015, Mr. Diaz complained to Romero about a "racist effigy" that Ramon Martinez had drawn on a bundle of recycled cardboard in the factory. Mr. Diaz's employment at Defendant's factory ended in March 2016.

Following the original trial in this matter, a jury found that (1) Mr. Diaz was subjected to a racially hostile work environment by Tesla, (2) Tesla was a joint employer of Mr. Diaz, (3) Mr. Diaz proved all elements of a hostile work environment caused by a supervisor and by a non-immediate supervisor or coworker, (4) Mr. Diaz proved all of the elements of liability based on civil rights violation in a contractual relationship, (5) Tesla failed to take all reasonable steps

1  necessary to prevent Mr. Diaz from being subject to racial harassment, (6) Tesla's negligent

2  supervision or continued employment of Ramon Martinez caused harm to Mr. Diaz; and (7) that

3  Mr. Diaz is entitled to punitive damages against Tesla for either creating a hostile work

4  environment based on race, violating civil rights in a contractual relationship, and/or failing to

5  prevent harassment based on race in the workplace. Dkt. 301.

6  **B.  Disputed Factual Issues**

7      **1.  Plaintiff's Position**

8         Shortly after Mr. Diaz started working at Tesla, coworker Mr. Judy Timbreza began

9  calling him "porch monkey," "mayate" and "nigger" (the "n-word"). This continued for several

10  weeks. Mr. Diaz complained to his supervisor, Kawasaki. Kawasaki investigated and

11  corroborated Mr. Diaz's complaint. Kawasaki escalated the complaint to his supervisor,

12  Romero—including Kawasaki's finding that witnesses corroborated Mr. Diaz's complaint.

13  Romero subsequently informed his supervisor that no witnesses had corroborated Mr. Diaz's

14  complaint and issued Timbreza a warning for "kidding around excessively."

15         Harassment of Mr. Diaz continued. Ramon Martinez, who had the authority to direct Mr.

16  Diaz's work, called Mr. Diaz the n-word at least 30 times, including telling Mr. Diaz "[n-words]

17  are not shit" and "I hate you, [n-word]," and "go back to Africa." Robert Hurtado, another

18  employee with the authority to direct Mr. Diaz's work, likewise called Mr. Diaz the n-word

19  approximately 30 times and called Mr. Diaz "boy" when directing Mr. Diaz's work. Mr. Diaz

20  saw graffiti in restroom stalls that included the n-word on his second day of work and continued

21  to witness similar graffiti in four different bathrooms in Defendant's factory. He witnessed other

22  racist graffiti including the swastika. Mr. Diaz also witnessed his son's supervisor, Javier

23  Caballero, call his son the n-word.

24         Mr. Diaz repeatedly complained about this harassing conduct, but Defendant took no

25  effective action to stop the harassment from continuing. Mr. Diaz complained to Kawasaki and

26  Romero about use of racial slurs. Kawasaki advised him to avoid the perpetrators. Romero took

27  no action. Mr. Diaz complained to Romero about the graffiti at least three times, but Romero

28  never investigated.

This caused the harassment to escalate. In October 2015, Martinez physically assaulted Mr. Diaz in an elevator while shouting the n-word, balling up his fists, and using threatening language. Mr. Diaz complained to Romero and Kawasaki, saying he did not feel safe around Martinez and asking them to review security footage in the elevator. Romero and Kawasaki did not conduct an investigation, did not interview any witnesses to the interaction between Martinez and Diaz, and failed to review the security footage even though Kawasaki said it was available.

Martinez continued to harass Mr. Diaz, culminating in his creation of a racist drawing on a bale of cardboard, and leaving it for Mr. Diaz to find in January 2016. Mr. Diaz immediately complained to supervisor Michael Wheeler. Wheeler investigated Mr. Diaz's complaint. Martinez admitted drawing the picture. Defendant delegated investigation of the complaint to Chartwell and nextSource. Although nextSource recommended Martinez be terminated, Tesla rejected this suggestion and instead opted to issue a tepid final written warning. At nextSource's urging, Martinez was suspended for three days. NextSource indicated that it needed to consult with Tesla HR before finalizing any discipline. No further action was taken.

Mr. Diaz continued to experience racial harassment, from Hurtado and others, for the remaining two months he worked at Tesla's factory. As a result of the constant harassment and Tesla's tacit endorsement of the unlawful conduct, Mr. Diaz suffered and continued to suffer emotional distress. At issue in this trial is the amount of non-economic and punitive damages to which Mr. Diaz is entitled.

**2.   Defendant's Position**

During the nine months that Mr. Diaz worked at the Tesla Fremont factory, Mr. Diaz made Tesla aware of only two events involving racial slurs.  Mr. Diaz did not make any of his myriad other allegations of racial harassment until after he obtained counsel and filed the instant lawsuit.  Tesla was not on notice of these other allegations while Mr. Diaz worked at the factory. Moreover, these additional, uncorroborated allegations are disputed by witnesses who worked at the factory at the time and contemporaneous emails, as described below.

*July 31, 2015 incident*.  In July 2015, Overnight Shift Elevator Lead Tom Kawasaki

responded to an altercation at the elevators between Mr. Diaz and co-worker Judy Timbreza. Mr. Kawasaki immediately separated the two men and interviewed Mr. Diaz and the witnesses to the incident.  Mr. Diaz and the witnesses reported to him that racial slurs were used, so Mr. Kawasaki immediately sent Mr. Timbreza home and then promptly escalated the complaint to Janitorial and Elevator Supervisor Ed Romero.  Mr. Romero interviewed both Mr. Diaz and the witnesses, who did not report any specific racial remarks made by Mr. Timbreza.  After the interviews were completed, Tesla took corrective action with regard to Mr. Timbreza. Thereafter, Mr. Diaz never worked with Mr. Timbreza again, leaving Mr. Diaz satisfied with Tesla's response.

*October 17, 2015 incident*.  In October 2015, Overnight Shift Recycling Lead Ramon Martinez and Mr. Diaz were involved in a confrontation related to whether Mr. Diaz was adequately attending to the elevator he was supposed to operate.  Mr. Martinez complained to Mr. Romero (then Contract Services Supervisor) that Mr. Diaz was "not acting on the professional way with me."  Mr. Diaz's subsequent complaint to Mr. Romero about their altercation made no mention of any racial component to the altercation or use of the N-word, nor did he mention the N-word during the investigation and interview by nextSource program manager Wayne Jackson.  After Mr. Jackson investigated both received verbal counseling regarding appropriate behavior in the workplace.

*January 21, 2016 incident*.  In January 2016, Mr. Martinez drew a drawing on a cardboard bale in the factory.  Mr. Martinez drew the cartoon in response to another cartoon drawing on the same piece of cardboard as part of a competition among the three shifts— morning, swing, and graveyard—about who could recycle the most cardboard.  When Mr. Martinez was informed that Mr. Diaz was offended by the cartoon drawing, he apologized to Mr. Diaz, and reported what had happened to Mr. Jackson.  Mr. Diaz subsequently reported the drawing to Mr. Jackson and Mr. Romero, who  escalated his complaint.  Chartwell, the staffing agency that hired Mr. Martinez, also launched an investigation and interviewed Mr. Martinez. Within days of the initial complaint, and as a result of the investigation, Mr. Martinez was suspended without pay for three days and given a final written warning.

*February 26, 2016 incident*.  In February 2016, Materials Lead Robert Hurtado and his colleagues complained to Materials Supervisor Joyce Delagrande that Mr. Diaz failed to adequately attend to the factory elevator.  As a result, Ms. Delagrande emailed Mr. Romero with concerns about Mr. Diaz's job performance.  Mr. Romero subsequently met with Mr. Diaz and warned him about his performance issues.  Shortly thereafter, Mr. Diaz had a confrontation with Mr. Hurtado where he told Mr. Hurtado "to only talk to him if it is related to business because there are 'so many snakes here at Tesla.'"  Mr. Diaz never mentioned the N-word when recounting to Ms. Delagrande what happened between him and Mr. Hurtado.

More than a year after leaving Tesla, Mr. Diaz filed the instant lawsuit where he claims that Mr. Martinez and Mr. Hurtado had repeatedly called him racial slurs and that he had reported these allegations while working at the factory.  Multiple witnesses denied that Mr. Diaz made any such allegations while working at the factory.  Contemporaneous emails Mr. Diaz and others sent while working at the factory contain no mention of allegations that Mr. Hurtado or Mr. Martinez called him the N-word.  Mr. Diaz's allegations of racist graffiti in several Tesla bathroom stalls are also uncorroborated.  Multiple witnesses denied ever seeing such graffiti, and the only photographic evidence of such graffiti was taken after Mr. Diaz left the factory.

