1  LAWRENCE A. ORGAN (SBN 175503)
   larry@civilrightsca.com
2  MARQUI HOOD (SBN 214718)
   marqui@civilrightsca.com
3  CIMONE A. NUNLEY (SBN 326915)
   cimone@civilrightsca.com
4  **CALIFORNIA CIVIL RIGHTS LAW GROUP**
5  332 San Anselmo Avenue
   San Anselmo, California 94960
6  Telephone:    (415)-453-7352
   Facsimile:    (415)-785-7352
7

8  J. BERNARD ALEXANDER (SBN 128307)
   balexander@amfllp.com
9  **ALEXANDER MORRISON + FEHR LLP**
10 1900 Avenue of the Stars, Suite 900
   Los Angeles, California 90067
11 Telephone:    (310) 394-0888
   Facsimile:    (310) 394-0811
12

13 MICHAEL RUBIN (SBN 80618)
   mrubin@altber.com
14 JONATHAN ROSENTHAL (SBN 329638)
   jrosenthal@altber.com
15 **ALTSHULER BERZON LLP**
   177 Post Street, Suite 300
16 San Francisco, California 94108
   Telephone:    (415) 421-7151
17 Facsimile:    (415) 362-8064

18 *Attorneys for Plaintiff Owen Diaz*

19                **UNITED STATES DISTRICT COURT**

20               **NORTHERN DISTRICT OF CALIFORNIA**

21                 **SAN FRANCISCO DIVISION**

22 OWEN DIAZ,                          | Case No. 3:17-cv-06748-WHO

23            Plaintiff,                **PLAINTIFF'S DESIGNATION OF DEPOSITION TESTIMONY;**
24       v.                            **DEFENDANT'S COUNTER-DESIGNATIONS; AND PLAINTIFF'S**
25 TESLA, INC. DBA TESLA MOTORS, INC., **RESPONSE TO COUNTER-DESIGNATIONS**
26            Defendant.

27                                     Trial Date: March 27, 2023
                                       Complaint Filed: October 16, 2017
28

# PLAINTIFF'S DESIGNATIONS OF DEMETRIC DI-AZ'S DEPOSITION TESTIMONY

# AND COUNTER-DESIGNATIONS AND RESPONSES

Plaintiff Owen Diaz provides the following designations along with Defendant Tesla, Inc.'s objections and counter-designations as well as Plaintiff's responses thereto.

**Di-Az, Demetric, 5/15/2018, Vol. I:**

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| 1. | 10:4-22 | 4  Q.    Could you please state your full name for the<br>5  record.<br>6  **A.    Demetric Jean Di-az.**<br>7  Q.    Did you say Jean?<br>8  **A.    Yes.  That's my middle name.**<br>9  Q.    Okay.  And how do you spell your last name?<br>10  **A.    D-I hyphen A-Z.**<br>11  Q.    And is your father's name Owen Diaz?<br>12  **A.    Yes.**<br>13  Q.    And he spells his name with a D-I-A-Z without a<br>14  hyphen; right?<br>15  **A.    Yes.**<br>16  Q.    And why do you spell your name with a hyphen?<br>17  **A.    As a kid it was given to me like that through**<br>18  **birth.  I really don't know why it was like that.**<br>19  Q.    You don't have an understanding of why your last<br>20  name is spelled with a hyphen?<br>21  **A.    I was told that was the original spelling.  That**<br>22  **was it.** | | |
| 2. | 31:20-22 | 20  Q.    How would you describe your relationship with | | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | **21** your father? <br> **A.** **My relationship with my father was good.** | | |
| 3. | 40:14-16 | **14** Q. So you received a high school diploma from <br> **15** Pittsburg's adult school in June of 2014? <br> **16 A. Yes.** | **40:10-13** <br><br> 10 Q. Take your time to read Exhibit 6. It's a <br> 11 document marked at the bottom as Tesla 156. <br> 12 Is this a copy of your resume? <br> 13 A. Yes. <br><br> **40:23-41:3** <br><br> 23 Q. Did you submit this as part of your application <br> 24 to work at West Valley in or around August of 2015? <br> 25 A. Yes. <br><br> 1 Q. Did you submit this as part of your application <br> 2 to work at Tesla in or around August of 2015? <br> 3 A. Yes. | **OBJECTION: RELEVANCE & FRE 403;** <u>**The counter-designated testimony was not read during the first trial.**</u> The referenced testimony does not relate to Demetric Diaz's HS Diploma and inserts information about West Valley. It therefore is not a counter designation. |
| 4. | 109:2-3 | **2** Q. How many days a week did you work? <br> **3 A. Five.** | | |
| 5. | 159:24-160:07 | **24** Q. And who stated this phrase? <br> **25 A. Javier. I think his last name is Caballero.** <br> **1 You said his name.** <br> **2** Q. Javier Caballero said this, quote, "All you <br> **3** fucking niggers -- I can't stand you motherfuckers"? <br> **4 A. Yes.** <br> **5** Q. And in paragraph 19 you say that it was your <br> **6** shift lead? <br> **7 A. It's my shift supervisor.** | | |
| 6. | 160:15- | **15** Q. And how many other | | **REVISED DESIGNATIO** |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | 160:25 | people besides you and T.J.<br>16 were present?<br>17 A. Me, T.J., my father, and the rest of my team<br>18 that was getting ready to leave.<br>19 Q. It was directed at your whole team?<br>20 A. Yes.<br>21 Q. Sorry. Did you tell me how many people are on<br>22 your team?<br>23 A. I think I told you earlier.<br>24 Q. Can you tell me again?<br>A. I think approximately about six. | | **N:** Plaintiff withdraws the request for the testimony from p. 160:19 to p.161:1-8 as those excerpts, although read during the first trial, are irrelevant to the second trial. |
| | | 1 Q. Any people on your team not African-American?<br>2 A. Yes.<br>3 Q. Who?<br>4 A. I think it was probably about, like, three other<br>5 guys that weren't African-American.<br>6 Q. Any other people on your team African-American?<br>7 A. Me, T.J., and one other guy. I don't remember<br>8 his name. | **161:9-10**<br><br>9 Q. Is this the only time that this statement was<br>10 made?<br>11 A. That statement, yes. | **OBJECTION: RELEVANCE.** **The counter-designated testimony was not read during the first trial.** The additional request by Defendant is irrelevant. |
| 7. | 162:2-162:7 | 2   A.    From there I went to his immediate -- to<br>3   Javier's supervisor. They did nothing about it.  And<br>4   then from there, I went to HR, and they did nothing<br>5   about it.<br>6   Q.    Who in HR did you complain to?<br>7   A.    I don't remember the lady's name. | **72:10-18**<br><br>10 Q. Turning your attention to page 218, under<br>11 "Reporting Concerns." You understand that, if you<br>12 believe you were subjected to harassment or<br>13 discrimination of any kind or if you witness such<br>14 conduct, that you were required to immediately report | **OBJECTION: RELEVANCE; FRE 403** **The counter-designated testimony was not read during the first trial except for 162:13:21.** The timing of Demetric Di-az's complaint or reporting is irrelevant as is |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|-------------------------------|----------------------|
| | | | 15 the facts of the conduct to your manager or an HR 16 representative so that your concern could be 17 investigated promptly and addressed appropriately? 18 A. Yes, I understand **73:21-75:10** 21 Q. Did you understand that you could report it to 22 West Valley if you suffered harassment or discrimination 23 at Tesla? 24 A. Yes. Q. And who would you have reported it to if you 1 felt that you suffered harassment and discrimination at 2 Tesla? 3 A. I really don't know who you would report it to. 4 I went to talk to the people upstairs. That's it. They 5 didn't do anything about it, and I'm still stuck with 6 the same situation. 7 Q. What was your understanding of who you should 8 report discrimination and harassment to if you endured 9 it while you were working at Tesla? 10 A. I really didn't have an exact person to tell it 11 to. I tried to talk to the on-site staff; they didn't 12 help. And it never went further. | whether he reported the incident to West Valley. |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|--------------------------------|----------------------|
|     |       |                    | 13 Q. Who of the on-site staff or -- strike that. 14 When you say on-site staff, are you referring to 15 West Valley's on-site staff at Tesla? 16 A. Yes. 17 Q. Did you report it to the -- did you report any 18 discrimination or harassment to West Valley's on-site 19 staff? 20 A. I went up there and we talked, and he said he 21 would look into it, and nothing ever happened. 22 Q. Who did you report it to? 23 A. If I'm not mistaken, I think his name is Samuel. 24 I don't know his last name. 25 Q. Samuel Zehner. Does Zehner sound right? 1 A. I don't know his last name. I don't know. 2 Q. Did you report any discrimination or harassment 3 that you suffered at Tesla to anyone -- 4 A. I said -- 5 Q. Hold on. Let me finish -- to anyone else 6 besides Samuel? 7 A. I talked to my mom and my dad. 8 Q. But you didn't talk to anybody else at Tesla 9 about any discrimination or harassment?  **75:11-17** |                      |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 11 THE WITNESS: Not that I can recall at this 12 time. 13 BY MS. ANTONUCCI: 14 Q. You recall that you didn't talk to anybody else 15 at West Valley about any discrimination or harassment 16 that you suffered at Tesla? 17 A. No.  **76:21-24**  21 Q. You never spoke with any human resources 22 representative at Tesla about harassment or 23 discrimination? 24 A. No.  **162:13-21**  13 Q. Did you ever put anything in writing? 14 A. No. 15 Q. You never complained in writing? 16 A. No. I just went and verbally complained. It never went anywhere. 18 Q. You never sent a text? 19 A. No. 20 Q. You never wrote an e-mail? 21 A. No. | |
| 8. | 165:24 - 166:3 | 24 Q. Do you know whether your father heard it? 25 A. My father told me that he did hear it, and  1 That's the first time I seen my father, like, really | Objection: Hearsay If testimony is allowed, counter designate: **47:20-48:11 120:12 – 18** | **RESPONSE:** It is not coming in for the truth of the matter but for the affect on listener. **OBJECTION**: **The counter-designated testimony was** |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|-------------------------------|----------------------|
|     |       | 2 feel like he couldn't do anything for me. Like, he 3 didn't know what to do. |  | **not read during the first trial.** Plaintiff objects that defendant failed to include the relevant excepts and therefore did not properly counter-designate the testimony. Plaintiff also objects on relevance grounds that whether Demetric Di-az does not remember reapplying is irrelevant and that whether people other than his supervisor called Demetric the N-word is irrelevant. |

