IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

OWEN DIAZ,                  )
                                  )
       Plaintiff,        )
                                  )
       v.                   )
                                  )     No. 17-cv-6748
                                  )
TESLA, INC., et al.,     )
                                  )
       Defendants    )
                                  )
_____)

**DRAFT PRELIMINARY JURY INSTRUCTIONS**

**For discussion at the Pretrial Conference**

No. 1
**DUTY OF JURY**

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**No. 2**
**JURY'S ROLE**

Plaintiff Owen Diaz was employed by defendant Tesla, Inc., doing business as Tesla
Motors, Inc., at the Tesla factory in Fremont, California, from June 2015 to March 2016.  He
brought a lawsuit against Tesla alleging violations of state and federal law.  It has been
conclusively determined that Tesla is liable to Mr. Diaz for: (1) intentionally creating a hostile
work environment based on race in violation of federal law, (2) intentionally failing to prevent
racial harassment in violation of federal law, and (3) negligently retaining and supervising one or
more of Mr. Diaz's supervisors in violation of California state law.  It has also been determined
that Mr. Diaz is entitled to punitive damages as a result of Tesla's conduct.  Because of these
determinations of Tesla's liability, Mr. Diaz is entitled to recover from Tesla his past and future
non-economic damages and punitive damages.  In this trial, you must accept each of these
determinations as true.  It will be your job to determine the amount of the damages award.

I will now describe the findings that led to the determination of Tesla's liability in this
case.  Then I will describe what you should consider in awarding damages.  And after that, I will
give you instructions on the trial process and how to consider the evidence.

**No. 3**
**CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT— HARASSMENT BECAUSE OF PROTECTED CHARACTERISTICS**

It has been determined that Mr. Diaz was subjected to a racially hostile work environment while employed by Tesla.  That means that Mr. Diaz established:

1.     that he was subjected to slurs, insults, jokes or other verbal comments or physical contact or intimidation of a racial nature

2.     the conduct was unwelcome;

3.     the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create a racially abusive or hostile work environment.  "Severe or pervasive" means conduct that altered the conditions of employment and created a work environment that is hostile, intimidating, offensive, oppressive, or abusive;

4.     Mr. Diaz perceived the working environment to be abusive or hostile; and

5.     a reasonable African American man in his circumstances would consider the working environment to be abusive or hostile.

Whether the environment constituted a racially hostile work environment was determined by looking at the totality of the circumstances, including the frequency of the harassing conduct, the severity of the conduct, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance.

**No. 4**
**CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT CAUSED BY**
**SUPERVISOR**

An employer may be liable when an employee's supervisor creates a racially hostile work environment for that employee.  A "supervisor" is someone who is empowered by the employer to take tangible employment actions regarding the employee, such as hiring, firing, failing to promote, reassigning with significantly different responsibilities, or significantly changing benefits.

It has been determined that Mr. Diaz was subjected to a racially hostile work environment by Tesla, and that Ramon Martinez or Robert Hurtado or both were/was his supervisor empowered by Tesla to take tangible employment actions against him.

**No. 5**

**CIVIL RIGHTS—TITLE VII—HOSTILE WORK ENVIRONMENT CAUSED BY NON-
IMMEDIATE SUPERVISOR OR BY CO-WORKER—CLAIM BASED ON
NEGLIGENCE**

It has also been determined that:

1. Mr. Diaz was subjected to a racially hostile work environment by a non-immediate supervisor or co-worker; and

2. Tesla or a member of its management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

**No. 6**
**FAILURE TO PREVENT HARASSMENT**

It has been determined that Tesla failed to take all reasonable steps to prevent harassment based on race. It was established:

> 1. That Mr. Diaz was an employee of Tesla or providing services under a contract with Tesla;
> 2. That Mr. Diaz was subjected to harassment in the course of employment;
> 3. That Tesla failed to take all reasonable steps to prevent the harassment;
> 4. That Mr. Diaz was harmed; and
> 5. That Tesla's failure to take all reasonable steps to prevent harassment was a substantial factor in causing Mr. Diaz's harm.

**No. 7**
**NEGLIGENT SUPERVISION OR RETENTION OF EMPLOYEE**

It has been established that Mr. Diaz was harmed by Ramon Martinez and that Tesla is responsible for that harm because Tesla negligently supervised or retained Ramon Martinez.  Mr. Diaz has shown:

    1. That Tesla employed Ramon Martinez during the time that Mr. Diaz worked at Tesla;
    2. That Ramon Martinez was or became unfit or incompetent to perform the work for which he was employed;
    3. That Tesla knew or should have known that Ramon Martinez was or became unfit or incompetent and that this unfitness or incompetence created a particular risk to others;
    4. That after Tesla knew or should have known of Ramon Martinez's unfitness or incompetence, it retained or supervised Ramon Martinez in his position at Tesla's factory;
    5. That Ramon Martinez's unfitness or incompetence harmed Owen Diaz; and
    6. That Tesla's negligence in supervising or retaining Ramon Martinez was a substantial factor in causing Owen Diaz's harm.

