Pages 1 - 58

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

```
OWEN DIAZ,                      )
                                )
           Plaintiff,           )
                                )
   VS.                          )  NO. C 17-06748-WHO
                                )
TESLA, INC., doing business as  )
TESLA MOTORS, INC., et al.,     )
                                )
           Defendants.          )
_____ )
```

San Francisco, California
Monday, February 27, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

        CALIFORNIA CIVIL RIGHTS LAW GROUP
        332 San Anselmo Avenue
        San Anselmo, California 94960
    BY:  **LAWRENCE A. ORGAN, ATTORNEY AT LAW**
        **CIMONE A. NUNLEY, ATTORNEY AT LAW**

        ALTSHULER BERZON LLP
        177 Post Street, Suite 300
        San Francisco, CA 94108
    BY:  **MICHAEL RUBIN, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
            Official Reporter, CSR No. 12219

```
 1   APPEARANCES:   (CONTINUED)

 2   For Plaintiff:
                              COLLIER TETI LLP
 3                            1 Sansome Street - Suite 3500
                              San Francisco, California 94104
 4                       BY:  DUSTIN L. COLLIER, ATTORNEY AT LAW

 5   For Defendant Tesla:
                              QUINN, EMANUEL, URQUHART
 6                                 & SULLIVAN LLP
                              865 South Figueroa Street - 10th Floor
 7                            Los Angeles, California  90017
                         BY:  DANIEL C. POSNER, ATTORNEY AT LAW
 8                            KATHLEEN M. SULLIVAN, ATTORNEY AT LAW

 9                            QUINN EMANUEL URQUHART
                                   & SULLIVAN, LLP
10                            711 Louisiana Street - Suite 500
                              Houston, Texas 77002
11                       BY:  ASHER GRIFFIN, ATTORNEY AT LAW

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS

1    <u>**Monday - February 27, 2023**</u>                              <u>**1:58 p.m.**</u>

2                         P R O C E E D I N G S

3                         ---o0o---

4         **THE CLERK:**  All rise.

5      This Court is now in session.

6      The Honorable William H. Orrick presiding.

7         **THE COURT:**  Good afternoon, everybody.

8         **ALL:**  Good afternoon, Your Honor.

9         **THE COURT:**  Please be seated.  And I will not require

10   you to wear your masks.  There aren't enough people in the

11   courtroom.  If you would like to wear your mask, you are -- I

12   encourage you to do so, but it's entirely up to you.

13        **THE CLERK:**  We're here in Case Number 17-6748, Diaz

14   versus Tesla, Incorporated.

15     Counsel, if you would, please come forward and state your

16   appearance.

17        **MR. RUBIN:**  Good afternoon.  Michael Rubin, Altschuler

18   Berzon, for the plaintiffs.

19        **MR. ORGAN:**  Larry Organ, Your Honor, for the

20   plaintiff.  And Cimone Nunley, also from our firm.

21        **MR. COLLIER:**  Dustin Collier, Your Honor, for the

22   plaintiff.

23        **MS. HENDERSON:**  Good afternoon, Your Honor.  Mari

24   Henderson for the defendant.

25        **MR. POSNER:**  Dan Ponser for the defendant, Tesla.

PROCEEDINGS

1          **MR. GRIFFIN:**  Asher Griffin for the defendant, Tesla,

2   Your Honor.

3          **MR. ALM:**  Joseph Alm for Tesla, Inc.

4          **THE COURT:**  Great.  Good afternoon.

5      This will be -- this will be something.  So I'm looking

6   forward to it.

7      So there's a number of different things to go over today.

8      First, I want to reiterate what nobody seems to get yet,

9   and maybe it's because I'm not clear or maybe it's because you

10  don't want me to be clear; but the parties are stuck with the

11  decisions they made prior to and at the first trial that

12  resulted in the evidence that was presented at the first trial.

13  No one has pointed out to me a manifest error that I made with

14  respect to that evidence.  This is not a retrial.  It is a

15  retrial on damages and punitive damages.

16      And as I've been thinking about the way to present this to

17  the jury -- we'll get to the preliminary instructions later on.

18  But what I'm thinking is that I should tell them that we had --

19  that this trial -- this case is being tried in two phases, and

20  that we've done the first phase, which is the liability phase.

21  And now we're doing the second phase, which is damages.

22      And I think that explains for them their job.  And I think

23  it may address some of the issues that came up in the motions

24  in limine.  And I think it may simplify things.  But anyway,

25  that's what I'm thinking about right now.

**PROCEEDINGS**

1    So Robert Hurtado may not testify; Andres Donet may not

2  testify; Amy Oppenheimer may.  No new exhibits.  Witnesses who

3  testified before may testify again.  No new incidents.  I am

4  allowing -- because I said I would, a new person most

5  knowledgeable for Tesla; but she cannot change the substance of

6  the testimony or testify about changes in Tesla policy.

7    At the same time, while job performance may be irrelevant

8  to damages, it does provide context.  And the -- Tesla may use

9  that information as it wishes.  It can use all the evidence it

10  presented last time, and it's not precluded from asking

11  questions in a different way to highlight defenses or minimize

12  the impact of specific incidents.

13    So the bottom line is that I'm going to -- I'll let you

14  point out some reason why everything that I've just said

15  shouldn't apply, but I'm planning to deny all of the

16  defendant's motions in limine.  I'm planning to grant the

17  plaintiffs' first two, subject to what I've just said, and deny

18  the remainder of them.  And with respect to the deposition --

19  depositions designations, you can read them as they were read

20  in the first trial or less than you put in the first trial, but

21  not more.

22    So that's the first tranche of information.

23    I'll start with the defendants.  Is there anything that

24  you want to point out to me?

25      **MR. GRIFFIN:**  Your Honor, again, Asher Griffin on

**PROCEEDINGS**

1   behalf of Tesla.

2        We just want to clarify as to MILs 1 and 2, because the

3   way that plaintiffs presented their MILs, I think -- I think I

4   understand your ruling that we're not going to go outside the

5   temporal scope of October -- October 21st -- I mean

6   October 2021.  We're not going into other instances of

7   discriminatory conduct and -- but to the extent we, as Tesla's

8   lawyers, want to ask questions in context for credibility,

9   it's -- we don't have to read the questions that they asked the

10  first time.

11       **THE COURT:**  Exactly right.

12       **MR. GRIFFIN:**  So we can go through and try to put

13  these instances that we -- were already in the record in

14  context in the way we think is appropriate.

15       **THE COURT:**  You are not bound -- you're bound to the

16  strategies that your -- the prior counsel for Tesla and Tesla

17  employed, but you're not bound to every question that they

18  asked.  And you can bring out whatever you're able to bring out

19  from the evidence that was -- existed before.

20       **MR. GRIFFIN:**  Okay.  And then, with regards to their

21  Motion in Limine Number 1, we clearly are not -- we understand

22  the Court's ruling with regards to liability and the prior

23  jury's finding, but -- and we're going to abide by the Court's

24  ruling related thereto, but that's the extent of it.  We're

25  allowed to -- what -- consistent with what you just said,

**PROCEEDINGS**

1  challenge particular instances and go through with plaintiffs'

2  counsel and plaintiff to discuss the context of the -- each

3  instance, but -- and we're not -- don't have to concede the

4  existence of all the allegations that plaintiffs are putting

5  forward; correct?

6      **THE COURT:**  Right.  I mean, the jury didn't make a

7  finding that was specific as to individual incidents.  And so I

8  expect that you'll be trying to show that one or another of

9  those incidents either -- didn't happen the way that Mr. Diaz

10 described it.  I think that's -- you're not bound by what

11 the -- the way that the witnesses were cross-examined.

12     **MR. GRIFFIN:**  Okay.  Thank you, Your Honor.  I just

13 wanted to clarify the extent of the granting of the MILs.

14     **THE COURT:**  Mr. Posner, come on up.

15     **MR. POSNER:**  Thank you.  Dan Posner for Tesla.

16     Your Honor opened by explaining your inclination to tell

17 the jury that there's been two phases of the trial.  We've had

18 some discussions between the parties meet-and-confer

19 discussions about whether and to what extent it would be

20 appropriate to inform the jury that the previous

21 determinations, which are referenced in a number of places and

22 in a number of ways, were the result of a prior jury trial or

23 simply were a prior determination.

24     We think there are plenty of ways to tell the jury what

25 they need to know about determinations that they need to apply

**PROCEEDINGS**

1   here without telling the jury that the previous determinations

2   were made in a prior jury trial.

3        We found some authority that seems to recognize that it

4   could be prejudicial to tell a second jury that first

