UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN DIAZ,<br><br>        Plaintiff,<br><br>    v.<br><br>TESLA, INC., et al.,<br><br>        Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**ORDER ON MOTIONS IN LIMINE, MICHAEL WHEELER TESTIMONY, AND PUNITIVE DAMAGES**<br><br>Re: Dkt. Nos. 381, 382 |

The facts and procedural background of this case are recounted in detail in my April 13, 2022, Order on Post Trial Motions. [Dkt. No. 328]. This Order assumes familiarity with those facts. I also issued an Order on December 12, 2022, denying Tesla's motion for a new trial on liability and damages. [Dkt. No. 365]. I directed the parties to discuss and brief questions about what evidence and issues from the first trial may be raised at the second trial. [Dkt. No. 364] (minute order). After a subsequent case management conference, I instructed the parties that "[i]n general," new evidence, witnesses, and exhibits would be prohibited at the second trial, and that the parties were "bound by the choices made in the original trial." [Dkt. No. 376] (minute order).

I then held a pretrial conference on February 27, 2023. [Dkt. No. 409]. In anticipation of that conference, the parties filed motions in limine and oppositions. ("Def. Mot.") [Dkt. No. 381]; ("Pls. Mot.") [Dkt. No. 382]; ("Def. Oppo.") [Dkt. No. 390]; ("Pls. Oppo.") [Dkt. No. 391].

**DISCUSSION**

**I.     TESLA'S MOTIONS IN LIMINE**

    **A.     Permit Testimony from Witnesses Robert Hurtado and Andres Donet**

Tesla moves to permit testimony from two new witnesses. *See* Def. Mot. 1:2-7:8. DENIED.

First, Robert Hurtado was not disclosed during discovery before the first trial. *Id.* 1:12-28. My prior pre-trial Order said that "Tesla will not be permitted to call" any Tesla employees whose information Tesla failed to disclose as responsive to plaintiffs' requests. [Dkt. No. 160] 1:24-2:5. For that reason alone, he is not permitted to testify at the second damages-only trial. And while I need not address this further, I note that Tesla "knew or should have known" that Hurtado was necessary at the first trial because Hurtado was mentioned as a harasser in the initial complaint and Diaz said at his deposition that Hurtado called him the n-word at least 30 times. Diaz also specifically sought Hurtado's contact information, but Tesla said at the time (contrary to its assertions now) that Hurtado did not work with Diaz and may not be the same "Robert" as Diaz identified as the harasser. *See* Dkt. No. 56.

I also deny Tesla's request for an order precluding the jury from drawing negative inferences based on Hurtado's nonappearance at trial, as well as for a jury instruction telling the jury to not draw negative inferences about Hurtado's credibility based on his failure to testify. This violates the purpose and spirit of my prior Order: it would be unfair for Tesla to conceal a witness and then prevent Diaz from asking the jury to draw unfavorable inferences against that witness.

Second, Andres Donet is also not permitted to testify. I was clear in my prior Order that the parties will be limited to the witnesses called and evidence used at the first trial. *See* Dkt. No. 376 (minute order). And if he were permitted to testify, in the interest of fairness I would have to grant Diaz's request to use new impeachment evidence that was not submitted at the first trial. Both requests are denied, as is Tesla's request for an order precluding Diaz from introducing specific evidence and argument about Donet if he cannot be called to testify. This too violates the purpose and spirit of my order limiting new evidence and witnesses.

**B.     Exclude Plaintiff's Standard-of-Care Expert Amy Oppenheimer**

Tesla seeks to exclude Oppenheimer under FRE 403, saying her testimony is irrelevant, confusing, misleading, prejudicial, and a waste of time, because it relates to liability and not damages. Mot. 7:11-8:24. DENIED.

Tesla's argument is unpersuasive—it says Oppenheimer testified about industry standards

1 and how Tesla's investigation did not meet those standards, but somehow that testimony is
2 unrelated to the extent of harm suffered and so unrelated to damages. I disagree. The extent to
3 which Tesla failed to abide by industry standards is relevant to the harm suffered. Oppenheimer
4 may testify.

