QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (appearance *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Daniel C. Posner (CA Bar No. 232009)
  danposner@quinnemanuel.com
  Mari F. Henderson (CA Bar No. 307693)
  marihenderson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Asher Griffin (appearance *pro hac vice*)
  ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN DIAZ,<br><br>             Plaintiff,<br><br>       v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC.,<br><br>             Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**DEFENDANT'S TRIAL BRIEF RE: ADMISSION OF IMPEACHMENT EVIDENCE**<br><br>Judge: Hon. William H. Orrick |

# INTRODUCTION

Tesla respectfully requests that the Court allow it to publish Exhibit 410 to the jury for purposes of impeaching the testimony of Michael Wheeler.

While testifying in this damages-only retrial, Mr. Wheeler made two claims related to an incident involving the presence of feces in the Fremont factory that can be impeached with extrinsic evidence. First, Mr. Wheeler testified that he "sat in the feces" and got it on his pants:

> Q. Why don't you tell us what happened with the cart, sir?
>
> A. There was one evening where I went to lunch, and it was about 30 minutes or so. Came back to my cart and slid into the seat in which I noticed there was a wet feeling on my pants.
>
> So I got out of the seat and I had sat in feces. (March 28 Trial Tr. at 348:6-10.)

Second, Mr. Wheeler testified that he never received an email notifying him that the incident may have been an unintentional act caused by someone with the stomach flu, specifically:

> Q. Isn't it true, sir, that they e-mailed you and told you that somebody got sick and they needed to race that person to get them some help because they . . . had the stomach flu and they used your [cart], and that's why there was some substance on the car; isn't that true, sir?
>
> THE WITNESS: That would be false.
>
> Q. Isn't it true that they told you that in an e-mail?
>
> A. No. (*Id.* at 367:22-368:13.)

Exhibit 410 (attached as **Exhibit A**) contains contemporaneous emails between Mr. Wheeler, Victor Quintero, and others that directly contradict Mr. Wheeler's testimony.

When Tesla attempted to impeach Mr. Wheeler with Exhibit 410, Plaintiff objected on the grounds that Exhibit 410 was not introduced in the last trial and was not produced in discovery. Rough Tr. at 11:00:00-11:00:15. The Court sustained the objection, though did so on an undeveloped record and without reviewing Exhibit 410. In consideration of the actual contents of Exhibit 410, and in light of the background and context that led to Tesla's attempt to impeach Mr. Wheeler with it, the Court should permit Tesla to publish Exhibit 410 to the jury for purposes of impeaching Mr. Wheeler's highly inflammatory, yet false, testimony.

# ARGUMENT

### A. Exhibit 410 Is Impeachment Evidence For Mr. Wheeler's Testimony And Undermines Mr. Diaz's Damages Claim

Mr. Wheeler can be impeached with his prior inconsistent statements as memorialized in his emails. *See* Fed. R. Evid. 613(b) (allowing extrinsic evidence of a witness's prior inconsistent statement). Mr. Wheeler's statement in Exhibit 410 that he "checked [his] person several times and there [were] no marks or stains related" to the feces is inconsistent with his testimony that he "sat in feces." *Contrast* Ex. 410, *with* Rough Tr. at 10:35:32-10:35:52 (Mar. 28, 2023).

Additionally, Exhibit 410 can be used to impeach Mr. Wheeler's testimony that, in response to his complaint about the feces, he was never told it may have been the result of a "person who had the stomach flu," because Exhibit 410 includes the email in which he received this information as well as his response acknowledging it. *Contrast* Ex. 410, *with* Rough Tr. at 10:59:20-10:59:42, 10:59:56-10:59:59.

As the Court has recognized, the incident as described by Mr. Wheeler is "horrible." Feb. 27, 2023 Hr'g Tr. at 52:22-53:1. Mr. Wheeler's testimony about this "horrible" incident may well have prejudiced the jury against Tesla. But now we know Mr. Wheeler's testimony regarding the incident is untrue, and that any prejudice Tesla suffered as a result of it is undue. At a very minimum, Mr. Wheeler has substantially exaggerated the incident to garner sympathy for himself and Mr. Diaz and to slander Tesla. Moreover, Exhibit 410 calls into doubt any possibility that Mr. Diaz suffered emotional distress based on his alleged belief or understanding that this incident was a crude act of racial harassment directed towards Mr. Wheeler. Exhibit 410 shows that evidence of the feces incident has no place in this trial regarding Mr. Diaz's damages.

There is no question that Exhibit 410 is relevant evidence. *See Gray v. Clark*, 2023 WL 1803720, at *4 (E.D. Cal. Feb. 7, 2023) (evidence meets the Rule 401 relevance requirement even if it is relevant "only for the purposes of impeachment or to rebut [the opponent's] presentation of evidence"). And the "right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in

civil cases." *Adickes v. Kress Co.*, 398 U.S. 144, 176 (1970).  Tesla respectfully submits that the Court erred by denying it the right to cross-examine Mr. Wheeler with Exhibit 410.

