```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3

 4    ---------------------------------
                                              REPORTER CERTIFIED
 5    DEMETRIC DI-AZ, OWEN DIAZ and              TRANSCRIPT
      LAMAR PATTERSON, an individual,
 6

 7                   Plaintiffs,              CONFIDENTIAL

 8        vs.                           No. 3:17-cv-06748-WHO
                                        VOL II, pgs 187 - 292
 9
      TESLA, INC. DBA TESLA MOTORS,
10    INC.; CITISTAFF SOLUTIONS,
      INC.; WEST VALLEY STAFFING
11    GROUP; CHARTWELL STAFFING
      SERVICES, INC. and DOES 1-10,
12    inclusive,

13                   Defendants.

14    ---------------------------------

15

16                      CONFIDENTIAL

17               VIDEOTAPED DEPOSITION OF

18                       OWEN DIAZ

19               SAN FRANCISCO, CALIFORNIA

20                MONDAY, DECEMBER 3, 2018

21

22

23    Reported by:

24    GINA V. CARBONE, CSR #8249
      RPR, RMR, CRR, CCRR
25    FILE NO.:  18-27207
```

CHASE® LITIGATION SERVICES

```
 1         Deposition of OWEN DIAZ, Volume II, taken
 2   on behalf of Defendants at CONSTANGY, BROOKS, SMITH
 3   & PROPHETE LLP, 351 California Street, Suite 200,
 4   San Francisco, California 94104, commencing at
 5   10:29 a.m. on Monday, December 3, 2018, before
 6   Gina V. Carbone, Certified Shorthand Reporter
 7   No. 8249, RPR, RMR, CRR, CCRR.
 8
 9              A P P E A R A N C E S
10   For the Plaintiffs:
11      CALIFORNIA CIVIL RIGHTS LAW GROUP
12      By:  LAWRENCE A. ORGAN, Esq.
13      407 San Anselmo Avenue, Suite 201
14      San Anselmo, California 94612
15      (415) 453-4740
16      larry@civilrightsca.com
17
18   For the Defendants TESLA; CITISTAFF SOLUTIONS, INC.:
19      CONSTANGY, BROOKS, SMITH & PROPHETE LLP
20      By:  BARBARA I. ANTONUCCI, Esq.
21      351 California Street, Suite 200
22      San Francisco, California 94104
23      (415) 918-3000
24      bantonucci@constangy.com
25   //
```

```
 1  APPEARANCES (continued)
 2
 3  For the Defendant WEST VALLEY STAFFING:
 4      PAHL & MCCAY
 5      BY: FENN C. HORTON III, ESQ.
 6      225 West Santa Clara, Suite 1500
 7      San Jose, California 95113-1752
 8      (408) 286-5100
 9      fhorton@pahl-mccay.com
10
11  ALSO PRESENT:  Teresa Kossayian,
                   West Valley Staffing Group
12
                   Frank Quirarte, videographer
13
```

```
10:50:31   1  and Tom Kawasaki as people who might have
10:50:34   2  information regarding the harassing, offensive, and
10:50:37   3  inappropriate conduct that you experienced while you
10:50:39   4  were working at the Tesla factory.  Anybody else?
10:50:54   5       A.   At this particular time, I can't recall.
10:51:12   6       Q.   What information do you believe Michael
10:51:13   7  Wheeler has about your claims?
10:51:21   8       A.   He was present when the picaninny was
10:51:32   9  found.
10:51:34  10            Michael Wheeler, hisself, was a victim of
10:51:41  11  said harassment.  They had wiped feces on the cart
10:51:48  12  that he was using to harass him.  And you would have
10:51:54  13  to talk to Michael Wheeler.  He can get more in
10:51:59  14  detail with that.
10:52:00  15       Q.   So you said he was present during the,
10:52:02  16  quote, picaninny drawing that was found, correct?
10:52:09  17       A.   Yes.
10:52:09  18       Q.   And you said he "was a victim of said
10:52:12  19  harassment."  What harassment was he a victim of?
10:52:22  20       A.   Discriminatory racial.
10:52:24  21       Q.   What discriminatory or racial conduct?
10:52:27  22       A.   Michael Wheeler is an African-American man.
10:52:30  23       Q.   And what conduct do you believe that he was
10:52:33  24  a victim of?
10:52:41  25       A.   I just said that they had smeared feces
```

| | | |
|---|---|---|
| 10:52:48 | 1 | over the utility cart or golf cart that he was |
| 10:52:51 | 2 | using.  You would have to get more in detail with |
| 10:52:54 | 3 | that with Michael Wheeler.  I don't want to speak |
| 10:52:58 | 4 | upon his feelings.  He can relay that to you more |
| 10:53:01 | 5 | hisself. |
| 10:53:02 | 6 | Q.  And what other conduct do you believe he |
| 10:53:04 | 7 | was the victim of besides the feces? |
| 10:53:19 | 8 | A.  You would have to ask Michael Wheeler. |
| 10:53:21 | 9 | Q.  I'm asking you, though. |
| 10:53:22 | 10 | A.  I'm just saying, reason being, is just he |
| 10:53:26 | 11 | can give you a little bit more in detail of what |
| 10:53:28 | 12 | happened to him.  I can just -- I just told you the |
| 10:53:34 | 13 | feces, the harassment.  That's basically what I know |
| 10:53:39 | 14 | what he had -- he had went through. |
| 10:53:42 | 15 | So in order to get details that you're |
| 10:53:44 | 16 | trying to get, you'd have to ask Mr. Wheeler. |
| 10:53:50 | 17 | Q.  But he discussed some conduct that you |
| 10:53:51 | 18 | believe was harassing towards him with you, correct? |
| 10:53:55 | 19 | A.  Yes. |
| 10:53:56 | 20 | Q.  Okay.  Besides the feces, what other |
| 10:54:00 | 21 | conduct that you believe was harassment did he |
| 10:54:05 | 22 | discuss with you? |
| 10:54:08 | 23 | A.  Being called the N-word.  Stuff like that. |
| 10:54:10 | 24 | Q.  Anything else? |
| 10:54:14 | 25 | A.  Not that I can recall at this particular |

```
10:54:17  1   moment.
