LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD (SBN 214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:    (415)-453-7352
Facsimile:    (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
balexander@amfllp.com
**ALEXANDER MORRISON & FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:    (310) 394-0888
Facsimile:    (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:    (415) 421-7151
Facsimile:    (415) 362-8064

DUSTIN L. COLLIER (SBN 264766)
dcollier@collierlawsf.com
V. JOSHUA SOCKS (SBN 303443)
jsocks@collierlawsf.com
ELIZABETH R. MALAY (SBN 336745)
emalay@collierlawsf.com
DREW F. TETI (SBN 267641)
drew@collierlawsf.com
**COLLIER LAW FIRM, LLP**
240 Tamal Vista Blvd. Suite 100
Corte Madera, CA 94925
Telephone:   (415) 767-0047
Facsimile:    (415) 767-0037

Attorneys for Plaintiff,
OWEN DIAZ

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN DIAZ,<br><br>　　Plaintiff,<br><br>　　v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.;<br><br>　　Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S OBJECTIONS TO IMPROPER TESTIMONY OF NEW INCIDENTS AND REQUEST FOR CURATIVE INSTRUCTION**<br><br>Trial Date: March 27, 2023<br>Complaint filed: October 16, 2017 |

　　Tesla's attorney Alex Spiro on Thursday, March 30, 2023, asked a series of outrageously improper questions in cross-examining plaintiff Owen Diaz that included factual assertions accusing Mr. Diaz of being a racist and misogynist. Those questions lacked any evidentiary basis, were irrelevant to the limited damages issues on retrial, and were entirely outside the scope

of the testimony offered in the first trial, or even in any witness's prior depositions. Tesla's counsel deliberately crafted those questions with the intent, and with the likely effect, of prejudicing the jury—including its female and/or Hispanic members—against Mr. Diaz.

Plaintiff is deeply concerned, not only about the prejudicial impacts Tesla's improper questioning has already had, but about the likelihood that on Friday, the last day of trial, Tesla intends to have a well-prepared witness, Ms. Joyce DelaGrande, repeat and perhaps even expand upon some of these inflammatory accusations—despite ***never having made any of these accusations before, including in her sworn first trial testimony***.[1]

Plaintiff requests that the Court admonish Tesla's counsel and prohibit Tesla from eliciting any testimonial support for this highly prejudicial and entirely improper question from its remaining witnesses. Plaintiff also requests that the Court give an instruction to the jury that specifically emphasizes that it must give no weight whatsoever to statements made by Tesla's counsel in the course of questioning, and to inform the jury that it has admonished Tesla's counsel for deliberately violating the Court's clear and repeatedly communicated rules about the permissible scope and content of questioning.

---

[1] Mr. Diaz's counsel did not immediately object that Mr. Spiro's questioning went beyond the scope of testimony in the prior trial (a rule this jury does not know about), because Mr. Diaz denied the conduct, because defense counsel made no attempt to produce evidence of this alleged incident, and because counsel did not wish to draw further attention to this wholly improper line of questioning. But promptly after the Court dismissed the jury for its morning recess, counsel raised the objection, told the Court that counsel had observed some jurors writing down Mr. Spiro's questions, requested that counsel's questions be stricken, and requested a curative instruction. Trial Tr. 4:778:13-23. The Court suggested that Wayne Jackson's testimony may have suggested that these comments were the impetus for harasser Ramon Martinez's October 17, 2015 elevator assault, *id.* 4:779:6-10, but plaintiff's counsel clarified that Wayne Jackson gave no such testimony, and that at most Mr. *Martinez* had given very vague testimony about a woman that had nothing to do with Joyce DelaGrande. *Id.* 4:779:6–20. Plaintiff's counsel explained that there was no evidence Mr. Diaz had made any such comments to Ms. DelaGrande, and expressed concern that the improper question was designed to invoke "race-baiting, stereotype stuff that this is just a conflict between Latinos and African Americans which undermines the racial harassment findings that have already been made in this case." *Id.* 4:779:11-780:10. The Court stated that although the Court would not disturb the record for now, "[y]ou can let me know afterwards with a copy of whatever find point to whatever, and I will take a second look at that." *Id.* 4:781:8-11. After a brief recess, Plaintiff's counsel confirmed that Plaintiff would file its objections. *Id.* 4:781:21-782:8.

