LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD (SBN 214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:     (415)-453-7352
Facsimile:     (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
balexander@amfllp.com
**ALEXANDER MORRISON & FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:     (310) 394-0888
Facsimile:     (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:     (415) 421-7151
Facsimile:      (415) 362-8064

DUSTIN L. COLLIER (SBN 264766)
dcollier@collierlawsf.com
V. JOSHUA SOCKS (SBN 303443)
jsocks@collierlawsf.com
ELIZABETH R. MALAY (SBN 336745)
emalay@collierlawsf.com
DREW F. TETI (SBN 267641)
drew@collierlawsf.com
**COLLIER LAW FIRM, LLP**
240 Tamal Vista Blvd. Suite 100
Corte Madera, CA 94925
Telephone:   (415) 767-0047
Facsimile:     (415) 767-0037

Attorneys for Plaintiff,
OWEN DIAZ

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN DIAZ,<br><br>Plaintiff,<br><br>     v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.;<br><br>    Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S MOTION FOR MISTRIAL**<br><br>Trial Date: March 27, 2023<br>Complaint filed: October 16, 2017 |

### I. Introduction

Over the course of this damages-only retrial, Tesla repeatedly referenced and sought to introduce improper and highly prejudicial evidence in a blatant attempt to mislead and prejudice the jury regarding plaintiff Owen Diaz's character, his mental state, and the status of this litigation. Tesla's counsel repeatedly circumvented the Court's prior orders barring the introduction of new evidence that was not presented in the first trial, violated the Court's *in limine* rulings, disregarded the parties' carefully negotiated stipulations, and deliberately mischaracterized evidence that it sought to obtain discovery. Without any legitimate justification and for the transparent purpose of prejudicing the jury, Tesla has asked improper questions that, without any factual basis, accuse Mr. Diaz of being a serial racial and sexual harasser, grossly mischaracterized an email relating to the disturbing incident in which a feces was placed on the driver's seat of Black employee Michael Wheeler cart, made entirely gratuitous and highly prejudicial references to Mr. Diaz's previous settlement with two staffing companies in this litigation, sought to elicit barred testimony about Diaz's son's criminal convictions, and mischaracterized a text message that Mr. Diaz sent to Mr. Wheeler—even though it knew full well what the facts established at Mr. Wheeler's deposition actually demonstrated. There can be no question, based on Tesla's overall course of conduct and the comments of Tesla's counsel that this conduct was deliberate and designed to push beyond the clearly limited scope of the Court's prior rulings and admonitions to malign plaintiff in a highly prejudicial manner.

The cumulative effect on the jury of Tesla's inflammatory and improper questioning cannot be overstated. Though Mr. Diaz's counsel timely objected to most of these efforts, those the objections were not always sustained or were not sustained until after Tesla's callous disregard for the Court' rules had its desired effect on the jury. The proverbial bell cannot be unrung—regardless of the objections and motions to strike, the jury cannot erase the repeated prejudicial statements made by counsel—especially given that on at least one occasion involving the false accusation that Mr. Diaz uttered racial and sexual slurs, Mr. Diaz's counsel noted on the record that members of the jury were taking notes on Tesla's counsel's question. The juror's perception of Mr. Diza—who has been conclusively established to be the *victim* of severe and pervasive racial harassment in the Tesla factory—has been poisoned as a result of Tesla's sharp

PLAINTIFF'S MOTION FOR MISTRIAL

practices, and it is impossible to avoid the likelihood that many jurors' perception of his character, his integrity, and his motivations have been materially affected by Tesla's repeated violations of this Court's carefully crafted rules regarding the permissible scope of retrial. There is no feasible way to cure this prejudice to Mr. Diaz besides declaring a mistrial. At the very minimum, and in the alternative if the Court wishes to defer ruling on this motion until after the completion of evidence, Mr. Diaz requests that the Court issue a series of strongly worded curative instructions, instructing the jury on specific statements to disregard and admonishing counsel for its stunningly inappropriate conduct.

## II. Legal Argument

### A. Legal Standard

Federal courts have inherent power to sanction conduct that abuses the judicial process. This power is "governed not by rule or statue but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.* (1962) 370 U.S. 626, 630-631; *Chambers v. NASCO, In*c. (1991) 501 U.S. 32, 43.  Pursuant to this power, a court may grant a mistrial motion if the circumstances so warrant.  *Lasar v. Ford Motor Co.* (9th Cir. 2005) 399 F.3d 1101, 1105-07, 1114-15 & n. 13.

A motion for mistrial must comply with two basis requirements. First, the motion must "state with particularity the grounds for seeking the order." FRCP 7(b)(1)(B).; *Ruiz v. Wing* (11th Cir. 2001) 991 F.3d 1130, 1143.  Second, there must be timely and proper objections.  F.R.E. 103(a); *Clemente v. Carnicon-Puerto Rico Mgmt. Assocs., L.C.* (1st Cir. 1995) 52 F.3d 383, 387 (abrogated on other grounds by *United States v. Gray* (1st Cir. 1999) 199 F.3d 547, 548-50).

