Pages 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

DEMETRIC DI-AZ, OWEN DIAZ, and )
LAMAR PATTERSON,              )
                             )
          Plaintiffs,         )
                             )
  VS.                         )   **NO. C 17-06748 WHO**
                             )
TESLA, INC. dba TESLA MOTORS, )
INC.; CITISTAFF SOLUTIONS,    )
INC.; WEST VALLEY STAFFING    )
GROUP; CHARTWELL STAFFNG      )
SERVICES, INC.; and DOES 1-50,)
inclusive,,                   )
                             )
          Defendants.         )
_____)

San Francisco, California
Friday, March 24, 2023

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiffs:

          CALIFORNIA CIVIL RIGHTS LAW GROUP
          332 San Anselmo Avenue
          San Anselmo, California  94960
     BY:  **LAWRENCE A. ORGAN, ATTORNEY AT LAW**

          ALEXANDER MORRISON + FEHR LLP
          1900 Avenue of the Stars - Suite 900
          Los Angeles, California  90067
     BY:  **J. BERNARD ALEXANDER, ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
          United States District Court - Official Reporter

1   **APPEARANCES:**   (continued)

2   For Plaintiffs:

3                          ALTSHULER BERZON LLP
                           177 Post Street - Suite 300
                           San Francisco, California  94108
4                     BY:  **MICHAEL RUBIN, ATTORNEY AT LAW**

5                          COLLIER LAW FIRM, LLP
                           240 Tamal Vista Boulevard - Suite 100
6                          Corte Madera, California  94925
                      BY:  **DUSTIN COLLIER, ATTORNEY AT LAW**

7

    For Defendants:
8                          QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                           51 Madison Avenue - 22nd Floor
9                          New York, New York  10010
                      BY:  **ALEX SPIRO, ATTORNEY AT LAW**
10

11                         QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                           865 South Figueroa Street - 10th Floor
                           Los Angeles, California  90017
12                    BY:  **DANIEL C. POSNER, ATTORNEY AT LAW**
                           **MARI F. HENDERSON, ATTORNEY AT LAW**
13

14                         QUINN, EMANUEL, URQUHART & SULLIVAN LLP
                           300 West 6th Street - Suite 2010
                           Austin, Texas  78701
15                    BY:  **ASHER GRIFFIN, ATTORNEY AT LAW**

16

17

18

19

20

21

22

23

24

25

<u>**Friday - March 24, 2023**</u>                                            <u>       .m.</u>

<u>**P R O C E E D I N G S**</u>

**---oOo---**

**THE CLERK:**  We are under way in case number 17-6748,

Diaz versus Tesla.

Counsel, if you would please, state your appearance for

the record.

**MR. POSNER:**  Dan Posner for the Defendant Tesla.

**MR. ALEXANDER:**  Bernard Alexander on behalf of the

Plaintiff, Mr. Diaz.

**MR. COLLIER:**  Dustin Collier also on behalf of the

Plaintiff.

**MR. ORGAN:**  Larry Organ on behalf of the Plaintiff

Owen Diaz.

**MR. RUBIN:**  And Michael Rubin on behalf of the

Plaintiff.

**MR. SPIRO:**  Good afternoon, Your Honor, this is Alex

Spiro and I will enter appearances for myself and my

colleagues, Asher Griffin, Dan Posner and Mari Henderson from

Quinn Emanuel.

**THE COURT:**  Great.  Good afternoon to all of you.

And so the purpose of this hearing is to figure out who

among the prospective jurors we should excuse on the basis of

the questionnaires.  Did you have a chance to speak with each

other about this topic?

1          **MR. ORGAN:**  Yes, we did, Your Honor.

2          **THE COURT:**  Okay.  And do you have agreements with

3     respect to excusing anybody?

4          **MR. ORGAN:**  Yes, we do, Your Honor.

5          **THE COURT:**  Okay.

6          **MR. ORGAN:**  We have agreements relative to health

7     issues, which I think the Court had already decided, as to 45

8     and 59, Your Honor.

9          **THE COURT:**  Yep.

10         **MR. ORGAN:**  Okay.  And then I believe -- Dustin, was

11    it 48 that we agreed had an issue on health?

12         **MR. COLLIER:**  I believe, that's correct.

13         **MR. ORGAN:**  Forty-eight, Your Honor.

14                   (Pause in proceedings.)

15         **MR. SPIRO:**  And then, perhaps, Your Honor, I can jump

16    in because I hear the silence.  We had also discussed amongst

17    the parties a couple of other jurors.  I'm not so sure the

18    parties have had sufficient time to, per se, stipulate.

19    Perhaps the Court could give us some guidance on the Court's

20    views and maybe on some other subjects so that we can

21    streamline this.

22         **THE COURT:**  Sure.

23         **MR. SPIRO:**  I believe the jurors --

24         **THE COURT:**  Why don't you let me tell you what I

25    think.

1          **MR. SPIRO:**  Sure.

2          **THE COURT:**  I will give you some ones that I think you

3     should think about and then you can let me know.

4          So, juror number 35 was excused already because she served

5     on a jury within the last year so we got that survey.

