| | |
|---|---|
| LAWRENCE A. ORGAN (SBN 175503) | MICHAEL RUBIN (SBN 80618) |
| larry@civilrightsca.com | mrubin@altber.com |
| MARQUI HOOD (SBN 214718) | JONATHAN ROSENTHAL (SBN 329638) |
| marqui@civilrightsca.com | jrosenthal@altber.com |
| CIMONE A. NUNLEY (SBN 326915) | **ALTSHULER BERZON LLP** |
| cimone@civilrightsca.com | 177 Post Street, Suite 300 |
| **CALIFORNIA CIVIL RIGHTS LAW GROUP** | San Francisco, California 94108 |
| 332 San Anselmo Avenue | Telephone:    (415) 421-7151 |
| San Anselmo, California 94960 | Facsimile:     (415) 362-8064 |
| Telephone:    (415)-453-7352 | |
| Facsimile:    (415)-785-7352 | DUSTIN L. COLLIER (SBN 264766) |
| | dcollier@collierlawsf.com |
| J. BERNARD ALEXANDER (SBN 128307) | V. JOSHUA SOCKS (SBN 303443) |
| balexander@amfllp.com | jsocks@collierlawsf.com |
| **ALEXANDER MORRISON & FEHR LLP** | ELIZABETH R. MALAY (SBN 336745) |
| 1900 Avenue of the Stars, Suite 900 | emalay@collierlawsf.com |
| Los Angeles, California 90067 | DREW F. TETI (SBN 267641) |
| Telephone:    (310) 394-0888 | drew@collierlawsf.com |
| Facsimile:    (310) 394-0811 | **COLLIER LAW FIRM, LLP** |
| | 240 Tamal Vista Blvd. Suite 100 |
| | Corte Madera, CA 94925 |
| | Telephone:   (415) 767-0047 |
| | Facsimile:    (415) 767-0037 |

Attorneys for Plaintiff,
OWEN DIAZ

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,<br><br>            Plaintiffs,<br><br>       v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>            Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**AFFIDAVIT OF CIMONE NUNLEY IN SUPPORT OF PLAINTIFF OWEN DIAZ'S BILL OF COSTS**<br><br><br>Judgment Entered: April 11, 2023<br>Trial Date: March 27, 2023<br>Complaint filed: October 16, 2017 |

I, Cimone Nunley, hereby declare as follows:

1. I am counsel of record for Plaintiff Owen Diaz in this action. The statements in this affidavit are based upon my personal knowledge or review of the records maintained by my firm in the ordinary course of business.

2. I submit this affidavit in support of Plaintiff's Bill of Costs, pursuant to Civil L.R. 54-1(a) and 28 U.S.C. § 1924. The costs and disbursements identified in Plaintiff's Bill of Costs are correct, were necessarily incurred in the litigation of this case, and allowable by law.

3. **Filing Fees:** Attached hereto as **Exhibit 1** is a true and correct copy of a credit card statement sent to the California Civil Rights Law Group ("CCRLG"). Page 3 of this statement reflects a filing fee of $435 paid to Alameda County Superior Court for the filing of the complaint in this matter.

4. **Service of Process:** Attached hereto as **Exhibit 2** is a true and correct copy of Invoice No. 8472 from Evan-Allen Services to CCRLG, dated October 25, 2017. This invoice reflects a charge of $65.00 paid for serving the complaint on Defendant Tesla, Inc., dba Tesla Motors, Inc. ("Defendant"). A true and correct copy of a declaration confirming service of the pleadings is attached hereto as **Exhibit 3**.

5. Attached hereto as **Exhibit 4** is a true and correct copy of Invoice No. 8484 from Evan-Allen Services to CCRLG, dated June 1, 2018. This invoice reflects a charge of $95.00 paid for service of a deposition subpoena to Pahl & McCay for the deposition of Rovilla Wetle. The declaration of the process server confirming service is attached hereto as **Exhibit 5**.

6. Attached hereto as **Exhibit 6** is a true and correct copy of Invoice No. 8504 from Evan-Allen Services to CCRLG, dated November 9, 2018. This invoice reflects a charge of $105.00 paid for service of a deposition subpoena on Wayne Jackson. The invoice also reflects charges for (1) unsuccessful attempted service of a subpoena on Jackson's prior address and (2) unsuccessful attempted service of a deposition subpoena on witness Rothaj Foster. In the exercise of billing judgment Plaintiff does not seek recovery of the costs associated with the unsuccessful service attempts on Foster and Jackson. The completed subpoena is attached hereto as **Exhibit 7**.

