LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD (SBN 214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:    (415)-453-7352
Facsimile:    (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
balexander@amfllp.com
ALEXANDER MORRISON & FEHR LLP
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:    (310) 394-0888
Facsimile:    (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:    (415) 421-7151
Facsimile:    (415) 362-8064

DUSTIN L. COLLIER (SBN 264766)
dcollier@collierlawsf.com
V. JOSHUA SOCKS (SBN 303443)
jsocks@collierlawsf.com
ELIZABETH R. MALAY (SBN 336745)
emalay@collierlawsf.com
DREW F. TETI (SBN 267641)
drew@collierlawsf.com
COLLIER LAW FIRM, LLP
240 Tamal Vista Blvd. Suite 100
Corte Madera, CA 94925
Telephone:   (415) 767-0047
Facsimile:    (415) 767-0037

Attorneys for Plaintiff OWEN DIAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| OWEN DIAZ,<br><br>          Plaintiff,<br><br>     v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.;<br><br>          Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF RENEWED MOTION FOR MISTRIAL AND MOTION FOR A NEW TRIAL**<br><br>Hearing Date: July 19, 2023<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>The Hon. William H. Orrick |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... iii

I.   INTRODUCTION .............................................................................................1

II.  ARGUMENT .....................................................................................................2

    A. Tesla's intentional, pervasive, and egregious misconduct requires a new trial. ...............2

        1.   The Court has broad discretion to order a new trial because Tesla's attorney misconduct likely influenced the jury's calculation of damages. ..............................2

        2.   Tesla deliberately violated the Court's pre-trial orders. .................................3

        3.   Tesla engaged in repeated trial misconduct that severely prejudiced Plaintiff...........5

            a. Tesla disparaged Plaintiff's counsel. .................................................6

            b. Tesla misrepresented inadmissible evidence about the Wheeler feces incident. ...............................................................6

            c. Tesla disclosed Plaintiff's prior settlements with the staffing agencies. ..............8

            d. Tesla falsely accused Plaintiff of harassment without any supporting evidence. ...............................................................8

            e. Tesla asked Mr. Diaz banned questions about his criminal history. ...................9

            f. Tesla baselessly accused Mr. Diaz of forging his doctor's note. ........................10

            g. Tesla disclosed and misrepresented the "dismissal" of Plaintiff's son's case. ...............................................................10

            h. Tesla displayed excluded evidence in closing and urged the jury to improperly base emotional distress damages on Plaintiff's salary. ..................11

            i. Tesla grossly misstated the applicable law in its closing argument. ...................11

        4.   Tesla's counsel's misconduct permeated the damages-only retrial. .........................12

    B. The jury's damages award is contrary to the clear weight of the evidence. ...................14

        1. Mr. Diaz endured rampant and egregious racial harassment.......................................15

        2. Mr. Diaz suffered severe psychological harm. ............................................................17

        3. Mr. Diaz testified credibly and candidly. ....................................................................18

PLAINTIFF'S REPLY ISO RENEWED MOTION FOR MISTRIAL AND MOTION FOR A NEW TRIAL

4. Tesla's responses to the harassment were deficient...................................................19

5. Comparable cases show the inadequacy of the award.................................20

III.  CONCLUSION.....................................................................................................20

PLAINTIFF'S REPLY ISO RENEWED MOTION FOR MISTRIAL AND MOTION FOR A NEW TRIAL

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abromson v. Am. Pac. Corp.*,
  114 F.3d 898 (9th Cir. 1997) ............................................................................13

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980).............................................................................................2

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
  69 F.3d 337 (9th Cir. 1995) ..................................................................2, 12, 13

*Arizona v. Washington*,
  434 U.S. 497 (1978)...........................................................................................3

*B.K.B. v. Maui Police Dep't*,
  276 F.3d 1091 (9th Cir. 2002) ...........................................................................9

*Call Delivery Sys. v. Morgan*,
  2022 WL 18143363 (C.D. Cal. Sept. 20, 2022) ..............................................13

*Carino v. Garland*,
  997 F.3d 1053 (9th Cir. 2021) ...........................................................................1

*Clanahan v. McFarland Unified Sch. Dist.*,
  2007 WL 2253597 (E.D. Cal. Aug. 3, 2007) ............................................13, 14

*Cones v. Cnty. of L.A.*,
  2016 WL 7438817 (C.D. Cal. Sept. 28, 2016) ......................................12, 13, 14

*Corley v. Cardwell*,
  544 F.2d 349 (9th Cir. 1976) .............................................................................2

*Dietz v. Bouldin*,
  579 U.S. 40 (2016)..............................................................................................1

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
  232 F.3d 1258 (9th Cir. 2000) .........................................................................13

*Experience Hendrix LLC v. Hendrixlicensing.com Ltd*,
  762 F.3d 829 (9th Cir. 2014) .....................................................................2, 14

*Globefill Inc. v. Elements Spirits, Inc.*,
  640 F. App'x 682 (9th Cir. 2016) .....................................................................13

*Janich Bros., Inc. v. Am. Distilling Co.*,
  570 F.2d 848 (9th Cir. 1977) ...........................................................................11

PLAINTIFF'S REPLY ISO RENEWED MOTION FOR MISTRIAL AND MOTION FOR A NEW TRIAL

*Jones v. Aero/Chem Corp.*,
   921 F.2d 875 (9th Cir. 1990) ...................................................................................7

*Kehr v. Smith Barney, Harris Upham & Co.*,
   736 F.2d 1283 (9th Cir. 1984) .................................................................................2

*Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*,
   2019 WL 8263440 (N.D. Cal. Nov. 26, 2019) ........................................................7

*Maricopa Cnty v. Maberry*,
   555 F.2d 207 (9th Cir. 1977) .................................................................6, 12, 13, 14

*Maxwell v. Cnty. of San Diego*,
   714 F. App'x 641 (9th Cir. 2017) ..........................................................................13

*Oracle Corp. v. SAP AG*,
   765 F.3d 1081 (9th Cir. 2014) ..........................................................................14, 15

*Passantino v. Johnson & Johnson Consumer Prod.*,
   212 F.3d 493 (9th Cir. 2000) .................................................................................20

*Pavemetrics Sys. v. Tetra Tech*,
   2023 WL 1836331 (C.D. Cal. Jan. 23, 2023) ......................................6, 12, 13, 14

*Searcy v. Jaimet*,
   332 F.3d 1081 (7th Cir. 2003) ...............................................................................10

*SEC v. Jasper*,
   678 F.3d 1116 (9th Cir. 2012) ...............................................................................13

*Settlegoode v. Portland Pub. Sch.*,
   371 F.3d 503 (9th Cir. 2004) ...................................................................................9

*Sharp v. S&S Activewear, L.L.C.*
   69 F.4th 974 (9th Cir. June 7, 2023) ......................................................................15

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
   251 F.3d 814 (9th Cir. 2001) ...................................................................................2

*Turley v. ISG Lackawanna, Inc.*,
   774 F.3d 140 (2d Cir. 2014).....................................................................................20

*United States v. 4.0 Acres of Land*,
   175 F.3d 1133 (9th Cir. 1999) .................................................................................2

*United States v. Sanchez*,
   176 F.3d 1214 (9th Cir. 1999) .................................................................................9

*United States v. Sine*,
   493 F.3d 1021 (9th Cir. 2007) .................................................................................7

*Wilson v. NHB Indus., Inc.*,
    219 F. App'x 851 (11th Cir. 2007) ............................................................................12

