LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD (SBN 214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:    (415)-453-7352
Facsimile:    (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
balexander@amfllp.com
**ALEXANDER MORRISON & FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:    (310) 394-0888
Facsimile:    (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:    (415) 421-7151
Facsimile:    (415) 362-8064

DUSTIN L. COLLIER (SBN 264766)
dcollier@collierlawsf.com
V. JOSHUA SOCKS (SBN 303443)
jsocks@collierlawsf.com
ELIZABETH R. MALAY (SBN 336745)
emalay@collierlawsf.com
DREW F. TETI (SBN 267641)
drew@collierlawsf.com
**COLLIER LAW FIRM, LLP**
240 Tamal Vista Blvd. Suite 100
Corte Madera, CA 94925
Telephone:   (415) 767-0047
Facsimile:    (415) 767-0037

Attorneys for Plaintiff,
OWEN DIAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN DIAZ,<br><br>        Plaintiff,<br><br>    v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.;<br><br>        Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**DECLARATION OF DUSTIN L. COLLIER IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>Trial Date: March 27, 2023<br>Complaint filed: October 16, 2017 |

I, DUSTIN L. COLLIER, have personal knowledge of and, if called as a witness, would competently attest to the following:

1.      I am an attorney duly licensed by the State Bar of California. I am also counsel of record for Plaintiff Owen Diaz in the above-captioned matter, together with our co-counsel.

2.      I graduated from Berkeley Law in 2009, where I received a Van Bourg Scholarship and won a "best oralist" award and placed as a Semi-Finalist in the PACE National Environment Law Moot Court Competition. Since graduating, I have occasionally returned to Berkeley Law to judge moot court competitions and/or to provide coaching to moot court competitors.  I have also taught approximately 10 deposition skills programs there.

3.      Beginning in February 2011, I have been a trial and deposition skills instructor for the National Institute for Trial Advocacy (NITA).  During that time, I have taught approximately 25 NITA deposition and trial skills programs in San Diego, San Jose, Berkeley, San Francisco, Seattle, and the Navajo Nation.  This includes so-called "public programs," an in-house "custom" program for one of the world's largest intellectual property law firms, a pro bono program at the Navajo Nation, and another pro bono program for Legal Aid.

4.      I have also been a deposition and trial skills instructor for the University of San Francisco's "Intensive Advocacy Program," a month-long deposition and trial skills program for third year law students in their last semester before graduation.  The program is intended to mentor and inspire the next generation of young trial lawyers, and I am honored to have been invited to teach it multiple times.

5.      I am a member of the California Employment Lawyers' Association (CELA) and I have been invited to teach their "Trial College" seminars every year since they started hosting them in June of 2014.  After teaching for just two days during the second annual training, I was asked to lecture the entire student body on the art of persuasion and its application to trial practice, and I now give that lecture at the outset of the program every year.

6.      In July 2022, I was recruited to teach with the Panish, Shea, Boyle, Ravipudi ("PSBR") Trial College in Marina Del Rey, California.  Collectively, the faculty at the PSBR Trial College have recovered more than $5 billion in verdicts and settlements for their clients.  All are seasoned and highly successful plaintiff-side trial attorneys.

DECLARATION OF DUSTIN COLLIER IN SUPPORT OF ATTORNEY'S FEES

7.      In October of 2022, I worked with David deRubertis to create an "employment law track" for the annual Trial Lawyers University convention in Las Vegas.  This convention, one of the largest of its kind, brings together hundreds of the top trial attorneys from every corner of the United States.  Mr. deRubertis and I worked together to design all of the employment law programming at the convention, including supervising the instructors, lecturing, and teaching throughout the three-day program.  My partners V. Joshua Socks and Elizabeth Malay were also instructors in the program, and they received rave reviews for their breakout session on focus groups.

8.      I have also lectured on the topics of public speaking and persuasion for the Bar Association of San Francisco and at the 2020 Annual Convention of the California Employment Lawyers Association.  In May 2020, I published an article on these subjects in *Advocate* magazine, a publication of the Consumer Attorneys of (Southern) California, and then an even longer version of the article was selected for republication as a two-part series in *Plaintsiff* magazine (*Advocate*'s Northern California analog).

9.      In Spring 2015, I developed a pilot trial skills program of my own entitled "Collier College."  The thirteen-week program sought to improve the trial skills of my closest friends and co-counsel.

10.     Through all the foregoing, I have trained thousands of attorneys and law students on deposition and trial skills.

11.     On July 14, 2022, our trial team was honored to host a Trial Lawyers University ("TLU") webinar regarding our recent $34.5 verdict in the matter of *Ruvalcaba v. Santa Cruz City Schools et al.*  In October of 2022, we were awarded "Marin Trial Lawyer of the Year" by the Marin Trial Lawyers Association..

12.     In 2016 and 2017, I was selected by The National Advocates for their "Top 40 Attorneys Under 40" award, recognizing that I was one of the top young attorneys in the State of California.  In 2019, 2020, 2021, and 2022, the affiliated National Trial Lawyers selected me for their "Top 40 Under 40" list as well.  We have a perfect track record of reviews on Yelp!, Google, and Avvo (where I am rated 10 out of 10 and designated a "Top Attorney" in the field of Employment Law).  For the last eight years, I have been selected to the Super Lawyers' "Rising

DECLARATION OF DUSTIN COLLIER IN SUPPORT OF ATTORNEY'S FEES

Stars" list, an honor granted to only 2.5% of attorneys under 40 and/or within their first ten years of practice.

13.     In August 2020, I was selected to the Daily Journal's annual "Top 40 Under 40" list for employment law.  In July of 2022 and again in July of 2023, I was selected to their even more exclusive "Top 75 Labor and Employment Lawyers" list.

14.     As a first-year attorney in 2010, I received two attorneys' fees awards on unrelated matters, awarding me fees at the hourly rate of $300 per hour.  In the Spring 2016, Mr. Socks and I successfully prosecuted a petition for writ of mandate, in a matter entitled *Shattner v. City of Santa Rosa School District Governing Board* (Sonoma County Superior Court Case No. SCV-256612).  In two separate fee awards issued in connection with that matter, the Court found the requested hourly rates reasonable.  This included a $400 per hour rate for me and a $350 per hour rate for Mr. Socks.  As discussed more fully below, those rates are now well below market for the services of the two of us, given that we have more than seven more years of success and experience and have obtained more than $80 million in additional judgments and settlements since then. As noted in the moving papers at the time and below, the rates requested and received were already below market as analyzed under the well-known Richard Pearl studies.

15.     On May 29, 2018, Mr. Socks and I were awarded attorney fees in *Sargent v. Board of Trustees of the California State University* (Sonoma County Superior Court Case No. SCV-255399).  Notably, that award provided for attorney's fees following a successful jury trial that ended in March of <u>2017</u>, more than six years ago.  The Court approved hourly rates of $450 for Mr. Socks and $500 for me.  The value of our services has continued to increase since that time, as we gain even more experience and trial victories, yet we have based our lodestar in this case on merely a $250 per hour increase in our respective rates, averaging less than $42 per year.

