LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD  (SBN214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:     (415)-453-7352
Facsimile:     (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:     (310) 394-0888
Facsimile:     (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:     (415) 421-7151
Facsimile:     (415) 362-8064

Attorneys for Plaintiff OWEN DIAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIC DI-AZ, OWEN DIAZ, and LAMAR PATTERSON,<br><br>       Plaintiffs,<br><br>     v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.; CITISTAFF SOLUTIONS, INC.; WEST VALLEY STAFFING GROUP; CHARTWELL STAFFING SERVICES, INC.; and DOES 1-50, inclusive,<br><br>       Defendants. | Case No. 3:17-cv-06748-WHO<br><br>**DECLARATION OF DAVID M. DERUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** |

## DECLARATION OF DAVID M. deRUBERTIS, ESQ.:

I, David M. deRubertis, Esq., hereby declare as follows:

1.     I am an attorney at law duly licensed to practice before all courts of the State of California. This declaration is submitted in support of Plaintiff Owen Diaz's request for attorneys' fees. I am the principal in the deRubertis Law Firm, APC, an employment and trial boutique firm, where I concentrate on litigating employment matters on behalf of workers throughout California.

## I.     BACKGROUND, TRAINING AND EXPERIENCE:

2.     I graduated *summa cum laude* and Order of the Coif from Loyola Law School in 2000 with a cumulative grade point average of 92.05 (class rank of 2 of 297). At Loyola, I was the recipient of the Dean's Scholarship and received awards for the highest grade in 12 different classes and was a member of Loyola's Byrne Trial Advocacy Team, which is considered one of the nation's top law school mock trial advocacy teams by the U.S News & World Report's Annual Ranking. On the Byrne Team, I won a national mock trial competition (Georgetown University Law Center 2nd Annual National White Collar Crime Mock Trial Invitational, November 1998), received the highest ranking in the 1998 Loyola Law School Intramural Trial Advocacy Competition, and at graduation received the American Board of Trial Advocates (ABOTA) award for Excellence in the Preparation for Trial Law Award.

3.     Immediately after passing the bar, I opened my own law practice in November of 2000 handling a variety of plaintiff's contingency matters. Since then I have conducted approximately thirty (30) trials in both state and federal courts (approximately twenty-four [24] jury and six [6] bench trials), in addition to five [5] binding arbitrations. This is just my post-bar trial experience. In my last year of law school, through an externship at the Los Angeles District Attorneys office, I

-1-

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES

also personally conducted approximately ten (10) criminal juvenile adjudications which are bench trials. When jury and bench trials are added with binding arbitrations, I have conducted approximately forty-five (45) in total. I have a statewide practice, having tried cases from as far South as San Diego County to as far North as Sacramento and Yolo Counties, as well as multiple counties in between, though my primary office is based in Los Angeles County.

4.      I have obtained multiple multi-million dollar and other significant employment jury verdicts – including obtaining as lead counsel various record-setting verdicts. For example, in June 2022, as lead trial counsel, I obtained the largest jury verdict in U.S. history for an employment case – $422,377,265 for Alfredo Martinez in the matter of *Martinez/Page v. Southern California Edison/Edison International*, in the Los Angeles Superior Court.  In addition to Mr. Martinez's verdict, I also obtained a $42.2 million jury verdict for his co-Plaintiff Justin Page. Mr. Page's verdict is the largest male victim sexual harassment verdict in California history (and potentially in the country).  In September 2023, as lead trial counsel, I obtained a $20 million jury verdict in the matter of *Callahan v. Marriott, et al*., in the San Francisco Superior Court.  The *Callahan* verdict of $20 million is believed to be the largest single-plaintiff employment verdict out of the San Francisco Superior Court.  In addition, the $5 million non-economic verdict in the *Callahan* matter is believed to be the largest non-economic jury verdict in an employment case out of the San Francisco Superior Court.  Or, in 2014, as lead trial counsel, I obtained a $6,000,000 compensatory damages Sarbanes-Oxley retaliation jury verdict plus a finding of malice, fraud or oppression (at which point the matter resolved confidentially before the jury determined the amount of punitive damages) in the United States District Court for the Central District of California. Even before punitive damages,

this was the largest Sarbanes-Oxley retaliation verdict ever at the time and to this day remains the largest compensatory damage jury verdict in a Sarbanes-Oxley retaliation case. In 2017 in a jury trial in San Diego, I obtained as lead trial counsel what was believed and reported to be the largest associational disability discrimination jury verdict in California at the time under the FEHA. Back in 2004, while not as lead counsel, I helped obtained $19,000,000 in a single plaintiff disability discrimination case. This was the largest employment verdict in the nation in 2004 and was at the time believed to be the largest single plaintiff disability discrimination/California Family Rights Act verdict in California history at the time. I was also lead trial counsel in the matter of *Loyola v. Woodbridge, et al.*, which led to a $12,495,000.00 resolution judgment, which is reportedly the largest ever resolution of a transgender harassment or discrimination case to date in America. I have also been lead trial counsel in numerous other employment jury trials that have produced seven- and six- figure jury verdicts, and have settled many multi-million dollar employment cases confidentially (including resolutions of single-plaintiff employment cases for as high as: $15,000,000; $12,500,000; $8,500,000; $6,250,000 on a five hundred thousand dollars [$500,000] economic loss case; $5,250,000; $4,500,000 on a zero economic loss case; $4,200,000; $3,800,000; $3,425,000; etc.). I have also settled an employment discrimination class action for fifteen million dollars ($15,000,000), another employment discrimination class action for seven million one hundred and thirty-seven thousand nine hundred dollars ($7,137,900.00), as well as multiple multi-million-dollar wage and hour class action matters.A substantial portion of my practice consists of being asked to step in to try employment cases for or with other attorneys, often after discovery has been completed and on the "eve of trial." In the last five years, somewhere between fifty to seventy-five percent of my practice has

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

consisted of stepping into employment cases for other attorneys to either try the case or complete the work-up and try it. Often, these are last minute "eve of trial" requests and often I am asked to step in as lead trial counsel by attorneys who themselves are very experienced employment or trial attorneys.

5.     A smaller portion of my practice includes handling complex or cutting-edge employment law appeals, usually at the California Supreme Court level (either on behalf of the employee or amicus curiae on behalf of the employee or consumer).  I have personally been lead counsel in four matters on the merits in the California Supreme Court.  In addition to my California Supreme Court practice, I have also handled 17 appeals as lead counsel (most of which were employment-related cases) in the California appellate courts and the Ninth Circuit Court of Appeals.

6.     I have received numerous professional recognitions and honors, including:

- <u>Charles B. O'Reilly Memorial "Trial Lawyer of the Year" for Consumer Attorneys Association of Los Angeles (CAALA) (2014):</u> In October 2014, I was voted "Trial Lawyer of the Year" by the Consumer Attorneys Association of Los Angeles (CAALA), which was formally awarded in January 2015. Every year, only one of CAALA's nearly three thousand members receives this award. I have been one of only five (5) employment lawyers out of the fifty-one (51) individuals who have received this honor since 1972. In addition to receiving the Trial Lawyer of the Year honor in 2014, in both 2009 and 2022, I was also a nominee for CAALA's Trial Lawyer of the Year.

- <u>Daily Journal's Top 100 Lawyers in California (2023):</u> In 2023, I was honored as one of the Top 100 Lawyers from all practices areas in California by the Los Angeles & San Francisco Daily Journal.

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

- <u>"California Lawyer Attorney of the Year" ("CLAY Award"):</u> In March 2014, I was honored as a California Lawyer magazine "Attorney of the Year" – *i.e.*, a "CLAY Award" recipient – for my work in the employment law field and particularly the case of *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203.

- <u>Best Lawyers in America - "Lawyer of the Year Employment Law - Individuals" (2014 & 2018):</u> In both 2014 and 2018, I was honored as Best Lawyers' "Lawyer of the Year - Employment Law - Individuals" for the Los Angeles area. Only one attorney from each practice area in each region receives this honor annually.

- <u>National Law Journal: Employment Law Trailblazer (2021 & 2023):</u> In both 2021 and 2023, I was recognized by the National Law Journal as an "Employment Law Trailblazer" for my work in employee rights litigation. I was of only four (4) plaintiff-side attorneys in the entire country who received this honor in 2021.

- <u>National Law Journal: Plaintiffs' Lawyers Trailblazer (2023):</u> In 2023, I was recognized by the National Law Journal as a "Plaintiffs' Lawyers Trailblazer.

- <u>Law 360: Employment Law MVP:</u> In 2022, I was recognized by Law360 as one of its nationwide Employment Law MVPs. Law 360 honors five (5) attorneys nationwide with this honor and I was the only plaintiff-side attorney on the list in 2022.

- <u>Law 360: Employment Law Practice Group of Year:</u> In January 2023, my law firm (The deRubertis Law firm, APC) was recognized by Law 360 as one of its five Employment Law Practice Groups of the Year for 2022. My firm, a two-attorney firm in 2022, is one of two plaintiff-side firms on the list. The other plaintiff-side firm had over 100 attorneys.

- <u>Am Law Litigation Daily – Litigator of the Week:</u> In June 2022, I was honored as "Litigator of the Week" by Am Law Litigation Daily for my work in securing the record-setting jury verdict in the *Martinez/Page v. Southern California Edison, et al.* case.

- <u>"Joe Posner Award" from the California Employment Lawyers Association (CELA):</u> In 2011, I was the recipient of the California Employment

Lawyers' Association's (CELA) "Joe Posner Award." CELA is a statewide organization of over one thousand employee rights lawyers – the largest statewide organization of employee rights attorneys in the Country. The "Posner Award" is CELA's highest recognition and it is given to an individual for a career of work dedicated to advancing employee rights. To date, I remain the youngest-ever recipient of this honor (37 years-old).

- <u>Daily Journal's Top 10 Plaintiff-Side Employment Lawyer & Top Labor and Employment Lawyer (2009-2023):</u> In both 2009 and 2010, I was honored as one of the Top 10 Plaintiff-Side Employment Lawyers in California by Los Angeles & San Francisco Daily Journals. In 2011, the Daily Journal re-styled this honor as "Top Labor & Employment Lawyers." In 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022 and 2023. I was given this recognition. I am either the only plaintiff-side employment lawyer in California, or one of only two, to have been recognized by the Daily Journal in its top employment lawyers lists every year since the inception of this recognition in 2009.

- <u>Daily Journal's "Top Plaintiffs' (2022, 2016 & 2014):</u> In 2022, the Los Angeles & San Francisco Daily Journals recognized the jury verdict I obtained as lead counsel in the *Martinez/Page v. SoCal Edison, et al.* case as the number one verdict for 2022 on its "Top Plaintiffs' Verdicts by Dollar" annual list. This verdict was the largest jury verdict in California in 2022 for any type of case. Also, in both 2014 and 2016, the Los Angeles & San Francisco Daily Journals recognized jury verdicts I obtained as lead counsel as being among the "Top Plaintiffs' Verdicts by Impact" for those years. In 2014, I received this honor for my successful federal jury trial in the case of *Zulfer v. Playboy Enterprises*. In 2016, I received this honor for my successful state court jury trial in the case of *Hernandez v. Pacific Bell/AT&T*.

- <u>Benchmark Litigation: Labor & Employment Star (2022 & 2023)</u>: In both 2022 and 2023, Benchmark Litigation recognized me as one of its nationwide Labor & Employment Stars.

- <u>Top 100 Southern California Super Lawyer:</u> From 2011-2023, I have been honored as a "Top 100 Southern California Super Lawyer" by Los Angeles Magazine and Law & Politics, through the vote of my peers. In addition to being recognized as a "Top 100 Southern California Super Lawyer" from

2011-2023, in 2010, I was recognized as a Super Lawyer in Employment Litigation. And, from 2005 through 2009, I was recognized as a Rising Star Super Lawyer by Los Angeles Magazine and Law & Politics – a distinction given to 2.5% of Southern California lawyers who are either under forty (40) years of age or have been in practice for less than ten (10) years.

- <u>American Board of Trial Advocates (ABOTA) Associate Member:</u> In 2012, at thirty-eight (38) years-old, I was inducted into the American Board of Trial Advocates (ABOTA) at the rank of Associate.

- <u>Best Lawyers in America - Employment Law - Individuals:</u> In addition to my "Lawyer of the Year" recognition discussed above, from 2012 through 2023, I have been recognized in Best Lawyers in America under the practice area of Employment Law - Individuals.

- <u>Best Law Firms in America - Employment Law- Individuals ("Tier 1"):</u> From 2013 through 2023, my law firm (The deRubertis Law Firm, APC) has been recognized in Best Lawyers in America under the practice area of "Employment Law – Individuals" and "Litigation - Labor & Employment." My firm has received a Tier 1 listing regionally in addition to a national ranking.

- <u>National Law Journal: Elite Trial Lawyers – Employment (Finalist):</u> In 2023, I was a Finalist for the National Law Journal's Elite Trial Lawyers – Employment award.

- <u>"Consumer Attorney of the Year" Finalist for Consumer Attorneys Association of California (CAOC):</u> In 2023, I am a Finalist for CAOC's "Consumer Attorney of the Year" award. The winner of this award will be announced in November 2023.

- <u>"Trial Lawyer of the Year" Finalist for Ventura County Trial Lawyers:</u> In 2023, I was a Finalist for "Trial Lawyer of the Year" for the Ventura County Trial Lawyers.

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

- "Street Fighter of Year" Finalist for Consumer Attorneys Association of California (CAOC): In both 2014 and 2015, I was Finalist for CAOC's "Street Fighter of the Year" award. This award is for smaller firm practitioners (five attorneys or less) that achieved a significant result in a case that exemplifies the everyday struggles of the small firm practitioner. In 2014, I was a Finalist for my work in the *Zulfer v. Playboy Enterprises* matter discussed above. In 2015, I was a Finalist for my pro bono representation of former firefighter Wynn Williams in the Supreme Court case of *Williams v. Chino Valley Independent Fire District* (2015) 61 Cal.4th 97.

- "Law Dragon 500 Leading Employment Lawyers": From 2020-2023, I have been recognized by Law Dragon as among the Top 500 Employment Lawyers in the Country.

- "Law Dragon 500 Leading Plaintiff Consumer Lawyers": In 2023, I was recognized by Law Dragon as among the Top 500 Plaintiff Consumer Lawyers in the Country.

- "Top 100 California Trial Lawyer": From 2008 to the present, I have been recognized as a "Top 100 Trial Lawyer" in California by The National Trial Lawyers (formerly, The ATLA), an organization that offers membership to those it deems the Top 100 trial lawyers in each state. (www.thenationaltriallawyers.org.).

- "Top 40 Under 40 Trial Lawyer": In 2012 and 2013, I was honored by The National Trial Lawyers (formerly, The ATLA) as one of the Top 40 Trial Lawyers Under 40.

- "Fellow - Litigation Counsel of America": In 2014, I was invited to join the "Litigation Counsel of America" (LCA) as a "Fellow." The LCA is an invitation-only trial lawyer honorary society whose membership is limited to 3,500 Fellows nationwide and includes members from both sides of the bar (plaintiff and defense).

- AV Preeminent Rating by Martindale Hubbell: I have achieved a preeminent AV rating by Martindale Hubbell. This AV rating reflects lawyers who have

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

achieved the highest possible peer review rating in both legal abilities and professional ethics.

7.  <u>Publications & Continuing Legal Education Seminars</u>: I have spoken or presented at in excess of one hundred continuing legal education seminars, including nationwide seminars on employment law or trying employment cases.  I have also published articles in legal periodicals regarding employment law, evidence and trial strategies. I also have published multiple articles on disability discrimination and reasonable accommodation matters particularly.

8.  <u>Leadership and Invitation-Only Professional Organization Membership</u>: I currently serve on the Board of Governors of the Consumer Attorneys Association of Los Angeles (CAALA).  I have served on the CAALA Board continuously since approximately 2012-2013.  As part of my role in CAALA, I served as a Co-Chair for CAALA's Annual Convention in Las Vegas in both 2016 and 2017.  I also currently an on the Committee planning CAALA's annual Plaintiffs' Trial Academy, an intensive trial skills training program offered by CAALA to its members.  Previously, from approximately 2007 until 2019 when I hit the term limit, I served on the Executive Board of the California Employment Lawyers Association (CELA).  As part of my involvement in CELA, for many years, I was the Chair of CELA's CACI Committee through which I typically alone drafted and submitted comments to the Judicial Council's CACI Committee during the two times per year that the Judicial Council's CACI Committee proposed amendments to the CACI instructions that impacted employment law issues.  I also served for a number of years as a member of the Board of Governors of the Consumer Attorneys of California (CAOC), as well as a three-year term on the Executive Committee of the State Bar Labor & Employment Law Section.  As part of my involvement in both CELA and CAOC, I often prepared amicus letters

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

or briefs on important issues and served as amicus counsel to both organizations.  I was also one of the original founding Board Members of the Los Angeles Trial Lawyers Charities (LATLC), a non-profit corporation with a mission of making a positive difference in the lives of people in need in the Los Angeles community through fund raising, donations and financial and other support.

9. <u>Recognized Expertise in Employment Law</u>: My expertise in employment law issues – including specifically disability discrimination and reasonable accommodation matters – is also reflected by the fact that I was asked to serve (and did serve) on an Advisory Working Group to the California Fair Employment and Housing Commission as it endeavored to draft new Regulations for the California Code of Regulations interpreting the Fair Employment and Housing Act's disability discrimination and reasonable accommodation provisions. I have also appeared before the California Law Review Commission representing CELA to offer insight and expert guidance on issues affecting employment-related contractual arbitration. Finally, I have testified to both the California Assembly Judicial Committee and Senate Judiciary Committee regarding pending employment-related legislation.

## II.   OPINIONS REGARDING HOURLY RATES AND THE SKILL, REPUTATION AND ABILITIES OF PLAINTIFF'S COUNSEL

10.   I have extensive knowledge of the prevailing hourly rates in the community for work of similar nature and complexity to the work in this case. This knowledge includes knowledge of Northern California markets, including specifically the Bay Area market. My experience and knowledge in this regard comes from a variety of sources, including: (a) my own work in fee applications in other matters; (b) my assistance to other attorneys in their fee applications, including offering expert testimony regarding prevailing market rates (which

expert testimony has been relied on in numerous trial courts throughout California in setting appropriate rates); (c) my familiarity with fee application orders in other cases; (d) my independent research and knowledge of the prevailing market rates based on fee requests of other counsel and my familiarity with rates charged in other law firms; and (e) my independent reading and research regarding law firm billing rates.  I have actively followed, monitored, researched and evaluated attorney fee rates including in the employment area for approximately 20 years now.

11.     While the overwhelming majority of my practice is contingency-based representation, my current hourly rate – the rate I charge if retained or consulted on an hourly basis on an employment law matter (whether individual, class or PAGA) – is $1,200 per hour. Based on my familiarity with prevailing market rates for work of similar complexity in the Southern California and Northern California/Bay Area markets, I can attest that this hourly rate is well within the prevailing market rate for work of similar complexity performed by attorneys of similar skill and experience in both markets

12.     I understand that the hourly rates sought in this case by the various attorneys for Plaintiff are: (a) Michael Rubin: $1,275; (b) J. Bernard Alexander, III: $1,200; (c) Lawrence Organ: $975; (d) Corinne Johnson $825; (e) Dustin Collier: $750; (f) Marqui Hood: $900; (g) Jonathan Rosenthal: $650; (h) Britt Karp: $675; (i) Navruz Avloni: $725; (j) Cimone Nunley: $500; (k) Drew F. Teti: $650; (l) Brian C. Mathias: $525; and (m) Elizabeth R. Malay: $400; Molly Durkin: $750.  Based on my personal experience and observations, as well as my familiarity with the prevailing market rates for work of similar complexity in the Bay Area market and my knowledge and understanding of these attorneys' respective reputations in the community, it is my professional opinion that all of

-11-

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

these rates are reasonable and well within the prevailing market range for work of similar complexity to the work done in this matter by attorneys of similar skill, experience, reputation and abilities.[1]

## A.   **Michael Rubin**

13.     I have known Michael Rubin for approaching 15 years.  Michael Rubin is widely considered to be one of the foremost, if not the foremost, appellate litigator handling plaintiffs-side employment matters (and other public policy cases) in California, having successfully expanded the rights of workers, consumers and others in such groundbreaking cases as *Adolph v. Uber Technologies, Inc.,* 14 Cal.5th 1104 (2023); *Dynamex Operations West v. Superior Court*, 4 Cal.5th 903 (2018); *Laffitte v. Robert Half Int'l Inc*., 1 Cal.5th 480 (2016); *Kilby v. CVS Pharmacy, Inc*., 63 Cal.4th 1 (2016); *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348 (2014); *Brinker Restaurant Corp. v. Superior Cour*t, 53 Cal.4th 1004 (2012); *Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal.4th 665 (2010); *Vasquez v. State of California*, 45 Cal.4th 243 (2008), and countless other cases in the Ninth Circuit, U.S. Supreme Court, and other state appellate courts. Mr. Rubin, who is regularly acknowledged in various publications' Top Attorneys lists, also has a well-deserved reputation for his excellent trial-level litigation skills and successes. I am familiar with the exceptionally well-crafted briefs that Mr. Rubin and his colleagues at Altshuler Berzon LLP (including Jonathan Rosenthal and Corinne Johnson) prepared in this

---

[1] Nearly a decade ago, in January 2014, the National Law Journal did an article entitled "NLJ Billing Survey: $1,000 Per Hour Isn't Rare Anymore," the point of which was that "four-figure hourly rates for in-demand partners at the most prestigious firms don't raise eyebrows – a few top earners are closing in on $2,000 an hour." Attached hereto and marked as Exhibit "A" is a true and correct copy of this article.

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

matter after the first trial, and they reflect the thorough analysis and excellent craftsmanship for which he and his law firm are justifiably known.  I have personal, firsthand knowledge of Mr. Rubin and his firm's preeminence in high-stakes, complex employment appellate matters as I, too, had a portion of my career where I regularly practiced before the California Supreme Court on employment law matters.  Indeed, I was co-counsel with Mr. Rubin in *Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal.4th 665 (2010), which was a case I had been retained to handle but given schedule conflicts Mr. Rubin took over as lead.  The work he did on that case, like all others I have personally observed, was nothing short of outstanding.  He is among, if not, the best in the business for this kind of work, as is his firm generally.

14.     I understand that Mr. Rubin seeks fees at the rate of $1,275 per hour for work on this case.  This is more than reasonable.  In fact, it is my professional opinion that Mr. Rubin's rate is below the prevailing market rate for work of similar complexity done by lawyers of similar caliber in the relevant market.

**B.     J. Bernard Alexander, III**

15.     I have known Bernard Alexander for approximately 18 years. For approximately 10 years, I served on the Executive Board of the California Employment Lawyers Association (CELA) with Mr. Alexander. I have also been a co-panelist on a number of continuing education seminars with Mr. Alexander. I was part of the committee chaired by Mr. Alexander, in the planning and creation of the Inaugural 2014 CELA Trial College in June 2014. Over the last number of years, I have regularly discussed cases, case issues, trial issues, employment law issues, etc. with Mr. Alexander and have seen firsthand his work product. Finally, I am also familiar with Mr. Alexander's stellar reputation in the employment law community.

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

16.     Based on my experience and knowledge of Mr. Alexander, I can attest both based on firsthand knowledge of the quality of his work and his reputation in the community that he is an extremely skilled, experienced and able advocate for employees in employment law cases. Mr. Alexander has extensive trial experience, which separates him from many of his colleagues who handle plaintiff-side employment cases. Mr. Alexander is extremely knowledgeable in employment law matters.

17.     In short, Mr. Alexander is an excellent, highly skilled, experienced and reputable plaintiff-side employee rights advocate. Any client represented by Mr. Alexander will find him or herself in great hands and very fortunate to have very able and skilled counsel who both knows substantive employment law and is an experienced trial lawyer.  I understand that Mr. Alexander seeks fees at the rate of $1,200 per hour for work on this case.  This is more than reasonable.  In fact, it is my professional opinion that Mr. Alexander's rate is well-within the prevailing market rate for work of similar complexity done by lawyers of similar caliber in the relevant market.

**C.     Larry Organ**

18.     I also have known attorney Larry Organ for more than two decades. Mr. Organ is one of the pioneers of employment law trial work in California having tried or participated in some of California's true landmark employment trials for literally decades including *Weeks v. Baker & McKenzie* and *Gober v. Ralphs Grocery Co*. I worked with Mr. Organ on the CELA Committee on the proposed CACI Jury Instructions which included developing comments on the initial draft instructions. This gave me first-hand insight into his abilities to research and organize legal arguments. In addition, Mr. Organ wrote a letter of support to the California Supreme Court when I sought review of the Court of

-14-

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES

Appeal Decision in *Roby v. McKesson*. I am well familiar with Mr. Organ's skill, experience, ability and reputation and have spoken to Mr. Organ, and brainstormed with him, countless times. We have both taught at the CELA Trial College on numerous occasions and most recently at Trial Lawyers University in 2022, so I have observed his teaching skills as well as his trial skills. In my opinion, his sought rate of $975 per hour is below the prevailing market rate for an attorney of his skill, ability, experience and reputation for work of similar complexity to the work done in this case.

**D.   Dustin Collier**

19.    I have known Mr. Collier for many years.  Most recently, I worked with Mr. Collier to moderate a "Case Analysis" webinar he did regarding this case in July 2022.  Then, I also worked with Mr. Collier and watched him demonstrate aspects of his trial presentation in two separate Trial Lawyers University (TLU) programs he and I taught together in 2022 where this case or portions of the trial presentation on it were featured.

20.    It is my opinion that Mr. Collier is without question one of the absolute top up-and-coming trial lawyers in California. For nearly two decades, I have spent countless hours working with, and mentoring, newer trial lawyers in California particularly employment trial lawyers. I have regularly co-counseled and tried cases with newer attorneys who are aspiring up-and-coming trial lawyers. I also regularly teach at trial-related continuing education seminars, including the CELA's Trial College and CAALA's Plaintiff's Trial Academy. From these experiences, I have seen firsthand countless newer trial attorneys and their skill levels so I have a solid basis for comparison.

21.    I have had the privilege of directly observing Mr. Collier's trial skills, including through sharing the privilege with Mr. Collier of teaching newer and

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES

aspiring trial lawyers at CELA's Trial College with Mr. Collier.  I also recently put on a multi-day nationwide continuing legal education seminar where Mr. Collier and I were the lead organizers and participants. I have never seen an employment law trial lawyer who – at a comparable year of practice – had better knowledge of trial practice, better raw advocacy skills and better general skill level as a trial lawyer than Mr. Collier. Indeed, if I were forced to select one employment trial lawyer in California at Mr. Collier's years of practice who was the best employment trial lawyer in the state for that level of years of practice, I would select Mr. Collier for that honor. In short, it is my professional opinion that Mr. Collier is as skilled, talented and outstanding an employment trial lawyer as I have ever seen from someone at his level of years of experience, and that his skill and expertise should command an hourly rate that is far beyond one determined simply by his years of practice.  I understand that Mr. Collier seeks fees at the rate of $750 per hour for work on this case.  This is more than reasonable.  In fact, it is my professional opinion that Mr. Collier's rate is below the prevailing market rate for work of similar complexity done by lawyers of similar caliber in the relevant market.

22.     While not to the same degree as Mr. Collier, I nonetheless am familiar with the work product, skill, abilities, knowledge expertise and reputation of Marqui Hood, Britt Karp, Navruz Avloni, Jonathan Rosenthal, Corinne Johnson, Cimone Nunley, Drew Teti, Brian Mathias and Elizabeth Malay. I have had the occasion to interact with and speak with most of these attorneys on employment law issues, trial of employment cases and/or this case specifically.  I have also participated in a CLE event at which Ms. Malay participated which touched on issues in this case.  All of these attorneys are very skilled employment law attorneys individually, and collectively this team makes an amazing team that performs work well above their years of practice.  In my opinion, based on my familiarity with the skill, experience,

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

abilities and reputations of these attorneys, and my familiarity with the prevailing market rates for attorneys of similar skill, experience, ability and reputations doing work of similar complexity in the relevant market, each of their sought rates is reasonable and within the prevailing market rates.

23.     Fee orders from other employment cases show that the rates sought here are well within the range of reasonableness.  Indeed, they show that the rates sought in this case fall well below the highest end of the rate spectrum despite that the lawyers involved here are excellent attorneys for this type of work.  I am aware of fee orders in other FEHA cases that approved hourly rates as high as $1,300 per hour.  For example, in April 2022, Judge Linfield of the LASC awarded attorney Carney Shegerian fees at the rate of one thousand three hundred dollars per hour in the FEHA case of *Tran v. Golden State FC, et al.*, Los Angeles Superior Court Case No. BC 699931.  Attached hereto and marked as Exhibit "B" is a true and correct copy of this order.  In addition, this same fee order approved attorney Anthony Nguyen (a 2008 admittee) the rate of $1,000 for second-chair work on this case.  *Ibid*.  This same order awarded attorney Melissa Cardenas (2012 admittee) fees at the rate of $800 per hour.  *Id*.  This, too, illustrates the reasonableness of the rates sought here.  Similarly, the same order approved attorney Mark Lim (a 2016 admittee) at $700 per hour and attorney Leo Livshits (a 2020 admittee) at $600 per hour.  *Id*.  Again, the approval of these rates supports the reasonableness of the rates sought here for sure.  As another example, in December 2021, Judge Richard L. Fruin awarded attorney Carney Shegerian fees at the rate of $1,300 per hour for his work in the FEHA case of *Garcia etc. v. Seltzer-Doren Management Company, Inc.*, et al., Los Angeles Superior Court Case No. BC 699421.  Attached hereto and marked as Exhibit "C" is a true and correct copy of this fee order.  In it, in addition to awarding Mr. Shegerian the rate

-17-
DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES

of $1,300 per hour, Judge Fruin awarded attorney Anthony Nguyen fees at the rate of $900 per hour for work in a second-chair capacity – again, well above even Mr. Collier's sought rate here.  *Id.*  In the same order, Judge Fruin also awarded attorney William Reed fees at the rate of $850 per hour and attorney Mark Lim (a 2016 admittee) fees at the rate of $650 per hour for work in a third-chair capacity.  *Ibid.*  I offer the above to show that the rates sought here are well below the rates sought and awarded in this type of case, even though the Plaintiff's team in this case is as good a team as one can assemble.

24.     I am also aware of the fact that partners at well-respected law firms that regularly defend employment cases like this charge hourly rates well above the rates sought here. For example, I can attest with personal knowledge based on review of court records that certain partners in the employment department of Paul Hastings, LLP regularly charge rates well above $1,000 per hour defending employment cases. Paul Hastings, LLP firm regularly defends employment matters like this case. In fact, I personally have litigated or handled now approaching 20 separate employment matters defended by the Paul Hastings firm in the last approximately five years.

25.     Through a review of court records, I located fee litigation handled by the Paul Hastings firm in connection with the defense of an employment-related matter, which included briefing in 2019. The supporting declarations in this fee litigation confirm the following rates were charged and that the rates stated below "are the same rates Paul Hastings generally charges to its clients," and that "[t]hese rates are commensurate with rates of other top law firms in the Los Angeles area and are therefore reasonable."  The rates charged were: (1) Partner Dennis Ellis: $1,275 per hour in 2018, $1,200 per hour in 2017, $1,100 per hour in 2016, and $1,050 in 2015; (2) Partner Elena Baca: $1,200 per hour in 2019, $1,100 per hour

in 2019, $1,050 per hour in 2017, $1,025 per hour in 2016 and $975 in 2015; (3) Associate Nicholas Begakis [2007 admission]: $850 per hour in 2016, $790 per hour and $765 per hour in 2015; (4) Associate Scott Klausner [2013 admission]: $875 per hour in 2018, $775 per hour and $745 per hour in 2017, $670 per hour and $645 per hour in 2016, $550 per hour and $475 per hour in 2015; (5) associate Jennifer Milazzo [2017 admission]: $735 per hour in 2019, $635 per hour and $600 per hour in 2018 and $510 per hour in 2017; (6) associate Paul Kind [2015 admission]: $765 in 2018; and (7) post-bar clerk Daniel Rojas [June 2019 admission]: $560 in 2018.  Attached hereto and marked as Exhibit "H" is a true and correct copy of the Declaration of Elena R. Baca in support of Defendant David Danziger's motion for attorney's fees in the case of *Charney v. Danziger*, L.A.S.C. Case No. BC 585664.  Attached hereto and marked as Exhibit "I" is a true and correct copy of the Supplemental Declaration of Elena R. Baca in support of David Danziger's motion for attorney's fees in the case of *Charney v. Danziger*, L.A.S.C. Case No. BC 585664.  The rate information set forth above can particularly be found at: Exhibit "H" at paragraphs 10 through 15 and Exhibit "I" at paragraphs 6 through 11.

26.     Likewise, I am aware that attorney Yesenia Gallegos.[2] a 2004 admittee who is an employment law partner at McDermott Will & Emery, LLP has billed at the rate of $1,030 per hour to defend an individual employment case in 2021 litigated in the Bay Area.  Relatedly, in the same case, the McDermott associate who was admitted in 2014 billed at the rate of $910 per hour.  Attached hereto and marked as Exhibit "J" is a true and correct copy of the Declaration of Yesenia Gallegos, Esq. filed in the matter of *Miyagishima v. Avison Young-Northern California, LTD*, Case No. CGC-20-584874.  In paragraph 4 of her

---

[2] https://www.mwe.com/people/gallegos-yesenia-m/

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Declaration, Ms. Gallegos testifies as follows: "My hourly rate is $1030.00, and the hourly rate of my colleague, Emory Moore, is $910.00." According to the McDermott firm's website, Emory D. Moore, Jr. is an associate at the firm who obtained his J.D. in 2014.[3]

27.    Similarly, I am aware that attorney Jessica Perry, a 2000 admittee who is an employment law partner at the Orrick firm based in Menlo Park, has billed at the rate of $1,170 per hour in defending an individual employment cases being litigated in the Bay Area. In this same matter, associate attorney Anjali Vadillo who was admitted in 2017 billed at the rate of $805 per hour. Attached hereto and marked as Exhibit "K" is a true and correct copy of the Declaration of Anjali Vadillo (exhibits omitted) in the matter of *Kramer v. Carta, Inc., et al.*, San Francisco Superior Court Case No. CGC-20-585478. Additionally, it is noteworthy that Ms. Perry (who, again, billed at $1,170 per hour in this matter) was not the lead partner on the case. Rather, Lynne C. Hermle is listed as the lead attorney on the caption. Based on my familiarity with Ms. Hermle and Ms. Perry, it is overwhelmingly likely that Ms. Hermle was billing at a much higher rate than Ms. Perry on this case. Thus, Ms. Perry's rate is likely not the highest billing rate being charged by Orrick on the matter.

28.    Through a review of court records, I located a fee dispute brought by Tesla's trial counsel in this matter, Quinn Emmanuel. The firm represented Los Angeles County in a case where the sheriff was accused of wrongfully rehiring a deputy who was accused of domestic abuse. *County of Los Angeles v. Sheriff Alex Villanueva, et al.*, Los Angeles Superior Court Case No. 19STCP00630. Attached hereto and marked as Exhibit "L" is a true and correct copy of the complaint in Quinn Emmanuel's subsequent suit for attorneys' fees, *Quinn Emmanuel Urquhart*

---

[3] **Error! Main Document Only.**https://www.mwe.com/people/emory-d-moore-jr.

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

& *Sullivan, LLP v. County of Los Angeles, et al.*, Los Angeles Superior Court Case No. 23STCV19134. This complaint contains a copy of Quinn Emmanuel's 2019 retainer agreement. The retainer agreement reflects an hourly billing rate of $1400 for Steven Madison, who is listed as the lead attorney in the caption and was admitted to the California Bar in 1981. It also reflects an hourly billing rate of $695 for Scott Mills, who was admitted to the California Bar in 2016.

29.     I have also reviewed the National Law Journal Billing Survey for 2017, 2016 and 2014.[4]  The Survey is an annual survey of law firm billing rates. The data contained in this survey on attorney fee rates confirms that first chair level partners at quality law firms which defend employment cases regularly charge rates above and consistent with those sought here.  The following chart illustrates data found from the Survey for firms that regularly defend employment cases such as this case.  I am personally aware that each of the firms listed below defends employment matters in California.  Indeed, I have handled employment matters against many of the firms listed below.  In cases where the firm's information is contained in the 2017 Survey, that information is provided in the chart below without an asterisk after the "Firm Name."  If the firm's information was not contained in the 2017 survey, then I use the data from either the 2016 survey (if included) and, if not, then the 2014 survey.  If I used data from the 2016 survey, it is denoted with two ** after the "Firm Name."  If I used information in the 2014 survey, it is denoted with one * after the firm's name in the "Firm Name" column).  All of these surveys understate the actual rates because they are stale by between four to seven years and during that four to seven year time frame rates

---

[4]  **Error! Main Document Only.** I did not rely on the 2015 survey because, unlike the 2014, 2016 and 2017 surveys, the 2015 survey did not list specific billing rates associated with specific law firms.  The NLJ stopped publishing this survey in 2017.  Thus, the 2017 date provides the most up-to-date data, though obviously not current.

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

have generally risen in the relevant market.

| Firm Name | Partner High Rate | Partner Average (If Listed) | Associate High Rate (If Listed) |
|---|---|---|---|
| Akin Gump, et al.** | $1,325 | $1,175 | $690 |
| Baker & McKenzie * | $1,130 | $755 | $925 |
| Bingham McCutchen * | $1,080 | $795 | $605 |
| Cooley | not disclosed | $1,100 | $836 |
| Dechert** | $995 | $930 | $755 |
| DLA Piper | $1,120 | $985 | $850 |
| Gibson Dunn & Crutcher | $1,195 | $1,150 | $875 |
| Greenberg Traurig | $1,080 | $790 | $475 |
| Hogan Lovells * | $1,000 | $835 | not disclosed |
| Hughes Hubbard & Reed * | $995 | $890 | $675 |
| Irell & Manella | not disclosed | $1,135 | not disclosed |
| Jones Day | $1,050 | $950 | $800 |
| King & Spalding, LLP | $1,435 | $1,000 | $790 |
| Morrison & Foerster * | $1,195 | $865 | $725 |
| O'Melveny & Myers * | $950 | $715 | not disclosed |
| Pillsbury Winthrop, et al. | $1,235 | $830 | not disclosed |
| Proskauer Rose, LLP | not disclosed | $1,200 | not disclosed |

-22-

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES

| Sidley Austin | $1,180 | $1,135 | not disclosed |
| Venable * | $1,075 | $660 | $575 |
| Winston & Strawn * | not disclosed | $930 | $750 |

30.     Summing-up, based on my familiarity with the prevailing market rates for work of similar complexity to the work performed in this case, including within the Bay Area market, it is my opinion that the rates sought in this case by the attorneys reasonable and in line with the prevailing market rate for similar services within the relevant market.  In fact, as noted above, it is my professional opinion that some of the rates sought are actually below a prevailing market rate.

## III.    IMPORTANCE AND EXPECTATION OF A MULTIPLIER IN FEE-SHIFTING CIVIL RIGHTS CONTINGENT-RISK CASES.

31.     I understand that the plaintiff's attorneys took this case on a purely contingent fee basis. To date, they have not received any income for their representation of the plaintiff in this case. I understand that the plaintiff in this action could not have prosecuted this case by paying the attorneys' hourly rates (even if significantly discounted.)

32.     Contingent cases present the very real risk of working hundreds or thousands of hours that may never be fairly compensated – or compensated at all for that matter. The prospect of loss is, unfortunately, real. I can attest to this from direct experience. In fact, in 2016 I tried a case (*Duschak v. Phillips Services, Inc., et al.*) in the Los Angeles Superior Court which unfortunately resulted in a complete defense verdict. My office spent countless hours of attorney and staff time for which there will be zero compensation given our contingent representation. A similar fate awaited me in *Yadkouri v. WalMart Stores, Inc.*, (tried in the Los Angeles Superior Court) which unfortunately resulted in a

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

complete defense verdict.  Again, my office spent countless hours of attorney and staff time for which there will be zero compensation given our contingent representation of Ms. Yadkouri.  Thus, the risk inherent in contingent representation is, indeed, a reality.

33.     Further, in addition to the potential of an outright loss, even "victories" in contingent fee cases can present economic difficulties to small law offices, such as mine, or the offices of the attorneys in this case. While the case is being litigated, counsel must pay overhead, provide for their own expenses, and in most cases, pay the out-of-pocket expenses incurred on the plaintiff's behalf. And, in some contingent matters, the length of the case itself presents economic difficulty to the small practitioner that is not adequately compensated by an eventual award of fees based solely on the lodestar and without a multiplier.

34.     The prospect of a court-awarded fee does not greatly reduce the risk posed by these cases. In many cases, the prospect is nothing more than a potential that never materializes. For instance, you must win the case to get a court-awarded fee; even those cases *that seem strongest* at the outset can be lost, and sometimes are lost. Likewise, there always are pitfalls and unforeseen obstacles that arise along the way, such as settlement offers that the client may accept without ensuring that counsel receives a reasonable fee, or changes in the law that substantially affect the merits of the case, or other uncertainties involving the client.

35.     For these and other reasons, as an attorney who takes cases on a contingent basis with the availability of statutory attorney's fees, it is my opinion that an enhancement of the hourly rate is necessary to make the fee in such cases reasonable, and to make it feasible for attorneys to take such cases. Simply put, an

award of the lodestar amount without an enhancement does not compensate the attorney for the contingent risk undertaken.

36.     Given the contingent risk and substantial investment of time on this case, the extensive litigation through the appellate courts, and the nature of this case, it is my professional opinion that a 2.0 multiplier is warranted and should be awarded in order to ensure that a fully compensatory fee results.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and is based on my personal knowledge. If called upon to do so, I could and would testify competently to the matters stated herein.

Executed this 24th day of October 2023 at Westlake Village, California.

_____
David M. deRubertis, Esq.

DECLARATION OF DAVID M. deRUBERTIS IN SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES

# EXHIBIT A
## to DAVID deRUBERTIS Decl

*$1,000 Per Hour Isn't Rare Anymore; Nominal billing levels rise, but discounts ease blow. The National Law Journal January 13, 2014 Monday*

Copyright 2014 ALM Media Properties, LLC
All Rights Reserved
Further duplication without permission is prohibited

## THE NATIONAL
# LAW JOURNAL

The National Law Journal

January 13, 2014 Monday

**SECTION:** NLJ'S BILLING SURVEY; Pg. 1 Vol. 36 No. 20

**LENGTH:** 1860 words

**HEADLINE:** $1,000 Per Hour **Isn't Rare Anymore**;
Nominal billing levels rise, but discounts ease blow.

**BYLINE:** KAREN SLOAN

**BODY:**

As recently as five years ago, law partners charging $1,000 an hour were outliers. Today, four-figure hourly rates for indemand partners at the most prestigious firms don't raise eyebrows-and a few top earners are closing in on $2,000 an hour.

These rate increases come despite hand-wringing over price pressures from clients amid a tough economy. But everrising standard billing rates also obscure the growing practice of discounts, falling collection rates, and slow march toward alternative fee arrangements.

Nearly 20 percent of the firms included in The National Law Journal's annual survey of large law firm billing rates this year had at least one partner charging more than $1,000 an hour. Gibson, Dunn & Crutcher partner Theodore Olson had the highest rate recorded in our survey, billing $1,800 per hour while representing mobile satellite service provider LightSquared Inc. in Chapter 11 proceedings.

Of course, few law firm partners claim Olson's star power. His rate in that case is nearly the twice the $980 per hour average charged by Gibson Dunn partners and three times the average $604 hourly rate among partners at NLJ 350 firms. Gibson Dunn chairman and managing partner Ken Doran said Olson's rate is "substantially" above that of other partners at the firm, and that the firm's standard rates are in line with its peers.

"While the majority of Ted Olson's work is done under alternative billing arrangements, his hourly rate reflects his stature in the legal community, the high demand for his services and the unique value that he offers to clients given his extraordinary experience as a former solicitor general of the United States who has argued more than 60 cases before the U.S. Supreme Court and has counseled several presidents," Doran said.

In reviewing billing data this year, we took a new approach, asking each firm on the NLJ 350-our survey of the nation's 350 largest firms by attorney headcount-to provide their highest, lowest and average billing rates for associates and partners. We supplemented those data through public records. All together, this year's survey includes information for 159 of the country's largest law firms and reflects billing rates as of October.

The figures show that, even in a down economy, hiring a large law firm remains a pricey prospect. The median among the highest partner billing rates reported at each firm is $775 an hour, while the median low partner rate is $405. For associates, the median high stands at $510 and the low at $235. The average associate rate is $370.

Multiple industry studies show that law firm billing rates continued to climb during 2013 despite efforts by corporate counsel to rein them in. TyMetrix's 2013 Real Rate Report Snapshot found that the average law firm billing rate increased by 4.8 percent compared with 2012. Similarly, the Center for the Study of the Legal Profession at the Georgetown University Law Center and Thomson Reuters Peer Monitor found that law firms increased their rates by an average 3.5 percent during 2013.

Of course, rates charged by firms on paper don't necessarily reflect what clients actually pay. Billing realization rates-which reflect the percentage of work billed at firms' standard rates- have fallen from 89 percent in 2010 to nearly 87 percent in 2013 on average, according to the Georgetown study. When accounting for billed hours actually collected by firms, the realization rate falls to 83.5 percent.

"What this means, of course, is that- on average-law firms are collecting only 83.5 cents for every $1.00 of standard time they record," the Georgetown report reads. "To understand the full impact, one need only consider that at the end of 2007, the collected realization rate was at the 92 percent level."

In other words, law firms set rates with the understanding that they aren't likely to collect the full amount, said Mark Medice, who oversees the Peer Monitor Index. That index gauges the strength of the legal market according to economic indicators including demand for legal services, productivity, rates and expenses. "Firms start out with the idea of, 'I want to achieve a certain rate, but it's likely that my client will ask for discounts whether or not I increase my rate,'" Medice said.

Indeed, firms bill nearly all hourly work at discounts ranging from 5 percent to 20 percent off standard rates, said Peter Zeughauser, a consultant with the Zeughauser Group. Discounts can run as high as 50 percent for matters billed under a hybrid system, wherein a law firm can earn a premium for keeping costs under a set level or for obtaining a certain outcome, he added. "Most firms have gone to a two-tier system, with.what is essentially an aspirational rate that they occasionally get and a lower rate that they actually budget for," he said.

Most of the discounting happens at the front end, when firms and clients negotiate rates, Medice said. But additional discounting happens at the billing and collections stages. Handling alternative fee arrangements and discounts has become so complex that more than half of the law firms on the Am Law 100-NLJ affiliate The American Lawyer's ranking of firms by gross revenue-have created new positions for pricing directors, Zeughauser said.

THE ROLE OF GEOGRAPHY

Unsurprisingly, rates vary by location. Firms with their largest office in New York had the highest average partner and associate billing rates, at $882 and $520, respectively. Similarly, TyMetrix has reported that more than 25 percent of partners at large New York firms charge $1,000 per

hour or more for contracts and commercial work.

Washington was the next priciest city on our survey, with partners charging an average $748 and associates $429. Partners charge an average $691 in Chicago and associates $427. In Los Angeles, partners charge an average $665 while the average associate rate is $401.

Pricing also depends heavily on practice area, Zeughauser and Medice said. Bet-the-company patent litigation and white-collar litigation largely remain at premium prices, while practices including labor and employment have come under huge pressure to reduce prices.

"If there was a way for law firms to hold rates, they would do it. They recognize how sensitive clients are to price increases," Zeughauser said. But declining profit margins-due in part to higher technology costs and the expensive lateral hiring market-mean that firms simply lack the option to keep rates flat, he said.

BILLING SURVEY METHODOLOGY

The National Law Journal's survey of billing rates of the largest U.S. law firms provides the high, low and average rates for partners and associates.

The NLJ asked respondents to its annual survey of the nation's largest law firms (the NLJ 350) to provide a range of hourly billing rates for partners and associates as of October 2013.

For firms that did not supply data to us, in many cases we were able to supplement billing-rate data derived from public records.

In total, we have rates for 159 of the nation's 350 largest firms.

Rates data include averages, highs and low rates for partners and associates. Information also includes the average full-time equivalent (FTE) attorneys at the firm and the city of the firm's principal or largest office.

We used these data to calculate averages for the nation as a whole and for selected cities.

Billing Rates at the Country's Priciest Law Firms

Here are the 50 firms that charge the highest average hourly rates for partners.

**Billing Rates at the Country's Priciest Law Firms**

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | |
|---|---|---|---|---|---|---|---|---|
| | | | AVERAGE | HIGH | LOW | AVERAGE | HIGH | LOW |

* Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. For complete numbers, please see NLJ.com.
** Firm did not exist in this form for the entire year.

| FIRM NAME | LARGEST U.S. OFFICE* | AVERAGE FULL-TIME EQUIVALENT ATTORNEYS* | PARTNER HOURLY RATES | | | ASSOCIATE HOURLY RATES | | |
|---|---|---|---|---|---|---|---|---|
| Debevoise & Plimpton | New York | 615 | $1,055 | $1,075 | $955 | $490 | $760 | $120 |
| Paul, Weiss, | New York | 803 | $1,040 | $1,120 | $760 | $600 | $760 | $250 |

| Firm | Location | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Rifkind, Wharton & Garrison | | | | | | | | |
| Skadden, Arps, Slate, Meagher & Flom | New York | 1,735 | $1,035 | $1,150 | $845 | $620 | $845 | $340 |
| Fried, Frank, Harris, Shriver & Jacobson | New York | 476 | $1,000 | $1,100 | $930 | $595 | $760 | $375 |
| Latham & Watkins | New York | 2,033 | $990 | $1,110 | $895 | $605 | $725 | $465 |
| Gibson, Dunn & Crutcher | New York | 1,086 | $980 | $1,800 | $765 | $590 | $930 | $175 |
| Davis Polk & Wardwell | New York | 787 | $975 | $985 | $850 | $615 | $975 | $130 |
| Willkie Farr & Gallagher | New York | 540 | $950 | $1,090 | $790 | $580 | $790 | $350 |
| Cadwalader, Wickersham & Taft | New York | 435 | $930 | $1,050 | $800 | $605 | $750 | $395 |
| Weil, Gotshal & Manges | New York | 1,201 | $930 | $1,075 | $625 | $600 | $790 | $300 |
| Quinn Emanuel Urquhart & Sullivan | New York | 697 | $915 | $1,075 | $810 | $410 | $675 | $320 |
| Wilmer Cutler Pickering Hale and Dorr | Washington | 961 | $905 | $1,250 | $735 | $290 | $695 | $75 |
| Dechert | New York | 803 | $900 | $1,095 | $670 | $530 | $735 | $395 |
| Andrews Kurth | Houston | 348 | $890 | $1,090 | $745 | $528 | $785 | $265 |
| Hughes Hubbard & Reed | New York | 344 | $890 | $995 | $725 | $555 | $675 | $365 |
| Irell & Manella | Los Angeles | 164 | $890 | $975 | $800 | $535 | $750 | $395 |
| Proskauer Rose | New York | 746 | $880 | $950 | $725 | $465 | $675 | $295 |
| White & Case | New York | 1,900 | $875 | $1,050 | $700 | $525 | $1,050 | $220 |
| Morrison & Foerster | San Francisco | 1,010 | $865 | $1,195 | $595 | $525 | $725 | $230 |
| Pillsbury Winthrop Shaw Pittman | Washington | 609 | $865 | $1,070 | $615 | $520 | $860 | $375 |
| Kaye Scholer | New York | 414 | $860 | $1,080 | $715 | $510 | $680 | $320 |
| Kramer Levin Naftalis & Frankel | New York | 320 | $845 | $1,025 | $740 | $590 | $750 | $400 |
| Hogan Lovells | Washington | 2,280 | $835 | $1,000 | $705 | - | - | - |

05.24.2018

| Firm | City | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Kasowitz, Benson, Torres & Friedman | New York | 365 | $835 | $1,195 | $600 | $340 | $625 | $200 |
| Kirkland & Ellis | Chicago | 1,517 | $825 | $995 | $590 | $540 | $715 | $235 |
| Cooley | Palo Alto | 632 | $820 | $990 | $660 | $525 | $630 | $160 |
| Arnold & Porter | Washington | 748 | $815 | $950 | $670 | $500 | $610 | $345 |
| Paul Hastings | New York | 899 | $815 | $900 | $750 | $540 | $755 | $335 |
| Curtis, Mallet-Prevost, Colt & Mosle | New York | 322 | $800 | $860 | $730 | $480 | $785 | $345 |
| Winston & Strawn | Chicago | 842 | $800 | $995 | $650 | $520 | $590 | $425 |
| Bingham McCutchen | Boston | 900 | $795 | $1,080 | $220 | $450 | $605 | $185 |
| Akin Gump Strauss Hauer & Feld | Washington | 806 | $785 | $1,220 | $615 | $525 | $660 | $365 |
| Covington & Burling | Washington | 738 | $780 | $890 | $605 | $415 | $565 | $320 |
| King & Spalding | Atlanta | 838 | $775 | $995 | $545 | $460 | $735 | $125 |
| Norton Rose Fulbright | N/A** | N/A** | $775 | $900 | $525 | $400 | $515 | $300 |
| DLA Piper | New York | 4,036 | $765 | $1,025 | $450 | $510 | $750 | $250 |
| Bracewell & Giuliani | Houston | 432 | $760 | $1,125 | $575 | $440 | $700 | $275 |
| Baker & McKenzie | Chicago | 4,004 | $755 | $1,130 | $260 | $395 | $925 | $100 |
| Dickstein Shapiro | Washington | 308 | $750 | $1,250 | $590 | $475 | $585 | $310 |
| Jenner & Block | Chicago | 432 | $745 | $925 | $565 | $465 | $550 | $380 |
| Jones Day | New York | 2,363 | $745 | $975 | $445 | $435 | $775 | $205 |
| Manatt, Phelps & Phillips | Los Angeles | 325 | $740 | $795 | $640 | - | - | - |
| Seward & Kissel | New York | 152 | $735 | $850 | $625 | $400 | $600 | $290 |
| O'Melveny & Myers | Los Angeles | 738 | $715 | $950 | $615 | - | - | - |
| McDermott Will & Emery | Chicago | 1,024 | $710 | $835 | $525 | - | - | - |
| Reed Smith | Pittsburgh | 1,468 | $710 | $945 | $545 | $420 | $530 | $295 |
| Dentons | N/A** | N/A** | $700 | $1,050 | $345 | $425 | $685 | $210 |
| Jeffer Mangels Butler & Mitchell | Los Angeles | 126 | $690 | $875 | $560 | - | - | - |
| Sheppard, | Los | 521 | $685 | $875 | $490 | $415 | $535 | $275 |

05/04/2018

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Mullin, Richter & Hampton | Angeles | | | | | | | |
| Alston & Bird | Atlanta | 805 | $675 | $875 | $495 | $425 | $575 | $280 |

THE FOUR-FIGURE CLUB

These 10 firms posted the highest partner billing rates.

**THE FOUR-FIGURE CLUB**

| | |
|---|---|
| Gibson, Dunn & Crutcher | $1,800 |
| Dickstein Shapiro | $1,250 |
| Wilmer Cutler Pickering Hale and Dorr | $1,250 |
| Akin Gump Strauss Hauer & Feld | $1,220 |
| Kasowitz, Benson, Torres & Friedman | $1,195 |
| Morrison & Foerster | $1,195 |
| Skadden, Arps, Slate, Meagher & Flom | $1,150 |
| Baker & McKenzie | $1,130 |
| Bracewell & Giuliani | $1,125 |
| Paul, Weiss, Rifkind, Wharton & Garrison | $1,120 |

Contact Karen Sloan at ksloan@alm.com

**LOAD-DATE:** January 13, 2014

LexisNexis® About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2014 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT B
## to DAVID deRUBERTIS DECL

1   Raymond E. Hane III, Esq., State Bar No. 149960
    RHane@Employment-Counsel.com
2   CALIFORNIA EMPLOYMENT COUNSEL, APC
    600 Anton Boulevard, Suite 1100
3   Costa Mesa, California 92626
    Telephone Number:  (714) 462-8376
4   Facsimile Number:   (714) 462-8388

5   Carney R. Shegerian, Esq., State Bar No. 150461
    CShegerian@Shegerianlaw.com
6   Anthony Nguyen, Esq., State Bar No. 259154
    ANguyen@Shegerianlaw.com
7   Leo Livshits, Esq., State Bar No. 331605
    LLivshits@Shegerianlaw.com
8   SHEGERIAN & ASSOCIATES, INC.
    145 S. Spring Street, Suite 400
9   Los Angeles, California 90012
    Telephone Number:  (310) 860-0770
10  Facsimile Number:   (310) 860-0771

11
12  Attorneys for Plaintiff,
    THU NGUYET THI "NICKI" TRAN
13

14          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15       **FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

16

| | |
|---|---|
| 17  THU NGUYET THI "NICKI" TRAN, | Case No.:  BC 699 931 |
| 18         Plaintiff, | **The Honorable Michael P. Linfield** |
| 19  vs. | **NOTICE OF RULING RE PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES** |
| 20  GOLDEN STATE FC. LLC. KULDIP SANDHU. an individual, ADAM | |
| 21  KOZINN. an individual. AMAZON.COM. INC.. AMAZON | |
| 22  CORPORATE LLC, AMAZON.COM SERVICES. INC.. | Dept.:  34 |
| 23  AMAZON.COM.KYDC LLC, and DOES 1 through 20, inclusive, | |
| 24 | |
| 25         Defendants. | |
| 26 | Action Filed:  March 28, 2018 |
| 27 | |
| 28 | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that plaintiff Nicki Tran's Motion for Attorneys' Fees and Defendants' Motion to Tax Costs were heard on April 8, 2022, in department 34 of the Superior Court of Los Angeles, the Honorable Michael P. Linfield presiding. The Court ruled as follows:

1. Plaintiff's motion for attorney fees was granted in the total amount of $2,471,313.60, including the following hourly rates for Plaintiff's counsel:

| | | |
|---|---|---|
| · | Carney R. Shegerian | $1,300.00 |
| · | Raymond E. Hane, III | $1,000.00 |
| · | Anthony Nguyen | $1,000.00 |
| · | Melissa Cardenas | $800.00 |
| · | Leo Livshits | $600.00 |
| · | Mark Lim | $700.00 |
| · | Tori Hane | $450.00 |
| · | John David | $400.00 |

2. Defendant's Motion to Tax Costs was granted in part in the amount of $12,247.79. The Court awarded Plaintiff Thu Nguyet "Nicki" Tran costs in the amount of $163,914.13.

True and correct copies of the Court's tentative rulings, adopted at the hearing on April 8, 2022, are respectively attached hereto as Exhibit 1 and Exhibit 2.

Dated:  April 8, 2022                    SHEGERIAN & ASSOCIATES, INC.

By:  _____
       Carney R. Shegerian, Esq.

Attorneys for Plaintiff,
THU NGUYET THI "NICKI" TRAN

EXHIBIT 1

**Case Number:** BC699931   **Hearing Date:** April 8, 2022   **Dept:** 34

**SUBJECT:**          **Motion for an Award of Attorney's Fees**

**Moving Party:**     Plaintiff Thu Nguyet "Nicki" Tran

**Resp. Party:**      Defendants Golden State FC LLC, Amazon.com, Amazon Corporate LLC, Amazon.com

                     Services, Inc., and Amazon.com KYDC LLC ("Defendants")

Plaintiff Thu Nguyet "Nicki" Tran's Motion for an Award of Attorney's Fees is GRANTED in the amount of $2,471,313.60.

## I.     BACKGROUND

On March 28, 2018, Plaintiff Thu Nguyet "Nicki" Tran filed a complaint against Defendants Golden State FC, LLC, Kuldip Sandhu and Adam Kozinn to allege the following causes of action:

1.   Gender, Sex, Disability, and Medical Condition Harassment and Hostile Work Environment, Cal.Gov. Code § 12940(j);
2.   Gender Sex, Disability, and Medical Condition Discrimination, Cal. Gov. Code § 12940(a);
3.   Failure to Prevent Discrimination and Harassment, in Violation of FEHA, Cal. Gov. Code § 12940(k);
4.   Failure to Engage in a Good Faith Interactive Process, Cal. Gov. Code § 12940(n);
5.   Failure to Provide Reasonable Accommodation, Cal. Gov. Code § 12940(m);
6.   Retaliation in Violation of FEHA, Cal. Gov. Code § 12940(h);
7.   Retaliation, Cal. Lab. Code § 1102.5;
8.   Violation of the California Family Rights Act;
9.   Violation of Pregnancy Disability Leave Laws;
10.  Wrongful Discharge in Violation of Public Policy

On September 27, 2021, a jury trial commenced in this case.  On October 21, 2021, the jury trial concluded. The jury awarded Tran a total of $309,478.90 in damages. (Minute Order, February 8, 2022.)

On March 14, 2022, Plaintiff moved for an order to award her attorney's fees in the amount of $1,981,725.00 plus a multiplier of 1.75, for a total of $3,468,018.75.

On March 3, 2022, Defendants opposed the motion for attorney's fees.

On March 29, 2022, Plaintiff replied to Defendants' opposition.

## II.   ANALYSIS

### A.   Request for Judicial Notice

Plaintiff Thu Nguyet "Nicki" Tran requests that the Court take judicial notice of the following exhibits. Plaintiff submits these court records for judicial notice pursuant to Evidence Code sections 452 and 453.

1. Declaration of Elena R. Baca in Support of Defendant's Motion for Attorneys' Fees dated October 29, 2018. *Charney v. Danziger* (LASC Case No. BC 585664)
2. Supplemental Declaration of Elena R. Baca in Support of Defendant's Motion for Attorneys' Fees dated May 28, 2019. *Charney v. Danziger* (LASC Case No. BC 585664)
3. Declaration of Geoffrey G. Moss in Support of Defendant's Motion to Compel Responses and Further Responses to Special Interrogatories to Plaintiff, Set One, dated December 15, 2017. *Rudnicki v. Farmers Insurance Exchange, et al.* (LASC Case No. BC630158)
4. Declaration of Natasha L. Domek in Support of Defendant Calix, Inc.'s Opposition to Plaintiff's Motion to Compel Further Responses to Form Interrogatory 15.1, dated October 15, 2021. *Bettiga v. Calix, Inc., et al.* (Case No. SCV-264229)

The Court DENIES Plaintiff's requests for judicial notice. (Evid. Code, § 452, subd. (d).) "Although a court may judicially notice a variety of matters (Evid. Code, § 450 et seq.), only relevant material may be noticed." (*American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431, 441, fn. 7.)

### B.   Legal Standard

The determination of reasonable amount of attorney fees is within the sound discretion of trial courts. *PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095; *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal. App. 4th 1127, 1134. "In determining what constitutes a reasonable attorney fee when a contract or statute provides for such an award, courts should consider the nature of the litigation, its difficulty, the amount involved, and the skill required and success of the attorney's efforts, his or her learning, age and experience in the particular type of work demanded, the intricacies and importance of the litigation, the labor and necessity for skilled

legal training and ability in trying the cause, and the time **consumed.**" *Contractors Labor Pool, Inc. v. Westway Contractors, Inc.* (1997) 53 Cal.App.4th 152, 168.

"**Except as provided by statute or agr**eement, each party to a **lawsuit must ordinarily pay their own attorney's fees.**" (*Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 750.) During statutory fee-shifting cases, when the prevailing party is statutorily **authorized to recover their attorney's fees from the losing** party, the lodestar method is the primary method for establishing the recoverable fee amount. (*Id.*) The basic fee for comparable legal services in a community is called the lodestar; adjustment of this figure by the Court is based on factors including issue novelty/difficulty, skill in legal presentation, the extent to which litigation precludes other attorney employment, and the contingent nature of the fee award. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) "**The experienced trial judge is the best judge of the value of** professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is **clearly wrong.**" (*Id.*) Once a party **establishes that they are entitled to attorney's fees the lodestar is the** presumed analytical starting point to determine the appropriate amount. (*K.I. v. Wagner* (2014) 225 Cal.App.4th 1412, 1425.)

The court may rely on its own knowledge and familiarity with the **legal market in setting a reasonable hourly rate.** "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of **the prevailing market rate.**" (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009.) Trial courts enjoy discretion to increase or decrease the amount of attorney's fees they award pursuant to the lodestar adjustment method. Such adjustment is **known as a "fee enhancement" or "multiplier."** (*Mikhaeilpoor v. BMW of North America, LLC* **(2020) 48 Cal.App.5th 240, 247.)** "The Supreme Court has set forth a number of factors the trial court may consider in

adjusting the lodestar figure. These include: (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; [and] (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing **eligibility for an award.**" (*Id.* at 248 [cleaned up].)

C.     Discussion

Tran moves for an order to award attorney's fees in the amount of $1,981,725.00 plus a multiplier of 1.75, for a total of $3,468,018.75. Defendants note in the present case that Tran recovered "approximately 2% of what she sought at trial." (Opposition, p. 4:9.) However, attorney's fees "need not be proportional to the amount of damages recovered." (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1251; *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 415,419 [no requirement that attorneys' fees be proportionate to verdict; $1.1 million in attorney's fees after $30,3000 verdict]; *Hjelm v. Prometheus Real Estate Group* (2016) 3 Cal.App.5th 1155 [$71,652 in damages and $326,475 in attorney's fees].) In fact, "[t]here is no mathematical rule requiring proportionality between compensatory damages and attorney's fees awards, and courts have awarded attorney's fees where plaintiffs recovered only nominal or minimal damages." (*Harman, supra, 158* Cal.App.4th at p. 421 [cleaned up].)

1.     Hourly Rates

Plaintiff argues for the following hourly rates for her attorneys:

| | | |
|---|---|---|
| · | Carney R. Shegerian | $1,300.00 |
| · | Raymond E. Hane, III | $1,000.00 |
| · | Anthony Nguyen | $1,000.00 |
| · | Melissa Cardenas | $800.00 |
| · | Leo Livshits | $600.00 |
| · | Mark Lim | $700.00 |
| · | Tori Hane | $450.00 |
| · | John David | $400.00 |

(See, e.g., Shegerian Decl., ¶ 7; Hane Decl., ¶ 13; Nguyen Decl., ¶ 10; Cardenas Decl., ¶ 11; Livshits Decl., ¶ 3; Lim Decl., ¶ 3.)

Defendants question the hourly rates claimed by Tran's counsel. Tran's lead trial counsel charges $1,300 per hour while Amazon's lead trial counsel charges $1,000 per hour. (Opposition, p. 10:3-4.) Defendants raise the example of an attorney for Plaintiff Tran, Leo Livshits, who had worked on this case as a law student and was an attorney for a single year during trial who claimed $600 per hour, only $200 less than Melissa Cardenas, an attorney on Tran's counsel who possessed nine (9) years of experience at time of trial. (Opposition, p. 10:10-12.)

This Court agrees that an hourly rate of $1,300 for Plaintiff's lead counsel – or even $1,000 for Defendants' lead counsel – would appear unreasonable to the average person.  Nonetheless, eight years ago, the Court of Appeal upheld a jury's finding that $1,000/hour was, in the circumstances of that case, a reasonable hourly rate. (*Chodos v. Borman* (2014) 227 Cal.App.4th 76.) It is not clear to the Court what the limit is – or should be – on an attorney's hourly rate.  In 2018, David Boies, one of the nation's premier attorneys, charged $1,875/hour.  (See "David Boies Pleads Not Guilty, *New York Times,* Sept. 21, 2018, available at https://www.nytimes.com/2018/09/21/business/david-boies-pleads-not-guilty.html.)  In 2020, it appears that Attorney Rudolph Giuliani may have been charging a rate of $20,000/day in his representation of President Trump.  (See "Giuliani is Said to Seek $20,000 a Day in Payment for Trump Legal Work," *New York Times*, Nov. 17, 2020, available at https://www.nytimes.com/2020/11/17/us/politics/giuliani-trump-election-pay.html)

Nonetheless, this Court has been involved in this case since its inception and has observed Plaintiff's counsel at both law and motion practice and at trial.  Without diminishing the quality of defense counsel, this court has observed that Plaintiff had excellent counsel and "[e]xcellent lawyers deserve higher fees. . . ." (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 747.)

The Court finds that Plaintiff's counsel's requested hourly rates are reasonable.

2.    Number of Hours Worked

Plaintiff's counsel attests that it worked for the following number of hours on this case:

| Attorney | Total Hours |
| --- | --- |
| Carney R. Shegerian | 407.3 |
| Raymond E. Hane, III | 206.7 |
| Anthony Nguyen | 254.3 |
| Melissa Cardenas | 854.2 |
| Leo Livshits | 345 |

| | |
|---|---|
| Mark Lim | 25.3 |
| Tori Hane | 40.8 |
| John David | 111.1 |
| **TOTAL:** | 2,244.7 |

Defendants allege that Tran's counsel overstaffed the case and employed inefficient litigation practices that failed to achieve desired results. (Opposition, p. 6:23-24.) Defendants argue that they employed "a single associate and partner" while Tran's counsel used "three partners, an associate, and three law students," which resulted in what Defendants characterize "highly duplicative billing." (Opposition, p. 7:5-7.)

In Defendants' view, Tran's counsels' billing was excessive due to unneeded discovery, travel time, and deposition preparation. (Opposition, p. 8:25—9:7.) The decisions to pursue depositions of figures with little to no involvement in the case, to bring harassment claims against Amazon that were ultimately dismissed, and the repetition of arguments rejected during trial in Tran's Motion for Partial New Trial on damages offer examples of what Defendants' term unnecessary billing. (Opposition, p. 8:25—9:24.) Tran's counsel contests Defendants' arguments that, for example, that Attorney Cardenas' effort before trial was duplicative, or that Attorneys Lim and David's time spent assisting with jury selection was unnecessary. (Reply, p. 3:13-27.)

In her Reply, Tran defends her counsel's litigation time, discovery strategy, deposition supervisory time, travel time, and motion practice, but does not address Defendant's concern about overstaffing, including the "three partners, one associate, and three law students". (Reply, p. 3:1—6:25.)

It is not uncommon for courts to compare opposing counsel's fees to help determine whether the moving party's fees are reasonable. That is because a "comparative analysis of each side's respective litigation costs may be a useful check on the reasonableness of any fee request." (*Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 273, 281, quoting *Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 272. See, also, *Deane Gardenhome Ass'n v. Denktas* (1993) 13 Cal.App.4th 1394, 1399 (comparing losing party's total incurred fees with prevailing party's claim for fees); *West Coast Dev. v. Reed* (1992) 2 Cal.App.4th 693, 707; *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 584 (court expressly recognized that an opponent's time and amounts charged were probative to the determination of whether the fee claimant's time is reasonable); *Democratic Party of Washington v. Reed* (9th Cir. 2004) 388 F.3d 1281, 1287 (prevailing parties' hours were not excessive because number of hours claimed of the same

"magnitude" as their opponent's hours); *Cairns v Franklin Mint Co.* (9th Cir. 2002) 292 F.3d 1139 (declining to reduce defendant's lodestar fee calculations, in part, because opponent had incurred even greater fees).

However, in this case, Defense counsel has not offered their billing records – or even a summary of their billing records – to the Court for comparison.

Nonetheless, the Court is concerned that Plaintiff's counsel has overstaffed this case.  "Just as there can be too many cooks in the kitchen, there can be too many lawyers on a case." (*Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 38, quoting *Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 272.)

This Court recognizes that "it is appropriate for a trial court to reduce a fee award based on its reasonable determination that a routine, non-complex case was overstaffed to a degree that significant inefficiencies and inflated fees resulted." (*Morris*, *supra,* 41 Cal.App.5th at 39.)

"A trial court may not rubber stamp a request for attorney fees but must determine the number of hours reasonably expended." (*Id.*) In this case, the Court has received a voluminous attorney's fees application, including two appendices with 10 declarations and 23 exhibits.  It makes no sense for the Court to try to parse Plaintiff's counsel's billing on a line-by-line basis. "When a voluminous fee application is made the court may make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure" (*Id*. at p. 40, quoting *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 41 [internal quotation marks and ellipses deleted].)  That is because

"trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of 'the district court's superior understanding of the litigation.' [Citations.] We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." (*Fox v. Vice* (2011) 563 U.S. 826, 838 [180 L.Ed.2d 45].)

Considering all the relevant factors, the Court applies a 10% across the board reduction in Tran's counsel's hours to address Defendant's reasonable overstaffing and overbilling concerns.

The Court therefore finds that the reasonable hours incurred by Plaintiff's counsel in this case is 2,244.7 – 224.5 = 2,020.2 hours.

### 3.    Lodestar

"Under the lodestar method, the trial court must first determine the lodestar figure—the reasonable hours spent multiplied by the reasonable hourly rate—based on a careful compilation of the time spent and reasonable hourly compensation of each attorney involved in the presentation of the case." (*Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 751.)

The Court finds above that the hourly rates requested by Tran's counsel (see *supra*, §2(c)(1)) and the reduced attorney work-hour calculations (see *supra*, §2(c)(2)) are reasonable.

Thus, the lodestar in the present case is $1,765,224.00.

### 4.    Multiplier

Tran's counsel represented Plaintiff Tran on contingency. (Motion, MPA, p. 2:8-11; Shegerian Decl., ¶ 10.) This case was filed slightly more than four years ago; Tran's counsel has not received any payment during the four-year pendency of this litigation.  In addition, plaintiff's counsel has paid more than $178,727.44 in unreimbursed costs during that time. (Shegerian Decl., ¶ 11.)

Tran requests a multiplier of 1.75 given the contingent risk, the novelty and difficulty of the questions presented, the level of skill displayed, and the fact that Tran's counsel was precluded from other work. (Reply, p. 9:3—10:21.) Defendants argue that the Court should apply a 0.5 negative multiplier to the lodestar amount given Tran's "50% success rate on her claims."

The Court finds that a multiplier is warranted in the present case due to the fact that Plaintiff's counsel has worked for four years without being paid.  (By comparison, defense counsel has been paid monthly for their services.) "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.)

The S&P 500 index has doubled since this lawsuit was filed; in 2021 alone, the S&P 500 rose 26.89%. (See, e.g., Bloomberg, "Three Monster Years for the S&P 500 Set a Towering Bar for January," available at https://www.bloomberg.com/news/articles/2021-12-31/three-monster-years-in-s-p-500-set-a-towering-bar-for-january; "2021 Stock Market Year In Review," available at https://www.forbes.com/advisor/investing/stock-market-year-in-review-2021/.)

In short, during the past four years, the market has risen substantially more than 10% per year. The Court finds it reasonable to award Plaintiff's counsel a 0.1 multiplier for each year Tran's counsel litigated this case without pay. Given the four years of litigation in the present case, the Court applies a 1.4 multiplier to the lodestar amount.

Applying a 1.4 multiplier to the lodestar, Plaintiff's attorney's fees are $1,765,224.00 x 1.4 = $2,471,313.60.

III.   **CONCLUSION**

Plaintiff Thu Nguyet "Nicki" Tran's Motion for an Award of Attorney's Fees is GRANTED in the amount of $2,471,313.60.

EXHIBIT 2

**Case Number:** BC699931   **Hearing Date:** April 8, 2022   **Dept:** 34

| | |
|---|---|
| **SUBJECT:** | **Motion to Tax Costs** |
| **Moving Party:** | Defendants Golden State FC LLC, Amazon.com, Amazon Corporate LLC, Amazon.com Services, Inc., and Amazon.com KYDC LLC ("Defendants") |
| **Resp. Party:** | Plaintiff Thu Nguyet "Nicki" Tran |

Defendants Golden State FC LLC, Amazon.com, Amazon Corporate LLC, Amazon.com Services, Inc., and Amazon.com KYDC LLC Motion to Tax Costs is GRANTED in part in the amount of $12,247.79. The Court awards Plaintiff Thu Nguyet "Nicki" Tran costs in the amount of $163,914.13.

## I.   BACKGROUND

On March 28, 2018, Plaintiff Thu Nguyet "Nicki" Tran filed a complaint against Defendants Golden State FC, LLC, Kuldip Sandhu, Adam Kozinn, and Does 1 through 20, inclusive to allege the following causes of action:

1. Gender, Sex, Disability, and Medical Condition Harassment and Hostile Work Environment, Cal.Gov. Code § 12940(j);
2. Gender Sex, Disability, and Medical Condition Discrimination, Cal. Gov. Code § 12940(a);
3. Failure to Prevent Discrimination and Harassment, in Violation of FEHA, Cal. Gov. Code § 12940(k);
4. Failure to Engage in a Good Faith Interactive Process, Cal. Gov. Code § 12940(n);
5. Failure to Provide Reasonable Accommodation, Cal. Gov. Code § 12940(m);
6. Retaliation in Violation of FEHA, Cal. Gov. Code § 12940(h);
7. Retaliation, Cal. Lab. Code § 1102.5;
8. Violation of the California Family Rights Act;
9. Violation of Pregnancy Disability Leave Laws;
10. Wrongful Discharge in Violation of Public Policy

On September 27, 2021, a jury trial commenced in this case.  On October 21, 2021, the jury awarded Tran a total of $309,478.90 in damages. (Minute Order, February 8, 2022.)

On March 14, 2022, Defendants moved the Court "for an order pursuant to California Government Code § 12965, Code of Civil Procedure §§ 1033.5 and Rules of Court Rule 3.1700(b) to tax costs claimed by Plaintiff Thu Nguyet Thi "Nicki" Tran ("Plaintiff"). The motion is based on the ground that such costs

are discretionary under the fee shifting provision in the Fair Employment and Housing Act and given Plaintiff's limited success at trial she should not be awarded full costs. Further, many of Plaintiff's claimed costs are unsupported, disallowed by law, or otherwise unreasonable, and thus subject to tax." (Motion, p. 2:6-12.)

On March 28, 2022, Tran filed an opposition to Defendants' motion.

On April 1, 2022, Defendants filed a reply to Tran's opposition.

## II.   ANALYSIS

### A.   Legal Standard

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (CCP § 1032(b).)

After judgment is entered, the prevailing party "who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first." (Cal. Rules of Court, rule 3.1700(a).) "The memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in this case." (*Id.*)

In turn, the losing party may file a motion to strike or tax costs. (Cal. Rules of Court, rule 3.1700(b).) Procedurally, "[a]ny notice of motion to strike or to tax costs must be served and filed 15 days after service of the cost memorandum." (*Ibid.*)

Even where parties are unsuccessful as to certain matters, prevailing parties as defined by statute (CCP § 1032) are entitled to recover all costs reasonably incurred, and proof that parties were unsuccessful on particular items is not tantamount to a demonstration

that such costs were unreasonably incurred. (*Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1200.)

During the hearing, "the verified memorandum of costs is prima facie evidence of their propriety, and the burden is on the party seeking to tax costs to show they were not reasonable or **necessary.**" (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 131.) **"This procedure provides an orderly and efficient way of placing** disputed costs at issue on a line-item **basis.**" (*612 South LLC v. Laconic Ltd. Partnership* (2010) 184 Cal.App.4th 1270, 1285.)

"[T]he mere filing of a motion to tax costs may be a "proper objection" to an item, the necessity of which appears doubtful, or which does not appear to be proper on its face. [Citation.] However, **"[i]f th**e items appear to be proper charges the verified memorandum is prima facie evidence that the costs, expenses, and services therein listed were necessarily incurred by the defendant [citations], and the burden of showing that an item is not properly chargeable or is **unreasonable is upon the [objecting party]."** [Citations.]

**The court's first determination, therefore, is whether the statute** expressly allows the particular item, and whether it appears proper on its face. [Citation.] If so, the burden is on the objecting party to show **them to be unnecessary or unreasonable. [Citation.]"** (*Nelson, supra,* 72 Cal.App.4th at p. 131.)

If the items are properly objected to, they are put in issue and the burden of proof is on the party claiming them as costs. (*Ladas v. California State Auto Assn*. **(1993) 19 Cal.App.4th 761, 774.) "There is** no requirement that copies of bills, invoices, statements, or any other such documents be attached to the memorandum. Supporting documentation must be submitted only if costs have been put in issue **by a motion to tax costs."** (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1267.)

Code of Civil Procedure section 1033.5 sets forth various categories of recoverable costs. Some of the costs include filing, motion, and jury fees (CCP § 1033.5(a)(1).) and service of process by a public officer, registered process server, or other means (CCP § 1033.5(a)(4).) However, allowable costs shall be reasonably necessary to the conduct of litigation rather than merely convenient or beneficial to its preparation. (CCP § 1033.5(c)(2).) Section 1033.5 also explains that if an item is not mentioned in this section, these items may be **allowed or denied in the court's discretion. (CCP § 1033.5(c)(4).)**

**"Within 40 days after issuance of the remittitur,** a party claiming costs awarded by a reviewing court must serve and file in the superior **court a verified memorandum of costs under rule 3.1700." (Cal. Rules** of Court, rule 8.278(c)(1).)

    B.   <u>Discussion</u>

       1.   Timeliness

Tran's Memorandum of Costs was filed with the Court and served on Defendants by electronic service on February 23, 2022. (Memorandum of Costs, Proof of Service.) The instant motion was filed with the Court and served on Tran's counsel on March 14, 2022. Pursuant to California Rules of Court, Rule 3.1700(b)(1), the deadline to file and serve a motion to tax costs in this case was March 10, 2022. Tran's opposition was filed and served on March 28, 2022.

The Court finds that Defendants' Motion is untimely. (Opposition, p. 2:6-15.) However, the Court will still reach the substance of Defendants' arguments as Tran has not been prejudiced by Defendants' untimely filing.

       2.   Tran's Adjustments to her Memorandum of Costs

Tran excludes the following charges from her Memorandum of Costs: $2,525.10 in witness costs and $39.42 in other costs. Tran therefore requests $176,161.92 in total costs.

       3.   Court Adjustments to Tran's Memorandum of Costs

Defendants propose the following reductions in Tran's costs:

- 50% of $25,646.45 for Memorandum of Costs Item No. 12. (Motion, MPA, p. 4:7-8; Reply, p. 2:1-12.)

- $33,005.00 for Dr. Reading for Memorandum of Costs Item No. 8b, specifically $6,825.00 given Dr. Reading's inability to adjust his schedule, Tran's additional examination to which Defendants lacked access, and the rush review of the file. (Motion, MPA, p. 4:24—5:11; Reply, p. 2:14-22.)

- 50% of Dr. Hunt's $16,677.25 in fees, plus her $1,000.00 retainer for Memorandum of Costs Item No. 8b. (Reply, p. 3:1-7.)

- $821.85 in Erin Klump's Deposition fees for Memorandum of Costs No. 4e. (Motion, MPA, p. 5:17—6:1.)

- $712.00 for Barkley Court Reporters: Half Day Per Diem for Memorandum of Costs No. 4e. (Motion, MPA, p. 6:2-6.)

- $3,891.56 for Tran's hotel and meals during trial for Memorandum of Costs No. 16. (Motion, MPA, p. 6:7-12; Reply, p. 3:8-25.)

- $819.23 for parking, travel, and meal costs for local travel for Memorandum of Costs No. 16. (Motion, MPA, p. 6:13-20.)

Tran notes that Defendants "fail to offer any evidence of "reasonable: economic expert fees for similar work" to that performed by Dr. Hunt and "offer nothing beyond speculation" on a reasonable fee for Dr. Reading's services. (Opposition, p. 6:19—7:16.)

The Court finds that the costs Tran incurred given her use of Dr. Hunt and Dr. Reading are reasonable, except for the $6,825.00 outlined in the second bullet point above that is associated with Dr. Reading. Tthe Court finds that the costs associated with Erin Klump and the costs of exhibits not explicitly used at trial are reasonable. (Opposition, p. 7:17—9:18.)

The Court finds the $712.00 for Barkley Court Reporters: Half Day Per Diem, the $3,891.56 for Tran's hotel and meals during trial, and the $819.23 for parking, travel, and meal costs for local travel unreasonable and they are therefore taxed.

## III.  CONCLUSION

Defendants Golden State FC LLC, Amazon.com, Amazon Corporate LLC, Amazon.com Services, Inc., and Amazon.com KYDC LLC Motion to Tax Costs is GRANTED in part in the amount of $12,247.79 and awards Plaintiff Thu Nguyet "Nicki" Tran litigation costs in the amount of $163,914.13, as indicated below:

## Motion to Tax Costs

| Item No. | Item | Amount Requested | Amount Taxed | Amount Granted |
|---|---|---:|---:|---:|
| 1 | Filing and motion fees | $3,542.79 | $0.00 | $3,542.79 |
| 2 | Jury fees | $3,003.01 | $0.00 | $3,003.01 |
| 3 | Jury food and lodging | $0.00 | $0.00 | $0.00 |
| 4 | Deposition costs | $42,245.68 | $712.00 | $41,533.68 |
| 5 | Service of process | $3,020.70 | $0.00 | $3,020.70 |
| 6 | Attachment expenses | $0.00 | $0.00 | $0.00 |
| 7 | Surety bond premiums | $0.00 | $0.00 | $0.00 |
| 8 | Witness fees | $57,925.59 | $6,825.00 | $51,100.59 |
| 9 | Court-ordered transcripts | $0.00 | $0.00 | $0.00 |
| 10 | Attorneys fees | $0.00 | $0.00 | $0.00 |
| 11 | Court reporter fees | $15,875.98 | $0.00 | $732.00 |
| 12 | Models, blowups, photocopies | $25,646.45 | $0.00 | $25,646.45 |
| 13 | Interpreter fees | $0.00 | $0.00 | $0.00 |
| 14 | Fees for electronic filing or service | $0.00 | $0.00 | $0.00 |
| 15 | Fees for hosting electronic documents | $0.00 | $0.00 | $0.00 |
| 16 | Other | $24,901.72 | $4,710.79 | $20,190.93 |
| | TOTAL | $176,161 | | |

**TRAN v. GOLDEN STATE FC, et al.**          **LASC CASE NO.:  BC 699931**

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 11520 San Vicente Boulevard, Los Angeles, California 90049.

On April 8, 2022, I served the foregoing document, described as **"NOTICE OF RULINGS ON THE PARTIES' MOTIONS *IN LIMINE*"** on all interested parties in this action by placing true copies thereof in sealed envelopes, addressed as follows:

**Karen Kimmey, Esq.**
**kkimmey@fbm.com**
**Kelly M. Matayoshi, Esq.**
**kmatayoshi@fbm.com**
**FARELLA BRAUN + MARTEL LLP 235**
**Montgomery Street, 17th Floor**
**San Francisco, California 94104**

☐   **(BY MAIL)** As follows:

☐   I placed such envelope, with postage thereon prepaid, in the United States mail at Los Angeles, California.

☒   **(BY ELECTRONIC MAIL)**  I sent such document via electronic mail to the email(s) noted above.

☒   **(STATE)**  I declare, under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on April 8, 2022, at Los Angeles, California.

_____
Michelle Hemer

# EXHIBIT C
## to DAVID deRUBERTIS DECL

1

2

3

4

5

6

7

8

**FILED**
Superior Court of California
County of Los Angeles

DEC 1 0 2021

Sherri R. Carter, Executive Officer/Clerk
R. _Inostroza_
BY: R. INOSTROZA, DEPUTY ~~PHD~~

9    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10    **FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

11

12   ALBERT GARCIA and STEPHANIE
     GARCIA,
13
                                          Case No.:  BC 699 421
14          Plaintiffs,                   *(Consolidated with Case No. BC 699 422)*

15                                        **The Honorable Richard L. Fruin**
     vs.
16                                        ~~[PROPOSED]~~ **ORDER GRANTING**
                                          **PLAINTIFFS' MOTION FOR AN**
17   SELTZER-DOREN MANAGEMENT             **AWARD OF ATTORNEYS' FEES**
     COMPANY, INC. dba SIERRA
18   MANAGEMENT, GRESHAM
     APARTMENTS INVESTORS, and
19   SELTZER-DOREN COMPANY &
     AFFILIATES,
20
                                          Hearing Date:   December 7, 2021
21          Defendants.                   Trial:          August 2, 2021
                                          Action Filed:   March 26. 2018
22

23

24

25

26

27

28

12/13/2021

~~[PROPOSED]~~ ORDER

1    Plaintiff Albert Garcia and Stephanie Garcias' motion for attorney fees pursuant to

2    Government Code section 12965(b) came on for hearing on December 7, 2021.

3    Having read and considered plaintiffs' motion and defendants' opposition, and

4    having heard oral arguments of counsel, and good cause appearing,

5    IT IS ORDERED that plaintiffs' motion is GRANTED.

6    Defendants are ordered to pay ~~$1,263,133.~~95 in attorney fees, as stated in the

     *$1,38,447.35*

7    Court's tentative ruling, attached hereto as Exhibit 1.

8

9

10    IT IS SO ORDERED

11

12    Dated: December _10_, 2021

13    By: _Richard L. Fruin_

14    The Honorable Richard L. Fruin

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER

# EXHIBIT 1

# 12   TENTATIVE RULINGS          9:15 a.m., Tuesday, December 7, 2021

ALBERT GARCIA, STEPHANIE GARCIA v. SELTZER-DOREN MANAGEMENT
COMPANY, INC. dba SIERRA MANAGEMENT, GRESHAM APARTMENTS INVESTORS,
SELTZER-DOREN COMPANY & AFFLIATES, Case BC 699421.

## A. RULING ON PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES PLUS A MULTIPLIER:

### Attorneys' Fees Sought in Plaintiffs' Motion:

Prevailing plaintiffs by statute are authorized to seek an award for their attorneys' fees to the extent reasonably incurred to prosecute FEHA claims.

Plaintiffs in this fee motion seek attorneys' fees in the amount of $1,578,665 and ask the Court to exercise its discretion to increase that amount with a fee enhancement (a "multiplier") of 1.75, for a total attorneys' fees award of $2,762,663.75.

The court must review the attorneys' time records to prepare a lodestar analysis. The lodestar is calculated by a multiplying the number of hours for necessary legal services x a reasonable hourly rate for each timekeeper performing such tasks. Ketchum v. Moses (2001) 24 Cal. App.4th 1122, 1132 (attorneys' fees awarded after grant of a special motion to strike); Horsford v. Board of Trustees (2005) 132 Cal.App.4th 359, 394 (attorneys' fees awarded after a plaintiffs proved employment discrimination in a jury trial).

The Court in preparing a lodestar calculation has prepared the tabulations that are provided in the Appendix. Table A organizes plaintiffs' attorneys' time records to show by year the number of hours each timekeeper has charged to the litigation.

Table B reflects minor reductions in the hours reported for various timekeepers. Plaintiffs conceded a reduction in the hours reported by Messrs. Morrison and Ross, after receiving defendants' opposition to the fee motion. The Court also discovered and corrected an overcounting of 1.2 hours in Lim's time records. (Any undercounting of hours was not corrected.)

Table C contains any adjustments in the hours and billing rates for certain timekeepers by the Court in preparing its lodestar calculation.

1

**Plaintiffs Are Prevailing Parties Under the FEHA Attorneys' Fee Statute**

Plaintiffs prevailed at trial on claims alleging discrimination and retaliation under the Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq. Plaintiffs, therefore, are entitled to recover their reasonable attorneys' fees under Government Code section 12965(b), reading: "In civil actions brought under this section, the court, in its discretion, may award reasonable attorney's fees and costs...."

As stated in Horsford v. Board of Trustees 132 Cal. App. 4th supra at 394, an award of attorneys' fees "accomplishes the Legislature's expressly stated purpose of FEHA 'to provide effective remedies that will eliminate these discriminatory practices' [as identified in Gov. Code section 12920]. In order to be effective in accomplishing the legislative purpose of assuring the availability of counsel to bring meritorious actions under FEHA the goal of an award of attorney fees 'is to fix a fee at the fair market value for a particular action' [citing Ketchum v. Moses, supra, at 1132]."

Albert Garcia sued the two defendants for discrimination and retaliation based on medical condition (thyroid cancer) in violation of FEHA and for wrongful termination. The jury awarded Albert Garcia $2,352,924 in economic and non-economic damages, and further found, on clear and convincing evidence, that the defendants' conduct constituted "malice, oppression and/or fraud." In the phase 2 trial, the jury imposed $4 million in punitive damages in favor of Albert Garcia. (See, Exh. 11.)

Stephanie Garcia sued defendants for association discrimination and retaliation (based on Albert's medical condition) in violation of FEHA and for wrongful termination. (After her death Stephanie's estate was substituted in as a plaintiff.) The jury awarded the Stephanie Garcia Estate economic damages of $30,726, and further found, on clear and convincing evidence, that the defendants' conduct constituted "malice, oppression and/or fraud." In the phase 2 trial, they jury imposed punitive damages in the sum of $1,250,000 in favor of the Stephanie Garcia Estate. (Exh. 11.)

The Court, in October, denied defendants' motions for a new trial and for judgment notwithstanding the verdict.

**Trial Court Proceedings:**

The litigation spanned four years. Plaintiffs were represented by attorneys from two law firms: Ross & Morrison and Shegerian & Associates.

2

Plaintiffs retained the Ross & Morrison Law Firm in November 2017; that law firm filed separate complaints for Albert Garcia and Stephanie Garcia that were consolidated for discovery and trial.

Ross & Morrison negotiated the association of Shegerian & Associates as trial counsel in October 2018. The Shegerian Firm, however, billed limited hours to the case before this year. Carney Shegerian was plaintiffs' trial lawyer. Before 2021, he billed only 3.5 hours to the matter.

The matter was tried to a jury from July 6 to August 6, 2021 with the trial proceedings adjourned at various times to accommodate the availability of individual jurors. Mr. Shegerian was assisted during trial by Anthony Nguyen and Mark Lim.

The trial was transmitted over a video conferencing platform and was accessible to remote viewers. The proceedings available through the video facility could also be seen on a large monitor in the courtroom. Half of the jury elected to sit in the audience area of the courtroom to maintain social distancing from one another as recommended by the pandemic emergency orders. The video facility permitting the jurors seated in the audience area to better follow the trial testimony. Using the video facility counsel examining from behind the counsel table could be seen as well as the judge presiding from the bench. The video cameras did not show the witnesses testifying from the witness chair. The jury box was not visible, although the jurors spaced in the audience area could be seen. All persons in the courtroom were wearing masks over their mouth and nostrils. The video platform also allowed for remote examination of witnesses, should that be needed, and the monitor mounted on the wall was also used to project trial exhibits and excerpts played from video-graphed depositions.

The Court was surprised to see Mr. Morrison appear on the monitor before the voir dire panel was admitted into the courtroom on the first day of the trial. The Court told counsel he did not want attorneys to watch the trial remotely if they intended to seek to recover attorneys' fees for their time watching the trial. Mr. Shegerian assured the Court that attorneys who were not present the courtroom would not be seeking to charge for any time spent in watching the trial. However, the time records attached to this fee motion (Exhs. 1 and 2) show Morrison and Ross viewed large periods of the trial, and, while their time records state "no charge" for their trial-watching time, they seek to charge for hours spent in conferring with the trial team based on their watching of the trial proceedings over the teleconferencing facilty. The Court was unaware during the trial that Morrison and Ross were viewing the trial as neither turned on their cameras after the Court commented on the first day.

3

**Findings re Hours and Hourly Fee Rates for Shegerian & Associates:**

An attorney's billing rate sought in a fee motion must be shown to be necessary to a plaintiff's success; otherwise it is not under the statute "reasonably spent." [1]

Shegerian & Associates seek attorneys' fees for lawyers employed by that firm at the following hourly rates: Carney Shegerian—$1,300; Anthony Nguyen—$1,000; Jill McDonell—$1,000; Mark Lim—$700; Zackery Lynch—$375; and William Reed—$850. Time records are provided for all of those lawyers. Exhibits 3, 4, 5, 6, 7 and 8. Those lawyers, other than McDonell and Lynch, provide declarations in support of the fee request.

Little information is provided about the firm's practices in preparing time records. Mr. Nguyen made this brief statement (repeated in other declarations): "I am familiar with the proper procedure for calculating hourly bills. I understand which tasks are billable and which are not." Mr. Nguyen does not say whether the attorneys prepare the time records contemporaneously with the legal task that is reported; or whether the attorneys use actual time for their entries. The appellate decisions indicate that the trial court is to accept, unless suspicion is aroused, attorney time representations, and the Court will accept the number of hours claimed by Shegerian & Associates as substantially correct.

Having observed plaintiffs' trial team, Messrs. Shegerian, Nguyen and Lim, over the course of the trial, the Court formed a favorable opinion of their trial skills. Mr. Shegerian has previously tried cases in Department 15. He is a successful plaintiff's-side trial lawyer in employment cases. His trial skills are praised by other plaintiff's-side employment lawyers—in the declarations of Nicholas C. Rowley, Abash Homampour, Gary A. Dordick and Reza Mirroknian—in support of his requested $1,300 per hour rate. Mr. Rowley says: "As far as the Southern California legal community goes, Mr. Shegerian is among the best of the best. There is no employment lawyer in the country who has his success record or who tries as many cases." Rowley decl., para. 11. Mr. Dordick says: "I know Mr. Shegerian to be the preeminent employment lawyer in the country." Dordick decl., para 10. The Court will approve a billing rate for Mr Shegerian in this matter at $1,300 per hour.

The Court will approve a billing rate of $900 per hour for Mr. Nguyen, a 2008 law graduate. That hourly rate was approved for him by Judge Victor Chavez in 2020. Nuygen decl., para. 10. At the trial Nguyen examined two

---

[1] "'Reasonably spent' means that time spent 'in the form of inefficient or duplicative efforts is not subject to compensation. (Id at [Kitchum] 1132.'" Horsford v. Board of Trustees, 132 Cal.App.4th supra at 394.

4

witnesses and gave the rebuttal closing in the phase 2 trial. His ability during the trial to marshal the witness and documentary evidence assisted the lead examining attorney. Mr. Shegerian testified to his value to the trial team.

The billing rates charged by the attorneys practicing at Shegerian & Associates are recommended by the four declarants in a non-specific manner. Mr. Dordick says: "I also understand that Mr. Nguyen, Ms. McDonell (sic), Mr. Lim, Mr. Ross, Mr. Morrison, and Mr. Lynch, are requesting hourly rates of $1,000, $1,000, $850, $700, $975, $975, and $375, respectively. Based on my knowledge of their experience and abilities, I believe their requested rates to be within the range of comparable market rates charged by attorneys in Los Angeles." Dordick decl, para. 10. These comments are echoed in the Rowley, Homampour and Mirroknian declarations. These declarants, however, do not display any familiarity with the facts of this case nor of the actual contributions made in this case by each of the referenced attorneys. They further do not define in any way what is meant by their term "within the range of comparable market rates." The declarations provide little support for the requested lodestar rates. The Court assumes, however, because the declarants do not say otherwise, that these plaintiff's-side employment trial lawyers are proposing market rates for lawyers representing plaintiffs in contingent fee cases. As the appellate decisions state, an appropriate multiplier for a contingent fee case may be embodied in the hourly rate approved in a lodestar analysis rather than added after the lodestar calculation is made. Ketchum v. Moses, 24 Cal. App.4th supra at 1133; Horsford v. Board of Trustees, 132 Cal.App.4th supra at 394.

The Court will approve a $650 hourly rate for Mr. Lim, a 2016 law graduate. That rate for Mr. Lim was previously approved by Judge Victor Chavez. Lim examined two witnesses at trial and otherwise maintained contact with the potential witnesses during the trial.

The remaining three attorneys providing legal services for the Shegerian Law Firm with their billing rates are Jill McConell ($1,000 per hour), William Reed ($850), and Zachery Lynch ($375). McConell, a 1992 law graduate, contributed 9.9 hours, all on September 27, 2021, in preparing oppositions to defendants' motions for new trial and JNOV. (Exh. 7.) She is a specialist in preparing appellate and motion briefs. Shegerian decl., para. 24. Plaintiffs' briefs filed in opposition to defendants' post-trial motions were well researched and written. The Court will approve a lodestar $900 hourly rate for McConell.

William Reed provided legal services in attending with Mr. Morrison a mediation on July 22, 2019. His legal services were not otherwise used in the litigation. (His charge of 0.3 hours on 10/19/21 to review the Orrick declaration appears to be billed in error—there is no Orrick declaration). The Court believes that a $450 hourly rate is appropriate for Mr. Reed's contribution to the case. In

5

the mediation (which was unsuccessful) Mr. Morrison was the lead attorney; his firm was then managing the Garcia litigation. Whatever knowledge Reed gained about the case was not material as Reed provided no further legal services for the in the Garcia case.

The Court will approve an hourly rate for Mr. Lynch in the amount requested ($375). Lynch billed time to the case in the months April through September 2021; his time entries (in Exh. 6) indicate that he assisted the trial team in making contacts with the trial witnesses.

### Findings re Hours and Hourly Fee Rates of Ross & Morrison:

Andrew J. Morrison and Gary B. Ross filed declarations to support their fee request, testifying that Exhibits 1 and 2 to be "a true and correct copy of my time records detailing the time and hours I spent on this case." The declarations, however, provide no information concerning their time keeping practices such as whether each attorney recorded time entries concurrently as the legal services are provided. The time records show Ross and Morrison communicated with each other constantly about the litigation, even about routine matters. For instance, Morrison's entry for July 9, 2018 states: "review and analysis of defendants' responses to Form Interrogatories; conclude not to make a motion to compel"; while Ross' entry for the same date states "receipt, review and preliminary analysis of defendants' responses to plaintiff's first set of Form Interrogatories; strategy and analysis re: whether the bring a discovery motion (motion to compel further responses)."

Defendants' opposition complains that the Ross & Morrison time entries show extensive duplication, saying that "100 out of the total 350 entries (160 hours out of total 380 hours billed) by Mr. Ross are described as tasks performed by Mr. Morrison." Opp. 7: 11 and 22–23. Conferencing is appropriate, and often beneficial, when several attorneys are working as a team, but the extent of the conferencing in this case between Morrison and Ross when both are experienced employment lawyers and are claiming $975 per hour billing rates is a concern.

In October 2018 Ross & Morrison entered negotiations to associate a different law firm, Shegerian & Associates, to represent the plaintiffs at trial. Morrison's October 12 time entry reads: "telephone call from Gary Ross ... (he's on his way to meet client with Carney Shegerian)," while Ross' time entry three days later reads: "10/12–10/15 extensive communications with client, ADM and co-counsel re: retention of co-counsel for trial...." Ross & Morrison formally associated Shegerian & Associates as co-counsel on November 13, 2018. It is not a criticism that Ross & Morrison selected the Shegerian firm to be trial counsel but that circumstance should be considered in determining a lodestar calculation of the Ross & Morrison legal fees. In the legal market,

6

premium legal rates are accorded to lawyers who undertake to prove the case to a jury, while lesser rates are accorded to attorneys who provide legal services up to the trial.

## A. Reduction in Hours Claimed by Ross & Morrison:

Plaintiffs in their reply concede that 15.15 hours of Morrison's time was for clerical functions and should not have been included in the lodestar calculation. Plaintiffs likewise concede that 4.9 hours of Ross' time should not have been billed. The time adjustments for specific dates are shown in the Nguyen declaration filed on November 24. (These adjustments are also reflected in Table B.) These minor reductions do not address all of defendants' duplicate-billing concerns, but the Court, on the evidence it has, concludes not to make further reductions in the hours claimed for duplicate billing.

The Court will, however, deduct the Ross & Morrison hours for the time that they billed during the trial period, that is between July 5 through August 6, 2021. In this period Morrison and Ross provided to the Shegerian trial team their observations based on their remote viewing of the trial. For instance, Mr. Morrison in his time entry for July 13 (Exh. 1) states:

"Review and analysis of text from Gary Ross including discussion re potential issues due to juror attrition; email responding to same (1.25); review and analysis of brief re grossing up damages and mitigation (.08); attend trial via Court Connect – attorneys only (1.09); strategy and legal analysis re: CACI issue; read CACIs; read court of appeals ruling; draft email; shorten email; send email (1.58); extensive strategy and legal analysis re: principal/agent issues (1.08)"

The Shegerian team consisted of three experienced and prepared trial attorneys. Plaintiffs' fee motion, in the declarations, have not provided any evidence that the contributions from Messrs. Morrison and Ross based on their remote observation of the trial provided material benefit to the trial team. The Court need not make a finding that the observations of Morrison and Ross rendered during the trial had no value; they were simply duplicative of the legal services rendered by the trial team and, thus, were not reasonably necessary. The Court finds that the time was beyond what was required given the competence of the trial team.

The time, moreover, is based on counsel's remote viewing of the trial proceedings. The Court stated expressly on the trial's first day that it would not approve legal fees based on counsel's remote viewing of the trial proceedings. Plaintiffs did not at any time request any exception from that ruling.

The hours that are deducted from Mr. Morrison's time entries in July and August are 16.58; and from Mr. Ross' time entries 36.00 hours.

7

## B. Reduction in Billing Rates Claimed by Ross & Morrison:

The hourly rates claimed by Ross & Morrison ($975 per hour for each partner) are not shown to be market rates for the legal services they provided. Plaintiffs provide no evidence that other courts have approved their legal fees in any lodestar calculation. Mr. Ross identifies two employment cases in which he was the prevailing attorney (see, Ross decl. referencing Dudley v. Sycamore Hathaway, BC 500071 and Beck v. Sybase, Inc., BC 1738551), but he noticeably does not state when those victories were achieved nor what lodestar legal fee he received from the trial judges.

The Court of Appeals criticized the performance of Ross & Morrison in this action, and that fact bears upon a lodestar calculation of their reasonable legal fee. Ross & Morrison, as plaintiffs' counsel, submitted an opposition to a motion for summary judgment from Gresham Apartments Investors that failed to comply with CRC, Rule 3.116 dealing with the submission of deposition testimony as an exhibit. The trial judge for that reason struck and, therefore, did not consider the deposition evidence that was submitted to oppose the motion. The trial judge, therefore, granted the motion and dismissed defendant Gresham Apartments Investors from the action. The appellate court said: "although the [trial] court did not expressly grant summary judgment because of the procedural default, it effectively did." Slip Op. 15. The loss was rectified when the appellate court reversed the judgment that had dismissed that defendant but said the dismissal occurred because Ross & Morrison did "something we would not expect most lawyers to do." Slip Op. 14.

The appeal from the loss of the summary judgment motion caused harm to plaintiffs. It delayed the trial for more than two years, and during that delay plaintiff Stephanie Garcia contracted COVID-19 and died. Because of her death, her estate was barred from recovering non-economic damages. CCP section 377.34. The jury likely would have awarded non-economic damages to her: it awarded economic damages to her estate. That the appellate court concluded the trial judge abused its discretion in striking plaintiffs' opposing evidence because their counsel failed to submit the evidence in a manner compliant with Rule 3.1116 does not change the fact that the trial court granted summary judgment against plaintiffs' claims against Gresham Apartments Investors because Ross & Morrison did not file a rule-compliant opposition.

Plaintiffs' motion provides no explanation for how the default occurred. There is no statement, for instance, that plaintiffs' counsel were familiar with and tried to follow Rule 3.116 for submitting deposition excerpts as exhibits to a summary judgment motion. Plaintiffs' motion, furthermore, does not discuss the impact that plaintiffs' counsel's failure should have on their claims for high end legal fees.

8

Plaintiffs' failure to address this issue is separately a reason to reduce the legal fees claimed by Messrs. Morrison and Ross in their fee motion.

The Court recognizes that the Court of Appeal reversed the trial judge. The Court, however, assumes that the trial judge would have denied the summary judgment had it been required to accept the deposition exhibits that were stricken. The loss of the motion ultimately did not deprive plaintiffs an opportunity to prosecute their claims against Gresham Apartments Investors, although it reduced the damages recoverable by the Stephanie Garcia estate and caused greater expense in the prosecution of plaintiffs' claims. Defendants should not bear the expense caused by the failure of plaintiffs' counsel to comply with CRC Rule 3.1116.

In the absence of any other benchmark, the Court will approve a lodestar attorney's fee for Messrs. Morrison and Ross of $735 per hour. This is the hourly rate that defense counsel, who testifies he specializes like Ross & Morrison in employment litigation, received in representing defendant Gresham Apartments Investors in this case. Mackey decl., para. 15.

## Findings re Plaintiffs' Fee Enhancement Claim:

"[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted based on factors including as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. (Sorano III, supra, 20 Cal.3d at p.49.) The purpose of such adjustment is to fix a fee at the fair market value for the particular action." Ketchum v. Moses (2001) 34 Cal.4th 1122, 1132.

Only one of the four factors identified in the Ketchum decision is applicable to plaintiffs' fee motion.

The case did not present novel or difficult questions. The underlying facts for the wrongful termination claims were not disputed at trial. As the Court said in its written rulings denying defendants' post–trial motions: "Selzer–Doran Management manages 35 other apartment buildings, and, as a practice, employs couples to serve as resident managers in each apartment building, providing them with the use of an apartment during their employment as their principal compensation. Defendants argued that although Albert was an exemplary employee, no complaints ever having been received about him, the termination of the Garcias as employees and as tenants was justified because complaints had been received about Stephanie and defendants had concluded that her personality was not conducive to her duties in showing and renting vacant apartments." The principal issue at trial, given that defendants were

9

informed of Albert's medical condition, was whether defendants' reason for terminating the Garcias' employment and evicting them from their home was pretextual. This issue is not novel; it is the issue in FEHA termination cases. Presenting evidence on the issue was not uniquely difficult. Defendants had little documentation to support their contention that Stephanie's performance was deficient or that they had given notice to Stephanie that her performance as a rental manager was deficient. (The Court sustained Mr. Shegerian's immediate objection to defendants' attempt to introduce the vacancy rates in other Seltzer-Doren managed buildings because defendants had objected to plaintiffs' efforts before trial to obtain that information.) Whether Gresham Apartments Investors was liable for the termination decision made by its management agent Seltzer-Doren was potentially a significant issue but not one that required legal analysis at trial because the issue was decided before trial by the Court of Appeals.

Ross & Morrison did not find the need to take extensive factual discovery. The parties exchanged written discovery which is standard for an employment case. Ross & Morrison took four depositions, all of employees of defendants, and defended only the two depositions taken of the plaintiffs. The depositions taken after the matter was remanded back to the trial court were of each side's designated experts. The meager discovery supports the view that the case did not present novel or difficult issues.

The second factor—the skill displayed at trial—does not merit a fee enhancement. The skill of plaintiffs' lead trial counsel has earned for him a lodestar attorney's fee of $1,300 per hour. The trial team, as a unit, was effective in investigating and in presenting facts at trial to support plaintiffs' argument that they were subject to unlawful discrimination. Shegerian's examination of adverse witnesses was prepared, aggressive and focused, as needed in this case, but that would be expected from a $1,300 per hour lawyer. The lodestar fee rate establishes the presumptive market value for a lawyer's time. The Court finds no basis to go beyond that presumptive value in this case.

The Court disagrees with Mr. Nugyen's argument that the fact the jury returned a substantial verdict for the plaintiffs in itself establishes the verdict was produced by the skills of their lawyers. Reply 1: 14-16. The substantial verdict in this case derived from its facts: defendants expelled plaintiffs from their home and their employment because Albert Garcia required treatment and recuperation time for throat cancer and defendants argued their failure to accommodate Albert's medical condition with explanations that the jury, apparently, did not find credible.

This Court, when considering whether a multiplier to a lodestar is appropriate, is guided by our Supreme Court in its Ketchum decision:

> "[A] trial court should award a multiplier for exceptional representation
> only when the quality of representation far exceeds the quality of
> representation that would have been provided by an attorney of
> comparable skill and experience billing at the hourly rate used in the
> lodestar calculation. Otherwise, the fee award will result in unfair double
> counting be unreasonable." 24 Cal 4ᵗʰ, supra, at 1139.

Applying that guidance to this case, the question is: did the Shegerian trial
team obtain results that would not have been expected from another high-
priced plaintiff's-side employment lawyer (say, Gary Dordick)?  The fee motion
provides no evidence to conclude that the quality of plaintiffs' trial lawyers "far
exceeds" that would have been obtained by another lawyer of comparable skills.

Plaintiffs gesture to the third factor—that taking this case "precluded
other employment"—but no facts are offered to support any such assertion.
Shegerian states: "The trial in this case demanded that Plaintiff's counsel spend
more than 10 hours per day on multiple days. Thus, this commitment had a
dramatic ability of (sic) counsel's ability to accept work in other cases."
Shegerian decl. para. 21. Mr. Shegerian offers no facts for his statement. Did
his firm turn down other meritorious cases? The 10 hour work days occurred
when Mr. Shegerian was trying this action, altogether nine days. The Garcia
trial, moreover, occurred during the first month in which the LASC re-opened
for civil jury trials. The fact that Shegerian does not identify any other trial for
which he was committed (and which he could not continue to a future date)
suggests his statement is formulaic and not based on fact. Ross & Morrison, the
other law firm representing plaintiffs, do not say that their firm was precluded
from representing other clients because of the demands of this case. Their time
records do not indicate their commitment to this case precluded other legal
work.

There is, in sum, no evidence that either Shegerian or Ross & Morrison
rejected other cases because of their commitment to this case. There being no
supporting facts, the Court disregards entirely the assertions that plaintiffs'
counsel were precluded from other work because of the demands of this case.

The fourth factor—that counsel represented plaintiffs under a
contingency contract—does merit a modest increase in the lodestar amount.
The multiplier in a contingency case recognizes that there will be a delay, even
in a successful case, in the payment of front-end legal fees and costs. There
has been a delay, in this case, in payment to plaintiffs' counsel as legal fees,
assuming that counsel would otherwise have been paid on a monthly basis.
However, most of Shegerian & Associates' legal fees were incurred within the
last ten months, substantially mitigating any burden due to a delay in payment.
(The attorneys' fee award will draw 10 percent interest once entered in the

11

judgment.) The legal fees incurred by Ross & Morrison have accrued over four years, although two of those years can be attributed to their procedural default that resulted in a grant of summary judgment subsequently reversed on appeal. The high hourly fees claimed as lodestar rates by lawyers representing clients with FEHA claims suggest that those rates already include a contingency premium. Those high hourly rates claimed by attorneys in employment cases are attested to in plaintiffs' motion. Rowley decl., para. 9; Dordick decl., para. 9; Homampur decl., para. 15; and Mackey decl., paras. 15 and 16. As the Horsford decision states: "The contingency adjustment may be made at the lodestar phase of the court's calculation or by applying a multiplier to the noncontingency lodestar calculation (but not both)." 132 Cal.App.4th supra at 395.

Plaintiffs also make an argument that is beyond the analysis structure prescribed by controlling authority, namely that in establishing a fee enhancement the Court should award a high multiple because the Dow Jones Average has increased dramatically since when this case was filed. That argument is specious. The lodestar–plus–multiplier approach "anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." Ketchum v. Moses 24 Cal.4th supra at 1134. Investing after–tax earnings in the stock market is a bet on a roulette wheel; it does not provide an "objective determination" to recognize what a willing buyer and a willing seller will pay in a marketplace for legal services rendered on a noncontingent basis. The Court thinks less of plaintiffs' motion for making this fallacious argument.

The Court, after reviewing the factors pertinent to this case, shall award a 1.1 multiplier to the lodestar calculation.

Attorneys' Fee Award.

The attorneys' fee awarded to plaintiffs in this case is $1,263,133.95. That calculation of this amount is shown on Table C in the Appendix. The lodestar is to be multiplied by a 1.1 fee enhancement.

B. RULING ON DEFENDANTS' MOTION TO TAX COSTS

The Court has reviewed the motion but has not prepared a written tentative ruling.

BC699421 - TIME SHEET TABULATION
RE: MOTION FOR ATTORNEY FEES

**[TABLE A]   ORIGINAL HOURS**

| Attorney | Rate/hr | Exh. Total | Exh # | Table Total | HOURS BILLED BY YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $975.00 | 382.20 | #2 | 410.18 | 26.85 | 118.80 | 155.03 | 44.75 | 64.75 |
| Morrison | $975.00 | 529.00 | #1 | 529.00 | 2.45 | 146.69 | 252.01 | 79.29 | 48.76 |
| Shegerian | $1,300.00 | 195.70 | #3 | 195.70 | 0.00 | 2.60 | 0.60 | 0.30 | 192.20 |
| Nguyen | $1,000.00 | 180.10 | #4 | 181.10 | 0.00 | 5.00 | 7.10 | 0.80 | 168.20 |
| Lim | $700.00 | 279.90 | #5 | 278.70 | 0.00 | 0.00 | 24.60 | 7.90 | 246.20 |
| Reed | $850.00 | 15.80 | #8 | 15.80 | 0.00 | 0.00 | 15.50 | 0.00 | 0.30 |
| Lynch | $350.00 | 94.60 | #6 | 94.60 | 0.00 | 0.00 | 0.00 | 0.00 | 94.60 |
| McDonell | $1,000.00 | 9.90 | #7 | 9.90 | 0.00 | 0.00 | 0.00 | 0.00 | 9.90 |

**TABLE B-1**

| | EXH* | Conceded | Reduced | TOTAL |
|---|---|---|---|---|
| Ross | 382.20 | 4.90 | 16.58 | 360.72 |
| Morrison | 529.00 | 15.15 | 36.00 | 477.85 |
| Shegerian | 195.70 | 0.00 | 0.00 | 195.70 |
| Nguyen | 180.10 | 0.00 | 0.00 | 180.10 |
| Lim | 279.90 | 0.00 | 1.20 | 278.70 |
| Reed | 15.80 | 0.00 | 0.00 | 15.80 |
| Lynch | 94.60 | 0.00 | 0.00 | 94.60 |
| McDonell | 9.90 | 0.00 | 0.00 | 9.90 |

**[TABLE B]   AMENDED HOURS**

| Attorney | Rate/hr | Exh. Total | Exh # | Table Total | HOURS BILLED BY YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $975.00 | 360.72 | #2 | 410.18 | 26.85 | 115.55 | 153.68 | 44.45 | 28.75 |
| Morrison | $975.00 | 477.85 | #1 | 514.05 | 2.45 | 144.62 | 239.51 | 78.79 | 32.10 |
| Shegerian | $1,300.00 | 195.70 | #3 | 195.70 | 0.00 | 2.60 | 0.60 | 0.30 | 192.20 |
| Nguyen | $1,000.00 | 180.10 | #4 | 181.10 | 0.00 | 5.00 | 7.10 | 0.80 | 168.20 |
| Lim | $700.00 | 278.70 | #5 | 278.70 | 0.00 | 0.00 | 24.60 | 7.90 | 246.20 |
| Reed | $850.00 | 15.80 | #8 | 15.80 | 0.00 | 0.00 | 15.50 | 0.00 | 0.30 |
| Lynch | $350.00 | 94.60 | #6 | 94.60 | 0.00 | 0.00 | 0.00 | 0.00 | 94.60 |
| McDonell | $1,000.00 | 9.90 | #7 | 9.90 | 0.00 | 0.00 | 0.00 | 0.00 | 9.90 |

**[TABLE C]   AMENDED HOURS & RATES**

| Attorney | Rate/hr | HOURS | FEES | Table Total | FEES PER YEAR | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2017 | 2018 | 2019 | 2020 | 2021 |
| Ross | $735.00 | 360.72 | $265,129.20 | 0.00 | $19,734.75 | $84,929.25 | $112,954.80 | $32,670.75 | $21,131.25 |
| Morrison | $735.00 | 477.85 | $351,219.75 | 0.00 | $1,800.75 | $106,295.70 | $176,039.85 | $57,910.65 | $23,593.50 |
| Shegerian | $1,300.00 | 195.70 | $254,410.00 | 0.00 | $0.00 | $3,380.00 | $780.00 | $390.00 | $249,860.00 |
| Nguyen | $900.00 | 180.10 | $162,090.00 | 0.00 | $0.00 | $4,500.00 | $6,390.00 | $720.00 | $151,380.00 |
| Lim | $650.00 | 278.70 | $181,155.00 | 0.00 | $0.00 | $0.00 | $15,990.00 | $5,135.00 | $160,030.00 |
| Reed | $450.00 | 15.80 | $7,110.00 | 0.00 | $0.00 | $0.00 | $6,975.00 | $0.00 | $135.00 |
| Lynch | $350.00 | 94.60 | $33,110.00 | 0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $33,110.00 |
| McDonell | $900.00 | 9.90 | $8,910.00 | 0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $8,910.00 |

$1,263,133.95

# EXHIBIT H
## to DAVID deRUBERTIS DECL

PAUL HASTINGS LLP
ELENA R. BACA (SB# 160564)
elenabaca@paulhastings.com
JENNIFER L. MILAZZO (SB# 318356)
jennifermilazzo@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant
David Danziger

**FILED**
Superior Court of California
County of Los Angeles

**OCT 2 9 2018**

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Patrice Offord

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

DOV CHARNEY, an individual,

                    Plaintiff,

         v.

DAVID DANZIGER, an individual; and
DOES 1 to 50, inclusive,

                    Defendants.

CASE NO. BC585664

**DECLARATION OF ELENA R. BACA IN
SUPPORT OF DEFENDANT DAVID
DANZIGER'S MOTION FOR
ATTORNEYS' FEES**

[Notice of Motion and Motion; Memorandum
of Points and Authorities and [Proposed] Order
filed and served concurrently herewith]

Date:      June 4, 2019
Time:      8:45 a.m.
Dept.:     14
Judge:     Hon. Terry A. Green

**RESERVATION ID: 181026360333**

ORIGINAL

DECLARATION OF ELENA R. BACA IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
LEGAL_US_E # 138379706.3

1

**DECLARATION OF ELENA R. BACA**

2      I, Elena R. Baca, hereby declare and state as follows:

3      1.      I am an attorney duly admitted to practice law before all the Courts of the State of

4   California and this Court.  I am a Partner at the law firm of Paul Hastings LLP and counsel of

5   record for Defendant David Danziger.  I make this declaration in support of Danziger's Motion

6   for Attorneys' Fees (the "Fees Motion").  I have personal knowledge of the facts set forth below,

7   and if called as a witness, I would and could competently testify thereto.

8      2.      Plaintiff Dov Charney ("Plaintiff") filed his Complaint in this action on June 19,

9   2015.  In response, Danziger filed an initial Special Motion to Strike Charney's Complaint

10  pursuant to California Civil Procedure Code Section 425.16.  Charney responded to the motion

11  with a demand for specified discovery under CCP 425.16(g).  Danziger, through counsel, made

12  extensive efforts to meet and confer with Charney to discuss his discovery demands, all to no

13  avail.

14     3.      On July 24, 2018, Danziger filed an Amended Special Motion to Strike pursuant to

15  California Civil Procedure Code Section 425.16 (the "anti-SLAPP Motion").  Charney opposed

16  this motion on August 3, 2018, which was not served on Danziger until August 6, 2018, leaving

17  Danziger with less than 48 hours to prepare a reply.  In support of his opposition filing, Charney

18  placed in the public record privileged information and information subject to protective orders in

19  other proceedings.  Danziger's counsel sought to meet and confer regarding Charney's improper

20  disclosures but received no response.  A hearing was held on the anti-SLAPP Motion on

21  August 15, 2018, during which this Court granted Danziger's anti-SLAPP Motion and struck

22  Charney's Complaint in its entirety.  A true and correct copy of excerpts of the August 15, 2018

23  hearing transcript is attached hereto as "Exhibit A."  The Court's August 17, 2018 Court Ruling is

24  attached hereto as "Exhibit B."

25     4.      Attorneys from Paul Hastings billed more than 456.6 hours of time on work

26  related to Danziger's anti-SLAPP Motion.  This work consisted of developing an efficient, cost-

27  effective litigation strategy, analyzing Charney's papers, investigating Charney's allegations,

28  researching legal issues, drafting and revising the anti-SLAPP Motion and Reply, drafting and

-2-

1  revising the supporting declarations and related filings, and preparing for and arguing at the

2  hearing on the anti-SLAPP Motion.  Attached hereto as "Exhibit C" is a true and correct copy of

3  redacted invoices prepared by Defendants' counsel that reflect time spent and billed through

4  September 21, 2018, in connection with Paul Hastings' preparation of the anti-SLAPP Motion.

5  Exhibit C has been redacted to preserve attorney-client and attorney work product information,

6  while providing sufficient support for the fees sought to be recovered by the Fees Motion.

7       5.      Attached hereto as "Exhibit D" is a summary of the time and aggregate value of

8  time based on the standard hourly rates, organized by year and billing attorney, contained in the

9  redacted invoices attached as Exhibit C.  Exhibit D was prepared by Paul Hastings in the regular

10  course of business at my direction after my review of Paul Hastings invoices in this matter.

11  Exhibit D reflects a true and accurate summary of the time spent and billed through

12  September 21, 2018 in connection with Paul Hastings' preparation of the anti-SLAPP Motion.

13       6.      I am familiar with Paul Hastings' billing rates and practices.  Paul Hastings has an

14  established procedure for recording time spent on client matters.  Each attorney records the time

15  worked on each client matter describing their work done.  These time records are submitted to

16  Paul Hastings's Accounting Department.  At the end of each month, the Accounting Department

17  prepares client billing statements which set forth the services rendered and the hours spent

18  performing each task that month.  The billing statements submitted to Danziger in this matter

19  were prepared in accordance with established procedures for recording time and tasks spent on

20  client matters.

21       7.      I have reviewed the billing statements submitted to Danziger by Paul Hastings in

22  connection with this case and found them to be accurate.  Paul Hastings' monthly billing

23  statements are maintained in the ordinary course of business and establish that Paul Hastings

24  attorneys spent more than 456 hours defending Danziger against Charney's claims in this matter.

25  All of the time billed was reasonably necessary and required in the defense of those claims.  Any

26  time that was determined to be excessive, redundant, or otherwise unnecessary, was "written off"

27  and not billed.  Paul Hastings' customary standard billing rates are commensurate with the rates

28  of attorneys of similar skill, experience, and expertise in the same area.  The hourly billing rates

-3-

DECLARATION OF ELENA R. BACA IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
LEGAL_US_E # 138379706.3

1    submitted herewith are the standard and customary hourly rates charged by Paul Hastings to other

2    clients for attorneys' work.  Applying the standard hourly rates charged annually to the hours

3    worked on this matter in each year, results in the aggregated value for 456.6 hours worked.  The

4    invoices sent to the client for the attorney time and work in this matter exceeded $280,000.00.

5    For purposes of this motion, only $280,000.00 is requested.

6           8.     Paul Hastings is consistently recognized as the national leader in employment

7    discrimination class action defense litigation.  Paul Hastings has been named "Global

8    Management Labour and Employment Law Firm of the Year" by *The International Who's Who*

9    *of Business Lawyers* every year since 2006.  Paul Hastings has been named *The American*

10   *Lawyer's* "Labor and Employment Litigation Law Firm of the Year" twice and is consistently

11   ranked in Band 1 for Labor and Employment Law in *Chambers USA*.  Paul Hastings attorneys are

12   also the authors and editors of several published authorities on employment law, including the

13   Lindeman & Grossman, *Employment Discrimination Law* treatise, which is repeatedly cited by

14   the U.S. Supreme Court in interpreting Title VII law.

15          9.     I am Chair of Paul Hastings Los Angeles office and Co-Vice Chair of the Global

16   Employment Law practice.  I have been licensed to practice law in the state of California since

17   1992 and have been a labor and employment lawyer for more than 20 years.  I graduated from

18   Notre Dame Law School in 1992.  I am a former law clerk to the Hon. Consuelo B. Marshall

19   (United States District Court, Central District of California) and a former adjunct professor in

20   complex civil litigation for Pepperdine University Law School.  I have represented employers in

21   the entire range of employment law matters, including but not limited to employee mobility, wage

22   and hour, whistleblower issues, discrimination, hostile work environment, breach of contract and

23   related tort claims (including defamation).  I have tried multiple jury cases to conclusion in state

24   and federal courts and litigated and tried numerous arbitrations.  Although I am based in the Paul

25   Hastings Los Angeles office, I regularly litigate in district and state courts across the country.

26          10.    I am a Fellow of the Trial Lawyer Honorary Society.  I have been consistently

27   ranked by Chambers USA and the *Legal 500* as one of the top employment defense lawyers in

28   California.  I have been selected continuously since 2006 as one of the *Best Lawyers in*

-4-

1    *America* in employment law. I have been named repeatedly as one of California's "Top Women

2    Lawyers" and as one of California's "Top Labor and Employment Attorneys" by the *Los Angeles*

3    *Daily Journal*. The *American Lawyer* also recognized me in its "Top 45 Under 45" list. My

4    standard hourly billing rates have been $975.00 (2015); $1,025.00 (2016); $1,050.00 (2017); and

5    $1,110.00 (2018).

6        11.    Dennis Ellis graduated from Howard University School of Law in 1995. He is a

7    Partner in the Paul Hastings Litigation Department and is Chair of the Complex Litigation and

8    Trial Practice group. Mr. Ellis is a Fellow of the Litigation Counsel of America's Trial Lawyer

9    Honorary Society. He was named Lawyer of the Year by *California Lawyer* magazine. Mr. Ellis

10    has been named a "Super Lawyer" every year since 2007 and was previously named a "Rising

11    Star" by *Los Angeles* magazine. Mr. Ellis' hourly billing rates have been $1,050.00 (2015);

12    $1,100.00 (2016); $1,200.00 (2017); and $1,275.00 (2018).

13        12.    Nicholas Begakis graduated from the University of California, Hastings College of

14    the Law in 2007. Before leaving the firm, he was an associate in the Paul Hastings Litigation

15    Department. Mr. Begakis was named a "Rising Star" by *Los Angeles* magazine. Mr. Begakis

16    hourly billing rates have been $765.00 and $790.00 (2015); and $850.00 (2016).

17        13.    Scott Klausner graduated from Loyola Law School in 2013. Prior to practicing at

18    Paul Hastings, Mr. Klausner served as law clerk to the Honorable Arthur L. Alarcon of the U.S.

19    Court of Appeals for the Ninth Circuit. Mr. Klausner's hourly billing rates have been $475.00

20    and $550.00 (2015); $645.00 and $670.00 (2016); $745.00 and $775.00 (2017); and $840.00 and

21    $875.00 (2018).

22        14.    Jennifer Milazzo graduated from the University of California Los Angeles School

23    of Law in 2017. Prior to practicing at Paul Hastings, Ms. Milazzo served as a judicial extern to

24    the Honorable Stephen Wilson of the Central District of California. Ms. Milazzo's hourly billing

25    rates have been $510.00 (2017); and $600.00 and $635.00 (2018).

26        15.    These are the same rates Paul Hastings generally charges to its clients. These rates

27    are commensurate with rates of other top law firms in the Los Angeles area and are therefore

28    reasonable.

-5-

1    16.    Paul Hastings has not yet finalized bills for its services relating to the instant Fees

2  Motion, but based on my evaluation of Paul Hastings' attorney time-tracker software, I estimate

3  that Paul Hastings attorneys have billed approximately 30 hours on work related to this Fees

4  Motion.  I further anticipate that Paul Hastings attorneys will bill approximately 15 hours

5  preparing the Reply in Support of the Fees Motion and preparing for and attending the hearing on

6  this Motion.  Prior to the hearing, Paul Hastings will file and serve a supplemental declaration

7  describing all fees incurred in connection with this Fees Motion.

8    I declare under penalty of perjury under the laws of the United States and the State of

9  California that the foregoing is true and correct.

10    Executed this 29th day of October, 2018, at Los Angeles, California.



By:  _____
                    Elena R. Baca

DECLARATION OF ELENA R. BACA IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
LEGAL_US_E # 138379706.3

11/01/2018

**EXHIBIT A**

# Charney vs. Danziger

## Reporter's Transcript of Proceedings
## August 15, 2018



www.aptusCR.com / 866.999.8310

PAGE 7

**Transcript of Proceedings**                    **Charney vs. Danziger**

1   IF THAT'S GOING TO BE THE ALLEGED STATEMENT, THE STATEMENT

2   WOULD BE TO ROTH WE HAVE THIS OUTSIDE INVESTIGATION, AND

3   THEY HAVE FOUND ALL OF THESE IMPROPRIETIES, AND I CAN'T TELL

4   YOU WHAT THEY ARE, BUT IF YOU KNEW WHAT THEY WERE THEN YOU'D

5   AGREE, AND THEY HAVE -- SURE ENOUGH THE BOARD COMES OUT WITH

6   THIS -- TO MEASURE, PARAGRAPH 3, MISUSE OF CORPORATE ASSETS

7   AND SO EVERYTHING ABOUT THE EXISTENCE OF THE INVESTIGATION,

8   ABOUT IT BEING SERIOUS, AND ABOUT HOW THE BOARD OR -- HE

9   WOULD AGREE THAT'S AN OPINION BUT THE BOARD AGREED, AND

10  MAYBE IN SOME PERFECT PLATONIC UNIVERSE, CHARNEY IS INNOCENT

11  OF THESE CHARGES.  BUT THAT WASN'T -- THAT'S NOT WHAT WE'RE

12  DEALING WITH HERE.  WE'RE DEALING WITH:  WAS THERE AN

13  INVESTIGATION?  DID HE DID SAY THERE WAS AN INVESTIGATION?

14  DID HE IMPLY WHAT THE OUTCOMES WERE?  IN FACT WAS CHARNEY

15  DISMISSED BY THE BOARD OF DIRECTORS AND WAS ONE OF THESE --

16  THESE ARE THE GROUNDS STATED.  SO THOSE ARE ALL TRUE

17  STATEMENTS.   I MEAN THERE'S NO ONE FALSE STATEMENT THERE.

18          NOW YOU'RE TAKING THIS OFF INTO SOME OTHER LEVEL OF

19  THE UNIVERSE --

20          MR. MULLER:  YOUR HONOR --

21          THE COURT:  -- WHERE BUT, ACTUALLY, IF I'D ONLY

22  KNEW THE THAT TRUTH, WE'D BEEN WITH CHARNEY THROUGHOUT --

23          MR. MULLER:  YOUR HONOR, IF MR. DANZIGER -- HE

24  COULD HAVE TOLD THE TRUTH TO MR. ROTH WHEN MR. ROTH CALLED

25  HIM.  HE COULD HAVE SAID, "YOU KNOW WHAT?  HE DIDN'T ENGAGE

26  IN ANY FINANCIAL MALFEASANCE.  THERE WAS NO MISCONDUCT" --

27          THE COURT:  I DON'T DISAGREE --

28          MR. MULLER:  -- "BUT WE HAVE JUST DECIDED TO

1   SUSPEND HIM, AND WE'RE GOING TO SAY THAT THAT'S THE REASON

2   THAT WE'RE SUSPENDING HIM FOR, BUT THERE'S NOT REALLY

3   FINANCIAL MISCONDUCT."  HE COULD HAVE SAID THAT.  THAT WOULD

4   HAVE BEEN TRUTHFUL.  AND IF HE HAD DONE SO, MR. ROTH WOULD

5   HAVE SAID "THANK YOU VERY MUCH, DAVID" AND HE WOULD GONE

6   AHEAD AND SUPPORTED MR. CHARNEY IN THE PROXY FIGHT, BUT

7   INSTEAD HE LIED --

8           THE COURT: IT WOULD CERTAINLY BE DISTURBING IF IN

9   FACT THE BOARD LET THEM FOR SOMETHING THAT WOULD PROVABLY

10  ANNOYING FALSE, BUT THAT'S NOT BEFORE US.  OKAY.

11          MR. MULLER:  YOUR HONOR, IT IS TANGENTIALLY BEFORE

12  THE COURT TO THE EXTENT THAT HE TOLD MR. ROTH FALSELY THAT

13  THEY HAD REASONS JUSTIFYING THE SUSPENSION.  "IF YOU KNEW

14  WHAT WE KNEW, YOU WOULD AGREE."  THAT WAS FALSE.

15          THE COURT:  LOOK.  I DON'T AGREE WITH YOU.  I THINK

16  THIS -- THE DEFENSE POSITION IS BY FAR THE STRONGER POSITION

17  HERE.  I'M GOING TO GRANT THE ANTI-SLAPP.

18          THIS CASE, LIKE THE OTHER CASES, HAS BEEN

19  EXTRAORDINARILY WELL ARGUED AND BRIEFED.  I'VE ENJOYED

20  READING IT.  I'VE ENJOYED ENGAGING COUNSEL ON THIS.  I'VE

21  ENJOYED READING THE COURT OF APPEAL OPINIONS ON THIS; SO

22  YOU'VE HAD FUN WITH THE COURT OF APPEAL TOO.  AND NO DOUBT

23  THIS ONE WILL GO TO THE COURT OF APPEAL.  IT HAS SOME NEW

24  WRINKLES TO IT, AND I'M CURIOUS TO SEE HOW THEY HANDLE IT.

25          I'VE ENJOYED ALL OF YOU, AND I APPRECIATE YOUR

26  GREAT WORK.  I'M GOING TO GRANT THE MOTION.  I'LL ISSUE AN

27  OPINION TO GET TO THE COURT OF APPEAL, ALONG WITH THE

28  COMMENTS HERE IN COURT, AND GOOD LUCK THERE.

```
1            BEST OF LUCK, AND THE CASE WILL BE DISMISSED NOW
2    BECAUSE ALL -- THIS GOES TO ALL CAUSES OF ACTION.  THEY'RE
3    ALL DERIVATIVE FROM THAT MOTION.  OKAY?
4            MR. MULLER:  YES, YOUR HONOR.
5            THE COURT:  YES.
6            THE CLERK:  IS THERE A LIST OF THE ITEMS THAT ARE
7    TO BE SEALED?
8            THE COURT:  I'M JUST GOING TO GRANT THE EX PARTE
9    CONDITIONALLY UNTIL THE 20TH SO --
10           THE CLERK:  SO THERE'S ALL THE DOCUMENTS --
11           THE COURT:  YOU'RE GOING TO HAVE TO --
12           MS. BACA:  I WILL LET MR. KLAUSNER NAVIGATE THE
13   LIST --
14           THE COURT:  YES.  MR. KLAUSNER, IF YOU COULD WORK
15   WITH MADAM CLERK -- YOU KNOW, I FORGET --- SHE ACTUALLY HAS
16   TO CARRY OUT THIS BOOTS-ON-THE-GROUND ORDER SO -- AND WHEN
17   WE SAY "SEAL OF RECORDS," SHE HAS TO KNOW WHAT THEY ARE.
18           MR. KLAUSNER:  SURE, YOUR HONOR.
19           THE COURT:  OKAY.  THANK YOU, FOLKS.
20           MS. BACA:  THANK YOU.
21
22           (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)
23
24
25
26
27
28
```

**Transcript of Proceedings**                                    **Charney vs. Danziger**

1      SUPERIOR COURT OF THE STATE OF CALIFORNIA

2           FOR THE COUNTY OF LOS ANGELES

3

4   DEPARTMENT 14                    HON. TERRY A. GREEN, JUDGE

5

6   DOV CHARNEY, AN INDIVIDUAL        )
                                      )
7                     PLAINTIFF,      )
    VS.                               )  CASE NO. BC585664
8                                     )
    AMERICAN APPAREL, INC., A         )
9   DELAWARE CORPORATION; DAVID       )
    DANZINGER, AN INDIVIDUAL, AND DOES )
10  1 TO 50,                          )
                                      )
11                    DEFENDANTS.     )
    ──────────────────────────────────)
12

13                 REPORTER'S

14                 CERTIFICATE

15

16        I, ROSA M. SAMPLES, C.S.R. NO. 12383, COURT

17   REPORTER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

18   FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

19   FOREGOING PAGES 1 THROUGH 44 PAGES, INCLUSIVE, COMPRISE A

20   FULL, TRUE, AND CORRECT COMPUTER-AIDED TRANSCRIPT OF THE

21   PROCEEDINGS TAKEN IN THE ABOVE-ENTITLED MATTER ON 15TH OF

22   AUGUST, 2018.

23

24        DATED THIS 12TH DAY OF SEPTEMBER, 2018.

25

26

27        ROSA M. SAMPLES, C.S.R. 12383
          OFFICIAL COURT REPORTER PRO TEMPORE

28

11/01/2018

**EXHIBIT  B**

# COURT RULING

|  |  |  |
|---|---|---|
| | *Charney v. American Apparel, Inc., et al.*<br>BC 585 664 | **FILED**<br>Superior Court of California<br>County of Los Angeles |
| TYPE OF MOTION: | Special Motion to Strike Complaint. | **AUG 17 2018** |
| MOVING PARTY: | Defendant, David Danziger. | Sherri R. Carter, Executive Officer/Clerk<br>By _____ Deputy<br>Marisa Ventura |
| RESPONDING PARTY: | Plaintiff, Dov Charney. | |
| HEARING DATE: | Wednesday, August 15, 2018. | |

Plaintiff is the founder of Defendant American Apparel, Inc. (hereinafter "American Apparel"); Defendant David Danziger (hereinafter "Danziger") was a director on Defendant American Apparel's Board beginning in June 24, 2011. On June 18, 2014, plaintiff was terminated by the Board. Plaintiff claims that Defendant Danziger, in a deliberate move to quash plaintiff's efforts to regain control of Defendant American Apparel, contacted Defendant American Apparel's second largest shareholder, Joharmes Minho Roth (hereinafter "Roth") of FiveT Capital (hereinafter "FiveT"). Plaintiff alleges that Defendant Danziger directly and falsely told Roth that plaintiff was under criminal investigation. Plaintiff asserts that, as a direct result of this false representation to Roth, Roth informed plaintiff that FiveT could not support him in his struggle to retake Defendant American Apparel. Plaintiff also claims that Defendant Danziger made statements to Lyndon Lea (hereinafter "Lea"), co-founder of Defendant American Apparel investor Lyon Capital, which disparaged and demeaned plaintiff.

On June 19, 2015, plaintiff filed his complaint for (1) Defamation; (2) False Light; (3) Intentional Interference with Actual Economic Relations; (4) Intentional Interference with Prospective Economic Relations and (5) Violation of Business & Professions Code § 17200, et seq. against Defendants American Apparel, Danziger, and DOES 1-50. On February 23, 2017, plaintiff voluntarily dismissed Defendant American Apparel, *with prejudice.*

Defendant Danziger now moves this court, per Code of Civil Procedure § 425.16 to strike the entire Complaint on the grounds that it is based upon communications and conduct in furtherance of his rights of petition and free speech under the United States and California Constitutions and Plaintiff cannot establish a probability of success on the merits.

The court has ruled on all objections. Defendant's Request for Judicial Notice is GRANTED *as to the existence of the documents, and the fact that certain statements were made, but not as to the truth of the contents.* Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort (2001) 91 Cal.App.4th 875, 882. Defendant's motion is GRANTED.

Code of Civil Procedure § 425.16 states, in pertinent part, as follows:

(b)(1) A cause of action against a person arising from any act of

that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(c)(1) Except as provided in paragraph (2) [N/A here], in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.
. . .

(e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest . . . .

"A special motion to strike under section 425.16—the so-called anti-SLAPP statute—allows a defendant to seek early dismissal of a lawsuit that qualifies as a SLAPP. 'SLAPP is an acronym for "strategic lawsuit against public participation."' (Jarrow Formulas, Inc. v. LaMarche (2003) 31 C.4th 728, 732, fn. 1). A SLAPP is '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)." Nygard, Inc. v. Uusi-Kerttula (2008) 159 Cal.App.4th 1027, 1035.

2

"A SLAPP is subject to a special motion to strike 'unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)." Nygard, supra, 159 Cal.App.4th at 1035. The "evaluation of an anti-SLAPP motion requires a two-step process in the trial court," which is addressed below. Id. An anti-SLAPP motion may be directed at one particular theory of recovery within a cause of action, so that the motion will be successful as to that theory, even if an alternate theory still supports the cause of action. Baral v. Schnitt (2016) 1 Cal.5th 376, 392-396.

Protected Activity

The moving party bears the initial burden of showing that the action falls within the class of suits subject to the special motion to strike. Matson v. Dvorak (1995) 40 Cal.App.4th 539, 548; Dixon v. Superior Court (1994) 30 Cal.App.4th 733, 742; Wilcox v. Superior Court (1994) 17 Cal.App.4th 809, 819.

Plaintiff does not contest Defendant's assertion that the conversations carried on by Danziger with Roth, and then with Lea, were in held connection with an issue of public interest, and therefore fall under the protections of Subdivision 425.16(e)(4). Instead, Plaintiff contends that these conversations fall under an exception carved out by Section 425.17 for commercial speech. Plaintiff's theory is that he and Defendant Danzigger were in a competition over who would manage American Apparel. Each was offering management services to the company, Danziger as co-chairman of the board of directors, and Plaintiff in the same position and as CEO. Plaintiff characterizes Danziger's conversations as efforts to influence the shareholders who could cause American Apparel to buy his management services instead of Plaintiff's. Plaintiff's theory goes well beyond the current borders of the exception he seeks to apply.

Code of Civil Procedure § 425.17 reads in relevant part as follows:

"(c) Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:
(1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.
(2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue.
..."

3

(e) If any trial court denies a special motion to strike on the grounds that the action or cause of action is exempt pursuant to this section, the appeal provisions in subdivision (i) of Section 425.16 and paragraph (13) of subdivision (a) of Section 904.1 do not apply to that action or cause of action."

"The commercial speech exemption set forth in section 425.17, subdivision (c) is a statutory exception to section 425.16 and should be narrowly construed. The burden of proof as to the applicability of the commercial speech exemption falls on the party seeking the benefit of it—i.e., the plaintiff." Dean v. Friends of Pine Meadow (2018) 21 Cal.App.5th 91, 98 (internal quotations and citations omitted). "Section 425.17's legislative history indicates that this statutory exemption was drafted to track constitutional principles governing regulation of commercial speech based upon guidelines discussed in Kasky, supra, 27 Cal.4th 939, 119 Cal.Rptr.2d 296, 45 P.3d 243. In doing so, it followed Kasky's guidelines on commercial speech, focusing on the speaker, the content of the message, and the intended audience." Id. at 105 (internal quotations and citations omitted). Section 425.17 "is aimed squarely at false advertising claims and is designed to permit them to proceed without having to undergo scrutiny under the anti-SLAPP statute." JAMS, Inc. v. Superior Court (2016) 1 Cal.App.5th 984, 994.

The Kasky guidelines are as follows.

"[C]ategorizing a particular statement as commercial or noncommercial speech requires consideration of three elements: the speaker, the intended audience, and the content of the message.

In typical commercial speech cases, the speaker is likely to be someone engaged in commerce—that is, generally, the production, distribution, or sale of goods or services—or someone acting on behalf of a person so engaged, and the intended audience is likely to be actual or potential buyers or customers of the speaker's goods or services, or persons acting for actual or potential buyers or customers, or persons (such as reporters or reviewers) likely to repeat the message to or otherwise influence actual or potential buyers or customers…

[I]n deciding whether speech is commercial two relevant considerations are advertising format and economic motivation. [Citation]. These considerations imply that commercial speech generally or typically is directed to an audience of persons who may be influenced by that speech to engage in a commercial transaction with the speaker or the person on whose behalf the speaker is acting. Speech in advertising format typically, although not invariably, is speech about a product or service by a person who is offering that product or service at a price, directed to persons who may want, and be willing to pay for, that product or service…[however,] presentation in advertising format does not necessarily establish that a message is commercial in character. [Citation]. Economic motivation likewise implies that the speech is intended to lead to commercial transactions, which in turn assumes that the speaker and the target audience are persons who will engage in those transactions, or their agents or intermediaries.

4

Finally, the factual content of the message should be commercial in character. In the context of regulation of false or misleading advertising, this typically means that the speech consists of representations of fact about the business operations, products, or services of the speaker (or the individual or company that the speaker represents), made for the purpose of promoting sales of, or other commercial transactions in, the speaker's products or services." Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 960-961.

In summary, Plaintiff must show that Defendant Danziger (1) is primarily engaged in the business of selling goods or services, (2) that his alleged statements were made about his own or a business competitors' goods or services, (3) that the representations were made for the purposes of inducing a commercial transaction, and (4) that Roth and Lea were either actual or prospective buyers, or could influence an actual or prospective buyer. Plaintiff can show none of these things. It is worth noting that Plaintiff does not cite a single factually similar case. A contest in restricted circles over who should control a company is already well afield from the usual false advertising claims which are meant to be the sole subjects of this exception.

*Primary Engagement*

Plaintiff has made no showing that Danziger's primary business is the sale of his management services. Danziger did indeed have a position that required him to manage American Apparel. However, that does not mean Danziger is in the business of selling management services. Defendant correctly points out in his reply that, if Danziger's directorate alone were enough to place him in the category of a seller of services, the entire employed population of the state would be in that same category. In the technical sense, every person who draws a wage is engaged in selling their services: everyone from the teenage grocery store clerk to the company accountant to the legislators who voted on Section 425.17, and including the judge who interprets it, is engaged in the business of selling services.[1] Having a job and drawing a salary is not sufficient to meet the first element of the Section 425.17 commercial speech exception. It can't be. Otherwise the exception would no longer be an exception; it would be the rule. Every politician talking to a voter and every employee talking to her boss would suddenly be engaged in commercial speech.

*Inducing a Commercial Transaction*

The commercial transaction here is the retention of Danziger to be co-chairman of American Apparel's board of directors. Danziger replaced Plaintiff in that position on June 18, 2014, just days before the conversations which are the subject of this lawsuit occurred. (Declaration of David Danziger ¶ 1; Declaration of Dov. Charney ¶ 9). For the reasons discussed above, the offer of or retention in employment, by itself, cannot be a "commercial transaction" within the meaning of Subdivision 425.17(c)(1). If it were, there would be no limit to this

---

[1] At oral argument, Plaintiff directed the court's attention to Simpson Strong-Tie Co., Inc. v. Gore (2010) 49 Cal.4th 12, 30, in which the Supreme Court held that an attorney issuing an advertisement is primarily engaged in selling services. That case is simply too divergent from this one to be of much help to Plaintiff. An attorney issuing an advertisement is a contractor, not an employee, and a false advertising claim is far closer to the heart of commercial speech than a private conversation over the telephone.

5

PAGE 16

exception. Any comment made by any employed person which could be construed as related to her job would meet this element.

*Buyer or Influencer*

American Apparel, through its board of directors, was the "buyer" of Danzigger's services as co-chairman. Roth and Lea were indisputably in a position to influence American Apparel. But once again, the fact that an audience member is in a position to influence an employer opens a can of worms too large to ever close again. Persons in a position to influence an employer might be anyone, from family connections to golfing buddies to consumers of the employer's goods or services. Almost anyone could meet this element.

In sum, Plaintiff has not met his burden to prove that the commercial speech exception applies to these facts. This action falls within the class of suits which are subject to a special motion to strike.

Probability of Prevailing

Once a defendant has made his/her/its prima facie showing that plaintiff's complaint "arises from" their constitutionally protected free speech activity, "the burden shifts to plaintiff to establish a 'probability' that plaintiff will prevail on whatever claims are asserted against defendant. [See CCP § 425.16(b)]." Weil & Brown, et al., Cal. Prac. Guide: Civ. Proc. Before Trial (The Rutter Group 2017), ¶ 7:1005.

"'(P)laintiff must demonstrate that the complaint is both legally sufficient and supported by a prima facie showing of facts sufficient to support a favorable judgment if the evidence submitted by plaintiff is credited. [Navellier v. Sletten (2002) 29 C4th 82, 89, 93, 124 CR2d 530, 536, 540; Soukup v. Law Offices of Herbert Hafif (2006) 39 C4th 260, 291, 46 CR3d 638, 662]." Id. at ¶ 7:1007.

Because the issue is the validity of the lawsuit as a whole, the inquiry may stop at legal sufficiency; "ruling on an anti-SLAPP motion does not necessarily require a ruling on the merits of the plaintiff's claims." Barry v. State Bar of California (2017) 2 Cal.5th 318, 326.

If the complaint is legally sufficient, the standard for evaluating the evidence is "the same standard governing a motion for summary judgment, nonsuit or directed verdict. I.e., in opposing an anti-SLAPP motion, it is plaintiff's burden to make a prima facie showing of *facts* that would support a judgment in plaintiff's favor. [Taus v. Loftus (2007) 40 C4th 683, 714, 54 CR3d 775, 799—a "summary-judgment-like procedure"; Kenne v. Stennis (2014) 230 CA4th 953, 963, 179 CR3d 198, 206 (citing text); Lunada Biomedical v. Nunez (2014) 230 CA4th 459, 469, 178 CR3d 784, 792 (citing text)]. The court *does not weigh credibility or the comparative strength of the evidence.* The court considers defendant's evidence only to determine if it defeats plaintiff's showing *as a matter of law.* [Soukup v. Law Offices of Herbert Hafif, supra, 39 C4th at 291, 46 CR3d at 662; Overstock.com, Inc. v. Gradient Analytics, Inc. (2007) 151 CA4th 688, 699-700, 61 CR3d 29, 38—rather than weigh credibility or evaluate weight of evidence, court accepts "as true all evidence favorable to the plaintiff"; *see* ¶ *7:1020 ff.*]" Id. at ¶ 7:1008 (emphasis theirs).

6

*Defamation*

"Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage. (Civ. Code §§ 45, 46; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts § 471, pp. 557-558.). Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made. Publication need not be to the 'public' at large; communication to a single individual is sufficient. (Cunningham v. Simpson (1969) 1 C.3d 301, 306; 5 Witkin, Summary of Cal. Law, *supra*, Torts, §§ 471, 476, pp. 557-558, 560-561)." Smith v. Maldonado (1999) 72 Cal.App.4th 637, 645; see Taus v. Loftus (2007) 40 Cal.4th 683, 720.

Plaintiff alleges that Defendant Danziger told Roth and Lea "that Charney was being investigated for matters 'criminal' in nature," but declined to tell Plaintiff what they were. (Complaint ¶¶ 20-21, 23). Danziger attests that he told Roth that Plaintiff had been suspended following an internal investigation which revealed facts to justify the suspension, and that Roth would understand the decision if he knew what the board of directors knew. (Declaration of David Danziger ¶ 6). Plaintiff fails to provide evidence to show that Defendant Danziger said anything false, or unprivileged.

Plaintiff seems to be arguing that he never actually did anything wrong. That is not quite the issue here. Defendant Danziger told Roth and Lea that an investigation had produced findings of criminal misbehavior by Plaintiff. (Declaration of Lyndon Lea ¶ 5). The issue is therefore whether an investigation *had* produced such findings, *not* whether those findings were themselves accurate. It is not disputed that there was an investigation, conducted by independent counsel (viz. the law firm of Jones Day, assisted by FTI Consulting, Inc. Declaration of David Danziger ¶¶ 4-5). But Plaintiff provides no evidence as to what the findings of the investigation were, which would allow this court to determine that Defendant Danziger falsely characterized them. The declaration of in-house counsel Glenn Weinman is not relevant to the element of falsity because he was not a member of the investigatory team. Danziger explains that documentary evidence from the investigation contained claims that Plaintiff had violated certain provisions of the California Penal Code. (Id. ¶ 7). Plaintiff has not met his burden of producing evidence to show that Defendant Danziger's statement was false.

Plaintiff's theories on this case show a tendency to migrate away from the true north of his pleadings. Already the evidence presented has shown that Defendant Danziger's actual comments were one slight step removed from what was pled: Defendant Danziger did not say that Plaintiff was under investigation for criminal acts, he said that an investigation had produced findings of criminal misbehavior. Plaintiff presents no evidence to suggest that this was false. In his opposition papers and at oral argument, Plaintiff makes two further shifts south in search of a warmer factual climate: he argues that the false statement can be implied from Defendant Danziger's suggestion to Roth that 'if you knew what the board knew, you would agree with its decision.' Plaintiff argues that this statement carries twin implications: (a) that the board knew something Roth didn't know, and (b) that the board had facts to justify their decision. Plaintiff contends that both of these implications were false.

The import of the pleadings is that Defendant Danziger falsely told Roth that Plaintiff was under criminal investigation. Pursued by the evidence (or lack thereof), Plaintiff's claim has now morphed into something like 'Defendant Danziger implied that the board was right in its decision.' Even if Plaintiff could amend his complaint at this late date (he cannot),[2] the amendment would still be unsuccessful. Plaintiff correctly argues that a statement which is not literally false may still be actionable if it plainly implies something which is false. When determining whether a statement has a defamatory meaning, the court must look at what reasonable interpretations exist, neither straining to arrive at a technically possible innocent meaning nor stretching to arrive at a technically possible defamatory meaning. Forsher v. Bugliosi (1980) 26 C.3d 792, 803. The question is whether a defamatory meaning would strike a reasonable auditor of the statement. And the answer is no.

Defendant Danziger said that there was an investigation of Plaintiff which produced findings of criminal misbehavior, and followed that statement with a comment to the effect that if Roth knew what the board knew, he would understand their decision. The implication of that statement is indeed that Danziger knows something Roth doesn't know: the findings of the investigation. There is no evidence that this was false, that is, that Roth knew what the investigation had found.

It may also be implied from Danziger's statement that the findings of the investigation provided a reasonable basis for the board's decision. Once again, there is no evidence that this is false. Plaintiff has produced nothing to controvert this characterization of the investigation findings. Furthermore, the statement that Roth would "understand" implicates questions of business judgment which take the statement out of the realm of things provably true or false.[3] Once again, it does not necessarily matter to this claim whether the investigation findings were accurate. It matters if a business executive, looking at those findings, would see a reason to terminate Plaintiff's services. This is not really the sort of thing that can be proved, and even if it could be, Plaintiff provides no evidence regarding those findings. Plaintiff has simply not carried his burden to prove a likelihood of prevailing on any of his theories.

*False Light Privacy*

"False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where

---

[2] Plaintiff suggested at oral argument that he should be permitted to amend his pleadings to state his new theories, citing to Nguyen-Lam v. Cao (2009) 171 Cal.App.4th 858. In that case, the Court of Appeal overlooked the plaintiff's technical failure to plead the level of malice appropriate to her slander claim (she pled conscious disregard instead of actual malice) because her evidence was sufficient to support a finding of malice at any level. Id. at 868-870. The Nguyen-Lam court was not faced with a situation in which the plaintiff wished to alter her entire theory of recovery, a request to which the law in this context is hostile. See e.g. Okorie v. Los Angeles Unified School Dist. (2017) 14 Cal.App.5th 574, 598-599; Navellier v. Sletten (2003) 106 Cal.App.4th 763, 772 (no eleventh-hour amendment may be allowed to avert an anti-SLAPP motion to strike). Special motions to strike are treated in a similar manner to a summary judgment motion (Lam v. Ngo (2001) 91 Cal.App.4th 832, 843), where it is established that a plaintiff may not present the defense with a "moving target, unbounded by the pleadings." Falcon v. Long Beach Genetics, Inc. (2014) 224 Cal.App.4th 1263, 1280.

[3] See Franklin v. Dynamic Details, Inc. (2004) 116 Cal.App.4th 375, 385-386 (defamation must be based on a statement which is provably true or false).

the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. A 'false light' claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such. A 'false light' cause of action is in substance equivalent to a libel claim, and should meet the same requirements of the libel claim, including proof of malice where malice is required for the libel claim. Indeed, when a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." <u>Jackson v. Mayweather</u> (2017) 10 Cal.App.5th 1240, 1264.

Since Plaintiff has not shown a probability of prevailing on the defamation claim, he has not shown a probability of prevailing on the false light claim.

*Interference Torts*

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." <u>Pacific Gas & Electric Co. v. Bear Stearns & Co.</u> (1990) 50 Cal.3d 1118, 1126.

"The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." <u>Settimo Associates v. Environ Systems, Inc.</u> (1993) 14 Cal.App.4th 842, 845. "The five elements for intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." <u>Youst v. Longo</u> (1987) 43 Cal.3d 64, 71, fn. 6.

"With respect to the third element, a plaintiff must show that the defendant engaged in an independently wrongful act...'an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard .... an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive.'" <u>San Jose Const., Inc. v. S.B.C.C., Inc.</u> (2007) 155 Cal.App.4th 1528, 1544-1545.

Because these claims depend on the commission of an independently wrongful act, they are derivative of the defamation claim. As discussed above, that claim fails because there is no evidence to show that Defendant Danziger's statement was false. Therefore, in the absence of an act independently wrongful, these claims are insufficient.

<div align="center">9</div>

*UCL*

"Business and Professions Code section 17200…establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent." Podolsky v. First Healthcare Corp. (1996) 50 C.A.4th 632, 647. "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. (People v. McHale (1979) 25 C.3d 626, 632)." Saunders v. Superior Court (1994) 27 C.A.4th 832, 838-839. If a business practice is alleged to be "unlawful," then the complaint "must state facts supporting the statutory elements of the alleged violation. (See G.H.I.I. v. MTS (1983) 147 C.A.3d 256 [allegations of secret rebates, locality discrimination, sale below cost, and loss leaders; complaint was sufficient]; Khoury v. Maly's of Calif. (1993) 14 C.A.4th 612, 619, citing the text [demurrer was properly sustained; complaint identified no particular statutory section that was violated and failed to describe with reasonable particularity facts supporting violation]…" 5 Witkin, Cal. Procedure (5th ed. 2008), Pleading, § 779, p. 196.

This claim is likewise derivative of the defamation claim, and likewise fails.

Conclusion

Plaintiff's claims are all derivative, in one way or another, from the claim of defamation. Defendant Danziger told Roth and Lea that an investigation conducted by independent, outside counsel had produced findings of potentially criminal misconduct by Plaintiff. These conversations are concededly protected speech under Section 425.16(e)(4). They do not fall into the commercial speech exception set forth in Section 425.17. Therefore, Defendant has carried his burden to show that this suit is subject to the anti-SLAPP statute. There is no evidence before this court which, if believed, would show that the investigation referred to by Danziger had not produced the findings he claimed. In the absence of evidence to show that Danziger's statement was false, Plaintiff has failed to carry his burden to show a probability of prevailing. Defendant's motion is therefore GRANTED.

Dated: ___8/17/18___                                _____

                                                 Judge of the Superior Court
                                                 Terry A. Green

11/01/2018

**EXHIBIT C**

# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



October 19, 2018

---

### SUMMARY SHEET

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending September 30, 2018

       Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**





PAGE 22



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



October 19, 2018

## REMITTANCE COPY

**Charney Litigation (Danzinger)**



Legal fees for professional services
for the period ending September 30, 2018

   Costs incurred and advanced

   **Current Fees and Costs Due**

   **Prior Balance Due**

   **Total Balance Due - Due Upon Receipt**





PAGE 23



Page 2

REMITTANCE COPY (cont.)

## Summary of Prior Balance Due

| Invoice Date | Invoice Number | Amount | Payments/ Trust Appl. | Credits | Balance Due |
|---|---|---|---|---|---|
| 07/31/2017 | | | | | |
| 09/25/2017 | | | | | |
| 10/25/2017 | | | | | |
| 11/21/2017 | | | | | |
| 12/20/2017 | | | | | |
| 01/15/2018 | | | | | |
| 03/26/2018 | | | | | |
| 04/23/2018 | | | | | |
| 05/30/2018 | | | | | |
| 06/21/2018 | | | | | |
| 07/27/2018 | | | | | |
| 08/21/2018 | | | | | |
| 09/26/2018 | | | | | |

**Total Prior Balance Due**

**Total Balance Due**

# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



October 19, 2018

---

FOR PROFESSIONAL SERVICES RENDERED
for the period ending September 30, 2018

## Charney Litigation (Danzinger)



| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 09/18/2018 | Elena R. Baca | A103 | Prepare stipulation to seal | 0.10 |
| 09/19/2018 | Scott M. Klausner | A107 | Correspond with opposing counsel regarding stipulation and hearing | 0.10 |
| 09/19/2018 | Scott M. Klausner | A104 | Analyze | 0.40 |
| 09/19/2018 | Scott M. Klausner | A107 | Prepare meet and confer correspondence | 0.70 |

Page 2

| | | | | |
|---|---|---|---|---|
| 09/21/2018 | Scott M. Klausner | A107 | Correspond with opposing counsel regarding depositions and deficiencies in document productions, including related analysis | 1.20 |

**Total Hours**                                                                                  **2.50**

### Timekeeper Summary

| | | | |
|---|---|---|---|
| Elena R. Baca | 0.10 | hours at | |
| Scott M. Klausner | 2.40 | hours at | |

**Costs incurred and advanced**

| Date | Description | Quantity | Rate | Amount |
|---|---|---|---|---|

**Total Costs incurred and advanced**

**Current Fees and Costs**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**

# PAUL HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



September 26, 2018

---

## SUMMARY SHEET

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending August 31, 2018

        Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**



# PAUL HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



September 26, 2018

## REMITTANCE COPY

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending August 31, 2018



        Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**



PAGE 28



Page 2

## REMITTANCE COPY (cont.)

### Summary of Prior Balance Due

| Invoice Date | Invoice Number | Amount | Payments/ Trust Appl. | Credits | Balance Due |
|---|---|---|---|---|---|
| 07/31/2017 | ██ | $█ | ██ | ██ | ██ |
| 09/25/2017 | ██ | █ | ██ | ██ | █ |
| 10/25/2017 | ██ | ██ | ██ | ██ | ██ |
| 11/21/2017 | ██ | ██ | ██ | ██ | █ |
| 12/20/2017 | ██ | ██ | ██ | ██ | ██ |
| 01/15/2018 | ██ | ██ | ██ | ██ | ██ |
| 03/26/2018 | ██ | ██ | ██ | ██ | ██ |
| 04/23/2018 | ██ | ██ | ██ | ██ | ██ |
| 05/30/2018 | ██ | ██ | ██ | ██ | ██ |
| 06/21/2018 | ██ | ██ | ██ | ██ | ██ |
| 07/27/2018 | ██ | ██ | ██ | ██ | ██ |
| 08/21/2018 | ██ | ██ | ██ | ██ | ██ |

**Total Prior Balance Due**

**Total Balance Due**





**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

September 26, 2018



FOR PROFESSIONAL SERVICES RENDERED
for the period ending August 31, 2018

**Charney Litigation (Danzinger)**



| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|
| | | | | |
| 08/06/2018 | Scott M. Klausner | A104 | Strategize | 0.80 |
| | | | | |
| 08/25/2018 | Elena R. Baca | A105 | Strategize | 0.20 |
| 08/27/2018 | Elena R. Baca | A106 | Strategize | 0.20 |
| 08/27/2018 | Scott M. Klausner | A104 | Strategize | 0.30 |



Page 2

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 08/06/2018 | Jennifer L. Milazzo | A102 | Research case law ███████ | 6.70 |
| 08/06/2018 | Jennifer L. Milazzo | A103 | Prepare objections to declarations submitted in support of opposition to anti-SLAPP motion | 1.30 |
| 08/06/2018 | Jennifer L. Milazzo | A104 | Analyze ███ prepare ███ reply to opposition to anti-SLAPP motion | 3.10 |
| 08/06/2018 | Jennifer L. Milazzo | A103 | Prepare reply to non-opposition to anti-SLAPP motion | 0.50 |
| 08/07/2018 | Jennifer L. Milazzo | A102 | Research case law ███████ | 5.50 |
| 08/07/2018 | Jennifer L. Milazzo | A103 | Prepare objections to declarations in support of opposition to anti-SLAPP motion | 1.30 |
| 08/07/2018 | Jennifer L. Milazzo | A104 | Analyze ███ prepare ███ reply to opposition to anti-SLAPP motion | 2.30 |
| 08/07/2018 | Jennifer L. Milazzo | A103 | Prepare reply to opposition to anti-SLAPP motion | 4.20 |
| ████ | ████ | ████ | ████ | ██ |
| 08/08/2018 | Jennifer L. Milazzo | A103 | Prepare reply to opposition to anti-SLAPP motion and manage filing of the same | 4.30 |
| 08/08/2018 | Jennifer L. Milazzo | A103 | Prepare objections to declarations in support of opposition to anti-SLAPP motion | 1.60 |
| 08/08/2018 | Jennifer L. Milazzo | A104 | Analyze ███ prepare ███ reply to opposition to anti-SLAPP motion | 2.30 |
| 08/08/2018 | Jennifer L. Milazzo | A102 | Research case law ███████ | 1.10 |

Page 3



| 08/13/2018 | Elena R. Baca | A101 | Prepare ███ | 1.90 |
|---|---|---|---|---|
| 08/15/2018 | Elena R. Baca | A109 | Prepare for and attend hearing | 3.50 |

| 08/02/2018 | Scott M. Klausner | A103 | Prepare ████████ | 1.30 |
|---|---|---|---|---|
| 08/06/2018 | Scott M. Klausner | A104 | Prepare ████████ | 1.60 |
| 08/06/2018 | Scott M. Klausner | A104 | Analysis and research ████████ | 4.50 |
| 08/06/2018 | Scott M. Klausner | A104 | Review and analyze ████████ | 1.00 |
| 08/06/2018 | Scott M. Klausner | A104 | Factual investigation and analysis ████ | 1.90 |
| 08/06/2018 | Scott M. Klausner | A104 | Review and analyze ████████ | 2.20 |
| 08/07/2018 | Scott M. Klausner | A107 | Prepare correspondence to opposing counsel regarding remedying public disclosure of confidential documents | 0.20 |
| 08/07/2018 | Scott M. Klausner | A103 | Prepare reply brief in support of anti-SLAPP motion | 8.00 |
| 08/07/2018 | Scott M. Klausner | A104 | Analysis and research ████████ | 1.80 |

█████████

Page 4

| Date | Timekeeper | Code | Description | Hours |
|---|---|---|---|---|
| 08/07/2018 | Scott M. Klausner | A103 | Review and revise ████████ | 2.00 |
| 08/07/2018 | Scott M. Klausner | A104 | Analysis and research ████████ | 1.50 |
| 08/07/2018 | Scott M. Klausner | A104 | Strategize ████████ | 2.80 |
| 08/07/2018 | Scott M. Klausner | A104 | Analysis and research ████████ | 1.50 |
| 08/08/2018 | Scott M. Klausner | A103 | Review, revise, finalize, and coordinating filing of reply brief in support of anti-SLAPP motion | 10.00 |
| 08/08/2018 | Scott M. Klausner | A103 | Review, revise, and finalize evidentiary objections to declarations submitted Plaintiff filed in support of opposition to anti-SLAPP motion | 2.30 |
| 08/10/2018 | Scott M. Klausner | A107 | Prepare correspondence to opposing counsel regarding remedying public disclosure of confidential documents | 0.20 |
| 08/13/2018 | Scott M. Klausner | A104 | Identify and compile ████████ | 1.00 |
| 08/13/2018 | Scott M. Klausner | A104 | Prepare ████████ | 2.10 |
| 08/14/2018 | Scott M. Klausner | A104 | Annotate and summarize ████████ | 1.10 |
| 08/14/2018 | Scott M. Klausner | A104 | Prepare ████████ | 1.30 |
| 08/15/2018 | Scott M. Klausner | A109 | Attend hearing on anti-SLAPP motion and ex parte application to seal or strike | 2.30 |
| 08/15/2018 | Scott M. Klausner | A106 | Correspond ████████ | 0.20 |
| 08/15/2018 | Scott M. Klausner | A101 | Prepare ████████ | 3.00 |

Page 5

| Date | Name | Code | Description | Hours |
|---|---|---|---|---|
| 08/04/2018 | Elena R. Baca | A104 | Exchange communications ███ ███ nd filing notice of non-receipt of opposition | 0.20 |
| 08/04/2018 | Jennifer L. Milazzo | A104 | Strategize and correspond | 0.10 |
| 08/06/2018 | Scott M. Klausner | A104 | Review and revise | 0.60 |
| 08/08/2018 | Elena R. Baca | A103 | Strategize and prepare reply brief | 0.60 |
| 08/14/2018 | Elena R. Baca | A103 | Prepare | 0.30 |
| 08/29/2018 | Scott M. Klausner | A104 | Review | 0.30 |
| 08/14/2018 | Scott M. Klausner | A104 | Analyze and research | 2.00 |
| 08/08/2018 | Scott M. Klausner | A103 | Review and revise | 0.70 |

Page 6

| Date | Timekeeper | Code | Description | Hours |
|---|---|---|---|---|
| 08/14/2018 | Jennifer L. Milazzo | A101 | Prepare ████ | 1.10 |
| 08/14/2018 | Jennifer L. Milazzo | A103 | Prepare ex parte application to seal or strike declarations and exhibits submitted in support of D. Charney's opposition to anti-SLAPP | 2.20 |
| 08/14/2018 | Jennifer L. Milazzo | A104 | Analyze ████ | 2.10 |
| 08/14/2018 | Jennifer L. Milazzo | A103 | Prepare declarations and exhibits in support of ex parte application to seal or strike declarations and exhibits submitted in support of D. Charney's opposition to anti-SLAPP | 1.60 |
| 08/14/2018 | Jennifer L. Milazzo | A102 | Conduct research on case law ████ | 1.40 |
| 08/16/2018 | Jennifer L. Milazzo | A104 | Strategize ████ | 0.10 |

**Timekeeper Summary**

| Name | Hours | | |
|---|---|---|---|
| Elena R. Baca | 6.90 | hours at | |
| Scott M. Klausner | 58.50 | hours at | |
| Jennifer L. Milazzo | 42.80 | hours at | |

**Costs incurred and advanced**

| Date | Description | | Quantity | Rate | Amount |
|------|-------------|--|----------|------|--------|
| ██████ | ██████████ | | ██ | ██ | ██ |
| ██████ | ██████████ | | ██ | ██ | ██ |
| ██████ | ██████████ | | ██ | ██ | ██ |
| ██████ | ██████████ | | ██ | ██ | ██ |
| ██████ | ██████████ | | ██ | ██ | ██ |
| ██████ | ██████████ | | ██ | ██ | ██ |
| ██████ | ██████████ | | ██ | ██ | ██ |
| ██████ | ██████████ | | ██ | ██ | ██ |
| ██████ | ██████████ | | ██ | ██ | ██ |

Page 8



Total Costs incurred and advanced

Current Fees and Costs
Prior Balance Due
Total Balance Due - Due Upon Receipt

# PAUL HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
ugust 21, 2018



## SUMMARY SHEET

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending July 31, 2018

      Costs incurred and advanced

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**

# PAUL HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
August 21, 2018

---

**REMITTANCE COPY**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending July 31, 2018

Costs incurred and advanced

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



# PAUL HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
August 21, 2018

FOR PROFESSIONAL SERVICES RENDERED
for the period ending July 31, 2018

**Charney Litigation (Danzinger)**



| Date | Timekeeper Name | Activity | Description | Hours |
|------|----------------|----------|-------------|-------|
| 07/16/2018 | Scott M. Klausner | A108 | Confer | 0.20 |
| 07/16/2018 | Scott M. Klausner | A108 | Review and analyze | 1.30 |



| 07/30/2018 | Scott M. Klausner | A104 | Strategize | 0.20 |

Page 2

███

| Date | Name | Code | Description | Hours |
|---|---|---|---|---|
| ███ | | | | ███ |
| ███ | ███ | ███ | ███████ | ███ |
| | | | ███████ | ███ |
| ███ | ███ | | ███ | ███ |
| 07/23/2018 | Elena R. Baca | A101 | Prepare Anti-SLAPP motion | 0.50 |
| 07/24/2018 | Elena R. Baca | A103 | Prepare court filing | 0.20 |
| ███ | | | | ███ |
| ███ | ███ | | ███ | ███ |
| 07/17/2018 | Scott M. Klausner | A104 | Review and analyze ███████ | 2.20 |
| 07/18/2018 | Scott M. Klausner | A104 | Prepare amended motion to strike (anti-SLAPP motion) | 4.00 |
| 07/23/2018 | Elena R. Baca | A103 | Prepare motion to dismiss | 0.60 |
| 07/23/2018 | Scott M. Klausner | A104 | Prepare amended motion to strike (anti-SLAPP motion) and related documents | 2.80 |
| 07/24/2018 | Scott M. Klausner | A103 | Review, finalize, and manage filing of amended motion to strike (anti-SLAPP motion) and related documents | 0.70 |
| ███ | | | | ███ |
| ███ | ███ | | | |
| ███ | ███ | | ███ | ███ |
| 07/17/2018 | Jennifer L. Milazzo | A104 | Research ███████ | 0.50 |

Page 3

| 07/19/2018 | Jennifer L. Milazzo | A104 | Review | 0.40 |
|---|---|---|---|---|

| 07/18/2018 | Jennifer L. Milazzo | A104 | Review | 0.20 |
|---|---|---|---|---|
| 07/30/2018 | Elena R. Baca | A103 | Prepare discovery objections | 0.20 |

| 07/30/2018 | Scott M. Klausner | A106 | Prepare correspondence to opposing counsel regarding discovery stay | 0.30 |
|---|---|---|---|---|
| 07/30/2018 | Scott M. Klausner | A103 | Prepare objections to notice of deposition | 0.80 |

**Timekeeper Summary**

| Elena R. Baca | 1.50 | hours at |
|---|---|---|
| Scott M. Klausner | 12.50 | hours at |
| Jennifer L. Milazzo | 1.10 | hours at |

PAGE 42

Page 4

**Costs incurred and advanced**

| Date | Description | | Quantity | Rate | Amount |
|------|-------------|---|----------|------|--------|

**Total Costs incurred and advanced**

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
July 27, 2018

---

**SUMMARY SHEET**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending June 30, 2018



     **Current Fees and Costs Due**

     **Total Balance Due - Due Upon Receipt**



PAGE 44

# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
July 27, 2018

---

**REMITTANCE COPY**

### Charney Litigation (Danzinger)

Legal fees for professional services
for the period ending June 30, 2018

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**





**PAUL HASTINGS**

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
July 27, 2018

FOR PROFESSIONAL SERVICES RENDERED
for the period ending June 30, 2018

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | | Hours |
|---|---|---|---|---|---|
| 06/19/2018 | Jennifer L. Milazzo | A102 | Analyze research | | 0.30 |
| 06/12/2018 | Jennifer L. Milazzo | A104 | Strategize | | 0.50 |

PAGE 46

Page 2

| Date | Timekeeper Name | Activity | Description | | Hours |
|------|-----------------|----------|-------------|---|-------|
| 06/20/2018 | Scott M. Klausner | A104 | Review | ████████████ | 1.00 |
| 06/28/2018 | Scott M. Klausner | A104 | Review | ████████████ | 1.00 |

**Timekeeper Summary**

| Scott M. Klausner | 2.00 | hours at |
|-------------------|------|----------|
| Jennifer L. Milazzo | 0.80 | hours at |

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**

PAGE 47



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
June 21, 2018

## SUMMARY SHEET

### Charney Litigation (Danzinger)

Legal fees for professional services
for the period ending May 31, 2018



    Costs incurred and advanced

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



PAGE 48

# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
June 21, 2018

---

**REMITTANCE COPY**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending May 31, 2018



      Costs incurred and advanced

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
June 21, 2018

---

FOR PROFESSIONAL SERVICES RENDERED
for the period ending May 31, 2018

**Charney Litigation (Danzinger)**



| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|
| 05/07/2018 | Jennifer L. Milazzo | A104 | Strategize | 0.40 |
| 05/02/2018 | Scott M. Klausner | A104 | Strategize | 0.50 |



Page 2

| 05/14/2018 | Jennifer L. Milazzo | A109 | Review and prepare ███████ ███ | 0.30 |
| 05/30/2018 | Jennifer L. Milazzo | A104 | Strategize ███████████ | 0.10 |

| 05/08/2018 | Jennifer L. Milazzo | A103 | Prepare reply to opposition to anti-SLAPP motion | 0.60 |
| 05/15/2018 | Jennifer L. Milazzo | A104 | Prepare and manage filing of notice of ruling following status conference | 0.40 |

| 05/02/2018 | Elena R. Baca | A103 | Prepare ██████████ | 0.30 |
| 05/12/2018 | Elena R. Baca | A101 | Prepare ██████████ | 0.20 |
| 05/14/2018 | Elena R. Baca | A101 | Prepare ██████ | 0.30 |
| 05/15/2018 | Elena R. Baca | A109 | Prepare for and attend status conference hearing | 1.60 |
| 05/15/2018 | Jennifer L. Milazzo | A111 | Prepare email ███████████ | 0.20 |
| 05/15/2018 | Jennifer L. Milazzo | A111 | Attend status conference | 0.80 |

PAGE 51

Page 3

████████████████

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 05/10/2018 | Jennifer L. Milazzo | A103 | Prepare reply brief to opposition to anti-SLAPP motion | 2.50 |
| 05/21/2018 | Jennifer L. Milazzo | A104 | Strategize ███████████████ | 0.50 |

██████████████████   ███

████████   ███

**Timekeeper Summary**

| | | | |
|---|---|---|---|
| Elena R. Baca | 2.40 | hours at | |
| Scott M. Klausner | 0.50 | hours at | |
| ███████ | ███ | ███ | |
| Jennifer L. Milazzo | 5.80 | hours at | |
| ███████ | ███ | ███ | |

**Costs incurred and advanced**

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| ███████████████ | | ███ | ███ | ███ |
| ██████████████████ | | | | ███ |

**Total Costs incurred and advanced** ███

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
May 30, 2018

---

## SUMMARY SHEET

### Charney Litigation (Danzinger)

Legal fees for professional services
for the period ending April 30, 2018

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



PAGE 53



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
May 30, 2018

---

### REMITTANCE COPY

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending April 30, 2018



**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**

**PAUL**
**HASTINGS**

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

**(Revised: September 19, 2018)**
May 30, 2018

FOR PROFESSIONAL SERVICES RENDERED
for the period ending April 30, 2018

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 04/28/2018 | Scott M. Klausner | A106 | Telephonic conference ████████ | 0.20 |

PAGE 55

Page 2



| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 04/24/2018 | Elena R. Baca | A104 | Strategize ███████████ | 0.10 |

**Timekeeper Summary**

Elena R. Baca     0.10   hours at

Scott M. Klausner    0.20   hours at

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
April 23, 2018

---

## SUMMARY SHEET

### Charney Litigation (Danzinger)

Legal fees for professional services
for the period ending March 31, 2018



**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
April 23, 2018

---

**REMITTANCE COPY**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending March 31, 2018

    **Current Fees and Costs Due**

    **Total Balance Due - Due Upon Receipt**





PAGE 58



**PAUL HASTINGS**

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



(Revised: September 19, 2018)
April 23, 2018

FOR PROFESSIONAL SERVICES RENDERED
for the period ending March 31, 2018

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 03/06/2018 | Dennis S. Ellis | A105 | Update ████████ with S. Klausner | 0.30 |
| 03/09/2018 | Dennis S. Ellis | A105 | Prepare email ████████ to S. Klausner | 0.30 |

Page 2

| Date | Timekeeper Name | Activity | Description | | Hours |
|------|-----------------|----------|-------------|--|-------|
| 03/09/2018 | Elena R. Baca | A104 | Conference | ████████████ | 0.10 |
| | | | | | █ |
| | | | | | █ |
| 03/06/2018 | Scott M. Klausner | A109 | Prepare for and attend status conference | | 0.90 |
| | | | | | █ |

**Timekeeper Summary**

| | | |
|--|--|--|
| Dennis S. Ellis | 0.60 | hours at |
| Elena R. Baca | 0.10 | hours at |
| Scott M. Klausner | 0.90 | hours at |

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
March 26, 2018

---

## SUMMARY SHEET

### Charney Litigation (Danzinger)

Legal fees for professional services
for the period ending February 28, 2018

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
March 26, 2018



Attn: Thomas M. Giangrande
      Complex Claims Director

---

## REMITTANCE COPY

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending February 28, 2018

     **Current Fees and Costs Due**

     **Total Balance Due - Due Upon Receipt**

PAGE 02

# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

**(Revised: September 19, 2018)**
March 26, 2018

---

FOR PROFESSIONAL SERVICES RENDERED
for the period ending February 28, 2018

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 02/05/2018 | Elena R. Baca | A104 | Strategize | 0.10 |



Page 2

---

**Timekeeper Summary**

Elena R. Baca                                          0.10   hours at



**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
January 15, 2018

---

**SUMMARY SHEET**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending December 31, 2017

       Costs incurred and advanced

       **Current Fees and Costs Due**

       **Total Balance Due - Due Upon Receipt**





**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
January 15, 2018

---

**REMITTANCE COPY**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending December 31, 2017



        Costs incurred and advanced

        **Current Fees and Costs Due**

        **Total Balance Due - Due Upon Receipt**

PAGE 66

# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

**(Revised: September 19, 2018)**
January 15, 2018

FOR PROFESSIONAL SERVICES RENDERED
for the period ending December 31, 2017

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 12/12/2017 | Scott M. Klausner | A109 | Attend status conference | 1.00 |

████████
████████                                                                 Page 2

_____

██████  ████████████████████████

| Date | Timekeeper Name | Activity | Description | Hours |
|------|------|------|------|------|
| 12/11/2017 | Scott M. Klausner | A104 | Prepare stipulation to continue anti-SLAPP hearing date | 0.30 |
| 12/11/2017 | Scott M. Klausner | A107 | Correspond with opposing counsel regarding stipulation to continue anti-SLAPP hearing date | 0.20 |

████████████████████████████  ████

██████████

### Timekeeper Summary

Scott M. Klausner                                    1.50   hours at

████████████████  ████  ██████

**Costs incurred and advanced**

| Date | Description | Quantity | Rate |
|------|------|------|------|
| ████████████████████████████████ | | | |

**Total Costs incurred and advanced**

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**   ██████████████████



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
December 20, 2017



---

## SUMMARY SHEET

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending November 30, 2017

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**





PAGE 69



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
December 20, 2017

REMITTANCE COPY

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending November 30, 2017

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**





PAGE 70

PAUL
HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

[redacted]

**(Revised: September 19, 2018)**
December 20, 2017

[redacted]

[redacted]

[redacted]

FOR PROFESSIONAL SERVICES RENDERED
for the period ending November 30, 2017

[redacted]

**Charney Litigation (Danzinger)**

[redacted]

| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|
| 11/02/2017 | Dennis S. Ellis | A104 | Review [redacted] | 0.50 |
| 11/02/2017 | Dennis S. Ellis | A105 | Telephone conference with S. Klausner [redacted] | 0.50 |
| 11/02/2017 | Dennis S. Ellis | A102 | Research [redacted] | 0.50 |
| 11/02/2017 | Scott M. Klausner | A104 | Strategize [redacted] | 0.20 |

Page 2

| 11/29/2017 | Dennis S. Ellis | A105 | Instruct team | 0.50 |

| 11/02/2017 | Scott M. Klausner | A109 | Prepare for and attend hearing on OSC | 2.00 |

**Timekeeper Summary**

Dennis S. Ellis          2.00   hours at
Scott M. Klausner        2.20   hours at

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
November 21, 2017



## SUMMARY SHEET

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending October 31, 2017

        Costs incurred and advanced

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**





**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
November 21, 2017

**REMITTANCE COPY**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending October 31, 2017

    Costs incurred and advanced

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



PAGE 74



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
November 21, 2017

---

FOR PROFESSIONAL SERVICES RENDERED
for the period ending October 31, 2017

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| | █████████████ | █ | ████████████████ | █ |
| 10/26/2017 | Scott M. Klausner | A104 | Strategize █████████████████ | 0.20 |
| | | | ████████████████ | |
| 10/26/2017 | Elena R. Baca | A104 | Review ████████ | 0.10 |

Page 2

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 10/26/2017 | Elena R. Baca | A104 | Strategize ███████████ | 0.10 |

**Timekeeper Summary**

| | | |
|---|---|---|
| Elena R. Baca | 0.20 | hours at |
| Scott M. Klausner | 0.20 | hours at |

**Costs incurred and advanced**

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|

**Total Costs incurred and advanced**

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

**(Revised: September 19, 2018)**
October 25, 2017



---

## SUMMARY SHEET

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending September 30, 2017

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



PAGE 77



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
October 25, 2017

---

**REMITTANCE COPY**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending September 30, 2017

          **Current Fees and Costs Due**

          **Total Balance Due - Due Upon Receipt**



**PAUL HASTINGS**

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
October 25, 2017

FOR PROFESSIONAL SERVICES RENDERED
for the period ending September 30, 2017

## Charney Litigation (Danzinger)

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 09/14/2017 | Dennis S. Ellis | A106 | Prepare email ████████████████████ | 1.00 |
| 09/14/2017 | Dennis S. Ellis | A106 | Telephone conference with ████████ S. Klausner███ | 0.50 |
| 09/19/2017 | Dennis S. Ellis | A105 | Prepare email to S. Klausner ████ ██████████████ | 0.20 |
| 09/19/2017 | Dennis S. Ellis | A106 | Prepare email ██████████████ ████████ | 0.30 |
| 09/28/2017 | Dennis S. Ellis | A106 | Prepare email ██████████████ ████ | 0.50 |
| 09/15/2017 | Scott M. Klausner | A103 | Prepare ██████████ | 2.30 |



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
October 25, 2017

FOR PROFESSIONAL SERVICES RENDERED
for the period ending September 30, 2017

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | | Hours |
|------|-----------------|----------|-------------|---|-------|
| 09/14/2017 | Dennis S. Ellis | A106 | Prepare email ████████████ | | 1.00 |
| 09/14/2017 | Dennis S. Ellis | A106 | Telephone conference with ███████ S. Klausner ██████ | | 0.50 |
| 09/19/2017 | Dennis S. Ellis | A105 | Prepare email to S. Klausner ███ ████████████████ | | 0.20 |
| 09/19/2017 | Dennis S. Ellis | A106 | Prepare email ████████████ ██████ | | 0.30 |
| 09/28/2017 | Dennis S. Ellis | A106 | Prepare email ███████████ ████ | | 0.50 |
| 09/15/2017 | Scott M. Klausner | A103 | Prepare ████████████ | | 2.30 |

PAGE 79

Page 2

████

| | | | | | |
|---|---|---|---|---|---|
| 09/18/2017 | Scott M. Klausner | A103 | Review and revise ████ | | 0.10 |

████ ██

████ ████
████ ██████ ██████ ██
| 09/19/2017 | Elena R. Baca | A104 | Review ██████ | | 0.40 |
████ ██

██ ████████ ██
██ ██████ ██
| 09/19/2017 | Scott M. Klausner | A109 | Attend status conference | | 1.10 |

████ ██

**Total Hours**                                                                        **6.40**

### Timekeeper Summary

| | | |
|---|---|---|
| Dennis S. Ellis | 2.50 | hours at |
| Elena R. Baca | 0.40 | hours at |
| Scott M. Klausner | 3.50 | hours at |

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**

PAGE 80



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
September 25, 2017

---

## SUMMARY SHEET

**Charney Litigation (Danzinger)**



Legal fees for professional services
for the period ending August 31, 2017

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



PAGE 81



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



**(Revised: September 19, 2018)**
September 25, 2017

**REMITTANCE COPY**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending August 31, 2017



**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**

# PAUL HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

**(Revised: September 19, 2018)**
September 25, 2017

FOR PROFESSIONAL SERVICES RENDERED
for the period ending August 31, 2017

<u>**Charney Litigation (Danzinger)**</u>                                    $40.00



# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



**(Revised: September 19, 2018)**
July 31, 2017

## SUMMARY SHEET

### Charney Litigation (Danzinger)

Legal fees for professional services
for the period ending June 30, 2017



Costs incurred and advanced

**Current Fees and Costs Due**

**Total Balance Due - Due Upon Receipt**



PAGE 84

# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

**(Revised: September 19, 2018)**
July 31, 2017

---

### REMITTANCE COPY

__Charney Litigation (Danzinger)__

Legal fees for professional services
for the period ending June 30, 2017

        Costs incurred and advanced

        **Current Fees and Costs Due**

        **Total Balance Due - Due Upon Receipt**



PAGE 85



**PAUL HASTINGS**

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



**(Revised: September 19, 2018)**
July 31, 2017

FOR PROFESSIONAL SERVICES RENDERED
for the period ending June 30, 2017

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 05/23/2017 | Scott M. Klausner | A106 | Review documents ████████████ | 0.60 |
| 05/23/2017 | Scott M. Klausner | A106 | Prepare for and attend telephonic conference ████████████ | 0.40 |
| 01/14/2017 | Elena R. Baca | A104 | Review documents ████████ | 0.20 |
| 01/17/2017 | Elena R. Baca | A104 | Review documents ████████ | 0.20 |
| 01/17/2017 | Scott M. Klausner | A104 | Review documents ████████ | 0.40 |

PAGE 86

Page 2

| 01/20/2017 | Dennis S. Ellis | A106 | Correspond ███████████████ ███ | 0.50 |
|---|---|---|---|---|
| 01/23/2017 | Scott M. Klausner | A106 | Correspond ███████████████ | 0.10 |
| 01/23/2017 | Scott M. Klausner | A104 | Review documents ████████████ ██████████████ | 0.20 |
| 01/24/2017 | Dennis S. Ellis | A106 | Telephone conference ███████████ ████████ | 0.50 |
| 02/01/2017 | Dennis S. Ellis | A105 | Correspond with S. Klausner ███████ ██ | 0.30 |
| ███████ | ██████████ | ███ | ████████████████████████████ | ██ |
| 02/23/2017 | Scott M. Klausner | A108 | Correspond with D. Ellis ██████████ ██████████████ | 0.30 |
| 02/28/2017 | Dennis S. Ellis | A103 | Correspond with S. Klausner ██████ ██ | 0.30 |
| 02/28/2017 | Elena R. Baca | A104 | Correspond ████████████████ █████ | 0.20 |
| 03/22/2017 | Scott M. Klausner | A108 | Correspond ████████████████ | 0.30 |
| 04/25/2017 | Scott M. Klausner | A106 | Telephone conference █████████████ ████████ | 0.20 |
| 04/26/2017 | Scott M. Klausner | A101 | Prepare for and attend telephone conference ████████████████████ correspond with E. Baca ███████████ | 0.40 |
| 04/26/2017 | Scott M. Klausner | A104 | Review documents ████████████████ ████████████████ ███████████ | 1.00 |
| ███████ | ██████████ | ███ | ████████████████████████████ | ██ |
| 04/27/2017 | Elena R. Baca | A104 | Strategize ████████████ | 0.20 |
| 04/27/2017 | Elena R. Baca | A104 | Strategize ██████████████ ███████ | 0.20 |



PAGE 87

Page 3



| 04/27/2017 | Elena R. Baca | A107 | Correspond ████████████████████ | 0.20 |
| 05/08/2017 | Scott M. Klausner | A106 | Attend telephonic conference ██████████ ██████████████████████ | 0.30 |
| 05/09/2017 | Scott M. Klausner | A106 | Attend telephonic conference ██████████ ██████████████████████ | 0.20 |
| 05/10/2017 | Scott M. Klausner | A106 | Attend telephonic conference ██████████ ██████████████████████ | 0.40 |
| 05/10/2017 | Scott M. Klausner | A106 | Analysis ███████████████████ | 0.30 |
| 05/10/2017 | Scott M. Klausner | A108 | Attend telephonic conference ██████████ | 0.20 |
| 05/11/2017 | Scott M. Klausner | A108 | Attend telephonic conference ██████████ | 0.20 |
| 05/11/2017 | Scott M. Klausner | A104 | Review, analyze, and assess issues ██████ ████████████████████████ follow-up with E. Baca ████████████████ | 2.10 |
| 05/11/2017 | Scott M. Klausner | A106 | Analyze and revise ████████████ ███████████████████████████ | 0.40 |
| 05/11/2017 | Scott M. Klausner | A106 | Attend telephonic conference ██████████ | 0.50 |
| 05/15/2017 | Scott M. Klausner | A108 | Attend telephonic conference ██████████ | 0.20 |

PAGE 88

Page 4

---

| 05/15/2017 | Scott M. Klausner | A108 | Attend telephonic conferenc ██████ | 0.30 |

| 05/30/2017 | Scott M. Klausner | A108 | Telephone conference █████ | 0.20 |

| 02/28/2017 | Scott M. Klausner | A106 | Review document ████ | 1.20 |

| 02/28/2017 | Scott M. Klausner | A106 | Review and analyze ████ | 0.40 |

| 05/02/2017 | Scott M. Klausner | A108 | Meet and confer with O. Muller regarding mediation of claims following status conference | 0.10 |

| 02/23/2017 | Scott M. Klausner | A108 | Telephone conferences with K. Fink, O. Muller, and Judge Green's Chambers regarding dismissal of American Apparel and status of hearing on selection of mediator | 0.50 |

| 01/13/2017 | Scott M. Klausner | A109 | Prepare for and attend telephone conference ████ correspond with E. Baca and D. Ellis ████ | 0.30 |

███████████████                                                    Page 5

---

| 01/14/2017 | Dennis S. Ellis | A105 | Correspond with E. Baca and S. Klausner ███████████ | 0.50 |
| 01/14/2017 | Scott M. Klausner | A101 | Review documents ███████████  correspond with D. Ellis ███████ ████ | 0.70 |
| 01/15/2017 | Dennis S. Ellis | A105 | Correspond with E. Baca and S. Klausner ██████████████ | 0.50 |
| 01/17/2017 | Dennis S. Ellis | A105 | Correspond with S. Klausner ███████ ██████ | 0.50 |
| 01/17/2017 | Elena R. Baca | A109 | Attend status conference | 1.00 |
| 01/17/2017 | Scott M. Klausner | A109 | Attend status conference | 1.00 |
| 02/28/2017 | Scott M. Klausner | A109 | Prepare for and attend status conference regarding potential mediation | 2.30 |
| 04/18/2017 | Scott M. Klausner | A109 | Appear for case management conference regarding status of proceedings and mediation | 1.00 |
| 05/01/2017 | Elena R. Baca | A101 | Review documents ████████ | 0.10 |
| 05/02/2017 | Elena R. Baca | A104 | Review ████████████ | 0.10 |
| 05/02/2017 | Scott M. Klausner | A109 | Attend status conference regarding mediation and anti-SLAPP briefing schedule | 0.80 |
| 05/02/2017 | Scott M. Klausner | A106 | Prepare correspondence ███████████████ | 0.10 |

████████████████████████                      ████

██   ████████
██   ████████████                  ████

| 02/23/2017 | Scott M. Klausner | A104 | Review and analyze ██████████ | 0.30 |

████████████                              ████

████████                                  ████

Page 6

## Timekeeper Summary

| | | |
|---|---|---|
| Dennis S. Ellis | 3.10 | hours at |
| Elena R. Baca | 2.40 | hours at |
| Scott M. Klausner | 17.90 | hours at |

**Costs incurred and advanced**

| Date | Description | Quantity | Rate | Amount |
|---|---|---|---|---|

**Total Costs incurred and advanced**

**Current Fees and Costs**

**Total Balance Due - Due Upon Receipt**

# PAUL HASTINGS

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



July 30, 2015



---

## SUMMARY SHEET

**Charney Litigation (Danziger)**



Legal fees for professional services
for the period ending June 30, 2015

Less 15% Discount

**Current Fees and Costs Due**

**Total Balance Due**

PAGE 92



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

July 30, 2015



## REMITTANCE COPY

**Charney Litigation (Danziger)**

Legal fees for professional services
for the period ending June 30, 2015

Less 15% Discount

**Current Fees and Costs Due**

**Total Balance Due**





**PAUL HASTINGS**

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

July 30, 2015

FOR PROFESSIONAL SERVICES RENDERED
for the period ending June 30, 2015

### Charney Litigation (Danziger)


Less 15% Discount

| Date | Timekeeper Name | Description | Hours | Amount |
|------|-----------------|-------------|-------|--------|
| 06/19/2015 | Scott M. Klausner | Conference with N. Begakis | 0.30 | 165.00 |
| 06/19/2015 | Scott M. Klausner | Legal research | 1.00 | 550.00 |
| 06/19/2015 | Scott M. Klausner | Review and analyze | 1.00 | 550.00 |
| 06/21/2015 | Dennis S. Ellis | Correspond | 0.30 | 315.00 |
| 06/22/2015 | Dennis S. Ellis | Review | 0.30 | 315.00 |
| 06/22/2015 | Scott M. Klausner | Review and analyze | 1.20 | 660.00 |
| 06/22/2015 | Scott M. Klausner | Draft | 2.00 | 1,100.00 |

PAGE 94

Page 2

| Date | Timekeeper Name | Description | Hours | Amount |
|------|-----------------|-------------|-------|--------|
| 06/22/2015 | Scott M. Klausner | Legal research | 2.50 | 1,375.00 |
| 06/23/2015 | Dennis S. Ellis | Telephone conference | 0.50 | 525.00 |
| 06/23/2015 | Dennis S. Ellis | Telephone conference | 0.50 | 525.00 |
| 06/23/2015 | Dennis S. Ellis | Review | 1.00 | 1,050.00 |
| 06/23/2015 | Scott M. Klausner | Legal research | 1.20 | 660.00 |
| 06/23/2015 | Scott M. Klausner | Review and analyze | 1.00 | 550.00 |
| 06/23/2015 | Scott M. Klausner | Draft | 3.10 | 1,705.00 |
| 06/24/2015 | Scott M. Klausner | Review and analyze | 0.80 | 440.00 |
| 06/24/2015 | Scott M. Klausner | Legal research | 1.50 | 825.00 |
| 06/24/2015 | Scott M. Klausner | Correspond with | 0.20 | 110.00 |
| 06/24/2015 | Scott M. Klausner | Correspond with | 0.20 | 110.00 |



Page 3

| Date | Timekeeper Name | Description | Hours | Amount |
|------|-----------------|-------------|-------|--------|
| 06/24/2015 | Scott M. Klausner | Draft | 3.70 | 2,035.00 |
| 06/25/2015 | Scott M. Klausner | Review and analyze | 0.40 | 220.00 |
| 06/25/2015 | Scott M. Klausner | Legal research | 0.20 | 110.00 |
| 06/26/2015 | Dennis S. Ellis | Research | 1.00 | 1,050.00 |
| 06/29/2015 | Nicholas J. Begakis | Correspond and conferences with D. Ellis and S. Klausner | 0.80 | 632.00 |
| 06/29/2015 | Scott M. Klausner | Legal research | 1.20 | 660.00 |
| 06/29/2015 | Scott M. Klausner | Draft and revise memorandum of points and authorities in support of anti-SLAPP motion | 6.80 | 3,740.00 |
| 06/30/2015 | Dennis S. Ellis | Correspond with K. Fink regarding service of Danziger | 0.30 | 315.00 |
| 06/30/2015 | Dennis S. Ellis | Telephone conference with K. Fink regarding service of Danziger | 0.30 | 315.00 |
| 06/30/2015 | Dennis S. Ellis | Telephone conference | 0.30 | 315.00 |
| 06/30/2015 | Dennis S. Ellis | Draft letter | 0.30 | 315.00 |
| 06/30/2015 | Dennis S. Ellis | Telephone conference | 0.50 | 525.00 |
| 06/30/2015 | Nicholas J. Begakis | Review and revise | 1.00 | 790.00 |
| 06/30/2015 | Scott M. Klausner | Legal research | 1.00 | 550.00 |

Page 4



| Date | Timekeeper Name | Description | Hours | Amount |
|------|-----------------|-------------|-------|--------|
| 06/30/2015 | Scott M. Klausner | Draft and revise memorandum of points and authorities in support of anti-SLAPP motion | 8.10 | 4,455.00 |
| 06/30/2015 | Scott M. Klausner | Conference with N. Begakis ███████████ | 0.80 | 440.00 |
| | **Total** | | **45.30** | **27,997.00** |

**Timekeeper Summary**

| | | |
|---|---|---|
| Dennis S. Ellis | 5.30 | hours at |
| Nicholas J. Begakis | 1.80 | hours at |
| Scott M. Klausner | 38.20 | hours at |

**Current Fees and Costs**

**Total Balance Due**

# PAUL HASTINGS

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



August 28, 2015

Please Refer to

---

## SUMMARY SHEET

**Charney Litigation (Danziger)**



Legal fees for professional services
for the period ending July 31, 2015

   Less 15% Discount

   Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due**



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



August 28, 2015



**REMITTANCE COPY**

**Charney Litigation (Danziger)**

Legal fees for professional services
for the period ending July 31, 2015

       Less 15% Discount

       Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due**



PAGE 99

Page 2



**REMITTANCE COPY (cont.)**

**Summary of Prior Balance Due**

| Invoice Date | Invoice Number | Amount | Payments/ Trust Appl. | Credits | Balance Due |
|---|---|---|---|---|---|
| 07/30/2015 | ▓ | ▓ | ▓ | ▓ | ▓ |

**Total Prior Due**
**Balance Due**



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



August 28, 2015

FOR PROFESSIONAL SERVICES RENDERED
for the period ending July 31, 2015

### Charney Litigation (Danziger)
                         Less 15% Discount



| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|
| 07/27/2015 | Nicholas J. Begakis | A103 | Review and revise | 0.40 |
| 07/01/2015 | Dennis S. Ellis | A106 | Telephone conference | 1.00 |
| 07/09/2015 | Dennis S. Ellis | A106 | Correspond | 0.30 |

PAGE 101



Page 2

| Date | Name | | Description | Hours |
|------|------|---|-------------|-------|
| 07/02/2015 | Nicholas J. Begakis | A105 | Correspond with D. Ellis | 0.30 |
| 07/07/2015 | Nicholas J. Begakis | A103 | Review and revise | 1.00 |
| 07/08/2015 | Elena R. Baca | A105 | Conference with D. Ellis | 0.20 |
| 07/08/2015 | Nicholas J. Begakis | A103 | Review and revis | 3.40 |
| 07/08/2015 | Scott M. Klausner | A104 | Review and analyze | 0.30 |
| 07/09/2015 | Dennis S. Ellis | A108 | Correspond with K. Fink regarding service | 0.20 |
| 07/09/2015 | Nicholas J. Begakis | A103 | Review and revise | 2.80 |
| 07/09/2015 | Scott M. Klausner | A104 | Review and analyze | 0.30 |
| 07/10/2015 | Nicholas J. Begakis | A103 | Review and revise | 1.00 |
| 07/10/2015 | Scott M. Klausner | A103 | Draft notice of motion and anti-SLAPP motion | 0.20 |
| 07/10/2015 | Scott M. Klausner | A104 | Review and analyze | 0.50 |
| 07/10/2015 | Scott M. Klausner | A103 | Review and revise | 0.80 |
| 07/10/2015 | Scott M. Klausner | A103 | Review and revise | 1.50 |
| 07/15/2015 | Dennis S. Ellis | A103 | Review and revise | 2.00 |
| 07/15/2015 | Nicholas J. Begakis | A103 | Review and revise | 3.80 |

Page 3



| Date | Name | Code | Description | Hours |
|---|---|---|---|---|
| 07/15/2015 | Scott M. Klausner | A103 | Review and revise | 0.30 |
| 07/15/2015 | Scott M. Klausner | A103 | Review and revise | 0.40 |
| 07/15/2015 | Scott M. Klausner | A103 | Review and revise | 0.20 |
| 07/15/2015 | Scott M. Klausner | A104 | Review and analyze | 0.30 |
| 07/15/2015 | Scott M. Klausner | A103 | Review and revise | 0.80 |
| 07/16/2015 | Scott M. Klausner | A103 | Review and revise | 0.20 |
| 07/17/2015 | Dennis S. Ellis | A105 | Conference with N. Begakis and S. Klausner | 1.00 |
| 07/17/2015 | Nicholas J. Begakis | A105 | Conference with D. Ellis and S. Klausner | 0.50 |
| 07/17/2015 | Scott M. Klausner | A103 | Review and revise | 1.40 |
| 07/17/2015 | Scott M. Klausner | A102 | Legal research | 1.90 |
| 07/18/2015 | Scott M. Klausner | A103 | Review and revise | 3.80 |
| 07/20/2015 | Scott M. Klausner | A103 | Review and revise | 1.00 |
| 07/21/2015 | Nicholas J. Begakis | A108 | Correspond with K. Fink regarding service of process on D. Danziger | 0.50 |
| 07/22/2015 | Nicholas J. Begakis | A103 | Review and revise | 2.30 |
| 07/23/2015 | Dennis S. Ellis | A103 | Review and revise | 2.00 |
| 07/23/2015 | Nicholas J. Begakis | A103 | Review and revise | 1.50 |
| 07/23/2015 | Scott M. Klausner | A102 | Legal research | 0.80 |
| 07/23/2015 | Scott M. Klausner | A103 | Review and revise | 1.00 |

Page 4

| Date | Name | Code | Description | Hours |
|---|---|---|---|---|
| 07/24/2015 | Nicholas J. Begakis | A108 | Telephone conference and correspond with K. Fink regarding responsive pleading and evidence preservation | 0.40 |
| 07/24/2015 | Scott M. Klausner | A102 | Legal research | 2.00 |
| 07/24/2015 | Scott M. Klausner | A105 | Conference with N. Begakis | 0.20 |
| 07/24/2015 | Scott M. Klausner | A103 | Review and revise | 4.70 |
| 07/25/2015 | Nicholas J. Begakis | A103 | Review and revise | 1.50 |
| 07/25/2015 | Scott M. Klausner | A102 | Legal research | 1.40 |
| 07/27/2015 | Dennis S. Ellis | A103 | Review and revise | 2.00 |
| 07/27/2015 | Nicholas J. Begakis | A103 | Review and revise | 1.00 |
| 07/27/2015 | Scott M. Klausner | A105 | Conference with D. Ellis and N. Begakis | 0.20 |
| 07/27/2015 | Scott M. Klausner | A103 | Review and revise | 0.90 |
| 07/27/2015 | Scott M. Klausner | A102 | Legal research | 1.90 |
| 07/27/2015 | Scott M. Klausner | A105 | Confer with D. Ellis and N. Begakis | 0.20 |
| 07/28/2015 | Nicholas J. Begakis | A103 | Review and revise | 1.70 |
| 07/28/2015 | Nicholas J. Begakis | A106 | Correspond with | 0.20 |
| 07/28/2015 | Scott M. Klausner | A102 | Legal research | 1.40 |
| 07/28/2015 | Scott M. Klausner | A103 | Review and revise | 0.50 |
| 07/28/2015 | Scott M. Klausner | A103 | Review and revise | 0.40 |

PAGE 104

Page 5

| Date | Timekeeper | Code | Description | Hours |
|---|---|---|---|---|
| 07/28/2015 | Scott M. Klausner | A103 | Review and revise ███████████ | 1.00 |
| 07/28/2015 | Scott M. Klausner | A105 | Conference with D. Ellis and N. Begakis ████ | 0.30 |
| 07/29/2015 | Dennis S. Ellis | A103 | Review and revise ████████████ | 2.00 |
| 07/29/2015 | Nicholas J. Begakis | A103 | Review and revise ██████ | 0.80 |
| 07/29/2015 | Scott M. Klausner | A102 | Legal research ██████████ | 0.40 |
| 07/29/2015 | Scott M. Klausner | A103 | Review and revise ████████ | 0.40 |
| 07/29/2015 | Scott M. Klausner | A103 | Review and revise ███████ | 0.40 |
| 07/31/2015 | Dennis S. Ellis | A103 | Review and revise █████ | 1.70 |
| 07/31/2015 | Dennis S. Ellis | A105 | Correspond ███████ | 0.30 |
| 07/31/2015 | Scott M. Klausner | A103 | Revise ███████████ | 0.40 |

### Timekeeper Summary

| | | |
|---|---|---|
| Elena R. Baca | 0.20 | hours at |
| Dennis S. Ellis | 12.50 | hours at |
| Nicholas J. Begakis | 23.10 | hours at |
| ███████ | ██ | ██ |
| Scott M. Klausner | 32.40 | hours at |
| ███████ | ██ | ██ |



Page 6



**Costs incurred and advanced**

**Total Costs incurred and advanced**

        **Current Fees and Costs**

        **Prior Balance Due**

        **Total Balance Due**

# PAUL HASTINGS

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

September 28, 2015

---

## SUMMARY SHEET

**Charney Litigation (Danziger)**



Legal fees for professional services
for the period ending August 31, 2015

   Less 15% Discount

  Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due**

PAGE 107



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

September 28, 2015



---

## REMITTANCE COPY

**Charney Litigation (Danziger)**

Legal fees for professional services
for the period ending August 31, 2015

Less 15% Discount

Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due**



Page 2

**REMITTANCE COPY (cont.)**

**Summary of Prior Balance Due**

| Invoice Date | Invoice Number | Amount | Payments/ Trust Appl. | Credits | Balance Due |
|---|---|---|---|---|---|
| 07/30/2015 | ███ | ███ | ███ | ███ | ███ |
| 08/28/2015 | ███ | ███ | ███ | ███ | ███ |

**Total Prior Due Balance Due**





**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

September 28, 2015

FOR PROFESSIONAL SERVICES RENDERED
for the period ending August 31, 2015



**Charney Litigation (Danziger)**
                    Less 15% Discount

| Date | Timekeeper Name | Activity | Description | Hours |
|------|----------------|----------|-------------|-------|
| 08/19/2015 | Dennis S. Ellis | A104 | Review███████████████ | 0.50 |
| 08/13/2015 | Elena R. Baca | A103 | Review████████████████ | 0.30 |
| 08/19/2015 | Dennis S. Ellis | A108 | Correspond with K. Fink regarding litigation | 0.50 |
| 08/01/2015 | Scott M. Klausner | A105 | Correspond with ███████ D. Ellis, and N. Begakis | 0.40 |
| 08/02/2015 | Dennis S. Ellis | A103 | Review and revise ███████████ | 1.00 |

PAGE 110

Page 2



| Date | Name | Code | Description | Hours |
|---|---|---|---|---|
| 08/02/2015 | Scott M. Klausner | A103 | Review and revise | 0.70 |
| 08/02/2015 | Scott M. Klausner | A103 | Review and revise | 0.70 |
| 08/03/2015 | Dennis S. Ellis | A106 | Correspond | 0.50 |
| 08/03/2015 | Dennis S. Ellis | A103 | Review and revise | 3.50 |
| 08/03/2015 | Nicholas J. Begakis | A103 | Review and revise | 0.80 |
| 08/03/2015 | Scott M. Klausner | A103 | Review and revise | 0.30 |
| 08/04/2015 | Scott M. Klausner | A104 | Review and analyze | 0.40 |
| 08/11/2015 | Dennis S. Ellis | A103 | Finalize | 0.50 |
| 08/11/2015 | Elena R. Baca | A103 | Review and revise | 0.50 |
| 08/11/2015 | Nicholas J. Begakis | A103 | Review and revise | 0.70 |
| 08/11/2015 | Nicholas J. Begakis | A103 | Review and revise | 1.00 |
| 08/11/2015 | Scott M. Klausner | A103 | Review and revise | 0.20 |
| 08/11/2015 | Scott M. Klausner | A103 | Review and revise | 0.20 |
| 08/11/2015 | Scott M. Klausner | A103 | Review and revise | 0.60 |
| 08/12/2015 | Dennis S. Ellis | A103 | Review and revise | 1.70 |
| 08/12/2015 | Nicholas J. Begakis | A103 | Revise and finaliz | 1.30 |
| 08/12/2015 | Scott M. Klausner | A103 | Review and revise | 0.30 |
| 08/12/2015 | Scott M. Klausner | A103 | Review and revis | 1.60 |
| 08/13/2015 | Dennis S. Ellis | A103 | Revise and finalize | 1.50 |
| 08/13/2015 | Nicholas J. Begakis | A103 | Finalize | 1.00 |
| 08/20/2015 | Nicholas J. Begakis | A108 | Correspond | 0.70 |

Page 3



| Date | Name | Code | Description | Hours |
|---|---|---|---|---|
| 08/21/2015 | Nicholas J. Begakis | A105 | Correspond ██████████ | 0.30 |
| 08/12/2015 | Dennis S. Ellis | A105 | Correspond ██████ | 0.30 |
| 08/10/2015 | Nicholas J. Begakis | A108 | Telephone conference with T. Rehn ███████ | 0.30 |
| 08/10/2015 | Nicholas J. Begakis | A106 | Correspond with K. Fink regarding service of deposition notices | 0.40 |
| 08/10/2015 | Nicholas J. Begakis | A104 | Review and analyze ███████ | 0.60 |
| 08/10/2015 | Scott M. Klausner | A105 | Conference with D. Ellis and N. Begakis ██████ | 0.30 |
| 08/11/2015 | Scott M. Klausner | A103 | Draft objections to plaintiff's notices of depositions | 0.40 |
| 08/12/2015 | Scott M. Klausner | A102 | Legal research ██████████ | 0.70 |
| 08/12/2015 | Scott M. Klausner | A103 | Draft objections to plaintiffs notices of depositions | 1.50 |
| 08/13/2015 | Dennis S. Ellis | A103 | Review and revise ████████ | 0.50 |
| 08/13/2015 | Nicholas J. Begakis | A103 | Review and revise █████████ | 1.20 |
| 08/13/2015 | Scott M. Klausner | A102 | Legal research ██████████ | 1.60 |
| 08/13/2015 | Scott M. Klausner | A103 | Review and revise ████████ | 5.10 |
| 08/14/2015 | Nicholas J. Begakis | A103 | Review and revise █████████ | 0.70 |
| 08/14/2015 | Scott M. Klausner | A103 | Review and revise █████████ | 1.50 |
| 08/17/2015 | Nicholas J. Begakis | A108 | Correspond with T. Rehn ██████████ | 0.40 |

| | | | | |
|---|---|---|---|---|
| 08/17/2015 | Nicholas J. Begakis | A108 | Correspond with K. Fink regarding meet and confer and request for limited discovery | 0.60 |
| 08/18/2015 | Nicholas J. Begakis | A105 | Correspond regarding ███████████ | 0.30 |
| 08/18/2015 | Nicholas J. Begakis | A108 | Correspond with K. Fink regarding request for limited discovery | 0.40 |
| 08/18/2015 | Nicholas J. Begakis | A108 | Correspond with M. Helm ██████████ | 0.30 |
| 08/18/2015 | Scott M. Klausner | A103 | Review and revis ████████ | 0.90 |
| 08/18/2015 | Scott M. Klausner | A108 | Correspond with D. Ellis, N. Begakis, and K. Fink regarding depositions and other discovery matters | 0.10 |
| 08/19/2015 | Nicholas J. Begakis | A103 | Revise and finalize ██████████ | 0.60 |
| 08/19/2015 | Nicholas J. Begakis | A105 | Correspond ████████ | 0.20 |
| 08/25/2015 | Nicholas J. Begakis | A105 | Conference with D. Ellis and S. Klausner ████████ | █ |
| | | ████████ | | █ |
| | ████ ████████ | | | |
| | ████ | ██████████ | | ██ |
| 08/10/2015 | Scott M. Klausner | A102 | Legal research ██████████ | 0.50 |
| 08/21/2015 | Dennis S. Ellis | A102 | Research ████████ | 1.00 |
| 08/21/2015 | Dennis S. Ellis | A108 | Telephone conference with K. Fink regarding discovery | 0.50 |
| 08/25/2015 | Dennis S. Ellis | A105 | Correspond ████████ | 0.30 |
| 08/25/2015 | Dennis S. Ellis | A104 | Review letter ██████ | 0.30 |
| 08/25/2015 | Scott M. Klausner | A105 | Conference with D. Ellis ████████ | 0.20 |
| 08/25/2015 | Scott M. Klausner | A108 | Correspond with K. Fink regarding limited discovery regarding anti-SLAPP motion | 1.60 |
| 08/25/2015 | Scott M. Klausner | A104 | Review and analyze ████████ | 0.20 |

Page 5

| Date | Timekeeper | Code | Description | Hours |
|------|-----------|------|-------------|-------|
| 08/25/2015 | Scott M. Klausner | A102 | Legal research ███████████ ████████ | 0.80 |
| 08/25/2015 | Scott M. Klausner | A108 | Correspond with K. Fink regarding anti-SLAPP motion | 0.10 |
| 08/26/2015 | Dennis S. Ellis | A104 | Review letter ████████ | 0.30 |
| 08/26/2015 | Scott M. Klausner | A103 | Review and revise ██████████████ ██████████ | 0.90 |
| 08/26/2015 | Scott M. Klausner | A102 | Legal research regarding scope of available discovery regarding anti-SLAPP motion | 0.50 |

**Total Hours**                                                                                    **48.10**

### Timekeeper Summary

| Name | Hours |
|------|-------|
| Elena R. Baca | 0.80 hours at |
| Dennis S. Ellis | 12.90 hours at |
| Nicholas J. Begakis | 12.10 hours at |
| Scott M. Klausner | 22.30 hours at |

**Costs incurred and advanced**

**Total Costs incurred and advanced**

**Current Fees and Costs**
**Prior Balance Due**
**Total Balance Due**



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



September 30, 2015

---

**SUMMARY SHEET**

**Charney Litigation (Danziger)**

Legal fees for professional services
for the period ending September 30, 2015



      Costs incurred and advanced

      **Current Fees and Costs Due**

      **Less Retainer Applied**

      **Total Balance Due**





**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



September 30, 2015

---

**REMITTANCE COPY**

**Charney Litigation (Danziger)**

Legal fees for professional services
for the period ending September 30, 2015



    Costs incurred and advanced

**Current Fees and Costs Due**

**Less Retainer Applied**

**Total Balance Due**

PAGE 116



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

September 30, 2015

FOR PROFESSIONAL SERVICES RENDERED
for the period ending September 30, 2015

**Charney Litigation (Danziger)**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 09/03/2015 | Dennis S. Ellis | A105 | Telephone conference ███████████ ███ | 0.30 |
| 09/03/2015 | Dennis S. Ellis | A102 | Research ████████████████████ | 1.00 |
| 09/09/2015 | Elena R. Baca | A107 | Telephone conference with co-counsel ████████████ | 0.50 |
| 09/09/2015 | Elena R. Baca | A105 | Telephone conference with D. Ellis ████ ███ | 0.50 |
| 09/10/2015 | Elena R. Baca | A105 | Telephone conference ████████ ███ | 0.40 |
| 09/11/2015 | Dennis S. Ellis | A105 | Correspond with attorneys ██████████ ███ | 0.30 |
| 09/11/2015 | Dennis S. Ellis | A108 | Interview ██████ | 0.30 |
| 09/14/2015 | Elena R. Baca | A105 | Correspond with D. Ellis ██████████ | 0.20 |
| 09/15/2015 | Elena R. Baca | A105 | Conferenc ████████████ | 0.30 |



Page 2

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 09/03/2015 | Dennis S. Ellis | A103 | Draft opposition and supporting declaration of D. Danziger | 1.00 |
| 09/03/2015 | Dennis S. Ellis | A105 | Conference and correspond with team █████ ████████████ | 2.00 |
| 09/03/2015 | Elena R. Baca | A107 | Review request from K. Fink and draft response regarding same | 0.40 |
| 09/03/2015 | Elena R. Baca | A104 | Review ███████████████████████ | 0.40 |
| 09/03/2015 | Elena R. Baca | A105 | Correspond with D. Ellis ██████████ | 0.60 |
| 09/08/2015 | Elena R. Baca | A101 | Prepare ████████ | 0.10 |
| 09/09/2015 | Dennis S. Ellis | A105 | Telephone conference with attorneys █████ | 0.50 |
| 09/09/2015 | Elena R. Baca | A104 | Review ██████████████████ | 0.60 |
| 09/09/2015 | Elena R. Baca | A101 | Prepare ██████████ | 0.10 |
| 09/09/2015 | Elena R. Baca | A103 | Revise ████████████ | 0.60 |
| 09/10/2015 | Dennis S. Ellis | A105 | Correspond █████████████ | 0.30 |
| 09/10/2015 | Elena R. Baca | A107 | Correspond █████████████ | 0.20 |
| 09/10/2015 | Elena R. Baca | A106 | Telephone conference ████████████ | 0.30 |
| 09/10/2015 | Elena R. Baca | A109 | Prepare for and attend ex parte motion hearing | 1.40 |
| 09/14/2015 | Dennis S. Ellis | A104 | Review ████████████ | 0.50 |
| 09/14/2015 | Dennis S. Ellis | A107 | Correspond with counsel ███████████ | 2.50 |
| 09/15/2015 | Dennis S. Ellis | A103 | Draft opposition to ex parte proceedings | 3.00 |
| 09/15/2015 | Elena R. Baca | A101 | Prepare ██████████ | 0.50 |
| 09/15/2015 | Elena R. Baca | A104 | Review ████████ | 0.10 |
| 09/16/2015 | Dennis S. Ellis | A104 | Review ██████████████████ | 1.00 |
| 09/16/2015 | Dennis S. Ellis | A109 | Prepare for and attend ex parte hearing | 2.00 |
| 09/16/2015 | Elena R. Baca | A101 | Attend ex parte hearing | 2.60 |
| 09/16/2015 | Elena R. Baca | A101 | Prepare ██████████ | 0.40 |
| 09/17/2015 | Dennis S. Ellis | A104 | Review and revise ██████████ | 0.30 |
| 09/18/2015 | Dennis S. Ellis | A105 | Conference with N. Begakis █████ | 0.30 |

Page 3



| | | | | |
|---|---|---|---|---|
| 09/18/2015 | Dennis S. Ellis | A104 | Initial review ███████████ | 0.80 |
| 09/21/2015 | Dennis S. Ellis | A103 | Outline ████████████ | 0.50 |
| 09/21/2015 | Dennis S. Ellis | A104 | Review ███████████ | 1.00 |
| 09/22/2015 | Dennis S. Ellis | A104 | Review and revise ████████████ | 2.00 |
| 09/23/2015 | Dennis S. Ellis | A102 | ████████ prepare reply brief and objections for anti-SLAPP motion for filing | 4.50 |
| 09/28/2015 | Dennis S. Ellis | A104 | Review ███████████ | 0.50 |

| | | | | |
|---|---|---|---|---|
| 09/10/2015 | Elena R. Baca | A105 | Correspond with D. Ellis ████████ | 0.20 |
| 09/10/2015 | Elena R. Baca | A104 | Review email from K. Fink regarding discovery | 0.10 |
| 09/10/2015 | Elena R. Baca | A107 | Telephone conference with K. Fink regarding discovery | 0.20 |
| 09/11/2015 | Dennis S. Ellis | A104 | Review documents ███████████ | 0.30 |
| 09/11/2015 | Elena R. Baca | A106 | Correspond with ██████████ D. Ellis | 0.30 |
| 09/14/2015 | Elena R. Baca | A107 | Correspond with opposing counsel regarding discovery | 0.60 |

| | | | | |
|---|---|---|---|---|
| 09/03/2015 | Elena R. Baca | A106 | Telephone conference ███████████ | 0.50 |
| 09/10/2015 | Elena R. Baca | A107 | Correspond with K. Fink regarding deposition | 0.30 |

PAGE 119



Page 4

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 09/03/2015 | Nicholas J. Begakis | A103 | Draft opposition to ex parte application seeking discovery in support of opposition to anti-SLAPP motion | 7.00 |
| 09/04/2015 | Elena R. Baca | A105 | Correspond ███████████████ | 0.10 |
| 09/04/2015 | Elena R. Baca | A107 | Correspond with opposing counsel regarding 2802 issues | 0.10 |
| 09/08/2015 | Nicholas J. Begakis | A105 | Correspond ███████████ ███ | 0.20 |
| 09/09/2015 | Nicholas J. Begakis | A104 | Review and analyze ███████████████ | 0.70 |
| 09/09/2015 | Nicholas J. Begakis | A103 | Draft opposition to ex parte application for continuance of anti-SLAPP hearings in order to allow for discovery | 3.70 |
| 09/10/2015 | Nicholas J. Begakis | A109 | Prepare for and attend hearing on plaintiff's ex parte application to continue hearing on anti-SLAPP motions to allow for discovery | 3.80 |
| 09/10/2015 | Nicholas J. Begakis | A103 | Draft notice of ruling on ex parte application | 0.50 |
| 09/24/2015 | Elena R. Baca | A104 | Review █████████████ | 0.30 |
| 09/28/2015 | Nicholas J. Begakis | A103 | Draft opposition to motion for limited discovery | 0.70 |
| 09/29/2015 | Nicholas J. Begakis | A103 | Draft opposition to motion for limited discovery | 0.80 |
| 09/30/2015 | Nicholas J. Begakis | A103 | Draft opposition to motion for limited discovery | 1.00 |



| | | | | |
|------|-----------------|----------|-------------|-------|
| 09/03/2015 | Scott M. Klausner | A103 | Draft declaration of D. Ellis in support of opposition to ex parte application for leave to conduct limited discovery | 1.40 |
| 09/03/2015 | Scott M. Klausner | A102 | Legal research ████████████████ | 0.50 |
| 09/03/2015 | Scott M. Klausner | A108 | Review and analyze ███████████ | 0.20 |

PAGE 120

Page 5



| | | | | |
|---|---|---|---|---|
| 09/10/2015 | Scott M. Klausner | A104 | Review and analyze ██████████ | 0.20 |
| 09/11/2015 | Nicholas J. Begakis | A108 | Correspond with ██████████ | 0.40 |
| 09/14/2015 | Nicholas J. Begakis | A108 | Correspond ██████████ | 1.20 |
| 09/15/2015 | Nicholas J. Begakis | A103 | Draft opposition to ex parte application and supporting documents | 7.00 |
| 09/16/2015 | Nicholas J. Begakis | A105 | Conferences and correspond ██████ | 0.60 |
| 09/18/2015 | Nicholas J. Begakis | A103 | Draft notice of ruling on ex parte application | 0.50 |
| 09/24/2015 | Nicholas J. Begakis | A104 | Review and analysis ██████████ | 0.60 |

**Total Hours**                                                                        **68.80**

### Timekeeper Summary

| | | |
|---|---|---|
| Elena R. Baca | 12.90 | hours at |
| Dennis S. Ellis | 24.90 | hours at |
| Nicholas J. Begakis | 28.70 | hours at |
| Scott M. Klausner | 2.30 | hours at |

Page 6

▮▮▮▮▮

---

**Costs incurred and advanced**



**Total Costs incurred and advanced**

Current Fees and Costs
Less Retainer Applied
Total Balance Due



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

November 30, 2015



---

## SUMMARY SHEET

### Charney Litigation (Danziger)

Legal fees for professional services
for the period ending October 31, 2015

Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due**





PAGE 123



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

November 30, 2015



---

## REMITTANCE COPY

### Charney Litigation (Danziger)

Legal fees for professional services
for the period ending October 31, 2015

    Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due**





Page 2

**REMITTANCE COPY (cont.)**

**Summary of Prior Balance Due**

| Invoice Date | Invoice Number | Amount | Payments/ Trust Appl. | Credits | Balance Due |
|---|---|---|---|---|---|
| 07/30/2015 | ███ | ███ | ███ | ███ | ███ |
| 08/28/2015 | ███ | ███ | ███ | ███ | ███ |
| 09/28/2015 | ███ | ███ | ███ | ███ | ███ |

**Total Prior Due**
**Balance Due**



# PAUL HASTINGS

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

November 30, 2015

FOR PROFESSIONAL SERVICES RENDERED
for the period ending October 31, 2015

## Charney Litigation (Danziger)

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 10/01/2015 | Nicholas J. Begakis | A103 | Draft opposition to motion for specified discovery | 1.20 |
| 10/02/2015 | Nicholas J. Begakis | A103 | Draft opposition to motion for specified discovery | 2.00 |
| 10/04/2015 | Nicholas J. Begakis | A103 | Draft opposition to motion for limited discovery | 2.40 |

**Total Hours** 5.60

### Timekeeper Summary

Nicholas J. Begakis                    5.60    hours at

**Costs incurred and advanced**

**Total Costs incurred and advanced**

### Current Fees and Costs



Page 2



Prior Balance Due

Total Balance Due



# PAUL
# HASTINGS

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



**REVISED January 15, 2016**
November 30, 2015

---

## SUMMARY SHEET

### Charney Litigation Against Danziger

Legal fees for professional services
for the period ending October 31, 2015



    Costs incurred and advanced

**Current Fees and Costs Due**

**Total Balance Due**

PAGE 128



**PAUL HASTINGS**

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



**REVISED January 15, 2016**
November 30, 2015

**REMITTANCE COPY**

<u>**Charney Litigation Against Danziger**</u>

Legal fees for professional services
for the period ending October 31, 2015

        Costs incurred and advanced

        **Current Fees and Costs Due**

        **Total Balance Due**





PAGE 129



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



**REVISED January 15, 2016**
November 30, 2015

FOR PROFESSIONAL SERVICES RENDERED
for the period ending October 31, 2015

## Charney Litigation Against Danziger



| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 10/05/2015 | Dennis S. Ellis | A106 | Correspond with D. Danziger ██████ ██████ | 0.30 |
| 10/12/2015 | Dennis S. Ellis | A105 | Telephone conference ██████ ████ | 0.70 |
| 10/13/2015 | Dennis S. Ellis | A102 | Research ██████ ████ | 0.50 |
| 10/16/2015 | Dennis S. Ellis | A102 | Research ██████ | 0.50 |
| 10/18/2015 | Dennis S. Ellis | A101 | Prepare for hearing on ex parte stay and motion for discovery | 0.80 |

PAGE 130

Page 2



| Date | Name | Code | Description | Hours |
|---|---|---|---|---|
| 10/22/2015 | Elena R. Baca | A106 | Telephone conference | 0.40 |
| 10/07/2015 | Nicholas J. Begakis | A105 | Correspond with C. Fox and D. Ellis | 0.30 |
| 10/07/2015 | Nicholas J. Begakis | A108 | Conferences and correspond | 0.60 |
| 10/08/2015 | Nicholas J. Begakis | A103 | Review and revise | 0.50 |
| 10/09/2015 | Nicholas J. Begakis | A108 | Correspond and internal conferences | 1.20 |
| 10/09/2015 | Nicholas J. Begakis | A103 | Review and revise | 0.50 |
| 10/12/2015 | Nicholas J. Begakis | A108 | Correspond | 0.50 |
| 10/13/2015 | Nicholas J. Begakis | A103 | Review and revise | 0.80 |
| 10/13/2015 | Nicholas J. Begakis | A103 | Draft ex parte application to stay litigation | 1.00 |
| 10/13/2015 | Nicholas J. Begakis | A108 | Meet and confer correspondence with K. Steinberg (counsel for plaintiff) regarding bankruptcy issues | 0.80 |
| 10/13/2015 | Nicholas J. Begakis | A103 | Correspond | 1.30 |
| 10/19/2015 | Nicholas J. Begakis | A105 | Correspond with E. Baca and L. Paez | 0.50 |
| 10/22/2015 | Elena R. Baca | A106 | Conference with client | 0.60 |

PAGE 131

Page 3

| | | | | | |
|---|---|---|---|---|---|
| 10/07/2015 | Dennis S. Ellis | A103 | Draft opposition to motion for special discovery | | 1.70 |
| 10/07/2015 | Dennis S. Ellis | A103 | Draft statement of decision | | 0.30 |
| 10/10/2015 | Elena R. Baca | A105 | Conference with D. Ellis ███ | | 0.20 |
| 10/15/2015 | Dennis S. Ellis | A104 | Review and revise ███ | | 1.00 |

| | | | | | |
|---|---|---|---|---|---|
| 10/05/2015 | Dennis S. Ellis | A106 | Correspond with client ███ | | 0.30 |
| 10/05/2015 | Dennis S. Ellis | A104 | Review and revise ███ | | 1.00 |
| 10/05/2015 | Nicholas J. Begakis | A103 | Draft opposition to motion for specified discovery and supporting documents | | 5.00 |
| 10/13/2015 | Dennis S. Ellis | A104 | Review ███ | | 0.50 |

| | | | | | |
|---|---|---|---|---|---|
| 10/05/2015 | Scott M. Klausner | A108 | Review and revis ███ | | 0.30 |
| 10/14/2015 | Scott M. Klausner | A108 | Review and revise ███ | | 0.60 |

PAGE 132

██████████████████████                                            Page 4
████████
████

---

██  ███████████
██  ████████████████  ███████████                                ██

| 10/05/2015 | Nicholas J. Begakis | A108 | Correspond ████████████████████████ | 0.40 |
| 10/07/2015 | Scott M. Klausner | A103 | Draft case management statement ████ | 1.00 |
| 10/08/2015 | Scott M. Klausner | A103 | Draft case management statement ████████████████████████ | 1.00 |
| 10/09/2015 | Nicholas J. Begakis | A103 | Draft ex parte application to stay litigation | 0.80 |
| 10/13/2015 | Nicholas J. Begakis | A104 | Review and analyze ████████████████ | 0.50 |
| 10/14/2015 | Nicholas J. Begakis | A103 | Draft ex parte application to stay proceeding and supporting documents | 5.00 |
| 10/15/2015 | Nicholas J. Begakis | A103 | Review and revise ████████████████ | 3.50 |
| 10/18/2015 | Nicholas J. Begakis | A104 | Prepare for hearing on ex parte application to stay proceedings | 0.60 |
| 10/19/2015 | Nicholas J. Begakis | A109 | Prepare for and attend hearing on ex parte application to stay litigation | 4.00 |

████████████████████████                                          ████

██  ███████████
██  ████████  ████████████                                        ████

| 10/07/2015 | Scott M. Klausner | A108 | Meet and confer with opposing counsel | 0.50 |

████████████████████

██████████████████████                                            ████

████████                                                          ████

**Timekeeper Summary**

| Dennis S. Ellis | 7.60 | hours at |
| Elena R. Baca | 1.20 | hours at |
| ████████████ | ██ | ██████ |
| Nicholas J. Begakis | 27.80 | hours at |
| Scott M. Klausner | 3.40 | hours at |

PAGE 133

**Costs incurred and advanced**

**Total Costs incurred and advanced**

**Current Fees and Costs**

**Total Balance Due**



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



June 7, 2016

---

## SUMMARY SHEET

**Charney Litigation Against Danziger**



Legal fees for professional services
for the period ending April 30, 2016

**Current Fees and Costs Due**

**Total Balance Due**

PAGE 135



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

June 7, 2016



## REMITTANCE COPY

**Charney Litigation Against Danziger**

Legal fees for professional services
for the period ending April 30, 2016

**Current Fees and Costs Due**

**Total Balance Due**



PAGE 136



**PAUL HASTINGS**

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



June 7, 2016

FOR PROFESSIONAL SERVICES RENDERED
for the period ending April 30, 2016

**Charney Litigation Against Danziger**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 04/18/2016 | Scott M. Klausner | A101 | Prepare for and attend status conference | 3.10 |

**Subtotal: L450  Trial and Hearing Attendance** **3.10**

**Total Hours** **3.10**

<div align="center">Timekeeper Summary</div>

Scott M. Klausner                3.10    hours at

**Current Fees and Costs**

**Total Balance Due**



PAGE 137



**PAUL HASTINGS**

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com



August 10, 2016

**SUMMARY SHEET**

<u>**Charney Litigation Against Danziger**</u>

Legal fees for professional services
for the period ending July 31, 2016

**Current Fees and Costs Due**

**Total Balance Due**



PAGE 138



**PAUL HASTINGS**

**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

August 10, 2016



## REMITTANCE COPY

### Charney Litigation Against Danziger

Legal fees for professional services
for the period ending July 31, 2016

**Current Fees and Costs Due**

**Total Balance Due**



11/01/2018

PAGE 139



**PAUL HASTINGS LLP**
71 S. Wacker Drive, Forty-Fifth Floor, Chicago, IL 60606
t: +1.312.499.6000 | f: +1.312.499.6100 | www.paulhastings.com

August 10, 2016

FOR PROFESSIONAL SERVICES RENDERED
for the period ending July 31, 2016

**Charney Litigation Against Danziger**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 07/18/2016 | Dennis S. Ellis | A105 | Correspond with S. Klausner | 0.30 |

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 07/28/2016 | Scott M. Klausner | A103 | Draft and serve notice of order at status conference | 0.30 |



PAGE 140

Page 2

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 07/18/2016 | Scott M. Klausner | A101 | Prepare for and attend status conference | 1.70 |

**Timekeeper Summary**

| Dennis S. Ellis | 0.30 | hours at |
|-----------------|------|----------|
| Scott M. Klausner | 2.00 | hours at |

**Current Fees and Costs**

**Total Balance Due**

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 5/30/2015 | Scott M. Klausner | Conference with N. Begakis | 0.8 |
| 5/30/2015 | Scott M. Klausner | Draft and revise memorandum of points and authorities in support of anti-SLAPP motion | 8.1 |
| 6/19/2015 | Scott M. Klausner | Conference with N. Begakis | 0.3 |
| 6/19/2015 | Scott M. Klausner | Legal research | 1.0 |
| 6/19/2015 | Scott M. Klausner | Review and analyze | 1.0 |
| 6/21/2015 | Dennis S. Ellis | Correspond | 0.3 |
| 6/22/2015 | Dennis S. Ellis | Review | 0.3 |
| 6/22/2015 | Scott M. Klausner | Draft | 2.0 |
| 6/22/2015 | Scott M. Klausner | Legal research | 2.5 |
| 6/22/2015 | Scott M. Klausner | Review and analyze | 1.2 |
| 6/23/2015 | Dennis S. Ellis | Review | 1.0 |
| 6/23/2015 | Dennis S. Ellis | Telephone conference | 0.5 |
| 6/23/2015 | Dennis S. Ellis | Telephone conference | 0.5 |
| 6/23/2015 | Scott M. Klausner | Draft | 3.1 |
| 6/23/2015 | Scott M. Klausner | Legal research | 1.2 |
| 6/23/2015 | Scott M. Klausner | Review and analyze | 1.0 |
| 6/24/2015 | Scott M. Klausner | Correspond with | 0.2 |
| 6/24/2015 | Scott M. Klausner | Correspond with | 0.2 |
| 6/24/2015 | Scott M. Klausner | Draft | 3.7 |
| 6/24/2015 | Scott M. Klausner | Legal research | 1.5 |
| 6/24/2015 | Scott M. Klausner | Review and analyze | 0.8 |
| 6/25/2015 | Scott M. Klausner | Legal research | 0.2 |
| 6/25/2015 | Scott M. Klausner | Review and analyze | 0.4 |
| 6/26/2015 | Dennis S. Ellis | Research | 1.0 |
| 6/29/2015 | Nicholas J. Begakis | Correspond and conferences with D. Ellis and S. Klausner | 0.8 |
| 6/29/2015 | Scott M. Klausner | Draft and revise memorandum of points and authorities in support of anti-SLAPP motion | 6.8 |
| 6/29/2015 | Scott M. Klausner | Legal research | 1.2 |
| 6/30/2015 | Dennis S. Ellis | Correspond with K. Fink regarding service of Danziger | 0.3 |
| 6/30/2015 | Dennis S. Ellis | Draft letter | 0.3 |
| 6/30/2015 | Dennis S. Ellis | Telephone conference | 0.3 |
| 6/30/2015 | Dennis S. Ellis | Telephone conference | 0.5 |
| 6/30/2015 | Dennis S. Ellis | Telephone conference with K. Fink regarding service of Danziger | 0.3 |
| 6/30/2015 | Nicholas J. Begakis | Review and revise | 1.0 |
| 6/30/2015 | Scott M. Klausner | Legal research | 1.0 |
| 7/1/2015 | Dennis S. Ellis | Telephone conference | 1.0 |
| 7/2/2015 | Nicholas J. Begakis | Correspond with D. Ellis | 0.3 |
| 7/7/2015 | Nicholas J. Begakis | Review and revise | 1.0 |
| 7/8/2015 | Elena R. Baca | Conference with D. Ellis | 0.2 |
| 7/8/2015 | Nicholas J. Begakis | Review and revise | 3.4 |
| 7/8/2015 | Scott M. Klausner | Review and analyze | 0.3 |
| 7/9/2015 | Dennis S. Ellis | Correspond | 0.3 |
| 7/9/2015 | Dennis S. Ellis | Correspond with K. Fink regarding service | 0.2 |
| 7/9/2015 | Nicholas J. Begakis | Review and revise | 2.8 |

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 7/9/2015 | Scott M. Klausner | Review and analyze | 0.3 |
| 7/10/2015 | Nicholas J. Begakis | Review and revise | 1.0 |
| 7/10/2015 | Scott M. Klausner | Draft notice of motion and anti-SLAPP motion | 0.2 |
| 7/10/2015 | Scott M. Klausner | Review and analyze | 0.5 |
| 7/10/2015 | Scott M. Klausner | Review and revise | 0.8 |
| 7/10/2015 | Scott M. Klausner | Review and revise | 1.5 |
| 7/15/2015 | Dennis S. Ellis | Review and revise | 2.0 |
| 7/15/2015 | Nicholas J. Begakis | Review and revise | 3.8 |
| 7/15/2015 | Scott M. Klausner | Review and analyze | 0.3 |
| 7/15/2015 | Scott M. Klausner | Review and revise | 0.3 |
| 7/15/2015 | Scott M. Klausner | Review and revise | 0.4 |
| 7/15/2015 | Scott M. Klausner | Review and revise | 0.2 |
| 7/15/2015 | Scott M. Klausner | Review and revise | 0.8 |
| 7/16/2015 | Scott M. Klausner | Review and revise | 0.2 |
| 7/17/2015 | Dennis S. Ellis | Conference with N. Begakis and S. Klausner | 1.0 |
| 7/17/2015 | Nicholas J. Begakis | Conference with D. Ellis and S. Klausner | 0.5 |
| 7/17/2015 | Scott M. Klausner | Legal research | 1.9 |
| 7/17/2015 | Scott M. Klausner | Review and revise | 1.4 |
| 7/18/2015 | Scott M. Klausner | Review and revise | 3.8 |
| 7/20/2015 | Scott M. Klausner | Review and revise | 1.0 |
| 7/21/2015 | Nicholas J. Begakis | Correspond with K. Fink regarding service of process on D. Danziger | 0.5 |
| 7/22/2015 | Nicholas J. Begakis | Review and revise | 2.3 |
| 7/23/2015 | Dennis S. Ellis | Review and revise | 2 |
| 7/23/2015 | Nicholas J. Begakis | Review and revise | 1.5 |
| 7/23/2015 | Scott M. Klausner | Legal research | 0.8 |
| 7/23/2015 | Scott M. Klausner | Review and revise | 1.0 |
| 7/24/2015 | Nicholas J. Begakis | Telephone conference and correspond with K. Fink regarding responsive pleading and evidence preservation | 0.4 |
| 7/24/2015 | Scott M. Klausner | Conference with N. Begakis | 0.2 |
| 7/24/2015 | Scott M. Klausner | Legal research | 2.0 |
| 7/24/2015 | Scott M. Klausner | Review and revise | 4.7 |
| 7/25/2015 | Nicholas J. Begakis | Review and revise | 1.5 |
| 7/25/2015 | Scott M. Klausner | Legal research | 1.4 |
| 7/27/2015 | Dennis S. Ellis | Review and revise | 2.0 |
| 7/27/2015 | Nicholas J. Begakis | Review and revise | 0.4 |
| 7/27/2015 | Nicholas J. Begakis | Review and revise | 1.0 |
| 7/27/2015 | Scott M. Klausner | Confer with D. Ellis and N. Begakis | 0.2 |
| 7/27/2015 | Scott M. Klausner | Conference with D. Ellis and N. Begakis | 0.2 |
| 7/27/2015 | Scott M. Klausner | Legal research | 1.9 |
| 7/27/2015 | Scott M. Klausner | Review and revise | 0.9 |
| 7/28/2015 | Nicholas J. Begakis | Correspond with | 0.2 |
| 7/28/2015 | Nicholas J. Begakis | Review and revise | 1.7 |
| 7/28/2015 | Scott M. Klausner | Confer with D. Ellis and N. Begakis | 0.3 |
| 7/28/2015 | Scott M. Klausner | Legal research | 1.4 |
| 7/28/2015 | Scott M. Klausner | Review and revise | 0.5 |
| 7/28/2015 | Scott M. Klausner | Review and revise | 0.4 |
| 7/28/2015 | Scott M. Klausner | Review and revise | 1.0 |

PAGE 143

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 7/29/2015 | Dennis S. Ellis | Review and revise | 2.0 |
| 7/29/2015 | Nicholas J. Begakis | Review and revise | 0.8 |
| 7/29/2015 | Scott M. Klausner | Legal research | 0.4 |
| 7/29/2015 | Scott M. Klausner | Review and revise | 0.4 |
| 7/29/2015 | Scott M. Klausner | Review and revise | 0.4 |
| 7/31/2015 | Dennis S. Ellis | Correspond | 0.3 |
| 7/31/2015 | Dennis S. Ellis | Review and revise | 1.7 |
| 7/31/2015 | Scott M. Klausner | Revise | 0.4 |
| 8/1/2015 | Scott M. Klausner | Correspond with D. Ellis and N. Begakisn | 0.4 |
| 8/2/2015 | Dennis S. Ellis | Review and revise | 1.0 |
| 8/2/2015 | Scott M. Klausner | Review and revise | 0.7 |
| 8/2/2015 | Scott M. Klausner | Review and revise | 0.7 |
| 8/3/2015 | Dennis S. Ellis | Correspond | 0.5 |
| 8/3/2015 | Dennis S. Ellis | Review and revise | 3.5 |
| 8/3/2015 | Nicholas J. Begakis | Review and revise | 0.8 |
| 8/3/2015 | Scott M. Klausner | Review and revise | 0.3 |
| 8/4/2015 | Scott M. Klausner | Review and analyze | 0.4 |
| 8/10/2015 | Nicholas J. Begakis | Correspond with K. Fink regarding service of deposition notices | 0.4 |
| 8/10/2015 | Nicholas J. Begakis | Review and analyze | 0.6 |
| 8/10/2015 | Nicholas J. Begakis | Telephone conference with T. Rehn | 0.3 |
| 8/10/2015 | Scott M. Klausner | Conference with D. Ellis and N. Begakis | 0.3 |
| 8/10/2015 | Scott M. Klausner | Legal research | 0.5 |
| 8/11/2015 | Dennis S. Ellis | Finalize | 0.5 |
| 8/11/2015 | Elena R. Baca | Review and revise | 0.5 |
| 8/11/2015 | Nicholas J. Begakis | Review and revise | 0.7 |
| 8/11/2015 | Nicholas J. Begakis | Review and revise | 1.0 |
| 8/11/2015 | Scott M. Klausner | Draft objections to plaintiff's notices of depositions | 0.4 |
| 8/11/2015 | Scott M. Klausner | Review and revise | 0.2 |
| 8/11/2015 | Scott M. Klausner | Review and revise | 0.2 |
| 8/11/2015 | Scott M. Klausner | Review and revise | 0.6 |
| 8/12/2015 | Dennis S. Ellis | Correspond | 0.3 |
| 8/12/2015 | Dennis S. Ellis | Review and revise | 1.7 |
| 8/12/2015 | Nicholas J. Begakis | Revise and finalize | 1.3 |
| 8/12/2015 | Scott M. Klausner | Draft objections to plaintiff's notices of depositions | 1.5 |
| 8/12/2015 | Scott M. Klausner | Legal research | 0.7 |
| 8/12/2015 | Scott M. Klausner | Review and revise | 0.3 |
| 8/12/2015 | Scott M. Klausner | Review and revise | 1.6 |
| 8/13/2015 | Dennis S. Ellis | Review and revise | 0.5 |
| 8/13/2015 | Dennis S. Ellis | Revise and finalize | 1.5 |
| 8/13/2015 | Elena R. Baca | Review | 0.3 |
| 8/13/2015 | Nicholas J. Begakis | Finalize | 1.0 |
| 8/13/2015 | Nicholas J. Begakis | Review and revise | 1.2 |
| 8/13/2015 | Scott M. Klausner | Legal research | 1.6 |
| 8/13/2015 | Scott M. Klausner | Review and revise | 5.1 |
| 8/14/2015 | Nicholas J. Begakis | Review and revise | 0.7 |
| 8/14/2015 | Scott M. Klausner | Review and revise | 1.5 |

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 8/17/2015 | Nicholas J. Begakis | Correspond with K. Fink regarding meet and confer and request for limited discovery | 0.6 |
| 8/17/2015 | Nicholas J. Begakis | Correspond with T. Rehn | 0.4 |
| 8/18/2015 | Nicholas J. Begakis | Correspond regarding | 0.3 |
| 8/18/2015 | Nicholas J. Begakis | Correspond with K. Fink regarding request for limited discovery | 0.4 |
| 8/18/2015 | Nicholas J. Begakis | Correspond with M. Helm | 0.3 |
| 8/18/2015 | Scott M. Klausner | Correspond with D. Ellis, N. Begakis, and K. Fink regarding depositions and other discovery matters | 0.1 |
| 8/18/2015 | Scott M. Klausner | Review and revise | 0.9 |
| 8/19/2015 | Dennis S. Ellis | Correspond with K. Fink regarding litigation | 0.5 |
| 8/19/2015 | Dennis S. Ellis | Review | 0.5 |
| 8/19/2015 | Nicholas J. Begakis | Correspond | 0.2 |
| 8/19/2015 | Nicholas J. Begakis | Revise and finalize | 0.6 |
| 8/20/2015 | Nicholas J. Begakis | Correspond | 0.7 |
| 8/21/2015 | Dennis S. Ellis | Research | 1.0 |
| 8/21/2015 | Dennis S. Ellis | Telephone conference with K. Fink regarding discovery | 0.5 |
| 8/21/2015 | Nicholas J. Begakis | Correspond | 0.3 |
| 8/25/2015 | Dennis S. Ellis | Correspond | 0.3 |
| 8/25/2015 | Dennis S. Ellis | Review letter | 0.3 |
| 8/25/2015 | Nicholas J. Begakis | Conference with D. Ellis and S. Klausner | 0.3 |
| 8/25/2015 | Scott M. Klausner | Conference with D. Ellis | 0.2 |
| 8/25/2015 | Scott M. Klausner | Correspond with K. Fink regarding anti-SLAPP motion | 0.1 |
| 8/25/2015 | Scott M. Klausner | Correspond with K. Fink regarding limited discovery regarding anti-SLAPP motion | 1.6 |
| 8/25/2015 | Scott M. Klausner | Legal research | 0.8 |
| 8/25/2015 | Scott M. Klausner | Review and analyze | 0.2 |
| 8/26/2015 | Dennis S. Ellis | Review letter | 0.3 |
| 8/26/2015 | Scott M. Klausner | Legal research regarding scope of available discovery regarding anti-SLAPP motion | 0.5 |
| 8/26/2015 | Scott M. Klausner | Review and revise | 0.9 |
| 9/3/2015 | Dennis S. Ellis | Conference and correspond with team | 2.0 |
| 9/3/2015 | Dennis S. Ellis | Draft opposition and supporting declaration of D. Danziger | 1.0 |
| 9/3/2015 | Dennis S. Ellis | Research | 1.0 |
| 9/3/2015 | Dennis S. Ellis | Telephone conference | 0.3 |
| 9/3/2015 | Elena R. Baca | Correspond with D. Ellis | 0.6 |
| 9/3/2015 | Elena R. Baca | Review | 0.4 |
| 9/3/2015 | Elena R. Baca | Review request from K. Fink and draft response regarding same | 0.4 |
| 9/3/2015 | Elena R. Baca | Telephone conference | 0.5 |
| 9/3/2015 | Nicholas J. Begakis | Draft opposition to ex parte application seeking discovery in support of opposition to anti-SLAPP motion | 7.0 |

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 9/3/2015 | Scott M. Klausner | Draft declaration of D. Ellis in support of opposition to ex parte application for leave to conduct limited discovery | 1.4 |
| 9/3/2015 | Scott M. Klausner | Legal research | 0.5 |
| 9/3/2015 | Scott M. Klausner | Review and analyze | 0.2 |
| 9/4/2015 | Elena R. Baca | Correspond | 0.1 |
| 9/4/2015 | Elena R. Baca | Correspond with opposing counsel regarding 2802 issues | 0.1 |
| 9/8/2015 | Elena R. Baca | Prepare | 0.1 |
| 9/8/2015 | Nicholas J. Begakis | Correspond | 0.2 |
| 9/9/2015 | Dennis S. Ellis | Telephone conference with attorneys | 0.5 |
| 9/9/2015 | Elena R. Baca | Prepare | 0.1 |
| 9/9/2015 | Elena R. Baca | Review | 0.6 |
| 9/9/2015 | Elena R. Baca | Revise | 0.6 |
| 9/9/2015 | Elena R. Baca | Telephone conference with co-counsel | 0.5 |
| 9/9/2015 | Elena R. Baca | Telephone conference with D. Ellis | 0.5 |
| 9/9/2015 | Nicholas J. Begakis | Draft opposition to ex parte application for continuance of anti-SLAPP hearings in order to allow for discovery | 3.7 |
| 9/9/2015 | Nicholas J. Begakis | Review and analyze | 0.7 |
| 9/10/2015 | Dennis S. Ellis | Correspond | 0.3 |
| 9/10/2015 | Elena R. Baca | Correspond | 0.2 |
| 9/10/2015 | Elena R. Baca | Correspond with D. Ellis | 0.2 |
| 9/10/2015 | Elena R. Baca | Correspond with K. Fink regarding deposition | 0.3 |
| 9/10/2015 | Elena R. Baca | Prepare for and attend ex parte motion hearing | 1.4 |
| 9/10/2015 | Elena R. Baca | Review email from K. Fink regarding discovery | 0.1 |
| 9/10/2015 | Elena R. Baca | Telephone conference | 0.4 |
| 9/10/2015 | Elena R. Baca | Telephone conference | 0.3 |
| 9/10/2015 | Elena R. Baca | Telephone conference with K. Fink regarding discovery | 0.2 |
| 9/10/2015 | Nicholas J. Begakis | Draft notice of ruling on ex parte application | 0.5 |
| 9/10/2015 | Nicholas J. Begakis | Prepare for and attend hearing on plaintiff's ex parte application to continue hearing on anti-SLAPP motions to allow for discovery | 3.8 |
| 9/10/2015 | Scott M. Klausner | Review and analyze | 0.2 |
| 9/11/2015 | Dennis S. Ellis | Correspond with attorneys | 0.3 |
| 9/11/2015 | Dennis S. Ellis | Interview | 0.3 |
| 9/11/2015 | Dennis S. Ellis | Review documents | 0.3 |
| 9/11/2015 | Elena R. Baca | Correspond with D. Ellis | 0.3 |
| 9/11/2015 | Nicholas J. Begakis | Correspond with | 0.4 |
| 9/14/2015 | Dennis S. Ellis | Correspond with counsel | 2.5 |
| 9/14/2015 | Dennis S. Ellis | Review | 0.5 |
| 9/14/2015 | Elena R. Baca | Correspond with D. Ellis | 0.2 |
| 9/14/2015 | Elena R. Baca | Correspond with opposing counsel regarding discovery | 0.6 |
| 9/14/2015 | Nicholas J. Begakis | Correspond | 1.2 |

PAGE 146

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 9/15/2015 | Dennis S. Ellis | Draft opposition to ex parte proceedings | 3.0 |
| 9/15/2015 | Elena R. Baca | Conference | 0.3 |
| 9/15/2015 | Elena R. Baca | Prepare | 0.5 |
| 9/15/2015 | Elena R. Baca | Review | 0.1 |
| 9/15/2015 | Nicholas J. Begakis | Draft opposition to ex parte application and supporting documents | 7.0 |
| 9/16/2015 | Dennis S. Ellis | Prepare for and attend ex parte hearing | 2.0 |
| 9/16/2015 | Dennis S. Ellis | Review | 1.0 |
| 9/16/2015 | Elena R. Baca | Attend ex parte hearing | 2.6 |
| 9/16/2015 | Elena R. Baca | Prepare | 0.4 |
| 9/16/2015 | Nicholas J. Begakis | Conferences and correspond | 0.6 |
| 9/17/2015 | Dennis S. Ellis | Review and revise | 0.3 |
| 9/18/2015 | Dennis S. Ellis | Conference with N. Begakis | 0.3 |
| 9/18/2015 | Dennis S. Ellis | Initial review | 0.8 |
| 9/18/2015 | Nicholas J. Begakis | Draft notice of ruling on ex parte application | 0.5 |
| 9/21/2015 | Dennis S. Ellis | Outline | 0.5 |
| 9/21/2015 | Dennis S. Ellis | Review | 1.0 |
| 9/22/2015 | Dennis S. Ellis | Review and revise | 2.0 |
| 9/23/2015 | Dennis S. Ellis | Prepare reply brief and objections for anti-SLAPP motion for filing | 4.5 |
| 9/24/2015 | Elena R. Baca | Review | 0.3 |
| 9/24/2015 | Nicholas J. Begakis | Review and analyze | 0.6 |
| 9/28/2015 | Dennis S. Ellis | Review | 0.5 |
| 9/28/2015 | Nicholas J. Begakis | Draft opposition to motion for limited discovery | 0.7 |
| 9/29/2015 | Nicholas J. Begakis | Draft opposition to motion for limited discovery | 0.8 |
| 9/30/2015 | Nicholas J. Begakis | Draft opposition to motion for limited discovery | 1.0 |
| 10/1/2015 | Nicholas J. Begakis | Draft opposition to motion for specified discovery | 1.2 |
| 10/2/2015 | Nicholas J. Begakis | Draft opposition to motion for specified discovery | 2.0 |
| 10/4/2015 | Nicholas J. Begakis | Draft opposition to motion for limited discovery | 2.4 |
| 10/5/2015 | Dennis S. Ellis | Correspond with client | 0.3 |
| 10/5/2015 | Dennis S. Ellis | Correspond with D. Danziger | 0.3 |
| 10/5/2015 | Dennis S. Ellis | Review and revise | 1.0 |
| 10/5/2015 | Nicholas J. Begakis | Correspond | 0.4 |
| 10/5/2015 | Nicholas J. Begakis | Draft opposition to motion for specified discovery and supporting documents | 5.0 |
| 10/5/2015 | Scott M. Klausner | Review and revise | 0.3 |
| 10/7/2015 | Dennis S. Ellis | Draft opposition to motion for special discovery | 1.7 |
| 10/7/2015 | Dennis S. Ellis | Draft statement of decision | 0.3 |
| 10/7/2015 | Nicholas J. Begakis | Conferences and correspond | 0.6 |
| 10/7/2015 | Nicholas J. Begakis | Correspond with C. Fox and D. Ellis | 0.3 |
| 10/7/2015 | Scott M. Klausner | Draft case management statement | 1.0 |
| 10/7/2015 | Scott M. Klausner | Meet and confer with opposing counsel | 0.5 |
| 10/8/2015 | Nicholas J. Begakis | Review and revise | 0.5 |

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 10/8/2015 | Scott M. Klausner | Draft case management statement | 1.0 |
| 10/9/2015 | Nicholas J. Begakis | Correspond | 1.2 |
| 10/9/2015 | Nicholas J. Begakis | Draft ex parte application to stay litigation | 0.8 |
| 10/9/2015 | Nicholas J. Begakis | Review and revise | 0.5 |
| 10/10/2015 | Elena R. Baca | Conference with D. Ellis | 0.2 |
| 10/12/2015 | Dennis S. Ellis | Telephone conference | 0.7 |
| 10/12/2015 | Nicholas J. Begakis | Correspond | 0.5 |
| 10/13/2015 | Dennis S. Ellis | Research | 0.5 |
| 10/13/2015 | Dennis S. Ellis | Review | 0.5 |
| 10/13/2015 | Nicholas J. Begakis | Correspond | 1.3 |
| 10/13/2015 | Nicholas J. Begakis | Draft ex parte application to stay litigation | 1.0 |
| 10/13/2015 | Nicholas J. Begakis | Meet and confer correspondence with K. Steinberg (counsel for plaintiff) regarding bankruptcy issues | 0.8 |
| 10/13/2015 | Nicholas J. Begakis | Review and analyze | 0.5 |
| 10/13/2015 | Nicholas J. Begakis | Review and revise | 0.8 |
| 10/14/2015 | Nicholas J. Begakis | Draft ex parte application to stay proceeding and supporting documents | 5.0 |
| 10/14/2015 | Scott M. Klausner | Review and revise | 0.6 |
| 10/15/2015 | Dennis S. Ellis | Review and revise | 1.0 |
| 10/15/2015 | Nicholas J. Begakis | Review and revise | 3.5 |
| 10/16/2015 | Dennis S. Ellis | Research | 0.5 |
| 10/18/2015 | Dennis S. Ellis | Prepare for hearing on ex parte stay and motion for discovery | 0.8 |
| 10/18/2015 | Nicholas J. Begakis | Prepare for hearing on ex parte application to stay proceedings | 0.6 |
| 10/19/2015 | Nicholas J. Begakis | Correspond with E. Baca and L. Paez | 0.5 |
| 10/19/2015 | Nicholas J. Begakis | Prepare for and attend hearing on ex parte application to stay litigation | 4.0 |
| 10/22/2015 | Elena R. Baca | Conference with client | 0.6 |
| 10/22/2015 | Elena R. Baca | Telephone conference | 0.4 |

| Timekeeper | Total Hours for 2015 | Billing Rate | Grand Total |
|---|---|---|---|
| Elena R. Baca | 15.1 | $975.00 | $14,722.50 |
| Dennis S. Ellis | 63.2 | $1,050.00 | $66,360.00 |
| Nicholas J. Begakis (May 1, 2015 -Dec. 31, 2015) | 99.1 | $790.00 | $78,289.00 |
| Scott M. Klausner (May 1, 2015 -Dec. 31, 2015) | 98.6 | $550.00 | $54,230.00 |



| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 4/18/2016 | Scott M. Klausner | Prepare for and attend status conference | 3.1 |
| 7/18/2016 | Dennis S. Ellis | Correspond with S. Klausner | 0.3 |
| 7/18/2016 | Scott M. Klausner | Prepare for and attend status conference | 1.7 |
| 7/28/2016 | Scott M. Klausner | Draft and serve notice of order at status conference | 0.3 |

| Timekeeper | Total Hours for 2016 | Billing Rate | Grand Total |
|---|---|---|---|
| Dennis S. Ellis | 0.3 | $1,100 | $330.00 |
| Scott M. Klausner (Jan. 1, 2016-May 31, 2016) | 3.1 | $645.00 | $1,999.50 |
| Scott M. Klausner (Jun. 1, 2016-Dec. 31, 2016) | 2.0 | $670.00 | $1,340.00 |

PAGE 149

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 1/13/2017 | Scott M. Klausner | Prepare for and attend telephone conference; correspond with E. Baca and D. Ellis | 0.3 |
| 1/14/2017 | Dennis S. Ellis | Correspond with E. Baca and S. Klausner | 0.5 |
| 1/14/2017 | Elena R. Baca | Review documents | 0.2 |
| 1/14/2017 | Scott M. Klausner | Review documents; correspond with D. Ellis | 0.7 |
| 1/15/2017 | Dennis S. Ellis | Correspond with E. Baca and S. Klausner | 0.5 |
| 1/17/2017 | Dennis S. Ellis | Correspond with S. Klausner | 0.5 |
| 1/17/2017 | Elena R. Baca | Attend status conference | 1.0 |
| 1/17/2017 | Elena R. Baca | Review documents | 0.2 |
| 1/17/2017 | Scott M. Klausner | Attend status conference | 1.0 |
| 1/17/2017 | Scott M. Klausner | Review documents | 0.4 |
| 1/20/2017 | Dennis S. Ellis | Correspond | 0.5 |
| 1/23/2017 | Scott M. Klausner | Correspond | 0.1 |
| 1/23/2017 | Scott M. Klausner | Review documents | 0.2 |
| 1/24/2017 | Dennis S. Ellis | Telephone conference | 0.5 |
| 2/1/2017 | Dennis S. Ellis | Correspond with S. Klausner | 0.3 |
| 2/23/2017 | Scott M. Klausner | Correspond with D. Ellis | 0.3 |
| 2/23/2017 | Scott M. Klausner | Review and analyze | 0.3 |
| 2/23/2017 | Scott M. Klausner | Telephone conferences with K. Fink, O. Muller, and Judge Green's Chambers regarding dismissal of American Apparel and status of hearing on selection of mediator | 0.5 |
| 2/28/2017 | Dennis S. Ellis | Correspond with S. Klausner | 0.3 |
| 2/28/2017 | Elena R. Baca | Correspond | 0.2 |
| 2/28/2017 | Scott M. Klausner | Prepare for and attend status conference regarding potential mediation | 2.3 |
| 2/28/2017 | Scott M. Klausner | Review and analyze | 0.4 |
| 2/28/2017 | Scott M. Klausner | Review documents | 1.2 |
| 3/22/2017 | Scott M. Klausner | Correspond | 0.3 |
| 4/18/2017 | Scott M. Klausner | Appear for case management conference regarding status of proceedings and mediation | 1.0 |
| 4/25/2017 | Scott M. Klausner | Telephone conference | 0.3 |
| 4/26/2017 | Scott M. Klausner | Prepare for and attend telephone conference; correspond with E. Baca | 0.4 |
| 4/26/2017 | Scott M. Klausner | Review documents | 1.0 |
| 4/27/2017 | Elena R. Baca | Correspond | 0.2 |
| 4/27/2017 | Elena R. Baca | Strategize | 0.2 |
| 4/27/2017 | Elena R. Baca | Strategize | 0.2 |
| 5/1/2017 | Elena R. Baca | Review documents | 0.1 |
| 5/2/2017 | Elena R. Baca | Review | 0.1 |
| 5/2/2017 | Scott M. Klausner | Attend status conference regarding mediation and anti-SLAPP briefing schedule | 0.8 |
| 5/2/2017 | Scott M. Klausner | Meet and confer with O. Muller regarding mediation of claims following status conference | 0.1 |
| 5/2/2017 | Scott M. Klausner | Prepare correspondence | 0.1 |
| 5/8/2017 | Scott M. Klausner | Attend telephonic conference | 0.3 |
| 5/9/2017 | Scott M. Klausner | Attend telephonic conference | 0.2 |
| 5/10/2017 | Scott M. Klausner | Analysis | 0.3 |
| 5/10/2017 | Scott M. Klausner | Attend telephonic conference | 0.4 |
| 5/10/2017 | Scott M. Klausner | Attend telephonic conference | 0.2 |
| 5/11/2017 | Scott M. Klausner | Analyze and revise | 0.4 |
| 5/11/2017 | Scott M. Klausner | Attend telephonic conference | 0.2 |

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 5/11/2017 | Scott M. Klausner | Attend telephonic conference | 0.5 |
| 5/11/2017 | Scott M. Klausner | Review, analyze, and assess issues; follow-up with E. Baca | 2.1 |
| 5/15/2017 | Scott M. Klausner | Attend telephonic conference | 0.2 |
| 5/15/2017 | Scott M. Klausner | Attend telephonic conference | 0.3 |
| 5/23/2017 | Scott M. Klausner | Prepare for and attend telephonic conference | 0.4 |
| 5/23/2017 | Scott M. Klausner | Review documents | 0.6 |
| 5/30/2017 | Scott M. Klausner | Telephone conference | 0.2 |
| 9/14/2017 | Dennis S. Ellis | Prepare email | 1.0 |
| 9/14/2017 | Dennis S. Ellis | Telephone conference with S. Klausner | 0.5 |
| 9/15/2017 | Scott M. Klausner | Prepare | 2.3 |
| 9/18/2017 | Scott M. Klausner | Review and revise | 0.1 |
| 9/19/2017 | Dennis S. Ellis | Prepare email | 0.3 |
| 9/19/2017 | Dennis S. Ellis | Prepare email to S. Klausner | 0.2 |
| 9/19/2017 | Elena R. Baca | Review | 0.4 |
| 9/19/2017 | Scott M. Klausner | Attend status conference | 1.1 |
| 9/28/2017 | Dennis S. Ellis | Prepare email | 0.5 |
| 10/26/2017 | Elena R. Baca | Review | 0.1 |
| 10/26/2017 | Elena R. Baca | Strategize | 0.1 |
| 10/26/2017 | Scott M. Klausner | Strategize | 0.2 |
| 11/2/2017 | Dennis S. Ellis | Research | 0.5 |
| 11/2/2017 | Dennis S. Ellis | Review | 0.5 |
| 11/2/2017 | Dennis S. Ellis | Telephone conference with S. Klausner | 0.5 |
| 11/2/2017 | Scott M. Klausner | Prepare for and attend hearing on OSC | 2.0 |
| 11/2/2017 | Scott M. Klausner | Strategize | 0.2 |
| 11/29/2017 | Dennis S. Ellis | Instruct team | 0.5 |
| 12/11/2017 | Scott M. Klausner | Correspond with opposing counsel regarding stipulation to continue anti-SLAPP hearing date | 0.2 |
| 12/11/2017 | Scott M. Klausner | Prepare stipulation to continue anti-SLAPP hearing date | 0.3 |
| 12/12/2017 | Scott M. Klausner | Attend status conference | 1.0 |

| Timekeeper | Total Hours for 2017 | Billing Rate | Grand Total |
|---|---|---|---|
| Elena R. Baca | 3.0 | $1,050.00 | $3,150.00 |
| Dennis S. Ellis | 7.6 | $1,200.00 | $9,120.00 |
| Scott M. Klausner (Jan. 1, 2017-May 31, 2017) | 17.9 | $745.00 | $13,335.50 |
| Scott M. Klausner (Jun. 1, 2017-Dec. 31, 2017) | 7.4 | $775.00 | $5,735.00 |

PAGE 151

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 2/5/2018 | Elena R. Baca | Strategize | 0.1 |
| 3/6/2018 | Dennis S. Ellis | Update with S. Klausner | 0.3 |
| 3/6/2018 | Scott M. Klausner | Prepare for and attend status conference | 0.9 |
| 3/9/2018 | Dennis S. Ellis | Prepare email to S. Klausner | 0.3 |
| 3/9/2018 | Elena R. Baca | Conference | 0.1 |
| 4/24/2018 | Elena R. Baca | Strategize | 0.1 |
| 4/28/2018 | Scott M. Klausner | Telephonic conference | 0.2 |
| 5/2/2018 | Elena R. Baca | Prepare | 0.3 |
| 5/2/2018 | Scott M. Klausner | Strategize | 0.5 |
| 5/7/2018 | Jennifer L. Milazzo | Strategize | 0.4 |
| 5/8/2018 | Jennifer L. Milazzo | Prepare reply to opposition to anti-SLAPP motion | 0.6 |
| 5/10/2018 | Jennifer L. Milazzo | Prepare reply brief to opposition to anti-SLAPP motion | 2.5 |
| 5/12/2018 | Elena R. Baca | Prepare | 0.2 |
| 5/14/2018 | Elena R. Baca | Prepare | 0.3 |
| 5/14/2018 | Jennifer L. Milazzo | Review and prepare | 0.3 |
| 5/15/2018 | Elena R. Baca | Prepare for and attend status conference hearing | 1.6 |
| 5/15/2018 | Jennifer L. Milazzo | Attend status conference | 0.8 |
| 5/15/2018 | Jennifer L. Milazzo | Prepare and manage filing of notice of ruling following status conference | 0.4 |
| 5/15/2018 | Jennifer L. Milazzo | Prepare email | 0.2 |
| 5/21/2018 | Jennifer L. Milazzo | Strategize | 0.5 |
| 5/30/2018 | Jennifer L. Milazzo | Strategize | 0.1 |
| 6/12/2018 | Jennifer L. Milazzo | Strategize | 0.5 |
| 6/19/2018 | Jennifer L. Milazzo | Analyze research | 0.3 |
| 6/20/2018 | Scott M. Klausner | Review | 1.0 |
| 6/28/2018 | Scott M. Klausner | Review | 1.0 |
| 7/16/2018 | Scott M. Klausner | Confer | 0.2 |
| 7/16/2018 | Scott M. Klausner | Review and analyze | 1.3 |
| 7/17/2018 | Jennifer L. Milazzo | Research | 0.5 |
| 7/17/2018 | Scott M. Klausner | Review and analyze | 2.2 |
| 7/18/2018 | Jennifer L. Milazzo | Review | 0.2 |
| 7/18/2018 | Scott M. Klausner | Prepare amended motion to strike (anti-SLAPP motion) | 4.0 |
| 7/19/2018 | Jennifer L. Milazzo | Review | 0.4 |
| 7/23/2018 | Elena R. Baca | Prepare Anti-SLAPP motion | 0.5 |
| 7/23/2018 | Elena R. Baca | Prepare motion to dismiss | 0.6 |
| 7/23/2018 | Scott M. Klausner | Prepare amended motion to strike (anti-SLAPP motion) and related documents | 2.8 |
| 7/24/2018 | Elena R. Baca | Prepare court filing | 0.2 |
| 7/24/2018 | Scott M. Klausner | Review, finalize, and manage filing of amended motion to strike (anti-SLAPP motion) and related documents | 0.7 |
| 7/30/2018 | Elena R. Baca | Prepare discovery objections | 0.2 |
| 7/30/2018 | Scott M. Klausner | Prepare correspondence to opposing counsel regarding discovery stay | 0.3 |
| 7/30/2018 | Scott M. Klausner | Prepare objections to notice of deposition | 0.8 |
| 7/30/2018 | Scott M. Klausner | Strategize | 0.2 |
| 8/2/2018 | Scott M. Klausner | Prepare | 1.3 |

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 8/4/2018 | Elena R. Baca | Exchange communications and filing notice of non-receipt of opposition | 0.2 |
| 8/4/2018 | Jennifer L. Milazzo | Strategize and correspond | 0.1 |
| 8/6/2018 | Jennifer L. Milazzo | Analyze prepare reply to opposition to anti-SLAPP motion | 3.1 |
| 8/6/2018 | Jennifer L. Milazzo | Prepare objections to declarations submitted in support of opposition to anti-SLAPP motion | 1.3 |
| 8/6/2018 | Jennifer L. Milazzo | Prepare reply to non-opposition to anti-SLAPP motion | 0.5 |
| 8/6/2018 | Jennifer L. Milazzo | Research case law | 6.7 |
| 8/6/2018 | Scott M. Klausner | Analysis and research | 4.5 |
| 8/6/2018 | Scott M. Klausner | Factual investigation and analysis | 1.9 |
| 8/6/2018 | Scott M. Klausner | Prepare | 1.6 |
| 8/6/2018 | Scott M. Klausner | Review and analyze | 1.0 |
| 8/6/2018 | Scott M. Klausner | Review and analyze | 2.2 |
| 8/6/2018 | Scott M. Klausner | Review and revise | 0.6 |
| 8/6/2018 | Scott M. Klausner | Strategize | 0.8 |
| 8/7/2018 | Jennifer L. Milazzo | Analyze prepare reply to opposition to anti-SLAPP motion | 2.3 |
| 8/7/2018 | Jennifer L. Milazzo | Prepare objections to declarations in support of opposition to anti-SLAPP motion | 1.3 |
| 8/7/2018 | Jennifer L. Milazzo | Prepare reply to opposition to anti-SLAPP motion | 4.2 |
| 8/7/2018 | Jennifer L. Milazzo | Research case law | 5.5 |
| 8/7/2018 | Scott M. Klausner | Analysis and research | 1.8 |
| 8/7/2018 | Scott M. Klausner | Analysis and research | 1.5 |
| 8/7/2018 | Scott M. Klausner | Analysis and research | 1.5 |
| 8/7/2018 | Scott M. Klausner | Prepare correspondence to opposing counsel regarding remedying public disclosure of confidential documents | 0.2 |
| 8/7/2018 | Scott M. Klausner | Prepare reply brief in support of anti-SLAPP motion | 8.0 |
| 8/7/2018 | Scott M. Klausner | Review and revise | 2.0 |
| 8/7/2018 | Scott M. Klausner | Strategize | 2.8 |
| 8/8/2018 | Elena R. Baca | Strategize and prepare reply brief | 0.6 |
| 8/8/2018 | Jennifer L. Milazzo | Analyze prepare reply to opposition to anti-SLAPP motion | 2.3 |
| 8/8/2018 | Jennifer L. Milazzo | Prepare objections to declarations in support of opposition to anti-SLAPP motion | 1.6 |
| 8/8/2018 | Jennifer L. Milazzo | Prepare reply to opposition to anti-SLAPP motion and manage filing of the same | 4.3 |
| 8/8/2018 | Jennifer L. Milazzo | Research case law | 1.1 |
| 8/8/2018 | Scott M. Klausner | Review and revise | 0.7 |
| 8/8/2018 | Scott M. Klausner | Review, revise, and finalize evidentiary objections to declarations submitted Plaintiff filed in support of opposition to anti-SLAPP motion | 2.3 |
| 8/8/2018 | Scott M. Klausner | Review, revise, finalize, and coordinating filing of reply brief in support of anti-SLAPP motion | 10.0 |

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 8/10/2018 | Scott M. Klausner | Prepare correspondence to opposing counsel regarding remedying public disclosure of confidential documents | 0.2 |
| 8/13/2018 | Elena R. Baca | Prepare | 1.9 |
| 8/13/2018 | Scott M. Klausner | Identify and compile | 1.0 |
| 8/13/2018 | Scott M. Klausner | Prepare | 2.1 |
| 8/14/2018 | Elena R. Baca | Prepare | 0.3 |
| 8/14/2018 | Jennifer L. Milazzo | Analyze | 2.1 |
| 8/14/2018 | Jennifer L. Milazzo | Conduct research on case law | 1.4 |
| 8/14/2018 | Jennifer L. Milazzo | Prepare | 1.1 |
| 8/14/2018 | Jennifer L. Milazzo | Prepare declarations and exhibits in support of ex parte application to seal or strike declarations and exhibits submitted in support of D. Charney's opposition to anti-SLAPP | 1.6 |
| 8/14/2018 | Jennifer L. Milazzo | Prepare ex parte application to seal or strike declarations and exhibits submitted in support of D. Charney's opposition to anti-SLAPP | 2.2 |
| 8/14/2018 | Scott M. Klausner | Analyze and research | 2.0 |
| 8/14/2018 | Scott M. Klausner | Annotate and summarize | 1.1 |
| 8/14/2018 | Scott M. Klausner | Prepare | 1.3 |
| 8/15/2018 | Elena R. Baca | Prepare for and attend hearing | 3.5 |
| 8/15/2018 | Scott M. Klausner | Attend hearing on anti-SLAPP motion and ex parte application to seal or strike | 2.3 |
| 8/15/2018 | Scott M. Klausner | Corresponding | 0.2 |
| 8/15/2018 | Scott M. Klausner | Prepare | 3.0 |
| 8/16/2018 | Jennifer L. Milazzo | Strategize | 0.1 |
| 8/25/2018 | Elena R. Baca | Strategize | 0.2 |
| 8/27/2018 | Elena R. Baca | Strategize | 0.2 |
| 8/27/2018 | Scott M. Klausner | Strategize | 0.3 |
| 8/29/2018 | Scott M. Klausner | Review | 0.3 |
| 9/18/2018 | Elena R. Baca | Prepare stipulation to seal | 0.1 |
| 9/19/2018 | Scott M. Klausner | Analyze | 0.4 |
| 9/19/2018 | Scott M. Klausner | Correspond with opposing counsel regarding stipulation and hearing | 0.1 |
| 9/19/2018 | Scott M. Klausner | Prepare meet and confer correspondence | 0.7 |
| 9/21/2018 | Scott M. Klausner | Correspond with opposing counsel regarding depositions and deficiencies in document productions, including related analysis | 1.2 |

| Timekeeper | Total Hours for 2018 | Billing Rate | Grand Total |
|---|---|---|---|
| Elena R. Baca | 11.2 | $1,100.00 | $12,320.00 |
| Dennis S. Ellis | 0.6 | $1,275.00 | $765.00 |
| Scott M. Klausner (Jan. 1, 2018-May 31, 2018) | 1.6 | $840.00 | $1,344.00 |
| Scott M. Klausner (Jun. 1, 2018-Dec. 31, 2018) | 75.4 | $875.00 | $65,975.00 |

PAGE 154

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| Jennifer L. Milazzo (Jan. 1, 2018-May 31, 2018) | 5.8 | $600.00 | $3,480.00 |
| Jennifer L. Milazzo (Jun. 1, 2018-Dec. 31, 2018) | 44.7 | $635.00 | $28,384.50 |

# EXHIBIT I
## to DAVID deRUBERTIS DECL

Electronically FILED by Superior Court of California, County of Los Angeles on 05/28/2019 02:07 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

Case 3:17-cv-06748-WHO   Document 494-7   Filed 10/25/23   Page 233 of 412

1   PAUL HASTINGS LLP
    ELENA R. BACA (SB# 160564)
2   elenabaca@paulhastings.com
    JENNIFER L. MILAZZO (SB# 318356)
3   jennifermilazzo@paulhastings.com
    515 South Flower Street
4   Twenty-Fifth Floor
    Los Angeles, CA  90071-2228
5   Telephone:  (213) 683-6000
    Facsimile:  (213) 627-0705
6
    Attorneys for Defendant
7   David Danziger

8

9                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                           COUNTY OF LOS ANGELES

11

12   DOV CHARNEY, an individual,                CASE NO. BC585664

13                   Plaintiff,                 **SUPPLEMENTAL DECLARATION OF
                                                ELENA R. BACA IN SUPPORT OF DAVID
14           v.                                 DANZIGER'S MOTION FOR
                                                ATTORNEYS' FEES**
15   DAVID DANZIGER, an individual; and
     DOES 1 to 50, inclusive,
16                                              Date:        June 4, 2019
                     Defendants.                Time:        8:45 a.m.
17                                              Dept.:       14
                                                Judge:       Hon. Terry A. Green
18
                                                **RESERVATION ID:  181026360333**
19

20

21

22

23

24

25

26

27

28

1

**DECLARATION OF ELENA R. BACA**

2

I, Elena R. Baca, hereby declare and state as follows:

3

1.      I am an attorney duly admitted to practice law before all the Courts of the State of

4

California and this Court.  I am a partner at the law firm of Paul Hastings LLP, and counsel of

5

record for Defendant David Danziger ("Danziger").  I make this supplemental declaration in

6

support of Danziger's Motion for Attorneys' Fees ("Fees Motion").  I have personal knowledge

7

of the facts set forth below, and if called as a witness, I would and could competently testify

8

thereto.

9

2.      On October 29, 2018, Danziger filed his Fees Motion.  Plaintiff Dov Charney

10

("Plaintiff") opposed the Fees Motion on May 21, 2019, which was not served on Danziger until

11

May 23, 2019, at approximately 1:25 p.m.  Plaintiff was required to serve his Opposition no later

12

than the close of business on May 22, 2019.  *See* Cal. Civ. Proc. Code § 1005.

13

3.      Danziger's requested fee award seeks additional recovery for the approximately

14

37.2 hours that attorneys from Paul Hastings billed on work related to Danziger's Motion for

15

Attorneys' Fees (the "Fees Motion").  I billed 3.1 hours on such work, including drafting and

16

revising the Fees Motion and supporting declarations.  Scott Klausner, a mid-level associate at

17

Paul Hastings at the time, billed 6 hours to the Fees Motion, including drafting and revising the

18

Fees Motion.  Paul Kind, a mid-level associate at Paul Hastings at the time, billed 5.5 hours on

19

work related to the Fees Motion, including revising the Fees Motion and preparing the supporting

20

declarations and related filings.  Jennifer L. Milazzo, a junior associate, spent 14.9 hours on work

21

related to the Fees Motion, including revising the Fees Motion, reviewing the supporting

22

invoices, performing legal research, and finalizing the Fees Motion and relating filings.  Daniel

23

Rojas, a junior associate, spent 7.7 hours on work related to the Fees Motion, including revising

24

the Fees Motion and performing legal research in support of the Fees Motion.  Attached hereto as

25

"Exhibit A" is a true and correct copy of redacted invoices prepared by Paul Hastings that reflect

26

time spent and billed from October 1, 2018 through December 31, 2018, in connection with Paul

27

Hastings' preparation of the Fees Motion.  Exhibit A has been redacted to preserve attorney-client

28

1   and attorney work product information, while providing sufficient support for the fees sought to

2   be recovered by the Fees Motion.

3        4.     I have reviewed the billing statements submitted to Danziger by Paul Hastings in

4   connection with the preparation of the Fees Motion and found them to be accurate.  Paul

5   Hastings' monthly billing statements are maintained in the ordinary course of business and

6   establish that Paul Hastings attorneys spent 37.2 hours preparing the Fees Motion.  Any time that

7   was determined to be excessive, redundant, or otherwise unnecessary, was "written off" and not

8   billed.  Paul Hastings' customary standard billing rates are commensurate with the rates of

9   attorneys of similar skill, experience, and expertise in the same area.  The hourly billing rates

10  submitted herewith are the standard and customary hourly rates charged by Paul Hastings to other

11  clients for attorneys' work.  Applying the standard hourly rates charged annually to the hours

12  worked since October 1, 2018 results in the aggregated value for 37.2 hours worked.

13       5.     Danziger's requested fee award also seeks additional recovery for the

14  approximately 15.66 hours that attorneys from Paul Hastings billed on work related to Danziger's

15  Reply to Plaintiff's Opposition to the Fees Motion (the "Reply").  Paul Hastings has not yet

16  finalized bills for its services related to the preparation of the Reply in support of the Fees

17  Motion.  Nevertheless, I have diligently tracked the time I have billed in connection with the

18  Reply.  To date, I have billed 0.6 hours on such work.  This time was spent reviewing and

19  analyzing Plaintiff's Opposition, reviewing and revising the Reply, and drafting and revising the

20  supporting declarations and related filings.  I have also reviewed the time records of Ms. Milazzo,

21  which she has recorded using Paul Hastings' attorney time-tracker software.  Ms. Milazzo has

22  billed 15.6 hours in connection with the Reply.  This work has consisted of reviewing and

23  analyzing Plaintiff's Opposition to the Fees Motion, conducting legal research regarding the

24  arguments raised in the Opposition and authorities cited in support thereof, drafting and revising

25  the Reply, and drafting and revising the supporting declarations and related filings.

26       6.     Attached hereto as "Exhibit B" is a summary of the time and aggregate value of

27  time based on the standard hourly rates, organized by billing attorney, contained in the redacted

28  invoices attached as Exhibit A and the time entered into Paul Hastings' time-tracker software.

SUPPLEMENTAL DECL. OF ELENA R. BACA IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

LEGAL_US_E # 141940854.2

1   Exhibit B was prepared by Paul Hastings in the regular course of business at my direction after

2   my review of Paul Hastings' invoices in this matter.  Exhibit B reflects a true and accurate

3   summary of the time spent and billed from October 1, 2018 through December 31, 2018, in

4   connection with Paul Hastings' preparation of the Fees Motion and a true and accurate summary

5   of the time spent on the Reply from May 23, 2019 to May 28, 2019.

6       7.      Paul Kind received his J.D. from Loyola Law School, where he graduated Order of

7   the Coif.  While in law school, Mr. Kind served as a Note & Comment Editor of the *Loyola of*

8   *Los Angeles Law Review*, and he won the award for the best published comment.  Mr. Kind also

9   served as a judicial extern to the Honorable Stephen R. Reinhardt of the United States Court of

10  Appeals for the Ninth Circuit and to R. Gary Klausner of the United States District Court for the

11  Central District of California.

12      8.      Daniel Rojas graduated from the University of Chicago Law School.  While in law

13  school, Mr. Rojas was an in-house legal intern at Microsoft.  In 2018, Mr. Rojas' hourly billable

14  rate was $560.00.

15      9.      The rates for Daniel Rojas and Paul Kind are commensurate with rates of other top

16  law firms in the Los Angeles area and are therefore reasonable.

17      10.    My 2019 standard hourly billable rate is $1,200.00.

18      11.    Ms. Milazzo's 2019 standard hourly billable rate is $735.00.

19

20      I declare under penalty of perjury under the laws of the United States and the State of

21  California that the foregoing is true and correct.

22

23      Executed this 28th day of May 2019, at Los Angeles, California.

24

25

26                              By: _____

27                                            Elena R. Baca

28

-4-

SUPPLEMENTAL DECL. OF ELENA R. BACA IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

LEGAL_US_E # 141940854.2

# EXHIBIT A



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

November 26, 2018



---

**SUMMARY SHEET**

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending October 31, 2018

Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**



**EXHIBIT A, PAGE 6**



**Paul Hastings LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com



November 26, 2018

---

**REMITTANCE COPY**

<u>**Charney Litigation (Danzinger)**</u>

Legal fees for professional services
for the period ending October 31, 2018

Costs incurred and advanced

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**





Page 2

**REMITTANCE COPY (cont.)**

**Summary of Prior Balance Due**

| Invoice Date | Invoice Number | Amount | Payments/ Trust Appl. | Credits | Balance Due |
|---|---|---|---|---|---|
| 07/31/2017 | ■ | ■ | ■ | ■ | ■ |
| 09/25/2017 | ■ | ■ | ■ | ■ | ■ |
| 10/25/2017 | ■ | ■ | ■ | ■ | ■ |
| 11/21/2017 | ■ | ■ | ■ | ■ | ■ |
| 12/20/2017 | ■ | ■ | ■ | ■ | ■ |
| 01/15/2018 | ■ | ■ | ■ | ■ | ■ |
| 03/26/2018 | ■ | ■ | ■ | ■ | ■ |
| 04/23/2018 | ■ | ■ | ■ | ■ | ■ |
| 05/30/2018 | ■ | ■ | ■ | ■ | ■ |
| 06/21/2018 | ■ | ■ | ■ | ■ | ■ |
| 07/27/2018 | ■ | ■ | ■ | ■ | ■ |
| 08/21/2018 | ■ | ■ | ■ | ■ | ■ |
| 09/26/2018 | ■ | ■ | ■ | ■ | ■ |
| 10/19/2018 | ■ | ■ | ■ | ■ | ■ |

**Total Prior Balance Due** 

**Total Balance Due**

**EXHIBIT A, PAGE 8**

PAUL HASTINGS

**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

[redacted]

November 26, 2018

[redacted]

[redacted]

[redacted]

FOR PROFESSIONAL SERVICES RENDERED
for the period ending October 31, 2018

**Charney Litigation (Danzinger)** [redacted]

[redacted] [redacted]

| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | | | [redacted] |

[redacted] [redacted]

| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|
| 10/09/2018 | Jennifer L. Milazzo | A104 | Manage the preparation of invoices for motion for attorney fees | 0.40 |
| 10/10/2018 | Daniel Rojas | A102 | Legal research regarding motion for attorneys fees | 1.00 |
| 10/11/2018 | Daniel Rojas | A102 | Legal research regarding motion for attorneys fees | 1.00 |
| 10/12/2018 | Daniel Rojas | A102 | Legal research regarding motion for attorneys fees | 1.00 |
| | [redacted] | | | [redacted] |

 

Page 2

| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|
| 10/26/2018 | Elena R. Baca | A103 | Review transcript for motion for attorney fees | 0.50 |

| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|
| 10/22/2018 | Scott M. Klausner | A103 | Prepare motion for attorneys' fees and supporting documents | 3.00 |
| 10/23/2018 | Scott M. Klausner | A103 | Prepare motion for attorneys' fees and supporting documents | 3.00 |
| 10/25/2018 | Elena R. Baca | A103 | Prepare motion for attorneys fee | 0.20 |
| 10/26/2018 | Elena R. Baca | A103 | Prepare motion for fees | 0.20 |
| 10/26/2018 | Elena R. Baca | A103 | Revise motion for attorneys' fees | 0.80 |
| 10/26/2018 | Elena R. Baca | A103 | Prepare attorneys' fee motion | 0.40 |
| 10/26/2018 | Paul D. Kind | A103 | Prepare notice of motion and motion for fees | 2.00 |
| 10/26/2018 | Paul D. Kind | A103 | Prepare E. Baca declaration in support of motion for fees | 3.50 |
| 10/28/2018 | Elena R. Baca | A103 | Prepare motion for attorneys' fees | 0.50 |
| 10/29/2018 | Elena R. Baca | A103 | Prepare fees motion | 0.40 |

| Date | Timekeeper Name | Activity | Description | Hours |
|---|---|---|---|---|



Page 3



| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 10/15/2018 | Daniel Rojas | A103 | Draft and revise motion for attorney's fees | 3.50 |
| 10/25/2018 | Jennifer L. Milazzo | A103 | Prepare notice of motion and motion for attorneys' fees | 0.30 |
| 10/26/2018 | Jennifer L. Milazzo | A104 | Prepare notice of motion and motion for attorneys' fees | 5.00 |
| 10/27/2018 | Daniel Rojas | A102 | Legal research relating to motion for attorney's fees | 1.20 |
| 10/27/2018 | Jennifer L. Milazzo | A104 | Prepare and revise motion for attorneys' fees and supporting declaration | 1.30 |
| 10/28/2018 | Jennifer L. Milazzo | A104 | Prepare and revise motion for attorneys' fees and supporting declaration | 2.90 |
| 10/29/2018 | Jennifer L. Milazzo | A104 | Manage filing of motion for attorneys fees | 2.40 |
| 10/29/2018 | Jennifer L. Milazzo | A104 | Revise and finalize motion for attorneys' fees | 2.40 |
| 10/30/2018 | Jennifer L. Milazzo | A101 | Attend to management of upcoming deadlines pertaining to attorneys' fee motion | 0.20 |



| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|

**EXHIBIT A, PAGE 11**

**Timekeeper Summary**

| | | | | |
|---|---|---|---|---|
| Elena R. Baca | 3.10 | hours at | | ████ |
| Scott M. Klausner | 6.00 | hours at | | ████ |
| Paul D. Kind | 7.00 | hours at | | ████ |
| Daniel Rojas | 7.70 | hours at | | ████ |
| Jennifer L. Milazzo | 14.90 | hours at | | ████ |
| ████ | ██ | ████ | | ████ |

**Costs incurred and advanced**

| Date | Description | Quantity | Rate | Amount |
|---|---|---|---|---|


**Total Costs incurred and advanced**

**Current Fees and Costs**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**

**EXHIBIT A, PAGE 12**



**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

January 16, 2019



## SUMMARY SHEET

### <u>Charney Litigation (Danzinger)</u>

Legal fees for professional services
for the period ending December 31, 2018

           **Current Fees and Costs Due**

           **Prior Balance Due**

           **Total Balance Due - Due Upon Receipt**



**EXHIBIT A, PAGE 13**



**Paul Hastings LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

January 16, 2019



---

## REMITTANCE COPY

**Charney Litigation (Danzinger)**

Legal fees for professional services
for the period ending December 31, 2018

**Current Fees and Costs Due**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**



**EXHIBIT A, PAGE 14**



Page 2

**REMITTANCE COPY (cont.)**

**Summary of Prior Balance Due**

| Invoice Date | Invoice Number | Amount | Payments/ Trust Appl. | Credits | Balance Due |
|---|---|---|---|---|---|
| 07/31/2017 | ███ | ███ | ███ | ███ | ███ |
| 09/25/2017 | ███ | ███ | ███ | ███ | ███ |
| 10/25/2017 | ███ | ███ | ███ | ███ | ███ |
| 11/21/2017 | ███ | ███ | ███ | ███ | ███ |
| 12/20/2017 | ███ | ███ | ███ | ███ | ███ |
| 01/15/2018 | ███ | ███ | ███ | ███ | ███ |
| 03/26/2018 | ███ | ███ | ███ | ███ | ███ |
| 04/23/2018 | ███ | ███ | ███ | ███ | ███ |
| 05/30/2018 | ███ | ███ | ███ | ███ | ███ |
| 06/21/2018 | ███ | ███ | ███ | ███ | ███ |
| 07/27/2018 | ███ | ███ | ███ | ███ | ███ |
| 08/21/2018 | ███ | ███ | ███ | ███ | ███ |
| 09/26/2018 | ███ | ███ | ███ | ███ | ███ |
| 10/19/2018 | ███ | ███ | ███ | ███ | ███ |
| 11/26/2018 | ███ | ███ | ███ | ███ | ███ |
| 12/20/2018 | ███ | ███ | ███ | ███ | ███ |

**Total Prior Balance Due** 

**Total Balance Due**

**EXHIBIT A, PAGE 15**



**Paul Hastings LLP**
515 South Flower Street, 25th Floor, Los Angeles, CA 90071-2228
t: +1.213.683.6000 | f: +1.213.627.0705 | www.paulhastings.com

January 16, 2019



FOR PROFESSIONAL SERVICES RENDERED
for the period ending December 31, 2018

**Charney Litigation (Danzinger)**

| Date | Timekeeper Name | Activity | Description | Hours |
|------|-----------------|----------|-------------|-------|
| 12/11/2018 | Elena R. Baca | A104 | Review status of clerk's award of attorneys fees and costs as prevailing party | 0.10 |

**Timekeeper Summary**

Elena R. Baca                                    0.10    hours at

**Current Fees and Costs**

**Prior Balance Due**

**Total Balance Due - Due Upon Receipt**

**EXHIBIT A, PAGE 16**

# EXHIBIT B

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 10/10/2018 | Daniel Rojas | Legal research regarding motion for attorneys fees | 1.00 |
| 10/11/2018 | Daniel Rojas | Legal research regarding motion for attorneys fees | 1.00 |
| 10/12/2018 | Daniel Rojas | Legal research regarding motion for attorneys fees | 1.00 |
| 10/15/2018 | Daniel Rojas | Draft and revise motion for attorney's fees | 3.50 |
| 10/27/2018 | Daniel Rojas | Legal research relating to motion for attorney's fees | 1.20 |
| 10/25/2018 | Elena R. Baca | Prepare motion for attorneys fee | 0.20 |
| 10/26/2018 | Elena R. Baca | Prepare attorneys' fee motion | 0.40 |
| 10/26/2018 | Elena R. Baca | Revise motion for attorneys' fees | 0.80 |
| 10/26/2018 | Elena R. Baca | Prepare motion for fees | 0.20 |
| 10/26/2018 | Elena R. Baca | Review transcript for motion for attorney fees | 0.50 |
| 10/28/2018 | Elena R. Baca | Prepare motion for attorneys' fees | 0.50 |
| 10/29/2018 | Elena R. Baca | Prepare fees motion | 0.40 |
| 12/11/2018 | Elena R. Baca | Review status of clerk's award of attorneys fees and costs as prevailing party | 0.10 |
| 10/9/2018 | Jennifer L. Milazzo | Manage the preparation of invoices for motion for attorney fees | 0.40 |
| 10/25/2018 | Jennifer L. Milazzo | Prepare notice of motion and motion for attorneys' fees | 0.30 |
| 10/26/2018 | Jennifer L. Milazzo | Prepare notice of motion and motion for attorneys' fees | 5.00 |
| 10/27/2018 | Jennifer L. Milazzo | Prepare and revise motion for attorneys' fees and supporting declaration | 1.30 |
| 10/28/2018 | Jennifer L. Milazzo | Prepare and revise motion for attorneys' fees and supporting declaration | 2.90 |
| 10/29/2018 | Jennifer L. Milazzo | Revise and finalize motion for attorneys' fees | 2.40 |
| 10/29/2018 | Jennifer L. Milazzo | Manage filing of motion for attorneys fees | 2.40 |
| 10/30/2018 | Jennifer L. Milazzo | Attend to management of upcoming deadlines pertaining to attorneys' fee motion | 0.20 |
| 10/26/2018 | Paul D. Kind | Prepare E. Baca declaration in support of motion for fees | 3.50 |
| 10/26/2018 | Paul D. Kind | Prepare notice of motion and motion for fees | 2.00 |
| 10/22/2018 | Scott M. Klausner | Prepare motion for attorneys' fees and supporting documents | 3.00 |
| 10/23/2018 | Scott M. Klausner | Prepare motion for attorneys' fees and supporting documents | 3.00 |

| Timekeeper | Total Additional Hours for 2018 | Billing Rate | Grand Total |
|---|---|---|---|
| Daniel Rojas | 7.70 | $560.00 | $4,312.00 |
| Elena R. Baca | 3.10 | $1,110.00 | $3,441.00 |
| Jennifer L. Milazzo | 14.90 | $635.00 | $9,461.50 |
| Paul D. Kind | 5.50 | $765.00 | $4,207.50 |
| Scott M. Klausner | 6.00 | $875.00 | $5,250.00 |

| Timekeeper | Total Additional Hours for 2019 (Reply Brief) | Billing Rate | Grand Total |
|---|---|---|---|
| Elena R. Baca | 0.06 | $1,200.00 | $72.00 |

**EXHIBIT B, PAGE 18**

| Jennifer L. Milazzo | 15.60 | $735.00 | $11,466.00 |
|---|---|---|---|

**EXHIBIT B, PAGE 19**

# EXHIBIT J
## to DAVID deRUBERTIS Decl

1  Yesenia Gallegos (SBN 231852)
   ygallegos@mwe.com
2  McDermott Will & Emery LLP
   2049 Century Park East, Suite 3200
3  Los Angeles, California 90067
   Tel: 310.277.4110
4  Facsimile: 310.277.4730

5  Emory D. Moore, Jr. (*admitted pro hac vice*)
   E-mail: emoore@mwe.com
6  McDermott Will & Emery LLP
   444 West Lake Street, Suite 4000
7  Chicago, IL 60606
   Tel: 312.372.2000
8  Facsimile: 312.984.7700

9  Attorneys for Defendant
   Avison Young – Northern California, LTD.

10

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12               COUNTY OF SAN FRANCISCO

13                                          Case No. CGC-20-584874

14  Melinda Miyagishima,                    **DECLARATION OF YESENIA GALLEGOS
                                            IN SUPPORT OF DEFENDANT AVISON
15                    Plaintiff,            YOUNG – NORTHERN CALIFORNIA,
                                            LTD.'S MOTION TO COMPEL FORENSIC
16          v.                              INSPECTION OF PLAINTIFF'S CELLULAR
                                            PHONE**
17  Avison Young – Northern California,
    LTD., and Does 1 through 10 inclusive,  *[Filed concurrently with (1) Notice of Motion and
18                                          Motion to Compel; (2) [Proposed] Order; and (3)
                      Defendants.           Proof of Service]*
19
                                            VIA VIDEOCONFERENCE
20                                           Date:       May 19, 2021
                                             Time:       9:00 a.m.
21                                           Dept.:      302
                                             Hearing Judge:   Hon. Ethan P. Schulman
22
                                            Complaint Filed:   June 11, 2020
23                                          Trial Date:        June 21, 2021

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **DECLARATION OF YESENIA GALLEGOS**

2    I, Yesenia Gallegos, declare as follows:

3    1.    I am an attorney duly licensed to practice before all courts of the State of

4    California, and am an attorney with McDermott, Will & Emery LLP, counsel of record for

5    Defendant Avison Young – Northern California, LTD. ("Avison Young").  I make this

6    declaration based upon personal knowledge and if called upon as a witness, I could and would

7    testify competently to matters stated herein.

8    2.    On June 11, 2020, Plaintiff Melinda Miyagishiima filed a Complaint against

9    Defendant Avison Young alleging four claims: (1) retaliation; (2) age discrimination; (3) failure

10   to prevent discrimination; and (4) wrongful termination in violation of public policy.

11   3.    On July 21, 2020, Avison Young filed its Answer generally denying the

12   allegations.  On October 29, 2020, this Court issued a Case Management Order scheduling the

13   trial date for June 21, 2021, at 9:30 a.m. in Department 206.

14   4.    On about August 12, 2020, my office served Plaintiff with Avison Young's

15   Request for Production of Documents, Set One ("RFP Set One"). True and correct copies of

16   excerpts of RFP Set One are attached hereto and incorporated herein as "**Exhibit A.**"

17   5.    On about August 28, 2020, during my call with Plaintiff's counsel, Plaintiff

18   requested and Avison Young granted a one week extension to respond to its RFP Set One, from

19   September 14, 2020 to September 21, 2020.   During my call with Plaintiff's counsel, I informed

20   Plaintiff's counsel that Avison Young would be unlikely to grant further extensions because it

21   needed sufficient time to prepare for Plaintiff's deposition.

22   6.    On about September 21, 2020, Plaintiff served her written <u>and verified</u> responses

23   to Avison Young's RFP Set One and produced 76 pages of documents bates stamped PL 00001 –

24   PL 000076.  A true and correct copy of Plaintiff's written responses to Avison Young's RFP Set

25   One are attached hereto and incorporated herein as "**Exhibit B**."

26   7.    On October 1, 2020, my colleague Emory Moore and I sent Plaintiff's counsel a

27   meet and confer letter, *inter alia*, questioning Plaintiff's failure to produce any text messages.  A

28   true and correct copy of my October 1, 2020 meet and confer letter is attached and incorporated

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

herein as "**Exhibit C**." Plaintiff's counsel responded by email October 1, 2020. A true and correct copy of his email response is attached and incorporated herein as "**Exhibit D**."

8.     On October 5, 2020, Plaintiff's counsel sent me and my colleague an email representing that "<u>with this transmission, our document production is complete</u>." A true and correct copy of Plaintiff's counsel's email, without attachments, is attached hereto and incorporated herein as "**Exhibit E**." Plaintiff's October 5, 2020 document production did not contain text messages or social media messages. It did contain handwritten notes purportedly recounting text messages between Plaintiff and Dominik Slonek regarding facts at issue in this litigation. A selection of those handwritten notes are attached hereto and incorporated herein as "**Exhibit F**."

9.     On October 12, 2021, I sent Plaintiff's counsel another meet and confer letter, pointing out that Plaintiff had failed to produce a single text message and requesting clarification about Plaintiff's document search efforts. A true and correct copy of my October 12, 2021 letter is attached and incorporated herein as "**Exhibit G**."

10.    On October 20, 2020, Plaintiff's counsel responded to my October 12, 2021 letter, stating that Plaintiff's September 21, 2020 and October 5, 2020 productions "represents the universe of documents in my client's possession related to this case." Plaintiff's counsel's October 20, 2020 letter further stated that his client has searched for and has confirmed that she does not possess any responsive text messages. A true and correct copy of Plaintiff's counsel's October 20, 2020 letter is attached and incorporated herein as "**Exhibit H**."

11.    Defendant deposed Plaintiff February 18, 2021. During Plaintiff's deposition of February 18, 2021, she testified that her whistleblower retaliation claim stems from a March 2018 incident where Plaintiff alleges that she was harassed by a co-worker, reported that harassment to Dominik "Nick" Slonek, her supervisor via text message, and that Slonek responded that he would address the situation but did not do so until the next week. Plaintiff testified that she believed Slonek returned to work that day intoxicated. Plaintiff alleges that, after she reported Slonek's intoxication to Defendant's Human Resources Department, Slonek began treating her differently. Plaintiff testified that she deleted all of her text messages with Slonek. True and

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

correct copies of excerpts from Plaintiff's deposition transcript wherein she testified about text messages that she deleted are attached hereto and incorporated herein as "**Exhibit I -** 37:11-20; 82:3-11; 113:6-16; 118:2-16.

12. On February 18, 2021, Avison Young served a second set of RFPs on Plaintiff (RFP Set Two). RFP Set Two specifically sought text messages between Plaintiff and specific witnesses. A true and correct copy of Avison Young's RFPs Set Two are attached hereto and incorporated herein as "**Exhibit J**."

13. Between March 24, 2021 and March 29, 2021, Plaintiff produced 453 pages of documents containing thousands of communications. These communications were responsive to RFP No. 12 from Avison Young's RFP Set One served on Plaintiff in August 2020, seven months earlier.[1]

14. Among the documents that Plaintiff produced, were numerous highly relevant text messages and other communications. For example, Plaintiff produced text messages indicating that she had schemed to sue Avison Young for retaliation years before she was actually laid off in 2020. A true and correct copy of this illustrative text message communication is attached hereto and incorporated herein as "**Exhibit K** - <u>Well I told them. If I get fired am suing for retaliation. Cause this is f[#@&!*] messed up for those of us that watch the $$ and don't get paid what we have earned.</u>"

15. Between April 6, 2021 and April 21, 20221, I met and conferred with Plaintiff's counsel, during which I requested that Plaintiff submit her cellular phone(s) used between 2018 and 2020 for forensic inspection. True and correct copies of my correspondence to Plaintiff's counsel of April 6, 2021, Plaintiff's counsel's response to me of April 7, 2021, my further correspondence to Plaintiff's counsel of April 14, 2021, and Plaintiff's counsel's response to me of April 19, 2021 are attached hereto and incorporated herein as **Exhibits L, M, N,** and **O**, respectively. Subsequent emails between counsel for each party are attached hereto and incorporated herein as "**Exhibit P**."

---

[1] Notably, on February 15, 2021, just three days before Plaintiff's deposition, Plaintiff had produced a supplemental production of fifty-eight pages of documents.

3

16.    Plaintiff refused to submit her phone(s) for forensic inspection.

17.    Avison Young cannot proceed adequately to trial without evidence of the text message communications between Plaintiff and her alleged discriminator and retaliator.

18.    I have practiced employment litigation exclusively for 17 years, since 2014. I obtained my Bachelor of Arts degree in Political Science from the University of California Los Angeles, and my Juris Doctorate from the University of San Francisco School of Law.   I represent employers in employment litigation—including class actions—pending in both state and federal court. I have litigated over 100 discrimination and/or retaliation cases under the California Fair Employment and Housing Act. I also litigated employment cases on behalf of employees between 2004 and 2007.   I am a frequent author and speaker on employment topics, including those pertaining to the defense of wage and hour class actions and California Private Attorneys General Act (PAGA) representative actions, and the defense of FEHA discrimination claims.

19.    I spent at least 2 hours meeting and conferring with Plaintiff's counsel on this issue, at least 4 hours preparing this motion to compel and supporting papers, expect to spend at least 8 hours analyzing Plaintiff's opposition and preparing a reply brief, and expect to spend at least 2 hours preparing for an attending a hearing on this motion. Accordingly, Avison Young will be charged for no less than 16 hours on tasks related to this motion to compel.   My hourly rate is $1030.00, and the hourly rate of my colleague, Emory Moore, is $910.00.  Using Mr. Moore's lower hourly rate of $910, Avison Young will have incurred no less than $14,560 on the instant motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 27th day of April, 2021, at Los Angeles, California.

_____
Yesenia Gallegos

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF YESENIA GALLEGOS IN SUPPORT OF MOTION TO COMPEL FORENSIC INSPECTION OF PLAINTIFF'S CELLULAR PHONE                    Case No. CGC-20-584874

# EXHIBIT A

1  Yesenia Gallegos (SBN 231852)
   ygallegos@mwe.com
2  McDermott Will & Emery LLP
   2049 Century Park East, Suite 3200
3  Los Angeles, CA 90067
   Tel: 310.277.4110
4  Facsimile: 310.277.4730

5  Emory D. Moore, Jr. (*pro hac vice application forthcoming*)
   E-mail: emoore@mwe.com
6  McDermott Will & Emery LLP
   444 West Lake Street, Suite 4000
7  Chicago, IL 60606
   Tel: 312.372.2000
8  Facsimile: 312.984.7700

9  Attorneys for Defendant Avison Young – Northern
   California, LTD.

10              SUPERIOR COURT OF CALIFORNIA

11              COUNTY OF SAN FRANCISCO

12

13 Melinda Miyagishima,                    Case No. CGC-20-584874

14          Plaintiff,                      Complaint Filed:  June 11, 2020
                                            Trial Date:  None Set
15 v.

16 Avison Young – Northern California, LTD.,   **DEFENDANT'S REQUEST FOR**
   and Does 1 through 10 inclusive,            **PRODUCTION OF DOCUMENTS**
17                                             **(SET ONE) TO PLAINTIFF**
          Defendants.
18

19

20     REQUESTING PARTY:      Defendant, Avison Young – Northern California, LTD.

21     RESPONDING PARTY:      Plaintiff, Melinda Miyagishima

22     SET NUMBER:            One (1)

23     Demand is hereby made by Defendant Avison Young – Northern California, LTD., pursuant

24 to California Code of Civil Procedure Section 2031.010 et. seq. that Plaintiff Melinda Miyagishima

25 produce and permit inspection and copying of the documents and items described below, within

26 thirty (30) days from the date of service hereof.  The place of inspection shall be the offices of

27 McDermott Will & Emery LLP, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067.

28 ///

**DEFINITIONS**

The following terms shall have the following meanings, unless the context requires otherwise:

1.     The terms "DOCUMENT" OR "DOCUMENTS" as used herein means the original (and any copies which differ in any way from the original) of any written, printed, typed, recorded, or graphic material of every type, form, or description, including but not limited to, letters, correspondence, COMMUNICATIONS, notes of oral COMMUNICATIONS, telegrams, telexes, microfiches, bulletins, circulars, pamphlets, studies, reports, charts, graphs, notices, diaries, summaries, notes, messages, instructions, work assignments, personal notes, e-mails, digital information and files, screen shots, web sites, social media pages, text messages, SMS messages, messaging sent through applications, notebooks, drafts, data sheets, data compilations, statistics, maps, speeches, tapes, tape recordings and transcripts of such tapes and recordings.

2.     The term "COMMUNICATION" or "COMMUNICATIONS" as used herein shall mean and refer to any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, text message, instant message, direct message, private message, social media message, telex message, cable, correspondence, message, tape-recorded message, video message, or other occurrences in which thoughts, opinions, or information are transmitted between or among two or more persons or between or among one or more persons and any electronic, photographic, or mechanical device or devices for receiving, transmitting, or storing data or other information.

3.     The term "RELATING TO" as used herein means concerning, referring to, pertaining to, reflecting, evidencing, describing, memorializing, recording, contradicting or supporting.

4.     The terms "YOU" and "YOUR" as used herein mean Plaintiff MELINDA MIYAGISHIMA.

5.     "AVISON YOUNG" means Defendant AVISON YOUNG – NORTHERN CALIFORNIA, LTD. and each of its employees, officers, directors, independent contractors, partners, shareholders, agents, members, attorneys, predecessors, successors, assignees, subsidiary

1   or parent corporations, affiliates, and all persons now or previously under their control or acting on

2   their behalf.

3          6.        The term "COMPLAINT" refers to the Complaint filed by you in San Francisco

4   Superior Court Case No. CGC-20-584874, as well as any subsequent amendments.

5          7.        The terms "and, "or," and "and/or" shall be interpreted in the broadest sense, so as to

6   be read as "and" and "or."

7                                    **DOCUMENT REQUESTS**

8   **REQUEST FOR PRODUCTION NO. 1**

9          All DOCUMENTS referenced in the COMPLAINT or RELATING TO the allegations in the

10  COMPLAINT.

11  **REQUEST FOR PRODUCTION NO. 2**

12         All DOCUMENTS which YOU intend to, or may, submit at either the trial of this action or

13  in connection with a motion for summary judgment in this action.

14  **REQUEST FOR PRODUCTION NO. 3**

15         All DOCUMENTS from January 1, 2017 through present between YOU and AVISON

16  YOUNG.

17  **REQUEST FOR PRODUCTION NO. 4**

18         All DOCUMENTS RELATING TO YOUR job performance at AVISON YOUNG.

19  **REQUEST FOR PRODUCTION NO. 5**

20         All DOCUMENTS RELATING TO any formal or informal complaint YOU made to or

21  regarding AVISON YOUNG.

22  **REQUEST FOR PRODUCTION NO. 6**

23         All DOCUMENTS RELATING TO any disclosure of information by YOU to or regarding

24  AVISON YOUNG in relation to a potential or actual violation of a law, statute, rule, or regulation.

25  **REQUEST FOR PRODUCTION NO. 7**

26         All DOCUMENTS RELATING TO any retaliation against, harassment of, or adverse

27  employment action against YOU by AVISON YOUNG.

28

3

**REQUEST FOR PRODUCTION NO. 8**

All DOCUMENTS RELATING TO the termination of YOUR employment with AVISON YOUNG.

**REQUEST FOR PRODUCTION NO. 9**

All DOCUMENTS RELATING TO any claim by YOU for unemployment benefits related to the termination of YOUR employment with AVISON YOUNG.

**REQUEST FOR PRODUCTION NO. 10**

All documents or communications RELATING TO YOUR attempt(s) to find employment following termination of YOUR employment with AVISON YOUNG.

**REQUEST FOR PRODUCTION NO. 11**

All DOCUMENTS RELATING TO any employment YOU had subsequent to termination of YOUR employment with AVISON YOUNG that identifies the employer, position, location, job duties, compensation, and benefits.

**REQUEST FOR PRODUCTION NO. 12**

All communications between YOU and any individual, other than YOUR attorney, RELATING TO any allegations in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 13**

All DOCUMENTS between YOU and the California Department of Fair Employment & Housing or any other Federal, State, or local governmental agency or quasi-governmental agency RELATING TO AVISON YOUNG.

**REQUEST FOR PRODUCTION NO. 14**

All DOCUMENTS RELATING TO damages YOU allege YOU suffered as a result of AVISON YOUNG's conduct.

**REQUEST FOR PRODUCTION NO. 15**

YOUR federal and state income tax returns (including all schedules, attachments, W-2 forms, 1099 statements, pay stubs and worksheets) for the years 2015, 2016, 2017, 2018, and 2019.

///

**REQUEST FOR PRODUCTION NO. 16**

YOUR entire personnel file maintained by any current or former employer with whom YOU were employed at any time since April 4, 2020.

**REQUEST FOR PRODUCTION NO. 17**

All DOCUMENTS since January 1, 2017 to, from, or RELATING TO Dominik Slonek.

**REQUEST FOR PRODUCTION NO. 18**

All DOCUMENTS supporting YOUR allegation in paragraph 8 of YOUR COMPLAINT that "[t]he company also encouraged [YOU] to maintain an active real estate license – which [YOU] did – so [YOU] remain[ed] eligible for any 'Spot Bonus' on AY real estate transactions."

**REQUEST FOR PRODUCTION NO. 19**

All DOCUMENTS supporting YOUR allegation in paragraph 9 of YOUR COMPLAINT that "After helping with the opening of the AY San Francisco office, [YOU played key roles in AY's expansion through the region … with [YOUR] help, AY opened 5 offices in Oakland, San Mateo, San Jose, Sacramento, and Denver … [constituting] AY's 'Northern California Region.'"

**REQUEST FOR PRODUCTION NO. 20**

All DOCUMENTS supporting YOUR allegation in paragraph 11 of YOUR COMPLAINT that "[s]tarting in approximately late 2017, [YOU] began taking notice of Slonek's alcohol consumption, including his apparent intoxication at the office during work hours."

**REQUEST FOR PRODUCTION NO. 21**

All DOCUMENTS supporting YOUR allegation in paragraph 12 of YOUR COMPLAINT that "Slonek's alcohol consumption – particularly during work hours – appeared to be escalating in the first part of 2018.  He would frequently attend 'business lunches' … at which he apparently would consume significant amounts of alcohol to the point that he would be obviously intoxicated when he returned to the office [and] [s]ometimes, he would not even return to the office after these lengthy lunches."

///

///

**REQUEST FOR PRODUCTION NO. 22**

All DOCUMENTS supporting YOUR allegation in paragraph 13 of YOUR COMPLAINT that YOU "noticed that Slonek regularly expensed significant alcohol tabs from occasions during which Slonek said he had been 'recruiting,' from bars or events like Golden State Warriors games where Slonek would host clients … [and that YOU] also managed Slonek's calendar on which [YOU] observed his many lunches and recruiting meetings."

**REQUEST FOR PRODUCTION NO. 23**

All DOCUMENTS supporting YOUR allegation in paragraph 14 of YOUR COMPLAINT that "[i]n early March 2018, an AY broker confided in [YOU] THAT HE COULD NO LONGER ATTEND LUNCHES WITH Slonek because they ended up consuming too much alcohol."

**REQUEST FOR PRODUCTION NO. 24**

All DOCUMENTS supporting YOUR allegation in paragraph 15 of YOUR COMPLAINT that "[o]n or about March 16, 2018, [YOU] observed Slonek leave around 11:30 a.m. for a lunch meeting with a client.  Slonek did not return to the office until approximately 4:30 p.m. [and] Slonek was obviously intoxicated, stumbling down the hallway."

**REQUEST FOR PRODUCTION NO. 25**

All DOCUMENTS supporting YOUR allegation in paragraph 16 of YOUR COMPLAINT that YOU were "increasingly concerned by Slonek's alcohol consumption and the fact that he would be driving home to Los Altos from San Francisco while intoxicated."

**REQUEST FOR PRODUCTION NO. 26**

All DOCUMENTS supporting YOUR allegation in paragraph 16 of YOUR COMPLAINT that "[o]n or around March 19, 2018, [YOU] called AY Human Resources Manager Bethany Marinacci to discuss several events at the office, including Slonek's [alleged] alcohol consumption [and YOU] said [YOU were] concerned for the well-being of both Slonek and others who were or could be impacted by Slonek's drinking. [YOU] w[ere] afraid that Slonek's escalating drinking would result in him killing someone while [allegedly] driving drunk on his way home from work …

in [YOUR] view, the company was abetting Slonek's drinking by paying Slonek's expense reports which included reimbursement for alcohol costs."

**REQUEST FOR PRODUCTION NO. 27**

All DOCUMENTS supporting YOUR allegation in paragraph 17 of YOUR COMPLAINT that in a call from AY Chief Human Resources Officer Pam Mazza YOU "indicated to Mazza that there was another issue – relating to Slonek – to which Mazza responded 'I know' and proceeded to end the call [and] YOU came away from th[at] conversation with the impression that Mazza seemed to not want to know anything further about Slonek."

**REQUEST FOR PRODUCTION NO. 28**

All DOCUMENTS supporting YOUR allegation in paragraph 18 of YOUR COMPLAINT that "AY did not engage in any sort of investigation into [YOUR] complaints related to Slonek's alcohol consumption nor did the company undertake any remedial action beyond Marinacci saying that AY President of US Operations Earl Webb would 'speak to' Slonek about his drinking."

**REQUEST FOR PRODUCTION NO. 29**

All DOCUMENTS supporting YOUR allegation in paragraph 19 of YOUR COMPLAINT that "[a]fter [YOUR] calls to Marinacci, Slonek began closing the San Francisco office early on most Fridays, often saying he was going to 'recruiting lunches' and would not be back until later [and continued doing so] through at least March 2020."

**REQUEST FOR PRODUCTION NO. 30**

All DOCUMENTS supporting YOUR allegation in paragraph 19 of YOUR COMPLAINT that "[o]n one of the first instances [of closing the office early], [YOU] briefly returned to the office after it had closed to finish up a few tasks [and while there] … Slonek entered the office through the back door and began yelling at [YOU] that the office was closed [and] [t]o your observation, Slonek was intoxicated and agitated."

**REQUEST FOR PRODUCTION NO. 31**

All DOCUMENTS supporting YOUR allegation in paragraph 20 of YOUR COMPLAINT that "[a]fter her call to Marinacci, Slonek never again put [YOU] on a Spot Bonus … [but] Slonek

approved at least one other Operations Manager in the region [to] receive multiple Spot Bonuses, including one for approximately $20,000."

**REQUEST FOR PRODUCTION NO. 32**

All DOCUMENTS supporting YOUR allegation in paragraph 25 of YOUR COMPLAINT that "[b]eginning on March 16, 2020, all AY US offices transitioned to Work From Home as a result of COVID-19."

**REQUEST FOR PRODUCTION NO. 33**

All DOCUMENTS supporting YOUR allegation in paragraph 26 of YOUR COMPLAINT that "[o]n April 1, AY held a virtual town hall for employees … [during which it was] announced that the company would be eliminating a small number of its 5,250 employees."

**REQUEST FOR PRODUCTION NO. 34**

All DOCUMENTS supporting YOUR allegation in paragraph 27 of YOUR COMPLAINT that on April 3, 2020, while on a Zoom meeting, "Slonek informed [YOU] that due to the impact of COVID-19 on the business, [YOUR] position was being 'eliminated.'"

**REQUEST FOR PRODUCTION NO. 35**

All DOCUMENTS supporting YOUR allegation in paragraph 31 of YOUR COMPLAINT that YOUR "responsibilities and job duties wer taken over by an employee who was substantially younger than [YOU] [are], who had less seniority than [YOU] do[], and who had substantially less experience than [YOU] do[]."

Dated:  August 12, 2020

MCDERMOTT WILL & EMERY LLP

By: _____
    YESENIA GALLEGOS
    Attorneys for Defendant
    Avison Young – Northern California, LTD

# **<u>EXHIBIT B</u>**

Noah D. Lebowitz [SBN 194982]
LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street, No. 452
Berkeley, California  94709
Telephone: (510) 883-3977
Facsimile: (510) 540-1057
E-mail:  noah@ndllegal.com

Attorneys for Plaintiff
MELINDA MIYAGISHIMA

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

(Unlimited Jurisdiction)

| | |
|---|---|
| MELINDA MIYAGISHIMA,<br><br>    Plaintiff,<br><br><br>v.<br><br><br>AVISON YOUNG – NORTHERN<br>CALIFORNIA, LTD., and DOES 1 through<br>10, inclusive,<br><br>    Defendants. | Case No.  CGC-20-584874<br><br>**PLAINTIFF'S RESPONSE TO<br>DEFENDANT'S REQUEST FOR<br>PRODUCTION OF DOCUMENTS, SET<br>ONE** |

PROPOUNDING PARTY:    Defendant Avison Young – Northern California, LTD

RESPONDING PARTY:    Plaintiff Melinda Miyagishima

SET NUMBER:        ONE

Pursuant to Code of Civil Procedure § 2024.030(c)(2), Plaintiff Melinda Miyagishima

hereby responds to the first set of requests for production of documents served by Defendant

Avison Young-Northern California, LTD. as follows:

- 1 -

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA  94709

**GENERAL RESPONSE**

Miyagishima's response is made without waiving, or intending to waive, but on the contrary, expressly reserving:  (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the documents, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other requests for production or other discovery procedures involving or relating to the subject matter of this Request to which Ramos herein responds; and (c) the right at any time to revise, correct, add to, or clarify any of the responses herein.  The inadvertent production of any privileged document shall not be deemed to be a waiver of any applicable privilege with respect to such document or any other document.

**RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS referenced in the COMPLAINT or RELATING TO the allegations in the COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Plaintiff object to this Request as not reasonably particularized as required by CCP § 2031.030(c)(1). Plaintiff objects to this Request as compound. Without waiving such objections, Plaintiff responds as follows:

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS which YOU intend to, or may, submit at either the trial of this action or in connection with a motion for summary judgment in this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiff object to this Request as not reasonably particularized as required by CCP § 2031.030(c)(1). Plaintiff objects to this Request as compound. Plaintiff objects to this Request as

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA  94709

vague, ambiguous, and unintelligible as Plaintiff has no idea what Defendant would, could, or will argue, if at all, in an yet-unfiled motion for summary judgment. Based on the foregoing objections, Plaintiff is incapable of providing a substantive response.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS from January 1, 2017 through present between YOU and AVISON YOUNG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiff objects to this Request as vague, ambiguous and unintelligible as to the phrase "between YOU and AVISON YOUNG." Plaintiff invites Defendant to meet and confer and clarify the meaning of this Request.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS RELATING TO YOUR job performance at AVISON YOUNG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiff objects to this Request to the extent Defendant has equal or superior access to responsive documents, and it is therefore harassing. Without waiving such objection, Plaintiff responds as follows:

Plaintiff has no responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS RELATING TO any formal or informal complaint YOU made to or regarding AVISON YOUNG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Plaintiff objects to this Request to the extent Defendant has equal or superior access to responsive documents, and it is therefore harassing. Without waiving such objection, Plaintiff responds as follows:

Plaintiff will produce all responsive documents in her possession, custody or control.

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA  94709

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA 94709

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO any disclosure of information by YOU to or regarding AVISON YOUNG in relation to a potential or actual violation of a law, statute, rule, or regulation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiff objects to this Request as vague, ambiguous and unintelligible as to the phrase "any disclosure of information by YOU." Plaintiff invites Defendant to meet and confer and clarify the meaning of this Request.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATING TO any retaliation against, harassment of, or adverse employment action against YOU by AVISON YOUNG

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS RELATING TO the termination of YOUR employment with AVISON YOUNG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO any claim by YOU for unemployment benefits related to the termination of YOUR employment with AVISON YOUNG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiff objects to this Request as not relevant and not reasonably calculated to lead to the discovery of relevant evidence as the documents sought reflect collateral source information which are not relevant to any issue in this case.

**REQUEST FOR PRODUCTION NO. 10:**

All documents or communications RELATING TO YOUR attempt(s) to find employment following termination of YOUR employment with AVISON YOUNG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS RELATING TO any employment YOU had subsequent to termination of YOUR employment with AVISON YOUNG that identifies the employer, position, location, job duties, compensation, and benefits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiff has no responsive documents as no such documents ever existed.

**REQUEST FOR PRODUCTION NO. 12:**

All communications between YOU and any individual, other than YOUR attorney, RELATING TO any allegations in the COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS between YOU and the California Department of Fair Employment & Housing or any other Federal, State, or local governmental agency or quasi-governmental agency RELATING TO AVISON YOUNG.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS RELATING TO damages YOU allege YOU suffered as a result of AVISON YOUNG's conduct

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA 94709

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA 94709

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 15:**

YOUR federal and state income tax returns (including all schedules, attachments, W-2 forms, 1099 statements, pay stubs and worksheets) for the years 2015, 2016, 2017, 2018, and 2019.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiff objects to this Request as overly broad and not relevant. Plaintiff objects to this Request to the extent it violates her right to privacy in her tax returns and tax information as guaranteed by Article I, § 1 of the California Constitution and relevant caselaw. Without waiving such objections, Plaintiff responds as follows:

Plaintiff will produce her Form W-2 for the years 2015 through 2019.

**REQUEST FOR PRODUCTION NO. 16:**

YOUR entire personnel file maintained by any current or former employer with whom YOU were employed at any time since April 4, 2020

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Plaintiff has no responsive documents as no such documents ever existed.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS since January 1, 2017 to, from, or RELATING TO Dominik Slonek.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiff objects to this Request as Defendant has equal or superior access to responsive documents and it is therefore harassing. Plaintiff objects to this Request as vague, ambiguous, and unintelligible as to the phrase "DOCUMENTS . . . to, from, or RELATING TO Dominik Slonek." Without waiving such objections, Plaintiff responds as follows:

Plaintiff will produce all responsive documents in her possession, custody or control.

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA 94709

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS supporting YOUR a11egation in paragraph of YOUR COMPLAINT that "[t]he company also encouraged [YOU] to maintain an active real estate license-which [YOU] did - so [YOU] remain[ed] eligible for any 'Spot Bonus' on AY real estate transactions."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS supporting YOUR a11egation in paragraph 9 of YOUR COMPLAINT that "After helping with the opening of the AY San Francisco office, [YOU played key roles in AY's expansion through the region ... with [YOUR] help, AY opened 5 offices in Oakland, San Mateo, San Jose, Sacramento, and Denver ... [ constituting] AY's 'Northern California Region.'"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS supporting YOUR a11egation in paragraph 11 of YOUR COMPLAINT that "[s]tarting in approximately late 2017, [YOU] began taking notice of Slonek's alcohol consumption, including his apparent intoxication at the office during work hours."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS supporting YOUR a11egation in paragraph 12 of YOUR COMPLAINT that "Slonek's alcohol consumption -particularly during work hours - appeared to be escalating in the first part of 2018. He would frequently attend 'business lunches' ... at which he apparently would consume significant amounts of alcohol to the point that he would be

- 7 -

obviously intoxicated when he returned to the office [and] [s]ometimes, he would not even return to the office after these lengthy lunches."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS supporting YOUR allegation in paragraph 13 of YOUR COMPLAINT that YOU "noticed that Slonek regularly expensed significant alcohol tabs from occasions during which Slonek said he had been 'recruiting,' from bars or events like Golden State Warriors games where Slonek would host clients .. . [and that YOU] also managed Slonek's calendar on which [YOU] observed his many lunches and recruiting meetings."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS supporting YOUR allegation in paragraph 14 of YOUR COMPLAINT that "[i]n early March 2018, an AY broker confided in [YOU] THAT HE COULD NO LONGER ATTEND LUNCHES WITH Slonek because they ended up consuming too much alcohol."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS supporting YOUR allegation in paragraph 15 of YOUR COMPLAINT that "[o]n or about March 16, 2018, [YOU] observed Slonek leave around 11 :30 a.m. for a lunch meeting with a client. Slonek did not return to the office until approximately 4:30 p.m. [and] Slonek was obviously intoxicated, stumbling down the hallway."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Plaintiff will produce all responsive documents in her possession, custody or control.

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA 94709

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS supporting YOUR allegation in paragraph 16 of YOUR COMPLAINT that YOU were "increasingly concerned by Slonek's alcohol consumption and the fact that he would be driving home to Los Altos from San Francisco while intoxicated."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS supporting YOUR allegation in paragraph 16 of YOUR COMPLAINT that "[o]n or around March 19, 2018, [YOU] called AY Human Resources Manager Bethany Marinacci to discuss several events at the office, including Slonek's [alleged] alcohol consumption [and YOU] said [YOU were] concerned for the well-being of both Slonek and others who were or could be impacted by Slonek's drinking. [YOU] w[ere] afraid that Slonek's escalating drinking would result in him killing someone while [allegedly] driving drunk on his way home from work ... in [YOUR] view, the company was abetting Slonek's drinking by paying Slonek's expense reports which included reimbursement for alcohol costs."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS supporting YOUR allegation in paragraph 17 of YOUR COMPLAINT that in a call from AY Chief Human Resources Officer Pam Mazza YOU "indicated to Mazza that there was another issue -relating to Slonek-to which Mazza responded 'I know' and proceeded to end the call [and] YOU came away from th[at] conversation with the impression that Mazza seemed to not want to know anything further about Slonek."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Plaintiff will produce all responsive documents in her possession, custody or control.

///

///

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS supporting YOUR allegation in paragraph 18 of YOUR COMPLAINT that "AY did not engage in any sort of investigation into [YOUR] complaints related to Slonek's alcohol consumption nor did the company undertake any remedial action beyond Marinacci saying that AY President of US Operations Earl Webb would 'speak to' Slonek about his drinking."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS supporting YOUR allegation in paragraph 19 of YOUR COMPLAINT that "[a]fter [YOUR] calls to Marinacci, Slonek began closing the San Francisco office early on most Fridays, often saying he was going to 'recruiting lunches' and would not be back until later [and continued doing so] through at least March 2020."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS supporting YOUR allegation in paragraph 19 of YOUR COMPLAINT that "[o]n one of the first instances [of closing the office early], [YOU] briefly returned to the office after it had closed to finish up a few tasks [and while there] ... Slonek entered the office through the back door and began yelling at [YOU] that the office was closed [and] [t]o your observation, Slonek was intoxicated and agitated."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS supporting YOUR allegation in paragraph 20 of YOUR COMPLAINT that "[a]fter her call to Marinacci, Slonek never again put [YOU] on a Spot Bonus

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA  94709

... [but] Slonek approved at least one other Operations Manager in the region [to] receive multiple Spot Bonuses, including one for approximately $20,000."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

      Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 32:**

      All DOCUMENTS supporting YOUR allegation in paragraph 25 of YOUR COMPLAINT that "[b]eginning on March 16, 2020, all AY US offices transitioned to Work From Home as a result of COVID-19."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

      Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 33:**

      All DOCUMENTS supporting YOUR allegation in paragraph 26 of YOUR COMPLAINT that "[o]n April 1 , AY held a virtual town hall for employees ... [during which it was] announced to that the company would be eliminating a small number of its 5,250 employees."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

      Plaintiff will produce all responsive documents in her possession, custody or control.

**REQUEST FOR PRODUCTION NO. 34:**

      All DOCUMENTS supporting YOUR allegation in paragraph 27 of YOUR COMPLAINT that on April 3, 2020, while on a Zoom meeting, "Slonek informed [YOU] that due to the impact of COVID-19 on the business, [YOUR] position was being 'eliminated.'"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

      Plaintiff will produce all responsive documents in her possession, custody or control.

///
///
///

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA 94709

Plaintiff's Response to Defendant's Request for Production of Documents, Set One

**REQUEST FOR PRODUCTION NO.35:**

All DOCUMENTS supporting YOUR allegation in paragraph 31 of YOUR COMPLAINT that YOUR "responsibilities and job duties were taken over by an employee who was substantially younger than [YOU] [are], who had less seniority than [YOU] do[], and who had substantially less experience than [YOU] do[]."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Plaintiff has no responsive documents in her possession, custody or control.

Dated:  September 21, 2020          LAW OFFICE OF NOAH D. LEBOWITZ

By:_____,
          Noah D. Lebowitz
Attorneys for Plaintiff Melinda Miyagishima

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA 94709

## VERIFICATION

*Miyagishima v. Avison Young – Northern California, LTD.*
Case No. CGC-22-584874

I am the Plaintiff in the above referenced action and have read the foregoing, **PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE** and know the contents thereof to be true to the best of my knowledge. I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on

September 19, 2020 at San Francisco, California.

Melinda Miyagishima

LAW OFFICE OF NOAH D. LEBOWITZ
1442A Walnut Street. No. 452
Berkeley, CA 94709

# <u>EXHIBIT C</u>



**mwe.com**

Yesenia Gallegos
Attorney at Law
ygallegos@mwe.com
+1 310 788 4199

October 1, 2020

VIA EMAIL

NOAH D. LEBOWITZ
LAW OFFICE OF NOAH D. LEBOWITZ
1442A WALNUT STREET, NO.. 452
BERKELEY, CALIFORNIA 94709

Re:      Miyagishima v. Avison Young – Northern California, LTD.

Dear Mr. Lebowitz:

This letter is an attempt to resolve deficiencies with respect to Plaintiff Melinda Miyagishima's responses and objections to Defendant's Request for Production of Documents (Set One) To Plaintiff (the "Requests").[1]  Plaintiff has refused to produce broad swaths of highly relevant documents, citing myriad boilerplate objections.  Each objection is baseless, and under no circumstance supports Plaintiff's refusal to produce documents.  Even where Plaintiff has agreed to produce responsive documents, her production appears to be incomplete.   To avoid burdening the court with unnecessary discovery motions, we are willing to work with Plaintiff to resolve these discovery issues.

In response to Request for Production Nos. 1, 5, and 17, Plaintiff has asserted boilerplate objections, but also promised to produce responsive documents without waiving those objections.  Upon review of Plaintiff's document production, it is unclear whether Plaintiff has indeed produced all responsive documents in her possession, custody, or control or whether Plaintiff is withholding some documents on the basis of the stated objections.  Please identify which documents are responsive and if there are none, please have Plaintiff produce the documents she intended to produce.

Request for Production No. 2 seeks production of "All DOCUMENTS which YOU intend to, or may, submit at either the trial of this action or in connection with a motion for summary judgment in this action."  Plaintiff has objected that this request is not reasonably particularized, compound, vague, ambiguous, and "unintelligible as Plaintiff has no idea what Defendant would, could, or will argue, if at all, in an (sic) yet-unfiled motion for summary judgment."  Based on these objections, Plaintiff stated that she is incapable of providing a substantive response.   These objections are without merit.   Any DOCUMENTS in Plaintiff's possession, custody or control, which she intends to or may submit as evidence in this litigation to support her theories of age discrimination and retaliation for complaining about Nick Slonek, must be produced.

---

[1] As used herein, the capitalized terms "DOCUMENTS," "COMMUNICATIONS," "RELATING TO," "AVISON YOUNG," "YOU" and "YOUR" have the meanings set forth in the Definitions section of the Requests.



**2049 Century Park East Suite 3200   Los Angeles CA 90067-3206   Tel +1 310 277 4110   Fax +1 310 277 4730**

*US practice conducted through McDermott Will & Emery LLP.*

DM_US 173360231-2.106973.0017

Noah D. Lebowitz
October 1, 2020
Page 2

Request for Production No. 3 seeks production of "All DOCUMENTS from January 1, 2017 through present between YOU and AVISON YOUNG." Plaintiff has refused to produce any responsive documents, objecting that this request is vague, ambiguous and unintelligible as to the phrase "between YOU and AVISON YOUNG." Plaintiff did not explain how the identified phrase is vague, ambiguous and unintelligible. This objection is without merit. This request plainly seeks the production of any COMMUNICATIONS or other DOCUMENTS from Plaintiff to AVISON YOUNG or vice versa. Responsive DOCUMENTS in Plaintiff's possession, custody or control must be produced.

In response to Request for Production No. 5, Plaintiff agreed to produce all DOCUMENTS RELATING TO any formal or informal complaint YOU made to or regarding AVISON YOUNG, but Plaintiff's production appears to include no such documents. Is this because no responsive documents exist, or are responsive documents being withheld based on the asserted objections?

Request for Production No. 6 seeks "All DOCUMENTS RELATING TO any disclosure of information by YOU to or regarding AVISON YOUNG in relation to a potential or actual violation of a law, statute, rule, or regulation." Plaintiff has refused to produce any responsive documents, objecting that the request is vague, ambiguous and unintelligible as to the phrase "any disclosure of information by YOU." Plaintiff has not explained how the identified phrase is vague, ambiguous or unintelligible. This objection is without merit. This request plainly seeks the production of (1) any DOCUMENTS RELATING TO Plaintiff making information known to, reporting information to, or otherwise disclosing information to AVISON YOUNG in relation to a potential or actual violation of law, statute, or regulation, and (2) any DOCUMENTS RELATING TO Plaintiff making information known regarding, reporting information regarding, or otherwise disclosing information regarding AVISON YOUNG in relation to a potential or actual violation of law, statute, or regulation. Responsive DOCUMENTS in Plaintiff's possession, custody or control must be produced.

Request for Production No. 9 seeks the production of "All DOCUMENTS RELATING TO any claim by YOU for unemployment benefits related to the termination of YOUR employment with AVISON YOUNG." Plaintiff has refused to produce any documents, objecting as to relevance. This objection is misplaced. Relevance is broad and includes, *inter alia*, information regarding Plaintiff's damages and any mitigation thereof. Responsive documents in Plaintiff's possession, custody or control must be produced.

Request for Production No. 10 seeks the production of "All documents or communications RELATING TO YOUR attempt(s) to find employment following termination of YOUR employment with AVISON-YOUNG." Plaintiff has agreed to produce all responsive documents in Plaintiff's possession, custody or control. Plaintiff's document production, however, fails to include any responsive documents. Plaintiff's interrogatory responses indicate that Plaintiff has submitted multiple job applications since termination of her employment with Avison Young. Plaintiff's production, however, does not include any job application materials or communications to or from prospective employers. Responsive documents in Plaintiff's possession, custody or control must be produced.

Request for Production No. 14 seeks the production of "All DOCUMENTS RELATING TO damages YOU allege YOU suffered as a result of AVISON YOUNG's conduct." Plaintiff has agreed to



Noah D. Lebowitz
October 1, 2020
Page 3

produce all responsive documents in her possession, custody or control. Plaintiff's interrogatory responses identified several medical providers as having treated her for medical conditions allegedly caused by Avison Young's conduct. Plaintiff's document production, however, is devoid of records from the identified medical providers. Please advise whether Plaintiff will obtain and produce these medical records or sign an authorization to have the records released to Avison Young.

Request for Production No. 15 seeks the production of "YOUR federal and state income tax returns (including all schedules, attachments, W-2 forms, 1099 statements, pay stubs and worksheets) for the years 2015, 2016, 2017, 2018, and 2019." Plaintiff has agreed to produce her W-2 forms for the years 2015 through 2019. Plaintiff's document production, however, contains no such forms. Please advise when the promised documents will be produced. Further, Plaintiff has refused to produce any other requested documents, objecting that the request is overly broad and not relevant. Plaintiff states that there is "relevant caselaw (sic)" supporting her objections. Please direct us to the referenced case law.

In response to Request for Production No. 23, Plaintiff has promised to produce "All DOCUMENTS supporting YOUR allegation in paragraph 14 of YOUR COMPLAINT that '[i]n early March 2018, an AY broker confided in [YOU] THAT HE COULD NO LONGER ATTEND LUNCHES WITH Slonek because they ended up consuming too much alcohol." No such documents appear in Plaintiff's document production. Please advise whether no such documents exist or whether responsive documents are being withheld.

Finally, it is unclear exactly which custodians, forms of media, and accounts Plaintiff searched for responsive documents. We particularly note that Plaintiff has not produced a single text message or social media message. Please provide clarification regarding the custodians, forms of media, and accounts Plaintiff searched for responsive documents.

Due to the essential nature of the requested discovery and the impending deposition of Plaintiff, please respond to this letter on or before the close of business on October 9, 2020. If we do not hear from you by that time, we will be forced to postpone Plaintiff's deposition while we file a motion to compel and Avison Young will seek reimbursement of its fees and costs in connection with said motion.

Sincerely,
McDermott Will & Emery LLP

Yesenia Gallegos

McDermott
Will & Emery

# **<u>EXHIBIT D</u>**

| | |
|---|---|
| **From:** | Noah Lebowitz |
| **To:** | Moore, Emory |
| **Cc:** | Gallegos, Yesenia |
| **Subject:** | RE: Miyagishima v. Avison Young - Northern California, LTD. |
| **Date:** | Thursday, October 1, 2020 4:31:20 PM |
| **Attachments:** | image001.png |

**[ External Email ]**

Hi Emory,

As noted in my September 21 email, we are working on producing additional documents. We have run into some technical issues, exacerbated by COVID business closures and access to available reproduction sources, but I believe we have solved those issues. I expect to have the additional documents ready for transmission either tomorrow or Monday.

Let me know once you have had a chance to review those documents which of the requests you still would like to address via meet and confer and we can set up a time to talk and work through any outstanding issues.

Thank you.



Noah D. Lebowitz
1442 A Walnut Street, No. 452
Berkeley, CA  94709
510.883.3977
510.540.1057 (f)
noah@ndllegal.com
www.ndllegal.com

---

**From:** Moore, Emory
**Sent:** Thursday, October 1, 2020 1:49 PM
**To:** Noah Lebowitz
**Cc:** Gallegos, Yesenia
**Subject:** Miyagishima v. Avison Young - Northern California, LTD.

Noah:

Attached please find correspondence related to the Miyagishima matter.

Best Regards,
Emory

EMORY D. MOORE, II
ASSOCIATE

**McDermott Will & Emery LLP**  444 West Lake Street, Suite 4000, Chicago, IL 60606-0029

**Tel** +1 312 984 3379  |  **Fax** +1 312 275 8359

emoore@mwe.com

**Website** | **vCard** | **Twitter** | **LinkedIn** | **Blog**

Licensed in Michigan and Illinois.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

# **<u>EXHIBIT E</u>**

| **From:** | Noah Lebowitz |
| **To:** | Gallegos, Yesenia |
| **Cc:** | Moore, Emory; Liu, Cindy |
| **Subject:** | Miyagishima v Avison Young |
| **Date:** | Monday, October 5, 2020 12:47:36 PM |
| **Attachments:** | image001.png |
| | PL 00077 - PL 00441.pdf |

**[ External Email ]**

Hi Yesenia,

Attached please find documents Bates stamped PL 00077 – PL 00441.  With this transmission, our document production is complete. If you have any additional questions regarding our responses, please do not hesitate to call me to discuss.

Thank you.



Noah D. Lebowitz
1442 A Walnut Street, No. 452
Berkeley, CA  94709
510.883.3977
510.540.1057 (f)
noah@ndllegal.com
www.ndllegal.com

## **EXHIBIT F**

down on the floor
. Started crying.

1145am I texted Nick
Slonek. Said
that . "Dave
came in to "talk"
to me, It did not
go well. I cannot
work with his toxic
bullying tactics
any longer. I would
like to be taken
off the rest of the
office project. Am at
gym. We can talk
later if you like.
He said "you work
for me. You work
for AY." Yes but
I also treat
ALL people women

of men with
RESPECT.

He (Slonek) texted:
I spoke to with him
this am, Unbelievable
Heading to lunch.
Will be back. Hang
in there.
        My response
" Yes he told me
that. Doesn't
matter, He is a bully.
    No response
to that text.
He said "Sorry that happened. I will
deal with it immediately."
Did over an
bar on the treadmill
. went back to
. office to work.
Gonzales! Slonek
both not there.

# **EXHIBIT G**



mwe.com

Yesenia Gallegos
Attorney at Law
ygallegos@mwe.com
+1 310 788 4199

October 12, 2020

VIA EMAIL

Noah D. Lebowitz
Law Office of Noah D. Lebowitz
1442A Walnut Street, No.. 452
Berkeley, California 94709

Re:     Miyagishima v. Avison Young – Northern California, LTD.

Dear Mr. Lebowitz:

We write in follow-up to our October 1, 2020 letter, in further attempt to resolve deficiencies with respect to Melinda Miyagishima's responses and objections to Defendant's Request for Production of Documents (Set One) To Plaintiff (the "Requests").[1]  In our October 1st letter, we explained that (1) Plaintiff has refused to produce broad swaths of highly relevant documents, citing myriad boilerplate objections, (2) each objection is baseless, and under no circumstance supports Plaintiff's refusal to produce documents, and (3) even where Plaintiff has agreed to produce responsive documents, her production appears to be incomplete.  We requested a response before close of business October 9th to avoid the necessity of delaying Plaintiff's deposition and filing a motion to compel.  You responded on October 1st, but did not address the first two issues.  You simply addressed the third issue by promising to issue a supplemental production.  Even then, however, Plaintiff's supplemental production fails to fully address the third issue.

Having not received compliant discovery responses and document production from Plaintiff and having received no substantive response to our meet and confer efforts on multiple issues, we have no choice but to postpone Plaintiff's deposition until the dispute is resolved.  We note that you have also requested postponement of Plaintiff's deposition.

Despite the fact that your October 1st email only addressed one issue, in the interest of compromise, we have reviewed Plaintiff's supplemental production and are now restating the present discovery issues as you have requested.

In response to Request for Production Nos. 1, 5, and 17 Plaintiff has asserted boilerplate objections, but also promised to produce responsive documents without waiving those objections.  Upon review of

---

[1] As used herein, the capitalized terms "DOCUMENTS," "COMMUNICATIONS," "RELATING TO," "AVISON YOUNG," "YOU" and "YOUR" have the meanings set forth in the Definitions section of the Requests.



2049 Century Park East Suite 3200   Los Angeles CA 90067-3206   Tel +1 310 277 4110   Fax +1 310 277 4730

US practice conducted through McDermott Will & Emery LLP.

Noah D. Lebowitz
October 12, 2020
Page 2

Plaintiff's document production, it is unclear whether Plaintiff has indeed produced all responsive documents in her possession, custody, or control or whether Plaintiff is withholding some documents on the basis of the stated objections.  Please clarify.

Request for Production No. 2 seeks production of "All DOCUMENTS which YOU intend to, or may, submit at either the trial of this action or in connection with a motion for summary judgment in this action."  Plaintiff has objected that this request is not reasonably particularized, compound, vague, ambiguous, and "unintelligible as Plaintiff has no idea what Defendant would, could, or will argue, if at all, in an (sic) yet-unfiled motion for summary judgment."  Based on these objections, you stated that Plaintiff is incapable of providing a substantive response.  These objections are without merit.  Any DOCUMENTS in Plaintiff's possession, custody or control, which she intends to or may submit as evidence in this litigation, must be produced.

Request for Production No. 3 seeks production of "All DOCUMENTS from January 1, 2017 through present between YOU and AVISON YOUNG."  Plaintiff has refused to produce any responsive documents, objecting that this request is vague, ambiguous and unintelligible as to the phrase "between YOU and AVISON YOUNG."  Plaintiff did not explain how the identified phrase is vague, ambiguous and unintelligible.  This objection is without merit.  This request plainly seeks the production of any COMMUNICATIONS or other DOCUMENTS from Plaintiff to AVISON YOUNG or vice versa.  Responsive DOCUMENTS in Plaintiff's possession, custody or control must be produced.

In response to Request for Production No. 5, Plaintiff agreed to produce all DOCUMENTS RELATING TO any formal or informal complaint YOU made to or regarding AVISON YOUNG.  Please clarify whether any responsive DOCUMENTS are being withheld based on the asserted objections.

Request for Production No. 6 seeks "All DOCUMENTS RELATING TO any disclosure of information by YOU to or regarding AVISON YOUNG in relation to a potential or actual violation of a law, statute, rule, or regulation."  Plaintiff has refused to produce any responsive documents, objecting that the request is vague, ambiguous and unintelligible as to the phrase "any disclosure of information by YOU."  Plaintiff has not explained how the identified phrase is vague, ambiguous or unintelligible.  This objection is without merit.  This request plainly seeks the production of (1) any DOCUMENTS RELATING TO Plaintiff making information known to, reporting information to, or otherwise disclosing information to AVISON YOUNG in relation to a potential or actual violation of law, statute, or regulation, and (2) any DOCUMENTS RELATING TO Plaintiff making information known regarding, reporting information regarding, or otherwise disclosing information regarding AVISON YOUNG in relation to a potential or actual violation of law, statute, or regulation.  Responsive DOCUMENTS in Plaintiff's possession, custody or control must be produced.

Request for Production No. 9 seeks the production of "All DOCUMENTS RELATING TO any claim by YOU for unemployment benefits related to the termination of YOUR employment with AVISON YOUNG."  Plaintiff has refused to produce any documents, objecting as to relevance.  This objection is misplaced.  Relevance is broad and includes, *inter alia*, information regarding Plaintiff's damages and any



Noah D. Lebowitz
October 12, 2020
Page 3

mitigation thereof.  Responsive DOCUMENTS in Plaintiff's possession, custody or control must be produced.

Request for Production No. 10 seeks the production of "All documents or communications RELATING TO YOUR attempt(s) to find employment following termination of YOUR employment with AVISON-YOUNG."  Plaintiff has agreed to produce all responsive documents in Plaintiff's possession, custody or control.  Plaintiff's document production, however, fails to include multiple responsive documents.  Plaintiff's interrogatory responses and document productions indicate that Plaintiff has submitted multiple job applications since termination of her employment with Avison Young.  Plaintiff's production, however, does not include job application materials.  For example, PL00413 appears to be incomplete.  It indicates that there are 11 pages in the job application, but only the first page has been produced.  Likewise, PL00424 indicates that document Shrm_Miyagishima_892469.pdf was submitted as a part of Plaintiff's application materials, but that document has not been produced.  Similarly, PL00424 indicates that it is an "Application Summary."  Please confirm whether or not the full application is available and will be produced.  Additionally, PL00429, PL00432 and PL00438 contain attachments that have not been produced.  These attachments are responsive and must be produced.  To be clear, these are simply examples.  All DOCUMENTS OR COMMUNICATIONS relating to Plaintiff's attempts to find employment following termination of her employment with Avison Young must be produced.

Request for Production No. 14 seeks the production of "All DOCUMENTS RELATING TO damages YOU allege YOU suffered as a result of AVISON YOUNG's conduct."  Plaintiff has agreed to produce all responsive documents in her possession, custody or control.  Plaintiff's interrogatory responses identified several medical providers as having treated her for medical conditions allegedly caused by Avison Young's conduct.  Plaintiff's document production, however, is devoid of records from the identified medical providers.  Please advise whether Plaintiff will obtain and produce these medical records or sign an authorization to have the records released to Avison Young.

Request for Production No. 15 seeks the production of "YOUR federal and state income tax returns (including all schedules, attachments, W-2 forms, 1099 statements, pay stubs and worksheets) for the years 2015, 2016, 2017, 2018, and 2019."  Plaintiff has agreed to produce her W-2 forms for the years 2015 through 2019.  Plaintiff has refused to produce any other requested documents, objecting that the request is overly broad and not relevant.  Plaintiff states that there is "relevant caselaw (sic)" supporting her objections.  Please direct us to the referenced case law.

PL00131 indicates that a voicemail is attached, but Plaintiff's production did not contain that voicemail file.  Please advise whether and when this file will be produced.

PL00364 is a partially illegible scan of a paper document.  Please advise whether this document can be rescanned and sent to us?

Finally, it is unclear exactly which custodians, forms of media, and accounts Plaintiff searched for responsive DOCUMENTS.  We particularly note that Plaintiff has not produced a single text message.



Noah D. Lebowitz
October 12, 2020
Page 4

Please provide clarification regarding the custodians, forms of media, and accounts Plaintiff searched for responsive DOCUMENTS.

Sincerely,
McDermott Will & Emery LLP

Yesenia Gallegos
Emory D. Moore, Jr.



**<u>EXHIBIT H</u>**



THE LAW OFFICE OF
**NOAH D. LEBOWITZ**

October 20, 2020


Yesenia Gallegos                                          *Transmitted via E-mail*
Emory D. Moore, Jr.
McDermott Will & Emery
2049 Century Park East, Suite 3200
Los Angeles, CA  90067

      RE:    *Miyagishima v. Avison Young*

Dear Yesenia & Emory:

      I write in response to your meet and confer letter of October 12, 2020.  As you are aware, we now have served just shy of 450 pages of documents in response to Avison Young's document request (in contrast to Avison Young's production of a mere 162 pages of documents in response to our earlier-served document requests). As explained below, with the exception of a few items that we will examine more closely in regard to our production, the issues you highlight in your October 12 letter have been resolved.

      To begin, your incredibly overbroad Request No. 1 does not comply with CCP § 2031.030(c)(1) in that it is not reasonably particularized. You have not addressed this code section in any of your correspondence. Please explain how a request seeking "all documents relating to the allegations in the complaint" is in any way particularized. In any event, the documents that have been produced in response to the remaining requests represents the universe of documents in my client's possession related to this case.

      Request No. 2 remains improper, unintelligible and non-compliant with CCP § 2031.030(c)(1). You have not addressed how the request complies with this code section. Nor have you explained how it is that I should be able to read a crystal ball and "know" what Avison Young may or may not argue in the course of some unfiled motion for summary judgment. Nor have you explained how it is that I should be able to know now what items or issues will be presented to a jury at trial. In your October 12 letter you state that we are required to produce any document that we "intend[] to or may submit as evidence in this litigation." Aside from failing to

solve the defects of the original request, this articulation is not what the request seeks. The request seeks documents we intend or may submit at trial or in response to a summary judgment motion. We remain unable to formulate a response to this request.

As with several of your requests, Request No. 3 is missing a key word or phrase. As noted in our original response, we invited you to meet and confer to clarify. Now that you have done so – adding the word "communication" to the request – I can confirm that we have produced all responsive documents.

All documents responsive to Request No. 5 have been produced.

To the extent that your October 12 letter clarifies that Request No. 6 seeks documents reflecting disclosures regarding potential violations of law by Avison Young, those documents have been produced.

In response to Request No. 9, we objected that the documents – unemployment benefits – are not relevant or discoverable because it reflects inadmissible and irrelevant collateral source information. In your October 12 letter, you assert that the information is relevant to my client's mitigation of damages. That is incorrect. As noted in our objection, unemployment benefits are considered collateral source funds and do not subject a damages award to offset or reduction. As such, they are inadmissible and not likely to lead to the discovery of relevant or admissible evidence. If you have contrary authority, I would be happy to consider it.

I will review the documents identified in regard to Request No. 10 and ensure that you have complete production of those documents and any others that may be responsive.

In regard to Request No. 14, my client does not have any medical records in her possession, custody or control. You may proceed with the normal process for seeking medical records that are directly relevant to this case. If the medical providers require authorizations, we will review any proposed narrowly tailored authorization form when such form is provided.

In regard to Request No. 15, you assert we objected that it was "overly broad and not relevant." That is partially accurate. We primarily objected that the request violates my client's right to privacy. You requested caselaw referenced in our objection, and we cite the following as the stating point for any analysis of discoverability of tax returns and personal finances: *Webb v. Standard Oil Co. of Calif.* (1957) 49 Cal. 2d 509, 513-14; *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal. 3d 652, 656. As you note in your October 12 letter, we have produced my client's W-2's for the requested years. She has no 1099's. If you believe additional tax forms or documents are discoverable, please explain which such forms or documents meet that standard.

Yesenia Gallegos
Emory D. Moore, Jr.
October 20, 2020
Page 3

Request No. 17 remains unintelligible as written. However, as is our obligation under the Code, we have interpreted this request to contain the word "communication" – even though it was not part of the request – so as to attempt to make sense of the request. All such documents have been produced.

In regard to your notes related to PL00131 and PL00364, I will review and ensure that all available responsive information is produced in a legible manner.

Your final note asks about my client's search and existence of any text messages. My client searched all files – whether electronic or hard copy – in her possession, custody or control and produced all responsive documents. In regard to text messages, my client has none. I am informed that at one point she did have text messages between herself and Mr. Slonek. However, almost immediately upon her termination, and before she consulted with counsel, my client deleted those messages from her phone. You are free to inquire further at my client's deposition.

I believe the above takes care of all the issues raised in your October 12 letter. I will venture to review the identified documents and ensure full production within the next week. Please let me know if you have any additional concerns or questions.

Very truly yours,

Noah D. Lebowitz

# **EXHIBIT I**

 1            SUPERIOR COURT OF CALIFORNIA

 2              COUNTY OF SAN FRANCISCO

 3

 4   Melinda Miyagishima,

 5           Plaintiff,

 6   v.                      Case No. CGC-20-584874

 7   Avison Young - Northern
     California, LTD., and Does
 8   1 through 10 inclusive,

 9           Defendants.

10   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~

11

12

13         REMOTE VIDEOTAPED DEPOSITION OF

14              MELINDA MIYAGISHIMA

15          (Via Zoom Videoconferencing)

16              February 18, 2021

17             9:04 a.m. - 2:37 p.m.

18

19

20

21

22

23

24   Reported by:  Marceline F. Noble, CSR No. 3024

25   Job No.:  99715

```
 1                    APPEARANCES OF COUNSEL

 2

 3   For Plaintiff MELINDA MIYAGISHIMA:

 4      LAW OFFICE OF NOAH D. LEBOWITZ
        NOAH D. LEBOWITZ, ESQ.
 5      1442A Walnut Street, No. 452
        Berkeley, California 94709
 6      510.883.3977
        510.540.1057  Fax
 7      noah@ndllegal.com

 8
     For Defendant AVISON YOUNG - NORTHERN CALIFORNIA,
 9   LTD.:

10      McDERMOTT WILL & EMERY LLP
        EMORY D. MOORE, JR., ESQ.
11      444 West Lake Street, Suite 4000
        Chicago, Illinois 60606
12      312.372.2000
        312.984.7700  Fax
13      emoore@mwe.com

14

15   ALSO PRESENT:

16      SHIMON GALILEY, Videographer

17

18

19

20

21

22

23

24

25
```

1   conduct, and telling him you could no longer work with

2   Mr. Gonzalez' bullying tactics; correct?

3       A.  Yes.

4       Q.  Did you give your attorney a copy of this text

5   message?

6       A.  He -- no.

7       Q.  Why not?

8       A.  Why not.

9           Oh.  Well, my text message to Mr. Slonek --

10      Q.  Correct.

11      A.  I actually deleted all my text messages with

12  Mr. Slonek the day he terminated me.

13      Q.  Before or after you were terminated, you were

14  notified of your termination?

15      A.  After.

16      Q.  Why did you delete those text messages?

17      A.  I think I was in shock.

18      Q.  Any other reason you deleted those text messages?

19      A.  It was a spur-of-the-moment thing, and I just

20  deleted them.

21      Q.  Okay.  Did Mr. Slonek respond to your text

22  message?

23      A.  Yes, I believe so.

24      Q.  What was his response?

25      A.  Something to the effect of, "I'll take care of

1              MR. MOORE:  Okay.  Thank you.

2              MR. LEBOWITZ:  Mm-hmm.

3    BY MR. MOORE:

4       Q.  Melinda, are these typewritten notes you took

5    regarding Avison Young's termination of your employment?

6       A.  They are.

7       Q.  When did you take these notes?

8       A.  On Friday the 3rd, later in the afternoon, is my

9    recollection.

10      Q.  Is that April 3rd, 2020?

11      A.  Yes.

12      Q.  Why did you take these notes?

13      A.  I wanted to memorialize what happened on the

14   call.

15      Q.  Why did you want to memorialize what happened on

16   the call?

17      A.  Because I felt I'd been retaliated against.

18      Q.  When did you first feel you had been retaliated

19   against?

20      A.  I felt I was being retaliated against going back

21   to after I called HR in 2018, about Mr. Slonek's

22   drinking.

23      Q.  Earlier you stated you deleted your text messages

24   with Mr. Slonek that day.

25          Now you're saying you took notes because you

1    Q.   Sorry.   That's not the question.

2         The question is:   When was the last time you

3    communicated with Ms. Simpson, regarding any of the

4    facts at issue in this lawsuit?

5    A.   I believe on March 3rd of 2020.

6    Q.   Have you ever communicated with Ms. Simpson via

7    text message, regarding the facts at issue in this

8    lawsuit?

9    A.   Yes.   I believe so.

10   Q.   Have you shared those text messages with your

11   attorney?

12   A.   No.

13   Q.   Why not?

14   A.   I didn't think about it.

15   Q.   Do you still have those text messages?

16   A.   I believe so.

17   Q.   Have you communicated with Ms. Simpson from your

18   personal email account, regarding the facts alleged in

19   this lawsuit?

20   A.   I don't recall.   I don't know.

21   Q.   Have you searched your email for communications

22   with Ms. Simpson related to the facts at issue?

23   A.   No.

24   Q.   Why not?

25   A.   I didn't think about doing that.

1      A.   Yes.

2      Q.   Have you communicated with your husband about

3  Mr. Slonek's alcohol consumption?

4      A.   Yes.

5      Q.   Have those communicatons been via text message,

6  social media message or email?

7      A.   I believe all of our discussions have either been

8  on the telephone -- speaking on the telephone or talking

9  privately, in person, together.

10     Q.   So no personal emails.  No emails to your -- your

11  husband about Mr. Slonek's alcohol consumption; correct?

12     A.   I don't recall doing that, no.

13     Q.   Have you searched for emails with Mr. Slonek

14  about -- or with your husband about Mr. Slonek's alcohol

15  consumption?

16     A.   No, because I don't think there are any.

17     Q.   Have you communicated with your husband about any

18  discrimination you believe you experienced at

19  Avison Young via text message, email or social media

20  message?

21     A.   I do not believe so, no.

22          Again, the same answer.  It would be on the phone

23  or in person.

24     Q.   Do you know if Shannon Dupler received spot

25  bonuses after March 2018?

```
 1                    REPORTER'S CERTIFICATION

 2

 3        I, Marceline F. Noble, a Certified Shorthand

 4   Reporter in and for the State of California, do hereby

 5   certify:

 6

 7        That the foregoing proceedings was then taken

 8   before me at the time and place herein set forth; that

 9   the testimony and proceedings were reported

10   stenographically by me and later transcribed into

11   typewriting under my direction; that the foregoing is a

12   true record of the testimony and proceedings taken at

13   that time.

14

15        IN WITNESS WHEREOF, I have subscribed my name this

16   21st day of February, 2021.

17

18

19              Marceline F. Noble

20              Marceline F. Noble, CSR No. 3024

21

22

23

24

25
```

# **EXHIBIT J**

1   Yesenia Gallegos (SBN 231852)
    ygallegos@mwe.com
2   McDermott Will & Emery LLP
    2049 Century Park East, Suite 3200
3   Los Angeles, CA 90067
    Tel: 310.277.4110
4   Facsimile: 310.277.4730

5   Emory D. Moore, Jr. (*pro hac vice application forthcoming*)
    E-mail: emoore@mwe.com
6   McDermott Will & Emery LLP
    444 West Lake Street, Suite 4000
7   Chicago, IL 60606
    Tel: 312.372.2000
8   Facsimile: 312.984.7700

9   Attorneys for Defendant Avison Young – Northern
    California, LTD.

10              **SUPERIOR COURT OF CALIFORNIA**

11              **COUNTY OF SAN FRANCISCO**

12

13  Melinda Miyagishima,                    Case No. CGC-20-584874

14          Plaintiff,                      Complaint Filed:  June 11, 2020
                                            Trial Date:  None Set
15  v.

16  Avison Young – Northern California, LTD.,   **DEFENDANT'S REQUEST FOR**
    and Does 1 through 10 inclusive,            **PRODUCTION OF DOCUMENTS**
17                                              **(SET TWO) TO PLAINTIFF**

           Defendants.
18

19

20      REQUESTING PARTY:      Defendant, Avison Young – Northern California, LTD.

21      RESPONDING PARTY:      Plaintiff, Melinda Miyagishima

22      SET NUMBER:            Two (2)

23          Demand is hereby made by Defendant Avison Young – Northern California, LTD., pursuant

24  to California Code of Civil Procedure Section 2031.010 et. seq. that Plaintiff Melinda Miyagishima

25  produce and permit inspection and copying of the documents and items described below, within

26  thirty (30) days from the date of service hereof.  The place of inspection shall be the offices of

27  McDermott Will & Emery LLP, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067.

28

## **DEFINITIONS**

The following terms shall have the following meanings, unless the context requires otherwise:

1.    The terms "DOCUMENT" OR "DOCUMENTS" as used herein means the original (and any copies which differ in any way from the original) of any written, printed, typed, recorded, or graphic material of every type, form, or description, including but not limited to, letters, correspondence, COMMUNICATIONS, notes of oral COMMUNICATIONS, telegrams, telexes, microfiches, bulletins, circulars, pamphlets, studies, reports, charts, graphs, notices, diaries, summaries, notes, messages, instructions, work assignments, personal notes, e-mails, digital information and files, screen shots, web sites, social media pages, text messages, SMS messages, messaging sent through applications, notebooks, drafts, data sheets, data compilations, statistics, maps, speeches, tapes, tape recordings and transcripts of such tapes and recordings.

2.    The term "COMMUNICATION" or "COMMUNICATIONS" as used herein shall mean and refer to any meeting, conversation (face-to-face, telephonic, or otherwise), discussion, text message, instant message, direct message, private message, social media message, telex message, cable, correspondence, message, tape-recorded message, video message, or other occurrences in which thoughts, opinions, or information are transmitted between or among two or more persons or between or among one or more persons and any electronic, photographic, or mechanical device or devices for receiving, transmitting, or storing data or other information.

3.    The term "RELATING TO" as used herein means concerning, referring to, pertaining to, reflecting, evidencing, describing, memorializing, recording, contradicting or supporting.

4.    The terms "YOU" and "YOUR" as used herein mean Plaintiff MELINDA MIYAGISHIMA.

5.    "AVISON YOUNG" means Defendant AVISON YOUNG – NORTHERN CALIFORNIA, LTD. and each of its employees, officers, directors, independent contractors, partners, shareholders, agents, members, attorneys, predecessors, successors, assignees, subsidiary

DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE) TO PLAINTIFF
CASE NO. CGC-20-584874

or parent corporations, affiliates, and all persons now or previously under their control or acting on their behalf.

6.      The term "COMPLAINT" refers to the Complaint filed by you in San Francisco Superior Court Case No. CGC-20-584874, as well as any subsequent amendments.

7.      The terms "and, "or," and "and/or" shall be interpreted in the broadest sense, so as to be read as "and" and "or."

## DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO. 35

Produce all text messages, emails, social media messages, and any other written communications RELATING TO YOUR separation from AVISON YOUNG or the allegations in the COMPLAINT between YOU and any current or former employee of AVISON YOUNG including, but not limited to: Cheryl Simpson, Kiana Akina, Elisa Soria, Shannon Dupler, Johanna Garcia, Kelly Glass-Ahaesy, and Raquel Ledesma.

### REQUEST FOR PRODUCTION NO. 36

Produce all text messages, emails, social media messages, and any other written communications RELATING TO YOUR separation from AVISON YOUNG or the allegations in the COMPLAINT between YOU and BK Masterson.

### REQUEST FOR PRODUCTION NO. 37

Produce all witness statements that YOU have secured in connection with the COMPLAINT.

Dated:  February 18, 2021                    MCDERMOTT WILL & EMERY LLP

By: _____
    YESENIA GALLEGOS
    Attorneys for Defendant
    Avison Young – Northern California, LTD

## PROOF OF SERVICE

I, Yvonne Rivera, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206. On February 18, 2021, I served a copy of the within document(s):

**DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS
(SET TWO) TO PLAINTIFF**

☒    **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address yrivera@mwe.com to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a agent for delivery.

| | |
|---|---|
| Noah D. Lebowitz, Esq. | Counsel for Plaintiff |
| LAW OFFICE OF NOAH D. LEBOWITZ | Melinda Miyagishima |
| 1442A Walnut Street, No. 452 | |
| Berkeley, CA 94709 | |
| Tel: 510-883-3977 | |
| Fax: 510-540-1057 | |
| Email: noah@ndllegal.com | |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 18, 2021, at Los Angeles, California.

_Yvonne Rivera_
Yvonne Rivera

# EXHIBIT K





Kiana Akina

Cause people are too afraid to say anything

KA    Good for you you did the right thing

Elisa Soria

ES    We really need some girl time!

Well I told them. If I get fired am suing for retaliation. Cause this is fucking messed up for those of us that watch the $$ and don't get paid what we have earned

Elisa Soria

ES    Amen 🙏

Thank you ladies. Will give you the updates

Elisa Soria

Like TA said to me "we are the producers, we pay the salaries".....

ES    ❤️❤️❤️❤️❤️

# EXHIBIT L



**mwe.com**

Yesenia Gallegos
Attorney at Law
ygallegos@mwe.com
+1 310 788 4199

April 6, 2021

**VIA EMAIL: noah@ndllegal.com**
Noah D. Lebowitz, Esq.
Law Office of Noah D. Lebowitz
1442A Walnut Street, No. 452
Berkeley, CA 94709

**Re:    Miyagishima v. Avison Young Northern California, LTD**

Dear Mr. Lebowitz:

As a follow up to our call on April 2, 2021, we write to formally meet and confer regarding the topics below.

**Request to Continue Trial by 30 Days or More**



**Plaintiff Withheld Documents Responsive to Avison Young's First Set of Document Requests; Avison Young is entitled to re-open Plaintiff's Deposition.**





2049 Century Park East Suite 3200   Los Angeles CA 90067-3206   Tel +1 310 277 4110   Fax +1 310 277 4730
*US practice conducted through McDermott Will & Emery LLP.*

Noah D. Lebowitz, Esq.
April 6, 2021
Page 2



McDermott
Will & Emery

Noah D. Lebowitz, Esq.
April 6, 2021
Page 3



**Potential Improper Conduct that May Impact Your ability to serve as Plaintiff's Counsel and/or Ms. Miyagishima's Ability Call Cheryl Simpson at Trial – Request for Notes**

[1] This has become even more important given Ms. Miyagishima's admission at deposition that she intentionally destroyed evidence, including text messages with Slonek the day of her termination, despite having collected documents and planning to file a retaliation lawsuit since September 2018.



Noah D. Lebowitz, Esq.
April 6, 2021
Page 4

**Spoliation**

    Ms. Miyagishima testified at deposition that, the day she was laid off, she deleted each and every text message she had with Mr. Slonek.  She deleted these text messages despite having taken the effort to take notes regarding the facts at issue in this litigation as far back as 2018.  She deleted these text messages despite having forwarded to her personal email account numerous Avison Young emails since 2017, including an email she forwarded to herself to document Mr. Slonek's alleged favoritism.  She deleted these text messages despite having confirmed in text messages with Ms. Simpson (which she did not produced until called out at deposition) that she intended to one day file a retaliation lawsuit related to the March 16, 2018 incident.  Incredibly, all in the same day, she deleted the text messages, but then took down notes of her termination meeting.  Ms. Miyagishima was aware of the potential for litigation when she deleted the text messages.  Please advise as to whether or not Ms. Miyagishima has deleted, destroyed or lost any other potentially relevant documents, communications, or evidence.

Sincerely,

Yesenia Gallegos
McDermott Will & Emery LLP



# **<u>EXHIBIT M</u>**



THE LAW OFFICE OF
**NOAH D. LEBOWITZ**

April 7, 2021

Yesenia Gallegos                                    *Transmitted via E-mail*
Emory D. Moore, Jr.
McDermott Will & Emery
2049 Century Park East, Suite 3200
Los Angeles, CA  90067

      RE:    *Miyagishima v. Avison Young*

Dear Yesenia:

     I read your letter of April 6, 2021 with some interested. I will respond to each of your assertions below. As an initial matter, however, I must ask that you avoid the co-mingling of discovery meet and confer discussions with confidential settlement discussions. I will respond to your settlement proposal via separate, confidential, communication.

**AY's Request to Continue Trial Date**



.

**AY's Fact-less Assertion that Ms. Miyagishima Withheld Documents**

The next section of your letter hurls many accusations at Ms. Miyagishima, accusing her of misconduct. Those accusations ignore significant facts and are based on myriad assumptions. In particular, you accuse Ms. Miyagishima of withholding the documents. Please explain upon what facts you base that accusation as her testimony at deposition is just the opposite. Also, on numerous occasions, you characterize Ms. Miyagishima as planning a retaliation lawsuit. Of course, that is fantasy and not based on any reality or actual facts. Ms. Miyagishima did everything she could to remain actively employed at AY; it was AY, alone, who made the decision to terminate her employment. Moreover, Ms. Miyagishima forthrightly admitted to deleting her messages with Nick Slonek, and explained her reasons for doing so. (Miyagishima Depo 37:4-20; *see also id.* at 82:23-83:25.)

To begin, you fail to describe the relevant sequence of events accurately. During Ms. Miyagishima's deposition, she was asked by Mr. Moore about text messages between herself and AY employees. Ms. Miyagishima forthrightly testified that she had such text messages, but had not searched for them previously. Mr. Moore's questions then morphed into accusations, without first laying any foundation that any such documents would have been responsive to prior document requests. I objected to the questions on that basis. (*See id.* at 112:8-118:1.)

After the deposition concluded, you served AY's Request for Production of Documents, Set Two. Those requests very specifically asked for the text messages at issue here. We provided written responses to those requests on March 22 and produced all responsive documents over the course of the next six days.

So, considering the actual facts and history of this case, your characterization of the recent document production as a "supplemental" production is inaccurate. It was not supplemental. It was directly responsive to AY's Request for Production of Documents, Set Two.

If AY genuinely believed that the documents sought by Request for Production, Set Two actually were responsive to its first set of document requests, you or Mr. Moore would have engaged in a meet and confer process, and, if dissatisfied with the outcome of that process, filed

a motion under CCP § 2031.320 to compel compliance with the prior requests.[2] But, we heard nothing from you about the topic other than the second request for production – no letter, no email, no phone call. We diligently searched for and produced all responsive documents.[3] In fact, we produced many documents that were not directly responsive, just to make sure there was no concern regarding completeness of production.

Finally, you continue to ignore a material fact about all your complaints relating to these communications:  They were all made between Ms. Miyagishima and AY employees. In other words, *AY has had access to the entire universe of these communications at all times*. For instance, any text message(s) to Nick Slonek are still available to, and retrievable by, Mr. Slonek;[4] same goes for Ms. Simpson or Ms. Ledesma, and until recently, Ms. Soria. In fact, AY should have taken active measures to search for and preserve all the documents about which the company now complains were "withheld" by Ms. Miyagishima if the company had acted diligently in response to my May 14, 2020 evidence preservation letter.

Please explain why AY has not preserved the communications at issue from its own custodians (*i.e.,* the other participants in the communications).

**Baseless Allegations of "Improper Conduct"**



---

[2] Note, the CCP's 45-day time limit on motions to compel does not apply to motions to compel compliance.

[3] As I noted to you in my email of March 24, 2021, Ms. Miyagishima was involved in a running accident in the weeks prior to the production (*see* PL 00514-PL 00520), requiring surgery and substantially impeding the speed at which we could gather and organize the documents. We produced each batch of responsive documents as they were ready, completing the production within six days of the response date.

[4] In fact, based on his questioning at deposition (*see* Miyagishima Depo at 36:24-37:3 ["Q. You sent Mr. Slonek a text message around 11:45 am that day, informing him about Mr. Gonzalez' conduct, and telling him you could no longer work with Mr. Gonzalez' bullying tactics; correct? A. Yes."]) it appears that at least Mr. Moore has reviewed some of Mr. Slonek's text messages.

Yesenia Gallegos
April 7, 2021
Page 4



---

  I draw your attention to Rule of Professional Conduct 3.3 "Candor Toward the Tribunal."

Yesenia Gallegos
April 7, 2021
Page 5


As always, I remain available to discuss any matters related to this case at your convenience.


Very truly yours,


Noah D. Lebowitz

# EXHIBIT N



mwe.com

Yesenia Gallegos
Attorney at Law
ygallegos@mwe.com
+1 310 788 4199

April 14, 2021

**VIA EMAIL: noah@ndllegal.com**

Noah D. Lebowitz, Esq.
Law Office of Noah D. Lebowitz
1442A Walnut Street, No. 452
Berkeley, CA 94709

**Re:      Melinda Miyagishima v. Avison Young - Northern California, LTD.**

Dear Mr. Lebowitz:

This letter responds to your correspondence of April 7, regarding several outstanding issues.

A.      Defendant Avison Young's Request that Plaintiff Stipulate to a Trial Continuance





Noah D. Lebowitz, Esq.
April 14, 2021
Page 2



B.   <u>Securing Material Documents from Plaintiff and Re-Opening Her Deposition</u>

Your correspondence of April 7 failed to substantively respond to our request to (i) image all cellular phones utilized by your client since 2017; and (ii) re-open Plaintiff's deposition in light of her recent production of material documents (most recently on March 28) that she withheld for nearly six months ("Material Documents").  To correct Plaintiff's shortcomings in comprehending the scope of documents responsive to AY's first set of RFPs, we expressly identified for you and Plaintiff (at your request) the specific document requests to which Plaintiff should have produced these Material Documents in September 2020, long before her deposition in February 2021, long before AY filed its MSJ in March 2021, and long before depositions of AY's witnesses in March 2021.  Your letter failed to address the substance of the identified requests and why Plaintiff failed to produce the Material Documents in September and October 2020.  Your failure to respond to this inquiry is further proof that we need to take control over Plaintiff's document collection efforts to ensure that these deficiencies do not cost AY and the court the benefit of discovery of relevant evidence.

To be clear, your response to our request is long, but devoid of meaningful substance.  First, you ask us for a basis for the assertion that Plaintiff has withheld documents.  We have provided that explanation to you twice now in very simple terms.  We now offer you the simple bullet points below:

• Aug 2020: AY served its first request of RFPs requesting communications relating to the facts at issue in this litigation;
• Sept-Oct 2020: In her verified responses, Plaintiff stated she would produce the communications, and subsequently produced communications and indicated that her production was complete;
• Feb. 2021: Plaintiff admitted at deposition that she has additional communications that she did not even bother to search for responsive communications;
• March 2021: Plaintiff then produced over 400 pages of communications relating to the facts at issue in this litigation – six months after they should have been produced.

Second, you state that Plaintiff forthrightly admitted to deleting her text messages with Mr. Slonek.  Under the California Code of Civil Procedure section 2031.210(a)(2), Plaintiff was required to inform AY in response to its first set of RFPs that <u>she did not have the ability to comply because she had destroyed the text messages</u>.  Rather than being forthright, however, Plaintiff withheld this information until backed into a corner at deposition months after serving responses to AY's first set of RFPs.  As



Noah D. Lebowitz, Esq.
April 14, 2021
Page 3

Plaintiff's deposition transcript clearly reveals, you then attempted to prevent AY from learning the facts of this deletion during Plaintiff's deposition by making speaking objections and coaching the Plaintiff.

Third, you appear to argue that Plaintiff is absolved from the need for a re-opening of her deposition or forensic review of her cellular phones because she eventually produced text messages between her and the witnesses specifically identified in AY's second set of RFPs. That gives us no relief from the fact that these documents were not produced before Plaintiff's deposition, the fact that you and/or your client have misread and continue to misread AY's first set of RFPs, or the fact that text messages with Mr. Slonek were deleted and require forensic inspection to determine the date of the deletion, the extent of such deletion, the existence of those text messages, and the ability to recover them.



Finally, you argue that these communications are equally available to AY because they are between Plaintiff and AY's employees. Of course, equally available is not a proper discovery response. Further, Plaintiff retained communications, notes and other records dating back to 2018 in an effort to document her workplace issues and possibly in preparation for litigation. AY's preservation requirements arose much later in time. Your letter even argues that

> In fact, based on his questioning at deposition (see Miyagishima Depo at 36:24-37:3 ["Q. You sent Mr. Slonek a text message around 11:45 am that day, informing him about Mr. Gonzalez' conduct, and telling him you could no longer work with Mr. Gonzalez' bullying tactics; correct? A. Yes."]) it appears that at least Mr. Moore has reviewed some of Mr. Slonek's text messages.

This calls into question Plaintiff's willingness to meet her discovery obligations with respect to collecting responsive documents without involvement of us and/or the Court. This questioning is plainly based on notes your client produced regarding her text messages with Mr. Slonek. Indeed, Plaintiff's notes reveal just how egregious it is that Plaintiff selectively chose portions of text message



Noah D. Lebowitz, Esq.
April 14, 2021
Page 4

conversations to record in her notes, while destroying the actual text messages and the other information contained therein.

**Please advise us by the close of business on April 19, whether Plaintiff will agree to: (i) produce her cellular phone(s) (those utilized by her since 2017) for forensic imaging – we would of course agree to all customary parameters to protect her privacy; and (ii) appear for deposition so that we may questions her about her eleventh hour production of Material Documents. The sooner Plaintiff complies, the less of a trial continuance that the parties will be need.**

C.     <u>Pre-Litigation Communications with AY's Operations Manager Cheryl Simpson</u>



**I am hopeful that you will reconsider producing your notes in order to resolve AY's concerns.**

Sincerely,



Yesenia Gallegos

McDermott
Will & Emery

# EXHIBIT O



THE LAW OFFICE OF
**NOAH D. LEBOWITZ**

April 19, 2021


Yesenia Gallegos                                       *Transmitted via E-mail*
Emory D. Moore, Jr.
McDermott Will & Emery
2049 Century Park East, Suite 3200
Los Angeles, CA  90067

      RE:    *Miyagishima v. Avison Young*

Dear Yesenia:

      I write in response to your further meet and confer letter of April 14. Despite its length, your letter raises no new points or issues that have not been addressed in prior correspondence. I will note some continued omissions and continued mis-statements of the record and history of this case below.

**<u>AY's Request to Continue Trial Date</u>**





**AY's Fact-less Assertion that Ms. Miyagishima Withheld Documents**

You spend a great deal of time in your April 14 letter re-stating your position regarding the documents we produced in March. Yet, within that lengthy, accusatory recitation, you continue to fail to address material items. For instance, you have yet to address why it is that you have not been able to retrieve text messages between Ms. Miyagishima and Mr. Slonek via Mr. Slonek's cell phone. You have yet to address what, if any, steps AY took to preserve evidence in response to my May 2020 evidence preservation letter insofar as it relates to any of the issues about which you now complain. You have yet to acknowledge that your Request for Production of Documents, Set Two directly asked for the other text messages, and we produced all responsive documents and even provided documents beyond the scope of the request to ensure completeness.

You have provided no facts to support any claim for need to engage in an invasive forensic examination of Ms. Miyagishima's cell phone. You have engaged in rank speculation that she is withholding further data, but that is based entirely on your interpretation of the sequence of events, which I have corrected multiple times. If you have a factual basis for your conclusion that Ms. Miyagishima has failed to produce all responsive documents, please detail them so I may evaluate your request for a forensic examination.

You further accuse Ms. Miyagishima of not being forthright regarding the text messages between herself and Mr. Slonek, yet you fail to acknowledge I directly informed you of this circumstance in my October 2020 letter to you.



requests

Yesenia Gallegos
April 19, 2021
Page 3



**Baseless Allegations of "Improper Conduct"**



Very truly yours,

Noah D. Lebowitz

# **<u>EXHIBIT P</u>**

| | |
|---|---|
| **From:** | Noah Lebowitz |
| **To:** | Gallegos, Yesenia |
| **Cc:** | Moore, Emory |
| **Subject:** | RE: Miyagishima v Avison Young - Northern California, Ltd. |
| **Date:** | Wednesday, April 21, 2021 7:01:58 PM |
| **Attachments:** | image001.png |

**[ External Email ]**

This occurs to me to be a complete waste of the court's time. If it would completely tie this up, I would be willing to consider producing my client for one additional hour of deposition for questioning based on the documents produced in response to Request for Production No. 35.



THE LAW OFFICE OF
**NOAH D. LEBOWITZ**

Noah D. Lebowitz
1442 A Walnut Street, No. 452
Berkeley, CA 94709
510.883.3977
510.540.1057 (f)
noah@ndllegal.com
www.ndllegal.com

---

**From:** Gallegos, Yesenia <Ygallegos@mwe.com>
**Sent:** Wednesday, April 21, 2021 4:37 PM
**To:** Noah Lebowitz <noah@ndllegal.com>
**Cc:** Moore, Emory <Emoore@mwe.com>
**Subject:** RE: Miyagishima v Avison Young - Northern California, Ltd.

We will move to compel.

YESENIA GALLEGOS
Partner
**McDermott Will & Emery LLP**  2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206
**Tel** +1 310 788 4199   **Email** ygallegos@mwe.com
**Biography** | **Website** | **vCard** | **Twitter** | **LinkedIn**
Access our COVID-19 Resource Center at **www.mwe.com/coronavirus**

**From:** Noah Lebowitz <noah@ndllegal.com>
**Sent:** Wednesday, April 21, 2021 4:37 PM
**To:** Gallegos, Yesenia <Ygallegos@mwe.com>
**Cc:** Moore, Emory <Emoore@mwe.com>
**Subject:** RE: Miyagishima v Avison Young - Northern California, Ltd.

[ External Email ]
As I have stated multiple times, you have articulated no facts to support a departure from the one deposition rule of CCP section 2025.610; her deposition was completed in February.



THE LAW OFFICE OF
**NOAH D. LEBOWITZ**

Noah D. Lebowitz
1442 A Walnut Street, No. 452
Berkeley, CA 94709
510.883.3977
510.540.1057 (f)
noah@ndllegal.com
www.ndllegal.com

---

**From:** Gallegos, Yesenia <Ygallegos@mwe.com>
**Sent:** Wednesday, April 21, 2021 4:33 PM
**To:** Noah Lebowitz <noah@ndllegal.com>
**Cc:** Moore, Emory <Emoore@mwe.com>
**Subject:** RE: Miyagishima v Avison Young - Northern California, Ltd.

Are you refusing to produce Plaintiff Miyagishima for deposition?  Yes or No.

YESENIA GALLEGOS
Partner
**McDermott Will & Emery LLP**  2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206
**Tel** +1 310 788 4199   **Email** ygallegos@mwe.com
**Biography** | **Website** | **vCard** | **Twitter** | **LinkedIn**
Access our COVID-19 Resource Center at **www.mwe.com/coronavirus**

**From:** Noah Lebowitz <noah@ndllegal.com>
**Sent:** Wednesday, April 21, 2021 4:30 PM
**To:** Gallegos, Yesenia <Ygallegos@mwe.com>
**Cc:** Moore, Emory <Emoore@mwe.com>
**Subject:** RE: Miyagishima v Avison Young - Northern California, Ltd.

[ External Email ]
Counsel,

My responses are interlineated below. Hopefully, we can put these issues to bed now, and focus on preparations for trial.

Thank you.



THE LAW OFFICE OF
**NOAH D. LEBOWITZ**

Noah D. Lebowitz
1442 A Walnut Street, No. 452
Berkeley, CA  94709
510.883.3977
510.540.1057 (f)
noah@ndllegal.com
www.ndllegal.com

---

**From:** Gallegos, Yesenia <Ygallegos@mwe.com>
**Sent:** Monday, April 19, 2021 6:10 PM
**To:** Noah Lebowitz <noah@ndllegal.com>
**Cc:** Moore, Emory <Emoore@mwe.com>
**Subject:** RE: Miyagishima v Avison Young - Northern California, Ltd.

This shall respond to your letter of April 19.

1. Defendant Avison Young's (AY) Reasoning for Requesting to Continue the Trial Date Based, In Part, On the Fact That Plaintiff Withheld Documents for Six Months – Producing Them In Late March 2021, Only After Her Deposition of February 2021.





2.  <u>Imaging Plaintiff's Cell Phone to Collect The Communications That She Admittedly Deleted</u>
    - You continue to deflect by claiming AY can and should get the text messages it seeks from Plaintiff's cell phone from others, like Nick Slonek.  Even if Mr. Slonek still had those text messages, Plaintiff cannot evade her statutory obligations under the Discovery Act, including producing responsive documents (and her cellular phone for imaging after she admittedly deleted material text messages), by arguing that AY should get them elsewhere.
    - It is common in employment litigation to image cellular phones, particularly where the plaintiff has deleted material evidence from them.  AY already agreed to limit the scope and time frame of the communications sought from the phone to protect Plaintiff's right to privacy.  Further, AY's forensic consultant will send a forensic kit to Plaintiff's home to avoid in-person contact, and remotely image her phone.

Moreover, AY will pay the cost even though this exercise was necessitated by Plaintiff's decision to delete text messages and withhold others for six months.

- **Unless Plaintiff confirms that she will make the cellular phone that she used in 2019 and 2020 available for imaging by the close of business on April 21, 2021, AY will file a motion to compel and will seek reimbursement of its fees and costs.**

**<u>PLAINTIFF'S RESPONSE:</u>**

You continue to fail to articulate any facts that support any basis for seeking the imaging of my client's cell phone. Your prior communications have contained many assertions, but little fact. Yes, my client deleted her text messages with Nick Slonek. Yes, I told you about it in October 2020. No, you did not do anything about it until now. No, you have not explained how an imaging of my client's cell phone will enable the recovery of deleted text messages. Yes, there exists a less-intrusive means within your control of actually obtaining the desired documents:  Nick Slonek's phone. Because you have not established any factual basis for obtaining an undefined, unlimited, image of my client's phone, we will not agree to such a process.

3. <u>Your Communications with Cheryl Simpson – AY's Operations Manager – of April 2020 (Pre-Litigation).</u>

- ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
- ██████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████████████████████████████████
  ████████

████████████████

████████████████████████████████████
██████████████████████████████████

███████████████████████████████████
███████████████████████████████████
██████████████████████████████████



YESENIA GALLEGOS
Partner
**McDermott Will & Emery LLP**  2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206
**Tel** +1 310 788 4199    **Email** ygallegos@mwe.com
**Biography** | **Website** | **vCard** | **Twitter** | **LinkedIn**
Access our COVID-19 Resource Center at **www.mwe.com/coronavirus**

**From:** Noah Lebowitz <noah@ndllegal.com>
**Sent:** Monday, April 19, 2021 4:41 PM
**To:** Gallegos, Yesenia <Ygallegos@mwe.com>; Moore, Emory <Emoore@mwe.com>
**Subject:** Miyagishima v Avison Young - Northern California, Ltd.

**[ External Email ]**
Counsel,

Please see attached correspondence of today's date.

Thank you.



Noah D. Lebowitz
1442 A Walnut Street, No. 452
Berkeley, CA  94709
510.883.3977
510.540.1057 (f)
noah@ndllegal.com

www.ndllegal.com

*********************************************************************************************************

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.

*********************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT K
## to DAVID deRUBERTIS DECL

1  LYNNE C. HERMLE (STATE BAR NO. 99779)
   JESSICA R. PERRY (STATE BAR NO. 209321)
2  ANJALI PRASAD VADILLO (STATE BAR NO. 318440)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
3  1000 Marsh Road
   Menlo Park, California 94025
4  Telephone:    650-614-7400
   Facsimile:    650-614-7401
5  lchermle@orrick.com
   jperry@orrick.com
6  avadillo@orrick.com

7  Attorneys for Defendant
   CARTA, INC.

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF SAN FRANCISCO

11

12  EMILY KRAMER,                          Case No. CGC-20-585478

13              Plaintiff,                 **<u>DISCOVERY</u>**

14       v.                                **DECLARATION OF ANJALI
                                           VADILLO IN SUPPORT OF**
15  CARTA, INC., ESHARES, INC. (DBA        **DEFENDANT'S MOTION TO COMPEL
    CARTA, INC.), and DOES 1-10, inclusive, DEPOSITION OF PLAINTIFF EMILY**
16                                         **KRAMER AND FOR SANCTIONS**
                Defendants.
17                                         Discovery Referee:  Judge Elizabeth D.
                                                               Laporte
18                                         Hearing Date:   October 28, 2021
                                           Hearing Time:  2:00 p.m.
19

20                                         Complaint Filed: July 21, 2020
                                           Trial Date: December 5, 2022
21

22

23

24

25

26

27

28

---

VADILLO DECLARATION ISO DEFENDANT'S MTC DEPOSITION OF PLAINTIFF EMILY KRAMER AND
FOR SANCTIONS

I, Anjali (Annie) Vadillo, hereby declare:

1.     I am an active member of the State Bar of California and am authorized to practice before this Court. I am an attorney with Orrick, Herrington & Sutcliffe LLP, attorneys of record for Defendant Carta, Inc. in this action. I make this declaration in support of Carta's Motion to Compel the Deposition of Emily Kramer and For Sanctions. The facts set forth in this declaration I know to be true of my own personal knowledge, except where such facts are stated to be based on information and belief, and those facts I believe to be true. If called as a witness, I could and would testify competently to the matters set forth in this declaration.

2.     Plaintiff filed her complaint on July 21, 2020. August 24, Carta noticed Plaintiff's deposition for November 11 and 12, 2020. When Plaintiff objected to the November deposition dates, Carta requested available dates in December. Plaintiff failed to provide any dates, so after repeated requests, Carta re-noticed the deposition for January 21 and 22, 2021. Plaintiff sought again to postpone her deposition and Carta requested available dates in late February or early March. After weeks of stonewalling saying counsel was "checking with Plaintiff," Plaintiff ultimately informed Carta she could not appear for deposition until Carta produced all documents and information Plaintiff unilaterally deemed relevant. Carta informed Plaintiff on December 16, 2020 that it was unwilling to have Plaintiff hold the discovery process hostage by refusing to sit for her deposition. Attached as **Exhibit A** is a true and correct copy of my email correspondence with Plaintiff's counsel regarding this issue.

3.     Before Carta moved to compel Plaintiff's deposition, I am informed and thereon believe that Plaintiff's counsel requested a call with Carta's lead counsel Lynne Hermle on January 11, 2021. I am informed and thereon believe that when lead counsel subsequently spoke, Plaintiff's counsel represented that due to Plaintiff being diagnosed with a medical condition, she could not sit for her deposition until at least August 2021 (over a year after filing her complaint) and her attorneys were not able to communicate with her on a predictable basis. Carta respected Plaintiff's medical condition and did not further request dates. Nevertheless, Plaintiff's counsel continued to send meet and confer letters and pursue their own discovery. For example, Carta received the following from Plaintiff, seeking to compel Carta to engage in extensive,

- 1 -

1  burdensome, expensive discovery: (1) a 62-page meet and confer letter on January 13 regarding

2  Carta's responses to Plaintiff's 140 Requests for Production, demanding a response by January

3  30; (2) further correspondence regarding negotiations about an ESI protocol on January 19; (3) a

4  6-page meet and confer letter on January 26 regarding Carta's responses to Plaintiff's Special

5  Interrogatories, demanding a response by January 30; (4) a list of substantial revisions to Carta's

6  proposed search terms, incorporating the 62-page meet and confer letter, on February 1.

7  Thereafter, Carta received follow-up correspondence from Plaintiff on February 9 asking for a

8  substantive response to the January 13 letter and threatening to move to compel. Again on

9  February 25, Carta received additional follow-up correspondence about Plaintiff's over 65 pages

10 of meet and confer letters. Plaintiff subsequently filed two enormous motions to compel,

11 necessitating over 750 pages of briefing by Carta, on March 16 and March 17, 2021.

12      4.      On September 21, 2021, I accessed Emily Kramer's public Twitter profile,

13 available at https://twitter.com/emilykramer. Attached as **Exhibit B** are true and correct

14 screenshots of Ms. Kramer's Twitter profile that I took on September 21, 2021. The posts in

15 **Exhibit B** are Ms. Kramer's publicly available Twitter posts dated July 1, 2021, July 19, 2021,

16 July 26, 2021, July 28, 2021, and August 3, 2021.

17      5.      I contacted Plaintiff's counsel Sharon Vinick via email on July 21, 2021 and asked

18 for an update about Plaintiff's deposition availability. Ms. Vinick did not respond. I emailed Ms.

19 Vinick again on July 30. Ms. Vinick informed me she would "get back" to me. Ms. Vinick never

20 responded to my email. Attached hereto as **Exhibit C** is a true and correct copy of my email

21 correspondence with Ms. Vinick.

22      6.      On an August 11 call on a separate issue which also included my colleague Nick

23 Weaver, I for the third time asked Plaintiff's counsel Genevieve Guertin for deposition dates for

24 Plaintiff. Ms. Guertin told me she did not have that information, and that she would "pass on the

25 message" to Ms. Vinick. As of the date of filing this Motion, 14 months after filing her lawsuit, I

26 nor anyone at my firm have heard from Plaintiff's counsel about her availability to sit for her

27 deposition.

28

VADILLO DECLARATION ISO DEFENDANT'S MTC DEPOSITION OF PLAINTIFF EMILY KRAMER AND
FOR SANCTIONS

7.     Over the 14 months since Plaintiff filed her lawsuit, Carta has responded to 140 Requests for Production of Documents, 70 Special Interrogatories, Form Interrogatories – Employment Law, Set One, and Form Interrogatories – General, Set One. To date, Carta has produced over 2,300 pages of documents.

8.     I graduated from Vanderbilt University Law School and have been licensed to practice law since 2017.  My hourly rate is $805. Orrick partner Jessica Perry graduated from Santa Clara University Law School and has been licensed to practice law since 2000. Her hourly rate is $1,170.

9.     To date, I spent 4 hours drafting Carta's Motion to Compel Plaintiff's Deposition and the supporting papers. Ms. Perry spent 0.5 hours reviewing and revising the Motion. Thus, Carta has been billed 4.5 for its counsel's work in moving to compel Plaintiff's deposition. I anticipate spending at least 3 hours preparing for drafting the reply briefing, preparing for the hearing and performing other work related to the Motion.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  This declaration is executed on September 22, 2021 in Redwood City, California.

_____

Anjali Vadillo

VADILLO DECLARATION ISO DEFENDANT'S MTC DEPOSITION OF PLAINTIFF EMILY KRAMER AND FOR SANCTIONS

EXHIBIT L
to DAVID deRUBERTIS Decl

1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Steven G. Madison (Bar No. 101006)
2      stevemadison@quinnemanuel.com
      John P. D'Amato (Bar No. 143314)
3      johndamato@quinnemanuel.com
      Robert E. Allen (Bar No. 314120)
4      robertallen@quinnemanuel.com
5   865 S. Figueroa St., 10th Floor
    Los Angeles, California 90017
    Telephone:     (213) 443-3000
6   Facsimile:     (213) 443-3100

7   *Attorneys for Quinn Emanuel Urquhart &*
    *Sullivan, LLP*
8

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/10/2023 8:57 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By N. Alvarez, Deputy Clerk

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                       COUNTY OF LOS ANGELES

11

12   QUINN EMANUEL URQUHART &          Case No.  23STCV19134
     SULLIVAN, LLP,
13
                 Plaintiff,            **COMPLAINT FOR:**
14
         vs.                           1.  **BREACH OF CONTRACT**
15
     COUNTY OF LOS ANGELES; LOS        2.  **SERVICES**
16   ANGELES COUNTY SHERIFF'S              **RENDERED/QUANTUM MERUIT**
     DEPARTMENT; and LOS ANGELES
17   COUNTY SHERIFF ALEX VILLANUEVA,   3.  **PROMISSORY ESTOPPEL**
     in his official capacity,
18                                     4.  **OPEN BOOK ACCOUNT**
                 Defendants.
19                                     **DEMAND FOR JURY TRIAL**

20

21

22

23

24

25

26

27

28

---

COMPLAINT

1    Plaintiff Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") brings this

2  complaint against Defendants the County of Los Angeles (the "County"), the Los Angeles County

3  Sheriff's Department (the "LASD"), and Los Angeles County Sheriff Alex Villanueva (the

4  "Sheriff," and, together with the County and LASD, the "Defendants") as follows:

5                                    **INTRODUCTION**

6    1.    This complaint is brought to collect attorneys' fees and costs owed to Quinn

7  Emanuel by Defendants for legal work Quinn Emanuel indisputably performed on behalf of the

8  Sheriff and LASD in litigation brought by the County against the Sheriff and LASD in *County of*

9  *Los Angeles v. Sheriff Alex v Villanueva, et al.*, Case No. 19STCP00630 (the "*Mandovan* matter").

10  The County, acting through its Board of Supervisors and County Counsel, determined to sue the

11  Sheriff and LASD, declared a conflict between the Board and the Sheriff/LASD pursuant to

12  California Government Code Section 31000.6, which conflict disqualified County Counsel from

13  representing any of its three clients regarding the matter, and authorized the Sheriff to engage

14  counsel to defend the lawsuit.  The Sheriff engaged Quinn Emanuel as authorized, and County

15  Counsel confirmed that Quinn Emanuel had been retained by the Board pursuant to Section

16  31000.6.  That retention was subsequently memorialized in a written engagement agreement

17  between Quinn Emanuel and the Sheriff and LASD.  Quinn Emanuel proceeded to litigate on

18  behalf of the Sheriff and LASD, but Defendants have failed to pay any amount of fees and costs to

19  Quinn Emanuel even though Quinn Emanuel was retained pursuant to the Board's and County

20  Counsel's authorization, and that Quinn Emanuel defended the Sheriff/LASD in the lawsuit filed

21  by the County.

22                               **JURISDICTION AND VENUE**

23    2.    Jurisdiction is proper pursuant to California Constitution Article VI, Section 10 and

24  California Code of Civil Procedure section 410.10.

25    3.    Venue in this Court is proper under California Code of Civil Procedure section 401

26  because the conduct complained of herein occurred in the County of Los Angeles and the

27  Defendants are all located in the County of Los Angeles.

28

**THE PARTIES**

4.      Plaintiff Quinn Emanuel is, and at all relevant times was, a California limited liability partnership engaged in the practice of law.  Quinn Emanuel has maintained, and at all relevant times did maintain, an office located at 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

5.      Defendant the County of Los Angeles is a charter county and a legal subdivision of the State of California, located at 500 West Temple Street, Los Angeles, CA 90012.

6.      Five elected members of the Board of Supervisors comprise the executive, legislative and for some purposes quasi-judicial branch of County government. *See* Cal. Const. Art. 11, § 1(a); Government Code § 23005; Los Angeles County Charter Art. II § 4.  Under State law the Board "directs and controls" litigation in which the County is a party. Government Code § 25203.

7.      For charter counties like Los Angeles, the position of County Counsel is created by County Charter. Cal. Const., Art. 11, § 4(c). County Counsel must provide legal services and opinions to the county and **all** county departments and officers, including the Board of Supervisors, the Sheriff and LASD. Government Code §§ 26520, 27642. County Counsel defends civil actions where the County or any officer is a party in an official capacity. Government Code § 26529(a). When, as here, the interests of one of County Counsel's clients conflicts with another in a matter in which County Counsel has advised both sides, County Counsel is disqualified from representing either side under the California Rules of Professional Conduct.  *See* Government Code § 36000.1; Rule of Professional Conduct 1-7; *Civil Service Commission v. Superior Court (County of San Diego)*, 163 Cal. App. 3d 163, 77-78 (1984); *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, 155 (1981).

8.      The California Constitution requires each county in California to have an independently elected Sheriff. Cal. Const. Art. 11 § 1(b). Under State law, the Sheriff has independent authority to, among other things, preserve the peace, investigate crime and arrest and jail those who commit public offenses. *See* Cal. Gov. Code §§ 26600, 26601, 26602. In furtherance of those duties, the Sheriff has authority to "appoint as many deputies as are necessary

1   for the prompt and faithful discharge of the duties of his office." Cal. Gov. Code §§ 24000, 24101.

2   On investigative, law enforcement functions, the Sheriff does not report to the Board, but rather to

3   the State Attorney General.  The Sheriff was at all relevant times the elected Sheriff of Los

4   Angeles County, overseeing LASD located at Hall of Justice, 211 W. Temple Street, Los Angeles,

5   CA 90012 LASD is the largest sheriff's department in the country, with approximately 9,000

6   sworn Deputies and over 18,000 total employees.

7           9.      Unlike the direct oversight exercised by the Board of Supervisors over most

8   County departments, the Board's authority "shall not be construed to affect the independent and

9   constitutionally and statutorily designated investigative and prosecutorial functions of the

10  sheriff . . . ." Cal. Gov. Code § 25303. Although the Board provides the Sheriff's Department with

11  its budget, it may not direct how that budget may be spent: "The control by a board of supervisors

12  over the manner in which funds allocated to the sheriff and district attorney are to be expended,

13  **including the assignment of personnel, would impair the exercise of those officers of their**

14  **constitutionally and statutorily defined powers**. Such supervisory control would directly

15  conflict with the admonition that '**the board has no power to perform county officers'**

16  **statutory duties for them or direct the manner in which those duties are performed.**"  77 Cal.

17  Op. Att'y Gen. 82 (1994) (*quoting Hicks v. Board of Supervisors* 69 Cal. App. 3d 228 (1977)

18  (emphasis added). "Accordingly, it is concluded that a county board of supervisors is not

19  authorized to govern the actions of a sheriff or district attorney concerning the manner in which

20  their respective budget allotments are expended or the manner in which personnel are assigned."

21  *Id.*

22                              **FACTUAL ALLEGATIONS**

23      **A.      The County Expressly Authorizes The Sheriff To Select Independent Counsel.**

24          10.     On Thursday, February 28, 2019, County Counsel sent the Sheriff a letter, stating

25  that a conflict had arisen between him and the Board regarding the Sheriff's decision to rehire a

26  Deputy Sheriff who had been previously terminated, Deputy Mandoyan.  County Counsel, who

27  had advised both the Board and the Sheriff regarding the facts underlying the dispute, appeared to

28

1  realize it had an actual conflict of interest once the Board, unbeknownst to the Sheriff, decided to

2  sue the Sheriff and LASD regarding the *Mandoyan* matter.

3          11.      In the letter, the Board (through County Counsel) expressly offered—as they were

4  required pursuant to California Government Code section 31000.6(a), which the letter cites—to

5  provide the Sheriff with independent legal counsel "on the question of whether under the Los

6  Angeles County Charter, [he] had the authority to settle the civil actions involving Mr. Mandoyan

7  absent the approval of County Counsel and the Board of Supervisors." Exhibit A.  However,

8  rather than retain counsel on the Sheriff's behalf, County Counsel left the selection of counsel to

9  the Sheriff, and the letter expressly authorizes the Sheriff himself to select independent counsel for

10  the *Mandoyan* matter.  *Id.* ("You may select which independent counsel to represent you in this

11  matter.") *Id.*  The letter imposes no restrictions on the selection of counsel for the *Mandoyan*

12  matter, but notes that the Board retained discretion "to pay such compensation as it deems just and

13  proper for [those] services." *Id.*

14        **B.**      **The Sheriff Retains Quinn Emanuel As Independent Counsel For The**
15                ***Mandoyan* Matter.**

16          12.      A few days later, on or about March 3, 2019, the Sheriff—in reliance on the

17  February 28 letter and the express authorization therein to select independent counsel—engaged

18  Quinn Emanuel as counsel.

19          13.      That same weekend, on the evening of Sunday, March 3, before the Sheriff could

20  have had any meaningful opportunity to prepare a defense, the County's outside counsel, Miller

21  Barondess, emailed the Sheriff to inform him that the County was suing him and LASD the next

22  day, and would appear in court seeking a temporary restraining order the day after that.  Shortly

23  after midnight on March 4, the County sued the Sheriff and LASD in Los Angeles County

24  Superior Court.[1]

25

26  _____

27  [1]  Regrettably, notwithstanding its conflict of interest arising out of its joint representation of the
County and the Sheriff and LASD regarding the *Mandoyan* matter, County Counsel improperly
continued to advise the Board regarding the dispute; in so acting County Counsel was advising
one client adverse to the interests of its other clients whom County Counsel had represented
28  regarding the subject matter of the lawsuit.

14.     Quinn Emanuel's representation is memorialized in a written agreement dated March 28, 2019 and effective as of the first day Quinn Emanuel began providing legal services to the Sheriff and LASD in the *Mandoyan* matter: March 4, 2019 (the "Engagement Agreement"). The Engagement Agreement is signed by the Sheriff on behalf of himself, in his official capacity, and LASD. Exhibit B. Consistent with the terms of the February 28 letter, the scope of the Quinn Emanuel's engagement covers the County's lawsuit and matters directly related to defense of the lawsuit. It includes anticipated billing rates ranging from $695 per hour to $1400 per hour, but acknowledges (consistent with the February 28 letter) that the Board has agreed to pay an unspecified amount of the Sheriff and LASD's legal fees and costs. It also includes an arbitration provision, requiring that any dispute as to attorneys' fees and/or costs be resolved via arbitration in Los Angeles, with JAMS arbitrators in accordance with the JAMS Streamlined Arbitration Rules and Procedures.

**C.     Quinn Emanuel Commences Its Representation Of The Sheriff And LASD, Without Objection By The County, The Board Or County Counsel.**

15.     The County's immediate request for emergency relief via a TRO hearing went forward on March 6, 2019. Quinn Emanuel appeared on behalf of the Sheriff and LASD, who were both named by the County and who both were the subject of the TRO application. The County, eager to obtain its emergency relief and recognizing that the Sheriff required counsel to proceed, raised no objection to Quinn Emanuel's appearance or representation of the Sheriff and LASD at that hearing; to the contrary, the County announced "Ready" on its TRO Application. Numerous representatives of the County Counsel's office, including the County Counsel herself, who were also present, raised no objection to Quinn Emanuel's appearance or representation of the Sheriff and LASD. Quinn Emanuel filed papers in opposition and the matter was vigorously argued. At the conclusion of the hearing, the Sheriff and LASD prevailed, and the County's TRO application was denied by the Court. At no time during the hearing did anyone from the County, County Counsel's office, or the County's outside counsel at Miller Barondess suggest that any further action—such as a contract with the Board—was required for Quinn Emanuel to lawfully represent the Sheriff and LASD in the *Mandoyan* matter.

16.     Over the next month, the parties and their respective outside counsel, Miller Barondess and Quinn Emanuel, vigorously litigated the case.  All papers served and correspondence sent by the County were directed to Quinn Emanuel as counsel for the Sheriff and LASD, and neither County Counsel, nor Miller Barondess raised any objection to Quinn Emanuel's representation of the Sheriff and LASD—nor insisted that a written agreement between Quinn Emanuel and the County was required to represent the Sheriff and LASD or to be paid for that representation.  All proofs of service filed with the Court by the County attested that Quinn Emanuel was counsel for the Sheriff and LASD.  Neither the County, County Counsel, nor Miller Barondess raised any objection to Quinn Emanuel's representation of the Sheriff and LASD—nor insisted that a written agreement between Quinn Emanuel and the County was required to represent the Sheriff and LASD or to be paid for that representation.

**D.      County Counsel Belatedly Demands That Quinn Emanuel Contract With County Counsel To Be Paid For Its Representation Of The Sheriff And LASD.**

17.     After the County's initial ambush tactic failed and the case had been ongoing for nearly a full month, and notwithstanding a) County Counsel's conflict of interest, b) the February 28 letter authorizing the Sheriff to engage independent counsel, c) the allegations of the County's lawsuit, and d) the litigation activity that had already occurred without objection, County Counsel wrote to Quinn Emanuel on March 29, 2019, demanding—for the first time—that Quinn Emanuel enter into a written contract with County Counsel to be paid.

18.     Notably, County Counsel's March 29, 2019 letter to Quinn Emanuel, written on County Counsel letterhead and signed by Thomas J. Faughnan, Senior Assistant County Counsel, does not dispute that Quinn Emanuel was validly retained (when selected by the Sheriff) to represent the Sheriff in connection with the *Mandoyan* matter.  To the contrary, County Counsel confirmed Quinn Emanuel's representation by the Board.  Mr. Faughnan wrote, "As you know, *you were retained under Government Code section 31000.6(a), which authorizes the Board of Supervisors to employ legal counsel to assist the Sheriff in any case where the County Counsel would have a conflict of interest*."  Exhibit C (emphasis added).  Mr. Faughnan then identified the

1    hourly rate approved by the County before providing billing requirements that he asserted Quinn

2    Emanuel must agree to before it could remit invoices for payment.

3         19.    The County thus threatened to withhold payment from its adversaries' legal counsel

4    unless and until Quinn Emanuel agreed to unreasonable and unacceptable terms unilaterally

5    imposed by the County.  First, County Counsel asserted that Quinn Emanuel could only represent

6    the Sheriff, not LASD, even though the County had itself named LASD as a defendant, sought a

7    TRO and preliminary injunction as to LASD, and had not previously objected to the fact or scope

8    of representation by Quinn Emanuel.  Second, County Counsel dictated that the Sheriff could only

9    have counsel for one issue out of several raised in the lawsuit, and only on two out of the County's

10   three causes of action.  Third, County Counsel was unequivocal that under no circumstances

11   would the Sheriff ***ever*** be reimbursed for legal fees and costs incurred prior to Quinn Emanuel

12   entering into a contract ***with conflicted County Counsel***, meaning that work performed for the

13   first month, and continuing indefinitely thereafter, defending the County's emergency TRO

14   application, preparing a response to the Petition/Complaint, propounding, and meeting and

15   conferring about discovery, etc. would be uncompensated.  Fourth, the proposed agreement fixed

16   the hourly rate for all partners and associates at a blended rate of $495 per hour—well below the

17   rates included in the Engagement Agreement.[2]  Fifth and finally, the County insisted that Quinn

18   Emanuel submit invoices directly to conflicted County Counsel for review, despite the clearly-

19   privileged nature of the invoices, which included a description of the specific services rendered

20   and hours worked.

21        20.    On April 16, 2019, Quinn Emanuel rejected the terms in the proposed agreement

22   and explained that the Sheriff had already engaged counsel pursuant to his express authorization in

23   the February 28 letter, an engagement agreement had been entered into with the clients (the Sheriff

24   and LASD), and that County Counsel was conflicted and so under the Rules of Professional

25

26   [2]   After initially refusing to provide information regarding the hourly rates paid to its own
     attorneys on the specious claim that hourly rates were "privileged," the County ultimately
27   admitted that the $495 hourly rate was the rate Miller Barondess received.  Plaintiffs never
     confirmed the hourly rate paid to OMM, which Quinn Emanuel understands exceeded the hourly
28   rate paid to Miller Barondess.

1   Conduct could have no involvement whatsoever in the matter.  The County Counsel's office

2   appeared to accede to these (correct) positions, as it never responded.

3       21.    Quinn Emanuel continued to litigate the matter with Miller Barondess, who had not

4   objected to Quinn Emanuel acting on all issues and claims on behalf of the Sheriff and LASD, and

5   who in fact repeatedly continued to acknowledge Quinn Emanuel's representation of both

6   defendants on all issues in the case the County had filed against them.

7       **E.**    **O'Melveny & Myers Objects To Quinn Emanuel's Representation Of The Sheriff And LASD.**

8       22.    Notwithstanding County Counsel's clear acknowledgment that Quinn Emanuel had

9   been retained by the Board pursuant to Section 31000.6 and the months that Quinn Emanuel had

10  spent litigating on behalf of the Sheriff and LASD—without objection—on May 31, 2019, another

11  outside law firm, O'Melveny & Myers ("OMM"), a global "big law" law firm, wrote Quinn

12  Emanuel stating that it too was representing the County regarding the dispute, and asserting—for

13  the first time—that Quinn Emanuel could not represent *either* the Sheriff or LASD at all.

14      23.    Incredibly, OMM further asserted that LASD could not legally be sued (even

15  though OMM's client, the County, had sued LASD and averred to the Court that it ***could*** be sued),

16  because it has no separate legal personality from the County and is controlled by the Board.  When

17  these assertions were shown to contradict the specific allegations of the lawsuit and state law,

18  OMM responded that Quinn Emanuel should have demurred to the County's Complaint, while

19  maintaining that Quinn Emanuel could not represent LASD.  OMM also flatly refused to dismiss

20  LASD, despite the assertion that it lacked a separate legal personality.

21      24.    In an effort to negotiate in good faith a potential agreement with the County, Quinn

22  Emanuel requested information regarding the hourly rates the Board had agreed to pay Miller

23  Barondess or OMM (or another global law firm, Latham & Watkins, who also represented the

24  Board in this dispute), or the total fees and costs expended by the County in its case against the

25  Sheriff/LASD.  County Counsel and OMM flatly refused to provide this information, claiming

26  such information was "privileged," notwithstanding that an attorney's *hourly rate* (as opposed to,

27

28

1    for example, the number of hours worked) cannot possibly reveal the substance of any attorney-

2    client privileged communications or information, or any legal strategy.

3    **F.      Quinn Emanuel Seeks A Declaration Of Conflict And Confirmation Of Selection Of Counsel.**

4

5    25.      Quinn Emanuel subsequently filed an *ex parte* application, pursuant to Government

Code Section 31000.6, seeking a declaration that a conflict existed between the Board and LASD

6    and that Quinn Emanuel be confirmed as counsel.  On July 9, 2019, the Court declined to grant the

7    application because (1) Government Code Section 31000.6 does not allow for the Court to make a

8    finding of a conflict between the Board and LASD; and (2) the Court was not asked to determine

9    whether a conflict existed between the Board and Sheriff such that an ethical wall could not be

10   established, as required by Section 31000.6.  The Court noted that the Board concurred that a

11   conflict existed between the Board and Sheriff under Section 31000.6.  The Court made no ruling

12   whatsoever regarding the validity or enforceability of the Engagement Agreement.

13   **G.      The County's Attempt To Disqualify Quinn Emanuel Fails.**

14

15   26.      On August 22, 2019, the County filed its own *ex parte* application, requesting that

the Presiding Judge remove Quinn Emanuel as counsel of record in the *Mandoyan* matter.  In its

16   September 19, 2019 order, the Court flatly rejected that request.

17   27.      Unfortunately, despite the Court's nudging the parties to enter into a contract for

18   payment, the County refused to pull back from its untenable demands, including its position that

19   Quinn Emanuel never receive a single cent for work rendered prior to execution of any agreement

20   with the Board,[3] and no additional agreement was reached.

21

22

23

24

---

25   [3]  The County's consistent refusal to pay Quinn Emanuel for any work rendered prior to the
     execution of a contract with County Counsel was even at odds with representations made by
26   OMM to the Presiding Judge, who agreed that such a position was not tenable.  Despite
     representing to the Court that Quinn Emanuel could be paid for prior work if it signed a contract
27   with the County and that Mr. Faughnan would be walled off from the rest of the County Counsel's
     office, OMM insisted that Quinn Emanuel sign the same March 29, 2019 contract that provided
28   for neither.

**H.      Quinn Emanuel Substitutes Out Of The Case And Requests Payment For Services Provided To The Sheriff And LASD, Which The County Refuses.**

28.      Quinn Emanuel substituted out of the case in January 2020.  At that time, Plaintiffs had made no payment whatsoever of attorneys' fees or costs despite their legal obligation to employ counsel for the Sheriff, their delegation of authority to the Sheriff to select his own counsel, and the undisputed fact of Quinn Emanuel's representation of the Sheriff.

29.      One payment of several invoices for the first few months of legal services was approved internally by the County, and a County check was prepared in payment thereof in the amount of $280,075.94, but counsel apparently interceded with the auditor-controller on behalf of the Board and blocked the delivery of the payment to Quinn Emanuel.  Plaintiff Quinn Emanuel billed and is owed a sum according to proof at hearing in unpaid attorneys' fees and costs defending the Sheriff and LASD.

30.      In December 2020 and January 2021, Quinn Emanuel submitted to the attorney at County Counsel responsible for paying Quinn Emanuel an overview of the work performed on behalf of the Sheriff in order to finally be paid for its work.  In a January 11, 2021 letter from OMM, the County refused to approve the invoices for payment.

31.      On March 2, 2021, Quinn Emanuel served each of the Defendants with a Notice of Client's Right to Fee Arbitration identifying the outstanding balance for fees and/or costs for professional services charged in the *Mandoyan* matter.

32.      To date, Defendants have never paid Quinn Emanuel for any of the legal services provided in the *Mandoyan* matter, nor have Defendants reimbursed Quinn Emanuel for any fees or costs incurred by Quinn Emanuel arising out of its representation of the Sheriff and LASD in that matter.

## FIRST CAUSE OF ACTION

### Breach of Contract

33.      Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 to 32 as if set forth fully herein.

34.     As set forth above, Quinn Emanuel was retained on an emergency basis to represent the Sheriff and LASD at the hearing on the County's emergency request for a TRO mere days after the Sheriff was informed he required counsel.  Thereafter, Quinn Emanuel and the Sheriff and LASD negotiated a written Engagement Agreement (Exhibit B) to memorialize and record the terms of Quinn Emanuel's engagement, consistent with the terms of the Sheriff's express authorization in the February 28 letter (Exhibit A).  The Engagement Agreement was dated March 28, 2019 and effective retroactive to the first date upon which Quinn Emanuel provided legal services to the Sheriff and LASD in the *Mandoyan* matter:  March 4, 2019.  The Engagement Agreement was signed by both Quinn Emanuel and the Sheriff on behalf of himself and LASD.

35.     Quinn Emanuel has performed its obligations under the Engagement Agreement by providing legal services to the Sheriff and LASD in connection with the County litigation.

36.     Defendants have breached the Engagement Agreement by failing to fully pay Quinn Emanuel's legal fees and costs incurred on their behalf in connection with the County litigation.  Defendants' failure to pay Quinn Emanuel is a material breach of the Agreement.

37.     As a direct and proximate cause of Defendants' breach, Quinn Emanuel has been damaged in an amount according to proof, plus interest and further fees thereon.  The exact amount of Quinn Emanuel's damages will be proven at the hearing herein.

## SECOND CAUSE OF ACTION

### Services Rendered / Quantum Meruit

38.     Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 to 37 as if set forth fully herein.

39.     Quinn Emanuel performed legal services and incurred costs on behalf of the Sheriff and LASD, at Defendants' request, in good faith.  Defendants' request was legally authorized and effective to bind Defendants.

40.     Defendants accepted the legal services provided by Quinn Emanuel and directly benefitted as a result.  Defendants were aware that Quinn Emanuel's legal services were not being rendered gratuitously, as indicated by the February 28 letter (Exhibit A), the Engagement

1 | Agreement (Exhibit B), Quinn Emanuel's invoices, and the approval of several invoices in the

2 | amount billed and the preparation of a check payable to Quinn Emanuel therefor.

3 |     41.    Quinn Emanuel has requested payment from Defendants for the reasonable value of

4 | its legal services and costs.  However, Defendants have refused, and continue to refuse, to pay

5 | Quinn Emanuel for the reasonable amount of its legal services and costs incurred defending the

6 | Sheriff and LASD against the County's lawsuit.

7 |     42.    Quinn Emanuel has requested payment from Defendants for the reasonable value of

8 | its legal services and costs.  However, as a direct and proximate result of Defendants' failure to

9 | pay Quinn Emanuel, Quinn Emanuel is owed the reasonable value of its legal services, plus

10 | interest and further fees thereon.  The exact amount of Quinn Emanuel's damages will be proven

11 | at the hearing herein.

12 | **THIRD CAUSE OF ACTION**

13 | **Promissory Estoppel**

14 |     43.    Plaintiff incorporates by reference each and every allegation contained in

15 | paragraphs 1 to 42 as if set forth fully herein.

16 |     44.    The February 28 letter is a clear and unambiguous promise by the County (through

17 | County Counsel) authorizing the Sheriff to engage conflict counsel regarding the dispute between

18 | the Board and the Sheriff; Quinn Emanuel reasonably relied on the February 28 letter in

19 | representing the Sheriff and appearing on his behalf, including on an emergency basis at the TRO

20 | hearing.  Quinn Emanuel's reliance on the February 28 letter was foreseeable and known to the

21 | County from March 6, 2019 forward, as Quinn Emanuel had by that time appeared as counsel for

22 | the Sheriff and LASD.

23 |     45.    Quinn Emanuel has been damaged by the promises contained in the February 28

24 | letter, and its reliance thereon, in the amount of attorneys' fees and costs incurred in representing

25 | the Sheriff and LASD in the lawsuit filed by the County.

26

27

28

**FOURTH CAUSE OF ACTION**

**Open Book Account**

46.   Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 to 45 as if set forth fully herein.

47.   Beginning in or about March 4, 2019, Quinn Emanuel represented Defendants the Sheriff and LASD as their legal counsel in the *Mandoyan* Matter and Underlying Case and performed legal services in connection therewith, thereby creating an attorney-client relationship.

48.   In connection with the Representation, Quinn Emanuel sent the Sheriff and LASD the Invoices, detailing the legal fees and costs incurred on their behalf in the Underlying Case.

49.   Beginning in or about June 2019, Defendants became indebted to Quinn Emanuel on an open book account for money due, owing and unpaid to Quinn Emanuel for legal services provided by Quinn Emanuel to, and for the benefit of, Defendants.

50.   Defendants' indebtedness is based on an account kept by Quinn Emanuel in a reasonably permanent manner in Los Angeles, California, showing the debits and credits between Quinn Emanuel and Defendants arising from Quinn Emanuel's work in connection with the Underlying Case.  This account was created, and is kept, in the ordinary course of Quinn Emanuel's business.

51.   There is now due, owed and unpaid from Defendants to Quinn Emanuel, as reflected by the account kept by Quinn Emanuel, a sum that will be proven at the hearing herein, plus interest and further fees thereon.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff Quinn Emanuel Urquhart & Sullivan, LLP prays for relief as follows:

1.   Compensatory damages in an amount to be established by proof;

2.   Interest, including but not limited to pre-judgment interest, at the legal rate; and

3.   For attorneys' fees, costs of suit, and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

DATED:  August 10, 2023                    QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP


By _____
    John P. D'Amato
    Attorneys for QUINN EMANUEL URQUHART
    & SULLIVAN, LLP

## INDEX OF EXHIBITS

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| A | 2019.02.28 Letter from M. Wickham to A. Villanueva re Conflict Counsel | 16-17 |
| B | 2019.03.28 Retainer Agreement Between Quinn Emanuel and the Sheriff and LASD | 18-47 |
| C | 2019.03.29 Proposed Retainer Agreement from T. Faughnan to Quinn Emanuel | 48-62 |

# Exhibit



# COUNTY OF LOS ANGELES
## OFFICE OF THE COUNTY COUNSEL

648 KENNETH HAHN HALL OF ADMINISTRATION
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012-2713

TELEPHONE
(213) 974-1801
FACSIMILE
(213) 626-7446
TDD
(213) 633-0901
E-MAIL
mwickham@counsel.lacounty.gov

MARY C. WICKHAM
County Counsel

February 28, 2019

Via Messenger and
Acknowledgement of Receipt

The Honorable Alex Villanueva
Sheriff, Los Angeles County
211 West Temple Street, 8th Floor
Los Angeles, California 90012

Re:    **Conflict of Interest Regarding Mr. Caren Mandoyan**

Dear Sheriff Villanueva:

This letter shall serve as notice that the Los Angeles County Board of Supervisors has agreed to offer you conflict counsel on the question of whether under the Los Angeles County Charter you had the authority to settle the civil actions involving Mr. Mandoyan absent the approval of County Counsel and the Board of Supervisors.

Accordingly, pursuant to California Government Code section 31000.6(a), the Board of Supervisors will provide you with independent legal counsel for the *sole issue* stated above. To be clear, the Board of Supervisors has not authorized you to use independent counsel for any other issue. *The scope of independent counsel's representation is limited to this specific matter.*

You may select which independent counsel to represent you in this matter. However, please note that the Board of Supervisors has discretion to pay such compensation as it deems just and proper for these services. (Government Code § 31000).

If you have any questions regarding the above, please contact my office and I would be happy to discuss further.

Very truly yours,

MARY C. WICKHAM
County Counsel

MCW:mag

c:    Honorable Board of Supervisors
      Sachi A. Hamai, Chief Executive Officer
      John Naimo, Auditor-Controller

Exhibit A - Page 17

HOA.102479957.1

# Exhibit B

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

<div align="right">

WRITER'S DIRECT DIAL NO.
**(213) 443-3150**

WRITER'S EMAIL ADDRESS
**stevemadison@quinnemanuel.com**

</div>

March 28, 2019

<u>STRICTLY CONFIDENTIAL -- ATTORNEY-CLIENT</u>
<u>PRIVILEGED MATERIAL</u>
<u>VIA EMAIL</u>

Hon. Alex Villanueva
Los Angeles County Sheriff
Los Angeles County Sheriff's Department
Hall of Justice
211 W. Temple Street
Los Angeles, CA 90012

Re:     <u>County of Los Angeles v. Alex Villanueva, et al.</u>

Dear Sheriff Villanueva:

We are pleased to confirm your engagement of Quinn Emanuel Urquhart & Sullivan, LLP
("QEU&S") as counsel to represent both **you** and the **Los Angeles County Sheriff's
Department** (henceforth, in this letter, for the sake of brevity and convenience, both you and the
Los Angeles Sheriff's Department ("Sheriff's Department") are referred to as "LASD") in
connection with the civil lawsuit entitled *County of Los Angeles v. Alex Villanueva, Caren Carl
Mandoyan, and Los Angeles County Sheriff's Department, et al.*, Case No. 19STCP00630 ("the
lawsuit"). The purpose of this letter is to confirm the terms and conditions upon which QEU&S
will provide legal services to LASD in connection with the lawsuit (such provision of legal
services henceforth will be referred to as "the Engagement"). We believe that a mutual
understanding of these terms and conditions at the outset is fundamental to establishing a good
working relationship. In this engagement letter, we sometimes refer to you and LASD as "you"
or "your" and to QEU&S as "we," "our" or "us."

*Client*

Our engagement is on behalf of LASD (meaning both you in your capacity as Sheriff of Los
Angeles County in the above-titled lawsuit and the Sheriff's Department) and no one else. In
representing LASD, save as set forth below in connection with joint representation of both you

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES · NEW YORK · SAN FRANCISCO · SILICON VALLEY · CHICAGO · WASHINGTON, DC · HOUSTON · SEATTLE · BOSTON · SALT LAKE CITY
LONDON · TOKYO · MANNHEIM · HAMBURG · PARIS · MUNICH · SYDNEY · HONG KONG · BRUSSELS · ZURICH · SHANGHAI · PERTH · STUTTGART

00811-99578/10745555.4

and the Sheriff's Department, we will not be representing any other officers, employees, or other persons affiliated with LASD in their individual capacities. If any such individuals believe that they might require counsel, we would be happy to discuss with them whether we might be able to represent them as well, but any such representation would need to be covered by a separate engagement letter, and would depend on a review by us and disclosure to all concerned of the conflicts of interest that would arise in connection with any such concurrent representation, and on appropriate consents being obtained from LASD and from those seeking such additional representation.

### *Scope of Engagement*

You have engaged QEU&S to represent you in connection with the Engagement. Our scope of work in the Engagement will entail defending LASD in the lawsuit and matters directly related to such defense of the lawsuit, such as filing any cross-claim in the lawsuit or responding to inquiries from the Office of Inspector General concerning the matters involved in the lawsuit. QEU&S's services will be limited to the representation of LASD in the Engagement. Our services will not extend to other business, personal or legal affairs of LASD, or to any other aspect of LASD's activities, except as described above in this section. Our representation will conclude with the settlement of the lawsuit or entry of an award or judgment in the lawsuit or for any of the reasons stated in the Date of Commencement and Termination of the Engagement section of this letter. Our engagement does not include the defense or prosecution of an appeal. If an appeal is appropriate and if we agree to represent LASD in the appeal, we reserve the right to enter into a separate agreement for that representation. QEU&S's receipt or use of confidential or other information from LASD or others in the course of this representation does not mean that QEU&S will render any other advice or services either to LASD or any other person or entity. Similarly, LASD will not look to or rely upon QEU&S for any investment, accounting, financial or other non-legal advice, including without limitation any advice regarding the character or credit of any person with whom LASD may be dealing.

### *Insurance Coverage and Claims*

LASD understands and agrees that QEU&S is not being engaged to advise regarding the existence of any insurance coverage in connection with the circumstances of the Engagement or to advise or assist in the formulation or submission of any insurance claim in connection with the Engagement. If LASD has not done so already, LASD should consider tendering this entire matter to any entity that provides any insurance coverage or indemnification or reimbursement of expenses in defending against lawsuits, such as the Office of County Counsel or County Board of Supervisors in order to determine whether there is insurance coverage or right to indemnification or reimbursement of expenses, including attorney's fees and costs, for any of the claims asserted and the entirety of expenses that might be incurred in defending against the lawsuit.

### *Responsible Persons – Communications Between QEU&S and LASD*

We will keep LASD regularly and currently informed of the status of the Engagement and will consult with you whenever appropriate. Within QEU&S, I will be primarily responsible for the Engagement and will be actively involved in the preparation of the case and any trial. My office

telephone number and e-mail address are **(213) 443-3150 and stevemadison@quinnemanuel.com**. In the event that you need to reach me and I am unavailable, please leave a voicemail message for me. It is my policy that all calls will be returned promptly and, in any event, no later than within one business day of receipt of the call; if you have not received a return call within that time, please call again. Also, should you have an urgent need to reach me, my cell phone number is 213-880-1131. In the event of an emergency, please call my assistant, Vanessa Velez at 213-443-3131, and she will endeavor to reach me as soon as practicable thereafter.

We currently anticipate that John Gordon and Scott Mills also will be working with me on the Engagement, but we may change the staffing as the need arises. Their office telephone numbers and e-mail address are johngordon@quinnemanuel.com / 213-443-3613 and scottmills@quinnemanuel.com / 213-443-3636. John Gordon's cell phone number is 626-818-6504. I will of course seek to staff this Engagement in a manner that I think will be the most effective and efficient. I will be happy to discuss with you any staffing issues or concerns you may have at any time.

### *Protection of Client Confidences – High Tech Communication Devices*

We are always mindful of our central obligation to preserve the precious trust which our clients repose in us--their secrets and confidences. We take this duty very seriously and, except to the extent permitted by the applicable rules of professional conduct, we will not disclose any confidential information of yours to any other client or person. Similarly, we cannot disclose to you the confidences of any other client, even when such information relates to matters that might affect you.

In order to meet our obligation to preserve your confidences, it is important that we agree from the outset what kinds of communications technology we will employ in the course of this Engagement. Unless you specifically direct us to the contrary, for purposes of this Engagement, we agree that it is appropriate for us to use fax machines and e-mail in the course of the Engagement without any encryption or other special protections. Please notify me if you have any other requests or requirements in connection with the methods of telecommunication relating to the Engagement.

### *LASD's Designee to Receive Communications*

We understand that you have designated Lt. Roel Garcia as the person who is primarily responsible for managing the Engagement within LASD and that he is authorized to direct our activities and deal with us on any issues relating to the Engagement, including billing. Unless otherwise directed by LASD, we shall fulfill our obligation to LASD to keep LASD informed as to the progress of the Engagement by communicating with Lt. Garcia and by keeping him so informed, and it shall be the obligation of Lt. Garcia to communicate with all others within LASD regarding the progress of the Engagement.

### *Self-Representation*

QEU&S has designated one of the firm's partners to act as the firm's General Counsel (the "General Counsel"). The General Counsel acts as a lawyer to the firm, representing QEU&S in a

3

variety of professional and legal matters and helping attorneys at the firm to comply with their professional and ethical responsibilities to clients. Among other things, the General Counsel provides QEU&S and its attorneys with legal advice concerning professional responsibilities, potential or actual professional liabilities, and other matters. QEU&S also retains outside counsel from time to time to provide similar legal advice to the firm. It is possible that attorneys or staff working on matters for LASD may, from time to time, consult with the General Counsel or QEU&S's outside counsel on matters related to our representation of LASD. In the course of such consultation, QEU&S's attorneys and/or staff may disclose to the General Counsel or QEU&S's outside counsel privileged information concerning LASD's representation, and may receive legal advice related to QEU&S's work on LASD's matter, which legal advice QEU&S may or may not disclose to you. QEU&S views such consultations as privileged and not discoverable by anyone, not even the clients about whom such a consultation may take place. By retaining QEU&S LASD acknowledges and consents to QEU&S's attorneys and staff consulting with the General Counsel or QEU&S's outside counsel as they deem necessary, both during QEU&S's representation of LASD and after such representation ends, and LASD confirms that such communications are privileged and protected against disclosure to you.

### *Responsibilities of Client*

In order to represent you effectively, it is important that you provide us with complete and accurate information regarding the subject matter of the Engagement, and that you keep us informed on a timely basis of all relevant developments. In addition, it is essential that LASD and its officers and employees provide us with timely assistance and cooperation in connection with the Engagement.

Recent changes in the case law addressing electronic discovery have profoundly altered the obligations of the parties involved in litigation and their counsel. An understanding of these changes, which relate to the duties of preservation and discovery of electronically stored information ("ESI"), is an essential prerequisite to the development of a successful litigation strategy for every client. Because the duty to preserve potentially relevant information is triggered when litigation is reasonably anticipated or commenced, and because the failure to comply with these rules can have dire consequences (including sanctions ranging from monetary penalties, to entry of a default against you), we have prepared a written guideline explaining in detail these rules, their operation, and the consequences of failing to adhere to them. In the event LASD has not already issued a litigation hold in this matter, we request that you immediately do so, consistent with the attached guidelines.

If you have any questions about the guidelines after you read them, please call us.

### *No Guarantee of Result*

In providing legal advice to you, I or others at QEU&S may from time to time express opinions or beliefs regarding the likely effectiveness of various courses of action or about results that may be anticipated. You understand that any such statements are opinions and beliefs only and are not promises or guaranties. We cannot and do not guarantee any particular course or outcome of the Engagement.

### *Joint Representation*

To save legal fees and to present a unified case, we are, at LASD's request, representing both you and the Sheriff's Department jointly in this matter. Based on the information you and the Sheriff's Department have given us, we are not aware of any conflict of interest that would preclude us from representing both parties (together, "Clients").

Each of the Clients has the right to retain separate counsel. However, the Clients have agreed that joint representation by QEU&S is currently the most appropriate option for them. In this regard, each Client acknowledges that it/he understands and accepts the following considerations and risks associated with a joint representation. Each Client should discuss the following considerations and risks, and any other questions or concerns each Client may have, with each Client's own separate legal counsel, to make sure that each Client is comfortable with participating in this joint representation.

      1.    Confidentiality and Privilege. In a joint representation, each of the participating Clients is entitled to know what any of the other Clients has told us, as well as what we have learned from third parties in connection with the representation. As among the jointly represented Clients, there is no privileged or confidential information concerning matters within the scope of the representation. Each Client's communications to us in the course of the joint representation will generally be privileged as to third parties. Although we are bound to protect the confidences of each Client from disclosure to third parties, such protection does not apply vis-à-vis the other jointly represented Clients. In a joint representation such as this, all confidences are shared confidences because we owe a duty to keep each Client informed throughout the course of the representation. In addition, as a general matter, each jointly represented Client is obliged to protect the confidences of the other jointly represented Clients from disclosure to third parties. However, if a dispute were to arise between any of the jointly represented Clients, information communicated in the course of the joint representation would not be privileged or confidential in a proceeding to resolve the dispute.

      2.    Conflicts and Possible Withdrawal by QEU&S or Client. Joint representation requires that all participating Clients take common positions as to all issues. As counsel to a group of jointly represented Clients, QEU&S cannot take inconsistent positions for different members of the group. There is always the potential that the individual interests of one Client may not be the same as the interests of the other Client. This could result in the need for some or all of the Clients to retain new counsel.

Based on our present understanding of the facts and the issues in the Engagement, we do not now expect a divergence of interests to occur between the Clients, but it is possible that this could change. If a divergence or conflict of interest were to arise between the Clients, we would not be able to continue representing any of them unless both Clients consented. Depending on the nature of the divergence or conflict, it might be possible for QEU&S to continue representing each Client, provided that each gave consent. However, even with such consent, there could be circumstances that render it inappropriate for QEU&S to continue representing either of the Clients.

If, due to a divergence or conflict of interest, it were necessary for one of the Clients ("Client A") to be separately represented, the other ("Client B") could continue to be represented by QEU&S if Client A consented. Similarly, Client A could continue to be represented by QEU&S if Client B consented. In either case, the consent would have to include: (a) the former Client's agreement that all information provided by the former Client to QEU&S prior to its withdrawal from the representation of the former Client may be used in the representation of the continuing Client(s); and (b) each former Client's agreement that it/he will not seek to disqualify QEU&S from continuing to represent the continuing Client.

There is also the possibility that a Client may choose to withdraw from the joint representation under circumstances where there is not a divergence or conflict of interest that necessitates separate representation of the withdrawing Client. This should not interfere with our ability to continue to represent the remaining Client. Accordingly, each Client understands and agrees that in the event it/he withdraws from the joint representation under such circumstances, it/he hereby: (a) consents to our continuing representation of the remaining Client; (b) agrees that all information provided to QEU&S prior to the Client's withdrawal from the joint representation may be used in the representation of the remaining Client; and (c) agrees that the Client will not seek to disqualify QEU&S from continuing to represent the remaining Client.

The countersignature to this letter on behalf of you and the Sheriff's Department constitutes agreement by each of you that we have made disclosure to each of you that, notwithstanding consent by each of you, it is possible that we might be required to withdraw or disqualify from representing one or both of you by reason of our representation of another client and, further, that one or both of you may incur delay, prejudice or additional cost associated with acquainting new counsel with the Engagement.

## *Future Conflicts of Interest*

Our firm has many lawyers and several offices. We may currently or in the future represent one or more other clients in matters involving LASD and we may represent the parties that are adverse to you in this matter in other unrelated matters. We are undertaking this Engagement on condition that LASD gives its express consent and agreement that we may represent other clients, including the parties adverse to you in this matter, in the future in other matters in which we do not represent LASD even if the interests of the other clients are adverse to LASD (including the appearance on behalf of another client adverse to LASD in an unrelated negotiation, litigation or arbitration), provided that the other matter is not substantially related to our representation of LASD and that in the course of representing LASD we have not obtained confidential information from LASD material to the representation of the other clients.

**At this time we are aware of the following facts that may be relevant to actual or potential conflicts of interest and to the above waiver:** The Firm has been advising the Brennan Center for Justice at New York University School of Law (the "Brennan Center") in an unrelated matter adverse to the Sheriff's Department. In particular, the Firm has been advising the Brennan Center in connection with a request to the Sheriff's Department under the California Public Records Act for information relating to the Sheriff's Department's policies, contracts and use of predictive policing technology. The Firm has a written waiver from the Brennan Center to represent the Sheriff's Department in matters that are not substantially related to our

representation of the Brennan Center. Correspondingly, we are undertaking this representation of the Sheriff's Department with its acknowledgement and consent that we may continue to represent the Brennan Center in connection with the foregoing matter. To ensure that our representation of the Brennan Center is kept separate from this engagement, we will establish an ethical wall between the two matters and the Firm's lawyers on each matter.

The above conflict waiver waives possible conflicts based on future facts and circumstances that cannot be known at this time.

The countersignature to this letter on behalf of LASD also acknowledges that we have made disclosure to LASD of the above facts and that LASD agrees to the conflict waiver set forth herein.

### *Billing*

Our fees are based on the amount of time we spend on this Engagement. Each QEU&S attorney, legal assistant and other timekeeper assigned to this Engagement will have an hourly billing rate. These billing rates, which are set based upon seniority and expertise, are subject to adjustment annually and we will notify you of these changes thirty days in advance of their going into effect. In addition, our associate rates are based on years out of law school, so annually on September 1, each associate's rate moves up to the next higher class rate on our rate schedule; for example, on September 1, 2019, a class of 2018 graduate's rate will move up from a first-year associate rate to a second-year associate rate, and so on. These "class graduation" adjustments are not rate increases, and LASD acknowledges and agrees to these associate class adjustments by signing this letter. The billing rates of the attorneys whom we anticipate assigning to this Engagement currently range from $1400 per hour for Steve Madison to $695 per hour for Scott Mills. If one of our professionals performs multiple tasks for LASD during the course of a day, our statement will describe those tasks in a continuous narrative form accompanied by a single time entry for all tasks, a practice known as "block billing." LASD agrees that we may block bill.

### *Estimates*

LASD understands that it is impossible to determine in advance the amount of fees and costs needed to complete any given matter. From time to time during the course of our Engagement we may provide LASD with estimates of costs and fees or projected budgets for our work going forward. Ordinarily, we do not provide these projections unless LASD specifically requests us to do so. When we do provide them, we will make a good faith effort to estimate what the future cost will be. However, in no case can such projections be guarantees regarding what the actual cost will be. The cost of litigation may change dramatically based on factors we do not control, including actions taken by our adversary, rulings by the court, or other developments in the litigation. In all instances when we provide such projections, they should be viewed as guidance only. The fees and costs which LASD will be liable for will be based on our time charges as set forth in this agreement, and not on any such projections.

### *Ancillary Costs*

We will charge separately for certain ancillary services we provide, such as facsimile charges, secretarial and paralegal overtime and word processing. We pass along out-of-pocket costs and

charges that we incur on our clients' behalf. These typically include messenger charges, deposition videography and transcript charges and administrative charges. Other charges are based on market, not cost, including service of process, document reproduction ($0.24/page), color document reproduction ($1.00/page), binders, tabs, tab creation, manila folders, redwelds, binding, punching, black and white scanning ($0.24/page), color scanning ($1.00/page), black and white oversized scanning ($0.40-$1.50/page), color oversized scanning ($2.25-$12.50/page), black and white blowbacks ($0.15/page), color blowbacks ($1.00/page), slipsheets ($0.03/page), native file printing ($0.18/page), TIFF generation ($0.02/page), OCR ($0.03/page), Viewpoint search and culling $50-$150/GB), EDD ($325-625/GB), image endorsement ($0.02/page), media creation and duplication ($15-$400), document coding ($0.28-$1.50/document), hosting ($25/GB) and litigation support consulting at hourly rates of $175 to $365 per hour, depending on the work performed. Additionally, we charge for computerized legal research (Westlaw or Lexis fees, without any applicable discount), travel costs, meal charges and parking charges (when we are working exclusively on your matter), filing fees, telephone toll charges, fees for experts and other consultants retained on LASD's behalf, and similar charges. Our charges may also include cellular or air telephone charges that are not related to the representation, but are necessarily incurred while we are traveling on a client's case. These charges will be at cost. The costs listed are the current rates but may be subject to future adjustment. LASD agrees that the ancillary costs described in this paragraph are costs to be paid in addition to our hourly billings, are not "overhead," and are payable separate and apart from our hourly billings in the event of any dispute.

In some cases, particularly if the amount is large, we may forward an invoice from an outside vendor or service directly to LASD for payment, which will also be due and payable upon receipt. Failure to pay such invoice upon request will be grounds for us to withdraw from our representation.

In the event LASD has supplied us with billing guidelines that are inconsistent with the terms of this Engagement Letter, LASD agrees that the terms of this Engagement Letter shall apply unless a copy of LASD's billing guidelines are attached to this Engagement Letter countersigned on behalf of QEU&S, in which event LASD's billing guidelines shall control.

We will submit bills on a monthly basis. All bills shall be paid within thirty days of receipt by LASD. The obligation to pay our bills is solely yours and is not contingent upon any judgment or settlement; any right you may have for reimbursement, indemnification, insurance or the like; or your receipt of any other form of payment you may expect to receive from some other party. We reserve the right at our sole discretion to charge interest of 6% per month on invoices that are 90 days or more past due. If LASD has any question regarding, or wish to challenge any bill, LASD shall notify us promptly of any such question or challenge, and shall in any event pay any portion of such bill that is not subject to question or challenge.

### *Responsibility for Payment*

In this matter, our understanding is that the Counsel of Los Angeles has agreed to pay an unspecified amount of your legal fees and costs; however, we represent only LASD and not the

County of Los Angeles or the Board of Supervisors or Office of County Counsel. If, for any reason, the Count of Los Angeles or one of its departments or offices does not pay your legal fees and costs, LASD agrees that LASD will be responsible for payment of legal fees and costs incurred. Payment by LASD's employer and/or other third parties will not interfere with QEU&S's independence of professional judgment or with our attorney-client relationship. LASD's employer's and/or third parties' payment of legal fees in this matter does not create an attorney-client relationship between QEU&S and the party making such payment–our client is only LASD. Moreover, information relating to our representation of LASD is protected. LASD is advised that LASD has the right to have an independent lawyer of your choice review this entire agreement, including this provision, prior to initialing or signing this Engagement Letter.

## Our Lien On Any Recovery You Obtain

LASD hereby grants us a lien as security for the payment of fees and costs due and owing to us under this agreement. This lien will attach to any recovery LASD may obtain, whether by arbitration award, judgment, settlement or otherwise, in connection with the Engagement, and we may use this lien to enforce our right of payment. This lien entitles us to be paid first and before any payment can be made to you. The lien allows us to compel payment of our unpaid fees, interest, costs, advances and expenses. The lien is intended to remain valid even if for any reason we no longer represent you in this matter. The lien could delay payments to LASD or receipt by LASD of some or all of any recovery LASD may obtain as a result of our services until any dispute over the amounts to be paid to us is resolved. You also authorize us to make disclosure of the lien when such is necessary to enforce our rights and interests.

LASD may seek the advice of an independent lawyer of your choice about this lien provision and its consequences. LASD also has the right to ask us questions about our understanding of the lien. By signing this agreement LASD acknowledges that LASD has been advised of the terms of this lien agreement and of LASD's right to consult independent counsel. LASD also acknowledges that LASD has been given a reasonable opportunity both to seek such advice and to ask us any questions that you may have prior to signing.

## Award of Costs and Fees

A court may sometimes order a payment of costs or attorneys' fees by one party to the other. If any fees or costs are paid to us, they will be credited against any amounts LASD owes us, but LASD will be obligated for any unpaid portion of our statements as they become due. Payment of our statements may not be deferred pending a ruling on an application for attorneys' fees, costs or sanctions or pending the receipt of such an award. Any fee or cost award received from another party will be credited to LASD's account, unless it results in a credit balance. If it does, we will refund the balance to LASD. If a court awards fees or costs against LASD and in favor of an opposing party, LASD will be responsible for payment of that amount separately from any amounts due to us.

## Termination

Above all, our relationship with you must be based on trust, confidence and clear understanding. If you have any questions at any time about this letter or the work that the firm, or any attorney,

00811-99578/10745555.4                     9

Exhibit B - Page 27

is performing, please call me or, if you prefer, John Quinn in our Los Angeles office at (213) 443-3000, to discuss it. You may terminate this representation at any time, with or without cause. Subject to the application of the applicable rules of professional responsibility, we also reserve the right to withdraw if, among other things, you fail to make timely payment of any invoice, you fail to cooperate or follow QEU&S's advice on a material matter, or any fact or circumstance arises that, in QEU&S's view, renders our continuing representation unlawful or unethical. Any termination of our representation of you would be subject to such approval as may be required from any court(s) in which we are appearing on your behalf. In the event of termination by either of us, fees and costs for work performed prior to termination will still be payable to the extent permitted by law.

### Date of Commencement and Termination of the Engagement

The effective date of our agreement to provide services is the date on which we first performed services, namely, Monday, March 4, 2019. The date at the beginning of this letter is for reference only. If this letter is not signed and returned for any reason, LASD will be obligated to pay us the reasonable value of any services we have performed as well as the costs we have incurred on LASD's behalf.

QEU&S's representation of LASD will be considered terminated at the earliest of (i) LASD's termination of the representation, (ii) QEU&S's withdrawal from the representation, (iii) the completion of QEU&S's substantive work for the Client, or (iv) following 60 days of inactivity by QEU&S on the matter.

### File Retention and Disposition

After the Engagement has concluded, and subject to payment of all outstanding fees and disbursements, you may request the return of files pertaining to the Engagement. LASD's files will be released only following delivery to QEU&S of a signed release letter containing appropriate directions and acknowledgment of the obligation to pay outstanding fees. QEU&S may charge you for the reasonable costs of retrieval, assembly, copying and transfer of all files or materials in any format. It is our practice to retain the permanent records of the matter, in accordance with our records retention policy, for a period of not less than 7 years after the Engagement has ended. If you do not request the files in writing before the end of our retention period, upon the expiration of that period we will have no further obligation to retain the files and may, at our discretion, destroy the files without further notice to you.

### Other Litigation or Proceedings

If, as a result of this Engagement, and even if the Engagement has ended, we are required to produce documents or appear as witnesses in any governmental or regulatory examination, audit, investigation or other proceeding or any litigation, arbitration, mediation or dispute involving LASD or related persons or entities, LASD shall be responsible for the costs and expenses we reasonably incur (including professional and staff time at our then-standard hourly rates). Similarly, if we are sued or subjected to legal or administrative proceedings as a result of our representation of LASD in this matter (including unmeritorious disqualification proceedings), LASD agrees to indemnify us for any attorney's fees and expenses (including our own

10

professional and staff time at our then-standard hourly rates) we incur as a result. This paragraph is not intended to apply to any claim brought by or on behalf of LASD alleging wrongdoing by QEU&S.

### *Arbitration*

Although we think it is unlikely, it is possible that a dispute may arise between us regarding some aspect of the Engagement and our representation of you. If the dispute cannot be resolved amicably through informal discussions, we believe that most, if not all, disputes can be resolved more expeditiously and with less expense by binding arbitration than in court. This provision will explain under what circumstances such disputes shall be subject to binding arbitration.

(a)     AGREEMENT TO ARBITRATE:

Any dispute between QEU&S and LASD as to attorneys' fees and/or costs in connection with the Engagement shall be resolved as follows:

1.     If any such fee and/or cost dispute arises, QEU&S shall provide LASD with written notice of LASD's right to arbitrate under the California State Bar Act (Bus. & Prof. Code § 6200, *et seq.*). Those procedures permit a trial after arbitration, unless the parties agree in writing, after the dispute has arisen, to be bound by the arbitration award.

2.     If LASD exercises its rights under the California State Bar Act, LASD and QEU&S may thereafter agree that the arbitration will be binding.

3.     If LASD exercises its rights under the California State Bar Act, and LASD and QEU&S do not agree that the arbitration is binding, then upon the rejection by either party of the decision resulting from the arbitration procedures under the Act, LASD and QEU&S agree that the dispute will then be subject to mandatory arbitration as described in ¶ (b) below.

4.     If, after receiving notice of its right to arbitrate, LASD does not exercise its rights under the California State Bar Act by filing a request for fee arbitration within 30 days, LASD and QEU&S agree that the dispute will be subject to mandatory arbitration as described in ¶ (b) below.

Any other dispute arising under the Engagement or in connection with the provision of legal services by QEU&S including, without limitation, any claim for breach of contract, professional negligence or breach of a fiduciary duty, shall be resolved by confidential, binding arbitration as described in ¶ (b) below.

By signing this Engagement Letter, LASD and QEU&S confirm that they have read and understand these paragraphs concerning arbitration and voluntarily agree to binding arbitration. In doing so, LASD and QEU&S voluntarily give up important constitutional rights to trial by judge or jury, as well as rights to appeal; depending on the rules of the arbitration program, both also may be giving up their rights to discovery. If LASD later refuses to submit to arbitration after agreeing to do so, LASD may be ordered to arbitrate pursuant to the provisions of California law. LASD is advised that it has the right to have an independent lawyer of LASD's choice review these arbitration provisions, and this entire agreement, prior to signing this Engagement Letter.

(b)     ARBITRATION PROCEDURES:

In the event of any dispute that is subject to arbitration pursuant to ¶ (a) above, the initiating party will provide a written demand for arbitration to the other party setting forth the basis of the initiating party's claim and the dollar amount of damages sought.

The parties further agree that, if arbitration is necessary, each arbitration will:

1.      Be heard and determined by a panel of three arbitrators (all of whom will be retired state or federal judges), with one selected by each party to the arbitration, and the third selected by the first two from the panel of arbitrators of JAMS (or its successor);

2.      Take place in Los Angeles, California;

3.      Be conducted in accordance with JAMS Streamlined Arbitration Rules and Procedures (or any successor rules and procedures), in effect at the time the initiating party delivers to the other party the demand for arbitration required hereunder;

4.      Require the arbitrators to enforce the terms of this agreement, and they will lack authority to do otherwise;

5.      Apply the laws of the State of California. The arbitration proceedings and the decision of the arbitrator will be confidential. Notwithstanding anything to the contrary contained in this agreement, the prevailing party in any arbitration, action or proceeding to enforce any provision of this agreement (for avoidance of doubt, a party that obtains a net monetary recovery shall be the prevailing party) will be awarded attorneys' fees and costs incurred in that arbitration, action or proceeding even if the law provides otherwise, including, without limitation, the value of the time spent by QEU&S attorneys to prosecute or defend such arbitration, action or proceeding (calculated at the hourly rate(s) then normally charged by QEU&S to clients which it represents on an hourly basis), except that the foregoing shall not apply to any mediation, as described above, and the parties will split the fees of the arbitrator; and

6.      Be final and binding on both parties, will not be subject to de novo review, and that no appeal may be taken. The ruling of the arbitrator(s) may be entered and enforced as a judgment by a court of competent jurisdiction. The arbitration provisions of this Agreement may be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses.

**Binding Agreement**

By signing below, you both agree that you and the Sheriff's Department have had enough time to review this letter, that we have advised you that LASD has the right to consult another, independent lawyer about the provisions relating to the waiver of conflicts of interest and any other aspect of this letter as to which LASD may wish to avail itself of such advice, and that LASD is satisfied that it understands this letter. LASD also agrees that LASD has the freedom to select and engage the counsel of its own choice and accordingly that this is an arm's length agreement between parties of equal bargaining strength and that LASD has freely determined, without any duress, to sign and agree to these terms.

**Severability**

Should any part of this Agreement, or language within any provision of this Agreement, be rendered or declared invalid by a court of competent jurisdiction of the State of California, such invalidation of such part or portion of this Agreement, or any language within a provision of this Agreement, should not invalidate the remaining portions thereof, and they shall remain in full force and effect.

**Amendments and Additional Engagements**

The provisions of this letter may only be amended in writing, signed by both parties.

If LASD later asks us to take on additional assignments, we will send you a supplementary engagement letter reflecting each additional assignment.

I am enclosing two executed copies of this letter. If the foregoing accurately reflects our agreement, please confirm that by signing and returning one of the enclosed copies to me. Please do not hesitate to call me to discuss any questions you may have regarding this agreement.

Thank you again for this opportunity to be of service. We look forward to working with you on this Engagement.

Very truly yours,

Steven G. Madison

SGM:vv

**[STATEMENT TO BE SIGNED BY EACH CLIENT:]**

I have read the above Engagement Letter and understand and agree to its contents. The parties to this Engagement hereby agree that a faxed, pdf or electronic signature shall count as the original.

Alex Villanueva, Sheriff, Los Angeles County

By: _____

Date: _____4-2-19_____


Los Angeles County Sheriff's Department

By: _____

Name: _____4-2-19_____

Title: _____SHERIFF_____

Date: _____

<u>**PRIVILEGED & CONFIDENTIAL, ATTORNEY-CLIENT COMMUNICATION**</u>

# GUIDELINES ON PRESERVATION AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION

**INTRODUCTION**

Some preliminary background information may assist you in understanding the legal duties now applicable to the preservation and production of electronically stored information. Advancements in information technology have fundamentally changed how we communicate with one another and how companies do business. These changes have resulted in the development of new rules governing discovery in litigation. These new rules are an attempt by our courts to adapt to the changes in today's business world and society which these technological innovations have produced.

These new rules relate to "electronic discovery" and are referred to as "e-discovery rules." Because electronically stored information ("**ESI**") is particularly vulnerable to accidental deletion, modification or corruption, courts have imposed new duties on both parties and their attorneys to preserve ESI. The new e-discovery rules were enacted to address problems unique to electronic discovery. As used in these guidelines, ESI refers to any type of electronic data or information in any type of format. So long as electronic data is in a fixed tangible form and is capable of being electronically stored, even temporarily, the e-discovery rules apply.

All parties are required to follow these e-discovery rules regardless of how simple or sophisticated their computer system. In other words, it does not matter whether a party is an individual, partnership, joint venture, sole proprietorship or mega-corporation. Nor does it matter whether a party has a single laptop computer or a massive computer network. If a party has any device that generates or stores ESI, whether it be a bank of servers or a single "thumb" drive, a Blackberry, cell phone or any other type of electronic storage device, the e-discovery rules apply.

The duty to preserve potentially relevant ESI is triggered whenever litigation is "reasonably anticipated." The process by which a party identifies and preserves potentially relevant information or evidence including ESI is generally referred to as a "**litigation hold**," and that is how we will refer to the process in these guidelines. The imposition of a litigation hold, among other things, requires the suspension of any document retention/destruction policies or any automated features of a party's computer or email systems that could result in the loss, destruction or deletion of ESI or paper records. For example, if a party recycles its back-up tapes or if its email system automatically deletes emails after a specified time frame, those processes have to be stopped, at least until the party can develop an appropriate strategy for preserving potentially responsive ESI. Otherwise sanctions can be imposed if relevant ESI is lost or destroyed.

The new e-discovery rules mandate a heightened level of cooperation between clients and their counsel in locating and preserving potentially relevant ESI. The new duties which these rules impose on both clients and their counsel profoundly affect the relationship between them. Additionally, the e-discovery rules can dramatically increase the cost of discovery and materially affect how litigation is conducted. Before explaining how electronic discovery works under these rules, it is important to understand how the responsibility for e-discovery compliance has been allocated between clients and their counsel.

### RESPECTIVE DUTIES OF CLIENTS AND THEIR COUNSEL RELATIVE TO E-DISCOVERY

In *Zubulake v Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (*Zubulake V*), a case generally followed throughout the country, the court held that in order to avoid the imposition of discovery sanctions, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." The court explained that "a party and its counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold.'" 229 F.R.D. at 432. To accomplish this the court explained counsel should:

- Become fully familiar with the client's document retention policies, and data-retention architecture including system-wide backup procedures, recognizing that this will invariably involve speaking with the client's IT personnel; and

- Communicate with "key players" in the litigation to understand how they store information.

The court in *Zubulake* observed that a party's e-discovery obligations do not end with the implementation of a litigation hold. It noted that a party has an ongoing duty to preserve relevant information while the lawsuit remains pending. The court explained that it was not sufficient for counsel to simply notify the client about the need to impose a litigation hold and assume the client will preserve and produce relevant information. Rather, the court concluded that counsel should oversee compliance with the litigation hold and outlined three steps that counsel should take to confirm that the client is complying with its preservation obligation:

*First,* counsel must issue a litigation hold at the outset of litigation or whenever litigation is reasonably anticipated. The litigation hold should be periodically re-issued so that new employees are aware ot it, and so it is fresh in the minds of all employees.

*Second,* counsel should communicate directly with the 'key players' in the litigation so that the preservation duty is clearly communicated to them. As with the

2

litigation hold, the key players should be periodically reminded that the preservation duty is still in place.

*Finally,* counsel should instruct all employees to produce electronic copies of their relevant active files, and make sure that all backup media which the party is required to retain has been identified and properly preserved.

*Zubulake V,* 229 F.R.D. at 433-34.

These action steps must be taken at the outset of any lawsuit, and then periodically repeated throughout the litigation. Moreover, attorneys have a continuing obligation to monitor a client's efforts to preserve and produce ESI. It is essential that a client fully cooperate in the process, understanding that these obligations are imposed on all parties as a matter of law, and not by the whim of counsel. Sanctions for noncompliance with these e-discovery obligations can be imposed on both client and counsel alike. Should such a motion ever be filed, it could trigger a number of additional issues that we would need to discuss with you.

Please also be aware that in some cases, e-discovery may generate a significant increase in the cost of defending a lawsuit and in the diversion of personnel and resources needed to address a party's e-discovery obligations. The expense involved in locating, reviewing and producing ESI in some cases may be so significant as to warrant serious consideration of an early resolution of the claim. In other cases, e-discovery costs may have little or no impact on litigation or settlement strategies and merely represent expenses that are now incurred at the beginning of the case, rather than at a later point in time.

## WRITTEN GUIDELINES FOR COMPLIANCE WITH THE RULES GOVERNING ESI

The written guidelines set out below are not intended to serve as a mechanical checklist applied in an identical manner in all cases. The process of identifying, preserving and producing ESI can be a highly complex undertaking. There is no "one size fits all" set of rules when it comes to e-discovery. Rather, the principles discussed below should guide you in implementing a process to preserve and produce ESI, tailored to the complexities of a given matter.

1.    *When the Duty to Preserve Evidence is Triggered*

Various statutes and regulations require the preservation of specific types of information in a variety of contexts. However, in the absence of such a statute or regulation, for litigation purposes the duty to preserve is triggered at that point in time when litigation, a governmental investigation, or any adversarial proceeding or process is "reasonably anticipated." When litigation is "reasonably anticipated" requires a reasoned, good-faith analysis of all relevant facts and circumstances.

3

When a duty to preserve is triggered, the parties should immediately begin the process of attempting to locate and preserve any potentially relevant ESI, regardless of its source or location (*e.g.*, desktop or laptop computer, network server, thumb drive, backup tapes, digital audio recording, voice mail etc.). The duty to preserve continues through the pendency of the proceeding, and includes any relevant evidence that is created *during* the course of the proceedings.

**If you have not already done so, please institute a "litigation hold" on any potentially relevant ESI or other information in accordance with these guidelines.**

2.     *Identify Key Personnel*

"Key Personnel" should be immediately identified for several reasons; first so that they can be notified in writing about their duty to preserve evidence, and second, so that any potentially relevant ESI in their possession, custody or control can be located and preserved. Key Personnel are those individuals who were involved in any aspect of the matter at hand, as well as those individuals who either have or claim to have some knowledge of the matter or any defenses that relate to it, or to the claimed injury or resulting damages, and/or who have in their possession or under their control ESI or any other form of potentially relevant evidence.

The effort to identify the Key Personnel and locate potentially relevant information in their possession should focus on the assertions made and any potential defenses to those assertions. It will also be helpful to identify any other employees or third parties with whom Key Personnel had contact involving the relevant issues so that emails, letters and other communications to and from those individuals or physical evidence in their possession, custody or control can be located and preserved.

**Please prepare a list of all Key Personnel for when we meet in the near future. Please include the work or home addresses, email addresses and phone numbers (for those individuals no longer in your employ), so that we can follow up with them to verify that they have been notified about the need to preserve ESI, understand the ramifications if they fail to do so and to learn how they store information.**

You should expect that at an early stage of this matter our opponent will request a deposition or ask to interview the person(s) most knowledgeable about your computer, email, and record keeping  systems. Please identify who that person is or who those persons are, and provide their contact information at our initial meeting. We may ask that one of them attend our initial Rule 26 scheduling conference with opposing counsel if available. **Additionally, please designate someone who could serve as your e-discovery liaison or as our contact person should questions arise about your computer, email or record keeping systems.**

4

3.    *Content and Scope of Litigation Hold Notice*

You should notify Key Personnel in writing about their duty to preserve any evidence, be it paper records or ESI, which is potentially relevant to this matter or any defenses that could be asserted.  The written hold notice should broadly describe the nature of the claims being asserted and any defenses to the claims so that your Key Personnel do not inadvertently delete or destroy any potentially relevant ESI or paper records. Your written hold notice should also explain the potential types of ESI that should be preserved and where potential sources of that ESI may be found.  We have included a list of possible sources in guideline 6 below.  The written hold notice should also explain that sanctions could be imposed in this matter if they fail to preserve relevant information and that the sanctions could range anywhere from the imposition of a large fine to the entry of [a default judgment/the dismissal of the claim].

The written hold notice should be broadly disseminated.  The notice should be sent to Key Personnel, to the IT, Information Management and/or Risk Management departments (where applicable), to the persons in charge of departments such as Human Resources, Product Development, Marketing, or any other department where potentially relevant ESI may be located, and to any department heads in which Key Personnel are employed.  In addition to the litigation hold notice, those department heads should be provided a list of Key Personnel in their respective departments who you believe may be in possession of potentially relevant ESI.  Department heads should be instructed that if they are aware of any other person who may have possession of potentially relevant ESI, they should immediately notify that employee of the litigation hold and also notify a designated member of your legal department who should promptly send a copy of the hold notice to that employee.

Consider designating a member of your legal department to answer any questions which anyone may have about the litigation hold process.  You also should consider including a statement in the litigation hold notice explaining that should anyone have a question about the litigation hold process or the obligation to preserve ESI, that they should immediately contact the designated member of your legal department.

The litigation hold notice should periodically be resent to the original Key Personnel and any new employees who have access to potentially relevant ESI which is subject to your litigation hold so they do not inadvertently delete or destroy it.  As a lawsuit matures, the litigation hold may need to be modified as issues are added or evolve.  Additional employees may need to be notified about the hold when new claims or issues are added or when our opponent's liability theory changes.  We will discuss these points with you at our initial meeting.

A party's litigation hold process has been held to be deficient when senior management was not involved in the process.  Accordingly, we recommend that the

5

written hold notice be issued either by a member of senior management or by a senior member of your legal department.

Please notify all Key Personnel that we will be contacting them to discuss the topics noted above, and please alert the head of your IT department that we will need to speak with IT staff to learn about your email and information systems, data-retention architecture and document retention practices.

4.      *The Duty to Preserve Includes ESI on Home or Personal Computers or PDAs*

Your written hold notice should advise Key Personnel and others who receive the notice that any potentially relevant ESI created or stored on home or personal computers, PDA's or at locations other than your office(s) or business (locations) must also be preserved, regardless of whether that ESI was transmitted to you, or is now in your possession or is available elsewhere. The existence of potentially relevant ESI on home or external computers or PDA's can raise sensitive privacy issues. The law nevertheless requires that relevant information on home computers or storage devices be preserved and treated in exactly the same way as the ESI located on your business systems.

5.      *The Duty to Preserve Includes ESI in the Possession of Third Parties Under Your Control*

The obligation to preserve potentially relevant evidence extends beyond the ESI in your immediate possession. The duty to preserve potentially relevant ESI extends to any third party who is subject to your direction and under your control. For example, if you have outsourced any accounting, computer or business functions to a third-party vendor ("Application Service Provider"), or have transferred any archived data to a third-party storage facility, you must instruct that third party to preserve any potentially relevant ESI in its possession. Accordingly, you should immediately notify any such third party about the obligation to preserve any of your ESI in its possession. **Please provide us with the current contact information for any third parties who may be in possession of potentially relevant evidence,** including ESI, so that we may follow up and request that they take steps similar to those described in these guidelines.

6.      *Potential Sources of ESI*

The following list is intended to provide examples of the types, sources and formats of ESI that should be located and preserved, where applicable, pursuant to the litigation hold issued in connection with this matter. Because we have not yet spoken with your IT department, we recognize the foregoing list could be over or under inclusive. Thus, you may want to consult with your IT department to tailor the information provided in this guideline. However, you should consider including the type of information outlined below in your written hold notice so that your Key Personnel and others who were sent that notice do not overlook a source or type of potentially relevant ESI:

**Digital Communications** (*e.g.*, e-mail, voicemail, instant messaging (if logged));

6

**Electronic Mail Logging and Routing Data;**

**Word Processing Documents** (*e.g.,* Word or WordPerfect documents and drafts);

**Spreadsheets and Tables** (*e.g.,* Excel or Lotus 123 worksheets);

**Accounting Application Data** (*e.g.,* QuickBooks, Money, Peachtree data files);

**Image and Facsimile Files** (*e.g.* PDF, TIFF, .JPG, GIF, DICOM images);

**Sound Recordings** (*e.g.,* .WAV and .MP3 files);

**Video and Animation** (*e.g.,* .AVI and .MOV files);

**Databases** (*e.g.,* Access, Oracle, SQL Server data, SAP);

**Personal Data Assistants (PDAs)** (*e.g.,* Blackberry, PalmPilot, HP Jornada);

**Contact and Relationship Management Data** (*e.g.,* Outlook, ACT);

**Calendar and Diary Application Data** (*e.g.,* Microsoft Outlook PST, Lotus Notes, third-party internet calendars through mail accounts - Yahoo and Hotmail);

**Online Access Data** (*e.g.,* Temporary Internet Cache Files );

**Presentations** (*e.g.,* PowerPoint, Corel Presentations);

**Network Access and Server Activity Logs;**

**Project Management Application Data** and related documents;

**Computer Aided Design/Drawing Files**; and,

**Backup and Archival Files** (*e.g.,* Zip, GHO).

In addition to preserving the electronic data or files themselves, as explained below you must also preserve all archived data or backup media which may contain potentially relevant ESI until otherwise directed by counsel. This includes magnetic and optical media, hard drives, floppy disks, backup tapes, Jaz cartridges, CD-ROMs and DVDs. Any software necessary to review the data contained on these media also must be preserved. If any backups are made in realtime via the web (*e.g.,* LineVault, e-Vault), they must be preserved and the third party handling this data must be contacted to assist in its retention.

In order to prevent data loss due to normal replacement of outdated computers, systems, hardware or software, you should also preserve all computers, hardware and software no longer in use that were used during the relevant timeframe until it has been

7

verified that no potentially relevant ESI is stored on those computers or systems. This includes any servers, desktops, laptops, hard drives, and all associated hardware and software applications.

Some systems have the capability to capture or log instant messages (IM), if that feature has been activated. Does your system have the capability to log IM and, if so, has that feature been activated? Do you have any policy concerning the use of IM for business purposes? If so, please provide us with a copy of that policy at our initial meeting.

If your IT staff has developed a data map covering any aspect of your computer, email or record keeping systems, sometimes referred to as a "topology," please have a copy available at our initial meeting because it will hopefully reduce the amount of time we need to spend with your IT staff learning about those systems.

7.    *Preservation Obligations*

The law governing the preservation of ESI also applies to other forms of evidence, including your paper records. No potentially relevant evidence should be altered or destroyed. Rather, it should be maintained in the way it is kept in the ordinary course of business. All copies, including all duplicates should be preserved. Even if paper copies have been made of electronic files, you should preserve the original electronic files.

The potential for accidental deletion, destruction or corruption of ESI makes it essential that prompt steps be taken to preserve relevant information. Delay in doing so increases the possibility that relevant ESI may lost, thereby exposing you to sanctions. Thus, it is important to quickly act to preserve ESI. The obligation to preserve does not require imaging all computers and email, or freezing all electronic documents and data. Absent extraordinary circumstances, the preservation obligation need only involve steps reasonably necessary to secure potentially relevant evidence necessary for a just and fair resolution of the issues presented.

In some instances, however, it may be prudent to make a forensically sound mirror image of certain computer hard drives to avoid the accidental deletion of ESI due to everyday computer usage. In matters where an employee is believed to have electronically misappropriated company information or property; where particularly critical evidence is recognized to exist on a specific hard drive; where potentially relevant information has been recently deleted and may need to be reconstructed; or where the way in which a computer was used appears to be a potential issue in the case, imaging the computer(s) involved should be considered. In such cases, a bit-by-bit copy of the hard drive should promptly be made. Consider whether to employ a qualified *outside expert*, rather than using your internal IT personnel to complete that work. The use of an outside forensic computer expert will help to insulate you from any adverse consequences resulting from the errant handling of the evidence and will limit the need for your IT personnel to become potential witnesses in the litigation.

8

To prevent the inadvertent destruction of potentially relevant ESI, you are obligated to:

(1) discontinue the destruction of potentially relevant information pursuant to any document retention/destruction policy and/or any automated features of your systems that delete or overwrite information;

(2) temporarily stop the recycling of all backup tapes until otherwise directed by counsel;

(3) preserve any storage devices containing potentially relevant information until the information has been preserved or if necessary, until a forensically sound replica (bit by bit mirror image) is made;

(4) temporarily refrain from installing new software that might overwrite potentially relevant data;

(5) maintain properly working virus protection software to protect the data from loss;

(6) preserve any website content and links;

(7) preserve all login ID's, names and passwords, decryption procedures (and accompanying software), network access codes, manuals, tutorials, written instructions, decompression software;

(8) maintain all other information and tools needed to access, review or reconstruct potentially relevant electronic data;

(9) preserve (do not recycle or dispose of) any computers that may have been used during the relevant timeframe;

(10) preserve (do not reuse) computers of key employees who leave or have left your business until the all relevant information has been preserved; and

(11) suspend all maintenance procedures that could result in the deletion of ESI, including disk defragmenting, on computers that may contain relevant information until any relevant ESI stored on those computers has been preserved or until a forensically sound copy of the hard drive has been made, if necessary.

If you have any document retention or document destruction policy, please provide us with a copy of that policy at our initial meeting. If there is a person who is responsible for auditing and/or enforcing that policy, please provide us with that person's contact information at our meeting. We also need to learn if there are any automated features of your computer, email or record keeping systems automatically or routinely delete ESI. If

9

so, we will need to confirm that those features have been suspended and learn when they were deactivated.

8.    *Document Each Step Taken to Preserve ESI*

To defend against claims that you failed to properly preserve ESI, it is extremely important that a record be kept of every step taken by you to implement the litigation hold and to preserve ESI.  Document the names of all employees and department heads to whom the litigation hold notice was sent and record when they were notified.  Keep copies of the written hold notice and consider sending two copies of the hold notice to your employees with an instruction that they keep one, and sign and return the other as evidence that they received, read and understood its content. Maintain a log of any verbal instructions given, including when the instructions were given, the persons who provided and received the instructions and a summary of the instructions.

Frequently one party will attempt to discredit the other's effort to preserve ESI in the hope of gaining a tactical advantage through the imposition of sanctions. A comprehensive record documenting all efforts that are taken is necessary so that if challenged in court, your efforts at preserving evidence can be properly defended.

9.    *"Metadata," Embedded Data and Data Created or Stored in Unique or Proprietary Formats*

Every document, report or email created on a computer contains hidden electronic information called "metadata."   Metadata is literally defined as "data about data." Metadata is automatically created by your computer and functions like a library catalog card for the computer.  Among other things, the metadata will reveal: who created a document, when it was created, who last had access to the document, whether it has been revised and by whom, when that revision was made and the number of versions of a document.

Metadata may contain potentially relevant information that can be used to authenticate an electronic document or email and may be sought in discovery.  Metadata should be considered part of the original electronic document and should be preserved. One difficulty in preserving metadata is that by simply opening a document and moving it to a folder to preserve it for discovery purposes will alter several metadata fields including when the document was last accessed and who accessed it.

Besides metadata, there is another form of potentially hidden information that can exist in the electronic version of a document which is manually embedded into a document's content itself through the track changes feature of a word processing program. That embedded data may contain information subject to attorney-client privilege or work product protection.

We need to learn if any of your ESI is created or stored in a unique or proprietary format since that may impact the form of its production.  We also need to learn if any

10

aspect of your ESI is electronically searchable as it is ordinarily maintained since that may also impact the format of its production. Are there any unusual aspects of your computer, email or record keeping systems that could make production of ESI difficult or problematic?

The reason we are raising these questions is that the e-discovery rules provide you some choice as to format in which ESI will be produced. ESI can be electronically produced in either its "native state" or in an imaged format. The term "native" when used in an e-discovery context simply refers to the program or file format in which the document or data was originally created. In other words, if a document was created in WordPerfect, producing it in its native state would require production of it in a WordPerfect format. A commonly used image format is Adobe's Portable Document Format or PDF.

There are advantages and disadvantages to each form of electronic production. Producing ESI in its "native state" would include production of any associated metadata or accompanying embedded data. Additionally, documents produced in their native state can be altered. Native documents cannot be Bates stamped or redacted without altering the original. To view an electronic document in its native state which is created or stored in a unique or proprietary format requires that the party receiving it have access to the same software used to create or store the document. On the other hand, documents produced in an imaged format cannot be altered and will not include any metadata unless metadata fields are loaded into the image. Imaged documents can be redacted and bates stamped, but are more costly and take longer to produce.

You should carefully review all of these subjects with your IT department. Your preferred format of ESI production is an issue which we need to discuss with you at this stage because it is a subject which the court's rules require us to address with opposing counsel at the initial scheduling conference.

10.    *Accessibility of Electronic Data*

The federal rules set up a two-tiered system of ESI discovery. Parties are expected to produce ESI that is readily accessible. However, there is no obligation to produce ESI from sources that are not reasonably accessible because of "undue burden or cost." The following are recognized categories of ESI which generally describe the ways data may be stored relative to its potential accessibility:

**Active data** - computer data which is immediately and easily accessible;

**Backup data** – computer data residing on readily available storage media;

**Archived data** – computer data placed into long term storage on backup tapes or other forms of media that may be periodically recycled or reused.

11

**Legacy data** – computer data created on old, out of date, obsolete or no longer used computer systems and/or hardware or software; and

**Deleted data** – computer data that has been "deleted" from a computer's hard drive but is potentially recoverable through computer forensic techniques;

We need to learn if you have any legacy data or legacy system(s), and, if so, whether there is any data which has not been transferred to the system(s) currently in use, and how far back the legacy data which has not been transferred to your current system goes, as well as whether any of that data might be relevant to the issues in this matter. In that event, we would need to determine what steps would be required, and at what expense, to access, review and produce that legacy data.

In addition, we will need to learn how ESI is stored by its custodians. If your systems are backed up or archived, we need to learn what data is backed up and/or archived, how that is accomplished, how frequently the process occurs, how long the ESI is retained, where the backup tapes or archived media is stored and any rotation cycle. To determine the accessibility of ESI from those sources, we should learn what steps would have to be taken, and at what cost, to restore, search for and produce specific data or information on those tapes. We also need to learn if those backup tapes or archived data is used for any reason other than disaster recovery.

We bear the burden of proving that it would be unduly burdensome or costly to produce ESI from these or any other sources or potential repositories of ESI. Thus, we will need to speak with your IT department to discuss any features of your system(s) or the information stored in various sources that would make production of ESI from those sources unduly burdensome or costly. Your IT department will be of invaluable assistance in evaluating whether we can claim that ESI from any of those sources is inaccessible within the meaning of the e-discovery rules and thereby possibly avoiding the expense of producing ESI from those sources. However, you still need to preserve potentially relevant ESI from those sources until the issue of ESI production from those sources has been resolved by agreement with opposing counsel or an order from the court.

11. *Processing and Production of ESI*

You need to anticipate that you may have to segregate and process for review and production an unknown quantity of electronic data. One way to limit the cost of e-discovery is to use filtering techniques to reduce the size of the data set that may need to be reviewed for privilege and/or produced in discovery. Common filtering techniques include "de-duplication" of identical documents or emails through the use of "hash methodologies," key-word or concept searches, and screening data by date ranges, custodians and/or file types.

12

These are issues we need to discuss at our initial meeting. You should assess whether your IT staff has the time and/or capacity to collect and process ESI for production in discovery in this matter. More importantly, you need to assess whether your IT staff should perform these types of tasks given the range of sanctions that could be imposed if ESI is lost in the process. Having your IT staff perform these tasks could require that they be deposed and opens their work up to review and potential criticism by our opponent and the court. It also diverts their attention from company business. While we have our own experienced IT staff who could provide technical or other assistance, there is a risk that if we assist in or actually perform these tasks, our staff could potentially become witnesses if a motion for sanctions were later filed, and in an extreme case, we could be disqualified from representing you. **Accordingly, unless it would be cost prohibitive or there are other good reasons not to do so in a given matter, we generally recommend that a qualified outside vendor be considered for managing the recovery and processing of ESI necessary for its production.** Please let us know if you have used any e-discovery vendors in the past and, if so, whether you were satisfied with their work and would be willing to use them again.

### OTHER E-DISCOVERY RELATED ISSUES

In addition to the issues noted above, at our initial meeting there are several other points that we need to discuss with you. They include:

- When the litigation hold was issued or the process began;

- What steps have been taken to implement a litigation hold;

- What documentation do you have concerning the steps taken to implement the litigation hold;

- The name and contact information of the person in charge of the hold process or any member of your legal department designated to answer questions;

- What types of ESI are in your possession, what formats is it stored in, and where are the data repositories or sources for that ESI located;

- How much ESI and how many custodians are involved.

Finally please let us know when the appropriate persons from your IT department are available to meet with us. We do not want to delay our initial meeting with you to cover these various issues, so our meeting with IT does not have to occur the same day. Depending upon the complexity of your systems, the meeting with your IT staff could run much longer than our meeting to discuss the issues raised above.

13

## SUMMARY

The duty to preserve and produce ESI has become central to the litigation process. The tasks required to comply with our respective obligations must be performed at the very beginning of a lawsuit, and again periodically throughout the course of the litigation. At our initial meeting, we will discuss with you the strategic implications of these ESI obligations and how our respective obligations will be met in connection with this matter. At that meeting, we will review with you any steps that have already been taken to preserve ESI and work with you to develop a clear plan to properly preserve and produce any potentially relevant ESI on a going-forward basis.

In some cases, e-discovery costs may have little or no impact on litigation or settlement strategies. In other cases, e-discovery may generate significant costs and require the diversion of personnel and resources needed to address a party's e-discovery obligations. The expense involved in locating, reviewing and producing ESI in some cases may warrant serious consideration of an early resolution of the claim. We will be glad to discuss these and any other issues or questions you may have at our initial meeting in the near future. Of course, should you have any questions about what steps should be taken to preserve ESI prior to our initial meeting, please immediately contact us at your earliest convenience.

14

00811-99578/10745555.4

# Exhibit C

Exhibit C - Page 48



# COUNTY OF LOS ANGELES
## OFFICE OF THE COUNTY COUNSEL
648 KENNETH HAHN HALL OF ADMINISTRATION
500 WEST TEMPLE STREET
LOS ANGELES, CALIFORNIA 90012-2713

MARY C. WICKHAM
County Counsel

March 29, 2019

TELEPHONE
(213) 974-1838
FACSIMILE
(213) 626-7446
TDD
(213) 633-0901
E-MAIL
tfaughnan@counsel.lacounty.gov

VIA U.S. MAIL AND
Email: stevemadison@quinnemanuel.com

Steven G. Madison, Esq.
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

> **Re:** **Retainer Agreement –**
> ***County of Los Angeles v. Villanueva, et al.***
> **Los Angeles Superior Court Case No. 19STCP000630**
> **RMIS No. 19-1150639*001**

Dear Mr. Madison:

I write on behalf of the County of Los Angeles ("County") in regards to your engagement to represent Los Angeles County Sheriff Alex Villanueva on the question of *whether, under the Los Angeles County Charter, the Sheriff had authority to settle the civil actions involving Mr. Mandoyan absent the approval of County Counsel and the Board of Supervisors* in Los Angeles Superior Court Case No. 19STCP00630 (*County of Los Angeles v. Alex Villanueva, et al.*) (the "Mandoyan Matter").

As you know, you were retained under Government Code section 31000.6(a), which authorizes the Board of Supervisors to employ legal counsel to assist the Sheriff in any case where the County Counsel would have a conflict of interest. To reiterate prior communications to the Sheriff, your representation of the Sheriff is limited to the scope of the Mandoyan Matter. The Board of Supervisors has not authorized your services for any other matter or purpose. In accordance with Government Code section 31000, the Board of Supervisors "may pay from any available funds such compensation as it deems proper for these special services." Accordingly, it is the Board of Supervisors who determines "the appropriate hourly rate or other fee structure for the employment of outside

HOA.102504652.1

Exhibit C - Page 49

Steven J. Madison, Esq.
March 29, 2019
Page 2

counsel selected by the sheriff." *See* Opinion of the Attorney General
No. 96-901, 80 Ops. Cal. Atty. Gen. 127.

     The maximum hourly rates (billed in one-tenth of an hour/six-minute
increments) for this matter have been set as follows:

- Attorneys: $495 (blended rate; partner and associate time)

- Paralegals: $165

     In addition to setting rates, the County also has standard billing
requirements and terms and conditions it requires of all contracted law firms.
Those terms, applicable to your firm, are detailed in the following pages. After
your review, please initial each page, sign and date at the end, and return the
enclosed copy of this letter accepting these terms. Thereafter, your firm may
remit invoices for payment in accord with these terms. Please take note that in
this matter, all of your invoices or payment inquiries should be submitted directly
to me. I will review your invoices and submit for payment.

## BILLING REQUIREMENTS

**SUBMISSION OF INVOICE**

     Invoices for services and reimbursable expenses must be submitted
monthly (in arrears). Each invoice must be for services performed and expenses
incurred commencing on the first day of the calendar month and ending on the
last day of that month. The monthly invoice must include **all** services and
reimbursable expenses incurred during the month. Charges for court reporters,
experts, document reproduction, and other recurrent expenses must be included in
the invoice for the month in which the cost was incurred.

     Please submit all other original invoices to:

     Thomas J. Faughnan
Senior Assistant County Counsel
Office of the Los Angeles County Counsel
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012

HOA.102504652.1

Exhibit C - Page 50

Steven J. Madison, Esq.
March 29, 2019
Page 3

## TIME CHARGES

All legal services must be billed in one-tenth of an hour (**.10/hour**) or six-minute increments. Legal services billed in quarter-hour or half-hour increments are not acceptable. The legal services category of the invoice must set forth: (1) the *date* of each service; (2) a *description* of the specific service rendered; (3) the *identity of the attorney or paralegal* rendering the service; (4) the *time expended* for each service; and (5) the *amount charged* for each service.

## DESCRIPTION OF SERVICE

Only professional services should be billed. There are numerous secretarial or clerical functions which are integral to the business of the law firm which do not constitute professional services. Such functions include scheduling meetings, collating, proofreading, calendaring, and processing of vendor bills. Such services are considered firm overhead expenses. Generic or general activity descriptions for purposes of invoicing are acceptable, in this matter, for payment. However, detailed descriptions of each billed service must be maintained by your firm and described with sufficient detail to permit: (1) a determination of the precise legal service provided, and (2) an assessment as to the appropriateness of the related time charge. Each specific service must be separately described. "Block billing" is not acceptable. Descriptions which are acceptable: (1) *identify* the purpose and attendees of the conference; (2) *describe* the form of discovery propounded or responded to; (3) *identify* the deponent and the party who noticed the deposition; (4) *provide* a general description of the documents reviewed; and (5) *specify* the nature and purpose of the research. Your firm's detailed descriptions may be audited or reviewed by a court or other authorized party.

## TIME EXPENDED

The time charged must reflect the *actual time* expended on the service. Standardized charges are not acceptable. Many documents are maintained as forms and are utilized repeatedly as modified for a particular case or matter. *Only* the time required for modification should be billed. Such billing practices also apply to similar or identical notices or subpoenas which are prepared with minimal modifications and served on multiple parties. *Only* the time spent on modifications should be billed.

## OVERHEAD EXPENSES

Expenses, such as document reproduction and scanning, postage, telephone charges (local and long distance), facsimile/telecopier (local and long

Steven J. Madison, Esq.
March 29, 2019
Page 4

distance), local (within the counties of Los Angeles, Orange, Riverside, San
Bernardino and Ventura) transportation costs (travel/mileage/parking), secretarial
or clerical time or overtime, on-line computer-assisted research, word processing,
books, office supplies, time responding to invoice audits or inquiries, and other
ordinary expenses which the firm incurs to maintain its offices are overhead
expenses and are **not** reimbursed by the County.

## REIMBURSABLE EXPENSES AND DISBURSEMENTS

Reimbursable expenses and disbursements include costs
attributable to conducting depositions (including transcript and videos fees),
retaining experts and consultants, messenger and investigative services, filing fees
for which the County is not exempt, and out-of-town travel expenditures.

The following guidelines should be observed with regard to these
particular cost items:

*Messenger/Courier/ Delivery/Express/Overnight Mail Services*.
The use of messengers and expedited mail services is considered part of the
normal overhead costs of the firm.  Such costs will *only* be reimbursed if they are:
(1) required because of an emergency situation over which the firm had no
control; or (2) necessary to ensure the safekeeping of sensitive documents or
materials.

*Travel*.  The County does not reimburse for taxis, mileage, meals,
parking or other *local* (within counties of Los Angeles, Orange, Riverside, San
Bernardino and Ventura) travel expenses.  When *out-of-town travel* is required,
mileage will be reimbursed.  The County will also reimburse for coach airline
travel only.  Should counsel or a retained expert elect to travel first-class, the
coach rate should be indicated on the travel voucher submitted with the invoice.
Airport parking will be reimbursed at various rates depending upon the location of
the lot.  Out-of-town ground transportation (taxi or rental car) will be reimbursed
at cost.  A per diem is provided for out-of-town meals.  The actual cost of meals
must be itemized and supported by receipts.  Lodging will be reimbursed on a per
night basis (single-occupancy, plus tax) with the submission of the hotel receipt.
Telephone bills and personal expenses, such as charges for "gift shop," "valet,"
"movies," bar," and the like, will not be reimbursed.

*Reproduction/Photocopying and Scanning*.  The internal copying
and scanning of documents are considered to be overhead items which are part of
the firm's cost of doing business.  The County expects all monthly copying and
scanning *projects* not exceeding **500 pages** to be performed internally.  A single
billing period may contain multiple copying and scanning "*projects*." Outside

Exhibit C - Page 52

Steven J. Madison, Esq.
March 29, 2019
Page 5

photocopying or scanning services should be used for large volume (exceeding 500 pages), or special-sized or formatted projects.

*Copying.* When documents are *copied* by an outside vendor, the County will reimburse the firm for the actual cost of the copying project not to exceed **$ .15 per page**. Should the number of copies exceed **2,500 pages**, the County shall be billed at a reduced rate not to exceed **$ .10 per page**. If the firm elects to internally copy a large volume (exceeding 500 pages) project, the County will reimburse the firm at a rate comparable to that charged by local outside vendors, not to exceed **$ .15 per page** for copies **over 500 pages** and **$ .10 per page** for copies **over 2,500 pages**.

*Scanning.* When documents are *scanned or imaged* by an outside vendor, the County will reimburse the firm for the actual cost of imaging not to exceed **$ .20 per page**. Hard copies or "blow-backs" produced by imaging vendors will be reimbursed at **$ .05 per page**. An additional charge of up to **$ .03 per hard copy** may be added if the documents are "bate-stamped." The County will reimburse the firm for projects **over 500 pages** at the firm's actual cost of scanning or imaging, "blow-backs," and bate-stamping not to exceed the allowable outside vendor rates for such services.

*Invoicing.* Copying and scanning charges must be documented, i.e., the number of pages and cost per page as reflected by the firm's records when copied or scanned internally, and by the vendor's invoice when copied or scanned outside. The firm or vendor invoice should specifically reference each copying or scanning project for which reimbursement is sought.

*On-Line Computer-Assisted Research.* Charges arising from Westlaw, LexisNexis, and other on-line computer research databases are non-reimbursable.

## OTHER STANDARD TERMS AND CONDITIONS

A.    Indemnification:

Your firm shall indemnify, defend and save harmless the County, its agents, officers and employees from and against any and all liability expense, including defense costs and legal fees, and claims for damages of any nature whatsoever, including, but not limited to, bodily injury, death, personal injury, or property damage (including your firm's property), in connection with your firm's operations or its services, including any workers' compensation suits, liability or expense, arising from or connected with services performed.

HOA.102504652.1

Exhibit C - Page 53

Steven J. Madison, Esq.
March 29, 2019
Page 6

B.    Insurance:

Without limiting your firm's indemnification of the County and its
officers, agents and employees, your firm shall provide and maintain at its
own expense the following programs of insurance covering your firm's
operations during the term of our engagement.

1.    Liability:  Such insurance shall be primary to and not contributing
with any other insurance maintained by the County shall name the
"County of Los Angeles" as an additional insured, and shall
include, but not be limited to:

a)    Comprehensive General Liability insurance endorsed for
Premises-Operations, Products/Completed Operations,
Contractual, Broad Form Property Damage, and Personal
Injury with a combined single limit of not less than
$1,000,000 per occurrence.

b)    Professional liability insurance with a liability limit of at
least $1,000,000 per claim.  In lieu of naming the County as
an additional insured, the policy may be endorsed as
follows:

"Insurance afforded by this policy shall also apply to the
liability assumed by the insured under the agreement with
the County of Los Angeles for legal services, provided such
liability results from an error, omission, or negligent act of
the insured, its officers, employees, agents, or
subcontractors.  All other provisions of this policy remain
unchanged."

c)    Comprehensive Auto Liability endorsed for all owned, non-
owned, and hired vehicles with a combined single limit of
at least $300,000 per occurrence.

2.    Workers' Compensation:  A program of Workers' Compensation
insurance in an amount and form to meet all applicable
requirements of the Labor Code of the State of California,
including Employers Liability with a $1,000,000 limit, covering all
persons providing services on behalf of your firm.

C.    Warranty of Adherence to the County's Child Support Compliance
Program:

Steven J. Madison, Esq.
March 29, 2019
Page 7

1. Your firm acknowledges that the County has established a goal of ensuring that all firms which benefit financially by contracting with the County are in compliance with their court ordered child, family and spousal support obligations in order to mitigate the economic burden otherwise imposed upon the County and its taxpayers.

2. As required by the County's Child Support Compliance Program (County Code Chapter 2.200) and without limiting your firm's duty to comply with all applicable provisions of law, your firm warrants that it is now in compliance and shall maintain compliance with employment and wage reporting requirements in the Federal Social Security Act (42 USC §653a) and California Unemployment Insurance Code §1088.5, and shall implement all lawfully served Wage and Earnings Withholding Orders or Child Support Services Department Notices of Wage and Earnings Assignment for Child or Spousal Support, pursuant to Code of Civil Procedure §706.031 and Family Code §5246(b).

D. Compliance with the County's Jury Service Program:

1. Jury Service Program:  Subject to the provisions of the County's ordinance entitled Contractor Employee Jury Service ("Jury Service Program") as codified in §2.203.010 through §2.203.090 of the County Code.

2. Written Employee Jury Service Policy:

a) Unless your firm has demonstrated to the County's satisfaction either that your firm is not a "Contractor" as defined under the Jury Service Program (County Code §2.203.020) or that your firm qualifies for an exception to the Jury Service Program (County Code §2.203.070), your firm shall have and adhere to a written policy that provides that its employees shall receive from your firm, on an annual basis, no less than five days of regular pay for actual jury service.  The policy may provide that employees deposit any fees received for such jury service with the your firm or that your firm deduct from the employee's regular pay the fees received for jury service.

b) For purposes of this Paragraph, "Contractor" means a person, partnership, corporation or other entity which has a

Exhibit C - Page 55

Steven J. Madison, Esq.
March 29, 2019
Page 8

    contract with the County and has received or will receive an aggregate sum of $50,000 or more in any 12 month period under one or more the County contracts or subcontracts. "Employee" means any California resident who is a full-time employee of your firm. "Full time" means 40 hours or more worked per week, or a lesser number of hours if: 1) the lesser number is a recognized industry standard as determined by the County, or 2) your firm has a long standing practice that defines the lesser number of hours as full time. Full time employees providing short term, temporary services of 90 days or less within a 12 month period are not considered full time for purposes of the Jury Service Program. If your firm uses any subcontractor to perform services for the County, the subcontractor shall also be subject to the provisions of this Paragraph. The provisions of this Paragraph shall be inserted into any such subcontract agreement.

c)    If your firm is not required to comply with the Jury Service Program, your firm shall have a continuing obligation to review the applicability of its "exception status" from the Jury Service Program, and your firm shall immediately notify the County if your firm at any time either comes within the Jury Service Program's definition of "Contractor" or if your firm no longer qualifies for an exception to the Jury Service Program. In either event, your firm shall immediately implement a written policy consistent with the Jury Service Program. The County may also require, at its sole discretion, that your firm demonstrate to the County's satisfaction that your firm either continues to remain outside of the Jury Service Program's definition of "Contractor" and/or that your firm continues to qualify for an exception to the Program.

E.    Independent Contractor Status:

    1.    This agreement is not intended, and shall not be construed to create the relationship of agent, servant, employee, partnership, joint venture, or association, as between the County and your firm.

    2.    Your firm understands and agrees that all your firm personnel furnishing services to the County are employees solely of your

Steven J. Madison, Esq.
March 29, 2019
Page 9

firm and not of the County for purposes of workers' compensation liability.

3.    Your firm shall bear the sole responsibility and liability for furnishing workers' compensation benefits to any of your firm's personnel for injuries arising from services performed.

F.    Warranty Against Contingent Fees:

Your firm warrants that no person or selling agency has been employed or retained to solicit or secure your employ upon an agreement or understanding for a commission, percentage, brokerage or contingent fee.

G.    Governing Laws:

This agreement shall be governed by and construed in accordance with the laws of the State of California and any action brought by either party on the agreement shall be brought in Los Angeles County.

H.    Compliance with Applicable Law:

1.    Your firm shall comply with all applicable federal, State, and local laws, rules, regulations and ordinances, and all provisions required thereby to be included in this agreement are hereby incorporated herein.

2.    Your firm shall indemnify and hold harmless the County, and its officers, agents, and employees, from and against any and all liability, damages, costs, and expenses, including, but not limited to, defense costs and attorneys' fees, arising from or related to any violation on the part of your firm or its employees, agents, or subcontractors of any such laws, rules, regulations, ordinances, or directives.

I.    County Lobbyists:

Your firm and each County lobbyist or County lobbying firm as defined in County Code §2.160.010, retained by your firm, shall fully comply with the County Lobbyist Ordinance, County Code Chapter 2.160.

Steven J. Madison, Esq.
March 29, 2019
Page 10

J.    Employment Eligibility Verification:

Your firm warrants that it fully complies with all statutes and regulations regarding employment of aliens and others, and that all its employees performing services hereunder meet the citizenship or alien status requirements contained in all statutes and regulations. Your firm shall obtain, from all covered employees performing services hereunder, all verification and other documentation of employment eligibility status required by all statutes and regulations as they currently exist and as they may be hereafter amended. Your firm shall retain such documentation for all covered employees for the period prescribed by law. Your firm shall indemnify, defend and hold harmless the County, its officers and employees from employer sanctions and any other liability which may be assessed against your firm or the County in connection with any alleged violation of any statute or regulation pertaining to the eligibility for employment of persons performing services.

K.    Fair Labor Standards:

Your firm shall comply with all applicable provisions of the Federal Fair Labor Standards Act and shall indemnify, defend, and hold harmless the County and its agents, officers, and employees from any and all liability, including, but not limited to, wages, overtime pay, liquidated damages, penalties, court costs, and attorneys' fees arising under any wage and hour law, including, but not limited to, the Federal Fair Labor Standards Act, for work performed by your firm's employees for which the County or its officers, agents and employee may be found jointly or solely liable.

L.    Record Retention and Inspection:

Your firm shall allow authorized agencies or any duly authorized representative to have the right to access, examine, audit, excerpt, copy or transcribe any pertinent transaction, activity, time cards or other records relating to your services under this agreement. Your firm shall keep such material, including all pertinent cost accounting, financial records and proprietary data for a period of four (4) years after termination or completion.

M.    Nondiscrimination and Affirmative Action:

1.    Your firm certifies and agrees that all persons employed by it, its affiliates, subsidiaries, or holding companies are and shall be treated equally without regard to or because of race, color, religion,

Steven J. Madison, Esq.
March 29, 2019
Page 11

ancestry, national origin, sex, age, physical or mental disability,
marital status, or political affiliation, in compliance with all
applicable federal and State anti-discrimination laws and
regulations.

2.   Your firm shall certify to, and comply with, the provisions of your
     firm's Equal Employment Opportunity Certification.

3.   Your firm shall take affirmative action to ensure that applicants are
     employed, and that employees are treated during employment,
     without regard to race, color, religion, ancestry, national origin,
     sex, age, physical or mental disability, marital status, or political
     affiliation, in compliance with all applicable federal and State anti-
     discrimination laws and regulations. Such action shall include, but
     is not limited to: employment, upgrading, demotion, transfer,
     recruitment or recruitment advertising, layoff or termination, rates
     of pay or other forms of compensation, and selection for training,
     including apprenticeship.

4.   Your firm certifies and agrees that it will deal with its
     subcontractors, bidders, or vendors without regard to or because of
     race, color, religion, ancestry, national origin, sex, age, or physical
     or mental disability, marital status, or political affiliation.

5.   Your firm certifies and agrees that it, its affiliates, subsidiaries, or
     holding companies shall comply with all applicable federal and
     State laws and regulations to the end that no person shall, on the
     grounds of race, color, religion, ancestry, national origin, sex, age,
     physical or mental disability, marital status, or political affiliation,
     be excluded from participation in, be denied the benefits of, or be
     otherwise subjected to discrimination.

N.   Assurance of Compliance with Civil Rights Laws

     Your firm assures that it shall comply with Subchapter VI of the Civil
     Rights Act of 1964, 42 USC §§ 2000e through 2000e (17), to the end that
     no person shall, on the grounds of race, religion, ancestry, national origin,
     sex, age, condition of physical handicap, marital status or political
     affiliation, be excluded from participation in, be denied the benefits of, or
     be otherwise subjected to discrimination under this agreement or under
     any project, program or activity supported by this agreement.

Steven J. Madison, Esq.
March 29, 2019
Page 12

O.  Confidentiality:

1.  Your firm shall maintain the confidentiality of all information which it may acquire arising out of or connected with activities in accordance with all applicable federal, State and County laws, regulations, ordinances and directives relating to confidentiality, including the Code of Professional Responsibility. Your firm shall inform all of its principals, employees and agents providing services hereunder of the confidentiality provisions.

2.  Your firm shall ensure that all attorneys, paralegals, and secretarial and clerical personnel having access to information relevant to your firm's provision of services under this agreement, are aware of and acknowledge the confidentiality requirements set forth in Paragraph 1, above.

3.  These confidentiality obligations shall survive this agreement's termination or expiration.

P.  Conflict of Interest:

Your firm shall comply with all conflict of interest laws, ordinances, and regulations now in effect or hereafter to be enacted.

Q.  Termination for Non-Appropriation of Funds:

Notwithstanding any other provision of this agreement, the County shall not be obligated for your firm's performance hereunder or by any provision of this agreement during any of the County's future fiscal years unless and until the County's Board of Supervisors appropriates funds for this agreement in the County's budget for each such future fiscal year. In the event that funds are not appropriated for this agreement, then this agreement shall terminate as of June 30 of the last fiscal year for which funds were appropriated. The County shall notify your firm in writing of any such non-allocation of funds at the earliest possible date.

R.  Termination for Insolvency:

The County may terminate this agreement for default in the event any of the following occur:

1.  Your firm's insolvency – your firm shall be deemed to be insolvent if it has ceased to pay its debts in the ordinary course of business or cannot pay its debts as they become due, whether it has committed

HOA.102504652.1

Exhibit C - Page 60

Steven J. Madison, Esq.
March 29, 2019
Page 13

an act of bankruptcy or not, and whether insolvent within the
meaning of the Federal Bankruptcy Law or not;

2.      Your firm's filing of a voluntary petition for reorganization or
bankruptcy;

3.      The appointment of a Receiver or Trustee for your firm;

4.      Your firm's execution of an assignment for the benefit of creditors.

S.      Authorization Warranty:

Your firm represents and warrants that the signatory to this agreement is
fully authorized to obligate your firm and that all corporate acts necessary
to the execution of this agreement have been accomplished.

T.      Changes and Amendments of Terms:

County reserves the right to change any portion of the work required under
this agreement, or amend its terms and conditions as may become
necessary.

U.      Validity:

The invalidity in whole or in part of any provision of this agreement shall
not void or affect the validity of any other provision.

V.      Waiver:

No waiver of a breach of any provision of this agreement by either party
shall constitute a waiver of any other breach of the provision or any other
provision of this agreement.  Failure of either party to enforce any
provision of this agreement at any time shall not be construed as a waiver
of that provision.  County's remedies as described in this agreement shall
be cumulative and additional to any other remedies in law or equity.

W.      Remedies Reserved to County:

The remedies reserved to County shall be cumulative and additional to any
other remedies provided in law or equity.

Steven J. Madison, Esq.
March 29, 2019
Page 14

X.  Complete Agreement and Interpretation:

This agreement supersedes all prior communications and all previous
written and oral agreements, and shall constitute the complete and
exclusive statement of understanding between County and firm relating to
the subject matter of this agreement.  No provision of this agreement is to
be interpreted for or against either party because that party's legal
representative drafted such provision.

Please feel free to contact me with any questions.

Very truly yours,

MARY C. WICKHAM
County Counsel

By

THOMAS J. FAUGHNAN
Senior Assistant County Counsel
Executive Office

TJF:mr

QUINN EMANUEL URQUHART & SULLIVAN, LLP

_____          _____
By Steven G. Madison                        Date