QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (appearance *pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Daniel C. Posner (CA Bar No. 232009)
  danposner@quinnemanuel.com
  Mari F. Henderson (CA Bar No. 307693)
  marihenderson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

QUINN EMANUEL URQUHART &SULLIVAN, LLP
  Asher Griffin (appearance *pro hac vice*)
  ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| OWEN DIAZ,<br><br>          Plaintiff,<br><br>     v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC.,<br><br>          Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**DEFENDANT TESLA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Hearing Date: January 10, 2024<br>Hearing Time: 2:00 p.m.<br><br>Place: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .....................................................................................................................2

LEGAL STANDARD ..............................................................................................................4

ARGUMENT .........................................................................................................................5

I.      THE COURT SHOULD REDUCE THE REQUESTED LODESTAR ...........................5

      A.     Mr. Diaz's Counsel's Hourly Rates Are At The High End Of
            Reasonableness ..............................................................................................5

      B.     Mr. Diaz's Counsel Expended Unreasonably High Hours .......................................6

            1.     Reduction For Excessive Billing After First Trial .......................................6

            2.     Reduction For Duplication Of Effort And Inefficiency ...............................9

            3.     Reduction For Excessive Billing On Thirteen "Focus Groups" ..................11

            4.     Reduction For Unreasonable Billing In .1 Hour Increments ......................12

            5.     Reduction For Unreasonable Requests For Fees Incurred On Travel...........12

            6.     Reduction For Billing To Attend Unrelated Elon Musk Trial .....................13

            7.     Reduction For Unsupported Time Entries ...................................................13

      C.     Mr. Diaz Obtained Only Limited Results ...................................................14

II.     THE COURT SHOULD NOT APPLY ANY MULTIPLIER ........................................16

      A.     The Novelty And Complexity Of This Case Do Not Support A Multiplier ...........17

      B.     The Desirability Of This Case Does Not Support A Multiplier..............................19

      C.     The Public Interest Does Not Support A Multiplier .................................................22

III.    THE COURT SHOULD REDUCE MR. DIAZ'S REQUEST FOR EXPENSES .............23

IV.    MR. DIAZ IS NOT ENTITLED TO EXCESSIVE "FEES ON FEES" ..............................24

CONCLUSION ....................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Anders v. Verizon Servs. Corp.*,
2011 WL 5837239 (S.D.N.Y. Nov. 18, 2011) ....................................................................... 19

*Antuna v. Cnty. of Los Angeles*,
2016 WL 11743263 (C.D. Cal. Aug. 31, 2016) ........................................................................ 6

*Antuna v. Cnty. of Los Angeles*,
2016 WL 11743321 (C.D. Cal. Mar. 8, 2016) ........................................................................ 11

*Baker v. Barnard Constr. Co.*,
1999 WL 35809483 (D.N.M. June 8, 1999) ............................................................................. 7

*Banas v. Volcano Corp.*,
47 F. Supp. 3d 957 (N.D. Cal. 2014) ..................................................................................... 24

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................................................................... 5

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................................................... 5, 17, 18

*Brown v. Cascade Mgmt., Inc.*,
2018 WL 4207097 (D. Or. Sept. 4, 2018) ............................................................................. 24

*Chalmers v. City of Los Angeles*,
676 F. Supp. 1515 (C.D. Cal. 1987) ............................................................................. 4, 17, 22

*Chambers v. Whirlpool Corp.*,
980 F.3d 645 (9th Cir. 2020) ....................................................................................... 18, 21, 22

*Chavez v. Stomp*,
2014 WL 12796784 (D.N.M. Feb. 27, 2014) ........................................................................ 13

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ............................................................................................................ 19, 22

*Cunningham v. Cnty. of Los Angeles*,
879 F.2d 481 (9th Cir. 1988) ............................................................................................. 4, 17

*Davis v. City of San Francisco*,
976 F.2d 1536 (9th Cir. 1992) ............................................................................................... 19

*Davis v. Prison Health Servs.*,
2012 WL 4462520 (N.D. Cal. Sept. 25, 2012) ..................................................................... 22

*De Jesus Ortega Melendres v. Arpaio*,
2017 WL 10808812 (9th Cir. Mar. 2, 2017) ........................................................................... 4

*Denny v. Elizabeth Arden Salons, Inc.*,
456 F.3d 427 (4th Cir. 2006) ................................................................................................. 19

*Domino's Pizza, Inc. v. McDonald*,
    546 U.S. 470 (2006) ................................................................................................ 19

*Edmo v. Idaho Dep't of Correction*,
    2022 WL 16860011 (D. Idaho Sept. 30, 2022) ............................................... 17, 18

*Elec. Constr. Indus. Prefunding Credit Reimbursement Program v. Veterans Elec., LLC*,
    2021 WL 308545 (E.D. Wis. Jan. 29, 2021) ............................................................ 9

*Farrar v. Hobby*,
    506 U.S. 103 (1992) ................................................................................................ 14

*Faulk v. Duplantis*,
    2015 WL 3539637 (E.D. La. June 4, 2015) .............................................................. 7

*Faush v. Tuesday Morning, Inc.*,
    808 F.3d 208 (3d Cir. 2015) ................................................................................... 19

*Galarza v. Fitness Int'l LLC*,
    2016 WL 11464176 (M.D. Fla. Dec. 9, 2016) ........................................................ 19

*Gary v. Unum Life Ins. Co. of Am.*,
    2023 WL 196172 (D. Or. Jan. 17, 2023) ................................................................. 16

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) .................................................................................. 4

*Greater Los Angeles Council on Deafness v. Cmty. Television of S. California*,
    813 F.2d 217 (9th Cir. 1987) ................................................................................... 18

*Greenpeace, Inc. v. Stewart*,
    2020 WL 2465321 (9th Cir. May 12, 2020) .............................................. 5, 17, 25

*Gries v. Zimmer, Inc.*,
    795 F. Supp. 1379 (W.D.N.C. 1992) ........................................................................ 7

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
    100 F.3d 691 (9th Cir. 1996) ................................................................................... 17

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ....................................................................................... 15

*Hennessy v. Penril Datacomm Networks, Inc.*,
    1994 WL 630575 (N.D. Ill. Nov. 2, 1994) .............................................................. 21

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ......................................................................................... 5, 6, 14

*Hernandez v. Grullense*,
    2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ........................................... 6, 9, 12, 15

*Herrera v. FCA US LLC*,
    2020 WL 12702510 (S.D. Cal. Nov. 23, 2020) ...................................................... 12

*Herrington v. Cnty. of Sonoma*,
  883 F.2d 739 (9th Cir. 1989) ................................................................................ 6

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
  25 F. Supp. 2d 127 (E.D.N.Y. 1998) ..................................................................... 7

*Isaac v. Landmark Title Servs., Inc.*,
  2006 WL 8432159 (S.D. Fla. May 19, 2006) ....................................................... 21

*Jaffee v. Redmond*,
  142 F.3d 409 (7th Cir. 1998) ............................................................................... 15

*John Meggs v. Gomez, Inc.*,
  2018 WL 11355448 (C.D. Cal. July 12, 2018) ..................................................... 24

*Jones v. Local 520, Inter. Union of Operating Engineers*,
  603 F.2d 664 (7th Cir. 1979) ............................................................................... 19

*Kang v. Credit Bureau Connection, Inc.*,
  2023 WL 6811994 (E.D. Cal. Oct. 16, 2023) ....................................................... 19

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ............................................................................. 5, 22

*Koch v. Jerry W. Bailey Trucking, Inc.*,
  51 F.4th 748 (7th Cir. 2022) ............................................................................... 15

*Krekelberg v. City of Minneapolis*,
  2023 WL 4828382 (D. Minn. July 27, 2023) ......................................................... 7

*In re Lease Oil Antitrust Litig. (No. II)*,
  186 F.R.D. 403 (S.D. Tex. 1999) ......................................................................... 21

*Lesevic v. Spectraforce Techs. Inc.*,
  2021 WL 1599310 (N.D. Cal. Apr. 23, 2021) ....................................................... 10

*Lopez v. San Francisco Unified Sch. Dist.*,
  385 F. Supp. 2d 981 (N.D. Cal. 2005) .................................................................. 20

*Macedonia Church v. Lancaster Hotel Ltd. P'ship*,
  270 F.R.D. 107 (D. Conn. 2010) .......................................................................... 19

*In re MagSafe Apple Power Adapter Litig.*,
  2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ........................................................... 6

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
  2007 WL 5279897 (C.D. Cal. Nov. 5, 2007) .................................................... 11, 24

*Mayfield v. Cnty. of Merced*,
  2014 WL 5822913 (E.D. Cal. Nov. 10, 2014) ...................................................... 19

*Mays v. Stobie*,
  2012 WL 914919 (D. Idaho Mar. 16, 2012) ......................................................... 15

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.*,
200 F.3d 518 (7th Cir. 1999) .................................................................................. 9

*Medina v. City of Menlo Park*,
2009 WL 10710479 (N.D. Cal. Oct. 2, 2009) .................................................. 20, 25

*Migis v. Pearle Vision, Inc.*,
135 F.3d 1041 (5th Cir. 1998) .............................................................................. 15

*Miletak v. AT&T Servs., Inc.*,
2020 WL 6497925 (N.D. Cal. Aug. 3, 2020) ......................................................... 5

*Mooney v. Roller Bearing Co. of Am., Inc.*,
2023 WL 6979645 (W.D. Wash. Oct. 23, 2023) .................................................. 20

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996) .................................................................................. 22

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ................................................................................ 9

*Navarro v. DHL Glob. Forwarding*,
2018 WL 2328191 (C.D. Cal. May 21, 2018) ....................................................... 23

