LAWRENCE A. ORGAN (SBN 175503)
larry@civilrightsca.com
MARQUI HOOD (SBN 214718)
marqui@civilrightsca.com
CIMONE A. NUNLEY (SBN 326915)
cimone@civilrightsca.com
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Avenue
San Anselmo, California 94960
Telephone:     (415)-453-7352
Facsimile:     (415)-785-7352

J. BERNARD ALEXANDER (SBN 128307)
balexander@amfllp.com
**ALEXANDER MORRISON & FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone:     (310) 394-0888
Facsimile:     (310) 394-0811

MICHAEL RUBIN (SBN 80618)
mrubin@altber.com
JONATHAN ROSENTHAL (SBN 329638)
jrosenthal@altber.com
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:     (415) 421-7151
Facsimile:     (415) 362-8064

DUSTIN L. COLLIER (SBN 264766)
dcollier@collierlawsf.com
V. JOSHUA SOCKS (SBN 303443)
jsocks@collierlawsf.com
ELIZABETH R. MALAY (SBN 336745)
emalay@collierlawsf.com
DREW F. TETI (SBN 267641)
drew@collierlawsf.com
**COLLIER LAW FIRM, LLP**
240 Tamal Vista Blvd. Suite 100
Corte Madera, CA 94925
Telephone:   (415) 767-0047
Facsimile:     (415) 767-0037

Attorneys for Plaintiff,
OWEN DIAZ

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OWEN DIAZ,<br><br>                Plaintiff,<br><br>        v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.,<br><br>        Defendant. | Case No. 3:17-cv-06748-WHO<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br><br>Hearing Date: January 3, 2024<br>Time: 2:00 PM<br><br>Trial Date: September 27, 2020<br>Complaint filed: October 16, 2017 |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 2

  A.   Plaintiff Diaz was Highly Successful. ................................................................ 2

  B.   The Requested Hours Were Reasonable. ............................................................ 4

    1.   The hours expended after the first trial were reasonable. ............................. 4

    2.   Counsels' efforts were neither duplicative nor inefficient. .......................... 7

    3.   Mr. Diaz's use of a range of "focus groups" was reasonable. ...................... 8

    4.   Counsel consolidated and underbilled most tasks that took 0.1 hours or less. ............... 9

    5.   Counsel's fees for "travel" are reasonable. ................................................ 10

    6.   Mr. Organ's attendance at the earlier Elon Musk trial was reasonable......................... 10

    7.   There was an inadvertent clerical error in Mr. Diaz's original motion......................... 10

  C.   The Court Should Award a Multiplier .............................................................. 11

  D.   Mr. Diaz's Claimed Expenses Are Reasonable and Fully Supported. ............................. 13

  E.   Counsel's Fees-on-Fees Hours Are Reasonable. ................................................ 14

III.   CONCLUSION .................................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Associated Diesel Serv. & Equip. Co. v. Terex Corp.*,
   46 F.3d 1138 (9th Cir. 1995) ....................................................................3

*Baker v. Barnard Constr. Co.*,
   1999 WL 35809483 (D.N.M. June 8, 1999) ..............................................6

*Bell v. Williams*,
   2023 WL 4850761 (N.D. Cal. Jul. 28, 2023) ...........................................12

*Blackwell v. Foley*,
   724 F. Supp. 2d 1068 (N.D. Cal. Jul. 15, 2010) ........................................4

*Chaid v. Glickman*,
   1999 WL 33292940 (N.D. Cal. Nov. 17, 1999) ..........................................8

*Chalmers v. City of Los Angeles*,
   676 F. Supp. 1515 (C.D. Cal. 1987) .........................................................12

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986)..............................................................................2, 3

*Copeland v. Marshall*,
   641 F.2d 880 (D.C. Cir. 1980) (*en banc*)..................................................2

*Diaz v. Tesla*,
   9th Cir. No. 23-3642, Dkt. 5.1 ..................................................................3

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006).................................................................................11

*Edmo v. Idaho Dept. of Correction*,
   2022 WL 16860011 (D. ID. Sept. 30, 2022) .........................................7, 11

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ...................................................................4

*Faush v. Tuesday Morning, Inc.*,
   808 F.3d 208 (3d Cir. 2015)......................................................................11

*Fegley v. Higgins*,
   19 F.3d 1126 (6th Cir. 1994) .....................................................................4

*Gries v. Zimmer, Inc.*,
  795 F. Supp. 1379 (W.D.N.C. 1992) ..................................................................6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...........................................................................................4

*Hernandez v. Grullense*,
  2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ....................................................6

*Herrington v. Cnty. of Sonoma*,
  883 F.2d 739 (9th Cir. 1989) ............................................................................12

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
  25 F. Supp. 2d 127 (E.D.N.Y. 1998) ..................................................................6

*Krekelberg v. City of Minneapolis*,
  2023 WL 4828382 (D. Minn. July 27, 2023) .....................................................6

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
  2007 WL 5279897 (C.D. Cal. Nov. 5, 2007).......................................................9

*Medina v. City of Menlo Park*,
  2009 WL 10710479 (N.D. Cal. Oct. 2, 2009).....................................................15

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .......................................................................6, 7

*Public.Resource.org v. Internal Revenue Serv.*,
  2015 WL 9987018 (N.D. Cal. Nov. 20, 2015) ...................................................15