Finally, contrary to Mr. Diaz's position that the *only* issue in this trial is "the amount of non-economic and punitive damages to which Mr. Diaz is entitled," this jury must make several findings, including: (1) whether specific incidents of alleged harassment occurred, (2) whether they were racially motivated, (3) whether Tesla had knowledge of them, (4) how Tesla responded to them, (5) whether and to what extent they harmed Mr. Diaz, and (6) whether Mr. Diaz is entitled to punitive damages.  Only then can the jury assess what amount of damages, if any, Mr. Diaz is entitled to.

**C.  Statement of the Case**

In their joint filing on February 8, 2023 (Dkt. 386), the parties presented their respective versions of the proposed Statements of the Case to be read to the jury.  The primary difference between them relates to the way the jury should be instructed about the determinations or findings of the first jury and whether the retrial jury must decide whether Mr. Diaz is entitled to

punitive damages.  The parties reproduce below their respective proposed versions of the Statement of the Case, and incorporate by reference their arguments in support of their proposed versions as stated in Docket 386.

**1.  Plaintiff's Proposed Statement of the Case**

Plaintiff Owen Diaz was employed by Defendant Tesla, Inc. from June 2015 to March 2016. He brought a lawsuit against Tesla alleging violations of state and federal law. In a previous trial, it was conclusively determined that Tesla is liable to Mr. Diaz for: (1) intentionally creating a hostile work environment based on race, (2) intentionally failing to prevent racial harassment in violation of federal law, and (3) negligently retaining and supervising one or more of Mr. Diaz's supervisors in violation of California state law.

As a result of these previous determinations of Tesla's liability, Mr. Diaz is entitled to recover from Tesla his past and future non-economic damages, in amounts you will be instructed to determine.

It was also conclusively determined in the previous trial that Tesla's unlawful conduct was conducted with malice, oppression, or in reckless disregard of Mr. Diaz's rights. As a result of those previous determinations, which were based on Tesla's conduct in creating a hostile work environment based on race, violating Mr. Diaz's civil rights pursuant to a contractual relationship, and/or failing to prevent harassment in the workplace based on Mr. Diaz's race, Mr. Diaz is also entitled to recover punitive damages from Tesla.

Tesla's liability in this case has already been determined. You are not permitted to question these findings. Your task, based on the more specific instructions the Court will deliver later in this case, is first to determine the amount of past and future non-economic damages needed to compensate Owen Diaz for the harm that he suffered and will continue to suffer; and second, to determine the appropriate amount of punitive damages necessary to punish and deter Tesla for the harm it caused to Mr. Diaz.

**2.  Defendant's Proposed Statement of the Case**

Plaintiff Owen Diaz was employed by Defendant Tesla, Inc. from June 2015 to March 2016 and brought a lawsuit against Tesla alleging violations of state and federal law.  It was

determined that Tesla is liable to Mr. Diaz for: (1) creating a hostile work environment based on race, (2) failing to prevent racial harassment in violation of federal law, and (3) negligently retaining and supervising one or more of Mr. Diaz's supervisors in violation of California state law.

As a result of these previous determinations of Tesla's liability, you are to determine what, if any, past and future non-economic damages Mr. Diaz is entitled to recover from Tesla.

You are also to determine if Tesla's conduct was malicious, oppressive, or in reckless disregard of Mr. Diaz's rights. If you find that, you will be asked to determine the extent and degree of punitive damages, if any, Mr. Diaz is entitled to recover from Tesla.

Your task, based on the more specific instructions the Court will deliver later in this case, is:

1. First, to determine the amount, if any, of past and future non-economic damages needed to compensate Mr. Diaz for harm caused by Tesla; and

2. Second, to determine whether Tesla's conduct that harmed Mr. Diaz was malicious, oppressive, or in reckless disregard of Mr. Diaz's rights.  If you find it was, then you must determine the extent and degree of punitive damages, if any, necessary to punish and deter Tesla for harm caused to Mr. Diaz.

**D. Stipulations**

The parties previously stipulated to exclude all fact and expert witnesses, except for party representatives, from hearing any fact or expert witness testimony in advance of their own testimony.

The parties previously agreed that, subject to Mr. Diaz opening the door, Tesla will not affirmatively introduce evidence concerning Mr. Diaz's past criminal convictions, his past drug use or his wife's mental health issues (Dkt. 178).

**1. Plaintiff's Position**

The parties previously agreed to stipulate to typically refer to Mr. Diaz as "Owen Diaz" or "Mr. Diaz," and not by first name, except where required to avoid confusion. Plaintiff sought a reciprocal stipulation to refer to Tesla as "Tesla, Inc." rather than the more familiar "Tesla". Defendant refused the reciprocal stipulation and the parties have thus reached an impasse as to both issues.

The parties attempted to reach a stipulation regarding Demetric Di-az's incarceration. Tesla originally proposed a stipulation whereby both parties would be precluded from referring from Demetric Di-az's arrest and incarceration in any context, including testimony from Mr. Diaz, his stepdaughter, and his psychiatric expert linking the incarceration to Tesla's conduct. Plaintiff agreed to the stipulation on the condition that Tesla also be precluded from introducing evidence or testimony regarding potential alternative sources of emotional distress during the time in which Demetric was incarcerated. Tesla rejected the condition and the parties likewise reached an impasse.

### 2. Defendant's Position

During meet and confer conferences in January, Tesla proposed stipulating to prevent the parties from referring to Mr. Diaz by his first name only, except where necessary to avoid confusion.  Counsel for Mr. Diaz agreed, so that Tesla would not need to move *in limine* on this issue.  On Thursday February 9, more than a week after Tesla's motions *in limine* were due, counsel for Mr. Diaz for the first time asserted that they would agree to such a stipulation only if both parties also agreed to refer to Tesla only as "Defendant" or "Tesla, Inc."  Tesla objected to this stipulation, which appears to be an unnecessary *quid pro quo*.  Tesla is now prejudiced by having missed the deadline to move *in limine* to preclude counsel for Mr. Diaz from referring to him by his first name.  Tesla asks that the Court order counsel for Diaz to abide by their prior agreement to call Mr. Diaz by his first name only, except where necessary to avoid confusion.

In addition, prior to the motion *in limine* deadline, the parties agreed to stipulate that the parties would be precluded from introducing evidence or argument concerning Demetric Di-az's criminal conduct, arrest, and incarceration.  However, on Monday, February 13, 2023 at 3:00 pm

counsel for Mr. Diaz for the first time conditioned the stipulation on Tesla being prohibited from referencing or questioning Mr. Diaz about alternative causes for emotional distress he experienced unrelated to Tesla during the time Demetric Diaz was arrested or incarcerated.  The condition that counsel proposes is improper and not consistent with the parties prior agreement.  The improper condition essentially requires Tesla to concede that Mr. Diaz was in fact experiencing harm and that the only potential source of alleged harm was Mr. Diaz's short tenure at the Fremont factory years prior.  Withdrawing the agreement to stipulate weeks after the motion *in limine* deadline has prejudiced Tesla.  Tesla asks that the Court order counsel for Mr. Diaz to abide by their agreement to stipulate to the exclusion of evidence concerning Demetric Di-az's criminal conduct, arrest, and incarceration.

### III.    LEGAL ISSUES:

#### A. Nominal Damages

Tesla has submitted a proposed jury instruction seeking nominal damages.  Dkt 374-2 at 3.  Mr. Diaz has objected to that instruction. Dkt. 389 at 31-32. The parties' positions regarding whether this instruction is appropriate are set forth in the joint jury instruction submission, and summarized below.

#### 1. Plaintiff's Position

Nominal damages are intended to vindicate a plaintiff for deprivations of "certain 'absolute' rights that are not show to have caused actual injury through the award of a nominal sum of money," in recognition of the "importance to organized society that those rights be scrupulously observed." *Cary v. Piphus*, 435 U.S. 237, 266 (1978).

A nominal damages instruction is wholly inappropriate for a damages-only retrial where liability for a constitutional violation and state torts and actual injury stemming from those violations have been conclusively established. As the Supreme Court indicated, nominal damages are available only when defendants' wrongful conduct has caused no "actual injury," and in this case, the first jury conclusively determined that Tesla's state and federal law violations did cause Mr. Diaz to suffer actual injury. *Cary v. Piphus*, 435 U.S. 237, 266 (1978).