## PLAINTIFF'S DESIGNATIONS OF ANNALISA HEISEN'S DEPOSITION TESTIMONY AND COUNTER-DESIGNATIONS AND RESPONSES

Plaintiff Owen Diaz provides the following designations along with Defendant Tesla, Inc.'s objections and counter-designations as well as Plaintiff's responses thereto.

### Heisen, Annalisa, 05/29/2019, Vol. I:

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|-------------------------------|----------------------|
| 1.  | 8:10-12 | 10 MR. ORGAN: Q. Good morning. Could you 11 please state your full name for the record. 12 A. Annalisa Heisen. |  |  |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| 2. | 8:15-19 | 15 Q. Okay. And what's your--you currently work<br>16 for Tesla; is that right?<br>17 A. Correct.<br>18 Q. What's your current position there?<br>19 A. I'm a senior employee relations partner. | | |
| 3. | 26:7-27:3 | 7 Q. Okay. And is it true that Tesla human<br>8 resources will investigate any claim of discrimination<br>9 or harassment that is brought to its attention<br>10 relative to conduct at the factory?<br>11 A. We have a standard that an investigation will<br>12 be conducted. Whether a Tesla HR partner conducts<br>13 that or otherwise, depends case to case.<br>14 Q. What are the factors as to determining<br>15 whether a Tesla HR partner will conduct the<br>16 investigation or not?<br>17 A. One factor would be who's involved, who<br>18 complained.<br>19 Q. And why does that matter?<br>20 A. We have different employment statuses for<br>21 individuals on-site.<br>22 Q. What are the different employment statuses<br>23 for individuals who work at the Fremont factory?<br>24 A. I don't have an exhaustive list of types of<br>25 roles.<br>1 Q. What are the ones you remember?<br>2 A. General direct-hire | | |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | employees, contractors, 3 temporary employees. | | |
| 4. | 33:4-8 | 4 Q. Well, you understand that you're testifying 5 today as the person most knowledgeable on the policies 6 and procedures related to race harassment in effect 7 from 2014 to present; right? You understand that? 8 A. Correct. | | |
| 5. | 53:4-13 | 4 Q. In terms of "stupid stuff," that part of 5 Exhibit 5, that applies to all employees, whether 6 They're regular employees or contractors, right, at 7 the Tesla factory? 8 A. My understanding is that there's an 9 expectation that both contractors and employees would 10 adhere to it. 11 Q. Would adhere to that part of the policy; 12 correct? 13 A. Correct. | | |
| 6. | 75:17-24 | 17 MR ORGAN: Q. What steps does Tesla take to 18 ensure that contractors who come into and work in the 19 Tesla factory in Fremont have training relative to the 20 topic of antiharassment and discrimination? 21 A. We have an expectation that agencies are 22 training on antiharassment and discrimination. 23 Q. And what is that expectation based on? | | |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 24 A. That they're legally compliant. | | |
| 7. | 77:7-17 | 7 "QUESTION: And in terms of -- there are some 8 reporting and investigation procedures in Exhibit 150, 9 if you look down at the bottom of the page, and then 10 over to the second page of Exhibit 150. Those 11 reporting and/or investigation principles would still 12 apply to employees who are contractors working at the 13 Tesla factory; correct?") 14 THE WITNESS: I don't have visibility into 15 what the agencies advise their contractors, as far as 16 reporting is concerned. Those guidelines may be 17 different, agency to agency. | | |
| 8. | 78:11-15 | 11 Q. And so that employee of Tesla would have to 12 then take some action once they get information about 13 discrimination or harassment in the workplace; 14 correct? 15 A. That's the expectation. | **78:1-10** 1 Q. In terms of if a Tesla employee – let's say 2 a supervisor or a manager gets information from a 3 contract employee about harassment or discrimination, 4 Tesla's antiharassment and discrimination policy would 5 apply, in terms of reporting an investigation; 6 correct? 7 **A. Correct. To that employee of Tesla who** 8 **received information?** 9 Q. Yes. 10 **A. Correct.** | **No Objection.** |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| 9. | 79:7-15 | 7 Q. So if a Tesla employee gets information about 8 harassing conduct based on race in the factory, that's 9 occurring in the factory, regardless of how they get 10 that information, they then have a reporting duty, in 11 terms of either providing that information to a 12 higher-level manager or sending it to HR; is that 13 true? 14 A. There's an expectation of that, as it's 15 articulated in the policy. | **79:18-80:3** 19 MR ORGAN: Exhibit 151, for the record, is a 20 six-page document Bates-stamped Tesla 819 to 824. 21 It's entitled "Policy Against Discrimination and 22 Harassment in the Workplace, U.S. Locations." 23 Q. Do you recognize Exhibit 151? 24 **A. I do.** 25 Q. And what is Exhibit 151? 1 **A. It's Tesla's policy against harassment and** 2 **discrimination in the workplace, for the U.S.** 3 **locations, that went into effect in July of 2018.** | **OBJECTION: RELEVANCE; FRE 403** **The counter-designated testimony was not read during the first trial.** Her testimony about the exhibit is irrelevant because the testimony relates to a policy from July of 2018 that Defendant cannot show is different from the policy in Exhibit 368. |
| 10. | 81:6-81:12 | 6 Q. Any information relative to a complaint of 7 harassment based on race at the Tesla factory, that's 8 investigated by HR, Tesla's HR, if it's brought to 9 Tesla HR attention; correct? 10 A. It depends. 11 Q. What does it depend on? 20 A. Who's involved in the complaint. | | |
| 11. | 82:13-16 | 13 Q. Tesla has an obligation to the people who 14 work at the Fremont factory to ensure that they are in 15 a workplace free from harassment based on race; right? 21 A. Correct. | | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| 12. | 82:21-25; 83:3-6 | 21 Q. So in terms of ensuring that workers at the<br>22 Tesla factory are not subject to harassment based on<br>23 race, how does Tesla's HR department ensure that that<br>24 is the case, if they are delegating investigation<br>25 processes to non-Tesla employees?<br>3 THE WITNESS: There's still an expectation<br>4 that these types of concerns that are brought forward<br>5 will be investigated, but it depends case by case a<br>6 to how that's approached. | **85:10-25**<br><br>10 Q. How does Tesla ensure that Tesla employees<br>11 working at the Tesla factory are protected against<br>12 harassing conduct by contractors who are also working<br>13 at the Fremont factory?<br>14 **A. When the concern is brought about a**<br>15 **contractor's behavior?**<br>16 Q. Yes.<br>17 **A. If we're informed and made aware of the**<br>18 **issue -- depends on the specific circumstances -- we**<br>19 **would either ourselves follow up and collaborating**<br>20 **with them. There are circumstances that might fall**<br>21 **outside of that. It depends, but that's one way.**<br>22 Q. Certainly, if harassing conduct were being<br>23 done by any of Tesla's supervisors against a contract<br>24 employee, Tesla would be responsible for doing any<br>25 such investigation;<br><br>correct?<br><br>**86:3-11** | **No Objection.** |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 3 THE WITNESS: Generally in that case, Tesla<br>4 would always contact the agency of the person who was<br>5 a contractor who was involved. And Tesla may take the<br>6 lead on that, in that case.<br>7 MR ORGAN: Q. And what about in the<br>8 situation where the -- assume that the harasser is a<br>9 supervisor working for a contract agency, harassing<br>10 another contract employee at the Tesla factory.<br>11 What's Tesla's role relative to that?<br><br>**86:14-20**<br><br>14 THE WITNESS: So effectively, if both parties<br>15 are contractors, if they're either from the same<br>16 agency or separate agencies, whichever agency<br>17 representative would need to be looped in, you know,<br>18 during that process, Tesla would contact them, and<br>19 they would collaborate with them to determine what<br>20 next steps needed to be taken for investigation. | |
| 13. | 83:19-21; | 19 Q. There are no written procedures that Tesla | | |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | 83:24-25 | 20 has for coordinating investigations of allegations of 21 harassment based on race?<br><br>24 THE WITNESS: Not that outline step by step 25 for each of these cases. | | |
| 14. | 83:11-18 | 11 Q. In terms of Tesla's efforts to ensure that it 12 has a workplace free from harassment based on race, 13 are there any kind of procedures that Tesla has 14 adopted for coordinating investigations into 15 allegations of harassment based on race? 16 A. It depends on the case. It varies widely. 17 There's not one fixed method that we address that 18 with. | | |

## PLAINTIFF'S DESIGNATIONS OF ERIN MARCONI'S DEPOSITION TESTIMONY

## AND COUNTER-DESIGNATIONS AND RESPONSES

Plaintiff Owen Diaz provides the following designations along with Defendant Tesla, Inc.'s objections and counter-designations as well as Plaintiff's responses thereto.