**No. 8**
**LIABILITY FOR CIVIL RIGHTS VIOLATIONS BASED ON CONTRACTUAL RELATIONSHIP**

It has been determined that Tesla is liable to Mr. Diaz for civil rights violations based on contractual relationship.  Mr. Diaz has established that he was an employee of Tesla, Inc. or that he showed that:

(i) He gained rights or was a beneficiary under a contract;

(ii) Tesla engaged in racial discrimination or harassment in the enforcement of the contract, or

Tesla failed to take reasonable step(s) to prevent harassment from occurring in the workplace; and

(iii) He suffered injuries that he would not have suffered but for Tesla's conduct.

Mr. Diaz did not need to have signed the contract, nor have been a party to the contract, in order to have rights under the contract.  He could establish his rights under the contract by showing that he received benefits or privileges under the contractual relationship between Tesla and nextSource or Citistaff, and the contracting parties intended that he receive benefits or privileges that were not incidental or remote.

**No. 9**
**PUNITIVE DAMAGES – DETERMINATION**

It has also been established that Mr. Diaz is entitled to an award of punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

It has been established that Tesla's conduct that harmed Mr. Diaz was malicious, oppressive or in reckless disregard of Mr. Diaz's rights. Conduct is malicious if it is accompanied by ill will or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

**No. 10**
**DAMAGES—PROOF AND PREPONDERANCE OF THE EVIDENCE**

Now that I have told you what has been established, I will explain your role in this case.

Your role in this case is to determine the amount of damages to which Mr. Diaz is entitled.   Mr. Diaz has the burden of proving damages by a preponderance of the evidence.  This means that you must be persuaded by the evidence that the claim of damages is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

Damages means the amount of money that will reasonably and fairly compensate Mr. Diaz for any injury you find was caused by Tesla.  In determining the measure of damages, you should consider:

> The nature and extent of the injuries;

> The loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

> The mental or emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

> The reasonable value of necessary medical care, treatment, and services that with reasonable probability will be required in the future.

It is for you to determine what damages have been proved.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

**No. 11**
**DAMAGES—MITIGATION**

Mr. Diaz has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

Tesla has the burden of proving by a preponderance of the evidence:

1.  that Mr. Diaz failed to use reasonable efforts to mitigate damages; and

2.  the amount by which damages would have been mitigated.

**No. 12**
**PUNITIVE DAMAGES**

When you consider punitive damages, you may award them for Tesla's conduct that harmed Mr. Diaz which was malicious, oppressive or in reckless disregard of his rights.  Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring Mr. Diaz.  Conduct is in reckless disregard of Mr. Diaz's rights if, under the circumstances, it reflects complete indifference to his safety or rights, or if Tesla acted in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law.  An act or omission is oppressive if Tesla injures or damages or otherwise violates the rights of Mr. Diaz with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of Mr. Diaz.

You must use reason in setting the amount.  Punitive damages should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of Tesla's conduct, including whether the conduct that harmed Mr. Diaz was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.  You may not, however, set the amount of any punitive damages in order to punish Tesla for harm to anyone other than the plaintiff in this case.

**No. 13**
**NOMINAL DAMAGES**

The law that applies to this case authorizes an award of nominal damages for punitive damages.  If you find that the plaintiff has failed to prove damages as defined in the preceding instruction, you must award nominal damages.  Nominal damages may not exceed one dollar.

No. 14
## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.

No. 15
**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)     Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

No. 16
**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

No. 17
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

No. 18
**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered, or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

No. 19
## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

No. 20
**IMPLICIT BIAS**

We all have feelings, assumptions, perceptions, fears, and stereotypes about others. Some biases we are aware of, and others we might not be fully aware of, which is why they are called implicit or unconscious biases. No matter how unbiased we think we are, our brains are hard-wired to make unconscious decisions. We look at others and filter what they say through our own personal experience and background. Because we all do this, we often see life and evaluate evidence in a way that tends to favor people who are like ourselves, or who have had life experiences like our own. We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make an important decision in the case. You must one, take the time you need to reflect carefully and thoughtfully about the evidence.

Two, think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case. If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion or sexual orientation, would you still view them, and the evidence, the same way?

Three, listen to one another. You must carefully evaluate the evidence and resist, and help each other resist, any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions, and biases. Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision making.

And four, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

The law demands that you make a fair decision based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

No. 21
**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that

has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over].  If any juror is exposed to any outside information, please notify the court immediately.

No. 22
**PUBLICITY DURING TRIAL**

   If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

No. 23
**NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

No. 24
**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

No. 25
**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

No. 26
**OUTLINE OF TRIAL**

 Trials proceed in the following way:  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

 The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

 After the evidence has been presented, I will again instruct you on the law that applies to the case and the attorneys will make closing arguments.

 After that, you will go to the jury room to deliberate on your verdict.