5   determinations were made in a prior jury trial.  So our

6   inclination, whether it needs to be a formal order or ruling or

7   just guidance to the parties, would be to avoid telling the

8   second jury, unless absolutely necessary for reasons that we

9   can't contemplate right now, that the previous determinations

10  were made at a jury trial.

11       **THE COURT:**  So -- and I don't actually think that

12  you're right about that, but I'm willing to go along with that

13  notion.

14       What I was -- the way that I had -- I phrased it when I

15  came out here and the way that I'm thinking about it is to say

16  that the case is being tried in two phases and that this jury's

17  job is to try the damages phase, not to say anything about how

18  the first phase was determined.  They can figure it was by me,

19  they could figure -- who knows what they figure.  But I won't

20  be -- I don't plan to be explicit about it, although I really

21  doubt that you would need to be concerned about that particular

22  thing.  But...

23       **MR. POSNER:**  Sufficient.  Okay.  Thank you, Your

24  Honor.

25       **THE COURT:**  All right.  Mr. Rubin?

**PROCEEDINGS**

1          **MR. RUBIN:**  Thank you.  I would like to address that

2     last point that Mr. Posner raised.

3          **THE COURT:**  Please go ahead.

4          **MR. RUBIN:**  We did have a meet-and-confer.  Tesla did

5     inform us just the other day that it was going to ask the Court

6     to preclude any reference to there having been a prior trial or

7     a prior jury trial.

8          The reason that Tesla stated that it wants to preclude

9     that reference is because it's concerned that if the retrial

10    jury hears that there was a prior trial, whether by jury or

11    otherwise, it will give, in Tesla's words, undue weight to the

12    jury's liability findings.

13         There can be no undue weight.  Those findings are

14    conclusive and binding.  That's not a reason not to tell the

15    retrial jury there was a prior trial.  Moreover, as you know,

16    in the course of cross-examining witnesses, there will be

17    occasions where it may be necessary to impeach a witness by

18    pointing to the prior testimony in court, in the prior jury

19    trial.

20         The jury is entitled to know, and we're going to be

21    required to identify to the jury -- sorry -- to the witness

22    precisely where that witness testified in an inconsistent

23    manner, which would be either at the deposition or at the prior

24    trial where that individual was sworn in and was under oath,

25    when they gave that testimony.

**PROCEEDINGS**

1    So it will come up, whether there's any need to refer to

2  it as a "prior jury trial," or a "prior trial," I think it will

3  just develop over the course of time.  But I thought it was

4  important to let the Court know that the reason for this

5  request is because Tesla has some belief that, if the prior

6  proceedings are referred to only as "a determination," that may

7  somehow induce the jury to give less weight to the prior jury's

8  findings.  And that would be improper in our view.

9        **THE COURT:**  The way that the -- that I've drafted,

10 anyway, the preliminary instructions, I don't think would allow

11 for that.  So it's really a question of whether it's --

12 somebody says "in the prior jury trial" or "in this courtroom,"

13 and maybe there's some other -- I'm happy to consider phrasing

14 that people think will avoid prejudice.  I do -- I don't think

15 that there will be any as a result of this.  But I'm happy for

16 you to continue to talk about that.

17     But I realize that you'll have to -- I think you can avoid

18 saying "jury trial."  You could just say "in this courtroom."

19 Didn't you say "in this courtroom"?

20      **MR. RUBIN:**  I think the circumstances will dictate

21 what the appropriate term is.  We don't need to overuse it for

22 strategic purposes.  On the other hand, we don't want to be

23 precluded for the other side's strategic purposes as well.

24      **THE COURT:**  Yeah.  I don't think you have to use the

25 term "jury," just as an example.  And then if there are ways

PROCEEDINGS

1    that you-all can work out some other phrasing, that would be

2    great.   And, otherwise, we'll deal with it as we deal with it.

3          **MR. RUBIN:**   Thank you.

4          And in response to Mr. Griffen's questions, just to be

5    sure that I understand, particularly with respect to the

6    replacement PMK witness -- again, I'm just going back to the

7    meet-and-confer to make sure we understand.

8          When you said before that the new witness, her testimony

9    will be as consistent with Ms. Heisen's testimony as possible,

10   and not materially different than what had previously been

11   given, we're also talking in terms of the time frame.   So, for

12   example --

13         **THE COURT:**   The time frame is the same time frame.

14   They can't -- Tesla cannot bring up, you know, policies that

15   were adopted after Mr. Diaz left.   Yes.

16         **MR. RUBIN:**   That answers my question.

17   Thank you, Your Honor.

18         **MR. GRIFFIN:**   Your Honor, may I approach again?

19         **THE COURT:**   Of course.   That is why we're here.

20         **MR. GRIFFIN:**   Thank you, Your Honor.   Again, Asher

21   Griffin on behalf of Tesla.

22         One additional question I had about Tesla's Motion in

23   Limine 1 and 2.   At our prior hearing, we discussed the fact

24   that -- or in our motion, we requested to bring Mr. Hurtado in,

25   but for an instruction related to how plaintiffs could refer to

1   Mr. Hurtado's absence at trial.  And you indicated an openness

2   to a potential limitation about Mr. Hurtado and Mr. Donet, and

3   I just want to know if you have thoughts about that issue.

4          **THE COURT:**  Well, so I was thinking that by being

5   explicit about the first phase and the second phase, that that

6   would dampen the plaintiffs' ardor in repeating over and over

7   and over that Mr. Hurtado didn't appear.

8          I mean, I think -- for the second trial, where the jury is

9   going to hear a lot of the same evidence that the first jury

10  did, I think it is fair game to -- for them to tell the jury

11  that Mr. Hurtado didn't appear.

12         I don't -- I think it would be -- it might boomerang on

13  them if they said that -- made a big point about Mr. Hurtado

14  not appearing before this jury, because Mr. Hurtado,

15  apparently, is ready to appear before this jury.  I'm not going

16  to let him because of the difference in the trial, but I think

17  it would be -- I would expect to hear an objection and I would

18  expect to say something if -- the point was that they were --

19  the jury was deprived from hearing from -- about -- from

20  Mr. Hurtado as a result of Tesla's strategy in the trial before

21  them.

22         **MR. GRIFFIN:**  Thank you, Your Honor.

23         And then in response to Mr. Rubin's statement about the

24  time period for testimony, we wanted to clarify that with

25  regards to instances or harm related to Mr. Diaz's allegations,

1    that time is limited to the first trial.  Because one question

2    we had is if there's going to be new medical evidence or expert

3    evidence between October 2021 and March of 2023 that we haven't

4    seen or had an opportunity to evaluate before putting -- before

5    having the opportunity to cross-examine Mr. Diaz.

6              **THE COURT:**  Good for the goose, good for the gander.

7    That's exactly right.

8         I am -- I'll just warn you a little bit further with

9    respect to the PMK.  I'm allowing you to have somebody who was

10   representing Tesla live.  And I'm not restricting you -- and

11   I'm doing that just out of an -- a sense of what I would need

12   if I was trying this case in your shoes.  I think that's --

13   it's a fair thing to do.

14        It would be completely unfair and I would get unhinged if

15   your PMK starts testifying about things in a way that is

16   broader, different -- materially different than what Ms. Heisen

17   did.  And I would probably be unhinged in front of the jury and

18   admonish you for that.  So I just want you to be very careful

19   about the parameters for her testimony.

20             **MR. GRIFFIN:**  Understood, Your Honor.

21             **THE COURT:**  Okay.

22             **MR. GRIFFIN:**  And then one point I wanted to clarify

23   with regards to the decisions that the parties made.  My

24   understanding of your ruling is that the witnesses that

25   plaintiff called in their case in chief, they can recall.  And

1   the witnesses that we called in our case in chief, we can

2   recall, but that's it.

3           THE COURT:  No.  I tried to be very clear about this.

4       The evidence that was presented -- so if you're trying to

5   cut -- and you should be very explicit with me because

6   sometimes my brain just doesn't work very well.

7       If you were referring to Mr. Martinez and whether he

8   was -- he would be able to be called by the plaintiffs -- is

9   that what you were referring to?

10          MR. GRIFFIN:  Yes, Your Honor.

11          THE COURT:  Yeah.  No.

12      The evidence that was presented to the jury the first time

13  may be presented the second time.  I don't care who called

14  them.  I don't care why they called them.  They can testify.