And again, Tesla's request to limit what Diaz may say about Tesla's lack of expert rebuttal expert violates the purpose and spirit of my order limiting new evidence and witnesses. It is also DENIED.

### C. Admit Exhibits 229, 248, 252, 254

Tesla requests admission of Exhibits 229, 248, 252, and 254, which were previously identified but not admitted. DENIED.

Tesla seeks to admit the first three exhibits to show Diaz had "no issue" submitting reports, despite his assertions that he did not report the racist incidents because he did not feel comfortable. Def. Mot. 9:4-24. Tesla seeks the fourth exhibit to show that Diaz's superiors responded to complaints of harassment. *Id.* 9:25-11:9. But again, my prior order precludes admission of new evidence at this trial, and these exhibits are plainly new evidence. *See* Dkt. No. 376 (minute order). Also, it is not clear how these exhibits go to the extent of harm suffered, and so are unrelated to a damages-only retrial.

### D. Exclude Evidence of Alleged Racist Conduct Not Directed at or Experienced by Mr. Diaz

Tesla's theory for exclusion of this evidence is that allowing evidence of alleged racist conduct directed at others in the Tesla's factory would contravene the Supreme Court's guidance that punitive damages cannot be calculated based on harms caused to nonparties. Mot. 14:13-15:15 (citing, among others, *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007)). But the Supreme Court is very clear that "a plaintiff may show harm to others in order to demonstrate reprehensibility." *Philip Morris*, 549 U.S. at 355. And here, the other conduct goes to the reprehensibility and the need for deterrence, because it can be used to show Tesla's efforts or failures to mitigate the racist conduct—which is different from liability because showing Tesla failed to do something is not the same as showing how (in)effective Tesla's actions were.

3

1    Accordingly, even if the evidence Tesla points to does not go to compensatory damages, it
2    certainly goes to reprehensibility for calculating punitive damages.
3        Tesla is correct that the jury should be instructed that it may only punish Tesla for harm to
4    Diaz, though it may consider harm to others in assessing reprehensibility. *See White v. Ford*
5    *Motor Co.*, 500 F.3d 963, 972-73 (9th Cir. 2007). The existing jury instruction addresses this
6    limitation.
7        Tesla also says that many statements are double or triple hearsay, and seeks reaffirmance
8    of the rulings in the prior Order on the motions in limine, Dkt. No. 207, including that Wayne
9    Jackson will not be permitted to testify about hearing the n-word unless Tesla opens the door. As
10   I explained at the last trial, I reconsidered that ruling. See Dkt. 295 (Trial Transcript of September
11   29, 2021) at 372. Jackson is allowed to testify to what he testified at the first trial. He was present
12   on the floor during the time Diaz worked at Tesla and heard the n-word used repeatedly. This
13   testimony corroborates Diaz's experience, which Tesla's witnesses either outright dispute or
14   minimize.

15   **II.   DIAZ'S MOTIONS IN LIMINE**

16   **A.   Preclude Tesla from Presenting Argument or Testimony Inconsistent with the First Jury's Special Liability Verdict Findings**
17
18   **Confirm that Tesla Is Precluded from Eliciting Testimony that Goes Beyond the Scope of Testimony at the First Trial**[1]

19   Diaz seeks reaffirmation that the parties may not introduce new evidence or witnesses and
20   that they are limited to the same incidents discussed at the first trial, particularly seeking an order
21   precluding Tesla's new PMK from presenting testimony about what Tesla is doing now, given
22   Tesla's statement that her testimony will be limited to what Tesla did "in response." *Compare* Pls.
23   Mot. 7 n.* *with* Def. Oppo. 4:12-20. Diaz does not, as Tesla says, seek an order requiring it to ask
24   identical questions as it did at the first trial. Def. Oppo. 4:21-5:2.
25       Diaz's motion to preclude new argument or testimony inconsistent with the first jury's
26   liability findings and to preclude eliciting testimony that goes beyond the scope of testimony from

---

[1] I address these motions together because they seek the same result.