### B.  The Court's Previous Rulings Do Not Preclude New Impeachment Evidence

When providing guidance on the limitations on this damages-only retrial, the Court specifically stated that the parties are "certainly entitled to impeach [witnesses] on their credibility." Feb. 27, 2023 Hr'g Tr. at 52:5-6.  And the Court has repeatedly clarified that, although the evidence is largely limited to the same evidence from the first trial, the Court does not expect this trial to be a scripted rehash of the first trial.  At minimum, the Court's orders do not confine the parties to "ask[ing] the same questions as they did at the first trial." Dkt. 417 at 5; *see also* Feb. 27, 2023 Hr'g Tr. at 6:17-18 ("[Y]ou're not bound to every question that they asked.").  Importantly, the Court has also recognized that the parties' ability to ask new and different questions may result in the parties being "able to bring out" new facts "from the evidence that [] existed before."  *Id.* at 6:18-19. Specifically, the parties are "***not bound by [] the way that the witnesses were cross-examined***" in the first trial "to show that one or another of th[e] incidents [] didn't happen the way that Mr. Diaz described it."  *Id.* at 7:8-11 (emphasis added).

Accordingly, allowing Tesla to impeach Mr. Wheeler with Exhibit 410 would have been consistent with the Court's prior guidance and rulings regarding the limitations on evidence on this retrial.  And in any case, regardless of what general guidelines the Court has set for this retrial, allowing the jury to hear, and potentially decide this case based upon, testimony that is clearly incorrect cannot serve the ends of justice.  *Cf. McBroom v. Ethicon, Inc.*, 341 F.R.D. 40, 46 (2022) (D. Ariz. April 8, 2022) (amending pretrial order to allow additional exhibit where plaintiff otherwise "would face manifest injustice if precluded from presenting evidence").

### C.  Tesla Was Not Obligated To Produce Or Disclose Exhibit 410

Finally, Tesla had no obligation to produce Exhibit 410 during discovery or otherwise disclose it to Plaintiff before being able to use it for impeachment.

Exhibit 410 is potentially responsive to two of Plaintiff's Requests for Production served during discovery in the case:

- <u>Request for Production No. 21</u>: Please produce all DOCUMENTS detailing complaints of harassment based on race or color against any TESLA employee at the TESLA FACTORY since 2010.

- <u>Request for Production No. 22</u>: Please produce he entire investigation files for any complaints of harassment based on race or color made against TESLA or its employees at the TESLA FACTORY since 2010.

*See* **Exhibit B** (Pl.'s Req. for Prod. Nos. 21 and 22 (May 1, 2018)).

Tesla objected to both requests. *See* **Exhibit C** (Tesla's Objs. to Pl.'s Req. for Prod. Nos. 21 and 22 (June 4, 2018)). The parties disputed the validity of Tesla's objections, which led to them filing a Joint Discovery Letter in which Tesla proposed limiting the request to documents hitting on the search terms "n*gger" and "n*gga." Dkt. 88. The Court accepted Tesla's proposal. Dkt. 93 at 2. Because Exhibit 410 does not contain the terms "n*gger" or "n*gga"—nor is it about use of the N-word in any form—it was non-responsive and Tesla had no obligation to produce it.

Tesla also had no obligation to provide Plaintiff with advance notice of its intent to use Exhibit 410 for impeachment. The Federal Rules of Civil Procedure require parties "provide to the other parties . . . information about the evidence that it may present at trial ***other than solely for impeachment***." Fed. R. Civ. P. 26(a)(3) (emphasis added); *see also* Fed. R. Civ. P. 26(a)(1)(i) and (ii) ("[A] party must, without awaiting a discovery request, provide to the other parties [certain discovery] . . . ***unless the use would be solely for impeachment***." (emphasis added)). The Amended Civil Pretrial Order in this case also recognizes that impeachment evidence is exempt from the disclosure rules. *See* Dkt. 142 (requiring parties to provide "[a] list of all documents and other items to be offered as exhibits at trial, ***other than solely for impeachment or rebuttal***" (emphasis added)). Accordingly, Tesla had no obligation to disclose the existence of, or its intent to use, Exhibit 410 before impeaching Mr. Wheeler's testimony with it.

## CONCLUSION

For the foregoing reasons, the Court should permit Tesla to publish Exhibit 410 to the jury for purposes of impeaching Mr. Wheeler's testimony.

| | | |
|---|---|---|
| 1 | DATED: March 29, 2023 | By: */s/ Daniel C. Posner* |
| 2 | | Daniel C. Posner |
| | | Mari Henderson |
| 3 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | | 865 S. Figueroa St., 10th Floor |
| 4 | | Los Angeles, California 90017 |
| | | Telephone: (213) 443-3000 |
| 5 | | Facsimile: (213) 443-3100 |

Alex Spiro (appearance *pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

Asher Griffin (appearance *pro hac vice*)
ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*