10:54:22  2        Q.   Did he tell you who had wiped feces on the
10:54:26  3   cart?
10:54:35  4        A.   I believe he was trying to get Ed Romero,
10:54:41  5   Jaime Salazar, and Victor Quinterez (verbatim) to
10:54:46  6   pull video surveillance of it.
10:54:59  7        Q.   Do you know who had wiped feces on the
10:55:02  8   cart?
10:55:02  9        A.   No.
10:55:03 10        Q.   Did he ever tell you if he found out who
10:55:07 11   had wiped feces on the cart?
10:55:14 12        A.   I don't recall.
10:55:17 13        Q.   Did he ever tell you whether Edward Romero,
10:55:21 14   Victor Quintero, and Jaime Salazar had pulled the
10:55:26 15   video?
10:55:33 16        A.   He was pretty upset about them sweeping it
10:55:35 17   under the rug.
10:55:37 18        Q.   He told you that?
10:55:39 19        A.   Yes.
10:55:44 20        Q.   Do you know if he -- if the video was ever
10:55:47 21   pulled?
10:55:50 22        A.   No.  I don't know.
10:55:57 23        Q.   Do you know what happened as a result of
10:56:00 24   Mr. Wheeler having told you that feces were wiped on
10:56:08 25   the cart?
```

```
10:56:12  1              MR. ORGAN:  Objection.  Vague and
10:56:13  2   ambiguous.
10:56:13  3              THE WITNESS:  You'd have to ask
10:56:15  4   Mr. Wheeler.
10:56:15  5   BY MS. ANTONUCCI:
10:56:16  6         Q.  Do you know if any actions were taken as a
10:56:17  7   result of feces being wiped on the cart?
10:56:25  8         A.  I don't believe there were.
10:56:26  9         Q.  Why don't you believe there were?
10:56:30 10         A.  He was pretty adamant about the situation.
10:56:38 11         Q.  What does that mean?
10:56:45 12         A.  It was just another incident that was swept
10:56:51 13   under the rug by the company.  He felt that -- well,
10:56:56 14   I'm saying that he felt that he was being treated
10:57:02 15   less than a human being.
10:57:04 16         Q.  Did he tell you that?
10:57:09 17         A.  Not in words.  No.
10:57:12 18         Q.  What did he tell you about the incident of
10:57:15 19   the feces on the cart?
10:57:23 20         A.  He mentioned it.
10:57:25 21         Q.  What did he tell you about it?
10:57:31 22         A.  He told me he went to go get the cart from
10:57:40 23   the charging station.  When he got ready to sit in
10:57:48 24   the cart, he noticed that it was feces and on the --
10:57:55 25   I believe it was the steering wheel and the seat.
```

```
10:58:05   1    He kind of asked -- I believe he asked what was some
10:58:10   2    of his recourses that he could take.
10:58:16   3         Q.   Who did he ask what recourses he could
10:58:18   4    take?
10:58:25   5              MR. ORGAN:  Objection.  Calls for
10:58:26   6    speculation.
10:58:28   7              THE WITNESS:  I can't recall.
10:58:35   8    BY MS. ANTONUCCI:
10:58:35   9         Q.   Did he tell you anything else about the
10:58:37  10    feces on the cart?
10:58:41  11         A.   Not that I can recall at this time.
10:58:53  12         Q.   You also mentioned that Mr. Wheeler told
10:58:55  13    you he was called the N-word; is that right?
10:58:59  14         A.   I believe so.  Yes.
10:59:03  15         Q.   What did he tell you about that?
10:59:11  16         A.   I can't recall this particular one.
10:59:15  17         Q.   Did he tell you who called him the N-word?
10:59:20  18         A.   I can't recall.
10:59:24  19         Q.   Did he tell you whether he reported the
10:59:26  20    N-word?
10:59:29  21         A.   I can't recall.
10:59:41  22         Q.   Did he tell you if any actions were --
10:59:46  23    resulted from his report of the N-word?
10:59:51  24         A.   I can't recall.
11:00:02  25         Q.   Did he tell you if anybody witnessed him
```

```
 1        I, GINA V. CARBONE, CSR No. 8249, RPR, RMR, CRR,
 2   CCRR, certify: that the foregoing proceedings were taken
 3   before me at the time and place herein set forth; at
 4   which time the witness was duly sworn; and that the
 5   transcript is a true record of the testimony so given.
 6
 7        Witness review, correction and signature was
 8   (X) by code.                    (X) requested.
 9   ( ) waived.                     ( ) not requested.
10   ( ) not handled by the deposition officer due to party
11   stipulation.
12
13        The dismantling or unbinding of the original
14   transcript will render the reporter's certificate null
15   and void.
16        I further certify that I am not financially
17   interested in the action, and I am not a relative or
18   employee of any attorney of the parties, nor of any of
19   the parties.
20        Dated this 7th   day of December , 2018 .
21
22                          _____
23                                 GINA V. CARBONE
                            CSR #8249, STATE OF CALIFORNIA
24
25
```