# ARGUMENT

1. <u>Joyce Delagrande</u>

On Thursday morning at approximately 8:52 a.m., in front of the jury, Tesla's lead trial counsel asked plaintiff Owen Diaz the following stunningly improper question: **"You went up to Joyce DelaGrande, a supervisor in that group, and you said to her, 'You date Black guys,' in a sexually suggestive way, did you not sir?"** Trial Tr. 4:726:21-727:9. Mr. Diaz testified that the accusation was false, but the damage was done by the mere content of the question—suggesting that the factual predicate was true *and* that Mr. Diaz was untruthful in denying it.

At the time Tesla's counsel asked this racially and sexually charged question, there was of course no evidence in the record to support it, nor is there now. Tesla indicated that it intends to elicit testimony from Ms. DelaGrande tomorrow to establish an after-the-fact justification for that question. Trial Tr. 4:727:7-9. But there are at least four reasons why the Court should preclude such testimony.

*First*, this testimony unquestionably exceeds the scope of testimony in the first trial, and significantly so. Ms. DelaGrande has never been deposed in this case. In her prior trial testimony, Ms. DelaGrande testified extensively about her personal and work complaints with Mr. Diaz, but she *never* testified that Mr. Diaz had made this extremely inappropriate comment, that he had made any sexually suggestive comment to her or anyone else, or that he ever sexually or racially harassed her in any way. Nor is there *any* evidence anywhere in the record to support this highly prejudicial victim-blaming – which Tesla has been apparently been planning to spring on Mr. Diaz for weeks.

This Court has made clear, repeatedly and emphatically, that the parties are precluded from "eliciting testimony that goes beyond the scope of testimony from the first trial" and that in this second damages trial, the parties are "limited to the same incidents discussed at the first trial." Dkt. 417 at 4-5. That has been the cardinal principle governing the scope of retrial, and it reflects the Court's efforts to protect the due process and fair trial rights of *both* parties, while ensuring that the trial proceeds smoothly and efficiently with an appropriate focus on the matters truly at issue. Plaintiff's counsel have taken pains to fully comply with the Court's directives and

have been diligent in limiting the scope of their questioning—and in their witness preparation—to ensure their own strict compliance with the tight boundaries set by the Court. Tesla, by contrast, has repeatedly overstepped those boundaries.

Tesla's counsel's question to Mr. Diaz about whether he made sexually offensive and racially harassing comments to Ms. DelaGrande is just one of many examples of a question in which Tesla flaunted the Court's scope-of-retrial directives ruling in the apparent belief that the impact of that question on the jury would be sufficiently consequential to justify any risk of judicial censure. This Court previously sustained plaintiff counsel's objection when Tesla, in an apparent effort to set up this very line of questioning, improperly tried to slip in similar but far milder evidence—by presenting Exhibit 229, in which Mr. Diaz is accused of "gossiping," for the stated limited purpose (which now seems to have been pretextual) of demonstrating that "Diaz had 'no issue' submitting reports." Dkt. 417 at 3. *This Court properly excluded that evidence*, reasoning that "my prior order precludes admission of new evidence at this trial, and these exhibits are plainly new evidence," and that "it is not clear how these exhibits go to the extent of harm suffered, and so are unrelated to a damages-only retrial." *Id.* The exact same reasoning applies here.

*Second*, the question posed to Mr. Diaz and the testimony that Tesla apparently intends to elicit from Ms. DelaGrande on Friday has absolutely no relevance to Mr. Diaz's compensatory and punitive damages. Plaintiff previously moved *in limine* to exclude any evidence pertaining to Mr. Diaz's job performance. The Court denied that motion on the basis that "[t]he parties are permitted to introduce competing evidence of Diaz's job performance, ***to the extent that it was admitted at the first trial.***" Dkt. 417 at 5 (emphasis added). The Court further explained that evidence of Mr. Diaz's job performance was relevant only for a limited purpose: "[E]vidence of whether Diaz was a great or terrible employee is not relevant except to the extent that it is offered to explain defendants' decisions or the context of other conduct." *Id.*