Attorney misconduct is a frequent ground for mistrial. To warrant a mistrial, the attorney's misconduct must sufficiently permeate the entire proceedings as "to provide conviction that the jury was influenced by passion and prejudice in reaching the verdict." *Anheuser-Busch, Inc. v. Natural Beverage Distributors* (9th Cir. 1995) 69 F.3d 337, 348 (internal quotations omitted).

It is misconduct for counsel to refer to inadmissible evidence during examination of a witness.  *Raybestos Products Co. v. Younger* (7th Cir. 1995) 54 F.3d 1234, 1239; *Sanders-El Wencewicz* (8th Cir. 1993) 987 F.2d 483. Referring or eliciting reference to inadmissible

evidence during examination of a witness is even more egregious where, as here, that purported evidence has been specifically excluded by a motion in limine or other court order. *Lasar v. Ford Motor Co.,* 399 F.3d 1101, 1115. In determining the degree of prejudice, the probative force of the inadmissible evidence must be compared with that of the admissible evidence that would otherwise support the verdict. *B.K.B. v. Maui Police Dept.* (9th Cir. 2002) 276 F.3d 1091, 1105 *citing United States v. Johnson* (9th Cir. 1980) 618 F.2d 60, 62 (quotation omitted). An erroneous evidentiary ruling may require reversal of a jury verdict where "a party's substantial rights were affected." *Beachy v. Boise Cascade Corp.,* (9th Cir. 1999) 191 F.3d 1010, 1015 (*quoting Gilchrist v. Jim Slemons Imports, Inc.* (9th Cir. 1995) 803 F.2d 1488, 1500.

In *Lasar v. Ford Motor Co*., a products liability case brought by the victim of a motorist in a rollover accident, the Court granted the plaintiff's motion for a mistrial after defense counsel violated a motion in limine prohibiting the introduction of evidence that the plaintiff consumed alcohol. 399 F.3d 1101, 1114 (9th Cir. 2005). During opening statement, defense counsel raised strong inferences that plaintiff had consumed alcohol, saying plaintiff "visit[ed] some local establishments. Somewhere around 10 that night, he made the decision to drive himself home." *Id*. at 1105. Defense counsel added that plaintiff was "what we call a free-floating body." *Id.* Plaintiff then moved for mistrial.  Granting the motion, the court said such references were "absolutely unacceptable violations of the orders in limine...."  and determined that a curative instruction would not "overcome the prejudice" to plaintiff. *Id.* at 1106  The court noted the "deliberateness with which [defense counsel] crafted" his statements in violation of the court's order, which supported the district court's finding that it was a "deliberate bad faith violation." *Id.* at 1115.

### B. Tesla Deliberately Misrepresented the Contents of a Document that Had Not, and Could Not, Be Introduced into Evidence in an Effort to Discredit Key Witness Michael Wheeler

A significant instance of prejudicial attorney misconduct occurred when Tesla attempted to discredit witness Michael Wheeler's testimony concerning the incident where he sat in feces that someone left on the seat of his cart:

> Q. And you've told this jury about how your phone was
> confiscated with the -- with the picture on it; right?
> A. Yes.

Q. How nobody conducted any interviews; right?
A. Correct.

Q. How nobody did any training; right?
A. Correct.

Q. And how nobody seemed upset at all; right?
A. Right.

Q. **And the reason for that, as you know, sir, is because this was somebody that got sick and had an accident and they told you that in an e-mail, sir, and this wasn't racial at all; isn't that true, sir?**

MR. COLLIER: Objection. Outside the scope of the prior proceeding.

THE WITNESS: Not true.

MR. COLLIER: And also argumentative and speculative.

THE COURT: Overruled.
You can answer to the extent that you know.

BY MR. SPIRO:
Q. **Isn't it true, sir, that they e-mailed you and told you that somebody got sick and they needed to race that person to get them some help because they were -- had the stomach flu and they used your car, and that's why there was some substance on the car; isn't that true, sir?**

THE WITNESS: That would be false.

MR. COLLIER: Same objections, and also hearsay.

THE COURT: Overruled.
You can answer.

THE WITNESS: The reason why that would be false is because it was on the driver's seat and if the individual was sick, why would the poop be on my side of the seat?