6          Juror number 5 served within -- virtually last served on

7     March 16th of 2022.  So I'm going to be inclined to let that

8     person go.

9          And then of the others that I would like you to think

10    about, juror number 2 had financial issues, had heard of the

11    case, expressed strong sentiments regarding Tesla.

12         Juror number 25 expressed financial hardship.

13         Juror number 26 is in Redding taking care of a sick

14    mother.

15         Juror number 33 has childcare issues.

16         Juror number 45 serious anxiety-related issues and also

17    had some strong feelings about one of the parties.

18         Juror number 51 is starting a new job and is concerned

19    about traveling to San Francisco.

20         I'm not saying that you need to agree to dismiss any of

21    those -- excuse any of those folks, but it is -- and I'm not

22    going to excuse them if you don't agree, but those were ones

23    that I thought you might have been thinking about and

24    discussing.  So, Mr. Spiro, go ahead.

25         **MR. SPIRO:**  Sure.  I had the same concern about folks

1    that had heard about the case.  So I can tell the Court

2    immediately we would excuse juror number 2.  I think that is an

3    easy one and would be rife with problems if we didn't.

4         And then there were two others that I noted that I can

5    tell you immediately that comments that they made caused me

6    concern based on health and mental health issues that they

7    suggested, which were 45 and 56.

8         So those I can tell the Court that we would have no issue

9    with, and I would need another moment to just take a look at

10   the other ones that the Court identified, if I would consent

11   but those I will consent to.

12                     (Pause in proceedings.)

13        **MR. SPIRO:**  Obviously the Court indicated juror

14   number 5, so I did not address juror number 5, however.

15                     (Pause in proceedings.)

16        **MR. ORGAN:**  Just so I have it right, you are number 2,

17   number 45 and 56; is that correct?

18        **MR. SPIRO:**  That is correct -- that is correct.  And

19   if the Court wanted to give us a moment to meet and confer

20   amongst ourselves; but, perhaps, that's not what the Court

21   wants.  So I have given my sure consent on the record to the

22   ones that I indicated.

23                     (Pause in proceedings.)

24        **MR. ALEXANDER:**  Your Honor, I believe we would be in

25   agreement with regard to number 2.

1          With regard to number 56, I believe we would be in

2     agreement to that as well.

3              **MR. COLLIER:**  45 as well, Bernard, was on our list.

4              **MR. ALEXANDER:**  That's true.  Forty-five we already

5     agreed to dismiss.

6              **MR. SPIRO:**  Well, if I could ask the Plaintiffs if

7     there's others that I could maybe quickly hone in on those if

8     you-all have a more precise list than mine.

9              **MR. COLLIER:**  I just meant it was on our list of ones

10    that we would agree to dismiss if the Court had a concern about

11    them and it does.

12                      (Pause in proceedings.)

13             **MR. ORGAN:**  I would say, Your Honor, I think we are in

14    agreement on certainly 59.  The Court has already struck; 48 I

15    think the parties did agree on so...

16             **THE COURT:**  I agree with you.  And so I'm going to

17    excuse them, and I'm going to excuse the three that everybody

18    has just consented to; and I'm wondering whether there are any

19    others that you have consented to.

20             **MR. ORGAN:**  We had discussed number 19, Your Honor, in

21    our meet-and-confer a little earlier.  The person there is --

22             **THE COURT:**  Well, so all I care about is whether you

23    agree or not.

24             **MR. ORGAN:**  Okay.  Yeah, we haven't heard back from

25    them whether they agree to 19 or not, so...

1      **THE COURT:**  Mr. Spiro, is there anybody else that you

2    would like to suggest now that you haven't suggested before to

3    the Plaintiffs and there is no agreement on?

4      **MR. SPIRO:**  At this point -- I mean, one that I had

5    that the Court noted that, I guess, perhaps my lack of

6    knowledge of geography has slowed my thinking on was the juror

7    that said "resided four hours from San Francisco."

8      And, frankly, I didn't know what to make of that.  That

9    didn't sound to me -- it sounded to me like a far way.

10     **THE COURT:**  Well, that is too far.  Which juror was

11   that?

12     **MR. SPIRO:**  I think it was one of the ones the Court

13   indicated, which was juror 26.

14     **THE COURT:**  Yeah, so, with respect to juror 26 -- I

15   can't remember whether it's a man or a woman, but I think it is

16   a woman -- and she is taking care of her ill mother in Redding.

17   Is there really an interest to see whether she will come down,

18   which I don't know whether she would show up anyway given that

19   situation?

20     **MR. SPIRO:**  My comment to the Court was my lack of

21   geography is that I don't know, frankly, how far that is.  I

22   see her indication that it's very, very far and the Court's

23   indication; but the reason why I had not even looked at that

24   juror was because I didn't make heads or tails of that location

25   yet.  I need to go on Google maps or something.

1          **MR. COLLIER:**  Speaking for Plaintiff, Your Honor, I

2    think we appreciate the concern.  We share it.  I think we are

3    somewhat interested in hearing from this person as far as how

4    much of a hardship one week would be, whether there is

5    alternative caregiving that can be provided.