7. Attached hereto as **Exhibit 8** is a true and correct copy of Invoice No. 2019011804 from Superior Process Service, Inc. to CCRLG, dated October 3, 2019. This invoice reflects a charge of $110.00 paid for service of a deposition subpoena on Jackelin Delgado. A declaration confirming service is attached hereto as **Exhibit 9**.

8. Attached hereto as **Exhibit 10** is a true and correct copy of Invoice No. 8535 from Evan-Allen Services to CCRLG, dated October 25, 2019. This invoice reflects a charge of $115 for service of a deposition subpoena on Erin Marconi, as well as a charge of $225.00, billed at $75.00 per hour, for a three-hour stakeout of Ms. Marconi's apartment to effect said service. It also reflects a charge of $105.00 for service of a deposition subpoena on Veronica Martinez. The invoice also reflects charges for (1) service of a deposition subpoena on Josue Torres, whom Plaintiff opted not to depose; (2) unsuccessful attempted service of a deposition subpoena on Judy Timbreza; and (3) attempted service of a deposition subpoena on Ramon Martinez[1]. In the exercise of billing judgment, Plaintiff does not seek recovery of the costs associated with Torres, who was never deposed in this action; unsuccessful service on Timbreza; and unsuccessful service on Martinez. A declaration reflecting service of the subpoena on Ms. Martinez is attached hereto as **Exhibit 11**. A declaration reflecting service of the subpoena on Ms. Marconi is attached hereto as **Exhibit 12**.

9. Attached hereto as **Exhibit 13** is a true and correct copy of Invoice No. 8564 from Evan-Allen Services to CCRLG. This invoice reflects charges of (1) $85 for service of a trial subpoena on Alfonso Franco; (2) $70 for service of a trial subpoena on Josh Hedges; (3) $75 for service of a trial subpoena on Jeffrey Henry; (4) $65 for service of a trial subpoena on Maggie Crosby; and (5) $105.00 for service of a trial subpoena on Lamar Patterson. Declarations reflecting service on the above-listed witnesses are attached hereto as follows: **Exhibit 14** (Alfonso Franco), **Exhibit 15** (Josh Hedges), **Exhibit 16** (Jeffrey Henry), **Exhibit 17** (Maggie Crosby), and **Exhibit 18** (Lamar Patterson).

10. Attached hereto as **Exhibit 19** is a true and correct copy of Invoice No. 8567 from Evan-Allen Services to CCRLG dated September 27, 2021. This invoice reflects a charge of $75.00 for

---

[1] After the subpoena was served, the recipient contacted CCRLG to explain he was not the Ramon Martinez Plaintiff sought to serve.

discerning Monica DeLeon's whereabouts and a charge of $115.00 for service of a trial subpoena on Ms. DeLeon. A declaration reflecting service of the subpoena on Ms. DeLeon is attached hereto as **Exhibit 20**.

11. Attached hereto as **Exhibit 21** is a true and correct copy of a receipt for payment of Invoice No. 20104641 from First Legal Network to CCRLG. This receipt reflects a charge of $193.20 for service of a subpoena for documents on nextSource. A declaration reflecting service of the subpoena on nextSource is attached hereto as **Exhibit 22**.

12. Attached hereto as **Exhibit H** is a true and correct copy of Invoice No. 8567 from Evan-Allen Services to CCRLG. This invoice reflects charges of: (1) $77.00 for attempted service of a trial subpoena on Michael Wheeler; (2) $77.00 for attempted service of a trial subpoena on Wayne Jackson; (3) $82.00 for attempted service of a trial subpoena on Ed Romero, (4) a $73.84 deposit for advance witness fees and mileage paid to witness Wayne Jackson; (5) $150.00 for an unsuccessful stake-out of Mr. Jackson's home to effect service at $75.00 per hour; (6) $154.00 at $77.00 per hour for a successful stake-out of Mr. Jackson's workplace to effect service of the trial subpoena; (7) $77.00 at $77.00 per hour for an unsuccessful stakeout of Mr. Wheeler's workplace to effect service of the trial subpoena; (8) $150.00 at $75.00 per hour for an unsuccessful two-hour stakeout of Mr. Wheeler's home to effect service of a trial subpoena; (9) $150.00 at $75.00 per hour for an unsuccessful two-hour stakeout of Mr. Wheeler's home to effect service of the trial subpoena; and (10) $150.00 at $75.00 per hour for an unsuccessful two-hour stakeout of Mr. Wheeler's home to effect service of the trial subpoena. A declaration reflecting the attempts to serve Mr. Wheeler and Mr. Jackson is attached hereto as **Exhibit I**.