*Zhang v. Am. Gem Seafoods, Inc.*,
    339 F.3d 1020 (9th Cir. 2003) ..................................................................................18

**Statutes**

Cal. Civ. Proc. Code § 657(5)...........................................................................................15

**Rules**

Federal Rule of Civil Procedure 59 .....................................................................................2

Federal Rules of Evidence
    Rule 403 ....................................................................................................................10
    Rule 408 ......................................................................................................................8

General Order No. 71............................................................................................................7

# I. <u>INTRODUCTION</u>

Despite the Court's efforts, Mr. Diaz did not receive the fair retrial to which he was entitled. From Tesla's opening statement through its closing argument, it deliberately flouted the Court's pretrial rulings, confident that the damning impact of its improper and highly prejudicial conduct would outweigh any negative effects of judicial admonitions or curative instructions. Fully aware that a retrial that tracked the evidence from the first trial would likely result in another multi-million-dollar damages award, Tesla repeatedly made irrelevant and unsupported bombshell accusations and deliberately cited facts and evidence outside the record, with the goal of demeaning Mr. Diaz's character and motives and impugning his and his witnesses' credibility. No juror could reasonably be expected to erase the cumulative effect of those poisonous moments—which is exactly what Tesla was counting on. The only appropriate remedy in these circumstances is to give Mr. Diaz the choice between a new damages retrial or reinstatement of the prior remittitur. Otherwise, there will be no meaningful consequence for Tesla's counsel's deliberate, pre-planned trial misconduct.[1]

The prejudicial impacts of Tesla's misconduct are confirmed by the glaring disparity between the damages awards in the first and second trial. In neither trial did Tesla offer affirmative evidence that the crucial events—e.g., Timbreza's racial slurs; Martinez's physical assault, racial disparagement, and jigaboo drawing; Hurtado's racist comments; the rampant use of the N-word (including by Mr. Diaz's son's supervisor) and racist graffiti; and the Wheeler

---

[1] Only two principles constrain a district court's "inherent power" to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases": (1) "an inherent power must be a reasonable response to a specific problem" and (2) "the power cannot contradict any express rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45-46 (2016). Tesla does not dispute that offering Mr. Diaz a renewed choice would be a specific response to the allegations that Tesla's misconduct deprived him of his right to a *fair* retrial. Nor does Tesla show that offering that renewed choice would contradict any law. Opp. at 3 n.2. It would not be an additur, because the retrial jury's verdict will be null and void if the Court declares a mistrial or requires a new trial. It also would not violate the Seventh Amendment. After the first trial, the Court granted *Tesla's* request, Dkt. 317 at 11-17, for a remittitur with the option for Mr. Diaz to choose a new trial instead (to protect *his* Seventh Amendment rights). Dkt. 328 at 14, 43. Offering that choice did not infringe Tesla's right to a jury trial then, Dkt. 365 at 10-15, and would not infringe it now. *Carino v. Garland*, 997 F.3d 1053 (9th Cir. 2021) is inapposite, as no *nunc pro tunc* order would be required to offer Mr. Diaz a renewed choice. Nor would the requested order cause undue prejudice to Tesla, which should not be allowed to benefit from its own wrongdoing—including by imposing a third trial on Mr. Diaz and his witnesses.

PLAINTIFF'S REPLY ISO RENEWED MOTION FOR MISTRIAL AND MOTION FOR A NEW TRIAL

feces incident—did not occur. As in the first trial, the admissible evidence overwhelmingly establishes that Mr. Diaz suffered pervasive racial harassment and devastating emotional distress. The retrial jury's damages award is wildly out of line with that evidence.

## II. <u>ARGUMENT</u>

### A. <u>Tesla's intentional, pervasive, and egregious misconduct requires a new trial.</u>

#### 1. <u>The Court has broad discretion to order a new trial because Tesla's attorney misconduct likely influenced the jury's calculation of damages.</u>

Whether to order a new trial is "confided almost entirely to the exercise of discretion [of] the trial court," *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980), because of its "superior position to gauge the prejudicial impact of counsel's conduct during the trial." *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995). The trial court also "has … broad discretion in granting a mistrial." *Corley v. Cardwell*, 544 F.2d 349, 351 (9th Cir. 1976).

While Tesla contends that courts are powerless to order a new trial in response to attorney misconduct if the jury *could* have reached that same verdict absent that misconduct, Opp. (Dkt. 481) at 2, 5, 15, courts may order a new trial under Rule 59 "even if substantial evidence supports the jury's verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001); *see United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). A new trial may be ordered "on any ground necessary to prevent a miscarriage of justice," *Experience Hendrix LLC v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014), including because attorney misconduct deprived a party of a fair trial, *Anheuser-Busch*, 69 F.3d at 346. Tesla's insistence that some "evidence supports the jury's verdict," Opp. at 15, is thus irrelevant. Indeed, its proposed standard would enable any party with *some* untainted evidence to engage in deliberate misconduct without consequence.

In assessing misconduct, the Court must focus on the prejudicial impacts on the jury (here, in its calculation of emotional distress and punitive damages). *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984). "Where misconduct permeates the proceeding, the jury is 'necessarily prejudiced.'" *Anheuser-Busch*, 69 F.3d at 346 (quoting *Kehr*, 736 F.2d at 1286). That the Court issued curative instructions after *some* of Tesla's misconduct,

Opp. at 2, is not determinative, for such instructions are often insufficient to cure misconduct:

> The trial judge, of course, may instruct the jury to disregard the improper comment. …. Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous … counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases.

*Arizona v. Washington*, 434 U.S. 497, 512–13 (1978).

### 2. **Tesla deliberately violated the Court's pre-trial orders.**

The Court's pre-trial rulings required the parties to limit their facts and evidence on retrial to what was admitted in the first trial. The January 17, 2023 Order set forth the Court's overarching command that "[t]he parties will be bound by the choices made in the original trial" and that "evidence regarding different/new incidents and new witnesses will be prohibited." Dkt. 376. Contrary to Tesla's contention, Opp. at 6, that order necessarily applied to cross-examination and impeachment testimony, because "evidence" includes testimony as well as documents, and because "regarding different/new incidents" encompasses all factual incidents, whether raised on cross or direct.

At the January 17, 2023 hearing, the Court confirmed that the parties' retrial evidence must hew as closely as possible to the damages-related evidence from the first trial:

> MR. GRIFFIN: … *But to the extent we wanted to use documents … that may have been deposition exhibits but not admitted in the first trial*, we wanted the Court's guidance on – on whether or not we would have the opportunity to make different strategic decisions on what – how to use certain documents … with certain witnesses in the retrial.
> THE COURT: Yeah. And, again, generally I think my – *my instinct is no*, that *the record is* – is *the record*. …

1/17/23 Tr. (Dkt. 379) at 12:14-22 (emphasis added); *see also id.* at 3:18-4:1 ("I would allow what was admitted before."), 11:12-19 ("the shape of the case on all the other issues I was hoping to have as consistent with the first one as possible").

The Court's in limine rulings confirmed that no new facts, documents, or testimony would be permitted on retrial, including for cross-examination or impeachment. The Court invited the parties to file motions in limine ("MILs") *before* trial if they needed any clarification or sought any exceptions from that default rule. Dkt. 376; 1/17/23 Tr. at 12:21-25. The Court then granted Plaintiff's MIL #2, which sought "confirm[ation] that Tesla is precluded from eliciting testimony that goes beyond the scope of testimony at the first trial." MIL Order (Dkt.