16.     On October 18, 2021, we moved for appellate fees in the same matter.  At the hearing on January 12, 2022, the Court approved a $650 per hour rate for mef and a $600 per hour rate for Mr. Socks.  With nearly another year, several more accolades and awards, and a new $34.5 million verdict under our belts, we sought and were awarded a modest $50 increase in these hourly rates in 2022 in a contempt proceeding in the same lawsuit.  Our request for $700 per hour for my time and $650 per hour for Mr. Socks was granted.  Our associate Elizabeth Malay, who has been

DECLARATION OF DUSTIN COLLIER IN SUPPORT OF ATTORNEY'S FEES

and remained a licensed as an attorney for as long as Mr. Socks, but who took some time off from litigation to work as a sales executive, was awarded $350 per hour for the same contempt proceedings.

17.     Most recently, following a successful jury trial in May of 2022, we were awarded fees in the matter of *Ruvalcaba v. Santa Cruz City Schools et al.* (Santa Cruz Superior Court Case No. 19CV00488). The Court approved the following rates for our firm: Dustin L. Collier - $700; V. Joshua Socks - $650; Drew F. Teti - $500; Elizabeth R. Malay - $350.

18.     The rates we seek on this motion, $750 for me, $700 for Mr. Socks, $550 for Mr. Teti, and $400 for Ms. Malay, are the rates we *actually* charge billable clients. Our services have always been in demand, increasingly so each passing year. To take on a contingent fee case of any kind necessarily requires us to decline safer and more predictable hourly work at these rates, and even safer "contingency" cases outside the employment realm (*i.e.* admitted fault personal injury cases). We never have a shortage of such cases to choose from, and thus it is the possibility of fee multipliers that makes it economically worthwhile for attorneys like us to continue representing low wage workers in discrimination cases where the risks involved are far more potent and economically consequential.

19.     I am familiar with the rates charged by attorneys of comparable skill, expertise, and experience throughout the State of California. As noted, I have worked with and trained thousands of attorneys, and I have reviewed the market studies prepared by Richard Pearl (author of the CEB Manual on "California Attorney Fee Awards"), whom I have personally worked with to prepare attorney fee declarations in the past. Mr. Pearl, an expert witness who literally wrote the book on attorney fee awards in California, has provided numerous sworn declarations to courts throughout the State attesting to reasonable market rates based on his extensive study of the topic.

20.     I am also familiar with the Laffey matrix and its historical use in the context of determining the reasonableness of attorney fee awards. The original Laffey Matrix was developed in 1982. It was approved for use for attorneys in the Washington D.C. area in *Laffey v. Northwest Airlines* (D.D.C. 1983) 572 F.Supp. 354. The Updated Laffey Matrix was developed in 1989 and approved for use in the D.C. area in *Salazar v. District of Columbia* (D.D.C. 2000) 123 F.Supp.2d 8, 13. Since then, the United States District Court for the District Columbia expressly found that the

Updated Laffey Matrix is "more accurate" than the original Laffey Matrix. (*Smith v. District of Columbia* (D.D.C. 2006) 466 F.Supp.2d 151, 156; see also *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698-99 [approving use of Laffey matrix with a "locality adjustment," while noting that trial court is not obligated to follow the Laffey matrix at all].)  Pursuant to the updated Laffey Matrix, even without a locality adjustment, the market rate for my services would be $878 per hour. With the "locality" adjustment approved in *Syers*, the rate would be $926 per hour.  Mr. Socks and Mr. Teti would have the same rate, and Ms. Malay would bill at $538 per hour.

21.     Based on this data and experience, I conclude that the reasonable market rate for fourteenth year attorneys in the San Francisco Bay area is not less than $750 per hour.

22.     I am also familiar with the skill, experience, and expertise of V. Joshua Socks, who was my associate from Fall 2015 until January 2017, when he became a partner.  Mr. Socks is the most talented eleventh-year attorney I have ever worked with.  He is extraordinarily personable, intelligent, and quick on his feet.  In recent years, he has become a renowned trial lawyer in his own right, receiving his own National Trial Lawyers "Top 40 Under 40" Awards in recent years, along with seven SuperLawyers "Rising Stars" listings (to date).  Like myself, he is now regularly invited to publish, to teach, or to speak at CLE events on the art of civil litigation, persuasion, and trial practice.

23.     Mr. Socks was recommended to me by a colleague working for one of the largest plaintiffs-side employment firms in the Bay Area, a colleague who knew I was looking for a talented associate and who was already impressed with his skill.  When I was considering hiring Mr. Socks and weighing his qualifications against another candidate I had worked with in the past, I received numerous recommendations to hire him and praise from other attorneys familiar with his work. Since he joined the firm, Mr. Socks has consistently impressed me with the level of skill and care he brings to the representation of our clients, including an exceptional ability to research and draft effective legal briefs, to organize and quickly retrieve relevant documents and deposition excerpts, and in his uncanny ability to contribute to my overall trial strategy and presentation.  The two of us make a better team together than either of us could be apart, helping to push one another to a new level of skill.  In our recent trials, Mr. Socks has joined me in handling some of the more difficult witnesses. Mr. Socks has become one of the best trial lawyers I know.

DECLARATION OF DUSTIN COLLIER IN SUPPORT OF ATTORNEY'S FEES

24.     Based on my familiarity with attorneys of comparable skill and experience throughout the Bay Area, including many I have taught or taught with at NITA, TLU, USF, ABA, and CELA programs, I find Mr. Socks' lodestar hourly rate of $700 per hour for this case to be more than reasonable.  Indeed, I believe Mr. Socks' time is worth substantially more, but this is his actual hourly rate in the instances when we handle cases on a non-contingency, billable basis.

25.     Elizabeth R. Malay is married to Mr. Socks, and for that reason I have known her for many years as well.  Even when she worked for many years as a sales executive and was not an active litigator, she contributed actively to our trial strategies and techniques.  She also assisted us with one substantial litigation matter a few years ago, a matter that is subject to a confidential settlement that at the time was the second largest recovery in the firm's history.  It was during the course of that project that I began to see what a truly remarkable and talented attorney she was in her own right.

26.     In June of 2021, we hired Ms. Malay as a salaried associate.  The caliber and quality of her work product has been excellent, and I routinely entrust her with projects I would ordinarily reserve for our most senior and longest-standing co-counsel to work on.  In *Ruvalcaba*, she handled the examination of our primary emotional distress witness in a "garden variety" emotional distress case.  Based on Ms. Malay's examination and my closing argument that tied it together with the instructions, the jury awarded $6.9 million in noneconomic damages to a school district custodian. This outcome bespeaks her incredible gifts as an emergent trial lawyer and her natural storytelling abilities. I have never met an attorney who has achieved so much and impressed me so greatly at such an early stage of their legal career.

27.     Based on my familiarity with attorneys of comparable skill and experience throughout the Bay Area, I find Ms. Malay's lodestar hourly rate of $400 per hour for this case to be *absurdly* reasonable.  As with Mr. Socks, I believe her time is actually worth substantially more, and we are actually billing her at *higher* hourly rates in our billable/hourly matters.