*Newton v. Equilon Enterprises, LLC*,
411 F. Supp. 3d 856 (N.D. Cal. 2019) .................................................................. 23

*Nichols v. Illinois Dep't of Transportation*,
2019 WL 157915 (N.D. Ill. Jan. 10, 2019) ........................................................... 13

*Olzman v. Lake Hills Swim Club, Inc.*,
495 F.2d 1333 (2d Cir. 1974) ............................................................................... 19

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) ........................................................................................ 16, 17

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
483 U.S. 711 (1987) .............................................................................................. 22

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) ................................................................................... 17, 18, 22

*Peterson v. Sutter Med. Found.*,
2023 WL 5181634 (N.D. Cal. Aug. 10, 2023) ....................................................... 5

*Public.Resource.org v. United States Internal Revenue Serv.*,
2015 WL 9987018 (N.D. Cal. Nov. 20, 2015) ........................................... 18, 23, 25

*Puckett v. Yamhill Cnty.*,
145 F.3d 1340 (9th Cir. 1998) (unpublished) ....................................................... 22

*Resurrection Bay Conservation All. v. City of Seward, Alaska*,
640 F.3d 1087 (9th Cir. 2011) .............................................................................. 19

*Richard v. St. Tammany Par. Sheriff's Dep't,*
  2022 WL 4534728 (E.D. La. Sept. 28, 2022) .................................................... 16

*Ridgeway v. Wal-Mart Stores Inc.,*
  269 F. Supp. 3d 975 (N.D. Cal. 2017) ............................................................. 12

*Rosenfeld v. U.S. Dep't of Just.,*
  904 F. Supp. 2d 988 (N.D. Cal. 2012) ............................................................. 25

*Sako v. Wells Fargo Bank. N.A.,*
  2016 WL 2745346 (S.D. Cal. May 11, 2016) .................................................. 23

*Salmeron v. Ford Motor Co.,*
  2020 WL 9217979 (C.D. Cal. July 14, 2020) ................................................... 10

*Schneider v. Cnty. of San Diego,*
  32 F. App'x 877 (9th Cir. 2002) (unpublished) ................................................ 25

*Schwarz v. Sec'y of Health & Hum. Servs.,*
  73 F.3d 895 (9th Cir. 1995) .............................................................................. 25

*In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.,*
  867 F.3d 791 (7th Cir. 2017) ............................................................................ 18

*Seebach v. BMW of N. Am., LLC,*
  2020 WL 4923664 (E.D. Cal. Aug. 21, 2020) ........................................... 23, 25

*Shumate v. Twin Tier Hosp., LLC,*
  655 F. Supp. 2d 521 (M.D. Pa. 2009) .............................................................. 19

*Small v. Univ. Med. Ctr.,*
  2018 WL 5793155 (D. Nev. Nov. 5, 2018) ...................................................... 11

*Stewart v. Gates,*
  987 F.2d 1450 (9th Cir. 1993) ..................................................................... 16, 17

*Stonebrae, L.P. v. Toll Bros.,*
  2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ...................................................... 9

*Strategic Partners, Inc. v. FIGS, Inc.,*
  2021 WL 8917973 (C.D. Cal. Oct. 29, 2021) .................................................. 25

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .................................................... 13

*Thompson v. Barrett,*
  599 F. Supp. 806 (D.D.C. 1984) ...................................................................... 17

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.,*
  2018 WL 11471572 (N.D. Cal. July 24, 2018) ................................................ 25

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
  896 F.2d 403 (9th Cir. 1990) ........................................................................... 11

*Vargas v. Howell*,
  949 F.3d 1188 (9th Cir. 2020) ......................................................................... 14, 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) .................................................................................. 12

*Wells v. Unisource Worldwide, Inc.*,
  289 F.3d 1001 (7th Cir. 2002) ................................................................................. 22

*Westerfield v. Wade*,
  2008 WL 1931240 (C.D. Cal. Apr. 9, 2008) .............................................................. 7

*Whitaker v. E.D.D. Inv. Co.*,
  2022 WL 16888494 (C.D. Cal. Aug. 11, 2022) ......................................................... 10

*Wynn v. Chanos*,
  2015 WL 3832561 (N.D. Cal. June 19, 2015) ........................................................... 10

*Zhang v. Cnty. of Monterey*,
  2021 WL 2322940 (N.D. Cal. June 6, 2021) ........................................................ 22, 23

## Statutes

42 U.S.C. § 1981 .................................................................................... 4, 18, 19, 20

42 U.S.C. § 1988 ................................................................................. 4, 5, 9, 22, 23

## Other Authorities

*Fees and Expenses*, ABA.ORG (Dec. 3, 2020) ............................................................. 6

TESLA'S OPP. TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

## PRELIMINARY STATEMENT

After plaintiff Owen Diaz rejected the Court's $15 million remittitur and instead subjected the Court and parties to an additional 18 months of litigation and a full retrial on damages, the second jury awarded Mr. Diaz only $3.175 million. Nevertheless, Mr. Diaz asks this Court to award him $10,413,774.25 in attorneys' fees—more than three times the amount of the judgment. (Dkt. 496 ("Mot.").) Mr. Diaz bases this figure on $6,621,068.50 in fees actually incurred, plus an effective multiplier of nearly 1.6. Mr. Diaz's fee request is grossly excessive and the Court should reduce it.

*First*, the Court should substantially reduce Mr. Diaz's requested lodestar because his counsel's billing records and practices reflect substantial unnecessary duplication of effort, inefficiencies, and excessiveness. The majority of the "lodestar" base for the request is premised on fees incurred ***after*** the first verdict in this case—even though the second phase was shorter in duration and more limited in scope. And to the extent Mr. Diaz's attorneys felt they were playing with "house money" after they obtained a liability verdict—leading them to increase the size of their team and the hours they spent on the case, knowing they stood to be reimbursed no matter the outcome of the damages retrial—this Court has ample discretion to further reduce their requested fee award to control for such "moral hazard."

Mr. Diaz also conspicuously avoids addressing the "results obtained," which is widely recognized as the most important factor in determining the lodestar. Here, that factor also supports a reduced lodestar after Mr. Diaz recovered a judgment that he described as "plainly inadequate" to compensate him or punish Tesla. (Dkt. 478 at 23.) For all the reasons discussed below, the Court should reduce Mr. Diaz's requested attorneys' fees to no more than $2,763,003.68.

*Second*, there is no basis to apply a multiplier to the lodestar—let alone by almost doubling it as Mr. Diaz requests. The factors on which Mr. Diaz principally relies to support a multiplier— the supposed (i) novelty and complexity and (ii) undesirability of the case—are deemed subsumed into the lodestar calculus and thus cannot justify a multiplier as a matter of law. In any event, his assertion of novelty is premised on a mischaracterization of this Court's ruling on a jury instruction, which did not break new ground, and this case was clearly "desirable" for counsel—as evident by the army of experienced attorneys who were eager to assist Mr. Diaz in this case.

*Third*, Mr. Diaz's requests for expenses are excessive and require substantial downward adjustments, and *fourth*, Mr. Diaz is not entitled to excessive "fees on fees" relating to this motion..

## BACKGROUND

Mr. Diaz filed his complaint in October 2017 in state court.  After Tesla removed the case to federal court, the parties engaged in discovery and motions practice for more than two years. Following the Court's December 2019 order on summary judgment, the parties participated in extensive pretrial proceedings in advance of the first trial on liability and damages.

The first trial commenced on September 26, 2021 and spanned seven court days.  The Court allotted both sides 12 hours to address numerous issues of liability and damages.  (Dkt. 189; Dkt. 263.)  Mr. Diaz called 14 witnesses; Tesla two.  On October 4, 2021, the jury found Tesla liable and awarded Mr. Diaz $6.9 million in compensatory damages and $130 million in punitive damages.

From the filing of the complaint through the first verdict, Mr. Diaz's legal team included eight attorneys (three partners and five associates), along with six law clerks, legal assistants, and paralegals.  (Declaration of Daniel C. Posner ("Posner Decl.") ¶ 6.)  During the first trial, his team included five attorneys from two law firms.  (*Id.* ¶ 15.)  Mr. Diaz's team billed **3,925.1 hours** total— including 497.8 hours during the first trial—to bring this case to its first verdict, for which Mr. Diaz requests **$3,025,357.50** in fees.  (*Id.* ¶¶ 9, 15.)

On Tesla's post-trial motion (Dkt. 317), the Court upheld the finding of liability but found the damages "exceeded "the maximum amount supportable by proof," and denied Tesla's motion on the condition that Mr. Diaz accept a remitted damages award of $15 million ($1.5 million in compensatory damages and $13.5 million in punitive damages).  (Dkt. 328 at 36, 43.)  Rather than accept the generous remittitur, Mr. Diaz moved to certify the post-trial order for interlocutory appeal under 28 U.S.C. § 1292(b) (Dkt. 333), which this Court flatly rejected after finding Mr. Diaz failed to meet even one of the requirements for such relief (Dkt. 346 at 5-6).  On June 21, 2022, Mr. Diaz rejected the remittitur (Dkt. 347) and instead elected to proceed with a new trial on damages.

The Court determined that the second trial would be limited to damages, not liability, but would otherwise mirror the first, with the same exhibits and witnesses as before.  (Dkt. 409; *see also*

Dkt. 376.)  With liability secured, Mr. Diaz more than doubled his roster of attorneys, increasing his team to include 19 attorneys from four law firms, including 12 partners.  (Posner Decl. ¶ 7.)