*Quesada v. Thomason*,
  850 F.2d 537 (9th Cir. 1988) .........................................................................2, 6

*Seebach v. BMW of N. Am., LLC*,
  2020 WL 4923664 (E.D. Cal. Aug. 21, 2020) ...................................................15

*Stonebrae, L.P. v. Toll Bros.*,
  2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ......................................................6

*Strategic Partners, Inc. v. FIGS, Inc.*,
  2021 WL 8917973 (C.D. Cal. Oct. 29, 2021).....................................................15

*In re Tesla Inc., Sec. Litig.*,
  2023 WL 4032010 (N.D. Cal. June 14, 2023) ...................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ......................................................10

*Vargas v. Howell*,
    949 F.3d 1188 (9th Cir. 2020) ................................................................................................3

*West v. Aetna Life Ins. Co.*,
    188 F. Supp. 2d 1096 (N.D. Iowa 2002)..................................................................................6

I.       **INTRODUCTION**

Plaintiff Owen Diaz and his counsel achieved great success in this litigation and are entitled to have Tesla fully compensate them for their reasonable attorneys' fees and expenses. Throughout more than six years of litigation, Mr. Diaz's attorneys acted in accordance with the highest standards of the civil rights bar, thereby vindicating Mr. Diaz's right to be free from "endemic racism at the Tesla factory and Tesla's repeated failure to rectify it." ECF 491 at 1. As the Court recognized, Plaintiff's counsel presented "[a] shocking amount of evidence at trial [that Mr. Diaz] was regularly subjected to being called the N-word and other racial slurs," and established that he had "endured awful, pervasive racism in his workplace." *Id.* at 23. Counsels' efforts resulted in a jury verdict of $3,175,000, which the Court rightly characterized as a "substantial award" for a civil rights plaintiff. *Id.* at 27:24-28:2.2. Counsels' professionalism and dedication to furthering the cause of justice is precisely the type of conduct that the Civil Rights Attorneys' Fees Awards Act was designed to promote.

Section 1988 was enacted to encourage highly qualified private attorneys to represent civil rights plaintiffs like Mr. Diaz, whom Congress recognized often cannot afford to retain counsel as skilled and experienced as those who regularly handle complex civil litigation for well-funded corporate clients. The Act thus mandates that when civil rights plaintiffs prevail, their attorneys—who, like Plaintiff's attorneys here, must often spend years in litigation without being paid a penny for their efforts, while advancing tens of thousands of dollars in expenses on their client's behalf—will be compensated at the same current hourly rates that their corporate firm counterparts charge for all time reasonably expended in the litigation. Under the governing statutory standards, Mr. Diaz is entitled to a fully compensatory fee for his counsels' exemplary efforts in obtaining his $3.175 million judgment against Tesla.

Tesla asks this Court to slash counsels' hours by arbitrary percentages for a variety of unsubstantiated reasons (which, if all were applied, would result in double- and triple-counted reductions). Yet it provides no meaningful support for these requests; fails to identify *any* specific duplicative time records; and offers only a few isolated instances of purported inefficiencies—each of which turns out to be reasonable litigation activity, especially from the

perspective of what was known at the time the litigation decisions were made. Tesla also ignores the extent to which its tenacious, aggressive defense tactics caused much of the work it now challenges as excessive, despite the well-accepted principle that a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*).

## II.   ARGUMENT

Plaintiff's lodestar is "presumed to be the reasonable fee contemplated by §1988." *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). Once plaintiff has submitted evidence sufficient to support that fee, the burden shifts to defendant to overcome the presumption.

Tesla makes no attempt to challenge Mr. Diaz's counsel's hourly rates, ECF 500 5:14-6:10—likely because they are well below Tesla's firms' own rates. ECF 494-7 20:20-21:7, Ex. L.[1] Nor does Tesla challenge the manner in which counsel maintained and presented their time records (contemporaneously, electronically, down to a tenth of an hour, with a detailed description of each task performed), or dispute that they in fact performed the tasks documented in those records. Tesla also ignores that counsel *already* exercised substantial billing judgment, eliminating more than 10% of the time actually expended from the requested fee (in addition to 12 months of time entries in 2017-18 that were lost due to a timekeeping software error). ECF 500 17:23-18:16; *see infra* at 6:6-10. Tesla thus fails to establish that the presumptive lodestar should be further reduced—let alone slashed in half—based on unsubstantiated arguments that counsels' hours were excessive or otherwise unreasonable.

### A.   Plaintiff Diaz was Highly Successful.

Tesla's request for a 25% across-the-board fee reduction due to Mr. Diaz's supposedly "extremely limited" success (essentially, a negative multiplier) is preposterous. ECF 500 14:10-13. As the Court recognized, Mr. Diaz achieved substantial success in this case. After all, he prevailed in his civil rights claims against one of the largest companies in the world, which was

---

[1] Tesla also argues that fees should be reduced because Mr. Diaz had a contingency fee agreement with counsel, yet it offers no evidence or case law to support this proposition, which is contrary to Ninth Circuit law. *Quesada v. Thomason*, 850 F.2d 537, 544 (9th Cir. 1988).

represented during the past several years by one of the most aggressive litigation firms in the country, and he won a judgment of more than $3 million after two trials and two rounds of post-trial briefing. ECF 491 24:15-18. Moreover, the first verdict—$136.9 million—made history and sent a powerful message to Tesla and other employers (and workers throughout the country) that racial harassment and the unchecked use of the N-word in the workplace will not be countenanced. Throughout it all, Tesla asserted that it should not be held liable *at all* and that any punitive damages should be sharply reduced or entirely eliminated—arguments the Court repeatedly rejected. Mr. Diaz's success in this case is undeniable and his attorneys' efforts unquestionably furthered the goals of the federal civil rights laws.