The case of *Hazle v. Crofoot*, 727 F.3d 983 (9th Cir. 2013), is instructive. In *Hazle*, the

trial court awarded a prisoner-plaintiff summary judgment on his claims under Section 1983 and then held a two-day trial on the issue of damages. *Id.* at 989. At trial, the jury awarded zero damages, and when the plaintiff moved for a retrial on damages, the Court denied defendant's motion. *Id.*

On appeal, the Ninth Circuit held that the "district judge's finding of liability established that [the plaintiff] suffered actual injury when [his civil rights were violated], and applying the rule that the award of compensatory damages is mandatory when the existence of actual injury is beyond dispute, we hold that the district judge erred in refusing to hold that [the plaintiff] was, as a matter of law, entitled to compensatory damages." *Id.* 991-92.

The court went on to note that "entitlement to compensatory damages in a civil rights action is not a matter of discretion" (*id.* at 992), citing Supreme Court precedent that held: "Compensatory damages ... are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." *Smith v. Wade*, 461 U.S. 30, 52 (1983).

In other words, the "jury is required to consider compensatory damages where liability for an actual injury has been conclusively established." *Zion v. County of Orange*, 2019 WL 8064611 (C.D. Cal. Apr. 17, 2019 at *15). citing *Hazle*, 727 F.3d 983, 992 (9th Cir. 2013). That is precisely the situation presented here.

Following the first trial, the original jury found that Mr. Diaz had established Tesla's liability on both his constitutional claims under 42 U.S.C. § 1981 and his state-law negligent retention claims. Dkt. 301. In awarding Mr. Diaz $6.9 million in past and future non-economic damages, the jury found that Mr. Diaz had suffered an actual injury "as a result of Tesla, Inc.'s unlawful conduct". *Id.* at 3. "[W]hen a plaintiff has indisputably suffered an actual injury in a case such as this, an award of compensatory damages is mandatory.... [The Ninth Circuit] is aware of no cases in which [they] have affirmed a zero-damages verdict when, as here, the existence of actual injury was indisputable." *Hazle*, 727 F.3d at 992. In other words, where, as here, a plaintiff has established liability for a constitutional violation and actual injury, an award of compensatory damages is *mandatory*—not merely permissible. Tesla's argument is,

essentially, that the second jury is entitled to find that Mr. Diaz did not suffer any harm at all—directly contradicting the findings of the first jury, not only as to the Section 1981 claims but as to Mr. Diaz's state law claims as well.

A nominal damages instruction serves only to encourage the jury to award low or no compensatory damages, in violation of established Supreme Court precedent and Mr. Diaz's right to due process and a fair retrial. See *Hazle*, 727F.3d 983 (ordering district court to hold retrial where jury awarded $0 in damages after constitutional violation and actual injury was established as a matter of law). In light of Supreme Court precedent describing compensatory damages as "mandatory" (*Smith v. Wade*, 461 U.S. 30, 52), a nominal damages instruction is both unduly prejudicial to Mr. Diaz and against the weight of established precedent.

The cases Tesla relies on are inapposite. As the Ninth Circuit observed in *Hazle*, some nominal or zero damages verdicts have been upheld in civil rights actions, but "the facts of those cases lent themselves to the conclusion that no actual injury had been suffered by the plaintiff." *Hazle*, 727 F.3d 983, 992 (9th Cir. 2013). For instance, in *Guy v. City of San Diego*, 608 F.3d 582, 586 (9th Cir. 2010), the Ninth Circuit observed that the question on the verdict form inquiring whether the plaintiff was harmed did not distinguish between the defendant police officer's use of lawful force and unlawful force. Thus, the court concluded, the jury could have properly awarded nominal damages, because "the jury could have meant only that some of [the officer's] reasonable actions caused injury, and not necessarily that [the officer's] actions constituting excessive force caused injury." *Id.* at 587. This is readily distinguishable from the instant action: as an essential element of liability on Plaintiff's Section 1981 claim, the jury had to find that Tesla's *unlawful* racially harassing or discriminatory conduct caused Mr. Diaz actual injury. Dkt. 280 at 38.

*Bains LLC v. ARCO Products Co., Div. of Atlantic Richfield Co.*, 405 F.3d 764 (9th Cir. 2005), is likewise inapposite. In that action, the jury awarded plaintiff corporation $50,000 on its breach of contract claim but only $1 in nominal damages on its claim that it suffered lost profits resulting from defendant's race discrimination in violation of Section 1981. *Id.* at 569. The district court observed—and the Ninth Circuit agreed—that the nominal damages award

indicated that "the jury may have found that [the plaintiff's] claimed damages for lost profits were 'not shown with reasonable certainty,'" as required by the jury instructions (and that was the only damages theory available, because corporations cannot suffer emotional distress). *Id.* at 771. Although plaintiffs had presented an economic expert to calculate the corporation's claimed lost profits, that expert "did not offer testimony on how much money [the plaintiff] lost because of the slowdowns caused by [the defendant's] racial harassment." *Id.* at 771. Thus, the Ninth Circuit concluded, the jury could have concluded that defendants acted wrongfully but that the resulting economic damages to the corporate plaintiffs had not been sufficiently proven. *Id.* Because the jury could "reasonably have found no number that it could attach to the [economic] harm], it awarded nominal damages." *Id.* Here, however, Mr. Diaz seeks emotional distress damages, not economic damages, and in light of the first jury's findings the retrial jury would have no basis for finding that Mr. Diaz suffered *no* emotional distress as a result of Tesla's state and federal violations. *See Hazle*, 727 F.3d 983, at 991-92

   *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2013 WL 831528 (N.D. Cal. Jan 10, 2013), likewise has no bearing on the instant action. The defendant in *Brocade* filed post-trial motions seeking judgment as a matter of law or, in the alternative, a new trial after the jury had found it liable on several claims for patent infringement, trademark misappropriation, and interference with contract. On the intentional interference claim under California law, Judge Grewal rejected defendant's argument that the jury's award of nominal damages meant it had not found "resulting damage," an element of the state law claim. *Id.* at \*22. Instead, the court concluded that the jury's decision to award some damages on that claim, even nominal, "reflects the jury's finding that all of the elements of the claim have been met to establish liability." *Id.* at \*23.  As above, the case simply is not on point. Not only is it not precedential, but it simply stands for the proposition that where a jury finds liability but no quantifiable harm, it may award nominal damages only. Here, because the first jury's conclusion that. Diaz suffered actual emotional distress injury as a result of Tesla's unlawful conduct, Dkt. 301 at 2, Dkt. 280 at 38, an award of compensatory damages is mandatory under *Hazle*, 727 F.3d 983 (9th Cir. 2013).

### 2. Defendant's Position

As Tesla explained in the parties' proposed jury instructions filing (Dkt. 389 at 32), the Court gave a nominal damages instruction in the first trial and should do so again.  Like the first jury, the second jury is entitled to award no compensatory damages to Mr. Diaz, or nominal compensatory damages.  Nothing about the first jury's finding of Tesla's liability for creating a hostile work environment that will apply on the retrial requires the second jury to award any amount of compensatory damages.  Rather, Mr. Diaz still needs to prove such damages by a preponderance of the evidence.  *See, e.g.*, Ninth Circuit Model Civil Jury Instruction 5.1 (recognizing preponderance of the evidence standard for proving damages); *Vazquez v. Caesar's Paradise Stream Resort*, 2013 WL 6244568, at *7-8 (M.D. Pa. Dec. 3, 2013) ("[Plaintiff] had the burden of proving these damages by a preponderance of the evidence … to recover compensatory damages under § 1981"); *Irish v. Jewel Food Stores, Inc.*, 2012 WL 619555, at *7-9 (N.D. Ill. Feb. 23, 2012) ("Plaintiff … must prove his damages by a preponderance of the evidence" for § 1981 hostile work environment claim).