**Marconi, Erin 10/21/2019, Vol. I:**

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| 1. | 13:17-13:24 | 17 What did you do after you left Volt as a 18 program manager? 19 A I went to Tesla as an HR business partner. 20 Q So that would be approximately 2013? | **13:25-14:5**<br><br>25 **Q And what was your job title after you – after** 1 **January 2017?** 2 A I took a time off work. I had been a | **No Objection** |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 21 A Correct.<br>22 Q How long were you an HR business partner at<br>23 Tesla?<br>   A Until January 2017. | 3 caregiver for my mother.<br>4 **Q And have you worked at Tesla since that time?**<br>5 A No. | |
| 2. | 14:09-14:21 | 9 Q Okay. What were the job duties of an HR<br>10 business partner in your role?<br>11 A Strategic partner with the business management<br>12 teams from work planning, succession planning. Time to<br>13 time would help out if recruiting was needed, but that<br>14 wasn't primary.<br>15 A lot of HR generalist at the beginning. That<br>16 went away as we grew. Employee relations,<br>17 investigations, performance management. Employee<br>18 engagement.<br>19 Q It sounds like --<br>20 A Probably about covers it. A little bit of<br>21 everything. | | |
| 3. | 15:03-15:05 | 3 Q Okay. So investigations were part of your job<br>4 as an HR business partner; is that right?<br>5 A Correct. | | |
| 4. | 27:12-27:15 | 12 Q But the HR business partner team that you were<br>13 part of was in charge of handling, among other things,<br>14 complaints about discrimination or harassment; right?<br>15 A Correct. | **27:2-11**<br><br>2 **Q But you mentioned earlier that there were HR**<br>3 **teams.**<br>4 A There was an HR business partner team. There | **OBJECTION: RELEVANCE.** **The counter-designated testimony was not read during the first trial.** The additional request by Defendant is irrelevant. |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 5 were also some employee relations people that supported 6 us. They did a lot of administrative for the most part. 7 Then there was a totally different group in HR 8 that did onboarding, offboarding. I can't recall what 9 the name of that group was. 10 There was recruiting. There was just various 11 different areas. <br><br>**27:16-24** <br><br>**16 Q And approximately how many members were there 17 in that HR business partner team that handled 18 discrimination and harassment complaints in that 2015,** 19 **'16 time period?** 20 A At least ten, to the best of my recollection. 21 That was a long time ago, though. 22 **Q Okay.** 23 A Oh, 11. Sorry. I haven't thought about that 24 in a long time. <br><br>**32:11-25** <br><br>**11 Q How many employees worked in the Fremont 12 factory in the area for which you provided HR functions** | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 13 **in 2015 and '16?** 14 A I was switched around various different 15 groups, so at any -- it depends on when in 2015 and when 16 in 2016. 17 **Q Okay.** 18 A It could have been a group of 50 people; it 19 could have been over 1200. 20 **Q At one point, though, that you were handling** 21 **human resources functions for up to 1200 people at** 22 **the --** 23 **A With assistance.** 24 **Q With assistance, at the Fremont factory?** 25 A Correct. | |
| 5. | 33:17-33:20 | 17 Q Okay. But it's fair to say that you at least 18 understood what Tesla's policies were in terms of 19 anti-discrimination and anti-harassment; right? 20 A Correct | | |
| 6. | 35:02-35:07 | 2 Q So with that understanding of the definition 3 of n- -- of the n-word, is it your understanding that 4 Tesla's anti-harassment and anti-discrimination 5 zero-tolerance policies prohibit use of the n-word at 6 the Tesla facility? 7 A Yes. | | |
| 7. | 36:05-36:13 | 5 Q Okay. And if you had known about someone 6 using the n-word at the Tesla factory, that would | **37:4-6** 4 **Do you recall ever investigating a claim where** | **NOTE: The portion of transcript Defendant seeks to** |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 7 certainly be something that you would investigate; 8 correct? 9 A Absolutely. 10 Q And the reason that you would investigate that 11 is use of the n-word at the Tesla factory could create a 12 hostile work environment for other workers; right? 13 A Correct. | 5 **it was alleged that the n-word was used?** 6 A Not specifically. | **introduce opens the door on N-word complaints at the factory.** |
| 8. | 39:02-39:08 | 2 Q Was there ever any kind of meeting among HR 3 professionals about, like, sensitivity training or how 4 to address a situation where the n-word was being used 5 in the workplace? 6 A Specifically regarding the n-word? 7 Q Yeah. 8 A No. | **40:10-20** 10 **Did you work with your business partners to** 11 **enforce the anti-discrimination and anti-harassment** 12 **policies?** 13 A Yes, as needed. 14 **Q What kind of training was there for issues** 15 **such as harassment at the Tesla factory?** 16 A There was annual training. There was 17 supervisor training that was developed, I don't know 18 when, but I think it would have been there by then. And 19 that would have been anything -- anyone supervisor or 20 above. **41:16-42:20** **Q So if a -- just so I'm clear, the leadership** 17 **training would be done for anybody who was a supervisor** | **OBJECTION: RELEVANCE. The counter-designated testimony was not read during the first trial.** The additional request by Defendant is irrelevant. |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|--------------------------------|----------------------|
| | | | 18 **or above that level; correct?** 19 A Correct. 20 **Q So anybody who's a supervisor or a manager or** 21 **a director would get the leadership training; is that** 22 **true? Or should get it?** 23 A If they started once that training had 24 started, because that was a -- do this at the beginning, 25 because just as a group, we were growing and there were 1 people being promoted, and so we were doing a lot of 2 one-off trainings. 3 **Q Okay. And then in terms of the leadership** 4 **training, the leadership training included things --** 5 **included topics such as anti-discrimination,** 6 **anti-harassment, that kind of stuff?** 7 A It touched on it. I believe that was in 8 orientation for every employee. It would have been Beth 9 Davies again. 10 **Q So every employee was taught when they started** 11 **about the anti-discrimination, anti-harassment policies?** 12 A Yes. 13 **Q And the leadership were taught that if they** | |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 14 **received a complaint of harassment or discrimination,** 15 **they should at least inform HR that they received such a** 16 **complaint; is that true?** 17 A When they were doing the leadership training 18 as part of onboarding, we added it to the regular 19 orientation at a certain point. I don't recall what the 20 time was. | |
| 9. | 42:21-43:05 | 21 Q Okay. But under Tesla's guidelines or 22 policies for anti-harassment complaints, if a member of 23 the leadership team, supervisor, manager, director, 24 received a complaint of harassment, they were to at 25 least inform HR that they had received such a complaint; 1 is that true? 2 A Yes. 3 Q And that was true throughout the time that you 4 worked at Tesla; right? 5 A Yes. | | |
| 10. | 49:07-49:23 | 7 Q In fact, every -- every employer has a duty to 8 make sure that its workers are working in an environment 9 that is harassment-free; right? 10 A Correct. 11 Q And that would include | | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