15          MR. GRIFFIN:  Okay, Your Honor.  Thank you.

16          THE COURT:  All right.  Anything else on those issues?

17          MR. ORGAN:  Your Honor, I just have one point of

18  clarification; and that is:  Mr. -- so Mr. Diaz testified about

19  the ongoing nature of some of the harm from the harassment.

20  And our expert, Dr. Redding, testified about how that harm

21  would continue into the future.

22      Assuming they testify consistently with that and don't

23  testify about anything specific from the last trial to now --

24  no incidents or anything like that -- I want to make sure that

25  that is still in line with the Court's ruling because future

**PROCEEDINGS**

 1   damages would be contained in that.

 2          THE COURT:  Well, so their testimony was that they

 3   were going to -- in those instances, they were going to

 4   continue, so I don't think that's a -- that's a change in

 5   anything.

 6          MR. ORGAN:  Yeah.  I would not -- I would not be

 7   asking him to bring in anything new, just testify consistently

 8   with the way he testified before.  Similarly to Dr. Redding,

 9   the same.

10          THE COURT:  That seems appropriate.

11          MR. ORGAN:  Okay.  Thank you, Your Honor.

12          THE COURT:  All right.  Anything else on those -- on

13   those issues?

14          MR. RUBIN:  Not for the plaintiff, Your Honor.

15          MR. POSNER:  We're okay.  We have nothing further on

16   those issues.

17          THE COURT:  Okay.  All right.

18       Okay.  So then, the next issue that I wanted to address

19   was the questionnaires.  And so we're going to send out -- the

20   jury office is going to send out a questionnaire that we should

21   receive back, in a SurveyMonkey format, two days before an

22   instruction conference.

23       So we're going to have -- you should get those on

24   March 22nd, and then we're going to have a Zoom hearing on

25   March 24th at 1:30 to go over the survey responses and

**PROCEEDINGS**

1   determine whether you all would stipulate to the excusal of any

2   people based on their responses to the surveys.  And that

3   will -- that may reduce the number of people who come into the

4   courtroom on the following Monday for voir dire.  I'm expecting

5   to get about -- I've asked for 50 surveys to be completed; so

6   hopefully, we'll get at least that number.

7         I've looked at the proposals that you have made with

8   respect to what should go into the questionnaire, and I am

9   going to combine a number of those questions with standard

10  background questions that the Court is using for these

11  questionnaires, which should give us a pretty good sense of the

12  hot-button issues.

13        So I will ask about Tesla, and Mr. Musk, and the -- and

14  issues relating to racial discrimination and problems in the

15  workplace, views about money compensation in a lawsuit,

16  people's involvement in making claims, those sorts of things.

17  So that questionnaire will go out relatively soon, I think.

18        For voir dire, the way that I do it in this court, we'll

19  have the jurors arranged when they come in, in the order -- in

20  the random order that you will be selecting them.  And so the

21  number one juror will be -- I think we'll probably have a row

22  of seats in front of the jury box and the number one juror will

23  be closest to us, closest to the bench; and then the first

24  seven or eight will be in the first row and then the next, and

25  the next.  And then, additional people will be in the gallery,

1    the way that we did it the last time.

2        So, you will -- and I will ask questions of everybody, and

3    then give you each an opportunity to spend about 15 minutes

4    with each person.  I'm going to ask -- we started doing this

5    during the pandemic and it's worked pretty well.  Instead of

6    passing the mic the way that we used to, I'm going to set up a

7    podium at the -- behind, where the swinging doors are

8    basically, and have the jurors walk up there and then tell you

9    who they are.  And you get a sense of who they are from what

10   they say and how they look, and all those sorts of things.

11       So that's how we'll proceed with that.

12           MR. GRIFFIN:  Your Honor?

13           THE COURT:  Yes.

14           MR. GRIFFIN:  Your Honor, Asher Griffin, again.

15       With regards to the questionnaire, I just want to know if

16   you want any thoughts or comments from the parties about the

17   objections.  I think there were only two questions in the

18   questionnaire that there was conflict between the parties.

19           THE COURT:  Yeah.  I don't really, because I'm not

20   going to use either of those questions.

21           MR. GRIFFIN:  Okay.

22           THE COURT:  I'm just making up my -- making up my own

23   based on your very well-crafted questions, and so I'm okay with

24   that.

25           MR. GRIFFIN:  Thank you, Your Honor.

1          **MR. ORGAN:**  Your Honor, Larry Organ.

2     Do you want us to send you Word versions of the

3     questionnaires to make it easier for you to cut and paste?

4          **THE COURT:**  No.  I'll be able to do that.  Thank you.

5     I appreciate it.

6          **MR. ORGAN:**  Okay.

7     And then I did have one other question.  In terms of

8     vaccination, the last time we did the trial, we let the Court

9     know the vaccination status of the witnesses, and all the

10    jurors were vaccinated.  Do you -- and we told you our team was

11    all vaccinated.

12    Do you want that same information, Your Honor, this time?

13         **THE COURT:**  I was just -- we were just discussing,

14    before I came into court, what my -- what the rule will be with

15    respect to masking.

16    On the questionnaire, the questionnaire asks whether the

17    jurors are vaccinated.  It doesn't ask whether they're boosted.

18    It's the thing that we did a year and a half ago.  And it's

19    still there and I think it gives some information.

20    Once you see all of those, I'll give you the opportunity,

21    each of you, to decide whether you want to have a completely

22    vaccinated jury or not.  If you don't -- if you want to -- if

23    you don't agree on it, it's okay with me at this point.

24    With respect to people who open their mouths in court, I

25    would like them either to be vaccinated or wear a mask.  And so

**PROCEEDINGS**

1    if any of your witnesses are not vaccinated, we have clear

2    masks that people use, and that's fine.

3         I'm not -- the rules have been, as you know, that anybody

4    who's speaking doesn't have to wear a mask, but everybody else

5    in the courtroom has been required to wear a mask.

6         I'm interested in your thoughts about this.  I think for

7    jury selection, because there are going to be so many people in

8    the room, that we'll continue the masking requirement.  And

9    with respect to the jury, there will only be -- you know, I'm

10   going to have eight jurors.  I'm going to select eight jurors.

11   And there's enough spacing to -- that could allow -- I'm on the

12   fence, as you can tell -- of the -- I think I will require

13   masking when people aren't speaking, just out of an abundance

14   of safety for people.

15        The last trial that I had, which was now a long time ago,

16   it was in October, the jurors were all thankful that I had

17   required masking just because they didn't want to have --

18   distinctions within the jury itself, and they were also

19   concerned that there would be people that wanted to wear a mask

20   but would have been peer-pressured out of it.

21        So I think I will.  But my mind on that is subject to

22   change if -- over the next few weeks, if I think differently,

23   I'll let you know.

24        Let's see.

25        With respect to the questionnaires getting -- I think it's

**PROCEEDINGS**

1    such an advantage for the lawyers to have questionnaires in

2    advance of voir dire; I think it tells you so much and gives

3    you an opportunity to learn more things.

4        I just want to caution you to be sure to follow the ABA

5    guidance on use of social media in learning about the

6    prospective jurors.  You're not to interact in any way with

7    them.  You can use information that is publicly available, but

8    certainly nothing that would engage them or move beyond what is

9    available to the public.

10           **MR. COLLIER:**  Your Honor, may I approach?

11           **THE COURT:**  Yes.

12           **MR. COLLIER:**  Dustin Collier for plaintiff.  I'm one

13    of the new ones here.

14        I did want to just follow up on one voir dire issue while

15    Your Honor is thinking about the questions.

16           **THE COURT:**  Yes.

17           **MR. COLLIER:**  My colleague, Mr. Rubin, already

18    mentioned that we have a little bit of concerns about some

19    comments that we've heard from Tesla's counsel about undue

20    weight being given to the prior jury's findings.

21        We have a little bit of concern that there -- and I hope

22    unfounded -- but a little bit of concern that there might be an

23    active effort to get the jury to sort of disregard the prior

24    findings.  And we wanted to suggest that there be some sort of

25    question in the Court's voir dire about how the jurors feel