1  the first trial is GRANTED.  This applies to Tesla's new PMK: she may not testify to Tesla's
2  actions beyond the period covered in the first trial.  And as I stated at the hearing, counsel need not
3  ask the same questions as they did at the first trial, but the parties may object if testimony goes
4  beyond the scope of testimony from the first trial.  I will address those objections as they arise.

### B. Preclude Tesla from Introducing Evidence of Mr. Diaz's Job Performance

Diaz moves to preclude submission of evidence related to his job performance and moves to admit evidence of his promotion.  Diaz says testimony about his job performance only addressed liability because Tesla tried to show the harassment was actually criticism about job performance.  Pls. Mot. 8:7-11:12.  Tesla says evidence of job performance is relevant to the extent of harm suffered by Diaz and indicates it will try to show certain incidents were not race-motivated.  *See* Def. Oppo. 6:7-8:13.

In my prior Order, I permitted introduction of evidence of Diaz's work performance to assess the totality of the circumstances in determining whether there was a hostile work environment, but said:

> Obviously, evidence of whether Diaz was a great or terrible employee is not relevant except to the extent that it is offered to explain defendants' decisions or the context of other conduct.  **I will ensure that the evidence is used for a proper purpose and with an appropriate framing for the jury.**
> [Dkt. No. 207] at 3 (emphasis added).

The evidence is allowed for the same reasons, with the same limitations.  The parties are permitted to introduce competing evidence of Diaz's job performance, to the extent that it was admitted at the first trial.  The general limiting instruction will cabin how the parties can use this evidence—specifically, Tesla cannot use the evidence to show there *was* no hostile work environment but may use it to help the jury assess the extent of damages arising from the harassment.  Accordingly, this request is DENIED.

### C. Limit Testimony of Joyce DelaGrande

DelaGrande testified about Diaz's work performance, that Hurtado "would never" use the n-word, and that she conducted only a cursory investigation into the allegations of harassment.  *See* Pls. Mot. 11:14-13:8.  Diaz seeks to preclude all testimony or at least limit it to how often she heard the n-word and the extent of her investigation.  *Id.*  Tesla makes the same arguments as

above about Diaz's work performance, and also says that DelaGrande should be permitted to testify as to the same things she did at the first trial. Def. Oppo. 8:5-13.

DelaGrande may testify about Diaz's work performance for the same reprehensibility-related reasons as addressed above in Diaz's MIL 3, *supra* Part I.D, subject to the same limitations from my prior Order. She may testify that she did not hear the n-word or think Hurtado would use it, consistent with the first trial. And I will not give Diaz's requested instruction that DelaGrande's testimony cannot be used to rebut the finding that Tesla created a hostile work environment or that compensatory and punitive damages are owed, because the broader limiting instruction on this point is sufficient. Accordingly, this request is DENIED.

### D. Preclude Testimony or Argument Disparaging Mr. Diaz's Counsel or Mr. Diaz's Motivations in Bringing this Lawsuit

Diaz says Tesla should not be able to argue that Diaz brought this lawsuit because of his attorneys rather than because of his personal experience, and notes that at the first trial, Tesla implied Diaz did not report the use of n-word until after he hired attorneys. Pls. Mot. 13:11-14:16. Tesla says that it merely compared the timing of Diaz's complaints about the n-word to the timing of hiring counsel and showed that Diaz made non-race-based complaints before hiring counsel. Def. Oppo. 8:15-9:22.

Diaz's reference to Tesla's counsel in a separate and unrelated securities trial, in which Diaz's counsel was not involved, is unpersuasive. Diaz's motion is DENIED. Tesla may point to the timing of Diaz's complaints and compare that to when he hired attorneys, as it did at the first trial. I caution Tesla that it may not improperly imply that Diaz's counsel somehow affected the liability finding.