This accusation regarding Mr. Diaz's purported racial and sexual harassment of Ms. DelaGrande has no relevance to "explain defendants' decisions or the context of other conduct." Tesla has never produced *any evidence* suggesting that any alleged harassment of Ms. DelaGrande by Mr. Diaz had anything to do with Tesla's conduct towards Mr. Diaz or the

damages suffered by Mr. Diaz. Nor has plaintiff focused his case against Tesla on Ms. Delagrande or her conduct. Furthermore, contrary to Tesla's counsel's deceptive implication in his examination of Mr. Diaz, *see* Trial Tr. 4:726:23–727:1, there is no certainly no basis for any causal connection between Mr. Diaz's supposed harassment of Ms. Delagrande and Mr. Martinez's attack on Mr. Diaz in the elevator.

*Third*, this testimony is extraordinarily prejudicial and should be excluded under Rule 403. While Ms. DelaGrande's contemplated testimony has no bearing on the amount of emotional distress damages that Mr. Diaz suffered or the reprehensibility of Tesla's conduct, testimony that Mr. Diaz was himself guilty of sexually and racially harassing a co-worker would massively prejudice the jury against awarding him compensatory or punitive damages—even though this testimony indicates nothing about his own emotional distress or about the extent to which Tesla should be punished for its conduct towards Mr. Diaz for which a jury has already found it liable.

The prejudice is especially grave because plaintiff has not had any fair opportunity to defend himself. In eight years of litigation, Tesla never before contended or produced a shred of evidence to suggest that Mr. Diaz acted this way or that this conduct was the basis for any of Tesla's own conduct. Plaintiff has therefore had no opportunity to conduct discovery on this topic or to prepare rebuttal witnesses for this retrial. Permitting this testimony would reward Tesla's flagrant (and repeated) gamesmanship and deny Mr. Diaz of his right to a fair trial.

2. Hilda Navarro

Less than one minute after Mr. Spiro asked his improper question regarding Ms. DelaGrande, he doubled down on his outrageous-factual-accusation-embedded-in-a-question approach by asking Mr. Diaz an even more explosive question: "**Hilda Navarro, who I think the jury heard her name when Mr. Martinez was testifying. Just before this incident, you were yelling at her. You were telling her who she was sleeping with at the factory, and you were commenting that she couldn't understand you because she was a dumb Mexican, don't you do that, sir?**" Trial Tr. 4:727:9-15. Mr. Diaz again testified that the accusation was false, *id*. 4:727:19-20, but again the jurors cannot un-hear that question, and if they believe there might be some basis for it, they could only conclude that Mr. Diaz was racist, misogynist, *and* a

1  liar—which was obviously the intended effect.

2        Mr. Spiro's question was shockingly improper. Any further evidence on this topic must
3  be excluded, and the jury must be given a clear, and strongly worded, curative instruction. That
4  should be required for the same reasons stated above—because the question goes far beyond the
5  scope of the first trial's evidence, because it was irrelevant to compensatory and punitive
6  damages, and because it violates Rule 403.

7        As above, plaintiff anticipates that this testimony was proffered to "justify" Mr.
8  Martinez's October 17 assault. But Mr. Martinez never mentioned Ms. Navarro. He vaguely
9  testified about a female "co-worker" who purportedly complained to him about Mr. Diaz. Tesla
10 had ample opportunity to elicit more detail from Mr. Martinez, including *who* that co-worker
11 was, *what* Mr. Diaz said, *when* he said it and so on, but Tesla chose not to ask Mr. Martinez any
12 questions at all. Trial Tr. 3:585:3-6.  As a result, the only evidence in the record about this
13 mysterious co-worker was Mr. Martinez's testimony that:

> [She] called me that very same day. She was really crying on the phone, and she was telling me that Mr. Owen comes really aggressive towards her *because she was trying to use the elevator* because Mr. Owen wasn't in his position to start doing or transporting the material for second floor to bottom floor?
>
> And when she tried to use the elevator because Mr. Owen wasn't there, the moment that she was trying to operate it, he arrived and *he was really aggressive towards to her saying that she should not touch his elevator and she will remove her person out of the control panel.*

20 Trial Tr. 3:579:21–580:6 (emphasis added).

21       That was it. There was nothing in Mr. Martinez's testimony—in this trial, in the prior
22 trial, or elsewhere in the record—that even hinted at any factual support for Mr. Spiro's
23 accusation that "[y]ou were telling her who she was sleeping with at the factory, and you were
24 commenting that she couldn't understand you because she was a dumb Mexican, don't you do
25 that, sir?" It goes without saying that being yelled at not to touch an elevator (which may, in fact,
26 have been a proper safety communication) is not remotely equivalent to publicly "telling her who
27 she was sleeping with" or calling her a "dumb Mexican."