BY MR. SPIRO:
Q. I'm asking a slightly different question. Then we can get into that.
**Isn't it true that they told you that in an e-mail?**

PLAINTIFF'S MOTION FOR MISTRIAL

A. No. (3/28/23 Trial Tr. at 367:2-168:13 (emphasis added).)

Tesla's counsel then sought to have Exhibit 401 entered into evidence – the email that purportedly supported Tesla's counsel's characterization of this highly disturbing incident of racial harassment. The Court sustained Mr. Diaz's counsel's objections *to entering the email into evidence on the grounds* on the ground that Tesla had not introduced in the first trial. *Id.* at 368:14-21. Yet despite this ruling, Tesla's counsel persevered in his unfounded questioning about this email:

> BY MR. SPIRO:
> Q. Yeah, I wasn't -- I apologize, sir. I wasn't meaning when you got the e-mail. I'm talking about when the e-mail was sent. I'm asking you -- so maybe I should clarify my question. If you had sleep during the day, it's totally understandable. I'm asking when you woke up and you checked your e-mails **isn't it true that you had an e-mail from Victor Quintero telling you that they looked into it and somebody had gotten sick and –**

> MR. COLLIER: Objection. Hearsay.

> MR. SPIRO: No, it's not. It's a question.

> BY MR. SPIRO:
> Q. **And that the person was sick, and that that's the reason that there had been some feces on the cart?**

> MR. COLLIER: Your Honor, you can't just read an exhibit in.

> THE COURT: This question has been asked and answered. The e-mail not produced in discovery is not coming in -- not introduced in a prior proceeding is not coming in. I have allowed you to explore that issue. It's now been explored. You may move on. (*Id.* at 370:4-24 (emphasis added).)

It is improper for a cross-examiner to ask a question that assumes as true a fact as to which no evidence has been introduced or is likely to be introduced. *See United States v. Sanchez* (9th Cir. 1999) 176 F.3d 1214, 1223; *Trademark Research Corp. v. Maxwell Online, Inc.* (2nd Cir. 1993) 995 F.2d 326, 339. "Purely conjectural or speculative cross-examination is neither reasonable nor appropriate." *Searcy v. Jaimet* (7th Cir. 2003) 332 F.3d 1081, 1088.

Tesla's characterization of this email in front of the jury was knowingly false. Nowhere

does the email state that the feces being left on the cart "wasn't racial at all." Nowhere does it state that "somebody got sick and they needed to race that person to get them some help because they were -- had the stomach flu and they used your car, and that's why there was some substance on the car." Nowhere does it state that "they looked into it and somebody had gotten sick…and that's the reason that there had been some feces on the cart."

Rather, the email states: "there was a Flagship person who had the stomach flu last night and had to go home. He **may have been** given a ride on the cart. We are investigating to confirm. **If confirmed** this **may not have been** intentional but should have been reported by the person." See Dkt. 440-1 (emphasis added).)

Thus, nothing in the email stated that the "Flagship person who had the stomach flu" had in fact ridden on Mr. Wheeler's cart. Tesla's counsel's statement that the "Flagship person" "needed to be raced to get some help" was pure conjecture. Tesla's counsel apparently also speculated that the person with the stomach flu had soiled himself, but there was no confirmation in the email that this had occurred. There certainly was no indication in the email that anyone had already "looked into it" and concluded this to be the reason for the feces in the cart.

Mr. Wheeler's testimony that he sat in feces *on the driver's side* of the cart makes it even less believable that a sick person being "raced" somewhere for help could have been the source of the feces. Moreover, Mr. Wheeler's initial email complaining about the incident notes that the feces showed up on the cart "while it was charging." Dkt. 440-1. It is hard to believe that whomever "raced" the sick person "to get some help" would have then sat in the feces (which they would have had to do to drive the cart, since it was on the driver's side), returned it to the location where Mr. Wheeler had left it to charge, plugged it back in, yet failed to clean up the feces or alert anyone to its presence. There certainly was no indication in the email that anyone concluded that any of these things had happened. This was simply an intentional mischaracterization by Tesla to diminish the impact of this incident in the eyes of the jury – and to counter Mr. Wheeler's and Mr. Diaz's testimony that whomever placed feces on the driver's seat of Mr. Wheeler's cart was engaged in an act of racial harassment – or as Mr. Wheeler characterized it in his contemporaneous emailed complaint, as a "hate crime." Dkt. 440-1.

As the Court had to point out when denying Defendant Tesla's Motion to publish Exhibit

410 to the jury Dkt. 440, "Mr. Spiro, I think, exaggerated in his questioning what the document contained, which is not nearly as conclusive as he suggested in the question." 3/30/23 Trial Tr. at 701:10-21.

The prejudice to Mr. Diaz of this improper questioning is clear. Tesla's counsel used these repeated questions to cast doubt on the credibility of a key witness to the race harassment that Mr. Diaz suffered at Tesla's Fremont factory. As this Court observed in ruling on the parties' motions in limine before the first trial, the evidence of the feces incident is highly relevant to "show Tesla's notice" of complaints of harassment to Mr. Diaz's shared managers in their shared work area, while evidence of harassment against Mr. Wheeler that Mr. Diaz knew about would support Mr. Diaz's "failure to prevent" claim. Dkt. 207 7:8-13. In rejecting Tesla's bid to prevent the jury from hearing *any* evidence about this incident in the second trial, the Court further explained that the incident was relevant to Mr. Diaz's harm, and likewise relevant to the reprehensibility of Tesla's conduct towards its Black employees. Dkt. 417 9:7-13.