6        I'm not sure if -- I didn't see any indication in the

7    questionnaire that they were told about the length of the

8    trial.  So I'm not sure if that would make things easier for

9    this person or what sort of alternatives they might have.

10         **THE COURT:**  Okay.  We will keep her in.  That's fine.

11       Anybody else?

12         **MR. ALEXANDER:**  I don't know if we mentioned that we

13   would be willing to stipulate to 25.

14         **MR. COLLIER:**  Yes.

15         **THE COURT:**  Okay.

16         **MR. SPIRO:**  Yeah, I think we are in --

17                     (Pause in proceedings.)

18         **MR. SPIRO:**  That's not somebody that we can just

19   immediately excuse from the Defense's side.

20         **THE COURT:**  Okay.

21         **MR. COLLIER:**  Did you say that it is or is not?  I'm

22   sorry.

23         **MR. SPIRO:**  Is not.

24         **MR. COLLIER:**  Okay.  We do concur with the Court's

25   assessment of the financial hardship, but I suppose we will

1    explore that more on Monday.

2        We have some additional ones that we think it would be

3    appropriate to excuse that have not come up yet, but I assumed

4    Your Honor wanted to focus on the agreements first.

5            **THE COURT:**  I did.  And I'm not going to -- if you

6    have had a full discussion with the Defense and they have, for

7    whatever reason, disagreed with you, I'm not going to make any

8    other adjustments; and we will deal with the issues as they

9    come up on Monday.

10           **MR. COLLIER:**  I think that makes sense, Your Honor.

11   The only other one that I think we might be in agreement on

12   given the comments today is 31.  Mr. Spiro had indicated there

13   were two jurors that said they were familiar with the prior

14   trial.  This is the other one.  We already agreed to dismiss 2.

15   Plaintiff would be agreeable to dismissing 31 as well for that

16   same reason.

17           **MR. SPIRO:**  That's fine with us, Your Honor.

18           **THE COURT:**  Okay.  We will dismiss 31 as well.  Okay.

19   Have we exhausted this area?

20           **MR. SPIRO:**  I believe so, Your Honor.

21           **MR. COLLIER:**  I believe that's correct, Your Honor.

22           **THE COURT:**  Okay.  So, from the lists we will make

23   sure that the jury has excused 45, 5, 10, 35, 59, 2, 56, and

24   31.

25           **MR. COLLIER:**  I'm sorry, Your Honor.  I don't

```
 1   believe --
 2          MR. ALEXANDER:  I don't think there is agreement on
 3   number 5.
 4          MR. COLLIER:  Yeah.
 5          THE COURT:  Okay.  I will leave 5 in for a second but
 6   I think -- I can tell you that if he or she served -- last
 7   served on March 16th of 2022, and is being called back now, I
 8   will probably give that person a pass but that's fine.  I will
 9   leave 5 in.
10          MR. ALEXANDER:  Your Honor, there is one -- with
11   regard to 19 and 21, they are both instances where people
12   represent Tesla.  Nineteen is -- it's a law firm that
13   represents Tesla, Morrison and Foerster; and 21, the spouse is
14   a lawyer for the State involved in a lawsuit with Tesla.  It
15   would seem that those two would be automatically excluded.
16          THE COURT:  Okay.  Mr. Spiro, what is your view on
17   that?
18          MR. SPIRO:  That may very well be the case,
19   Your Honor.  We haven't had a chance to fully explore that; but
20   if the Court is inclined to think that that business
21   relationship is -- is -- or adverse relationship certainly is
22   fatal, then we could save some time there.
23          THE COURT:  So, Mr. Alexander, that would be your
24   desire to have them excused?
25          MR. POSNER:  Yes, Your Honor.
```

1          **THE COURT:**  So why don't we do that.  We will excuse

2    19 and 21 as well.

3          **MR. ALEXANDER:**  Excellent.

4          **MR. COLLIER:**  Your Honor, I'm sorry to do this but can

5    we get what list you have one last time just to make sure we

6    are on the same page.

7          **THE COURT:**  I will try to throw out different numbers,

8    Mr. Collier.

9                              (Laughter)

10          **THE COURT:**  So we just did 19 and 21, 31, 56, 45, 59,

11   48.  Did we have agreement on 10?  I don't think so.

12          **MR. COLLIER:**  I don't show anything on 10, Your Honor.

13   I do show that we were agreed on 2.

14          **THE COURT:**  And 2, yes.

15          **MR. COLLIER:**  And, yeah, I think that was it.

16          **THE COURT:**  Okay.  All right.  I saw the three

17   objections that came in yesterday.

18          **MR. COLLIER:**  Oh, I'm sorry, Your Honor.  We just

19   realized 10 was the one with vacation conflict.  Plaintiff

20   would be okay with that going as well.  Apologies.

21          **THE COURT:**  That's all right.  Mr. Spiro, did you

22   agree on 10?

23          **MR. SPIRO:**  I think we should speak to this person

24   based on those sort of calls on the others.  If it's a

25   non-refundable plane ticket, that's typically the barrier to

1  entry here, so -- but if that's how it works out when the

2  person comes in, then I will understand the Court's ruling at

3  that time.