13. The Ninth Circuit has interpreted Section 1920(1) as demonstrative of Congressional "intent to make service of process a taxable item." *Aflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 178 (9th Cir. 1990). Given that the Federal Rules generally require that a private party be employed as a process server, "the cost of private process servers should be taxable under 28 U.S.C. § 1920(1)." *Id.*

14. **Reporter's Transcripts:** Attached hereto as **Exhibit 23** is a true and correct copy of Invoice No. 202100853 from this Court to CCRLG, dated October 5, 2021. This invoice reflects a charge of $3,632.25 paid to this Court for daily trial transcripts.

15. Section 1920 (28 U.S.C. § 1920(2)) permits a prevailing party to recover transcripts "necessarily obtained for use in the case." *Vectren Communications Svcs. v. City of Alameda*, Case No. C-08-3137-SI, 2014 WL 3612754 (N.D. Cal. Jul. 22, 2014) (permitting recovery of transcript costs for use in the case under Section 1920). Transcripts are necessarily obtained where they are used for "trial briefing" and "motions for judgment as a matter of law." *Golden Bridge Technology, Inc. v. Apple, Inc.*, Case No. 5:12-cv-04882-PSG, 2015 WL 13427805 (N.D. Cal Dec. 21, 2015) ("*Golden Bridge*") (holding transcript costs allowable where party used transcripts for trial briefing, motion for judgment as a matter of law, and trial objections in patent action). The transcripts in this case were necessarily obtained under Section 1920. During the first trial in this matter, Tesla filed both a motion to strike the testimony of Dr. Anthony Reading, Plaintiff's psychological expert (Dkt. 281) and a motion for judgment as a matter of law. (Dkt. 282) Tesla filed portions of the trial transcript as evidence in support of both motions. (Dkt. 281-1; 282-1) Plaintiff thus had to file portions of the trial transcript as evidence to rebut Tesla's arguments. (Dkt. 286-1; 287-1) In ruling on both motions, the Court cited to the portions of the transcript highlighted by Plaintiff's counsel. (Dkt. 303 at 4:26-5:5; 8:13-17) These transcripts were necessarily obtained for use in opposing Defendant's motions during trial, and relied upon by the Court in ruling on Defendant's motion.

16. Attached hereto as **Exhibit A** is a true and correct copy of Invoice No. 202200966 from this Court to CCRLG, dated May 20, 2022. This invoice reflects a charge of $329.45 paid to the Court for a transcript of the January 15, 2022 hearing in this matter on the parties' post-trial motions. This transcript order was reasonably necessary to Plaintiff's request for interlocutory appellate review of the Court's Order, filed on May 5, 2022. (Dkt. 331; 333)

17. Attached hereto as **Exhibit B** is an invoice from this Court to CCRLG dated December 13, 2022. This invoice reflects a charge of $70.85 paid to the Court for a transcript of the December 7, 2022, hearing in this matter on Tesla's motion for a new trial and the scope of evidence in the damages-only retrial. This transcript was reasonably necessary for trial preparation and trial briefing, as the Court laid out the initial scope of evidence permitted at retrial at this hearing and Plaintiff cited to this hearing transcript in his pretrial statement. *Golden*

1  *Bridge*, Case No. 5:12-cv-04882-PSG, 2015 WL 13427805 (N.D. Cal Dec. 21, 2015); Dkt. 372
2  4:23-26.

3      18. Attached hereto as **Exhibit C** is an invoice from Ad Hoc Reporting to CCRLG dated
4  January 19, 2023. This invoice reflects a charge of $87.20 paid for a transcript of the January 17,
5  2023 pretrial conference in this matter. This transcript was reasonably necessary for pretrial
6  briefing, as the Court further clarified the scope of evidence permitted at retrial during this
7  hearing and Plaintiff cited to this transcript in his motions *in limine*. Dkt. 382 4:24-5:13, 15:12-
8  23, 17:6-8.