417) at 4-5; Dkt. 382 at 4. While Tesla tries to limit that ruling to its *own* witnesses' *direct* testimony, Opp. at 8, testimony is "elicited" whether it is sought on cross or direct; and the whole point of MIL #2 was to confirm that "counsel cannot ask questions of witnesses that are designed to elicit testimony containing new information beyond what the witness testified to at the first trial." Dkt. 382 at 6; *see also* MIL Order at 5 (testimony beyond the scope of what was admitted at the first trial is objectionable). The Court also denied Tesla's MILs seeking leave to present four documents and two witnesses it failed to introduce in the first trial—*even though Tesla sought leave to use those documents and testimony for impeachment*. MIL Order at 1-3; Tesla MILs (Dkt. 381) at 2 (offering Hurtado as impeachment witness), 10 (exhibits to impeach Diaz). As the Court explained, those rulings were consistent with "the purpose and spirit of my order limiting new evidence[.]" MIL Order at 2; *see id.* at 3 ("my prior order precludes admission of new evidence … and these exhibits are plainly new evidence").

At the pretrial conference, Tesla again pushed back only to have the Court reiterate that Tesla must limit its questions, including those going to impeachment or credibility, to the facts and evidence presented at the first trial:

> MR. GRIFFIN: …We're not going into other instances of discriminatory conduct and – but to the extent we, as Tesla's lawyers, want to ask questions in context for credibility, it's – we don't have to read the questions that they asked the first time.
> COURT: Exactly right.
> MR. GRIFFIN: *So we can go through and try to put these instances that we – were already in the record in context in the way we think is appropriate.*
> THE COURT: You are not bound – you're bound to the strategies that your – the prior counsel for Tesla … employed, but you're not bound to every question that they asked. And *you can bring out whatever you're able to bring out from the evidence that was – existed before.*

2/27/23 Tr. (Dkt. 416) at 6:6-19 (emphases added). The Court emphasized that "the parties are stuck with the decisions they made … that resulted in the evidence that was presented at the first trial," *id.* at 4:10-12, meaning "[n]o new incidents," *id.* at 5:2-3.

The Court's pre-trial orders about the scope of retrial were unambiguous. They were written to protect both parties' due process rights by ensuring that the second jury's damages analysis would rest on the same basic evidence as the first jury relied upon in finding liability. Tesla fully understood those restrictions, which is why it submitted two MILs seeking leave to use several (but as we learned, not all) of its new documents and testimony for impeachment.

PLAINTIFF'S REPLY ISO RENEWED MOTION FOR MISTRIAL AND MOTION FOR A NEW TRIAL

That Tesla chose not to ask the Court's advance permission to use its most explosive and prejudicial new evidence powerfully confirms that its violations of the Court's orders were deliberate. Tesla knew that the Court would have said no had it submitted a MIL seeking leave to use Exhibit 410 (the Wheeler feces emails) or to ask questions or present "rebuttal" evidence about whether Mr. Diaz had made racist and misogynistic comments to Ms. Navarro and Ms. DelaGrande, had lied about his criminal history, had forged a doctor's note, etc. Tesla's after-the-fact effort to claim that the Court's pretrial rulings only applied on direct examination is a transparent pretext to justify its deliberate strategy of trial by ambush.

Tesla knew full well what impact its improper questions would have on the jury's assessment of Mr. Diaz's and his witnesses' credibility and motives. There can be no other explanation for Tesla's decision not to alert Plaintiff or the Court to Exhibit 410 in advance, but to spring it upon key witness Michael Wheeler mid-trial, before Mr. Diaz's counsel could review it—thus enabling Mr. Spiro to ask a string of improper (and misleading) questions about its contents, which he purported to read from the inadmissible document. *See* Tr. 2: 368:14-371:8; 4:701:19-21 (Court: Mr. Spiro "exaggerated" the contents). Tesla also has no excuse for not seeking permission to ask Mr. Diaz about calling Ms. Navarro a "dumb Mexican" and about making sexual overtures to Ms. DelaGrande, knowing that the rules precluded such provocative questions without a confirming witness—and that neither Ms. Navarro (who did not testify at the first trial) nor Ms. DelaGrande (whose first trial testimony was inconsistent with that accusation) could provide confirming testimony. Knowing that the Court would say no, Mr. Spiro chose to lie in wait, embedding those explosive accusations in his examination of Mr. Diaz, confident that his questions would achieve their desired effect no matter what the Court might later say about the questions of counsel not constituting evidence. Tesla's deliberate gamesmanship and repeated violations of the Court's orders, especially in combination with the many other examples of attorney misconduct, require a new and *fair* retrial.

### 3. **Tesla engaged in repeated trial misconduct that severely prejudiced Plaintiff.**

Tesla's bold assertion that "Mr. Diaz fails to identify any attorney misconduct by Tesla at all," Opp. at 5, ignores that the Court repeatedly admonished Mr. Spiro for his improper conduct and sustained many of Plaintiff's objections and motions to strike—all because Mr. Spiro

deliberately and repeatedly violated the Court's orders and his ethical obligations. *See Maricopa Cnty v. Maberry*, 555 F.2d 207, 217–18 (9th Cir. 1977) (requiring new trial where counsel violated ABA rules of professional conduct).

### a. Tesla disparaged Plaintiff's counsel.

Plaintiff's MIL #5 sought to prevent Tesla from engaging in *ad hominem* attacks on Mr. Diaz's counsel. Dkt. 382 at 13-14. After Tesla promised that it had "no intention" of disparaging counsel, Dkt. 390 at 8 n.4, the Court denied Plaintiff's MIL while "caution[ing] Tesla that it may not improperly imply that Diaz's counsel somehow affected the liability finding," Dkt. 417 at 6. Yet Tesla brazenly did *exactly that*. Tr. 1:248:3-6. Tesla now contends it needed to "rebut" the "civil rights" reference in Mr. Diaz's "misleading" opening-statement slide. Opp. at 7. But that slide—which was produced to Tesla five days *before* trial (and which had been used in the first trial)—accurately identified the names and law firms of Mr. Diaz's counsel, including the California Civil Rights Law Group. Moreover, Tesla's liability for violating Mr. Diaz's civil rights had long since been established.[2] If Tesla had any legitimate basis for objecting to that slide, it could have done so before opening statements. Instead, it went for the rhetorical hit job, using Mr. Organ's business name as an excuse to improperly "insinuate[] this was a trial about … greed instead of" civil rights, *Pavemetrics Sys. v. Tetra Tech*, 2023 WL 1836331, at *4 (C.D. Cal. Jan. 23, 2023)—a theme it improperly and prejudicially pursued throughout trial.[3]

### b. Tesla misrepresented inadmissible evidence about the Wheeler feces incident.

In questioning Mr. Wheeler, Mr. Spiro repeatedly misrepresented the contents of new Exhibit 410, which he purported to quote in order to create the false impression that Mr. Wheeler had lied about the feces incident. Mot. (Dkt. 478) at 7-12. At trial, the Court ruled that Mr.

---

[2] Tesla also refers to the home-page background on Plaintiff's paralegal's iPad, but there is no evidence that any juror saw or was affected by that background.