28.     Our small firm fields multiple inquiries each week about our trial consulting, co-counseling, and training services, including inquiries from defense attorneys we have previously litigated against.  Some of our former opposing counsel have expressly commended our skills and requested a quote to train their own associates.  All of these types of inquiry are common for us,

DECLARATION OF DUSTIN COLLIER IN SUPPORT OF ATTORNEY'S FEES

and it creates an inherent dilemma. We must always weigh our options as to the most productive and effective way to spend our time because we are blessed with a variety of great options, which is why contingent fee awards must be truly and fully compensatory, including an appropriate multiplier, in order for us to continue accepting contingent fee cases now and in the future. Stated differently, we could fill our time with lucrative billable work at any time, and thus contingent fee cases must prove even more lucrative in the long run for us to continue taking on the economic risks inherent in litigating them.

29.    I have known Drew F. Teti since January of 2012. Both of us have been licensed since December of 2009, but we first met when we were separately contracted in to assist with a three-month, seven-plaintiff FEHA race discrimination case against the City of Richmond, California, and the Richmond Police Department. Drew and I were third and second chair, respectively, in what would be our first ever jury trial. I had just opened my own fledgling law firm out of my two-bedroom apartment one year earlier, and Mr. Teti had just opened his own practice out of his home about a month earlier. This multi-month, high-profile trial ended with a defense verdict, greatly setting both of us back in our efforts to get our respective practices off the ground. After a year of progress building my small business, I was financially devastated by the three months of lost labor, and the lost opportunity of working on literally any other matter during that time. Financially, I was back to square one. As a result of this experience, I know firsthand just how economically risky contingency fee litigation is and the need for appropriate multipliers to appropriately compensate lawyers for taking such risks.

30.    From the ashes of this early trial, Mr. Teti and I formed a partnership, and Collier Teti, LLP was born. Over the next few years, we worked together on numerous litigation matters, learning the ropes of civil litigation and trial practice together. Although we later dissolved that iteration of the partnership, we never stopped co-counseling with each other on cases. We have now worked together for over a decade, and Mr. Teti was officially "of counsel" to our firm for several years, until we added him back as a partner on August 1, 2023. We have also worked together on four jury trials over the years, and as a result I am extremely familiar with Mr. Teti's work. Mr. Teti and I both have philosophy backgrounds, where principles of logic, persuasion, and rhetoric are paramount. A former speechwriter for retired Defense Secretary Leon Panetta, Mr.

Teti is one of the best trial strategists and linguists I have ever met, and his contribution to our trial strategies and presentation cannot be understated.

31.     During trials, Mr. Teti and I are often the last ones awake, after others have gone to bed, strategizing about closing arguments, cross-examination questions, trial themes, and the like. Much of my closing argument in *Ruvalcaba* came directly from these late-night strategy sessions with Mr. Teti, and Mr. Teti deserves full credit for many of the most powerful rhetorical and metaphorical segments of that argument. His pre-trial work in this case was equally remarkable, as he worked tireless to sift through the proverbial haystack of Defendant's eleventh-hour, 300,000 page document dump just prior to trial call, identifying new witnesses and powerful punitive damages exhibits before writing the examination outlines for those same witnesses and exhibits. On multiple occasions, I have picked up an examination outline from Mr. Teti, reviewed it, made zero changes, and conducted the examination verbatim during trial. Mr. Teti, in his humility, is requesting a mere $550 per hour on this motion. Based on my familiarity with his sheer brilliance, experience, and skills, this rate is far too low.

32.     Lawrence Organ and Bernard Alexander are two of the most successful plaintiffs-side employment lawyers in the country. On October 4, 2021, these two attorneys set the nationwide record for damages awarded in an individual plaintiff civil rights trial, in this very case.[1] Long before *Diaz*, both of these attorneys were well-known as two of the top trial attorneys in the nation. They had already been achieving seven and eight figure verdicts for decades before *Diaz*, bringing justice to countless workers and incentivizing compliance with California's most important workplace protections against discrimination, harassment, and retaliation.

33.     Mr. Organ's career is legendary. But what stands out the most about him is his incredible dedication to the cause of civil rights, and his generous mentorship of younger employment lawyers in service to that cause. Mr. Organ frequently appears, unprompted, at trials being conducted by other CELA members, offering his expert guidance and feedback to younger employment lawyers in an attempt to help all of us advance the cause more effectively as a class. I have been the grateful beneficiary of such appearances and feedback on multiple occasions. Mr.

DECLARATION OF DUSTIN COLLIER IN SUPPORT OF ATTORNEY'S FEES

Organ seeks to be compensated at a mere $975 per hour for his work on this case, which was frankly invaluable. His rate is eminently reasonable, and indeed below market given his truly unique experience, skill set, and reputation in the field.

34.    Bernard Alexander is well-known as one of the most experienced, skilled, and professional employment law trial attorneys in the Nation. I first met Mr. Alexander in 2015, when he graciously invited me to teach at the Second Annual CELA Trial College. Mr. Alexander co-founded the program, and his leadership has made the program a highly successful staple of the organization. Although this case marks the first time we have tried a case together, I have witnessed his advocacy and presentation skills firsthand through the program many times over the last eight years. In recent years, I have joined Mr. Alexander on the Trial College Planning Committee, such that now work together to ensure the program runs smoothly and to coordinate the curriculum. Based on my firsthand observations of his skills, my knowledge of and familiarity with his professional reputation, and my experience training thousands of trial attorneys throughout the State, I can state unequivocally that Mr. Alexander is a top-tier trial attorney who should readily command the highest hourly rates received by any litigator. I find his requested hourly rate of $1,200 per hour to be eminently reasonable for his services, and indeed it is still well below the rates charged by top defense trial lawyers with comparable experience.

35.    Prior to this litigation, I had never had the opportunity to work with Cimone Nunley and Marqui Hood, but I worked closely with both of them in the course of trying this case. They are both exceptionally talented litigators with talent that exceeds their years of experience standing alone. Throughout the trial, these two attorneys took the laboring oar on many of the *in limine* and bench briefs filed by the parties, freeing lead trial counsel up to stay focused on witness examinations and presentation. But they also provided invaluable insights and recommendations in team-wide strategy and planning sessions. I find their requested hourly rates of $900 (Ms. Hood) and $500 (Ms. Nunley) to be well the range of reasonable rates for attorneys of comparable experience, reputation, and skill throughout the Bay Area.

36.    I have known Navruz Avloni for many years, though I have never worked with her directly or co-counseled with her on a case. Her work in this matter predated my own, but I have seen enough of her work product to confirm that it is of exceptional quality – consistent with the

reputation of the California Civil Rights Law Group more generally.  Based on my familiarity with her reputation and work product, I find her requested hourly rate of $725 to be well within the range of reasonable market rates charged by attorneys of comparable experience, reputation, and skill throughout the Bay Area.

37.     Prior to this litigation, I had never had the pleasure of working with anyone at Altshuler Berzon LLP, but I have long been aware of their sterling reputation for public interest advocacy in the trial and appellate courts.  Even as a law student at Berkeley in 2008, our Career Development Office made it clear that Altshuler was one of the top private, public-interest law firms in the country, and also cautioned that it would be extraordinarily difficult to get a job there. Since that time, I have watched time and again as Altshuler has achieved ground-breaking and impactful results for workers and consumers in a variety of high-profile litigation matters.