The second trial took place over five Court days from March 27 through March 31, 2023.  The Court allotted each side only nine hours to present their cases.  Mr. Diaz called 10 witnesses; Tesla two.  Mr. Diaz's legal team during the retrial included 12 attorneys.  (*Id.* ¶ 16.)  Despite being more limited than the first trial in duration and scope, Mr. Diaz's counsel billed more time during the retrial—537.33 hours—than during the first trial.  (*Id.* ¶ 17.)

On April 3, 2023, the jury awarded Mr. Diaz $175,000 in compensatory damages ($6.725 million less than the first verdict and $1.325 million less than the rejected remittitur), and $3 million in punitive damages ($127 million less than the first verdict and $10.5 million less than the rejected remittitur).  (Dkt. 463.)  Mr. Diaz characterized the second verdict as "plainly inadequate to compensate Mr. Diaz for the emotional distress the record shows he suffered in this case or to punish Tesla and deter it from similar reprehensible conduct in the future."  (Dkt. 478 at 23.)  Indeed, the second verdict (understandably) caused Mr. Diaz to regret his decision to reject the remittitur, as evidenced by his request for a do-over (*see* Dkt. 478 at 35 ("The Court should … offer Plaintiff a renewed choice between the Court's previously determined remittitur and a new damages trial.")), which the Court rightly rejected (Dkt. 491 at 2 n.1 ("[T]he reason there was a second jury trial at all was because Diaz rejected remittitur—which he was entitled to do.  He now brings a motion in part to ask for a second chance to accept the initial remittitur, to which he is no longer entitled.")).

All told, Mr. Diaz's legal team billed **4,484.58 hours** from the first verdict through the second, for which he requests **$3,535,947.50** in attorney's fees.  (Posner Decl. ¶ 10.)  The following chart (*id.* ¶ 13) depicts how Mr. Diaz's legal bills ballooned after securing the liability verdict:

| Phase | Counsel | Hours Billed | Fees Requested |
|---|---|---|---|
| **Diaz's Complaint Through First Verdict** (*September 2017 to October 4, 2021*) | 2 Law Firms 3 Partners 6 Associates 1 Law Clerk 4 Paralegals 1 Legal Assistant | 3,925.1 hours | $3,025,357.50 |

| | | | |
|---|---|---|---|
| **Since First Verdict** (*October 5, 2021 to Present*) | 4 Law Firms 12 Partners 1 Of-Counsel 6 Associates 2 Law Clerks 10 Paralegals | 4,484.58 hours | $3,535,947.50 |

## LEGAL STANDARD

The Court may award the prevailing party a reasonable attorney's fee in cases governed by 42 U.S.C. § 1981.  42 U.S.C. § 1988(b).  The "presumptively reasonable" fee is determined by the "lodestar" calculation, which requires multiplying the number of hours the prevailing party reasonably expended by the reasonable hourly rate for each lawyer.  *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988).  Counsel bears the burden of establishing reasonable hours, and "[t]hose hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary."  *Chalmers City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987).  "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application."  *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quotations and citation omitted).

"The lodestar is presumed to represent a reasonable fee, unless evidence shows that an adjustment upward or downward is necessary to determine a reasonable fee, taking into account those *Kerr* factors not subsumed within the lodestar calculation."  *De Jesus Ortega Melendres v. Arpaio*, 2017 WL 10808812, at *1 (9th Cir. Mar. 2, 2017).[1]  "The burden of proving that such an

---

[1] The *Kerr* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

1   adjustment is necessary to the determination of a reasonable fee is on the fee applicant." *Blum v.*

2   *Stenson*, 465 U.S. 886, 898 (1984).[2]

3   <u>**ARGUMENT**</u>

4   **I.    <u>THE COURT SHOULD REDUCE THE REQUESTED LODESTAR</u>**

5          Mr. Diaz seeks a lodestar of $6,621,068.50 in fees based on 8,438.48 hours billed.  (Mot.

6   19-20.)[3]  Tesla does not challenge Mr. Diaz's counsel's billing rates—other than to note below that

7   the rates are already at the high end of reasonableness.  Tesla ***does*** challenge as unreasonable the

8   excessive amount of hours billed by Mr. Diaz's 19 attorneys from four law firms for what was,

9   essentially, a single plaintiff's claim for workplace discrimination that resulted in a mere $3,175,000

10  judgment.   As discussed below, Mr. Diaz's counsel's billing entries reflect excessiveness,

11  inefficiencies, and duplication of effort, in addition to other instances of unreasonable billing

12  practices justifying a substantial reduction in the lodestar..

13         **A.    <u>Mr. Diaz's Counsel's Hourly Rates Are At The High End Of Reasonableness</u>**

14         While Tesla does not seek a reduction of the lodestar based on the unreasonableness of the

15  billing rates of Mr. Diaz's counsel, the rates sought (though not actually charged to Mr. Diaz, who

16  paid no fees)—ranging from $350 to $1,275 for attorneys—are at the higher end of those typically

17  charged in the Bay Area.  *See, e.g.*, *Peterson v. Sutter Med. Found.*, 2023 WL 5181634, at *7 (N.D.

18  Cal. Aug. 10, 2023) ("requested rate of $997.30 is higher than the prevailing market rate in the [Bay

19  Area] community, given his 22 years of experience"); *Miletak v. AT&T Servs., Inc.*, 2020 WL

20  6497925, at *6 (N.D. Cal. Aug. 3, 2020) ("District courts in Northern California have found that

21  rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable.");

22  *In re MagSafe Apple Power Adapter Litig.*, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In

23  the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from

24

25

26  [2] These "standards applicable to 42 U.S.C. § 1988 fee awards 'are generally applicable in all cases
    in which Congress has authorized an award of fees to a prevailing party.'"  *Greenpeace, Inc. v.*
27  *Stewart*, 2020 WL 2465321, at *4 (9th Cir. May 12, 2020) (quoting *Hensley*, 461 U.S. at 433 n.7).

28  [3] Mr. Diaz nowhere states the total amount of the lodestar he seeks.  Tesla determined this amount
    by adding up the "lodestar" amounts in the far right column of the chart at pages 19-20 of his motion.

$285 to $510").  Moreover, these rates that already fall on the high end will be further enhanced by the contingency fee Mr. Diaz's attorneys stand to earn.[4]

Mr. Diaz's attorneys concede they are claiming billing rates commensurate with top, national commercial law firms "such as Loeb & Loeb, Skadden Arps, and Kirkland & Ellis."  (Alexander Decl. ¶ 31; *see* Organ Decl. ¶ 28 ("I follow and research the rates that firms like Quinn Emanuel and other defense firms charge so that I can ensure that the rates of our firm and those for whom I submit attorney's fees declarations are comparable.").)  As such, it is hardly the case that Mr. Diaz's counsel receives "cut-rate compensation" (Mot. 17), or that the sophistication of their work exceeded the rates charged.  Accordingly, even if the rates charged are "reasonable," they by no means support any enhancement in the overall fee award.

### B.   Mr. Diaz's Counsel Expended Unreasonably High Hours

"[T]he district court should exclude from [the] initial calculation of the lodestar hours that were not 'reasonably expended,' including where a case is overstaffed or where claimed hours are 'excessive, redundant, or otherwise unnecessary.'"  *Hernandez v. Grullense*, 2014 WL 1724356, at *5 (N.D. Cal. Apr. 30, 2014) (Orrick, J.) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  These considerations support substantial reductions in the lodestar that Mr. Diaz seeks.

#### 1.   Reduction For Excessive Billing After First Trial

"[D]uplication of effort … necessitates some reduction of the hours claimed."  *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 747 (9th Cir. 1989).  And when a case involves a new trial, courts overwhelmingly agree that a substantial reduction is warranted for work relating to the new trial— especially where the new trial is confined (as here) to the issue of damages.  *See, e.g.*, *Antuna v. Cnty. of Los Angeles*, 2016 WL 11743263, at *4 (C.D. Cal. Aug. 31, 2016) (reducing hours in fee application for damages retrial: "312.70 hours billed by one attorney to re-try the limited issue of non-economic damages for one plaintiff is excessive … given that the scope of the second trial was

---

[4] Mr. Diaz's counsel admits that their fees are contingency-based (Organ Decl. ¶ 8), but have refused to divulge the percent they stand to obtain.  A reasonable assumption is that their share will be at least 30%.  *See Fees and Expenses*, ABA.ORG (Dec. 3, 2020), https://www.americanbar.org/groups/legal_services/milvets/aba_home_front/information_center/working_with_lawyer/fees _and_expenses/ (contingent fees are "often one-third to 40 percent[] of the recovery").

to retry an issue presented only several months ago in the first trial"); *Westerfield v. Wade*, 2008 WL 1931240, at *6 (C.D. Cal. Apr. 9, 2008) ("The second trial in this case was essentially a 'streamlined' version of the first trial.  Thus, … this amount of time is excessive and redundant given the time expended preparing for the first trial…. Plaintiff's hours in preparation for the second trial should be reduced"); *Faulk v. Duplantis*, 2015 WL 3539637, at *3 (E.D. La. June 4, 2015) (reducing "attorney fees incurred because of a retrial on damages" where the defendant was "free of fault with respect to the first jury's untenable verdict" because "it would be unfair to cast [defendant] with the entirety of the attorney fees incurred because of the new trial").[5]

Here, for many reasons, Mr. Diaz's counsel should have expended **fewer** hours after the first trial than before.  The first phase of the case was almost twice as long as the second (1,449 days from filing the complaint through the first verdict, but only 771 days since the first verdict).  The first phase included, among other tasks, counsel's initial investigation into the case, preparation of the complaint, extensive fact discovery (written discovery, document review, depositions, etc.), expert disclosures and discovery, trial preparation with witnesses and documents that had not been presented at trial before, pretrial proceedings and motions, and a trial on liability and damages.  In contrast, the second phase was limited to three motions (Tesla's motion for new trial, Tesla's motion to include liability in the retrial, and Mr. Diaz's unpersuasive request to appeal that ruling under 28 U.S.C. § 1292(b)), followed by more limited pretrial proceedings (given that many issues involving were already decided in the first phase), and then a more limited trial on damages alone.