It is irrelevant that the Court's judgment would have been higher had Mr. Diaz accepted the $15 million remittitur. ECF 500 15:12-16. The success of a civil rights plaintiff's litigation decisions cannot be judged in hindsight, because that is not how such decisions are made. Instead, the relevant question is whether particular work would reasonably have been performed by attorneys representing a regular fee-paying client. *See, e.g., City of Riverside*, 477 U.S. at 575. Tesla also makes no effort to respond to Mr. Diaz's point that had he accepted the remitted amount, he would have waived all appellate rights, while Tesla could have appealed liability and the fact *and* amount of compensatory and punitive damages, leaving Diaz with no guarantee of retaining any of the remitted amounts. *Associated Diesel Serv. & Equip. Co. v. Terex Corp.*, 46 F.3d 1138 (9th Cir. 1995).[2] Tesla's contention that *Mr. Diaz* thereby "unreasonably protracted" the litigation, ECF 500 15:7-12, is therefore mistaken, especially because it was *Tesla* that sought to overturn the first jury verdict, ECF 317, while continuing to argue for a new liability trial even after Plaintiff opted for a new trial on damages, ECF 359.

Tesla next urges the Court to reduce the lodestar because it is higher than the second damages award. But especially in civil rights litigation "[i]t is not per se unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients." *Vargas v.*

---

[2] Tesla has now dropped its challenge to the first jury's liability finding, limiting its cross-appeal to the amount of punitive damages only. *See Diaz v. Tesla*, 9th Cir. No. 23-3642, Dkt. 5.1 (Mediation Questionnaire) at 2.

*Howell*, 949 F.3d 1188, 1196–97 (9th Cir. 2020). Indeed, the Supreme Court "has expressly rejected the proposition that fee awards must be in proportion to the amount of damages recovered" in civil rights actions. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012). In such actions, "[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees … encourages the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994). Capping fees at the amount of a damages award is "especially inappropriate where the amount of fees was driven up by defendants' resistance to the lawsuit," *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1077 (N.D. Cal. Jul. 15, 2010), as here. Moreover, tethering counsels' fees to the damages award rather than the amount and quality of work actually performed would disincentivize attorneys from representing blue collar civil rights plaintiffs against well-funded and aggressive defendants—contrary to the congressional purpose of Section 1988.

In the limited-success cases cited by Tesla, fees were reduced because counsel spent considerable time on unrelated claims, or on claims against unrelated defendants, that plaintiffs lost on the merits. That is not this case, and Mr. Diaz already eliminated from his fees request the time spent on dismissed claims or parties, while explaining why a fully compensatory fee should be paid on all remaining time because it was "related" work under *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)—a point Tesla ignores. *See* ECF 494 14:16-15:20.

**B.  <u>The Requested Hours Were Reasonable.</u>**

Tesla does not dispute Mr. Diaz's recounting of the six-year history of this case; the uniquely complex legal and factual issues involved; or his showing that Tesla's obstructive litigation tactics (including withholding highly relevant discovery and repeatedly seeking to relitigate issues it had lost) required considerable additional time to address. Tesla's remaining arguments are unsupported by the record and rife with analytical flaws.

**1.  The hours expended after the first trial were reasonable.**

Tesla asks the Court to cap fees for the "second trial" at 75% of the fees requested for the "first trial"—an artificial reduction that does not rest on a single specific instance of an unreasonable fee entry pertaining to the second trial or either set of post-trial efforts.

First, Tesla's seemingly precise time comparisons are highly misleading, because they attribute to the "second trial" all of the time Mr. Diaz's counsel spent responding to multiple rounds of post-trial briefing, almost entirely related to *Tesla*'s own motions pertaining to the *first* trial. *See* Mot. at 9. As the Court is aware, a considerable portion of the time spent between the "first" and "second" trials was spent preserving the first jury's finding that Tesla was liable for compensatory and punitive damages. Tesla's time comparisons are particularly misleading, moreover, because they fail to consider nearly an entire year of litigation efforts by CCRLG, whose time records between late March 2017 and February 2018 were lost in transitioning to a new timekeeping system (and thus excluded from Mr. Diaz's lodestar request). Supp. Decl. of Larry Organ ¶ 15 (estimating the lodestar value of that lost time of approximately $65,000).