Thus, notwithstanding the first jury's finding of liability, the second jury remains entitled to award Mr. Diaz nominal damages if Mr. Diaz fails to prove his compensatory damages by a preponderance of the evidence.  *See, e.g.*, *Guy v. City of San Diego*, 608 F.3d 582, 588 (9th Cir. 2010) (affirming denial of new trial on damages where jury awarded nominal damages despite finding that defendant used excessive force and that plaintiff was injured, because jury was free to find that injury resulted from other than the defendant's excessive use of force); *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 772 (9th Cir. 2005) ("An award of nominal damages does not mean that there were not actual economic damages, just that the exact amount of damages attributable to the improper conduct was not proven.  The court instructed the jury to award nominal damages if it found that ARCO had harmed Flying B in violation of § 1981, but that Flying B failed to prove damages as defined in these instructions.  And that is exactly what the jury did."); *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 2013

WL 831528, at *23 (N.D. Cal. Jan 10, 2013) ("Although small in amount, a nominal damages award still reflects the jury's finding that all of the elements of the claim have been met to establish liability.").

To avoid a nominal damages instruction in the retrial, Mr. Diaz misplaces reliance on a § 1983 case, *Carey v. Piphus*, 435 U.S. 247 (1978), but the Supreme Court simply stated there that a plaintiff must prove mental and emotional distress damages, explaining that "although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused," *id*. at 264.

Likewise, *Smith v. Wade* arose under § 1983 and considered the appropriateness of a punitive (not compensatory) damages instruction, and in any case did not hold that a jury is required to award any amount of compensatory damages or that after proving liability, a plaintiff is absolved from having to prove the amount of compensatory damages to which it is entitled. *See* 461 U.S. 30, 52 (1983) (contrasting predicates needed to support compensatory and punitive damages).

Mr. Diaz is also wrong to rely on *Hazle*, another § 1983 case which required that compensatory damages be awarded for the plaintiff's "loss of liberty" after he was incarcerated in violation of his First Amendment religious freedom rights. *Hazle v. Crofoot*, 727 F.3d 983, 993 (9th Cir. 2013). *Hazle* concerned mandatory compensatory damages "where the jury has found a constitutional violation." *Id.* at 992 (citing *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004)). *Hazle* expressly based its decision on the nature of the constitutional violation, *i.e.*, the plaintiff's loss of liberty, which it found entitled the plaintiff to compensatory damages arising from the common law tradition of "entitlement to damages for the tort of false imprisonment." *Id.* at 992-93 ("The jury simply was not entitled to refuse to award any damages for Hazle's undisputable—and undisputed—loss of liberty.").

Mr. Diaz identifies no similar presumption (or requirement) of compensatory damages for claims founded on emotional distress damages arising from federal statutory violations. Indeed, the difference between a damages entitlement for a violation of a plaintiff's constitutional rights in § 1983 actions, on the one hand, and for a statutory violation under § 1981 or Title VII, on the other hand, is well settled.  *See, e.g.*, *Walker v. Anderson Elec. Connectors*, 944 F.2d 841, 845 (11th Cir. 1991) ("By contrast, this case involves, not a violation of constitutional rights, but merely, a violation of purely statutory rights under Title VII. Nothing in *Carey* mandates the award of nominal damages for statutory violations."); *id.* at 843 n.9 (explaining that only one circuit decision (since vacated by the Supreme Court) "has extended *Carey* beyond the realm of 42 U.S.C. § 1983 by holding that nominal damages are mandatory upon the finding of racial discrimination in the making and enforcement of contracts in violation of 42 U.S.C. § 1981").  And even among constitutional violations, *Carey* does not stand for the proposition that compensatory damages for proven constitutional violations are mandatory.  *See Carey*, 345 U.S. at 264-65 ("More importantly, the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another.").

Mr. Diaz's position also conflicts with the consistent practice of allowing nominal damages awards and instructions relating thereto in cases not involving a loss of liberty.  *See, e.g.*, *Cleveland v. Cnty. of Cochise*, 715 F. App'x 596, 598 (9th Cir. 2017) (affirming award of $1 in nominal damages on § 1983 action); *Bains*, 405 F.3d at 772; *Arizona, Dep't of L., C.R. Div. v. ASARCO, L.L.C.*, 2011 WL 6951842, at *1 (D. Ariz. Sept. 29, 2011*), aff'd sub nom. Arizona v. Asarco LLC*, 543 F. App'x 702 (9th Cir. 2013), *adhered to on reh'g en banc*, 773 F.3d 1050 (9th Cir. 2014) ("[T]he jury found for the plaintiffs on [the] sexual harassment claim, [but] the jury awarded no compensatory damages for past or future emotional distress, and only $1.00 in

nominal damages . . . .").  Accordingly, Mr. Diaz has failed to show that a nominal damages instruction is improper on the retrial.

### B. Punitive Damages

#### 1. Plaintiff's Position

By asking this Court to reopen the issue of its liability for punitive damages, Tesla is once again improperly seeking reconsideration of a prior Court order that the parties and the Court have consistently relied upon for nearly ten months. Fundamental considerations of fairness require the Court to reject Tesla's last-minute ploy.

From shortly after the Court's issuance of its April 22, 2022 Order on Post-Trial Motions, through the litigation over *Gasoline Products* and the past several months of pre-trial document exchanges and meet and confer sessions, the parties have been in full agreement that the upcoming damages-only retrial would be limited to determining the amount of compensatory and punitive damages that Tesla must pay Owen Diaz, not whether Tesla was liable to pay compensatory or punitive damages.

On February 6, 2023, despite having repeatedly confirmed that understanding of the Court's prior rulings (including in its draft jury instructions and statement of the case that Tesla lodged with the Court, Dkt. 374, 374-1, and 374-2), Tesla completely reversed its position, asserting for the first time that the prior jury's finding that Tesla was liable for punitive damages should have no binding effect on the damages-only retrial. In an email sent to Mr. Diaz's counsel, Tesla thus wrote: "[U]pon further review of the Court's order on Tesla's motion for a new trial on liability and damages and the language of your proposed instructions, we have made revisions to proposed disputed instruction nos. 1 and 11 to reflect that the jury on the retrial will make an independent determination about whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the plaintiff's rights.'  (Dkt. 365 at 13.)  We also have revised our joint statement of the case accordingly, and added to our proposed verdict form the question on this issue that was read to the first jury."

Tesla's reversal of position seeks to change everything, including the jury instructions, statement of the case, verdict form, and motions *in limine*—all of which were predicated on the

parties' joint understanding and agreement that the damages jury would be bound by the first jury's findings that Tesla acted with malice, oppression, or in reckless disregard of Mr. Diaz's Section 1981 rights. Tesla's newly revised pretrial documents proceed from the mistaken assumption that the damages jury should be asked to decide whether Mr. Diaz is entitled to punitive damages before even considering the appropriate amount of those punitive damages. Yet Tesla has once again failed to comply with the Court's required procedures, as it not only failed to seek reconsideration of the Court's prior ruling but it has still not presented any legal authority justifying its procedurally improper, untimely, and prejudicial attempt to circumvent the Court's orders rejecting its previous motion for a new trial on liability.

In addition to Tesla's other arguments, it now seems to be reasserting its reliance on *Gasoline Products*, ignoring this Court's prior rejection of those arguments-- both on waiver grounds and on the merits. The case Tesla relies on, *United Airlines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir. 1961), even cites *Gasoline Products*. Tesla should not be permitted to renew those doubly flawed arguments.

> i. <u>The Court's Post-Trial Orders Repeatedly and Consistently State that the Retrial is About Only the Amount of Compensatory and Punitive Damages, Not Liability for Such Damages.</u>

On December 7, 2022, when the Court informed the parties that it was denying Tesla's second motion for a new trial on liability, the Court stated it was "really troubled" by Tesla's "concealed heads, I win/tails, Plaintiff loses" strategy in resting its motion on a theory it did not raise in its prior new trial motion. The Court informed Tesla that its renewed motion was foreclosed by judicial estoppel and is "merely a disguised attempt" to have the Court reconsider that prior motion for a new trial on liability, which the Court had denied. (12/7/22 Transcript at 4.)

Despite this strong admonition, Tesla is once again backpedaling from a prior position after leading Mr. Diaz and the Court astray for months. What Tesla characterizes as its "further review" of the Court's December 12, 2022 order denying its motion for retrial on liability is just another disguised effort to overturn the parties' settled understanding based on the Court's prior

ruling—and this time, the prejudice to Mr. Diaz and the Court is even greater, given Tesla's prior
express acquiescence in the Court's order and the last-minute timing of Tesla's change of
position, which would completely change the nature of the upcoming retrial.