|  |  | harassment based on sex<br>12 or race or any of those other prohibited categories;<br>13 right?<br>14 A Yes.<br>15 Q Similarly, every employer is -- has a duty to<br>16 make sure that once it knows about harassment, that it<br>17 takes some sort of corrective action to make sure that<br>18 the harassment doesn't continue; right?<br>19 A Yes.<br>20 Q And in California, every employer must take<br>21 all reasonable steps necessary to prevent discrimination<br>22 and harassment from occurring; right?<br>A Yes. |  |  |
| 11. | 51:02-51:12 | 2 Q You would agree that it's never okay to use<br>3 the n-word in the workplace?<br>4 A Correct.<br>5 Q And you'd also agree that it's never okay to<br>6 make offensive drawings that could be racial in nature;<br>7 right?<br>8 A Correct.<br>9 Q You'd agree that every employer has a duty to<br>10 provide a workplace where employees are not using the<br>11 n-word towards other employees?<br>12 A Yes. |  |  |
| 12. | 51:23- | 23 If -- if a Tesla worker |  |  |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | 52:06 | complains about 24 harassment to their supervisor, that meets their at 25 least initial burden under Tesla's policies for 1 reporting harassment; right? 2 A Yes. 3 Q And under Tesla policies, supervisors are 4 supposed to report issues relating to harassment to 5 their managers and to HR? 6 A Yes. | | |
| 13. | 55:23-56:04 | 23 Q And in terms of the standards, the 24 anti-discrimination, anti-harassment policy standards 25 that applied to workers at the Tesla factory, those 1 standards applied to both regular full-time Tesla 2 employees and to the temporary workers who were working 3 at the plant; right? 4 A Yes. | | |
| 14. | 58:10-58:15 | 10 Q Okay. And if someone does complain about what 11 they consider to be inappropriate conduct, and they feel 12 threatened, you would agree that as a Tesla HR person, 13 you would still have a responsibility to make sure that 14 nothing happened to them further; right? 15 A Oh, absolutely | | |
| 15. | 58:16-59:5 | 16 Q And as a Tesla HR person, if someone had 17 complained about like | | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | threatening conduct or feeling<br>18 that they were threatened, you would at least have to<br>19 make that workplace safe for them from that point that<br>20 you find out about it on; right?<br>21 A In the immediate, absolutely. If then it<br>22 was -- the investigation was conducted and it, say, only<br>23 involved temporary people that were all under West<br>24 Valley --<br>25 Q Yeah.<br>1 A -- if West Valley investigated it and came<br>2 back and said there wasn't actually an issue, I'm going<br>3 to believe that West Valley did their investigation<br>4 thoroughly and if there was something to address,<br>5 addressed it. | | |
| 16. | 59:8-21 | 8 You -- you typically rely on the contract --<br>9 contracting agency to do an investigation into<br>10 complaints by their employees; is that right?<br>11 A If it is involving other of their employees.<br>12 If it is involving Tesla employees, then I<br>13 would talk to probably Tesla employees, they would talk<br>14 to their employees.<br>15 If the stars align and everyone was in the<br>16 building or in the same side of the country and we | | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | would<br>17 help -- sometimes I had been there when they were<br>18 interviewing their employee and vice versa. But I<br>19 wouldn't -- my preference would not be to interview<br>20 someone else's employee, and especially not without them<br>21 present. | | |
| 17. | 59:22-60:10 | 22 Q In terms of Tesla's duty, though, to all of<br>23 its employees, it has a -- it has a duty to both its<br>24 regular employees and the contractors to make sure that<br>25 all of those people work in a work environment free from<br>1 harassment or discrimination based on race; right?<br>2 A Correct.<br>3 Q And so if -- if Tesla HR became aware of a<br>4 problem, let's say use of the n-word or use of racial<br>5 drawings, Tesla would still have to make sure that that<br>6 conduct stopped; right?<br>7 A Assuming that an investigation found that that<br>8 conduct did happen?<br>9 Q Right.<br>A Then yes. | | |
| 18. | 61:10-61:14 | 10 Q And if someone is complaining about conduct,<br>11 do they have to complain in writing or can they also<br>12 complaint verbally about inappropriate conduct in | | |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|-------------------------------|----------------------|
| | | the<br>13 workplace at Tesla?<br>14 Either. | | |
| 19. | 64:24-65:04 | 24 Q Tesla had video cameras throughout the<br>25 facility; is that true?<br>1 A Correct.<br>2 Q And if there was an altercation, would you<br>3 like to see if there was video footage of the incident?<br>4 A Absolutely. | | |
| 20. | 80:21-82:3 | 21 Q Okay. Tell me about that. What was the<br>22 situation in which you did some sensitivity training for<br>23 a group relative -- was it relative to the n-word or was<br>24 it --<br>25 A No.<br>1 t was the -- tell me about the<br>2 situation where you did sensitivity training for a<br>3 group.<br>4 A It was an offensive drawing that we were<br>5 unable to determine who did the drawing. And I say<br>6 "offensive"; it was a sexual drawing that clearly<br>7 offended folks.<br>8 That department was, I believe, over 500<br>9 people. So we brought everyone together each shift,<br>10 went over how that was not okay; if we ever could find<br>11 out who it was, it wouldn't be tolerated.<br>12 An investigation couldn't | **80:12-20**<br><br>**Q Okay. And do you remember having a discussion**<br>**13 among the HR business partners where there was thought**<br>**14 to be a need by them to maybe conduct some kind of**<br>**15 sensitivity training to address issues like the n-word**<br>**16 in the workplace?**<br>17 A Specifically resulting from this?<br>**18 Q No, I'm just talking about at any time.**<br>19 A Yes. I know I specifically did one with a<br>20 group that I had. | **OBJECTION: RELEVANCE; FRE 403.** **The counter-designated testimony was not read during the first trial.** The additional request by Defendant is irrelevant and confusing. The question includes reference to the N-word, but the sensitivity training dealt with sexual harassment. The segment Defendant wants to add is not needed because the question in Plaintiff's portion makes clear the context without potential confusion. |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | pinpoint who it was<br>13 because there wasn't a camera in that particular area,<br>14 we addressed the whole entire team, and then did<br>15 sensitivity training that covered pretty much<br>16 everything.<br>17 And even if I tell you a joke about the sky<br>18 being blue and you think it's funny today and you don't<br>19 tomorrow, then I can't tell you that joke anymore.<br>20 Q Do you remember what department it was in?<br>21 A I think it was stamping.<br>22 Q Okay. In terms of the drawing -- I don't mean<br>23 to offend you or anything, but can you describe the<br>24 sexual drawing that you ended up having to do<br>25 sensitivity training for.<br>1 A If I recall correctly, somebody put boobs on<br>2 like -- you know the male/female symbols on bathrooms?<br>3 Somebody drew boobs. | | |