**PROCEEDINGS**

1    about being told they're bound by those prior findings, so we

2    can sort of suss out if anyone has resistance or reluctance to

3    being told they have to follow the liability findings of the

4    Court.

5              **THE COURT:**  Well, I'll be asking them during voir dire

6    about whether they're able to follow my instructions.

7              **MR. COLLIER:**  Okay.

8              **THE COURT:**  And I usually don't allow people on the

9    jury who say that they're entitled to go off on frolic of their

10   own.

11        But I don't -- I'm not planning to -- I'm not going to

12   include that in the written questionnaire.  And the argument --

13   and I don't expect that the plaintiffs will be making an

14   argument as was in the paper about this record-setting verdict,

15   you know, historic in its implications.  I expect that we're

16   not going to hear any of that either.

17             **MR. COLLIER:**  I think that's fair, Your Honor.

18        I think our -- the way I was thinking of the question

19   would be something along the lines of:  You've heard, in the

20   statement of case, that certain things were conclusively

21   decided in the first phase of the trial.  Is there anyone here

22   that feels any discomfort with the idea of not being able to

23   assess those first trial issues and being told you're only

24   assessing damages?

25        Our concern is just some of the rhetoric we have heard

1    from Tesla's counsel in the meet-and-confer effort makes us

2    concerned they're going to try to get people to draw some

3    distance and say "Well, I'm going to reevaluate it for myself,"

4    when they should not.

5        I hope I'm wrong about that.  And I hope we can just agree

6    that anyone who does have that sort of resistance should not

7    sit on this particular jury.

8        **THE COURT:**  Well, if I thought that that was going on,

9    I would be able to speak up myself.

10       **MR. COLLIER:**  Fair enough.  Understood, Your Honor.

11   Thank you.

12       **THE COURT:**  Okay.  All right.

13       And then, while I'm thinking about voir dire, the -- when

14   you are asking questions of the prospective jurors, you will be

15   close to the podium and the podium will be flipped around so

16   that you can look at folks.

17       Once we get the trial going, I don't like lawyers to be

18   closer than the edge of the plaintiffs' table to the jury.  I

19   don't like pacing around in front of the jury.  I want you to

20   be within an arm's length or so of the podium.  If you don't

21   want to be behind the podium, that's fine, but I want you to be

22   pretty close by.

23       All right.  I mentioned eight jurors.  So you get three

24   peremptories.  On Monday, we'll select the jury and hopefully

25   get the trial going, so you should be prepared to do your

**PROCEEDINGS**

1    opening and the plaintiffs should be prepared with their first

2    witness.  We may not get there, but I -- I can always hope.

3          Tuesday through Thursday, we're here from 8:30 -- the jury

4    trial is from 8:30 to 1:30.  You'll be here at 8:00 to deal

5    with any issues that come up.

6          On Friday, we will go all day and my expectation is that

7    you will be closing in the morning and that the jury will get

8    to work, and so that's what I'm going to tell the jury, that

9    they should plan on being here for a full day on Friday.

10         The draft jury instructions.  Next on the list.

11         So, Mr. Rubin, do you have some comments?

12         And let me just say that my -- what I told you at the

13   beginning, I think I would slot in on Instruction Number 2,

14   after the first two sentences, I think I would say "We're

15   trying this case in two phases, at the first phase it has been

16   conclusively determined that," et cetera.  And then at the --

17   in front of the last sentence in that paragraph, I would say

18   "The second phase is the damages phase.  It will be your job to

19   determine the amount of damages."

20         So that's basically the change that I would make.

21         Mr. Rubin?

22         **MR. RUBIN:**  I have three suggestions, Your Honor, on

23   Instructions Number 10, 12, and 21.

24         **THE COURT:**  Okay.

25         **MR. RUBIN:**  I don't think any of these should be

1  controversial, but it will help the instructions be a little

2  more accurate.

3       On 10 --

4            **THE COURT:**  Yeah.

5            **MR. RUBIN:**  -- the damages.  The last of the four

6  factors here -- the reasonable value of necessary medical care,

7  and so forth -- I believe the parties stipulated in the prior

8  trial that there would be no evidence, no damages claim based

9  on that.  So I think we can eliminate that fourth factor.

10            **THE COURT:**  Okay.

11            **MR. RUBIN:**  On Instruction Number 12, punitive

12  damages, as Your Honor knows, punitive damages can be both to

13  punish and to deter; and, in fact, that's what you say in

14  Instruction Number 9.  But I would ask that you add the

15  reference in the second paragraph:  You must use reason in

16  setting the amount.  Punitive damages should be an amount

17  sufficient to fulfill their purposes of punishment and

18  deterrence.

19            **THE COURT:**  Okay.

20            **MR. RUBIN:**  And then in -- and, again, I think this

21  may harken back to the same issue that some of us have been

22  talking about in Number 21, conduct of the jury.

23       In two places, since we're telling the jury that it is

24  limited to considering the evidence presented and your

25  instructions as a matter of law, in this case there's actually

1  a third factor the jury must consider, which is the prior

2  determinations.

3      So what I'd propose is in the paragraph that begins

4  "second" -- "Second because you must decide this case based

5  only on the evidence received by the case -- in the case, and

6  on my instructions as to the law and prior determinations that

7  apply."

8      I think that clarifies to the jury that they are, in fact,

9  bound by the prior determinations as you've instructed them.

10      And that same language -- or similar language at the very

11  last paragraph in that page, "These rules protect each party's

12  right to have this case decided only on evidence that has been

13  presented here in court and the determinations I've instructed

14  you to follow."

15          **THE COURT:**  I'm going to write it down, Mr. Rubin.

16  What is it?

17          **MR. RUBIN:**  "And the determinations I've instructed

18  you to follow."

19      I think that will suffice.

20          **THE COURT:**  Okay.

21          **MR. RUBIN:**  Thank you.

22          **THE COURT:**  Thank you.

23      Mr. Posner?

24          **MR. POSNER:**  Thank you, Your Honor.  Dan Posner for

25  Tesla.

1          We have, I would say, one overarching comment about the

2     proposed instructions and a few language wordsmithing things.

3          The overarching issue is that we object to the jury being

4     instructed about Mr. Diaz's entitlement to any amount of

5     punitive damages or that the malice, fraud, oppression which we

6     call the predicate to punitive damages, is a determination from

7     the first trial that must carry over and that the second jury

8     must apply it.  We feel that the law and fairness would require

9     the second jury to decide both the predicate and the amount of

10    punitive damages.

11         The most fundamental reason why is because this is a trial

12    of not just punitive damages, but compensatory damages and

13    punitive damages.  And as Your Honor recognized earlier, and as

14    the instruction, Instruction Number 10 in particular, on

15    compensatory damages recognizes, in this perhaps unusual

16    situation, all the same evidence is going to come in about harm

17    that Mr. Diaz allegedly suffered, and he's going to identify

18    incidents and he's going to put on evidence about the extent of

19    the harm that he suffered.  And Tesla, in turn, has the

20    opportunity to deny that those incidents occurred and to

21    show -- provide evidence that the harm that Mr. Diaz suffered,

22    if any, was minimal or nonexistent.

23         That's the compensatory damages inquiry.  Because the

24    first verdict didn't make specific findings in the verdict

25    form, it remains Mr. Diaz's burden to prove his compensatory

**PROCEEDINGS**

1  damages by a preponderance of the evidence, what the harm was,

2  how extensive it was.

3       At the same time, the proposed instructions here would

4  tell the jury, for example, in Number 9, that it has been

5  established that Tesla's conduct that harmed Mr. Diaz was

6  malicious, oppressive, or in reckless disregard of Mr. Diaz's

7  rights.

8       We're very concerned that an instruction to that effect,

9  that the jury must find, must accept that the harm -- that

10 Tesla's conduct that harmed Mr. Diaz was malicious when at the

11 same time, we have the right and the need to put on evidence

12 and argue to the jury that it should find the harm was

13 nonexistent or minimal.

14      And there's no specific incidence of harm that would be

15 tethered to these instructions about the conduct -- Tesla's

16 conduct that harmed Mr. Diaz.  And so we feel it would be error

17 and unfair to tell the jury that it must find that any harm was