### E. Admit Evidence of Tesla's Financial Condition as of the First Trial and Preclude Testimony or Argument Regarding the Time-Frame Addressed in Plaintiff's Expert Report

At the first trial, I denied Diaz permission to use an expert report from October 2021 because he had not shared the report with Tesla sufficiently in advance of trial; instead, Diaz used a prior report from October 2019. Pls. Mot. 14:20-16:5. Diaz now seeks to use the 2021 report at this trial to inform punitive damages, asserting that Tesla has had sufficient time to review it since

the last trial. *Id.* As Tesla points out, permitting Diaz to use evidence that was not admitted at the first trial would violate your order limiting the retrial to evidence already presented. This request is DENIED for that reason.

Diaz also requests precluding Tesla from offering testimony or argument suggesting its 2019 report is out of date. *Id.* 16:1-5. This request is too broad and vague without further context. I will address it should it arise at trial. Obviously, since Tesla has opposed allowing Diaz to update his report, if it criticizes Diaz for not updating the report it would open the door to the admission of more current evidence.

More generally, Tesla asserts that "any finding of punitive damages that fails to take into account evidence of Tesla's current conditions and efforts to remediate racial harassment fails to serve the purpose of punitive damages, which is to encourage remediation and deter unlawful conduct." Def. Oppo. 10:5-8 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996)). Tesla is wrong, legally and logically. Tesla's own citation shows that punitive damages may be imposed to *punish* wrongdoing, not merely to deter wrongdoing in the future. *See Gore*, 517 U.S. at 568. And logically, punitive damages would almost never be permitted if a wrongdoer could merely take remediating steps right before trial to avoid paying damages. Tesla's requests to this point are DENIED.

### F. Exclude the Email Forwarding Lamar Patterson's Resume (Trial Ex. 265)

At the first trial, Tesla questioned Diaz about "facilitat[ing] an individual, Lamar Patterson, to try to get a job at Tesla," and when Diaz said he did so but could not remember exactly when, Tesla marked for identification the contested email to refresh his recollection. Def. Oppo. Ex. L 527:20-528:25. Tesla later moved to admit the email without objection. Def. Oppo. Ex. N 563:23-25. Diaz now objects to admitting the same email chain because he says it is irrelevant and unduly prejudicial, because Tesla wants to use the email to show that Diaz referred Black individuals to work at Tesla despite his allegations that the harassment was unbearable. Pls. Mot. 16:8-17:19.

The exhibit is (in theory) relevant to damages and it is not unduly prejudicial, particularly given Diaz's assertion that he has "unrebutted" testimony that he did not know Patterson or his

7

race and was merely doing a favor for a coworker by sending the email. Accordingly, and because the exhibit was previously admitted, Diaz's request is DENIED.

### G. Exclude Evidence of Mr. Diaz's Pay Raise

This email shows Diaz received a pay raise of two dollars per hour in January 2016 and it was used at the first trial to establish joint employment. *See* Def. Oppo. Ex. L 474:24-475:24. Tesla seeks its admission at the second trial to argue Diaz did not experience emotional distress because he was willing to endure the environment for a minimal pay raise, Def. Oppo. 13:15-20, and to discount Diaz's claims that fear of reporting harassment would cause retaliation because he received a pay increase after filing some reports, *id.* 13:21-14:3.

The first jury decided that Diaz experienced emotional distress, so Tesla cannot use this exhibit to argue that he did not. Additionally, Tesla's intended uses are not clearly relevant; there are many reasons an individual would put up with severe harassment, and arguing essentially that Diaz did not value his dignity higher than two dollars per hour is not persuasive. That said, the totality of Tesla's conduct towards Diaz is relevant to consideration of punitive damages. And because this exhibit was admitted in the first trial, and a central purpose of this retrial on damages is to get a second consideration of the amount of damages suffered by Diaz using the same evidence that was before the first jury, Diaz's motion is DENIED.