28       Once again, Tesla *purposefully chose not to cross-examine Mr. Martinez*. If this is what
Ms. Navarro told Mr. Martinez, Tesla obviously could have tried to elicit that testimony from

Mr. Martinez himself *had it not been clearly beyond the scope of this retrial*. Tesla's failure to do so plainly suggests first, that Mr. Martinez would not have testified to that effect—as he certainly did not in the first trial—and second, that Tesla's counsel *knew* that the Court would prohibit that question and instruct the jury to disregard it, thus making it impossible for Tesla to sandbag Mr. Diaz with that same question.

Hilda Navarro was never called as a witness in this case. Plaintiff has not deposed her and never had any reason to do so. Yet the jury is now left with the mistaken belief that (1) Mr. Diaz might have said those things, in a loud, public manner; (2) that Mr. Martinez would have confirmed that fact had he been asked; and (3) that Mr. Diaz testified falsely by denying Mr. Spiro's baseless accusation. All three are highly prejudicial and inflammatory.

Mr. Spiro's slanderous accusation is without factual support in the record of this eight-year-old case. Because Ms. Navarro has never testified in this case and has not been identified as a retrial witness, there is also presumably no non-hearsay way Tesla could introduce such evidence tomorrow (and, in any event, Tesla has never produced any such evidence to plaintiff).

So what are we left with? The jury has heard two devastatingly prejudicial accusations, presented in the form of a question, delivered in Mr. Spiro's characteristic tone of certainty and self-righteousness, suggesting that if only the Court did not keep sustaining plaintiff's objections, the evidence would prove that Mr. Diaz is a sexist, a racist, and a liar, who is undeserving of any significant award of damages because he was equally to blame for having significantly contributed to the racially—and sexually—demeaning atmosphere in the Tesla factory. The obvious prejudice is exacerbated by the fact that this is a case about damages for racial harassment committed by Tesla. While plaintiff can point out in his closing argument that Tesla produced no evidence to support this accusation, it is patently unfair to force plaintiff to rebut that wild and salacious accusation in argument as if there are two sides to the story—when in fact there are not. Nor, respectfully, will the neutral instruction the Court has given so far—that the jury should not give evidentiary weight to the statements by either side's lawyers—prevent plaintiff from needing to address the issue in closing, and thereby risk reinforcing the accusation in the jurors' minds.

For these reasons, plaintiff respectfully requests that, in light of the severe misconduct

represented by Mr. Spiro's questioning, the Court admonish Mr. Spiro and, at a minimum, give the following curative instruction:

> As I have instructed you multiple times, statements by the lawyers are not evidence. Nor are the factual assertions made by the lawyers in the course of asking their questions, unless the witness agrees with these assertions. In particular, I want to emphasize that I have admonished Tesla's lawyer, Mr. Spiro, including for having included unsupported factual assertions in several questions to which I sustained objections and sometimes struck from the record because those questions violate the Court's well-settled rules. On several occasions, I also sustained objections because the questions assumed that certain facts were true, when in fact there is no evidence before you, the jury, that would support those facts. So I remind you that statements and questions by lawyers are not evidence, that you should not assume that what the lawyers on either side say is true, and that the evidence on which you must base your verdict are the statements by witnesses that I have not stricken, as well as the exhibits.

CALIFORNIA CIVIL RIGHTS LAW GROUP
ALEXANDER MORRISON + FEHR LLP
ALTSHULER BERZON LLP
COLLIER LAW FIRM, LLP

DATED:  March 31, 2023

Cimone Nunley
Attorney for Plaintiff OWEN DIAZ