Knowing the importance of this witness' testimony, Tesla's counsel sought to undermine this key evidence by deliberately painting it in a false light and making it appear to the jury that the presence of feces on Mr. Wheeler's cart was simply an accident, and not a horrific act of race harassment which Tesla allowed to go unaddressed and unpunished. He sought to have the jury believe that the reason nobody at Tesla conducted any interviews, conducted any training, or seemed at all upset by the feces incident, was because it was all just an accident. He sought to have the jury question whether Mr. Wheeler was telling the truth when he denied having been told that the placement of feces on his cart was the result of an accident. More egregiously, he sought to have the jury question whether Mr. Wheeler was telling the truth when he said he believed the feces incident was racially motivated.

**C. Tesla's Made a Highly Prejudicial Reference to Mr. Diaz's Settlement with Two Staffing Companies.**

On March 30, 2023 during Tesla's cross-examination of Mr. Diaz, Tesla engaged in the following prejudicial questioning:

> **BY MR. SPIRO:**
> Q. And you -- you originally were looking at the
> interrogatories. You know, you say you want accountability.

> You settled your claims with nextSource and Citistaff; correct?
> MR. ORGAN: Objection, Your Honor.
> THE COURT: Sustained. Struck. Mr. Spiro --
> MR. ORGAN: I move for sanctions, Your Honor.
> THE COURT: Mr. Spiro, don't do that. (3/30/23 Trial Tr. at 814:19-25.)

Immediately after referencing Mr. Diaz's irrelevant and highly prejudicial settlement with two staffing companies, Tesla segued into an aggressive line of questioning about what Mr. Diaz thought he "fairly deserve[d]" and whether he was seeking to "get more or less than somebody else."

> [BY MR. SPIRO]
> Q. Okay. Well, how much money do you – do you want to do that?
> MR. ORGAN: Objection, Your Honor.
> THE COURT: Sustained.
> **BY MR. SPIRO**
> Q. Well, how about this: All you are asking for here is to get whatever amount you fairly deserve; is that fair? You don't want to get more or less than somebody else. You want what's fair? (3/30/23 Trial Tr. at 815:11-19.)

Tesla's improper reference to Mr. Diaz's prior settlement, so close in time to Tesla's line of questioning about the "fair" value of Mr. Diaz's claims against Tesla is clearly intended to suggest to the jury that Mr. Diaz *already got* "whatever amount [he] fairly deserve[s]" from other defendants and that his current lawsuit against Tesla is an effort to double-dip and get "more … than somebody else." 3/30/23 Trial Tr. at 815:17. Much like Tesla's other efforts to introduce otherwise inadmissible evidence, this shameless and impermissible reference to Mr. Diaz's prior settlement was designed to prejudice the jury against Mr. Diaz by portraying him as an avaricious serial litigator who is seeking more than he deserves.

### D. Tesla Intentionally Attempted to Elicit Testimony Regarding Mr. Diaz's Prior Criminal Convictions, Ignoring the Court's Order Excluding Said Convictions and Forcing Mr. Diaz to Respond Evasively to the Prohibited Line of Questioning

In yet another attempt to introduce clearly excluded, highly prejudicial evidence, Tesla twice attempted to elicit testimony from Mr. Diaz regarding his prior criminal convictions in violation of the Court's April 2, 2020 order precluding Tesla from introducing such evidence at trial. Dkt. 180. Specifically, Tesla elicited testimony regarding the "redacted" portion of Mr. Diaz's job application, which references his past criminal conviction, inquiring whether Mr. Diaz

remembers any inaccuracies made on the form. 3/29/23 Trial Tr. at 643:19-24. Mr. Diaz's

counsel objected to the questioning, citing Tesla's reference to the redacted portion. *Id.* at

644:23-645:9. This Court instructed Tesla to move to a different line of questioning, adding that

the parties could discuss it further on their afternoon conference. *Id.*  Before doing so, though,

Tesla twice asked Mr. Diaz additional questions about the redacted portion of the exhibit

containing reference to his excluded criminal history, repeatedly asking Mr. Diaz if he recalled

testifying that the information was "inaccurate" because he was "rushing." *Id.* at 643:18-25;

644:17-23.

Mr. Diaz knew he could not explain the contents of redacted information and the impact

of his haste, so he responded by referencing the *unredacted* responses on the application, not the

redacted portion to which Tesla's counsel was clearly referring. This response naturally appeared

evasive or misleading, which accomplished Tesla's intended objective. Once again, these sharp

practices by Tesla's counsel appeared designed to trap Mr. Diaz by either (1) inducing Mr. Diaz

to disclose his criminal history to the jury in violation of the Court's order; or (2) forcing him to

testify in an artificial, evasive manner designed to arouse the jury's suspicion.