4          **THE COURT:**  Okay.  All right.  As to the objections

5  that were filed, one of them, the -- I -- I see the exceptions

6  to the preliminary jury instructions, but I think we have

7  argued that.  I have heard argument sufficient on that, and I'm

8  overruling those.

9          The opening slides, it seemed fine to me.  I -- there was

10  one, I think, maybe misconception on Tesla's part.

11          I will give the preliminary instructions before opening

12  statements.  So it's not that they are, you know, sort of up in

13  the air.

14          And then it's a -- you will argue differently than they

15  will about the instructions in all manner of things; but given

16  where this trial is, I don't see anything that is, you know,

17  (inaudible) about the slides that are there.

18          **MR. SPIRO:**  Yes, Your Honor, if I may address that

19  briefly.  I would agree with the Court, perhaps, in summation

20  but obviously opening statements are not argument.  It is just

21  to lay out the facts that you intend to show.

22          The Court has the providence of the law.  They are not the

23  speakers of the law, and there is no real way.  The law and the

24  facts is per se argument; right.

25          So you are just giving them the law.  Plaintiff is giving

1   them the facts that they intend to prove.

2       There is no possible basis to put back up the law unless

3   you are going to argue that which is, per se, improper in

4   opening statement.

5       So, to the Court's point about argument, sure in

6   summation, right, that would be fine but not in opening, which

7   is why it's not done and why at least in my experience courts

8   do not allow that even in a case such as this.

9       **THE COURT:**  Have you had experience in a case such as

10  this when a case has come back just for damages and preliminary

11  instructions have laid out what are predicate facts for the

12  jury?

13      So, the -- so I think emphasizing what's -- what the case

14  is about is okay, and I think laying out -- reminding people

15  what -- what the Plaintiffs' side thinks will be important as

16  the evidence proceeds is okay.

17      So, I don't agree with you; that that's -- it is certainly

18  true that you don't expect to have argument in opening

19  statement, but I think this case is just in a slightly

20  different posture than -- than any trial that I have done.

21      **MR. SPIRO:**  I can't say that I have one on all fours,

22  but I have tried cases that have been tried before and then put

23  back for retrials and --

24      **THE COURT:**  Where liabilities had been established and

25  the preliminary jury instructions state what these state?

1          **MR. SPIRO:**  Not precisely.  But, again, in my view,

2     what the Court just said in substance; that they can -- they

3     can marshal the jury to what the actual issues are, I agree

4     with; right.  They can do exactly that.  We are not going to

5     open and suggest otherwise.

6          But that's a different question than whether or not they

7     can put snippets of jury instructions up, which is the hallmark

8     of argument; right.

9          So they are going to stand up and say:  "All you have to

10    decide in this case is X or Y," absolutely they can say that;

11    and that solves the question that the Court is sort of

12    rhetorically posing.

13         And that's a different -- a different animal than actually

14    having the jury instructions when there again, it's not the --

15    they are not the providence of the law.  The instructions are

16    snippets and we think misleading.

17         And I think if the Court were to pull them and look at

18    them, you would see that.  And so that, in and of itself, is

19    argument; and then they are going to argue how the facts apply

20    to the law, which is also argument.

21         So we don't see how that's necessary, and we think it is

22    prejudicial and improper; and it is not -- again, in my

23    experience, in -- done in opening statements for those reasons

24    even in retrials.

25         **THE COURT:**  Okay.  Well, I -- thank you for your

argument.  It is overruled.

      And then the final issue is the Amy Oppenheimer slides,
and I have not had a chance to go back to her trial testimony;
and I couldn't find her expert report.

      So I would like the Plaintiffs to lodge that with me this
afternoon, and I will take a look at that and then we can
discuss that further.

      **MR. COLLIER:**  Would Your Honor like us to lodge the
report and the prior testimony or just the report?

      **THE COURT:**  I have a very large binder of all of the
testimony --

                        (Laughter)

      **MR. COLLIER:**  Fair enough.

      **THE COURT:**  -- from the first trial, and I'm looking
forward to reviewing it from time to time, so; but I would like
to have the report, please.

      **MR. COLLIER:**  Understood, Your Honor.

      **THE COURT:**  Okay.  And I don't know, Mr. Spiro, if you
want to say anything now or if you want to save it until I have
had a chance to go through things.

      I know that the Plaintiffs just filed a response, which I
have not looked at in any way.

      **MR. SPIRO:**  To be efficient with the Court's time, I
will reserve on that issue until the Court has had a chance to
digest everything.

1       **THE COURT:** All right.  So those were the things on my

2   mind.  Mr. Organ or Mr. Alexander or Mr. Collier or Mr. Rubin,

3   is there anything else on the Plaintiffs' side that you wanted

4   to go through today?

5       **MR. ALEXANDER:** There's one other issue, Your Honor.

6   At the previous trial, if you will recall, we lost a juror

7   because it turned out they had stock in Tesla and they were

8   able to figure that out late in the game.

9       And so I just wanted to remind the Court of that, so when

10  the Court does question, you can make sure even inside the

11  retirement accounts because that's how that juror found it.

12      **THE COURT:** I remember and I will be explicit.