9      19. Attached hereto as **Exhibit D** is an invoice from the Court dated March 22, 2023. This
10 invoice reflects a deposit paid for $9,178.00 for daily transcripts and real-time reporting of the
11 damages-only retrial. **Exhibit E** is an invoice from the Court to CCRLG dated April 7, 2023
12 reflecting a final payment of $6,820.60 for daily transcripts and real-time reporting of the
13 damages-only retrial. Given the complex evidentiary rulings in this case, real-time and daily trial
14 transcripts were reasonably necessary for trial briefing in this matter. Due to Tesla's repeated
15 violations of the Court's pretrial rulings, Plaintiff was required to file written objections to
16 Tesla's opening statement (Dkt. 433); a response to Tesla's attempt to introduce substantive
17 evidence that was produced in neither discovery nor the first trial (Dkt. 441); written objections
18 to Tesla's attempts to introduce evidence of Plaintiff's criminal convictions, which were barred
19 by stipulation (Dkt. 446); written objections to Tesla's attempts to introduce evidence of new
20 conduct not explored at the first trial (Dkt. 452); and a motion for mistrial that collected all of
21 Tesla's counsel's improper conduct throughout the course of the trial (Dkt. 453). All of these
22 filings cited heavily to the trial transcripts, and the transcripts were thus reasonably necessary for
23 "trial briefing" and thus are recoverable costs under Section 1920. *Golden Bridge*, Case No.
24 5:12-cv-04882-PSG, 2015 WL 13427805 (N.D. Cal Dec. 21, 2015); Dkt. 372 4:23-26.

25     20. **<u>Deposition Transcripts, Video Recordings, and Reporter Attendance Fees:</u>** Attached
26 hereto as **Exhibit 24** is a true and correct copy of Invoice No. 19975** from Chase Litigation
27 Services to CCRLG dated May 29, 2018. This invoice reflects a charge of $1,947.05 paid for
28 Volume 1 of the deposition transcript of Demetric Di-az in this matter. Mr. Di-az's deposition
was necessary because Plaintiff (1) witnessed at least one incident of harassment directed at Mr.

Di-az, and (2) learned about other incidences of harassment in Defendant's factory from Mr. Di-az. Both parties designated Mr. Di-az as a trial witness (Dkt. 237 p. 2) and ultimately relied on video recordings of Mr. Di-az's deposition testimony at trial. (Dkt. 252, 256, 277)

21. Attached hereto as **Exhibit 25** is a true and correct copy of Invoice No. 19979** from Chase Litigation Services to CCRLG dated May 29, 2018. This invoice reflects a charge of $2,183.55 paid for Volumes 1 of the deposition transcript of Owen Diaz in this matter. Defendant noticed this deposition.

22. Attached hereto as **Exhibit 26** is a true and correct copy of Invoice No. 80474 from Bridget Mattos and Associates to CCRLG dated June 19, 2018. This invoice reflects a charge of $1,460.75 paid for the deposition transcripts of Javier Caballero and Victor Quintero in this matter, and a charge of $83.50 paid for reproductions of the deposition exhibits. Mr. Caballero's deposition was necessary because Mr. Caballero racially harassed Plaintiff's son while Plaintiff watched, thus requiring Plaintiff to conduct discovery into Mr. Caballero's conduct. Mr. Quintero's deposition was necessary because he was Plaintiff's second-level manager. Mr. Quintero addressed Plaintiff's claims of racial harassment, and both parties identified Mr. Quintero as a trial witness. (Dkt. 237 p. 7)

23. Attached hereto as **Exhibit 27** is a true and correct copy of Invoice No. 80478 from Bridget Mattos and Associates to CCRLG dated June 19, 2018. This invoice reflects a charge of $1,443.75 paid for the deposition transcript of Rovilla Wetle in this matter, and a charge of $83.50 paid for reproduction of the deposition exhibits. Ms. Wetle's deposition testimony was necessary because she was responsible for addressing Mr. Di-az's complaints of racial harassment, some of which Plaintiff witnessed.

24. Attached hereto as **Exhibit 28** is a true and correct copy of Invoice No. 21625** from Chase Litigation Services to CCRLG dated December 7, 2018. This invoice reflects a charge of $921.60 paid for Volume 2 of the deposition transcript of Demetric Di-az in this matter. Defendant noticed this deposition.

25. Attached hereto as **Exhibit 29** is a true and correct copy of Invoice No. 21622** from Chase Litigation Services to CCRLG dated December 7, 2018. This invoice reflects a charge of $1,198.05 paid for Volume 2 of the deposition transcript of Owen Diaz in this matter.

26. Attached hereto as **Exhibit 30** is a true and correct copy of Invoice No. 7167 from Bridget Mattos and Associates to CCRLG dated December 19, 2018. This invoice reflects a charge of $1,491.30 paid for the deposition transcript of Monica De Leon in this matter, as well as a $345 reporter's fee and $146.00 paid for reproductions of the deposition exhibits. Ms. DeLeon's deposition testimony was necessary because she supervised Plaintiff through a staffing company, CitiStaff. Ms. DeLeon also provided essential testimony regarding the relationship between Tesla and various staffing agencies, like CitiStaff. The information provided by Ms. DeLeon was invaluable to rebutting Defendant's primary defense, that Plaintiff was not its employee. (See, e.g., Dkt. 287) Additionally, Tesla and Plaintiff both identified Ms. DeLeon as a trial witness (Dkt. 237 p. 2).