[3] For example, Mr. Spiro reinforced Tesla's "greedy plaintiff" theme by wrongfully accusing Mr. Wheeler of having received a solicitation from Mr. Diaz filled with images of "dollar bills." Tr. 2:373:6-24, 374:3-7. *Yet Mr. Spiro knew from Wheeler's deposition testimony that the dollar-bills image was not from Mr. Diaz but from Wheeler's own cell phone background*. Dkt. 453 at 14-15; Dkt. 453-4 at 2. Questioning a witness about a "fact" counsel knows to be untrue is unethical and improper. Tesla asked anyway, to underscore its theme that Mr. Diaz and Mr. Wheeler were untrustworthy and undeserving and had conspired to make false allegations of racial harassment in order to get rich at Tesla's expense.

Spiro's repeated references to this email chain violated the Court's order granting Plaintiff's MIL #2 and were doubly improper because Tesla had failed to produce those emails in discovery in violation of General Order No. 71. Tr. 4:701:8-24; Dkt. 441 at 3-5; *see Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990). Even after the Court held Exhibit 410 inadmissible, Mr. Spiro persisted in asking Mr. Wheeler pointed questions about its supposed contents. Tr. 2:368:14-371:8; *see United States v. Sine*, 493 F.3d 1021, 1031 (9th Cir. 2007) ("questioning that repeatedly incorporates inadmissible evidence can be just as improper as the direct admission of such evidence").[4] Those questions deliberately mischaracterized the emails, suggesting they showed that the feces ended up on Mr. Wheeler's cart because "somebody got sick and they needed to race that person to get them some help," the feces incident "wasn't racial at all," and Wheeler was "told … that in an e-mail." Tr. 2:367:11-13, 22-24. In fact, the emails were far more ambiguous: in response to Mr. Wheeler's concern that the planting of feces on his driver's seat seemed to be a "hate crime," Tesla merely promised to "investigat[e]" whether a sick person "may" have ridden in the cart—but there is no evidence of any such investigation. Dkt. 440-1. Moreover, Tesla's failure to timely disclose the email chain (which it did not produce until *after* Mr. Wheeler was excused) or Mr. Wheeler's accompanying photographs (which it *never* produced) made timely rebuttal of Mr. Spiro's dramatic mischaracterizations impossible.

Tesla knew that Mr. Wheeler was one of Mr. Diaz's most important witnesses, which is why Tesla's MIL #4 sought to exclude his testimony regarding that racist conduct. *See* Dkt. 381 at 11-13; Dkt. 417 at 9 (finding Wheeler testimony relevant to emotional distress and reprehensibility). By improperly seeking to impugn Mr. Wheeler's credibility through the deliberate misuse of an inadmissible, undisclosed, and incomplete document, Tesla likely caused

---

[4] Mr. Wheeler never "denied any knowledge of" the email chain. Opp. at 9. What he denied were Mr. Spiro's false assertions that mischaracterized the document's contents and what actually happened. Tr. 2:367:11-368:13. Introducing the emails would not have impeached those responses. Regardless, Tesla has no justification for failing to produce that document in discovery or for violating the Court's MIL order. *See Lil' Man In The Boat, Inc. v. City & Cnty. of San Francisco*, 2019 WL 8263440, at *4 (N.D. Cal. Nov. 26, 2019). Also, while Tesla asserts that Mr. Wheeler was inconsistent about whether he sat in the feces, Opp. at 8, the truth would have been clear if Tesla had produced Mr. Wheeler's photographs, and its non-production requires the Court to draw an adverse inference about what those photographs would show.

the jury to doubt the legitimacy of Mr. Diaz's entire case. Even if the Court had given a curative instruction as requested (Tr. 5:1008:18-1009:4), there would be no way to undo the damage.

### c. Tesla disclosed Plaintiff's prior settlements with the staffing agencies.

Tesla also violated the Court's pretrial orders by improperly asking Mr. Diaz about his prior staffing-agency settlements, thus going well beyond the permissible scope of the damages retrial and Federal Rule of Evidence 408, which prohibits eliciting evidence of a settlement "either to prove or disprove the validity or amount of a disputed claim." That is exactly what Tesla did, asking about the settlements to suggest that Mr. Diaz had already been compensated and is thus undeserving of additional damages. Tesla tries to fit within Rule 408(b)'s exceptions by spinning its improper questions as pertaining to Mr. Diaz's "bias or prejudice," Opp. at 10, but does not explain how settlements with some but not all defendants show bias or prejudice. The obvious prejudice to Mr. Diaz resulting from Tesla's wrongful disclosures also greatly outweighed any potential probative value, especially because Tesla's counsel immediately used that "evidence" to further impugn Mr. Diaz, Mot. at 13, diminishing him in the jury's eyes as an opportunistic fraud just looking for a huge payday.

### d. Tesla falsely accused Plaintiff of harassment without any supporting evidence.

This Court has already ruled that Mr. Spiro's bombshell accusations of racial and sexual harassment *by Mr. Diaz* were so "clearly irrelevant" and prejudicial they must be stricken. Tr. 5:905:12-14. Tesla continues to insist those questions were relevant to whether Martinez's elevator assault of Mr. Diaz was "racially motivated." Opp. at 10. But Ms. DelaGrande had nothing to do with the elevator assault and testified at the first trial that "the only issues I had with Owen were based on his performance," 1st Trial Tr. at 5:749:3-4, and Martinez's description of what some unidentified woman told him is completely different from what Tesla now claims Ms. Navarro had said. *See* Tr. 3:579:21-580:6; Dkt. 481-1. Besides, if Tesla believed that Martinez (a current Tesla employee) would support its damning tale, it would have asked him to confirm what Mr. Diaz supposedly said. Tesla's failure to ask supports the reasonable inference that it knew that Martinez would not corroborate Mr. Spiro's accusation. Tesla's improper questions had no conceivable purpose other than to wrongfully inflame the jury, depicting Mr. Diaz as a racist and misogynist who sought to hide the real truth from the jury.

Tesla cannot dispute that those questions also violated the fundamental rule against asserting facts on cross-examination for which there is no evidence in the trial record—a rule that Mr. Spiro, who claimed to have handled more than 75 jury trials, willfully ignored. *See United States v. Sanchez*, 176 F.3d 1214, 1223 (9th Cir. 1999); Tr. 2:480:5. Whether Tesla believed its accusations had a "good faith basis" is irrelevant, Opp. at 10-11, because Tesla knew it could not present any confirming testimony from Ms. DelaGrande or Ms. Navarro. Not only did Tesla strategically decide not to file a MIL to permit that new testimony, but it never designated Ms. Navarro as a trial witness and its disclosure of Ms. DelaGrande was limited to testimony "regarding Mr. Diaz's claims of harassment by Mr. Hurtado." Dkt. 372 at 10.[5]

The impropriety of Tesla's questions is "plain [and] obvious" and "prejudice[d]" Plaintiff's right to a fair jury trial, thus requiring a new trial to "prevent a miscarriage of justice." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 517 (9th Cir. 2004). New trials are often ordered in response to character assassination directed against harassment victims. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1098 (9th Cir. 2002); Mot. at 15-16. Tesla's attacks obviously registered with the jurors, some of whom took notes. Tr. 4:778:20-21. The Court's next-day instructions could not have cured that prejudice either, because they only stated, in general terms, that "the lawyers' questions … involv[ing] … racial slurs … are not evidence," Tr. 5:1036:7-17, thereby seeming to equate *Mr. Diaz's* counsel's completely proper questions about the N-word with Mr. Spiro's grossly improper questions about Mr. Diaz's alleged racial slurs against Ms. Navarro (while not addressing Mr. Spiro's equally improper questions accusing Mr. Diaz of making *sexually suggestive* comments to Ms. DelaGrande, Tr. 5:1018:20-1019:1).