38.     Michael Rubin in particular is well known as an extremely thoughtful, persuasive, and effective advocate, in the trial courts as well as the appellate courts, having been at the forefront of many of the most important employment and consumer law cases at the state and federal level for over four decades. Even as he worked diligently for Owen Diaz in this matter, Mr. Rubin found time to handle several cases in the U.S. and California Supreme Court, and year after year he has achieved numerous critical victories for workers and others. Working with him personally has been an honor and a privilege, as I have seen firsthand that he is every bit as skilled as I had always heard him to be.  I understand Mr. Rubin is seeking an hourly rate of $1,275 on this motion, which is more than reasonable for someone with his reputation, achievements, skills, and experience.

39.     I also had the pleasure of working with Jonathan Rosenthal during this trial. Although his role was not as visible as the others discussed above, his insights, research, and writing skills were absolutely critical to our success.  I was stunned to learn in the middle of the damages retrial that he is only a fourth-year attorney, albeit one with an exceptional pedigree and professional background.  From my personal interactions with him, I believed for months that he was a seasoned litigator with at least ten years of experience.  Given his raw talent and extraordinary background, I find his requested hourly rate of $625 per hour to be within the range of reasonable rates for attorneys of comparable experience, skill, and repute.

40.     The remaining rates sought on this motion are as follows: (1) Britt Karp - $675; (2) Corinne Johnson - $775; (3) Sam Hull - $550; (4) Paralegals - $325; and (5) Law Clerks - $350. Although I have not had the pleasure of meeting or working directly with all of these persons, the rates all appear to be within the range of reasonable rates for attorneys, paralegals, and law clerks of comparable experience, skill, and repute throughout the Bay Area.  I did, however, work directly and closely with one paralegal in particular, Sabrina Grislis of California Civil Rights Law Group. Ms. Grislis is the most skilled and talented paralegals I have ever worked with, and with a work ethic that puts many attorneys to shame.  $325 per hour for her services is below the reasonable market rate for the extraordinary services she provided.

41.     In short, all of the requested hourly rates on this motion are not only reasonable, but well below market and unnecessarily generous to Tesla.  I believe the market rate for our firm's services to be significantly higher, based on the Richard Pearl market studies, the original and adjusted *Laffey* matrices, and on the fact that the skills, abilities, and reputation of the attorneys involved are all decidedly above average when compared to other attorneys with comparable experience in the Bay Area.  Few attorneys of our age and experience have been recognized for their trial and litigation skills in the way that that we have, and virtually none have the more than 3,500 hours in civil trial experience I have logged in my career.  Given market rates in the area and the experience, reputation, skills, and accolades of the attorneys involved, as well as my personal experience with and observations of the advocacy by each of these attorneys, I find all of these rates to be well within the range of reasonable market rates for the services of attorneys of comparable caliber, experience level, reputation, and accolades.  Moreover, these rates are undoubtedly at the low end for attorneys of comparable skill and experience in the defense bar.

42.     The hours incurred by our firm on this matter are as follows: (1) myself – 272.93 hours; (2) V. Joshua Socks – 83.1 hours; (3) Elizabeth R. Malay – 187.4 hours; and (4) Drew F. Teti – 40.9 hours.  Based on my familiarity with employment litigation, my own work on this case in particular and trying high stakes civil rights cases in general (including complex, class, multi-plaintiff, and mass plaintiff actions), and the extraordinary complexity, novelty, and volume of the discovery and evidentiary record in this matter, I find the hours claimed to be exceedingly reasonable and utterly necessary to the successful result achieved.  I also find the requested

multiplier wholly warranted by the circumstances of this case, for the reasons set forth in the memorandum of points and authorities.

43.     Attached hereto as **EXHIBIT 1** is a true and correct accounting of my time spent on this matter, up through the filing of this motion.  This invoice was prepared and maintained in the ordinary course of business, by an author with personal knowledge of its contents, at or near the time of the events detailed therein.  Notably, I have excluded some billable hours incurred after April 12, 2023, primarily spent reviewing and strategizing over draft post-trial motions, to ensure that my hours do not detract from those incurred by the attorneys primarily responsible for the post-trial briefing.

44.     Attached hereto as **EXHIBIT 2** is a true and correct copy of the invoice for Elizabeth Malay.  This invoice was prepared and maintained in the ordinary course of business, by an author with personal knowledge of its contents, at or near the time of the events detailed therein.  At my direction, Ms. Malay has excluded her time spent appearing at the trial itself, in order to avoid duplicative billing with the trial attorneys (including myself) whom actually had a role in presenting evidence, arguing motions, and the like.  The time that remains reflects her actual assistance with trial preparations and presentation.

45.     Attached hereto as **EXHIBIT 3** is a true and correct copy of the invoice for V. Joshua Socks.  This invoice was prepared and maintained in the ordinary course of business, by an author with personal knowledge of its contents, at or near the time of the events detailed therein.  At my direction, Mr. Socks has excluded his time spent appearing at the trial itself, in order to avoid duplicative billing with the trial attorneys (including myself) whom actually had a role in presenting evidence, arguing motions, and the like.  The time that remains reflects his actual assistance with trial preparations and presentation.

46.     Attached hereto as **EXHIBIT 4** is a true and correct copy of the invoice for Drew F. Teti.  This invoice was prepared and maintained in the ordinary course of business, by an author with personal knowledge of its contents, at or near the time of the events detailed therein.  At my direction, Mr. Teti has excluded his time spent appearing at the trial itself, in order to avoid duplicative billing with the trial attorneys (including myself) whom actually had a role in presenting

evidence, arguing motions, and the like.  The time that remains reflects his actual assistance with trial preparations and presentation.

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.  Executed this 19th day of October, 2023, at Tiburon, California.