---

[5] *See also, e.g.*, *Krekelberg v. City of Minneapolis*, 2023 WL 4828382, at *5 (D. Minn. July 27, 2023) ("[T]he Court finds it appropriate to discount the work done in preparation for the second trial, given the repetitiveness of some of the work and apparent inefficiencies.  While, of course, trial preparation was necessary given the two-year gap between the first and second trial, the Court concludes that the number of hours reported by Krekelberg's attorneys are excessive, given that the case had already gone to trial, and indicate redundant or otherwise inefficient work.  The Court finds a 60 percent reduction … to be appropriate."); *Baker v. Barnard Constr. Co.*, 1999 WL 35809483, at *4 (D.N.M. June 8, 1999) (reducing plaintiffs' requested hours for second, streamlined trial as "an unreasonable amount of time spent to prepare and present this case a second time"); *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp. 2d 127, 133 (E.D.N.Y. 1998) ("[T]he Court finds it inappropriate to award fees for more than 100 attorney hours spent preparing for the second trial; this amount is excessive, in the Court's view, given that much of this preparation was duplicative of the preparation for the first trial"); *Gries v. Zimmer, Inc.*, 795 F. Supp. 1379, 1387 (W.D.N.C. 1992) (reducing by 65% time charged "for preparation of the second trial" due to "duplication").

Likewise, the second trial itself should have required less attorney time—not more—than the first.  The Court tightly limited the evidence in the second trial to the same "evidence presented in the previous trial."  (Dkt. 409; *see also* Dkt. 376.)  In other words, Mr. Diaz's counsel had already prepared for and examined all the same witnesses who testified in the second trial.  The entirety of Mr. Diaz's same trial team from the first trial participated in the second—so there was no institutional knowledge lost as a result of a change in counsel.  Further, because the second trial was limited to damages, substantial evidence and a number of issues that were relevant to the first trial were not presented in the retrial.  For example, the entirety of Tesla's defense to liability based on the employer-contractor relationship, and all legal issues (jury instructions, motions *in limine*, etc.) relating to liability, were absent from the second trial.  The second trial was also shorter than the first, spanning only five trial days as compared to seven for the first trial.

Despite the far more limited length and scope of the second phase of the case, Mr. Diaz's attorneys billed ***550 more hours*** after the first verdict on October 5, 2021 (4,484.58 hours) than during the prior entirety of this case (3,925.1 hours).  (Posner Decl. ¶ 11.)  This translates to a request for $3,025,357.50 in lodestar fees for work performed through the first verdict, and $3,535,947.50 for work performed after.  (*Id.* ¶ 12.)  Indeed, Mr. Diaz's counsel billed substantially more during the shorter, more narrow second trial than they had billed at any time before, as shown below:



No reasonable client would permit their attorneys to double his legal bill after liability was already resolved in his favor.  Instead, it is clear that a "moral hazard" developed after Mr. Diaz obtained a liability verdict and the Court awarded a damages-only retrial.  *Elec. Constr. Indus.*

*Prefunding Credit Reimbursement Program v. Veterans Elec., LLC*, 2021 WL 308545, at *3 (E.D. Wis. Jan. 29, 2021) (quoting *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 521 (7th Cir. 1999)).  From that point forward, Mr. Diaz's attorneys—assured that they had secured their right to reimbursement of their fees as a prevailing party under § 1988—were free to indulge and overspend without risk of loss in pursuit of more damages.  Based on the belief that Tesla would bear the fees for this vastly increased expenditure of hours, the budget ballooned, the attorney team expanded significantly, and hours flowed.  But that belief was unwarranted.  The Court's role in adjudicating fee motions is to "guard against moral hazard—the tendency to take additional risks (or run up extra costs) if someone else pays the tab."  *Id.*  It is unreasonable for Mr. Diaz's attorneys to have spent more hours in connection with a damages-only new trial featuring only a subset of the same evidence from before than on all the work they conducted before the retrial.

Based on the excessiveness of the hours Mr. Diaz's attorneys expended after the first verdict, Tesla respectfully requests a reduction in the $3,535,947.50 lodestar Mr. Diaz seeks for the second trial to an amount equal to 75% of the $3,025,357.50 ($2,269,018.13) lodestar sought on the first trial, which amounts to a reduction of **$1,266,929.38.**

## 2.  Reduction For Duplication Of Effort And Inefficiency

This Court has broad discretion to reduce fee requests "to account for overstaffing, assigning routine work to senior attorneys, excessive billing for duplicative work, review of routine notices from the Court, and …block billing," and may apply an across-the-board "haircut" of up to 10 percent to a lodestar request without the need for detailed explanation.  *Hernandez*, 2014 WL 1724356, at *15 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Such an across-the-board reduction is particularly appropriate where, as here, multiple lawyers and law firms jointly seek fees.  *See Stonebrae, L.P. v. Toll Bros.*, 2011 WL 1334444, at *12 (N.D. Cal. Apr. 7, 2011) ("[C]ounsel seeking fee awards bear the risk that the lodestar will be subject to scrutiny and possible reduction due to unreasonable inefficiencies and duplicative efforts engendered by multiple counsel and law firms."), *aff'd*, 521 F. App'x 592 (9th Cir. 2013); *see Wynn v. Chanos*, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015) ("[G]iven the sophistication of counsel and their

substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality.").

Mr. Diaz's counsel's fee entries amply reflect these concerns about inefficient and excessive work, and warrant an overall reduction in the lodestar. By any measure, Mr. Diaz's legal team was overstaffed. This case ultimately concerned a single plaintiff's claim for racial discrimination against a single defendant. Despite the limited scope of the case, Mr. Diaz seeks to recover a lodestar of more than twice the amount of the judgment he obtained, for work performed by ***19 attorneys*** (including 12 partners) from ***four law firms***, despite each firm touting its own expertise in workplace discrimination litigation. (*See* Organ Decl. ¶¶ 8, 12; Rubin Decl. ¶¶ 3-4; Alexander Decl. ¶¶ 4-9; Collier Decl. ¶¶ 12-13.) It might have been a luxury for Mr. Diaz to have four "Super Lawyers" from four firms on his legal team (*see* Organ Decl. ¶ 19; Rubin Decl. ¶ 4; Alexander Decl. ¶ 10; Collier Decl. ¶ 12), but this was by no means necessary or reasonable.

Because of the sheer size of Mr. Diaz's legal team, his counsel's billing entries necessarily reflect substantial duplication of effort. For example, it was neither necessary nor reasonable for Mr. Diaz to have 12 attorneys billing time to attend the second trial, particularly when only four had speaking roles. (Posner Decl. ¶ 16.) The excessive number of attorneys who are seeking reimbursement for their time itself justifies a substantial reduction in the fee request. *See, e.g.*, *Whitaker v. E.D.D. Inv. Co.*, 2022 WL 16888494, at *2 (C.D. Cal. Aug. 11, 2022) ("Eleven attorneys and four paralegals/legal assistants worked on Plaintiff's case, which suggests significant overstaffing"); *Salmeron v. Ford Motor Co.*, 2020 WL 9217979, at *6 (C.D. Cal. July 14, 2020) ("[C]onsidering that this case was significantly overstaffed (with 11 attorneys across two firms), a negative multiplier is appropriate in light of the unreasonably inflated fee request.") (quotations and citation omitted).

Moreover, Mr. Diaz's attorneys consistently failed to delegate routine work to more junior team members with lower billing rates. *See Lesevic v. Spectraforce Techs. Inc.*, 2021 WL 1599310, at *4 (N.D. Cal. Apr. 23, 2021) (assessing reduction based on "excessive hours … billed by the two most expensive timekeepers. These … partners … often billed for tasks that likely should have been done by someone else (*e.g.*, an associate or paralegal) in the first instance"). For example, lead

trial lawyer Bernard Alexander, who has practiced for 30 years and was the "trial lawyer of the year" for 2022 (Alexander Decl. ¶ 10), charged top partner rates of $1200/hour to spend 43.3 hours doing "Page:line summary of deposition," in the total amount of $51,960.  (Ex. F; *see* Posner Decl. ¶ 19.) Mr. Alexander was not forced to do this work himself, as he had at least eight more junior attorneys on the team, all with lower billing rates, who could have prepared deposition summaries for him.

Overall, partner-level attorneys logged 61.5% of the hours for which Mr. Diaz seeks to recover, while associates accounted for only 27.6%.  (*See* Posner Decl. ¶ 18.)  By shifting work to higher billers, Mr. Diaz's counsel flipped on its head the common expectation "that approximately 75% of work on cases will be performed by associates and paralegals, and 25% will be performed by partners."  *Small v. Univ. Med. Ctr.*, 2018 WL 5793155, at *5 (D. Nev. Nov. 5, 2018).

In light of these and other examples of excess and inefficiency, there is ample justification for an across-the-board reduction to the lodestar of at least 10%, in the amount of **$662,106**.

### 3.     <u>Reduction For Excessive Billing On Thirteen "Focus Groups"</u>

Mr. Diaz's attorneys seek to recover their full fees of $504,290 for spending 686.6 hours on an eye-popping *13* "focus groups"—*10* of which took place in the three months before the second trial.  (Posner Decl. ¶ 20.)  Fees for a "moot court trial run" are compensable only "as long as the number of hours spent was reasonable."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see Antuna v. Cnty. of Los Angeles*, 2016 WL 11743321, at *8 (C.D. Cal. Mar. 8, 2016) ("Defendants are only required to pay what was reasonably expended by Plaintiffs' counsel on the litigation, not a trial lawyer's wish list in terms of trial preparation.").