Mr. Diaz's counsel acted reasonably in defending against Tesla's persistent efforts to undo the first jury's compensatory and liability findings. That it took substantial time to respond effectively to post-trial arguments presented by Tesla's new attorneys (and recall, Mr. Diaz *prevailed* on all those arguments) surely does not make that time unreasonable. Tesla simply refused to accept no for an answer as to a whole range of issues, thus forcing Mr. Diaz's counsel (and the Court) to re-visit issues that seemed to have been resolved, based on arguments resting on new cases, slightly different contexts, or different witnesses or exhibits.[3] Mr. Diaz's counsel also needed to pivot, in preparing for the second trial, to respond to new defense theories and strategies emerging from Tesla's new attorneys, and to formulate a trial plan that would compensate for the fact that some of the liability-related evidence and arguments that may have affected the punitive damages award in the first trial would not be relevant or otherwise available for the time-limited damages retrial. *See, e.g.* ECF 398 2:20-3:25 (Tesla's strategic shift from denying liability because Diaz was not a Tesla employee to disputing that instances of

---

[3] *See, e.g.*, ECF 398 4:1-5:4 (pretrial assertion that parties needed to retry punitive damages liability); ECF 381 1:2-12:8, 8:25-11:9; ECF 398 37:1-3 (efforts to introduce new witnesses and evidence despite Court's contrary ruling); ECF 381 7:9-8:24, 11:10-17:22 (motion to exclude certain first-trial witnesses); ECF 389 3:1-26:28, 31:1-33:28, 37:5-7, 46:25-49:10 (challenge to jury instructions used during first trial and proposed nominal damages and punitive damages instructions); ECF 381 1:2-12:8, 8:25-11:9 (insistence on being allowed to present new evidence and witnesses); ECF 478 (trial misconduct, which required additional briefing).

harassment ever occurred). Essentially, Tesla's request for a reduction seeks "to protect defendant[] from the consequences of [its] litigation decisions." *Hernandez v. Grullense*, No. 12-CV-03257-WHO, 2014 WL 1724356, at *16 (N.D. Cal. Apr. 30, 2014).[4]

Tesla had the opportunity to demonstrate (if true) that Mr. Diaz's attorneys billed more than Tesla's, either in the aggregate or as to particular issues, ECF 494 11n.4, yet Tesla failed to provide that information to Plaintiff or to present it to the Court. *See Elec. Constr. Indus. Prefunding Credit Reimbursement Program v. Veterans Elec., LLC*, WL 308545, at *4 (E.D. Wis. Jan. 29, 2021); *West v. Aetna Life Ins. Co.*, 188 F. Supp. 2d 1096, 1101 (N.D. Iowa 2002). As the Court is aware, high-quality lawyering takes time. That is why to achieve the goals of the Civil Rights Act and Section 1988, civil rights counsel should be encouraged to devote the time necessary to respond effectively to a defendant's aggressive defense in order to maximize their clients' ability to vindicate crucial civil rights. *See Quesada*, 850 F.2d at 541 n 2.

Tesla also makes up a new "moral hazard" theory of fee litigation, contending that a prevailing civil rights plaintiff's fees should be reduced if some of the requested time was spent after having established defendant's liability. ECF 500 8:26-9:11. Tesla's argument ignores that it *continued* to pursue or preserve its challenges to the first jury's liability finding until abandoning that challenge in its recent Ninth Circuit Mediation Questionnaire. *See supra* n. 2. Tesla also ignores that whenever fees are incurred, if they are inflated or excessive they may be challenged on that basis. *See Stonebrae, L.P. v. Toll Bros.*, 2011 WL 1334444, at *12 (N.D. Cal. Apr. 7, 2011) ("[C]ounsel seeking fee awards bear the risk that the lodestar will be subject to scrutiny and possible reduction due to unreasonable inefficiencies and duplicative efforts[.]"); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not

---

[4] Tesla asserts that work on a second trial is *per se* unreasonable and duplicative. But the cases it cites are easily distinguished on their facts. *See Krekelberg v. City of Minneapolis*, 2023 WL 4828382, at *5 (D. Minn. July 27, 2023) (applying 60% reduction to preparation for "repetitive" and "inefficient" work on retrial); *Baker v. Barnard Constr. Co.*, 1999 WL 35809483, at *4 (D.N.M. June 8, 1999) (reducing time where retrial had "no real contested facts" and plaintiffs cited same case law on appeal and remand); *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp. 2d 127, 133 (E.D.N.Y. 1998) (reducing "duplicative" hours for identical second trial after first trial ended in mistrial); *Gries v. Zimmer, Inc.*, 795 F. Supp. 1379, 1387 (W.D.N.C. 1992) (reducing grossly duplicative time).

likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, both as to the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.").

### 2. Counsels' efforts were neither duplicative nor inefficient.

Mr. Diaz's opening brief, supported by his attorneys' sworn declarations and detailed time records, identified each of the tasks performed in this case and the time expended on them. ECF 494 11:10-17:16; 494-1; 494-2; 494-3, 494-4. Tesla cannot overcome the presumptive reasonableness of those well-documented efforts merely by asserting that the requested time was "too much." Rather, it must identify specific instances of overstaffing or duplicative billing. *Moreno*, 534 F.3d at 1112-13. Tesla has not done so, instead urging the Court to apply an across-the-board 10% reduction (duplicating other reductions and ignoring counsels' billing judgment cuts and lost time records) based on purported inefficiencies.