### a.   April 22, 2022 Order on Post-Trial Motions (Dkt. No. 328)

Tesla first sought to challenge the jury's liability findings in November 2021 when it
moved for judgment as a matter of law and for a new trial. The Court *rejected* Tesla's arguments,
holding that "the weight of the evidence amply supports the jury's liability findings." (Dkt. 328,
2:7.) Summarizing the evidence, the Court noted the heinousness of Tesla's conduct: "The
evidence was disturbing. The jury heard that the Tesla factory was saturated with racism. Diaz
faced frequent racial abuse, including the N-work and other slurs. Other employees harassed
him. His supervisors, and Tesla's broader management structure did little or nothing to respond.
And supervisors even joined in the abuse, one going so far as to threaten Diaz and draw a racist
cartoon near his workstation."  (Dkt. 328 at 1:19-23.) However, the Court granted Tesla's
alternative motion for a remittitur (in part)—which was limited to a request for a *reduction* in the
amount of compensatory and punitive damages. (Dkt. 328 at 2:9-17.)[1]

The Court clearly stated in its order that "to the extent that Tesla's argument is that *no*
punitive damages are warranted as a matter of law, I reject it…the jury had a legally sufficient
basis to make *an* award of punitive damages." (Dkt. 328 at 37:17-19.) That ruling has governed
all subsequent proceedings in this case for the past nine months.

Nothing in the reasoning of the Court's order provides any basis for reopening the first
jury's finding that Tesla was liable for punitive damages. The Court analyzed only whether the
punitive damages award was "unconstitutionally large," applying the "guideposts" set forth in
*State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). The Court found that
"Tesla's conduct falls high on the spectrum" of reprehensibility and that "the jury had sufficient
grounds to find that Tesla's actions showed 'an indifference to or a reckless disregard' for Diaz's

---

[1] The Court conditionally denied the motion for a new trial based on Plaintiff accepting the
Court's remittitur, stating that if Plaintiff rejects the remittitur, the Court *would grant a new trial
on damages*. (Dkt. 328, 43:13-19.)

(and others') right to be safe and free from discrimination in the workplace." (Dkt. 328 at 38:18; 39:3-5.) The Court found "Tesla's indifference to Diaz's complaints . . . striking" noting that "attempting to pawn off responsibility for a safe and discrimination-free workplace would seem to be precisely the sort of extraordinary behavior punitive damages are built for." (Dkt. 328 at 38:5; 40:11-12.) The Court also held the evidence "supports a finding that Tesla intentionally built an employment structure that allowed it to take advantage of Diaz's (and others') labor for its benefit while attempting to avoid any of the obligations and responsibilities that employers owe employees." (Dkt. 328 at 40:4-7.)

The Court concluded its analysis by stating that "[d]espite Tesla's attempts to characterize it any other way, its treatment of Diaz—and the treatment of its supervisors and employees (or contractors)—falls high on the reprehensibility scale, requiring a high ratio." (Dkt. 328 at 42: 14-17.) Nothing in this analysis stated or implied that the jury's finding of Tesla's liability for punitive damages should be disturbed. To the contrary, the Court found that the jury's finding of liability for punitive dames was amply supported by the weight of the evidence.

Tesla argues that the Court's determination that substantial evidence supported the jury's finding of liability for punitive damages is irrelevant. Not so. The Court's remittitur—and subsequent new trial order, once the remittitur was rejected—was based entirely on the Court's determination that the *amount* of compensatory and punitive damages awarded by the jury was too high. The Court never suggested that Tesla's *liability* for punitive damages was a question that needed to be retried by a second jury, and the Court's order provides no basis for that conclusion. To the contrary, the Court was unequivocal about Tesla's liability for punitive damages, even if the amount awarded by the first jury was, in the Court's view, excessive. The Court's unmistakable view of the case, as expressed in that ruling, has guided the parties' actions and negotiations for the last 10 months, and Tesla's liability for punitive damages was never in question until this past Monday evening.

To reiterate, there is no reason why the Court would order a retrial on an issue which it did not identify as erroneous in the first trial: that Tesla was liable for punitive damages. The Court did not identify any infirmity in the jury's finding that Tesla acted maliciously,

oppressively, or recklessly—to the contrary, the Court found that Tesla's conduct "falls high on the reprehensibility scale." There is no reason to revisit the first jury's finding on the issue of entitlement to punitive damages, which the parties have never before understood to be within the scope of the retrial.

> b.  June 27, 2022 Order Granting Motion for New Damages Trial (Dkt. No. 348)

After Plaintiff rejected the remittitur of the jury's award of damages, the Court reiterated its holding that "Tesla's motion for judgment as a matter of law and a new trial on liability is DENIED," and ordered "a new trial solely on damages." (Dkt. 348.)

> c.  December 12, 2022 Order Denying New Trial on Liability (Dkt. No. 365)

Despite these clear orders from the Court, on October 14, 2022 Tesla once again moved for a new trial on liability, arguing that liability and damages are "inextricably interwoven." (Dkt. 359.) The Court denied Tesla's motion, pointing out that the Court "had already decided this question," and holding that the motion is judicially estopped, procedurally barred, and fails on the merits. (Dkt. 365 at 1.)

The Court specifically found each of the three factors that courts consider when deciding to invoke judicial estoppel. As the Court pointed out, "the purpose of judicial estoppel 'is to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment…and to prevent improper use of judicial machinery.'" (Dkt. 365 at 3, citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).)

The Court further found that the motion was, at its core, a disguised motion for a new trial on liability—which Tesla had already attempted in its November 2021 motion and the Court had already specifically rejected. (Dkt. 365 at 4:20-24.) Thus, the Court held, Tesla's motion was denied as procedurally barred and it reiterated that "the new trial will be held on damages only." (Dkt. 365 at 7:2-3.)

Finally, the Court held that Tesla's motion for a new trial on liability failed on the merits. The Court found that "it is clear that I may exercise my discretion to hold a new trial on damages only so long as the questions of damages and liability are not so interwoven as to confuse the

jury or prejudice Tesla," and that "based on the facts of this case, the issues of liability and damages are sufficiently distinct and separable as to permit a retrial on damages only." (Dkt. 365 at 10:4-5, 10-13.)

Tesla asserted for the first time in its February 6, 2023 email that the Court's December 12, 2022 order permits the jury to "make an independent determination about whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the plaintiff's rights,'" citing Dkt. 365 at 13. Tesla's position, that Diaz must once again prove malice, oppression, or reckless disregard, ignores the basic substantive findings by the Court outlined above.

Tesla's change of position is purportedly based on its reading of a single paragraph in the Court's order denying Tesla's *Gasoline Products* motion. On page 13 of its Order, the Court stated that "while *Lutz* and *Wharf* specifically discuss separate trials for liability and compensatory damages, the reasoning also applies here to allow retrial of punitive damages without retrying liability" and that "[a]s outlined in the jury instructions, assessing punitive damages requires determining whether the conduct at issue was 'malicious, oppressive or in reckless disregard of the plaintiff's rights." (Dkt. 365 at 13:8-12.) Fairly read in the context of the rest of this order, as well as the Court's other orders repeatedly denying Tesla's attempts to hold a new trial on liability, Plaintiff does not understand the Court's discussion to suggest that the damages-only retrial would also encompass the threshold question of whether Tesla was liable to pay punitive damages—a question the first jury unanimously resolved in favor of Mr. Diaz and that the Court upheld against Tesla's post-trial motions challenges.

In that very same order, the Court specifically rejected Tesla's argument that "federal law 'generally require[s] that the same jury determine both liability for, and the amount of, punitive damages because those questions are so interwoven.'" (Dkt. 365 at 14, fn 9.) The Court found that the unpublished case cited by Tesla for this proposition, *Zender v. Vlasic Foods, Inc.,* 91 F.3d 158 at *5 (9th Cir. 1996), was distinguishable and therefore "does not preclude a retrial on punitive damages alone here." (Id.)

Accordingly, Plaintiff interpreted the Court's discussion to mean simply that the retrial jury's assessment of punitive damages will involve considering the degree of malice, oppression,

1   or reckless disregard—the degree of reprehensibility—not that the retrial jury will be asked to

2   decide whether there was any malice associated with Tesla's conduct. That was Tesla's

3   interpretation of the Court's order, too, up until this week.