| 21. | 84:17-85:09 | 17 That sensitivity training came out of the fact<br>18 that there were these -- there was a visual harassment<br>19 in this -- the boobs on the bathroom door.<br>20 Is that what caused the training to come<br>21 about?<br>22 A Yes. Someone was offended by the boobs drawn. | **85:10-20**<br><br>10 **Q Okay. Who conducted the -- the annual**<br>11 **trainings for the management team members?**<br>12 A It would have been Beth Davies for the<br>13 training department. I don't know if she actually did | **OBJECTION: RELEVANCE; FRE 403.** <u>**The counter-designated testimony was not read during the first trial.**</u> The additional request by Defendant is irrelevant. In addition, the requested |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 23 Q Okay. And how was the decision made as a 24 result of that to do a sensitivity training? Why was 25 that the outcome? 1 make sure that everyone 2 understood what the expectation was, and if it makes 3 someone uncomfortable, it's not okay. 4 Q Right. Okay. 5 And do you recall any other sensitivity 6 trainings that were done relative to either race or sex 7 issues that you were involved in? 8 A Not that I recall. I mean, other than your 9 regular annual required of supervisor and above. | 14 it. And then I know at some point I believe it moved to 15 online course and question and answer. I don't know if 16 they still do that or not. 17 Anything that was like corporate training 18 companywide would have been through Beth Davies. And 19 then we supplemented where we saw necessary in our 20 groups. | portion is confusing because there is no other reference to a Beth Davies in the case. It is also unclear to which time period Ms. Marconi is referring as that context was not established. |
| 22. | 85:21-87:04 | 21 Q Okay. Now, I'm going to show you what has 22 been previously marked as Exhibit 37. And just so the 23 record is clear, Exhibit 37 is a three-page document 24 Bates-stamped Tesla 35 through 37, and it's a complaint 25 by Owen Diaz about a racist drawing, or what he 1 considered to be a racist drawing. 2 And I'm wondering if you recall seeing this 3 email, or the picture that's attached. 4 A I don't recall seeing the picture, and I don't 5 specifically recall seeing it, given the time. It very 6 well could have been | | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|-------------------------------|----------------------|
|  |  | something that I was --<br>"Here's a<br>7 heads-up" kind of thing, and<br>I just don't recall.<br>8 Q Okay. Okay.<br>9 Based on your -- you just<br>read the complaint<br>10 by Mr. Diaz from January<br>22nd, 2016. Based on that<br>11 complaint and in your<br>experience as a<br>professional HR<br>12 person, would that be<br>sufficient to trigger an<br>13 investigation, in your<br>mind, his complaint along<br>with<br>14 the pictures?<br>15 A Yes.<br>16 Q And would -- as a<br>trained investigator, given<br>17 this written information<br>and the confirming picture,<br>18 would you expect there to<br>be an investigation as a<br>19 result of that?<br>20 A Yes.<br>21 Q If you were conducting<br>the investigation,<br>22 would you interview the<br>people that are identified<br>in<br>23 Mr. Diaz's email?<br>24 A Depending on if they<br>were Tesla employees or<br>25 employees of another<br>company, either I would if<br>they<br>1 were Tesla employees, or I<br>would ask that the primary<br>2 employer, for lack of a<br>better way to put it, did.<br>And<br>3 if it was a combination,<br>work together if at all |  |  |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 4 possible. | | |
| 23. | 88:20-89:07 | 20 So if Michael Wheeler and the Israel -- the 21 guy whose name is Israel in this were both Tesla 22 employees, those interviews you would expect would be 23 done by Tesla HR, and then the interviews -- assuming 24 that Ramon Martinez and Owen Diaz are temporary 25 employees working through a staffing agency, you would 1 interviewed by their 2 respective contracting agencies; correct? 3 A Correct. 4 I have had occasion to that whoever was on 5 site for, say, West Valley wasn't well versed or 6 comfortable. So if that kind of situation came up, I 7 would assist, but would make sure that they were there. | **89:8-90:1** 8 Q I see. 9 **So in a situation where the staffing agency** 10 **doesn't feel comfortable doing the investigation, you're** 11 **aware of at least one situation where Tesla HR helped** 12 **out in that situation?** 13 A Yeah, and I can't remember the details. They 14 had someone new that was there. I think it was two 15 people really not just -- just not getting along, and 16 whoever they had on site that day was newer and hadn't 17 done investigations. 18 **Q Okay. And --** 19 A Similar to how when we would get new people a 20 lot of times, we would have them come along and make 21 sure the person that you're speaking to is comfortable 22 with that, because they're learning, before just saying, 23 "Hey, good luck." 24 **Q Well, that's good.** 25 A Yeah. But one way or another, make sure it 1 gets done. 2 **Q Sure.** | **OBJECTION: RELEVANCE; FRE 403.** **The counter-designated testimony was not read during the first trial.** The additional request by Defendant is irrelevant. The portion Defendant seeks to add is confusing as it does not relate to Plaintiff and instead gives an anecdotal example that is irrelevant to issues here. |
| 24. | 99:22-100:20 | 22 You understand that this drawing that's on the 23 fourth page of Exhibit 128, that that drawing is a | Calls for speculation. | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 24 drawing that could be offensive to African Americans? <br> 25 A Yes. <br> 1 Q Right? <br> 2 A Yes. <br> 3 Q And it's a caricature that historically was <br> 4 used -- it's been called a "pickaninny." Have you heard <br> 5 that expression before? <br> 6 A Yes. <br> 7 Q And it was historically -- this drawing with <br> 8 the bone in the hair was historically a way to put down <br> 9 African Americans; right? <br> 10 A That's my understanding. <br> 11 Q So if you had understood that Mr. Martinez had <br> 12 admitted to putting this poster -- to putting this <br> 13 drawing up, and also to have threatened Mr. Diaz <br> 14 previously, you would expect that Mr. Martinez would be <br> 15 fired pursuant to Tesla policy, wouldn't you? <br> 16 A Assuming all of that is true -- <br> 17 Q Yeah. <br> 18 A -- I wouldn't presume what nextSource does, <br> 19 but I would ask them not to have him return to an <br> 20 assignment at Tesla. | | |
| 25. | 100:22-101:07 | 22 Now, if you go on to Mr. Diaz's statement: <br> 23 ..."and because nothing has been done, it | | |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 24 seems that his behavior is getting worse." 25 That would be a concern to you as a Tesla 1 it, if conduct is getting worse? 2 A Absolutely. 3 Q Where Mr. Diaz then says: 4 "As an employee, I'm entitled to a safe 5 and harassment-free work environment," 6 that's true; right? 7 A Yes. | | |
| 26. | 104:15-19 | 15 Q Okay. Now, certainly if Ramon Martinez were 16 yelling at him and threatening him, that would violate 17 Tesla's policies; right? -- at least the threatening 18 part? 19 A Yes. Assuming it's Ramon Martinez. | | |