18 malicious, oppressive, or reckless.

19      And we are not aware of any case where a retrial proceeds

20 on both compensatory and punitive damages, but the jury is

21 instructed that the predicate for punitive damages already

22 exists and it must accept that.  And we feel it must be in part

23 for this reason.  I would say we're also not aware of cases

24 where a jury has ever been told that it must award some amount

25 of punitive damages either.

**PROCEEDINGS**

1        But the greater concern we have is the impact of this

2   instruction on the compensatory damages that we're arguing and

3   how it might skew the damages higher, unfairly and

4   unnecessarily.  And it really makes it difficult for us to work

5   with the damages instruction for compensatory damages.

6        Now, one of the reasons why, I believe, Mr. Diaz has

7   argued that the jury should be instructed about the predicate

8   for punitive damages is because of Your Honor's first

9   post-trial order which recognized that there was some

10   sufficient amount of evidence for, quote, an award of punitive

11   damages, which is what Your Honor said.  And the amount was too

12   high, but there was enough evidence for an award.

13        And I believe they're latching on to that to say that's an

14   undisturbed conclusion of the Court based on the evidence from

15   the first trial and, therefore, it should carry over to the

16   second.

17        There's really, we think, several reasons why that's not

18   right.  One is, as Your Honor recognized more recently in the

19   order on the liability and the damages motion that we brought,

20   the question of liability for a hostile work environment that

21   the first jury decided is -- is analytically distinct from the

22   predicate, the punitive damages predicate, malice, fraud, and

23   oppression.  And so our understanding from that order is,

24   again, the second jury would decide that issue anew.

25        But also the evidence that they're relying on to say

**PROCEEDINGS**

1   there's got to be -- there's some evidence to at least support

2   some amount of punitive damages, that's the evidence from the

3   first trial.  And when Your Honor made that ruling in the

4   post-trial order, you were construing the evidence in the light

5   most favorable to Mr. Diaz, which was the standard at the time.

6   But that's not the standard for the second trial.  And so it

7   would be wrong to carry over that finding from the post-trial

8   order to the second trial.

9        And, I think, an example -- you know, taken to its logical

10  end, Your Honor found that there was sufficient evidence to

11  support a maximum amount of compensatory damages of one and a

12  half million, and a maximum amount of punitive damages

13  something higher than that.  Mr. Diaz certainly would not agree

14  to a cap on compensatory damages based on what Your Honor

15  found.  Your Honor said that the evidence stopped there.  They

16  would never agree to that cap.  Why should they benefit from

17  the floor that carries over?

18       And there's really -- we see no reason -- by rejecting the

19  remittitur, the damages process started.  All the damages

20  questions should be given to the second jury, so there's no

21  reason, there's no basis in the post-trial order, nor is it

22  fair, we submit, to tell the jury that malice, fraud, and

23  oppression has been established or that it must award some

24  amount of punitive damages.

25       And so, to bring it home, our objection there -- and we, I

1   think, fairly made this objection in the instructions that we

2   submitted, we would object entirely to Proposed Instruction

3   Number 9, which is the determination of punitive damages.  We

4   would -- we would suggest that Your Honor keep Instruction 12,

5   which we believe is the right formulation and the way for the

6   jury to be instructed about how it makes the punitive damages

7   determination in this case.

8        We would -- I don't want to move too quickly, but we would

9   revise Instruction 2 -- and I could explain how we would

10  recommend doing that.  So maybe it's easiest to start at the

11  beginning with Instruction 2.

12       This is the first time that the jury is instructed that it

13  has been determined that Mr. Diaz is entitled to punitive

14  damages as a result of Tesla's conduct.

15       And if I may, I'd read into the record some language that

16  we would argue should be placed there instead.

17       That would be (as read):

18            "It has also been determined that, as a result

19       of Tesla's liability, Mr. Diaz is entitled to recover

20       from Tesla any past or future noneconomic damages and

21       any punitive damages that you may find based on the

22       evidence at this trial."

23       That is the formulation of what we believe the jury's task

24  should be on the retrial, the same for compensatory and

25  punitive damages.  So we would request that change to Number 2.

**PROCEEDINGS**

1    And then, turning to Number 9, in large part -- you know,

2   we object, again, to -- the second time now that the

3   instructions state at the beginning there that it has been

4   established that Mr. Diaz is entitled to an award of punitive

5   damages.  We believe this instruction is entirely duplicative

6   of other instructions and unnecessary for that reason as well,

7   and also potentially confusing.  So the first sentence that I

8   just read, we object to it for the reasons that I've explained,

9   but it also is repeated in Instruction Number 2.

10    The remainder of this instruction, this determination, is

11   essentially the same standard that appears in Instruction 12 on

12   punitive damages with minor variations in words that could

13   potentially be confusing to the jury.

14    So our ask is to revise Instruction 2 in the way that I

15   read, to eliminate Number 9, and to retain Number 12 with a

16   couple of minor changes -- which I guess I might as well say

17   now.

18    One is that we believe Instruction 12 should add this

19   language (as read):

20        "The plaintiff has the burden of proving by a

21        preponderance of the evidence the amount of any

22        punitive damages."

23    That's the standard of proof.  I believe it was read in

24   the first trial.  I believe it's in the model instruction.

25   I believe both parties proposed it or something similar to

1    that.  So we would request that -- that it be added there as

2    well.

3         I hope -- I've made my point that we can -- and we've

4    convinced Your Honor.  If not, I will certainly want to

5    preserve our objections to these instructions.

6         But we would, at a minimum, request the -- that Number 9

7    not be read because it's unnecessary and duplicative.  So even

8    if Your Honor is not inclined to change Number 2 the way we

9    requested, Number 9 still is duplicative because of the fact

10   that -- according to Your Honor's proposed instructions -- it

11   has been determined that Mr. Diaz is entitled to punitive

12   damages is already in Number 2.  You don't need to say it again

13   in Number 9.  And then the rest of it repeats the standard from

14   12.

15        So that would be our secondary ask subject to preserving

16   our objections to our primary position.

17             **THE COURT:**  So, Mr. Posner, just one question.

18        In 12, I've preserved the -- in the second paragraph, the

19   "if any" language.  And I've also included a nominal damages

20   instruction.  So the -- so if I had determined -- which I did,

21   as the jury did in the first trial -- that Tesla was -- was

22   liable for punitive damages -- and the evidence was

23   unmistakable, in my mind, anyway, that that was the case in the

24   first trial -- then the -- and that's how I wrote that order,

25   and that was not a point that you had raised when you asked me

1   in the alternative to -- or when other counsel asked me to

2   issue the remittitur, why wouldn't the "if any" language and

3   the nominal damages instruction ameliorate the concern that you

4   have that this jury wouldn't be fairly viewing the instruction?

5       You'll be arguing it doesn't meet the standard because it

6   says, "if any," and then $1 would be awarded and -- which I

7   might -- you know, I guess another way of doing it is for me to

8   do it post-trial, but that's -- it just -- why wouldn't -- why

9   doesn't that solve your problem?

10      **MR. POSNER:**  Well, we certainly agree that the "if

11  any" language is appropriate and that the nominal damages

12  instruction is appropriate.  If anything, I guess -- and if

13  Your Honor is inclined to give those, as you suggest you are

14  because they're appropriate, then the instruction that Mr. Diaz

15  is entitled to some amount of punitive damages is, at a

16  minimum, confusing, if not wrong, inaccurate.

17      And it is for this jury to decide whether, and to what

18  extent, Mr. Diaz is entitled to punitive damages.  That's

19  essentially what Number 12 says in the nominal damages

20  instruction.

21      So to also tell the jury that he's entitled to some amount

22  of punitive damages, and that the predicate finding has been

23  made, is unnecessary and confusing, and we think legal error

24  because of what it -- the way that it impacts our compensatory

25  damages showing.

PROCEEDINGS