### H. Exclude Demetric Di-az's October 2015 Job Application (Trial Ex. 379)

Diaz says the job application, which was previously admitted at trial, *see* Dkt. No. 297 (Trial Transcript 5) 708:16-25, is irrelevant to damages and risks misleading the jury and prejudicing Diaz. Pls. Mot. 18:6-20. Tesla says the evidence was previously admitted and that it is relevant to Diaz's damages claim because it could show he did not experience significant emotional harm when he witnessed the harassment against his son. Def. Oppo. 14:5-15:10.

Tesla's argument stretches relevance, in part because liability and harm have been established and the jury need only assess the extent of damages. But importantly, Diaz's emotional harm with respect to Demetric is based on witnessing racial harassment of his son, which occurred long before the second application. Tesla's argument that Demetric's reapplication somehow detracts from the harm Diaz experienced before he knew about the

application—if he even knew about the application—may ultimately be irrelevant. And to the extent that Tesla suggests Diaz did not experience harm from witnessing the incidents with Demetric, that may not be persuasive to the jury.

But because the email was previously admitted for similar purposes, I will allow it again. Diaz may raise appropriate objections at trial.

### III. TESTIMONY OF MICHAEL WHEELER

At the hearing, the parties argued about the introduction of evidence concerning Michael Wheeler, specifically related to his testimony that feces were placed on his cart during his time working at Tesla. The parties filed supplemental statements proffering testimony. [Dkt. Nos. 413, 415]. It is clear from that testimony that Diaz was aware of the feces incident and thought that it was racially motivated, *see* Dkt. No. 413, which is what matters for a trial about harm to Diaz. The incident also goes to the reprehensibility of Tesla's conduct. It is admissible and Wheeler may testify.

### IV. PUNITIVE DAMAGES

Punitive damages were established by the first jury's liability findings. Tesla seeks a retrial where the liability for punitive damages is an open question for the second jury to decide, but I already declined that request in my prior Order. [Dkt. No. 365]. I rejected the request for a retrial on liability—including on liability for punitive damages—because of judicial estoppel.[2] *Id.* 3:5-4:16. I reasoned that because Tesla had moved for a new trial on damages-only— compensatory *and punitive* damages only[3]—its motion arguing that it would be unconstitutional to hold a new trial on damages-only was "clearly inconsistent" with its previous position. *Id.* Tesla

---

[2] Tesla says "one of the principal reasons the Court gave for denying Tesla's motion for a new trial" on liability and damages was to allow Tesla to argue "the punitive-damages predicate." [[Dkt. No. 398] 29:11-12. Tesla is wrong. *The* reason I gave for denying its motion was that it was clearly inconsistent with Tesla's previous position and so barred by judicial estoppel. [Dkt. No. 365].

[3] *See* Dkt. No. 317 at 18:1-26:24. Tesla argues that it is entitled to a new trial (or remittitur) to reduce the award of punitive damages. I granted its motion for remittitur. When Diaz rejected the remitted amount, I granted its motion for new trial as to the *amount* of compensatory and punitive damages, but not as to liability for either. *See* Dkt. No. 365.

is once again judicially estopped from arguing for a new trial on liability for punitive damages where I already granted its motion for a new trial as to liability only.

Accordingly, because liability for punitive damages was established, nominal damages are not appropriate, and the jury will not be so instructed.[4] The nominal damages instruction provides

---

[4] In support of its argument that nominal damages may be awarded as *compensatory* damages here, Tesla points to *Guy v. City of San Diego*, 608 F.3d 582 (9th Cir. 2010), and *Bains LLC v. Arco Products Co., Division of Atlantic Richfield Co.*, 405 F.3d 764 (9th Cir. 2005), but neither case presents a similar procedural posture as the present case.