Tesla's offer of proof regarding this testimony the following morning underscored

counsel's wrongful intent. 3/30/23 Trial Tr. 704:2-22, Exh. A to Nunley Dec. Just like the

defense counsel who acted improperly in *Lasar,* Tesla's counsel deliberately crafted his questions

with the intent to violate the Court's previous order. Without specifically referencing the banned

references, it used Mr. Diaz's inability to respond to make him appear dishonest and evasive.

*Lasar v. Ford Motor Co*., 399 F.3d 1101, 1105 (9th Cir. 2005). Coupled with counsel's other

statements in direct violation of the Court's prior orders and rulings, there is little question that

Tesla's extremely well-prepared counsel planned these questions long in advance in a bad-faith

attempt to skirt the stipulations to which Tesla itself agreed, both in advance of the first trial and

again of this retrial. Exh. B to Nunley Dec., Dkt. 178.

**E.  Tesla Violated the Court's Order Barring the Introduction of Evidence Not Previously Introduced and Displayed an Exhibit Not Admitted to the Jury So It Could Baselessly Accuse Mr. Diaz of Forging a Doctor's Note.**

Tesla's counsel engaged in further misconduct when questioning Mr. Diaz about a

doctor's note he submitted to Tesla in March of 2016 placing him off work. While cross-

examining Mr. Diaz, Tesla's counsel published Exhibit 313 to the jury. 3/30/23 Trial Tr. 796:8-11. Even though this exhibit had not been received in evidence during the first trial, Tesla cause it to remain on the screen, displayed for the jury to read throughout the lengthy exchange between Mr. Diaz and Tesla's counsel. *Id.* 795:11-798:23. Tesla's counsel ended its questioning with a wildly inflammatory and inappropriate question: "And the truth is, this doctor's note that you passed to Tesla is not signed by the doctor because you wrote it and it's in your handwriting; isn't that true, sir?" *Id.* 798:24-799:2.

Mr. Diaz protested that the note was not written in his hand, but Tesla's counsel rushed on, noting that the Court had already received Mr. Diaz's handwritten employment application in evidence and displaying both documents for the jury's comparison and perusal. *Id.* at 799:2-9. As Mr. Diaz's counsel objected and the Court pointed out that Mr. Diaz was not a handwriting expert and was thus not qualified to make the comparison, counsel insisted the note was "an exhibit in evidence.... It's an exhibit"—again, a blatantly false assertion. *Id.* at 799:10-21.

The Court eventually stated "We are not doing this," and granted Mr. Diaz's counsel's motion to strike the testimony. *Id*. at 799:25-800:4. But Tesla's counsel continued to insist that he was entitled to ask Mr. Diaz "if he passed a doctor's note that was unsigned that he wrote"—doubling down on his completely false assertions. *Id*. at 800:5-7.

The damage was unquestionably done by this point. The documents were displayed on the screen with ample time for jurors to review and consider the cherry-picked alleged "similarities" between Mr. Diaz's handwriting and that on the note, and counsel's *three* assertions that Mr. Diaz wrote the note. The intent of this exchange was clear: it was meant to fix in the jury's mind the idea that Mr. Diaz is a fraudster who will go to any lengths, including forging a doctor's note over a year-and-a-half before initiating litigation, to achieve his desired ends.

Tesla's counsel has continually pointed out that many of Mr. Diaz's claims of racial harassment were not reduced to writing, even though Tesla employees are instructed that verbal complaints are treated no differently than written complaints. It has pounced on the fact that Mr. Diaz has characterized racially harassing incidents in arguably non-racial or at least non-inflammatory ways in his written complaints. These are fair questions, and Mr. Diaz has

appropriately responded. But Tesla has also gone well beyond the bounds of permissible questioning by aggressively attacking Mr. Diaz's credibility on the basis of asserting facts in the form of questions that it knows are either false or outside the scope of this trial. Instead of complying with the clearly delineated rules established the Court to protect *both* parties' due process and fair trial rights, Tesla has brazenly violated this Court's previous orders limiting evidence to that introduced in the first trial. Dkt. 376. Tesla did not just seek to introduce this exhibit to the jury: it *published the exhibit to the jury*, and then represented to the Court about whether the exhibit had been admitted, *after the Court had admonished Tesla for introducing exhibits not received in evidence in the first trial*. 3/28/23 Trial Tr. at 370:20-24. 474:11-475:24. This defiance of the Court's order (Dkt. 376) again allowed Tesla to poison the jury against Mr. Diaz and undermine his credibility before the jury—a key factor, if not *the* key factor, in deciding the compensatory damages issue in this case where a jury must weigh Mr. Diaz's claimed verbal complaints against the denials of Tesla's witnesses.

### F. Tesla Again Violates the Court's Order and Introduces Evidence of New Incidences.

As Tesla's cross-examination of Mr. Diaz continued, Tesla once again violated the Court's Order barring the introduction of new evidence. In its in limine rulings, the Court specifically held that evidence of Mr. Diaz's job performance and workplace interactions was relevant "to explain [Tesla's] decisions or the context of other conduct," but only "*to the extent that it was admitted at the first trial*." Dkt. 417 5:18-23 (emphasis added).