13      I thought I had covered that in the questionnaire, but it

14  may not have been explicit enough.  So I will definitely ask

15  the question.

16      **MR. ORGAN:** And, Your Honor, just one other thing.  We

17  filed an administrative motion much like Tesla filed relative

18  to having our support staff bringing things to the court for

19  Monday's trial.

20      Just bringing that to your attention, Your Honor, so that

21  perhaps you could sign it.  They can come in and bring their

22  stuff in too.

23      **THE COURT:** Well, the boss of this is in the upper

24  left-hand corner of my screen, and --

25      **MR. ORGAN:** And I will say, Your Honor, we did ask

1    Ms. Davis already and she did say that that was okay.  I

2    just -- because Tesla went through the process of doing an

3    administrative motion, I thought to be safe we should probably

4    file one too, so...

5              THE COURT:  Okay.  It is granted.

6              MR. ORGAN:  Thank you, Your Honor.

7              THE COURT:  Mr. Spiro, anything else we should talk

8    about today?

9              MR. SPIRO:  Sure, if the Court will indulge, there is

10   some concern on my part and I raised it in a recent other case

11   in the district, which is some of these grievances with

12   Mr. Musk and Tesla being aired publicly.

13       So I would ask to do some combination of what we did in

14   the recent trial to protect against that because I don't want

15   to be in a position that jeopardizes the panel as a whole.

16             THE COURT:  No.  I agree.  And is there -- was there a

17   procedure that Judge Chen used that you were happy with?

18       We can do one of two things -- we can do one of three

19   things.  We can -- there are a number of people I'm going to

20   speak with individually.

21       I can have them hang back at a break after asking the

22   public questions of everybody as opposed to doing a sidebar and

23   calling people up and back, which I think gets a little --

24   people get a little antsy doing that.

25       So I think -- now that I'm talking about it, I think

1  that's what I will do.  I think I will ask the -- do the voir

2  dire of the -- of individual jurors who do not raise sensitive

3  issues in the -- I will do that open, and then I will just take

4  a break for those people and have them come back in an hour and

5  have the other people wait outside and take them -- call them

6  in one at a time.

7          MR. ALEXANDER:  So we will do the Tesla issues at the

8  end after we have determined whether there are any other

9  issues?

10          THE COURT:  So -- so what I'm thinking of, let's say

11  there is somebody who is an enormous -- I don't know whether I

12  need to do admirer but I probably should -- but somebody who

13  has expressed a strong view one way or another about Mr. Musk

14  or Tesla, I would not ask them questions in front of all of the

15  other jurors.

16      So, those people I would just wait to ask questions of

17  until the other ones are done.  Then I would let the other ones

18  go on recess for an hour or so, and then I would try and take

19  the other people individually.

20          MR. COLLIER:  And this is before any strikes, any

21  challenges?

22          THE COURT:  Exactly right.

23          MR. COLLIER:  Understood.

24          MR. SPIRO:  That makes sense and what was obviously

25  preferable to the Court.  Another way to do it is to get

1   them -- well, I guess it doesn't matter which way that we get

2   them out of the way if they are extreme in their views.

3       I don't mind them being voir dired, frankly, about

4   everything else in open.  I just don't want to be in a

5   situation where they pollute the panel.  That's my concern

6   because then I'm stuck between a rock and a hard place.

7       **MR. COLLIER:**  We should probably do the same with

8   anybody who has expressed sort of -- or formed views on damages

9   and that sort of thing as well.  Same sort of concern about

10  polluting the panel.  I think those folks should be reserved as

11  well if that's all right with the Court.

12      **THE COURT:**  All right.  You are asking me to reserve

13  just about the entire panel one way or another.

14      So I will go through -- I will tell you what I'm going to

15  do.  First of all, I appreciate the concern and the process

16  that we will use will address that concern.

17      I will go through -- now that I know who is being excused,

18  I will go back through the surveys.  I will determine what I

19  think either side would be concerned about being displayed in

20  open court.  And then thinking about how many people that is, I

21  will come up with a process and I will tell you on Monday at

22  8:30.

23      **MR. COLLIER:**  Thank you, Your Honor.

24      **MR. SPIRO:**  In terms of other issues since you have

25  asked the Defense, I mean, there are sort of a few things on my

 1   mind that, perhaps, are obvious but maybe will help streamline

 2   this and make it so that there are not repeat issues and

 3   things.

 4        And so -- and the Court can, of course, cut me off if

 5   these are tedious or not helpful -- but one thing is I assume

 6   we are going to refer to the prior testimony as "prior

 7   testimony," not "Trial 1" or "Trial 2."  These are just things

 8   on my mind because that's what you do in lead trials.

 9        And I don't know what the Court's view is on witness

10   disclosure, but given that we all know what the witnesses are

11   and we are trying to get this trial done in a week -- and for

12   logistical purposes, frankly, more than anything -- the Defense

13   is happy to disclose the witnesses in the order that they are

14   calling their witnesses on well in advance, and we would hope

15   that the Plaintiffs would do the same.  I don't see the need

16   for -- it is not much of a gotcha trial.