27. Attached hereto as **Exhibit 31** is a true and correct copy of Invoice No. 7639 from Bridget Mattos and Associates to CCRLG dated December 26, 2018. This invoice reflects a charge of $1,209.15 paid for the deposition transcript of Edward Romero in this matter, as well as a $250 reporter's fee and $104.75 paid for reproduction of the deposition exhibits. Mr. Romero's deposition was necessary because he supervised Plaintiff, received Plaintiff's complaints of harassment, and handled said complaints. Both parties identified Romero as a trial witness. (Dkt. 237 p. 7)

28. Attached hereto as **Exhibit 32** is a true and correct copy of Invoice No. 7748D from Bridget Mattos and Associates to CCRLG dated May 3, 2019. This invoice reflects a charge of $999.50 paid for the deposition transcript of Teresa Kossayian in this matter, as well as a $250 reporter's fee and $183.50 paid for reproductions of the deposition exhibits. Ms. Kossayian's testimony was necessary because she was identified as the person most knowledgeable with respect to West Valley Staffing Group, Inc.'s response to Mr. Di-az's complaints of racial harassment. She also provided testimony regarding the relationship between Defendant and the various staffing companies present in its factory. Plaintiff identified Ms. Kossayian as a trial witness (Dkt. 237 p. 5)

29. Attached hereto as **Exhibit 33** is a true and correct copy of Invoice No. 7807 from Bridget Mattos and Associates to CCRLG dated May 23, 2019. The invoice reflects a "no-show" charge of $250.00 because Mr. Kawasaki did not appear at the noticed date and time, though

CCRLG issued a subpoena and Mr. Kawasaki acknowledged its receipt on May 17, 2019. A copy of the subpoena is attached hereto as **Exhibit 34**. Mr. Kawasaki's testimony was necessary because he supervised Plaintiff, investigated some of Plaintiff's complaints of racial harassment, and testified regarding other incidences of racial harassment in Defendant's factory. Both parties identified Mr. Kawasaki as a trial witness. (Dkt. 237 p. 5)

30. Attached hereto as **Exhibit 35** is a true and correct copy of Invoice No. 8150 from Bridget Mattos and Associates to CCRLG dated June 18, 2019. This invoice reflects a charge of $866.50 paid for the deposition transcript of Wayne Jackson in this matter, as well as a $125 reporter's fee and $104.75 paid for reproductions of the deposition exhibits. Mr. Jackson's testimony was necessary because he oversaw some aspects of Plaintiff's work at Tesla, including investigations of Plaintiff's complaints of racial harassment. Mr. Jackson also provided testimony regarding the relationship between Defendant and the various Both parties identified Mr. Jackson as a trial witness. (Dkt. 237 p. 4)

31. Attached hereto as **Exhibit 36** is a true and correct copy of Invoice No. 8119-DC from Bridget Mattos and Associates to CCRLG dated June 18, 2019. This invoice reflects a charge of $956.25 paid for the deposition transcript of Annalisa Heisen in this matter, as well as a $250 reporter's fee and $163.25 paid for reproductions of the deposition exhibits. Ms. Heisen's testimony was necessary, because Tesla identified her as its Person Most Knowledgeable with respect to Plaintiff's complaints and Defendant's policies and procedures with respect to racial harassment and discrimination. Both parties identified Ms. Heisen as a trial witness (Dkt. 237 p. 4) After Ms. Heisen gave birth during trial, both parties identified and relied on video recordings of her deposition testimony at trial. (Dkt. 265, 271)

32. Attached hereto as **Exhibit 37** is a true and correct copy of Invoice No. 22736** from Chase Litigation Services to CCRLG dated June 18, 2019. This invoice reflects a charge of $617.00 paid for the video of Volume 1 of Owen Diaz's deposition.

33. Attached hereto as **Exhibit 38** is a true and correct copy of Invoice No. 22737** from Chase Litigation Services to CCRLG dated June 18, 2019. This invoice reflects a charge of $342.50 paid for the video of Volume 2 of Owen Diaz's deposition.