### e. Tesla asked Mr. Diaz banned questions about his criminal history.

This Court previously ruled that Mr. Spiro's questions about the redacted criminal history section on Mr. Diaz's job application violated the court-approved stipulation excluding all evidence of Mr. Diaz's criminal history, Dkt. 180, because the questions "[went] directly to the issue that was excluded." Tr. 4:704:23-25; *see* Tr. 3:643:19-23 (asking about "your answer to a

---

[5] Tesla's contention is also undercut by its own declaration, which says nothing about Mr. Diaz calling Ms. Navarro a "dumb" Mexican. *See* Tr. 4:727:12-15; Dkt. 481-1 ¶¶ 3-4. Mr. Spiro fabricated that to turn the jurors against Mr. Diaz for reasons having *nothing* to do with the case.

top part of the application that's redacted"); Ex. 204. Mr. Diaz's criminal history from 30 years ago is plainly irrelevant and highly prejudicial. Mr. Spiro knew this, yet he persistently tried to goad Mr. Diaz into either revealing that history or appearing evasive, even after the Court instructed Mr. Spiro to move on. Tr. 3:645:2-22. Although Mr. Diaz avoided discussing his criminal history, that likely harmed his credibility with the jury, because his efforts to avoid answering the question made him appear defensive, uncooperative, and untrustworthy—just as Tesla intended. Tr. 3:643:19-645:22. There was no way Mr. Diaz could have avoided that perception without introducing his criminal history and thereby suffering even more prejudice. Tesla may have been generally entitled to "impeach" Mr. Diaz, Opp. at 12, but not on a subject expressly excluded by Court order, especially given the high likelihood that any impeachment would reveal the criminal history itself, the prejudice of which vastly outweighs any probity of alleged inaccuracies. *See* Fed. R. Evid. 403.

### f. Tesla baselessly accused Mr. Diaz of forging his doctor's note.

Tesla does not dispute that its persistent (and unsupported) accusations that Mr. Diaz had forged a doctor's note after his mother's death were outside the scope of the first trial. Moreover, Tesla's brief confirms that those accusatory questions had no factual support other than Mr. Spiro's assertion that to him, the doctor's note and Mr. Diaz's handwriting looked "similar[.]" Opp. at 13; *Searcy v. Jaimet*, 332 F.3d 1081, 1088 (7th Cir. 2003) ("purely conjectural or speculative cross-examination is neither reasonable nor appropriate"). Even after the Court upheld Plaintiff's objection, Tesla repeated its insupportable accusations, Tr. 4:800:5-7, again conveying the impression that the Court was blocking Tesla's right to get at the truth and that Mr. Diaz was a liar and a fraud. While the Court instructed the jury to disregard those questions as "outside the scope and immaterial to damages," Tr. 5:1019:6-9, the cumulative effect of Tesla's efforts to attack Mr. Diaz through a series of false and inflammatory accusations inevitably had a significant adverse impact on the jury's assessment of the *relevant* evidence.

### g. Tesla disclosed and misrepresented the "dismissal" of Plaintiff's son's case.

Tesla also had no justification for bringing up Demetric Di-az's case and then telling the jury that it "got dismissed." Tr. 4:753:3-8. Those questions were well outside the evidence presented at the first trial. By mischaracterizing Di-az's settlement as a dismissal, Tesla sought to

imply that a court had dismissed that case as lacking merit, thus suggesting that Mr. Diaz's case lacked merit as well. Tesla had no justification for those improper questions, which were outside the scope, irrelevant, and far more prejudicial than probative.

### h. Tesla displayed excluded evidence in closing and urged the jury to improperly base emotional distress damages on Plaintiff's salary.

Tesla does not deny that it deliberately displayed a closing-argument slide to the jury that highlighted evidence the Court had excluded (Mr. Diaz's purported $48,000 yearly salary) and then falsely insisted to the Court and jury that the evidence had been admitted. Tr. 5:1115:22, 1116:3-6; *see Janich Bros., Inc. v. Am. Distilling Co.*, 570 F.2d 848, 860 (9th Cir. 1977) ("it is improper in closing argument to make reference … to matters not in evidence"). Mr. Spiro also engaged in misconduct by repeatedly urging the jury to base its compensatory damages on Mr. Diaz's supposed salary, Tr. 5:1116:8-1117:9; Mot. at 20-21, given the Court's previous ruling that compensatory damages must be based on "emotional distress" and "not [on] anything else" and that Mr. Diaz's wages were "not related to emotional distress." Tr. 4:805:6-8, 806:1-3. Tesla nonetheless deliberately invited the jury to base its award on the improper grounds of Mr. Diaz's wages—an invitation the jury apparently accepted, given that its award of past damages was roughly twice his supposed yearly wage. (Contrary to Tesla's assertion, the Court did not issue a curative instruction in response to that misconduct).

### i. Tesla grossly misstated the applicable law in its closing argument.

On the last day of trial, in response to Plaintiff's objection, the Court revised its jury instructions to make clear that Mr. Diaz's compensatory damages were *not* limited to harms caused by Tesla's racially hostile work environment but also included harms caused by Tesla's negligent hiring or supervision, which could include *non-race-based* violence and threats. Mot. at 22. Despite this ruling, Mr. Spiro repeatedly asserted during his closing argument that the jury was powerless to award compensation based on any harms caused by Mr. Martinez's assault or any other wrongful conduct that was not racially motivated. Far from making just one "passing comment," Opp. at 15, Mr. Spiro began his closing with that false statement of law, Tr. 5:1082:12-16, and repeatedly hammered that point home, returning to it at least eight more times. Tr. 5:1088:6-21, 1089:10-12, 1089:18-20, 1094:11-12, 1098:24-25, 1100:23, 1103:10-11,

1118:8-9. That was plain and obvious misconduct, as it directly contradicted the Court's legal instructions on a crucial issue. Mr. Diaz's repeated references to Mr. Martinez's violent attack as *not* being race-based (as if that excused Tesla's failure to supervise him), especially in conjunction with Tesla's other misconduct, further deprived Mr. Diaz of his right to a fair trial. *See Wilson v. NHB Indus., Inc.*, 219 F. App'x 851, 853–54 (11th Cir. 2007). Tesla's contention that as long as the *Court's* jury instructions correctly state the law, counsel is free to misrepresent the legal standards governing a key disputed issue, Opp. at 15, is simply wrong.

### 4. <u>Tesla's counsel's misconduct permeated the damages-only retrial.</u>

Tesla's counsel's misconduct was pervasive and irreparably damaging. In its nine hours of trial time, Tesla blatantly violated the Court's orders on the scope of retrial evidence; made ad hominem attacks on Plaintiff's counsel; implied that Mr. Diaz's claims were motived by greed; attacked one of Mr. Diaz's most important witnesses with damning questions that mischaracterized inadmissible and wrongfully withheld evidence; cross-examined Mr. Diaz about inflammatory and forbidden matters without any evidentiary support, including by accusing him of racial and sexual harassment and forgery; disclosed irrelevant, prejudicial information including Mr. Diaz's and his son's settlements; and, in closing, purposefully displayed excluded evidence to the jury, urged it to base damages on improper grounds, while repeatedly misstating the applicable legal standard. *Supra* at 5-12. This deliberate, repeated misconduct *had* to have affected the jury's calculation of compensatory and punitive damages.