_____
Dustin L. Collier
Attorney at Law

DECLARATION OF DUSTIN COLLIER IN SUPPORT OF ATTORNEY'S FEES

# EXHIBIT 1

**Collier Law Firm, LLP**
**240 Tamal Vista Blvd., Ste. 100**
**Corte Madera, CA 94925**

April 13, 2023
Invoice #: 1739

Owen Diaz

| Date | Description | Hours | Rate | Total |
|---|---|---|---|---|
| | **Previous Balance** | | | **$0.00** |
| 12/7/2022 | Tcw/ Larry Organ re: Co-Counseling; Confer w/ CLF re: Same | 0.70 | $750.00 | $525.00 |
| 12/8/2022 | Download and Review Client File | 0.50 | $750.00 | $375.00 |
| 12/9/2022 | Correspondence w/ Co-Counsel | 0.10 | $750.00 | $75.00 |
| 12/11/2022 | Review Agenda for Team Meeting | 0.10 | $750.00 | $75.00 |
| 12/12/2022 | Attend Team Strategy Session; Calendar Tasks | 1.20 | $750.00 | $900.00 |
| 12/20/2022 | Review Trial Transcripts and Exhibits | 4.00 | $750.00 | $3,000.00 |
| 12/21/2022 | Review Trial Transcripts and Exhibits | 5.90 | $750.00 | $4,425.00 |
| 12/22/2022 | Review Trial Transcripts and Exhibits | 8.30 | $750.00 | $6,225.00 |
| 12/29/2022 | Review Draft of Revised Report from EconOne | 0.30 | $750.00 | $225.00 |
| 1/4/2023 | Trial Prep. Team Meeting; Prep. for Same | 0.80 | $750.00 | $600.00 |
| 1/8/2023 | Correspondence w/ Co-Counsel | 0.10 | $750.00 | $75.00 |
| 1/18/2023 | Correspondence w/ Co-Counsel | 0.10 | $750.00 | $75.00 |
| 1/19/2023 | Correspondence w/ Co-Counsel | 0.10 | $750.00 | $75.00 |
| 1/19/2023 | Review Draft Questionnaire; Tcw/ Co-Counsel | 0.60 | $750.00 | $450.00 |
| 2/3/2023 | Correspondence w/ Co-Counsel | 0.10 | $750.00 | $75.00 |
| 2/4/2023 | Tcw/ Co-Counsel re: Mock Cross | 0.90 | $750.00 | $675.00 |
| 2/6/2023 | Correspondence w/ Co-Counsel | 0.10 | $750.00 | $75.00 |
| 2/7/2023 | Review Questionnaire and Voir Dire; Correspondence w/ Co-Counsel | 0.40 | $750.00 | $300.00 |
| 2/10/2023 | Proof and Edit MIL Opps; Tcw/ Co-Counsel | 3.20 | $750.00 | $2,400.00 |
| 2/11/2023 | Prepare for Mock Witness Examination | 4.50 | $750.00 | $3,375.00 |

| Date | Description | Hours | Rate | Total |
|------|-------------|-------|------|-------|
| 2/12/2023 | Prep. for Mock Exam Cont. | 1.80 | $750.00 | $1,350.00 |
| 2/12/2023 | Witness Prep/Mock Examination | 3.40 | $750.00 | $2,550.00 |
| 2/16/2023 | Attend Focus Group; Debrief re: Same | 2.80 | $750.00 | $2,100.00 |
| 2/16/2023 | Review and Edit Focus Group Script; Develop and Refine Defense Themes | 1.10 | $750.00 | $825.00 |
| 2/16/2023 | Tcw/ Co-Counsel re: Trial Strategy and Themes | 0.60 | $750.00 | $450.00 |
| 2/17/2023 | Review/Edit Co-Counsel Agreement and Ntc of Association | 0.30 | $750.00 | $225.00 |
| 2/17/2023 | Tcw/ Co-Counsel re: First Verdict | 0.10 | $750.00 | $75.00 |
| 2/17/2023 | Team Strategy Session w/ Co-Counsel; Internal CLF Debrief | 1.10 | $750.00 | $825.00 |
| 2/18/2023 | Review/Finalize Co-Counsel Agreement | 0.20 | $750.00 | $150.00 |
| 2/18/2023 | Trial Prep; Revise and Refine Mock Cross Outline | 2.40 | $750.00 | $1,800.00 |
| 2/19/2023 | Trial Prep./Theme Development | 0.70 | $750.00 | $525.00 |
| 2/19/2023 | Witness Prep. and Mock Examination | 3.90 | $750.00 | $2,925.00 |
| 2/20/2023 | Correspondence w/ Co-Counsel | 0.10 | $750.00 | $75.00 |
| 2/22/2023 | Tcw/ Co-Counsel re: Focus Group | 0.20 | $750.00 | $150.00 |
| 2/22/2023 | Trial Prep. and Exam Drafting; Correspondence w/ Co-Counsel | 1.50 | $750.00 | $1,125.00 |
| 2/23/2023 | Tcw/ Co-Counsel; Misc. Trial Prep | 2.20 | $750.00 | $1,650.00 |
| 2/24/2023 | Review Preliminary Instructions; Correspondence w/ Co-Counsel | 0.60 | $750.00 | $450.00 |
| 2/24/2023 | Review/Edit Draft Impeachment Grid; Review Impeachment Exhibits | 0.80 | $750.00 | $600.00 |
| 2/26/2023 | Attend Focus Group; Debrief re: Same | 3.80 | $750.00 | $2,850.00 |
| 2/26/2023 | Witness Prep. and Mock Exam; Prep. for Same | 4.20 | $750.00 | $3,150.00 |
| 2/27/2023 | Appear at Pre-Trial Conference (Portal-to-Portal); Prep. for Same | 4.00 | $750.00 | $3,000.00 |
| 2/28/2023 | Tcw/ CLF Team re: Witness Exams and Focus Group Prep. | 0.60 | $750.00 | $450.00 |
| 2/28/2023 | Tcw/ Co-Counsel (Organ and Nunley) re: Focus Group and Witness Exams | 0.40 | $750.00 | $300.00 |

| Date | Description | Hours | Rate | Total |
|---|---|---|---|---|
| 2/28/2023 | Tcw/ Co-Counsel re: Witness Exams | 0.50 | $750.00 | $375.00 |
| 3/1/2023 | Tcw/ Larry Organ re: Trial Themes | 0.90 | $750.00 | $675.00 |
| 3/2/2023 | Moderate Focus Group; Debrief | 2.20 | $750.00 | $1,650.00 |
| 3/2/2023 | Prepare for Focus Group | 7.40 | $750.00 | $5,550.00 |
| 3/4/2023 | Appear at Focus Group; Debrief | 4.60 | $750.00 | $3,450.00 |
| 3/4/2023 | Prepare for Focus Group | 2.30 | $750.00 | $1,725.00 |
| 3/4/2023 | Tcw/ Co-Counsel re: Witness Prep. and Strategy | 0.50 | $750.00 | $375.00 |
| 3/5/2023 | Trial Prep. | 1.40 | $750.00 | $1,050.00 |
| 3/5/2023 | Witness Prep. / Mock Exam | 4.30 | $750.00 | $3,225.00 |
| 3/6/2023 | Tcw/ Co-Counsel | 0.20 | $750.00 | $150.00 |
| 3/6/2023 | Trial and Examination Prep. | 2.00 | $750.00 | $1,500.00 |
| 3/7/2023 | Draft Examination Outlines | 2.50 | $750.00 | $1,875.00 |
| 3/8/2023 | Prep. for Exam Prep w/ Oppenheimer | 1.30 | $750.00 | $975.00 |
| 3/8/2023 | Team Trial Strategy Meeting | 1.00 | $750.00 | $750.00 |
| 3/9/2023 | Correspondence w/ Co-Counsel re: Mail Merge and Exam Outlines | 0.20 | $750.00 | $150.00 |
| 3/9/2023 | Review and Edit Exam Outline (Jackson) | 4.20 | $750.00 | $3,150.00 |
| 3/9/2023 | Tcw/ Oppenheimer; Revise Slides and Correspondence w/ Co-Counsel | 0.90 | $750.00 | $675.00 |
| 3/10/2023 | Review and Finalize Exam Outlines; Correspondence w/ Witnesses | 3.70 | $750.00 | $2,775.00 |
| 3/10/2023 | Tcw/ Co-Counsel re: Strategy and Witness Databases | 0.40 | $750.00 | $300.00 |
| 3/12/2023 | Prep. for Mock Cross with Client | 1.50 | $750.00 | $1,125.00 |
| 3/13/2023 | Attend Focus Group; Debrief re: Same | 3.40 | $750.00 | $2,550.00 |
| 3/13/2023 | Develop Themes/Revise Focus Group Script | 0.80 | $750.00 | $600.00 |
| 3/13/2023 | Mock Cross with Plaintiff | 4.60 | $750.00 | $3,450.00 |
| 3/14/2023 | Communications w/ Co-Counsel re: Trial Strategy | 0.60 | $750.00 | $450.00 |
| 3/14/2023 | Review and Revise Expert Demonstratives/Outlines | 1.80 | $750.00 | $1,350.00 |
| 3/14/2023 | Tcw/ Wayne Jackson and Co-Counsel | 0.30 | $750.00 | $225.00 |
| 3/15/2023 | Review Order re: MILs; Correspondence w/ Co-Counsel | 0.70 | $750.00 | $525.00 |