While one mock trial may have been reasonable before the first trial, holding 13 overall was assuredly excessive, and holding 10 in the weeks before a new trial limited to damages was especially so.  Indeed, even a single mock trial before the damages retrial was unnecessary after Mr. Diaz's attorneys had already conducted a trial before a real jury on the same damages issues.  *See Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2007 WL 5279897, at *5 (C.D. Cal. Nov. 5, 2007) (excluding fees for second mock trial as "unnecessary, redundant, and unreasonable").  To account for redundancy and excessiveness, the Court should decline to award Mr. Diaz the fees his counsel

1  incurred in connection with 12 of the 13 focus groups they conducted (or 92% of the work)—
2  amounting to a total reduction of **$465,498.46**.

3  ### 4.   Reduction For Unreasonable Billing In .1 Hour Increments

4  "This Court is critical of the practice of billing for multiple .1 hour entries separately where
5  they could be consolidated." *Hernandez*, 2014 WL 1724356, at *9.  A cursory review of Mr. Diaz's
6  counsel's billing statements shows that they regularly billed multiple .1 hour entries per day without
7  making any effort to consolidate their billing.  On March 14, 2023, for example, Larry Organ billed
8  ***11 entries*** for .1 hours, and paralegal Sabrina Grislis billed ***15 entries*** for .1 hours—amounting to
9  $1,410 just for these .1 hour increments.  (Posner Decl. ¶ 22.)  These entries reflect their practice to
10  "bill[] every phone call, email, and review of any notice from the Court as a separate .1 hour entry,"
11  no matter how short the time expenditures actually were.  *Hernandez*, 2014 WL 1724356, at *9.

12  All told, Mr. Diaz is seeking to recover fees associated with 1,928 time entries for .1 hours
13  each, for a total of $134,247.50.  (Posner Decl. ¶ 21.)  This Court has previously found "that a 50%
14  reduction in the fees for [counsel's] .1 hour entries is appropriate." *Hernandez*, 2014 WL 1724356,
15  at *9.  Tesla requests the same percentage reduction here, for a total reduction of **$67,123.75**.

16  ### 5.   Reduction For Unreasonable Requests For Fees Incurred On Travel

17  Courts in this Circuit regularly decline to award full fees for attorney travel time—often
18  reducing such requests by 50%. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,
19  1298-99 (9th Cir. 1994) (affirming 50% reduction of travel time because "the distractions associated
20  with travel, especially after a full day of work, likely reduced the attorneys' effectiveness while en
21  route"); *see Herrera v. FCA US LLC*, 2020 WL 12702510, at *3 (S.D. Cal. Nov. 23, 2020) (agreeing
22  that "courts routinely reduce the amount recoverable for travel by half"); *Ridgeway v. Wal-Mart
23  Stores Inc.*, 269 F. Supp. 3d 975, 990 (N.D. Cal. 2017) (applying "a 30% reduction in travel time").

24  Here, Mr. Diaz's attorneys often block-billed their travel entries, obfuscating the amount of
25  time spent on travel rather than legal work.  (*See, e.g.*, Organ Decl. at 42 (billing 6.5 hours to
26  "Appear at mediation, travel to and from"), 126 (billing 7.5 hours to "Appear at mediation, travel to
27  and from"), 223 (billing 2.5 hours to "Meet with Amy Oppenheimer and travel to and from
28  Berkeley").)  Moreover, Mr. Diaz's attorneys regularly billed for "travel" time incurred on standard

local commutes within the Bay Area.  (*See, e.g.*, Organ Decl. at 281 (billing 3 hours to "Meet with Tom Kawasaki in Oakland Office and travel to and from Oakland"); Rubin Decl. at 22 (billing 0.5 hours to "Travel to court," 0.8 hours to "Travel to co-counsel's offices," and 0.3 hours to "Travel home").)  Indeed, Mr. Rubin's junior colleague, Jonathan Rosenthal, billed for "travel" time to and from the trial each day—as much as 7.8 hours total—even though his firm's office is a mere one mile from the courthouse.  (Posner Decl. ¶ 23.)  Courts regularly reject such requests for attorney time spent on local commutes.  *See Nichols v. Illinois Dep't of Transportation*, 2019 WL 157915, at *7 (N.D. Ill. Jan. 10, 2019) ("[T]ravel time for commuting from the suburbs is not compensable as part of a fee award."), *aff'd*, 4 F.4th 437 (7th Cir. 2021); *Chavez v. Stomp*, 2014 WL 12796784, at *5 (D.N.M. Feb. 27, 2014) (disallowing "travel time and mileage from [attorney's] home to his office [because it] constitutes personal commuting time and expense and is not generally allowed").

Overall, Mr. Diaz's counsel seek reimbursement for 119 time entries that reference "travel," generally without distinguishing the time they spent on "travel" from any other tasks they performed, accounting for a total of 701.7 hours and $507,780 in fees.  (*See* Posner Decl. ¶ 23.) Tesla requests that the Court reduce these fees by 75%, in the total amount of **$380,835**.

### 6.    <u>Reduction For Billing To Attend Unrelated Elon Musk Trial</u>

Mr. Diaz seeks to recover $34,807.50 for 35.7 hours Mr. Organ spent watching the trial in *Littleton v. Musk*, an unrelated securities class action lawsuit. (Posner Decl. ¶ 24.)  The Court should not "condone the practice of charging for merely attending related trials for weeks on end."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *10 n.14 (N.D. Cal. Apr. 3, 2013). Although "it may be useful for counsel in one case to attend a related trial for limited periods of time or to observe key witness testimony, this does not justify merely sitting in on a trial day after day."  *Id.*  Here, the *Littleton* trial was not related at all to this case—it involved different claims, facts, witnesses, and documents—so it is unreasonable for counsel to request any fees for attending that trial.  Tesla requests that the Court exclude all these fees, in the amount of **$34,807.50**.

### 7.    <u>Reduction For Unsupported Time Entries</u>

The amount of fees Mr. Diaz requests in his motion does not match the billing entries he submitted.  (*Compare* Mot. 20 (requesting fees for 39 hours billed by Britt Karp for $26,325), *with*

1   Alexander Decl. at 171 ("Total Labor for Britt Karp: 32.1" hours for "$21,667.50").)  Tesla's review

2   of the billing entries shows that Mr. Diaz's counsel billed a total of 8,437.18 hours for $6,561,305

3   in fees (Posner Decl. ¶ 4), which is $59,763.50 less than what Mr. Diaz seeks in the motion (Mot.

4   19-20).  Tesla therefore requests a reduction of **$59,763.50** to the requested lodestar.

5           **C.       Mr. Diaz Obtained Only Limited Results**

6           "Although the analysis begins by multiplying a reasonable number of hours by a reasonable

7   rate, it does not end there."  *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020).  It is well-

8   established that "a district court may reduce a fee if the amount of recovery was modest relative to

9   the amount [the  plaintiff] initially sought."  *Id*. at 1195 (internal quotations and citations omitted).

10  Here, in addition to the itemized reductions to the lodestar Tesla requests above based on the

11  excessive and unreasonable number of hours claimed, Tesla respectfully requests a further

12  downward adjustment in the resulting adjusted lodestar based on the extremely limited results Mr.

13  Diaz obtained.

14          As the Supreme Court instructed in *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983), a district

15  court has ample authority to reduce a lodestar based on "the degree of success obtained" by the party

16  seeking attorney's fees, and has in fact deemed this "'the most critical factor' in determining the

17  reasonableness of a fee award," *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley,* 451

18  U.S. at 436).  Accordingly, the Ninth Circuit has counseled district courts to give "great weight to

19  'the important factor of the results obtained,' recognizing that if the plaintiff 'has achieved only

20  partial or limited success, the product of hours reasonably expended on the litigation as a whole

21  times a reasonable hourly rate may be an excessive amount.'"  *Vargas*, 949 F.3d at 1195 (quoting

22  *Hensley,* 451 U.S. at 436).  Indeed, "[w]here recovery of private damages is the purpose of … civil

23  rights litigation," as it was here in this single-plaintiff case, "a district court, in fixing fees, ***is***

24  ***obligated*** to give primary consideration to the amount of damages awarded as compared to the

25  amount sought."  *Farrar* 506 U.S. at 114-15 (emphasis added) (omission in original) (quotations

26  and citation omitted).

27          Here, Mr. Diaz's counsel asked the jury at the second trial to award over $150 million.  (Tr.

28  1077:3-1078:6 (Alexander Closing).)  The second jury awarded only $3.175 million.  This is thus a

1    textbook example of a case in which "the disparity between the amount sought and the amount

2    [obtained is] so great that the plaintiff's low level of success, by itself, justifies a large reduction in

3    the fee award." *Varga*s, 949 F.3d at 1195; *see, e.g., Harris v. Marhoefer,* 24 F.3d 16, 18-19 (9th

4    Cir. 1994) (affirming 50% reduction of fees in civil rights case based on plaintiff's merely partial

5    success); *Mays v. Stobie*, 2012 WL 914919, at *2-4 (D. Idaho Mar. 16, 2012) (applying 75%

6    reduction of fees in civil rights case based on plaintiff's limited success).