Tesla's argument, at its core, is that Mr. Diaz was represented by too many attorneys over the course of this six-year case (although Tesla itself had nearly as many or possibly more). However, generalized complaints about the number of timekeepers does not establish duplication or unreasonable staffing. *See, e.g., Melendres*, 2017 WL 10808812 at *7 (Ninth Circuit Court Commissioner Order); *Edmo v. Idaho Dept. of Correction*, No. 1:17-cv-00151-BLW, 2022 WL 16860011 at *6 (D. ID. Sept. 30, 2022) (court may not "reduce attorneys' fees based on an abstract notion that the number of attorneys involved seems high."). Besides, not only did Mr. Diaz never have 19 attorneys on this case at the same time (even counting the seven who billed fewer than 50 hours, *see* ECF 494-1, Ex. 1), but the three attorneys with primary responsibility—Mr. Alexander, Mr. Organ, and Ms. Nunley—personally billed 57.4% of the total time for which Mr. Diaz seeks reimbursement. Other attorneys pitched in as necessary and to provide specific expertise as is common in complex litigation, as Tesla itself did with its three law firms, including lawyers from four different Quinn Emanuel offices.

Tesla broadly asserts that Mr. Diaz's counsel engaged in "substantial duplication of effort" but identifies only a *single* alleged instance of purported duplication: 12 attorneys allegedly attending the second trial. ECF 500 at 10. Tesla has the facts wrong (and, again, has

1   not revealed how many of its own attorneys billed Tesla for their in-person or remote

2   participation at trial). Only six attorneys—Mr. Alexander, Mr. Rubin, Mr. Rosenthal, Mr. Organ,

3   Ms. Nunley, and Mr. Collier—billed for attending the second trial in person or remotely. Four of

4   those (Alexander, Organ, Collier, and Nunley) had speaking roles in the trial. The other two

5   (Rubin and Rosenthal) were responsible not only for pre- and post-trial briefing and appeals, but

6   for mid-trial motions (and some oral arguments). The remaining six did not bill for *attending* the

7   trial, and Mr. Diaz is only requesting fees for the time they spent performing critical trial-related

8   projects (and even then, for only 1.1 to 25.7 hours each). ECF 500-5; ECF 494-1 at 78, 120, 125;

9   ECF 494-4 at 26, 29, 31; ECF 494-1 28:57-29:9; ECF 494-4 13:10-14:2.

10         Next, Tesla contends that Mr. Diaz routinely had partners perform tasks that could have

11   been performed by associates. Sometimes, as the Court knows, it is far more efficient (and less

12   costly and more effective) to have certain tasks performed by more experienced counsel. *Chaid*

13   *v. Glickman,* No. C98–1004 WHO JCS, 1999 WL 33292940 at *15 (N.D. Cal. Nov. 17, 1999) (it

14   was efficient and effective in Title VII action, where counsel worked for small firm, to assign

15   routine drafting and review tasks to partners, to avoid having partner re-review documents before

16   depositions). Again, Tesla offers only a single example: trial counsel Bernard Alexander's time

17   preparing certain deposition summaries. As Mr. Alexander explains though, because he joined

18   the case after those depositions had been taken, he drafted those summaries for his personal use,

19   to prepare the examinations of the witnesses he would be questioning. Supp. Alexander Decl.

20   ¶¶2-5. No one else could have adequately performed that critical trial-preparation task for him.

21         Tesla's superficially impressive (but substantively unhelpful) statistical analysis also cites

22   the percentage of work performed by partners. Even if those percentages were accurate, Tesla's

23   argument ignores that the attorneys with speaking roles at trial were almost all partners, who had

24   to expend substantial time preparing for their appearances, which more junior attorneys could not

25   have done for them (and which would have required more preparation time for a junior attorney).

26   *Chaid*, 1999 WL 33292940 at *15; *see also* Mot. 13:28-14:15.

27         **3.  Mr. Diaz's use of a range of "focus groups" was reasonable.**

28   Mr. Diaz conducted two focus group mock trials before the first trial—one on August 15,

-8-

2020 and the other in back-to-back sessions on September 5, 2021, after the trial date had been continued for one year during the Covid pandemic. Supp. Organ Decl. ¶12; ECF 500-8; *see Masimo Corp. v. Tyco Health Care Grp., L.P.*, 2007 WL 5279897, at *5 (C.D. Cal. Nov. 5, 2007) (additional mock trial reasonable where "a substantial period of time has lapsed between exercises or the nature of the case has changed"). Later, before the second trial, Mr. Diaz conducted a series of shorter "mini" focus groups: short sessions averaging 2.5 hours each that were designed to evaluate and test the effectiveness of particular issues pertaining to the retrial. Each of those efforts were necessary and important (and Tesla's counsel likely did the same), especially given the new focus on damages rather than liability and the shorter trial time available to each side. *See Masimo Corp.*, 2007 WL 5279897, at *5.[5]

### 4. Counsel consolidated and underbilled most tasks that took 0.1 hours or less.

Tesla also seeks a 50% reduction (again, cumulatively) for all entries of 0.1 hours, based on the unsupported and insupportable assumption that half of those 0.1 entries were for single tasks of fewer than six minutes each. Tesla is mistaken. As previously explained, Mr. Diaz's counsel regularly combined tasks taking less than 0.1 hours into a single time entry or did not bill that time at all. ECF 494 18:5-7. Tesla has found one day in March 2023 in which Mr. Organ and Ms. Grislis billed separate one-tenth hour entries. ECF 500 12:4-15. But CCRLG, like the other firms, only bills for tasks that take one-tenth of an hour or close to it and those 0.1 entries often encompass several tasks. Supp. Organ Decl. ¶10. Plaintiff's review of the disputed entries confirms there was no overbilling.[6] If anything, counsels' timekeeping practices *reduced* the overall requested fee, because very brief tasks were either not recorded or were bundled with

---

[5] Two of the purported "focus groups" referenced by Tesla were not focus groups at all, but dry runs of Mr. Alexander's opening statement to a group of unpaid colleagues and friends, which were certainly compensable. Supp. Organ Decl. ¶¶12-13, Supp. Alexander Decl. ¶¶ 6-7.