4               ii.   <u>Prior to February 6, 2023, Tesla Repeatedly Took the Position—in</u>

5                     <u>Communications with Plaintiff's Counsel and the Court—that the Scope</u>

6                     <u>of the Retrial is Limited to the Amount of Punitive Damages and Not</u>

7                     <u>Plaintiff's Entitlement to Punitive Damages.</u>

8           Tesla asserts without citation or support that entitlement to punitive damages is "a

9   damages issue" and "not a liability issue."  This contention is utterly disingenuous in light of

10  Tesla's communications with Plaintiff's counsel and the Court prior to February 6, 2023, which

11  clearly demonstrate its agreement that the damages-only retrial would assume entitlement to

12  punitive damages.

13          The Court's December 7, 2022 Minute Order denying Tesla's Motion for a New Trial

14  ordered the parties to engage in a "robust discussion concerning the retrial and to present their

15  areas of agreement and dispute in a Joint Case Management Statement." (Dkt. 364.) Since then,

16  the parties have done exactly that—they have robustly debated the scope of the damages-only

17  retrial. Throughout that debate, one thing has remained constant: counsel for both Mr. Diaz and

18  Tesla shared their mutual, repeatedly reaffirmed understanding that the scope of retrial would be

19  limited to the appropriate *amount* of compensatory and punitive damages, not Mr. Diaz's

20  entitlement to those damages.

21          Tesla's previously proposed Statement of the Case, Jury Instructions, and Verdict Form

22  all clearly demonstrate Tesla's understanding and acceptance of the fact that the scope of retrial

23  would encompass the *amount* of punitive damages, not whether Tesla is liable for punitive

24  damages.

25          Tesla's January 16, 2023 Proposed Statement of the Case reiterates the first jury's finding

26  that Tesla's conduct warranted an award of punitive damages. It reads: "It was also determined

27  that Tesla's unlawful conduct was conducted with malice, oppression, or in reckless disregard of

28  Mr. Diaz's rights. As a result of those previous determinations, you will be asked to determine

the extent and degree of punitive damages, if any, Mr. Diaz is entitled to recover from Tesla."
(Dkt. 374-1 Exhibit A.) By asserting that the jury must "determine the extent and degree of
punitive damages" Tesla properly acknowledged the first jury's previously uncontested finding
that Tesla is liable for punitive damages.

Tesla's Proposed Jury Instructions also demonstrate its understanding that only the
amount of punitive damages, and not its liability for punitive damages, will be at issue in the
retrial. Tesla did not propose an instruction asking the jury to determine whether Tesla's conduct
was "malicious, oppressive or in reckless disregard of plaintiff's rights." To the contrary, Tesla
proposed a single jury instruction regarding punitive damages, focusing the jury's attention on
the *amount* of punitive damages only: "Mr. Diaz has the burden of proving by a preponderance
of the evidence the amount of punitive damages that should be awarded. You must use reason in
setting the amount of punitive damages . . ." (Dkt. 374-2 Exhibit B.) Tesla's redlined versions of
Plaintiff's Proposed Statement of the Case and Proposed Jury Instructions further confirm that
Tesla did not previously seek to challenge the parties' understanding that Mr. Diaz's entitlement
to punitive damages has already been definitively determined, Instead, Tesla it proposed *new*
*language* affirming Diaz's entitlement to punitive damages: "It has also been found that Mr.
Diaz is entitled to recover punitive damages." (Dkt. 374-4, Ex. D (redline of Plaintiff's Proposed
Jury Instructions)).

Tesla's January 31, 2023 proposed verdict form perhaps most clearly demonstrates
Tesla's previous understanding that the scope of retrial is limited to the *amount* of damages. The
proposed form does *not* ask the jury to consider whether Tesla's conduct was malicious,
oppressive, or in reckless disregard of the plaintiff's rights." Nor should it have, because that
question was already resolved by the first jury and that portion of the verdict was upheld by this
Court. Instead, Tesla asks just a single question regarding punitive damages: "What amount of
punitive damages do you award to Owen Diaz? $_____" (2023.01.31 Tesla's
Proposed Jury Verdict Form). Clearly, through at least January 31, 2023, Tesla understood that
the scope of retrial did not include a second jury finding regarding whether Tesla was liable for
punitive damages.

Tesla's Motions *in Limine*, which it filed on February 3, just three days before Tesla's about-face, also proceed from the assumption that Tesla's liability for punitive damages was already resolved—and in none of the exchange of drafts and meet and confer discussions about those MILs did Tesla even hint at its upcoming change in position (or put Plaintiff on notice that he might have to prepare an additional MIL of his own to address the issue).

Significantly, Tesla's Motion *in Limine* No. 4 uses the previously-unchallenged damages-only limitation at retrial as a sword to argue for exclusion of Diaz's "me too" evidence, asserting: "Evidence of conduct not directed at or experienced by Mr. Diaz is constitutionally barred from a calculation of punitive damages." (Dkt. 381 at 13:3-14.)  Addressing this argument to the Court during the most recent status conference, Tesla's counsel specifically represented to the Court that because the scope of retrial was limited to "the amount of damages" (as opposed to Diaz's entitlement to damages) Diaz's "me too" evidence must be barred:

> MR. POSNER: Understood. And the other issue that I heard Your Honor say is that the "Me Too" evidence would likely go to pervasiveness for purposes of reprehensibility. We do think the law draws a pretty clear distinction, a clear distinction between the admissibility and the relevance of evidence of harm to others with respect to the threshold determination of reprehensibility and whether there should be punitive damages on the one hand and, on the other hand, the amount of punitive damages. **And so we made our pitch before that this trial, because of the overlapping evidence between liability and damages, should revisit the findings of liability. We're moving past that. But given that this trial now is limited to damages, the amount of damages, we feel the law is clear that that evidence doesn't come in at all.**

(1/17/23 Transcript at 8:9-23.) (Emphasis added.) While Plaintiff vehemently disagrees with Tesla's assertion that "me too" evidence should be excluded on this basis, this colloquy demonstrates Tesla's cynical willingness to disavow previously accepted positions when convenient. Tesla should be bound by its unequivocal representation to the Court—that the retrial is limited to "the amount of damages." Its repeated shift of position based on the

exigencies of the moment should not be countenanced, just as it was not countenanced the last time Tesla tried to obtain reconsideration of the Court's post-trial orders while pretending to be doing something else entirely.

For all of these reasons, Tesla's last-minute effort to re-open the issue of its liability for punitive damages, which is an improper motion for reconsideration of the Court's post-trial rulings and completely inconsistent with the parties' joint understanding of those rulings for the past 10 months, should be rejected.

### 2. Defendant's Position

After Mr. Diaz rejected this Court's remittitur of the first jury's punitive-damages award and elected a retrial on damages, this Court ruled that the entire punitive-damages issue (amount **and** predicate) would be retried. That was one of the principal reasons the Court gave for denying Tesla's motion for a new trial on liability in addition to damages: Tesla's Seventh Amendment rights would not be violated by its inability to revisit the evidence on liability because the Court would allow it to argue the punitive-damages predicate. The Court should reject Mr. Diaz's attempt to obtain a directed verdict in the second trial on some positive amount of punitive damages, for at least the following reasons.

*First*, Mr. Diaz mischaracterizes the case history, including the Court's orders, on the issue of punitive damages. It is undisputed that after instructing the first jury on liability (Dkt. 280 at 26-38), the Court properly instructed it on damages issues (*id.* at 39-42). After instructing the jury on the burden and standard of proof for damages and Mr. Diaz's duty to mitigate damages (*id.* at 39-40), and just before instructing it on nominal damages (*id.* at 42), the Court instructed the jury on punitive damages. *Id.* at 41. Adopting the Ninth Circuit's model civil jury instruction on punitive damages, *see* Model Civ. Jury Instr. 9th Cir. No. 5.5 (2017), the Court correctly instructed the first jury that "[t]he plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded . . . and, if so, the amount of any such damages," that it "may award punitive damages only if [it] find[s] that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights," and that "[i]t is not sufficient that [it] find[s] the defendant's conduct to

be only negligent." Dkt. 280 at 41.  The Court then provided the jury with a verdict form asking the jury first whether it found Tesla liable to Mr. Diaz (Dkt. 301 at 1-2), and second, under a heading titled "**DAMAGES**," what compensatory damages Mr. Diaz sustained.  *Id.* at 3.  After questioning the jury on compensatory damages, under a heading titled "**PUNITIVE DAMAGES FOR CIVIL RIGHTS CLAIMS**," the Court emphasized its jury instruction that the jury "may only award punitive damages . . . if [it] find[s] that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights."  *Id.*  The Court then questioned the jury whether it "find[s] by a preponderance of the evidence that Owen Diaz is entitled to punitive damages," and, if so, "[w]hat amount of punitive damages [] [it] awards."  *Id.* at 3-4.  Tesla's proposed jury instructions and verdict form are consistent with the Court's instructions and verdict form in the first trial; Mr. Diaz's are not.