| 27. | 108:4-109:12 | 4 Exhibit 35 for the record is a three-page 5 document Bates-stamped Tesla 140 to 142. And it appears 6 that at least in this situation with respect to Ramon 7 Martinez and Owen Diaz, that eventually at least it got 8 forwarded to you. 9 Do you see that? 10 A Yes. 11 Q And so at least at some point you did get 12 Mr. Diaz's statement about his -- the threat that he 13 perceived from Ramon Martinez; correct? 14 A Owen's statement? | **105:22-106:9** **22 Q Exhibit 155 for the record is a one-page 23 document Bates-stamped Tesla 61. We've already seen the 24 bottom part of this message. There's just an email at 25 top which is from Tom Kawasaki to Wayne Jackson at 1 nextSource. 2 If I understand it correctly, Mr. Kawasaki, 3 assuming he's a supervisor in the area where Owen Diaz** | **OBJECTION: RELEVANCE; FRE 403.** **The counter-designated testimony was not read during the first trial, except for 107:23-108:2 and 109:13-19.** The additional request by Defendant is irrelevant. |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 15 Q Yeah.<br>16 A Assuming this whole thread was actually<br>17 forwarded at the time?<br>18 Q Yeah.<br>19 A Yes. If it was, I can't say for sure.<br>20 Q Okay. But based on the email chain, I mean, 21 it looks like it was forwarded to you. Do you see that?<br>22 A Correct.<br>23 Q Okay.<br>24 A Several days later; right? Yeah.<br>25 Q Yeah.<br>1 made on the 17th, and then<br>2 forwarded again on the 20th to Wayne Jackson, and then<br>3 it looks like Wayne Jackson forwarded it to you on that<br>4 same day, on the 20th.<br>5 A Terri.<br>6 Q I'm sorry. Terri.<br>7 A Yeah.<br>8 Q Terri forwarded it to you that same day,<br>9 October 20th of 2015; right?<br>10 A Yes. And based on that, it would appear that 11 it was all nextSource employees involved, other than<br>12 Victor and Ed. | 4 **worked, it would be his responsibility to forward any**<br>5 **complaints such as Mr. Diaz's complaint to the**<br>6 **contracting agency and to Tesla's HR; is that correct?**<br>7 A If he was a Tesla employee, I would expect<br>8 that he would go through Tesla HR to then loop in the<br>9 appropriate either temporary or contract company.<br><br>**106:15-22**<br><br>15 **If Mr. Kawasaki wasn't a Tesla employee, then**<br>16 **sending it to Wayne Jackson would have been the correct**<br>17 **procedure; is that correct?**<br>18 A Assuming he worked for -- what is it,<br>19 nextSource that Wayne is?<br>20 **Q Yeah, yeah.**<br>21 A I believe so, but I don't know what their<br>22 procedures were for their supervisors.<br><br>**107:5-108:02**<br><br>5 **Q Exhibit 191 for the record is a one-page**<br>6 **document Bates-stamped nextSource 101, and it's some** | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|--------------------------------|----------------------|
|     |       |                    | 7 **emails from October 19th and 20th. And I'll just point** 8 **your attention to the top email.** 9 A Okay. 10 **Q So where Terri Garrett says here to Wayne** 11 **Jackson that they needed to get the employees'** 12 **statements and other witness statements to Tesla HR** 13 **today, that, again, is in line with the working** 14 **relationship between the different human resource** 15 **departments; is that correct?** 16 A Correct. And I do recall having to push on 17 behalf of Tesla to get things from -- 18 **Q From nextSource?** 19 A Yes. 20 **Q Okay. So --** 21 A Not necessarily related to this one, but just 22 in general. 23 **Q Okay. So in general, you had -- sometimes you** 24 **had to push nextSource to get you the information you** 25 **needed so that you could evaluate –** 1 A And go about things the way that we had asked 2 them to go about them. <br><br>**109:13-18** |  |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 13 Q Okay. And it looks like maybe Ed was talking<br>14 about getting involved here, and Terri Garrett was<br>15 asking for your help as to whether or not Mr. Romero<br>16 should be involved in the investigation; right?<br>17 A It looks like she wants him not to be<br>18 involved.<br>**110:1-6**<br><br>1 Q So the reason you would have canceled Ed --<br>2 Ed's investigation into this is because it appeared to<br>3 you that nextSource should be doing the investigation;<br>4 right?<br>5 A Yeah, I believe she said that two out of the<br>6 three had already been spoken to. | |
| 28. | 116:22-25 | 22 Q And the correct response to threatening 23 conduct is to remove that individual from the factory;<br>24 right?<br>25 A Correct. | **115:1-21**<br><br>1 Exhibit 65 for the record is a two-page<br>2 document Bates-stamped Tesla 127 and 128, and it's a<br>3 series of emails starting on November 6th of 2015 and --<br>4 at 12:12 a.m., and then going until 7:18 p.m. on that<br>5 same date.<br>6 Ed Romero sends the email down at the bottom | **OBJECTION: RELEVANCE; FRE 403.** <u>**The counter-designated testimony was not read during the first trial.**</u> The additional request by Defendant is irrelevant. This is confusing to the jury because it relates to Rothaj Foster who did not |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER- DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|----------------------------------|----------------------|
|  |  |  | 7 **to Wayne Jackson, copied to Victor Quintero and Jaime** 8 **Salazar.** 9 **Who was Jaime Salazar? Was that another** 10 **supervisor?** 11 A I remember the name as being part of that 12 group. I can't recall if he was a supervisor or not. I 13 don't remember his job title. 14 **Q Okay. And then it appears based on** 15 **Mr. Romero's statement that he was able to confirm** 16 **through a witness, Yordano Ramirez, if you look at the** 17 **last page of Exhibit 65, that in fact Mr. Ramirez had** 18 **witnessed Rothaj Foster conduct himself in a threatening** 19 **manner towards Owen Diaz.** 20 **Do you see that?** 21 A Yes. **116:1-21** 1 **On the first page, Ed Romero says that:** 2 **"I had Rothaj Foster removed from the** 3 **Tesla premises last night at 10:00 p.m. The** 4 **reason is that he was conducting himself in a** 5 **threatening manner against Owen Diaz."** | racially harass Mr. Diaz. |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 6 **Then if you move up a little bit, Victor** <br> 7 **Quintero says:** <br> 8 **"I agree that the employee should not be** <br> 9 **allowed to return."** <br> 10 **And then after that, it was sent to you.** <br> 11 **Do you see that?** <br> 12 A Yes. <br> 13 **Q Does it appear to you that the correct** <br> 14 **procedure, at least with respect to Rothaj Foster, was** <br> 15 **followed?** <br> 16 A Yes. <br> 17 **Q It appears they investigated, they got witness** <br> 18 **statements and then made a decision that Mr. Foster** <br> 19 **should not be there because he was engaging in** <br> 20 **threatening conduct; right?** <br> 21 A Correct. | |
| 29. | 119:23-120:04 | 23 Q Okay. But if an allegation of racist -- of a 24 racial term, particularly if it's the n-word, is 25 confirmed, that's the kind of information that 1 supervisors and managers such as Ed Romero and Victor 2 Quintero were trained to at least forward to HR; 3 correct? 4 A Yes. | | |
| 30. | 123:09-123:18 | 9 Q But any worker who is subject -- who is 10 working in the Tesla | | |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | factory is subject to Tesla 11 policies; correct? 12 A Yes. 13 Q And -- and any worker who is being harassed or 14 discriminated against, regardless of who they work for, 15 if -- if the harassment or discrimination occurs in the 16 Tesla factory, Tesla has a responsibility to do 17 something about it if it knows about it; right? 18 A Yes. | | |
| 31. | 133:16-23 | 16 Q I do understand that. I'm wondering, 17 though – we've looked at some documents which showed 18 numerous complaints about the n-word, several complaints 19 about the n-word, and I'm wondering if there was any 20 kind of discussion in human resources that there was a 21 need to address the use of that word in particular in 22 the workplace. 23 A Not that I recall. | Relevance and unduly prejudicial.  The references to "numerous complaints about the n-word" relate to incidents that did not involve Mr. Diaz and about which Mr. Diaz had no personal knowledge.  Tesla also refers to and incorporates the arguments in its MIL No. 4.