```
 1          So we think it is right to tell the jury that it does not

 2    have to award any positive amount of punitive damages, but we

 3    don't think that, as Your Honor says, it ameliorates the

 4    problem of elsewhere instructing the jury that Mr. Diaz is

 5    entitled to punitive damages.  So we would suggest that

 6    Your Honor take out that language.

 7               THE COURT:  Mr. Rubin?

 8               MR. RUBIN:  Thank you, Your Honor.

 9          Your Honor, we don't see any language in your

10    Instruction 12 or 9 that says, "if any," and we would object to

11    adding, "if any."

12          We also object --

13               THE COURT:  It's on the first line of the second

14    paragraph.

15               MR. RUBIN:  "You must use reason in setting the

16    amount.  Punitive damages should be in amounts" --

17               THE COURT:  "If any, should be an amount sufficient."

18               MR. RUBIN:  It's not in the version that you sent to

19    counsel.

20               MR. POSNER:  It is.

21               THE COURT:  Are you looking at Number 12?

22               MR. RUBIN:  I'm looking at Document 406, page 13.

23               THE COURT:  Are you looking at Instruction Number 12?

24               MR. RUBIN:  Yes.

25               THE COURT:  Then it's mysterious, Mr. Rubin -- I don't
```

1   know.

2       But anyway, the language says punitive damages -- what I'm

3   proposing anyway, says:  You must use reason in setting the

4   amount.  Punitive damages, if any, should be an amount

5   sufficient to fulfill the purposes.

6           MR. RUBIN:  Does anyone else have that?

7           MR. COLLIER:  No, I don't.

8           MR. RUBIN:  We don't have that --

9           THE COURT:  Okay.

10          MR. RUBIN:  Okay.  Fine.

11      My concern is not that I'm missing that.  I can address

12  that.  My concern is what else we may be missing.

13      We do object to that.  And we do object to nominal damages

14  for punitive damages under the rule of *Hazle versus Crofoot*, we

15  which cited with respect to nominal damages for compensatory.

16      Given Your Honor's ruling that there has been a prior

17  determination of liability for punitive damages, we don't

18  believe the Ninth Circuit law would permit just nominal

19  punitive damages.

20          THE COURT:  But how is the jury -- I mean, the

21  determination of how malicious, oppressive, reckless Tesla has

22  been is going to be this jury's determination anew.  I don't

23  know how you can -- how this jury could make a determination on

24  punishment, and an appropriate amount of damages, without

25  weighing all the evidence.  And if they don't view this -- this

1    is the problem that you have walked into, it seems to me.

2        If they look at this in a different way than the first

3    jury does, they're going to come up with a different number.

4    And that number might -- they might think that Tesla just did a

5    swell job.

6            **MR. RUBIN:**  Your Honor, they can come up with a low

7    number.  There's no reason they can't come up with a low

8    number.

9        Nominal damages -- and the Ninth Circuit is clear on this

10   in *Hazle*, where it referred to the Second Circuit, Eighth

11   Circuit, and Eleventh Circuit case and when nominal damages are

12   permitted and when they're not.

13       If the jury finds that the elements of the claim are

14   satisfied but there's no proof as to any injury, then nominal

15   damages are appropriate in a civil rights case.  If, however,

16   there's a finding that there has been harm -- as the jury found

17   with respect to compensatory damages -- and if there's a

18   finding that punitive damages liability has been established,

19   the jury has to determine that there's some amount -- not $1,

20   but some amount of punitive damages.  It could be a very small

21   amount.

22       It has to evaluate reprehensibility.  It has to evaluate

23   deterrence.  It has to be sure not to punish Tesla for injuries

24   caused to others rather than Mr. Diaz.  But nominal damages are

25   a unique feature, as I understand it, in damages law.  I've

1   never actually seen a punitive damages case involving nominal

2   damages, but it only applies where the elements are established

3   as a matter of law, but because there has been a complete

4   failure of proof for some reason as to the amount -- often

5   happens in breach of contract cases, as in the cases that are

6   cited -- then the jury awards simply the nominal damages of $1.

7        But nominal damages for punitive damages award, or for

8   compensatory damages where there has been a specific finding

9   that is binding that there has been injury or harm, is

10  impermissible under *Hazle* for the reasons that the

11  Ninth Circuit stated.

12       So it is entirely within the jury's discretion to decide

13  that the punitive damages amount should be very small or very

14  large -- or whatever it determines based on the facts -- but it

15  shouldn't be instructed that it can issue a nominal damages

16  award because that's set for very special purposes under the

17  law.

18       **THE COURT:**  So is the -- is your concern the

19  instruction itself as opposed to the dollar amount?  So is

20  there any --

21       **MR. RUBIN:**  Our --

22       **THE COURT:**  Let me finish.

23       Would you be jumping up to object if Tesla argues that,

24  from everything that you've heard, the amount of money that you

25  should award for punitive damages is a dollar?

1              **MR. RUBIN:**  I would not be jumping up and down on

2       that.

3         What I'm jumping up and down about is Tesla using an

4       instruction from this Court to anchor.  And if the Court issues

5       an instruction that specifically says, "You may award nominal

6       damages of $1," we will hear that over and over and over again.

7              Tesla can argue that there's miniscule punitive damages,

8       there is no reprehensiblity, there's no need for deterrence.

9       They can make those arguments.  Think it's inconsistent with

10      the facts.  I think your prior orders make clear it's

11      inconsistent with the facts.  But there's a difference between

12      the arguments of counsel and the instructions of a federal

13      judge.

14         And I'm concerned that if you put the two together and

15      Tesla is permitted to argue, from the Court's instructions,

16      that $1 may be an appropriate amount of punitive damages, then

17      we'll hear that over and over again as an anchoring technique.

18      And I think that would be impermissible.

19         So you should just give them discretion to determine,

20      based on their own assessment of the evidence, what amount is

21      an appropriate amount; and both parties will have free reign to

22      argue whatever the magnitude, small or large, should be.

23              **THE COURT:**  And so if I went along with what you're

24      suggesting, would you agree with Mr. Posner that we should get

25      rid of punitive -- the Instruction Number 9?

1          MR. RUBIN:  Number 9 had -- well, obviously Number 9

2    had the "deter" language that was missing from Number 12.

3       No.  No.  Absolutely not.  That first sentence is the

4    critical sentence.  That is just like --

5          THE COURT:  But I -- I would have that in Instruction

6    Number 2.  So it's just the second paragraph that --

7          MR. RUBIN:  Your Honor, this is the first time that I

8    heard Mr. Posner's argument on this and I'm a little wary

9    because my version of this instruction seems to be a little

10   different from everyone else's.

11         THE COURT:  I don't know why.

12         MR. RUBIN:  I don't know why either.  We'll download a

13   new copy of Document Number 406.  But I would like to take a

14   careful read of Number 2, 9, and 12 before I answer that

15   question, if I could.

16         THE COURT:  Okay.

17         MR. POSNER:  May I respond?

18         THE COURT:  Please.

19         MR. POSNER:  I didn't hear a defense to the

20   appropriateness of instructing the jury that Mr. Diaz is

21   entitled to some amount of punitive damages.  So I think

22   Your Honor was right to question -- we think the nominal

23   damages instruction should remain for reasons I'll mention; but

24   certainly, if it were to go away, then the jury should not also

25   be told that there must be some positive amount of punitive

1  damages.

2      I'm not understanding where the lines are being drawn or

3  what the principled reason is for telling the jury that it must

4  award something, even if it could be very small.  I think

5  that's just adding confusion, and it's really untethered to

6  any -- any law.

7      On nominal damages, I think Mr. Rubin was focusing on

8  certain cases that don't talk about nominal punitive damages,

9  for one thing.  They talk about compensatory damages.  Those

10  cases are quite distinguishable.  They really arise in the

11  context of Section 1983, constitutional violations.  And they

12  recognize that, in those cases where a plaintiff proves a

13  constitutional violation, a violation of the plaintiff's

14  constitutional rights, but does not show injury or harm, that

15  plaintiff is at least entitled to nominal damages.  That's

16  really what those cases say.

17      They certainly don't say that some positive amount of

18  compensatory damages are required or that a plaintiff in such

19  cases is absolved of his or her obligation to prove damages

20  with a preponderance of the evidence.

21      Nominal damages, the instruction was given in the first

22  trial.  It's an appropriate instruction to give in the second

23  trial too.  So I don't want to retract our objection to the

24  language that Mr. Diaz is entitled to some amount of punitive

25  damages, but we also think the nominal damages instruction is

**PROCEEDINGS**

1   appropriate.

2        I have a couple more line-edit-type things that I'd like

3   to get in.  I think this is the opportunity to do it, if

4   Your Honor is willing.

5        The first one is on Instruction 2 -- and we certainly

6   made -- I made the pitch about substantially changing the

7   language of one of those sentences.  But in subparagraphs, or

8   points 1 and 2, Your Honor has included the word

9   "intentionally" in front of the -- you're referring back to the

10  liability findings and the hostile work environment and the

11  failure to prevent liability findings.  We think those words

12  "intentionally" must come out.  They're not in the elements of

13  the claim that the jury found in the first trial.  There was no

14  verdict that showed that the jury found some intentional

15  conduct.  And, in fact, our understanding -- my belief is that

16  they could have prevailed on those claims by showing

17  negligence.  So we think "intentional" would be wrong, legally

18  wrong, and certainly misleading for the jury.

19        **THE COURT:**  Okay.

20        **MR. POSNER:**  Okay.  On Instruction Number 3, we have

21  an objection that we -- that we made to reading all these

22  liability instructions to the jury.  I won't -- I won't read

23  that, restate that, other than to say we maintain it.  But if

24  these instructions are going to come in, we want to make sure

25  they're accurate.

1    It looks like in Number 3 Your Honor took part of what was

2    Instruction 27 from the first trial on severe and pervasive and

3    put that in subparagraph 3 there.

4    We propose to add, at the end of that subparagraph, the

5    following language:  (as read):

6         "A single incident can be sufficiently severe or