Additionally, in *Guy*, the Ninth Circuit affirmed a jury's award of nominal damages notwithstanding the jury's findings that the defendant used excessive force and the plaintiff was injured. 608 F.3d at 587-88. Despite the plaintiff's presentation of "uncontradicted" evidence that the defendant-officers all used excessive force, the jury found that two officers did not use excessive force, and so the Ninth Circuit reasoned that the jury discredited some of the plaintiff's testimony. Because some testimony was discredited, the jury could have also discredited the plaintiff's testimony about his injuries, and so the award of nominal damages could "reasonably be reconciled" with its liability findings. *Id.* at 588. Here, of course, there is no indication that the first jury similarly discredited any of the testimony at the first trial, given its liability findings in Diaz's favor and its significant award of compensatory and punitive damages. *Guy* is therefore inapposite.

And in *Bains*, the jury found the defendant-company discriminated against the plaintiff-company on the basis of race and awarded nominal damages for the resulting economic injury. 405 F.3d at 770. Affirming the award, the Ninth Circuit noted that the jury was instructed to award nominal damages if it found the defendant harmed the plaintiff-corporation in violation of the civil rights statute but the plaintiff "failed to prove damages as defined in these instructions." *Id.* at 772. Here, of course, Diaz *did* prove damages as defined in the instructions, and the second jury is now tasked with deciding the amount to which he is entitled. Accordingly, *Bains* is also not on point. Its distinguishable facts are additionally unpersuasive; the court explained an award of nominal damages to compensate a corporation for enduring race discrimination was permissible, where the jury was specifically instructed that the damages could not be based on emotional distress to employees or owners. *Id.* at 770-71. The court did not say an award of nominal damages to compensate an individual for noneconomic emotional distress injury based on enduring racialized harassment would be permissible.

Diaz points to *Hazle v. Crofoot*, 727 F.3d 983, 991-93 (9th Cir. 2013), in which the Ninth Circuit reversed and remanded for a new trial on damages where the jury awarded zero dollars in compensatory damages despite the undisputed finding that the plaintiff's constitutional rights were violated. Though Tesla is correct that the facts of the case and rights at issue were different from those here, the reasoning is persuasive in part because of its reliance on *Smith v. Wade*, 461 U.S. 30, 52 (1983), which explained that "[c]ompensatory damages . . . are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his loss." Here, liability was found. The jury is required to award compensatory damages in an amount appropriate to compensate Diaz for his injuries. Diaz has the burden to prove the *amount* of compensatory damages by a preponderance of the evidence, *see* Ninth Circuit Model Civil Jury Instructions 5.1, and Tesla is free to argue for a small or negligible value. But the first jury already established his entitlement to these damages, so that nominal damages are not appropriate here.

10

that the jury may award nominal damages if the plaintiff "failed to prove damages as defined" by the punitive damages instruction. But the first jury found that Tesla's conduct was malicious, oppressive, or in reckless disregard to Diaz's rights, so Diaz proved damages as defined by the instruction. Consequently, the instruction for nominal damages is improper. As reasoned in my prior order and as I lay out more specifically for the parties now, Tesla is free to argue the extent to which any conduct was malicious, oppressive, or in reckless disregard of Diaz's rights, *see id.* at 13:8-19, including by explaining to the jury that a single incident is sufficient to meet the "severe or pervasive" standard, because the jury did not make a specific finding to this point. And Tesla may of course argue for a negligible or small punitive damages award. But the jury will not be instructed specifically as to nominal damages. This is not contrary to the statement in *Smith v. Wade*, 461 U.S. 30, 52 (1983), that punitive damages "are never awarded as of right," because here they are *not* awarded as of right; Tesla's liability for punitive damages was tried before and found by the first jury.

**CONCLUSION**

For those reasons, the motions are granted in part and denied in part. A final draft of the preliminary instructions will follow the filing of this Order.

**IT IS SO ORDERED.**

Dated: March 15, 2023

William H. Orrick
United States District Judge