Tesla flatly ignored this restriction when it asked a series of wildly inflammatory questions to Mr. Diaz regarding his coworkers, Hilda Navarro and Joyce DeLaGrande. Tesla's counsel asked Mr. Diaz: "You went up to Joyce DeLaGrande, a supervisor in that group, and you said to her, 'You date Black guys,' in a sexually suggestive way, did you not sir?" 3/30/23 Trial Tr. 726:21-727:9. Mr. Diaz testified that the accusation was false, but the damage was done by the mere content of the question—suggesting that the factual predicate was true and that Mr. Diaz was untruthful in denying it. Counsel followed up with an even more inflammatory question: "Hilda Navarro, who I think the jury heard her name when Mr. Martinez was testifying. Just before this incident, you were yelling at her. You were telling her who she was sleeping with at the factory, and you were commenting that she couldn't understand you because

she was a dumb Mexican, don't you do that, sir?" *Id.* at 4:727:9-15. Mr. Diaz again testified that the accusation was false. *Id.* at 727:19-20.

As soon as the Court took its recess, counsel promptly objected that those questions went well beyond the limited scope of this trial in a highly prejudicial manner, told the Court that he had observed some jurors writing down Tesla's counsel's questions, requested that Tesla's questions be stricken, and asked for a curative instruction. *Id.* at 778:13-23. The Court suggested that Wayne Jackson's testimony may have indicated that these alleged slurs from Owen Diaz had been the impetus for harasser Ramon Martinez's October 17, 2015 elevator assault. *Id.* 779:6-10. But they were not. Mr. Diaz's counsel clarified that Wayne Jackson gave no such testimony, and that at most, *Ramon Martinez* had given some very vague testimony about a woman who was definitely *not* Joyce DelaGrande. *Id.* 779:6–20. Mr. Diaz's counsel explained there was absolutely no evidence Mr. Diaz had made any such comments to Ms. DelaGrande, and he expressed concern that the improper question was designed to invoke "race-baiting, stereotype stuff that this is just a conflict between Latinos and African Americans which undermines the racial harassment findings that have already been made in this case." *Id.* at 779:11-780:10.

A review of Mr. Martinez's testimony makes clear that Tesla's counsel's line of questioning *flatly contradicted* Mr. Martinez's sworn statements. Under oath, Mr. Martinez did not mention Ms. Navarro or Ms. DeLaGrande by name. Instead, Mr. Martinez vaguely testified about a female "co-worker" who purportedly complained to him about Mr. Diaz. Tesla had ample opportunity to elicit more detail from Mr. Martinez, *who still works at Tesla*, including by asking *who* that co-worker was, *what* Mr. Diaz said, *when* he said it and so on, but whatever Tesla may have learned from Mr. Martinez before the trial, it chose not to ask Mr. Martinez any questions at all, presumably because it knew that the allegations it planned to spring on Mr. Diaz were false. 3//29/23 Trial Tr. at 585:3-6.  As a result, the only evidence in the record about this mysterious co-worker was Mr. Martinez's testimony that:

> [She] called me that very same day. She was really crying on the phone, and she was telling me that Mr. Owen comes really aggressive towards her *because she was trying to use the elevator* because Mr. Owen wasn't in his position to start doing or transporting the material for second floor to bottom floor?
>
> And when she tried to use the elevator because Mr. Owen wasn't there, the moment that she was trying to operate it, he arrived and *he was really aggressive towards*

*to her saying that she should not touch his elevator and she will remove her person out of the control panel. (Id.* at 579:21–580:6 (emphasis added).)

The question about Ms. Navarro was plainly beyond the scope of this limited retrial. Indeed, the Court in its rulings in limine had properly excluded any discussion of any alleged gossip regarding Ms. Navarro because that issue had not been addressed at the first trial. Tesla had moved in limine to allow the introduction of Exhibit 229, in which Mr. Diaz is accused of "gossiping," for the stated purpose (which now seems to have been pretextual) of demonstrating that "Diaz had 'no issue' submitting reports." Dkt. 417 at 3. *This Court properly excluded that evidence*, reasoning that "my prior order precludes admission of new evidence at this trial, and these exhibits are plainly new evidence," and that "it is not clear how these exhibits go to the extent of harm suffered, and so are unrelated to a damages-only retrial." *Id.* Dissatisfied with the Court's ruling, Tesla attempted to circumvent it by introducing this information via its counsel's questioning. Yet again, Tesla willfully questioned Mr. Diaz about matters ruled excluded, in violation of the Court's previous orders, to undermine Mr. Diaz's credibility and paint Mr. Diaz as a cruel aggressor.

Given that jurors took notes during this discussion, they evidently found the testimony probative and important to their subsequent deliberations. 3/30/23 Trial Tr. at 778:13-23. As before, a mere curative instruction is insufficient to reverse the extreme prejudice against Mr. Diaz. The interests of justice require the Court to declare a mistrial.