17        **THE COURT:**  It is not a gotcha trial.  I do have sort

18   of a standing order, which is in the pretrial order, about

19   notifying witnesses.

20        I encourage communication to the extent that you will do,

21   as Mr. Spiro is intending to do, that's great; and -- but

22   otherwise -- at a minimum, you need to follow the standing

23   order.

24        **MR. SPIRO:**  And then I don't want to go through sort

25   of a litany of lists of things that came up that I think will

1  create a smoother and fairer trial on round two, but I just

2  want the Court to know that we are going to be objecting to any

3  breaks in people's testimony to call in other witnesses, which

4  is part of the reason why I'm bringing this up at this

5  juncture, because I don't want to leave that as an untold

6  reality; that -- if the Court recalls in the first trial,

7  Mr. Diaz's testimony was stopped so other witnesses could come

8  in and testify mid-testimony about the same things he was

9  testifying about, which was either by genius design or

10 fortuitous for the Plaintiffs.

11     But we are not going to willingly allow that to happen,

12 and so I don't -- I would rather plan this so we can all be on

13 the same page.  And when I do examinations, my time estimates

14 are usually pretty good to make it efficient; but I just want

15 the Court to know we are going to be strongly objecting to

16 that, which happened at the first trial.

17     **THE COURT:**  Okay.  The -- I do -- I assume that all

18 witnesses will be testifying straight on.  There was -- and I

19 can't remember what the reasons were, but I am confident that

20 they were good-faith reasons in the first trial and -- and I do

21 expect that everybody is going to be testifying straight

22 through.

23     **MR. ORGAN:**  Your Honor, the only thing that we would

24 say is we have got two experts who it is difficult to figure

25 out exactly when that they might be on.

1          So we would ask the Court as to our psychologist expert,

2     Dr. Reading, who testified before, if he could testify first

3     thing Thursday morning followed by our economist, Mr. Mahla.

4          I did plot out the times, and it should -- that should be

5     in line in terms of the times.  Obviously there might be some

6     variations, but -- so -- I'm giving a heads-up now so that

7     Mr. Spiro can see if he has an objection to us doing a specific

8     time for the experts.  What's your thought on that, Alex?

9          **MR. SPIRO:**  I don't -- and this is exactly why I

10    wanted to have this conversation because I know the Court is

11    endeavoring to get this done in a week, and I think we can.

12    Nobody wants it done in a week more than me, maybe equal but

13    not more.

14         So I don't have a problem with that; but if they have

15    mapped it out, I would just like to know what the map is.

16         I don't think -- I guess they will be telling me one day's

17    worth early; right?  I don't think that's a big thing for me to

18    ask.  It's not going to cause me to, you know, to do some --

19    yeah, and so with that caveat that we would then have some

20    understanding.

21         And then the final thing that I would say is if someone is

22    finishing their cross-examination or something to that effect,

23    what I'm not going to allow -- and I hope the Court understands

24    this -- I would be very flexible about most things.

25         I can't have the Plaintiff then have the psychologist come

1    in, in the middle of his testimony, and say "This man is very

2    sick."  And please continue your testimony.  I can't allow

3    that.  That wouldn't be me doing my job.

4         So with those minor caveats, I have no problem with that;

5    and I'm hopeful to work easily to get this done efficiently.

6         MR. COLLIER:  I think the bottom line is at this point

7    the Plaintiff does not intend to call anyone out of order.  We

8    intend to finish witnesses when we start them.

9         Obviously it's a trial and sometimes time estimates are

10   slightly off, and we may need to make adjustments; but we will

11   notify the Court and opposing counsel as soon as any such issue

12   arises.  And right now we are not anticipating them.

13        THE COURT:  All right.  If there is -- if -- it is a

14   trial, so I'm not going to force you to give your full list in

15   the order that you are intending to call them today to

16   Mr. Spiro, but given the -- your already expressed need to

17   schedule the experts when you are trying to schedule them, then

18   you should be very sure that either you have provided

19   advance -- well in advance notice to the Defense of when you

20   are going to have the order -- how the order is going to work

21   or be sure that things work out time-wise the way that you are

22   hoping they work out.

23        MR. COLLIER:  The way we think it's going to work

24   right now is that we will be able to put those witnesses on

25   first thing Thursday and get them on and off and that will be

```
 1   without breaking any other witness.  That's the way it is
 2   supposed to work right now.  And if not, we will ask the
 3   experts to come a little bit later on Thursday.
 4          THE COURT:  You know what the issue is, so --
 5          MR. COLLIER:  Thank you.
 6          THE COURT:  -- deal with it one way or another.
 7          MR. ORGAN:  Your Honor, just for preparation purposes,
 8   you previously told us that we should be prepared to put on our
 9   first witness on Monday in case we get to that after openings?
10          THE COURT:  Uh-huh.
11          MR. ORGAN:  If somehow the Court is extremely
12   efficient in terms of voir dire, is there -- should we have
13   another witness there or --
14          THE COURT:  If it's a five-minute witness, then maybe,
15   but I think the likelihood is that the earliest I would be able
16   to instruct would be, you know, 2:00 o'clock -- 1:30,
17   2:00 o'clock, and then I would do the preliminary instructions.
18   You would do the openings.  And then as long as you had a
19   witness of a decent length, you would be very safe.
20          MR. ORGAN:  Okay.
21          THE COURT:  And I don't know that we will get -- I
22   mean, I think -- I don't know whether we will get there or not,
23   frankly, time-wise, so...
24          MR. ORGAN:  Great.  Okay.
25                   (Pause in proceedings.)
```

1          **THE COURT:**  Okay.  Mr. Spiro, more issues?