34. Attached hereto as **Exhibit 39** is a true and correct copy of Invoice No. 36482 from First Legal Depositions to CCRLG dated June 28, 2019. This invoice reflects a charge of $420.60 paid for the deposition transcript of La'Drea Jones in this matter, as well as $8.25 paid for reproductions of the deposition exhibits. Ms. Jones's deposition was necessary, because Plaintiff identified Ms. Jones as an emotional distress witness in initial disclosures as well as identifying her as a trial witness. (Dkt. 237 p. 5)

35. Attached hereto as **Exhibit 40** is a true and correct copy of Invoice No. 36439 from First Legal Depositions to CCRLG dated June 28, 2019. This invoice reflects a charge of $978.60 paid for the deposition transcript of Titus McCaleb in this matter, as well as $31.35 paid for reproductions of the deposition exhibits. Plaintiff identified Mr. McCaleb as a witness in initial disclosures and for trial. (Dkt. 237 p. 6) Mr. McCaleb worked at Tesla 8 months after Plaintiff left and could testify to the company's inadequate remedial responses to racial harassment.

36. Attached hereto as **Exhibit 41** is a true and correct copy of Invoice No. INV1514889 from Esquire Deposition Solutions to CCRLG dated July 9, 2019. This invoice reflects a charge of $843.50 paid for Volume 3 of the deposition transcript of Owen Diaz in this matter, as well as $54.85 paid for reproductions of the deposition exhibits.

37. Attached hereto as **Exhibit 42** is a true and correct copy of Invoice No. 8199 from Bridget Mattos and Associates to CCRLG dated July 18, 2019. This invoice reflects a charge of $757.25 paid for the deposition transcript of Michael Wheeler in this matter, as well as a $125.00 reporter's fee and $50.00 paid for reproductions of the deposition exhibits. Mr. Wheeler's deposition was necessary because Mr. Wheeler was Plaintiff's coworker and assisted in the investigation of one of Plaintiff's complaints, in addition to telling Plaintiff about other incidences of harassment. Plaintiff identified Mr. Wheeler as a trial witness. (Dkt. 237 p. 8)

38. Attached hereto as **Exhibit F** is a true and correct copy of Invoice No. 900254 from Bridget Mattos and Associates to CCRLG dated April 3, 2023. This invoice reflects a charge of $175.00 for synchronizing the audio recording of Mr. Wheeler's deposition with the video recording, to be played at trial. As noted above, Mr. Wheeler's testimony was necessary to this trial. But also as noted above, Plaintiff was initially unable to serve Mr. Wheeler with a trial subpoena after multiple stake-outs at his home and workplace (see *infra* 4:8-20). After making

numerous attempts at service, Plaintiff could not be certain that Mr. Wheeler could be timely served with a trial subpoena. Believing that Mr. Wheeler would not be served in advance of trial, Plaintiff still sought to secure his testimony at trial via his videorecorded deposition—thus making this charge reasonably necessary to his presentation of his case.

39. Attached hereto as **Exhibit 43** is a true and correct copy of Invoice No. 8204 from Bridget Mattos and Associates to CCRLG dated July 18, 2019. This invoice reflects a charge of $823.75 paid for the deposition transcript of Ludivina Ledesma in this matter, as well as a $125.00 reporter's fee and $81.50 paid for reproductions of the deposition exhibits. Ms. Ledesma's deposition was necessary because CitiStaff, one of Plaintiff's joint employers, identified Ms. Ledesma as its person most knowledgeable with respect to Plaintiff's complaints of harassment and the relationship between CitiStaff and Tesla.

40. Attached hereto as **Exhibit 44** is a true and correct copy of Invoice No. 8209 from Bridget Mattos and Associates to CCRLG dated July 18, 2019. This invoice reflects a charge of $1,170.50 paid for the deposition transcript of Kevin McGinn in this matter, as well as a $250.00 reporter's fee and $167.00 paid for reproductions of the deposition exhibits. Mr. McGinn's deposition was necessary because nextSource, one of Plaintiff's joint employers, identified Mr. McGinn as its person most knowledgeable with respect to Plaintiff's complaints of harassment and the relationship between nextSource and Tesla. Both parties identified Mr. McGinn as a witness (Dkt. 237 p. 6), and designated portions of Mr. McGinn's videotaped deposition to be played at trial. (Dkt. 194)

41. Attached hereto as **Exhibit 45** is a true and correct copy of Invoice No. 29151 from Chase Litigation Services to CCRLG dated August 13, 2019. This invoice reflects a charge of $737.50 paid for the deposition transcript of Lamar Patterson in this matter and $74.25 paid for reproductions of the deposition exhibits. Mr. Patterson's deposition was necessary because Mr. Patterson was Plaintiff's coworker and provided testimony about racial harassment at Defendant's factory during the time Plaintiff worked there. Defendant noticed this deposition.