Under these circumstances, a new trial is required. *See Anheuser-Busch*, 69 F.3d at 347 (counsel "repeatedly and impermissibly elicited testimony and made references to matters previously ruled inadmissible with the sole purpose of bringing to the jury something it should not have heard" by violating MILs, making irrelevant allegations of sexist and racist behavior, and using excluded evidence in closing); *Maricopa Cnty.*, 555 F.2d at 217-18 (counsel embedded irrelevant and prejudicial information lacking any record support in cross-examination); *Pavemetrics*, 2023 WL 1836331, at *4-5 (counsel made improper statements in cross-examination and closing, implied case was motivated by greed, and accused opponent of improper conduct without record evidence); *Cones v. Cnty. of L.A.*, 2016 WL 7438817, at *8

(C.D. Cal. Sept. 28, 2016) (counsel made groundless and inflammatory accusations on cross-exam and tried to "back-door" inadmissible evidence through questioning).[6]

Whether misconduct "sufficiently permeates an entire proceeding" is not determined by counting the number of offending lines in the transcript, Opp. at 2, but by assessing the likelihood that the "jury was influenced" by the misconduct due to its salience and likely prejudice. *Anheuser-Busch*, 69 F.3d at 346; *see Maricopa Cnty.*, 555 F.2d at 217-19 (single cross-examination question was "highly devastating"). Nor is each instance of misconduct viewed in isolation, Opp. at 7, but "cumulative[ly]." *Pavemetrics*, 2023 WL 1836331, at *5; *Cones*, 2016 WL 7438817, at *9 (citing *Anheuser-Busch*, 69 F.3d at 346).

Tesla's misconduct permeated the trial because its counsel deliberately and frequently posed improper questions and statements at "critical moments," "including cross-examination of key witnesses and closing," *Pavemetrics*, 2023 WL 1836331, at *5; *Cones*, 2016 WL 7438817, at *9, that combined into devastating attacks on Mr. Diaz's and his key witness's credibility on critical issues. *See Clanahan v. McFarland Unified Sch.* Dist., 2007 WL 2253597, at *8 (E.D. Cal. Aug. 3, 2007) (purposeful "synergistic misconduct"); *Globefill Inc. v. Elements Spirits, Inc.*, 640 F. App'x 682, 684 (9th Cir. 2016) ("misconduct sufficiently permeated the entire proceeding because it undermined [plaintiff's] credibility on the determinative issue in the case"); *Call Delivery Sys. v. Morgan*, 2022 WL 18143363, at *4 (C.D. Cal. Sept. 20, 2022) (same).

None of Tesla's misconduct was accidental. Recognizing that the retrial would be restricted to the same evidence that resulted in the earlier $6.9 million compensatory damages award, Tesla's new lawyers embarked on a deliberate strategy to attack Mr. Diaz as a money grubbing, racist, misogynistic liar. Tesla engaged in defense-by-character-assassination, flouting the Court's rulings by knowingly asking improper questions, even after repeatedly being told to stop. *See* Tr. 4:709:13-14 (Court: "You are not very good at taking a hint, Mr. Spiro."). No remedy *other* than a new trial order plus reinstatement of the prior remittitur offer could cure the

---

[6] Tesla's cases, by contrast, concerned substantially less egregious misconduct and far fewer instances. *See, e.*g., *Abromson v. Am. Pac. Corp.*, 114 F.3d 898, 903 (9th Cir. 1997) (one improper statement in opening); *SEC v. Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012) ("small number of isolated statements" in closing); *Maxwell v. Cnty. of San Diego*, 714 F. App'x 641, 645 (9th Cir. 2017) ("isolated remarks" in opening and closing); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1271 (9th Cir. 2000) ("a few sustained objections").

resulting prejudice and deter such a callous trial strategy going forward. *See Maricopa Cnty.*, 555 F.2d at 219 ("deliberate" misconduct was committed by "skilled and veteran counsel" who knew better); *Cones*, 2016 WL 7438817, at *9 (counsel continued "undeterred despite multiple admonitions"); *Clanahan*, 2007 WL 2253597, at *8 ("calculated and intentional" misconduct).[7]

Despite some curative instructions from the Court, no reasonable juror could wipe Tesla's wrongful conduct from their mind. The sheer amount of misconduct, and its highly prejudicial nature, made that impossible. *See Maricopa Cnty.*, 555 F.2d at 218 ("any impression … made upon the jury could not be wiped out by an ordinary instruction to disregard it"); *Pavemetrics*, 2023 WL 1836331, at *4 (court finding its curative instructions were insufficient to cure pervasive misconduct); *Cones*, 2016 WL 7438817, at *9 (same). The Court did not issue any curative instructions responding to the improper questions about "Exhibit 410," Plaintiff's settlement, and Plaintiff's criminal history, or to any of Mr. Spiro's misconduct during closing.

It has already been established that, absent Tesla's counsel's misconduct, Mr. Diaz's evidence could support a significantly higher damages award. Based on the same *admissible* evidence, the first jury awarded $6.9 million and $130 million in compensatory and punitive damages, and the Court's remittitur confirmed that $1.5 million and $13.5 million in compensatory and punitive damages were constitutionally permissible on the facts of record. Dkt. 328. The huge difference between those results and the paltry amounts awarded on retrial can only confirm the effect of Tesla's misconduct on the retrial jury, which deprived Mr. Diaz of the fair damages retrial the Court had ordered and to which he was constitutionally entitled.

**B. The jury's damages award is contrary to the clear weight of the evidence.**

A district court considering a new trial motion is entitled to "weigh the evidence and assess the credibility of the witnesses" *Experience Hendrix*, 762 F.3d at 842, and should grant a new trial where "it is quite clear that the jury has reached a seriously erroneous result." *Oracle*

---

[7] Tesla engages in irrelevant what-aboutism by falsely accusing Plaintiff's counsel of equally improper conduct. Opp. at 5-6. The cited conduct was either not improper or was inadvertent and non-prejudicial. *See, e.g.*, Dkt. 417 at 2 (allowing reference to Hurtado's absence); Tr. 3:520:3-5 (honest mistake); Tr. 2:405:9-16, 3:603:3-10, 4:745:23-746:7 (off-the-cuff witness statements not prompted by purposeful questioning); Tr. 5:964:13-18 (single "asked and answered" objection on Delgado's cross); Tr. 5:995:17-23 (mere request to impeach with deposition testimony). Tesla does not contend it suffered *any* prejudice from these instances.

*Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014); *see also* Cal. Civ. Proc. Code § 657(5).[8] Tesla does not dispute that a district court may order a new trial for inadequate damages. Here, the admissible retrial *evidence* establishes that the jury's award falls far short of any amounts that reasonably could be considered sufficient to compensate Mr. Diaz and to punish and deter Tesla.

### 1. Mr. Diaz endured rampant and egregious racial harassment.

Tesla does not dispute most of Mr. Diaz's evidence establishing the horrific and pervasive racial harassment he was forced to endure, Mot. at 24-27, and does not cite any affirmative evidence that contradicts that identified harassment. Instead, it offers flimsy excuses for its harassing behavior, quibbling over peripheral details while dismissing Mr. Diaz's consistent and largely uncontradicted testimony as lacking "corroboration" or "documentation," Opp. at 17-20, even though there is no *admissible* basis in the record for disbelieving Mr. Diaz, whose most critical testimony was amply corroborated. None of Tesla's arguments detract from the powerful evidence of racial discrimination and suffering that this Court previously found sufficient to justify an eight-figure compensatory and punitive damages award.