| Date | Description | Hours | Rate | Total |
|---|---|---|---|---|
| 3/16/2023 | Tcw/ Co-Counsel re: Witnesses | 0.40 | $750.00 | $300.00 |
| 3/16/2023 | Zoom Conf. w/ OPC re: Unavailable Witness Designations | 0.20 | $750.00 | $150.00 |
| 3/17/2023 | Meet w/ Bernard, Larry, and Rest of Team (Remote) re: Trial Strategy | 7.10 | $750.00 | $5,325.00 |
| 3/17/2023 | Revise Focus Group Script; Develop and Refine Narrative and Themes | 4.60 | $750.00 | $3,450.00 |
| 3/18/2023 | Attend Focus Group; Debrief re: Same | 4.80 | $750.00 | $3,600.00 |
| 3/18/2023 | Meet w/ Trial Team to Prep. for Focus Group (P2P) | 2.70 | $750.00 | $2,025.00 |
| 3/19/2023 | Correspondence w/ OPC re: Wheeler | 0.10 | $750.00 | $75.00 |
| 3/19/2023 | Meet w/ Bernard, Larry, Susan, and Emily re: Trial Strategy (P2P) | 7.40 | $750.00 | $5,550.00 |
| 3/20/2023 | Meet w/ Bernard and Larry re: Opening Statement | 0.80 | $750.00 | $600.00 |
| 3/20/2023 | Prep. for Diaz Cross; Meet with Team to Moot Diaz Cross (P2P) | 5.30 | $750.00 | $3,975.00 |
| 3/20/2023 | Witness Prep. w/ Co-Counsel and Michael Wheeler (P2P) | 4.70 | $750.00 | $3,525.00 |
| 3/21/2023 | Attend Focus Group; Debrief re: Same | 3.00 | $750.00 | $2,250.00 |
| 3/21/2023 | Rehearse Examinations of Jackson, Wheeler, Delagrande, and Martinez | 2.10 | $750.00 | $1,575.00 |
| 3/21/2023 | Witness Prep. (Oppenheimer); Prep. for Same | 1.20 | $750.00 | $900.00 |
| 3/22/2023 | Review Juror Questionnaires; Team Meeting re: Same | 3.70 | $750.00 | $2,775.00 |
| 3/22/2023 | Team Strategy Session w/ Co-Counsel | 2.30 | $750.00 | $1,725.00 |
| 3/23/2023 | Review and Markup Draft Opening | 3.20 | $750.00 | $2,400.00 |
| 3/23/2023 | Review Defense Motions (x3) | 0.90 | $750.00 | $675.00 |
| 3/23/2023 | Revise/Refine Examination Outlines | 1.30 | $750.00 | $975.00 |
| 3/23/2023 | Tcw/ OPC and Co-Counsel re: Opening Slide Objections | 0.20 | $750.00 | $150.00 |
| 3/24/2023 | Appear at Court Conference re: Jury Questionnaires/Cause | 0.90 | $750.00 | $675.00 |
| 3/24/2023 | Review Juror Questionnaires and Research; Prep. for Hearing | 1.50 | $750.00 | $1,125.00 |

| Date | Description | Hours | Rate | Total |
|---|---|---|---|---|
| 3/24/2023 | Review/Edit Opp. to Oppenheimer Motion | 0.40 | $750.00 | $300.00 |
| 3/24/2023 | Witness Prep (Oppenheimer) | 0.80 | $750.00 | $600.00 |
| 3/24/2023 | Zoom Conf. w/ OPC re: Cause Challenges | 0.20 | $750.00 | $150.00 |
| 3/25/2023 | Attend Focus Group Debrief (Already-in-Progess) | 0.70 | $750.00 | $525.00 |
| 3/26/2023 | Misc. Trial Prep. (Revise and Refine Witness Exams, Review Depos) | 2.80 | $750.00 | $2,100.00 |
| 3/26/2023 | Review FG Video; Correspondence re: Same | 2.30 | $750.00 | $1,725.00 |
| 3/26/2023 | Witness Prep. (Reading) | 0.40 | $750.00 | $300.00 |
| 3/26/2023 | Witness Prep. w/ Client | 3.00 | $750.00 | $2,250.00 |
| 3/27/2023 | Appear at Trial Day 1 (Jury Selection/Openings) (Portal-to-Portal) | 11.50 | $750.00 | $8,625.00 |
| 3/27/2023 | Team Strategy Session w/ Day 1 and Openings | 2.20 | $750.00 | $1,650.00 |
| 3/28/2023 | Appearance at Trial Day 2 (Portal-to-Portal) | 8.10 | $750.00 | $6,075.00 |
| 3/28/2023 | Assist with Diaz Prep | 0.90 | $750.00 | $675.00 |
| 3/28/2023 | Review Draft Final Instructions; Confer w/ Co-Counsel | 0.40 | $750.00 | $300.00 |
| 3/28/2023 | Team Strategy Session w/ Co-Counsel | 3.80 | $750.00 | $2,850.00 |
| 3/29/2023 | Appear at Hearing on Jury Instructions | 0.80 | $750.00 | $600.00 |
| 3/29/2023 | Appearance at Trial Day 3 (Portal-to-Portal) | 8.40 | $750.00 | $6,300.00 |
| 3/29/2023 | Prepare for Day 4 Exams (Review Witness Depos. and Outlines) | 3.30 | $750.00 | $2,475.00 |
| 3/29/2023 | Team Strategy Session w/ Co-Counsel | 2.20 | $750.00 | $1,650.00 |
| 3/30/2023 | Appear at Trial Day 4 (Portal-to-Portal) | 7.03 | $750.00 | $5,275.00 |
| 3/30/2023 | Assist Bernard with Closing Argument Presentation/Preparation | 6.70 | $750.00 | $5,025.00 |
| 3/31/2023 | Appearance at Trial Day 5 (Portal-to-Portal) | 11.60 | $750.00 | $8,700.00 |
| 3/31/2023 | Review Delagrande Trial Testimony; Revise Exam | 0.40 | $750.00 | $300.00 |