7         Moreover, Mr. Diaz obtained far poorer results by pursuing the second trial than he would

8    have had he accepted the Court's $15 million remittitur.  Thus further supports a downward

9    adjustment to the lodestar based on lack of success.  "[A] court has discretion to reduce a fee award

10   where the plaintiff unreasonably protracted litigation." *Hernandez*, 2014 WL 1724356, at *5; *see*

11   *Jaffee v. Redmond*, 142 F.3d 409, 416 (7th Cir. 1998) ("unreasonable argument that necessitates

12   further proceedings may justify denying compensation for those proceedings").  Here, given that

13   the Court determined that $15 million was the maximum amount of damages supported by the proof

14   at the first trial (Dkt. 328) and that the evidence at the second trial would be limited to that in the

15   first trial, the pursuit of a higher damages windfall in a second trial was a risky, wasteful and

16   ultimately unsuccessful litigation tactic that should not be rewarded with the full lodestar amount.

17        Finally, the Court has discretion to reduce the requested lodestar to ensure that Mr. Diaz

18   does not recover substantially more in attorney's fees than the amount of the judgment he recovered.

19   While fees that exceed the amount of a damages award are "not per se unreasonable," *Varga*s, 949

20   F.3d at 1196 (internal quotation and citation omitted), courts routinely reduce fee requests that (as

21   here) amount to a significant multiple of the damages awarded.  *See, e.g.*, *Koch v. Jerry W. Bailey*

22   *Trucking, Inc.*, 51 F.4th 748, 758 (7th Cir. 2022) (affirming "the district court's decision to reduce

23   the lodestar" in part because attorney's fee request was for "triple what his clients received"); *Migis*

24   *v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) ("The attorney's fee award was over six

25   and one-half times the amount of damages awarded....  Regardless of the effort and ability of her

26   lawyers, we conclude that these ratios are simply too large to allow the fee award to stand."); *Gary*

27   *v. Unum Life Ins. Co. of Am.*, 2023 WL 196172, at *9 (D. Or. Jan. 17, 2023) ("In light of the disparity

28   between the damages [of $431,647.76] and proposed fee award [of $569,703.50 before the requested

multiplier], … a 10% reduction in Plaintiff's requested attorney's fees is appropriate."); *Richard v. St. Tammany Par. Sheriff's Dep't*, 2022 WL 4534728, at *10 (E.D. La. Sept. 28, 2022) (applying 50% reduction where "the lodestar … is clearly disproportionate to the damages award at trial given that the $590,080.00 attorney's fee award requested is over four times greater than the $134,157.00 judgment obtained"). This excess provides additional ground for downward adjustment here.

In consideration of the "results obtained," Tesla respectfully requests a 25 percent downward reduction of the lodestar after the above reductions for excessive hours.

***In sum***, Tesla requests the following reductions to Mr. Diaz's requested lodestar:

| Reason for Reduction to Requested Lodestar ($6,621,068.50) | Amount of Reduction |
|---|---|
| Excessive Billing On New Trial | $1,266,929.38 |
| Overstaffing/Duplicative Billing | $662,106.00 |
| Excessive Focus Groups | $465,498.46 |
| Billing In .1 Hour Increments | $67,123.75 |
| Improper Requests for Travel Time | $380,835.00 |
| Attending *Littleton v. Musk* Trial | $34,807.50 |
| Unsupported Time Entries | $59,763.50 |
| **Total Reduction For Excessive Hours** | **$2,937,063.59** |
| Further 25% Reduction Of Resulting Lodestar ($3,684,004.91) Based on Limited Results Obtained | $921,001.23 |
| **Total Reduction After Downward Adjustment** | **$3,858,064.82** |
| **Total Lodestar After All Reductions: $2,763,003.68** | |

## II.    THE COURT SHOULD NOT APPLY ANY MULTIPLIER

In addition to seeking an excessive lodestar, Mr. Diaz seeks a multiplier of approximately 1.6—raising the requested fee award from $6.62 million to $10.41 million. No matter whether or to what extent the Court reduces the lodestar, there is no basis to enhance the award with a multiplier.

"Once determined, the basic fee leaves 'very little room' for enhancement." *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)). Because of the "'strong presumption' that the lodestar figure is reasonable," a multiplier is only warranted in "rare" and "exceptional" circumstances. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (quoting *Blum*, 465 U.S. at 897). The requirements for enhancement are "stringent" and the burden "heavy." *Stewart*, 987 F.2d at 1453. A multiplier must be "supported by both specific evidence [in] the record and detailed

findings by the lower courts." *Cunningham*, 879 F.2d at 487 (quoting *Delaware Valley*, 478 U.S. at 565).  The moving party bears "the burden of showing that such an adjustment is *necessary* to the determination of a reasonable fee." *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (emphasis in original).  "[A]ny reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion." *Cunningham*, 879 F.2d at 487.

Mr. Diaz seeks (Mot. 6) a "staged" multiplier of: "2.0 through the date of the first verdict; 1.5 from the first verdict through the Court's ruling on Tesla's first remittitur motion; and 1.2 thereafter."  Mr. Diaz offers no support for "staging" a multiplier across artificial phases of a case. *See Greenpeace*, 2020 WL 2465321, at *6 ("[A]pplying different hourly rates to different aspects of a litigation risks turning the fee award proceedings into a second major litigation, contrary to the Supreme Court's admonition in *Hensley*.").  By doing this, Mr. Diaz masks that he is seeking an effective multiplier of 1.6 on the total fee request.  He bases this request on only two *Kerr* factors— (a) "the novelty and difficulty of the questions involved," and (b) the "'undesirability' of the case"— and also on (c) the "public interest."  (Mot. 21-24.)  None of these factors justifies the multiplier Mr. Diaz seeks, or any multiplier at all.[6]

### A.     The Novelty And Complexity Of This Case Do Not Support A Multiplier

"[T]he novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Perdue*, 559 U.S. at 553 (second alteration in original) (quoting *Blum*, 465

---

[6] Mr. Diaz cites just three cases where a court awarded a multiplier, none of which is remotely comparable to this single-plaintiff emotional distress case.  *See Edmo v. Idaho Dep't of Correction*, 2022 WL 16860011, at *10-12 (D. Idaho Sept. 30, 2022) ("extraordinary reason to enhance the lodestar" because "the [Prison Litigation Reform Act] rate is exceptionally low when compared with the customary fees charged by civil litigators with comparable experience," and the plaintiff "became the first prisoner in the nation to receive court-ordered gender confirmation surgery"); *Chalmers v. City of Los Angeles*, 676 F. Supp. 1515, 1524-25 (C.D. Cal. 1987) ("greater-than-normal risk" that "plaintiff's attorney would be paid almost nothing" after litigating for "almost 9 years" because of the difficulties in challenging municipal ordinances); *Thompson v. Barrett*, 599 F. Supp. 806, 814-16 (D.D.C. 1984) ("very exceptional case" because it commenced in 1973, when Title VII plaintiffs rarely succeeded, and "major legal questions were undecided;" "set precedents" in those areas, including being "the first … to use quotas to remedy discrimination;" secured $21.4 million for "382 class plaintiffs;" and took twelve years to litigate).

U.S. at 898); *see also Greater Los Angeles Council on Deafness v. Cmty. Television of S. California*, 813 F.2d 217, 221 (9th Cir. 1987) ("[T]he novelty and difficulty of issues are inappropriate factors to use in enhancing a fee award, because they are already accounted for in the rate used to compute the lodestar amount."); *In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, 867 F.3d 791, 792 (7th Cir. 2017) ("[N]ovelty and complexity influence the base fee—the more novel and complex a case, the more hours will be billed and the higher the hourly billing rates will be.").[7] Indeed, Mr. Diaz illustrates the point that "novelty" is subsumed in the lodestar by arguing in support of his counsel's lodestar based on the supposed complexities of the case.  (Mot. 12-14.)

This Court has previously rejected a party's similar attempt to obtain a multiplier on the ground that a "litigation 'produced [] valuable published opinions from this Court,'" because the party seeking that multiplier did not cite any "authority for granting a multiplier on this ground." *Public.Resource.org v. United States Internal Revenue Serv.*, 2015 WL 9987018, at *9 (N.D. Cal. Nov. 20, 2015) (Orrick, J.).  Mr. Diaz likewise offers no authority to support his request for a multiplier on this ground, and the Court should reject his request here too.

Even if "novelty" could support a multiplier, it does not do so here.  Mr. Diaz points (Mot. 21) to the Court's supposed "precedent-setting" decision on whether a contract employee has standing to sue for employment discrimination under § 1981, including as a third-party beneficiary. But the Court's ruling on which Mr. Diaz relies—which was made in the context of a disputed jury instruction (Dkt. 278 at 1)[8]—was far from "precedent-setting."  To the contrary, as this Court found in that very ruling (Dkt. 278 at 2), the Supreme Court expressly did "not … exclude the possibility that a third-party intended beneficiary of a contract may have rights under § 1981," *Domino's Pizza,*

---

[7] The Ninth Circuit has identified one "exceptional" circumstance where novelty may be considered, but it applies to a "subset of class counsel" and is inapplicable here.  *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 666 (9th Cir. 2020).  Mr. Diaz's sole authority in support of a "novelty" multiplier, *Edmo*, 2022 WL 16860011, does not discuss the Ninth Circuit cases holding otherwise, nor did the court have occasion to do so: the plaintiff only argued for a multiplier based on customary fees and excellent results—separate factors not at issue here.  *Id.* at *10.

[8] The two other orders that Mr. Diaz cites as novel (Dkt. 303 at 6; Dkt. 328 at 22) simply referenced this same ruling, then applied California law to determine whether Mr. Diaz was a third-party beneficiary.  The third docket entry Mr. Diaz cites (Dkt. 134) is not an "order[] analyzing his third-party beneficiary status" (Mot. 21), but his briefing on an unrelated confidentiality dispute.