[6] For instance, Ms. Grislis' 0.1 entries comprised separate calls to two witnesses, a call with Mr. Organ, an email to Mr. Diaz, several emails to Mr. Organ containing various documents and information, an email to a process server requesting he halt service, an email to request deposition videos, drafting a letter to a witness, sending the letter and a subpoena to the witness, researching a case on a California court site, researching a case on PACER, and sending the results of her research to Mr. Organ, for a total of 1.1 hours. ECF 494-1 at 109-10.

others even if they took more than six minutes combined.

**5. Counsel's fees for "travel" are reasonable.**

Tesla next seeks a 25% reduction of any time entry refers to "travel," but again, the "central inquiry is whether the time sought is reasonable." *Transbay Auto Serv., Inc. v. Chevron U.S.A.,* Inc., 2013 WL 843036 (N.D. Cal. Mar. 6, 2013) at *6. Because none of Mr. Diaz's trial counsel (like none of Tesla's) live in San Francisco, they had to travel, not only to trial but also to various depositions, expert witness meetings, etc.[7] Such travel is customarily billed to monthly paying commercial clients.[8] Tesla provides no reason why Mr. Diaz's counsel's reasonable travel time (during which they often performed substantive work, *infra* n.8.) would not be recoverable.

**6. Mr. Organ's attendance at the earlier Elon Musk trial was reasonable.**

For the damages retrial, Tesla retained attorney Alex Spiro as lead trial counsel. Mr. Spiro is a New York litigator with whom Mr. Diaz's counsel was not familiar, so they sought to obtain an understanding of Mr. Spiro's trial strategies and approaches to opening and closing statements and witness examination by attending a federal court jury trial in January 2023 in which Mr. Spiro represented Tesla's owner, Elon Musk, *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010 at *1 (N.D. Cal. June 14, 2023). Mr. Diaz did not attend that trial for "weeks on end," ECF 500 13:17-20, but only for portions of five days, choosing the segments that would best enable him to observe Mr. Spiro at successive stages of the trial process. *See* ECF 500-11. This is precisely the type of useful, limited attendance at trial that warrants an award of fees. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *10 (N.D. Cal. Apr. 3, 2013).

**7. There was an inadvertent clerical error in Mr. Diaz's original motion.**

Mr. Diaz has identified two errors in the lodestar calculations presented in his fees

---

[7] Supp. Rubin Decl. ¶3. To address Tesla's stated concern about alleged block-billing, Mr. Diaz has attached an updated chart distinguishing travel time from other substantive litigation activities. Supp. Organ Decl. ¶11 & Ex. 14.

[8] Supp. Rubin Decl. ¶3. Mr. Alexander lives in Los Angeles, Ms. Nunley lives in Sacramento, and Mr. Rosenfeld, although he works for Altshuler Berzon in San Francisco, worked out of CCRLG's office in San Anselmo for the damages retrial. Supp. Organ Decl. ¶11. Similarly, Tesla's trial counsel traveled from Quinn Emanuel's offices in New York (Mr. Spiro), Texas (Mr. Griffin) and Los Angeles (Ms. Henderson and Mr. Posner).

motion resulting in a reduction in his lodestar request by $67,380. First, Britt Karp's hours should have been recorded as 32.1 rather than 39 hours—a difference of $4,657.5. Second, although Mr. Diaz represented that Mr. Organ had eliminated 69.7 hours (among others) in the exercise of billing judgment, those time entries (valued at $$67,957.50) were inadvertently not deleted from Mr. Diaz's fee request. The correct lodestar – detailed in Exhibit 11 to the Organ Declaration – should have been **$6,553,688.50**.

### C. <u>The Court Should Award a Multiplier</u>

This is the "exceptional case" in which a multiplier is warranted. To begin, Mr. Diaz is entitled to a multiplier based on his counsel's successful prosecution of the unusually novel and complex legal and factual issues presented, including for establishing that a contract employee may enforce Section 1981 against the company that contracts for his work (but does not pay him), under a third-party beneficiary theory. While Tesla cites cases stating that a multiplier reflecting a case's novelty and difficulty is "generally" unnecessary, ECF 500 at 17:18-18:8, courts can and do consider novelty and difficulty (like the other *Kerr* factors) to the extent those factors are not sufficiently reflected in the lodestar.[9] Here, a multiplier is appropriate to fully compensate Mr. Diaz's counsel for the novelty and difficulty of a range of issues upon which he prevailed (including several addressed by the extensive pre- and post-trial briefing), the significance of which is not fully captured by just counting the number of attorney hours.