Mr. Diaz errs in arguing the Court's rulings on Tesla's post-trial motions mandate that the second jury accept the first jury's finding on the punitive-damages predicate.  But that would violate Tesla's Seventh Amendment rights, and in fact, the Court held the opposite.  After the close of evidence, Tesla moved for judgment as a matter of law under Fed. R. Civ. Pro. 50(a).  Dkt. 282.  The Court denied Tesla's motion.  After the jury answered "Yes" to the question whether Tesla's "conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights" and returned a $130 million punitive-damages award (*id.* at 4), Tesla moved again for judgment as a matter of law, a new trial, or remittitur.  Dkt. 317.  Tesla argued, among other things, that no reasonable jury could have found Tesla's conduct was intentional or malicious (as opposed to an omission or negligent) and that the jury's punitive-damages award was unconstitutionally excessive.  *Id.* at 18-26.  The Court disagreed and found Tesla waived its argument "that *no* punitive damages are warranted as a matter of law," concluding "the jury had a legally sufficient basis to make *an* award of punitive damages." Dkt. 328 at 37 & n.15.  But the Court agreed with Tesla that "the award of $130 million is grossly disproportionate" under the Fifth Amendment Due Process Clause.  *Id.* at 37-38.  The Court thus denied Tesla's motion for judgment as a matter of law but denied its motion for a new trial only on the condition that Mr. Diaz accept the Court's remittitur of the punitive-damages

1   award to $13.5 million, which the Court held "brings [the award] into the constitutional range"

2   and "within constitutional guardrails." *Id.* at 42-43.  Were Mr. Diaz to reject the remittitur, the

3   Court would order "a new trial on damages." *Id.* at 43.

4          After Mr. Diaz rejected the Court's remittitur (Dkt. 347), the Court granted Tesla's

5   "motion for a new trial solely on damages." Dkt. 348.  Tesla then moved for a new trial on

6   liability in addition to damages.  Dkt. 359.  Tesla argued that under *Gasoline Products Co. v.*

7   *Champlin Refining Co.*, 283 U.S. 494 (1931), "the right to a fair jury trial under the Seventh

8   Amendment requires full retrials unless the issue to be retried is sufficiently distinct and

9   separable from the others decided by the original jury." Dkt. 359 at 1.  Tesla specifically argued

10  the Seventh Amendment requires the same jury to decide ***both*** the punitive-damages predicate

11  ***and*** amount:  "federal law 'generally require[s] that the same jury determine both ***liability for,***

12  ***and the amount of, punitive damages*** because those questions are so interwoven.'" *Id.* at 9

13  (quoting *Zender v. Vlasic Foods, Inc.*, 91 F.3d 158, at *5 (9th Cir. 1996) (unpublished)

14  (emphasis added)); *see also id.* at 8-9 (citing additional authorities).  Tesla further argued that "to

15  evaluate reprehensibility for purposes of punitive damages, the second jury will be asked

16  whether and how often Mr. Diaz reported conduct to his managers and how they responded," and

17  if "the second jury will be instructed that another jury already determined that the same evidence

18  it will consider warranted a finding of . . . punitive damages," then "[t]his will unfairly prejudice

19  Tesla by skewing the jury's interpretation of the evidence in favor of Mr. Diaz—because if the

20  first jury credited it, then why shouldn't it too." *Id.* at 1-2; *see also id.* at 9-12.

21         The Court construed Tesla's motion for new trial on liability and damages as a motion for

22  reconsideration.  Dkt. 365 at 4.  Although the Court found Tesla was judicially estopped from

23  making the arguments in its motion (*id.* at 3-4), it denied the motion on the merits too,

24  concluding that "holding a second damages-only trial here does not violate Tesla's constitutional

25  rights." *Id.* at 6-7.  The ***sole*** reason the Court gave for rejecting Tesla's constitutional argument

26  on the merits as to punitive damages was that in ordering a damages-only retrial, the second jury

27  would still be asked to consider the punitive-damages predicate, because that was a damages

28  issue distinct from liability:

> As outlined in the jury instructions, assessing punitive damages requires determining whether the conduct at issue was "malicious, oppressive or in reckless disregard of the plaintiff's rights." ***That question is not so intertwined with liability*** so as to confuse the jury.  Asking whether Tesla acted maliciously, oppressively, or recklessly is a ***fundamentally different question*** from whether the environment itself was hostile, Tesla was a joint employer, there was a sufficient contractual relationship, Tesla failed to take *reasonable* steps to protect Diaz, or Tesla was *negligent* in supervising or continuing to employ Ramon Martinez.

*Id.* at 13 (emphasis added) (quoting Dkt. 280 at 41).  The Court did not change its order granting a new trial on damages only; it clarified that order.  Thus, the Court's conclusions on judicial estoppel and waiver do not affect its initial determination that a new trial would proceed on damages only, and that the punitive-damages predicate is included in the scope of the new trial.

***Second***, the Court's decision was consistent with the law.  The Ninth Circuit's decision in *United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir. 1961), is instructive.  *United Airlines* involved twenty-three cases stemming from a midair collision, all of which involved claims of negligence and requests for punitive damages.  *Id.* at 303, 306.  The district court had ordered that all the cases be consolidated on the issue of liability only, and that the issue of damages be tried separately.  *Id.* at 303-04.  The Circuit reversed the district court's decision to bifurcate the trials.  *Id.* at 306.  It held that under the Seventh Amendment, "[i]t is apparent that where parties are asking for exemplary damages which depend upon the degree of culpability of the defendant, they are required to establish by their evidence their contentions as to the degree," and "the defendant is entitled to show all of the facts . . . in order to establish . . . there was no willfulness or wantonness or extreme recklessness."  *Id.*

Here, the question whether Tesla acted with the requisite malice, oppression, or reckless indifference as to justify an award of punitive damages is so interwoven with the question of the degree of reprehensibility of Tesla's conduct that instructing the second jury to assume Tesla acted with the former would invariably prejudice Tesla and violate its right to a fair trial.  "The decision to impose [punitive damages] is 'within the exclusive province of the jury.'" *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 670 (9th Cir. 2015) (quoting *Runge v. Lee*, 441 F.2d 579,

584 (9th Cir. 1971)), *on reh'g en banc*, 833 F.3d 1060 (9th Cir. 2016).  "[T]o award punitive

damages, the jury must make ***both***":  (1) "a factual determination that" "the defendant's conduct

is shown to be motivated by evil motive or intent, or . . . involves reckless or callous indifference

to the federally protected rights of others"; ***and*** (2) "'a moral judgment' that further punishment

was warranted" beyond compensatory damages.  *Id.* at 669 (emphasis added) (quoting *Smith v.

Wade*, 461 U.S. 30, 52-53, 56 (1983)) (discussing § 1983).

It is thus unsurprising that in those rare situations where a plaintiff rejects a court's

remittitur of an unconstitutionally excessive punitive-damages award and the case proceeds to

retrial, courts instruct the second jury on both the predicate and amount of punitive damages.

*See, e.g.*, *Synnott v. Burgermeister*, 2021 WL 6091755, at *1 (N.D. Ill. Dec. 23, 2021) ("After

rejecting the remittitur of an earlier jury award of compensatory and punitive damages, . . .

plaintiff . . . proceeded to a second trial limited to the question of damages" under 42 U.S.C.

§ 1983); *id.* Dkt. 246 at 11 (instructing the second jury it "may assess punitive damages against a

defendant only if [it] find[s] that the defendant's conduct was malicious or in reckless disregard

of [plaintiff]'s rights" and "may, but [is] not required to, assess punitive damages").

***Third***, Mr. Diaz's suggestion that Tesla has waived this argument is baseless.  As noted,

Tesla argued in its motion for new trial on liability and damages that the Seventh Amendment

requires the same jury to decide both the punitive-damages predicate and amount.  Dkt. 359 at 1.