If testimony allowed, counter designate:

**133:3-15**

**Q In terms of prevention of harassment based on 4 race, are you aware of anything in particular that Tesla 5 did other than have its onboard training and the annual 6 training you talked about for supervisors? 7 Was there anything other than that to prevent** | **RESPONSE:** The Court already analyzed this and permitted it's relevance and rejected a FRE 403 objection. More importantly, this goes directly to Tesla's reprehensible conduct in this retrial.

**OBJECTION: RELEVANCE; FRE 403.** **The counter-designated testimony was not read during the first trial.** The additional request by Defendant is irrelevant. The portion Defendant seeks to add is generic without any real context. |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 8 **racial discrimination or harassment in the workplace?** 9 A As I already mentioned, like when things came 10 up, they would be addressed. It just wasn't tolerated. 11 But I don't recall anything specific, unless 12 it was -- with 5,000 people in a building, if I had an 13 issue with a group of 30, I would definitely address it 14 with those 30 without giving an idea to the other 4,700. 15 Does that make sense? | |

## PLAINTIFF'S DESIGNATIONS OF KEVIN MCGINN'S DEPOSITION TESTIMONY AND COUNTER-DESIGNATIONS AND RESPONSES

Plaintiff Owen Diaz provides the following designations along with Defendant Tesla, Inc.'s objections and counter-designations as well as Plaintiff's responses thereto.