7         pervasive to constitute harassment."

8    That is an accurate statement of the law.  It was part of

9    Instruction 27, as read before.  And we think it's very

10   important that the second jury knows that.  Because, again,

11   they don't know which incidents or how many incidents the first

12   jury found; that's not evident from the verdict form.  And it

13   may well be the case.  The first jury found a single incident

14   contributed to the hostile work environment.  And we think it

15   consistent with the law; the second jury must know, if it's

16   going to be told about what these liability claims were all

17   about -- that that language should be included.

18   I just note in the title to a number of these

19   instructions, there's a reference to Title VII, which I believe

20   is misplaced given the claims that Mr. Diaz raised.  So maybe

21   it came from somewhere, but I wanted to raise that issue.

22   I mentioned before -- and I know I'm kind of picking these

23   apart in various ways -- but in the punitive damages

24   Instruction Number 12, we do think it's important to tell the

25   jury about the preponderance of the evidence burden that

1  Mr. Diaz has, so...

2       THE COURT:  So my suggestion is that you file, on ECF,

3  a -- either in tract changes or in some other way, the

4  specifics of what you've argued today so that it's clear what

5  the issue is.

6       MR. POSNER:  Yeah.  That would be my pleasure.

7       I will say, in Number 12, there is a reference to "any

8  punitive damages."  I think what Your Honor did read is a

9  little different from what I have as well.  So it might make

10  sense for your clerk to resend us what you have, and then we

11  can mark those up.

12       THE COURT:  Maybe I just snuck this into my own

13  copy --

14       MR. POSNER:  There's one reference to "any punitive

15  damages," and we think those references should be abundant.

16  They were there in the first trial, and they're appropriate

17  here too.  So thank you.

18       THE COURT:  Okay.  Thank you.

19       MR. RUBIN:  Final points, Your Honor.

20       With respect to nominal damages, the relevant pages of

21  *Hazle*, if you want to take a look at it later, are 991 at

22  Note 6.

23       THE COURT:  Great.

24       MR. RUBIN:  And then 992, where they talk about the

25  Supreme Court holding that entitlement to compensatory damages

1  in civil rights actions.  *Hazle* was a 1983 action.   The Supreme

2  Court case was a 1983 action.   This is a civil rights action as

3  well.

4      And then 993 is where they cite the Second Circuit, the

5  Eighth Circuit, and the Eleventh Circuit case for the point

6  where harm has been established, the plaintiff is entitled to

7  compensatory, not merely nominal damages.

8      **THE COURT:**  Well -- and that's the way that I have --

9  that I'm thinking about these instructions.   I may not have

10  done them correctly, but the -- I do think that nominal damages

11  do not apply to compensatory damages.

12      I think they do apply, for the reasons that we were

13  discussing, with respect to punitives.   And I don't know

14  whether they're case -- whether you have any punitive damages

15  cases.   But I'll look -- I will look again at this.

16      **MR. RUBIN:**  That's my point.  I think, if you

17  extrapolate the reasoning from *Hazle* -- which, as you point

18  out, was a compensatory damages case -- to the punitive damages

19  context, the same reasoning would apply.

20      **THE COURT:**  Yeah.  I just -- I see them as distinct. I

21  see the work that the jury has to do in compensating somebody

22  for emotional distress is a very different issue than -- than

23  punitive damages.

24      **MR. RUBIN:**  Except, perhaps, once a jury has found

25  that conduct is malicious, oppressive, or in reckless disregard

1    of plaintiff's rights, in which case it's much like

2    compensatory damages harm.

3         And as to that point about malicious, oppressive, and

4    reckless disregard, that's the work that, apparently,

5    Instruction Number 9 does.  If you were to drop Number 9, or

6    merge it into Number 2 and Number 12, the jury wouldn't be told

7    that the prior jury had found that Tesla's violation of federal

8    law was malicious, oppressive, and in disregard of rights, and

9    what those terms mean.

10        So I think that's why Number 9 is in there and should

11   remain in there.

12             THE COURT:  Okay.

13        MR. POSNER:  That's why we think it should not be in

14   there, because of the reason I explained.

15        But I do have a few cites on the point about nominal

16   punitive damages, Your Honor.

17             THE COURT:  Okay.

18        MR. POSNER:  This is -- you know, we got these a few

19   days ago and started looking into it.  But there is precedent

20   to support nominal punitive damages.

21        I'll refer the Court to *Schwenk v. Kavanaugh*,

22   4 F.Sup.2d 116; *Martinez-Velez v. Rey-Hernandez*, 506 F.3d 32;

23   *Jones v. Lockhart*, 29 F.3d 422; and even *Smith v. Wade* -- which

24   is a Supreme Court case on which Mr. Diaz relies -- at

25   461 U.S. 30 at page 52, recognizes the -- well, I might be

**PROCEEDINGS**

1    actually conflating now to a compensatory case.  But the first

2    few I read were punitive -- nominal punitive damages.

3        We certainly disagree that it is proper to extrapolate

4    from compensatory damages to say that there cannot be nominal

5    punitive damages either.  It's a very different inquiry and

6    analysis, and so we disagree with that point as well.

7        **THE COURT:**  Okay.  All right.  Thank you for that.

8        The verdict form that I intend to use is basically the --

9    essentially what the plaintiffs provided.  It's very simple.

10   What past noneconomic damages, what future noneconomic damages,

11   what amount of punitive damages.

12       So those, I think, are the issues.

13       Mr. Posner?

14       **MR. POSNER:**  May I -- just on the verdict form?

15       We added -- you know, this goes back to the issue that we

16   were talking about, whether the second jury should find --

17   should be asked to determine the predicate for punitive

18   damages.  We included the question and we would request that it

19   be given.

20       We made some other small line edits to conform to,

21   I believe, the verdict form in the first trial, but Your Honor

22   has those.  Thank you.

23       **THE COURT:**  Thank you.

24       Mr. Organ?

25       **MR. ORGAN:**  My paralegal, Ms. Grislis, asked me to ask

**PROCEEDINGS**

1    a couple of questions on technical issues.

2              **THE COURT:**  Okay.

3              **MR. ORGAN:**  And that is, in terms of the exhibit

4    binder, it was our intent to put together one joint exhibit

5    binder.

6              **THE COURT:**  Great.

7              **MR. ORGAN:**  All the exhibits do fit into, like, a

8    one-and-a-half inch binder if we double-side the exhibits.  Is

9    that okay with the Court?

10             **THE COURT:**  That's fine by me.

11             **MR. ORGAN:**  Okay.  And that will avoid us having to

12   give individual binders, like we did in the last trial because

13   we had volumes of exhibits.  So I'll instruct her on that.

14        And then the next thing is:  The Court had the original

15   deposition transcripts.  I don't know whether the Court still

16   has the original transcripts, but --

17             **THE COURT:**  They're not on my bench.

18             **MR. ORGAN:**  I didn't think the Court did.

19        What I was going to suggest is that we would agree to

20   provide the Court with Min-U-Scripts.  We did do that,

21   occasionally, when it was difficult to find those.  I don't

22   believe the parties would disagree, and so...

23             **THE COURT:**  Minis are fine, yeah.

24             **MR. ORGAN:**  And then we have Min-U-Script transcripts

25   from the past trial.  We would do the same, Your Honor, for

**PROCEEDINGS**

1   that, if that's okay with the Court.

2          **THE COURT:**  That's fine.

3          **MR. ORGAN:**  Okay.  Okay.  Thank you, Your Honor.

4          **THE COURT:**  Other questions?

5          **MR. POSNER:**  Now is our opportunity, Your Honor.

6                    (Reporter interruption.)

7                    (Pause in proceedings.)

8          **MR. POSNER:**  I just want to raise an issue about the

9   interplay between two arguments that we raised, because I'm not

10  sure how clear it would come through from our papers.  But we

11  are of the view that the jury, the second jury, should be --

12  should make the punitive damages predicate determination on its

13  own, and should not be instructed that it has been made.

14       We have argued, in Motion in Limine Number 4, which

15  Your Honor has denied, that evidence of harm to others should

16  be excluded from the retrial.

17       I would say that if Your Honor is inclined, over our

18  objection, to instruct the second jury that the predicate

19  finding has been made, then it is even less appropriate, if

20  not, you know, contrary to law, to instruct the jury on harm to

21  others.  And -- or excuse me -- to allow evidence of harm to

22  others, as identified in our Motion in Limine Number 4.

23       And that's because the cases on which we rely -- these are

24  all in our Motion in Limine Number 4 -- *State Farm*, *Philip*

25  *Morris*, *White v. Ford* -- they recognize a distinction between

1 when it may be appropriate to introduce evidence of harm to

2 others and when it's not in a punitive damages case.  And they

3 recognize that it may be appropriate to introduce evidence of

4 harm to others for purposes of the threshold determination of

5 whether there was reprehensiblity; what we call "the

6 predicate."

7      It is not appropriate for a jury to consider evidence of

8 harm to others for sake of the secondary calculation of

9 punitive damages; "the punishment inquiry," as the cases refer

10 to it.

11      We feel these cases draw this distinction pretty clearly.

12 It's often the case -- as it may be the case on this second

13 trial -- that the jury would decide both the predicate, whether

14 there was reprehensiblity, and then also the degree of

15 reprehensiblity, in which case, these cases that I mentioned,

16 they use limiting instructions to tell the jury that "You can

17 consider evidence of harm to others only for determining

18 reprehensiblity, but not for punishing the defendant."

19      But if Your Honor is going to take the predicate

20 determination of punitives away from the second jury, then we

21 believe it's quite clear, under these cases, that there really

22 should be no evidence of harm to others of the type that we

23 identified in our Motion in Limine Number 4.

24           **THE COURT:**  Okay.

25           **MR. POSNER:**  I want to make that argument.  Thank you.

**PROCEEDINGS**

1           **THE COURT:**  Mr. Rubin?

2           **MR. RUBIN:**  Thank you.

3       The argument that there should be no punitive damages is,

4   obviously, inconsistent with what the parties have agreed and

5   discussed for the last 10 months, and was based on a misreading

6   of a prior order by this Court.  So I'm not going to deal with

7   the fact that it's waived; that's all in the papers.

8       The question as to whether evidence of the pervasiveness

9   of racial harassment is relevant to a punitive damages amount

10  determination after a jury has determined that the conduct is

11  oppressive, malicious, or in reckless disregard of the

12  plaintiff's rights absolutely goes to both reprehensiblity and

13  to deterrence.

14      And I don't think we need to reargue the points in our