### G. Tesla Grossly Mischaracterized a Text Message that Mr. Diaz sent to Mr. Wheeler in an Effort to Discredit Both Mr. Diaz and Mr. Wheeler

Tesla's next attempted to smear witnesses and Mr. Diaz by misrepresenting evidence not admitted or published to the jury shortly after Mr. Diaz began testifying. Tesla's counsel asked Mr. Wheeler whether he received a text message from Mr. Diaz regarding a class action suit against Tesla, with "dollar bills" in the background as Mr. Diaz's counsel objected. 3/28/23 Trial Tr. at 373:6-24, 3/29/23 Trial Tr. at 374:3-7. Notably, counsel did not show the text message thread to the jury. *Id.* at 374:11-12. Mr. Wheeler promptly clarified–as Tesla's counsel already knew–that the image of dollar bills was in fact his phone background. *Id.* at 374:14-375:3. In fact, this precise exchange occurred at Mr. Wheeler's deposition nearly four years prior.

Q. The text message that you received from Owen Diaz on November 30, 2018, was there a photo that was --

A. Yeah. That was, I want to say, either an email or business card.

Q. Oh, sorry. I couldn't see it.

A. I will pull it up.

(Viewing cell phone.)

(Phone handed to Mr. Adams.)

Q. So it looks like it's a business card with -- then there's a photo on the back with a bunch of 20-dollar bills, hundred-dollar bills?

A. Oh, yeah. That's my background.

Q. Oh, that's your background.

A. Yeah.

Q. So that wasn't sent to you by Owen Diaz?

A. No, no. That's my rent money.

Q. Got you.

A. Took a picture of it before I gave it to my landlord.

Q. Okay, great.

A. Last I'm seeing it.

Exhibit C to Nunley Dec. at 126:2-23.

This matter was discussed and resolved at Mr. Wheeler's deposition, almost verbatim, nearly four years prior. And the document was not shown to the jury, allowing Tesla to mischaracterize it at will. Given that Tesla has extensively sought to discredit Mr. Wheeler, it cannot convincingly argue it was unaware of this testimony or the true nature of the photo. Rather, this was simply another attempt to smear Mr. Diaz and his counsel as money-grubbing fraudsters with their sights set on Tesla. It is an extraordinary example of counsel's intentional bad-faith actions in this litigation.

**H. Tesla Improperly Attempts to Introduce Evidence of the Stipulated Dismissal of Former Plaintiff Demetric Di-az's Claims.**

I.

On April 1, 2020, the parties jointly filed a stipulation to, among other things not relevant to this motion, dismiss former plaintiff Demetric Di-az from this action after settling Mr. Di-az's claims. Dkt. 175. The Court granted the parties' stipulation that same day. Dkt. 176. Despite the dismissal of Mr. Di-az from this litigation, his claims are still relevant to this lawsuit: his father, Mr. Diaz, claims encouraging his son to work at Tesla was the "biggest mistake of his life" and cites witnessing his son being harassed at Tesla as a significant source of emotional distress. 3/30/23 Trial Tr. at 743:3-6, 745:2-20.

Eager to minimize and discredit any testimony regarding this incident, on March 30,

Tesla's counsel improperly inquired, "And your son's case [against Tesla] got dismissed; correct?" *Id.* at 753:3. Counsel for Mr. Diaz promptly objected, though counsel for Tesla went on to inquire about this topic and asked whether Mr. Diaz had filed a lawsuit with his son against Tesla and the case had since settled. *Id.* at 7653:4-18.

The incomplete and wholly inappropriate testimony regarding the dismissal of Mr. Diaz's claims skirted the truth of the matter: that the parties *jointly* agreed to a resolution of Mr. Diaz's claims. Instead, by using the term "dismissed" with no further elaboration, Tesla's counsel was able to imply that Mr. Diaz's claims were lacking in veracity and were dismissed by this Court. The implication is unavoidable: if the Court dismissed Mr. Diaz's claims for lacking merit, Mr. Diaz's account of those claims is likewise untruthful and should be dismissed by this jury. This, too, has caused irreparable damage to Mr. Diaz's damages claims, which hinge on the fracturing of his relationship with his son in the wake of their employment with Tesla.

**J. The Cumulative Effect of Tesla's Brazen Misconduct Has Substantially Affected Mr. Diaz's Right to a Fair Trial.**

The effect of this improper questioning, in knowing and intentional violation of this Court's pretrial evidentiary orders, has caused irreparable damage to Mr. Diaz. Due to the verbal nature of many of his complaints, Mr. Diaz's credibility is a key component of the case. Tesla has sought to undermine that credibility at every turn, openly flouting the Court's rulings and introducing speculative, unsupported questioning and evidence.