2          **MR. SPIRO:**  Well, we don't have to do them all, but

3     there are a few other and maybe this is a good time and I will

4     take the opportunity.

5          So there were a few other issues that sort of came up at

6     the first trial that I wanted the Court's guidance on attempts

7     at ruling.  I don't consider them to be major issues, but I

8     can't leave the record and not make them.

9          One thing was there were comments from Plaintiffs' Counsel

10    that were along the lines "Well, we've never seen this document

11    before; we've never seen this document before," which the Court

12    chastised Plaintiffs' Counsel for one of these comments; but I

13    just want to make sure that that's not going to happen again

14    because that's improper.

15         **THE COURT:**  Well, they have now seen the documents,

16    you know, a year and a half before, so I don't think that's an

17    issue, Mr. Spiro.

18         **MR. SPIRO:**  Okay.  Second minor thing is -- and we are

19    almost done for my issues.  The second minor thing that I had

20    was they asked the witnesses -- the other witnesses --

21    Mr. Diaz, of course, is fair game -- they asked the other

22    witnesses, you know, "Did this offend you?  Did that offend

23    you?  How offensive did you find this?  How troubling?"

24         I didn't understand the evidentiary basis for that.  There

25    were objections.  The Court -- I don't know if there was clear

 1   guidance from the Court, per se, but that strikes me as

 2   improper and also liability has been established.

 3       So I don't know what -- what witness number 11 says, "This

 4   I found very, very offensive and it hurts my heart and soul"

 5   has to do with a thing; and it is obviously prejudicial and

 6   irrelevant.

 7       So we would ask that those questions not be asked again,

 8   and I don't want to have to stand up and object to them.  They

 9   are improper in my view.

10           **MR. ALEXANDER:**  Your Honor, if I can --

11           **THE COURT:**  Go ahead, Mr. Alexander.

12           **MR. ALEXANDER:**  That whole comment is completely out

13   of context.  It doesn't discuss what's going on in the

14   workplace, the people conducting investigations.  Their

15   opinions as to what they thought at the time is important.

16       With regard to three of the witnesses, they are African

17   American.  With regard to the (inaudible) that was placed in

18   the workplace, it is relevant what they thought.

19       So for Mr. Spiro to pluck things out of context I don't

20   think is appropriate.  I think he needs to make an objection at

21   the time, and there is nothing wrong with the questions at the

22   time it was asked then; and we expect to ask them at the time

23   of trial again.

24           **MR. COLLIER:**  If I may add just briefly, I believe

25   Your Honor already ruled on this.  We discussed this in the

1    context of the jury instructions and whether harm to others was

2    a proper consideration for the jurors in the context of

3    analyzing reprehensibility.   And under *State Farm* it clearly

4    is.

5         The harm can't be compensated for but it can be assessed

6    in terms of reprehensibility, and the appropriate remedy -- if

7    Mr. Spiro thinks it goes too far -- is a limiting instruction

8    to that effect at the time.

9         **THE COURT:**  So, the Court -- these issues will come up

10   in the context of the evidence at trial, and I will rule on

11   them as they come.

12        **MR. SPIRO:**  The final issue that I had, which is more

13   specific, is there were two exhibits that came up at the last

14   trial that are not admissible or not admitted exhibits but came

15   up, but one was an exhibit that was used for solely

16   impeachment, which is Exhibit 106.

17        Obviously if there is an opportunity to use it for

18   impeachment, it may very well come up; but it is not otherwise

19   admissible or evidence.

20        And the other exhibit is Exhibit 109, which is an exhibit

21   that is outside of the timeframe that the Court said was not

22   admissible but was used at the prior trial in sort of a pseudo

23   refresh recollection but that the substance of it got in front

24   of the jury.  I don't know if the Court recalls it, but the

25   Court has many cases on its docket.  Perhaps not.  I have just

1    recently read the transcript.

2        But the Court already ruled that the exhibit is out.  It

3    was used improperly at the last trial and -- in our view and

4    never came into evidence but it was bandied about because it's

5    a depiction of graffiti that is troubling, and they got it in

6    front of the jury last time and got an objection sustained.

7        I don't want that exhibit just because they were able to

8    do it the last time.  And I say that with great -- you know,

9    great credit to good trial lawyers getting things past perhaps;

10   but at the same time, it is not admissible and it is not

11   proper.

12       So I just want to flag that because, again, it is one of

13   these issues that we know is coming, perhaps.  Perhaps they are

14   not going to try it, and I don't want to be standing up

15   objecting because that defeats the purpose of bringing it up

16   now.

17           **THE COURT:**  So, who is --

18           **MR. ORGAN:**  Yes, I can deal with this, Your Honor,

19   because I think I had these exhibits before.