42. Attached hereto as **Exhibit 46** is a true and correct copy of Invoice No. C11701 from First Legal Depositions to CCRLG dated August 9, 2019. This invoice reflects a charge of $928.04 paid for the deposition transcript of Demetrica Holmes Diaz in this matter. Ms. Holmes

Diaz's deposition testimony was necessary because Plaintiff identified Ms. Holmes Diaz as an emotional distress witness in pretrial disclosures.

43. Attached hereto as **Exhibit 47** is a true and correct copy of Invoice No. A191076 dated October 26, 2019 to Alexander Morrison + Fehr LLP ("AMFLLP", formerly Alexander Krakow + Glick LLP), attorneys of record for Plaintiff Owen Diaz in this matter. This invoice reflects a charge of $1,855.52 paid for the deposition and transcript of Erin Marconi in this matter, including a $78.00 reporter's fee and $68.60 paid for reproductions of the deposition exhibits. Ms. Marconi's testimony was necessary because she worked in Defendant's HR department and received and addressed Plaintiff's complaints of racial harassment. Both parties identified Ms. Marconi as a trial witness. (Dkt. 237 p. 6)

44. Attached hereto as **Exhibit 48** is a true and correct copy of Invoice No. 8461 from Bridget Mattos and Associates to CCRLG dated November 7, 2019. This invoice reflects a charge of $624.25 paid for the deposition transcript of Tamotsu Kawasaki in this matter, as well as a $125.00 reporter's fee and $50.75 paid for reproductions of the deposition exhibits.

45. Attached hereto as **Exhibit 49** is a true and correct copy of Invoice No. 8466 from Bridget Mattos and Associates to CCRLG dated November 7, 2019. This invoice reflects a charge of $553.00 paid for the deposition transcript of Jackelin Delgado in this matter, as well as a $200.00 reporter's fee and $56.00 for reproduction of the deposition exhibits. Ms. Delgado's deposition was necessary because she worked for Chartwell Staffing Services, Inc., the employer of Plaintiff's harasser, Ramon Martinez. Ms. Delgado interviewed Plaintiff following Plaintiff's January 2016 complaint of racial harassment. Both parties identified Ms. Delgado as a trial witness (Dkt. 237 p. 2)

46. Attached hereto as **Exhibit 50** is a true and correct copy of Invoice No. 4789w10 from Torreano Shorthand Reporting Corporation to CCRLG dated November 6, 2019. This invoice reflects a charge of $224.70 paid for the deposition transcript of Andres Donet in this matter, as well as a $120.00 reporter's fee and a $2.00 charge for reproduction of the deposition exhibits. Mr. Donet's testimony was necessary because he worked for Defendant and was responsible for removing graffiti from the bathrooms near where Plaintiff worked, including at least one incident

where he removed the racial slur "nigger" from the bathroom walls. Both parties identified Mr. Donet as a trial witness. (Dkt. 237 p. 3)

47. Attached hereto as **Exhibit 51** is a true and correct copy of Invoice No. 8456 from Bridget Mattos and Associates to CCRLG dated November 7, 2019. This invoice reflects a charge of $690.75 paid for the deposition transcript of Veronica Martinez in this matter, as well as a $125.00 reporter's fee and $53.00 paid for reproductions of the deposition exhibits. Ms. Martinez's testimony was necessary because she interviewed Plaintiff's harasser, Ramon Martinez, following Plaintiff's January 2016 complaint of harassment. Defendant identified Ms. Martinez as a trial witness. (Dkt. 237 p. 6)

48. Attached hereto as **Exhibit 52** is a true and correct copy of Invoice No. 176146 from TSG reporting to CCRLG dated March 17, 2020. This invoice reflects a charge of $359.60 paid for the deposition transcript of Expert Charles Mahla, PhD, in this matter, as well as $158.55 paid for reproductions of the deposition exhibits. Mr. Mahla's deposition testimony was necessary because Mr. Mahla was Plaintiff's retained economic expert, whom Plaintiff identified as a trial witness. (Dkt. 237 p. 5) Defendant noticed this deposition.

49. Attached hereto as **Exhibit 53** is a true and correct copy of Invoice No. 18844 from Synchron Voice and Video Inc. to AMFLLP dated September 2, 2020. This invoice reflects a charge of $100.08 paid for synchronized video recordings of the deposition of Michael Wheeler in this matter.

50. Attached hereto as **Exhibit 54** is a true and correct copy of Invoice No. 20665 from Synchron Voice and Video Inc. to AMFLLP dated October 4, 2020. This invoice reflects charges of (1) $243.08 paid for synchronized video recordings of the deposition of Monica DeLeon, (2) $32.29 paid for synchronized video recordings of the deposition of Andres Donet, and (3) $91.24 paid for synchronized video recordings of the deposition of Victor Quintero.

51. Attached hereto as **Exhibit 55** is a true and correct copy of Invoice No. 31856 from Chase Litigation Services to CCRLG dated September 22, 2021. This invoice reflects a charge of $1,532.60 paid for synchronized video recordings of the deposition of Demetric Di-az.

52. Attached hereto as **Exhibit 56** is a true and correct copy of Invoice No. 340138 from Bridget Mattos and Associates to CCRLG dated September 30, 2021. This invoice reflects

charges of (1) $495.00 paid for synchronized video recordings of the deposition of Edward Romero; (2) $225.00 paid for synchronized video recordings of the deposition of Veronica Martinez; (3) $540.00 paid for synchronized video recordings of the deposition of Erin Marconi; (4) $450.00 paid for synchronized video recordings of the deposition of Annalisa Heisen; and (5) $540.00 paid for synchronized video recordings of the deposition of Monica DeLeon.

53. Attached hereto as **Exhibit 57** is a true and correct copy of Invoice No. 707007 from TSG Reporting to CCRLG dated March 25, 2020. This invoice reflects a charge of $724.45 paid for the deposition transcript of Amy Oppenheimer in this matter, as well as a $171.05 charge for deposition exhibits. Ms. Oppenheimer's deposition testimony was necessary because she was Plaintiff's Human Resources expert in this matter, and Plaintiff identified Ms. Oppenheimer as a trial witness. (Dkt. 237 p. 6) Defendant noticed this deposition.

54. Attached hereto as **Exhibit 58** is a true and correct copy of Invoice No. 707052 from TSG reporting to CCRLG dated March 31, 2020. This invoice reflects a charge of $248.55 paid for the deposition transcript of Dr. Anthony Reading in this matter, as well as a $13.05 charge for reproduction of the deposition exhibits. Dr. Reading's deposition testimony was necessary because he was Plaintiff's psychological expert in this matter, and Plaintiff identified Dr. Reading as a trial witness. (Dkt. 237 p. 7) Defendant noticed this deposition.

55. **Reproduction of Trial Exhibits**: Per the Court's Amended Civil Pretrial Order (Dkt. 142) Plaintiff had to prepare and print three copies of each trial exhibit in advance of the first trial: one for the Court, one for the clerk, and one for the witnesses' use. Plaintiff's trial exhibits encompassed a combined 785 pages. Printing three copies required the printing of 2,355 pages of documents. Plaintiff requests reimbursement in the reasonable amount of $0.25 per page, for a total of $588.75.

56. Per the Court's Amended Civil Pretrial Order (Dkt. 142), Plaintiff had to prepare and print three copies of each trial exhibit in advance of the retrial: one for the Court, one for the clerk, and one for the witnesses' use. Plaintiff's trial exhibits on retrial encompassed a combined 222 pages, and printing three copies required the printing of 666 pages of documents. Plaintiff requests reimbursement in the reasonable amount of $0.25 per page, for a total of $166.50.

57. Attached hereto as **Exhibit G** is a true and correct copy of an invoice from FedEx to CCRLG dated March 20, 2023. This invoice in the amount of $845.60 was for large-format reproductions of Trial Exhibits 2, 133, 39, 76, 242, 272, and 274. Reproductions of these exhibits were "reasonably necessary to assist the jury or the Court in understanding the issues at trial" pursuant to Civil Local Rule 54-3(d)(5), by clearly displaying the conduct and Tesla's response to the jury and allowing Plaintiff to highlight key portions of Tesla's response. Plaintiff provided reproductions of the racist drawing harasser Ramon Martinez left in his work area (Exh. 2), the "Inki the Caveman" cartoon that Martinez based his drawing on (Exh. 133), and Tesla's response to Plaintiff's complaints (Exhs. 39, 76, 242, 272, and 274).

Dated: April 25, 2023                      /s/ Cimone Nunley

Lawrence A. Organ, Esq.
Cimone A. Nunley, Esq.
J. Bernard Alexander, Esq.
Marqui Hood, Esq.
Michael Rubin, Esq.
Jonathan Rosenthal, Esq.
Dustin L. Collier, Esq.
V. Joshua Socks, Esq.
Elizabeth R. Malay, Esq.
Drew F. Teti, Esq.
Attorneys for Plaintiff
OWEN DIAZ