Tesla does not dispute that use of the N-word was endemic in the Tesla factory. Mot. at 24. Instead, it makes the shocking argument that the offensive language was permissible because it was *sometimes* used in a "friendly" manner. Opp. at 21-22. The Ninth Circuit recently rejected that same argument in a sexual harassment case regarding playing music with derogatory terms in the workplace. *Sharp v. S&S Activewear, L.L.C.* 69 F.4th 974, at *5 (9th Cir. June 7, 2023). The Court confirmed that offensive words can create a hostile work environment "even if the words are not directed specifically at the plaintiff" because "the natural effect of exposure to such offensive conduct is embarrassment, humiliation and degradation, irrespective of the harasser's motivation." *Id.* at *4-5 (cleaned up). In *Sharp*, "even if the ubiquitous music was not (and need not have been) targeted toward any particular woman, female employees … experienced the content in a unique and especially offensive way." *Id.* at *5. So too here. Mr. Diaz's Black witnesses testified they experienced the N-word as highly offensive, even when not

---

[8]  While Tesla contends that a party moving for a new trial or mistrial must show that the jury incorrectly applied a specific jury instruction, Opp. at 30-31, none of Tesla's cases establish such a requirement (and besides, the award violates Instructions 24 and 26, *see* Dkt. 456).

directed at them personally in a hostile way. Tr. 2:383:15-384:2 (Jackson), 343:22-344:14 (Wheeler); 3:624:1-24 (Diaz) (cumulative effects of harassment). There was also abundant evidence of *intentionally hostile* use of the N-word directed against Mr. Diaz and others. *See, e.g.,* Tr. 3:603:21-604:20 (Martinez called Diaz the N-word 30+ times), 604:22-605:6, 605:19-606:8 (Hurtado called Diaz the N-word 30+ times); Mot. at 25 (Timbreza incident); Tr. 2:344:20–346:12 (Wheeler told "Fuck you, [N]"); Ex. 106.[9] Contrary to Tesla's assertions, Opp. at 19, 22, Diaz repeatedly reported the use of the N-word to his supervisors.  Tr. 3:551:8-17 (Romero: Diaz complained about N-word multiple times), 2:269:23-25 (Kawasaki: Diaz complained about N-word), 4:785:18-22 (Diaz reported Hurtado to DelaGrande).

It is undeniable that Timbreza hurled racial slurs at Mr. Diaz in front of their co-workers. Mot. at 25. While Tesla disputes *which* undisputed racial slurs were uttered, Opp. at 17-18, that doesn't matter. *But see* Tr. 3:592:24-593:12 (Diaz: Timbreza used N-word); Tr. 2:269:20-270:17 (Kawasaki: Diaz and bystanders told him Timbreza used N-word). Even if Diaz initially felt comfortable with the company's response, that does not mean he experienced no emotional distress over the incident, especially as he continued to endure a litany of similar harassment.

Martinez drew a racist pickaninny in Mr. Diaz's work area. Mot. at 25. That, too, is undisputed, as is the testimony of the multiple witnesses who corroborated Diaz's resulting severe distress. Mot. at 27; Tr. 3:620:9-15 (Diaz). Tesla offers a blame-the-victim response, contending that Diaz should have informed Tesla of Martinez's racist history. Opp. at 19. But Diaz *did* inform his HR interviewer, Tr. 4:766:5-12, 20-25, who conceded that Mr. Diaz had "mentioned history that happened in the elevator" with Martinez, Tr. 5:961:15-962:15; Ex. 287 at 5, but failed to follow up in her investigation. Tr. 5:964:4-12. If Telsa had conducted an adequate investigation, it would have known that Martinez was a serial harasser. *Infra* at 19-20.

Many witnesses testified without contradiction that they encountered racist graffiti throughout the factory, including swastikas and racial slurs. Mot. at 25. Tesla does not dispute

---

[9] Tesla does not show otherwise. DelaGrande did not supervise Hurtado for the first eight months of Diaz's tenure. Tr. 5:985:14-986:3. Her contention that Hurtado did not use the N-word in her presence does not address what he said outside it. Martinez indisputably used racial slurs like "chongo" frequently, Tr. 2:281:9-12, 325:21-326:3, and Jackson and Kawasaki confirmed that he also used "mayate." Tr. 2:281:9-12, 381:17-382: 7. Jackson was not impeached; in deposition, he only said he did not know what "mayate" meant, not that Martinez did not say it. Tr. 2:408:1-7.

that either. Opp. at 19-20. Instead, it contends that *when* such graffiti occurred, *id.* at 20, Tesla sometimes tried unsuccessfully to remove it (hardly a defense). Tesla also emphasizes that only Diaz specifically identified the N-word as being included in the graffiti, *id.*—as if racist graffiti is more acceptable if it "only" includes swastikas and other slurs. *See* Tr. 3:622:24-623:25 (Diaz), 2:347:15-21 (Wheeler: Diaz reported N-word graffiti).

Tesla admits that Mr. Martinez "charged" Mr. Diaz in the elevator. Mot. at 26. Tesla merely disputes whether the incident included racial insults, which ignores the Court's ruling that Mr. Diaz was also entitled to compensatory damages for non-raced-based harms caused by Tesla's negligent hiring or supervision of Martinez. *Supra* at 11-12. Multiple witnesses testified that Mr. Diaz was *physically assaulted* by Martinez, which is enough to support an award of damages. Tr. 2:390:2-4, 428:1-14, 429:14-430:1 (Jackson) (Diaz thought Martinez was going to strike him and held up his hands defensively); 3:610:2-12, 611:13-612:7 (Diaz) (same); Ex. 92. Moreover, Diaz's testimony that Martinez used the N-word during the assault is consistent with the documented instances of Martinez's racist behavior. Mot. at 26. Mr. Diaz was not inconsistent about why he omitted the N-word from his email complaint—he merely explained he had several reasons for doing so. Tr. 3:613:15-614:1, 4:724:23-725:9; *see also* Tr. 2:272:21-273:2 (Kawasaki was also reluctant to write the N-word in a work email).

Tesla offers *no* rebuttal to one of the most egregious examples of racial harassment, in which feces were placed in Mr. Wheeler's golf cart. Tr. 2:348:6-10, 366:19-23. Nor does it cite any evidence contradicting Mr. Diaz's and his son's testimony that Diaz witnessed a supervisor yell "F'ing Ns" at Demetric. Tr. 3:599:8-17; Ex. 143. That incident devastated Mr. Diaz. Tr. 3:599:22-600:17. Tesla tries to justify the racial abuse by arguing it arose out of a "baseball rivalry," Opp. at 24—as if that would make it any less horrible. That Mr. Diaz recalled the harasser to be "Caucasian" while his son perceived him to be "Mexican" is irrelevant to the emotional pain the incident caused Diaz, and at most is just a difference in perception.

### 2. **Mr. Diaz suffered severe psychological harm.**

The evidence establishing Mr. Diaz's emotional distress was consistent between the first and second trials. Mot. at 28-30; Dkt. 328 at 10-11. The Court already found that the testimony "roundly rejects" Tesla's characterization of Mr. Diaz's distress as "mild and short-lived" and

that Mr. Diaz's testimony alone is sufficient to substantiate a high compensatory damages award. Dkt. 328 at 27, 29; *Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1041 (9th Cir. 2003). Regardless, in addition to his daughter and Dr. Reading, multiple co-workers corroborated that Diaz was deeply disturbed by the racial harassment. Mot. at 27. Tesla also mischaracterizes Dr. Reading's testimony. Opp. at 17. Reading testified that Mr. Diaz's symptoms continued for years and as of 2019 "he had not recovered." Tr. 4:839:14-840:25. He never called Diaz's residual symptoms "minor," Opp. at 17 (citing Tr. 4:875:22-876:4), but rather "significant," Tr. 4:839:20, 847:25. He never said Diaz may have been motivated by the lawsuit to exaggerate; rather, his tests showed "there was no evidence [Diaz] was exaggerating." Tr. 4:842:4-17. And he never said Diaz's mother's death or son's troubles could have caused his symptoms; rather, he testified those symptoms can result from the type of harassment Diaz experienced. Tr. 4:846:7-847:25.

     **3. <u>Mr. Diaz testified credibly and candidly.</u>**

     Tesla's feeble attempts to impeach Mr. Diaz's credibility based on the admissible evidence—which either do not identify inconsistencies in his testimony and/or concern disputes over minor details—leave little wonder why Tesla resorted to trial misconduct to discredit him. *See* Opp. at 25. It was not misleading for Mr. Diaz to testify that the "job I got after Tesla" was at AC Transit: he *did* get that job after working at Tesla and he never contended that he had not briefly worked elsewhere. Tr. 3:586:2-3. Mr. Diaz's testimony that he agreed to forward Lamar Patterson's resume without knowing Mr. Patterson's race was never impeached or contradicted. Tr. 3:602:23-603:10. Nor did Tesla impeach or contradict Mr. Diaz's explanation that he did not discourage his son from working at Tesla because he believed that his son could avoid racial harassment if he worked in a different part of the gigantic factory. Tr. 3:597:20-598:22. Tesla's suggestion that Mr. Diaz lied about recording events is unfounded: Diaz explained the recordings were not produced because they had been stored on an old phone that he returned to AT&T for an upgrade. Tr. 3:657:8-12, 658:15-17. Nor is there any basis for Tesla's assertion that Diaz "lied" to Dr. Reading. Opp. at 25. Mr. Diaz's testimony has been remarkably consistent over time. That Dr. Reading's notes included some errors does not mean Diaz lied to him; he could have easily misunderstood or mis-transcribed what Diaz said.

Tesla also blows out of proportion the purported conflicts in Mr. Diaz's and his son's testimony about their relationship. Mr. Diaz testified with great vulnerability that he perceived his relationship with his son was seriously harmed and never fully repaired after he witnessed Demetric being racially harassed. Tr. 3:599:22-600:17. That father and son managed to attend photo shoots together years later, and that Demetric stated at his 2019 deposition that *he* believed the relationship "was good" at that time, does not contradict or diminish Diaz's perceptions, especially regarding other time periods. Similarly, Demetric's 2019 statement that the two men were speaking to each other does not contradict Diaz's trial testimony that they were not currently speaking. And Diaz never said his son "hanging out with the wrong crowd" was the "ultimate" cause of their rift, Opp. at 24. He only agreed that it affected their relationship "years later." Tr. 4:755:3-7. Tesla's accusations of dishonesty assume a false dichotomy—either the relationship was ruined forever (and for only one reason) *or* it was always just fine. But family relationships are more nuanced and fluid than that, as Mr. Diaz's and his son's testimony reflect.

### 4. Tesla's responses to the harassment were deficient.

Human resources expert Oppenheimer concluded after a detailed analysis that Tesla's investigations and disciplinary decisions were wholly inadequate. Mot. at 26-27. Tesla ignores that analysis and offers no basis for reaching a different conclusion. Opp. at 26. On the Timbreza incident, although Oppenheimer agreed "Kawasaki did the best he could," she explained that Kawasaki had no HR training and that such a high-priority racial incident should have been handled by a trained professional who would perform a full investigation and would document factual findings. Tr. 2:467:14-468:14. Instead, Tesla's ineffective response was to give Timbreza a warning for joking (not, as Tesla claims, for using racist language). Tr. 2:468:15-21; Ex. 39. Tesla also incorrectly claims that Jackson interviewed "all three witnesses" to the Martinez elevator assault, Opp. at 20, 26, but Jackson never interviewed Rothaj Foster about it. Tr. 2:389:13-20, 391:19-392:8, 425:19-25. Although Tesla contends it initially "promptly responded" to the attack, Opp. at 26, Tesla called off the investigation before it was finished, Tr. 2:395:3-11, without preserving video footage, interviewing a key witness, or making any determination about what had happened. Tr. 2:468:22-469:11. Tesla then issued warnings to *both* Diaz and Martinez, even though all reports indicated that Martinez was the aggressor. Tr. 2:

469:12-24. Regarding the racist drawing, Tesla provides no response to Oppenheimer's findings of an inadequate investigation—e.g., the perpetrator was only interviewed by written questions, thereby preventing any follow-up questions or credibility determinations, and no one looked into Martinez's history of racial harassment. Tr. 2:469:25-471:18.

### 5. Comparable cases show the inadequacy of the award.

The Court's prior remittitur order held that much higher compensatory damages (up to $1.5 million) would be constitutionally justified by the same admissible evidence as was presented on retrial. Opp. at 32. Plaintiff does not contend that remittitur set a "floor" for damages, Opp. at 3 n.2, only that the extreme gap between the remitter amount and the award on retrial reinforces his showing that the damages award was inadequate.[10] The Court previously found that Tesla's proffered $300,000 in compensatory damages was "untethered to [the] record evidence" of Mr. Diaz's emotional distress. Dkt. 328 at 29. The jury's award of $175,000 is even less defensible. That conclusion is supported by the awards in the two cases the Court previously decided were most comparable—which were several times greater than $175,000. Mot. at 31. Contrary to Tesla's contention, those cases did not determine the maximum compensatory damages allowable, but instead upheld jury awards. *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 163 (2d Cir. 2014); *Passantino v. Johnson & Johnson Consumer Prod.*, 212 F.3d 493, 510 (9th Cir. 2000). The Court already rejected Tesla's arguments that other cases were more comparable. Dkt. 328 at 34-36.[11]

## III.   CONCLUSION

The Court should grant Plaintiff's motions for mistrial and a new trial.

DATED: June 30, 2023                    Respectfully submitted,

CALIFORNIA CIVIL RIGHTS LAW GROUP
ALEXANDER MORRISON + FEHR LLP
ALTSHULER BERZON LLP

---

[10] Although Plaintiff's counsel previously explained to the Court why, on retrial, the jury could not award nominal damages although conceptually it could award a "low number," Opp. at 32, the point was to show the limited circumstances in which nominal damages could be awarded, not to address what the minimum damages award might be on retrial, Dkt. 416 at 36:6-37:17.

[11] Tesla does not refute Plaintiff's showing that punitive damages should be retried, given Tesla's reprehensible conduct and the Court's approval of a much larger first punitive damages award. Mot. at 33-35. The Court already rejected Tesla's arguments that the jury could not consider the Wheeler feces incident, Dkt. 417 at 9; Dkt. 391 at 18-20, or Tesla's wealth, Dkt. 328 at 42-43.

COLLIER LAW FIRM, LLP


*/s/ Michael Rubin*
Lawrence A. Organ
Marqui Hood
Cimone A. Nunley
J. Bernard Alexander III
Michael Rubin
Jonathan Rosenthal
Dustin L. Collier
V. Joshua Socks
Elizabeth R. Malay
Drew F. Teti

Attorneys for Plaintiff OWEN DIAZ

PLAINTIFF'S REPLY ISO RENEWED MOTION FOR MISTRIAL AND MOTION FOR A NEW TRIAL