| Date | Description | Hours | Rate | Total |
|---|---|---|---|---|
| 4/3/2023 | Appear at Trial Day 6 (Deliberations and Verdict) (Portal-to-Portal) | 8.10 | $750.00 | $6,075.00 |
| 4/4/2023 | Correspondence w/ Co-Counsel and Jury Consult re: Autopsy | 0.30 | $750.00 | $225.00 |
| 4/5/2023 | Tcw/ Co-Counsel (Organ) re: Post-Trial Strategy | 1.10 | $750.00 | $825.00 |
| 4/5/2023 | Team Strategy Session w/ Co-Counsel | 1.20 | $750.00 | $900.00 |
| 4/6/2023 | Correspondence w/ Sabrina re: Skip-Tracing Jurors | 0.10 | $750.00 | $75.00 |
| 4/7/2023 | Review Draft Proposed Judgment (x2); Correspondence w/ OPC re: Same | 0.30 | $750.00 | $225.00 |
| 4/10/2023 | Finalize and File Proposed Judgment; Correspondence w/ Court | 0.30 | $750.00 | $225.00 |
| 4/10/2023 | Research re: Post-Trial Deadlines; Correspondence w/ Co-Counsel | 0.20 | $750.00 | $150.00 |
| 4/10/2023 | Review Proposed Revisions to Draft Judgment; Correspondence w/ OPC | 0.20 | $750.00 | $150.00 |
| 4/10/2023 | Tcw/ Michael Rubin re: Proposed Judgment; Correspondence re: Same | 0.20 | $750.00 | $150.00 |
| 4/11/2023 | Correspondence w/ Co-Counsel re: Fee Motion Stip | 0.20 | $750.00 | $150.00 |
| 4/11/2023 | Proof and Edit Draft Stip; Correspondence re: Same | 0.30 | $750.00 | $225.00 |
| 4/12/2023 | Review and Approve Malay, Socks, and Teti Billing; Compile Same | 0.80 | $750.00 | $600.00 |
| 4/12/2023 | Review Proposed Stip. re: Fees; Correspondence re: Same | 0.30 | $750.00 | $225.00 |
| | **Amount Due** | **272.93** | | **$204,700.00** |

# EXHIBIT 2

## Diaz v. Tesla Inc.

**Collier Law Firm, LLP**

240 Tamal Vista Blvd., Ste. 100, Corte Madera, CA 94925

**Attorney:** Elizabeth Rose Malay

**Attorney phone:** (415) 767-0047

**Attorney email:** emalay@collierlawsf.com

**Client:** Owen Diaz

| | |
|---|---|
| Week Start: | 6/1/2021 |
| Hourly Rate: | $450.00 |
| | |

| Date | Description | Billable Hours | Total |
|---|---|---|---|
| 2/6/2023 | consult with co-counsel re cross examination prep | 0.4 | $ 180.00 |
| 2/9/2023 | draft cross examination impeachment grid | 3.00 | $ 1,350.00 |
| 2/10/2023 | draft cross examination impeachment grid | 4.20 | $ 1,890.00 |
| 2/12/2023 | prep Owen for cross examination | 2.50 | $ 1,125.00 |
| 2/14/2023 | attend team strategy meeting | 3.20 | $ 1,440.00 |
| 2/16/2023 | review and edit focus group script | 0.50 | $ 225.00 |
| 2/16/2023 | review correspondence and edits from co-counsel re focus group | 0.40 | $ 180.00 |
| 2/16/2023 | attend focus group | 2.10 | $ 945.00 |
| 2/17/2023 | communications with co-counsel | 1.10 | $ 495.00 |
| 2/17/2023 | team call re witnesses | 0.80 | $ 360.00 |
| 2/20/2023 | review punitive arguments and brainstorm on same | 0.40 | $ 180.00 |
| 2/20/2023 | draft trial database of Diaz depositions | 4.20 | $ 1,890.00 |
| 2/20/2023 | research black history and origins of racial slurs and imagery | 0.50 | $ 225.00 |
| 2/20/2023 | brainstorm trial ideas and document the same | 0.40 | $ 180.00 |
| 2/21/2023 | draft trial database of Diaz depositions | 4.40 | $ 1,980.00 |
| 2/22/2023 | draft trial database of Diaz depositions | 6.60 | $ 2,970.00 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 2/22/2023 | communications with co-counsel | 0.50 | $ 225.00 |
| 2/23/2023 | draft trial database of Diaz depositions | 1.30 | $ 585.00 |
| 2/23/2023 | call with co-counsel re trial prep | 0.40 | $ 180.00 |
| 2/23/2023 | draft cross examination impeachment grid | 4.80 | $ 2,160.00 |
| 2/23/2023 | call with co-counsel re trial prep | 0.70 | $ 315.00 |
| 2/24/2023 | draft cross examination impeachment grid | 5.30 | $ 2,385.00 |
| 2/25/2023 | draft cross examination impeachment grid | 4.20 | $ 1,890.00 |
| 2/27/2023 | communications with co-counsel | 0.30 | $ 135.00 |
| 2/27/2023 | attend pre-trial conference | 1.50 | $ 675.00 |
| 2/28/2023 | team calls re trial prep | 0.70 | $ 315.00 |
| 2/28/2023 | review trial testimony to draft trial exam | 2.50 | $ 1,125.00 |
| 2/28/2023 | review deposition testimony | 1.40 | $ 630.00 |
| 3/1/2023 | draft trial database to prep direct exams | 4.10 | $ 1,845.00 |
| 3/2/2023 | team meeting re trial prep | 2.80 | $ 1,260.00 |
| 3/2/2023 | draft trial database to prep direct exams | 4.30 | $ 1,935.00 |
| 3/2/2023 | attend focus group | 2.00 | $ 900.00 |
| 3/2/2023 | team meeting re focus group | 1.10 | $ 495.00 |
| 3/3/2023 | draft trial database to prep direct exams | 4.90 | $ 2,205.00 |
| 3/4/2023 | attend focus group | 3.00 | $ 1,350.00 |
| 3/4/2023 | team meeting re focus group | 1.60 | $ 720.00 |
| 3/5/2023 | draft trial database to prep direct exams | 3.20 | $ 1,440.00 |
| 3/6/2023 | draft trial database to prep direct exams | 6.20 | $ 2,790.00 |
| 3/7/2023 | draft trial database to prep cross exams | 7.10 | $ 3,195.00 |
| 3/8/2023 | draft trial database to prep cross exams | 4.20 | $ 1,890.00 |
| 3/8/2023 | team meeting re trial prep | 1.00 | $ 450.00 |
| 3/13/2023 | team meeting re witness prep | 3.40 | $ 1,530.00 |

| Date | Description | Hours | Amount |
|---|---|---|---|
| 3/13/2023 | attend focus group | 2.10 | $ 945.00 |
| 3/13/2023 | team meeting re focus group | 0.80 | $ 360.00 |
| 3/16/2023 | draft trial database | 3.50 | $ 1,575.00 |
| 3/17/2023 | team meeting re trial prep | 4.90 | $ 2,205.00 |
| 3/18/2023 | attend focus group | 3.00 | $ 1,350.00 |
| 3/18/2023 | team meeting post focus group | 1.70 | $ 765.00 |
| 3/20/2023 | draft trial database | 3.10 | $ 1,395.00 |
| 3/21/2023 | draft trial database | 6.80 | $ 3,060.00 |
| 3/21/2023 | attend focus group | 2.00 | $ 900.00 |
| 3/21/2023 | team meeting post focus group | 0.80 | $ 360.00 |
| 3/21/2023 | call with co-counsel re trial prep | 0.30 | $ 135.00 |
| 3/22/2023 | team meeting re trial prep | 5.40 | $ 2,430.00 |
| 3/22/2023 | research jurors | 2.10 | $ 945.00 |
| 3/23/2023 | draft trial database | 8.40 | $ 3,780.00 |
| 3/24/2023 | draft trial database | 1.80 | $ 810.00 |
| 3/24/2023 | research expert testimony | 1.20 | $ 540.00 |
| 3/25/2023 | attend focus group and debrief session | 3.00 | $ 1,350.00 |
| 3/26/2023 | attend focus group and debrief session | 2.10 | $ 945.00 |
| 3/27/2023 | trial prep | 2.90 | $ 1,305.00 |
| 3/27/2023 | team meeting re trial prep | 2.10 | $ 945.00 |
| 3/28/2023 | team meeting re trial prep | 2.30 | $ 1,035.00 |
| 3/28/2023 | trial prep | 3.50 | $ 1,575.00 |
| 3/29/2023 | trial prep | 2.20 | $ 990.00 |
| 3/29/2023 | team meeting re trial prep | 3.40 | $ 1,530.00 |
| 3/30/2023 | team meeting re trial prep | 1.50 | $ 675.00 |
| 3/30/2023 | trial prep | 3.80 | $ 1,710.00 |

| 3/31/2023 | trial prep | 2.50 | $ | 1,125.00 |
|---|---|---|---|---|
| 4/3/2023 | debrief meeting | 1.50 | $ | 675.00 |
| 4/6/2023 | post-trial research | 1.10 | $ | 495.00 |
| 4/10/2023 | post-trial research | 0.40 | $ | 180.00 |
| **Total** | | **187.4** | **$** | **84,330.00** |

# EXHIBIT 3

## Diaz v. Tesla Inc.

**Collier Law Firm, LLP**

240 Tamal Vista Blvd., Ste. 100, Corte Madera, CA 94925

**Attorney:** V. Joshua Socks

**Attorney phone:** (415) 767-0047

**Attorney email:** jsocks@collierlawsf.com

**Client:** Owen Diaz

| Week Start: | 6/1/2021 |
|---|---|
| Hourly Rate: | $700.00 |

| Date | Description | Billable Hours | Total |
|---|---|---|---|
| 2/14/2023 | Attend team strategy meeting | 2.1 | $ 1,470.00 |
| 2/27/2023 | Communications with co-counsel | 0.30 | $ 210.00 |
| 2/27/2023 | Attend pre-trial conference | 1.50 | $ 1,050.00 |
| 2/28/2023 | Team calls re trial prep | 0.70 | $ 490.00 |
| 3/1/2023 | Communications with co-counsel | 0.90 | $ 630.00 |
| 3/2/2023 | Trial preparation | 1.60 | $ 1,120.00 |
| 3/2/2023 | Communications with co-counsel | 2.40 | $ 1,680.00 |
| 3/2/2023 | Focus group and related | 3.10 | $ 2,170.00 |
| 3/3/2023 | Trial preparation | 3.40 | $ 2,380.00 |
| 3/4/2023 | Focus group and related | 4.60 | $ 3,220.00 |
| 3/5/2023 | Trial preparation | 3.20 | $ 2,240.00 |
| 3/8/2023 | Trial preparation | 7.60 | $ 5,320.00 |
| 3/17/2023 | Trial preparation | 1.60 | $ 1,120.00 |
| 3/17/2023 | Trial preparation | 1.40 | $ 980.00 |
| 3/18/2023 | Focus group and related | 4.70 | $ 3,290.00 |

| Date | Description | Hours | Amount |
|------|-------------|------:|-------:|
| 3/21/2023 | Trial preparation | 2.30 | $ 1,610.00 |
| 3/21/2023 | Focus group and related | 2.80 | $ 1,960.00 |
| 3/22/2023 | Trial preparation | 4.60 | $ 3,220.00 |
| 3/24/2023 | Research and brief re Oppenheimer testimony | 3.70 | $ 2,590.00 |
| 3/25/2023 | Focus group and related | 2.30 | $ 1,610.00 |
| 3/25/2023 | Trial preparation | 3.90 | $ 2,730.00 |
| 3/26/2023 | Trial preparation | 4.20 | $ 2,940.00 |
| 3/27/2023 | Trial preparation | 2.40 | $ 1,680.00 |
| 3/28/2023 | Trial preparation | 3.50 | $ 2,450.00 |
| 3/29/2023 | Markup transcripts/trial preparation | 4.80 | $ 3,360.00 |
| 3/30/2023 | Trial preparation/Research re trial misconduct | 3.60 | $ 2,520.00 |
| 3/31/2023 | Review and markup trial transcripts/closing slides | 5.40 | $ 3,780.00 |
| 4/10/2023 | post-trial research | 0.50 | $ 350.00 |
| **Total** | | **83.1** | **$ 58,170.00** |

# EXHIBIT 4

| Diaz v. Tesla - Drew F. Teti Invoice | | | | | |
|---|---|---|---|---|---|
| Diaz | 2/23/2023 | Phone call with co-counsel. | 0.5 | 550 | 275 |
| Diaz | 2/23/2023 | File review | 0.5 | 550 | 275 |
| Diaz | 2/23/2023 | Continued review/ database of exhibits. | 3.6 | 550 | 1980 |
| Diaz | 2/28/2023 | Diaz call re trial prep | 0.6 | 550 | 330 |
| Diaz | 2/28/2023 | Focus group and recap. | 3 | 550 | 1650 |
| Diaz | 3/2/2023 | Focus group and strategy session. | 3 | 550 | 1650 |
| Diaz | 3/13/2023 | Diaz focus group. | 3.1 | 550 | 1705 |
| Diaz | 3/21/2023 | Transcript review and exam outline drafti | 3.7 | 550 | 2035 |
| Diaz | 3/21/2023 | Focus group and strategy session. | 2.2 | 550 | 1210 |
| Diaz | 3/22/2023 | Transcript review and exam outline drafti | 2.2 | 550 | 1210 |
| Diaz | 3/24/2023 | Legal research re admissibility of expert t | 3.4 | 550 | 1870 |
| Diaz | 3/27/2023 | Trial strategy and prep. | 3.3 | 550 | 1815 |
| Diaz | 3/28/2023 | Trial strategy and prep | 3.2 | 550 | 1760 |
| Diaz | 3/29/2023 | Trial strategy and prep | 4.4 | 550 | 2420 |
| Diaz | 3/30/2023 | Trial strategy/ closing themes. | 4.2 | 550 | 2310 |
| **TOTAL** | | | **40.9** | **550** | **22495** |