1  *Inc. v. McDonald*, 546 U.S. 470, 476 n.3 (2006), and multiple circuit courts have upheld third-party

2  beneficiary claims under § 1981, *see, e.g.*, *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 436

3  (4th Cir. 2006); *Jones v. Local 520, Inter. Union of Operating Engineers*, 603 F.2d 664, 665-66 (7th

4  Cir. 1979); *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1339 (2d Cir. 1974).[9]

5        Accordingly, Mr. Diaz has offered no support in the law or the record of this case for his

6  argument that the supposed novelty and complexity of the case justify a fee multiplier.

7        **B.**     **The Desirability Of This Case Does Not Support A Multiplier**

8        "The Supreme Court has [] called . . . into question" the relevance of the *Kerr* factor based

9  on "a case's 'desirability.'" *Resurrection Bay Conservation All. v. City of Seward, Alaska*, 640 F.3d

10  1087, 1095 n.5 (9th Cir. 2011) (quoting *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4

11  (9th Cir. 1992) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562-65 (1992), *vacated in part*

12  *on other grounds*, 984 F.2d 345 (9th Cir. 1993)).  Many district courts no longer consider desirability

13  as a factor that can support a multiplier at all.  *See, e.g.*, *Kang v. Credit Bureau Connection, Inc.*,

14  2023 WL 6811994, at *8 n.6 (E.D. Cal. Oct. 16, 2023) (recognizing that, since *Resurrection Bay*,

15  the Ninth Circuit has "determined the 'desirability' of a case is no longer a relevant factor").

16        Even if the Court were to consider desirability here, Mr. Diaz fails to show this case was

17  "undesirable" for counsel to the point that their willingness to work on it supports an enhancement.

18  In the past, when courts sometimes considered desirability, they weighed whether the plaintiff would

19  be "unsympathetic" or the claims would provoke such "hostility from the community" that "no other

20  attorney … would have accepted the case." *Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp.

21  2d 981, 999 (N.D. Cal. 2005) (quotations and citations omitted).  By contrast, here there were no

22  factors that rendered Mr. Diaz presumptively unsympathetic, and "the Bay Area is home to hundreds

---

[9] Likewise, district courts, including in California, have long recognized the validity of third-party beneficiary claims under § 1981.  *See, e.g.*, *Galarza v. Fitness Int'l LLC*, 2016 WL 11464176, at *4 (M.D. Fla. Dec. 9, 2016); *Mayfield v. Cnty. of Merced*, 2014 WL 5822913, at *11 (E.D. Cal. Nov. 10, 2014); *Anders v. Verizon Servs. Corp.*, 2011 WL 5837239, at *2-3 (S.D.N.Y. Nov. 18, 2011); *Macedonia Church v. Lancaster Hotel Ltd. P'ship*, 270 F.R.D. 107, 115 (D. Conn. 2010); *Shumate v. Twin Tier Hosp., LLC*, 655 F. Supp. 2d 521, 533-35 (M.D. Pa. 2009).  Mr. Diaz misplaces reliance (Mot. 21) on *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208 (3d Cir. 2015), which did not "observe[] that courts had not yet 'explored the possibility' of Section 1981 standing in the contract employee context," but noted that the appellant in that case "does not make this argument," and thus "this is not the appropriate case to explore that possibility," *id.* at 220 n.13.

1    of lawyers who litigate civil rights cases regularly."  *Medina v. City of Menlo Park*, 2009 WL

2    10710479, at *4 (N.D. Cal. Oct. 2, 2009).

3         Mr. Diaz's arguments otherwise fail to demonstrate the "undesirability" of this case.

4         *First*, Mr. Diaz's argument (Mot. 23) that because he "was nominally employed by a third-

5    party contractor, [] there was no guarantee he would be able to establish Tesla's liability under

6    Section 1981," simply rehashes his "novelty" argument and fails for the same reasons.  Moreover,

7    liability is never "guaranteed" in any contested case.  If this alone justified an enhancement for

8    "undesirability," then an enhancement would be required in almost every case—which is not the

9    law.  *See, e.g.*, *Mooney v. Roller Bearing Co. of Am., Inc.*, 2023 WL 6979645, at *8 (W.D. Wash.

10   Oct. 23, 2023) ("Although Mooney notes that the case involved some unfavorable facts, that is true

11   in virtually every case and does not make this one the 'rare' exception.").

12        *Second*, Mr. Diaz argues (Mot. 23) that "at the outset of the case there was little hard

13   evidence to substantiate Mr. Diaz's allegations."  But at the same time, he admits (Mot. 24) that

14   before he sued, he already possessed "the racist pickaninny drawing" that was the focal point of his

15   case for liability and damages, which gave him far more to work with than "he-said, she-said"

16   allegations.  Further, around the same time when Mr. Diaz filed this case, his counsel brought similar

17   claims against Tesla on behalf of other plaintiffs, including in a class action lawsuit.  *See, e.g.*,

18   *Lambert v. Tesla, Inc.*, No. 3:17-CV-05369 (N.D. Cal.); *Vaughn v. Tesla, Inc.*, No. RG17882082

19   (Cal. Super. Ct.) (class action); *Berry v. Tesla, Inc.*, No. RG21104057 (Cal. Super. Ct.).  That Mr.

20   Diaz's counsel have repeatedly sued Tesla for similar claims of racial discrimination allegedly

21   occurring at the same factory where Mr. Diaz worked and around the same time belies any argument

22   that Mr. Diaz's claim was "undesirable."  *See In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D.

23   403, 447 (S.D. Tex. 1999) ("[I]t appears that the cases were highly desirable since so many of them

24   were filed in so many venues.").  To the contrary, given that Mr. Diaz had the cartoon, his claim

25   was likely among the most desirable that his counsel has raised—as evidenced by the fact they

26   litigated his claim in a single-plaintiff case rather than as part of a class action.

27        *Third*, Mr. Diaz likewise fails (Mot. 24) to justify an enhancement on the grounds he "faced

28   an uphill battle in proving compensatory (not to mention punitive) damages," including because his

damages "were limited to emotional distress."  Before he filed suit, Mr. Diaz had all the evidence he needed to make his case for emotional distress damages—including his own testimony and that of his supporting witnesses.  His claim for compensatory damages ultimately fell flat not because he faced some barrier to proving them, but because—as the Court recognized in denying Mr. Diaz's motion for new trial (Dkt. 491 at 25-27)—much of the evidence he presented lacked credibility.  Surely, neither Mr. Diaz nor his counsel should be rewarded through a fee multiplier for advancing a damages claim that was unsupported by evidence and not credible.  As for punitive damages, there could hardly be a case more attractive to a plaintiff: Tesla is one of the most valuable companies in the world, led by one of the most famous public figures of the modern era, and was being accused of turning a blind eye to pervasive racial discrimination.  The prospect of obtaining gigantic punitive damages was plainly a selling point for Mr. Diaz's counsel—not a detractor that supports a multiplier.  *See, e.g.*, *Hennessy v. Penril Datacomm Networks, Inc.*, 1994 WL 630575, at *4 (N.D. Ill. Nov. 2, 1994) ("punitive damages[ ] no doubt will make it easier for Title VII plaintiff[]s to secure counsel"), *aff'd*, 69 F.3d 1344 (7th Cir. 1995).

Mr. Diaz's counsel also knew that if they prevailed, they would recover at least some of their fees, which were guaranteed by statute.  *See, e.g.*, *Isaac v. Landmark Title Servs., Inc.*, 2006 WL 8432159, at *4 (S.D. Fla. May 19, 2006) (a "claim such as Plaintiff's … is highly desirable as attorneys' fees are provided by statute").  The fact that so many experienced and "sought-after" (Organ Decl. ¶ 31) employment discrimination lawyers and law firms "pursued [Mr. Diaz's] claims against [Tesla] and collectively litigated this case for many years" further "undercuts the notion of undesirability."  *Chambers*, 980 F.3d at 667.

*Finally*, that Tesla was a "well-funded" defendant (Mot. 24) likewise does not support a fee enhancement.  "If the mere fact that the defendants are 'large corporations' were sufficient, then most … fee awards would automatically qualify for enhancement—contrary to the rule that multipliers are for 'rare and exceptional circumstances.'"  *Chambers*, 980 F.3d at 667 (quoting *Perdue*, 559 U.S. at 552).  Indeed, that Tesla is "well-funded" actually undermines Mr. Diaz's case for a multiplier, because a defendant's "deep pockets often create an incentive to sue."  *Id.*

**C.** **The Public Interest Does Not Support A Multiplier**

Mr. Diaz also fails to show that any consideration about the "public interest" supports a fee multiplier.  (Mot. 22-23.)  To start, neither of Mr. Diaz's cases shows that the public interest, a non-*Kerr* factor, is relevant to a fee multiplier.  His first case is a decades-old decision that found a Supreme Court opinion from 1987 "le[ft] open" the possibility courts could "award enhancements for contingency in selected cases," and that in weighing contingency "risk," courts may consider "whether the case is of broad public interest."  *Chalmers*, 676 F. Supp. at 1522 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987)).  But since then, "the Supreme Court outlawed contingency enhancement (through the use of a multiplier to the hourly fee) as incompatible with fee-shifting statutes like 42 U.S.C. § 1988."  *Puckett v. Yamhill Cnty.*, 145 F.3d 1340 (9th Cir. 1998) (unpublished) (citing *Dague*, 505 U.S. at 565); *see also Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) ("Among the subsumed factors presumably taken into account in … the lodestar calculation are … the contingent nature of the fee agreement").[10]  Mr. Diaz's second case does not concern fee multipliers, but rather an argument that a "plaintiff should not receive ***any*** attorneys' fees" under § 1988 "because th[e] litigation served no public purpose."  *Davis v. Prison Health Servs.*, 2012 WL 4462520, at *7-8 (N.D. Cal. Sept. 25, 2012) (emphasis added).  Tesla does not dispute Mr. Diaz that may recover fees.

Moreover, even where a statute "is obviously designed to protect the public interest, not every action taken to enforce the statute necessarily promotes the public interest."  *Seebach v. BMW of N. Am., LLC*, 2020 WL 4923664, at *6 (E.D. Cal. Aug. 21, 2020) (quotations and citation omitted) (applying California law).  That is the case here, where Mr. Diaz sought and recovered millions of dollars in his personal capacity.  Thus, even "[i]f the public interest were a factor in assessing an enhancement," Mr. Diaz's "counsel only represented one person's rights," so "no[] … fee

---

[10] Even had the Supreme Court not outlawed its consideration in § 1988 cases, to the extent Mr. Diaz also seeks to rely on the *Kerr* factor that considers whether a fee was "fixed or contingent," *Kerr*, 526 F.2d at 70, Mr. Diaz waived this argument (and many other *Kerr* factors) by failing to directly argue it justifies a multiplier.  *See Zhang v. Cnty. of Monterey*, 2021 WL 2322940, at *6 (N.D. Cal. June 6, 2021) (Koh, J.) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (alteration in original) (quoting *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002)).

1   enhancement is warranted" on this basis.  *Sako v. Wells Fargo Bank. N.A.*, 2016 WL 2745346, at

2   *7 (S.D. Cal. May 11, 2016) (applying California law).[11]

3          Mr. Diaz argues (Mot. 22-23) that the case "drew international attention to Tesla's

4   employment practices," and that this "press coverage … send[s] a clear signal to employers and

5   employees alike that allowing racial harassment to fester in the workplaces may result in jury awards

6   in the millions of dollars."  But he "cites no case awarding a multiplier based on a similar outcome,"

7   and "without a more substantial showing of the specific benefits of the litigation," a court "cannot

8   say that this alone justifies a multiplier."  *Public.Resource.org*, 2015 WL 9987018, at *9.  On the

9   contrary, there are many cases have rejected the same argument Mr. Diaz makes here.  *See, e.g.*,

10  *Navarro v. DHL Glob. Forwarding*, 2018 WL 2328191, at *5 (C.D. Cal. May 21, 2018) (declining

11  to apply a multiplier because there is a "strong presumption" to apply the lodestar and the "plaintiff

12  does not present evidence that his individual case, while important, significantly advanced the public

13  interest," despite a disability discrimination verdict of more than $1.5 million and the argument "that

14  this case advanced the public interest because 'presumably' DHL will reexamine its employment

15  practices regarding meal and rest breaks and the 'driving public' will be safer") (applying California

16  law); *Newton v. Equilon Enterprises, LLC*, 411 F. Supp. 3d 856, 884 (N.D. Cal. 2019) (similar).

17  **III.    <u>THE COURT SHOULD REDUCE MR. DIAZ'S REQUEST FOR EXPENSES</u>**

18          Mr. Diaz's request for reimbursement of $208,218.20 in expenses is likewise excessive.

19          *First*, although the Court has discretion to award expert fees as part of the attorney's fee

20  under 42 U.S.C. § 1988(c), it should decline to award Mr. Diaz the $109,046.70 in expert expenses

21  he seeks here because there is "inadequate support for this cost."  *Brown v. Cascade Mgmt., Inc.*,

22  2018 WL 4207097, at *12 (D. Or. Sept. 4, 2018); *see John Meggs v. Gomez, Inc.*, 2018 WL

23  11355448, at *3 (C.D. Cal. July 12, 2018) (reducing expert fees due to lack of evidentiary support).

24  For example, Mr. Diaz seeks $10,500 for the services of Michael Robbins (Mr. Diaz's purported

25  expert on "Tesla's HR Policies and practices"), but he did not testify at trial.  (Organ Decl. ¶ 66.)

26  Nor does Mr. Diaz provide any meaningful documentary support (such as invoices) for these

27

28  ────────────────
    [11] Mr. Diaz only seeks fees under § 1988, and has thus waived consideration of California law as a
    basis for fees or a fee multiplier.  *See Zhang*, 2021 WL 2322940, at *6.

expenses, or even a suitable description of the services provided.  *See, e.g.*, *id.* (Mr. Robbins'
opinions were "helpful in guiding some of the discovery in this case"); *id.* at 47 (referring to call
and email with Mr. Robbins for unspecified purpose); *cf. Brown*, 2018 WL 4207097, at *12
(disallowing expert expenses due to lack of specificity).  Mr. Diaz also fails to provide invoices for
Dr. Bruce Smith, for whom he requests $4,602.50.  (Organ Decl. ¶ 66.)  And even where Mr. Diaz
does provide bills for expert services, they are in many cases far too vague to show whether the time
was reasonably spent.  (*See* Organ Decl. Exs. 7, 8, 9 (including, for example, expenses for
unspecified phone calls and document review).)  Mr. Diaz should not be allowed to recover such
expenses, or at least not in full.  *See, e.g.*, *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 978-79 (N.D.
Cal. 2014) (collecting cases holding that expert fees should be reduced where lack of detail prevents
court from assessing reasonableness).

*Second*, the Court should not permit Mr. Diaz to recover expenses associated with
unnecessary work, such as approximately $14,543.96 in expenses associated with 13 excessive and
unnecessary focus group sessions his counsel conducted.  (Posner Decl. ¶ 25); *see, e.g.*, *Masimo*,
2007 WL 5279897, at *5 (excluding fees and expenses associated with unnecessary mock trials).

*Third*, the Court should apply an across-the-board reduction to the $63,684.32 in expenses
Mr. Diaz incurred after the first verdict because, for the same reasons explained above, they
necessarily reflect duplicative litigation that led to highly unfavorable results for Mr. Diaz.

***In sum***, the Court should reduce Mr. Diaz's request for $208,218.20 in expenses by at least
50%, in the amount of **$104,109.10**.

## IV.  MR. DIAZ IS NOT ENTITLED TO EXCESSIVE "FEES ON FEES"

Finally, the Court should substantially reduce Mr. Diaz's request for $103,400 of "fees on
fees," or fees spent pursuing a fee award.  "An inflated request for a 'fees-on-fees' award may be
reduced to an amount deemed reasonable by the awarding court."  *Public.Resource.org*, 2015 WL
9987018, at *8 (quoting *Rosenfeld v. U.S. Dep't of Just.*, 904 F. Supp. 2d 988, 1008 (N.D. Cal.
2012)); *see also Schneider v. Cnty. of San Diego*, 32 F. App'x 877, 880 (9th Cir. 2002) (unpublished)
(district court "did not err in finding that [] counsel failed to minimize the hours spent in preparing
the fee petition" or "delegate tasks that could have been performed by associates at a lower rate").

Here, Mr. Diaz requests ***173 hours*** for $103,400 of fees on fees (and growing). (Organ Decl. at 294.) That is plainly unreasonable. *See, e.g.*, *Medina*, 2009 WL 10710479, at *12 (reducing 91-hour fee on fee request to 20 hours because "counsel's request would provide compensation for more than two weeks of full-time lawyering work on nothing but the motion for fees" and "[t]he fact that five different lawyers were tasked to work on the fee motion is further evidence of the inefficiency caused by the obvious over-staffing of this case"). This Court has found even 58.7 hours to be an unreasonable amount of time spent litigating a fee motion, and reduced the award by 25%—which would amount to 44 hours. *Public.Resource.org*, 2015 WL 9987018, at *8; *see also, e.g.*, *Strategic Partners, Inc. v. FIGS, Inc.*, 2021 WL 8917973, at *8 (C.D. Cal. Oct. 29, 2021) ("that four attorneys billed more than 50 hours of time for work on just the Fee Motion" is "excessive"); *Seebach*, 2020 WL 4923664, at *5 ("more than 54 hours is unreasonably high" for fees on fees). The Court should likewise reduce Mr. Diaz's request for fees on fees by 71%, for a total reduction of **$73,414**—limiting the award to roughly 50 hours of time.

In the alternative, the Ninth Circuit has approved "applying the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award," "without providing an additional explanation." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 909 (9th Cir. 1995); *see also Greenpeace*, 2020 WL 2465321, at *10 ("Ninth Circuit authority permits a court to adjust the fees requested for the fee litigation by the same percentage of the merits fees ultimately recovered"). This Court has followed this automatic, proportional reduction approach. *See, e.g.*, *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 2018 WL 11471572, at *5 (N.D. Cal. July 24, 2018) (Orrick, J.), *rev'd in part on other grounds*, 785 F. App'x 849 (Fed. Cir. 2019). If the Court awards Mr. Diaz fees less than what he requests, it should also reduce his fees on fees by a commensurate percentage.

## <u>CONCLUSION</u>

The Court should reduce Mr. Diaz's request for attorney's fees to no more than $2,763,003.68; reduce his request for expenses to no more than $104,109.10; and reduce his request for "fees on fees" to no more than $29,986, or by an amount that reflects the same percentage reduction the Court applies to Mr. Diaz's request for fees.

DATED:  November 17, 2023

By: */s/ Daniel C. Posner*

Alex Spiro (appearance *pro hac vice*)
alexspiro@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

Daniel C. Posner
Mari Henderson
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Asher Griffin (appearance *pro hac vice*)
ashergriffin@quinnemanuel.com
300 W. 6th St., Suite 2010
Austin, TX 78701
Telephone: (737) 667-6100

*Attorneys for Defendant Tesla, Inc.*