For example, before this case, no court had applied Section 1981 third-party beneficiary standing analysis to the contract employee context. *See, e.g. Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, n. 13 (3d Cir. 2015) (noting Supreme Court had "not ruled out the possibility" that contract employees may have third-party beneficiary standing under Section 1981 but not addressing issue because plaintiff failed to raise it). It took civil rights plaintiffs almost 15 years after the Supreme Court first suggested the *possibility* of third-party beneficiary standing in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), to achieve that result here, in a ruling

---

[9] *See, e.g., Edmo v. Idaho Dep't of Correction*, 2022 WL 16860011 at *8 (D. Id. Sept. 30, 2022). Tesla tries to distinguish *Edmo*, but the court expressly stated it awarded a multiplier in part because "counsel skillfully navigated novel legal issues." *Id*.

that will enable staffing agency workers throughout the country to enforce their civil rights against workplace discrimination going forward.[10]

A multiplier (staged, for the reasons Mr. Diaz previously explained) is also appropriate because of the substantial public benefits achieved through this litigation. In addition to breaking new ground legally, the first jury's eye-popping race harassment verdict against Tesla, one of the country's highest profile companies, sent a clear signal to other companies and surely had—and is continuing to have—enormous deterrent effect. ECF 494 22:12-23:10. The Ninth Circuit has expressly recognized that the public interest is advanced by incentivizing voluntary compliance with civil rights laws. *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 744–45 (9th Cir. 1989). Contrary to Tesla's contention, the fact that Mr. Diaz recovered substantial damages does not diminish the public purposes furthered by counsels' efforts. *Id.* ("[P]ublic interests are advanced by civil rights actions even when the plaintiff is the main beneficiary of the suit and financial gain is the primary motive because a major goal of § 1988, encouraging voluntary compliance with the Constitution … is furthered regardless of these factors.").

A multiplier is further justified because of the undesirability of this case and its preclusion of counsels' other work during its pendency. Tesla does not dispute that preclusion of other work can justify a multiplier and does not cite any case forbidding this Court from considering the case's undesirability. In fact, district courts routinely do so. *See, e*.g., *Bell v. Willia*ms, 2023 WL 4850761 (N.D. Cal. Jul. 28, 2023). There is no requirement that "undesirability" requires proof that the plaintiff was unsympathetic or shunned by the community. Rather, the factor can include consideration of the obstacles faced in the case and the riskiness of prosecuting it (especially on a purely contingent basis). *Chalmers v. City of Los Angeles*, 676 F. Supp. 1515, 1524 (C.D. Cal. 1987). Tesla does not address Mr. Diaz's showing that his case faced substantial obstacles from the outset that would have dissuaded many civil

---

[10] Tesla's only response is that a handful of courts had previously accepted a Section 1981 third-party beneficiary theory *in other contexts*. ECF 500 at 18:19-20:4 n.9. As Tesla's extensive briefing on this issue demonstrates, however, application of that theory to the staffing agency context was untested and uncertain. Now that Tesla has declined to appeal liability, *Diaz v. Tesla*, No. 23-3642, Dkt. 5.1 at 2, Mr. Diaz's victory on that precedential issue is complete.

rights attorneys from proceeding, including the uncertain legal theories as applied to Tesla, the initial lack of hard evidence, and the general difficulty in obtaining emotional harm damages. Mot. at 23:21-24:17. Although Section 1988 fees and punitive damages were always potentially available, there was never any guarantee that Mr. Diaz's case would get that far, especially in light of Tesla's no-holds-barred defense, which buried Mr. Diaz' counsel with work and precluded them from pursuing or accepting other (potentially higher paying or less risky) work. *See* ECF 494-1 at 12 (Tesla's general counsel statement to Mr. Organ: "We will bury you. You will never see a penny. We will appeal forever.").[11] Tesla again tries to judge the issues based on hindsight, but Mr. Diaz's eventual success in this case does not erase how unappealing his case would have been at the outset to many plaintiffs-side employment attorneys, who would have been unwilling or unable to devote the time, effort, and skill necessary to prevail in this case.

Finally, despite Tesla's mischaracterization, Mr. Diaz does not seek a 1.6 multiplier for the entire lodestar. ECF 500 at 16:18-21. What Mr. Diaz proposed is a staged multiplier that reasonably reflects the work spent on novel issues and the impact on the public interest throughout the different stages of the litigation: a 2.0 multiplier through the first jury trial, a 1.5 multiplier through the Court's order upholding first jury trial and its liability finding; and a 1.2 multiplier for the rest of the work defending the liability ruling and obtaining compensatory and punitive on retrial.[12] Those staged multipliers are appropriate given the exceptional results obtained in this complex case that came with great potential downside risk. *See* ECF 494 Ex. 12.

**D. Mr. Diaz's Claimed Expenses Are Reasonable and Fully Supported.**

The Court should reject Tesla's proposed 50% reduction in Mr. Diaz's $168,707.82[13] in

---

[11] That one of Mr. Diaz's law firms later agreed to represent a putative class of Black Tesla employees does not show that individual civil rights cases like this are desirable, but that Plaintiff's counsel included the rare attorneys who would take these cases on an individual or class basis despite their obvious difficulties, because of the importance of the rights at stake.

[12] Tesla appears to have arrived at its 1.6 number by averaging the proposed multipliers of 2.0, 1.5 and 1.2, ignoring the lodestar sums to which each of those multipliers would be applied.

[13] Tesla claims Mr. Diaz seeks $208,218.20 in expenses, but it is unclear how Tesla arrived at this number. Mr. Diaz actually seeks $168,707.82 in expenses, though he inadvertently claimed $187,145.24 due to a clerical error. Mot. at 25:17-18, ECF 494-1 at 295-303.

litigation-related expenses, which again were documented and actually spent. Like Tesla's other proposed reductions, this suggested cut is disproportionate to the few issues Tesla addresses.[14]

First, Tesla contends that the $4,600 in expert fees paid to Dr. Smith and Mr. Robbins are not documented. That was an oversight which Mr. Diaz corrects. Supp. Organ Decl. Ex. ¶¶16-17.

Next, Tesla complains that Dr. Smith and expert Mr. Robbins (who was paid $10,500) did not end up testifying at trial. At the time of their retention, though, both experts were expected to testify and both performed considerable useful work but were unable to testify for reasons beyond Mr. Diaz's control. Supp. Organ Decl. ¶¶17-18. (Smith performed a psychological examination of Mr. Diaz but his declining health prevented a trial appearance, while Robbins was unable to meet the Court's expert disclosure deadline for reasons having nothing to do with Mr. Diaz.) Those intervening circumstances should not preclude Mr. Diaz from recovering those payments, which were reasonable when incurred—and which enabled counsel to work with replacement experts more efficiently.

Tesla disputes some unspecified expert time entries for phone calls and document review, as being too vague to justify recovery. ECF 500 24:5-8. Tesla does not dispute that the work was performed. But even if it did, Tesla offers no justification for denying all $109,000 of Mr. Diaz's expert witness costs, including for writing reports and appearing at trial.

Finally, the expenses incurred for the two mock trials and "mini" focus groups are reasonable and recoverable for the reasons stated *supra* at 9:27-10:10, as were the expenses incurred in litigating the second trial, for the reasons stated *supra* at 5:25-8:3.[15] There is no justification for Tesla's attempt to chop Diaz's entirely reasonable costs in half.

E. **Counsel's Fees-on-Fees Hours Are Reasonable.**

Tesla would have this Court cap Mr. Diaz's fees-on-fees at 50 hours, despite his having

---

[14] In another example of Tesla's unique approach to fee arithmetic, it first contends that the Court should reject all $109,000 in expert expenses, ECF 500 23:20, but then seeks an overall 50% reduction in expenses, apparently forgetting about the first reduction, *id.* 24:19-20.

[15] Those expenses included lodging, mileage, and related costs, as well as the expense incurred in printing new demonstratives necessary for the damages-only retrial. ECF 494-1 30:17-33:10, Exs. 4, 6-11.

...

to prepare two fee applications (one after the first trial) and now this reply brief. The comparator cases cited by Tesla, ECF 500 at 24, are not comparable at all. They involved considerably shorter and less complex litigation, coupled with improper billing practices that justified substantial reductions.[16] The issue is whether the requested fees-on-fees (again, for time actually spent) are reasonable for *this* case, based on *this* record, which shows that Mr. Diaz's counsel not only had to expend substantial time reviewing more than 6,000 time entries and preparing highly-detailed declarations and spreadsheets to document this fee request (which they did so successfully that Tesla's only gripe about those time records was that they measured counsels' time *too* precisely, *supra* at 10:11-11:1), but they also had to respond to numerous challenges, statistical and otherwise, based on the specific facts and circumstances of this case. Moreover, to keep the fees low, Mr. Diaz assigned most of the fee-related research and drafting work to the team's lowest-billing associate, while more senior partners with extensive fee-litigation experience helped strategize the briefing and edited the resulting drafts. ECF 494-1 25:19-26:10. Finally, despite asserting that the total amount of time for fees-on-fees is too high, Tesla does not identify a single time entry that it contends is unreasonable.

As previously stated, Mr. Diaz is attaching time records from October 7, 2023 to the present, documenting the additional time and expenses spent on this reply brief and related filings, which brings the total for fees-on-fees to $258,852.50.

### III.   **CONCLUSION**

For the foregoing reasons, the Court should award Mr. Diaz and his counsel statutory attorney's fees of $10,415,085, fees-on-fees of $258,852.50, and litigation expenses of $168,707.82.

---

[16] *See Seebach v. BMW of N. Am.*, *LLC*, 2020 WL 4923664, at *5 (E.D. Cal. Aug. 21, 2020) (50 hours on fees too high where counsel spent only 150 hours on rest of the case); *Public.Resource.org v. Internal Revenue Serv.*, 2015 WL 9987018 (N.D. Cal. Nov. 20, 2015) (litigation spanned 1.5 years and was decided on summary judgment); *Medina v. City of Menlo Park*, No. C 08-3946 WDB, 2009 WL 10710479 (N.D. Cal. Oct. 2, 2009) (counsel litigated two claims for one year before accepting Rule 68 offer); *Strategic Partners, Inc. v. FIGS, Inc.*, 2021 WL 8917973 (C.D. Cal. Oct. 29, 2021) (excluding excessive and unnecessary time).

1

2          **CALIFORNIA CIVIL RIGHTS LAW GROUP**
           **ALEXANDER MORRISON & FEHR LLP**
3          **ALTSHULER BERZON LLP**
           **THE COLLIER LAW FIRM**
4

5

6    Dated:  December 4, 2023              _____/s/ Lawrence A. Organ_____
           
7                                          Lawrence A. Organ
                                           Cimone A. Nunley
8                                          J. Bernard Alexander
                                           Michael Rubin
9                                          Dustin Collier

10                                         Attorneys for Plaintiff OWEN DIAZ

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-