Tesla never took any binding position to the contrary in its other pretrial documents (none of

which have been ruled on by the Court in any case).  Both parties have been revising their

proposed jury instructions leading up to the deadline to file them with the Court.  Tesla served its

final proposed verdict form and jury instructions requiring the jury to find the punitive-damages

predicate two days before the parties' deadline to file disputed jury instructions, three weeks

before the pretrial conference, and six weeks before trial is set to begin.  *See Nash v. Lewis*, 365

F. App'x 48, 51 n.2-3 (9th Cir. 2010) (party "timely objected, before the jury began deliberating,

to all instructions proposed but not given" and "preserved his objection to the verdict form's

[omission] because [the party]'s proposed verdict form included a space for the jury to find" the

proposed finding "before the jury rendered its verdict and was discharged").  Mr. Diaz's focus on the timing of Tesla's argument rather than its substance betrays his meritless position.

Accordingly, the Court should instruct the jury that it must determine whether Mr. Diaz is entitled to punitive damages.  *See Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1017 (9th Cir. 2007) ("Where a proposed instruction is supported by law and not adequately covered by other instructions, the court should give a non-misleading instruction that captures the substance of the proposed instruction." (emphasis omitted)); *United States v. Unruh*, 855 F.2d 1363, 1372 (9th Cir. 1987) ("[T]he failure to give a requested instruction is reversible error if the defendant's theory of the case is supported by law and has some foundation in the evidence.").

## IV.   Trial Preparation

### A.   Witnesses, Exhibits, Discovery Responses, Deposition and Discovery Designations, and Further Motions

The parties have submitted their witnesses to be called, exhibits, deposition and discovery designations, and motions in limine at this time.  The parties do not anticipate further motion practice.

**1. Witnesses**: Tesla has stated that witness Ed Romero, who is no longer employed by Tesla, has not responded to contacts by defense counsel.  Plaintiff's counsel has likewise been unable to contact witnesses Wayne Jackson, Jackelin Delgado, and Michael Wheeler.  The parties may need to supplement their designated testimony if these four witnesses cannot be located and subpoenaed.

a.   Plaintiff's Position

One issue that has come up in exchange of the witness list is that Tesla contends that since it (and not Mr. Diaz) called Ramon Martinez in the first trial, if Tesla chooses not to call Mr. Martinez in the second trial, Mr. Diaz should be barred from doing so—even though he listed Mr. Martinez as a witness for Plaintiff in the retrial. Tesla has said that it represents Mr. Martinez and that Mr. Diaz may subpoena Mr. Martinez through defense counsel.

b.   Defendant's Position

As explained in the Parties Joint Witness List (Dkt. 387), Tesla contends that because it (and not Mr. Diaz) called Ramon Martinez in the first trial, if Tesla chooses not to call Mr. Martinez in the second trial, Mr. Diaz should be barred from doing so. Mr. Diaz rested his case at the first trial without calling Mr. Martinez. Given this Court's order that "[t]he parties will be bound by the choices made in the original trial" (Dkt. 376), Mr. Diaz should not be permitted to call Mr. Martinez.

**2. Exhibits**: As explained in the Parties Joint Revised Exhibit List (Dkt. 392), the parties object to various exhibits from the first trial coming into evidence in the second trial, primarily on relevance grounds. It would make the trial go smoother if the Court were to rule on these objections prior to the actual trial. Plaintiff proposes that the parties submit a joint document to the Court for review that includes the parties' objections and the documents to which each party objects, stating the grounds. If the Court has a preferred method for this review, the parties would like to follow that guidance.

a. Plaintiff's Position

Plaintiff notes that Defendant added an exhibit to the Joint Exhibit List on February 8, 2023, identified as Exhibit 380, after the date for Plaintiff to file *in limine* motions and right before the parties submitted the Joint Exhibit List (Dkt.. 388). This exhibit from October 2, 2015, is classic character evidence by commenting on Mr. Diaz's alleged "anger" issues, hearsay in that it includes statements made to Ed Romero by Mr. Diaz's co-workers, and was neither introduced nor admitted in the first trial. In addition, it is irrelevant to the issues in the retrial and is subject to Plaintiff's MIL #3. Accordingly, Exhibit 380 should not be admitted or referred to in this retrial. Plaintiff also objects to other new exhibits that were not introduced or admitted in the first trial. Finally, Plaintiff has made other objections on relevance grounds in this damages-only retrial.

b. Defendant's Position

Tesla addresses Mr. Diaz's objections that Exhibit 380 is not relevant, is inadmissible character evidence and is subject to their motion in *limine* excluding evidence of Mr. Diaz's poor

job performance in Tesla's Opposition to Plaintiff's MIL No. 3.  (Dkt. 390 at 6).  Tesla seeks to admit this exhibit in the retrial because it provides necessary context regarding the circumstances of Mr. Diaz's disputes with his co-workers, including Mr. Martinez, and Tesla's responses to them.   Tesla also addressed Mr. Diaz's objections to Exhibit 380 in the Revised Joint Trial Exhibit List (Dkt. 392 at 10).  Mr. Diaz's objection that this is hearsay is incorrect, as this is a business record, just like the other emails admitted in this case.

### 3. Deposition Designations

On January 31, 2023, the parties exchanged pretrial documents including deposition designations.  Mr. Diaz provided deposition designations for Demetric Di-Az, Annalisa Heisen, Erin Marconi, and Kevin McGinn, all from the first trial. Tesla provided three designations for Demetric Di-Az.  Mr. Diaz objects to two of the three. The Court will need to rule on the counter-designations and objections prior to trial.

### 4. Discovery Designations

Mr. Diaz only has a handful of interrogatories and requests for admissions to read to the jury, pared down from the original list presented to the first jury. Tesla did not designate any discovery in the first trial.

### B.  **Jury Selection**

The Court has indicated that the parties will review the jury questionnaire with the Court on March 24 and that jury selection will proceed and conclude on March 27. The parties have prepared different drafts of the juror questionnaire and are meeting and conferring to arrive at a joint questionnaire with certain questions flagged for the Court to rule on.

In addition, the parties have prepared Proposed Questions for the Court to ask jurors during the Court's voir dire. The parties are meeting and conferring on these questions and their respective objections to certain questions. The parties will put together one document with both sets of questions and relevant objections.

### C.  **Estimate of Trial Time**

The Court previously allotted each party a total of 9 hours to present their case. Dkt. 376.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D. Further Discovery

Discovery is closed and the parties do not anticipate future discovery, subject to the Court's ruling on Tesla's motion *in limine* no. 1 to add Mr. Hurtado as a witness.

### E. Trial Alternatives

#### 1. Settlement Discussions

The parties have engaged in numerous settlement discussions with Judge Illston, though the parties remain far apart in their positions and settlement seems unlikely prior to trial.

#### 2. Consent to Trial Before a Magistrate

The parties do not believe reference of the action to a magistrate or special master is feasible.

#### 3. Dismissals

The parties dismissed one plaintiff and several causes of action in advance of the first trial. Dkt. 176. The parties do not anticipate any further dismissals at this time.

#### 4. Bifurcation

The parties do not seek bifurcation.


Dated:   February 13, 2023            California Civil Rights Law Group

Alexander Morrison + Fehr LLP

Altshuler Berzon LLP


 /s/Larry Organ
Lawrence A. Organ
Cimone A. Nunley
J. Bernard Alexander III
Michael Rubin
Jonathan Rosenthal
Attorneys for Plaintiff
OWEN DIAZ

DATED:  February 14, 2023          QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                              By */s/ Daniel C. Posner*
                                   Daniel C. Posner
                                   Mari Henderson
                                   QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP
                                   865 S. Figueroa St., 10th Floor
                                   Los Angeles, California 90017
                                   Telephone: (213) 443-3000

                                   Asher Griffin (appearance *pro hac vice*)
                                   ashergriffin@quinnemanuel.com
                                   300 W. 6th St., Suite 2010
                                   Austin, TX 78701
                                   Telephone: (737) 667-6100

                                   Alex Spiro (appearance *pro hac vice*)
                                   alexspiro@quinnemanuel.com
                                   51 Madison Ave., 22nd Floor
                                   New York, NY 10010
                                   Telephone: (212) 849-7000
                                   Facsimile: (213) 443-3100


                                   *Attorneys for Defendant Tesla, Inc.*


## ATTESTATION OF CONCURRENCE

I, Daniel C. Posner, am the ECF user whose ID and password are being used to file the Parties'

Joint Pretrial Conference Statement.  Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that each of

the signatories identified above has concurred in the filing of this document.

                              By _____
                                   */s/ Daniel C. Posner*
                                   Daniel C. Posner