**McGinn, Kevin 6/17/19, Volume 1**

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| 1. | 7:21-7:23 | **21 MR. ORGAN: Q. Could you please state and 22 spell your full name for the record. 23 A. Kevin McGinn; K-E-V-I-N, M-C-G-I-N-N.** | | |
| 2. | 9:06-9:12 | **06 Q. When did you -- well, what's your current 07 position for nextSource, Inc.?** | | |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|-----|-------|--------------------|-------------------------------|----------------------|
| | | 08 A. I'm the chief financial officer for<br>09 nextSource, Inc.<br>**10 Q. And where are you located? Where is your**<br>**11 office?**<br>12 A. Based in Nashville, Tennessee. | | |
| 3. | 99:6-9;<br>99:14-99:18 | **06 Q. But in terms of your suppliers, the companies**<br>**07 like CitiStaff and Chartwell, they're essentially just**<br>**08 providing employees to Tesla to work in Tesla's**<br>**09 factory; is that correct?**<br><br>**14** THE WITNESS: The supplier will, in the<br>**15** course of their employment of the worker, will<br>**16** recruit, onboard, and pay the worker. They place that<br>**17** worker at the Tesla site, who then works under the<br>**18** day-to-day direction and control of Tesla. | **Objection: relevance**<br><br>If allowed,<br><br>counterdesignation:<br><br>**97:14-24**<br><br>14 Q. So in other words, Mr. Diaz's relationship,<br>15 as I understand it then, is that of -- he -- Mr. Diaz<br>16 was working for a contractor supplier of nextSource,<br>17 pursuant to nextSource's contract with Tesla; is that<br>18 right?<br>19 **A. Yes.**<br>20 Q. Okay. In terms of Mr. Diaz's communications<br>21 to Wayne Jackson through this email, was that an<br>22 appropriate way for Mr. Diaz to complain to nextSource<br>23 relative to the race harassment he felt he was being<br>24 exposed to?<br><br>**99:2-4**<br><br>2 THE WITNESS: I can't speculate on the | **RESPONSE:** Plaintiff believes Defendant will seek to disclaim culpability based on contractor conduct, and this testimony rebuts that argument.<br><br>**OBJECTION: RELEVANCE; FRE 403.** <u>**The counter-designated testimony was not read in its entirety during the first trial. Only 97:14-19 was read.**</u> The additional request by Defendant is irrelevant. The portion Defendant seeks to add is confusing as it does not relate to Plaintiff and instead gives an anecdotal example that is |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | | 3 specifics between the employer, supplier and employer, 4 and their employee. I could not speculate on that. | irrelevant to issues here |
| 4. | 106:24-108:08 | **24 Q. So we were talking about the process that 24 Wayne Jackson was supposed to go through.**<br><br>**01 One thing that Mr. Jackson was supposed to do 02 was to act as a liaison between Tesla and CitiStaff; 03 is that correct?** 04 A. Correct. **05 Q. And another thing that Mr. Jackson was 06 supposed to do was to gather information relative to 07 Mr. Diaz's complaint; correct?** 08 A. When Mr. Jackson was made aware of the 09 complaint, he gathered facts. **10 Q. Okay. And then another thing Mr. Jackson was 11 supposed to do was to confer with his boss, Terry 12 Garrett, about steps to take for -- relative to 13 nextSource; correct?** 14 A. I would push back a little bit on what to do 15 next for nextSource. This was not deemed to be a 16 nextSource issue, so what Wayne was doing was -- my 17 understanding was gathering the facts, taking | **104:18-105:10**<br><br>18 Q. And who was the program team for nextSource 19 working at Tesla in late 2015, early 2016? **20 A. Mr. Wayne Jackson.** 21 Q. What was the protocol for Mr. Jackson to 22 follow, in terms of keeping nextSource informed about 23 his investigation of Mr. Diaz's complaint? **24 A. So as Mr. Jackson would be gathering 25 statements -- again, fact gathering he might confer**<br><br>1 **with his supervisor, which would be logical. He'd** 2 **want to bounce ideas off his supervisor and share the** 3 **facts.** 4 Q. Who was Mr. Jackson's supervisor in late 5 2015, early 2016? 6 **A. That would have been Terry Garrett. I** 7 **believe her title is director, division director,** 8 **something.** 9 Q. Director of operations? | **OBJECTION: RELEVANCE; FRE 403.** **The counter-designated testimony was not read during the first trial.** The additional request by Defendant is irrelevant. The portion Defendant seeks to add is confusing as it is undisputed that Mr. Wayne Jackson did not conduct an investigation. Instead, Jacqueline Delgado conducted the investigation and interviewed Mr. Diaz. This then is classic FRE 403 testimony. |

| NO. | LINES | DEPOSITION EXCERPT | OBJECTION/ COUNTER-DESIGNATION | PLAINTIFF'S RESPONSE |
|---|---|---|---|---|
| | | 18 statements, and then his disposition would be to bring<br>19 that to Tesla on the client side and then the supplier<br>20 for which the offending person would have worked.<br>**21 Q. In terms of how Mr. Jackson was supposed to**<br>**22 bring the issues relating to Owen Diaz's complaint and**<br>**23 his investigation to Tesla, was there a particular**<br>**24 person that he was supposed to bring that information**<br>**25 to at Tesla?**<br><br>01 A. Yes, so concurrent with Mr. Diaz advising<br>02 Mr. Jackson, Wayne Jackson about the claim, the –<br>03 remember I mentioned earlier, there was a series of<br>04 department managers. Well, the affected department<br>05 manager, I believe the name is Victor Quintero,<br>06 brought -- advised Wayne of the claim, complaint, and<br>07 Wayne was fact gathering and would have brought the<br>08 information back to Victor Quintero. | 10 **A. Yes.**<br><br>**108:19-21**<br><br>19 Q. And then what was -- is there anything else<br>20 you remember about the investigation relative to<br>21 Mr. Diaz's complaint?<br><br>**108:23-25**<br><br>23 THE WITNESS: I mean, we're in some detailed<br>24 fact pattern here. My understanding is he talked to<br>25 Diaz and –<br><br>**109:1-11**<br><br>1 MR. ORGAN: Q. Wayne Jackson?<br>2 **A. Yes, sorry.**<br>3 **Wayne Jackson took a statement from Diaz. I**<br>4 **want to say talk. He took a statement from Diaz. I**<br>5 **don't know if it was in person or just, you know, via**<br>6 **phone or something. And he memorialized essentially**<br>7 **the same, you know, brushes of the complaint by Diaz.**<br>8 **So, in other words, you know, filling in details**<br>9 **around the incident. So I don't know what more**<br>10 **Mr. Jackson would have done beyond that.** | |

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.

1

Dated: February 13, 2023

**CALIFORNIA CIVIL RIGHTS LAW GROUP**

2

**ALEXANDER MORRISON + FEHR LLP**
**ALTSHULER BERZON LLP**

3

4

_____/s/ Lawrence A. Organ_____

Lawrence A. Organ

5

Cimone A. Nunley

Marqui Hood

6

J. Bernard Alexander III

Michael Rubin

7

Jonathan Rosenthal

Attorneys for Plaintiff

8

OWEN DIAZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S DEPO DESIGNATIONS; DEF.'S COUNTER-DESIGNATIONS; & PLAINTIFF'S RESP.