15  brief.  We laid out and we quoted the language from *Gore*, from

16  *Philip Morris*, from *State Farm*.  The limiting instruction is

17  the way to deal with it.

18      I think Your Honor understands, but we have fully briefed

19  those points and we rely on our briefs.

20          **THE COURT:**  All right.

21      I am going to allow that evidence to come in in the second

22  trial.  I do think it's -- particularly because you're going to

23  be arguing, in a variety of ways, how un-reprehensible your

24  client has been.  I think that -- and how un-pervasive --

25  despite the finding of the Court -- the conduct was.

1      I think that that evidence is -- I think it goes to both

2  the -- how the damage occurred and also to the degree of

3  reprehensiblity that the jury ought to be able to consider.

4      So -- but thank you for the argument.

5           **MS. HENDERSON:**  Your Honor, Mari Henderson for Tesla.

6      I understand that your ruling is that exhibits that were

7  admitted at the last trial will be admitted again.  And

8  exhibits that were not admitted at the last trial will not be

9  admitted again.  I just wanted to ask about one specific

10 exhibit.

11     Exhibit 106 was used solely for impeachment purposes.  It

12 was an instance of an N-word used outside of when Owen Diaz was

13 there, and it was used solely to impeach Ed Romero and Victor

14 Quintero on the stand when they testified, at the time, that

15 they did not have any recollection of other times the N-word

16 was used.

17     If they testify differently at this trial, then it is no

18 longer impeachment.  And so we would ask that -- that

19 Exhibit 106 not be admitted at this trial, unless the proper

20 foundation is established.

21           **THE COURT:**  Okay.

22           **MR. ORGAN:**  Well, Your Honor, the proper foundation

23 will be established, because regardless of how they testify in

24 this trial, if they testify in this trial "Oh, yeah, I did

25 receive the N-word complaint," then I'm entitled to impeach

PROCEEDINGS

1  them with their prior statements in the court and in their

2  depositions.

3      That's proper impeachment; it goes to their absolute

4  credibility.

5      **THE COURT:**  I guess the question -- you're certainly

6  entitled to impeach them on their credibility.  I guess, the

7  question is -- and I don't, shockingly, have a memory of what

8  Exhibit 106 is exactly, but --

9      **MR. ORGAN:**  106, Your Honor, was the e-mail from

10  Mr. Romero, talking about a complaint of use of the N-word in

11  the elevator area, that was then sent to Mr. Quintero.

12      **THE COURT:**  Well, so -- the short answer on this is:

13  You'll need to give me the document.

14      Because, again, I don't remember exactly what that was and

15  what the context of it was.  And I don't know whether, in this

16  trial, it's admissible or not.  So I'm just going to have to

17  look at it.

18      If somebody would provide me with things before I am asked

19  for a ruling, I'd be happier, but -- that's what I'll do.

20      **MR. ORGAN:**  We'll certainly do that, Your Honor.

21      **THE COURT:**  Okay.

22      **MR. POSNER:**  Your Honor, I understand and appreciate

23  your ruling on harm to others.  I just want to bring up the

24  issue of the evidence of -- that Mr. Wheeler testified to, the

25  unfortunate incident about the feces evidence.

PROCEEDINGS

1          **THE COURT:**  A horrible incident.

2          **MR. POSNER:**  A horrible incident, unquestionably.

3      There -- separate and apart from whether harm to others

4   comes in categorically, though, there is wide recognition that

5   evidence of a material different -- materially dissimilar form

6   from the type of conduct that harmed the plaintiff really

7   should not be introduced for purposes of determining an amount

8   of punitive damages, or even reprehensiblity in the first

9   place.

10      We cited those cases in our motion in limine.  We

11   understand Your Honor's ruling.  But I wanted to raise that

12   issue specifically because we feel it stands alone and is

13   distanced from some of the other forms.

14      As I understand it, there's no non-speculative evidence in

15   the record that that incident resulted from racial

16   discrimination.  It's not a racial slur.  It's not a drawing.

17   It's something different.  It's obviously inflammatory and

18   prejudicial, and we would ask Your Honor to take a further

19   consideration about whether that specific evidence of supposed

20   harm to others should be -- should come in.  And we would

21   request Your Honor exclude it.

22          **THE COURT:**  What's your response to that?

23          **MR. ORGAN:**  Well, the feces incident is relevant to

24   several things.

25      First of all, Mr. Wheeler thought it was race-based.

**PROCEEDINGS**

1    Second of all, Mr. Wheeler noted that he complained about

2    it and there was no investigation of it, even though they had

3    surveillance cameras that clearly show that area.  So it goes

4    to Tesla's lack of follow-through, Your Honor, on complaints,

5    which they're going to come in here and say, "Oh, we

6    investigated every time," and "We did a great job," and "We're

7    very thorough in that."  So it impeaches that.

8    And then, third, I believe Mr. Diaz testified that he was

9    aware of the feces incident.

10   So I can't be sure of that, Your Honor.

11        **THE COURT:**  I don't -- I don't know about that either.

12        **MR. ORGAN:**  Yeah.  I'm not sure.  But I thought I

13   heard that.  But I won't represent to the Court that that

14   actually did happen.  But I do believe he was aware of that

15   incident.

16   But the first two grounds are basis to get it in anyway,

17   Your Honor.

18        **THE COURT:**  Okay.  I'll go back and read Mr. Wheeler's

19   testimony.  It is fresh in my mind, but not all of details.

20        **MR. ORGAN:**  Mr. Rubin informs me it was in his

21   deposition that testified about it.  But he did not testify

22   about it in trial.

23        **MR. RUBIN:**  Oh, wait.  His trial testimony --

24        **THE COURT:**  When you say "his"?

25        **MR. RUBIN:**  Sorry.  Mr. Diaz's trial testimony

1   indicated that he knew about it.

2        It isn't all that precise about when he gained that

3   knowledge, but his deposition testimony was clear that he had

4   that knowledge.  So he was aware of the Wheeler feces incident.

5   And we can submit that deposition excerpt.

6        MR. POSNER:  Well, I can read it to you right now,

7   Your Honor.

8        This is the deposition of Mr. Wheeler from June 12th,

9   2019, page 57, line 8.  And it looks like this is in the docket

10  at Docket 381-1.

11       "QUESTION:  Do you think that the feces was put on your

12       seat in part because you were African American?

13       "ANSWER:  I could assume that, but I can't say for sure,

14       so I will not say that.  I will say that it was an act

15       against me, but it could have been anyone."

16       And I'll just close by saying just the mere fact that

17  Mr. Diaz might have known about this incident, I'm not really

18  sure how that contributes to harm or reprehensiblity or degree

19  of reprehensiblity as relevant to any of the types of conduct

20  at issue.

21       THE COURT:  Oh, well, there, I would disagree with

22  you.  If Mr. Diaz knew about it, I could imagine an argument

23  from the plaintiffs how that would increase the distress that

24  he felt working for Tesla.

25       MR. POSNER:  Well, we would argue that the distress

**PROCEEDINGS**

1  and the liability findings that are being applied in the second

2  trial have to be premised on acts of racial discrimination and

3  not just general -- I think, the -- one of the Supreme Court

4  cases, *Smith*, says these dissimilar acts, you don't just punish

5  a defendant because of unseemly conduct or because they're not

6  a good person.  You punish them because of conduct of a certain

7  type that caused harm to the plaintiff.  This is --

8        **THE COURT:**  We're talking about the plaintiff's

9  testimony, however.  If the plaintiff knew about what happened

10 to Mr. Wheeler while he was feeling the distress that he felt

11 by being an African-American working at Tesla's factory, and

12 believed that that was racially motivated, I don't know why

13 that wouldn't come in.

14       **MR. POSNER:**  If there were some basis that it were

15 racially motivated, clearly racial slurs --

16       **THE COURT:**  What he thinks is -- I mean, we're talking

17 about emotional distress here.  It doesn't even have to be

18 true; it has to be what he believed at the time based on all of

19 the circumstances.

20    I would think that that was still admissible.  You could

21 tell me differently but --

22       **MR. POSNER:**  I think the question then becomes:  Where

23 do you draw the line?  A slippery floor or -- I mean, one can

24 come up with any number of things at the factory that Mr. Diaz

25 might not have liked.  And we would argue that those, really,

1    as a matter of law, can't contribute to liability for hostile

2    work environment based on racial discrimination and, therefore,

3    they weren't part of the jury's verdict and cannot be used in

4    the retrial to form the basis of a damages award.

5         So this is why I'm focused on this incident with

6    Mr. Wheeler.  We're not talking about some of the other harm to

7    others.  This one to us is quite distinct because there's

8    really no nonspeculative evidence that it was racially

9    motivated, and that separates it from the others.

10        **THE COURT:**  I'll go back and read it.  And I'm sure

11   you'll be able, in your cross-examination, to bring out all of

12   those distinctions.

13        All right.  Anything else?

14        **MR. RUBIN:**  Not from the plaintiffs, Your Honor.

15        **MR. POSNER:**  Nothing from defendants.

16        **THE COURT:**  All right.  So I will -- I will consider

17   if -- Mr. Posner, get the changes that you were interested in,

18   in the jury instructions.  I wrote down Mr. Rubin's.  I'll try

19   and get a revised order draft out as soon as I can.  And,

20   otherwise, I will look forward to seeing you on -- by Zoom on

21   the 24th.

22        **MR. RUBIN:**  Thank you.  And will we have an

23   opportunity to respond to Mr. Posner's new language?

24        **THE COURT:**  So if you would like to -- if there are

25   cases on either side without extensive briefing, I can read

1    cases.  If you just wanted to cite me a few cases that you

2    think are just spot on, and give me a sentence or two, that

3    would be great.  And do that really quickly.

4         **MR. RUBIN:**  Any comments will be quick and precise.

5    Thank you.

6         **THE COURT:**  And assuming Mr. Posner does that today,

7    do it by the end of the week so that I can get them and put

8    this to rest.

9         **MR. POSNER:**  Is it possible that we can have until

10   tomorrow because I'm flying home after the hearing.

11        **THE COURT:**  You can do it tomorrow, and I'm not going

12   to change the date for the plaintiffs.

13        **MR. POSNER:**  Okay.

14        **THE COURT:**  All right.  Thank you all very much.

15        **MR. POSNER:**  Thank you, Your Honor.

16        **MR. RUBIN:**  Thank you, Your Honor.

17        **MR. GRIFFIN:**  Thank you, Your Honor.

18            (Proceedings adjourned at 3:27 p.m.)

19                        ---o0o---

20

21

22

23

24

25

## **CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Thursday, March 9, 2023


_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court