Were this simply one incident, a limiting instruction would suffice. But it was not. In this motion alone, Mr. Diaz has identified no fewer than seven improper attacks on Mr. Diaz and his witnesses: Tesla's misrepresentations and violations of the Court's order regarding the "hate crime" against Mr. Wheeler; Tesla's questioning regarding Mr. Diaz's settlement of his claims against the staffing agencies; Tesla's attempt to introduce evidence of Mr. Diaz's prior convictions in a manner where Mr. Diaz could *only* testify in a manner that appeared evasive and dishonest to the jury; harassing questioning regarding a doctor's note that was not admitted in evidence but was published to the jury (and which Tesla falsely claimed was admitted into evidence as it continued to badger Mr. Diaz about the claimed forgery); questioning about incidences that were *plainly* barred by the Court's prior Order and the subject of an exhibit

excluded through an in limine motion (which Tesla attempted to bootstrap into relevance by misleadingly claiming it was the subject of prior testimony); misrepresenting a document whose contents had already been clarified via a disingenuous line of questioning that had occurred at a deposition four years prior; and suggesting that claims that were dismissed via joint stipulation were dismissed for a lack of merit. Despite some curative instruction from the Court, no reasonable juror could set all of these statements from their mind. And given that Mr. Diaz's counsel noted for the record that jurors took notes during at least one improper exchange, there is a high likelihood the jurors will consider these improper lines of questioning during their deliberations. Though Mr. Diaz's counsel timely objected to most of these incidences and the Court sustained many objections and struck the offending testimony, that is not enough. This Court made reasoned pretrial rulings to preserve both parties' right to a fair trial. Mr. Diaz played by the Court's rules and made every effort to steer clear of matters deemed excluded or inadmissible by this Court. Tesla refused to play fair. The cumulative weight of its inflammatory, prejudicial questioning and testimony has irreparably harmed the credibility of Mr. Diaz and his witnesses, and unfairly painted Mr. Diaz as a liar and cheat, represented by unscrupulous counsel with a vendetta against Tesla.

**K. In the Alternative, This Court Must Issue a Specific Limiting Instruction Identifying Each Incident, Instructing the Jury Not to Consider These Incidences for Any Purpose, and Firmly Admonishing Opposing Counsel Before the Jury—in Addition to Precluding Opposing Counsel of Mentioning Any of These Matters, For Any Purpose, in Further Questioning and Closing Argument.**

At the outset, Mr. Diaz must note that a limiting instruction will not mitigate the prejudice for Mr. Diaz. Merely mentioning these incidences will again highlight them for the jury, refreshing the jurors' memories and achieving Tesla's Counsel's desired purpose of discrediting Mr. Diaz and his witnesses.

In light of counsel's severe misconduct, *at a minimum*, Mr. Diaz respectfully the Court admonish Tesla's counsel and give the following curative instruction:

> Throughout this trial, Tesla's counsel has mentioned numerous matters in violation of my prior orders about what evidence the jury may and may not receive. These include:

1    1) Any testimony and questioning attributing the incident where Michael

2    Wheeler found feces on the seat of his cart to an employee with the "stomach flu";

3    2) Any questioning regarding claims Mr. Diaz settled with staffing

4    agencies;

5    3) Questioning and testimony regarding purported inaccuracies in Mr.

6    Diaz's employment application;

7    4) Questioning and testimony regarding a purportedly forged doctor's note

8    produced by Mr. Diaz;

9    5) Questioning and testimony concerning allegations that Mr. Diaz made

10   statements about coworkers' sex lives or calling them "stupid Mexicans";

11   6) Questioning and testimony regarding "dollar bills" in a text sent from

12   Mr. Diaz to Mr. Wheeler;

13   7) Questioning and testimony regarding the dismissal and/or settlement of

14   the claims of Demetric Di-az, Mr. Diaz's son.

15   Questioning and testimony about these matters violated my previous

16   orders about the evidence the jury may or may not consider, and should not have

17   been allowed. Tesla's counsel should not have asked these improper questions.

18   When you are deliberating, you may not consider this testimony for any

19   reason whatsoever. This includes evaluating witnesses' credibility, evaluating

20   witnesses' motivations, deciding whether certain events did or did not occur, or

21   determining the amount of damages you will award Mr. Diaz.

22   **III. Conclusion**

23   Based on the foregoing, Mr. Diaz contends that, no matter what the curative instruction, it

24   will be impossible to dispel the cumulative effects of Telsa's myriad references to and effort to

25   elicit witness testimony regarding impermissible, misleading, and/or and highly prejudicial

26   evidence. Thus, Mr. Diaz's request for mistrial must be granted. In the alternative, Mr. Diaz

27   respectfully requests a curative instruction that directs the jury to disregard all improper evidence

28   and questioning from Tesla's counsel.

1

2

3          CALIFORNIA CIVIL RIGHTS LAW GROUP
           ALEXANDER MORRISON + FEHR LLP
4          ALTSHULER BERZON LLP
           COLLIER LAW FIRM, LLP
5

6  DATED:  March 31, 2023

7          Attorney for Plaintiff OWEN DIAZ

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28