20       With respect to 106, I can't see how it won't be coming in

21   for impeachment.  There are three witnesses who testified that

22   they did not receive complaints of the N-word, and that

23   document impeaches all three of them.  So, I can't imagine how

24   they are going to avoid that.

25       Maybe the witness will admit to seeing or making -- you

know, receiving the complaint; but then I can read their prior

testimony where they denied it, and then it is proper for the

jury to also see that there is an exhibit that impeaches their

prior testimony.  That goes to their -- it is core credibility

issues, Your Honor.  So I would say that 106 probably will be

coming in again for impeachment and credibility.

And then with respect to 109, I don't think anything was

done improperly.  I think the Court properly ruled as to the

scope of evidence on that issue.

And depending on how their witnesses respond or answer

questions, it might become relevant in terms of impeachment

again; but I do understand the Court's rulings.

And as the Court has -- might remember, I typically

previewed issues with the Court before a witness got on the

stand to make sure that we did not run afoul of Your Honor's

orders.

And, in fact, Your Honor struck some deposition testimony

because -- that the Court had missed the night before because I

brought it to the Court's attention because I didn't want to

run afoul of your order.

So I think I'm very cognizant of the way the Court has

ruled.  I appreciate that Mr. Spiro is new to the case and

looks at it from a different perspective, and he is an

excellent lawyer.  So I know that we will be up against a

challenging opponent, Your Honor, but I -- I certainly don't

1   think that we did anything wrong; and I don't see that ruling

2   now makes sense.

3      I think that the Court will have to rule on an as-is

4   basis.  Exhibit 109 was never shown to the jury, and the

5   contents of it were never improperly discussed.  So I think

6   it -- I think the Court is very good at ruling as these things

7   come up, so...

8          **THE COURT:**  Well, so, I do -- I don't -- you will be

9   shocked to know that I don't have -- I don't remember exhibits

10  by number particularly in trials that happened a year and a

11  half or two years ago.

12     The -- I do remember 109, I think, which is the graffiti

13  in the bathroom.

14         **MR. ORGAN:**  Yes, Your Honor.

15         **MR. COLLIER:**  Yes, Your Honor.

16         **THE COURT:**  I think that was -- time-wise it was

17  outside the scope.

18         **MR. ORGAN:**  Yes, Your Honor.  It was two months after.

19         **THE COURT:**  So it is -- I would be surprised if there

20  was some basis to let it in this time, and I -- you should not

21  offer it without having previewed it to me outside the presence

22  of the jury in a morning session with a very clear picture of

23  how you could possibly get it in.

24     And then that might -- if you had to give that clear of a

25  view, then you would probably tip off the Defense on the way to

 1    ensure that it never came up.

 2         So, I would be -- I would be reluctant on 109 and 106.  I

 3    don't know what that is, so...

 4              **MR. ORGAN:**  106 was the complaint about the N-word in

 5    the elevator area, Your Honor, and Ed Romero forwarded that up

 6    the chain, I think, to HR and Victor Quintero was also on that,

 7    so his manager also said that.  Both Quintero and Romero

 8    testified in court that --

 9              **THE COURT:**  They never heard the word.

10              **MR. ORGAN:**  Right.  They never received any complaints

11    about the word and then that's how it came in so.

12              **THE COURT:**  Okay.  Well, I will -- I will deal with

13    that as it comes up, but you should be cognizant of -- of my

14    prior rulings and the reasons for them.

15              **MR. ORGAN:**  Thank you, Your Honor.

16              **MR. SPIRO:**  Thank you, Your Honor.

17              **MR. ORGAN:**  Your Honor, you want us at 8:00 o'clock on

18    Monday; right?

19              **THE COURT:**  No.  When the jury is coming in, 8:30 is

20    fine.  Every other day 8:00 o'clock; but, you know, we will get

21    together at 8:30.  The jury won't come down until

22    9:30 probably.  It usually -- it takes a while for them to get

23    there so we can deal with any other things that come up.

24         There -- I think -- well, Mr. Spiro probably knows from

25    his experience but in general the -- the pool will have shrunk

1    from the time that we asked them to come to when they actually

2    come down to the courtroom for -- it is just harder to get

3    jurors to come to the courthouse these days.

4        And so we will -- we will see where we are, but I think we

5    are going to have plenty of people to -- from which to pick a

6    jury, and I'm looking forward to seeing this trial again.

7                        (Laughter)

8            **MR. ORGAN:**  We are too, Your Honor.  Thank you.

9            **THE COURT:**  Okay.

10           **MR. SPIRO:**  Thank you, Your Honor.

11           **THE COURT:**  I will see you on Monday morning.  Thank

12   you.  Have a good weekend.

13           **MR. SPIRO:**  Thank you, Your Honor.

14           **MR. ORGAN:**  Thank you, Your Honor.

15           **MR. COLLIER:**  Have a good weekend.

16           **THE CLERK:**  That concludes our conference.  Thank you

17   all.

18               (Proceedings adjourned at 2:16 p.m.)

19                        ---oOo---

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Friday, March 24, 2023

_Marla Knox_

_____

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter